PAUL J. COUCHOT State Bar No. 131934
PETER W. LIANIDES - State Bar No. 160517
CHARLES LIU - State Bar No. 190513
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
pcouchot@winthropcouchot.com
plianides@winthropcouchot.com
cliu@winthropcouchot.com
Telephone: (949) 720-4165
Facsimile: (949) 720-4111

General Insolvency Counsel for
Administratively Consolidated
Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re

PALMDALE HILLS PROPERTY, LLC,
AND ITS RELATED DEBTORS,

    Jointly Administered Debtors
    and Debtors-in-Possession

Affects:
☒ All Debtors
☐ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC

Case No. 8:08-bk-17206-ES
Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; and 8:08-bk-17575-ES;

**DEBTORS' JOINT CHAPTER 11
PLAN OF REORGANIZATION**

**Disclosure Statement Hearing**

Date:    May 7, 2009
Time:    2:00 p.m.
Place:    Courtroom 5A

**Plan Confirmation Hearing**

Date:    [TO BE SET]
Time:
Place:    Courtroom 5A

# **TABLE OF AUTHORITIES**

**Page**

I.    INTRODUCTION .................................................................................    2

II.    DEFINITIONS AND RULES OF INTERPRETATION ...........................    3
    2.1    Definitions ..............................................................................    3
    2.2    Rules of Construction .............................................................    16
    2.3    Plan Documentary Supplement ...............................................    16
    2.4    Exhibits ..................................................................................    17

III.    SUBSTANTIVE CONSOLIDATION ....................................................    17

IV.    UNCLASSIFIED CLAIMS ..................................................................    17
    4.1    Administrative Claims .............................................................    17
        A.    Payment Generally .....................................................    17
        B.    Administrative Claims Bar Date ...................................    18
            (i)    General Administrative Claims Bar Date .............    18
            (ii)    Administrative Tax Claims Bar Date ..................    19
    4.2    Priority Unsecured Tax Claims ................................................    19

V.    CLASSIFICATION OF CLAIMS AND INTERESTS .............................    20
    5.1    General Overview ...................................................................    20

VI.    PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS ...........    24
    6.1    Classes 1.1 Through 1.12 ........................................................    24
    6.2    Class 2.1 Through 2.13 ...........................................................    25
    6.3    Classes 3.1 Through 3.21 ........................................................    26
    6.4    Class 4 ....................................................................................    27
        A.    Option 1 .....................................................................    27
        B.    Option 2 .....................................................................    27
        C.    Option 3 .....................................................................    27
    6.5    Class 5 ....................................................................................    27
        6.5.1    In General ...............................................................    28
        6.5.2    Treatment ...............................................................    28
    6.6    Class 6 ....................................................................................    28
    6.7    Class 7 ....................................................................................    28

VII.    ACCEPTANCE OR REJECTION OF THE PLAN ................................    28
    7.1    Introduction ............................................................................    28
    7.2    Who May Object to Confirmation of the Plan ..........................    29
    7.3    Who May Vote to Accept/Reject the Plan ...............................    29
        7.3.1    What Is an Allowed Claim/Interest .........................    29
        7.3.2    What Is an Impaired Class .....................................    29
        7.3.3    Who Is Not Entitled to Vote ...................................    29
        7.3.4    Who Can Vote in more than One Class ....................    30
        7.3.5    Votes Necessary for a Class to Accept the Plan ......    30

# TABLE OF AUTHORITIES

## (Continued)

|  |  | Page |
|---|---|---|
| 7.3.6 | Treatment of Nonaccepting Classes | 30 |
| 7.3.7 | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 31 |
| **VIII.** | **MEANS FOR IMPLEMENTING THE PLAN** | 31 |
| 8.1 | Introduction | 31 |
| 8.2 | Substantive Consolidation | 31 |
| 8.3 | Equitable Subordination | 32 |
| 8.4 | Management of Palmdale Hills After Effective Date | 32 |
| 8.5 | Corporate Actions | 32 |
| 8.6 | Revesting in, and Transfers to, Debtors of Assets | 32 |
| 8.7 | Cancellation of Existing Securities and Agreements | 33 |
| **IX.** | **DISTRIBUTIONS** | 33 |
| 9.1 | Distribution Agent | 33 |
| 9.2 | Distributions | 33 |
| 9.2.1 | Dates of Distribution | 33 |
| 9.2.2 | Limitation on Liability | 34 |
| 9.3 | Old Instruments and Securities | 34 |
| 9.3.1 | Surrender and Cancellation of Instruments and Securities | 34 |
| 9.3.2 | Rights of Persons Holding Instructions and Securities | 34 |
| 9.3.3 | Cancellation of Liens | 34 |
| 9.4 | De Minimis Distributions and Fractional Shares | 35 |
| 9.5 | Delivery of Distributions, Except as Provided in Section 9.7 with Respect to Unclaimed Property | 35 |
| 9.6 | Undeliverable Distributions | 35 |
| 9.7 | Disposition of Unclaimed Property | 36 |
| **X.** | **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS** | 36 |
| 10.1 | Objections to Claims | 36 |
| 10.2 | Treatment of Disputed Claims | 36 |
| 10.2.1 | No Distribution Pending Allowance | 37 |
| 10.2.2 | Distribution After Allowance | 37 |
| 10.2.3 | Reserves for Disputed claims | 37 |
| **XI.** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | 37 |
| 11.1 | Executory Contracts Being Assumed | 37 |
| 11.2 | Executory Contracts Being Rejected | 38 |
| 11.3 | Retention of Property Rights by Reorganized Debtor | 38 |
| 11.4 | Bar Date for Rejection Damages | 39 |
| 11.5 | Cure Statements | 39 |
| 11.6 | Changes in Rates Subject to Regulatory Commission Approval | 39 |

-ii-

1

**TABLE OF AUTHORITIES**

2

**(Continued)**

3

**Page**

4

| | | |
|---|---|---|
| XII. | EFFECT OF CONFIRMATION OF PLAN | 39 |
| | 12.1 Discharge | 40 |
| | 12.2 Injunction | 40 |
| XIII. | LIMITATION OF LIABILITY AND RELEASES | 41 |
| | 13.1 No Liability for Solicitation or Participation | 41 |
| | 13.2 Limitation of Liability | 41 |
| XIV. | CONDITION TO CONFIRMATION AND EFFECTIVENESS | 42 |
| | 14.1 Conditions Precedent to Plan Confirmation | 42 |
| | 14.2 Conditions Precedent to Plan Effectiveness | 42 |
| | 14.3 Waiver of Conditions | 42 |
| XV. | RETENTION OF JURISDICTION | 42 |
| | 15.1 Retention of Jurisdiction | 42 |
| XVI. | MODIFICATION OR WITHDRAWAL OF PLAN | 44 |
| | 16.1 Modification of Plan | 44 |
| | 16.2 Nonconsensual Confirmation | 44 |
| XVII. | MISCELLANEOUS | 45 |
| | 17.1 Payment of Statutory Fees | 45 |
| | 17.2 Payment Dates | 45 |
| | 17.3 Headings | 45 |
| | 17.4 Other Documents and Actions | 45 |
| | 17.5 Notices | 45 |
| | 17.6 Governing Law | 46 |
| | 17.7 Binding Effect | 46 |
| | 17.8 Successors and Assigns | 46 |
| | 17.9 Severability of Plan Provisions | 46 |
| | 17.10 No Waiver | 47 |
| | 17.11 Inconsistencies | 47 |
| | 17.12 Exemption from Certain Transfer Taxes and Recoding Fees | 47 |
| | 17.13 Post-Confirmation Status Report | 47 |
| | 17.14 Post-Confirmation Conversion/Dismissal | 48 |
| | 17.15 Final Decree | 48 |

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

# I.

## INTRODUCTION

This Joint Chapter 11 Plan of Reorganization (the "Plan") is filed by the following jointly administered Debtors and Debtors-In-Possession, Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal Emerald Meadows, LLC, SunCal Johansson Ranch, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., a California limited partnership, SJD Development Corp., a California corporation, SCC Communities LLC, North Orange Del Rio Land LLC and Tesoro SF LLC (collectively the "Voluntary Debtors"). The Voluntary Debtors, who are all related entities, are all operating under the protection of Chapter 11 of the United States Bankruptcy Code (the "Code" or the "Bankruptcy Code"). The Voluntary Debtors filed their Chapter 11 cases and were granted orders jointly administering their cases in November of 2008, the United States Bankruptcy Court (the "Court" or the "Bankruptcy Court") entered an order authorizing the joint administration of the Debtors' Chapter 11 cases.

The Plan also encompasses the related Chapter 11 cases represented by Steven M. Speier, the Chapter 11 Trustee (the "Trustee"), of Delta Coves Ventures, LLC, Case No. 8:08-17470-ES; SunCal Heartland, LLC, Case No. 8:08-17407-ES; SunCal Marblehead, LLC, Case No. 8:08-17409-ES; LB-L-SunCal Northlake, LLC, Case 8:08-17408-ES; LB-L-SunCal Oak Valley, LLC, Case 8:08-17404-ES; SunCal Century City, LLC, Case 8:08-17458-ES; SunCal PSV, LLC, Case 8:08-17465-ES; SunCal Torrance Properties, LLC, Case No. 8:08-17472-ES; SunCal Oak Knoll, LLC, Case No.8:08-17588-ES (the "Trustee Debtors"). The Trustee Debtors were placed in bankruptcy proceedings by involuntary petitions filed by their creditors. Thereafter, an order for relief was granted by the Court on January 6, 2009 and January 8, 2009. (The Voluntary Debtors and the Trustee Debtors are hereinafter, collectively, referred to as the "Debtors".)

The Plan provides for the sale of the Debtors' Projects, the equitable subordination of Lehman ALI's and Lehman Commercial's secured claims, the transfer of Lehman ALI's and Lehman Commercial's liens to the Debtors' estates, substantive consolidation of all of the

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1 Debtors' estates into the single estate of Palmdale Hills, and the distribution of the net sale

2 proceeds to the non-subordinated claims against the Debtors' estates and then to the holders of the

3 subordinated claims against the Debtors' estates. The above-referenced Plan treatment of Lehman

4 Commercial's secured claims shall be conditioned upon a determination by a court of competent

5 jurisdiction that the automatic stay in Lehman Commercial's Chapter 11 proceeding is either not

6 implicated by Lehman Commercial's secured claims treatment under the Plan or the stay has been

7 lifted or otherwise dissolved for purposes of the Plan.

8          Sent to you in the same envelope as this document is the Debtors' Joint Disclosure

9 Statement (the "Disclosure Statement"). The Disclosure Statement has been approved by the

10 Court. It is being provided along with the Plan in order to provide you with critical information

11 about the Debtors and to help you understand the Plan. The Disclosure Statement discusses the

12 Debtors' history, businesses, properties, and results of operations and contains a summary and

13 discussion of this Plan. Holders of Claims and Interests and parties to executory contracts and

14 unexpired leases are encouraged to read the Disclosure Statement. No solicitation materials, other

15 than the Disclosure Statement and related materials transmitted therewith and approved for

16 solicitation purposes by the Court, have been authorized for use in soliciting acceptances or

17 rejections of this Plan.

18                                              **II.**

19                    **DEFINITIONS AND RULES OF INTERPRETATION**

20          **2.1**     **Definitions.**  The following defined terms are used in this document.  Any

21 capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the

22 Bankruptcy Rules, shall the have the meaning ascribed to that term in the Bankruptcy Code or

23 Bankruptcy Rules.

24                    2.1.1     Acquisitions.  SCC Acquisitions, LLC, a Delaware limited liability

25 company.

26                    2.1.2     Acton Estates.  Acton Estates, LLC, a Delaware limited liability.

27                    2.1.3     Administrative Claim.  Any Claim for any cost or expense of

28 administration of the Cases allowable under section 330, 331, 503(b), or 507(a)(1) of the

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1   Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of

2   preserving the Estates of the Debtors, any actual and necessary post-petition expenses of operating

3   the business of the Debtors in Possession, all compensation or reimbursement of expenses to the

4   extent allowed by the Bankruptcy Court under section 330, 331, or 503 of the Bankruptcy Code

5   and any fees or charges assessed against the Estates of the Debtors under section 1930 of title 28 of

6   the United States Code.

7        2.1.4    Administrative Claims Bar Date.  The last date or dates fixed by the Plan

8   or the Bankruptcy Court for filing proofs or requests for payment of certain Administrative Claims

9   pursuant to Section 4.1 B of the Plan, Rule 3003(c)(3) of the Bankruptcy Rules, or any order of the

10  Bankruptcy Court.

11       2.1.5    Adversary Case. The adversary proceeding filed by, among others, SCC

12  Acquisitions, Inc., a California Corporation, the Voluntary Debtors, as plaintiffs, against Lehman

13  ALI, Inc., and certain other related entities, in the United States Bankruptcy Court Central District

14  of California bearing Case No. 8:09-ap-01005 ES.

15       2.1.6    Affiliate.  As to any Person, any other Person that directly or indirectly

16  owns or controls, is owned or controlled by, or is under common ownership or control with, such

17  Person.  The term "control" (including, with correlative meanings, the terms "controlled by" and

18  "under common control with"), as applied to any Person, means the possession, direct or indirect,

19  of the power to direct or cause the direction of the management and policies of such Person,

20  whether through the ownership of voting securities or other ownership interest, by contract or

21  otherwise.

22       2.1.7    Allowed Amount shall mean:

23            A.    With respect to any Administrative Claim (i) if the Claim is based

24  upon a Fee Application, the amount of such Fee Application that has been approved by a Final

25  Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

26  incurred in the ordinary course of business of the Debtors and is not otherwise subject to an

27  Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtors

28  and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy

1  Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the

2  Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof

3  if no objection to such proof of claim is interposed within the applicable period of time fixed by

4  the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as

5  fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within

6  the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the

7  Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an

8  Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date

9  shall be zero, and no distribution shall be made on account of any such Administrative Claim;

10              B.      with respect to any Claim which is not an Administrative Claim or a

11  Deficiency Claim (an "Other Claim"):  (i) if the Holder of such Other Claim did not file proof

12  thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as

13  listed in the Debtors' Schedules as neither disputed, contingent or unliquidated; or (ii) if the

14  Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims

15  Bar Date, (a) the amount stated in such proof if no objection to such proof of claim was interposed

16  within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan

17  or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy

18  Court if an objection to such proof was interposed within the applicable period of time fixed by the

19  Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount

20  of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the

21  Debtors' Schedules, is listed as disputed, unliquidated, contingent or unknown or is not allowed

22  under the terms of this Plan shall be zero, and no distribution shall be made on account of any such

23  Claim;

24              C.      with respect to any Deficiency Claim, the amount thereof as fixed by

25  Final Order of the Bankruptcy Court.  The Allowed Amount of any Deficiency Claim which is not

26  filed by the Claims Bar Date shall be zero, and no distribution shall be made on account of any

27  such Deficiency Claim; and

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

D.   with respect to any Interest, (i) the amount provided by or established in the records of the Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.8   Allowed Claim or Allowed Class Claim. A Claim of the type specified or in the Class specified that is also an Allowed Claim (i.e., an Allowed Secured Claim is a Secured Claim that is also an Allowed Claim, and an Allowed Class 6 Claim is a Claim classified in Class 6 that is an Allowed Claim).

2.1.9   Allowed Claim. Except as otherwise provided in this Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by this Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.10   Allowed Interest. Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.11   Allowed Secured Capital Lease Claim. The Allowed Secured Claim of a claimant under a capital lease, which Allowed Secured Claim shall be equal to the fair market value of the property subject to the capital lease.

2.1.12   Allowed. When used to describe a Claim or Claims, such Claim or Claims, to the extent that it or they are an "Allowed Claim" or "Allowed Claims."

2.1.13   Bankruptcy Code. The Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

2.1.14   Bankruptcy Court. The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise

1  jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

2  lieu thereof.

3          2.1.15    <u>Bankruptcy Rules</u>.  Collectively, as now in effect or hereafter amended

4  and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

5  Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

6          2.1.16    <u>Business Day</u>.  Any day, other than a Saturday, a Sunday or a "legal

7  holiday," as defined in Bankruptcy Rule 9006(a).

8          2.1.17    <u>Cases</u>.  The Chapter 11 cases of the Debtors pending before the

9  Bankruptcy Court.

10          2.1.18    <u>Cash</u>.  Currency of the United States of America and cash equivalents,

11  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

12  transfers and other similar forms of payment.

13          2.1.19    <u>Claim</u>.  This term shall have the broadest possible meaning under

14  section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

15  Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

16  contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or

17  (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right

18  of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to

19  judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

20          2.1.20  <u>Claims Bar Date</u>.  For any Claim other than an Administrative Claim,

21  March 31, 2009, which has been established by the Bankruptcy Court as the last date for creditors

22  to file proofs of claim with the Bankruptcy Court.

23          2.1.21    <u>Claims Objection Deadline</u>.  The later of (i) the one hundred eightieth

24  (180th) day after the Effective Date; (ii) with respect to a specific Claim, the one-hundred eightieth

25  (180th) day after proof of such Claim is filed, or (iii) such greater period of limitation as may be

26  fixed or extended by the Bankruptcy Court or by agreement between a Debtor or Reorganized

27  Debtor and the Holder of the Claim.

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    2.1.22    Class. Each group of Claims or Interests classified in Article V of the

2    Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

3    2.1.23    Committee. The Official Committee of Unsecured Creditors of the

4    Debtors appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code.

5    2.1.24    Confirmation Date. The date on which the Confirmation Order is entered

6    in the Bankruptcy Court's docket.

7    2.1.25    Confirmation Order. The order entered by the Bankruptcy Court

8    confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code,

9    which order shall be submitted to the Court in form and substance reasonably satisfactory to the

10    Debtors.

11    2.1.26    Creditor. Any Person who is the Holder of a Claim against any Debtor

12    that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

13    become due, owing, and payable on or before the Petition Date, including, without limitation,

14    Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

15    2.1.27    Debtor(s). Individually or collectively, the Voluntary Debtors and the

16    Trustee Debtors.

17    2.1.28    Debtors-in-Possession. The Voluntary Debtors when each is acting in the

18    capacity of representative of the Estates in the Cases.

19    2.1.29    Del Rio. North Orange Del Rio Land, LLC, a limited liability company.

20    2.1.30    Delta Coves. Delta Coves Ventures, LLC, a limited liability company.

21    2.1.31    Disputed Administrative Claim. Any Administrative Claim that is not an

22    Allowed Administrative Claim.

23    2.1.32    Disputed Claim. All or any part of a Claim other than any Allowed

24    Amount thereof as to which any one of the following applies: (i) no proof of claim has been filed

25    with respect to such Claim, and either (a) the Claim is not listed in the Schedules, or (b) the Claim

26    is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii)

27    the Claim is the subject of a timely objection or request for estimation in accordance with the

28    Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the Plan

1  which is Filed on or before the Claims Objection Deadline, which objection or request for

2  estimation has not been withdrawn or determined by a Final Order, or (iii) the Claim is otherwise

3  treated as a "Disputed Claim" pursuant to this Plan.  In addition, prior to the earlier of (i) the

4  Claims Objection Deadline, and (ii) such date as the Bankruptcy Court allows the Claim pursuant

5  to a Final Order, any Claim whose Allowed Amount is not specified under the Plan that is

6  evidenced by a proof of claim shall be deemed a Disputed Claim for purposes of calculating and

7  making any distributions under this Plan if: (a) no Claim corresponding to the proof of claim is

8  listed in the Schedules, (b) the Claim corresponding to the proof of claim is listed in the Schedules

9  as disputed, contingent, unliquidated, unknown, or in a zero amount, (c) the amount of the Claim

10  as specified in the proof of claim exceeds the amount of any corresponding Claim listed in the

11  Schedules as not disputed, not contingent, and liquidated, but only to such extent, or (d) the

12  priority or classification of the Claim as specified in the proof of claim differs from the priority of

13  any corresponding Claim listed in the Schedules.

14      2.1.33    Disputed Claim or Disputed Class Claim.  A Claim of the type specified

15  or in the Class specified that is also a Disputed Claim.

16      2.1.34    Distribution Agent.  Suncal Management, LLC, a Delaware limited

17  liability company.

18      2.1.35    Distribution Date.  With respect to any Claim or Interest, the date on

19  which a distribution under the Plan is to be made.  For purposes of making distributions on the

20  "next Distribution Date" with respect to Unclaimed Property or Disputed Claims, the "next

21  Distribution Date" shall be deemed to occur on the one hundred eightieth (180th) day following (1)

22  the date on which the Unclaimed Property is claimed by its valid owner; or (ii) the date on which a

23  Disputed Claim becomes an Allowed Claim, in whole or in part.

24      2.1.36    Effective Date.  A date to be agreed upon by the Debtors, but in no event

25  later than sixty (60) days after the Confirmation Date.

26      2.1.37    Estates.  The bankruptcy estates of the Debtors created pursuant to section

27  541 of the Bankruptcy Code.

28

2.1.38   <u>Excess Cash</u>. Cash of the Reorganized Debtor in excess of the Operating Reserve.

2.1.39   <u>Fee Applications</u>.  Applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases.

2.1.40   <u>Fee Claim</u>.  A Claim under sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases.

2.1.41   <u>Filed</u>.  Delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

2.1.42   <u>Final Order</u>.  A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, re-argue, or re-hear shall have been waived in writing in form and substance satisfactory to the Debtors, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari, re-argument, or rehearing has been denied, and the time to take any further appeal, petition for certiorari, or move for re-argument or rehearing shall have expired.

2.1.43   <u>Holder</u>.  The beneficial owner of any Claim or Interest.

2.1.44   <u>Interest</u>.  (A) Any equity security or interest of or in any Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity interest in any of the Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, or any other equity security or interest.

2.1.45   <u>Kirby Estates</u>. Kirby Estates, LLC, a Delaware limited liability company.

2.1.46   <u>Lehman</u>.  Lehman Brothers, Inc., including Northlake Holdings and OVC Holdings.

2.1.47   <u>Lehman ALI</u>.  Lehman ALI, Inc.

-10-

1    2.1.48    Lehman Commercial.  Lehman Commercial Paper, Inc.

2    2.1.49    Lehman Entities.  Lehman ALI and Lehman Commercial.

3    2.1.50    Lehman Entities' Claims.  All Secured Claims held by the Lehman

4    Entities.

5    2.1.51    Minimum Distribution Threshold.  *[To be Determined Prior to*

6    *Disclosure Statement Hearing]*dollars ($_____) or the amount in the Net Sales Proceeds

7    Account after the sale of the last asset of the Reorganized Debtor.

8    2.1.52    Net Sales Proceeds Account.  An account established at an FDIC insured

9    bank into which all of the Net Sales Proceeds and Excess Cash shall be deposited.

10    2.1.53    Net Sales Proceeds.  The proceeds generated from the sale of any asset of

11    the Reorganized Debtor, less selling expenses, claims secured by the property, other than the

12    Lehman Entities Secured Claims, and the Operating Reserve Allocation.

13    2.1.54    Northlake Holdings.  Northlake Holdings LLC, a California limited

14    liability company.

15    2.1.55    Operating Reserve Account.  An account opened at an FDIC insured bank

16    that will be funded with the Operating Reserve.

17    2.1.56    Operating Reserve Allocation.  The difference between the amount in the

18    Operating Reserve Account and the Operating Reserve.

19    2.1.57    Operating Reserve.  The sum of *[To be Determined Prior to Disclosure*

20    *Statement Hearing]*.

21    2.1.58    Orders for Relief Date.  January 6, 2009, the date on which the

22    Bankruptcy Court entered orders granting the relief requested in the involuntary bankruptcy

23    petitions filed against the Trustee Debtors.

24    2.1.59    OVC Holdings.  OVC Holdings LLC, a California limited liability

25    company.

26    2.1.60    Palmdale Hills.  Palmdale Hills Property, LLC, a Delaware limited liability

27    company.

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

2.1.61   <u>Person</u>. An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, Committee or other entity of whatever nature.

2.1.62   <u>Petition Dates</u>. November 6, 2008 and November 7, 2008.

2.1.63   <u>Plan</u>. This "Debtors' Joint Chapter 11 Plan of Reorganization," filed February 4, 2009, together with the Exhibits thereto and the Plan Documents, as the same may be amended or modified from time to time in accordance with Section 16.1 of this Plan.

2.1.64   <u>Plan Documentary Supplement</u>. A supplement to the Plan, containing various documents relating to the implementation of the Plan, to be Filed with the Bankruptcy Court no later than ten (10) Business Days prior to the commencement of the hearing on confirmation of the Plan, as said supplement may be amended from time to time at any time prior to the Effective Date with the consent of the Debtors.

2.1.65   <u>Plan Documents</u>. Collectively, any documents, other than the Plan and Disclosure Statement that are required by the Plan or determined by the Debtors to be necessary or advisable to implement the Plan. The Plan Documents shall be in form and content acceptable to the Debtors. Final or near-final versions of the Plan Documents shall be filed with the clerk of the Bankruptcy Court as part of the Plan Documentary Supplement as early as practicable (but in no event later than ten (10) Business Days prior to the commencement of the hearing on confirmation of the Plan or on such other date as the Bankruptcy Court may establish).

2.1.66   <u>Priority Claim</u>. Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.67   <u>Pro Rata</u>. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.68   <u>Professional Fees</u>. All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code.

1    2.1.69    Professional. A Person or Entity (a) employed by the Debtors in

2  Possession or the Committee pursuant to a Final Order in accordance with Sections 327 and 1103

3  of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date,

4  pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which

5  compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to

6  Section 503(b) of the Bankruptcy Code.

7    2.1.70    Projects. The Debtors' real estate development projects, a general

8  description of which is attached hereto as Exhibit "1."

9    2.1.71    Reorganized Debtor. Palmdale Hills, as the sole surviving entity after

10  substantive consolidation, as reorganized under the terms of the Plan on and after the Effective

11  Date, and any successors thereto by merger, consolidation, acquisition, or otherwise.

12    2.1.72    Sale Period. Twenty-four (24) months after the Effective Date. However,

13  to the extent that the sale of any property is stayed during this period for any reason, then the term

14  of the Sale Period shall be extended by the duration of the stay.

15    2.1.73    SCC Communities. SCC Communities, LLC, a limited liability company.

16    2.1.74    SCC Palmdale. SCC Palmdale, LLC, a Delaware limited liability

17  company.

18    2.1.75    Schedules. The schedules of assets and liabilities and list of equity

19  security holders Filed by the Debtors, as required by section 521(1) of the Bankruptcy Code,

20  Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from

21  time to time.

22    2.1.76    Secured Claim. Any Claim, including interest, fees, costs, and charges to

23  the extent allowable pursuant to Bankruptcy Code section 506(b) and the Plan, that is secured by a

24  valid and unavoidable Lien on property in which the Debtors have, or any of them or any Estate

25  has, an interest or that is subject to recoupment or setoff under Section 553 of the Bankruptcy

26  Code, to the extent of the value of such Holder's interest in the Debtors', any Debtor's or any

27  Estate's interest in the property, determined pursuant to Section 506(a) of the Bankruptcy Code.

28

1             2.1.77   Seven Brothers. Seven Brothers, LLC, a Delaware limited liability

2  company.

3             2.1.78   SJD Development. SJD Development Corp., a California corporation.

4             2.1.79   SJD Partners. SJD Partners, Ltd., a California limited partnership.

5             2.1.80   SunCal Beaumont.  SunCal Beaumont, LLC, a limited liability company.

6             2.1.81    SunCal Bickford.  SunCal Bickford Ranch, LLC, a Delaware limited

7  liability company.

8             2.1.82   SunCal Century City. SunCal Century City, LLC, a Delaware limited

9  liability company.

10            2.1.83   SunCal Emerald. SunCal Emerald Meadows, LLC, a Delaware limited

11  liability company.

12            2.1.84   SunCal Heartland. SunCal Heartland, LLC, a Delaware limited liability

13  company.

14            2.1.85   SunCal Johansson. SunCal Johansson Ranch, LLC, a Delaware limited

15  liability company.

16            2.1.86   SunCal Marblehead. SunCal Marblehead, LLC, a Delaware limited

17  liability company.

18            2.1.87   SunCal Northlake. LB-L-SunCal Northlake, LLC, a Delaware limited

19  liability company.

20            2.1.88   SunCal Oak Knoll. SunCal Oak Knoll, LLC, a Delaware limited liability

21  company.

22            2.1.89   SunCal Oak Valley. LB-L-SunCal Oak Valley, LLC, a Delaware limited

23  liability company.

24            2.1.90   SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company.

25            2.1.91   SunCal Summit. SunCal Summit Valley, LLC, a Delaware limited

26  liability company.

27            2.1.92   SunCal Torrance. SunCal Torrance Properties, LLC, a Delaware limited

28  liability company.

1          2.1.93   <u>SunCal I</u>. SunCal Communities I, LLC, a Delaware limited liability

2 company.

3          2.1.94   <u>SunCal III</u>. SunCal Communities III, LLC, a Delaware limited liability

4 company.

5          2.1.95   <u>Tax</u>. Any tax, charge, fee, levy, impost or other assessment by any

6 federal, state, local or foreign taxing authority, including, without limitation, income, excise,

7 property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

8 estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

9 additions attributable to, or imposed on or with respect to such assessments.

10          2.1.96   <u>Tax Claim</u>. Any Claim for any Tax to the extent that it is entitled to

11 priority in payment under Section 507(a)(8) of the Bankruptcy Code.

12          2.1.97   <u>Tesoro</u>. Tesoro SF, LLC, a Delaware limited liability company.

13          2.1.98   <u>Trustee Debtor(s)</u>. The following Debtors, individually or collectively,

14 that are represented by their duly-appointed Chapter 11 Trustee, Steven M. Speier: Delta Coves

15 Ventures, LLC, Case No. 8:08-17470-ES; SunCal Heartland, LLC, Case No. 8:08-17407-ES;

16 SunCal Marblehead, LLC, Case No. 8:08-17409-ES; LB-L-SunCal Northlake, LLC, Case 8:08-

17 17408-ES; LB-L-SunCal Oak Valley, LLC, Case 8:08-17404-ES; SunCal Century City, LLC, Case

18 8:08-17458-ES; SunCal PSV, LLC, Case 8:08-17465-ES; SunCal Torrance Properties, LLC, Case

19 No. 8:08-17472-ES; SunCal Oak Knoll, LLC, Case No.8:08-17588-ES.

20          2.1.99   <u>Unclaimed Property</u>. All Cash and New Class A Common Stock deemed

21 to be "Unclaimed Property" pursuant to Sections 9.6 and 9.7 of the Plan.

22          2.1.100   <u>Unsecured Claim</u>. A Claim against any Debtor that is not (a) a Secured

23 Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

24          2.1.101   <u>Voluntary Debtor(s)</u>. The following Debtors, individually or collectively,

25 Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC

26 Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal Emerald Meadows, LLC,

27 SunCal Johansson Ranch, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC,

28 Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., a California limited partnership,

1  SJD Development Corp., a California corporation, SCC Communities LLC, North Orange Del Rio

2  Land LLC and Tesoro SF LLC.

3      **2.2    Rules of Construction**.  For purposes of this Plan and the Disclosure Statement,

4  unless otherwise provided herein or in the Disclosure Statement, (a) whenever from the context it

5  is appropriate, each term, whether stated in the singular or the plural, will include both the singular

6  and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the

7  masculine, feminine and neuter; (c) any reference in this Plan or the Disclosure Statement to an

8  existing document or schedule filed or to be filed means such document or schedule, as it may

9  have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference

10  to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e)

11  except as otherwise indicated herein all references in this Plan or the Disclosure Statement to

12  Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan;

13  (f) the words "therein," "thereunder" and "thereto" refer to this Plan in its entirety rather than to a

14  particular portion of this Plan; and (g) unless otherwise provided in this Plan or the Disclosure

15  Statement, any reference in this Plan or the Disclosure Statement to a contract, instrument, release,

16  indenture, agreement, or other document being in a particular form or on particular terms and

17  conditions means that such document shall be substantially and materially in such form or

18  substantially and materially on such terms and conditions; (iii) any reference in this Plan or the

19  Disclosure Statement to a document, schedule, or exhibit to this Plan, Plan Documentary

20  Supplement, or Disclosure Statement Filed or to be Filed means such document, schedule, or

21  exhibit, as it may have been or may be amended, modified, or supplemented; and (vii) the rules of

22  construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules

23  are not inconsistent with the express terms of this Plan or the Disclosure Statement or any other

24  provision in this Section 2.2.

25      **2.3    Plan Documentary Supplement**.  Forms or summaries of certain documents

26  referred to in this Plan or the Disclosure Statement will be contained in a separate Plan

27  Documentary Supplement, which the Debtors shall file with the Bankruptcy Court and may amend

28  from time to time, prior to the Effective Date.  A copy of the Plan Documentary Supplement may

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1  be obtained from counsel for the Debtors, at the address set forth in Section 17.5 of this Plan, upon

2  written request.

3      **2.4    Exhibits**.  All Exhibits to this Plan and all documents contained in the Plan

4  Documentary Supplement are incorporated into and are a part of this Plan as if set forth in full

5  therein.

6                                            **III.**

7                        **SUBSTANTIVE CONSOLIDATION**

8          To the extent not implemented on an earlier date through an order of the Court by way of

9  separate motion, the individual estates of all of the Debtors shall be substantively consolidated into

10  the estate of Palmdale Hills on the Confirmation Date. Thereafter, the legal existence of all of the

11  Debtors, other than Palmdale Hills, shall be terminated, and all obligations set forth in the Plan

12  shall be carried out by Palmdale Hills as the Reorganized Debtor.

13                                            **IV.**

14                          **UNCLASSIFIED CLAIMS**

15          As required by the Code, the Plan places claims and interests into various Classes

16  according to their right to priority.  However, certain types of claims are not classified in any

17  Classes under the Plan.  These claims are deemed "unclassified" under the provisions of the Code.

18  They are not considered impaired and they do not vote on the Plan, because they are automatically

19  entitled to specific treatment provided for them in the Code.  As such, the Debtors have not placed

20  the following claims in a class.  The treatment of these unclassified claims is as provided below.

21      **4.1    Administrative Claims.**  Administrative Claims are claims for the expenses of

22  administering the Debtors' Cases that are allowed under Code section 507(a)(2) and shall also

23  include any sums owed to a lender providing financing to the Debtors or Related Debtors post-

24  petition, to the extent approved by an order of the Court.  The Code requires that all

25  Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant

26  agrees to a different treatment.  The treatment of Administrative Claims is as described below.

27          A.    Payment Generally.  Except to the extent that the Holder of an Allowed

28  Administrative Claim agrees to a different treatment, and subject to the bar dates for

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1  Administrative Claims set forth in the following Sections, the Distribution Agent shall pay each

2  Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within

3  ten (10) Business Days after the date such Administrative Claim becomes an Allowed

4  Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according

5  to its terms.  Notwithstanding the foregoing, any Allowed Administrative Claim representing

6  obligations incurred in the ordinary course of post-petition business by the Debtors in Possession

7  (including without limitation post-petition trade obligations and routine post-petition payroll

8  obligations) shall be paid in full or performed by the Reorganized Debtor in the ordinary course of

9  business, in accordance with the terms of the particular obligation.

10        B.        Administrative Claims Bar Date.

11              (i)        General Administrative Claims Bar Date.  All applications for final

12  compensation of Professionals for services rendered and for reimbursement of expenses incurred

13  on or before the Effective Date and all other requests for payment of Administrative Claims

14  incurred before the Effective Date under sections 507(a)(2) or 507(b) of the Bankruptcy Code

15  (except only for (i) post-petition, ordinary course trade obligations and routine post-petition

16  payroll obligations incurred in the ordinary course of the Debtors' post-petition business, for which

17  no bar date shall apply, and (ii) post-petition tax obligations, for which the bar date described in

18  the following Section shall apply) shall be Filed with the Bankruptcy Court and served upon the

19  Reorganized Debtor no later than sixty (60) days after the Effective Date (the "General

20  Administrative Claims Bar Date"), unless such date is extended by the Bankruptcy Court after

21  notice to the Reorganized Debtor.  Any such request for payment of an Administrative Claim that

22  is subject to the General Administrative Claims Bar Date and that is not Filed and served on or

23  before the General Administrative Claims Bar Date shall be forever barred; any party that seeks

24  payment of Administrative Claims that (i) is required to file a request for payment of such

25  Administrative Claims and (ii) does not file such a request by the deadline established herein shall

26  be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized

27  Debtor, their estates, or any of their property.

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

(ii)    <u>Administrative Tax Claims Bar Date</u>. All requests for payment of

Administrative Claims by a governmental unit for Taxes (and for interest and/or penalties related

to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the

period from and including the Petition Date through and including the Effective Date ("Tax

Administrative Claims") and for which no bar date has otherwise previously been established,

must be filed and served on the Reorganized Debtor on or before the later of (i) sixty (60) days

following the Effective Date; and (ii) 180 days following the filing of the tax return for such taxes

for such tax year or period with the applicable governmental unit.  Any Holder of any Tax

Administrative Claims that is required to file a request for payment of such taxes and does not file

and properly serve such a request by the applicable bar date shall be forever barred from asserting

any such Tax Administrative Claims against the Debtors, Reorganized Debtor, their estates, or

their property.

    **4.2**    **Priority Unsecured Tax Claims**.  Priority Tax Claims are certain unsecured

income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that

each holder of such a section 507(a)(8) priority tax claim receive the present value of such claim in

deferred cash payments, over a period not exceeding five (5) years from the petition date and that

such treatment not be less favorable than the treatment accorded to non priority unsecured

creditors.

    At the election of the Reorganized Debtor, the Holder of each Allowed Priority Tax Claim

shall be entitled to receive, on account of such Claim, (i) equal cash payments on the last Business

Day of each three-month period following the Effective Date, during a period not to exceed five

years after November 6, 2008, totaling the principal amount of such Claim plus simple interest on

any unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90)

day United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the

Holder of the Allowed Priority Tax Claim and the Debtors (or the Reorganized Debtor), provided

such treatment is on more favorable terms to the Debtors (or the Reorganized Debtor after the

Effective Date) than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed

Priority Tax Claim in Cash.

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

# V.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**5.1    General Overview**. As required by the Code, the Plan places claims and interests into various Classes according to their right to priority and other relative rights. The Plan specifies whether each Class of claims or interests is impaired or unimpaired, and the Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under the Plan and states whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of claims or interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code. With respect to the Classes 1.1 through 1.12 secured claims held by Lehman Commercial, such claims shall be unimpaired until there is a determination by a court of competent jurisdiction determining that either Lehman Commercial's automatic stay in its Chapter 11 proceeding is not implicated by the Plan, the stay has been lifted for purposes of the Plan, or the stay has otherwise dissolved. However, until such a determination has been made and there is a final order on the Debtor's equitable subordination claims against Lehman Commercial, the Debtor's automatic stay shall stay in effect as to Lehman Commercial and/or its successor or assignee.

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| SECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| **Class 1.1** | Lehman Commercial as the holder of a secured claim against Palmdale Hills | **Impaired** |
| **Class 1.2** | Lehman Commercial as the holder of a secured claim against SunCal I | **Impaired** |
| **Class 1.3** | Lehman Commercial as the holder of a secured claim against SunCal III | **Impaired** |
| **Class 1.4** | Lehman Commercial as the holder of a secured claim against SCC Palmdale | **Impaired** |
| **Class 1.5** | Lehman Commercial as the holder of a secured claim against Acton Estates | **Impaired** |
| **Class 1.6** | Lehman Commercial as the holder of a secured claim against SunCal Beaumont | **Impaired** |
| **Class 1.7** | Lehman Commercial as the holder of a secured claim against SunCal Emerald | **Impaired** |
| **Class 1.8** | Lehman Commercial as the holder of a secured claim against SunCal Bickford | **Impaired** |
| **Class 1.9** | Lehman Commercial as the holder of a secured claim against SunCal Johannson | **Impaired** |
| **Class 1.10** | Lehman Commercial as the holder of a secured claim against SunCal Summit | **Impaired** |
| **Class 1.11** | Lehman Commercial as the holder of a secured claim against Seven Brothers | **Impaired** |
| **Class 1.12** | Lehman Commercial as the holder of a secured claim against Kirby Estates | **Impaired** |

| SECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| **Class 2.1** | Lehman ALI as the holder of a secured claim against SunCal Bickford | **Impaired** |
| **Class 2.2** | Lehman ALI as the holder of a secured claim against Delta Coves | **Impaired** |
| **Class 2.3** | Lehman ALI as the holder of a secured claim against SunCal Heartland | **Impaired** |
| **Class 2.4** | Lehman ALI as the holder of a secured claim against SunCal Marblehead | **Impaired** |
| **Class 2.5** | Northlake Holdings and OVC Holdings as the holders of secured claims against SunCal Northlake | **Impaired** |
| **Class 2.6** | Northlake Holdings and OVC Holdings as the holders of secured claims against SunCal Oak Valley | **Impaired** |
| **Class 2.7** | Lehman ALI as the holder of a secured claim against SunCal Century City | **Impaired** |
| **Class 2.8** | Lehman ALI as the holder of a secured claim against SunCal PSV | **Impaired** |
| **Class 2.9** | Lehman ALI as the holder of a secured claim against SunCal Torrance | **Impaired** |
| **Class 2.10** | Lehman ALI as the holder of a secured claim against SunCal Oak Knoll | **Impaired** |
| **Class 2.11** | Lehman ALI as the holder of a secured claim against Del Rio | **Impaired** |
| **Class 2.12** | Lehman ALI as the holder of a secured claim against SCC Communities | **Impaired** |
| **Class 2.13** | Lehman ALI as the holder of a secured claim against Tesoro | **Impaired** |
| **Class 3.1** | Los Angeles County as the holder of a secured claim against Palmdale Hills | **Impaired** |
| **Class 3.2** | Los Angeles County as the holder of a secured tax claim against Acton Estates | **Impaired** |

| SECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| **Class 3.3** | Riverside County as the holder of a secured claim against SunCal Beaumont | **Impaired** |
| **Class 3.4** | Riverside County as the holder of a secured tax claim against SunCal Emerald | **Impaired** |
| **Class 3.5** | Placer County as the holder of a secured tax claim against SunCal Bickford | **Impaired** |
| **Class 3.6** | Stanislaus County as the holder of a secured claim against SunCal Johannson | **Impaired** |
| **Class 3.7** | San Bernardino County as the holder of a secured claim against SunCal Summit | **Impaired** |
| **Class 3.8** | San Bernardino County as the holder of a secured tax claim against Seven Brothers | **Impaired** |
| **Class 3.9** | Contra Costa County as the holder of a secured tax claim against Delta Coves | **Impaired** |
| **Class 3.10** | Riverside County as the holder of a secured tax claim against SunCal Heartland | **Impaired** |
| **Class 3.11** | Orange County as the holder of a secured tax claim against SunCal Marblehead | **Impaired** |
| **Class 3.12** | Los Angeles County as the holder of a secured tax claim against SunCal Northlake | **Impaired** |
| **Class 3.13** | Riverside as the holder of a secured tax claim against SunCal Oak Valley | **Impaired** |
| **Class 3.14** | Los Angeles County as the holder of a secured tax claim against SunCal Century City | **Impaired** |
| **Class 3.15** | San Bernardino County as the holder of a secured tax claim against SunCal PSV | **Impaired** |
| **Class 3.16** | Los Angeles County as the holder of a secured tax claim against SunCal Torrance | **Impaired** |

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

| SECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| **Class 3.17** | Alameda County as the holder of a secured tax claim against SunCal Oak Knoll | **Impaired** |
| **Class 3.18** | Orange County as the holder of a secured tax claim against Del Rio | **Impaired** |
| **Class 3.19** | San Bernardino County as the holder of a secured tax claim against SCC Communities | **Impaired** |
| **Class 3.20** | Los Angeles County as the holder of a secured tax claim against Tesoro | **Impaired** |
| **Class 3.21** | San Bernardino County as the holder of a secured tax claim against Kirby Estates | **Impaired** |
| **Class 4** | Secured Claims not within Class 1.1 through 3.8 | **Impaired** |

| UNSECURED CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Impaired Status** |
| **Class 5** | Allowed Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7) | **Unimpaired** |
| **Class 6** | Allowed Unsecured Claims not classified in Class 5 | **Impaired** |
| **Class 7** | All holders of allowed interests in the Debtors | **Impaired** |

## VI.

## PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS

6.1    **Classes 1.1 through 1.12.** Classes 1.1 through Class 1.12 are comprised of

Lehman Commercial as the holder of claims secured by liens against the property of the indicated

Debtors. The Debtors believe they have equitable subordination claims against Lehman

Commercial similar to those raised against Lehman ALI in the Adversary Case. Until such time

that the Debtors obtain a determination from a court of competent jurisdiction that the Debtors

-24-

1  may pursue their equitable subordination claims against Lehman without violating Lehman

2  Commercial's automatic stay and there is a final judgment on such claims, the automatic stay shall

3  continue to apply to Lehman Commercial.  Assuming the Debtors prevail on the equitable

4  subordination claims against Lehman Commercial, the Plan treatment of Lehman Commercial's

5  claims shall be as follows:

6          A)    The liens held by Lehman Commercial against property of the Debtors'

7  estates shall be transferred to the Distribution Agent and the Distribution Agent shall control all

8  rights relating to the same, including but not limited to any credit bid rights. The Distribution

9  Agent is authorized and empowered to release these liens, without the consent of Lehman

10  Commercial, upon written demand by the Reorganized Debtor. Any county recorder or other

11  governmental authority receiving such a reconveyance, accompanied by a certified copy of the

12  order confirming the Plan and a written document authorizing this release bearing the notarized

13  signature of the Managing Member of the Reorganized Debtor, shall record the same, and thereby

14  release any lien held by Lehman Commercial against the applicable property of the Debtors

15  described in the reconveyance; and

16          B)    The secured claims held by Lehman Commercial, including any unsecured

17  deficiency claims, shall be equitably subordinated to below the level of the holders of Allowed

18  Unsecured Claims in Class 6. After the Allowed Claims of the Class 6 Claimants have been paid

19  in full, any remaining funds or assets in the Reorganized Debtor shall be distributed to the Class

20  1.1 through 2.13 claimants, pro rata, but only to the extent of the allowed amount of such claims.

21  This distribution shall be paid with ninety (90) days after the end of the Sale Period; and

22      **6.2**    **Class 2.1 through Class 2.13**. Classes 2.1 through Class 2.13 are comprised of

23  Lehman ALI, Northlake Holdings and OVC Holdings as holders of claims secured by liens against

24  the property of the indicated Debtors.  Pursuant to the Adversary Case, the Debtors are asserting

25  equitable subordination claims against these classes of secured claims.  Assuming the Debtors

26  prevail on the equitable subordination claims, the treatment of these claims under the Plan shall be

27  as follows:

28

A)    The liens held by Lehman ALI, Northlake Holdings and OVC Holdings against property of the estate shall be transferred to the Distribution Agent as of the Effective Date and the Distribution Agent shall control all rights relating to the same, including but not limited to any credit bid rights.  The Distribution Agent is authorized and empowered to release these liens, without the consent of Lehman ALI, Northlake Holdings and OVC Holdings upon written demand by the Reorganized Debtor. Any county recorder or other governmental authority receiving such a reconveyance, accompanied by a certified copy of the order confirming the Plan and a written document authorizing this release bearing the notarized signature of the Managing Member of the Reorganized Debtor, shall record the same, and thereby release any lien held by Lehman ALI, Northlake Holdings and OVC Holdings against the applicable property of the Debtors described in the reconveyance; and

B)    The secured claims held by Lehman ALI, Northlake Holdings and OVC Holdings including any unsecured deficiency claims, shall be equitably subordinated to below the level of the holders of Class 6 Allowed Unsecured Claims. After the Allowed Claims of the Class 6 Claimants have been paid in full, any remaining funds or assets in the Reorganized Debtor shall be distributed to the Class 1.1 through 2.13 claimants, pro rata, but only to the extent of the allowed amount of such claims. This distribution shall be paid with ninety (90) days after the end of the Sale Period.

**6.3    Classes 3.1 Through 3.21**. Classes 3.1 through 3.21 are comprised of the secured property tax claims held by the county governments against the properties of the Debtors. The treatment of these claims under the Plan is as follows:

A)    These claimants shall retain their liens against the properties secured by the same;

B)    The Allowed Secured Claims of these claimants shall bear interest at four percent (4%) per annum. The interest accruing on these claims will be paid quarterly, with the payments being due on the fifteenth (15th) business day after the end of each calendar quarter prior to the end of the Sale Period.

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    If the properties subject to the liens held by these claimants are sold within the Sale Period,

2   the Allowed Secured Claims secured by these properties shall be paid in full from the proceeds of

3   properties upon closing, and excluding penalties, which shall be disallowed hereunder.

4    Any property subject to the liens of the Class 3.1 through Class 3.21 claimants that is not

5   sold within the Sale Period, shall be deemed abandoned by the Reorganized Debtor, and no further

6   payments shall be made to said claimants on account of their claims. However, such claimants

7   shall have full recourse to the properties subject to their liens as provided under California law.

8    **6.4**    **Class 4.** Class 4 is comprised of all secured claims that are allowed, but excluding

9   any claims within Classes 1.1 through 3.21. Each claim within this class shall be treated as follows

10  under the terms of the Plan at the election of the Reorganized Debtor:

11    A.    Option 1.  The Allowed Secured Claim shall be paid in full through twenty-

12  four (24) equal monthly installments of principal equal to the claimant's Allowed Secured Capital

13  Lease Claim or Other Allowed Secured Claim, plus interest, calculated at the rate of two and one

14  half percentage points (2.5%) over the prime rate of interest as published in the Wall Street Journal

15  on the Effective Date, in full satisfaction of such claim, but such claim may be prepaid at any time

16  without penalty or other charge.  The claimant's Allowed Secured Claim shall continue to be

17  secured by the claimant's existing lien on its collateral.  Upon full satisfaction of the claimant's

18  Allowed Secured Claim, the claimant's Lien on the associated collateral shall be released and the

19  Reorganized Debtor shall retain title to such collateral free and clear of all Liens, claims and

20  encumbrances.  The claimant's Allowed Deficiency Claim shall be treated as an Allowed Class 6

21  Claim.

22    B.    Option 2.  The claimant's collateral shall be returned to the claimant on the

23  Effective Date in full satisfaction of such claimant's Allowed Secured Claim.  The claimant's

24  Allowed Deficiency Claim shall be treated as an Allowed Class 6 Claim.

25    C.    Option 3.  The legal, equitable and contractual rights to which the Allowed

26  Secured Claim entitles the Holder shall be left unaltered.

27    **6.5**    **Class 5**.

28

-27-

6.5.1  <u>In General</u>. Certain Holders of Priority Claims that are referred to in Code Sections 507(a) (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment. The Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the Allowed Amount of such Claims.

6.5.2  <u>Treatment</u>. Each Holder of an Allowed Priority Claim in Class 5 shall be paid (a) the full amount of such Allowed Priority Claim in Cash on the later of (i) the Effective Date, (ii) the date such Claim becomes an Allowed Priority Claim or (iii) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (b) upon such other less favorable terms as may be agreed to by such Holder and the Reorganized Debtors.

**6.6**    **Class 6**. Class 6 consists of all Allowed Unsecured Claims which are not classified in Class 5 and shall include interest at the Federal judgment rate as of November 6, 2008.  The claims in this class shall be treated as follows under the Plan;

A.    <u>Quarterly Distributions</u>. Each quarter during the Sale Period, the Class 6 claimants shall receive a pro rata distribution of the funds in the Net Sale Proceeds Account as of the last day of the preceding quarter less a reserve of ten thousand dollars ($10,000), to the extent the funds in the account as of this date exceed the Minimum Distribution Threshold. This distribution shall be paid on the thirtieth (30th) business day after the end of each calendar quarter.

**6.7**    **Class 7**. Class 7 consists of holders of Allowed Interests in the Debtors. This class shall not receive or retain anything under the Plan.

### VII.

### <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>

**7.1**    **Introduction**. PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about

1  basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing

2  claims.  The Debtors can not represent that the discussion contained below is a complete summary

3  of the law on this topic.

4      Many requirements must be met before the Court can confirm a Plan.  Some of the

5  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

6  the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

7  whether the Plan is feasible.  The requirements described herein are not the only requirements for

8  confirmation.

9      **7.2**    **Who May Object to Confirmation of the Plan.**  Any party in interest may object

10  to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or

11  reject the Plan.

12      **7.3**    **Who May Vote to Accept/Reject the Plan.**  A creditor or interest holder has a

13  right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1)

14  allowed or allowed for voting purposes and (2) classified in an impaired class.

15      7.3.1    What Is an Allowed Claim/Interest.  As noted above, a creditor or interest

16  holder must first have an Allowed Claim or Allowed Interest to vote.  These terms are defined in

17  Sections 2.1.6 and 2.1.7 of this Plan.

18      7.3.2    What Is an Impaired Class.  A class is impaired if the Plan alters the legal,

19  equitable, or contractual rights of the claims or interests in that class, other than the right to

20  accelerate the claim upon certain kinds of defaults.  In this case, the Debtors believe that all

21  classes, except for Class 5, are impaired.

22      7.3.3    Who is Not Entitled to Vote.  The following four types of claims are not

23  entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims

24  entitled to priority pursuant to Code sections 507(a)(2) or (a)(3) and claims in classes that do not

25  receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote

26  because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to

27  Bankruptcy Code sections 507(a)(8) are not entitled to vote because such claims are not placed in

28  classes and they are required to receive certain treatment specified by the Bankruptcy Code.

Claims in classes that do not receive or retain any property under the Plan do not vote because such classes are deemed to have rejected the Plan. The Debtors believe that all classes are entitled to vote except Class 5 and 7. Class 5 is unimpaired under the Plan and consequently is not entitled to vote, because it is conclusively deemed to have accepted the Plan. Class 7 is not receiving or retaining any property under the Plan; accordingly the claimants in this class are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

7.3.4    Who Can Vote in More Than One Class. A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim. Also, a Creditor may otherwise hold Claims in more than one class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

7.3.5    Votes Necessary for a Class to Accept the Plan. A class of claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims *that actually voted*, vote to accept the Plan. A class of interests is deemed to have accepted the Plan when holders of at least two-thirds (2/3) in amount of the interest-holders of such class which actually vote, vote to accept the Plan.

7.3.6    Treatment of Nonaccepting Classes. As noted above, even if there are impaired classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code and at least one impaired class of claims accepts the Plan. The process by which a plan may be confirmed and become binding on non-accepting classes is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired

1  class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case

2  law.

3         7.3.7  <u>Request for Confirmation Despite Nonacceptance by Impaired Class(es)</u>.

4  The parties proposing this Plan will ask the Court to confirm this Plan by cramdown on any

5  impaired class if such class does not vote to accept the Plan.

6  **VIII.**

7  **MEANS FOR IMPLEMENTING THE PLAN**

8      **8.1**  **Introduction.**  This section is intended to explain the means through which the

9  Debtors intend to effectuate the recapitalization and reorganization provided for under the Plan,

10  and it addresses how the Debtors intend to fund the obligations to creditors undertaken in the Plan.

11  It provides information regarding prospective corporate governance, funding sources for Plan

12  obligations, the new equity interests being issued pursuant to the Plan, and other material issues

13  bearing upon the performance of the Plan.

14      **8.2**  **Substantive Consolidation.**  To the extent not implemented on an earlier date

15  through an order of the Court, the individual estates of the Debtors shall be consolidated into the

16  estate of Palmdale Hills on the Confirmation Date.  Thereafter, the legal existence of all of the

17  Debtors, other than Palmdale Hills, shall be terminated, and all obligations set forth in the Plan

18  shall be carried out by Palmdale Hills as the Reorganized Debtor.

19        The Debtors are authorized and empowered to execute all necessary documents and to take

20  all actions necessary in order to insure that Palmdale Hills is duly vested with title to all of their

21  assets and with liability for all of the claims against the Debtors. Thereafter, the corporate

22  existence of the other Debtors shall be terminated.

23        Palmdale Hills shall continue to exist as a separate legal entity, with all of the powers of a

24  limited liability company under the laws of Delaware, and without prejudice to any right to alter or

25  terminate such existence (whether by merger, acquisition, or otherwise) under such applicable state

26  law.  Palmdale Hills shall continue to have all corporate powers and rights accorded to the same

27  under the laws of the jurisdiction of Delaware.

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    **8.3    Equitable Subordination.** If not previously determined, all claims in the

2    Adversary Case seeking equitable subordination of the claims held by Lehman ALI, Lehman

3    Commercial and any other defendants shall be determined at the hearing on the Confirmation of

4    the Plan.

5    **8.4    Management of Palmdale Hills After Effective Date.** On the Effective Date, the

6    operation of the Reorganized Debtor shall to be the responsibility of and managed by SunCal

7    Management, LLC.

8    **8.5    Corporate Actions.** On the Effective Date, all actions contemplated by the Plan

9    shall be deemed authorized and approved in all respects (subject to the provisions of the Plan) by

10    virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and

11    applicable State law. All matters provided for under the Plan involving the corporate structure of

12    the Debtors or the Reorganized Debtor and any corporate action required by the Debtors, or by the

13    Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in

14    effect pursuant to the Bankruptcy Code, without any requirement of further action by the

15    shareholders, officers or directors of the Debtors, or the Reorganized Debtor. On the Effective

16    Date, the appropriate officers of the Reorganized Debtor are authorized and directed to execute

17    and to deliver the Plan Documents and any other agreements, documents and instruments

18    contemplated by the Plan or the Plan Documents in the name and on behalf of the Reorganized

19    Debtor.

20    **8.6    Revesting in, and Transfers to, Debtors of Assets.** Except as otherwise

21    specifically provided in the Plan, on the Effective Date, all property and rights of the Estates of the

22    Debtors shall revest in, or be transferred to, the Reorganized Debtor, free and clear of all Claims,

23    Liens, charges, encumbrances, rights and Interests of Creditors and equity security holders. Such

24    property and rights to be revested in, or transferred to the Reorganized Debtor shall include, but

25    not be limited to, property and rights of every kind and nature, including, without limitation, all

26    claims accruing to the Debtors and their Estates under sections 502(d), 541, 544, 545, 547, 548,

27    549, 550, or 551 of the Bankruptcy Code. As of the Effective Date, the Reorganized Debtor may

28    operate its business and use, acquire, and dispose of property and settle and compromise Claims or

1  Interests without the supervision of, or any authorization from, the Bankruptcy Court or the United

2  States Trustee, and free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than

3  those restrictions specifically provided for in the Plan or the Confirmation Order. As of the

4  Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims, Liens,

5  encumbrances, and other interests of creditors and Holders of Interests, except as otherwise

6  expressly provided herein.

7      **8.7    Cancellation of Existing Securities and Agreements.**  On the Effective Date,

8  except as otherwise specifically provided for in the Plan, (a) all existing Interests and any note,

9  bond, indenture, or other instrument or document evidencing or creating any indebtedness or

10  obligation of or ownership interest in the Debtors, including, without limitation, all notes owed to

11  the Lehman Entities, will be cancelled, and (b) the obligations of, Claims against, and/or Interests

12  in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of

13  designation, bylaws, or certificate or articles of incorporation or similar documents governing

14  existing Interests and any note, bond, indenture, or other instrument or document evidencing or

15  creating any indebtedness or obligation of the Debtors, as the case may be, will be released and

16  discharged.

17                                    **IX.**

18                            **DISTRIBUTIONS**

19      **9.1    Distribution Agent.**  SunCal Management, LLC shall serve as the Distribution

20  Agent for distributions due under the Plan.  The Distribution Agent may employ one or more sub

21  agents on such terms and conditions as it may agree in its discretion.  The Distribution Agent shall

22  not be required to provide any bond in connection with the making of any distributions pursuant to

23  the Plan.

24      **9.2    Distributions.**

25          9.2.1    Dates of Distributions.  Any distribution required to be made on the

26  Effective Date shall be deemed timely if made as soon as practicable after such date and, in any

27  event, within thirty (30) days after such date.  Any distribution required to be made upon a

28

1  Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be

2  deemed timely if made as soon as practicable thereafter.

3            9.2.2    Limitation on Liability.  Neither the Debtors, the Reorganized Debtor, their

4  respective Affiliates, nor any of their respective employees, members, officers, directors, agents, or

5  professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence

6  or willful misconduct) in connection with implementing the distribution provisions of this Plan

7  and the making or withholding of distributions pursuant to the Plan, or (ii) any change in the value

8  of distributions made pursuant to the Plan resulting from any delays in making such distributions

9  in accordance with the Plan's terms (including but not limited to any delays caused by the

10 resolution of Disputed Claims).

11       **9.3    Old Instruments and Securities.**

12           9.3.1    Surrender and Cancellation of Instruments and Securities.  As a condition to

13 receiving any distribution pursuant, to the Plan, each Person holding any note or other instrument

14 or security (collectively "Instruments or Securities" and individually an "Instrument or Security")

15 evidencing, an existing Claim against the Debtor must surrender such Instrument or Security to the

16 Distribution Agent.

17           9.3.2    Rights of Persons Holding Instruments and Securities.  As of the Effective

18 Date, and whether or not surrendered by the holder thereof. (a) all Existing Common Stock,

19 membership interest and all other Instruments and Securities evidencing any Claims or Interests

20 shall be deemed automatically cancelled and deemed void and of no further force or effect, without

21 any further action on the part of any person, and any Claims or Interests under or evidenced by

22 such Existing Common Stock, and membership interest shall be deemed discharged.  All options

23 to purchase any equity interest in any of the Debtors shall be deemed rejected, cancelled and

24 terminated as of the Petition Date.

25           9.3.3    Cancellation of Liens.  Except as otherwise provided in the Plan, any Lien

26 securing any Secured Claim shall be deemed released and discharged, and the Person holding such

27 Secured Claim shall be authorized and directed to release any collateral or other property of the

28 Debtors (including, without limitation, any cash collateral) held by such Person and to take such

1   actions as may be requested by the Reorganized Debtor to evidence the release of such Lien,

2   including, without limitation, the execution, delivery and Filing or recording of such releases as

3   may be requested by Reorganized Debtor at the sole expense of Reorganized Debtor.

4       **9.4    De Minimis Distributions and Fractional Shares**.  No Cash payment of less than

5   ten dollars ($10) shall be made by the Reorganized Debtor to any Holder of Claims unless a

6   request therefore is made in writing to the Reorganized Debtor.  Whenever payment of a fraction

7   of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such

8   fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a

9   consequence of this section shall, after the last distribution on account of Allowed Claims in the

10  applicable Class, be treated as "Unclaimed Property" under the Plan.

11      **9.5    Delivery of Distributions.  Except as provided in Section 9.7 with respect to**

12  **Unclaimed Property, di**stributions to holders of Allowed Claims and Allowed Administrative

13  Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed

14  Claim that has filed a proof of claim, at the address for such holder as maintained by the official

15  claims agent for the Debtors; (2) with respect to each Holder of an Allowed Claim that has not

16  filed a proof of claim, at the address reflected on the Schedules filed by the Debtors, provided,

17  however, that if the Debtors or the Reorganized Debtor has received a written notice of a change of

18  address for such Holder, the address set forth in such notice shall be used; or (3) with respect to

19  each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in

20  writing.

21      **9.6    Undeliverable Distributions.**  If the distribution of **Cash** to the Holder of any

22  Allowed Claim or Allowed Administrative Claim is returned to the Reorganized Debtor as

23  undeliverable (any such distribution being hereinafter referred to as "Unclaimed Property"), no

24  further distribution shall be made to such Holder unless and until the Reorganized Debtor is

25  notified in writing of such Holder's then current address.  Subject to the remainder of this Section

26  and the following Section 9.7, Unclaimed Property shall remain in the possession of the

27  Reorganized Debtor pursuant to this Section, and shall be set aside and (in the case of Cash) held

28  in a segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the

Distribution Agent until such time as the subject distribution becomes deliverable. Nothing contained in the Plan shall require the Reorganized Debtor or any other Person to attempt to locate such Person.

**9.7    Disposition of Unclaimed Property.** If the Person entitled thereto notifies the Reorganized Debtor of such Person's claim to the distribution of Unclaimed Property within nine (9) months following the Effective Date, the Unclaimed Property distributable to such Person, together with any interest or dividends earned thereon, shall be paid or distributed to such Person on the next Distribution Date. Any Holder of an Allowed Claim or Allowed Administrative Claim that does not assert a claim in writing for Unclaimed Property held by the Reorganized Debtor within nine (9) months after the Effective Date shall no longer have any claim to or interest in such Unclaimed Property, and shall be forever barred from receiving any distributions under this Plan or otherwise from the Reorganized Debtor. In such cases any property held for distribution on account of such Claims or Administrative Claims shall be retained by the Reorganized Debtor as follows: pursuant to Bankruptcy Code section 347(b), any undistributed Cash shall be the property of the Reorganized Debtor, free from any restrictions thereon, and such undistributed Cash or securities shall not be subject to the unclaimed property or escheat laws of any State or other governmental unit.

## X.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

**10.1    Objections to Claims.** The Reorganized Debtor shall have the sole and exclusive right to file objections to Claims. Unless another date is established by order of the Bankruptcy Court or the Plan, any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline. The Reorganized Debtor shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

**10.2    Treatment of Disputed Claims.**

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

10.2.1 <u>No Distribution Pending Allowance.</u> If any portion of a Claim is a Disputed Claim, no payment or distribution provided for under the Plan shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

10.2.2 <u>Distribution After Allowance.</u> On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the Effective Date such Claim had been an Allowed Claim and not a Disputed Claim.

10.2.3 <u>Reserves for Disputed Claims.</u> In the event that Disputed Claims in Class 6 are pending, the Distribution Agent shall establish reasonable reserves for such Disputed Claims and the Cash to be distributed to holders of Allowed Class 6 Claims on any Distribution Date shall be adjusted to reflect such reserves. The Distribution Agent may move the Bankruptcy Court for approval of its determination to reserve certain amounts.

## XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**11.1    Executory Contracts Being Assumed.** Effective as of, and conditioned on, the occurrence of the Effective Date: (A) Reorganized Debtor hereby assumes all of the executory contracts and unexpired leases listed on Exhibit "11.1 A-1" to the Plan Documentary Supplement. The Debtors may add any executory contract or unexpired leases to these exhibits, or delete any contract or lease therefrom up to and including the Confirmation Date. However, if any amendments are made to Exhibits "11.1 A-1" later than twenty-four (24) days before the Confirmation Date, then, the affected contract or lease parties shall have at least fifteen (15) days from the date they receive notice of the amendments to serve a written objection to the same on the Debtors. Upon the receipt of any such objection, the Debtors shall promptly set a hearing on the same, and the assumption or rejection of the affected contract or lease will be delayed until the Court makes a determination on this issue. To the extent that an executory contract or unexpired lease has previously been assumed by a Debtor pursuant to an order of the Court, such assumption shall not be affected by the Plan. The assumption of any contracts or leases pursuant to the

provisions of this Section 11.1 shall be only to the extent that such assumed contracts or leases constitute executory contracts and unexpired leases within the meaning of section 365 of the Bankruptcy Code.  Inclusion of a matter in Exhibits "11.1 A-1" does not constitute an admission by the Debtors or Reorganized Debtor that (i) such matter is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, (ii) the Debtors must assume such matter in order to continue to receive or retain rights, benefits, or performance thereunder or that any Claim under such matter must be paid or default cured if it is not an executory contract or unexpired lease, or (iii) such matter is a valid contract or lease.  Any contract or lease assumed pursuant to this Plan shall be assumed as previously amended or otherwise modified by the parties thereto, whether before or after the Petition Date.

**11.2    Executory Contracts Being Rejected**.  The Debtors hereby reject all of the executory contracts and unexpired leases other than those listed on Exhibit "11.1 A-1" to the Plan Documentary Supplement or expressly assumed under the Plan or Plan Documents.  Without limiting the foregoing, the Debtors hereby reject all of its executory contracts and unexpired leases listed on Exhibit "11.2 R-1." The Debtors reserve the right to amend Exhibit "11.2 R-1" to include additional leases and contracts on this exhibit, or to delete leases and contracts from this exhibit, up to and including the Confirmation Date.  However, if any amendments are made to Exhibit "11.2 R-1" later than twenty-four (24) days before the Confirmation Date, then, the affected contract parties shall have at least fifteen (15) days from the date they receive notice of the these additions to serve a written objection to the same on the Debtors.  Upon the receipt of any such objection, the Debtor shall promptly set a hearing on the same, and the assumption or rejection of the affected contract or lease will be delayed until the Court makes a determination on this issue.  To the extent that an executory contract or unexpired lease has previously been rejected by the Debtors pursuant to an order of the Court, such rejection shall not be affected by the Plan.

**11.3    Retention of Property Rights By Reorganized Debtor.**  To the extent that a matter that provides the Debtors with property rights does not constitute an executory contract or unexpired lease, or the Debtors have obtained property rights under the executed portion of an

1   executory contract or unexpired lease, rejection shall not constitute an abandonment by the

2   Debtors of any such property rights.

3   **11.4    Bar Date for Rejection Damages.** Any Claim arising out of the rejection of an

4   executory contract or unexpired lease shall be forever barred and shall not be enforceable against

5   the Debtors, Reorganized Debtor, their Affiliates, their successors or Estates, or their properties,

6   and shall not be entitled to any distribution under the Plan, unless a proof of claim for such Claim

7   is filed and served on the Debtors or Reorganized Debtor within thirty (30) days after the earlier of

8   (a) the date of entry of the order of the Bankruptcy Court approving the rejection of the executory

9   contract or unexpired lease, or (b) the Confirmation Date.

10   **11.5    Cure Statements.** Any party whose executory contract or unexpired lease is

11   assumed under the terms of the Plan must File and serve on the Debtors or Reorganized Debtor a

12   statement within thirty (30) days after the Confirmation Date itemizing all charges and other costs

13   that the party contends must be paid in order to cure any defaults upon the assumption of the

14   contract or lease (the "Cure Statement"). Failure to timely file a Cure Statement shall constitute a

15   waiver of any cure claim and of any defaults occurring prior to the Confirmation Date. If the

16   Debtors or the Reorganized Debtor does not object to the Cure Statement, the Reorganized Debtor

17   will pay the amount reflected on the Cure Statement within the later of thirty (30) days after the

18   Effective Date and thirty (30) days after the Reorganized Debtor's receipt of the Cure Statement.

19   If the Debtors object to the Cure Statement, and cannot resolve their objections with the claimant,

20   the Debtors, as the case may be, may either 1) elect to reject the contract within thirty (30) days

21   after the Cure Statement is Filed, or 2) file an objection to the Cure Statement with the Court. If

22   such an objection is filed, any cure amount payable upon the assumption of the executory contract

23   or unexpired lease shall be due and payable on or before the fifteenth (15th) day after the entry of a

24   Final Order fixing the cure amount and then only in the amount fixed by such order.

25   **11.6    Changes in Rates Subject to Regulatory Commission Approval.** The Debtors

26   are not subject to governmental regulatory commission approval of their rates.

27   **XII.**

28   **EFFECT OF CONFIRMATION OF PLAN**

-39-

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    **12.1    Discharge.** Except as otherwise specifically provided in the Plan or in the

2    Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the distributions and

3    rights that are provided in the Plan shall be in complete satisfaction, discharge and release,

4    effective as of the Effective Date, of all Claims, whether known or unknown, against liabilities of,

5    Liens on, obligations of, rights against and Interests in the Debtors, or any of their assets or

6    properties, regardless of whether any property shall have been distributed or retained pursuant to

7    the Plan on account of such Claims, rights and Interests, including but not limited to, Claims and

8    Interests that arose before the Confirmation Date, including all debts of the kind specified in

9    section 502(g), 502(h) and 502(i) of the Bankruptcy Code, in each  case whether or not (a) a proof

10    of claim or interest based upon such Claim, debt or Interest is filed or deemed filed under

11    section 501 of the Bankruptcy Code, (b) a Claim of Interest based upon such Claim, debt, right or

12    Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim,

13    right, or Interest accepted the Plan.  The Confirmation Order shall constitute a determination of the

14    discharge of all of the Claims against and Interests in the Debtors, subject to the occurrence of the

15    Effective Date.

16    **12.2    Injunction.** Except as otherwise expressly provided in the Plan, the documents

17    executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, all

18    Persons and Entities who have held, currently hold, or may hold a debt, Claim, or Interest

19    discharged pursuant to the terms of the Plan (including but not limited to States and other

20    governmental units, and any State official, employee, or other entity acting in an individual or

21    official capacity on behalf of any State or other governmental units) shall be permanently enjoined

22    from: (a) taking any of the following actions on account of any such discharged debt, Claim, or

23    Interest: (1) commencing or continuing in any manner any action or other proceeding against the

24    Debtors and the Reorganized Debtor, their successors, or their property; (2) enforcing, attaching,

25    executing, collecting, or recovering in any manner any judgment, award, decree, or order against

26    the Debtors, or the Reorganized Debtor, their successors, or their property; (3) creating, perfecting,

27    or enforcing any Lien or encumbrance against the Debtors or the Reorganized Debtor, their

28    successors, or their property; (4) asserting any set off, right of subrogation, or recoupment of any

1    kind against any obligation due the Debtors or the Reorganized Debtor, their successors, or their

2    property; and (5) commencing or continuing any action, in any manner, in any place that does not

3    comply with or is inconsistent with the provisions of this Plan; and (b) taking any of the following

4    actions on account of any claims or rights of action that are revested in, or transferred to, the

5    Reorganized Debtor as of the Effective Date or under the Plan (to the extent one or more Debtors'

6    first held such claim or rights of action or held the right to assert such claim or right of action after

7    the Petition Date), including, without limitation: (1) asserting such claims or rights of action

8    against nondebtor third parties; and (2) commencing or continuing in any manner any action or

9    other proceeding of any kind with respect to such claims or rights of action.  Any person or entity

10   injured by any willful violation of such injunction shall recover actual damages, including costs

11   and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the

12   willful violator.

13                                          **XIII.**

14                    **LIMITATION OF LIABILITY AND RELEASES**

15       **13.1    No Liability for Solicitation or Participation.**  As specified in section 1125(e) of

16   the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that

17   participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in

18   good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be

19   liable, on account of such solicitation or participation, for violation of any applicable law, rule, or

20   regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance,

21   sale, or purchase of securities.

22       **13.2    Limitation of Liability.**  Effective as of the Effective Date, none of the Debtors,

23   the Reorganized Debtor, or their respective Affiliates, nor any of their respective members,

24   officers, directors, employees and other agents, advisors, attorneys and accountants shall have or

25   incur any liability to any Holder of any Claim or Interest or any other Person for any act or

26   omission in connection with or arising out of the negotiation, preparation and pursuit of

27   confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the

28   administration of the Plan, the Cases or the property to be distributed under the Plan except:  (a)

-41-

1  the Reorganized Debtor shall be liable for the performance of obligations assumed by them or

2  imposed upon them under or by the Plan; and (b) for liability based on willful misconduct as

3  finally determined by a Final Order of the Bankruptcy Court.  Each of the Debtors, Reorganized

4  Debtor and their respective Affiliates, and each of their respective officers, directors, employees

5  and other agents, advisors, attorneys and accountants) shall be entitled to rely, in every respect,

6  upon the advice of counsel with respect to their duties and responsibilities under or with respect to

7  the Plan.

8                                          **XIV.**

9                  **CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**

10        **14.1    Conditions Precedent to Plan Confirmation.**  The following are conditions

11  precedent to Confirmation of the Plan: The Court shall have entered the Confirmation Order.

12        **14.2    Conditions Precedent to Plan Effectiveness.**  The following shall be conditions

13  precedent to the effectiveness of the Plan and the occurrence of the Effective Date.

14              A.      The Confirmation Order shall be a Final Order in form and substance

15  reasonably satisfactory to the Reorganized Debtor.

16              B.      All agreements and instruments contemplated by, or to be entered into

17  pursuant to, the Plan, including, without limitation, each of the Plan Documents necessary for

18  consummation of the Plan, shall have been duly and validly executed and delivered by the parties

19  thereto and all conditions to their effectiveness shall have been satisfied or waived.

20        **14.3    Waiver of Conditions.**  The conditions set forth in Sections 14.1 and 14.2 may be

21  waived at any time, without notice, leave or order of the Bankruptcy Court, and without any formal

22  action other than proceeding to obtain the Confirmation Order and consummate the Plan.

23                                          **XV.**

24                          **RETENTION OF JURISDICTION**

25        **15.1    Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order

26  or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the

27  Cases and any of the proceedings arising from, or relating to, the Cases pursuant to Section 1142

28  of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy

1 | Code and other applicable law, including, without limitation, such jurisdiction as is necessary to

2 | ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of

3 | the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

4 |       A.     to hear and determine any and all objections to the allowance, or requests

5 | for estimation, of Claims or the establishment of reserves pending the resolution of Disputed

6 | Claims;

7 |       B.     to consider and act on the compromise and settlement of any Claim against,

8 | or cause of action on behalf of, any Debtor or any Estate;

9 |       C.     to hear and determine any motions pending on the Effective Date to assume,

10 | assume and assign or reject any executory contract or unexpired lease and to determine the

11 | allowance of any Claim resulting therefrom;

12 |       D.     to enter such orders as may be necessary or appropriate in connection with

13 | the recovery of the Debtors' assets wherever located;

14 |       E.     to hear and determine any and all applications for allowance of

15 | compensation and reimbursement of expenses;

16 |       F.     to hear and determine any and all controversies, suits and disputes arising

17 | under or in connection with the interpretation, implementation or enforcement of the Plan and any

18 | of the documents intended to implement the provisions of the Plan or any other matters to be

19 | resolved by the Bankruptcy Court under the terms of the Plan.

20 |       G.     to hear and determine any motions or contested matters involving Taxes, tax

21 | refunds, tax attributes and tax benefits and similar and related matters with respect to any Debtor

22 | arising prior to the Effective Date or relating to the administration of the Cases, including, without

23 | limitation, matters involving federal, state and local Taxes in accordance with Sections 346, 505

24 | and 1146 of the Bankruptcy Code;

25 |       H.     to hear and determine any and all applications, adversary proceedings and

26 | contested matters pending on the Effective Date or that may be commenced thereafter as provided

27 | in the Plan;

28 |

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    I.  to effectuate distributions under and performance of the provisions of the

2 Plan;

3    J.  to hear and determine any applications to modify any provision of the Plan

4 to the full extent permitted by the Bankruptcy Code;

5    K.  to correct any defect, cure any omission or reconcile any inconsistency in

6 the Plan, the exhibits to the Plan and annexes thereto, including any of the Plan Documents, or any

7 order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out

8 the purposes and intent of the Plan;

9    L.  to determine such other matters as may be provided for in the Confirmation

10 Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or

11 any other applicable law;

12    M.  to enforce all orders, judgments, injunctions and  exculpations issued or

13 entered in connection with the Cases or the Plan;

14    N.  to enter such orders as may be necessary or appropriate in aid of

15 confirmation and to facilitate implementation of the Plan, including, without limitation, any orders

16 as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked,

17 modified or vacated;

18    O.  to determine any other matter not inconsistent with the Bankruptcy Code;

19    P.  to issue a final decree closing the Cases.

20            **XVI.**

21      **MODIFICATION OR WITHDRAWAL OF PLAN**

22    **16.1**  **Modification of Plan.**  At any time prior to confirmation of the Plan, the

23 Reorganized Debtor may supplement, amend or modify the Plan.  After confirmation of the Plan,

24 the Debtors or Reorganized Debtor may (x) apply to the Bankruptcy Court, pursuant to Section

25 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy

26 defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

27    **16.2**  **Nonconsensual Confirmation.**  In the event that any impaired Class of Claims or

28 Interests shall fail to accept the Plan in accordance with section  1129(a)(8) of the Bankruptcy

-44-

1  Code, the Debtors (i) may request that the Bankruptcy Court confirm the Plan in accordance with

2  section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1, and may modify

3  the Plan in accordance with section 1127(a) of the Bankruptcy Code.

4  **XVII.**

5  **MISCELLANEOUS**

6  **17.1  Payment of Statutory Fees.**  All quarterly fees due and payable to the Office of the

7  United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be

8  paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an

9  adequate reserve shall have been established and set aside for payment in full thereof, as required

10  by section 1129(a)(12) of the Bankruptcy Code.  The Reorganized Debtor shall remain responsible

11  for timely payment of quarterly fees due and payable after the Effective Date and until the

12  Reorganized Debtor's Case is closed, to the extent required by section 1930(a)(6) of title 28 of the

13  United States Code.

14  **17.2  Payment Dates.**  Whenever any payment or distribution to be made under the Plan

15  shall be due on a day other than a Business Day, such payment or distribution shall instead be

16  made, without interest, on the immediately following Business Day.

17  **17.3  Headings.**  The headings used in the Plan are inserted for convenience only and

18  neither constitutes a portion of the Plan nor in any manner affect the construction of the provisions

19  of the Plan.

20  **17.4  Other Documents and Actions.**  The Reorganized Debtor may execute such other

21  documents and take such other actions as may be necessary or appropriate to effectuate the

22  transactions contemplated under this Plan.

23  **17.5  Notices.**  All notices and requests in connection with the Plan shall be in writing

24  and shall be hand delivered or sent by mail addressed to:

25  

26  **To the Debtors:**
Bruce V. Cook
General Counsel

27  Authorized Agent of Voluntary Debtors
2392 Morse Ave

28  Irvine, CA 92614-6234

-45-

**To the Trustee Debtors:**
Steven Speier
Squar, Milner, Peterson, Miranda & Williamson LLP
4100 Newport Place Drive, Third Floor
Newport Beach, CA 92660

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section 17.5, which designation will be effective on receipt.

      **17.6**   **Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

      **17.7**   **Binding Effect.**  The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Debtors, Reorganized Debtor, holders of Claims, holders of Interests, and their respective successors and assigns.

      **17.8**   **Successors and Assigns.**  The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

      **17.9**   **Severability of Plan Provisions.**  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid,

-46-

void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**17.10  No Waiver.**  The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors or Reorganized Debtor's right to object to or examine such Claim, in whole or in part.

**17.11  Inconsistencies.**  In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the Exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**17.12  Exemption from Certain Transfer Taxes and Recording Fees**.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor or Related Debtor to the Reorganized Debtor or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.13  Post-Confirmation Status Report.**  Within 180 days following the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan.DOC

1    **17.14  Post-Confirmation Conversion/Dismissal.**  A creditor or party in interest may

2    bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there

3    is a default in performing the Plan.  The Reorganized Debtor reserves the right to object to any

4    motion for conversion or dismissal.  If the Court orders any of the Cases converted to Chapter 7

5    after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and

6    that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic

7    stay will be reimposed upon the revested property, but only to the extent that relief from stay was

8    not previously authorized by the Court during this case.

9    **17.15  Final Decree.**  Once an Estate has been fully administered, as referred to in

10   Bankruptcy Rule 3022, the Reorganized Debtor, or other party as the Court shall designate in the

11   Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of

12   such Debtor.

13   Date:  February __, 2009

14

15                                             By: _____

16                                                   Bruce Cook
                                                     Authorized Agent for the Voluntary Debtors

17

18

19

20

21

22

23

24

25

26

27

28

-48-

1      **17.14   Post-Confirmation Conversion/Dismissal.**  A creditor or party in interest may

2  bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there

3  is a default in performing the Plan.  The Reorganized Debtor reserves the right to object to any

4  motion for conversion or dismissal.  If the Court orders any of the Cases converted to Chapter 7

5  after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and

6  that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic

7  stay will be reimposed upon the revested property, but only to the extent that relief from stay was

8  not previously authorized by the Court during this case.

9      **17.15   Final Decree.**  Once an Estate has been fully administered, as referred to in

10  Bankruptcy Rule 3022, the Reorganized Debtor, or other party as the Court shall designate in the

11  Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of

12  such Debtor.

13  Date: February 4, 2009

14

15  By: _____

16       Bruce Cook
        Authorized Agent for the Voluntary Debtors

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described: **DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 4, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒   Service information continued on attached
page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____ I served the following **person(s)** and/or **entity(ies)** at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on
attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 4, 2009I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Judge Erithe A. Smith
bcook@suncal.com
Palmdale Hills Property, LLC
and its related entities

sspeier@squarmilner.com
Steven N. Speier, Ch 11 Trustee
c/o Squar Milner

☐  Service information continued on
attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 4, 2009 | Susan Connor | |
|---|---|---|
| Date | Type Name | Signature |

NEF SERVICE LIST

- Raymond H Aver    ray@averlaw.com

- James C Bastian    jbastian@shbllp.com

- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com

- Caroline Djang    crd@jmbm.com

- Joseph A Eisenberg    jae@jmbm.com

- Richard W Esterkin    resterkin@morganlewis.com

- Alan J Friedman    afriedman@irell.com

- Kelly C Griffith    bkemail@harrisbeach.com

- Asa S Hami    ahami@morganlewis.com

- Michael J Hauser    michael.hauser@usdoj.gov

- Michelle Hribar    mhribar@rutan.com

- Peter W Lianides    pj@winthropcouchot.com

- Charles Liu    cliu@winthropcouchot.com

- Kerri A Lyman    klyman@irell.com

- Cassandra J Richey    cmartin@pprlaw.net

- Debra Riley    driley@allenmatkins.com

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

- Jason Wallach    jwallach@bergerkahn.com

MAINDOCS-#126408-v9-SCCPalmdaleJtCh11Plan DOC