ORIGINAL

FILED
FEB 20 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
BRIAN PROCEL, State Bar No. 218657
bprocel@millerbarondess.com
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

[Proposed] Special Litigation Counsel for the Debtors and Debtors-in-Possession and the Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re

Palmdale Hills Property, LLC, and its Related Debtors,

Jointly Administered Debtors and Debtors-in-Possession

Affects:

- [x] All Debtors
- [ ] Palmdale Hills Property, LLC,
- [ ] SunCal Beaumont Heights, LLC
- [ ] SCC/Palmdale, LLC
- [ ] SunCal Johannson Ranch, LLC
- [ ] SunCal Summit Valley, LLC
- [ ] SunCal Emerald Meadows LLC
- [ ] SunCal Bickford Ranch, LLC
- [ ] Acton Estates, LLC
- [ ] Seven Brothers LLC
- [ ] SJD Partners, Ltd.
- [ ] SJD Development Corp.
- [ ] Kirby Estates, LLC
- [ ] SunCal Communities I, LLC
- [ ] SunCal Communities III, LLC
- [ ] SCC Communities LLC
- [ ] North Orange Del Rio Land, LLC
- [ ] Tesoro SF, LLC

And

- [ ] LB-L-SunCal Oak Valley, LLC
- [ ] SunCal Heartland, LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES
8:08-bk-17224-ES; 8:08-bk-17242-ES
8:08-bk-17225-ES; 8:08-bk-17245-ES
8:08-bk-17227-ES; 8:08-bk-17246-ES
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES
8:08-bk-17249-ES; 8:08-bk-17573 ES
8:08-bk-17574 ES; 8:08-bk-17575 ES

And
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
8:08-bk-17588-ES

Chapter 11 cases

**DECLARATION OF LOUIS R. MILLER IN SUPPORT OF APPLICATION OF RELATED DEBTORS AND DEBTORS-IN-POSSESSION FOR AUTHORITY TO EMPLOY MILLER BARONDESS, LLP AS SPECIAL LITIGATION COUNSEL FOR MATTERS IN THE BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

[No Hearing Required]

[11 U.S.C. § 327(e)]

☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC,

Debtors

**DECLARATION OF LOUIS R. MILLER**

I, LOUIS R. MILLER, declare:

1. I am an attorney, duly admitted to practice law before all courts for the State of California and the United States District Court for the Central District of California. I am a member of the law firm of Miller Barondess, LLP ("Miller Barondess"), proposed special litigation counsel for each of Palmdale Hills Property, LLC; SunCal Beaumont Heights, LLC; SCC/Palmdale, LLC; SunCal Johannson Ranch, LLC; SunCal Summit Valley, LLC; SunCal Emerald Meadows, LLC; SunCal Bickford Ranch, LLC; Acton Estates, LLC; Seven Brothers, LLC; SJD Partners, Ltd.; SJD Development Corp.; Kirby Estates, LLC; SunCal Communities I, LLC; SunCal Communities III, LLC; SCC Communities LLC; North Orange Del Rio Land, LLC; and Tesoro SF, LLC, the jointly administered related debtors and related debtors-in-possession herein (the "Related Debtors"); and, in separate, concurrently-filed applications, for Steven M. Speier, Chapter 11 Trustee for the estates of LB/L-SunCal Oak Valley, LLC, LB/L SunCal Northlake, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance LLC, SunCal Oak Knoll, LLC, SunCal Marblehead, LLC, SunCal Heartland, LLC (the "Trustee Debtors") (collectively with the Related Debtors, the "Debtors").

2. I am the attorney that is primarily responsible for the representation of (1) the Related Debtors and certain creditors and officers and affiliates of the Trustee Debtors in connection with the adversary proceeding filed against Lehman ALI, Inc. and various other Lehman affiliates with this Court on or about January 6, 2009 (the "Lehman Adversary Proceeding") (filed prior to the appointment of the Trustee, and subsequently amended naming the Trustee as a Plaintiff on behalf of the Trustee Debtors), which is associated with the bankruptcy proceedings of each of the above-named Debtors; and (2) the complaint for injunctive relief that was or will shortly be filed on behalf of the Debtors seeking to enjoin third party actions against the companies that have posted bonds in connection with the Debtors' projects—Arch Insurance Company ("Arch"), Bond Safeguard Insurance Company ("Safeguard") (collectively, the "Bond Companies")—or purported indemnity actions against SCC Acquisitions, Inc., ("SCC Inc.") or its president Bruce Elieff ("Elieff") pending resolution of the equitable subordination claims against Lehman in the Lehman Adversary Proceeding and effectuation of the Debtors' plan (the "Bond Injunction Action"); as well as any other adversary proceedings that may be filed in connection

with the Debtors' proceedings in order to protect the value of the Debtors' estates and the interests of the Debtors and their creditors (collectively, the "Adversary Proceedings"), for which Miller Barondess seeks to be employed. I submit this declaration in support of the foregoing application (the "Application"). A copy of the First Amended Complaint in the Lehman Adversary Proceeding (the "Lehman Adversary Complaint") is attached hereto as Exhibit A.

3. Miller Barondess seeks to be employed as special litigation counsel to represent the Debtors in connection with the Adversary Proceedings. Miller Barondess' services will be limited to matters in the connection with the Adversary Proceedings. Aside from the Adversary Proceedings, Miller Barondess does not seek to be employed in connection with any matters pending or that may arise in this Court, even if such matters may relate to the Debtors' estates, other than matters pertaining to Miller Barondess' employment. The services to be rendered by Miller Barondess in connection with the Bankruptcies will not be duplicative of the services rendered by the Debtors' general bankruptcy counsel—Winthrop Couchot PC—or any other professionals employed or to be employed by the Debtors

4. I believe that Miller Barondess is qualified to represent the Debtors in such matters. Miller Barondess is a law firm specializing in complex business litigation—trials and appeals. The lawyers at Miller Barondess come from the nation's leading law schools, including Harvard, University of California, Berkeley (Boalt Hall), University of Michigan, Yale, University of Virginia, New York University, University of California Los Angeles (UCLA) and University of Southern California. The attorneys at Miller Barondess have extensive experience representing clients in a broad range of litigation matters. Additional information regarding Miller Barondess, in general, and its expertise in complex business litigation, in particular, is available on Miller Barondess' website at www.millerbarondess.com. In addition to my biography, biographies of other individual attorneys that Miller Barondess anticipates will render services to the Debtors in this matter are appended hereto, collectively, as Exhibit B.

5. To date, Miller Barondess has not entered any engagement agreement with any of the Debtors for services rendered or to be rendered in connection with the Adversary Proceedings. Rather, Miller Barondess has been engaged by SunCal Management, LLC, ("SunCal Management"), as the

manager of the Projects owned, directly or indirectly, by one or more of the Debtors, and by SCC Acquisitions, Inc., ("SCC Inc."), and certain other direct or indirect owners of the Debtors (all of which are wholly-owned indirectly by SCC Acquisitions, LLC ("SCC LLC")) (collectively, "SunCal"), to render services on behalf of the Debtors. The Bond Companies have also agreed to jointly fund the litigation of the Lehman Adversary Proceeding and the Bond Injunction Action.

6. The current standard hourly rates for the individual attorneys that Miller Barondess anticipates will render services to the Debtors are as follows: (1) Louis R. Miller-$900.00; (2) Brian Procel-$550.00; (3) Martin Pritikin-$525.00; (4) James Miller-$425.00; and (5) Kelley Knight-$360.00. The standard hourly rate for paralegal work is $235.00. Such rates are subject to change from time to time. Based on my experience practicing law in Los Angeles for over thirty-six years, these hourly rates are commensurate with the rates charged by attorneys with comparable skill, qualifications and experience at law firms of comparable reputation in the Southern California market.

7. However, in order to facilitate financing of the Lehman Adversary Proceeding and any other necessary Adversary Proceedings for the benefit of the Debtors and all of their creditors, Miller Barondess is charging SunCal a blended discounted rate of $450.00 per hour for all attorney time, and $195.00 per hour for paralegal time.

8. Because Miller Barondess is attempting to benefit the Related Debtors, the Trustee Debtors, and their creditors through its prosecution of the Adversary Proceedings, Miller Barondess reserves the right, should the Adversary Proceedings result in a benefit accruing to the Debtors' estates and the creditors, to requests that its fees and expenses in connection with the Adversary Proceedings be reimbursed by the estates of the Debtors, according to the discounted rate schedule currently being charged to SunCal and/or the Bond Companies, i.e., $450.00 per hour for attorney time and $195 per hour for paralegal time. Miller Barondess further reserves the right in such event to petition this Court to retroactively recoup from the Debtors' estates the difference between the discounted attorneys fee and paralegal rates and the standard rates, or such portion of the difference as this Court finds just and reasonable under the circumstances. Miller Barondess understands that any compensation in this case, from funds which are property of the Debtors' estates, is subject to approval of this Court.

9. Miller Barondess also requests that this Court authorize payment from the estates of the

Debtors to reimburse SunCal for sums expended prior to Court approval of this Application toward Miller Barondess' fees and expenses incurred in connection with the Adversary Proceedings, assuming such sums are documented to the Court's satisfaction and deemed reasonable by the Court.

10. Miller Barondess will record its time for services rendered as set forth in the applicable rules and guidelines of the Bankruptcy Court, the Office of the United States Trustee, and/or any other applicable rules or guidelines. Miller Barondess will seek approval and payment of its fees and reimbursement of its expenses from this Court or otherwise as required by any Bankruptcy Court Local Rules or the procedures set forth in the United States Trustee Guidelines for compensation and reimbursement of expenses, and/or any other applicable rules or guidelines.

11. The Related Debtors, the Trustee, on behalf of the Trustee Debtors, and Miller Barondess have agreed, subject to the Court's approval, to the terms of Miller Barondess' employment in the Debtors' cases.

12. Prior to acceptance of the representation of the Debtors, Miller Barondess caused a search to be made of Miller Barondess' conflicts database in the name of each of the Debtors. That search revealed that Miller Barondess does not represent or hold any interest adverse to any of the Debtors or to their respective estates with respect to the matter on which Miller Barondess seeks to be employed. Other than through Miller Barondess' representation of the Debtors as discussed in the Application and as set forth in paragraphs 2 through 3 and 5 through 7 above and paragraphs 13 through 16 below, I am not aware of any connection that Miller Barondess or any of its professionals have with the Debtors, the Debtors' creditors or shareholders, parties in interest, their respective attorneys and accountants, the United States Trustee or employees of the Office of the United States Trustee, other than through Miller Barondess' contemplated representation of the Debtors as discussed herein. In fact, the interest of Suncal, the Debtors and the Trustee appear to be perfectly aligned in that all three have the primary objective of repaying the Debtors' creditors through a disposition of the projects and equitable subordination of Lehman's liens.

13. Prior to the dates upon which the Debtors filed their bankruptcy cases, Miller Barondess represented Elieff, SCC Inc. and certain of its affiliates in matters unrelated to the Adversary Proceedings. These represented affiliates include: SCC LLC; Suncal La Quinta, LLC; SunCal Highland

Falls, LLC; SunCal Platinum Pointe, LLC; SunCal Ranch Ventures, LLC; LB/L SunCal Oak Valley, LLC; LBREP/L-SunCal Summerwind Ranch, LLC; CWC, Inc.; Diamond Hills Ranch Partners, Ltd.; DHRP, Inc.; Landings 750, LLC.; CEV, Inc.; Castaic Development Corporation; SJD Development Corporation; Rancho Etiwanda 685, LLC; Serrano Heights 1400, LLC; Serrano Heights East, LLC; SHD 1400, Inc.; Moorpark Equity Partners, Ltd.; KRE, LLC; SCNC, LLC; Suncal of Northern California, LLC; Suncal/Dayton Canyon, LLC; Suncal/West Hills, LLC; SunCal Sunny Hills, LLC; Olinda Properties, Inc.; Hillcrest 376, LLC; Castaic Equity Partners, Ltd.; UCP, Inc.; and SunCal Amerige, LLC. LB/L SunCal Oak Valley, LLC (one of the Trustee Debtors in the Lehman Adversary Proceeding) and LBREP/L-SunCal Summerwind Ranch, LLC (a debtor in a separate, unrelated bankruptcy proceeding) are joint SunCal-Lehman entities. Miller Barondess' representation of these entities in separate actions involving contract disputes with third parties was unrelated to the Lehman Adversary Proceeding, and both representations concluded approximately a year ago. Following the bankruptcy filing of LBREP/L-SunCal Summerwind Ranch, LLC—which is not involved in the Lehman Adversary Proceeding—Miller Barondess filed a proof of claim for attorneys' fees with that entity's bankruptcy estate. SunCal subsequently paid those fees, and so Miller Barondess would reimburse to SunCal any sums it recovered on its proof of claim against LBREP/L-SunCal Summerwind Ranch, LLC.

14. In one of those matters, Miller Barondess represented certain joint LB/L-SunCal entities—LB/L SunCal Mandalay LLC, LB/L SunCal Master LLC, and LB/L SunCal Weston LLC—in a suit by a third party (*Kurtin v. Elieff*, Orange County Superior Case No. 30-2007-00100307). However, the parties to that dispute were different than the parties to the Lehman Adversary Proceeding, and that dispute was unrelated to the Lehman Adversary Proceeding.

15. Lehman expressly waived any conflicts of interest in connection with Miller Barondess' representation; the retention agreement provides that:

> By virtue of your execution of this agreement, you consent to and hereby waive the potential conflict with respect to the retention of the Firm. Should an actual conflict arise, we will advise you immediately, and should a conflict come to your attention, you will advise us thereof promptly, whereupon we will take such action as is consistent with our ethical obligations.
>
> The firm also represents Elieff and SunCal entities in other matters unrelated to the above-referenced matter. Nothing contained herein shall preclude the Firm from representing Elieff and/or SunCal in current and future matters, including, but not limited to, any future

matters in which Lehman or any of its affiliates are, or may be, adverse to Elieff and/or SunCal, including, by way of example but without limitation, anything related to the Pacific Pointe project in San Juan Capistrano.

Based on the joint representation herein, Lehman and its affiliates hereby agree not to seek to disqualify the firm from representing Elieff or SunCal based on the firm's representation of the LB/L Entities in the above-referenced matter. This waiver includes, but is not limited to, any disputes which may arise between SunCal and Lehman and any of their respective affiliates in this, or any other, matter.

The Retention Agreement is attached hereto as Exhibit C. The Retention Agreement was executed by David Broderick, counsel for the LB/L-SunCal entities.

16. Although not required to do so, Miller Barondess withdrew as counsel for the LB/L-SunCal entities in *Kurtin*. The letter from Daniel Miller to Neil Erickson dated December 31, 2008, is attached hereto as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 19, 2009, at Los Angeles, California.

LOUIS R. MILLER

# EXHIBIT "A"

LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
MARTIN PRITIKIN, State Bar. No. 210845
mpritikin@millerbarondess.com
BRIAN PROCEL, State Bar No. 218657
bprocel@millerbarondess.com
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiffs

PAUL J. COUCHOT, State Bar No. 131934
PETER W. LIANIDES, State Bar No. 160517
CHARLES LIU, State Bar No. 190513
**WINTHROP COUCHOT, P.C.**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4165
Facsimile: (949) 720-4111

General Insolvency Counsel For
Administratively Consolidated
Debtors-in-Possession

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400 FAX (310) 552-8400

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

In re

PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,

Jointly Administered Debtors and Debtors-in-Possession

Affects:

☒ All Debtors
☐ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC

**CASE NO. 8:08-bk-17206-ES**

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-17588-ES.

**Adversary Proceeding No. 8:09-bk-01005-ES**

**FIRST AMENDED COMPLAINT FOR:**

1) **EQUITABLE SUBORDINATION;**

- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☐ SCC Communities LLC
- ☐ North Orange Del Rio Land, LLC
- ☐ Tesoro SF, LLC
- ☐ LB-L-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LB-L-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

**ADVERSARY PROCEEDING**

**SunCal Equity Member Plaintiffs:**
SUNCAL COMMUNITIES II, LLC, a Delaware limited liability company; SCC/OAK VALLEY, LLC, a Delaware limited liability company; SCC/NORTHLAKE, LLC, a Delaware limited liability company; SUNCAL DELTA COVES, LLC, a Delaware limited liability company; SCC JV VENTURES LLC, a Delaware limited liability company

**Voluntary Debtor Plaintiffs**
PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company; SUNCAL BEAUMONT HEIGHTS, LLC, a Delaware limited liability company; SCC/PALMDALE, LLC, a Delaware limited liability company; JOHANNSON RANCH, LLC, a Delaware limited liability company; SUNCAL SUMMIT VALLEY, LLC, a Delaware limited liability company; SUNCAL EMERALD MEADOWS, LLC, a Delaware limited liability company; SUNCAL BICKFORD RANCH, LLC, a Delaware limited liability company; ACTON ESTATES, LLC, a Delaware limited liability company; SEVEN BROTHERS, LLC, a Delaware limited liability company; SJD DEVELOPMENT CORP., a Delaware corporation; KIRBY ESTATES, LLC, a Delaware limited liability company; NORTH ORANGE DEL RIO LAND, LCC, a Delaware limited liability company; TESORO SF, LLC, a Delaware limited liability company; SCC COMMUNITIES, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES I, LLC, a Delaware limited liability company; SUNCAL COMMUNITIES III, LLC, a Delaware limited liability company;

**2) INTENTIONAL MISREPRESENTATION;**

**3) NEGLIGENT MISREPRESENTATION;**

**4) BREACH OF CONTRACT;**

**5) BREACH OF FIDUCIARY DUTY;**

**6) TURNOVER OF PROPERTY;**

**7) CONSTRUCTIVE TRUST; AND**

**8) ATTORNEYS' FEES**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**Trustee Plaintiff:**
STEVEN SPEIER, Chapter 11 Trustee, on behalf of LB-L-SUNCAL OAK VALLEY, LLC, a Delaware limited liability company; SUNCAL HEARTLAND, LLC, a Delaware limited liability company; LB-L-SUNCAL NORTHLAKE, LLC, a Delaware limited liability company; SUNCAL MARBLEHEAD, LLC, a Delaware limited liability company; SUNCAL CENTURY CITY, LLC, a Delaware limited liability company; SUNCAL PSV, LLC, a Delaware limited liability company; DELTA COVES VENTURE, LLC, a Delaware limited liability company; SUNCAL TORRANCE, LLC, a Delaware limited liability company; SUNCAL OAK KNOLL, LLC, a Delaware limited liability company;

**Other Plaintiffs:**
SCC ACQUISITIONS, INC., a California corporation; SUNCAL MANAGEMENT, LLC, a Delaware limited liability company; SCC ACQUISTIONS, LLC, a Delaware limited liability company; and BRUCE ELIEFF, an individual,

Plaintiffs,

v.

**Lehman Lender Defendants:**
LEHMAN ALI, INC., a Delaware corporation; OVC HOLDINGS, LLC, a Delaware limited company; NORTHLAKE HOLDINGS, LLC, a Delaware limited liability company;

**Lehman Equity Member Defendants:**
LBREP II/SUNCAL LAND FUND MEMBER, LLC, a Delaware limited liability company; SCLV OAK VALLEY, LLC, a Delaware limited liability company; SCLV NORTHLAKE, LLC, a Delaware limited liability company; LB/L–DUC III MASTER LLC, a Delaware limited liability company; SC MASTER HOLDINGS II LLC, a Delaware limited liability company;

**Other Defendants:**
LV PACIFIC POINT, LLC, a Delaware corporation; and DOES 1 through 50, inclusive,

Defendants.

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## SUMMARY OF ACTION

1. This case is about a major Wall Street financial institution, Lehman Brothers ("Lehman"), that bilked California businesses out of hundreds of millions of dollars before declaring bankruptcy in New York, where it is now hoarding billions in cash. Lehman perpetrated a fraud on creditors of monumental proportion, with drastic and devastating consequences. With this action, Plaintiffs seek to remedy those consequences.

### A. Lehman Pre-Bankruptcy

2. The story begins several years ago when Lehman undertook to loan various entities affiliated with the SunCal Companies ("SunCal"), a California-based land developer, in excess of $2 billion for the acquisition and development of master-planned communities located throughout California, including the entitlement and construction of residences, schools, streets, bridges, golf courses, commercial buildings and all the infrastructure attendant thereto (collectively at times the "Projects"). For the most part, the loans were secured by first priority trust deeds on those properties. Through entities that Lehman owned and controlled, Lehman was SunCal's lender in 21 Projects, and its equity partner in nine of the 21 projects.

3. SunCal is a highly-experienced and successful real estate developer in business for over 70 years. It manages virtually all aspects of real estate development, from acquiring properties and obtaining governmental entitlements to construction and build-out, culminating in the sale of lots to merchant builders. For years, the practice was for Lehman to fund the Projects, and for SunCal to control and manage the development process including, among other things, contracting and dealing with and paying vendors, contractors, and municipalities and governmental agencies.

4. In or about mid-2007, that practice changed. As the real estate market began to cool, Lehman took over financial control and informed SunCal that going forward it would approve or have a veto over all expenditures, and that it alone would decide if and when to advance funds for the Projects. Since Lehman held the purse-strings—and was imposing its control—SunCal had no choice in the matter and acquiesced.

5. Meanwhile, Lehman represented to SunCal that it would continue funding the Projects and paying the various contractors and creditors for the millions of dollars of goods and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

services they provided to the Projects. In fact, Lehman decided what work would be performed on the Projects and specifically promised to pay for the work, which enhanced the value of the Projects significantly. In doing so, Lehman imposed its complete financial control over the Projects.

6. During this time—from the second half of 2007 into 2008—property values were in decline, and SunCal periodically so informed Lehman. SunCal also provided Lehman with detailed budgets regarding the critical needs of the Projects in order to ensure continued progress and ameliorate any decline in value to the extent possible. During this period, SunCal worked on the Projects with its vendors and contractors and relied on Lehman's promises and representations of funding.

7. Unbeknown to SunCal, Lehman had its own agenda for taking financial control. On information and belief, in order to mask the decline in value of the Projects—and to minimize write-downs that would have further weakened its own declining financial position—Lehman wanted to, and did, create the appearance that it would recoup all, or a substantial portion, of its multi-billion dollar investment in the SunCal projects.

8. On information and belief, Lehman sought to minimize to the outside world the Projects' decline in value, keep SunCal and the other creditors on the hook and make it appear that the Projects were viable, being supported and would continue going forward. This was done to prop up Lehman's weakening stock price for the benefit of the securities markets and to entice potential investors Lehman was pursuing to fortify its faltering finances.

9. In furtherance of this scheme, Lehman threatened SunCal in an effort to obtain its consent to a restructuring agreement. For instance, Lehman stated it would ensure that SunCal would be exposed to undue tax liability and that Bruce Elieff, SunCal's CEO and owner, would be "hung out" on bonds posted in connection with the projects if SunCal refused to enter into the restructuring agreement.

10. In May 2008, faced with no other option, SunCal agreed to Lehman's supposed restructuring agreement ("Restructuring Agreement"). Under the terms of the Restructuring Agreement, Lehman would act as both lender and equity partner and recoup its investment plus interest and more. As the lender, Lehman committed to restructure the existing obligations of the

Projects; and Lehman agreed to provide continuing financing that was necessary to keep the projects going. Ultimately, it was this scheme to misrepresent and inflate asset value that undermined Lehman's credibility and contributed to its demise.

11. Neither SunCal nor the Project creditors had any knowledge of, or participation in, the Lehman scheme as set forth herein. They are, in effect, its unwitting victims. Had SunCal known of this scheme, it could have—and would have—acted to avert, or at least mitigate, the Projects' diminution in value and harm to creditors.

**B. Lehman Post-Bankruptcy**

12. Even after filing for bankruptcy in September 2008, Lehman for a time continued to tell SunCal that it would fund ongoing critical expenses of the Projects, and continued to encourage and authorize SunCal to incur expenses in connection with the Projects. SunCal and the creditors reasonably and detrimentally relied on the Restructuring Agreement and on the representations and assurances by Lehman made before and after that Agreement was entered into.

13. But Lehman's funding never materialized anywhere close to what was promised and needed. As a result, the value of the Projects has been diminished and continues to diminish. Many of the Projects have been forced into bankruptcy. Worse, approximately 450 creditors, including many small California businesses, have had their bills go unpaid for months, resulting in great harm and hardship to those who relied on and trusted Lehman. The unpaid bills and liabilities now aggregate approximately $150 million.

14. Lehman's deception, and the harm its actions have caused, does not stop there. The Projects themselves are falling into a state of serious disarray. In the dry season, they encountered problems with dust and fire control and friable asbestos, among other things; and they are now experiencing flooding, erosion, problems with unmonitored levees and partially constructed bridges, and other serious health and safety hazards. The Projects are further threatened with the loss of their governmental entitlements, which are critical to avoid massive disruptions in the development process and to maintain value.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

15. Not only did Lehman make repeated promises to fund critical needs but fail to do so, Lehman also secretly withdrew millions of dollars of funds from restricted accounts that had been established precisely to meet those needs—a blatant money grab.

16. Lehman is orchestrating the foregoing in a squeeze play: to foreclose on its first trust deed liens and to usurp the properties for itself. If successful in this scheme, Lehman will then "resurrect" the Projects, in the process generating millions of dollars in unnecessary and wasted expense over the next several years, thereby further burdening the Projects and pushing them deeper into financial straits—to the harm and detriment of the creditors and investors therein.

17. This self-serving scheme will harm—and is harming—the innocent creditors including the Plaintiffs herein. Lehman has already taken action to preclude the Projects from obtaining necessary funds from a ready, willing and able lender.

18. Lehman has brazenly demanded that SunCal step aside and allow foreclosures on the Projects to proceed, leaving the creditors without any effective recourse. On information and belief, and based on the course of dealings over the past several years, Lehman both pre- and post-bankruptcy has no in-house expertise or hands-on experience in the complex area of land development, whereas over the course of its history SunCal has acquired that expertise and experience and has exercised it at a very high and successful level in connection with many major land development projects.

19. Various Lehman affiliates have acted in concert to stiff the creditors and effectuate foreclosures through this scheme. For instance, the Lehman lending entity, Lehman ALI, Inc. ("Lehman ALI")—which is not in bankruptcy—surreptitiously transferred first deeds of trust on the properties to an affiliate, Lehman Commercial Paper, Inc. ("LCPI"), just days before LCPI filed for bankruptcy. Lehman engaged in this action in derogation of the rights of the Projects' creditors and investors. LCPI and Lehman ALI have since filed joint motions for relief from stay in order to foreclose on a number of the Projects, and have purported to invoke the automatic stay in LCPI's bankruptcy to prevent any action in opposition to their attempts to foreclose.

20. LCPI and the other bankrupt Lehman entities are orchestrating this scheme to impede the reorganization of the Projects and to squeeze SunCal and force it out of the Projects. Lehman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

also controls the non-bankrupt Lehman entities, including the Lehman equity partners in some of the Projects, and through its manipulation of them is attempting to block any reorganization of the Projects in bankruptcy and preclude payment of the creditors.

21. This is a blatant conflict of interest—Lehman is acting against its own (and SunCal's) interests as an equity owner in order to benefit its, Lehman's, interest as a lender. For instance, Lehman has taken positions to the detriment of the equity interest, including: (1) failing to fund the Projects or otherwise provide necessary capital; (2) refusing to pay creditors even when capital was available; and (3) failing to preserve the assets, including efforts to prevent the debtors from declaring bankruptcy. Lehman undertook the foregoing actions to the detriment of the equity interest in order to increase the value of the Projects when it foreclosed as lender.

22. On information and belief, Lehman has amassed and has available in excess of $5 billion in cash from which it easily could—and should—pay the Projects' creditors. Lehman has failed and refused to pay the creditors without good cause.

23. Accordingly, this lawsuit is to obtain redress for the creditors by way of:

(a) equitably subordinating all of Lehman's claims and interest in the Projects;

(b) transferring the liens on the subordinated claims to the estates; and

(c) recovering any and all compensatory damages caused by Lehman's wrongful conduct, plus punitive and other damages and relief as permitted by law.

24. This adversary proceeding is filed against defendants who are not in the bankruptcy proceedings involving Lehman Brothers in New York. Plaintiffs hereby reserve the right to seek relief from stay to name any and all other Lehman-related entities, agents and/or individuals as defendants herein as necessary, and/or to name other defendants as necessary, to obtain and effectuate full and complete relief for the creditors.

## STATEMENT OF JURISDICTION AND VENUE

25. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H), (K), and (O), 157(c)(1), and 1334.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

26. Venue properly lies in this judicial district in that this civil proceeding arises under title 11 of the United States Code, and/or is related to a case under title 11, as provided for in 28 U.S.C. § 1409(a).

27. The causes of action for equitable subordination and/or transfer of liens to the estates under 11 U.S.C. § 510(c) and for a turnover under 11 U.S.C. § 542 are core proceedings under 28 U.S.C. §157(b). The remaining causes of action for intentional and negligent misrepresentation, breach of fiduciary duty and breach of contract are non-core proceedings that are related to the bankruptcy proceeding under this Court's jurisdiction pursuant to 28 U.S.C. § 157(c)(1). Plaintiffs consent to an entry of final order or judgment on the non-core matters by this Court pursuant to 28 U.S.C. § 157(c)(2).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**PARTIES**

28. As this adversary proceeding deals with a fraudulent scheme by Lehman affecting numerous properties and involving dozens of voluntary and involuntary bankruptcy proceedings, for convenience, the parties are broken down into the following categories:

***Plaintiff Equity Members in SunCal/Lehman Joint-Venture "Trustee" Debtors:***

29. Plaintiff SunCal Communities II, LLC ("SunCal Four-Project Equity Member") is a Delaware limited liability company. SunCal Four-Project Equity Member is the SunCal member in the Lehman SunCal Real Estate Fund LLC ("Lehman SunCal Real Estate Fund"), the parent of four entities that are the subject of trustee-managed (formerly involuntary) bankruptcy proceedings before this Court: SunCal Century City, LLC ("SunCal Century City"); SunCal PSV, LLC ("SunCal PSV"); SunCal Torrance Properties, LLC ("SunCal Torrance"); and SunCal Oak Knoll, LLC ("SunCal Oak Knoll"). These bankrupt entities are associated, respectively, with the projects known as "Century City," "Palm Springs Village," "Torrance (Del Amo)," and "Oak Knoll," described below.

30. Plaintiff SCC/Oak Valley, LLC ("SunCal Oak Valley Equity Member") is a Delaware limited liability company. SunCal Oak Valley Equity Member is the SunCal member in LB/L-SunCal Oak Valley, LLC ("SunCal Oak Valley"), which is the subject of a trustee-managed bankruptcy before this Court, and is associated with the "Oak Valley" project described below.

31. Plaintiff SCC/Northlake, LLC ("SunCal Northlake Equity Member") is a Delaware limited liability company. SunCal Northlake Equity Member is the SunCal member in LB/L-SunCal Northlake, LLC ("SunCal Northlake"), which is the subject of a "trustee-managed bankruptcy before this Court, and is associated with the "Northlake" project described below.

32. Plaintiff SunCal Delta Coves LLC ("SunCal Delta Coves Equity Member") is a Delaware limited liability company. SunCal Delta Coves Equity Member was the SunCal member in Delta Coves Master JV LLC ("Delta Coves Master"), the parent of Delta Coves Venture, LLC ("Delta Coves Venture"), which is the subject of a trustee-managed bankruptcy proceeding before this Court, and is associated with the "Delta Coves" project described below.

33. Plaintiff SCC JV Ventures LLC ("SunCal Marblehead/Heartland Equity Member") is a Delaware limited liability company. SunCal Marblehead/Heartland Equity Member is the SunCal member in the SunCal Master JV LLC ("SunCal Master JV"), which is the sole parent of SunCal Marblehead Heartland Master LLC ("SunCal Marblehead Heartland"), which is itself the parent of two entities that are the subject of trustee-managed bankruptcy proceedings before this Court: SunCal Marblehead, LLC ("SunCal Marblehead"), associated with the "Marblehead" project described below; and SunCal Heartland, LLC ("SunCal Heartland"), associated with the "Heartland" project described below.

34. The SunCal Four-Project Equity Member, SunCal Oak Valley Equity Member, SunCal Northlake Equity Member, SunCal Delta Coves Equity Member, and SunCal Marblehead/Heartland Equity Member are each referred to herein as a "SunCal Equity Member," and collectively as the "SunCal Equity Members."

***Voluntary Debtor Plaintiffs***

35. Plaintiff Acton Estates, LLC ("SunCal Acton Estates") is a Delaware limited liability company, and is owner of the "Acton Estates" project described below.

36. Plaintiff SunCal Beaumont Heights, LLC ("SunCal Beaumont Heights") is a Delaware limited liability company, and is owner of the "Beaumont Heights" project described below.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

37. Plaintiff SunCal Bickford Ranch, LLC ("SunCal Bickford Ranch") is a Delaware limited liability company, and is owner of the "Bickford Ranch" project described below.

38. Plaintiff North Orange Del Rio Land, LLC ("SunCal Del Rio") is a Delaware limited liability company, and is owner of the "Del Rio" project described below.

39. Plaintiff SunCal Emerald Meadows, LLC ("SunCal Emerald Meadows") is a Delaware limited liability company, and is owner of the "Emerald Meadows" project described below.

40. Plaintiff SunCal Johannson Ranch, LLC ("SunCal Johannson Ranch") is a Delaware limited liability company, and is owner of the "Johannson Ranch" project described below.

41. Plaintiff SCC Communities, LLC (SCC Communities") is a Delaware limited liability company, and is associated with the "Joshua Ridge" project described below.

42. Plaintiff SJD Partners, Ltd. ("SJD Partners") is a Delaware limited liability company.

43. Plaintiff SJD Development Corp. ("SJD Development") is a Delaware limited liability company, and is the parent of SJD Partners. SJD Partners is the former owner of the "Pacific Point" project described below.

44. Plaintiff Palmdale Hills Property, LLC ("Palmdale Hills") is a Delaware limited liability company.

45. Plaintiff SCC/Palmdale, LLC ("SCC/Palmdale") is a Delaware limited liability company. Palmdale Hills and SCC/Palmdale are associated with the "Ritter Ranch" project described below.

46. Plaintiff SunCal Summit Valley, LLC ("SunCal Summit Valley") is a Delaware limited liability company.

47. Plaintiff Seven Brothers, LLC, ("Seven Brothers") is a Delaware limited liability company.

48. Plaintiff Kirby Estates, LLC ("Kirby Estates") is a Delaware limited liability company. SunCal Summit Valley, Seven Brothers, and Kirby Estates are associated with the "Summit Valley" project described below.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

49. Plaintiff Tesoro SF, LLC ("SunCal Tesoro") is a Delaware limited liability company, and is associated with the "Tesoro" project described below.

50. Plaintiff SunCal Communities I, LLC ("SunCal Communities I") is a Delaware limited liability company, and is associated with the Acton, Beaumont, Bickford Ranch, Emerald Meadows, Johansson Ranch, and Summit Valley projects.

51. Plaintiff SunCal Communities III, LLC ("SunCal Communities III") is a Delaware limited liability company, and is associated with the Acton, Beaumont, Bickford Ranch, Emerald Meadows, Johansson Ranch, and Summit Valley projects.

***Trustee Plaintiff***

52. Steven Speier is Chapter 11 trustee ("Trustee") of the following Debtor entities: SunCal Century City, SunCal Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Knoll, SunCal Oak Valley, Sun Cal PSV, and SunCal Torrance.

***Other Plaintiffs***

53. Plaintiff SCC Acquisition, Inc. ("SunCal") is a California corporation.

54. Plaintiff SunCal Management, LLC ("SunCal Management") is a Delaware limited liability company.

55. Plaintiff SCC Acquisitions, LLC, is a Delaware limited liability company.

56. Plaintiff Bruce Elieff is an individual residing in California, and the president of SunCal.

57. SunCal, SunCal Management, SCC Acquisitions LLC, and Mr. Elieff were signatories to the Restructuring Agreement, along with Lehman, that is at issue in this lawsuit. SunCal is also an indirect parent of the SunCal Equity Members (described below), and so is also an indirect equity holder in the Trustee Debtors (described below).

***Lehman Lender Defendants***

58. On information and belief, defendant Lehman ALI, Inc. ("Lehman ALI") is a Delaware corporation with its principal place of business in New York, New York, and is a wholly-owned subsidiary of the parent Lehman entity, Lehman Brothers Holdings, Inc. ("LBHI" or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

"Lehman"), and was—or purported to be—the holder of first deeds of trust and/or pledged interests on all the subject properties in this action.

59. On information and belief, defendant OVC Holdings, LLC. ("OVC") is a Delaware limited liability company with its principal place of business in New York, New York, and is a wholly-owned subsidiary of LBHI. OVC purports to be the assignee of Lehman ALI's loan on the Oak Valley project.

60. On information and belief, defendant Northlake Holdings, LLC. ("Northlake Holdings") is a Delaware limited liability company with its principal place of business in New York, New York, and is a wholly-owned subsidiary of LBHI. Northlake purports to be the assignee of Lehman ALI's loan on the Northlake project. Lehman ALI, OVC, and Northlake Holdings are referred to collectively herein as the "Lehman Lenders" or "Lehman Lender Defendants."

***Defendant Equity Members in SunCal/Lehman Joint-Venture "Trustee" Debtors:***

61. On information and belief, defendant LBREP II/SunCal Land Fund Member, LLC ("Lehman Four-Project Equity Member") is a Delaware limited liability company with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. Lehman Four-Project Equity Member is the Lehman member in the Lehman SunCal Real Estate Fund, parent of four "trustee" debtors: SunCal Century City, SunCal Palm Springs Village, SunCal Torrance (Del Amo), and SunCal Oak Knoll.

62. On information and belief, defendant SCLV Oak Valley, LLC ("Lehman Oak Valley Equity Member") is a Delaware limited liability company with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. Lehman Oak Valley Equity Member is purported to be the Lehman member in the SunCal Oak Valley "trustee" debtor.

63. On information and belief, defendant SCLV Northlake, LLC ("Lehman Northlake Equity Member") is a Delaware limited liability company with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. Lehman Northlake Equity Member is purported to be the Lehman member in the SunCal Northlake "trustee" debtor.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

64. On information and belief, defendant LB/L–DUC III Master LLC ("Lehman Delta Coves Equity Member") is a Delaware limited liability company with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. Lehman Delta Coves Equity Member is the Lehman member in Delta Coves Master, the parent of the SunCal Delta Coves "trustee" debtor.

65. On information and belief, defendant SC Master Holdings II LLC ("Lehman Marblehead/Heartland Equity Member") is a Delaware limited liability company with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. Lehman Marblehead/Heartland Equity Member is the Lehman member in SunCal Master JV, which is the sole parent of SunCal Marblehead Heartland, which is itself the parent of two bankrupt entities, SunCal Marblehead and SunCal Heartland. The Lehman Four-Project Equity Member, Lehman Oak Valley Equity Member, Lehman Northlake Equity Member, Lehman Delta Coves Equity Member, and Lehman Marblehead/Heartland Equity Member are each referred to herein as a "Lehman Equity Member," and collectively as the "Lehman Equity Members."

***Other Defendants***:

66. On information and belief, defendant LV Pacific Point, LLC ("LV Pacific Point"), is a Delaware limited liability company, with its principal place of business in New York, New York, and a wholly-owned subsidiary (directly or indirectly) of, or at least controlled by, LBHI. LV Pacific Point was a signatory to the contract with Lehman at issue in this litigation, and was the purchaser of the Pacific Point project.

67. On information and belief, the acts and//or omissions complained of herein were done with the express knowledge, consent and/or ratification of the responsible managerial employees, supervisors, directors, members, and/or partners of Lehman ALI, OVC, Northlake Holdings, the Lehman Equity Members, and LV Pacific Point.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## FACTUAL ALLEGATIONS

**SunCal**

68. SunCal is a family-owned and operated California real estate business. Real estate development is a time-intensive, complex undertaking that requires coordination among hundreds of third-party contractors and vendors, as well as local, state and federal governmental agencies, and non-governmental organizations. With more than 70 years of experience in real estate development, SunCal has gained an expertise in these matters, and has formed relationships with many governmental entities and businesses throughout California.

69. SunCal, directly and/or through its affiliates, has entered into numerous agreements with Lehman, directly and/or through its affiliates, whereby Lehman would provide financing for the development of real estate projects, and SunCal would manage and develop those projects. The funding for the purchase and development of the subject property of each project was made through a Lehman entity, ALI or LCPI; and the respective lending entities obtained first priority trust deeds on each property as security for its loan or obtained pledges of equity interests in the entities owning such properties.

70. This lawsuit involves disputes regarding nine development projects associated with nine involuntary bankruptcies before this Court (the "Trustee Debtors"), and ten development projects associated with seventeen voluntary bankruptcies before this Court (the "Voluntary Debtors").

**The Trustee Debtors**

71. The "Trustee Debtors" whose projects are at issue in this suit include SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal Torrance, SunCal Oak Knoll, SunCal Delta Coves, SunCal Marblehead, and SunCal Heartland; they are associated, respectively, with the projects known as Northlake, Oak Valley, Century City, Palm Springs Village, Torrance (Del Amo), Oak Knoll, Delta Coves, Marblehead, and Heartland (collectively, the "Trustee Projects"). Lehman ALI was the lender for each of the Trustee Projects.

72. In the underlying bankruptcies, the Lehman affiliates OVC and Northlake Holdings LLC purport to be the lenders for the Oak Valley and Northlake Projects, respectively, not Lehman

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

ALI. However, Lehman ALI, not OVC or Northlake Holdings, was the signatory to the parties' May 23, 2008 Restructuring Agreement (defined below), in which Lehman ALI represented itself to be "the Lender with respect to each Loan." If Lehman ALI transferred its interest in the relevant loans to OVC or Northlake Holdings, it did so subsequent to its agreement with Plaintiffs. In any event, recent joint correspondence from Lehman ALI, LCPI, OVC and Northlake Holdings indicates that each of these entities is controlled by the same Lehman-related party. On information and belief, each of these entities is a participant in the intra-Lehman scheme to wrongfully foreclose on the Projects and stiff SunCal and the myriad creditors who did work at Lehman's behest.

73. For each Trustee Project, Lehman held an equity interest through a separate entity in addition to extending a loan through Lehman ALI. For both the Northlake and Oak Valley Projects, a single-purpose entity limited liability company ("SPE") was formed, with a SunCal Equity Member and a Lehman Equity Member serving as the members of that SPE. For five Projects—Century City, Palm Springs Village, Torrance (Del Amo), Oak Knoll, and Delta Coves—the SunCal and Lehman Equity Members were members of the parent of the SPE that ultimately filed for bankruptcy in this Court. For the Marblehead and Heartland Projects, the SunCal and Lehman Equity Members were essentially members of the "grandparent" of the bankrupt entities. The bankrupt SPE, parent (or grandparent) company, where applicable, and the SunCal and Lehman Equity Member for each Trustee Project are, as follows:

| Project | Debtor SPE | Parent (and/or Grandparent) Company | SunCal Equity Member | Lehman Equity Member |
|---|---|---|---|---|
| Century City | SunCal Century City | Lehman SunCal Real Estate Fund | SunCal Four-Project Equity Member | Lehman Four-Project Equity Member |
| Delta Coves | Delta Coves Venture | Delta Coves Master JV | SunCal Delta Coves Equity Member | Lehman Delta Coves Equity Member |
| Heartland | SunCal Heartland | SunCal Marblehead Heartland (owned by SunCal Master JV) | SunCal Marblehead Heartland Equity Member (member of SunCal Master JV) | Lehman Marblehead Heartland Equity Member (member of SunCal Master JV) |

| Marblehead | SunCal Marblehead | SunCal Marblehead Heartland (owned by SunCal Master JV) | SunCal Marblehead Heartland Equity Member (member of SunCal Master JV) | Lehman Marblehead Heartland Equity Member (member of SunCal Master JV) |
|---|---|---|---|---|
| Northlake | SunCal Northlake | N/A | SunCal Northlake Equity Member | Lehman Northlake Equity Member |
| Oak Knoll | SunCal Oak Knoll | Lehman SunCal Real Estate Fund | SunCal Four-Project Equity Member | Lehman Four-Project Equity Member |
| Oak Valley | SunCal Oak Valley | N/A | SunCal Oak Valley Equity Member | Lehman Oak Valley Equity Member |
| Palm Springs Village | SunCal PSV | Lehman SunCal Real Estate Fund | SunCal Four-Project Equity Member | Lehman Four-Project Equity Member |
| Torrance (Del Amo) | SunCal Torrance | Lehman SunCal Real Estate Fund | SunCal Four-Project Equity Member | Lehman Four-Project Equity Member |

74. For Oak Valley and Northlake, the Lehman Equity Member ostensibly has management and control over the Debtor SPE. For the other seven Projects, the Lehman Equity Members do not have exclusive management and control of the Debtor SPEs' parent (or grandparent), but the Debtor SPEs could not file for bankruptcy without the consent of the Lehman Equity Member, which has refused to provide such consent. Accordingly, all of the Trustee Projects were initiated as involuntary bankruptcies (on November 12, 14, and 19, 2008).

75. On or about January 8, 2009, this Court entered orders for relief in the involuntary bankruptcy cases. On or about January 15, 2009, orders appointing a Trustee were entered as to all of the involuntary debtors. Thereafter, the Office of the United States Trustee appointed Mr. Steven Speier, Esq. as the trustee of these nine debtors (the "Trustee"). Accordingly, these Debtors are no longer referred to as the "Involuntary Debtors"; to distinguish them from the jointly administered Voluntary Debtors (described below), they will be referred to herein as "Trustee Debtors."

76. The Trustee is authorized to bring, and does bring, claims on behalf of the Trustee Debtors. In addition, the SunCal Equity Members in the Trustee Debtors—as well as certain creditors of the Trustee Debtors, including SunCal and SunCal Management—are bringing the claims relating to the Trustee Projects.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400 FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**The Voluntary Debtors**

77. The projects at issue in this suit involving voluntary bankruptcies (the "Voluntary Projects") are: Acton Estates, Beaumont Hills, Bickford Ranch, Del Rio, Joshua Ridge II, Johannson Ranch, Pacific Point,[1] Ritter Ranch, Summit Valley, Tesoro and Emerald Meadows. (The Trustee Projects and Voluntary Projects are referred to collectively herein as the "Projects," and the Trustee Debtors and Voluntary Debtors as the "Debtors"). Lehman ALI and/or LCPI were the lenders on the Voluntary Projects. The difference between the Voluntary Debtors and the Trustee Debtors is that the former were able to file voluntary bankruptcies in the first instance (on November 6 and 7, 2008) because their operating agreements did not require Lehman consents to filing.

78. In the underlying bankruptcies, the Lehman affiliate LCPI purports to be the sole or primary lender and lien holder for the Acton, Beaumont Heights, Bickford Ranch, Emerald Meadows, Johannson Ranch, Ritter Ranch, and Summit Valley Projects. However, Lehman ALI, not LCPI, was the signatory to the parties' May 23, 2008 Restructuring Agreement (defined below), in which Lehman ALI represented itself to be "the Lender with respect to each Loan." If Lehman ALI transferred its interest in the relevant loans to LCPI, it did so subsequent to its agreement with Plaintiffs. In any event, recent joint correspondence from and court filings by Lehman ALI and LCPI indicate that these entities are controlled by the same Lehman-related party. On information and belief, these entities are participants in the intra-Lehman scheme to wrongfully foreclose on the Projects and stiff SunCal and the myriad creditors who did work at Lehman's behest.

**The Development Projects**

79. In its dealings with SunCal regarding the Projects, Lehman generally made no distinction between Projects financed by Lehman ALI and Projects financed by LCPI. Lehman treated the two entities as indistinguishable, and SunCal dealt simply with representatives of "Lehman," not Lehman ALI or LCPI. Thus, SunCal understood that any representations made by

---

[1] The Pacific Point project is somewhat unique in that the former SunCal affiliated owner, SJD Partners, Ltd., is suing LV Pacific Point, the current owner, for acquiring the property by foreclosure in violation of the parties' agreement and through a course of misrepresentation.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

"Lehman" were being made on behalf of both Lehman ALI and LCPI. Indeed, on information and belief, Lehman ALI and LCPI have identical facilities, employees and officers.

80. Until 2007, SunCal used its expertise to manage and control development of the Projects. SunCal would contract with third-party vendors to perform grading, health and safety compliance, construction, landscaping, and other necessary services on the Project sites, and would coordinate with municipalities for easements, entitlements and other requirements to proceed with development. SunCal would submit to Lehman documentation of expenses incurred on a quarterly basis, and Lehman in the regular course would remit payment to SunCal so that the third-party vendors could be paid.

81. In or about mid-2007, this relationship between SunCal and Lehman changed, as the real estate market experienced a downturn due to, among other things, the sub-prime mortgage crisis. Many of the Projects declined significantly in value and became insolvent. Lehman thereupon became much more "hands on" in scrutinizing—and approving—budgets and expenses. SunCal would submit budgets on a weekly basis. On a weekly conference call, SunCal would explain what project payables had to paid and what work had to be performed for the projects to avoid immediate closure, and Lehman would have to give pre-authorization before any work could occur or expenses be incurred. Lehman would unilaterally dictate what future work would proceed, and also decided what payables were "urgent" and what other payables could be deferred. Lehman thereby effectively took over not only financial control of the Projects, but ultimate management control as well.

82. Lehman had not only input on, but importantly, veto power over any expenditure undertaken on the Projects. Lehman thus made SunCal and its creditors dependent on Lehman's willingness to continue financing the Projects, and Lehman was in full control over the Projects going forward. Lehman represented that it was in fact willing to continue financing these Projects, and in reliance on that, SunCal contracted hundreds of contractors to provide millions of dollars in work developing and improving the Projects.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**The Parties' "Work-Out" Agreement**

83. SunCal continued to work with Lehman and develop the Projects in anticipation of an overall restructuring of the Projects and of the loans and/or liens held by Lehman. To that end, on May 23, 2008, SunCal and the other Plaintiffs entered into an omnibus restructuring agreement ("Restructuring Agreement") with LBHI, Lehman ALI and other Lehman-controlled entities. (LCPI was not a signatory.) Frank Gilhool ("Gilhool"), Lehman's Managing Director of Global Real Estate, signed the Restructuring Agreement on behalf of both the Lehman Equity Members and the Lehman lenders.

84. The Restructuring Agreement, as amended, was meant to, and did, cover all the Projects at issue in the instant case. The same course of conduct applied to all Projects—that is, Lehman approved and told Plaintiffs what to move forward with—and this applied to all ongoing Projects including those encompassed within the Restructuring Agreement and those not covered by that Agreement, such as Century City, Del Amo, Oak Knoll and Delta Coves.

85. Pursuant to the Restructuring Agreement, Lehman ALI committed, among other things, to: (1) make advances under existing loans to fund the continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the accrued outstanding subcontractor payables, i.e., to make sure that SunCal's creditors were paid for their work; and (3) to close the transaction whereby Lehman-related entities would assume the debt and obligations of the Projects. The Restructuring Agreement was designed to culminate in closing with the parties entering into a settlement agreement ("Settlement Agreement"), under which new Lehman/SunCal entities would assume Plaintiffs' debt obligations to Lehman, assume certain bond obligations previously owed by SunCal and its affiliates, and provide certain indemnifications to SunCal and other Plaintiffs.

86. SunCal signed the Restructuring Agreement with Lehman ALI with the understanding that Lehman ALI was by that point the entity that held the various first trust deeds or pledged interests on all of the Projects, and that this was the reason why Lehman ALI, and not LCPI, was a signatory. In any event, even after the Restructuring Agreement was signed, Lehman continued to make no distinction between LCPI-financed Projects and Lehman ALI-financed projects, and continued promises of financing emanated from the same Lehman representatives.

SunCal believed and relied on Lehman's promises to maintain the long-term value of the Projects and that Lehman intended to act in good faith to continue with those Projects.

87. And it appeared—at least for a short while—that might be the case. Lehman arranged for a third party, Radco, to settle outstanding contractor payables. On information and belief, Radco was provided some limited funding and authority to negotiate settlements, and did in fact do so with some creditors. (Funding for settlements on Lehman ALI- and LCPI-funded Projects came from the same source.) Lehman also provided approval for new work on the Projects, and provided payment for some of it. But this funding was minimal and soon stopped.

**Lehman Refuses To Close In Accordance With the Restructuring Agreement**

88. In the summer of 2008, SunCal was unaware that a Lehman bankruptcy was impending. Unbeknown to SunCal, the various Lehman entities were proceeding on a coordinated course of conduct designed to shore up Lehman's position in anticipation of a possible bankruptcy and extract any value in the Projects for themselves, in disregard of the promises made to SunCal or the inducements made to the Projects' creditors.

89. About a month prior to filing for bankruptcy, Lehman withdrew funding and settlement authority from Radco, and so halted the process of resolving millions of dollars of outstanding contractor payables on the Projects. This was work that Lehman had previously authorized and directed SunCal to undertake, but that Lehman later refused to pay for. The contractors would not perform new work unless they received payment for work already done. The halting of Radco's efforts further impeded development of the Projects and also impeded the entities' ability to deal with public health and safety issues. Radco ultimately ended up resolving a fraction of the total outstanding payables.

90. On information and belief, Lehman arranged for these negotiations to occur for the secret purpose of staving off creditors from filing involuntary bankruptcies against the Debtors, long enough for Lehman to achieve its fraudulent scheme described herein. Lehman thereby sand-bagged SunCal and the other creditors involved in the projects.

91. In numerous telephone conversations between Gilhool, and SunCal's Frank Faye and/or Bruce Cook ("Cook") in 2008, Gilhool assured SunCal that Lehman was committed to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

funding the debts and obligations of the projects and the work directed to be performed by Lehman; that funding would be forthcoming; and that SunCal should continue to have contractors undertake work to develop and preserve the value in the Projects. In reliance on these representations, SunCal continued to move forward with the Projects and incurred substantial expenses in hiring contractors to maintain and/or develop them and to deal with public health and safety issues.

92. At an August 25, 2008 meeting to sign closing documents for the Restructuring Agreement held in Los Angeles, Lehman announced that it wanted to push the closing date out another month to September 30, 2008, ostensibly in order to obtain a few additional third party consents. SunCal, still believing that Lehman was acting in good faith, agreed to the extension to September 30, 2008, not knowing what Lehman was really planning.

93. SunCal and Lehman signed roughly 1000 settlement documents at the August 25 meeting. Lehman's attorneys, Weil, Gotshal & Manges (who are also its bankruptcy counsel), took all of the original signed settlement documents with them, claiming that they would provide copies to SunCal and that the closing would occur shortly thereafter. As of this day, however, Weil Gotshal still has not provided copies of any of those documents.

94. Unbeknownst to SunCal, on or about August 21, 2008—four days before SunCal and Lehman signed the restructuring settlement documents—Lehman ALI transferred its first deeds of trust on some of the Projects to LCPI, a Lehman entity that was not a signatory to the Restructuring Agreement. Lehman ALI never provided any notices of transfer to SunCal. In addition to Gilhool, Lehman's Robert Brusco signed the deed transfers both as Senior Vice President of the transferor, Lehman ALI, and as Senior Vice President of the transferee, LCPI. On September 15, 2008, LBHI filed for bankruptcy, and on October 5, 2008, LCPI filed for bankruptcy. These transfers by Lehman ALI were improper and should be set aside; and the transferred liens should be subordinated as requested herein.

95. SunCal unwittingly entered into agreements regarding the restructuring of hundreds of millions of dollars in loans and liens with a Lehman entity that was secretly transferring its first deeds of trust to a soon-to-be bankrupt affiliate. On information and belief, Lehman ALI selectively transferred deeds of trust to LCPI on Projects that did not have a Lehman Equity Member that could

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

block the Projects' SPEs from filing bankruptcy. (For Projects on which a Lehman Equity Member could prevent a voluntary bankruptcy, transfer of the deeds was unnecessary.)

96. The transfers were made on these Projects so that LCPI could use the automatic stay in its own impending bankruptcy to impede a successful reorganization of the Projects, and to prevent any outcome other than a Lehman foreclosure. Lehman thereby schemed to usurp the Projects for itself, without paying creditors for their millions of dollars of work and without performing on any of the agreements made with SunCal.

97. Unbeknownst to Plaintiffs, Lehman ALI also apparently transferred its interests in the loans on Oak Valley and Northlake to OVC and Northlake Holdings, respectively. On information and belief, Lehman ALI made these transfers, and OVC and Northlake accepted these transfers, as part of the Lehman scheme to usurp the Projects, and in knowing violation of the rights of Plaintiffs and/or their creditors.

98. On information and belief, the additional third-party consents required for closing of the Restructuring Agreement and Settlement Agreement had been obtained by the first week of September 2008, and thus all conditions precedent to closing had been met. Yet Lehman took no steps to proceed with closing, apparently planning something else for its own self-serving benefit and to the detriment of the creditors herein including SunCal.

**Lehman's Misrepresentations**

99. On September 15, 2008, LBHI filed a voluntary petition in bankruptcy court in the Southern District of New York. Notwithstanding the bankruptcy, Lehman's Gilhool was still assuring SunCal that Lehman would continue to fund the Projects so as to avoid harm and damage to them and to ensure that creditors were paid.

100. As the end of September approached, SunCal became greatly concerned that Lehman was still not doing anything to facilitate closing. On September 29, 2008, SunCal sent Lehman a notice indicating that they were prepared to close, and that all conditions precedent to closing had been satisfied. Lehman did not provide a definitive response for weeks.

101. In the meantime, the Projects required work. Even if no new construction or development was to be undertaken, significant sums had to be spent on site security, erosion

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

prevention, property taxes and other measures in order to prevent the Projects from becoming a public safety hazard, and in order to prevent losing valuable entitlements and other losses to the Projects.

102. SunCal repeatedly requested that Lehman provide funding to pay for critical health and safety and value preservation measures on the Projects. Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Lehman's Robert Brusco nearly two dozen letters practically begging Lehman to provide promised funding to address critical needs on the Projects. Here's a plea from one of the Cook letters:

103. These letters raised issues such as potential and/or actual public exposure to asbestos, flooding, wind damage, looters and vandals, soil erosion and wildfires, in addition to demands from third-party vendors for payment for services and threats to discontinue service. Cook's letters attached reports from governmental inspectors, and photographs documenting site conditions that posed a threat to public safety or that could subject the Projects to fines and penalties. Cook's letters were in addition to the myriad of correspondence from SunCal employees working on the Projects to Lehman employees requesting payment for previously approved payables or funding for other particular urgent needs.

104. Despite Lehman's assurances of its intent to proceed with funding the Projects, SunCal's request that Lehman address its critical financial needs fell on deaf ears. Lehman repeatedly requested detailed budgets regarding the needs of the Projects, reinforcing the impression that Lehman was willing and able to fund—budgets which SunCal repeatedly and promptly provided. Lehman repeatedly promised the funding would be forthcoming. But the funds never materialized. In November 2008, Lehman's Brusco delivered a message (from an unknown decision-making person or controlling group) that Lehman was unwilling to fund the Projects and that they intended to foreclose on all of the projects.

105. In late October 2008, SunCal indicated to Lehman that if Lehman continued to refuse to provide critical funding, the SPEs for the various Projects would have no choice but to file for bankruptcy. Finally, with creditor demands, fines and penalties and other expenses mounting, and no financial assistance forthcoming from Lehman, the Voluntary Debtors filed for bankruptcy on

MILLER BARONDESS, LLP ATTORNEYS AT LAW 1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067 TEL: (310) 552-4400 FAX: (310) 552-8400

November 6 and November 7, 2008. When Lehman refused to provide consents to filing as to the Trustee Debtors, their creditors filed involuntary petitions against them beginning on November 12, 2008. There are approximately 450 vendors owed in excess of $100 million for work and improvements they provided on the Lehman-backed SunCal Projects.

106. Lehman responded to the SunCal bankruptcies with a flurry of activity to try to foreclose on the Projects and avoid its obligations to creditors. On November 13, 2008, Lehman ALI sent SunCal a letter repudiating its prior promises and agreement of continued funding.

107. On November 12, the same day as the first of the SunCal involuntary bankruptcy filings, Lehman ALI rushed to improperly file notices of default against five Projects—Century City, Torrance, Palm Springs Village, Oak Knoll and Delta Coves—that were not yet in bankruptcy. Creditors of these Projects then filed involuntary petitions in order to stay foreclosure proceedings on the Projects.

108. On November 18, 2008, the Lehman Equity Members sent certain of the Trustee Debtors letters stating that the SunCal Equity Members had no authority to consent to an order for relief from stay, nor make any decision on behalf of the Trustee Debtors. On information and belief, these Equity Members are using their control of the joint SunCal/Lehman entities not to benefit those entities or the Projects they represent, or to meet fiduciary duties to creditors, but solely to facilitate the interests of the Lehman secured lender to effectuate foreclosures.

109. LBHI and LCPI further have used the automatic stay in their own bankruptcy proceedings to try to prevent the Voluntary or Trustee Debtors from moving forward with their respective bankruptcies and successfully reorganize the Projects. These Lehman entities have refused to consent to relief from the automatic stay in their proceedings, and so have tried to block the Debtors from obtaining priming loans or other using cash collateral to pay creditors and preserve value on the Projects. Ironically, though, on January 23, 2009, LCPI and Lehman ALI filed joint motions for relief from stay in over half of the Voluntary Debtors' proceedings, seeking to foreclose on those Projects. They argue that LCPI's request for relief from stay cannot be opposed through equitably subordination of its claims because of its own bankruptcy stay. LCPI's use of its

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

bankruptcy stay as both a sword and shield is a shocking attempt to abuse the system to the detriment of the Projects' various other creditors.

**Marblehead and Heartland**

110. At the same time that Lehman was stringing SunCal along, promising that funding would be forthcoming but refusing to provide it, Lehman was also secretly stripping the Projects of any value it could. SunCal Marblehead Heartland held approximately $3.4 million in two restricted accounts that were to be used for the needs of the Marblehead and Heartland Projects. Unbeknownst to Plaintiffs, on information and belief, in or about late October or early November 2008—precisely when Plaintiffs were begging that Lehman provide promised funding—the Lehman Marblehead/Heartland Equity Member, at the direction of Lehman ALI, caused all the money in those accounts be withdrawn for Lehman's benefit, and then closed the accounts. On information and belief, that money has now been transferred to Lehman ALI.

111. Plaintiffs did not learn about the withdrawal or account closures until it requested updated bank statements from the financial institution holding the accounts. Lehman never informed Plaintiffs that it was withdrawing the money, and has never explained why the money was withdrawn or what was ultimately done with it. Lehman just grabbed these funds for itself.

**Pacific Point**

112. Pacific Point is a 200 plus acre development in a premium location overlooking the Pacific Ocean in San Juan Capistrano. Pursuant to the Restructuring Agreement, SunCal agreed not to interfere with Lehman's foreclosure on the Pacific Point property in San Juan Capistrano, and a Lehman entity—LV Pacific Point—would acquire the property, in consideration for Lehman agreeing to assume millions of dollars in outstanding accounts payable for Pacific Point third-party vendors, as well as millions in SunCal bond liability. LV Pacific Point was a signatory to the August 25, 2008 Settlement Agreement, and was supposed to and agreed to acquire the property subject to the above obligations.

113. Lehman foreclosed on Pacific Point on August 28, 2008—three days after all the Settlement Agreement was signed—and title was thereafter transferred to LV Pacific Point. The SunCal entities on the project, SJD Partners, and its parent, SJD Development, filed for bankruptcy

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

in November 2008. But because Lehman wrongfully repudiated the contract and wrongfully refused to provide promised payments in disregard of its multiple assurances, LV Pacific Point was able to acquire the property for itself without assuming the millions in obligations. Had SunCal known that Lehman had no intent to honor its obligations under the contract, it never would have agreed to cooperate with a foreclosure. Instead, it could have filed for bankruptcy earlier, precluded a foreclosure and successfully reorganized the project. The foreclosure should be set aside, and the Lehman interest should be subordinated as requested herein.

**The "New" Lehman**

114. The various Lehman-affiliated entities do not view themselves as and do not act as separate entities with separate interests regarding the Projects. (For example, Gilhool signed the Restructuring Agreement on behalf of both the Lehman Equity Members and the Lehman lenders.) Rather, the various Lehman entities—whether lenders or equity-holders—are acting in concert to usurp the Projects for Lehman's benefit, at the expense of other creditors and equity-holders. And this "concert" is now being orchestrated by a single conductor, Alvarez & Marsal ("A & M"), who is in effect the new principal, controller and decision-maker with respect to the properties in issue herein.

115. When Lehman went into bankruptcy, it retained A & M as its restructuring consultants. In reality, A & M has taken over the company. On information and belief—and per reports in the media—Bryan Marsal of A & M, in his capacity as Chief Restructuring Officer, is "running things now" at Lehman in place of its CEO. According to Lehman's own website, Marsal "and his management team will ensure the orderly restructuring of LBHI and its subsidiaries." The A & M employees assigned to handle restructuring of Lehman's real estate assets even have "lehman.com" e-mail addresses.

116. A & M's control over Lehman extends beyond the bankruptcy. For example, while LBHI, LCPI and some of their affiliates are in bankruptcy, Lehman ALI, OVC, Northlake Holdings, and the Lehman Equity Members are not. Yet A & M is apparently in control of all of these entities as well. When Lehman repudiated the Restructuring Agreement on November 12, 2008, it did so on behalf of non-bankrupt Lehman ALI, LCPI, OVC and Northlake Holdings by Gerald Pietroforte, one

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

of two "Key A & M Contacts" in charge of Lehman's Real Estate "Asset Recovery Plan, Dispositions, and Pledged Collateral Issues." On November 18, 2008, A & M's Jeff Fitts—the other "Key A & M Contact"—sent letters to the SunCal Equity Members on behalf of the Lehman Equity Members instructing them not to take any action or make any decisions relating the bankruptcy cases on behalf of certain of the Trustee Debtors.

117. On information and belief, A & M and its asset recovery professionals involved in the Lehman-SunCal projects, Messrs. Fitts and Pietroforte, do not have in-depth hands-on experience or expertise in developing large-scale master-planned residential communities, as are involved here. On the other hand, SunCal and its cadre of experienced land development professionals have a very high level of expertise and experience based on many years and literally thousands of hours—including on the Projects at issue in this case.

118. Instead of ousting SunCal and taking over currently ongoing Projects, and then trying to re-invent the wheel so to speak, common sense and basic fiduciary duties require Lehman and its asset recovery professionals to pursue the course of action best suited to enhancing the value of the Projects and maximizing the recovery to creditors. The takeover/foreclosure strategy they have pursued thus far will result in the worst possible outcome for all concerned.

119. Indeed, Lehman's lead bankruptcy attorney, Harvey Miller, is quoted in the New York Times as saying that even though Lehman is not going to emerge from bankruptcy, a well-managed bankruptcy nonetheless should produce "a result which benefits people"—including making sure that creditors are paid to the extent possible. Yet when it comes to the land developments that SunCal has expertly managed for years, the A & M strategy has been—and is—the polar opposite: usurp control of the Projects without leaving anything for the hundreds of creditors who did work and conferred value, and in the process squeeze out all the other owners.

## FIRST CLAIM FOR RELIEF

**(Equitable Subordination, 11 U.S.C. §510(c) – By the Voluntary Debtor Plaintiffs and the Trustee on Behalf of the Trustee Debtors Against Lehman ALI, and the Lehman Equity Members)**

120. Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

121. Plaintiffs are informed and believe, and on that basis allege, that Lehman ALI is an affiliate of an insider of the Trustee Debtors, and thus is a statutory insider under 11 U.S.C. §101(31). LBHI has a controlling interest, directly or indirectly, in both Lehman ALI and in the Lehman Equity Members, which themselves have a majority stake in the Trustee Debtors and are therefore insiders of the Trustee Debtors. Accordingly, under 11 U.S.C. §101(2), Lehman ALI is an insider of the Debtors. Even aside from its status as a statutory insiders, Lehman ALI exerted actual control over all of the Debtors. Lehman ALI is Debtors' sole source of credit. At least since mid-2007, Debtors' management had to vet each expense with Lehman ALI and get its approval before they could expend any funds to develop the Projects, and had meetings with Lehman personnel on at least a weekly basis for this purpose. Lehman ALI also controlled decisions regarding which creditors would get paid, and engaged Radco to negotiate such payments.

122. Lehman ALI has engaged in conduct that is not only inequitable but egregious, warranting equitable subordination of its claims regardless of its insider status. This inequitable and egregious conduct, described in more detail above, includes, among others: (1) willfully failing to make required advances despite repeated representations that they would do so, thereby preventing Plaintiffs' ability to pay creditors and develop and maintain the Projects, including addressing central health and safety issues; (2) secretly transferring deeds of trust between Lehman ALI to an affiliate, LCPI, mere weeks before LCPI filed for bankruptcy, for the purpose of assisting Lehman in using its impending bankruptcy to impede successful reorganization of the Projects; (3) Lehman ALI improperly filing notices of default on properties that were not yet in bankruptcy; (4) conspiring with their Lehman parent entity, affiliated lender entities, and even equity partners on the Projects to foreclose on the properties and leave hundreds of creditors in the cold for tens of millions of dollars of work performed; and (5) squeezing out SunCal despite the agreements and representations made by Lehman.

123. Lehman ALI's inequitable conduct resulted in damage not only to the Debtors themselves and to the Debtors' Equity Members but to their creditors as well. Lehman ALI's course

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

of conduct of making repeated assurances, drawing out the process, and ultimately refusing to provide needed funding deepened the Debtors' insolvency, forced them into bankruptcy, and diminished both the value of the Debtors' Projects and the ability of the Debtors to pay their debts as they came due.

124. Furthermore, Lehman ALI's with its Lehman affiliates to prevent successful reorganization of the Projects once LCPI and other Lehman affiliates were in bankruptcy has harmed the prospects of a successful reorganization, or has made such reorganization more difficult and costly, thereby further reducing the prospects of repayment of the Debtors' creditors. The extent of this damage to creditors and others is an amount to be proven at trial, but is, at a minimum, $150 million, plus interest.

125. The Lehman Equity Members, as insiders, have sought to block the Projects' reorganizations in violation of their duties of loyalty. The Lehman Equity Members did so in an effort to facilitate a Lehman foreclosure and to avoid payment of Plaintiffs' creditors as part of the scheme.

126. By reason of the foregoing, Plaintiffs are entitled to equitably subordinate: (1) Lehman ALI's secured claims to the claims of unsecured creditors; and (2) the interest of the Lehman Equity Members to the interests to the other equity members. The value of the claims to be equitably subordinated will be proven at trial, but is no less than $150 million, plus interest. Equitable subordination under the circumstances will achieve a result that is consistent with the purposes of the Bankruptcy Code. Furthermore, the Court is entitled to transfer Lehman ALI's liens for the benefit of the Debtors' estates

**SECOND CLAIM FOR RELIEF**

**(Intentional Misrepresentation – By All Plaintiffs Against All Defendants)**

127. Plaintiffs repeat and reallege each and every foregoing and subsequent allegation contained in the Complaint, and further allege as follows:

128. Lehman ALI authorized SunCal to have third-party vendors engage in work on the Projects, and represented that it was willing and able to pay for that work. Lehman ALI made such representations, primarily through telephone conversations between Gilhool and SunCal's Cook

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

and/or Faye, for months prior to the May 23, 2008, Restructuring Agreement; after the Restructuring Agreement was signed; and even after LBHI filed for bankruptcy in September 2008. Lehman ALI represented that it was and would be the holder of deeds on the Projects, thus making it the appropriate party with which to enter the Restructuring Agreement. Lehman ALI also represented to SunCal in late August 2008, through its attorneys Weil, Gotshal & Manges, including Nellie Camarik, that closing of the Restructuring Agreement needed to be postponed until the end of September 2008 to obtain additional necessary consents, and that Lehman would work in good faith to obtain such consents.

129. In reliance on these representations, Plaintiffs incurred massive amounts of additional indebtedness by engaging hundreds of vendors to provide millions of dollars worth of work on the Projects; entered into the Restructuring Agreement; and agreed to the extension of the closing date of the Restructuring Agreement.

130. Lehman ALI knew that these material representations were false and untrue and made them with the intent of inducing reliance on the part of Plaintiffs. Lehman has been very secretive about its internal organizational structure, but on information and belief, LBHI, Lehman ALI, LCPI, OVC, and Northlake Holdings were and are all controlled by the same individuals within Lehman management. Indeed, Gilhool signed the Restructuring Agreement on behalf of both LBHI and Lehman ALI, and routinely purported to speak on behalf of both entities, as he presumably was directed by Lehman higher-ups.

131. On information and belief, people above Gilhool within the Lehman organization were in control and were the decision-makers instructing Gilhool what to do and say in this regard; and they may even have kept Gilhool in the dark as to their plans and schemes; and Lehman management was aware in the summer of 2008 that a Lehman bankruptcy was possible if not likely. Specifically, on information and belief, Gilhool's superior at Lehman, Mark Walsh, who was the head of Lehman's real estate department, was in close contact with Lehman's then-CEO, Richard Fuld. These top executives at Lehman were well aware of Lehman's possible bankruptcy.

132. At the same time, the Lehman executives were aware of and in control of Lehman's dealings regarding the Projects. The top Lehman executives were also aware of the representations

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400