1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  Maxim B. Litvak (CA Bar No. 215852)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  rpachulski@pszjlaw.com
   mlitvak@pszjlaw.com
6
   -and-
7
   Edward Soto, Esq. (*admitted pro hac vice*)
8  Shai Waisman, Esq. (*admitted pro hac vice*)
   WEIL. GOTSHAL & MANGES LLP
9  767 Fifth Avenue
   New York, NY 10153-0119
10 Telephone: 212/310-8000
   Facsimile: 212/310-8007
11
   Attorneys for Lehman ALI, Inc.
12
                 UNITED STATES BANKRUPTCY COURT
13
                 CENTRAL DISTRICT OF CALIFORNIA
14
                      SANTA ANA DIVISION
15

16 In re:                            │ Case No. 8:08-bk-17206-ES

17 PALMDALE HILLS PROPERTY, LLC, and its
   Related Debtors,
18
              Jointly Administered Debtors
19            and Debtors-in-Possession.

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Affects:

☐ All Debtors
☒ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale,
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☒ SunCal Emerald Meadows, LLC
☒ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers, LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities, LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC
☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☒ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☒ SunCal PSV, LLC
☒ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☒ Suncal Oak Knoll, LLC

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
8:08-bk-17588-ES;

Chapter 11 cases

**STIPULATION WITH LEHMAN ALI,
INC. PURSUANT TO 11 U.S.C. §§ 362,
363, 364, AND 507: (1) APPROVING
SENIOR SECURED SUPERPRIORITY
POSTPETITION FINANCING; (2)
GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS; AND (3)
MODIFYING AUTOMATIC STAY TO
THE EXTENT NECESSARY**

DATE:    March 19, 2009
TIME:    10:30 a.m.
CTRM:    5A
         411 West Fourth Street
         Santa Ana, CA  92701

This Stipulation is made by and between Lehman ALI, Inc. (the "Lender"), on the one hand, and the Voluntary Debtors (as identified below) and the Trustee Debtors (as identified below and together with the Voluntary Debtors, the "Borrowers"), on the other hand.  The Lender and the Borrowers (together, the "Parties") hereby enter into this Stipulation and agree as follows:

### RECITALS

WHEREAS, on November 6 and 7, 2008, the following entities (collectively, the "Voluntary Debtors") which are affected by this Stipulation (and which entities are among various debtors whose cases are being jointly administered) filed their respective voluntary petitions under chapter 11 of the Bankruptcy Code:

| Debtor | Case No. | Filing Date |
|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206-ES | November 6, 2008 |
| SunCal Emerald Meadows, LLC | 8:08-17230-ES | November 7, 2008 |
| SunCal Bickford Ranch, LLC | 8:08-17231-ES | November 7, 2008 |
| Acton Estates, LLC | 8:08-17236-ES | November 7, 2008 |

The Voluntary Debtors continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

WHEREAS, on November 12, 14 and 19, 2008, involuntary petitions were filed against the following Trustee Debtors which are affected by this Stipulation (and which entities are among various debtors whose cases are being jointly administered):

| Debtor | Case No. | Filing Date |
|---|---|---|
| LBL-SunCal Oak Valley, LLC | 8:08-17404-ES | November 12, 2008 |
| SunCal Heartland, LLC | 8:08-17407-ES | November 12, 2008 |
| LBL-SunCal Northlake, LLC | 8:08-17408-ES | November 12, 2008 |
| SunCal Marblehead, LLC | 8:08-17409-ES | November 12, 2008 |
| SunCal Century City, LLC | 8:08-17458-ES | November 14, 2008 |
| SunCal PSV, LLC | 8:08-17465-ES | November 14, 2008 |
| Delta Coves Venture, LLC | 8:08-17470-ES | November 14, 2008 |
| SunCal Oak Knoll, LLC | 8:08-17588-ES | November 19, 2008 |

WHEREAS, on or about January 8, 2009, the Court entered orders for relief in the involuntary bankruptcy cases.

WHEREAS, on or about January 15, 2009, the Court entered orders requiring the appointment of a chapter 11 trustee in each of the Trustee Debtor cases.  Thereafter, the Office of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

United States Trustee appointed Steven M. Speier as chapter 11 trustee (the "Trustee") for the Trustee Debtors.

WHEREAS, the Lender, Lehman Commercial Paper Inc. ("LCPI") and certain affiliates of the Lender, have asserted secured claims, collectively, against the Borrowers that are in excess of $2.0 billion, and include within the scope of the pledged collateral, certain funds held in one or more pledged accounts owned by Palmdale Hills Property, LLC (the "Ritter Ranch Borrower") and pledged to LCPI (collectively, the "Ritter Ranch Pledged Accounts") to secure that certain first mortgage loan made by LCPI to or for the benefit of the Ritter Ranch Borrower with respect to real property owned by the Ritter Ranch Borrower, located in Palmdale, California and commonly referred to as "Ritter Ranch" and "Messer Ranch" (the "Ritter Ranch Mortgage Loan").

NOW THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration (the receipt and sufficiency of which are acknowledged), it is hereby stipulated and agreed by and between the Parties as follows:

### AGREEMENT

1.     Court Approval. This Stipulation memorializes, clarifies and elaborates upon the agreement among the Parties with respect to the DIP Loans (as hereinafter defined) which was made on the record by the Parties at a hearing held by the Court on March 24, 2009. The provisions of this Stipulation are subject to approval of the Court and shall have no force and effect until approved by the Court. Immediately upon entry of an order approving this Stipulation by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Stipulation shall become valid and binding upon and inure to the benefit of the Lender, the Borrowers, all other creditors of the Borrowers, any committee appointed in these Cases (as defined below), and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases or upon dismissal of any of the Cases. Upon entry of this Stipulation by the Court, this Stipulation will supersede in all respects the agreement that was read into the record at the aforementioned hearing.

2.     DIP Financing. Each Borrower is authorized to borrow from Lender, and Lender shall make available to each Borrower, individual loans (each, a "DIP Loan" and collectively, the

"DIP Loans") in an aggregate amount equal to $1,790,572 comprised of (i) DIP Loans (the "Budget DIP Loans") in the aggregate amount of $1,540,572 (the "Budget DIP Loan Amount"), the proceeds of which shall be used by the respective Borrowers solely for the purpose of paying the costs and expenses set forth in the 30-day budget attached hereto as Exhibit A (the "Budget," as such Budget may be revised or amended with the prior written consent of Lender and which consent may be granted or withheld in Lender's sole and absolute discretion) attributable to the development project owned by each such Borrower (each, a "Project" and, collectively, the "Projects"), and (ii) DIP Loans in the aggregate amount of $250,000 (the "Professional Expense Allowance Amount" and, together with the Budget DIP Loan Amount, the "DIP Loan Amount"), the proceeds of which may be used by the Borrowers solely for the purpose of paying the Professional Expenses (as defined below). The maximum amount of each Budget DIP Loan to be made to each respective Borrower shall be equal to the applicable aggregate amount set forth in the Budget for the purpose of paying the costs and expenses attributable to such Borrower's Project. Subject to the terms below relating to the Ritter Ranch Loan Repayment (as defined below), the Lender has agreed to fund to the Trustee on Monday, March 23, 2009, the full DIP Loan Amount and the Trustee has agreed to deposit the same in an appropriate interest-bearing bank account controlled by the Trustee. The Trustee may use the proceeds of the DIP Loans solely for the purpose of paying (i) the costs and expenses set forth in the Budget (the "Budget Items") and shall not expend any funds for any particular Budget Item in excess of the amount provided in the Budget for such Budget Item without the prior written approval of the Lender, which approval may be granted or withheld in Lender's sole and absolute discretion, and (ii) the Professional Expenses in accordance with the terms set forth below. Further, the Trustee shall release the proceeds of the DIP Loans for the payment of Budget Items and Professional Expenses only after its receipt, review and approval of appropriate and substantiating invoices, statements and other satisfactory documentation relating to the applicable Budget Item or Professional Expense (collectively, the "Backup Documentation"). Following its receipt of same and in any event no later than two business days after each disbursement of any DIP Loan proceeds pursuant to a funding request made by any Borrower, the Trustee shall forward to Lender copies of any funding requests made by the Borrowers, Backup Documentation provided to the Trustee and

any other information provided to the Trustee by any of the Borrowers in connection with any funding requests and will periodically provide Lender with an accounting of all DIP Loan proceeds which have been expended to date, the Borrowers to whom such proceeds have been advanced, and the specific Budget Items which have been paid with such proceeds. The Budget cannot be modified without the prior written consent of the Lender which consent may be granted or withheld in Lender's sole and absolute discretion. Notwithstanding the foregoing or anything to the contrary contained herein, (a) only those costs and expenses which have been incurred by the Borrowers on or prior to April 24, 2009 (or, with respect to Professional Expenses, incurred prior to Trustee's receipt of the Professional Expense Termination Notice (as defined below)) are eligible to be paid with proceeds from the DIP Loans unless the Lender agrees, in its sole and absolute discretion, to permit the use of proceeds for such expenditures, and (b) the Trustee shall not release any DIP Loan proceeds which remain unexpended and in its possession as of the close of business on May 25, 2009 and shall instead remit all such unexpended DIP Loan proceeds to Lender for receipt by Lender no later than May 27, 2009 by wire transfer of immediately available funds in accordance with Lender's written instructions; provided, however, that the Trustee shall be entitled to retain in its possession an amount equal to Trustee's reasonable estimate of the amount of Professional Expenses which have been incurred and are eligible for payment pursuant to the provisions of this Stipulation but which have not yet been invoiced to Trustee, provided that any such amount retained by Trustee which remains in Trustee's possession as of June 30, 2009, shall be remitted to Lender for receipt by Lender no later than July 2, 2009 by wire transfer of immediately available funds in accordance with Lender's written instructions. Any unexpended DIP Loan proceeds shall be remitted to the Lender and shall be applied by Lender to the payment of the accrued and unpaid interest on and then to the repayment of the outstanding principal of the respective DIP Loans to which such unexpended proceeds relate.

3.    Professional Expense Allowance Amount. Notwithstanding anything to the contrary contained herein, a portion of the DIP Loans up to the amount of the Professional Expense Allowance Amount may be used by Borrowers to pay the reasonable legal fees incurred by the Official Unsecured Creditors' Committees, and reasonable fees incurred by the Trustee's accountant

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

or any counsel other than its proposed general insolvency counsel Winthrop Couchot Professional Corporation (as to the latter, only to the extent that such fees incurred by such counsel were incurred in its representation of the Trustee and not otherwise in connection with its representation of the Voluntary Debtors or any other parties) solely in connection with effectuating a settlement amongst the Borrowers and/or their respective affiliates whose bankruptcy cases are being jointly administered with the Borrowers' Cases (collectively, the "Non-Borrower Debtors"), on the one hand, and the existing mortgage lien and/or mezzanine lenders for the Projects (the "Existing Lenders") and for those projects owned by the Non-Borrower Debtors (including the Lender and LCPI) ("Proposed Settlement Transaction") and for no other purpose (the foregoing being collectively referred to as the "Professional Expenses"). Professional Expenses which may be paid with the proceeds of the DIP Loans shall be based upon and limited to the value of the actual time spent and expenses incurred by the applicable professional up to and including Trustee's and Official Unsecured Creditors Committees' receipt of written notification from the Lender that, as a result of the termination of settlement discussions in respect of a Proposed Settlement Transaction, no Professional Expenses incurred thereafter will be permitted to be paid with any proceeds of the DIP Loans (the "Professional Expense Termination Notice"); provided, that the Parties acknowledge and agree that the Professional Expense Termination Notice shall be deemed to have been given to the Official Unsecured Creditors Committees if the same is delivered to the respective counsel for the Official Unsecured Creditors Committees. No further relief from stay shall be required in order for Lender to give the Professional Expense Termination Notice to the Trustee or the Official Unsecured Creditors Committees. Trustee shall provide to Lender reasonable backup documentation with respect to the payment of any Professional Expenses from the proceeds of the DIP Loans. The Professional Expense Allowance Amount shall be apportioned amongst the Borrowers as provided in the Budget. No proceeds of the DIP Loans may be used to fund litigation against the Lender, any of the Existing Lenders or any of their respective affiliates or to fund Borrowers' efforts (or the efforts of any of their respective affiliates) to confirm a plan of reorganization which is not otherwise accepted by the Existing Lenders and Lender. Nothing in this Stipulation shall affect the Court-approved retainer provided to Winthrop Couchot and Irell & Manella.

4.      Repayment of Ritter Loan. Notwithstanding anything to the contrary contained herein, the Lender's obligation to extend and fund the DIP Loans hereunder is conditioned upon Borrowers' agreement to repay a portion of the Ritter Ranch Mortgage Loan in an amount equal to the DIP Loan Amount (the "Ritter Ranch Loan Repayment"). Borrowers hereby agree to the Ritter Ranch Loan Repayment and further agree to cooperate with Lender and LCPI in all respects to effectuate the same as soon as possible and in the manner provided herein. The Ritter Ranch Loan Repayment shall be made to LCPI from funds held in any of the Ritter Ranch Pledged Accounts and each Borrower holding an interest in any Ritter Ranch Pledged Account hereby consents to relief from the automatic stay to the extent necessary to enable LCPI to effectuate the Ritter Ranch Loan Repayment. Borrowers shall, and shall cause their affiliates to, cooperate with LCPI in effectuating the release of funds held in the Ritter Ranch Pledged Accounts and shall execute and deliver such consents, instructions, releases, stipulations and/or other instruments or documents reasonably requested by LCPI in connection with the release of funds to LCPI from the Ritter Ranch Pledged Accounts and shall further stipulate to and cooperate in the issuance of an order by the Court specifically authorizing and directing the depositary bank to release funds in the Ritter Ranch Pledged Accounts in the amount of the Ritter Ranch Loan Repayment.

5.      Interest. The DIP Loans shall accrue interest at the rate of ten percent (10%) per annum from the date of funding thereof to the Trustee as provided herein until repaid in full. All unpaid principal and accrued interest shall be payable in full on the Maturity Date (as defined below). There are no other fees associated with the DIP Loans. All accrued interest on the DIP Loans shall be added to the outstanding principal amount of the DIP Loans and shall be allocated in the same proportion as principal to the applicable Borrower and paid to the Lender by the Borrowers, to the extent applicable to each Borrower, on the Maturity Date.

6.      Maturity Date. Each respective DIP Loan shall be due and payable in full to the Lender by the applicable Borrower, without notice or demand, upon the earlier of (a) consummation of the sale of any of the applicable DIP Collateral (as defined below), including pursuant to a motion under section 363 of the Bankruptcy Code (for the avoidance of doubt, each Borrower agrees to pay its respective DIP Loan in full immediately and directly out of the proceeds of any sale of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

applicable DIP Collateral up to the amount of such DIP Loan and accrued and unpaid interest thereon), (b) any priming of such DIP Loan provided, however, that any equity contribution, junior secured or unsecured financing will in no way trigger the repayment of such DIP Loan, and (c) acceleration of such DIP Loan by Lender following the occurrence of an Event of Default.

7.    DIP Obligations.  This Stipulation constitutes and evidences the validity and binding effect of the DIP Loans, which obligations shall be enforceable against the respective Borrowers (with respect only to the DIP Loan made to each such respective Borrower), their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing.  The DIP Loans include all loans, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Borrowers to the Lender under this Stipulation (but shall not include any indebtedness owing to Lender, as an Existing Lender, under any other loan documents), including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loans.

8.    DIP Liens and DIP Collateral.  In order to secure the payment of the DIP Loans, Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected, senior postpetition security interests in and liens on (the "DIP Liens") any and all presently owned and hereafter acquired personal property, real property and other assets of Borrowers, whether owned or consigned by or to, or leased from or to Borrowers, regardless of where located, including, without limitation, the assets set forth in clauses (1) through (4) below (collectively, the "DIP Collateral"):  (1) all presently owned and hereafter acquired assets of the Borrowers and their estates, and any proceeds and products thereof, including without limitation, accounts, deposit accounts, cash, as-extracted collateral, chattel paper, investment property, letter-of-credit rights, securities accounts, commercial tort claims, investments, instruments, documents, inventory, contract rights, general intangibles, intellectual property, real property, fixtures, goods, equipment and other fixed assets and proceeds and products of all of the foregoing (including insurance proceeds), (2) proceeds of avoidance actions under chapter 5 of the Bankruptcy Code, (3)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any rights under Section 506(c) of the Bankruptcy Code, and (4) any unencumbered assets of the Borrowers, provided, however, that (a) each DIP Loan shall be secured by that portion of the DIP Collateral owned by the Borrower to whom such DIP Loan was made and not by that portion of the DIP Collateral owned by any of the other Borrowers, (b) the DIP Liens shall be junior and subordinate in all respects to any prior perfected secured claims of Danske Bank A/S, London Branch ("Danske Bank") as to the real property owned by SunCal Century City, LLC and commonly referred to as "10000 Santa Monica" and located in Santa Monica, California (the "Senior Danske Claims"); and (c) in the event that the automatic stay is lifted as to any particular asset or assets of the Borrowers and the applicable Existing Lenders or their respective affiliates acquire title to such asset or assets pursuant to a foreclosure proceeding, a 363 sale under the Bankruptcy Code or otherwise, (i) the Lender's recovery as to such asset or assets (the "Foreclosure Collateral") shall be limited to the amount of the DIP Loans advanced in respect of such asset or assets and any and all other DIP Collateral and shall specifically exclude any avoidance actions or proceeds thereof, and (ii) the respective DIP Liens shall be deemed modified to exclude the proceeds of avoidance actions of the respective Borrower's estate.  Nothing contained in this Stipulation shall alter or prejudice any of the Parties' rights or obligations in respect of Danske Bank.

        9.    DIP Lien Priority.  Except with respect to the Senior Danske Claims, the DIP Liens securing the respective DIP Loans (as to the applicable allocated portion thereof) shall be senior in priority and superior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Cases.  The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

        10.    Cross-Collateralization and Cross-Defaults.  The DIP Liens shall not be cross-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

collateralized (i.e., each DIP Loan shall be secured by that portion of the DIP Collateral owned by the Borrower to whom such DIP Loan was made and not by that portion of the DIP Collateral owned by any of the other Borrowers) but shall be cross-defaulted such that any default related to any particular DIP Loan or DIP Lien will result in a default with respect to all DIP Loans and DIP Liens.

11.    DIP Superpriority Claim.  In order to further secure the payment of the DIP Loans, the Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in these Cases (the "DIP Superpriority Claim") in the amount of and on account of any and all DIP Loans including any amount owed thereunder or in respect thereof; provided, however, that the DIP Superpriority Claim shall be subject to the Senior Danske Claims in respect of any collateral securing the Senior Danske Claims.  Subject to the proviso in the immediately preceding sentence, the DIP Superpriority Claim shall have priority over any and all administrative expenses and unsecured claims against the Borrowers or their estates in the Cases, at any time existing or arising, of any kind, nature or priority whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), and any other provision of the Bankruptcy Code, and at all times be senior to the rights of the Borrowers and their estates, any successor trustee or other estate representative to the extent permitted by law, or any other creditor in the Cases.

12.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Stipulation, including, without limitation, to:  (a) permit the Borrowers to grant the DIP Liens and DIP Superpriority Claims; (b) permit the release of funds in the Ritter Ranch Pledged Accounts in order to effectuate the Ritter Ranch Loan Repayment; (c) permit the Borrowers to perform such acts as the Lender may request to assure the perfection and priority of the liens granted herein; (d) permit the Borrowers to incur all liabilities and obligations to the Lender in connection with the DIP Loans; (e) authorize the Borrowers to pay the Lender, and the Lender to retain and apply, payments made in accordance with the terms of this Stipulation, and (f) enable the Lender to enforce, protect and preserve the DIP Loans, the DIP Liens, the DIP Collateral and all of its rights and remedies with

respect thereto or otherwise under this Stipulation.

13.    Perfection of DIP Liens.  This Stipulation shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, mortgage, deed of trust, assignment, pledge, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the Lender to the priorities granted herein.  Notwithstanding the foregoing, the Lender is authorized to file, as it deems necessary or advisable in its sole discretion, this Stipulation and any such financing statements, mortgages, deeds of trust, assignments, pledges, notices and other instruments or documents, and to attach applicable legal descriptions thereto and/or to this Stipulation, to perfect the DIP Liens in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and this Stipulation and all such financing statements, mortgages, deeds of trust, assignments, pledges, notices and other documents shall be deemed to have been filed or recorded as of the commencement of the respective bankruptcy cases of each of the Borrowers (collectively, the "Cases"); provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens.  The Borrowers are authorized and directed to execute and deliver promptly upon demand to the Lender all such financing statements, mortgages, deeds of trust, assignments, pledges, title insurance policies, notices, instruments, and other documents as the Lender may reasonably request.  The Lender, in its sole discretion, may file a photocopy of this Stipulation as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, deeds of trust, assignments, pledges, notices of lien, instrument, or similar document.

14.    Events of Default.  The following occurrences shall constitute an "Event of Default" under this Stipulation:  (a) failure of any of the Borrowers to comply with any term of this Stipulation; (b) the use of proceeds of any of the DIP Loans other than in strict compliance with the Budget or the terms of this Stipulation; or (c) failure of the Borrowers to repay the DIP Loans upon maturity thereof.

15.    <u>Remedies</u>.  Immediately upon the occurrence and during the continuation of an Event of Default with respect to any DIP Loan to any Borrower, the Lender may:  (a) declare any individual DIP Loan or all of the DIP Loans, as determined by Lender in its sole and absolute discretion, to be immediately due and payable; (b) terminate, reduce or restrict any further commitment to extend credit to the Borrowers to the extent any commitment remains; (c) demand that all unexpended proceeds of the DIP Loans then in the possession of the Trustee be immediately remitted to Lender for application to the outstanding interest and principal of the DIP Loans, whereupon Trustee shall remit such unexpended funds to Lender; and/or (d) seek relief from the automatic stay under section 362 of the Bankruptcy Code to enforce its rights under the DIP Loans.

16.    <u>Good Faith</u>.  The Lender and Borrowers have acted in good faith in connection with this Stipulation.  In accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Stipulation are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code solely with respect to the DIP Loans.  Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby.  Any liens or claims granted to the Lender in respect of the DIP Loans under this Stipulation arising prior to the effective date of any such modification, amendment or vacatur of this Stipulation shall be governed in all respects by the original provisions of this Stipulation, including entitlement to all rights, remedies, privileges and benefits granted herein.

17.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Loans or the DIP Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Lender (which consent may be granted or withheld in Lender's sole and absolute discretion), and no such consent shall or can be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lenders.

18.    <u>Intentionally Omitted</u>.

19.    <u>Section 552(b)</u>.  The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code solely with respect to the DIP Loans.

20.    <u>Plan Treatment</u>.  The Borrowers expressly stipulate and acknowledge that the DIP Loans shall be treated as administrative expenses under the Bankruptcy Code and, as such, must be paid in full on the effective date of any plan of reorganization or liquidation pursuant to section 1141(d) of the Bankruptcy Code unless the DIP Loans have been paid in full in cash on or before such effective date.  Notwithstanding the foregoing, the Parties agree that the DIP Loans shall not be treated as administrative expenses under any such plan of reorganization or liquidation if and to the extent that such plan provides for the full satisfaction of the DIP Loans or treatment that is equal to or superior to the secured loans asserted by Lender, LCPI or any of their affiliates as against the Borrowers.

21.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any rights, claims or privileges (whether legal, equitable or otherwise) of the Parties or their respective affiliates with respect to any issues that are not expressly addressed herein including, without limitation, issues relating to the sale procedures motions filed by each of the Debtors and the Trustee in the Cases.  Specifically, the Parties reserve all rights in all aspects of pending litigation between them and/or their respective affiliates, including any matters involving equitable subordination or substantive consolidation.  The Parties further agree that entry into this Stipulation, and extension of the DIP Loans contemplated hereunder, shall not be used in any manner in litigation amongst the Parties and/or their respective affiliates, whether as, for instance, a basis for or against substantive consolidation or otherwise.  No release or waiver by any Party or its affiliates of any rights, claims or causes of action that such Party or its affiliates may have against any other Party or its affiliates shall be, or shall be deemed to have been, intended or otherwise effectuated hereunder except as may otherwise be expressly stated herein and none of the Borrowers or any of their respective affiliates shall have any offset rights against the Lender or any of its affiliates with respect to or otherwise affecting any of the DIP Loans.

22.    <u>No Modification</u>.  Until and unless the DIP Loans have been indefeasibly paid in full

in cash and all commitments to extend DIP Loans have been terminated (collectively, "DIP Loan Full Repayment"), the Borrowers irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Lender (which consent may be granted or withheld in Lender's sole and absolute discretion) (i) any modification, stay, vacatur or amendment to this Stipulation (and no such consent shall be implied by any other action, inaction or acquiescence of the Lender) unless the same shall only become effective after DIP Loan Full Repayment; or (ii) a priority claim for any administrative expense or unsecured claim against the Borrowers (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in these Cases or any successor cases equal or superior to the DIP Superpriority Claim unless such priority claim shall only become effective after DIP Loan Full Repayment; and (b)  without the prior written consent of the Lender (which consent may be granted or withheld in Lender's sole and absolute discretion), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens unless such lien shall only become effective after DIP Loan Full Repayment.

23.     Jurisdiction.  The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

24.     Further Cooperation.  The Parties agree to and will cooperate fully with each other in the performance of this Stipulation, and will execute such additional agreements, documents or other instruments as may reasonably be required to carry out the intent of this Stipulation.

25.     Signatures.  This Stipulation may be signed in any number of counterparts (and by each Party hereto on different counterparts), each of which constitutes an original, but all such counterparts when taken together shall constitute one and the same agreement.  This Stipulation may be executed by facsimile signature and delivered by facsimile transmission with the same effect as delivery of a manually executed counterpart of this Stipulation.

26.     No Admission.  Neither this Stipulation nor anything contained in this Stipulation shall be construed as, treated as or characterized as an admission by any Party of any fact or liability or as evidence of any allegation of any Party.  Neither this Stipulation nor anything in this

1 Stipulation shall be admissible in any proceeding as evidence of liability or wrongdoing by any of

2 the Parties.  This Stipulation may be introduced, however, in any proceeding to enforce the terms of

3 this Stipulation.

4    27. <u>Authority</u>.  Each person who signs this Stipulation represents and warrants that he or

5 she has the authority and capacity to act on behalf of the Party for whom he or she is signing and to

6 bind that Party to the terms of this Stipulation.

7    28. <u>Entire Agreement</u>.  This Stipulation contains the entire agreement between the Parties

8 with respect to the subject matter hereof and may not be amended or modified except by a writing

9 executed by the Parties.  All prior oral and written agreements, if any, are expressly superseded

10 hereby and are of no further force and effect.

13          WEIL, GOTSHAL & MANGES LLP

15          - and -
 Dated: *March* 2, 2009   PACHULSKI STANG ZIEHL & JONES LLP

17          By
           Richard M. Pachulski
18           Dean A. Ziehl
           Maxim B. Litvak
19           Attorneys for Lehman ALI, Inc.

20 Dated: *April* 2, 2009   WINTHROP COUCHOT
21          PROFESSIONAL CORPORATION

22          By
23           Paul J. Couchot
           Peter W. Lianides
24           General Insolvency Counsel for Debtors
           and Debtors-in Possession and Proposed
25           Counsel for Trustee

27 <u>APPROVED AS TO FORM AND SUBSTANCE:</u>

APPR 2

1   Dated:   March ___, 2009          IRELL & MANELLA LLP

2

3                                     By _____

4                                        Kerri A. Lyman
                                         Alan J. Friedman
5                                        Attorneys for Official Unsecured
                                         Creditors Committee

6

7   Dated:   March ___, 2009          WEILAND, GOLDEN, SMILEY, WANG
                                      EKVALL & STROK LLP
8

9                                     By _____

10                                       Lei Lei Wang Ekvall
                                         Proposed Attorneys for the Official
11                                       Unsecured Creditors Committee in the
                                         Trustee Debtors' Cases

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Dated:   March ___, 2009          IRELL & MANELLA LLP

2

3                                     By _____
                                         Kerri A. Lyman
4                                        Alan J. Friedman
                                         Attorneys for Official Unsecured
5                                        Creditors' Committee

6
    Dated:   March 2, 2009             WEILAND, GOLDEN, SMILEY, WANG
7                                      EKVALL & STROK LLP

8
                                       By _____
9                                         Lei Lei Wang Ekvall
                                          Proposed Attorneys for the Official
10                                        Unsecured Creditors Committee in the
                                          Trustee Debtors' Cases
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:<br>*PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED*<br>*DEBTORS,*<br><div align="right">Jointly Administered Debtors in Possession.</div> | CHAPTER 11<br><br>CASE NUMBER 08-17206 ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10100 Santa Monica Blvd., 11th Fl., Los Angeles, CA  90067.

The foregoing document described STIPULATION WITH LEHMAN ALI, INC. PURSUANT TO 11 U.S.C. §§ 362,363, 364, AND 507: (1) APPROVING SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (3) MODIFYING AUTOMATIC STAY TO THE EXTENT NECESSARY will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 6, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

<div align="right">☒  Service information continued on attached page</div>

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

<div align="right">☐  Service information continued on attached page</div>

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

<div align="right">☐  Service information continued on attached page</div>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 6, 2009 | Sophia L. Lee | */s/Sophia L. Lee* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                              **F 9013-3.1**

| In re:<br>*PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,*<br><span style="text-align:right">Jointly Administered Debtors in Possession.</span> | CHAPTER 11<br><br>CASE NUMBER 08-17206 ES |
| --- | --- |

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

James C Bastian on behalf of Creditor ARB, Inc.
jbastian@shbllp.com
John A Boyd on behalf of Interested Party Oliphant Golf Inc
fednotice@tclaw.net
Vincent M Coscino on behalf of Petitioning Creditor CST Environmental Inc
emurdoch@allenmatkins.com
Paul J Couchot on behalf of Debtor ACTON ESTATES, LLC
pcouchot@winthropcouchot.com, pj@winthropcouchot.com
Ana Damonte on behalf of Creditor Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com
Melissa Davis on behalf of Creditor City of Orange
mdavis@shbllp.com
Daniel Denny on behalf of Interested Party Courtesy NEF
ddenny@gibsondunn.com
Caroline Djang on behalf of Creditor Lehman ALI, Inc.
crd@jmbm.com
Donald T Dunning on behalf of Creditor Hertz Equipment Rental Corporation
ddunning@dunningLaw.com
Joseph A Eisenberg on behalf of Creditor Lehman ALI, Inc.
jae@jmbm.com
Lei Lei Wang Ekvall on behalf of Interested Party Courtesy NEF
lekvall@wgllp.com
Richard W Esterkin on behalf of Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com
Alan J Friedman on behalf of Attorney Irell & Manella LLP
afriedman@irell.com
Robert P Goe on behalf of Petitioning Creditor SCC Acquisitions Inc
kmurphy@goeforlaw.com
Eric D Goldberg on behalf of Interested Party Courtesy NEF
egoldberg@stutman.com
Kelly C Griffith on behalf of Interested Party Courtesy NEF
bkemail@harrisbeach.com
Asa S Hami on behalf of Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com
Michael J Hauser on behalf of U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov
Lawrence J Hilton on behalf of Creditor Mark R. McGuire, Attorney at Law, Inc.
lhilton@hewittoneil.com, pgarnica@hewittoneil.com
Michelle Hribar on behalf of Plaintiff EMR Residential Properties LLC
mhribar@rutan.com
Lawrence A Jacobson on behalf of Creditor BKF Engineers
laj@cohenandjacobson.com
Stephen M Judson on behalf of Petitioning Creditor The Professional Tree Care Co
sjudson@fablaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re: *PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,* Jointly Administered Debtors in Possession. | CHAPTER 11<br><br>CASE NUMBER 08-17206 ES |
| --- | --- |

David I Katzen on behalf of Interested Party Bethel Island Municipal Improvement District
katzen@ksfirm.com
Christopher W Keegan on behalf of Creditor SC Master Holdings II LLC
emilee@kirkland.com;gvogt@kirkland.com;ckeegan@kirkland.com
Irene L Kiet on behalf of Creditor BNB Engineering, Inc.
ikiet@hkclaw.com
Leib M Lerner on behalf of Interested Party Courtesy NEF
leib.lerner@alston.com
Peter W Lianides on behalf of Debtor Palmdale Hills Property, LLC
pj@winthropcouchot.com
Charles Liu on behalf of Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com
Kerri A Lyman on behalf of Attorney Irell & Manella LLP
klyman@irell.com
Mariam S Marshall on behalf of Creditor RGA Environmental, Inc.
mmarshall@marshallramoslaw.com
Hutchison B Meltzer on behalf of Interested Party Courtesy NEF
hmeltzer@wgllp.com
Joel S. Miliband on behalf of Creditor RBF CONSULTING
jmiliband@rusmiliband.com
James M Miller on behalf of Petitioning Creditor SCC Acquisitions Inc.
jmiller@millerbarondess.com
Louis R Miller on behalf of Plaintiff Palmdale Hills Property, LLC
smiller@millerbarondess.com
Douglas M Neistat on behalf of Defendant Desert Pipeline, Inc.
twilliams@greenbass.com
Robert Nida on behalf of Creditor Kirk Negrete, Inc
Rnida@castlelawoffice.com
Penelope Parmes on behalf of Defendant City of San Clemente
pparmes@rutan.com
Raymond A Policar on behalf of Creditor Williams+Paddon Architects+Planners, Inc.
hausermouzes@sbcglobal.net
Cassandra J Richey on behalf of Interested Party Courtesy NEF
cmartin@pprlaw.net
Debra Riley on behalf of Interested Party City of Palmdale
driley@allenmatkins.com
Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com
William D Schuster on behalf of Creditor HD Supply Construction Supply LTD
bills@allieschuster.org
United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov
Jason Wallach on behalf of Interested Party Courtesy NEF
jwallach@bergerkahn.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**

| In re:<br>*PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED*<br>*DEBTORS,*<br><div style="text-align:right">Jointly Administered Debtors in Possession.</div> | CHAPTER 11<br><br>CASE NUMBER 08-17206 ES |
| --- | --- |

Christopher T Williams on behalf of Creditor Danske Bank A/S London Branch
ctwilliams@venable.com
David M Wiseblood on behalf of Creditor Bethel Island Municipal Improvement District
dwiseblood@seyfarth.com
Arnold H Wuhrman on behalf of Creditor Wayne Lee
Wuhrman@serenitylls.com
Dean A Ziehl on behalf of Creditor Lehman ALI, Inc.
dziehl@pszjlaw.com, dziehl@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                **F 9013-3.1**