PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
SEAN A. OKEEFE – State Bar No. 122417
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for
Within Specified Administratively Consolidated
Debtors-in-Possession and
Counsel for SCC Acquisitions, Inc.

LOUIS R. MILLER, State Bar No. 54141
MARTIN PRITIKIN, State Bar. No. 210845
BRIAN PROCEL, State Bar No. 218657
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
Special Litigation Counsel to Administratively
Consolidated Debtors-in-Possession and to
Chapter 11 Trustee for Within Specified Debtors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>    Jointly Administered Debtors and Debtors-in-Possession<br><br>Affects:<br>☒ All Debtors<br><br>☐ Palmdale Hills Property,<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC Palmdale,<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>*Caption Continued on Next Page* | Case No. 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574 ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br>Chapter 11 Proceedings<br><br>**DEBTORS' OBJECTIONS TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES**<br><br>DATE: June 30, 2009<br>TIME: 2:00 p.m.<br>PLACE: Courtroom 5A |

*Continued from Previous Page*

- [ ] SunCal Bickford Ranch, LLC
- [ ] Acton Estates, LLC
- [ ] Seven Brothers LLC
- [ ] SJD Partners, Ltd.
- [ ] SJD Development Corp.
- [ ] Kirby Estates, LLC
- [ ] SunCal Communities I, LLC
- [ ] SunCal Communities III, LLC
- [ ] SCC Communities LLC
- [ ] North Orange Del Rio Land, LLC
- [ ] Tesoro SF LLC
- [ ] LBL-SunCal Oak Valley, LLC
- [ ] SunCal Heartland, LLC
- [ ] LBL-SunCal Northlake, LLC
- [ ] SunCal Marblehead, LLC
- [ ] SunCal Century City, LLC
- [ ] SunCal PSV, LLC
- [ ] Delta Coves Venture, LLC
- [ ] SunCal Torrance, LLC
- [ ] SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

**PAGE**

I.   PRELIMINARY STATEMENT ...................................................................... 4

II.  FACTUAL BACKGROUND ........................................................................ 4
     A.  Relationship Between the Debtors and the Lehman Entities ............... 4
     B.  The Debtors' Bankruptcy Cases ........................................................ 5
     C.  The Lehman Entities' Representations Regarding the Lease ............... 5
     D.  The Sold Loans ................................................................................. 6
     E.  LCPI's Status as Mere Custodial Agent ........................................... 7
     F.  The Unauthorized Claims Filed by the Lehman Entities .................... 8

III. ARGUMENT ............................................................................................. 8
     A.  Only Creditors or Their Authorized Agents May File Proofs
         of Claim ........................................................................................... 8
     B.  The Lehman Entities Are Not "Creditors" Because They Have
         No Ownership Interest in the Sold Loans ......................................... 9
         1.  LCPI's "Repo" with Fenway Was a True Sale in
             Which Title and Ownership Passed to the Buyer ..................... 9
         2.  The Other Lehman Entities Have No Interest
             Whatsoever in the Sold Loans ............................................... 12
     C.  The Lehman Entities' Proofs of Claim Were Not Filed by
         Authorized Agents of a Creditor ..................................................... 12
         1.  The Proofs of Claim Were Not Filed on Behalf of
             The True Owner ...................................................................... 12
         2.  The Repo Agreement Did Not Authorized Lehman to
             File the Proofs of Claim ......................................................... 13
         3.  Fenway Did Not Authorize the Filing of Proofs of
             Claim ...................................................................................... 14
             a.  The Fenway Email Acknowledges that
                 Fenway Capital Is the Holder of the Sold
                 Loans ........................................................................... 14
             b.  The Fenway Email Confirms that the Lehman
                 Entities Were Not Authorized to File Claims
                 With Respect to the Sold Loans ................................... 15
         4.  As a Bankruptcy Debtor, LCPI Cannot File Claims on
             Behalf of Another .................................................................. 16
             a.  The Sold Loans Are Not Part of LCPI's Estate ......... 16
             b.  LCPI Cannot Collect Property that Is Not
                 Part of Its Estate ........................................................ 16

IV.  THE LEHMAN ENTITIES VIOLATED FED.R.BANKR.P. 2019(a) .............. 17

V.   CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*American Postal Workers Union v. Frank,*
  968 F.2d 1373 (1st Cir.1992) ...................................................................................16

*Begier v. I.R.S*
  496 U.S. 53, 110 S.Ct. 2258 (1990) .........................................................................16

*Caplin v. Marine Midland Grace Trust Co. of New York,*
  406 U.S. 416 (1972) ..................................................................................................17

*Elliott v. Bumb,*
  356 F.2d 749 (9th Cir. 1966) ....................................................................................16

*In re B.I. Financial Services Group, Inc.,*
  854 F.2d 351 (9th Cir. 1988) ...................................................................................16

*In re Baldwin-United Corp.,*
  52 B.R. 146 (Bankr.S.D.Ohio 1985) .........................................................................19

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,*
  67 B.R. 557 (D.N.J. 1986) ........................................................................................10

*In re CF Holding,*
  145 B.R. 124 (Bankr.D.Conn.1992) ..........................................................................13

*In re Comark,*
  145 B.R. 47 (B.A.P. 9th Cir. 1992) ...........................................................................10

*In re D.H. Overmyer Telecasting Co.,*
  56 B.R. 657 n.1 (Bankr.N.D.Ohio 1986) ..................................................................17

*In re Electronic Theatre Restaurants Corp.,*
  57 B.R. 147 (Bankr.N.D.Ohio 1986) ...................................................................14, 19

*In re Ellington,*
  151 B.R. 90 (W.D. Tex. 1990) ...........................................................................9, 11, 12

*In re Ionosphere Clubs, Inc.,*
  101 B.R.844 (Bankr. S.D.N.N.Y. 1989).................................................................13, 19

*In re Lucas Dallas,*
  185 B.R. 801 (9th Cir. BAP 1995) ............................................................................17

*In re Manville Forest Prods. Corp.,*
  89 B.R. 358 (Bankr. S.D.N.Y. 1988) ...................................................................14, 15

*In re Melillo,*
  392 B.R. 1 (1st Cir.BAP 2008) ...................................................................................9

*In re North Bay General Hosp., Inc.,*
  --- B.R. ----, 2009 WL 689720, 9-11 (Bankr. S.D. Tex. 2009) .....................13, 14, 15, 18

MAINDOCS-#130612-v1-PalmdaleObjClaims.DOC

*In re Parrish,*
   326 B.R. 708 (Bankr. N.D. Ohio 2005)..................................................................9, 13, 16

*In re R & L Engineering Co.,*
   182 F.Supp. 317 (D.C.Cal. 1960)..........................................................................9. 11

*In re Ray Slattery, Inc.,*
   54 B.R. 642 (Bankr. D.N.J. 1985)..........................................................................16

*In re Residential Resources Mortgage Investments, Corp.,*
   98 B.R. 2 (Bankr. D. Ariz. 1989)............................................................................10

*In re Southland Corp.,*
   124 B.R. 211 (Bankr.N.D.Tex.1991)......................................................................19

*Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom ComputerCorp),*
   13 F.3d 321 (9th Cir. 1994).....................................................................................16

*Morrison-Knudsen Co., Inc. v. CHG International, Inc.,*
   811 F.2d 1209 (9th Cir. 1987).................................................................................16

*SEC v. Cherif,*
   933 F.2d 403 (7th Cir. 1991)...................................................................................17

*SEC v. Drysdale Securities Corp.,*
   785 F.2d 38 (2d Cir. 1986)......................................................................................10

*SEC v. Securities Northwest, Inc.,*
   573 F.2d 622 (9th Cir.1978)....................................................................................16

*Warth v. Seldin,*
   422 U.S. 490 (1975)................................................................................................16

*Williams v. California 1st Bank,*
   859 F.2d 664 (9th Cir.1988)....................................................................................17

**STATUTES**

11 U.S.C. § 101(10)......................................................................................................9
11 U.S.C. § 501.........................................................................................................4, 9
11 U.S.C. § 501(a).....................................................................................................8, 9
11 U.S.C. § 502(a)........................................................................................................9
11 U.S.C. § 502(b)........................................................................................................9
11 U.S.C. § 541(a)(2)..................................................................................................16
11 U.S.C. § 541(b)(2)..................................................................................................16
11 U.S.C. § 559...........................................................................................................10
11 U.S.C. § 1102.........................................................................................................18
11 U.S.C. § 1114.........................................................................................................18

MAINDOCS-#130612-v1-PalmdaleObjClaims.DOC

12 U.S.C. § 371c(b)(7).................................................................................................10

12 C.F.R. § 1.2(i)........................................................................................................10

12 C.F.R. § 204.2(a)(1)(vii)(B)..................................................................................10

12 C.F.R. § 32.2(j)(iii)................................................................................................10

**RULES**

Fed.R.Bankr.P. 2019.............................................................6, 13, 17, 18, 19

Fed.R.Bankr.P. 2019(a)..................................................................13, 17, 18

Fed.R.Bankr.P. 2019(b)........................................................................18, 19

Fed.R.Bankr.P. 3001..................................................................................4

Fed.R.Bankr.P. 3001(a)..............................................................................5

Fed.R.Bankr.P. 3001(b)..........................................................8, 9, 14, 15

Fed.R.Bankr.P. 3001(e)(1)........................................................................11

**TREATISES**

4 L. King, Collier on Bankruptcy ¶ 541.13 (15th ed. 1988) .........................................16

**OTHER AUTHORITIES**

1983 Senate Repo Amendments Report at 47 ............................................................10

Federal Reserve Act § 23A(b)(7).................................................................................10

PTE 81-8, Class Exemption Covering Certain Short-Term Investments,
     46 Fed. Reg. 7511 (Jan. 23, 1981) .......................................................................10

The following Voluntary Debtors: Palmdale Hills Property, LLC ("Palmdale Hills"), SunCal Communities I, LLC ("SunCal I), SunCal Communities III ("SunCal III), LLC, SCC Palmdale, LLC ("SCC Palmdale"), Acton Estates, LLC ("Acton Estates"), SunCal Beaumont, LLC ("SunCal Beaumont"), SunCal Emerald Meadows, LLC ("SunCal Emerald"), SunCal Johansson Ranch, LLC ("SunCal Johansson"), SunCal Bickford Ranch, LLC ("SunCal Bickford"), SunCal Summit Valley, LLC ("SunCal Summit"), Seven Brothers, LLC ("Seven Brothers"), Kirby Estates, LLC ("Kirby Estates"), SJD Partners, Ltd., a California limited partnership ("SJD Partners"), and SJD Development Corp., a California corporation ("SJD Development"), SCC Communities LLC ("SCC Communities"), North Orange Del Rio Land LLC ("Del Rio") and Tesoro SF LLC ("Tesoro") (collectively, the "Voluntary Debtors"); and the following Trustee Debtors represented by their Chapter 11 Trustee, Mr. Steven M. Speier (the "Trustee"): Delta Coves Ventures, LLC ("Delta Coves"), SunCal Heartland, LLC ("SunCal Heartland"), SunCal Marblehead, LLC ("SunCal Marblehead"), LB-L-SunCal Northlake, LLC (SunCal Northlake"), LB-L-SunCal Oak Valley, LLC ("SunCal Oak Valley"), SunCal Century City, LLC ("SunCal Century City"), SunCal PSV, LLC ("SunCal PSV"), SunCal Torrance Properties, LLC ("SunCal Torrance"), and SunCal Oak Knoll, LLC ("SunCal Oak Knoll") (collectively, the "Trustee Debtors", and together with the Voluntary Debtors, the "Debtors") hereby object, pursuant to, *inter alia*, 11 U.S.C. §502 and Federal Rules of Bankruptcy Procedure Rules 3007 and 2019, to the claims of Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), Northlake Holdings, LLC ("Northlake Holdings") and OVC Holdings LLC ("OVC Holdings") (collectively the "Lehman Entities") attached to the O'Keefe Declaration as Exhibits "P" through "BB" (collectively the "Disputed Claims") on the grounds more fully stated herein, and pray for an order striking the same as improperly filed claims.

/ / /

MAINDOCS-#130612-v1-PalmdaleObjClaims.DOC

This Objection is made on the basis of the within facts and legal authorities and the concurrently filed Declarations of Sean A. O'Keefe and Bruce Cook.

DATED: May 29, 2009

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

/s/ Paul J. Couchot

By: _____
    Paul J. Couchot
    Sean A. OKeefe
    General Insolvency Counsel for Voluntary
    Debtors

DATED: May 29, 2009

**MILLER BARONDESS, LLP**

/s/ Louis R. Miller

By: _____
    Louis R. Miller
    Martin Pritikin
    Brian Procel
    Special Litigation Counsel for the
    Administratively Consolidated Debtors-in-
    Possession and to Chapter 11 Trustee

# I.

## PRELIMINARY STATEMENT

In March 2009, the Lehman Entities filed thirteen proofs of claim against the Debtors, totaling approximately $1.6 billion dollars. These claims, which are referred to herein as the Disputed Claims, were based upon seven loans made to the Debtors prepetition. In each of these claims, the Lehman Entities represented under the penalty of perjury that they were "creditors" of the Debtors pursuant to the aforementioned loans. *In fact, this contention was false.*

Recent third party discovery establishes that LCPI sold the seven loans (the "Sold Loans") to Fenway Capital, LLC ("Fenway Capital" or "Fenway") prepetition, pursuant to the terms of a repurchase agreement. *The contract governing this transaction clearly states that all right, title and interest in the Sold Loans was transferred to Fenway Capital as buyer in August of 2008: LCPI retained mere possession of the Sold Loans solely as hold-in-custody-agent for Fenway.* The repurchase contract further states that LCPI is not authorized to exercise any rights with respect to the Sold Loans (other than limited rights that are not applicable).[1]

The Section 501 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3001 exclusively define who is empowered to file a claim: A "creditor," an agent of a creditor *who is authorized to file a claim*, or an indenture trustee. The Lehman Entities do not fall within any of these categories. Accordingly, the Disputed Claims should be stricken.[2]

# II.

## FACTUAL BACKGROUND

### A.  Relationship Between the Debtors and the Lehman Entities.

The jointly-administered Debtors are twenty-six (26) affiliates of SCC Acquisitions, Inc. ("SunCal"). (Cook Decl. ¶ 4). They were formed to develop twenty real estate projects throughout California (the "Projects") as part of a joint venture that began in the late 1990's between SunCal and the Lehman Entities (the "SunCal/Lehman Joint Venture"). *Id.* The SunCal/Lehman Joint Venture contemplated that SunCal would be the developer/manager of the Projects and that the

---

[1] The other Lehman Entities—Lehman ALI, OVC Holdings and Northlake Holdings — were not parties to the repurchase agreement. Accordingly, these entities lack even LCPI's bare possessory right.
[2] The Debtors may separately move to strike various pleadings filed by the Lehman Entities based on their false representation of continued ownership of the Sold Loans.

Lehman Entities would be SunCal's financial partners. (Cook Decl. ¶ 4). Between approximately 2005 and 2007, LPCI and/or Lehman ALI made a series of loans to Debtors, that are more fully described in Exhibit "A" to the Cook Declaration.

### B.    The Debtors' Bankruptcy Cases.

The Voluntary Debtors filed petitions under Chapter 11 on November 6, 2008 and November 17, 2009. (Cook Decl. ¶ 5). Involuntary petitions were filed against the Trustee Debtors in November of 2008. The bankruptcy court granted these petitions and entered orders for relief with respect to the Trustee Debtors on January 6, 2009 and January 8, 2009. (Cook Decl. ¶ 5). The Chapter 11 estates of the Voluntary Debtors and the Trustee Debtors are being jointly administered pursuant to an order entered on March 11, 2009. (Cook Decl. ¶ 5).

### C.    The Lehman Entities' Representations Regarding The Loans.

The Lehman Entities have continuously represented to the Court that they are "creditors" of the Debtors pursuant to the terms of the Loans. On the basis of this alleged status, the Lehman Entities have opposed substantially every action taken by the Debtors since the petition date. The Debtors had no reason to question the veracity of the Lehman Entities' representations until Danske Bank appeared before the Court on March 25, 2009 and represented that it held all right, title and interest in the $120 million loan secured by the property owned by SunCal Century City, pursuant to a 1999 repurchase agreement. Prior to this appearance, the Lehman Entities had been contending that they were the holders of this loan.

Based upon this disclosure, the Debtors demanded, in a letter transmitted on March 26, 2007, that the Lehman Entities disclose whether any of the remaining Loans had been sold through repurchase agreements or otherwise. (Ex. DD, OKeefe Decl.). The Lehman Entities elected to ignore this demand for several weeks.

On March 27, 2009, the Lehman Entities filed twenty proofs of claim based on the eleven remaining Loans. (Ex. A, OKeefe Decl.). In each of these proofs of claim, the Lehman Entities identified themselves as a "creditor" on the Official Form prescribed by Fed. R. Bankr. P. 3001(a). (See, Ex. P-BB, OKeefe Decl.). No other creditors were listed on these claims and s the Lehman

1   Entities never filed a verified statement under Federal Rule of Bankruptcy Procedure 2019

2   disclosing that they were purporting to appear in these cases as a representative of third parties.

3          The Lehman Entities finally responded to the Debtors' March 26 demand letter, after the

4   Debtors propounded a third-party subpoena on J.P. Morgan (who they believed may have been the

5   transferee of various Loans). In a letter dated April 15, 2009, the Lehman Entities admitted that the

6   Loans secured by liens against no less than fifteen of the twenty Projects owned by the Debtors

7   were subject to repurchase agreements, and that the "various counterparties" to these agreements

8   (primarily Fenway Capital and J.P. Morgan) "may claim some interest" in these Loans.[3] (Ex. EE,

9   OKeefe Decl.). However, the Lehman Entities elected not to disclose in this letter what "interest"

10  these counterparties " claimed and they did not provide the Debtors any of the documentation

11  relating to these claimed interests.

12         It was not until J.P. Morgan produced documents in response to the Debtors' subpoena on

13  April 28, 2009 that the Debtors obtained confirmation of what was only hinted at in the Lehman

14  Entities' letter—that the Lehman Entities relinquished all right, title and interest in the seven Sold

15  Loans *prior to the Petition Date*.

16  **D.    The Sold Loans.**

17         The documents produced by JP Morgan revealed the following facts. On August 22, 2008,

18  Fenway Capital, as "Buyer," and LCPI, as "Seller," entered into that certain *Master Repurchase*

19  *Agreement* (the "MRA"). (Ex. B – O, OKeefe Decl.). On the same date, the parties entered into a

20  repurchase transaction pursuant to which Fenway Capital purchased all of the Lehman Entities'

21  right, title and interest in the following loans:

22
| Loan | Claimant | Alleged Balance |
| --- | --- | --- |
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| SunCal Delta Coves Loan | Lehman ALI | $206,023,142 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Sun Cal Oak Valley Loan | OVC Holdings, LLC | $141,630,092 |
| SunCal Northlake Loan | Northlake Holdings, LLC | $123,654,777 |

(together the "Sold Loans"). (Ex. B-O, OKeefe Decl.)

---

[3] They are: Acton Ranch, Beaumont Heights, Bickford Ranch, Delta Coves, Emerald Meadows, Heartland, Johannson Ranch, Marblehead, Northlake, Oak Valley Champions, Pacific Point, Palm Springs Village, Ritter Ranch, Summit Valley, and 10000 Santa Monica (aka Century City).

This repurchase transaction was governed the terms of the MRA, which was crystal clear regarding the legal effect of the transaction: ***"All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date."*** (Ex. C, P. 14, Para. 8, OKeefe Decl.). After this transaction closed, LCPI served solely as the "hold-in-custody-agent" of the Sold Loans for Fenway Capital.[4] The other Lehman Entities—Lehman ALI, Northlake Holdings and OVC Holdings—were not parties to the MRA and had no rights whatsoever thereunder.

### E.    LCPI's Status as Mere Custodial Agent.

LCPI's relationship to the Sold Loans is addressed in Annex III to the MRA, which is entitled *Hold-in-Custody Transaction Annex* (the "HIC Annex"). (See Ex. C, P. 40-41, OKeefe Decl.). The HIC Annex states that LCPI shall hold the Sold Loans, solely as a custodial agent, "in a segregated account to the order of Buyer." The HIC Annex also states:

> This HIC Annex shall constitute a securities control agreement for purposes of the UCC and shall create a securities entitlement in favor of Buyer. ***Agent shall not take any action (aside from actions in accordance with instructions from Buyer) in respect of the Purchased Securities or Additional Purchased Securities***, except (i) to the extent otherwise provided in the agreement in connection with Seller's right of substitution and (ii) to the extent otherwise permitted under the Agreement after an Event of Default as to Buyer.

(Ex. B, P. 40-41, OKeefe Decl.) (emphasis added).

Moreover, paragraph 15 of the MRA states that LCPI's custodial duties cannot be assigned or transferred without the consent of Fenway. (Ex. B, P. 18, OKeefe Decl.) There is no evidence in the discovery obtained by the Debtors indicating that LCPI's limited custodial rights were ever transferred to Lehman ALI, Northlake Holdings or OVC Holdings.

Thus, under the MRA, LCPI has no interest in the Sold Loans and it is barred from taking any action with respect thereto, except in the case of substitution, which does not apply, or where Fenway Capital defaults, which also does not apply.  (See Ex. B, OKeefe Decl. (Ex. B, OKeefe Decl. (MRA ¶¶ 5, 9, 11 and Annex I thereto)).

---

[4] LCPI had the right and obligation to repurchase the Sold Loans and it held certain other rights, such as the right to receive the income payable on the loans pending the repurchase. However, these limited rights were forfeited in 2008 after LCPI filed for bankruptcy and defaulted under the terms of the MRA. *See* MRA ¶¶ 5, 9, 11, and Annex I thereto.

-7-

**F.** **The Unauthorized Claims Filed By The Lehman Entities.**

As indicated above, the Lehman Entities filed twenty claims in the Debtors' proceeding based upon the Loans. The following thirteen claims were filed by the Lehman Entities with respect to the Sold Loans:

| Exhibit[5] | Debtor | Case No | Claimant | Claims |
|---|---|---|---|---|
| P | SunCal I | 08-bk-17248 | LCPI | Claim No. 1 |
| Q | SunCal III | 08-bk-17249 | LCPI | Claim No. 2 |
| R | Acton | 08-bk-17236 | LCPI | Claim No. 6 |
| S | Emerald Meadows | 08-bk-17230 | LCPI | Claim No. 7 |
| T | Bickford | 08-bk-17231 | LCPI | Claim No.16 |
| U | Summit Valley | 08-bk-17227 | LCPI | Claim No. 12 |
| V | Palmdale Hills | 08-bk-17206 | LCPI | Claim No. 65 |
| W | SunCal PSV | 08-bk-17465 | Lehman ALI | Claim No. 12 |
| X | Delta Coves | 08-bk-17470 | Lehman ALI | Claim No. 21 |
| Y | SunCal Marblehead | 08-bk-17409 | Lehman ALI | Claim No. 9 |
| Z | SunCal Heartland | 08-bk-17407 | Lehman ALI | Claim No. 21 |
| AA | Sun Cal Oak Valley | 08-bk-17404 | OVC Holdings | Claim No. 16 |
| BB | SunCal Northlake | 08-bk-17408 | Northlake Holdings | Claim No. 6 |

(together the "Disputed Claims"). As the within authorities establish, the Lehman Entities lacked the requisite interest in the Sold Loans to file these claims.

### III.

### ARGUMENT

**A.** **Only Creditors or Their Authorized Agents May File Proofs of Claim.**

Filing a claim in a bankruptcy proceeding is a significant act. It can only be undertaken by two parties: A creditor or an indenture trustee. 11 U.S.C. § 501(a). ("A creditor or an indenture trustee may file a proof of claim."). Although Federal Rule of Bankruptcy Procedure 3001(b) allows an *authorized* agent of a creditor to *execute* a claim on behalf of the creditor, the filing is deemed to be made by the creditor and it is only effective to the extent proper authorization existed at the time of the filing. Fed.R.Bankr.P. 3001(b) ("[a] proof of claim shall be executed by the creditor or the creditor's authorized agent.") Accordingly, to file valid claims with respect to the Sold Loans, the Lehman Entities had to be creditors of the Debtors under the under the terms of the Sold Loans when the Disputed Claims were filed, or agents authorized to file such claims by

---

[5] Exhibit references are to OKeefe Declaration.

the creditors that actually held the claims, or an indenture trustee acting on behalf of such creditors. The Lehman Entities do not qualify under any of these categories.[6]

**B.** **The Lehman Entities Are Not "Creditors" Because They Have No Ownership Interest in the Sold Loans.**

The Bankruptcy Code defines a "creditor" as any entity that has a claim against the estate. *See* 11 U.S.C. § 101(10). When a creditor sells a loan that a debtor owes to a third party, the seller no longer has a claim against the estate, and consequently it is longer a "creditor" entitled to file a proof of claim. *In re Ellington*, 151 B.R. 90 (W.D. Tex. 1990). As the court in *In re Ellington* noted:

> There is a dearth of case law on whether an entity which has sold its claim is a "creditor" permitted to file a proof of claim. **This is not surprising, because logic dictates that if one does not own a claim against the debtor, one may not file a claim against the debtor.**

*In re Ellington*, 151 B.R. 90, 95 (W.D. Tex. 1990) (emphasis added); *see also In re R & L Engineering Co.*, 182 F.Supp. 317, 320-21 (D.C.Cal. 1960) (assignor of claim can no longer file proof of claim following assignment).

**1.** **LCPI's "Repo" with Fenway Was a True Sale In Which Title and Ownership Passed to the Buyer.**

Pursuant to the terms of the MRA, LCPI, as "Seller," and Fenway Capital, as "Buyer," agreed that "***All of Seller's interest in the Purchased Securities shall pass to Buyer on the Purchase Date***." (Emphasis added.) Thus, the plain language of the MRA itself indicates that the nature and effect of the transaction was a sale. It is also indicates that the parties *intended* the transaction to be a sale: "the parties intend that all Transactions hereunder be sales and purchases and not loans . . . ." (Ex. B, OKeefe Decl., MRA ¶ 6).

---

[6] The Lehman Entities bear the burden of proving this threshold fact. *See, e.g., In re Parrish*, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005) ("To have an allowed proof of claim, the claimant must prove an initial fact: that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor.")*In re Melillo*, 392 B.R. 1, 4 (1st Cir.BAP 2008) ("Only a creditor or indenture trustee may file a proof of claim, and only proofs of claim filed in accordance with § 501 are deemed allowed in the absence of an objection. 11 U.S.C. §§ 501(a), 502(a). Moreover, only a creditor or the creditor's authorized agent may execute a proof of claim. [FN4] Fed. R. Bankr.P. 3001(b). The question, therefore, of whether a claim should be disallowed for one of the nine reasons set forth in § 502(b) assumes that the proof of claim was filed in accordance with § 501(a) and Rule 3001(b). In other words, the question assumes that the proof of claim was filed by a creditor.")

This characterization of the transaction is wholly consistent with industry practice. The MRA is an industry form produced by the Bond Market Association (the "BMA"). The Guidance Notes that accompany this form confirm the absolute nature of the transfer effectuated by the MRA form:

> As in the past, the Agreement will continue to provide, on a reciprocal basis, the basic legal protections that are essential for repo market participants, including (i) *explicit characterization of transactions as purchases and sales,* (ii) mark-to-market procedures and (iii) express liquidation

(See, Ex. CC, O'Keefe Decl.) (emphasis added).

The characterization of repos as true sales is also consistent with a significant body of legislative, judicial, and regulatory authority that has rejected attempts to characterize them as simply a form of secured loan. *See In re Comark,* 145 B.R. 47, 53 (B.A.P. 9th Cir. 1992); *SEC v. Drysdale Securities Corp.,* 785 F.2d 38, 41 (2d Cir. 1986) (in standard collateralized loans, "the lender holds pledged collateral for security and may not sell it in the absence of a default. In contrast, repo 'lenders' take title to the securities received."); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 67 B.R. 557, 566-67 (D.N.J. 1986); *In re Residential Resources Mortgage Investments, Corp.,* 98 B.R. 2, 23 (Bankr. D. Ariz. 1989). In fact, Section 559 of the Bankruptcy Code, which exempts repos from the automatic stay, was enacted to overturn a bankruptcy court case that held a repo merely created a secured loan. *See* 1983 Senate Repo Amendments Report at 47.[7]

LCPI's retention of possession of the Sold Loans as hold-in-custody agent does not alter the characterization of the repo as a sale. *See In re Comark,* 145 B.R. 47, 53 (B.A.P. 9th Cir. 1992) ("The fact that the transactions at issue were HIC [hold-in-custody] repos under which FBC

---

[7] The purchase-and-sale structure of repos is confirmed by a plethora of other statutory and regulatory provisions. For example, federal banking regulations expressly exclude repo transactions involving federal securities from lending limits applicable to commercial banks. 12 C.F.R. § 32.2(j)(iii); 12 C.F.R. § 1.2(i). Under Regulation D of the Board of Governors of the Federal Reserve System, an obligation to repurchase U.S. government securities in a repo transaction is not viewed as a deposit "liability" against which reserves must be maintained. 12 C.F.R. § 204.2(a)(1)(vii)(B). Cf. Federal Reserve Act § 23A(b)(7) (12 U.S.C. § 371c(b)(7)) (identifying repurchase agreements separately from loans and extensions of credit). The U.S. Department of Labor has adopted a "prohibited transaction exemption" that permits regulated pension plans to invest cash by entering into repos in circumstances where lending transactions might otherwise be prohibited. See PTE 81-8, Class Exemption Covering Certain Short-Term Investments, 46 Fed. Reg. 7511 (Jan. 23, 1981).

[the buyer/lender] did not take possession of these securities did not mean that the transactions were not bona fide repos or sales of securities.").

In summary, the MRA means what it says: all right, title and interest in the Sold Loans passed to Fenway Capital on August 22, 2009. LCPI merely retained the contractual right to repurchase the Sold Loans (and this right was never exercised), and bare legal possession as custodial agent for Fenway Capital. This latter agency was extremely limited, allowing LCPI the right to substitute alternative securities and to receive income from the Sold Loans, prior to default. (Ex. B, OKeefe Decl., MRA ¶¶ 5, 9, and Annex thereto). LCPI forfeited both of these rights back in 2008, (MRA ¶ 11 and Annex thereto.) In any event, neither right conveyed upon LCPI authorization to file a claim with respect to the Sold Loans.[8]

Once title to the Sold Loans passed to Fenway Capital, that entity, and not LCPI, was the "creditor" under the bankruptcy code. *See In re R & L Engineering Co.*, 182 F.Supp. at 321 ("[W]here there has been an effective, complete assignment of a claim prior to bankruptcy, the assignor is considered as having only a technical title; he is not allowed to prove his claim; it is provable by the assignee."); *In re Duval*, 226 B.R. 116, 116-117 (Bankr. D.Id. 1998) (same); *In re Ellington*, 151 B.R. 90, 94-95 (W.D. Tex. 1990). Consistent with this, Bankruptcy Rule 3001(e)(1) provides that "[i]f a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed *only by the transferee* or an indenture trustee" (emphasis added).

The *Ellington* case is nearly identical to the instant facts. In *Ellington*, First Republic filed a claim prior to the bar date (the "Claim"). At the time this claim was filed, First Republic had already assigned its interest in the claim to NCNB Bank. NCNB subsequently filed an amended version of the Claim (the Amended Claim") after the bar date.

When the Trustee in *Ellington* objected to the Claim on the grounds that it was not supported by proper documentation, NCNB did not receive notice, since it was not listed as the claimholder, and the Claim was disallowed without objection. After learning of this ruling, NCNB filed a motion seeking to set aside the disallowance. In support of this motion, NCNB argued that

---

[8] The other Lehman Entities (Northlake Holdings and OVC Holdings) were not parties to the MRA. Accordingly, they lacked even the bare legal possessory right retained by LCPI under Annex III to the MRA.

the Amended Claim corrected the defects in the Claim. Although the bankruptcy court agreed that the Amended Claim was sufficient, it noted this claim was filed after the bar date. When NCNB argued that the Amended Claim should be deemed timely, because it amended the timely-filed Claim, the bankruptcy court rejected this contention. The court ruled that First Republic was not authorized to file the Claim in the first place, so there was nothing to amend:

> In addition to the *timely* filing of a proof of claim, it is also essential to the allowance of an amendment that the original proof of claim be *properly* filed by the party seeking amendment. . . . All First Republic assets had been sold to NCNB . . . on July 29, 1988, more than two weeks before Mr. Leslie filed the First Republic Proof of Claim. . . . The defunct First Republic was not a "creditor" of the Debtor on August 16, 1988, and therefore the First Republic Proof of Claim was not "properly filed" . . . . Absent a claim properly filed *by NCNB* (the owner of the claim), NCNB had no proof of claim to amend.

151 B.R. at 94-95.

Here, the Lehman Entities, like First Republic in Ellington, filed claims based upon claims they did not hold. The claims bar date has passed. Neither Fenway nor any other party can now "amend" those defective proofs of claim. They are void and should be stricken.

### 2. The Other Lehman Entities Have No Interest Whatsoever in the Sold Loans.

Lehman ALI, Northlake Holdings and OVC Holdings were not parties to the MRA and consequently have no rights thereunder. (Ex. "B," OKeefe Decl.). Unlike LCPI, they have no basis for even attempting to bootstrap "hold-in-custody-agent" status into collection agency rights, and LCPI (who similarly lacks the capacity to expand its rights into this role as indicated above) is barred from unilaterally assigning its possessory rights to these entities by Section 15 of the MRA. (Ex. "B," 18, OKeefe Decl.). Accordingly the proofs of claim filed by Lehman ALI, Northlake Holdings and OVC Holdings on the basis of the Sold Loans are void.

### C. The Lehman Entities' Proofs of Claim Were Not Filed By Authorized Agents of a Creditor.

### 1. The Proofs of Claims Were Not Filed on Behalf of the True Owner.

All of the Disputed Claims identify the Lehman Entities as the "creditor" under the terms of the Sold Loans (on the prescribed Official Form). (Ex. P – BB, OKeefe Decl.). In the

attachments to these claims, the Lehman Entities represent that they are the "holder of valid and perfected first priority security interests in and liens on substantially all of the tangible and intangible assets of the Debtor." (Ex. P – BB, OKeefe Decl.). Neither of these representations was true.

Although the attachments to the Disputed Claims also refer to the Lehman Entities as "agent for the lenders," the purported "lenders" that the Lehman Entities allegedly represent remain unnamed.[9] Notably, none of these claims make any reference whatsoever to the August 22, 2009 MRA transferring title to the Sold Loans to Fenway Capital, or to Fenway Capital, the only party that could claim the status of "creditor" under these instruments.

Thus, although the Bankruptcy Rules allow a proof of claim to be filed by an authorized agent of a creditor, the proofs of claim filed by the Lehman Entities on the basis of the Sold Loans purport to be filings by the creditors themselves, *not* by authorized agents. On that basis alone, the proofs of claim should be stricken as defective and the claims disallowed. *Cf. In re Parrish*, 326 B.R. at 720-21 ("A claimant who is a servicer must, in addition to establishing the rights of the holder, identify itself as an authorized agent for the holder. Here, Beneficial might be the current holder of the debtor's note and/or mortgage or it might be the servicer for whoever the holder is, but it failed to prove either relationship. The debtor's objection is sustained.").

> **2.** **The Repo Agreement Did Not Authorize Lehman to File the Proofs of Claim.**

The cases interpreting Rule 3001(b), which permits a proof of claim to be executed by a creditor's "authorized agent," have held that a claim can only be filed by an agent who has been *expressly authorized* to do so. *See, e.g., In re North Bay General Hosp., Inc.*, --- B.R. ----, 2009 WL 689720, 9-11 (Bankr. S.D. Tex. 2009); *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 852 (Bankr. S.D.N.Y. 1989) ("Only when an agent has express authorization may he file a claim on

---

[9] *In re North Bay General Hosp. Inc.*, --- B.R. ----, 2009 WL 689720, *7 (Bankr. S.D. Tex. 2009) ("Bankruptcy Rule 2019(a) also requires that the entity provide "a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors."); *In re CF Holding,* 145 B.R. 124, 126 (Bankr.D.Conn.1992) ("The respondents shall file a copy of any instrument empowering the respondents to act on behalf of the listed entities."); *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 851-52 (Bankr.S.D.N.Y.1989) ("Bankruptcy Rule 2019 requires that an entity must file an instrument which empowers the entity to act on behalf of the creditors ... absent such consent an agent may not legitimately represent the interests of the individuals.").

behalf of another."); *In re Manville Forest Prods. Corp.*, 89 B.R. 358, 376 (Bankr. S.D.N.Y. 1988) ("[E]ach individual claimant or transferee of an unfiled claim must file a proof of claim, or expressly authorize an agent to do so on its behalf."); *In re Electronic Theatre Restaurants Corp.*, 57 B.R. 147, 148-49 (Bankr.N.D.Ohio 1986) (same).

In the *North Bay* case, the court emphasized the importance of the word "authorized" in Rule 3001(b):

> It is noteworthy that the Supreme Court chose to employ the term *"authorized* agent" in Bankruptcy Rule 3001(b). Use of the qualification "authorized" reflects the Supreme Court's intention that an entity that files a proof of claim on another's behalf have express—and not merely implied—permission to do so. As the Tenth Circuit has recognized, "An agent may file a proof of claim only for those individuals who have *expressly authorized* the agent to do so."

--- B.R. ----, 2009 WL 689720, *10 (Bankr. S.D. Tex. 2009).

Here, no authorization existed under the MRA for LCPI to file proofs of claim. As discussed above, other than limited rights which are not applicable, and which were forfeited in any event when LCPI defaulted, LCPI's authority is limited to retaining possession of the Sold Loans in a segregated account.

### 3. Fenway Did Not Authorize the Filing of Proofs of Claim.

In an attempt to salvage the invalid Disputed Claims, the Lehman Entities have cited a May 12, 2009 e-mail from Irena Goldstein, counsel for Fenway Capital, a copy of which is attached to the OKeefe Declaration as Exhibit "FF " (the "Fenway Email"). This email not only fails to remedy the fatal defects in the claims, it confirms the existence of the defects cited herein.

#### a. The Fenway Email Acknowledges That Fenway Capital Is The Holder of the Sold Loans.

In the Fenway Email, Ms. Goldstein states: "Under the master repurchase agreement, LCPI *sold its interests* in certain loans and securities to Fenway." (Emphasis added). This admission confirms that all right title and interest in the Sold Loans passed to Fenway Capital, since this is exactly what is provided for in the MRA referenced in the email. Ms. Goldstein further states: "In this regard, as I stated to you, Fenway has been working hard (*and is still negotiating*) to extricate itself from the middle of the transaction since September of 2008." (Emphasis added). This admission confirms that the all right, title and interest in the Sold Loans *remains with Fenway*.

-14-

**b.    The Fenway Email Confirms That The Lehman Entities Were Not Authorized To File Claims With Respect To the Sold Loans.**

In the Fenway Email, Ms. Goldstein acknowledges that the operative document controlling the rights of the parties in the Sold Loans is the MRA. Ms. Goldstein then states: "Make no mistake about it, without waiving any rights that Fenway may have against LBHI, LCPI any Lehman Entity, JPM or the SunCal debtors, Fenway *does not object* to LBHI's and LCPI's enforcement of the rights of the "lenders" under the sold loans." As explained herein and as the established in the MRA, LCPI (the only Lehman Entity with any connection whatsoever to the Sold Loans) has possession of the Sold Loans merely as "hold-custody-agent. This limited custodial agency does not authorize LCPI to prepare and file claims these loans, never mind to aggressively pursue offensive action against the Debtors on the basis of the same. By stating "Fenway does not object" to LCPI's actions, Fenway is confirming that the restrictions in the MRA on LCPI's agency were not amended to allow Lehman Commercial to file the claims, since otherwise Fenway would have no basis to "object" to this course of conduct.

Moreover, stating that unauthorized behavior is not "objectionable" does not rise to the level of an explicit authorization, which is what is required by Federal Rule of Bankruptcy Procedure 3007. Indeed, in *North Bay*, the court held that authorization for UCA to "'pursu[e] and enforc[e] the rights of the Class 6 Creditors under the Plan under the Bankruptcy Code and other applicable laws.' . . . was far too general to constitute 'express authorization' that the UCA file proofs of claim on behalf of" certain of those creditors. *In re North Bay General Hospital*, 2009 WL 689720 at *11.

The Lehman Entities also ignore the fact that the cases require that an agent to be authorized to file a proof of claim *at the time it is filed. Manville Forest Prods. Corp.*, 89 B.R. at 376 ("Rule 3001(b) allows a creditor to instruct an agent to file a claim on its behalf, but it does not allow an agent to file a proof of claim and subsequently inform the creditor of that fact."). Ms. Goldstein's May 12, 2009 e-mail, which post-dates the March 27, 2009 claim filings by a month and a half, is insufficient to make any of the Lehman Entities an "authorized agent" at the time the proofs were filed.

Finally, even if Ms. Goldstein's e-mail could be interpreted as a retroactive express authorization to file the proofs of claim, (and even if such authorization could be effective as to a bankruptcy debtor like LCPI, see section III.C.4, below), the proofs of claims themselves do not disclose this agency, and so are still defective on their face, *In re Parrish*, 326 B.R. at 720-21; F.R.C.P. 2019, and the bar date has already passed, making such an attempt futile..

### 4. As a Bankrupt Debtor, LCPI Cannot File Claims on Behalf of Another.

#### a. The Sold Loans Are Not Part of LCPI's Estate.

Section 541(a) of the Bankruptcy Code defines "property" of a debtor's estate to include "all legal or equitable interests of the debtor." 11 U.S.C. §541(a)(2). Excluded from this definition is "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(2).

Here, LCPI holds neither legal nor equitable title to the Sold Loans. It holds, at best, a mere possessory interest in a custodial capacity. Pursuant to the MRA, LCPI is required to hold the Sold Loans in a segregated account and to do nothing else. (Ex. "B,", 40-41, Para. 1(e), OKeefe Decl.). LCPI is, in effect, a bailee of the Sold Loans. As such, the Sold Loans are not property of LCPI's estate. *See In re Ray Slattery, Inc.*, 54 B.R. 642, 644 (Bankr. D.N.J. 1985) ("Having found the existence of a proper bailment . . . this Court finds that the electrical equipment at issue is property of the City of Paterson, and not a part of the debtor's estate.").[10]

#### b. LCPI Cannot Collect Property That Is Not Part of its Estate.

Standing is a threshold issue that must be established in every federal case. *American Postal Workers Union v. Frank*, 968 F.2d 1373 (1st Cir.1992); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). The existence of *an indirect financial stake* in another party's claims will not satisfy the standing requirement. *Morrison-Knudsen Co., Inc. v. CHG International, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987); *SEC v. Securities Northwest, Inc.*, 573 F.2d 622, 626 (9th Cir.1978). A mere

---

[10] Indeed, even if LCPI could establish that it had legal title to the Sold Loans—which it does not—they still would not be considered part of LCPI's estate. *See Begier v. I.R.S* 496 U.S. 53, 110 S.Ct. 2258 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom ComputerCorp)*, 13 F.3d 321, 324 (9th Cir. 1994); *Elliott v. Bumb*, 356 F.2d 749, 753 (9th Cir. 1966); *In re B.I. Financial Services Group, Inc.*, 854 F.2d 351, 355 (9th Cir. 1988). In fact, the Ninth Circuit has stated that under these circumstances possession of the asset should be transferred by the debtor to the holder of the equitable interest. *See Elliott*, 356 F.2d at 753 (9th Cir.); *see also* 4 L. King, Collier on Bankruptcy ¶ 541.13 (15th ed. 1988).

custodian, such as LCPI, without a "legitimate claim to the disputed property," does not have standing to file claims and to engage in the kind of hyper-aggressive conduct displayed in this case. *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991).

Moreover, a bankrupt debtor cannot acquire standing to assert claims on behalf of investors or creditors post-petition. *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 434 (1972) (bankruptcy trustees lack standing to assert actions against parties on behalf of creditors); *Williams v. California I$^{st}$ Bank*, 859 F.2d 664, 666-67 (9th *Cir.*1988)[11]; *In re Lucas Dallas*, 185 B.R. 801, 804-05 (9th Cir. BAP 1995) (same); *see also In re D.H. Overmyer Telecasting Co.*, 56 B.R. 657, 659 n.1 (Bankr.N.D.Ohio 1986) (debtor-in-possession has no greater power to sue on behalf of others than a trustee does). Thus, as a bankrupt debtor, LCPI lacks standing to pursue the claims held by Fenway Capital based on the Sold Loans, and Fenway Capital cannot remedy this deficiency.[12]

## IV.

## THE LEHMAN ENTITIES VIOLATED FED.R.BANKR.P. 2019(a)

In the Disputed Claims, the Lehman Entities first state that they are "creditors" of the Debtors (in the Official Claim Form) and thereafter contend, in the attachment to these claims, that they are agents for an undisclosed group of "lenders." (Ex. P – BB, OKeefe Decl.) As more fully established herein, the Lehman Entities are not "creditors" of the Debtors with respect to the Sold Loans, since all right, title and interest in the Sold Loans is held by Fenway Capital. The Lehman Entities are also not agents "authorized" to file claims with respect to these loans under the MRA. However, the Lehman Entities' contention that they represent certain unnamed "lenders" as agents gives rise to a material issue – a violation of Federal Rule of Bankruptcy Procedure 2019. Federal Rule of Bankruptcy Procedure 2019(a) provides:

---

[11] In *Williams*, the court found that the trustee had no standing "to collect money not owed to the estate." *Williams*, 859 F.2d at 667. This, of course, is precisely what LCPI is attempting to do here. Notably, the *Williams* court held that the fact that the creditors may have willingly assigned their claims to the trustee did nothing to solve the standing problem. *Id.* at 666-67. Thus, even if LCPI could somehow convincingly argue that Fenway authorized LCPI to file the proofs of claim on its behalf, LCPI would still lack standing to do so.

[12] This is not to concede that Fenway is a "creditor" of LCPI under a loan, rather than a counterparty to a sales transaction. It is only to point out that LCPI does not have standing to pursue claims *even* on behalf of creditors, let alone on behalf of Fenway.

In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every entity or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee, the amounts of claims or interests owned by the entity, the members of the committee or the indenture trustee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. The statement shall include a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders. A supplemental statement shall be filed promptly, setting forth any material changes in the facts contained in the statement filed pursuant to this subdivision.

Fed.R.Bankr.P. 2019(a).

Subsection (b) of this rule describes the consequences that result from a failure to comply with this rule:

On motion of any party in interest or on its own initiative, the court may (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule or with any other applicable law regulating the activities and personnel of any entity, committee, or indenture trustee or any other impropriety in connection with any solicitation **and, if it so determines, the court may refuse to permit that entity, committee, or indenture trustee to be heard further or to intervene in the case; (2) examine any representation provision of a deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, and any claim or interest acquired by any entity or committee in contemplation or in the course of a case under the Code and grant appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity or committee who has not complied with this rule or with § 1125(b) of the Code.**

Fed.R.Bankr.P. 2019(b) (emphasis added); *see also*, *North Bay*,. --- B.R. ----, 2009 WL 689720, *10 (Bankr. S.D. Tex. 2009) ("Thus, an entity's "failure to comply with Bankruptcy Rule 2019 alone can result in this Court refusing to permit an entity to be heard or further intervene in this

case and hold invalid any authority given, procured or received by [the] entity." *In re Ionosphere Clubs, Inc.*, 101 B.R. at 852. Based on the gross untimeliness of the 2019 Disclosures and the circumstances that prompted its filing, this Court finds that the UCA has failed to comply with Bankruptcy Rule 2019 and that he should not be permitted to be heard further or to intervene in this case."); *In re Elec. Theatre Rests. Corp.*, 57 B.R. 147, 148-49 (Bankr.N.D.Ohio 1986); *see also In re Baldwin-United Corp.*, 52 B.R. 146, 148 (Bankr.S.D.Ohio 1985) (same); *In re Southland Corp.*, 124 B.R. 211, 226 (Bankr.N.D.Tex.1991) ("Bankruptcy Rule 2019) requires the filing by every entity representing more than one creditor or equity security holder of a verified statement with the Court setting forth specific facts concerning the representation, and the names of the parties represented.")

In this case, the Lehman Entities have purported to act both as a creditor and as an agent, albeit an unauthorized agent, for both Fenway, and until March 26, 2009, for Danske Bank. Since the Lehman Entities failed to file the verified statement disclosing the information as required by Rule 2019, it is entirely possible that the Lehman Entities are secretly purporting to represent the rights of other creditors as well. This course of conduct is in direct violation of Rule 2019(a) and is it sufficiently egregious to justify an order invalidating the Disputed claims pursuant to Rule 2019(b) independent of the grounds set forth above.

# V.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court sustain their objections to and strike the specified proofs of claim filed by the Lehman Entities.

DATED: May 29, 2009

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

/s/ Paul J. Couchot

By: _____
Paul J. Couchot
Sean A. OKeefe
General Insolvency Counsel for Voluntary
Debtors

DATED: May 29, 2009

**MILLER BARONDESS, LLP**

/s/ Louis R. Miller

By: _____
Louis R. Miller
Martin Pritikin
Brian Procel
Special Litigation Counsel for the
Administratively Consolidated Debtors-in-
Possession and to Chapter 11 Trustee

MAINDOCS-#130612-v1-PalmdaleObjClaims.DOC

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive., 4ᵗʰ Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as DEBTORS' OBJECTIONS TO AND MOTION FOR ORDER STRIKING CLAIMS FILED BY THE LEHMAN ENTITIES will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 29, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On May 29, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 29, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 29, 2009 | Viann Corbin | |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#130612-v1-PalmdaleObjClaims.DOC

# NEF SERVICE LIST

- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christensen    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com
- Mike D Neue    mneue@irell.com
- Robert Nida    Rnida@castlelawoffice.com

1
- Penelope Parmes    pparmes@rutan.com
2
- Ronald B Pierce    ronald.pierce@sdma.com
- Raymond A Policar    hausermouzes@sbcglobal.net
3
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
4
- Martha E Romero    Romero@mromerolawfirm.com
- William D Schuster    bills@allieschuster.org
5
- Michael St James    ecf@stjames-law.com
6
- Todd L Turoci    tturoci@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
7
- Jason Wallach    jwallach@bergerkahn.com
- Christopher T Williams    ctwilliams@venable.com
8
- David M Wiseblood    dwiseblood@seyfarth.com
9
- Arnold H Wuhrman    Wuhrman@serenitylls.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
10

## SERVICE BY FIRST CLASS MAIL

11

12
Northlake Holdings LLC
13
OVC Holdings LLC
Lehman Ali, Inc.
14
Lehman Commercial Paper Inc.
Attn: Gerald Pietroforte
15
1271 Sixth Avenue, 46th Floor
New York, NY 10020
16

17
JP Morgan Chase Bank NA
c/o Wachtell Lipton Rosen & Katz
Amy Wolfe, Esq.
18
51 West 52nd St.
New York, NY 10019
19

3/18/09 RSN CenturyCity
Danske Bank A/S, London Branch
c/o Venable LLP
Carollynn H.G. Callari, Esq.
1270 Ave of the Americas, 25th Fl.
New York, New York 10020

3/18/09 RSN CenturyCity
Danske Bank A/S, London Branch
c/o Venable LLP
Timothy J. Gorry, Esq,
2040 Century Park East, #2100
Los Angeles, CA 90067

20
Deutsche Bank Trust Co. Americas
Attn: Jin Hwang
21
60 Wall Street, 27th Fl.
New York, NY 10005

JP Morgan Securities Inc.
John E. Costango, Executive Director
270 Park Avenue, 6th Fl.
New York, NY 10017

Fenway Capital LLC
c/o Dewey & LeBoeuf LLP
Irena M. Goldstein, Esq.
1301 Ave. of the Americas
New York, NY 10019

22

23
Fenway Capital LLC
Attn: Victor Rampertab
24
810 Seventh Ave.
New York, NY 10019

25

26

27

28

Service by e-mail:

Counsel for Creditor:

Lehman Ali, Inc.
c/o Weil, Gotshal & Manges LLP
Gregory D. Hull, Esq.
Greg.hull@weil.com
elisa.lemmer@weil.com
Michael.Kessler@weil.com
Edward.soto@weil.com
Nellie.camerik@weil.com
Shai.waisman@weil.com

Danske Bank A/S, London Branch
c/o Venable LLP
ccallari@Venable.com
Timothy J. Gorry - tgorry@Venable.com

sspeier@squarmilner.com
Steven N. Speier, Ch 11 Trustee
c/o Squar Milner

Palmdale Hills Property, LLC and related
entities
[private e-mail]