1  PAUL J. COUCHOT - State Bar No. 131934
   PETER W. LIANIDES - State Bar No. 160517
2  PAYAM KHODADADI - State Bar No. 239906
   **WINTHROP COUCHOT**
3  **PROFESSIONAL CORPORATION**
   660 Newport Center Drive, Fourth Floor
4  Newport Beach, CA 92660
   pcouchot@winthropcouchot.com
5  plianides@winthropcouchot.com
   pkhodadadi@winthropcouchot.com
6  Telephone: (949) 720-4165
   Facsimile: (949) 720-4111
7  General Insolvency Counsel for
   Administratively Consolidated
8  Debtors-in-Possession and
   Counsel for SCC Acquisitions, Inc.
9

10              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11                     **SANTA ANA DIVISION**

12  In re                                    | Case No. 8:08-bk-17206-ES
13  PALMDALE HILLS PROPERTY, AND ITS          | Jointly Administered With Case Nos.
    RELATED DEBTORS,                          | 8:08-bk-17209-ES; 8:08-bk-17240-ES;
14           Jointly Administered Debtors     | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
             and Debtors-in-Possession        | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
15                                            | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                              | 8:08-bk-17230-ES; 8:08-bk-17231-ES;
16  Affects:                                  | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
    ☒ All Debtors                             | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
17  ☐ Palmdale Hills Property,                | 8:08-bk-17574 ES; 8:08-bk-17575-ES;
18  ☐ SunCal Beaumont Heights, LLC            | 8:08-bk-17404-ES; 8:08-bk-17407-ES;
                                              | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
    ☐ SCC/Palmdale,                           | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
19  ☐ SunCal Johannson Ranch, LLC             | 8:08-bk-17470-ES; 8:08-bk-17472-ES;
20  ☐ SunCal Summit Valley, LLC               | and 8:08-bk-17588-ES
21  ☐ SunCal Emerald Meadows LLC              | Chapter 11 Proceedings
    ☐ SunCal Bickford Ranch, LLC              |
22  ☐ Acton Estates, LLC                      | **DEBTORS' SECOND AMENDED JOINT**
    ☐ Seven Brothers LLC                      | **DISCLOSURE STATEMENT**
23  ☐ SJD Partners, Ltd.                      | **DESCRIBING DEBTORS' SECOND**
                                              | **AMENDED JOINT CHAPTER 11 PLAN**
24  ☐ SJD Development Corp.
    ☐ Kirby Estates, LLC                      | Date:    July 16, 2009
25  ☐ SunCal Communities I, LLC               | Time:    2:00 p.m.
26  ☐ SunCal Communities III, LLC             | Place:   Courtroom 5A
27  ☐ SCC Communities LLC
    ☐ North Orange Del Rio Land, LLC
28          *Caption Continued on Next Page*

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Continued from Previous Page*

☐ Tesoro SF LLC

☐ LBL-SunCal Oak Valley, LLC

☐ SunCal Heartland, LLC

☐ LBL-SunCal Northlake, LLC

☐ SunCal Marblehead, LLC

☐ SunCal Century City, LLC

☐ SunCal PSV, LLC

☐ Delta Coves Venture, LLC

☐ SunCal Torrance, LLC

☐ SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

|  |  | **PAGE** |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 4 |
|  | 2.1 Definitions | 4 |
|  | 2.2 Rules of Construction | 26 |
|  | 2.3 Exhibits | 27 |
| III. | PLAN CONFIRMATION DEADLINES | 27 |
|  | 3.1 Time and Place of the Confirmation Hearing | 28 |
|  | 3.2 Deadline for Voting for or Against the Plan | 28 |
|  | 3.3 Deadline for Objecting to the Confirmation of the Plan | 28 |
|  | 3.4 Identity of Person to Contact for More Information Regarding the Plan | 28 |
|  | 3.5 Disclaimer | 29 |
| IV. | BACKGROUND OF THE DEBTORS | 30 |
|  | 4.1 The SunCal Companies and the Debtors | 30 |
|  | 4.2 The SunCal/Lehman Joint Venture to Develop the Projects | 30 |
|  | (a) The Debtors' Primary Assets | 31 |
|  | (b) A Summary of the Voluntary Debtors' Corporate Governance Structures and Their Primary Secured Creditors | 36 |
|  | (c) A Summary of the Trustee Debtors' Corporate Governance Structure and Their Primary Secured Creditors | 36 |
|  | (d) The Lehman Entities' Appraisals of the Projects and SunCal's Valuation Opinions | 37 |
|  | 4.3 A Summary of Lehman Disputed Secured Claims and Disputed Liens | 39 |
|  | 4.4 The Debtors' Disputes of Lehman's Disputed Secured Claims and Disputed Liens Pursuant to Bankruptcy Code Section 506 | 41 |
|  | (a) Lehman ALI's Proof of Secured Claim No. 17 Arising Under the Bickford Second Loan Agreement Has No Collateral Value. Therefore, the Disputed Secured Claim Should Be Disallowed and the Disputed Lien Avoided and Preserved for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 506(A), 506(D) and 551 | 42 |
|  | (b) Lehman Commercial's Proof of Secured Claim No. 1 Arising Under the SCC Palmdale Loan Has No Collateral Value. Therefore, the Disputed Secured Claim Should Be Disallowed and the Disputed Lien Avoided and Preserved for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 506(a), 506(d) and 551 | 43 |

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

### (Continued)

|  |  | PAGE |
|---|---|---|
| (c) | Lehman Commercial's Proof of Secured Claim No. 1 Arising Under the SCC Palmdale Loan Has No Collateral Value. Therefore, the Disputed Secured Claim Should Be Disallowed and the Disputed Lien Avoided and Preserved for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 506(a), 506(d) and 551 | 43 |
| | (1)  SunCal I's Allowed Interest in SunCal Bickford | 44 |
| | (2)  SunCal I's Allowed Interest in Acton Estates | 44 |
| | (3)  SunCal I's Allowed Interest in SunCal Emerald | 44 |
| | (4)  SunCal I's Allowed Interest in SunCal Summit Valley | 44 |
| (d) | Lehman Commercial's Proof of Secured Claim No. 2 Arising Under the Pledge of SunCal III's Interests Has No Collateral Value. Therefore, the Disputed Secured Claim Should Be Disallowed and the Disputed Lien Avoided and Preserved for the Benefit of the Estate Pursuant to Bankruptcy Code Sections 506(a), 506(d) and 551 | 45 |
| 4.5 | The Fraudulent Conveyance Actions Arising Under the Various Cross-Collateralized Lehman Loans Should Result in Disallowance of such Disputed Secured Claims and Avoidance of such Liens that Should Be Preserved for the Estates Pursuant to Bankruptcy Code Sections 544, 548, 502(d) and 551 | 45 |
| (a) | The Fraudulent Conveyance Claims Arising from the SunCal Communities I Loan Agreement Provides Grounds for Disallowance of the Related Filed Secured Claims and Avoidance of Such Liens Pursuant to Bankruptcy Code Sections 544, 548, 502(d) and 551 | 46 |
| (b) | SCC Palmdale's a Approximately $120 Million Fraudulent Conveyance Against Lehman Commercial Arising from the SCC Palmdale Loan Provides Grounds for Disallowance of Secured Claim No. 1 and Avoidance of and Preservation of Such Lien for the Benefit of the Estate | 48 |
| (c) | The Fraudulent Conveyance Claims Against Lehman ALI Arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement | 48 |
| (d) | The Fraudulent Conveyance Claims Against Lehman ALI Arising from the SunCal SunCal Marblehead/SunCal Heartland Loan Agreement | 49 |
| (e) | Del Rio's, Joshua Ridge's and Tesoro's Fraudulent Conveyance Claims Arising Under the Interim Loan Agreement | 49 |

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

## TABLE OF CONTENTS

### (Continued)

PAGE

4.6    Preferential Transfers ................................................................ 50
    (a)    Preferential Transfers to the Lehman Entities' Within the
        Year of the Debtors Chapter 11 Filings Are Recoverable
        and the Claims Should be Disallowed ................................ 50
        (1)    Preferential Transfer Made by Delta Coves to
            Lehman ALI ........................................................ 50
        (2)    Preferential Transfer Made by SunCal Century
            City to Lehman ALI ............................................ 51
        (3)    SunCal Marblehead/Heartland's Shared Preference
            Action Against Lehman ALI ................................ 51
    (b)    SJD Partners Has a Preference Action Pursuant to
        Bankruptcy Code Section 547 Against LV Pacific Point
        to Recover the Pacific Point Project Lost Through LV Pac
        Point's Non-Judicial Foreclosure Within 90 Days of
        SJD Partners' Chapter 11 Filing ........................................ 52
4.7    A Summary of the Debtors' Potential Fraud, Breach of Fiduciary
    Duty, and other Potential Litigation Claims Against the
    Lehman Entities ......................................................................... 52
    (a)    The Interim Loan Agreement ............................................. 53
    (b)    The Restructuring Agreement ............................................. 53
    (c)    The Pacific Point Foreclosure ............................................ 54
    (d)    A Summary of the Alleged Claims Against the Debtor .................... 55
4.8    The Lehman Entities' Lack of Standing on the Sold Loans that
    Gives Rise to the Debtors' Motion to Strike the Proofs of Claims
    and Various Pleadings Relating Thereto .............................................. 57
    (a)    Background of the Sold Loans ............................................. 57
    (b)    The Debtors' Grounds to Move the Court to Strike the
        Lehman Entities Proof of Claims Based on the Sold Loans
        and Declare Lehman Commercial's Automatic Stay
        Inapplicable to the Sold Loans ........................................... 60
4.9    A Summary of the Factual and Legal Bases for the Debtors'
    Equitable Subordination Action ....................................................... 61
    (a)    A Summary of the Debtors' Factual Basis for
        Equitable Subordination ...................................................... 61
    (b)    A Summary of the Debtors' Legal Basis for
        Equitable Subordination ...................................................... 64
        (1)    The Lehman Entities Engaged in Inequitable Conduct .......... 65
            i.    As Insiders .................................................. 65
            ii.    As Non-Insiders ......................................... 67
        (2)    The Lehman Entities' Inequitable Conduct
            Obviously Harmed the Creditors ......................... 68

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

# TABLE OF CONTENTS

## (Continued)

|  |  |  |  |
|---|---|---|---|
|  |  | (3) | Equitable Subordination Is Consistent with |
|  |  |  | Bankruptcy Code Principles................................................. 69 |
|  | 4.10 | A Summary of the Debtors' Factual and Legal Basis for the Plan's Partial Substantive Consolidation .................................................... 69 |  |
| V. | | SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES ................. 72 | |
|  | 5.1 | Voluntary Debtors........................................................................ 72 | |
|  | 5.2 | Trustee Debtors ........................................................................... 73 | |
|  | 5.3 | The Debtors' Motion for Relief from Stay in the Lehman Commercial Chapter 11 Proceedings.......................................... 73 | |
|  | 5.4 | Certain of the Voluntary Debtors' Motion for Surcharge and Use of Cash Collateral .............................................................. 74 | |
|  | 5.5 | Lehman Commercial's Motions for Relief from the Automatic Stay Against Certain of the Voluntary Debtors' Projects ............................. 74 | |
|  | 5.6 | The Debtors' Filing of the Equitable Subordination Action Against the Lehman Entities ....................................................... 74 | |
|  | 5.7 | Certain Debtors' Filing of the Sales Procedures Motion ............................. 76 | |
|  |  | (a) | The Lehman Commercial's Stay Assertion into the Sales Procedure Motion ........................................... 76 |
|  |  | (b) | Danske Bank's Intervention into the Sales Procedures Motion.................................................................. 76 |
|  |  | (c) | Lehman's Disclosure of the Repurchase Agreement Involving of Substantially All of Their Loans with the Debtors...................................................................... 77 |
|  |  | (d) | The Modifications to the Sales Procedure Motion ........................... 77 |
|  |  | (e) | The Sales Analysis Chart ............................................ 77 |
|  |  | (f) | The Court's Ruling on the Sales Procedure Motion ......................... 79 |
|  | 5.8 | The Lehman Administrative Loans................................................... 79 | |
|  |  | (a) | The Stipulation....................................................... 79 |
|  |  | (b) | The Rubidoux Objection............................................. 80 |
|  |  | (c) | The Debtors Potential Setoff and Recoupment Claims Against the Lehman Administrative Loan .......................... 81 |
|  | 5.9 | The Contractors' Successful Motions for Relief from Stay to Pursue the Bond Claims................................................................. 81 | |
|  | 5.10 | The Debtors Motion Under Bankruptcy Code Section 506(d) ..................... 81 | |
|  | 5.11 | The Debtors Motion to Strike the Claims and Pleadings Arising from the Sold Loans...................................................................... 82 | |
|  | 5.12 | The Debtors Motion Under Section 502(d) ....................................... 82 | |
|  | 5.13 | The Debtor's Denied Preliminary Injunction Motion Against the Holders of Bond Claims.......................................................... 82 | |

# TABLE OF CONTENTS

### (Continued)

**PAGE**

5.14    The Non-Lehman Related Primary Secured Lenders'
    Motions for Relief from Stay ............................................ 83
5.15    The Rubidoux 60 Litigation ............................................ 83
    (1)    Procedural Background ...................................... 83
    (2)    Rubidoux's Allegations ..................................... 84
5.16    Church Litigation ............................................................. 85
5.17    Mechanic Lien Claims ..................................................... 85
5.18    The Debtors' Potential Preferential Transfers ................. 86

VI.    TREATMENT OF UNCLASSIFIED CLAIMS ................................. 88
6.1    Treatment of Allowed Administrative Claims.................... 88
    (a)    Repayment of Allowed Administrative Claims Other
    than Payment of the Lehman Administrative Loans and
    the Repayment of the Plan Sponsor's Administrative Loan .............. 88
    (b)    Treatment and Repayment of the Lehman Administrative
    Loan(s) ................................................................ 89
    (c)    Repayment of the Plan Sponsor's Administrative Loan ................... 89
    (d)    Administrative Claims Bar Date ........................ 89
    (i)    General Administrative Claims Bar Date .............................. 89
    (ii)    Administrative Tax Claims Bar Date................................ 90
6.2    Treatment of Priority Unsecured Tax Claims ................... 90

VII.    CLASSIFICATION OF CLAIMS AND INTERESTS............................ 91

VIII.    THE PLAN'S TREATMENT OF CLAIMS AND INTERESTS ............ 108
8.1    The Plan's Treatment of Holders of Allowed Secured
    Real Property Tax Claims on Real Properties Subject to
    Deeds of Trust Arising from Lehman Disputed Secured
    Claims and Disputed Liens (Classes 1.1 Through 1.14)................ 108
8.2    The Plan's Treatment of Holders of Allowed Secured
    Real Property Tax Claims Against Real Properties Not
    Subject to Deeds of Trust Arising from Lehman's Disputed
    Claims and Disputed Liens) (Classes 2.1 Through 2.5) ............. 109
8.3    The Plan's Treatment of Lehman's Disputed Secured
    Claim and Disputed Liens (Classes 3.1 Through 3.12) ............. 109
8.4    The Plan's Treatment of Holders of Secured Claims of
    Primary Secured Creditors Other than the Holders of
    Lehman's Disputed Secured Claim and Disputed Liens
    (Classes 4.1 Through 4.15) ........................................ 111
8.5    The Plan's Treatment of Holders of Asserted Mechanic
    Lien Claims Against the Debtors' Projects Subject to
    Lehman's Disputed Secured Claim and Disputed Liens
    (Classes 5.1 Through 5.53) ........................................ 111

-v-

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

# TABLE OF CONTENTS

## (Continued)

| | | | PAGE |
|---|---|---|---|
| 8.6 | The Plan's Treatment of Asserted Mechanic Lien Claim Against Projects Not Subject to Lehman Disputed Secured Claims and Disputed Liens (Class 6.1) | | 112 |
| 8.7 | The Plan's Treatment of Holders of Priority Claims (Classes 7.1 Through 7.4) | | 112 |
| 8.8 | The Plan's Treatment of Holders of Allowed General Unsecured Claims (Classes 8.1 Through 8.22) | | 112 |
| 8.9 | The Plan's Treatment of Holders of Allowed Interests | | 113 |
| IX. | ACCEPTANCE OR REJECTION OF THE PLAN | | 114 |
| 9.1 | Introduction | | 114 |
| 9.2 | Who May Object to Confirmation of the Plan | | 114 |
| 9.3 | Who May Vote to Accept/Reject the Plan | | 114 |
| 9.4 | What Is an Allowed Claim/Interest | | 114 |
| 9.5 | What Is an Impaired Class | | 114 |
| 9.6 | Who Is Not Entitled to Vote | | 115 |
| 9.7 | Who Can Vote in More than One Class | | 115 |
| 9.8 | Votes Necessary for a Class to Accept the Plan | | 115 |
| 9.9 | Treatment of Nonaccepting Classes | | 116 |
| 9.10 | Request for Confirmation Despite Nonacceptance by Impaired Class(as) | | 116 |
| X. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | | 116 |
| 10.1 | Introduction | | 116 |
| 10.2 | The Plan Sponsor | | 116 |
| 10.3 | The Plan Sponsor's Obligations and the Plan Sponsor's Administrative Loan | | 116 |
| 10.4 | The Partial and Conditional Substantive Consolidation Provision | | 118 |
| 10.5 | Management of the Reorganized Debtor(s) After Effective Date | | 118 |
| 10.6 | Corporate Actions | | 118 |
| 10.7 | Transfers to Reorganized Debtor(s) of Assets and Removal of the Trustee | | 119 |
| 10.8 | The Committee(s) | | 119 |
| | (a) | Duties and Powers | 119 |
| | (b) | Dissolution of Committee(s) | 119 |
| 10.9 | Litigation Claims | | 120 |
| 10.10 | Collection of Litigation Recoveries | | 120 |
| 10.11 | Payment of Post-Confirmation Expenses | | 120 |
| XI. | DISTRIBUTIONS | | 121 |
| 11.1 | Distribution Agent | | 121 |

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

# TABLE OF CONTENTS

## (Continued)

|  |  | **PAGE** |
|---|---|---|
| 11.2 | Distributions | 121 |
| | (a) Dates of Distributions | 121 |
| | (b) Limitation on Liability | 121 |
| 11.3 | Old Instruments and Securities | 121 |
| | (a) Surrender and Cancellation of Instruments and Securities | 121 |
| | (b) Cancellation of Liens | 122 |
| 11.4 | De Minimis Distributions and Fractional Shares | 122 |
| 11.5 | Delivery of Distributions | 122 |
| 11.6 | Undeliverable Distributions | 122 |
| 11.7 | Disposition of Unclaimed Property | 123 |
| **XII.** | **OBJECTION TO CLAIMS AND DISPUTE CLAIMS** | 123 |
| 12.1 | Standing for Objections to Claims | 123 |
| 12.2 | Treatment of Disputed Claims and Disputed Liens | 124 |
| | (a) No Distribution Pending Allowance | 124 |
| | (b) Distribution After Allowance | 124 |
| | (c) Reserves for Disputed Claims and Disputed Liens | 124 |
| **XIII.** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | 124 |
| 13.1 | Executory Contracts Being Assumed | 124 |
| 13.2 | Executory Contracts Being Rejected | 125 |
| 13.3 | Retention of Property Rights by Reorganized Debtor(s) | 126 |
| 13.4 | Bar Date for Rejection Damages | 126 |
| 13.5 | Cure Statements | 126 |
| 13.6 | Changes in Rates Subject to Regulatory Commission Approval | 127 |
| **XIV.** | **BEST INTEREST OF CREDITORS TEST** | 120 |
| 14.1 | Best Interest of Creditors Test Assuming the Debtors Prevail on the Equitable Subordination | 127 |
| 14.2 | Best Interest Test Assuming No Equitable Subordination of the Lehman Disputed Secured Claims and Disputed Liens | 130 |
| **XV.** | **PLAN FEASIBILITY** | 132 |
| **XVI.** | **EFFECT OF CONFIRMATION OF THE PLAN** | 133 |
| **XVII.** | **LIMITATION OF LIABILITY** | 134 |
| 17.1 | No Liability for Solicitation or Participation | 134 |
| 17.2 | Limitation of Liability | 134 |

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

# TABLE OF CONTENTS

## (Continued)

|  |  | PAGE |
|---|---|---|
| XVIII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 135 |
| | 18.1 Conditions Precedent to Plan Confirmation | 135 |
| | 18.2 Conditions Precedent to Plan Effectiveness | 136 |
| XIX. | RETENTION OF JURISDICTION | 135 |
| XX. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 135 |
| | 20.1 Modification of Plan | 135 |
| | 20.2 Nonconsensual Confirmation | 136 |
| XXI. | MISCELLANEOUS | 136 |
| | 21.1 Payment of Statutory Fees | 136 |
| | 21.2 Payment Dates | 136 |
| | 21.3 Headings | 136 |
| | 21.4 Other Documents and Actions | 136 |
| | 21.5 Notices | 137 |
| | 21.6 Governing Law | 137 |
| | 21.7 Binding Effect | 137 |
| | 21.8 Successors and Assigns | 138 |
| | 21.9 Severability of Plan Provisions | 138 |
| | 21.10 No Waiver | 138 |
| | 21.11 Inconsistencies | 138 |
| | 21.12 Exemption from Certain Transfer Taxes and Recording Fees | 138 |
| | 21.13 Post-Confirmation Status Report | 139 |
| | 21.14 Post-Confirmation Conversion/Dismissal | 139 |
| | 21.15 Final Decree | 140 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

# I.

## **INTRODUCTION**

This Disclosure Statement[1] is filed by the Plan Proponents on behalf of the Debtors. The Debtors are all Affiliates of each other, Acquisitions, and SCC LLC. The Plan Proponents also assert that the Lehman Entities are each Insiders of all the Debtors.

The Voluntary Debtors are the Plan Proponents in each of their respective Chapter 11 Cases and Acquisitions is the Plan Proponent in the Trustee Debtors' Chapter 11 Cases. Acquisitions is also the Plan Sponsor for all of the Debtors.

The Voluntary Debtors filed their Chapter 11 Cases on their respective Petition Dates and were granted authority to jointly administer their Chapter 11 Cases pursuant to various Final Orders of the Bankruptcy Court entered in November of 2008. Each of the Voluntary Debtors has since acted in their capacity as Debtors and Debtors-in-Possession.

The Trustee Debtors were placed in involuntary Chapter 11 bankruptcy proceedings on their respective Petition Dates by involuntary Chapter 11 petitions filed by certain Creditors in November of 2008. Thereafter, the Orders for Relief were granted by the Bankruptcy Court for all of the Trustee Debtors on their respective Order for Relief Dates and the Trustee was appointed for all of the Trustee cases on January 15, 2009. The Trustee Debtors were granted authority to jointly administer their Estates with the Voluntary Debtors pursuant to a Final Order of the Bankruptcy Court entered on March 11, 2009.

Chapter 11 allows Debtors-In-Possession, Chapter 11 Trustees, and under some circumstances, Creditors, Interest Holders and others parties in interest, to propose a Chapter 11 Plan. As stated, the Voluntary Debtors and Acquisitions are the Plan Proponents of the Plan sent to you in the same envelope as this Disclosure Statement. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN. This Disclosure Statement summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

---

[1] All capitalized terms are defined terms set forth in Article II of this Disclosure Statement.

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1       The Plan provides for the sale and liquidation of the Debtors' Assets, the prosecution and

2   liquidation of the Debtors' Litigation Claims, and the distribution of the Net Sale Proceeds, Net

3   Litigation Recoveries and Available Cash to the Debtors' Holders of Allowed Claims in

4   accordance with the priorities and other rights set forth in the Bankruptcy Code.

5       **<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO</u>**

6   **<u>KNOW ABOUT</u>:**

7        ➢  **WHO CAN VOTE OR OBJECT TO THE PLAN;**

8        ➢  **HOW YOUR CLAIM IS TREATED;**

9        ➢  **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**

10           **RECEIVE IN LIQUIDATION;**

11        ➢  **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS**

12           **DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

13        ➢  **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**

14           **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

15        ➢  **WHAT IS THE EFFECT OF CONFIRMATION; AND**

16        ➢  **WHETHER THE PLAN IS FEASIBLE.**

17       This Disclosure Statement cannot tell you everything about your rights.  You should

18   consider consulting your own lawyer to obtain more specific advice on how the Plan will affect

19   you and your best course of action.

20       Be sure to read the Plan as well as this Disclosure Statement.  If there are any

21   inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

22       The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

23   concerning the Plan.  On _____, 2009, the Bankruptcy Court entered an order approving this

24   Disclosure Statement, based upon a finding that this document contained "adequate information"

25   to enable parties affected by the Plan to make an informed judgment regarding the Plan.  Any party

26   can now solicit votes for or against the Plan.

27

28

## II.

## DEFINITIONS AND RULES OF INTERPRETATION

### 2.1    Definitions.

The following defined terms are used in this Disclosure Statement.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall the have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    10,000 Santa Monica Project.  The Project owned by SunCal Century City, located in Century City, California, as more particularly described herein.

2.1.2    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported Bond Obligor with corresponding indemnity rights against the Debtors for the Alleged Bond Obligation, a Creditor of all of the Debtors, a Plan Proponent for the Trustee Debtors, and the Plan Sponsor.

2.1.3    Acton Estates.  Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor herein, and the owner of the Acton Project.

2.1.4    Acton Project. The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described herein.

2.1.5    Administrative Claim(s).  Any Claim incurred after the Petition Date but before the Confirmation Dates for any cost or expense of administration of the Cases allowable under Section 330, 331, 503(b), or 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Estates of the Debtors, any actual and necessary post-petition expenses of operating the business of the Debtors in Possession, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330, 331, or 503 of the Bankruptcy Code and any fees or charges assessed against the Estates of the Debtors under Section 1930 of title 28 of the United States Code.

2.1.6    Administrative Claims Bar Date.  The last date fixed by the Plan for the filing of Proof of Claims or requests for payment of Administrative Claims.  Under the Plan, the

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1  Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the

2  Confirmation Date.

3      2.1.7    <u>Affiliate</u>.  As to any Person, any other Person that directly or indirectly

4  owns or controls, is owned or controlled by, or is under common ownership or control with, such

5  Person.  The term "control" (including, with correlative meanings, the terms "controlled by" and

6  "under common control with"), as applied to any Person, means the possession, direct or indirect,

7  of the power to direct or cause the direction of the management and policies of such Person,

8  whether through the ownership of voting securities or other equity ownership interest, by contract

9  or otherwise.

10     2.1.8    <u>Allowed</u>.  When used to describe Claim(s) or Interest(s), such Claim(s) or

11 Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

12     2.1.9    <u>Allowed Amount</u> shall mean:

13     A.    With respect to any Administrative Claim (i) if the Claim is based

14 upon a Fee Application, the amount of such Fee Application that has been approved by a Final

15 Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

16 incurred in the ordinary course of business of the Debtors and is not otherwise subject to an

17 Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtors

18 and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy

19 Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the

20 Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if

21 no objection to such Proof of Claim is interposed within the applicable period of time fixed by the

22 Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as

23 fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within

24 the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the

25 Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an

26 Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date

27 shall be zero, and no distribution shall be made on account of any such Administrative Claim;

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

B.      with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtors'' Schedules as neither disputed, contingent or unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtors' Schedules, is listed as disputed, unliquidated, contingent or unknown or is not allowed under the terms of the Plan shall be zero, and no distribution shall be made on account of any such Claim; and

C.      with respect to any Interest, (i) the amount provided by or established in the records of the Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.10    Allowed Claim.  Except as otherwise provided in the Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.11    Allowed Interest.  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.12    Allowed Secured Claims.  An asserted Secured Claim that is not either a Disputed Claim or a Disputed Lien.

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

2.1.13   Assets.  All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.14   Arch.  Arch Insurance Company, a Bond Issuer.

2.1.15   Available Cash.  The aggregate amount of all Cash held by each Reorganized Debtor on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims.

2.1.16   Avoidance Actions.  All Claims and defenses to Claims accruing to the Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.17   Bankruptcy Code.  The Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

2.1.18   Bankruptcy Court.  The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.19   Bankruptcy Rules.  Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.20   Beaumont Heights Project.  The Project owned by SunCal Beaumont, located in the City of Beaumont, California, as more particularly described herein.

2.1.21   Bickford Ranch Project.  The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described herein.

2.1.22   Bickford Second Loan Agreement.  That certain promissory note secured by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of Lehman ALI.  The Bickford Second Lien Loan Agreement is allegedly secured by a second priority

-7-

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1    deed of trust on the Bickford Ranch Project.  The Bickford Second Loan Agreement has an

2    asserted balance due of $56,494,059.38 as of March 30, 2009.

3        2.1.23    Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer under

4    various payment or performance bonds.

5        2.1.24    Bond Claimant.  Holder(s) of a Bond Claim.

6        2.1.25    Bond Issuer(s).  Bond Safeguard and Arch in their capacities as issuers

7    and sureties for payment and performance bonds for the benefit of certain of the Debtors.

8        2.1.26    Bond Obligation(s).  The alleged obligation(s) of the Bond Obligor(s) to

9    indemnify the Bond Issuers for any payments by the Bond Issuer to a Holder of a Bond Claim in

10    the aggregate potential amount of $230 million.

11        2.1.27    Bond Obligor(s).  Obligors who are allegedly liable to the Bond Issuer for

12    any payments to Holders of a Bond Claim(s).  The Bond Issuers assert that Bond Obligors are all

13    of the Debtors, Acquisitions, and Elieff.

14        2.1.28    Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

15        2.1.29    Business Day.  Any day, other than a Saturday, a Sunday or a "legal

16    holiday," as defined in Bankruptcy Rule 9006(a).

17        2.1.30    Cases.  The Chapter 11 cases of the Debtors pending before the

18    Bankruptcy Court.

19        2.1.31    Cash.  Currency of the United States of America and cash equivalents,

20    including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

21    transfers and other similar forms of payment.

22        2.1.32    CFD Bonds.  Community facilities district bonds issued by a

23    governmental entity.

24        2.1.33    Claim.  This term shall have the broadest possible meaning under

25    Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

26    Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

27    contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or

28    (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1   of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to

2   judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

3       2.1.34    Claims Bar Date.  For any Claim other than an Administrative Claim,

4   March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

5   file Proof of Claims with the Bankruptcy Court in all of the Debtors' cases.

6       2.1.35    Claims Objection Deadline.  The later of (i) the first business day

7   following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

8   period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

9   a Reorganized Debtor(s) and the Holder of the Claim.

10      2.1.36    Class.  Each group of Claims or Interests classified in Article V of the

11  Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

12      2.1.37    Committees.  Collectively, the Voluntary Debtors' Committee and the

13  Trustee Debtors' Committee, both before and after the Confirmation Date.

14      2.1.38    Confirmation Date.  The date on which the Confirmation Order is entered

15  in the Bankruptcy Court's docket.

16      2.1.39    Confirmation Order.  The order entered by the Bankruptcy Court

17  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

18      2.1.40    Contingent Bond Claims.  Unmatured Bond Claims.

19      2.1.41    Creditor.  Any Person who is the Holder of a Claim against any Debtor

20  that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

21  become due, owing, and payable on or before the Petition Date, including, without limitation,

22  Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

23      2.1.42    Danske Bank.  Danske Bank A/S London Branch, a Lehman Successor in

24  their asserted capacity as the Holder of Lehman's Disputed Secured Claim and Disputed Lien

25  arising from the SunCal Century City Loan Agreement.

26      2.1.43    Debtor(s).  Individually or collectively, the Voluntary Debtors and the

27  Trustee Debtors.

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1               2.1.44    Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their

2   capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

3               2.1.45    Del Amo Project. The Project owned by SunCal Torrance, located in the

4   City of Torrance, California, as more particularly described herein.

5               2.1.46    Del Rio. North Orange Del Rio Land, LLC, a limited liability company,

6   a Voluntary Debtor herein, and the owner of the Del Rio CFD Bond Proceeds.

7               2.1.47    Del Rio CFD Bond Proceeds. Certain net proceeds of CFD Bonds that

8   may be issued by the City of Orange.

9               2.1.48    Delta Coves. Delta Coves Ventures, LLC, a limited liability company, a

10   Trustee Debtor herein, and the owner of the Delta Coves Project.

11             2.1.49    Delta Coves Loan Agreement. That certain Amended and Restated Loan

12   Agreement, dated as of April 20, 2007, by and between Delta Coves, as borrower, and Lehman

13   ALI, lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal

14   amount of approximately $236 million. The Delta Coves Loan Agreement is allegedly secured by

15   a first-priority deed of trust on the Delta Coves Project. The Delta Coves Loan Agreement has an

16   asserted balance due of $206,023,142.48 as of March 30, 2009.

17             2.1.50    Delta Coves Project. The Project owned by Delta Coves, located in

18   Bethel Island located in Contra Costa County, California, as more particularly described herein.

19             2.1.51    Disclosure Statement. This Debtors' Second Amended Joint Disclosure

20   Statement Describing the Debtors' Second Amended Joint Chapter 11 Plan.

21             2.1.52    Disputed Claim(s). All or any part of a Claim other than any Allowed

22   Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

23   with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

24   is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

25   (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

26   Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

27   for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

28   order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1   Deadline, which Adversary Proceeding, objection, or request for estimation has not been

2   dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

3   "Disputed Claim" pursuant to the Plan.

4           2.1.53    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s)

5   and/or the Reorganized Debtor(s) that is either subject to a Disputed Secured Claim, not duly

6   perfected, or subject to an Avoidance Action.

7           2.1.54    Distribution(s).  Payment(s) to Holder(s) of an Allowed Claim(s) or

8   Allowed Interest(s) that are provided for under the Plan.

9           2.1.55    Distribution Agent.  The entity that is responsible for making

10  Distributions under the Plan, which shall be Acquisitions.

11          2.1.56    Distribution Account(s).  The Accounts to be established by each

12  Reorganized Debtor at an FDIC insured bank into which each Reorganized Debtor's Available

13  Cash shall be deposited and all Available Cash received by each Reorganized Debtor after the

14  Confirmation Date shall be deposited, other than Net Sales Proceeds.  However, if there is a Final

15  Order determining any Lehman Disputed Secured Claim(s) subject to such Net Sales Proceeds are

16  either subordinate to a particular Reorganized Debtors' Holders' of Administrative, Priority or

17  General Unsecured Claims and/or the Disputed Lien(s) are determined by a Final Order to be

18  invalid or otherwise not subject to such Net Sale Proceeds, then such Net Sale Proceeds shall

19  become Available Cash and shall be deposited into the applicable Reorganized Debtor's

20  Distribution Account.

21          2.1.57    Distribution Date.  With respect to any Allowed Claim or Allowed

22  Interest, the date on which a Distribution is required to be made under the Plan.

23          2.1.58    Distribution Funds.  Funds deposited in the Distribution Account(s) that

24  are available for making Distributions pursuant to the Plan.

25          2.1.59    Effective Date.  A date reflected by the Reorganized Debtor(s), but in no

26  event later than the sixtieth (60th) day after the Confirmation Date.

27          2.1.60    Elieff.  Bruce Elieff, the manager of Acquisitions, and a Bond Obligor

28  with corresponding indemnity Claims against the Debtors for any Bond Obligations.

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1          2.1.61    Emerald Meadows Project.  The Project owned by SunCal Emerald,

2    located in the City of Rubidoux, California, as more particularly described herein.

3          2.1.62    EMR.  EMR Residential Properties LLC, a Nevada limited liability

4    company.

5          2.1.63    Equitable Subordination Action.  The causes of action for equitable

6    subordination pursuant to Bankruptcy Code Section 510(c) filed by substantially all of the Debtors

7    and the Trustee, as plaintiffs, against the Lehman Entities and/or the Lehman Successors, in the

8    United States Bankruptcy Court Central District of California bearing Case No. 8:09-ap-01005.

9    The Equitable Subordination Action requests that the Lehman Entities' and/or Lehman Successors'

10   Disputed Secured Claims be equitably subordinated to the Claims of the Debtors' other Creditors

11   in substantially all of the Debtors' Cases and to have the Lehman Entities' or Lehman Successors'

12   underlying Disputed Liens transferred to the respective plaintiff Debtors' Estates.

13         2.1.64    Estates.  The bankruptcy estates of the Debtors created pursuant to

14   Section 541 of the Bankruptcy Code.

15         2.1.65    Fee Applications.  Applications of Professional Persons under Sections

16   330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

17   expenses in the Cases.

18         2.1.66    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code

19   for allowance of compensation and reimbursement of expenses in the Cases.

20         2.1.67    Fenway Capital.  Fenway Capital Funding LLC, an alleged Lehman

21   Successor to Lehman's Disputed Secured Claim and Disputed Liens arising from (i) SunCal

22   Communities I Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan

23   Agreement, (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan

24   Agreement, (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and

25   (viii) SunCal Oak Valley Loan Agreement.

26         2.1.68    Filed.  Delivered to, received by and entered upon the legal docket by the

27   Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1    2.1.69    Final Order. A judgment, order, ruling or other decree issued and entered

2    by the Bankruptcy Court.

3    2.1.70    General Unsecured Claim. A Claim against a Debtor that is not (a) a

4    Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

5    2.1.71    Heartland Project. The Project being developed by SunCal Heartland,

6    located in Riverside County, California, as more particularly described herein.

7    2.1.72    Holder. The beneficial owner of any Claim or Interest.

8    2.1.73    Initial Distribution. The Initial Distribution made to the Holders of

9    Allowed General Unsecured Claims against the applicable Reorganized Debtor(s) based on such

10    Holder(s)' pro-rata share from the applicable Reorganized Debtor(s)Distribution Account(s).

11    2.1.74    Insider. The term shall have the broadest meaning possible under

12    Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

13    Insiders of such Affiliates.

14    2.1.75    Interest. Any equity security interest in any Debtor within the meaning,

15    of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership

16    interest in any of the Debtors, whether in the form of common or preferred stock, stock options,

17    warrants, partnership interests, membership interests, or any other equity security or interest.

18    2.1.76    Interim Loan Agreement. That certain Loan Agreement, dated as of

19    October 31, 2007, by and between SCC LLC, as borrower and Lehman ALI, as lender, pursuant to

20    which Lehman ALI made a loan in the maximum aggregate amount of approximately $20 million.

21    The Interim Loan Agreement has an alleged balance due of $23,795,012.59 as of March 30, 2009.

22    The alleged obligation under the Interim Loan Agreement is allegedly secured by (a) an alleged

23    first-priority deed of trust on the Joshua Ridge Project; (b) an alleged first-priority deed of trust on

24    the Tesoro Project; and (c) an alleged first-priority lien on the Del Rio CFD Bond Proceeds.

25    2.1.77    Johannson Ranch Project. The Project owned by SunCal Johannson,

26    located in the City of Modesto, California, as more particularly described herein.

27    2.1.78    Joshua Ridge Project. The Project owned by SCC Communities, located

28    in the City of Victorville, California, as more particularly described herein.

-13-

1         2.1.79    JP Morgan Chase. JP Morgan Chase Bank, an alleged Lehman Successor

2 as the Holder of Lehman's Disputed Secured Claim and Disputed Liens arising from the (i) SunCal

3 Communities I Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan

4 Agreement, (iv) SunCal Century City Loan Agreement, (v) SunCal PSV Loan Agreement,

5 (vi) SunCal Marblehead/SunCal Heartland Loan Agreement, (vii) Delta Coves Loan

6 Agreement (viii) SunCal Northlake Loan Agreement, and (ix) SunCal Oak Valley Loan

7 Agreement.

8         2.1.80    Kirby Estates. Kirby Estates, LLC, a Delaware limited liability company,

9 a Voluntary Debtor herein, and the owner of a portion of the Summit Valley Project not owned by

10 SunCal Summit Valley and Seven Brothers.

11         2.1.81    Lehman ALI. Lehman ALI, Inc.

12         2.1.82    Lehman Administrative Loans. The post-petition financing provided by

13 Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Oak

14 Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century City, SunCal

15 PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all borrower Debtors'

16 assets (with the exception of SunCal Century City in which the liens are junior priority), and

17 provides for super-priority administrative status to Lehman ALI and modifies the automatic stay to

18 the extent necessary to implement the financing. The aggregate amount of the Lehman

19 Administrative Loans to all of the borrower Debtors is $1,790,572.

20         2.1.83    Lehman Brothers Holdings. Lehman Brothers Holdings, Inc.

21         2.1.84    Lehman Commercial. Lehman Commercial Paper, Inc.

22         2.1.85    Lehman Entities. Lehman ALI, Lehman Commercial, Northlake

23 Holdings and OVC Holdings.

24         2.1.86    Lehman Loans. Collectively the following loans that are the purported

25 basis for the Lehman Disputed Secured Claims and Disputed Liens: (a) SunCal Communities I

26 Loan Agreement; (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement;

27 (d) SCC Palmdale Loan; (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance

28 Loan Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement;

1   (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan

2   Agreement; (k) Sun Cal Oak Valley Loan Agreement ; and (l) SunCal Northlake Loan Agreement

3           2.1.87    <u>Lehman Successors</u>. Entities other than the Lehman Entities that either

4   assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

5   Loan(s).

6           2.1.88    <u>Lehman's Disputed Secured Claim(s) and Disputed Lien(s)</u>. All of the

7   Proofs of Secured Claims and the purported corresponding Disputed Liens allegedly securing such

8   Proofs of Secured Claims filed by the Lehman Entities and/or Danske Bank in the Debtors'

9   Chapter 11 Cases arising from the Lehman Loans.

10          2.1.89    <u>Litigation Claims</u>. Any and all interests of the Debtors or the

11  Reorganized Debtors in any and all Claims, rights, causes of action, and objections or defenses to

12  Claims, liens, rights, or causes of action which have been or may be commenced by the Debtor(s),

13  the Reorganized Debtor(s), the Trustee, or the Committee(s), as the case may be, including, but not

14  limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Debtors Estates and/or

15  Reorganized Debtors; (iii) for the recovery of property or payment of money that belongs to the

16  Estates or the Reorganized Debtor(s); (iv) the right to compensation in the form of damages,

17  recoupment or setoff of the Debtors and/or the Reorganized Debtors; (v) the Equitable

18  Subordination Action; and (vi) any and all other Claims against Lehman Disputed Secured Claims

19  and Disputed Liens referenced in the Plan or the Disclosure Statement.

20          2.1.90    <u>Litigation Recoveries</u>. Any Cash or other property received by the

21  Trustee, the Debtors, the Reorganized Debtors, or the Committees, as the case may be, from all or

22  any portion of a Litigation Claim(s), including, but not limited to, awards of damages, attorneys'

23  fees and expenses, interest and punitive damages, whether recovered by way of settlement,

24  execution on judgment or otherwise.

25          2.1.91    <u>LV Pacific Point</u>. LV Pacific Point, LLC, a Delaware limited liability

26  company, the Lehman Affiliate that is the disputed owner of the Pacific Point Project.

27          2.1.92    <u>Marblehead Project</u>. The Project owned by SunCal Marblehead, located

28  in the City of San Clemente, California, as more particularly described herein.

1         2.1.93    <u>Maximum Distributions</u>. A Distribution to a Holder of an Allowed

2 General Unsecured Claim against a Debtor equal to one hundred percent (100%) of the amount of

3 the Holder's Allowed General Unsecured Claim plus interest at the legal rate from and as of the

4 applicable Debtor's Petition Date.

5         2.1.94    <u>Mechanic Lien Claims</u>. Mechanic Lien Claims arising pursuant to

6 California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

7 allegedly satisfy the requirements of Bankruptcy Code 546(b).

8         2.1.95    <u>Net Litigation Recoveries</u>. Litigation Recoveries less associated

9 Administrative Claims and Post-Confirmation Expenses incurred in connection with such

10 Litigation Recoveries.

11         2.1.96    <u>Net Sales Proceeds</u>. The Debtor(s)' Cash on hand as of the Confirmation

12 Date and Cash generated from the sale(s) or liquidation of the Debtor(s)' or the Reorganized

13 Debtor(s)' Assets that are allegedly subject to Lehman's Disputed Secured Claim(s) and Disputed

14 Lien(s), less payment of selling expenses, taxes, Trustee fees, and any associated Post-

15 Confirmation Expenses and Administrative Claims incurred in furtherance of such sales or

16 liquidation of such Assets.

17         2.1.97    <u>Net Sales Proceeds Account(s)</u>. Account(s) to be established at an FDIC

18 insured bank into which all Net Sale Proceeds shall be deposited. There shall be separate Net

19 Sales Proceeds Accounts for each of the Lehman Loans. The Lehman Disputed Secured Claim(s)

20 and Disputed Lien(s) arising from such Lehman Loans shall attach to the corresponding Net Sales

21 Proceeds Account(s) pending any Final Order(s) of the Bankruptcy Court resolving the applicable

22 Lehman Disputed Secured Claim(s) and Disputed Lien(s). To the extent that an applicable

23 Lehman Disputed Secured Claim is disallowed and/or an applicable Lehman Disputed Lien is

24 avoided or otherwise invalidated, such Net Sales Proceeds allegedly subject thereto shall become

25 Available Cash and shall be transferred to the applicable Reorganized Debtor's Distribution

26 Account.

27

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1    2.1.98    Northlake Holdings. Northlake Holdings LLC, a California limited

2    liability company, that is a Lehman Entity Affiliate and the asserted Holder of the beneficial

3    interest in the Disputed Secured Claim against the Northlake Project.

4    2.1.99    Northlake Project. The Project owned by SunCal Northlake, located in

5    the City of Castaic California, as more particularly described herein.

6    2.1.100    Oak Knoll Project. The Project owned by SunCal Oak Knoll, located in

7    the City of Oakland, California, as more particularly described herein.

8    2.1.101    Oak Valley Project. The Project owned by SunCal Oak Valley, located in

9    Riverside County, California, as more particularly described herein.

10    2.1.102    Orders for Relief Date. The following are dates that orders for relief were

11    entered for each of the Trustee Debtors:

| SunCal Oak Valley | January 6, 2009 |
|---|---|
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

18    2.1.103    OVC Holdings. OVC Holdings LLC, a California limited liability

19    company, that is a Lehman Entity Affiliate and the asserted Holder of the beneficial interest in the

20    Disputed Secured Claim against the Oak Valley Project.

21    2.1.104    Pacific Point Project. The Project formerly owned by SJD Partners,

22    which was non-judicially foreclosed upon on August 28, 2008 by Lehman ALI.

23    2.1.105    Palmdale Hills. Palmdale Hills Property, a Delaware limited liability

24    company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

25    2.1.106    Palmdale Hills CFD Bonds. Certain CFD bonds issued by the City of

26    Palmdale, in the amount of approximately $33 million that are owned by Palmdale Hills.

27    2.1.107    Palm Springs Village Project. The Project owned by SunCal PSV,

28    located in the City of Palm Springs, California, as more particularly described herein.

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

2.1.108   Person.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.109   Petition Dates.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.110   Plan.  The Debtors' Second Amended Joint Chapter 11 Plan,  together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.111   Plan Proponent(s).  The parties-in-interest that are proposing the Plan.  In the case of the Voluntary Debtors, each Voluntary Debtor is their own Plan Proponent.  In the case of the Trustee Debtors, Acquisitions is the Plan Proponent.

-18-

1          2.1.112    <u>Plan Sponsor</u>. The individuals and/or entities that have committed to

2    cause the funding of certain specified obligations under the Plan on or after the Effective Date.

3    The Plan Sponsor for all of the Reorganized Debtor(s) is Acquisitions.

4          2.1.113    <u>Plan Sponsor's Administrative Loan(s)</u>. An Allowed Administrative

5    Claim of the Plan Sponsor equal to all amounts funded by the Plan Sponsor in connection with the

6    Debtors' Chapter 11 Cases and the Plan.

7          2.1.114    <u>Post-Confirmation Expenses</u>. The fees and expenses incurred by the Plan

8    Sponsor, the Reorganized Debtors and the Committees following the Confirmation Date (including

9    the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the

10    Reorganized Debtor(s)' Litigation Claims; (ii) objecting to and resolving Disputed Claims and

11    Disputed Liens; (iii) selling or otherwise liquidating the Reorganized Debtor(s)' Assets;

12    (iv) effectuating Distributions under this Plan; and (v) otherwise consummating this Plan and

13    closing the Reorganized Debtor(s)' Chapter 11 Cases.

14          2.1.115    <u>Priority Claim</u>. Any Claim, other than an Administrative Claim or a Tax

15    Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

16          2.1.116    <u>Pro Rata</u>. Proportionately, so that with respect to any distribution in

17    respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

18    such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

19    amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

20    such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

21          2.1.117    <u>Professional</u>. A Person or Entity (a) employed by the Debtors, the

22    Committees pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy

23    Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections

24    327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation and

25    reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

26    Bankruptcy Code.

27          2.1.118    <u>Professional Fees</u>. All Allowed Claims for compensation and for

28    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

1       2.1.119 <u>Projects</u>.  The Debtors' residential real estate development projects as

2    separately described herein.

3       2.1.120 <u>Reorganized Debtor(s)</u>.  The Reorganized Debtor(s) shall be the

4    Debtor(s) that obtain confirmation under the Plan and whose legal existence remains after the

5    Confirmation Date.

6       2.1.121 <u>Remaining Distribution Funds</u>.  The Distribution Funds remaining in a

7    Distribution Account(s) after making a Maximum Distribution.

8       2.1.122 <u>Ritter Ranch Loan Agreement</u>.  That certain Credit Agreement, dated as

9    of February 8, 2007, by and among Palmdale Hills, as borrower, Lehman Commercial, as

10   administrative agent and lender, pursuant to which Lehman Commercial made a loan in the

11   maximum aggregate principal amount of approximately $264,000,000. The Ritter Ranch Loan

12   Agreement is allegedly secured by a first-priority deed of trust on all real and personal property

13   owned by Palmdale Hills.  The Ritter Ranch Loan Agreement has an asserted balance due of

14   $287,252,096.31 as of March 30, 2009.

15      2.1.123 <u>Ritter Ranch Project</u>.  The Project owned by Palmdale Hills, located in

16   the City of Palmdale, California, as more particularly described herein.

17      2.1.124 <u>Rubidoux</u>.  Rubidoux 60 LLC, a Nevada limited liability company.

18      2.1.125 <u>Sales Period</u>.  The Sales Period is the time period that each Reorganized

19   Debtor is provided under the Plan to consummate a sale or liquidation of its Assets allegedly

20   subject to Lehman's Disputed Secured Claim(s) and Disputed Lien(s).  The Sales Period for each

21   applicable Reorganize Debtor shall commence on the Effective Date and shall expire on the first

22   calendar date after the one hundred and eightieth (180th) day following the date that the Bankruptcy

23   Court enters a Final Order(s) resolving all of the Lehman Disputed Secured Claim(s) and Disputed

24   Liens against the applicable Reorganized Debtor and its Assets.  To the extent that a particular

25   Reorganized Debtor is stayed for any reason from selling and/or liquidating such Assets, then the

26   Sales Period for the Reorganized Debtor subject to such stay shall be tolled for a time period equal

27   to the duration of such stay.

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1            2.1.126    Sales Procedures Motion.  The Sales Procedures Motion filed on

2 February 18, 2009 by the Trustee, SCC Communities, Del Rio, and Tesoro requesting, among

3 other things (1) approval of overbid procedures in connection with proposed sale of substantially

4 all assets of such Debtors' Estates; (2) approval of break-up fee; and (3) disallowance of credit bid

5 rights of disputed secured creditors, Lehman ALI, Northlake Holdings and OVC Holdings and any

6 successors or assigns thereto, including but not limited to Danske Bank, J.P. Morgan Chase and

7 Fenway Capital.

8            2.1.127    SCC Communities.  SCC Communities, LLC, a limited liability

9 company, a Voluntary Debtor herein, and the owner of the Joshua Ridge Project.

10           2.1.128    SCC JV.  SCC JV Ventures, LLC, a Delaware limited liability company,

11 that is an Affiliate of Acquisitions and the Debtors.

12           2.1.129    SCC LLC.  SCC Acquisitions LLC, a limited liability company, a

13 subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

14           2.1.130    SCC Palmdale.  SCC Palmdale, LLC, a Delaware limited liability

15 company, a Voluntary Debtor herein, and the Holder of the Allowed Interest in Palmdale Hills.

16           2.1.131    SCC Palmdale Loan.  Mezzanine Credit Agreement, between SCC

17 Palmdale as borrower and Lehman Commercial as lender.  The SCC Palmdale Loan is allegedly

18 secured by a pledge of SCC Palmdale's Allowed Interest in Palmdale Hills.  The SCC Palmdale

19 Loan has an alleged balance due of $119,664,305.25 as of March 30, 2009.

20           2.1.132    Schedules.  The schedules of assets and liabilities and list of equity

21 security holders Filed by the Debtors, as required by Section 521(1) of the Bankruptcy Code,

22 Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from

23 time to time.

24           2.1.133    Secured Claim.  Any Claim, including interest, fees, costs, and charges to

25 the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

26 unavoidable Lien on the Debtor(s)' Assets.

27

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1         2.1.134    Secured Real Property Tax Claims. Secured Claims held by various

2    government entities secured by liens on the underlying real properties owned by the Debtors but

3    that are non-recourse to the Debtors.

4         2.1.135    Seven Brothers. Seven Brothers, LLC, a Delaware limited liability

5    company, a Voluntary Debtor herein, and the owner of the portion of the Summit Valley Project

6    not owned by Kirby Estates and SunCal Summit Valley.

7         2.1.136    SJD Development. SJD Development Corp., a California corporation, a

8    Voluntary Debtor herein, and the Holder of the Allowed Interest in SJD, Partners.

9         2.1.137    SJD Partners. SJD Partners, Ltd., a California limited partnership, a

10    Voluntary Debtor herein, and the prior owner of the Pacific Point Project.

11         2.1.138    Summit Valley Project. The Project owned in part by SunCal Summit

12    Valley, Seven Brothers and Kirby Estates, located in the City of Hesperia, California, as more

13    particularly described herein.

14         2.1.139    SunCal. The SunCal Companies, a trade name for Acquisitions and its

15    Affiliates.

16         2.1.140    SunCal I. SunCal Communities I, LLC, a Delaware limited liability

17    company, a Voluntary Debtor herein, and the owner of the equity membership interests in Acton

18    Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and

19    SunCal Emerald.

20         2.1.141    SunCal III. SunCal Communities III, LLC, a Delaware limited liability

21    company, a Voluntary Debtor herein.

22         2.1.142    SunCal Beaumont. SunCal Beaumont, LLC, a limited liability company,

23    a Voluntary Debtor herein, and the owner of the Beaumont Heights Project.

24         2.1.143    SunCal Bickford. SunCal Bickford Ranch, LLC, a Delaware limited

25    liability company, a Trustee Debtor herein, and the owner of the Bickford Ranch Project.

26         2.1.144    SunCal Century City. SunCal Century City, LLC, a Delaware limited

27    liability company, a Voluntary Debtor herein, and the owner of the 10,000 Santa Monica Project.

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

2.1.145    <u>SunCal Century City Loan Agreement</u>.  That certain Loan Agreement by and between SunCal Century City, as borrower and Lehman ALI, as agent and sole lender pursuant to which Lehman ALI made a loan in the aggregate maximum principal amount of approximately $120,000,000.  The SunCal Century City Loan Agreement is allegedly secured by a first-priority deed of trust on the 10,000 Santa Monica Project.  The SunCal Century City Loan Agreement has an alleged balance due of $120,000,000.00 as of April 1, 2009.

2.1.146    <u>SunCal Communities I Loan Agreement</u>.  The loan agreement by and among (i) SunCal I and SunCal III, as borrowers and (ii) Lehman Commercial, as administrative agent and lender, pursuant to which Lehman Commercial made a loan to SunCal I and SunCal III, as borrowers in the maximum aggregate principal amount of approximately $395,313,713.37.  The loan agreement is allegedly secured by (a) an alleged first-priority deeds of trust on the SunCal Bickford, the Acton Estates, and the SunCal Emerald Projects, (b) an alleged pledge of SunCal I's Allowed Interest in Acton Estates, SunCal Summit, SunCal Beaumont; SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) an alleged pledge of SunCal Summit's Allowed Interest in Seven Brothers and Kirby.  The SunCal Communities I Loan Agreement has an alleged balance due of $343,221,391.06 as of March 30, 2009.

2.1.147    <u>SunCal Emerald</u>. SunCal Emerald Meadows, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Emerald Meadows Project.

2.1.148    <u>SunCal Heartland</u>. SunCal Heartland, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Heartland Project

2.1.149    <u>SunCal Johansson</u>. SunCal Johansson Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Johansson Ranch Project.

2.1.150    <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited liability company, and the property manager for the Projects.

2.1.151    <u>SunCal Marblehead</u>. SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Marblehead Project.

2.1.152    <u>SunCal Marblehead/SunCal Heartland Loan Agreement</u>.  That certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1    as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

2    Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

3    pursuant to which Lehman ALI made a loan in the maximum aggregate principal mount of

4    approximately $316,061,300.  The SunCal Marblehead/SunCal Heartland Loan Agreement is

5    allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

6    The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

7    $354,325,126.15 as of March 30, 2009.

8            2.1.153    SunCal Northlake.  LB-L-SunCal Northlake, LLC, a Delaware limited

9    liability company, a Trustee Debtor herein, and the owner of the Northlake Project.

10           2.1.154    SunCal Northlake Loan Agreement.  That certain Term Loan and

11   Revolving Line of Credit Loan Agreement, dated as of September 5, 2009, between SunCal

12   Northlake, as borrower, and Northlake Holdings, as successor agent and sole lender, pursuant to

13   which Northlake Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate

14   principal mount of approximately $100,000,000.  The SunCal Northlake Loan Agreement is

15   allegedly secured by a first-priority deed of trust on the Northlake Project.  The SunCal Northlake

16   Loan Agreement has an alleged balance due of $123,654,776.88 as of March 30, 2009.

17           2.1.155    SunCal Oak Knoll. SunCal Oak Knoll, LLC, a Delaware limited liability

18   company, a Trustee Debtor herein, and the owner of the Oak Knoll Project.

19           2.1.156    SunCal Oak Knoll/SunCal Torrance Loan Agreement.  That certain Loan

20   Agreement, dated as of November 30, 2006, between SunCal Torrance and SunCal Oak Knoll, as

21   borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan

22   in the maximum aggregate principal amount of approximately $167.7 million.  The SunCal Oak

23   Knoll/SunCal Torrance Loan Agreement is allegedly secured by first-priority deeds of trust on the

24   Oak Knoll and the Del Amo Projects.  The SunCal Oak Knoll/SunCal Torrance Loan Agreement

25   has an alleged balance due of $158,141,364.64 as of March 30, 2009.

26           2.1.157    SunCal Oak Valley. LB-L-SunCal Oak Valley, LLC, a Delaware limited

27   liability company, a Trustee Debtor herein, and the owner of the Oak Valley Project.

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1           2.1.158   SunCal Oak Valley Loan Agreement. That certain Term Loan and

2 Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, by and between SunCal Oak

3 Valley, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which

4 OVC Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal

5 mount of approximately $120,000,000. The SunCal Oak Valley Loan Agreement is allegedly

6 secured by a first-priority deed of trust on the Oak Valley Project. The SunCal Oak Valley Loan

7 Agreement has an alleged balance due of $141,630,091.63 as of March 30, 2009.

8           2.1.159   SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company, a

9 Trustee Debtor herein, and the owner of the Palm Springs Village Project.

10          2.1.160   SunCal PSV Loan Agreement. That certain Term Loan and Revolving

11 Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower,

12 and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the

13 maximum aggregate principal amount of approximately $90 million. The SunCal PSV Loan

14 Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project.

15 The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30,

16 2009.

17          2.1.161   SunCal Summit Valley. SunCal Summit Valley, LLC, a Delaware limited

18 liability company, a Voluntary Debtor herein, the owner of a portion of the Summit Valley Project

19 not owned by Kirby Estates and Seven Brothers, and the holder of Allowed Interests in Kirby

20 Estates and Seven Brothers..

21          2.1.162   SunCal Torrance. SunCal Torrance Properties, LLC, a Delaware limited

22 liability company, a Trustee Debtor herein, and the owner of the Del Amo Project.

23          2.1.163   Tax. Any tax, charge, fee, levy, impost or other assessment by any

24 federal, state, local or foreign taxing authority, including, without limitation, income, excise,

25 property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

26 estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

27 additions attributable to, or imposed on or with respect to such assessments.

28

1             2.1.164   Tax Claim. Any Claim for any Tax to the extent that it is entitled to

2 priority in payment under Section 507(a)(8) of the Bankruptcy Code.

3             2.1.165   Tesoro. Tesoro SF, LLC, a Delaware limited liability company, a

4 Voluntary Debtor herein, and the owner of the Tesoro Project.

5             2.1.166   Tesoro Project. The Project owned by Tesoro located in the City of Santa

6 Clarita, California, as more particularly described herein.

7             2.1.167   Trustee. Steven M. Speier, the duly appointed trustee of the Trustee

8 Debtors.

9             2.1.168   Trustee Debtor(s). The following Debtors, individually or collectively,

10 that are represented by the Trustee: Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal

11 Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal Torrance, and SunCal

12 Oak Knoll.

13             2.1.169   Trustee Debtors' Committee. The Official Committee of Unsecured

14 Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

15 Bankruptcy Code.

16             2.1.170   Voluntary Debtor(s). The following  Chapter 11 debtors and debtors-in-

17 possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

18 Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

19 Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

20 Rio and Tesoro.

21             2.1.171   Voluntary Debtors' Committee. The Official Committee of Unsecured

22 Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

23 Bankruptcy Code.

24     **2.2**     **Rules of Construction.**

25        For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or

26 in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

27 singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

28 masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC

1  Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means

2  such document or schedule, as it may have been or may be amended, modified or supplemented

3  pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

4  entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

5  or this Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

6  and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

7  in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

8  the Plan or this Disclosure Statement, any reference in the Plan or this Disclosure Statement to a

9  contract, instrument, release, indenture, agreement, or other document being in a particular form or

10  on particular terms and conditions means that such document shall be substantially and materially

11  in such form or substantially and materially on such terms and conditions; (h) any reference in the

12  Plan or this Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

13  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

14  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

15  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

16  express terms of the Plan or this Disclosure Statement or any other provision in this Section 3.2.

17      **2.3**    **Exhibits.**

18          All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

19  therein.

20                                      **III.**

21                    **PLAN CONFIRMATION DEADLINES**

22          The Bankruptcy Court has not confirmed the Plan described in this Disclosure Statement.

23  Accordingly, the terms of the Plan are not binding on anyone.  However, if the Bankruptcy Court

24  confirms the Plan, then the Plan will be binding on the Reorganized Debtor(s) and on all Creditors

25  and Holders in these Cases.

26  / / /

27

28

MAINDOCS-#129590-v12-SCC2ndAmdDS.DOC