1  | PAUL J. COUCHOT - State Bar No. 131934
   | **WINTHROP COUCHOT**
2  | **PROFESSIONAL CORPORATION**
   | 660 Newport Center Drive, Fourth Floor
3  | Newport Beach, CA 92660
   | pcouchot@winthropcouchot.com
4  | Telephone: (949) 720-4165
   | Facsimile: (949) 720-4111
5  | General Insolvency Counsel for Administratively Consolidated
   | Debtors-in-Possession and SCC Acquisitions, Inc.
6  |
7  | LOUIS R. MILLER, State Bar No. 54141
   | smiller@millerbarondess.com
   | MARTIN PRITIKIN, State Bar. No. 210845
8  | mpritikin@millerbarondess.com
   | BRIAN PROCEL, State Bar No. 218657
9  | bprocel@millerbarondess.com
   | **MILLER BARONDESS, LLP**
10 | 1999 Avenue of the Stars, Suite 1000
   | Los Angeles, California 90067
11 | Telephone:    (310) 552-4400
   | Facsimile:    (310) 552-8400
12 | Special Litigation Counsel for
   | Jointly Administered Debtors in Possession and Chapter 11 Trustee
13 |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:08-bk-17206-ES |
| PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | Jointly Administered With Case Nos. 8:08-17209-ES; 8:08-17240-ES; 8:08-17224-ES; 8:08-17242-ES; 8:08-17225-ES; 8:08-17245-ES; 8:08-17227-ES; 8:08-17246-ES; 8:08-17230-ES; |
| Jointly Administered Debtors and Debtors-in-Possession | 8:08-17231-ES; 8:08-17236-ES; 8:08-17248-ES; 8:08-17249-ES; 8:08-17573-ES; 8:08-17574-ES; |
| Affects: | 8:08-17575-ES; 8:08-17404-ES; 8:08-17407-ES; |
| ☐ All Debtors | 8:08-17408-ES; 8:08-17409-ES; 8:08-17458-ES; |
| ☐ Palmdale Hills Property, | 8:08-17465-ES; 8:08-17470-ES; 8:08-17472-ES; and |
| ☐ SunCal Beaumont Heights, LLC | 8:08-17588-ES |
| ☒ SCC Palmdale, LLC | |
| ☐ SunCal Johannson Ranch, LLC | Chapter 11 Proceedings |
| ☒ SunCal Summit Valley, LLC | **DEBTORS' REPLY TO OPPOSITION OF** |
| ☐ SunCal Emerald Meadows LLC | **LEHAMN LENDERS RE MOTION FOR** |
| ☒ SunCal Bickford Ranch, LLC | **ORDER: (1) VALUING COLLATERAL OF** |
| ☐ Acton Estates, LLC | **CERTAIN DISPUTED CREDITORS; (2)** |
| ☐ Seven Brothers LLC | **AVOIDING CERTAIN DISPUTED LIENS** |
| ☐ SJD Partners, Ltd. | **PURSUANT TO 11 U.S.C. §506(d); AND (3)** |
| ☐ SJD Development Corp. | **PRESERVING AVOIDED LIEN(S) FOR THE** |
| ☐ Kirby Estates, LLC | **RESPECTIVE ESTATES PURSUANT TO 11** |
| ☒ SunCal Communities I, LLC | **U.S.C. § 551** |
| ☒ SunCal Communities III, LLC | |
| *Caption Continued on Next Page* | DATE:    July 28, 2009 |
| | TIME:    10:00 A.M. |
| | PLACE:  Courtroom 5A |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC
☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

[11 U.S.C. §§ 506(a)&(d) and 551, and F.R.B.P. 3012]

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION.................................................................................... 1

II.     AN ADVERSARY PROCEEDING IS NOT REQUIRED ............................ 2

      A.      The Advisory Committee Note to Rule 3012 Clearly Provide
             that a Lien May be Stripped Pursuant to Section 506(d)
             Via Motion................................................................................ 2

      B.      The Motion Is Based upon Lehman's Admissions, and Thus
             No Evidentiary Hearing Is Required ........................................ 6

III.    WHILE BANKRUPTCY RULE 3012 DOES NOT REQUIRE A
      PARTICULAR CONTEXT OR PURPOSE FOR THE VALUATION, THE
      MOVING DEBTORS SEEK THE VALUATION FOR THE PURPOSES
      OF THE PENDING CHAPTER 11 PLAN AND PROPOSED SALE OF
      THE PROJECTS...................................................................................... 8

IV.     SECTION 506(d) DOES NOT REQUIRE THAT THE CLAIM BE AN
      "ALLOWED CLAIM"............................................................................. 10

V.      LIEN STRIPPING IS PERMISSIBLE IN CHAPTER 11 CASES ................ 14

VI.     CONCLUSION ...................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Dever v. I.R.S. (In re Dever),
   164 B.R. 132 (Bankr.C.D.Cal.1994) ...................................................................11, 14, 15

Dewsnup v. Timm,
   502 U.S. 410 (1992) .......................................................................................11, 14, 15

Gaglia v. First Federal Sav. & Loan Ass'n,
   889 F.2d 1304 (3rd Cir. 1989) .................................................................................11, 12

Harmon v. U.S. Through Farmers Home Admin.,
   101 F.3d 574 (8th Cir. 1996) ......................................................................................3, 15

In re 1441 Veteran Street Co.,
   144 F.3d 1288 (9th Cir. 1998) ...................................................................................15, 16

In re 680 Fifth Ave. Assocs.,
   156 B.R. 726 (Bankr. S.D.N.Y.),
   aff'd, 169 B.R. 22 (S.D.N.Y. 1993),
   aff'd, 29 F.3d 95, 31 C.B.C.2d 1085 (2d Cir. 1994) ...................................................14, 15

In re Akram,
   259 B.R. 371 (Bankr.C.D.Cal. 2001) ...............................................................................16

In re Beard,
   112 B.R. 951 (Bankr.N.D.Ind.1990) .................................................................................12

In re Bennett,
   312 B.R. 843 (Bankr.W.D.Ky. 2004) .................................................................................4

In re Bowen,
   174 B.R. 840 (Bankr. S.D. Ga. 1994) ...............................................................................14

In re Brager,
   28 B.R. 966 (Bankr. E.D. Pa. 1983) .................................................................................13

In re Brown,
   73 B.R. 740 (Bankr.W.D. Wis. 1987) ...............................................................................13

In re Clark,
   205 B.R. 140 (Bankr.S.D.Ill. 1997) .............................................................................12, 13

In re Dendy,
   396 B.R. 171 (Bankr.D.S.C. 2008) ...................................................................................13

In re Dickey,
   293 B.R. 360 (Bankr.M.D.Pa. 2003) ..................................................................................4

In re Duncan,
   60 B.R. 345 (Bankr. M.D. Ala. 1986) ...............................................................................13

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value_3012.DOC

# TABLE OF AUTHORITIES

## (Continued)

PAGE

In re Fuller,
 255 B.R. 300 (Bankr.W.D.Mich. 2000) ...........................................................4

In re Garnett,
 88 B.R. 123 (Bankr.W.D.Ky.1988)...............................................................12

In re Hermansen,
 84 B.R. 729 (Bankr.D.Colo. 1988)................................................................11

In re Herrick,
 1997 WL 33475213, 4 (Bankr.C.D.Ill. 1997) ..............................................13

In re Hoskins,
 262 B.R. 693 (Bankr.E.D.Mich. 2001).......................................................4, 5

In re Hudson,
 260 B.R. 421 (Bankr.W.D.Mich. 2001) .....................................................4, 5

In re Jones,
 152 B.R. 155 (Bankr. E.D.Mich. 1993).........................................3, 4, 12, 15

In re King,
 290 B.R. 641 (Bankr.C.D.Ill. 2003) ........................................................3, 5, 4

In re Kleibrink,
 2007 WL 2438359, 6 (N.D.Tex. 2007) ...........................................................4

In re Kressler,
 252 B.R. 632 (Bankr.E.D.Pa. 2000) ...............................................................3

In re Levitt & Sons, LLC,
 384 B.R. 630 (Bankr.S.D.Fla. 2008) ...............................................................4

In re Matysiak,
 2008 WL 5046545 (Bankr.D.Ariz. 2008) .......................................................3

In re Maynard,
 264 B.R. 209 (9th Cir.BAP 2001).....................................................................5

In re McMillan,
 251 B.R. 484 (Bankr.E.D.Mich. 2000).............................................................3

In re Millspaugh,
 302 B.R. 90 (Bankr.D.Idaho 2003) ........................................................3, 5, 6

In re Pourtless,
 93 B.R. 23 (Bankr.W.D.N.Y. 1988)...........................................................8, 12

In re Richardson,
 121 B.R. 546 (Bankr.S.D.Ill. 1990)................................................................12

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value 3012.DOC

## TABLE OF AUTHORITIES

### (Continued)

PAGE

In re Sadala,
    294 B.R. 180 (Bankr.M.D.Fla. 2003) ................................................................................. 4, 6

In re Scott,
    376 B.R. 285 (Bankr.D.Idaho 2007) ...................................................................................... 15

In re Shumate,
    42 B.R. 462 (Bankr. E.D. Tenn. 1984) .................................................................................. 13

In re Washington Mfg. Co.,
    128 B.R. 198 (Bankr.M.D.Tenn. 1991) ................................................................................. 13

In re Weinstein,
    227 B.R. 284 (9th Cir. BAP 1998) ............................................................................ 11, 14, 15

In re Wolf,
    162 B.R. 98 (Bankr.D.N.J. 1993) ............................................................................... 4, 8, 11

In re Yekel,
    2006 WL 2662849, *6 (Bankr.D.Or. 2006) ............................................................................ 3

In re Yellowstone Mountain Club, LLC,
    2009 WL 982240 (Bankr.D. Mont. 2009) ......................................................................... 13, 14

In re Yoder,
    32 B.R. 777 (Bankr. W.D. Pa. 1983) aff'd in relevant part, 48 B.R. 744 (W.D. Pa. 1984) ........ 13

In re Zimmer,
    313 F.3d 1220 (9th Cir. 2002) ............................................................................................. 15

Lomas Mortgage U.S.A. v. Wiese,
    980 F.2d 1279 (9th Cir.1992),
    vacated and remanded on other grounds, 508 U.S. 958 (1993) ............................................. 15

Matter of Folendore,
    862 F.2d 1537 (11th Cir.1989) ............................................................................................ 12

Matter of Lampert,
    61 B.R. 785 (Bankr.W.D.Wis. 1986) ..................................................................................... 5

Ontra, Inc. v. Wolfe
    192 B.R. 679 (W.D.Va. 1996) .............................................................................................. 8

Thissen v. Johnson,
    2009 WL 1463412, 2 (E.D.Cal. 2009) .................................................................................. 5

Wade v. Bradford,
    39 F.3d 1126 (10th Cir. 1994) ........................................................................................ 14, 15

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value_3012.DOC

# TABLE OF AUTHORITIES

### (Continued)

<u>PAGE</u>

## STATUTES

11 U.S.C. § 101(5)(A) .................................................................................... 11
11 U.S.C. § 361 ............................................................................................ 2, 3
11 U.S.C. § 502 ................................................................................... 11, 12, 14
11 U.S.C. § 502(b) ........................................................................................ 12
11 U.S.C. § 506 ............................................................................... 3, 4, 5, 10, 12
11 U.S.C. § 506(a) ............................................................... 1, 2, 5, 8, 12, 13, 15, 16
11 U.S.C. § 506(d) ............................................. 1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 15, 17
11 U.S.C. § 506(d)(2) ..................................................................................... 12
11 U.S.C. § 551 ............................................................................................... 1
11 U.S.C. § 552 .............................................................................................. 16
11 U.S.C. § 552(b) ......................................................................................... 16
11 U.S.C. § 1111(b) ........................................................................................ 15
11 U.S.C. § 1124 ........................................................................................... 2, 3
11 U.S.C. § 1129(b) ................................................................................... 2, 3, 15

## OTHER AUTHORITIES

Advisory Committee Note to Rule 3012 ................................................................. 2
Bankruptcy Code Comment, 1988 Collier Pamphlet Edition ......................................... 8
The Advisory Committee Note to Rule 3012 ........................................................... 2

## RULES

F.R.B.P. 3012 ............................................................ 1, 2, 3, 4, 5, 6, 8, 10, 11, 13
F.R.B.P. 7001 ........................................................................................ 2, 3, 4, 5, 6
F.R.B.P. 7001(2) ......................................................................................... 4, 5
F.R.B.P. 7001.03 ............................................................................................ 5
F.R.B.P. 7001-11 ............................................................................................ 5
F.R.B.P. 9014 ................................................................................................. 3

## TREATISES

<u>Collier on Bankruptcy</u> ............................................................................ 2, 5, 14
<u>Collier on Bankruptcy</u>-15th Edition Rev., ¶ 506.06 (2009), footnote 17 ................... 14
<u>Collier on Bankruptcy</u>-15th Edition Rev., ¶ 506.06[4][b][i] ................................ 13
<u>Collier on Bankruptcy</u>-15th Edition Rev., ¶ 7001.03[1] (2009) .............................. 3
3 <u>Collier on Bankruptcy</u>, par. 506.07, at 506-68 to 506-69 ................................ 12
3 <u>Collier on Bankruptcy</u>, par. 506.07, at 506-69 to 506-70 ................................ 12

1    The following Voluntary Debtors: SunCal Communities I, LLC ("SunCal I"), SunCal

2  Communities III ("SunCal III), LLC, SCC Palmdale, LLC ("SCC Palmdale"), and SunCal Bickford

3  Ranch, LLC ("SunCal Bickford") (collectively, the "Moving Debtors") hereby submit this Reply to the

4  "Opposition" filed by Lehman Commercial Paper Inc. ("Lehman Commercial") and Lehman ALI, Inc.

5  ("Lehman ALI") (collectively, the "Lehman") to the Moving Debtors' Motion for an order (A) valuing

6  certain collateral at zero dollars, pursuant to 11 U.S.C. § 506(a) and F.R.B.P. 3012, (B) voiding the

7  corresponding disputed liens, pursuant to 11 U.S.C. § 506(d); and (C) preserving the voided liens for

8  the benefit of the respective bankruptcy estates pursuant to 11 U.S.C. § 551 ("Motion").

9                                              **I.**

10                                  **INTRODUCTION**

11        Lehman's Opposition is significant, not for what it says, but what it does not say.  Instead of

12  addressing the merits of the Motion, Lehman devotes its entire Opposition to throwing up every

13  conceivable, albeit meritless, procedural objection to delay a ruling on the Motion.  No where in the

14  Opposition does Lehman contest or dispute the necessary elements of Section 506(d), namely that

15  Lehman's interest in the subject collateral is valueless, whether for the purposes of the pending Chapter

16  11 plan or any other purpose in this Chapter 11 proceeding.

17        Lehman does not argue, let alone submit evidence, that there is any particular context or purpose

18  in this Chapter 11 proceeding in which the liens would have positive value.  Lehman's appraisals and

19  proofs of claims, attached to the Motion, admit that the subject liens are significantly "out of the

20  money".  Accordingly, Lehman's liens are valueless for any purpose in this Chapter 11 proceeding.

21        While official comment to Bankruptcy Rule 3012 expressly provides that no particular context

22  for the valuation is necessary, to the extent this Court requires one, the Moving Debtors designate the

23  purpose of the valuation is for the Debtors' chapter 11 plan and disclosure statement, along with the

24  sales of the Debtors' Projects contemplated therein.  The approval of the Debtors' Disclosure Statement

25  is also set for hearing, concurrently with the Motion, on July 28, 2009.  Accordingly, the valuation is

26  ripe for determination.

27        For all of these reasons, and for the additional reason stated in the moving papers and herein

28  below, the Debtor believe that the Court should grant the Motion without further delay by Lehman.

## II.

### AN ADVERSARY PROCEEDING IS NOT REQUIRED

**A.    The Advisory Committee Note to Rule 3012 Clearly Provide that a Lien May be Stripped Pursuant to Section 506(d) Via Motion.**

Lehman's Opposition asserts that the Moving Debtors must seek the requested relief via an adversary proceeding, rather than by Motion.  However, the Opposition ignores the plain language of Bankruptcy Rule 3012:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest **on motion** of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

F.R.B.P. 3012 (emphasis added).

The Advisory Committee Note to Bankruptcy Rule 3012 clearly distinguish between a valuation of the secured claim, which can proceed via motion, versus a challenged to the underlying validity, priority, or extent of a lien, which requires an adversary proceeding:

> Pursuant to § 506(a) of the Code, secured claims are to be valued and allowed as secured to the extent of the value of the collateral and *unsecured*, to the extent it is enforceable, *for the excess over such value.* The valuation of secured claims may become important in different contexts, *e.g.*, to determine the issue of adequate protection under § 361, impairment under § 1124, or treatment of the claim in a plan pursuant to § 1129(b) of the Code. *This rule permits the issue to be raised on motion by a party in interest.* The secured creditor is entitled to notice of the hearing on the motion and the court may direct that others in the case also receive such notice.
> An adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. *That proceeding is relevant to the basis of the lien itself while valuation under Rule 3012 would be for the purposes indicated above.*

Advisory Committee Note to Rule 3012 (emphasis added).

The Opposition misleading cites to Collier on Bankruptcy, erroneously implying that Collier's adopts a similar position that lien stripping requires an adversary proceeding.  To the contrary, Collier's interprets the Advisory Committee Note to Rule 3012 as unequivocally providing that lien stripping is not subject to Rule 7001, and can be accomplished via motion:

> Under section 506(a) of the Code, secured claims are to be valued and allowed as secured to the extent of the value of the collateral and unsecured for the excess over such value. Rule 3012 implements section 506(a) and provides that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest. One could argue that such a proceeding is one to determine the "extent" of the lien. The Advisory Committee Note to Rule 3012

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value_3012.DOC

refutes this notion by making the distinction that a Rule 7001 adversary proceeding "is relevant to the basis of the lien itself" as distinguished from valuation for the purposes given in examples in that Note, such as to determine the issue of adequate protection under section 361, impairment under section 1124 or treatment of the claim in a plan pursuant to section 1129(b). Thus, under the Bankruptcy Rules, valuation is accomplished by motion under Rule 9014, rather than in an adversary proceeding under Rule 7001.

Collier on Bankruptcy-15th Edition Rev. ¶ 7001.03[1] (2009).  *See also* In re Jones, 152 B.R. 155, 161 (Bankr. E.D.Mich. 1993) ("the advisory committee note relating to that rule distinguishes valuation proceedings from those subject to F.R.Bankr.P. 7001. Therefore debtors need not file a complaint to avoid a creditor's lien under § 506.")

Lehman cites three cases (Matysiak[1], Kressler[2], and McMillian[3]) for the proposition that an adversary proceeding is required.  However, these three cases at best represent a minority view.  *See* In re Robert, 313 B.R. 545, 549 (Bankr.N.D.N.Y. 2004) (citing Kressler and McMillian as "espousing the minority view that an adversary proceeding is required").

A significant number of courts have considered the interplay between Bankruptcy Rules 3012 and 7001.  The overwhelming majority of these cases hold that a valuation under Bankruptcy Rule 3012, and the strip-off of a lien under Section 506(d), may be accomplished solely via motion practice. *See e.g.,* Harmon v. U.S. Through Farmers Home Admin., 101 F.3d 574, 585 (8th Cir. 1996) ("where a creditor files a proof of claim and initiates the valuation process, the debtor is not required to bring an adversary proceeding to strip down the creditor's lien"); In re Millspaugh, 302 B.R. 90, 96-98 (Bankr.D.Idaho 2003) ("the Court concludes the attempt to strip off wholly unsecured liens may occur through a Rule 3012 valuation motion and does not require an adversary proceeding"); In re Yekel, 2006 WL 2662849, *6 (Bankr.D.Or. 2006) (following King, *infra* "no need for an adversary proceeding to determine whether the lien may be stripped off"); In re Kleibrink, 2007 WL 2438359, 6

---

[1] The case, In re Matysiak, 2008 WL 5046545 (Bankr.D.Ariz. 2008), is a one-page unpublished memorandum which contains no analysis and no supporting authority; and thus has little persuasive value.
[2] The case, In re Kressler, 252 B.R. 632, 634 (Bankr.E.D.Pa. 2000), involved lien stripping solely pursuant to a chapter 13 plan provision, noting that the "Debtor never filed a motion to determine the value of Litton's lien under 11 U.S.C. § 506(a) or a complaint to avoid Litton's lien under 11 U.S.C. § 506(d)." Id. at 634.  Kressler is no more than dicta as to whether a Rule 3012 *motion* can strip down a lien under Section 506(d).
[3] The case, In re McMillan, 251 B.R. 484 (Bankr.E.D.Mich. 2000), also involved a chapter 13 plan provision stripping a lien, and did not address the propriety of a *motion* under Bankruptcy Rule 3012.

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value_3012.DOC

1  (N.D.Tex. 2007) ("The Court agrees with the bankruptcy court's analysis that a motion is sufficient to

2  strip a lien where the lien stripping occurs as a result of a § 506(a) valuation"); In re King, 290 B.R.

3  641, 648 (Bankr.C.D.Ill. 2003) ("voiding a lien for lack of collateral value, pursuant to Section 506, is

4  outside the scope of Bankruptcy Rule 7001(2)"); In re Hoskins, 262 B.R. 693, 697 (Bankr.E.D.Mich.

5  2001) ("Since [valuation under Rule 3012] implicates none of the matters itemized in Rule 7001, we

6  reject [lender's] contention that an adversary proceeding is required."); In re Levitt & Sons, LLC, 384

7  B.R. 630, 644 (Bankr.S.D.Fla. 2008) ("It is permissible for the Court consider the valuation of the

8  secured property by motion."); In re Bennett, 312 B.R. 843, 847 (Bankr.W.D.Ky. 2004) ("Accordingly,

9  no adversary proceeding is required and Rule 7001(2) is not triggered when a debtor seeks to value an

10 allegedly wholly unsecured claim against a residence for the purpose of stripping off a lien."); In re

11 Robert, 313 B.R. 545, 549 (Bankr.N.D.N.Y. 2004) ("no adversary proceeding is needed simply to

12 value and declare void a totally unsecured claim"); In re Sadala, 294 B.R. 180, 183 (Bankr.M.D.Fla.

13 2003) ("The majority of courts hold that the appropriate procedure for lien avoidance under Section

14 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is

15 accomplished by motion pursuant to Bankruptcy Rule 3012. No further proceeding is required."); In re

16 Wolf, 162 B.R. 98, 107 (Bankr.D.N.J. 1993) ("a debtor could file a motion under Bankruptcy Rule

17 3012 as the procedural mechanism to void a lien under Code section 506(d)"); In re Fuller, 255 B.R.

18 300, 306 (Bankr.W.D.Mich. 2000) ("Rule 3012 permits a secured claim to be valued through general

19 motion practice. Once the value of the secured claim is determined, the attendant lien is automatically

20 'stripped.' No further proceeding, either by motion or complaint, is required. Therefore, it is

21 unnecessary to refer in Rule 7001 to the inevitable lien avoidance which results from the Section

22 506(a) valuation process."); In re Jones, 152 B.R. 155, 161-162 (Bankr. E.D.Mich. 1993) ("Therefore

23 debtors need not file a complaint to avoid a creditor's lien under § 506. Rather, the appropriate tool for

24 seeking a determination that a lien is (or is not) void pursuant to § 506(d) is a motion to that effect

25 under Rule 3012."); In re Hudson, 260 B.R. 421, 433 (Bankr.W.D.Mich. 2001) (Adversary proceeding

26 is not required to value creditor's collateral and to determine its secured status); In re Dickey, 293 B.R.

27 360, 363 (Bankr.M.D.Pa. 2003) ("Voiding a lien for lack of collateral value, pursuant to Section 506, is

28

outside the scope of Bankruptcy Rule 7001(2) and can be accomplished by motion under Rule 3012"

citing King, supra).[4]

Clearly, the overwhelming weight of authority holds that lien avoidance under Section 506(d) can be accomplished via motion. The rationale for this conclusion was discussed at length by the Bankruptcy Court in In re Millspaugh, 302 B.R. 90 (Bankr.D.Idaho 2003), as follows:

> Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding if a party wishes "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr.P. 7001(2). Must the attempt to strip off Homecoming's lien be pursued through an adversary proceeding under this Rule?
> To answer the question requires strict attention to the terms used in Rule 7001(2). According to the court in King.
>> "[V]alidity" means the existence or legitimacy of the lien itself, "priority" means the lien's relationship to other claims or interests in the collateral, and "extent" means the scope of the property encompassed by or subject to the lien.
> King. 290 B.R. at 648.
>> "Validity" and "priority" are not implicated. Hoskins. 262 B.R. at 696 (lien stripping "has nothing to do with the 'validity' or 'priority' of [the mortgage]"); Hudson. 260 B.R. at 433 ("Validity" means "enforceable" and "priority" is "superiority in rank or position.") That lien stripping addresses the "extent" of the mortgage has likewise been rejected:
>>> Construing "extent" this broadly, however, creates a conflict with Rule 3012. This latter rule ... states that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest." F.R.Bankr.P. 3012 (emphasis added)....
>>> We therefore agree ... that the term "extent," as used in Rule 7001(2), refers not to collateral valuation, but rather to identification of the property to which a lien is alleged to be subject.
> Hoskins. 262 B.R. at 696-97. Collier also believes that the term "extent of a lien" in Rule 7001(2) can be misinterpreted, and rejects the idea that valuation of a lien is a determination of the extent of that lien. ¶ 7001.03 [1], at 7001-11.
>> Many, perhaps most, courts that have considered the precise question have concluded that an adversary proceeding is not required to strip off a wholly unsecured mortgage from a residence. *** [T]he Court today concludes that no adversary proceeding is required and that Rule 7001(2) is not implicated when a debtor seeks to value an allegedly wholly unsecured claim against a residence for purposes of stripping off that lien unless that debtor seeks to otherwise contest the validity, extent or priority of the lien in addition to valuing it.

---

[4] Accord. In re Maynard, 264 B.R. 209, 214 (9th Cir.BAP 2001) (lien was subject to valuation and avoidance under § 506 via motion); Thissen v. Johnson, 2009 WL 1463412, 2 (E.D.Cal. 2009) (referencing bankruptcy court's granted of motion under 506 "treating the claim of [the junior deed of trust] as an unsecured claim in the Plan and for the purpose of removing the lien of [the junior deed of trust]"); Matter of Lampert, 61 B.R. 785, 790 (Bankr.W.D.Wis. 1986) (granting motion to void lien under § 506(d) where "'removed value' of the [collateral] was nil").

> It is important to recognize, as the majority and better reasoned cases do, that stripping off a lien is simply a result that flows under § 506(d) from the valuation of the allegedly unsecured mortgage. *** Therefore, the Court concludes the attempt to strip off wholly unsecured liens may occur through a Rule 3012 valuation motion and does not require an adversary proceeding.

Millspaugh, 302 B.R. at 96-98 (footnotes omitted) (citations omitted in part).

Here, the Moving Debtors seek to value the respective collateral at "zero," and as an "inevitable byproduct" thereto void the respective liens pursuant to 11 U.S.C. §506(d). *See* Sadala, *supra*, 294 B.R. at 183 ("lien avoidance is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Bankruptcy Rule 3012. No further proceeding is required.") As set forth above, the proposed valuation does not contest the validity, extent or priority of Lehman's liens and thus does not implicate Bankruptcy Rule 7001. Accordingly, such relief may be granted via motion, without an adversary proceeding..

### B.    The Motion is Based Upon Lehman's Admissions, and Thus No Evidentiary Hearing is Required.

The Moving Debtors further note that no evidentiary hearing is required. The Motion is premised upon Lehman's own appraisals of the respective projects, that have been filed and submitted by Lehman in this Chapter 11 proceeding. The Opposition does not contest or dispute Lehman's own appraisals. Accordingly, there is not factual or evidentiary dispute.

Lehman's Motions for Relief from Stay, previously filed with this Court in January 2009, admit all of the facts necessary for the Court to grant the Motion. Specifically, Lehman's memorandum in support of their Motions for Relief from Stay ("Lehman's Motion for Relief ") expressly admitted that there was no collateral value supporting the Bickford Second Loan Agreement (referred to by Lehman as the "Bickford Second Lien Loan") and the SCC Palmdale Loan (referred to by Lehman as the "Ritter Ranch Mezz Loan"):

| Loan Facility/ Approximate Amount of Principal Indebtedness as of 1/12/2009 | Approximate Appraised Value of Collateral | Percentage of Value Compared to Outstanding Principal Balance |
|---|---|---|
| Bickford Second Lien Loan/ $30,000,000 | $0[3] | 0% |
| Ritter Ranch Mezz Loan/ $95,000,000 | $0[4] | 0% |

*See* Lehman's Motion for Relief, 10:1-11.  The Debtors request that the Court take judicial notice of the Memorandum in support of Lehman's Motion for Relief, a true and correct copy of which is attached hereto as exhibit "1".

Footnote 3 to Lehman's Motion for Relief from Stay specifically admits that the there is no collateral value supporting the Bickford Second Loan Agreement:

> The Bickford Second Lien Loan is subject to the lien of the first deed of trust securing the SunCal Communities I Guaranty which, in turn, secures the SunCal Communities I Loan. Given the value of the Bickford Ranch Property relative to the outstanding balance of the SunCal Communities I Loan, **there is no collateral value securing the Bickford Ranch Second Lien Loan**.

See Lehman's Motion for Relief, 10:24-26.

Similarly, Footnote 4 to Lehman's Motion for Relief from Stay specifically admits that the there is no collateral value supporting the SCC Palmdale Loan/Ritter Ranch Mezz Loan:

> The Ritter Ranch Mezz Loan is subject to the lien of the first deed of trust securing the Ritter Ranch Mortgage Loan. Given the value of the Ritter Ranch Property relative to the outstanding balance of the Ritter Ranch Mortgage Loan, **there is no collateral value securing the Ritter Ranch Mezz Loan**.

See Lehman's Motion for Relief, 10:26-28.[5]

The pledges of the equity interests in support of the SunCal Communities I Loan Agreement are valueless for the same reason that the pledged interests in support of the SCC Palmdale Loan/Ritter Ranch Mezz Loan are valueless.  In each case, the underlying projects are subject to Lehman's alleged secured claims which exceed the value of the respective project; thus, the equity interests in such entities are valueless by Lehman's own admission.[6]

---

[5] Lehman's Motion for Relief again states:

> The Properties or other Collateral securing the Bickford Second Lien Loan (the outstanding principal balance of which is approximately $30 million) and the Ritter Ranch Mezz Loan (the outstanding principal balance of which is approximately $95 million) have **no residual value** because they also secure SunCal Communities I Loan and Ritter Ranch Mortgage Loan, respectively (which Loans are undersecured as described above).

See Lehman's Motion for Relief, 4:7-13.

[6] Lehman's Motion for Relief states:

> The estimated appraised values of the Properties noted above do not even begin to approach the principal amount of the Loans secured by the Properties, and those Debtors whose equity interests have been pledged to secure, directly or indirectly, certain of the Loans only own the Properties noted in this Motion.

-7-

1    In assessing the value of the collateral supporting the SunCal Communities I Loan Agreement,

2    Lehman's Motion for Relief allocated no value whatsoever to the pledge of the respective equity

3    interests.  Specifically, Lehman's Motion for Relief from Stay asserts that the SunCal Communities I

4    Loan Agreement is supported by only $58.9 million in *real property* collateral.  *See* Lehman's Motion

5    for Relief, 3:27-4:2.  However, in assessing the total value of the collateral supporting the SunCal

6    Communities I Loan Agreement, Lehman's Motion for Relief allocates no additional value whatsoever

7    to SunCal I's pledge of its allowed interest in Acton Estates, SunCal Summit, SunCal Beaumont,

8    SunCal Johannson, SunCal Emerald, and SunCal Bickford.  See Lehman's Motion for Relief, 10:4-5.

9    Accordingly, Lehman's own pleadings and evidence have admitted that the collateral is

10   valueless.  Since there is no evidentiary dispute that the collateral is valueless, there is no need for an

11   evidentiary hearing or any other delay.

### III.

### WHILE BANKRUPTCY RULE 3012 DOES NOT REQUIRE A PARTICULAR CONTEXT OR PURPOSE FOR THE VALUATION, THE MOVING DEBTORS SEEK THE VALUATION FOR THE PURPOSES OF THE PENDING CHAPTER 11 PLAN AND PROPOSED SALE OF THE PROJECTS

17   Lehman argues that the Debtors' Motion must be denied because the Moving Debtors have

18   failed to expressly state the particular "purpose and context for the valuation."  Opposition, 5:28-6:1.

19   While Lehman correctly cites that valuation is discretion, Lehman fails to cite any authority for the

20   proposition that a motion under Rule 3012 should be denied on this ground.

21   In fact, the official comment to Rule 3012 states that no particular context or purpose is required

22   by the Rule:

> This rule [Rule 3012] implements § 506(a) of the Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured. Valuation is important for various reasons in title 11 cases and normally such valuation would arise within the context of the particular purpose for which it is necessary. **The rule provides a general procedure when valuation may be important in the absence of a particular context.**

Lehman's Motion for Relief, 14:24-28.

1    Bankruptcy Code Comment, 1988 Collier Pamphlet Edition, quoted in In re Pourtless, 93 B.R. 23, 25

2    (Bankr.W.D.N.Y. 1988); In re Wolf, 162 B.R. 98, 107 (Bankr.D.N.J. 1993); Ontra, Inc. v. Wolfe  192

3    B.R. 679, 682 (W.D.Va. 1996).

4         Accordingly, on its face, Bankruptcy Rule 3012 authorizes the general valuing of a secured

5    claim in the absence of a particular context.

6         Moreover, Lehman's argument, by necessity, requires Lehman to establish there is some

7    "purpose and context" in this Chapter 11 proceeding, for which the value of the subject collateral is

8    something other than zero.  It would appear that Lehman's argument is wholly academic, and irrelevant

9    given the actual facts of this case.  Lehman has failed to argue, let alone submit evidence, that there is

10   *any* context or purpose in this Chapter 11 proceeding for which the subject collateral would have a

11   positive value.  Again, Lehman's Motion for Relief asserts that all of the Projects are substantially over-

12   encumbered by the *senior* liens alone (i.e., the Projects' values are between 17% to 21% of the

13   outstanding principal balance on the respective senior loans).  Motion for Relief, 10:4-8.  As stated by

14   Lehman itself:

15        The aggregate appraised value of the Collateral is less than 20% of the debts
          secured thereby. Consequently, even if the actual values of the respective
16        Properties were to exceed, by a significant percentage, the values reflected in
          Lehman's appraisals, the values of the respective Properties would still not even
17        come close to just the principal amount of the Loans secured, directly or
          indirectly, by such Properties.
18

19   Lehman's Motion for Relief, 16:20-27.

20        As a result, it is impossible to imagine under what scenario Lehman would allege that the

21   Bickford *Second* Loan and equity pledges have positive value.  Based upon Lehman's own words and

22   numbers, the Projects would need to increase in value approximately five-times over in order for these

23   junior liens to have positive value.

24        Since *just* the aggregate outstanding principal amount of the Loans is *more than
          five times the value of the Collateral*, the value of the Collateral is nowhere near
25        the outstanding amount of the Loans (inclusive of, among other things, accrued
          and unpaid interest and fees and costs to which the lender is entitled).
26

     Lehman's Motion for Relief, 3:20-26 (emphasis in original).

27        While the Moving Debtors believe that the subject secured claims be valued at zero for all

28   purposes in this Chapter 11 proceeding, to the extent the Court requires a "particular purpose" for the

1  valuation, the Moving Debtors designate that the valuation be for the purpose of the pending Chapter 11

2  plan and disclosure statement, as well as the sale of the Debtors' assets contemplated therein.  The

3  hearing on the Debtors' Second Amended Joint Disclosure Statement ("Disclosure Statement") is

4  concurrently set for hearing on July 28, 2009, at 10:00 a.m.  Therefore, the valuation is ripe for

5  decision.

6    It is noteworthy that the Projects are not operating businesses, rather the Projects consist of real

7  property.  Accordingly, the valuation of the Projects will not materially vary based upon the particular

8  purpose or disposition of the property contemplated in the bankruptcy.  The Debtors' business model

9  contemplates the acquisition and entitlement of land, and the sale of such parcels to merchant buildings.

10  The Debtors' disclosure statement states as follows:

11     SunCal's business focuses upon the "development" of residential land. A typical
12     SunCal development begins with the acquisition of one or more parcels of raw land.
   Thereafter, the SunCal team develops a master plan for the acreage that incorporates
13     streets, homes, parks, schools and commercial areas, and then it works with the
   applicable municipal planning authorities (the city, county, state and federal) to secure
14     the necessary approvals or "entitlements" to achieve this plan. This process, which
15     requires the assistance of land planners, civil engineers, architects, lawyers, and other
   land specialists, takes a period of years. Once the master plan is approved, SunCal
16     provides for the grading of the project and the installation of the foundational
   infrastructure (streets, utilities, etc.) and then sells the lots or parcels within the project
17     to merchant builders.

18  Disclosure Statement, 30:4-12.

19    Thus, the proposed disposition of the Projects, for the purposes of any valuation, is an orderly

20  sale of the Debtors' assets.  In contrast to operating businesses, in which a "liquidation value" and a

21  "going concern value" can be widely disparate; the valuations here will be consistent since the Debtors'

22  reorganization (or a sale by a trustee) will contemplate an orderly sale of assets.

23  **IV.**

24  **SECTION 506(d) DOES NOT REQUIRE THAT**

25  **THE CLAIM BE AN "ALLOWED CLAIM"**

26    In one of the stranger contradictions, Lehman first argues that their claims must be "allowed"

27  before the Debtors can obtain relief under Section 506 (Opposition, 5:8-13), and then later in the same

28

MAINDOCS-#131706-v1-SCC_Reply_Mtn_Value_3012.DOC

1    brief, Lehman argues that their claims must first be "disallowed" before relief can be granted

2    (Opposition, 9:21-25).

3        In fact, neither allowance nor disallowance is required as a prerequisite to invoking Rule 3012

4    or Section 506(d).  Bankruptcy Rule 3012 states:

5        The court may determine the value of a *claim* secured by a lien on property in which
         the estate has an interest on motion of any party in interest and after a hearing on
6        notice to the holder of the secured claim and any other entity as the court may direct.

7    F.R.B.P. 3012 (emphasis added).

8        On its face, Rule 3012 is *not* limited to "an allowed claim," rather it merely refers to "a claim".

9    Section 101(5)(A) clearly defines the term "claim" to include a "disputed" claim.  11 U.S.C.

10   § 101(5)(A) ("(5) The term "claim" means-- (A) right to payment, whether or not such right is reduced

11   to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, **disputed**, undisputed,

12   legal, equitable, secured, or unsecured")

13       Similarly, Lehman fails to analyze or discuss the actual statutory language of Section 506(d).

14   Nothing in Section 506(d) requires a claim to be allowed prior to the stripped down of a lien.  Section

15   506(d) provides that "To the extent that a lien secures a *claim* against the debtor that is not an allowed

16   secured claim, such lien is void".  Again, Section 506(d) refers to a "claim" rather than an "allowed

17   claim".

18       Here, the subject claims are not "allowed secured claims" *inter alia* because the value of

19   Lehman's interest in the collateral is zero.  Accordingly, the "allowance" of the claim is not a

20   prerequisite to a determination under Section 506(d).

21       In fact, in 1984, Congress expressly deleted the provision in Section 506(d) which formerly

22   required the court to determine the allowability of the claim prior to lien avoidance:[7]

23   ──────────────

24   [7]  The Opposition also cites In re Wolf, 58 B.R. 354 (Bankr.N.D.Ohio 1986) and In re Hermansen, 84
     B.R. 729 (Bankr.D.Colo. 1988) for the proposition that Section 506(d) requires a secured claim to be
25   *disallowed* as a prerequisite to the avoidance of the lien.  (Opposition, 9:21-25)  However, these
     decisions fail to consider the 1984 amendments to Section 506(d) which deleted this requirement.  See
26   Gaglia v. First Federal Sav. & Loan Ass'n, 889 F.2d 1304, 1309 (3rd Cir. 1989) ("[Lender] argues that
     the claim that a lien secures must be disallowed before it can be avoided. Whatever validity this
27   position may have had under the earlier version of § 506(d), it is untenable after the 1984
     amendments.") *abrogated on other grounds* Dewsnup v. Timm, 502 U.S. 410 (1992).  Accordingly,
28   these holdings are clearly flawed.
         More troubling, Lehman has failed to cite controlling Ninth Circuit authority on this point of law
     which expressly authorizes lien stripping of an undersecured claim pursuant to Section 506(d). See In

> Prior to its amendment in 1984, § 506(d) provided that a lien could not be avoided if "a party in interest [had] not requested that the court determine and allow or disallow such claim under § 502...." 11 U.S.C. § 506(d) (1978). This provision required that the lienholder be given the opportunity for his "day in court" before any action affecting the lien could be taken, and, if no party in interest requested allowance or disallowance of the claim, the lien would survive the bankruptcy case even if the entire personal liability of the debtor were extinguished. 3 *Collier on Bankruptcy*, par. 506.07, at 506-68 to 506-69.
>
> Section 506(d) was amended in 1984 to delete the requirement that a claim be disallowed under § 502 prior to lien avoidance under § 506(d). The amended § 506(d), applicable in this proceeding, incorporates the notice aspect of former § 506(d) by providing that liens will not be avoided solely because a proof of claim has not been filed. 11 U.S.C. § 506(d)(2); *see Matter of Folendore*, 862 F.2d 1537 (11th Cir.1989); 3 *Collier on Bankruptcy*, par. 506.07, at 506-69 to 506-70.
>
> The defendant here has filed a proof of claim in the debtor's bankruptcy proceeding, and the debtor is entitled to avoid the defendant's lien under § 506(d) even though no separate proceeding to disallow her claim has been held. The debtor's action under § 506(d) is a proper means to challenge the defendant's lien. *See also In re Gaglia*, 889 F.2d 1304 (3rd Cir.1989); *In re Garnett*, 88 B.R. 123 (Bankr.W.D.Ky.1988).

In re Richardson, 121 B.R. 546, 549 (Bankr.S.D.Ill. 1990).

As a result, it is now clear that the allowance of a claim, and the valuation of a claim, are analytically distinct, and that valuation of a claim is not dependent upon its allowance or disallowance. As noted by the Court in In re Jones, 152 B.R. 155 (Bankr. E.D.Mich. 1993), the valuation of collateral has no bearing of the allowability of the claim:

> With exceptions not relevant here, the value of collateral securing a claim has no bearing on the allowability of the claim itself. *See* § 502(b) (enumerating the grounds for disallowing a claim). The issue in this case is to what extent (if any) the claims of NBD and Foley are secured, not whether they should be disallowed in whole or in part. *Cf. In re Beard*, 112 B.R. 951, 955 (Bankr.N.D.Ind.1990) ("There are at least three different ways a secured claim may be challenged. The amount of the claim can be questioned, by objecting to its allowance. The value of the lien can be put in issue, by a request to determine secured status. Third, the lien itself can be directly attacked."); *In re Pourtless*, 93 B.R. 23, 25 (Bankr.W.D.N.Y.1988) ("What was involved in this instance ... was not the allowance, validity, or amount of Commonwealth's claim, but a determination of the value of its security. That determination is governed by section 506 of the Code.").

Jones, 152 B.R. at 161.

---

re Weinstein, 227 B.R. 284, 292 (9th Cir. BAP 1998) ("§ 506(d) operates to strip the undersecured creditor's lien from its unsecured claim, in effect reducing the creditor's lien to the present value of the collateral."). See also *Dever v. I.R.S. (In re Dever)*, 164 B.R. 132, 145 (Bankr.C.D.Cal.1994).

1    Lehman's Opposition cites In re Clark, 205 B.R. 140, 142 (Bankr.S.D.Ill. 1997) for the

2    proposition that a creditor's claim must be filed and allowed before a court can value the claim pursuant

3    to § 506(a).  However, Clark is distinguishable as the court declined to value the "claim" because no

4    proof of claim had been filed by the creditor:

5    > Since it would be illogical to value something that does not yet exist, the language of
     > § 506(a) indicates that filing a proof of claim is a prerequisite to a court's
6    > determination of the value of a secured claim.

7    In re Clark, 205 B.R. 140, 142 (Bankr.S.D.Ill. 1997).

8    Here, Lehman has clearly filed proofs of claim which are the subject of the Motion.

9    Accordingly, the Clark case is clearly distinguishable.

10    Moreover, even the Clark holding is suspect as the majority of courts do not require a proof of

11    claim *in order to avoid a lien under 11 U.S.C. § 506(d)*.  See Collier on Bankruptcy-15th Edition Rev.,

12    ¶ 506.06[4][b][i] ("Most courts do not require that a proof of claim be filed prior to lien avoidance

13    under section 506(d).") *citing* In re Brown, 73 B.R. 740 (Bankr.W.D. Wis. 1987); In re Duncan, 60 B.R.

14    345 (Bankr. M.D. Ala. 1986); In re Shumate, 42 B.R. 462, 465 (Bankr. E.D. Tenn. 1984); In re Yoder,

15    32 B.R. 777, 779 (Bankr. W.D. Pa. 1983) *aff'd in relevant part*, 48 B.R. 744 (W.D. Pa. 1984); In re

16    Brager, 28 B.R. 966, 968 (Bankr. E.D. Pa. 1983).  See also In re Dendy, 396 B.R. 171, 177

17    (Bankr.D.S.C. 2008) ("Although Litton chose not to file a proof of claim, the second mortgage lien may

18    still be voided."); In re Herrick, 1997 WL 33475213, 4 (Bankr.C.D.Ill. 1997) ("a debtor could file a

19    motion under Bankruptcy Rule 3012 as the procedural mechanism to void a lien under Code section

20    506(d) *where a secured creditor has not filed a proof of a claim*")

21    Here, the Debtors' Motion does not itself dispute the allowability of Lehman's claims.  Rather,

22    the Motion disputes the *secured status* of the claim (irrespective of whether the claims are subsequently

23    allowed or disallowed in whole or in part).  The Motion merely requests the "secured" status of the

24    claims to be disallowed, and the corresponding liens avoided pursuant to Section 506(d).

25    Lehman's citation to In re Yellowstone Mountain Club, LLC, 2009 WL 982240 (Bankr.D.

26    Mont. 2009) and In re Washington Mfg. Co., 128 B.R. 198 (Bankr.M.D.Tenn. 1991) are distinguishable

27    from the instant case.  In both cases, the courts did not decline the valuation as a matter of law because

28    the claims were not "allowed".  Rather, the courts delayed valuation for pragmatic reasons - the

valuations sought therein necessitated extensive evidentiary hearings and a substantial expenditure of

1   resources by the parties and the court.  Thus both courts determined that it would be wasteful of the

2   parties' and the court's time and resources to determine the value of the secured claim prior to the

3   resolution of the pending adversary action.  <u>Washington Mfg.</u>, 128 B.R. at 204 ("Since the Court is

4   cognizant that the validity of CNA's secured claims is at issue, it would be wasteful for everyone for the

5   Court to engage in a separate valuation hearing."); <u>Yellowstone Mountain Club</u>, 2009 WL 982240, at 4

6   ("Accordingly, any valuation of Credit Suisse's collateral before April 29, 2009, would be a waste of the

7   parties and this Court's resources.")

8          Here, the opposite is true.  The proposed valuation is based upon Lehman's own admissions of

9   value.  Lehman's Opposition does not dispute its prior appraisals.  Accordingly, no evidentiary hearing

10  is necessary.  Accordingly, the Motion can be granted with no further expenditure of anyone's

11  resources.  In contrast, it would be a waste of the parties and this Court's resources to deny the Motion

12  and force the Debtors to re-file the Motion, and have the Court reconsider the Motion at a later time.

**V.**

**<u>LIEN STRIPPING IS PERMISSIBLE IN CHAPTER 11 CASES</u>**

15         The Opposition also suggests that lien stripping is impermissible citing <u>Dewsnup v. Timm</u>, 502

16  U.S. 410 (1992).  However, it is well recognized that the holding of <u>Dewsnup</u> is limited to Chapter 7

17  cases.  As stated in <u>Colliers on Bankruptcy</u>:

> The great majority of post-*Dewsnup* decisions on the issue of "lien stripping" have
> limited the Dewsnup holding to the chapter 7 context and have allowed the practice
> in cases under chapter 11,[17] 12, and 13.  These courts have generally noted the
> Supreme Court's admonition that is was only addressing the facts before it, and
> have likewise asserted that to prohibit lien stripping in reorganization cases would
> not only be inconsistent with pre-Code law, but would also be inconsistent with key
> provisions and principles applicable in the reorganization chapters.

22  <u>Collier on Bankruptcy</u>-15th Edition Rev. ¶ 506.06 (2009), footnote 17 citing <u>Wade v. Bradford</u>, 39 F.3d

23  1126 (10th Cir. 1994); <u>In re Bowen</u>, 174 B.R. 840 (Bankr. S.D. Ga. 1994); <u>In re Dever</u>, 164 B.R. 132,

24  141 (Bankr. C.D. Cal. 1994); <u>In re 680 Fifth Ave. Assocs.</u>, 156 B.R. 726 (Bankr. S.D.N.Y.), aff'd, 169

25  B.R. 22 (S.D.N.Y. 1993), aff'd, 29 F.3d 95, 31 C.B.C.2d 1085 (2d Cir. 1994).

26         In fact, controlling Ninth Circuit case law has consistently allowed lien stripping in Chapter 11

27  cases.  <u>In re Weinstein</u>, 227 B.R. 284, 292 (9th Cir.BAP 1998), the Ninth Circuit BAP specifically

28  held that the <u>Dewsnup</u> holding was not applicable in Chapter 11.

-14-

> In *Dewsnup*, the Supreme Court reached its conclusion based largely on the fact that under pre-Code law real property liens survived bankruptcy unaffected and that there was no evidence Congress intended to change this practice when it enacted the Bankruptcy Code. 502 U.S. at 417-18, 112 S.Ct. at 778. However, the *Dewsnup* Court suggested that its holding was limited to the facts of the case and that its rationale may not be applicable in reorganization cases. *See* 502 U.S. at 418-19, 112 S.Ct. at 779. This is evidenced by the Court's acknowledgment that pre-Code law permitted lien stripping in reorganization proceedings. *Id.* (citing various Bankruptcy Act provisions); *see also Harmon v. U.S.*, 101 F.3d 574, 582 n. 4 (8th Cir.1996) (same). **Since *Dewsnup*, several courts have held that prohibiting lien stripping in Chapter 11 would render §§ 1111(b) and 1129(b) superfluous.** *See Wade*, 39 F.3d at 1129 (citations omitted); *Dever*, 164 B.R. at 145; *In re 680 Fifth Ave. Assocs.*, 156 B.R. 726, 732 n. 7 (Bankr.S.D.N.Y.), *aff'd*, 169 B.R. 22 (S.D.N.Y.1993), *aff'd*, 29 F.3d 95 (2nd Cir.1994); *In re Jones*, 152 B.R. 155, 173 (Bankr.E.D.Mich.1993). **We agree and reject the argument that lien stripping under § 506(d) is not permitted in Chapter 11**.

In re Weinstein, 227 B.R. 284, 292 (9th Cir.BAP 1998). *See also* In re Dever, 164 B.R. 132, 145 (Bankr.C.D.Cal. 1994) (Fenning) ("To read the *Dewsnup* prohibition on lien-stripping into Chapter 11 would render these sections meaningless, violating the rule against interpreting statutes so as to render portions superfluous. Therefore, this Court holds that lien-stripping under Section 506(d) is available in Chapter 11."); In re Zimmer, 313 F.3d 1220, 1227 (9th Cir. 2002) (allowing lien stripping in Chapter 13 cases); Lomas Mortgage U.S.A. v. Wiese, 980 F.2d 1279, 1282 (9th Cir.1992), *vacated and remanded on other grounds*, 508 U.S. 958 (1993) ("Nowhere does *Dewsnup* suggest that its discussion of 'lien stripping' has any impact on the bifurcation of secured claims from unsecured claims for the purposes of Chapter 13."); In re Scott, 376 B.R. 285, 291 (Bankr.D.Idaho 2007) ("The courts in this circuit and district have held that a valueless lien may be stripped" in chapter 13 cases)

The Opposition's citation to In re 1441 Veteran Street Co., 144 F.3d 1288 (9th Cir. 1998) is misleading, as such case merely held that a pre-confirmation valuation will no longer be binding if the reorganization fails and relief from stay is granted to the secured creditor. In 1441 Veteran Street, prior to confirmation, the bankruptcy court valued the secured claim "for purposes of confirming the plan of reorganization." Id. at 1290. Subsequent thereto, confirmation of the plan was *denied*. The secured creditor was granted relief from stay to foreclose, and the bankruptcy case was subsequently dismissed. Id. The secured creditor obtained a state court receiver to collect rents, and foreclosed on the property. A dispute arose with respect to the rents collected by the state court receiver. The debtor's counsel sought to be awarded its fees from the rents collected by the receiver, arguing that the secured claim

1    was capped by the pre-confirmation valuation under Section 506(a).  The Ninth Circuit rejected

2    debtor's counsel argument, concluding that the valuation was for the purposes of the plan, and was not

3    binding in light of the fact that the reorganization had failed and relief from stay was granted.

4        We decline [debtor's counsel's] invitation to read section 506(a) as cutting off a
         secured creditor's right to postpetition rents under section 552(b) after a plan of
5        reorganization has failed. ***
6        In the present case, the bankruptcy court valued the Property in light of Veteran's
         proposed plan of reorganization. Since the bankruptcy court rejected the plan, the
7        valuation of the Property served no purpose under the Bankruptcy Code. Therefore, the
         valuation should not affect Gold Coast's rights to postpetition rents under section 552.
8        The rents generated by the Property constituted Gold Coast's collateral and, thus, were
         an improper source for L & E's award of attorneys' fees.
9        L & E points to no other provision of the Bankruptcy Code which reflects an
10       intention to allow a "strip down" of a creditor's lien based upon a section 506(a)
         valuation when the bankruptcy court denies confirmation of a plan of reorganization
11       and allows a creditor to exercise its state law rights.

12   In re 1441 Veteran Street Co., 144 F.3d 1288, 1292 (9th Cir. 1998) (citations omitted).

13       Accordingly, the 1441 Veteran Street case does not prohibit or limit the pre-confirmation

14   valuing of a secured claim.  Rather, 1441 Veteran Street stands for the proposition that such pre-

15   confirmation valuation will no longer be binding if the reorganization fails and relief from stay is

16   granted to the secured creditor to exercise its state law rights.

17       Subsequent case law in this Circuit has similarly characterized the holding of 1441 Veteran

18   Street as merely a "*res judicata* limitation" on the valuation order.

19       In *In re 1441 Veteran Street Co.*, the Ninth Circuit Court of Appeals held that an
         11 U.S.C. § 506(a) secured/unsecured bifurcation and reduction of secured claim
20       to available collateral value is done only for a specific purpose (in that case, for
         purposes of a chapter 11 plan), and that this bifurcation and reduction of the
21       amount of the secured claim to the value of the collateral available to satisfy that
         claim (after paying any senior liens in full) **has no *res judicata* effect unless the**
22       **plan is confirmed.**

23   In re Akram, 259 B.R. 371, 373 (Bankr.C.D.Cal. 2001) (emphasis added).

24       Therefore, 1441 Veteran Street does not prohibit the relief requested in the Motion; rather, it

25   merely limits the res judicata effect of the order if the reorganization fails and relief from stay is

26   granted.

27

28

-16-

1

2

## VI.

3

## CONCLUSION

4     The Moving Debtors respectfully request that this Court enter an Order (i) valuing certain

5 collateral at zero dollars, which allegedly secure certain disputed proofs of claim filed by the Lehman

6 Entities, pursuant to 11 U.S.C. § 506(a) and Federal Rule of Bankruptcy Procedure 3012, (ii) voiding

7 the corresponding liens, pursuant to 11 U.S.C. § 506(d), (iii) preserving such voided liens for the

8 benefit of the respective bankruptcy estates, and (iv) such other relief as is just and proper.

9 DATED: July 21, 2009             **WINTHROP COUCHOT PROFESSIONAL**
                                   **CORPORATION**

10

11                                 By:   /s/ *Paul J. Couchot*
                                         Paul J. Couchot
12                                       Peter W. Lianides
                                         Payam Khodadadi
13                                 General Insolvency Counsel for the Administratively
                                   Consolidated Debtors-in-Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

1    Joseph A. Eisenberg P.C. (Bar No. 52346)
     E-Mail: jeisenberg@jmbm.com
2    JEFFER, MANGELS, BUTLER & MARMARO LLP
     1900 Avenue of the Stars, 7th Floor
3    Los Angeles, CA 90067
     Phone: (310) 203-8080
4    Fax: (310) 203-0567

5    -and-

6    Edward Soto, Esq. (*pro hac vice* admission pending)
     Shai Waisman, Esq. (*pro hac vice* admission pending)
7    Gregory Hull, Esq. (*pro hac vice* admission pending)
     Elisa R. Lemmer, Esq. (*pro hac vice* admission pending)
8    WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue
9    New York, NY 10153-0119
     Telephone: (212) 310-8000
10   Facsimile: (212) 310-8007

11   ATTORNEYS FOR LEHMAN ALI, INC.
     AND LEHMAN COMMERCIAL PAPER INC.

12

                   **UNITED STATES BANKRUPTCY COURT**
13              **CENTRAL DISTRICT OF CALIFORNIA**
                      **SANTA ANA DIVISION**
14

| | |
|---|---|
| In re | Case No.: 8:08-bk-17206-ES |
| | Chapter 11 |
| Palmdale Hills Property, LLC, and its Related Debtors. | Jointly Administered with Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES |
| Jointly Administered Debtors and Debtors-in-Possession | |

Affects:

☐ All Debtors
☒ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☒ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☒ SunCal Summit Valley, LLC
☒ SunCal Emerald Meadows, LLC
☒ SunCal Bickford Ranch, LLC
☒ Acton Estates, LLC
☐ Seven Brothers, LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☒ SunCal Communities I, LLC
☐ SCC Communities LLC
☐ SunCal Communities III, LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS OF LEHMAN COMMERCIAL PAPER INC. AND LEHMAN ALI, INC. FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**

**Hearing**
Date:    February 20, 2009
Time:    10:00 a.m.
Place:    Courtroom 5A
              411 West Fourth Street
              Santa Ana, CA 92701

**Motion for Relief From Stay**                             **Case No.: 8:08-17206-ES**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS OF LEHMAN COMMERCIAL PAPER INC. AND LEHMAN ALI, INC. FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362

Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York (the "LCPI Bankruptcy Case"), and Lehman ALI, Inc. ("ALI," and collectively, with LCPI, "Lehman"), creditors and parties-in-interest in the above-captioned chapter 11 cases, by and through their undersigned counsel, hereby file their motion (the "Motion") pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") for relief from stay and respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

The Debtors sought and borrowed hundreds of millions of dollars from Lehman since 2005 which they used as the sole financing source to develop the Properties[1] they now own. Approximately $649 million of the principal amount of those Loans is currently outstanding. Prior to the commencement of these chapter 11 cases, each of the Loans had already matured, either on a scheduled maturity date or otherwise by acceleration of the Loan by the lender as a result of existing defaults. Not only were the Loans in default, but the Properties, which, directly or through pledges of equity interests in entities which own certain of the Properties, constitute Lehman's collateral for the $649 million of principal currently outstanding, have declined and continue to decline in value at a precipitous rate. In light of the continuing decline in the value of the Collateral and the Debtors' apparent inability to preserve the Properties, Lehman seeks relief from stay to exercise its right to foreclose. Lehman should be granted relief from stay under

---

[1] Capitalized terms used in this Preliminary Statement, not previously defined, are defined subsequently in this Motion.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    2    Case No.: 8:08-17206-ES
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

section 362(d) because: (i) Lehman's interests in the Collateral are not being adequately protected under section 362(d)(1); (ii) the Debtors do not have any equity in the Collateral and reorganization is not a reasonable prospect for the Debtors, mandating relief under section 362(d)(2); and (iii) Debtors do not have a feasible plan and there is no reasonable possibility that the Debtors will be able to confirm a plan within a reasonable time as required by section 362(d)(3).

The Debtors' inability to comply with the statutory requirements to adequately protect Lehman's interests warrants relief from the automatic stay under section 362(d)(1). The value of Lehman's Collateral continues to erode as a result of the Debtors' failure to address a myriad of critical issues on the Properties that have required attention for many months and have led to significant impairment of value. Actions must be taken and money must be spent to protect and preserve the value of these Properties. Yet, the Debtors lack an income stream and cannot service their debt or otherwise adequately protect Lehman's interests, and do not have any property on which they are able to grant Lehman a replacement lien. Since Lehman has not received adequate protection, it has become an unwilling financier of the Debtors' chapter 11 cases, a result that section 362(d) was specifically enacted to prevent.

The Debtors' lack of equity in the Collateral also warrants relief under section 362(d)(2). Since *just* the aggregate outstanding principal amount of the Loans is *more than five times the value of the Collateral*, the value of the Collateral is nowhere near the outstanding amount of the Loans (inclusive of, among other things, accrued and unpaid interest and fees and costs to which the lender is entitled). As the appraisals of the Properties annexed as exhibits to this Motion reflect:

- The SunCal Communities I Loan, which has an outstanding principal balance of approximately $277.7 million is secured, indirectly through a guarantee, by real

property that, in the aggregate, is currently only worth approximately $58.9 million (or 21% of the outstanding principal balance).

- The Ritter Ranch Mortgage Loan, which has an outstanding principal balance of approximately $246.5 million is secured by real property that is currently only worth approximately $42.9 million (or 17% of the outstanding principal balance).

- The Properties or other Collateral securing the Bickford Second Lien Loan (the outstanding principal balance of which is approximately $30 million) and the Ritter Ranch Mezz Loan (the outstanding principal balance of which is approximately $95 million) have no residual value because they also secure SunCal Communities I Loan and Ritter Ranch Mortgage Loan, respectively (which Loans are undersecured as described above).

Additionally, reorganization is not a viable option for the Debtors because, among the other reasons discussed below, they have no unencumbered assets of value, no income stream, and no prospects for raising financing. Cause therefore exists for relief from the stay.

Finally, the Debtors inability to submit a feasible plan and inability confirm a plan in a reasonable amount of time warrants relief under section 362(d)(3).

- The Debtors cannot submit a feasible plan because they made it clear at this Court's January 15, 2009 status conference that the feasibility of any plan they propose will be premised entirely on their success in a recently devised litigation scheme to equitably subordinate Lehman's claims against the Debtors. Even assuming that feasibility were the only requirement to confirm a plan over the dissent of objecting creditors — something that is obviously not the case — the Debtors' strategy requires them to succeed in subordinating the over $649 million they borrowed and used as the sole source of financing for their projects, something they clearly cannot do because: (i)

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    4
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions DOC

Case No.: 8:08-17206-ES

there is no basis in law for subordinating these secured claims; and (ii) only approximately $30 million of that $649 million is even at issue in the Equitable Subordination Action. Of the $649 million in aggregate outstanding principal under the Loans at issue in this Motion, ALI holds only approximately $30 million of such outstanding principal. The other approximately $619 million of outstanding principal is held by LCPI which is *not* a defendant in the Equitable Subordination Action. LCPI is a debtor and debtor in possession in the LCPI Bankruptcy Case, and the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in order to proceed against LCPI and join it as a defendant in the Equitable Subordination Action. The Debtors previously filed a blanket motion for relief from stay to administer their chapter 11 cases generally, and that motion was denied. They have not sought such relief from stay regarding the Equitable Subordination Action at this juncture, even though it is clearly required.

- Moreover, putting aside whether the Debtors have any prospects for succeeding in the Equitable Subordination Action, even as to the $30 million of outstanding principal of the Loans which is affected by the Equitable Subordination Action (which amounts to less than 5% of the aggregate outstanding principal of all of the Loans), there is no way a plan by the Debtors could be confirmed in a "reasonable amount of time" as is required by the Bankruptcy Code. Alternatively, the Debtors would have to commence making certain monthly payments – something that, for the reasons stated below, is also unlikely to happen. The Debtors' purported plan hinges on the Debtors prevailing in the Equitable Subordination Action – a case that will require many months of discovery and an equal amount of time to litigate, not to even begin to account for appeals – and therefore, cannot be resolved within a "reasonable amount

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    5
Brothers\Pldgs\Memorandum   of    Points    and
Authorities to RFS Motions.DOC                                    **Case No.: 8:08-17206-ES**

22

of time." This Court should not delay and forestall Lehman's ability to foreclose on the Collateral, the value of which continues to depreciate.

Based on the foregoing and as discussed further in this Motion, it is clear that granting relief from the automatic stay is appropriate and warranted under the Bankruptcy Code, and will prevent the value of the Collateral from further diminishment while the Debtors pursue futile, speculative and wasteful litigation.

## II.    JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    BACKGROUND

### A.    General

On or about November 6, 2008 and November 7, 2008 (collectively, the "Initial Petition Dates"), (i) Palmdale Hills Property, LLC ("Palmdale Hills"), (ii) SunCal Beaumont Heights, LLC ("Beaumont"), (iii) SCC/Palmdale, LLC ("Palmdale"), (iv) SunCal Johannson Ranch, LLC ("Johannson"), (v) SunCal Summit Valley, LLC ("Summit"), (vi) SunCal Emerald Meadows, LLC ("Emerald"), (vii) SunCal Bickford Ranch, LLC ("Bickford"), (viii) Acton Estates, LLC ("Acton"), (ix) Seven Brothers, LLC ("Seven Brothers"), (x) SJD Partners, Ltd. ("SJD Partners"), (xi) SJD Development Corp. ("SJD Development"), (xii) Kirby Estates, LLC ("Kirby"), (xiii) SunCal Communities I, LLC ("SunCal I"), and (xiv) SunCal Communities III, LLC ("SunCal III") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On or about November 19, 2008 (collectively, with the Initial Petition Dates, the "Petition Dates"), North Orange Del Rio Land, LLC ("Del Rio"), SCC Communities LLC ("SCC Communities"), and Tesoro SF, LLC ("Tesoro" and collectively, with Palmdale Hills, Beaumont,

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    6
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

Palmdale, Johannson, Summit, Emerald, Bickford, Acton, Seven Brothers, SJD Partners, SJD Development, Kirby, Del Rio, SCC Communities, SunCal I and SunCal III, the "Debtors")) each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

The Debtors' chapter 11 cases are currently being jointly administered. The Debtors are operating their businesses as debtors in possession. The Debtors were formed to develop various residential real estate projects located throughout the western United States. With the exception of Palmdale Hills, the nature of the remaining Debtors' businesses is described on their voluntary petitions as "single asset real estate" as defined in section 101(51)(B) of the Bankruptcy Code.

**B.    The Loans**

    **(1)    The SunCal I Communities Loan**

LCPI is the administrative agent and the sole lender under that certain Credit Agreement, dated as of November 17, 2005, by and among (i) SunCal I and SunCal III, as borrowers, (ii) LCPI, as administrative agent and lender, and (iii) Lehman Brothers, Inc., as arranger, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $395,313,713.37 (as amended and/or supplemented from time to time, the "SunCal Communities I Loan"). The SunCal Communities I Loan is secured, in part, by that certain Guarantee and Collateral Agreement, dated as of November 17, 2005, made by SunCal I, SunCal III, Acton, Emerald, Bickford and Summit (collectively, the "SunCal Communities I Guarantors") in favor of LCPI (as amended, modified and/or supplemented, the "SunCal Communities I Guaranty"). The obligations of the SunCal Communities I Guarantors under the SunCal Communities I Guaranty are secured, in part, by (a) first lien deeds of trust on all real and personal property owned by Bickford (the "Bickford Ranch Property"), all real and personal property owned by Acton (the "Acton Property"), and all real and personal property owned by

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    7
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

Case No.: 8:08-17206-ES

Emerald (the "Emerald Meadows Property"), granted by Bickford, Acton and Emerald, respectively, for the benefit of LCPI, (b) a pledge of equity interests held by SunCal I in each of the following five Debtor subsidiaries of SunCal I:  Summit, Beaumont, Johannson, Emerald, and Bickford (which own, respectively, certain real property referred to as the "Summit Valley Property"[2] (as described below), the "Beaumont Heights Property" (as described below), the "Johannson Ranch Property" (as described below), the Emerald Meadows Property, and the Bickford Ranch Property), and (c) a pledge of equity interests held by Summit in each of the following two Debtor subsidiaries of Summit:  Seven Brothers and Kirby (which own, respectively, portions of the Summit Valley Property).

     (2)     **The Bickford Second Lien Loan**

     ALI is the owner and holder of that certain Promissory Note Secured by a Deed of Trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by Bickford, as borrower, and payable to the order of ALI (as amended and/or supplemented from time to time, the "Bickford Second Lien Loan").  The Bickford Second Lien Loan is secured, in part, by a second lien deed of trust on the Bickford Ranch Property granted by Bickford for the benefit of ALI.

     (3)     **The Ritter Ranch Mortgage Loan and the Ritter Ranch Mezz Loan**

     LCPI is the administrative agent and the sole lender under that certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and lender, and Lehman Brothers Inc., as arranger, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $264,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mortgage Loan").  The Ritter Ranch

---

[2] The Summit Valley Property is owned by three of the Debtors: Summit, Seven Brothers, and Kirby.

1  Mortgage Loan is secured, in part, by a first lien deed of trust on all real and personal property

2  owned by Palmdale Hills (the "Ritter Ranch Property") granted by Palmdale Hills for the benefit

3  of LCPI.

4          LCPI is also the administrative agent and sole lender under that certain Mezzanine Credit

5  Agreement, dated as of March 30, 2007, among Palmdale, as borrower, LCPI, as administrative

6  agent and lender, and Lehman Brothers, Inc., as arranger, pursuant to which LCPI provided a

7  revolving credit facility in the maximum aggregate principal amount of approximately

8  $95,000,000 (as amended and/or supplemented from time to time, the "Ritter Ranch Mezz

9  Loan"). The Ritter Ranch Mezz Loan is secured, in part, by a pledge of Palmdale's equity

10 interest in Palmdale Hills.

11         Prior to the Petition Dates, the borrowers and guarantors under each of the SunCal

12 Communities I Loan, the Bickford Second Lien Loan, the Ritter Ranch Mortgage Loan, and the

13 Ritter Ranch Mezz Loan (collectively, the "Loans") defaulted on their obligations under such

14 loans which defaults remain uncured. There is no equity in any of the real property that has been

15 mortgaged to LCPI or ALI as security for the applicable Debtors' obligations under the Loans

16 (collectively, the "Properties").

17 **C.    Value of the Collateral**

18         Although the Loans are secured by personal property and fixtures in addition to real

19 property, the primary value of the collateral securing the Loans resides in the Properties and the

20 equity interests referenced in this Motion (collectively, all of the collateral securing the Loans, the

21 "Collateral"). As is set forth in the table below, LCPI and ALI are substantially undersecured

22 with respect to their Loans.

| Loan Facility/ Approximate Amount of Principal Indebtedness as of 1/12/2009 | Approximate Appraised Value of Collateral | Percentage of Value Compared to Outstanding Principal Balance |
|---|---|---|
| SunCal Communities I Loan/ $277,742,750 | $58,900,000 | 21% |
| Bickford Second Lien Loan/ $30,000,000 | $0[3] | 0% |
| Ritter Ranch Mortgage Loan/ $246,526,344 | $42,900,000 | 17% |
| Ritter Ranch Mezz Loan/ $95,000,000 | $0[4] | 0% |

It goes without saying that the value of Collateral securing each of the Loans cited above does not even begin to approach the outstanding *principal* amount of the debt – let alone the total amount of the Loans including interest and fees. The Debtors simply have no equity in the Collateral, and the value of the Collateral, particularly in this economic climate, continues to decline on a daily basis.

IV.    **RELIEF REQUESTED AND BASIS THEREFORE**

By this Motion, Lehman requests that the Court enter an order, pursuant to sections 362(d)(1), (2), and (3) of the Bankruptcy Code, granting Lehman relief from the automatic stay to exercise its right to foreclose on the Collateral securing the Loans.

---

[3] The Bickford Second Lien Loan is subject to the lien of the first deed of trust securing the SunCal Communities I Guaranty which, in turn, secures the SunCal Communities I Loan. Given the value of the Bickford Ranch Property relative to the outstanding balance of the SunCal Communities I Loan, there is no collateral value securing the Bickford Ranch Second Lien Loan.

[4] The Ritter Ranch Mezz Loan is subject to the lien of the first deed of trust securing the Ritter Ranch Mortgage Loan. Given the value of the Ritter Ranch Property relative to the outstanding balance of the Ritter Ranch Mortgage Loan, there is no collateral value securing the Ritter Ranch Mezz Loan.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        10
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions DOC

Specifically, Lehman requests an order modifying the automatic stay in the chapter 11 cases of the following Debtors so as to take the contemplated actions set forth in the table below:

| Debtor | Proposed Action |
|---|---|
| SunCal I | • Foreclosure of pledged equity interests in Emerald, Beaumont, Summit, Johannson, and Bickford |
| Emerald | • Foreclosure of Emerald Meadows Property (real and personal property) |
| Acton | • Foreclosure of Acton Property (real and personal property) |
| Bickford | • Foreclosure of Bickford Ranch Property (real and personal property) |
| Palmdale | • Foreclosure of pledged equity interests in Palmdale Hills |
| Palmdale Hills | • Foreclosure of Ritter Ranch Property (real and personal property) |
| Summit | • Foreclosure of pledged equity interests in Kirby and Seven Brothers. |

Although this Court must order relief from the automatic stay if it finds that the requirements under *any* of sections 362(d)(1), (2), or (3) are met, Lehman respectfully submits that cause exists under each of these sections of the Bankruptcy Code to grant the requested relief.

Section 362(d) of the Bankruptcy Code provides as follows:

> On the request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . by terminating, annulling, modifying, or conditioning such stay—
>
>     (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
>     (2)    with respect to a stay of an act against property under subsection (a) of this section, if
>
>         (A) the debtor does not have an equity interest in such property and
>
>         (B) such property is not necessary to an effective reorganization . . [or]

F:\Apps\BankRuptcy\Macbank\L folder\Lehman Brothers\Pldgs\Memorandum of Points and Authorities to RFS Motions.DOC      11      Case No.: 8:08-17206-ES

28

(3)    with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief . . . or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A)    the debtor has filed a plan of reorganization that has *a reasonable possibility of being confirmed within a reasonable time . . .*

11 U.S.C. § 362(d)(1) and (3) (emphasis added).[5]

Lehman submits that it is entitled to relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code because (a) Lehman's interests in the Collateral are not being adequately protected, (b) as noted in the table set forth above, the Debtors do not have any equity in the Properties, and (c) there is no reasonable possibility that the Debtors will be able to confirm a plan within a reasonable time.

**A.    Lehman's Interests in the Collateral Are Not Being Adequately Protected.**

As noted above, section 362(d)(1) requires a court to grant relief from stay if it finds "cause" exists including lack of adequate protection of a party in interest. *See GSB I, LLC v. A Partners, LLC (In re A Partners, LLC),* 344 B.R. 114, 126-27 (Bankr. E.D. Cal. 2006) ("The language of subsection 362(d)(1) is clear and unambiguous; the court *shall* grant relief for 'cause.'") (emphasis in original) (citations omitted). Although the term "cause" is not defined in the Bankruptcy Code, factors considered by a court in determining "cause" include the lack of adequate protection, interference with the debtor's bankruptcy, injury to the debtor if the stay is modified, and the balance of harms. *See In re A Partners, LLC,* 344 B.R. at 127; *see also Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142 (2nd Cir. 1999) (citing *Sonnax Industries,*

---

[5] A creditor in a single asset real estate case is not prohibited from seeking relief under 362(d)(1) or (2) when appropriate because the provisions of section 362(d) are not mutually exclusive. *See, e.g., In re Valdez,* 324 B.R. 296, 301 (Bankr. S.D. Tex. 2005) ("While not exclusive, § 362(d) provides three ways under which a creditor can seek to lift the automatic stay.").

F:\Apps\BankRuptcy\Macbank\L folder\Lehman Brothers\Pldgs\Memorandum of Points and Authorities to RFS Motions.DOC    12    **Case No.: 8:08-17206-ES**

29

1   *Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2nd. Cir.

2   1990), (quoting H.R. Rep. No. 95-595, at 343-44 (1977)).  Cause can be "any reason cognizable

3   to the equity power and conscience of the court as constituting an abuse of the bankruptcy

4   process." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

5

6          It is important to note, that the law is clear – the burden is on the debtor to show that a

7   party seeking relief from the stay is adequately protected. *See* 11 U.S.C § 362(g).  Section 361 of

8   the Bankruptcy Code enables a debtor to provide adequate protection by (i) making cash

9   payments or periodic payments to the party entitled to adequate protection, (ii) providing

10  replacement liens or additional liens to the extent of the decline in value of the party's interest or

11  (iii) providing other property (other than an administrative expense claim) that will entitle the

12  entity to realize the "indubitable equivalent" of its interests in the property. *See* 11 U.S.C. § 361.

13  Here, the Debtors have no ability to adequately protect Lehman's interest in any form

14  whatsoever.  The Debtors have no income stream, so they cannot pay debt service.  They have no

15  additional property to encumber, so they cannot give Lehman a replacement lien or give Lehman

16  property that will enable Lehman to realize the "indubitable equivalent" of its interest in the

17  Collateral.

18

19         In *In re A Partners*, a senior deed of trust holder moved for relief from the automatic stay

20  in a chapter 11 case filed by a junior lienholder.  In concluding that relief was warranted, the

21  court examined the factors noted above and concluded that where the mortgagor's obligations to

22  the mortgagee were in default, the debt was increasing, and the debtor (the junior lienholder)

23  could not pay adequate protection, cause existed to modify the stay to allow foreclosure. *See id.*

24  Even though the debtor contended that the financial collapse of the mortgagor (a non-debtor)

25  would have a catastrophic effect on the debtor's bankruptcy, the court was not persuaded that this,

26

27

28
F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        13
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions DOC                                          Case No.: 8:08-17206-ES

1  without more, was sufficient to maintain the stay.  The court reasoned, "[n]ot every problem can

2  be fixed in the bankruptcy court, regardless of how catastrophic the possible result." *Id.*

3      Courts have lifted the automatic stay where, among other things, the debtor could not

4  provide debt service and there was no equity cushion in the property at issue to provide adequate

5  protection. *See, e.g., In re Henderson,* 395 B.R. 893 (Bankr. D.S.C. 2008) (finding that cause

6  existed to modify the stay under section 362(d)(1) where the debtor could not make adequate

7

8  protection payments and evidence indicated that debt had increased and property value had

9  declined); *Home Federal Savings & Loan Ass'n v. Grantsville Hotel Assocs. (In re Grantsville*

10  *Hotel Assocs.),* 103 B.R. 509, 510-11 (Bankr. D. Del. 1989) (finding that where the debtor could

11  not make debt service, cause existed to lift the automatic stay); *cf. In re Avila,* 311 B.R. 81, 84

12

13  (Bankr. N.D. Cal. 2004) ("Where a creditor is adequately protected by a large equity cushion, the

14  debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the

15  creditor would result, relief from stay should not automatically flow from a default in payment.").

16      Here, Lehman's interests in the Collateral are not being adequately protected, and the

17  Debtors' financial predicament makes them unable to provide any form of adequate protection

18  whatsoever.  The Debtors are in default on their obligations under the Loans, approximately $649

19  million in aggregate principal is currently outstanding under the Loans, and additional interest

20  and charges continue to accrue each month.  The Debtors, however, do not have any income

21  stream and thus, are wholly unable to provide any form of debt service to Lehman.  Furthermore,

22

23  there is no equity cushion in the Collateral that would otherwise provide Lehman with adequate

24  protection.  The estimated appraised values of the Properties noted above do not even begin to

25  approach the principal amount of the Loans secured by the Properties, and those Debtors whose

26  equity interests have been pledged to secure, directly or indirectly, certain of the Loans only own

27  the Properties noted in this Motion.

28  F:\Apps\BankRuptcy\Macbank\L    folder\Lehman        14            Case No.: 8:08-17206-ES
    Brothers\Pldgs\Memorandum    of    Points    and
    Authorities to RFS Motions.DOC

Moreover, the Properties are diminishing in value. As the appraisals of the Properties annexed as exhibits to this Motion reflect, in the past 14 months, the residential real estate market has cooled, land sale activity has diminished, and work on undeveloped land has stopped. Moreover, as the Debtors concede, additional work must be performed on the Properties to stabilize them physically (e.g., security issues need to be addressed, utilities must be paid, entitlements need to be preserved, and other remedial acts must be taken, to name only a few). These actions are essential to maintaining the value of these Properties and preventing further significant deterioration in value. Although, as direct or indirect owners of the Properties, the Debtors are solely obligated to manage, maintain and preserve the Properties, the Debtors have no funds with which to do so. They have also failed to discharge their duties as owners to address life-safety issues affecting the Properties. Instead, they have demanded and continue to demand that their lenders continue to finance their obligations as owners despite the fact that the Loans have matured, remain unpaid and in default, and are abysmally undersecured. Recognizing that the Debtors have failed to address even the most critical and basic life-safety issues affecting the Properties, Lehman offered to fund certain critical and necessary expenses but the Debtors refused Lehman's offer, demanding, as a condition to accepting any such offer, that Lehman also pay management fees to the Debtors in order for them to manage *their own* Properties, an obligation that, as owners, they already have. Thus, while the Debtors hold Lehman hostage, critical actions and expenses necessary to preserve and protect the Properties are not being taken or paid and, consequently, the value of the Properties is eroding. The Debtors themselves acknowledge in their motion for order authorizing surcharge and, in the alternative, use of cash collateral filed in this Court on January 16, 2009 (the "Surcharge/Cash Collateral Motion") that certain expenses are "necessary for the maintenance and preservation of the value of the

F:\Apps\BankRuptcy\Macbank\L   folder\Lehman            15
Brothers\Pldgs\Memorandum   of   Points   and                              **Case No.: 8:08-17206-ES**
Authorities to RFS Motions.DOC

respective Projects [which includes each of the Properties]." Surcharge/Cash Collateral Motion, p.12, lines 23-24.

Without receiving some form of adequate protection, Lehman has become an unwilling financier of the Debtors' chapter 11 cases – something that section 362(d) was designed to prevent. A secured creditor, such as Lehman, who does not receive adequate protection should not be forced to shoulder the risks and costs of the debtor's bankruptcy, particularly where its collateral is declining in value precipitously. Accordingly, Lehman respectfully submits that cause exists to modify the automatic stay under section 362(d)(1) of the Bankruptcy Code and allow Lehman to foreclose on the Collateral, and thus prevent further diminution of Lehman's interest.

**B.    Cause Exists To Modify the Automatic Stay Under Section 362(d)(2)**

Under section 362(d)(2) of the Bankruptcy Code, a court must grant relief from the automatic stay with respect to real property if (A) the debtor does not have any equity interest in the property and (B) the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). For property to be "necessary to an effective reorganization," reorganization must be a reasonable prospect for the debtor. *See In re Henderson*, 395 B.R. at 900 (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)).

First, as shown above, the Debtors have no equity in the Collateral. The aggregate appraised value of the Collateral is less than 20% of the debts secured thereby. Consequently, even if the actual values of the respective Properties were to exceed, by a significant percentage, the values reflected in Lehman's appraisals, the values of the respective Properties would still not even come close to just the principal amount of the Loans secured, directly or indirectly, by such Properties.

1    Second, reorganization is not a reasonable prospect for the Debtors. The Debtors have no

2    unencumbered assets of value, absolutely no income stream, and no prospects for raising any

3    financing. Taken together, these factors alone call the feasibility of any prospective plan into

4    question. Furthermore, to confirm a plan over the objection of secured creditors, the Debtors

5    must be able to satisfy the requirements of, among others, section 1129(b)(2)(A) of the

6    Bankruptcy Code.[6] Satisfying the "cramdown" provisions of section 1129(b) would include, *at a*

7    *minimum*, being able to provide Lehman with deferred cash payments equal to at least the

8    allowed amount of Lehman's claims. Given that the Debtors have no income stream and

9    absolutely no prospect for financing – except for the proceeds of the Equitable Subordination

10   Action which has not even been filed against LCPI and which, as discussed in more detail below,

11   is speculative under the best of circumstances – and in light of the fact that the Debtors lack any

12   equity interest in the Properties, it is clear that the Debtors cannot meet the cramdown provisions

13   of section 1129(b)(2)(A). As such, there is no meaningful prospect for reorganization.

14   Accordingly, relief from the automatic stay under section 362(d)(2) is warranted.

15   **C.    There is No Reasonable Possibility That a Plan Will Be Confirmed Within a
         Reasonable Time**

16        Section 362(d)(3) provides that, unless the debtor files a plan of reorganization within

17   ninety (90) days after the order for relief that has a "**reasonable possibility of being confirmed**

18   **within a reasonable time,**" a creditor secured by a single asset real estate shall be entitled to

19   obtain relief from the automatic stay. 11 U.S.C. § 362(d)(3)(A) (emphasis added). This

20   provision of the Bankruptcy Code addresses Congress's concern about the "**delay in the**

21   **bankruptcy process and the resulting unfairness to secured lenders when single asset real**

22   **estate projects are involved.**" *Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.)*, 191 B.R.

---

[6] This analysis assumes that the Debtors would have another class of creditors that would be an impaired accepting class. *See* 11 U.S.C. § 1129(a)(10).

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman         17        **Case No.: 8:08-17206-ES**
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

320, 326 (Bankr. E.D. Va. 1996) (quoting the Senate Report: "'[t]his amendment will ensure that the automatic stay provision is not abused, while giving the debtor the opportunity to create a workable plan of reorganization.'") (emphasis added). Section 362(d)(3) is meant to afford relief to secured creditors in single asset real estate cases where "(1) the owner of an encumbered building is attempting to avoid the loss of the building to a grossly undersecured lender and (2) there is no real hope that a viable and confirmable plan can be produced." *Id.* (citations omitted).

The Debtors admit in their voluntary petitions that (with the exception of Palmdale Hills) each Debtor owning real property upon which Lehman seeks to foreclose is a single asset real estate within the meaning of the Bankruptcy Code.[7] The Loans are secured directly or indirectly by the Collateral. The Debtors are attempting to delay the inevitable—foreclosure of the Collateral by Lehman—despite the fact that there is no possibility whatsoever that any plan they propose will be confirmed. As such, under the Bankruptcy Code and consistent with Congress's intent, the secured lenders are entitled to relief from the automatic stay.

A finding that a debtor's plan of reorganization has a reasonable possibility of being confirmed under section 362(d)(3) requires that the debtor submit a plan that is feasible. Notably, the Debtors have not yet proposed a plan, have provided no evidence that they can obtain the funding necessary to consummate any proposed plan, and have not illustrated in any way that they can generate sufficient cash to fund operations. Absent committed funding, any plan the Debtors propose cannot be confirmed – a fact made even more ominous by the current economic environment.[8]

---

[7] The Bankruptcy Code defines "single asset real estate" as real property constituting a single property or project, other than residential real property with fewer than 4 residential units, that generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental. 11 U.S.C. § 101(51)(B).

[8] This fact is doubly true to the extent the Debtors fashion a plan that requires them to obtain viable exit

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    18    Case No.: 8:08-17206-ES
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

35

To distract from their inability to propose a feasible plan and buy time, the Debtors have advised this Court that the feasibility of *any* plan they propose will be premised on the Debtors' ability to succeed in a litigation to equitably subordinate Lehman's claims against the Debtors and certain other affiliated debtors whose chapter 11 cases are also pending before this Court, which litigation is currently pending as Adversary Proceeding No. 8:09-ap-01005 in the above-captioned chapter 11 cases (the "Equitable Subordination Action"). However, the Lehman lender defendants in the Equitable Subordination Action are ALI, Northlake Holdings LLC and OVC Holdings LLC. LCPI is not a defendant in that action and the Debtors have not sought relief from the automatic stay in the LCPI Bankruptcy Case to include LCPI as a defendant in the Equitable Subordination Action. As noted above, of the $649 million in aggregate outstanding principal under the Loans at issue in this Motion, ALI holds approximately $30 million in outstanding principal, and Northlake Holdings LLC and OVC Holdings LLC do not hold any of the Loans. The other approximately $619 million of outstanding principal is held by LCPI which, as stated above, is not a defendant in the Equitable Subordination Action.[9] Moreover, even assuming that the Debtors ultimately succeeded in their unprecedented blunderbuss attempt to subordinate ALI's secured claims and, if successful in obtaining relief from the automatic stay in the LCPI Bankruptcy Case, LCPI's secured claims, to those of unsecured creditors – a theory which has no basis in law – under section 362(d)(3), the plan would still be required to have a "reasonable

---

financing. Even the DIP financing the Debtors were previously negotiating with D.E. Shaw was speculative at best. To begin with, the purported DIP financing from D.E. Shaw previously disclosed to Lehman contained so many disclaimers and conditions, that it was clear that lender had not actually committed to make the financing. In fact, the proposal expressly stated it was not a commitment. Further, the proposed DIP imposed onerous time limitations, interest rates, and break-up fees and required that the DIP lender obtain a priming lien on all of the Debtors' projects and those projects owned by their affiliate-debtors whose cases are also currently pending before this Court and even required that the lender obtain a lien on the Pacific Point project, which is no longer owned by any of the Debtors or their affiliates.

[9] Because the Debtors would need to obtain relief from the automatic stay in the LCPI Bankruptcy Case in order to add LCPI as a defendant in the Equitable Subordination Action, any resolution of the Equitable Subordination Action would be even further delayed.

possibility of being confirmed within a reasonable time" (or the Debtors would have to have commenced making certain monthly payments – something that, for the reasons stated above, is also unlikely to happen).

The Equitable Subordination Action will require several months to over a year for discovery and litigation, to only then begin the process of likely appeals, at the cost of several hundreds of thousands if not millions of dollars that the Debtors do not have.[10] There is simply no plausible scenario in which such litigation is concluded and a plan of reorganization is confirmed within a "reasonable amount of time." *See In re A Partners, LLC,* 344 B.R. at 126 ("A chapter 11 plan cannot be based upon a visionary scheme… The Debtor's 'plan' for opposing this motion for relief from stay is fraught with speculation and uncertainty regarding implementation and feasibility, and it further appears to be unconfirmable as a matter of law. The court cannot find that an 'effective reorganization' is in prospect.") (citation omitted); *In re Edwards,* 1996 WL 407253 (Bankr. E.D. Pa. Jun. 17, 1996) ("Judging from the effort involved in settlement negotiations, the early thrusts and parries of the high powered counsel retained by the various combatants, the parties take this litigation quite seriously…The litigation is in its infancy and [] is complex, and will involve thousands of hours of legal time and many expert witnesses…Judging from the posture of the parties on the preliminary matters that have engaged this Court to date, it promises to be a long and hotly contested battle. On this basis alone we find 'no reasonable possibility of a successful reorganization within a reasonable time.") (citation omitted)

---

[10] In fact, in the Declaration of Bruce V. Cook in Support of Debtor's [*sic*] Opposition to Motions for Relief from the Automatic Stay Filed By: (1) Staats Construction, Inc.; (2) Sierra Cascade Construction, Inc. (MC 019273); (3) Sierra Cascade Construction, Inc. (MC19382); and (4) Bova Contracting Corporation, dated January 20, 2009 and filed in this Court (the "Cook Declaration"), it is acknowledged that SCC Acquisitions, Inc. ("SCC"), the indirect parent of, among others, Palmdale Hills, has been funding most of the Debtors' chapter 11 fees and costs and the prosecution of the Equitable Subordination Action but that, "if the stay does not apply or an injunction is not granted, there may be no funding for the Equitable Subordination Action . . ." Cook Declaration, p. 6, lines 27-28.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman    20
Brothers\Pldgs\Memorandum    of    Points    and
Authorities to RFS Motions.DOC

Case No.: 8:08-17206-ES

Moreover, for the reasons stated above, it is doubtful that the Debtors would be able to satisfy the requirements of section 1129 of the Bankruptcy Code to confirm any proposed plan. Because it is highly unlikely that a plan can be confirmed within a reasonable time period, the automatic stay should be lifted so that Lehman may exercise its rights to foreclose on the Collateral. *See, e.g., In re Saddlebrook Subdivision, LLC,* 2008 WL 5146541, at *3-4 (Bankr. E.D.N.C. Dec. 8, 2008) (granting relief from stay where the debtor's plan required additional funding that it could not obtain and thus had no reasonable possibility of being confirmed within a reasonable time); *In re Lakewood Partners,* 1994 Bankr. LEXIS 1291, *17 (Bankr. E.D. Pa. Jul. 26, 1994) (concluding that where prospects of debtor's recovery on litigation was speculative and litigation proceeds were the debtor's only significant source of plan funding, confirmation of the plan would be unlikely).

Based on the foregoing, Lehman is entitled to relief from the automatic stay pursuant to section 362(d)(1), (2), and (3) of the Bankruptcy Code.  Accordingly, the Court must modify the automatic stay to allow Lehman to exercise its right to foreclose on the Collateral.

## V.   **WAIVER**

Lehman respectfully requests that this Court waive the provisions of Bankruptcy Rule 4001(a)(3).  The value of the Collateral is continuing to diminish with each passing day.  Waiver of the Bankruptcy Rule 4001(a)(3) will ensure that Lehman is able to take action without further diminution in value and risk to its interests.

## VI. **NOTICE**

Notice of this Motion has been provided to (a) counsel for the Debtors and (b) the United States Trustee in this District.  Lehman submits that no other or further notice need be provided.

No previous motion or application for the relief sought herein has been made to this or any other Court.

F:\Apps\BankRuptcy\Macbank\L    folder\Lehman
Brothers\Pldgs\Memorandum   of   Points   and
Authorities to RFS Motions.DOC

21

1    WHEREFORE, Lehman respectfully requests that this Court enter an order modifying the

2    automatic stay to the extent necessary to permit Lehman to foreclose on the Collateral, and grant

3    Lehman such other and further relief as is just.

4

5    Dated:  January 23, 2009

6                                                              _____ /s/ Joseph A. Eisenberg P.C. _____

7                                                              Joseph A. Eisenberg P.C. (Bar No. 52346)
                                                             E-Mail: jeisenberg@jmbm.com
8                                                            JEFFER, MANGELS, BUTLER & MARMARO
                                                             LLP
9                                                            1900 Avenue of the Stars, 7th Floor
                                                             Los Angeles, CA 90067
10                                                           Phone: (310) 203-8080
                                                             Fax: (310) 203-0567
11
                                                             -and-
12
                                                             Edward Soto, Esq. (*pro hac vice* admission pending)
13                                                           Shai Waisman, Esq. (*pro hac vice* admission
                                                             pending)
14                                                           Gregory Hull, Esq. (*pro hac vice* admission pending)
                                                             Elisa R. Lemmer, Esq. (*pro hac vice* admission
15                                                           pending)
                                                             WEIL, GOTSHAL & MANGES LLP
16                                                           767 Fifth Avenue
                                                             New York, NY 10153-0119
17                                                           Telephone: (212) 310-8000
                                                             Facsimile: (212) 310-8007
18
                                                             **ATTORNEYS FOR LEHMAN ALI, INC. AND**
19                                                           **LEHMAN COMMERCIAL PAPER INC.**

20

21

22

23

24

25

26

27

28
F:\Apps\BankRuptcy\Macbank\L   folder\Lehman          22
Brothers\Pldgs\Memorandum   of   Points   and                              Case No.: 8:08-17206-ES
Authorities to RFS Motions.DOC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Jeffer, Mangels, Butler & Marmaro, LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067.

The foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS OF LEHMAN COMMERCIAL PAPER INC. AND LEHMAN ALI, INC. FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 23, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Richard W Esterkin    resterkin@morganlewis.com
- Alan J Friedman    afriedman@irell.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Michelle Hribar    mhribar@rutan.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Debra Riley    driley@allenmatkins.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach    jwallach@bergerkahn.com

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On January 21, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Honorable Erithe A. Smith
United States Bankruptcy Court
**ATTN: INTAKE**
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 23, 2009 | Wilma Escalante | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2

3

# PROOF OF SERVICE OF DOCUMENT

4

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address
is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

5

6

7

A true and correct copy of the foregoing document described as **DEBTORS' REPLY TO OPPOSITION
OF LEHAMN LENDERS RE MOTION FOR ORDER: (1) VALUING COLLATERAL OF
CERTAIN DISPUTED CREDITORS; (2) AVOIDING CERTAIN DISPUTED LIENS
PURSUANT TO 11 U.S.C. §506(d); AND (3) PRESERVING AVOIDED LIEN(S) FOR THE
RESPECTIVE ESTATES PURSUANT TO 11 U.S.C. § 551** will be served or was served (a) on the

8

judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

9

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via
NEF and hyperlink to the document. On July 21, 2009, I checked the CM/ECF docket for this bankruptcy case or

10

adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive
NEF transmission at the email address(es) indicated below:

11

12

13

☒  Service information continued on attached page

14

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy

15

case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States
Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge

16

here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the
document is filed.

17

18

19

☐  Service information continued on attached page

20

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each

21

person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 21, 2009 I served the following
person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method),
by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal

22

delivery on the judge will be completed no later than 24 hours after the document is filed.

23

24

☒  Service information continued on attached page

25

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and
correct.

26

| July 21, 2009 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

27

28

NEF SERVICE LIST
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Brendt C Butler    BButler@rutan.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com
- Mike D Neue    mneue@thelobelfirm.com, csolorzano@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com

1
- Penelope Parmes    pparmes@rutan.com

2
- Ronald B Pierce    ronald.pierce@sdma.com
- Raymond A Policar    hausermouzes@sbcglobal.net

3
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com

4
- Martha E Romero    Romero@mromerolawfirm.com
- William D Schuster    bills@allieschuster.org

5
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

6
- Michael St James    ecf@stjames-law.com
- Todd L Turoci    tturoci@aol.com

7
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach    jwallach@bergerkahn.com

8
- Christopher T Williams    ctwilliams@venable.com

9
- David M Wiseblood    dwiseblood@seyfarth.com
- Arnold H Wuhrman    Wuhrman@serenitylls.com

10
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

11
## SERVICE VIA E-MAIL

12
Wayne Abb, Esq. - wayneabb@gmail.com
Atty for P. Volkerts –cmartin@pprlaw.net

13
Atty for Bond Safeguard & Lexon – Mark E. Aronson, Esq.mea@amclaw.com;
Counsel to Fenway – Dewey & LeBoeuf - igoldstein@DeweyLeBoeuf.com

14

15
Lehman Ali, Inc. and Lehman Commercial, OVC    Danske Bank A/S, London Branch

16
Holdings    c/o Venable LLP
c/o Weil, Gotshal & Manges LLP    ccallari@Venable.com

17
elisa.lemmer@weil.com    Timothy J. Gorry - tgorry@Venable.com
Edward.soto@weil.com

18
Nellie.camerik@weil.com
Shai.waisman@weil.com

19
michael.bond@weil.com)

20
Lehman Ali, Inc. etc.    JP Morgan Chase Bank NA

21
Richard Pachulski -rpachulski@pszjlaw.com    JP Morgan Securities
c/o Wachtell Lipton Rosen & Katz

22
Amy Wolfe, Esq. - ARWolf@WLRK.com

23
sspeier@squarmilner.com    John.sieger@kattenlaw.com
Steven N. Speier, Ch 11 Trustee

24

25

26

27

28