1  PAUL J. COUCHOT -- State Bar No. 131934
      pcouchot@winthropcouchot.com
2  SEAN A. O'KEEFE -- State Bar No. 122417
      sokeefe@winthropcouchot.com
   PETER W. LIANIDES -- State Bar No. 160517
3     plianides@winthropcouchot.com
   **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
4  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
5  pcouchot@winthropcouchot.com
   Telephone: (949) 720-4165
   Facsimile: (949) 720-4111
6  General Insolvency Counsel for Administratively Consolidated
   Debtors-in-Possession and SCC Acquisitions, Inc.
7
   LOUIS R. MILLER, State Bar No. 54141
8     smiller@millerbarondess.com
   MARTIN PRITIKIN, State Bar. No. 210845
9     mpritikin@millerbarondess.com
   BRIAN PROCEL, State Bar No. 218657
      bprocel@millerbarondess.com
10 **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
11 Los Angeles, California 90067
   Telephone: (310) 552-4400
12 Facsimile: (310) 552-8400
   Special Litigation Counsel for Jointly Administered
   Debtors in Possession and Chapter 11 Trustee

13              **UNITED STATES BANKRUPTCY COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**
14                      **SANTA ANA DIVISION**

15 | In re | Case No. 8:08-bk-17206-ES |

PALMDALE HILLS PROPERTY, LLC, AND ITS
RELATED DEBTORS,

Jointly Administered Debtors and
Debtors-in-Possession

Affects:

☐ All Debtors
☐ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale,
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC

*Caption Continued on Next Page*

Case No. 8:08-bk-17206-ES
Jointly Administered With Case Nos.
8:08-17209-ES; 8:08-17240-ES; 8:08-17224-ES;
8:08-17242-ES; 8:08-17225-ES; 8:08-17245-ES;
8:08-17227-ES; 8:08-17246-ES; 8:08-17230-ES;
8:08-17231-ES; 8:08-17236-ES; 8:08-17248-ES;
8:08-17249-ES; 8:08-17573-ES; 8:08-17574 ES;
8:08-17575-ES; 8:08-17404-ES; 8:08-17407-ES;
8:08-17408-ES; 8:08-17409-ES; 8:08-17458-ES;
8:08-17465-ES; 8:08-17470-ES; 8:08-17472-ES; and 8:08-17588-ES

Chapter 11 Proceedings

**SUPPLEMENTAL DECLARATION OF PAUL
COUCHOT IN SUPPORT OF REPLY RE SUPPLEMENT
TO DEBTORS' MOTION FOR ORDER: (1) APPROVING
OVERBID PROCEDURES IN CONNECTION WITH
PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS
OF THE DEBTORS' ESTATES; (2) APPROVING
BREAK-UP FEE; (3) DISALLOWING CREDIT BIDS
RIGHTS OF DISPUTED SECURED CREDITORS,
LEHMAN ALI, INC., NORTHLAKE HOLDINGS AND
OVC HOLDINGS; AND (4) SETTING HEARING ON
APPROVAL OF SALE OF ASSETS**

Date:    July 28, 2009
Time:    10:00 a.m.
Place:   Courtroom 5A

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

*Continued from Previous Page*

☒  LBL-SunCal Oak Valley, LLC
☒  SunCal Heartland, LLC
☒  LBL-SunCal Northlake, LLC
☒  SunCal Marblehead, LLC
☒  SunCal Century City, LLC
☒  SunCal PSV, LLC
☒  Delta Coves Venture, LLC
☒  SunCal Torrance, LLC
☒  SunCal Oak Knoll, LLC

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

I, Paul Couchot hereby declare and state as follows:

1.    I submit this supplemental declaration in support of the REPLY RE SUPPLEMENT TO DEBTOR'S MOTION FOR ORDER: (1) APPROVING OVERBID PROCEDURES IN CONNECTION WITH PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS' ESTATES; (2) APPROVING BREAK-UP FEE; (3) DISALLOWING CREDIT BID RIGHTS OF DISPUTED SECURED CREDITORS, LEHMAN ALI, INC., NORTHLAKE HOLDINGS, AND OVC HOLDINGS; AND (4) SETTING HEARING HEREON APPROVAL OF SALE OF ASSETS. (the "Reply").  I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify thereto.

2.    I am an attorney, duly admitted to practice law before all courts for the State of California and the United States District Court for the Central District of California.  I am a member of the law firm of Winthrop Couchot Professional Corporation, general insolvency counsel for the seventeen above-captioned administratively consolidated Debtors-in-Possession (the "Voluntary Debtors") and SCC Acquisitions, Inc. ("Acquisitions"), an indirect parent company of the Voluntary Debtors and the other administratively consolidated Chapter 11 debtors represented by their Chapter 11 Trustee, Mr. Steven M. Speier (the "Trustee Debtors").  I have been lead counsel for the Voluntary Debtors since before their Chapter 11 filings and have been involved with the Trustee Debtors cases as well both as proposed insolvency counsel and as counsel to Acquisitions.  The Voluntary Debtors and the Trustee Debtors are collectively referred to herein as the "Debtors."

3.    In my capacity as lead counsel for the Voluntary Debtors and counsel to the indirect parent of all of the Debtors, I have become aware of the claims asserted against the Debtors. Lehman ALI,[1] LCPI, OVC and Northlake Holdings filed various pleadings in the Debtors' bankruptcy proceeding representing to be the "Lehman Lenders."  However, on March 25, 2009 Danske Bank appeared before the Court and disclosed that it held all right, title and interest in the $120 million Century City Loan secured by SunCal Century City's newly real estate project lien, pursuant to an assignment from Lehman ALI.

---

[1] All capitalized terms used herein and not otherwise defined have the meaning provided in the Reply.

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

4.      Based upon the Danske Bank disclosure, the Debtors requested, by letter of

March 26, 2009, from Louis R. Miller at Miller Barondess LLP (the "Miller Firm") sent

electronically to W. Michael Bond and Edward Soto at Weil, Gotshal & Manges LLP (the "Weil

Firm") and Richard Pachulski at Pachulski Stang Ziehl & Jones (the "Pachulski Firm") in their

capacities as the Lehman Lenders' attorneys, to which I was a recipient, that the Lehman Lenders

disclose whether any of their remaining loans had been transferred to third parties. A true and correct

copy of the March 26, 2009 letter is attached hereto as Exhibit "1." (The Weil Firm and the

Pachulski Firm are referred to herein collectively as the "Lehman Attorneys".)  The Lehman Lenders

ignored this request for several weeks, and only responded after the Miller Firm had propounded a

third-party subpoena on J.P. Morgan (who they believed may have been the transferee of various

Loans) noticed for April 17, 2009.  A true and correct copy of the third-party subpoena is attached

hereto as Exhibit "2."

5.      On March 27, 2009, the day after their receipt of the Miller Firm's letter referenced

above, the Lehman Lenders filed, among others, the following thirteen proofs of secured claims:

| Claimant | Loan | POC No. | Debtor | Claim Amount |
|---|---|---|---|---|
| LCPI | SunCal Communities I Loan | 6 | SunCal Acton | $343,221,391 |
| LCPI | SunCal Communities I Loan | 16 | SunCal Bickford | $343,221,391 |
| LCPI | SunCal Communities I Loan | 7 | SunCal Emerald | $343,221,391 |
| LCPI | SunCal Communities I Loan | 12 | SunCal Summit | $343,221,391 |
| LCPI | SunCal Communities I Loan | 1 | SunCal I | $343,221,391 |
| LCPI | SunCal Communities I Loan | 2 | SunCal III | $343,221,391 |
| LCPI | Ritter Ranch Loan | 65 | Palmdale Hills | $287,252,096 |
| Lehman ALI | Delta Coves Loan | 21 | SunCal Delta Coves | $206,023,142 |
| Lehman ALI | Marblehead/Heartland Loan | 9 | SunCal Heartland | $354,325,126 |
| Lehman ALI | Marblehead/Heartland Loan | 21 | SunCal Marblehead | $354,325,126 |
| Lehman ALI | SunCal PSV Loan | 12 | SunCal PSV | $88,257,340 |
| Northlake Holdings | Northlake Loan | 6 | SunCal Northlake | $123,654,777 |
| OVC | Oak Valley Loan | 16 | SunCal Oak Valley | $141,630,092 |

6.      On the Official Form for each of these proofs of claims, under "Name of Creditor (the

person or other entity to whom the debtor owes money or property)," the Lehman Lenders, as

applicable, listed themselves. *See* SunCal Acton Proof of Claim No. 6, SunCal Bickford Proof of

Claim No. 16, SunCal Emerald Proof of Claim No. 7, SunCal Summit Proof of Claim No. 12,

SunCal I Proof of Claim No. 1, SunCal III Proof of Claim No. 2, Palmdale Hills Proof of Claim

No. 65, SunCal Delta Coves Proof of Claim No. 21, SunCal Heartland Proof of Claim No. 9, SunCal

Marblehead Proof of Claim No. 21, SunCal PSV Proof of Claim No. 12, SunCal Northlake Proof of Claim No. 6 and SunCal Oak Valley Proof of Claim No. 16. Each of these proofs of claim—along with the attachments—was prepared by A & M's Gerald Pietroforte (as "Managing Director" of each Lehman Lender) and/or by the Weil Firm, and each was signed by Pietroforte.

7.     In a letter dated April 15, 2009, from Edward Soto at the Weil Firm to Louis R. Miller at the Miller Firm, to which I was a recipient, the Lehman Lenders admitted that loans secured by liens against no less than fifteen out of the Debtors' twenty Projects were subject to certain agreements; they further admitted that the "various counterparties" to these agreements (primarily Fenway and/or J.P. Morgan) "may claim some interest" in such loans. A true and correct copy of the April 15, 2009 letter is attached hereto as Exhibit "3." However, the Lehman Attorneys did not disclose what "interest" these counterparties "may claim," and they did not provide the Debtors any of the documentation giving rise to these claimed interests.

8.     It was not until J.P. Morgan produced documents in response to the subpoena on April 28, 2009 propounded by the Miller Firm that the Debtors obtained confirmation of what was only hinted at in the Lehman Attorneys' April 15 letter—that the Lehman Lenders relinquished all right, title and interest in the seven "Sold Loans" (defined below) prior to all of the Debtors' Chapter 11 petition dates.

9.     The Miller Firm immediately provided me with the documents produced by J.P. Morgan in discovery revealing that on August 22, 2008, Fenway Capital, as "Buyer," and LCPI, as "Seller," entered into a *Master Repurchase Agreement* (the "MRA"). A true and correct copy of the MRA is attached hereto as Exhibit "4." According to the MRA, on or about the same date, the parties entered into a repurchase transaction pursuant to which Fenway purchased all of LCPI's right, title and interest in the following loans (together, the "Sold Loans"):

/ / /

| Loan | Lehman Lender | Alleged Balance |
|------|---------------|-----------------|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| SunCal PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Oak Valley Loan | OVC Holdings | $141,630,092 |
| Northlake Loan | Northlake Holdings | $123,654,777 |
| **TOTAL** | | **$1,544,363,964** |

10.     On behalf of the Debtors, Winthrop Couchot and the Miller Firm filed a motion to strike the proof of claims on the Sold Loans on the basis that the purported Lehman Lenders that filed the Sold Loans did not own them. I was present at the June 30, 2009 hearing, at which this Court ruled that the repurchase transaction was a sale in which title to the Sold Loans passed to Fenway.

### *Summary of LCPI's Factually Inaccurate Stay Assertions*

11.     Despite the fact that all of its interest in the Sold Loans were sold by LCPI to Fenway Capital pre-petition in August of 2008, since November of 2008, LCPI has filed numerous pleadings with this Court—as well as with the bankruptcy court in its own pending Chapter 11 bankruptcy in New York, and even with the Ninth Circuit Bankruptcy Appellate Panel—in which it asserted that the automatic stay in its bankruptcy precluded the Voluntary Debtors (and on one occasion even the Trustee Debtors that never had LCPI as its lender) from taking certain actions in their proceedings and an accusation that I was knowingly violating the automatic stay and should be sanctioned and/or held in contempt. LCPI's assertions were based on its purported ownership of these Sold Loans.

12.     Had LCPI admitted all along that its automatic stay did not apply, or at least disclosed the status of the August 22, 2008 sale of the loans, the Voluntary Debtors never would have had to have been involved or had limited involvement in LCPI's Chapter 11 case. The Voluntary Debtors would have obtained use of cash collateral or a priming loan during last fall's fire season that threatened many of the Projects, the Voluntary Debtors would not have been forced to allow Lehman ALI to use the Voluntary Debtors' cash collateral subject to LCPI's disputed lien, the Voluntary Debtors would have named LCPI in their initial Adversary Complaint, the Voluntary Debtors would

-6-

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

1    have already moved for substantial consolidation of their estates and the Trustee Debtors' estates six

2    months ago thereby eliminating the need for an entire second set of professionals, and all of the

3    Voluntary Debtors Projects subject to the Sold Loans would have been included in the initial Sales

4    Procedures Motion filed in February of 2009.  I estimate that the damage to the Voluntary Debtors'

5    estate in professional fees alone will exceed $1 million.

6          <u>LCPI's Objection to the Debtors' Motion for Relief from Stay in New York Based on Its</u>

7          <u>Factually Inaccurate Stay Assertion</u>.

8          13.    In November 2008, LCPI opposed Debtors' motion filed in New York seeking relief

9    from LCPI's stay so that Debtors could administer their estates and, among other things, obtain a

10   priming loan to address the Projects' critical needs.  I helped prepare the motions and attended the

11   hearing.  In (successfully) opposing that motion, LCPI asserted that its automatic stay applied to the

12   Debtors' efforts to deal with all of the Projects—even those encumbered by Sold Loans.  A true and

13   correct copy of *Debtors' Objection to the SCC Entities' Motion for Relief from the Automatic Stay*

14   filed on November 18, 2008 is attached to *Request for Judicial Notice* filed concurrently herewith as

15   Exhibit "1."

16         <u>LCPI's Objection to the Cash Collateral Motion Based on Its Factually Inaccurate Stay</u>

17         <u>Assertion</u>.

18         14.    Given that Debtors could not obtain a priming loan due to LCPI's opposition, on

19   January 16, 2009, Palmdale Hills, SunCal Acton, SunCal Beaumont, SunCal Bickford, SunCal

20   Emerald, SunCal Johannson, and SunCal Summit sought funding to preserve their Projects' value

21   via a *Motion for Order Authorizing Surcharge Under 11 U.S.C. Section 506(C), and, in the*

22   *Alternative, Use Of Cash Collateral* (the "Cash Collateral Motion") that the Debtors did not believe

23   potentially violated the stay unlike a priming lien motion.  *See* Palmdale Hills Docket No. 50.  LCPI

24   had not raised the issue of its stay in opposing a cash collateral motion in related proceedings before

25   this Court, nor in repeated discussions with me during negotiations over the use of cash collateral.

26         15.    Nevertheless, LCPI filed an objection to the Cash Collateral Motion in which it

27   asserted that these moving Debtors' attempt to use cash collateral to preserve value in the Projects

28   constituted a "flagrant disregard of [its] automatic stay."  *See* Palmdale Hills Docket No. 72.

16.    Not content with opposing the Cash Collateral Motion before this Court and having this Court determine if the use of cash collateral violated the automatic stay, LCPI, two business days before the Cash Collateral Motion was to be heard, filed a motion in its own proceedings in New York wherein it contended that it held a lien on the subject cash, and that the use of the funds proposed in the Cash Collateral Motion would violate its automatic stay. I received e-mail service of the motion approximately one hour before the telephonic hearing. A true and correct copy of *Debtors' Emergency Motion for an Order Pursuant to Section 362(a) of the Bankruptcy Code Enforcing the Automatic Stay* filed on January 30, 2009, is attached to *Request for Judicial Notice* filed concurrently herewith as Exhibit "2." In response to the presiding judge's warning to me that he believed I was in willful violation of the LCPI stay, I agreed to take the Cash Collateral Motion off calendar without prejudice. In fact, the only loan purportedly secured by a lien against the cash that the Debtors were seeking to use was the Ritter Ranch Loan, a Sold Loan.

LCPI's Stay Relief Motions in the Voluntary Debtors Cases Based on Its Factually Inaccurate Stay Assertion.

17.    LCPI's stay relief motions and reply filed on January 23, 2009 (*See* Palmdale Hills Docket No. 61) and February 13, 2009 (*See* Palmdale Hills Docket No. 117) were premised almost entirely on Sold Loans (with the exception of the SCC Palmdale Loan admittedly supported by no value, which is currently the subject of both a pending motion for disallowing under Bankruptcy Code Sections 506(a) and (d) as well as a pending cause of action for avoidance under Bankruptcy Code Section 548). LCPI argued that the subject Debtors could not confirm a Chapter 11 plan because their plan was premised on equitable subordination, and they could not seek to equitably subordinate LCPI's claims without violating LCPI's purported automatic stay. LCPI also asserted that the Voluntary Debtors could not adequately protect their interests in the Projects because the Debtor had been thwarted in their attempts to obtain a priming loan and/or use of cash collateral based on the factually inaccurate assertion of the applicability of the LCPI automatic stay.

18.    On March 10, 2009, the Court denied LCPI's stay relief motions, ruling that LCPI's purported stay did not apply to Debtors' efforts to equitably subordinate LCPI's claims (because

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

1   Debtors were defending against affirmative conduct by LCPI, not because the Sold Loans were not

2   LCPI's property). *See* Palmdale Hills Docket Nos. 149 through 156.

3       LCPI'S Appeal of this Court's Order Denying It Relief from Stay Based on Its Factually

4       Inaccurate Stay Assertion.

5       19.    On March 20, 2009, LCPI appealed the Court's ruling, and so has continued to

6   inaccurately assert its stay, this time in the Ninth Circuit BAP. *See* Palmdale Hills Docket Nos. 178

7   through 185; BAP Docket Dated 5/22/2009 (Case Nos. 09-1100 through 09-1107 United States

8   Bankruptcy Appellate Panel of the Ninth Circuit). The moving Debtors have already had to file a

9   lengthy opposition to LCPI's appeal. BAP Docket Dated 6/12/2009 (Case Nos. 09-1100 through

10  09-1107 United States Bankruptcy Appellate Panel of the Ninth Circuit).

11      LCPI's Intervention in the Sales Procedures Motion Based on Its Factually Inaccurate

12      Automatic Stay Assertion.

13      20.    The Sales Procedures Motion having to do with the Debtors' Projects not subject to

14  liens of LCPI was originally filed February 18, 2009, and was originally set to be heard on Tuesday,

15  March 10, 2009.  Although non-debtors Lehman ALI, OVC, and Northlake Holdings filed an

16  opposition, LCPI did not.

17      21.    However, on the afternoon of Sunday, March 8, 2009, Shai Waisman of the Weil

18  Firm (counsel for LCPI) sent an e-mail to me, threatening that LCPI would seek sanctions and

19  contempt in New York for Debtors' and my purported "flagrant violation" of its automatic stay,

20  unless the moving Debtors withdrew the Sales Procedures Motion by 10:00 a.m. the next morning,

21  March 9. A true and correct copy of the March 8, 2009 e-mail is attached hereto as Exhibit "5."

22      22.    On March 9, 2009, Shai Waisman also sent an e-mail to this Court and the

23  bankruptcy court in New York a "letter brief" which asserted that the Sales Procedures Motion,

24  among other things, "threaten[s] LCPI's property interests."  This letter brief attached the motion for

25  sanctions that LCPI intended to file in New York, which also asserted that the Debtors filing of a

26  Chapter 11 plan and proposed substantive consolidation of the Debtors also violated LCPI's

27  automatic stay even though LCPI has been found not to be a creditor in this case.  A true and correct

28  copy of the March 9, 2009 e-mail is attached hereto as Exhibit "6."

-9-

23.    In response to LCPI's threat, on March 9, 2009, on behalf of the Trustee, SCC Communities, SunCal Del Rio, and SunCal Tesoro I caused the filing of emergency motions seeking an order finding that the automatic stay in LCPI's bankruptcy case did not apply to the Sale Procedures Motion involving the purported liens of non-debtor Lehman Lenders. *See* Palmdale Hills Docket No. 157.

24.    Shai Waisman responded with another e-mail on March 10, 2009 directly to the New York bankruptcy court initiating the filing of another stay enforcement motion seeking sanctions and contempt against me. At the March 10, 2009 hearings before this Court of which I attended, LCPI's attorneys then informed this Court that the motion had not been filed, apparently unaware of Mr. Waisman's March 10, 2009 e-mail stating to the contrary. A true and correct copy of the March 10, 2009 e-mail is attached hereto as Exhibit "7."

25.    On March 10, 2009, the Court granted the moving Debtors' emergency motions, holding that the automatic stay in the LCPI bankruptcy case did not apply to the Sales Procedures Motion. *See* Palmdale Hills Docket No. 257.

LCPI's Appeal of the Second Amended Complaint Based on Its Factually Inaccurate Stay Assertion.

26.    On March 24, 2009, the Court also granted an order allowing the Debtors to file a second amended complaint in Adversary Case No. 09-01005 (United States Bankruptcy Court, Central District of California) proceeding naming LCPI as a defendant. On March 26, 2009, LCPI baselessly appealed that ruling to the BAP as well. Adversary Docket No. 23. The BAP clerk determined—only after briefing from both sides—that the ruling was interlocutory and not immediately appealable. BAP Docket Dated June 23, 2009 (Case No. 09-1121 United States Bankruptcy Appellate Panel of the Ninth Circuit)

Lehman ALI's Super-Priority Loan and Purported Priming Loan on Most of the Debtors' Assets Resulted from LCPI's Factually Inaccurate Stay Assertion.

27.    As stated, based on its inaccurate assertion of ownership of the Sold Loans, LCPI opposed the Debtors' effort to obtain approval from the New York Court for a priming loan, and then opposed the Cash Collateral Motion. Consequently, in April 2009, four Voluntary Debtors

1  (SunCal Acton, SunCal Bickford, SunCal Emerald and Palmdale Hills) and the Trustee on behalf of

2  eight of the Trustee Debtors (all except SunCal Torrance) were ultimately forced to stipulate to loans

3  from Lehman ALI totaling $1.7 million to address several of the Projects' critical needs. *See*

4  Palmdale Hills Docket Nos. 238 and 267.

5        28.    The source of the money that Lehman ALI "loaned" to these Debtors was cash in

6  Palmdale Hills' account allegedly subject to the Ritter Ranch Loan. This was the very same money

7  that was sought to be used via the Cash Collateral Motion—money which was subject to disputed

8  liens. Had LCPI not inaccurately invoked its stay and had the Cash Collateral Motion been granted,

9  the Debtors could have used such sums to maintain the Projects and to pay creditors in the event that

10  equitable subordination was granted. However, because of LCPI's inaccurate invocation of its stay

11  and the resulting withdrawal of the Cash Collateral Motion, Lehman ALI managed, just a few

12  months later, to endow the loan of these same funds with super-priority and priming liens on all

13  assets, even those previously unencumbered, and thus ostensibly not subject to the Debtors'

14  equitable subordination action.

15        29.    Thus, Lehman ALI effectively turned a $1.7 million loan subject to defenses into a

16  super-priority loan as a result of LCPI's inaccurate statements regarding the applicability of its stay.

17  The Debtors intend to setoff all fees and costs that they have incurred as a result of these inaccurate

18  stay accusations against this loan that was wrongfully incurred. Because Lehman ALI is also a

19  defendant in various pending preference actions, the Debtors intend to dispute this loan pursuant to

20  Bankruptcy Code Section 502(d).

21       LCPI's Objections to the Disclosure Statement Based on Its Factually Inaccurate Stay

22       Assertion.

23        30.    On April 24, 2009, the Lehman Lenders filed objections to the Debtors' First

24  Amended Joint Disclosure Statement Describing Debtors' First Amended Joint Plan of

25  Reorganization. Here again, the Lehman Lenders inaccurately asserted LCPI's automatic stay in a

26  / / /

27

28

MAINDOCS-#131916-v1-SCC_Sup_Dec_Couchot_Supp_Sale_Proc.DOC

1  variety of contexts based on the untrue assertion of the ownership of the various loans. *See* Palmdale

2  Hills Docket No. 305.

3       I declare under penalty of perjury that the foregoing is true and correct.

4       Executed this 21st day of July 2009, at Newport Beach, California.

6                                        /s/
                                    Paul Couchot

-12-

**EXHIBIT "1"**

## MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS
SUITE 1000
LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400
FAX (310) 552-8400
www.millerbarondess.com

March 26, 2009

LOUIS R. MILLER
DIRECT DIAL (310) 552-5251
EMAIL SMILLER@MILLERBARONDESS.COM

*VIA U.S. MAIL & E-MAIL*

W. Michael Bond
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Edward Soto
Weil, Gotshal & Manges LLP
Espirito Santo Plaza, Suite 1200
1395 Brickell Avenue
Miami, Florida 33131

Richard Pachulski
Pachulski, Stang Ziehl & Jones
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067

Re:  *Santa Ana Bankruptcy Cases*

Dear Counsel:

In the spirit of cooperation urged by the Courts in the proceedings in both California and New York, I am writing to request that you provide certain information critical to these proceedings. I note that while we and our clients repeatedly have asked for this information, going back to last year and including most recently in Court on March 24, 2009, it still has not been provided. It is time to be up front and forthcoming.

(1)  Information has come to light that your clients do not own or have pledged or otherwise committed interests in the liens in issue on the properties in our cases. One example is Danske Bank's interest in the Century City loan, pledged and subsequently transferred apparently pursuant to a "Repo Agreement"; when we asked about this, your clients denied its existence. Another example is that apparently your clients no longer own or have pledged or transferred or otherwise committed their interest in the lien on the Pacific Pointe Property. And we have heard – but do not know – that there are similar commitments and transactions with respect to other properties in issue in the bankruptcy cases pending in the Santa Ana court.

WC000267

**Exhibit 1, Page 13**

# MILLER BARONDESS, LLP

W. Michael Bond
Edward Soto
Richard Pachulski
March 26, 2009
Page 2

Please immediately make full disclosure of the extent of your clients' interests in the liens on each and every property involved in the cases pending in the Santa Ana bankruptcy court. We had to adjourn and continue the hearing on March 24 because of the uncertainty caused by your not disclosing to us – and the Court – this critical information regarding the Century City property. It is time for you to clear the air and tell us and the Court and the creditors the exact status, ownership, existence of Repo Agreements and anything else necessary to understand who has rights in the liens in issue. How can we pursue the 363 sale if we do not know who really owns or controls or has an interest in the liens?; and how can we equitably subordinate liens apparently pledged or committed to unknown third parties? This hide-the-ball gamesmanship must stop.

I hope you will comply with this request and provide the requested information forthwith and fully. I hope it will not be necessary to address the issue again with the Court.

(2)   Your predecessor counsel herein, Joe Eisenberg, committed to provide the signature copies of the various documents that were executed at the closing on August 25, 2008. I am informed that the Weil firm took the signed documents at that time and promised to provide copies, but never did. In that regard, I enclose Bruce Cook's letter of March 2, 2009 to Mr. Eisenberg. I am sure that Mike Bond knows exactly what Bruce is talking about in his letter. With everything that is going on and all the work and pressure, I assume this just fell into a crack and that Mike Bond will provide copies of the executed documents forthwith.

Please accept this letter in the spirit it is offered and understand that the lien information and signature copies requested herein, in our view, should have been provided long ago and that there is absolutely no basis for not providing them immediately. Thank you for your consideration, and I look forward to hearing back from you promptly.

Sincerely,

Louis R. Miller

LRM:ab
Enclosure
cc:   Paul J. Couchot
      Alan J. Friedman, Creditors Committee Counsel
      Lei Lei Wang Ekvall, Creditors Committee Counsel
      Steven N. Speier, Trustee
      Bruce V. Cook

WC000268

**Exhibit 1, Page 14**

# MILLER BARONDESS, LLP

W. Michael Bond
Edward Soto
Richard Pachulski
March 26, 2009
Page 3



# SunCal Companies

CORPORATE OFFICE
2392 MORSE AVENUE
IRVINE, CA 92614

MAIN 949 777 4000
FAX 949 777 4050

WWW.SUNCAL.COM

March 2, 2009

**VIA TELEFAX (310) 203-0567**

Joseph A. Eisenberg P.C.
JEFFER, MANGELS, BUTLER & MARMARO LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

Re:    Lehman/SunCal Restructuring Agreement

Dear Mr. Eisenberg:

At the hearing on Lehman Commercial Papers' Motion to be relieved from the bankruptcy stay, it was discussed among counsel that I send you a letter requesting copies of all of the documents that were signed at the closing meeting relating to the Restructuring Agreement, which was held on August 25, 2008 at the law offices of Cox, Castle & Nicholson in Los Angeles.

The documents being requested that were signed at that closing meeting are numerous, and I estimate that the number of documents executed exceeded 1,000 documents. At the end of the closing meeting, the attorneys for Weil, Gotshal & Manges LLP took all the documents with them and, despite my previous request, have not provided me with copies of the signed documents.

The purpose of this letter is to request copies of all of the documents that were signed at the August 25, 2008 closing meeting between Lehman and SunCal, including any documents signed by any SunCal entity and any documents signed by any Lehman entity. I would appreciate it if you would get these documents to me as soon as possible.

If you have any questions, please contact our attorneys in this regard.

Very truly yours,

Bruce V. Cook
General Counsel

BVC:aa

WC000270

**Exhibit 1, Page 16**

# EXHIBIT "2"

Form 255 – Subpoena in an Adversary Proceeding (12/06)                                    2006 USBC, Central District of California

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| In re:<br>PALMDALE HILLS PROPERTY, LLC,<br><br>                Debtor<br>PALMDALE HILLS PROPERTY, LLC, et al.,<br><br>                Plaintiff<br><br>      v.<br>LEHMAN ALI, INC., et al.,<br><br>                Defendant | |
| | **SUBPOENA IN AN ADVERSARY PROCEEDING** |
| | Case No.*:  8:08-bk-17206-ES |
| | Chapter:  11 |
| To:  JPMorgan Chase & Co.<br>    c/o C T Corporation System | Adv. Proc. No.*:  8:09-ap-01005-ES |

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.  See Attachment A - Rule 30(b)(6) Notice of Deposition

| PLACE OF TESTIMONY  Miller Barondess, LLP<br>1999 Avenue of the Stars, Suite 1000<br>Los Angeles, CA 90067 | DATE AND TIME<br>April 17, 2009, 10:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

      See Attachment B

| PLACE  Attn:  Brian A. Procel<br>Miller Barondess, LLP<br>1999 Avenue of the Stars, Suite 1000<br>Los Angeles, CA 90067 | DATE AND TIME<br>April 17, 2009, 10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*[signature]* | DATE<br><br>April 6, 2009 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Brian A. Procel, (310) 552-4400<br>Miller Barondess, LLP, 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

**Exhibit 2, Page 17**

Form 255 – Subpoena in an Adversary Proceeding (12/06)                                          2006 USBC, Central District of California

## PROOF OF SERVICE

|              | DATE  | PLACE |
|--------------|-------|-------|
| **SERVED**   |       |       |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                            DATE                                        SIGNATURE OF SERVER

                                                                    _____
                                                                    ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2)   (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B). Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3)   (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an un retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1)   (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2)   (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A)

1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No. 210845
   mpritikin@millerbarondess.com
3  BRIAN PROCEL, State Bar No. 218657
   bprocel@millerbarondess.com
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 552-4400
6  Facsimile:    (310) 552-8400

7  [Proposed] Special Litigation Counsel for the Debtors in Possession and Steven M.
8  Speier, the Chapter 11 Trustee

9  PAUL J. COUCHOT, State Bar No. 131934
   pcouchot@winthropcouchot.com
   PETER W. LIANIDES, State Bar No. 160517
10 plianides@winthropcouchot.com
   **WINTHROP COUCHOT, P.C.**
11 660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
12 Telephone:    (949) 720-4100
   Facsimile:    (949) 720-4111
13
14 General Insolvency Counsel for the Debtors in Possession and
   [Proposed] General Insolvency Counsel for Steven M. Speier, the Chapter 11 Trustee
15
                    **UNITED STATES BANKRUPTCY COURT**
16          **CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION**

17 In re                                    **CASE NO. 8:08-bk-17206-ES**
                                            Jointly Administered With Case Nos.
18 PALMDALE HILLS PROPERTY, LLC, AND ITS    8:08-bk-17209-ES; 8:08-bk-17224-ES;
   RELATED DEBTORS,                         8:08-bk-17225-ES; 8:08-bk-17227-ES;
19           Jointly Administered Debtors and 8:08-bk-17230-ES; 8:08-bk-17231-ES;
             Debtors-in-Possession          8:08-bk-17236-ES; 8:08-bk-17240-ES
20                                          8:08-bk-17242-ES; 8:08-bk-17245-ES
                                            8:08-bk-17246-ES; 8:08-bk-17248-ES
21 **ADVERSARY PROCEEDING**                 8:08-bk-17249-ES; 8:08-bk-17404-ES;
                                            8:08-bk-17407-ES; 8:08-bk-17408-ES;
22 PALMDALE HILLS PROPERTY, LLC, et al.,    8:08-bk-17409-ES; 8:08-bk-17458-ES;
                                            8:08-bk-17465-ES; 8:08-bk-17470-ES;
23           Plaintiffs,                    8:08-bk-17472-ES; 8:08-bk-17573 ES
                                            8:08-bk-17574 ES; 8:08-bk-17575 ES;
24 v.                                       8:08-bk-17588-ES

25 LEHMAN ALI, INC., et al.,
                                            **Adversary No. 8:09-ap-01005-ES**
26           Defendants.
                                            **Chapter 11 Proceeding**
27
                                            **NOTICE OF DEPOSITION OF PERSON**
28                                          **MOST KNOWLEDGEABLE AT**

─────────────────────────────────────────────────────────
33857.1      **NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JPMORGAN CHASE & COMPANY AND SUBPOENA DUCES TECUM FOR PRODUCTION OF DOCUMENTS**

Date:        April 17, 2009
Time:        10:00 a.m.
Location:    1999 Avenue of the Stars
             10th Floor
             Los Angeles, CA 90067

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

33857.1

**Exhibit 2, Page 20**

1    **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 30(b) and 45,

2    and Federal Rules of Bankruptcy Procedure 7026, 7030, 9014 and 9106, Plaintiffs Palmdale Hills

3    Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch,

4    LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows LLC, SunCal Bickford Ranch, LLC,

5    Acton Estates, LLC, Seven Brothers LLC, SJD Partners, Ltd., SJD Development Corp., Kirby

6    Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC,

7    North Orange Del Rio Land, LLC, Tesoro SF, LLC (collectively, the "Debtors in Possession"); and

8    Steven M. Speier, the Chapter 11 Trustee on behalf of SunCal Oak Knoll, LLC, LB/L-SunCal Oak

9    Valley, LLC, SunCal Heartland, LLC, LB/L-SunCal Northlake, LLC, SunCal Marblehead, LLC,

10   SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, and SunCal Torrance,

11   LLC (collectively, the "Trustee Debtors"; and together with the Debtors in Possession, the

12   "Debtors") will take the oral deposition of the person or persons designated by JPMorgan Chase &

13   Company as competent to testify on its behalf about the matters described in Exhibit "A" attached

14   hereto.  Pursuant to Rule 30(b)(6), JPM shall designate one or more agent(s), representative(s) or

15   other person(s) who consent to testify on its behalf and, for each person designated, shall specify the

16   matters on which the person will testify.

17       The deposition shall commence at 10:00 a.m. (PST) on April 17, 2009 at the offices of Miller

18   Barondess LLP, 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.  The deposition will

19   be taken upon oral examination before an official authorized by law to administer oaths.  Pursuant to

20   Rule 30(b)(3), testimony will be recorded stenographically, including recording by instant visual

21   display of the testimony; and may be videotaped.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1
**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

33857.1

1    **NOTICE IS FURTHER GIVEN** that the deponent(s) is/are requested to produce the

2    documents described in Exhibit "B" attached hereto at or prior to the deposition.

3

4    Dated: April 6, 2009                                Respectfully Submitted,

5                                                        MILLER BARONDESS, LLP

6

7                                                        By:_____
                                                            Brian A. Procel

8                                                        [Proposed] Special Litigation Counsel for
                                                         the Debtors in Possession and Steven M.
9                                                        Speier, the Chapter 11 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

33857.1

**Exhibit 2, Page 22**

# EXHIBIT A

**Exhibit "A"**

**DEFINITIONS**

1.    "You" or "Your," whether capitalized or not, shall mean JPMorgan Chase &
Company and/or any of its current or former companies, affiliates, or subsidiaries, whether wholly or
partly owned.

2.    "Debtors" shall mean Palmdale Hills Property, LLC, SunCal Beaumont Heights,
LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal
Emerald Meadows LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers LLC,
SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC,
SunCal Communities III, LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, Tesoro
SF, LLC, SunCal Oak Knoll, LLC, LB/L-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB/L-
SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC,
Delta Coves Venture, LLC, and/or SunCal Torrance, LLC.

3.    "Suncal" shall mean SCC Acquisitions, Inc ("SCC"), and any entity owned,
managed, operated or otherwise affiliated with SCC or its president, Bruce Elieff ("Elieff")
including (i) SCC Acquisitions, LLC; (ii) SunCal Management, LLC; (iii) the "Debtors"; and/or (iv)
SunCal Communities II, LLC, SCC/Oak Valley, LLC, SCC/Northlake, LLC, SunCal Delta Coves
LLC; SCC JV Ventures LLC (collectively, the "SunCal Equity Members").

4.    "Lehman" shall mean Lehman Brothers Holdings, Inc., Lehman Brothers, Inc.,
Lehman ALI, Inc., Lehman Commercial Paper, Inc., OVC Holdings, LLC, Northlake Holdings LLC,
LV Pacific Point, LLC, Lehman Re, Ltd., and/or any of their past or present "Representatives" as
defined herein, including any employees, attorneys, agents, representatives, affiliates, companies,
subsidiaries, and all other persons acting or purporting to act on their behalf.

5.    "Projects" shall mean any of the land, any developments or improvements thereon,
and any fixtures, easements, entitlements, rights, or appurtenances thereto, owned by any of the
Debtors, or in which SunCal has an equity interest, and which are commonly known as, and are
located in, respectively:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 · LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

(1)      Acton Estates, located in Acton, California;

(2)      Beaumont Heights, located in Beaumont, California;

(3)      Bickford Ranch, located in Placer County, California;

(4)      Del Amo, located in Torrance, California;

(5)      Delta Coves, located in Bethel Island, California;

(6)      Emerald Meadows, located in Riverside County, California;

(7)      Heartland, located in Beaumont, California;

(8)      Johannson Ranch, located in Modesto, California;

(9)      Joshua Ridge II, located in Victorville, California;

(10)     Marblehead, located in San Clemente, California;

(11)     Del Rio, located in Orange, California;

(12)     Northlake, located in Castaic, California;

(13)     Oak Knoll, located in Oakland, California;

(14)     Oak Valley, located in Beaumont, California;

(15)     Palm Springs Village, located in Palm Springs, California;

(16)     Ritter Ranch, located in Palmdale, California;

(17)     Summit Valley, located in Hesperia, California;

(18)     Tesoro Burnham, located in Los Angeles, California;

(19)     10000 Santa Monica Boulevard, located in Century City, California;

and shall also include the property known as "Pacific Point," or "San Juan Pacifica," located in San

Juan Capistrano, and formerly owned by Debtor SJD Partners, Inc.

6.      "Loans" shall mean any of the following loans made pursuant to any of the following

agreements (each, a "Loan Agreement" and collectively, the "Loan Agreements"):

(1) the $30,000,000 loan made pursuant to the May 25, 2005 Promissory Note

Secured by a Deed of Trust by and among SunCal Bickford Ranch, LLC, as borrower, and

Lehman ALI, Inc., as lender, relating to the Bickford Ranch Project;

(2) the $100,000,000 loan made pursuant to the September 9, 2005 Term Loan and

Revolving Line of Credit Loan Agreement between LB/L SunCal Northlake, LLC, as

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

4

**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

33857.1

borrower, and Northlake Holdings, LLC, as agent and lender, relating to the Northlake

Project;

(3) the $395,313,713.37 loan made pursuant to the November 17, 2005 Credit

Agreement between SunCal Communities I, LLC and SunCal Communities III, LLC, as

borrowers, and Lehman Commercial Paper, Inc., as agent and lender, secured by the

Guarantee and Collateral Agreement dated November 17, 2005, made by SunCal

Communities I, LLC, SunCal Communities III, LLC, SunCal Emerald Meadows, LLC,

SunCal Bickford Ranch, LLC, Acton Estates, LLC and SunCal Summit Valley, LLC in favor

of Lehman Commercial Paper, Inc. which references the Bickford Ranch Project, the Acton

Project, and the Emerald Meadows Project, and is secured by a pledge of equity interests in

the Summit Valley Project, the Beaumont Heights Project, the Johannson Ranch Project, the

Emerald Meadows Project, and the Bickford Ranch Project;

(4) the $120,000,000 loan made pursuant to the May 23, 2006 Term Loan and

Revolving Line of Credit Loan Agreement between LB/L – Suncal Oak Valley LLC, as

borrower, and OVC Holdings, LLC, as agent and lender, relating to the Oak Valley Project;

(5) the $120,000,000 loan made pursuant to the August 11, 2006 Loan Agreement

between SunCal Century City LLC, as borrower, and Lehman ALI, Inc., as agent and lender,

relating to the 10000 Santa Monica Project;

(6) the $167,700,000 loan made pursuant to the November 30, 2006 Loan Agreement

between Lehman SunCal Real Estate Holdings LLC, SunCal Torrance Properties LLC and

SunCal Oak Knoll, LLC, as borrowers, and Lehman ALI, Inc., as agent and lender, in the

relating to the Oak Knoll and Del Amo Projects;

(7) the $264,000,000 loan made pursuant to the February 8, 2007 Credit Agreement

between SCC/Palmdale LLC, as borrower, and Lehman Commercial Paper, Inc., as agent

and lender, relating to the Ritter Ranch Project;

(8) the $90,000,000 loan made pursuant to the February 12, 2007 Term Loan and

Revolving Line of Credit Agreement between SunCal PSV LLC, as borrower, and Lehman

ALI, Inc., as agent and lender, relating to the Palm Springs Village Project;

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

5

33857.1

1    (9) the $95,000,000 loan made pursuant to the March 30, 2007 Mezzanine Credit

2    Agreement between Lehman Brothers, Inc., as arranger, SCC/Palmdale LLC, as lender, and

3    Lehman Commercial Paper, Inc., as agent and lender, relating to the Ritter Ranch Project.

4    (10) the $236,000,000 loan made pursuant to the April 20, 2007 Amended and

5    Restated Loan Agreement between Delta Coves Venture LLC, as borrower, and Lehman

6    ALI, Inc., as agent and lender, relating to the Delta Coves Project;

7    (11) the $316,061,300 loan made pursuant to the October 3, 2007 Second Amended

8    and Restated Term Loan and Revolving Line of Credit Loan Agreement between SunCal

9    Marblehead Heartland Master LLC, SunCal Marblehead LLC, and SunCal Heartland, LLC,

10   as borrowers, and Lehman ALI, Inc., as agent and lender, in the amount of $316,061,300

11   relating to the Marblehead and Heartland Projects; and

12   (12) the $20,000,000 loan made pursuant to the October 31, 2007 Loan Agreement

13   between SCC Acquisitions, LLC as borrower, and Lehman ALI, Inc., as lender, secured by a

14   Subsidiary Guaranty made by SCC Communities, LLC, Tesoro SF, LLC and North Orange

15   Del Rio Land, LLC in favor of Lehman ALI, Inc. which Subsidiary Guaranty references

16   deeds of trust for the Joshua Ridge Project and the Tesoro Burnham Project and an

17   assignment of CFD proceeds from North Orange Del Rio Land, LLC.

18

19   **MATTERS UPON WHICH WITNESS IS TO BE EXAMINED**

20   1.    Any secured or unsecured interest in the Projects pledged as collateral or otherwise

21   assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between

22   Lehman and You.

23   2.    Any first priority deeds of trust in the Projects pledged as collateral or otherwise

24   assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between

25   Lehman and You.

26   3.    Any interest in the Loans pledged as collateral or otherwise assigned or transferred by

27   Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**NOTICE OF DEPOSITION OF JPMORGAN CHASE & COMPANY**

33857.1

**Exhibit 2, Page 27**

4.    Any interest under the Loan Agreements pledged as collateral or otherwise assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

5.    Any assets owned by the Debtors, or in which the Debtors have an equity interest, which Lehman pledged as collateral or otherwise assigned or transferred by Lehman to You, pursuant to any "repo," loan, or other agreement between Lehman and You.

6.    Any actions, attempts, or efforts by You to collect, claim, or demand from Lehman in any interests it has in the Loans, the Projects, under the Loan Agreements, or in any assets of the Debtors.

7.    Any "repo," pledge collateral, or any other agreements between You and Lehman that refer or relate to the Projects, the Debtors, the Loans, or the Loan Agreements.

8.    Any litigation or other disputes between You and Lehman over agreements regarding, rights to or interests in the Loans, Projects, Loan Agreements, or assets or interests of the Debtors.

9.    Any negotiations between You and Lehman concerning agreements regarding, rights to or interests in the Loans, Projects, Loan Agreements, or assets or interests of the Debtors.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

EXHIBIT B

**Exhibit "B"**

**DEFINITIONS**

1.      All definitions from Exhibit "A" above are incorporated herein.

2.      "Communication," whether capitalized or not, shall mean any and all contact or act by which any information or knowledge is transmitted or conveyed between two persons, whether oral, written, telephonic, electronic (including e-mail or voicemail), or implied in fact (i.e., nonverbal).

3.      A "Communication between You" and any other party refers to Communications involving any of Your past or present officers, directors, employees, agents, attorneys, financial advisors, investment bankers, or accountants or other authorized representatives, including but not limited to a representative acting or purporting to act on Your behalf or at Your request or instruction.

4.      "Concerning," whether capitalized or not, shall mean relating to, referring to, describing, evidencing, or constituting.

5.      "Document," whether capitalized or not, is intended to be read and understood no less broadly than the term is used in Federal Rule of Civil Procedure 34(a), and shall mean any recording of information in whatever form, including, but not limited to, memoranda, correspondence, e-mails, personal notes, spreadsheets, databases, work papers, telephone logs, calendars, plan books, diaries, journals and daily records of activity, drawings, graphs, charts, maps, photographs, video and/or audio recordings, and other data compilations from which information can be obtained or translated (with or without the use of detection devices), including electronic files, records, and archives.  For purposes of these requests, a document which is a copy of another document is intended to be separately requested if the copy differs in any way by virtue of any changes, additions, redactions, annotations or recipients.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

1

1

### INSTRUCTIONS

2    1.    If any information called for by any discovery request is withheld because you claim

3    that such information is privileged, a written list is to be furnished identifying each such document

4    for which the privilege is claimed together with the following information:  (a) the date of the

5    document; (b) the name(s) of its author(s) or preparer(s) and an identification, by employment and

6    title, of each such person; (c) the name of each person who was sent or furnished with the document,

7    together with an identification of such person; (d) a brief description of the document; (e) a

8    statement of the basis for the claim of privilege; and (f) the number or numbers of this request to

9    which the document relates.  In the case of privileged documents relating to meetings or to other

10   conversations, all participants in the meeting or conversation are to be identified.

11   2.    If you object to fully identifying a document or oral communication because of a

12   privilege, you must nevertheless provide the following information, unless divulging the information

13   would disclose the privileged information:  (a) the nature of the privilege claimed (including work

14   product); (b) if the privilege is being asserted in connection with a claim or defense governed by

15   state law, the state privilege rule being invoked; (c) the date of the document or oral communication;

16   (d) if a document:  its type (correspondence, memorandum, facsimile, etc.), custodian, location and

17   such other information sufficient to identify the document for a subpoena *duces tecum* or a document

18   request, including where appropriate the author, the addressee and, if not apparent, the relationship

19   between the author and addressee; (e) if an oral communication:  the place where it was made, the

20   names of the persons present while it was made and, if not apparent, the relationship of the persons

21   to the declarant; and (f) the general subject matter of the document or oral communication.

22   3.    The information sought in these requests includes materials in your possession,

23   custody or control.

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

2

33857.1

1

## DOCUMENTS TO BE PRODUCED

2

3      1.      All Documents Concerning the Projects, Loans, Loan Agreements, Debtors, or assets

4  of the Debtors.

5      2.      All Communications between You and Lehman Concerning the Projects, Loans, Loan

6  Agreements, the Debtors or the assets of the Debtors.

7      3.      All Documents that refer, relate to or evidence Communications between You and

8  Lehman Concerning the Projects, Loans, Loan Agreements, the Debtors or the assets of the Debtors.

9      4.      All Documents Concerning any secured or unsecured interest you have or purport to

10  have in the Projects, Loans, Loan Agreements, the Debtors or the assets of the Debtors.

11      5.      All Documents concerning "repos," pledges of collateral or other transfer or

12  assignment by Lehman to You of any of its rights or interests in the Projects, Loans, Loan

13  Agreements, or assets of the Debtors.

14      6.      All Documents Concerning demands or claims made by you against Lehman

15  regarding any of its rights or interests in the Projects, Loans, Loan Agreements, or assets of the

16  Debtors.

17      7.      All Documents Concerning litigation between You and Lehman regarding or relating

18  to the Projects, Loans, Loan Agreements, the Debtors, or assets of the Debtors.

19      8.      All Documents Concerning negotiations between You and Lehman regarding or

20  relating to the Projects, Loans, Loan Agreements, the Debtors, or assets of the Debtors.

21      9.      All "repo" agreement, collateral pledge agreements, or other agreements between

22  You and Lehman that refer or relate to the Projects, Loans, Loan Agreements, the Debtors, or assets

23  of the Debtors.

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

3

33857.1

**Exhibit 2, Page 32**

**PROOF OF SERVICE**

STATE OF CALIFORNIA,    )
                               )  SS.
COUNTY OF LOS ANGELES   )

      I am a citizen of the United States and employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action. I am employed by MILLER BARONDESS, LLP and my business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, California 90067.

      On **April 6, 2009**, I served ☐ the original ☒ a true copy of the within document(s) described as **SUBPOENA IN AN ADVERSARY PROCEEDING** on all interested parties in this action:

☐    **PERSONAL DELIVERY:** I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☒    **BY MAIL:** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐    **BY OVERNIGHT DELIVERY SERVICE:** I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐    **BY FACSIMILE:** I caused such envelope to be delivered via facsimile to the offices of the addressee(s) at the facsimile numbers listed below. I certify that said transmission was completed and that all pages were received and that a report was generated by the facsimile machine which confirms said transmission and receipt.

☐    **BY ELECTRONIC MAIL:** by transmitting via electronic mail a true copy of the above listed document(s) to the email addresses set forth below on this date before 5:00 p.m.:

☐    **(State)**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    **(Federal)**  I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on **April 6, 2009**, at Los Angeles, California.

Carole Conklin
Type or Print Name

                                      Signature

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

34019.1

**Exhibit 2, Page 33**

1

## SERVICE LIST

2

3  Richard N. Pachulski, Esq.
   Dean A. Ziehl, Esq.
   Shirley S. Cho, Esq.
4  Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Boulevard, 11th Floor
5  Los Angeles, CA 90067-4100
   Telephone:    (310) 277-6910
6  Facsimile:    (310) 201-0760

7  Edward Soto, Esq.
   Shai Waisman, Esq.
8  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
9  New York, NY 10153-0119
   Telephone:    (212) 310-8000
10 Facsimile:    (212) 310-8007

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

34019.1

**Exhibit 2, Page 34**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| BRIAN A. PROCEL, Bar #218657<br>MILLER BARONDESS, LLP<br>1999 AVENUE OF THE STARS<br>SUITE 1000<br>LOS ANGELES, CA 90067<br>Telephone No: 310-552-4400      FAX No: 310-552-8000 | |

Attorney for: Plaintiff

Ref. No. or File No.:

Insert name of Court, and Judicial District and Branch Court:

United States Bankruptcy Court, Central District Of California

Plaintiff: PALMDALE HILLS PROPERTY, LLC, ET AL.

Defendant: LEHMAN ALI, INC., ET AL.

| **PROOF OF SERVICE** | Hearing Date:<br>Fri, Apr. 17, 2009 | Time:<br>10:00AM | Dept/Div: | Case Number:<br>8:09-AP-01005-ES |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUBPOENA IN AN ADVERSARY PROCEEDING; NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE AT JPMORGAN CHASE & COMPANY AND SUBPOENA DUCES TECUM FOR PRODUCTION OF DOCUMENTS.

3. a. Party served:          JPMORGAN CHASE & CO.
   b. Person served:         MARGARET WILSON, PROCESS SPECIALIST, CT CORPORATION SYSTEM, REGISTERED AGENT.

4. Address where the party was served:     818 WEST SEVENTH STREET
                                           2ND FLOOR
                                           LOS ANGELES, CA 90017

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Mon., Apr. 06, 2009 (2) at: 2:55PM
   b. I received this subpena for service on:     Monday, April 06, 2009

6. Witness fees were offered or demanded, and paid:     $40.00

7. *Person Who Served Papers:*                         Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. DOUG FORREST                        d. *The Fee for Service was:*
   b. **FIRST LEGAL SUPPORT SERVICES**    e. I am: (3) registered California process server
      1511 W. BEVERLY BLVD.                  *(i)* Independent Contractor
      LOS ANGELES, CA 90071                  *(ii) Registration No.:*     5141
   c. 213-250-1111                           *(iii) County:*              Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   Date: Fri, Apr. 10, 2009

Judicial Council Form                         PROOF OF SERVICE                    (DOUG FORREST)
Rule 2.150.(a)&(b) Rev January 1, 2007                                                        4334930.bripr.203552

**Exhibit 2, Page 35**

**EXHIBIT "3"**

# WEIL, GOTSHAL & MANGES LLP

1395 BRICKELL AVENUE
SUITE 1200
MIAMI, FLORIDA 33131
(305) 577-3100
FAX: (305) 374-7159

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MUNICH
NEW YORK
PARIS
PRAGUE
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

EDWARD SOTO
DIRECT LINE (305) 577-3177
E-MAIL: edward.soto@weil.com

April 15, 2009

**VIA E-MAIL AND U.S. MAIL**

Louis R. Miller, Esq.
Miller Barondess, LLP
1999 Avenue of the Stars
Suite 1000
Los Angeles, California 90067

      Re:    Santa Ana Bankruptcy Cases

Dear Mr. Miller:

We are in receipt of your letter dated March 26, 2009. We reject the various allegations and innuendo contained in your letter. However, rather than engage in an unproductive exchange of posturing letters, in the spirit of cooperation we are happy to provide you with the information set forth below in response to your letter.

As to your first request, please be advised that each of the following properties serve as collateral (either through deeds of trust directly encumbering such properties or otherwise through direct or indirect pledges of membership interests in the project-owning entities) for loans which are subject to a repurchase agreement with a counterparty (the "Repo Loans"):

      Acton Ranch
      Emerald Meadows
      Ritter Ranch
      Bickford Ranch
      Beaumont Heights
      Summit Valley
      Johannson Ranch
      Oak Valley Champions
      Northlake
      Palm Springs Village
      10000 Santa Monica

MII:\20716A\11\4F5KK11!.DOC\58399.0003

WC000272

**Exhibit 3, Page 36**

**WEIL, GOTSHAL & MANGES LLP**

Louis R. Miller, Esq.
April 15, 2009
Page 2

> Delta Coves
> Marblehead
> Heartland
> Pacific Point

The various counterparties under the repurchase agreements, namely Lehman Re Ltd. (Pacific Point), Danske Bank, London Branch (10000 Santa Monica) and Fenway Capital Funding, LLC (all other Repo Loans), and JPMorgan Chase, which you subpoenaed, may claim some interest in certain of the Repo Loans. In fact, Danske Bank has taken an assignment of the Repo Loan secured by 10000 Santa Monica and has raised defenses to the credit bid motion in certain of the pending cases.

Your letter states that "[i]nformation has come to light" regarding the Repo Loans. As you informed us, you have already served a "Notice of Deposition of Person Most Knowledgeable at JPMorgan Chase & Company and Subpoena Duces Tecum for Production of Documents." We would appreciate the reciprocal favor of your providing us with the "information" in your possession.

As to your second request, the parties have had initial Rule 26(f) conferences and are in the process of addressing discovery issues, including the appropriate level of discovery and the information that will be produced in connection with those efforts. We look forward to working with you to address these issues in the context of that discovery process, as appropriate.

Sincerely,

*Ed Soto*

Edward Soto

cc:
    Paul J. Couchot, Esq.
    Alan J. Friedman, Esq.
    Lei Lei Wang Ekvall, Esq.
    Steven N. Speier
    Bruce V. Cook, Esq.
    W. Michael Bond, Esq.
    Richard Pachulski, Esq.
    Dean A. Ziehl, Esq.
    Nellie P. Camerik, Esq.
    Shai Y. Waisman, Esq.

MI1:\2071\64\11\4F%K11\DOC\58399.0003

WC000273

**Exhibit 3, Page 37**