1    PAUL J. COUCHOT - State Bar No. 131934
     pcouchot@winthropcouchot.com
2    **WINTHROP COUCHOT**
     **PROFESSIONAL CORPORATION**
3    660 Newport Center Drive, Fourth Floor
     Newport Beach, CA 92660
     Telephone: (949) 720-4165
4    Facsimile: (949) 720-4111
     General Insolvency Counsel for Administratively
5    Consolidated Debtors-in-Possession and Counsel
     for SCC Acquisitions, Inc.
6
     ROBERT P. GOE - State Bar No. 137019
7    rgoe@goeforlaw.com
     **GOE & FORSYTHE, LLP**
8    18101 Von Karman Avenue, Suite 510
     Irvine, California 92612
9    Telephone: (949) 798-2460
     Facsimile: (949) 955-9437
10   Counsel for SunCal Management, LLC

11                    **UNITED STATES BANKRUPTCY COURT**
                       **CENTRAL DISTRICT OF CALIFORNIA**
12                          **SANTA ANA DIVISION**
     In re                                          Case No. 8:08-bk-17206-ES
13   PALMDALE HILLS PROPERTY, AND ITS               Jointly Administered With Case Nos.
     RELATED DEBTORS,                               8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES;
14                                                  8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES;
              Joint Administered Debtors            8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES;
15            and Debtors-in-Possession             8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES;
                                                    8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES;
16   Affects:                                       8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES;
     ☒ All Debtors                                  8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES;
17   ☐ Palmdale Hills Property, LLC                 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES;
     ☐ SunCal Beaumont Heights, LLC                 and 8:08-bk-17588-ES
18   ☐ SCC/Palmdale, LLC
     ☐ SunCal Johannson Ranch, LLC                  Chapter 11 Proceedings
19   ☐ SunCal Summit Valley, LLC
     ☐ SunCal Emerald Meadows LLC                   **NOTICE OF MOTION AND MOTION FOR AN**
20   ☐ SunCal Bickford Ranch, LLC                   **ORDER (1) IMPOSING A DISCRETIONARY**
     ☐ Acton Estates, LLC                           **STAY SUSPENDING ALL MATTERS AND**
21   ☐ Seven Brothers LLC                           **PROCEEDINGS FILED OR BEING PURSUED**
     ☐ SJD Partners, Ltd.                           **BY THE LEHMAN ENTITIES UNTIL ALL**
22   ☐ SJD Development Corp.                         **ALLEGEDLY APPLICABLE LEHMAN**
     ☐ Kirby Estates, LLC                           **ENTITIES' AUTOMATIC STAYS IN THE**
23   ☐ SunCal Communities I, LLC                    **SUNCAL DEBTORS' CHAPTER 11 CASES**
     ☐ SunCal Communities III, LLC                  **ARE LIFTED, (2) EXTENDING THE**
24   ☐ SCC Communities LLC                          **LIMITATIONS PERIOD UNDER 11 U.S.C. §**
     ☐ North Orange Del Rio Land, LLC               **546(a) AND (3) CONFIRMING THAT 11 U.S.C.**
25   ☐ Tesoro SF LLC                                **§ 108(c) AUTOMATICALLY EXTENDS THE**
     ☐ LBL-SunCal Oak Valley, LLC                   **PERIOD OF TIME FOR THE**
26                                                  **COMMENCEMENT OF CERTAIN ACTIONS;**
     ☐ SunCal Heartland, LLC                        **MEMORANDUM OF POINTS AND**
27   ☐ LBL-SunCal Northlake, LLC                    **AUTHORITIES**
              *Caption Continued on Next Page*      Date:
28                                                  Time:
                                                    Place:       Courtroom 5A

1

*Continued from Previous Page*

☐ SunCal Marblehead, LLC

2

☐ SunCal Century City, LLC

☐ SunCal PSV, LLC

3

☐ Delta Coves Venture, LLC

☐ SunCal Torrance, LLC

4

☐ SunCal Oak Knoll, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1         Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC,

2    SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal Emerald, LLC, SunCal

3    Johansson, LLC, SunCal Bickford, LLC, SunCal Summit, LLC, Seven Brothers, LLC, Kirby

4    Estates, LLC, SJD Partners, LLC, SJD Development, LLC, SCC Communities, LLC, North Orange

5    Del Rio, LLC and Tesoro SF, LLC (the "Voluntary Debtors"), SCC Acquisitions, LLC ("SCC') (the

6    "SunCal Proponents") and SunCal Management LLC, (together the "SunCal Parties") hereby move

7    the Court, for an order granting the following relief:

8         1.     Staying all pending contested matters and adversary proceedings, including all plan

9    and disclosure statement proceedings and/or adversary proceedings, filed by Lehman Commercial

10   Paper, Inc.("LCPI"), Lehman Brothers Holdings, Inc. ("LBHI"), Lehman ALI, Inc. ("ALI"), or

11   Lehman Re Ltd. (together the "Lehman Entities"), whether in their own right or in the name of a

12   third party, in the cases of the Voluntary Debtors and the Trustee Debtors (collectively the "SunCal

13   Debtors"), until all such Lehman Entities stipulate to relief from each of their respective automatic

14   stays for all purposes in the SunCal Debtors' Chapter 11 proceedings, or such stays are otherwise

15   lifted and all appeal periods with respect thereto have expired;

16        2.     Extending and tolling the SunCal Debtors' limitations period under 11 U.S.C.

17   § 546(a), pursuant to Bankruptcy Rule 9006(b), as to the Lehman Entities;

18        3.     To the extent necessary, confirming that 11 U.S.C. § 108(c) extends the time to

19   commence actions against the Lehman Entities;

20        4.     Extending the SunCal Debtors' limitations period under 11 U.S.C. § 546(a) ,

21   pursuant to Bankruptcy Rule 9006(b), as to Bond Safeguard Insurance Co and Lexon Insurance Co.

22   ("Bond Safeguard"), Arch Insurance Company ("Arch"), Voss, Cook & Thel, LLP ("VC&T"),

23   Miller Barondess LLP ("MB"), SunCal Management, LLC ("SunCal Management"), SCC

24   Acquisition Inc. ("SCC Acquisition") and SC Master Marketing, LLC ("SC Master"); and

25        Such further relief as the Court deems just and proper.

26        This Motion is based upon the Declaration of Bruce Cook (the "Cook Declaration") and the

27   Declaration of Paul J. Couchot (the "Couchot Declaration") filed concurrently herewith, the within

28

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1  points and authorities and upon such further evidence and authorities as this Court elects to consider

2  prior to or at the hearing on this matter.

3  DATED: September __, 2010               **WINTHROP COUCHOT**

4                                          **PROFESSIONAL CORPORATION**

5                                          By:_____

6                                              Paul J. Couchot,
                                            Attorneys for the Voluntary Debtors and
7                                           SCC Acquisition, Inc.

8
   DATED: September __, 2010               **GOE & FORSYTHE, LLP**
9

10                                          By:_____

11                                              Rob P. Goe
                                            Counsel for SunCal Management, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

In February of 2009, the Voluntary Debtors and SCC Acquisitions, Inc.[1] (the "SunCal Plan Proponents") filed a Joint Plan of Reorganization (the "SunCal Joint Plan") as to all of the SunCal Debtors' cases. The SunCal Joint Plan and its subsequent amendments provide for the marketing and sale of all real property assets owned by the SunCal Debtors' respective estates and for the distribution of the proceeds from these sales in accordance with the priority scheme and claims allowance/disallowance process provided for under the Bankruptcy Code. Pursuant to the SunCal Joint Plan, the Lehman Entities are also denied the right to credit bid their twenty-two disputed secured claims filed against the SunCal Debtors based upon 12 Disputed Loans, at these sales. Such treatment under a plan has been recently upheld by two Circuit Courts of Appeals as providing for fair and equitable treatment without any contrary authority. See *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010) and *In re Pacific Lumber Co.*, 584 F.3d 229, 245 (5th Cir. 2009).

Also, in February 2009, the Chapter 11 Trustee for the Trustee Debtor's (the "Trustee") and certain of the Voluntary Debtors filed a sales procedures motion based upon a purchase offer by D.E. Shaw for twelve (12) of the SunCal Debtors' Projects for $200 Million, which was eventually modified to include only eight of the nine Trustee Debtors, for a purchase price of $150 Million (the "Sales Procedure Motion"). After months of negotiations with the Lehman Entities and multiple continuances at the request of the Lehman Entities, the Trustee withdrew the Sales Procedures Motion, primarily on the basis of the Lehman Entities' promotion of *competing plan*s between the SunCal Proponents and the Lehman Entities.

At the time of the Trustee's agreement with the Lehman Entities to withdraw the Sales Procedures Motion approximately one year ago, the Lehman Entities' automatic stay in the SunCal Debtors' cases were not an issue in the SunCal Debtors Chapter 11 cases because (1) the Trustee Debtors did not have any Lehman Entities as their lender; and (2) this Court had determined, pursuant to the order and findings entered on October 2, 2010, that LCPI (the only debtor Lehman

---

[1] SCC Acquisitions, Inc. is an indirect owner of all of the SunCal Debtors, as well as an alleged administrative claimant of most of the SunCal Debtors.

1  Entity lender) had sold its entire interest in the two of the three Disputed Loans it held against the

2  Voluntary Debtors pursuant to a Master Repurchase Agreement with Fenway Capital on August 22,

3  2008 (the "Repo"), along with five other Disputed Loans sold by nondebtor Lehman Entities against

4  the Trustee Debtors (the "Ownership Order" and "Ownership Findings").[2]  The seven Disputed

5  Loans sold to Fenway pursuant to the Repo are hereinafter referred to as the "Fenway Disputed

6  Loans".

7        Unfortunately, despite the Voluntary Debtors' Opposition thereto, pursuant to an order of

8  the Bankruptcy Court of the Southern District of New York ("New York Bankruptcy Court")

9  entered on May 13, 2010 ("Compromise Order"), LCPI was allowed to purchase all of the seven (7)

10 Fenway Disputed Loans, including the five Fenway Disputed Loans previously held by the non-

11 debtor Lehman Entities that held loans against the Trustee Debtors[3] under the guise of a purported

12 "compromise" (the "Claims Transaction").  The Compromise Order also approved the granting of

13 liens on the Fenway Disputed Loans in favor of LBHI, another debtor Lehman Entity.

14       Along with opposing the Claims Transaction, the Voluntary Debtors also filed a motion for

15 relief from stay in New York seeking a determination that the Lehman Entities stay would not apply

16 or requesting that any such stay would be lifted (the "RFS Motion") that arose from the Claims

17 Transaction.

18       The New York Bankruptcy Court granted the Compromise Motion, and also denied the RFS

19 Motion ("RFS Order").  Pursuant to an expedited appeal, the District Court in the SDNY (defined

20 herein) upheld both the Compromise Order and the RFS Order and both orders are subject to

21 appellate review before the Second Circuit.

22       LCPI and LBHI have now actively invoked their automatic stays in the SunCal Debtors'

23 cases.  By doing so, the Lehman Entities are effectively seeking to stay the SunCal Debtors'

24
25  [2] As a result of the Ownership Findings, the only Disputed Loan retained by LCPI against any of the SunCal
     Debtors is the Mezzanine loan ("Mezz Loan") which was secured only by an equity pledge of a SunCal
26  parent company, and was not collateralized by any cash or real property.  LCPI's collateral under the Mezz
     Loan was under water by virtue LCPI's own appraisals submitted by LCPI in support of its California Stay
27  Motions.  As to the Mezz Loan, LCPI subsequently negotiated a stipulation with the SunCal Debtors that the
     liens would be void for all purposes other than an unforeseen equity distribution and that LCPI's stay would
28  not be asserted in order to avoid protracted litigation on the Section 506(d) motion.
     [3] The non-debtor Lehman Entities that held loans against the Trustee Debtors are Lehman ALI, OVC
     Holdings LLC and Northlake Holding LLC.

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1  adversary proceeding that includes an equitable subordination action, preference claims and

2  fraudulent conveyance claims against the Lehman Entities (the "Lehman Adversary Proceeding").

3  Counsel for the Lehman Entities is also asserting that their automatic stay could be violated by any

4  plan filed by the SunCal Proponents.  In effect, counsel for the Lehman Entities is asserting that

5  their automatic stay will restrict the SunCal Plan Proponent's ability to treat the Lehman Entities

6  under the plan as otherwise allowed under the Bankruptcy Code.  If this process is allowed to

7  proceed with this unfair dynamic of LCPI and LBHI being allowed to use their stays as "swords" in

8  the SunCal Debtors' cases, their claims and liens that should properly be disallowed, subordinated

9  or avoided, will enjoy wholly unjustified immunity without challenge.

10       If the current status is allowed to proceed with this unfair dynamic of LCPI and LBHI being

11  allowed to use their stays as "swords" in the SunCal Debtors' cases, the Fenway Disputed Loans,

12  Fenway Disputed Claims and liens that should arguably be disallowed, subordinated or avoided,

13  will enjoy wholly unjustified immunity from challenge in both the Lehman Adversary Proceeding

14  and under the SunCal Joint Plan.  The Lehman Entities' position obviously places the Voluntary

15  Debtors as a severe disadvantage in both their litigation against the Lehman Entities and in the

16  competing plan process.

17       The SunCal Proponents have prepared a Fourth Amended Disclosure Statement describing

18  the Fourth Amended Joint Plan (attached to Couchot Declaration as Exhibit "6") that they believe

19  complies with the Bankruptcy Code.  However, because the SunCal Joint Plan incorporates the

20  results of the Lehman Adversary Proceeding, and seeks to deny their right to credit bid in

21  connection with the sales of the Debtors' assets (a provision recently upheld by two recent Circuit

22  Courts of Appeal as complying with the fair and equitable provisions set forth in 11 U.S.C. §

23  1129(b)), the Lehman Entities will almost certain argue that the SunCal Joint Plan violates their

24  automatic stay.  A true and correct copy, in substantially final form, of the SunCal Proponents'

25  Fourth Amended Disclosure Statement is attached hereto as exhibit "6" and incorporated herein by

26  this reference.

27       The SunCal Proponents and the SunCal Debtors should not be subjected to the risk of an

28  offensive assertion of the Lehman Entities' automatic stay in their New York bankruptcy

1   proceeding, simply by pursuing the Lehman Adversary Proceeding and the SunCal Joint Plan, by

2   virtue of LCPI's post-petition acquisition of Fenway Disputed Loans in order to resurrect its "stay

3   as a sword" argument.  Consequently, the SunCal Proponents believe it is only fair to suspend the

4   Lehman Entities' plan process, unless they agree to provide the SunCal Debtors and the SunCal

5   Proponents with a level playing field that would entail relief from stay on the Lehman Adversary

6   Proceeding and the competing plan process.

7       Furthermore, this dynamic also places the SunCal Proponents at a severe disadvantage in the

8   competing plan process, for several reasons including the following:  First, the SunCal Joint Plan

9   now must presently provide that the Plan's Effective Date would be conditioned upon a

10  determination that the Lehman Entities stay does not apply or is lifted.  Second, because the SunCal

11  Joint Plan incorporates the results of the Lehman Adversary Proceeding, which the Lehman Entities

12  argue is currently stayed, the SunCal Joint Plan is at an extreme voting disadvantage unless and

13  until the unsecured creditors are provided certainty that the Lehman Adversary Proceeding will

14  proceed in the near future.

15      Fortunately, this Court has available to it a simple equitable means to level the playing field.

16  This Court has the inherent power to control its calendar and through this power can and should

17  negate the unfair advantages that the Lehman Entities seek to exploit. *See CMAX, Inc. v. Hall*, 300

18  F.2d 265 (9th Cir. 1962); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th

19  Cir. 1979); *In re Airline Pilots Assn. v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. N. Am.*

20  *Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent

21  in every court to control the disposition of the causes on its docket with economy of time and effort

22  for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment,

23  which must weigh competing interests and maintain an even balance."); *Wheelabrator Clean Water*

24  *Sys. v. Old Kent Bank and Trust Co.*, No. 93-cv-1016, 1995 U.S. Dist. LEXIS 2330 at 2 (W.D.

25  Mich. Jan 30, 1995).

26      In this case, employing this power to defer consideration of the Lehman Entities' plan, until

27  the Lehman Entities stipulate to relief from the automatic stay for all purposes in the SunCal

28  Debtors' Chapter 11 cases, will provide the equality of treatment contemplated in the Bankruptcy

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1    Code.  Furthermore, such relief will provide the SunCal Proponents the opportunity of participating

2    in a fair competing plan contest contemplated by the Trustee when the Trustee withdrew the Sales

3    Procedures Motion approximately a year ago.

4                                                    **II.**

5                             **SUMMARY OF MATERIAL FACTS**

6           **A.      The SunCal Debtors and the Lehman Joint Venture.**  The SunCal Debtors were

7    formed as part of a joint venture with affiliates of LBHI, including, most importantly, LCPI and

8    non-debtor affiliate ALI, to develop a series of large residential real estate projects in California (the

9    "Projects").  (See Cook Declaration).  Between 2005 and 2007, ALI and LCPI (together with OVC

10   Holdings LLC ("OVC") and Northlake Holdings LLC ("Northlake"), collectively the "Lehman

11   Lenders") made the Disputed Loans to the SunCal Debtors.

12          Unbeknownst to the SunCal Debtors, and three days before the closing of a previously

13   executed restructuring agreement, on August 22, 2008—just three days before this closing—LCPI,

14   as "Seller," and Fenway, as "Buyer," entered into a repurchase agreement ("Repo"), pursuant to

15   which LCPI transferred all of its right, title and interest in the Fenway Disputed Loans.  (See

16   Ownership Findings, Docket Entry 652).

17          **B.      The Lehman and SunCal Debtors' Chapter 11 Filings.**  LBHI filed for

18   bankruptcy in September 2008.  LCPI filed for bankruptcy in October 2008 (Lehman ALI and the

19   other Lehman Entities did not file for bankruptcy).  Although these filings alleviated the financial

20   pressures afflicting LCPI and LBHI, they did not provide any relief to the SunCal Debtors.

21   Significant sums had to be spent on site security, erosion prevention, property taxes and other

22   measures in order to prevent the Projects from becoming a public safety hazard, and in order to

23   prevent losing valuable entitlements, accruing penalties and fines, and other losses to the Projects.

24   (See Cook Declaration).

25          **C.      The SunCal Debtors' First New York RFS Motion.**  After filing their own

26   Chapter 11 cases, the SunCal Debtors were faced with an anomalous circumstance.  LCPI, the

27   *purported* holder of a series of liens and claims against their estates, was itself in a Chapter 11 case,

28   and consequently this entity was protected by its own automatic stay.  In order to avoid a future

1    inadvertent violation of this alleged stay, in November 2008, certain SunCal Debtors filed a motion

2    in LCPI's New York bankruptcy case seeking relief from stay, to the extent necessary to generally

3    administer their newly filed cases in California ("First NY RFS Motion").

4          Prior to the hearing on the above motion, LCPI and the other Lehman Entities failed to

5    disclose the Repo of the Fenway Disputed Loans, and their opposition even implied that their

6    automatic stay applied to all of the SunCal Debtors.  The New York Bankruptcy Court denied the

7    SunCal Debtors' First NY RFS Motion without prejudice presumably in part because of the failure

8    to disclose the Repo of the Fenway Disputed Loans.

9          **D.      The California Stay Finding.** In January of 2009, LCPI filed seven motions for

10    relief from the automatic stay in this Court against the Voluntary Debtors (the "Stay Motions"), *six*

11    *of which were based on Fenway Disputed Loans.*[4]  The Stay Motions again did not disclose Fenway

12    or the Repo.  To the contrary, the Lehman Entities alleged in the Stay Motions that LCPI was the

13    sole holder of two of the Disputed Loans and on the basis of this alleged ownership interest

14    contended that any effort by the Voluntary Debtors to reorganize was effectively futile, due to the

15    impairment imposed by LCPI's automatic stay.

16          In response to the foregoing argument, the Voluntary Debtors argued that LCPI's stay was

17    not implicated by their assertion of equitable subordination, as it was a defensive act.[5]  This Court

18    agreed with this analysis and denied the Stay Motions, on various grounds.  The order denying relief

19    from stay included a finding that the pursuit of an effort to equitably subordinate LCPI's claims and

20    liens would not violate LCPI's automatic stay (the "Stay Finding").

21          LCPI appealed the Stay Finding to the Ninth Circuit BAP.  As set forth below, the BAP

22    reversed in a 2-1 split decision, which has been further appealed to the Ninth Circuit Court of

23    Appeals.  The Voluntary Debtors' motion to expedite the Ninth Circuit appeal was opposed by

24    LCPI and denied by the Ninth Circuit.

25

26    _____

      [4] The seventh Stay Motion was based upon the disputed Mezz Loan.  See footnote 2, supra.  An eighth Stay Motion was
27    filed by Lehman ALI.
      [5] See In re Wheatfield Business Park, 308 B.R. 463, 466 (9th Cir. BAP 2004) (claim objection is defensive act with does
28    not violate claimant's automatic stay); In re Financial News Network, 158 B.R. 570 (S.D.N.Y. 1993) (same); In re
      Metiom, 301 B.R. 634, 638-639 (Bankr.S.D.N.Y. 2003) (equitable subordination is defensive, and thus does not violate
      claimant's automatic stay).

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

E.    **The SunCal Debtors' Lehman Adversary Proceeding and Chapter 11 Plan.**

Prior to the Stay Finding, on January 6, 2009, the SunCal Debtors had filed the Lehman Adversary Proceeding seeking initially to equitably subordinate the claims and liens asserted by the *non-debtor* Lehman Entities (i.e., Lehman ALI, Northlake and OVC), Adv. No. 8:09-ap-01005-ES. After the Stay Finding, the Lehman Adversary Proceeding was amended in March 2009 to include LCPI as a defendant as well as to include certain fraudulent conveyance claims against LCPI and preference actions against certain of the non-debtor Lehman Entities.[6]

In February 2009, the Voluntary Debtors filed the initial SunCal Joint Plan. Under the SunCal Joint Plan and its subsequent amendments, the SunCal Debtors (i) incorporated the Lehman Adversary Proceeding; (ii) sought to sell the Projects free and clear of the Lehman Entities' Credit Bid Rights; and (iii) proposed to make distributions to their creditors that were harmed by the Lehman Entities' inequitable conduct to the extent provided for in the future judgment rendered in the Lehman Adversary Proceeding. The SunCal Joint Plan has been amended from time to time, but has retained the same core terms.

F.    **The Sales Procedures Motion.** In February 2009, the Chapter 11 Trustee, SCC Communities, Del Rio, and Tesoro filed the Sales Procedures Motion. This motion sought the approval of overbid procedures pursuant to a purchase offer from D.E. Shaw for $200 million. As part of the Sales Procedures Motion, the SunCal Debtors conditioned the sale on the disallowance of Lehman ALI's credit bid rights.

On June 9, 2009, the Sales Procedures Motion was thereafter modified to include a purchase of only the Trustee Debtors' Projects. In August 2009, the Sales Procedures Motion was further modified to exclude the 10,000 Santa Monica Project owned by SunCal Century City and to reduce the purchase price to $150 million pursuant to a settlement agreement between Danske Bank and the Trustee.

After several continuances of the Sales Procedure Motion, the Trustee entered into a settlement with the Lehman Entities agreeing to defer the sale of the Trustee Debtors' Projects to

---

[6] The Third Amended Complaint was filed on July 10, 2009, inter alia adding Fenway as a defendant. The Fourth Amended Complaint was filed on March 26, 2010, after the dismissal of LCPI without prejudice.

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1    after the Confirmation Hearing, on the basis of promoting competing plans and in exchange for

2    certain financing and purportedly promoting competing plans.

3        **G.    The Lehman Entities' Competing Plan and Disclosure Statement.** The Lehman

4    Entities have filed their own competing joint plan of reorganization and accompanying disclosure

5    statement in the Cases (the "Lehman Plan").    When this competing plan was filed, the parties and

6    the Court agreed to place both the SunCal Joint Plan and the Lehman Plan on the same procedural

7    track, in recognition of the fact that the creditors of each respective estate would receive the best

8    "deal," if the competing efforts moved forward on an equal footing and all proponents were required

9    to compete on a level playing field.

10       **H.    The California Ownership Finding.**    During the first eleven months of the SunCal

11   Debtors' Chapter 11 cases, the Lehman Entities concealed the existence of the Repo in multiple

12   pleadings in both this Court and even in the New York Bankruptcy Court.    Meanwhile, the Lehman

13   Entities used LCPI's alleged ownership interest in the Fenway Disputed Loans as a means of

14   thwarting the SunCal Debtors' cases through the assertion of LCPI's automatic stay.    On March 27,

15   2009, the Lehman Entities also filed the thirteen (13) proofs of claim relating to the Fenway

16   Disputed Loans totaling $1.6 billion as creditors and without disclosing the Repo to Fenway.[7]

17       In April 2009, the sale of the Fenway Disputed Loans to Fenway was finally revealed,

18   through third party discovery propounded by the SunCal Proponents.    Based on this discovery, in

19   May 2009, the SunCal Debtors filed a Motion to Strike the Fenway Disputed Claims *inter alia* on

20   the grounds that the Lehman Entities were not entitled to file claims with respect to the Fenway

21   Disputed Loans as "creditors," since ownership of these loans had passed to Fenway pursuant to the

22   Repo.

23

24

---

25   [7] Of the seven (7) Disputed Fenway Loans, only the two loans in which LCPI was the claimant (i.e,
     the SunCal Communities I Loan and Ritter Ranch Loan) were arguably held by a *debtor* Lehman

26   Entity, and both of these loans were solely asserted against the respective Voluntary Debtors.    The
     remaining five Fenway Disputed Loans (i.e., SunCal PSV Loan, SunCal Delta Coves Loan, SunCal

27   Marblehead/Heartland Loan, SunCal Oak Valley Loan and SunCal Northlake Loan) were held by
     non-debtor Lehman Entities and were asserted against the respective Trustee Debtors

28

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1    At the hearing on June 30, 2009, this Court granted the Motion to Strike, and on October 2,

2    2009, entered formal findings regarding the dispute. These findings confirmed that all right, title

3    and interest in the Fenway Disputed Loans had been transferred to Fenway pursuant to the Repo in

4    August 22, 2008, a month before the Lehman bankruptcy, and three months before the SunCal

5    Debtors' bankruptcies, and that Fenway continued to hold these ownership rights (the "Ownership

6    Finding"). In the Ownership Findings, the Court also found that the Lehman Entities intentionally

7    misrepresented their status as "creditors" as to the Fenway Disputed Loans. As a result of the

8    Ownership Findings, the Lehman Adversary Proceeding then proceeded against Fenway, as the

9    owner of the Fenway Disputed Claims.

10    **I.    The BAP's Decision on the Stay Finding and LCPI's Dismissal from the**

11    **Lehman Adversary Proceeding.** On December 15, 2009, the Ninth Circuit Bankruptcy Appellate

12    Panel reversed the Stay Finding (the "BAP Order") in a divided two-to-one ruling. *In re Palmdale*

13    *Hills Property LLC*, 423 B.R. 655 (9th Cir. BAP 2009). Although the SunCal Debtors have appealed

14    this ruling to the Ninth Circuit Court of Appeals on various grounds, the BAP ruling only had a

15    *minimal* impact on the Lehman Adversary Proceeding, since, at that juncture, the Ownership

16    Findings established that all of the Disputed Claims were either owned by non-bankrupt Fenway, by

17    Lehman Entities who were not in Chapter 11, or in the case of the Mezz Loan LCPI stipulated that

18    its stay did not apply (see footnote 2). Accordingly, not only was LCPI's automatic stay irrelevant,

19    LCPI was no longer a necessary defendant in the Lehman Adversary Proceeding. In March of 2010,

20    this Court dismissed LCPI from the Lehman Adversary Proceeding on the basis of the BAP Order.

21    **J.    The New York Claims Transaction and the Second New York RFS Motion.**

22    Once LCPI's lack of any ownership interest in the Fenway Disputed Loans was established, its "our

23    stay applies" contentions were no longer sustainable. In an effort to again renew this argument,

24    LCPI and Fenway engineered the Claims Transaction. Under the "compromise," LCPI and Fenway

25    agreed that Fenway would sell all of the Fenway Disputed Loans to LCPI--even those loans

26    previously held by non-debtor Lehman Entities. This Claims Transaction would then allow the

27    previously dismissed LCPI to force its way back into the Lehman Adversary Proceeding, as the new

28    owner of the Fenway Disputed Loans, and to once again insist that its automatic stay barred the

1  Lehman Adversary Proceeding and in fact the SunCal Debtors overall reorganization effort. This

2  manipulative claims swap would also have the added benefit of *expanding* the purported reach of

3  LCPI to cover both the Voluntary Debtors and the Trustee Debtors (the latter entities had no

4  prepetition lending relationship with LCPI - this relationship was created by the "parking" of all of

5  the Fenway Disputed Loans in LCPI through the Claims Transaction).

6      Upon receipt of the motion seeking approval of the Claim Transaction (the "Compromise

7  Motion"), the SunCal Debtors filed a limited opposition, wherein they advised the New York

8  Bankruptcy Court that they only opposed the Compromise Motion to the extent the transaction

9  would impose LCPI's stay against the Lehman Adversary Proceeding.  After the SunCal Debtors

10  filed their opposition to the Compromise Motion, the Lehman Entities lodged a revised order

11  containing new finding granting LBHI a lien on the Fenway Disputed Loans, as a result of which

12  LBHI contended "the automatic stay in favor of LBHI will continue to apply as a result of LBHI's

13  liens and security interests in all of the Repo Assets including such SunCal Loans."  The SunCal

14  Debtors objected to Lehman's revised form of order *inter alia* on the grounds that the findings were

15  an obvious artifice designed to cloak the Fenway Disputed Loans with LBHI's automatic stay, just

16  in case LCPI's stay was rendered inapplicable in the future.

17      Also in response to the Compromise Motion, the SunCal Debtors filed a motion for relief

18  from the automatic stay as to both LCPI and LBHI ("Second New York RFS Motion").  The Trustee

19  Debtors subsequently withdrew their portion of the Second New York RFS Motion.

20      At the hearing on the Compromise Motion and the Second New York RFS Motion, the

21  Voluntary Debtors advised the New York Bankruptcy Court that if the Compromise Motion was

22  approved, and the automatic stay was deemed to bar the Lehman Adversary Proceeding, the

23  Voluntary Debtors' reorganization efforts would be irreparably harmed. The New York Bankruptcy

24  Court rejected these concerns and approved the Compromise Motion.  Further, the New York

25  Bankruptcy Court refused to grant the Voluntary Debtors relief from the automatic stay to continue

26  to pursue the Lehman Adversary Proceeding. The New York Bankruptcy Court entered the order

27  denying the Second New York RFS Motion on May 17, 2010 (the "RFS Order) and the order

28  approving the Compromise Motion on May 13, 2010 (the "Compromise Order").

1    The Voluntary Debtors appealed the RFS Order and the Compromise Order to the District

2    Court in New York (the "SDNY") and were denied relief.

3    The Voluntary Debtors have appealed the SDNY ruling to the Second Circuit Court of

4    Appeals and they intend to seek expedited relief.

5    **K.    The Reasons Why a Discretionary Stay Should Be Granted By This Court**. The

6    Lehman Entities' use of its stay to bar recourse against the very claims and liens it is asserting in the

7    SunCal Debtors' Cases imposes an unjust and unsustainable "straightjacket" on all other

8    stakeholders in the reorganization process for the following reasons:

9    1.    SunCal Joint Plan. Counsel for the Lehman Entities is asserting that their

10    automatic stay could be violated by any plan filed by the SunCal Proponents. In effect, counsel for

11    the Lehman Entities is asserting that their automatic stay will restrict the SunCal Plan Proponent's

12    ability to treat the Lehman Entities under the plan as otherwise allowed under the Bankruptcy Code.

13    The SunCal Proponents have prepared a Fourth Amended Disclosure Statement

14    describing the Fourth Amended Joint Plan that they believe complies with the Bankruptcy Code.

15    However, because the SunCal Joint Plan incorporates the results of the Lehman Adversary

16    Proceeding, and seeks to deny their right to credit bid in connection with the sales of the SunCal

17    Debtors' assets (a provision recently upheld by two recent Circuit Courts of Appeal as complying

18    with the fair and equitable provisions set forth in 11 U.S.C. § 1129(b)), the Lehman Entities will

19    almost certain argue that the SunCal Joint Plan violates their automatic stay. The SunCal

20    Proponents should not be subjected to the risk of an offensive assertion of the Lehman Entities'

21    automatic stay in their New York bankruptcy proceeding, simply by pursuing the Lehman

22    Adversary Proceeding and the SunCal Joint Plan, by virtue of their post-petition acquisition of

23    Fenway Disputed Loans in order to resurrect the "stay as a sword" argument. Consequently, the

24    SunCal Proponents believe it is only fair to suspend the Lehman Entities' plan process, unless they

25    agree to provide the SunCal Proponents with a level playing field that would entail relief from stay

26    on the Lehman Adversary Proceeding and the competing plan process.

27    2.    The Voting Impairment. The actions of the Lehman Entities inflicted severe

28    damage upon the creditors of the various estates both pre and post-petition. In any other

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1    reorganization case, the victimized creditors would have right to seek recourse against the Lehman

2    Entities, and such recourse would include, but not be limited to, actions seeking the subordination

3    of the Lehman Entities' claims and liens. Instead of this equitable paradigm, the Lehman Entities

4    have insisted that their disputed claims and liens, alone, must not only be held sacrosanct, but

5    should be accorded the status of allowed claims in the upcoming confirmation fight. Allowing this

6    one-sided construct to stand would be the height of inequity. The actions of the Lehman Entities

7    caused the financial damages being borne by the SunCal Debtors and most of the creditors seeking

8    payment. Had the existing Lehman Adversary Proceeding proceeded apace, the Lehman Entities'

9    claims would either be disallowed and/or subordinated at this juncture, or they would enter the

10   confirmation arena facing a high degree of skepticism from the voting creditors who were abused by

11   these claimants. In sum, by shielding their claims from attack, the Lehman Entities have gained an

12   unfair advantage in the confirmation process. In essence, they get the benefits of the process, but

13   unlike all other creditors, and in particular the SunCal Proponents, they are not required to bear the

14   burdens or play by the same rules.

15          3.     The Feasibility Impairment. The feasibility of the SunCal Joint Plan is

16   premised, in part, upon the disallowance, subordination, and/or avoidance of the Lehman Entities'

17   claims and liens.  In addition there are preference actions of well over $16 million against the

18   Lehman Entities.  Had such litigation proceeded apace, the SunCal Proponents would either have a

19   favorable judgment at this juncture, or their case would have proceeded to the point where the

20   inherent defects in the Lehman Entities' claims and liens would be readily apparent, either through

21   discovery, or through a summary judgment ruling. The Lehman Entities' bad faith concealment of

22   the Repo and related litigation tactics have imposed a substantially greater burden upon the SunCal

23   Proponents and they have deprived the creditors of clarity on these critical issues. This is unfair to

24   both the creditors and the SunCal Proponents.

25          4.     The Claims Estimation Impairment. As the Court is aware, the Lehman

26   Adversary Proceeding was proceeding until the Lehman Entities successfully conspired to engineer

27   a stay of this action through the Claims Transaction. Now these same claims will have to be

28   estimated for both voting and feasibility purposes. These estimation contests will necessarily require

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1  this Court to preliminarily resolve many of the same issues raised in the Lehman Adversary

2  Proceeding, but in a summary environment. This will force the SunCal Proponents to present their

3  side of the case in a severely abbreviated manner, without the benefit of the discovery that would

4  have been available, but for the Lehman Entities' opportunistic use of the automatic stay. This is

5  unfair and places the SunCal Proponents at a severe disadvantage. It also prevents the creditors

6  from obtaining a clear picture of merits of this central dispute until after they have voted. This

7  inequity should not be allowed to stand.

8          5.      The Objection To Claims Impairment. The SunCal Proponents are preparing

9  and will shortly file objections to the claims and liens of the Lehman Entities on the basis of what

10  are established "affirmative defenses" under 11 U.S.C. § 502(d) and California law - recoupment,

11  offset, unclean hands, estoppel, breach of contract (failure of performance) and waiver. Objections

12  to claims are not deemed to be violative of the automatic stay in either the Ninth Circuit or the

13  Second Circuit. See In re Wheatfield Business Park, 308 B.R. 463, 466 (9th Cir. BAP 2004); In re

14  Financial News Network, 158 B.R. 570 (S.D.N.Y. 1993). However, the SunCal Proponents will

15  undoubtedly receive the same behind the scenes in terrorem phone calls from the Lehman Entities'

16  alleging, yet again, that these actions violate LCPI's stay and that sanctions will be forthcoming

17  from New York if the objections proceed.

18          6.      The Perception Disadvantage. The current version of the SunCal Joint Plan

19  advises creditors that a substantial recovery is a realistic possibility, if the litigation against Lehman

20  proceeds and succeeds. Now that this litigation is stayed for an indefinite period of time, the

21  Lehman Entities have a distinct perception advantage, which they can and will exploit. They can

22  now allege that a dividend under the SunCal Joint Plan is inherently speculative, *because no date*

23  *for the lifting of the Lehman stay has been set and this stasis could exist for months if not years.* In

24  contrast, they will allege that the dividend offered under their plan, however meager (and however

25  illusory since all creditors seeking payment will have to survive the Lehman Entities' litigation

26  maelstrom prior to payment) has the benefit of certainty. No competing plan proponent should be

27  forced to labor under this unfair disadvantage.

28

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

7.      <u>The Good Faith Issue</u>. The Lehman Entities have already engaged in judicially-determined misrepresentations in this proceeding in order to advance their ends. One of the critical issues in the confirmation contest will be the bona fides of the promises and representations being made by a party who has this history of prevarication. In order to obtain a clear picture of who they are purporting to make a "deal" with, the creditors should have the opportunity to fully investigate the Lehman Entities' post-petition actions. However, any effort to initiate such an investigation will undoubtedly generate the Lehman Entities' *de rigueur* threats regarding the automatic stay. No creditor should have to endure this threat when endeavoring to determine the truth about a matter that is one of the criteria (good faith) necessary for confirmation.

**III.**

**<u>GROUNDS AND AUTHORITY EXIST TO GRANT THE</u>**

**<u>RELIEF PRAYED FOR IN THE MOTION</u>**

This Court has the power to manage its docket and stay proceedings in the interests of justice. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) ("A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion."); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); *In re Airline Pilots Assn. v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

The Bankruptcy Court similarly holds such inherent power:

> Courts have the inherent power to regulate their dockets and should use it to stay litigation pending resolution of another case or arbitration proceeding where it will dispose of or narrow the issues to be resolved in that litigation. **That power resides in the bankruptcy court**.

*In re Barney's, Inc.*, 206 B.R. 336, 343-344 (Bankr.S.D.N.Y. 1997). See also *In re Bellucci*, 119 B.R. 763, 770 (Bankr.E.D.Cal. 1990) ("Thus, a bankruptcy court has the inherent power to control its docket, including controlling the timing of proceedings on that docket. Such control is a matter

1  of judicial discretion."); *In re Ahead By A Length, Inc.*, 78 B.R. 708 (Bankr.S.D.N.Y. 1987)

2  (fraudulent transfer action would be stayed for six months pending disposition of criminal tax

3  prosecution).

4      Accordingly, the Bankruptcy Court may suspend proceedings, pursuant to its inherent

5  powers and/or Section 105(a).  For example, in *In re Duratech Industries, Inc.*, 241 B.R. 283

6  (E.D.N.Y. 1999), the Chapter 11 debtor was involved in pending litigation in District Court with a

7  competitor regarding the alleged theft of proprietary information and customer lists. The

8  Bankruptcy Court entered an order suspending the bankruptcy proceedings "pending resolution of

9  the civil litigation before [the District] Court." *Id.* at 286.   On appeal, the District Court affirmed.

> [S]ection 105 of the Bankruptcy Code authorizes the court to *sua sponte* abstain
> from administering proceedings under Title 11. Specifically, section 105(a) states that
> "[n]o provision of this title providing for the raising of an issue by a party in interest
> shall be construed to preclude the court from, sua sponte, taking any action or making
> any determination necessary or appropriate to ... prevent an abuse of process." 11
> U.S.C. § 105(a). ...
> Judge Bernstein decided to abstain from administering [Debtor's] Chapter 11 case,
> in large part, due to the fact that [Debtor] and [Plaintiff] were currently involved in a
> lengthy civil litigation the outcome of which could substantially bear upon [Debtor's]
> ability to confirm a plan of reorganization. In particular, Judge Bernstein determined
> that the success or failure of [Debtor's] chapter 11 case depended upon the outcome of
> the civil litigation and therefore concluded that it was in the interest of both creditors
> and debtor for the bankruptcy court to suspend proceedings under Chapter 11. Judge
> Bernstein concluded that if [Debtor] succeeds in the pending litigation, it will be able
> to make a significant distribution to its unsecured creditors.
> ... Finally, even if the bankruptcy court did err by concluding that abstention
> pursuant to section 305 was the appropriate remedy, this Court finds that the
> bankruptcy court had the authority to make such a determination pursuant to section
> 105 of the Code. As cited above, section 105(a) states that "[n]o provision of this title
> providing for the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any determination
> necessary or appropriate to ... prevent an abuse of process." 11 U.S.C. § 105. Section
> 105 provides the basis for the broad exercise of power in the administration of a
> bankruptcy case. See generally United States v. Energy Resources Co., 495 U.S. 545,
> 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) (noting bankruptcy court's broad equitable
> powers under § 105).
> ... The Court finds that [Plaintiff] is merely attempting to continue its tactical
> warfare at the expense of the bankruptcy court. As noted by the bankruptcy court,
> [Plaintiff's] actions merely signify "the resumption of fighting the litigation wars on
> two fronts at the same time to destroy or take over [Debtor]." In re Duratech, 241 B.R.
> at 299. Consequently, this Court concludes that it was not error for the Bankruptcy

Court to abstain from administering the debtor's Chapter 11 case pending resolution of the civil litigation between [Debtor] and [Plaintiff].

*Duratech Industries*, 241 B.R. 283, 287-289.   See also *In re Schueller*, 126 B.R. 354, 359 (D.Colo.1991) (section 105 was broad enough to permit the court "to defer consideration of a reorganization plan").

When deciding whether to grant a discretionary stay some of the competing interests that the court should weigh include: (1) "possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX,* 300 F.2d at 268 *(citing Landis,* 299 U.S. at 254-55). A review of these factors in light of the facts, confirms that a stay should be issued in this case.

A.    **The Possible Damage From A Stay Factor**. The Lehman Entities will suffer no prejudice if a stay is granted, since the power to obtain relief is in their own hands. They can simply stipulate to relief from any applicable stay in their case that would bar or impair the rights of the SunCal Proponents, or any other creditors in these Cases, from seeking the full range of recourse against the claims and liens asserted by the Lehman Entities in these Cases.  This stipulation does not have to include the right to obtain an affirmative monetary judgment against the Lehman Entities, but only the right to seek *full recourse* against their claims and liens, through any means. Since the Lehman Entities could obtain this relief is less than thirty days, no prejudice exists.

B.    **The Hardship To The SunCal Proponents Factor**. The hardships that have been caused and will continue to be caused by the Lehman Entities' ongoing use of the automatic stay as a sword in these Cases are both obvious and compelling. These harms have impaired the rights of the SunCal Debtors and the creditors and they are preventing the SunCal Proponents from fairly competing in the coming confirmation contest. Respectfully, every player in these Cases who seeks relief must operate under and be subject to the *same* rules, or they should not be allowed to game the system.

C.    **The Ordinary Course of Justice Factor**. This factor strongly militates in favor of a stay. The Lehman Entities have used the automatic stay in their case to turn the instant Cases into a

-19-

1    tactical minefield, for approximately two years. The Voluntary Debtors have been forced to tiptoe

2    through their own bankruptcy cases to avoid the seriatim roadblocks thrown up by the Lehman

3    Entities. These roadblocks have denied the Voluntary Debtors the benefits of even the most

4    common Chapter 11 powers, such as the use of cash collateral and the right to obtain § 364

5    financing. Every effort to obtain relief has drawn the same behind the scenes threat - "We'll get you

6    in New York."

7          The foregoing experience is exactly the opposite of what was contemplated by the Chapter

8    11 process. The filings were supposed to convey upon the Voluntary Debtors a "breathing spell,"

9    within which to reorganize their affairs. Instead, the Lehman Entities litigation tactics have denied

10    the Voluntary Debtors even a momentary respite. If this upside down universe remains extant, the

11    Voluntary Debtors, and in fact all creditors, will be denied the opportunity to participate in and

12    benefit from a fair confirmation contest. If the current state of affairs is allowed to stand, the Cases

13    will be by, for and of Lehman, with all other creditors - creditors whose claims in large measure

14    were created by Lehman's broken promises - receiving little if anything. This is not "ordinary

15    course" and it is certainly not "justice."

16                                        **IV.**

17          **IN LIGHT OF THE CLAIMS TRANSACTION, THE COURT**

18          **SHOULD EXTEND AND EQUITABLY TOLL THE LIMITATIONS**

19          **PERIOD UNDER SECTION 546(a) AS TO THE LEHMAN ENTITIES**

20          The Voluntary Debtors request an extension of the Section 546(a) limitations period as to

21    the Lehman Entities in bankruptcy, for an indefinite period, subject to further order of the Court

22    if/when all of their respective automatic stays are lifted to allow prosecution of any and all claims

23    and actions against such entities.

24          The limitations period for various avoidance actions under the Bankruptcy Code is two years

25    from the entry of the order for relief:

26          (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title
27          may not be commenced after the earlier of--
              (1) the later of--
28          **(A) 2 years after the entry of the order for relief;** or

-20-

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

The Voluntary Debtors filed their petitions in November 2008. Accordingly, the period will arguably expire in November 2010.

Based upon this Court's Stay Finding, on March 24, 2009, this Court granted the SunCal Debtors' request for leave to amend the complaint against LCPI. In March 2009, the SunCal Debtors filed a Second Amended Complaint naming LCPI as a defendant on various counts including *inter alia* equitable subordination, avoidance of fraudulent transfers under Section 544(b) and 548(a), etc.

As set forth above, as a result of the BAP Order, in March of 2010, this Court dismissed LCPI from the Lehman Adversary Proceeding on the basis of the BAP Order.

As a result of the Claims Transaction, both LCPI and LBHI purported to acquire the Fenway Disputed Loans. Accordingly, both LCPI and LBHI will need to be named as defendants in the Lehman Adversary Proceeding. As noted above, the SunCal Debtors filed the Second New York RFS Motion, which was vigorously and successfully opposed by LCPI and LBHI. The Voluntary Debtors have appealed the RFS Order, which is presently before the Second Circuit Court of Appeals.

As a result of the denial of relief from stay, the Voluntary Debtors are unable to name LCPI and LBHI as defendants in the Lehman Adversary Proceeding without violating LCPI's and LBHI's automatic stays. Therefore, the Voluntary Debtors will be unable to name LCPI or LBHI as a defendant prior to the expiration of the 2-year limitations period under Section 546(a).

However, it is well established in this Circuit that the limitations period under Section 546(a) is not a jurisdictional bar, but rather is subject to equitable tolling.

> Every court that has considered the issue has held that equitable tolling applies to § 546(a)(1). [citing cases] These cases follow the seminal decision of *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), in which the Supreme Court held that a bankruptcy trustee could pursue a fraudulent transfer action after expiration of the two-year limitations period in the Bankruptcy Act of 1867 because

the trustee lacked knowledge of the cause of action before the period expired. *Id.* at 349-50.

\*\*\*

Section 546(a)(1), which merely sets a two-year period for bringing certain bankruptcy actions, is not at all similar to the limitations period in the Securities Act. Equitable tolling is not "fundamentally inconsistent" with § 546, which has no tolling provision itself and does not contain a distinct period of repose. In fact, the Court in *Lampf* cited *Bailey* with approval, indicating an intent not to limit equitable tolling in contexts other than the Securities Act itself. We conclude that § 546(a)(1) is subject to equitable tolling in proper circumstances.

*In re United Ins. Management, Inc.*, 14 F.3d 1380, 1385 (9th Cir. 1994). See also *In re Olsen*, 36 F.3d 71, 73 (9th Cir. 1994) ("We hold that § 549(d) can be equitably tolled."); *Nasr v. De Leon*, 18 Fed.Appx. 601, 606, 2001 WL 1024041, \*2 (9th Cir. 2001) (unpublished) ("The limitations period in § 546(a)(1), the statute of limitations governing the avoidance claims, is subject to equitable tolling." citing *United Ins. Management*); *In re Kemp & Paulucci Seafoods, Inc.*, 1999 WL 97285, \*1 (9th Cir. 1999) (unpublished) ("Section 546(a) of the Bankruptcy Code provides that a Trustee must commence an action to recover pre-petition transfers of funds within two years after appointment or election as Trustee. See 11 U.S.C. § 546(a). This limitations period, however, is subject to equitable tolling. We agree with the district court's conclusion that the Trustee's §544(b) action was equitably tolled." citing *United Ins. Management*).

Since the limitations period is subject to equitable tolling, the Court has the discretion to authorize an extension of the limitations period. In *In re International Administrative Services, Inc.*, 408 F.3d 689 (11th Cir. 2005), the Eleventh Circuit affirmed the bankruptcy court's granting of the Committee's request to extend the time to file avoidance actions, pursuant to the doctrine of equitable tolling and Bankruptcy Rule 9006(b):

There is the threshold matter of whether the bankruptcy court had any authority-either by its own order or the doctrine of equitable tolling-to enlarge the § 546(a) period for commencing avoidance actions. The Defendants suggest that rather than a statute of limitations, § 546(a) operates as a jurisdictional bar, and point to Bankruptcy Rule 9006(b), which does not specifically provide for enlargement of time period created by statute, as opposed to those created by the Federal Rules of Bankruptcy Procedure or a court order. We find no merit in this argument. Rule 9006(b) states:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause may at any time in its discretion ... order the period enlarged.

Although "by these rules ... or by order of court" does not explicitly encompass statutory timeframes, it does bring all of the Federal Rules of Bankruptcy Procedure under its umbrella. Not surprisingly, this would include Rule 7001, which defines an adversary proceeding as one "to recover money or property" and Rule 7003, which governs the commencement of adversary proceedings. To read a jurisdictional bar into § 546 would lead to absurd results, and the Defendants did not cite any authority for such a proposition. Therefore, § 546 is indeed a statute of limitations, subject to waiver, equitable tolling, and equitable estoppel. *See In re Rodriguez*, 283 B.R. 112, 116-18 (Bankr.E.D.N.Y.2001) (finding § 546 to be a true statute of limitations, subject to enlargement by court order, rather than a statute of repose or jurisdictional bar).

[Thus] we think a bankruptcy court has the discretion to extend the filing period for an adversary proceeding ...

*In re International Administrative Services, Inc.*, 408 F.3d 689, 699 (11th Cir. 2005). *In re ThermoView Industries, Inc.*, 2007 WL 4365376 (Bankr.W.D.Ky 2007) and 381 B.R. 225, 227 (Bankr.W.D.Ky. 2008) ("It is clear that the Court has discretion to extend the time within which the Trustee may commence an avoidance action upon a showing of good cause. Rule 9006(b) of the Federal Rules of Bankruptcy Procedure gives the Court authority 'for cause ... 'at any time in its discretion' to order the time within which an act is specified to take place enlarged. This includes the period of time for commencing avoidance actions under 11 U.S.C. § 546(a)."); *In re Martin Levy Of Berlin D.M.D., P.C.*, 416 B.R. 1, 8 (Bankr.D.Mass. 2009) (granting trustee's motion to extend Section 546(a) deadline); *In re Jacobs*, 401 B.R. 161, 173 n. 15 (Bankr.E.D.Pa. 2009) (holding complaint was timely filed based upon "Extension Order" which granted the Trustee's Motion for Enlargement of Time to Commence Certain Actions Under 11 U.S.C. §546).

Thus, under Bankruptcy Rule 9006(b)(1), the court "for cause" and "in its discretion" extend the limitations period under Section 546(a), "if the request therefor is made before the expiration of the period originally prescribed."

Even after the expiration of the limitations period, equitable tolling is appropriate where the plaintiff has acted diligently but has been unable to act, or where the plaintiff timely filed an action which was dismissed without prejudice to refiling:

The doctrine of equitable tolling applies to periods of limitation in appropriate circumstances. **It permits a court to suspend the measuring period for a party to take action during the time the party was unable to act. ...** It "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity."    ***
Equitable tolling has been applied in bankruptcy cases. For instance, to protect the rights of a debtor in possession or trustee in exercising their avoidance powers, the

ultimate aim of which is to bring funds into the estate and eventually distribute to creditors, applicable statutes of limitations under 11 U.S.C. §§ 546(a)(1), 548(a)(1) and 549(d) have been equitably tolled for the commencement of actions. See *In re Randall's Island Family Golf Centers*, 288 B.R. 701, 706 (Bankr.S.D.N.Y. 2003)(**applying equitable tolling to second lawsuit under 11 U.S.C. § 546(a) to protect plaintiff debtor in possession that did not sit on its rights but rather filed a defective pleading that had been dismissed without prejudice**); *In re Stanwich Financial Services Corp.*, 291 B.R. 25, 29 (Bankr.D.Conn.2003)(applying equitable tolling under 11 U.S.C. § 548 to protect creditors committee where debtors engaged in a "systematic course of conduct which thwarted [the committee's] discovery of the instant cause of action"); *In re Olsen*, 36 F.3d 71, 73 (9th Cir.1994)(applying equitable tolling under 11 U.S.C. § 549 to protect trustee that "remained in the dark without any fault or want of diligence or care on his part")(internal quotations and citation omitted).

In re Williams, 333 B.R. 68, 71-72 (Bankr.D.Md. 2005). See also *In re Porter McLeod, Inc.*, 231 B.R. 786, 797 (D.Colo. 1999) ("The doctrine of equitable tolling prevents the application of the two-year limitation when the trustee is unable to assert a cause of action … when circumstances beyond the trustee's control made it impossible to file a claim on time."); Tidewater *Finance Co. v. Williams*, 341 B.R. 530, 533 -534 (D.Md. 2006) ("Courts have equitably tolled limitations periods in the Bankruptcy Code. For example, the two-year limitations period set forth in 11 U.S.C. §546(a)(1)(A) for commencing adversary proceedings under §§ 544, 545, 547, 548, or 553 has been equitably tolled … where, despite exercising due diligence, the trustee was unable to file a timely proceeding.")

Here, the Voluntary Debtors are moving for an extension prior to the expiration of the limitations period, and thus need merely establish "cause" under Bankruptcy Rule 9006(b)(1). See *Bryant v. Smith*, 165 B.R. 176, 181 (W.D.Va. 1994) ("'Cause shown' is a liberal standard investing the bankruptcy judge with considerable flexibility.")   However, even under the higher standing for equitable tolling, the Voluntary Debtors have acted diligently.  The Voluntary Debtors have twice moved for relief from stay before the New York Bankruptcy Court, which was denied on both occasions.

Further, the SunCal Debtors did file a timely complaint against LCPI in July 2009, based upon this Court's ruling that defensive proceedings, such as equitable subordination did not invoke LCPI's stay.  In March of 2010, this Court dismissed LCPI from the Lehman Adversary Proceeding

1  on the basis of the BAP Order.  The Voluntary Debtors have appealed the BAP Order, however, no

2  decision has been rendered by the Ninth Circuit.

3       As a result of the Claims Transaction which closed in or about June 2010, LCPI and LBHI

4  now both assert interests in the Fenway Disputed Loans.  However, the RFS Order now precludes

5  the Voluntary Debtors from naming LCPI and LBHI as defendants.  The Voluntary Debtors have

6  appealed the RFS Order, which was affirmed by the SDNY and is now pending before the Second

7  Circuit Court of Appeals.

8       As a result, circumstances beyond the Voluntary Debtors' control render it impossible to file

9  an amended complaint against LCPI and LBHI.  Accordingly, there is ample cause for equitable

10  tolling of the limitations period under Section 546(a).[8]

11       Alternatively, the limitations period is extended by operation of law, pursuant to 11 U.S.C.

12  § 108(c), arising from LCPI and LBHI's bankruptcy proceeding.  Section 108(c) provides:

13           (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an
             order entered in a nonbankruptcy proceeding, or an agreement fixes a period for
14           commencing or continuing a civil action in a court other than a bankruptcy court on a
             claim against the debtor, or against an individual with respect to which such individual is
15           protected under section 1201 or 1301 of this title, and such period has not expired before
             the date of the filing of the petition, then such period does not expire until the later of--
16           (1) the end of such period, including any suspension of such period occurring on or after
             the commencement of the case; or
17           (2) 30 days after notice of the termination or expiration of the stay under section 362,
18           922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

19  11 U.S.C.A. § 108(c).

20       Here, the SunCal Debtors have a two year limitations period to commence an action outside

21  of Lehman's home bankruptcy court, which according to the New York Bankruptcy Court's RFS

22  Order are subject to LCPI's and LBHI's automatic stay.  As a result, the limitations period is

23  automatically extended by operation of 11 U.S.C. § 108(c).  The SunCal Parties request that the

24  Court issue an order confirming the foregoing.

25

26  [8]The Voluntary Debtors do not believe there is any limitations period applicable to the equitable subordination action or
    Section 502(d).  See *In re 201 Forest Street LLC*, 409 B.R. 543, 575 (Bankr.D.Mass.,2009) ("there is no statute of
27  limitations with respect to equitable subordination actions."); *In re Emergency Monitoring Technologies, Inc.*, 366 B.R.
    476, 509 (Bankr.W.D.Pa. 2007) ("Moreover, the law is clear that a statute of limitations does not exist with respect to
    equitable subordination actions brought under § 510(c)."); *In re KF Dairies, Inc.*, 143 B.R. 734, 736 (9th Cir.BAP
28  1992) (Section 502(d) claim objection is not barred even though §546(a) limitations period had expired).  However, to
    the extent any limitations period is applicable, the Voluntary Debtors request an extension thereof.

MAINDOCS-#151771-v10-SCC  Mtn Suspend  Ch 11.DOC

## V.

### THE COURT SHOULD EXTEND THE LIMITATIONS PERIOD

### UNDER SECTION 546(a) AS TO CERTAIN OTHER TRANSFEREES

For the reasons stated below, the Voluntary Debtors also request an extension of the limitations period under Section 546(a) as to the following parties:

- Bond Safeguard Insurance Co and Lexon Insurance Co. ("Bond Safeguard")
- Arch Insurance Company ("Arch")
- Voss, Cook & Thel, LLP ("VC&T")
- Miller Barondess ("MB")
- SunCal Management, LLC ("SunCal Management")
- SCC Acquisition Inc. ("SCC Acquisition")
- SC Master Marketing, LLC ("SC Master")

The above entities can be separated into the following three categories:

A.    The Bond Companies.  On or about June 18, 2010, Bond Safeguard filed a Motion to file claims after the bar date ("Motion to File Untimely Claims").  The Motion to File Untimely Claims seeks to assert certain "Cross-Indemnity Claims", which the Voluntary Debtors believe are subject to avoidance as fraudulent transfers.  The Voluntary Debtors, the Official Unsecured Creditors' Committee for the estates of the Voluntary Debtors (the "Voluntary Committee"), the Trustee and the Lehman Entities filed oppositions to the Motion to File Untimely Claims.  As a result, on September 9, 2010, Bond Safeguard withdrew the motion without prejudice.  A fraudulent transfer action is unnecessary since there are no pending Cross Indemnity Claims against the bankruptcy estates.  Since the motion was withdrawn without prejudice, Bond Safeguard may re-new the motion, and it is unclear to what extent such renewed motion might be granted.  Accordingly, it would be wholly premature to file a fraudulent transfer action at this time, however, the Voluntary Debtors wish to reserve their rights to file an avoidance action in the event the motion is renewed and granted.  Accordingly, the Voluntary Debtors request an extension of the Section 546(a) limitations period as the Bond Safeguard for an indefinite period, subject to further order of the Court if/when the motion is renewed and ruled upon by the Court.

-26-

1    Arch has also filed certain cross-indemnity claims which they Voluntary Debtors may also

2 seek to avoid as a fraudulent transfer.  The Voluntary Debtors are seeking an extension of the

3 Section 546(a) limitations period through and including March 5, 2011 as to Arch.  The Voluntary

4 Debtors would like additional time to seek a consensual resolution of any avoidance claims without

5 the necessity of instituting formal litigation at this time.

6    B.  Court Employed Professionals.  As to VC&T and MB, these entities are

7 professionals currently employed by the bankruptcy estates, and are presently representing the

8 certain SunCal Debtors in pending litigation.  As a result of the pending litigation, the Voluntary

9 Debtors believe it would not be in the best interests of the estates to investigate or pursue any

10 avoidance actions at this time.  Accordingly, the Voluntary Debtors are seeking an extension of the

11 Section 546(a) limitations period against VC&T and MB through and including November 5, 2011.

12    C.  The SunCal Entities.  As to SunCal Management LLC, SCC Acquisition Inc. and

13 SC Master Marketing, LLC (collectively defined as the "SunCal Entities").  These entities have

14 overlapping representatives with the Voluntary Debtors.  The Voluntary Debtors believe it is in the

15 best interests of the estates for the Voluntary Debtors' representatives to focus their efforts on the

16 reorganization of the estates, while preserving the estates' possible claims against the SunCal

17 Entities.  Consequently, the Voluntary Debtors are seeking an extension of the Section 546(a)

18 limitations period against the SunCal Entities through and including November 5, 2011.

19               **VI.**

20           **CONCLUSION**

21    A federal court has the inherent power to do whatever is reasonably necessary to deter an

22 abuse of the judicial process and to assure a level playing field for all litigants.  *Jung v. Neschis,*

23

24

25

26

27

28

1   2009 WL 762835 (S.D.N.Y. Mar. 23, 2009). In this case, the Lehman Entities have offensively and

2   falsely used the threat of their automatic stay, which did not exist during the first year of these

3   Cases, to deny the SunCal Debtors the "breathing spell" contemplated by the Bankruptcy Code.

4   Now, having remedied their past misrepresentations through the recently approved Compromise

5   Motion in New York, they now they seek to exploit their "protected" position through the upcoming

6   confirmation contest. This is wrong.

7        If the Lehman Entities want to play in this "game," and enjoy all of the benefits, they should

8   be subjected to the same rules *as all other parties* and have to bear *all of the burdens* borne by other

9   parties. If the Lehman Entities want to assert claims and liens in this forum, and on the basis of

10   these claims and liens seek relief from this Court, they must stipulate that these same claims and

11   liens are subject to the full range of recourse that all other claimants face. They should not be

12   allowed to participate based upon an abusive form of "bankruptcy immunity" that allows them an

13   unfair advantage over every other stakeholder.

14        Further, the Voluntary Debtors are entitled to an extension or tolling of the limitations

15   period under 11 U.S.C. § 546(a) to bring action against the Lehman Entities and/or an order

16   confirming that 11 U.S.C. § 108(c) applies and automatically extends the time to commence such

17   action(s) against the Lehman Entities.

18   DATED: September 21, 2010       **WINTHROP COUCHOT**

19                            **PROFESSIONAL CORPORATION**

20                            By:\_\_\_ /s/ Paul J. Couchot_____

21                                Paul J. Couchot, Esq.
                            Attorneys for the Voluntary Debtors and

22                            SCC Acquisitions, LLC

23   DATED:  September \_\_, 2010      **GOE & FORSYTHE, LLP**

24

25                            By:_____
                               Rob P. Goe
                            Counsel for SunCal Management, LLC

26

27

28

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

1  2009 WL 762835 (S.D.N.Y. Mar. 23, 2009). In this case, the Lehman Entities have offensively and

2  falsely used the threat of their automatic stay, which did not exist during the first year of these

3  Cases, to deny the SunCal Debtors the "breathing spell" contemplated by the Bankruptcy Code.

4  Now, having remedied their past misrepresentations through the recently approved Compromise

5  Motion in New York, they now they seek to exploit their "protected" position through the upcoming

6  confirmation contest. This is wrong.

7      If the Lehman Entities want to play in this "game," and enjoy all of the benefits, they should

8  be subjected to the same rules *as all other parties* and have to bear *all of the burdens* borne by other

9  parties. If the Lehman Entities want to assert claims and liens in this forum, and on the basis of

10  these claims and liens seek relief from this Court, they must stipulate that these same claims and

11  liens are subject to the full range of recourse that all other claimants face. They should not be

12  allowed to participate based upon an abusive form of "bankruptcy immunity" that allows them an

13  unfair advantage over every other stakeholder.

14      Further, the Voluntary Debtors are entitled to an extension or tolling of the limitations

15  period under 11 U.S.C. § 546(a) to bring action against the Lehman Entities and/or an order

16  confirming that 11 U.S.C. § 108(c) applies and automatically extends the time to commence such

17  action(s) against the Lehman Entities.

18  DATED: September ___, 2010                   **WINTHROP COUCHOT**

19                                               **PROFESSIONAL CORPORATION**

20                                               By:_____

21                                                    Paul J. Couchot, Esq.
                                                 Attorneys for the Voluntary Debtors and
22                                               SCC Acquisitions, LLC

23  DATED: September ___, 2010                   **GOE & FORSYTHE, LLP**

24                                               By:_____

25                                                    Rob P. Goe
                                                 Counsel for SunCal Management, LLC

26

27

28

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Cb_11.DOC

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4ᵗʰ Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **NOTICE OF MOTION AND MOTION FOR AN ORDER (1) IMPOSING A DISCRETIONARY STAY SUSPENDING ALL MATTERS AND PROCEEDINGS FILED OR BEING PURSUED BY THE LEHMAN ENTITIES UNTIL ALL ALLEGEDLY APPLICABLE LEHMAN ENTITIES' AUTOMATIC STAYS IN THE SUNCAL DEBTORS' CHAPTER 11 CASES ARE LIFTED, (2) EXTENDING THE LIMITATIONS PERIOD UNDER 11 U.S.C. § 546(a) AND (3) CONFIRMING THAT 11 U.S.C. § 108(c) AUTOMATICALLY EXTENDS THE PERIOD OF TIME FOR THE COMMENCEMENT OF CERTAIN ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 21, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 21, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Voss Cook:  Nicole Nguyen - nnguyen@vctlaw.com
Bruce Cook:  BCook@Suncal.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 21, 2010 | Susan Connor |  |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Jeffrey W Broker    jbroker@brokerlaw.biz  **- Counsel to Bond Safeguard Insurance Co**
- Brendt C Butler    BButler@rutan.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com  **- Counsel for Bond Safeguard Insurance Co**
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com **– Counsel to Arch Insurance**
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com  **- Counsel to Lehman RE**
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com **– Counsel for Arch
  Insurance Co**
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com **Counsel for Bond Safeguard Insurance Co**
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com –**Counsel to Lehman RE**
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com - **Counsel to Arch Insurance**
- Ronald B Pierce    ronald.pierce@sdma.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- John P Schafer    jps@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Arnold H Wuhrman    Wuhrman@serenitylls.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

MAINDOCS-#151771-v10-SCC_Mtn_Suspend_Ch_11.DOC