1

PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.

2

660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660

3

Telephone: (949) 720-4100
Facsimile: (949) 720-4111

4

General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

5

6

RONALD RUS - State Bar No. 67369
RUS MILIBAND & SMITH P.C.

7

2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100

8

Facsimile:  (949) 252-1514

9

Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

10

11

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

12

In re

13

PALMDALE HILLS PROPERTY, AND ITS
RELATED DEBTORS,

14

    Joint Administered Debtors and
Debtors-in-Possession

15

16

Affects:

☐ All Debtors

17

☐ Palmdale Hills Property, LLC

☐ SunCal Beaumont Heights, LLC

18

☐ SCC/Palmdale, LLC

19

☐ SunCal Johannson Ranch, LLC

☐ SunCal Summit Valley, LLC

20

☐ SunCal Emerald Meadows LLC

21

☐ SunCal Bickford Ranch, LLC

☐ Acton Estates, LLC

22

☐ Seven Brothers LLC

23

☒ SJD Partners, Ltd.

24

☐ SJD Development Corp.

☐ Kirby Estates, LLC

25

☐ SunCal Communities I, LLC

☐ SunCal Communities III, LLC

26

☒ SCC Communities LLC

27

☒ North Orange Del Rio Land, LLC

28

☒ Tesoro SF LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 Proceedings

**DISCLOSURE STATEMENT**
**DESCRIBING CHAPTER 11 PLAN FILED**
**BY SUNCAL PLAN PROPONENTS IN**
**THE CHAPTER 11 CASES OF SJD**
**PARTNERS, LTD., SCC COMMUNITIES,**
**LLC, NORTH ORANGE DEL RIO LAND,**
**LLC, TESORO SF LLC, SUNCAL**
**TORRANCE, LLC, AND SUNCAL OAK**
**KNOLL [GROUP IV DEBTORS]**

Date:     May 13, 2011
Time:    9:30 a.m.
Place:    Courtroom 5A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☒ SunCal Torrance, LLC
☒ SunCal Oak Knoll, LLC

# TABLE OF CONTENTS

**PAGE**

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 5 |
| | 2.1   Definitions | 5 |
| | 2.2   Rules of Construction | 25 |
| | 2.3   Exhibits | 26 |
| III. | PLAN CONFIRMATION DEADLINES | 26 |
| | 3.1   Time and Place of the Confirmation Hearing | 26 |
| | 3.2   Deadline for Voting for or Against the Plan | 26 |
| | 3.3   Deadline for Objecting to the Confirmation of the Plan | 27 |
| | 3.4   Identity of Person to Contact for More Information Regarding the Plan | 27 |
| | 3.5   Disclaimer | 27 |
| IV. | FACTUAL BACKGROUND OF THE DEBTORS | 28 |
| | 4.1   The Formation of the Debtors and the Projects | 28 |
| |     4.1.1   Overview of the Debtors and Their Projects | 28 |
| |     4.1.2   The Group IV Debtors' Primary Secured Creditors | 30 |
| |     4.1.3   The Lehman Disputed Claims and Liens | 30 |
| |     4.1.4   A Summary of All of the Alleged Claims Against the Debtors | 31 |
| |     4.1.5   Summary of the Debtors Cash | 31 |
| | 4.2   Factual Circumstances Leading to the Filing of the Debtors' Chapter 11 Cases | 32 |
| |     4.2.1   Background on the SunCal Companies | 32 |
| |     4.2.2   The Origins of the SunCal/Lehman Joint Venture | 32 |
| |     4.2.3   Lehman's Effective Control over the Management of the Debtors and Promises of Ongoing Funding | 33 |
| |     4.2.4   The 2008 Restructuring Agreement | 34 |
| |     4.2.5   The Lehman Lenders Hire Radco | 36 |
| |     4.2.6   The 2008 Settlement Agreement | 36 |
| |     4.2.7   The Lehman Lenders' Undisclosed Sale of Most of the Debtors' Loans | 37 |
| |     4.2.8   Alvarez and Marsal Take Over Control of the Lehman Entities After the Chapter 11 Filing of LBHI and LCPI | 38 |
| | 4.3   The Debtors' Potential Preferential Transfers | 39 |

-i-

# TABLE OF CONTENTS

## (Continued)

| | | PAGE |
|---|---|---|

V.      SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES ................ 40
    5.1      Voluntary Debtors ........................................................................... 40
        5.1.1   Joint Administration of the Voluntary Debtors
            and the Trustee Debtors ....................................................... 40
        5.1.2   The Voluntary Debtors Court Employed Professionals ................... 40
    5.2      The Trustee Debtors and Their Professionals ......................................... 41
    5.3      Relevant Post-Petition Motions ......................................................... 42
        5.3.1   The Lehman Administrative Loans ............................................. 42
        5.3.2   The Voluntary Debtors' Agreements with the
            Lehman Entities for Use of Alleged Cash Collateral
            to Maintain the Properties and to Pay Professional Fees. ................ 42
    5.4      The Debtors' Disputes and Claims Against the Lehman Entities ................ 43
        5.4.1   The Lehman Adversary Proceeding ............................................ 43
            5.4.1.1 Equitable Subordination ..................................... 44
            5.4.1.2 The Fraudulent Transfer Claims ........................... 44
            5.4.1.3 The Preference Claims ...................................... 45
        5.4.2   The Debtors' 502(d) Objections ............................................... 45
        5.4.3   The Lehman Claim Objections ................................................. 46
        5.4.4   The Debtors' Potential Post-Petition Claims Against
            Lehman and Their Agents. ..................................................... 48
        5.4.5   The Voluntary Debtors' State Court Action ................................. 48
    5.5      The Debtors' Motion for a Stay to Suspend Certain
        Lehman Actions ............................................................................. 49
    5.6      The Debtors' Other Litigation with Non-Lehman Related Parties ............... 49
        5.6.1   The Debtors' Failed Preliminary Injunction Motion
            Against the Holders of Bond Claims. ........................................ 49
        5.6.2   The Contractors' Successful Motions for Relief from
            Stay to Pursue the Bond Claims  ............................................. 50

VI.     TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 50
    6.1      Introduction .................................................................................. 50
    6.2      Treatment of Allowed Administrative Claims .......................................... 50
    6.3      Treatment and Repayment of the Lehman Administrative Loan(s) ............... 51
    6.4      Administrative Claims Bar Date .......................................................... 51
    6.5      Treatment of Priority Unsecured Tax Claims ......................................... 52

VII.    CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 52

VIII.   THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ....... 56
    8.1      The Plan's Treatment of Holders of Allowed Unpaid Secured
        Real Property Tax Claims on Real Properties Subject to Deeds of
        Trust Arising from Lehman's Disputed Secured Claims and Disputed
        Liens (Classes 1.1 Through 1.4). ......................................................... 56

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

8.2     The Plan's Treatment of Lehman's Disputed
        Claim(s) and Disputed Lien(s) (Classes 2.1 Through 2.3)............................. 57
8.3     The Plan's Treatment of Holders of Asserted Mechanic
        Lien Claims Against Projects Subject to
        Lehman's Disputed Claims (Classes 3.1 Through 3.4) ................................ 60
8.4     The Plan's Treatment of Holders of Priority Claims (Class 4.1 and 4.2) ...... 60
8.5     The Plan's Treatment of Holders of General Unsecured Claims that are
        Reliance Claims (Classes 5.1 Through 5.3)..................................... 61
8.6     The Plan's Treatment of Holders of Allowed General Unsecured Claims
        that Are Note Reliance Claims (Classes 6.1 Through 6.4). ........................... 61
8.7     The Plan's Treatment of Holders of Allowed Interests ................................ 61

IX.     ACCEPTANCE OR REJECTION OF THE PLAN ............................................... 62
9.1     Introduction.................................................. 62
9.2     Who May Object to Confirmation of the Plan............................................ 62
9.3     Who May Vote to Accept/Reject the Plan ................................................ 62
9.4     What Is an Allowed Claim/Interest............................................. 62
9.5     What Is an Impaired Class ......................................................... 62
9.6     Who Is Not Entitled to Vote ......................................................... 63
9.7     Who Can Vote in More than One Class................................................. 63
9.8     Votes Necessary for a Class to Accept the Plan ....................................... 63
9.9     Treatment of Nonaccepting Classes................................................. 64
9.10    Request for Confirmation Despite Nonacceptance by
        Impaired Class(es).................................................................... 64

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

# TABLE OF CONTENTS

## (Continued)

|  |  | PAGE |
|---|---|---|
| X. | **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN** | 64 |
| | 10.1 Introduction | 64 |
| | 10.2 Post-Confirmation Pre-Effective Date Rights | 64 |
| | 10.3 Removal of Trustee | 65 |
| | 10.4 Transfer of Property To The Plan Trust | 65 |
| | 10.5 Purposes of The Plan Trust | 65 |
| | 10.6 Trust Agreement | 66 |
| | 10.7 Operations of the Plan Trust | 66 |
| | 10.8 The Plan Trustee | 66 |
| | 10.9 Payment of Trust Expenses | 66 |
| | 10.10 Plan Distribution System | 67 |
| | 10.11 Claims Estimation Rights | 67 |
| | 10.12 No Payment of Transfer-Related Fees to the United States Trustee | 67 |
| | 10.13 No Payment of Transfer-Related Fees to the Trustee | 67 |
| | 10.14 Books and Records of Trust | 68 |
| | 10.15 Limitations on Liability | 68 |
| | 10.16 Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 69 |
| | 10.17 Termination of the Trust | 69 |
| | 10.18 Exemption from Certain Transfer Taxes | 70 |
| | 10.19 Tax Consequence of The Plan | 70 |
| | 10.20 The Plan Sponsor | 71 |
| | 10.21 Acquisitions' Funding Obligations Pursuant to the Acquisitions Administrative Loan. | 71 |
| | 10.22 The Committee | 71 |
| | 10.22.1 Duties and Powers | 71 |
| | 10.22.2 Dissolution of Committees | 72 |
| | 10.23 Litigation Claims | 72 |
| | 10.24 Collection of Litigation Recoveries. | 72 |
| XI. | **DISTRIBUTIONS** | 73 |
| | 11.1 Distribution Agent | 73 |
| | 11.2 Distributions | 73 |
| | 11.2.1 Dates of Distributions | 73 |
| | 11.2.2 Limitation on Liability | 73 |
| | 11.3 Old Instruments and Securities | 73 |
| | 11.3.1 Surrender and Cancellation of Instruments and Securities | 73 |
| | 11.3.2 Cancellation of Liens | 74 |
| | 11.4 De Minimis Distributions and Fractional Shares | 74 |
| | 11.5 Delivery of Distributions | 74 |
| | 11.6 Undeliverable Distributions | 74 |
| | 11.7 Disposition of Unclaimed Property | 75 |

XII.   OBJECTION TO CLAIMS AND DISPUTED CLAIMS .......................................... 75
       12.1   Standing for Objections to Claims ................................................................ 75
       12.2   Treatment of Disputed Claims and Disputed Liens ..................................... 76
              12.2.1   No Distribution Pending Allowance ................................................ 76
              12.2.2   Distribution After Allowance .......................................................... 76

XIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................ 76
       13.1   EXECUTORY CONTRACTS POTENTIALLY BEING ASSUMED. ...................... 76
       13.2   Executory Contracts Being Rejected ........................................................... 76
       13.3   Bar Date for Rejection Damages .................................................................. 76
       13.4   Changes in Rates Subject to Regulatory Commission Approval .................. 77

XIV.   BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY ............... 77
       14.1   Best Interests Test ...................................................................................... 77
       14.2   Feasibility ................................................................................................... 78

XV.    LIMITATION OF LIABILITY .......................................................................... 78
       15.1   No Liability for Solicitation or Participation ............................................. 78

XVI.   CONDITIONS TO CONFIRMATION AND EFFECTIVENESS
       OF THE PLAN ................................................................................................ 79
       16.1   Conditions Precedent to Plan Confirmation ................................................ 79
       16.2   Conditions Precedent to Plan Effectiveness ............................................... 79

XVII.  RETENTION OF JURISDICTION ................................................................... 79

XVIII. MODIFICATION OR WITHDRAWAL OF THE PLAN ...................................... 79
       18.1   Modification of Plan .................................................................................... 79
       18.2   Nonconsensual Confirmation ...................................................................... 80

XIX.   MISCELLANEOUS ......................................................................................... 80
       19.1   Payment of Statutory Fees ......................................................................... 80
       19.2   Payment Dates ............................................................................................ 80
       19.3   Headings ..................................................................................................... 80
       19.4   Other Documents and Actions .................................................................... 80
       19.5   Notices ........................................................................................................ 81
       19.6   Governing Law ........................................................................................... 81
       19.7   Binding Effect ............................................................................................. 81
       19.8   Successors and Assigns ............................................................................... 82
       19.9   Severability of Plan Provisions ................................................................... 82
       19.10  No Waiver ................................................................................................... 82
       19.11  Inconsistencies ........................................................................................... 82
       19.12  Exemption from Certain Transfer Taxes and Recording Fees ..................... 82
       19.13  Post-Confirmation Status Report ................................................................ 83
       19.14  Post-Confirmation Conversion/Dismissal .................................................. 83
       19.15  Final Decree ............................................................................................... 84

-v-

# I.

# **INTRODUCTION**

This DISCLOSURE STATEMENT[1] is filed by the Voluntary Debtors and Acquisitions, as the SunCal Plan Proponents, in the Chapter 11 Cases of the following Debtors:

> SJD Partners, Ltd.
> SCC Communities, LLC
> North Orange Del Rio Land, LLC
> Tesoro SF, LLC
> SunCal Torrance, LLC
> SunCal Oak Knoll, LLC

(the "Group IV Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, and it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides, in summary, for the following:

A) The transfer of all assets of the Group IV Debtors to a liquidating trust defined herein as the "Plan Trust";

B) The sale of the following Group IV Debtor Projects by the Plan Trust on the Effective Date:

> Pacific Point Project[2]
> Joshua Ridge Project
> Tesoro Project
> Del Amo Project
> Oak Knoll Project

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and in Exhibit "1" attached hereto.
[2] This project was foreclosed on prior to the Petition Date. SJD Partners, Ltd. has filed an action to recover this project that is more fully discussed herein.

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

1    (the "Group IV Projects");

2    C)  The pursuit of the Litigation Claims by the Plan Trust, and in particular the

3    pursuit of the Litigation Claims held by the Debtors against the Lehman

4    Entities;[3]

5    D)  The sale or liquidation of all other assets owned by the Group IV Debtors

6    by the Plan Trust; and

7    E)  The distribution by the Plan Trust of the Net Sales Proceeds and the Net

8    Litigation Recoveries generated from the foregoing sales and litigation efforts

9    to all Creditors holding Allowed Claims in accordance with their rights and

10   priorities under the bankruptcy code and under other applicable law.

11   The Plan is premised upon the following two assumptions. First, a *market sale* of the Group

12   IV Projects, free of interference by the Lehman Entities, will yield highest possible price, and the

13   highest possible dividend for unsecured creditors. Second, the tens of millions in claims that the

14   Group IV Debtors (and the other Debtors) hold against the Lehman Entities have substantial value,

15   and, if pursued, they will yield substantial recoveries for the benefit of unsecured creditors.

16   Accordingly, these claims should be pursued, instead of being waived or released in return for a

17   pennies-on-the-dollar settlement.

18   Although the same Plan is being filed in the Cases of all four Group IV Debtors, each Plan

19   is independent of the others. The Creditors in each Case will determine, subject to Court approval,

20   whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the

21   Cases of all of the Group IV Debtors, but not in others.

22   In contrast to the Plan offered by the SunCal Plan Proponents, the competing plan of

23   reorganization filed by the Lehman Lenders in the Group IV Debtors' cases allows the Lehman

24   Lenders to gain title to the Group IV Projects without offering them for sale in an open market

25   sale. Instead, the Lehman Lenders seek to receive full credit for their disputed claims and liens,

26   which effectively prevents other bidders from acquiring the assets.

27

28

---

[3] No litigation will be pursued against Lehman Entities that are in bankruptcy until all applicable stays are
either lifted, modified or expire.

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

1    The Creditors who hold bclaims against the Group IV Debtors will have the opportunity to

2    choose between the very different approaches and goals presented in the Plan proposed by the

3    SunCal Plan Proponents and the Plan proposed by the Lehman Lenders. The SunCal Plan

4    Proponents believe that the aggregate benefits offered under their Plan are demonstrably superior

5    to what is being offered to Creditors under the Lehman Lenders' competing Plan.

6    **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

7    **KNOW ABOUT**:

8    ➢    **WHO CAN VOTE OR OBJECT TO THE PLAN;**

9    ➢    **HOW YOUR CLAIM IS TREATED;**

10    ➢    **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**

11    **RECEIVE IN LIQUIDATION;**

12    ➢    **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS**

13    **DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

14    ➢    **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**

15    **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

16    ➢    **WHAT IS THE EFFECT OF CONFIRMATION; AND**

17    ➢    **WHETHER THE PLAN IS FEASIBLE.**

18    This Disclosure Statement cannot tell you everything about your rights.  You should

19    consider consulting your own attorney to obtain more specific advice on how the Plan will affect

20    you and your best course of action.

21    Be sure to read the Plan as well as this Disclosure Statement.  If there are any

22    inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

23    The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

24    concerning the Plan.  On _____, 2011, the Bankruptcy Court entered an order approving this

25    Disclosure Statement, based upon a finding that this document contained "adequate information"

26    to enable parties affected by the Plan to make an informed judgment regarding the Plan.  Any party

27    can now solicit votes for or against the Plan.

28    **II.**

-4-

### DEFINITIONS AND RULES OF INTERPRETATION

**2.1    Definitions.**

The following defined terms are used in this Disclosure Statement.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    Acquisitions Administrative Loan.  The Allowed Administrative Claim of Acquisitions, or of such Affiliate that provides such funding, which will comprised of all amounts caused to be funded by Acquisitions, or such Affiliate, in connection with the Group IV Debtors' Cases and the consummation of the Plan, including, but not limited to, the reimbursement of all payments made to Professionals that provided services to the Group IV Debtors in connection with the Cases.

2.1.3    Administrative Claim(s).  Any Claim incurred after the Petition Date but before the Confirmation Dates for any cost or expense of administration of the Cases allowable under Section 330, 331, 503(b), or 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Estates of the Group IV Debtors, any actual and necessary post-petition expenses of operating the business of the Group IV Debtors in Possession, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330, 331, or 503 of the Bankruptcy Code and any fees or charges assessed against the Estates of the Group IV Debtors under Section 1930 of title 28 of the United States Code.

2.1.4    Administrative Claims Bar Date.  The last date fixed by the Plan for the filing of Proof of Claims or requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the Confirmation Date.

2.1.5   <u>Affiliate</u>. The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.6   <u>Allowed</u>. When used to describe Claim(s) or Interest(s), such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.7   <u>Allowed Amount</u> shall mean:

A.   With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Group IV Debtors and is not otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Group IV Debtors and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any such Administrative Claim;

B.    with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Group IV Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Group IV Debtors' Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no distribution shall be made on account of any such Claim; and

C.    with respect to any Interest, (i) the amount provided by or established in the records of the Group IV Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Group IV Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.8    <u>Allowed Claim</u>.  Except as otherwise provided in the Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.9    <u>Allowed Interest</u>.  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.10    <u>Allowed Secured Claims</u>.  An asserted Secured Claim that is not either a Disputed Claim or a Disputed Lien.

2.1.11    Assets. All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.12    Arch. Arch Insurance Company, a Bond Issuer.

2.1.13    Available Cash. Each Group IV Debtors' Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims. The Available Cash shall consist of the respective Group IV Debtors' cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly encumbering such Cash, or proceeds from the Acquisitions Administrative Loan. All Available Cash shall be deposited into the applicable Distribution Account(s). Available Cash shall not include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are Allowed but subject to an equitable subordination judgment.

2.1.14    Avoidance Actions. All Claims and defenses to Claims accruing to the Group IV Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.15    Bankruptcy Code. The United States Bankruptcy Code.

2.1.16    Bankruptcy Court. The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.17    Bankruptcy Rules. Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.18    Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.19    Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.20    Bond Claimant.  Holder(s) of a Bond Claim.

2.1.21    Bond Indemnification Claim.  All Claims by Bond Safeguard, Lexon, and Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with respect to the Group IV Debtors' Projects.

2.1.22    Bond Indemnitors.  The individuals and entities that are allegedly liable on the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all Affiliates of Acquisitions, and Elieff.

2.1.23    Bond Issuer(s).  Bond Safeguard, Lexon and Arch in their capacities as issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

2.1.24    Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

2.1.25    Break-Up Fee.  Break-Up Fee means a fee granted to a Stalking Horse Bidder of up to three percent (3%) of the Opening Bid for a Project and of up to five percent (5%) of the Opening Bid for other Plan Trust Assets.

2.1.26    Business Day.  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.27    Cases.  The Chapter 11 cases of the Debtors pending before the Bankruptcy Court.

2.1.28    Cash.  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

1         2.1.29     CFD Bonds. Community facilities district bonds issued by a

2 governmental entity.

3         2.1.30     Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the

4 Trustee Debtors in their pending Chapter 11 Cases.

5         2.1.31     Claim. This term shall have the broadest possible meaning under

6 Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

7 Group IV Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated,

8 fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

9 unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives

10 rise to a right of payment from any of the Group IV Debtors, whether or not such right to an

11 equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

12 undisputed, secured, or unsecured.

13         2.1.32     Claims Bar Date. For any Claim other than an Administrative Claim,

14 March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

15 file Proof of Claims with the Bankruptcy Court in all of the Group IV Debtors' cases.

16         2.1.33     Claims Objection Deadline. The later of (i) the first business day

17 following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

18 period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

19 the Plan Trustee and the Holder of the Claim.

20         2.1.34     Claim Objection Reduction Amount. The amount of Net Sales Proceeds

21 that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

22 or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

23 secured claims filed by the Lehman Lenders.

24         2.1.35     Class. Each group of Claims or Interests classified in Article V of the

25 Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

26         2.1.36     Committees. Collectively, the Voluntary Debtors' Committee and the

27 Trustee Debtors' Committee, both before and after the Confirmation Date.

28

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

2.1.37    Confirmation Date.  The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

2.1.38    Confirmation Order.  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.39    Contingent Bond Claims.  Unmatured Bond Claims.

2.1.40    Creditor.  Any Person who is the Holder of a Claim against any Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.41    Debtor(s).  Individually or collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached hereto.

2.1.42    Debtor(s)-in-Possession.  The Voluntary Debtor(s) when acting in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.43    Del Amo Project.  The Project owned by SunCal Torrance, located in the City of Torrance, California, as more particularly described herein.

2.1.44    Del Rio.  North Orange Del Rio Land, LLC, a limited liability company, a Voluntary Debtor herein, and the owner of the Del Rio CFD Bond Proceeds.

2.1.45    Del Rio CFD Bond Proceeds.  Proceeds of CFD Bonds that are in the process of being issued by the City of Orange, authorized by the Order of the Bankruptcy Court on March 16, 2010.

2.1.54    Disclosure Statement.  This document, which is entitled "Disclosure Statement Describing Chapter 11 Plan Filed By Suncal Plan Proponents In The Chapter 11 Cases Of SJD Partners, Ltd., SCC Communities, LLC, North Orange Del Rio Land, LLC, Tesoro SF LLC, Suncal Torrance, LLC, And Suncal Oak Knoll, LLC", as amended and with all accompanying exhibits.

2.1.56    Disputed Claim(s).  All or any part of a Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

-11-

1  is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

2  (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

3  Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

4  for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

5  order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

6  Deadline, which Adversary Proceeding, objection, or request for estimation has not been

7  dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

8  "Disputed Claim" pursuant to the Plan.

9      2.1.57    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that

10  is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

11  or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

12      2.1.58    Distribution(s).  Payments to Holders of Allowed Claims provided for

13  under the Plan.

14      2.1.59    Distribution Agent.  The entity that is responsible for making

15  Distributions under the Plan, which shall be Acquisitions.

16      2.1.60    Distribution Account(s).  Separate account(s) to be established by the

17  Plan Trustee at an FDIC insured bank into which each Group IV Debtors' Available Cash shall be

18  deposited and all Available Cash received by the Plan Trust after the Confirmation Date that would

19  have belonged to such Debtor shall be deposited, other than Net Sales Proceeds that are subject to

20  Disputed Claims and Disputed Liens.

21      2.1.61    Distribution Date.  With respect to any Allowed Claim or Allowed

22  Interest, the date on which a Distribution is required to be made under the Plan.

23      2.1.62    Effective Date.  A date selected by the SunCal Plan Proponents that is not

24  later than sixty (60) calendar days after the Confirmation Date provided there is no stay pending

25  appeal of the Confirmation Order.  The sixty (60) day period shall be tolled for each day that such

26  a stay pending appeal exists.

27      2.1.63    Elieff.  Bruce Elieff, the president of Acquisitions, a purported obligor on

28  the Bond Claims with corresponding indemnity Claims against the Debtors.

-12-

2.1.64    Estates. The bankruptcy estates of the Debtors created pursuant to Section 541 of the Bankruptcy Code.

2.1.65    Fee Applications. Applications of Professional Persons under Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases.

2.1.66    Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases.

2.1.67    Filed. Delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

2.1.68    Final Order. A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court.

2.1.69    General Unsecured Claim. A Claim against a Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

2.1.70    Group IV Debtors. SJD Partners, Ltd., SCC Communities, LLC, Tesoro SF, LLC, North Orange Del Rio Land, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC.

2.1.71    Group IV Projects. The Pacific Point Project, the Joshua Ridge Project, the Tesoro Project, the Del Amo Project and the Oak Knoll Project.

2.1.72    Holder. The beneficial owner of any Claim or Interest.

2.1.73    Insider. The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates.

2.1.74    Interest. Any equity security interest in any Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.75    Interim Loan Agreement. That certain Loan Agreement, dated as of October 31, 2007, by and between SCC LLC, as borrower and Lehman ALI, as lender, pursuant to which Lehman ALI made a loan in the maximum aggregate amount of approximately $20 million.

1    The Interim Loan Agreement has an alleged balance due of $23,795,012.59 as of March 30, 2009.

2    The alleged obligation under the Interim Loan Agreement is allegedly secured by (a) an alleged

3    first-priority deed of trust on the Joshua Ridge Project; (b) an alleged first-priority deed of trust on

4    the Tesoro Project; and (c) an alleged first-priority lien on the Del Rio CFD Bond Proceeds.

5            2.1.76    Joshua Ridge Project.  The Project owned by SCC Communities, located

6    in the City of Victorville, California, as more particularly described herein.

7            2.1.77    LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

8    company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

9    in the Bankruptcy Court for the Southern District of New York.

10           2.1.78    LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

11   bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

12           2.1.79    Legal Rate.  The rate of interest payable on judgments obtained in the

13   United States District Courts as set forth in 28 U.S.C. § 1961.  The rate applicable under the Plan is

14   1.44% per annum, representing the applicable rate on November 6, 2008.

15           2.1.80    Lehman Adversary Proceeding.  The Debtors' pending adversary

16   proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

17   action including equitable subordination, fraudulent conveyances and preferential transfers.

18           2.1.81    Lehman ALI.  Lehman ALI, Inc.

19           2.1.82    Lehman Administrative Loans.  The post-petition financing provided by

20   Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Oak

21   Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century City, SunCal

22   PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all borrower Debtors'

23   assets, and for super-priority administrative status to Lehman ALI.  The Voluntary Debtors have

24   repaid to Lehman ALI the full amount of $270,731 loaned to the Voluntary Debtors.  The

25   aggregate amount of the Lehman Administrative Loans to all of the Trustee Debtors is

26   approximately $40 million as of March 1, 2011 and continuing to increase.

27           2.1.83    Lehman Claim Objections.  The objections filed by the Debtors to the

28   claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

1    Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

2    Objection and the Lehman 502(d) Objection.

3          2.1.84    Lehman Entities. The Lehman Lenders, the Lehman Equity Members

4    and LBHI.

5          2.1.85    Lehman Equity Members. Lehman Entities that own direct or indirect

6    membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

7    Marblehead.

8          2.1.86    Lehman Disputed Administrative Loans. The post-petition financing

9    provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates,

10   SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century

11   City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all

12   borrower Debtors' assets, and for super-priority administrative status to Lehman ALI. The

13   Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the

14   Voluntary Debtors. The aggregate amount of the Lehman Administrative Loans to all of the

15   Trustee Debtors is approximately $40 million as of March 1, 2011 and continuing to increase. The

16   Lehman Administrative Loans are the subject of claim objections. Until these objections are

17   resolved, these Lehman Administrative Loans shall not be Allowed Claims.

18         2.1.87    Lehman Disputed Loans. Collectively the following loans that are the

19   purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement;

20   (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

21   (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

22   Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

23   Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

24   Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

25   and (n) Pacific Point Second Loan Agreement.

26         2.1.88    Lehman Representatives. The individuals that controlled the Lehman

27   Entities.

28

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

2.1.89    Lehman Successor(s).  Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.90    Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the Lehman Disputed Loans.

2.1.91    Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11 Cases arising from the Lehman Disputed Loans.

2.1.92    Lexon.  Lexon Insurance Co.

2.1.93    Litigation Claims.   Any and all interests of the Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights, or causes of action which have been or may be commenced by the Debtor(s), the Chapter 11 Trustee, or the Committee(s), as the case may be, including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary Proceeding; (vi) the State Court Action; and (vii) any and all other Claims against Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

2.1.94    Litigation Recoveries.  Any Cash or other property received by the Chapter 11 Trustee, the Debtors, the Committees and/or the Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

2.1.95    Litigation Rights. Any Claims held by a party other than the Debtors that have not been fixed in a final judgment prior to the Effective Date.

2.1.96    _LV Pacific Point_.  LV Pacific Point, LLC, a Delaware limited liability company, a Lehman Entity that is the disputed owner of the Pacific Point Project.

2.1.97    _LitCo_.  A newly formed Delaware limited liability company that will be purchasing the claims and litigation rights held by the Reliance Claimants that choose Option A.

2.1.98    _Maximum Distributions_.  A Distribution to a Holder of an Allowed General Unsecured Claim against a Debtor equal to one hundred percent (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the applicable Debtor's Petition Date.

2.1.99    _MB Firm_.  Miller Barondess, LLP.

2.1.100    _Mechanic Lien Claims_.  Mechanic Lien Claims arising pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise allegedly satisfy the requirements of Bankruptcy Code 546(b).

2.1.101    _Minimum Increment_.  Minimum Increment means the following: a) _For Sales of Projects_: One hundred percent of the preceding Qualifying Bid, plus any applicable Break-Up Fee, plus two hundred and fifty-thousand dollars ($250,000); and b) For Sales of Other Plan Trust Assets: One hundred percent (100%) of the preceding Qualifying Bid, plus any applicable Break-Up Fee, plus five percent (5%) of the preceding Qualifying Bid.

2.1.102    _Net Litigation Recoveries_.  Litigation Recoveries less associated Administrative Claims and Post-Confirmation Expenses incurred in connection with such Litigation Recoveries.

2.1.103    _Net Sales Proceeds_.  The Cash generated from the sale(s) or liquidation of the Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

2.1.104    _Net Sales Proceeds Account(s)_.  Separate account(s) that will be established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s) and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

-17-

1  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

2  where there are two Disputed Liens on a single Project, in which case, there shall be a single

3  account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or

4  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

5  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

6  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

7  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

8  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

9  thereto shall become Available Cash and shall be transferred to the applicable Distribution

10  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

11  allowed and deemed valid but subject to the equitable subordination causes of action in the

12  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

13  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

14          2.1.105   Oak Knoll Project.  The Project owned by SunCal Oak Knoll, located in

15  the City of Oakland, California, as more particularly described herein.

16          2.1.106   Opening Bid.  Opening Bid means the first Qualifying Bid accepted by

17  the Debtor for any of the Plan Trust's Assets.

18          2.1.107   Orders for Relief Date.  The following are dates that orders for relief were

19  entered for each of the Trustee Debtors:

| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

26          2.1.108   Pacific Point First Loan Agreement.  That certain loan agreement, dated

27  February 16, 2006, by and among Lehman ALI, SJD Development and SJD Partners, pursuant to

28  which Lehman ALI made a loan in the maximum aggregate principal amount of approximately

-18-

1   $125,000,000. The Pacific Point First Loan Agreement is allegedly secured by a first-priority deed

2   of trust on the Pacific Point Project.  The Pacific Point First Loan Agreement had an asserted

3   balance due of $120,110,237 as of March 30, 2009, and ownership of this loan is now held by

4   Lehman Re, a Bermuda business entity.

5           2.1.109   Pacific Point Second Loan Agreement.  That certain loan agreement,

6   dated May 1997, by and between Lehman ALI and SJD Partners, pursuant to which Lehman ALI

7   initially made a loan in the maximum aggregate principal amount of approximately $20,000,000.

8   The Pacific Point Second Loan Agreement was secured by a second-priority deed of trust on the

9   Pacific Point Project, which was foreclosed upon on August 28, 2008 by LV Pacific Point, as

10  assignee of Lehman ALI.

11          2.1.110   Pacific Point Project.  The Project formerly owned by SJD Partners,

12  which was non-judicially foreclosed upon on August 28, 2008, by LV Pacific Point, as assignee of

13  Lehman ALI.  The Pacific Point Project is a 200 plus acre development overlooking the Pacific

14  Ocean in San Juan Capistrano, California.

15          2.1.111   Person.  An individual, partnership, corporation, limited liability

16  company, business trust, joint stock company, trust, unincorporated association, joint venture,

17  governmental authority, governmental unit, committee or other entity of whatever nature.

18          2.1.112   Petition Dates.  The following are dates that each of the Voluntary

19  Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11

20  petitions against the Trustee Debtors:

| Palmdale Hills | November 6, 2008 |
|---|---|
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |

| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.113   Plan. This Chapter 11 Plan together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.114   Plan Documents. The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.115   Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.116   Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.117   Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.118   Plan Sponsor. The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date. The Plan Sponsor is Acquisitions.

2.1.119   Plan Trust. A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets and to otherwise consummate the Plan.

2.1.120   Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

1          2.1.121    Plan Trust Agreement. The liquidating trust agreement governing the

2 affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

3          2.1.122    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders

4 of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be

5 satisfied from Plan Trust Property in accordance with the terms of the Plan.

6          2.1.123    Plan Trust Property. Plan Trust Property means all property within the

7 Chapter 11 estates of the Group IV Debtors, other than property that is affirmatively excluded by

8 the Plan Trustee.

9          2.1.124    Post-Confirmation Expenses. The fees and expenses incurred by the Plan

10 Sponsor, the Plan Trustee and the Committee(s) and their professionals following the Confirmation

11 Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and

12 liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed

13 Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions

14 under the Plan; and (v) otherwise consummating the Plan and closing the Group IV Debtors'

15 Chapter 11 Cases.

16          2.1.125    Priority Claim. Any Claim, other than an Administrative Claim or a Tax

17 Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

18          2.1.126    Pro Rata. Proportionately, so that with respect to any distribution in

19 respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

20 such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

21 amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

22 such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

23          2.1.127    Professional. A Person or Entity (a) employed by the Debtors, the

24 Committees pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy

25 Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections

26 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation and

27 reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

28 Bankruptcy Code.

1          2.1.128    Professional Fees. All Allowed Claims for compensation and for

2    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

3          2.1.129    Projects. The Group IV Debtors' residential real estate development

4    projects and other assets as separately defined herein and described in Exhibit "1" to the Disclosure

5    Statement..

6          2.1.130    Qualifying Bid. Qualifying Bid means, with respect to a bid on a Project,

7    a bid made by Qualifying Bidder that exceeds the immediately preceding Qualifying Bid by the

8    Minimum Increment.

9          2.1.131    Qualifying Bidder. Qualifying Bidder means a bidder who has provided

10    the Plan Trustee, in the case of a bid for a Project, a deposit equal to two hundred and fifty

11    thousand dollars ($250,000) and who has provided the Plan Trustee evidence confirming that the

12    bidder has the financial means to acquire the Plan Trust Asset being offered for sale. In the case of

13    a bid for another Asset owned by the Plan Trust, means a bidder who provides cash deposit equal

14    to ten percent of the value of the Assets being offered for sale and evidence confirming the

15    bidder's ability to timely pay the remainder of the purchase price.

16          2.1.132    Reliance Claim. An Allowed Unsecured Claim against a Debtor that

17    would entitle the holder thereof to be the beneficiary of any equitable subordination judgment

18    obtained against a Lehman Entity by such Debtor, or that would entitled the holder thereof to

19    receive a share of any Claim Objection Reduction Amount obtained by the Debtor through a

20    Lehman Claim Objection, before other holders of Allowed Unsecured Claims could participate in

21    this recovery amount.

22          2.1.133    Reliance Claimant. The holder of a Reliance Claim. A list of the Reliance

23    Claims and Reliance Claimants is attached hereto as Exhibit "8."

24          2.1.134    Sale Period. The Sale Period is the time period that the Plan Trustee is

25    provided under the Plan to consummate a sale or liquidation of the Plan Trust's Assets subject to

26    the Lehman Disputed Claims(s) and/or the Lehman Disputed Lien(s). The Sales Period shall

27    commence on the Confirmation Date and shall expire sixty days after the Effective Date.

28

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

2.1.135   <u>SCC Communities</u>.  SCC Communities, LLC, a limited liability company, a Voluntary Debtor herein, and the owner of the Joshua Ridge Project.

2.1.136   <u>SCC JV</u>.  SCC JV Ventures, LLC, a Delaware limited liability company that is an Affiliate of Acquisitions and the Debtors.

2.1.137   <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.138   <u>Schedules</u>.  The schedules of assets and liabilities and list of equity security holders Filed by the Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.139   <u>Secured Claim</u>.  Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and unavoidable Lien on the Debtor(s)' Assets.

2.1.140   <u>SJD Partners</u>.  SJD Partners, Ltd., a California limited partnership, a Voluntary Debtor herein, and the prior owner of the Pacific Point Project.

2.1.141   <u>Stalking Horse Bidder</u>.  Stalking Horse Bidder means the Qualifying Bidder who submits the Opening Bid for any of the Plan Trust's Assets.

2.1.142   <u>State Court Action</u>. The action filed by certain Voluntary Debtors against Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of Orange (Case No. 30-2011-0040847-CU-BC-CJC), which shall be amended to include certain Trustee Debtors as additional plaintiffs if this Plan confirmed.

2.1.143   <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its Affiliates.

2.1.144   <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited liability company, and the property manager for the Projects.

2.1.145   <u>SunCal Oak Knoll</u>. SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor herein, and the owner of the Oak Knoll Project.

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

1    2.1.146   SunCal Oak Knoll/SunCal Torrance Loan Agreement. That certain Loan

2    Agreement, dated as of November 30, 2006, between SunCal Torrance and SunCal Oak Knoll, as

3    borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan

4    in the maximum aggregate principal amount of approximately $167.7 million. The SunCal Oak

5    Knoll/SunCal Torrance Loan Agreement is allegedly secured by first-priority deeds of trust on the

6    Oak Knoll and the Del Amo Projects. The SunCal Oak Knoll/SunCal Torrance Loan Agreement

7    has an alleged balance due of $158,141,364.64 as of March 30, 2009.

8    2.1.147   SunCal Plan Proponent(s). The Voluntary Debtors and Acquisitions as

9    the parties-in-interest that are proposing the Plan.

10    2.1.148   SunCal Torrance. SunCal Torrance Properties, LLC, a Delaware limited

11    liability company, a Trustee Debtor herein, and the owner of the Del Amo Project.

12    2.1.149   Tax. Any tax, charge, fee, levy, impost or other assessment by any

13    federal, state, local or foreign taxing authority, including, without limitation, income, excise,

14    property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

15    estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

16    additions attributable to, or imposed on or with respect to such assessments.

17    2.1.150   Tax Claim. Any Claim for any Tax to the extent that it is entitled to

18    priority in payment under Section 507(a)(8) of the Bankruptcy Code.

19    2.1.151   Tesoro. Tesoro SF, LLC, a Delaware limited liability company, a

20    Voluntary Debtor herein, and the owner of the Tesoro Project.

21    2.1.152   Tesoro Project. The Project owned by Tesoro located in the City of Santa

22    Clarita, California, as more particularly described herein.

23    2.1.153   Trustee. The term Trustee refers to Steven Speier, the Chapter 11 trustee

24    appointed in the Trustee cases of the Trustee Debtors.

25    2.1.154   Trustee Debtor(s). The following Debtors, individually or collectively,

26    that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

27    Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

28    Torrance, and SunCal Oak Knoll.

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

1          2.1.155    <u>Trustee Debtors' Committee</u>. The Official Committee of Unsecured

2   Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

3   Bankruptcy Code.

4          2.1.156    <u>Unpaid Secured Real Property Tax Claims</u>. Secured Claims held by

5   various government entities secured by liens on the underlying real properties owned by the

6   Debtors but that are non-recourse to the Debtors.

7          2.1.157    <u>Voluntary Debtor(s)</u>. The following  Chapter 11 debtors and debtors-in-

8   possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

9   Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

10   Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

11   Rio and Tesoro.

12          2.1.158    <u>Voluntary Debtors' Committee</u>. The Official Committee of Unsecured

13   Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

14   Bankruptcy Code.

15      **2.2**    **Rules of Construction.**

16        For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or

17   in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

18   singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

19   masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

20   Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means

21   such document or schedule, as it may have been or may be amended, modified or supplemented

22   pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

23   entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

24   or this Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

25   and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

26   in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

27   the Plan or this Disclosure Statement, any reference in the Plan or this Disclosure Statement to a

28   contract, instrument, release, indenture, agreement, or other document being in a particular form or

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

1   on particular terms and conditions means that such document shall be substantially and materially

2   in such form or substantially and materially on such terms and conditions; (h) any reference in the

3   Plan or this Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

4   Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

5   may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

6   102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

7   express terms of the Plan or this Disclosure Statement or any other provision in this Section 3.2.

8       **2.3    Exhibits.**

9           All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

10  therein.

11                              **III.**

12                  **PLAN CONFIRMATION DEADLINES**

13          The Bankruptcy Court has not confirmed the Plan described in this Disclosure Statement.

14  Accordingly, the terms of the Plan are not binding on anyone.  However, if the Bankruptcy Court

15  confirms the Plan, then the Plan will be binding on the Debtor(s), the Plan Trustee, and on all

16  Creditors and Interest Holders in such Cases.

17      **3.1    Time and Place of the Confirmation Hearing.**

18          The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan

19  will take place at 411 West Fourth Street, Santa Ana, CA 92701-4593 on _____, 2011, at ___

20  _.m. in Courtroom 5A.

21      **3.2    Deadline for Voting for or Against the Plan.**

22          If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

23  return the ballot to:

        Winthrop Couchot Professional Corporation
24      660 Newport Center Drive, Suite 400
        Newport Beach, CA 92660
25      Facsimile:  (949) 720-4111
        Attn:  P.J. Marksbury
26

27  Your ballot must be **received by** _____, 2011, or it will not be counted.

28

MAINDOCS-#160301-v1-Disclosure_Statement_Group_IV.DOC

**3.3**    **Deadline for Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court, and

served upon the following parties so that they are received by _____, 2011:

| | |
|---|---|
| **Counsel to the**<br>**Voluntary Debtors** | Paul J. Couchot<br>Winthrop Couchot Professional Corporation<br>660 Newport Center Drive, Suite 400,<br>Newport Beach, CA 92660 |
| **Authorized Agent for**<br>**Voluntary Debtors a** | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |
| **Counsel for SunCal**<br>**Management LLC and**<br>**SCC Acquisitions Inc.** | Ronald Rus<br>Rus Miliband & Smith P.C.<br>2211 Michelson Drive, Seventh Floor<br>Irvine, California 92612 |
| **Authorized Agent for**<br>**SunCal Management and**<br>**SCC Acquisitions, Inc.** | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |

**3.4**    **Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact the

Voluntary Debtors' counsel, Winthrop Couchot Professional Corporation, 660 Newport Center

Drive, Suite 400, Newport Beach, CA 92660, Attn: Paul J. Couchot, (949) 720-4100; Peter W.

Lianides, (949) 720-4155; Payam Khodadadi, (949) 720-4160.

**3.5**    **Disclaimer.**

The information contained in this Disclosure Statement is provided by the SunCal Plan

Proponents. The SunCal Plan Proponents represent that everything stated in this Disclosure

Statement is true to the best of their knowledge. The Bankruptcy Court has not yet determined

whether or not the Plan is confirmable and makes no recommendation as to whether or not you

should support or oppose the Plan.

The discussion in this Disclosure Statement regarding the Debtors may contain "forward

looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

1    Such statements consist of any statement other than a recitation of historical fact and can be

2    identified by the use of forward looking terminology such as "may," "expect," "anticipate,"

3    "estimate," or "continue," or the negative thereof or other variations thereon or comparable

4    terminology.  The reader is cautioned that all forward looking statements are necessarily

5    speculative and there are certain risks and uncertainties that could cause actual events or results to

6    differ materially from those referred to in such forward looking statements.  The liquidation

7    analyses, distribution projections, projections of financial results and other information are

8    estimates only, and the timing, amount and value of actual distributions to Creditors may be

9    affected by many factors that cannot be predicted.  Therefore, any analyses, estimates, or

10   projections may or may not turn out to be accurate.

11       The SunCal Plan Proponents and their professionals have made a diligent effort to identify

12   in this Disclosure Statement all Litigation Claims, including claims for relief, counterclaims, and

13   objections to claims.  However, no reliance should be placed on the fact that a particular Litigation

14   Claim is or is not identified in this Disclosure Statement.  The Debtors or other parties in interest

15   may seek to investigate, file and prosecute Litigation Claims after the Confirmation Date or

16   Effective Date of the Plan whether or not the Litigation Claims are identified in this Disclosure

17   Statement.

18                                            **IV.**

19                      **FACTUAL BACKGROUND OF THE DEBTORS**

20   **4.1    The Formation of the Debtors and the Projects.**

21            **4.1.1    Overview of the Debtors and their Projects.**

22       The Group IV Debtors are six of the twenty-six entities (collectively the "Debtors") that

23   were formed pursuant to a joint venture between Affiliates of the SunCal Companies ("SunCal")

24   and the Lehman Entities (the "SunCal/Lehman Joint Venture"). They were formed to own and

25   develop the large residential projects that were the core assets in this joint undertaking.

26       At the inception of SunCal/Lehman Joint Venture, it was agreed that SunCal would be the

27   developer/manager of the Projects and the Lehman Entities would provide the necessary capital.

28

-28-

1   Attached hereto as Exhibit "1" is a general description of the Debtors' Projects and the Debtors'

2   other primary Assets, excluding Cash and the Litigation Claims.

3        All of the Debtors are Affiliates of Acquisitions and SCC LLC.  Some of the Debtors

4   directly own the Projects, while others serve as holding companies, owning Allowed Interests in the

5   Debtors that hold title to the Projects.  SunCal Management, LLC, a SunCal Affiliate, has

6   management contracts with respect to all of the Projects and pursuant to this contract manages the

7   Debtors' day-to-day business affairs.

8        The seventeen Debtors who are referred to herein as the "Voluntary Debtors" are wholly

9   owned by SunCal Affiliates, and consequently the SunCal Affiliates have full corporate

10  governance authority over these entities.  The Voluntary Debtors own eleven (11) of the Projects.

11       In the case of the nine Trustee Debtors, the SunCal Affiliates and the Lehman Affiliates

12  initially shared ownership equally (50% each). However, after the Petition Date, the SunCal

13  Affiliates became the owner of hundred percent (100%) of the equity in two of the nine Trustee

14  Debtors - SunCal Heartland and SunCal Marblehead.  The Trustee Debtors own nine (9) Projects.

15       Attached hereto as Exhibit "2" is a chart that sets forth the appraised value of most of the

16  Debtors' Projects. This chart lists both the Lehman Lenders' value estimates and SunCal's

17  valuation estimates. SunCal's valuations were prepared by SunCal's internal underwriting team

18  using the same criteria that SunCal employs when valuing prospective acquisitions.[4]  As the chart

19  indicates, the Lehman Lenders' valuation for the Group IV Projects is in the aggregate amount of

20  $83,550,000, while the Debtors' valuation of the Group IV Projects is in the aggregate amount of

21  $46,900,000.

22       The Plan eliminates any potential value disputes by providing for the sale of the Group IV

23  Projects through a sale procedure that is designed to yield the highest market price for these assets.

24  Accordingly, to the extent any other party believes the Group IV Projects have a greater value than

25  the Opening Bid offered by another Qualifying Bidder, they will have the opportunity to submit a

26  Qualifying Bid (but no credit-bids will be allowed) that exceeds the Opening Bid and, if they so

27

28

---

[4] Values may have changed since these analyses were prepared.

-29-

1  desire, to become the prevailing bidder by offering the highest Qualifying Bid. This market sale

2  process will insure that the rights of all stakeholders are protected.

3  ### 4.1.2    The Group IV Debtors' Primary Secured Creditors.

4      A description of the Group IV assets appear in Exhibit "1" hereto. A description of the

5  Group IV disputed claims appear in Exhibit "3."

6      All of the Group IV Secured Claims are being disputed through the Lehman Adversary

7  Proceeding, the Lehman Claim Objections, and the State Court Action.

8      All of foregoing claims are disputed through the Lehman Adversary Proceeding and they

9  will also be disputed in the Lehman Claim Objections. If successful, Lehman Ali's alleged lien

10  rights against the Del Rio CFD Proceeds will be avoided, and the remainder of Lehman Ali's lien

11  rights will be subordinated to the rights of some, and possibley all creditors holding Allowed

12  Unsecured Claims against the Group IV Debtors. If the Lehman Claim Objections are successful,

13  the amount owed on the above listed secured claims will be significantly reduced. This will free up

14  Net Sales Proceeds when the Group IV Projects are sold under the Plan, creating a cash source to

15  pay Allowed Unsecured Claims.

16  ### 4.1.3.    Del Rio Bond Issuance..

17      Del Rio sold its Project prepetition. However, it continues to hold the right to receive the

18  net proceeds payable on certain CFD Bonds issued by the City of Orange, which have an estimated

19  value of approximately $7 million to $8 million (the "Del Rio CFD Bond Proceeds").

20      On March 16, 2010, the Court entered an order which authorized the issuance and the sale

21  of the Del Rio CFD Bonds, and certain creditor payments. As set forth in detail below, from the

22  closing, approximately $6.7 million of claims (including approximately $2,924,827 of SunCal

23  Management claims) were paid.

24
| | |
|---|---|
| All American Asphalt | $52,468.13 |
| Bova Contracting Corp. | $199,982.63 |
| Sierra Pacific Electrical Contracting | $49,507.61 |
| Charles Backlet & Associates | $241.00 |
| Chino Grading, Inc. | $3,256.00 |
| City of Orange | $1,959.00 |
| Consolidated Reprographics | $281.96 |
| County of Orange | $192.50 |

-30-