1    William N. Lobel (CA Bar No. 93202)
     Mike D. Neue (CA Bar No. 179303)
2    THE LOBEL FIRM, LLP
     840 Newport Center Drive, Suite 750
3    Newport Beach, California  92660
     Telephone:  (949) 999-2860
4    Facsimile:  (949) 999-2870

5    General Insolvency Counsel for Steven M. Speier,
     the Chapter 11 Trustee for the Trustee Debtors

6
     Richard M. Pachulski (CA Bar No. 90073)
7    Dean A. Ziehl (CA Bar No. 84529)
     Steven J. Kahn (CA Bar No. 076933)
8    PACHULSKI STANG ZIEHL & JONES LLP
     10100 Santa Monica Boulevard, Suite 1100
9    Los Angeles, California  90067
     Telephone:  (310) 277-6910
10   Facsimile:  (310) 201-0760

     Edward Soto (admitted *pro hac vice*)
11   Shai Waisman (admitted *pro hac vice*)
     WEIL, GOTSHAL & MANGES LLP
12   767 Fifth Avenue
     New York, NY  10153-0119
13   Telephone:  (212) 310-8000
     Facsimile:  (212) 310-8007
14
     Counsel for Lehman ALI, Inc.

15           **UNITED STATES BANKRUPTCY COURT**

16           **CENTRAL DISTRICT OF CALIFORNIA**

17               **SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:08-bk-17206-ES |
| Palmdale Hills Property, LLC, and Its Related Debtors, Jointly Administered Debtors and Debtors-In-Possession. | Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES |
| Affects: | |
| ☐ All Debtors | |
| ☐ Palmdale Hills Property, LLC | Chapter 11 |
| ☐ SunCal Beaumont Heights, LLC | |
| ☐ SCC/Palmdale, LLC | **JOINT MOTION FOR ORDER** |
| ☐ SunCal Johannson Ranch, LLC | **DISALLOWING GENERAL UNSECURED** |
| ☐ SunCal Summit Valley, LLC | **AND ADMINISTRATIVE CLAIMS OF** |
| ☐ SunCal Emerald Meadows, LLC | **SUNCAL MANAGEMENT, LLC;** |
| ☐ SunCal Bickford Ranch, LLC | **MEMORANDUM OF POINTS AND** |
| ☐ Acton Estates, LLC | |
| ☐ Seven Brothers, LLC | |
| ☐ SJD Partners, Ltd. | |
| ☐ SJD Development Corp. | |
| ☐ Kirby Estates, LLC | |
| ☐ SunCal Communities I, LLC | |
| ☐ SunCal Communities III, LLC | |
| ☐ SCC Communities, LLC | |
| ☐ North Orange Del Rio Land, LLC | |

1 ☐ Tesoro SF, LLC
  ☐ LB-L-SunCal Oak Valley, LLC
2 ☐ SunCal Heartland, LLC
  ☐ LB-L-SunCal Northlake, LLC
3 ☐ SunCal Marblehead, LLC
  ☐ SunCal Century City, LLC
4 ☐ SunCal PSV, LLC
  ☒ Delta Coves Venture, LLC
5 ☐ SunCal Torrance, LLC
  ☐ SunCal Oak Knoll, LLC
6

7

8

9

**AUTHORITIES; AND DECLARATIONS
OF STEVEN J. KAHN AND PHILIP
CYBURT**

**For Debtor Delta Coves Venture, LLC –**
Claimant: SunCal Management, LLC
Claim Nos.: 7, 19-1 and 19-2

[Supporting Declaration of Steven Speier filed
concurrently]

**Hearing:**
Date: June 14, 2011
Time: 10:30 a.m.
Place: 411 West Fourth Street
   Santa Ana, CA 92701-4593
   Courtroom 5A

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

11   This *Joint Motion for Order Disallowing General Unsecured and Administrative Claims Of*

12 *SunCal Management, LLC (For Debtor Delta Coves Venture, LLC, Claimant: SunCal Management,*

13 *LLC, Claim Nos. 7, 19-1 and 19-2)* (the "Objection") is jointly filed by Steven M. Speier, the chapter

14 11 trustee (the "Trustee") for the Trustee Debtors[1] on the one hand, and Lehman ALI, Inc., on the

15 other hand ("Lehman" and, together with the Trustee, the "Movants"), pursuant to section 502 of

16 Title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of

17 Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 3007-1 and 9014-1 (b) of the United

18 States Bankruptcy Court for the Central District of California (the "Court").

This Objection is based on the arguments set forth below and declarations attached hereto,

19 the concurrently filed *Declaration of Steven M. Speier in Support of Joint Motion for Order*

20 *Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC* (the

21 "Speier Declaration"), any exhibits thereto, any and all subsequent pleadings filed by the Movants

22 relating to the Objection, any oral or documentary evidence presented at or prior to the time of the

23 hearing, and the record in these cases.

24   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a

25 core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

26

27

28

[1] The Trustee Debtors in these cases consist of: SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal
Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century City,
LLC (Case No. 8:08-17458-ES); SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case No.
8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley, LLC (Case No. 8:08-
17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES).

# MEMORANDUM OF POINTS AND AUTHORITIES

This Objection is filed pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, which governs objections to claims. Movants submit that Claim Nos. 7, 19-1 and 19-2 (collectively the "Claims") filed by SunCal Management, LLC (the "Claimant" or "SunCal Management") should be disallowed in their entirety because (a) Delta Coves Venture, LLC (the "Debtor" or "Delta Coves") is not obligated to Claimant for any of the sums asserted in the Claims, (b) even if the Court were to find that the Debtor was somehow obligated to Claimant, the claims should nonetheless be disallowed because (i) Claimant has already been overpaid management fees alleged to be owed to it, (ii) portions of the Claim components are not contractually or otherwise recoverable, and (iii) the Claimant has failed to submit any evidence to support the Claims, much less prove the requisite benefit to the Debtor's estate from its purported services contended to have been rendered post-petition.

## I.    BACKGROUND OF THE BANKRUPTCY CASES

On November 6, 7, and 19, 2008, the Voluntary Debtors[2] filed their respective voluntary petitions under chapter 11 of the Bankruptcy Code in the Court. The Voluntary Debtors continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

On November 12, 14 and 19, 2008, involuntary petitions were filed against the Trustee Debtors, including the involuntary petition against Delta Coves filed November 14, 2008 (the "Petition Date"). On or about January 8, 2009, the Court entered orders for relief in the Trustee Debtors' cases. On or about January 15, 2009, the Court entered orders granting the appointment of a chapter 11 trustee in each of the Trustee Debtors' cases. Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the Trustee for the Trustee Debtors.

---

[2] The Voluntary Debtors in these cases consist of: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates, LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del Rio Land, LLC (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch, LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows, LLC (Case No. 8:08-17230-ES); SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley, LLC (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## II.    THE SUNCAL MANAGEMENT CLAIMS SUBJECT TO OBJECTION

### A.    SunCal Management's General Unsecured Claim Against Delta Coves

On March 19, 2009, SunCal Management filed a general unsecured claim in the sum of $1,084,858.63, designated Claim No. 7 (the "General Unsecured Claim"), which superseded a claim scheduled by Delta Coves in favor of SunCal Management in the sum of $1,064,476.62.

The General Unsecured Claim is supported solely by a one-page ledger sheet setting forth various components of the General Unsecured Claim which can be categorized as follows:

| Component | Amount |
|---|---|
| Management Fees | $607,058.00 ($392,000 for June – August 2008; $80,000 per month for September and October, 2008, and "balance owed" of $55,058 for November, 2008). |
| Project Staff Costs | $205,995.00 |
| Marketing Staff Costs | $18,198.00 |
| Legal Staff Costs | $10,000.00 |
| Insurance | $227,237.00 |
| Employee Expense Reimbursements | $16,118.63 |

A true and correct copy of the General Unsecured Claim is attached hereto and incorporated herein by reference as **Exhibit "A."**

Pursuant to Lehman's request for backup documentation supporting the various General Unsecured Claim components, SunCal Management produced a group of "backup" documents, true and correct copies of which are attached hereto and incorporated herein by reference as **Exhibit "B."**[3]

---

[3]  As more fully set forth below, with the exception of Employee Expense Reimbursements, the backup documentation provided by Claimant is insufficient to support the General Unsecured Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2    **B.    SunCal Management's Administrative Claims Against Delta Coves**

3        On March 25, 2009, SunCal Management filed a proof of claim for an administrative claim

4    in the sum of $448,061 designated Claim No. 19-1, and an amended administrative claim on July 20,

5    2010 in the sum of $1,189,572.40, designated Claim No. 19-2 (the "Administrative Claim" and

6    together with the General Unsecured Claim, the "Claims") which was intended to supersede Claim

7    No. 19-1.

8        The Administrative Claim asserts various components which can be characterized as

9    follows:

| Component | Amount |
|---|---|
| Management Fees | $1,087,273.00 ($80,000 per month for December, 2008 through January, 2010, with the exception of 3 months stated at $69,091 per month). |
| Legal Staff Costs | $15,700.00 (for November, 2008 through October, 2009). |
| Insurance | $85,556.00 |
| Third-Party Vendor | $720.00 |
| Employee Expense Reimbursement | $323.40 |

20        The Administrative Claim, like Claim No. 19-1 (attached hereto as **Exhibit "C"**) that it

21    amends is again supported by a single page ledger, with no backup documentation.  As of the date of

22    this Objection, despite requests therefor, admissible backup documentation has not been provided by

23    SunCal Management.[4]

24

25

---

26    [4]    Concurrent with the filing of this Objection, Movants are propounding discovery upon SunCal Management in order
to obtain the backup documentation for the Administrative Claim and other related items, as well as a Rule 36(b)
27    deposition notice.  Because the requested information may not be available in advance of the initial scheduled hearing
date on this Objection, in the event that SunCal Management timely files and serves a response, Movants request the
28    Court to exercise its discretion under Local Bankuptcy Rule 3007-1(b)(5) to treat the initial hearing on the Objection as a
status conference.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   A true and correct copy of the Administrative Claim is attached hereto and incorporated

2   herein by reference as **Exhibit "D."**

3   **III.    OBJECTIONS COMMON TO BOTH THE GENERAL UNSECURED CLAIM AND**

4   **ADMINISTRATIVE CLAIMS**

5   **A.    The Debtor is Not Liable to SunCal Management for Any Sums Asserted**

6   **Through the General Unsecured Claim and Administrative Claim**

7   Although not attached to either the General Unsecured Claim or Administrative Claim, the

8   Claims are predicated upon a Development Management Agreement (Delta Coves) entered into and

9   effective as of September 1, 2006, a true and correct copy of which is attached hereto and

10   incorporated herein by reference as **Exhibit "E."**

11   The Development Management Agreement provides the basis for and terms of payment to

12   SunCal Management of a Management Fee, a Sales Management Fee (as such terms are defined

13   therein), reimbursement for third-party out-of-pocket costs, compensation and other costs (including

14   salary) for SunCal Management employees or independent contractors working directly on the

15   development of the Debtor's real property and certain insurance. These are the same categories of

16   liability asserted against the Debtor in the Claims subject to this Objection.

17   However, the Debtor is not a party to the Development Management Agreement. Rather,

18   and as unequivocally stated in the Development Management Agreement, the party obligated to

19   make any such payments to SunCal Management is SunCal Delta Coves, LLC ("SunCal Delta

20   Coves"), not the Debtor. SunCal Delta Coves is the managing member of Delta Coves Master JV,

21   LLC, which is the sole member of Delta Coves Member, LLC, which is the sole member of the

22   Debtor.

23   Indeed, pursuant to the Operating Agreement of Delta Coves Master JV LLC effective

24   April 20, 2007 (the "Upper Tier Delta Coves JV Agreement") (**Exhibit "F"** hereto), the only entity

25   obligated to pay management fees of any kind with respect to the Delta Coves project is Delta Coves

26   Master JV LLC, not the Debtor. Further, any such management fees are payable to SunCal Delta

27   Coves, not Claimant (see Section 5.4 and Exhibit "B" to **Exhibit "F"** hereto). The contemporaneous

28   Amended and Restated Limited Liability Company Agreement of Delta Coves Venture, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 **(Exhibit "G"** hereto), which superseded the Debtor's prior operating agreement in its entirety, does

2 not contain <u>any</u> provisions for the payment of management fees to SunCal Delta Coves, let alone

3 Claimant.

4     Because the Debtor is not contractually obligated to SunCal Management for any of the sums

5 sought in the General Unsecured Claim and Administrative Claim, the same should be disallowed in

6 their entireties along with Claim 19-1, which was superseded by Claim No. 19-2, and the scheduled

7 claim, which was superseded by the General Unsecured Claim.

8     **B.**    **Even if the Court Were to Find the Debtor to be Somehow Bound by the**

9 **Development Management Agreement or Otherwise Obligated to SunCal Management, the**

10 **General Unsecured Claim and Administrative Claim Should be Disallowed**

11     Each of the following General Unsecured Claim and Administrative Claim components

12 should be disallowed for the reasons set forth hereinbelow:

13     **1.**    **Claimant has Been Overpaid Management Fees**

14     Section 5.1 of the Development Management Agreement (**Exhibit "E,"** pages 7-8) provides

15 that SunCal Delta Coves will pay to SunCal Management "Management Fees" equal to three percent

16 (3%) of the gross revenue generated from the sale of the Debtor's property and certain CFD

17 proceeds,[5] payable in equal monthly installments over the term of the development and sale of the

18 Delta Coves property, a portion of which may be deferred or delayed if funds are not available from

19 project loans or other sources.

20     The check ledgers of the Debtor reveal that during the period from January 1, 2006 through

21 the Petition Date, SunCal Management received no less than $4 million for Management Fees in

22 respect of Delta Coves alone, and a total of $26,309,337 in respect of similar management fees for

23 all of the Trustee Debtors, as reflected in **Exhibit "H"** hereto (see Declaration of Steven Speier, filed

24 concurrently herewith).[6]

25

26 [5] "CFD proceeds" are monies generated by the sales of bonds funding community facilities districts which may be formed in connection with the development of real estate projects.

27 [6] The aggregate amount of management fees actually paid to SunCal Management is believed to be higher by reason that certain of the Development Management Agreements respecting projects owned by other Trustee Debtors and

28 Voluntary Debtors are dated prior to January 1, 2006, and additional sums were paid to Claimant post-petition, which information is sought in the presently pending discovery.

    

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Hence, using the stated rate of 3% of gross sales, the Management Fees already received by

2    SunCal Management from January 1, 2006 through the Petition Date ($4 million) require the Delta

3    Coves property to be worth *$133.33 million,* an amount acknowledged by all parties to be far greater

4    than the value of the Delta Coves property.

5    In point of fact, in the Debtors' Fourth Amended Joint Disclosure Statement Describing

6    Debtors' Fourth Amended Joint Plan of Reorganization (the "SunCal Disclosure Statement") filed

7    with the Court on September 30, 2010 [Docket No. 1418], the Voluntary Debtors and SCC

8    Acquisitions, Inc. as co-proponents of the plan described in the SunCal Disclosure Statement, valued

9    the Delta Coves property at only *$22,000,000.*[7]

10    Although Claimant will surely argue that its receipt of and continued right to payment of

11    Management Fees was predicated upon an initial projected value of the property at the point

12    Claimant completed its development efforts, this argument fails.

13    First, any initial projected value of the Delta Coves project, whether or not reasonable at the

14    onset, is no longer reasonable, as the market conditions which existed back in 2006 are no longer

15    extant today.

16    Second, the fact remains that Claimant's development efforts ceased prior to the Petition

17    Date, and its development efforts to date have resulted in a property valued at only $22,000,000.

18    Any increased value of a developed property from this point forward will be as the result of the

19    efforts of others, not Claimant.[8]

20    Third, the payment of Management Fees as a percentage of a projected gross sales price of

21    the Delta Coves project was contemplated as being subject to a "true up" upon the ultimate sale of

22    the project. Indeed, the Upper Tier Delta Coves JV Agreement (**Exhibit "F"** hereto at section 2(b)

23    of Exhibit "B" thereto) states that if Management Fees paid by Delta Coves Master JV LLC to

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

25  [7]  A copy of the face page of the SunCal Disclosure Statement, page 32 (describing property values set forth in Exhibit 2

26  thereto) and Exhibit 2 (setting forth such values), are attached for the Court's convenience as **Exhibit "I."**  The
Voluntary Debtors, SCC Acquisitions, Inc. and Claimant SunCal Management are all owned or controlled by Bruce
Elieff.

27  [8]  Additionally, Movants are informed and believe that the Elieffs formed a new development management company on
or about July 30, 2009 named Argent Management LLC ("Argent") which has been engaged in business in relation to

28  one or more of the Voluntary Debtors. To the extent SunCal Management transferred its employees to Argent, SunCal
Management would have no ability to continue to manage the Debtor's property.

1    Hence, using the stated rate of 3% of gross sales, the Management Fees already received by

2    SunCal Management from January 1, 2006 through the Petition Date ($4 million) require the Delta

3    Coves property to be worth *$133.33 million,* an amount acknowledged by all parties to be far greater

4    than the value of the Delta Coves property.

5    In point of fact, in the Debtors' Fourth Amended Joint Disclosure Statement Describing

6    Debtors' Fourth Amended Joint Plan of Reorganization (the "SunCal Disclosure Statement") filed

7    with the Court on September 30, 2010 [Docket No. 1418], the Voluntary Debtors and SCC

8    Acquisitions, Inc. as co-proponents of the plan described in the SunCal Disclosure Statement, valued

9    the Delta Coves property at only *$22,000,000.*[7]

10    Although Claimant will surely argue that its receipt of and continued right to payment of

11    Management Fees was predicated upon an initial projected value of the property at the point

12    Claimant completed its development efforts, this argument fails.

13    First, any initial projected value of the Delta Coves project, whether or not reasonable at the

14    onset, is no longer reasonable, as the market conditions which existed back in 2006 are no longer

15    extant today.

16    Second, the fact remains that Claimant's development efforts ceased prior to the Petition

17    Date, and its development efforts to date have resulted in a property valued at only $22,000,000.

18    Any increased value of a developed property from this point forward will be as the result of the

19    efforts of others, not Claimant.[8]

20    Third, the payment of Management Fees as a percentage of a projected gross sales price of

21    the Delta Coves project was contemplated as being subject to a "true up" upon the ultimate sale of

22    the project. Indeed, the Upper Tier Delta Coves JV Agreement (**Exhibit "F"** hereto at section 2(b)

23    of Exhibit "B" thereto) states that if Management Fees paid by Delta Coves Master JV LLC to

24

---

25    [7]  A copy of the face page of the SunCal Disclosure Statement, page 32 (describing property values set forth in Exhibit 2
thereto) and Exhibit 2 (setting forth such values), are attached for the Court's convenience as **Exhibit "I."** The

26    Voluntary Debtors, SCC Acquisitions, Inc. and Claimant SunCal Management are all owned or controlled by Bruce
Elieff.

27    [8]  Additionally, Movants are informed and believe that the Elieffs formed a new development management company on
or about July 30, 2009 named Argent Management LLC ("Argent") which has been engaged in business in relation to

28    one or more of the Voluntary Debtors. To the extent SunCal Management transferred its employees to Argent, SunCal
Management would have no ability to continue to manage the Debtor's property.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    SunCal Delta Coves exceeded the stated percent of the <u>actual</u> sales price of the project, SunCal Delta

2    Coves was required to pay back any excess fees it received.

3    In short, SunCal Management has already received more than it would ever be entitled in

4    Management Fees and its claims for Management Fees totaling an additional $1,694,331 should be

5    disallowed.

6    **2.    Claimant's Alleged Entitlement to Payment of Management Fees is Subordinate**

7    **to Lehman's Loan on the Debtor's Property.**

8    On April 20, 2007, Claimant, SunCal Delta Coves and Lehman entered into a Consent and

9    Subordination of Development Management Agreement (the "<u>Subordination Agreement</u>"), a true

10    and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "J"**

11    (see Declaration of Philip Cyburt).  Pursuant to paragraph 3(a) of the Subordination Agreement,

12    SunCal Management agreed to subordinate the Development Management Agreement and any and

13    all liens, rights and interests thereunder to the loan in the maximum aggregate principal amount of

14    $236 million which is evidenced by a promissory note and secured by a deed of trust in favor of

15    Lehman (the "<u>Delta Coves Loan</u>").

16    The Subordination Agreement provides that so long as there was no event of default under

17    the Delta Coves Loan and all amounts then due and owing to Lehman have been paid in full, SunCal

18    Delta Coves would be permitted to continue to pay certain of the Management Fees to SunCal

19    Management.

20    However, by reason of pre-existing and continuing defaults under the term of the Delta

21    Coves Loan, and as reflected in **Exhibit "K"** hereto (see Declaration of Philip Cyburt), on June 11,

22    2008, Lehman formally declared an event of default under the terms of the Delta Coves Loan, which

23    default remains uncured.  In a Protective Disbursement Agreement dated August 11, 2008, (**Exhibit**

24    **"L"** hereto at paragraph 2 thereof), the Debtor acknowledged that defaults under the Delta Coves

25    Loan occurred and were continuing and that the Delta Coves Loan has been and remains accelerated

26    and payable in full.

27    Hence, to the extent that the Court determines that the Debtor, as opposed to SunCal Delta

28    Coves, is liable to SunCal Management for the payment of Management Fees, SunCal

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Management's entitlement to such fees is subordinate to the rights of Lehman pursuant to the

2   Subordination Agreement. SunCal Management's claim for Management Fees should therefore be

3   disallowed.

4   **3.    Claimant Is Not Entitled to Insurance Costs**

5   Section 2.2 of the Development Management Agreement (**Exhibit "E,"** pages 4-5) provides

6   that SunCal Management, at its own cost and expense, shall procure and maintain insurance naming

7   the Debtor as an insured thereunder as against claims under Worker's Compensation Acts, bodily

8   injury or death of its employees and commercial general liability insurance in an amount of

9   $1 million and excess liability in the amount of $3 million.

10   Despite this provision, SunCal Management seeks reimbursement for insurance premiums

11   totaling $227,237 in its General Unsecured Claim and $85,556 in its Administrative Claim. Further,

12   the "backup" documentation provided by SunCal Management as to its General Unsecured Claim

13   consists solely of one-page invoices issued by it for insurance reimbursement without any detail as

14   to the types of coverage, dates of coverage and identification of insureds, such that Movants cannot

15   determine whether the insurance reimbursement sought is properly chargeable or within those

16   coverages to be obtained by SunCal Management at its sole cost and expense. The "backup"

17   documentation also does not include premium invoices or proofs of payment of all the amounts

18   claimed. No admissible backup on this component has been provided to Movants to date as to the

19   Administrative Claim.

20   Therefore, this component of the General Unsecured Claim and Administrative Claim should

21   therefore be disallowed.

22   **4.    Project Staff Costs, Marketing Staff Costs and Legal Staff Costs**

23   Section 5.3 of the Development Management Agreement provides that SunCal Management

24   will be reimbursed for compensation and other costs (including salary, bonuses, fringe benefits,

25   perquisites, taxes and other payroll amounts) paid to those employees and/or independent contractors

26   of SunCal Management who worked directly on the Debtor's project, including related overhead, for

27   the actual time spent in working on the Debtor's project (and not for any other projects a given

28   employee may also be working on contemporaneously).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    However, in the documentation submitted as "backup" for the General Unsecured Claim,

2    SunCal Management provides only its own invoices stating the amounts of hours and total balance

3    claimed to be owed for Project Staff Costs, Marketing Staff Costs and Legal Staff Costs.

4    Movants cannot determine therefrom whether the claimed charges are in fact for services

5    rendered solely on the Delta Coves project and the amounts actually paid by Claimant for those

6    services, which information is required to determine the validity of those claim components.

7    SunCal Management bears the ultimate burden of proving up its claim. The allegations set

8    forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts

9    necessary to establish a claim and are not self contradictory, the proof of claim constitutes *prima*

10   *facie* evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P.

11   3001(f) (emphasis added). However, where the proof of claim omits an essential element of the

12   substantive claim, the objector "need only note the absence of any such showing" and need not offer

13   evidence in support. Atwood v. Chase Manhattan Mortgage Co., (In re Atwood), 293 B.R. 227, 233

14   (9th Cir.BAP 2003). The claimant must then prove the validity of the claim by a preponderance of

15   the evidence, and the ultimate burden of persuasion remains at all times on the claimant. Lundell v.

16   Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000) (citing Wright v. Holm (In re

17   Holm), 931 F.2d 620, 623 (9th Cir.1991)).

18   Hence, absent competent proof of the validity of these components of the General Unsecured

19   Claim and Administrative Claim, the same should be disallowed in their entireties.

20   **IV.    OBJECTIONS DIRECTED SOLELY TO THE ADMINISTRATIVE CLAIM**

21   **A.    SunCal Management Failed to Satisfy Proper Procedure by Filing a Proof of**

22   **Claim for an Administrative Claim.**

23   Bankruptcy Code section 503 requires that a request for payment of an administrative

24   expense may be allowed only after notice and a hearing. 11 U.S.C. § 503(b)(1). As a result, the

25   claimant must submit the request by motion or adversary proceeding. *In re DP Partners Limited*

26   *Partnership*, 167 F.3d 667, 671 (5th Cir. 1997).

27   As noted above, the Claimant has asserted its Administrative Claim through a proof of claim,

28   and has failed to submit a request for payment of an administrative expense required by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Bankruptcy Code. This procedural failure may be an attempt to avoid the difficult burden that rests

2   with a claimant under Section 503(b)(1)(A) to prove that the subject expense was actual and

3   necessary to preserve the estate, and to obtain the benefit of the presumption of the *prima facie*

4   validity of a proof of claim, and the shifting of the burden to an objector to present evidence to

5   disprove the claim.  11 U.S.C. § 502(a); Fed. R. Bankr. Pro. 3001(f).

6           As noted above, this notion of *prima facie* validity is not absolute, however; indeed,

7   Claimant's "bare bones" Administrative Claim fails to present sufficient information to earn *prima*

8   *facie* validity.  Only if a proof of claim contains allegations that "set forth all the necessary facts to

9   establish a claim and are not self-contradictory," does it "*prima facie* establish the claim." *In re*

10  *Holm*, 931 F.2d 620, 623 (9th Cir. 1991). *Accord, In re Allegheny Int'l Inc.*, 954, F2.d 167, 173 (3rd

11  Cir. 1992) (claim must allege facts sufficient to support a legal liability to the claimant in order to

12  satisfy the claimant's initial obligation to go forward).  Thus, it may be said that *the proof of claim is*

13  *some evidence as to its validity and amount. It is strong enough to carry over a mere formal*

14  *objection without more. Holm*, 931 F.2d at 620 (emphasis added).  Should objection be taken, the

15  objector is then called upon to produce evidence and show "facts tending to defeat the claim by

16  probative force equal to that of the allegations of the proofs of claim themselves," *Id.,* , then "the

17  burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."

18  *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222,

19  226 (9th Cir. BAP 1995), *aff'd,* 91 F.3d 151 (9th Cir. 1996).

20          Here, Claimant has failed to present any evidence to support any legal liability of the Debtor.

21  The only evidence presented is a proof of claim form and the attached simple ledger of items; there

22  are no allegations or documents to support, much less evidence, a claim to entitlement to payment

23  for any of the items.  The Administrative Claim should be disallowed based on the Claimant's

24  failure to prosecute its claim by the required procedure, and to satisfy its burden to present sufficient

25  allegations and evidence to support the purported claim.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.    SunCal Management Has Failed to Meet Its Burden to Prove the Requisite Elements of an Administrative Claim.**

Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses, ..., including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). In order to establish the right to an administrative claim, a movant bears the burden of proof to establish three elements: (1) the expense arose postpetition and was a necessary expense of the estate; (2) the expense must assist in the preservation of, and confer a substantial benefit on, the bankruptcy estate; and (3) the claim must be an actual expense, not simply amounts due under a contract. *See In re Ybarra*, 424 F.3d 1018, 1026 (9th Cir. 2005); *In re Abercrombie*, 139 F.3d 755,757 (9th Cir. 1998)

The central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors. *See Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 389 (5th Cir. 2001). As a result, allowance of administrative expense claims is narrowly construed. *See, e.g., In re Palau Corp.*, 18 F.3d 746, 750 (9th Cir. 1994); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988).

The burden of proving an entitlement to an administrative expense claim is on the claimant. *In re Bce W.*, 319 F.3d 1166, 1172 (9th Cir. 2003); *DAK Indus.*, 66 F.3d at 1094; *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) ("[a] party seeking payment of costs and fees as an administrative expense must ... carry the *heavy burden* of demonstrating that costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of estate assets.") (emphasis added). *See In re Midway Airlines, Inc.*, 221 B.R. 411, 447 (Bankr. N.D. Ill. 1998) (the "evidentiary burden never shifts from ... the party seeking allowance of an administrative claim").

1    SunCal Management has failed to satisfy any of the 503(b)(1) elements. First, the

2    Administrative Claim should be disallowed based on its failure to prove any basis in fact through

3    supporting evidence. The ledger attached to the Administrative Claim does nothing to establish

4    entitlement to payment for any of the line items, including Management Fees for the Delta Coves

5    project for the months from December, 2008 through January, 2010. The Administrative Claim does

6    not present any agreement or other document to support entitlement to any of the amounts claimed.

7    All but one of the 14 months for which Management Fees are claimed were during the period

8    of time that the Trustee had control of the Debtor and its property, yet the Claim fails to present any

9    evidence that the Trustee requested or approved any management services by Claimant and/or the

10   amount of the fees claimed in the Administrative Claim. (See concurrently filed *Declaration of*

11   *Steven Speier.*) Moreover, even if the Claimant could support a contractual right to the amounts

12   claimed, *Ybarra* requires more – the existence of a contractual right to payment is insufficient to

13   warrant administrative expense priority. *Ybarra*, 424 F.3d at 1026. The bare bones ledger attached

14   to the Administrative Claim does not constitute requisite evidence to establish a right to the amounts

15   claimed, let alone administrative priority.

16   Second, the Administrative Claim fails to establish that the claimed Management Fees, Legal

17   Staff Costs and Insurance were actual and necessary expenses of the Debtor's estate, which assisted

18   in the preservation of, and conferred a substantial benefit on, the bankruptcy estate. The one page

19   ledger does not constitute proof that the claimed expenses were actually paid by the Claimant; no

20   such evidence has been presented. Nor is there any allegation, much less evidence, that the expenses

21   were necessary to the preservation of the Debtor's estate.

22   Third, the Administrative Claim fails to present evidence to establish that the expenses

23   conferred a substantial benefit on the Debtor's estate. With respect to the claimed Management Fees

24   and Legal Staff Costs, it is highly unlikely that Claimant conferred benefit on the estate through

25   services worth the large amounts claimed for Management Fees. No active development of the

26   Delta Coves project occurred during the entire time period for which Management Fees are claimed,

27   based on the Debtor's lack of funds to continue development of the project. (See *Speier*

28   *Declaration*). Thus, even if Claimant could prove a right to any Management Fees during the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  requested time period, the justification for any management fee other than for the minimal services

2  necessary to ensure the safety and security of the project site is highly questionable, and payment for

3  such services was made to SunCal Management with proceeds of certain DIP loans provided by

4  Lehman.

5  The Administrative Claim therefore fails to present evidence to establish the requisite

6  elements for an administrative claim and should therefore be disallowed in its entirety.

7  **V.**    **RESERVATION OF RIGHTS**

8  The Movants reserve the right to further amend, supplement, revise, object or otherwise

9  respond to the Claims objected to in this Objection on any and all additional factual or legal grounds

10  relevant to such claims, either in advance of the hearing on the Objection or at a later date on any

11  ground, and, without limiting the foregoing, to (i) amend the Objection, (ii) adjourn any hearing

12  scheduled on the claim addressed in the Objection; (iii) file additional papers in support of the

13  Objection, and (iv) take all other appropriate actions to (a) respond to any allegation or defense that

14  may be raised in a response; (b) further object to the Claims addressed in the Objection if the

15  Claimant provides (or attempts to provide) additional documentation to substantiate its claim; and/or

16  (c) further object to the Claims addressed in the Objection based on additional information that may

17  be discovered upon further review by Movants or through discovery pursuant to the applicable

18  provisions of the Bankruptcy Rules.

19  **VI.**    **NOTICE**

20  Notice of this Objection is being served on SunCal Management, LLC and its counsel of

21  record, as required by Local Bankruptcy Rule 3007-1(b)(3), and all parties requiring notice in these

22  cases.

23  / / /

24  / / /

25

26

27

28

1    **WHEREFORE,** the Movants respectfully request the Court to enter an order:

2    1.    Sustaining this Objection in its entirety[9];

3    2.    Disallowing Claim No. 7 and the scheduled claim it supersedes with prejudice;

4    3.    Disallowing Claim No. 19-2 (and Claim No. 19-1 that it supersedes), with prejudice;

5    4.    Precluding Claimant from filing additional or amended proofs of claim or motions

6    seeking allowance of administrative claims asserting liability against the Debtor for Management

7    Fees, Project Staff Costs, Legal Staff Costs, Marketing Staff Costs, Employee Expense

8    Reimbursement or Insurance it may contend to have arisen subsequent to the filing of the Claims

9    which are the subject of this Objection;

10    5.    Providing that any ruling by the Court on the Objection shall have no preclusive

11    effect on, and is without prejudice to, the Movants' (including any successor thereof) (a) right to

12    object to or seek disallowance or reclassification of the Claims on any other grounds as the Movants

13    or their successors may later assert, (b) right to assert any claims or demands for relief requiring an

14    adversary proceeding consistent with Rule 3007(b) and Rule 7001 of the Bankruptcy Rules,

15    counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any

16    other bankruptcy or non-bankruptcy claims and causes of action against SunCal Management, LLC,

17    and (c) right to withdraw without prejudice the Objection prior to the hearing thereon and, in case of

18    any such withdrawal, to assert the same (or other) objections to such claim in a later objection (or

19    later objections) to such claim; and

20    / / /

21    / / /

22

23

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

25    [9] Plans and disclosure statements in these cases have been filed. Despite this Objection, the Court may temporarily
26    allow, for voting purposes only, all or part of any claim that is the subject of an objection (Fed. R. Bankr. P. 3018).
Claimant may choose to timely file a motion therefor to be heard prior to whatever voting deadline is established or,
alternatively, if the initial confirmation hearing is set within sixty-five (65) days of service of this notice and if
27    acceptable to the Court, Movants would consent that temporary allowance for plan voting purposes only could be
considered at the initial confirmation hearing (if relevant to plan confirmation) so long as Claimant files a request for
28    such temporary allowance for plan voting with all arguments and evidence therefor by the earlier of fifteen (15) days
after notice hereof or twenty-four (24) days prior to such initial hearing.

1    6.    Granting such other and further relief as the Court deems just and proper.

2

3

4    Dated:    March 30, 2011              THE LOBEL FIRM, LLP

5

6                                         William N. Lobel (CA Bar No. 93202)
                                          Mike D. Neue (CA Bar No. 179303)
7                                         840 Newport Center Drive, Suite 750
                                          Newport Beach, California 92660
8                                         Telephone: (949) 999-2860
                                          Facsimile: (949) 999-2870

9                                         General Insolvency Counsel for Steven M. Speier,
10                                        the Chapter 11 Trustee for the Trustee Debtors

11

12

13

14   Dated:    March 14, 2011             PACHULSKI STANG ZIEHL & JONES LLP

15                                        /s/ Steven J. Kahn
                                          Richard M. Pachulski (CA Bar No. 90073)
16                                        Dean A. Ziehl (CA Bar No. 84529)
                                          Steven J. Kahn (CA Bar No. 076933)
17                                        10100 Santa Monica Blvd., Suite 1100
                                          Los Angeles, CA 90067-4100
18                                        Telephone: (310) 277-6910
                                          Facsimile: (310) 201-0760
19
                                          -and-
20

21                                        WEIL, GOTSHAL & MANGES LLP
22                                        Edward Soto (admitted *pro hac vice*)
                                          Shai Waisman (admitted *pro hac vice*)
23                                        767 Fifth Avenue
                                          New York, NY 10153-0119
24                                        Telephone: (212) 310-8000
                                          Facsimile: (212) 310-8007
25                                        Counsel for Lehman ALI, Inc.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52063-001\DOCS_LA:233557.3                17

1

## DECLARATION OF STEVEN J. KAHN

2      I, Steven J. Kahn, hereby declare as follows:

3      1.      I am duly admitted and authorized to practice before this Court, and I am of counsel

4      to the law firm of Pachulski Stang Ziehl & Jones LLP, resident in its Los Angeles office. I make this

5      declaration based upon my own personal knowledge, except as to those matters based upon

6      information and belief, and as to those matters I believe them to be true. If called to testify regarding

7      the contents of this declaration, I could and would competently testify thereto.

8      2.      Attached hereto as **Exhibits "A," "C"** and **"D,"** respectfully, are true and correct

9      copies of Claim Nos. 7, 19-1 and 19-2 filed by SunCal Management, LLC, including any and all

10     attachments thereto. I obtained these copies by downloading them from the claims docket

11     maintained for these cases.

12     3.      The Trustee and Lehman made several informal attempts to obtain the supporting

13     documentation for the Claims from SunCal Management. In response to our August 24, 2010 letter

14     to SunCal Management's counsel, Rob Goe (a true and correct copy of which is attached hereto as

15     **Exhibit "M"**), SunCal Management delivered documentation to support some of the ledger items

16     for its prepetition unsecured claim, not including Management Fees, a true and correct copy of

17     which is attached collectively as **Exhibit "B."** Promptly after delivery of these documents, our

18     offices sent a follow-up letter on September 8, 2010, requesting documents to support SunCal

19     Management's administrative claim in this case, with no response. Again on February 18, 2011, in

20     anticipation of the expiration of the "mediation stay" issued by the Court, we requested such backup

21     documentation, a true and correct copy of which is attached hereto as **Exhibit "N."** SunCal

22     Management has not delivered any further admissible responsive documents.

23     I declare under penalty of perjury pursuant to the laws of the United States and the State of

24     California that the above is true and correct to the best of my knowledge. Executed at Los Angeles,

25     California this 30 day of March, 2011.

26

27

28                                                     Steven J. Kahn

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# DECLARATION OF PHILIP CYBURT

I, Philip Cyburt hereby declare as follows:

1.      I am a Managing Director with Alvarez and Marsal Capital Real Estate ("A&M") and currently also serve as the Co-Head of LAMCO's Real Estate Group, which services assets for Lehman Brothers Holdings Inc. ("LBHI") and its affiliates, including Lehman ALI, Inc. ("ALI"), Lehman Commercial Paper Inc., OVC Holdings LLC and Northlake Holdings LLC. The facts stated herein are of my own personal knowledge, or were made known to me by my review of the books and records of LBHI, which are maintained in the ordinary course of business and reflect acts and occurrences at or near the time of the transactions referenced therein by those responsible to keep such records, and as to which I am a custodian.  If called upon as a witness as to any of the matters set forth herein, I could and would competently testify thereto.

2.      Attached to the Objection as **Exhibit "E"** is a true and correct copy of the Development Management Agreement (Delta Coves) between SunCal Delta Coves, LLC and SunCal Management LLC, delivered to ALI by Debtor, Delta Coves Venture, LLC or one of its affiliates.

3.      Attached to the Objection as **Exhibit "F"** thereto is a true and correct copy of the Operating Agreement of Delta Coves Master JV LLC, currently maintained by ALI.

4.      Attached to the Objection as **Exhibit "G"** is a true and correct copy of the Amended and Restated Limited Liability Company Agreement of Delta Coves Venture, LLC, the Debtor, currently maintained by ALI.

5.      Attached to the Objection as **Exhibit "J"** is a true and correct copy of the Consent and Subordination of Development Management Agreement entered into between SunCal Delta Coves, LLC, SunCal Management, LLC and Lehman ALI, Inc. on or about April 20, 2007.

6.      Attached to the Objection as **Exhibit "K"** is a true and correct copy of a Notice of Events of Default sent on behalf of Lehman ALI, Inc. to Delta Coves Venture, LLC in relation to the loan which is referenced in the Consent and Subordination of Development Management

1     Agreement. The defaults referenced therein, which first arose prior to the date of the Notice of

2     Events of Default, have not been cured nor has the underlying debt been paid in full.

3        7.      Attached to the Objection as **Exhibit "L"** is a true and correct copy of the Protective

4     Disbursement Agreement dated August 11, 2008 among Lehman ALI, Inc. and Delta Coves

5     Venture, LLC, Delta Coves Member, LLC and SCC Acquisitions, Inc.

6        I declare under penalty of perjury pursuant to the laws of the state of California and the

7     United States that the foregoing is true and correct to the best of my knowledge. Executed at New

8     York, New York this *14* day of March, 2011.

Philip Cyburt

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA