PAUL J. COUCHOT -- State Bar No. 131934
  pcouchot@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession (the "Voluntary
Debtors")

RONALD RUS - State Bar No. 67369
  rrus@rusmiliband.com
JOEL S. MILIBAND - State Bar No. 77438
  jmiliband@rusmiliband.com
**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

Attorneys for SunCal Management LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Palmdale Hills Property, LLC, and its<br>Related Debtors.<br><br>    Jointly Administered Debtors<br>    and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br>Jointly Administered With Case Nos. 8:08-bk-17209-ES;<br>8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES;<br>8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES;<br>8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES;<br>8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-17588-<br>ES |
| Affects:<br>☐ All Debtors<br>☐ Palmdale Hills Property, LLC,<br>☐ SunCal Beaumont Heights, LLC<br>☒ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☐ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br>☒ SunCal Communities III, LLC<br>*Caption Continued on Next Page* | Chapter 11 Cases<br><br>**THE MOVING VOLUNTARY DEBTORS' AND**<br>**SUNCAL MANAGEMENT LLC'S NOTICE OF**<br>**MOTION AND MOTION FOR ORDER**<br>**DISALLOWING CLAIMS OF LEHMAN ALI,**<br>**INC. AND LEHMAN COMMERCIAL PAPER,**<br>**INC. PURSUANT TO 11 U.S.C. § 502(d);**<br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES**<br><br>Date:   June 9, 2011<br>Time:   10:30 a.m.<br>Place:   Courtroom 5A |

1

*Caption Continued from Previous Page*

☒ SCC Communities LLC

2

☒ North Orange Del Rio Land, LLC

3

☒ Tesoro SF, LLC

☐ LBL-SunCal Oak Valley, LLC

4

☒ SunCal Heartland, LLC

☐ LBL-SunCal Northlake, LLC

5

☒ SunCal Marblehead, LLC

☐ SunCal Century City, LLC

6

☐ SunCal PSV, LLC

7

☒ Delta Coves Venture, LLC

☒ SunCal Torrance, LLC

8

☒ SunCal Oak Knoll, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUTPCY JUDGE,**
**AND PARTIES IN INTEREST:**

SunCal Communities I LLC ("SunCal I"), Acton Estates LLC ("Acton"), SCC/Palmdale LLC ("SCC/Palmdale"), SunCal Emerald Meadows LLC ("Emerald Meadows"), SunCal Bickford Ranch LLC ("Bickford Ranch"), SunCal Summit Valley LLC ("Summit Valley"), SCC Communities LLC ("SCC Communities"), North Orange Del Rio Land, LLC ("Del Rio"), and Tesoro SF LLC ("Tesoro") (the "Moving Voluntary Debtors"), and SunCal Management, LLC ("SunCal Management" and collectively with the Moving Voluntary Debtors, the "SunCal Parties") hereby move (the "Motion") the Court, in both the Moving Voluntary Debtors' cases and certain of the Trustee Debtors' cases[1], for an order granting the following relief:[2]

(A)     Disallowing, pursuant to 11 U.S.C. § 502(d), the following Proofs of Claim filed by Lehman ALI, Inc. ("Lehman ALI") and Lehman Commercial Paper, Inc. ("LCPI", and together with Lehman ALI, the "Lehman Entities"):

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 1 | SunCal I | LCPI | $343,221,391 | 1 |
| 2 | SunCal III | LCPI | $343,221,391 | 2 |
| 6 | Acton Estates | LCPI | $343,221,391 | 3 |
| 6 | Emerald Meadows | LCPI | $343,221,391 | 4 |
| 16 | Bickford Ranch | LCPI | $343,221,391 | 5 |
| 12 | Summit Valley | LCPI | $343,221,391 | 6 |
| 1 | SCC/Palmdale | LCPI | $119,664,305 | 7 |
| 12 | Oak Knoll | Lehman ALI | $158,141,365 | 8 |
| 4 | Torrance | Lehman ALI | $158,141,365 | 9 |
| 9 | Heartland | LCPI | $354,325,126 | 10 |
| 21 | Marblehead | LCPI | $354,325,126 | 11 |
| 9 | SCC Communities | Lehman ALI | $ 23,795,013 | 12 |
| 7 | Tesoro | Lehman ALI | $ 23,795,013 | 13 |
| 14 | Del Rio | Lehman ALI | $ 23,795,013 | 14 |
| 21 | Delta Coves | Lehman ALI | $ 206,023,142 | 15 |

---

[1] The Trustee Debtors are defined as LB/L-SunCal Oak Valley LLC ("Oak Valley"), LB/L-SunCal Northlake LLC ("Northlake"), SunCal Heartland LLC ("Heartland"), SunCal Marblehead LLC ("Marblehead"), SunCal Century City LLC ("Century City"), SunCal PSV LLC ("PSV"), Delta Coves Venture LLC ("Delta Coves"), SunCal Torrance LLC ("Torrance"), and SunCal Oak Knoll LLC ("Oak Knoll") (collectively "Trustee Debtors").

[2] The Voluntary Debtors are the moving parties with respect to the objections to claims in the Voluntary Debtors' cases, and SunCal Management is the moving party with respect to the objections to claims in the specified Trustee Debtors' cases in its capacity as a creditor in all of the Trustee Debtors' cases.

(B)    Disallowing, pursuant to 11 U.S.C. § 502(d), all administrative claims inclusive of future administrative claims asserted by the Lehman Entities against the below named Debtors, including but not limited to the following:

| Lehman Administrative Claims[3] | *Debtor* | *Claim Holder* | *Claim Amount* |
|---|---|---|---|
| | Delta Coves | Lehman ALI | $2,767,725 |
| | Heartland | Lehman ALI | $1,935,250 |
| | Marblehead | Lehman ALI | $5,634,270 |
| | Oak Knoll | Lehman ALI | $13,002,451 |
| | Torrance | Lehman ALI | $1,346,711 |

(the above referenced proofs of claim and administrative claims are collectively referred to as the "Lehman Claims"); and

(C)    Such further relief as the Court deems just and proper.

This Motion is based upon the Memorandum of Points and Authorities set forth hereinbelow, the Declaration of Bruce V. Cook (the "Cook Declaration"), the Declaration of Tom Rollins ("Rollins Declaration"), the Declaration of Dale Strickland ("Strickland Declaration"), and the SunCal Parties' Request for Judicial Notice (the "RJN") filed concurrently herewith, all pleadings, papers and records on file with the Court, and such other evidence, oral or documentary, as may be presented to the Court prior to or at the time of any hearing on the Motion.

**IF YOU DO NOT OPPOSE THE MOTION, YOU NEED TAKE NO FURTHER ACTION.  HOWEVER, IF YOU OPPOSE THE MOTION, OPPOSITIONS MUST BE FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION.  YOU MUST FILE YOUR OPPOSITION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 411 WEST FOURTH STREET, SUITE 2030, SANTA ANA, CALIFORNIA 92701.  YOU MUST ALSO SERVE A COPY OF YOUR OPPOSITION TO THE MOTION UPON COUNSELS FOR THE MOVING VOLUNTARY DEBTORS AND SUNCAL MANAGEMENT AT THE MAILING ADDRESSES INDICATED IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THIS MOTION. THE VOLUNTARY DEBTORS' COUNSEL WILL ACCEPT E-MAIL SERVE AT THE FOLLOWING ADDRESSES:  PCOUCHOT@WINTHROPCOUCHOT.COM, WITH A COPY**

---

[3] Figures are from Disclosure Statement with Respect to First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors [Docket No. 1876].

1  **TO PJ@WINTHROPCOUCHOT.COM.  ANY FAILURE TO TIMELY FILE AND SERVE AN**

2  **OPPOSITION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE**

3  **COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER**

4  **NOTICE.**

5  DATED:  April 26, 2011                **WINTHROP COUCHOT**
                                         **PROFESSIONAL CORPORATION**
6

7                                        By:____/s/ *Paul J. Couchot*_____
                                              Paul J. Couchot, Esq.
8                                             Peter W. Lianides, Esq.
                                              Payam Khodadadi, Esq.
9                                        General Insolvency Counsel for Administratively
                                         Consolidated Debtors-in-Possession ("Voluntary
10                                        Debtors")

11                                       **RUS MILIBAND & SMITH**
                                         **A PROFESSIONAL CORPORATION**
12

13
                                         By:__/s/ *Ronald Rus*_____
14                                            Ronald Rus, Esq.
                                              Joel S. Miliband, Esq.
15                                            Catherine Castaldi, Esq.
                                         Attorneys for SunCal Management, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF MOTION ................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................... 2
    A.    The SunCal/Lehman Joint Venture to Develop the Projects ............................ 2
    B.    The Lehman Adversary Action ................................................................... 3

III.  ACTON AND SUNCAL III NEVER EXECUTED ASSUMPTIONS OF
THE SUNCAL COMMUNITIES LOAN, AND THEREFORE THE
LEHMAN CLAIMS ARE UNENFORCEABLE ............................................. 4

IV.   THE LEHMAN CLAIMS MUST BE DISALLOWED AS THE LEHMAN
ENTITIES HAVE NOT DISGORGED THE AVOIDABLE TRANSFERS ............... 5
    A.    Bankruptcy Code Section 502(d) Provides for the Disallowance of
Claims Held by a Creditor who Fails to Disgorge an Avoidable
Transfer ................................................................................................... 5
        (1)    The SunCal Parties Need Only Establish a "Prima Facie
Case" of an Avoidable Transfer to Sustain an Objection
Under Section 502(d) ................................................................... 6
        (2)    The Court's Order Denying the Dismissal Motions
Establishes Prima Facie Avoidance Claims Against the
Lehman Entities for Purposes of Sustaining an Objection to
Claim Pursuant to Section 502(d) .................................................. 7
    B.    Section 502(d) Does Not Require That the Creditor Refuse to
Disgorge the Avoidable Transfer in Order to Sustain the Objection ................ 9
    C.    Section 502(d) Also Provides for the Disallowance of
Administrative Claims .............................................................................. 9
    D.    LCPI and LBHI Cannot Argue that the Relief Requested Pursuant
to 11 U.S.C. § 502(d) Violates Their Automatic Stay ................................... 9

V.    THE SUBSTANTIVE LAW OF FRAUDULENT CONVEYANCES AS
APPLIED TO THE FACTUAL EVIDENCE SUBMITTED HEREIN
PRESENTS FURTHER GROUNDS  FOR DISALLOWANCE OF THE
LEHMAN CLAIMS PURSUANT TO SECTION 502(d) ................................. 11
    A.    Fraudulent Transfer Statutes ................................................................... 11
    B.    The Evidence Supporting the Specific Fraudulent Transfers Compels
the Disallowance of the Lehman Claims Under Section 502(d) ...................... 13
        (1)    The SunCal Communities I Fraudulent Transfers ................................. 13
            (a)    Date Obligation Was Incurred ................................................. 13
            (b)    Reasonably Equivalent Value ................................................. 15
            (c)    The Debtors Were Rendered Insolvent ..................................... 17
        (2)    SCC Palmdale Fraudulent Transfers ................................................ 20
            (a)    Date Obligation Was Incurred ................................................. 13
            (b)    Reasonably Equivalent Value ................................................. 15
            (c)    The Debtor Was Rendered Insolvent ....................................... 17
        (3)    Oak Knoll/Torrance Fraudulent Transfers ......................................... 21

| | | (a) | Standing to Object to Claims in Trustee Debtor Cases | 21 |
| | | (b) | Date Obligation Was Incurred | 22 |
| | | (c) | Reasonably Equivalent Value | 23 |
| | | (d) | The Debtors Were Rendered Insolvent | 23 |
| | (4) | The Marblehead/Heartland Fraudulent Transfers | | 24 |
| | | (a) | Date Obligation Was Incurred | 25 |
| | | (b) | The Debtors Received Less than Reasonably Equivalent Value | 25 |
| | | (c) | The Debtors Were Rendered Insolvent | 25 |
| | (5) | Interim Loan Fraudulent Transfers | | 26 |
| | | (a) | Date Obligation Was Incurred | 27 |
| | | (b) | The Debtors Did Not Receive Reasonably Equivalent Value | 27 |
| | | (c) | The Debtors Were Rendered Insolvent | 28 |
| C. | | Unsecured Creditors Exist for the Purposes of Section 544(b) | | 29 |

VI.    THE AVOIDABLE PREFERENCE PROVIDE GROUNDS FOR DISALLOWANCE OF LEHMAN ALI'S CLAIM AGAINST DELTA COVES PURSUANT TO SECTION 502(d) .................................................. 31

VII.    CONCLUSION .......................................................................................... 36

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

1

## TABLE OF AUTHORITIES

2

**PAGE**

3

**CASES**

4

Barberan v. Nationpoint

5
    706 F.Supp.2d 408 (S.D.N.Y. 2010)..............................................................................14

6

Comm. of Unsecured Cred. v. Commodity Credit Corp.,
    143 B.R. 734 (9th Cir. BAP 1992)..................................................................................6

7

Coronet Capital Co. v. Spodek,

8
    265 A.D.2d 292, 696 N.Y.S.2d 191 (N.Y.A.D. 2 Dept. 1999)......................................14

9

Dye v. Brown (In re AFI Holding, Inc.),
    530 F.3d 832 (9th Cir.2008) ...........................................................................................7

10

FDIC v. Union Entities (In re Be-Mac Transp.),

11
    83 F.3d 1020 (8th Cir.1996) .........................................................................................22

12

In re 3dfx Interactive, Inc.,
    389 B.R. 842 (Bankr.N.D.Cal. 2008) ...........................................................................15

13

In re AFI Holding, Inc.,

14
    530 F.3d 832 F.3d 832 (9th Cir. 2008) .......................................................................6, 9

15

In re America West Airlines, Inc.,
    217 F.3d 1161 (9th Cir. 2000) ..................................................................................6, 9

16

In re AmeriServe Food Distribution, Inc.,

17
    315 B.R. 24 (Bankr.D.Del. 2004) ..............................................................................8, 9

18

In re Ames Dept. Stores, Inc.,
    582 F.3d 422 (2d Cir. 2009) ...........................................................................................8

19

In re Anderson,

20
    382 B.R. 496 (Bankr.D.Or. 2008)................................................................................22

21

In re Art Unlimited,
    356 B.R. 700 (Bankr.E.D.Wis. 2006) ..........................................................................16

22

In re AVN Corp.,

23
    248 B.R. 540 (Bankr.W.D.Tenn. 2000) .........................................................................7

24

In re Bob Grissett Golf Shoppes, Inc.,
    50 B.R. 598 (Bankr. E.D.Va. 1985)............................................................................6, 8

25

In re Bousa, Inc.,

26
    2005 WL 1176108, *4 (S.D.N.Y. 2005)......................................................................10

27

In re Bushey,
    210 B.R. 95 (6th Cir.BAP 1997)............................................................................29, 30

28

# TABLE OF AUTHORITIES

## (Continued)

PAGE

In re Discount Family Boats of Texas, Inc.,
    233 B.R. 365 (Bankr.E.D.Tex. 1999) ....................................................................7

In re Eerie World Entertainment, L.L.C.,
    2006 WL 1288578, *4 (Bankr.S.D.N.Y. 2006) ......................................................7

In re Enron Corp.,
    340 B.R. 180 (Bankr.S.D.N.Y. 2006) ....................................................................6

In re Fair Oaks, Ltd.,
    168 B.R. 397 (9th Cir. BAP 1994)..........................................................15, 17, 19

In re Financial News Network,
    158 B.R. 570 (S.D.N.Y. 1993)..............................................................................10

In re Furley's Transport, Inc.,
    272 B.R. 161 (Bankr.D.Md. 2001) .......................................................................32

In re Healthco Intern., Inc.,
    195 B.R. 971 (Bankr.D.Mass. 1996) ....................................................................30

In re Image Worldwide,
    139 F.3d at 581 .....................................................................................................28

In re Integra Realty Resources, Inc.,
    198 B.R. 352 (Bankr.D.Colo.1996) ......................................................................30

In re Interlink Home Health Care, Inc.,
    283 B.R. 429 (Bankr.N.D.Tex. 2002)...................................................................35

In re KF Dairies, Inc.,
    143 B.R. 734 (9th Cir.BAP 1992)...........................................................................6

In re Larsen,
    80 B.R. 784 (Bankr. E.D.Va. 1987) ........................................................................7

In re Maddalena,
    176 B.R. 551 (Bankr.C.D.Cal. 1995).....................................................................15

In re Marquis Products, Inc.,
    150 B.R. 487 (Bankr.D.Me.1993)..........................................................................16

In re Martushev,
    Slip Copy, 2010 WL 5256802 at *8 (Bankr. D. Mont. 2010) ..............................17

In re Meade,
    1999 WL 33496001, *1 (E.D.Pa. 1999) ...............................................................10

# TABLE OF AUTHORITIES

**(Continued)**

**PAGE**

In re Merrick,
175 B.R. 333 (9th Cir. BAP 1994)..................................................................10

In re MicroAge, Inc.
291 B.R. 503 (9th Cir. BAP 2002)..........................................................6, 8, 9

In re Mid Atlantic Fund, Inc.,
60 B.R. 604 (Bankr. S.D.N.Y. 1986) ...........................................................7

In re Morse Tool, Inc.,
148 B.R. 97 (Bankr.D.Mass. 1992) ............................................................30

In re Musicland Holding Corp.,
398 B.R. 761 (Bankr.S.D.N.Y. 2008) ........................................................30

In re Newtowne,
157 B.R. 374 (Bankr. S.D.Ohio 1993) .......................................................16

In re Oxford Royal Mushroom Products, Inc.,
59 B.R. 926 (Bankr.E.D.Pa. 1986) ..............................................................6

In re Pajaro Dunes Rental Agency, Inc.,
174 B.R. 557 (Bankr. N.D.Cal. 1994) .................................................15, 28

In re Prejean,
994 F.2d 706 (9th Cir. 1993) .....................................................................15

In re PRS Ins. Group,
331 B.R. 580 (Bankr.D.Del. 2005) .....................................................10, 11

In re Qmect, Inc.,
2007 WL 219942, *6 (Bankr.N.D.Cal. 2007)..............................................8

In re QMect, Inc.,
349 B.R. 620 (Bankr.N.D.Cal. 2006) .........................................................22

In re Rand Energy Co.,
259 B.R. 274 (Bankr.N.D.Tex. 2001).........................................................32

In re RCM Global Long Term Capital Appreciation Fund, Ltd.,
200 B.R. 514, n. 2 (Bankr.S.D.N.Y. 1996) ...............................................30

In Re Reichmann Petroleum Corp.,
364 B.R. 916 (Bankr. E.D. Tex. 2007) ......................................................35

In re Sierra Steel, Inc.,
96 B.R. 275 (9th Cir. BAP 1989)................................................................17

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

**TABLE OF AUTHORITIES**

**(Continued)**

**PAGE**

In re Smith,
    2002 Bankr.LEXIS 1893, at *18 (Bankr.S.D. Ind. April 24, 2002) .........................................7, 15

In re TriGem America Corp.,
    431 B.R. 855 (Bankr.C.D.Cal. 2010).........................................................................16

In re Triple Star Welding, Inc.
    324 B.R. 778 (9th Cir.BAP 2005)..........................................................................6, 9

In re Way,
    229 B.R. 11 (9th Cir. BAP 1998).............................................................................10

In re Wheatfield Business Park,
    308 B.R. 463 (9th Cir. BAP 2004)...........................................................................10

In re Wiersma,
    483 F.3d 933 (9th Cir. 2007) ................................................................................8

IRS v. Taylor (In re Taylor),
    132 F.3d 256 (5th Cir.1998)................................................................................22

Lawrence v. Steinford Holding B.V. ( In re Dominelli),
    820 F.2d 313 (9th Cir.1987) ...............................................................................22

Leibowitz v. Parkway Bank & Trust Co.,
    210 B.R. 298 (N.D.Ill.1997), aff'd, 139 F.3d 574 (7th Cir.1998).................................15

Matter of Eye Contact, Inc.,
    97 B.R. 990 (Bankr.W.D.Wis. 1989).........................................................................7

Matter of Hansen,
    1993 WL 176430, *2 (W.D.Tex. 1993).....................................................................9

National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.,
    2008 WL 450413, 27 (D.Conn. 2008) ...................................................................14

Old Person v. Brown,
    312 F.3d 1036 (9th Cir. 2002) ..........................................................................8, 11

Olick v. Parker & Parsley Petroleum Co.,
    145 F.3d 513 (2d Cir. 1998) ..............................................................................10

Oriska Ins. Co. v. Brown & Brown of Texas, Inc.,
    2005 WL 894912, *2 (N.D.N.Y. 2005) .....................................................................7

Siegel v. Federal Home Loan Mortg. Corp.,
    143 F.3d 525 (9th Cir. 1998)..............................................................................22

Vasile v. Dean Witter Reynolds Inc.,
    20 F.Supp.2d 465 (E.D.N.Y. 1998) .......................................................................10

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

1

## TABLE OF AUTHORITIES

2

### (Continued)

3

**PAGE**

4

**STATUTES**

5

11 U.S.C. § 101(2)(A)................................................................................................35

11 U.S.C. § 101(31)..................................................................................................35

6

11 U.S.C. § 101(31)(E)........................................................................................34, 35

11 U.S.C. § 101(32)..................................................................................................17

7

11 U.S.C. § 362........................................................................................................10

8

11 U.S.C. § 502(a)....................................................................................................22

11 U.S.C. § 502(b)(1).................................................................................................4

9

11 U.S.C. § 502(d)......................1, 2, 5, 6, 7, 8, 9, 11, 13, 19, 21, 22, 24, 26, 31, 35

11 U.S.C. § 510(d)......................................................................................................9

10

11 U.S.C. § 544..........................................................................................................1

11 U.S.C. § 544(b)..................................................................5, 11, 12, 15, 29, 30

11

11 U.S.C. § 546..........................................................................................................6

12

11 U.S.C. § 547................................................................................................1, 5, 35

11 U.S.C. § 547(b)..............................................................................................31, 32

13

11 U.S.C. § 548..................................................................................1, 5, 12, 14, 25

11 U.S.C. § 548(a)..............................................................................................12, 27

14

11 U.S.C. § 548(a)(1).......................................................................11, 12, 20, 23

11 U.S.C. § 550....................................................................................................1, 31

15

11 U.S.C. § 551....................................................................................................1, 21

16

11 U.S.C.A. § 558......................................................................................................4

UFCA § 5.................................................................................................................30

17

UFCA § 7.................................................................................................................30

Cal.Civ.Code § 3439.....................................................................................12, 15, 29

18

Cal.Civ.Code § 3439.02(a).......................................................................................17

19

Cal.Civ.Code § 3439.04.................................................................................12, 29, 30

Cal.Civ.Code § 3439.04(a).......................................................................................12

20

Cal.Civ.Code § 3439.05............................................................................................12

Com.Code § 9104(a).................................................................................................33

21

Com.Code § 9312(b)(1)............................................................................................33

Com.Code § 9314......................................................................................................33

22

**OTHER AUTHORITIES**

23

Advisory Committee Notes to Bankruptcy Rule 3007 ............................................22

24

**TREATISES**

25

Collier on Bankruptcy 15th Ed. Revised ¶ 502.05 (2010)..........................................6

26

5 Collier on Bankruptcy, 15th Ed. Revised ¶ 548.05 (2011)....................................16

27

28

# I.

## SUMMARY OF MOTION

By this Motion, the SunCal Parties seek an order disallowing Lehman Claims filed in the specified Debtors' cases pursuant to Section 502(d) of the Bankruptcy Code.  In particular, Lehman ALI and LCPI are recipients of certain fraudulent transfers and preferential transfers from the Debtors, which are avoidable pursuant to Sections 544, 547, 548, 550 and 551 of the Bankruptcy Code.  The avoidable transfers have not been returned by Lehman ALI and/or LCPI to the applicable Debtor's estate, despite the fact that the underlying avoidance causes of action have survived the Lehman Entities' and Fenway Capital's ("Fenway") motions to dismiss the Debtors' Third Amended Complaint against the Lehman Entities and Fenway (the "Dismissal Motions") and the same causes of action are currently set forth in the Debtors' Fourth Amended Complaint ("FAC") against the Lehman Entities (except LCPI) and against Fenway in Adv. No. 8:09-ap-01005-ES ("Lehman Adversary Action").

The Moving Voluntary Debtors move for the disallowance of the "Lehman Claims," set forth below, filed against their respective estates:

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 1 | SunCal I | LCPI | $343,221,391 | 1 |
| 2 | SunCal III | LCPI | $343,221,391 | 2 |
| 6 | Acton Estates | LCPI | $343,221,391 | 3 |
| 6 | Emerald Meadows | LCPI | $343,221,391 | 4 |
| 16 | Bickford Ranch | LCPI | $343,221,391 | 5 |
| 12 | Summit Valley | LCPI | $343,221,391 | 6 |
| 1 | SCC/Palmdale | LCPI | $119,664,305 | 7 |
| 9 | SCC Communities | Lehman ALI | $ 23,795,013 | 12 |
| 7 | Tesoro | Lehman ALI | $ 23,795,013 | 13 |
| 14 | Del Rio | Lehman ALI | $ 23,795,013 | 14 |

SunCal Management, as a creditor and party in interest in all of the Trustee Debtors' cases, moves for the disallowance of the Lehman Claims filed or asserted against the respective Trustee Debtors' estates as follows:

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 12 | Oak Knoll | Lehman ALI | $158,141,365 | 8 |
| 4 | Torrance | Lehman ALI | $158,141,365 | 9 |
| 9 | Heartland | Lehman ALI | $354,325,126 | 10 |
| 21 | Marblehead | Lehman ALI | $354,325,126 | 11 |
| 21 | Delta Coves | Lehman ALI | $   2,060,231 | 15 |

| **Lehman Administrative Claims[4]** | | | | |
|---|---|---|---|---|
| | Delta Coves | Lehman ALI | $2,767,725 | |
| | Heartland | Lehman ALI | $1,935,250 | |
| | Marblehead | Lehman ALI | $5,634,270 | |
| | Oak Knoll | Lehman ALI | $13,002,451 | |
| | Torrance | Lehman ALI | $1,346,711 | |

As demonstrated herein below, as a result of the Order denying the Dismissal Motions, as well as the evidence filed in support of this Motion, the SunCal Parties have made a *prima facie* showing of an avoidable transfer required for the purposes of Section 502(d). As a result, applicable law mandates the disallowance of the Lehman Claims.

Although the Lehman Entities contend that the FAC setting forth these causes of action are currently enjoined by the automatic stay of LCPI and Lehman Brothers Holding Inc. ("LBHI") by virtue of LCPI's purchase of several of the claims subject to this Motion  from Fenway  pursuant to the New York Bankruptcy Court's order approving the "compromise" with Fenway entered on May 13, 2010 ("Compromise Order"), as set forth below, the law in both the Second and Ninth Circuit are clear: LCPI's and LBHI's automatic stay do not apply to  objections to claims involving these same causes of action pursuant to Bankruptcy Code Section 502(d).

## II.

## FACTUAL BACKGROUND

### A.     The SunCal/Lehman Joint Venture to Develop the Projects.

The Debtors are twenty-six (26) affiliated entities (the "Debtors") formed to develop residential real estate development projects ("Projects") throughout California as part of a joint venture between SunCal and the Lehman Entities.  All of the Debtors are affiliates of SCC Acquisitions, Inc.

All of the Debtors were financed by a Lehman Entity.  Some of the Debtors directly own the Projects and others serve as holding companies, owning membership interests in the Debtors that own the Projects.  SunCal Management has contracts to manage all of the Debtors and their Projects.

---

[4] Figures are from Disclosure Statement with Respect to First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors [Docket No. 1876].

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

### B.    The Lehman Adversary Action.

On July 10, 2009, the Voluntary Debtors and the Trustee filed their Third Amended Complaint (the "TAC") in the Lehman Adversary Action (see RJN, Ex. 23) which *inter alia* added Fenway as a defendant, based upon the discovery of the facts relating to the pre-petition sale of certain loans to Fenway ("Sold Loans") pursuant to the Master Repurchase Agreement ("Repo") and the Court's Sale Order determining that the Repo was a true sale.

On September 30, 2009, the Lehman Entities and Fenway filed the Dismissal Motions contending that the relief requested by the Debtors was not available as a matter of law.  On April 12, 2010, the Court entered the *Order re Lehman Entities' Amended Motion to Dismiss the Third Amended Complaint* (the "Order Denying The Dismissal Motions") which *denied* the Lehman ALI's Motion to dismiss the fifth claim for relief (Avoid and Recover Fraudulent Transfers) as to claims brought by all of the relevant Debtors set forth herein, and the sixth claim for relief (Avoid and Recover Preferential Transfers) as to the claims brought by Delta Coves.  See RJN, Ex. 25.  As set forth in detail below in Section III(A)(1), a claim for relief which survives a motion to dismiss constitutes a *prima facie* showing of an avoidable transfer for the purposes of Section 502(d).

On March 26, 2010, the Debtors filed their Fourth Amended Complaint ("FAC"), which retained the causes of action upheld by the Court in the TAC.  See RJN, Ex. 24.  Specifically, the FAC asserted the fraudulent transfer claims (renumbered as the third claim for relief) and the preferential transfer claims (renumbered as the fourth claim for relief).  The FAC also deleted certain causes of action dismissed by the Court, none of which are relevant to this Motion.[5]

As previously stated, pursuant to the Compromise Order, Fenway transferred all of Sold Loans to LCPI, even those Sold Loans previously held by non-debtor Lehman Entities, and granted liens to

---

[5] LCPI was dismissed from the TAC without prejudice as a result of its automatic stay and the ruling of the Bankruptcy Appellate Panel, In re Palmdale Hills Property, LLC, 423 B.R. 655 (9th Cir. BAP 2009).  However, the dismissal of LCPI and its omission as a defendant in the FAC did not then-impact the prosecution of the Lehman Adversary Action, because the Sold Loans were then-owned by Fenway pursuant to this Court's *Order On Objections to and Motion for Order Striking Claims Filed by the Lehman Entities* and the *Findings of Fact and Conclusions of Law In Support of Order On Objections to Claims* entered on October 2, 2009 (the "Ownership Order"), and Fenway had been named as a separate defendant in the TAC, and not subject to or protected by LCPI's automatic stay.

LBHI.  Specifically, LCPI was the original holder of only two of the seven Sold Loans; the majority of

the loans were held by non-debtor Lehman Entities, as follows:

| Sold Loans | Original Claimant | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Cal Oak Valley Loan | OVC Holdings, LLC | $141,630,092 |
| Northlake Loan | Northlake Holdings, LLC | $123,654,777 |

LCPI and LBHI have now actively invoked their automatic stays as to several of the causes of

action in the Lehman Adversary Proceeding including those involving the Sold Loans.  As set forth

below, it is undisputed that an objection to claim, such as is set forth in the instant motion, is not

subject to the automatic stay.

**III.**

**ACTON AND SUNCAL III NEVER EXECUTED ASSUMPTIONS**

**OF THE SUNCAL COMMUNITIES LOAN, AND THEREFORE**

**THE LEHMAN CLAIMS ARE UNENFORCEABLE**

Section 502(b)(1) authorizes the bankruptcy court to determine whether a claim is valid and

enforceable under applicable state law:

> (b) … if such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim … and shall allow such claim in
> such amount, except to the extent that--
> (1) such claim is unenforceable against the debtor … under any … applicable
> law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(b)(1). See also 11 U.S.C.A. § 558 ("The estate shall have the benefit of any defense

available to the debtor as against any entity other than the estate, including statutes of limitation,

statutes of frauds, usury, and other personal defenses.")

Here, LCPI has failed to attach or establish the existence of any documentary evidence whereby

Acton incurred the liability set forth in Claim 6, and SunCal III incurred the liability set forth in

Claim 2.  Specifically, LCPI entered into a loan agreement dated November 17, 2005 ("SunCal

Communities I Loan") with SunCal I, as borrower.  Bickford Ranch, Summit Valley and Emerald

Meadows were not original borrower under the SunCal Communities I Loan, but rather subsequently

executed "Assumption Agreements" – which are attached to LCPI's proofs of claim - whereby they each purported to become additional grantors as to the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan.  See RJN, Exs. 4, 5 and 6.  However, LCPI's Claim 6 and Claim 2 fail to attach or establish the existence of an Assumption Agreement as to Acton or SunCal III.  See RJN, Exs. 2 and 3.

As to SunCal III, LCPI's Claim 2-2 contains voluminous attachments totaling 803 pages, however, conspicuously absent is any document executed by SunCal III incurring the liability set forth in such claim.  Similarly, as to Acton, LCPI's Claim 6-3 (against Acton) fails to attach an Assumption Agreement as to Acton.  Rather, Claim 6-3 attaches *Summit Valley's* Assumption Agreement which is also executed by Acton.  However, this Assumption Agreement does not in any way purport to establish liability on the part of Acton.  Simply put, there is no Assumption Agreement purporting to establish Acton's liability.  The signature pages in Claim 6-3 are consecutively numbered, such that LCPI cannot contend that there are simply missing pages.  The Debtors' business records do not reflect any Assumption Agreement executed as to either Acton or SunCal III.  See Cook Declaration ¶ 7.

In the absence of a valid executed agreement, LCPI's Claim 2 against SunCal III and Claim 6 against Acton must be disallowed.

## IV.

## THE LEHMAN CLAIMS MUST BE DISALLOWED AS THE LEHMAN ENTITIES HAVE NOT DISGORGED THE AVOIDABLE TRANSFERS

**A.**     **Bankruptcy Code Section 502(d) Provides for the Disallowance of Claims Held by a Creditor who Fails to Disgorge an Avoidable Transfer**

The Lehman Entities are transferees of transfers avoidable under Section 544(b), 547 and/or 548 of the Bankruptcy Code.  Section 502(d) compels the disallowance of *all of the entity's claims* if it has received and failed to return an avoidable transfer:

(d) Notwithstanding subsections (a) and (b) of this section, **the court shall disallow any claim of any entity** from which property is recoverable under section 542, 543, 550, or 553 of this title or **that is a transferee of a transfer avoidable under section** 522(f), 522(h), **544**, 545, **547, 548**, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

1   11 U.S.C. § 502(d) (emphasis added).

2       Section 502(d) compels the disallowance of the claims of creditors who have received and have

3   not disgorged the avoidable transfers.  In re KF Dairies, Inc., 143 B.R. 734, 735 (9th Cir.BAP 1992).

4   The language of section 502(d) is mandatory. The Court must condition allowance of any claim upon

5   the creditor's disgorging of the avoidable transfer.  In re MicroAge, Inc.  291 B.R. 503, 510 (9th Cir.

6   BAP 2002) *citing* In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D.Va. 1985).

7       "This provision is based on the policy that a creditor who fails to turn over to estate any money

8   or property it owes to the estate, will not be entitled to share in the proceeds of the estate."  In re

9   Oxford Royal Mushroom Products, Inc., 59 B.R. 926, 927 (Bankr.E.D.Pa. 1986).  Accordingly, Section

10   502(d) is not limited to the disallowance of the entity's claims which are directly related to the

11   avoidable transfer.  In re Enron Corp., 340 B.R. 180, 194 (Bankr.S.D.N.Y. 2006)[6] ("There is no

12   requirement that a claim subject to a section 502(d) disallowance be related to an avoidable transfer.")

13   Rather, "*any claim of any entity from which property is recoverable*" is subject to disallowance under

14   Section 502(d).  11 U.S.C. §502(d).

15       **(1)**      **The SunCal Parties Need Only Establish a "Prima Facie Case" of an**

16               **Avoidable Transfer to Sustain an Objection Under Section 502(d).**

17       It is black letter law that a *judgment* on an avoidance action is not necessary to invoke

18   Section 502(d).  Collier on Bankruptcy 15th Ed. Revised ¶ 502.05 (2010) ("The wording of

19   section 502(d) refers to transfers 'avoidable' under various sections and not to claims that have been

20   avoided.").  In fact, the Ninth Circuit has repeatedly held that even if the avoidance action itself is

21   barred under Section 546, and therefore an avoidance judgment itself is impossible, Section 502(d) may

22   still be invoked to disallow the claim.  See In re America West Airlines, Inc., 217 F.3d 1161, 1168 (9th

23   Cir. 2000) (Section 502(d) could be used to disallow claim even though action to avoid lien would be

24   time-barred); Comm. of Unsecured Cred. v. Commodity Credit Corp. (In re KF Dairies, Inc.), 143 B.R.

25   734, 736-37 (9th Cir. BAP 1992); In re Triple Star Welding, Inc.  324 B.R. 778, 794 (9th Cir.BAP

26   2005) *abrogated on other grounds by Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 851 (9th*

27

28

---

[6] *Vacated and remanded on other grounds*, 379 B.R. 425 (S.D.N.Y. 2007).

*Cir.2008).* Accordingly, it is clearly established in this Circuit that an objecting party need not obtain an avoidance judgment as a precondition to invoking Section 502(d).

Rather, the objecting party must merely make a *prima facie* showing of an avoidable transfer in order to object to a claim under Section 502(d). See <u>Matter of Eye Contact, Inc.</u>, 97 B.R. 990, 992 (Bankr.W.D.Wis. 1989) ("The trustee need not commence an avoidance action to bring section 502(d) into play. By making a *prima facie* showing that the transfer is voidable, he can assert the alleged preference defensively under section 502(d) to defeat a proof of claim."); <u>In re Discount Family Boats of Texas, Inc.</u>, 233 B.R. 365, 368 (Bankr.E.D.Tex. 1999) (avoidance action is unnecessary - § 502(d) can be invoke by claim objection and a prima facie showing of an avoidable transfer); <u>In re Larsen</u>, 80 B.R. 784, 791 (Bankr. E.D.Va. 1987); <u>In re Mid Atlantic Fund, Inc.</u>, 60 B.R. 604, 610 (Bankr. S.D.N.Y. 1986) ("The Trustee has made a *prima facie* showing that the assignment of the Fredebaugh Mortgage was a preferential transfer."). Accordingly, the SunCal Parties need only make a prima facie showing that the transfer is avoidable in order to sustain an objection to a claim under Section 502(d).

> **(2)** **<u>The Court's Order Denying the Dismissal Motions Establishes Prima Facie Avoidance Claims Against the Lehman Entities for Purposes of Sustaining an Objection to Claim Pursuant to Section 502(d).</u>**

Without the necessity of submitting evidence, a "prima facie case" is a mere pleading standard that is established by sufficient pleadings to survive a motion to dismiss for failure to state a claim. See <u>In re AVN Corp.</u>, 248 B.R. 540, 547 (Bankr.W.D.Tenn. 2000) ("the Court must determine that [claimant] has pled facts sufficient to establish a prima facie case"); <u>In re Eerie World Entertainment, L.L.C.</u>, 2006 WL 1288578, *4 (Bankr.S.D.N.Y. 2006) ("[D]oes Bergrin's proposed Complaint state a *prima facie* case against the Defendants, or would it be subject to dismissal for failure to state a claim?") (emphasis added) citing <u>In re Smith</u>, 2002 Bankr.LEXIS *1893, at* *18 (Bankr.S.D. Ind. April 24, 2002) (to establish a *prima facie* case, plaintiff is "required to plead facts with a reasonable degree of particularity which support, either directly or inferentially, *the eleme*nts of the claims asserted") (emphasis added); <u>Oriska Ins. Co. v. Brown & Brown of Texas, Inc.</u>, 2005 WL 894912, *2 (N.D.N.Y. 2005) ("plaintiff may make a prima facie showing solely on the allegations").

1    In In re Qmect, Inc., 2007 WL 219942, *6 (Bankr.N.D.Cal. 2007), the Court held that a mere

2    admission in proof of claim that the creditor "received $20,000 in payments on the Debtor's account,

3    presumably from the Debtor, during the preference period" was "sufficient to establish a prima facie

4    case for a preference claim").  See also In re Ames Dept. Stores, Inc., 582 F.3d 422, 425 (2d Cir. 2009)

5    (bankruptcy court disallowed claim under section 502(d) during pendency of underlying preference

6    action).

7    As set forth above, the Order Denying The Dismissal Motions *denied* the Dismissal Motions as

8    to the TAC's fifth claim for relief (Avoid and Recover Fraudulent Transfers) in its entirety, and the

9    sixth claim for relief (to avoid and recover preferential transfers) as to claims brought by Delta Coves

10    and Century City.  Accordingly, the Order Denying The Dismissal Motions establishes that the fifth

11    claim for relief (avoidance and recovery of fraudulent transfers) and sixth claim for relief (avoidance

12    and recovery of preferential transfers) survived the Lehman Entities' motion to dismiss (retained as the

13    third and fourth claims for relief in the FAC) and therefore properly pled their respective causes of

14    action.  As a matter of law, the SunCal Parties have established a "prima facie" case for the purposes of

15    Section 502(d).

16    Therefore, the disallowance of the Lehman Claims is mandatory. See In re MicroAge, Inc., 291

17    B.R. 503, 510 (9th Cir.BAP 2002) quoting In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 607

18    (Bankr.E.D.Va.1985) ("The language of section 502(d) is mandatory .... [T]he Court must condition

19    allowance of any claim for administrative rent upon the Landlord's disgorging of the unauthorized and

20    avoidable post-petition transfers."); In re AmeriServe Food Distribution, Inc., 315 B.R. 24,

21    35 (Bankr.D.Del. 2004) ("§ 502(d) is a mandatory provision").

22    The Court's Order Denying The Dismissal Motions was not appealed, and constitutes "law of

23    the case" which cannot be challenged here by the Lehman Entities.  See Old Person v. Brown, 312 F.3d

24    1036, 1039 (9th Cir. 2002) (under the law of the case doctrine, a court is precluded from reexamining

25    an issue previously decided by the same court in the same case); In re Wiersma, 483 F.3d 933, 941 (9th

26    Cir. 2007) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an

27    issue previously decided by the same court, or a higher court, in the same case.").

28

**B.**   **Section 502(d) Does Not Require That the Creditor Refuse to Disgorge the Avoidable Transfer in Order to Sustain the Objection**

Section 502(d) does not require the Court to determine that the creditor/transferee is unwilling or would otherwise refuse to return the avoidable transfer.  The mere fact that the creditor has not returned such transfer mandates the disallowance of the transferee's claim(s).  See In re America West Airlines, Inc. 217 F.3d 1161, 1165-1167 (9th Cir. 2000) (Section 510(d) does not require the court to find that transferee was liable to, but did not, turn over property of debtor).  Rather, the statute requires disallowance of the claim unless the transferee has in fact returned the transfer.  Id.  See also In re AmeriServe Food Distribution, Inc., 315 B.R. 24, 35 n. 2 (Bankr.D.Del. 2004).  In the instant case, the Lehman Entities have not disgorged the fraudulent and preferential transfers referenced herein, despite the fact that such transfers have been the subject of the pending Lehman Adversary Action for over two years.  Accordingly, the Lehman Claims must be disallowed.

**C.**   **Section 502(d) Also Provides for the Disallowance of Administrative Claims.**

In the Ninth Circuit, Section 502(d) applies equally to disallow both pre-petition claims and administrative claims.  See MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.), 291 B.R. 503, 514 (9th Cir. BAP 2002) ("§ 502(d) should be interpreted in a manner that is consistent with case law decided under the Bankruptcy Act and should be applied to administrative claims."); In re Triple Star Welding, Inc., 324 B.R. 778, 794 (9th Cir.BAP 2005) ("the bankruptcy court has no discretion to disregard the Bankruptcy Code's requirements … that Baker turn over any avoidable preference before he can be paid any administrative claim for fees. 11 U.S.C. § 502(d).")[7].  See also Matter of Hansen, 1993 WL 176430, *2 (W.D.Tex. 1993) (Bankruptcy Court disallowed the IRS' post-petition administrative tax claim pursuant to Section 502(d)).  Accordingly, Lehman ALI's administrative claims against the above referenced Debtors must also be disallowed pursuant to Section 502(d).

**D.**   **LCPI and LBHI Cannot Argue that the Relief Requested Pursuant to 11 U.S.C. § 502(d) Violates Their Automatic Stay**

While the parties have previously litigated the issue of whether LCPI's automatic stay is applicable to the equitable subordination cause of action in the Lehman Adversary Action, it is

---

[7] abrogated on other grounds In re AFI Holding, Inc., 530 F.3d 832, 530 F.3d 832 (9th Cir. 2008).

well established in both the Ninth Circuit and Second Circuit that a creditor's stay is not

applicable to a claim objection proceeding. Where there are two independent bankruptcy estates

in which one estate asserts a claim against the other, an objection to claim does not violate the

claimant's automatic stay.  See In re Wheatfield Business Park, 308 B.R. 463, 466 (9th Cir. BAP

2004); In re Merrick, 175 B.R. 333 (9th Cir. BAP 1994); In re Way, 229 B.R. 11 (9th Cir. BAP

1998); In re Financial News Network, 158 B.R. 570 (S.D.N.Y. 1993); In re Metiom, 301 B.R.

634, 638-639 (Bankr.S.D.N.Y. 2003); In re PRS Ins. Group, 331 B.R. 580, 587 (Bankr.D.Del.

2005); In re Meade, 1999 WL 33496001, *1 (E.D.Pa. 1999).

In Wheatfield Business Park, 308 B.R. 463 (9th Cir. BAP 2004), the Bankruptcy Appellate

Panel held that the creditor's automatic stay did not apply to an objection to its claim, as the creditor

was effectively acting in the capacity of a plaintiff, to whom the stay does not apply.  The subsequent

BAP decision in In re Palmdale Hills Property, LLC, 423 B.R. 655 (9th Cir.BAP 2009), cited the

Wheatfield Business Park and Financial News Network decisions with approval for the proposition that

claim objections do not violate the stay of a debtor-claimant.

The law in the Second Circuit is substantially identical.  In In re Financial News Network, 158

B.R. 570 (S.D.N.Y. 1993), a debtor (Kaypro) whose Chapter 11 case was pending in the Southern

District of California, filed a claim in Financial News Network's Chapter 11 case in the Southern

District of New York.  When Kaypro's claim was disallowed by the bankruptcy court in New York,

Kaypro appealed contending that this relief was barred by its automatic stay in California. The District

Court rejected this position, stating "both the language and purpose of **section 362** indicate that the

automatic stay in effect in the Bankruptcy Court for the Southern District of California did not preclude

the New York Bankruptcy Court from sustaining [NY debtor's] objection to [California debtor's] proof

of claim filed in New York Bankruptcy Court."  Financial News, 158 B.R. at 573.  See also Olick v.

Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998); Vasile v. Dean Witter Reynolds

Inc., 20 F.Supp.2d 465, 499 (E.D.N.Y. 1998) ("the primary claims raised by [debtor] are claims

asserted by, and not against, the debtor, and are therefore not subject to the stay and can be

immediately adjudicated."); In re Bousa, Inc., 2005 WL 1176108, *4 (S.D.N.Y. 2005) ("To the extent

1    that the debtor has itself brought the claim, the automatic stay provision does not preclude

2    adjudication.").

3        In fact, in the Southern District of New York, there is specific case law holding that a claim

4    objection based upon Section 502(d) is defensive, and does not violate the claimant's automatic stay.

5    In re Metiom, Inc., 301 B.R. 634, 638-639 (Bankr.S.D.N.Y. 2003) (§ 502(d) claim objection was

6    defensive and did not violate creditor's automatic stay); s*ee also* In re PRS Ins. Group, 331 B.R. 580,

7    584 (Bankr.D.Del. 2005) (applying *Metiom,* § 502(d) claim objection was defensive and did not violate

8    the creditor's stay).

9        Here, the within Motion does not seek any affirmative recovery against LCPI or LBHI.  Rather,

10    the SunCal Parties are merely acting defensively to disallow the Lehman Claims pursuant to Section

11    502(d) of the Bankruptcy Code.  Accordingly, LCPI and LBHI cannot possibly argue that their

12    automatic stays  apply to the relief requested in this Motion.

13                                    **V.**

14    **THE SUBSTANTIVE LAW OF FRAUDULENT CONVEYANCES AS APPLIED TO THE**

15    **FACTUAL EVIDENCE SUBMITTED HEREIN PRESENTS FURTHER GROUNDS  FOR**

16    **DISALLOWANCE OF THE LEHMAN CLAIMS PURSUANT TO SECTION 502(d)**

17        The Court's non-appealable Order Denying the Dismissal Motions constitutes "law of the case"

18    which cannot be challenged here by the Lehman Entities.  See Old Person v. Brown*,* 312 F.3d 1036,

19    1039 (9th Cir. 2002).  However, the overwhelming evidence submitted by the SunCal Parties in support

20    of this Motion, as applied to the applicable law under Sections 548(a) and 544(b), establishes that the

21    Lehman Entities have no viable defenses to the avoidable transfers alleged in the Lehman Adversary

22    Action.

23        A.    **Fraudulent Transfer Statutes.**

24    Section 548(a)(1) of the Bankruptcy Code provides in pertinent part:

25    (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, or
      any obligation … incurred by the debtor, that was made or incurred on or within 2
26    years before the date of the filing of the petition, if the debtor voluntarily or
      involuntarily -  …
27    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or
      obligation; and
28        (ii)(I) was insolvent on the date that such transfer was made or such obligation was
          incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

11 U.S.C. § 548(a)(1).

Similarly, by operation of 11 U.S.C. § 544(b), the California Civil Code Section 3439.04(a) is also applicable, which provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: …

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal.Civ.Code § 3439.04.

Further, California Civil Code Section 3439.05 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Cal.Civ.Code § 3439.05.

Accordingly, in summary, the fraudulent transfer statutes require the following material elements:

(a)    The transfer was made, or the obligation incurred, within 2 years prior to the petition date pursuant to 11 U.S.C. §548(a), or within 4 years prior to the petition date pursuant to 11 U.S.C. §544(b) and Cal.Civ.Code § 3439.

(b)    The Debtor did not receive reasonably equivalent value in exchange for the transfer or obligation.

(c)    The Debtor was rendered insolvent as a result of the transfer or obligation.

1    As set forth below, and in the Lehman Adversary Action, the Lehman Entities are transferees of

2    transfers avoidable under Section 544(b) and/or 548 of the Bankruptcy Code.  These avoidable

3    transfers

4    have not been returned to their respective estates, and therefore Bankruptcy Code Section 502(d)

5    compels the disallowance of Lehman Claims.  The avoidable transfers are set forth in the Lehman

6    Adversary Action, and described below.

7    **B.    The Evidence Supporting the Specific Fraudulent Transfers Compels the**

8    **Disallowance of the Lehman Claims Under Section 502(d).**

9    **(1)    The SunCal Communities I Fraudulent Transfers.**

10    On or about November 17, 2005, LCPI entered into that certain Credit Agreement with SunCal

11    I, as borrower ("SunCal Communities I Loan").  On March 30, 2009, LCPI filed identical proofs of

12    claim in the amount of $354,325,126 based upon the SunCal Communities I Loan against SunCal I

13    (Proof of Claim No. 1), SunCal III (Proof of Claim 2), Acton Estates (Proof of Claim 6), Emerald

14    Meadows (Proof of Claim 7), Bickford (Proof of Claim 16), and Summit Valley (Proof of Claim 12).

15    See RJN, Exs. 1 – 6.

16    Bickford Ranch, Summit Valley and Emerald Meadows were not original borrowers under the

17    SunCal Communities I Loan, but rather subsequently executed "Assumption Agreements" whereby

18    they each purported to become additional grantors under the Guarantee and Collateral Agreement

19    relating to the SunCal Communities I Loan.  See RJN, Ex. 4, 5, and 6.  Acton or SunCal III were also

20    not original borrowers under the SunCal Communities I Loan.  Neither LCPI's proofs of claim, nor the

21    Debtors' business records reflect any Assumption Agreement executed as to either Acton or SunCal III.

22    See RJN, Ex. 2 and 3, and the Cook Declaration, ¶ 7.

23    (a)    Date Obligation Was Incurred.  The first element of Section 548(a) requires that

24    the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of

25    the petition…"  All of the Chapter 11 petitions of these respective Debtors were filed on November 7,

26    2008.

27

28

| Case Name | Case Number | Petition Date |
|---|---|---|
| Summit Valley | 8:08-17227 ES | November 7, 2008 |
| Emerald Meadows | 8:08-17230 ES | November 7, 2008 |
| Bickford Ranch | 8:08-17231 ES | November 7, 2008 |

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

| Acton Estates | 8:08-17236 ES | November 7, 2008 |
| SunCal I | 8:08-17248 ES | November 7, 2008 |
| SunCal III | 8:08-17249 ES | November 7, 2008 |

Here, the following obligation/transfers were made within two years prior to the respective

petition dates.

- Summit Valley executed an "Assumption Agreement" dated November 17, 2006.[8]  A UCC

financing statement against Summit Valley was filed on December 12, 2006.  See RJN, Ex. 6.

- Emerald Meadows executed an "Assumption Agreement" dated July 17, 2007.  The deed of

trust against Emerald Meadows was recorded on July 19, 2007.  See RJN, Ex. 4.

- As set forth above Claim 6 filed against Acton fails to establish or attached an Assumption

Agreement as to Acton.  However, Claim 6-3 attaches a deed of trust against Acton recorded on

January 16, 2007.[9]  See RJN, Ex. 3.

 (The obligations and related transfers with respect to the SunCal Communities I Loan are collectively

referred to as the "SunCal Communities I Transfers"[10]).

These transfers as to Summit Valley, Emerald and Acton were clearly made within the two

years prior to the respective petition dates (November 7, 2008), thus the fraudulent transfer action is

properly brought under 11 U.S.C § 548.

SunCal Communities I and Bickford Ranch incurred the SunCal Communities I Loan

obligations within the 4 year of their respective petition dates.  Specifically, the SunCal Communities I

Loan was entered into by SunCal Communities I on November 17, 2005.  See RJN, Ex. 1.  Further,

Bickford executed an "Assumption Agreement" dated as of August 25, 2006, whereby Bickford Ranch

became an additional Grantor as to the Guarantee and Collateral Agreement.  See RJN, Ex. 5.

Accordingly, SunCal Communities I and Bickford Ranch incurred these obligations within the 4 year

---

[8] Summit Valley filed its voluntary Chapter 11 petition on November 7, 2008.  See Cook Declaration.

[9] Since there is no valid Assumption Agreement as to Acton, there is no valid obligation and thus the
deed of trust secured nothing.  See Barberan v. Nationpoint  706 F.Supp.2d 408, 424 (S.D.N.Y. 2010)
("A mortgage is merely security for a debt or other obligation and cannot exist independently of the
debt or obligation."); Coronet Capital Co. v. Spodek, 265 A.D.2d 292, 292, 696 N.Y.S.2d 191, 192
(N.Y.A.D. 2 Dept. 1999) ("It has long been held that a mortgage is not valid and enforceable unless
there is an underlying valid debt or obligation for which the mortgage is intended as security.");
National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C., 2008 WL 450413, 27 (D.Conn.
2008) ("A mortgage secured by a defective underlying obligation is itself invalid.").

[10] To the extent that an "obligation" was incurred as to either Acton or SunCal III, such obligations are
also included within the definition of the "SunCal Communities I Transfers".

1    reach back under California law for causes of action under Cal.Civ.Code § 3439.  As set forth in

2    subsection (C) below, there are qualifying creditors for the purposes of Section 544(b).

3              (b)    Reasonably Equivalent Value.  The second element for a fraudulent transaction

4    is that the Debtor received less than reasonably equivalent value.  Under the Bankruptcy Code, the

5    Ninth Circuit case law and the California statutes, "reasonably equivalent value" is to be determined

6    from the standpoint of the consideration received by the debtor and its creditors, as opposed to the

7    consideration provided by the defendant.  In re Prejean, 994 F.2d 706, 708 (9th Cir. 1993) (California

8    statute); In re Maddalena, 176 B.R. 551, 555 (Bankr.C.D.Cal. 1995) ("what constitutes reasonably

9    equivalent value must be determined from the standpoint of the benefit to the Debtors' creditors, not

10   from Defendant's perspective."); In re 3dfx Interactive, Inc., 389 B.R. 842, 863 (Bankr.N.D.Cal. 2008)

11   ("Because the policy behind fraudulent conveyance law is to preserve assets of the estate, reasonably

12   equivalent value is determined from the standpoint of the estate's creditors, it is not determined from

13   the defendant's perspective.").

14         In fact, a debtor does not receive reasonably equivalent value where the debtor encumbers its

15   assets with respect to a loan in which the loan proceeds are provided to an affiliated entity, including

16   parent and sister corporations.  See also In re Pajaro Dunes Rental Agency, Inc., 174 B.R. 557 (Bankr.

17   N.D.Cal. 1994) (debtor did not receive "reasonably equivalent value" for its obligation to the lender on

18   a $1 million promissory note, through delivery of $1 million in funds to debtor's corporate parent); In re

19   Fair Oaks, Ltd., 168 B.R. 397, 402 (9th Cir. BAP 1994) (debtor received less than reasonably

20   equivalent value in exchange for deed of trust encumbering its sole asset, where no consideration was

21   provided to debtor, but, rather, transfer was made for benefit of general partner's president and separate

22   entity in which president held interest); Smith v. American Founders Financial, Corp., 365 B.R. 647,

23   666-667(S.D.Tex. 2007) ("Generally, a transferor receives less than reasonably equivalent value when

24   it transfers property in exchange for consideration that passes to a third party.  … When the

25   consideration for a transfer passes to the parent corporation of a debtor-subsidiary that is making the

26   transfer, as in this case, the benefit to the debtor may be presumed to be nominal, absent proof of

27   specific benefit to the debtor itself."); Leibowitz v. Parkway Bank & Trust Co., 210 B.R. 298

28   (N.D.Ill.1997), aff'd, 139 F.3d 574 (7th Cir.1998) ("This shift of risk from the creditors of the debtor to

1   the creditors of the guarantor is exactly the situation that fraudulent transfer law seeks to avoid when

2   applied to guarantees. Thus, while [the debtor] received an indirect benefit from the transaction, it did

3   not receive reasonably equivalent value."); In re Marquis Products, Inc., 150 B.R. 487, 492

4   (Bankr.D.Me.1993) (debtor did not receive reasonably equivalent value for conveying the mortgage to

5   serve as collateral for the loan to the parent); In re Art Unlimited, 356 B.R. 700 (Bankr.E.D.Wis. 2006)

6   (debtor did not receive reasonably equivalent value in exchange for the sale of its assets, the proceeds

7   of which went to pay the debts of its principal, not to pay its own trade creditors); In re Newtowne, 157

8   B.R. 374, 379 (Bankr. S.D.Ohio 1993) (debtor's payment of affiliated company's debt, significantly

9   diminishing debtor's net worth, could be avoided as a fraudulent transfer).  See also In re TriGem

10   America Corp., 431 B.R. 855, 868 (Bankr.C.D.Cal. 2010) (debtor-subsidiary did not receive

11   "reasonably equivalent value" for transfer to parent company's lender); 5 *Collier on Bankruptcy*, 15th

12   Ed. Revised ¶ 548.05 (2011).

13       Here, the proceeds from the SunCal Communities I Loan Agreement were used in part to fund

14   the projects of Acton Estates, Beaumont, Johannson, Emerald Meadows, Bickford Ranch and Summit

15   Valley as well as other projects.  The funds advanced under the SunCal Communities I Loan

16   Agreement were such that the alleged Borrowers and Additional Grantors each received only a small

17   portion of the loan funds, or no funds at all:

| Alleged Borrower or Additional Grantors | SunCal Communities I Loan proceeds received |
|---|---|
| Acton | $  380,069 |
| Bickford Ranch | 174,570,287 |
| Emerald Meadows | 44,763,858 |
| Summit Valley | 9,925,373 |
| SunCal I | 0 |
| SunCal III | 0 |

The funds advanced under the SunCal Communities I Loan Agreement were also directed to

certain other entities who were neither alleged Borrowers nor Additional Grantors under the SunCal

Communities I Loan Agreement, as follows:

| Loan Proceed Recipient | SunCal Communities I Loan proceeds received |
|---|---|
| Beaumont | $ 42,030,925 |
| Johannson | 14,636,674 |

Based on the SunCal Communities I Loan, LCPI has filed identical proofs of claim for $343,221,391 against the estates of SunCal I, SunCal III, Acton, Bickford Ranch, Emerald Meadows, and Summit Valley.  See RJN, Exs. 1 - 6.  Consequently, as a result of the SunCal Communities I Transfers, each of the respective Debtors incurred net liabilities far in excess of their respective value received, thus, satisfying the second element of lack of reasonably equivalent value.

| Debtor | Original Obligation Amount | Loan Proceeds received | Excess Net Liability Incurred[11] | Lehman Claim Amounts |
|---|---|---|---|---|
| Acton | $ 395,313,713.37 | $ 380,069 | $ 394,933,644.37 | $ 343,221,391 |
| Bickford Ranch | 395,313,713.37 | 174,570,287 | 220,743,426.37 | 343,221,391 |
| Emerald Meadows | 395,313,713.37 | 44,763,858 | 350,549,855.37 | 343,221,391 |
| Summit Valley | 395,313,713.37 | 9,925,373 | 385,388,340.37 | 343,221,391 |
| SunCal I | 395,313,713.37 | $0 | 395,313,713.37 | 343,221,391 |

(c)    The Debtors Were Rendered Insolvent.  The third and final element is that the respective Debtors were rendered insolvent as a result of the transfers.  Under Bankruptcy Code § 101(32) and California Civil Code § 3439.02(a), the term insolvent means that the individual Debtor's debts are greater than the fair market value of such Debtor's property.  See also In re Sierra Steel, Inc., 96 B.R. 275, 277 (9th Cir. BAP 1989) ("[U]nder this "balance sheet" test a debtor is insolvent when its liabilities exceed its assets."); In re Fair Oaks, Ltd., 168 B.R. 397, 402 (9th Cir. BAP 1994) ("The question of insolvency is essentially whether the debtor's liabilities exceeded the debtor's assets for the period of time in question.").

A determination of insolvency can be made based on an appraisal of the debtors' properties, particularly where the debtor owns a single asset.  In re Fair Oaks, Ltd., 168 B.R. 397 at 402 (reversing summary judgment for defendant and remanding with instructions to enter summary judgment for trustee on fraudulent transfer claim); see also In re Martushev, Slip Copy, 2010 WL 5256802 at *8 (Bankr. D. Mont. 2010) (plaintiff satisfied initial burden of showing insolvency based on debtor's schedules and requests for admission, and was entitled to summary judgment on fraudulent transfer claim.).

---

[11] Original loan amount less loan proceeds received by each respective Debtor.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

As stated, LCPI made the "SunCal Communities I Loan" to SunCal I, SunCal III, SunCal Acton, Bickford Ranch, Emerald Meadows, and Summit Valley, in the maximum aggregate principal amount of approximately $395,313,713.37.  See RJN, Exs. 1 - 6.  However, at this time, the respective properties were appraised or valued at amounts substantially less than the joint and several $395 million debt created by the transaction and therefore rendered each of the Debtors' insolvent.  The Lehman Entities obtained appraisals of the various projects owned by the Debtors (the "Lehman Appraisals"), several of which appraisals are contemporaneous with the dates in which the loan obligations where incurred by the respective Debtors.  As to the Acton and Bickford Ranch projects, the Lehman Appraisals are as follows:

| Debtor | Lehman Appraisal Date | Lehman Appraised Value | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|
| Acton | 12/12/06 | $ 13,500,000 | 1/16/07[12] | $ 395,313,713.37 |
| Bickford Ranch | 9/29/06 | 237,500,000 | 8/25/06 | 395,313,713.37 |

The Lehman Appraisals of the Acton and Bickford projects are attached to the Strickland Declaration as exhibits 5 and 6.

As to the Emerald Meadows and Summit Valley projects, there are no contemporaneous appraisals, however, there are Lehman Appraisals both before and after the respective obligations were incurred as follows:

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraised Value[13] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraised Value[14] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Emerald Meadows | 9/16/06 | 64,500,000 | 12/7/08 | 12,000,000 | 7/17/07 | 395,313,713.37 |
| Summit Valley | 9/16/06 | 59,400,000 | 12/1/08 | 5,200,000 | 11/17/06 | 395,313,713.37 |

---

[12] As set forth above Claim 6 filed against Acton fails to establish or attached an Assumption Agreement as to Acton.  However, Claim 6-3 attaches a deed of trust against Acton recorded on January 16, 2007.

[13] The Pre-Loan Lehman Appraisals for the Emerald Meadows and Summit Valley projects are attached to the Strickland Declaration as exhibits 9 and 10.

[14] The Post-Loan appraisals for the Emerald Meadows and Summit Valley projects were filed by the Lehman Entities in the above entitled case, as docket nos. 64-10 and 66-1, and are attached to the request for judicial notice as Exhibits 20 and 21.

The Lehman Appraisals, both before and after the respective obligations were incurred, establish

the loan obligation substantially exceeded the market value of each of the respective Debtor's assets.

Further, the Moving Voluntary Debtors' discounted cash flow analysis establishes the project values set

forth above at the date the SunCal Communities I Loan obligations were incurred, as follows.

| Debtor | Valuation Date | Project Value | Date Obligation Incurred | Original Obligation |
|---|---|---|---|---|
| Emerald Meadows | 7/17/07 | 57,605,858 | 7/17/07 | 395,313,713.37 |
| Summit Valley | 11/17/06 | 52,992,651 | 11/17/06 | 395,313,713.37 |

See Strickland Declaration, ¶¶ 27 and 28.

Accordingly, as to each of the above referenced Debtors, the SunCal Communities I Loan

obligations substantially exceeded the fair market value of the Debtor's assets, rendering each such

Debtors insolvent as a result thereof.[15]  See Fair Oaks, 168 B.R. at 402-03 (where debtor's liabilities

were $1,400,000 million as of May 1991, when transfer occurred, and debtor's sole asset was appraised

at $1,220,000 as of June 1992, debtor was insolvent as a matter of law).  Consequently, these Debtors

were rendered insolvent as a result of the incurrence of the SunCal Communities I Loan obligations,

thus, satisfying the third element.

In summary, during the applicable time period, each of these Debtors became allegedly liable

for the full amount of the SunCal Communities I Loan Agreement in the maximum principal amount of

$395,313,713.37.  Each of the above Debtors' net liabilities (after receipt of loan proceeds, if any)

increased by between $220 million and $395 million as a result of the SunCal Communities I Transfers.

Each of the Debtors incurred liability on the loan which alone vastly exceeded the fair market value of

its project, rendering each respective debtor insolvent.   Thus, these Debtors have made a prima facie

showing that the SunCal Communities I Transfers were fraudulent transfers for the purposes of 11

U.S.C. § 502(d).

---

[15] SunCal I does not, and did not own any real property at the time of the SunCal Communities I
Transfers.  Pursuant to the Stipulation [docket no 1297], LCPI stipulated that the value of SunCal I's
equity membership interest in Acton, Summit, Bickford, Emerald, Beaumont and Johannson, shall be
"valued at $0.00."  See RJN, Ex. 16.  Accordingly, by incurring a $395,313,713.37 liability, SunCal
I's assets were unreasonably small in relation to the business or transaction, and was incurring debts
beyond its ability to pay as they became due.

**(2)**    **SCC Palmdale Fraudulent Transfers.**

On March 30, 2007, LCPI entered into that certain Mezzanine Credit Agreement dated March 30, 2007, with SCC Palmdale ("SCC Palmdale Loan"). On March 30, 2009, LCPI filed Proof of Claim No. 1-1 against SCC/Palmdale in the amount of $119,664,305.25, based upon the SCC Palmdale Loan. See RJN, Ex. 7. Although the SCC Palmdale Loan was made to SCC Palmdale, and although it was secured by SCC Palmdale's allowed interest in Palmdale Hills, the entire loan proceeds were used by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve SCC Palmdale or Palmdale Hills. *See* Cook Declaration, ¶ 11; Rollins Declaration, ¶ 6.

        (a)    Date Obligation Was Incurred. The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…" SCC/Palmdale filed its voluntary chapter 11 petition on November 7, 2008. The SCC Palmdale Loan was entered into on or about March 30, 2007. See RJN, Ex. 7. Thus, the obligation was incurred within two years of the petition date for the purposes of avoidance under Section 548(a)(1). The preceding obligations and related transfers are referred to herein as the "SCC Palmdale Transfers."

        (b)    Reasonably Equivalent Value. The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value. SCC Palmdale received no consideration in exchange for the SCC Palmdale Transfers. The entire loan proceeds were used by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve SCC Palmdale or Palmdale Hills. *See* Cook Declaration, ¶ 11; Rollins Declaration, ¶ 6. Thus, SCC Palmdale clearly did not receive "reasonably equivalent value".

        (c)    The Debtor Was Rendered Insolvent. The third and final element is that the respective debtor was rendered insolvent as a result of the transfers. SCC Palmdale does not own any project but rather holds the equity interests in Palmdale Hills. LCPI has repeatedly taken the position that SCC/Palmdale's equity interest in Palmdale Hills had no value. For example, on January 23, 2009, LCPI filed a motion for relief from stay as to SCC/Palmdale contending that the equity interest in Palmdale Hills had a value of "$0". See RJN, Ex. 22 (page 10, lines 9-10). Furthermore, the LCPI

previously stipulated [Docket No. 1297] that SCC Palmdale's equity interest in Palmdale Hills was valueless. See RJN, Ex. 16.  Specifically, on June 30, 2009, certain Voluntary Debtors filed the *Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C.§551* (the "Motion") (Docket No. 368) seeking an order *inter alia* valuing certain collateral, including the equity interest in Palmdale Hills, at zero dollars.  This "zero" valuation was based *inter alia* upon the Lehman Appraisal of the Ritter Ranch Project ($42,900,000) and Palmdale Hills' cash (approximately $24 million), which aggregate less than the amount of the alleged first priority deed of trust asserted by Lehman Commercial in the amount of $287,252,096 against the Ritter Ranch Project (LCPI's Claim No. 65 asserted against Palmdale Hills).  See RJN, Ex. 19.  On or about August 17, 2010, the Lehman Entities and certain Voluntary Debtors, including SCC Palmdale, filed a stipulation [Docket No. 1297] whereby LCPI stipulated that the pledge of SCC Palmdale's interests in Palmdale Hills (defined therein as the "SCC Palmdale Lien") "shall be valued at $0.00."  See RJN, Ex. 16. Accordingly, SCC Palmdale was rendered insolvent as a result of its incurrence a liability of $120 million as a result of the SCC Palmdale Transfer which clearly exceeded the value of its equity interest in Palmdale Hills.

SCC Palmdale has made a *prima facie* showing that the SCC/Palmdale Transfer was fraudulent transfers for the purposes of 11 U.S.C. § 502(d).  Therefore, Proof of Claim No. 1 filed against SCC Palmdale in the amount of $120 million should be disallowed pursuant to Bankruptcy Code Sections 502(d).

> **(3)     Oak Knoll/Torrance Fraudulent Transfers.**

On November 30, 2006, Lehman ALI entered into that certain Loan Agreement, dated as of November 30, 2006, by and among Torrance and Oak Knoll, as borrowers, and Lehman ALI, as agent and sole lender (the "Oak Knoll/Torrance Loan Agreement").  On March 30, 2009, Lehman ALI filed substantially identical claims, Proof of Claim No. 12 against Oak Knoll in the amount of $158,141,364.64, and Proof of Claim No. 4 against Torrance in the amount of $ 157,870,186.15, arising from the Oak Knoll/Torrance Loan Agreement.  See RJN, Exs. 8 and 9.

(a)    <u>Standing to Object to Claims in Trustee Debtor Cases</u>.  SunCal Management is the moving party on the objections to claims in the specified Trustee Debtors' cases in its capacity as a creditor in all of the Trustee Debtors' cases.  A party in interest has standing to objection to claims.  11 U.S.C. §502(a) ("a claim…is deemed allowed, unless a party in interest…objects").  *See also* Advisory Committee Notes to Bankruptcy Rule 3007 ("any party in interest may object to a claim").  The Ninth Circuit has similarly held that "any party in interest" can object to a claim pursuant to Section 502(a):

> Again, any party in interest can object. *See* 11 U.S.C. § 502(a). Although the trustee in Siegel's bankruptcy could have objected to Freddie Mac's proofs of claim, Siegel could have objected as well. *See Lawrence v. Steinford Holding B.V. ( In re Dominelli),* 820 F.2d 313, 316 (9th Cir.1987) (stating that under 11 U.S.C. § 502(a) a party in interest, including the trustee, can object to a proof of claim); *see also IRS v. Taylor (In re Taylor),* 132 F.3d 256, 261 (5th Cir.1998) ("Once a proof of claim is filed, the debt is considered allowed unless the debtor or another party in interest files an objection to the proof of claim."); *FDIC v. Union Entities (In re Be-Mac Transp.),* 83 F.3d 1020, 1025 (8th Cir.1996) ("In order to disallow the claim, the debtor or another party in interest must object and request a determination of the lien's validity.")

<u>Siegel v. Federal Home Loan Mortg. Corp</u>., 143 F.3d 525, 531 (9th Cir. 1998).  See also <u>In re Anderson</u>, 382 B.R. 496, 506 (Bankr.D.Or. 2008) ("To the extent [the plan] limits the parties who may file claims objections to the Debtors and the trustee, it is inappropriate as any party in interest has standing to object to claims. § 502(a).");  <u>In re QMect, Inc</u>., 349 B.R. 620, 625 (Bankr.N.D.Cal. 2006) ("A creditor or creditors' committee has standing independent of the trustee or debtor-in-possession to object to another creditor's claim as long as it has something to gain if it prevails.").

As set forth below, SunCal Management is a creditor and party in interest with respect to the Trustee Debtors' cases which are the subject of this Motion, and thus has standing under Section 502(d).

| Trustee Debtor | SunCal Management Unsecured Claim | SunCal Management Admin Claims |
|---|---|---|
| Delta Coves | 1,084,858.63 | 1,189,572.40 |
| Oak Valley | 1,163,688.91 | 502,979.78 |
| Heartland | 397,455.41 | 588,957.60 |
| Marblehead | 1,799,805.75 | 1,583,624.96 |
| Oak Knoll | 462,392.86 | 2,308,422.05 |
| Torrance | 148,578.54 | 97,749.00 |
| **Total** | **7,348,766.65** | **10,435,862.92** |

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

(b)    Date Obligation Was Incurred.  The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…"  An involuntary petition was filed against Torrance on November 14, 2008, and an involuntary petition against Oak Knoll was filed on November 19, 2008.  The Oak Knoll/Torrance Loan Agreement was entered into on November 30, 2006.  See RJN, Exs. 8 and 9.  (The preceding obligations and related transfers are referred to herein as the "Oak Knoll/ Torrance Transfers").  Thus the Oak Knoll/Torrance Transfers were made within two years of the petition date for the purposes of avoidance under Section 548(a)(1).

(c)    Reasonably Equivalent Value.  The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value.  Both Oak Knoll and Torrance were liable for the full amount of the Oak Knoll/Torrance Loan Agreement, in the original amount of $167 million.  The Oak Knoll/Torrance Loan Agreement was cross-collateralized by the Oak Knoll Project and the Del Amo Project.  See RJN, Exs. 8 and 9.  However, the loan proceeds received by Oak Knoll were only $103,575,426 and the loan proceeds received by Torrance were only $45,185,350.  See Rollins Declaration, ¶ 7.  In connection with the Oak Knoll/Torrance Loan, each of these Debtor's net liabilities (after receipt of loan proceeds, if any) increased by $63 million and $121 million, respectively, as a result of the Oak Knoll/Torrance Loan Transfers.

As the chart below illustrates, the transaction contemplated by the Oak Knoll/Torrance Loan Agreement also presents classic fraudulent conveyances.

| Debtor | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred[16] | Lehman Claim Amount |
|--------|---------------------------|------------------------|-----------------------------------|---------------------|
| Oak Knoll | 167,000,000.00 | 103,575,426 | 63,424,574.00 | 158,141,365 |
| Torrance | 167,000,000.00 | 45,185,350 | 121,814,650.00 | 158,141,365 |

(d)    The Debtors Were Rendered Insolvent.  The third and final element is that the respective Debtors were rendered insolvent as a result of the transfers.  Each of the Debtors incurred liability on the Oak Knoll/Torrance Loan Agreement which alone exceeded the fair market value of its respective project, rendering each Debtor insolvent.  As shown in the above chart, at this time, the

---

[16] Original loan amount less loan proceeds received by each respective Debtor.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

respective properties were appraised at amounts substantially less than the joint and several $167 million debt created by the transaction and therefore rendered each of these Debtors' insolvent. Specifically, the Oak Knoll project was appraised at a value of $127,800,000 as of January 14, 2006, and was later appraised at a value of $48,000,000 as of December 2008.  See Strickland Declaration, ex. 9.  The Torrance (Del Amo) project was appraised at $89,300,000 as of January 15, 2006, and later appraised at $25,000,000 as of November 2008.  See Strickland Declaration, ex. 10.

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraised Value[17] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraised Value[18] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Oak Knoll | 1/14/06 | 127,800,00 | 12/5/08 | 48,000,000 | 11/30/06 | 316,061,300 |
| Torrance | 1/15/06 | 89,300,000 | 11/28/08 | 25,000,000 | 11/30/06 | 316,061,300 |

Accordingly, the Lehman Appraisals, both before and after the respective obligations were incurred, establish the loan obligation substantially exceeded the market value of each of the respective Debtor's assets. Further, the Moving Voluntary Debtors' discounted cash flow analysis ¶establishes the project values set forth above at the date the SunCal Communities I Loan obligations were incurred, as follows.

| Debtor | Valuation Date | Project Value | Date Obligation Incurred | Original Obligation |
|---|---|---|---|---|
| Oak Knoll | 11/30/06 | $145,934,757 | 11/30/06 | $316,061,300 |
| Torrance | 11/30/06 | $82,988,446 | 11/30/06 | $316,061,300 |

See Strickland Declaration, ¶¶ 29 and 30.

Utilizing any of these valuations, these Debtors were rendered insolvent as a result of the incurrence of the loan obligation, thus, satisfying the third element.

---

[17] The Pre-Loan Lehman Appraisals for the Oak Knoll and Torrance (Del Amo) projects are attached to the Strickland Declaration as exhibits 12 and 13.

[18] The Post-Loan appraisals for the Oak Knoll and Torrance (Del Amo) Projects were filed by the Lehman Entities in the above entitled case, as docket no. 133, and are attached to the request for judicial notice as Exhibit 17.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

The SunCal Parties have made a *prima facie* showing that the Oak Knoll/Torrance Transfers were fraudulent transfers.  Therefore, Proof of Claim No. 12 against Oak Knoll and Proof of Claim No. 4 against Torrance should be disallowed pursuant to 11 U.S.C § 502(d).

### (4)    The Marblehead/Heartland Fraudulent Transfers.

On October 3, 2007, Lehman ALI entered into that certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, Marblehead, and Heartland, as borrowers, and Lehman ALI, as agent and sole lender (the "Marblehead/Heartland Loan Agreement").  On March 30, 2009, Lehman ALI filed identical Proof of Claim No. 9 against Heartland and Proof of Claim No. 21 against Marblehead in the amount of $354,325,126 based on the Marblehead/Heartland Loan Agreement. See RJN, Exs. 10 and 11.

(a)    Date Obligation Was Incurred.  The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…"  Involuntary petitions were filed against both Marblehead and Heartland on November 12, 2008.  The Marblehead/Heartland Loan Agreement was entered into on or about October 3, 2007.  See RJN, Exs. 10 and 11.  Thus the "transfer" or "obligation" was made within two years of the petition date for purposes of Section 548.  The preceding obligations and related transfers are referred to herein as the "Marblehead/Heartland Transfers."

(b)    The Debtors Received Less than Reasonably Equivalent Value.  The second element for a fraudulent transaction is that the Debtors received less than reasonably equivalent value. Heartland and Marblehead were liable for the full amount of the Marblehead/Heartland Loan.  The loan proceeds received by Marblehead were only $258,843,352 and the loan proceeds received by Heartland were only $49,594,848.  See Rollins Declaration, ¶ 8.  In connection with the Marblehead/Heartland Loan, each of the debtor's net liabilities (after receipt of loan proceeds, if any) increased by $57 million and $266 million, respectively, as a result of the Marblehead/Heartland Loan Transfers.

As the chart below illustrates, the transaction contemplated by the Marblehead/Heartland Loan Agreement also presents fraudulent conveyances.

| Debtor | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred[19] | Lehman Claim Amount |
|---|---|---|---|---|
| Marblehead | 316,061,300 | 258,843,352 | 57,217,948.00 | 354,325,126 |
| Heartland | 316,061,300 | 49,594,848 | 266,466,452.00 | 354,325,126 |

(c)    The Debtors Were Rendered Insolvent.  The third element is that the respective Debtors were rendered insolvent as a result of the transfers.  Each of the Debtors incurred liability on Marblehead/Heartland Loan Agreement which alone exceeded the fair market value of its respective project, rendering each Debtor insolvent.  As shown in the above chart, at this time, the respective properties were appraised at amounts substantially less than the joint and several $354,325,126 debt created by the transaction and therefore rendered each of these Debtors' insolvent.  Specifically, the Marblehead project was appraised at a value of $284,500,000 as of June 2007, and the Heartland project was appraised at $61,500,000.  See Strickland Declaration, exs. 11 and 12.

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraisal[20] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraisal[21] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Marblehead | 6/1/07 | 284,500,00 | 12/20/08 | 187,500,000 | 10/3/07 | 316,061,300 |
| Heartland | 6/1/07 | 37,400,000 | 12/7/08 | 7,900,000 | 10/3/07 | 316,061,300 |

Consequently, based upon the appraised value of the Marblehead and Heartland Projects, both before and after the incurrence of the loan, these Debtors were rendered insolvent by the incurrence of the loan obligation, satisfying the third element.

The SunCal Parties have made a *prima facie* showing that the Marblehead/Heartland Transfers were fraudulent transfers for the purposes of 11 U.S.C. § 502(d).  Therefore, Proof of Claim No. 21 asserted by Lehman ALI against Marblehead, and Proof of Secured Claim No. 9 asserted by Lehman ALI against Heartland, should be disallowed pursuant to Bankruptcy Code Section 502(d).

---

[19] Original loan amount less loan proceeds received by each respective Debtor.

[20] The Pre-Loan Lehman Appraisals for the Marblehead and Heartland projects are attached to the Strickland Declaration as exhibits 14 and 15.

[21] The Post-Loan appraisals for the Marblehead and Heartland Projects were filed by the Lehman Entities in the above entitled case, as docket no. 133, and are attached to the request for judicial notice as Exhibit 17.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

**(5)**    **Interim Loan Fraudulent Transfers.**

On October 31, 2007, Lehman ALI entered into that certain Loan Agreement, dated as of October 31, 2007, by and between SCC Acquisitions LLC, as borrower and Lehman ALI, as lender (the "Interim Loan Agreement"). Lehman ALI has filed identical Proof of Claim No. 9 against SCC Communities, Proof of Claim No. 7 against Tesoro, and Proof of Claim No. 14 against Del Rio in the amount of $23,795,013 based upon the Interim Loan Agreement. See RJN, Exs. 12, 13 and 14.

None of the Debtors was a "borrower" under the Interim Loan Agreement. Rather, as set forth in Lehman ALI's respective proofs of claim, the liability against SCC Communities, Tesoro and Del Rio arise because each of these Debtors "is a guarantor under that certain Subsidiary Guaranty dated as of October 31, 2007, as amended and/or supplemented." Id.

(a)    <u>Date Obligation Was Incurred</u>. The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…" Here, the three Debtors – SCC Communities, Tesoro and Del Rio – each filed voluntary Chapter 11 petition on November 19, 2008. The Interim Loan Agreement and Subsidiary Guaranties are dated as of October 31, 2007. See RJN, Exs. 12, 13 and 14. (The preceding obligations and related transfers are referred to herein as the "Interim Loan Transfers") Thus the Interim Loan Transfers were within two years of the petition date for the purposes of 11 U.S.C. § 548(a).

(b)    <u>The Debtors Did Not Receive Reasonably Equivalent Value</u>. The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value. The Interim Loan Agreement was entered into with the Voluntary Debtors' parent, SCC Acquisitions LLC, *not* with SCC Communities, Tesoro or Del Rio. Rather SCC Communities, Tesoro or Del Rio each executed a Subsidiary Guaranty with Lehman ALI guaranteeing the same. See RJN, Exs. 12, 13 and 14.[22] Of the $20 million in proceeds from the Interim Loan Agreement paid to the parent entity, SCC Acquisitions LLC, only $78,000—less than one half of one percent of the total—was used to fund SCC Communities, SunCal Tesoro or SunCal Del Rio or their properties, as follows:

---

[22] The attachment to each proof of claim states: "The liability against the Debtor arises because the Debtor is a guarantor under that certain Subsidiary Guaranty, dated as of October 31, 2007, as amended and/or supplemented."

| Debtor | Amount of Loan Proceeds Received | Percentage of Loan Proceeds |
|---|---|---|
| Del Rio | 50,000.00 | 0.25 |
| SCC Communities | 12,441.85 | 0.06 |
| Tesoro | 15,468.38 | 0.08 |
| **TOTAL** | **77,910.23** | **0.39** |

Rollins Declaration, ¶ 9, Exh. 1.  At Lehman ALI's direction and insistence, the remainder of the proceeds were used to pay down debts of parties other than these three Debtors, primarily with regard to projects on which Lehman ALI or its affiliates were lenders.  Cook Declaration, ¶ 20; Rollins Declaration, ¶ 9, Exh. 1.  "This shift of risk from the creditors of the debtor to the creditors of the guarantor is exactly the situation that fraudulent transfer law seeks to avoid when applied to guarantees."  In re Image Worldwide, 139 F.3d at 581-82.

In In re Pajaro Dunes Rental Agency, Inc., 174 B.R. 557 (Bankr.N.D.Cal. 1994), the debtor brought an adversary proceeding to avoid alleged fraudulent transfers.  The court held that the debtor did not receive "reasonably equivalent value" for its obligation to the lender on a $1 million promissory note, through delivery of $1 million in funds to debtor's corporate parent.  174 B.R. at 562, 579.  The court found that the money was taken by the corporate parent for the debtor subsidiary, and the creditor had no reason to believe that the parent would not transfer the funds for the benefit of the debtor subsidiary's real property assets, for which the loan was provided.  Id. at 580-81.  Here, the case for avoidance is even more compelling:  Lehman ALI specifically directed that the monies were *not* to be used by the subject Debtors or for their assets.  Rather, Lehman ALI made the Interim Loan contingent on paying off other Lehman ALI debt not related to these Debtors' assets, while using these Debtors' assets for security for such debts and diminishing their value.

(c)      The Debtors Were Rendered Insolvent.  The third element is that the respective Debtors were rendered insolvent as a result of the transfers.  Each of these Debtors incurred a $20 million obligation when they guaranteed the Interim Loan, and put up their respective properties as security for that loan, in or about November 2007.  (That obligation has since allegedly grown to at least $23,795,013 based on the proofs of claim filed by Lehman ALI)  This $20 million-plus liability far exceeds the value of these Debtors' assets at the time the Interim Loan Transfers occurred.

The value of the Tesoro Project was estimated to be between $8.6 million and $10.8 million at or about the time of the Interim Loan Transfers.  Strickland Declaration, ¶ 6, Ex. 2.  The value of the Joshua Ridge Project (the sole asset of SCC Communities) was estimated to be $2.3 million at or about the time of the Interim Loan Transfers.  Strickland Declaration, ¶ 7, Ex. 3.  The value of the assets of Del Rio—the future right to receive anticipated net CFD bond proceeds—was estimated to be $14.2 million in December 2007, at or about the time of the Interim Loan Transfers.  Strickland Declaration, ¶ 8, Ex. 4.

| Debtor | Asset Value | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred | Lehman Claim Amount |
|---|---|---|---|---|---|
| SCC Communities | 2,300,000 | 20,000,000 | 12,441.85 | 19,987,558.15 | 23,795,013 |
| Tesoro | 8,600,000 to 10,800,000 | 20,000,000 | 15,468.38 | 19,984,531.62 | 23,795,013 |
| Del Rio | 14,200,000 | 20,000,000 | 50,000.00 | 19,950,000.00 | 23,795,013 |

Thus, SCC Communities, Tesoro and Del Rio were each rendered insolvent by the Transfers as a matter of law.  Accordingly, these Debtors have made a *prima facie* showing that the Interim Loan Transfers were fraudulent transfers.  Therefore, Proof of Claim No. 9 against SCC Communities, Proof of Claim No. 7 against Tesoro, and Proof of Claim No. 14 against Del Rio should be disallowed pursuant to Bankruptcy Code Sections 502(d).

**C.      Unsecured Creditors Exist for the Purposes of Section 544(b).**

As to the fraudulent transaction claims brought under California Civil Code Section 3439, via 11 U.S.C. § 544(b), the transfer must be avoidable "by a creditor holding an unsecured claim."  As set forth below, only two of the subject loan obligations were made more than two years prior to the petition date, and thus only these two obligations require the invocation of the 4 year reach back under California law for causes of action under Cal.Civ.Code § 3439.  These two obligations are as follows:

- SunCal Communities I executed the SunCal Communities I Loan dated November 17, 2005.

- Bickford executed an "Assumption Agreement" dated as of August 25, 2006, whereby Bickford became an additional Grantor as to the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan.

Here, qualifying creditors exist as to both SunCal I and Bickford.  California Civil Code Section 3439.04 provides that a transfer is fraudulent "as to a creditor, whether the creditor's claim

1   arose before or *after* the transfer was made or the obligation was incurred…"  Accordingly, any future

2   creditor that is a claim arising after transfer, who holds an allowed claim as of the petition date, is also

3   a qualifying creditor for the purposes of Section 544(b).  As recognized by the Bankruptcy Appellate

4   Panel in In re Bushey, 210 B.R. 95, 104 (6th Cir.BAP 1997), any allowed unsecured claim in the case

5   will satisfy the requirement for a "future creditor."

6
7
8

> "Future" creditor is not separately defined by [state] law. A common sense definition is an entity with a claim arising after the challenged transfer, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.  Under [state law], a bankruptcy trustee can step into the shoes of any creditor that holds an allowable unsecured claim that arose after the challenged transfer. Rare indeed will be the bankruptcy case in which a trustee cannot identify such a creditor.

9   In re Bushey, 210 B.R. 95, 104 (6th Cir.BAP 1997).  See also In re Integra Realty Resources, Inc., 198

10  B.R. 352, 363 (Bankr.D.Colo.1996) ("the plain language of the statute which allows the post-transfer

11  creditors to be protected from the conveyance."); In re Musicland Holding Corp., 398 B.R. 761, 778

12  (Bankr.S.D.N.Y. 2008) ("future creditors may invoke [state avoidance statute], and Best Buy probably

13  assumed that creditors holding allowable claims against the Musicland estate also qualified as future

14  creditors under [state avoidance statute]."); In re RCM Global Long Term Capital Appreciation Fund,

15  Ltd., 200 B.R. 514, 523 n. 2 (Bankr.S.D.N.Y. 1996) ("even under section 544(b) that there is no

16  requirement that a present creditor have been in existence at the time of the transfer"); In re Healthco

17  Intern., Inc., 195 B.R. 971, 980 (Bankr.D.Mass. 1996) ("future creditors have avoidance rights if a

18  transaction without adequate consideration leaves the debtor with unreasonably small capital"); In re

19  Morse Tool, Inc., 148 B.R. 97, 131 (Bankr.D.Mass. 1992) ("UFCA §§ 5 and 7, which extend standing

20  to 'future creditors'")

21         Accordingly, to support an action under Civil Code 3439.04, via 11 U.S.C. §544(b), the

22  qualifying creditor does not need to have been a "creditor" at the time of the transfer.  Any unsecured

23  creditor in SunCal I's and Bickford's case is a "creditor's claim [that] arose … *after* the transfer was

24  made or the obligation was incurred", and thus satisfies the requirements of a "qualifying creditor" for

25  purposes of Section 544(b).  Accordingly, while the SunCal Parties have specifically identified

26  qualifying creditors in existence at the time of the transfer was made as to Bickford, below, even this

27  task is unnecessary.  Any of the numerous unsecured claims set forth in the Debtors' schedules are

28  *qualifying creditors* for the purposes of Section 544(b).

1       Accordingly, it is not necessary to have a qualifying creditor who was in existence at the time

2  the transfer was made, or the obligation was incurred.  However, even assuming arguendo that a pre-

3  existing creditor is required, there are such qualifying creditors holding unsecured claims as against

4  Bickford at the time the transfer was made and the obligation was incurred.  Specifically, qualifying

5  creditors include, but are not limited to the following:

-32-

| Qualifying Creditors: |
|---|
| Cook's Portable Toilets & Septic, |
| Ecorp Consulting Inc., |
| Fehr & Peers Associates Inc., |
| Heller Ehrman White & McAuliffe |
| Independent Construction Co. |
| Kiewit Pacific Co. |
| Land Architecture Inc. |
| Valley Utility Services |
| Restoration Resources |
| White Cap Construction Supply Inc. |
| Far West Construction Inc. |
| CH2M Hill Inc. |
| ARB Inc. |
| SunCal Management LLC |

*See* Rollins Declaration, ¶ 12. Accordingly, there are qualifying creditors for the purposes of §544(b).

## VI.

### THE AVOIDABLE PREFERENCE PROVIDE GROUNDS FOR DISALLOWANCE OF LEHMAN ALI'S CLAIM AGAINST DELTA COVES PURSUANT TO SECTION 502(d)

As set forth above, Section 502(d) provides for the disallowance of any claim of an entity from which property is recoverable under section 550 or that is a transferee of a transfer avoidable under section 547, unless such entity or transferee has paid the amount, or turned over any such property.

Again, the Order Denying the Dismissal Motion establishes that the sixth claim for relief in the TAC (now the fourth claim for relief in the FAC) properly pled a claim for relief for the avoidance and recovery of preferential transfers. Thus, as a matter of law, the Debtors have established a "prima facie" case for the purposes of Section 502(d).

Furthermore, in support of this Motion, the SunCal Parties have submitted evidence in the form of supporting declarations that Lehman ALI has received transfers from Delta Coves, which are avoidable pursuant to Section 547(b). Section 547(b) of the Bankruptcy Code provides for the avoidance of preferential transfers as follows:

> (b) …the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;

-33-

(4) made-- … (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Here, within a year prior to the petition date (between November 2007 and May 2008), Delta Coves made pre-petition payments in the amount of $6,195,440.46 to Lehman ALI (the "Delta Coves Preferential Transfers"). These Delta Coves Preferential Transfers constitute avoidable transfers for the reasons set forth below:

(1) The transfers of $6,195,440.46 were property of the Debtor, Delta Coves, and thus constituted an interest of the Debtor in property. See Rollins Declaration, ¶ 10.

(2) The $6,195,440.46 transfer was to and for the benefit of the creditor, Lehman ALI. The Delta Coves Preferential Transfers were made at times at which Lehman ALI made demands for payment and were not paid according to any contract schedule. See Rollins Declaration, ¶ 11.

(3) Pursuant to Lehman ALI's Proof of Claim No. 21, the Delta Coves Loan Agreement is dated as of April 20, 2007, and thus constitutes an antecedent debt. See Proof of Claim No. 21 attached to RJN as Exhibit 15.

(4) The Delta Coves Loan was vastly undersecured and thus the transfer enabled Lehman ALI to receive more than if the case were under chapter 7 and the transfer had not been made. See In re Furley's Transport, Inc., 272 B.R. 161, 173 (Bankr.D.Md. 2001) ("As a matter of general principle, unless unsecured creditors will receive a one hundred percent distribution, an undersecured creditor who receives a payment during the preference period will receive more than it would have received under a Chapter 7 liquidation if the payment does not release a proportional amount of secured collateral."); In re Rand Energy Co., 259 B.R. 274, 278 (Bankr.N.D.Tex. 2001) ("an undersecured creditor who receives payments is obtaining more than it would receive in a Chapter 7 liquidation to the extent that the payments reduced the unsecured deficiency").

1       Here, Lehman ALI asserts that the Delta Coves Project had a fair market value of $25,200,000

2   as of January 9, 2009.[23]   Delta Coves was insolvent at and around the time of the Delta Coves

3   Transfers.  Lehman ALI filed a Proof of a Secured Claim in the amount of $206,023,142 (Proof of

4   Secured Claim No. 21).  Accordingly, by Lehman ALI's own admission, the claim is vastly

5   undersecured.  Moreover, Lehman ALI did not purport to release a proportional amount of secured

6   collateral in exchange for the Delta Coves Preferential Transfers.

7       Further, Lehman ALI's Proof of Claim 21-2 neither alleges nor attaches a "control agreement"

8   over the account from which the Delta Coves Preferential Transfers were made, and thus Lehman ALI

9   lacks a perfected security interest as to such funds.  See Com.Code §§ 9104(a), 9312(b)(1), and 9314.

10      Accordingly, Lehman ALI received more than if the case was under chapter 7 and the transfers

11  had not been made.

12      (5)    Further, Lehman ALI's appraisal and Proof of a Secured Claim effectively concede that

13  Delta Coves was insolvent.  Pursuant to Lehman ALI's Proof of Secured Claim No. 21, the remaining

14  principal balance as of the petition date was $186,437, 641.26 (inclusive of interest, services fees, late

15  charge and exit fees, Lehman ALI asserts a total claim of $206,023.142).  Accordingly, even the

16  principal balance of the Delta Coves Loan Agreement alone vastly exceeds Lehman ALI's appraised

17  value of the Delta Coves' project at $25,200,000.

18      (6)    Lehman ALI is an insider of Delta Coves, and thus preferential transfers include

19  transfers made within a year prior to the petition date.  Here, Delta Coves made pre-petition payments

20  in the amount of $6,229,328.88 to Lehman ALI, an affiliate of a Lehman entity holding a fifty percent

21  interest in Delta Coves within the year preceding Delta Cove's involuntary proceeding (between

22  November 2007 and May 2008).

23      On March 8, 2010, at the hearing resulting in the Order Denying The Dismissal Motions, this

24  Court found and stated on the record that Lehman ALI was a "statutory insider" as to the respective

25  Trustee Debtors.  The Court stated:

26

27  ─────────────────────

28  [23] On February 25, 2009, Lehman ALI submitted various appraisals, including an appraisal of the Delta
    Coves Project as of January 9, 2009, attached as exhibit "I" to Docket No. 133.  See RJN, ex. "18".
    The Delta Coves Preferential Transfers were made between November 2007 and May 2008.

As to, in particular, the "statutory insider" status of Lehman ALI, OVC and Northlake Holdings, I did find persuasive the argument of the plaintiffs that these are "statutory insiders" within the meaning of Section 101(31)(E) as affiliates.

Specifically, the Court agreed with the Debtors' analysis as follows: Delta Coves' parent company has a SunCal affiliated manager member ("SunCal Manager") and a Lehman affiliated member ("Lehman Member").

| Debtor | Parent Company | SunCal Manager | Lehman Member | Lender |
|---|---|---|---|---|
| Delta Coves | Delta Coves Master JV LLC | SunCal Delta Coves LLC | LB/L–DUC III Master LLC | Lehman ALI |

LBHI indirectly owns the Lehman Member (LB/L–DUC III Master LLC) and also wholly owns Lehman ALI. The ownership can be represented visually as follows:



The statutory definition of an "insider" includes both an "affiliate" and an "insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. §101(31)(E). The term "affiliate" includes an "entity that directly or *indirectly* owns, controls, or holds with power to vote, 20 percent or more of the

outstanding voting securities of the debtor"  11 U.S.C. § 101(2)(A).  Since the definition includes "indirect" ownership, the term "affiliate" includes *a parent of a parent* of the debtor.  See In re Interlink Home Health Care, Inc., 283 B.R. 429, 439 (Bankr.N.D.Tex. 2002) ("it is certain that the term 'affiliate' was intended to be broad enough to include a parent of a parent").

It is a matter of simple logic, LBHI is an affiliate of Delta Coves because it indirectly owns or controls 20% or more of Delta Coves via its ownership of the LB Member, LB/L–DUC III Master LLC.  As stated above, LBHI indirectly owns the LB Member (LB/L–DUC III Master LLC), which in turn has an approximately 50% ownership interest in Delta Coves Master JV LLC  and therefore Delta Coves as well.[24]  Therefore, LBHI is an "affiliate" of the Trustee Debtors, including Delta Coves, within the meaning of Section 101(2)(A).

Now, analyzing LBHI "as if such affiliate were the debtor," Lehman ALI is an insider of LBHI because Lehman ALI is admittedly 100% owned by LHBI and is thus an affiliate of LBHI.  Since Lehman ALI is an affiliate of LBHI, it is also an "insider" of LBHI.  Specifically, an "affiliate" is included in the definition of an "insider."

Sibling affiliates that are "horizontally" related to a debtor through a common direct or indirect parent to meet the statutory definition of an "insider" under 11 U.S.C. §101(31).  In re Reichmann Petroleum Corp., 364 B.R. 916 (Bankr. E.D. Tex. 2007).  Accordingly, LBHI is an affiliate of Delta Coves, and Lehman ALI is an insider of LBHI.  Therefore, Lehman ALI is an "insider of an affiliate as if such affiliate were the debtor" pursuant to 11 U.S.C. §101(31)(E).

Consequently, the above constitutes a *prima facie* showing that Lehman ALI is a transferee of transfers avoidable under Section 547 of the Bankruptcy Code, which Lehman ALI has failed to return to Delta Coves' estate.  Proof of Claim No. 21 asserted by Lehman ALI against Delta Coves should therefore be disallowed pursuant to 11 U.S.C. § 502(d).

---

[24] *See* Declaration of Marsha Jennings ("Jennings Declaration"), docket no. 1276, which is attached to the RJN, exhibit 18, which attached the Delta Coves' Organizational Structure Chart identifying various Lehman Brothers' "members" and "managers" in the ownership chain of Delta Coves.  The Jennings Declaration identifies one of Delta Coves' parent companies as "LB/L – Lakeside Capital Partners, LLC".  The Amended Corporate Ownership Statement filed in LBHI's Chapter 11 case, attached to the RJN, exhibit 26, discloses LBHI's ownership of various entities including "LB/L – Lakeside Capital Partners".

# VII.

## CONCLUSION

For the reasons set forth herein, the SunCal Parties request that the Court enter an order granting the relief requested herein.

DATED:  April 26, 2011
                                      **WINTHROP COUCHOT**
                                      **PROFESSIONAL CORPORATION**

By:    */s/ Paul J. Couchot*
            Paul J. Couchot, Esq.
            Peter W. Lianides, Esq.
            Payam Khodadadi, Esq.
General Insolvency Counsel for Administratively Consolidated Debtors-in-Possession ("Voluntary Debtors")

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**


By:  */s/ Ronald Rus*
            Ronald Rus, Esq.
            Joel S. Miliband, Esq.
            Catherine Castaldi, Esq.
Attorneys for SunCal Management, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **THE MOVING VOLUNTARY DEBTORS' AND SUNCAL MANAGEMENT LLC'S MOTION FOR ORDER DISALLOWING CLAIMS OF LEHMAN ALI, INC. AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT TO 11 U.S.C. § 502(d); MEMORANDUM OF POINTS AND AUTHORITIES**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 26, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On April 26, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 26, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Via Attorney Service
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 26, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

## NEF SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

- James E Till     jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh     cgunruh@sbcglobal.net
- Annie Verdries     verdries@lbbslaw.com
- Jason Wallach     jwallach@gladstonemichel.com
- Joshua D Wayser     , kim.johnson@kattenlaw.com
- Christopher T Williams     ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

### SERVICE VIA MAIL

| | |
|---|---|
| Bickford 16, SJDPartners23<br>Comm9, Tesoro7<br><br>Lehman Commercial Paper Inc.<br>Lehman ALI, Inc.<br>Attn:  Gerald Pietroforte<br>1271 Sixth Ave., 46th Fl.<br>New York, NY 10020 | Heartland9, Marblehead21, PSV12<br>Acton6Emerald 7, SunValley17, PalmdaleHills65<br>SummitValley12, Northlake6, OakValley<br><br>Lehman ALI, Inc.<br>OVC Holdings, LLC<br>Northlake Holdings LLC<br>Lehman Commercial Paper Inc.<br>Attn:  Jeff Fitts<br>1271 Sixth Ave., 46th Fl.<br>New York, NY 10020 |
| All<br><br>Weil, Gotshal & Manges LLP<br>Attn:  Shai Y. Waisman<br>767 Fifth Ave.<br>New York, NY 10153 | |