1  JEFFREY W. BROKER – State Bar No. 53226
   LISA A. ROQEMORE – State Bar No. 140523
2  BROKER & ASSOCIATES PROFESSIONAL CORPORATION
   18191 Von Karman Avenue, Suite 470
3  Irvine, CA 92612-7114
   Telephone:  (949) 222-2000 * Facsimile:  (949) 222-2022
4  email: *jbroker@brokerlaw.biz*

5  LEE E. WOODARD – *pro hac vice*
   KELLY C. GRIFFITH – *pro hac vice*
6  HARRIS BEACH PLLC
   One Park Place, 4th Floor
7  Syracuse, New York 13202
   Telephone:  (315) 423-7100 * Facsimile:  (315) 422-9331
8  Email: *kgriffith@harrisbeach.com*

9  Attorneys for Creditors
   BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO.
10

11          **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
12                  **SANTA ANA DIVISION**

13  In re                                          Case No.  8:08-bk-17206-ES
                                                    Chapter 11 Proceedings
14  PALMDALE HILLS PROPERTY, LLC, and
    ALL OF ITS RELATED DEBTORS,                     **OBJECTION OF BOND SAFEGUARD**
15          Jointly Administered Debtors            **INSURANCE CO. AND LEXON INSURANCE**
            and Debtors-in-Possession              **CO. TO DISCLOSURE STATEMENTS WITH**
16                                                  **RESPECT TO: (A)** *FIRST AMENDED* **JOINT**
                                                    **CHAPTER 11 PLAN FOR ELEVEN**
17  Affects:                                        **VOLUNTARY DEBTORS PROPOSED BY**
                                                    **LEHMAN VD LENDERS; AND (B)** *FIRST*
18  ☐  All Debtors                                  *AMENDED* **PLAN FOR EIGHT TRUSTEE**
    ☑  Palmdale Hills Property, LLC,                **DEBTORS PROPOSED BY THE TRUSTEE**
19  ☑  SunCal Beaumont Heights, LLC                 **AND LEHMAN CREDITORS**
    ☐  SCC/Palmdale,
20  ☑  SunCal Johannson Ranch, LLC                  Date:         May 13, 2011
    ☑  SunCal Summit Valley, LLC                    Time          9:30 a.m.
21  ☐  SunCal Emerald Meadows LLC                   Ctrm:         5A
    ☑  SunCal Bickford Ranch, LLC
22  ☑  Acton Estates, LLC
    ☑  Seven Brothers LLC
23  ☐  SJD Partners, Ltd.
    ☐  SJD Development Corp.
24  ☑  Kirby Estates, LLC
    ☑  SunCal Communities I, LLC
25  ☐  SunCal Communities III, LLC
    ☑  SCC Communities LLC
26  ☐  North Orange Del Rio Land, LLC
    ☑  Tesoro SF, LLC
27

28  *Caption continued on next page*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

☑  LBL-SunCal Oak Valley, LLC
☑  SunCal Heartland, LLC
☑  LBL-SunCal Northlake, LLC
☑  SunCal Marblehead, LLC
☐  SunCal Century City, LLC
☑  SunCal PSV, LLC
☑  Delta Coves Venture, LLC
☑  SunCal Torrance, LLC
☑  SunCal Oak Knoll, LLC

1     **TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY**

2 **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; CREDITORS AND**

3 **PARTIES IN INTEREST:**

4     BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO. (respectively

5 "BSI" and "Lexon"; collectively, the "Claimants" or "Bond Safeguard"), hereby Object to the

6 Disclosure Statements with respect to (i) *First Amended* Joint Chapter 11 Plan for Eleven

7 Voluntary Debtors Proposed by the Lehman VD Lenders (the "VD Disclosure Statement"); and

8 (ii) *First Amended* Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and

9 Lehman Creditors (the "Trustee Disclosure Statement, collectively, with the VD Disclosure

10 Statement, the "Disclosure Statements"), and seek entry of an Order denying approval of the

11 Disclosure Statements.

12     WHEREFORE, Bond Safeguard respectfully requests that the Court enter an order granting

13 the foregoing relief and such other and further relief as the Court deems just and proper.

14

15 DATED: April 29, 2011

16 BROKER & ASSOCIATES
17 PROFESSIONAL CORPORATION
    -and-
18 HARRIS BEACH PLLC

19

20 By: _____
21 Jeffrey W. Broker
22 Attorneys for Bond Safeguard Insurance Co.
    and Lexon Insurance Co.

23

24

25

26

27

28

# I.

## SUMMARY OF ARGUMENTS

Bond Safeguard, by and through its undersigned counsel, submits this Objection to the Disclosure Statements on the basis that the Disclosure Statements fail to comply with 11 U.S.C. §1125, and the corresponding Plan that it purports to describe cannot be confirmed, so that the Disclosure Statements must be rejected, and respectfully state as follows:

# II.

## FACTUAL BACKGROUND

1.     **Commencement of the Voluntary Chapter 11 Cases and Their Subsequent Joint Administration**

Palmdale Hills, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, SJD Partners, Ltd., a California limited partnership, SJD Development Corp., a California corporation, SCC Communities, LLC, North Orange Del Rio Land, LLC, Tesoro SF LLC, SunCal Beaumont Heights LLC, SunCal Johannson Ranch LLC, Seven Brothers LLC, and Kirby Estates LLC (the "Voluntary Debtors") filed Voluntary Petitions for Relief (the "Voluntary Cases") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court" or "Court") in November 2008 as follows:

| Voluntary Debtors | Case Number | Petition Date |
|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | November 6, 2008 |
| SunCal Beaumont Heights LLC | 8:08-17209 ES | November 6, 2008 |
| SCC Palmdale, LLC | 8:08-17224 ES | November 7, 2008 |
| SunCal Johannson Ranch LLC | 8:08-17225 ES | November 7, 2008 |
| SunCal Summit Valley, LLC | 8:08-17227 ES | November 7, 2008 |
| SunCal Emerald Meadows, LLC | 8:08-17230 ES | November 7, 2008 |

235035 1484927.3

| SunCal Bickford Ranch, LLC | 8:08-17231 ES | November 7, 2008 |
| Acton Estates LLC | 8:08-17236 ES | November 7, 2008 |
| Seven Brothers LLC | 8:08-17240 ES | November 7, 2008 |
| SJD Partners, Ltd. | 8:08-17242 ES | November 7, 2008 |
| SJD Development Corp. | 8:08-17245 ES | November 7, 2008 |
| Kirby Estates LLC | 8:08-17246 ES | November 7, 2008 |
| SunCal Communities I, LLC | 8:08-17248 ES | November 7, 2008 |
| SunCal Communities III, LLC | 8:08-17249 ES | November 7, 2008 |
| SCC Communities, LLC | 8:08-17573 ES | November 19, 2008 |
| North Orange Del Rio Land, LLC | 8:08-17574 ES | November 19, 2008 |
| Tesoro SF LLC | 8:08-17575 ES | November 19, 2008 |

In response to several emergency motions filed by the Voluntary Debtors, Orders were entered by the Bankruptcy Court on November 19, 2008, and on December 9, 2008, ordering the Joint Administration of all of the *Voluntary Cases*.[1]

**2.    Commencement of the Involuntary Cases and Subsequent Appointment of a Chapter 11 Trustee**

LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (collectively, the "Involuntary Debtors" or the "Trustee Debtors")[2] had Involuntary Petitions for Relief (the "Involuntary Cases" or the "Trustee Cases") filed against them in November 2008 under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court as follows:

| Involuntary Debtors | Case Number | Petition Date |
|---|---|---|
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | November 12, 2008 |
| SunCal Heartland, LLC | 8:08-17407 ES | November 12, 2008 |
| LBL-SunCal Northlake, LLC | 8:08-17408 ES | November 12, 2008 |
| SunCal Marblehead, LLC | 8:08-17409 ES | November 12, 2008 |

---

[1] Claimants believe that there is no dispute as to the foregoing facts, and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing.

[2] The Voluntary Debtors and the Involuntary Debtors are sometimes referred to *collectively*, as the "Debtors".

| SunCal Century City, LLC | 8:08-17458 ES | November 14, 2008 |
| SunCal PSV, LLC | 8:08-17465 ES | November 14, 2008 |
| Delta Coves Venture, LLC | 8:08-17470 ES | November 14, 2008 |
| SunCal Torrance, LLC | 8:08-17472 ES | November 14, 2008 |
| SunCal Oak Knoll, LLC | 8:08-17588 ES | November 19, 2008 |

Orders for relief were entered against each of the Involuntary Debtors on January 6, 2009. The Bankruptcy Court entered Orders in each of the Involuntary Debtors' cases on January 15, 2009 granting the motions of the Petitioning Creditors in each of the Involuntary Cases for an Order appointing a Chapter 11 Trustee. Steven Speier was separately appointed by the Office of the United States Trustee as the Chapter 11 Trustee in each of the Involuntary Cases (the "Trustee"), which appointment was then approved by the Bankruptcy Court pursuant to Orders in each of the Involuntary Cases signed by the Court and separately entered in each case on January 22, 2009." The Schedules and Statements of Financial Affairs and Creditor Matrix were filed by the Trustee in each Involuntary Case on January 27, 2009.[3]

On or about March 28, 2011, the Lehman VD Lenders[4] (the "VD Plan Proponents") filed the Disclosure Statement and accompanying First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors (the "VD Plan"). Also on or about March 28, 2011, the Trustee and Lehman Creditors (the "Lehman Plan Proponents", collectively, with the VD Plan Proponents, the "Plan Proponents"), filed the Disclosure Statement and accompanying First Amended Joint Chapter 11 Plan for Eight Trustee Debtors (the "TD Plan", collectively, with the VD Plan, the "Plans"). Hearings to approve the Disclosure Statements are scheduled for May 13, 2011 and the notice directed that oppositions be filed fourteen (14) days prior to the hearings.

BSI and Lexon are sureties on certain surety bonds executed on behalf of certain of the Debtors. Additionally, BSI and Lexon are parties to a General Agreement of Indemnity (the "Indemnity Agreement") executed by, *inter alia*, SCC Acquisitions, Inc. and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired (the "Indemnitors")

---

[3] Claimants believe that there is no dispute as to the foregoing facts, and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing.

[4] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Disclosure Statements and Plans.

1    wherein the Indemnitors agreed to indemnify and hold BSI and Lexon harmless from every claim

2    that Bond Safeguard may pay as a result of the bonds.

3        Bond Safeguard has paid claims made against various bonds totaling in excess of $2

4    million.  Other claims against bonds executed on behalf of the Debtors are pending.  As a result, the

5    Indemnitors are now liable to BSI and/or Lexon Insurance for, *inter alia*, funds paid out on those

6    claims pursuant to the Indemnity Agreement (the "Indemnity Claims").   The Indemnity Claims

7    asserted in these cases are intended as claims for indemnification as to all Debtors.

8        The validity of the Indemnity Agreement and existence of the Indemnity Claims should be

9    unquestioned by the Plan Proponents because the Indemnity Agreement has been attached or

10   referenced in every pleading filed by Bond Safeguard in these cases.  The indemnity obligation has

11   also been asserted in the claims filed by SCC Acquisitions and Bruce Elieff in many of these cases.

12       Indeed, the Voluntary Debtors and the Involuntary Debtors through the Chapter 11 Trustee

13   filed a COMPLAINT FOR INJUNCTIVE RELIEF (the "Bond Injunction Complaint") in an

14   adversary proceeding filed in the Bankruptcy Court on February 20, 2009, Adversary No. 8:09-ap-

15   1083-ES, seeking entry of a temporary restraining order and injunction "seek[ing] to enjoin

16   litigation against certain bond companies and their purported indemnitors until such time as the

17   Debtors can effectuate their plan of reorganization."  See Complaint, page 1, ¶1, lines 15-17.

18       By filing the Bond Injunction Complaint and commencing the corresponding adversary

19   proceeding, the Voluntary and Involuntary Debtors recognized and admitted that "all Debtors are

20   obligors of the Bond obligations . . .", Complaint, at page 2, ¶4, and that the "Bond Companies,

21   SCC and/or [Bruce] Elieff can seek recourse by way of indemnification against the Debtors for,

22   among other things, fees and costs incurred defending against the Bond and Indemnity Actions."

23   Bond Injunction Complaint, at page 6, ¶15(d).  The relief sought in the Bond Injunction Complaint

24   was ultimately denied by the Court and that adversary proceeding was later closed.

25       Furthermore, the Voluntary Debtors state in the APPLICATION OF RELATED DEBTORS

26   AND DEBTORS-IN-POSSESSION FOR AUTHORITY TO EMPLOY MILLER BARONDESS,

27   LLP AS SPECIAL LITIGATION COUNSEL FOR MATTERS IN THE BANKRUPTCY COURT

28

FOR THE CENTRAL DISTRICT OF CALIFORNIA, filed on February 20, 2009 and the Chapter 11 Trustee in each of the Involuntary Cases in the Chapter 11 Trustee's Application for Authority to Employ Miller Barondess, LLP as Special Litigation Counsel for Matters in the Bankruptcy Court for the Central District of California (the "Miller Barondess Application") the following starting at page 7 thereof:

15.     As a direct result of Lehman's breaches of its funding obligations for the projects, a number of creditors of the Debtors, including governmental entities, are attempting to collect from the Bond Companies under the Bonds (the "Bond Actions"). Numerous other creditors have threatened to or are likely to file similar actions against the Bond Companies.

16.     The Bond Companies have either filed or threatened to file actions against SCC Inc. and Elieff under the purported Bond indemnities (the "Indemnity Actions").

17.     The Bond Companies have direct recourse against the Debtors and purportedly against SCC Inc. and Elieff based on their agreements to indemnify with respect to the Bond obligations. . . .

18.     The Bond Actions are particularly troubling, because in many instances the continued validity of the Bonds and/or the timely completion of certain infrastructure improvements are requirements for maintaining the entitlements granted by various municipalities to SCC Inc. and/or the Debtors for land use and development. These entitlements often take years to secure, and once they are lost they often cannot be replicated. . . .

See Miller Barondess Application, p. 7, lines 3-18.[5]

Clearly the Indemnification Claims were anticipated at the outset of all of the cases, and known by all parties in interest so that payment of the Indemnification Claims as general unsecured claims of the Debtors should be provided for in the Disclosure Statements and Plans.

---

[5] The Applications are identical in each Voluntary and Involuntary Case.

# III.

## OBJECTIONS TO THE DISCLOSURE STATEMENT

It appears that the ultimate objective of the Plans that this Disclosure Statements describe is the transfer of the certain of the respective Voluntary Debtors' assets and Trustee Debtors' assets to the Lehman Nominees, and release of claims by the respective Voluntary Debtors' and Trustee Debtors' creditors.

### A.    *Unconfirmable Plan - Plan Presupposes Impossibility*

The Court should deny approval of the Disclosure Statements because the Plans are patently unconfirmable. See In re Silberkraus, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000) (where Plan nonconfirmable as a matter of law, approval of Disclosure Statement should be denied).  The proposed Plan is fatally flawed and unconfirmable for the following nonexclusive reasons:[6] (i) the condition precedent to confirmation and the effectiveness of the Plan cannot be met; (ii) the Plan lacks adequate information for a creditor to make an informed decision on the Plan; (iii) the Plan provides for improper third-party releases; and (iv) the Plan does not properly provide for treatment of all claims.

The primary reason the Disclosure Statement cannot be approved, and Plan cannot be confirmed is because the condition precedent to both confirmation of the Plan and the Effective Date of the Plan, that the Bond Issuers must execute a Settling Bond Issuer Agreement, "unless waived by the Lehman VD Lenders in their sole and absolute discretion" cannot be met.

Despite attempted negotiations, Bond Safeguard and certain Lehman Related Parties have been unable to reach an agreement to address (i) the treatment of the various claims held by Bond Safeguard; or (ii) the enforceability of the existing Project Bonds upon confirmation.  Without such an agreement, the Plan cannot either be confirmed or become effective.[7]

---

[6] Bond Safeguard/Lexon hereby reserves the right to reassert and supplement these objections before the conclusion of the hearings on the respective Disclosure Statements, and in conjunction with the confirmation of the Plans.

[7] Section 5.4.3 of the VD Disclosure Statement expressly provides as a condition precedent to entry of the Confirmation Order includes that "unless waived by the Lehman VD Lenders in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order for the Plan, . . . are (a) first, execution of a Settling Bond Issuer Agreement by certain of the Lehman Related Parties and each Bond Issuer."  VD Disclosure Statement, p. 115,

1    As part of the Settling Bond Issuer Agreement, the Plan Proponents are proposing that the

2    Bond Issuers agree to a provision that reimbursement obligations to the Bond Issuer will not be

3    guaranteed by an indemnification agreement but instead are to be collateralized either as: (a) a first

4    Lien deed of trust encumbering the applicable Plan Project owned by such Lehman Nominee and

5    securing the reimbursement obligations of such Lehman Nominee to the applicable Settling Bond

6    Issuer; or (b) a guarantee of the Lehman Nominee's reimbursement obligations provided by LBHI

7    [Lehman Brothers Holding, Inc.] which guarantee obligation of LBHI will be an administrative

8    claim in the New York Bankruptcy Cases." Disclosure Statement, p. 128, lines 13-17.  Moreover,

9    the choice of collateralization is to be determined solely by the Lehman Nominee.  Id.  This type of

10    guarantee, without more, is not acceptable to Bond Safeguard.  The Plan Proponents also do not

11    provide for reimbursement in full for Future Work that may be performed by the Bond Issuers but

12    instead intend to qualify what work should be performed and limit the amount to be reimbursed

13    regardless of the cost to the Bond Issuer; this is not acceptable to Bond Safeguard.

14    The Settling Bond Issuer Agreement contemplates an assignment, and where applicable, a

15    release of all claims held by the Bond Issuer.  Given the existence of the Indemnity Agreement and

16    corresponding joint and several obligations of, *inter alia*, all Debtors, Bond Safeguard will not

17    agree to this treatment without satisfactory resolution of the items discussed above which makes

18    the Plan unconfirmable.

19    Because the entry of a Settling Bond Issuer Agreement between the Plan Proponents and

20    Bond Safeguard is a condition precedent to the confirmation and effectiveness of the Plans, and

21    Bond Safeguard is not agreeable to the proposed terms of the Settling Bond Issuer Agreement, the

22    Plans cannot be confirmed so that the Disclosure Statements cannot be approved.

23

24

25    line 26 through page 116, line 3.  Similarly, Section 5.4.3 of the TD Disclosure Statement expressly provides as a
      condition precedent to entry of the Confirmation Order includes that "[u]nless waived by the Lehman Creditors in their
26    sole and absolute discretion, conditions precedent to entry of the Confirmation Order for the Joint TD Plan, . . . are: (a)
      first, execution of a Settling Bond Issuer Agreement, as summarized in the Plan, by certain of the Lehman Related
27    Parties and each Bond Issuer." TD Disclosure Statement, p. 110, line 27 through page 111, line 4.

28

B.    *Lack of Adequate Information*

    1.    <u>Treatment of Project Bonds Must be Disclosed</u>

In addition to the Plans being patently unconfirmable so that the Disclosure Statements cannot be approved, Bond Safeguard opposes the approval of the Disclosure Statements on other grounds, including that the Disclosure Statements lack adequate information concerning the future treatment of the Project Bonds provided to certain of the Debtors. While the Plan Proponents anticipate the transfer of the respective Debtors' assets, absent entry of a Settling Bond Issuer Agreement there is no discussion as to what manner will be employed to ensure the replacement and/or assumption of the Project Bonds. Indeed, Bond Safeguard has been an integral party to these cases and has participated extensively in the mediation process; notwithstanding this involvement, due in large part to the incomprehensible nature of the Disclosure Statements and Plans, Bond Safeguard is unable to discern the Plan Proponents' intentions with respect to the Project Bonds, and payment of the Bond Issuer Claims without a Settling Bond Issuer Agreement in place with Bond Safeguard. Given this confusion experienced by a party familiar with the relevant facts of these cases, it is submitted that a general creditor would have no way of being able to make an informed decision on how to vote on the Plans based on the current language of the Disclosure Statements.

Further, it is submitted that upon the sale or transfer of the projects, the Project Bonds will not transfer to the Lehman Nominee for the respective Plan Project, and therefore, the Lehman Nominee will have to either renew the existing Project Bonds or replace the Project Bonds. Related to this issue, there is no discussion as to what course the Plans will take in the event the Plan Proponents elect to waive the condition precedent of a Settling Bond Issuer Agreement. These requirements and contingencies should be recognized and addressed in the Disclosure Statements; failure to do so constitutes inadequate information being disclosed.

The Bankruptcy Code provides that adequate information is:

    information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition

of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but . . . need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125.

Information that should be contained in a disclosure statement includes: "[a] complete description of the available assets and their value; . . . [a] liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to produce the financial information in the disclosure statement; [i]nformation regarding the future management of the debtor, including the amount of compensation to be paid any insiders, directors, and/or officers of the debtor; . . . [and] [i]nformation relevant to the risks being taken by creditors and interest holders . . . ." In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

        2.     Proposed Transfer

The Disclosure Statements and Plans must also contain a provision disclosing that the transfer of the Plan Projects are subject to certain development obligations including the duty to obtain performance and other surety bonds, to make various infrastructure improvements and other such development responsibilities.

Bond Safeguard submits that the following language in the Disclosure Statements and Plans would be acceptable:

**The Project Bonds**

**Project Bonds were executed on behalf of certain Debtors and, each as a principal for its respective Plan Project, such Project Bonds will not and cannot be transferred to the Lehman Nominee, or any other prospective owner, and such Project Bonds will not apply to the Lehman Nominee, or any other prospective owner. The transfer of each Plan Project is subject to all applicable state and local development requirements, including the duty to obtain performance and other surety bonds, to construct infrastructure improvements, and**

1     **any other related development responsibilities. If the Lehman Nominee, or any other**

2     **prospective owner determines to develop all or a portion of its respective projects, it will be**

3     **required at that time to obtain new Project Bonds from the Bond Companies, or another**

4     **surety, to the extent surety bonds are required by applicable state and local development**

5     **authorities.**

6       The above language is reflective of hornbook suretyship law in that the surety bonds cannot

7     be *transferred*. That is because the relationship of each Debtor <u>as principal</u> to Bond Safeguard (the

8     surety) is personal as to each Debtor and not subject to transfer. The Ninth Circuit recently

9     addressed this issue:

10         "In a surety contract, the surety agrees to answer for the debts of its principal. 74

11         Am.Jur.2d Suretyship §3 (1974). *If the contract names a particular principal, the surety's*

12         *obligations are limited to those of the named principal.* See, e.g. <u>State ex rel. Reitmeier v.</u>

13         <u>Oakley,</u> 129 Wash 553, 225 P. 425, 428 (1924)." <u>Contractors Equipment Maintenance,</u>

14         <u>Co., Inc. v. Bechtel Hanford, Inc.,</u> 514 F. 3d 899, 904 (9th Cir. 2008). (Emphasis added).

15       While the <u>Contractors</u> Ninth Circuit panel looked to Washington state law governing the

16     interpretation of surety bonds entered into in that State, the same long-standing principle is

17     applicable here in California as articulated in <u>Garfield v. Ford</u>, 191 Cal 69, 71, 214 P. 963 (1923)[8]:

18         "A new party could no more be imported into the contract and imposed

19         upon the guarantors without their consent than a change could be made in like

20         manner in the other pre-existing stipulations. The respondents might have been

21         willing to contract with appellant, but not with the Ransome Concrete Machinery

22         Company of New Jersey. They had the right to know and to decide for

23         themselves. Without their assent – and it is not claimed that any knowledge or

24         acquiescence existed – a thing was wanting which was indispensable to the

25

26

27 _____

28   [8] A copy of the decision is attached hereto as Exhibit "A" for the Court's convenience.

1      continuity of the contract.  <u>National Bank v. Hall</u>, 101 U.S. 43, 51; 25 L. Ed. 822

2      (1879)."

3          Bond Safeguard is entitled to have (a) the Lehman VD Lenders, and (b) the Trustee and

4   Lehman Creditors, both as Plan Proponents, confirm <u>now</u> that they are not legally permitted to

5   'transfer' the surety bonds in some as of yet *undisclosed* fashion.   In sum, the Disclosure

6   Statements still do not contain adequate information as they do not provide sufficient details that

7   would permit a creditor such as Bond Safeguard to determine whether it would be in its best

8   interests to vote in favor of, or against, the Plans.

9          C.      *Improper and Overbroad Releases*

10         The Plans and Disclosure Statements also contain overly-broad and improper releases of

11  third-parties.   Indeed, the Disclosure Statements contemplate the releases to encompass each and

12  every Lehman Released Party.  <u>See</u> VD Disclosure Statement, p. 137, lines 7-9; TD Disclosure

13  Statement, p. 132, lines 9-11.  Lehman Released Parties are defined as including: "each, every and

14  any owner, <u>including future owners</u>, of each of the Plan Projects, including the Lehman Nominees .

15  . ." and "LBHI, Property Asset Management, Inc., and any other direct or indirect subsidiary thereof

16  including, without limitation, any entity that is or was a member or partner of any upper-tier joint

17  venture, partnership or limited liability company that is or was a direct or indirect parent of a . . .

18  Debtor . . . and respective Affiliates of all of the foregoing Persons and each of their respective

19  officers, directors, shareholders, members, managers, employees, agents, independent contractors,

20  administrators, consultants, asset managers, attorneys, accountants, trustees, insurers,

21  representatives, successors and assigns."[9]  <u>See</u> VD Plan, Exhibit "D" Definitions, p. 20, lines 17-27

22  and TD Plan, Exhibit "D" Definitions, p. 18, lines 10-24 (emphasis added).

23         Upon information and belief, there are a myriad of Lehman-owned entities many with

24  numerous affiliates, and or entities, each with professionals that have performed services for or on

---

27  [9]  The TD definition includes a provision that the Lehman Successor is included in the Lehman Released Parties.  <u>See</u>

28  TD Plan, Exhibit "D" Definitions, p. 18, line 22.

1    behalf of the Lehman-owned entities, all of which **could** be read to be included in the release.

2    There is no discussion as to what connection or contribution, if any, these entities have to the

3    Debtors and why they should be entitled to be released from potential claims.   Moreover, it is

4    improper to grant <u>future owners</u> of the Plan Projects prospective releases from liability.   There is no

5    telling how broadly these proposed releases will be read or sought to be enforced.   In order to avoid

6    uncertainty, these releases be tailored to more appropriately comply with current case-law as

7    discussed below.

8        It is well established that the releases of non-debtor third parties sought in the Plans are

9    impermissible absent a showing of extraordinary circumstances and substantial contribution to the

10    Debtors.   Specifically, as has been recognized by the Bankruptcy Court for the Southern District of

11    New York in <u>In re XO Communications, Inc.</u>, 2005 Bankr. LEXIS 1772, at *108 (Bankr. S.D.N.Y.

12    September 23, 2005):

> . . . the Court in <u>Deutsche Bank AG v. Metromedia Fiber Network, Inc.</u>
>
> <u>(In re Metromedia Fiber Network, Inc.)</u>, 416 F.3d 136 (2d Cir. 2005)
>
> ("<u>Metromedia</u>"), clarified its previous holding in <u>Drexel</u> where it "held that in
>
> bankruptcy cases, a court may enjoin a creditor from suing a third party, provided
>
> the injunction plays an important part in the debtor's reorganization plan.'" <u>Id.</u> at
>
> 141 (quoting <u>Drexel</u>, 960 F.2d at 293). The Second Circuit in <u>Metromedia</u>
>
> explained that "while none of our cases explains when a nondebtor release is
>
> important to a debtor's plan, **it is clear that such a release is proper only in**
>
> **rare cases**." <u>Id.</u> (citing <u>Class Five Nev. Claimants v. Dow Corning Corp. (In re</u>
>
> <u>Dow Corning Corp.)</u>, 280 F.3d 648, 658 (6th Cir. 2002) ("Such an injunction is a
>
> dramatic measure to be used cautiously. . . .") (emphasis added); <u>Gillman v.</u>
>
> <u>Cont'l Airlines (In re Cont'l Airlines)</u>, 203 F.3d 203, 212-13 (3d Cir. 2000)
>
> (recognizing that nondebtor releases have been approved only in "extraordinary
>
> cases")). It has been recognized that "at least two considerations justify the
>
> reluctance to approve nondebtor releases. First, the only explicit authorization in

1   the Code for nondebtor releases is [Bankruptcy Code section] 524(g), which

2   authorizes releases in asbestos cases when specified conditions are satisfied,

3   including the creation of a trust to satisfy future claims." Id. at 142. Although

4   recognizing that Bankruptcy Code section "105 (a) authorizes the bankruptcy

5   court to issue any order process or judgment that is necessary or appropriate to

6   carry out provisions of [the [Bankruptcy] Code],'" the Second Circuit found that

7   "section 105(a) does not allow the bankruptcy court to create substantive rights

8   that are otherwise unavailable under applicable law.'" Id. (quoting New England

9   Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart

10   Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003); see Smart World

11   Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC), 2005 U.S.

12   App. LEXIS 19591, No. 04-3497, 2005 WL 2197676, at *14 (2d Cir. Sept. 12,

13   2005) (similarly citing Dairy Mart and noting that "[section] 105(a)'s equitable

14   scope is plainly limited by the provisions of the [Bankruptcy] Code.").

15      Regarding the second consideration in Metromedia justifying reluctance

16   to approve nondebtor releases, the Second Circuit held that "a nondebtor release

17   is a device that lends itself to abuse. By it, a nondebtor can shield itself from

18   liability to third parties. In form, it is a release, in effect, that may operate as a

19   bankruptcy discharge arranged without a filing and without the safeguards of the

20   [Bankruptcy] Code." Metromedia, 416 F.3d at 142. The Second Circuit also

21   emphasized that "the potential for abuse is heightened when releases afford

22   blanket immunity." Id.

23      In determining that the Bankruptcy Court's finding was insufficient (but

24   not remanding such insufficient finding because it found the appeal was equitably

25   moot), the Second Circuit in Metromedia concluded that "[a] nondebtor release

26   in a plan of reorganization should not be approved absent the finding that truly

27   unusual circumstances render the release terms important to success of the plan,

28

1    focusing on the considerations discussed" previously in its opinion. Id. at 143

2    (comparing its conclusion to the holding in Dow Corning, 280 F.3d at 658, which

3    requires a bankruptcy court to make "specific factual findings that support its

4    conclusions" before approving nondebtor releases). As to such considerations,

5    the Second Circuit noted that "courts have approved nondebtor releases when:"

6    (1) "the estate received substantial consideration," citing Drexel, 960 F.2d at 293,

7    (2) "the enjoined claims were 'channeled' to a settlement fund rather than

8    extinguished," citing MacArthur Co. v. Johns-Manville Corp. (In re Johns-

9    Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988), and Menard-Sanford v.

10   Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989), (3) "the

11   enjoined claims would indirectly impact the debtor's reorganization by way of

12   indemnity or contribution,'" quoting A.H. Robins, supra, and (4) "the plan

13   otherwise provided for the full payment of the enjoined claims," citing A.H.

14   Robins, supra Metromedia, 416 F.3d at 142. It has also been noted that

15   "nondebtor releases may also be tolerated if the affected creditors consent." Id.

16   (citing In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993)).

17       However, the Second Circuit cautioned in Metromedia that "this is not a

18   matter of factors and prongs. No case has tolerated nondebtor releases absent the

19   finding of circumstances that may be characterized as unique." Id. at 142-43

20   (citing Dow Corning, 280 F.3d at 658; Cont'l Airlines, 203 F.3d at 212-13;

21   Drexel Burnham, 960 F.2d at 288-93).

22   2005 Bankr. LEXIS 1772, at *108.  It is submitted that the same problem is present in the

23   instant case.

24       D.    _Indemnity Claims_

25       Finally, the Lehman VD Lenders do not address the Indemnity Claims.  These claims

26   should be defined and dealt with as claims for joint and several liability in the Plans.

27

28

Bond Safeguard requests that the following language be included in the definitional section of the Plans and Disclosure Statements:

> **Bond Indemnification Claim.** All claims by Bond Safeguard for indemnification for payment by the Bond Safeguard of Bond Issuer Claims arising from a General Agreement of Indemnity executed by or on behalf of one or more of the Debtors.

> **Bond Safeguard Indemnitors.** All Debtors, subsidiaries and affiliates of SCC Acquisitions, Inc., whether now owned and/or hereafter controlled managed or acquired by SCC Acquisitions, Inc.

Additionally, the provision for payment of the Bond Indemnification Claims should be included and provide:

> **Bond Indemnification Claims will be treated as *pari passu* with other Allowed General Claims as to each particular Debtor. In the event that any Bond Indemnification Claim is made against one or more of the Debtors, or any non-Debtor affiliate and/or subsidiary by Bond Safeguard, then Bond Safeguard is expressly authorized to settle with any one or more of the Bond Safeguard Indemnitors, individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the other Bond Safeguard Indemnitors, and the Bond Safeguard Indemnitors' right to be discharged and to be released by reason of the release of one or more of the joint debtors is expressly waived.**

In sum, the Disclosure Statements do not contain adequate information since they do not provide sufficient details that would permit a creditor such as the Bond Safeguard to determine whether it would be in its best interests to vote in favor of, or against, the Plan.

## IV.

## CONCLUSION

It is clear that the Disclosure Statements cannot be approved in their current form as the Plans are unconfirmable, the Disclosure Statements lack adequate information, fails to treat known claims, does not provide for proper treatment of the Indemnity Claims, and does not contain the requisite protections and/or procedures for accomplishing a stated goal of addressing pending bond obligations upon the sale of the Projects. For the foregoing reasons, Bond Safeguard contends that the Disclosure Statements cannot be approved. Bond Safeguard and Lexon request entry of an Order (i) denying approval of the Disclosure Statements; and (ii) for such other and further relief as this Court deems just and proper.

DATED: April 29, 2011

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION
-and-
HARRIS BEACH PLLC

By: _____
Jeffrey W. Broker
Attorneys for Bond Safeguard Insurance Co.
and Lexon Insurance Co.

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br><div align="right">Debtors.</div> | CHAPTER 11<br><br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described as **OBJECTION OF BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO. TO DISCLOSURE STATEMENTS WITH RESPECT TO: (A)** *FIRST AMENDED* **JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY LEHMAN VD LENDERS; AND (B)** *FIRST AMENDED* **PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND LEHMAN CREDITORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 29, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On April 29, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Erithe Smith, 411 West Fourth Street, Suite 5041, Santa Ana, CA 92701-4593 [VIA U.S. MAIL]
United States Trustee, 411 West Fourth Street, Suite 9041, Santa Ana, CA 92701-4593 [VIA U.S. MAIL]

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 29, 2011 | Barbara Jean Little-Raphael | *Barbara Jean Little-Raphael* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br>Debtors. | CHAPTER  11<br><br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

## I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):</u>

- Selia M Acevedo   sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams   jadams@sycr.com
- Raymond H Aver   ray@averlaw.com
- James C Bastian   jbastian@shbllp.com
- Thomas Scott Belden   sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd   fednotice@tclaw.net
- Mark Bradshaw   mbradshaw@shbllp.com
- Gustavo E Bravo   gbravo@smaha.com
- Jeffrey W Broker   jbroker@brokerlaw.biz
- Brendt C Butler   bbutler@mandersonllp.com
- Andrew W Caine   acaine@pszyjw.com
- Carollynn Callari   ccallari@venable.com
- Cathrine M Castaldi   ccastaldi@rusmiliband.com
- Tara Castro Narayanan   tara.narayanan@msrlegal.com
- Dan E Chambers   dchambers@jmbm.com
- Shirley Cho   scho@pszjlaw.com
- Vonn Christenson   vrc@paynefears.com
- Brendan P Collins   bpcollins@bhfs.com
- Vincent M Coscino   vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot   pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri   dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte   ana.damonte@pillsburylaw.com
- Vanessa S Davila   vsd@amclaw.com
- Melissa Davis   mdavis@shbllp.com
- Daniel Denny   ddenny@gibsondunn.com
- Caroline Djang   crd@jmbm.com
- Donald T Dunning   ddunning@dunningLaw.com
- Joseph A Eisenberg   jae@jmbm.com
- Lei Lei Wang Ekvall   lekvall@wgllp.com
- Richard W Esterkin   resterkin@morganlewis.com
- Marc C Forsythe   kmurphy@goeforlaw.com
- Alan J Friedman   afriedman@irell.com
- Steven M Garber   steve@smgarberlaw.com
- Christian J Gascou   cgascou@gascouhopkins.com
- Barry S Glaser   bglaser@swjlaw.com
- Robert P Goe   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg   egoldberg@stutman.com
- Richard H Golubow   rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez   mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

In re:
PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS

Debtors.

CHAPTER 11

CASE NUMBER 8:08-bk-17206-ES

- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderston@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br><div align="right">Debtors.</div> | CHAPTER 11<br><br>CASE NUMBER 8:08-bk-17206-ES |
| --- | --- |

- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

4-29-2011

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**