JEFFREY W. BROKER – State Bar No. 53226
LISA A. ROQEMORE – State Bar No. 140523
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114
Telephone: (949) 222-2000 * Facsimile: (949) 222-2022
email: *jbroker@brokerlaw.biz*

LEE E. WOODARD – *pro hac vice*
KELLY C. GRIFFITH – *pro hac vice*
HARRIS BEACH PLLC
One Park Place, 4th Floor
Syracuse, New York 13202
Telephone: (315) 423-7100 * Facsimile: (315) 422-9331
Email: *kgriffith@harrisbeach.com*

Attorneys for Creditors
BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re

PALMDALE HILLS PROPERTY, LLC, and ALL OF ITS RELATED DEBTORS,
Jointly Administered Debtors and Debtors-in-Possession

Affects:

- ☐ All Debtors
- ☑ Palmdale Hills Property, LLC,
- ☑ SunCal Beaumont Heights, LLC
- ☐ SCC/Palmdale,
- ☑ SunCal Johannson Ranch, LLC
- ☑ SunCal Summit Valley, LLC
- ☑ SunCal Emerald Meadows LLC
- ☑ SunCal Bickford Ranch, LLC
- ☑ Acton Estates, LLC
- ☑ Seven Brothers LLC
- ☑ SJD Partners, Ltd.
- ☐ SJD Development Corp.
- ☑ Kirby Estates, LLC
- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☑ SCC Communities LLC
- ☑ North Orange Del Rio Land, LLC
- ☑ Tesoro SF, LLC

*Caption continued on next page*

Case No. 8:08-bk-17206-ES
Chapter 11 Proceedings

**OBJECTION OF BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO. TO DISCLOSURE STATEMENTS DESCRIBING CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF:**

**(I) PALMDALE HILLS PROPERTY, LLC, SUNCAL BICKFORD RANCH, LLC, SUNCAL MARBLEHEAD, LLC AND SUNCAL PSV, LLC [GROUP I DEBTORS];**

**(II) ACTON ESTATES, LLC, SUNCAL EMERALD MEADOWS LLC, DELTA COVES VENTURE, LLC, SUNCAL HEARTLAND, LLC, LBL-SUNCAL NORTHLAKE, LLC AND LBL-SUNCAL OAK VALLEY, LLC [GROUP II DEBTORS];**

**(III) SUNCAL BEAUMONT HEIGHTS, LLC, SUNCAL JOHANNSON RANCH, LLC, SUNCAL SUMMIT VALLEY, LLC, SEVEN BROTHERS, LLC, KIRBY ESTATES, LLC, AND SUNCAL CENTURY CITY, LLC [GROUP III DEBTORS]; AND**

**(IV) SJD PARTNERS, LTD., SCC COMMUNITIES, LLC, NORTH ORANGE DEL RIO LAND, LLC, TESORO SF LLC,**

- ☑ LBL-SunCal Oak Valley, LLC
- ☑ SunCal Heartland, LLC
- ☑ LBL-SunCal Northlake, LLC
- ☑ SunCal Marblehead, LLC
- ☑ SunCal Century City, LLC
- ☑ SunCal PSV, LLC
- ☑ Delta Coves Venture, LLC
- ☑ SunCal Torrance, LLC
- ☑ SunCal Oak Knoll, LLC

**SUNCAL TORRANCE, LLC AND SUNCAL OAK KNOLL, LLC [GROUP IV DEBTORS]**

Date: May 13, 2011
Time 9:30 a.m.
Ctrm: 5A

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; CREDITORS AND PARTIES IN INTEREST:**

BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO. (respectively "BSI" and "Lexon"; collectively, the "Claimants" or "Bond Safeguard"), hereby Object to the Disclosure Statements with respect to the Chapter 11 Plans filed by the SunCal Plan Proponents in the Chapter 11 Cases as follows: (I) Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLC, SunCal Marblehead, LLC and SunCal PSV, LLC ("Group I Debtors"); (II) Acton Estates, LLC, SunCal Emerald Meadows LLC, Delta Coves Venture, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC AND LBL-SunCal Oak Valley, LLC ("Group II Debtors"); (III) SunCal Beaumont Heights, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, AND SunCal Century City, LLC ("Group III Debtors"); and (IV) SJD Partners, LTD., SCC Communities, LLC, North Orange Del Rio Land, LLC, Tesoro SF LLC, SunCal Torrance, LLC and SunCal Oak Knoll, LLC ("Group IV Debtors") (collectively, the "Disclosure Statements"), and seek entry of an Order denying approval of the Disclosure Statements.

WHEREFORE, Bond Safeguard respectfully requests that the Court enter an order granting the foregoing relief and such other and further relief as the Court deems just and proper.

DATED: April 29, 2011

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION
-and-
HARRIS BEACH PLLC

By: [signature]
Jeffrey W. Broker
Attorneys for Bond Safeguard Insurance Co. and Lexon Insurance Co.

## I.

## SUMMARY OF ARGUMENTS

Bond Safeguard, by and through its undersigned counsel, submits this Objection to the Disclosure Statements on the basis that the Disclosure Statements fail to comply with 11 U.S.C. §1125, and the corresponding Plans that they purports to describe cannot be confirmed, so that the Disclosure Statements must be rejected, and respectfully state as follows:

## II.

## FACTUAL BACKGROUND

### A. Commencement of the Voluntary Chapter 11 Cases and Their Subsequent Joint Administration

Palmdale Hills, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, SJD Partners, Ltd., a California limited partnership, SJD Development Corp., a California corporation, SCC Communities, LLC, North Orange Del Rio Land, LLC, Tesoro SF LLC, SunCal Beaumont Heights LLC, SunCal Johannson Ranch LLC, Seven Brothers LLC, and Kirby Estates LLC (the "Voluntary Debtors") filed Voluntary Petitions for Relief (the "Voluntary Cases") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court" or "Court") in November 2008 as follows:

| Voluntary Debtors | Case Number | Petition Date |
|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | November 6, 2008 |
| SunCal Beaumont Heights LLC | 8:08-17209 ES | November 6, 2008 |
| SCC Palmdale, LLC | 8:08-17224 ES | November 7, 2008 |
| SunCal Johannson Ranch LLC | 8:08-17225 ES | November 7, 2008 |
| SunCal Summit Valley, LLC | 8:08-17227 ES | November 7, 2008 |
| SunCal Emerald Meadows, LLC | 8:08-17230 ES | November 7, 2008 |

| | | |
|---|---|---|
| SunCal Bickford Ranch, LLC | 8:08-17231 ES | November 7, 2008 |
| Acton Estates LLC | 8:08-17236 ES | November 7, 2008 |
| Seven Brothers LLC | 8:08-17240 ES | November 7, 2008 |
| SJD Partners, Ltd. | 8:08-17242 ES | November 7, 2008 |
| SJD Development Corp. | 8:08-17245 ES | November 7, 2008 |
| Kirby Estates LLC | 8:08-17246 ES | November 7, 2008 |
| SunCal Communities I, LLC | 8:08-17248 ES | November 7, 2008 |
| SunCal Communities III, LLC | 8:08-17249 ES | November 7, 2008 |
| SCC Communities, LLC | 8:08-17573 ES | November 19, 2008 |
| North Orange Del Rio Land, LLC | 8:08-17574 ES | November 19, 2008 |
| Tesoro SF LLC | 8:08-17575 ES | November 19, 2008 |

In response to several emergency motions filed by the Voluntary Debtors, Orders were entered by the Bankruptcy Court on November 19, 2008, and on December 9, 2008, ordering the Joint Administration of all of the *Voluntary Cases*.[1]

**B. Commencement of the Involuntary Cases and Subsequent Appointment of a Chapter 11 Trustee**

LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (collectively, the "Involuntary Debtors" or the "Trustee Debtors")[2] had Involuntary Petitions for Relief (the "Involuntary Cases" or the "Trustee Cases") filed against them in November 2008 under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court as follows:

| Involuntary Debtors | Case Number | Petition Date |
|---|---|---|
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | November 12, 2008 |
| SunCal Heartland, LLC | 8:08-17407 ES | November 12, 2008 |
| LBL-SunCal Northlake, LLC | 8:08-17408 ES | November 12, 2008 |
| SunCal Marblehead, LLC | 8:08-17409 ES | November 12, 2008 |

[1] Claimants believe that there is no dispute as to the foregoing facts, and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing.

[2] The Voluntary Debtors and the Involuntary Debtors are sometimes referred to *collectively*, as the "Debtors".

| | | |
|---|---|---|
| SunCal Century City, LLC | 8:08-17458 ES | November 14, 2008 |
| SunCal PSV, LLC | 8:08-17465 ES | November 14, 2008 |
| Delta Coves Venture, LLC | 8:08-17470 ES | November 14, 2008 |
| SunCal Torrance, LLC | 8:08-17472 ES | November 14, 2008 |
| SunCal Oak Knoll, LLC | 8:08-17588 ES | November 19, 2008 |

Orders for relief were entered against each of the Involuntary Debtors on January 6, 2009. The Bankruptcy Court entered Orders in each of the Involuntary Debtors' cases on January 15, 2009 granting the motions of the Petitioning Creditors in each of the Involuntary Cases for an Order appointing a Chapter 11 Trustee. Steven Speier was separately appointed by the Office of the United States Trustee as the Chapter 11 Trustee in each of the Involuntary Cases (the "Trustee"), which appointment was then approved by the Bankruptcy Court pursuant to Orders in each of the Involuntary Cases signed by the Court and separately entered in each case on January 22, 2009." The Schedules and Statements of Financial Affairs and Creditor Matrix were filed by the Trustee in each Involuntary Case on January 27, 2009.[3]

On or about April 7, 2011, the Voluntary Debtors and SCC Acquisitions, Inc., (collectively, the "Plan Proponents") filed four Disclosure Statements and four accompanying Chapter 11 Plans for each of the respective groups of debtors (collectively, the "Plans"). A hearing to approve the Disclosure Statements is scheduled for May 13, 2011 and the notice directed that oppositions be filed fourteen (14) days prior to the hearing.

BSI and Lexon are sureties on certain surety bonds (the "Bonds") executed on behalf of certain of the Debtors. Additionally, BSI and Lexon are parties to a General Agreement of Indemnity (the "Indemnity Agreement") executed by, *inter alia*, SCC Acquisitions, Inc. and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired (the "Indemnitors") wherein the Indemnitors agreed to indemnify and hold BSI and Lexon harmless from every claim that Bond Safeguard may pay as a result of the bonds.

Bond Safeguard has paid claims made against various bonds totaling in excess of $2 million. Other claims against bonds executed on behalf of the Debtors are pending. As a result, the

[3] Claimants believe that there is no dispute as to the foregoing facts, and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing.

Indemnitors are now liable to BSI and/or Lexon Insurance for, *inter alia*, funds paid out on those claims pursuant to the Indemnity Agreement (the "Indemnity Claims"). The Indemnity Claims asserted in these cases are intended as claims for indemnification as to all Debtors.

The validity of the Indemnity Agreement and existence of the Indemnity Claims should be unquestioned by the Plan Proponents because the Indemnity Agreement has been attached or referenced in every pleading filed by Bond Safeguard in these cases. The indemnity obligation has also been asserted in the claims filed by SCC Acquisitions and Bruce Elieff in many of these cases.

Indeed, the Voluntary Debtors and the Involuntary Debtors through the Chapter 11 Trustee filed a COMPLAINT FOR INJUNCTIVE RELIEF (the "Bond Injunction Complaint") in an adversary proceeding filed in the Bankruptcy Court on February 20, 2009, Adversary No. 8:09-ap-1083-ES, seeking entry of a temporary restraining order and injunction "seek[ing] to enjoin litigation against certain bond companies and their purported indemnitors until such time as the Debtors can effectuate their plan of reorganization." See Complaint, page 1, ¶1, lines 15-17.

By filing the Bond Injunction Complaint and commencing the corresponding adversary proceeding, the Voluntary and Involuntary Debtors recognized and admitted that "all Debtors are obligors of the Bond obligations . . .", Complaint, at page 2, ¶4, and that the "Bond Companies, SCC and/or [Bruce] Elieff can seek recourse by way of indemnification against the Debtors for, among other things, fees and costs incurred defending against the Bond and Indemnity Actions." Bond Injunction Complaint, at page 6, ¶15(d). The relief sought in the Bond Injunction Complaint was ultimately denied by the Court and that adversary proceeding was later closed.

Furthermore, the Voluntary Debtors state in the APPLICATION OF RELATED DEBTORS AND DEBTORS-IN-POSSESSION FOR AUTHORITY TO EMPLOY MILLER BARONDESS, LLP AS SPECIAL LITIGATION COUNSEL FOR MATTERS IN THE BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, filed on February 20, 2009 and the Chapter 11 Trustee in each of the Involuntary Cases in the Chapter 11 Trustee's Application for Authority to Employ Miller Barondess, LLP as Special Litigation Counsel for Matters in the Bankruptcy

Court for the Central District of California (the "Miller Barondess Application") the following starting at page 7 thereof:

> 15. As a direct result of Lehman's breaches of its funding obligations for the projects, a number of creditors of the Debtors, including governmental entities, are attempting to collect from the Bond Companies under the Bonds (the "Bond Actions"). Numerous other creditors have threatened to or are likely to file similar actions against the Bond Companies.
>
> 16. The Bond Companies have either filed or threatened to file actions against SCC Inc. and Elieff under the purported Bond indemnities (the "Indemnity Actions").
>
> 17. The Bond Companies have direct recourse against the Debtors and purportedly against SCC Inc. and Elieff based on their agreements to indemnify with respect to the Bond obligations. . . .
>
> 18. The Bond Actions are particularly troubling, because in many instances the continued validity of the Bonds and/or the timely completion of certain infrastructure improvements are requirements for maintaining the entitlements granted by various municipalities to SCC Inc. and/or the Debtors for land use and development. These entitlements often take years to secure, and once they are lost they often cannot be replicated. . . .

See Miller Barondess Application, p. 7, lines 3-18.[4]

Clearly the Indemnification Claims were anticipated at the outset of all of the cases, and known by all parties in interest so that payment of the Indemnification Claims as general unsecured claims of the Debtors should be provided for in the Disclosure Statements and Plans.

## III.

## OBJECTIONS TO THE DISCLOSURE STATEMENT

It appears that the ultimate objective of the Plans that this Disclosure Statements describe is the transfer of the respective Debtors' assets to a Plan Trustee with the goal of liquidating all or most of the assets and a distribution of funds to the holders of Allowed Claims in accordance with the rights and priorities under the Bankruptcy Code.

[4] The Applications are identical in each Voluntary and Involuntary Case.

**A. Lack of Adequate Information**

1. Treatment of the Bonds Must be Disclosed

Bond Safeguard opposes the approval of the Disclosure Statements on various grounds, including that the Disclosure Statements lack adequate information concerning the future treatment of the Bonds provided to certain of the Debtors. While the Plan Proponents anticipate the transfer of the respective Debtors' assets to a Plan Trustee and then to a prospective buyer, there is no discussion as to what manner will be employed to ensure the replacement and/or assumption of the Bonds.

It is submitted that upon the sale or transfer of the projects, the Bonds will not transfer to the Plan Trustee for the respective Project, and therefore, the Plan Trustee will have to either renew the existing Bonds or replace the Bonds. Related to this issue, there is no discussion as to what course the Projects will take in the event the Plan Trustee is unable to sell the assets. These requirements and contingencies should be recognized and addressed in the Disclosure Statements; failure to do so constitutes inadequate information being disclosed.

The Bankruptcy Code provides that adequate information is:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but . . . need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125.

Information that should be contained in a disclosure statement includes: "[a] complete description of the available assets and their value; . . . [a] liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to produce the financial information in the disclosure statement; [i]nformation regarding the future management of the debtor, including the amount of compensation to be paid

any insiders, directors, and/or officers of the debtor; . . . [and] [i]nformation relevant to the risks being taken by creditors and interest holders . . . ." In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

2. Proposed Transfer

The Disclosure Statements and Plans must also contain a provision disclosing that the transfer of the Projects or the Plan Trustee and/or Potential Purchasers are subject to certain development obligations including the duty to obtain performance and other surety bonds, to make various infrastructure improvements and other such development responsibilities.

Bond Safeguard submits that the following language in the Disclosure Statements and Plans would be acceptable:

> **Bonds**
>
> **Bonds were executed on behalf of certain Debtors and, each as a principal for its respective Projects, such Bonds will not and cannot be transferred to the Plan Trustee, or any other prospective owner, and such Bonds will not apply to the Plan Trustee, or any other prospective owner. The transfer and eventual sale of each Project is subject to all applicable state and local development requirements, including the duty to obtain performance and other surety bonds, to construct infrastructure improvements, and any other related development responsibilities. If the Plan Trustee, or any other prospective owner determines to develop all or a portion of its respective projects, it will be required at that time to obtain new Bonds from the Bond Issuer(s), or another surety, to the extent surety bonds are required by applicable state and local development authorities.**

The above language is reflective of hornbook suretyship law in that the surety bonds cannot be *transferred*. That is because the relationship of each Debtor as principal to Bond Safeguard (the surety) is personal as to each Debtor and not subject to transfer. The Ninth Circuit recently addressed this issue:

> "In a surety contract, the surety agrees to answer for the debts of its principal. 74 Am.Jur.2d Suretyship §3 (1974). *If the contract names a particular principal, the surety's obligations are limited to those of the named principal.* See, e.g. State ex rel. Reitmeier v. Oakley, 129 Wash 553, 225 P. 425, 428 (1924)." Contractors Equipment Maintenance, Co., Inc. v. Bechtel Hanford, Inc., 514 F. 3d 899, 904 (9th Cir. 2008). (Emphasis added).

While the Contractors Ninth Circuit panel looked to Washington state law governing the interpretation of surety bonds entered into in that State, the same long-standing principle is applicable here in California as articulated in Garfield v. Ford, 191 Cal 69, 71, 214 P. 963 (1923)[5]:

> "A new party could no more be imported into the contract and imposed upon the guarantors without their consent than a change could be made in like manner in the other pre-existing stipulations. The respondents might have been willing to contract with appellant, but not with the Ransome Concrete Machinery Company of New Jersey. They had the right to know and to decide for themselves. Without their assent – and it is not claimed that any knowledge or acquiescence existed – a thing was wanting which was indispensable to the continuity of the contract. National Bank v. Hall, 101 U.S. 43, 51; 25 L. Ed. 822 (1879)."

Bond Safeguard is entitled to have the Plan Proponents, confirm now that they are not legally permitted to 'transfer' the surety bonds in some as of yet *undisclosed* fashion. In sum, the Disclosure Statements still do not contain adequate information as they do not provide sufficient details that would permit a creditor such as Bond Safeguard to determine whether it would be in its best interests to vote in favor of, or against, the Plans.

---

[5] A copy of the decision is attached hereto as Exhibit "A" for the Court's convenience.

**B. Disclosure Statements Do Not Reflect All Claims**

1. Indemnity Claims

The Disclosure Statements do not properly provide for payment of Bond Safeguard's Indemnity Claims. These claims are such that the Debtors' are each jointly and severally liable for the full amount of the Indemnity Claims. The Disclosure Statement does not contain a class or even discuss payment of these Indemnity Claims. These claims should be defined and dealt with as claims for joint and several liability in the Plans.

Bond Safeguard requests that the following language be included in the definitional section of the Plans and Disclosure Statements:

> **Bond Indemnification Claim. All claims by Bond Safeguard for indemnification for payment by the Bond Safeguard of Bond Issuer Claims arising from a General Agreement of Indemnity executed by or on behalf of one or more of the Debtors.**
>
> **Bond Safeguard Indemnitors. All Debtors, subsidiaries and affiliates of SCC Acquisitions, Inc., whether now owned and/or hereafter controlled managed or acquired by SCC Acquisitions, Inc.**

Additionally, the provision for payment of the Bond Indemnification Claims should be included and provide:

> **Bond Indemnification Claims will be treated as *pari passu* with other Allowed General Claims as to each particular Debtor. In the event that any Bond Indemnification Claim is made against one or more of the Debtors, or any non-Debtor affiliate and/or subsidiary by Bond Safeguard, then Bond Safeguard is expressly authorized to settle with any one or more of the Bond Safeguard Indemnitors, individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the other Bond Safeguard Indemnitors, and the Bond Safeguard Indemnitors'**

**right to be discharged and to be released by reason of the release of one or more of the joint debtors is expressly waived.**

2. Bond Claims

At the outset, it should be noted that while the Disclosure Statements defines Bond Claims they do not either (a) separately classify such Bond Claims, or (b) clearly identify whether such Bond Claims are included as Unsecured Reliance Claims or General Unsecured Claims. It is submitted that a description of the classification of each type of claim is exactly the type of information that must be included in a disclosure statement.

Moreover, there is no rationale provided for classifying some general unsecured claims as Reliance Claims and affording alleged preferred treatment to these claims as Class 5 Creditors over General Unsecured Claims as Class 6 Creditors. Such impermissible gerrymandering is contrary to section 1122 of the Bankruptcy Code which requires substantially similar claims to be classified together and should be rejected.

**C. Feasibility**

In order for a plan to be confirmed, it must be feasible. See 11 U.S.C. §1129(a)(11). In the event it is determined that a Plan cannot be confirmed, the Court should deny approval of the Disclosure Statement. See In re Silberkraus, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000) (where Plan nonconfirmable as a matter of law, approval of Disclosure Statement should be denied).

1. Funding

The Plan Proponents do not provide any financial information to demonstrate that Acquisitions has the wherewithal to meet the funding obligations provided for in the Disclosure Statements, including payment of Administrative Expense Claims, Priority Claims and litigation costs. See Disclosure Statement (Group I), section 10.20, p. 80; Disclosure Statement (Group II), section 10.21, p. 79; Disclosure Statement (Group III), section 10.21, p. 67; Disclosure Statement (Group IV), section 10.21, p. 71.

2. Event of Inability to Sell Projects

Additionally, as discussed above, the Disclosure Statements do not provide an adequate discussion of the contingency plan in the event the Plan Trustee is not able to consummate a market sale of the Projects within a reasonable time, nor do the Disclosure Statements contain a timeframe within which the sales must be accomplished. It appears that if the Plan Trustee is unable to sell the Projects, there will not be sufficient funds to make any distribution to the unsecured creditors, which is a contingency that is not discussed in the Disclosure Statements.

**D. Disclosure Statements Improperly Discuss Bond Safeguard Motion**

Section 5.7.6 of the Disclosure Statement for Group I, and Section 5.7.7 of the Disclosure Statement for Group II recognize that Bond Safeguard had filed a motion to file claims in the Trustee Debtor Cases after the alleged bar date. See Disclosure Statement (Group I), p. 56, lines 25-28; Disclosure Statement (Group II), p. 57, lines 5-8. The Disclosure Statements state that the motion is scheduled for a hearing. Id. Instead what should be reflected, if at all, is a disclosure that the Bond Safeguard Motion was granted on or about January 7, 2011 and Bond Safeguard filed claims in all of the Trustee Debtor Cases, including claims for indemnification.

Given that these claims are not the subject of a pending objection, they are deemed allowed and should be so treated in the Plans and Disclosure Statements.

//

//

//

## IV.

## CONCLUSION

It is clear that the Disclosure Statements cannot be approved in their current form as the Disclosure Statements lack adequate information, fails to treat known claims, does not provide for proper treatment of the Indemnity Claims, does not contain the requisite protections and/or procedures for the bond obligations upon the sale/transfer of the Projects, is not feasible and contains incorrect information. For the foregoing reasons, Bond Safeguard contends that the Disclosure Statements cannot be approved. Bond Safeguard and Lexon request entry of an Order (i) denying approval of the Disclosure Statements; and (ii) for such other and further relief as this Court deems just and proper.

DATED: April 29, 2011

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION
-and-
HARRIS BEACH PLLC

By: [signature]
Jeffrey W. Broker
Attorneys for Bond Safeguard Insurance Co.
and Lexon Insurance Co.

| In re: PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS Debtors. | CHAPTER 11 CASE NUMBER 8:08-bk-17206-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described as **OBJECTION OF BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO. TO DISCLOSURE STATEMENTS DESCRIBING CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF THE GROUP I, II, III AND IV DEBTORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 29, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On April 29, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Erithe Smith, 411 West Fourth Street, Suite 5041, Santa Ana, CA 92701-4593 [VIA U.S. MAIL]
United States Trustee, 411 West Fourth Street, Suite 9041, Santa Ana, CA 92701-4593 [VIA U.S. MAIL]

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __________, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 29, 2011 | Barbara Jean Little-Raphael | Barbara Jean Little-Raphael |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS Debtors. | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

## I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- Selia M Acevedo sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams jadams@sycr.com
- Raymond H Aver ray@averlaw.com
- James C Bastian jbastian@shbllp.com
- Thomas Scott Belden sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd fednotice@tclaw.net
- Mark Bradshaw mbradshaw@shbllp.com
- Gustavo E Bravo gbravo@smaha.com
- Jeffrey W Broker jbroker@brokerlaw.biz
- Brendt C Butler bbutler@mandersonllp.com
- Andrew W Caine acaine@pszyjw.com
- Carollynn Callari ccallari@venable.com
- Cathrine M Castaldi ccastaldi@rusmiliband.com
- Tara Castro Narayanan tara.narayanan@msrlegal.com
- Dan E Chambers dchambers@jmbm.com
- Shirley Cho scho@pszjlaw.com
- Vonn Christenson vrc@paynefears.com
- Brendan P Collins bpcollins@bhfs.com
- Vincent M Coscino vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte ana.damonte@pillsburylaw.com
- Vanessa S Davila vsd@amclaw.com
- Melissa Davis mdavis@shbllp.com
- Daniel Denny ddenny@gibsondunn.com
- Caroline Djang crd@jmbm.com
- Donald T Dunning ddunning@dunningLaw.com
- Joseph A Eisenberg jae@jmbm.com
- Lei Lei Wang Ekvall lekvall@wgllp.com
- Richard W Esterkin resterkin@morganlewis.com
- Marc C Forsythe kmurphy@goeforlaw.com
- Alan J Friedman afriedman@irell.com
- Steven M Garber steve@smgarberlaw.com
- Christian J Gascou cgascou@gascouhopkins.com
- Barry S Glaser bglaser@swjlaw.com
- Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg egoldberg@stutman.com
- Richard H Golubow rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

| In re: PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS Debtors. | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

- Kelly C Griffith bkemail@harrisbeach.com
- Matthew Grimshaw mgrimshaw@rutan.com
- Kavita Gupta kgupta@winthropcouchot.com
- Asa S Hami ahami@morganlewis.com
- Michael J Hauser michael.hauser@usdoj.gov
- D Edward Hays ehays@marshackhays.com
- Michael C Heinrichs mheinrichs@omm.com
- Harry D. Hochman hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff jonathan.hoff@cwt.com
- Nancy Hotchkiss nhotchkiss@trainorfairbrook.com
- Michelle Hribar mhribar@rutan.com
- John J Immordino john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- Michael J Joyce mjoyce@crosslaw.com
- Stephen M Judson sjudson@fablaw.com
- Kaleb L Judy ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn skahn@pszyjw.com
- Sheri Kanesaka sheri.kanesaka@bryancave.com
- David I Katzen katzen@ksfirm.com
- Christopher W Keegan ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet ikiet@hkclaw.com
- Mark J Krone mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally davidlallylaw@gmail.com
- Leib M Lerner leib.lerner@alston.com
- Peter W Lianides plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu cliu@winthropcouchot.com
- Kerri A Lyman klyman@irell.com
- Mariam S Marshall mmarshall@marshallramoslaw.com
- Robert C Martinez rmartinez@mclex.com
- Michael D May mdmayesq@verizon.net
- Hutchison B Meltzer hmeltzer@wgllp.com
- Krikor J Meshefejian kjm@lnbrb.com
- Joel S. Miliband jmiliband@rusmiliband.com
- James M Miller jmiller@millerbarondess.com, vgunderston@millerbarondess.com
- Louis R Miller smiller@millerbarondess.com
- Randall P Mroczynski randym@cookseylaw.com
- Mike D Neue mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida Rnida@castlelawoffice.com
- Henry H Oh henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe sokeefe@okeefelc.com
- Robert B Orgel rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes pparmes@rutan.com
- Ronald B Pierce ronald.pierce@sdma.com

| In re: PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS Debtors. | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

- Katherine C Piper kpiper@steptoe.com
- Cassandra J Richey cmartin@pprlaw.net
- Debra Riley driley@allenmatkins.com
- James S Riley tgarza@sierrafunds.com
- Todd C. Ringstad becky@ringstadlaw.com
- R Grace Rodriguez ecf@lorgr.com
- Martha E Romero Romero@mromerolawfirm.com
- Ronald Rus rrus@rusmiliband.com
- John P Schafer jschafer@mandersonllp.com
- John E Schreiber jschreiber@dl.com
- William D Schuster bills@allieschuster.org
- Christopher P Simon csimon@crosslaw.com
- Wendy W Smith wendy@bindermalter.com
- Steven M Speier Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR) Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James ecf@stjames-law.com
- Michael K Sugar msugar@irell.com
- Cathy Ta cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh cgunruh@sbcglobal.net
- Annie Verdries verdries@lbbslaw.com
- Jason Wallach jwallach@gladstonemichel.com
- Joshua D Wayser , kim.johnson@kattenlaw.com
- Christopher T Williams ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood dwiseblood@seyfarth.com
- Brett K Wiseman bwiseman@aalaws.com
- Dean A Ziehl dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman joshuasdaddy@att.net

4-29-2011