1  IRELL & MANELLA LLP
   Alan J. Friedman (State Bar No. 132580)
2  afriedman@irell.com
   Kerri A. Lyman (State Bar No. 241615)
3  klyman@irell.com
   840 Newport Center Drive, Suite 400
4  Newport Beach, California 92660-6324
   Telephone:  (949) 760-0991
5  Facsimile:   (949) 760-5200

6  Counsel for the Official Committee of
   Unsecured Creditors in
7  Chapter 11 Cases of Palmdale Hills
   Property, LLC et al.
8

9              UNITED STATES BANKRUPTCY COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                   SANTA ANA DIVISION

| | |
|---|---|
| In re<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>Joint Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206- ES<br><br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8-08-bk-17575 ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES<br>8:08-bk-17588-ES |
| Affects:<br>☐ All Debtors<br>☐ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows LLC<br>☐ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☐ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☐ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF LLC<br>☒ LBL-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☒ LBL-SunCal Northlake, LLC<br>*Caption Continued on Next Page* | Chapter 11 Cases<br><br>**OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF ACTON ESTATES, LLC, SUNCAL EMERALD MEADOWS LLC, DELTA COVES VENTURE, LLC SUNCAL HEARTLAND, LLC, LBL-SUNCAL NORTHLAKE, LLC AND LBL-SUNCAL OAK VALLEY, LLC [GROUP II DEBTORS]** |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

2158280

| | |
|---|---|
| ☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☐ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☐ SunCal Torrance, LLC<br>☐ SunCal Oak Knoll, LLC | Hearing:<br>Date: May 13, 2011<br>Time: 9:30 a.m.<br>Place: Courtroom 5A |

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, THE RELATED DEBTORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES-IN-INTEREST:**

The Official Joint Committee of Creditors Holding Unsecured Claims (the "Committee"), duly appointed in the related jointly administered chapter 11 cases of Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, and Tesoro SF, LLC (the "Voluntary Debtors"),[1] hereby submits this Objection and Reservation of Rights with respect to the "Disclosure Statement Describing Chapter 11 Plan Filed by SunCal Plan Proponents in the Chapter 11 Cases of Acton Estates, LLC, SunCal Emerald Meadows LLC, Delta Coves Venture, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC and LBL-SunCal Oak Valley, LLC [Group II Debtors]" (the "SunCal II Disclosure Statement" describing the "SunCal II Plan").[2]

---

[1] The Voluntary Debtors' Chapter 11 cases are jointly administered with the following nine (9) related entities: LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (the "Trustee Debtors"). A Chapter 11 Trustee has been appointed in the Trustee Debtors' Chapter 11 cases (the "Trustee") and a separate committee of unsecured creditors was established. The Voluntary Debtors and the Trustee Debtors are hereinafter collectively referred to as the "Related Debtors."

[2] Capitalized terms not otherwise defined herein have the meaning set forth in the SunCal II Disclosure Statement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

2

# **PRELIMINARY STATEMENT**

The Committee believes that for this confirmation process to have any meaning whatsoever, creditors must be provided real choices and meaningful options – in other words, a true competing plan process. Due to the current posture of these cases, the Committee believes that it is premature to consider approval of either the four disclosure statements submitted by the SunCal Plan Proponents (collectively, the "SunCal Disclosure Statements") or the competing disclosure statement filed by the Lehman Lenders (the "Lehman Disclosure Statement"), and urges the Court to deny approval of all of them.

Two of the four SunCal Disclosure Statements describe plans which require the bankruptcy court overseeing Lehman Brothers' reorganization in New York (the "Lehman Court") to either lift the automatic stay in Lehman Brothers' reorganization (the "Lehman Stay") or find that the Lehman Stay does not apply to the plans proposed by the SunCal Plan Proponents ("SunCal"). (Relief from the Lehman Stay is not required for the plans proposed by SunCal for the Group III and Group IV Debtors (collectively with the Group I and Group II plans, the "SunCal Plans")). Given the Lehman Court's prior decisions declining to lift the Lehman Stay, this event may never occur.[3] Further, the recovery for unsecured creditors under three of the four SunCal Plans depends on SunCal's success in adversary proceedings and claim objections that it initiated against the Lehman Entities. This litigation is far from resolved and it is unclear whether SunCal will succeed on its claims. In addition, the real property assets must then be sold, which sales, in many of the instances require relief from the Lehman Stay. In other words, the SunCal Plans are wholly contingent on events that may never occur and litigation that may fail; this is no basis on which to consider approval of the SunCal Disclosure Statements, much less, confirm the SunCal Plans, at this time.

---

[3] The Committee would urge SunCal to immediately seek relief from the Lehman Court with respect to those aspects of the SunCal Plans not otherwise impacted by the ruling of the Second Circuit Court of Appeals which held that SunCal could renew its motion for relief from stay after the Ninth Circuit Court of Appeals issues its ruling on the pending appeal. Presumably, the Second Circuit's ruling applies only to a relief from stay request impacting the Equitable Subordination Litigation.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

3

Similarly, the Lehman Disclosure Statement describes a plan which is wholly contingent upon settlements not yet consummated and claims thresholds that may already have been exceeded, and offers de minimis consideration to creditors in exchange for the waiver of potentially valuable rights. Moreover, as set forth in the objection to the Lehman Disclosure Statement filed concurrently herewith, the Lehman Disclosure Statement is far too complex and convoluted for creditors to realistically understand what is being proposed. The creditors in these cases deserve better.

Given the length of time that these cases have been pending, creditors deserve full, fair and understandable disclosure about their options. The better course is to allow the parties to continue with their negotiations, litigations and claims objections in order to determine if either group can propose a non-contingent plan so that there will be a meaningful opportunity for creditors to decide their own fate.

## OBJECTION

### A. The SunCal II Disclosure Statement Cannot be Approved Because the SunCal II Plan Cannot be Confirmed

It is well established that a court can deny the approval of a disclosure statement if the plan described by the disclosure statement is unconfirmable as a matter of law. In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. CA 1999). The proposed SunCal II Plan is unconfirmable because it impermissibly discriminates against some unsecured creditors and its effective date is contingent on the Lehman Stay being lifted, an event that might never occur.

#### 1. The SunCal II Plan's Effective Date May Never Occur, Making the SunCal II Plan Unfeasible and Unconfirmable

A court may not confirm a plan of reorganization when the plan is nothing more than a visionary scheme which promises creditors and equity security holders more than it can possibly deliver. 11 U.S.C. § 1129(a)(11); In re Pizza of Hawaii, 761 F.2d 1374, 1382 (9th Cir. 1985). A plan constitutes a visionary scheme when it contemplates an effective date that may never occur. In re Central European Industrial Development Company, LLC, 288 B.R. 572 (Bankr. N.D. CA 2003) (finding a plan unconfirmable when the plan's effective date depended on the favorable

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

4

resolution of a claim objection). While an effective date may be contingent on a future development, the development may not be so remote and uncertain such that it is unlikely to occur. See In re Wonder Corp. of America, 70 B.R. 1018, 1021 (Bankr. D. CT 1987) ("the effective date is linked to the happening of a particular event and is no later than is reasonably necessary to accomplish a legitimate purpose such as the determination of administrative expenses or the resolution of objections to claims.").

Despite this prohibition, the SunCal II Plan's effective date is conditioned on the Lehman Court lifting the Lehman Stay or a court finding that the Lehman Stay does not apply to the SunCal II Plan. *SunCal II Disclosure Statement*, § 2.1.54, p.13 ("[T]he Effective Date shall [be] the one hundred and twentieth (120th) calendar day after the later of (i) the Confirmation Date, or (ii) the date any stay barring the implementation of the Plan arising from the Lehman Entities' cases is no longer applicable, has been deemed inapplicable, or has been lifted by a Court of competent jurisdiction."). While the Committee supports SunCal's efforts to lift the Lehman Stay, the chance of the Lehman Stay being lifted is uncertain at best. The Lehman Entities have aggressively sought to enforce the Lehman Stay to prevent SunCal from modifying liens held by the Lehman Entities or suing the Lehman Entities. The Lehman Court, largely, has supported the Lehman Entities' interpretation of the Lehman Stay. The Lehman Court has denied at least two attempts to lift the stay and it is uncertain at best whether the Lehman Court would modify the stay to allow the SunCal II Plan to block the Lehman Entities' credit bid rights and sell property free and clear of liens held by the Lehman Entities. Given this uncertain state of affairs, this Court cannot find that there is a reasonable likelihood that the SunCal II Plan will ever go effective, thus preventing confirmation and the consideration of the SunCal II Disclosure Statement. The better course would be to defer consideration of the SunCal II Disclosure Statement until such time as SunCal has sought, and hopefully obtained, an order lifting the Lehman Stay.

2.  **The SunCal II Plan Impermissibly Discriminates Against General Unsecured Creditors**

Section 1123(a)(4) of the Bankruptcy Code requires that the plan "provide the same

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

5

treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4) (emphasis added). The intent of this section is to prevent plan proponents from requiring creditors to provide unequal consideration for equal payment. In re AOV Industries, Inc., 792 F.2d 1140, 1152 (D.C. Cir. 1986); In re Cajun Electric Power Cooperative, 230 B.R. 715, 732-733 (Bankr. E.D. LA 1999).

The SunCal II Plan, however, violates this basic tenant of bankruptcy law. The SunCal II Plan proposes that the Plan Trustee will liquidate the assets of the Group II Debtors for the benefit of their creditors. Currently all of the real property assets owned by the Group II Debtors are over encumbered, making it impossible for the Plan Trustee to realize funds to pay unsecured creditors. To create value for unsecured creditors, SunCal filed the Lehman Claim Objection to disallow the claims filed by the Lehman Entities on the grounds that the Lehman Entities benefited from preferential payments and fraudulent transfers and the Related Debtors have recoupment rights against the Lehman Entities. *SunCal II Disclosure Statement*, § 2.1.75, p.15. If SunCal prevails on the Lehman Claim Objection, some or all of the claims filed by the Lehman Entities will be disallowed and the real property assets of the Group II Debtors may have value for unsecured creditors.

The SunCal II Plan, however, proposes distributing that value unequally. Specifically the SunCal II Plan proposes that any value realized as a result of the Lehman Claim Objection will first go to parties holding Reliance Claims,[4] a subset of the parties holding unsecured claims. *SunCal II Disclosure Statement*, § 8.5, p. 70. Parties holding other unsecured claims will receive nothing as a result of the Lehman Claim Objection unless Reliance Claims are paid in full. *SunCal II Disclosure Statement*, § 8.6, p. 70. This violates the clear language of the Bankruptcy Code. As detailed above, the SunCal II Plan must treat all creditors holding general unsecured claims equally. The SunCal II Disclosure Statement cannot be approved until the SunCal II Plan is amended to treat all unsecured creditors equally.[5]

---

[4] The definition of Reliance Claims is also problematic. See discussion, *infra*.

[5] At a minimum, SunCal needs to disclose why holders of Reliance Claims are entitled to priority recoveries from assets unrelated to their Reliance Claims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

6

B.  **The SunCal II Disclosure Statement Inadequately Describes the SunCal II Plan**

"A proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Thus, a disclosure statement must have the kind of information that would enable a hypothetical reasonable investor to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1).

> Section 1125 of the Bankruptcy Code requires that a disclosure statement contain adequate information. "Adequate information" is defined in § 1125 to mean: information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records that would enable a hypothetical reasonable investor typical of holders of claims . . . of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); In re California Fidelity, Inc., 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan. . . . At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote.").

The Committee does not believe that the SunCal II Disclosure Statement contains "adequate information" within the meaning set forth in section 1125 of the Bankruptcy Code, and should not be approved in its present form.

1.  **The SunCal II Disclosure Statement must be Tailored to the SunCal II Plan**

SunCal has filed four separate plans and four separate disclosure statements. However, many of the provisions of the four SunCal Disclosure Statements are identical and therefore contain information that may not be applicable to the specific plan at issue. For example, Section 2.1.86 defines LitCo as: "[a] newly formed Delaware limited liability company that will be purchasing the claims and litigation rights held by the Reliance Claimants that choose Option A." *SunCal II Disclosure Statement*, § 2.1.76, p.16. The SunCal II Plan, however, does not give Reliance Claimants the option of selling their claims to LitCo. Each disclosure statement must be specifically tailored to address the plan at issue.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

7

### 2. Typos Render the SunCal II Disclosure Statement Confusing

While a few typographical errors in plans and disclosure statements are to be expected, and overlooked, the typographical errors in the SunCal II Disclosure Statement make it challenging for a reasonable investor to properly evaluate the SunCal II Plan. In the SunCal II Disclosure Statement, SunCal's typos materially change the meaning of critical terms. For instance, on page three-four of the disclosure statement, SunCal states:

> Although the same Plan is being filed in the Cases of all four Group II Debtors, each Plan is independent of the others. The Creditors in each Case will determine, subject to Court approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the cases of **all** of the Group II Debtors but not in others.

*SunCal II Disclosure Statement*, § I, p.3, ln. 26 – p. 4, ln. 2 (emphasis added). The first two sentences of the paragraph appear to indicate that the SunCal II Plan, while filed jointly, may be confirmed in the cases of some Group II Debtors but not in others. The third sentence, however, indicates that the SunCal II Plan must be confirmed in the cases of **all** the Group II Debtors. The tone of the paragraph suggests that SunCal used the term "all" in error but the typo makes it difficult for creditors to understand what is required to confirm the SunCal II Plan in their case. The SunCal II Disclosure Statement is littered with similar errors, all of which must be corrected before this Court can approve the SunCal II Disclosure Statement as providing adequate information.

### 3. The SunCal II Disclosure Statement Needs to Adequately Describe What Events Will Occur Prior to the Effective Date

The SunCal II Disclosure Statement must clarify what events will occur on the Effective Date and what events will occur prior to the Effective Date. For example, the SunCal II Plan authorizes the Plan Trustee to negotiate assets sales prior to the Effective Date, but it is unclear how the Plan Trustee can be appointed before the SunCal II Plan becomes effective. Similarly, although the SunCal II Plan provides for a release of Acquisitions in exchange for the Acquisitions Administrative Loan, which is discussed below, the SunCal II Plan does not specify when the release will take effect.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

8

### 4. The SunCal II Disclosure Statement Fails to Adequately Describe, in Any Respect, the Acquisitions Administrative Loan

A plan of reorganization may only be confirmed if the reorganized debtor can pay off all of its outstanding post-petition expenses and priority on the date that the plan becomes effective. 11 U.S.C. § 1129(a)(9)(A). The SunCal II Disclosure Statement indicates that the Group II Debtors will satisfy this requirement by borrowing money from Acquisitions by way of the "Acquisitions Administrative Loan." Despite its importance, the Sun Cal II Disclosure Statement provides a wholly inadequate description of the Acquisitions Administrative Loan. The Disclosure Statement does not describe: (i) the size of the loan; (ii) the security offered to Acquisitions; (iii) how Acquisitions plans to fund the loan; or (iv) how the Group II Debtors plan to pay back the Acquisitions Loan. *See SunCal II Disclosure Statement*, § 2.1.2, p. 5. These are basic provisions that must be described in order for creditors to make a fully informed decision about whether to accept or reject the SunCal II Plan.

Later, the SunCal II Disclosure Statement indicates that the Reorganized Debtors, in return for the "Acquisitions Administrative Loan" will waive any claims that they have against Acquisitions. *See SunCal II Disclosure Statement*, § 10.21, p. 79. This is an exceptionally troubling provision. The Related Debtors may have significant claims against Acquisitions and the Reorganized Debtors will waive these claims in return for a loan, of an undetermined size,[6] that must be repaid. Yet, the SunCal II Disclosure Statement provides no detail as to why this arrangement benefits the Group II Debtors or even why this release is a condition for the Acquisitions Administrative Loan (or when the release will become effective).[7] A disclosure statement cannot provide adequate information if it fails to explain why the debtors will give away valuable assets to interested parties.

---

[6] Moreover, it is possible that Acquisitions will not need to loan any money but would still be receiving a release merely for promising to make funds available.

[7] The provision discussing the Committee's rights to commence actions against Acquisitions appears to be nullified by the release language that precedes it. *See SunCal II Disclosure Statement*, § 10.22.1, p. 80.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

9

### 5. The SunCal II Disclosure Statement Fails to Provide Creditors with an Adequate Explanation for Why Acquisitions Must Act as Plan Trustee

A trustee owes a fiduciary duty to the beneficiaries of a trust. In other words, a trustee must act in the best interests of the trust beneficiaries. The SunCal II Disclosure Statement, indicates that "[t]he Plan Trustee under the Plan Trust Agreement is Acquisitions." *SunCal II Disclosure Statement*, § 2.1.112, p. 21. Acquisitions is an indirect parent company of all of the Related Debtors. *Id.* at § 2.1.1, p. 5. Further, Acquisitions, or a company closely related to Acquisitions, likely will make a bid to purchase some or all of the Group II Debtors' assets. It will be impossible for Acquisitions to carry out its fiduciary duties to the creditors of the Group II Debtors if it is also bidding on the Group II Debtors' property. The SunCal II Disclosure Statement must explain to creditors how Acquisitions[8] plans to satisfy its conflicting duties and why Acquisitions must serve as the Plan Trustee.

### 6. The SunCal II Disclosure Statement Fails to Provide an Adequate Explanation for the Establishment of the Bid Procedures

As liquidating plans, the crux of each of the SunCal Plans is that the Plan Trustee will market and sell the Projects and other assets owned by each of the Related Debtors. To facilitate this process, all of the SunCal Plans require that in order for a bidder to become a "Qualified Bidder" such party must provide the Plan Trustee with a deposit of $250,000 and provide evidence of its financial ability to close. *See, e.g., SunCal II Disclosure Statement*, § 2.1.123, p. 21. The Related Debtors are entitled to, but not required to, accept an Opening Bid prior to the public auction.[9] Once bidding has begun, all bids must exceed the Opening Bid (or subsequent Qualifying Bid) by the Minimum Increment, which is defined as:

---

[8] Acquisitions may also be authorized to receive compensation for its duties as Plan Trustee. If SunCal wishes for Acquisitions to serve as Plan Trustee, this compensation must be limited and clearly disclosed to all creditors.

[9] The definitions of Opening Bid and Qualifying Bid are also problematic. Opening Bid is defined as the "first Qualified Bid accepted by the Debtor for any of the Plan Trust's Assets." *See, e.g., SunCal II Disclosure Statement*, § 2.1.100. Qualifying Bid, in turn, means "with respect to a bid on a Project, a bid made by the Qualifying Bidder that exceeds the immediately preceding Qualifying Bid by the Minimum Increment." *See, e.g., SunCal II Disclosure Statement*, § 2.1.122. First, these definitions are circular in that Opening Bid means the "first Qualifying Bid" but Qualifying Bid is defined to mean a bid that exceeds a previously filed bid. Second, the term Qualifying Bid appears to apply only to Projects and not other assets,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

> Minimum Increment means the following: a) <u>For Sales of Projects</u>: One hundred percent of the preceding Qualifying Bid, plus any applicable Break-Up Fee, plus two hundred and fifty-thousand dollars ($250,000); and b) For Sales of Other Plan Trust Assets: One hundred percent (100%) of the preceding Qualified Bid, pus any applicable Break-Up Fee, plus five percent (5%) of the preceding Qualifying Bid.

*SunCal II Disclosure Statement*, § 2.1.90, p. 21. The same procedures are applicable to all of the Related Debtors under all of the proposed plans. *See, e.g., SunCal II Disclosure Statement*, § 8.2, p 66.

These one size fits all procedures make little sense given the wide disparity in the value of the Related Debtors' assets. For instance, some of the Related Debtors own significant assets worth tens of millions of dollars. Other of the Related Debtors own assets with significantly less value. In the smaller projects, requiring bidders to make an overly large deposit and to bid in minimum increments of $250,000 may chill bidding and prevent the Plan Trustee from realizing the highest and best price for these assets. SunCal must explain the basis for establishing a Minimum Increment of $250,000 for subsequent bids on the Projects and must clarify the definitions of Opening Bid and Qualifying Bid. Further, the bid procedures must be specifically tailored to each of the Related Debtors' assets.

7. **The SunCal II Disclosure Statement Fails to Adequately Define Reliance Claims**

A critical aspect of the SunCal II Plan is the concept of "Reliance Claims." Under the SunCal II Plan, Reliance Claims receive payment prior to the payment of General Unsecured Claims. *SunCal II Disclosure Statement*, §§ 8.5-8.6, p. 70. Thus, unsecured creditors need to know what constitutes a Reliance Claim in order to determine what recovery they will receive. The SunCal II Disclosure Statement provides little guidance. At section 2.1.124, the SunCal II Disclosure Statement defines a Reliance Claim as:

> an Allowed Unsecured claim against a Group II Debtor that would entitle the holder thereof to be the beneficiary of any equitable subordination judgment obtained against a Lehman Entity by such Group II Debtors, or that would

suggesting that the procedures set forth in section 8.2 of the SunCal II Disclosure Statement do not apply to the Group II Debtors' other Assets.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

11

entitled [sic] the holder thereof to receive a share of any Claim Objection Reduction Amount obtained by the Debtor through a Lehman Claim Objection, before other holders of Allowed Unsecured Claims could participate in this recovery amount.

*SunCal II Disclosure Statement*, § 2.1.124, p.22. This convoluted definition provides no assistance.[10] An interested creditor must cross reference three or more defined terms and decide whether it is likely to benefit from the Lehman Claim Objection[11] or an equitable subordination judgment. This is circuitous and beyond the ability of the average creditor to understand. This is not adequate information. SunCal needs to amend the definition to provide a clear and concise definition for Reliance Claims.

The SunCal II Disclosure Statement also attaches Exhibit 8, purporting to list all Reliance Claims. Exhibit 8, however, is grossly inadequate and fails to remedy the unintelligible definition. The list only includes claimants that filed proofs of claim against the Related Debtors. It omits parties that the Group II Debtors listed on their schedules. There is no explanation as to how Exhibit 8 was created or what criteria was used in order to include certain creditors, but not others as holders of Reliance Claims. Moreover, the wholesale exclusion of scheduled creditors is troubling. A creditor is not required to file a proof of claim if it agrees with how a debtor lists it in its initial schedules. Federal Rule of Bankruptcy Procedure 3003(b)(1). Claimants cannot be penalized because they agreed with the Group II Debtors' determination of the amount of their claim. SunCal must amend Exhibit 8 to include scheduled claims that it believes constitute Reliance Claims.[12]

---

[10] More confusion is created by the fact that the SunCal II Disclosure Statement does not define "Allowed Unsecured Claim." Although the disclosure statement defines "General Unsecured Claim" in section 2.1.64, the SunCal II Disclosure Statement must define "Allowed Unsecured Claim" so that a creditor attempting to cross-reference the definitions can locate the relevant terms.

[11] Nor is there any discussion as to why the holder of a Reliance Claim, as opposed to the holder of a General Unsecured Claim, benefits from the Lehman Claim Objection.

[12] In addition, Exhibit 4 and Exhibit 8 should be reconciled to be consistent.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

12

### 8. The Disclosure Statement Fails to Explain How the Claim Objections filed against the Lehman Entities will Result in the Creation of Equity

As set forth in the SunCal II Disclosure Statement, the Related Debtors have filed a number of claim objections against the Lehman Entities asserting, among other things, the right to reduce the Lehman Entities' claims through the affirmative defense of recoupment. On page fifty-one (51) at line fourteen (14) of the SunCal II Disclosure Statement, SunCal states "[i]f these claim objections are sustained by the Court, in the case of recoupment, the amount of damages incurred by the Debtors on account of the Lehman Entities' failure to pay the vendor and bond claims will directly reduce the amount of the Lehman Entities secured claims, leaving equity available for the payment of all Allowed Unsecured Claims." *SunCal II Disclosure Statement*, § 5.4.1.8, p. 51. However, the SunCal II Disclosure Statement fails to explain how, even if the claim objections are successful, equity will be created given that the Lehman Entities' secured claims far exceed the current value of the Projects. Most helpful would be examples, using specific Projects, demonstrating the amount of the equity that will exist for the payment of unsecured creditors

The foregoing information is crucial to providing unsecured creditors with information relevant to such creditors' decision to vote to accept or reject any plan to be filed by SunCal.

### RESERVATION OF RIGHTS

The Committee acknowledges that the hearing on the SunCal II Disclosure Statement normally is not a suitable context for raising objections to the confirmation of a plan. The Committee reserves the right to make any and all confirmation objections in connection with the confirmation hearing.

### CONCLUSION

The Committee does not believe that any disclosure statement should be approved at the present time given the current posture of these cases.

Based on the inadequacies in the SunCal II Disclosure Statement, the Committee requests that the Court deny approval of the SunCal II Disclosure Statement at this time, or alternatively, order that SunCal correct all of the errors and omissions in the SunCal II Disclosure Statement,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

13

and hold a further hearing after creditors have had an opportunity to review and object to the amended disclosure statement.

Dated: April 29, 2011

IRELL & MANELLA LLP

By: /s/ Kerri A. Lyman
Alan J. Friedman
Kerri A. Lyman
Counsel for the Official Unsecured Creditors Committee in Chapter 11 Cases of Palmdale Hills Property, LLC et al.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE DISCLOSURE
STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY
SUNCAL PLAN PROPONENTS [GROUP II DEBTORS]

14

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 840 Newport Center Drive, Suite 400, Newport Beach, CA 92660.

The foregoing document described: **OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF ACTON ESTATES, LLC, SUNCAL EMERALD MEADOWS LLC, DELTA COVES VENTURE, LLC, SUNCAL HEARTLAND, LLC, LBL-SUNCAL NORTHLAKE, LLC AND LBL-SUNCAL OAK VALLEY, LLC [GROUP II DEBTORS]** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 29, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On April 29, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
SERVED VIA U.S. MAIL:
Chambers of the Honorable Erithe A. Smith
United States Bankruptcy Court
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/29/11 | Leslie Wolchuck | /s/ Leslie Wolchuck |
|---------|-----------------|---------------------|
| *Date*  | *Type Name*     | *Signature*         |

2422206.1 01

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**

- Selia M Acevedo   sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams   jadams@sycr.com
- Raymond H Aver   ray@averlaw.com
- James C Bastian   jbastian@shbllp.com
- Thomas Scott Belden   sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd   fednotice@tclaw.net
- Mark Bradshaw   mbradshaw@shbllp.com
- Gustavo E Bravo   gbravo@smaha.com
- Jeffrey W Broker   jbroker@brokerlaw.biz
- Brendt C Butler   bbutler@mandersonllp.com
- Andrew W Caine   acaine@pszyjw.com
- Carollynn Callari   ccallari@venable.com
- Dan E Chambers   dchambers@jmbm.com
- Shirley Cho   scho@pszjlaw.com
- Vonn Christenson   vrc@paynefears.com
- Brendan P Collins   bpcollins@bhfs.com
- Vincent M Coscino   vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot   pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri   dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte   ana.damonte@pillsburylaw.com
- Vanessa S Davila   vsd@amclaw.com
- Melissa Davis   mdavis@shbllp.com
- Daniel Denny   ddenny@gibsondunn.com
- Caroline Djang   crd@jmbm.com
- Donald T Dunning   ddunning@dunningLaw.com
- Joseph A Eisenberg   jae@jmbm.com
- Lei Lei Wang Ekvall   lekvall@wgllp.com
- Richard W Esterkin   resterkin@morganlewis.com
- Marc C Forsythe   kmurphy@goeforlaw.com
- Alan J Friedman   afriedman@irell.com
- Steven M Garber   steve@smgarberlaw.com
- Christian J Gascou   cgascou@gascouhopkins.com
- Barry S Glaser   bglaser@swjlaw.com
- Robert P Goe   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg   egoldberg@stutman.com
- Richard H Golubow   rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez   mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith   bkemail@harrisbeach.com

- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com

2422206.1 01

- 3 -

- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

**SERVED VIA FIRST-CLASS MAIL:**

Office of the U.S. Trustee
Attn: Michael Hauser, Esq.
411 W. Fourth Street, #9041
Santa Ana, CA 92701-4593