IRELL & MANELLA LLP
Alan J. Friedman (State Bar No. 132580)
afriedman@irell.com
Kerri A. Lyman (State Bar No. 241615)
klyman@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Counsel for the Official Committee of
Unsecured Creditors in
Chapter 11 Cases of Palmdale Hills
Property, LLC et al.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| In re | Case No. 8:08-bk-17206- ES |
|---|---|
| PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8-08-bk-17575 ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES 8:08-bk-17588-ES |
| Joint Administered Debtors and Debtors-in-Possession | |
| Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☒ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☒ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☒ Tesoro SF LLC<br>☐ LBL-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☐ LBL-SunCal Northlake, LLC<br>*Caption Continued on Next Page* | Chapter 11 Cases<br><br>**OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS**<br><br>Hearing:<br>Date: May 13, 2011<br>Time: 9:30 a.m.<br>Place: Courtroom 5A |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

2422540

☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, THE RELATED DEBTORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES-IN-INTEREST:**

The Official Joint Committee of Creditors Holding Unsecured Claims (the "Committee"), duly appointed in the related jointly administered chapter 11 cases of Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, and Tesoro SF, LLC, (the "Voluntary Debtors"),[1] hereby submits this Objection and Reservation of Rights with respect to the "Disclosure Statement with Respect to First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders" (the "Lehman Disclosure Statement"), filed in support of the plan (the "Lehman Plan")[2] filed by the Lehman Lenders ("Lehman").

## PRELIMINARY STATEMENT

The Committee believes that for this confirmation process to have any meaning whatsoever, creditors must be provided real choices and meaningful options -- in other words, a

---

[1] The Voluntary Debtors' Chapter 11 cases are jointly administered with the following nine (9) related entities: LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (the "Trustee Debtors"). A Chapter 11 Trustee has been appointed in the Trustee Debtors' Chapter 11 cases (the "Trustee") and a separate committee of unsecured creditors was established. The Voluntary Debtors and the Trustee Debtors are hereinafter collectively referred to as the "Related Debtors."

[2] Capitalized terms not otherwise defined herein have the meaning set forth in the Lehman Plan or Lehman Disclosure Statement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

2

true competing plan process. Due to the current posture of these cases, the Committee believes that it is premature to consider approval of either the four disclosure statements submitted by the SunCal Plan Proponents (collectively, the "SunCal Disclosure Statements") or the competing Lehman Disclosure Statement, and urges the Court to deny approval of all of them.

The Lehman Disclosure Statement describes a plan which is wholly contingent upon settlements not yet consummated and claims thresholds that may already have been exceeded, and offers de minimis consideration to creditors in exchange for the waiver of potentially valuable rights. Moreover, as set forth below, the Lehman Disclosure Statement is far too complex and convoluted for creditors to realistically understand what is being proposed. Similarly, the SunCal Disclosure Statements describe plans which require the bankruptcy court overseeing Lehman Brothers' reorganization in New York (the "Lehman Court") to either lift the automatic stay in Lehman Brothers' reorganization (the "Lehman Stay") or find that the Lehman Stay does not apply to the plans proposed by the SunCal Plan Proponents ("SunCal").[3] Further, the recovery for unsecured creditors under the SunCal Plans depends on SunCal's success in adversary proceedings and claim objections that it initiated against the Lehman Entities. This litigation is far from resolved and it is unclear whether SunCal will succeed on its claims. The creditors in these cases deserve better.

Given the length of time that these cases have been pending, creditors deserve full, fair and understandable disclosure about their options. The better course is to allow the parties to continue with their negotiations, litigations and claims objections in order to determine if either group can propose a non-contingent plan so that there will be a meaningful opportunity for creditors to decide their own fate.

## OBJECTION

**A.  The Lehman Disclosure Statement Cannot be Approved Because the Lehman Plan is Unconfirmable on its Face**

It is well established that a court can deny the approval of a disclosure statement if the

---

[3] The Committee recognizes that the Lehman Stay does not apply to the plan proposed in connection with the Group III Debtors.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

3

plan described by the disclosure statement is unconfirmable as a matter of law. In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. CA 1999). The proposed Lehman Plan is unconfirmable because: (i) it is unintelligible; (ii) it assumes settlements with bond companies that may never occur; (iii) it includes unrealistic caps on certain claims; and (iv) the treatment of holders of Mechanic's Liens ("Mechanic's Lien Claimants") is discriminatory.

### 1. The Lehman Plan Cannot be Confirmed Because it is Needlessly Complex and Convoluted

The fundamental pillar of a Chapter 11 reorganization is that creditors analyze a proposed plan, make an informed decision, and cast a ballot for or against the proposed plan. See COLLIER ON BANKRUPTCY, ¶ 1129.01 (Alan N. Resnick & Henry Sommer eds. 16th ed., 2010). Creditors cannot make an informed decision if the proposed plan is so complex as to be unintelligible.[4] Here, it is difficult for trained lawyers to understand the Lehman Plan, and it is likely completely unintelligible for an ordinary creditor. For instance, a key provision of the Lehman Plan is the Lehman Distribution Enhancement, which provides that holders of unsecured claims may waive claims that they have against Lehman in exchange an increase in the distribution that they receive under the Lehman Plan. The percentage increase ranges from 0%-49% based on the type of claim held by the creditor and the funds available for certain distribution enhancements. Without the Lehman Distribution Enhancement, all unsecured creditors will recover 1% on their claim. Thus, the Lehman Distribution Enhancement is a critical plan provision for creditors deciding whether to vote for or against the Lehman Plan.

The Lehman Plan and Disclosure Statement, however, make it impossible for a creditor to determine what its recovery will be under the Lehman Distribution Enhancement. The Lehman Disclosure Statement summarizes the Lehman Distribution Enhancement as follows:

> The Lehman Distribution Enhancement: An additional Cash Distribution is available to Holders of Allowed Class 6 Claims that increases a Holder's Distributions to 50% of its Allowed Reliance Claim if the Projected Distribution Bump Up is applicable and otherwise up to 40%; provided, that such additional Cash Distribution to each

---

[4] Many aspects of the Lehman Plan are needlessly complex and convoluted. For the sake of brevity, the Committee only cites one such example below.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

4

> such Holder shall be subject to reduction in the amount of the On Proportion Distribution Reduction, if that reduction is applicable as more particularly described below. The Lehman Distribution Enhancement is a part of the Lehman Creditor Distribution Funding and only is being made available to a Holder of an Allowed Class 6 Claim who completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties. The Projected Distribution Bump Up is applicable only if the aggregate amount of Distributions made under the Plan in respect of all Allowed Reliance Claims and Allowed General Unsecured Claims against the particular, applicable Group I Debtor, excluding certain specified Claims, as described herein, is no greater than such Group I Debtor's specified Bump Up Threshold, which thresholds for all Group I Debtors aggregate to $2.5 million, as more fully set forth in the Plan. The amount of the additional Cash Distribution available as a Lehman Distribution Enhancement is subject to reduction by the On Proportion Distribution Reduction, if applicable, as follows:
>
> On Proportion Distribution Reduction: There is a $20.5 million Distribution threshold applicable to Distributions to Holders of Allowed Class 6 Claims, Allowed Class 7 Claims and Allowed Senior Claims. If the Distribution threshold otherwise would be exceeded, there will be an On Proportion Distribution Reduction, reducing the aggregate amount of the Lehman Distribution Enhancement for Allowed Class 6 Claims and Allowed Class 7 Claims by the excess over $20.5 million (with such reduction allocated ratably among Holders of such Claims, as described below)

*Lehman Disclosure Statement*, § 1.8.1(c)(i), p. 17-18.

To even begin to understand the amount that it will be entitled to under the Lehman Distribution Enhancement, a creditor must evaluate the likelihood that: (i) its claim qualifies as an Allowed Reliance Claim; (ii) the Bump Up Threshold will be reached; and (iii) the specified distributions will exceed $20.5 million, triggering the On Proportion Distribution Reduction. In other words, in trying to determine the distribution that it will receive as part of the Lehman Distribution Enhancement, a creditor must locate and interpret at least three other defined term, each with its own convoluted definition.[5] Then, assuming the creditor is able to actually understand all of the defined terms, the creditor must then evaluate the likelihood that the Bump up Threshold will be reached or that distributions will total more than $20.5 million. These are Sisyphean tasks that a creditor should not be expected to complete just to understand its payment under a plan of reorganization. The Lehman Plan must be clarified through amendment.

---

[5] The Committee addresses the Definition of Reliance Claim at Section B.1 *infra*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

### 2. The Lehman Plan is Unconfirmable Because it Assumes Settlements that May Never Occur

A court may not confirm a plan of reorganization when the plan is nothing more than a visionary scheme which promises creditors and equity security holders more than it can possibly deliver. 11 U.S.C. § 1129(a)(11); In re Pizza of Hawaii, 761 F.2d 1374, 1382 (9th Cir. 1985). A plan constitutes a visionary scheme when a plan proponent cannot show that a plan has a reasonable chance of success. In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986); In re Save Our Spring Alliance Inc., 388 B.R. 202 (Bankr. W.D. TX 2009) (finding plan infeasible when debtor had only ten percent of the money necessary to effectuate the reorganization plan); In re Repurchase Corp., 332 B.R. 336, 342-343 (Bankr. N.D. IL 2005) (finding plan infeasible when the plan relied on speculative funding). A plan proponent must show a reasonable probability of success by a preponderance of the evidence. In re Ambanc La Mesa Limited Partnership, Ltd., 115 F.3d 650, 653 (9th Cir. 1997).

Confirmation of the Lehman Plan is conditioned on this Court approving the Settling Bond Issuer Agreements and the Lehman Court approving the Settling Bond Issuer Agreements. *Lehman Disclosure Statement*, 5.9.2(a), p. 151. To date, Lehman has not submitted any Settling Bond Issuer Agreements to this Court for approval. In fact, Lehman has not yet reached a final settlement with any of the Bond Issuers. Lehman provides no estimate as to when it expects to complete settlement discussions or when a motion to approve such a settlement will be filed. The Lehman Disclosure Statement only presents the terms on which Lehman would like to settle. It is quite possible that the final Settling Bond Issuer Agreements will look substantially different than the terms described in the Lehman Plan and Disclosure Statement. Thus, Lehman is asking creditors to vote to confirm a visionary plan which may never become confirmable. Creditors should not have to bear the cost of a contested confirmation fight when the underlying plan will never be confirmed.

### 3. The Lehman Plan is Unconfirmable Because Confirmation is Conditioned on Unrealistic Claims Caps

In addition to the Bond Issuer contingency, another condition to confirmation of the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

6

Lehman Plan is that: "as to Group I Debtors, ... the Lehman VD Lenders good faith estimate of all such Debtors' Allowed Senior Claims does not exceed $17 million, and as to the Group II Debtors, that the Lehman VD Lenders good faith estimate of all such Debtors' Allowed Senior Secured Claims does not exceed $3 million." *Lehman Disclosure Statement*, 5.9.2(a)(iii), p. 151. If Lehman makes a good faith estimate that the allowed claims will exceed these amounts, the Lehman Plan cannot be confirmed, unless the Lehman waives the requirement. However, the claims caps set forth in the Lehman Plan are unrealistic and likely have already been exceeded.

The Lehman Plan defines Senior Claim as: "[a]ny or all of the following: (i) Administrative Claims, (ii) Priority Claims, (iii) Priority Tax Claims, and (iv) Secured Claims other than Seller Financing Secured Claims." *Lehman Plan*, Ex. D., ¶ 175. The Lehman Disclosure Statement includes a chart showing the amount of claims that the Lehman Entities expect will be allowed against the estates of the various Debtors. *Lehman Disclosure Statement*, § 4.2.4, p. 42. According to this chart, Lehman expects that $14.9 million in Senior Claims will be allowed against the Debtors' estates, almost all of which will be allowed against the Group I Debtors' estates. However, in reaching this number, Lehman used the amount of estimated administrative claims as of July 2010 to determine the total amount of Administrative Claims. The Administrative Claims almost certainly have increased in the nine months since July 2010. Thus, it is likely that claim cap for the Group I Debtors has already been exceeded. Further, Exhibit 4 to the SunCal Disclosure Statements indicates that the Group I Debtors owe more than $15.5 million in senior tax claims. If this number is accurate, the Senior Claims will almost certainly exceed the claims cap contained in the Lehman Plan.[6] Unless Lehman is willing to modify the claim caps or waive this condition, there is no point in continuing to confirmation with a plan that cannot be confirmed.

Finally, Lehman's calculation of Senior Claims assumes that the administrative claims asserted by SunCal will be disallowed.[7] However, no objections to these claims have yet been

---

[6] In addition, if some or all of the Mechanic's Lien Claims are found to be senior to Lehman's Liens, the amount of Senior Claims will exceed the cap and thereby violate this condition to confirmation.

[7] The same concern holds true with respect to the pre-petition claims filed by SunCal. The allowance of those claims in any significant amount could cause the claims caps to be exceeded.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

filed. If Lehman's assumption is incorrect, and SunCal's administrative claims are allowed, the Senior Claims will certainly exceed the $17 million and $3 million dollar caps. Rather than continue to confirmation with a plan that cannot be confirmed, consideration of the Lehman Disclosure Statement should be delayed until these claim objections (which have not yet been filed) have been resolved.

4.  **The Lehman Plan's Treatment of the Mechanic's Lienholder Violates 11 U.S.C. § 1123(a)(4) and the Plan is Therefore Unconfirmable**

Section 1123(a)(4) of the Bankruptcy Code requires that the plan "provide the <u>same treatment</u> for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4) (emphasis added). The intent of this section is to prevent plan proponents from requiring creditors to provide unequal consideration for equal payment, even when soliciting participation in a voluntary settlement agreement. In re AOV Industries, Inc., 792 F.2d 1140, 1152 (D.C. Cir. 1986). "It is disparate treatment when members of a common class are required to tender more valuable consideration—<u>be it their claim against specific property of the debtor</u> or some other chose in action—in exchange for the same percentage of recovery." <u>Id.</u> (plan proponent offered a voluntary settlement fund to unsecured creditors but required creditors give up disparate claims to participate in the fund) (emphasis added).

In a blatant attempt to coerce Mechanic's Lien Claimants into giving up their secured status, however, the Lehman Plan improperly requires Mechanic's Lien Claimants to waive their secured status to participate in the Lehman Distribution Enhancement, the only meaningful return provided to unsecured creditors. Under the Lehman Plan, claimants in classes six and seven may waive their rights against Lehman and participate in the Lehman Distribution Enhancement. *Lehman Plan*, Ex. D. § 101, p. 17. The Lehman Distribution Enhancement entitles an eligible claimant to receive a distribution of up to fifty percent of its claim; significantly more than the base line distribution of one percent afforded a non-waiving claimant. *See id.* But Lehman only permits a Mechanic's Lien Claimant to participate in the Lehman Distribution Enhancement if the Mechanic's Lien Claimant withdraws its secured claims and consents to be treated as an unsecured claimant. *Lehman Disclosure Statement*, § 5.3.3(a), p. 98. If a Mechanic's Lien Claimant chooses

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

8

1  to litigate its secured status and loses, it cannot participate in the Lehman Distribution

2  Enhancement, despite its position as an unsecured creditor in class six or seven. Id. Instead, the

3  Lehman Plan provides that a Mechanic's Lien Claimant that litigates its position and loses will

4  receive the base line one percent distribution. Id.

5      Requiring a Mechanic's Lien Claimant to relinquish its secured position in order to receive

6  the same benefits afforded to other unsecured class members violates section 1123(a)(4)'s

7  prohibition against disparate treatment.

8      For the above reasons, the Court should deny Lehman's Plan as unconfirmable and

9  minimize the assets that all parties would have to expend preparing for a confirmation that can

10 never occur.

11 **B.    The Disclosure Statement Inadequately Describes the Lehman Plan**

12     "A proper disclosure statement must clearly and succinctly inform the average unsecured

13 creditor what it is going to get, when it is going to get it, and what contingencies there are to

14 getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Thus, a disclosure

15 statement must have the kind of information that would enable a hypothetical reasonable investor

16 to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1).

17     Section 1125 of the Bankruptcy Code requires that a disclosure statement contain adequate

18 information. "Adequate information" is defined in § 1125 to mean:

19> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's books
20> and records that would enable a hypothetical reasonable investor typical of
> holders of claims . . . of the relevant class to make an informed judgment about
21> the plan . . . .

22 11 U.S.C. § 1125(a)(1); In re California Fidelity, Inc., 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996)

23 ("The purpose of a disclosure statement is to give all creditors a source of information which

24 allows them to make an informed choice regarding the approval or rejection of a plan. . . . At a

25 minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the

26 plan before the creditor is asked for a vote.").

27     The Committee does not believe that the Disclosure Statement contains "adequate

28 information" within the meaning set forth in section 1125 of the Bankruptcy Code, and should not

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

9

be approved in its present form. Among the deficiencies with the Disclosure Statement are the following:

1. **The Lehman Disclosure Statement does Not Adequately Define a "Reliance Claim"**

Exhibit D of the Lehman Plan defines a "Reliance Claim" as one where:

(i) The Claim is for 'new value' (as defined in 11 U.S.C. section 547(a)(2) as that section is interpreted with reference to controlling law for the Bankruptcy Court) voluntarily provided or voluntarily extended to one or more of the VD Plan Debtors after the Reliance Date [August 1, 2007] and prior to the applicable Petition Date(s); (ii) the Claim was timely of record as follows: either (1) Filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the Filed Schedules by March 25, 2011 as a Scheduled Claim; and (iii) the Claim is not any of the following: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Secured Claim; (d) a Priority Claim; (e) a Settling Bond Issuer-Related Future Work Claim; (f) a Claim of an Insider; or (g) a Claim of a Lehman Creditor (other than a Lehman-Owned Settling Bond Issuer-Related Claim).

*Lehman Plan*; Ex. D. at ¶ 155.

This convoluted definition makes it impossible for an ordinary claimholder to determine whether it holds a Reliance Claim or an Unsecured Claim. The average creditor is not going to know whether it has provided "new value" within the meaning of the Bankruptcy Code. This is a legal determination that a common creditors are not qualified to make. A clear definition of Reliance Claim is necessary because, under the Lehman Plan, Reliance Claimants receive a greater distribution out of the Lehman Distribution Enhancement and the Lehman Plan puts Reliance Claims and unsecured claims into different classes. These deficiencies make it impossible for the average creditor to make an informed decision as to whether to support the Lehman Plan. In order to ensure that creditors know whether they hold a Reliance Claim or an Unsecured Claim, Lehman should be required to attach a list of all creditors holding Reliance Claims as an exhibit to the Disclosure Statement.

2. **The Lehman Disclosure Statement does Not Adequately Explain Why the Definition of Reliance Claims Excludes Insider Claims**

The definition of Reliance Claim expressly excludes claims held by Insiders. The Lehman Disclosure Statement does not explain why the claims of Insiders cannot constitute Reliance

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

10

Claims if the other criteria are satisfied. Lehman needs to explain why the Lehman Plan discriminates against Insiders in this respect.

### 3. The Lehman Disclosure Statement Fails to Provide an Adequate Description of Plan Confirmation

The Lehman Disclosure Statement does not sufficiently disclose whether the Lehman Plan must be confirmed in each Debtor's case individually or whether the Lehman Plan can be confirmed as to all Debtors, regardless its confirmability in the case of a particular debtor. It is not until page seventy-nine that the Lehman Disclosure Statement indicates that all unsecured claims will be put into subclasses based upon the estate in which the claim was filed and each subclass shall vote to accept or reject the Lehman Plan. *Lehman Disclosure Statement*, § 5.2, p. 79 ("The Plan does not intend to and does not provide for substantive consolidation of any of the VD Plan Debtors for any purpose, e.g., for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code"). Then, on page one hundred fifty-one, the Lehman Disclosure Statement makes clear that the Lehman Plan will only be confirmed if it is confirmed in the case of every Debtor. *Lehman Disclosure Statement*, § 5.9.2(a)(iv), p. 151. The Lehman Disclosure Statement needs to be amended so that this information appears in the introduction. Creditors need to know that if the Lehman Plan is not confirmable as to one Debtor then the Lehman Plan will not be confirmed.

### 4. The Lehman Disclosure Statement Fails to Provide an Adequate Description of the Voting Classes

For more than seventy pages the Lehman Disclosure statement refers to classes one through ten as if they were unified classes made up of all qualifying creditors. *See e.g. Lehman Disclosure Statement*, Introduction, p. 10 & § 3.4, p. 28. On page seventy-nine, however, the Lehman Disclosure Statement states: "each Allowed Claim in a Class will be deemed to be in one or more subclasses of the applicable VD Plan Debtor as the classification tables herein reflect." *Lehman Disclosure Statement*, § 5.2, p. 79. On page ninety-four, the Lehman Disclosure Statement further clarifies the voting classifications with the statement: "[a]ny references in the Plan to Classes 1 through 10 are summary references made for convenience only to the group of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

11

Case 8:08-bk-17206-ES    Doc 2017    Filed 04/29/11    Entered 04/29/11 15:32:10    Desc
Main Document    Page 12 of 19

subclasses of each such Class. Voting and treatment for each subclass are to remain distinct." *Lehman Disclosure Statement*, § 5.3, p. 94. This information should not be buried in the middle of a two hundred page disclosure statement. Creditors need this information so that they know their voting class. Lehman must amend the Lehman Disclosure Statement to put this information into the introduction.

5.  **The Disclosure Statement Fails to Provide Adequate Disclosure of How Much Creditors can expect to Receive under the Lehman Distribution Enhancement**

Sections 5.3.6 and 5.3.7 of the Lehman Disclosure Statement indicate that claimants that waive their claims against Lehman may participate in the Lehman Distribution Enhancement. The relevant sections, however, do not adequately define how much money a claimant will receive in return for its waiver. The sections only give a convoluted description of the Lehman Distribution Enhancement. For instance, all Unsecured Creditors (including those holding Reliance Claims) are entitled to a 1% guaranteed distribution. Only Reliance Creditors that sign the Lehman Release are entitled to the Lehman Distribution Enhancement. The Lehman Disclosure Statement indicates that the Distribution Enhancement should provide the Reliance Claimant with a 40% recovery unless the amount is bumped up to 50% by the Projected Distribution Bump Up or the Distribution Enhancement is reduced by the On Proportion Distribution Reduction. Thus, the Reliance Claimant may receive almost no additional distribution or it may receive an additional 49% distribution on its Reliance Claim. Telling Reliance Claimants that they could receive anywhere between 1%-50% return on their claim is not adequate disclosure.[8]

Ideally, the Lehman Plan would be amended to simplify this convoluted process and provide unsecured creditors with a guaranteed distribution if they waive their claims against Lehman. At the very least, however, the Lehman Disclosure Statement needs to be amended to describe how Lehman arrived at the Bump Up Threshold and the $20.5 million trigger for the On Proportion Distribution Reduction. Creditors need to know how Lehman valued claims and what

---

[8] Sections 5.3.6 and 5.3.7 indicate that the Lehman Distribution Enhancement is subject to reduction if the On Proportion Distribution Reduction is triggered. Section 6, the liquidation analysis, suggests that Reliance Claims are entitled to a minimum 40% distribution if they participate in the Lehman Distribution Enhancement. Lehman needs to amend the Lehman Disclosure Statement to clarify this discrepancy.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

12

other assumptions Lehman made in arriving at these numbers. If creditors have that information, they can better evaluate Lehman's assumptions and independently consider the likelihood that their recovery will be reduced or enhanced.

6.   **The Lehman Disclosure Statement Fails to Adequately Describe the Lehman Release**

As described above, a critical component of the Lehman Plan is the Lehman Distribution Enhancement. However, a creditor is only entitled to the Lehman Distribution Enhancement if the creditor "properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment/Release for Lehman." *Lehman Disclosure Statement*, § 5.3.6(b)(i)(2), p. 104. Thus, the language of the Lehman Release is of critical importance to creditors that would like to elect the Lehman Distribution Enhancement. Section 5.4.9 of the Lehman Disclosure Statement describes the release that creditors will have to sign but it is unclear whether the language in section 5.4.9 is the exact language governing the Lehman Release. *Lehman Disclosure Statement*, § 5.4.9, p. 134. To adequately disclose the exact terms of the release, Lehman should be required to attach sample ballots and release forms to the Lehman Disclosure Statement. Creditors can evaluate the forms and lodge objections if they disagree with the forms' structure or language.

7.   **The Disclosure Statement fails to Provide Adequate Disclosure of how Lehman valued the Projects**

Section 4.2.2 of the Disclosure Statement provides a list of the monetary values that Lehman attributes to various projects. Disclosure Statement § 4.2.2, p. 37. Lehman uses these values to demonstrate that creditors will receive nothing if the cases were converted to Chapter 7. *See Disclosure Statement*, § 6, p. 159-160. Lehman states that the values are from appraisals that it undertook during the bankruptcy cases but does not specify when it obtained the appraisals, who did the appraisals, what method the appraiser utilized, or what changes in value the appraisers forecast. An average creditor needs this information to evaluate Lehman's conclusion that the Group I Debtors have no value if liquidated on the effective date. Because the Disclosure Statement does not provide adequate support for the values that Lehman uses, it does not provide

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

13

adequate information for a creditor to make an informed decision on whether to support or oppose the Lehman Plan.

### 8. The Disclosure Statement Fails to provide Adequate Disclosure of how much Unsecured Creditors of the Group Two Estates Can Expect to be Paid

Section 5.3.8 of the Lehman Disclosure informs unsecured creditors of the Group Two Projects that they will receive either (a) 100% of their claim plus interest or (b) distributions totaling the value of the applicable project subtracting senior liens. *Lehman Disclosure Statement* § 5.3.8, p. 112. However, the Lehman Disclosure Statement does not adequately disclose the appraisals that it used to calculate the Project Value. Because a creditor of the Group Two Debtors cannot evaluate whether the Project Value included in the Disclosure Statement is consistent with the actual property value, it cannot adequately determine whether it is better off voting for the Lehman Plan or having a trustee liquidate the estate.

### **RESERVATION OF RIGHTS.**

The Committee acknowledges that the hearing on the Disclosure Statement normally is not a suitable context for raising objections to the confirmation of a plan. In light of this belief, and the traditional limited scope of a hearing to approve a disclosure statement, the Committee does not raise any such objections to the Lehman Plan at this time. The Committee reserves the right to make any and all confirmation objections in connection with the confirmation hearing.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

14

## CONCLUSION

Based on the inadequacies in the Disclosure Statement, the Committee requests that the Court deny approval of the Disclosure Statement at this time, or alternatively, order that Lehman correct all of the errors and omissions in the Disclosure Statement and Lehman Plan, and hold a further hearing after creditors have had an opportunity to review and object to the amended disclosure statement.

Dated: April 29, 2011

IRELL & MANELLA LLP

By: /s/ Kerri A. Lyman
Alan J. Friedman
Kerri A. Lyman
Counsel for the Official Unsecured Creditors
Committee in Chapter 11 Cases of Palmdale
Hills Property, LLC et al.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF THE
VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST
AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS

15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 840 Newport Center Drive, Suite 400, Newport Beach, CA 92660.

The foregoing document described as: **OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 29, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On April 29, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
SERVED VIA U.S. MAIL:
Chambers of the Honorable Erithe A. Smith
United States Bankruptcy Court
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/29/11 | Leslie Wolchuck | /s/ Leslie Wolchuck |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

2422214.1 02

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** :

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com

- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org


- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

**SERVED VIA FIRST-CLASS MAIL:**

| | |
|---|---|
| Attorneys for Lehman Commercial Paper and Lehman ALI, Inc.<br>Richard M. Pachulski, Esq./Dean A. Ziehl, Esq. and Robert B. Orgel, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, CA 90067-4100 | Attorneys for Lehman Commercial Paper and Lehman ALI, Inc.<br>Edward Soto, Esq./Shai Y. Waisman, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119 |
| Office of the U.S. Trustee<br>Attn: Michael Hauser, Esq.<br>411 W. Fourth Street, #9041<br>Santa Ana, CA 92701-4593 | |