1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  Robert B. Orgel (CA Bar No. 101875)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California  90067-4100
4  Telephone: (310) 277-6910
   Facsimile:  (310) 201-0760
5
6  WEIL, GOTSHAL & MANGES LLP
   Edward Soto (admitted *pro hac vice*)
7  1395 Brickell Avenue, Suite 1200
   Miami, FL 33131
8  Telephone:  (305) 577-3125
   Facsimile:  (305) 374-7159
9  Attorneys for Lehman ALI, Inc., Lehman
   Commercial Paper Inc., OVC Holdings LLC and
10 Northlake Holdings LLC

11          UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
12                 SANTA ANA DIVISION

13 | In re: | Case No.: 8:08-bk-17206-ES

Palmdale Hills Property, LLC, and its Related Debtors,

Chapter 11

Jointly Administered Case Nos.

Jointly Administered Debtors and Debtors-In-Possession

8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Affects:
☐ All Debtors
☑ Palmdale Hills Property, LLC
☑ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☑ SunCal Johannson Ranch, LLC
☑ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☑ SunCal Bickford Ranch, LLC
☑ Acton Estates, LLC
☑ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☑ Kirby Estates, LLC
☑ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☑ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC
☑ LB-L-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☑ LB-L-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance, LLC

**OMNIBUS REPLY OF LEHMAN CREDITORS TO OBJECTIONS FILED AGAINST:**

**(1)   DISCLOSURE STATEMENT WITH RESPECT TO <u>FIRST AMENDED</u> JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND LEHMAN CREDITORS; AND**

**(2)   DISCLOSURE STATEMENT**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    ☑  SunCal Oak Knoll, LLC

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WITH RESPECT TO <u>FIRST AMENDED</u> JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS**

<u>**Disclosure Statement Hearing**</u>:
Date:   May 13, 2011
Time:   9:30 a.m.
Place:  Courtroom 5A
        411 West Fourth Street
        Santa Ana, CA  92701

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page No.**

I. PRELIMINARY STATEMENT ............................................................................. 3

II. ARGUMENT ...................................................................................................... 8

   A.   The SunCal Objection Is Generally Frivolous............................................. 8

      1.   The Plans Are Feasible and the Lehman Plan Funding and Funding Obligations are Not Illusory. ........................................................................................... 8

      2.   The Lehman Creditors Provide a Fair Description of the Plans; There is No Suggestion that the "Residual Cash" to which Creditors are Entitled Will Afford Them a Meaningful Recovery. .................................................................... 11

      3.   The Lehman Creditors Disclosure Statements Provide a Fair Description of the Status of Their Claims and Adequately Describe the Disputes With Respect to the Lehman Creditors' Claims. ........................................................................ 12

      4.   The Plans' Separate Classification of Reliance Claims and General Unsecured Claims is Appropriate. ............................................................................... 13

      5.   The Plans' Preservation of Lehman's Deficiency Claims Is Appropriate. ........ 16

      6.   There is No Substantive Consolidation in the Plans. ..................................... 18

      7.   The Disclosure Statements Provide Adequate Information Concerning the Best Interests of Creditors. ................................................................................. 18

      8.   The Description of the SunCal Proponents' Plan in the Disclosure Statements Is Accurate and Not Misleading. ..................................................................... 19

   B.   The Concerns Raised in the VD Committee's Objection Are Adequately Addressed ........ 19

      1.   The VD Disclosure Statement Describes the VD Plan that is Confirmable ................... 19

         a.   The VD Disclosure Statement Affords Creditors a Straightforward Description of the Plan. ...................................................................................... 19

         b.   The Condition for Settling Bond Issuer Agreements Can be Waived And Such Agreements May be Executed Before Confirmation ............................... 20

         c.   Adequate Disclosure is Afforded of Creditor Recoveries............................ 20

         d.   The Classes for Holders of Mechanic's Lien Claims Are Not the Subject of Unfair Discrimination ......................................................................... 21

      2.   The VD Disclosure Statement Contains Adequate Information ........................ 22

   C.   The Discharge, Release, Exculpation and Related Provisions in the Plans Are Appropriate. ............................................................................................ 23

   D.   The Treatment of Secured Real Property Tax Claim is Appropriate and a Confirmation Matter. ................................................................................. 24

   E.   The Disclosure Statements, With Minor Modifications, Contain Adequate Information Regarding the Bond Issuers' Concerns ........................................ 26

      1.   Arch's Disclosure Concerns Are Met, With Minor Modifications. ................... 26

      2.   Bond Safeguard Objection ..................................................................... 27

         a.   Bond Safeguard Contends that the Bond Issuer Release is Too Broad .............. 27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b. Disclosure is Requested of the Manner To ensure the Replacement and/or Assumption of the Project Bonds..................................................................... 27

c. Sufficient Disclosure is Provided Regarding the Effect of Transfers of Projects......... 28

d. Sufficient Disclosure is Afforded Regarding Bond Safeguard's Indemnity Claims .... 28

F.  The VD Plan and VD Disclosure Statement Contain Provisions that Adequately Address the New Anaverde Trust Agreement and Trust Assets. ........................................ 28

III. CONCLUSION................................................................................................................. 30

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

# TABLE OF AUTHORITIES

2

Page No.

3

## Cases

*In re AOV Industries, Inc.*,
  792 F.2d 1140 (D.C. Cir. 1986) .................................................................... 15

*In re Blair*,
  538 F.2d 849 (9th Cir. 1976) ...................................................................... 5

*In re Dow Corning Corp.*,
  244 B.R. 634 (Bankr. E.D. Mich. 1999) .................................................... 15, 16

*In re DSBC Investments, L.L.C.*,
  2009 Bankr. LEXIS 2954 (Bankr. D. Ariz. 2009) ...................................... 25

*In re Entz-White Lumber & Supply, Inc.*,
  850 F.2d 1338 (9th Cir. 1988) ................................................................... 25

*In re Golden Ada, Inc.*,
  Case Nos. 97-30879, 97-30877, 97-30880, (Bankr. N.D. Cal. 2000) .......... 26

In re Johnston,
  21 F.3d 323 (9th Cir. 1994) ....................................................................... 15

In re Lowenschuss,
  67 F.3d 1394 (9th Cir. 1995) ..................................................................... 16

*In re Morande Enterprises, Inc.*,
  Case No. 9:05-00699-ALP (Bankr. M.D. Fla. 2007) ................................. 26

In re Resorts International, Inc.,
  145 B.R. 412 (Bankr. D.N.J. 1990) ........................................................... 16

*In re Virtual Network Services Corp.*,
  902 F.2d 1246 (7th Cir. 1990) ................................................................... 26

*In re W.T. Grant & Co.*,
  699 F.2d 599 (2d Cir. 1983) ...................................................................... 5

*In re Walsh Constr., Inc.*,
  669 F.2d 1325 (9th Cir. 1982) ................................................................... 5

*Liberty National Enters. v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd.
Partnership)*,
  115 F.3d 650 (9th Cir . 1997) .................................................................... 22

*Steelcase Inc. v. Johnston (In re Johnston)*,
  31 F.3d 323 (9th Cir. 1994) ....................................................................... 22

## Statutes

11 U.S.C. § 1111(b) ...................................................................................... 16
11 U.S.C. § 1124(2) ...................................................................................... 24
11 U.S.C. § 1125 .......................................................................................... 3
11 U.S.C. § 1129(b)(1) .................................................................................. 21
11 U.S.C. § 502 ............................................................................................ 5
11 U.S.C. § 502(d) ................................................................................... 5, 12
11 U.S.C. § 510(c) ........................................................................................ 5
11 U.S.C. § 524(e) ................................................................................... 15, 16
11 U.S.C. § 726(a)(4) ................................................................................... 25
Cal. Code Civ. Proc. § 580d ......................................................................... 17
Cal. Code Civ. Proc. § 726(e) ...................................................................... 17
Cal. Rev. & Tax Code § 4103 ....................................................................... 25

## Other Authorities

7 Collier on Bankruptcy,  ¶ 1129.04[3][b] .................................................... 21
7 Collier on Bankruptcy, 1129.04[b][i] ......................................................... 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, AND ALL CREDITORS AND OTHER PARTIES IN INTEREST HEREIN:**

Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("ALI" and, collectively with LCPI, the "Lehman VD Lenders"), Northlake Holdings, LLC ("Northlake Holdings"), and OVC Holdings, LLC ("OVC Holdings" and, collectively, with Northlake Holdings and the Lehman VD Lenders, the "Lehman Creditors")[1] hereby file this Omnibus Reply to the Objections (as defined below) to (i) the *Disclosure Statement With Respect to First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed By the Trustee and Lehman Creditors* [Docket No. 01876] (as amended as described herein, the "TD Disclosure Statement")[2] and (ii) the *Disclosure Statement With Respect to First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders* [Docket No. 01874] (as amended as described herein, the "VD Disclosure Statement" and together with the TD Disclosure Statement, the "Disclosure Statements").[3]  The TD Disclosure Statement was filed in support of, and describes, the *First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed By the Trustee and Subject Lehman Creditors* [Docket No. 01875] (the "TD Plan"), while the VD Disclosure Statement was filed in support of, and describes, the *First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders* [Docket No. 01873] (the "VD Plan" and together with the TD Plan, the "Plans").

Objections to the TD Disclosure Statement were filed by the following parties:

---

[1]  The Lehman Creditors are filing this Omnibus Reply in their own capacities as lenders as well as in their capacities as agents under the Lehman Loans (defined herein).

[2]  The "Trustee Debtors" in these cases are those for which a chapter 11 trustee was appointed and are as follows: SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century City, LLC (Case No. 8:08-17458-ES); SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case No. 8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley LLC (Case No. 8:08-17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES).  The TD Plan affects all of the Trustee Debtors except SunCal Century City.

[3]  All capitalized terms not defined herein have the meaning ascribed to them in the Disclosure Statements, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | Objector | Nature of Filing and/or Other Document(s) Affected | Docket No |
|---|---|---|---|
| (i) | Voluntary Debtors[4] and SunCal Management LLC. ("SunCal Management") | Objection to both Disclosure Statements | 2022 |
| (ii) | Arch Insurance Co. ("Arch") | Objection to both Disclosure Statements | 2003 |
| (iii) | Bond Safeguard Insurance Co. and Lexon Insurance Co. (collectively, "Bond Safeguard") | Objection to both Disclosure Statements | 2007 |
| (iv) | Los Angeles County Tax Collector ("LA County") | Objection to TD Disclosure Statement | 2019 |
| (v) | Alameda County Tax Collector ("Alameda Country") | Joinder to LA County Objection | 2021 |
| (vi) | U.S. Trustee | Comments | 1994 |
| (vii) | Official Joint Committee of Creditors Holding Unsecured Claims appointed in the Trustee cases the (the "TD Committee") | Limited Objections and Reservation of Rights | 2011 |

Objections to the VD Disclosure Statement (and together with the Objections to the TD

Disclosure Statement, the "Objections") were filed by the following parties:

| | Objector | Nature of Filing and/or Other Document(s) Affected | Docket No |
|---|---|---|---|
| (i) | Voluntary Debtors and SunCal Management LLC. ("SunCal Management") | Objection to both Disclosure Statements | 2022 |
| (ii) | Arch Insurance Co. ("Arch") | Objection to both Disclosure Statements | 2003 |
| (iii) | Bond Safeguard Insurance Co. and Lexon Insurance Co. (collectively, "Bond Safeguard") | Objection to both Disclosure Statements | 2007 |
| (iv) | LA County | Objection | 2020 |
| (v) | U.S. Trustee | Comments | 1992 |
| (vi) | Official Joint Committee of Creditors Holding Unsecured Claims appointed in the Voluntary Debtors' cases the (the "VD Committee") | Objection and Reservation of Rights | 2017 |
| (vii) | New Anaverde, LLC ("New Anaverde") | Limited Objection | 2006 |

---

[4] The "Voluntary Debtors" in these cases are those for which the debtors remain debtors-in-possession and are as follows: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates LLC (Case No. 8:08-17236-ES); Kirby Estates (Case No. 8:08-17246-ES); North Orange Del Rio (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows LLC (Case No. 8:08-17230-ES); SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).  The VD Plan affects Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Johannson, SunCal Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC Communities, and Tesoro.

1    For the reasons set forth herein, the Objections should be overruled to the extent not

2    addressed by certain modifications to the Disclosure Statements and/or Plans as described herein,

3    and the Disclosure Statements, as so modified, should be approved by the Court as containing

4    adequate information for purposes of section 1125 of the Bankruptcy Code.  In support hereof, the

5    Lehman Creditors respectfully submit as follows:

6                                              **I.**

7                              **PRELIMINARY STATEMENT**

8    The Lehman Creditors believe that the Disclosure Statements, with the modest modifications

9    proposed herein, contain adequate disclosure and describe Plans that are confirmable, manifestly

10   feasible and afford the applicable creditors the opportunity to elect to receive prompt cash payment.

11   The TD Disclosure Statement and VD Disclosure Statement each approximate 170 pages in length

12   and contain, among other things, relatively straightforward summary descriptions of the Plans in

13   table format in the beginning of their Disclosure Statements. The "Plan Summary" in such table in

14   the TD Disclosure Statement provides, by example:

15   To obtain conveyance of Plan Projects free and clear of most Encumbrances,
     under the Plan, the Lehman Creditors will provide the Lehman Plan Funding.
16   The Lehman Plan Funding consists of the Lehman Post-Confirmation
     Expense Funding (i.e., to fund up to $500,000 of Post-Confirmation Expenses
17   incurred during the 2 years following the Plan's Effective Date) and the
     Lehman Creditor Distribution Funding.  The Lehman Creditors' Lehman
18   Creditor Distribution Funding will fund, among others, the following
     payments to Creditors:
19

20   (a) amounts payable under the Plan for Senior Claims; and, also

21   (b) amounts payable under the Plan for each Holder of a Reliance
     Claim or General Unsecured Claim, consisting of:  (i) the Lehman Guaranteed
22   Minimum Distribution (of 1% of an Allowed Claim); and (ii) the Lehman
     Distribution Enhancement.
23

24   The Lehman Distribution Enhancement is a payment to an accepting Creditor
     for its execution and delivery of the Creditor's Assignment / Release for
25   Lehman. The offer to each Holder of an Allowed General Unsecured Claim is
     to increase the payment to such Creditor to 5% of its Allowed Claim, despite
26   such Claim lacking what the Lehman Creditors view as the threshold
     characteristics for their potential exposure.  Because Allowed Reliance
27   Claims, as defined, meet what the Lehman Creditors view as the threshold
     characteristics for at least their potential exposure, the offer to each Holder
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

thereof, as more fully set forth below, is to increase the payment to such Holder to up to 50% of its Allowed Claim.

The Lehman Creditors also will arrange for reimbursements due under a Settling Bond Issuer Agreement to a Settling Bond Issuer as the Holder of a Settling Bond Issuer-Incurred Future Work Obligation.

Other Assets of the Plan Debtors will be liquidated by a Liquidating Trustee and the resulting Residual Cash will be distributed to Holders of Allowed General Unsecured Claims and Allowed Reliance Claims. Holders of Interests in the Plan Debtors receive nothing.

The Plan and the extent of certain Distributions are dependent upon certain identified Claim or Distribution thresholds (or the Lehman Creditors' good faith estimate thereof) not being exceeded.

TD Disclosure Statement, Summary Information, p. 3; *see also* VD Disclosure Statement, Summary Information, p. 3.

Additionally, each of the Disclosure Statements contains detailed financial information (§ 4.2), best interests and feasibility analyses and projections showing creditors what they are projected to receive under the Plans and in chapter 7 cases (Articles VI and VII) and at least ten pages (§ 4.2.5) devoted to describing the claims against the Lehman Creditors and against their claims. (Although the three litigation proceedings commenced by SunCal beginning the week before the filing of the Disclosure Statements are not referenced, these proceedings simply allege in different forums or through allegedly different methods the same facts and law already discussed in the Disclosure Statements). The Lehman Creditors believe their Disclosure Statements and Plans are ready to be sent to creditors for voting.

Yet, SunCal makes the leading argument in its objection to the Disclosure Statements ("SunCal Objection") another request to the Court to stay the plan processes.[5] SunCal justifies this further request for a stay of the plan process as a necessary, coercive tool to make the Lehman Creditors agree to participate in extensive discovery of tens of thousands of documents and tens or more of depositions, all purported to be necessary to SunCal in connection with the barrage of recent litigation instigated by SunCal against the Lehman Creditors. Alternatively, SunCal argues that such discovery is necessary to show at confirmation whether the settlement offers in the Plans afford

---

[5] SunCal also has filed a separate motion for the same purpose, to which the Lehman Creditors will separately respond.

creditors at least as much as they would get in a chapter 7 case. Neither argument makes any sense.

Confirmation of the Plans does <u>not</u> require extensive discovery. For settlements, a "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken by the Bankruptcy Court. *See In re Blair*, 538 F.2d 849 (9th Cir. 1976); *In re Walsh Constr., Inc.*, 669 F.2d 1325 (9th Cir. 1982). In reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983).  The Disclosure Statements already include over 10 pages each discussing the claims against the Lehman Creditors and against their claims (§ 4.2.5) and the SunCal disclosure statements include approximately 16 pages each (SunCal's disclosure statement for "Group I Debtors," pp. 32-40 & 46-54).

SunCal's other premise, that beginning the discovery now will enable SunCal to subordinate or disallow the Lehman Creditors' claims prior to plan confirmation, is nigh on to ridiculous. Even ignoring the myriad of other failings associated with SunCal's litigation barrage,[6] completion of this claim objection process is likely to take more than even several months. Where a claim objection is met with opposition requiring substantial discovery, an ultimate trial and live witnesses and opportunities for summary proceedings prior thereto, the hearing on the claim objection typically is treated as a status conference.  Appreciating that SunCal contends, wrongly the Lehman Creditors believe, that it can effectively subordinate through its claim objection substantially all of the Lehman Creditors' claims of over $2 billion, it seems likely that the Court would afford some meaningful opportunity for the parties to litigate this matter.  A number of factors will determine when trial on

---

[6] In the appropriate, separate responsive pleadings to SunCal's motions, complaints and claim objection, the Lehman Creditors will explicate their views that, among other things: (a) When this Court previously dismissed the Bankruptcy Code § 502(d) claims against LCPI contained in SunCal's prior complaint, this Court held that those claims could not be brought without prior stay relief in LCPI's bankruptcy.  SunCal included those very same claims in its now pending motion for disallowance under Bankruptcy Code § 502(d) without obtaining such stay relief in blatant disregard of this Court's prior ruling. Asserting the claims by motion instead of by complaint does not change their character; and (b) SunCal mistakenly contends that by re-badging its equitable subordination claims as a so-called "recoupment" objection it not only avoids LCPI automatic stay issues, but also can effectively still use this objection to change the priority of the Lehman Creditors' claims as compared to other creditors' claims. Yet, an objection to a claim under Bankruptcy Code § 502 seeking offset (whether by "recoupment" or setoff) can only reduce the amount of the claim. Only Bankruptcy Code § 510(c) provides for equitable subordination of one allowed claim to another.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the claim objection ultimately would occur but, absent the stay motion and regardless of whether

discovery is moving forward, it is highly unlikely trial would occur on the claim objection before the

plan confirmation hearing(s) would take place.

With the proposed discovery having no meaningful relevance to any timely held

confirmation hearing, it is apparent that the real purpose of the stay request is not to obtain the

discovery; it is to obtain the stay.  For the reasons, *inter alia*, detailed at length in the numerous

objections to the SunCal Plans (including the Lehman Creditors' objections [Docket # 02026] (the

"Lehman Objection"), SunCal's disclosure statement and plan require material revision. Most

critically, in the Lehman Objection, the Lehman Creditors have alleged, *inter alia*, that SunCal lacks

the resources to confirm its plans:

> SunCal's problem is not the Lehman Stay, it is that it lacks money to pay a
> plan's effective date obligations, and that its plans are not winnable.  The
> former problem is reflected by absence of any mention in the SunCal Discos
> of the financial wherewithal of anyone (as well as the unsatisfied writ of
> attachment for $7.9 million against Elieff and Acquisitions).  The latter
> problem is inherent:  SunCal is offering creditors the possibility of receiving
> net proceeds from highly speculative litigation that would take years to
> resolve (even with immediate relief from the Lehman Stay as to the Group I
> Debtors and Group II Debtors), while the Lehman Creditors and the Trustee
> for the Trustee Debtors are proposing under the Lehman/Trustee Plans
> immediate payment of 40-50 cents on the dollar to accepting creditors that are
> beneficiaries of the equitable subordination claims.

Objection, pp. 10-11.  Without adequate resources to fund their plans, it is not surprising that SunCal

seeks to delay the plan process. The Lehman Creditors believe that SunCal has it backwards.

The Plans both offer non-priority unsecured creditors percentage recoveries, but for certain

classes and creditors these can be adjusted downwards if claims prove too high and the Plans include

contingencies enabling the Lehman Creditors to elect, before the Effective Dates, not to go forward

if the Lehman Creditors believe in good faith that claims or distributions would exceed certain

specified levels. Both the VD Committee and TD Committee have indicated in their comments /

objections essentially that they would like more disclosure as to whether claims thresholds are

expected to be exceeded and would like to discuss or obtain waiver or elimination of payment or

dilution caps or conditional thresholds contained in their Plans.  Yet, at the same time that these

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

constituencies are asking the Lehman Creditors to consider taking more financial risk to obtain under the Plans conveyance of the Projects and a release of claims, SunCal has sought (sometimes in violation of the LCPI stay and contrary to this Court's rulings) to make this process far more costly for the Lehman Creditors by ramping up litigation and discovery as to the same claims against the Lehman Creditors that the Plans propose to compromise. The Lehman Creditors believe that all litigation that would be compromised under the Plans should be stayed until after the hearing on confirmation of the Plans.

With the few changes that the Lehman Creditors and/or Trustee propose to make to the Disclosure Statements and/or Plans, the Disclosure Statements should be approved as containing adequate information.  Although the Lehman Creditors are not presently prepared to agree to take more financial risk on claims or distribution levels than set forth in the Plans, as of the filing of the Disclosure Statements, the Lehman Creditors estimate that creditors would receive under the Plans the maximum estimated distributions therein based on known claims (and will amend their Disclosure Statements to more expressly reflect this).  Still, the Lehman Creditors are attempting, by confirmation, to themselves better understand the claims.  Moreover, to the extent that the claims allowance and executory contract processes go forward as to claims subject to the caps or thresholds under the Plans, more and more of these claims estimates can become certainties.

By confirmation, the Lehman Creditors are hoping to have additional facts and certainties as to claims so that they have more information with which to make their determinations as to whether the Plans' claims conditions are met.  For the cases of the TD Plan Debtors, the claims allowance process is underway.  The Lehman Creditors and Trustee have completed proceedings as to numerous duplicate and late-filed claims and recently filed objections to the large SunCal claims. The Lehman Creditors also are analyzing other claims and intend to work with the Trustee to move forward together to obtain the actual disallowance of appropriate disputed claims and in ferreting out possible unknown claims. As to the cases of the VD Plan Debtors, the Lehman Creditors are not aware of any meaningful activity by the Voluntary Debtors in addressing broadly the claims' allowance process or any intentions of the Voluntary Debtors to do so.  The Voluntary Creditors indicated, instead, in connection with the Lehman Creditors' voting procedures motion, that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman Creditors should object to the claims they find objectionable.  The Lehman Creditors expect

to begin moving that process forward as confirmation approaches in the cases of the VD Plan

Debtors.

## II.

## ARGUMENT

**A.    The SunCal Objection Is Generally Frivolous**

    **1.    The Plans Are Feasible and the Lehman Plan Funding and Funding Obligations are Not Illusory.**

       Although feasibility of the VD Plan and TD Plan is a confirmation issue; feasibility is

abundantly clear.  Section 5.44 of both Disclosure Statements provides:

> Under the Plan, the Lehman Creditors have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding. Although one of the Lehman Creditors, Lehman Commercial, is a debtor in a chapter 11 case (administratively consolidated with other cases including that of its indirect parent, LBHI) in which there is substantial prepetition debt,[Note] the Lehman Creditors have ample cash to fulfill their obligations under the Joint TD Plan and Joint VD Plan.  In fact, the February 2011 monthly operating report filed on March 18, 2011 in the New York Bankruptcy Court [Docket No. 15194] reflects ending unrestricted cash and investments that includes cash in demand-deposit accounts, money-market funds, treasury bills and other investments held by Lehman Commercial of approximately $2.726 billion and, together with LBHI, a combined total of $3.669 billion.

> Note: The Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, Dated January 25, 2011, filed on January 25, 2011 in the New York Bankruptcy Court [Docket No. 14151], attached as an exhibit to a Request for Judicial Notice being Filed by the Lehman Creditors with the Bankruptcy Court simultaneously with the initial Filing of this disclosure statement, reflects approximately $623.781 billion in claims have been filed against Lehman Commercial and its parent LBHI.  (The validity of some of such claims has been or will be challenged.)

*See, e.g.*, TD Disclosure Statement, § 5.44.

       The contention of SunCal that, under the TD Plan and VD Plan, the Lehman Creditors have

made an "illusory" funding offer is plain wrong. SunCal Objection, p. 12-13.  Under the Plans, the

Lehman Creditors are to receive back on the Effective Date their Cash Collateral as partial payment

toward their unpaid loans.  Disclosure Statements, § 5.3.2(d).  As to the Voluntary Debtors, SunCal

alleges, on the one hand, that the Lehman Creditors are funding the plan with cash of the Debtors

that the Lehman Creditors "unilaterally categorize [] as cash collateral, when in fact Lehman is well

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

aware of the fact that this is not the case." SunCal Objection, p. 12-13.  But, on the other hand,

SunCal essentially concedes in a footnote in the same discussion that Lehman does have a perfected

lien on at least $16.8 million of the Voluntary Debtors' $22.3 million of cash:

> "[T]he Voluntary Debtors have cash balances totaling approximately $22.3 million. . . The only deposit control agreement . . . is referred to as . . . the "SB Account" . . . The SB Account has a balance of $16.8 million. All other accounts . . . are not subject to perfected liens."

*Id.* That leaves only $5.5 million of disputed cash collateral (identified as such in the VD Disclosure

Statement, § 4.2.3(a)). Senior Claims of the Voluntary Debtors alone are estimated to be almost $15

million. VD Disclosure Statement, § 4.2.4(b).  Thus, clearly, the Lehman Creditors' commitment to

pay, *inter alia,* the Senior Claims is plan funding. There is nothing illusory about it.

SunCal is wrong in stating (SunCal Objection, 13) that all but one of the Lehman Creditors

funding obligations are qualified by the term "may" fund and that the party to provide the funding is

not disclosed:

> Under the Plan, the Lehman VD Lenders, for the benefit of other Creditors, will provide the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding for payment of Post-Confirmation Expenses.
>
> and
>
> Under the Plan, the Lehman Creditors will provide for the benefit of other Creditors the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding for payment of Post-Confirmation Expenses (inclusive of repayment to the Lehman Creditors for their Administrative Claims that presently exceed $33.5 million and the additional $7 million of new Lehman Administrative Loans estimated to be made after March 28, 2011).

Plans, § 3.2.1 (emphasis added).

> Under the Plan, the Lehman VD Lenders have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding.
>
> and
>
> Under the Plan, the Lehman Creditors have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding.

Plans, § 8.4 (emphasis added).

Once more, SunCal is wrong, this time in claiming that the Lehman Creditors receive a

prospective injunction "from compelling them to perform under the Lehman Plans," citing to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Creditor's Assignment/Release for Lehman and the plan injunction.  SunCal Objection, p. 15.

2  SunCal contends the release and injunction make this a "unique 'we will perform if we want to'

3  provision." *Id.*  Yet, the Creditors' Assignment / Release for Lehman in both cases (the form of

4  which was negotiated with the TD Committee) expressly excepts obligations under the Plans:

5  "neither the assignment nor the release shall include . . . a Creditor's rights under this Plan to the

6  Lehman Creditor Distribution Funding."  VD Disclosure Statement, §5.4.9(a), p. 132.  Additionally,

7  the released Lehman Released Claims are defined to exclude "an obligation of a Lehman VD Lender

8  expressly set forth as arising under the Plan." VD Plan, Ex. D, #110.  Further, the plan injunction

9  begins, "Except as otherwise expressly provided in the Plan . . . ." (emphasis in the original.) *See,*

10  *e.g.*, VD Disclosure Statement, § 5.8, p. 148.

11      Finally, SunCal posits that confirmation of a plan or plans in the cases of LCPI or its parent

12  or affiliates makes feasibility questionable because a new control party might withdraw the Plans

13  before confirmation.  SunCal cannot say that there is any statement in any pending plan that a

14  potential new control party actually intends to withdraw the Suncal plan, because nothing about this

15  is indicated. Although the risk of board replacement is always present, regardless of whether there is

16  a competing plan, board replacement, alone, does not mean that a plan would or could be withdrawn.

17  What the Disclosure Statements do disclose is LCPI's status as a debtor in a bankruptcy proceeding

18  and the need for approval of the New York Bankruptcy Court (which, as indicated, was obtained for

19  the TD Plan prior to the last scheduled disclosure hearing for the original version of the Disclosure

20  Statements.)  *See, e.g.*, VD Disclosure Statement, § 5.4.4.  Anything else would be unwarranted

21  speculation.

22      **2.    The Lehman Creditors Provide a Fair Description of the Plans; There is
23          No Suggestion that the "Residual Cash" to which Creditors are Entitled
            Will Afford Them a Meaningful Recovery.**

24      SunCal accuses that "Lehman represents to the creditors that they will receive a pro rata

25  share of the "Residual Cash" . . . [T]his source of cash is illusory." SunCal Objeciton, p. 11.  Yet,

26  again, SunCal is plainly wrong.  First, in the Summary Information at the beginning of each

27  disclosure statement, each reference to receipt of Residual Cash as part of class treatment for non-

28  priority, unsecured creditors refers to receipt of "Residual Cash, if any."  TD Disclosure Statement,

1  Summary Information, pp. 9-10; VD Disclosure Statement, Summary Information, pp. 10-11

2  (emphasis added).  Second, the Residual Cash is defined as net remaining assets including Litigation

3  Recoveries. The Disclosure Statements expressly state that "there is no basis for a present estimate

4  of any value for the other Litigation Claims, primarily consisting of Avoidance Actions."  VD

5  Disclosure Statement, Art. VI, p 158.  Moreover, each Disclosure Statement reveals in the section on

6  "Risk Factors" the uncertainty of any recovery of Residual Cash.  *See, e.g.:*

> The existence of any Residual Cash for Distribution for a VD Plan Debtor's Estate is
> dependent, first, on revenue from the liquidation by the Liquidating Trustee of any
> Remaining Other Assets of such Estate, including any applicable Net Cash Litigation
> Recoveries in which such Estate has an interest.  That any such revenues will materialize is
> uncertain.

10  VD Disclosure Statement, Article VIII (4).

11      Finally, rather than holding out the Residual Cash as a meaningful part of the consideration

12  to creditors, the Lehman Creditors (and Trustee) repeatedly focus on the Lehman Plan Funding as

13  the primary consideration to creditors under the Plans and share the Lehman Creditors' view that

14  they are paying creditors under these Plans as a cost of buying peace. *See, e.g.:*

> The TD Plan Debtors are hopelessly insolvent and have virtually no unencumbered
> and uncommitted Cash. . . . The debt to the Lehman Creditors is secured by the TD
> Plan Debtors' primary Assets, their Projects. While the debt to the Lehman Creditors,
> secured by the Plan Projects, approximates $1.1 billion, the Plan Projects only have
> an estimated, approximate collective value of $175 million to $352.2 million. . . .
> Besides being insolvent, the TD Plan Debtors also are generating no or virtually no
> current revenue.  Yet, these Cases have been pending for over 28 months and have
> been highly litigious and, thus, costly to the TD Plan Debtors' Estates and the
> Lehman Creditors in terms of out of pocket expenses, time and delay.  . . . During the
> Cases, challenges have been asserted to the Claims of the Lehman Creditors - based
> on the debt and equity funding - and actions have been asserted to subordinate or set
> aside certain of their Claims or Liens.  Although the Lehman Creditors believe that
> the pending challenges to their Claims and claims against them are without merit,
> they also are aware that, despite their holding Liens securing obligations that
> substantially exceed the value of the Plan Projects, the TD Plan Debtors have (and
> will have) no ability to pay, in the foreseeable future, the full amount of the debt
> owed under the Lehman Loans.  Thus, the Lehman Creditors want immediate
> ownership of their collateral.
>
> . . . Thus, the Trustee believes that the Lehman Plan Funding and the agreements with
> the Lehman Creditors reflected in the Joint TD Plan are in the best interests of the TD
> Plan Debtors' Estates and their Creditors.  As a result, the Trustee is prepared to
> deliver ownership of the Plan Projects to the Lehman Creditors or their nominees on
> the terms set forth in the Plan that include the Lehman Creditors providing the
> Lehman Plan Funding for the benefit of other Creditors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

> The Voluntary Debtors contend and the Trustee, prior to the Plan, contended that the Debtors' Estates or certain of the Debtors' Creditors have substantial causes of action and challenges against the Lehman Creditors with respect to the loans and Claims of the Lehman Creditors that would result either in the subordination of the Claims of the Lehman Creditors against the Debtors to payment in full of all, or a substantial portion of the Claims of the Debtors' Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman Creditors assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors from the Lehman Creditors. The nature of these claims and the Lehman Creditors' analysis of their merits and likely value is discussed in Disclosure Statement Section 4.2.5 below.

TD Disclosure Statement, § 1.4.1. This a fair summary and there is no suggestion in the Disclosure Statements that "Residual Cash" is a meaningful part of the *quid pro quo* being offered to creditors.

### 3. The Lehman Creditors Disclosure Statements Provide a Fair Description of the Status of Their Claims and Adequately Describe the Disputes With Respect to the Lehman Creditors' Claims.

SunCal complains that the Lehman Creditors: (a) "must explain to the creditors that their claims are not allowed and in fact may never be allowed" and (b) "essentially suggest that there is no probability of success in the Lehman Adversary Proceeding," (c) "fail[] to discuss [the § 502(d) motion] that, if granted, would render the Lehman Plans unfeasible," (d) "Fail[] to Address the Voluntary Debtors' Post-Petition Claims Against the Lehman Entities and Their Agents," and (e) "Fail[] to Address the SunCal Debtors' Causes of Action for Breach of Contract and Indemnity Agrements." SunCal Objection, pp. 13, 19, 21, 23 & 24. SunCal also describes at length its recoupment objection. SunCal Objection, p. 22. Yet, as set forth above, the Disclosure Statements are replete with references to the disputes against the Lehman Creditors claims. *See, e.g.*:

> The Voluntary Debtors contend and the Trustee, prior to the Plan, contended that the Debtors' Estates or certain of the Debtors' Creditors have substantial causes of action and challenges against the Lehman Creditors with respect to the loans and Claims of the Lehman Creditors that would result either in the subordination of the Claims of the Lehman Creditors against the Debtors to payment in full of all, or a substantial portion of the Debtors' Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman Creditors assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors' Estates from the Lehman Creditors. Those claims and challenges fall into five general categories: (i) the Equitable Subordination Claims; (ii) the Fraudulent Transfer Claims; (iii) the Preference Claims; (iv) the Breach of Fiduciary Duty Claims; (iv) the Section 506(d) Claims; and (v) the Challenge to the Lehman Creditors' Proofs of Claims. The nature of these claims and the Lehman Creditors' analysis of their merits and likely value is discussed in this Disclosure Statement Section 4.2.5.

> Additionally, the Voluntary Debtors have asserted (1) that they and certain creditors of the Trustee Debtors intend to file a motion to disallow certain claims of Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Commercial and Lehman ALI pursuant to Bankruptcy Code § 502(d) of the Bankruptcy Code; (2) that the Estates have recoupment and setoff rights against the Lehman Creditors that they assert may be exercised without relief from the automatic stay from the New York Bankruptcy Court and contend are based upon the alleged pre-petition assumption by the Lehman Creditors of various liabilities incurred in the development of the Projects; and (3) that certain Lehman Related Parties (i) during the post-petition period, concealed the prepetition sale of certain loans to Fenway Capital and made misrepresentations with respect thereto, and (ii) improperly asserted that Lehman Commercial's automatic stay barred actions in the Voluntary Debtors' chapter 11 cases relating to two of such loans (because the Voluntary Debtors contend that Lehman Commercial did not own any interest therein and thus, the stay was inapplicable).  (The Lehman Creditors dispute all such allegations and are or will vigorously contest their assertion.

VD Disclosure Statement, § 4.2.5(a) (emphasis added).  Following this introduction are ten pages of discussion regarding SunCal's objections to the Lehman Creditors' claims. This is enough; the Disclosure Statements adequately disclose the disputes.

**4.     The Plans' Separate Classification of Reliance Claims and General Unsecured Claims is Appropriate**

[Arch Objection] [VD Committee]

SunCal, Arch and the VD Committee contend that the Disclosure Statements fail to provide sufficient disclosure for separate classification of Reliance Claims and General Unsecured Claims. SunCal Objeciton, p. 31.  Yet, the Disclosure Statements reveal ample information regarding the factual distinctions reasonably justifying such separate classification:

The offer to each Holder of an Allowed General Unsecured Claim is to increase the payment to such Creditor to 5% of its Allowed Claim, despite such Claim lacking what the Lehman Creditors view as the threshold characteristics for their potential exposure.  Because Allowed Reliance Claims, as defined, meet what the Lehman Creditors view as the threshold characteristics for at least their potential exposure, the offer to each Holder thereof, as more fully set forth below, is to increase the payment to such Holder to up to 50% of its Allowed Claim.

and

The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim (a) for "new value," (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) timely of record as follows: either (1) Filed by the Primary Claims Bar Date or (2) Filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the Filed Schedules by March 25, 2011 as (undisputed, non-contingent, liquidated) Scheduled Claims; but Reliance Claims exclude Insider Claims and Lehman Creditor Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims).  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.

and

The primary basis of the Equitable Subordination Action as originally Filed was that, beginning in or about August of 2007, the Lehman Creditors took over effective control of all of the material aspects of the Debtors' projects operations without regard as to whether a Lehman Related Party was the lender or whether a Lehman Related Party was an equity member and caused the Debtors to incur substantial unsecured vendor claims with the promise of payment that went unfulfilled.

TD Disclosure Statement, Summary Information, pp. 3 & 5 & § 4.2.5(b).

Each creditor can accept the offer made to it or reject it through plan voting as to its class. If the creditor rejects it, the creditor keeps its rights against the Lehman Released Parties. If it does have any rights individually to move to equitably subordinate any of the Lehman Creditors, refusal to give the release would mean those rights, to the extent they exist, are not eliminated.  For each Debtor or group of Debtors, the Lehman Creditors analyzed the various factors, including the allegations in the Lehman Adversary Proceeding indicating that the alleged inequitable conduct began at least by late summer, early fall 2007 or later. Also, the Lehman Creditors were aware that Insiders had better access to information (including that the Debtors acknowledged in writing with each loan advance that that no Lehman Released Party had any obligation to continue to provide funding).  Thus, it is reasonable and certainly rational to conclude that Insiders and persons with Claims based on "new value" provided before August 1, 2007 have materially less likelihood to assert meritorious claims for injury against the Lehman Released Parties.

Consistent therewith, to secure the Creditor's Assignment / Release for Lehman, releasing, *inter alia*, any equitable subordination claims of an individual creditor, the Lehman Creditors determined to offer, for the same release, differing amounts to certain creditors (those holding Reliance Claims as to a particular Debtor) and different amounts to other creditors of that Debtor (those holding General Unsecured Claims).[7]  Thus, while the Lehman Creditors, in their discretion, are offering differing settlements to differently situated groups of creditors to buy peace with them, the distinctions drawn are rational and offered in good faith.  Arguably similar claims may be separately classified if there is a legitimate business or economic justification.  *In re Johnston*, 21 F.3d 323, 328 (9th Cir. 1994). The classification scheme in the TD Plan and VD Plan was

---

[7] The Lehman Creditors defined Reliance Claims to include timely filed Claims for "new value" voluntarily provided or voluntarily extended to one or more of the Debtors after August 1, 2007 and prior to the applicable Petition Date, excluding, *inter alia*, claims of Insiders.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   formulated in good faith and is rational.  Moreover, the opinion in *In re AOV Industries, Inc.*, 792

2   F.2d 1140, 1150-52 (D.C. Cir. 1986), also suggests that separate classification of General Unsecured

3   Claims and Reliance Claims may not only be justified, but required.  In *In re Dow Corning Corp.*,

4   244 B.R. 634 (Bankr. E.D. Mich. 1999), the bankruptcy court, in approving separate classification of

5   domestic and foreign claims that were offered differing treatment under the plan, stated:

> There is another reason that the Plan's [separate] classification of foreign breast-implant claimants is appropriate.  *A settlement is a private agreement voluntarily reached between the parties to a dispute that legally resolves their differences.... Since it is a private agreement, the parties are free to settle on terms of their choosing.  The fact that the settlement offer contained in the Plan is more or less a "take-it-or-leave-it" proposal does not in any way make it improper or illegal. . . .*

> The Debtor made a considered judgment as to what settlement amounts the various breast-implant claimants would accept in resolution of their claims.  In ascertaining these amounts, the Debtor relied on a number of factors such as differences in substantive and procedural legal rights and differences in economic conditions. *There is nothing arbitrary, unreasonable or irrational about using such factors for this purpose. After all, settlement offers are always driven by projected litigation outcomes.* . . . But the fact that, in the Debtor's judgment, different breast-implant claims warrant different settlement offers is a perfectly "legitimate reason" to classify those claims separately. For all of the reasons expressed, the Court concludes that the Plan's classification of foreign claims complies with § 1122(a).

*Id.* at 664 (emphases added).  In connection with a settlement, even debtors "are free to settle on

terms of their choosing." *Id.* The settlements proposed under the TD Plan and VD Plan by the

Lehman Creditors have been made in good faith, with their variations among creditor groups

rationally determined. The classification scheme developed to implement these offers is appropriate.

These  settlement offers by one set of creditors offered to other sets of creditors of the

Debtors do not implicate issues concerning the scope of third party releases permitted under

Bankruptcy Code section 524.  *See In re Resorts International, Inc.*, 145 B.R. 412, 468-69 (Bankr.

D.N.J. 1990) ("Plan provisions in this case permitting individual creditors the option of providing a

voluntary release to non-debtor plan funders and other third parties does not violate Section

524(e)").  Under the Plans, each releasing third party creditor is being asked by the Lehman

Creditors, individually, to grant the Creditor's Assignment / Release for Lehman. Ninth Circuit

authorities noting that discharge of third parties cannot occur under Bankruptcy Code section 524(e)

1    are inapposite. *See In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995), *cert denied*, 517 U.S. 1243

2    (1996) (Bankruptcy Code section 524(e) prohibits confirmation of plan that would effectuate broad

3    release of pension plan of which debtor was trustee).

4        **5.    The Plans' Preservation of Lehman's Deficiency Claims Is Appropriate.**

5        [SunCal Objection, pp. 16-18]

6        The notion of SunCal that California's anti-deficiency laws apply to preclude deficiency

7    claims, withstands not even the slightest scrutiny. SunCal seems to be arguing that: (a) the California

8    law barring a deficiency after a non-judicial foreclosure applies because they claim, against all

9    reason, that the plan process – which clearly is Court-supervised and expensive - bears a close

10   resemblance to the inexpensive, out-of-court non-judicial foreclosure process; and (b) such imagined

11   similarity makes a difference despite the express provisions of Bankruptcy Code section 1111(b)

12   making recourse available to the Lehman Creditors for all loans that were recourse prepetition,

13   which constitute each and every loan except two – one owed by Tesoro and one owed by SCC

14   Communities (as to which Debtors no deficiency claim is proposed for the Lehman Creditors).

15       For their Claims arising from loans, under the TD Plan and VD Plan, the Lehman Creditors

16   are allowed both Secured Claims at the indicated collateral values and General Unsecured Claims

17   (deficiency claims) for the balance.  Plans, § 5.2.  First, under the TD Plan and VD Plan, the Lehman

18   Creditors have agreed with respect to virtually all of their Claims to take less favorable treatment

19   than that to which they believe their Claims entitle them. For their Secured Claims, they do get the

20   Projects worth a fraction of the $2 billion they are owed, but also are paying millions and millions of

21   dollars for the privilege. *See* Disclosure Statements, §5.4.4.  For any Sr. Secured Mechanic's Liens or

22   Reliance Claims that they obtain (such as from taking assignment of such claims held by Bond

23   Issuers), they have agreed only to share in "Available Cash" and receive no other consideration. *See,*

24   *e.g.,*  VD Disclosure Statement, §§ 5.3.3(d), 5.3.6(d), & 5.3.7(e).  <u>For the deficiency claims, these</u>

25   <u>are all classified in the classes of General Unsecured Claims and the Lehman Creditors have agreed</u>

26   <u>to forego payment altogether on these Claims.</u> *See, e.g.,* VD Disclosure Statement, §§ 5.3.7(e).

27       Bankruptcy Code § 1111(b)(1)(A)(ii) expressly provides that recourse is denied to a creditor

28   only when "such holder does not have such recourse and such property is . . . to be sold under the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

plan."  The Lehman Creditors have reviewed their loans.  All of the Lehman Creditors' Claims for loans are recourse loans other than the as to SCC Communities (the owner of the Joshua Ridge Project) and Tesoro (the owner of the Tesoro Project). For those two debtors, the VD Plan signifies that no deficiency claim is allowed for the Lehman Creditors as General Unsecured Claims against such two Debtors.  VD Disclosure Statement, §§ 4.2.4 & 5.2.  For all other Debtors against which the Lehman Creditors have asserted Secured Claims, their claims are recourse and allowance of deficiency claims is appropriate.

SunCal argues that this Court should disregard Bankruptcy Code section 1111(b) and find that the allowance of deficiency claims for the Lehman Creditors violates California's anti-deficiency laws, Cal. Civ. Proc. Code sections 580d and 726(e), because the plans provide that the Lehman Creditors get the Projects under the Plan and, if they obtained the projects by foreclosure, they wouldn't have deficiency claims.  This argument is nonsensical on several counts. First, even under California law, the Lehman Creditors could judicially foreclose and obtain deficiency judgments. Second, the Lehman Creditors are not "foreclosing" on the Projects, they are paying millions and millions of dollars through the Lehman Plan Funding to get the Projects. Third, these plans just are not non-judicial foreclosures. The plan process is a alternative process through which creditors may get paid or treated, but it is not a non-judicial foreclosure. This process involves high costs and close court supervision.  In short, Cal. Code Civ. Proc. § 580d is completely irrelevant to the instant matter, and accordingly, the Lehman Creditors are entitled to deficiency claims.

**6.    There is No Substantive Consolidation in the Plans.**

[SunCal Proponents, pp. 31-32]

The Plans are clear that no substantive consolidation is occurring. As to Post-Confirmation Expenses, as to which SunCal alleges *de facto* substantive consolidation, the TD Plan, by example, provides:

<u>Lehman Post-Confirmation Expense Funding</u>.

Under the Joint TD Plan, <u>the Lehman Creditors have agreed to pay</u> an amount (with such amount not to exceed $500,000 and which shall not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) <u>for Post-Confirmation Expenses</u> in the form of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

new Cash transfers or by a Lehman Creditor permitting the use of Cash Collateral of a Lehman Creditor, <u>each as loans payable by each benefitted TD Plan Debtor's Estate</u>, provided that the <u>recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets</u>.

Emphasis added. TD Disclosure Statement, § 5.4.4(b). *See also* VD Disclosure Statement, § 5.4.4(b).

More generally, the TD Plan provides:

> The Plan does not intend to and does not provide for substantive consolidation of any of the TD Plan Debtors for any purpose, *e.g.*, for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests, including calculations of Distributions among creditors, or for the obligations created under the Plan with respect to Distributions for Creditors.

TD Disclosure Statement, § 5.2; *see also* VD Disclosure Statement, § 5.2.

**7.    The Disclosure Statements Provide Adequate Information Concerning the Best Interests of Creditors.**

SunCal complains that the Lehman Creditors fail to disclose that if a chapter 7 trustee could fund the litigation against the Lehman Creditors, the other creditors would receive as much as 100% on their claims.  SunCal Objection, p. 26.  SunCal, once again, is mistaken.  This disclosure is made. *See, e.g.*:

> The Lehman VD Lenders contend that the equitable subordination claims asserted in the ES Action are without merit.  <u>If</u>, however, <u>the litigation</u> with respect to equitable subordination <u>could be adequately funded in a chapter 7 liquidation</u> (or under an alternative plan), <u>and were successful</u>, <u>holders of claims determined to be beneficiaries</u> of equitable subordination and as to which creditor specific injury was shown <u>could be paid in full or in part and, thus, may be paid more than is proposed under the Plan</u>.
>
> * * *
>
> As to the fairness of the Distributions for Allowed Reliance Claims with respect to the equitable subordination claims, the Lehman VD Lenders believe the Lehman Plan Funding results in fair value for the VD Plan Debtors' Assets based on the complexities of the ES Action with respect to the equitable subordination claims, the lack of definitive funding for the prosecution thereof and for the maintenance of the Plan Projects and VD Plan Debtors' Estates pending resolution of the ES Action, the delay attendant to prosecution of the ES Action as to at least Lehman Commercial due to the automatic stay in its bankruptcy case and the high evidentiary hurdles for either recovery for an individual Creditor or to substantively consolidate multiple VD Plan Debtors to enable recoveries for a broader group of Creditors.

VD Disclosure Statement, Art. VI, pp. 158 & 161 (emphasis added).

**8.    The Description of the SunCal Proponents' Plan in the Disclosure**

1

**Statements Is Accurate and Not Misleading.**

2

The Lehman Creditors believe that the Disclosure Statements' descriptions of the SunCal

3

Proponents' plans are accurate and that the Disclosure Statements adequately note the disagreement

4

of SunCal, notwithstanding SunCal's assertions to the contrary (SunCal Objection, pp. 29-31):

5

> The Voluntary Debtors and Acquisitions have and are believed to continue to dispute

6

> certain characterizations and descriptions of their proposed plans and positions as set forth in this Disclosure Statement.

7

VD Disclosure Statement, § 1.4.2.

8

**B.     The Concerns Raised in the VD Committee's Objection Are Adequately
        Addressed**

9

10

**1.     The VD Disclosure Statement Describes the VD Plan that is Confirmable**

The Plan is confirmable and should be sent out for voting.

11

12

**a.     The VD Disclosure Statement Affords Creditors a
        Straightforward Description of the Plan**

13

The VD Committee objects that the VD Plan is too complex and prohibits creditors from

14

understanding the proposed treatment of their claims, which prevents creditors from making an

15

informed choice to accept or reject.  Yet, as set forth above, the Summary Information provided in

16

table format on pages 3 through 12 of the VD Disclosure Statement and the narrative summary on

17

pages 15 to 24 in § 1.8 of the VD Disclosure Statement ensure that creditors can sufficiently

18

understand the VD Plan to vote on it.  A summary of financial information in the VD Disclosure

19

Statement includes in § 4.2.4(b) a footnoted chart estimating claims. Estimates of assets also are set

20

forth in VD Disclosure Statement § 4.2. Further, separate charts estimating distributions under the

21

Plan and under a chapter 7 case are provided with explanations in Article VI of the VD Disclosure

22

Statement.

23

**b.     The Condition for Settling Bond Issuer Agreements Can be
        Waived And Such Agreements May be Executed Before
        Confirmation**

24

25

[Bond Safeguard]

26

The VD Committee and Bond Safeguard argue that the Disclosure Statement must be denied

27

because the Lehman Creditors have been unable to come to agreement with the Bond Issuers for a

28

Settling Bond Issuer Agreement. Yet, because the Plans provide that the Lehman Creditors can

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

waive (as Bond Safeguard acknowledges) the requirement of entering into a Bond Issuer Settlement Agreement, it is a confirmation issue. *See, e.g.*, VD Disclosure Statement § 5.9.2(a). Also, the Lehman Creditors, in any event, continue to negotiate with the Bond Issuers and are hopeful of reaching Settling Bond Issuer Agreements with both Bond Issuers.

### c.    Adequate Disclosure is Afforded of Creditor Recoveries

The VD Committee further contends that the VD Plan cannot be confirmed because the percentage payable to creditors cannot be definitively determined at this time. VD Committee Objection, p. 12. The VD Committee proves too much. Many, many plans, are confirmed where estimates of distribution are provided. With most liquidating plans, it is all that can be provided.  To the extent that the Disclosure Statements are insufficiently clear, however, the Lehman Creditors / Trustee propose to add to the end of Article VI of each Disclosure Statement the following statement:

> Based on their review and understanding of known Claims, presently the Lehman [Creditors] [VD Lenders] estimate that holders of General Unsecured Claims and Reliance Claims will receive under the Joint [TD][VD] Plan the maximum estimated distributions to be provided from the Lehman Plan Funding.

The VD Committee also alleges, without understandable explanation, that the aggregate $20 million caps with respect to Senior Claims for Group I Debtors and Group II Debtors under the VD Plan are not realistic. The bases for the Committee's suppositions in concluding that the Senior Claims "will almost certainly exceed the claims cap" are difficult to follow in that, in preparing the Disclosure Statements, the Lehman Creditors' estimated that the VD Plan Debtors' claims to be within the cap. As noted above, until the claims allowance and executory contract processes are complete, certainty is not possible. Nonetheless, under the terms of the VD Plan, this issue will be fleshed out before any Effective Date can occur.

### d.    The Classes for Holders of Mechanic's Lien Claims Are Not the Subject of Unfair Discrimination

The VD Committee contends that the Plan unfairly discriminates against holders of mechanic liens because in order for them to participate in the Lehman Distribution Enhancement, such holders must waive their secured claim and assert a general unsecured claim. VD Committee Objection, pp. 8-9.  To confirm a *nonconsensual* plan, a plan proponent must show that the "plan does not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

discriminate unfairly . . . with respect to each <u>class</u> of claims or interest that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1) (emphasis added).  In the Ninth Circuit, courts employ a four-part examination: (1) whether the discrimination is supported by a reasonable basis; (2) whether the debtor can confirm and consummate a plan without the discrimination; (3) whether the discrimination is proposed in good faith, and (4) the treatment of the classes discriminated against.  *Liberty National Enters. v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership)*, 115 F.3d 650, 656 (9th Cir . 1997), cert. denied, 522 U.S. 1110 (1998).  While this test turns to a large degree on whether the proposed discrimination has a reasonable basis and is necessary for reorganization, the lynch pin is whether "each <u>class</u> will realize the same percentage of its allowed claim."  7 Collier on Bankruptcy,  ¶ 1129.04[3][b] at 1129-80 (emphasis added).

Collier cites the example of creating a separate class for large tort claims that "dwarf" all unsecured vendor claims.  In that case, Collier points out, it could make sense to pay the unsecured vendor claims more quickly than the tort claims, if, in particular, the debtor needed to continue to work with the unsecured vendor claims in conducting its business.  "The key, however, will be paying them the same, *i.e.*, each class will realize the same percentage of its allowed claim."  Colliers, § 1129.04[b][i] at 1129-80.  *See also Steelcase Inc. v. Johnston (In re Johnston)*, 31 F.3d 323 (9th Cir. 1994) (creating different reserve requirements for different claims not unfairly discriminatory when all claims were to paid the same).

The class of holders of Allowed Sr. Secured Mechanic's Liens receives treatment affording each claim full satisfaction. VD Disclosure Statement, § 5.3.3.  Classes of non-priority, unsecured claims are not similar and, properly, get less. This class treatment is appropriate.  Moreover, it also is appropriate of the Lehman Creditors to limit their offer, to exchange receipt of a Creditors' Assignment/Release for Lehman for the Lehman Distribution Enhancement, only to classes not already receiving full satisfaction of their claims.  Further, the Lehman Creditors have no obligation and cannot be expected to keep their offer open past plan voting.  Certainly, creditors that are not made such offer or who do not accept it retain whatever rights they might have to litigate against the Lehman Creditors and later can elect either to prosecute such litigation rights or can elect, if the Lehman Creditors also then agree, to settle any claims between them.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    What creditors faced with a decision of whether to waive contentions that they hold secured

2    claims are entitled to is adequate disclosure, which is afforded.  The VD Disclosure Statement §

3    4.2.4(c) contains a disclosure of the dates of recording of each of the deeds of trust of the Lehman

4    Creditors, contains the Lehman Creditors' contention that their liens have priority over the subject

5    mechanic's lien claims and contains a very brief description of the factual circumstances that would

6    have to be alleged for a mechanic's lien to come ahead of a previously recorded lien.

7        **2.    The VD Disclosure Statement Contains Adequate Information**

8        The VD Committee makes a series of disclosure complaints:

9        a) It complains there is insufficient disclosure that if the plan is not confirmed for one

10    debtor it will not be confirmed for any debtor. VD Committee Objection, p. 11. The VD Plan was

11    constructed assuming it would be confirmed as to all VD Plan Debtors. This is expressly made a

12    condition waivable by the Lehman Creditors. *See* VD Disclosure Statement, § 5.9.2(a) & VD Plan,

13    § 14.1. Moreover, the first enumerated risk factor in Article VIII of the VD Disclosure Statement

14    entitled, "Risk Factors," is the failure of one of the conditions in Article XIV of the Plan (where this

15    condition is contained). Appropriately, Art. VIII, p. 164, states:  "That such conditions would not be

16    met is a risk that the Plan would not become effective, but these are not risks that the Plan, once

17    effective, would fail."

18        b) It complains that the Lehman Creditors need to disclose sooner that the holders of

19    claims for each Debtor are in a separate subclass. VD Committee Objection, p. 11.  No further

20    disclosure is needed. The VD Committee acknowledges that the existence of separate subclasses and

21    their purpose is disclosed, but contends it is not disclosed soon enough or in a sufficiently prominent

22    manner.  Yet, because such separate subclasses essentially relate only to voting and to the

23    distribution of any net proceeds from preference and other litigation (which are not estimated as

24    providing material value), highlighting a distinction which makes no difference for most creditors

25    would not add to the clarity of disclosure.

26        c)    It complains that the scope of the voluntary release should be set forth on the

27    ballots so that potential Reliance Creditors understand what they are giving up.  In fact, the Lehman

28    Creditors' solicitation procedures motion (to which the VD Committee has objected) includes a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  proposed form of ballot that includes the entirety of the proposed release in a form intended to be

2  virtually identical to that set forth in the Plan.

3          d)     It complains of inadequate disclosure of how the Lehman Creditors valued the

4  applicable projects.  This is a disingenuous objection.  First, adequate disclosure already is provided

5  as to the basis for the Project values set forth in § 4.2.2 of the VD Disclosure Statement.  Moreover,

6  as the VD Committee is aware, in light of the amount ($711 million in aggregate) of the Lehman

7  Creditors' loans (see Ex. 2 to the VD Disclosure Statement), the Project values would have to be

8  760% more than the prior appraisals of the Lehman Creditors Lehman and 1200% more than the

9  lower values asserted by the Voluntary Debtors before Project values would be relevant to the

10  decision-making of the creditors.

11  **C.**      **The Discharge, Release, Exculpation and Related Provisions in the Plans Are**
   **Appropriate.**

12        [U.S. Trustee] [Bond Safeguard] [LA Country Tax Collector] [Alameda Country Tax

13  Collector]

14        It appears that at least some of the several parties objecting to this necessary plan injunction

15  (found in § 5.8 of each Disclosure Statement) are objecting based on the version that was contained

16  in the original Disclosure Statements that was amended with the current versions now before the

17  Court. To make the Plans work, creditors, who are limited under the Plans to the treatment afforded

18  therein, must be prohibited from suing the Estates, the Liquidating Trustee administering them or the

19  Lehman Released Parties (funding them) based on the creditors' pre-confirmation claims for

20  amounts other than the amounts promised for payment under the Plan.  Still, clearly, the Debtors

21  should not be discharged in these liquidating cases.  After objections from the U.S. Trustee, LA

22  County and others in October 2010, this protective plan injunction was amended such that the then

23  errant inclusion of the "VD Plan Debtors" was removed as a protected party.  Thus, in the current

24  versions, there is NO DISCHARGE for the Debtors. Moreover, the following footnote was added to

25  § 5.8 of the Disclosure Statements to make clear that the current version of the protective injunction

26  does NOT prevent suit against the Estates, Liquidating Trustee or Lehman Released Parties if there

27  is an independent basis to sue them:

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[The prohibited] action on "account of any such debt, Claim or Interest" does not include an action against the Liquidating Trustee or Lehman Released Parties (or the successors or property of either of them) (a "Target") based upon an independent obligation of such Target (such as, by example, a written guaranty of such Target or an obligation of such Target arising under law based on the Target's current ownership of real property) so long as the obligation is not alleged to arise based upon the Target's post-petition involvement in these Cases or with the Plan.

**D.     The Treatment of Secured Real Property Tax Claim is Appropriate and a Confirmation Matter.**

[LA County Tax Collector] [Alameda County Tax Collector]

LA County appears to be objecting to the first proposed treatment for Class 1 Secured Tax Claims (the "§ 1124(2) Treatment").  While, again, a confirmation issue, this treatment is entirely appropriate as proper cure and reinstatement as permitted under Bankruptcy Code § 1124(2). Thereunder, an obligation, including a prepetition, fully matured obligation, can be cured and reinstated through a plan and, in connection therewith, no penalty amounts would be payable. *See In re Entz-White Lumber & Supply, Inc*., 850 F.2d 1338, 1342 (9th Cir. 1988) ("It is clear that the power to cure under the Bankruptcy Code [section 1124(2)] authorizes a plan to *nullify all consequences of a default, including avoidance of default penalties* such as higher interest.") (emphasis added); *In re DSBC Investments, L.L.C*., 2009 Bankr. LEXIS 2954 (Bankr. D. Ariz. Sept. 11, 2009).  In *DSBC Investments*, the Court ruled: "[T]here have been no changes in the law since the 1988 [*Entz-White*] decision which would dilute or change *Entz-White's* holding.  Therefore, Pivotal's claim to default interest and late charges, in view of its payoff and cure pursuant to a confirmed and final Chapter 11 plan, must be rejected as a matter of law." *Id.* at *4-*5.

Supporting this result, courts have found that non-interest tax claims may constitute penalties to be subordinated to other unsecured claims even absent any indication of inequitable or improper conduct by the taxing authority.  *See, e.g., In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir. 1990) (subordination of IRS' non-pecuniary loss tax penalty claims to other unsecured creditors in chapter 11 case was proper even without finding of inequitable conduct by IRS; "[T]he penalty provisions in the tax code are expressly meant to deter and punish: two goals in contravention of any equity or equitable considerations.  The IRS' attempt to recharacterize the tax penalty as a tax claim in order to avoid subordination is not new but it has never succeeded nor do we conclude it should be successful here."); *In re Morande Enterprises, Inc.*, Case No. 9:05-00699-ALP (Bankr. M.D. Fla.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

June 29, 2007) (order applying § 726(a)(4) (which statute automatically subordinates to fourth priority the payment of prepetition secured and unsecured claims for any fine or penalty or the like that is not compensation for actual pecuniary loss suffered by the creditor) in chapter 11 case to subordinate tax penalty claims; citations omitted).

California charges only for the principal amount of a real property tax so long they are paid timely. All of the additional charges asserted are penalty amounts: California charges ten percent on an installment as soon as it is one day late and from the beginning of the next tax year charges 1.5% per month (or 18%) annually. Clearly, particularly in light of the senior priority, secured nature of the real property tax claims, these are penalty rates.[8] Although Cal. Rev. & Tax Code § 4103 purports to recharacterize these penalties as interest for bankruptcy proceedings, "a state statute's characterization of an assessment as 'interest' rather than as a 'penalty,' is not relevant in determining whether the assessment is a penalty for the purpose of the Bankruptcy Code." *In re Golden Ada, Inc.*, Case Nos. 97-30879, 97-30877, 97-30880 (Substantively Consolidated), (Bankr. N.D. Cal. July 24, 2000), (Judge Montali); (Memorandum Decision, available at http://www.canb.uscourts.gov/judges/montali/decisions (attached as **Exhibit A**).

**E.    The Disclosure Statements, With Minor Modifications, Contain Adequate Information Regarding the Bond Issuers' Concerns**

**1.    Arch's Disclosure Concerns Are Met, With Minor Modifications.**

a.    Arch requests disclosure that: "[T]he Bonds do not cover all of the costs (and thus not all of the claims) arising out of obligations imposed by municipal plans and ordinances." The Lehman Creditors / Trustee propose to add a parenthetical in, *inter alia*, § 5.4.8(a) of both Disclosure Statements as follows: "(Project Bonds do not cover all of the costs (and thus not all of the claims) arising out of obligations imposed by municipal plans and ordinances.)" Further, they propose to add a new § 3.10 to, *inter alia*, each Disclosure Statement as follows:

Special Provisions for Allowed Settling Bond Issuer-Related Future Work Claims in Class [8 or 9, as applicable]

---

[8] *See, e.g., Virtual Network Services Corp.*, 902 F.2d 1246; *Morande Enterprises, Inc.*, Case No. 9:05-00699-ALP (Bankr. M.D. Fla. June 29, 2007).

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

For voting, the parties identified as holding Settling Bond Issuer-Related Future Work Claims against any particular [TD or, as applicable, VD] Plan Debtor (essentially one or both Bond Issuers and certain municipalities) will receive conditional and multiple Ballots.  The Class [8 or 9, if applicable] Ballot for each such Creditor will be conditional because Class [8 or 9, as applicable] will exist only if there is a Settling Bond Issuer Agreement for the applicable Bond Issuer. If neither Arch nor Bond Safeguard enter into Settling Bond Issuer Agreements, there can be no "Settling Bond Issuer-Related Claims," as defined for the applicable [TD or, as applicable, VD] Plan Debtor and these Creditors instead would hold General Unsecured Claims, or, as applicable, Reliance Claims.  Thus, the Ballot will be designed to enable that the Creditors' votes be counted as votes of holders of General Unsecured Claims or, as applicable, Reliance Claims, if there is no applicable Settling Bond Issuer Agreement. Additionally, such Creditors will receive multiple Ballots so that they can vote any other potentially Allowed Claims that they may hold.  By example, absent a Settling Bond Issuer Agreement, Bond Issuers may hold cross-indemnity claims that are believed to be General Unsecured Claims and would receive the appropriate Ballots therefor.  By example also, because Project Bonds may not cover all Claims arising out of obligations imposed by municipal plans and ordinances, municipalities may hold potential General Unsecured Claims or, if applicable, Reliance Claims and will receive the appropriate Ballots therefor.

b.      Arch also requests disclosure that: "[T]he obligations secured by the Bonds . . . run with the properties and . . . cover costs that any subsequent owner would be compelled to bear" and "surety bonds are financial accommodations that cannot be assumed and assigned" and "[a]bsent an agreement with Arch . . . the Bonds must be replaced upon the transfer of the properties."  The Lehman Creditors / Trustee propose to add the following in, *inter alia*, §§ 5.4.8(a) of both Disclosure Statements:

Arch contends, and the Proponents dispute, that (a) the obligations secured by the Project Bonds run with the properties and cover costs that any subsequent owner would be compelled to bear and (b) the Project Bonds are financial accommodations that, absent the applicable Bond Issuer's consent, cannot be assumed or assigned and must be replaced upon conveyance of the Project.

**2.      Bond Safeguard Objection**

**a.      Bond Safeguard Contends that the Bond Issuer Release is Too Broad**

The referenced release of Settling Bond Issuers to which Bond Safeguard objects is a voluntary release to be afforded if Bond Safeguard elects to settle with the Lehman Creditors.  Moreover, it is not alleged to, and does not, release future <u>claims</u> but does require the Bond Issuers to release the future owners of the Projects from those existing claims defined as the Lehman Released Claims.  Lehman Released Claims, by definition, exclude claims "unrelated in any way to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(a Creditor's) Claims, these Cases, the [TD or, as applicable, VD] Plan Debtors or the Plan

Projects." If Bond Safeguard settles, Lehman Creditors are arranging alternative consideration for its

existing Claims such that requiring Bond Safeguard to forego asserting Lehman Released Claims

against each Lehman Released Party is reasonable.

**b.    Disclosure is Requested of the Manner To ensure the Replacement
and/or Assumption of the Project Bonds**

The Lehman Creditors / Trustee <u>propose to add</u> the following to § 5.4.8(a) of each Disclosure

Statement:

> Subsequent to transfer of the Plan Projects to the Lehman Nominees (to occur on or after the Effective Date) and as a condition (under or consistent with applicable non-bankruptcy law) to the Lehman Nominees proceeding with the development of the Plan Projects, an applicable municipality, under a variety of circumstances (including in connection with an amendment to or replacement of any development agreement or subdivision improvement agreement affecting such Plan Projects), may require the applicable Lehman Nominees to cause new bonds to be issued for the benefit of such municipality and/or any contractors performing designated work on the Plan Projects in substitution of the existing Project Bonds issued in connection with such Plan Projects. If the applicable Lehman Nominees determine not to proceed with further development of the Plan Projects, issuance of such new bonds may not be required unless and until such time that the Lehman Nominees elect to proceed with the development of the Plan Projects. Pending any such issuance and replacement of existing Performance Bonds, municipalities holding Bond-Backed Claims supported by Performance Bonds of the Bond Issuers could make demand thereupon from the Bond Issuers for completion or performance of any work or improvements secured by such Performance Bonds. One or both of the Bond Issuers are believed to contend, and the Lehman Creditors dispute, that the cost of work or improvements made to the Plan Projects pursuant to a demand made on any Performance Bonds and at the expense of the Bond Issuers could be recovered from the Lehman Nominees (or any other subsequent owners of the applicable Plan Projects).

**c.    Sufficient Disclosure is Provided Regarding the Effect of
Transfers of Projects**

Although Bond Safeguard seeks disclosure of the effect of the transfer of Projects, § 5.3.2(b)

of each Disclosure Statement already reveals that the transfers of the Plan Projects will be "free and

clear of Encumbrances other than . . .  Permitted Liens." An Exhibit will be submitted with the Plan

Supplement specifying these Permitted Liens, but they are defined in each Plan to include

"restrictions and other matters of record affecting real property . . or any interest therein . . .more

particularly described on [such exhibit] [and] the effect of any building and zoning regulations, now

existing or hereafter in effect with respect to the relevant Plan Project that are not violated by the

current use of the Plan Project".

#### d.    Sufficient Disclosure is Afforded Regarding Bond Safeguard's Indemnity Claims

The Lehman Creditors / Trustee <u>propose to add</u> the following to § 5.4.8(a) of each Disclosure Statement:

> The Bond Issuers contend that all or most of the Debtors each are obligated to pay the applicable Bond Issuer the full amount of its liability incurred to any Debtor under cross-indemnities. These cross-indemnities may be avoidable either as fraudulent transfers or because some of them were not executed by each allegedly liable Debtor. In any event, the Lehman Creditors believe that, to the extent any of these are Allowed Claims, they would be General Unsecured Claims against the applicable Debtor and entitled to treatment as such.

### F.    The VD Plan and VD Disclosure Statement Contain Provisions that Adequately Address the New Anaverde Trust Agreement and Trust Assets.

New Anaverde seeks that the Lehman Proponents be required to disclose whether they intend to assume or reject the New Anaverde trust agreement ("<u>Trust Agreement</u>") regarding certain alleged trust funds ("<u>Trust Funds</u>"). New Anaverde Objection, p. 12.  Additionally, New Anaverde asks that the Lehman Proponents be required to disclose what happens to the Trust Agreement upon resolution of New Anaverde's pending turnover motion. *Id.*  Finally, New Anaverde expresses concern that the Lehman Creditors' plan injunction would improperly prevent New Anaverde from retrieving its Trust Funds. *Id.* at 14-15.

Disclosure is adequate.  The VD Disclosure Statement, § 5.7 provides the process for dealing with executory contracts under the VD Plan.  As might be expected, § 5.4.6 of the VD Disclosure Statement reveals that, as of the Effective Date, the VD Plan only vests assets of the Estates in the post-confirmation Estates to be administered by the Liquidating Trustee. If the Trust Funds are not assets of the Estates, then they won't vest in the post-confirmation Estates.

The plan injunction certainly is not intended to bar New Anaverde from taking action against the Liquidating Trustee if it is determined he is holding their funds in which he has no interest. Instead, it only prohibits specified actions against the post-confirmation Estates, Liquidating Trustee and Lehman Related Parties as to a "debt, Claim, or Interest."

# III.

## CONCLUSION

WHEREFORE, the Lehman Creditors request that the Court (i) overrule the Objections to the extent they are not addressed by the proposed modifications to the Disclosure Statements described herein, (ii) approve the Disclosure Statements, as modified as described herein, as containing adequate information, and (iii) grant such other and further relief as just and appropriate.

Dated:    May 6, 2011                PACHULSKI STANG ZIEHL & JONES LLP


                                     */s/ Robert B. Orgel*
                                     Richard M. Pachulski (CA Bar No. 90073)
                                     Dean A. Ziehl (CA Bar No. 84529)
                                     Robert B. Orgel (CA Bar No. 101875)
                                     10100 Santa Monica Blvd., Suite 1100
                                     Los Angeles, CA 90067-4100
                                     Telephone:  (310) 277-6910
                                     Facsimile:  (310) 201-0760

                                     -and-

                                     WEIL, GOTSHAL & MANGES LLP
                                     Edward Soto (admitted *pro hac vice*)
                                     1395 Brickell Avenue, Suite 1200
                                     Miami, FL 33131
                                     Telephone:  (305) 577-3125
                                     Facsimile:  (305) 374-7159

                                     Attorneys for Lehman Commercial Paper Inc.,
                                     Lehman ALI, Inc., Northlake Holdings, LLC
                                     and OVC Holdings, LLC

# EXHIBIT A

Published on *United States Bankruptcy Court* (http://www.canb.uscourts.gov)

Home > Judges > Judge Montali > Decisions > Memorandum Decision re Subordination of Tax Penalties > Content

Memorandum Decision re Subordination of Tax Penalties

»

- ☒ Printer-friendly version [1]

☒

### UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA

☒

## **MEMORANDUM DECISION**

In February 1998, the Tax Collector of the County of Contra Costa (the "Tax Collector") filed a proof of claim against Shako Real Estate Management, Inc. ("Debtor") for certain unpaid real property taxes, penalties and interest thereon; the proof claim asserted a secured claim in the amount of $160,346.30. Charles E. Sims, Chapter 7 trustee in the above-captioned consolidated cases ("Trustee") objected to the Tax Collector's claim, alleging that the delinquency penalties and redemption penalties should be subordinated to general unsecured claims pursuant to 11 U.S.C. § 726(a)(4).[1] [2] Even though the Tax Collector denominated approximately $51,681 as redemption penalties, he argued that they were not punitive impositions but "interest" on a secured claim not subject to subordination under section 726(a)(4). In making this argument, the Tax Collector relied on California Revenue and Taxation Code section 4103(b), which provides:

For purposes of an administrative hearing or any claim in a bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to subdivision (a) with respect to redemption of that property constitutes the assessment of interest.

Cal. Rev. & Tax. Code § 4103.

As noted by the Trustee in his reply, a state statute's characterization of an assessment as "interest" rather than as a "penalty" is not relevant in determining whether the assessment is a penalty for the purposes of the Bankruptcy Code:

[The state tax collection agency] correctly maintains that courts distinguishing between taxes and penalties in the bankruptcy context should look to the actual operation of the provision in question; indeed, the Supreme Court recently reaffirmed this principle. [Citations omitted]. Therefore, to determine whether [the taxing agency's] assessments are noncompensatory penalties, we look behind the statutory label ("penalty") and examine the "actual effects" of the assessments. [Citation omitted]. The Supreme Court summarized this functional analysis as follows: 'A tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute for an unlawful act.'

State of Washington v. Hovan, Inc. (In re Hovan, Inc.), 96 F.3d 1254, 1257 (9th Cir. 1996), quoting United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213 (1996). If the assessment "has no direct relation to any specific costs incurred by the state," its "actual effect" is generally punitive and not compensatory in effect. Hovan, 96 F.3d at 1257.

In this case, the "actual effect" of the redemption penalties at issue is to punish a delinquent taxpayer, rather than to compensate the Tax Collector for actual losses. The penalty is imposed at a flat rate of 18 percent per year, and bears no "direct relation to any specific costs incurred" by the Tax Collector. Id. Moreover, section 4103 does not refer to specific costs which are to be compensated by the penalty; rather, the California Revenue and Taxation Code contains two other provisions authorizing the assessment of delinquent costs, thereby compensating the Tax Collector for costs associated with the delinquency. See Cal. Rev. & Tax. Code §§ 2657 and 3351. Finally, the California Supreme Court has also recognized the true purpose of section 4103: "the statutory scheme, when considered as a whole, clearly indicates that redemption penalties are merely what the name implies -- charges for the exercise of the privilege of redeeming sold property." Weston Investment Co. v. State of California, 31 Cal.2d 390, 394, 189 P.2d 262, 264 (Cal. 1948). Because the "redemption penalties" were correctly designated as such and are punitive in nature, they must be accorded fourth priority under 11 U.S.C. § 726(a)(4).

In any event, under the Supremacy Clause of the United States Constitution, the attempted bankruptcy carve-out of section 4103 is unenforceable. Section 4103's designation of redemption penalties as interest "for purposes of . . . any claim in a bankruptcy proceeding" seemingly reflects an effort by the state legislature to avoid the priority scheme of Bankruptcy Code section 726 (in particular, subsection (a)(4)). To the extent that section 4103 adopts a bankruptcy-specific exception, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and is pre-empted by federal bankruptcy law. See Hillsborough County v. Automated Medical Labs, Inc., 471 U.S. 707, 713 (1985). Section 4103's "express reference" to bankruptcy claims "supports the conclusion that its purpose is to carve out an exception" to the priority scheme of section 726(a)(4). See DiGiorgio v. Lee (In re Di Giorgio), 200 B.R. 664, 670 (C.D. Cal. 1996), vacated on other grounds, 134 F.3d 971 (9th Cir. 1998) (provision of California Code of Civil Procedure permitting enforcement of writs of possession "notwithstanding receipt of a notice of the filing by the defendant of a bankruptcy proceeding" was preempted by the automatic stay provisions of the Bankruptcy Code). Accordingly, this court finds that the priority scheme of the Bankruptcy Code (as found in section 726) preempts section 4103.[(2)] [3]

In light of the foregoing, the court will enter an order subordinating the Tax Collector's claim for redemption and delinquency penalties to general unsecured claims and requiring the Tax Collector to

Memorandum Decision re Subordination of Tax Penalties
Case 3:08-bk-77206-LБ   Doc 2049   Filed 05/06/11   Entered 05/06/11 21:36:02   Desc   Page 3 of 3
Main Document    Page 38 of 41

refund the any amounts paid for these penalties to the Trustee. The Trustee should prepare an order in accordance with this memorandum decision, and comply with B.L.R. 9021-1 and 9022-1.

Dated: July 24, 2000 _____ Dennis Montali United States Bankruptcy Judge

1. Section 726(a)(4) provides:

(a) Except as otherwise provided in section 510 of this title, property of the estate shall be distributed --

* * *

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary. Or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

2. The court requested the parties to address the meaning of the reference to "administrative hearing" in section 4103 in order to learn whether the concept of penalties deemed interest applied in any meaningful way beyond the bankruptcy setting. While the Trustee's counsel offered some suggestions, the Tax Collector's counsel could not identify any administrative hearings where penalties might be subordinated. This reinforces the court's belief that section 4103(b) constitutes an impermissable attempt to subvert the priorities established by the Bankruptcy Code.

☒ goldenada

NOTE: File also available in pdf format. ©2007 United States Bankruptcy Court, Northern California. All Rights Reserved.

Source URL (retrieved on *05/06/2011 - 17:18*):
http://www.canb.uscourts.gov/node/896

Links:
[1] http://www.canb.uscourts.gov/print/896
[2] http://www.canb.uscourts.gov/node/896#N_1_
[3] http://www.canb.uscourts.gov/node/896#N_2_

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **OMNIBUS REPLY OF LEHMAN CREDITORS TO OBJECTIONS FILED AGAINST: (1) DISCLOSURE STATEMENT WITH RESPECT TO FIRST AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND LEHMAN CREDITORS; AND (2) DISCLOSURE STATEMENT WITH RESPECT TO <u>FIRST AMENDED</u> JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 6, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On **May 6, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

<u>SERVED VIA FEDEX</u>
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 6, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

<u>SERVED VIA EMAIL</u>

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
    bcook@suncal.com
(3) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com
    Martin Pritikin - mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue - mneue@thelobelfirm.com
(6) Ch. 11 Trustee (c/o Squar Milner):
    Steven N. Speier - sspeier@squarmilner.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov

(8) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A Lyman - klyman@irell.com
(9) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B Meltzer - hmeltzer@wgllp.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Clay Roesch - clay.roesch@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Chauncey Cole - chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Joseph A Eisenberg - jae@jmbm.com
Mark McKane - mark.mckane@kirkland.com
Atty for Bond Safeguard & Lexon - mea@amclaw.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 6, 2011 | Megan Wilson | /s/ Megan Wilson |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                     **F 9013-3.1.PROOF.SERVICE**

## I.  SERVED BY NEF

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1)  Selia M Acevedo for Atty Miller Barondess LLP
     sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2)  Joseph M Adams for Def The City of San Juan Capistrano
     jadams@sycr.com

(3)  Raymond H Aver for Debtor Palmdale Hills Property, LLC
     ray@averlaw.com

(4)  James C Bastian for Cred ARB, Inc.
     jbastian@shbllp.com

(5)  Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
     Well & Pump
     sbelden@kleinlaw.com, ecf@kleinlaw.com

(6)  John A Boyd for Int Pty Oliphant Golf Inc
     fednotice@tclaw.net

(7)  Mark Bradshaw for Int Pty Courtesy NEF
     mbradshaw@shbllp.com

(8)  Gustavo E Bravo for Cred Oliphant Golf, Inc.
     gbravo@smaha.com

(9)  Jeffrey W Broker for Cred Bond Safeguard Ins Co
     jbroker@brokerlaw.biz

(10)  Brendt C Butler for Cred EMR Residential Properties LLC
      BButler@mandersonllp.com

(11)  Andrew W Caine for Cred Lehman ALI, Inc.
      acaine@pszyjw.com

(12)  Carollynn Callari for Cred Danske Bank A/S London Branch
      ccallari@venable.com

(13)  Cathrine M Castaldi for Cred SunCal Management, LLC
      ccastaldi@rusmiliband.com

(14)  Tara Castro Narayanan for Int Pty Courtesy NEF
      tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15)  Dan E Chambers for Cred EMR Residential Properties LLC
      dchambers@jmbm.com

(16)  Shirley Cho for Cred Lehman ALI, Inc.
      scho@pszjlaw.com

(17)  Vonn Christenson for Int Pty Courtesy NEF
      vrc@paynefears.com

(18)  Brendan P Collins for Cred Gray1 CPB, LLC
      bpcollins@bhfs.com

(19)  Vincent M Coscino for Petitioning Cred CST Environmental Inc
      vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20)  Paul J Couchot for Cred SCC Acquisitions, Inc.
      pcouchot@winthropcouchot.com,
      pj@winthropcouchot.com;sconnor@winthropcouchot.com

(21)  Jonathan S Dabbieri for Int Pty Courtesy NEF
      dabbieri@sullivan.com,
      hill@sullivanhill.com;mcallister@sullivanhill.com;
      stein@sullivanhill.com;vidovich@sullivanhill.com

(22)  Ana Damonte for Cred Top Grade Construction, Inc.
      ana.damonte@pillsburylaw.com

(23)  Vanessa S Davila for Cred Bond Safeguard Ins Co
      vsd@amclaw.com

(24)  Melissa Davis for Cred City of Orange
      mdavis@shbllp.com

(25)  Daniel Denny for Int Pty Courtesy NEF
      ddenny@gibsondunn.com

(26)  Caroline Djang for Cred Lehman ALI, Inc.
      crd@jmbm.com

(27)  Donald T Dunning for Cred Hertz Equipment Rental Corp
      ddunning@dunningLaw.com

(28)  Joseph A Eisenberg for Cred Lehman ALI, Inc.
      jae@jmbm.com

(29)  Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
      Ekvall & Strok, LLP
      lekvall@wgllp.com

(30)  Richard W Esterkin for Debtor Palmdale Hills Property, LLC
      resterkin@morganlewis.com

(31)  Marc C Forsythe for Atty Robert Goe
      kmurphy@goeforlaw.com

(32)  Alan J Friedman for Atty Irell & Manella LLP
      afriedman@irell.com

(33)  Steven M Garber for Cred Park West Landscape, Inc
      steve@smgarberlaw.com

(34)  Christian J Gascou for 3rd Party Pltf Arch Ins Co
      cgascou@gascouhopkins.com

(35)  Barry S Glaser for Cred County of Los Angeles
      bglaser@swjlaw.com

(36)  Robert P Goe for Atty Robert Goe
      kmurphy@goeforlaw.com,
      rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(37)  Eric D Goldberg for Int Pty Courtesy NEF
      egoldberg@stutman.com

(38)  Richard H Golubow for Debtor Palmdale Hills Property, LLC
      rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(39)  Michael J Gomez for Int Pty Central Pacific Bank
      mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(40)  Kelly C Griffith for Cred Bond Safeguard Ins Co
      bkemail@harrisbeach.com

(41)  Matthew Grimshaw for Int Pty City Of Torrance
      mgrimshaw@rutan.com

(42)  Kavita Gupta for Debtor Palmdale Hills Property, LLC
      kgupta@winthropcouchot.com

(43)  Asa S Hami for Debtor Palmdale Hills Property, LLC
      ahami@morganlewis.com

(44)  Michael J Hauser for U.S. Trustee United States Trustee (SA)
      michael.hauser@usdoj.gov

(45)  D Edward Hays for Cred Villa San Clemente, LLC
      ehays@marshackhays.com

(46)  Michael C Heinrichs for Int Pty Courtesy NEF
      mheinrichs@omm.com

(47)  Harry D. Hochman for Cred Lehman ALI, Inc.
      hhochman@pszjlaw.com, hhochman@pszjlaw.com

(48)  Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
      of Lehman RE Ltd
      jonathan.hoff@cwt.com

(49)  Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
      nhotchkiss@trainorfairbrook.com

(50)  Michelle Hribar for Pltf EMR Residential Properties LLC
      mhribar@rutan.com

(51)  John J Immordino for Cred Arch Ins Co.
      john.immordino@wilsonelser.com,
      raquel.burgess@wilsonelser.com

(52)  Lawrence A Jacobson for Cred BKF Engineers
      laj@cohenandjacobson.com

(53)  Michael J Joyce for Int Pty Courtesy NEF
      mjoyce@crosslaw.com

(54)  Stephen M Judson for Petitioning Cred The Professional Tree
      Care Co
      sjudson@fablaw.com

(55)  Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
      & Pump
      ecf@kleinlaw.com, kjudy@kleinlaw.com

(56)  Sheri Kanesaka for Cred California Bank & Trust
      sheri.kanesaka@bryancave.com

(57)  David I Katzen for Int Pty Bethel Island Muni Imp District
      katzen@ksfirm.com

(58)  Christopher W Keegan for Cred SC Master Holdings II LLC
      ckeegan@kirkland.com,
      gdupre@kirkland.com;alevin@kirkland.com

(59)  Payam Khodadadi for Debtor Palmdale Hills Property, LLC
      pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

(60)  Irene L Kiet for Cred BNB Engineering, Inc.
      ikiet@hkclaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                 F 9013-3.1.PROOF.SERVICE

(61) *Claude F Kolm for Cred County of Alameda Tax Collector*
*claude.kolm@acgov.org*

(62) *Mark J Krone for Cred Bond Safeguard Ins Co*
*mk@amclaw.com, crs@amclaw.com;amc@amclaw.com*

(63) *David B Lally for Def Contracting Engineers, Inc.*
*davidlallylaw@gmail.com*

(64) *Leib M Lerner for Cred Steiny and Co, Inc.*
*leib.lerner@alston.com*

(65) *Peter W Lianides for Debtor Palmdale Hills Property, LLC*
*plianides@winthropcouchot.com, pj@winthropcouchot.com*

(66) *Charles Liu for Debtor Palmdale Hills Property, LLC*
*cliu@winthropcouchot.com*

(67) *Kerri A Lyman for Atty Irell & Manella LLP*
*klyman@irell.com*

(68) *Mariam S Marshall for Cred RGA Environmental, Inc.*
*mmarshall@marshallramoslaw.com*

(69) *Robert C Martinez for Cred TC Construction Co, Inc*
*rmartinez@mclex.com*

(70) *Michael D May for Cred R.J. Noble Co.*
*mdmayesq@verizon.net*

(71) *Hutchison B Meltzer for Cred Com Holding Unsecured Claims*
*hmeltzer@wgllp.com*

(72) *Krikor J Meshefejian for Int Pty Courtesy NEF*
*kjm@lnbrb.com*

(73) *Joel S. Miliband for Cred RBF CONSULTING*
*jmiliband@rusmiliband.com*

(74) *James M Miller for Atty Miller Barondess LLP*
*jmiller@millerbarondess.com, vgunderson@millerbarondess.com*

(75) *Louis R Miller for Pltf Palmdale Hills Property, LLC*
*smiller@millerbarondess.com*

(76) *Randall P Mroczynski for Def Bob McGrann Construction, Inc.*
*randym@cookseylaw.com*

(77) *Mike D Neue for Atty The Lobel Firm, LLP*
*mneue@thelobelfirm.com,*
*jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com*

(78) *Robert Nida for Cred Kirk Negrete, Inc*
*Rnida@castlelawoffice.com*

(79) *Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of*
*Lehman RE Ltd*
*henry.oh@dlapiper.com, janet.curley@dlapiper.com*

(80) *Sean A Okeefe for Debtor Palmdale Hills Property, LLC*
*sokeefe@okeefelc.com*

(81) *Robert B Orgel for Cred Lehman ALI, Inc.*
*rorgel@pszjlaw.com, rorgel@pszjlaw.com*

(82) *Malhar S Pagay for Cred Lehman ALI, Inc.*
*mpagay@pszjlaw.com, mpagay@pszjlaw.com*

(83) *Penelope Parmes for Cred EMR Residential Properties LLC*
*pparmes@rutan.com*

(84) *Ronald B Pierce for Cred Griffith Co*
*ronald.pierce@sdma.com*

(85) *Katherine C Piper for Int Pty New Anaverde LLC*
*kpiper@steptoe.com*

(86) *Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al*
*cmartin@pprlaw.net*

(87) *James S Riley for Cred Sierra Liquidity Fund, LLC*
*tgarza@sierrafunds.com*

(88) *Debra Riley for Int Pty City of Palmdale*
*driley@allenmatkins.com*

(89) *Todd C. Ringstad for Int Pty Courtesy NEF*
*becky@ringstadlaw.com*

(90) *R Grace Rodriguez for Def O&B Equipment, Inc.*
*ecf@lorgr.com*

(91) *Martha E Romero for Cred San Bernardino County Tax Collector*
*Romero@mromerolawfirm.com*

(92) *Ronald Rus for Cred SunCal Management, LLC*
*rrus@rusmiliband.com*

(93) *John P Schafer for Cred LB/L-DUC III Bethel Island, LLC*
*jschafer@mandersonllp.com*

(94) *John E Schreiber for Def Fenway Capital, LLC*
*jschreiber@dl.com*

(95) *William D Schuster for Cred HD Supply Construction Supply LTD*
*bills@allieschuster.org*

(96) *Christopher P Simon for Int Pty Courtesy NEF*
*csimon@crosslaw.com*

(97) *Wendy W Smith for Cred Castaic Union School District*
*wendy@bindermalter.com*

(98) *Steven M Speier (TR)*
*Sspeier@asrmanagement.com, ca85@ecfcbis.com*

(99) *Steven M Speier for Trustee Steven Speier (TR)*
*Sspeier@Squarmilner.com, ca85@ecfcbis.com*

(100) *Michael St James for Cred MBH Architects, Inc.*
*ecf@stjames-law.com*

(101) *Michael K Sugar for Off Committee of Unsecured Creds*
*msugar@irell.com*

(102) *Cathy Ta for Def Hi-Grade Material Co.*
*cathy.ta@bbklaw.com,*
*Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com*

(103) *David A Tilem for Def Southland Pipe Corp*
*davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;*
*dianachau@tilemlaw.com;kmishigian@tilemlaw.com*

(104) *James E Till for Trustee Steven Speier (TR)*
*jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;*
*pnelson@thelobelfirm.com*

(105) *United States Trustee (SA)*
*ustpregion16.sa.ecf@usdoj.gov*

(106) *Carol G Unruh for Cred Scott E. McDaniel*
*cgunruh@sbcglobal.net*

(107) *Annie Verdries for Cred WEC Corp*
*verdries@lbbslaw.com*

(108) *Jason Wallach for Def Professional Pipeline Contractors, Inc.*
*jwallach@gladstonemichel.com*

(109) *Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.*
*kim.johnson@kattenlaw.com*

(110) *Christopher T Williams for Cred Danske Bank A/S London Branch*
*ctwilliams@venable.com, jcontreras@venable.com*

(111) *Marc J Winthrop for Debtor Palmdale Hills Property, LLC*
*mwinthrop@winthropcouchot.com, pj@winthropcouchot.com*

(112) *David M Wiseblood for Cred Bethel Island Muni Imp District*
*dwiseblood@seyfarth.com*

(113) *Brett K Wiseman for Cred JF Shea Construction Inc*
*bwiseman@aalaws.com*

(114) *Dean A Ziehl for Counter-Def LV Pacific Point LLC*
*dziehl@pszjlaw.com, dziehl@pszjlaw.com*

(115) *Marc A. Zimmerman for Creditor Life Church of God in Christ*
*joshuasdaddy@att.net*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**