PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Tel: (310) 277-6910 / Fax: (310) 201-0760

WEIL, GOTSHAL & MANGES LLP
Edward Soto (admitted *pro hac vice*)
Alfredo Perez (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153-0119
Tel: (212) 310-8000 / Fax: (212) 310-8007

Attorneys for Lehman Commercial Paper, Inc., Lehman ALI, Inc.,
Northlake Holdings, LLC and OVC Holdings, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

In re

Palmdale Hills Property, LLC, and
its Related Debtors.
          Jointly Administered Debtors and
          Debtors-in-Possession

Affects:

☑ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF, LLC
☐ LB-L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LB-L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

**CASE NO. 8:08-bk-17206-ES**

Jointly Administered with Case Nos.

8:08-bk-17209-ES; 8:08-bk-17224-ES;
8:08-bk-17225-ES; 8:08-bk-17227-ES
8:08-bk-17230-ES; 8:08-bk-17231-ES
8:08-bk-17236-ES; 8:08-bk-17240-ES
8:08-bk-17242-ES; 8:08-bk-17245-ES
8:08-bk-17246-ES; 8:08-bk-17248-ES
8:08-bk-17249-ES; 8:08-bk-17404-ES
8:08-bk-17407-ES; 8:08-bk-17408-ES;
8:08-bk-17409-ES; 8:08-bk-17458-ES;
8:08-bk-17465-ES; 8:08-bk-17470-ES;
8:08-bk-17472-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17588-ES

**LEHMAN ENTITIES' OPPOSITION TO
MOTION FOR AN ORDER REGARDING
ENTITLEMENT TO DISCOVERY IN
CONNECTION WITH CLAIM OBJECTION,
AND/OR IMPOSING DISCRETIONARY STAY**

Date:  May 13, 2011
Time:  9:30 a.m.
Place:  Courtroom 5A
        411 West Fourth Street
        Santa Ana, CA 92701

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 5

   A.   Commencement of the Equitable Subordination Action ..................................... 5

   B.   The Bankruptcy Appellate Panel Decision ........................................................ 6

   C.   The Court Dismisses the Section 502(d) Claim and Other Claims Against LCPI ............... 7

   D.   SunCal Finally Moves for Relief from the Automatic Stay ................................. 8

   E.   The Stay on Litigation of the Equitable Subordination Action ........................... 9

   F.   The Chapter 11 Plans .......................................................................................... 9

   G.   SunCal's Post-Stay Litigation Offensive ........................................................... 11

III. ARGUMENT ...................................................................................................... 13

   A.   Pending Acceptance or Rejection of the Lehman Plans, SunCal Should Not be
        Permitted to Litigate the Claim Objection or Other Matters Not Related to
        Confirmation ...................................................................................................... 14

      1.   SunCal Does Not Need to Litigate the Claim Objection to Object to Confirmation of
           the Lehman Plans. .......................................................................................... 14

      2.   SunCal Does Not Need to Litigate the Claim Objection to Confirm the SunCal Plans. . 15

      3.   Permitting Litigation of the Claim Objection Will Greatly Prejudice Creditors ............. 15

      4.   Permitting the Claim Objection to Proceed Will Only Generate More Litigation on
           SunCal's Latest Violation of the Automatic Stay. ........................................... 16

   B.   No Stay on Confirmation Proceedings Should be Imposed ............................... 18

      1.   Possible Damage from Granting a Stay .......................................................... 19

      2.   Hardship or Inequity in Going Forward .......................................................... 19

      3.   The Orderly Course of Justice ........................................................................ 20

IV. CONCLUSION .................................................................................................... 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   **TO THE HONORABLE ERITHE SMITH, UNITED STATE BANKRUPTCY JUDGE:**

2         Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), Northlake

3   Holdings, LLC ("Northlake Holdings"), and OVC Holdings, LLC ("OVC Holdings" and,

4   collectively, the "Lehman Entities") hereby file this opposition to the *Motion for an Order*

5   *Regarding Entitlement to Discovery in Connection with Claim Objection, and/or Imposing a*

6   *Discretionary Stay* (the "Motion") filed by certain of the Voluntary Debtors (Palmdale Hills

7   Property, LLC, Acton Estates LLC, SCC Communities, LLC, SJD Partners, Ltd., SunCal Bickford

8   Ranch LLC, SunCal Emerald Meadows LLC, SunCal Summit Valley LLC, and Tesoro SF, LLC)

9   and SunCal Management LLC ("SunCal Management" and, collectively, "SunCal").

10                                    **I.**

11                              **INTRODUCTION**

12        SunCal seeks to resume full-blown litigation of claims for which settlements are pending in

13  the plan co-sponsored by the Lehman Entities and the chapter 11 trustee for the Involuntary Debtors

14  (the "Joint TD Plan") and the plan sponsored by the Lehman Entities for the Voluntary Debtors (the

15  "Joint VD Plan" and, together with the Joint TD Plan, the "Lehman Plans").  Its new "Claim

16  Objection" has a familiar basis:  the alleged breach of the May 23, 2008 Restructuring Agreement by

17  LCPI and Lehman ALI for failing to make agreed payments to contractors, and the alleged bad faith

18  failure to consummate the settlement contemplated therein.[1]  In other words, it is the equitable

19  subordination claim that was until now subject to the LCPI automatic stay, but which SunCal has

20  now declared exempt.  The Court need not subject itself and the parties to the enormous cost and

21  time-demands of this litigation.  It is well outside the scope of permissible discovery on a settlement

22  and is premature: It is post-confirmation litigation on which discovery cannot possibly be concluded

23  pre-confirmation.  The true objective of the Motion is delay, either through discovery on extraneous

24  litigation, or by imposing a stay on the Lehman Entities' efforts to confirm the Lehman Plans and

25

26  ────────────────────────

27  [1] They also allege a breach of the purported Settlement Agreement.  However, that agreement was never executed and
    delivered by any party, did not become enforceable against any party and thus could not be breached by any party.
    SunCal's repeated statements to the contrary (and its fraudulent misrepresentation of this issue by attaching a draft of
28  the Settlement Agreement with the signed signature pages that were never released from escrow as if this represented
    a final agreement, does not make an agreement that was never finalized a binding contract.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  object to SunCal Management's inflated administrative and prepetition claims that impede

2  confirmation of the Lehman Plans.

3      This cost and delay is antithetical to the settlement that the Lehman Entities entered with the

4  Trustee in April 2010.  As the Court is well aware, discovery and pretrial litigation in the equitable

5  subordination litigation entails document review of millions of pages, serial discovery disputes and

6  motions to dismiss that are still unresolved.  This burden is among the principal reasons the action

7  has been stayed in this Court since June 2010, even against non-debtor defendants.  It is litigation

8  that LCPI, with the breathing room afforded by its automatic stay, worked assiduously to settle,

9  reaching agreements with the Trustee and TD Committee and, it anticipates, with the bond issuers,

10  all while continuing to provide administrative funding for SunCal's estates.  The bargain becomes

11  worse for the Lehman Entities with each delay.  If SunCal is allowed to resume litigating before

12  creditors have the opportunity to accept or reject the Lehman Plans, and even to attack the

13  administrative claims carried by the Lehman Entities to provide post-petition financing, the bargain

14  becomes untenable, threatening both the viability of the Lehman Plans and the administrative

15  solvency of the estates.

16      If SunCal can scuttle the settlement, creditors are left with the alternative of its own plans

17  (the "SunCal Plans"), under which Bruce Elieff has almost unfettered control of Project sales, which

18  he will presumably manipulate to achieve his personal goals:  (a) avoiding substantial indemnity

19  liability to bond issuers and, perhaps, (b) enabling Project sales only to a buyer who (i) would

20  assume or eliminate the indemnification obligations of Elieff and SCC Acquisitions, Inc.

21  ("Acquisitions") to bond issuers, and/or (ii) select SunCal as a partner, developer or manager of the

22  Projects.  The benefits to SunCal and Elieff of liability relief and upside potential are substantial and

23  immediate, while creditors are relegated to receiving a recovery (or not) from the outcome of the

24  Equitable Subordination Action or other litigation.  Obtaining such benefits on account of Elieff's

25  equity interests in the Debtors, which are worthless, is inappropriate, and the Court should not allow

26  him to enlist its assistance.

27      The Lehman Entities submit that the Court should (a) authorize the parties to litigate and

28  conduct discovery only in proceedings relating to plan confirmation or preconditions to plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

confirmation, and (b) stay all proceedings on the Claim Objection and the other proceedings recently initiated by SunCal, pending acceptance or rejection of the Lehman Plans or, at minimum, while relief from the LCPI automatic stay is sought from Judge Peck.  On these facts, such relief is entirely appropriate:

1.       The claims that SunCal seeks to compel LCPI to litigate should have nothing to do with confirming the SunCal Plans.  Those plans are premised on the belief that the estates' equitable subordination, breach of contract and avoidance claims can be prosecuted against the Lehman Entities post-confirmation.  While there are ambiguities in the  SunCal Plans that suggest litigation proceeds must be realized before the plans can become effective, that is essentially irrelevant: no plan with such a deferred and indefinite effective date can be confirmed.

2.       Discovery on the broad scope of factual issues raised by the Claim Objection is also unnecessary for confirmation objections to the Lehman Plans.  The Lehman Plans incorporate a negotiated settlement of the Claim Objection and other claims against the Lehman Entities, and well-settled law holds that mini-trials are not required or appropriate to evaluate the reasonableness of settlements.  SunCal is not entitled to litigate the very litigation that is to be settled in order to argue that the settlement is insufficient or that the best interests of creditors test has not been met.

SunCal is not deprived of its ability to contest confirmation of the Lehman Plans. Confirmation objections are contested matters in which discovery is permitted.  SunCal has not yet availed itself of the opportunity to conduct discovery of facts having a material bearing on the reasonableness of the settlement, for purposes of the best interests of creditors challenge it has identified as a confirmation hurdle for the Lehman Plans.

3.       Permitting litigation of the Claim Objection or other matters not directly related to plan confirmation, or further postponing confirmation proceedings, would greatly prejudice the Lehman Entities and other creditors, and is highly inefficient.  The Court need not, and as a matter of efficient case management should not, permit the parties to litigate matters that may be settled or rendered moot by plan confirmation, pending acceptance or rejection of the Lehman Plans or the SunCal Plans.  The equities of these cases reinforce this common-sense conclusion.  The cases have been pending two and half years.  The Lehman Plans were extensively negotiated and will likely be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

accepted decisively by creditors once they receive an opportunity to do so.  As SunCal has

emphasized, the Lehman Plans have claim caps and other contingencies reflecting limitations on the

amount of funds that the Lehman Entities are willing to expend to confirm them.  The Lehman

Entities settled with the Trustee over a year ago, and every dollar spent on extremely burdensome

litigation that the Lehman Entities were attempting to settle makes the settlement calculus less

tenable.  Furthermore, the Claim Objection posits a right to disallow or recoup against the

*administrative claims* that the Lehman Entities have incurred pursuant to cash collateral and

financing stipulations in these cases.  Permitting collateral litigation on the Claim Objection may

threaten not only the Lehman Plans, but the estates' ability to pay administrative expenses.  The

Court should not permit the cases and creditors to be held hostage by equity's litigation agenda.

4.    More litigation is likely to follow if the Court permits the Claim Objection to

proceed.  SunCal has also filed a motion for disallowance of LCPI and Lehman ALI's claims under

section 502(d) (the "Section 502(d) Motion"), which requires a determination that they are liable on

avoidance claims to cancel their liens as fraudulent transfers.  It has also filed a motion for summary

judgment on avoidance claims in the Equitable Subordination Action, and a complaint in Orange

County Superior Court (the "State Court Complaint") that asserts the same breach of contract claims

against Lehman ALI that are asserted against Lehman ALI in the Claim Objection, except that in the

former context they are asserted as affirmative claims for $100 million in damages, while in the

latter context they are said to be in the nature of "recoupment."

5.    Finally, extending the discretionary stay on the litigation avoids the cost and delay of

further litigation on the applicability of the LCPI automatic stay.  The stay violation is blatant.  It is

hornbook law that recoupment is the netting of amounts due under a contract, while setoff is the

mutual cancellation of independent obligations.  The former does not violate the automatic stay and

the latter does.  The same alleged breach of the Restructuring Agreement that is asserted against

Lehman ALI as an affirmative claim for $100 million in the State Court Complaint is characterized

in the Claim Objection as "recoupment" of amounts owed by Lehman ALI under the original loan

agreements.  Calling it "recoupment" does not make it so.  The "Claim Objection" is on its face a

counterclaim on an independent integrated contract, asserted to establish a right to setoff the loan

obligations.  Compounding the stay violation is SunCal's novel theory that it can "recoup" from first

dollars rather than from the total claim; the result is *de facto* subordination, the exact relief sought in

the equitable subordination claim that under the law of the case has already been deemed a violation

of LCPI's automatic stay.[2]  As a finishing touch, SunCal has done exactly what landed it in hot water

before, asking this Court to rule on the LCPI automatic stay rather moving for relief from stay in the

LCPI bankruptcy case.  At minimum, litigation by SunCal should be stayed until it obtains a ruling

from the LCPI court on the application of the LCPI automatic stay to these claims.

## II.

## FACTUAL BACKGROUND[3]

1. On or about November 6 and November 7, 2008, the Voluntary Debtors  filed

voluntary chapter 11 petitions.  Between November 12 and November 19, 2008, involuntary

petitions were filed against the Trustee Debtors.  On or about January 8, 2009, the Court entered

orders for relief in the Trustee Debtors' cases.  On or about January 15, 2009, the Court entered

orders requiring the appointment of a chapter 11 trustee in each of the Trustee Debtors' cases.

Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the chapter 11

trustee for the Trustee Debtors.

2. On November 10, 2008, the Debtors filed a motion in the Lehman bankruptcy court

requesting authority to administer their cases without regard to LCPI's automatic stay (the

"November Stay Relief Motion").  The Lehman bankruptcy court denied without prejudice SunCal's

request for blanket relief, without prejudice to filing requests for specific stay relief, as needed.[4]

A. **Commencement of the Equitable Subordination Action**

---

[2] The Section 502(d) Motion has a similar problem.  Not only is it inherently a setoff based upon a determination of avoidance liability, but in this instance the avoidance liability to be determined is not for the return of money but for the avoidance of LCPI's liens.

[3] Most relevant facts are matters of record in these cases and the Lehman bankruptcy cases and are subject to judicial notice.  Many are set forth in the decision of the Bankruptcy Appellate Panel, *In re Palmdale Hills Property, LLC*, 423 B.R. 655 (9th Cir. BAP 2009) (the "BAP Op."), and in the *Memorandum Opinion and Order* issued on August 27, 2010 by the Hon. Richard J. Holwell of the District Court for the Southern District of New York (the "SDNY Slip Op.").

[4] *See* BAP Op., 423 B.R. at 660; SDNY Slip Op. at 5.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.      The Debtors commenced the Equitable Subordination Action as an adversary proceeding against Lehman ALI on January 6, 2009.  The original complaint did not name LCPI as a defendant.  It included as its Fourth Claim for Relief a claim against Lehman ALI and its co-defendants for breach of the May 23, 2008 Restructuring Agreement.

4.      The Debtors sought and obtained a ruling from this Court on March 10, 2009 that the Lehman automatic stay did not apply to bar the assertion of equitable subordination claims against LCPI.  LCPI appealed the order to the BAP.[5]  The Court granted leave on March 27, 2009 to file a Second Amended Complaint that added LCPI as a defendant and asserted a single claim for equitable subordination.

5.      On June 11, 2009, the Court dismissed the Second Amended Complaint in the Equitable Subordination Action, with leave to amend, ruling that the Debtors had failed to (1) state a claim regarding insider status; (2) tie specific defendants to inequitable conduct or sufficiently state the basis of imputing such conduct; (3) adequately allege "gross and egregious conduct"; (4) identify particular inequitable conduct of defendants against particular Debtor plaintiffs; (5) sufficiently identify the alleged injured creditors; and (6) allege fraudulent conduct with particularity.

6.      On July 10, 2009, the Debtors filed a Third Amended Complaint that added allegations of certain post-petition "bad acts" of the Lehman Entities, and causes of action alleging preference and fraudulent transfer liability.  Included was an Eighth Claim for Relief to "Disallow Claims and Liens – 11 U.S.C. § 502(d)" against LCPI and Lehman ALI (and Fenway Capital in respect of loans that the Debtors contended had been sold).

**B.      The Bankruptcy Appellate Panel Decision**

7.      The BAP issued its opinion on December 15, 2009, ruling that the assertion of an equitable subordination claim against LCPI violated the Lehman automatic stay.  The panel held that the "[SunCal] Debtors' subordination action seeks affirmative control over property of [LCPI's] bankruptcy estate by proposing to alter the priority of [LCPI's] claim and the transfer of [LCPI's] lien rights to [the SunCal] Debtors' estate.  Thus, equitable subordination seeks affirmative relief: the modification of a claimant's valid claim and property interest . . . .  Accordingly, we find the

---

[5] *See* BAP Op., 423 B.R. at 660-61.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

adjudication of [the SunCal] Debtors' equitable subordination claim violates [LCPI's] automatic stay."[6] Of particular pertinence here, the BAP stated: "Debtors are not without a remedy. They can seek relief from stay in Lehman Commercial's case where their earlier motion was denied without prejudice."[7]

> Therefore, while the California bankruptcy court may have concurrent jurisdiction to determine the scope or applicability of the automatic stay, the New York bankruptcy court must have the final say as to whether the automatic stay applies to the bankruptcy case before it. [citations omitted]   Debtors are not hamstrung by this decision; **Debtors may either seek relief from stay or initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case.**[8]

SunCal appealed to the Ninth Circuit and did not promptly pursue either of the courses of action spelled out by the BAP.  It has not initiated an equitable subordination action in New York, and waited several months before moving for relief from stay.[9]

## C.    The Court Dismisses the Section 502(d) Claim and Other Claims Against LCPI

8.    Based on the BAP ruling, on March 9, 2010, the Court dismissed the section 502(d) claim and certain other claims for relief against LCPI as violating the LCPI automatic stay, as reflected in its April 12, 2010 *Order re Lehman Entities' Amended Motion to Dismiss the Third Amended Complaint* (Adv. Docket No. 244).  The Court ruled in part:

> Under *In re Palmdale Hills Property, LLC*, the claims for relief brought against Defendant Lehman Commercial Paper Inc. ("LCPI") – namely, claims 1, 5, 7, 8, and 9 – are affirmative relief and, therefore violate LCPI's automatic stay. Consequently, the first, fifth, seventh, eighth, and ninth claims for relief are dismissed without prejudice to the extent that they are brought against LCPI. Plaintiffs must seek relief from LCPI's automatic stay in the United States Bankruptcy Court for the Southern District of New York in order to bring any claims against LCPI in this adversary proceeding.

9.    On March 26, 2010, the Debtors filed a Fourth Amended Complaint, dropping LCPI as a defendant and maintaining a Sixth Claim for Relief for disallowance of claims and liens under

---

[6] BAP Op., 423 B.R. at 667.
[7] *Id*. at 666, n. 8.
[8] *Id*. at 668 (emphasis added).
[9] SDNY Slip Op. at 6-7.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

section 502(d) against Lehman ALI and Fenway.  On April 4, 2010, the Lehman Entities filed motions to dismiss and to strike portions of the Fourth Amended Complaint.  Those motions remain pending with the Court.

**D.    SunCal Finally Moves for Relief from the Automatic Stay**

10.    On April 21, 2010, four months after the BAP ruled that it must either file its equitable subordination action in the Lehman bankruptcy court or seek relief from stay to litigate it in this Court, SunCal finally moved for relief from the Lehman automatic stay to prosecute the Equitable Subordination Action.  This motion was denied without prejudice at the May 12, 2010 hearing.  The court noted in particular SunCal's delay in bringing the motion and its election to litigate the issue in the California federal courts, and the fact that the matter is still under consideration in the appeal before the Ninth Circuit.

> I couldn't have been clearer in January of 2009 that this was the Court that you needed to come to for purposes of getting stay relief, in that instance, relating to the use of cash collateral.  But it's now May of 2010. It's quite a long while after that. And one of the concerns I have is that Judge Smith and I are players in a cross-country game of gaming the system, of using courts to your particular purpose in order to gain strategic advantage. And speaking for myself, I don't like that. I suspect that Judge Smith would say the same thing if she were here.[10]

It held that SunCal had not met its burden to demonstrate cause to lift the stay at this time, while stating that SunCal could renew its motion if circumstances warranted, before or after the Ninth Circuit decision.[11]

11.    On August 27, 2010, the District Court affirmed Judge Peck's ruling denying relief from stay.  Judge Holwell stated:

> In light of the fact that the Bankruptcy Court denied the motion without prejudice in an attempt to defer to the Ninth Circuit, judicial economy weighed significantly in favor of the Bankruptcy Court's decision.  And for the same reason the hardship to SunCal was reduced—since the Bankruptcy Court invited further consideration of the issue as necessary, the hardship suffered is only that caused by waiting for a decision, not that caused by permanent application of the automatic stay.[12]

---

[10] *Id.* at 8.

[11] SDNY Slip Op.at 9.

[12] *Id.* at 22.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Second Circuit affirmed the lower court rulings on December 7, 2010.

**E.**    **The Stay on Litigation of the Equitable Subordination Action**

12.    In June 2010, the Lehman Entities and the Trustee notified the Court that they had reached a settlement agreement, and that the Trustee would not be participating further in the prosecution of the litigation.  At the status conference on June 10, 2010, the Court ordered a stay of all proceedings in the adversary proceeding, including a stay of discovery, pending the further status conference of August 26, 2010, in order to allow time for, among other things, the appeals from Judge Peck's rulings and the plan competition process to proceed.  That stay was continued in effect at the August 26, 2010 status conference.

13.    After Judge Holwell's August 27, 2010 ruling, the Voluntary Debtors notified the Court that they would file a motion for a stay of all proceedings on all Lehman Plans and disclosure statements unless LCPI waived its automatic stay or the stay was otherwise lifted (the "SunCal Stay Motion").  On October 29, 2010, the Court granted the SunCal Stay Motion, imposing a temporary stay through February 18, 2011, tolling the time to file certain claims, and ordering to mediation the Voluntary Debtors, the Trustee, the committees, Bruce Elieff, SunCal Management and certain affiliates, the Lehman Entities, and others.  The mediation, which took place before the Honorable Daniel Weinstein (Ret.) of J.A.M.S. Resolution Experts, was mostly successful in that certain of the parties reached further or actual agreements or agreements in principle, the terms of which are reflected in the Lehman Plans and disclosure statements.  No agreement, however, was reached between the Lehman Entities and SunCal.  At a further hearing on the SunCal Stay Motion on February 18, 2011, the Court continued the tolling of time to file certain lawsuits but allowed the temporary stay regarding the confirmation process to expire by its own terms on March 1, 2011.

**F.**    **The Chapter 11 Plans**

14.    The Lehman Entities have reached several interim agreements with the Trustee throughout these cases, culminating in an agreement on the terms of the Joint TD Plan, jointly sponsored by the Trustee and the Lehman Entities, which was filed on September 30, 2010.  The Lehman Entities also sponsored and filed on such date the Joint VD Plan for certain of the Voluntary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors' cases.  Confirmation proceedings were stayed by the Court's ruling on the SunCal Stay

Motion.

15.     On March 28, 2011, the Lehman Entities filed the current iterations of the Lehman

Plans.[13]  The terms and conditions of the Lehman Plans can be summarized as follows:  (a) there will

be a free and clear conveyance of the plan projects to the Lehman Entities that hold their liens (or to

their nominees) and (b) certain Lehman Entities will fund and satisfy the allowed (i) administrative

expense claims, priority claims, priority tax claims, and secured claims (exclusive of seller financing

secured claims), (ii) "Reliance Claims" at the guaranteed amount of 1% of the allowed claim, unless

such creditors elect to release all claims against the Lehman Entities, in which case they will be paid

up to 50% of their allowed claim (subject to a cap in the Joint VD Plan), and (iii) general unsecured

claims at the guaranteed amount of 1% of the allowed claims, unless such creditors elect to release

all claims against the Lehman Entities, in which case they will be paid up to 5% of their allowed

claim.  In addition, the Lehman Plans provide for separate treatment of claims relating to surety

bonds issued for the benefit of certain of the plan projects if settlement agreements are entered into

by the Lehman Entities and the issuers of such surety bonds.  In exchange for making the above-

described payments and other concessions, the Lehman Entities will receive a release of the various

claims asserted against them by the Debtors and accepting creditors.

---

[13] The "Lehman Plans" are defined as, (i)(a) *First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders* [Docket No. 1873] (the "Joint VD Plan") and (b) *Disclosure Statement With Respect to the First Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders* [Docket No. 1874] (the "Joint VD Disclosure Statement") and (ii)(a) First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Subject Lehman Entities [Docket No. 1875] (the "Joint TD Plan" and together with the Joint VD Plan, the "Lehman Plans") and (b) the Disclosure Statement With Respect to the First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Subject Lehman Entities [Docket No. 1876] (the "Joint TD Disclosure Statement" and together with the Joint VD Disclosure Statement, the "Lehman Disclosure Statements").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16. The current iterations of the SunCal Plans were filed on April 7, 2011, with four separate chapter 11 plans for twenty (20) of the twenty-six (26) Debtors.[14] As with previous versions, the SunCal Plans are premised upon: (1) equitably subordinating the claims of the Lehman Entities to all unsecured claims, (2) transferring the Lehman Entities' liens to the Debtors' estates, (3) selling the Lehman Entities' real property collateral (while eliminating their right to credit bid), and (4) using the sale proceeds to satisfy the claims of unsecured creditors. They allow Elieff virtually unfettered control over the disposition of the plan projects, while conditioning and deferring any recovery to unsecured creditors on and until the receipt of litigation recoveries.

## G. SunCal's Post-Stay Litigation Offensive

17. On March 24, 2011, SunCal filed the State Court Complaint, styled a Complaint for (1) Breach of Contract; and (2) Breach of Covenant of Good Faith and Fair Dealing, in the Orange County Superior Court, styled Acton Estates, LLC et al. v. Lehman ALI, Inc., et al., Case No. 30-2011-00460847-CU-BC-CJD. The State Court Complaint asserts claims for breach of the May 2008 Restructuring Agreement and the non-existent Settlement Agreement (substantially similar to those originally asserted in the original complaint in the Equitable Subordination Action). It is based on the same facts alleged in the Equitable Subordination Action, except those related to alleged post-petition misconduct of the Lehman Entities. The gravamen of its claims are (a) that the Lehman Entities failed to fund all of the vendor payables promised under the Restructuring Agreement; and (b) breached the covenant of good faith and fair dealing by failing to close the Settlement Agreement contemplated by the Restructuring Agreement, and so to assume the vendor obligations and complete the equity restructuring provided for in the Settlement Agreement . The State Court Complaint asserts damages of $100 million.

---

[14] The first chapter 11 plan pertains to the estates of the following Debtors, Palmdale Hills Property, SunCal Bickford Ranch, LLC, SunCal Marblehead, LLC, and SunCal PSV, LLC [Docket No. 1891] (the "Group I Plan"). The second chapter 11 plan pertains to the estates of the following Debtors, SunCal Emerald Meadows LL, Acton Estates, LLC, LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, and Delta Coves Venture [Docket No. 1893] (the "Group II Plan"). The third chapter 11 plan filed pertains to the estates of the following Debtors, SunCal Beaumont Heights, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers LLC, Kirby Estates, LLC, and SunCal Century City, LLC [Docket No. 1895] (the "Group III Plan").[14] The fourth chapter 11 plan filed by the SunCal Plan Proponents pertains to the estates of the following Debtors, SJK Partners, Ltd., SCC Communities LLC, North Orange Del Rio Land, LLC, Tesoro SF LLC, SunCal Torrance, LLC, and SunCal Oak Knoll, LLC [Docket No. 1897] (the "Group IV Plan" and together with the Group I Plan and Group II Plan, the "SunCal Plans").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18.     As the Lehman Entities told SunCal they would, on May 9, 2011, the Lehman Entities removed the State Court Complaint to this Court pursuant to 28 U.S.C. § 1452.  SunCal's protestations regarding removal are absurd.  It is unclear why SunCal ever filed its complaint in California Superior Court, when Debtors are plaintiffs and: (a) it arises from many of the same facts as the Equitable Subordination Action and is asserted against Lehman ALI, which is also a defendant in the Equitable Subordination Action; (b) its factual and legal bases are substantially the same as the Claim Objection (and Lehman ALI is, again, a party to both).

19.     On April 12, 2011, SunCal filed the Claim Objection (*Motion For Order Disallowing Certain Claims Held By Lehman ALI Inc. and Lehman Commercial Paper Inc*. [Docket No. 1901]). The Claim Objection is based on the same factual and legal grounds as the State Court Complaint, *i.e*., breach of the Restructuring Agreement, but is asserted against LCPI and ALI.  SunCal contends that the Lehman Entities' purported breach of such agreements caused damages to the Debtors' estates in the approximate amount of $100,000,000.  Claim Objection, 4:19-26.  The same claims that SunCal asserts as a $100 million contract action against ALI in its State Court Complaint are asserted to be in the nature of "recoupment" of the amounts owed to Lehman ALI and LCPI under the original loan agreements.  Thus, if successful, SunCal seeks to reduce, by way of recoupment,[15] the Lehman Claims by the amount of the damages caused by the Lehman Entities' purported breach of the Restructuring Agreement and the non-existent Settlement Agreement.  Claims Objection 4:19-26 and 26:15-28 and 27:1-4.  While not clear, SunCal attempts to quantify the damages it is seeking in various portions of the Claim Objection.  *See*, *e.g.*, Claim Objection 17-22.  The total of the various claims asserted by SunCal in the Claim Objection are approximately $77-$100 million.

20.     On April 1, 2011, SunCal filed a Motion for Partial Summary Judgment on claims for fraudulent transfer against Lehman ALI in the Equitable Subordination Action.

---

[15] While the claims asserted in the Claim Objection are styled as a defense of recoupment, the Lehman Entities believe that such claims are actually breach of contract claims that are subject to setoff and the automatic stay insofar as they relate to LCPI.  The Claim Objection is nothing more than a disguised breach of contract counterclaim as evidenced by the State Court Complaint that is based on the same facts and relief.  Furthermore, the affirmative relief that SunCal is seeking is evidenced by SunCal as it readily admits not only the blatant stay violation in its Omnibus Reply to Objections to Disclosure Statement [Docket No. 2046], but also that the recoupment will provide for funds from "from these sales proceeds the damages owed and immediately pay any **allowed** administrative claims."  (emphasis in original).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21.    On April 26, 2011, SunCal filed the Section 502(d) Motion (*Motion For Order Disallowing Claims of Lehman ALI Inc. and Lehman Commercial Paper Inc. Pursuant to 11 U.S.C. § 502(d)* [Docket No. 1976]).  The Section 502(d) Motion requests the disallowance pursuant to section 502(d) of the Bankruptcy Code of fifteen proofs of claim filed by LCPI and ALI against fifteen of the Debtors.  The avoidance claims underlying such disallowance are fraudulent transfer claims to avoid the loans and liens securing the loans, on the grounds that each of the subject borrowers obligated itself on the entire loan but received less than all of the loan proceeds.  The Section 502(d) Motion also requests disallowance of ALI's administrative expense claims against five of those debtors.  LCPI owns the loans underlying ten of these proofs of claim.[16]

### III.

### <u>ARGUMENT</u>

As before, SunCal casts the relief it seeks as necessary to "level the playing field" between the SunCal Plans and the Lehman Plans so that creditors may choose fairly.  But SunCal is not a victim, nor is it a champion of any interests than those of Mr. Elieff.  The plans are not comparable, and the time has passed for SunCal to be treated as anything other than what it is, an equity holder with no equity attempting, for its own selfish purposes, to sabotage a consensual plan of reorganization between the Lehman Entities and the Trustee Debtors that hold nearly 80% of its collateral.

---

[16] To the extent relevant, SunCal's counsel's allegations of unreasonable responses by the Lehman Entities to SunCal's communications regarding discovery are without merit.  Mr. Pritikin's characterization of his communications with the Lehman Entities' counsel, Mr. Ziehl, is inaccurate.  After SunCal launched its Claim Objection and noticed numerous depositions, Mr. Ziehl told Mr. Pritikin that: (1) he had not been authorized to accept service of deposition subpoenas for New York deponents in connection with the Claim Objection; and (2) the Claim Objection violated the Lehman stay: SunCal had relied on law from the wrong jurisdiction for the proposition that the Claim Objection was recoupment, and Mr. Ziehl would send a letter explaining how SunCal was in violation of the stay.  These responses are reasonable.  When Mr. Pritikin stated that he was entitled to the same discovery in the state court action against Lehman ALI, Mr. Ziehl responded that the state court action was not even at issue and that the claim would be the subject of a dispositive motion since the conditions precedent to enforce the settlement were not satisfied as a matter of law.  Further, he was told that the Lehman Entities were in the process of removing the State Court Complaint to this Court.  There was no refusal to meet and confer because there was no pending (served) discovery to respond to.  Furthermore, SunCal unilaterally withdrew the deposition subpoenas after receipt of the letter advising them of the Lehman Entities' position that the Claim Objection violates the automatic stay, before the Lehman Entities were able to get motions for protective orders on file with the Court.  These positions are reasonable.

**A.      Pending Acceptance or Rejection of the Lehman Plans, SunCal Should Not be Permitted to Litigate the Claim Objection or Other Matters Not Related to Confirmation**

**1.      SunCal Does Not Need to Litigate the Claim Objection to Object to Confirmation of the Lehman Plans.**

SunCal argues that it is being denied the level playing field it needs, because it must litigate the Claim Objection in order to show at confirmation whether the settlement offers in the Lehman Plans afford creditors at least as much as they would get in a chapter 7 case.  But confirmation of the Lehman Plans does <u>not</u> require extensive discovery. For settlements, a "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken by the Court.  *See In re Blair*, 538 F.2d 849 (9th Cir. 1976); *In re Walsh Constr., Inc.*, 669 F.2d 1325 (9th Cir. 1982). In reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983).  The Disclosure Statements already include over 10 pages each discussing the claims against the Lehman Creditors and against their claims (§ 4.2.5) and the SunCal disclosure statements include approximately 16 pages each (SunCal's disclosure statement for "Group I Debtors," pp. 32-40 & 46-54).

SunCal's other premise, that beginning the discovery now will enable SunCal to subordinate or disallow the Lehman Creditors' claims prior to plan confirmation, is absurd.  When litigation of the Equitable Subordination Action was stayed in June 2010, the complaint was still not yet at issue: motions to dismiss and to strike had been filed that have not yet been heard.  The Claim Objection is based on much the same facts and seeks the same relief as SunCal's equitable subordination claims, and discovery will be equally painstaking.  With the proposed discovery having no meaningful relevance to any timely held confirmation hearing, it is apparent that the real purpose of the stay request is not to obtain the discovery; it is to obtain the stay.  Without adequate resources to fund their plans, it is not surprising that SunCal seeks to delay the plan process.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**2.    SunCal Does Not Need to Litigate the Claim Objection to Confirm the SunCal Plans.**

Simply put, the Claim Objection has nothing to do with SunCal's inability to confirm its own plans. The playing field is level: SunCal's inability to prosecute its claims against the Lehman Entities now does not stop SunCal from confirming its plans, nor does it stop SunCal from objecting to the Lehman Plans. SunCal's competitive disadvantage in the confirmation process is because its plans are inferior. The Lehman Plans are settlement plans that provide a substantial immediate payment to creditors with equitable subordination claims, and which has been approved, in respect of the Trustee Debtors, by independent fiduciaries – the Trustee and the TD Committee. The SunCal Plans depend upon the outcome of litigation that will unquestionably take years to finally determine, that is inherently speculative, with a speculative payoff that, in all events, will be substantially delayed.[17] Given the long delay inherent to large-scale complex litigation and appeals, the Trustee has defended his agreement to the Lehman Plans as providing a recovery that is superior to that offered by SunCal *even if* SunCal ultimately prevailed in the litigation.

**3.    Permitting Litigation of the Claim Objection Will Greatly Prejudice Creditors**

The basis of the Claim Objection against LCPI and Lehman ALI is the subject matter of the stayed equitable subordination litigation, which if prosecuted would entail review of millions of pages of documents, production of tens of thousands of documents, many months of discovery and discovery disputes, and extensive pretrial law and motion, all of which imposes a substantial financial burden on the Debtors' estates and the Lehman Entities without any likelihood of a corresponding benefit to the estates.

The Lehman Plans are intended to be consensual plans, negotiated by the Trustee, and the TD Committee. The Lehman Entities believe that the Lehman Plans are likely to be accepted overwhelmingly by creditors of both the Trustee Debtors and Voluntary Debtors when they finally receive the opportunity to vote to accept or reject. At the heart of the settlement is an exchange of finality for immediate payment to creditors and the prompt return of the Lehman Entities' collateral.

---

[17] While creditors get only speculative future benefits from the SunCal Plans, Mr. Elieff would do much better: he gets off his guarantees as soon as Project sales are consummated to a buyer who assumes the bonded debts.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   SunCal creditors – as well as the Lehman Entities and their creditors – are all entitled to the benefit

2   of that bargain, and should be permitted to vote up or down on the Lehman Plans.  If a stay issues,

3   however, the Lehman Entities lose the benefit of their bargain, and there is no requirement or

4   assurance that they will go forward with the Lehman Plans, at least on the same terms, nor is there

5   any financing agreement in place that would assure that the Trustee has sufficient operating funds

6   going forward to cover necessary expenses for the plan projects.  SunCal may urge rejection of the

7   Lehman Plans, but it should not be permitted to hold creditors hostage indefinitely to an insider plan

8   that defers any possible creditor recovery for years (even with immediate stay relief).  Even for

9   creditors of the Voluntary Debtors, which hold only 20% of the collateral value, it is unfair to deny

10   creditors the opportunity to elect settlement now over the prospects of ongoing litigation.  Thus,

11   instead of a benefit, the stay would harm both SunCal creditors and the Lehman Entities (as well as

12   the Lehman Entities' own creditors), all of which are entitled to the opportunity to elect now to

13   receive the benefit of the bargain embodied in the Lehman Plans.

14       **4.**     **Permitting the Claim Objection to Proceed Will Only Generate More Litigation**

15   **on SunCal's Latest Violation of the Automatic Stay.**

16       As set forth above, the Claim Objection is contrived.  It takes the allegations concerning the

17   supposed inequitable conduct of the Lehman Entities in failing to pay agreed vendor claims, and

18   couches them as contract claims for breach of the Restructuring Agreement and breach of the

19   implied covenant of good faith and fair dealing in failing to consummate the non-existent Settlement

20   Agreement (thereby allowing SunCal to attempt to invoke its allegations of bad faith surrounding the

21   Lehman bankruptcy filing).  In its State Court Complaint against Lehman ALI, these claims for

22   relief are asserted as affirmative claims for $77-100 million in damages.  In the Claim Objection,

23   also against Lehman ALI, the same claims are characterized as recoupment, which SunCal argues

24   entitles it to reduce not the total of any Lehman claim but only the secured portion of the claim,

25   resulting in *de facto* equitable subordination.  This does not implicate the LCPI automatic stay, says

26   SunCal, because it is a claim objection and it seeks recoupment, and claim objections and

27   recoupment do not violate the automatic stay.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    It is unclear why SunCal believes it can place form over substance when the BAP stated

2    otherwise unequivocally *in this case* that the filing of a proof of claim by LCPI "does not mean that

3    Debtors may take any action against [LCPI] without violating the automatic stay." *Lehman*

4    *Commercial Paper, Inc. v. Palmdale Hills Property, LLC, et al.*, (*In re Palmdale Hills Property,*

5    *LLC*), 423 B.R. 655, 667 (B.A.P. 9th Cir. 2009). Rather, courts "must disaggregate litigation so that

6    particular claims, counterclaims, cross claims and third-party claims are treated independently when

7    determining which of their respective proceedings are subject to the automatic stay." *Id.* at 665

8    (internal quotations omitted). Taking a setoff violates the automatic stay, 11 U.S.C. § 362(a)(7),

9    while recoupment does not. *Newbury v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1400 (9th Cir.

10    1996). Courts in both the Ninth and Second Circuits recognize that whether a claim for recoupment

11    is stated is governed by state law. *Newbury*, 95 F.3d at 1398 n.9; *Westinghouse Credit Corp. v.*

12    *D'Urso*, 278 F.3d 138, 146 n.3 (2d Cir. 2002).

13    The defining characteristic of setoff is that "the mutual debt and claim ... are generally those

14    arising from different transactions" while recoupment "is the setting up of a demand arising from the

15    same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or

16    reduction of such claim." 4 Collier on Bankruptcy p 553.03, at 553-14-15 (15th ed. 1995). SunCal

17    loses sight of this guiding principle by focusing on the literal language of cases holding recoupment

18    may be found to arise from a "set of transactions" rather than just one. It forgets that the Lehman

19    claims each arise from breach of a loan agreement, while the claimed recoupment is on account of an

20    asserted breach of an integrated Restructuring Agreement entered years later by and among different

21    parties and covering multiple loans. So when SunCal cites *In re Malinowski*, 156 F.3d 131 (2d Cir.

22    1998) for articulating that recoupment may arise from a "set of transactions" or "from a series of

23    many occurrences," it neglects the rule of that case: "When the circumstances that gave rise to the

24    credit and those giving rise to the creditor's obligation to the debtor do not result from a set of

25    reciprocal contractual obligations or from the same set of facts, they are not part of the same

26    transaction.") (finding no recoupment where subject unemployment claims were from different

27    episodes of unemployment); *Westinghouse Credit Corp.*, *supra* (no recoupment "even when an

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

integrated transaction is at issue, if the underlying contract has established separate and distinct remedies for discrete portions of that transaction").

What SunCal asserts is the epitome of a claim for breach of an independent obligation that gives rise to a right of setoff, not an "abatement or reduction" of the amount due on the loan. This is amply shown by the fact that SunCal is asserting the same claim against the same defendant, Lehman ALI, in the State Court Complaint, demanding $100 million in damages. Under New York law, "[r]ecoupment indeed is an equitable remedy that, of itself, gives no right to actual payment." *In re Kings Terrance Nursing Home and Health Related Facility*, 184 B.R. 200, 202 (S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990) (holding and quoting *Wright & Miller*, recoupment is "purely defensive in character and could be used only to defeat or diminish plaintiff's recovery; recoupment could not be the basis for affirmative relief.").

Finally, the Lehman Entities have not been able to locate a single decision holding that the reduction of a claim by recoupment may result in the reduction of the secured portion of the claim that was bifurcated as a result of section 506(a) of the Bankruptcy Code. Thus the assertion in the Claim Objection that SunCal is entitled to *de facto* subordination of the Lehman liens is unsupported by any theory of recoupment that might even arguably lessen the egregiousness of its stay violation.

**B.** **No Stay on Confirmation Proceedings Should be Imposed**

The futility of commencing litigation of the Claim Objection prior to confirmation suggests that a stay of confirmation proceedings is SunCal's actual objective in the Motion. No such relief should be granted.

"Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166 (1936)). However, "**[a**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  **party seeking] a stay must make out a clear case of hardship or inequity in being required to**

2  **go forward, if there is even a fair possibility that the stay for which he prays will work damage**

3  **to someone else.**" *Id.*, 299 U.S. at 255 (emphasis added); *Lockyer v. Mirant Corporation*, 398 F.3d

4  1098, 1109 (9th Cir. 2005).

5      **1.**     **Possible Damage from Granting a Stay**

6      SunCal again argues that no harm will befall the Lehman Entities because they could

7  terminate the SunCal stay by stipulating to terminate the Lehman stay.  In framing this as a two-

8  party dispute, however, SunCal omits any mention of the creditors whose interests SunCal is

9  purporting to champion.  The Lehman Entities have negotiated a settlement with the Trustee – a true

10  fiduciary – that is incorporated into their jointly sponsored plan.  The settlement offers creditors

11  immediate, substantial payment on their claims.  The requested stay not only deprives creditors of

12  the immediate benefit of the settlement, it jeopardizes the settlement itself, since the Lehman Entities

13  as well would be denied the prompt return of their collateral, and there is no assurance that they

14  would agree to the same terms.  As well, the Trustee could wind up without operating funds.  That is

15  an enormous harm that would be occasioned by imposing a stay.

16      SunCal's glib equation of the two stays is disingenuous.  The Lehman Entities' invocation of

17  the LCPI automatic stay has been upheld as legitimate and defensive.  Indeed, the LCPI automatic

18  stay has served its intended purpose, facilitating reorganization over litigation.  The Motion attempts

19  to impose a "counter-stay" in order to leverage the Lehman debtors into waiving their statutory

20  rights and the Lehman bankruptcy court into lifting the stay.  This is simply another effort to obtain

21  from this Court relief that is appropriately sought from the Lehman bankruptcy court.  Both this

22  Court and Judge Peck have admonished both sides to refrain from "gaming the system" in exactly

23  this manner, and it should not be countenanced here.

24      **2.**     **Hardship or Inequity in Going Forward**

25      There is no hardship in SunCal going forward with the plan confirmation process.  As noted,

26  there is no way in which not litigating the Claim Objection stops it from commencing discovery

27  upon and objecting to confirmation of the Lehman Plans.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

SunCal essentially argues that the Lehman Entities suffer no hardship because they are in the wrong for their offensive assertion of the stay.  It stubbornly ignores facts and adverse rulings in these cases and the Lehman bankruptcy cases.  The law of the case is that SunCal's own equitable subordination claims are the sword, and the Lehman automatic stay is a shield that is being invoked defensively and legitimately: "Lehman Commercial has a right to protect its estate from diminishment of its assets by others, which here includes Debtors' proposed modification of its rights, including its lien rights."  *In re Palmdale Hills Property, LLC*, 423 B.R. at 666 n. 8.

### 3.    The Orderly Course of Justice

SunCal misstates this consideration as the "ordinary course of justice" (Mot. at 19-20) and proceeds to mangle its import, spinning rhetoric about the extraordinary "upside down universe" of these cases.  In fact, this factor is correctly measured "in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Landis*, 299 U.S. at 255; *Lockyer v. Mirant*, 398 F.3d at 1112 (citing "the prospect of narrowing the factual and legal issues in the other proceeding").  What SunCal seeks is the <u>opposite</u>:  its goal is to shut down proceedings on conformation of plans that will likely settle or render moot much of the litigation in these cases, while opening the very litigation that the Lehman Entities and responsible creditor representatives are attempting to settle.  SunCal's full-bore litigation agenda thrives on disorder, not on facilitating the orderly course of justice.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# IV.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Lehman Entities request that the Motion be denied.

Dated:    May 10, 2011                    PACHULSKI STANG ZIEHL & JONES LLP


*/s/ Dean A. Ziehl*
Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067-4100
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760


                                          -and-

WEIL, GOTSHAL & MANGES LLP
Edward Soto (admitted *pro hac vice*)
Alfredo Perez (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Lehman Commercial Paper, Inc.,
Lehman ALI, Inc., Northlake Holdings, LLC
and OVC Holdings, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as *LEHMAN ENTITIES' OPPOSITION TO MOTION FOR AN ORDER REGARDING ENTITLEMENT TO DISCOVERY IN CONNECTION WITH CLAIM OBJECTION, AND/OR IMPOSING DISCRETIONARY STAY* will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____May 10, 2011_____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____May 10, 2011_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Hand Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
    bcook@suncal.com
(3) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel – wlobel@thelobelfirm.com
    Mike Neue – mneue@thelobelfirm.com
(6) Ch. 11 Trustee (c/o Squar Milner):
    Steven N. Speier - sspeier@squarmilner.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov

(8) Counsel for Voluntary Debtors' Committee:
    Alan Friedman – afriedman@irell.com
    Kerri A Lyman - klyman@irell.com
(9) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B Meltzer - hmeltzer@wgllp.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Clay Roesch - clay.roesch@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Chauncey Cole – chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Joseph A Eisenberg - jae@jmbm.com
Mark McKane - mark.mckane@kirkland.com
Atty for Bond Safeguard & Lexon - mea@amclaw.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 10, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

**F 9013-3.1.PROOF.SERVICE**

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

## I. SERVED BY NEF

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;sconnor@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(29) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(30) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(31) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(32) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(33) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(34) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(35) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(36) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(37) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(38) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(39) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(40) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(41) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(42) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(43) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(44) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(45) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(46) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(47) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(48) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(49) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(50) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(51) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(52) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(53) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(54) Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(55) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(56) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

(57) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

(58) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com,
gdupre@kirkland.com;alevin@kirkland.com

(59) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

(60) Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

(61) Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

(62) Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(63) David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

(64) Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

(65) Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

(66) Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

(67) Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

(68) Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

(69) Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

(70) Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

(71) Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

(72) Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

(73) Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

(74) James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com

(75) Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

(76) Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

(77) Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(78) Robert Nida for Cred Kirk Negrete, Inc.
Rnida@castlelawoffice.com

(79) Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

(80) Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

(81) Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

(82) Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

(83) Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

(84) Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

(85) Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com

(86) Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

(87) James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

(88) Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

(89) Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

(90) R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

(91) Martha E Romero for Cred San Bernardino County Tax Collector
Romero@mromerolawfirm.com

(92) Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

(93) John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

(94) John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

(95) William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

(96) Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

(97) Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

(98) Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

(99) Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarmilner.com, ca85@ecfcbis.com

(100) Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

(101) Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

(102) Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(103) David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(104) James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
pnelson@thelobelfirm.com

(105) United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

(106) Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

(107) Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

(108) Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

(109) Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

(110) Christopher T Williams for Cred Danske Bank A/S London Branch
ctwilliams@venable.com, jcontreras@venable.com

(111) Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(112) David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

(113) Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

(114) Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

(115) Marc A. Zimmerman for Creditor Life Church of God in Christ
joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                          F 9013-3.1.PROOF.SERVICE