RONALD RUS, #67369
rrus@rusmiliband.com
JOEL S. MILIBAND, #77438
jmiliband@rusmiliband.com
CATHRINE M. CASTALDI, #156089
ccastaldi@rusmiliband.com
RUS, MILIBAND & SMITH
A Professional Corporation
Seventh Floor
2211 Michelson Drive
Irvine, California  92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

Attorneys for SunCal Management, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| In re | CASE NO. 8:08-bk-17206-ES |
|---|---|
| PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | Chapter 11 |

Jointly Administered Debtors
and Debtors-in-Possession.

Affects:
☐ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johansson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Oak Valley, LLC

*Caption Continued on Next Page*

Chapter 11

Jointly Administered With Case Nos.:

8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES; and
8:08-bk-17588-ES

**RESPONSE TO JOINT MOTION FOR
ORDER DISALLOWING GENERAL
UNSECURED AND ADMINISTRATIVE
CLAIMS OF SUNCAL MANAGEMENT,
LLC; DECLARATION OF BRUCE V.
COOK, FRANK FAYE AND TOM
ROLLINS IN SUPPORT THEREOF**

**[RE DEBTOR DELTA COVES
VENTURE, LLC]**

1

| | |
|---|---|
| ☐ SunCal Heartland, LLC<br>☐ LBL-SunCal Northlake, LLC<br>☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☐ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☐ SunCal Torrance Properties, LLC<br>☐ SunCal Oak Knoll, LLC | JUDGE:    Hon. ERITHE A. SMITH<br>DATE:    June 14, 2011<br>TIME:    10:30 a.m.<br>CRTRM.:    5A |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY COURT

JUDGE, MOVANTS LEHMAN ALI, INC. AND STEVEN M. SPEIER, CHAPTER 11

TRUSTEE; AND THEIR COUNSEL OF RECORD:

    SunCal Management, LLC ("SC MANAGEMENT") responds to the Joint Motion For

Order Disallowing General Unsecured And Administrative Claims Of SunCal Management, LLC

(the "Objection") filed by Lehman Ali, Inc. (the "Lehman Lender") and Steven M. Speier, Chapter

11 Trustee (collectively the "Lehman Objectors") for Delta Coves Venture, LLC (the "Debtor").

1.    INTRODUCTORY STATEMENT

    The Lehman Objectors acknowledge that SC Management performed the services for

which they directly invoiced the Debtor during the period from April 2008 to November 2008 (the

"Claim Period").  The Objection evidences no dispute that the Debtor benefitted from the services

of SC Management in developing the Debtor's real property located in the Town of Bethel Island,

County of Contra Costa, State of California, consisting of approximately 310 acres (the "Project").

Rather, the Objection's aim, in contravention of law and equity, is that the Lehman Objectors

should obtain the benefit of such services without any compensation to SC Management.

    SC Management respectfully requests that this Court allow the Proof of Claim[1] filed by SC

Management in the amount of $1,084,858.63 (the "Claim Amount"), which represents the

undisputed value of the services performed and the expenses incurred on behalf of the Debtor

---

[1] A true and correct copy of SC Management's proof of claim assigned Docket No. 7-1 in the amount of $1,084,858.63, which was filed on March 19, 2009, and requests payment for services rendered and expenses incurred in connection with the Delta Coves Project during the time period from March 2008 through October 2008 (the "Proof of Claim") is attached as Exhibit "1."

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1  during the Claim Period and reject the unfair result sought by the Lehman Objectors and the

2  specious arguments advanced in support of such result.[2]

3  2.        STATEMENT OF FACTS

4        A.        The Bankruptcy Filing

5        On or about November 14, 2008 (the "Petition Date"), an involuntary bankruptcy was

6  commenced against the Debtor.  An Order For Relief was entered on January 8, 2009.

7        B.        SC Management Provided Development Management Services To The Debtor For

8                  Which It Should Be Compensated

9        In approximately September 2006, SC Management began providing development,

10  management and sales services for the Debtor in connection with development of the Project.[3]

11  Specifically, SC Management provided the following services (the "Development Management

12  Services") during, and prior to, the Claim Period:

13        •        Participating in the selection and coordination of services of contractors whose

14                 services were necessary to perform development and sale services and functions;

15        •        Soliciting proposals and negotiating contracts for all development, marketing and

16                 related consultant activities, including without limitation, civil engineering, soils

17                 engineering, environmental consultants, marketing consultants, traffic engineers,

18                 real estate brokers, and others in accordance with a project budget agreed to by the

19                 Debtors' members;

20        •        Coordinate, monitor and review the work of all professionals in connection with the

21                 Project;

22  ///

23  ///

24

25  [2] While the Objection also seeks that this Court rule on SC Management's Administrative Claims, SC Management has not filed a Request For Payment Of Administrative Claims, and no administrative claims bar date has been set.  SC Management will be filing a timely Request For Payment Of Administrative Claim.  Claim Nos. 19-1 and 19-2 were filed as placeholders and were not intended to substitute for a properly filed Request For Payment Of Administrative Claim.

27  [3] See Declaration of Frank Faye at ¶ 4.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

- Review bids and prepare bid analyses and coordinate awarding contracts and rejecting bids in accordance with project budgets agreed to by the Debtor's members and the Lehman Lender (the "Project Budget");[4]

- Coordinate the work of all contractors pursuant to the terms of the Project Budget and maintain quality control with respect to such work;

- Review all existing development related documents and assist in the preparation and review of additional development documents;

- Ensure that the Debtor holds all necessary approvals and permits for the development and improvement of the Project and further ensure that the development and improvement of the Project are being performed in compliance with the Project Budget and with all applicable codes, regulations, permits, approvals and site plans;

- Conduct frequent inspections of the work of consultants and contractors and verify that the work is being performed in accordance with related contracts and the Project Budget;

- Monitor the delivery, and if necessary, storage, protection and security for: all materials, systems and equipment to be used in the development of, or incorporated into the Project;

- Submitting and completing applications for the purpose of posting bonds or other appropriate forms of surety, and securing the release of such bonds when appropriate;

- Assemble and retain all contracts, agreements and other records and data as may be necessary to carry out its functions, and similar records for functions performed by contractors and third party vendors;

/ / /

---

[4] See Declaration of Bruce Cook at ¶5.

Rus, Miliband & Smith
A Professional Corporation
Seventh Floor, 2211 Michelson Drive
Irvine, California 92612
Tel. (949) 752-7100 • Fax (949) 252-1514

1    • Maintain proper books of contracts and records on behalf the Debtor relating to

2        services performed under this Agreement, and development, operations, expenses

3        and proceeds of the Project;

4    • Preparation of status reports, as requested by the Debtor's members;

5    • Preparation of unaudited financial reports and business summaries of SC

6        Management's activities with respect to the Project;

7    • Prepare for and attend meetings requested by the Debtor to review the progress of

8        the Project; and

9    • Maintain a constant line of communication with the Debtor and give advice and

10       recommendations regarding the development, business, operations, performance

11       and affairs of the Project.[5]

12   From the inception of the Project to the Petition Date, SC Management invoiced the Debtor

13   directly for services performed and expenses incurred on a monthly basis consistent with the

14   Project Budget.  It was the custom and practice of SC Management and the Debtor that invoices

15   were billed directly to the Debtor, who owned the Project, and the Debtor paid SC Management

16   directly for services performed from the inception of SC Management's work on the Project.[6]

17   C.    The Project And SC Management's Role

18       In late 2006, SC Management began managing development of an entire marina-based

19   community feeding into the San Joaquin River Delta.  The Debtor envisioned that the Project,

20   when completed, would consist of 494 waterfront residential lots, including

21   condominiums/townhomes, some of which would have private boat docks contiguous to an

22   interior lagoon providing direct boating access to the San Joaquin River Delta.[7]

23   ///

24

25   [5] See Declaration of Bruce Cook at ¶6 and a true and correct copy of the Development Management Agreement
     (the "DMA") by and between SC Management and SunCal Delta Coves, LLC, a Delaware limited liability Company,
26   the Debtor's operating member.  SC Management was not a signatory to a DMA with the Debtor; however, SC
     Management contends that the DMA describes the services performed by SC Management for the Debtor.

27   [6] See Declaration of Tom Rollins at ¶4.

     [7] See Declaration of Frank Faye at ¶6.
28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1      Prior to SC Management's retention, the Project was stalled.  SC Management was brought

2  in to salvage the Project, which required SC Management to work with a great deal of diligence to

3  ensure that the waterway was built and the Project fully graded prior to expiration of the Debtor's

4  permit on March 31, 2008.[8]  Had SC Management not managed to complete construction of the

5  waterway by March 31, 2008, the Project, as conceived, would have been in jeopardy.

6      SC Management has been the party responsible for managing development of the Project.

7  Because a key part of the Project was the ability to create an interior waterway that would allow

8  access to the San Joaquin River Delta, SC Management was responsible for negotiating and

9  maintaining all permits necessary to build the waterway, as well as for managing construction of

10  the waterway and ensuring completion of all grading on the Project.[9]  SC Management worked

11  with a great deal of diligence to ensure that the waterway was built and the Project fully graded

12  prior to expiration of the Permit, and it was successful in doing so, all to the benefit of the Debtor.

13      The design and construction of the waterway, including canals and boat docks, grading the

14  entire Project, paving the streets and completing all site improvements, with the exception of water

15  and gas, was a major undertaking that substantially enhanced the value of the Project.  SC

16  Management managed and directed the process and came into the Project at Lehman's specific

17  request to do so, because of a failure with its prior management company and partner.  Due to the

18  efforts of SC Management prior to and during the Claim Period, the Debtor holds a fully graded

19  property with an interior waterway that will allow a purchasing builder to offer boat docks and a

20  water recreation community to purchasers of homes within the Project.  SC Management

21  conveyed a substantial benefit to the Debtor, at the Debtor's request.

22      D.    <u>The March 19, 2009 Proof Of Claim</u>

23      The Debtor scheduled an unsecured claim due and owing to SC Management in the

24  amount of $1,164,476.62.

25

26    [8] The permit, issued by Army Corps of Engineers, to construct an internal lagoon and waterway that would access
the San Joaquin River Delta expired by its terms on March 31, 2008, and was not subject to renewal. See Declaration

27  of Frank Faye at ¶6.

  [9] See Declaration of Frank Faye at ¶¶ 7 & 8.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    SC Management timely filed its Proof of Claim in the amount of $1,084,858.63.[10]  Due to

2  the voluminous nature of the documents supporting the Proof of Claim, SC Management prepared

3  a summary sheet setting forth the dates of invoice, the amount of each open invoice and a

4  description of the services and expenses provided, which was attached to the Proof of Claim.

5              (1)    Management Fees

6       By its Proof of Claim, SC Management seeks payment of management fees for

7  management services performed for the Debtor during the period from June 2008 through

8  November 2008.   The monthly management fees charged had a reasonable value based on SC

9  Management's management services performed and the Project Budgets.  In this case,

10  management fees of $607,058 were incurred by the Debtor and remained unpaid as of the Petition

11  Date.[11]

12              (2)    Project Staff Costs

13       SC Management invoiced the Debtor monthly for the actual time spent by certain

14  employees related to the Project, which were billed as Project Staff Costs.  Project Staff Costs of

15  $205,995 were incurred by the Debtor and remained unpaid as of the Petition Date.  Each invoice

16  for Project Staff Costs attached the name of the employees and the number of hours expended in

17  the month in connection with the Project.  The hourly rates charged were reasonable and did not

18  exceed amounts that were approved by the Debtor by its practice of paying such amounts as billed

19  from time to time.[12]

20              (3)    Marketing Staff Costs

21       In addition, SC Management separately invoiced the Debtor for time expended by its

22  employees in connection with marketing the Project, which were billed as Marketing Staff Costs.

23  Marketing Staff Costs of $18,198 were incurred by the Debtor and remained unpaid as of the

24  Petition Date.  Each invoice for Marketing Staff Costs attached the name of the employees and the

25  _____

26      [10] A true and correct copy of the Proof of Claim is attached to the Declaration of Bruce Cook as Exhibit "1."

27      [11] See Declaration of Tom Rollins at ¶5.

        [12] See Declaration of Tom Rollins at ¶6.

28

number of hours expended in the month in connection with the Project. The hourly rates charged were reasonable and did not exceed amounts that were approved by the Debtor, as well as the Lehman Lender as part of the Project Budgets, and were paid by the Debtor.[13]

(4)    Legal Staff Costs

SC Management used its in-house legal staff, where feasible, to manage legal issues related to the Project. Monthly invoices were generated for legal staff costs chargeable to the Project. Legal Staff Costs of $10,100 were incurred by the Debtor and remained unpaid as of the Petition Date. The hourly rates charged were reasonable and did not exceed amounts approved by the Debtor as well as the Lehman Lender as part of the Project Budgets, and paid by the Debtor.[14]

(5)    Insurance Costs

SC Management obtained a global policy of insurance for all projects under management.[15] At the beginning of the term, SC Management would allocate premium payment amongst the projects under management based upon estimated costs to be incurred at a project over the policy term. At the end of each term, an audit was performed as to the actual costs incurred and the premium was reallocated based on actual costs. In the case of Delta Coves, this resulted in an adjustment of $224,865 (the "Insurance Adjustment") being due at the end of the term, which adjustment was invoiced. The total Insurance Costs, including the Insurance Adjustment that were incurred by the Debtor and remained unpaid as of the Petition Date were $227,389.[16]

/ / /

/ / /

---

[13] See Declaration of Tom Rollins at ¶7.

[14] See Declaration of Tom Rollins at ¶8.

[15] Lehman attempts to argue that the insurance costs charged were for the purpose of insuring SunCal Management, LLC and its employees, but this argument is not correct. All insurance costs billed to the Debtor related to insurance costs incurred on behalf of the Debtor. SC Management also maintained its own general liability and worker's compensation insurance (the "SC Management Insurance"). The SC Management Insurance was billed to and paid for by SC Management and was not invoiced to the Debtor. See Declaration of Tom Rollins at ¶9.

[16] See Declaration of Tom Rollins at ¶9.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

(6)    Employee Expense Reimbursement

SC Management employees were reimbursed for out-of-pocket costs incurred in connection with the Project. The employees filed expense reports, including receipts for expenditures, and upon approval by SC Management, they were paid. SC Management in turn invoiced these amounts, with supporting back-up documentation to the Debtor on a monthly basis. As of the Petition Date, the Debtor owed SC Management the sum of $16,118.63 in connection with employee expenses.

SC Management has provided additional backup documentation to the Lehman Objectors, including the invoices that are attached to the Objection as Exhibit "B."[17] The components of the proof of claim are set forth in the following chart:

| Category | Invoice Date | Invoice Amount | Invoice No. | Invoice Description |
|---|---|---|---|---|
| Management Fees[18] | 9/16/2008 | $392,000 | 2090372 | Jun, Jul, Aug 08 Management Fees |
| | 9/16/2008 | $80,000 | 2090373 | September 08 MGMT Fees |
| | 9/16/2008 | $80,000 | 2090374 | Oct 08 MGMT Fee |
| | 10/17/2008 | $55,058.00 | 2090612 | November 08 Management Fee |
| Project Staff Costs[19] | 05/28/2008 | $55,260.00 | 20089905 | Apr-08 Project Staff Costs |
| | 06/16/2008 | $49,645.00 | 20089982 | May-08 Project Staff Costs |
| | 07/11/2008 | $50,460.00 | 20090072 | June-08 Project Staff Costs |
| | 08/19/2008 | $50,630.00 | 20090326 | Jul-08 Project Staff Costs |
| Marketing Staff Costs[20] | 5/28/2008 | $7,555.00 | 20089904 | Apr-08 Marketing Staff Costs |
| | 6/16/2008 | $4,975.00 | 20089981 | May-08 Marketing Staff Costs |
| | 7/11/2008 | $2,800.00 | 20090070 | June-08 Marketing Staff Costs |
| | 8/19/2008 | $2,868.00 | 20090325 | July-08 Marketing Staff Costs |
| Legal Staff Costs[21] | 5/14/2008 | $1,325.00 | 20089885 | April-08 Legal Staff Costs |
| | 07/22/2008 | $900.00 | 20090178 | June-08 Legal Staff Costs |
| | 08/18/2008 | $200.00 | 20090291 | July-08 Legal Staff Costs |
| | 10/17/2008 | $600.00 | 20090556 | Sep-08 Project Legal Costs |

[17] The relevant portions of Exhibit "B" will be submitted with an Amended Proof of Claim to be filed on May 31, 2011.

[18] A true and correct copy of the Management Fee invoices are attached to the Declaration of Tom Rollins as Exhibit "4."

[19] A true and correct copy of Project Staff Cost invoices are attached to the Declaration of Tom Rollins as Exhibit "5."

[20] A true and correct copy of Marketing Staff Cost invoices are attached as Exhibit "6."

[21] A true and correct copy of Legal Staff Cost invoices are attached as Exhibit "7."

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 I MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

| | | 11/17/2008 | $7,075.00 | 20090783 | Oct-08 Legal Staff Costs |
|---|---|---|---|---|---|
| | Insurance Costs[22] | 6/20/2008 | $2,372.00 | 20090034 | 4/08 to 06/08  Gen. Liab. & Floater |
| | | | | | July Gen Liab. & Floater insurance |
| | | 7/23/2008 | $152.00 | 20090218 | Aug 08 Gen'l Liab. & Floater |
| | | 8/14/2008 | $224,865.00 | 20090272 | Insurance adj 2007-2008 |
| | Employee Expense Reimbursement[23] | 05/31/2008 | $5,662.25 | 20089922 | Charles Hazelbaker/Steve Howell/Ed Horn |
| | | 6/18/2008 | $2,223.66 | 20090000 | Steve Howell/Kevin Fielding |
| | | 07/18/2008 | $407.92 | 20090123 | Steve Howell |
| | | 07/18/2008 | $2,804.77 | 20090131 | Ed Horn |
| | | 07/18/2008 | $876.00 | 20090135 | Kevin Fielding |
| | | 07/18/2008 | $38.66 | 20090156 | Leslie Wightman |
| | | 07/18/2008 | $506.90 | 20090161 | Steve Howell |
| | | 11/11/2008 | $2004.64 | 20090693 | Ed Horn |
| | | 11/11/2008 | $1,211.82 | 20090695 | Kevin Fielding |
| | | 06/26/2008 | $382.01 | 20090061 | Joe Guerra – May 01, 08 #14 |
| | Total | | $1,084,858.63 | | |

E.     The Objection

Notwithstanding that the Proof of Claim has been pending since March 19, 2009, on April 21, 2011, the Lehman Objectors filed objections to the Proof of Claim, as well as SC Management's proofs of claim in the seven related involuntary debtor bankruptcy cases.

3.     THE DEBTOR IS LIABLE TO SC MANAGEMENT FOR $1,084,858.63 IN UNSECURED PRE-PETITION CLAIMS

From the time that SC Management first provided Development Management Services on September 1, 2006, through November 14, 2008, when the Debtor's bankruptcy case was commenced by the filing of an involuntary bankruptcy petition, SC Management issued the Debtor invoices for Development Management Services.  The Debtor routinely paid  invoices when presented until October 2007.[24]  The conduct of the Debtor and SC Management during this two year period established an implied in fact contract between the Debtor and SC Management.[25]

---

[22] A true and correct copy of Insurance Cost invoices are attached as Exhibit "8."

[23] A true and correct copy of Employee Expense Reimbursement invoices and additional supporting documentation are attached to the Declaration of Tom Rollins as Exhibit "9."

[24] See Declaration of Tom Rollins at ¶17.

[25] The Objection erroneously assumes that the basis for SC Management's unsecured claim is the Development Management Agreement between SunCal Delta Coves, LLC and SC Management.  (See Objection at page 6, lines 7-10).  The Lehman Objectors also attempt to rely on agreements, the Upper Tier Delta Coves JV Agreement and the
(footnote continued)

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

Witkin defines an implied contract as follows:

" 'An express contract is one, the terms of which are stated in words." (*[Civil Code,* §] 1620.) "An implied contract is one, the existence and terms of which are *manifested by conduct."* (*[Civil Code, § 1621.)* (See also Rest.2d, Contracts § 4 ["A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct"]; 1 Corbin § 18; 1 Williston 3d § 3; 17 Am.Jur.2d, Contracts §§ 3, 4.)

The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of assent;* both types are based upon the expressed or apparent intention of the parties. "The true implied contract, then, consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §11, p. 46).[26]

Here, the Debtor and SC Management developed a custom and practice over a two year period during which regularly invoiced the Debtor for the reasonable value of its services provided for the Debtor's account, at the Debtor's request, and the Debtor paid for such services.[27] Lehman's argument that the Debtor has no liability to SC Management on account of the Development Management Services provided to it by SC Management because the Debtor was not a signatory to a written agreement with SC Management for services is meritless in light of the parties custom and practice giving rise to an implied in fact contract.

///

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

subsequent Amended and Restated Limited Liability Company Agreement of Delta Coves Venture LLC, which do nothing to spell out the obligations of the Debtor to SC Management. Instead, these Agreements govern the relationship of the parties to them, and not the relationship between SC Management and the Debtor.

[26] As Witkin, Summary 10th (2005) Contracts, § 102, p. 144 notes:

"An implied contract is one, the existence and terms of which are manifested by conduct." (C.C. 1621.) (See Rest.2d, Contracts §4 ["A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct"]; 1 Corbin (Rev. ed.), §1.19; 1 Williston 4th, §1.5; 17A Am.Jur.2d (2004 ed.), Contracts §12 et seq.; Cal. Civil Practice, 3 Business Litigation, §24:4; Cal. Transactions Forms, 1 Business Transactions §6:2; BAJI, No. 10.56 [Express or Implied Contracts]; CACI, No. 305 [Implied-in-Fact Contract].) (On distinguishable quasi-contract, see infra, §103.)"

[27] A true and correct copy of a spreadsheet evidencing the Debtor's payment of invoices from SC Management is attached to the Declaration of Tom Rollins as Exhibit "10."

1    There is no dispute but that SC Management performed the services for which it seeks

2    payment from the Debtor.  Thus, the only question is whether to allow the Debtor and the Lehman

3    Objectors to be unjustly enriched at the expense of SC Management.  It should not. The clear

4    intent of SC Management and the Debtor, as manifested by their conduct over a two year period,

5    was that SC Management would perform the Development Management Services for which it

6    would bill the Debtor consistent with the Project Budget and other agreements between the Debtor

7    and the Lehman Lender, and the Debtor would pay SC Management for those services.

8    4.    ALTERNATIVELY, SC MANAGEMENT'S CLAIM SHOULD BE ALLOWED IN

9        QUANTUM MERUIT

10    SC Management's equitable claims – services performed, *quantum meruit* and unjust

11    enrichment – arise from the Debtor's failure to compensate SC Management for providing services

12    usually charged for; specifically, for performing Development Management Services on the

13    Debtor's behalf.  The elements of these common counts are substantively the same.  *See In re De*

14    *Laurentiis Entertainment Group*, 963 F.2d 1269 (9th Cir. 1992) ("*Quantum meruit* (or quasi-

15    contact) is an equitable remedy implied by the law under which a plaintiff who has rendered

16    services benefiting the defendant may recover the reasonable value of those services when

17    necessary to prevent unjust enrichment of the defendant.").  The elements of these claims are

18    substantially the same and do not depend upon the existence of a contract:

19        In this state it is an established principle that "where one performs
        for another, with the other's knowledge, a useful service of a
20        character usually charged for, and the latter expresses no dissent, or
        avails himself of the service, a promise to pay the reasonable value
21        of the services is implied.

22    *Gray v. Whitmore*, 17 Cal. App. 3d 1, 24 (1971); *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475

23    (1953), *citing, Brown v. Crown Gold Milling Co.*, 150 Cal. 376, 382 (1907)(Claim for *quantum*

24    *meruit* is established upon a showing that plaintiff performed certain services for the defendant,

25    their reasonable value, that they were rendered at the request of defendant and that they are

26    unpaid.)  As opposed to the basis for the implied in fact contract discussed above, the common

27    count theories are based on implied in *law* contracts.

28    / / /

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    As detailed above and in the declarations of Frank Faye and Tom Rollins, it is established

2    that SC Management performed the Development Management Services for the Debtor at the

3    Debtor's request and that the Debtor accepted those services, with "an understanding or

4    expectation of both parties that compensation therefore was to be made." *Huskinson & Brown,*

5    *LLP v. Wolf,* 32 Cal. 4th 453, 458 (2004).  Indeed, there is no dispute that the services were

6    performed.  The only remaining issue is the determination of the value of those services.

7    Relevant to the reasonable *value* of the service provided to the Debtor is the amount at

8    which the Debtor and Lehman valued such services in the Project Budget, which was agreed to by

9    all parties.  Since the management fees charged by SC Management were within the amounts the

10   Debtor and the Lehman Lender provided in the Project Budgets, they were by definition

11   reasonable.  Moreover, there can be no question but that the charges for insurance costs and

12   expense reimbursement categories were pass through costs and also reasonable.

13   5.    THE ARGUMENT THAT CLAIMANT HAS BEEN OVERPAID MANAGEMENT

14         FEES IS MERITLESS

15   The Lehman Objectors mistakenly rely on a misapplication and a misinterpretation of the

16   Development Management Agreement between SC Management and Debtor's Operating Member

17   and the Operating Agreement for the Debtor, to which SC Management is not a party, to argue

18   that SC Management has been overpaid by the Debtor.  As discussed above, Debtor's obligations

19   to SC Management on which the Proof of Claim is based are direct by virtue of the implied in fact

20   and implied in law contract relationship between SC Management and Debtor, and are neither

21   based on nor restricted by either of these agreements.

22   The Lehman Objectors confuse the provisions of the Development Management

23   Agreement as they relate to an express contractual relationship between SC Management and the

24   Debtor's Operating Member, on the one hand, and as they relate to defining the parameters of the

25   / / /

26   / / /

27   / / /

28   / / /

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1 implied in fact contract with and the reasonable value of SC Management's services to the Debtor

2 as reflected in the Project Budgets and pursuant to the conduct of the parties.[28]

3      As set forth above, SC Management is requesting an allowed claim on account of six

4 months of management fees as the reasonable value of its services to the Debtor.

5      The Lehman Objectors also misinterpret the Development Management Agreement, where

6 at page 7, paragraph 5.1 it sets out a formula to calculate the management fee to be charged on a

7 monthly basis as follows:

8      "at an amount equal to three percent (3%) of (a) the gross revenue

     derived from the sale of the Property, and (b) the net proceeds

9      received from the funding of any community facilities district

     ('CFD') formed in connection with the development and sale of the

10      Project based upon a 3% of the gross revenue generated from the

     sale of the Debtor's property and certain CFD Proceeds."[29]

11

12 This formula, and the operative Project Budgets for the relevant time periods, were premised on a

13 completed build-out of the Project,[30] and not on the "as-is" value of the Property, as argued by the

14 Lehman Objectors. Indeed, the Lehman Objectors' suggestion that the gross proceeds from the

15 build-out and sale of the Project is equivalent to the as-is value of a Project that has been moth-

16 balled for over two years due to the Lehman Lender's malfeasance in failing to fund the Project is

17 comparing apples to oranges. The management fees that were to be incurred in the management

18 of the Project necessarily had to be based on the "build-out" value since the services provided by

19 SC Management (or any manager) would be directly proportional to the work required to achieve

20 the desired build-out. Anything less would result in management services being provided to the

21 Debtor at both a severe discount and on what would have been a contingent basis. That was never

22 the foundation of the implied in fact contractual relationship between SC Management and the

23 Debtor, nor would it result in reasonable fees to SC Management, who performed services

24 consistent with the efforts required to achieve the anticipated build-out.

25

26 [28]   Even if the Development Management Agreement was the controlling agreement between SC Management and the Debtor (which it is not), such agreement provides no mechanism to disallow management fees.

27 [29] See page 7, ¶5.1 of the Development Management Agreement attached to the Objection at Exhibit E.

[30] See Declaration of Bruce Cook at ¶7.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1     Lehman also argues that payment of SC Management's management fees should be subject

2   to "a 'true up' upon the ultimate sale of the project."  Not only is there no such provision in the

3   Development Management Agreement (which in any event is not the basis for the Proof of

4   Claim), the Lehman Objectors provide no evidence (because none exists) that SC Management

5   was a party to any agreement, oral or written, that required a "true up" of any management fee

6   payments.  Nor would such an agreement make sense.  The risk of a less than successful Project

7   does not fall on creditors who provide valuable services to the Debtor.  In fact, the parties

8   recognized this not only by not including such a provision in the Development Management

9   Agreement, but placing the only "true-up" provision in the Debtor's Operating Agreement, as

10  between the equity members.[31]

11     SC Management cannot have been overpaid for the services provided, as such services

12  were provided at a rate and in the amount all parties agreed was and is reasonable.  The Court

13  should allow that portion of SC Management's Proof of Claim attributable to management fees

14  equal to $607,058.00, still due and owing to SC Management.

15  6.    THE LEHMAN OBJECTORS SUBORDINATION ARGUMENT ADDRESSES THE

16        PRIORITY OF SC MANAGEMENT'S CLAIM VIS A VIS THE LEHMAN LENDER,

17        NOT ITS ALLOWANCE

18     Although SC Management is a signatory to a Consent And Subordination Of

19  Development Management Agreement (the "Subordination Agreement"), SC Management does

20  not concede the validity or enforceability of the Subordination Agreement, or its impact on the

21  *allowance* of SC Management's claim against the Debtor.[32]

22     By paraphrasing the Subordination Agreement, rather than addressing its actual terms, the

23  Lehman Objectors argue that SC Management's right to an unsecured claim in this bankruptcy

24

---

25  [31]   Moreover, even if relevant here (which it is not) any "true up" between the parties to the Operating
26  Agreement referenced by Lehman would only occur upon a completed build-out, issuance of CFD proceeds and sale
    at retail.

27  [32]   And as requested below, these issues must be determined in connection with an adversary proceeding, and
28  not in connection with a summary objection proceeding.

Rus, Miliband & Smith
A Professional Corporation
Seventh Floor, 2211 Michelson Drive
Irvine, California 92612
Tel. (949) 752-7100 • Fax (949) 252-1514

1   estate should be denied outright. Rather than attempt to interpret the unambiguous language of the

2   Subordination Agreement, as the Lehman Objectors have done, SC Management invites the

3   Court's attention to the actual language of the agreement:

4         "The Management Agree and any all liens, rights and interests
      (whether choate or inchoate and including, without limitation, all

5         mechanic's and material men's liens under applicable law) owned,
      claimed or held by Manager *in and to the Property* are and shall be

6         in all respects subordinate and inferior to the Loan and the liens and
      security interests created or to be created for the benefit of Agent

7         [defined as Lehman Ali, Inc., a Delaware corporation] and
      Lenders...[33]"

8

9   Thus, even assuming (without conceding) its enforceability, the Subordination Agreement is

10   ***irrelevant to the allowance of SC Management's unsecured claim against the Debtor***. SC

11   Management's unsecured claim is not a claim in the Property, it is a claim to payment from the

12   Debtor.

13         Lehman further argues that so long as no uncured event of default exists, then the

14   Operating Member, SunCal Delta Coves (not the Debtor), can continue to pay management fees in

15   accordance with the approved Development Budget. This provision does not address entitlement

16   to management fees, or an allowed unsecured claim against the Debtor's bankruptcy estate under

17   the theories discussed above supporting SC Management's claim in relation to *the allowed secured*

18   *claim* of the Lender, if any.[34]

19   7.    SC MANAGEMENT IS ENTITLED TO RECOVER INSURANCE COSTS

20         The Lehman Objectors allege that the Development Management Agreement prohibits SC

21   Management from making a claim against the Debtor for the cost of the Debtor's insurance. Since

22   the Development Management Agreement is not the legal basis for the Debtor's obligation to pay

23

24   _____

25   [33] See the Subordination Agreement attached to the Objection as Exhibit J and attached to the Declaration of Bruce Cook as Exhibit "3."

26   [34] As the Court is aware, this Debtor and others, have a number of disputes with the Lehman Entities, which may subject the Lehman Entities' Claims to disallowance, which are addressed in the Disclosure Statement Describing Chapter 11 Plan Filed By SunCal Plan Proponents In The Chapter 11 Cases in connection with the Debtor, SunCal

27   Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC and related debtors. [Docket No. 1894]. See the Request For Judicial Notice filed concurrently herewith.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  SC Management on its Proof of Claim, the terms of the Development Management Agreement as

2  to insurance are irrelevant.  Even if relevant, the Lehman Objectors once again misread the

3  Development Management Agreement.

4          Section 2.2. of the Development Management Agreement between Debtor's Operating

5  Member and SC Management, requires SC Management to pay for and carry general liability and

6  Worker's Compensation insurance for itself and its employees, with the Debtor only as an

7  **additional named insured**.  It did.[35]  This provision does not cover the costs incurred by SC

8  Management to procure separate insurance for the Debtor.  It is reimbursement for these costs that

9  is the subject of the invoices for insurance costs.[36]

10          As set forth in the Declaration of Tom Rollins, SC Management obtained umbrella policies

11  (the "Umbrella Policies") for all of its projects under management, including the Debtor's Project.

12  The policies were priced by the broker based on the estimated hard costs for the developments at

13  issue.  SC Management's in-house risk manager would then allocate the premiums, broker fees, in-

14  house risk management services and direct costs to each project based on estimated hard costs for

15  that project for the term of the policy.  At the end of the term, SC Management would audit the

16  hard costs and re-allocate premiums based on the actual hard costs expended per project.  By

17  obtaining the Umbrella Policies, SC Management was able to achieve a substantial savings for

18  each project, including the Debtor's Project.  The insurance obtained on behalf of the Debtor

19  included the following policies: General Liability - $1 Million, General Liability $60 million,

20  Property, and Installation Floater, which were part of the Umbrella Policies.[37]  Because of the

21  unique features of the Delta Coves Project, including the construction of an interior waterway

22  connecting to the San Joaquin River Delta, SC Management separately obtained a $50 Million

23  Commercial General Liability Wrap Policy for the Project.[38]

24

25  [35] See the Declaration of Tom Rollins at ¶9.

26  [36] See the Declaration of Tom Rollins at ¶9.

27  [37] See the Declaration of Tom Rollins at ¶9.

    [38] See Declaration of Tom Rollins at ¶9.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

8.     SC MANAGEMENT IS ENTITLED TO AN UNSECURED CLAIM ON ACCOUNT OF PROJECT STAFF COSTS, MARKETING STAFF COSTS AND LEGAL STAFF COSTS

It is undisputed that in the ordinary course of the its relationship with the Debtor, SC Management invoiced the Debtor monthly for Project Staff Costs, Marketing Staff Costs and Legal Staff Costs (collectively "Staff Costs"), and that the Debtor paid those invoices. The Lehman Objectors do not question the right of SC Management to be compensated for Staff Costs. The Lehman Objectors have information, most of which was included with the invoices, showing the employees, hours expended and charges on a monthly basis per project. SC Management requires its staff members to input their time chargeable to a particular project, which bills are transmitted to the SC Management accounting staff and submitted for invoicing under the appropriate category.[39] The hourly rate charged for the employees was known by the Lehman Lender, was paid by the Debtor direct to SC Management and represented the reasonable value of the services provided.[40]

The Lehman Objectors argue that the Proof of Claim should be disallowed because it provides no information concerning the actual cost to SC Management for the services performed by Staff. There is no requirement in Rule 3001 that a party provide information about the actual cost to it of the services that were provided to a debtor. In this case, the question is whether the amounts billed by SC Management for such services were in accordance with the parties' custom and practice and whether they represent the reasonable value of the services to the Debtor. To hold otherwise would require SC Management to disclose overhead costs and other components of its pricing, which is neither relevant to the course of conduct between the parties or the reasonable value of the services, and would invade SC Management's confidential business structure to its detriment in the marketplace. It is enough that there is a several year history of invoices for Staff Costs being submitted to the Debtor on a monthly basis and those invoices being paid by the Debtor, and independently being the reasonable value of the services to the Debtor.

---

[39] See Declaration of Tom Rollins at ¶17.

[40] See Declaration of Tom Rollins at ¶17.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  9.    THE OBJECTION IS PREMATURE AS TO SC MANAGEMENT'S TO BE FILED

2        REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS.

3        The Lehman Objectors seek to challenge SC Management's to-be-filed Motion For

4  Payment Of Administrative Claims.  SC Management filed a placeholder claim for administrative

5  expenses to advise parties of the amount of its administrative claim.  SC Management will file a

6  request for payment of administrative claim pursuant to 11 U.S.C. § 503(b) at an appropriate time.

7  As yet there has been no bar date set for administrative claims in this case, and since SC

8  Management has not made a request pursuant to 11 U.S.C. § 503(b), the objection by the Lehman

9  Objectors is premature.

10  10.    THE OBJECTION SHOULD BE CONVERTED TO AN ADVERSARY PROCEEDING

11        In each of the Claims Objections the Lehman Lenders argue that *the subject claims should*

12  *be subordinated* based on certain written Subordination Agreements entered into by SC

13  Management:

14  　　　　　"Hen ce, to the extent the Court determines that the Debtor. . . is
　　　　　liable to SunCal Management for the payment of Management Fees,
15  　　　　　SunCal Management's entitlement to such fees *is subordinate to the*
　　　　　*rights of Lehman pursuant to the Subordination Agreement.*
16  　　　　　*SunCal Management's claim for management Fees should*
　　　　　*therefore be disallowed*."  (See, Claim Objections at sections
17  　　　　　entitled "Claimant's Alleged Entitlement to Payment of Management
　　　　　Fees id Subordinate to Lehman's Loan on the Debtor's Property,"
18  　　　　　[e.g., Exhibit "1," at §III.B.2.], emphasis added).

19        FRBP 3007, under which the Claim Objections are filed, provides that an adversary action

20  is required to the extent an objection to a claim seeks a demand of the kind specified at FRBP

21  7001(8):

22  　　　　　**"(a) Objections to Claims**

23  　　　　　An objection to the allowance of a claim shall be in writing and
　　　　　filed. A copy of the objection with notice of the hearing thereon
24  　　　　　shall be mailed or otherwise delivered to the claimant, the debtor or
　　　　　debtor in possession, and the trustee at least 30 days prior to the
25  　　　　　hearing.

26  /// 

27  /// 

28  /// 

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

**(b) Demand for Relief Requiring an Adversary Proceeding**

A party in interest *shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."*
(Emphasis added)

Subordination of claims is specifically referenced at FRBP 7001(8) as requiring an adversary proceeding:

"An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: . . .(8) *a proceeding to subordinate any allowed claim* or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination; . . " (Emphasis added).

Therefore, pursuant to FRBP 3007(b) and FRBP 7001(8), the Lehman Objectors' claim objections require an adversary proceeding.

The requirement of an adversary proceeding in connection with a concurrent request for disallowance and subordination of claims was recently affirmed by the Ninth Circuit BAP in *In re USA Commercial Mortgage Company*, 377 B.R. 608 (9th Cir. BAP 2007). In *USA Commercial*, the Creditors' Committee filed an omnibus objection to 111 claims filed by an affiliate of the Debtor. By the omnibus claim objection the Committee "contended that the Appellants' claims were duplicative of the proofs of interest which Appellants had filed *and contended that, in any event, that the claims would necessarily be subordinated* pursuant to § 510(b)." *USA Commercial, supra*, 377 B.R. at 611, emphasis added. Furthermore, the *USA Commercial* court made it clear that even where subordination and disallowance are functional equivalents, an adversary action is required:

"In light of the foregoing, it is clear that § 510(b) would subordinate Appellants' claims to a level below the Diversified membership interests. As noted above, the bankruptcy court appears to have been heading in the right direction inasmuch as the effect of subordination may be functionally equivalent to disallowance (*i.e.*, no distribution on the claims). However, *this is only the case if first there is an adversary proceeding*, and then judgment is entered against Appellants. See Rule 7001(8) (requiring an adversary proceeding for the subordination of an 'allowed claim or interest')." *Id.*, at 620, emphasis added.

/ / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    Further still, the *USA Commercial* court emphasized that the requirement of an adversary

2    proceeding applies as to "all types of subordination," and that the use of the phrase "allowed

3    claim" in FRBP 7001(8) does not impinge on the requirement of an adversary proceeding in the

4    context of a claim objection:

5        "We disagree with the bankruptcy court's view, quoted above, that
         Rule 7001(8) does not apply to § 510(b). By its own terms, Rule
6        7001(8) does not distinguish between types of subordination. Thus,
         all types of subordination fall under this rule.
7
         While by its own terms Rule 7001(8) only applies to the
8        subordination of "allowed claim[s]," and, pursuant to § 502(a), a
         claim is no longer deemed allowed if there is an objection, the
9        argument that an adversary proceeding was not required in this
         instance due to the filing of the Objection is uncomfortably circular.
10       After all, the nanosecond before the Committee filed its objection,
         Appellants held allowed claims, and an adversary proceeding would
11       have been required to subordinate those claims. It is true that Rule
         7001 only deals with allowed claims, but that is because there is no
12       purpose served in subordinating disallowed claims. Rule 7001
         would have little meaning if you could avoid it by filing an
13       objection." *Id.,* at fn. 13.

14    Moreover, the fact that the Lehman Entities argue contractual subordination, as opposed to

15    equitable subordination under Bankruptcy Code § 510 makes no difference.  It is well established

16    that the enforcement of subordination agreements is contemplated within the meaning of FRBP

17    7001(8). See *In re Best Products Co.*, 168 B.R. 35, 69-70 ( Bankr. S.D.N.Y. 1994); 6A *Bankr.*

18    *Service L. Ed.* § 57:61 (Subordination, Clause 8) ("Bankruptcy Rules specifically contemplate

19    court dealing with enforcement of subordination agreements . . . under Bankruptcy Rule

20    7001(8)").

21    The Lehman Objectors served twenty-four separate sets of discovery on SC Management

22    in connection with their claims objections in the eight involuntary debtor cases.  They have also

23    requested the deposition of the persons most knowledgeable for all debtors.  SC Management will

24    likewise require discovery from the Trustee and certain Lehman representatives.  The Court

25    should require that the Objection proceed as an adversary proceeding.[41]

26

27    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

      [41] Even if the Objection did not require an adversary proceeding, which it does, it is unrealistic that SC
28    Management, or the Court, could reasonably be asked to be prepared for a trial on all of these matters on June 14,
          (footnote continued)

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

11.    <u>CONCLUSION</u>

The Lehman Objectors should not be unjustly enriched from the services performed and the costs incurred by SC Management. It is undisputed that SC Management performed the services, and incurred the expenses set forth in its Proof of Claim and the invoices supporting same. SC Management requests that this Court allow its unsecured claim in the amount of $1,084,858.63 and overrule the Objection

Due to myriad factual and legal issues raised by the Objection, and the Lehman Objectors request to subordinate the allowed claim of SC Management, the Court should require that the Objection proceed as an adversary proceeding. In any event, the Court should treat the initial hearing on this matter as a status conference.

SC Management reserves its right to further amend, supplement, revise, object, or otherwise respond to the Objection on any and all additional factual or legal grounds.

DATED: May 31, 2011                    Respectfully submitted,

                                       RUS, MILIBAND & SMITH
                                       A Professional Corporation

                                       By: _____
                                           RONALD RUS
                                           Attorneys for SunCal Management, LLC

2011. As set forth above, the claim objection involves substantive factual and legal issues and will require substantial time for presentation of evidence and argument. Thus, at the very least, the initial hearing on June 14, 2011, should be treated as an initial status conference pursuant to Local Bankruptcy Rule 3007-1(b)(5). The Lehman Objectors have concurred in this request. See the Objection at page 5, Footnote 4.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

DECLARATION OF BRUCE V. COOK

I, BRUCE V. COOK, declare as follows:

1.      I am the General Counsel for SunCal Management, LLC ("SC Management")

2.      I have knowledge of the SC Management's books and records, and I am familiar with SC Management's projects and operational affairs.  As to the following facts, I know them to be true of my own knowledge, and, if called as a witness, I could and would competently testify thereto; or I have gained such knowledge from the business records of SC Management, which were made at or near the time of the acts, conditions or events to which they relate.  Any such document or record was prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and had a business duty to accurately record such event.  If called as a witness, I could and would competently testify to the matters stated herein.

3.      This declaration is submitted in support of SC Management's Response to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of Delta Coves Venture, LLC (the "Debtor").

4.      On or about November 14, 2008 (the "Petition Date"), an involuntary bankruptcy was commenced against the Debtor.  An Order For Relief was entered on January 8, 2009.

5.      On or about March 19, 2009, SC Management filed proof of claim, assigned Claim No. 7-1 in the amount of  $1,084,858.63 requesting allowance of a claim for services rendered and expenses incurred in connection with development of the Debtor's real property (the "Project") during the time period from March 2008 through October, 2008 (the "Proof of Claim").  A true and correct copy of the Proof of Claim is attached as Exhibit "1."

6.      On September 1, 2006, SC Management and SunCal Delta Coves, LLC, a Delaware limited liability company, the Debtor's operating member, entered into that certain Development Management Agreement.  A true and correct copy of the Development Management Agreement (the "DMA") by and between SC Management and the Debtor is attached as Exhibit  "2."

7.      The DMA at page 7, paragraph 5.1 sets out a formula to calculate the management fee to be charged on a monthly basis:

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

> "at an amount equal to three percent (3%) of (a) the gross revenue derived from the sale of the Property, and (b) the net proceeds received from the funding of any community facilities district ('CFD') formed in connection with the development and sale of the Project based upon a 3% of the gross revenue generated from the sale of the Debtor's property and certain CFD Proceeds."

This formula, and the Project Budgets used by the Debtor and SC Management in calculating the monthly management fee was premised on a completed build out of the Project.

8. SC Management's monthly management fee was calculated with reference to project budgets agreed to by the Debtor, its members and the Lehman Lender.

9. SC Management used its in-house legal staff, where feasible, to manage legal issues related to the Project. The in-house legal staff input their time chargeable to the Project on a daily basis, and that information is provided to SC Management's accounting department for invoicing to the relevant debtor on a monthly basis.

10. SC Management is a signatory to a Consent And n Subordination Of Development Management Agreement (the "Subordination Agreement"). A true and correct copy of the Subordination Agreement is attached as Exhibit "3."

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1        I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3        Executed May 31, 2011, at Irvine, California.

4

5                                  _____

6                                  BRUCE COOK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF TOM ROLLINS

I, TOM ROLLINS, declare as follows:

1.      I am the Chief Accounting Officer for SunCal Management, LLC ("SC Management").

2.      I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

3.      This declaration is submitted in support of SC Management's Response ("Response") to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of Delta Coves Venture, LLC (the "Debtor").

4.      From the inception of the Project to the Petition Date, SC Management invoiced the Debtor directly for services performed and expenses incurred on a monthly basis consistent with the Project Budget.  It was the custom and practice of SC Management and the Debtor that invoices were billed directly to the Debtor, who owned the Project, and the Debtor paid SC Management directly for services performed from the inception of SC Management's work on the Project.

5.      By its Proof of Claim, SC Management seeks payment of management fees for management services performed for the Debtor during the period from June 2008 through November 2008.  The monthly management fees charged had a reasonable value based on SC Management's management services performed and the Project Budgets.  In this case, management fees of $607,058 were incurred by the Debtor and remained unpaid as of the Petition Date.

6.      SC Management invoiced the Debtor monthly for the actual time spent by certain employees related to the Project, which were billed as Project Staff Costs.  Project Staff Costs of $205,995 were incurred by the Debtor and remained unpaid as of the Petition Date.  Each invoice for Project Staff Costs attached the name of the employees and the number of hours expended in

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1 the month in connection with the Project. The hourly rates charged were reasonable and did not

2 exceed amounts that were approved by the Debtor by its practice of paying such amounts as billed

3 from time to time.

4        7.    In addition, SC Management separately invoiced the Debtor for time expended by

5 its employees in connection with marketing the Project, which were billed as Marketing Staff

6 Costs. Marketing Staff Costs of $18,198 were incurred by the Debtor and remained unpaid as of

7 the Petition Date. Each invoice for Marketing Staff Costs attached the name of the employees and

8 the number of hours expended in the month in connection with the Project. The hourly rates

9 charged were reasonable and did not exceed amounts that were approved by the Debtor, as well as

10 the Lehman Lender as part of the Project Budgets, and were paid by the Debtor.

11        8.    SC Management used its in-house legal staff, where feasible, to manage legal

12 issues related to the Project. Monthly invoices were generated for legal staff costs chargeable to

13 the Project. Legal Staff Costs of $10,100 were incurred by the Debtor and remained unpaid as of

14 the Petition Date. The hourly rates charged were reasonable and did not exceed amounts approved

15 by the Debtor as well as the Lehman Lender as part of the Project Budgets, and paid by the

16 Debtor.

17        9.    SC Management obtained a global policy of insurance for all projects under

18 management. All insurance costs billed to the Debtor related to insurance costs incurred on behalf

19 of the Debtor. SC Management also maintained its own general liability and worker's

20 compensation insurance (the "SC Management Insurance"). The SC Management Insurance was

21 billed to and paid for by SC Management and was not invoiced to the Debtor. At the beginning of

22 the term, SC Management would allocate premium payment amongst the projects under

23 management based upon estimated costs to be incurred at a project over the policy term. At the

24 end of each term, an audit was performed by the SC Management's accounting department as to

25 the actual costs incurred and the premium was reallocated based on actual costs incurred by the

26 Project. In the case of Delta Coves, this resulted in an adjustment of $224,865 (the "Insurance

27 Adjustment") being due at the end of the term, which adjustment was invoiced. The total

28 Insurance Costs, including the Insurance Adjustment that were incurred by the Debtor and

Rus, Miliband & Smith
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1   remained unpaid as of the Petition Date were $227,389.  By obtaining the Umbrella Policies, SC

2   Management was able to achieve a substantial savings for each project, including the Debtor's

3   Project.  The insurance obtained on behalf of the Debtor included the following policies: General

4   Liability - $1 Million, General Liability $60 million, Property, and Installation Floater, which

5   were part of the Umbrella Policies.  Because of the unique features of the Delta Coves Project,

6   including the construction of an interior waterway connecting to the San Joaquin River Delta, SC

7   Management separately obtained a $50 Million Commercial General Liability Wrap Policy for the

8   Project.

9         10.    A true and correct copy of the Management Fee invoices as identified in the

10   response are attached as Exhibit "4."

11         11.    A true and correct copy of Project Staff Cost invoices as identified in the response

12   are attached as Exhibit "5."

13         12.    A true and correct copy of Marketing Staff Cost invoices as identified in the

14   response are attached as Exhibit "6."

15         13.    A true and correct copy of Legal Staff Cost invoices as identified in the response

16   are attached as Exhibit "7."

17         14.    A true and correct copy of Insurance Cost invoices as identified in the response are

18   attached as Exhibit "8."

19         15.    A true and correct copy of Employee Expense Reimbursement invoices and

20   additional supporting documentation as identified in the response are attached as Exhibit "9."

21         16.    From the time that SC Management first provided Development Management

22   Services on September 1, 2006, through November 14, 2008, when the Debtor's bankruptcy case

23   was commenced by the filing of an involuntary bankruptcy petition, SC Management issued the

24   Debtor invoices for Development Management Services.  The Debtor routinely paid invoices

25   when presented until October 2007.  A true and correct copy of a spreadsheet evidencing the

26   Debtor's payment of invoices from SC Management is attached as Exhibit "10."

27   / / /

28   / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

17.    SC Management requires its staff members to input their time chargeable to a particular project, which bills are transmitted to the SC Management accounting staff and submitted for invoicing under the appropriate category.  The hourly rate charged for the employees was known by the Lehman Lender, was paid by the Debtor direct to SC Management and represented the reasonable value of the services provided.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1       I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3       Executed May 31, 2011, at Irvine, California.

4

5

6                   TOM ROLLINS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF FRANK FAYE

I, FRANK FAYE, declare as follows:

1.      I am the Chief Operating Officer for SunCal Management, LLC ("SC Management").

2.      I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

3.      This declaration is submitted in support of SC Management's Response to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of Delta Coves Venture, LLC (the "Debtor").

4.      In September 2006, SC Management commenced performing, at the Debtor's request, all development, management and sales services for the Debtor in connection with development of the building of an entire marina-based community feeding into the San Joaquin River Delta.  The Project, when completed, would consist of 494 waterfront residential lots, including condominiums/townhomes, some of which would have private boat docks contiguous to an interior lagoon providing direct boating access to the San Joaquin River Delta. (the "Project").

5.      My responsibilities as Chief Operating Officer of SC Management included supervising and directing SC Management's activities with respect to development of the Project.

6.      In late 2006, SC Management began managing development of an entire marina-based community feeding into the San Joaquin River Delta.  The Debtor envisioned that the Project, when completed, would consist of 494 waterfront residential lots, including condominiums/townhomes, some of which would have private boat docks contiguous to an interior lagoon providing direct boating access to the San Joaquin River Delta.

6.      SC Management was brought in to salvage the Project, which required SC Management to work with great diligence to ensure that the waterway was built and the Project fully graded prior to expiration of the Debtor's permit on March 31, 2008.  The permit, issued by the Army Corp. of Engineers, to construct an internal lagoon and waterway that would access the

1  San Joaquin River Delta expired by its terms on March 31, 2008, and was not subject to renewal

2  in a timeframe that met the requirements of the Project. Had SC Management not managed to

3  complete construction of the waterway by March 31, 2008, the Project, as conceived, would have

4  been in jeopardy.

5        7.    SC Management has been the party responsible for managing development of the

6  Project. Because a key part of the Project was the ability to create an interior waterway that would

7  allow access to the San Joaquin River Delta, SC Management was responsible for negotiating and

8  maintaining all permits necessary to build the waterway, as well as for managing construction of

9  the waterway and ensuring completion of all grading on the Project. SC Management worked

10  with great diligence to ensure that the waterway was built and the Project fully graded prior to

11  expiration of the Permit, and it was successful in doing so, all to the benefit of the Debtor.

12        8.    The design and construction of the waterway, including canals and boat docks,

13  grading the entire Project, paving the streets and completing all site improvements, with the

14  exception of water and gas, was a major undertaking that substantially enhanced the value of the

15  Project. SC Management managed and directed the process and came into the Project at Lehman's

16  specific request to do so, because of a failure with its prior management company and partner.

17  Due to the efforts of SC Management prior to and during the Claim Period, the Debtor holds a

18  fully graded property with an interior waterway that will allow a purchasing builder to offer boat

19  docks and a water recreation community to purchasers of homes within the Project. SC

20  Management conveyed a substantial benefit to the Debtor.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3        Executed May 31, 2011, at Irvine, California.

4

5                                         _____

6                                         FRANK FAYE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Von Karman Towers, Seventh Floor, 2211 Michelson Drive, Irvine, California  92612

A true and correct copy of the foregoing document described as <u>RESPONSE TO JOINT MOTION FOR ORDER DISALLOWING GENERAL UNSECURED AND ADMINISTRATIVE CLAIMS OF SUNCAL MANAGEMENT, LLC; DECLARATION OF BRUCE V. COOK, FRANK FAYE AND TOM ROLLINS IN SUPPORT THEREOF</u> will  be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 1, 2011</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☒ Service Information continued on attached page.

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>June 1, 2011</u>  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on <u>June 1, 2011</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 1, 2011 | Jeannie Mendez | *Jeannie Mendez* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

---

### ADDITIONAL SERVICE INFORMATION (if needed):

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1

- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1