RONALD RUS, #67369
rrus@rusmiliband.com
JOEL S. MILIBAND, #77438
jmiliband@rusmiliband.com
CATHRINE M. CASTALDI, #156089
ccastaldi@rusmiliband.com
RUS, MILIBAND & SMITH
A Professional Corporation
Seventh Floor
2211 Michelson Drive
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

Attorneys for SunCal Management, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | CASE NO. 8:08-bk-17206-ES |
| PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | Chapter 11 |
| Jointly Administered Debtors and Debtors-in-Possession. | Jointly Administered With Case Nos.: |

Affects:
☐    All Debtors
☐    Palmdale Hills Property, LLC
☐    SunCal Beaumont Heights, LLC
☐    SCC/Palmdale, LLC
☐    SunCal Johannson Ranch, LLC
☐    SunCal Summit Valley, LLC
☐    SunCal Emerald Meadows LLC
☐    SunCal Bickford Ranch, LLC
☐    Acton Estates, LLC
☐    Seven Brothers LLC
☐    SJD Partners, Ltd.
☐    SJD Development Corp.
☐    Kirby Estates, LLC
☐    SunCal Communities I, LLC
☐    SunCal Communities III, LLC
☐    SCC Communities LLC
☐    North Orange Del Rio Land, LLC
☐    Tesoro SF LLC
☐    SunCal Heartland, LLC
☐    LB/L-SunCal Oak Valley, LLC

*Caption Continued on Next Page*

8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES; and
8:08-bk-17588-ES

**RESPONSE TO JOINT MOTION FOR ORDER DISALLOWING GENERAL UNSECURED AND ADMINISTRATIVE CLAIMS OF SUNCAL MANAGEMENT, LLC; DECLARATIONS OF BRUCE COOK, STAN BROWN, AND TOM ROLLINS IN SUPPORT THEREOF**

**[RE DEBTOR SUNCAL MARBLEHEAD, LLC]**

446022v1 ts 5/31/11 2 (2882-0001)

| | |
|---|---|
| ☐ LB/L-SunCal Northlake, LLC | JUDGE:    Hon. ERITHE A. SMITH |
| ☒ SunCal Marblehead, LLC | DATE:    June 14, 2011 |
| ☐ SunCal Century City, LLC | TIME:    10:30 a.m. |
| ☐ SunCal PSV, LLC | CRTRM.:    5A |
| ☐ Delta Coves Venture, LLC | |
| ☐ SunCal Torrance Properties, LLC | |
| ☐ SunCal Oak Knoll, LLC | |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY COURT

JUDGE, MOVANTS LEHMAN ALI, INC. AND STEVEN M. SPEIER, CHAPTER 11

TRUSTEE; AND THEIR COUNSEL OF RECORD:

   SUNCAL MANAGEMENT, LLC ("SC MANAGEMENT") responds to the Joint Motion

For Order Disallowing General Unsecured And Administrative Claims Of SunCal Management,

LLC (the "Objection") filed by Lehman Ali, Inc. (the "Lehman Lender") and Steven M. Speier,

Chapter 11 Trustee (collectively the "Lehman Objectors") for SunCal Marblehead Properties, LLC

(the "Debtor").

1.    INTRODUCTORY STATEMENT

   The Lehman Objectors acknowledge that SC Management performed the services and

incurred the expenses for which they directly invoiced the Debtor during the period from August

2007 to November 2008 (the "Claim Period").  The Objection evidences no dispute that the Debtor

benefitted from the services of SC Management in developing the Debtor's real property located in

San Clemente, California, consisting of a 247-acre site expected to offer 308 residential and

commercial lots, with canyon and ocean views from a number of lots (the "Project").  Rather, the

Objection's aim, in contravention of law and equity, is that the Lehman Objectors should obtain

the benefit of such services without any compensation to SC Management.

/ / /

/ / /

/ / /

/ / /

/ / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA, 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    SC Management respectfully requests that this Court allow the Proof of Claim[1] filed by SC

2    Management in the amount of $1,799,805.75 (the "Claim Amount"), which represents the

3    undisputed value of the services performed and the expenses incurred on behalf of the Debtor

4    during the Claim Period and reject the unfair result sought by the Lehman Objectors and the

5    specious arguments advanced in support of such result.[2]

6    2.    STATEMENT OF FACTS

7        A.    The Bankruptcy Filing

8        On or about November 12, 2008 (the "Petition Date"), an involuntary bankruptcy was

9    commenced against the Debtor.  An Order For Relief was entered on January 8, 2009.

10       B.    SC Management Provided Development Management Services To The Debtor For

11              Which It Should Be Compensated

12       In approximately June 2005, SC Management began providing development, management

13   and sales services for the Debtor in connection with development of the Project.[3]  Specifically,

14   SC Management provided the following services (the "Development Management Services")

15   during, and prior to, the Claim Period:

16       •    Participating in the selection and coordination of services of contractors whose

17            services were necessary to perform development and sale services and functions;

18       •    Soliciting proposals and negotiating contracts for all development, marketing and

19            related consultant activities, including without limitation, civil engineering, soils

20            engineering, environmental consultants, marketing consultants, traffic engineers,

21

22

23   [1] A true and correct copy of SC Management's proof of claim assigned Docket No. 11-1 in the amount of
     $1,799,805.75, which was filed on March 19, 2009, and requests payment for services rendered and expenses incurred
24   in connection with the Project during the time period from August 2007 through November 2008 (the "Proof of
     Claim") is attached as Exhibit "1."

25   [2] While the Objection also seeks that this Court rule on SC Management's Administrative Claims, SC
     Management has not filed a Request For Payment Of Administrative Claims, and no administrative claims bar date
26   has been set.  SC Management will be filing a timely Request For Payment Of Administrative Claim.  Claim Nos.
     18-1 and 18-2 were filed as placeholders and were not intended to substitute for a properly filed Request For Payment
27   Of Administrative Claim.

     [3] See Declaration of Stan Brown at ¶ 4.
28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

real estate brokers, and others in accordance with a project budget agreed to by the Debtor's members;

- Coordinate, monitor and review the work of all professionals in connection with the Project;

- Review bids and prepare bid analyses and coordinate awarding contracts and rejecting bids in accordance with project budgets agreed to by the Debtor's members and the Lehman Lender (the "Project Budget");

- Coordinate the work of all contractors pursuant to the terms of the Project Budget and maintain quality control with respect to such work;

- Review all existing development related documents and assist in the preparation and review of additional development documents;

- Ensure that the Debtor holds all necessary approvals and permits for the development and improvement of the Project and further ensure that the development and improvement of the Project are being performed in compliance with the Project Budget and with all applicable codes, regulations, permits, approvals and site plans;

- Conduct frequent inspections of the work of consultants and contractors and verify that the work is being performed in accordance with related contracts and the Project Budget;

- Monitor the delivery, and if necessary, storage, protection and security for:  all materials, systems and equipment to be used in the development of, or incorporated into the Project;

- Submitting and completing applications for the purpose of posting bonds or other appropriate forms of surety, and securing the release of such bonds when appropriate;

- Assemble and retain all contracts, agreements and other records and data as may be necessary to carry out its functions, and similar records for functions performed by contractors and third party vendors;

RUS, MILLBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1       •    Maintain proper books of contracts and records on behalf the Debtor relating to

2            services performed under this Agreement, and development, operations, expenses

3            and proceeds of the Project;

4       •    Preparation of status reports, as requested by the Debtor's members;

5       •    Preparation of unaudited financial reports and business summaries of SC

6            Management's activities with respect to the Project;

7       •    Prepare for and attend meetings requested by the Debtor to review the progress of

8            the Project; and

9       •    Maintain a constant line of communication with the Debtor and give advice and

10           recommendations regarding the development, business, operations, performance

11           and affairs of the Project.[4]

12   From the inception of the Project to the Petition Date, SC Management invoiced the Debtor

13   directly for services performed and expenses incurred on a monthly basis consistent with the

14   Project Budget.  It was the custom and practice of SC Management and the Debtor that invoices

15   were billed directly to the Debtor, who owned the Project, and the Debtor paid SC Management

16   directly for services performed from the inception of SC Management's work on the Project.[5]

17       C.    The Project And SC Management's Role

18       In mid 2005, SC Management began managing the development of a master planned

19   community offering canyon and ocean views in San Clemente, California.  The Debtor envisioned

20   that the Project, when completed, would consist of 308 lots, including both residential and

21   commercial development in a canyon and ocean view setting.  The Project would be enhanced by

22   ///

23   ///

24

25       [4] See Declaration of Bruce Cook at ¶ 7 and a true and correct copy of the Development Management Agreement

26   (the "DMA") by and between SC Management and SCC JV Ventures LLC, a Delaware limited liability company, the
Debtor's operating member.  SC Management was not a signatory to a DMA with the Debtor; however, SC

27   Management contends that the DMA describes the services performed by SC Management for the Debtor.

    [5] See Declaration of Tom Rollins at ¶ 4.

28

1  three parks, the Ocean Club - a clubhouse, a community pool, spa and recreation center, as well as

2  a bridge across a natural canyon/open space within the Project boundaries to allow beach access to

3  residents.[6]

4          As of the Petition Date, SC Management had supervised the completion of grading on the

5  residential lots, the construction of a bridge which continued throughout the summer of 2008 at

6  the direction of the Debtor and the Lehman Lender, construction of exterior roads on Pacific Coast

7  Highway and Avenida Pico, establishment of mitigation habitat required under Army Corps of

8  Engineers 404 permits obtained in connection with the Project, and processing an amendment to

9  the Project's Coastal Permit to provide an enhanced waterfront view for a number of the lots, and

10  installation of landscape.  Many of the lots were ready for construction, and SC Management was

11  in the process for applying for the Department of Real Estate's White Report for the Project at the

12  time of the bankruptcy filing.  SC Management had also begun marketing and sales in connection

13  with the Project, and held deposits on four sales as of the Petition Date, and was negotiating with a

14  number of builders who were interested in participating in the Project.  SC Management has been

15  the party responsible for managing development of the Project, and conveyed a substantial benefit

16  to the Debtor at Debtor's request.

17          D.    The March 19, 2009 Proof Of Claim

18          The Debtor scheduled an unsecured claim due and owing to SC Management in the

19  amount of $1,910,942.56.

20          SC Management timely filed its Proof of Claim in the lesser amount of $1,799,805.75.[7]

21  Due to the voluminous nature of the documents supporting the Proof of Claim, SC Management

22  prepared a summary sheet setting forth the dates of invoice, the amount of each open invoice and a

23  description of the services and expenses provided which was attached to the Proof of Claim.

24  / / /

25  / / /

26  ─────────────────

27  [6] See Declaration of Stan Brown at ¶ 6.

[7] A true and correct copy of the Proof of Claim is attached to the Declaration of Bruce Cook as Exhibit "1."

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

        (1)    Management Fees

By its Proof of Claim, SC Management seeks payment of management fees for management services performed for the Debtor during the period from September 2007 through November 2008.   The monthly management fees charged had a reasonable value of $111,136.81, and are consistent with the modified project budgets established as part of the May 23, 2008 Restructuring Agreement between Lehman Brothers Holdings, Inc., a Delaware Corporation, the Lehman Lender, certain related Debtors, including the Debtor, and SC Management, among others (the "Restructuring Agreement").[8]  As part of the Restructuring Agreement, the Debtor, the Lehman Lender and SC Management acknowledged that the reasonable value of the monthly management fees would be $111,137, to reflect a change in the direction of the Project from a full scale development to a hold in place development status with only certain limited development activities.  The management fees reflected in the Proof of Claim are consistent with this amount. In this case, management fees of $222,273.62 were incurred by the Debtor and remained unpaid as of the Petition Date.[9]

        (2)    Project Staff Costs

SC Management invoiced the Debtor monthly for the actual time spent by certain employees related to the Project, which were billed as Project Staff Costs.  Project Staff Costs of $757,228.50 were incurred by the Debtor and remained unpaid as of the Petition Date.  Each invoice for Project Staff Costs attached the name of the employees and the number of hours expended in the month in connection with the Project.  The hourly rates charged were reasonable and did not exceed amounts that were approved by the Debtor, as well as the Lehman Lender as part of the Project Budgets.[10]

/ / /

/ / /

---

[8] A true and correct copy of the Restructuring Agreement is attached to the Declaration of Bruce Cook as Exhibit "4."

[9] See Declaration of Tom Rollins at ¶ 5.

[10] See Declaration of Tom Rollins at ¶ 6.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

### (3)    Marketing Staff Costs

In addition, SC Management separately invoiced the Debtor for time expended by its employees in connection with marketing the Project, which were billed as Marketing Staff Costs. Marketing Staff Costs of $93,180.75 were incurred by the Debtor and remained unpaid as of the Petition Date. Each invoice for Marketing Staff Costs attached the name of the employees and the number of hours expended in the month in connection with the Project. The hourly rates charged were reasonable and did not exceed amounts that were approved by the Debtor, as well as the Lehman Lender as part of the Project Budgets, and which were paid by the Debtor.[11]

### (4)    Legal Staff Costs

SC Management used its in-house legal staff, where feasible, to manage legal issues related to the Project. Monthly invoices were generated for legal staff costs chargeable to the Project. Legal Staff Costs of $64,650.00 were incurred by the Debtor and remained unpaid as of the Petition Date. The hourly rates charged were reasonable and did not exceed amounts, which were approved by the Debtor as well as the Lehman Lender as part of the Project Budgets and which were paid by the Debtor.[12]

### (5)    Insurance Costs

SC Management obtained a global policy of insurance for all projects under management.[13] At the beginning of the term, SC Management would allocate premium payment amongst the projects under management based upon estimated costs to be incurred at a project over the policy term. At the end of each term, an audit was performed as to the actual costs incurred and the premium was reallocated based on actual costs. In the case of the Debtor, this resulted in an adjustment for 2006 and the 2007-2008 term totaling $345,389.00 (the "Insurance

---

[11] See Declaration of Tom Rollins at ¶ 7.

[12] See Declaration of Tom Rollins at ¶ 8.

[13] Lehman attempts to argue that the insurance costs charged were for the purpose of insuring SunCal Management, LLC and its employees, but this argument is not correct. All insurance costs billed to the Debtor related to insurance costs incurred on behalf of the Debtor. SC Management also maintained its own general liability and worker's compensation insurance (the "SC Management Insurance"). The SC Management Insurance was billed to and paid for by SC Management and was not invoiced to the Debtor. See Declaration of Tom Rollins at ¶ 9.

1  Adjustment"), which adjustment was invoiced.  The total Insurance Costs, including the Insurance

2  Adjustment that were incurred by the Debtor and remained unpaid as of the Petition Date were

3  $536,433.00.[14]  These costs also included insurance that was unique to the Project due to the

4  construction of a bridge over a major thoroughfare.

5            (6)    Employee Expense Reimbursement

6        SC Management employees were reimbursed for out-of-pocket costs incurred in

7  connection with the Project.  The employees filed expense reports, including receipts for

8  expenditures, and upon approval by SC Management, they were paid.  SC Management in turn

9  invoiced these amounts, with supporting back-up documentation to the Debtor on a monthly basis.

10  As of the Petition Date, the Debtor owed SC Management the sum of $12,134.38 in connection

11  with employee expenses.

12            (7)    Third Party Vendors

13        During the course of SC Management's management of the Project, expenses were

14  incurred to third party vendors on behalf of the Project, which were paid by SC Management.  In

15  this case, the Debtor had marketing expenses associated with the Project in the amount of

16  $90,221.10.  SC Management in turn invoiced these amounts to the Debtor, with supporting back-

17  up documentation.  As of the Petition Date, the Debtor owed SC Management the sum of

18  $90,221.00 in connection with vendor expenses.[15]

19        SC Management has provided additional backup documentation to the Lehman Objectors,

20  including the invoices that are attached to the Objection as Exhibit "B."[16]  The components of the

21  proof of claim are set forth in the following chart:

22  / / /

23  / / /

24  / / /

---

25
26     [14] See Declaration of Tom Rollins at ¶ 9.

   [15] See Declaration of Tom Rollins at ¶ 11.

27     [16] The relevant portions of Exhibit "B" will be submitted with an Amended Proof of Claim to be filed on May 31,
2011.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

| Category | Invoice Date | Invoice Amount | Invoice No. | Invoice Description |
|---|---|---|---|---|
| Management Fees[17] | 10/1/2008 | $111,136.81 | 20090434 | Oct-08 Management Fees |
| | 10/16/2008 | $111,136.81 | 20090528 | Nov-08 Management Fees |
| Project Staff Costs[18] | 10/2/2007 | $106,441.00 | 20078229 | Aug-07 Project cost |
| | 10/2/2007 | $42.472.00 | 20078230 | Aug-07 Project Cost |
| | 10/15/2007 | $77,940.00 | 20078116 | Sept-07 Project Cost |
| | 10/15/2007 | $7,604.00 | 20078117 | Sept-07 Project Cost |
| | 12/12/2007 | $109,600.00 | 20078814 | Oct-07 Project Cost |
| | 12/12/2007 | $32,906.00 | 20078816 | Oct-07 Project Cost |
| | 12/19/2007 | $97,977.00 | 20078979 | Nov-07 Project Cost |
| | 12/19/2007 | $3,420.00 | 20078980 | Nov-07 Project Cost |
| | 1/16/2008 | $4,704.50 | 20089143 | Dec-07 Project Cost |
| | 1/24/2008 | $61,625.00 | 20089165 | Dec-07 Project Cost |
| | 2/8/2008 | $10,579.00 | 20089342 | Jan-08 Project Cost |
| | 2/8/2008 | $62,219.00 | 20089421 | Jan-08 Project Cost |
| | 2/8/2008 | $4,394.00 | 20089422 | Jan-08 Project Expense |
| | 3/17/2008 | $60,911.00 | 20089540 | Feb-08 Project Staff Cost |
| | 3/17/2008 | $10,570.00 | 20089541 | Feb-08 Project Staff Cost |
| | 4/9/2008 | $23,230.50 | 20089744 | Mar-08 Project Staff Cost |
| | 4/9/2008 | $40,636.00 | 20089780 | Mar-08 Project Staff Cost |
| Marketing Staff Costs[19] | 10/2/2007 | $32,874.00 | 20078247 | Aug-07 Marketing cost |
| | 10/15/2007 | $14,865.00 | 20078407 | Sep-07 Marketing cost |
| | 12/6/2007 | $15,310.00 | 20078805 | Oct-07 Marketing cost |
| | 12/17/2007 | $7,383.50 | 20078878 | Nov-07 Marketing cost |
| | 1/16/2008 | $8,793.50 | 20089144 | Dec-07 Marketing cost |
| | 3/7/2008 | $9,765.75 | 20089531 | Feb-08 Marketing Staff Costs |
| | 4/9/2008 | $4,189.00 | 20089745 | Mar-08 Marketing Staff Costs |
| Legal Staff Costs[20] | 2/11/2008 | $2,325.00 | 20089356 | Nov-07 Legal Staff Costs |
| | 2/11/2008 | $1,900.00 | 20089374 | Dec-07 Legal Staff Costs |
| | 3/18/2008 | $24,375.00 | 20089590 | Jan-08 & Feb-08 Legal Staff Costs |
| | 4/11/2008 | $9,775.00 | 20089767 | Mar-08 Legal Staff Costs |
| | 5/14/2008 | $26,275.00 | 20089878 | Apr-08 Legal Staff Costs |
| Insurance Costs[21] | 10/17/2007 | ($4,365.00) | 20070221 | 2006 Gen. Liab. Ins. – final adjust |
| | 12/13/2007 | $21,727.00 | 20078845 | Gen Liab. Ins – 7th installment |
| | 1/14/2008 | $21,828.00 | 20089048 | Gen Liab. Ins – 8th installment |
| | 2/7/2008 | $21,828.00 | 20089282 | Gen Liab. Ins – 9th installment |
| | 3/7/2008 | $22,813.00 | 20089475 | Gen Liab. Ins – 10th installment |
| | 6/20/2008 | $92,996.00 | 20090042 | 4/08 to 6/08 Gen Liab & Floater – Jul 08 Gen Liab & Floater Ins. |
| | 7/23/2008 | $19,185.00 | 20090199 | Aug-08 Gen'l Liab & Floater Ins |
| | 8/14/2008 | $349,754.00 | 20090259 | 2007-08 Insurance adj. |

---

[17] A true and correct copy of the Management Fee invoices are attached as Exhibit "5."

[18] A true and correct copy of Project Staff Cost invoices are attached as Exhibit "6."

[19] A true and correct copy of Marketing Staff Cost invoices are attached as Exhibit "7."

[20] A true and correct copy of Legal Staff Cost invoices are attached as Exhibit "8."

[21] A true and correct copy of Insurance Cost invoices are attached as Exhibit "9."

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

| | | | | |
|---|---|---|---|---|
| | 10/17/2008 | $7,190.00 | 20090577 | 10/17/2008 Gen Liab Ins-2nd installment |
| | 10/31/2008 | $7,190.00 | 20090667 | 10/31/2008 Gen Liab Ins-3rd installment |
| Employee Expense Reimbursement[22] | 11/27/2007 | $2,505.82 | 20078740 | Amex-July 07 |
| | 12/18/2007 | $145.07 | 20078932 | Danielle Mau, 10/16/07 Exp and Marianne Browne, 7/16-10/9/07 |
| | 1/29/2008 | $546.41 | 20089203 | Aug 07 Amex-David Soyka |
| | 1/29/08, | $1,269.82 | 20089205 | June 07 Amex, July 07 Amex, July 07 Amex |
| | 1/29/2008 | $3,300.22 | 20089215 | June-07 Amex-David Soyka |
| | 2/22/2008 | $71.21 | 20089433 | Marianne Browne, 11/13-2/01/08 |
| | 4/24/2008 | $546.41 | 20089816 | Expense reimb-David Soyka |
| | 5/31/2008 | $600.28 | 20089935 | Lisa Gordon, 1/11-4/11/08 Exp |
| | 6/18/2008 | $699.14 | 20090003 | Robert Law, 11/28/07-5/1/08 Exp |
| | 7/18/2008 | $2,450.00 | 20090126 | Exp report-Robert Espinosa |
| Third Party Vendor Expenses[23] | 12/31/2007 | $44,449.50 | 20079015 | Billboard lease-Jul 07 – Sep 07 |
| | 12/31/2007 | $44,449.50 | 20079016 | Billboard lease-Oct 07 – Dec 07 |
| | 11/11/2008 | $350.00 | 20090706 | For Wirehat Interactive 9/4/08 |
| | 2/15/2008 | $833.00 | 20089394 | Saddleback College Foundation |
| | 5/5/2008 | $139.10 | 20089853 | Cision US Inc-1/31/08 |
| Credit for Duplicate Billing | 10/24/2007 | ($29.10) | 20070239 | Duplicate Billing – 5/17/2007 |
| Total | | $1,799,805.75 | | |

E.    The Objection

Notwithstanding that the Proof of Claim has been pending since March 19, 2009, on April 21, 2011, the Lehman Objectors filed objections to the Proof of Claim, as well as SC Management's proofs of claim in the seven related involuntary debtor bankruptcy cases.

3.    THE DEBTOR IS LIABLE TO SC MANAGEMENT FOR $1,799,805.75 IN UNSECURED PRE-PETITION CLAIMS

From the time that SC Management first provided Development Management Services on June 10, 2005, through November 16, 2008, when the Debtor's bankruptcy case was commenced

---

[22] A true and correct copy of Employee Expense Reimbursement invoices and additional supporting documentation are attached as Exhibit "10."

[23] A true and correct copy of Third Party Vendor Expense invoices and additional supporting documentation are attached as Exhibit "11."

Rus, Miliband & Smith
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

by the filing of an involuntary bankruptcy petition, SC Management issued the Debtor invoices for

Development Management Services.  The Debtor routinely paid  invoices when presented until

October 2007.[24]  The conduct of the Debtor and SC Management during this three year period

established an implied in fact contract between the Debtor and SC Management.[25]

Witkin defines an implied contract as follows:

> " 'An express contract is one, the terms of which are stated in
> words." (*[Civil Code,* §] 1620.) "An implied contract is one, the
> existence and terms of which are *manifested by conduct." ([Civil
> Code, § 1621.)* (See also Rest.2d, Contracts § 4 ["A promise may be
> stated in words either oral or written, or may be inferred wholly or
> partly from conduct"]; 1 Corbin § 18; 1 Williston 3d § 3; 17
> Am.Jur.2d, Contracts §§ 3, 4.)

The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of*

*assent;* both types are based upon the expressed or apparent intention of the parties. "The true

implied contract, then, consists of obligations arising from a mutual agreement and intent to

promise where the agreement and promise have not been expressed in words." (1 Witkin,

Summary of Cal. Law (9th ed. 1987) Contracts, §11, p. 46).[26]

Here, the Debtor and SC Management developed a custom and practice over a three year

period during which SC Management regularly invoiced the Debtor for the reasonable value of its

services provided for the Debtor's account at the Debtor's request, and the Debtor paid for such

---

[24] See Declaration of Tom Rollins at ¶ 4.  A true and correct copy of a spreadsheet evidencing the Debtor's payment of invoices from SC Management is attached as Exhibit "12."

[25] The Objection erroneously assumes that the basis for SC Management's unsecured claim is the Development Management Agreement between SCC JV Ventures LLC and SC Management.  (See Objection at page 6, lines 7-10). The Lehman Objectors also attempt to rely on agreements, the Upper Tier Marblehead/Heartland JV Agreement, which does nothing to spell out the obligations of the Debtor to SC Management.  Instead, these Agreements govern the relationship of the parties to them, and not the relationship between SC Management and the Debtor.

[26] As Witkin, Summary 10th (2005) Contracts, § 102, p. 144 notes:

"An implied contract is one, the existence and terms of which are manifested by conduct." (C.C. 1621.) (See Rest.2d, Contracts §4 ["A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct"]; 1 Corbin (Rev. ed.), §1.19; 1 Williston 4th, §1.5; 17A Am.Jur.2d (2004 ed.), Contracts §12 et seq.; Cal. Civil Practice, 3 Business Litigation, §24:4; Cal. Transactions Forms, 1 Business Transactions §6:2; BAJI, No. 10.56 [Express or Implied Contracts]; CACI, No. 305 [Implied-in-Fact Contract].) (On distinguishable quasi-contract, see infra, §103.)"

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  services. Lehman's argument that the Debtor has no liability to SC Management on account of the

2  Development Management Services provided to it by SC Management because the Debtor was not

3  a signatory to a written agreement with SC Management for services is meritless in light of the

4  parties' custom and practice giving rise to an implied in fact contract.

5        There is no dispute but that SC Management performed the services for which it seeks

6  payment from the Debtor. Thus, the only question is whether to allow the Debtor and the Lehman

7  Objectors to be unjustly enriched at the expense of SC Management. It should not. The clear

8  intent of SC Management and the Debtor, as manifested by their conduct over a three year period,

9  was that SC Management would perform the Development Management Services for which it

10  would bill the Debtor consistent with the Project Budget and other agreements between the Debtor

11  and the Lehman Lender, and the Debtor would pay SC Management.

12  4.      ALTERNATIVELY, SC MANAGEMENT'S CLAIM SHOULD BE ALLOWED IN

13          QUANTUM MERUIT

14        SC Management's equitable claims – services performed, *quantum meruit* and unjust

15  enrichment – arise from the Debtor's failure to compensate SC Management for providing services

16  usually charged for; specifically, for performing Development Management Services on the

17  Debtor's behalf. The elements of these common counts are substantively the same. *See In re De*

18  *Laurentiis Entertainment Group*, 963 F.2d 1269 (9th Cir. 1992) ("*Quantum meruit* (or quasi-

19  contact) is an equitable remedy implied by the law under which a plaintiff who has rendered

20  services benefiting the defendant may recover the reasonable value of those services when

21  necessary to prevent unjust enrichment of the defendant."). The elements of these claims are

22  substantially the same and do not depend upon the existence of a contract:

23              In this state it is an established principle that "where one performs
                for another, with the other's knowledge, a useful service of a
24              character usually charged for, and the latter expresses no dissent, or
                avails himself of the service, a promise to pay the reasonable value
25              of the services is implied.

26  *Gray v. Whitmore*, 17 Cal. App. 3d 1, 24 (1971); *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475

27  (1953), *citing, Brown v. Crown Gold Milling Co.*, 150 Cal. 376, 382 (1907)(Claim for *quantum*

28  *meruit* is established upon a showing that plaintiff performed certain services for the defendant,

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1  their reasonable value, that they were rendered at the request of defendant and that they are

2  unpaid.) As opposed to the basis for the implied in fact contract discussed above, the common

3  count theories are based in implied in law contracts.

4  As detailed above and in the declarations of Stan Brown and Tom Rollins, it is established

5  that SC Management performed the Development Management Services for the Debtor, at the

6  Debtor's request, and that the Debtor accepted those services, with "an understanding or

7  expectation of both parties that compensation therefore was to be made." *Huskinson & Brown,*

8  *LLP v. Wolf,* 32 Cal. 4th 453, 458 (2004). Indeed, there is no dispute that the services were

9  performed. The only remaining issue is the determination of the value of those services.

10  Relevant to the reasonable *value* of the service provided to the Debtor, the amount at

11  which the Debtor and Lehman valued such services in the Project Budget and Restructuring

12  Agreement. Since the Management Fees charged by SC Management were within the amounts

13  the Debtor and the Lehman Lender provided in the Project Budgets and Restructuring Agreement,

14  they were by definition reasonable. Moreover, there can be no question but that the charges for

15  insurance costs and expense reimbursement categories were merely pass through costs and also

16  reasonable.

17  5.    THE ARGUMENT THAT CLAIMANT HAS BEEN OVERPAID MANAGEMENT

18      FEES IS MERITLESS

19  The Lehman Objectors mistakenly rely on a misapplication and a misinterpretation of the

20  Development Management Agreement between SC Management and Debtor's Operating Member,

21  SCC JV Ventures, LLC, and the Operating Agreement for the Debtor, to which SC Management

22  is not a party, to argue that SC Management has been overpaid by the Debtor. As discussed

23  above, Debtor's obligations to SC Management on which the Proof of Claim is based are direct by

24  virtue of the implied in fact and implied in law contract relationship between SC Management and

25  Debtor, and are neither based on nor restricted by either of these agreements.

26  The Lehman Objectors confuse the provisions of the Development Management

27  Agreement as they relate to an express contractual relationship between SC Management and SCC

28  JV Ventures, LLC, on the one hand, and as they relate to defining the parameters of the implied in

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

446022v1 ts 5/31/11 2 (2882-0001)        14

1  fact contract with and the reasonable value of SC Management's services to the Debtor as reflected

2  in the Project Budgets and later the Restructuring Agreement, on the other.[27]  As set forth above,

3  SC Management is requesting an allowed claim on account of two months of management fees at

4  $111,137 per month (as set out in the May 2008 Restructuring Agreement), as the reasonable

5  value of its services to the Debtor.

6      The Lehman Objectors also misinterpret the Development Management Agreement, where

7  at page 7, paragraph 5.1 it sets out a formula to calculate the management fee to be charged on a

8  monthly basis as follows:

9      "at an amount equal to three percent (3%) of (a) the gross revenue
       derived from the sale of the Property, and (b) the net proceeds
10      received from the funding of any community facilities district
       ('CFD') formed in connection with the development and sale of the
11      Project  based upon a 3% of the gross revenue generated from the
       sale of the Debtor's property and certain CFD Proceeds."[28]
12

13  This formula, and the operative Project Budgets for the relevant time periods, were premised on a

14  completed build-out of the Project,[29] and not on the "as-is" value of the Property, as argued by the

15  Lehman Objectors.  Indeed, the Lehman Objectors' suggestion that the gross proceeds from the

16  build-out and sale of the Project is equivalent to the as-is value of a Project that has been moth-

17  balled for over two years due to the Lehman Lender's malfeasance in failing to fund the Project is

18  comparing apples to oranges.  The management fees that were to be incurred in the management

19  of the Project necessarily had to be based on the "build-out" value since the services provided by

20  SC Management (or any manager) would be directly proportional to the work required to achieve

21  the desired build-out.  Anything less would result in management services being provided to the

22  Debtor at both a severe discount and on what would have been a contingent basis.  That was never

23  the foundation of the implied in fact contractual relationship between SC Management and the

24  / / /

25

26  [27] Even if the Development Management Agreement was the controlling agreement between SC Management and
     the Debtor (which it is not), such agreement provides no mechanism to disallow management fees.

27  [28] See page 7, ¶5.1 of the Development Management Agreement attached to the Objection at Exhibit E.

     [29] See Declaration of Bruce Cook at ¶ 10.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  Debtor, nor would it result in reasonable fees to SC Management, who performed services

2  consistent with the efforts required to achieve the anticipated build-out.

3       Lehman also argues that payment of SC Management's management fees should be subject

4  to "a 'true up' upon the ultimate sale of the project." Not only is there no such provision in the

5  Development Management Agreement (which in any event is not the basis for the Proof of

6  Claim), the Lehman Objectors provide no evidence (because none exists) that SC Management

7  was a party to any agreement, oral or written, that required a "true up" of any management fee

8  payments. Nor would such an agreement make sense. The risk of a less than successful Project

9  does not fall on creditors who provide valuable services to the Debtor. In fact, the parties

10  recognized this not only by not including such a provision in the Development Management

11  Agreement, but placing the only "true-up" provision in the Debtor's Operating Agreement, as

12  between the equity members.[30]

13       SC Management cannot have been overpaid for the services provided, as such services

14  were provided at a rate and in the amount all parties agreed was and is reasonable. In fact, the

15  Debtor paid these fees through May 2007, at which time Project funding was wrongfully

16  suspended by the Lehman Lender, and again throughout the summer of 2008. The Court should

17  allow that portion of SC Management's Proof of Claim attributable to management fees equal to

18  $222,273.62, still due and owing to SC Management.

19  6.    THE LEHMAN OBJECTORS' SUBORDINATION ARGUMENT ADDRESSES THE

20         PRIORITY OF SC MANAGEMENT'S CLAIM VIS A VIS THE LEHMAN LENDER,

21         NOT ITS ALLOWANCE

22       Although SC Management is a signatory to a Consent And Subordination Of Development

23  Management Agreement (the "Subordination Agreement"), SC Management does not concede the

24  / / /

25  / / /

26  _____

27    [30] Moreover, even if relevant here (which it is not) any "true up" between the parties to the Operating Agreement
referenced by Lehman would only occur upon a completed build-out, issuance of CFD proceeds and sale at retail.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  validity or enforceability of the Subordination Agreement, or its impact on the *allowance* of SC

2  Management's claim against the Debtor.[31]

3          By paraphrasing the Subordination Agreement, rather than addressing its actual terms, the

4  Lehman Objectors argue that SC Management's right to an unsecured claim in this bankruptcy

5  estate should be denied outright.  Rather than attempt to interpret the unambiguous language of the

6  Subordination Agreement, as the Lehman Objectors have done, SC Management invites the

7  Court's attention to the actual language of the agreement:

8           "The Management Agree and any all liens, rights and interests
            (whether choate or inchoate and including, without limitation, all
9           mechanic's and material men's liens under applicable law) owned,
            claimed or held by Manager *in and to the Property* are and shall be
10          in all respects subordinate and inferior to the Loan and the liens and
            security interests created or to be created for the benefit of Agent
11          [defined as Lehman Ali, Inc., a Delaware corporation] and
            Lenders…[32]"

12

13  Thus, even assuming (without conceding) its enforceability, the Subordination Agreement is

14  *irrelevant to the allowance of SC Management's unsecured claim against the Debtor*.   SC

15  Management's unsecured claim is not a claim in the Property, it is a claim to payment from the

16  Debtor.

17          Lehman further argues that so long as no uncured event of default exists, then the

18  Operating Member, SCC JV Ventures, LLC (not the Debtor), can continue to pay management

19  fees in accordance with the approved Development Budget.  This provision does not address

20  entitlement to management fees, or an allowed unsecured claim against the Debtor's bankruptcy

21  estate, under the theories discussed above supporting SC Management's Proof of Claim.  The

22  / / /

23  / / /

24  / / /

25

26  [31] And as requested below, these issues must be determined in connection with an adversary proceeding, and not
    in connection with a summary objection proceeding.

27  [32] See the Subordination Agreement attached to the Objection as Exhibit J and attached to the Declaration of
    Bruce Cook as Exhibit "3."

28

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  subordination argument concerns only the priority of SC Management's claim in relation to *the*

2  *allowed secured claim* of the Lehman Lender, if any.[33]

3  7.     SC MANAGEMENT IS ENTITLED TO RECOVER INSURANCE COSTS

4          The Lehman Objectors allege that the Development Management Agreement prohibits SC

5  Management from making a claim against the Debtor for the cost of the Debtor's insurance.  Since

6  the Development Management Agreement is not the legal basis for the Debtor's obligation to pay

7  SC Management on its Proof of Claim, the terms of the Development Management Agreement as

8  to insurance are irrelevant.  Even if relevant, the Lehman Objectors once again misread the

9  Development Management Agreement.

10         Section 2.2. of the Development Management Agreement between Debtor's Operating

11  Member and SC Management, requires SC Management to pay for and carry general liability and

12  Worker's Compensation insurance for itself and its employees, with the Debtor only as an

13  *additional named insured*.  It did.[34]  This provision does not cover the costs incurred by SC

14  Management to procure separate insurance for the Debtor.  It is reimbursement for these costs that

15  is the subject of the invoices for insurance costs.[35]

16         As set forth in the Declaration of Tom Rollins, SC Management obtained umbrella policies

17  (the "Umbrella Policies") for all of its projects under management, including the Debtor's Project.

18  The policies were priced by the broker based on the estimated hard costs for the developments at

19  issue.  SC Management's in-house risk manager would then allocate the premiums, broker fees, in-

20  house risk management services and direct costs to each project based on estimated hard costs for

21  that project for the term of the policy.  At the end of the term, SC Management would audit the

22  hard costs and re-allocate premiums based on the actual hard costs expended per project.  By

23

24  _____

[33] As the Court is aware, this Debtor and others, have a number of disputes with the Lehman Entities, which may

25  subject the Lehman Entities' Claims to disallowance, which are addressed in the Disclosure Statement Describing
Chapter 11 Plan Filed By SunCal Plan Proponents In The Chapter 11 Cases in connection with the Debtor, SunCal

26  Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC and related debtors. [Docket No. 1894].
See the Request For Judicial Notice filed concurrently herewith.

27  [34] See the Declaration of Tom Rollins at ¶ 9.

[35] See the Declaration of Tom Rollins at ¶ 9.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  obtaining the Umbrella Policies, SC Management was able to achieve a substantial savings for

2  each project, including the Debtor's Project.  The insurance obtained on behalf of the Debtor

3  included the following policies: General Liability - $1 Million, General Liability $60 million,

4  Property, and Installation Floater, which were part of the Umbrella Policies.[36]  Thus, Debtor

5  incurred insurance costs for the relevant time period of $536,433.00, which remained unpaid as of

6  the Petition Date.

7  8.    SC MANAGEMENT IS ENTITLED TO AN UNSECURED CLAIM ON ACCOUNT OF

8        PROJECT STAFF COSTS, MARKETING STAFF COSTS AND LEGAL STAFF COSTS

9        It is undisputed that in the ordinary course of the its relationship with the Debtor, SC

10  Management invoiced the Debtor monthly for Project Staff Costs, Marketing Staff Costs and

11  Legal Staff Costs (collectively "Staff Costs"), and that the Debtor paid those invoices.  The

12  Lehman Objectors do not question the right of SC Management to be compensated for Staff Costs.

13  The Lehman Objectors have information, most of which was included with the invoices, showing

14  the employees, hours expended and charges on a monthly basis per project.  SC Management

15  requires its staff members to input their time chargeable to a particular project, which bills are

16  transmitted to the SC Management accounting staff and submitted for invoicing under the

17  appropriate category.[37]  The hourly rate charged for the employees was known by the Lehman

18  Lender, was paid by the Debtor direct to SC Management and represented the reasonable value of

19  the services provided. [38]

20        The Lehman Objectors argue that the Proof of Claim should be disallowed because it

21  provides no information concerning the actual cost to SC Management for the services performed

22  by Staff.  There is no requirement in Rule 3001 that a party provide information about the actual

23  cost to it of the services that were provided to a debtor.  In this case, the question is whether the

24  amounts billed by SC Management for such services were in accordance with the parties' custom

25  ───────────────

26  [36] See the Declaration of Tom Rollins at ¶ 9.

27  [37] See Declaration of Tom Rollins at ¶ 9.

   [38] See Declaration of Tom Rollins at ¶ 9.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  and practice and whether they represent the reasonable value of the services to the Debtor.  To

2  hold otherwise would require SC Management to disclose overhead costs and other components of

3  its pricing, which is neither relevant to the course of conduct between the parties or the reasonable

4  value of the services, and would invade SC Management's confidential business structure to its

5  detriment in the marketplace.   It is enough that there is a several year history of invoices for Staff

6  Costs being submitted to the Debtor on a monthly basis and those invoices being paid by the

7  Debtor, and independently being the reasonable value of the services to the Debtor.

8  9.      THE OBJECTION IS PREMATURE AS TO SC MANAGEMENT'S TO-BE-FILED

9          REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

10          The Lehman Objectors seek to challenge SC Management's to-be-filed Motion For

11  Payment Of Administrative Claims.  SC Management filed a placeholder claim for administrative

12  expenses to advise parties of the amount of its administrative claim.  SC Management will file a

13  request for payment of administrative claim pursuant to 11 U.S.C. § 503(b) at an appropriate time.

14  As yet there has been no bar date set for administrative claims in this case, and since SC

15  Management has not made a request pursuant to 11 U.S.C. § 503(b), the objection by the Lehman

16  Objectors is premature.

17  10.     THE OBJECTION SHOULD BE CONVERTED TO AN ADVERSARY PROCEEDING

18          In each of the Claims Objections the Lehman Lenders argue that *the subject claims should*

19  *be subordinated* based on certain written Subordination Agreements entered into by SC

20  Management:

21          " Hence, to the extent the Court determines that the Debtor. . . is
            liable to SunCal Management for the payment of Management Fees,
22          SunCal Management's entitlement to such fees *is subordinate to the*
            *rights of Lehman pursuant to the Subordination Agreement.*
23          *SunCal Management's claim for management Fees should*
            *therefore be disallowed.*"  (See, Claim Objections at sections
24          entitled "Claimant's Alleged Entitlement to Payment of Management
            Fees id Subordinate to Lehman's Loan on the Debtor's Property,"
25          [e.g., Exhibit "1," at §III.B.2.], emphasis added).

26          FRBP 3007, under which the Claim Objections are filed, provides that an adversary action

27  is required to the extent an objection to a claim seeks a demand of the kind specified at FRBP

28  7001(8):

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

446022v1 ts 5/31/11 2 (2882-0001)                    20

**"(a) Objections to Claims**

An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing.

**(b) Demand for Relief Requiring an Adversary Proceeding**

A party in interest *shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."*
(Emphasis added)

Subordination of claims is specifically referenced at FRBP 7001(8) as requiring an adversary proceeding:

"An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: . . .(8) *a proceeding to subordinate any allowed claim* or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination; . . " (Emphasis added).

Therefore, pursuant to FRBP 3007(b) and FRBP 7001(8), the Lehman Objectors' claim objections require an adversary proceeding.

The requirement of an adversary proceeding in connection with a concurrent request for disallowance and subordination of claims was recently affirmed by the Ninth Circuit BAP in *In re USA Commercial Mortgage Company*, 377 B.R. 608 (9th Cir. BAP 2007). In *USA Commercial*, the Creditors' Committee filed an omnibus objection to 111 claims filed by an affiliate of the Debtor. By the omnibus claim objection the Committee "contended that the Appellants' claims were duplicative of the proofs of interest which Appellants had filed *and contended that, in any event, that the claims would necessarily be subordinated* pursuant to § 510(b)." *USA Commercial, supra*, 377 B.R. at 611, emphasis added. Furthermore, the *USA Commercial* court made it clear that even where subordination and disallowance are functional equivalents, an adversary action is required:

"In light of the foregoing, it is clear that § 510(b) would subordinate Appellants' claims to a level below the Diversified membership interests. As noted above, the bankruptcy court appears to have been heading in the right direction inasmuch as the effect of subordination may be functionally equivalent to disallowance (*i.e.*,

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    no distribution on the claims). However, ***this is only the case if first
     there is an adversary proceeding***, and then judgment is entered
2    against Appellants. See Rule 7001(8) (requiring an adversary
     proceeding for the subordination of an 'allowed claim or interest')."
3    *Id.*, at 620, emphasis added.

4    Further still, the *USA Commercial* court emphasized that the requirement of an adversary

5    proceeding applies as to "all types of subordination," and that the use of the phrase "allowed

6    claim" in FRBP 7001(8) does not impinge on the requirement of an adversary proceeding in the

7    context of a claim objection:

8    "We disagree with the bankruptcy court's view, quoted above, that
     Rule 7001(8) does not apply to § 510(b). By its own terms, Rule
9    7001(8) does not distinguish between types of subordination. Thus,
     all types of subordination fall under this rule.
10
     While by its own terms Rule 7001(8) only applies to the
11   subordination of "allowed claim[s]," and, pursuant to § 502(a), a
     claim is no longer deemed allowed if there is an objection, the
12   argument that an adversary proceeding was not required in this
     instance due to the filing of the Objection is uncomfortably circular.
13   After all, the nanosecond before the Committee filed its objection,
     Appellants held allowed claims, and an adversary proceeding would
14   have been required to subordinate those claims. It is true that Rule
     7001 only deals with allowed claims, but that is because there is no
15   purpose served in subordinating disallowed claims. Rule 7001
     would have little meaning if you could avoid it by filing an
16   objection." *Id.,* at fn. 13.

17   Moreover, the fact that the Lehman Entities argue contractual subordination, as opposed to

18   equitable subordination under Bankruptcy Code § 510 makes no difference. It is well established

19   that the enforcement of subordination agreements is contemplated within the meaning of FRBP

20   7001(8). See *In re Best Products Co.*, 168 B.R. 35, 69-70 (Bankr. S.D.N.Y. 1994); 6A *Bankr.*

21   *Service L. Ed.* § 57:61 (Subordination, Clause 8) ("Bankruptcy Rules specifically contemplate

22   court dealing with enforcement of subordination agreements . . . under Bankruptcy Rule

23   7001(8)").

24   The Lehman Objectors served twenty-four separate sets of discovery on SC Management

25   in connection with their claims objections in the eight involuntary debtor cases. They have also

26   requested the deposition of the persons most knowledgeable for all debtors. SC Management will

27   / / /

28   / / /

1 | likewise require discovery from the Trustee and certain Lehman representatives. The Court

2 | should require that the Objection proceed as an adversary proceeding.[39]

3 | 11.    CONCLUSION

4 |     The Lehman Objectors should not be unjustly enriched from the services performed and

5 | the costs incurred by SC Management. It is undisputed that SC Management performed the

6 | services, and incurred the expenses set forth in its Proof of Claim and the invoices supporting

7 | same. SC Management requests that this Court allow its unsecured claim in the amount of

8 | $1,799,805.75 and overrule the Objection.

9 |     Due to myriad factual and legal issues raised by the Objection, and the Lehman Objectors'

10 | request to subordinate the allowed claim of SC Management, the Court should require that the

11 | Objection proceed as an adversary proceeding. In any event, the Court should treat the initial

12 | hearing on this matter as a status conference.

13 |     SC Management reserves its right to further amend, supplement, revise, object, or

14 | otherwise respond to the Objection on any and all additional factual or legal grounds.

16 | DATED: May 31, 2011                    Respectfully submitted,

17 |                                         RUS, MILIBAND & SMITH
18 |                                         A Professional Corporation

20 | By: _____
21 |                                         RONALD RUS
                                            Attorneys for SunCal Management, LLC

---

[39] Even if the Objection did not require an adversary proceeding, which it does, it is unrealistic that SC Management, or the Court, could reasonably be asked to be prepared for a trial on all of these matters on June 14, 2011. As set forth above, the claim objection involves substantive factual and legal issues and will require substantial time for presentation of evidence and argument. Thus, at the very least, the initial hearing on June 14, 2011, should be treated as an initial status conference pursuant to Local Bankruptcy Rule 3007-1(b)(5). The Lehman Objectors have concurred in this request. See the Objection at page 5, Footnote 4.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

## DECLARATION OF STAN BROWN

I, STAN BROWN, declare as follows:

1.     During the time period from 2004 through November of 2008, I was a Regional President for SunCal Management, LLC ("SC Management").

2.     I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

3.     This declaration is submitted in support of SC Management's Response to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of SunCal Marblehead, LLC (the "Debtor").

4.     In mid 2005, SC Management commenced services for the Debtor to manage the development of a master planned community offering canyon and ocean views in San Clemente, California.  The Debtor envisioned that the Project, when completed, would consist of 308 lots, including both residential and commercial development in a canyon and ocean view setting (the "Project").

5.     Part of my responsibilities as Regional President for SC Management from 2004 to the commencement of the Debtor's bankruptcy case on November 12, 2008 (the "Petition Date") included supervising SC Management's activities with respect to development and management of the Project. The Project was to be enhanced by three parks, the Ocean Club - a clubhouse, a community pool, spa and recreation center, as well as a bridge across a natural canyon/open space within the Project boundaries to allow beach access to residents.

6.     As of the Petition Date, SC Management had supervised: the completion of grading on the residential lots, the construction of a bridge which continued throughout the Summer of 2008 at the direction of the Debtor and the Lehman Lender, construction of exterior roads on Pacific Coast Highway and Avenida Pico, establishment of mitigation habitat required under Army Corp. of Engineers 404 permits obtained in connection with the Project, and processing an amendment to the Project's Coastal Permit to provide an enhanced waterfront view for a number

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 1 MICHELSON DRIVE
IRVINE, CALIFORNIA 926I2
TEL (949) 752-7100 • FAX (949) 252-1514

1    of the lots, and installation of landscape. Many of the lots were ready for construction, and SC

2    Management was in the process for applying for the Department of Real Estate's White Report for

3    the Project at the time of the bankruptcy filing. SC Management had also begun marketing and

4    sales in connection with the Project, and held deposits on four sales as of the Petition Date, and

5    was negotiating with a number of builders who were interested in participating in the Project. SC

6    Management has been the party responsible for managing development of the Project, and

7    conveyed a substantial benefit to the Debtor since mid 2005.

8        I declare under penalty of perjury under the laws of the State of California that the

9    foregoing is true and correct.

10       Executed May 31, 2011, at Irvine, California.

11

12

13      STAN BROWN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

## DECLARATION OF BRUCE V. COOK

I, BRUCE V. COOK, declare as follows:

1.      I am the General Counsel for SunCal Management, LLC ("SC Management")

2.      I have knowledge of the SC Management's books and records, and I am familiar with SC Management's projects and operational affairs.  As to the following facts, I know them to be true of my own knowledge, and, if called as a witness, I could and would competently testify thereto; or I have gained such knowledge from the business records of SC Management, which were made at or near the time of the acts, conditions or events to which they relate.  Any such document or record was prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and had a business duty to accurately record such event.  If called as a witness, I could and would competently testify to the matters stated herein.

3.      This declaration is submitted in support of SC Management's Response to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of SunCal Marblehead, LLC (the "Debtor").

4.      On or about November 19, 2008 (the "Petition Date"), an involuntary bankruptcy was commenced against the Debtor.  An Order for Relief was entered on January 8, 2009.

5.      On March 19, 2009, SC Management filed a proof a claim, assigned Claim No. 11-1 in the amount of $1,799,805.75 requesting payment for services rendered and expenses incurred in connection with the Project during the time period from August 2007 through November 2008 (the "Proof of Claim"), a true and correct copy of which is attached as Exhibit "1."

6.      On or about October 1, 2004, the SC Management and SCC JV Ventures, LLC, a Delaware limited liability company entered into that certain Development Management Agreement.  A true and correct copy of the Development Management Agreement (the "DMA") by and between SC Management and the Debtor is attached as Exhibit "2."

7.      SC Management is a signatory to that certain Consent and Subordination of Development Agreement (the "Subordination Agreement").  A true and correct copy of the Subordination Agreement is attached as Exhibit "3."

1    8.    On or about May 23, 2008, Lehman Brothers Holdings, Inc., a Delaware

2    corporation, the Lehman Lender, certain related Debtors, including the Debtor, and SC

3    Management, among others, entered into that certain Restructuring Agreement (the "Restructuring

4    Agreement").  A true and correct copy of the Restructuring Agreement is attached as Exhibit "4."

5    9.    With respect to the Debtor, SC Management is requesting an allowed claim on

6    account of two months of management fees at $111,137 per month (as set out in the May 2008

7    Restructuring Agreement), as the reasonable value of its services to the Debtor.

8    10.    The Development Management Agreement, at page 7, paragraph 5.1 sets out a

9    formula to calculate the management fee to be charged on a monthly basis as follows:

> "at an amount equal to three percent (3%) of (a) the gross revenue
> derived from the sale of the Property, and (b) the net proceeds
> received from the funding of any community facilities district
> ('CFD') formed in connection with the development and sale of the
> Project  based upon a 3% of the gross revenue generated from the
> sale of the Debtor's property and certain CFD Proceeds."

This formula, and the operative Project Budgets for the relevant time periods, were premised on a

completed build-out of the Project, and not on the "as-is" value of the Property.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100  •  FAX (949) 252-1514

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3    Executed May 31, 2011, at Irvine, California.

4

5

6    BRUCE COOK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

## DECLARATION OF TOM ROLLINS

I, TOM ROLLINS, declare as follows:

1.      I am the Chief Accounting Officer for SunCal Management, LLC ("SC Management") during the relevant period of time.

2.      I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

3.      This declaration is submitted in support of SC Management's Response ("Response") to Joint Motion for Order Disallowing General Unsecured Claims And Administrative Claims of SunCal Management, LLC in the bankruptcy case of SunCal Marblehead, LLC (the "Debtor").

4.      It was the custom and practice of SC Management and the Debtor that invoices were billed directly to the Debtor, who owned the Project, and the Debtor paid SC Management directly for services performed from the inception of SC Management's work on the Project in June 2005.  From the time that SC Management first provided Development Management Services on June 10, 2005, through November 16, 2008, when the Debtor's bankruptcy case was commenced by the filing of an involuntary bankruptcy petition, SC Management issued the Debtor invoices for Development Management Services.  The Debtor routinely paid invoices when presented until October 2007.  A true and correct copy of a spreadsheet evidencing the Debtor's payment of invoices from SC Management is attached as Exhibit "12."

5.      In this case, management fees of $222,273.62 were incurred by the Debtor and remained unpaid as of the Petition Date.  True and correct copies of the Management Fee invoices are attached as Exhibit "5."

6.      SC Management invoiced the Debtor monthly for the actual time spent by certain employees related to the Project, which were billed as Project Staff Costs.  Project Staff Costs of $757,228.50 were incurred by the Debtor and remained unpaid as of the Petition Date.  Each invoice for Project Staff Costs attached the name of the employees and the number of hours

/ / /

1  expended in the month in connection with the Project. A true and correct copy of Project Staff

2  Cost invoices are attached as Exhibit "6."

3       7.    SC Management separately invoiced the Debtor for time expended by its

4  employees in connection with marketing the Project, which were billed as Marketing Staff Costs.

5  Marketing Staff Costs of $93,180.75 were incurred by the Debtor and remained unpaid as of the

6  Petition Date. Each invoice for Marketing Staff Costs attached the name of the employees and the

7  number of hours expended in the month in connection with the Project. The hourly rates charged

8  were reasonable and consistent with SC Management's standard billing rates, which were paid by

9  the Debtor. A true and correct copy of Marketing Staff Cost invoices are attached as Exhibit "7."

10       8.    SC Management used its in-house legal staff, where feasible, to manage legal

11  issues related to the Project. Monthly invoices were generated for legal staff costs chargeable to

12  the Project. Legal Staff Costs of $64,650.00 were incurred by the Debtor and remained unpaid as

13  of the Petition Date. The hourly rates charged were reasonable and consistent with SC

14  Management's standard billing rates, which were paid by the Debtor. A true and correct copy of

15  Legal Staff Cost invoices are attached as Exhibit "8."

16       9.    SC Management obtained a global policy of insurance for all projects under

17  management. The insurance obtained on behalf of the Debtor included the following policies:

18  General Liability - $1 Million, General Liability $60 million, Property, and Installation Floater,

19  which were part of the Umbrella Policies. At the beginning of the term, SC Management would

20  allocate premium payment amongst the projects under management based upon estimated costs to

21  be incurred at a project over the policy term. At the end of each term, an audit was performed as

22  to the actual costs incurred and the premium was reallocated based on actual costs. In the case of

23  the Debtor, this resulted in an adjustment for 2006 and the 2007-2008 term totaling $345,389.00

24  (the "Insurance Adjustment"), which adjustment was invoiced. The total Insurance Costs,

25  including the Insurance Adjustment that were incurred by the Debtor and remained unpaid as of

26  the Petition Date were $536,433.00. These costs also included insurance that was unique to the

27  Project due to the construction of a bridge over a major thoroughfare. A true and correct copy of

28  Insurance Cost invoices are attached as Exhibit "9." Section 2.2. of the Development

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    Management Agreement between Debtor's Operating Member and SC Management, requires SC

2    Management to pay for and carry general liability and Worker's Compensation insurance for itself

3    and its employees, with the Debtor only as an ***additional named insured***.  It did.

4         10.    SC Management employees were reimbursed for out-of-pocket costs incurred in

5    connection with the Project.  The employees filed expense reports, including receipts for

6    expenditures, and upon approval by SC Management, they were paid.  SC Management in turn

7    invoiced these amounts, with supporting back-up documentation to the Debtor on a monthly basis.

8    As of the Petition Date, the Debtor owed SC Management the sum of $12,134.38 in connection

9    with employee expenses.   A true and correct copy of Employee Expense Reimbursement invoices

10   and additional supporting documentation are attached as Exhibit "10."

11        11.    During the course of SC Management's management of the Project, expenses were

12   incurred to third party vendors on behalf of the Project, which were paid by SC Management.  In

13   this case, the Debtor had marketing expenses associated with the Project in the amount of

14   $90,221.10.  SC Management in turn invoiced these amounts to the Debtor, with supporting back-

15   up documentation.  As of the Petition Date, the Debtor owed SC Management the sum of

16   $90,221.00 in connection with vendor expenses.  A true and correct copy of Third Party Vendor

17   Expense invoices and additional supporting documentation are attached as Exhibit "11."

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1        I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3        Executed May 31, 2011, at Irvine, California.

4

5

6    TOM ROLLINS

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Von Karman Towers, Seventh Floor, 2211 Michelson Drive, Irvine, California  92612

A true and correct copy of the foregoing document described as <u>RESPONSE TO JOINT MOTION FOR ORDER DISALLOWING GENERAL UNSECURED AND ADMINISTRATIVE CLAIMS OF SUNCAL MANAGEMENT, LLC; DECLARATION OF BRUCE COOK, STAN BROWN AND TOM ROLLINS IN SUPPORT THEREOF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 1, 2011</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☒ Service Information continued on attached page.

**II. <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>** (indicate method for each person or entity served):
On <u>June 1, 2011</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

**III. <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on <u>June 1, 2011</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 1, 2011 | Jeannie Mendez | *Jeannie Mendez* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1

- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1