1   PAUL J. COUCHOT -- State Bar No. 131934
      pcouchot@winthropcouchot.com
2   PETER W. LIANIDES – State Bar. No. 160517
      plianides@winthropcouchot.com
3   **WINTHROP COUCHOT**
    **PROFESSIONAL CORPORATION**
4   660 Newport Center Drive, Fourth Floor
    Newport Beach, CA 92660
5   Telephone: (949) 720-4100
    Facsimile: (949) 720-4111
6   General Insolvency Counsel for Administratively
    Consolidated Debtors-in-Possession
7
8   RONALD RUS - State Bar No. 67369
      rrus@rusmiliband.com
    JOEL S. MILIBAND - State Bar No. 77438
9     jmiliband@rusmiliband.com
    **RUS MILIBAND & SMITH**
10  **A PROFESSIONAL CORPORATION**
    2211 Michelson Drive, Seventh Floor
11  Irvine, California 92612
    Telephone: (949) 752-7100
12  Facsimile:  (949) 252-1514
13  Attorneys for SunCal Management LLC

14              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
15                    **SANTA ANA DIVISION**

16  In re                                    | Case No. 8:08-bk-17206-ES
                                             | Jointly Administered With Case Nos. 8:08-bk-17209-ES;
17  Palmdale Hills Property, LLC, and its    | 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES;
    Related Debtors.                         | 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES;
18                                           | 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES;
              Jointly Administered Debtors   | 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES;
19            and Debtors-in-Possession      | 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES;
                                             | 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES;
20  Affects:                                 | 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES;
    ☐ All Debtors                            | 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-17588-
21  ☐ Palmdale Hills Property, LLC,          | ES
22  ☐ SunCal Beaumont Heights, LLC           | Chapter 11 Cases
    ☒ SCC/Palmdale, LLC
23  ☐ SunCal Johannson Ranch, LLC            | **OMNIBUS REPLY TO THE RESPONSES OF**
    ☒ SunCal Summit Valley, LLC              | **LEHMAN ENTITIES AND THE TRUSTEE TO**
24  ☒ SunCal Emerald Meadows LLC             | **MOVING VOLUNTARY DEBTORS' AND**
    ☒ SunCal Bickford Ranch, LLC             | **SUNCAL MANAGEMENT LLC'S MOTION**
25  ☒ Acton Estates, LLC                     | **FOR ORDER DISALLOWING CLAIMS OF**
    ☐ Seven Brothers LLC                     | **LEHMAN ALI, INC. AND LEHMAN**
26  ☐ SJD Partners, Ltd.                     | **COMMERCIAL PAPER, INC. PURSUANT TO**
    ☐ SJD Development Corp.                  | **11 U.S.C. § 502(d)**
27  ☐ Kirby Estates, LLC
28  ☒ SunCal Communities I, LLC              | Date:        June 9, 2011
    ***Caption Continued on Next Page***     | Time:        10:30 a.m.
                                             | Place:       Courtroom 5A

-i-

*Caption Continued from Previous Page*

☒ SunCal Communities III, LLC
☒ SCC Communities LLC
☒ North Orange Del Rio Land, LLC
☒ Tesoro SF, LLC
☐ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☒ Delta Coves Venture, LLC
☒ SunCal Torrance, LLC
☒ SunCal Oak Knoll, LLC

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUTPCY JUDGE, AND PARTIES IN INTEREST:**

SunCal Communities I LLC ("SunCal I"), Acton Estates LLC ("Acton"), SCC/Palmdale LLC ("SCC/Palmdale"), SunCal Emerald Meadows LLC ("Emerald Meadows"), SunCal Bickford Ranch LLC ("Bickford Ranch"), SunCal Summit Valley LLC ("Summit Valley"), SCC Communities LLC ("SCC Communities"), North Orange Del Rio Land, LLC ("Del Rio"), and Tesoro SF LLC ("Tesoro") (the "Moving Voluntary Debtors"), and SunCal Management, LLC ("SunCal Management" and collectively with the Moving Voluntary Debtors, the "SunCal Parties") hereby submit this Omnibus Reply to the (i) Response filed by the Lehman Commercial Paper Inc. ("LCPI") and Lehman ALI, Inc. ("Lehman ALI") (collectively, the "Lehman Entities", (ii) the Joinder to the Lehman Entities' Response filed by Lehman Re, Ltd ("Lehman Re"), and (iii) the Opposition of the

1  Chapter 11 Trustee, Steven M. Speier ("Trustee"), to the Motion to Disallow Claims of LCPI and

2  Lehman ALI pursuant to Section 502(d) ("Motion").

# TABLE OF CONTENTS

**PAGE**

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     SUNCAL MANAGEMENT HAS STANDING TO OBJECT TO THE
        LEHMAN CLAIMS IN THE TRUSTEE DEBTOR CASES ....................................... 4

III.    THE TEMPORARY DISALLOWANCE OF THE LEHMAN CLAIMS ARE NOT
        "PREMATURE" UNDER SECTION 502(d) ................................................ 8

IV.     A CLAIM OBJECTION BASED UPON 11 U.S.C. § 502(d) DOES NOT
        VIOLATE THE LEHMAN ENTITIES' AUTOMATIC STAY .................................... 13

V.      THE SUNCAL PARTIES HAVE MADE A PRIMA FACIE SHOWING
        THAT THE DEBTORS DID NOT RECEIVE REASONABLY EQUITABLE VALUE
        SUFFICIENT FOR TEMPORARY DISALLOWANCE UNDER SECTION 502(d).. 19

VI.     A SECTION 548(c) OFFSET IS NOT A DEFENSE TO TEMPORARY DISALLOWANCE
        UNDER SECTION 502(d) ............................................................ 21

VII.    THE LEHMAN ENTITIES MISCHARACTERIZE THE COURT'S
        TENTATIVE RULING REGARDING THE DISPUTED
        ADMINISTRATIVE LOANS ........................................................... 23

VIII.   BECAUSE THE LEHMAN ENTITIES ADMIT THAT ACTON NEVER EXECUTED AN
        ASSUMPTION AGREEMENT OF THE SUNCAL COMMUNITIES LOAN,
        CLAIM 6 AGAINST ACTON IS UNENFORCEABLE AND SHOULD BE DISALLOWED
        IN ITS ENTIRETY, SINCE IT CAN NOT BE REFORMED POST-PETITION IN
        VIOLATION OF THE STRONG ARM CLAUSE ............................................. 24

IX.     CONCLUSION ...................................................................... 26

# I.

## **PRELIMINARY STATEMENT**

The Lehman Entities' Response reflects another ploy in their strategy to delay, obstruct and thwart any challenge to the allowance of their claims and treatment of their claims under the SunCal Parties' Chapter 11 plans. The Lehman Entities seek to proceed to plan confirmation and by improperly asserting their automatic stay in order to immunize their claims, forever deprive the SunCal Debtors' estates of any remedy against the Lehman Entities' wrongdoing.

With respect to the 502(d) objections, the Lehman Entities first insist that because the 502(d) claims were not permitted to be asserted in the Lehman Adversary Proceeding and were dismissed without prejudice, they could not be asserted as a claim objection notwithstanding the unanimous case law holding that the stay has no application to the same. The Lehman Entities have falsely represented to the New York Bankruptcy Court in their current *Motion to Enforce the Stay[1]* that this Court has ruled that a claim objection filed under Section 502(d) violates LCPI's stay and they have suggested that the SunCal Parties have ignored this ruling. Yet, the Lehman Entities were expressly advised by this Court on May 13, 2011, that this Court did not believe that either claim objection filed by the SunCal Parties violated the stay and for this very reason authorized discovery. In short, the "truth" as presented in New York is very different from "truth in California. Since this misrepresentation contradicts the record in California and it is being used as a sword in New York, the SunCal Parties would respectfully pray that the Court specifically address this issue.

The Lehman Entities also insist that SunCal Management has no standing to the file claim objections in these cases in their capacity as a creditor, without supporting this position and in the face of several cases to the contrary. Section 502(a) states that any "party-in-interest" has standing to file an objection to a claim. This term includes "anyone whose financial interest may be affected by the outcome of a bankruptcy case." In re Barnes, 275 B.R. 889, 893 (Bankr. E.D. Cal. 2002); In re QMect, Inc., 349 B.R. 620, 625 (Bankr.N.D.Cal. 2006) ("A creditor or creditors' committee has standing independent of the trustee or debtor-in-possession to object to another creditor's claim as long as it has something to gain if it prevails."). The cases cited by the Lehman Entities are inapposite. In those

---

[1] See Supplemental Request for Judicial Notice ("Supp RJN"), exhibit 3.

1    instances, a party other than the Trustee <u>filed an adversary proceeding seeking recovery on a cause of</u>

2    <u>action</u> held by the estate. They did not involve claim objections. Under <u>In re P.R.T.C. Inc</u>., 177 F.3d

3    774, 778 (9th Cir.1999), the relevant standing inquiry is whether there is a possibility that a

4    distribution could be made to SunCal Management on account of its claims. Since that question must

5    be answered in the affirmative, standing exists.

6        The Response also asserts that it is somehow unfair for the Lehman Entities to be forced to

7    litigate the *prima facie* validity of the avoidance actions in the context of a Section 502(d) claim

8    objection.  Yet it is the Lehman Entities' own actions which have forced this very result.  After first

9    misrepresenting their ownership of the loans (the "Sold Loans") as expressly found by this Court,

10   LCPI filed a motion that was approved by the New York Bankruptcy Court authorizing LCPI's

11   purchase of the Sold Loans from Fenway --even those Sold Loans previously held by non-debtor

12   Lehman Entities (<u>i.e.</u>, Lehman ALI, OVC and Northlake) and granting a lien in favor of LBHI.   See

13   Supp RJN, Exs. 1 and 2.

14       This "compromise" has allowed both LCPI and LBHI to assert that their automatic stays in the

15   Lehman Adversary Proceeding.  See Supp. RJN, Ex. 4. This manipulative claims swap also had the

16   added benefit of *expanding* the purported reach of LCPI to cover both the Voluntary Debtors and the

17   Trustee Debtors (the latter entities had no prepetition lending relationship with LCPI - this relationship

18   was created by the "parking" of all of the Sold Loans in LCPI through the compromise).

19       Since the New York Bankruptcy Court has twice denied the SunCal Debtors' relief from stay

20   and approved the "compromise," they have been forced to prosecute their Chapter 11 cases with their

21   proverbial "hands tied behind their back".  The SunCal Parties thus have been forced to proceed in the

22   one manner in which <u>all the authorities</u> have consistently agreed does not violate the automatic stay[2],

23   the SunCal Parties have objected to the Lehman Claims pursuant to Bankruptcy Rule 3007.

24       Notwithstanding the overwhelming authority that objections to claims do not violate the

25   automatic stay, the Lehman Entities have insisted that their automatic stay applies, have refused to

26   _____

27   [2] *See* <u>In re Wheatfield Business Park</u>, 308 B.R. 463, 466 (9th Cir. BAP 2004); <u>In re Merrick</u>, 175 B.R. 333 (9th Cir. BAP 1994); <u>In re Way</u>, 229 B.R. 11 (9th Cir. BAP 1998); <u>In re Financial News Network</u>, 158 B.R. 570 (S.D.N.Y. 1993); <u>In re Metiom</u>, 301 B.R. 634, 638-639 (Bankr.S.D.N.Y. 2003); <u>In re</u>

28   <u>PRS Ins. Group</u>, 331 B.R. 580, 587 (Bankr.D.Del. 2005); <u>In re Meade,</u> 1999 WL 33496001, *1 (E.D.Pa. 1999).

1    participate in discovery, and now have filed a motion with the New York Bankruptcy Court to enforce

2    their automatic stay as purportedly applicable to the claim objections.  See Supp RJN, Ex. 3.

3        In order to bootstrap their stay violation argument, the Lehman Entities contend that the

4    §502(d) claim objection is "premature" because it requires a "determination of avoidance liability"

5    which should only be made in the Lehman Adversary Proceeding and is therefore stayed.  The Lehman

6    Entities' arguments are fundamentally flawed.  As set forth below, temporary disallowance under

7    Section 502(d) does not require a formal or final determination of avoidance liability, it merely requires

8    a preliminary judicial determination of the sufficiency of the pleadings, which this Court has already

9    made in its order denying the Lehman Entities' Rule 12(b)(6) motion to dismiss (i.e., the *Order*

10   *Denying The Dismissal Motions*). Section 502(d) contemplates only temporary disallowance pending

11   the formal resolution of the Lehman Adversary Action.  Here, the Lehman Claims must be at least

12   temporarily disallowed in order to preserve the underlying dispute.  Temporary disallowance here is

13   essential to preserve the disputes pending final adjudication of the Lehman Adversary Proceeding.

14       The Lehman Entities other flawed arguments are responded to in more detail below, and such

15   responses are summarized as follows:

16   • The Lehman Entities assert that Debtors' contribution rights must be considered in

17       determining reasonably equivalent value.  However, even the Lehman Entities' case law

18       confirms that any "contribution rights" are appropriately determined at trial in the adversary

19       proceeding, and do not impact the sufficiency of the pleadings for the purposes of Section

20       502(d).

21   • The Lehman Entities argue that "SunCal muddles matters by failing to distinguish between

22       obligations and transfers."   The Motion, for purposes of simplicity, defined the transfers

23       and obligations as to each particular loan collectively as "transfers", e.g., "SunCal

24       Communities I Transfers".  Since the transfers here are the deeds of trust which secure the

25       "obligation", i.e., the loans, it is logical to analyze the transfers and obligations together.

26       The Lehman Entities do not dispute that the granting of a deed of trust is a "transfer" for the

27       purposes of Sections 502(d) and 548, and thus the Lehman Entities' argument is of no

28       ultimate consequence.

- The Lehman Entities argue that they have a right of offset pursuant to Section 548(c) which purportedly exceeds the value of the collateral as to two loans.  The Lehman Entities fail to cite any authority to support their novel argument that Section 548(c) can defeat disallowance under Section 502(d).  In fact, the only authority on this point is directly contrary to the Lehman Entities' argument.  In <u>In re Interstate Cigar Co., Inc.</u>,  278 B.R. 8 (Bankr.E.D.N.Y. 2002), the Court held that Section 502(d) defeats a creditor's offset rights under Section 548(c) unless the property is first transferred back to the estate.

- The Lehman ALI argues its administrative claims are not subject to challenge by mischaracterizing this Court's May 13th tentative ruling, which merely requires that the Voluntary Debtors' Disclosure Statement provide a further description of why Lehman ALI's administrative claims are disputed.  The SunCal Parties' claim objections obviously provide such description.  Section 502(j) expressly authorizes the court to reconsider the allowance or disallowance of a claim, including administrative claims.

- As to the Voluntary Debtor's Section 502(b) objection to the claim against Acton, the Lehman Entities' Response effectively admits that there is no separate Assumption Agreement as to Acton.  Rather, the Response contends that Summit Valley's Assumption Agreement may be "reformed" under New York law to correct a "scrivener's error" in its omission of Acton.  However, the Lehman Entities fail to address well established case law that erroneous loan documents cannot be "reformed" post-petition in violation of the estate's strong arm powers under Section 544(a).

For all of the foregoing reasons, the SunCal Parties submit that the Lehman Claim must be temporarily disallowed pursuant to Section 502(d) pending a final determination in the Lehman Adversary Proceeding.

## II.

## <u>SUNCAL MANAGEMENT HAS STANDING TO OBJECT TO</u>
## <u>THE LEHMAN CLAIMS IN THE TRUSTEE DEBTOR CASES</u>

The Lehman Entities do not dispute that the Moving Voluntary Debtors maintain standing to assert objections to the Lehman Entities' claims filed in the Voluntary Debtors' cases, which constitute

the bulk of the objections at issue.

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 1 | SunCal I | LCPI | $343,221,391 | 1 |
| 2 | SunCal III | LCPI | $343,221,391 | 2 |
| 6 | Acton Estates | LCPI | $343,221,391 | 3 |
| 6 | Emerald Meadows | LCPI | $343,221,391 | 4 |
| 16 | Bickford Ranch | LCPI | $343,221,391 | 5 |
| 12 | Summit Valley | LCPI | $343,221,391 | 6 |
| 1 | SCC/Palmdale | LCPI | $119,664,305 | 7 |
| 9 | SCC Communities | Lehman ALI | $ 23,795,013 | 12 |
| 7 | Tesoro | Lehman ALI | $ 23,795,013 | 13 |
| 14 | Del Rio | Lehman ALI | $ 23,795,013 | 14 |
| **Total** | | | **$2,250,377,690** | |

Rather, the Lehman Entities contest standing only as to SunCal Management, which is the moving party as to the objections to claims in the specified Trustee Debtors' cases[3] on the basis that *as a creditor* in those cases, SunCal Management is precluded from asserting objections under Section 502(d) of the Bankruptcy Code.  The Lehman Entities are wrong on the law.  The sole case upon which the Lehman Entities rely is of dubious precedent and is directly contradicted by well established Circuit level precedent, as well as the plain language of Section 502(d) itself.  In short, the Lehman Entities' standing argument is not well taken and should be disregarded by the Court.[4]

---

[3]

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 12 | Oak Knoll | Lehman ALI | $158,141,365 | 8 |
| 4 | Torrance | Lehman ALI | $158,141,365 | 9 |
| 9 | Heartland | LCPI | $354,325,126 | 10 |
| 21 | Marblehead | LCPI | $354,325,126 | 11 |
| 21 | Delta Coves | Lehman ALI | $ 206,023,142 | 15 |
| Lehman Administrative Claims | Delta Coves | Lehman ALI | $2,767,725 | |
| | Heartland | Lehman ALI | $1,935,250 | |
| | Marblehead | Lehman ALI | $5,634,270 | |
| | Oak Knoll | Lehman ALI | $13,002,451 | |
| | Torrance | Lehman ALI | $1,346,711 | |

[4] The Chapter 11 Trustee for the Trustee Debtors filed a short Opposition to the SunCal Parties' objections to claims challenging the standing of SunCal Management to object to the Lehman claims in the Trustee Debtor cases.  The Trustee's arguments (and the cases relied upon) are identical to those asserted by the Lehman Entities.  The Trustee adds to the argument by contending that he has not authorized SunCal Management to pursue avoidance claims on behalf of the Trustee Debtors, and that he is acting in the best interest of the estates "by pursuing a settlement with the Lehman entities on behalf of the estate's creditors."

These contentions do not vitiate SunCal Management's standing to object to the claims under Section 502(d).  Both the plain language of Section 502 and applicable Circuit level case law confer standing on a creditor such as SunCal Management to object to the Lehman Entities' claims made in the Trustee Debtors' cases, regardless of authorization by the Trustee.

MAINDOCS-#162306-v3-SCC_Reply_502(d)_claim_objedtion.DOC

1    The majority of the cases cited by the Lehman Entities support only the general proposition that

2    a trustee or a debtor, and not a creditor, has standing to prosecute fraudulent transfer and preference

3    actions absent court order or stipulation by a trustee.  See, In re Spiritos, 443 F.2d 1172 (9th Cir. 2006);

4    In re Parmetex, Inc., 199 F. 3d 1029 (9th Cir. 1999); In re Curry & Sorenson, Inc., 57 B.R. 824 (9th Cir.

5    BAP 1986); and In re Pacific Gas & Electric, Co., 281 B.R. 1 (Bankr. N.D. Cal. 2002).  None of these

6    cases, however, provide that a creditor is barred from objecting to claims on the basis set forth at

7    Section 502(d).  Indeed, *these cases do not even address the issue*.  What is more, the Lehman Entities

8    do not, because they cannot, distinguish the myriad cases cited by the SunCal Parties establishing that a

9    party in interest, such as SunCal Management, has unqualified standing to object to claims.  See, Siegel

10    v. Federal Home Loan Mortg. Corp., 143 F.3d 525, 531 (9th Cir. 1998) ("any party in interest can

11    object"); Lawrence v. Steinford Holding B.V. (In re Dominelli)*, 820 F.2d 313, 316 (9th Cir.1987); In re

12    P.R.T.C. Inc.*, 177 F.3d 774, 778 (9th Cir.1999); IRS v. Taylor (In re Taylor), 132 F.3d 256, 261 (5th

13    Cir.1998); In re Anderson, 382 B.R. 496 (Bankr.D.Or. 2008), and In re QMect, Inc., 349 B.R. 620

14    (Bankr.N.D.Cal. 2006).  Contrary to the Lehman Entities' bald assertion, the fact that the mandate

15    allowing any party in interest to object to claims appears at subsection (a) of Section 502 (as opposed to

16    subsection (d)) does not diminish its application to objections to claims made by a recipient of

17    avoidable transfers.  To the contrary, subsection (a) expressly allows a creditor to object to claims

18    **without limitation, qualification or exception**, and otherwise does not make reference to subsection

19    (d) as falling outside the general mandate.  In addition, subsection (d) of Section 502 specifically

20    references the avoidance statutes of the Code as a basis for the disallowance of claims.  Like subsection

21    (a), **this subsection does not qualify the basis or otherwise limit its application**.  Indeed, subsection

22    (d) **is actually more permissive** than subsection (a) in that the subsection is prefaced with the phrase

23    "**[n]otwithstanding** subsections (a) or (b) of this subsection…"  In other words, "despite" or

24    "regardless of" any limitations imposed by the provisions of subsections (a) or (b) (of which there are

25    none as to the ability of a creditor to object to claims), the failure of a claimant to return avoidable

26    transfers is a basis for the disallowance of the claimant's claim – without limitation as to the status of

27    the party making the objection assuming the objecting party qualifies as "a party in interest."[5]

28    _____
[5] The Lehman Entities do not dispute that SunCal Management is a "party in interest" within the meaning of Section 502(a).

A creditor's right to object to a claim on the basis of avoidable transfer liability is well entrenched – pre-dating the current Bankruptcy Code.[6]  In Atwood-Larson Co. v. Hasvold (In re Richmond Equity Exchange), 280 F. 385 (8th Cir. 1922), certain creditors filed written objections to the claims of a lender on the basis of payments made to the lender which constituted voidable preferences. Atwood-Larson, supra, 280 F. at 385.  The Court of Appeals affirmatively held that "**it was clearly the duty of the referee to hear evidence on the objections interposed by Hasvold and the other creditors**."  Id, at 386 (emphasis added).  The Court of Appeals distinguished the claims objection from a proceeding to recover an alleged avoidable transfer, acknowledging that "[i]t was not a proceeding to recover an alleged preference, but to determine whether the referee would decline to allow a claim on account of petitioner's having received a voidable preference." Id.  This distinction (an affirmative action to avoid a transfer vs. the disallowance of a claim) is replete in current case law. Most notably in In re Parker North American, 24 F. 3d 1145, 1155 (9th Cir. 1994), the Court of Appeals provided that, unlike an avoidance action under Sections 547, 548 and 550, an objection under Section 502(d) "does not compel surrender, nor permit affirmative relief of any kind," rather it acts to "disallow claims of transferees who do not surrender their avoidable transfers."  The 2007 Amendment to Bankruptcy Rule 3007 codifies this distinction drawn by the Parker North American case.  More specifically, "the amendment prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding." F.R.B.P. 3007(a), *Advisory Committee Notes – 2007 Amendment*.  In other words, no affirmative relief can be granted by a claims objection.  The assertion of a claims objection is a statutorily endowed right of a party of interest which is fundamentally different that the assertion of an affirmative claim such as the commencement of an adversary proceeding for the avoidance of transfers.  This clear distinction, together with the affirmatively permissive language of subsections (a) and (d) of Section 502, unmistakably confer standing on any party in interest, including a creditor, to assert claim objections under Section 502(d).

---

[6]  Pre-Bankruptcy Code judicial interpretations are presumed to have survived the enactment of the Bankruptcy Code unless Congress has expressed an intention to change the interpretation of judicially created concepts.  See, U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989); 18 Bankr. Ct. Dec. (CRR) 1150, Bankr. L. Rep. (CCH) P 72575, 89-1 U.S. Tax Cas. (CCH) P 9179, 63 A.F.T.R.2d 89-652 (1989).  Nothing in Section 502, nor the Legislative History of the Section expresses such an intention.

The case primarily relied on by the Lehman Entities, <u>In re Prime Motor Inns, Inc.</u>, 135 B.R. 917 (Bankr. S.D. Fla. 1992), is easily distinguished.  First, the <u>Prime Motor</u> Court relies heavily on the general proposition that a creditor does not have standing to prosecute preference actions under Section 547.  This is not in dispute.  However, like the Lehman Entities, the <u>Prime Motor</u> Court makes the unjustified leap that an objection under Section 502(d) is tantamount to a *disguised* preference action without sufficient analysis of the distinction between the two courses of action.  <u>Prime Motor</u>, *supra*, 135 B.R. at 920.  Moreover, the <u>Prime Motor</u> Court acknowledges that its decision is based on a review of **the Complaint at issue in that case** wherein the subject creditor asserted an independent claim for avoidance of a preferential transfer and "further sought" an order disallowing the lender's claim.  No such separate adversary action for the avoidance of transfers made to the Lehman Entities has been asserted by SunCal Management (under Sections 547, 548, or otherwise) in this case.  The <u>Prime Motor</u> case, which fails to recognize the plain language of subsections (a) and (d) of Section 502, as well as the critical distinction between disallowance under Section 502 and affirmative prosecution of avoidance claims under the avoidance statutes, as specifically recognized in the Ninth Circuit (See, <u>In re Parker North American, supra</u>), is neither persuasive nor controlling.[7]

In sum, both the plain language of Section 502 and applicable Court of Appeals case law confer standing on a creditor such as SunCal Management to object to the Lehman Entities' claims made in the Trustee Debtors' cases.  The Lehman Entities' lack of standing argument is wrong on the law and should be rejected by the Court.

---

[7] The <u>Prime Motors</u> case pre-dates the 2007 Amendment to FRBP 3007 discussed above.  This may account for the court's failure to distinguish between disallowance under Section 502 and the affirmative prosecution of avoidance claims under the avoidance statutes.  At the very least, the 2007 Amendment which codifies the distinction recognized by the Ninth Circuit <u>Parker North American</u> case reveals the faulty analysis upon which the <u>Prime Motors</u> decision rests.

In addition, in passing the Lehman Entities reference the case of <u>Holloway v. IRS (In re Odom Electronics)</u>, 340 F. 3d 705 (8th Cir. 2003).  However, this case actually supports standing on the part of SunCal Management.  More specifically, the <u>Holloway</u> Court cites <u>Parker North American</u> for the distinction that case draws between an affirmative action to avoid a transfer verusu the disallowance of a claim.  <u>Holloway</u>, *supra*, at 708 ("[502(d) does not compel surrender, nor permit affirmative relief of any kind.").  As such, the <u>Holloway</u> court determined only that a creditor cannot use Section 502(d) to affirmatively *avoid* liens.  <u>Id</u>.

### III.

### THE TEMPORARY DISALLOWANCE OF THE LEHMAN CLAIMS ARE NOT

### "PREMATURE" UNDER SECTION 502(d)

The Lehman Entities argue that the Motion and requested disallow is premature because Section 502(d) requires a judicial determination of the avoidance liability.  The Lehman Entities' assertion is only partial correct.  Section 502(d) does require a judicial determination, however such determination is cursory and need only address the sufficiency of the allegations.  As set forth in Colliers on Bankruptcy:

> Another concern is whether a claim may be disallowed under section 502(d) simply upon the assertion of a trustee as to the avoidability of a transfer to the holder of the claim or whether the trustee must have an actual "avoidance" judgment against the holder. **To assure the effectuation of the purpose of this section, a claim may be disallowed** at least temporarily and for certain purposes, subject to reconsideration, **simply upon** *the allegation of an avoidable transfer*. But to prevent abuse of this section **this initial disallowance should be made by judicial determination**, whether it be obtained in a claim objection or by some form of a declaratory judgment action.

Collier on Bankruptcy 15th Ed. Revised, ¶ 502.05[2][a] (2011) (emphasis added).  *See also* In re Red Dot Scenic, Inc., 313 B.R. 181, 186 (Bankr.S.D.N.Y. 2004) (quoting Colliers, supra); In re Lambert Oil Co., Inc., 347 B.R. 508, 522 n. 6 (W.D.Va. 2006) (quoting Colliers); In re Bernard L. Madoff Inv. Securities, LLC, 440 B.R. 243, 271 (Bankr.S.D.N.Y. 2010) ("while the transfers at issue have not been avoided as of this early stage, the Trustee has sufficiently alleged, as discussed above, that the Fund Defendants are 'transferee[s] of a transfer avoidable under section ... 544 ... 547, [or] 548' of the Code, an express ground for disallowance under section 502(d) of the Code."); In re Enron Corp., 340 B.R. 180, 191-192 (Bankr.S.D.N.Y. 2006)[8] ("the Court must only determine whether Enron asserts a valid cause of action under section 502(d) to survive a motion to dismiss and not whether the Claims are disallowed based on the merits of the underlying avoidance actions.").

Accordingly, the "judicial determination" required by Section 502(d) is merely the sufficiency of the allegations. The Lehman Entities contention that a formal order determining avoidance is a prerequisite to relief under Section 502(d) is without merit.  In re Lambert Oil Co., Inc., 347 B.R. 508, 522 (W.D.Va. 2006) ("The argument that a court order is a prerequisite is without merit.").  The Court

---

[8] Vacated on other grounds 379 B.R. 425 (S.D.N.Y. 2007).

1  merely makes a determination that the transfer is avoidable, rather than formally avoiding the transfer

2  itself.  See Collier on Bankruptcy, supra ("The wording of section 502(d) refers to transfers 'avoidable'

3  under various sections and not to claims that have been avoided.").

4         Courts have repeatedly characterized disallowance under Section 502(d) as temporary, pending

5  a later determination of the avoidance claims in an adversary action.  In In re Circuit City Stores, Inc. ,

6  426 B.R. 560 (Bankr.E.D.Va. 2010), the Court concluded that Section 502(d) provided for a temporary

7  disallowance of a creditor's claims, pending a full blown adversary proceeding determining the

8  ultimate liability of the avoidance actions themselves.

> [The Debtors] are seeking to postpone payment of the Claims by disallowing
> them temporarily until the underlying issues can be fully adjudicated in separate
> adversary proceedings.[FN7] To this end, Debtors are requesting a ruling on a
> threshold legal issue common to all of the Claimants. **Each of the Claimants will
> have an opportunity to have an adjudication made in the context of a full
> blown adversary proceeding regarding any liability they might have for the
> alleged Preferential Transfers**. Therefore, the Claimants' due process rights are
> not being infringed. **Rather, the due process rights of the bankruptcy estates
> are being preserved**.
>> FN7. If the Claims are not temporarily disallowed, the Debtors will be
>> required to pay to Claimants cash equal to the amount of their Claims on the
>> effective date of the Plan once it is confirmed, See 11 U.S.C. § 1129(a)(9);
>> and, thereby, the bankruptcy estates may forfeit any right they may have to
>> contest the underlying dispute.
>
> … The Court is merely making a partial ruling in an interlocutory fashion on a
> very real controversy, and **it is reserving the adjudication regarding the
> underlying liability for any alleged Preferential Transfers for a later
> determination to be made in the context of an adversary proceeding**.
>
> Finally, the Debtors do not need to file an adversary proceeding in order to
> have this threshold legal issue resolved. **The Debtors are asserting a defense
> within the claim resolution process. They do not seek affirmative relief**.
> Therefore, Bankruptcy Rule 7001 is not implicated and an adversary proceeding
> is not necessary at this time.

23  Circuit City Stores, 426 B.R. at 566-567 (emphasis added). See also In re Enron Corp., 340 B.R. 180,

24  192 n. 6 (Bankr.S.D.N.Y. 2006)[9] ("[I]n applying section 502(d), a claim that would otherwise be

25  subject to section 502(d) can be **temporarily disallowed when held by a transferee until the

26  underlying avoidance action is resolved and payment, if due, of the avoidable transfer is mad**e.");

---

[9] Vacated and remanded on other grounds, 379 B.R. 425 (S.D.N.Y. 2007).

1   In re Mayan Networks Corp., 306 B.R. 295, 305 (9th Cir.BAP 2004) ("automatic temporary

2   disallowance per § 502(d)").

3       As set forth above in Colliers, the disallowance of a claim under Section 502(d) is "subject to

4   reconsideration".  Accordingly, if the Lehman Adversary Action is subsequently tried on the merits,

5   and the Lehman Entities prevail on the merits, then the disallowance of their claims may be

6   reconsidered under Section 502(j).  See In re Heritage Organization, L.L.C., 2007 WL 7112577, 13 n.

7   37 (Bankr.N.D.Tex. 2007) ("**disallowance [pursuant to §502(d)] could be subject to**

8   **reconsideration by the Court under § 502(j) of the Bankruptcy Code, depending upon the**

9   **outcome of the avoidance litigation**.")[10]

10      The Lehman Entities' Response cites one case for the proposition that: "It is not enough for a

11  *creditor* to establish a *prima facie* case of avoidability…"  In re Prime Motor Inns, Inc., 135 B.R. 917,

12  921 (Bankr.S.D.Fla. 1992) (emphasis in original).  However, the Prime Motor Court's analysis was

13  solely focused on a creditor's standing to object, rather than the showing necessary under Section

14  502(d).  As set forth in the moving papers, the wealth of authority establishes that an objecting party

15  must merely make a *prima facie* showing of an avoidable transfer in order to object to a claim under

16  Section 502(d).  See Matter of Eye Contact, Inc., 97 B.R. 990, 992 (Bankr.W.D.Wis. 1989) ("The

17  trustee need not commence an avoidance action to bring section 502(d) into play. By making a *prima*

18  *facie* showing that the transfer is voidable, he can assert the alleged preference defensively under

19  section 502(d) to defeat a proof of claim."); In re Sierra-Cal, 210 B.R. 168, 173 (Bankr.E.D.Cal. 1997)

20  ("mere assertion of a prima facie § 502(d) defense is sufficient"); In re Discount Family Boats of

21  Texas, Inc., 233 B.R. 365, 368 (Bankr.E.D.Tex. 1999) (avoidance action is unnecessary - § 502(d) can

22  be invoke by claim objection and a prima facie showing of an avoidable transfer); In re Larsen, 80

23  B.R. 784, 791 (Bankr. E.D.Va. 1987); In re Mid Atlantic Fund, Inc., 60 B.R. 604, 610 (Bankr.

24  S.D.N.Y. 1986) ("The Trustee has made a *prima facie* showing that the assignment of the Fredebaugh

25

26  [10] See also In re Red Dot Scenic, Inc,  313 B.R. 181, 186 (Bankr.S.D.N.Y. 2004) (502(d) compelled
    disallowance of the claim even through creditor's appeal of fraudulent transfer judgment was pending,
27  as claim disallowance was subject to reconsideration - "Thus, if the funds at issue in the adversary
    proceeding, including post-judgment interest, remain unrecovered, Carroll's claim is disallowed
28  [pursuant to §502(d)], **subject to Carroll's right to request reconsideration** for cause under
    section 502(j) of the Bankruptcy Code.") (emphasis added).

Mortgage was a preferential transfer.").   A "prima facie case" is a mere pleading standard that is established by sufficient pleadings to survive a motion to dismiss for failure to state a claim.  See In re AVN Corp., 248 B.R. 540, 547 (Bankr.W.D.Tenn. 2000) ("the Court must determine that [claimant] has pled facts sufficient to establish a prima facie case"); In re Eerie World Entertainment, L.L.C., 2006 WL 1288578, *4 (Bankr.S.D.N.Y. 2006) ("[D]oes Bergrin's proposed Complaint state a *prima facie* case against the Defendants, or would it be subject to dismissal for failure to state a claim?") (emphasis added) citing In re Smith, 2002 Bankr.LEXIS *1893, at* *18 (Bankr.S.D. Ind. April 24, 2002) (to establish a *prima facie* case, plaintiff is "required to plead facts with a reasonable degree of particularity which support, either directly or inferentially*, the eleme*nts of the claims asserted") (emphasis added); Oriska Ins. Co. v. Brown & Brown of Texas, Inc., 2005 WL 894912, *2 (N.D.N.Y. 2005) ("plaintiff may make a prima facie showing solely on the allegations").

While several courts have determined a Section 502(d) claim objection based upon the "undisputed facts" of that particular case (see Response, 13:9-14), this does not alter the fact that the minimum necessary showing under Section 502(d) is merely the sufficiency of the allegations. These cases do not purport to require an evidentiary determination under Section 502(d).  Notwithstanding, and in an abundance of caution, the SunCal Parties have in fact filed substantial evidence in support of the Motion.

The Lehman Entities' statement that a "judicial determination" is necessary under Section 502(d) confuses the standard.  As noted above, Section 502(d) does not require a full and final determination of the avoidance liability.  The statute merely requires a "judicial determination" of the sufficiency of the allegations.  As set forth in the Motion, the *Order Denying The Dismissal Motions* establishes that the fifth claim for relief (avoidance and recovery of fraudulent transfers) and sixth claim for relief (avoidance and recovery of preferential transfers) survived the Lehman Entities' motion to dismiss (retained as the third and fourth claims for relief in the FAC) and therefore properly pled their respective causes of action.  As a matter of law, the SunCal Parties have established a "prima facie" case for the purposes of Section 502(d).

The temporary disallowance of the Lehman Claims is of particular importance due to the pending plan confirmation hearings in October.  As observed by the Circuit City Court, supra:

> If the Claims are not temporarily disallowed, the Debtors will be required to pay to Claimants cash equal to the amount of their Claims on the effective date of the Plan once it is confirmed, *See* 11 U.S.C. § 1129(a)(9); and, thereby, the bankruptcy estates may forfeit any right they may have to contest the underlying dispute.

Circuit City, 426 B.R. at 567.

For the same reasons here, the Lehman Claims must be at least temporarily disallowed in order to preserve the underlying dispute. The Lehman Entities seek to evade any judicial scrutiny of their claims pending plan confirmation. The rights of creditors and the respective bankruptcy estate will be severely prejudiced if the Lehman Claims are "allowed" pending plan confirmation. There will be no effective remedy for the bankruptcy estates if the Section 502(d) claim objections are deferred indefinitely until LCPI's automatic stay is lift. Here, the Lehman Entities' Plan authorizes Lehman to *de facto* foreclose on the Debtors' respective projects. Section 502(d) will be effectively mooted if these claim objections are deferred until after plan confirmation.

Lastly, the Lehman Entities ignore the unique procedural posture of this case. Section 502(d) is most frequently asserted as an additional cause of action, in a complaint asserting independent causes of action for avoidance. If Section 502(d) is asserted as a separate cause of action in a complaint, the Section 502(d) cause of action will typically be resolved concurrently with the underlying avoidance cause of action. However, in the case at bar, LCPI and LBHI have acquired interests in the subject loans and have actively invoked their automatic stays in the Lehman Adversary Proceeding. Accordingly, the SunCal Parties have been forced to pursue Section 502(d) as a claim objection, which clearly does not violate the automatic stay. It is well established that Section 502(d) can be asserted defensively, as an objection to claim, without the necessity of a formal adversary action to avoid the underlying transfers. See In re America West Airlines, Inc., 217 F.3d 1161, 1167 (9th Cir. 2000); In re KF Dairies, Inc., 143 B.R. 734, 737 (9th Cir.BAP 1992). It is the height of hypocrisy for the Lehman Entities to contend that disallowance is premature, when the Lehman Entities have caused the "stay" of the Lehman Adversary Proceeding.

## IV.

## A CLAIM OBJECTION BASED UPON 11 U.S.C. § 502(d)

## DOES NOT VIOLATE THE LEHMAN ENTITIES' AUTOMATIC STAY

The Lehman Entities argue that a Section 502(d) Claim Objection falls outside the general rule that the automatic stay does not apply to claim objections. This contention fails. In fact, an objection to a claim made under Section 502(d) falls squarely within the parameters of Rule 3007, because no affirmative relief can be granted other than disallowance of the claims.

The cases addressing the nature of this issue confirm that a Section 502(d) claim objection is "defensive." In In re Metiom, 301 B.R. 634 (Bankr.S.D.N.Y. 2003), the Court held that the automatic stay did not apply to a section 502(d) claim objection as to a claim filed by another bankruptcy estate (Intira/Divine). The Trustee objected to a claim based upon §502(d), but otherwise waived affirmative relief against the other bankruptcy estate. In rejecting Intira/Devine's position, the court held:

> The Trustee does not seek affirmative relief under either sections 547 or 549 of the Bankruptcy Code or damages resulting from Intira's postpetition conduct. He has waived such claims, asserting such rights only as grounds for objecting to … the Claim. Divine's argument, therefore, that the Trustee has violated the automatic stay merely by asserting defenses that could give rise to a claim, hardly merits a response. By waiving affirmative relief, the Trustee has expressly not attempted "to recover a claim against the debtor," 11 U.S.C. § 362(a)(1), or "to obtain possession of property of the estate or of property from the estate" of divine. 11 U.S.C. § 362(a)(3). Accordingly, the only provision of section 362(a) of the Bankruptcy Code arguably implicated by the Claim Objection is section 362(a)(3)'s stay of "any act to ... to exercise control over property of the estate."
> However, this provision of section 362(a)(3) does not apply, either, because the Trustee merely is proceeding defensively--not asserting a counterclaim--in objecting to the Claim. The Trustee is not exercising control over divine's property but, rather, simply is responding to a proof of claim filed in Metiom's chapter 11 case. Neither the language nor the policy of section 362(a)(3) apply in that context.

Metiom, 301 B.R. at 638-639.

Equally important, the Lehman Entities have failed to cite a single case that supports their contention that a claim objections based upon Section 502(d) is somehow "special" and therefore falls outside the general rule. The Lehman Entities' contention that a Section 502(d) objection is different, because it purportedly requires a prior liability determination in a lawsuit, is in error. This is not the law. In In re PRS Ins. Group, 331 B.R. 580, 584 (Bankr.D.Del. 2005), the creditor was in an insurance liquidation proceeding pending in Ohio and was protected by an injunction which precluded affirmative relief similar to the automatic stay. The Delaware bankruptcy court dismissed the trustee's avoidance actions against the creditor (the "First Action"); however, the court determined that Section 502(d) could be asserted defensively without violating the injunction (the "Second Action"). The PRS Court

rejected the precise arguments now raised by the Lehman Entities that Section 502(d) is tantamount to a determination of liability on an avoidable transfer:

> [Creditor] argues, nonetheless, that given the peculiar nature of a section 502(d) objection to claim, the Trustee's objection is still subject to [the injunction]. [Creditor] argues that a section 502(d) objection is different from a defense to the underlying merits of the claim because it requires a finding that [Creditor] is liable for an avoidable transfer under the Bankruptcy Code. … Consequently, [Creditor] asserts that the [injunction] preempts the Trustee's section 502(d) defense because the result reached is the same as if the Trustee were seeking affirmative recovery. This is not correct. If the Trustee were seeking affirmative relief, he would be able to seek to collect on any judgment entered in his favor. The Trustee does not seek payment of the avoidable transfers in this forum; he seeks only to prevent the payment of [Creditor's] claims.
>
> Therefore, the injunction in the Ohio proceeding which prohibits the Trustee from seeking to exercise control over any property within the Ohio State Court's jurisdiction is not being violated by the prosecution of the Second Action. *See, e.g., In re Metiom, Inc.,* 301 B.R. 634, 638–39 (Bankr.S.D.N.Y.2003) (holding that the automatic stay did not apply to an objection under section 502(d) where the trustee waived any affirmative relief because the trustee was not attempting to recover a claim against the creditor/debtor, to obtain any property from the creditor/debtor's estate, or to exercise control over the creditor/debtor's estate property).
>
> Further, prosecution of the Second Action will not have the same adverse impact on the Ohio liquidation proceeding that the First Action would have had. In the Second Action, the Trustee is not affirmatively seeking any relief against [Creditor] and is not attempting to control the assets of [Creditor] by asserting affirmative claims.

PRS Ins. Group, 331 B.R. at 587-588.  See also In re Rhythms NetConnections Inc., 300 B.R. 404, 409 (Bankr.S.D.N.Y. 2003) ("The better position is that § 502(d) is in essence an affirmative defense to a creditor's claim against the estate.") quoting In re Bridge Info. Sys., Inc., 293 B.R. 479, 488 (Bankr.E.D.Mo.2003); In re Popular Club Plan, Inc., 395 B.R. 587, 591 (Bankr.D.N.J. 2008) ("[Section 502(d)] has been interpreted to operate as an affirmative defense for the debtor.").

Section 502(d) has been consistently interpreted to be defensive in nature, as it does not seek affirmative relief. *See* Matter of Mid Atlantic Fund, Inc., 60 B.R. 604, 611 (Bankr.S.D.N.Y. 1986); In re McLean Industries, Inc., 184 B.R. 10, 16 (Bankr.S.D.N.Y. 1995) (citing Mid Atlantic, "the statute of limitations did not preclude the trustee from relying defensively on section 502(d)"); In re KF Dairies, Inc., 143 B.R. 734, 737 -738 (9th Cir.BAP 1992) (limitations period inapplicable to Section 502(d) claim objection  - "statutory time-bars are inapplicable to matters of defense, where no affirmative relief is sought."); In re Sierra-Cal, 210 B.R. 168, 173 (Bankr.E.D.Cal. 1997) ("The § 502(d)

-15-

1    disallowance is in the nature of an affirmative defense to a proof of claim and does not provide

2    independent authority for affirmative relief against the creditor. As an affirmative defense, § 502(d) can

3    even be asserted when an affirmative recovery from the creditor under the pertinent avoiding statute

4    would be time-barred."). <u>Collier on Bankruptcy 15th Ed. Revised</u>, ¶ 502.05[2][a] ("Most courts find that

5    there is no prohibition against the trustee asserting section 502(d) as an affirmative defense to a claim

6    of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable.") cited in <u>In re</u>

7    <u>America West Airlines, Inc.</u>,  217 F.3d 1161, 1167 (9th Cir. 2000).

8          In <u>In re KF Dairies, Inc.</u>,143 B.R. 734, 736 (9th Cir. BAP 1992), the BAP made it clear that the

9    existence of recourse through an adversary was not necessary for the disallowance of a claim based

10    upon Section 502(d). To the contrary, the BAP, citing Judge Abrams decision in <u>In re Mid Atlantic</u>

11    <u>Fund, Inc.</u>, 60 B.R. 604 (Bankr.S.D.N.Y. 1986), with approval and held:

12          Section 502(d) operates to disallow claims of transferees who do not surrender their
             avoidable transfer. **It does not compel the surrender, nor permit affirmative relief**
13          **of any kind.**

14    *KF Dairies*, 143 B.R. at 737 (emphasis added).

15          In fact, in <u>In re Midwest Agri Development Corp.</u>, 2007 WL 4868309 (Bankr.D.N.D. 2007), the

16    Court specifically held that the trustee's objection to a <u>secured</u> claim under Section 502(d) was

17    defensive, and expressly <u>rejected</u> the contention disallowance of a secured claim was a form of

18    affirmative relief:

19          [Secured creditor] argues the trustee is not using section 502(d) defensively, but
             rather, affirmatively to attempt to avoid [Secured Creditor's] perfected security interest.
20          This is incorrect. If the trustee were seeking affirmative relief, he would be able to seek
             to collect on any judgment entered in his favor. The trustee does not seek payment or
21          recovery on behalf of the estate; he seeks only to prevent the payment of [Secured
             Creditor's] claim as a secured creditor.
22

23    <u>In re Midwest Agri Development Corp.</u>, 2007 WL 4868309, *2 (Bankr.D.N.D. 2007).

24          The Lehman Entities' contention that this Court dismissed the Section 502(d) cause of action

25    from the Lehman Adversary Proceeding due to applicability of LCPI's automatic stay, is irrelevant and

26    erroneous.  The Court's order simply dismissed all causes of action against LCPI, without prejudice, in

27    the Adversary Proceeding and solely required relief from stay to bring causes of action against LCPI *in*

28    *the Adversary Proceeding*. The April 12th 2011 Order states: "Plaintiffs must seek relief from LCPI's

1   automatic stay in the United States Bankruptcy Court for the Southern District of New York in order to

2   bring any claims against LCPI *in this adversary proceeding*." Here, the SunCal Parties are not bringing

3   a 502(d) cause of action *in the Adversary Proceeding*, but rather is bringing an objection to claim in the

4   main case, which is clearly not subject to LCPI's automatic stay.   A claim objection based upon

5   Section 502(d) is still a claim objection, and it is clearly defensive, since no affirmative relief is sought.

6       At the conclusion of the May 13, 2011 hearing on the SunCal Parties' motion for entitlement to

7   discovery, the Court rejected the Lehman Entities' position. As stated in the Court's tentative ruling:

> The fact that one of the claimants, LCPI, is a debtor in its own bankruptcy case is of
> no consequence as **the automatic stay does not apply to claim objections**. *See ln
> re Palmdale Hills Property, LLC*, 423 B.R. 655, 665 (9th Cir. BAP 2010)8 (" ...
> courts allow debtors to object to creditors' claims on the basis that it is a defense
> against the assertion of the claim, and therefore, does not violate the creditor's
> automatic stay."), citing *ln re Wheatfield Bus. Park, LLC*, 308 B.R. 463, 466 (9th
> Cir. BAP 2004).
>
> Accordingly, **the Voluntary Debtors and SunCal may, via the claims objection
> process, seek and obtain a determination as to the validity or allowability of the
> claims filed by the Lehman Entities, including LCPI without violating the
> automatic stay of LCPI**. *Palmdale* at 665.

15      The Lehman Entities have erroneously represented to the New York Bankruptcy Court in their

16  current Motion to Enforce the Stay that this Court has ruled that a claim objection filed under Section

17  502(d) violates LCPI's stay and they have suggested that the SunCal Parties have ignored this Court's

18  ruling. Yet, the Lehman Entities were expressly advised by this Court on May 13, 2011, that this Court

19  did not believe that either claim objection filed by the SunCal Parties violated the stay and for this very

20  reason authorized discovery.[11]   In short, the "truth" as presented in New York is very different from

---

[11] The Lehman Entities are contending in New York that *this Court* has already ruled that an objection
under Section 502(d) citing the following snippet from last Spring:

> The decision in *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In
> re Palmdale Hills Property, LLC)*, --- B.R. --, 2009 WL 5812119 (B.A.P. 9th Cir. 2009)
> is binding on this Court....Under *In re Palmdale Hills Property, LLC,* the claims for
> relief brought against Defendant [LCPI] – namely claims 1, 5,7, **8**, and 9 – are
> affirmative relief and, therefore violate LCPI's automatic stay. Consequently, the first,
> fifth, seventh, **eighth** and ninth claims for relief are dismissed without prejudice to the
> extent that they are brought against LCPI. Plaintiffs must seek relief from LCPI's
> automatic stay in the United States Bankruptcy Court for the Southern District of New
> York in order to bring any claims against **LCPI in this adversary proceeding**.

-17-

1    "truth in California. Since this misrepresentation intentionally contradicts the record in California and it

2    is being used as a sword in New York, the SunCal Parties would respectfully pray that the Court

3    specifically address this issue.

4            In support of its contention that a claim objection based upon Section 502(d) requires relief

5    from stay, the Lehman Entities cite <u>Goldin Assocs., L.L.C. v. Shared Techs.Cellular, Inc. (In re Shared</u>

6    <u>Techs. Cellular, Inc.</u>), 281 B.R. 804, 807 (Bankr. D. Conn. 2002). This case does not support Lehman's

7    position. In the <u>Shared Tech.</u> case, the trustee in a Chapter 11 case pending in Delaware, SmarTalk

8    TeleServices, Inc. (the "SmarTalk Case"), filed a preference complaint against Shared Techs. Cellular

9    ("STC") and also filed an objection to the claim that CTC filed in that case. At the time the preference

10   complaint was filed against CTC, CTC was not in a bankruptcy. However, CTC later filed a Chapter 7

11   case in the District of Connecticut. This filing forced the Trustee in the SmarTalk Case to seek relief

12   from stay *to continue pursuing the preference adversary* in the SmarTalk Case. In response to this

13   motion for relief from stay, the trustee in the CTC case, who was opposing relief, conceded that relief

14   from stay to obtain a determination of liability on the preference complaint was appropriate. However,

15   the CTC trustee argued that allowing *that judgment* to be used to bar any payment on CTC's claim

16   against SmarTalk in reliance on Section 502(d) was inappropriate. Accordingly, CTC asked the Court

17   to include in the grant of relief from stay a provision preventing SmarTalk from using any judgment

18   obtained in the adversary as a basis for disallowing CTC's claim, in its entirety, in the Delaware case.

19           In addressing the issue of relief from stay, the court in <u>Shared Techs</u> stated that relief from stay

20   was necessary to determine liability *in the adversary* and the court further stated that since the parties

21   conceded that such a determination was necessary to proceed with the Section 502(d) objection, the

22   court could place limitations on what relief could be granted in connection with the Section 502(d)

23   objection. The <u>Shared Techs</u> court did not state that the filing of the Section 502(d) claim objection

24   alone violated the stay. This was not before the court.

25

26   The SunCal Parties believe that this Court was simply stating in this quote that claim objection based
     upon Section 502(d) had to be pursued in the form of **a contested matter under Rule 3007**, after the
27   *Palmdale* decision. It could not be pursued under Rule 7001. This Court was not ruling that a claim
     objection under Section 502(d) in any procedural form violates the stay. Obviously, if this Court
28   considered that to be the case, it would have denied the SunCal Parties the right to engage in discovery!

The <u>Shared Tech</u> case is also not valid authority, since it is premised upon the assumption that a determination of liability in an adversary proceeding seeking the recovery of a preference is necessary precondition for relief in a Section 502(d) claim objection. That is not the law in the Ninth Circuit. Within the context of the Section 502(d) claim objection, the presiding court can decide whether or not claim for preference recovery exists and on that basis, disallow the claim. As the Court's in <u>KF Dairies</u> and <u>McLean</u> concluded, this is a purely defensive act. That is all that the SunCal Parties are seeking in the Section 502(d) Motion – the defensive disallowance of the Lehman Claims. They are not seeking a penny of affirmative recovery.

**V.**

**THE SUNCAL PARTIES HAVE MADE A PRIMA FACIE SHOWING**

**THAT THE DEBTORS DID NOT RECEIVE REASONABLY EQUITABLE VALUE**

**SUFFICIENT FOR TEMPORARY DISALLOWANCE UNDER SECTION 502(d)**

<u>Obligation v. Transfer</u>. The Lehman Entities argue that "SunCal muddles matters by failing to distinguish between obligations and transfers." This argument makes a distinction without a difference. Section 548(a) allows the avoidance of either a "transfer" or an "obligation". The Motion, for purposes of simplicity, defined the transfers and obligations as to each particular loan collectively as the "transfers", e.g., "SunCal Communities I Transfers". Since the transfers here are the deeds of trust which secure the "obligation", i.e., the loans, it is logical to analyze the transfers and obligations together in a singular fashion. If the secured loan obligation exceeds the proceeds received by each debtor, then the deeds of trust are transfers securing a debt that also exceeds the proceeds received by each debtor. The Lehman Entities do not dispute that the granting of a deed of trust is a "transfer" for the purposes of Sections 502(d) and 548, and thus the Lehman Entities' argument is of no ultimate consequence.

<u>Reasonably equivalent value</u>. For purposes of reasonably equivalent value, the Lehman Entities contend that the Motion fails to address the argument that "the liability must be discounted by the value of a borrower's contribution rights against its co-obligors, and by the possibility that any individual borrower would be called upon to pay the entire loan balance". This argument fails for several reasons:

-19-

First, this issue of any rights of contribution is an evidentiary issue for trial in the avoidance action itself. However, the Lehman Entities cites no authority that this kind of offset is appropriately resolved in the context of the Section 502(d) claim objection or at the pleading stage of an avoidance action. The cases cited by the Lehman Entities address this issue at trial in the avoidance action itself, or conclude that these are issues of material fact that preclude summary judgment in the avoidance action. See Mellon Bank, N.A. v. Metro Communications, Inc. 945 F.2d 635, 648 (3d Cir. 1991) (Court of Appeals reversed judgment in favor of committee rendered after "two day bench trial"); In re Consolidated Capital Equities Corp. 143 B.R. 80 (Bankr.N.D.Tex. 1992) (issue of material fact as to whether debtor received fair consideration for its guaranty of loan to company which used loan in leveraged buyout of debtor precluded summary judgment for debtor seeking to avoid guaranty obligation as fraudulent conveyance under California law); Matter of Ollag Const. Equipment Corp., 578 F.2d 904 (2d Cir. 1978) (judgment rendered after trial, footnote 15 references "[d]ocuments and testimony introduced at trial"); In re Alexander Dispos-Haul Systems, Inc., 36 B.R. 612, 614 (Bankr.D.Or. 1983) ("The Court tried the issues pursuant to an agreed pretrial order.")

As set forth above, temporary disallowance under Section 502(d) is based upon the sufficiency of the allegations. See Collier on Bankruptcy 15th Ed. Revised, ¶ 502.05[2][a] (2011). As set forth in the Motion, the *Order Denying The Dismissal Motions* establishes that the fifth claim for relief (avoidance and recovery of fraudulent transfers) and sixth claim for relief (avoidance and recovery of preferential transfers) sufficiently pled their respective causes of action to survive the Lehman Entities' motion to dismiss (retained as the third and fourth claims for relief in the FAC). As a matter of law, the SunCal Parties have established a "prima facie" case for the purposes of Section 502(d).

Second, the Lehman Entities' argument ignores the fact that six of the Debtors received no or virtually no proceeds whatsoever, i.e., SunCal I, SunCal III, SCC Palmdale, SCC Communities, Tesoro and Del Rio. Thus, any contribution rights is irrelevant to these Debtors who received no value whatsoever. Based upon the authorities cited in the Motion, is well established that a debtor does not receive reasonably equivalent value where the debtor encumbers its assets with respect to a loan in which the loan proceeds are provided to a related entity, rather than the debtor itself. See Smith v. American Founders Financial, Corp., 365 B.R. 647, 666-667 (S.D.Tex. 2007); Leibowitz v. Parkway

1   Bank & Trust Co., 210 B.R. 298 (N.D.Ill.1997), aff'd, 139 F.3d 574 (7th Cir.1998); In re Minnesota

2   Utility Contracting, Inc., 110 B.R. 414, 421 (D.Minn.1990); In re Marquis Products, Inc., 150 B.R. 487

3   (Bankr.D.Me.1993); Smith v. American Founders Financial, Corp., 365 B.R. 647. 668-670 (S.D.Tex.

4   2007).

5       Third, Lehman's case law is distinguishable in that none of the Debtors are mere "guarantors"

6   with contingent obligations.  Rather, the Debtors are alleged to be the principal obligors under the

7   respective loans.  Accordingly, there is no contingency as to each of the Debtors' liability.

8   **VI.**

9   **A SECTION 548(c) OFFSET IS NOT A DEFENSE TO**

10  **TEMPORARY DISALLOWANCE UNDER SECTION 502(d)**

11      The Lehman Entities argue that they would be entitled to retain liens in the properties to the

12  extent they gave value in good faith.  As to two loans (Heartland/Marblehead Loan and the Del Amo

13  Loan), the Lehman Entities contend that their offset for the retained lien exceeds the "current value of

14  the collateral."  Response, 19-20.  The Lehman Entities fail to cite any authority to support their novel

15  argument that Section 548(c) can defeat disallowance under Section 502(d).

16      The only authority on this point is directly contrary to the Lehman Entities' argument.  In In re

17  Interstate Cigar Co., Inc., 278 B.R. 8 (Bankr.E.D.N.Y. 2002), the Court held that Section 502(d)

18  defeats a creditor's offset rights under Section 548(c) unless the property is first transferred back to the

19  estate.  In Interstate Cigar, the committee filed a fraudulent transfer action against Congress Financial.

20  Congress Financial sought a "credit" or "offset" for the amounts it paid pursuant to Section 548(c).  Id.

21  at 23.  The Court held inter alia that the "credit" or "offset" under Section 548(c) was precluded unless

22  the property transferred is first reconveyed.

23          The proper method to credit Congress for the funds it has paid to CIT is to permit
            Congress to file a claim after the value of the property is transferred back into the
24          estate, which claim shall be either allowed or disallowed. In this fashion, Congress
            can participate in the distribution process along with all of the other creditors if its
25          claim is appropriate. …
            There is further statutory support for the prohibition against setoff in an
26          avoidance action. Section 502(d) of the Code provides as follows:
                Notwithstanding subsections (a) and (b) of this section, the court shall
27              disallow any claim of any entity from which property is recoverable under
                section 542, 543, 550 or 553 of this title or that is a transferee of a transfer
28

avoidable under section 522(f), 522(h), 544, ... of this title, unless such entity or such transferee has paid the amount or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Therefore, **the transferee of an avoided transfer may not assert a claim against property of the estate unless the property transferred is first reconveyed**.

The Defendants have already filed a proof of claim in this case and will not be prejudiced by a judgment avoiding the transfer, as it applies to inventory and equipment, in full. Once the estate is made whole, the creditors' claims, including the claims of Defendant, will be paid from the estate's assets according to the priorities set forth in the Code.

In re Interstate Cigar Co., Inc., 278 B.R. 8, 24-25 (Bankr.E.D.N.Y. 2002) (emphasis added).

Accordingly, the Lehman Entities may only assert Section 548(c) after the avoidable transfer is re-conveyed to the estate in compliance with Section 502(d). Thus, there is no support that Section 548(c) defeats disallowance under Section 502(d).

Moreover, Section 548(c) constitutes an affirmative defense in which the defendant has the burden of proof. See In re Roosevelt, 220 F.3d 1032 (9th Cir. 2000) (Section 548(c) is an affirmative defense in which the defendant bears the burden of proof); In re National Audit Defense Network, 367 B.R. 207, 224 (Bankr.D.Nev. 2007) citing In re Bayou Group, LLC, 362 B.R. 624, 631-32 (Bankr.S.D.N.Y.2007) ("The good faith/value defense provided in Section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense."); In re Jacobs, 394 B.R. 646, 662 (Bankr.E.D.N.Y. 2008) ("the transferee's 'good faith' and value given 'in exchange' is an affirmative defense under § 548(c) that the transferee must plead and prove.")

In connection with the Lehman Entities' motion to dismiss the TAC, the Court rejected the same arguments under Section 548(c). The *Order Denying The Dismissal Motions* establishes that the fifth claim for relief (avoidance and recovery of fraudulent transfers) and sixth claim for relief (avoidance and recovery of preferential transfers) sufficiently pled their respective causes of action to survive the Lehman Entities' motion to dismiss. As a matter of law, the SunCal Parties have established a "prima facie" case for the purposes of Section 502(d).

Lastly, the Lehman Entities have failed to submit any evidence to establish that, as to the Heartland/Marblehead Loan and the Del Amo Loan), their Section 548(c) offset exceeds the "current

1    value of the collateral." The Lehman Entities fail to submit any evidence of the "current value" of the

2    Heartland, Marblehead or Del Amo Projects. The SunCal Parties submitted appraisals of these projects

3    as of 2006, 2007 and 2008, near the time of the respective transfers. The valuations from 2008,

4    asserted by the Lehman Entities in the Response, are 2-1/2 years old and do not establish the "current"

5    value of the Projects.

6                                        **VII.**

7    **THE LEHMAN ENTITIES MISCHARACTERIZE THE COURT'S TENTATIVE**

8    **RULING REGARDING THE DISPUTED ADMINISTRATIVE LOANS.**

9            In the Response, Lehman ALI argues its administrative claims are not subject to challenge by

10   mischaracterizing this Court's May 13th tentative ruling. The Response states:

11              As the Court recognized in its tentative ruling on the SunCal disclosure statements,
               there is no basis for disallowing the superpriority, secured, administrative claims that
12             were accorded to Lehman ALI as a condition of its provision of post-petition
               financing to the Trustee."
13
     Response, 21:6-8.
14
            However, the Court's actual May 13th tentative merely requests that the Disclosure Statement
15
     provide a further description of why these administrative claims are disputed:
16
                Pg. 14, lns 8-17 Define "Lehman Disputed Administrative Loans". However, these
17             administrative loans were post-petition financing which were approved by the
               court. Thus, it is unclear why the DS lists these loans as 'disputed'. The DS needs
18             to explain why these are disputed considering they were court approved, etc."

19   See May 13th Tentative Ruling.

20          The Motion itself provides a detailed description of the basis for the dispute. Moreover, Section

21   502(j) expressly authorizes a court to reconsider the allowance or disallowance of a claim, even

22   administrative claims.[12] 11 U.S.C. § 502(j) ("(j) A claim that has been allowed or disallowed may be

23   _____

24   [12]   Case law consistently concluded that administrative claims as "claims" for the purposes of § 502(j).
     See e.g., In re DuPage Boiler Works, Inc., 98 B.R. 907, 910 (Bankr.N.D.Ill. 1989) ("Moreover, if
     funds are ultimately collected by the estate sufficient to cover all administrative expenses, the Court
25   can at that time reconsider the amount of the post-petition tax claim under 11 U.S.C. § 502(j)."); In re
     McBride, 337 B.R. 451, 462 (Bankr.N.D.N.Y. 2006) ("At the same time, the Court believes that
26   sufficient cause has been established pursuant to Code § 502(j) by AmeriCredit to warrant the granting
     of an administrative expense claim pursuant to Code § 503(b)"); In re Gold & Silversmiths, Inc., 170
27   B.R. 538, 548 (Bankr.W.D.N.Y. 1994) (reconsidering post-petition administrative claim pursuant to
     Section 502(j)); cf. In re Cleanmaster Industries, Inc., 106 B.R. 628 (9th Cir.BAP 1989) (concerning
28   bankruptcy court's denial of §502(j) motion to reconsider order disallowing administrative priority
     claims – nothing in the panel decision suggests that §502(j) does not apply to post-petition claims).

                                        -23-

1  reconsidered for cause.").  Accordingly, to the extent necessary, the Court may deem the Motion as a

2  motion to reconsider Lehman ALI's administrative claims in the Trustee Debtors' cases.

3      As set forth in the Motion, in this Circuit, Section 502(d) applies equally to disallow both pre-

4  petition claims and administrative claims.  See In re Triple Star Welding, Inc., 324 B.R. 778, 794 (9th

5  Cir.BAP 2005) ("the bankruptcy court has no discretion to disregard the Bankruptcy Code's

6  requirements … that Baker turn over any avoidable preference before he can be paid any administrative

7  claim for fees. 11 U.S.C. § 502(d).")[13].   See also Matter of Hansen, 1993 WL 176430, *2 (W.D.Tex.

8  1993) (Bankruptcy Court disallowed the IRS' post-petition administrative tax claim pursuant to Section

9  502(d)).  Accordingly, Lehman ALI's administrative claims against the above referenced Debtors must

10  also be disallowed pursuant to Section 502(d).

11                                              **VIII.**

12  **BECAUSE THE LEHMAN ENTITIES ADMIT THAT ACTON NEVER EXECUTED AN**

13  **ASSUMPTION AGREEMENT OF THE SUNCAL COMMUNITIES LOAN,**

14  **CLAIM 6 AGAINST ACTON IS UNENFORCEABLE AND SHOULD BE DISALLOWED IN**

15  **ITS ENTIRETY, SINCE IT CAN NOT BE REFORMED POST-PETITION IN VIOLATION OF**

16  **THE STRONG ARM CLAUSE**

17      Section 502(b)(1) authorizes the bankruptcy court to determine whether a claim is valid and

18  enforceable under applicable state law.  Here, LCPI has failed to attach or establish the existence of any

19  documentary evidence whereby Acton incurred the liability set forth in Claim 6.   Specifically, LCPI

20  entered into a loan agreement dated November 17, 2005 ("SunCal Communities I Loan") with SunCal

21

22      Section 502(j) refers to reconsideration of a "claim".  On its face, the definition of a "claim" is not
limited to pre-petition claims. See 11 U.S.C.A. § 101(5).  The BAP has held that post-petition
23  administrative claims fall within the definition of a "claim" under Section 101(5).  See In re MicroAge,
Inc., 291 B.R. 503, 508 (9th Cir. BAP 2002) ("the definition of a 'claim' in § 101(5) is sufficiently
24  broad to include requests for payment of expenses of administration"); In re Reed, 312 B.R. 832, 839
(N.D.Tex. 2004) ("The question for this Court is not whether administrative expenses fit the definition
25  of 'claims'-surely they are 'claims' as that term is defined by the Code itself at § 101(5)(a)"); In re
Worldcom, Inc., 401 B.R. 637, 643 (Bankr.S.D.N.Y. 2009) ("Under § 101(5)(A), an entity with a right
26  to payment against the estate has a claim. The timing of when that right to payment arose does not
affect its status as a claim under the Code but rather the timing only affects whether the claimant must
27  file a proof of claim or a request for an administrative expense. Therefore, even though the OneStar
Trustee's right to payment did not arise prepetition, it is still a claim against the estate subject to
28  treatment under the Code").
[13] *abrogated on other grounds* In re AFI Holding, Inc., 530 F.3d 832, 530 F.3d 832 (9th Cir. 2008).

I, as borrower.  Bickford Ranch, Summit Valley and Emerald Meadows were not original borrower

under the SunCal Communities I Loan, but rather subsequently executed "Assumption Agreements" –

which are attached to LCPI's proofs of claim - whereby they each purported to become additional

grantors as to the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan.  See

RJN, Exs. 4, 5 and 6.  However, LCPI's Claim 6 fails to attach or establish the existence of an

Assumption Agreement as to Acton.  See RJN, Ex. 3.

LCPI's Claim 6-3 (against Acton) fails to attach an Assumption Agreement as to Acton.

Rather, Claim 6-3 attaches *Summit Valley's* Assumption Agreement which is also executed by Acton.

However, this Assumption Agreement does not in any way purport to establish liability on the part of

Acton.  Simply put, there is no Assumption Agreement purporting to establish Acton's liability.  The

Debtors' business records do not reflect any Assumption Agreement as to Acton.  See Cook

Declaration ¶ 7.

In its Response, the Lehman Entities admit that there is no separate Assumption Agreement as

to Acton, and that these documents may be reformed under New York law to correct a "scrivener's

error".  However, the Lehman Entities fail to address well established case law that erroneous loan

documents cannot be "reformed" post-petition in violation of the estate's strong arm powers under

Section 544(a).  See e.g., In re Iowa-Missouri Realty Co., Inc., 86 B.R. 617, 621 (Bankr.W.D.Mo.

1988) (instrument erroneously executed by debtor's corporate parent, rather the debtor, could not be

reformed after filing of property owner's Chapter 11 petition, as a "defective instrument cannot be

reformed if it would prejudice the rights of a bona fide purchaser" pursuant to Section 544(a)), In re

Law Developers, LLC, 404 B.R. 136, 140 (Bankr.E.D.N.C. 2008) ("the hypothetical judicial lien cut

off Currituck's reformation rights as of the date of the bankruptcy petition. Since reformation is not

possible, the deed is void and Currituck does not hold a lien on Lot 17."); In re Speer, 328 B.R. 699,

703 (Bankr.W.D.Pa. 2005) (the equitable principle of reformation does not apply as against

debtor/trustee's status of bona fide purchaser).

Moreover, the deed of trust is of no legal effect if there is no valid underlying obligation. "A

mortgage secured by a defective underlying obligation is itself invalid."  National Council on

1  Compensation Ins., Inc. v. Caro & Graifman, P.C., 2008 WL 450413, 27 (D.Conn. 2008).  Stated

2  otherwise, the Deed of Trust alone cannot establish a valid underlying debt:

> A mortgage is merely security for a debt or other obligation and cannot exist
> independently of the debt or obligation." *FGB Realty Advisors, Inc. v. Parisi,* 265
> A.D.2d 297, 696 N.Y.S.2d 207, 208 (1999); *see also Wyoming County Bank &
> Trust Co. v. Kiley,* 75 A.D.2d 477, 430 N.Y.S.2d 900, 902 (1980) ("The note
> represents the primary personal obligation of the mortgagor while the mortgage is
> merely the security for such obligation."). A mortgage agreement must be
> supported by a valid underlying obligation, which is often referred to as the valid
> consideration for the mortgage. *See Coronet Capital Co. v. Spodek,* 265 A.D.2d
> 292, 696 N.Y.S.2d 191, 192 (1999) ("It has long been held that a mortgage is not
> valid and enforceable unless there is an underlying valid debt or obligation for
> which the mortgage is intended as security."); *First Am. Bank of N.Y. v. Sloane,*
> 235 A.D.2d 656, 651 N.Y.S.2d 734, 735 (1997) ("[I]n order to be enforceable as a
> lien on real property, the mortgage must be supported by valid consideration ....").

11  Barberan v. Nationpoint  706 F.Supp.2d 408, 424 (S.D.N.Y. 2010).

12      "It has long been held that a mortgage is not valid and enforceable unless there is an

13  underlying valid debt or obligation for which the mortgage is intended as security."  Coronet Capital

14  Co. v. Spodek  265 A.D.2d 292, 292, 696 N.Y.S.2d 191, 192 (N.Y.A.D. 2 Dept.,1999) citing Beck v.

15  Sheldon, 259 N.Y. 208, 181 N.E. 360; Baird v. Baird, 145 N.Y. 659, 40 N.E. 222; Haven Assocs. v.

16  Donro Realty Corp., 149 A.D.2d 667, 540 N.Y.S.2d 478; 9 Warren's Weed, New York Real Property,

17  § 4.01[1] [4th ed] ).  "A mortgage is merely security for a debt or other obligation and cannot exist

18  independently of the debt or obligation." FGB Realty Advisors, Inc. v. Parisi, 696 N.Y.S.2d 207,

19  208 (N.Y.A.D. 2 Dept. 1999) citing Copp v. Sands Point Marina, 17 N.Y.2d 291, 292, 270 N.Y.S.2d

20  599, 217 N.E.2d 654).

21      Accordingly, as a matter of law, the applicable loan documents cannot be reformed post-

22  petition to correct the alleged scrivener's error, nor can the deed of trust alone cure a defective

23  underlying obligation.  Thus, Claim 6 against Acton must be disallowed.

24

25

26

27

28

## IX.

## CONCLUSION

For the reasons set forth herein, the SunCal Parties request that the Court enter an order granting the relief requested herein.

DATED:  June 2, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:    */s/ Paul J. Couchot*
       Paul J. Couchot, Esq.
General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:  */s/ Ronald Rus*
       Ronald Rus, Esq.
       Joel S. Miliband, Esq.
       Catherine Castaldi, Esq.
Attorneys for SunCal Management, LLC

MAINDOCS-#162306-v3-SCC_Reply_502(d)_claim_objedtion.DOC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **OMNIBUS REPLY TO THE RESPONSES OF LEHMAN ENTITIES AND THE TRUSTEE TO MOVING VOLUNTARY DEBTORS' AND SUNCAL MANAGEMENT LLC'S MOTION FOR ORDER DISALLOWING CLAIMS OF LEHMAN ALI, INC. AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT TO 11 U.S.C. § 502(d)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 2, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 2, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 2, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com

1
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com

2
- Michelle Hribar    mhribar@rutan.com

3
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com

4
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com

5
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com

6
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com

7
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

8
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org

9
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com

10
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com

11
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com

12
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com

13
- Michael D May    mdmayesq@verizon.net

14
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com

15
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com

16
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com

17
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com

18
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com

19
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

20
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com

21
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net

22
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com

23
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com

24
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com

25
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com

26
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com

27
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

28
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com

- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

-31-

MAINDOCS-#162306-v3-SCC_Reply_502(d)_claim_objedtion.DOC