1  PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
3  Telephone: (949) 720-4100
Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

5  RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
6  RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION
7  2211 Michelson Drive, Seventh Floor
Irvine, California 92612
8  Telephone: (949) 752-7100
Facsimile: (949) 252-1514
9
Counsel for SunCal Management LLC and
10  SCC Acquisitions Inc..

11              **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
                     **Santa Ana Division**
12
     In re                                    | Case No. 8:08-bk-17206-ES
13  PALMDALE HILLS PROPERTY, AND ITS
     RELATED DEBTORS,                          | Jointly Administered With Case Nos.
14                                             8:08-bk-17209-ES; 8:08-bk-17240-ES;
                Joint Administered Debtors and  8:08-bk-17224-ES; 8:08-bk-17242-ES;
15             Debtors-in-Possession           8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                             8:08-bk-17227-ES; 8:08-bk-17246-ES;
16  Affects:                                  8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                             8:08-bk-17236-ES; 8:08-bk-17248-ES;
17  ☐ All Debtors                             8:08-bk-17249-ES; 8:08-bk-17573-ES;
     ☐ Palmdale Hills Property, LLC            8:08-bk-17574-ES; 8:08-bk-17575-ES;
18  ☐ SunCal Beaumont Heights, LLC            8:08-bk-17404-ES; 8:08-bk-17407-ES;
                                             8:08-bk-17408-ES; 8:08-bk-17409-ES;
19  ☐ SCC/Palmdale, LLC                       8:08-bk-17458-ES; 8:08-bk-17465-ES;
     ☐ SunCal Johannson Ranch, LLC            8:08-bk-17470-ES; 8:08-bk-17472-ES;
20  ☐ SunCal Summit Valley, LLC               and 8:08-bk-17588-ES
21  ☐ SunCal Emerald Meadows LLC              Chapter 11 Proceedings
     ☐ SunCal Bickford Ranch, LLC
22  ☐ Acton Estates, LLC                      **FIRST AMENDED CHAPTER 11 PLANS**
                                             **FILED BY SUNCAL PLAN PROPONENTS**
23  ☐ Seven Brothers LLC                      **IN THE CHAPTER 11 CASES OF SUNCAL**
     ☐ SJD Partners, Ltd.                      **MARBLEHEAD, LLC AND SUNCAL PSV,**
24  ☐ SJD Development Corp.                   **LLC [GROUP I: TRUSTEE DEBTORS]**
25  ☐ Kirby Estates, LLC
     ☐ SunCal Communities I, LLC               Date:    July 22, 2011
26  ☐ SunCal Communities III, LLC             Time:    11:00 a.m.
27  ☐ SCC Communities LLC                     Place:   Courtroom 5A
     ☐ North Orange Del Rio Land, LLC
28  ☐ Tesoro SF LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☒ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

## TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 3 |
| | 2.1 Definitions | 3 |
| | 2.2 Rules of Construction | 23 |
| | 2.3 Exhibits | 24 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 24 |
| | 3.1 Introduction | 24 |
| | 3.2 Treatment of Allowed Administrative Claims | 25 |
| | 3.3 Treatment and Repayment of the Lehman Administrative Loan(s) | 25 |
| | 3.4 Repayment of Allowed Administrative Claims Other than the Lehman Administrative Loans | 25 |
| | 3.5 Administrative Claims Bar Date | 26 |
| | 3.6 Treatment of Unsecured Tax Claims | 26 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS | 27 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 31 |
| | 5.1 The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Secured By Group I Projects (Classes 1.1 Through 1.2) | 31 |
| | 5.2 The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) (Classes 2.1 and 2.2) | 31 |
| | 5.3 The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Group I Projects Subject to Lehman's Disputed Claims (Classes 3.1 Through 3.18) | 35 |
| | 5.4 The Plan's Treatment of Holders of Bond Indemnification Claims (Class 4.1) | 35 |
| | 5.5 The Plan's Treatment of Holders of Priority Claims (Class 5.1) | 36 |
| | 5.6 The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Reliance Claims (Classes 6.1 and 6.2) | 36 |
| | 5.7 The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims (Classes 7.1 and 7.2) | 37 |
| | 5.8 The Plan's Treatment of Holders of Allowed Interests | 38 |
| VI. | ACCEPTANCE OR REJECTION OF THE PLAN | 38 |
| | 6.1 Introduction | 38 |
| | 6.2 Who May Object to Confirmation of the Plan | 38 |
| | 6.3 Who May Vote to Accept/Reject the Plan | 38 |
| | 6.4 What Is an Allowed Claim/Interest | 39 |

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

|  |  | | |
|---|---|---|---|
|  | 6.5 | What Is an Impaired Class | 39 |
|  | 6.6 | Who Is Not Entitled to Vote | 39 |
|  | 6.7 | Who Can Vote in More than One Class | 39 |
|  | 6.8 | Votes Necessary for a Class to Accept the Plan | 40 |
|  | 6.9 | Treatment of Nonaccepting Classes | 40 |
|  | 6.10 | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 40 |
| VII. |  | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 40 |
|  | 7.1 | Introduction | 40 |
|  | 7.2 | Sale Process After Confirmation Date But Prior to Effective Date | 41 |
|  | 7.3 | Removal of Chapter 11 Trustee | 42 |
|  | 7.4 | Transfer of Property to The Plan Trust | 43 |
|  | 7.5 | Closing of Group I Project Sales | 43 |
|  | 7.6 | Purposes of The Plan Trust | 43 |
|  | 7.7 | Trust Agreement | 44 |
|  | 7.8 | Operations of The Plan Trust | 44 |
|  | 7.9 | The Plan Trustee | 44 |
|  | 7.10 | Payment of Trust Expenses | 44 |
|  | 7.11 | Plan Distribution System | 44 |
|  | 7.12 | Claim Estimation Rights | 45 |
|  | 7.13 | No Payment of Transfer-Related Fees to The United States Trustee | 45 |
|  | 7.14 | No Payment of Transfer-Related Fees To the Trustee | 45 |
|  | 7.15 | Books and Records of Trust | 45 |
|  | 7.16 | Limitations on Liabilitiy | 46 |
|  | 7.17 | Federal Income Tax Treatment of the Holders Of Plan Trust Beneficial Interests | 46 |
|  | 7.18 | Termination of the Trust | 47 |
|  | 7.19 | Exemption from Certain Transfer Taxes | 48 |
|  | 7.20 | Tax Consequence of The Plan | 48 |
|  | 7.21 | The Plan Sponsor | 48 |
|  | 7.22 | Acquisitions' Obligations | 48 |
|  | 7.23 | The Committee | 49 |
|  | 7.24 | Duties and Powers | 49 |
|  | 7.25 | Dissolution of Committee | 49 |
|  | 7.26 | Litigation Claims | 49 |
|  | 7.27 | Collection of Litigation Recoveries | 50 |
| VIII. |  | RISK FACTORS | 50 |
|  | 8.1 | Plan Risks | 50 |
| IX. |  | DISTRIBUTIONS | 52 |
|  | 9.1 | Distribution Agent | 52 |
|  | 9.2 | Distributions | 52 |
|  | 9.3 | Old Instruments and Securities | 52 |

MAINDOCS-#163409 v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

| | | | |
|---|---|---|---|
| X. | OBJECTION TO CLAIMS AND DISPUTE CLAIMS | | 55 |
| | 10.1 | Standing for Objections to Claims | 55 |
| | 10.2 | Treatment of Disputed Claims and Disputed Liens | 55 |
| | | | |
| XI. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 55 |
| | 11.1 | Executory Contracts | 55 |
| | 11.2 | Bar Date for Rejection Damages | 56 |
| | 11.3 | Changes in Rates Subject to Regulatory Commission Approval | 56 |
| | | | |
| XII. | BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY | | 56 |
| | 12.1 | Best Interest Test | 56 |
| | 12.2 | Feasibility | 57 |
| | | | |
| XIII. | LIMITATION OF LIABILITY | | 58 |
| | 13.1 | No Liability for Solicitation or Participation | 58 |
| | | | |
| XIV. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | | 58 |
| | 14.1 | Conditions Precedent to Plan Confirmation | 58 |
| | 14.2 | Conditions Precedent to Plan Effectiveness | 58 |
| | | | |
| XV. | RETENTION OF JURISDICTION | | 58 |
| | | | |
| XVI. | MODIFICATION OR WITHDRAWAL OF THE PLAN | | 59 |
| | 16.1 | Modification of Plan | 59 |
| | 16.2 | Nonconsensual Confirmation | 59 |
| | | | |
| XVII. | MISCELLANEOUS | | 59 |
| | 17.1 | Payment of Statutory Fees | 59 |
| | 17.2 | Payment Dates | 60 |
| | 17.3 | Headings | 60 |
| | 17.4 | Other Documents and Actions | 60 |
| | 17.5 | Notices | 60 |
| | 17.6 | Governing Law | 60 |
| | 17.7 | Binding Effect | 61 |
| | 17.8 | Successors and Assigns | 61 |
| | 17.9 | Severability of Plan Provisions | 61 |
| | 17.10 | No Waiver | 61 |
| | 17.11 | Inconsistencies | 62 |
| | 17.12 | Exemption from Certain Transfer Taxes and Recording Fees | 62 |
| | 17.13 | Post-Confirmation Status Report | 62 |
| | 17.14 | Post-Confirmation Conversion/Dismissal | 62 |
| | 17.15 | Final Decree | 63 |

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

# I.

## INTRODUCTION

The Chapter 11 Plan of Reorganization (the "Plan")[1] is filed by the Voluntary Debtors and Acquisitions[2], as the SunCal Plan Proponents.  Acquisitions are also the Plan Sponsor, and Acquisitions will serve as the Plan Trustee and the Distribution Agent for all of the Debtors, if the Plan is confirmed. The Plan is being filed in the Chapter 11 Cases of the following Debtors:

**SunCal PSV, LLC**
**SunCal Marblehead, LLC**

(the "Group I: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

In summary, the Plan provides for sale of the Palms Springs Village Project and the Marblehead Project (the "Group I Projects"), and for the liquidation of all other assets of the Group I: Trustee Debtors. The Net Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

**The Plan also offers the holders of a certain category of general unsecured claims, which are defined herein as Reliance Claims, the right to sell these claims, and any Litigation Rights held by the holders of such claims against the Lehman Entities, to LitCo, for the sum of fifty five-cents ($0.55) per dollar of claim.  The purchase offer is conditioned upon confirmation of the applicable Plan and the lack of any stay pending an appeal of the Confirmation Order.  However, the purchase offer is not contingent upon the sale of the Group I Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.**

**EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" to the Disclosure Statement.

[2] In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

MAINDOCS-#163409-v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

1    OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN

2    BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE

3    TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR

4    LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE

5    EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST

6    IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER

7    ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.

8         Although the same Plan is being filed in the Cases of all four Group I: Trustee Debtors,

9    each Plan is independent of the others. The Creditors in each Case will determine, subject to Court

10    approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed

11    in the Cases of some of the Group I: Trustee Debtors, but not in others.

12         The Plan is accompanied by the "*First Amended Disclosure Statement Describing Chapter*

13    *11 Plans Filed By Suncal Plan Proponents In The Chapter 11 Cases Of SunCal Marblehead, LLC*

14    *and SunCal PSV, LLC [Group I: Trustee Debtors]*" (the "Disclosure Statement"). The Disclosure

15    Statement has been approved by the Court. It is being provided along with the Plan in order to

16    provide you with critical information about the Debtors and to help you understand the Plan.

17                      **II.**

18         **DEFINITIONS AND RULES OF INTERPRETATION**

19         **2.1**   **Definitions.**

20         The following defined terms are used in the Plan and Disclosure Statement. Any

21    capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy

22    Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

23            2.1.1  Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect

24    parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of

25    the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

26            2.1.2  Administrative Claim(s). Any Claim against a Group I Debtor or its Estate

27    incurred after the applicable Petition Date for the applicable Group I Debtor but before the

28    Confirmation Date, for any cost or expense of administration of the Case of the applicable Group I

-3-

1  Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code,

2  including, without limitation, any fee or charge assessed against an Estate of a Group 1 Debtor

3  under section 1930 of Title 28 of the United States Code.

4         2.1.3  <u>Administrative Claims Bar Date</u>. The last date fixed by the Plan for the

5  filing of Proof of Claims or requests for payment of Administrative Claims. Under the Plan, the

6  Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the

7  Confirmation Date.

8         2.1.4  <u>Affiliate</u>. The term shall have the meaning set forth under Section 101(2),

9  including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

10  controls, is owned or controlled by, or is under common ownership or control with, such Person.

11  The term "control" (including, with correlative meanings, the terms "controlled by" and "under

12  common control with"), as applied to any Person, means the possession, direct or indirect, of the

13  power to direct or cause the direction of the management and policies of such Person, whether

14  through the ownership of voting securities or other equity ownership interest, by contract or

15  otherwise.

16         2.1.5  <u>Allowed</u>. When used to describe Claim(s) or Interest(s), such Claim(s) or

17  Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

18         2.1.6  <u>Allowed Amount</u> shall mean:

19         A.  With respect to any Administrative Claim (i) if the Claim is based

20  upon a Fee Application, the amount of such Fee Application that has been approved by a Final

21  Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

22  incurred in the ordinary course of business of the Group I: Trustee Debtors and is not otherwise

23  subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

24  the Group I: Trustee Debtors and such creditor, failing which, the amount thereof as fixed by a

25  Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

26  has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

27  (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

28  applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

MAINDOCS-#163409-v1 SCC_Plan_Group_1_Trustee_Debtors.DOC

1  Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

2  such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

3  Bankruptcy Rules or the Bankruptcy Court. The Allowed Amount of any Administrative Claim

4  which is subject to an Administrative Claims Bar Date and not filed by the applicable

5  Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

6  such Administrative Claim;

7           B.     with respect to any Claim which is not an Administrative Claim

8  (the "Other Claim"): (i) if the Holder of such Other Claim did not file proof thereof with the

9  Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

10  Group I: Trustee Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if the

11  Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims

12  Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed

13  within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan

14  or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court

15  if an objection to such proof was interposed within the applicable period of time fixed by the

16  Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court. The Allowed Amount

17  of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the

18  Group I: Trustee Debtors' Schedules or is listed as disputed, unliquidated, contingent or unknown,

19  and is not allowed under the terms of the Plan shall be zero, and no distribution shall be made on

20  account of any such Claim; and

21           C.     with respect to any Interest, (i) the amount provided by or

22  established in the records of the Group I: Trustee Debtors at the Confirmation Date, provided,

23  however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

24  records of the Group I: Trustee Debtors; or (ii) the amount stated in a proof of Interest Filed prior

25  to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date

26  or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a

27  Final Order of the Bankruptcy Court.

28

2.1.7    Allowed Claim. Except as otherwise provided in the Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.8    Allowed Interest. Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.9    Allowed Secured Claims. All or a portion of a Secured Claim that is an Allowed Claim.

2.1.10    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is an Allowed Claim.

2.1.11    Assets. All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.12    Arch. Arch Insurance Company, a Bond Issuer.

2.1.13    Available Cash. Each Group I: Trustee Debtors' Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims. The Available Cash shall consist of the respective Group I: Trustee Debtors' cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly encumbering such Cash, or proceeds from the Acquisitions Administrative Loan. All Available Cash shall be deposited into the applicable Distribution Account(s). Available Cash shall not include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are Allowed but subject to an equitable subordination judgment.

2.1.14    Avoidance Actions. All Claims and defenses to Claims accruing to the Group I: Trustee Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.15    Bankruptcy Code. The United States Bankruptcy Code.

2.1.16    Bankruptcy Court. The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.17    Bankruptcy Rules. Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.18    Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.19    Bickford Ranch Project. The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described herein.

2.1.20    Bickford Second Loan Agreement. That certain promissory note secured by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of Lehman ALI. The Bickford Second Lien Loan Agreement is allegedly secured by a second priority deed of trust on the Bickford Ranch Project. The Bickford Second Loan Agreement has an asserted balance due of $56,494,059.38 as of March 30, 2009.

2.1.21    Bond Claim(s). Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.22    Bond Claimant. Holder(s) of a Bond Claim.

2.1.23    Bond Indemnification Claim. All Claims by Bond Safeguard, Lexon, and Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with respect to the Group I: Trustee Debtors' Projects.

2.1.24    Bond Indemnitors. The individuals and entities that are allegedly liable on the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all Affiliates of Acquisitions, and Elieff.

2.1.25    Bond Issuer(s). Bond Safeguard, Lexon and Arch in their capacities as issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

2.1.26    Bond Safeguard. Bond Safeguard Insurance Company, a Bond Issuer.

2.1.27    Business Day. Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.28    Cases. The Chapter 11 cases of the Group I: Trustee Debtors pending before the Bankruptcy Court.

2.1.29    Cash. Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

2.1.30    CFD Bonds. Community facilities district bonds issued by a governmental entity.

2.1.31    Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the Trustee Debtors in their pending Chapter 11 Cases.

2.1.32    Claim. The term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the Group I: Trustee Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the Group I: Trustee Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.33    Claims Bar Date. For any Claim other than an Administrative Claim, March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy Court in all of the Group I: Trustee Debtors' cases.

2.1.34    Claims Objection Deadline. The later of (i) the first business day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Trustee and the Holder of the Claim.

2.1.35    Claim Objection Reduction Amount. The amount of Net Sales Proceeds that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the secured claims filed by the Lehman Lenders.

2.1.36    Class. Each group of Claims or Interests classified in Article IV of the Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.37    Committee. The Trustee Debtors' Committee, both before and after the Confirmation Date.

2.1.38    Confirmation Date. The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

2.1.39    Confirmation Order. The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.40    Contingent Bond Claims. Unmatured Bond Claims.

2.1.41    Creditor. Any Person who is the Holder of a Claim against any Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.42    Debtor(s). Individually or collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

2.1.43    Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

1          2.1.44    Disclosure Statement. The document accompanying the Plan that is

2    entitled "Disclosure Statement Describing Chapter 11 Plan Filed by SunCal Plan Proponents In

3    The Chapter 11 Cases Of SunCal Marblehead, LLC and SunCal PSV, LLC," as amended and with

4    all accompanying exhibits.

5          2.1.45    Disputed Claim(s). All or any part of a Claim other than any Allowed

6    Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

7    with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

8    is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

9    (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

10    Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

11    for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

12    order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

13    Deadline, which Adversary Proceeding, objection, or request for estimation has not been

14    dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

15    "Disputed Claim" pursuant to the Plan.

16          2.1.46    Disputed Lien(s). An asserted lien(s) against Assets of the Debtor(s) that

17    is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

18    or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

19          2.1.47    Disputed Secured Claim(s). That part of a Disputed Claim that is a

20    Secured Claim.

21          2.1.48    Distribution(s). Payments to Holders of Allowed Claims provided for

22    under the Plan.

23          2.1.49    Distribution Agent. The entity that is responsible for making Distributions

24    under the Plan, which shall be Acquisitions.

25          2.1.50    Distribution Account(s). Separate account(s) to be established by the Plan

26    Trustee at an FDIC insured bank into which each Group I: Trustee Debtors' Available Cash shall

27    be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that

28

MAINDOCS #163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1   would have belonged to such Group I Debtor shall be deposited, other than Net Sales Proceeds that

2   are subject to Disputed Claims and Disputed Liens.

3         2.1.51   Distribution Date. With respect to any Allowed Claim or Allowed

4   Interest, the date on which a Distribution is required to be made under the Plan.

5         2.1.52   Effective Date. A date selected by the SunCal Plan Proponents that is not

6   later than the ninetieth (90th) calendar day after the Confirmation Date. However, in any case where

7   the actions provided for in the Plan would be delayed by the automatic stay applicable in the case

8   of any Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan

9   Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to

10  obtain relief from any such stay.

11        2.1.53   Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on

12  the Bond Claims with corresponding indemnity Claims against the Debtors.

13        2.1.54   Estates. The bankruptcy estates of the Group I: Trustee Debtors created

14  pursuant to Section 541 of the Bankruptcy Code.

15        2.1.55   Fee Applications. Applications of Professional Persons under Sections

16  330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

17  expenses in the Cases.

18        2.1.56   Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code

19  for allowance of compensation and reimbursement of expenses in the Cases.

20        2.1.57   Fenway Capital. Fenway Capital Funding LLC, a Lehman Successor to

21  Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

22  Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

23  (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

24  (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

25  Valley Loan Agreement. Such Disputed Claims and Disputed Liens were transferred back to LCPI

26  pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

27        2.1.58   Filed. Delivered to, received by and entered upon the legal docket by the

28  Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

2.1.59 <u>Final Order</u>. A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court.

2.1.60 <u>General Unsecured Claim</u>. A Claim against a Group I Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

2.1.61 <u>Group I: Trustee Debtors</u>. SunCal PSV, LLC and SunCal Marblehead, LLC.

2.1.62 <u>Group I Projects</u>. The Palm Springs Village Project and the Marblehead Project.

2.1.63 <u>Holder</u>. The beneficial owner of any Claim or Interest.

2.1.64 <u>Initial Overbid</u>. The Initial Overbid is the first Qualifying Bid after the Opening Bid that is equal to or in excess of the Initial Overbid Amount.

2.1.65 <u>Initial Overbid Amount</u>. In the case of the Marblehead Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Marblehead Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Palm Springs Village Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the PSV Break-up Fee and seventy-five thousand dollars ($75,000).

2.1.66 <u>Insider</u>. The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates.

2.1.67 <u>Interest</u>. Any equity security interest in any Group I Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Group I: Trustee Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.68 <u>LBHI</u>. Lehman Brothers Holdings, Inc., a Lehman Entity, the parent company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

2.1.69 <u>LCPI</u>. Lehman Commercial Paper, Inc., a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

1    2.1.70 Lehman Adversary Proceeding. The Debtors' pending adversary

2 proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

3 action including equitable subordination, fraudulent conveyances and preferential transfers.

4    2.1.71 Lehman ALI. Lehman ALI, Inc.

5    2.1.72 Lehman Disputed Administrative Loans. The post-petition financing

6 provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates,

7 SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century

8 City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all

9 borrower Debtors' assets, and for super-priority administrative status to Lehman ALI. The

10 Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the

11 Voluntary Debtors. The aggregate amount of the Lehman Administrative Loans to all of the

12 Trustee Debtors is approximately $40 million as of March 1, 2011 and continuing to increase. The

13 Lehman Administrative Loans are the subject of claim objections. Until these objections are

14 resolved, these Lehman Administrative Loans shall not be Allowed Claims.

15    2.1.73 Lehman Claim Objections. The objections filed by the Debtors to the

16 claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

17 Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

18 Objection and the Lehman 502(d) Objection.

19    2.1.74 Lehman Entities. The Lehman Lenders, the Lehman Equity Members and

20 LBHI.

21    2.1.75 Lehman Equity Members. Lehman Entities that own direct or indirect

22 membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

23 Marblehead.

24    2.1.76 Lehman Lenders. Lehman ALI, LCPI, Northlake Holdings, and OVC

25 Holdings.

26    2.1.77 Lehman Disputed Loans. Collectively the following loans that are the

27 purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement;

28 (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

(e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement; and (n) Pacific Point Second Loan Agreement.

2.1.78    Lehman Representatives.  The individuals that controlled the Lehman Entities.

2.1.79    Lehman Successor(s).  Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.80    Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

2.1.81    Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11 Cases arising from the Lehman Disputed Loans.

2.1.82    Lexon.  Lexon Insurance Co.

2.1.83    LitCo.  A newly formed Delaware limited liability company that will be purchasing the claims and litigation rights held by the Reliance Claimants that choose Option A provided for in the Plan.

2.1.84    LitCo Plan Loan.  A loan that will be made by LitCo, to the extent necessary to pay Administrative Claims, and post Confirmation Date costs incurred by the SunCal Proponents in connection with the sale process, and to pay post Effective Date costs incurred by the Plan Trust, including litigation expenses where applicable, if no other source is available to pay these obligations. LitCo will be capitalized with funds provided by a third party.

2.1.85    Litigation Claims.  Any and all interests of the Group I: Trustee Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights, or causes of action which have been or may be commenced by the Group I Debtor(s), the

-14-

1   Chapter 11 Trustee, or the Committee, as the case may be, including, but not limited to, any

2   (i) Avoidance Actions; (ii) for turnover of property to the Group I: Trustee Debtors' Estates and/or

3   the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the Debtors'

4   Estates or the Plan Trust; (iv) the right to compensation in the form of damages, recoupment or

5   setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary Proceeding; (vi) the

6   State Court Action, and (vii) any and all other Claims against Lehman's Disputed Claims and/or

7   Disputed Liens referenced in the Plan or the Disclosure Statement.

8            2.1.86    Litigation Recoveries.  Any Cash or other property received by the

9   Chapter 11 Trustee, the Group I: Trustee Debtors, the Committee and/or the Plan Trust, as the case

10  may be, from all or any portion of a Litigation Claim(s), including, but not limited to, awards of

11  damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way

12  of settlement, execution on judgment or otherwise.

13           2.1.87    Litigation Rights. Any Claims held by a party other than the Group I:

14  Trustee Debtors that have not been fixed in a final judgment prior to the Effective Date.

15           2.1.88    Marblehead Break-up Fee. The sum of three hundred and three million

16  seven hundred and fifty dollars ($3,750,000) that will be paid to the Stalking Horse Bidder that

17  submits the Opening Bid for the Marblehead Project, if such Stalking Horse Bidder is not the

18  Winning Bidder.

19           2.1.89    Marblehead Project.  The Project owned by SunCal Marblehead, located in

20  the City of San Clemente, California, as more particularly described herein.

21           2.1.90    Maximum Distributions.  A Distribution to a Holder of an Allowed

22  General Unsecured Claim against a Group I Debtor equal to one hundred percent (100%) of the

23  amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and

24  as of the Group I Debtor's Petition Date.

25           2.1.91    MB Firm.  Miller Barondess, LLP.

26           2.1.92    Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to

27  California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

28  allegedly satisfy the requirements of Bankruptcy Code 546(b).

MAINDOCS-#163409-v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

1          2.1.93  Minimum Increment.  Minimum Increment applicable to the sales of the

2  Group I Projects is one hundred thousand dollars ($100,000), until there are only two Qualified

3  Bidders submitting bids for a Group I Project, then the Minimum Increment shall be fifty thousand

4  dollars ($50,000).

5          2.1.94  Minimum Sale Price. The minimum gross sale price that must be paid for

6  either the Marblehead Project or the Palm Spring Village Project before such project can be sold

7  pursuant to the Plan. Such prices are $84,420,000 and $9,990,000, respectively.

8          2.1.95  Net Litigation Recoveries.  Litigation Recoveries less associated

9  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

10  Litigation Recoveries.

11          2.1.96  Net Sales Proceeds.  The Cash generated from the sale(s) or liquidation of

12  the Group I Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses, taxes,

13  Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative

14  Claims incurred in furtherance of such sales or liquidation of such Assets.

15          2.1.97  Net Sales Proceeds Account(s).  Separate account(s) that will be

16  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

17  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

18  and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

19  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

20  where there are two Disputed Liens on a single Project, in which case, there shall be a single

21  account for the proceeds generated from that Project. The Disputed Secured Claim(s) and/or

22  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

23  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

24  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

25  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

26  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

27  thereto shall become Available Cash and shall be transferred to the applicable Distribution

28  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1  allowed and deemed valid but subject to the equitable subordination causes of action in the

2  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

3  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

4          2.1.98   Opening Bid.  Opening Bid means the offer for one, or both of the Group I

5  Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for either one or

6  both of the Group I Projects.

7          2.1.99   Orders for Relief Date.  The following are dates that orders for relief were

8  entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

15         2.1.100  Palmdale Hills.  Palmdale Hills Property, a Delaware limited liability

16  company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

17         2.1.101  Palm Springs Village Project.  The Project owned by SunCal PSV, located

18  in the City of Palm Springs, California, as more particularly described herein.

19         2.1.102  PSV Break-up Fee.  The sum of four hundred and forty thousand dollars

20  ($440,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the

21  Palm Springs Village Project, if such Stalking Horse Bidder is not the Winning Bidder.

22         2.1.103  Person.  An individual, partnership, corporation, limited liability company,

23  business trust, joint stock company, trust, unincorporated association, joint venture, governmental

24  authority, governmental unit, committee or other entity of whatever nature.

25         2.1.104  Petition Dates.  The following are dates that each of the Voluntary Debtors

26  filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions

27  against the Trustee Debtors:

28
| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |

| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.105    Plan.  The Chapter 11 Plan together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.106    Plan Documents.  The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.107    Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.108    Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.109    Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.110    Plan Sponsor. The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

-18-

2.1.111    Plan Trust. A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.112    Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

2.1.113    Plan Trust Agreement. The liquidating trust agreement governing the affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

2.1.114    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Property in accordance with the terms of the Plan.

2.1.115    Plan Trust Property. Plan Trust Property means all property within the Chapter 11 estates of the Group I: Trustee Debtors, other than property that is affirmatively excluded by the Plan Trustee.

2.1.116    Post-Confirmation Expenses. The fees and expenses incurred by the Plan Sponsor, the Plan Trustee and the Committee and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Group I: Trustee Debtors' Chapter 11 Cases.

2.1.117    Priority Claim. Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.118    Pro Rata. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

1  amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

2  such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

3        2.1.119   Professional.  A Person or Entity (a) employed by the Group I: Trustee

4  Debtors, the Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the

5  Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant

6  to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation

7  and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

8  Bankruptcy Code.

9        2.1.120   Professional Fees.  All Allowed Claims for compensation and for

10 reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

11       2.1.121   Projects.  The Debtors' residential real estate development projects and

12 other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

13       2.1.122   Qualifying Bid.  Qualifying Bid means, with respect to any bid on a

14 Group I Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the Initial

15 Overbid Amount, if it is the Initial Overbid, or B) in excess of the immediately preceding

16 Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

17       2.1.123   Qualifying Bidder.  Qualifying Bidder means a bidder who a) has

18 deposited the sum of five hundred thousand dollars ($500,000) in an escrow designated by the

19 SunCal Proponents; b) agreed that the sum will be forfeited as liquidated damages if such bidder

20 fails to perform; and c) who has provided the SunCal Plan Proponents evidence confirming that

21 such bidder has the financial means to acquire the applicable Group I Project(s) that such bidder is

22 seeking to acquire.

23       2.1.124   Reliance Claim. An Allowed Unsecured Claim against a Group I Debtor

24 that would entitle the holder thereof to be the beneficiary of any equitable subordination judgment

25 obtained against a Lehman Entity by such Group I Debtor.

26       2.1.125   Reliance Claimant. The holder of a Reliance Claim. A list of the Reliance

27 Claims and Reliance Claimants is attached to the Disclosure Statement as Exhibit "8."

28

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

2.1.126    Sale Period. The Sale Period is the time period during which the SunCal Proponents must consummate a sale or liquidation of the Group I Projects. The Sales Period shall commence on the Confirmation Date and shall expire on the Effective Date.

2.1.127    SCC LLC. SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.128    Schedules. The schedules of assets and liabilities and list of equity security holders Filed by the Group I: Trustee Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.129    Stalking Horse Bidder. The Qualified Bidder who submits the Opening Bid..

2.1.130    Secured Claim. Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and unavoidable Lien on the Group I Debtor(s)' Assets.

2.1.131    State Court Action. The action filed by certain Voluntary Debtors against Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan Trustee and/or the Trustee Debtors as additional plaintiffs therein.

2.1.132    SunCal. The SunCal Companies, a trade name for Acquisitions and its Affiliates.

2.1.133    SunCal Bickford. SunCal Bickford Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Bickford Ranch Project.

2.1.134    SunCal Management. SunCal Management, LLC, a Delaware limited liability company, and the property manager for the Projects.

2.1.135    SunCal Marblehead. SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor (a Group I Debtor), and the owner of the Marblehead Project.

2.1.136    SunCal Marblehead/SunCal Heartland Loan Agreement. That certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

1   as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

2   Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

3   pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of

4   approximately $316,061,300. The SunCal Marblehead/SunCal Heartland Loan Agreement is

5   allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

6   The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

7   $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to the loan

8   agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

9           2.1.137    SunCal Plan Proponent(s). The Voluntary Debtors and Acquisitions as

10  the parties-in-interest that are proposing the Plan.

11          2.1.138    SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company, a

12  Trustee Debtor (a Group 1 Debtor), and the owner of the Palm Springs Village Project.

13          2.1.139    SunCal PSV Loan Agreement. That certain Term Loan and Revolving

14  Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower,

15  and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the

16  maximum aggregate principal amount of approximately $90 million. The SunCal PSV Loan

17  Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project.

18  The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30,

19  2009.

20          2.1.140    Tax. Any tax, charge, fee, levy, impost or other assessment by any

21  federal, state, local or foreign taxing authority, including, without limitation, income, excise,

22  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

23  estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

24  additions attributable to, or imposed on or with respect to such assessments.

25          2.1.141    Tax Claim. Any Claim for any Tax to the extent that it is entitled to

26  priority in payment under Section 507(a)(8) of the Bankruptcy Code.

27          2.1.142    Trustee Debtor(s). The following Debtors, individually or collectively,

28  that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1    Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

2    Torrance, and SunCal Oak Knoll.

3            2.1.143    Trustee Debtors' Committee.  The Official Committee of Unsecured

4    Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

5    Bankruptcy Code.

6            2.1.144    Unpaid Secured Real Property Tax Claims.  Secured Claims held by

7    various government entities secured by liens on the underlying real properties owned by the

8    Debtors but that are non-recourse to the Debtors.

9            2.1.145    Unsecured Claim. An Unsecured Claim is any Claim that is not an

10    Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

11            2.1.146    Voluntary Debtor(s).  The following  Chapter 11 debtors and debtors-in-

12    possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

13    Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

14    Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

15    Rio and Tesoro.

16            2.1.147    Voluntary Debtors' Committee.  The Official Committee of Unsecured

17    Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

18    Bankruptcy Code.

19            2.1.148    Winning Bid. The highest Qualifying Bid received for the Marblehead

20    Project or the Palm Springs Village Project.

21            2.1.149    Winning Bidder.  The party that submits the highest Qualifying Bid.

22    **2.2**    **Rules of Construction.**

23         For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

24    in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

25    singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

26    masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

27    Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

28    such document or schedule, as it may have been or may be amended, modified or supplemented

-23-

1  pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

2  entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

3  or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

4  and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

5  in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

6  the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

7  contract, instrument, release, indenture, agreement, or other document being in a particular form or

8  on particular terms and conditions means that such document shall be substantially and materially

9  in such form or substantially and materially on such terms and conditions; (h) any reference in the

10  Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

11  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

12  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

13  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

14  express terms of the Plan or the Disclosure Statement or any other provision in the Section 2.2

15      **2.3**   **Exhibits.**

16      All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

17  therein.

18                                             **III.**

19                   **TREATMENT OF UNCLASSIFIED CLAIMS**

20      **3.1**   **Introduction**. As required by the Bankruptcy Code, the Plan places Claims and

21  Interests into various Classes according to their right to priority. However, certain types of Claims

22  are not classified in any Classes under the Plan. These Claims are deemed "unclassified" under the

23  provisions of the Code. They are not considered impaired and they do not vote on the Plan,

24  because they are automatically entitled to specific treatment provided for them in the Code. As

25  such, the SunCal Plan Proponents have not placed the following Claims in a Class. The treatment

26  of these unclassified Claims is as provided below.

27

28

MAINDOCS #163409-v1-SCC_Plan_Group_J_Trustee_Debtors.DOC

**3.2    Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the later of Effective Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different treatment. The treatment of Allowed Administrative Claims is as described below. However, such Administrative Claims are continuing to be incurred. The Allowed Administrative Claims shall be paid from the applicable Distribution Account(s) pursuant to the Acquisitions Administrative Loan.

**3.3    Treatment and Repayment of the Lehman's Administrative Loan(s).**

The Lehman Disputed Administrative Loans shall be paid in full on the later of the Effective Date, or the date any objections to the same are overruled by the Court leaving them Allowed claims. Prior to payment, or until disallowed, these claims shall continue to be secured by their existing liens against the respective Assets of the Trustee Debtors.

The Lehman Disputed Administrative Loans shall be paid in full, on the date referenced above, from either 1) funds loaned to the Plan Trust by LitCo or another designated third, or 2) from the funds in the applicable Net Sale Proceeds Account.

**3.4    Repayment of Allowed Administrative Claims Other than the Lehman Administrative Loans.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the Debtors in Possession (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

### 3.5    **Administrative Claims Bar Date**.

All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred; any party that seeks payment of Administrative Claims that (i) is required to file a request for payment of such Administrative Claims and (ii) does not file such a request by the deadline established herein shall be forever barred from asserting such Administrative Claims against the Debtors, the Plan Trust, their estates, or any of their property.

### 3.6    **Treatment of Unsecured Tax Claims**.

Tax Claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim receive the present value of such Claim in deferred cash payments, over a period not exceeding five (5) years from the petition date and that such treatment not be less favorable than the treatment accorded to non priority unsecured creditors.

At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be entitled to receive. on account of such Claim, (i) equal cash payments on the last Business Day of each three-month period following the Effective Date, during a period not to exceed five years after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1   the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

2   favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

3   forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Code, the Plan places Claims and Interests into various Classes
according to their right to priority and other relative rights. The Plan specifies whether each Class
of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class
will receive. The table below lists the Classes of Claims established under the Plan and states
whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired"
if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of
Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy
Code.

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[3]** |
| **Class 1.1** | Orange County as the Holder of an Unpaid Secured Real Property Tax Claim against the Marblehead Project in the amount of $2,500,646. | SunCal Marblehead 49 and 57 |
| **Class 1.2** | San Bernardino County as the Holder of an Unpaid Secured Real Property Tax Claim against the Palm Springs Village Project in the amount of $1,725,166. | SunCal PSV 22 |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.1** | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against SunCal Marblehead and SunCal Heartland, which claim is based upon funds allegedly advanced pursuant to the SunCal Marblehead/SunCal Heartland Loan Agreement. | SunCal Marblehead: 21 |

[3] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.2** | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against the Palm Springs Village Project, which claim is based upon funds allegedly advanced pursuant to the SunCal PSV Loan Agreement in the asserted amount of $88,257,340. | SunCal PSV 12 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE MARBLEHEAD PROJECT AND THE PALM SPRINGS VILLAGE PROJECT | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.1** | The Holder of the asserted Mechanic Lien Claim held by The Jasper Companies against the Marblehead Project in the amount of $146,657. | SunCal Marblehead 29 |
| **Class 3.2** | The Holder of the asserted Mechanic Lien Claim held by Kirk Negrete, Inc. dba United Steel Placers against the Marblehead Project in the amount of $270,056. | SunCal Marblehead 38 |
| **Class 3.3** | The Holder of the asserted Mechanic Lien Claim held by RBF Consulting against the Marblehead Project in the amount of $125,093. | SunCal Marblehead 39 |
| **Class 3.4** | The Holder of the asserted Mechanic Lien Claim held by RJ Noble Co. against the Marblehead Project in the amount of $175,030. | SunCal Marblehead 42, 50 and 58 |
| **Class 3.5** | The Holder of the asserted Mechanic Lien Claim held by Orange County Stripping Services against the Marblehead Project in the amount of $11,752. | SunCal Marblehead 46 and 54 |
| **Class 3.6** | The Holder of the asserted Mechanic Lien Claim held by Savala Equipment Co. Inc. against the Marblehead Project in the amount of $34,440. | SunCal Marblehead 48 and 56 |
| **Class 3.7** | The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Marblehead Project in the amount of $1,344,445. | SunCal Marblehead 63 |
| **Class 3.8** | The Holder of the asserted Mechanic Lien Claim held by Rockey Murata Landscaping against the Marblehead Project in the amount of $285,643. | SunCal Marblehead 60 |

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE MARBLEHEAD PROJECT AND THE PALM SPRINGS VILLAGE PROJECT | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.9** | The Holder of the asserted Mechanic Lien Claim held by BNB Engineering, Inc. against the Marblehead Project in the amount of $1,608,723. | SunCal Marblehead 37 |
| **Class 3.10** | The Holder of the asserted Mechanic Lien Claim held by Brudvik Inc. against the Palm Springs Village Project in the amount of $43,365. | SunCal PSV 4 |
| **Class 3.11** | The Holder of the asserted Mechanic Lien Claim held by Larry Jacinto Construction Inc. against the Palm Springs Village Project in the amount of $212,663. | SunCal PSV 5 and 24 |
| **Class 3.12** | The Holder of the asserted Mechanic Lien Claim held by William + Paddon Architects + Planners Inc. against the Palm Springs Village Project in the amount of $73,798. | SunCal PSV 9 and 10 |
| **Class 3.13** | The Holder of the asserted Mechanic Lien Claim held by Southern California Edison against the Palm Springs Village Project in the amount of $23,861. | SunCal PSV 26 |
| **Class 3.14** | The Holder of the asserted Mechanic Lien Claim held by Pacific Masonry Walls, Inc. against the Palm Springs Village Project in the amount of $314,061. | SunCal PSV 33 and 39 |
| **Class 3.15** | The Holder of the asserted Mechanic Lien Claim held by J.R. Simplot Company against the Palm Springs Village Project in the amount of $3,467. | SunCal PSV 34 and 40 |
| **Class 3.16** | The Holder of the asserted Mechanic Lien Claim held by Desert Pipeline Inc. against the Palm Springs Village Project in the amount of $469,784. | SunCal PSV 36, 42 and 47 |
| **Class 3.17** | The Holder of the asserted Mechanic Lien Claim held by MSA Consulting against the Palm Springs Village Project in the amount of $666,897. | SunCal PSV 43 |
| **Class 3.18** | The Holder of the asserted Mechanic Lien Claim held by Jackson DeMarco against the Palm Springs Village Project in the amount of $52,234. | SunCal PSV 45 |

MAINDOCS-#163409-v1 SCC_Plan_Group_1_Trustee_Debtors.DOC

| CLASSIFICATION OF BOND INDEMNIFICATION CLAIMS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Bond Claims arising from bonds issued with respect to the Group I Projects | |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| **Class 5.1** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $10,950 against SunCal Marblehead. | Scheduled Amount and SunCal Marblehead 45 |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.1** | The holders of Reliance Claims against SunCal Marblehead. | Various Filed and Scheduled |
| **Class 6. 2** | The holders of Reliance Claims against SunCal PSV. | Various Filed and Scheduled |

---

[4] Unsecured Claims are generally placed within the same class and they receive the same treatment under a Plan. However, the SunCal Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1 and 6.2, and 7.1 and 7.2. The separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1 and 6.2, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The Unsecured Creditors in Classes 7.1 and 7.2 do not hold Reliance Claims. Under the Plan, the Reliance Claimants who sell their Reliance Claimants to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of $.55 cents on their Allowed Unsecured Claims *from non-estate funds. Accordingly, the $.55 cent payment is being paid from non-estate funds, for a non-estate asset.* If a Reliance Claimant elects not to sell the claim, then the claimant will receive the exact same distribution rights that the Class 7.1 and 7.2 claimants will receive under the Plan, unless the Court allocates a part of any judgment granted in the Lehman Adversary Proceeding to these particular claims. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS[5] | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.1** | Claimants holding Allowed Unsecured Claims against SunCal Marblehead that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.2** | Claimants holding Allowed Unsecured Claims against SunCal PSV that are not Reliance Claims | Various Filed and Scheduled |

| **Class 8** | **Claimant** | **Scheduled** |
|---|---|---|
| **Class 8.1** | Allowed Interests in SunCal Marblehead held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| **Class 8.2** | Allowed Interests in SunCal PSV, LLC held by Lehman SunCal Real Estate Fund LLC | Scheduled Amount |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

5.1    **The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims secured by Group I Projects (Classes 1.1 and 1.2).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 and 1.2 are not impaired under the Plan. Such claimants shall retain their existing lien rights and one of the following two non-impairment options shall apply, at the election of the Plan Trustee: 1) On the Effective Date, such claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2), or 2) on the Effective Date, or the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law.

5.2    **The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) (Classes 2.1 and 2.2).**

The Holder(s) of Disputed Secured Claims within Class 2.1 and Class 2.2 shall receive the indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), through the following treatment:

---

[5] This Class includes, but it is not limited to, Bond Claims that are not Allowed Secured Claims within Class 4.1.

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

A.    Lien Rights. The Class 2.1 and Class 2.2 Holder(s) shall retain their interest in the Disputed Lien(s) against Plan Trust Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the Allowance of such Disputed Secured Claims and determining the validity, priority and extent of the applicable Disputed Liens against the applicable Plan Trust Assets, which secure these claims, except as follows:

1.    The Plan Trust Assets subject to the Class 2.1 and 2.1 Disputed Liens may be sold free and clear of such liens on the Effective Date. These Disputed Liens shall then attach to the Net Proceeds from the sale, which shall be deposited into the Net Proceeds Account;

2.    To the extent that a Disputed Secured Claim held by either the Class 2.1 or 2.2 Claimants against either Group I Project is disallowed, and the Disputed Lien associated with the Disputed Secured Claim is consequently released to the extent of the disallowance, the Plan Trustee shall be authorized to use the Net Proceeds that are no longer subject to the Disputed Lien(s) to pay other Allowed Claims in their order of priority, in accordance with the terms of the Plan;

3.    To the extent that a Disputed Secured Claim held by either the Class 2.1 or 2.2 Claimant and the associated Disputed Lien(s) against either Group I Project are subordinated, the Plan Trustee shall be authorized to use the Net Proceeds that are no longer subject to the Disputed Lien(s) , or where the priority of the Disputed Liens has been subordinated by the Court, to pay other Allowed Claims in their order of priority, in accordance with the terms of the Plan, to the extent of the subordination; and

Notwithstanding the existence of the Disputed Secured Claims and the Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Proceeds Account subject to these claims and liens to pay the claims of other creditors in accordance with the terms of the Plan, if the Class 2.1 and 2.2 claimants' interests in the property will remain adequately protected after the release.

B.    Sale of Group I Projects. The Plan Trustee shall complete the sale of Group I Projects on the Effective Date that are subject to the Holder(s)' Disputed Secured Claims and

-32-

Disputed Liens, free and clear of such claims and liens, through a sale that satisfies the following conditions:

      1.    The Group I Projects will be sold through a public auction after a commercially reasonable marketing and advertising effort of at least sixty (60) days duration;

      2.    The SunCal Plan Proponents shall have the right to provisionally accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant the bidder either the Marblehead Break-Up Fee or the PSV Break-up Fee as the case may be;

      3.    Other Qualified Bidders shall have the right to overbid the Opening Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be equal to or in excess or the Minimum Increment;

      4.    The highest Qualifying Bid received from a Qualified Bidder, shall be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon payment of the Winning Bid, the Winning Bidder shall receive title to the applicable Group I Project free and clear of all monetary liens and encumbrances; and

      5.    No bidder shall be allowed to submit or demand the acceptance of a "credit bid" based upon an existing claim or lien.

      C.    <u>Abandonment of Unsold Group I Project(s)</u>. If for any reason the Plan Trustee is unable to sell either or both Group I Projects on the Effective Date, they will be abandoned as of 11:59 p.m. on the Effective Date, and the Class 2.1 and 2.2 claimants shall be free to exercise any and all remedies that they may hold with respect to these Assets.

      D.    <u>Sale of Other Plan Trust Assets Subject To Liens of Class 2.1 and 2.2 Claimants</u>. The Plan Trustee shall complete the sale of all other Plan Trust Assets that are subject to the Disputed Secured Claims and the Disputed Liens of the Class 2.1 and Class 2.2 claimants Liens and Disputed Claims, free and clear of such claims and liens, through a sale that satisfies the following conditions:

      1.    Such Assets will be sold through a public auction after a commercially reasonable marketing and advertising effort of at least thirty (30) days duration;

1                  2.     The Committee shall approve the terms of the sale;

2                  3.     The sale will be held and completed within ninety (90) days of the

3  Effective Date;

4                  4.     No bidder may submit or demand the acceptance of a "credit bid"

5  based upon an existing claim or lien; and

6                  5.     All Net Sale Proceeds generated from such sales shall be deposited

7  into the applicable Net Sales Proceeds Account with all Disputed Claims and Disputed Liens

8  attached thereto.

9          E.     Abandonment of Assets Other Than Group I Projects. All Asset(s), other

10  than the Litigation Claims (which shall be retained), that are not sold within ninety (90) days of the

11  Effective Date shall be deemed abandoned by the Plan Trust as of the ninety-first (91st) day after

12  the Effective Date, no payment shall be made to such Holder(s), and such Holder(s) shall be

13  allowed to pursue their respective rights and remedies against such assets under applicable law

14  subject to a Final Order determining the allowance and priority of the Disputed Claims and the

15  validity of the Disputed Liens in, including but not limited to, the Lehman Adversary Proceeding

16  and the Lehman Claims Objections.

17          F.     Distributions To The Class 2.1 and Class 2.2 Claimants. If the Plan Trustee

18  consummates a sale or otherwise liquidates the particular Asset(s) subject to the Class 2.1 and 2.2

19  Disputed Secured Claim(s) and/or Disputed Lien(s) during the Sales Period, as provided for above,

20  the Holder(s) of such Disputed Secured Claim shall receive a distribution to the extent of available

21  funds from the applicable Net Sale Proceeds Account(s) to the extent required by a Final Order

22  determining the allowance and priority of the Disputed Secured Claims and the validity, priority

23  and extent of the Disputed Liens in, including but not limited to, the Lehman Adversary

24  Proceeding and the Lehman Claims Objections.

25

26

27

28

MAINDOCS #163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1    **5.3    The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against**

2    **the Group I Projects Subject to Lehman's Disputed Claims (Classes 3.1**

3    **Through 3.18).**

4    The treatment of the Holders of Allowed Classes 3.1 through 3.18 Secured Claims under

5    the Plan shall be as follows:

6    A.    The Holder(s)' rights are impaired under the Plan;

7    B.    The Holder(s) shall retain their respective underlying liens on the applicable

8    Group I Project(s), but shall forebear from pursuing their rights and remedies until the expiration

9    of the Sales Period;

10    C.    If the Plan Trustee is able to consummate a sale of the Group I Projects

11    subject to the liens asserted by the Holders of Class 3.1 through 3.18 claims during the Sales

12    Period, such Holders shall receive a distribution, to the extent of available, of Net Sale Proceeds in

13    accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s)

14    resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity

15    of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

16    Proceeding; and

17    D.    If the Plan Trustee is unable to consummate a sale of the applicable Group I

18    Project(s) during the Sales Period, such projects shall be deemed abandoned by the Plan Trustee,

19    no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to pursue their

20    respective rights against these project(s) under applicable California law.

21    **5.4    The Plan's Treatment of Holders of Bond Indemnification Claims (Class 4.1).**

22    The rights of each holder of an Allowed Bond Indemnification Claim arising from a bond

23    issued with respect to a Group I Project, shall, to the extent such claim(s) are determined to be a

24    secured claim(s), be impaired under the Plan. Such claims shall receive the following treatment:

25    E.    Each such Allowed Secured Claim shall be placed in a separate class and

26    receive a separate ballot for voting purpose

27

28

-35-

F.    Each Holder(s) shall retain their respective underlying liens on the applicable Group I Project(s), but shall forebear from pursuing their rights and remedies until the expiration of the Sales Period;

G.    If the Plan Trustee is able to consummate a sale of the Group I Projects subject to the liens asserted by the Holders of Class 4.1 claimants during the Sales Period, such Holders shall receive a distribution, to the extent available, Net Sale Proceeds in accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary Proceeding and; and

H.    If the Plan Trustee is unable to consummate a sale of the applicable Group I Project(s) during the Sales Period, such projects shall be deemed abandoned by the Plan Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to pursue their respective rights against these project(s) under applicable California law.

**5.5    The Plan's Treatment of Holders of Priority Claims (Class 5.1).**

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

A.    The Holder(s) are unimpaired under the Plan; and

B.    The Holder(s) shall be paid from either the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.6    The Plan's Treatment of Holders of General Unsecured Claims that are Reliance Claims (Classes 6.1 and 6.2).**

The rights of Holders of Allowed Class 6.1 and 6.2 Claims are impaired under the Plan. They have the right to choose between the following treatment options:

1  A. Option A: A claimant in these classes *who votes in favor of the Plan*, and

2  who chooses Option A, will have the right to sell to LitCo all of the claimant's right, title and

3  interest in all Allowed Reliance Claims and all of the claimant's Litigation Rights against the

4  applicable Debtor, SunCal Affiliates, and the Lehman Entities, for the sum of fifty five cents

5  ($0.55) per dollar of allowed claim, payable in cash on the Effective Date, provided there is no stay

6  pending an appeal of the Confirmation Order, in full satisfaction of such claimant's Allowed

7  Reliance Claims; or

8  B. Option B: A claimant in these classes who votes against the Plan, or who

9  votes in favor of the Plan, but does not choose Option A, or who does not vote on the Plan, will 1)

10 receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such

11 claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the

12 Lehman Entities and its right to receive such claimant's share, as determined by the Court, in the

13 benefits and recoveries resulting from a judgment or order entered in the Lehman Adversary

14 Proceeding, the State Court Action, or the Lehman Claims Objections, and 3) right to receive a

15 pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in

16 full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority

17 Claims.

18  **5.7  The Plan's Treatment of Holders of Allowed General Unsecured Claims that**

19  **Are Not Reliance Claims (Classes 7.1 and 7.2).**

20  The rights of Holders of Allowed Class 7.1 and 7.2 Claims are impaired under the Plan.

21 Under the Plan, each claimant will 1) receive a minimum distribution in cash, on the Effective

22 Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-rata share

23 of any funds payable from the applicable Distribution Account(s), after payment in full of all Post

24 Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims and any

25 sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class 6.1 and

26 6.2 Claims from either the Claim Reduction Amounts or on account of a judgment in the Lehman

27 Adversary Proceeding.

28

**5.8    The Plan's Treatment of Holders of Allowed Interests.**

The Interests of the Holders in Class 8.1 and 8.2 are impaired under the Plan. All such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these Holders on account of such Interest(s).

## VI.

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1    Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors cannot represent that the discussion contained below is a complete summary of the law on the topic.

Many requirements must be met before the Court can confirm the Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. The requirements described herein are not the only requirements for confirmation.

**6.2    Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**6.3    Who May Vote to Accept/Reject the Plan.**

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class. The votes will be tabulated on a Debtor by Debtor basis.

MAINDOCS-#163409-v1-SCC_Plan_Group_J_Trustee_Debtors.DOC

### 6.4    What Is an Allowed Claim/Interest.

As noted above, a Holder of a Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

### 6.5    What Is an Impaired Class.

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In the case, the Debtors believe that all Classes, except for Class 5.1 are impaired.

### 6.6    Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except Class 5.1. These classes are not impaired under the Plan and consequently are not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Classes 8.1 and 8.2 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 6.7    Who Can Vote in More than One Class.

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim. Also, a Creditor may

1   otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

2   Subordinated Note Claims), and may vote the Claims held in each Class.

3       **6.8    Votes Necessary for a Class to Accept the Plan.**

4       A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

5   number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

6   accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least

7   two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

8   the Plan.

9       **6.9    Treatment of Nonaccepting Classes.**

10      As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

11  Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

12  required by the Code and at least one impaired Class of Claims accepts the Plan. The process by

13  which a plan may be confirmed and become binding on non-accepting Classes is commonly

14  referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on

15  nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

16  requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

17  equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

18  11 U.S.C. § 1129(b) and applicable case law.

19      **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

20      The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

21  impaired Class if such Class does not vote to accept the Plan.

22                                            **VII.**

23              **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

24      **7.1    Introduction.**

25      The section is intended to address how the SunCal Plan Proponents intend to implement the

26  provisions of the Plan. It addresses the transfer of the Plan Trust Property to the Plan Trust, the

27  nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

28

MAINDOCS #163409-v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

1  resolution of disputed claims, the sources of funds that will be used to pay claims and the

2  mechanics of how claims will be paid.

3      **7.2**    **Sale Process After Confirmation Date But Prior To Effective Date**.

4      The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

5  the highest dividend possible by selling the estates' primary assets, the Group I Projects, to the

6  highest bidder. The process of marketing the Group I Projects for sale will begin, pursuant to the

7  Confirmation Order, immediately after the entry of the order. Although the Chapter 11 Trustee will

8  not be formally removed under the Plan until the Effective Date, he will be required to work with

9  the SunCal Proponents after the Confirmation Date to promote and facilitate the sale of the Group I

10  Projects in accordance with the Plan terms.

11      The SunCal Proponents will pursue the following sale procedures after the Confirmation

12  Date:

13      A.    Implementation of a marketing program. Once the Plan is confirmed, the

14  SunCal Proponents will market the Group I Projects for sale through a comprehensive sale effort

15  during the Sale Period. The sale effort will include 1) sending sale packages describing each Group

16  I Project to the real estate brokerage community; b) advertising the Group I Projects for sale on a

17  website that includes links allowing direct access to all relevant information regarding the Group I

18  Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may

19  have interest in these kinds of assets.

20      B.    Identifying a Stalking Horse Bidder. During the Sale Period, the SunCal

21  Parties will accept, on a provisional basis, an Opening Bid for one or both of the Group I Projects.

22  The bidder whose Opening Bid is accepted will become the "Stalking Horse Bidder." The Opening

23  Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group I Project:

24  $84,420,000 for the Marblehead Project and $9,990,000 for the Palm Spring Village Project.

25      C.    The Sale Contract. The sale contract that will be entered into with the

26  Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

27      1.    Overbid Provisions. The contract will allow the SunCal Proponents

28  to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the

Stalking Horse Bid by the Initial Overbid Amount applicable to each Group I Project. In the case of the Marblehead Project, the Initial Overbid Amount is a sum that is not less than $84,420,000, plus the Marblehead Break-up Fee, plus one hundred thousand dollars ($100,000). In the case of the Palm Springs Village Project, the Initial Overbid Amount is $9,990,000, plus the PSV Break-up Fee, plus seventy-five thousand dollars ($75,000).

2.    A Break-Up Fee. The sale contract will include a "break-up fee" provision. The fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and another Qualified Bidder purchases the Group I Project(s) that is the subject of the Opening Bid.

3.    Sale Free And Clear of Liens. The sale contract will provide that the Group I Project(s) are being sold free and clear of all monetary liens and encumbrances and that no party holding a lien against the projects, including the Lehman Lenders, may submit a "credit bid" based upon the amount allegedly owing on the claims secured by the project being sold.

D.    The Auction. Thirty (30) days prior to the Effective Date, the SunCal Proponents will conduct an auction wherein all Qualified Bidders who have submitted Qualified Bids for the Group I Projects will have the opportunity to increase their bids for these Projects. The Qualified Bidder that submits the highest bid for the Project will then be designated the Winning Bidder. The Winning Bidder will then have thirty (30) days to close the purchase transaction by paying the Winning Bid amount. Once the Winning Bidder advises the SunCal Plan Proponents that they are ready to close, the sequence of events described in paragraphs 10.3 through 10.5 shall be implemented.

The entire process of marketing and selling the Group I Projects will be overseen by an independent real estate professional with experience managing sales of the kind. The professional will participate in every material aspect of the sale effort, and he or she shall have the right to file an objection to the sale effort with the Court if the process is not proceeding in a fair and effective manner.

**7.3.    Removal of Chapter 11 Trustee**.

As of the Effective Date, the appointment of the Chapter 11 Trustee in the SunCal Marblehead, LLC and SunCal PSV, LLC shall terminate, and possession and control over all

property within these estates shall pass to the Plan Trust.

**7.4.    Transfer of Property To The Plan Trust.**

On the Effective Date, title to and possession of all property of the Group I: Trustee Debtors, excepting those items of property that the Plan Trustee affirmatively elects not to transfer to the Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or action under any applicable agreement, law, regulation, order or rule of law.

**7.5.    Closing of Group I Project Sales.** On the Effective Date, the Group I Project(s) shall be sold free and clear of liens to the Winning Bidder, at the Winning Bid.

**7.6.    Purposes of The Plan Trust.**

The Plan Trust's purposes, powers and objectives include, but are not limited to the following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust Property for the highest return reasonably obtainable; (ii) to pursue all Litigation Claims through collection efforts, including through litigation in any court of competent jurisdiction, and to obtain the most favorable recovery on the same, with due consideration of all relevant factors, including cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy Court; (iv) to take such other actions as are necessary or useful to maximize the value of all property received by the Plan Trust; (v) to make the payments and distributions to creditors and holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the terms of the Plan, including but not limited to selling the Group I Projects and the Assets. A more complete statement of the Plan Trust's powers and limitations is set forth in the Plan Trust Agreement, which is a part of the Plan Supplement.

It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a "liquidating trust," with the primary objective of liquidating the Plan Trust Property and distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding

-43-

1  anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on

2  behalf of the Plan Trust shall be consistent with such primary objective.

3      **7.7.    Trust Agreement**.

4      Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan

5  Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the

6  initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the

7  authorities and powers of the Plan Trustee, consistent with the Plan.

8      **7.8.    Operations of the Plan Trust**.

9      From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan

10 Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the

11 Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of

12 the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than

13 restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Trust Agreement,

14 provided that the Plan Trust is administered so that it qualifies as a liquidating trust under Treasury

15 Regulation § 301.7701-4(d).

16     **7.9.    The Plan Trustee**.

17     Acquisitions shall be Trustee of the Plan Trust. Acquisitions is the direct or indirect parent

18 of all of Debtors.

19     **7.10.   Payment of Trust Expenses.**

20     The expenses incurred by the Plan Trust during the Plan Period, which shall include the

21 compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

22 the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

23     **7.11.   Plan Distribution System**.

24     The Plan Trustee shall establish a separate "Distribution Account" for each Group I Debtor

25 at an FDIC insured bank. Each Group I Debtor's Available Cash, whether on hand as of the

26 Effective Date or received thereafter, shall be deposited into that Group I Debtor's Distribution

27 Account. The only exception to the provision shall be in the case of Net Sales Proceeds that are

28 subject to disputed liens. Such proceeds shall remain in the applicable Net Proceeds Accounts

-44-

1  established to receive the proceeds from the sale of a particular property. Once all disputes

2  regarding entitlement to the funds in the Net Proceeds Accounts have been resolved, the proceeds

3  remaining (after the payment of the Allowed Claims secured by liens on these proceeds) shall be

4  transferred to the Distribution Account. These funds will then be used to pay the claims of

5  Creditors holding Allowed Claims in their order of priority as provided for in the Plan.

6       **7.12.  Claims Estimation Rights**.

7       On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a

8  motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

9  motion the estimation, for distribution purposes, of any Disputed Claim seeking recourse to, or

10  claiming an interest in, any asset of the Group I: Trustee Debtors. After the Bankruptcy Court

11  estimates a Disputed Claimant's rights in, or against an asset of the Estates through the procedure,

12  the Committee shall have the right to use any funds or assets not deemed subject to the rights of the

13  Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

14  Administrative Claims, after the Effective Date.

15       **7.13.  No Payment of Transfer-Related Fees to the United States Trustee**.

16       The Plan Trust shall not be required to pay any fees to the United States Trustee based on

17  any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

18       **7.14.  No Payment of Transfer-Related Fees to the Trustee**.

19       The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of

20  Plan Trust Property from the Trustee Debtors to the Plan Trust, or from the Plan Trust.

21       **7.15.  Books and Records of Trust**.

22       The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent,

23  the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

24  Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

25  for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

26  that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

27  the Plan Trusts books and records at such time as Plan Trust has no further need for such books

28

1  and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

2  upon written request by the Committee.

3      **7.16.   Limitations on Liability**.

4      The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating

5  trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan

6  Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising

7  out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless

8  such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

9      The Plan Trustee, and its officers, directors, agents and employees shall not be liable for

10  any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust,

11  including, without limitation, indebtedness, liabilities or obligations under agreements,

12  undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee

13  or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all

14  such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole

15  responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall,

16  under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may

17  be asserted against the Plan Trustee, or any member of the New Board on account of any

18  indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or

19  equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.

20      Any undertaking, contract or agreement entered into in writing by the Plan may, except as

21  otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal

22  liability of Plan Trustee.

23      **7.17.   Federal Income Tax Treatment of the Holders of Plan Trust Beneficial**

24  **Interests**.

25      For all United States federal income tax purposes, the transfers by the Group II Debtors

26  shall be treated by the Group II Debtors, their estates, the Plan Trust and the Plan Trust

27  Beneficiaries as a transfer of the Plan Trust Property by the Group II Debtors to the Plan Trust

28  Beneficiaries followed by a transfer of the Plan Trust Property by such the Plan Trust Beneficiaries

-46-

1    to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed owners of the

2    Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and the Plan

3    Trust Beneficiaries are required to value their interests in the Plan Trust Property consistently with

4    the values placed upon the Plan Trust Property by the Plan Trust, and to use such valuations for all

5    purposes. The Plan Trust Agreement shall provide for consistent valuations of the Plan Trust

6    Property by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that the Plan

7    Trust will determine the fair market value of the Plan Trust Property within thirty (30) days after

8    the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its

9    acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively

10   deemed to agree to use such valuations for all purposes, including, without limitation, in

11   computing any gain recognized upon the exchange of such holder's claim for purposes of

12   determining any United States Federal income tax, and shall be required to include those items of

13   income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

14   its taxable income.

15       **7.18.   Termination of the Trust.**

16       The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

17   Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

18   the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

19   Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

20   with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

21   party have been concluded by dismissal or an order issued by the court in which such litigation is

22   pending and such order has become "final" (consistent with the definition of Final Order in the

23   Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

24   the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

25   request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

26   period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

27   of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

28

MAINDOCS #163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1  consider and rule on the request within six (6) months prior to the expiration of the initial five-year

2  term.

3      **7.19.  Exemption from Certain Transfer Taxes.**

4      In accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer or

5  exchange of a security or the making or delivery of an instrument of transfer under the Plan may

6  not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

7  agents shall forego the assessment and collection of any such tax or governmental assessment and

8  shall accept for filing and recordation any of the foregoing instruments or other documents without

9  payment of such tax or other governmental assessment.

10      **7.20.  Tax Consequence of The Plan.**

11      The implementation of the Plan may have federal, state and local tax consequences to the

12  Group II Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will be

13  obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not

14  constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the

15  summary contained herein is provided for informational purposes only.

16      CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

17  OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

18  DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

19  FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

20      **7.21.  The Plan Sponsor.**

21      The Plan Sponsor shall be Acquisitions.

22      **7.22.  Acquisitions' Obligations**

23      As part of its obligations as the Plan Sponsor, Acquisitions will manage the affairs of the

24  Plan Trust and manage the payment of the following amounts required under the Plan:

25          A.    All Allowed Administrative Claims;

26          B.    Allowed Priority Claims; and

27          C.    Continuing Professional fees for the prosecution of the Litigation Claims

28            and other post-confirmation expenses

-48-

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1      The actual source of the funding for these obligations will either be funds obtained from the

2  Net Sales Proceeds, or from the LitCo Plan Loan. In exchange for the above referenced services,

3  Acquisitions, and all of its Affiliates shall receive a complete release from all of the Debtors, the

4  Estates, and the Plan Trust of any potential Litigation Claims. The Group I: Trustee Debtors

5  consider the a fair exchange, because they do not believe that they hold any material claims against

6  Acquisitions.

7     **7.23.**  **The Committee**.

8      On the Effective Date, the Committee shall continue to serve their applicable Debtors as

9  Committee to the applicable reorganized Debtors, subject to the following:

10     **7.24.**  **Duties and Powers**.

11      The duties of the Committee after the Effective Date shall be limited to monitoring the

12  Plan's implementation, notice and opportunity to object to any settlement of the Lehman

13  Adversary Proceeding, standing to object to any settlement of any Litigation Claim in excess of

14  $100,000, and standing to object to any proposed sales procedures on sale of the Debtors' Projects.

15  The Trustee Debtors' Committee shall receive notice of and the right to review all payments and

16  Distributions.

17     **7.25.**  **Dissolution of Committee**.

18      The Committee shall be dissolved upon the entry of an order converting, closing or

19  dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution,

20  the Confirmation Committee shall have no other or further obligations or responsibilities on behalf

21  of the Plan Trust.

22     **7.26.**  **Litigation Claims**.

23      Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

24  Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo.

25  Unless a Litigation Claim is expressly waived, relinquished, released, compromised or settled in

26  the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the

27  Plan Trustee  may pursue such Litigation Claims.

28

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1    The Group I: Trustee Debtors are potential plaintiffs in the State Court Action, and such

2    claims constitute property of their estates. The Trustee refused to authorize the Group II: Trustee

3    Debtors to become additional plaintiffs in the State Court Action. If the Plan is Confirmed, the

4    Plan Trustee and/or the Group I: Trustee Debtors reserve the right to join the State Court Action as

5    additional plaintiffs.

6        Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a Litigation

7    Claim valued at greater than $100,000 except upon ten (10) days' prior written notice and

8    opportunity to object to one or another. Any disputes concerning the settlement or abandonment of

9    a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten

10   (10) days' notice to the objecting party.

11       **7.27.    Collection of Litigation Recoveries**.

12       All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Committee

13   shall be promptly deposited into the applicable Distribution Account(s). Except as otherwise

14   provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear

15   of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

16                                         **VIII.**

17                                    **RISK FACTORS**

18       **8.1    Plan Risks**.

19       The Plan in the case, like any Chapter 11 reorganization plan, includes a number of risks

20   that creditors should be aware of prior to voting on the Plan. The more material of these risks are

21   summarized below.

22       **8.1.1    The Plan May Not Be Accepted or Confirmed.**

23       While the SunCal Proponents believe that the Plan is confirmable under the

24   standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will

25   find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan

26   can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no

27   assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be

28   converted to a liquidation, or that any alternative plan of reorganization could or would be

1  formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the

2  Plan.

### 8.1.2    Failure to Sell The Group I Projects.

4    The Plan is based upon the assumption that the SunCal Plan Proponents will be able to

5  close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date.

6  Although the SunCal Proponents are confident that they can achieve sales at these prices based

7  upon their market research and familiarity with the projects, a possibility exists that these sales will

8  not occur. If the occurs then the creditors holding liens against the Group I Projects will be entitled

9  to seek recourse against these properties, and the recourse would include foreclosure.

### 8.1.3    Adverse Outcome of Pending Litigation.

11    The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders,

12  and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once

13  they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Proponents

14  believe that their defenses to the claims asserted by the Lehman Lender have merits and that they

15  will be sustained and that relief will also be granted in the Lehman Adversary Proceeding.

16  However, there is no assurance that the will occur. Litigation involves risks, including most

17  importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect

18  Holders of Class 6.1 and 6.2 Claims that vote in favor of Option A ($.55 cent distribution), it will

19  affect those that vote in favor of Option B, and it will affect the future distributions payable to the

20  Class 7.1 and 7.2.

### 8.1.4    Risks Associated With Lehman Disputed Administrative Loans.

22    The SunCal Proponents will be filing objections to the Lehman Disputed Administrative

23  Loans. Since these loans were approved by an order of the Court, the SunCal Proponents ability to

24  object to these claims may be limited to damages arising from wrongs that occurred after these

25  loan were approved. If these objections are not successful, the sums owed on account of the

26  Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or

27  on the date that they are allowed. If the SunCal Proponents are not allowed to use the Net Proceeds

28  from the sale of the Group I Projects to pay these obligations and they are unable to pay these

1    claims from their own resources, or through funding or financing provided by third parties, the

2    Plan will fail.

3 **IX.**

4 **DISTRIBUTIONS**

5      **9.1**     **Distribution Agent.**

6         Acquisitions shall serve as the Distribution Agent for distributions due under the Plan. The

7    Distribution Agent may employ one or more sub agents on such terms and conditions as it may

8    agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

9    Distribution Accounts. The Distribution Agent shall not be required to provide any bond in

10    connection with the making of any Distributions pursuant to the Plan.

11      **9.2**     **Distributions.**

12         **9.2.1**     **Dates of Distributions.**

13        Any distribution required to be made on the Effective Date shall be deemed timely if made

14    as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any

15    distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

16    longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

17         **9.2.2**     **Limitation on Liability.**

18        Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any

19    of their employees, members, officers, directors, agents, or professionals or Affiliates shall be

20    liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in

21    connection with implementing the Distribution provisions of the Plan and the making or

22    withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions

23    made pursuant to the Plan resulting from any delays in making such distributions in accordance

24    with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed

25    Claims).

26

27

28

MAINDOCS-#163409-v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

### 9.3    Old Instruments and Securities.

#### 9.3.1    Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

#### 9.3.2    Cancellation of Liens.

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

#### 9.3.3    De Minimis Distributions and Fractional Shares.

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of the section shall, after the last distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

#### 9.3.4    Delivery of Distributions.

Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

1  notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

2  such address as the Holder may specify in writing.

3          **9.3.5**   **Undeliverable Distributions.**

4        If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

5  Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

6  such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

7  shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

8  Holder's then current address. Subject to the remainder of the Section and the following section,

9  Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to the Section, and

10  shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash

11  Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject

12  Distribution becomes deliverable. Nothing contained in the Plan shall require the Plan Trustee or

13  any other Person to attempt to locate such Person.

14          **9.3.6**   **Disposition of Unclaimed Property.**

15        If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a

16  Distribution of Unclaimed Property within ninety (90) days following such Person's initial

17  Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together

18  with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as

19  practicable. Any Holder of an Allowed Claim that does not assert a Claim in writing for

20  Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial

21  Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and

22  shall be forever barred from receiving any distributions under the Plan or otherwise from the Plan

23  Trustee. In such cases, any property held for Distribution on account of such Claims shall become

24  Available Cash and deposited into the Distribution Account.

25

26

27

28

-54-

# X.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

### 10.1   Standing for Objections to Claims.

The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall be vested with the applicable Committee. The applicable Committee shall have standing to object to any settlement of any Litigation Claim in excess of $100,000 and standing to object to any proposed sales procedures and sale of the Debtors' Projects.

Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

### 10.2   Treatment of Disputed Claims and Disputed Liens.

#### 10.2.1  No Distribution Pending Allowance.

If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or distribution provided for under the Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

#### 10.2.2  Distribution After Allowance.

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

# XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1   Executory Contracts.

The SunCal Proponents shall provide a list of those contracts that being assumed or rejected under the Plan in the Plan supplement. However, the list may be amended at any time

-55-

1  prior to the Effective Date.  All contracts or leases not assumed by the Effective Date shall be

2  deemed rejected.

3      **11.2    Bar Date for Rejection Damages.**

4      Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

5  forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates,

6  their successors, or their properties, and shall not be entitled to any distribution under the Plan,

7  unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within

8  thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

9      **11.3    Changes in Rates Subject to Regulatory Commission Approval.**

10      The Debtors are not subject to governmental regulatory commission approval of their rates.

11                                       **XII.**

12       **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

13      **12.1    Best Interests Test**.

14      Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless

15  the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and

16  Interests who have not accepted the plan and whose Claims are classified in Classes that are

17  impaired under the plan, are not less than those which they would receive in a liquidation under

18  Chapter 7 of the Bankruptcy Code.

19      The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each

20  impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis.

21  The Best Interests Test requires the Bankruptcy Court to find either that either (i) all Holders of

22  Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder

23  of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property

24  of a value, as of the effective date of the Plan, that is not less than the amount that such Holder

25  would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

26      The Plan proposed by the Plan Proponents is essentially a liquidating plan. It provides for

27  the sale of all assets of the estate for their fair market value, the collection or recovery of all other

28  assets, and for the distribution of the resulting net proceeds from the sale, in accordance with the

1    priorities provided for in the bankruptcy code and under California law. A Chapter 7 trustee

2    appointed in the case would be compelled to liquidate the Debtors' assets in the same manner as

3    provided for in the Plan and to pay out the proceeds in the same manner as provided for in the

4    Plan. Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as

5    much" as such creditor would receive in a Chapter 7 case, which is all that is required under the

6    Best Interests Test.

7        Although the Lehman Entities will argue that they are being denied their "credit bid" rights

8    under the Plan, and the reduces their distribution below the level that they would receive in a

9    Chapter 7 case, the argument fails. A credit bid right does not add or reduce the value of a

10   creditor's collateral, it simply allows a creditor holding such a right to bid against other bidders

11   using its debt as "credit", rather than bidding in cash. If the creditor's collateral is sold for its "fair

12   market value," in cash, and the creditor receives what it is entitled to from the sales proceeds, then

13   the creditor is necessarily receiving exactly what it would receive in a Chapter 7. The is all that the

14   Best Interest Test Requires.  See Exhibit "7" to the Disclosure Statement.

15       **12.2    Feasibility**.

16       In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

17   of the Plan is not likely to be followed by the liquidation or the need for further financial

18   reorganization of the Debtor(s).  The requirement is imposed by Section 1129(a)(11) of the

19   Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

20   the Debtors' Plan provides for the sale of all assets of their respective estates and for the

21   distribution of the proceeds. Within the context of the Plan, feasibility is limited to having

22   sufficient funds to pay administrative and priority claims on the Effective Date and sufficient funds

23   to fund the sale of the Properties.

24       Under timeline provided for in the Plan, the Group I Project will be sold on the Effective

25   Date. The Net Proceeds from these sales, plus the proceeds of the LitCo Plan Loan, will provide

26   the Debtors the means to pay all claims, including allowed administrative and priority claims on

27   the same date, from escrow. All remaining claimants will then receive what they are entitled under

28   the Plan when their claims are allowed.

## XIII.

## LIMITATION OF LIABILITY

### 13.1    No Liability for Solicitation or Participation.

As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

## XIV.

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

### 14.1    Conditions Precedent to Plan Confirmation.

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan Proponents.

### 14.2    Conditions Precedent to Plan Effectiveness.

The conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities cases. The automatic stay in the Debtors cases shall continue to be applicable until the Effective Date.

## XV.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

# XVI.

## MODIFICATION OR WITHDRAWAL OF THE PLAN

### 16.1    Modification of Plan.

At any time prior to confirmation of the Plan, the former Debtor(s) may supplement, amend or modify the Plan.  After confirmation of the Plan,  the Debtors or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

### 16.2    Nonconsensual Confirmation.

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

# XVII.

## MISCELLANEOUS

### 17.1    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

### 17.2    Payment Dates.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

MAINDOCS-#163409-v1-SCC_Plan_Group_J_Trustee_Debtors.DOC

### 17.3    Headings.

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

### 17.4    Other Documents and Actions.

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

### 17.5    Notices.

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> **To the SunCal Plan Proponents**:
> Bruce V. Cook
> General Counsel
> Authorized Agent of the SunCal Plan Proponents
> 2392 Morse Ave
> Irvine, CA 92614-6234
>
> **With copies to:**
> Paul J. Couchot
> Winthrop & Couchot, Professional Corporation
> 660 Newport Center Drive, Suite 400
> Newport Beach, CA 92660
>
> Ronald Rus
> Rus Miliband & Smith P.C.
> 2211 Michelson Drive, Seventh Floor
> Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of the Section 21.5, which designation will be effective on receipt.

### 17.6    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

-60-

1  law rules) shall govern the construction and implementation of the Plan and any agreements,

2  documents, and instruments executed in connection with the Plan, unless otherwise specifically

3  provided in such agreements, documents, or instruments.

4      **17.7   Binding Effect.**

5      The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

6  the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests,

7  and their respective successors and assigns.

8      **17.8   Successors and Assigns.**

9      The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

10 binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

11 assigns of such entity.

12     **17.9   Severability of Plan Provisions.**

13     If, prior to the Confirmation Date, any term or provision of the Plan is held by the

14 Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

15 constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

16 consent of the Debtors, have the power to interpret, modify or delete such term or provision (or

17 portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

18 with the original purpose of the term or provision held to be invalid, void or unenforceable, and

19 such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding

20 any such interpretation, modification or deletion, the remainder of the terms and provisions of the

21 Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or

22 deletion.

23     **17.10  No Waiver.**

24     The failure of the Debtors or any other Person to object to any Claim for purposes of voting

25 shall not be deemed a waiver of the Committee's, the Debtors' or the Plan Trustee's right to object

26 to or examine such Claim, in whole or in part.

27

28

MAINDOCS-#163409-v1-SCC_Plan_Group_I_Trustee_Debtors.DOC

**17.11   Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**17.12   Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.13   Post-Confirmation Status Report.**

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**17.14   Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. The Plan Trustee reserves the right to object to any motion for conversion or dismissal. If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

MAINDOCS-#163409 v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

1   in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only

2   to the extent that relief from stay was not previously authorized by the Court during the case.

3       **17.15   Final Decree.**

4       Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

5   Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

6   motion with the Court to obtain a final decree to close the Case of such Debtor.

7   Date:  June 20, 2011

8
                                    By: _____
9                                          Bruce Cook, General Counsel
                                           Authorized Agent for the Voluntary Debtors and
10                                         Acquisitions

11  Submitted By:

12  **WINTHROP COUCHOT**
13  **PROFESSIONAL CORPORATION**

14
    By: /s/ Paul J. Couchot
15         Paul J. Couchot,
           General Insolvency Counsel for
16         the Voluntary Debtors

17
    **RUS MILIBAND & SMITH**
18  **A PROFESSIONAL CORPORATION**

19

20
    By: /s/ Ronald Russ
21         Ronald Rus, Esq.
           Joel S. Miliband, Esq.
22         Attorneys for SCC Acquisitions, LLC

23

24

25

26

27

28

                                    -63-

                                    MAINDOCS-#163409-v1-SCC_Plan_Group_1_Trustee_Debtors.DOC

| In re: | | CHAPTER 11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **FIRST AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL MARBLEHEAD, LLC AND SUNCAL PSV, LLC [GROUP I: TRUSTEE DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Susan Connor | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                          F 9013-3.1

| In re: | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER |

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    **F 9013-3.1**

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbaronedess.com, vgunderson@millerbaronedess.com
- Louis R Miller    smiller@millerbaronedess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory   It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9013-3.1