PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**Santa Ana Division**

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>    Joint Administered Debtors and<br>    Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES |

Affects:

☐ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC

Chapter 11 Proceedings

**FIRST AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK VALLEY, LLC, SUNCAL HEARTLAND, LLC, DELTA COVES VENTURE LLC AND LBL-SUNCAL NORTHLAKE, LLC [GROUP III: TRUSTEE DEBTOR**

Date:     July 22, 2011
Time:    11:00 a.m.
Place:    Courtroom 5A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☒ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☒ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION.................................................................................    2

II.    DEFINITIONS AND RULES OF INTERPRETATION.............................    4
    2.1    Definitions...........................................................................    4
    2.2    Rules of Construction ...........................................................    24
    2.3    Exhibits ...............................................................................    25

VI.    TREATMENT OF UNCLASSIFIED CLAIMS ...................................    56
    6.1    Introductions ........................................................................    56
    6.2    Treatment of Allowed Administrative Claims.............................    57
    6.3    Treatment and Repayment of the Lehman Administrative Loan(s)...............    57
    6.4    Repayment of Alleged Administrative Claims
        Other than the Lehman Administrative Loans........................    57
    6.5    Administrative Claims Bar Date ............................................    58
    6.6    Treatment of Priority Unsecured Tax Claims ...........................    58

VII.    CLASSIFICATION OF CLAIMS AND INTERESTS.............................    59

VIII.    THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
    AND INTERESTS....................................................................    65
    8.1    The Plan's Treatment of Holders of Allowed Secured
        Real Property Tax Claims on Real Properties Subject to
        Deeds of Trust Arising from Lehman's Disputed Secured
        Claims and Disputed Liens (Classes 1.1 Through 1.14)..............    65
    8.2    The Plan's Treatment of Holders of Lehman's Disputed
        Claim(s) and Disputed Lien(s) (Classes 2.1 Through 2.4)............    66

## <u>TABLE OF CONTENTS</u>

### (Continued)

PAGE

| | | |
|---|---|---|
| 8.3 | The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Debtors' Projects Subject to Lehman's Disputed Claims (Classes 3.1 Through 3.29) | 69 |
| 8.4 | The Plan's Treatment of Holders of Priority Claims (Classes 4.1 Through 4.2) | 69 |
| 8.5 | The Plan's Treatment of Holders of General Unsecured Claims that Are Reliance Claims (Classes 5.1 Through 8.4) | 70 |
| 8.6 | The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims (Classes 6.1 Through 6.4) | 70 |
| 8.7 | The Plan's Treatment of Holders of Allowed Interests | 71 |

IX.   ACCEPTANCE OR REJECTION OF THE PLAN .............................................. 71

| | | |
|---|---|---|
| 9.1 | Introduction | 71 |
| 9.2 | Who May Object to Confirmation of the Plan | 72 |
| 9.3 | Who May Vote to Accept/Reject the Plan | 72 |
| 9.4 | What Is an Allowed Claim/Interest | 72 |
| 9.5 | What Is an Impaired Class | 72 |
| 9.6 | Who Is Not Entitled to Vote | 72 |
| 9.7 | Who Can Vote in More than One Class | 73 |
| 9.8 | Votes Necessary for a Class to Accept the Plan | 73 |
| 9.9 | Treatment of Nonaccepting Classes | 73 |
| 9.10 | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 73 |

X.   MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN .............. 74

| | | |
|---|---|---|
| 10.1 | Introduction | 74 |
| 10.2 | Removal of Trustee | 74 |
| 10.3 | Transfer of Property To The Plan Trust | 74 |
| 10.5 | Purpose of the Plan Trust Assets After Effective Date | 75 |
| 10.6 | Operations of the Plan Trust | 75 |
| 10.7 | The Plan Trustee | 75 |
| 10.8 | Payment of Trust Expenses | 75 |
| 10.9 | Plan Distribution System | 75 |
| 10.10 | Claims Estimation Rights | 76 |
| 10.11 | No Payment of Transfer-Related Fees to the United States Trustee | 76 |
| 10.12 | NO PAYMENT OF TRANSFER-RELATED FEES TO THE TRUSTEE | 76 |
| 10.13 | BOOKS AND RECORDS OF TRUST | 76 |
| 10.14 | LIMITATIONS ON LIABILITY | 77 |
| 10.15 | FEDERAL INCOME TAX TREATMENT OF THE HOLDERS OF PLAN TRUST BENEFICIAL INTERESTS | 77 |
| 10.16 | TERMINATION OF THE TRUST | 78 |
| 10.17 | EXEMPTION FROM CERTAIN TRANSFER TAXES | 79 |
| 10.18 | TAX CONSEQUENCE OF THE PLAN | 79 |

-ii-

10.19  THE PLAN SPONSOR ........................................................................ 79
10.20  ACQUISITIONS' FUNDING OBLIGATIONS PURSUANT TO THE
        ACQUISITIONS ADMINISTRATIVE LOAN .......................................... 79
10.21  THE COMMITTEE. ........................................................................... 80
        10.21.1      DUTIES AND POWERS. .................................................. 80
        10.21.2      DISSOLUTION OF COMMITTEE. ..................................... 80
10.22  LITIGATION CLAIMS ...................................................................... 80
10.23  Collection of Litigation Recoveries ........................................... 81

XI.    DISTRIBUTIONS ............................................................................. 81
       11.1   Distribution Agent .............................................................. 81
       11.2   Distributions ....................................................................... 81
              11.2.1  Dates of Distributions .............................................. 81
              11.2.2  Limitation on Liability .............................................. 82
       11.3   Old Instruments and Securities ......................................... 82
              11.3.1  Surrender and Cancellation of Instruments and Securities ............... 82
              11.3.2) Cancellation of Liens ............................................... 82
       11.4   De Minimis Distributions and Fractional Shares .............. 82
       11.5   Delivery of Distributions ................................................... 83
       11.6   Undeliverable Distributions ............................................... 83
       11.7   Disposition of Unclaimed Property ................................... 83

XII.   OBJECTION TO CLAIMS AND DISPUTE CLAIMS ........................... 84
       12.1   Standing for Objections to Claims ..................................... 84
       12.2   Treatment of Disputed Claims and Disputed Liens ........... 84
              12.2.1   No Distribution Pending Allowance ......................... 84
              12.2.2   Distribution After Allowance ................................... 84

XIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 85
       13.1   Executory Contracts Being Assumed ................................. 85
       13.2   Executory Contracts Being Rejected ................................. 85
       13.3   Bar Date for Rejection Damages ........................................ 85
       13.4   Changes in Rates Subject to Regulatory Commission Approval ................... 85

XIV.   BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY ............... 85
       14.1   Best Interest Test ............................................................... 85
       14.2   Feasibility ........................................................................... 85

XV.    LIMITATION OF LIABILITY ............................................................. 88
       15.1   No Liability for Solicitation or Participation ...................... 88

XVI.   CONDITIONS TO CONFIRMATION AND EFFECTIVENESS
       OF THE PLAN ................................................................................. 88
       16.1   Conditions Precedent to Plan Confirmation ...................... 88
       16.2   Conditions Precedent to Plan Effectiveness ...................... 88

XVII.  RETENTION OF JURISDICTION ........................................................ 88

-iii-

## TABLE OF CONTENTS

### (Continued)

PAGE

XVIII. MODIFICATION OR WITHDRAWAL OF THE PLAN ........................................ 89
    18.1    Modification of Plan ............................................................................. 89
    18.2    Nonconsensual Confirmation................................................................ 89

XIX.    MISCELLANEOUS ................................................................................. 89
    19.1    Payment of Statutory Fees ................................................................... 89
    19.2    Payment Dates...................................................................................... 90
    19.3    Headings .............................................................................................. 90
    19.4    Other Documents and Actions ............................................................. 90
    19.5    Notices ................................................................................................. 90
    19.6    Governing Law .................................................................................... 91
    19.7    Binding Effect...................................................................................... 91
    19.8    Successors and Assigns........................................................................ 91
    19.9    Severability of Plan Provisions ........................................................... 91
    19.10  No Waiver............................................................................................. 92
    19.11  Inconsistencies .................................................................................... 92
    19.12  Exemption from Certain Transfer Taxes and Recording Fees............... 92
    19.13  Post-Confirmation Status Report ......................................................... 93
    19.14  Post-Confirmation Conversion/Dismissal ........................................... 93
    19.15  Final Decree ........................................................................................ 93

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

# I.

## INTRODUCTION

The Chapter 11 Plan of Reorganization (the "Plan")[1] is filed by the Voluntary Debtors and Acquisitions[2], as the SunCal Plan Proponents. Acquisitions are also the Plan Sponsor, and Acquisitions will serve as the Plan Trustee and the Distribution Agent for all of the Debtors, if the Plan is confirmed. The Plan is being filed in the Chapter 11 Cases of the following Debtors:

>    **SunCal Oak Valley, LLC**
>    **SunCal Heartland, LLC**
>    **LBL-SunCal Northlake, LLC**
>    **Delta Coves Venture, LLC**

(the "Group III: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

In summary, the Plan provides for sale of the Oak Valley Project, the Heartland Project, Northlake Project and the Delta Coves Project (the "Group III Projects"), and for the liquidation of all other assets of the Group III: Trustee Debtors. The Net Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

The same Plan is being filed in the Cases of all three Group III: Trustee Debtors, each Plan is independent of the others. The Creditors in each Case will determine, subject to Court approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of some of the Group III: Trustee Debtors, but not in others.

**AS EXPLAINED IN THE DEFINITION OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR LEHMAN BROTHERS HOLDINGS, INC.**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" to the Disclosure Statement.

[2] In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  ("LBHI") THAT WOULD HAVE THE EFFECT OF VIOLATING ANY APPLICABLE

2  AUTOMATIC STAY THAT MAY EXIST IN THEIR CHAPTER 11 CASES. ANY SUCH

3  ACTION WILL ONLY PROCEED AFTER ANY APPLICABLE STAY IS EITHER

4  LIFTED OR DEEMED INAPPLICABLE.

5                                         H.

6  ## DEFINITIONS AND RULES OF INTERPRETATION

7  **2.1   Definitions.**

8        The following defined terms are used in this Disclosure Statement. Any capitalized term

9  that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall

10  have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

11        2.1.1   Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect

12  parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of

13  the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

14        2.1.2   Administrative Claim(s). Any Claim against a Group III Debtor or its Estate

15  incurred after the applicable Petition Date for the applicable Group III: Trustee Debtor but before

16  the Confirmation Date, for any cost or expense of administration of the Case of the applicable

17  Group III: Trustee Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the

18  Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a

19  Group III: Trustee Debtor under section 1930 of Title 28 of the United States Code.

20        2.1.3   Administrative Claims Bar Date. The last date fixed by the Plan for the

21  filing of Proof of Claims or requests for payment of Administrative Claims. Under the Plan, the

22  Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the

23  Confirmation Date.

24        2.1.4   Affiliate. The term shall have the meaning set forth under Section 101(2),

25  including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

26  controls, is owned or controlled by, or is under common ownership or control with, such Person.

27  The term "control" (including, with correlative meanings, the terms "controlled by" and "under

28  common control with"), as applied to any Person, means the possession, direct or indirect, of the

-3-

power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

        2.1.5   Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

        2.1.6   Allowed Amount shall mean:

        A.    With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Group III: Trustee Debtors and is not otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Group III: Trustee Debtors and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any such Administrative Claim;

        B.    with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Group III: Trustee Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

1   interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

2   Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

3   Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

4   fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court. The

5   Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

6   listed on the Group III: Trustee Debtors' Schedules or is listed as disputed, unliquidated,

7   contingent or unknown, and is not allowed under the terms of the plan shall be zero, and no

8   distribution shall be made on account of any such Claim; and

9                    C.     with respect to any Interest, (i) the amount provided by or

10   established in the records of the Group III: Trustee Debtors at the Confirmation Date, provided,

11   however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

12   records of the Group III: Trustee Debtors; or (ii) the amount stated in a proof of Interest Filed prior

13   to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date

14   or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a

15   Final Order of the Bankruptcy Court.

16         2.1.7    Allowed Claim. Except as otherwise provided in the Plan (including with

17   respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

18   Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

19         2.1.8    Allowed Interest. Any Interest to the extent, and only to the extent, of the

20   Allowed Amount of such Interest.

21         2.1.9    Allowed Secured Claims. All or a portion of a Secured Claim that is an

22   Allowed Claim.

23         2.1.10   Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

24   an Allowed Claim.

25         2.1.11   Assets. All assets that are property of the Debtor(s) pursuant to

26   Bankruptcy Code Section 541.

27         2.1.12   Arch. Arch Insurance Company, a Bond Issuer.

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1         2.1.13   Available Cash. Each Group III: Trustee Debtors' Cash deposited into the

2 applicable Distribution Account(s) on or after the Effective Date that is available for making

3 Distributions under the Plan to Holders of Allowed Administrative, Priority, and General

4 Unsecured Claims. The Available Cash shall consist of the respective Group III: Trustee Debtors'

5 cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net

6 Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become

7 Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien

8 purportedly encumbering such Cash, or proceeds from the Acquisitions Administrative Loan. All

9 Available Cash shall be deposited into the applicable Distribution Account(s). Available Cash

10 shall not include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured

11 Claims are Allowed but subject to an equitable subordination judgment.

12         2.1.14   Avoidance Actions. All Claims and defenses to Claims accruing to the

13 Group III: Trustee Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541,

14 544, 545, 547, 548, 549, 550, or 551.

15         2.1.15   Bankruptcy Code. The United States Bankruptcy Code.

16         2.1.16   Bankruptcy Court. The United States Bankruptcy Court for the Central

17 District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

18 reference made pursuant to Section 157 of title 28 of the United States Code, the United States

19 District Court for the Central District of California; or, in the event such courts cease to exercise

20 jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

21 lieu thereof.

22         2.1.17   Bankruptcy Rules. Collectively, as now in effect or hereafter amended

23 and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

24 Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

25         2.1.18   Beneficial Interests. means, collectively, the interests of the holders of

26 Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust

27 on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1 │ and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be

2 │ transferred, sold, assigned or transferred by will, intestate succession or operation of law.

3 │     2.1.19   Bond Claim(s). Any Claim against the Debtor(s) and a Bond Issuer under

4 │ various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s)

5 │ under various payment or performance bonds.

6 │     2.1.20   Bond Claimant. Holder(s) of a Bond Claim.

7 │     2.1.21   Bond Indemnification Claim. All Claims by Bond Safeguard, Lexon, and

8 │ Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with

9 │ respect to the Group III: Trustee Debtors' Projects.

10 │     2.1.22   Bond Indemnitors. The individuals and entities that are allegedly liable on

11 │ the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

12 │ Affiliates of Acquisitions, and Elieff.

13 │     2.1.23   Bond Issuer(s). Bond Safeguard, Lexon and Arch in their capacities as

14 │ issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

15 │     2.1.24   Bond Safeguard. Bond Safeguard Insurance Company, a Bond Issuer.

16 │     2.1.25   Business Day. Any day, other than a Saturday, a Sunday or a "legal

17 │ holiday," as defined in Bankruptcy Rule 9006(a).

18 │     2.1.26   Cases. The Chapter 11 cases of the Group III: Trustee Debtors pending

19 │ before the Bankruptcy Court.

20 │     2.1.27   Cash. Currency of the United States of America and cash equivalents,

21 │ including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

22 │ transfers and other similar forms of payment.

23 │     2.1.28   CFD Bonds. Community facilities district bonds issued by a

24 │ governmental entity.

25 │     2.1.29   Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the

26 │ Trustee Debtors in their pending Chapter 11 Cases.

27 │     2.1.30   Claim. This term shall have the broadest possible meaning under

28 │ Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  Group III: Trustee Debtors, whether or not such right is reduced to judgment, liquidated,

2  unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

3  secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

4  breach gives rise to a right of payment from any of the Group III: Trustee Debtors, whether or not

5  such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

6  disputed, undisputed, secured, or unsecured.

7         2.1.31    Claims Bar Date.  For any Claim other than an Administrative Claim,

8  March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

9  file Proof of Claims with the Bankruptcy Court in all of the Group III: Trustee Debtors' cases.

10         2.1.32    Claims Objection Deadline.  The later of (i) the first business day

11  following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

12  period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

13  the Plan Trustee and the Holder of the Claim.

14         2.1.33    Claim Objection Reduction Amount. The amount of Net Sales Proceeds

15  that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

16  or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

17  secured claims filed by the Lehman Lenders.

18         2.1.34    Class.  Each group of Claims or Interests classified in Article V of the Plan

19  pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

20         2.1.35    Committee.  The Trustee Debtors' Committee, both before and after the

21  Confirmation Date.

22         2.1.36    Confirmation Date.  The date on which the Confirmation Order is entered

23  in the Bankruptcy Court's docket.

24         2.1.37    Confirmation Order.  The order entered by the Bankruptcy Court

25  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

26         2.1.38    Contingent Bond Claims.  Unmatured Bond Claims.

27         2.1.39    Creditor.  Any Person who is the Holder of a Claim against any Debtor

28  that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  become due, owing, and payable on or before the Petition Date, including, without limitation,

2  Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

3         2.1.40  Debtor(s). Individually or collectively, the Voluntary Debtors and the

4  Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

5         2.1.41  Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their

6  capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

7         2.1.42  Delta Coves. Delta Coves Ventures, LLC, a limited liability company, a

8  Trustee Debtor, and the owner of the Delta Coves Project.

9         2.1.43  Delta Coves Project. The Project owned by Delta Coves, located in the

10  Contra Costa County, California, as more particularly described herein.

11         2.1.44  Delta Coves Project Break-up Fee. The sum eight hundred thirty two

12  thousand dollars ($832,000) that will be paid to the Stalking Horse Bidder that submits the

13  Opening Bid for the Delta Coves Project, if such Stalking Horse Bidder is not the Winning Bidder

14         2.1.45  Delta Coves Loan Agreement. A certain Amended and Restated Loan

15  Agreement, dated as of April 20, 2007, by and between Delta Coves, as borrower, and Lehman

16  ALI as lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal

17  amount of approximately $236 million. The Delta Coves Loan Agreement is allegedly secured by

18  a first-priority deed of trust on the Delta Coves Project. The Delta Coves Loan Agreement has an

19  asserted balance due of $206,023,142.48 as of March 30, 2009.

20         2.1.46  Disclosure Statement. This document accompanying the Plan that is

21  entitled "First Amended Disclosure Statement Describing First Amended Chapter 11 Plan Filed by

22  SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Valley, LLC, SunCal Heartland,

23  LLC, Delta Coves Venture, LLC, and SunCal Northlake, LLC, as amended and with all

24  accompanying exhibits.

25         2.1.47  Disputed Claim(s). All or any part of a Claim other than any Allowed

26  Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

27  with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

28  is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1    (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

2    Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

3    for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

4    order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

5    Deadline, which Adversary Proceeding, objection, or request for estimation has not been

6    dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

7    "Disputed Claim" pursuant to the Plan.

8        2.1.48    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that

9    is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

10   or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

11       2.1.49    Disputed Secured Claim(s). That part of a Disputed Claim that is a

12   Secured Claim.

13       2.1.50    Distribution(s).  Payments to Holders of Allowed Claims provided for

14   under the Plan.

15       2.1.51    Distribution Agent.  The entity that is responsible for making Distributions

16   under the Plan, which shall be Acquisitions.

17       2.1.52    Distribution Account(s).  Separate account(s) to be established by the Plan

18   Trustee at an FDIC insured bank into which each Group III: Trustee Debtors' Available Cash shall

19   be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that

20   would have belonged to such Group III: Trustee Debtor shall be deposited, other than Net Sales

21   Proceeds that are subject to Disputed Claims and Disputed Liens.

22       2.1.53    Distribution Date.  With respect to any Allowed Claim or Allowed

23   Interest, the date on which a Distribution is required to be made under the Plan.

24       2.1.54    Effective Date. A date selected by the SunCal Plan Proponents that is not

25   later than the ninetieth $(90^{th})$ calendar day after the Confirmation Date. However, in any case where

26   the actions provided for in the Plan would be delayed by the automatic stay applicable in the case

27   of any Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to

2  obtain relief from any such stay.

3       2.1.55  Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on

4  the Bond Claims with corresponding indemnity Claims against the Debtors.

5       2.1.56  Estates. The bankruptcy estates of the Group III: Trustee Debtors created

6  pursuant to Section 541 of the Bankruptcy Code.

7       2.1.57  Fee Applications. Applications of Professional Persons under Sections

8  330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

9  expenses in the Cases.

10       2.1.58  Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code

11  for allowance of compensation and reimbursement of expenses in the Cases.

12       2.1.59  Fenway Capital. Fenway Capital Funding LLC, a Lehman Successor to

13  Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

14  Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

15  (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

16  (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

17  Valley Loan Agreement. Such Disputed Claims and Disputed Liens were transferred back to LCPI

18  pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

19       2.1.60  Filed. Delivered to, received by and entered upon the legal docket by the

20  Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

21       2.1.61  Final Order. A judgment, order, ruling or other decree issued and entered

22  by the Bankruptcy Court.

23       2.1.62  General Unsecured Claim. A Claim against a Group III: Trustee Debtor

24  that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority

25  Claim.

26       2.1.63  Group III: Trustee Debtors. SunCal Oak Valley, LLC, SunCal Heartland,

27  LLC, Delta Coves Venture, LLC, and SunCal Northlake, LLC.

28

2.1.64    Group III Projects. The Oak Valley Project, the Heartland Project, the Delta Coves Project and the Northlake Project.

2.1.65    Heartland Project Break-up Fee. The sum of three hundred thousand dollars ($300,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the Heartland Project, if such Stalking Horse Bidder is not the Winning Bidder.

2.1.66    Heartland Project. The Project owned by SunCal Heartland, located in the Riverside County, California, as more particularly described herein.

2.1.67    Holder. The beneficial owner of any Claim or Interest.

2.1.68    Initial Overbid. The Initial Overbid is the first Qualifying Bid after the Opening Bid that is equal to or in excess of the Initial Overbid Amount.

2.1.69    Initial Overbid Amount. In the case of the Oak Valley Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Oak Valley Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Heartland Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Heartland Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Delta Coves Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Delta Coves Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Northlake Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Northlake Project Break-up Fee and seventy-five thousand dollars ($75,000).

2.1.70    Insider. The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates.

2.1.71    Interest. Any equity security interest in any Group III: Trustee Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Group III: Trustee Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

1              2.1.72    LBHI. Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

2 company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

3 in the Bankruptcy Court for the Southern District of New York.

4              2.1.73    LCPI. Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

5 bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

6              2.1.74    Lehman Adversary Proceeding. The Debtors' pending adversary

7 proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

8 action including equitable subordination, fraudulent conveyances and preferential transfers.

9              2.1.75    Lehman ALI. Lehman ALI, Inc.

10            2.1.76    Lehman Disputed Administrative Loans. The post-petition financing

11 provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates,

12 SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century

13 City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all

14 borrower Debtors' assets, and for super-priority administrative status to Lehman ALI. The

15 Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the

16 Voluntary Debtors. The aggregate amount of the Lehman Administrative Loans to all of the

17 Trustee Debtors is approximately $40 million as of March 1, 2011 and continuing to increase. The

18 Lehman Administrative Loans are the subject of claim objections. Until these objections are

19 resolved, these Lehman Administrative Loans shall not be Allowed Claims.

20            2.1.77    Lehman Claim Objections. The objections filed by the Debtors to the

21 claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

22 Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

23 Objection and the Lehman 502(d) Objection.

24            2.1.78    Lehman Entities. The Lehman Lenders, the Lehman Equity Members and

25 LBHI.

26            2.1.79    Lehman Equity Members. Lehman Entities that own direct or indirect

27 membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

28 Marblehead.

1    2.1.80    Lehman Lenders. Lehman ALI, LCPI, Northlake Holdings, and OVC

2  Holdings.

3    2.1.81    Lehman Disputed Loans. Collectively the following loans that are the

4  purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan Agreement;

5  (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

6  (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

7  Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

8  Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

9  Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

10  and (n) Pacific Point Second Loan Agreement.

11    2.1.82    Lehman Representatives. The individuals that controlled the Lehman

12  Entities.

13    2.1.83    Lehman Successor(s). Entities other than the Lehman Lenders that either

14  assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

15  Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

16    2.1.84    Lehman's Disputed Claim(s). All of the Proofs of Secured Claims filed by

17  a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

18  Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

19    2.1.85    Lehman's Disputed Lien(s). All of the alleged liens relating to Proofs of

20  Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

21  Cases arising from the Lehman Disputed Loans.

22    2.1.86    Lexon. Lexon Insurance Co.

23    2.1.87    LitCo. A newly formed Delaware limited liability company that will be

24  capitalized by a third party capital partner with the funds necessary to pay Allowed Administrative

25  Claims and the expenses of the Plan Trust.

26    2.1.88    LitCo Plan Loan. A loan that will be made by LitCo, to the extent

27  necessary to pay Administrative Claims, and post Confirmation Date costs incurred by the SunCal

28  Proponents in connection with the sale process, and to pay post Effective Date costs incurred by

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1   the Plan Trust, including litigation expenses where applicable, if no other source is available to

2   pay these obligations. LitCo will be capitalized with funds provided by a third party.

3       2.1.89   Litigation Claims.  Any and all interests of the Group III: Trustee Debtors

4   in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights,

5   or causes of action which have been or may be commenced by the Group III: Trustee Debtor(s), the

6   Chapter 11 Trustee, or the Committee, as the case may be, including, but not limited to, any

7   (i) Avoidance Actions; (ii) for turnover of property to the Group III: Trustee Debtors' Estates

8   and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the

9   Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages,

10  recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary

11  Proceeding; (vi) the State Court Action, and (vii) any and all other Claims against Lehman's

12  Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

13      2.1.90   Litigation Recoveries.  Any Cash or other property received by the

14  Chapter 11 Trustee, the Group III: Trustee Debtors, the Committee and/or the Plan Trust, as the

15  case may be, from all or any portion of a Litigation Claim(s), including, but not limited to, awards

16  of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by

17  way of settlement, execution on judgment or otherwise.

18      2.1.91   Litigation Rights. Any Claims held by a party other than the Group III:

19  Trustee Debtors that have not been fixed in a final judgment prior to the Effective Date.

20      2.1.92   Maximum Distributions.  A Distribution to a Holder of an Allowed

21  General Unsecured Claim equal to one hundred percent (100%) of the amount of the Holder's

22  Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the applicable

23  Group III: Trustee Debtor's Petition Date.

24      2.1.93   MB Firm.  Miller Barondess, LLP.

25      2.1.94   Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to

26  California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

27  allegedly satisfy the requirements of Bankruptcy Code 546(b).

28

-15-

1         2.1.95   Minimum Increment. The Minimum Increment is the additional sum that

2   must be bid for one of the Group III Projects in excess of a prior Qualified Bid. The Minimum

3   Increment applicable to the sale of the Oak Valley Project and the Delta Coves Project is the sum

4   of seventy-five thousand dollars ($75,000), until there are only two Qualified Bidders submitting

5   bids for these Projects, then the Minimum Increment shall be fifty thousand dollars ($50,000). The

6   Minimum Increment applicable to the sale of the Heartland Project and the Northlake Project is the

7   sum of fifty thousand dollars ($50,000), until there are only two Qualified Bidders submitting bids

8   for these Projects, then the Minimum Increment shall be twenty thousand dollars ($20,000).

9         2.1.96   Minimum Sale Price. The minimum gross sale price that must be paid for

10   the Oak Valley Project, the Heartland Project, the Delta Cove Project or the Northlake Project

11   before such project can be sold pursuant to the Plan. Such prices are $18,900,000, $6,750,000,

12   $18,720,000 and $6,750,000, respectively.

13         2.1.97   Net Litigation Recoveries. Litigation Recoveries less associated

14   Administrative Claims and Post-Confirmation Expenses incurred in connection with such

15   Litigation Recoveries.

16         2.1.98   Net Sales Proceeds. The Cash generated from the sale(s) or liquidation of

17   the Group III: Trustee Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling

18   expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and

19   Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

20         2.1.99   Net Sales Proceeds Account(s). Separate account(s) that will be

21   established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

22   deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

23   and/or a Disputed Lien(s). There shall be a separate Net Sales Proceeds Account for the Net Sale

24   Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

25   where there are two Disputed Liens on a single Project, in which case, there shall be a single

26   account for the proceeds generated from that Project. The Disputed Secured Claim(s) and/or

27   Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

28   Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

1   applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

2   particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

3   Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

4   thereto shall become Available Cash and shall be transferred to the applicable Distribution

5   Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

6   allowed and deemed valid but subject to the equitable subordination causes of action in the

7   Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

8   Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

9           2.1.100   Northlake Project.  The Project owned by Northlake, located in Castaic,

10  California, north of Valencia, approximately 45 miles north of downtown Los Angeles and 10

11  miles north of the San Fernando Valley, as more particularly described herein.

12          2.1.101   Northlake Project Break-up Fee. The sum three hundred thousand dollars

13  ($300,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the

14  Northlake Project, if such Stalking Horse Bidder is not the Winning Bidder

15          2.1.102   Northlake Loan Agreement.  A certain Term Loan and Revolving Line of

16  Credit Loan Agreement, dated as of September 5, 2009, between SunCal Northlake, as borrower,

17  and Northlake Holdings, as successor agent and sole lender, pursuant to which Northlake

18  Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal amount of

19  approximately $100,000,000.  The SunCal Northlake Loan Agreement is allegedly secured by a

20  first-priority deed of trust on the Northlake Project.  The SunCal Northlake Loan Agreement has an

21  alleged balance due of $123,654,776.88 as of March 30, 2009.

22          2.1.103   Oak Valley Project.  The Project owned by SunCal Oak Valley, located in

23  the Riverside County, California, as more particularly described herein.

24          2.1.104   Oak Valley Project Break-up Fee. The sum of eight hundred forty

25  thousand dollars ($840,000) that will be paid to the Stalking Horse Bidder that submits the

26  Opening Bid for the Oak Valley Project, if such Stalking Horse Bidder is not the Winning Bidder.

27

28

2.1.105 <u>Opening Bid</u>. Opening Bid means the offer for one, or both of the Group III Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for either one or both of the Group III Projects.

2.1.106 <u>Orders for Relief Date</u>. The following are dates that orders for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.107 <u>Palmdale Hills</u>. Palmdale Hills Property, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

2.1.108 <u>Person</u>. An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.109 <u>Petition Dates</u>. The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |

-18-

| Del Rio | November 19, 2008 |
|---|---|
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.110   Plan.  The "First Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Valley, LLC, SunCal Heartland, LLC, and Delta Coves Venture, LLC [Group III: Trustee Debtors]"together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.111   Plan Documents.  The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.112   Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.113   Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.114   Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.115   Plan Sponsor.  The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

2.1.116   Plan Trust.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

-19-

1    2.1.117    Plan Trustee. The Plan Trustee under the Plan Trust Agreement is

2  Acquisitions.

3    2.1.118    Plan Trust Agreement. The liquidating trust agreement governing the

4  affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

5    2.1.119    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders

6  of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be

7  satisfied from Plan Trust Property in accordance with the terms of the Plan.

8    2.1.120    Plan Trust Property. Plan Trust Property means all property within the

9  Chapter 11 estates of the Group III: Trustee Debtors, other than property that is affirmatively

10  excluded by the Plan Trustee.

11    2.1.121    Post-Confirmation Expenses.  The fees and expenses incurred by the Plan

12  Sponsor, the Plan Trustee and the Committee and their professionals following the Confirmation

13  Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and

14  liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed

15  Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions

16  under the Plan; and (v) otherwise consummating the Plan and closing the Group III: Trustee

17  Debtors' Chapter 11 Cases.

18    2.1.122    Priority Claim.  Any Claim, other than an Administrative Claim or a Tax

19  Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

20    2.1.123    Pro Rata.  Proportionately, so that with respect to any distribution in

21  respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

22  such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

23  amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

24  such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

25    2.1.124    Professional.  A Person or Entity (a) employed by the Group III: Trustee

26  Debtors, the Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the

27  Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant

28  to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation

1    and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

2    Bankruptcy Code.

3         2.1.125    Professional Fees. All Allowed Claims for compensation and for

4    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

5         2.1.126    Projects. The Debtors' residential real estate development projects and

6    other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

7         2.1.127    Qualifying Bid. Qualifying Bid means, with respect to any bid on a

8    Group III Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the Initial

9    Overbid Amount, if it is the Initial Overbid, or B) in excess of the immediately preceding

10   Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

11        2.1.128    Qualifying Bidder. Qualifying Bidder means a bidder who a) has

12   deposited the sum of five hundred thousand dollars ($500,000) in an escrow designated by the

13   SunCal Proponents; b) agreed that this sum will be forfeited as liquidated damages if such bidder

14   fails to perform; and c) who has provided the SunCal Plan Proponents evidence confirming that

15   such bidder has the financial means to acquire the applicable Group III Project(s) that such bidder

16   is seeking to acquire.

17        2.1.129    Reliance Claim. An Allowed Unsecured Claim against a Group III:

18   Trustee Debtor that would entitle the holder thereof to be the beneficiary of any equitable

19   subordination judgment obtained against a Lehman Entity by such Group III: Trustee Debtor.

20        2.1.130    Reliance Claimant. The holder of a Reliance Claim. A list of the Reliance

21   Claims and Reliance Claimants is attached to the Disclosure Statement as Exhibit "8."

22        2.1.131    Sale Period. The Sale Period is the time period during which the SunCal

23   Proponents must consummate a sale or liquidation of the Group III Projects. The Sales Period shall

24   commence on the Confirmation Date and shall expire on the Effective Date.

25        2.1.132    SCC LLC. SCC Acquisitions LLC, a limited liability company, a

26   subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

27        2.1.133    Schedules. The schedules of assets and liabilities and list of equity

28   security holders Filed by the Group III: Trustee Debtors, as required by Section 521(1) of the

1 | Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

2 | as amended from time to time.

3 |       2.1.134   Stalking Horse Bidder.  The Qualified Bidder who submits the Opening

4 | Bid..

5 |       2.1.135   Secured Claim.  Any Claim, including interest, fees, costs, and charges to

6 | the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

7 | unavoidable Lien on the Group III: Trustee Debtor(s)' Assets.

8 |       2.1.136   State Court Action. The action filed by certain Voluntary Debtors against

9 | Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

10 | Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan

11 | Trustee and/or the Trustee Debtors as additional plaintiffs therein.

12 |       2.1.137   SunCal.  The SunCal Companies, a trade name for Acquisitions and its

13 | Affiliates.

14 |       2.1.138   SunCal Bickford.  SunCal Bickford Ranch, LLC, a Delaware limited

15 | liability company, a Voluntary Debtor herein, and the owner of the Bickford Ranch Project.

16 |       2.1.139   SunCal Heartland. SunCal Heartland, LLC, a Delaware limited liability

17 | company, a Trustee Debtor (a Group III: Trustee Debtor), and the owner of the Heartland Project

18 |       2.1.140   SunCal Management.  SunCal Management, LLC, a Delaware limited

19 | liability company, and the property manager for the Projects.

20 |       2.1.141   SunCal Marblehead/SunCal Heartland Loan Agreement.  That certain

21 | Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

22 | as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

23 | Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

24 | pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of

25 | approximately $316,061,300. The SunCal Marblehead/SunCal Heartland Loan Agreement is

26 | allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

27 | The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

28 |

1   $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to this loan

2   agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

3         2.1.142   SunCal Northlake.  LBL-SunCal Northlake, LLC, a limited liability

4   company, a Trustee Debtor, and the owner of the Northlake Project.

5         2.1.143   SunCal Oak Valley.  SunCal Oak Valley, LLC, a Delaware limited

6   liability company, a Trustee Debtor (a Group III: Trustee Debtor), and the owner of the Oak Valley

7   Project.

8         2.1.144   SunCal Oak Valley Loan Agreement.  A certain Term Loan and

9   Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, by and between SunCal Oak

10  Valley, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which

11  OVC Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal

12  amount of approximately $120,000,000.  The SunCal Oak Valley Loan Agreement is allegedly

13  secured by a first-priority deed of trust on the Oak Valley Project.  The SunCal Oak Valley Loan

14  Agreement has an alleged balance due of $141,630,091.63 as of March 30, 2009.

15        2.1.145   SunCal Plan Proponent(s).  The Voluntary Debtors and Acquisitions as

16  the parties-in-interest that are proposing the Plan.

17        2.1.146   Tax.  Any tax, charge, fee, levy, impost or other assessment by any

18  federal, state, local or foreign taxing authority, including, without limitation, income, excise,

19  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

20  estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

21  additions attributable to, or imposed on or with respect to such assessments.

22        2.1.147   Tax Claim.  Any Claim for any Tax to the extent that it is entitled to

23  priority in payment under Section 507(a)(8) of the Bankruptcy Code.

24        2.1.148   Trustee Debtor(s).  The following Debtors, individually or collectively,

25  that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

26  Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

27  Torrance, and SunCal Oak Knoll.

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1           2.1.149    Trustee Debtors' Committee. The Official Committee of Unsecured

2 Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

3 Bankruptcy Code.

4           2.1.150    Unpaid Secured Real Property Tax Claims. Secured Claims held by

5 various government entities secured by liens on the underlying real properties owned by the

6 Debtors but that are non-recourse to the Debtors.

7           2.1.151    Unsecured Claim. An Unsecured Claim is any Claim that is not an

8 Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

9           2.1.152    Voluntary Debtor(s). The following  Chapter 11 debtors and debtors-in-

10 possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

11 Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

12 Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

13 Rio and Tesoro.

14           2.1.153    Voluntary Debtors' Committee. The Official Committee of Unsecured

15 Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

16 Bankruptcy Code.

17           2.1.154    Winning Bid. The highest Qualifying Bid received for the Marblehead

18 Project or the Palm Springs Village Project.

19           2.1.155    Winning Bidder. The party that submits the highest Qualifying Bid.

20     **2.2**    **Rules of Construction.**

21       For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

22 in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

23 singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

24 masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

25 Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

26 such document or schedule, as it may have been or may be amended, modified or supplemented

27 pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

28 entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1    or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

2    and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

3    in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

4    the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

5    contract, instrument, release, indenture, agreement, or other document being in a particular form or

6    on particular terms and conditions means that such document shall be substantially and materially

7    in such form or substantially and materially on such terms and conditions; (h) any reference in the

8    Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

9    Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

10   may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

11   102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

12   express terms of the Plan or the Disclosure Statement or any other provision in the Section 2.2.

13       **2.3    Exhibits.**

14       All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

15   therein.

16                                            **III.**

17                        **TREATMENT OF UNCLASSIFIED CLAIMS**

18       **3.1    Introduction**. As required by the Bankruptcy Code, the Plan places Claims and

19   Interests into various Classes according to their right to priority. However, certain types of Claims

20   are not classified in any Classes under the Plan. These Claims are deemed "unclassified" under the

21   provisions of the Code. They are not considered impaired and they do not vote on the Plan,

22   because they are automatically entitled to specific treatment provided for them in the Code. As

23   such, the SunCal Plan Proponents have not placed the following Claims in a Class. The treatment

24   of these unclassified Claims is as provided below.

25       **3.2    Treatment of Allowed Administrative Claims.**

26       The Code requires that all Allowed Administrative Claims be paid on the later of Effective

27   Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

28   treatment. The treatment of Allowed Administrative Claims is as described below. However, such

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  Administrative Claims are continuing to be incurred. The Allowed Administrative Claims shall be

2  paid from the applicable Distribution Account(s) pursuant to the Acquisitions Administrative

3  Loan.

4        **3.3**     **Treatment and Repayment of the Lehman's Administrative Loan(s).**

5       The Lehman Disputed Administrative Loans shall be paid in full on the later of the

6  Effective Date, or the date any objections to the same are overruled by the Court leaving them

7  Allowed claims. Prior to payment, or until disallowed, these claims shall continue to be secured by

8  their existing liens against the respective Assets of the Trustee Debtors.

9       The Lehman Disputed Administrative Loans shall be paid in full, on the date referenced

10  above, from either 1) funds loaned to the Plan Trust by LitCo or another designated third party, or

11  2) from the funds in the applicable Net Sale Proceeds Account.

12        **3.4**     **Repayment of Allowed Administrative Claims Other than the Lehman**

13  **Administrative Loans.**

14       Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

15  different treatment and subject to the Administrative Claims Bar Date set forth herein, the

16  Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

17  (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

18  becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

19  becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative

20  Claim representing obligations incurred in the ordinary course of post-petition business by the

21  Debtors in Possession (including without limitation post-petition trade obligations and routine

22  post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the

23  ordinary course of business, in accordance with the terms of the particular obligation.

24        **3.5**     **Administrative Claims Bar Date.**

25       All applications for final compensation of Professionals for services rendered and for

26  reimbursement of expenses incurred on or before the Effective Date and all other requests for

27  payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

28  or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1   obligations and routine post-petition payroll obligations incurred in the ordinary course of the

2   Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

3   obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

4   upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

5   extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

6   of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

7   is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

8   any party that seeks payment of Administrative Claims that (i) is required to file a request for

9   payment of such Administrative Claims and (ii) does not file such a request by the deadline

10   established herein shall be forever barred from asserting such Administrative Claims against the

11   Debtors, the Plan Trust, their estates, or any of their property.

12       **3.6    Treatment of Unsecured Tax Claims.**

13       Tax Claims are certain unsecured income, employment and other taxes described by Code

14   Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

15   receive the present value of such Claim in deferred cash payments, over a period not exceeding

16   five (5) years from the petition date and that such treatment not be less favorable than the treatment

17   accorded to non priority unsecured creditors.

18       At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

19   entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

20   each three-month period following the Effective Date, during a period not to exceed five years

21   after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

22   unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

23   United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

24   the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

25   favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

26   forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

27

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

# IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. The Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under the Plan and states whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF HOLDERS OF UNPAID SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.[3]** |
| Class 1.1 | Contra Costa County as the Holder of an Unpaid Secured Real Property Tax Claim against the Delta Coves Project in alleged the amount of $406,976. | Delta Coves 16 |
| Class 1.2 | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Heartland Project in the alleged amount of $985,141. | SunCal Heartland 5 |
| Class 1.3 | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Oak Valley Project in the alleged amount of $175,158. | SunCal Oak Valley 9 |
| Class 1.4 | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Northlake Project in the alleged amount of $5,605,574. | Scheduled Amount |

---

[3] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

-28-

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| Class | Claims | Claim Nos. |
| Class 2.1 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against Delta Coves arising from the Delta Coves Loan Agreement in the asserted amount of $206,023,142. | Delta Coves 21 |
| Class 2.2 | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against SunCal Marblehead and SunCal Heartland, which claim is based upon funds allegedly advanced pursuant to the SunCal Marblehead/SunCal Heartland Loan Agreement. | SunCal Heartland 9 |
| Class 2.3 | The Holder of Lehman's Disputed Claims filed by OVC Holdings against SunCal Oak Valley arising from the SunCal Oak Valley Loan Agreement in the asserted amount of $141,630,091. | SunCal Oak Valley 16 |
| Class 2.4 | The Holder of Lehman's Dispute Claim Northlake Holdings against SunCal Northlake arising from the North Lake Loan Agreement in the asserted amount of $123,654,776 | |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS | | |
|---|---|---|
| Class | Claimant | Claim Nos. |
| Class 3.1 | The Holder of the disputed asserted Mechanic Lien Claim held by Hertz Equipment Rental Corporation against the Delta Coves Project in the amount of $25,444. | Delta Coves 2 |
| Class 3.2 | The Holder of the asserted Mechanic Lien Claim held by MBH Architects against the Delta Coves Project in the amount of $97,091. | Delta Coves 8 |
| Class 3.3 | The Holder of the asserted Mechanic Lien Claim held by Top Grade Construction, Inc. against the Delta Coves Project in the amount of $250,000. | Delta Coves 3 |
| Class 3.4 | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Heartland Project in the amount of $47,675. | SunCal Heartland 2 |

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS | | |
| --- | --- | --- |
| **Class** | **Claimant** | **Claim Nos.** |
| Class 3.5 | The Holder of the asserted Mechanic Lien Claim held by Pinnik, Inc. against the Heartland Project in the amount of $522,238,. | SunCal Heartland 8 |
| Class 3.6 | The Holder of the asserted Mechanic Lien Claim held by Dennis M. McCoy & Sons against the Heartland Project in the amount of $638,167. | SunCal Heartland 16 |
| Class 3.7 | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Oak Valley Project in the amount of $52,806. | SunCal Oak Valley 3 |
| Class 3.8 | The Holder of the asserted Mechanic Lien Claim held by Pinnik Inc. against the Oak Valley Project in the amount of $966,987. | SunCal Oak Valley 12 and 14 |
| Class 3.9 | The Holder of the asserted Mechanic Lien Claim held by Hillcrest Contracting Inc. against the Oak Valley Project in the amount of $136,567. | SunCal Oak Valley 23 |
| Class 3.10 | The Holder of the asserted Mechanic Lien Claim held by MacKenzie Landscape against the Oak Valley Project in the amount of $121,297. | SunCal Oak Valley 25 |
| Class 3.11 | The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Oak Valley Project in the amount of $60,355. | SunCal Oak Valley 26 |
| Class 3.12 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Oak Valley Project in the amount of $280,685. | SunCal Oak Valley 35 and 36 |

| CLASSIFICATION OF BOND INDEMNIFICATION CLAIMS | | |
| --- | --- | --- |
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Bond Claims arising from bonds issued with respect to the Del Coves Project. | Various Filed |
| **Class 4.2** | The holders of Bond Claims arising from bonds issued with respect the Heartland Project. | Various Filed |

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

| CLASSIFICATION OF BOND INDEMNIFICATION CLAIMS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.3** | The holders of Bond Claims arising from bonds issued with respect to the Oak Valley Project. | Various Filed |
| **Class 4.4** | The holders of Bond Claims arising from bonds issued with respect to the Northlake Project. | |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| Class 5.1 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against Delta Coves. | Various Filed and Scheduled |
| Class 5.2 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against SunCal Heartland. | Various Filed and Scheduled |
| Class 5.3 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against Oak Valley. | Various Filed and Scheduled |
| Class 5.4 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against Northlake. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 6.1 | The holders of Reliance Claims against Delta Coves. | Various Filed and Scheduled |
| Class 6.2 | The holders of Reliance Claims against SunCal Heartland. | Various Filed and Scheduled |

[4] Unsecured Claims are generally placed within the same class and they receive the same treatment under a Plan. However, the SunCal Proponents have divided Unsecured claims into two classes in the Plan. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The other Unsecured Creditors do not hold Reliance Claims.

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 6.3 | The holders of Reliance Claims against SunCal Oak Valley. | Various Filed and Scheduled |
| Class 6.4 | The holders of Reliance Claims against SunCal Northlake. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS | | |
|---|---|---|
| **Class** | **Claimant** | **Claim Nos.** |
| Class 7.1 | Claimants holding Allowed Unsecured Claims against Delta Coves that are not Reliance Claims. | Various Filed and Scheduled |
| Class 7.2 | Claimants holding Allowed Unsecured Claims against SunCal Heartland that are not Reliance Claims. | Various Filed and Scheduled |
| Class 7.3 | Claimants holding Allowed Unsecured Claims against Oak Valley that are not Reliance Claims. | Various Filed and Scheduled |
| Class 7.4 | Claimants holding Allowed Unsecured Claims against Northlake that are not Reliance Claims. | Various Filed and Scheduled |

| CLASSIFICATION OF INTEREST HOLDERS | | |
|---|---|---|
| **Class** | **Claimant** | **Scheduled** |
| Class 8.1 | Allowed Interests in Delta Coves held by Delta Coves Master JV LLC and LB/L-DUC III Master LLC. | Scheduled Amount |
| Class 8.2 | Allowed Interests in SunCal Heartland held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| Class 8.3 | Allowed Interests in SunCal Oak Valley held by SCLV Oak Valley, LLC and SCC/Oak Valley, LLC. | Scheduled Amount |
| Class 8.4 | Allowed Interests in SunCal Northlake held by SCLV Northlake, LLC and SCC/Northlake, LLC. | Scheduled Amount |

-32-

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1    The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims secured by Group III Projects (Classes 1.1, 1.2 and 1.3).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1, 1.2, 1.3 and 1.4 are not impaired under the Plan. Such claimants shall retain their existing lien rights and one of the following two non-impairment options shall apply, at the election of the Plan Trustee: 1) On the Effective Date, such claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2), or 2) on the Effective Date, or the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law.

**5.2    The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) (Classes 2.1, 2.2, 2.3 and 2.4).**

The Holder(s) of Disputed Secured Claims within Classes 2.1, 2.2, 2.3 and 2.4  shall receive the indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), through the following treatment:

A.    Lien Rights. The Class 2.1, 2.2, 2.3 and 2.4 Holder(s) shall retain their interest in the Disputed Lien(s) against Plan Trust Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the Allowance of such Disputed Secured Claims and determining the validity, priority and extent of the applicable Disputed Liens against the applicable Plan Trust Assets, which secure these claims, except as follows:

1.    The Plan Trust Assets subject to the Class 2.1, 2.2, 2.3 and 2.4 Disputed Liens may be sold free and clear of such liens on the Effective Date. These Disputed Liens shall then attach to the Net Proceeds from the sale, which shall be deposited into the Net Proceeds Account;

1.    To the extent that a Disputed Secured Claim held by either the Class 2.1, 2.2, 2.3 or 2.4 Claimants against either Group III Project is disallowed, and the Disputed Lien associated with this Disputed Secured Claim is consequently released to the extent of this disallowance, the Plan Trustee shall be authorized to use the Net Proceeds that are no longer

-33-

1    subject to the Disputed Lien(s) to pay other Allowed Claims in their order of priority, in

2    accordance with the terms of the Plan;

3           2.       To the extent that a Disputed Secured Claim held by either the Class

4    2.1, 2.2, 2.3 or 2.4 Claimant and the associated Disputed Lien(s) against either Group III Project

5    are subordinated, the Plan Trustee shall be authorized to use the Net Proceeds that are no longer

6    subject to the Disputed Lien(s) , or where the priority of the Disputed Liens has been subordinated

7    by the Court, to pay other Allowed Claims in their order of priority, in accordance with the terms

8    of the Plan, to the extent of the subordination; and

9           Notwithstanding the existence of the Disputed Secured Claims and the

10   Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Proceeds Account

11   subject to these claims and liens to pay the claims of other creditors in accordance with the terms

12   of the Plan, if the Class 2.1. 2.2, 2.3 and 2.4 claimants' interests in this property will remain

13   adequately protected after this release.

14           B.      Sale of Group III Projects. The Plan Trustee shall complete the sale of

15   Group III Projects on the Effective Date that are subject to the Holder(s)' Disputed Secured Claims

16   and Disputed Liens, free and clear of such claims and liens, through a sale that satisfies the

17   following conditions:

18           1.      The Group III Projects will be sold through a public auction after a

19   commercially reasonable marketing and advertising effort of at least sixty (60) days duration;

20           2.      The SunCal Plan Proponents shall have the right to provisionally

21   accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this

22   bidder a break-up fee (either the Oak Valley Project Break-up Fee, the Heartland Project Break-up

23   Fee or the Delta Coves Project Break-up Fee;

24           3.      Other Qualified Bidders shall have the right to overbid the Opening

25   Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must

26   be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be

27   equal to or in excess or the Minimum Increment;

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_1D.DOC

4.      The highest Qualifying Bid received from a Qualified Bidder, shall be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon payment of the Winning Bid, the Winning Bidder shall receive title to the applicable Group III Project free and clear of all monetary liens and encumbrances; and

5.      No bidder shall be allowed to submit or demand the acceptance of a "credit bid" based upon an existing claim or lien.

C.      Abandonment of Unsold Group III Project(s). If for any reason the Plan Trustee is unable to sell either or both Group III Projects on the Effective Date, they will be abandoned as of 11:59 p.m. on the Effective Date, and the Class 2.1, 2.2, 2.3 and 2.4 claimants shall be free to exercise any and all remedies that they may hold with respect to these Assets.

D.      Sale of Other Plan Trust Assets Subject To Liens of Class 2.1, 2.2, 2.3 and 2.4 Claimants. The Plan Trustee shall complete the sale of all other Plan Trust Assets that are subject to the Disputed Secured Claims and the Disputed Liens of the Class 2.1, 2.2, 2.3 and 2.4 claimants Liens and Disputed Claims, free and clear of such claims and liens, through a sale that satisfies the following conditions:

1.      Such Assets will be sold through a public auction after a commercially reasonable marketing and advertising effort of at least thirty (30) days duration;

2.      The Committee shall approve the terms of the sale;

3.      The sale will be held and completed within ninety (90) days of the Effective Date;

4.      No bidder may submit or demand the acceptance of a "credit bid" based upon an existing claim or lien; and

5.      All Net Sale Proceeds generated from such sales shall be deposited into the applicable Net Sales Proceeds Account with all Disputed Claims and Disputed Liens attached thereto.

E.      Abandonment of Assets Other Than Group III Projects. All Asset(s), other than the Litigation Claims (which shall be retained), that are not sold within ninety (90) days of the Effective Date shall be deemed abandoned by the Plan Trust as of the ninety-first (91st) day after

1  the Effective Date, no payment shall be made to such Holder(s), and such Holder(s) shall be

2  allowed to pursue their respective rights and remedies against such assets under applicable law

3  subject to a Final Order determining the allowance and priority of the Disputed Claims and the

4  validity of the Disputed Liens in, including but not limited to, the Lehman Adversary Proceeding

5  and the Lehman Claims Objections.

6          F.     Distributions To The Class 2.1, 2.2, 2.3 and 2.4 Claimants. If the Plan

7  Trustee consummates a sale or otherwise liquidates the particular Asset(s) subject to the Class 2.1,

8  2.2, 2.3 and 2.4 Disputed Secured Claim(s) and/or Disputed Lien(s) during the Sales Period, as

9  provided for above, the Holder(s) of such Disputed Secured Claim shall receive a distribution to

10  the extent of available funds from the applicable Net Sale Proceeds Account(s) to the extent

11  required by a Final Order determining the allowance and priority of the Disputed Secured Claims

12  and the validity, priority and extent of the Disputed Liens in, including but not limited to, the

13  Lehman Adversary Proceeding and the Lehman Claims Objections.

14      **5.3**    **The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against**

15            **the Group III Projects Subject to Lehman's Disputed Claims (Classes 3.1**

16            **Through 3.12).**

17      The treatment of the Holders of Allowed Classes 3.1 through 3.12 Secured Claims under

18  the Plan shall be as follows:

19          A.     The Holder(s)' rights are impaired under the Plan;

20          B.     The Holder(s) shall retain their respective underlying liens on the applicable

21  Group III Project(s), but shall forebear from pursuing their rights and remedies until the expiration

22  of the Sales Period;

23          C.     If the Plan Trustee is able to consummate a sale of the Group III Projects

24  subject to the liens asserted by the Holders of Class 3.1 through 3.12 claims  during the Sales

25  Period, such Holders shall receive a distribution, to the extent of available, of Net Sale Proceeds in

26  accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s)

27  resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

2  Proceeding; and

3        D.    If the Plan Trustee is unable to consummate a sale of the applicable Group

4  III Project(s) during the Sales Period, such projects shall be deemed abandoned by the Plan

5  Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to

6  pursue their respective rights against these project(s) under applicable California law.

7       **5.4**    **The Plan's Treatment of Holders of Bond Indemnification Claims (Class 4.1 to**

8          **4.4).**

9      The rights of each holder of an Allowed Bond Indemnification Claim arising from a bond

10  issued with respect to a Group III Project, shall, to the extent such claim(s) are determined to be a

11  secured claim(s), be impaired under the Plan. Such claims shall receive the following treatment:

12        A.    Each such Allowed Secured Claim shall be placed in a separate class and

13  receive a separate ballot for voting purposes;

14        B.    Each Holder(s) shall retain their respective underlying liens on the

15  applicable Group III Project(s), but shall forebear from pursuing their rights and remedies until the

16  expiration of the Sales Period;

17        C.    If the Plan Trustee is able to consummate a sale of the Group III Projects

18  subject to the liens asserted by the Holders of Class 4.1, 4.2, 4.3 and 4.4 claims during the Sales

19  Period, such Holders shall receive a distribution, to the extent of available, Net Sale Proceeds in

20  accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s)

21  resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity

22  of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

23  Proceeding and; and

24        D.    If the Plan Trustee is unable to consummate a sale of the applicable Group

25  III Project(s) during the Sales Period, such projects shall be deemed abandoned by the Plan

26  Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to

27  pursue their respective rights against these project(s) under applicable California law.

28

-37-

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

**5.5    The Plan's Treatment of Holders of Priority Claims (Classes 5.1, 5.2, 5.3 and 5.4).**

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

      A.    The Holder(s) are unimpaired under the Plan; and

      B    The Holder(s) shall be paid from either the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.6    The Plan's Treatment of Holders of General Unsecured Claims that are Reliance Claims (Classes 6.1, 6.2, 6.3 and 6.4).**

The rights of Holders of Allowed Class 6.1, 6.2, 6.3 and 6.4 Claims are impaired under the Plan. A claimant will 1) receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the Lehman Entities, and retain its right to receive such claimant's share, as determined by the Court, of recoveries or other relief granted pursuant to any judgment or order entered in the Lehman Adversary Proceeding, the State Court Action, or with respect to the Lehman Claims Objections, and 3) right to receive a pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

**5.7    The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims (Classes 7.1, 7.2, 7.3 and 7.4).**

The rights of Holders of Allowed Class 7.1, 7.2, 7.3 and 7.4 Claims are impaired under the Plan. Under the Plan, each claimant will 1) receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims

-38-

1 │ and any sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class

2 │ 6.1, 6.2, 6.3 and 6.4 Claims from either the Claim Reduction Amounts or on account of a judgment

3 │ in the Lehman Adversary Proceeding.

4 │     **5.8**   **The Plan's Treatment of Holders of Allowed Interests.**

5 │     The Interests of the Holders in Class 8.1, 8.2, 8.3 and 8.4 are impaired under the Plan. All

6 │ such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these

7 │ Holders on account of such Interest(s).

8 │ **VI.**

9 │ **ACCEPTANCE OR REJECTION OF THE PLAN**

10 │     **6.1**   **Introduction.**

11 │     PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

12 │ SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

13 │ CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

14 │ discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

15 │ which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors

16 │ cannot represent that the discussion contained below is a complete summary of the law on this

17 │ topic.

18 │     Many requirements must be met before the Court can confirm the Plan. Some of the

19 │ requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

20 │ the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

21 │ whether the Plan is feasible. The requirements described herein are not the only requirements for

22 │ confirmation.

23 │     **6.2**   **Who May Object to Confirmation of the Plan.**

24 │     Any party in interest may object to the confirmation of the Plan, but as explained below not

25 │ everyone is entitled to vote to accept or reject the Plan.

26

27

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

**6.3    Who May Vote to Accept/Reject the Plan.**

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class. The votes will be tabulated on a Debtor by Debtor basis.

**6.4    What Is an Allowed Claim/Interest.**

As noted above, a Holder of a Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

**6.5    What Is an Impaired Class.**

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtors believe that all Classes, except for Class 1.1 to 1.4 and 5.1 to 5.4 are impaired.

**6.6    Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except Class 1.1, 1.2, 1.3 and 1.4 and 5.1, 5.2, 5.3 and 5.4. These classes are not impaired under the Plan and consequently are not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Classes 8.1, 8.2, 8.3 and 8.4 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

### 6.7    Who Can Vote in More than One Class.

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

### 6.8    Votes Necessary for a Class to Accept the Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

### 6.9    Treatment of Nonaccepting Classes.

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

### 6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any impaired Class if such Class does not vote to accept the Plan.

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

## VII.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### 7.1    Introduction.

This section is intended to address how the SunCal Plan Proponents intend to implement the provisions of the Plan. It addresses the transfer of the Plan Trust Property to the Plan Trust, the nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the resolution of disputed claims, the sources of funds that will be used to pay claims and the mechanics of how claims will be paid.

### 7.2    Sale Process After Confirmation Date But Prior To Effective Date.

The core objective of the Plan is to enable all creditors holding Allowed Claims to receive the highest dividend possible by selling the estates' primary assets, the Group III Projects, to the highest bidder. The process of marketing the Group III Projects for sale will begin, pursuant to the Confirmation Order, immediately after the entry of this order. Although the Chapter 11 Trustee will not be formally removed under the Plan until the Effective Date, he will be required to work with the SunCal Proponents after the Confirmation Date to promote and facilitate the sale of the Group III Projects in accordance with the Plan terms.

The SunCal Proponents will pursue the following sale procedures after the Confirmation Date:

A.    Implementation of a marketing program. Once the Plan is confirmed, the SunCal Proponents will market the Group III Projects for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group III Project to the real estate brokerage community; b) advertising the Group III Projects for sale on a website that includes links allowing direct access to all relevant information regarding the Group III Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

B.    Identifying a Stalking Horse Bidder. During the Sale Period, the SunCal Parties will accept, on a provisional basis, an Opening Bid for one or both of the Group III Projects. The bidder whose Opening Bid is accepted will become the "Stalking Horse Bidder." The

1   Opening Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group III

2   Project.

3          C.     The Sale Contract. The sale contract that will be entered into with the

4   Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

5             1.     Overbid Provisions. The contract will allow the SunCal Proponents

6   to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the

7   Stalking Horse Bid by the Initial Overbid Amount applicable to each Group III Project.

8             2.     A Break-Up Fee. The sale contract will include a "break-up fee"

9   provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and

10   another Qualified Bidder purchases the Group III Project(s) that is the subject of the Opening Bid.

11             3.     Sale Free And Clear of Liens. The sale contract will provide that the

12   Group III Project(s) are being sold free and clear of all monetary liens and encumbrances and that

13   no party holding a lien against the projects, including the Lehman Lenders, may submit a "credit

14   bid" based upon the amount allegedly owing on the claims secured by the project being sold.

15          D.     The Auction. Thirty (30) days prior to the Effective Date, the SunCal

16   Proponents will conduct an auction wherein all Qualified Bidders who have submitted Qualified

17   Bids for the Group III Projects will have the opportunity to increase their bids for these Projects.

18   The Qualified Bidder that submits the highest bid for the Project will then be designated the

19   Winning Bidder. The Winning Bidder will then have thirty (30) days to close this purchase

20   transaction by paying the Winning Bid amount. Once the Winning Bidder advises the SunCal Plan

21   Proponents that they are ready to close, the sequence of events described in paragraphs 7.3 through

22   7.5 shall be implemented.

23        The entire process of marketing and selling the Group III Projects will be overseen by an

24   independent real estate professional with experience managing sales of this kind. This professional

25   will participate in every material aspect of the sale effort, and he or she shall have the right to file

26   an objection to the sale effort with the Court if the process is not proceeding in a fair and effective

27   manner.

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

**7.3**    **Removal of Chapter 11 Trustee**.

As of the Effective Date, the appointment of the Chapter 11 Trustee in the SunCal Oak Valley, SunCal Heartland and Delta Coves Cases shall terminate, and possession and control over all property within these estates shall pass to the Plan Trust.

**7.4**    **Transfer of Property To The Plan Trust**.

On the Effective Date, title to and possession of all property of the Group III: Trustee Debtors, excepting those items of property that the Plan Trustee affirmatively elects not to transfer to the Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or action under any applicable agreement, law, regulation, order or rule of law.

**7.5**    **Purposes of The Plan Trust**.

The Plan Trust's purposes, powers and objectives include, but are not limited to the following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust Property for the highest return reasonably obtainable; (ii) to pursue all Litigation Claims through collection efforts, including through litigation in any court of competent jurisdiction, and to obtain the most favorable recovery on the same, with due consideration of all relevant factors, including cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy Court; (iv) to take such other actions as are necessary or useful to maximize the value of all property received by the Plan Trust; (v) to make the payments and distributions to creditors and holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the terms of the Plan, including but not limited to selling the Group III Projects and the Assets. A more complete statement of the Plan Trust's powers and limitations is set forth in the Plan Trust Agreement, which is a part of the Plan Supplement.

It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a "liquidating trust," with the primary objective of liquidating the Plan Trust Property and distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a

1  trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding

2  anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on

3  behalf of the Plan Trust shall be consistent with such primary objective.

4      **7.6    Trust Agreement**.

5      Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan

6  Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the

7  initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the

8  authorities and powers of the Plan Trustee, consistent with this Plan.

9      **7.7    Operations of the Plan Trust**.

10     From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan

11  Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the

12  Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of

13  the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than

14  restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Trust Agreement,

15  provided that the Plan Trust is administered so that it qualifies as a liquidating trust under Treasury

16  Regulation § 301.7701-4(d).

17     **7.8    The Plan Trustee**.

18     Acquisitions shall be Trustee of the Plan Trust. Acquisitions is the direct or indirect parent

19  of all of Debtors.

20     **7.9    Payment of Trust Expenses**.

21     The expenses incurred by the Plan Trust during the Plan Period, which shall include the

22  compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

23  the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

24     **7.10    Plan Distribution System**.

25     The Plan Trustee shall establish a separate "Distribution Account" for each Group III

26  Debtor at an FDIC insured bank. Each Group III: Trustee Debtor's Available Cash, whether on

27  hand as of the Effective Date or received thereafter, shall be deposited into that Group III: Trustee

28  Debtor's Distribution Account. The only exception to this provision shall be in the case of Net

-45-

1   Sales Proceeds that are subject to disputed liens. Such proceeds shall remain in the applicable Net

2   Proceeds Accounts established to receive the proceeds from the sale of a particular property. Once

3   all disputes regarding entitlement to the funds in the Net Proceeds Accounts have been resolved,

4   the proceeds remaining (after the payment of the Allowed Claims secured by liens on these

5   proceeds) shall be transferred to the Distribution Account. These funds will then be used to pay the

6   claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.

7        **7.11    Claims Estimation Rights**.

8        On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a

9   motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

10  motion the estimation, for distribution purposes, of any Disputed Claim seeking recourse to, or

11  claiming an interest in, any asset of the Group III: Trustee Debtors. After the Bankruptcy Court

12  estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

13  the Committee shall have the right to use any funds or assets not deemed subject to the rights of the

14  Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

15  Administrative Claims, after the Effective Date.

16       **7.12    No Payment of Transfer-Related Fees to the United States Trustee**.

17       The Plan Trust shall not be required to pay any fees to the United States Trustee based on

18  any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

19       **7.13    No Payment of Transfer-Related Fees to the Trustee**.

20       The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of

21  Plan Trust Property from the Trustee Debtors to the Plan Trust, or from the Plan Trust.

22       **7.14    Books and Records of Trust.**

23       The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent,

24  the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

25  Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

26  for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

27  that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

28  the Plan Trusts books and records at such time as Plan Trust has no further need for such books

-46-

1    and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

2    upon written request by the Committee.

3        **7.15    Limitations on Liability**.

4        The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating

5    trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan

6    Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising

7    out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless

8    such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

9        The Plan Trustee, and its officers, directors, agents and employees shall not be liable for

10   any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust,

11   including, without limitation, indebtedness, liabilities or obligations under agreements,

12   undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee

13   or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all

14   such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole

15   responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall,

16   under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may

17   be asserted against the Plan Trustee, or any member of the New Board on account of any

18   indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or

19   equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.

20       Any undertaking, contract or agreement entered into in writing by the Plan may, except as

21   otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal

22   liability of Plan Trustee.

23       **7.16    Federal Income Tax Treatment of the Holders of Plan Trust Beneficial**

24   **Interests**.

25       For all United States federal income tax purposes, the transfers by the Group III: Trustee

26   Debtors shall be treated by the Group III: Trustee Debtors, their estates, the Plan Trust and the Plan

27   Trust Beneficiaries as a transfer of the Plan Trust Property by the Group III: Trustee Debtors to the

28   Plan Trust Beneficiaries followed by a transfer of the Plan Trust Property by such the Plan Trust

-47-

1  Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed

2  owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and

3  the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Property

4  consistently with the values placed upon the Plan Trust Property by the Plan Trust, and to use such

5  valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the

6  Plan Trust Property by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide

7  that the Plan Trust will determine the fair market value of the Plan Trust Property within thirty (30)

8  days after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By

9  its acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively

10  deemed to agree to use such valuations for all purposes, including, without limitation, in

11  computing any gain recognized upon the exchange of such holder's claim for purposes of

12  determining any United States Federal income tax, and shall be required to include those items of

13  income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

14  its taxable income.

15        **7.17**   **Termination of the Trust.**

16        The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

17  Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

18  the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

19  Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

20  with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

21  party have been concluded by dismissal or an order issued by the court in which such litigation is

22  pending and such order has become "final" (consistent with the definition of Final Order in this

23  Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

24  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

25  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

26  period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

27  of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

28

1   consider and rule on the request within six (6) months prior to the expiration of the initial five-year

2   term.

3       **7.18**    **Exemption from Certain Transfer Taxes**.

4       In accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer or

5   exchange of a security or the making or delivery of an instrument of transfer under this Plan may

6   not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

7   agents shall forego the assessment and collection of any such tax or governmental assessment and

8   shall accept for filing and recordation any of the foregoing instruments or other documents without

9   payment of such tax or other governmental assessment.

10      **7.19**    **The Plan Sponsor**.

11      The Plan Sponsor shall be Acquisitions.

12      **7.20**    **Acquisitions' Obligations**.

13      As part of its obligations as the Plan Sponsor, Acquisitions will manage the affairs of the

14  Plan Trust and manage the payment of the following amounts required under the Plan:

15          A.    All Allowed Administrative Claims;

16          B.    Allowed Priority Claims; and

17          C.    Continuing Professional fees for the prosecution of the Litigation Claims

18          and other post-confirmation expenses

19      The actual source of the funding for these obligations will either be funds obtained from the

20  Net Sales Proceeds, or from the LitCo Plan Loan. In exchange for the above referenced services,

21  Acquisitions, and all of its Affiliates shall receive a complete release from all of the Debtors, the

22  Estates, and the Plan Trust of any potential Litigation Claims. The Group III: Trustee Debtors

23  consider this a fair exchange, because they do not believe that they hold any material claims

24  against Acquisitions.

25      **7.21**    **The Committee**.

26      On the Effective Date, the Committee shall continue to serve their applicable Debtors as

27  Committee to the applicable reorganized Debtors, subject to the following:

28

-49-

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

### 17.21.1    Duties and Powers.

The duties of the Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, standing to object to any settlement of any Litigation Claim in excess of $100,000, and standing to object to any proposed sales procedures on sale of the Debtors' Projects. The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Committee under the terms of the Plan.  Such compensation shall be paid from the applicable Distribution Account(s).

### 17.21.2    Dissolution of Committee.

The Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Confirmation Committee shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

### 7.22    Litigation Claims.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo. Unless a Litigation Claim is expressly waived, relinquished, released, sell, compromised or settled in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may pursue such Litigation Claims.  The Group III: Trustee Debtors are potential plaintiffs in the State Court Action, and such claims constitute property of their estates.  If the Plan is Confirmed, the Plan Trustee and/or the Group III: Trustee Debtors reserve the right to join the State Court Action as additional plaintiffs.

Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written notice and opportunity to object to the Committee.  Any disputes concerning the settlement or abandonment

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1   of a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten

2   (10) days' notice to the objecting party.

3       **7.23**   **Collection of Litigation Recoveries.**

4       All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Committee

5   shall be promptly deposited into the applicable Distribution Account(s). Except as otherwise

6   provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear

7   of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

8                          **VIII.**

9                   **RISK FACTORS**

10      **8.1**   **Plan Risks**.

11       The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks

12   that creditors should be aware of prior to voting on the Plan. The more material of these risks are

13   summarized below.

14       **8.1.1**   **The Plan May Not Be Accepted or Confirmed.**

15       While the SunCal Proponents believe that the Plan is confirmable under the

16   standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will

17   find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan

18   can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no

19   assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be

20   converted to a liquidation, or that any alternative plan of reorganization could or would be

21   formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the

22   Plan.

23       **8.1.2**   **Adverse Outcome of Pending Litigation.**

24       The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders,

25   and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once

26   they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Proponents

27   believe that their defenses to the claims asserted by the Lehman Lender have merits and that they

28   will be sustained and that relief will also be granted in the Lehman Adversary Proceeding.

1   However, there is no assurance that this will occur. Litigation involves risks, including most

2   importantly the risk of an adverse ruling.

3                    **8.1.3   Risks Associated With Lehman Disputed Administrative Loans**.

4            The SunCal Proponents will be filing objections to the Lehman Disputed Administrative

5   Loans. Since these loans were approved by an order of the Court, the SunCal Proponents ability to

6   object to these claims may be limited to damages arising from wrongs that occurred after these

7   loan were approved. If these objections are not successful, the sums owed on account of the

8   Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or

9   on the date that they are allowed. If the SunCal Proponents are not allowed to use the Net Proceeds

10  from the sale of the Group III Projects to pay these obligations and they are unable to pay these

11  claims from their own resources, or through funding or financing provided by third parties, the

12  Plan will fail.

13                                    **IX.**

14                              **DISTRIBUTIONS**

15           **9.1    Distribution Agent.**

16           Acquisitions shall serve as the Distribution Agent for distributions due under the Plan. The

17  Distribution Agent may employ one or more sub agents on such terms and conditions as it may

18  agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

19  Distribution Accounts. The Distribution Agent shall not be required to provide any bond in

20  connection with the making of any Distributions pursuant to the Plan.

21           **9.2    Distributions.**

22                    **9.2.1   Dates of Distributions.**

23           Any distribution required to be made on the Effective Date shall be deemed timely if made

24  as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any

25  distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

26  longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

27

28

                                        -52-

### 9.2.2    Limitation on Liability.

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions made pursuant to the Plan resulting from any delays in making such distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

### 9.3    Old Instruments and Securities.

### 9.3.1    Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

### 9.3.2    Cancellation of Liens.

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

### 9.3.3    De Minimis Distributions and Fractional Shares.

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not

1 distributed as a consequence of this section shall, after the last distribution on account of Allowed

2 Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### 9.3.4    Delivery of Distributions.

4     Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders

5 of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows: (1)

6 with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for

7 such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each

8 Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the

9 Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has

10 received a written notice of a change of address for such Holder, the address set forth in such

11 notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

12 such address as the Holder may specify in writing.

### 9.3.5    Undeliverable Distributions.

14     If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

15 Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

16 such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

17 shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

18 Holder's then current address. Subject to the remainder of this Section and the following section,

19 Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and

20 shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash

21 Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject

22 Distribution becomes deliverable. Nothing contained in the Plan shall require the Plan Trustee or

23 any other Person to attempt to locate such Person.

### 9.3.6    Disposition of Unclaimed Property.

25     If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a

26 Distribution of Unclaimed Property within ninety (90) days following such Person's initial

27 Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together

28 with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as

1  practicable. Any Holder of an Allowed Claim that does not assert a Claim in writing for

2  Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial

3  Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and

4  shall be forever barred from receiving any distributions under the Plan or otherwise from the Plan

5  Trustee. In such cases, any property held for Distribution on account of such Claims shall become

6  Available Cash and deposited into the Distribution Account.

7                                    **X.**

8                **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

9       **10.1    Standing for Objections to Claims.**

10      The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

11  objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall

12  be vested with the applicable Committee. The applicable Committee shall have standing to object

13  to any settlement of any Litigation Claim in excess of $100,000 and standing to object to any

14  proposed sales procedures and sale of the Debtors' Projects.

15      Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person

16  holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall

17  have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the

18  Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

19      **10.2    Treatment of Disputed Claims and Disputed Liens.**

20              **10.2.1  No Distribution Pending Allowance.**

21              If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

22  or distribution provided for under the Plan shall be made on account of such Claim or Lien unless

23  and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

24              **10.2.2  Distribution After Allowance.**

25              On the next Distribution Date following the date on which a Disputed Claim

26  becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

27  distribute to the Person holding such Claim any Cash that would have been distributable to such

28

1   Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

2   Disputed Claim.

3                                          XI.

4                    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5       **11.1    Executory Contracts.**

6           The SunCal Proponents shall provide a list of those contracts that being assumed or

7   rejected under the Plan in the Plan supplement. However, this list may be amended at any time

8   prior to the Effective Date.  All contracts or leases not assumed by the Effective Date shall be

9   deemed rejected.

10      **11.2    Bar Date for Rejection Damages.**

11          Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

12  forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates,

13  their successors, or their properties, and shall not be entitled to any distribution under the Plan,

14  unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within

15  thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

16      **11.3    Changes in Rates Subject to Regulatory Commission Approval.**

17          The Debtors are not subject to governmental regulatory commission approval of their rates.

18                                         XII.

19                    **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

20      **12.1    Best Interests Test.**

21          Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless

22  the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and

23  Interests who have not accepted the plan and whose Claims are classified in Classes that are

24  impaired under the plan, are not less than those which they would receive in a liquidation under

25  Chapter 7 of the Bankruptcy Code.

26          The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each

27  impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis.

28  The Best Interests Test requires the Bankruptcy Court to find either that either (i) all Holders of

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1 Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder

2 of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property

3 of a value, as of the effective date of the Plan, that is not less than the amount that such Holder

4 would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

5      The Plan proposed by the Plan Proponents is essentially a liquidating plan. It provides for

6 the sale of all assets of the estate for their fair market value, the collection or recovery of all other

7 assets, and for the distribution of the resulting net proceeds from the sale, in accordance with the

8 priorities provided for in the bankruptcy code and under California law. A Chapter 7 trustee

9 appointed in this case would be compelled to liquidate the Debtors' assets in the same manner as

10 provided for in the Plan and to pay out the proceeds in the same manner as provided for in the

11 Plan. Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as

12 much" as such creditor would receive in a Chapter 7 case, which is all that is required under the

13 Best Interests Test.

14      Although the Lehman Entities will argue that they are being denied their "credit bid" rights

15 under the Plan, and this reduces their distribution below the level that they would receive in a

16 Chapter 7 case, this argument fails. A credit bid right does not add or reduce the value of a

17 creditor's collateral, it simply allows a creditor holding such a right to bid against other bidders

18 using its debt as "credit", rather than bidding in cash. If the creditor's collateral is sold for its "fair

19 market value," in cash, and the creditor receives what it is entitled to from the sales proceeds, then

20 the creditor is necessarily receiving exactly what it would receive in a Chapter 7. This is all that the

21 Best Interest Test Requires. See Exhibit "7" to the Disclosure Statement.

22     **12.2**   **Feasibility**.

23      In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

24 of the Plan is not likely to be followed by the liquidation or the need for further financial

25 reorganization of the Debtor(s). This requirement is imposed by Section 1129(a)(11) of the

26 Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

27 the Debtors' Plan provides for the sale of all assets of their respective estates and for the

28 distribution of the proceeds. Within the context of this Plan, feasibility is limited to having

1  sufficient funds to pay administrative and priority claims on the Effective Date and sufficient funds

2  to fund the sale of the Properties.

3      Under timeline provided for in the Plan, the Group III Project will be sold on the Effective

4  Date. The Net Proceeds from these sales, plus the proceeds of the LitCo Plan Loan, will provide

5  the Debtors the means to pay all claims, including allowed administrative and priority claims on

6  this same date, from escrow. All remaining claimants will then receive what they are entitled under

7  the Plan when their claims are allowed.

8                                   **XIII.**

9                       **LIMITATION OF LIABILITY**

10     **13.1    No Liability for Solicitation or Participation.**

11     As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

12  rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

13  offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

14  the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

15  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

16  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

17                                   **XIV.**

18                   **CONDITIONS TO CONFIRMATION AND**

19                   **EFFECTIVENESS OF THE PLAN**

20     **14.1    Conditions Precedent to Plan Confirmation.**

21     The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

22  have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

23  Proponents.

24     **14.2    Conditions Precedent to Plan Effectiveness.**

25     The conditions precedent to the effectiveness of the Plan and the occurrence of the

26  Effective Date is that the Confirmation Order shall be a Final Order in form and substance

27  reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material

28  impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1    cases. The automatic stay in the Debtors cases shall continue to be applicable until the Effective

2    Date.

3                                         **XV.**

4                **RETENTION OF JURISDICTION**

5        Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

6    Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's

7    jurisdiction shall apply to the fullest extent possible under applicable law.

8                                          **XVI.**

9          **MODIFICATION OR WITHDRAWAL OF THE PLAN**

10        **16.1**    **Modification of Plan.**

11        At any time prior to confirmation of the Plan, the former Debtor(s) may supplement, amend

12    or modify the Plan. After confirmation of the Plan, the Debtors or Plan Trustee may (x) apply to

13    the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and

14    (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile

15    inconsistencies in the Plan.

16        **16.2**    **Nonconsensual Confirmation.**

17        In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

18    accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may

19    request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

20    Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

21    accordance with Section 1127(a) of the Bankruptcy Code.

22                                          **XVII.**

23                        **MISCELLANEOUS**

24        **17.1**    **Payment of Statutory Fees.**

25        All quarterly fees due and payable to the Office of the United States Trustee pursuant to

26    Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

27    Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

28    been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

1  Bankruptcy Code. The Plan Trustee shall remain responsible for timely payment of quarterly fees

2  due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent

3  required by Section 1930(a)(6) of title 28 of the United States Code.

4      **17.2    Payment Dates.**

5      Whenever any payment or distribution to be made under the Plan shall be due on a day

6  other than a Business Day, such payment or distribution shall instead be made, without interest, on

7  the immediately following Business Day.

8      **17.3    Headings.**

9      The headings used in the Plan and Disclosure Statement are inserted for convenience only

10 and neither constitutes a portion of the Plan or the Disclosure Statement nor in any manner affect

11 the construction of the provisions of the Plan or the Disclosure Statement.

12     **17.4    Other Documents and Actions.**

13     The Plan Trustee may execute such other documents and take such other actions as may be

14 necessary or appropriate to effectuate the transactions contemplated under the Plan.

15     **17.5    Notices.**

16     All notices and requests in connection with the Plan and the Disclosure Statement shall be

17 in writing and shall be hand delivered or sent by mail addressed to:

18
19     **To the SunCal Plan Proponents:**
       Bruce V. Cook
       General Counsel
20     Authorized Agent of the SunCal Plan Proponents
       2392 Morse Ave
21     Irvine, CA 92614-6234

22
       **With copies to:**
23     Paul J. Couchot
       Winthrop & Couchot, Professional Corporation
24     660 Newport Center Drive, Suite 400
       Newport Beach, CA 92660
25

26     Ronald Rus
       Rus Miliband & Smith A Professional Corporation
27     2211 Michelson Drive, Seventh Floor
       Irvine, California 92612
28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1       All notices and requests to any Person holding of record any Claim or Interest shall be sent

2   to them at their last known address or to the last known address of their attorney of record.  Any

3   such Person may designate in writing any other address for purposes of this Section, which

4   designation will be effective on receipt.

5       **17.6**   **Governing Law.**

6       Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy

7   Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

8   law rules) shall govern the construction and implementation of the Plan and any agreements,

9   documents, and instruments executed in connection with the Plan, unless otherwise specifically

10   provided in such agreements, documents, or instruments.

11       **17.7**   **Binding Effect.**

12       The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

13   the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests,

14   and their respective successors and assigns.

15       **17.8**   **Successors and Assigns.**

16       The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

17   binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

18   assigns of such entity.

19       **17.9**   **Severability of Plan Provisions.**

20       If, prior to the Confirmation Date, any term or provision of the Plan is held by the

21   Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

22   constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

23   consent of the Debtors, have the power to interpret, modify or delete such term or provision (or

24   portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

25   with the original purpose of the term or provision held to be invalid, void or unenforceable, and

26   such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding

27   any such interpretation, modification or deletion, the remainder of the terms and provisions of the

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

1  Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or
2  deletion.

3      **17.10  No Waiver.**

4      The failure of the Debtors or any other Person to object to any Claim for purposes of voting
5  shall not be deemed a waiver of the Committee', the Debtors' or the Plan Trustee's right to object
6  to or examine such Claim, in whole or in part.

7      **17.11  Inconsistencies.**

8      In the event the terms or provisions of the Disclosure Statement are inconsistent with the
9  terms and provisions of the Plan or documents executed in connection with the Plan, the terms of
10  the Plan shall control.

11      **17.12  Exemption from Certain Transfer Taxes and Recording Fees.**

12      Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the
13  Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the
14  transfer of title to or ownership of any of the Debtors' real or personal property or of any other
15  interest in such property (including, without limitation, a security interest) will not be subject to
16  any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,
17  stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or
18  recording fee, or other similar tax or governmental assessment, and the Confirmation Order will
19  direct the appropriate state or local governmental officials or agents to forego the collection of any
20  such tax or governmental assessment and to accept for filing and recordation any of the foregoing
21  instruments or other documents without the payment of any such tax or governmental assessment.

22      **17.13  Post-Confirmation Status Report.**

23      Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a
24  status report with the Court explaining what progress has been made toward consummation of the
25  confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest
26  unsecured creditors, and those parties who have requested special notice.  Unless otherwise
27  ordered, further status reports shall be filed every 180 days and served on the same entities.

28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

**17.14  Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan Trustee reserves the right to object to any motion for conversion or dismissal.  If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**17.15  Final Decree.**

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of such Debtor.

Date:  June 20, 2011

By: _____ /s/ Bruce Cook _____
　　　　　　Bruce Cook
　　　　　　General Counsel, Authorized Agent for the
　　　　　　Voluntary Debtors and Acquisitions

**Submitted By:**

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: /s/ Paul J. Couchot
　　　　Paul J. Couchot,
　　　　General Insolvency Counsel for
　　　　the Voluntary Debtors

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By: _/s/ Ronald Rus
　　　　Ronald Rus, Esq.
　　　　Joel S. Miliband, Esq.
　　　　Cathrine Castaldi, Esq.
Attorneys for SunCal Management, LLC and
SCC Acquisitions Inc.

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **FIRST AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK VALLEY, LLC, SUNCAL HEARTLAND, LLC, DELTA COVES VENTURE LLC AND LBL-SUNCAL NORTHLAKE, LLC [GROUP III: TRUSTEE DEBTOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Susan Connor | |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

**NEF SERVICE LIST**

1

2
- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
3
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
4
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
5
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
6
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
7
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
8
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
9
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
10
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
11
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
12
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
13
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
14
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
15
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
16
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
17
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
18
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
19
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
20
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
21
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
22
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
23
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
24
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
25
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
26
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
27
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
28
- Michelle Hribar    mhribar@rutan.com

MAINDOCS #163444-v1-SCC_Plan_Group_3_TD.DOC

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC

- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#163444-v1-SCC_Plan_Group_3_TD.DOC