1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")
5
   RONALD RUS - State Bar No. 67369
6  JOEL S. MILIBAND - State Bar No. 77438
   RUS MILIBAND & SMITH
7  A PROFESSIONAL CORPORATION
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile: (949) 252-1514
   Counsel for SunCal Management LLC and
10 SCC Acquisitions Inc.

11              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12                     **Santa Ana Division**

   In re                              | Case No. 8:08-bk-17206-ES
13 PALMDALE HILLS PROPERTY, AND ITS
   RELATED DEBTORS,                      Jointly Administered With Case Nos.
14                                       8:08-bk-17209-ES; 8:08-bk-17240-ES;
           Joint Administered Debtors and  8:08-bk-17224-ES; 8:08-bk-17242-ES;
15          Debtors-in-Possession          8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                           8:08-bk-17227-ES; 8:08-bk-17246-ES;
16 Affects:                               8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                          8:08-bk-17236-ES; 8:08-bk-17248-ES;
17 ☐ All Debtors                          8:08-bk-17249-ES; 8:08-bk-17573-ES;
   ☐ Palmdale Hills Property, LLC         8:08-bk-17574 ES; 8:08-bk-17575-ES;
18 ☒ SunCal Beaumont Heights, LLC         8:08-bk-17404-ES; 8:08-bk-17407-ES;
   ☐ SCC/Palmdale, LLC                    8:08-bk-17408-ES; 8:08-bk-17409-ES;
19                                         8:08-bk-17458-ES; 8:08-bk-17465-ES;
   ☒ SunCal Johannson Ranch, LLC          8:08-bk-17470-ES; 8:08-bk-17472-ES;
20 ☐ SunCal Summit Valley, LLC            and 8:08-bk-17588-ES
21 ☐ SunCal Emerald Meadows LLC
   ☐ SunCal Bickford Ranch, LLC         Chapter 11 Proceedings
22 ☐ Acton Estates, LLC
   ☐ Seven Brothers LLC                 **FIRST AMENDED CHAPTER 11 PLANS
23 ☐ SJD Partners, Ltd.                 FILED BY SUNCAL PLAN PROPONENTS
   ☐ SJD Development Corp.              IN THE CHAPTER 11 CASES OF SUNCAL
24 ☐ Kirby Estates, LLC                 BEAUMONT HEIGHTS, LLC AND
25                                       SUNCAL JOHANNSON RANCH, LLC
   ☐ SunCal Communities I, LLC          [GROUP II: VOLUNTARY DEBTORS]**
26 ☐ SunCal Communities III, LLC
   ☐ SCC Communities LLC                Date:    July 22, 2011
27 ☐ North Orange Del Rio Land, LLC     Time:    11:00 a.m.
   ☐ Tesoro SF LLC                      Place:   Courtroom 5A
28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtersPlan.DOC

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................... 2

II. DEFINITIONS AND RULES OF INTERPRETATION ................................. 3
    2.1   Definitions .............................................................................................. 3
    2.2   Rules of Construction .......................................................................... 24
    2.3   Exhibits ................................................................................................ 25

III. TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 25
    3.1   Introduction .......................................................................................... 25
    3.2   Treatment of Allowed Administrative Claims ....................................... 26
    3.3   Treatment and Repayment of the Lehman's Administrative Loan(s) ........... 26
    3.4   Repayment of Allowed Administrative Claims Other than the
          Lehman Administrative Loans .............................................................. 26
    3.5   Administrative Claims Bar Date ........................................................... 26
    3.6   Treatment of Unsecured Tax Claims .................................................... 27

IV. CLASSIFICATION OF CLAIMS AND INTERESTS .................................. 28

V. THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
   AND INTERESTS ........................................................................................ 29
    5.1   The Plan's Treatment of Holders of Allowed Secured
          Real Property Tax Claims on the Group II Projects
          (Classes 1.1 Through 1.2) ..................................................................... 29
    5.2   The Plan's Treatment of Mechanic Lien Claims Against
          the Group II Projects (Class 2.1) .......................................................... 30
    5.3   The Plan's Treatment of Holders of Priority Claims (Class 3.1) .................. 31
    5.4   The Plan's Treatment of Holders of Allowed General Unsecured
          Claims (Class 4.1) ................................................................................ 32
    5.8   The Plan's Treatment of Holders of Allowed Interests ........................ 32

VI. ACCEPTANCE OR REJECTION OF THE PLAN ...................................... 32
    6.1   Introduction .......................................................................................... 32
    6.2   Who May Object to Confirmation of the Plan ...................................... 32
    6.3   Who May Vote to Accept/Reject the Plan ............................................ 33
    6.4   What Is an Allowed Claim/Interest ...................................................... 33
    6.5   What Is an Impaired Class ................................................................... 33
    6.6   Who Is Not Entitled to Vote ................................................................ 33
    6.7   Who Can Vote in More than One Class ................................................ 34
    6.8   Votes Necessary for a Class to Accept the Plan .................................. 34
    6.9   Treatment of Nonaccepting Classes .................................................... 34
    6.10  Request for Confirmation Despite Nonacceptance by
          Impaired Class(es) ................................................................................ 34

## TABLE OF CONTENTS

### (Continued)

|  |  |  | PAGE |
|---|---|---|---|
| VII. | | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 35 |
| | 7.1 | Introduction | 35 |
| | 7.2 | Sale Process After Confirmation Date but prior to Effective Date | 35 |
| | | A. Implementation of a Marketing Program | 35 |
| | | B. Indentifying a Stalking Horse Bidder | 35 |
| | | C. The Sale Contract | 36 |
| | | 1. Overbid Provisions | 36 |
| | | 2. Break-Up Fees | 36 |
| | | 3. Sale Free and Clear of Liens | 36 |
| | | D. The Auction | 36 |
| | 7.3 | Transfer of Property to the Plan Trust | 37 |
| | 7.4 | Closing of Group II Project Sales | 37 |
| | 7.5 | Purposes of the Plan Trust | 37 |
| | 7.6 | Trust Agreement | 38 |
| | 7.7 | Operations of the Plan Trust | 38 |
| | 7.8 | The Plan Trustee | 38 |
| | 7.9 | Payment of Trust Expenses | 38 |
| | 7.10 | Plan Distribution System | 39 |
| | 7.11 | Claims Estimation Rights | 39 |
| | 7.12 | No Payment of Transfer-Related Fees to the United States Trustee | 39 |
| | 7.13 | No Payment of Transfer-Related Fees to the Trustee | 39 |
| | 7.14 | Books and Records of Trust | 40 |
| | 7.15 | Limitations on Liability | 40 |
| | 7.16 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 41 |
| | 7.17 | Termination of the Trust | 41 |
| | 7.18 | Exemption from Certain Transfer Taxes | 42 |
| | 7.19 | Tax Consequence of The Plan | 42 |
| | 7.20 | The Plan Sponsor | 43 |
| | 7.21 | Acquisitions' Obligations | 43 |
| | 7.22 | The Committee | 43 |
| | | 7.22.1 Duties and Powers | 43 |
| | | 7.22.2 Dissolution of Committee | 43 |
| | 7.23 | Litigation Claims | 44 |
| | 7.24 | Collection of Litigation Recoveries | 44 |
| VIII. | | RISK FACTORS | 44 |
| | 8.1 | Plan Risks | 44 |
| | | 8.1.1 The Plan May Not Be Accepted or Confirmed | 44 |
| | | 8.1.2 Failure to Sell the Group II Projects | 45 |

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

## TABLE OF CONTENTS

### (Continued)

| | | PAGE |
|---|---|---|
| IX. | DISTRIBUTIONS | 45 |
| | 9.1 Distribution Agent | 45 |
| | 9.2 Distributions | 45 |
| | 9.2.1 Dates of Distributions | 45 |
| | 9.2.2 Limitation on Liability | 46 |
| | 9.3 Old Instruments and Securities | 46 |
| | 9.3.1 Surrender and Cancellation of Instruments and Securities | 46 |
| | 9.3.2) Cancellation of Liens | 46 |
| | 9.4 De Minimis Distributions and Fractional Shares | 46 |
| | 9.5 Delivery of Distributions | 47 |
| | 9.6 Undeliverable Distributions | 47 |
| | 9.7 Disposition of Unclaimed Property | 47 |
| X. | OBJECTION TO CLAIMS AND DISPUTE CLAIMS | 48 |
| | 10.1 Standing for Objections to Claims | 48 |
| | 10.2 Treatment of Disputed Claims and Disputed Liens | 48 |
| | 10.2.1 No Distribution Pending Allowance | 48 |
| | 10.2.2 Distribution After Allowance | 48 |
| XI. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 49 |
| | 11.1 Executory Contracts | 49 |
| | 11.2 Bar Date for Rejection Damages | 49 |
| | 11.3 Changes in Rates Subject to Regulatory Commission Approval | 49 |
| XII. | BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY | 49 |
| | 12.1 Best Interests Test | 49 |
| | 12.2 Feasibility | 50 |
| XII. | LIMITATION OF LIABILITY | 51 |
| | 15.1 No Liability for Solicitation or Participation | 51 |
| XIV. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 51 |
| | 14.1 Conditions Precedent to Plan Confirmation | 51 |
| | 14.2 Conditions Precedent to Plan Effectiveness | 51 |
| XV. | RETENTION OF JURISDICTION | 52 |
| XVI. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 52 |
| | 16.1 Modification of Plan | 52 |
| | 16.2 Nonconsensual Confirmation | 52 |

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtersPlan.DOC

## TABLE OF CONTENTS

### (Continued)

|  |  | PAGE |
|---|---|---|
| XVII. | MISCELLANEOUS | 52 |
| | 17.1 Payment of Statutory Fees | 52 |
| | 17.2 Payment Dates | 53 |
| | 17.3 Headings | 53 |
| | 17.4 Other Documents and Actions | 53 |
| | 17.5 Notices | 53 |
| | 17.6 Governing Law | 54 |
| | 17.7 Binding Effect | 54 |
| | 17.8 Successors and Assigns | 54 |
| | 17.9 Severability of Plan Provisions | 54 |
| | 17.10 No Waiver | 55 |
| | 17.11 Inconsistencies | 55 |
| | 17.12 Exemption from Certain Transfer Taxes and Recording Fees | 55 |
| | 17.13 Post-Confirmation Status Report | 55 |
| | 17.14 Post-Confirmation Conversion/Dismissal | 56 |
| | 17.15 Final Decree | 56 |

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

# I.

## **INTRODUCTION**

This Chapter 11 Plan of Reorganization (the "Plan")[1] is filed by the Voluntary Debtors and Acquisitions[2], as the SunCal Plan Proponents. Acquisitions are also the Plan Sponsor, and Acquisitions will serve as the Plan Trustee and the Distribution Agent for all of the Debtors, if this Plan is confirmed. The Plan is being filed in the Chapter 11 Cases of the following Debtors: **SunCal Beaumont Heights, LLC** and **SunCal Johannson, LLC** (the "Group II: Voluntary Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

In summary, the Plan provides for sale of the Beaumont Heights Project and the Johannson Ranch Project (the "Group II Projects"), and for the liquidation of all other assets of the Group II: Voluntary Debtors. The Net Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law. Based upon the SunCal Proponents' analysis of the value of the Group II Projects, and the amount of Allowed Claims against the estates of the respective Group II: Voluntary Debtors, there is a reasonable likelihood that all Allowed Claims will be paid in full under the Plan.

Although the same Plan is being filed in the Cases of all four Group II: Voluntary Debtors, each Plan is independent of the others. The Creditors in each Case will determine, subject to Court approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of some of the Group II: Voluntary Debtors, but not in others.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" to the Disclosure Statement.

[2] In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

-2-

## II.

## DEFINITIONS AND RULES OF INTERPRETATION

**2.1    Definitions.**

The following defined terms are used in the Plan and the Disclosure Statement. Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    Acton Estates. Acton Estates, LLC, a Delaware limited liability and the owner of the Acton Project.

2.1.3    Acton Project. The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described herein.

2.1.4    Administrative Claim(s). Any Claim against a Group V Debtor or its Estate incurred after the applicable Petition Date for the applicable Group V Debtor but before the Confirmation Date, for any cost or expense of administration of the Case of the applicable Group V Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group V Debtor under section 1930 of Title 28 of the United States Code.

2.1.5    Administrative Claims Bar Date. The last date fixed by the Plan for the filing of Proof of Claims or requests for payment of Administrative Claims. Under the Plan, the Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the Confirmation Date.

2.1.6    Affiliate. The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the

1  power to direct or cause the direction of the management and policies of such Person, whether

2  through the ownership of voting securities or other equity ownership interest, by contract or

3  otherwise.

4       2.1.7    Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or

5  Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

6       2.1.8    Allowed Amount shall mean:

7           A.    With respect to any Administrative Claim (i) if the Claim is based

8  upon a Fee Application, the amount of such Fee Application that has been approved by a Final

9  Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

10  incurred in the ordinary course of business of the Group II: Voluntary Debtors and is not otherwise

11  subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

12  the Group II: Voluntary Debtors and such creditor, failing which, the amount thereof as fixed by a

13  Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

14  has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

15  (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

16  applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

17  Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

18  such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

19  Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

20  which is subject to an Administrative Claims Bar Date and not filed by the applicable

21  Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

22  such Administrative Claim;

23           B.    with respect to any Claim which is not an Administrative Claim

24  (the "Other Claim"): (i) if the Holder of such Other Claim did not file proof thereof with the

25  Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

26  Group II: Voluntary Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

27  the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

28  Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

1   interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

2   Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

3   Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

4   fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The

5   Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

6   listed on the Group II: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

7   contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no

8   distribution shall be made on account of any such Claim; and

9          C.      with respect to any Interest, (i) the amount provided by or

10  established in the records of the Group II: Voluntary Debtors at the Confirmation Date, provided,

11  however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

12  records of the Group II: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed

13  prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

14  Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

15  by a Final Order of the Bankruptcy Court.

16         2.1.9   Allowed Claim.  Except as otherwise provided in the Plan (including with

17  respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

18  Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

19         2.1.10  Allowed Interest.  Any Interest to the extent, and only to the extent, of the

20  Allowed Amount of such Interest.

21         2.1.11  Allowed Secured Claims.  All or a portion of a Secured Claim that is an

22  Allowed Claim.

23         2.1.12  Allowed Unsecured Claim.  All or a portion of an Unsecured Claim that is

24  an Allowed Claim.

25         2.1.13  Assets.  All assets that are property of the Debtor(s) pursuant to

26  Bankruptcy Code Section 541.

27         2.1.14  Arch.  Arch Insurance Company, a Bond Issuer.

28

1            2.1.15    Available Cash. Each Group II: Voluntary Debtors' Cash deposited into

2  the applicable Distribution Account(s) on or after the Effective Date that is available for making

3  Distributions under the Plan to Holders of Allowed Administrative, Priority, and Unsecured

4  Claims. The Available Cash shall consist of the respective Group II: Voluntary Debtors' cash on

5  hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation

6  Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash

7  upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly

8  encumbering such Cash, or proceeds from the Acquisitions Administrative Loan. All Available

9  Cash shall be deposited into the applicable Distribution Account(s). Available Cash shall not

10  include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims

11  are Allowed but subject to an equitable subordination judgment.

12            2.1.16    Avoidance Actions. All Claims and defenses to Claims accruing to the

13  Group II: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c),

14  541, 544, 545, 547, 548, 549, 550, or 551.

15            2.1.17    Bankruptcy Code. The United States Bankruptcy Code.

16            2.1.18    Bankruptcy Court. The United States Bankruptcy Court for the Central

17  District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

18  reference made pursuant to Section 157 of title 28 of the United States Code, the United States

19  District Court for the Central District of California; or, in the event such courts cease to exercise

20  jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

21  lieu thereof.

22            2.1.19    Bankruptcy Rules. Collectively, as now in effect or hereafter amended

23  and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

24  Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

25            2.1.20    Beaumont Heights Project. The Project owned by SunCal Beaumont,

26  located in the City of Beaumont, California, as more particularly described herein.

27

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

2.1.21    Beaumont Heights Break-up Fee. The sum of forty-one thousand dollars ($41,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the Beaumont Heights Project, if such Stalking Horse Bidder is not the Winning Bidder.

2.1.22    Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.23    Bickford Ranch Project. The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described herein.

2.1.24    Bickford Second Loan Agreement. That certain promissory note secured by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of Lehman ALI. The Bickford Second Lien Loan Agreement is allegedly secured by a second priority deed of trust on the Bickford Ranch Project. The Bickford Second Loan Agreement has an asserted balance due of $56,494,059.38 as of March 30, 2009.

2.1.25    Bond Claim(s). Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds. and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.26    Bond Claimant. Holder(s) of a Bond Claim.

2.1.27    Bond Indemnification Claim. All Claims by Bond Safeguard, Lexon, and Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with respect to the Group II: Voluntary Debtors' Projects.

2.1.28    Bond Indemnitors. The individuals and entities that are allegedly liable on the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all Affiliates of Acquisitions, and Elieff.

2.1.29    Bond Issuer(s). Bond Safeguard, Lexon and Arch in their capacities as issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    2.1.30    Bond Safeguard. Bond Safeguard Insurance Company, a Bond Issuer.

2    2.1.31    Business Day. Any day, other than a Saturday, a Sunday or a "legal

3    holiday," as defined in Bankruptcy Rule 9006(a).

4    2.1.32    Cases. The Chapter 11 cases of the Group II: Voluntary Debtors pending

5    before the Bankruptcy Court.

6    2.1.33    Cash. Currency of the United States of America and cash equivalents,

7    including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

8    transfers and other similar forms of payment.

9    2.1.34    CFD Bonds. Community facilities district bonds issued by a

10    governmental entity.

11    2.1.35    Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the

12    Trustee Debtors in their pending Chapter 11 Cases.

13    2.1.36    Claim. This term shall have the broadest possible meaning under

14    Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

15    Group II: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated,

16    unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

17    secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

18    breach gives rise to a right of payment from any of the Group II: Voluntary Debtors, whether or not

19    such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

20    disputed, undisputed, secured, or unsecured.

21    2.1.37    Claims Bar Date. For any Claim other than an Administrative Claim,

22    March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

23    file Proof of Claims with the Bankruptcy Court in all of the Group II: Voluntary Debtors' cases.

24    2.1.38    Claims Objection Deadline. The later of (i) the first business day

25    following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

26    period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

27    the Plan Trustee and the Holder of the Claim.

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1     2.1.39   Claim Objection Reduction Amount. The amount of Net Sales Proceeds

2   that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

3   or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

4   secured claims filed by the Lehman Lenders.

5     2.1.40   Class. Each group of Claims or Interests classified in Article IV of the

6   Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

7     2.1.41   Committee. The Voluntary Debtors' Committee, both before and after the

8   Confirmation Date.

9     2.1.42   Confirmation Date. The date on which the Confirmation Order is entered

10   in the Bankruptcy Court's docket.

11     2.1.43   Confirmation Order. The order entered by the Bankruptcy Court

12   confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

13     2.1.44   Contingent Bond Claims. Unmatured Bond Claims.

14     2.1.45   Creditor. Any Person who is the Holder of a Claim against any Debtor

15   that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

16   become due, owing, and payable on or before the Petition Date, including, without limitation,

17   Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

18     2.1.46   Debtor(s). Individually or collectively, the Voluntary Debtors and the

19   Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

20     2.1.47   Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their

21   capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

22     2.1.48   Disclosure Statement. The document accompanying the Plan that is

23   entitled "Disclosure Statement Describing Chapter 11 Plan Filed by SunCal Plan Proponents In

24   The Chapter 11 Cases Of SunCal Beaumont Heights, LLC and SunCal Johannson Ranch, LLC

25   [Group II: Voluntary Debtors]," as amended and with all accompanying exhibits.

26     2.1.49   Disputed Claim(s). All or any part of a Claim other than any Allowed

27   Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

28   with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

2    (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

3    Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

4    for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

5    order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

6    Deadline, which Adversary Proceeding, objection, or request for estimation has not been

7    dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

8    "Disputed Claim" pursuant to the Plan.

9    2.1.50    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that

10   is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

11   or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

12   2.1.51    Disputed Secured Claim(s). That part of a Disputed Claim that is a

13   Secured Claim.

14   2.1.52    Distribution(s).  Payments to Holders of Allowed Claims provided for

15   under the Plan.

16   2.1.53    Distribution Agent.  The entity that is responsible for making Distributions

17   under the Plan, which shall be Acquisitions.

18   2.1.54    Distribution Account(s).  Separate account(s) to be established by the Plan

19   Trustee at an FDIC insured bank into which each Group II: Voluntary Debtors' Available Cash

20   shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date

21   that would have belonged to such Group V Debtor shall be deposited, other than Net Sales

22   Proceeds that are subject to Disputed Claims and Disputed Liens.

23   2.1.55    Distribution Date.  With respect to any Allowed Claim or Allowed

24   Interest, the date on which a Distribution is required to be made under the Plan.

25   2.1.56    Effective Date. A date selected by the SunCal Plan Proponents that is not

26   later than the ninetieth (90th) calendar day after the Confirmation Date. However, the SunCal Plan

27   Proponents shall have the right to extend the Effective Date for an additional thirty (30) days.

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    2.1.57    Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on

2    the Bond Claims with corresponding indemnity Claims against the Debtors.

3    2.1.58    Emerald Meadows Project. The Project owned by SunCal Emerald,

4    located in the City of Rubidoux, California, as more particularly described herein.

5    2.1.59    Estates. The bankruptcy estates of the Group II: Voluntary Debtors

6    created pursuant to Section 541 of the Bankruptcy Code.

7    2.1.60    Fee Applications. Applications of Professional Persons under Sections

8    330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

9    expenses in the Cases.

10    2.1.61    Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code

11    for allowance of compensation and reimbursement of expenses in the Cases.

12    2.1.62    Fenway Capital. Fenway Capital Funding LLC, a Lehman Successor to

13    Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

14    Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

15    (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

16    (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

17    Valley Loan Agreement. Such Disputed Claims and Disputed Liens were transferred back to LCPI

18    pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

19    2.1.63    Filed. Delivered to, received by and entered upon the legal docket by the

20    Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

21    2.1.64    Final Order. A judgment, order, ruling or other decree issued and entered

22    by the Bankruptcy Court.

23    2.1.65    General Unsecured Claim. A Claim against a Group V Debtor that is not

24    (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

25    2.1.66    Group II: Voluntary Debtors. SunCal Beaumont Heights, LLC and SunCal

26    Johannson, LLC.

27    2.1.67    Group II Projects. Beaumont Heights Project and Johannson Ranch

28    Project.

1         2.1.68     Holder. The beneficial owner of any Claim or Interest.

2         2.1.69     Initial Overbid. The Initial Overbid is the first Qualifying Bid after the

3 Opening Bid that is equal to or in excess of the Initial Overbid Amount.

4         2.1.70     Initial Overbid Amount. In the case of Ritter Ranch Project, the Initial

5 Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the

6 Beaumont Heights Project Break-up Fee and the Minimum Increment. In the case of the Johannson

7 Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the applicable

8 Opening Bid, the Johannson Project Break-up Fee and the Minimum Increment.

9         2.1.71     Insider. The term shall have the broadest meaning possible under

10 Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

11 Insiders of such Affiliates.

12         2.1.72     Interest. Any equity security interest in any Group II Debtor within the

13 meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity

14 ownership interest in any of the Group II Debtors, whether in the form of common or preferred

15 stock, stock options, warrants, partnership interests, or membership interests.

16         2.1.73     Johannson Ranch Project. The Project owned by SunCal Johannson,

17 located in the City of Modesto, California, as more particularly described herein.

18         2.1.74     Johannson Ranch Break-up Fee. The sum of twenty-two thousand dollars

19 ($22,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the

20 Johannson Ranch Project, if such Stalking Horse Bidder is not the Winning Bidder.

21         2.1.75     Kirby Estates. Kirby Estates, LLC, a Delaware limited liability company,

22 a Voluntary Debtor herein, and the owner of a portion of the Summit Valley Project not owned by

23 SunCal Summit Valley and Seven Brothers.

24         2.1.76     LBHI. Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

25 company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

26 in the Bankruptcy Court for the Southern District of New York.

27         2.1.77     LCPI. Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

28 bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    2.1.78 **Legal Rate.** The rate of interest payable on judgments obtained in the

2    United States District Courts as set forth in 28 U.S.C. § 1961. The rate applicable under the Plan is

3    1.44% per annum, representing the applicable rate on November 6, 2008.

4    2.1.79 **Lehman Adversary Proceeding.** The Debtors' pending adversary

5    proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

6    action including equitable subordination, fraudulent conveyances and preferential transfers.

7    2.1.80 **Lehman ALI.** Lehman ALI, Inc.

8    2.1.81 **Lehman Disputed Administrative Loans.** The post-petition financing

9    provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates,

10   SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century

11   City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all

12   borrower Debtors' assets, and for super-priority administrative status to Lehman ALI. The

13   Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the

14   Voluntary Debtors. The aggregate amount of the Lehman Administrative Loans to all of the

15   Trustee Debtors is approximately $40 million as of March 1, 2011 and continuing to increase. The

16   Lehman Administrative Loans are the subject of claim objections. Until these objections are

17   resolved, these Lehman Administrative Loans shall not be Allowed Claims.

18   2.1.82 **Lehman Claim Objections.** The objections filed by the Debtors to the

19   claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

20   Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

21   Objection and the Lehman 502(d) Objection.

22   2.1.83 **Lehman Entities.** The Lehman Lenders, the Lehman Equity Members and

23   LBHI.

24   2.1.84 **Lehman Equity Members.** Lehman Entities that own direct or indirect

25   membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

26   Marblehead.

27   2.1.85 **Lehman Lenders.** Lehman ALI, LCPI, Northlake Holdings, and OVC

28   Holdings.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1        2.1.86    Lehman Disputed Loans. Collectively the following loans that are the

2   purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement;

3   (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

4   (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

5   Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

6   Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

7   Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

8   and (n) Pacific Point Second Loan Agreement.

9        2.1.87    Lehman Recoupment Objection. A claim objection filed with respect to

10  certain claims filed by the Lehman Lenders that is based upon the affirmative defenses of

11  recoupment, unjust enrichment and unclean hands.

12        2.1.88    Lehman Representatives. The individuals that controlled the Lehman

13  Entities.

14        2.1.89    Lehman Successor(s). Entities other than the Lehman Lenders that either

15  assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

16  Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

17        2.1.90    Lehman's Disputed Claim(s). All of the Proofs of Secured Claims filed by

18  a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

19  Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

20        2.1.91    Lehman's Disputed Lien(s). All of the alleged liens relating to Proofs of

21  Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

22  Cases arising from the Lehman Disputed Loans.

23        2.1.92    Lehman 502(d) Objection. A claim objection filed with respect to certain

24  claims filed by the Lehman Lenders that based upon Section 502(d) of the bankruptcy code.

25        2.1.93    Lexon. Lexon Insurance Co.

26        2.1.94    Litigation Claims. Any and all interests of the Group II: Voluntary

27  Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

28  rights, or causes of action which have been or may be commenced by the Group V Debtor(s), the

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1  Chapter 11 Trustee, or the Committee, as the case may be, including, but not limited to, any

2  (i) Avoidance Actions; (ii) for turnover of property to the Group II: Voluntary Debtors' Estates

3  and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the

4  Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages,

5  recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary

6  Proceeding; (vi) the State Court Action, and (vii) any and all other Claims against Lehman's

7  Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

8      2.1.95    Litigation Recoveries. Any Cash or other property received by the

9  Chapter 11 Trustee, the Group II Debtors, the Committee and/or the Plan Trust, as the case may be,

10  from all or any portion of a Litigation Claim(s), including, but not limited to, awards of damages,

11  attorneys' fees and expenses, interest and punitive damages, whether recovered by way of

12  settlement, execution on judgment or otherwise.

13      2.1.96    Litigation Rights. Any Claims held by a party other than the Group II:

14  Voluntary Debtors that have not been fixed in a final judgment prior to the Effective Date.

15      2.1.97    Marblehead Project. The Project owned by SunCal Marblehead, located

16  in the City of San Clemente, California, as more particularly described herein.

17      2.1.98    Maximum Distribution. A Distribution to a Holder of an Allowed

18  Unsecured Claim against a Group II: Voluntary Debtor equal to one hundred percent (100%) of the

19  amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and

20  as of the Group II: Voluntary Debtor's Petition Date.

21      2.1.99    MB Firm. Miller Barondess, LLP.

22      2.1.100    Mechanic Lien Claims. Mechanic Lien Claims arising pursuant to

23  California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

24  allegedly satisfy the requirements of Bankruptcy Code 546(b).

25      2.1.101    Minimum Increment. Minimum Increment applicable to the sales of the

26  Group II Projects are the following: twenty thousand dollars ($20,000) for the Beaumont Heights

27  Project and ten thousand dollars ($10,000) for the Johannson Ranch Project, until there are only

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1  two Qualified Bidders submitting bids for a Group II Project, then the Minimum Increment shall be
2  five thousand dollars ($5,000).

3      2.1.102  Minimum Sale Price. The minimum gross sale price that must be paid for
4  each Group V Project before such projects can be sold pursuant to the Plan, which prices are the
5  following: Beaumont Height Project - $918,000, and Johannson Ranch Project - $486,000.

6      2.1.103  Net Litigation Recoveries. Litigation Recoveries less associated
7  Administrative Claims and Post-Confirmation Expenses incurred in connection with such
8  Litigation Recoveries.

9      2.1.104  Net Sales Proceeds. The Cash generated from the sale(s) or liquidation of
10  the Group V Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses, taxes,
11  Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative
12  Claims incurred in furtherance of such sales or liquidation of such Assets.

13      2.1.105  Net Sales Proceeds Account(s). Separate account(s) that will be
14  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be
15  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)
16  and/or a Disputed Lien(s). There shall be a separate Net Sales Proceeds Account for the Net Sale
17  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except
18  where there are two Disputed Liens on a single Project, in which case, there shall be a single
19  account for the proceeds generated from that Project. The Disputed Secured Claim(s) and/or
20  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any
21  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or
22  applicable Disputed Lien(s). To the extent that a particular Disputed Claim is disallowed or a
23  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy
24  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject
25  thereto shall become Available Cash and shall be transferred to the applicable Distribution
26  Account(s). To the extent that a particular Disputed Secured Claim and a Disputed Lien are
27  allowed and deemed valid but subject to the equitable subordination causes of action in the
28

1    Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

2    Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

3       2.1.106  Opening Bid.  Opening Bid means the offer for one, or both of the Group

4    II Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for either one or

5    both of the Group II Projects.

6       2.1.107  Orders for Relief Date.  The following are dates that orders for relief were

7    entered for each of the Trustee Debtors:

8
    SunCal Oak Valley     January 6, 2009
9        SunCal Heartland     January 6, 2009
    SunCal Northlake     January 6, 2009
10       SunCal Marblehead    January 6, 2009
    SunCal Century City    January 6, 2009
11       SunCal PSV      January 6, 2009
    Delta Coves      January 6, 2009
12       SunCal Torrance     January 6, 2009
13       SunCal Oak Knoll    January 6, 2009

14      2.1.108  Palmdale Hills.  Palmdale Hills Property LLC, a Delaware limited liability

15   company, and the owner of the Ritter Ranch Project

16      2.1.109  Palmdale Hills CFD Bonds.  Certain CFD bonds issued by the City of

17   Palmdale, in the amount of approximately $33 million that are owned by Palmdale Hills.

18      2.1.110  Palm Springs Village Project.  The Project owned by SunCal PSV, located

19   in the City of Palm Springs, California, as more particularly described herein.

20      2.1.111  Person.  An individual, partnership, corporation, limited liability company,

21   business trust, joint stock company, trust, unincorporated association, joint venture, governmental

22   authority, governmental unit, committee or other entity of whatever nature.

23      2.1.112  Petition Dates.  The following are dates that each of the Voluntary Debtors

24   filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions

25   against the Trustee Debtors:

26   / / /

27

28

| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.113   Plan. This Chapter 11 Plan together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.114   Plan Documents. The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.115   Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.116   Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.117   Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.118  Plan Sponsor.  The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

2.1.119  Plan Trust.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.120  Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

2.1.121  Plan Trust Agreement. The liquidating trust agreement governing the affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

2.1.122  Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Property in accordance with the terms of the Plan.

2.1.123  Plan Trust Property. Plan Trust Property means all property within the Chapter 11 estates of the Group II Debtors, other than property that is affirmatively excluded by the Plan Trustee.

2.1.124  Post-Confirmation Expenses.  The fees and expenses incurred by the Plan Sponsor, the Plan Trustee and the Committee and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Group II Debtors' Chapter 11 Cases.

2.1.125  Priority Claim.  Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.126   Pro Rata. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.127   Professional. A Person or Entity (a) employed by the Group II: Voluntary Debtors, the Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.128   Professional Fees. All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.129   Projects. The Debtors' residential real estate development projects and other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

2.1.130   Qualifying Bid. Qualifying Bid means, with respect to any bid on a Group V Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the Initial Overbid Amount, if it is the Initial Overbid, or B) in excess of the immediately preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

2.1.131   Qualifying Bidder. Qualifying Bidder means a bidder who a) has deposited the sum of seventy-five thousand dollars ($75,000) into an escrow designated by the SunCal Proponents in the case of a bid for the Beaumont Heights Project, fifteen thousand dollars or ($15,000) in the case of a bid for the Johannson Ranch Project; b) agreed that this sum will be forfeited as liquidated damages if such bidder fails to perform; and c) who has provided the SunCal Plan Proponents evidence confirming that such bidder has the financial means to acquire the applicable Group II Project(s) that such bidder is seeking to acquire.

2.1.132   Ritter Ranch Loan Agreement. That certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and

-20-

1  lender, pursuant to which LCPI made a loan in the maximum aggregate principal amount of

2  approximately $264,000,000. The Ritter Ranch Loan Agreement is allegedly secured by a first-

3  priority deed of trust on all real and personal property owned by Palmdale Hills. The Ritter Ranch

4  Loan Agreement has an asserted balance due of $287,252,096.31 as of March 30, 2009.

5      2.1.133   Ritter Ranch Project. The Project owned by Palmdale Hills, located in

6  the City of Palmdale, California, as more particularly described herein.

7      2.1.134   Sale Period. The Sale Period is the time period during which the SunCal

8  Proponents must consummate a sale or liquidation of the Group II Projects. The Sale Period shall

9  commence on the Confirmation Date and shall expire on the Effective Date.

10      2.1.135   SCC LLC. SCC Acquisitions LLC, a limited liability company, a

11  subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

12      2.1.136   Schedules. The schedules of assets and liabilities and list of equity

13  security holders Filed by the Group II: Voluntary Debtors, as required by Section 521(1) of the

14  Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

15  as amended from time to time.

16      2.1.137   Seven Brothers. Seven Brothers, LLC, a Delaware limited liability

17  company, a Voluntary Debtor herein, and the owner of the portion of the Summit Valley Project

18  not owned by Kirby Estates and SunCal Summit Valley.

19      2.1.138   Secured Claim. Any Claim, including interest, fees, costs, and charges to

20  the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

21  unavoidable Lien on the Group II: Voluntary Debtor(s)' Assets.

22      2.1.139   Stalking Horse Bidder. The Qualified Bidder who submits the Opening

23  Bid.

24      2.1.140   State Court Action. The action filed by certain Voluntary Debtors against

25  Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

26  Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan

27  Trustee and/or the Trustee Debtors as additional plaintiffs therein.

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1     2.1.141   Summit Valley Project.  The Project owned in part by SunCal Summit

2   Valley, Seven Brothers and Kirby Estates, located in the City of Hesperia, California, as more

3   particularly described herein.

4     2.1.142   SunCal.  The SunCal Companies, a trade name for Acquisitions and its

5   Affiliates.

6     2.1.143   SunCal Bickford.  SunCal Bickford Ranch, LLC, a Delaware limited

7   liability company, and the owner of the Bickford Ranch Project.

8     2.1.144   SunCal I.  SunCal Communities I, LLC, a Delaware limited liability

9   company, a Voluntary Debtor herein, and the owner of the equity membership interests in Acton

10  Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and

11  SunCal Emerald.

12    2.1.145   SunCal Communities I Loan Agreement.  The loan agreement by and

13  among (i) SunCal I and SunCal III, as borrowers and (ii) LCPI, as administrative agent and lender,

14  pursuant to which LCPI made a loan to SunCal I and SunCal III, as borrowers in the maximum

15  aggregate principal amount of approximately $395,313,713.37.  The loan agreement is allegedly

16  secured by (a) alleged first-priority deeds of trust on the SunCal Bickford, the Acton Estates, and

17  the SunCal Emerald Projects, (b) an alleged pledge of SunCal I's Allowed Interest in Acton

18  Estates, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal

19  Bickford; and (c) an alleged pledge of SunCal Summit's Allowed Interest in Seven Brothers and

20  Kirby.  The SunCal Communities I Loan Agreement has an alleged balance due of

21  $343,221,391.06 as of March 30, 2009.

22    2.1.146   SunCal Emerald.  SunCal Emerald Meadows, LLC, a Delaware limited

23  liability company, and the owner of the Emerald Meadows Project.

24    2.1.147   SunCal Management.  SunCal Management, LLC, a Delaware limited

25  liability company, and the property manager for the Projects.

26    2.1.148   SunCal Marblehead.  SunCal Marblehead, LLC, a Delaware limited

27  liability company, a Trustee Debtor, and the owner of the Marblehead Project.

28

2.1.149   SunCal Marblehead/SunCal Heartland Loan Agreement.  That certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $316,061,300. The SunCal Marblehead/SunCal Heartland Loan Agreement is allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects. The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to this loan agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

2.1.150   SunCal Plan Proponent(s).  The Voluntary Debtors and Acquisitions as the parties-in-interest that are proposing the Plan.

2.1.151   SunCal PSV.  SunCal PSV, LLC, a Delaware limited liability company, a Trustee Debtor, and the owner of the Palm Springs Village Project.

2.1.152   SunCal PSV Loan Agreement.  That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $90 million. The SunCal PSV Loan Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project. The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30, 2009.

2.1.153   Tax.  Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

2.1.154   Tax Claim.  Any Claim for any Tax to the extent that it is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

-23-

1   2.1.155   Trustee Debtor(s). The following Debtors, individually or collectively,

2   that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

3   Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal

4   Torrance, and SunCal Oak Knoll.

5   2.1.156   Trustee Debtors' Committee. The Official Committee of Unsecured

6   Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

7   Bankruptcy Code.

8   2.1.157   Unpaid Secured Real Property Tax Claims. Secured Claims held by

9   various government entities secured by liens on the underlying real properties owned by the

10  Debtors but that are non-recourse to the Debtors.

11  2.1.158   Unsecured Claim. An Unsecured Claim is any Claim that is not an

12  Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

13  2.1.159   Voluntary Debtor(s). The following  Chapter 11 debtors and debtors-in-

14  possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

15  Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

16  Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

17  Rio and Tesoro.

18  2.1.160   Voluntary Debtors' Committee. The Official Committee of Unsecured

19  Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

20  Bankruptcy Code.

21  2.1.161   Winning Bid. The highest Qualifying Bid received for the Beaumont

22  Heights Project, the Johannson Ranch Project or the Summit Valley Project.

23  2.1.162   Winning Bidder. The party that submits the highest Qualifying Bid.

24  **2.2    Rules of Construction.**

25  For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

26  in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

27  singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

28  masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

1   Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

2   such document or schedule, as it may have been or may be amended, modified or supplemented

3   pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

4   entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

5   or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

6   and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

7   in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

8   the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

9   contract, instrument, release, indenture, agreement, or other document being in a particular form or

10  on particular terms and conditions means that such document shall be substantially and materially

11  in such form or substantially and materially on such terms and conditions; (h) any reference in the

12  Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

13  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

14  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

15  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

16  express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

17      **2.3     Exhibits.**

18      All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

19  therein.

20                                          **III.**

21                  **TREATMENT OF UNCLASSIFIED CLAIMS**

22      **3.1     Introduction**. As required by the Bankruptcy Code, the Plan places Claims and

23  Interests into various Classes according to their right to priority. However, certain types of Claims

24  are not classified in any Classes under the Plan. These Claims are deemed "unclassified" under the

25  provisions of the Code. They are not considered impaired and they do not vote on the Plan,

26  because they are automatically entitled to specific treatment provided for them in the Code. As

27  such, the SunCal Plan Proponents have not placed the following Claims in a Class. The treatment

28  of these unclassified Claims is as provided below.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

**3.2** **Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the later of Effective Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different treatment. The treatment of Allowed Administrative Claims is as described below. However, such Administrative Claims are continuing to be incurred. The Allowed Administrative Claims shall be paid from the applicable Distribution Account(s) pursuant to the Acquisitions Administrative Loan.

**3.3** **Treatment and Repayment of the Lehman's Administrative Loan(s).**

The Lehman Disputed Administrative Loans shall be paid in full on the later of the Effective Date, or the date any objections to the same are overruled by the Court leaving them Allowed claims. Prior to payment, these claims shall continue to be secured by their existing liens against the respective Assets of the Trustee Debtors.

**3.4** **Repayment of Allowed Administrative Claims Other than the Lehman Administrative Loans.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the Debtors in Possession (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**3.5** **Administrative Claims Bar Date.**

All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

MAINDOCS-#163413-v:-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1  or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

2  obligations and routine post-petition payroll obligations incurred in the ordinary course of the

3  Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

4  obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

5  upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

6  extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

7  of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

8  is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

9  any party that seeks payment of Administrative Claims that (i) is required to file a request for

10  payment of such Administrative Claims and (ii) does not file such a request by the deadline

11  established herein shall be forever barred from asserting such Administrative Claims against the

12  Debtors, the Plan Trust, their estates, or any of their property.

13      **3.6**    **Treatment of Unsecured Tax Claims.**

14      Tax Claims are certain unsecured income, employment and other taxes described by Code

15  Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

16  receive the present value of such Claim in deferred cash payments, over a period not exceeding

17  five (5) years from the petition date and that such treatment not be less favorable than the treatment

18  accorded to non priority unsecured creditors.

19      At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

20  entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

21  each three-month period following the Effective Date, during a period not to exceed five years

22  after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

23  unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

24  United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

25  the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

26  favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

27  forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

28

## IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. The Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under the Plan and states whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF HOLDERS OF UNPAID SECURED REAL PROPERTY TAX CLAIMS ON GROUP II PROJECTS | | |
|---|---|---|
| Class 1 | Claimant | Claim Nos. |
| Class 1.1 | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Beaumont Heights Project in the amount of $442,201. | SunCal Beaumont 9 |
| Class 1.2 | Stanislaus County as the Holder of an Unpaid Secured Real Property Tax Claim against the Johannson Ranch Project in the amount of $434,830. | Unknown |

| CLASSIFICATION OF ASSERTED MECHANICS LIEN CLAIMS AGAINST GROUP II PROJECTS | | |
|---|---|---|
| Class 2 | Claimant | Claim Nos. |
| Class 2.1 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Beaumont Heights Project in the amount of $43,355. | SunCal Beaumont 11 and 12 |

/ / /-

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| Class 3.1 | The Holder of Allowed Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against any of the Group II: Voluntary Debtors | None filed |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| Class 4.1 | Claimants holding Allowed Unsecured Claims against SunCal Beaumont. | Various Filed and Scheduled |
| Class 4.2 | Claimants holding Allowed Unsecured Claims against SunCal Johannson Ranch. | Various Filed and Scheduled |

| CLASSIFICATION OF INTEREST HOLDERS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Scheduled** |
| Class 5.1 | Allowed Interests in SunCal Beaumont held by SunCal I. | Scheduled Amount |
| Class 5.2 | Allowed Interests in SunCal Johannson Ranch held by SunCal I | Scheduled Amount |

**V.**

### THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1    The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims on the Group II Projects (Classes 1.1 and 1.2).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1and 1.2 are not impaired under the Plan. Such claimant's shall retain their existing lien rights and one of the following two non-impairment options shall apply, at the election of the Plan Trustee: 1) On the Effective Date, such claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2), or 2) on the Effective Date, or the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

5.2     **The Plan's Treatment of Mechanics Lien Claims Against Group II Projects**
**(Class 2.1).**

The Holder(s) of Allowed Secured Claims within Class 2.1 shall receive the indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii), through the following treatment:

A.     The sale of the Group II Projects shall be sold, free and clear of all monetary liens and encumbrance pursuant to the following sales procedures:

1.     The Group II Projects will be sold through a public auction after a commercially reasonable marketing and advertising effort of at least sixty (60) days duration;

2.     The SunCal Plan Proponents shall have the right to provisionally accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this bidder the right to receive the Beaumont Heights Project Break-up Fee or the Johannson Ranch Project Break-up Fee, the as the case may be, if such bidder is not the Winning Bidder;

3.     Other Qualified Bidders shall have the right to overbid the Opening Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be equal to or in excess or the Minimum Increment;

4.     The highest Qualifying Bid received from a Qualified Bidder, shall be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon payment of the Winning Bid, the Winner bidder shall receive title to the applicable Group V Project free and clear of all monetary liens and encumbrances; and

5.     The Net Sales Proceeds from the sale of the Group II Projects shall be deposited into the applicable Net Sales Proceeds Account and the liens held by the holder of the Class 2.1 lien shall attach to the Net Sales Proceeds. The Class 2.1 claim shall be paid from the Net Sales Proceeds within three (3) business days of the date they are Allowed.

5.     If for any reason the Plan Trustee is unable to sell any of the Group II Projects on the Effective Date, they will be abandoned as of 11:59 p.m. on the Effective Date, and

1    the Class 2.1 claimant shall be free to exercise any and all remedies that it may hold with respect to

2    these Assets.

3           B.      Sale of Other Plan Trust Assets Subject To Liens of Class 2.1 Claimant(s).

4    The Plan Trustee shall complete the sale of all other Plan Trust Assets that are subject to the Liens

5    of the Class 2.1 claimant, if any, free and clear of such claims and liens, through a sale that

6    satisfies the following conditions:

7                  1.      Such Assets will be sold through a public auction after a

8    commercially reasonable marketing and advertising effort of at least thirty (30) days duration;

9                  2.      The Committee shall approve the terms of the sale;

10                 3.      The sale will be held and completed within ninety (90) days of the

11   Effective Date; and

12                 4.      The Net Sales Proceeds from the sale of the these Assets shall be

13   deposited into the applicable Net Sales Proceeds Account and the liens held by the holder of claims

14   within Class 2.1 shall attach to the Net Sales Proceeds in accordance with their existing priority.

15   The claims within Class 2.1 shall then be paid from the Net Sales Proceeds within three (3)

16   business days of the date they are Allowed.

17                 5.      If for any reason the Plan Trustee is unable to sell any of remaining

18   Assets within the foregoing time frame, other than Litigation Claims, which shall be retained, they

19   will be abandoned and the claimant within Class 2.1 who hold liens on these unsold Assets shall be

20   free to exercise any and all remedies that it may hold against these Assets.

21           **5.3     The Plan's Treatment of Holders of Priority Claims (Class 3.1).**

22           The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

23           A.      The Holder(s) are unimpaired under the Plan; and

24           B.      The Holder(s) shall be paid from the applicable Distribution Account(s) (i)

25   the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y)

26   the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority

27   Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or

28   (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.4 The Plan's Treatment of Holders of Allowed General Unsecured Claims (Class 4.1).**

The rights of Holders of Allowed Class 4.1 Claims are impaired under the Plan. Under the Plan, each claimant will receive a distribution in cash, on the Effective Date, equal to the Net Proceeds remaining after the payment of all Allowed Administrative, Priority and Secured Claims, but only up to the Maximum Distribution.

**5.5 The Plan's Treatment of Holders of Allowed Interests.**

The Interests of the Holders in Class 5.1and 5.2 are impaired under the Plan. All such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these Holders on account of such Interest(s).

**VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1 Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors cannot represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. The requirements described herein are not the only requirements for confirmation.

**6.2 Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 6.3    Who May Vote to Accept/Reject the Plan.

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class. The votes will be tabulated on a Debtor by Debtor basis.

### 6.4    What Is an Allowed Claim/Interest.

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

### 6.5    What Is an Impaired Class.

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtors believe that all Classes, except for Class 3.1 are impaired.

### 6.6    Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except Class 3.1. These classes are not impaired under the Plan and consequently are not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Classes 5.1 and 5.2 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

### 6.7     Who Can Vote in More than One Class.

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

### 6.8     Votes Necessary for a Class to Accept the Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

### 6.9     Treatment of Nonaccepting Classes.

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts the Plan. The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

### 6.10     Request for Confirmation Despite Nonacceptance by Impaired Class(es).

The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any impaired Class if such Class does not vote to accept the Plan.

///

-34-

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

## VII.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### 7.1    Introduction.

This section is intended to address how the SunCal Plan Proponents intend to implement the provisions of the Plan. It addresses the transfer of the Plan Trust Property to the Plan Trust, the nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the resolution of disputed claims, the sources of funds that will be used to pay claims and the mechanics of how claims will be paid.

### 7.2    Sale Process After Confirmation Date But Prior To Effective Date.

The core objective of the Plan is to enable all creditors holding Allowed Claims to receive the highest dividend possible by selling the estates' primary assets, the Group II Projects, to the highest bidder. The process of marketing the Group II Projects for sale will begin, pursuant to the Confirmation Order, immediately after the entry of this order. Although the Chapter 11 Trustee will not be formally removed under the Plan until the Effective Date, he will be required to work with the SunCal Proponents after the Confirmation Date to promote and facilitate the sale of the Group II Projects in accordance with the Plan terms.

The SunCal Proponents will pursue the following sale procedures after the Confirmation Date:

A.    Implementation of a Marketing Program. Once the Plan is confirmed, the SunCal Proponents will market the Group II Projects for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group II Project to the real estate brokerage community; b) advertising the Group II Projects for sale on a website that includes links allowing direct access to all relevant information regarding the Group II Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

B.    Identifying a Stalking Horse Bidder. During the Sale Period, the SunCal Parties will accept, on a provisional basis, an Opening Bid for one or both of the Group II Projects.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1  The bidder whose Opening Bid is accepted will become the "Stalking Horse Bidder." The Opening

2  Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group II Project.

3       C.    The Sale Contract. The sale contract that will be entered into with the

4  Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

5       1. Overbid Provisions. The contract will allow the SunCal Proponents to

6  seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the

7  Stalking Horse Bid by the Initial Overbid Amount applicable to each Group II Project. In the case

8  of Beaumont Heights Project, the Initial Overbid Amount is a sum that is not less than the sum of

9  the applicable Opening Bid, the Beaumont Heights Ranch Break-up Fee and Minimum Increment.

10 In the case of the Johannson Ranch Project, the Initial Overbid Amount is a sum that is not less

11 than the sum of the applicable Opening Bid, the Johannson Ranch Break-up Fee and the Minimum

12 Increment.

13      2.    Break-Up Fees. The sale contract will include a "break-up fee"

14 provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and

15 another Qualified Bidder purchases the Group II Project(s) that is the subject of the Opening Bid.

16 The Beaumont Heights Project Break-up Fee is fifty thousand dollars ($50,000), and the Johannson

17 Ranch Project Break-up Fee is twenty-seven thousand dollars ($27,000).

18      3.    Sale Free And Clear of Liens. The sale contract will provide that the

19 Group II Project(s) are being sold free and clear of all monetary liens and encumbrances and that

20 no party holding a lien against the projects.

21      D.    The Auction. Thirty (30) days prior to the Effective Date, the SunCal

22 Proponents will conduct an auction wherein all Qualified Bidders who have submitted Qualified

23 Bids for the Group II Projects will have the opportunity to increase their bids for these Projects.

24 The Qualified Bidder that submits the highest bid for the Project will then be designated the

25 Winning Bidder. The Winning Bidder will then have thirty (30) days to close this purchase

26 transaction by paying the Winning Bid amount. Once the Winning Bidder advises the SunCal Plan

27 Proponents that they are ready to close, the sequence of events described in paragraphs 7.3 through

28 7.5 shall be implemented.

1    The entire process of marketing and selling the Group II Projects will be overseen by an

2    independent real estate professional with experience managing sales of this kind. This professional

3    will participate in every material aspect of the sale effort, and he or she shall have the right to file

4    an objection to the sale effort with the Court if the process is not proceeding in a fair and effective

5    manner.

6        **7.3.**   **Transfer of Property To The Plan Trust**.

7    On the Effective Date, title to and possession of all property of the Group II: Voluntary

8    Debtors, excepting those items of property that the Plan Trustee affirmatively elects not to transfer

9    to the Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or

10   action under any applicable agreement, law, regulation, order or rule of law.

11       **7.4.**   **Closing of Group II Project Sales**.

12   On the Effective Date, the Group II Project(s) shall be sold free and clear of liens to the

13   Winning Bidder, at the Winning Bid.

14       **7.5.**   **Purposes of The Plan Trust**.

15   The Plan Trust's purposes, powers and objectives include, but are not limited to the

16   following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust

17   Property for the highest return reasonably obtainable: (ii) to pursue all Litigation Claims through

18   collection efforts, including through litigation in any court of competent jurisdiction, and to obtain

19   the most favorable recovery on the same, with due consideration of all relevant factors, including

20   cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts;

21   (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of

22   Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy

23   Court; (iv) to take such other actions as are necessary or useful to maximize the value of all

24   property received by the Plan Trust; (v) to make the payments and distributions to creditors and

25   holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to

26   the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the

27   terms of the Plan, including but not limited to selling the Group II Projects and the Assets. A more

28

MAINDOCS-#163413-v1-SCC_GroupIIVolunta:yDebtorsPlan.DOC

1  complete statement of the Plan Trust's powers and limitations is set forth in the Plan Trust

2  Agreement, which is a part of the Plan Supplement.

3       It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a

4  "liquidating trust," with the primary objective of liquidating the Plan Trust Property and

5  distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a

6  trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding

7  anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on

8  behalf of the Plan Trust shall be consistent with such primary objective.

9       **7.6.    Trust Agreement**.

10      Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan

11  Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the

12  initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the

13  authorities and powers of the Plan Trustee, consistent with this Plan.

14      **7.7.    Operations of the Plan Trust**.

15      From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan

16  Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the

17  Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of

18  the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than

19  restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Trust Agreement,

20  provided that the Plan Trust is administered so that it qualifies as a liquidating trust under Treasury

21  Regulation § 301.7701-4(d).

22      **7.8.    The Plan Trustee**.

23      Acquisitions shall be Trustee of the Plan Trust. Acquisitions is the direct or indirect parent

24  of all of Debtors.

25      **7.9.    Payment of Trust Expenses.**

26      The expenses incurred by the Plan Trust during the Plan Period, which shall include the

27  compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

28  the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

**7.10.** **Plan Distribution System.**

The Plan Trustee shall establish a separate "Distribution Account" for each Group II:
Voluntary Debtor at an FDIC insured bank. Each Group II Debtor's Available Cash, whether on
hand as of the Effective Date or received thereafter, shall be deposited into that Group II Debtor's
Distribution Account. The only exception to this provision shall be in the case of Net Sales
Proceeds that are subject to disputed liens. Such proceeds shall remain in the applicable Net
Proceeds Accounts established to receive the proceeds from the sale of a particular property. Once
all disputes regarding entitlement to the funds in the Net Proceeds Accounts have been resolved,
the proceeds remaining (after the payment of the Allowed Claims secured by liens on these
proceeds) shall be transferred to the Distribution Account. These funds will then be used to pay the
claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.

**7.11.** **Claims Estimation Rights.**

On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a
motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such
motion the estimation, for distribution purposes, of any Disputed Claim seeking recourse to, or
claiming an interest in, any asset of the Group II: Voluntary Debtors. After the Bankruptcy Court
estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,
the Committee shall have the right to use any funds or assets not deemed subject to the rights of the
Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed
Administrative Claims, after the Effective Date.

**7.12.** **No Payment of Transfer-Related Fees to the United States Trustee.**

The Plan Trust shall not be required to pay any fees to the United States Trustee based on
any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

**7.13.** **No Payment of Transfer-Related Fees to the Trustee.**

The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of
Plan Trust Property from the Trustee Debtors to the Plan Trust, or from the Plan Trust.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

### 7.14. **Books and Records of Trust**.

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence. provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for such books and records. The Plan Trust's books and records shall be open to inspection at all reasonable times, upon written request by the Committee.

### 7.15. **Limitations on Liability**.

The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

The Plan Trustee, and its officers, directors, agents and employees shall not be liable for any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust, including, without limitation, indebtedness, liabilities or obligations under agreements, undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall, under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may be asserted against the Plan Trustee, or any member of the New Board on account of any indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    Any undertaking, contract or agreement entered into in writing by the Plan may, except as

2 otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal

3 liability of Plan Trustee.

### 7.16.    Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests.

6    For all United States federal income tax purposes, the transfers by the Group II: Voluntary

7 Debtors shall be treated by the Group II: Voluntary Debtors, their estates, the Plan Trust and the

8 Plan Trust Beneficiaries as a transfer of the Plan Trust Property by the Group II: Voluntary Debtors

9 to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Property by such the Plan

10 Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and

11 deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust

12 Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust

13 Property consistently with the values placed upon the Plan Trust Property by the Plan Trust, and to

14 use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent

15 valuations of the Plan Trust Property by the Plan Trust Trustee and the Plan Trust Beneficiaries,

16 and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Property

17 within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust

18 Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be

19 conclusively deemed to agree to use such valuations for all purposes, including, without limitation,

20 in computing any gain recognized upon the exchange of such holder's claim for purposes of

21 determining any United States Federal income tax, and shall be required to include those items of

22 income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

23 its taxable income.

### 7.17.    Termination of the Trust.

25    The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

26 Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

27 the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

28 Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

1   with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

2   party have been concluded by dismissal or an order issued by the court in which such litigation is

3   pending and such order has become "final" (consistent with the definition of Final Order in this

4   Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

5   the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

6   request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

7   period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

8   of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

9   consider and rule on the request within six (6) months prior to the expiration of the initial five-year

10   term.

11        **7.18.**   **Exemption from Certain Transfer Taxes**.

12       In accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer or

13   exchange of a security or the making or delivery of an instrument of transfer under this Plan may

14   not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

15   agents shall forego the assessment and collection of any such tax or governmental assessment and

16   shall accept for filing and recordation any of the foregoing instruments or other documents without

17   payment of such tax or other governmental assessment.

18        **7.19.**   **Tax Consequence of the Plan**.

19       The implementation of the Plan may have federal, state and local tax consequences to the

20   Group II: Voluntary Debtors, Creditors and Interest Holders. No tax opinion has been sought or will

21   be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not

22   constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the

23   summary contained herein is provided for informational purposes only.

24       CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

25   OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

26   DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

27   FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

**7.20.   The Plan Sponsor.**

The Plan Sponsor shall be Acquisitions.

**7.21.   Acquisitions' Obligations.**

As part of its obligations as the Plan Sponsor, Acquisitions will manage the affairs of the Plan Trust and manage the payment of the following amounts required under the Plan:

      (a)   All Allowed Administrative Claims;

      (b)   Allowed Priority Claims; and

      (c)   Continuing Professional fees for the prosecution of the Litigation Claims and other post-confirmation expenses

In exchange for the above referenced services, Acquisitions, and all of its Affiliates shall receive a complete release from all of the Debtors, the Estates, and the Plan Trust of any potential Litigation Claims. The Group II: Voluntary Debtors consider this a fair exchange, because they do not believe that they hold any material claims against Acquisitions.

**7.22.   The Committee.**

On the Effective Date, the Committee shall continue to serve their applicable Debtors as Committee to the applicable reorganized Debtors, subject to the following:

**7.22.1.   Duties and Powers.**

The duties of the Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, standing to object to any settlement of any Litigation Claim in excess of $100,000, and standing to object to any proposed sales procedures on sale of the Debtors' Projects. The Committee shall receive notice of and the right to review all payments and Distributions.

The Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Committee under the terms of the Plan.  Such compensation shall be paid from the applicable Distribution Account(s).

**7.22.2.   Dissolution of Committee.**

The Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution,

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1  the Confirmation Committee shall have no other or further obligations or responsibilities on behalf

2  of the Plan Trust.

3  ### 7.23.  Litigation Claims.

4  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

5  Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo.

6  Unless a Litigation Claim is expressly waived, relinquished, released, sell, compromised or settled

7  in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the

8  Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee

9  shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10)

10  days' prior written notice and opportunity to object to one or another.  Any disputes concerning the

11  settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

12  resolution on no less than ten (10) days' notice to the objecting party.

13  ### 7.24.  Collection of Litigation Recoveries.

14  All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Committee

15  shall be promptly deposited into the applicable Distribution Account(s).  Except as otherwise

16  provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear

17  of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

18  ## VIII.

19  ## RISK FACTORS

20  ### 8.1    Plan Risks.

21  The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks

22  that creditors should be aware of prior to voting on the Plan. The more material of these risks are

23  summarized below.

24  ### 8.1.1    The Plan May Not Be Accepted or Confirmed.

25  While the SunCal Proponents believe that the Plan is confirmable under the

26  standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will

27  find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan

28  can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no

1  assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be

2  converted to a liquidation, or that any alternative plan of reorganization could or would be

3  formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the

4  Plan.

5          **8.1.2**    **Failure to Sell The Group II Projects**.

6        The Plan is based upon the assumption that the SunCal Plan Proponents will be able to

7  close the sale of the Group II Projects for at least Minimum Sales Prices on the Effective Date.

8  Although the SunCal Proponents are confident that they can achieve sales at these prices based

9  upon their market research and familiarity with the projects, a possibility exists that these sales will

10  not occur. If this occurs then the creditors holding liens against the Group II Projects will be

11  entitled to seek recourse against these properties, and this recourse would include foreclosure.

12                                          **IX.**

13                            **DISTRIBUTIONS**

14        **9.1**    **Distribution Agent**.

15        Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The

16  Distribution Agent may employ one or more sub agents on such terms and conditions as it may

17  agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

18  Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in

19  connection with the making of any Distributions pursuant to the Plan.

20        **9.2**    **Distributions**.

21          **9.2.1**    **Dates of Distributions**.

22        Any distribution required to be made on the Effective Date shall be deemed timely if made

23  as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any

24  distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

25  longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

26          **9.2.2**    **Limitation on Liability**.

27        Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any

28  of their employees, members, officers, directors, agents, or professionals or Affiliates shall be

1   liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in

2   connection with implementing the Distribution provisions of the Plan and the making or

3   withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions

4   made pursuant to the Plan resulting from any delays in making such distributions in accordance

5   with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed

6   Claims).

7         **9.3**    **Old Instruments and Securities.**

8               **9.3.1**    **Surrender and Cancellation of Instruments and Securities.**

9        As a condition to receiving any distribution pursuant to the Plan, each Person holding any

10   note or other instrument or security (collectively "Instruments or Securities" and individually an

11   "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender

12   such Instrument or Security to the Distribution Agent.

13               **9.3.2**    **Cancellation of Liens.**

14        Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be

15   deemed released and discharged, and the Person holding such Secured Claim shall be authorized

16   and directed to release any collateral or other property of the Debtors (including, without

17   limitation, any cash collateral) held by such Person and to take such actions as may be requested by

18   the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution,

19   delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

20               **9.3.3**    **De Minimis Distributions and Fractional Shares.**

21        No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any

22   Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever

23   payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a

24   rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not

25   distributed as a consequence of this section shall, after the last distribution on account of Allowed

26   Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

27               **9.3.4**    **Delivery of Distributions.**

28

1   Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders

2   of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1)

3   with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for

4   such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each

5   Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the

6   Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has

7   received a written notice of a change of address for such Holder, the address set forth in such

8   notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

9   such address as the Holder may specify in writing.

10          **9.3.5     Undeliverable Distributions.**

11   If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

12   Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

13   such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

14   shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

15   Holder's then current address.  Subject to the remainder of this Section and the following section,

16   Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and

17   shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash

18   Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject

19   Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or

20   any other Person to attempt to locate such Person.

21          **9.3.6     Disposition of Unclaimed Property.**

22   If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a

23   Distribution of Unclaimed Property within ninety (90) days following such Person's initial

24   Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together

25   with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as

26   practicable.  Any Holder of an Allowed Claim that does not assert a Claim in writing for

27   Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial

28   Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and

1  shall be forever barred from receiving any distributions under the Plan or otherwise from the Plan

2  Trustee. In such cases, any property held for Distribution on account of such Claims shall become

3  Available Cash and deposited into the Distribution Account.

4  **X.**

5  **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

6      **10.1**  **Standing for Objections to Claims.**

7      The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

8  objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall

9  be vested with the applicable Committee. The applicable Committee shall have standing to object

10  to any settlement of any Litigation Claim in excess of $100,000 and standing to object to any

11  proposed sales procedures and sale of the Debtors' Projects.

12      Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person

13  holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall

14  have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the

15  Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

16      **10.2**  **Treatment of Disputed Claims and Disputed Liens.**

17          **10.2.1 No Distribution Pending Allowance.**

18      If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

19  or distribution provided for under the Plan shall be made on account of such Claim or Lien unless

20  and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

21          **10.2.2 Distribution After Allowance.**

22      On the next Distribution Date following the date on which a Disputed Claim

23  becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

24  distribute to the Person holding such Claim any Cash that would have been distributable to such

25  Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

26  Disputed Claim.

27  **XI.**

28  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

-48-

**11.1    Executory Contracts.**

The SunCal Proponents shall provide a list of those contracts that being assumed or rejected under the Plan in the Plan supplement. However, this list may be amended at any time prior to the Effective Date.  All contracts or leases not assumed by the Effective Date shall be deemed rejected.

**11.2    Bar Date for Rejection Damages.**

Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates, their successors, or their properties, and shall not be entitled to any distribution under the Plan, unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

**11.3    Changes in Rates Subject to Regulatory Commission Approval.**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**XII.**

**BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

**12.1    Best Interests Test.**

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and Interests who have not accepted the plan and whose Claims are classified in Classes that are impaired under the plan, are not less than those which they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis. The Best Interests Test requires the Bankruptcy Court to find either that either (i) all Holders of Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount that such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

-49-

1    The Plan proposed by the Plan Proponents is essentially a liquidating plan. It provides for

2    the sale of all assets of the estate for their fair market value, the collection or recovery of all other

3    assets, and for the distribution of the resulting net proceeds from the sale, in accordance with the

4    priorities provided for in the bankruptcy code and under California law. A Chapter 7 trustee

5    appointed in this case would be compelled to liquidate the Debtors' assets in the same manner as

6    provided for in the Plan and to pay out the proceeds in the same manner as provided for in the

7    Plan. Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as

8    much" as such creditor would receive in a Chapter 7 case, which is all that is required under the

9    Best Interests Test.

10    Although the Lehman Entities will argue that they are being denied their "credit bid" rights

11    under the Plan, and this reduces their distribution below the level that they would receive in a

12    Chapter 7 case, this argument fails. A credit bid right does not add or reduce the value of a

13    creditor's collateral, it simply allows a creditor holding such a right to bid against other bidders

14    using its debt as "credit", rather than bidding in cash. If the creditor's collateral is sold for its "fair

15    market value," in cash, and the creditor receives what it is entitled to from the sales proceeds, then

16    the creditor is necessarily receiving exactly what it would receive in a Chapter 7. This is all that the

17    Best Interest Test Requires. See Exhibit "7" to the Disclosure Statement.

18        **12.2    Feasibility**.

19    In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

20    of the Plan is not likely to be followed by the liquidation or the need for further financial

21    reorganization of the Debtor(s). This requirement is imposed by Section 1129(a)(11) of the

22    Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

23    the Debtors' Plan provides for the sale of all assets of their respective estates and for the

24    distribution of the proceeds. Within the context of this Plan, feasibility is limited to having

25    sufficient funds to pay administrative and priority claims on the Effective Date and sufficient funds

26    to fund the sale of the Properties.

27    Under timeline provided for in the Plan, the Group II Projects will be sold on the Effective

28    Date. These sales will provide the Debtors the means to pay all claims, including allowed

1  administrative and priority claims on this same date, from escrow. All remaining claimants will

2  then receive what they are entitled under the Plan when their claims are allowed.

3                                    **XIII**

4                        **LIMITATION OF LIABILITY**

5       **13.1    No Liability for Solicitation or Participation.**

6            As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

7  rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

8  offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

9  the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

10  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

11  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

12                                   **XIV.**

13                    **CONDITIONS TO CONFIRMATION AND**

14                    **EFFECTIVENESS OF THE PLAN**

15       **14.1    Conditions Precedent to Plan Confirmation.**

16            The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

17  have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

18  Proponents.

19       **14.2    Conditions Precedent to Plan Effectiveness.**

20            The conditions precedent to the effectiveness of the Plan and the occurrence of the

21  Effective Date is that the Confirmation Order shall be a Final Order in form and substance

22  reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material

23  impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities

24  cases. The automatic stay in the Debtors cases shall continue to be applicable until the Effective

25  Date.

26                                    **XV.**

27                      **RETENTION OF JURISDICTION**

28

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

1    Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

2  Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's

3  jurisdiction shall apply to the fullest extent possible under applicable law.

4                                          **XVI.**

5                  **MODIFICATION OR WITHDRAWAL OF THE PLAN**

6        **16.1   Modification of Plan.**

7        At any time prior to confirmation of the Plan, the former Debtor(s) may supplement, amend

8  or modify the Plan.  After confirmation of the Plan,  the Debtors or Plan Trustee may (x) apply to

9  the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and

10 (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile

11 inconsistencies in the Plan.

12       **16.2   Nonconsensual Confirmation.**

13       In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

14 accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may

15 request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

16 Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

17 accordance with Section 1127(a) of the Bankruptcy Code.

18                                          **XVII.**

19                                    **MISCELLANEOUS**

20       **17.1   Payment of Statutory Fees.**

21       All quarterly fees due and payable to the Office of the United States Trustee pursuant to

22 Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

23 Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

24 been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

25 Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

26 due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent

27 required by Section 1930(a)(6) of title 28 of the United States Code.

28       **17.2   Payment Dates.**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

### 17.3    Headings.

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

### 17.4    Other Documents and Actions.

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

### 17.5    Notices.

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

**To the SunCal Plan Proponents:**
Bruce V. Cook
General Counsel
Authorized Agent of the SunCal Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Ronald Rus
Rus Miliband & Smith P.C.
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section 17.5, which designation will be effective on receipt.

**17.6    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**17.7    Binding Effect.**

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

**17.8    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**17.9    Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**17.10  No Waiver.**

MAINDOCS-#163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Committee', the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole or in part.

### 17.11  Inconsistencies.

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

### 17.12  Exemption from Certain Transfer Taxes and Recording Fees.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 17.13  Post-Confirmation Status Report.

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

### 17.14  Post-Confirmation Conversion/Dismissal.

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. The Plan Trustee reserves the right to object to any motion for conversion or dismissal. If the Court orders

MAINDOCS #163413-v1-SCC_GroupIIVoluntaryDebtersPlan.DOC

1    any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been

2    property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

3    in the Chapter 7 estate. The automatic stay will be re-imposed upon the revested property, but only

4    to the extent that relief from stay was not previously authorized by the Court during this case.

5        **17.15   Final Decree.**

6        Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

7    Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

8    motion with the Court to obtain a final decree to close the Case of such Debtor.

9    Date:  June 20, 2011

10                                            By: _____

11                                                 Bruce Cook
                                                  General Counsel, Authorized Agent for the Voluntary
                                                  Debtors and Acquisitions
12

13   **Submitted By:**

14   **WINTHROP COUCHOT
     PROFESSIONAL CORPORATION**

15

16   By: /s/ *Paul J. Couchot*
17          Paul J. Couchot,
     General Insolvency Counsel for
18   the Voluntary Debtors

19   **RUS MILIBAND & SMITH
     A PROFESSIONAL CORPORATION**

20

21   By:  /s/ *Ronald Rus*
            Ronald Rus, Esq.
22          Joel S. Miliband, Esq.
            Cathrine Castaldi, Esq.
23   Attorneys for SunCal Management, LLC and
     SCC Acquisitions Inc.
24

25

26

27

28

                                            -56-

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **FIRST AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL BEAUMONT HEIGHTS, LLC AND SUNCAL JOHANNSON RANCH, LLC [GROUP II: VOLUNTARY DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Susan Connor | |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

-57-

MAINDOCS-#163413-v1-SCC  GroupIIVoluntaryDebtorsPlan.DOC

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

MAINDOCS #163413-v1-SCC_GroupIIVoluntaryDebtorsPlan.DOC

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K. Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

-59-

- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

-60-