1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111

4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")

5
   RONALD RUS - State Bar No. 67369
6  JOEL S. MILIBAND - State Bar No. 77438
   RUS MILIBAND & SMITH A PROFESSIONAL
7  CORPORATION
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile: (949) 252-1514

10 Counsel for SunCal Management LLC and
   SCC Acquisitions Inc.

11

12

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>       Joint Administered Debtors and<br>       Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES; |

13

14

15

16  Affects:

17  ☐ All Debtors
    ☐ Palmdale Hills Property, LLC
18  ☐ SunCal Beaumont Heights, LLC
    ☐ SCC/Palmdale, LLC
19  ☐ SunCal Johannson Ranch, LLC
    ☐ SunCal Summit Valley, LLC
20  ☐ SunCal Emerald Meadows LLC
21  ☐ SunCal Bickford Ranch, LLC
    ☐ Acton Estates, LLC
22  ☐ Seven Brothers LLC
23  ☐ SJD Partners, Ltd.
    ☐ SJD Development Corp.
24  ☐ Kirby Estates, LLC
25  ☐ SunCal Communities I, LLC
    ☐ SunCal Communities III, LLC
26  ☒ SCC Communities LLC
27  ☒ North Orange Del Rio Land, LLC
28  ☒ Tesoro SF LLC

8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 Proceedings

**FIRST AMENDED CHAPTER 11 PLANS FILED BY THE APPLICABLE SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SCC COMMUNITIES, LLC, NORTH ORANGE DEL RIO LAND LLC AND TESORO SF LLC [GROUP III: VOLUNTARY DEBTORS]**

Date:      July 22, 2011
Time:      11:00 a.m.
Place:     Courtroom 5A

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

1

*Continued from Previous Page*

2  ☐ LBL-SunCal Oak Valley, LLC

3  ☐ SunCal Heartland, LLC
   ☐ LBL-SunCal Northlake, LLC

4  ☐ SunCal Marblehead, LLC

5  ☐ SunCal Century City, LLC
   ☐ SunCal PSV, LLC

6  ☐ Delta Coves Venture, LLC

7  ☐ SunCal Torrance, LLC
   ☐ SunCal Oak Knoll, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION.......................................................... | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION................. | 3 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS.......................... | 23 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS................... | 25 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.................................................... | 25 |
| VI. | ACCEPTANCE OR REJECTION OF THE PLAN .................... | 30 |
| VII. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN .............. | 33 |
| VIII. | RISK FACTORS ........................................................ | 43 |
| IX. | DISTRIBUTIONS........................................................ | 44 |
| X. | OBJECTION TO CLAIMS AND DISPUTE CLAIMS.................. | 47 |
| XI. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES............ | 48 |
| XII. | LIMITATION OF LIABILITY ........................................ | 48 |
| XIII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ...................................................... | 49 |
| XIV. | RETENTION OF JURISDICTION .................................... | 49 |
| XV. | MODIFICATION OR WITHDRAWAL OF THE PLAN ............... | 49 |
| XVI. | MISCELLANEOUS .................................................... | 50 |

MAINDOCS-#163423-v1-Group_III_VDs_Plan_Tesoro_Del_Rio_SCC_.DOC

# I.

## **INTRODUCTION**

These PLANS[1] are filed respectively by SCC Communities, Del Rio and Tesoro (the "Group III: Voluntary Debtors"), as the SunCal Plan Proponents, in the respective Chapter 11 Cases of the Group III: Voluntary Debtors.  In addition to being the proponent in the Trustee Debtors' Cases, Acquisitions shall be the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for all of the Debtors' cases for such Plans that are confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as the Disclosure Statement.  This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides for sale of the Joshua Ridge Project, the Tesoro Project, and the Net Del Rio CFD Bonds Proceeds (the "Group III Assets: Voluntary Debtors"), free and clear of all claims and liens, and for the liquidation of all other assets of the Group III: Voluntary Debtors. The Net Proceeds from these sales and/or liquidation will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.

Although similar and joint Plans are being filed in the Cases of all three Group III: Voluntary Debtors, each Plan is independent of the others. The Creditors in each Case will determine, subject to Court approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of some of the Group III: Voluntary Debtors, but not in others.

The Lehman Lenders have filed competing and alternative plans of reorganization in the SCC Communities and Tesoro Cases, but not in the Del Rio Case.  Accordingly, the creditors

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

1  holding claims against SCC Communities and Tesoro will have the opportunity to vote for one

2  plan or the other, or they can vote for both plans and allow the Court to decide which plan should

3  be approved.

4       The Plans are accompanied by the "Disclosure Statement Describing Chapter 11 Plans Filed

5  by SunCal Plan Proponents In The Chapter 11 Cases Of SCC Communities LLC, North Orange Del

6  Rio Land, LLC and Tesoro SF LLC" (the "Disclosure Statement"). The Disclosure Statement has

7  been approved by the Court. It is being provided along with this Plan in order to provide you with

8  critical information about the Debtors and to help you understand this Plan.

9       The Disclosure Statement discusses the Debtors' history, businesses, properties, and results

10  of operations and contains a summary and discussion of this Plan. Holders of Claims and Interests

11  and parties to executory contracts and unexpired leases are encouraged to read the Disclosure

12  Statement. No solicitation materials, other than the Disclosure Statement and related materials

13  transmitted therewith and approved for solicitation purposes by the Court, have been authorized for

14  use in soliciting acceptances or rejections of this Plan.

15                                              **II.**

16                    **DEFINITIONS AND RULES OF INTERPRETATION**

17       **2.1    Definitions.**

18       The following defined terms are used in this Plan. Any capitalized term that is not defined

19  herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning

20  ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

21            2.1.1   Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect

22  parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of

23  the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

24            2.1.2   Administrative Claim(s). Any Claim against a Group III: Voluntary Debtor

25  or its Estate incurred after the applicable Petition Date for the applicable Group III: Voluntary

26  Debtor but before the Confirmation Date, for any cost or expense of administration of the Case of

27  the applicable Group III: Voluntary Debtor, which Claim is entitled to priority under section

28  507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed

against an Estate of a Group III: Voluntary Debtor under section 1930 of Title 28 of the United

States Code.

      2.1.3   Administrative Claims Bar Date.  The last date fixed by the Plan for the

filing of Proof of Claims or requests for payment of Administrative Claims.  Under the Plan, the

Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the

Confirmation Date.

      2.1.4   Affiliate.  The term shall have the meaning set forth under Section 101(2),

including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

controls, is owned or controlled by, or is under common ownership or control with, such Person.

The term "control" (including, with correlative meanings, the terms "controlled by" and "under

common control with"), as applied to any Person, means the possession, direct or indirect, of the

power to direct or cause the direction of the management and policies of such Person, whether

through the ownership of voting securities or other equity ownership interest, by contract or

otherwise.

      2.1.5   Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or

Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

      2.1.6   Allowed Amount shall mean:

      A.   With respect to any Administrative Claim (i) if the Claim is based

upon a Fee Application, the amount of such Fee Application that has been approved by a Final

Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

incurred in the ordinary course of business of the Group III: Voluntary Debtors and is not

otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been

agreed to by the Group III: Voluntary Debtors and such creditor, failing which, the amount thereof

as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required

to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar

Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed

within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the

Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an

1  objection to such proof was interposed within the applicable period of time fixed by the

2  Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. The Allowed Amount of any

3  Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the

4  applicable Administrative Claims Bar Date shall be zero, and no distribution shall be made on

5  account of any such Administrative Claim;

6                  B.     with respect to any Claim which is not an Administrative Claim

7  (the "Other Claim"): (i) if the Holder of such Other Claim did not file proof thereof with the

8  Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

9  Group III: Voluntary Debtors" Schedules as neither disputed, contingent nor unliquidated; or (ii) if

10  the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

11  Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

12  interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

13  Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

14  Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

15  fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court. The

16  Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

17  listed on the Group III: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

18  contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no

19  distribution shall be made on account of any such Claim; and

20                  C.     with respect to any Interest, (i) the amount provided by or

21  established in the records of the Group III: Voluntary Debtors at the Confirmation Date, provided,

22  however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

23  records of the Group III: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed

24  prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

25  Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

26  by a Final Order of the Bankruptcy Court.

27

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro_Del_Rio_SCC_.DOC

1     2.1.7     Allowed Claim. Except as otherwise provided in the Plan (including with

2  respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

3  Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

4     2.1.8     Allowed Interest. Any Interest to the extent, and only to the extent, of the

5  Allowed Amount of such Interest.

6     2.1.9     Allowed Secured Claims. All or a portion of a Secured Claim that is an

7  Allowed Claim.

8     2.1.10    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

9  an Allowed Claim.

10    2.1.11    Assets. All assets that are property of the Debtor(s) pursuant to

11  Bankruptcy Code Section 541.

12    2.1.12    Arch. Arch Insurance Company, a Bond Issuer.

13    2.1.13    Available Cash. Each Group III: Voluntary Debtors' Cash deposited into

14  the applicable Distribution Account(s) on or after the Effective Date that is available for making

15  Distributions under the Plan to Holders of Allowed Administrative, Priority, and General

16  Unsecured Claims. The Available Cash shall consist of the respective Group III: Voluntary

17  Debtors' cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of

18  Net Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become

19  Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien

20  purportedly encumbering such Cash,. All Available Cash shall be deposited into the applicable

21  Distribution Account(s). Available Cash shall not include Net Sale Proceeds in the Net Sales

22  Proceeds Account where the Disputed Secured Claims are Allowed but subject to an equitable

23  subordination judgment.

24    2.1.14    Avoidance Actions. All Claims and defenses to Claims accruing to the

25  Group III: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c),

26  541, 544, 545, 547, 548, 549, 550, or 551.

27    2.1.15    Bankruptcy Code. The United States Bankruptcy Code.

28

-6-

2.1.16    <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.17    <u>Bankruptcy Rules</u>. Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.18    <u>Beneficial Interests</u>. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.19    <u>Bond Claim(s)</u>. Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.20    <u>Bond Claimant</u>. Holder(s) of a Bond Claim.

2.1.21    <u>Bond Indemnification Claim</u>. All Claims by Bond Safeguard, Lexon, and Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with respect to the Group III: Voluntary Debtors' Projects.

2.1.22    <u>Bond Indemnitors</u>. The individuals and entities that are allegedly liable on the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all Affiliates of Acquisitions, and Elieff.

2.1.23    <u>Bond Issuer(s)</u>. Bond Safeguard, Lexon and Arch in their capacities as issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

2.1.24    <u>Bond Safeguard</u>. Bond Safeguard Insurance Company, a Bond Issuer.

-7-

1          2.1.25    <u>Business Day</u>. Any day, other than a Saturday, a Sunday or a "legal

2    holiday," as defined in Bankruptcy Rule 9006(a).

3          2.1.26    <u>Cases</u>. The Chapter 11 cases of the Group III: Voluntary Debtors pending

4    before the Bankruptcy Court.

5          2.1.27    <u>Cash</u>. Currency of the United States of America and cash equivalents,

6    including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

7    transfers and other similar forms of payment.

8          2.1.28    <u>CFD Bonds</u>. Community facilities district bonds issued by a

9    governmental entity.

10          2.1.29    <u>Claim</u>. This term shall have the broadest possible meaning under

11    Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

12    Group III: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated,

13    unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

14    secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

15    breach gives rise to a right of payment from any of the Group III: Voluntary Debtors, whether or

16    not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured,

17    unmatured, disputed, undisputed, secured, or unsecured.

18          2.1.30    <u>Claims Bar Date</u>. For any Claim other than an Administrative Claim,

19    March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

20    file Proof of Claims with the Bankruptcy Court in all of the Group III: Voluntary Debtors' cases.

21          2.1.31    <u>Claims Objection Deadline</u>. The later of (i) the first business day

22    following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

23    period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

24    the Plan Trustee and the Holder of the Claim.

25          2.1.32    <u>Claim Objection Reduction Amount</u>. The amount of Net Sales Proceeds

26    that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

27    or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

28    secured claims filed by the Lehman Lenders.

1        2.1.33    Class. Each group of Claims or Interests classified in Article IV of the

2    Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

3        2.1.34    Confirmation Date. The date on which the Confirmation Order is entered

4    in the Bankruptcy Court's docket.

5        2.1.35    Confirmation Order. The order entered by the Bankruptcy Court

6    confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

7        2.1.36    Contingent Bond Claims. Unmatured Bond Claims.

8        2.1.37    Creditor. Any Person who is the Holder of a Claim against any Debtor

9    that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

10    become due, owing, and payable on or before the Petition Date, including, without limitation,

11    Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

12        2.1.38    Debtor(s). Individually or collectively, the Voluntary Debtors and the

13    Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

14        2.1.39    Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their

15    capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

16        2.1.40    Del Rio. North Orange Del Rio Land, LLC, a limited liability company, a

17    Voluntary Debtor, and the owner of the Net Del Rio CFD Bonds Proceeds.

18        2.1.41    Del Rio Break-Up Fee. The sum of two hundred eighty four thousand

19    dollars ($284,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for

20    the Net Del Rio CFD Bonds Proceeds, if such Stalking Horse Bidder is not the Winning Bidder.

21        2.1.42    Del Rio CFD Bonds. The Communities Facilities District Bonds

22    described in Exhibit "1."

23        2.1.43    Disclosure Statement. The document accompanying the Plans for the

24    Group III: Voluntary Debtors that is entitled "First Amended Disclosure Statement Describing

25    First Amended Chapter 11 Plans Filed by SunCal Plan Proponents In The Chapter 11 Cases Of

26    SCC Communities LLC, North Orange Del Rio Land, LLC and Tesoro SF LLC," and with all

27    accompanying exhibits.

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan_Tesoro_Del_Rio_SCC_.DOC

1     2.1.44  Disputed Claim(s). All or any part of a Claim other than any Allowed

2 Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

3 with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

4 is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

5 (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

6 Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

7 for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

8 order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

9 Deadline, which Adversary Proceeding, objection, or request for estimation has not been

10 dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

11 "Disputed Claim" pursuant to the Plan.

12     2.1.45  Disputed Interim Loan Agreement. A certain Loan Agreement, dated as of

13 October 31, 2007, by and between SCC LLC, as borrower and Lehman ALI, as lender, pursuant to

14 which Lehman ALI made a loan in the maximum aggregate amount of approximately $20 million.

15 The Interim Loan Agreement has an alleged balance due of $23,795,012.59 as of March 30, 2009.

16 The alleged obligation under the Interim Loan Agreement is allegedly secured by (a) an alleged

17 first-priority deed of trust on the Joshua Ridge Project; (b) an alleged first-priority deed of trust on

18 the Tesoro Project; and (c) an alleged first-priority lien on the Net Del Rio CFD Bonds Proceeds.

19     2.1.46  Disputed Lien(s). An asserted lien(s) against Assets of the Debtor(s) that

20 is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

21 or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

22     2.1.47  Disputed Secured Claim(s). That part of a Disputed Claim that is a

23 Secured Claim.

24     2.1.48  Distribution(s). Payments to Holders of Allowed Claims provided for

25 under the Plan.

26     2.1.49  Distribution Agent. The entity that is responsible for making Distributions

27 under the Plan, which shall be Acquisitions.

28

1    2.1.50 Distribution Account(s). Separate account(s) to be established by the Plan

2 Trustee at an FDIC insured bank into which each Group III: Voluntary Debtors' Available Cash

3 shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date

4 that would have belonged to such Group III: Voluntary Debtor shall be deposited, other than Net

5 Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

6    2.1.51 Distribution Date. With respect to any Allowed Claim or Allowed

7 Interest, the date on which a Distribution is required to be made under the Plan.

8    2.1.52 Effective Date. A date selected by the SunCal Plan Proponents that is not

9 later than the ninetieth (90th) calendar day after the Confirmation Date.

10    2.1.53 Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on

11 the Bond Claims with corresponding indemnity Claims against the Debtors.

12    2.1.54 Estates. The bankruptcy estates of the Group III: Voluntary Debtors

13 created pursuant to Section 541 of the Bankruptcy Code.

14    2.1.55 Fee Applications. Applications of Professional Persons under Sections

15 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

16 expenses in the Cases.

17    2.1.56 Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code

18 for allowance of compensation and reimbursement of expenses in the Cases.

19    2.1.57 Filed. Delivered to, received by and entered upon the legal docket by the

20 Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

21    2.1.58 Final Order. A judgment, order, ruling or other decree issued and entered

22 by the Bankruptcy Court.

23    2.1.59 General Unsecured Claim. A Claim against a Group III: Voluntary Debtor

24 that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority

25 Claim.

26    2.1.60 Group III: Voluntary Debtors. SCC Communities LLC, North Orange Del

27 Rio Land, LLC and Tesoro SF LLC

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro_Del_Rio_SCC_.DOC

2.1.61    Group III Assets: Voluntary Debtors. The Joshua Ridge Project, the Tesoro Project and the Net Del Rio CFD Bonds Proceeds.

2.1.62    Holder. The beneficial owner of any Claim or Interest.

2.1.63    Initial Overbid. The Initial Overbid is the first Qualifying Bid after the Opening Bid that is equal to or in excess of the Initial Overbid Amount.

2.1.64    Initial Overbid Amount. In the case of the Joshua Ridge Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Joshua Ridge Break-up Fee and ten dollars ($10,000). In the case of the Tesoro Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Tesoro Break-up Fee and thirty five thousand dollars ($35,000). In the case of the Net Del Rio CFD Bonds Proceeds, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Del Rio Break-Up Fee and one hundred thousand dollars ($100,000).

2.1.65    Insider. The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliatess, including the Lehman Entities.

2.1.66    Interest. Any equity security interest in any Group III: Voluntary Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Group III: Voluntary Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.67    Joshua Ridge Project. The Project owned by SCC Communities, located in the City of Victorville, California, as more particularly described herein.

2.1.68    LBHI. Lehman Brothers Holdings, Inc., a Lehman Entity, the parent company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

2.1.69    LCPI. Lehman Commercial Paper, Inc., a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

1    2.1.70    Lehman Adversary Proceeding.  The Group III: Voluntary Debtors' claims

2    pending in the adversary proceeding against the Lehman Lenders and/or the Lehman Successors

3    asserting various causes of action including fraudulent conveyances in connection with the

4    Disputed Interim Loan Agreement.

5    2.1.71    Lehman ALI.  Lehman ALI, Inc.

6    2.1.72    Lehman Claim Objections.  The objections filed by the Debtors to the

7    claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

8    Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

9    Objection and the Lehman 502(d) Objection.

10    2.1.73    Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

11    LBHI.

12    2.1.74    Lehman Equity Members.  Lehman Entities that own direct or indirect

13    membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

14    Marblehead.

15    2.1.75    Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC

16    Holdings.

17    2.1.76    Lehman Disputed Loans.  Collectively the following loans that are the

18    purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement;

19    (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

20    (e) Disputed Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement;

21    (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta

22    Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal

23    Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan

24    Agreement; and (n) Pacific Point Second Loan Agreement.

25    2.1.77    Lehman Representatives.  The individuals that controlled the Lehman

26    Entities.

27

28

1          2.1.78    Lehman Successor(s). Entities other than the Lehman Lenders that either

2    assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

3    Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

4          2.1.79    Lehman's Disputed Claim(s). All of the Proofs of Secured Claims filed by

5    a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

6    Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

7          2.1.80    Lehman's Disputed Lien(s). All of the alleged liens relating to Proofs of

8    Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

9    Cases arising from the Lehman Disputed Loans.

10          2.1.81    Lexon. Lexon Insurance Co.

11          2.1.82    Litco. Anewly formed Delaware limited liability company.

12          2.1.83    LitCo Plan Loan. A loan that will be made by LitCo, to the extent

13    necessary to pay Administrative Claims, and post Confirmation Date costs incurred by the SunCal

14    Proponents in connection with the sale process, and to pay post Effective Date costs incurred by

15    the Plan Trust, including litigation expenses where applicable, if no other source is available to pay

16    these obligations. LitCo will be capitalized with funds provided by a third party.

17          2.1.84    Litigation Claims. Any and all interests of the Group III: Voluntary

18    Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

19    rights, or causes of action which have been or may be commenced by the Group III: Voluntary

20    Debtor(s), the Chapter 11 Trustee, or the Voluntary Debtors' Committee, as the case may be,

21    including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Group

22    III: Voluntary Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment

23    of money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in

24    the form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the

25    Lehman Adversary Proceeding; (vi) the State Court Action, and (vii) any and all other Claims

26    against Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure

27    Statement.

28

1        2.1.85   Litigation Recoveries.  Any Cash or other property received by the

2  Chapter 11 Trustee, the Group III: Voluntary Debtors, the Voluntary Debtors' Committee and/or

3  the Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but

4  not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

5  whether recovered by way of settlement, execution on judgment or otherwise.

6        2.1.86   Joshua Ridge Break-up Fee. The sum of six thousand four hundred dollars

7  ($6,400) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the Joshua

8  Ridge Project, if such Stalking Horse Bidder is not the Winning Bidder.

9        2.1.87   Maximum Distributions.  A Distribution to a Holder of an Allowed

10  General Unsecured Claim against a Group III: Voluntary Debtor equal to one hundred percent

11  (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal

12  Rate from and as of the Group III: Voluntary Debtor's Petition Date.

13        2.1.88   MB Firm.  Miller Barondess, LLP.

14        2.1.89   Minimum Increment.  Minimum Increment applicable to the sales of the

15  Group III Assets: Voluntary Debtors is fifty thousand dollars ($50,000), until there are only two

16  Qualified Bidders submitting bids for a Group III Asset: Voluntary Debtor, then the Minimum

17  Increment shall be fifty thousand dollars ($25,000).

18        2.1.90   Minimum Sale Price. The minimum gross sale price that must be paid for

19  either the Joshua Ridge Project, the Tesoro Project or the Net Del Rio CFD Bonds Proceeds before

20  such project can be sold pursuant to the Plan. Such prices are $144,000, $666,000 and $6,390,000

21  respectively.

22        2.1.91   Net Del Rio CFD Bonds Proceeds.  The net proceeds of CFD Bonds that

23  were issued by City of Orange and authorized by Order of the Bankruptcy Court, described in

24  Exhibit "1" to the Disclosure Statement.

25        2.1.92   Net Litigation Recoveries.  Litigation Recoveries less associated

26  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

27  Litigation Recoveries.

28

1             2.1.93    <u>Net Sales Proceeds</u>. The Cash generated from the sale(s) or liquidation of

2  the Group III: Voluntary Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling

3  expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and

4  Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

5             2.1.94    <u>Net Sales Proceeds Account(s)</u>. Separate account(s) that will be

6  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

7  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

8  and/or a Disputed Lien(s). There shall be a separate Net Sales Proceeds Account for the Net Sale

9  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

10  where there are two Disputed Liens on a single Project, in which case, there shall be a single

11  account for the proceeds generated from that Project. The Disputed Secured Claim(s) and/or

12  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

13  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

14  applicable Disputed Lien(s). To the extent that a particular Disputed Claim is disallowed or a

15  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

16  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

17  thereto shall become Available Cash and shall be transferred to the applicable Distribution

18  Account(s). To the extent that a particular Disputed Secured Claim and a Disputed Lien are

19  allowed and deemed valid but subject to the equitable subordination causes of action in the

20  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

21  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

22            2.1.95    <u>Opening Bid</u>. Opening Bid means the offer for one, or both of the Group

23  III Assets: Voluntary Debtors, which is equal to the Minimum Sale Price(s) accepted by the Debtor

24  for either one or both of the Group III Assets: Voluntary Debtors.

25            2.1.96    <u>Orders for Relief Date</u>. The following are dates that orders for relief were

26  entered for each of the Trustee Debtors:

| SunCal Oak Valley | January 6, 2009 |
|---|---|
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |

| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.97    <u>Tesoro Break-up Fee</u>. The sum of thirty thousand four hundred dollars ($30,400) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the Tesoro Project, if such Stalking Horse Bidder is not the Winning Bidder.

2.1.98    <u>Person</u>. An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.99    <u>Petition Dates</u>. The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |

-17-

| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.100   Plan. The First Amended Chapter 11 Plans Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SCC Communities LLC, North Orange Del Rio Land, LLC and Tesoro SF LLC, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.101   Plan Documents. The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.102   Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.103   Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.104   Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects an earlier date.

2.1.105   Plan Sponsor. The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date. The Plan Sponsor is Acquisitions.

2.1.106   Plan Trust. A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.107   Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

2.1.108   Plan Trust Agreement. The liquidating trust agreement governing the affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

2.1.109   Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Property in accordance with the terms of the Plan.

2.1.110   Plan Trust Property. Plan Trust Property means all property within the Chapter 11 estates of the Group III: Voluntary Debtors, other than property that is affirmatively excluded by the Plan Trustee.

2.1.111   Post-Confirmation Expenses. The fees and expenses incurred by the Plan Sponsor, the Plan Trustee and the Voluntary Debtors' Committee and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Group III: Voluntary Debtors' Chapter 11 Cases.

2.1.112   Priority Claim. Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.113   Pro Rata. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.114   Professional. A Person or Entity (a) employed by the Group III: Voluntary Debtors, the Voluntary Debtors' Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.115   Professional Fees. All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.116   Projects. The Debtors' residential real estate development projects and other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

2.1.117   Qualifying Bid. Qualifying Bid means, with respect to any bid on a Group III Asset: Voluntary Debtor, a bid made by Qualifying Bidder that is A) equal to or in excess of the Initial Overbid Amount, if it is the Initial Overbid, or B) in excess of the immediately preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

2.1.118   Qualifying Bidder. Qualifying Bidder means a bidder who a) has deposited the sum of one hundred thousand dollars ($100,000) in an escrow designated by the SunCal Proponents; b) agreed that this sum will be forfeited as liquidated damages if such bidder fails to perform; and c) who has provided the SunCal Plan Proponents evidence confirming that such bidder has the financial means to acquire the applicable Group III Asset: Voluntary Debtor(s) that such bidder is seeking to acquire.

2.1.119   Sale Period. The Sale Period is the time period during which the SunCal Proponents must consummate a sale or liquidation of the Group III Assets: Voluntary Debtors. The Sales Period shall commence on the Confirmation Date and shall expire on the Effective Date.

2.1.120   SCC Communities. SCC Communities LLC, a limited liability company, a Voluntary Debtor (a Group III: Voluntary Debtor), and the owner of the Joshua Ridge Project

2.1.121   SCC LLC. SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.122   Schedules. The schedules of assets and liabilities and list of equity security holders Filed by the Group III: Voluntary Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.123   Secured Claim. A Claim secured by a lien on any property of any of the Estate, but only to the extent of the value of the interest of the holder of such Allowed Claim in the interest of the Estate in such property.

2.1.124   Stalking Horse Bidder. The Qualified Bidder who submits the Opening Bid.

1         2.1.125   Secured Claim. Any Claim, including interest, fees, costs, and charges to

2 the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

3 unavoidable Lien on the Group III: Voluntary Debtor(s)' Assets.

4         2.1.126   State Court Action. The action filed by certain Voluntary Debtors against

5 Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

6 Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan

7 Trustee and/or the Trustee Debtors as additional plaintiffs therein.

8         2.1.127   SunCal. The SunCal Companies, a trade name for Acquisitions and its

9 Affiliates.

10         2.1.128   SunCal Management. SunCal Management, LLC, a Delaware limited

11 liability company, and the property manager for the Projects.

12         2.1.129   SunCal Plan Proponent(s). The Group III: Voluntary Debtors and

13 Acquisitions as the parties-in-interest that are proposing the Plan.

14         2.1.130   Tax. Any tax, charge, fee, levy, impost or other assessment by any

15 federal, state, local or foreign taxing authority, including, without limitation, income, excise,

16 property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

17 estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

18 additions attributable to, or imposed on or with respect to such assessments.

19         2.1.131   Tax Claim. Any Claim for any Tax to the extent that it is entitled to

20 priority in payment under Section 507(a)(8) of the Bankruptcy Code.Tesoro. Tesoro SF, LLC, a

21 Delaware limited liability company, a Voluntary Debtor (a Group III: Voluntary Debtor), and the

22 owner of the Tesoro Project.

23         2.1.132   Tesoro Project. The Project owned by Tesoro, located in the City of

24 Santa Clarita, California, as more particularly described herein.

25         2.1.133   Trustee Debtor(s). The following Debtors, individually or collectively,

26 that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

27 Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

28 Torrance, and SunCal Oak Knoll.

2.1.134    Unpaid Secured Real Property Tax Claims. Secured Claims held by various government entities secured by liens on the underlying real properties owned by the Debtors but that are non-recourse to the Debtors.

2.1.135    Unsecured Claim. An Unsecured Claim is any Claim that is not an Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

2.1.136    Voluntary Debtor(s). The following  Chapter 11 debtors and debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio and Tesoro.

2.1.137    Voluntary Debtors' Committee. The Official Committee of Unsecured Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code.

2.1.138    Winning Bid. The highest Qualifying Bid received for the Joshua Ridge Project or the Tesoro Project.

2.1.139    Winning Bidder. The party that submits the highest Qualifying Bid.

**2.2      Rules of Construction.**

For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

1  the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

2  contract, instrument, release, indenture, agreement, or other document being in a particular form or

3  on particular terms and conditions means that such document shall be substantially and materially

4  in such form or substantially and materially on such terms and conditions; (h) any reference in the

5  Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

6  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

7  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

8  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

9  express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

10      **2.3     Exhibits.**

11          All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

12  therein.

13                                          **III.**

14                  **TREATMENT OF UNCLASSIFIED CLAIMS**

15      **3.1     Introduction**. As required by the Bankruptcy Code, the Plan places Claims and

16  Interests into various Classes according to their right to priority. However, certain types of Claims

17  are not classified in any Classes under the Plan. These Claims are deemed "unclassified" under the

18  provisions of the Code. They are not considered impaired and they do not vote on the Plan,

19  because they are automatically entitled to specific treatment provided for them in the Code. As

20  such, the SunCal Plan Proponents have not placed the following Claims in a Class. The treatment

21  of these unclassified Claims is as provided below.

22      **3.2     Treatment of Allowed Administrative Claims.**

23          The Code requires that all Allowed Administrative Claims be paid on the later of Effective

24  Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

25  treatment. The treatment of Allowed Administrative Claims is as described below. However, such

26  Administrative Claims are continuing to be incurred.

27          Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

28  different treatment and subject to the Administrative Claims Bar Date set forth herein, the

1  Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

2  (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

3  becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

4  becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative

5  Claim representing obligations incurred in the ordinary course of post-petition business by the

6  Debtors in Possession (including without limitation post-petition trade obligations and routine

7  post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the

8  ordinary course of business, in accordance with the terms of the particular obligation.

9      **3.3    Administrative Claims Bar Date.**

10     All applications for final compensation of Professionals for services rendered and for

11  reimbursement of expenses incurred on or before the Effective Date and all other requests for

12  payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

13  or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

14  obligations and routine post-petition payroll obligations incurred in the ordinary course of the

15  Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

16  obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

17  upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

18  extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

19  of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

20  is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

21  any party that seeks payment of Administrative Claims that (i) is required to file a request for

22  payment of such Administrative Claims and (ii) does not file such a request by the deadline

23  established herein shall be forever barred from asserting such Administrative Claims against the

24  Debtors, the Plan Trust, their estates, or any of their property.

25     **3.4    Treatment of Unsecured Tax Claims.**

26     Tax Claims are certain unsecured income, employment and other taxes described by Code

27  Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

28  receive the present value of such Claim in deferred cash payments, over a period not exceeding

1   five (5) years from the petition date and that such treatment not be less favorable than the treatment

2   accorded to non priority unsecured creditors.

3        At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

4   entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

5   each three-month period following the Effective Date, during a period not to exceed five years

6   after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

7   unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

8   United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

9   the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

10   favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

11   forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

12   **IV.**

13   **CLASSIFICATION OF CLAIMS AND INTERESTS**

14        As required by the Code, the Plan places Claims and Interests into various Classes

15   according to their right to priority and other relative rights.  The Plan specifies whether each Class

16   of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

17   will receive.  The table below lists the Classes of Claims established under the Plan and states

18   whether each particular Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired"

19   if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

20   Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

21   Code.

| CLASSIFICATION OF HOLDERS OF UNPAID SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| Class 1.1 | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Tesoro Project in the amount of $123,366. | Tesoro 2 |

---

[2] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

| CLASSIFICATION OF HOLDERS OF UNPAID SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| Class 1.2 | San Bernardino County as the Holder of an Unpaid Secured Real Property Tax Claim against the Joshua Ridge Project in the amount of $47,163. | Estimate as of March 1, 2011 But Ongoing |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| Class 2.1 | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SCC Communities, Tesoro and Del Rio arising from the Disputed Interim Loan Agreement in the asserted amount of $23,795,012. | SCC Communities: 9 Del Rio: 14 Tesoro: 7 |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| Class 3.1 | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted against SCC Communities. | Scheduled Amount |
| Class 3.2 | The Holder of Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7) in the asserted against Del Rio. | Scheduled Amount |
| Class 3.3 | The Holder of Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7) in the asserted against Tesoro. | Scheduled Amount |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| Class 4.1 | Claimants holding Allowed Unsecured Claims against SCC Communities. | Various Filed and Scheduled |
| Class 4.2 | Claimants holding Allowed Unsecured Claims against Del Rio. | Various Filed and Scheduled |

-26-

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS | | |
| --- | --- | --- |
| **Class 4** | **Claimant** | **Claim Nos.** |
| Class 4.3 | Claimants holding Allowed Unsecured Claims against Tesoro. | Various Filed and Scheduled |

| CLASSIFICATION OF INTEREST HOLDERS | | |
| --- | --- | --- |
| **Class 5** | **Claimant** | **Amount** |
| Class 5.1 | Allowed Interests in SCC Communities held by SCC LCC | 100% |
| Class 5.2 | Allowed Interests in Tesoro held by SCC LLC | 100% |
| Class 5.3 | Allowed Interests in Del Rio held by SCC LLC | 100% |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1** **The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Secured by Group III Assets: Voluntary Debtors Against Group III: Voluntary Debtors (Classes 1.1 and 1.2).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 and 1.2 are not impaired under the Plan. Such claimants shall retain their existing lien rights and one of the following two non-impairment options shall apply, at the election of the Plan Trustee: 1) On the Effective Date, such claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2), or 2) on the Effective Date, or the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law.

**5.2** **The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) Against Group III: Voluntary Debtors (Class 2.1).**

The Holder of Disputed Secured Claims within Class 2.1 shall receive the indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), through the following treatment:

        A.     Lien Rights. The Class 2.1 Holder shall retain their alleged interest, if any, in the Disputed Lien(s) against Plan Trust Assets that secure the Disputed Secured Claims, pending

1    a Final Order(s) resolving the Allowance of such Disputed Secured Claims and determining the

2    validity, priority and extent of the applicable Disputed Liens against the applicable Plan Trust

3    Assets, which secure these claims, except as follows:

4                    1.

5                    1.    The Plan Trust Assets subject to the Class 2.1 Disputed Liens may

6    be sold free and clear of such liens on the Effective Date. These Disputed Liens shall then attach to

7    the Net Proceeds from the sale, which shall be deposited into the Net Proceeds Account;

8                    2.    To the extent that a Disputed Secured Claim held by either the Class

9    2.1 Claimant against either Group III Asset: Voluntary Debtor is disallowed, and the Disputed Lien

10   associated with this Disputed Secured Claim is consequently released to the extent of this

11   disallowance, the Plan Trustee shall be authorized to use the Net Proceeds that are no longer

12   subject to the Disputed Lien(s) or entitled to priority over the Disputed Lien(s) to pay other

13   Allowed Claims in their order of priority, in accordance with the terms of the Plan;

14                   3.    To the extent that a Disputed Secured Claim held by either the Class

15   2.1 Claimant and the associated Disputed Lien(s) against either Group III Asset: Voluntary Debtor

16   are subordinated, the Plan Trustee shall be authorized to use to the Net Proceeds that are no longer

17   subject to the Disputed Lien(s) to pay other Allowed Claims in their order of priority, in

18   accordance with the terms of the Plan, to the extent of the subordination; and

19                   Notwithstanding the existence of the Disputed Secured Claims and the

20   Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Proceeds Account

21   subject to these claims and liens to pay the claims of other creditors in accordance with the terms

22   of the Plan, if the Class 2.1 Claimant's interests in this property will remain adequately protected

23   after this release.

24           B.    Sale of Group III Assets: Voluntary Debtors. The Plan Trustee shall

25   complete the sale of Group III Assets: Voluntary Debtors on the Effective Date that are subject to

26   the Holder(s)' Disputed Secured Claims and Disputed Liens, free and clear of such claims and

27   liens, through a sale that satisfies the following conditions:

28

1        1.    The Group III Assets: Voluntary Debtors will be sold through a

2   public auction after a commercially reasonable marketing and advertising effort of at least sixty

3   (60) days duration;

4        2.    The SunCal Plan Proponents shall have the right to provisionally

5   accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this

6   bidder the Joshua Ridge Break-Up Fee,the Tesoro Break-up Fee or the Del Rio Break-Up Fee as

7   the case may be;

8        3.    Other Qualified Bidders shall have the right to overbid the Opening

9   Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must

10   be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be

11   equal to or in excess or the Minimum Increment;

12        4.    The highest Qualifying Bid received from a Qualified Bidder, shall

13   be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon

14   payment of the Winning Bid, the Winning bidder shall receive title to the applicable Group III

15   Asset: Voluntary Debtor free and clear of all monetary liens and encumbrances; and

16        5.    No bidder shall be allowed to submit or demand the acceptance of a

17   "credit bid" based upon an existing claim or lien.

18        C.

19        C.    Distributions To The Class 2.1 Claimant. If the Plan Trustee consummates a

20   sale or otherwise liquidates the particular Asset(s) subject to the Class 2.1 Disputed Secured

21   Claim(s) and/or Disputed Lien(s) during the Sales Period, as provided for above, the Holder(s) of

22   such Disputed Secured Claim shall receive a distribution to the extent of available funds from the

23   applicable Net Sale Proceeds Account(s) to the extent required by a Final Order determining the

24   allowance and priority of the Disputed Secured Claims and the validity, priority and extent of the

25   Disputed Liens in, including but not limited to, the Lehman Adversary Proceeding and the Lehman

26   Claims Objections.

27   **5.3**    **The Plan's Treatment of Holders of Priority Claims Against Group III:**

28        **Voluntary Debtors (Classes 3.1 to 3.3)**.

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

1     The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

2           A.    The Holder(s) are unimpaired under the Plan; and

3           B.    The Holder(s) shall be paid either from the applicable Distribution

4     Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the

5     Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such

6     Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed

7     Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and

8     the Plan Trustee.

9         **5.4**    **The Plan's Treatment of Holders of Allowed General Unsecured Claims**

10            **Against Group III: Voluntary Debtors (Classes 4.1 to 4.3).**

11    The rights of Holders of Allowed Class 4.1 to 4.3 Claims are impaired under the Plan.

12    Under the Plan, each claimant will receive, after payment in full of all Post Confirmation

13    Expenses, Allowed Administrative Claims, and Allowed Priority Claims, a pro-rata distribution up

14    to 100% of such Holder's Allowed Claim from funds payable from the applicable Distribution

15    Account(s).

16        **5.5**    **The Plan's Treatment of Holders of Allowed Interests Against Group III:**

17            **Voluntary Debtors.**

18    The Interests of the Holders in Class 5.1 to 5.3 are impaired under the Plan. Any potential

19    distribution to Holders of Allowed Interest against the Group III: Voluntary Debtor shall first be

20    used to pay any deficit to Holders of Allowed General Unsecured Claims in the other Group III:

21    Voluntary Debtors, and second to be used to fund Allowed Administrative Claims in the Voluntary

22    Debtors' cases, and then to repay the Litco. Administrative Claim.

23                        **VI.**

24          **ACCEPTANCE OR REJECTION OF THE PLAN**

25        **6.1**    **Introduction.**

26    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

27    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

28    CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

1  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

2  which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors

3  cannot represent that the discussion contained below is a complete summary of the law on this

4  topic.

5      Many requirements must be met before the Court can confirm the Plan. Some of the

6  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

7  the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

8  whether the Plan is feasible. The requirements described herein are not the only requirements for

9  confirmation.

10      **6.2    Who May Object to Confirmation of the Plan.**

11      Any party in interest may object to the confirmation of the Plan, but as explained below not

12  everyone is entitled to vote to accept or reject the Plan.

13      **6.3    Who May Vote to Accept/Reject the Plan.**

14      A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of

15  the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and

16  (2) Classified in an impaired Class. The votes will be tabulated on a Debtor by Debtor basis.

17      **6.4    What Is an Allowed Claim/Interest.**

18      As noted above, a Holder of Claim or Interest must first have an Allowed Claim or

19  Allowed Interest to vote.

20      **6.5    What Is an Impaired Class.**

21      A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

22  or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

23  In this case, the Debtors believe that all Classes, except for Class 1.1, 1.2, 3.1, 3.2 and 3.3 are

24  impaired.

25      **6.6    Who Is Not Entitled to Vote.**

26      The following four types of Claims are not entitled to vote: (1) Claims that have been

27  disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to

28  Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain

1   any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such

2   Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy

3   Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

4   they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes

5   that do not receive or retain any property under the Plan do not vote because such Classes are

6   deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except

7   Class 1.1, 1.2, 3.1, 3.2, and 3.3. These classes are not impaired under the Plan and consequently are

8   not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by

9   the Holders in Classes 5.1, 5.2 and 5.3 are being cancelled under the Plan; accordingly these

10  Interest Holders are deemed to have voted to reject the Plan.

11       EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

12  HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

13       **6.7    Who Can Vote in More than One Class.**

14       A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

15  Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

16  the secured part of the Claim and another ballot for the Unsecured Claim. Also, a Creditor may

17  otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

18  Subordinated Note Claims), and may vote the Claims held in each Class.

19       **6.8    Votes Necessary for a Class to Accept the Plan.**

20       A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

21  number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

22  accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least

23  two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

24  the Plan.

25       **6.9    Treatment of Nonaccepting Classes.**

26       As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

27  Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

28  required by the Code and at least one impaired Class of Claims accepts the Plan. The process by

1   which a plan may be confirmed and become binding on non-accepting Classes is commonly

2   referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on

3   nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

4   requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

5   equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

6   11 U.S.C. § 1129(b) and applicable case law.

7       **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

8       The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

9   impaired Class if such Class does not vote to accept the Plan.

10                                      **VII.**

11          **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

12      **7.1    Introduction.**

13      This section is intended to address how the SunCal Plan Proponents intend to implement

14  the provisions of the Plan. It addresses the transfer of the Plan Trust Property to the Plan Trust, the

15  nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

16  resolution of disputed claims, the sources of funds that will be used to pay claims and the

17  mechanics of how claims will be paid.

18      **7.2    Sale Process After Confirmation Date But Prior To Effective Date.**

19      The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

20  the highest dividend possible by selling the estates' primary assets, the Group III Assets: Voluntary

21  Debtors, to the highest bidder. The process of marketing the Group III Assets: Voluntary Debtors

22  for sale will begin, pursuant to the Confirmation Order, immediately after the entry of this order.

23  Although the Chapter 11 Trustee will not be formally removed under the Plan until the Effective

24  Date, he will be required to work with the SunCal Proponents after the Confirmation Date to

25  promote and facilitate the sale of the Group III Assets: Voluntary Debtors in accordance with the

26  Plan terms.

27      The SunCal Proponents will pursue the following sale procedures after the Confirmation

28  Date:

A.    Implementation of a marketing program. Once the Plan is confirmed, the SunCal Proponents will market the Group III Assets: Voluntary Debtors for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group III Asset: Voluntary Debtor to the real estate brokerage community; b) advertising the Group III Assets: Voluntary Debtors for sale on a website that includes links allowing direct access to all relevant information regarding the Group III Assets: Voluntary Debtors; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

A.    Identifying a Stalking Horse Bidder. During the Sale Period, the SunCal Parties will accept, on a provisional basis, an Opening Bid for one or both of the Group III Assets: Voluntary Debtors. The bidder whose Opening Bid is accepted will become the "Stalking Horse Bidder." The Opening Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group III Asset: Voluntary Debtor: $144,000 for the Joshua Ridge Project, $666,000 for the Tesoro Project and $6,390.000 for the Net Del Rio CFD Bonds Proceeds.

B.    The Sale Contract. The sale contract that will be entered into with the Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

1.    Overbid Provisions. The contract will allow the SunCal Proponents to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the Stalking Horse Bid by the Initial Overbid Amount applicable to each Group III Asset: Voluntary Debtor. In the case of the Joshua Ridge Project, the Initial Overbid Amount is a sum that is not less than $144,000, plus the Joshua Ridge Break-up Fee, plus ten thousand dollars ($10,000). In the case of the Tesoro Project, the Initial Overbid Amount is $666,000, plus the Tesoro Break-up Fee, plus thirty five thousand dollars ($35,000). In the case of the Net Del Rio CFD Bonds Proceeds, the Initial Overbid Amount is $6,390,000, plus the Del Rio Break-up Fee, plus one-hundred thousand dollars ($100,000).

2.    A Break-Up Fee. The sale contract will include a "break-up fee" provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and another Qualified Bidder purchases the Group III Asset: Voluntary Debtor(s) that is the subject of

1  the Opening Bid. The Joshua Ridge Break-up Fee is $6,400, the Tesoro Break-up Fee is $30,400,

2  and the Del Rio Break-Up Fee is $284,000.

3          3.      Sale Free And Clear of Liens. The sale contract will provide that the

4  Group III Asset: Voluntary Debtor(s) are being sold free and clear of all monetary liens and

5  encumbrances and that no party holding a lien against the projects, including the Lehman Lenders,

6  may submit a "credit bid" based upon the amount allegedly owing on the claims secured by the

7  project being sold.

8          D) The Auction. Ten days prior to the Effective Date, the SunCal Proponents will

9  conduct an auction wherein all Qualified Bidders who have submitted Qualified Bids for the Group

10  III Assets: Voluntary Debtors will have the opportunity to increase their bids for these Projects.

11  The Qualified Bidder that submits the highest bid for the Project will then be designated the

12  Winning Bidder. The Winning Bidder will then have twenty (20) days to prepare to close this

13  purchase transaction by paying the Winning Bid amount. Once the Winning Bidder advises the

14  SunCal Plan Proponents that they are ready to close, the sequence of events described in

15  paragraphs 7.3 through 7.5 shall be implemented.

16      **7.3.    Possession and Control**.

17          As of the Effective Date, possession and control over all property within these estates shall

18  pass to the Plan Trust.

19      **7.4.    Transfer of Property To The Plan Trust**.

20          On the Effective Date, title to and possession of all property of the Group III: Voluntary

21  Debtors, excepting those items of property that the Plan Trustee affirmatively elects not to transfer

22  to the Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or

23  action under any applicable agreement, law, regulation, order or rule of law.

24      **7.5.    Closing of Group III Asset: Voluntary Debtor Sales**. On the Effective Date, the

25  Winning Bidder and the Plan Trustee shall open escrow and the Group III Asset: Voluntary

26  Debtor(s) shall be sold free and clear of liens to the Winning Bidder, at the Winning Bid.

27      **7.6.    Purposes of The Plan Trust**.

28

1      The Plan Trust's purposes, powers and objectives include, but are not limited to the

2    following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust

3    Property for the highest return reasonably obtainable; (ii) to pursue all Litigation Claims through

4    collection efforts, including through litigation in any court of competent jurisdiction, and to obtain

5    the most favorable recovery on the same, with due consideration of all relevant factors, including

6    cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts;

7    (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of

8    Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy

9    Court; (iv) to take such other actions as are necessary or useful to maximize the value of all

10   property received by the Plan Trust; (v) to make the payments and distributions to creditors and

11   holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to

12   the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the

13   terms of the Plan, including but not limited to selling the Group III Assets: Voluntary Debtors and

14   the Assets. A more complete statement of the Plan Trust's powers and limitations is set forth in the

15   Plan Trust Agreement, which is a part of the Plan Supplement.

16      It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a

17   "liquidating trust," with the primary objective of liquidating the Plan Trust Property and

18   distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a

19   trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding

20   anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on

21   behalf of the Plan Trust shall be consistent with such primary objective.

22      **7.7.**   **Trust Agreement**.

23      Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan

24   Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the

25   initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the

26   authorities and powers of the Plan Trustee, consistent with this Plan.

27      **7.8.**   **Operations of the Plan Trust**.

28

1    From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan

2  Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the

3  Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of

4  the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than

5  restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Trust Agreement,

6  provided that the Plan Trust is administered so that it qualifies as a liquidating trust under Treasury

7  Regulation § 301.7701-4(d).

8    **7.9.**  **The Plan Trustee.**

9    Acquisitions shall be Trustee of the Plan Trust. Acquisitions is the direct or indirect parent

10  of all of Debtors.

11    **7.10.**  **Payment of Trust Expenses.**

12    The expenses incurred by the Plan Trust during the Plan Period, which shall include the

13  compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

14  the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

15    **7.11.**  **Plan Distribution System.**

16    The Plan Trustee shall establish a separate "Distribution Account" for each Group III:

17  Voluntary Debtor at an FDIC insured bank. Each Group III: Voluntary Debtor's Available Cash,

18  whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group

19  III: Voluntary Debtor's Distribution Account. The only exception to this provision shall be in the

20  case of Net Sales Proceeds that are subject to disputed liens. Such proceeds shall remain in the

21  applicable Net Proceeds Accounts established to receive the proceeds from the sale of a particular

22  property. Once all disputes regarding entitlement to the funds in the Net Proceeds Accounts have

23  been resolved, the proceeds remaining (after the payment of the Allowed Claims secured by liens

24  on these proceeds) shall be transferred to the Distribution Account. These funds will then be used

25  to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in

26  the Plan.

27    **7.12.**  **Claims Estimation Rights.**

28

-37-

On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such motion the estimation, for distribution purposes, of any Disputed Claim seeking recourse to, or claiming an interest in, any asset of the Group III: Voluntary Debtors. After the Bankruptcy Court estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure, the Voluntary Debtors' Committee shall have the right to use any funds or assets not deemed subject to the rights of the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed Administrative Claims, after the Effective Date.

**7.13.    No Payment of Transfer-Related Fees to the United States Trustee.**

The Plan Trust shall not be required to pay any fees to the United States Trustee based on any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

**7.14.    No Payment of Transfer-Related Fees to the Trustee.**

The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of Plan Trust Property from the Trustee Debtors to the Plan Trust, or from the Plan Trust.

**7.15.    Books and Records of Trust.**

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence, provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for such books and records. The Plan Trust's books and records shall be open to inspection at all reasonable times, upon written request by the Voluntary Debtors' Committee.

**7.16.    Limitations on Liability.**

The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising

1  out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless

2  such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

3     The Plan Trustee, and its officers, directors, agents and employees shall not be liable for

4  any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust,

5  including, without limitation, indebtedness, liabilities or obligations under agreements,

6  undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee

7  or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all

8  such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole

9  responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall,

10 under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may

11 be asserted against the Plan Trustee, or any member of the New Board on account of any

12 indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or

13 equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.

14    Any undertaking, contract or agreement entered into in writing by the Plan may, except as

15 otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal

16 liability of Plan Trustee.

17    **7.17.   Federal Income Tax Treatment of the Holders of Plan Trust Beneficial**

18 **Interests**.

19    For all United States federal income tax purposes, the transfers by the Group III: Voluntary

20 Debtors s shall be treated by the Group III: Voluntary Debtors, their estates, the Plan Trust and the

21 Plan Trust Beneficiaries as a transfer of the Plan Trust Property by the Group III: Voluntary

22 Debtors to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Property by such

23 the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the

24 grantors and deemed owners of the Plan Trust for United States federal income tax purposes. The

25 Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan

26 Trust Property consistently with the values placed upon the Plan Trust Property by the Plan Trust,

27 and to use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent

28 valuations of the Plan Trust Property by the Plan Trust Trustee and the Plan Trust Beneficiaries,

1    and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Property

2    within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust

3    Beneficiary. By its acceptance of a Beneficial Interest, each recipient of such an interest will be

4    conclusively deemed to agree to use such valuations for all purposes, including, without limitation,

5    in computing any gain recognized upon the exchange of such holder's claim for purposes of

6    determining any United States Federal income tax, and shall be required to include those items of

7    income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

8    its taxable income.

9        **7.18.  Termination of the Trust.**

10       The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

11   Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

12   the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

13   Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

14   with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

15   party have been concluded by dismissal or an order issued by the court in which such litigation is

16   pending and such order has become "final" (consistent with the definition of Final Order in this

17   Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

18   the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

19   request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

20   period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

21   of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

22   consider and rule on the request within six (6) months prior to the expiration of the initial five-year

23   term.

24       **7.19.  Exemption from Certain Transfer Taxes.**

25       In accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer or

26   exchange of a security or the making or delivery of an instrument of transfer under this Plan may

27   not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

28   agents shall forego the assessment and collection of any such tax or governmental assessment and

MAINDOCS-#163423-v1-Group_III_VDs_Plan_Tesoro_Del_Rio_SCC_.DOC

1    shall accept for filing and recordation any of the foregoing instruments or other documents without

2    payment of such tax or other governmental assessment.

3       **7.20.  Tax Consequence of The Plan.**

4       The implementation of the Plan may have federal, state and local tax consequences to the

5    Group III: Voluntary Debtors, Creditors and Interest Holders.  No tax opinion has been sought or

6    will be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does

7    not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and

8    the summary contained herein is provided for informational purposes only.

9       CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

10   OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

11   DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

12   FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

13      **7.21   The Plan Sponsor.**

14      The Plan Sponsor shall be Acquisitions.

15      **7.22   The Voluntary Debtors' Committee.**

16      On the Effective Date, the Voluntary Debtors' Committee shall continue to serve its

17   applicable Group III: Voluntary Debtors as Voluntary Debtors' Committee to the applicable

18   reorganized Group III: Voluntary Debtors, subject to the following:

19      **7.22.1.  Duties and Powers.**

20      The duties of the Voluntary Debtors' Committee after the Effective Date shall be limited to

21   monitoring the Plan's implementation, notice and opportunity to object to any settlement of the

22   Lehman Adversary Proceeding, standing to object to any settlement of any Litigation Claim in

23   excess of $100,000, and standing to object to any proposed sales procedures on sale of the

24   Debtors' Projects.  The Voluntary Debtors' Committee shall receive notice of and the right to

25   review all payments and Distributions.

26      The Voluntary Debtors' Committee shall be entitled to retain, employ and compensate

27   Professionals, in order to assist with the obligations and rights of the Voluntary Debtors'

28

Committee under the terms of the Plan.  Such compensation shall be paid from the applicable

Distribution Account(s).

### 7.22.2    Dissolution of Committee.

The Voluntary Debtors' Committee shall be dissolved upon the entry of an order

converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11

Cases.  On dissolution, the Voluntary Debtors' Committee shall have no other or further

obligations or responsibilities on behalf of the Plan Trust.

### 7.23    Litigation Claims.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

Litigation Claims whether or not pending on the Effective Date that are not purchased by the

winning bidder.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a

Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written notice

and opportunity to object to the Voluntary Debtors' Committee.  Any disputes concerning the

settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

resolution on no less than ten (10) days' notice to the objecting party.

### 7.24    Collection of Litigation Recoveries.

All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Voluntary

Debtors' Committee shall be promptly deposited into the applicable Distribution Account(s).

Except as otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries

shall be free and clear of all Claims and Liens and shall only be expended in accordance with the

provisions of the Plan.

## VIII.

## RISK FACTORS

### 8.1    Plan Risks.

-42-

1    The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks

2    that creditors should be aware of prior to voting on the Plan. The more material of these risks are

3    summarized below.

4    **8.2    The Plan May Not Be Accepted or Confirmed.**

5    While the SunCal Proponents believe that the Plan is confirmable under the standards set

6    forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to

7    be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated

8    and presented to the Bankruptcy Court for approval; however, there can be no assurance that any

9    alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a

10   liquidation, or that any alternative plan of reorganization could or would be formulated on terms as

11   favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

12   **8.3    Failure to Sell The Group III Assets: Voluntary Debtors.**

13   The Plan is based upon the assumption that the SunCal Plan Proponents will be able to sell

14   the Group III Assets: Voluntary Debtors for at least the Minimum Sales Prices on the Effective

15   Date. Although the SunCal Proponents are confident that they can achieve sales at these prices

16   based upon their market research and familiarity with the projects, a possibility exists that these

17   sale will not occur. If this occurs then the creditors holding liens against the Group III Assets:

18   Voluntary Debtors will be entitled to seek recourse against these properties, and this recourse

19   would include foreclosure.

20   **8.4    Adverse Outcome of Pending Litigation.**

21   The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders,

22   and they intend to pursue the Lehman Adversary Proceeding and the State Court Action against

23   Lehman ALI. The SunCal Proponents believe that their defenses to the claims asserted by Lehman

24   ALI have merits and that they will be sustained and that relief will also be granted in the Lehman

25   Adversary Proceeding and any applicable claim objection and state court action. However, there is

26   no assurance that this will occur. Litigation involves risks, including most importantly the risk of

27   an adverse ruling.

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

# IX.

## DISTRIBUTIONS

### 9.1    Distribution Agent.

Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

### 9.2    Distributions.

#### 9.2.1    Dates of Distributions.

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

#### 9.2.2    Limitation on Liability.

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions made pursuant to the Plan resulting from any delays in making such distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

### 9.3    Old Instruments and Securities.

#### 9.3.1    Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an

1   "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender

2   such Instrument or Security to the Distribution Agent.

3         **9.3.2**    **Cancellation of Liens.**

4         Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be

5   deemed released and discharged, and the Person holding such Secured Claim shall be authorized

6   and directed to release any collateral or other property of the Debtors (including, without

7   limitation, any cash collateral) held by such Person and to take such actions as may be requested by

8   the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution,

9   delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

10        **9.3.3**    **De Minimis Distributions and Fractional Shares.**

11        No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any

12  Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever

13  payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a

14  rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not

15  distributed as a consequence of this section shall, after the last distribution on account of Allowed

16  Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

17        **9.3.4**   **Delivery of Distributions.**

18        Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders

19  of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1)

20  with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for

21  such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each

22  Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the

23  Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has

24  received a written notice of a change of address for such Holder, the address set forth in such

25  notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

26  such address as the Holder may specify in writing.

27        **9.3.5**   **Undeliverable Distributions.**

28

1      If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

2    Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

3    such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

4    shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

5    Holder's then current address.  Subject to the remainder of this Section and the following section,

6    Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and

7    shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash

8    Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject

9    Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or

10    any other Person to attempt to locate such Person.

### 9.3.6  Disposition of Unclaimed Property.

12      If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a

13    Distribution of Unclaimed Property within ninety (90) days following such Person's initial

14    Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together

15    with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as

16    practicable.  Any Holder of an Allowed Claim that does not assert a Claim in writing for

17    Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial

18    Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and

19    shall be forever barred from receiving any distributions under the Plan or otherwise from the Plan

20    Trustee.  In such cases, any property held for Distribution on account of such Claims shall become

21    Available Cash and deposited into the Distribution Account.

## X.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

### 10.1  Standing for Objections to Claims.

1    The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

2    objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall

3    be vested with the Voluntary Debtors' Committee. The Voluntary Debtors' Committee shall have

4    standing to object to any settlement of any Litigation Claim in excess of $100,000 and standing to

5    object to any proposed sales procedures and sale of the Debtors' Projects.

6    Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person

7    holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall

8    have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the

9    Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

10    **10.2    Treatment of Disputed Claims and Disputed Liens.**

11    **10.2.1 No Distribution Pending Allowance.**

12    If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

13    or distribution provided for under the Plan shall be made on account of such Claim or Lien unless

14    and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

15    **10.2.2 Distribution After Allowance.**

16    On the next Distribution Date following the date on which a Disputed Claim

17    becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

18    distribute to the Person holding such Claim any Cash that would have been distributable to such

19    Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

20    Disputed Claim.

21

22

23

24

25    **XI.**

26    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

27    **11.1    Executory Contracts Potentially Being Assumed.**

28

-47-

1    The Plan Trustee shall have until the expiration of the Sales Period to assume or reject any

2   of the executory contracts and unexpired leases attached to the Plan as Exhibit "2" to the Plan.

3   The SunCal Plan Proponents may add any executory contract or unexpired leases to these exhibits,

4   or delete any contract or lease therefrom up to and including the Confirmation Date.  All contracts

5   or leases not assumed by the expiration of the Sales Period shall be deemed rejected.

6       **11.2    Executory Contracts Being Rejected.**

7       The Debtors hereby reject all of the executory contracts and unexpired leases set forth in

8   the Debtors' Schedules attached to the Plan as Exhibit "3."  The SunCal Plan Proponents reserve

9   the right to amend Exhibit "3" to the Plan to include additional leases and contracts on this exhibit,

10  or to delete leases and contracts from this exhibit, up to and including the Confirmation Date.

11      **11.3    Bar Date for Rejection Damages.**

12      Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

13  forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates,

14  their successors, or their properties, and shall not be entitled to any distribution under the Plan,

15  unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within

16  thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

17      **11.4    Changes in Rates Subject to Regulatory Commission Approval.**

18      The Debtors are not subject to governmental regulatory commission approval of their rates.

19                          **XII.**

20                  **LIMITATION OF LIABILITY**

21      As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

22  rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

23  offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

24  the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

25  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

26  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

27                          **XIII.**

28

-48-

1

2

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

3    **13.1    Conditions Precedent to Plan Confirmation.**

4    The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

5   have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

6   Proponents.

7    **13.2    Conditions Precedent to Plan Effectiveness.**

8    The conditions precedent to the effectiveness of the Plan and the occurrence of the

9   Effective Date is that the Confirmation Order shall be a Final Order in form and substance

10   reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material

11   impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities

12   cases. The automatic stay in the Debtors cases shall continue to be applicable until the Effective

13   Date.

14    **XIV.**

15    **RETENTION OF JURISDICTION**

16    Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

17   Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's

18   jurisdiction shall apply to the fullest extent possible under applicable law.

19    **XV.**

20    **MODIFICATION OR WITHDRAWAL OF THE PLAN**

21    **15.1    Modification of Plan.**

22    At any time prior to confirmation of the Plan, the former Debtor(s) may supplement, amend

23   or modify the Plan.  After confirmation of the Plan,  the Debtors or Plan Trustee may (x) apply to

24   the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and

25   (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile

26   inconsistencies in the Plan.

27    **15.2    Nonconsensual Confirmation.**

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

1    In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

2  accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may

3  request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

4  Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

5  accordance with Section 1127(a) of the Bankruptcy Code.

6                                                    **XVI.**

7                                          **MISCELLANEOUS**

8        **16.1    Payment of Statutory Fees.**

9        All quarterly fees due and payable to the Office of the United States Trustee pursuant to

10  Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

11  Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

12  been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

13  Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

14  due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent

15  required by Section 1930(a)(6) of title 28 of the United States Code.

16        **16.2    Payment Dates.**

17        Whenever any payment or distribution to be made under the Plan shall be due on a day

18  other than a Business Day, such payment or distribution shall instead be made, without interest, on

19  the immediately following Business Day.

20        **16.3    Headings.**

21        The headings used in the Disclosure Statement and in the Plan are inserted for convenience

22  only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

23  affect the construction of the provisions of the Disclosure Statement or the Plan.

24        **16.4    Other Documents and Actions.**

25        The Plan Trustee may execute such other documents and take such other actions as may be

26  necessary or appropriate to effectuate the transactions contemplated under the Plan.

27        **16.5    Notices.**

28

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

**To the SunCal Plan Proponents**:
Bruce V. Cook
General Counsel
Authorized Agent of the SunCal Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Ronald Rus
Rus Miliband & Smith A Professional Corporation
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this Section, which designation will be effective on receipt.

### 16.6    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 16.7    Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 16.8    Successors and Assigns.

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**16.9    Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**16.10   No Waiver.**

The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Voluntary Debtors' Committee', the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole or in part.

**16.11   Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**16.12   Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other

1  interest in such property (including, without limitation, a security interest) will not be subject to

2  any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,

3  stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

4  recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

5  direct the appropriate state or local governmental officials or agents to forego the collection of any

6  such tax or governmental assessment and to accept for filing and recordation any of the foregoing

7  instruments or other documents without the payment of any such tax or governmental assessment.

8      **16.13  Post-Confirmation Status Report.**

9      Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

10 status report with the Court explaining what progress has been made toward consummation of the

11 confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

12 unsecured creditors, and those parties who have requested special notice.  Unless otherwise

13 ordered, further status reports shall be filed every 180 days and served on the same entities.

14      **16.14  Post-Confirmation Conversion/Dismissal.**

15      A creditor or party in interest may bring a motion to convert or dismiss the case under

16 § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

17 Trustee reserves the right to object to any motion for conversion or dismissal.  If the Court orders

18 any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been

19 property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

20 in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only

21 to the extent that relief from stay was not previously authorized by the Court during this case.

22 / / /

23

24

25

26

27

28

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

**16.15   Final Decree.**

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of such Debtor.

Date:  June 20, 2011

By:     /s/ Bruce Cook
        Bruce Cook
        General Counsel, Authorized Agent for the
        Voluntary Debtors and Acquisitions

**Submitted By:**
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: /s/ Paul J. Couchot
        Paul J. Couchot, Esq.
General Insolvency Counsel for the Voluntary Debtors

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:  /s/ Ronald Rus
        Ronald Rus, Esq.
        Joel S. Miliband, Esq.
        Cathrine Castaldi, Esq.
Attorneys for SunCal Management, LLC and SCC Acquisitions Inc.

MAINDOCS #163423 v1-Group_III_VDs_Plan_Tesoro_Del_Rio_SCC_.DOC

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **FIRST AMENDED CHAPTER 11 PLANS FILED BY THE APPLICABLE SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SCC COMMUNITIES, LLC, NORTH ORANGE DEL RIO LAND LLC AND TESORO SF LLC [GROUP III: VOLUNTARY DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Susan Connor | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

MAINDOCS-#163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

MAINDOCS #163423-v1-Group_III_VDs_Plan__Tesoro__Del_Rio_SCC_.DOC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- John J Immordino   john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson   laj@cohenandjacobson.com
- Michael J Joyce   mjoyce@crosslaw.com
- Stephen M Judson   sjudson@fablaw.com
- Kaleb L Judy   ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn   skahn@pszyjw.com
- Sheri Kanesaka   sheri.kanesaka@bryancave.com
- David I Katzen   katzen@ksfirm.com
- Christopher W Keegan   ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi   pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet   ikiet@hkclaw.com
- Claude F Kolm   claude.kolm@acgov.org
- Mark J Krone   mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally   davidlallylaw@gmail.com
- Leib M Lerner   leib.lerner@alston.com
- Peter W Lianides   plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu   cliu@winthropcouchot.com
- Kerri A Lyman   klyman@irell.com
- Mariam S Marshall   mmarshall@marshallramoslaw.com
- Robert C Martinez   rmartinez@mclex.com
- Michael D May   mdmayesq@verizon.net
- Hutchison B Meltzer   hmeltzer@wgllp.com
- Krikor J Meshefejian   kjm@lnbrb.com
- Joel S. Miliband   jmiliband@rusmiliband.com
- James M Miller   jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller   smiller@millerbarondess.com
- Randall P Mroczynski   randym@cookseylaw.com
- Mike D Neue   mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida   Rnida@castlelawoffice.com
- Henry H Oh   henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe   sokeefe@okeefelc.com
- Robert B Orgel   rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay   mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes   pparmes@rutan.com
- Ronald B Pierce   ronald.pierce@sdma.com
- Katherine C Piper   kpiper@steptoe.com
- Cassandra J Richey   cmartin@pprlaw.net
- Debra Riley   driley@allenmatkins.com
- James S Riley   tgarza@sierrafunds.com
- Todd C. Ringstad   becky@ringstadlaw.com
- R Grace Rodriguez   ecf@lorgr.com
- Martha E Romero   Romero@mromerolawfirm.com
- Ronald Rus   rrus@rusmiliband.com
- John P Schafer   jschafer@mandersonllp.com
- John E Schreiber   jschreiber@dl.com
- William D Schuster   bills@allieschuster.org
- Christopher P Simon   csimon@crosslaw.com
- Wendy W Smith   wendy@bindermalter.com
- Steven M Speier   Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)   Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James   ecf@stjames-law.com
- Michael K Sugar   msugar@irell.com
- Cathy Ta   cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem   davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net