1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")
5
   RONALD RUS - State Bar No. 67369
6  JOEL S. MILIBAND - State Bar No. 77438
   RUS MILIBAND & SMITH
7  A PROFESSIONAL CORPORATION
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile: (949) 252-1514
   Counsel for SunCal Management LLC and
10 SCC Acquisitions Inc.

11              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
12                     **Santa Ana Division**

   In re                              | Case No. 8:08-bk-17206-ES
13 PALMDALE HILLS PROPERTY, AND ITS
   RELATED DEBTORS,                   | Jointly Administered With Case Nos.
14                                      8:08-bk-17209-ES; 8:08-bk-17240-ES;
         Joint Administered Debtors and  8:08-bk-17224-ES; 8:08-bk-17242-ES;
15       Debtors-in-Possession           8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                          8:08-bk-17227-ES; 8:08-bk-17246-ES;
16 Affects:                              8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                          8:08-bk-17236-ES; 8:08-bk-17248-ES;
17 ☐ All Debtors                         8:08-bk-17249-ES; 8:08-bk-17573-ES;
   ☒ Palmdale Hills Property, LLC        8:08-bk-17574-ES; 8:08-bk-17575-ES;
18 ☐ SunCal Beaumont Heights, LLC        8:08-bk-17404-ES; 8:08-bk-17407-ES;
                                          8:08-bk-17408-ES; 8:08-bk-17409-ES;
19 ☐ SCC/Palmdale, LLC                   8:08-bk-17458-ES; 8:08-bk-17465-ES;
   ☐ SunCal Johannson Ranch, LLC         8:08-bk-17470-ES; 8:08-bk-17472-ES;
20 ☐ SunCal Summit Valley, LLC          and 8:08-bk-17588-ES
21 ☒ SunCal Emerald Meadows LLC          Chapter 11 Proceedings
   ☒ SunCal Bickford Ranch, LLC
22 ☒ Acton Estates, LLC                 **FIRST AMENDED CHAPTER 11 PLAN
                                          FILED BY SUNCAL PLAN PROPONENTS**
23 ☐ Seven Brothers LLC                 **IN THE CHAPTER 11 CASES OF
   ☐ SJD Partners, Ltd.                  PALMDALE HILLS PROPERTY, LLC,**
24 ☐ SJD Development Corp.              **SUNCAL BICKFORD RANCH, LLC,
                                          SUNCAL EMERALD MEADOWS, LLC**
25 ☐ Kirby Estates, LLC                 **AND ACTON ESTATES, LLC [GROUP I:
   ☐ SunCal Communities I, LLC           VOLUNTARY DEBTORS]**
26 ☐ SunCal Communities III, LLC
                                          Date:      July 22, 2011
27 ☐ SCC Communities LLC                 Time:      11:00 a.m.
   ☐ North Orange Del Rio Land, LLC      Place:     Courtroom 5A
28 ☐ Tesoro SF LLC

1

*Continued from Previous Page*

2  ☐ LBL-SunCal Oak Valley, LLC

3  ☐ SunCal Heartland, LLC
   ☐ LBL-SunCal Northlake, LLC

4  ☐ SunCal Marblehead, LLC

5  ☐ SunCal Century City, LLC
   ☐ SunCal PSV, LLC

6  ☐ Delta Coves Venture, LLC

7  ☐ SunCal Torrance, LLC
   ☐ SunCal Oak Knoll, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ................................................................................. 2

II.  DEFINITIONS AND RULES OF INTERPRETATION ............................ 4
     2.1   Definitions .......................................................................... 4
     2.2   Rules of Construction ......................................................... 26
     2.3   Exhibits .............................................................................. 26

III. TREATMENT OF UNCLASSIFIED CLAIMS ................................... 26
     3.1   Introductions ...................................................................... 26
     3.2   Treatment of Allowed Administrative Claims ...................... 27
     3.3   Treatment and Repayment of the Lehman Administrative Loan(s) .............. 27
     3.4   Repayment of Allowed Administrative Claims
           Other than the Lehman Administrative Loans ...................... 27
     3.5   Administrative Claims Bar Date .......................................... 28
     3.6   Treatment of Unsecured Tax Claims .................................... 28

IV.  CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 29

V.   THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
     AND INTERESTS .............................................................................. 35
     5.1   The Plan's Treatment of Holders of Allowed Secured
           Real Property Tax Claims (Classes 1.1 Through 1.14) .......... 35
     5.2   The Plan's Treatment of Lehman's Disputed
           Claim(s) and Disputed Lien(s) (Classes 2.1 Through 2.4) ...... 35
     5.3   The Plan's Treatment of Holders of Asserted Mechanic
           Lien Claims Against the Group I Projects (Classes 3.1 Through 3.14) ........ 38
     5.4   The Plan's Treatment of Holders of Bond Claims that qualify As
           Allowed Secured Claims with Liens against a Group I Project(s)
           (Class 4.1) ......................................................................... 39
     5.5   The Plan's Treatment of Holders of Priority Claims (Classes 5.1) .............. 40
     5.6   The Plan's Treatment of Holders of General Unsecured
           Claims that Are Reliance Claims (Classes 6.1, 6.2, 6.3, 6.4) .............. 40
     5.7   The Plan's Treatment of Holders of Allowed General Unsecured
           Claims that Are Not Reliance Claims (Classes 7.1, 7.2, 7.3 and 7.4). .......... 41
     5.8   The Plan's Treatment of Holders of Allowed Interests. ............... 41

VI.  ACCEPTANCE OR REJECTION OF THE PLAN ............................... 41
     6.1   Introduction ........................................................................ 41
     6.2   Who May Object to Confirmation of the Plan ....................... 42
     6.3   Who May Vote to Accept/Reject the Plan ............................ 42
     6.4   What Is an Allowed Claim/Interest ...................................... 42
     6.5   What Is an Impaired Class ................................................... 42
     6.6   Who Is Not Entitled to Vote ................................................ 42

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

| | | | |
|---|---|---|---|
| | 6.7 | Who Can Vote in More than One Class | 43 |
| | 6.8 | Votes Necessary for a Class to Accept the Plan | 43 |
| | 6.9 | Treatment of Nonaccepting Classes | 43 |
| | 6.10 | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 44 |
| VII. | | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 44 |
| | 7.1 | Introduction | 44 |
| | 7.2 | Sale Process After Confirmation Date But Prior To Effective Date | 44 |
| | 7.3 | Transfer of Property To The Plan Trust | 45 |
| | 7.4 | Closing of Group I Project Sales | 46 |
| | 7.5 | Purposes of The Plan Trust | 46 |
| | 7.6 | Trust Agreement | 46 |
| | 7.7 | Operations of the Plan Trust | 47 |
| | 7.8 | The Plan Trustee | 48 |
| | 7.9 | Payment of Trust Expenses | 48 |
| | 7.10 | Plan Distribution System | 48 |
| | 7.11 | Claims Estimation Rights | 48 |
| | 7.12 | No Payment of Transfer-Related Fees to the United States Trustee | 49 |
| | 7.13 | No Payment of Transfer-Related Fees to the Trustee | 49 |
| | 7.14 | Books and Records of Trust | 49 |
| | 7.15 | Limitations on Liability | 49 |
| | 7.16 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 50 |
| | 7.17 | Termination of the Trust | 51 |
| | 7.18 | Exemption from Certain Transfer Taxes | 51 |
| | 7.19 | Tax Consequence of The Plan | 51 |
| | 7.20 | The Plan Sponsor | 52 |
| | 7.21 | Acquisitions' Funding Obligations Pursuant to the Acquisitions Administrative Loan | 52 |
| | 7.22 | The Committee | 52 |
| | | 7.21.1 Duties and Powers | 52 |
| | | 7.21.2 Dissolution of Committee | 53 |
| | 7.23 | Litigation Claims | 53 |
| | 7.24 | Collection of Litigation Recoveries | 53 |
| VIII. | | RISK FACTORS | 54 |
| | 8.1 | PLAN RISKS | 54 |
| | | 8.1.1   THE PLAN MAY NOT BE ACCEPTED OR CONFIRMED | 54 |
| | | 8.1.2   FAILURE TO SELL THE GROUP I: VOLUNTARY DEBTOR PROJECTS | 54 |
| | | 8.1.3   ADVERSE OUTCOME OF PENDING LITIGATION | 54 |
| IX. | | DISTRIBUTIONS | 55 |
| | 9.1 | DISTRIBUTION AGENT | 55 |
| | 9.2 | DISTRIBUTIONS | 55 |
| | | 9.2.1   DATES OF DISTRIBUTIONS | 55 |
| | | 9.2.2   LIMITATION ON LIABILITY | 55 |
| | 9.3 | OLD INSTRUMENTS AND SECURITIES | 56 |

MAINDOCS-#163398-v3-SCC_Plan_Group_1_Vol_Debtors.DOC

|  |  | 9.3.1 | SURRENDER AND CANCELLATION OF INSTRUMENTS |  |
|  |  |  | AND SECURITIES. | 56 |
|  |  | 9.3.2 | CANCELLATION OF LIENS. | 56 |
|  |  | 9.3.3 | DE MINIMIS DISTRIBUTIONS AND FRACTIONAL SHARES. | 56 |
|  |  | 9.3.4 | DELIVERY OF DISTRIBUTIONS | 56 |
|  |  | 9.3.5 | UNDELIVERABLE DISTRIBUTIONS | 57 |
|  |  | 9.3.6 | DISPOSITION OF UNCLAIMED PROPERTY | 57 |

| X. | | OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS | 58 |
|  | 10.1 | STANDING FOR OBJECTIONS TO CLAIMS | 58 |
|  | 10.2 | TREATMENT OF DISPUTED CLAIMS AND DISPUTED LIENS | 58 |
|  |  | 10.2.1 NO DISTRIBUTION PENDING ALLOWANCE. | 58 |
|  |  | 10.2.2 DISTRIBUTION AFTER ALLOWANCE | 58 |

| XI. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 58 |
|  | 11.1 | EXECUTORY CONTRACTS POTENTIALLY BEING ASSUMED OR REJECTED. | 58 |
|  | 11.2 | BAR DATE FOR REJECTION DAMAGES | 59 |
|  | 11.3 | CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL. | 59 |

| XII. | | BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY | 59 |
|  | 12.1 | BEST INTERESTS TEST. | 59 |
|  | 12.2 | FEASIBILITY | 60 |

| XIII. | | LIMITATION OF LIABILITY | 61 |
|  | 13.1 | NO LIABILITY FOR SOLICITATION OR PARTICIPATION | 61 |

| XIV. | | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS |  |
|  |  | OF THE PLAN | 61 |
|  | 14.1 | CONDITIONS PRECEDENT TO PLAN CONFIRMATION | 61 |
|  | 14.2 | CONDITIONS PRECEDENT TO PLAN EFFECTIVENESS. | 61 |

| XV. | | RETENTION OF JURISDICTION | 61 |

| XVI. | | MODIFICATION OR WITHDRAWAL OF THE PLAN | 62 |
|  | 16.1 | MODIFICATION OF PLAN. | 62 |
|  | 16.2 | NONCONSENSUAL CONFIRMATION. | 62 |

| XVII. | MISCELLANEOUS | 62 |
| 17.1 | Payment of Statutory Fees. | 62 |
| 17.2 | Payment Dates. | 62 |
| 17.3 | Headings. | 63 |
| 17.4 | Other Documents and Actions. | 63 |
| 17.5 | Notices. | 63 |
| 17.6 | Governing Law. | 63 |
| 17.7 | Binding Effect. | 64 |
| 17.8 | Successors and Assigns. | 64 |
| 17.9 | Severability of Plan Provisions. | 64 |
| 17.10 | No Waiver. | 64 |

| 17.11 | Inconsistencies. | 65 |
| 17.12 | Exemption from Certain Transfer Taxes and Recording Fees. | 65 |
| 17.13 | Post-Confirmation Status Report. | 65 |
| 17.14 | Post-Confirmation Conversion/Dismissal. | 65 |
| 17.15 | Final Decree. | 66 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#163398-v3-SCC_Plan_Group_1_Vol_Debtors.DOC

# I.

## **INTRODUCTION**

This Chapter 11 Plan of Reorganization (the "Plan")[1] is filed by the Voluntary Debtors and Acquisitions[2], as the SunCal Plan Proponents. Acquisitions are also the Plan Sponsor, and Acquisitions will serve as the Plan Trustee and the Distribution Agent for all of the Debtors, if this Plan is confirmed. The Plan is being filed in the Chapter 11 Cases of the following Debtors:

> Palmdale Hills Property, LLC
> SunCal Bickford, LLC
> SunCal Emerald Meadows, LLC
> Acton Estates, LLC

(the "Group I: Voluntary Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides for sale of the Ritter Ranch Project, the Bickford Ranch, SunCal Emerald and the Acton Project (the "Group I Projects"), and for the liquidation of all other assets of the Group I: Voluntary Debtors. The Net Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

**The Plan also offers the holders of a certain category of general unsecured claims, which are defined herein as Reliance Claims, the right to sell these claims, and any Litigation Rights held by the holders of such claims against the Lehman Entities, to LitCo, for the sum**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" to the Disclosure Statement.

[2] In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, it will also serve as the Plan Trustee of the Plan Trust and as the Distribution Agent, if the Plan is confirmed.

MAINDOCS-#163398-v3-SCC_Plan_Group_1_Vol_Debtors.DOC

1  of sixty cents ($0.60) per dollar of claim. The purchase offer is conditioned upon

2  confirmation of the applicable Plan and the lack of any stay pending an appeal of the

3  Confirmation Order.

4      EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF

5  RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION

6  OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THIS PLAN

7  BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THIS PLAN SHALL BE

8  TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR

9  LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE

10  EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST

11  IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER

12  ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.

13      Although the same Plan is being filed in the Cases of all four Group I: Voluntary Debtors,

14  each Plan is independent of the others. The Creditors in each Case will determine, subject to Court

15  approval, whether the Plan will be approved in their Case. Accordingly, the Plan may be confirmed

16  in the Cases of some of the Group I: Voluntary Debtors, but not in others.

17      The Plan is accompanied by the *"First Amended Disclosure Statement Describing Chapter

18  11 Plans Filed By Suncal Plan Proponents In The Chapter 11 Cases Of Palmdale Hills Property,

19  LLC, Suncal Bickford Ranch, LLC, Suncal Emerald Meadows, LLC And Acton Estates, LLC [Group

20  I: Voluntary Debtors]"* (the "Disclosure Statement"). The Disclosure Statement has been approved

21  by the Court. It is being provided along with this Plan in order to provide you with critical

22  information about the Debtors and to help you understand this Plan.

23      The Disclosure Statement discusses the Debtors' history, businesses, properties, and results

24  of operations and contains a summary and discussion of this Plan. Holders of Claims and Interests

25  and parties to executory contracts and unexpired leases are encouraged to read the Disclosure

26  Statement. No solicitation materials, other than the Disclosure Statement and related materials

27  transmitted therewith and approved for solicitation purposes by the Court, have been authorized for

28  use in soliciting acceptances or rejections of this Plan.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

## II.

### DEFINITIONS AND RULES OF INTERPRETATION

**2.1    Definitions.**

The following defined terms are used in this Disclosure Statement. Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported obligor on the Bond Claims, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    Acton Estates. Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor herein, and the owner of the Acton Project.

2.1.3    Acton Project. The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described herein.

2.1.4    Acton Project Break-up Fee. The sum of sixty-four thousand dollars ($64,000) that will be paid to the Stalking Horse Bidder that submits the Opening Bid for the Acton Project, if such Stalking Horse Bidder is not the Winning Bidder.

2.1.5    Administrative Claim(s). Any Claim against a Group I: Voluntary Debtor or its Estate incurred after the applicable Petition Date for the applicable Group I: Voluntary Debtor but before the Confirmation Date, for any cost or expense of administration of the Case of the applicable Group I: Voluntary Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group I: Voluntary Debtor under section 1630 of Title 28 of the United States Code.

2.1.6    Administrative Claims Bar Date. The last date fixed by the Plan for the filing of Proof of Claims or requests for payment of Administrative Claims. Under the Plan, the Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the Confirmation Date.

2.1.7    Affiliate. The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

-4-

1   controls, is owned or controlled by, or is under common ownership or control with, such Person.

2   The term "control" (including, with correlative meanings, the terms "controlled by" and "under

3   common control with"), as applied to any Person, means the possession, direct or indirect, of the

4   power to direct or cause the direction of the management and policies of such Person, whether

5   through the ownership of voting securities or other equity ownership interest, by contract or

6   otherwise.

7         2.1.8   Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or

8   Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

9         2.1.9   Allowed Amount shall mean:

10         A.   With respect to any Administrative Claim (i) if the Claim is based

11   upon a Fee Application, the amount of such Fee Application that has been approved by a Final

12   Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

13   incurred in the ordinary course of business of the Group I: Voluntary Debtor and is not otherwise

14   subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

15   the Group I: Voluntary Debtor and such creditor, failing which, the amount thereof as fixed by a

16   Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

17   has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

18   (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

19   applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

20   Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

21   such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

22   Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

23   which is subject to an Administrative Claims Bar Date and not filed by the applicable

24   Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

25   such Administrative Claim;

26         B.   with respect to any Claim which is not an Administrative Claim

27   (the "Other Claim"): (i) if the Holder of such Other Claim did not file proof thereof with the

28   Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

MAINDOCS-#162398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1    Group I: Voluntary Debtors' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

2    the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

3    Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

4    interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

5    Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

6    Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

7    fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court. The

8    Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

9    listed on the Group I: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

10    contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no

11    distribution shall be made on account of any such Claim; and

12             C.      with respect to any Interest, (i) the amount provided by or

13    established in the records of the Group I: Voluntary Debtors at the Confirmation Date, provided,

14    however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

15    records of the Group I: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed

16    prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

17    Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

18    by a Final Order of the Bankruptcy Court.

19          2.1.10     Allowed Claim. Except as otherwise provided in the Plan (including with

20    respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

21    Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

22          2.1.11     Allowed Interest. Any Interest to the extent, and only to the extent, of the

23    Allowed Amount of such Interest.

24          2.1.12     Allowed Secured Claims. All or a portion of a Secured Claim that is an

25    Allowed Claim.

26          2.1.13     Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

27    an Allowed Claim.

28

1       2.1.14     Assets. All assets that are property of the Debtor(s) pursuant to

2   Bankruptcy Code Section 541.

3       2.1.15     Arch. Arch Insurance Company, a Bond Issuer.

4       2.1.16     Available Cash. Each Group I: Voluntary Debtors' Cash deposited into

5   the applicable Distribution Account(s) on or after the Effective Date that is available for making

6   Distributions under the Plan to Holders of Allowed Administrative, Priority, and Unsecured

7   Claims. The Available Cash shall consist of the respective Group I: Voluntary Debtors' cash on

8   hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation

9   Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash

10  upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly

11  encumbering such Cash, or proceeds from the Acquisitions Administrative Loan. All Available

12  Cash shall be deposited into the applicable Distribution Account(s). Available Cash shall not

13  include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims

14  are Allowed but subject to an equitable subordination judgment.

15      2.1.17     Avoidance Actions. All Claims and defenses to Claims accruing to the

16  Group I: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541,

17  544, 545, 547, 548, 549, 550, or 551.

18      2.1.18     Bankruptcy Code. The United States Bankruptcy Code.

19      2.1.19     Bankruptcy Court. The United States Bankruptcy Court for the Central

20  District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

21  reference made pursuant to Section 157 of title 28 of the United States Code, the United States

22  District Court for the Central District of California; or, in the event such courts cease to exercise

23  jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

24  lieu thereof.

25      2.1.20     Bankruptcy Rules. Collectively, as now in effect or hereafter amended

26  and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

27  Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

28

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1         2.1.21    Beneficial Interests. means, collectively, the interests of the holders of

2 Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust

3 on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books

4 and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be

5 transferred, sold, assigned or transferred by will, intestate succession or operation of law.

6         2.1.22    Bickford Ranch Project. The Project owned by SunCal Bickford, located

7 in the City of Penryn, California, as more particularly described herein.

8         2.1.23    Bickford Ranch Project Break-up Fee. The sum of four hundred and

9 thirty-six thousand dollars ($436,000) that will be paid to the Stalking Horse Bidder that submits

10 the Opening Bid for the Bickford Ranch Project, if such Stalking Horse Bidder is not the Winning

11 Bidder.

12         2.1.24    Bickford Second Loan Agreement. That certain promissory note secured

13 by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of

14 approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of

15 Lehman ALI. The Bickford Second Lien Loan Agreement is allegedly secured by a second priority

16 deed of trust on the Bickford Ranch Project. The Bickford Second Loan Agreement has an

17 asserted balance due of $56,494,059.38 as of March 30, 2009.

18         2.1.25    Bond Claim(s). Any Claim against the Debtor(s) and a Bond Issuer under

19 various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s)

20 under various payment or performance bonds.

21         2.1.26    Bond Claimant. Holder(s) of a Bond Claim.

22         2.1.27    Bond Indemnification Claim. All Claims by Bond Safeguard, Lexon, and

23 Arch for indemnification for payment by Bond Safeguard, Lexon and Arch of Bond Claims with

24 respect to the Group I: Voluntary Debtors' Projects.

25         2.1.28    Bond Indemnitors. The individuals and entities that are allegedly liable on

26 the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

27 Affiliates of Acquisitions, and Elieff.

28

1    2.1.29    <u>Bond Issuer(s)</u>. Bond Safeguard, Lexon and Arch in their capacities as

2    issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

3    2.1.30    <u>Bond Safeguard</u>. Bond Safeguard Insurance Company, a Bond Issuer.

4    2.1.31    <u>Business Day</u>. Any day, other than a Saturday, a Sunday or a "legal

5    holiday," as defined in Bankruptcy Rule 9006(a).

6    2.1.32    <u>Cases</u>. The Chapter 11 cases of the Group I: Voluntary Debtors pending

7    before the Bankruptcy Court.

8    2.1.33    <u>Cash</u>. Currency of the United States of America and cash equivalents,

9    including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

10   transfers and other similar forms of payment.

11   2.1.34    <u>CFD Bonds</u>. Community facilities district bonds issued by a

12   governmental entity.

13   2.1.35    <u>Chapter 11 Trustee</u>. Steven M. Speier, the duly appointed trustee of the

14   Trustee Debtors in their pending Chapter 11 Cases.

15   2.1.36    <u>Claim</u>. This term shall have the broadest possible meaning under

16   Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

17   Group I: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated,

18   unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

19   secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

20   breach gives rise to a right of payment from any of the Group I Debtors, whether or not such right

21   to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

22   undisputed, secured, or unsecured.

23   2.1.37    <u>Claims Bar Date</u>. For any Claim other than an Administrative Claim,

24   March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

25   file Proof of Claims with the Bankruptcy Court in all of the Group I: Voluntary Debtors' cases.

26   2.1.38    <u>Claims Objection Deadline</u>. The later of (i) the first business day

27   following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

28

1  period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

2  the Plan Trustee and the Holder of the Claim.

3      2.1.39   Claim Objection Reduction Amount. The amount of Net Sales Proceeds

4  that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

5  or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

6  secured claims filed by the Lehman Lenders.

7      2.1.40   Class. Each group of Claims or Interests classified in Article IV of the

8  Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

9      2.1.41   Committee. The Voluntary Debtors' Committee, both before and after the

10  Confirmation Date.

11      2.1.42   Confirmation Date. The date on which the Confirmation Order is entered

12  in the Bankruptcy Court's docket.

13      2.1.43   Confirmation Order. The order entered by the Bankruptcy Court

14  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

15      2.1.44   Contingent Bond Claims. Unmatured Bond Claims.

16      2.1.45   Creditor. Any Person who is the Holder of a Claim against any Debtor

17  that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

18  become due, owing, and payable on or before the Petition Date, including, without limitation,

19  Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

20      2.1.46   Debtor(s). Individually or collectively, the Voluntary Debtors and the

21  Trustee Debtors, as specifically defined in Exhibit "1" to the Disclosure Statement.

22      2.1.47   Debtor(s)-in-Possession. The Voluntary Debtor(s) when acting in their

23  capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

24      2.1.48   Disclosure Statement. The document accompanying the Plan that is

25  entitled "Disclosure Statement Describing Chapter 11 Plan Filed by SunCal Plan Proponents In

26  The Chapter 11 Cases Of Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLC, SunCal

27  Emerald Meadows, LLC and Acton Estates, LLC," as amended and with all accompanying

28  exhibits.

1         2.1.49    Disputed Claim(s).  All or any part of a Claim other than any Allowed

2    Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

3    with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

4    is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

5    (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

6    Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

7    for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

8    order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

9    Deadline, which Adversary Proceeding, objection, or request for estimation has not been

10   dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

11   "Disputed Claim" pursuant to the Plan.

12        2.1.50    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that

13   is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action,

14   or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).

15        2.1.51    Disputed Secured Claim(s).  That part of a Disputed Claim that is a

16   Secured Claim.

17        2.1.52    Distribution(s).  Payments to Holders of Allowed Claims provided for

18   under the Plan.

19        2.1.53    Distribution Agent.  The entity that is responsible for making Distributions

20   under the Plan, which shall be Acquisitions.

21        2.1.54    Distribution Account(s).  Separate account(s) to be established by the Plan

22   Trustee at an FDIC insured bank into which each Group I: Voluntary Debtors' Available Cash

23   shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date

24   that would have belonged to such Group I: Voluntary Debtor shall be deposited, other than Net

25   Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

26        2.1.55    Distribution Date.  With respect to any Allowed Claim or Allowed

27   Interest, the date on which a Distribution is required to be made under the Plan.

28

1    2.1.56    Effective Date. A date selected by the SunCal Plan Proponents that is not

2    later than the ninetieth (90th) calendar day after the Confirmation Date. However, in any case where

3    the actions provided for in the Plan would be delayed by the automatic stay applicable in the case

4    of any Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan

5    Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to

6    obtain relief from any such stay.

7    2.1.57    Elieff. Bruce Elieff, the president of Acquisitions, a purported obligor on

8    the Bond Claims with corresponding indemnity Claims against the Debtors.

9    2.1.58    Emerald Meadows Project. The Project owned by SunCal Emerald,

10    located in the City of Rubidoux, California, as more particularly described herein.

11    2.1.59    Estates. The bankruptcy estates of the Group I: Voluntary Debtors created

12    pursuant to Section 541 of the Bankruptcy Code.

13    2.1.60    Fee Applications. Applications of Professional Persons under Sections

14    330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

15    expenses in the Cases.

16    2.1.61    Fee Claim. A Claim under Sections 330 or 503 of the Bankruptcy Code

17    for allowance of compensation and reimbursement of expenses in the Cases.

18    2.1.62    Fenway Capital. Fenway Capital Funding LLC, a Lehman Successor to

19    Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

20    Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

21    (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

22    (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

23    Valley Loan Agreement. Such Disputed Claims and Disputed Liens were transferred back to LCPI

24    pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

25    2.1.63    Filed. Delivered to, received by and entered upon the legal docket by the

26    Clerk of the Bankruptcy Court. "File" shall have a correlative meaning.

27    2.1.64    Final Order. A judgment, order, ruling or other decree issued and entered

28    by the Bankruptcy Court.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1          2.1.65    General Unsecured Claim. A Claim against a Group I: Voluntary Debtor

2    that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority

3    Claim.

4          2.1.66    Group I: Voluntary Debtors. Palmdale Hills Property, LLC, SunCal

5    Bickford Ranch, LLC, and Acton Estates, LLC.

6          2.1.67    Group I Projects. Ritter Ranch, the Bickford Ranch Project, Emerald

7    Project and the Acton Project.

8          2.1.68    Holder. The beneficial owner of any Claim or Interest.

9          2.1.69    Initial Overbid. The Initial Overbid is the first Qualifying Bid after the

10   Opening Bid that is equal to or in excess of the Initial Overbid Amount.

11         2.1.70    Initial Overbid Amount. In the case of Ritter Ranch Project, the Initial

12   Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Ritter

13   Ranch Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the

14   Bickford Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the

15   applicable Opening Bid, the Bickford Ranch Project Break-up Fee and seventy-five thousand

16   dollars ($75,000). In the case of the SunCal Emerald Project, the Initial Overbid Amount is a sum

17   that is not less than the sum of the applicable Opening Bid, the SunCal Emerald Project Break-up

18   Fee and seventy-five thousand dollars ($75,000). In the case of the Acton Project, the Initial

19   Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Acton

20   Project Break-up Fee, and the fifty-thousand dollars ($50,000).

21         2.1.71    Insider. The term shall have the broadest meaning possible under

22   Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

23   Insiders of such Affiliates.

24         2.1.72    Interest. Any equity security interest in any Group I: Voluntary Debtor

25   within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

26   equity ownership interest in any of the Group I: Voluntary Debtors, whether in the form of

27   common or preferred stock, stock options, warrants, partnership interests, or membership interests.

28

-13-

1         2.1.73   LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

2    company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

3    in the Bankruptcy Court for the Southern District of New York.

4         2.1.74   LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

5    bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

6         2.1.75   Legal Rate.  The rate of interest payable on judgments obtained in the

7    United States District Courts as set forth in 28 U.S.C. § 1661.  The rate applicable under the Plan is

8    1.44% per annum, representing the applicable rate on November 6, 2008.

9         2.1.76   Lehman Adversary Proceeding.  The Debtors' pending adversary

10   proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

11   action including equitable subordination, fraudulent conveyances and preferential transfers.

12        2.1.77   Lehman ALI.  Lehman ALI, Inc.

13        2.1.78   Lehman Disputed Administrative Loans.  The post-petition financing

14   provided by Lehman ALI to Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates,

15   SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century

16   City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which grants priming liens on all

17   borrower Debtors' assets, and for super-priority administrative status to Lehman ALI.  The

18   Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the

19   Voluntary Debtors.  The aggregate amount of the Lehman Administrative Loans to all of the

20   Trustee Debtors is approximately $40 million as of March 1, 2011 and continuing to increase.  The

21   Lehman Administrative Loans are the subject of claim objections.  Until these objections are

22   resolved, these Lehman Administrative Loans shall not be Allowed Claims.

23        2.1.79   Lehman Claim Objections.  The objections filed by the Debtors to the

24   claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

25   Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

26   Objection and the Lehman 502(d) Objection.

27        2.1.80   Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

28   LBHI.

2.1.81    Lehman Equity Members.  Lehman Entities that own direct or indirect membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal Marblehead.

2.1.82    Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC Holdings.

2.1.83    Lehman Disputed Loans.  Collectively the following loans that are the purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan Agreement; (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan; (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement; and (n) Pacific Point Second Loan Agreement.

2.1.84    Lehman Recoupment Objection.  A claim objection filed with respect to certain claims filed by the Lehman Lenders that is based upon the affirmative defenses of recoupment, unjust enrichment and unclean hands.

2.1.85    Lehman Representatives.  The individuals that controlled the Lehman Entities.

2.1.86    Lehman Successor(s).  Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.87    Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

2.1.88    Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11 Cases arising from the Lehman Disputed Loans.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1          2.1.89    Lehman 502(d) Objection. A claim objection filed with respect to certain

2  claims filed by the Lehman Lenders that based upon Section 502(d) of the bankruptcy code.

3          2.1.90    Lexon. Lexon Insurance Co.

4          2.1.91    LitCo. A newly formed Delaware limited liability company that will be

5  purchasing the claims and Litigation Rights held by the Reliance Claimants that choose Option A

6  provided for in the Plan.

7          2.1.92    LitCo Plan Loan. A loan that will be made by LitCo, to the extent

8  necessary to pay Administrative Claims, and post Confirmation Date costs incurred by the SunCal

9  Proponents in connection with the sale process, and to pay post Effective Date costs incurred by

10  the Plan Trust, including litigation expenses where applicable, if no other source is available to pay

11  these obligations. LitCo will be capitalized with funds provided by a third party.

12          2.1.93    Litigation Claims. Any and all interests of the Group I: Voluntary

13  Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

14  rights, or causes of action which have been or may be commenced by the Group I: Voluntary

15  Debtor(s), the Chapter 11 Trustee, or the Committee, as the case may be, including, but not limited

16  to, any (i) Avoidance Actions; (ii) for turnover of property to the Group I: Voluntary Debtors'

17  Estates and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to

18  the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages,

19  recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary

20  Proceeding; (vi) the State Court Action, and (vii) any and all other Claims against Lehman's

21  Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

22          2.1.94    Litigation Recoveries. Any Cash or other property received by the

23  Chapter 11 Trustee, the Group I: Voluntary Debtors, the Committee and/or the Plan Trust, as the

24  case may be, from all or any portion of a Litigation Claim(s), including, but not limited to, awards

25  of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by

26  way of settlement, execution on judgment or otherwise.

27          2.1.95    Litigation Rights. Any Claims held by a party other than the Group I:

28  Voluntary Debtors that have not been fixed in a final judgment prior to the Effective Date.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

2.1.96    Marblehead Project. The Project owned by SunCal Marblehead, located in the City of San Clemente, California, as more particularly described herein.

2.1.97    Maximum Distribution. A Distribution to a Holder of an Allowed Unsecured Claim against a Group I Debtor equal to one hundred percent (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the Group I: Voluntary Debtor's Petition Date.

2.1.98    MB Firm. Miller Barondess, LLP.

2.1.99    Mechanic Lien Claims. Mechanic Lien Claims arising pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise allegedly satisfy the requirements of Bankruptcy Code 546(b).

2.1.100    Minimum Increment. Minimum Increment applicable to the sales of the Group I: Voluntary Projects are the following: one hundred thousand dollars ($100,000) for the Ritter Ranch Project, seventy-five thousand dollars ($75,000) for the Bickford Ranch Project, seventy-five thousand dollars ($75,000) for the SunCal Emerald Project and fifty thousand dollars ($50,000) for the Acton Project, until there are only two Qualified Bidders submitting bids for a Group I: Voluntary Project, then the Minimum Increment shall be twenty-five thousand dollars ($25,000).

2.1.101    Minimum Sale Price. The minimum gross sale price that must be paid for Group I: Voluntary Project before such projects can be sold pursuant to the Plan, which prices are the following: Ritter Ranch Project - $16,620,000, Bickford Ranch Project - $9,810,000, Emerald Meadows Project - $5,490,000, and Acton Project - $1,440,000.

2.1.102    Net Litigation Recoveries. Litigation Recoveries less associated Administrative Claims and Post-Confirmation Expenses incurred in connection with such Litigation Recoveries.

2.1.103    Net Sales Proceeds. The Cash generated from the sale(s) or liquidation of the Group I: Voluntary Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

MAINDOCS-#162398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1    2.1.104  Net Sales Proceeds Account(s).  Separate account(s) that will be

2  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

3  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

4  and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

5  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

6  where there are two Disputed Liens on a single Project, in which case, there shall be a single

7  account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or

8  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

9  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

10  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

11  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

12  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

13  thereto shall become Available Cash and shall be transferred to the applicable Distribution

14  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

15  allowed and deemed valid but subject to the equitable subordination causes of action in the

16  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

17  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

18    2.1.105  Opening Bid.  Opening Bid means the offer for one, or both of the Group

19  I: Voluntary Debtor Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor

20  for either one or both of the Group I: Voluntary Debtor Projects.

21    2.1.106  Orders for Relief Date.  The following are dates that orders for relief were

22  entered for each of the Trustee Debtors:

|                      |                   |
|----------------------|-------------------|
| SunCal Oak Valley    | January 6, 2009   |
| SunCal Heartland     | January 6, 2009   |
| SunCal Northlake     | January 6, 2009   |
| SunCal Marblehead    | January 6, 2009   |
| SunCal Century City  | January 6, 2009   |
| SunCal PSV           | January 6, 2009   |
| Delta Coves          | January 6, 2009   |
| SunCal Torrance      | January 6, 2009   |
| SunCal Oak Knoll     | January 6, 2009   |

-18-

1         2.1.107  Palmdale Hills. Palmdale Hills Property LLC, a Delaware limited liability

2   company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

3         2.1.108  Palmdale Hills CFD Bonds. Certain CFD bonds issued by the City of

4   Palmdale, in the amount of approximately $33 million that are owned by Palmdale Hills.

5         2.1.109  Palm Springs Village Project. The Project owned by SunCal PSV, located

6   in the City of Palm Springs, California, as more particularly described herein.

7         2.1.110  Person. An individual, partnership, corporation, limited liability company,

8   business trust, joint stock company, trust, unincorporated association, joint venture, governmental

9   authority, governmental unit, committee or other entity of whatever nature.

10        2.1.111  Petition Dates. The following are dates that each of the Voluntary Debtors

11  filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions

12  against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 16, 2008 |
| Del Rio | November 16, 2008 |
| Tesoro | November 16, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 16, 2008 |

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

2.1.112  Plan. This Chapter 11 Plan together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.113  Plan Documents. The Plan, the Plan Trust Agreement and all other documents attached to the Plan Supplement.

2.1.114  Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.115  Plan Supplement. The compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.116  Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.117  Plan Sponsor. The entity that has committed to cause the funding of certain specified obligations under the Plan on or after the Effective Date. The Plan Sponsor is Acquisitions.

2.1.118  Plan Trust. A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.119  Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

2.1.120  Plan Trust Agreement. The liquidating trust agreement governing the affairs of the Plan Trust, which will be in substantially the form contained in the Plan Supplement.

2.1.121  Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Property in accordance with the terms of the Plan.

2.1.122  Plan Trust Property. Plan Trust Property means all property within the Chapter 11 estates of the Group I: Voluntary Debtors, other than property that is affirmatively excluded by the Plan Trustee.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1        2.1.123   Post-Confirmation Expenses. The fees and expenses incurred by the Plan

2    Sponsor, the Plan Trustee and the Committee and their professionals following the Confirmation

3    Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and

4    liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed

5    Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions

6    under the Plan; and (v) otherwise consummating the Plan and closing the Group I: Voluntary

7    Debtors' Chapter 11 Cases.

8        2.1.124   Priority Claim. Any Claim, other than an Administrative Claim or a Tax

9    Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

10       2.1.125   Pro Rata. Proportionately, so that with respect to any distribution in

11   respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

12   such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

13   amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

14   such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

15       2.1.126   Professional. A Person or Entity (a) employed by the Group I: Voluntary

16   Debtors, the Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the

17   Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant

18   to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and

19   reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

20   Bankruptcy Code.

21       2.1.127   Professional Fees. All Allowed Claims for compensation and for

22   reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

23       2.1.128   Projects. The Debtors' residential real estate development projects and

24   other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

25       2.1.129   Qualifying Bid. Qualifying Bid means, with respect to any bid on a

26   Group I: Voluntary Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the

27   Initial Overbid Amount, if it is the Initial Overbid, or B) in excess of the immediately preceding

28   Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

1    2.1.130    Qualifying Bidder.  Qualifying Bidder means a bidder who a) has

2    deposited the sum of three hundred thousand dollars ($300,000) into an escrow designated by the

3    SunCal Proponents in the case of a bid for the Ritter Ranch Project or a bid for the Bickford Ranch

4    Project, the sum of two hundred thousand dollars ($200,000) in the case of the Emerald Meadows

5    Project, and $100,000 in the case of a bid for the Acton Project; b) agreed that this sum will be

6    forfeited as liquidated damages if such bidder fails to perform; and c) who has provided the SunCal

7    Plan Proponents evidence confirming that such bidder has the financial means to acquire the

8    applicable Group I: Voluntary Project(s) that such bidder is seeking to acquire.

9    2.1.131    Reliance Claim. An Allowed Unsecured Claim against a Group I:

10   Voluntary Debtors that would entitle the holder thereof to be the beneficiary of any equitable

11   subordination judgment obtained against a Lehman Entity by such holder. This definition includes

12   the holders of qualifying claims that are secured by mechanics liens.

13   2.1.132    Reliance Claimant. The holder of a Reliance Claim. A list of the Reliance

14   Claims and Reliance Claimants is attached to the Disclosure Statement as Exhibit "8," and the

15   holders of mechanics lien claims.

16   2.1.133    Ritter Ranch Loan Agreement.  That certain Credit Agreement, dated as

17   of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and

18   lender, pursuant to which LCPI made a loan in the maximum aggregate principal amount of

19   approximately $264,000,000.  The Ritter Ranch Loan Agreement is allegedly secured by a first-

20   priority deed of trust on all real and personal property owned by Palmdale Hills.  The Ritter Ranch

21   Loan Agreement has an asserted balance due of $287,252,096.31 as of March 30, 2009.

22   2.1.134    Ritter Ranch Project.  The Project owned by Palmdale Hills, located in

23   the City of Palmdale, California, as more particularly described herein.

24   2.1.135    Ritter Ranch Project Break-up Fee. The sum of eight hundred and seventy

25   thousand dollars ($870,000) that will be paid to the Stalking Horse Bidder that submits the

26   Opening Bid for the Ritter Ranch Project, if such Stalking Horse Bidder is not the Winning Bidder.

27

28

1    2.1.136    Sale Period.  The Sale Period is the time period during which the SunCal

2  Proponents must consummate a sale or liquidation of the Group I Projects. The Sale Period shall

3  commence on the Confirmation Date and shall expire on the Effective Date.

4    2.1.137    SCC LLC.  SCC Acquisitions LLC, a limited liability company, a

5  subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

6    2.1.138    Schedules.  The schedules of assets and liabilities and list of equity

7  security holders Filed by the Group I: Voluntary Debtors, as required by Section 521(1) of the

8  Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

9  as amended from time to time.

10    2.1.139    Secured Claim.  Any Claim, including interest, fees, costs, and charges to

11  the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

12  unavoidable Lien on the Group I: Voluntary Debtor(s)' Assets.

13    2.1.140    Stalking Horse Bidder.  The Qualified Bidder who submits the Opening

14  Bid.

15    2.1.141    State Court Action. The action filed by certain Voluntary Debtors against

16  Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

17  Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan

18  Trustee and/or the Trustee Debtors as additional plaintiffs therein.

19    2.1.142    SunCal.  The SunCal Companies, a trade name for Acquisitions and its

20  Affiliates.

21    2.1.143    SunCal Bickford.  SunCal Bickford Ranch, LLC, a Delaware limited

22  liability company, a Voluntary Debtor herein, and the owner of the Bickford Ranch Project.

23    2.1.144    SunCal Emerald. SunCal Emerald Meadows, LLC, a Delaware limited

24  liability company, a Voluntary Debtor herein, and the owner of the Emerald Meadows Project.

25    2.1.145    SunCal Emerald Project Break-up Fee. The sum of two hundred and fifty

26  thousand dollars ($250,000) that will be paid to the Stalking Horse Bidder that submits the

27  Opening Bid for the SunCal Emerald Project, if such Stalking Horse Bidder is not the Winning

28  Bidder.

1      2.1.146  SunCal Management.  SunCal Management, LLC, a Delaware limited

2  liability company, and the property manager for the Projects.

3      2.1.147  SunCal Marblehead. SunCal Marblehead, LLC. a Delaware limited

4  liability company, a Trustee Debtor, and the owner of the Marblehead Project.

5      2.1.148  SunCal Marblehead/SunCal Heartland Loan Agreement.  That certain

6  Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

7  as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

8  Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

9  pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of

10  approximately $316,061,300. The SunCal Marblehead/SunCal Heartland Loan Agreement is

11  allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

12  The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

13  $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to this loan

14  agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

15      2.1.149  SunCal Plan Proponent(s).  The Voluntary Debtors and Acquisitions as

16  the parties-in-interest that are proposing the Plan.

17      2.1.150  SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company, a

18  Trustee Debtor (a Group I: Voluntary Debtor), and the owner of the Palm Springs Village Project.

19      2.1.151  SunCal PSV Loan Agreement.  That certain Term Loan and Revolving

20  Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower,

21  and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the

22  maximum aggregate principal amount of approximately $90 million. The SunCal PSV Loan

23  Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project.

24  The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30,

25  2009.

26      2.1.152  Tax.  Any tax, charge, fee, levy, impost or other assessment by any

27  federal, state, local or foreign taxing authority, including, without limitation, income, excise,

28  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

1  estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or

2  additions attributable to, or imposed on or with respect to such assessments.

3       2.1.153   Tax Claim. Any Claim for any Tax to the extent that it is entitled to

4  priority in payment under Section 507(a)(8) of the Bankruptcy Code.

5       2.1.154   Trustee Debtor(s). The following Debtors, individually or collectively,

6  that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

7  Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal

8  Torrance, and SunCal Oak Knoll.

9       2.1.155   Trustee Debtors' Committee. The Official Committee of Unsecured

10  Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

11  Bankruptcy Code.

12       2.1.156   Unpaid Secured Real Property Tax Claims. Secured Claims held by

13  various government entities secured by liens on the underlying real properties owned by the

14  Debtors but that are non-recourse to the Debtors.

15       2.1.157   Unsecured Claim. An Unsecured Claim is any Claim that is not an

16  Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

17       2.1.158   Voluntary Debtor(s). The following  Chapter 11 debtors and debtors-in-

18  possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

19  Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

20  Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

21  Rio and Tesoro.

22       2.1.159   Voluntary Debtors' Committee. The Official Committee of Unsecured

23  Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

24  Bankruptcy Code.

25       2.1.160   Winning Bid. The highest Qualifying Bid received for the Ritter Ranch

26  Project, the Bickford Ranch Project or the Acton Project.

27       2.1.161   Winning Bidder. The party that submits the highest Qualifying Bid.

28

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1    **2.2   Rules of Construction.**

2    For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or

3  in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

4  singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

5  masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

6  Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means

7  such document or schedule, as it may have been or may be amended, modified or supplemented

8  pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

9  entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

10  or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

11  and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

12  in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

13  the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

14  contract, instrument, release, indenture, agreement, or other document being in a particular form or

15  on particular terms and conditions means that such document shall be substantially and materially

16  in such form or substantially and materially on such terms and conditions; (h) any reference in the

17  Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

18  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

19  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

20  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

21  express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

22    **2.3   Exhibits.**

23    All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

24  therein.

25    **III.**

26    **TREATMENT OF UNCLASSIFIED CLAIMS**

27    **3.1   Introduction.** As required by the Bankruptcy Code, the Plan places Claims and

28  Interests into various Classes according to their right to priority.  However, certain types of Claims

-26-

are not classified in any Classes under the Plan. These Claims are deemed "unclassified" under the

provisions of the Code. They are not considered impaired and they do not vote on the Plan,

because they are automatically entitled to specific treatment provided for them in the Code. As

such, the SunCal Plan Proponents have not placed the following Claims in a Class. The treatment

of these unclassified Claims is as provided below.

**3.2    Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the later of Effective

Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

treatment. The treatment of Allowed Administrative Claims is as described below. However, such

Administrative Claims are continuing to be incurred. The Allowed Administrative Claims shall be

paid from the applicable Distribution Account(s) pursuant to the Acquisitions Administrative

Loan.

**3.3    Treatment and Repayment of the Lehman's Administrative Loan(s).**

The Lehman Disputed Administrative Loans shall be paid in full on the later of the

Effective Date, or the date any objections to the same are overruled by the Court leaving them

Allowed claims. Prior to payment, or until disallowed, these claims shall continue to be secured by

their existing liens against the respective Assets of the Trustee Debtors.

The Lehman Disputed Administrative Loans shall be paid in full, on the date referenced

above, from either 1) funds loaned to the Plan Trust by LitCo or another designated third, or 2)

from the funds in the applicable Net Sale Proceeds Account.

**3.4    Repayment of Allowed Administrative Claims Other than the Lehman
Administrative Loans.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

different treatment and subject to the Administrative Claims Bar Date set forth herein, the

Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

(i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1   Claim representing obligations incurred in the ordinary course of post-petition business by the

2   Debtors in Possession (including without limitation post-petition trade obligations and routine

3   post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the

4   ordinary course of business, in accordance with the terms of the particular obligation.

5         **3.5**    **Administrative Claims Bar Date.**

6         All applications for final compensation of Professionals for services rendered and for

7   reimbursement of expenses incurred on or before the Effective Date and all other requests for

8   payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

9   or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

10  obligations and routine post-petition payroll obligations incurred in the ordinary course of the

11  Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

12  obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

13  upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

14  extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

15  of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

16  is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

17  any party that seeks payment of Administrative Claims that (i) is required to file a request for

18  payment of such Administrative Claims and (ii) does not file such a request by the deadline

19  established herein shall be forever barred from asserting such Administrative Claims against the

20  Debtors, the Plan Trust, their estates, or any of their property.

21        **3.6**    **Treatment of Unsecured Tax Claims.**

22        Tax Claims are certain unsecured income, employment and other taxes described by Code

23  Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

24  receive the present value of such Claim in deferred cash payments, over a period not exceeding

25  five (5) years from the petition date and that such treatment not be less favorable than the treatment

26  accorded to non priority unsecured creditors.

27        At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

28  entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

1  | each three-month period following the Effective Date, during a period not to exceed five years

2  | after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

3  | unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

4  | United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

5  | the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

6  | favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

7  | forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

8  | IV.

9  | **CLASSIFICATION OF CLAIMS AND INTERESTS**

10 | As required by the Code, the Plan places Claims and Interests into various Classes

11 | according to their right to priority and other relative rights. The Plan specifies whether each Class

12 | of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

13 | will receive. The table below lists the Classes of Claims established under the Plan and states

14 | whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired"

15 | if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

16 | Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

17 | Code.

18 |

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| Class 1 | Claimant | Claim Nos.[3] |
| **Class 1.1** | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Ritter Ranch Project in the amount of $4,755,857. | Palmdale Hills 12 |
| **Class 1.2** | Placer County as the Holder of an Unpaid Secured Real Property Tax Claim against the Bickford Ranch Project in the amount of $9,467,165. | Scheduled Amount |

[3] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

-29-

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.**[3] |
| **Class 1.3** | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Emerald Meadows Project in the amount of $798,256. | SunCal Emerald Meadows 9 |
| **Class 1.4** | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Acton Project in the amount of $1,652,389. | Acton Estates  1 |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.1** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal Bickford  arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | SunCal Bickford: 16 |
| **Class 2.2** | The Holder of Lehman's Disputed Claims filed by LCPI against Palmdale Hills arising from the Ritter Ranch Loan Agreement in the asserted amount of $287,252,096. | Palmdale Hills 65 |
| **Class 2.3** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal I, SunCal III, Acton Estates, SunCal Emerald, SunCal Bickford, SunCal Summit Valley arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | SunCal Emerald Meadows 7 |
| **Class 2.4** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal I, SunCal III, Acton Estates, SunCal Emerald, SunCal Bickford, SunCal Summit Valley arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | Acton Estates:  6 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE RITTER RANCH PROJECT, THE BICKFORD RANCH PROJECT, AND THE ACTON PROJECT | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |

MAINDOCS-#165398-v3-SCC_Plan_Group_1_Vcl_Debtors.DOC

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE RITTER RANCH PROJECT, THE BICKFORD RANCH PROJECT, AND THE ACTON PROJECT | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.1** | The Holder of the asserted Mechanic Lien Claim held by Asphalt Professionals against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | Palmdale Hills 1 and 46 |
| **Class 3.2** | The Holder of the asserted Mechanic Lien Claim held by Sierra Cascade Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | Palmdale Hills 33 |
| **Class 3.3** | The Holder of the asserted Mechanic Lien Claim held by Staats Construction. Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | Palmdale Hills 51 |
| **Class 3.4** | The Holder of the asserted Mechanic Lien Claim held by Southland Farmers, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | Palmdale Hills 55, 67 and 68 |
| **Class 3.5** | The Holder of the asserted Mechanic Lien Claim held by Chamelon Design Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $60,920. | Palmdale Hills 93, 99 |
| **Class 3.6** | The Holder of the asserted Mechanic Lien Claim held by MHM Engineers against the Bickford Ranch Project in the amount of $8,916. | SunCal Bickford 5 |
| **Class 3.7** | The Holder of the asserted Mechanic Lien Claim held by Land Architecture against the Bickford Ranch Project in the amount of $100,245. | SunCal Bickford 6 |
| **Class 3.8** | The Holder of the asserted Mechanic Lien Claim held by Kiewit Pacific Co. against the Bickford Ranch Project in the amount of $1,868,357. | SunCal Bickford 10 |
| **Class 3.9** | The Holder of the asserted Mechanic Lien Claim held by ARB, Inc. against the Bickford Ranch Project in the amount of $1,052,272. | SunCal Bickford 15 |

-31-

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS ON THE RITTER RANCH PROJECT, THE BICKFORD RANCH PROJECT, AND THE ACTON PROJECT | | |
|---|---|---|
| Class 3 | Claimant | Claim Nos. |
| **Class 3.10** | The Holder of the asserted Mechanic Lien Claim held by Independent Construction against the Bickford Ranch Project in the amount of $117,209. | SunCal Bickford 28 |
| **Class 3.11** | The Holder of the asserted Mechanic Lien Claim held by Marques Pipeline, Inc. against the Bickford Ranch Project in the amount of $330,118. | SunCal Bickford 29 and 30 |
| **Class 3.12** | The Holder of the asserted Mechanic Lien Claim held by Hall & Foreman, Inc. against the Emerald Meadows Project in the amount of $287,727. | SunCal Emerald 13 |
| **Class 3.13** | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Emerald Meadows Project in the amount of $991,315. | SunCal Emerald 15 and 16 |
| **Class 3.14** | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Emerald Meadows Project owned by SunCal Emerald in the amount of $14,893. | Palmdale Hills 15 |

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

| CLASSIFICATION OF BOND CLAIMS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Bond Claims that are Allowed Secured Claims arising from bonds issued with respect to the Group I Projects | **Various Filed and Scheduled** |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| **Class 5.1** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $10,950 against the Group I: Voluntary Debtors | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.1** | The holders of Reliance Claims against Palmdale. | Various Filed and Scheduled |
| **Class 6.2** | The holders of Reliance Claims against SunCal Bickford. | Various Filed and Scheduled |

---

[4] Unsecured Claims are generally be placed within the same class and they receive the same treatment under a Plan. However, the SunCal Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1, 6.2 and 6.3, and 7.1, 7.2 and 7.3. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1, 6.2 and 6.3, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The Unsecured Creditors in Classes 7.1, 7.2 and 7.3 do not hold Reliance Claims. Under the Plan, the Reliance Claimants who sell their Reliance Claimants to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of $.60 cents on their Allowed Unsecured Claims *from non-estate funds. Accordingly, the $.60 cent payment is being paid from non-estate funds, for a non-estate asset.* If a Reliance Claimant elects not to sell this claim, then this claimant will receive the exact same distribution rights that the Class 7.1, 7.2 and 7.3 claimants will receive under the Plan, unless the Court allocates a part of any judgment granted in the Lehman Adversary Proceeding to these particular claims. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.3** | The holders of Reliance Claims against SunCal Emerald Meadows. | Various Filed and Scheduled |
| **Class 6.4** | The holders of Reliance Claims against Acton Estates. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS[5] | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.1** | Claimants holding Allowed Unsecured Claims against Palmdale that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.2** | Claimants holding Allowed Unsecured Claims against SunCal Bickford that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.3** | Claimants holding Allowed Unsecured Claims against SunCal Emerald Meadows that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.4** | Claimants holding Allowed Unsecured Claims against Acton Estates that are not Reliance Claims | Various Filed and Scheduled |

| **Class 8** | **Claimant** | **Scheduled** |
|---|---|---|
| **Class 8.1** | Allowed Interests in Palmdale held by SCC Palmdale, LLC | As scheduled |
| **Class 8.2** | Allowed Interests in SunCal Bickford held by SunCal I. | Scheduled Amount |
| **Class 8.3** | Allowed Interests in SunCal Emerald Meadows held by SunCal I | Scheduled Amount |
| **Class 8.4** | Allowed Interests in Acton Estates held by SunCal I | Scheduled Amount |

[5] This Class includes, but it is not limited to, Bond Claims that are not Allowed Secured Claims within Class 4.1.

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1    The Plan's Treatment of Holders of Allowed Secured Real Property Tax
Claims on the Group 1: Voluntary Debtor Projects (Classes 1.1 through 1.4).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 through 1.4 are not impaired under the Plan. Such claimant's shall retain their existing lien rights and one of the following two non-impairment options shall apply, at the election of the Plan Trustee: 1) On the Effective Date, such claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2), or 2) on the Effective Date, or the Holder(s) shall be free to pursue their respective rights and remedies against the underlying real property collateral under applicable California law.

**5.2    The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s)
(Class 2.1 through 2.4).**

The Holder(s) of Disputed Secured Claims within Class 2.1 through 2.4 shall receive the indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), through the following treatment:

A.    Group I Project Lien Rights. The Class 2.1 through 2.4 Holder(s) shall retain their interest in the Disputed Lien(s) against Plan Trust Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the Allowance of such Disputed Secured Claims and determining the validity, priority and extent of the applicable Disputed Liens against the applicable Plan Trust Assets, which secure these claims, except as follows:

1.    The Plan Trust Assets subject to the Class 2.1 through 2.4 Disputed Liens may be sold free and clear of such liens on the Effective Date. These Disputed Liens shall then attach to the Net Proceeds from the sale, which shall be deposited into the Net Proceeds Account;

2.    To the extent that a Disputed Secured Claim held by either the Class 2.1 through 2.4 Claimants against a Group I Project is disallowed, and the Disputed Lien associated with this Disputed Secured Claim is consequently released to the extent of this disallowance, the Plan Trustee shall be authorized to use to the Net Proceeds that are no longer

-35-

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  subject to the Disputed Lien(s) to pay other Allowed Claims in their order of priority, in

2  accordance with the terms of the Plan;

3          3.     To the extent that a Disputed Secured Claim held by either the Class

4  2.1 through 2.4 Claimant and the associated Disputed Lien(s) against a Group I Project is

5  subordinated, the Plan Trustee shall be authorized to use to the Net Proceeds that are no longer

6  subject to the Disputed Lien(s), or where the priority of the Disputed Liens has been subordinated

7  by the Court, to pay other Allowed Claims in their order of priority, in accordance with the terms

8  of the Plan, to the extent of the subordination; and

9          Notwithstanding the existence of the Disputed Secured Claims and the

10  Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Proceeds Account

11  subject to these claims and liens to pay the claims of other creditors in accordance with the terms

12  of the Plan, if the Class 2.1 through 2.4 claimants' interests in this property will remain adequately

13  protected after this release.

14          B.     Sale of Group I Projects. The Plan Trustee shall complete the sale of Group I

15  Projects on the Effective Date that are subject to the Holder(s)' Disputed Secured Claims and

16  Disputed Liens, free and clear of such claims and liens, through a sale that satisfies the following

17  conditions:

18          1.     The Group I Projects will be sold through a public auction after a

19  commercially reasonable marketing and advertising effort of at least sixty (60) days duration;

20          2.     The SunCal Plan Proponents shall have the right to provisionally

21  accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this

22  bidder the right to receive the Ritter Ranch Project Break-up Fee, the Bickford Ranch Project

23  Break-up Fee, the Emerald Meadows Project Break-up Fee or Acton Project Break-up Fee, the as

24  the case may be, if such bidder is not the Winning Bidder;

25          3.     Other Qualified Bidders shall have the right to overbid the Opening

26  Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must

27  be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be

28  equal to or in excess or the Minimum Increment;

1          4.     The highest Qualifying Bid received from a Qualified Bidder, shall

2   be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon

3   payment of the Winning Bid, the Winning bidder shall receive title to the applicable Group I

4   Project free and clear of all monetary liens and encumbrances; and

5          5.     No bidder shall be allowed to submit or demand the acceptance of a

6   "credit bid" based upon an existing claim or lien.

7          C.     Abandonment of Unsold Group I Project(s). If for any reason the Plan

8   Trustee is unable to sell any of the Group I Projects on the Effective Date, they will be abandoned

9   as of 11:59 p.m. on the Effective Date, and the Class 2.1, 2.2, 2.3 and 2.43 claimants, as the case

10  may be, shall be free to exercise any and all remedies that they may hold with respect to these

11  Assets.

12         D.     Sale of Other Plan Trust Assets Subject To Liens of Class 2.1 through 2.4

13  Claimants. The Plan Trustee shall complete the sale of all other Plan Trust Assets that are subject

14  to the Disputed Secured Claims and the Disputed Liens of the Class 2.1, 2.2, 2.3 and 2.4 claimants

15  Liens and Disputed Claims, free and clear of such claims and liens, through a sale that satisfies the

16  following conditions:

17         1.     Such Assets will be sold through a public auction after a

18  commercially reasonable marketing and advertising effort of at least thirty (30) days duration;

19         2.     The Committee shall approve the terms of the sale;

20         3.     The sale will be held and completed within ninety (90) days of the

21  Effective Date;

22         4.     No bidder may submit or demand the acceptance of a "credit bid"

23  based upon an existing claim or lien; and

24         5.     All Net Sale Proceeds generated from such sales shall be deposited

25  into the applicable Net Sales Proceeds Account with all Disputed Claims and Disputed Liens

26  attached thereto.

27         E.     Abandonment of Assets Other Than Group I Projects. All Asset(s), other

28  than Litigation Claims (which shall be retained), that are not sold within ninety (90) days of the

-37-

MAINDOCS-#165398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  Effective Date shall be deemed abandoned by the Plan Trust as of the ninety-first (91st) day after

2  the Effective Date, no payment shall be made to such Holder(s), and such Holder(s) shall be

3  allowed to pursue their respective rights and remedies against such assets under applicable law

4  subject to a Final Order determining the allowance and priority of the Disputed Claims and the

5  validity of the Disputed Liens in, including but not limited to, the Lehman Adversary Proceeding

6  and the Lehman Claims Objections.

7          F.      Distributions To The Class 2.1 through 2.4 Claimants. If the Plan Trustee

8  consummates a sale or otherwise liquidates the particular Asset(s) subject to the Class 2.1, 2.2, 2.3

9  and 2.4 Disputed Secured Claim(s) and/or Disputed Lien(s) during the Sales Period, as provided

10 for above, the Holder(s) of such Disputed Secured Claim shall receive a distribution to the extent

11 of available funds from the applicable Net Sale Proceeds Account(s) to the extent required by a

12 Final Order determining the allowance and priority of the Disputed Secured Claims and the

13 validity, priority and extent of the Disputed Liens in, including but not limited to, the Lehman

14 Adversary Proceeding and the Lehman Claims Objections.

15      **5.3    The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against**

16              **the Group I Projects (Classes 3.1 Through 3.14).**

17          The treatment of the Holders of Allowed Classes 3.1 through 3.14 Secured Claims under

18 the Plan shall be as follows:

19          A.      The Holder(s)' rights are impaired under the Plan;

20          B.      The Holder(s) shall retain their respective underlying liens on the applicable

21 Projects, but shall forebear from pursuing their rights and remedies until the expiration of the Sales

22 Period;

23          C.      If the Plan Trustee is able to consummate a sale of the Group I: Voluntary

24 Debtor Projects subject to the liens asserted by the Holders of Class 3.1 through 3.14 claims

25 during the Sales Period, such Holders shall receive a distribution, to the extent available, of Net

26 Sale Proceeds in accordance with the priorities set forth under the Bankruptcy Code, subject to a

27 Final Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s)

28

MAINDOCS-#165398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  and the validity of the applicable Lehman Disputed Lien(s) in, including but not limited to, the

2  Lehman Adversary Proceeding; and

3      D.    If the Plan Trustee is unable to consummate a sale of the applicable

4  underlying real property collateral during the Sales Period, such real property collateral shall be

5  deemed abandoned by the Plan Trustee, no payment shall be made to such Holder(s), and such

6  Holder(s) shall be allowed to pursue their respective rights against the real property collateral

7  under applicable California law, subject to a Final Order(s) resolving the allowance and priority of

8  the applicable Lehman's Disputed Claim(s) and applicable Lehman Disputed Lien(s), without

9  recourse to the Debtor (s).

10      **5.4    The Plan's Treatment of Holders of Bond Claims that qualify As Allowed**

11      **Secured Claims with Liens against a Group I Project (s) (Class 4.1).**

12      The rights of each holder of an Allowed Bond Indemnification Claim arising from a bond

13  issued with respect to a Group I Project, shall, to the extent such claim(s) are determined to be a

14  secured claim(s), be impaired under the Plan. Such claims shall receive the following treatment:

15      A.    Each such Allowed Secured Claim shall be placed in a separate class and

16  receive a separate ballot for voting purpose

17      B.    Each Holder(s) shall retain their respective underlying liens on the

18  applicable Group I: Voluntary Project, but shall forebear from pursuing their rights and remedies

19  until the expiration of the Sales Period;

20      C.    If the Plan Trustee is able to consummate a sale of the Group I Projects

21  subject to the liens asserted by the Holders of Class 4.1 claimants  during the Sales Period, such

22  Holders shall receive a distribution, to the extent available, of Net Sale Proceeds in accordance

23  with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s) resolving the

24  allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity of the

25  applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

26  Proceeding; and

27      D.    If the Plan Trustee is unable to consummate a sale of the applicable

28  underlying real property collateral during the Sales Period, such real property collateral shall be

MAINDOCS-#165398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  deemed abandoned by the Plan Trustee, no payment shall be made to such Holder(s), and such

2  Holder(s) shall be allowed to pursue their respective rights against the real property collateral

3  under applicable California law.

4      **5.5    The Plan's Treatment of Holders of Priority Claims (Class 5.1).**

5          The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

6              A.    The Holder(s) are unimpaired under the Plan; and

7              B.    The Holder(s) shall be paid from the applicable Distribution Account(s) (i)

8  the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y)

9  the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority

10  Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or

11  (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

12      **5.6    The Plan's Treatment of Holders of General Unsecured Claims that are**

13          **Reliance Claims (Classes 6.1, 6.2, 6.3 and 6.4).**

14          The rights of Holders of Allowed Class 6.1, 6.2., 6.3 and 6.4 Claims are impaired under the

15  Plan. They have the right to choose between the following treatment options:

16              A.    Option A: A claimant in these classes *who votes in favor of the Plan*, and

17  who chooses Option A, will have the right to sell to LitCo all of the claimant's right, title and

18  interest in all Allowed Reliance Claims and all of the claimant's Litigation Rights against the

19  applicable Debtor, SunCal Affiliates, and the Lehman Entities, for the sum of sixty cents ($0.60)

20  per dollar of allowed claim, payable in cash on the Effective Date, provided there is no stay

21  pending an appeal of the Confirmation Order, in full satisfaction of such claimant's Allowed

22  Reliance Claims; or

23              B.    Option B: A claimant in these classes who votes against the Plan, or who

24  votes in favor of the Plan, but does not choose Option A, or who does not vote on the Plan, will 1)

25  receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such

26  claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the

27  Lehman Entities and its right to receive such claimant's share, as determined by the Court, in the

28  benefits and recoveries resulting from a judgment or order entered in the Lehman Adversary

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  Proceeding, the State Court Action, or the Lehman Claims Objections, and 3) right to receive a

2  pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in

3  full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority

4  Claims.

5      **5.7**    **The Plan's Treatment of Holders of Allowed General Unsecured Claims that**

6      **Are Not Reliance Claims (Classes 7.1. 7.2, 7.3 and 7.4).**

7      The rights of Holders of Allowed Class 7.1, 7.2, and 7.4 Claims are impaired under the

8  Plan. Under the Plan, each claimant will 1) receive a minimum distribution in cash, on the

9  Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-

10  rata share of any funds payable from the applicable Distribution Account(s), after payment in full

11  of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims

12  and any sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class

13  6.1, 6.2, 6.3 and 6.4 Claims from either the Claim Reduction Amounts, or on account of a

14  judgment in the Lehman Adversary Proceeding.

15      Class 7.3 consists of the claims subject to the Emerald Compromise. The Emerald

16  Compromise, as modified or amended, shall be approved by separate order of the Court pursuant to

17  Bankruptcy Rule 9016, or as provide in the Plan and approved by the Court.

18      **5.8**    **The Plan's Treatment of Holders of Allowed Interests.**

19      The Interests of the Holders in Class 8.1, 8.2, 8.3 and 8.4 are impaired under the Plan. All

20  such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these

21  Holders on account of such Interest(s).

22                                          **VI.**

23                **ACCEPTANCE OR REJECTION OF THE PLAN**

24      **6.1**    **Introduction.**

25      PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

26  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

27  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

28  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

1  which they may wish to consider, as well as certain deadlines for filing Claims. The Debtors

2  cannot represent that the discussion contained below is a complete summary of the law on this

3  topic.

4      Many requirements must be met before the Court can confirm the Plan. Some of the

5  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

6  the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

7  whether the Plan is feasible. The requirements described herein are <u>not</u> the only requirements for

8  confirmation.

9      **6.2**   **Who May Object to Confirmation of the Plan.**

10      Any party in interest may object to the confirmation of the Plan, but as explained below not

11  everyone is entitled to vote to accept or reject the Plan.

12      **6.3**   **Who May Vote to Accept/Reject the Plan.**

13      A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of

14  the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and

15  (2) Classified in an impaired Class. The votes will be tabulated on a Debtor by Debtor basis.

16      **6.4**   **What Is an Allowed Claim/Interest.**

17      As noted above, a Holder of a Claim or Interest must first have an Allowed Claim or

18  Allowed Interest to vote.

19      **6.5**   **What Is an Impaired Class.**

20      A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

21  or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

22  In this case, the Debtors believe that all Classes, except for Class 5.1 are impaired.

23      **6.6**   **Who Is Not Entitled to Vote.**

24      The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been

25  disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to

26  Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain

27  any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such

28  Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy

-42-

1  Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

2  they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes

3  that do not receive or retain any property under the Plan do not vote because such Classes are

4  deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except

5  Class 5.1. These classes are not impaired under the Plan and consequently are not entitled to vote.

6  They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in

7  Classes 8.1, 8.2, 8.3 and 8.4 are being cancelled under the Plan; accordingly these Interest Holders

8  are deemed to have voted to reject the Plan.

9      EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

10  HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

11      **6.7    Who Can Vote in More than One Class.**

12      A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

13  Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

14  the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

15  otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

16  Subordinated Note Claims), and may vote the Claims held in each Class.

17      **6.8    Votes Necessary for a Class to Accept the Plan.**

18      A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

19  number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

20  accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

21  two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

22  the Plan.

23      **6.9    Treatment of Nonaccepting Classes.**

24      As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

25  Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

26  required by the Code and at least one impaired Class of Claims accepts the Plan. The process by

27  which a plan may be confirmed and become binding on non-accepting Classes is commonly

28  referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

1    nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

2    requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

3    equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

4    11 U.S.C. § 1129(b) and applicable case law.

5        **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

6        The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

7    impaired Class if such Class does not vote to accept the Plan.

8                                          **VII.**

9                **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

10       **7.1    Introduction.**

11       This section is intended to address how the SunCal Plan Proponents intend to implement

12   the provisions of the Plan.  It addresses the transfer of the Plan Trust Property to the Plan Trust, the

13   nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

14   resolution of disputed claims, the sources of funds that will be used to pay claims and the

15   mechanics of how claims will be paid.

16       **7.2    Sale Process After Confirmation Date But Prior To Effective Date.**

17       The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

18   the highest dividend possible by selling the estates' primary assets, the Group I: Voluntary Debtor

19   Projects, to the highest bidder. The process of marketing the Group I: Voluntary Debtor Projects

20   for sale will begin, pursuant to the Confirmation Order, immediately after the entry of this order.

21   Although the Chapter 11 Trustee will not be formally removed under the Plan until the Effective

22   Date, he will be required to work with the SunCal Proponents after the Confirmation Date to

23   promote and facilitate the sale of the Group I: Voluntary Debtor Projects in accordance with the

24   Plan terms.

25       The SunCal Proponents will pursue the following sale procedures after the Confirmation

26   Date:

27            A.    Implementation of a marketing program. Once the Plan is confirmed, the

28   SunCal Proponents will market the Group I Projects for sale through a comprehensive sale effort

-44-

1   during the Sale Period. This sale effort will include 1) sending sale packages describing each

2   Group I Project to the real estate brokerage community; b) advertising the Group I Projects for sale

3   on a website that includes links allowing direct access to all relevant information regarding the

4   Group I Projects; and c) sending packages to a list of prospects nationally who are actively seeking

5   or may have interest in these kinds of assets.

6       B.  Identifying a Stalking Horse Bidder. During the Sale Period, the SunCal

7   Parties will accept, on a provisional basis, an Opening Bid for one or both of the Group I Projects.

8   The bidder whose Opening Bid is accepted will become the "Stalking Horse Bidder." The Opening

9   Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group I Project.

10      C.  The Sale Contract. The sale contract that will be entered into with the

11  Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

12      1.  Overbid Provisions. The contract will allow the SunCal Proponents

13  to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the

14  Stalking Horse Bid by the Initial Overbid Amount applicable to each Group I Project. In the case of

15  Ritter Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the

16  applicable Opening Bid, the Ritter Ranch Break-up Fee and one hundred thousand dollars

17  ($100,000). In the case of the Bickford Ranch Project, the Initial Overbid Amount is a sum that is

18  not less than the sum of the applicable Opening Bid, the Bickford Ranch Break-up Fee and

19  seventy-five thousand dollars ($75,000). In the case of the Emerald Meadows Project, the Initial

20  Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Emerald

21  Meadows Break-up Fee and seventy-five thousand dollars ($75,000). In the case of the Acton

22  Project, the Initial Overbid Amount is a sum that is not less than the sum of the applicable Opening

23  Bid, the Acton Project Break-up Fee, and the fifty-thousand dollars ($50,000).

24      2.  Break-Up Fees. The sale contract will include a "break-up fee"

25  provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and

26  another Qualified Bidder purchases the Group I Project(s) that is the subject of the Opening Bid.

27      3.  Sale Free And Clear of Liens. The sale contract will provide that the

28  Group I Project(s) are being sold free and clear of all monetary liens and encumbrances and that no

1    party holding a lien against the projects, including the Lehman Lenders, may submit a "credit bid"

2    based upon the amount allegedly owing on the claims secured by the project being sold.

3        D.    The Auction. Ten days prior to the Effective Date, the SunCal Proponents

4    will conduct an auction wherein all Qualified Bidders who have submitted Qualified Bids for the

5    Group I: Voluntary Debtor Projects will have the opportunity to increase their bids for these

6    Projects. The Qualified Bidder that submits the highest bid for the Project will then be designated

7    the Winning Bidder. The Winning Bidder will then have twenty (20) days to prepare to close this

8    purchase transaction by paying the Winning Bid amount. Once the Winning Bidder advises the

9    SunCal Plan Proponents that they are ready to close, the sequence of events described in

10   paragraphs 10.3 through 10.5 shall be implemented.

11       The entire process of marketing and selling the Group I: Voluntary Debtor Projects will be

12   overseen by an independent real estate professional with experience managing sales of this kind.

13   This professional will participate in every material aspect of the sale effort, and he or she shall

14   have the right to file an objection to the sale effort with the Court if the process is not proceeding

15   in a fair and effective manner.

16       **7.3.    Transfer of Property To The Plan Trust**.

17       On the Effective Date, title to and possession of all property of the Group I: Voluntary

18   Debtors, excepting those items of property that the Plan Trustee affirmatively elects not to transfer

19   to the Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or

20   action under any applicable agreement, law, regulation, order or rule of law.

21       **7.4.    Closing of Group I Project Sales**. On the Effective Date, the Group I Project(s)

22   shall be sold free and clear of liens to the Winning Bidder, for a price equal to the Winning Bid.

23       **7.5.    Purposes of The Plan Trust**.

24       The Plan Trust's purposes, powers and objectives include, but are not limited to the

25   following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust

26   Property for the highest return reasonably obtainable; (ii) to pursue all Litigation Claims through

27   collection efforts, including through litigation in any court of competent jurisdiction, and to obtain

28   the most favorable recovery on the same, with due consideration of all relevant factors, including

-46-

1   cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts;

2   (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of

3   Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy

4   Court; (iv) to take such other actions as are necessary or useful to maximize the value of all

5   property received by the Plan Trust; (v) to make the payments and distributions to creditors and

6   holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to

7   the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the

8   terms of the Plan, including but not limited to selling the Group I: Voluntary Debtor Projects and

9   the Assets. A more complete statement of the Plan Trust's powers and limitations is set forth in the

10  Plan Trust Agreement, which is a part of the Plan Supplement.

11          It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a

12  "liquidating trust," with the primary objective of liquidating the Plan Trust Property and

13  distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a

14  trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding

15  anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on

16  behalf of the Plan Trust shall be consistent with such primary objective.

17          **7.6.    Trust Agreement**.

18          Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan

19  Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the

20  initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the

21  authorities and powers of the Plan Trustee, consistent with this Plan.

22          **7.7.    Operations of the Plan Trust**.

23          From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan

24  Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the

25  Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of

26  the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than

27  restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Trust Agreement,

28

-47-

1  provided that the Plan Trust is administered so that it qualifies as a liquidating trust under Treasury

2  Regulation § 301.7701-4(d).

3       **7.8.    The Plan Trustee**.

4       Acquisitions shall be Trustee of the Plan Trust. Acquisitions is the direct or indirect parent

5  of all of Debtors.

6       **7.9.    Payment of Trust Expenses.**

7       The expenses incurred by the Plan Trust during the Plan Period, which shall include the

8  compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

9  the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

10      **7.10.   Plan Distribution System**.

11      The Plan Trustee shall establish a separate "Distribution Account" for each Group I:

12  Voluntary Debtor at an FDIC insured bank. Each Group I: Voluntary Debtor's Available Cash,

13  whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group

14  I: Voluntary Debtor's Distribution Account. The only exception to this provision shall be in the

15  case of Net Sales Proceeds that are subject to disputed liens. Such proceeds shall remain in the

16  applicable Net Proceeds Accounts established to receive the proceeds from the sale of a particular

17  property. Once all disputes regarding entitlement to the funds in the Net Proceeds Accounts have

18  been resolved, the proceeds remaining (after the payment of the Allowed Claims secured by liens

19  on these proceeds) shall be transferred to the Distribution Account. These funds will then be used

20  to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in

21  the Plan.

22      **7.11.   Claims Estimation Rights**.

23      On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a

24  motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

25  motion the estimation, for distribution purposes, of any Disputed Claim seeking recourse to, or

26  claiming an interest in, any asset of the Group I: Voluntary Debtors. After the Bankruptcy Court

27  estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

28  the Committee shall have the right to use any funds or assets not deemed subject to the rights of the

1  Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

2  Administrative Claims, after the Effective Date.

3  **7.12.    No Payment of Transfer-Related Fees to the United States Trustee**.

4  The Plan Trust shall not be required to pay any fees to the United States Trustee based on

5  any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

6  **7.13.    No Payment of Transfer-Related Fees to the Trustee**.

7  The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of

8  Plan Trust Property from the Trustee Debtors to the Plan Trust, or from the Plan Trust.

9  **7.14.    Books and Records of Trust.**

10  The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent,

11  the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

12  Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

13  for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

14  that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

15  the Plan Trusts books and records at such time as Plan Trust has no further need for such books

16  and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

17  upon written request by the Committee.

18  **7.15.    Limitations on Liability**.

19  The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating

20  trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan

21  Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising

22  out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless

23  such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

24  The Plan Trustee, and its officers, directors, agents and employees shall not be liable for

25  any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust,

26  including, without limitation, indebtedness, liabilities or obligations under agreements,

27  undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee

28  or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all

-49-

such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall, under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may be asserted against the Plan Trustee, or any member of the New Board on account of any indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.

Any undertaking, contract or agreement entered into in writing by the Plan may, except as otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal liability of Plan Trustee.

### 7.16.    Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests.

For all United States federal income tax purposes, the transfers by the Group I: Voluntary Debtors shall be treated by the Group I: Voluntary Debtors, their estates, the Plan Trust and the Plan Trust Beneficiaries as a transfer of the Plan Trust Property by the Group I: Voluntary Debtors to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Property by such the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Property consistently with the values placed upon the Plan Trust Property by the Plan Trust, and to use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the Plan Trust Property by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Property within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively deemed to agree to use such valuations for all purposes, including, without limitation, in computing any gain recognized upon the exchange of such holder's claim for purposes of determining any United States Federal income tax, and shall be required to include those items of

1  income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

2  its taxable income.

3      **7.17.  Termination of the Trust.**

4        The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

5  Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

6  the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

7  Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

8  with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

9  party have been concluded by dismissal or an order issued by the court in which such litigation is

10  pending and such order has become "final" (consistent with the definition of Final Order in this

11  Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

12  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

13  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

14  period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

15  of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

16  consider and rule on the request within six (6) months prior to the expiration of the initial five-year

17  term.

18      **7.18.  Exemption from Certain Transfer Taxes**.

19        In accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer or

20  exchange of a security or the making or delivery of an instrument of transfer under this Plan may

21  not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

22  agents shall forego the assessment and collection of any such tax or governmental assessment and

23  shall accept for filing and recordation any of the foregoing instruments or other documents without

24  payment of such tax or other governmental assessment.

25      **7.19.  Tax Consequence of The Plan**.

26        The implementation of the Plan may have federal, state and local tax consequences to the

27  Group I: Voluntary Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will

28  be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not

1    constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the

2    summary contained herein is provided for informational purposes only.

3        CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

4    OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

5    DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

6    FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

7        **7.20.    The Plan Sponsor.**

8        The Plan Sponsor shall be Acquisitions.

9        **7.21.    Acquisitions' Obligations.**

10        As part of its obligations as the Plan Sponsor, Acquisitions will manage the affairs of the

11    Plan Trust and manage the payment of the following amounts required under the Plan:

12            A.    All Allowed Administrative Claims;

13            B.    Allowed Priority Claims; and

14            C.    Continuing Professional fees for the prosecution of the Litigation Claims

15                and other post-confirmation expenses

16        The actual source of the funding for these obligations will either be funds obtained from the

17    Net Sales Proceeds, or from the LitCo Plan Loan. In exchange for the above referenced services,

18    Acquisitions, and all of its Affiliates shall receive a complete release from all of the Debtors, the

19    Estates, and the Plan Trust of any potential Litigation Claims. The Group I Debtors consider this a

20    fair exchange, because they do not believe that they hold any material claims against Acquisitions.

21        **7.22.    The Committee.**

22        On the Effective Date, the Committee shall continue to serve their applicable Debtors as

23    Committee to the applicable reorganized Debtors, subject to the following:

24            **7.22.1 Duties and Powers.**

25        The duties of the Committee after the Effective Date shall be limited to monitoring the

26    Plan's implementation, notice and opportunity to object to any settlement of the Lehman

27    Adversary Proceeding, standing to object to any settlement of any Litigation Claim in excess of

28

1   $100,000, and standing to object to any proposed sales procedures on sale of the Debtors' Projects.

2   The Committee shall receive notice of and the right to review all payments and Distributions.

3   The Committee shall be entitled to retain, employ and compensate Professionals, in order

4   to assist with the obligations and rights of the Committee under the terms of the Plan. Such

5   compensation shall be paid from the applicable Distribution Account(s).

6   **7.22.2   Dissolution of Committee.**

7   The Committee shall be dissolved upon the entry of an order converting, closing or

8   dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases. On dissolution,

9   the Confirmation Committee shall have no other or further obligations or responsibilities on behalf

10  of the Plan Trust.

11  **7.23.   Litigation Claims.**

12  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

13  Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo.

14  Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled

15  in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the

16  Plan Trustee may pursue such Litigation Claims. Notwithstanding the foregoing, the Plan Trustee

17  shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10)

18  days' prior written notice and opportunity to object to one or another. Any disputes concerning the

19  settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

20  resolution on no less than ten (10) days' notice to the objecting party.

21  **7.24.   Collection of Litigation Recoveries.**

22  All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Committee

23  shall be promptly deposited into the applicable Distribution Account(s). Except as otherwise

24  provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear

25  of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

26

27

28

# VIII.

# RISK FACTORS

**8.1    Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 8.1.1    The Plan May Not Be Accepted or Confirmed.

While the SunCal Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 8.1.2    Failure to Sell The Group I: Voluntary Debtor Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group I Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 8.1.3    Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary Proceeding.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1  However, there is no assurance that this will occur. Litigation involves risks, including most

2  importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect

3  Holders of Class 6.1, 6.2, 6.3 and 6.4 Claims that vote in favor of Option A ($.60 cent

4  distribution), it will affect those that vote in favor of Option B, and it will affect the future

5  distributions payable to the Class 7.1, 7.2, 7.3 and 7.4.

6                                            IX.

7                                    **DISTRIBUTIONS**

8      **9.1    Distribution Agent.**

9        Acquisitions shall serve as the Distribution Agent for distributions due under the Plan. The

10  Distribution Agent may employ one or more sub agents on such terms and conditions as it may

11  agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

12  Distribution Accounts. The Distribution Agent shall not be required to provide any bond in

13  connection with the making of any Distributions pursuant to the Plan.

14      **9.2    Distributions.**

15          **9.2.1    Dates of Distributions.**

16        Any distribution required to be made on the Effective Date shall be deemed timely if made

17  as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any

18  distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

19  longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

20          **9.2.2    Limitation on Liability.**

21        Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any

22  of their employees, members, officers, directors, agents, or professionals or Affiliates shall be

23  liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in

24  connection with implementing the Distribution provisions of the Plan and the making or

25  withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions

26  made pursuant to the Plan resulting from any delays in making such distributions in accordance

27  with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed

28  Claims).

### 9.3 **Old Instruments and Securities.**

#### 9.3.1 **Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

#### 9.3.2 **Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

#### 9.3.3 **De Minimis Distributions and Fractional Shares.**

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not distributed as a consequence of this section shall, after the last distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

#### 9.3.4 **Delivery of Distributions.**

Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows: (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

1   notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at
2   such address as the Holder may specify in writing.

3            ### 9.3.5    Undeliverable Distributions.

4   If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as
5   undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such
6   distribution being hereinafter referred to as "Unclaimed Property"), no further distribution shall be
7   made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then
8   current address. Subject to the remainder of this Section and the following section, Unclaimed
9   Property shall remain in the possession of the Plan Trustee pursuant to this Section, and shall be set
10  aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash Unclaimed
11  Property) to be maintained by the Distribution Agent until such time as the subject Distribution
12  becomes deliverable. Nothing contained in the Plan shall require the Plan Trustee or any other
13  Person to attempt to locate such Person.

14           ### 9.3.6    Disposition of Unclaimed Property.

15           If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a
16  Distribution of Unclaimed Property within ninety (90) days following such Person's initial
17  Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together
18  with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as
19  practicable. Any Holder of an Allowed Claim that does not assert a Claim in writing for
20  Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial
21  Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and
22  shall be forever barred from receiving any distributions under the Plan or otherwise from the Plan
23  Trustee. In such cases, any property held for Distribution on account of such Claims shall become
24  Available Cash and deposited into the Distribution Account.

25
26
27
28

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

## X.

## OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS

### 10.1 Standing for Objections to Claims.

The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall be vested with the applicable Committee. The applicable Committee shall have standing to object to any settlement of any Litigation Claim in excess of $100,000 and standing to object to any proposed sales procedures and sale of the Debtors' Projects.

Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline. The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

### 10.2 Treatment of Disputed Claims and Disputed Liens.

#### 10.2.1 No Distribution Pending Allowance.

If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or distribution provided for under the Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

#### 10.2.2 Distribution After Allowance.

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

## XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1 Executory Contracts Potentially Being Assumed or Rejected.

The SunCal Proponents shall provide a list of those contracts that being assumed or rejected under the Plan in the Plan supplement. However, this list may be amended at any time

-58-

1   prior to the Effective Date.  All contracts or leases not assumed by the Effective Date shall be

2   deemed rejected.

3         **11.2**    **Bar Date for Rejection Damages**.

4        Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

5   forever barred and shall not be enforceable against the Debtors, the Plan Trust, their Affiliates,

6   their successors, or their properties, and shall not be entitled to any distribution under the Plan,

7   unless a Proof of Claim for such Claim is filed and served on the Debtors, or the Plan Trust within

8   thirty (30) days after the receipt of a notice of the rejection of any contract or lease.

9         **11.3**    **Changes in Rates Subject to Regulatory Commission Approval.**

10       The Debtors are not subject to governmental regulatory commission approval of their rates.

11                                   **XII.**

12         **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

13         **12.1**    **Best Interests Test**.

14        Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless

15   the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and

16   Interests who have not accepted the plan and whose Claims are classified in Classes that are

17   impaired under the plan, are not less than those which they would receive in a liquidation under

18   Chapter 7 of the Bankruptcy Code.

19        The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each

20   impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis.

21   The Best Interests Test requires the Bankruptcy Court to find either that either (i) all Holders of

22   Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder

23   of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property

24   of a value, as of the effective date of the Plan, that is not less than the amount that such Holder

25   would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

26        The Plan proposed by the Plan Proponents is essentially a liquidating plan. It provides for

27   the sale of all assets of the estate for their fair market value, the collection or recovery of all other

28   assets, and for the distribution of the resulting net proceeds from the sale, in accordance with the

1   priorities provided for in the bankruptcy code and under California law. A Chapter 7 trustee

2   appointed in this case would be compelled to liquidate the Debtors' assets in the same manner as

3   provided for in the Plan and to pay out the proceeds in the same manner as provided for in the

4   Plan. Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as

5   much" as such creditor would receive in a Chapter 7 case, which is all that is required under the

6   Best Interests Test.

7        Although the Lehman Entities will argue that they are being denied their "credit bid" rights

8   under the Plan, and this reduces their distribution below the level that they would receive in a

9   Chapter 7 case, this argument fails. A credit bid right does not add or reduce the value of a

10   creditor's collateral, it simply allows a creditor holding such a right to bid against other bidders

11   using its debt as "credit", rather than bidding in cash. If the creditor's collateral is sold for its "fair

12   market value," in cash, and the creditor receives what it is entitled to from the sales proceeds, then

13   the creditor is necessarily receiving exactly what it would receive in a Chapter 7. This is all that the

14   Best Interest Test Requires. See Exhibit "7" to the Disclosure Statement.

15       **12.2   Feasibility**.

16        In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

17   of the Plan is not likely to be followed by the liquidation or the need for further financial

18   reorganization of the Debtor(s). This requirement is imposed by Section 1129(a)(11) of the

19   Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

20   the Debtors' Plan provides for the sale of all assets of their respective estates and for the

21   distribution of the proceeds. Within the context of the Plan, feasibility is limited to having

22   sufficient funds to pay administrative and priority claims on the Effective Date and sufficient funds

23   to fund the sale of the Properties.

24        Under timeline provided for in the Plan, the Group I Project will be sold on the Effective

25   Date. The Net Proceeds from these sales, plus the proceeds of the LitCo Plan Loan, will provide

26   the Debtors the means to pay all claims, including allowed administrative and priority claims on

27   this same date, from escrow. All remaining claimants will then receive what they are entitled under

28   the Plan when their claims are allowed.

MAINDOCS-#163398-v3-SCC_Plan_Group_1_Vol_Debtors.DOC

1       **XIII.**

2       **LIMITATION OF LIABILITY**

3       **13.1    No Liability for Solicitation or Participation.**

4           As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

5   rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

6   offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

7   the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

8   violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

9   rejections of the Plan or the offer, issuance, sale, or purchase of securities.

10      **XIV.**

11      **CONDITIONS TO CONFIRMATION AND**

12      **EFFECTIVENESS OF THE PLAN**

13      **14.1    Conditions Precedent to Plan Confirmation.**

14          The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

15  have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

16  Proponents.

17      **14.2    Conditions Precedent to Plan Effectiveness.**

18          The conditions precedent to the effectiveness of the Plan and the occurrence of the

19  Effective Date is that the Confirmation Order shall be a Final Order in form and substance

20  reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material

21  impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities

22  cases. The automatic stay in the Debtors cases shall continue to be applicable until the Effective

23  Date.

24      **XV.**

25      **RETENTION OF JURISDICTION**

26          Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

27  Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's

28  jurisdiction shall apply to the fullest extent possible under applicable law.

MAINDOCS-#163398-v3-SCC_Plan_Group_1_Vol_Debtors.DOC

# XVI.

## MODIFICATION OR WITHDRAWAL OF THE PLAN

### 16.1    Modification of Plan.

At any time prior to confirmation of the Plan, the former Debtor(s) may supplement, amend or modify the Plan.  After confirmation of the Plan,  the Debtors or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

### 16.2    Nonconsensual Confirmation.

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii)  may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

# XVII.

## MISCELLANEOUS

### 17.1    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1630(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent required by Section 1630(a)(6) of title 28 of the United States Code.

### 17.2    Payment Dates.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

**17.3    Headings.**

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

**17.4    Other Documents and Actions.**

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**17.5    Notices.**

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> **To the SunCal Plan Proponents:**
> Bruce V. Cook
> General Counsel
> Authorized Agent of the SunCal Plan Proponents
> 2392 Morse Ave
> Irvine, CA 92614-6234
>
> **With copies to:**
> Paul J. Couchot
> Winthrop & Couchot, Professional Corporation
> 660 Newport Center Drive, Suite 400
> Newport Beach, CA 92660
>
> Ronald Rus
> Rus Miliband & Smith P.C.
> 2211 Michelson Drive, Seventh Floor
> Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this Section 16.5, which designation will be effective on receipt.

**17.6    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 17.7 Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 17.8 Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

### 17.9 Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

### 17.10 No Waiver.

The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Committee's, the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole or in part.

MAINDOCS-#163398-v3-SCC_Plan_Group_I_Vol_Debtors.DOC

**17.11  Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**17.12  Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.13  Post-Confirmation Status Report.**

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee. the twenty largest unsecured creditors, and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**17.14  Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. The Plan Trustee reserves the right to object to any motion for conversion or dismissal. If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

1  in the Chapter 7 estate.  The automatic stay will be re-imposed upon the revested property, but only

2  to the extent that relief from stay was not previously authorized by the Court during this case.

3      **17.15  Final Decree.**

4      Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

5  Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

6  motion with the Court to obtain a final decree to close the Case of such Debtor.

7  Date: June 20, 2011

8

9

10                                      By: _____

11                                          Bruce Cook
                                      General Counsel, Authorized Agent for the
                                      Voluntary Debtors and Acquisitions

12

13  **Submitted By:**

14  **WINTHROP COUCHOT**               **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**     **A PROFESSIONAL CORPORATION**

15

16  By: /s/ *Paul J. Couchot*             By:   /s/ *Ronald Rus*

17      Paul J. Couchot,                    Ronald Rus, Esq.
    General Insolvency Counsel for        Joel S. Miliband, Esq.
    the Voluntary Debtors           Attorneys for SCC Acquisitions, LLC

18

19

20

21

22

23

24

25

26

27

28

M:\NDOCS-#163398-v3 SCC_Plan_Group_I_Vol_Debtors.DOC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4ᵗʰ Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **FIRST AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF PALMDALE HILLS PROPERTY, LLC, SUNCAL BICKFORD RANCH, LLC, SUNCAL EMERALD MEADOWS, LLC AND ACTON ESTATES, LLC [GROUP I: VOLUNTARY DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claudc.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net