1   Richard M. Pachulski (CA Bar No. 90073)
    Dean A. Ziehl (CA Bar No. 84529)
2   Robert B. Orgel (CA Bar No. 101875)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
4   Telephone: 310/277-6910 / Facsimile:  310/201-0760

5   Edward Soto (admitted *pro hac vice*)
    Alfredo R. Perez (admitted *pro hac vice*)
6   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
7   New York, NY  10153-0119
    Telephone:  (212) 310-8000 / Facsimile:  (212) 310-8007
8
9   Attorneys for Lehman Commercial Paper Inc and Lehman
    ALI, Inc.

10              **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
11                    **SANTA ANA DIVISION**

12  In re:                                          Case No.: 8:08-bk-17206-ES
    Palmdale Hills Property, LLC, and its Related Debtors,   Chapter 11
13          Jointly Administered Debtors and
            Debtors-In-Possession               Jointly Administered Case Nos.
                                                8:08-bk-17209-ES; 8:08-bk-17240-ES;
14  Affects:                                    8:08-bk-17224-ES; 8:08-bk-17242-ES;
    ☐  All Debtors                              8:08-bk-17225-ES; 8:08-bk-17245-ES;
15  ☑  Palmdale Hills Property, LLC             8:08-bk-17227-ES; 8:08-bk-17246-ES;
    ☑  SunCal Beaumont Heights, LLC             8:08-bk-17230-ES; 8:08-bk-17231-ES;
16  ☐  SCC/Palmdale, LLC                        8:08-bk-17236-ES; 8:08-bk-17248-ES;
    ☑  SunCal Johannson Ranch, LLC              8:08-bk-17249-ES; 8:08-bk-17573-ES;
17  ☑  SunCal Summit Valley, LLC                8:08-bk-17574-ES; 8:08-bk-17575-ES;
    ☐  SunCal Emerald Meadows, LLC              8:08-bk-17404-ES; 8:08-bk-17407-ES;
18  ☑  SunCal Bickford Ranch, LLC               8:08-bk-17408-ES; 8:08-bk-17409-ES;
    ☑  Acton Estates, LLC                       8:08-bk-17458-ES; 8:08-bk-17465-ES;
19  ☑  Seven Brothers, LLC                      8:08-bk-17470-ES; 8:08-bk-17472-ES;
    ☐  SJD Partners, Ltd.                       and 8:08-bk-17588-ES
20  ☐  SJD Development Corp.
    ☑  Kirby Estates, LLC                       **DISCLOSURE STATEMENT WITH**
21  ☑  SunCal Communities I, LLC                **RESPECT TO** *SECOND AMENDED*
    ☑  SCC Communities LLC                      **JOINT CHAPTER 11 PLAN FOR**
22  ☐  SunCal Communities III, LLC              **ELEVEN VOLUNTARY DEBTORS**
    ☐  North Orange Del Rio Land, LLC           **PROPOSED BY THE LEHMAN VD**
23  ☑  Tesoro SF, LLC                           **LENDERS**
              *Caption Continued on Next Page*
24
25
26
27
28

*(left margin, vertical text)* PACHULSKI STANG ZIEHL & JONES LLP — ATTORNEYS AT LAW — LOS ANGELES, CALIFORNIA

1  ☐ LB/L-SunCal Oak Valley, LLC
   ☐ SunCal Heartland, LLC
2  ☐ LB/L-SunCal Northlake, LLC
   ☐ SunCal Marblehead, LLC
3  ☐ SunCal Century City, LLC
   ☐ SunCal PSV, LLC
4  ☐ Delta Coves Venture, LLC
   ☐ SunCal Torrance Properties, LLC
5  ☐ SunCal Oak Knoll, LLC

**Hearing:**

Disclosure Hearing: July 22, 2011
Time:                    10:00 a.m.

Confirmation
Hearing:              October 24, 2011
Time:                  9:30 a.m.

Place:      Courtroom 5A
            411 West Fourth Street
            Santa Ana, CA  92701

[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE *SECOND*

*AMENDED* JOINT VD PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED

UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY

COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT

HAS NOT BEEN APPROVED BY THE COURT]

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | **SUMMARY INFORMATION FOR THE JOINT VD PLAN** |
|---|---|
| **Nature of Summary** | This is a simplified excerpt of certain key information regarding the ***Second Amended* Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders ("Joint VD Plan")**. If there are any conflicts with the Joint VD Plan or the portions of the Disclosure Statement that follows, the Joint VD Plan is controlling, if it addresses the matter and, if not, the following portions of the Disclosure Statement control if they address the matter.  Capitalized terms have the meanings set forth in Exhibits "3" and "4" to the Disclosure Statement, although simplified versions of certain definitions are offered in this summary to the extent a particular capitalized term is not essentially self-explanatory. |
| **VD Plan Debtors:** | <u>Group I Debtors</u>:  Acton Estates, LLC; Palmdale Hills Property, LLC; SCC Communities LLC; SunCal Communities I, LLC; SunCal Bickford Ranch, LLC; SunCal Summit Valley, LLC; and Tesoro SF, LLC<br><br><u>Group II Debtors</u>:  Seven Brothers, LLC; Kirby Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC |
| **Lehman VD Lenders** | The Lehman VD Lenders are Lehman ALI and/or Lehman Commercial, in various capacities, owed approximately $711 million by the Group I Debtors, secured by deeds of trust on the real property assets of the Group I Debtors (which are the Plan Projects), by the interests held by certain Group I Debtors in the Group II Debtors, and by other assets. |
| **Recommendation:** | The Lehman VD Lenders recommend that you vote in favor of the Plan. |
| **Plan Summary** | To obtain conveyance of Plan Projects free and clear of most Encumbrances, under the Plan, the Lehman VD Lenders will provide the Lehman Plan Funding.  The Lehman Plan Funding consists of the Lehman Post-Confirmation Expense Funding (*i.e.*, to fund up to $500,000 of Post-Confirmation Expenses incurred during the 2 years following the Plan's Effective Date) and the Lehman Creditor Distribution Funding.<br><br>The Lehman VD Lenders' Lehman Creditor Distribution Funding will fund, among others, the following payments to Creditors:<br><br>(a) amounts payable under the Plan for Senior Claims (certain claims with priority or security) and for Allowed General Unsecured Claims in Class 8 (which are unsecured non-priority claims against Group II Debtors); and, also<br><br>(b) amounts payable under the Plan for each Holder of non-priority, unsecured claim (a Reliance Claim or General Unsecured Claim) against any Group I Debtor, consisting of:  (i) the Lehman Guaranteed Minimum Distribution (of 1% of an Allowed Claim); and (ii) the Lehman Distribution Enhancement.<br><br>The Lehman Distribution Enhancement is a payment to an accepting Creditor of a Group I Debtor for its execution and delivery of a certain release -- the Creditor's Assignment / Release for Lehman. The offer to each Holder of an Allowed General Unsecured Claim against a Group I Debtor is |

to increase the payment to such Creditor to 5% of its Allowed Claim, despite such Claim lacking what the Lehman VD Lenders view as the threshold characteristics for their potential litigation exposure.  Because Allowed Reliance Claims, as defined, meet what the Lehman VD Lenders view as the threshold characteristics for at least their potential litigation exposure, the offer to each Holder thereof, as more fully set forth below, is to increase the payment to such Holder up to 50% of its Allowed Claim.

The Lehman VD Lenders also will arrange for reimbursements due under a Settling Bond Issuer Agreement to a Settling Bond Issuer, *e.g.*, as the Holder of a Settling Bond Issuer-Incurred Future Work Obligation

Other Assets of the Plan Debtors (which are expected to be nominal in amount) will be liquidated by a Liquidating Trustee and the resulting Residual Cash will be distributed to Holders of Allowed General Unsecured Claims and Allowed Reliance Claims. Holders of Interests in the Plan Debtors receive nothing.

The Plan and the extent of certain Distributions are dependent upon certain identified Claim or Distribution thresholds (or the Lehman VD Lenders' good faith estimate thereof) not being exceeded.

| | |
|---|---|
| **Vote Required to Accept the Plan:** | Acceptance of the Plan requires the affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class (or subclass) of Impaired Classes entitled to vote.  Only Entities holding Claims in Classes 2, 6, 7, 8 and 9 are entitled to vote.  If any of these Classes as to any particular VD Plan Debtor rejects the Plan, the Bankruptcy Court nevertheless may confirm the Plan as to such VD Plan Debtor if the "cramdown" requirements of Bankruptcy Code § 1129(b) are satisfied with respect to such Class or subclass. |
| **Voting / Balloting Information Generally:** | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement.  After completing and signing your Ballot, you should return it to:<br><br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, California  90067-4100<br>Attention: Michael Matteo<br><br>For your ballot to be counted, Pachulski Stang Ziehl & Jones LLP must receive it no later than **September 26, 2011**. |
| *Special Voting Procedures: Holders of Reliance Claims & General Unsecured Claims against Group I Debtors (**Classes 6 & 7**)* | **Whether you have an Allowed Reliance Claim in Class 6 or an Allowed General Unsecured Claim in Class 7, you only receive 1% on your Claim (plus a proportional share of Residual Cash) <u>unless</u> you properly and timely elect to receive the Lehman Distribution Enhancement and afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.**  Ballots for each Holder of a General Unsecured Claim or Reliance Claim will afford the Holder the opportunity to elect that, if its Claim is Allowed, it will receive the Lehman Distribution Enhancement (a 5% Distribution for Holders of Allowed General Unsecured Claims and a 40% or 50% Distribution for Holders of Allowed Reliance Claims).  By such election |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| | | and execution and delivery of the Ballot, as the Ballot reflects, the Holder also is executing and delivering the Creditor's Assignment / Release for Lehman set forth in the Plan for the benefit of the Lehman Released Parties. |
| | *Special Voting Procedures: Holders of Alleged Mechanic's Lien Claims Against Group I Debtors* | **The Lehman Proponents dispute that any Mechanic's Lien Claims Against Group I Debtors (Other than SunCal Summit Valley) could be Allowed as Sr. Secured Mechanic's Lien Claims** because they believe that, with respect to Plan Projects of such Debtors, the Lehman VD Lenders' Liens are senior Encumbrances and there is no value in the junior Liens of the Holders of such Mechanic's Lien Claims.  For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim, **the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project** and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, **thereby affording the Creditor**, as more fully set forth below, **the opportunity to elect to receive the <u>Lehman Distribution Enhancement</u> if its Claim is Allowed. If the Creditor holding a Mechanic's Lien Claim against a Group I Debtor instead waits to see whether its Claim later is deemed to be entitled to "secured" status and it is unsuccessful in such effort, even if its Claim is Allowed as a Reliance Claim or General Unsecured Claim, it will only receive 1% on its Claim plus a proportional share of Residual Cash and it will not have the opportunity to elect to receive the Lehman Distribution Enhancement.** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| *"Reliance Claim" Status Must Be Asserted on a Ballot* | For any Creditor to vote its Claim as a Reliance Claim (Class 6), and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims in Classes 6 or 7. |
| **Confirmation Hearing:** | The hearing on Confirmation will be held on **October 24, 2011 at 9:30 a.m. Pacific Time in Courtroom 5A, 411 West Fourth Street, Santa Ana, CA 92701**.  The hearing on Confirmation may be continued from time to time without notice. |
| **Confirmation or Effective Date Contingencies:** | Key express Confirmation or Effective Date contingencies, unless waived, are:<br><br>(a) Bond Issuers Arch and Bond Safeguard settling with the Lehman VD Lenders;<br><br>(b) Estimated claims levels not exceeding certain specified caps; and<br><br>(c) **Confirmation of the Plan as to all of the VD Plan Debtors**.<br><br>Additionally, Lehman VD Lender Lehman Commercial and its parent company, Lehman Brothers Holdings Inc. ("LBHI") are chapter 11 debtors in a case (the "Lehman Chapter 11 Case") pending in the New York Bankruptcy Court. Another confirmation contingency is that the New York Bankruptcy Court must approve or have approved the roles and obligations under the Plan of LBHI and Lehman Commercial, including the settlement with the Bond Issuers.<br><br>As to these conditions:<br><br>(i) As of June 2011, the Lehman VD Lenders are in negotiations with both Bond Issuers as to settlement and whether the Lehman VD Lenders would waive the Bond Issuer settlement contingency as to either Bond Issuer may depend on the extent to which claim amounts have otherwise been made certain (such as through progress in objecting to claims) and may require further approval of the New York Bankruptcy Court as to the roles and obligations of LBHI and Lehman Commercial;<br><br>(ii) As set forth in Disclosure Statement Section 5.4.3, the Lehman VD Lenders currently estimate that claims levels will not exceed any of the caps;<br><br>(iii) Confirmation of the plan as to all VD Plan Debtors (and the ability to have their Effective Dates occur) may depend in part on plan voting, the other conditions above and waivers of this requirement may depend upon the combination of VD Plan Debtors for which the Joint VD Plan can be confirmed;<br><br>(iv) The Lehman Creditors expect to have scheduled, before votes are due on the Plan, the hearing for approval of the New York Bankruptcy Court of the role and obligations under the Joint TD Plan of any Lehman Creditor or affiliate thereof and of any settlement between a Lehman Creditor or affiliate thereof and a Bond Issuer; and |

| | |
|---|---|
| | (v) Although multiple plans are pending in the Lehman Chapter 11 Case and although any change in control of the Lehman VD Lenders before the Confirmation Date could affect satisfaction or waiver of conditions, the Lehman VD Lenders have no reason to believe the confirmation of one plan versus another in the Lehman Chapter 11 Case would affect a decision as to the Joint VD Plan. |
| **Plan Effective Date:** | The Plan's Effective Date for a VD Plan Debtor as to which the Plan is confirmed by the Bankruptcy Court will be a date selected by the Lehman VD Lenders, but in no event later than the sixtieth (60th) day after the Confirmation Date. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Questions: | All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to:<br><br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, California  90067-4100<br>Attention: Richard M. Pachulski, Esq. &<br>Robert B. Orgel, Esq. |
| NOTICE: | THE PLAN, DISCLOSURE STATEMENT AND BALLOTS CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY. THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS. YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOTS IN THEIR ENTIRETY. YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN. |

**SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

| CLASS AND/OR CLAIM TYPE | TREATMENT | IMPAIRED STATUS/ VOTING STATUS |
| --- | --- | --- |
| **Unclassified Claims** | | |
| Allowed Ordinary Course Administrative Claims | To be paid in full or performed by the Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular obligation. | Not Entitled to Vote |
| Lehman Administrative Loans | To be paid in Cash in full from the Lehman Creditor Distribution Funding on the Effective Date or at such later time and on such other terms as the Lehman VD Lenders may agree. | Not Entitled to Vote |
| Other Allowed Administrative Claims | To be paid by the Liquidating Trustee in full, in Cash, by the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Administrative Tax Claims must be filed and served on the Liquidating Trustee on or before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the date that the tax return for such tax year or period to which such Taxes relate is required to be filed with the applicable governmental unit. Other Administrative Claims, including for Professional Fees must be filed by the General Administrative Claim Bar Date (first Business Day following the sixtieth (60th) day after the | Not Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** |
| | Confirmation Date). | |
| Allowed Priority Tax Claims | To receive equal quarterly Cash payments payable until November 6, 2013, with all such payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance from the Effective Date, calculated at the nonbankruptcy interest rate applicable on the Effective Date, if any. | Not Entitled to Vote |
| **Secured Claims** | | |
| Class 1<br><br>Allowed Secured Real Property Tax Claims | To receive either: (a) a lump sum payment on the Effective Date in the full amount owing when last due before default or maturity, plus any fees incurred in reasonable reliance on timely receipt of the tax, but without any penalty amounts at any time incurred or charged unless the Court, at an appropriate time, rules such amounts are owing as appropriate cure damages; (b) quarterly Cash payments until November 6, 2013, totaling the Allowed Amount of the Claim, with penalties at the rate applicable under non-bankruptcy law; or (c) Simple Unimpairment (*e.g.*, to have left unaltered Creditor's legal, equitable and contractual rights, and Creditor to be free to pursue its rights and remedies under applicable nonbankruptcy law).  The first treatment will be applicable by default unless a Lehman VD Lender selects to make the second or third treatment applicable. | Not Entitled to Vote |
| Class 2<br><br>Allowed Lehman Secured Claims | Plan Projects to be conveyed free and clear to Lehman Nominees, as designated by the Lehman VD Lender(s); Collateral for the Lehman Secured Claims or its Net Cash Proceeds to be paid to the applicable Lehman VD Lender, unless the applicable Lehman VD Lender(s) otherwise directs. | Impaired<br><br>Entitled to Vote |
| Class 3<br><br>Allowed Sr. Secured Mechanic's Lien Claims | Nature of Claim:  These are Mechanic's Lien Claims that are Allowed and also are determined to be sufficiently senior in priority that there remains value in the subject Project after applying that value to all Secured Claims against the applicable Project with priority over the Mechanic's Lien Claim (including any applicable Lehman Secured Claim).<br><br>Treatment:  To receive either: (a) a cure and payment of the full amount owing and reinstatement of the terms | Not Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** |
| | applicable when last due before default or maturity, only with interest if not penalty interest, plus any fees incurred in reasonable reliance on timely receipt of payment, but without any penalty amounts at any time incurred or charged (if the original maturity date has passed as of the Effective Date, cure to be paid in a lump sum); or (b) the Holder of the Claim will have left unaltered its legal, equitable and contractual rights as a Holder of such Claim and will be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law.  The first treatment will be (i) applicable to all Settling Bond Issuer-Backed Non-Future Work Claims and (ii) also applicable to other Class 3 Claims unless the applicable Lehman VD Lender or Lehman Nominee selects and notifies the applicable Creditor or Creditors of its selection of the second alternative treatment.  Lehman VD Lenders and Settling Bond Issuers holding Class 3 Claims have agreed to less favorable treatment. | |
| Class 4<br><br>Allowed Other Secured Claims | To receive either: (a)  Simple Unimpairment (e.g., to have left unaltered Creditor's legal, equitable and contractual rights and Creditor to be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law); or (b) Unimpairment With Surrender or Abandonment (e.g., the Liquidating Trustee to abandon or surrender to the Creditor the property securing such Allowed Claim and turn over possession as soon as practicable thereafter); or (c) the applicable Allowed Claim to be cured and reinstated as of the first date when last payable without interest, fees or penalties, plus any non-penalty interest thereafter, plus fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged (if the original maturity date has passed as of the Effective Date, cure to be paid in a lump sum). | Not Entitled to Vote |
| **Priority Unsecured Claims** | | |
| Class 5<br><br>Allowed Priority Claims | To receive the full amount of such Claim in Cash by the later of (i) the Effective Date, and (ii) the date such Claim becomes payable in accordance with its terms. | Not Entitled to Vote |

| | SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** | |
| **Non-Priority Unsecured Claims** | | | |
| Class 6<br><br>Allowed Reliance Claims against Group I Debtors | <u>Nature of Claim</u>: Reliance Claims are certain non-priority, unsecured claims against Group I Debtors that meet what the Lehman VD Lenders view as the threshold characteristics for at least their potential litigation exposure.<br><br>The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim:<br><br>(a) for New Value,<br><br>(b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and<br><br>(c) timely of record.<br><br>Reliance Claims do <u>not</u> include Insider Claims or Lehman Creditor Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims).<br><br>    That the Reliance Claim be for New Value means it must be for money or money's worth in goods, services, or new credit voluntarily transferred or extended to the applicable VD Plan Debtor, but not an obligation substituted for an existing obligation or satisfaction of an antecedent debt owed by the creditor.<br><br>    That the Relieance Claim be timely of record means that the Claim is any of the following: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as (undisputed, non-contingent, liquidated) Scheduled Claims.<br><br><u>Election and Recovery</u>:  If the Creditor holding an Allowed Reliance Claim elects to receive the **Lehman Distribution Enhancement**, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman, it will receive a Cash Distribution of *40% of the Allowed Claim* against the applicable Group I Debtor.  The Distribution | Impaired<br><br>Entitled to Vote | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** |
| | *will be increased to 50% through the Projected Distribution Bump Up* if the Classes 6/7 Distribution Amount for a Group I Debtor (the aggregate amount payable to all holders of Class 6 and Class 7 Claims, subject to certain specified exclusions) does not exceed its Bump Up Threshold (defined specifically in the definitions of the Plan and which thresholds aggregate to $2.5 million). | |
| | As of June 1, 2011, the Lehman VD Lenders estimate that the Projected Distribution Bump Up will be available such that electing holders of Allowed Reliance Claims will receive the additional 10%, increasing their distribution recovery to 50%, and that none of the Bump Up Thresholds will be exceeded, as more specifically set forth in Disclosure Statement Section 5.3.6(b)(i)(2). | |
| | If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim.  Payment will be made after the Effective Date within a short time after a Claim is determined to be Allowed (and, if such Claim is a Future Obligation, after it is no longer a Future Obligation).  Creditors will also receive a pro rata share of any Residual Cash, if any, but the Residual Cash is expected to be nominal in amount. | |
| Class 7

Allowed General Unsecured Claims against Group I Debtors | Nature of Claim:  General Unsecured Claims are certain non-priority, unsecured claims against Group I Debtors that, in the Lehman VD Lenders' views, lack the threshold characteristics for their litigation exposure.

Election and Recovery:  If the Creditor elects to receive the **Lehman Distribution Enhancement**, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman, it will receive a Cash Distribution of *5% of the Allowed Claim* against the applicable Group I Debtor.  If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim.  Creditors will also receive a pro rata share of any Residual Cash, if any, but the Residual Cash is expected to be nominal in amount. Payment will be made after the Effective Date within a short time after a Claim is | Impaired

Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** |
| | determined to be Allowed (and, if such Claim is a Future Obligation, after it is no longer a Future Obligation). | |
| Class 8<br><br>Allowed General Unsecured Claims against Group II Debtors | <u>Nature of Claim</u>:  General Unsecured Claims are certain non-priority, unsecured claims against Group II Debtors (against which that the Lehman VD Lenders have no direct prepetition claim or lien).<br><br><u>Recovery</u>:  Holders of these claims are to receive a Cash Distribution equal to 100% of each Claim plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date unless the Allowed Class 8 Claims exceed the Project Value less the Allowed Senior Claims against the applicable Group II Debtor.  In such event, each Holder is to receive, instead, a Pro Rata distribution of: (1) any positive sum resulting from subtracting the Allowed Senior Claims against the applicable Group II Debtor from the Project Value for the applicable Group II Debtor's Plan Project; and (2) Residual Cash, if any, of the Estate of the applicable Group II Debtor (Residual Cash is expected to be nominal in amount); provided that such Pro Rata Distribution shall not be less than 1% of each Allowed Claim. Distribution estimates as of June 1, 2011 are set forth in Disclosure Statement Article VI. Payment will be made after the Effective Date within a short time after a Claim is determined to be Allowed (and, if such Claim is a Future Obligation, after it is no longer a Future Obligation). | Impaired<br><br>Entitled to Vote |
| Class 9<br><br>Allowed Settling Bond Issuer-Related Future Work Bond Claims | <u>Nature of Claim</u>:  As more fully defined in the Joint VD Plan, these are certain non-priority, unsecured, bonded claims of bond beneficiaries (or Bond Issuer indemnity claims) for Future Work (*i.e.*, work that was <u>not</u> performed or otherwise provided as of the Plan's Effective Date).<br><br><u>Treatment</u>:  To receive performance of the Future Work obligations with respect to each Allowed Claim, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date, provided that: (a) the initial payment for the performance of the Future Work obligations will be the obligation of the applicable Settling Bond Issuer that issued a Future Work Bond with respect to the subject Claim and will | Impaired<br><br>Entitled to Vote |

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
| --- | --- | --- |
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/ VOTING STATUS** |
| | not be an obligation of the Liquidating Trustee or a VD Plan Debtor's Estate; (b) the Lehman Nominee that takes title to the Plan Project to which the subject Claim relates is to cooperate in connection with the performance of such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer; and (c) as and to the extent provided in the applicable Settling Bond Issuer Agreement: (i) the Lehman Nominee that takes title to the Plan Project to which a subject Claim relates is to take an assignment from the applicable Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and third parties (or such Claims are to be released); and (ii) in exchange therefor, such Lehman Nominee, *inter alia*, is to reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds. | |
| **Equity Interests** | | |
| Group 10 Interests | To receive nothing. | Not Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I PRELIMINARY MATTERS .............................................................................................. 1
  1.1    Introduction............................................................................................................. 1
  1.2    Definitions and Rules of Contstruction.................................................................. 1
  1.3    Summary of The Plan Process – Disclosure, Voting, and Confirmation............... 2
      (a)    Disclosure. ...................................................................................................... 2
      (b)    Voting. ............................................................................................................ 2
          (i)    Special Voting / Election Procedures ...................................................... 2
              (1)    Voting - General Unsecured Claims or Reliance Claims Against Any Group I
                     Debtor. ............................................................................................ 2
              (2)    Voting / Election - Alleged Mechanic's Lien Claims Against Any Group I
                     Debtor. ............................................................................................ 3
      (c)    Confirmation. .................................................................................................. 3
      (d)    Other Debtors, Multiple Plans and Competing Plans. .................................... 3
  1.4    Background to the Joint VD Plan. .......................................................................... 4
      1.4.1    Generally.................................................................................................... 4
      1.4.2    Prior and Competing Plans. ....................................................................... 6
      1.4.3    Plan Stay and Mediation. .......................................................................... 9
  1.5    Purpose of This Document. .................................................................................... 9
  1.6    Court Approval of this Document. ......................................................................... 10
  1.7    Plan Overview. ...................................................................................................... 11
  1.8    Summary of the Joint VD Plan. ............................................................................. 13
      1.8.1    Groupings of Debtors................................................................................ 13
          (a)    Group I Debtors: ............................................................................................ 13
              (i)    Acton Estates, LLC; .............................................................................. 13
              (ii)    Palmdale Hills Property, LLC; .............................................................. 13
              (iii)    SCC Communities, LLC;...................................................................... 13
              (iv)    SunCal Bickford Ranch, LLC; and ...................................................... 13
              (v)    SunCal Communities I, LLC; ................................................................ 13
              (vi)    SunCal Summit Valley, LLC; and ....................................................... 13
              (vii)    Tesoro SF, LLC; .................................................................................. 13
          (b)    Group II Debtors:........................................................................................... 13
              (i)    Kirby Estates, LLC; ............................................................................... 13
              (ii)    Seven Brothers, LLC; ........................................................................... 13
              (iii)    SunCal Beaumont Heights, LLC; and .................................................. 13
              (iv)    SunCal Johannson Ranch, LLC. ......................................................... 13
      1.8.2    Lehman Plan Funding. ............................................................................. 13
      1.8.3    Bond-Backed Claims and Bond Issuer Settlement(s). .............................. 14
      1.8.4    Treatment of Non-Priority Unsecured Claims and Interests....................... 15
          (a)    Amounts Payable for Class 6 Allowed Reliance Claims against Group I Debtors. .... 15
          (b)    Amounts Payable for Class 7 Allowed General Unsecured Claims against
                 Group I Debtors. ............................................................................................ 16
          (c)    Timing of Payments after the Effective Date for Allowed Class 6 Claims and
                 Allowed Class 7 Claims against Group I Debtors. ......................................... 17
          (d)    Amounts Payable for Class 8 Allowed General Unsecured Claims against
                 Group II Debtors. ........................................................................................... 18
          (e)    Class 9 Settling Bond Issuer-Related Claims. ............................................... 19
          (f)    Class 10 Interests. ......................................................................................... 20
      1.8.5    Treatment of Secured Claims and Claims with Statutory Priorities. ............. 21
  1.9    Voting Recommendations. .................................................................................... 24
II PLAN CONFIRMATION DEADLINES ........................................................................... 24
  2.1    Time and Place of the Confirmation Hearing. ...................................................... 24
  2.2    Deadline for Voting for or Against the Joint VD Plan. .......................................... 24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.3    Deadline for Objecting to the Confirmation of the Joint VD Plan. .................................. 25
Pachulski Stang Ziehl & Jones LLP ............................................................................................ 25
2.4    Identity of Person to Contact for More Information Regarding the Joint VD Plan........... 25
2.5    Disclaimer. .................................................................................................................... 25
III ACCEPTANCE OR REJECTION OF THE JOINT VD PLAN ................................................. 26
3.1    Who May Object to Confirmation of the Joint VD Plan. ............................................. 26
3.2    Who May Vote to Accept/Reject the Joint VD Plan. ................................................... 26
3.3    What Is an Allowed Claim/Interest.............................................................................. 27
3.4    What Is an Impaired Class. ......................................................................................... 28
3.5    Who Is Not Entitled to Vote. ...................................................................................... 28
3.6    Who Can Vote in More than One Class........................................................................ 29
3.7    Votes Necessary for a Class to Accept the Joint VD Plan. ........................................... 29
3.8    Special Provisions for Listed Holders of Mechanic's Lien Claims. .............................. 29
3.9    Special Provisions for Allowed General Unsecured Claims in Class 7 and Allowed
         Reliance Claims in Class 6. ........................................................................................ 30
    3.9.1    Voting Permitted Regardless of Election to Receive the Lehman Distribution
              Enhancement. .................................................................................................... 30
    3.9.2    "Reliance Claim" Status Must Be Asserted on a Ballot. ....................................... 30
3.10   Receipt of No or Incorrect Ballots. ............................................................................. 31
3.11   Acceptance of the Plan Contrasted With Confirmation................................................ 31
IV BACKGROUND OF THE VD PLAN DEBTORS, THEIR BUSINESS AND THE CASES ..... 32
4.1    The SunCal Companies and the Debtors. ..................................................................... 32
4.2    Financial Information: Assets and Liabilities. ............................................................. 33
    4.2.1    The VD Plan Debtors' Primary Assets. .............................................................. 33
    4.2.2    Values for Plan Projects. .................................................................................... 36
    4.2.3    Remaining Other Assets .................................................................................... 38
        (a)    VD Plan Debtors' Cash. ................................................................................. 38
        (b)    Net Cash Litigation Recoveries ..................................................................... 39
    4.2.4    Debt and Capital Structure. ................................................................................ 39
        (a)    A Summary of the Lehman VD Lenders' Loans. ............................................ 39
        (b)    Other Debts against the VD Plan Debtors and Plan Projects........................... 41
        (c)    Mechanic's Lien Claims. ............................................................................... 45
    4.2.5    Alleged Litigation Claims And Challenges Against The Lehman Creditors
              Asserted Currently By The Voluntary Debtors And, Some of Which, Formerly
              By The Trustee.................................................................................................. 46
        (a)    Introduction. .................................................................................................. 46
        (b)    The Equitable Subordination Claims Relating to the Lehman Creditors' Claims...... 47
        (c)    The Voluntary Debtors' Assertions regarding Fraudulent Transfer Actions
                Against the Lehman Creditors Arising under Various Cross-Collateralized
                Lehman Loans. ............................................................................................. 51
        (d)    Alleged Preference Claims Against the Lehman Creditors. ............................. 53
        (e)    Alleged Fraud, Breach of Fiduciary Duty and Other Potential Litigation Claims
                Against the Lehman Creditors. ...................................................................... 55
        (f)     Motion to Strike Proofs of Claim with Respect to the Claims of the Lehman
                Creditors. ..................................................................................................... 55
        (g)    The Debtors' Disputes Relating to the Allowed Secured Claims of Fenway
                Capital Pursuant to Bankruptcy Code Section 506........................................ 56
        (h)    2011 Challenges to Lehman Creditors' Claims. ............................................. 57
4.3    Significant Events In The Debtors' Chapter 11 Cases. ................................................. 58
    4.3.1    Voluntary Debtors.............................................................................................. 58
    4.3.2    Trustee Debtors. ................................................................................................ 59
    4.3.3    The Debtors' Motions for Relief from Stay in the Lehman Commercial Chapter 11
              Proceedings. ..................................................................................................... 59
    4.3.4    Certain of the Voluntary Debtors' Motion for Surcharge and Use of Cash Collateral... 60

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | | |
|---|---|---|---|
| | 4.3.5 | Lehman Commercial's Motions for Relief from the Automatic Stay Against Certain of the Voluntary Debtors' Projects. | 60 |
| | 4.3.6 | The Debtors' Filing of the ES Action Against the Lehman Creditors. | 61 |
| | 4.3.7 | Certain Debtors' Filing of the Sales Procedures Motion. | 61 |
| | (a) | Lehman Commercial's Stay Assertion and the Sales Procedure Motion. | 62 |
| | (b) | Danske Bank's Intervention into the Sales Procedures Motion. | 62 |
| | (c) | Lehman's Disclosure of the Repurchase Agreement Involving Certain Loans with the Debtors. | 63 |
| | (d) | The Modifications to the Sales Procedure Motion. | 63 |
| | (e) | The Continuance of the Sales Procedure Motion. | 63 |
| | 4.3.8 | The Lehman Administrative Loans | 64 |
| | (a) | The Initial Stipulation. | 64 |
| | (b) | The Subsequent Stipulations Regarding Use of Lehman Creditors' Cash Collateral and/or Provision by the Lehman Creditors of Secured or Administrative Loans. | 64 |
| (1) | | Use of Cash Collateral Held in Ritter Accounts | 67 |
| (2) | | Use of Alleged Unencumbered Cash | 68 |
| | (c) | Voluntary Debtors' Surcharging and Financing Motions. | 74 |
| | 4.3.9 | The Contractors' Successful Motions for Relief from Stay to Pursue the Bond Claims. | 75 |
| | 4.3.10 | The Voluntary Debtors' Motion Pursuant to Bankruptcy Code Section 506(d). | 75 |
| | 4.3.11 | The Debtors' Motions to Strike the Claims and Pleadings Arising from the Repurchase Lehman Loans | 75 |
| | 4.3.12 | The Debtors' Denied Preliminary Injunction Motion Against the Holders of Bond Claims. | 75 |
| | 4.3.13 | The Debtors' Potential Preferential Transfers. | 76 |
| | 4.3.14 | The Voluntary Debtors' Substantive Consolidation Motion | 76 |
| | 4.3.15 | Villa San Clemente Turnover Motion against SunCal Marblehead | 77 |
| V | | LEHMAN VD LENDERS' PLAN | 77 |
| | 5.1 | Treatment of Unclassified Claims. | 77 |
| | 5.1.1 | Treatment of Allowed Administrative Claims. | 78 |
| | (a) | Treatment and Repayment of the Lehman Administrative Loan(s). | 78 |
| | (b) | Administrative Claim Bar Date. | 78 |
| | (i) | General Administrative Claim Bar Date. | 79 |
| | (ii) | Administrative Tax Claim Bar Date. | 79 |
| | 5.1.2 | Treatment of Priority Tax Claims. | 80 |
| | 5.2 | Classification of Claims and Interests. | 80 |
| | 5.3 | Treatment Of Classified Claims And Interests | 96 |
| | 5.3.1 | Treatment of Allowed Secured Real Property Tax Claims (Class 1). | 96 |
| | (a) | A Voting and Impairment. | 96 |
| | (b) | Liens. | 96 |
| | (c) | Distributions and Distribution Dates. | 96 |
| | (i) | Lump Sum Cure Payment - Section 1124(2) Unimpairment. | 97 |
| | (ii) | Quarterly Payments. | 97 |
| | (iii) | Simple Unimpairment. | 98 |
| | (iv) | Determination of Applicable Treatment. | 98 |
| | 5.3.2 | Treatment of Lehman Secured Claims (Class 2). | 98 |
| | (a) | Voting. | 98 |
| | (b) | Liens. | 99 |
| | (c) | Claims. | 99 |
| | (d) | Disposition of Collateral | 99 |
| | 5.3.3 | Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3). | 100 |
| | (a) | Voting and Impairment. | 100 |
| | (b) | Liens. | 101 |
| | (c) | Distributions and Distribution Dates. | 101 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i)  Section 1124(2) Unimpairment.................................................................101
(ii)  Simple Unimpairment.....................................................................102
(iii)  Determination of Applicable Treatment..............................................102
(d)  Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s)
by Consent. ....................................................................................102
(e)  Unsecured Deficiency Claims. ...............................................................103
5.3.4  Treatment of Allowed Other Secured Claims (Class 4). .............................103
(a)  Voting and Impairment. ........................................................................103
(b)  Liens. .............................................................................................103
(c)  Distributions and Distribution Dates. ......................................................103
(i)  Simple Unimpairment. .................................................................104
(ii)  Unimpairment With Surrender or Abandonment. ................................104
(iii)  Section 1124(2) Unimpairment. .....................................................104
(iv)  Unsecured Deficiency Claims........................................................105
5.3.5  Treatment of Allowed Priority Claims (Class 5). .....................................105
(a)  Voting and Impairment. ........................................................................105
(b)  Distributions and Distribution Dates. ......................................................105
5.3.6  Treatment of Allowed Reliance Claims Against Group I Debtors (Class 6)...............106
(a)  Voting and Impairment. ........................................................................106
(b)  Distributions.....................................................................................106
(i)  Lehman Creditor Distribution Funding. ...........................................106
(1)  Lehman Guaranteed Minimum Distribution...............................106
(2)  Lehman Distribution Enhancement. ........................................106
(ii)  Distribution of Residual Cash. .......................................................107
(iii)  Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 6. ..108
(c)  Distribution Dates. ...............................................................................108
(i)  Lehman Creditor Distribution Funding. ...........................................108
(1)  Lehman Guaranteed Minimum Distribution...............................108
(2)  Lehman Distribution Enhancement. ........................................108
(ii)  Residual Cash..........................................................................109
(iii)  Distributions as to a Future Obligation. ...........................................109
(d)  Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s)
by Consent. ....................................................................................109
5.3.7  Treatment of Allowed General Unsecured Claims Against Group I Debtors
(Class 7). ........................................................................................110
(a)  Voting and Impairment. ........................................................................110
(b)  Distributions.....................................................................................110
(i)  Lehman Creditor Distribution Funding. ...........................................110
(1)  Lehman Guaranteed Minimum Distribution...............................110
(2)  Lehman Distribution Enhancement. ........................................110
(ii)  Distribution of Residual Cash. .......................................................111
(c)  Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 7. ......111
(d)  Distribution Dates. ...............................................................................111
(i)  Lehman Creditor Distribution Funding. ...........................................112
(1)  Lehman Guaranteed Minimum Distribution...............................112
(2)  Lehman Distribution Enhancement. ........................................112
(ii)  Residual Cash..........................................................................112
(iii)  Distributions as to a Future Obligation. ...........................................112
(e)  Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s)
by Consent. ....................................................................................112
5.3.8  Treatment of Allowed General Unsecured Claims Against Group II Debtors
(Class 8). ........................................................................................113
(a)  Voting and Impairment. ........................................................................113
(b)  Distributions:  Lehman Creditor Distribution Funding. ................................113
(c)  Distribution Dates. ...............................................................................114

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i)     Lehman Creditor Distribution Funding. ............................................. 114
(ii)    Residual Cash.............................................................................. 114
(iii)   Distributions as to a Future Obligation. ...................................... 114
5.3.9   Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 9)... 115
(a)     Voting and Impairment. ............................................................. 115
(b)     Distributions and Distribution Dates. ........................................ 115
5.3.10  Treatment of Allowed Interests (Class 10). ........................................ 116
5.4     Means of Execution and Implementation of the Joint VD Plan. ..................... 116
5.4.1   Introduction.......................................................................................... 116
5.4.2   The Liquidating Trustee. ..................................................................... 116
5.4.3   Conditions to Confirmation and Plan Effectiveness (and Current Estimates as to
        Satisfaction of Monetary Conditions Thereto)..................................... 117
5.4.4   Lehman Plan Funding. ......................................................................... 119
(a)     Lehman Creditor Distribution Funding. ................................... 120
(i)     Lehman Guaranteed Minimum Distribution........................... 120
(ii)    Lehman Distribution Enhancement. ...................................... 121
(b)     Lehman Post-Confirmation Expense Funding........................... 121
(c)     Funding with Cash Collateral of a Lehman VD Lender. .......... 121
(d)     Funding with New Cash Payments from a Lehman Related Party........... 122
(e)     Plan Reserve.............................................................................. 122
(f)     Terms and Documentation of Lehman Plan Funding. .............. 122
5.4.5   Post-Confirmation Expenses and Intercompany Loans. ..................... 123
5.4.6   Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee. .. 124
5.4.7   Disposition and Value of Assets. ........................................................ 124
(a)     Disposition and Value of the Plan Projects............................... 125
(b)     Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining
        Other Assets. ............................................................................. 127
5.4.8   Bond Claims and the Settling Bond Issuer Agreements. ................... 127
(a)     Background. ............................................................................... 127
(b)     Settling Bond Issuer Agreement. .............................................. 129
(c)     Bond Modification Discussions. ............................................... 131
5.4.9   Releases for Lehman Released Parties. ............................................... 132
(a)     Creditors' Assignments / Releases for Lehman. ....................... 132
(b)     Plan Release for Lehman. .......................................................... 135
(c)     Dismissal of Pending Litigation................................................ 137
(d)     Process for Execution and Delivery of Creditor's Assignments / Releases for
        Lehman. ..................................................................................... 137
5.4.10  Entry of Final Decrees. ....................................................................... 138
5.4.11  Dissolution of Voluntary Debtors' Committee and Discharge of Liquidating
        Trustee....................................................................................................... 139
5.5     Distributions................................................................................................ 139
5.5.1   Distribution Agent. ............................................................................. 139
5.5.2   Distributions. ....................................................................................... 139
(a)     Dates of Distributions. .............................................................. 139
(b)     Limitation on Liability. ............................................................. 140
5.5.3   Old Instruments and Securities. .......................................................... 140
(a)     Surrender and Cancellation of Instruments and Securities. ...... 140
(b)     Cancellation of Liens. ............................................................... 140
5.5.4   De Minimis Distributions and Fractional Shares. .............................. 141
5.5.5   Delivery of Distributions. ................................................................... 141
5.5.6   Unclaimed Property. ............................................................................ 141
5.5.7   Disposition of Unclaimed Property. ................................................... 142
5.6     Objections to Claims and Disputed Claims. ............................................... 142
5.6.1   Standing for Objections to Claims. ..................................................... 142
5.6.2   Treatment of Disputed Claims. ........................................................... 143

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(a)      No Distribution Pending Allowance. ................................................... 143
(b)      Distribution After Allowance. .......................................................... 143
(c)      Reserves for Disputed Claims. ........................................................ 143
(d)      Certain Disputed Cure Amounts for Secured Real Property Tax Claims.............. 144
5.6.3    New Anaverde Claims. ................................................................ 147
5.7      Executory Contracts And Unexpired Leases. .......................................... 148
5.7.1    Identification of Executory Contracts and Unexpired Leases. ...................... 148
5.7.2    Executory Contracts Being Assumed or Assumed and Assigned......................... 148
5.7.3    Cure Rights. ....................................................................... 149
5.7.4    Executory Contracts Being Rejected. ................................................ 150
5.7.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee. ........... 150
5.7.6    Continuing Obligations. ............................................................ 150
5.7.7    Bar Date for Rejection Damages. .................................................... 151
5.8      Effect Of Confirmation Of The Joint VD Plan. ....................................... 151
5.9      Other Plan Provisions. ............................................................. 153
5.9.1    Limitation Of Liability............................................................. 153
(a)      No Liability for Solicitation or Participation. .................................... 153
(b)      Limitation of Liability. ........................................................... 153
5.9.2    Conditions To Confirmation And Effectiveness Of The Joint VD Plan................... 154
(a)      Conditions Precedent to Entry of the Confirmation Order. ........................... 154
(b)      Conditions Precedent to Plan Effectiveness. ........................................ 154
(c)      Conditions Precedent to Entry of the Confirmation Order and to Plan
         Effectiveness ...................................................................... 155
5.9.3    Retention Of Jurisdiction. ......................................................... 155
5.9.4    Modification Or Withdrawal Of Plan. ................................................ 155
(a)      Modification of Plan. .............................................................. 155
(b)      Nonconsensual Confirmation. ........................................................ 156
5.9.5    Miscellaneous. ..................................................................... 156
(a)      Changes in Rates Subject to Regulatory Commission Approval.......................... 156
(b)      Payment of Statutory Fees. ......................................................... 156
(c)      Payment Dates. ..................................................................... 156
(d)      Headings. .......................................................................... 156
(e)      Other Documents and Actions. ....................................................... 157
(f)      Notices. ........................................................................... 157
(g)      Governing Law. ..................................................................... 157
(h)      Binding Effect. .................................................................... 158
(i)      Successors and Assigns. ............................................................ 158
(j)      Severability of Plan Provisions..................................................... 158
(k)      No Waiver. ......................................................................... 158
(l)      Inconsistencies. ................................................................... 158
(m)      Exemption from Certain Transfer Taxes and Recording Fees............................ 159
(n)      Post-Confirmation Status Report. ................................................... 159
(o)      Post-Confirmation Conversion/Dismissal. ............................................ 159
(p)      Final Decree. ...................................................................... 160
VI BEST INTERESTS OF CREDITORS TEST.......................................................... 160
VII PLAN FEASIBILITY......................................................................... 166
VIII RISK FACTORS........................................................................... 167
IX CERTAIN UNITED STATES FEDERAL INCOME TAX  CONSEQUENCES OF THE
    JOINT VD PLAN .......................................................................... 169
9.1      Consequences to Holders of Lehman Secured Claims ................................... 170
9.2      Consequences to Holders of General Unsecured Claims. ............................... 171
9.3      Consequences to Holders of Settling Bond Issuer-Related Future Work Claims. ........ 172
9.4      Distributions in Discharge of Accrued but Unpaid Interest........................... 173
9.5      Character of Gain or Loss .......................................................... 174
9.6      Information Reporting and Withholding .............................................. 174

X  ALTERNATIVES, CONCLUSION AND RECOMMENDATION ............................................ 175

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1   EXHIBIT LIST

2   EXHIBIT "1" -    Summary of Health and Safety Notices

3   EXHIBIT "2" -    Lehman VD Lenders' Claims

4   EXHIBIT "3" -    Definitions from Plan

5   EXHIBIT "4" -    Additional Definitions

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE JOINT VD PLAN.

This Disclosure Statement With Respect to *Second Amended* Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders is being sent to you as an accompaniment to the *Second Amended* Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders, which is being provided to you either in the same envelope as this Disclosure Statement or under separate cover.

**I**

**PRELIMINARY MATTERS**

**1.1    Introduction.**

The Lehman VD Lenders are pleased to be able to propose their Joint VD Plan.  The Plan is a chapter 11 plan for eleven Voluntary Debtors (as marked on the cover page(s) of this Disclosure Statement).

While good faith efforts have been made to make the Plan and Disclosure Statement consistent in all respects, if there are any discrepancies between the Plan and the Disclosure Statement, the Plan controls, and if there are any discrepancies between (a) the summaries provided in the table above or in Disclosure Statement section 1.8 and (b) the other provisions of this Disclosure Statement, the other provisions will control.

**1.2    Definitions and Rules of Contstruction.**

The rules of construction set forth in the Plan will be applicable to the Disclosure Statement.  The defined terms set forth in **Exhibit "D"** to the Plan are attached hereto as **Exhibit "3."**  Additional defined terms used herein are defined in **Exhibit "4"** hereto.  The defined terms set forth in **Exhibit "3"** and **Exhibit "4"** to the Disclosure Statement are incorporated into the Disclosure Statement by this reference and will apply to capitalized terms used in the Disclosure Statement, provided that any capitalized term that is not defined in the Disclosure Statement, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.3**    **Summary of The Plan Process – Disclosure, Voting, and Confirmation.**

Votes of Creditors are being solicited for the Joint VD Plan. The Joint VD Plan is essentially a blueprint of how the VD Plan Debtors will be structured or liquidated after or as a result of bankruptcy – whether they will survive, the forms of entities they will be, who will own them, and what distributions will be made or required. Among other things, the Plan designates Classes of Claims and Classes of Interests, identifies Unimpaired and Impaired Classes, sets forth a proposal for the satisfaction of all Claims against, and Interests in, the VD Plan Debtors, and provides adequate means for the implementation of the Joint VD Plan.

**(a)    Disclosure.**

The Disclosure Statement is intended to provide Creditors with information sufficient to enable Creditors to vote on the Plan [and has been approved by the Bankruptcy Court as containing sufficient information for that purpose][1]. The Disclosure Statement includes a summary of the VD Plan Debtors' assets and liabilities, a summary of what Holders of Allowed Claims and Interests will receive under the Joint VD Plan, references to certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. Each Creditor should thoroughly review both the Joint VD Plan and Joint VD Disclosure Statement before deciding whether the Creditor will accept or reject the Plan. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved for solicitation purposes by the Bankruptcy Court, have been authorized for use in soliciting acceptances or rejections of the Plan.

**(b)    Voting.**

The Lehman VD Lenders recommend approval of the Joint VD Plan. Holders of Claims and Interests entitled to vote on the Plan will receive with the Plan a Ballot, for voting on the Plan.

(i)    Special Voting / Election Procedures

(1)    Voting - General Unsecured Claims or Reliance Claims Against Any Group I Debtor.

---

[1] THIS STATEMENT IS NOT YET TRUE. Brackets to be removed after Disclosure Statement approved.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ballots for each Holder of a General Unsecured Claim or Reliance Claim against any Group I Debtor also will afford the Holder the opportunity to elect that, if its Claim is Allowed, it would receive the Lehman Distribution Enhancement. *By such election and execution and delivery of the Ballot, as the Ballot reflects, the Holder also is executing and delivering the Creditor's Assignment / Release for Lehman set forth in the Plan for the benefit of the Lehman Released Parties.*

(2)    Voting / Election - Alleged Mechanic's Lien Claims Against Any Group I Debtor.

For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim against any Group I Debtor, the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, thereby affording the Creditor the opportunity to elect to receive the Lehman Distribution Enhancement if its Claim is Allowed.

**(c)    Confirmation.**

If the VD Plan receives sufficient votes and meets certain other criteria described in this Disclosure Statement, it may be confirmed by the Bankruptcy Court. Confirmation of the VD Plan as to each VD Plan Debtor is a matter for determination by the Bankruptcy Court in accordance with the provisions of chapter 11 of the Bankruptcy Code and the terms of the Plan. If Confirmation occurs as to a VD Plan Debtor, thereafter, the Effective Date of the VD Plan and Distributions would occur as and to the extent specified by the terms of the VD Plan.

**(d)    Other Debtors, Multiple Plans and Competing Plans.**

The Joint VD Plan for the eleven VD Plan Debtors will not affect the status of the other Debtors in their Cases or preclude plans being promulgated for those other Debtors or preclude the Filing of competing plans. As to each other such Debtor, its Case will remain pending until either a plan for such Debtor is confirmed or its Case is dismissed or converted to a liquidating case under chapter 7 of the Bankruptcy Code.

It is anticipated, however, that besides the solicitation of votes on the Joint VD Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

by the Lehman VD Lenders for the affected eleven Voluntary Debtors, the Lehman Creditors (*i.e.,* the Lehman VD Lenders, Northlake Holdings and OVC Holdings) simultaneously will be soliciting acceptances for a plan for eight Trustee Debtors (the "Joint TD Plan"), jointly proposed by the Lehman Creditors and the Trustee.  There is no overlap between the two plans for which the Lehman VD Lenders or Lehman Creditors are proponents or co-proponents (the Joint VD Plan and the Joint TD Plan) and votes will be solicited separately as to each such plan from the appropriate creditors. Because there is no overlap, both such plans may be confirmed by the Court.

At the same time, however, the Voluntary Debtors, Acquisitions and/or other Persons simultaneously may be soliciting acceptances for a plan or plans (each an "Alternative Plan") affecting all or some of the same Debtors and Estates as the Joint VD Plan and Joint TD Plan. Where there are competing plans for the same Debtor, although Confirmation can occur only as to one plan for each Debtor, Creditors of such Debtor may vote in favor of both plans, against both plans or for one plan and against another. After voting, if only one plan affecting a Debtor receives sufficient accepting votes and otherwise qualifies for confirmation by law and according to its terms, it will be confirmed by the Bankruptcy Court and become effective as to such Debtor.  If both an Alternative Plan and either the Joint VD Plan and/or Joint TD Plan receive sufficient votes and otherwise qualify for confirmation as to a particular Debtor, the Bankruptcy Court "will consider the preferences of creditors and equity security holders in determining which plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code.

**1.4**    **Background to the Joint VD Plan.**

**1.4.1    Generally.**

In the Bankruptcy Court, under case number 8:08-bk-17206-ES, the chapter 11 bankruptcy cases (the "Cases") of twenty-six affiliated debtors (the "Debtors") are being jointly administered.  The Debtors include seventeen debtors who continue to manage, and remain in possession of, their assets as debtors and debtors in possession (the "Voluntary Debtors") and nine debtors for whom Steven M. Speier was duly appointed as the chapter 11 trustee (the "Trustee Debtors").

The Plan is a chapter 11 plan for the following eleven Voluntary Debtors (each a "VD

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan Debtor"):  Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Johannson,

SunCal Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC Communities, and

Tesoro.   The proponents of the Plan are the Lehman VD Lenders: (a) Lehman ALI, Inc. and (b)

Lehman Commercial, each in its capacity as a lender in its own right and/or as agent for themselves,

with respect to the applicable Lehman Loans.  The Lehman VD Lenders are referred to in the Plan as

both the "Lehman Proponents," with reference to their role as proponents of the Plan, and as the

Lehman VD Lenders, with reference to their other capacities.

Each of the Group I Debtors are insolvent.  Plan Projects are the primary Assets of

the Estates of the VD Plan Debtors (other than SunCal I, which owns Interests in other VD Plan

Debtors that own Plan Projects). The Lehman VD Lenders hold Claims against Group I Debtors

aggregating to approximately $711 million, which Claims are secured by deeds of trust on such

Debtors' Plan Projects, and secured by their Cash Collateral and certain other Assets.

Approximately $343 million of such amount is owed by SunCal Summit Valley, secured by a pledge

of its Interests in Group II Debtors Kirby Estates and Seven Brothers, and owed by SunCal I,

secured by, *inter alia,* a pledge of its Interests in Group II Debtors SunCal Beaumont and SunCal

Johannson.  The Lehman VD Lenders' collateral, including the Plan Projects of the Group I Debtors

(other than SunCal Summit Valley) and the equity interests in SunCal Summit Valley and the Group

II Debtors, collectively, is worth substantially less than the total amount of the Lehman Secured

Claims.

Moreover, the VD Plan Debtors are generating no or virtually no current revenue.

Yet, these Cases have been pending for over 31 months and have been highly litigious and, thus,

costly to the VD Plan Debtors' Estates and the Lehman Creditors in terms of out of pocket expenses,

time and delay.  Prepetition, Lehman Related Parties provided debt and equity funding to the

Debtors. During the Cases, challenges have been asserted to the Claims of the Lehman Creditors -

based on the debt and equity funding - and actions have been asserted to subordinate or set aside

certain of their Claims or Liens.  The nature of these claims and the Lehman Creditors' analysis of

their merits and likely value is discussed in Disclosure Statement Section 4.2.5 below.

**1.4.2    Prior and Competing Plans.**

Previously, during the Cases, prior to the Filing of any plans for which a solicitation process is underway, plans and accompanying disclosure statements were filed for all of the Debtors by the Lehman Creditors alone, by them with the Trustee, and by SunCal.  The current disclosure statements, in part, address issues that were explicated in, prior SunCal disclosure statements.

On September 9, 2009, the Voluntary Debtors and Acquisitions (the indirect parent company of the Debtors managed by Bruce Elieff) filed a plan for all Debtors and a disclosure statement with respect thereto (the "2009 SunCal Plan" and "2009 SunCal Disclosure Statement," respectively).  The 2009 SunCal Plan purported to include an offer of Elieff and Acquisitions to purchase Claims entitled to the benefits of a judgment for equitable subordination against the Lehman Creditors at ten cents on the dollar.  Otherwise, creditors would have to become beneficiaries of success in the ES Action to materially benefit from 2009 SunCal Plan.  The 2009 SunCal Plan was centered upon a sale (that Acquisitions and Elieff arranged and proposed) of certain Projects to D.E. Shaw or another bidder.  The 2009 SunCal Disclosure Statement provided details regarding some of the challenges of SunCal to the Claims and Liens of the Lehman Creditors.

On October 13, 2009, the Lehman Creditors filed their second amended versions of a competing plan and disclosure statement (such plan being referred to hereafter as the "2009 Lehman Plan").  The Lehman Creditors viewed and view the litigation that was the cornerstone of the 2009 SunCal Plan as taking years to resolve and, wanting back their collateral sooner and without incurring the litigation costs, the Lehman Creditors agreed to fund $10 million on the 2009 Lehman Plan's Effective Date, to provide plan implementation funding that included up to $5 million of new money plus the use of over $18 million of existing Cash Collateral, to provide limited funding and litigation concessions to permit all litigation by the Trustee and Voluntary Debtors to continue (including against the Lehman Creditors) and to offer certain Creditors that it believed may hold Allowed Claims that arguably would benefit from any judgment with respect to the ES Action as to the equitable subordination claims therein a guaranteed payment in exchange for a release.  Based on then available information and, thus, assuming a large pool of eligible claims, the guaranteed payment for such likely beneficiaries of the equitable subordination claims was estimated to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    approximate 6.6% on their Claims.

2            Votes were not solicited for the 2009 Lehman Plan or 2009 SunCal Plan.  The Filing

3    of a plan and disclosure statement is just part of the process leading to plan confirmation.  Before

4    votes could be solicited, the disclosure statement with respect to each plan had to have been

5    approved by the court.  The Lehman Creditors, Voluntary Debtors and Acquisitions abandoned

6    efforts to move forward the process for obtaining confirmation of the 2009 Lehman Plan or the 2009

7    SunCal Plan and no disclosure statements with respect thereto were approved (and no votes

8    solicited).

9            In the summer of 2010, the Lehman Creditors reached agreement with the Trustee

10   regarding the terms of a plan for certain of the Trustee Debtors' Cases (that also has had support

11   from the Official Committee of Unsecured Creditors of the Trustee Debtors appointed in the Cases

12   of the Trustee Debtors).  Because SunCal was not part of this agreement, prior to the filing by the

13   Lehman Creditors and Trustee of their consensual plan for the applicable Trustee Debtors (and prior

14   to the filing by certain of the Lehman Creditors of a separate plan for certain Voluntary Debtors), the

15   Bankruptcy Court and Voluntary Debtors were made aware of the intention of the Lehman Creditors

16   and Trustee to file their consensual plan.  To give sufficient time for the Voluntary Debtors to also

17   file a plan and disclosure statement or amend their prior plan and disclosure statement and to enable

18   the Voluntary Debtors to also have a disclosure statement considered for approval at the same time,

19   the date for such disclosure statement hearing was postponed to November 5, 2010.  The November

20   5, 2010 date meant that September 30, 2010 would be the deadline for the Filing of any disclosure

21   statements or amended disclosure statement for consideration on November 5, 2010.

22           Just before the September 30, 2010 deadline for filing further plans and disclosure

23   statements to move these Cases forward, on September 21, 2010, the Voluntary Debtors filed a

24   motion with the Bankruptcy Court seeking, *inter alia*, to "stay[] all pending . . . plan and disclosure

25   statement proceedings . . . filed by . . . the 'Lehman Entities'" (the "<u>SunCal Plan Stay Motion</u>").  The

26   SunCal Plan Stay Motion was not heard until October 29, 2010.

27           In the meantime, the Trustee and Lehman Creditors determined to proceed on

28   September 30, 2010 to file further plans and disclosure statements and filed the original versions

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  thereof as to which the Joint TD Plan, Joint TD Disclosure Statement, Joint VD Plan and Joint VD

2  Disclosure Statement are second amended versions. At the same time, the Voluntary Debtors and

3  Acquisitions filed their amended disclosure statement (the "SunCal Fourth Disclosure Statement"),

4  which described an amended plan (the "SunCal Fourth Plan"). The SunCal Fourth Plan was similar

5  in many respect to the 2009 SunCal Plan– *e.g.*, a continuation of all litigation against the Lehman

6  Creditors, a sale of the Projects (now at an auction, with no buyer currently identified), and an offer

7  to buy claims that would be benefited by the equitable subordination litigation (with the percentage

8  purchase price not yet disclosed). SunCal explained this structure as being necessitated by the stay

9  emanating from the Lehman Chapter 11 Case.

10      Before the hearing on the SunCal Plan Stay Motion (which hearing occurred on

11  October 29, 2010), objections were filed to the September 30, 2010 plans and disclosure statements.

12      In March 2011, the Lehman Creditors filed first amended versions of their current

13  plans and disclosure statements. Some of the changes reflected in the first amended versions of the

14  current Joint VD Plan, Joint TD Plan and their accompanying disclosure statements (the "First

15  Amended 2011 Lehman / Trustee Plans" and "First Amended 2011 Lehman / Trustee Disclosure

16  Statements") are responsive to the objections filed to the September 30, 2010 versions thereof.

17      In April 2011, the Voluntary Debtors filed four plans and disclosure statements (the

18  "April 2011 SunCal Plans" and "April 2011 SunCal Disclosure Statements"). As had been provided

19  in the 2009 SunCal Plan, all of the April 2011 SunCal Plans contemplated sales of the Projects (by

20  auction) and continuation of the ES Action. Also, one of the April 2011 SunCal Plans proposed for

21  certain creditors of four Debtors that they would be given a right to sell their claims to a new entity,

22  although the funding source for that entity had not yet been disclosed.

23      The Lehman Creditors objected to the April 2011 SunCal Disclosure Statements; the

24  Voluntary Debtors and their affiliates objected to the First Amended 2011 Lehman Disclosure

25  Statements; and other creditors and parties in interest also filed objections to some or all of the filed

26  disclosure statements.

27      On May 13, 2011, the Bankruptcy Court held a hearing to consider the adequacy of

28  the April 2011 SunCal Disclosure Statements and First Amended 2011 Lehman Disclosure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Statements, made tentative rulings indicating the nature of modifications thereto that would be

2  required, set various dates, including a further disclosure statement hearing of July 22, 2011,  a

3  confirmation hearing date of October 24, 2011, and a deadline of June 20, 2011 for filing modified

4  plans and disclosure statements that could benefit from these other dates.  Thus, the Lehman

5  Creditors and Trustee are filing their second amended versions of the Joint TD Plan and Joint TD

6  Disclosure Statement and certain Lehman Creditors are filing their second amended version of the

7  Joint VD Plan and Joint VD Disclosure Statement.

8          The Voluntary Debtors and Acquisitions have and are believed to continue to dispute

9  certain characterizations and descriptions of their proposed plans and positions as set forth in this

10  Disclosure Statement.

11          **1.4.3   Plan Stay and Mediation.**

12          On October 29, 2010, the hearing took place with respect to the SunCal Plan Stay

13  Motion.  The Bankruptcy Court granted the motion imposing a temporary stay through February 18,

14  2011, tolling the time to file certain claims and ordering to mediation the Voluntary Debtors, the

15  Trustee, the official committees in the Cases, Elieff, Acquisitions, SunCal Management, the Lehman

16  Creditors, the Bond Issuers, and others.  The mediation, which took place before the Honorable

17  Daniel Weinstein (Ret.) of J.A.M.S. Resolution Experts, was mostly successful in that certain of the

18  parties to it reached further or actual agreements or agreements in principle, the terms of which are

19  reflected in the Joint VD Plan and Joint VD Disclosure Statement and in the Joint TD Plan and Joint

20  TD Disclosure Statement.  No agreement, however, was reached between the Lehman Creditors and

21  SunCal or Elieff.  At a further hearing on the SunCal Plan Stay Motion on February 18, 2011, the

22  Bankruptcy Court continued the tolling of time to file certain lawsuits but let the temporary stay

23  expire by its own terms and did not stay further any party's efforts to confirm a plan.

24          **1.5     Purpose of This Document.**

25          The Disclosure Statement is submitted in accordance with 11 U.S.C. § 1125 and

26  contains information regarding the Joint VD Plan, a copy of which accompanies this Disclosure

27  Statement.  The Disclosure Statement is being distributed to you for the purpose of enabling you to

28  make an informed judgment about the Joint VD Plan.  The Joint VD Disclosure Statement describes

the Joint VD Plan and contains information concerning, among other matters: (1) the history, business, results of operations, assets and liabilities of the Debtors, (2) the business plan (*e.g.*, to liquidate) that is to be implemented following confirmation of the Joint VD Plan, (3) risk factors to be considered in voting on the Joint VD Plan, and (4) certain tax considerations of the Joint VD Plan.

The Lehman VD Lenders strongly urge you to review carefully the contents of this Joint VD Disclosure Statement and the Joint VD Plan (including the exhibits to each) before making a decision to accept or reject the Joint VD Plan.  Particular attention should be paid to the provisions affecting or impairing your rights as a Holder of a Claim or Interest.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Joint VD Plan will affect you and your best course of action.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

➢ **WHO CAN VOTE OR OBJECT TO THE JOINT VD PLAN;**

➢ **HOW YOUR CLAIM OR INTEREST IS TREATED;**

➢ **HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE ON ACCOUNT OF YOUR CLAIM OR INTEREST IN LIQUIDATION;**

➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDINGS;**

➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE JOINT VD PLAN;**

➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

➢ **WHETHER THE JOINT VD PLAN IS FEASIBLE.**

**1.6    Court Approval of this Document.**

The Bankruptcy Court approved the Joint VD Disclosure Statement as containing sufficient information to enable a hypothetical reasonable investor, typical of Holders of Claims or Interests receiving the Joint VD Disclosure Statement, to make an informed judgment about the Joint

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

VD Plan.[2] This approval enabled the Lehman VD Lenders to send you this Disclosure Statement and solicit your acceptance of the Joint VD Plan. The Bankruptcy Court has not, however, ruled on the Joint VD Plan itself, nor conducted a detailed investigation into the contents of this Disclosure Statement.

### 1.7    Plan Overview.

The Joint VD Plan is designed to enable a reasonable resolution of the financial distress of the VD Plan Debtors and of the delay and cost attendant to the continuation of the VD Plan Debtors' Cases absent confirmation of a plan. In all, under the Plan, the Lehman VD Lenders believe that Creditors will receive as much or more than they would if the VD Plan Debtors' Cases were converted to cases under chapter 7 of the Bankruptcy Code. As importantly, however, the Plan Proponents believe that, under the Plan, Creditors will receive payment much sooner than if no consensual plan with the Lehman VD Lenders occurred.

Because the Lehman VD Lenders appreciate that, for the foreseeable future, the VD Plan Debtors have and will have no ability to pay the full amount of the debt owed to the Lehman VD Lenders giving rise to the Lehman Secured Claims or, without additional funding, to develop the Plan Projects, the Lehman VD Lenders want ownership of all Plan Projects. Thus, upon confirmation of the Plan, as more fully set forth below, among other things, the VD Plan Debtors will convey ownership of the Plan Projects to the designees of the Lehman VD Lenders (the Lehman Nominees). In exchange, the Lehman VD Lenders will pay substantial sums for the benefit of other Creditors through the Lehman Plan Funding, as and to the extent provided under the Plan.

The Joint VD Plan with respect to which this Disclosure Statement is being filed requires consummation of a settlement between the Lehman VD Lenders and the Bond Issuers.[3] Bond Claims are complicated. The Bond Issuers issued Project Bonds and bonding obligations of certain of the Debtors to certain Creditors in exchange for premiums and reimbursement obligations from each respective Debtor. The Creditors holding Claims benefited by the Bonds (Bond-Backed Claims) include, by example, subcontractors who may be beneficiaries of Payment Bonds and

---

[2] **THIS STATEMENT IS NOT YET TRUE.**

[3] The Bond Issuers are Arch and Bond Safeguard. Settlements with Arch and Bond Safeguard are under discussion, but, as of the preparation of the Disclosure Statement, have not been fully or finally documented.

municipalities who may be beneficiaries of Performance Bonds (including Future Work Bonds). For Bond Backed Claims that are Allowed Sr. Secured Mechanic's Lien Claims (Class 3), Allowed Reliance Claims (Class 6) or Allowed General Unsecured Claims (Class 7 or 8), under the Plan, the *Bond-Backed Claims get treated under the Plan the same as Class 3, Class 6, Class 7, or Class 8 Claims, as applicable, but the Holders of Bond-Backed Claims retain any and all of their rights against the applicable Bond Issuer.* Still, as noted above, *for Holders of Class 9 Settling Bond Issuer-Backed Future Work Claims, the Lehman VD Lenders are obtaining a recommitment from the Settling Bond Issuers to perform under their Future Work Bonds with respect to such Class 9 Claims*.

The Bond Issuers appear to be contending that they are owed, collectively, by the Debtors tens of millions of dollars in respect of Project Bonds issued in connection with the development of the Projects. Yet, based largely on the contingent nature of the Future Work Claims arising under the Future Work Bonds, the Proponents believe that through a settlement that enables parties to wait until these contingencies come to pass, these Claims, even if Allowed, might drop substantially. Yet, *absent the settlement with the Bond Issuers reflected in the Plan*, there could be no assurance that their Claims would not be estimated by the Bankruptcy Court at so high an amount that, for the Lehman VD Lenders to go forward with the Plan at the same offered level of Lehman Plan Funding, the Distributions from the Lehman Plan Funding for other Creditors would be substantially diluted (and, thus, their percentage returns much lower). The settlements offered by the Lehman VD Lenders to the Bond Issuers in connection with the Plan thus facilitates the settlement offer made by certain of the Lehman VD Lenders through the Joint VD Plan. The settlements with the Bond Issuers accomplish this by having them, as the Settling Bond Issuers, agree, in essence, that (a) as to amounts each Settling Bond Issuer actually incurs under its Future Work Bonds, the Settling Bond Issuer will wait to accept reimbursement after its incurrence, which, if after Confirmation, would be paid by the applicable Lehman Nominee and (b) the Bond Issuers will forego certain Distributions under the Plan on their other Claims.

The Lehman VD Lenders are pleased to be able to present the Joint VD Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**1.8**     **Summary of the Joint VD Plan.**

The summary of the Joint VD Plan that follows in this Section 1.8 is not intended to substitute for the more specific terms set forth in the Joint VD Plan.  If there are any discrepancies between the summary provided in this Section 1.8 and the Joint VD Plan, the provisions of the Joint VD Plan will control.  Additionally, the Cases of the VD Plan Debtors have been jointly administered, but not substantively consolidated.  Accordingly, the Joint VD Plan provides separate treatment for Holders of Claims and Interests against each VD Plan Debtor.  Under the Plan, Holders of Interests receive nothing.  The following is a general outline of the Joint VD Plan.

**1.8.1     Groupings of Debtors.**

The Joint VD Plan divides the VD Plan Debtors into two groups:

**(a)     Group I Debtors:**

The Group I Debtors consist of:

       (i)     Acton Estates, LLC;

       (ii)     Palmdale Hills Property, LLC;

       (iii)     SCC Communities, LLC;

       (iv)     SunCal Bickford Ranch, LLC; and

       (v)     SunCal Communities I, LLC;

       (vi)     SunCal Summit Valley, LLC; and

       (vii)     Tesoro SF, LLC;

**(b)     Group II Debtors:**

The Group II Debtors consist of:

       (i)     Kirby Estates, LLC;

       (ii)     Seven Brothers, LLC;

       (iii)     SunCal Beaumont Heights, LLC; and

       (iv)     SunCal Johannson Ranch, LLC.

**1.8.2     Lehman Plan Funding.**

Under the Plan, the Lehman VD Lenders, for the benefit of other Creditors, will provide the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct

payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding

for payment of Post-Confirmation Expenses.

### 1.8.3    Bond-Backed Claims and Bond Issuer Settlement(s).

Many of the Claims against the VD Plan Debtors, or portions thereof, are, or were at

some point in time, secured by Project Bonds (the "Bond-Backed Claims") issued by Arch Insurance

Company ("Arch") or Bond Safeguard Insurance Company or its Affiliate, Lexon Insurance

Company (collectively, "Bond Safeguard" and together with Arch, the "Bond Issuers").  The Bond

Issuers have made and may continue to make payments to certain Creditors who are beneficiaries of

Project Bonds based on the Bond Issuer's own obligations, which payments and treatment from the

Bond Issuers may be different than, and may or may not be in addition to, payments provided under

the Plan.  Nonetheless, to facilitate the Plan, unless waived by the Lehman VD Lenders in their sole

and absolute discretion, as a condition to entry of the Confirmation Order and prior to the Effective

Date, certain Lehman Related Parties must have entered into a Settling Bond Issuer Agreement with

each Bond Issuer.  In the event the Lehman VD Lenders do waive the requirement for entry into

such a settlement with either or both Bond Issuers and waive attendant rights to withdraw the Plan,

the treatment of Claims in the Plan accounts for the possibility of settlements or of no settlements

with one or both of the Bond Issuers.  For each Settling Bond Issuer Agreement entered into as

required under the Plan, as more fully set forth in the Plan, pursuant thereto and subject to the

specific terms and conditions thereof, *inter alia*:  (a) the applicable Settling Bond Issuer will agree to

perform under its Future Work Bonds if a demand is made for such performance, (b) to the extent

that there is or may be an Allowed Claim for the obligation to perform the relevant Future Work

covered by a Future Work Bond of the applicable Settling Bond Issuer, the Lehman Nominee taking

title to an applicable Plan Project will cooperate in the performance of such Future Work and will

agree to reimburse the Settling Bond Issuer for certain amounts, *e.g.*, with respect to payments made

by the Settling Bond Issuer under Future Work Bonds, (c) the Settling Bond Issuer will waive all or

part of the payment under the Plan with respect to certain Claims and (d) the Settling Bond Issuer

will assign to a Lehman Related Party(ies) (or release) all or part of its Claims against each of the

VD Plan Debtors and its related claims against any Bond Obligors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**1.8.4    Treatment of Non-Priority Unsecured Claims and Interests.**

**(a)    Amounts Payable for Class 6 Allowed Reliance Claims against Group I Debtors.**

Each of these Claims must be an Allowed Claim against any Group I Debtor for New Value, arising after August 1, 2007 and timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as a Scheduled Claim.  Class 6 Claims are Impaired. Under the Plan, each Holder of an Allowed Class 6 Claim receives the following Distributions:

o   The Lehman Guaranteed Minimum Distribution:  An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Reliance Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 6 Claim; and

o   The Lehman Distribution Enhancement:  An additional Cash Distribution is available to Holders of Allowed Class 6 Claims that increases a Holder's Distributions to 50% of its Allowed Reliance Claim if the *Projected Distribution Bump Up* is applicable and otherwise 40%.  The Lehman Distribution Enhancement is a part of the Lehman Creditor Distribution Funding and only is being made available to a Holder of an Allowed Class 6 Claim who completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties.  The Projected Distribution Bump Up is applicable only if the aggregate amount of Distributions made under the Plan in respect of all Allowed Reliance Claims and Allowed General Unsecured Claims against the particular, applicable Group I Debtor, subject to certain exclusions, as described herein, is no greater than such Group I Debtor's specified Bump Up Threshold, which thresholds for all Group I Debtors aggregate to $2.5 million, as more fully set forth in the Plan. (As of June 1, 2011, the Lehman Creditors' good faith estimate is that no Bump Up Threshold will be exceeded, the Projected Distribution Bump Up shall apply and that the Distributions to electing Holders of Allowed Class 6 Claims will be increased to 50% (and not remain at 40%)); and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

o   <u>Residual Cash</u>:  Each Holder of an Allowed Class 6 Claim also will receive a share of any Residual Cash of the applicable Group I Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable Group I Debtor that are any of the following: (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7).  Allowed Lehman-Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash.  Residual Cash is expected to be nominal in amount.

**(b)      Amounts Payable for Class 7 Allowed General Unsecured Claims against Group I Debtors.**

These Claims consist of Allowed Claims against any Group I Debtor that have no priority or security and do not fit within the definitions of Reliance Claims (Class 6) or Settling Bond Issuer-Related Future Work Claims (Class 9).  Class 7 Claims are Impaired.  Under the Plan, each Holder of an Allowed Class 7 Claim receives the following Distributions:

o   <u>The Lehman Guaranteed Minimum Distribution</u>:  An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed General Unsecured Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 7 Claim; and

o   <u>The Lehman Distribution Enhancement</u>:  An <u>additional</u> Cash Distribution is available to Holders of Allowed Class 7 Claims that increases a Holder's Distributions to 5% of its Allowed General Unsecured Claim.  The Lehman Distribution Enhancement is a part of the Lehman Creditor Distribution Funding and only is being made available to a Holder of a Class 7 Claim who completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties; and

o   <u>Residual Cash</u>:  Each Holder of an Allowed Class 7 Claim also will receive a share of any Residual Cash of the applicable VD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable VD Plan Debtor that are any

of the following: (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7). Allowed Lehman-Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash. Residual Cash is expected to be nominal in amount.

> (c)     **Timing of Payments after the Effective Date for Allowed Class 6 Claims and Allowed Class 7 Claims against Group I Debtors.**

For each or the portion of each Allowed Class 6 Claim or Allowed Class 7 Claim that is not a Future Obligation (see description below), the payments due from the Lehman Creditor Distribution Funding are payable as follows:

o    After the Effective Date, within a short time after a Claim is determined to be Allowed, *i.e.*, generally within thirty (30) days following such Claim's Allowance Determination Date, payment is to be made of:

- the Lehman Guaranteed Minimum Distribution (the first 1% of the Allowed Claim); and

- a payment of or towards the Lehman Distribution Enhancement, if the applicable Claimant executes the Creditor's Assignment / Release for Lehman, in the following amounts:

- for Reliance Claims in Class 6, the first 39% of the Allowed Claim; and

- for General Unsecured Claims in Class 7, 4% of the Allowed Claim; and

o    If the amount payable for Allowed Class 6 Claims is not the maximum amount that might be payable upon resolution of all Disputed Claims (which resolution would enable, *inter alia*, a determination of whether the Projected Distribution Bump Up is available), then, the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

o   As to payments due from Residual Cash, if any, with respect to any Allowed Class 6 Claim or Allowed Class 7 Claim or portion thereof that is not a Future Obligation, such payment is to occur, if and as the Liquidating Trustee determines it is available. (*See* Plan Sections 0 & **Error! Reference source not found.**.)

o   For each or the portion of each Allowed Class 6 Claim or Allowed Class 7 Claim that is a Future Obligation, payment is to occur by the <u>later of</u> (a) the date due for such Distirbutions for other Allowed Class 6 Claims or Allowed Class 7 Claims, respectively, and (b) thirty (30) days following the date that the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent) and the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in the Plan.

      **(d)**    **Amounts Payable for Class 8 Allowed General Unsecured Claims against Group II Debtors.**

Under the Plan, after the Effective Date, each Holder of an Allowed Class 8 General Unsecured Claim against a Group II Debtor shall receive as to each such Claim or portion thereof that is not a Future Obligation within a short time after such Claim is determined to be Allowed, *i.e.*, generally within thirty (30) days following such Claim's Allowance Determination Date, a Distribution in Cash equal to the lesser of:

o   100% of the Allowed Amount of such Claim, plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date; and

o   a Pro Rata distribution of: (i) any positive sum resulting from subtracting the Allowed Senior Claims against the applicable Group II Debtor from the Project Value for the applicable Group II Debtor's Plan Project; and (ii) Residual Cash of the Estate of the applicable Group II Debtor, provided that:

    o   such Pro Rata Distribution shall not be less than 1% of the Allowed Claim; and

    o   If the amount payable for Allowed Class 8 Claims is not the maximum amount that might be payable upon resolution of all Disputed Claims, then:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims; and

- Payments are to be made from Residual Cash, if any, with respect to any Allowed Class 8 Claim or portion thereof that is not a Future Obligation, if and as the Liquidating Trustee determines it is available.

For each or the portion of each Allowed Class 8 Claim that is a Future Obligation, payment from the Lehman Creditor Distribution Funding is to occur by the later of (a) the date due for such a Distributions for other Allowed Class 8 Claims, and (b) thirty (30) days following the date that the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent) and the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in the Plan.

### (e)    Class 9 Settling Bond Issuer-Related Claims.

Settling Bond Issuer-Related Claims include Settling Bond Issuer-Backed Claims and Settling Bond Issuer-Owned Claims.  If a Bond Issuer and the applicable Lehman Related Party(ies) have entered into a Settling Bond Issuer Agreement, the Settling Bond Issuer-Backed Claims will be certain Claims against VD Plan Debtors that are Bond-Backed Claims secured by Project Bonds issued by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims will be those certain Claims against the VD Plan Debtors owned and held by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims will receive treatment under the Plan consistent with the applicable Settling Bond Issuer Agreement.  (*See* Plan Section 5.4.8.)  Under the Plan, Allowed Settling Bond Issuer-Backed Claims receive the following treatment:

- o *Settling Bond Issuer-Backed Claims which are Sr. Secured Mechanic's Lien Claims (Class 3):* Each of these Secured Claims of Bond-Backed Claimants, if and once Allowed, would receive payment from the Lehman Creditor Distribution Funding of the full amount of the Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and making further payments as required under the applicable contract or statute after reinstatement (Section 1124(2) Unimpairment).

o *Settling Bond Issuer-Backed Claims which are Reliance Claims or General Unsecured Claims (Classes 6, 7, and 8):* If Allowed, each such Claim of a Bond-Backed Claimant is to receive the applicable treatment in Class 6, Class 7, or Class 8, depending on whether such Claims fits the definition of a Reliance Claim or General Unsecured Claim and depending on which VD Plan Debtor the Claim is against. The Bond Issuer also may have separate obligations to the Bond-Backed Claimants in respect of these Claims such that these Claims may be paid or settled by the Bond Issuer (and possibly acquired by the Bond Issuer as part of any such payment or settlement).

o *Settling Bond Issuer-Backed Future Work Claims (Class 9):* The Settling Bond Issuer is to perform and/or pay in full for the performance of the Future Work obligations with respect to each Settling Bond Issuer-Backed Future Work Claim, if Allowed, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date. The Lehman Nominee that takes title to the Plan Project to which the Claim relates will, *inter alia*, (a) be required to cooperate in connection with the performance of such Future Work obligations, (b) take an assignment from the Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the applicable VD Plan Debtors and Bond Obligors (unless such Claims are released), and (c) reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds. Nonetheless, the applicable Creditor holding a Settling Bond Issuer-Backed Future Work Claim may agree to forego performance or payment for certain Future Work directly or through release of the applicable Future Work Bond;

**(f)    Class 10 Interests.**

Class 10 Interests are the ownership interests in each of the VD Plan Debtors. Class 10 is Impaired. Under the Plan, Holders of the Class 10 Interests get nothing and retain nothing.

### 1.8.5    Treatment of Secured Claims and Claims with Statutory Priorities.

(a)    For Class 1 Allowed Secured Real Property Tax Claims, at the election of the Lehman VD Lenders, each Holder either (1) would receive a lump sum payment from the Lehman Creditor Distribution Funding of the full amount of its Claim on the Effective Date, exclusive of any penalty or similar amounts (Section 1124(2) Unimpairment), (2) would receive 100% of its Allowed Claim through equal Cash payments, with penalties, payable every third month following the Effective Date until the fifth year anniversary of the applicable VD Plan Debtor's Petition Date, or (3) would have its rights and remedies unaltered, with the Holder free to pursue its remedies, if any, against the underlying collateral pursuant to nonbankruptcy law (*i.e.*, Simple Unimpairment). If the lump sum cure payment treatment is elected, Holders of Allowed Secured Real Property Tax Claims that dispute the amount of damages are to be timely paid undisputed sums and afforded a mechanism by which to have the disputed amount set aside by the Liquidating Trustee in the Plan Reserve and released to such Holder if authorized by a Final Order. (*See* Disclosure Statement Sections 5.3.1 and 5.6.2(d).)

(b)    For Class 2 Allowed Lehman Secured Claims, the Plan provides for conveyance, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), of the Plan Projects of the VD Plan Debtors to the Lehman VD Lenders or Lehman Nominees.

(c)    Class 3 consists of Allowed Sr. Secured Mechanic's Lien Claims.

o    Alleged Holders of Class 3 Claims are offered under the Plan an opportunity to elect to have their Claims treated as General Unsecured Claims in Class 7 or Class 8 or Reliance Claims in Class 6, as applicable:

▪    The Lehman VD Lenders believe that some Mechanic's Lien Claims are General Unsecured Claims or Reliance Claims (to be treated in Class 6, Class 7 or Class 8, if Allowed, as applicable). For Mechanic's Liens against Group I Debtors, the Lehman VD Lenders believe that their Lehman Secured Claims are senior Encumbrances to the Mechanic's Lien Claims and that, because the Plan Projects are worth less than the aggregate outstanding amount of the

Lehman Loans that are secured by the Lehman Claim Liens, there is no value
in the Plan Projects to which the junior Liens of the Holders of Mechanic's
Lien Claims against Group I Debtors could attach.

- If a Creditor with a Mechanic's Lien Claim against a Group I Debtor, that it
contends is a Secured Claim senior to the applicable Secured Claim of the
Lehman VD Lender(s) on the applicable Project, waits to find out after an
objection to such Claim whether its Claim will be Allowed as having the
status of a Sr. Secured Mechanic's Lien Claim, General Unsecured Claim or
Reliance Claim, then, the Plan offers no opportunity at such later point for the
Creditor to avail itself of the Lehman Distribution Enhancement, which, as
provided in the Plan, essentially offers Creditors against Group I Debtors an
opportunity on their Ballots to elect to receive an enhanced recovery of 40%
to 50% for Allowed Reliance Claims against Group I Debtors and 5% for
Allowed General Unsecured Claims against Group I Debtors.

- Thus, each listed Holder of a Mechanic's Lien Claim will be provided a Ballot
on which such Holder may elect to vote its Claim as a General Unsecured
Claim or a Reliance Claim, as applicable, and will have the opportunity to
elect to receive the Lehman Distribution Enhancement in respect of its
Allowed Claim (in exchange for the Creditor's Assignment / Release for
Lehman). To elect this option, the Creditor must and would waive all
contentions that its Claim is a Secured Claim against the applicable Plan
Project.  If such Holder does not elect to vote its Claims as General Unsecured
Claims or Reliance Claims, thereby electing to proceed as a Holder of
Mechanic's Lien Claims, then if it is subsequently determined that such
Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be
eligible to receive the Lehman Distribution Enhancement.

o Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or
otherwise settled by the applicable Bond Issuer.

○ With respect to Mechanic's Lien Claims that are Allowed Sr. Secured Mechanic's Lien Claims, under the Plan, at the election of the Lehman VD Lenders, each Holder of such Class 3 Claim either (1) would receive payment from the Lehman Creditor Distribution Funding (or, possibly, from a Settling Bond Issuer for a Settling Bond Issuer-Backed Claim that is a Class 3 Claim) of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract after reinstatement (Section 1124(2) Unimpairment), or (2) would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment).

○ The Settling Bond Issuer(s) and the Lehman VD Lenders are consenting to less favorable treatment for any Allowed Sr. Secured Mechanic's Lien Claims that are also, respectively, Settling Bond Issuer-Owned Non-Future Work Claims or Lehman-Owned Settling Bond Issuer-Related Claims.

(d)    For Class 4 Allowed Other Secured Claims, each Holder, if any, would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment) or, at the election of the Lehman VD Lenders: either (1) would receive back its collateral through surrender or abandonment (Unimpairment With Surrender or Abandonment) or (2) would receive payment from the Lehman Creditor Distribution Funding of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract or statute after reinstatement (Section 1124(2) Unimpairment).

(e)    For Class 5 Allowed Priority Claims and the unclassified Allowed Administrative Claims, and Allowed Priority Tax Claims, the Plan provides for 100% payment from the Lehman Creditor Distribution Funding.

1      **1.9**      **Voting Recommendations.**

2             Your vote on the Joint VD Plan is important.  The Lehman VD Lenders urge you to

3      vote to accept the Joint VD Plan by completing and returning the enclosed ballot(s) no later than the

4      Voting Deadline (defined below).   Additionally, the Lehman VD Lenders suggest all Holders of

5      Reliance Claims in Class 6 and of General Unsecured Claims in Class 7 seriously consider the offer

6      that such Creditors may elect to receive the Lehman Distribution Enhancement, understanding that,

7      by such election, such Creditors would afford the Lehman Released Parties the Creditor's

8      Assignment / Release for Lehman.  The Lehman VD Lenders further urge Holders of Mechanic's

9      Lien Claims to seriously consider waiving any Secured Claim and agreeing that their Claim, instead,

10     is a Reliance Claim or General Unsecured Claim, as applicable, in order that such Holder of a

11     Mechanic's Lien Claim too can elect to receive the Lehman Distribution Enhancement (thereby

12     affording the Lehman Released Parties the Creditor's Assignment / Release for Lehman).

13            The Voting Deadline is set forth in a notice or order, which is being sent as an

14     accompaniment to the Disclosure Statement and Plan.

15                                                       **II**

16                              **PLAN CONFIRMATION DEADLINES**

17            The Bankruptcy Court has not confirmed the Joint VD Plan described in this Joint

18     VD Disclosure Statement.  Accordingly, the terms of the Joint VD Plan are not binding on anyone.

19     However, if the Bankruptcy Court confirms the Joint VD Plan, then the Joint VD Plan will be

20     binding on all Persons with respect to the matters set forth in the Plan.

21     **2.1**      **Time and Place of the Confirmation Hearing.**

22            The hearing where the Bankruptcy Court will determine whether or not to confirm the Joint

23     VD Plan will take place before Judge Erithe Smith, in Courtroom 5A, 411 West Fourth Street, Santa

24     Ana, California 92701-4593, **at 9:30 a.m. on October 24, 2011**.

25     **2.2**      **Deadline for Voting for or Against the Joint VD Plan.**

26            If you are entitled to vote, it is in your best interest to timely vote on the enclosed

27     ballot and return the ballot with any applicable election to:

28            Pachulski Stang Ziehl & Jones LLP

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Attention: Michael Matteo

Your ballot must be **received by September 26, 2011** (the "Voting Deadline"), or it will not be counted.

**2.3**    **Deadline for Objecting to the Confirmation of the Joint VD Plan.**

Objections to the confirmation of the Joint VD Plan must be filed with the Bankruptcy Court, and served upon the following parties **by September 26, 2011**:

Counsel for Lehman          Richard M. Pachulski
VD Lenders:                 Dean A. Ziehl
                            Robert B. Orgel
                            Jeremy V. Richards
                            PACHULSKI STANG ZIEHL & JONES LLP
                            10100 Santa Monica Blvd., 11th Floor
                            Los Angeles, California  90067-4100

                            Edward Soto
                            Alfredo R. Perez
                            Nellie P. Camerik
                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, NY  10153-0119

**2.4**    **Identity of Person to Contact for More Information Regarding the Joint VD Plan.**

Any interested party desiring further information about the Joint VD Plan should contact the Lehman VD Lenders' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 11th Floor, Los Angeles, California 90067, (310) 277-6910, attention:  Richard M. Pachulski and Robert B. Orgel.

**2.5**    **Disclaimer.**

Certain information contained in this Joint VD Disclosure Statement (general information in Section 4.1, Project descriptions in Section 4.2.1, SunCal's stated opinions of value in Section 4.2.2, various information regarding Claims used to develop the summary in Section 4.2.4 hereof) is either provided by the Voluntary Debtors or is contained in the 2009 SunCal Disclosure Statement or April 2011 SunCal Disclosure Statements.  Additionally, this Disclosure Statement

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   from time to time notes within the text when the Proponents are specifically relying upon

2   information provided or disclosed or believed by either the Voluntary Debtors or Elieff.  The

3   Lehman Proponents represent that they are unaware of any material inaccuracies in the information

4   set forth herein.

5            The Bankruptcy Court has not yet determined whether or not the Joint VD Plan is

6   confirmable and makes no recommendation as to whether or not you should support or oppose the

7   Joint VD Plan.

8            The discussion in this Joint VD Disclosure Statement regarding the VD Plan Debtors

9   may contain "forward looking statements" within the meaning of the Private Securities Litigation

10  Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical

11  fact and can be identified by the use of forward looking terminology such as "may," "expect,"

12  "anticipate," "estimate," or "continue," or the negative thereof or other variations thereon or

13  comparable terminology.  The reader is cautioned that all forward looking statements are necessarily

14  speculative and there are certain risks and uncertainties that could cause actual events or results to

15  differ materially from those referred to in such forward looking statements.  The liquidation

16  analyses, distribution projections, projections of financial results and other information are estimates

17  only, and the timing, amount and value of actual distributions to Creditors may be affected by many

18  factors that cannot be predicted.  Therefore, any analyses, estimates, or projections mayor may not

19  turn out to be accurate.

20                                    **III**

21            **ACCEPTANCE OR REJECTION OF THE JOINT VD PLAN**

22  **3.1    Who May Object to Confirmation of the Joint VD Plan.**

23            Any party in interest may object to the confirmation of the Joint VD Plan, but as

24  explained below not everyone is entitled to vote to accept or reject the Joint VD Plan.

25  **3.2    Who May Vote to Accept/Reject the Joint VD Plan.**

26            Subject to the following, a Holder of a Claim or Interest has a right to vote for or

27  against the Plan if that Holder of the Claim or Interest has a Claim, which is (1) Allowed or Allowed

28  for voting purposes, (2) classified in an Impaired Class and (3) receives something under the Plan.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

1    Allowed Claims in Classes 2, 6, 7, 8 and 9 are classified as Impaired and receive or

2    retain property or rights under the Plan and, thus, Holders of Claims in such Classes are entitled to

3    vote to accept or reject the Plan.

4    **3.3    What Is an Allowed Claim/Interest.**

5    As noted above, a Holder of Claim or Interest must first have an Allowed Claim or

6    Allowed Interest to vote.  As more fully defined in the Plan, a Claim (other than an Administrative

7    Claim) is "Allowed:" (1) if it is a Scheduled Claim and the Holder of such Claim did not file proof

8    thereof with the Bankruptcy Court on or before the Claims Bar Date, in the amount thereof, with the

9    status as secured or unsecured thereof and with the statutory priority thereof if no objection to such

10    Claim was interposed by the Claims Objection Deadline; or (2) if the Holder of such Claim has filed

11    a Proof of Claim therefor with the Bankruptcy Court on or before the Claims Bar Date, in the

12    amount and with the status as secured or unsecured and in the statutory priority as stated in such

13    Proofs of Claim if no objection to such Claim was interposed by the Claims Objection Deadline; or

14    (3) if an objection to such Claim was interposed by the Claims Objection Deadline, in the amount

15    and with the status as secured or unsecured and in the statutory priority thereof as fixed by Final

16    Order of the Bankruptcy Court; and (4) with respect to a Claim's status as a Reliance Claim, (a) with

17    such status if it is alleged on the Holder's Ballot in the manner provided therefor and if no objection

18    thereto is interposed by the Claims Objection Deadline, (b) with such status if it is alleged by the

19    Liquidating Trustee and either (i) the Lehman VD Lenders consent or (ii) no objection thereto is

20    filed by the later of the Claims Objection Deadline or seventy-five (75) days after notice thereof to

21    the Voluntary Debtors' Committee, if surviving, and the Lehman Creditors or (c) as fixed by Final

22    Order of the Bankruptcy Court.  An Interest is "Allowed" (1) if no objection to such Interest was

23    interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules,

24    the Plan or the Bankruptcy Court, (i) if the Holder of such Interest did not file proof thereof with the

25    Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the

26    Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such

27    Interest and with the nature thereof as listed in the VD Plan Debtors' Schedules if listed as neither

28    disputed, contingent or unliquidated and (ii) if the Holder of such Interest has filed a Proof of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Interest therefor with the Bankruptcy Court within the applicable period of time fixed by the

Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

or percentage of such Interest and with the nature thereof as stated in such Proof of Interest, or (2) if

an objection to such proof was interposed within the applicable period of time fixed by the

Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

or percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court.

### 3.4    **What Is an Impaired Class.**

A Class is impaired if the Joint VD Plan alters the legal, equitable, or contractual

rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon

certain kinds of defaults. Under the Joint VD Plan, Classes 1, 3, 4, and 5 are Unimpaired and Classes

2, 6, 7, 8, 9 and 10 are Impaired.

### 3.5    **Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have not

been Allowed; (2) Claims that, pursuant to Bankruptcy Code sections 507(a)(2), (a)(3) or (a)(8), are

entitled to priority; (3) Claims in Unimpaired Classes; and (4) Claims in Classes that do not receive

or retain any value under the Plan:

(a)      Claims in Unimpaired Classes are not entitled to vote because such

Classes are deemed to have accepted the Plan.

Classes 1, 3, 4, and 5 are Unimpaired and thus Holders of Allowed Claims in those

Classes are not entitled to vote because they are deemed to have accepted the Plan under Bankruptcy

Code § 1126(f).

(b)      Claims entitled to priority pursuant to Bankruptcy Code section

507(a)(2), (3) or (8) are not entitled to vote because voting is to determine class acceptance of a Plan

under Bankruptcy Code § 1129(a)(8) and such Claims are not to be placed in Classes (and, thus, are

unclassified) pursuant to Bankruptcy Code § 1123(a)(1).  Instead, such Claims are required to

receive certain treatment specified under Bankruptcy Code §§ 1129(a)(9)(A) & (C).

Allowed Administrative Claims and Allowed Priority Tax Claims are unclassified

Claims the Holders of which are not entitled to vote.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(c)    Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan.

Class 10 Interests are Impaired but Holders of such Interests receive and retain nothing under the Plan in respect of such Interests and, accordingly, these Holders are not entitled to vote because they are deemed to have voted to reject the Plan under Bankruptcy Code § 1126(f).

EVEN IF A CLAIM IS OF THE TYPE DESCRIBED ABOVE, A CREDITOR MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 3.6    Who Can Vote in More than One Class.

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one Ballot for the secured part of the Claim and another Ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of General Unsecured Claims (Class 7) and Reliance Claims (Class 6)), and may vote the Allowed Claims held in each Class.

### 3.7    Votes Necessary for a Class to Accept the Joint VD Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

### 3.8    Special Provisions for Listed Holders of Mechanic's Lien Claims.

Although the subclasses of Class 3 are Unimpaired and any Holders of <u>Allowed</u> Sr. Secured Mechanic's Lien Claims are deemed to accept the Plan, the Lehman Proponents dispute the "secured" status of any such Claim against any Group I Debtor (other than SunCal Summit Valley) because the Lehman Proponents assert that the aggregate amount of the applicable Lehman Loans secured by Lehman Claim Liens on each applicable Plan Project exceeds the value of such Plan Project, such that there is no value in the junior Liens of the Holders of Mechanic's Lien Claims. Thus, <u>each listed Holder of a Mechanic's Lien Claim against any Group I Debtor will be provided a</u> <u>Ballot on which such Holder may elect to vote its Claims as a General Unsecured Claim or Reliance</u>

Claim, as applicable, in which event the Holder will be waiving contentions that its interest in the collateral securing its Claim has any value and thus will be waiving contentions that it holds a Secured Claim against the applicable Plan Project.  By holding a General Unsecured Claim or Reliance Claim at the time of voting, the Creditor will have the opportunity, as more fully set forth herein, to elect to receive the Lehman Distribution Enhancement.

**3.9    Special Provisions for Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6.**

**3.9.1    Voting Permitted Regardless of Election to Receive the Lehman Distribution Enhancement.**

Creditors voting a General Unsecured Claim in Class 7 or a Reliance Claim in Class 6 may vote for or against the Plan whether or not the Creditor elects to execute and deliver the Creditor's Assignment / Release for Lehman and receive the benefits of the Lehman Distribution Enhancement (applicable only if the Claim is Allowed, Plan is Confirmed and Effective Date occurs).

**3.9.2    "Reliance Claim" Status Must Be Asserted on a Ballot.**

For any Creditor to vote its Claim as a Reliance Claim in Class 6, and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.  The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim (a) for New Value, (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as Scheduled Claims, excluding (d) Insider Claims and Lehman VD Lender Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims).  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims in Classes 6 or 7.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**3.10** **Receipt of No or Incorrect Ballots.**

If a Creditor does not receive a Ballot or receives an incorrect Ballot, it may contact the Proponents to receive the correct Ballot.

**3.11** **Acceptance of the Plan Contrasted With Confirmation.**

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements include that the Plan must (a) be proposed in good faith, (b) be accepted in accordance with the provisions of the Bankruptcy Code, (c) pay creditors at least as much as creditors would receive in a Chapter 7 liquidation and (d) be feasible. Creditor acceptance of the Plan is only a factor relating to confirmation. Even if there are Impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code and at least one Impaired Class of Claims accepts the Plan. The process by which a plan may be confirmed and become binding on non-accepting classes is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting Classes of Claims or Interests if it meets all statutory requirements except the voting requirements of Bankruptcy Code § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law. The confirmed Plan binds the non-accepting Classes. The Proponents will ask the Bankruptcy Court to confirm the Plan by cramdown on any Impaired Class if such Class does not vote to accept the Plan.

The requirements described in the Plan may not be the only requirements for confirmation. PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

# IV

## BACKGROUND OF THE VD PLAN DEBTORS, THEIR BUSINESS AND THE CASES

### 4.1    The SunCal Companies and the Debtors.[4]

SunCal's business focused upon the acquisition and development of residential land. A typical SunCal project began with the acquisition of one or more parcels of raw land. Thereafter, the SunCal team developed a master plan for the acreage that incorporated streets, homes, parks, schools and commercial areas, and then it worked with the applicable municipal planning authorities (the city, county, state and federal) to secure the necessary approvals or "entitlements" to achieve such plan. This process, which required the assistance of land planners, civil engineers, architects, lawyers, and other land specialists, took a period of years. Once a master plan had been approved, SunCal provided for the grading of the project and the installation of the foundational infrastructure (streets, utilities, *etc.*) and then sold the lots or parcels within the project to merchant builders.

The land development process is inherently capital intensive due to size and costs of the assets being acquired, the front-loaded capital requirements, and the length of time between the initial acquisition and the ultimate realization of profits. A typical SunCal project was financed through an equity contribution coupled with a land or acquisition loan. Thereafter one or more development and entitlement credit facilities would either be incorporated into the acquisition loan, or an entirely new facility would be obtained to fund the development. In some cases a layer of mezzanine debt (secured by an equity ownership interest in the entity that owns the project) was employed to provide additional funding.

The Debtors are twenty-six (26) entities formed to develop the Projects throughout California. Some of the Debtors directly own the Projects and others serve as holding companies, owning Allowed Interests directly or indirectly in the Debtors that hold title to the Projects. SunCal Management, a non-debtor entity, owned and controlled by Elieff, managed all of the Projects.

Attached hereto as **Exhibit "1"** is a list and general description of various notices of potential health and safety issues asserted by various government agencies with respect to the Plan

---

[4] The information set forth in this Disclosure Statement Section 4.1 is largely obtained from the previously Filed 2009 SunCal Disclosure Statement, although certain amounts have been updated as more recent data became available. This information is designed to provide to the reader with a general background understanding of the Debtors and their operations.

Projects, which information was derived from information from the Voluntary Debtors.

The Assets, debt and capital structure of the VD Plan Debtors are set forth in the subsections below.

As to the related eight Trustee Debtors for which the Lehman Creditors and Trustee are proposing a plan, each such Debtor owns a project and the Lehman Creditors assert that they hold first priority, voluntary liens against such projects securing an aggregate debt to such Lehman Creditors of approximately $1.1 billion.  The Lehman Creditors believe that such projects have a value of no more than approximately 32% of the Lehman Creditors' debt. The Voluntary Debtors and their affiliates have various challenges pending to the claims against such Trustee Debtors held by the Lehman Creditors.  The Joint VD Plan does not attempt to resolve such issues as to such Trustee Debtors, but such issues are addressed by the Joint TD Plan and may be addressed through other plans, through litigation or through a settlement or settlements separate from a plan.

4.2    **Financial Information: Assets and Liabilities.**

4.2.1    **The VD Plan Debtors' Primary Assets.**

The following is a general description of the VD Plan Debtors and their primary Assets (other than the Litigation Claims) as of their respective Petition Dates, based solely upon the Voluntary Debtors' disclosures in the 2009 SunCal Disclosure Statement:

| DEBTOR | ASSET DESCRIPTION |
|---|---|
| Palmdale Hills | Palmdale Hills owns the Ritter Ranch Project. The Ritter Ranch Project consists of a 10,625 acre site situated in the City of Palmdale, in Los Angeles County, California. Grading of the first phase is complete with master infrastructure nearly 90% complete. The specific plan and the development agreement were approved in 1992 and allow for the development of up to 7,200 residential units. A vesting tentative parcel map consisting of 42 parcels has been processed and was recorded in 1995. Additionally, six vesting tentative tract maps totaling 553 lots were approved by the city in December 1995. All regulatory permits have been received. 

Palmdale Hills also owns personal property in the form of cash and the Palmdale Hills CFD Bonds. |
| Acton Estates | Action Estates owns the Acton Project consisting of a 175-acre site situated in Los Angeles County, California. The Acton Project is surrounded by mostly equestrian properties and light agricultural vacant land. The Acton Project is expected to consist of 136 units. |
| SunCal Beaumont | SunCal Beaumont owns the Beaumont Heights Project, that originally consisted of a 1,191-acre site situated in the City of Beaumont, in Riverside County, California. The property is currently designated as low density residential use -rural residential use. The City of Beaumont is in the process of amending the general plan, preparing an environmental impact report and annexing the assemblage. The specific plan and tentative tract map are in the drafting stage. The Beaumont Heights Project was expected to consist of 1,203 units. A portion of the Beaumont Heights Project has been lost through foreclosure sales completed prior to the Petition Date. |
| SunCal Bickford | SunCal Bickford owns the Bickford Ranch Project, consisting of a 1,940-acre site situated in the City of Penryn, in Placer County, California. The Bickford Ranch Project is fully entitled with an approved large lot tentative map, small lot tentative map, specific plan, design guidelines, development standards, and a development agreement. The offsite water and sewer improvements are mostly complete. Improvement plans for major roads and in-tract improvements were in process of being completed and a memorandum of understanding between the City and County for the regional sewer pipeline was in process. The Bickford Ranch Project is expected to consist of 2,105 units. 

SunCal Bickford owns personal property in the form of cash. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| SunCal Johannson | SunCal Johannson owns the Johannson Ranch Project, consisting of a 501-acre site in the City of Modesto, in Stanislaus County, California. Tentative maps were in the process of being prepared. Engineering plans and preparation of the draft specific plan were commenced prior to the filing of the Debtors' Cases. The SunCal Johannson Project is expected to consist of 921 units.<br><br>SunCal Johannson also owns personal property in the form of cash. |
| SunCal Summit Valley | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date. SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.<br><br>SunCal Summit Valley also owns personal property in the form of cash. |
| Kirby Estates | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date. Kirby Estates owns 27 acres of the Summit Valley Project. (SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.) |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| Seven Brothers | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date.  Seven Brothers owned 900 acres of the Summit Valley Project, a portion of which has been lost through foreclosure proceedings completed prior to the Petition Date.  (SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.) |
| SCC Communities | SCC Communities owns the Joshua Ridge Project, consisting of an 80-acre site situated in the City of Victorville in San Bernardino County, California. The Joshua Ridge Project was slated to be sold to the city and the city was scheduled to use the land to build a park or a school. |
| Tesoro | Tesoro owns the Tesoro Project consisting of a 185-acre site situated in the City of Santa Clarita in Los Angeles County, California. The existing entitlements include a tentative tract map approved by the planning commission, which allows for 45 lots. |
| SunCal I | SunCal I does not own any real property. SunCal I is the Holder of Allowed Interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald. |

### 4.2.2    Values for Plan Projects.

The below chart sets forth the appraised value of the VD Plan Debtors' Projects based upon appraisals prepared for the Lehman Creditors during the pendency of the Bankruptcy Cases, and SunCal's stated valuation opinions for the Projects.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| NAME OF DEBTOR | APPRAISED VALUE OF DEBTORS' PROJECTS BASED UPON APPRAISALS PREPARED FOR LEHMAN CREDITORS DURING THE PENDENCY OF THE DEBTORS' CHAPTER 11 PROCEEDING[5] | SUNCAL'S VALUATION OPINIONS[6] |
|---|---|---|
| SunCal Bickford | $29,500,000 | $10,900,000 |
| Palmdale Hills | $42,900,000 | $21,800,000 |
| Tesoro | $1,850,000 | $ 1,500,000 |
| SCC Communities | $1,200,000 | $ 1,000,000 |
| SunCal Beaumont | $1,800,000 | $ 1,020,000 |
| Acton Estates | $6,800,000 | $ 1,600,000 |
| SunCal Johannson | $4,000,000 | $ 540,000 |
| SunCal Summit Valley | $2,200,000 | $ 370,000 |
| Kirby Estates | $2,800,000 | *See* SunCal Summit Valley |
| Seven Brothers | $200,000 | *See* SunCal Summit Valley |
| **TOTAL** | **$93,250,000.00** | **$38,730,000** |

• The Lehman Creditors' appraised value of the Summit Valley Project includes the portions of the Summit Valley Project owned by Seven Brothers and Kirby Estates. The appraisal values the property that is owned outright by SunCal Summit Valley, Seven Brothers and Kirby Estates, and not subject to Seller Financing Secured Claims.

As to the net values estimated to be available for the Lehman Secured Claims against SunCal I and SunCal Summit Valley based on the value of their Interests in Kirby Estates, Seven Brothers, SunCal Beaumont, and SunCal Johanson, the following estimate is applicable:

---

[5] The Lehman VD Lenders believe the Plan Projects are worth no more than and some may be worth substantially less than these appraised values. Moreover, to the benefit of the creditors of SunCal Beaumont, the value listed and used herein of $1.8 million as the Project's value is $400,000 higher than the appraised value (which mitigates the impact on other creditors of the diminution in equity caused by the accrual of real property taxes).

[6] Exhibit 2 to the April 2011 SunCal Disclosure Statements sets forth "SunCal Valuation Opinions" "conducted in April 2011." SunCal previously represented that prior versions of such valuations were prepared by its internal underwriting team using criteria consistent with the team's acquisition of real properties. The Lehman Proponents have not verified, nor do they vouch for the valuation techniques adopted by SunCal.

| DEBTOR | Project Values | Cash | Aggregate Asset Values | Total Non-Lehman Creditor Claims[7] | Available for Lehman Secured Claim |
|---|---|---|---|---|---|
| Kirby Estates | $2,800,000 | $10 | $2,800,010 | $16,763 | $2,783,247 |
| Seven Brothers | $200,000 | $174 | $200,174 | $161,943 | $38,231 |
| Subtotal:  (Available Value for Lehman Secured Claim against SunCal Summit Valley's Interests in Kirby Estates and Seven Brothers) | $3,000,000 | $184 | $3,000,184 | $178,706 | $2,821,478 |
| SunCal Beaumont | $1,800,000 | $11 | $1,800,011 | $1,777,882 | $22,129 |
| SunCal Johannson | $4,000,000 | $106,412 | $4,106,412 | $573,445 | $3,532,967 |
| Subtotal: (Available Value for Lehman Secured Claim against SunCal I's Interests in SunCal Beaumont and SunCal Johannson) | $5,800,000 | $106,423 | $5,906,423 | $2,352,327 | $3,555,096 |
| Total | $8,800,000 | $106,607 | $8,906,607 | $2,530,033 | $6,376,574 |

### 4.2.3  Remaining Other Assets

Besides the Plan Projects and any associated personal property, the only significant Remaining Other Assets are the VD Plan Debtors' Cash and any potential Net Cash Litigation Recoveries.

### (a)    VD Plan Debtors' Cash

The following chart sets forth the VD Plan Debtors' cash on hand as of January 31, 2011 (based on information in January 2011 Filings by the Voluntary Debtors of Monthly Operating Reports and pleadings).  The Lehman Creditors contend that some or all of the following amounts are subject to its Liens and therefore constitute their "Cash Collateral."

---

[7] Seller Financing Secured Claims are excluded from the above chart. The Lehman Creditors are aware of Seller Financing Secured Claims of approximately $2.9 million against SunCal Summit Valley, $3.4 million against Seven Brothers, and $1.1 million against SunCal Beaumont.  The Plan provides that the Holders of such Claims, absent settlement, either are to be left to their state law rights, to be paid in full, or to receive back their collateral. To the extent their Claims are thereby satisfied, there should be no impact on other Creditors.  In the event any Holder of a Seller Financing Secured Claim successfully asserts an Unsecured Deficiency Claim that becomes Allowed or the prospect thereof becomes reasonably likely, such as might occur if the Holder is left unimpaired, is undersecured and elects to judicially foreclose, such Claims or their prospect could dilute recoveries or cause a Plan contingency to be unsatisfied.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Debtor | Undisputed Cash Collateral | Disputed Cash Collateral | Other Restricted Cash | Unrestricted Cash |
|---|---|---|---|---|
| **Group I Debtors** | | | | |
| Acton Estates | | | | |
| Palmdale Hills | $17,314,703 | $3,060,151 | $201,806 | |
| SCC Communities | | $ 2,669 | | |
| SunCal Bickford | | $1,105,004 | | |
| SunCal I | | $ 26 | | |
| SunCal Summit Valley | | $28,596 | | |
| Tesoro | | $ 71 | | |
| **Total** | **$17,314,703.00** | **$4,196,517.00** | **$201,806.00** | **0** |
| **Aggregate Total:** | **$21,713,026** | | | |

| Debtor | Undisputed Cash Collateral | Disputed Cash Collateral | Other Restricted Cash | Unrestricted Cash |
|---|---|---|---|---|
| **Group II Debtors** | | | | |
| Kirby Estates | | | | $ 10 |
| Seven Brothers | | | | $ 174 |
| SunCal Beaumont | | | | $ 11 |
| SunCal Johannson | | | | $106,412 |
| **Total** | | | | **$106,607.00** |

**(b)    Net Cash Litigation Recoveries**

The Proponents have not completed their investigation of potential Litigation Claims as to matters not resolved under the Plan and are not aware of any material matters of this type. Yet, the Plan preserves the ability of the Liquidating Trustee to pursue Remaining Litigation Claims and affords non-priority, unsecured creditors (*e.g.*, Holders of Allowed Reliance Claims and Allowed General Unsecured Claims), a proportional share of any Net Litigation Recoveries.

**4.2.4    Debt and Capital Structure.**

The VD Plan Debtors' ownership is reflected in the classification tables. The following summarizes the debt of the VD Plan Debtors.

**(a)    A Summary of the Lehman VD Lenders' Loans.**

As to the eleven (11) VD Plan Debtors, there are currently eight (8) Plan Projects, as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

follows:

### Group I Debtors
1.    Acton Project
2.    Ritter Ranch Project
3.    Joshua Ridge Project
4.    Bickford Ranch Project
5.    Summit Valley Project
6.    Tesoro Project
### Group II Debtors
7.    Beaumont Heights Project
8.    Johannson Ranch Project

As of the applicable Petition Dates, there were first priority, voluntary liens and security interests against each Plan Project of the Group I Debtors other than SunCal Summit Valley, that now are held by the Lehman VD Lenders, each as owner of all of the subject loan or of the term or revolver component thereof, as more fully set forth in **Exhibit "2"** to the Disclosure Statement. The amount owing, collectively, by the VD Plan Debtors under the Lehman Loans, without duplication, totals approximately $711 million.

More specifically:

(a)    Three (3) Projects – Ritter Ranch Project, Acton Estates Project, and Bickford Ranch Project – are owned, respectively, by Palmdale Hills, Acton Estates, and SunCal Bickford. Lehman Commercial asserts a first priority lien by virtue of first-priority deeds of trust on each of these three Projects.  Additionally, besides holding a first priority Lien directly on the Ritter Ranch Project, Lehman Commercial holds a first priority pledge of the membership interests in Palmdale Hills, which is the owner of the Ritter Ranch Project.

(b)    Two (2) Projects – the Joshua Ridge and Tesoro Projects – are owned, respectively, by SCC Communities and Tesoro.  Lehman ALI is the primary secured creditor on each of these two additional Projects.

(c)    Two (2) Projects – the Johannson Ranch Project and Beaumont Heights Project – are owned, respectively, by SunCal Johannson and SunCal Beaumont.  Lehman Commercial holds a first priority pledge of SunCal I's membership interests in SunCal Johannson and SunCal Beaumont.

(d)    One (1) Project – SunCal Summit Valley – is owned by three Debtors:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

SunCal Summit Valley, Kirby Estates and Seven Brothers, which each own a portion of the Project. Lehman Commercial holds a first priority pledge of SunCal I's membership interests in SunCal Summit Valley and in SunCal Summit Valley's membership interests in Kirby Estates and Seven Brothers.

The Lehman VD Lenders also hold a substantially undisputed Lien on a major part (and undisputed or disputed Liens on substantially all) of the VD Plan Debtors' cash balances (Cash Collateral) and receivables and other rights relating to the Projects in which they assert Liens.

The various Lehman Loans, the entities against which they are asserted and the Allowed Amount of each Lehman Loan as of the Petition Date for the purposes of the Joint VD Plan are all set forth in the classification tables that are set forth herein below and in the Plan.

The Plan Projects are being conveyed to the Lehman Nominees pursuant to the Plan, as permitted by Bankruptcy Code § 1123(a), and the value of such conveyance is set under the Plan based on the appraisals and amounts described therein.  All of the Lehman Loans are recourse loans as to the respective borrowers' assets.  Accordingly, for each Lehman Loan, each applicable Lehman VD Lender is afforded a Lehman Creditor Deficiency Claim against each VD Plan Debtor liable for the subject Lehman Loan equal to the balance of the applicable Lehman Loan not satisfied by the conveyance of Plan Projects to the Lehman Nominee for such Lehman VD Lender, provided that, under the Plan, no Lender Creditor Deficiency Claim is afforded against SCC Communities or Tesoro and, under the Plan and to the benefit of other Creditors, the Lehman VD Lenders are agreeing to receive no part of the Residual Cash for these Lehman Creditor Deficiency Claims.

**(b)     Other Debts against the VD Plan Debtors and Plan Projects.**

In addition to the Secured Claims of the Lehman VD Lenders against certain Plan Projects, there are miscellaneous Real Property Tax Claims, Mechanic's Lien Claims and possibly Other Secured Claims, alleged to be Allowed Secured Claims against the Plan Projects, and other Priority Claims, Administrative Claims, General Unsecured Claims or Reliance Claims asserted against each of the VD Plan Debtors, summarized in the charts below.  The first chart summarizes such Claims for the Group I Debtors and the second chart summarizes such Claims for the Group II Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **GROUP I DEBTORS: ESTIMATED CLAIMS (OTHER THAN LEHMAN CREDITOR CLAIMS)** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **DEBTOR** | **TOTAL CLAIMS** | **ADMINIS-TRATIVE, PRI-ORITY TAX, PRI-ORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS** | **PREPE-TITION REAL PROP-ERTY TAX CLAIMS (CLASS 1)** | **POST PE-TITION REAL PROP-ERTY TAX CLAIMS** | **ME-CHANIC'S LIEN CLAIMS** | **RE-LIANCE CLAIMS (CLASS 6)** | **GEN-ERAL UNSE-CURED CLAIMS (CLASS 7)** | **SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS (CLASS 9)** |
| Palmdale Hills Property LLC | **$29,996,218** | $740,377 | $1,037,377 | $2,940,921 | $1,207,235 | $1,139,875 | $1,542,339 | $21,388,095 |
| SunCal Bickford Ranch, LLC | **$18,000,694** | $683,408 | $2,887,678 | $7,586,243 | $3,477,120 | $460,255 | $324,103 | $2,581,887 |
| Acton Estates, LLC | **$2,364,927** | $86,182 | $200,454 | $642,973 | $0 | $84,811 | $60,506 | $1,290,000 |
| SCC Commun-ities LLC | **$144,166** | $39,601 | $5,900 | $45,852 | $0 | $2,958 | $29,855 | $20,000 |
| SunCal Summit Valley, LLC | **$744,131** | $58,957 | $176,005 | $211,026 | $16,827 | $269,062 | $12,254 | $0 |
| Tesoro SF, LLC | **$906,547** | $179,076 | $33,205 | $109,856 | $0 | $28,095 | $134,314 | $422,000 |
| SunCal Commun-ities I, LLC | **$846** | $846 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | **$52,157,528** | **$1,788,447** | **$4,340,620** | **$11,536,870** | **$4,701,183** | **$1,985,056** | **$2,103,371** | **$25,701,982** |

| **GROUP II DEBTORS:  ESTIMATED CLAIMS (OTHER THAN LEHMAN CREDITOR CLAIMS)** | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DEBTOR** | **TOTAL CLAIMS** | **ADMINIS-TRATIVE, PRI-ORITY TAX, PRI-ORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS** | **PREPE-TITION REAL PROP-ERTY TAX CLAIMS (CLASS 1)** | **POST PE-TITION REAL PROP-ERTY TAX CLAIMS** | **MECHANIC'S LIEN CLAIMS+** | **GENERAL UN-SECURED CLAIMS (CLASS 8)** | **SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS (CLASS 9)** |
| Kirby Estates, LLC | **$16,763** | $846 | $1,744 | $14,173 | $0 | $0 | $0 |
| Seven Brothers, LLC | **$161,943** | $846 | $60,828 | $100,269 | $0 | $0 | $0 |
| SunCal Beaumont Heights, LLC | **$1,777,882** | $46,020 | $365,955 | $1,138,919 | $43,355 | $183,633 | $0 |
| SunCal Johannson Ranch, LLC | **$573,445** | $49,365 | $75,107 | $407,793 | $0 | $41,181 | $0 |
| **Total** | **$2,530,032** | **$97,076** | **$503,634** | **$1,661,154** | **$43,355** | **$225,814** | **$0** |

As to the above charts:

•      These estimates are the result of the initial, first level Claims analysis.  The Claims analysis is continuing and incomplete and late filed Claims and many amendments have not been included in arriving at the numbers set forth above.

•      The chart takes into account information compiled by the Lehman Proponents after having received input from SunCal Management in late 2009 as to Claims likely subject to disallowance.

•      Settling Bond Issuer-Related Future Work Claims in the above chart involve numerous assumptions.  Efforts were made to avoid duplication in that the Proponents believe certain Bond Issuer Claims will be subject to disallowance under Bankruptcy Code section 502(e) to the extent the corresponding Bond-Backed Claim is Allowed.  Although Arch asserted that these alleged Claims (and similar Claims against the Trustee Debtors) are joint and several obligations of all the Debtors, such contentions are disputed and are not taken into account in the chart above (and are irrelevant if there is consensual treatment of the Bond Issuer Claims under the Plan).

1       •       This first level estimation of what Claims may become Allowed Claims and

2    the status of their listing herein or in the Joint VD Plan should not be construed as providing or

3    admitting that any Claim is Allowed or is to be Allowed under the Joint VD Plan unless expressly so

4    provided in the Plan.

5       •       Administrative Claims are ongoing and include projections estimating such

6    Claims as of November 30, 2011.

7       •       Seller Financing Secured Claims are excluded from the above chart. The

8    Lehman Creditors are aware of Seller Financing Secured Claims of approximately $2.9 million

9    against SunCal Summit Valley, $3.4 million against Seven Brothers, and $1.1 million against

10   SunCal Beaumont.  The Plan provides that the Holders of such Claims, absent settlement, either are

11   to be left to their state law rights, to be paid in full, or to receive back their collateral. To the extent

12   their Claims are thereby satisfied, there should be no impact on other Creditors.  In the event any

13   Holder of a Seller Financing Secured Claim successfully asserts an Unsecured Deficiency Claim that

14   becomes Allowed or the prospect thereof becomes reasonably likely, such as might occur if the

15   Holder is left unimpaired, is undersecured and elects to judicially foreclose, such Claims or their

16   prospect could dilute recoveries or cause a Plan contingency to be unsatisfied.

17       Totals from the chart above are as follows:

| DEBTOR | TOTAL NON-LEHMAN CREDITOR CLAIMS |
|---|---|
| Palmdale Hills | $29,996,218 |
| SunCal Bickford | $18,000,694 |
| Acton Estates | $2,364,927 |
| SCC Communities | $144,166 |
| SunCal Summit Valley | $744,131 |
| Tesoro | $906,547 |
| Kirby Estates | $16,763 |
| Seven Brothers | $161,943 |
| SunCal Beaumont | $1,777,882 |
| SunCal Johannson | $573,445 |
| SunCal I | $846 |
| **Total** | **$54,687,561** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(c)   **Mechanic's Lien Claims.**

Mechanic's Lien Claims constitute Claims arising pursuant to California Civil Code §3110 *et seq.* that were either perfected prepetition or otherwise satisfy the requirements of Bankruptcy Code 546(b).  There are estimated to have been asserted approximately $4.74 million of asserted Mechanic's Lien Claims against various of the Plan Projects.  The Lehman VD Lenders contend that the Lehman Claim Liens are first priority, voluntary Liens on the Plan Projects of the Group I Debtors (other than SunCal Summit Valley), senior to the alleged Mechanic's Lien Claims. Because the Lehman Claims Liens are senior Encumbrances to such Mechanic's Lien Claims and because the Plan Projects of the Group I Debtors (other than SunCal Summit Valley) are worth less than the aggregate outstanding amount of the Lehman Loans that are secured by the Lehman Claims Liens, the Lehman Proponents assert that there is no value in said Plan Projects to which the junior Liens of the Holders of Mechanic's Lien Claims could attach.

The Lehman VD Lenders believe that, generally, the Mechanic's Lien Claims are General Unsecured Claims or Reliance Claims (to be treated in Class 6, Class 7 or Class 8, if Allowed).  The Lehman VD Lenders contend that the lien of a secured lender or construction lender is senior to mechanic's liens under Cal. Civil Code sections 3134 & 3136 (taken together and viewed in light of existing case law) so long as the lender recorded its trust deed prior to the commencement of work on the Project.[8]  Based upon the foregoing, the Lehman VD Lenders believe that Holders of Mechanic's Lien Claims against Group I Debtors (other than SunCal Summit Valley) face significant hurdles in establishing that their Claims are Sr. Secured Mechanic's Lien Claims, entitled to priority over the Encumbrances of the Lehman VD Lenders, such that such Holders of Mechanic's Lien Claims against Group I Debtors (other than SunCal Summit Valley) should consider (i) waiving any contention of holding a Secured Claim and (ii) electing the Lehman Distribution Enhancement

---

[8] The Lehman VD Lenders are substantially undersecured and, although no analysis was undertaken, have some confidence that Project values are unlikely to exceed original loan amounts. If they do, there is a possibility that mechanic's lien holders could establish priority as to such excess value if the subsequent advances were not required under the construction loan and were not made to fund construction. The dates of the recording of the Lehman VD Lenders' trust deeds for the Projects are as follows: Palmdale Hills:  February 12, 2007, Instrument No. 2007-0299922; SunCal Bickford:  August 25, 2006, Instrument No. 2006-0091555, amended March 14, 2007, Instrument No. 2007-0025661-00; SunCal Emerald:  July 19, 2007, Instrument No. 2007-0471396, amended September 4, 2008, Instrument No. 2008-0485910; Acton Estates:  January 16, 2007, Instrument No. 20070078774; SCC Communities:  November 2, 2007, Instrument No. 2007-0612667, amended July 1, 2008, Instrument No. 2008-0297987; Tesoro: November 2, 2007, Instrument No. 20072474180, amended July 1, 2008, Instrument No. 20081168418.

1    as a Holder of either a Class 6 Reliance Claim or Class 7 General Unsecured Claim.

2    If a Creditor with a Mechanic's Lien Claim, that it contends is a Secured Claim

3    (which means such Claim must be senior to the Secured Claim against the applicable Plan Project of

4    the applicable Lehman VD Lender) waits to find out after an objection to such Claim whether its

5    Claim will be Allowed as having the status of a Sr. Secured Mechanic's Lien Claim, General

6    Unsecured Claim or Reliance Claim, then, the Plan offers no opportunity at such later point for the

7    Creditor to avail itself of the Lehman Distribution Enhancement, which, as provided in the Plan,

8    essentially offers Creditors an opportunity on their Ballots to elect to receive an enhanced recovery

9    of 40% to 50% for Allowed Reliance Claims against Group I Debtors, and 5% for Allowed General

10    Unsecured Claims against Group I Debtors.

11    Thus, each listed Holder of a Mechanic's Lien Claim relating to the Plan Projects of

12    Group I Debtors will be provided a Ballot on which such Holder may elect to vote its Claim as a

13    General Unsecured Claim or a Reliance Claim, as applicable, and will have the opportunity to elect

14    to receive the Lehman Distribution Enhancement in respect of its Allowed Claim (in exchange for

15    the Creditor's Assignment / Release for Lehman).  To elect this option, the Creditor must and would

16    waive all contentions that its Claim is a Secured Claim against the applicable Plan Project.  If such

17    Holder does not elect to vote its Claims as General Unsecured Claims or Reliance Claims, thereby

18    electing to proceed as a Holder of Mechanic's Lien Claims, then if it is subsequently determined that

19    such Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be eligible to receive

20    the Lehman Distribution Enhancement.

21    Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or

22    otherwise settled by the applicable Bond Issuer.

23    **4.2.5    Alleged Litigation Claims And Challenges Against The Lehman**

24    **Creditors Asserted Currently By The Voluntary Debtors And, Some of Which, Formerly By**

25    **The Trustee.**

26    **(a)    Introduction.**

27    The Voluntary Debtors contend and the Trustee, prior to the Plan, contended that the

28    Debtors' Estates or certain of the Debtors' Creditors have substantial causes of action and challenges

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

against the Lehman Creditors with respect to the loans and Claims of the Lehman Creditors that would result either in the subordination of the Claims of the Lehman Creditors against the Debtors to payment in full of all, or a substantial portion of the Debtors' Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman Creditors assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors' Estates from the Lehman Creditors. Those claims and challenges, and additional challenges of the Voluntary Debtors and their affiliates, fall into six general categories: (i) the Equitable Subordination Claims; (ii) the Fraudulent Transfer Claims; (iii) the Preference Claims; (iv) the Breach of Fiduciary Duty Claims; (iv) the Section 506(d) Claims; (v) the Motion to Strike the Lehman Creditors' Proofs of Claims; and (vi) the Recoupment Objection (defined below). The nature of these claims and the Lehman Creditors' analysis of their merits and likely value is discussed in this Disclosure Statement Section 4.2.5.

Additionally, the Voluntary Debtors and their affiliates allege that certain Lehman Related Parties (i) during the post-petition period, concealed the prepetition sale of certain loans to Fenway Capital and made misrepresentations with respect thereto, and (ii) improperly asserted that Lehman Commercial's automatic stay barred actions in the Voluntary Debtors' chapter 11 cases relating to two of such loans (because the Voluntary Debtors contend that Lehman Commercial did not own any interest therein and thus, the stay was inapplicable).

The Lehman Creditors dispute all such allegations and are or will vigorously contest their assertion. Moreover, the Joint VD Plan and Joint TD Plan, if confirmed, would settle essentially all claims of the Debtors and their estates against the Lehman Creditors (and other Lehman Released Parties) other than their obligations under the Joint VD Plan and Joint TD Plan.

**(b)      The Equitable Subordination Claims Relating to the Lehman Creditors' Claims.**

The previously filed 2009 SunCal Disclosure Statement sets forth the basis upon which the Voluntary Debtors and Acquisitions believe that the Lehman Creditors' Claims could be "equitably subordinated" to the claims of all other unsecured creditors, such that distributions that would otherwise be made by the Trustee or Voluntary Debtors to the Lehman Creditors would instead be redistributed to junior, unsecured creditors of the Debtors.

As the primary basis for equitable subordination, the Debtors allege that, beginning in

or about August of 2007, the Lehman Creditors took over effective control of all of the material aspects of the operations of the Debtors' projects, without regard as to whether a Lehman Related Party was the lender or whether a Lehman Related Party was an equity member. The Lehman Creditors, they allege further, imposed a "new control and approval structure" for payments pursuant to which they scrutinized the budget, met weekly and decided what would be paid and what would not. At the same time, however, the Debtors allege that even though payables were being scrutinized on a line item basis, representatives of the Lehman Creditors were urging the Debtors not to slow down work, and were promising that all vendors would be paid in order to keep the projects moving forward; this naturally caused the Debtors to incur substantial unsecured vendor claims, which went unpaid when the Lehman Creditors broke their purported promise to pay all payables. The Debtors further allege that the Lehman Creditors acted in bad faith when, after signing a Restructuring Agreement in mid-2008 that contemplated a further settlement agreement, they declined to consummate that settlement in August-September 2008 (the month that Lehman Commercial and LBHI filed the largest bankruptcy case in history).

These allegations form the basis of the action commenced by the Voluntary Debtors on January 6, 2009 (the "ES Action"). On February 3, 2009, the Debtors filed a First Amended Complaint, which added the Trustee Debtors as co-plaintiffs and named OVC Holdings, Northlake Holdings and various other entities as additional defendants (collectively with ALI, the "ES Defendants"). Lehman Commercial was added as a defendant in the Second Amended Complaint, filed March 26, 2009.

The Lehman Creditors believe that the equitable subordination claims have no merit, and that they face legal, factual and practical hurdles that the Debtors are unlikely to surmount and that the Voluntary Debtors and Acquisitions have failed to disclose, which render improbable any meaningful benefit to creditors from the prosecution of such claims.

First, generally, equitable subordination as a matter of law is a rare and limited remedy. Courts refer to equitable subordination as an "extraordinary remedy" that must be applied sparingly. As a basic rule, as the Voluntary Debtors and Acquisitions acknowledge, equitable subordination requires findings that (a) the claimant whose claim is sought to be equitably

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

subordinated engaged in some type of inequitable conduct, (b) the conduct injured creditors, or conferred an unfair advantage on the claimant, and (c) subordination would not be inconsistent with the Bankruptcy Code. A plaintiff carries the burden of proof with respect to each of these elements. The Debtors hope that all of the Lehman Creditors will be deemed "insiders," for otherwise they must prove "gross and egregious misconduct." The Lehman Creditors believe that the Debtors would not be able to meet their burden of proving that the Lehman Creditors were insiders.

Second, factually, the Lehman Creditors believe that the Debtors will not be able to prove misconduct of any kind, much less gross and egregious misconduct. The Debtors' own allegations signal their dilemma. They allege that the Lehman Creditors imposed a strict new structure for the control and approval of payables (thereby taking control from the Debtors), while at the same time alleging that the Lehman Creditors were urging work to continue and making blanket promises of payment. Instead, the evidence will show that each payable of the Debtors that the Lehman Creditors were willing to fund was documented in a Protective Advance Notice that (a) specified the payable, (b) stated that the Lehman Creditors were advancing funds to pay it solely to protect their collateral, and (c) stated clearly that by doing so, the Lehman Creditors were not agreeing to advance funds for any other obligations. Such facts will not support equitable subordination.

Third, as a matter of law, equitable subordination is a creditor specific remedy, as the Debtors originally represented (and which the Voluntary Debtors and Acquisitions still imply). Equitable subordination can only be determined on a creditor-by-creditor basis, based on specific conduct by a specific Lehman Creditor that caused a specific injury to a specific creditor. Thus although the Voluntary Debtors and Acquisitions originally posited that the Lehman Creditors' Claims would be subordinated to the Claims of all other unsecured creditors, such blanket subordination was legally impossible. Accordingly, the Court dismissed the equitable subordination claim in the Second Amended Complaint on June 11, 2009, on the basis that the complaint "fail[ed] to either a) tie specific defendants to particular inequitable conduct or b) state sufficiently the basis for imputing the conduct of the nonparty Lehman to the defendants" and also "fail[ed] to sufficiently identify the alleged injured creditors, at least by category/class." However, there are 26 separate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors, representing 19 development projects scattered throughout California.  Contractors in San

Clemente could not rely on alleged promises made to contractors in Oakland.  Indeed, no individual

contractor could reasonably rely on promises made to any other contractor.  Further, although the

alleged false funding promises are vaguely said to relate back to the Restructuring Agreement, not

all of those projects, Debtors or Lehman Creditors were even part of that agreement.

Fourth, the equitable subordination claims are not bolstered by the allegations of post-

petition misconduct by the Lehman Creditors added by the Debtors to their Third Amended

Complaint, filed July 10, 2009 and partially dismissed by the Court, and Fourth Amended

Complaint, filed March 26, 2010.  The Debtors allege that Lehman Commercial engaged in

inequitable conduct that injured creditors, post-petition, by "falsely" invoking its automatic stay

between the Petition Date and June 30, 2009, when the Court issued a tentative ruling that Fenway

Capital held certain of the Lehman Creditors' Claims (subject to a repurchase right, as described in

subsection (f) below).  That order was eventually entered on October 2, 2009 and is now on appeal.

The Lehman Creditors contend that the Debtors' position is frivolous for numerous

reasons, including:  (a) the Bankruptcy Appellate Panel ruled on December 15, 2009 that the

equitable subordination claims violated the Lehman Commercial automatic stay, and this Court

dismissed Lehman Commercial from the Third Amended Complaint on such basis; (b) there was

never a time when Lehman Commercial did not still hold Claims protected by its automatic stay; (c)

in any event, the post-petition representations that the Lehman Creditors owned all of their Claims

were correct and well-justified when made; (d) the Lehman Creditors' representations were based on

a good faith belief that they were, and continue to be, consistent with existing law and facts; and

moreover (e) the Debtors' argument cannot support equitable subordination even conceptually, since

post-petition conduct is legally irrelevant to the subordination of some prepetition claims to other

prepetition claims.  On April 12, 2010, the Lehman Creditors filed a partial motion to dismiss the

Fourth Amended Complaint (as well as a motion to strike portions of the same).  Those motions are

pending.

Sixth, prosecution of the ES Action is costly and time-consuming.  The Debtors

previously estimated that the ES Action will cost between $3 and $4 million to prosecute.  It is not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

clear how the Debtors' Estates could fund the anticipated costs and expenses. Further, even if the ES Action were not stayed against Lehman Commercial, prosecuting the claims to finality would require years of litigation and appeals, even if the Debtors were to overcome all of the legal and factual hurdles described herein.

Although the Lehman Creditors believe that the pending challenges to their Claims are without merit, they also are aware that, despite their holding Liens securing obligations that substantially exceed the value of the Plan Projects, the Debtors have no ability to pay in any foreseeable time the full amount of the debt owed under the Lehman Loans. Thus, the Lehman Creditors want immediate ownership of their collateral. As discussed herein, the Plan would result in the conveyance of the Plan Projects to the Lehman Nominees and a release from the Plan Debtors' Estates for the Lehman Released Parties, while permitting individual creditors to elect between preserving their whatever claims they themselves have against the Lehman Released Parties or receiving payments in exchange for a release of such claims.

**(c)    The Voluntary Debtors' Assertions regarding Fraudulent Transfer Actions Against the Lehman Creditors Arising under Various Cross-Collateralized Lehman Loans.**

The Voluntary Debtors contend (and the Trustee had contended) that certain Claims and Liens of the Lehman Creditors can be set aside and avoided pursuant to Bankruptcy Code sections 544, 548, 502(d) and 551 on the theory that at least part of the Claims and Liens identified therein relate to monies received by a Debtor other than the Debtor with a secured obligation to repay those monies. The Voluntary Debtors and Acquisitions contend the Lehman Creditors may only assert a Claim and Lien against a particular Debtor to the extent that particular Debtor actually received monies on account of the subject Claim (rather than to the extent the Debtor guaranteed and secured repayment of monies received by an Affiliate).

There are numerous problems with this theory of recovery, not the least of which is that a guarantee or co-obligor obligation (and the lien securing such obligation) based upon monies advanced to an Affiliate can only be set aside if the Debtor incurring such obligation or granting such lien was insolvent, or was rendered insolvent (as insolvency is defined in section 544 and applicable state law or section 548) by virtue of incurring the secured obligation at the time the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

obligation and lien were incurred.  The 2009 SunCal Disclosure Statement does not allege that the subject cross-collateralization identified therein was incurred by any Debtor at a time when the Debtor was, or was thereby rendered, insolvent.  The Lehman Creditors believe that in all, or substantially all instances of cross-collateralization identified by the Voluntary Debtors and Acquisitions, the Debtor incurring the secured obligation was not insolvent, nor was it rendered insolvent (as such term is defined by applicable law) at the time the Lien and obligation were incurred.

Furthermore, the Voluntary Debtors and Acquisitions concede that the Liens and Claims of Lehman Creditors cannot be set aside to the extent that funds were actually received by the obligor/pledgor.  Taking the amount of funds that the Voluntary Debtors and Acquisitions concede each of the relevant Debtors received and comparing that number with the Debtors' estimate of the value of the related collateral pledged in favor of the Lehman Creditors, it is clear that in only one instance involving a Voluntary Debtor's Project (the Acton Project) is the amount of funds allegedly received ($380,000) less than the current value of the pledged collateral (in this case, $1.6 million).  Thus, even if the Fraudulent Transfer Claims are valid, they would at best generate a recovery of approximately $1.2 million and then only for the benefit of Creditors of the Acton Estate and not for any of the TD Plan Debtors.  Moreover, as Bankruptcy Code section 550 limits recovery "for the benefit of the estate" and the Lehman Creditors contend that fraudulent transfer claims cannot be prosecuted for the benefit of equity holders, the potential recovery on account of the foregoing Fraudulent Transfer Claims would be capped at no more than approximately $1.4 million, the unsecured claims asserted against the Acton estate according to the 2009 SunCal Disclosure Statement.

Even if the fraudulent conveyance alleged with respect to the cross-collateralization of the SCC Palmdale Loan had merit, the value to the estate of SCC Palmdale is zero, as noted by the Voluntary Debtors and Acquisitions.  The collateral, SCC Palmdale's Allowed Interest in Palmdale Hills, therefore is worthless.

Likewise, even if other theories alleged against the Lehman Creditors (described in Article 4.5(c) and (d) of the 2009 SunCal Disclosure Statement) were valid and the requisite

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   insolvency could be proven, the Voluntary Debtors and Acquisitions have conceded that the Claims

2   and Liens of the Lehman Creditors are valid at least to the extent of proceeds received by the

3   obligor/pledgor.  As the proceeds received by TD Plan Debtors SunCal Oak Knoll and SunCal

4   Torrance ($103.5 million and $45 million, respectively) exceed the current estimate from SunCal of

5   the value of the underlying pledged collateral ($25.4 million and $13.5 million, respectively), the

6   Fraudulent Transfer Claims identified in Articles 4.5(c) and (d) of the 2009 SunCal Disclosure

7   Statement are without merit.

8          Finally, with respect to the claims identified in the 2009 SunCal Disclosure Statement

9   relating to the Interim Loan Agreement, assuming insolvency as of the date such obligations were

10   incurred can be proved, the maximum potential liability of the Lehman Creditors would be

11   approximately $1.5 million as to the Tesoro Estate and $4.5 million as to the Del Rio Estate.

12   However, based on the Voluntary Debtors' and Acquisitions' own numbers in the 2009 SunCal

13   Disclosure Statement, the unsecured claims at those estates total approximately $290,000 and

14   $270,000, respectively, therefore capping the maximum potential recovery on account of such

15   alleged Fraudulent Transfer Claims at approximately $560,000.

16          While the Lehman Creditors believe that the Fraudulent Transfer Claims outlined in

17   the SunCal Disclosure Statement are without merit, making assumptions most favorable to the

18   Debtors, the maximum aggregate exposure of Lehman Creditors to such Fraudulent Transfer Claims

19   is no more than approximately $2 million, and the probable value of litigation on such claims

20   significantly less.

21          **(d)     Alleged Preference Claims Against the Lehman Creditors.**

22          The Voluntary Debtors and Acquisitions assert that Delta Coves, SunCal Century

23   City and SunCal Marblehead Heartland Master LLC made prepetition transfers in the one year

24   preceding the Petition Date to Lehman Creditors in the sums of approximately $6.5 million, $10.6

25   million, and $3.4 million, respectively.  The 2009 SunCal Disclosure Statement asserts, without any

26   further support, that these payments are recoverable as preferences.  However, the Lehman Creditors

27   contend that there is absolutely no factual support in the 2009 SunCal Disclosure Statement to

28   support these contentions.  In particular, it would be necessary for the plaintiff to establish balance

1    sheet insolvency (as required by Bankruptcy Code section 547) in order to be able to maintain a

2    preference recovery.  Furthermore, and perhaps more importantly, the Lehman Creditors assert (or in

3    the case of SunCal Century City, at all relevant times asserted) validly perfected first priority

4    security interests and deeds of trust in and to all of the material assets of the Debtors that the

5    Voluntary Debtors and Acquisitions contend may have made alleged preferential transfers.  Under

6    such circumstances, a transfer of some or all of the collateral of a validly perfected secured creditor

7    (even an undersecured creditor) cannot constitute a recoverable preferential transfer as it does not

8    have the effect of depleting assets otherwise available to pay unsecured creditors.  Furthermore, as

9    noted above, the Lehman Creditors contend that pursuant to Bankruptcy Code section 550,

10   preferences can only be recovered for the benefit of unsecured creditors of the transferor.  The

11   Lehman Creditors believe that for these, and other reasons that will be asserted at the appropriate

12   time, the preference claims that have been alleged against them are wholly, or largely, without merit

13   and are unlikely to result in Creditors receiving a meaningful recovery.

14            Finally, the status of any preference claim against Lehman Commercial (which is

15   itself a debtor in a chapter 11 proceeding before the United States Bankruptcy Court for the Southern

16   District of New York) is subject to the treatment in that chapter 11 case.  Specifically, there is a

17   distinct possibility that such a claim may be treated as a general unsecured claim in Lehman

18   Commercial's bankruptcy, which claim is subject to an uncertain recovery.

19            The Voluntary Debtors and Acquisitions also contend that the foreclosure by Lehman

20   ALI on its second priority deed of trust against the Pacific Point Project in August 2008 constituted a

21   preferential transfer because there was no equity value supporting the second priority deed of trust.

22   "Specifically, the fair market value of the Pacific Point Project was and remains approximately $25

23   million and the alleged obligations securing the first deed of trust was approximately $100 million."

24   However, based upon the Voluntary Debtors' and Acquisitions' own assertions, it is clear that the

25   bankruptcy estate of SJD Partners (and in turn, the unsecured creditors of that Estate) were not

26   deprived of any value by virtue of the alleged foreclosure.  Indeed, based upon the 2009 SunCal

27   Disclosure Statement, Lehman ALI, as the beneficiary under the first deed of trust, is undersecured

28   by more than $75 million.  Under these circumstances, no valid preference claims can be asserted

against the Lehman Creditors based on the foregoing transactions.

**(e)     Alleged Fraud, Breach of Fiduciary Duty and Other Potential Litigation Claims Against the Lehman Creditors.**

Article 4.7 of the 2009 SunCal Disclosure Statement purports to set forth further claims against the Lehman Creditors, based upon the Interim Loan Agreement, the Restructuring Agreement of May 2008, and the Pacific Point Foreclosure. However, the narrative contained in the 2009 SunCal Disclosure Statement does not state any claim for relief or theory of recovery against the Lehman Creditors based upon the alleged facts and, in reality, asserts nothing different from the material allegations set forth in the Equitable Subordination Claims (more fully discussed in Article 4.5).

**(f)     Motion to Strike Proofs of Claim with Respect to the Claims of the Lehman Creditors.**

On or before the bar date for filing Proofs of Claim, the Lehman Creditors filed Proofs of Claim on account of all of the Lehman Loans. All or portions of seven of the outstanding loans to the Lehman Creditors (the "Repurchase Lehman Loans") were subject to repurchase agreements with Fenway Capital. The obligations under the subject repurchase agreements with Fenway Capital had been guaranteed by the ultimate parent and Affiliate of the Lehman Creditors, Lehman Brothers Holdings Inc. ("LBHI"). In connection with the Lehman Chapter 11 Case, the subject repurchase agreement was unwound pursuant to an agreement to which Fenway Capital and LBHI also were parties. As a result, Lehman Commercial presently holds whatever interests in the subject loans formerly were held by Fenway Capital, subject to certain claims and interest of LBHI.

Based upon the original repurchase transactions, the Debtors moved to strike certain of the Proofs of Claim filed by the Lehman Creditors on the basis that they allegedly did not own the Repurchase Lehman Loans when the Proofs of Claim were filed. The Lehman Creditors opposed the motion, asserting that they did then own the Repurchase Lehman Loans because the repurchase agreements with Fenway Capital were transfers for security only, and that they had the power and authority to file the related Proofs of Claim.

The Bankruptcy Court held a hearing on the foregoing motion to strike on June 30, 2009. At that hearing, the Bankruptcy Court determined, over the objection of the Lehman

Creditors, that the Repurchase Lehman Loans had actually been "sold" to Fenway Capital (rather than having been pledged to Fenway Capital as collateral for a loan, as asserted by the Lehman Creditors).  The Court entered an order on the foregoing issue on October 2, 2009 and the Lehman Creditors appealed such Order.  A hearing on whether the Lehman Creditors were authorized to file Proofs of Claim as agent for Fenway Capital was held on September 22, 2009 and, on December 21, 2009, the Court issued its Order Regarding Lehman Creditors' Authority To file Proofs Of Claim As Agents Of Fenway Capital, LLC (the "Authority Order"), pursuant to which the Court held, *inter alia*, that "the Lehman Creditors had the requisite authority to file the Proofs of Claim on behalf of Fenway [Capital] as Fenway [Capital]'s Agents pursuant to Rule 3001(b) of the Federal Rules of Bankruptcy Procedure."  The Debtors have appealed.

At the same time, the Lehman Creditors believe, and the Voluntary Debtors continue to dispute, that the Bankruptcy Court, in all events, recognized that not all of the relevant loans ever were Repurchase Lehman Loans.

Even were the appeals all decided adversely to the Lehman Creditors, the Lehman Creditors contend that the only effect would be that the Lehman Creditors would be unable to assert the Lehman Creditor Deficiency Claims against the TD Plan Debtors' Estates.  The Lehman Creditors believe that it is well established and accepted that Creditors need not file Proofs of Claim to preserve their Liens such that even if there were adverse determinations on appeal (such that if it were determined that Fenway Capital owned all equitable interests in the subject Claims and failed to file any timely Claims), such circumstance would not in any way invalidate or impair the subject Liens or any of the rights and remedies relating to such Liens other than the ability to obtain an unsecured deficiency claim.

**(g)** **The Debtors' Disputes Relating to the Allowed Secured Claims of Fenway Capital Pursuant to Bankruptcy Code Section 506.**

Bankruptcy Code section 506(a) provides that an asserted secured claim is only an Allowed Secured Claim to the extent of the value of such Creditors' interest in the Estate's interest in such property.  Bankruptcy Code section 506(d) provides that to the extent a lien secures a claim against a debtor that is not an allowed secured claim, such lien is void subject to certain exceptions. (One such exception where the lien is not voided is where the underlying claim is not filed, as was

alleged as to the Repurchase Lehman Loans).  Finally, Bankruptcy Code section 551 provides that any liens that are void under section 506(d) are preserved for the benefit of the applicable debtor's estate.

The Voluntary Debtors contend that based upon the Lehman Creditors' appraised values of certain Voluntary Debtors' Projects, there is no value to the collateral supporting certain of the Lehman Creditors' Liens against SunCal I, SunCal III, SunCal Bickford and SCC/Palmdale (all Voluntary Debtors).  SunCal I, SunCal III, SunCal Bickford and SCC/Palmdale, on the one hand, and Lehman ALI and Lehman Commercial, on the other hand, entered into a stipulation resolving the valuation of such Liens, which, as of September 10, 2010, was approved both by the Bankruptcy Court in these Cases and by the New York Bankruptcy Court in the Lehman Chapter 11 Case. Although collateral values being less than these liens is unfortunate for all Creditors, (a) as to SunCal Bickford, Lehman VD Lenders hold other more senior Liens on the same collateral that already are in excess of such collateral's value, (b) as to SCC/Palmdale's interest in Palmdale Hills, Lehman VD Lenders hold other senior Liens on the Project of Palmdale Hills, exhausting its value, (c) as to SunCal I, the Lehman VD Lenders are owed over $343 million and likely would dilute the Distributions due to any other Creditors, and (d) SunCal III is not believed to hold any real or personal property from which to obtain a Distribution for any Creditor.

### (h)  2011 Challenges to Lehman Creditors' Claims.

On March 24, 2011, certain Voluntary Debtors, Acquisitions, SunCal Management, SCC Acquisitions, LLC, and Bruce Elieff  filed a complaint in a California state court against, *inter alia*, Lehman Creditor Lehman ALI, entitled *Acton Estates, LLC, et al. v. Lehman ALI, Inc., et al.*, Case No. 30-2011-00460847-CU-BC-CJC, (the "State Court Action"), and served the complaint on certain defendants on April 8, 2011.  The State Court Action seeks recovery of, among other things, up to $100 million in damages from Lehman ALI.  In the view of the Lehman Creditors, all of the claims against Lehman ALI in the State Court Action are intertwined with and overlap claims previously asserted against Lehman ALI in the ES Action.  Lehman ALI, among others, moved to remove the State Court Action to the Bankruptcy Court and the plaintiffs oppose the removal.

On April 26, 2011, certain Voluntary Debtors and SunCal Management filed in

certain cases of Voluntary Debtors and certain cases of Trustee Debtors a claim objection by motion

based upon 11 U.S.C. § 502(d) (the "502(d) Objection").  The 502(d) Objection is premised upon the

alleged failure of the Lehman Creditors to turn over allegedly avoidable prepetition transfers of

property from Debtors.  According to the reply filed by the movants, the 502(d) Objection seeks

"temporary disallowance" pending final resolution of the Lehman Adversary Proceeding of 15

claims against five Trustee Debtors and ten Voluntary Debtors for loans from the Lehman Creditors

aggregating, without duplication, approximately $1.2 billion.  The Lehman Creditors anticipate

filing during the pendency of the currently pending plan processes a motion to permit temporary

allowance of their Claims for voting purposes.

On May 10, 2011, certain Voluntary Debtors and SunCal Management filed in certain

cases of Voluntary Debtors and certain cases of Trustee Debtors a claim objection by motion (the

"Recoupment Objection").  The Recoupment Objection appears to essentially seek to reduce certain

of the Claims of the Lehman Creditors against the secured portion thereof after the Claims are

bifurcated under the Bankruptcy Code into secured and unsecured deficiency claims, with such

reduction against each Claim to be equivalent to the alleged damages suffered by the applicable

Debtor, aggregating as much as $100 million.  The gravamen of the Recoupment Objection appears

to be the same operative facts alleged in the ES Action and alleges the pre-petition assumption by

the Lehman Creditors of various liabilities incurred in the development of the Projects.

**4.3     Significant Events In The Debtors' Chapter 11 Cases.**

**4.3.1    Voluntary Debtors.**

Since the Petition Dates, beginning in November 6, 2008, the seventeen (17)

Voluntary Debtors have continued to operate as a "debtors-in-possession" subject to the supervision

of the Bankruptcy Court.  The Voluntary Debtors are authorized to operate their businesses in the

ordinary course during the Chapter 11 proceedings. Transactions outside the ordinary course of

business must be approved by the Bankruptcy Court.

The Voluntary Debtors' Cases are jointly administered with each other pursuant to

orders entered on November 10, 2008 and November 26, 2008.  The Voluntary Debtors' Cases are

being jointly administered with the Trustee Debtors' Chapter 11 Cases pursuant to an order entered

1    on March 11, 2009.

2      The Voluntary Debtors have employed Winthrop Couchot Professional Corporation

3    as their general insolvency counsel, Morgan Lewis & Bockius LLP as their special litigation counsel

4    for the Southern District of New York and Miller Barondess, LLP as their special litigation counsel.

5      The Voluntary Debtors' Committee has employed Irell & Manella LLP as its counsel

6    pursuant to an order entered on February 13, 2009.

### 4.3.2    Trustee Debtors.

8      Orders for Relief were entered in the involuntary cases beginning on January 6, 2009.

9    The Trustee Debtors are represented by their duly-appointed Chapter 11 trustee, Steven M. Speier,

10    pursuant to orders of the Bankruptcy Court entered on January 15, 2009.

11      The Trustee has employed the Lobel Firm as the Trustee's general insolvency counsel

12    and Miller Baroness LLP as special litigation counsel.

13      The official committee in the Trustee Debtors' Cases has employed Weil and,

14    Golden, Smiley, Wang, Ekvall & Strok, LLP as its counsel.

### 4.3.3    The Debtors' Motions for Relief from Stay in the Lehman Commercial Chapter 11 Proceedings.

17      On November 10, 2008, the Debtors filed a motion for an order modifying the

18    automatic stay in the Lehman Commercial Bankruptcy Proceeding to allow the Voluntary Debtors to

19    administer their own Cases to the extent that such Cases, and the relief requested by such Debtors

20    therein, may affect the rights of Lehman Commercial. The Voluntary Debtors also requested the

21    court to allow the Voluntary Debtors to proceed to obtain post-petition debtor-in-possession

22    financing on a priming lien basis that would subordinate Lehman Commercial's Claims and Liens

23    arising from the Ritter Ranch Loan Agreement and the SunCal Communities I Loan Agreement to

24    those of a proposed debtor-in-possession lender. Lehman Commercial opposed the motion on

25    November 18, 2008 and the objection was joined by the Lehman Commercial Official Creditors'

26    Committee. The motion was denied, without prejudice, by the New York Bankruptcy Court pursuant

27    to an order entered on November 21, 2008.

28      On April 21, 2010, the Debtors filed a motion in the New York Bankruptcy Court

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

seeking relief from Lehman Commercial's automatic stay to, *inter alia*, pursue the ES Action against Lehman Commercial and to prosecute a plan seeking to, *inter alia*, equitably subordinate Lehman Commercial's Claims.  The Trustee subsequently withdrew from the motion.  The Voluntary Debtors further sought a ruling that LBHI's automatic stay does not apply to the foregoing efforts, but if it did, relief from stay should be granted.  The Voluntary Debtors' motion was denied, without prejudice, on May 12, 2010.  On May 28, 2010, the Voluntary Debtors filed a motion in the New York Bankruptcy Court, seeking a stay of that Court's ruling pending appeal.  On June 16, 2010, the Voluntary Debtors' motion was denied.  On June 17, 2010, the Voluntary Debtors filed a motion in the United States District Court for the Southern District of New York, again seeking a stay pending appeal.  On June 21, 2010, the motion was denied.  On August 27, 2010, the United States District Court for the Southern District of New York affirmed the New York Bankruptcy Court's May 12, 2010 ruling, which thereafter was affirmed on December 7, 2010 by the United States Court of Appeals for the Second Circuit.

### 4.3.4    Certain of the Voluntary Debtors' Motion for Surcharge and Use of Cash Collateral.

On January 16, 2009, seven of the Voluntary Debtors filed a motion seeking an order authorizing Palmdale Hills to use and surcharge, pursuant to 11 U.S.C. § 506(c), and/or use the purported cash collateral of Lehman Commercial arising from the Ritter Ranch Loan Agreement, pursuant to 11 U.S.C. § 363(c)(2), in order to pay for the reasonable and necessary maintenance expenses required to preserve the value of such Voluntary Debtors' Projects that are subject to deeds of trust and other security held by Lehman Commercial.

Lehman Commercial objected to the motion and subsequently filed a motion in the New York Bankruptcy Court requesting the New York Bankruptcy Court to enforce its automatic stay as to the motion. The motion was taken off calendar prior to any ruling by the New York Bankruptcy Court.

### 4.3.5    Lehman Commercial's Motions for Relief from the Automatic Stay Against Certain of the Voluntary Debtors' Projects.

On January 23, 2009, Lehman Commercial and Lehman ALI filed in the Bankruptcy

Court various motions for relief from the automatic stay against Palmdale Hills, SCC/Palmdale, SunCal Beaumont, SunCal Summit Valley, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Johannson, and SCC Communities I (the "Lehman Creditors' Stay Motions") pursuant to which Lehman Commercial and Lehman ALI sought to foreclose on, *inter alia,* their deeds of trust encumbering certain of the Debtors' Projects.

On February 4, 2009, the Voluntary Debtors filed an opposition to Lehman Commercial and Lehman ALI's requests for relief from stay. On February 13, 2009, Lehman Commercial and Lehman ALI filed a reply to the Voluntary Debtors' opposition primarily asserting that the ES Action would violate the automatic stay in the Lehman Chapter 11 Case.

On March 10, 2009, the Bankruptcy Court entered an order denying the Lehman Creditors' Stay Motion without prejudice. Lehman Commercial appealed the Bankruptcy Court's order.

On December 15, 2009, the Bankruptcy Appellate Panel ruled that the ES Action may not proceed unless prosecuted in the Lehman Chapter 11 Case or until stay relief is granted in the Lehman Chapter 11 Case. The Voluntary Debtors have appealed. Confirmation of the Plan would moot the appeal as to the VD Plan Debtors.

### 4.3.6    The Debtors' Filing of the ES Action Against the Lehman Creditors.

(*See* Disclosure Statement Section (b) above.)

### 4.3.7    Certain Debtors' Filing of the Sales Procedures Motion.

On February 18, 2009, the Trustee for the Trustee Debtors and certain Voluntary Debtors filed a motion (the "Sale Procedures Motion") seeking approval of overbid procedures for a purchase by D.E. Shaw of a significant portion of the Debtors' assets for $200 million and its purported assumption of certain related bond liabilities personally guaranteed by Elieff. Although the Sale Procedures Motion indicated that D.E. Shaw would assume the bond liabilities as part of its purchase of the properties, there was no such commitment in D.E. Shaw's commitment letter. The commitment letter provided that $175 million of the purchase price would be paid in cash and the remaining $25 million would be in the form of an assumption of some of the Debtors' contractual and other obligations. As part of the Sale Procedures Motion, the Trustee and Debtors seeking relief

conditioned the sale on the disallowance of the Lehman Creditors' credit bid rights and the transfer of their Liens to the Debtors.

On March 10, 2009, the Bankruptcy Court commenced a hearing on the Sale Procedures Motion.  At that hearing, the Bankruptcy Court held that the automatic stay in the Lehman Commercial Bankruptcy Proceeding did not apply to the Sales Procedures Motion and continued the Sales Procedures Motion to March 20, 2009.

At the March 20, 2009 hearing, the parties agreed to continue the Sale Procedures Motion to allow settlement discussions to take place.  The Sale Procedures Motion was continued from time to time.

(a)    **Lehman Commercial's Stay Assertion and the Sales Procedure Motion.**

On March 9, 2009, the Trustee, SCC Communities, Del Rio, and Tesoro filed emergency motions for an order that the automatic stay in the Lehman Commercial Bankruptcy Proceeding does not apply to the Sales Procedures Motion.

On March 10, 2009, Lehman Commercial, Lehman ALI, Northlake Holdings and OVC Holdings filed responses to the emergency motions, asserting that Lehman Commercial's automatic stay prevented the Bankruptcy Court from hearing the Sales Procedures Motion.

On March 10, 2009, the Bankruptcy Court held that the automatic stay in the Lehman Chapter 11 Case does not apply to the Sales Procedures Motion.

(b)    **Danske Bank's Intervention into the Sales Procedures Motion.**

On March 25, 2009, Danske Bank filed a supplemental response to the Sales Procedures Motion. Danske Bank's supplemental response asserts various allegations, including the allegations that Danske Bank has a first-priority deed of trust on the 10000 Santa Monica Project by the virtue of the SunCal Century City Loan Agreement and related loan documents and that the Secured Claim and Lien arising from the SunCal Century City Loan Agreement and related loan documents are not subject to a bona fide dispute because there has been no allegation of wrongdoing by Danske Bank and that Danske Bank is a holder in due course that effectively cuts off any defenses to the loan based on the Lehman Creditors' alleged inequitable conduct.

On April 1, 2009, the Debtors filed a reply to Danske Bank's supplemental response

asserting that Danske is not a holder in due course and that Danske Bank took the assignment of the disputed loan subject to all defenses thereto, including the defense of equitable subordination described below.

In August 2009, the Sales Procedures Motion was modified to exclude the 10000 Santa Monica Project owned by SunCal Century City and to reduce the purchase price to $150 million pursuant to a tentative settlement agreement between Danske Bank and the Trustee.  Based upon disclosures made by the Trustee, pursuant to that settlement agreement, the Trustee will convey the 10000 Santa Monica Project to Danske Bank in exchange for $5.3 million.  The Trustee has further disclosed that the settlement agreement provides that SunCal Century City will retain any right it has, or may have, to pursue any Avoidance Actions against the Lehman Creditors with respect to the 10000 Santa Monica Project and SunCal Century City.

**(c)    Lehman's Disclosure of the Repurchase Agreement Involving Certain Loans with the Debtors.**

On or about April 15, 2009, the Lehman Creditors provided a letter to the Debtors disclosing the Repurchase Lehman Loans.

**(d)    The Modifications to the Sales Procedure Motion.**

The Sales Procedures Motion was thereafter modified to include a purchase of the Assets of only the Trustee Debtors and the D.E. Shaw proposed aggregate purchase price was reduced from $200 million to $195 million.

**(e)    The Continuance of the Sales Procedure Motion.**

As described more fully below in Disclosure Statement Section 4.3.8(b), on December 10, 2009, the Lehman Creditors filed the Stipulation Authorizing Use of Cash Collateral and Approving Financing For Covered Professional Expenses and Granting Administrative Expense Claims by and among Lehman ALI, Northlake Holdings, and OVC Holdings, on the one hand, and the Trustee, and a joint motion to approve such stipulation.  Pursuant to such stipulation, the Lehman Creditors and the Trustee agreed, among other things, to continue the Sale Procedures Motion.  Pursuant to the order entered by the Bankruptcy Court on December 17, 2009, the Court ordered that the Sale Procedures Motion will be continued to a date following the conclusion of the confirmation hearing(s) in connection with any plan of reorganization or liquidation in these Cases.

### 4.3.8    The Lehman Administrative Loans.

#### (a)    The Initial Stipulation.

At a hearing on March 20, 2009, the Bankruptcy Court approved a stipulation (the "April 2009 Financing Stipulation") among Lehman ALI, Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, pursuant to which each of the foregoing Debtors was authorized to borrow from Lehman ALI and Lehman ALI agreed to make individual loans in an aggregate amount equal to $1,790,572 for the purposes of paying the costs and expenses provided in their 30-day budgets and for paying up to $250,000 of certain professional expenses limited to settlement efforts.  The order approving such stipulation was entered on April 17, 2009.  The loan proceeds were used to pay for the most urgent and critical public health and safety issues on certain of the Projects.  The April 2009 Financing Stipulation provided Lehman ALI superpriority administrative status in each of the Debtor borrowers' Estates on account of such loans, and such loans also have priming lien status on all of the borrowing Debtors' Assets with the exception of SunCal Century City in which such loans have junior priority.

#### (b)    The Subsequent Stipulations Regarding Use of Lehman Creditors' Cash Collateral and/or Provision by the Lehman Creditors of Secured or Administrative Loans.

The Lehman Creditors, the Trustee, and the Voluntary Debtors, as applicable, subsequently have entered into additional stipulations providing for financing by the Lehman Creditors and/or consent to the use of the Lehman Creditors' cash collateral.

The following is a breakdown of the VD Plan Debtors' loans (approximate, unpaid net principal amount as of June 1, 2011 with interest accruals through June 30, 2011) from the Lehman Creditors under the applicable financing stipulations and the sum of the Lehman Creditors' Administrative Claim for monies advanced after the Petition Dates:

| LEHMAN DIP LOAN SUMMARY | |
|---|---|
| VD PLAN DEBTOR | LEHMAN ADMINISTRATIVE LOAN TOTAL |
| Acton Estates | $  4,195 |
| SunCal Bickford | $15,548 |
| Palmdale Hills | $45,930 |
| **Total** | **$65,673** |

The following summarizes the various stipulations (including those affecting the Trustee Debtors):

(i)    *Amended Stipulation Pursuant to 11 U.S.C. §§362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying the Automatic Stay to the Extent Necessary* (the "December 2009 Trustee Debtor Financing Stipulation"), by and between Lehman ALI, on the one hand, and the Trustee on behalf of certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated December 8, 2009.  Pursuant to the December 2009 Trustee Debtor Financing Stipulation, each of the Trustee Debtor borrowers was authorized to borrow from Lehman ALI and Lehman ALI agreed to make individual loans in an aggregate amount equal to $2,124,937.00 for the purposes of paying the health and safety costs and expenses provided in their 120-day budgets.  The borrowers' obligations under such stipulation are secured by first priority security interests and liens and superpriority claims (junior only to the claims specified under the December 2009 Trustee Debtor Financing Stipulation), and will be treated as administrative expense claims owed to Lehman ALI.  The December 2009 Trustee Debtor Financing Stipulation was approved by the Bankruptcy Court on an interim basis by the entry of an interim order on November 20, 2009 and on a final basis by the entry of a final order on December 17, 2009.

(ii)    *Stipulation Authorizing Use of Cash Collateral and Approving Financing For Covered Professional Expenses and Granting Administrative Expense Claims* (the "Initial Professional Fees Funding Stipulation"), by and among Lehman ALI, Northlake Holdings, and OVC Holdings, on the one hand, and the Trustee on behalf of the borrowers thereunder, on the other hand,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

dated December 8, 2009. Pursuant to the Initial Professional Fee Funding Stipulation, the Lehman

Creditors consented to the use of their cash collateral and Lehman ALI agreed to make

administrative loans in the maximum total amount of $2,700,000.00 (the "Initial Professional Fees

Funding Amount") to pay certain professional fees and expenses described therein. Pursuant to the

Initial Professional Fee Funding Stipulation, the portions of the Initial Professional Fee Funding

Amount used pursuant to the terms of the stipulation will be treated as administrative expense claims

owed to the Lehman Creditors, as applicable. The Initial Professional Fee Funding Stipulation was

approved by the Bankruptcy Court by the entry of an order on December 17, 2009.

(iii)    *Stipulation By and Between Lehman ALI, Inc. and Chapter 11 Trustee*

*Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority*

*Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense*

*Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the "Initial SunCal Oak Knoll

Financing Stipulation") by and between Lehman ALI, Inc. and the Trustee on behalf of SunCal Oak

Knoll, dated December 7, 2010. Pursuant to the SunCal Oak Knoll Financing Stipulation, Lehman

ALI made a secured loan to SunCal Oak Knoll in an aggregate amount not to exceed $4,400,000.00,

(i) $3,701,700.00 of which was and is to be used by the Trustee solely for the purpose of paying the

costs and expenses related to the abatement, demolition and securing of the hospital structure and of

certain outbuildings and related structures located at the SunCal Oak Knoll Project to be performed

by CST Environmental, Inc. ("CST Environmental") and (ii) $698,300.00 of which was and is to be

used by SunCal Oak Knoll for the purpose of paying CST Environmental as a critical vendor with

respect to prepetition services relating to the SunCal Oak Knoll Project performed by CST

Environmental. The obligations under the SunCal Oak Knoll Financing Stipulation are secured by

first priority security interests and liens and superpriority claims, and will be treated as

administrative expense claims under the Bankruptcy Code. The SunCal Oak Knoll Financing

Stipulation was approved by the entry of an order on January 5, 2010.

(iv)    *Stipulation Pursuant to 11 U.S.C. §§362, 363, and 364: (1) Authorizing the*

*Use of Cash Collateral and Alleged Unencumbered Cash; (2) Approving Postpetition Financing; (3)*

*Providing Administrative Expense Status; and (4) Modifying the Automatic Stay to the Extent*

*Necessary* (the "December 2009 Voluntary Debtor Financing Stipulation") by and between Lehman Commercial, Lehman ALI, Northlake Holdings, OVC Holdings, on the one hand, and certain of the Voluntary Debtors as borrowers thereunder, on the other hand, dated December 8, 2009. The December 2009 Voluntary Debtor Financing Stipulation was approved by the entry of an order by the Bankruptcy Court on December 17, 2009, and Lehman Commercial's entry into the December 2009 Voluntary Debtors' Stipulation was approved by the New York Bankruptcy Court on December 17, 2009.

Pursuant to the December 2009 Voluntary Debtor Stipulation, the parties agreed to the following financing provisions:

(1)    Use of Cash Collateral Held in Ritter Accounts

Lehman Commercial consented to the use by Palmdale Hills of cash collateral held in a certain escrow account in an amount not to exceed $2,191,008.89 solely for the purpose of (i) paying the costs and expenses attributable to the completion of the construction of certain improvements relating to Elizabeth Lake Road located at the Ritter Ranch Project and (ii) reimbursing Palmdale Hills in the amount of $148,560.63 of "Alleged Unencumbered Cash"[9] used to pay such costs and expenses. In the event a party other than a Lehman Creditor (or a nominee and/or successor thereof) purchases the Ritter Ranch Project pursuant to a sale of the Ritter Ranch Project under section 363 of the Bankruptcy Code or otherwise, such purchaser is required to repay such portion of the funds used from the subject escrow account as provided for in the stipulation, in cash, by depositing such amount in such escrow account upon the closing of the sale of the Ritter Ranch Project.

Lehman Commercial also consented to the use by Palmdale Hills of cash collateral held in the Ritter Pledged Account for the health and safety costs set forth in the 120-day budget.

---

[9] Certain of the Voluntary Debtors maintain bank accounts containing cash or cash equivalents, which the Lehman Creditors assert are subject to perfected liens and therefore constitute the Lehman Creditors' "cash collateral" under section 363 of the Bankruptcy Code. The Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents are not subject to perfected liens of the Lehman Creditors and therefore do not constitute "cash collateral" under section 363 of the Bankruptcy Code. The cash and cash equivalents held by the Voluntary Debtors, excluding the cash and cash equivalents (i) held by Fidelity National Title Insurance Company ("Fidelity") in the escrow account (the "ELR Escrow Account") pursuant to that certain escrow agreement (as amended and/or supplemented), dated June 25, 2008, by and among Palmdale Hills, Lehman Commercial and Fidelity and (ii) held by California Bank & Trust in account no. 3090340741 (the "Ritter Pledged Account" and, collectively with the ELR Escrow Account, the "Ritter Accounts"), are referred to in the December 2009 Voluntary Debtors' Stipulation as the "Alleged Unencumbered Cash."

1    Such amounts will be treated as administrative expense claims.

2    　　　　Lastly, Lehman Commercial consented to, and Palmdale Hills was authorized to

3    make, individual loans to the respective borrowers (with the exception of Palmdale Hills) from the

4    Ritter Pledged Account, the proceeds of which will be used by the respective borrowers for the

5    purpose of paying the health and safety costs and expenses attributable to each such borrower as set

6    forth in the 120-day budgets.  All amounts borrowed from the Ritter Pledged Account will be treated

7    as administrative expense claims.

8    　　　　　　　　(2)　　Use of Alleged Unencumbered Cash

9    　　　　The Lehman Creditors also consented to the use by the borrowers of the Alleged

10    Unencumbered Cash for the purpose of paying the reasonable fees and expenses incurred by

11    professionals retained in the Voluntary Debtors' cases and, at the Voluntary Debtors' option, to

12    make loans to the Trustee Debtors for the purpose of paying the professionals retained in the Trustee

13    Debtors' cases.  In addition, the Lehman Creditors consented to the use by each Voluntary Debtor of

14    Alleged Unencumbered Cash held by such Voluntary Debtor in an amount equal to 10% in excess of

15    the amount allocable to each such Voluntary Debtor in the 120-day budgets.  Further, Lehman

16    Commercial consented to the use by Palmdale Hills of Alleged Unencumbered Cash held by

17    Palmdale Hills in an amount equal to 10% in excess of the aggregate amount of the 120-day budget

18    allocable to Palmdale Hills.  Lastly, Lehman Commercial consented to, and Palmdale Hills was

19    authorized to make, from Alleged Unencumbered Cash held by Palmdale Hills, individual loans to

20    each of the other borrowers in amounts equal to 10% in excess of the amounts allocable to each such

21    borrower in the 120-day budgets.  The amounts used by the borrowers under the December 2009

22    Voluntary Debtor Financing Stipulation will be treated as administrative expense claims provided

23    that the conditions set forth in such stipulation have been satisfied.

24    　　　　(v)　　*Stipulation to Enable Timely Payment of Post-Petition Real Property Taxes*

25    *By and Between Lehman ALI, Inc. and Chapter 11 Trustee Pursuant To 11 U.S.C. §§ 362, 363, 364,*

26    *and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens*

27    *and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay to the*

28    *Extent Necessary* (the "Initial Real Property Tax Financing Stipulation"), by and between Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ALI, on the one hand, and the Trustee on behalf of certain of the Trustee Debtors as borrowers

thereunder, on the other hand, dated April 7, 2010.  Pursuant to the Initial Real Property Tax

Financing Stipulation, Lehman ALI agreed, conditioned as set forth in the stipulation, to make

available to each of the borrowers thereunder, individual loans in an aggregate amount not to exceed

$8.7 million, the proceeds of which will be used by the respective borrowers solely for purposes of

paying sufficient amounts to enable them to avoid incurring the 10% penalty for failing to pay the

certain post-petition real property taxes by April 12, 2010.  The obligations under the Initial Real

Property Tax Financing Stipulation are secured by first priority security interests and liens and

superpriority claims (junior only to the claims specified in the Initial Real Property Tax Financing

Stipulation), and will be treated as administrative expense claims under the Bankruptcy Code.  The

Initial Real Property Tax Financing Stipulation was approved by the Bankruptcy Court on an interim

basis by the entry of an order on April 8, 2010 and on a final basis by the entry of an order on April

27, 2010.

(vi)    *Stipulation By and Between Lehman ALI, Inc. and Chapter 11 Trustee*

*Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority*

*Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense*

*Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the "April 2010 Trustee Debtor

Financing Stipulation") by and between Lehman ALI, on the one hand, and the Trustee on behalf of

certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated April 22, 2010.

Pursuant to the April 2010 Trustee Debtor Financing Stipulation, Lehman ALI agreed to make

available to each borrower thereunder individual loans in an aggregate amount not to exceed

$2,185,972.00, the proceeds of which will be used by the respective borrowers solely for purposes of

paying the health and safety costs and expenses attributable to each such borrower's project as set

forth in the 120-day budgets.  Repayment of such loans is secured by first priority security interests

and liens and superpriority claims (junior only to the claims specified in the April 2010 Trustee

Debtor Financing Stipulation), and will be treated as administrative expense claims.  In addition,

Lehman ALI agreed to pay directly to the applicable insurers the insurance premiums in connection

with the provision of insurance coverage for the borrowers' Projects up to the aggregate amount of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

$219,157.00.  The insurance amounts paid by Lehman ALI will be treated as an administrative

expense claims.  The April 2010 Trustee Debtor Financing Stipulation was approved by the

Bankruptcy Court on a final basis by the entry of an order on June 11, 2010.

(vii)    *Stipulation Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Authorizing*

*the Use of Alleged Unencumbered Cash; (2) Granting Administrative Expense Claims; and (3)*

*Modifying Automatic Stay to the Extent Necessary* (the "June 2010 Voluntary Debtor Financing

Stipulation") by and between Lehman ALI, Northlake Holdings, OVC Holdings, on the one hand,

and certain of the Voluntary Debtors as borrowers thereunder, dated June 4, 2010.  Pursuant to the

June 2010 Voluntary Debtor Financing Stipulation, the Lehman Creditors agreed to the borrowers'

use of "Alleged Unencumbered Cash"[10] (i) in the amount of $423,172.00 to pay necessary expenses

to maintain the borrowers' Projects pursuant to 120-day budgets and (ii) amounts necessary to pay

the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' cases

(subject to the conditions set forth in such stipulation).  In addition, Lehman Commercial consented

to and Palmdale Hills was authorized to make, from Alleged Unencumbered Cash held by Palmdale

Hills, individual loans:  (a) to each of the other borrowers solely for the purpose of paying (i) the

costs and expenses attributable to each such borrower as set forth in the budgets attached to the

stipulation and (ii) the reasonable fees and expenses incurred by professionals retained in the

Voluntary Debtors' cases, including Miller Barondess, LLP (the "Miller Firm"); and (b) by separate

Bankruptcy Court approval, to the Trustee Debtors for the purpose of paying the reasonable fees and

expenses incurred by professionals retained in the Trustee Debtors' cases, including the Miller Firm;

provided, however, that: (a) Palmdale Hills is permitted to make individual loans from Alleged

Unencumbered Cash held by Palmdale Hills only to borrowers or Trustee Debtors that have used,

and accordingly no longer hold, any Alleged Unencumbered Cash; and (b) the use of any Alleged

Unencumbered Cash for payments to the Miller Firm will be subject to the terms and conditions set

forth in the *Order Granting Amended Joint Application for Authority to Employ Miller Barondess,*

*LLP as Special Litigation Counsel* [D.E. 1061].  The amounts used by the borrowers under the June

2010 Voluntary Debtor Financing Stipulation will be treated as administrative expense claims

---

[10]   See footnote 9.

provided that the conditions set forth in such stipulation have been satisfied.  In addition, Lehman ALI agreed to pay directly to the applicable insurers the insurance premiums in connection with the provision of insurance coverage for the borrowers' Projects up to the aggregate amount of $42,218.00.  The insurance amounts paid by Lehman ALI will be treated as administrative expense claims.  The June 2010 Voluntary Debtor Financing Stipulation was approved by the Bankruptcy Court on a final basis by the entry of an order on July 9, 2010.

(viii) *Stipulation By and Between Lehman ALI, Inc. and Chapter 11 Trustee, Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507, (1) Approving Senior Secured Superpriority Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Status, and (3) Modifying Automatic Stay to the Extent Necessary* by and between Lehman ALI, on the one hand, and the Trustee on behalf of certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated October 6, 2010 (the "August 2010 Trustee Debtor Financing Stipulation").  Pursuant to the August 2010 Trustee Debtor Financing Stipulation, Lehman ALI agreed to make available to each borrower thereunder individual loans in an aggregate amount not to exceed $2,563,904.00, the proceeds of which shall be used by the respective borrowers solely for purposes of paying the health and safety costs and expenses attributable to each such borrower's project as set forth in the 120-day budgets.  Repayment of such loans is secured by first priority security interests and liens and superpriority claims (junior only to the claims specified in the August 2010 Trustee Debtor Financing Stipulation), and shall be treated as administrative expense claims.  The August 2010 Trustee Debtor Financing Stipulation was approved by the Bankruptcy Court on an interim basis by the entry of an order on October 29, 2010 and on a final basis by the entry of an order on January 5, 2011.

(ix) *Second Stipulation By and Between Lehman ALI, Inc. and Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary (SunCal Oak Knoll, LLC Only)* (the "Second SunCal Oak Knoll Financing Stipulation") by and between Lehman ALI and the Trustee on behalf of SunCal Oak Knoll, dated October 6, 2010.  Pursuant to the Second SunCal Oak

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Knoll Financing Stipulation, Lehman ALI made a secured loan to SunCal Oak Knoll in an aggregate amount not to exceed $2,169,800.00 for the purpose of paying the costs and expenses related to the completion of the remaining demolition and clean-up work to be performed by CST Environmental on the SunCal Oak Knoll Project..  The obligations under the Second SunCal Oak Knoll Financing Stipulation are secured by first priority security interests and liens and superpriority claims, and shall be treated as administrative expense claims under the Bankruptcy Code.  The Second SunCal Oak Knoll Financing Stipulation was approved on an interim basis by the entry of an order on October 29, 2010 and on a final basis by the entry of an order on January 5, 2011.

(x)    *Second Stipulation to Enable Timely Payment of Post-Petition Real Property Taxes By and Between Lehman ALI, Inc. and Chapter 11 Trustee Pursuant To 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary*, by and between Lehman ALI and the Trustee on behalf of certain of the Subject Borrowers' Estates as borrowers thereunder, dated November 12, 2010 ("Second Real Property Tax Financing Stipulation").  Pursuant to the Second Real Property Tax Financing Stipulation, Lehman ALI agreed, conditioned as set forth in the stipulation, to make available to each of the borrowers thereunder, individual loans in an aggregate amount not to exceed $7.2 million, the proceeds of which shall be used by the respective borrowers solely for purposes of paying sufficient amounts to enable them to avoid incurring the 10% penalty for failing to pay the first installment of real property taxes for the year 2010-2011 by December 10, 2010 and the second installment of real property taxes for the year 2010-2011 by April 10, 2011.  The obligations under the Second Real Property Tax Financing Stipulation are secured by first priority security interests and liens and superpriority claims (junior only to the claims specified in the Second Real Property Tax Financing Stipulation), and shall be treated as administrative expense claims under the Bankruptcy Code.  The Second Real Property Tax Financing Stipulation was approved on a final basis by the entry of an order on December 9, 2010.

(xi)    *Stipulation of December 2010 by and Between Lehman ALI, Inc. and Chapter 11 Trustee, Pursuant to 11 U.S.C. §§362, 363, 364, and 507, (1) Approving Senior Secured*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *Superpriority Postpetition Financing, (2) Granting Liens and Providing Superpriority*

2    *Administrative Expense Status, and (3) Modifying the Automatic Stay to the Extent Necessary*, by

3    and between Lehman ALI and the Trustee on behalf of certain of the Subject Borrowers' Estates as

4    borrowers thereunder, dated December 30, 2010 (the "December 2010 Trustee Debtor Financing

5    Stipulation").  Pursuant to the December 2010 Trustee Debtor Financing Stipulation, Lehman ALI

6    may make available, in its sole and absolute discretion, to each borrower thereunder individual loans

7    in an aggregate amount not to exceed $5,200,000.00, the proceeds of which shall be used to pay the

8    costs and expenses attributable to the Estate of each such borrower for the period from December 15,

9    2010 through August 15, 2011 as set forth in periodic budgets to be provided by the Trustee to

10    Lehman ALI and approved by Lehman ALI in its sole and absolute discretion.  Repayment of such

11    loans is secured by first priority security interests and liens and superpriority claims (junior only to

12    the claims specified in the December 2010 Trustee Debtor Financing Stipulation), and shall be

13    treated as administrative expense claims.  The December 2010 Trustee Debtor Financing Stipulation

14    was approved on a final basis by the entry of an order on February 24, 2011.

15             (xii) *Amended Stipulation of February 2011 by and Between Lehman ALI, Inc. and*

16    *the Chapter 11 Trustee Authorizing (I) Financing for Chapter 11 Trustee Professional Fees and*

17    *Expenses of Trustee Debtors and Chapter 11 Trustee and (II) Granting Administrative Expense*

18    *Claims*, by and between Lehman ALI and the Trustee on behalf of the borrowers thereunder, dated

19    March 14, 2011 (the "Second Professional Fee Funding Stipulation"). Pursuant to the Second

20    Professional Fee Funding Stipulation, Lehman ALI agreed to make available, in its sole and absolute

21    discretion, administrative loans in the maximum total amount of $1,000,000.00 (the "Second

22    Professional Fee Funding Amount") to pay certain professional fees and expenses incurred in the

23    Trustee Debtors' cases as described therein, provided that, among other things, such loans shall be

24    made only to borrowers that have used, and accordingly no longer hold, unencumbered cash to pay

25    the fees and expenses set forth in such stipulation.  Pursuant to the Second Professional Fee Funding

26    Stipulation, the portions of the Second Professional Fee Funding Amount used pursuant to the terms

27    of the stipulation shall be treated as administrative expense claims owed to Lehman ALI.  The

28    Second Professional Fee Financing Stipulation was approved on a final basis by the entry of an order

on March 23, 2011.

### (c)    Voluntary Debtors' Surcharging and Financing Motions

On September 1, 2009, five of the Voluntary Debtors and the Trustee for eight of the Trustee Debtors filed the *Voluntary Debtors' and Trustee's Motion for Order (1) Authorizing Surcharge Under 11 U.S.C. Section 506(c), or, In the Alternative, Use of Cash Collateral, and (2) Compelling Release and Turnover of Undrawn Pledged Accounts* (the "Surcharge/Cash Collateral Motion") seeking authority to surcharge collateral pursuant to Bankruptcy Code § 506(c) or use the alleged "cash collateral" of the Lehman Creditors for the purpose of addressing public health, safety and other issues relating to the moving Trustee Debtors' and Voluntary Debtors' Projects.  In the motion, the Trustee for the moving Trustee Debtors and moving Voluntary Debtors proposed a 120-day budget with expenses totaling $6,483,316.  The Lehman Creditors objected to the Surcharge/Cash Collateral Motion.

On October 15, 2009, the Voluntary Debtors filed the *Voluntary Debtors' Motion For Order (1) Approving Acquisition's Proposal, (2) Authorizing Disposition Of Certain Depository Accounts, (3) Rejecting Cost Sharing Agreement With Anaverde LLC, And (4) Turnover Of Funds* (the "Acquisitions Financing Proposal Motion"), which sought authority to use the Lehman Creditors' cash collateral for certain expenses and to authorize loans on an administrative expense basis from SCC Acquisitions to pay professional fees and expenses, up to a cap of $2.7 million.  The Lehman Creditors opposed the motion.

After extensive negotiations, the Lehman Creditors, the Voluntary Debtors and the Trustee entered into the December 2009 Voluntary Debtor Financing Stipulation, pursuant to which the Voluntary Debtors and the Trustee agreed that the Surcharge/Cash Collateral Motion and the Acquisitions Financing Proposal Motion were resolved effective as of December 17, 2009.  The December 2009 Voluntary Debtor Financing Stipulation also provided that the Voluntary Debtors' *Motion for Reconsideration of DIP Order Entered on April 17, 2009* (the "Reconsideration Motion") was deemed withdrawn.  Under the Reconsideration Motion, which was opposed by the Lehman Creditors, the Voluntary Debtors sought reconsideration by the Bankruptcy Court of the April 2009 Financing Stipulation.

### 4.3.9    The Contractors' Successful Motions for Relief from Stay to Pursue the Bond Claims.

Various contractors of the Debtors that were hired to perform work on some of the Projects have filed motions for relief from stay with the Bankruptcy Court to pursue their purported Bond Claims against the Bond Issuers.  These creditors have requested the Bankruptcy Court relief from the automatic stay to allow such creditors to enforce certain Claims that such creditors allege to have against some of the Debtors, including rights to payment under certain surety bonds that are alleged to have been issued in favor of such creditors. The Debtors opposed the motions on the grounds that the various Debtors are indispensible parties. The Court conditionally granted the motions provided that the Bond Claimants are able to sever the Debtors from their proceedings on the surety bonds against the Bond Issuers.

### 4.3.10    The Voluntary Debtors' Motion Pursuant to Bankruptcy Code Section 506(d).

(*See* Disclosure Statement Section 4.2.5(g) above.)

### 4.3.11    The Debtors' Motions to Strike the Claims and Pleadings Arising from the Repurchase Lehman Loans

(*See* Disclosure Statement Section 4.2.5(f) above.)

### 4.3.12    The Debtors' Denied Preliminary Injunction Motion Against the Holders of Bond Claims.

On February 20, 2009, the Debtors filed a complaint and a motion for preliminary injunction, pursuant to which the Debtors sought a preliminary injunction against the Holders of Bond Claims from pursuing such Claims.

On February 23, 2009, the Bankruptcy Court denied the Debtors' request for a temporary restraining order and granted the Debtors' request to require the defendants thereon to show cause why the motion for preliminary injunction should not be granted.

On March 2, 2009, several Bond Claimants objected to the motion for the preliminary injunction. The objections generally alleged that the Debtors failed to show that the balancing of the equities favored granting the preliminary injunction versus the harm to the Bond Claimants.

At a hearing held on March 4, 2009, the Court denied the motion for preliminary injunction and the underlying complaint has subsequently voluntarily been dismissed without prejudice.

### 4.3.13  The Debtors' Potential Preferential Transfers.

The Debtors' Schedules and Statement of Financial Affairs, which are on file with the Bankruptcy Court and available for viewing, provide a list of all payments made to creditors, other than Insiders, for the 90 days preceding the respective Petition Dates, and all payments made to insiders during the one year preceding the respective Petition Dates.

Below is a summary showing the total payments by each VD Plan Debtor to non-insiders within the 90 days preceding the Petition Date for each VD Plan Debtor, as disclosed in the Schedules and Statement of Financial Affairs.

| NAME OF DEBTOR | AMOUNT TRANSFERRED |
|---|---|
| Acton Estates | $1,300.00 |
| SunCal Beaumont | $25,244.97 |
| SunCal Bickford | $133,669.98 |
| SunCal I | $0.00 |
| SunCal Johansson | $26,187.00 |
| Kirby Estates | $0.00 |
| Palmdale Hills | $6,002,491.87 |
| SCC Communities | $500.00 |
| Seven Brothers | $0.00 |
| SunCal Summit Valley | $39,649.77 |
| Tesoro | $659.00 |
| Total | **$6,229,702.59** |

To the extent these Litigation Claims would be against the Lehman Creditors, they believe they have substantial defenses.  In any event, such Litigation Claims against all Lehman Related Parties are waived under the Plan.

### 4.3.14  The Voluntary Debtors' Substantive Consolidation Motion

On September 24, 2009, the Voluntary Debtors filed a motion for substantive consolidation of some, but not all, of the Debtors' assets and liabilities, as well as non-debtor LV Pacific Point LLC.  The substantive consolidation motion did not include the Estates of Seven Brothers, Kirby Estates, SunCal Beaumont or SunCal Johannson, ostensibly for the reason that "such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors do not have a Lehman Creditor as their primary Secured Creditor, do not have any Assets or value, or do not have unsecured creditors". The Lehman Creditors did not believe that the substantive consolidation motion had any merit. The motion was withdrawn, without prejudice to its renewal.

### 4.3.15  Villa San Clemente Turnover Motion against SunCal Marblehead

On April 8, 2010, Villa San Clemente, LLC ("VSC") filed a motion (the "VSC Turnover Motion") for an order determining that certain funds in the approximate amount of $1.2 million held in an escrow account were not property of SunCal Marblehead's estate and/or to compel the Trustee to assume or reject a real property purchase and sale agreement (the "VSC APA") related to the escrowed funds and described by VSC as an "executory contract." The Trustee subsequently filed an opposition to such motion. On May 27, 2010, the Bankruptcy Court entered an order denying the VSC Turnover Motion in its entirety.

On June 10, 2010, VSC filed a motion to reconsider such order (the "VSC Reconsideration Motion"), and the Trustee subsequently filed an opposition to such motion. On August 2, 2010, the Bankruptcy Court entered an order partially granting the VSC Reconsideration Motion solely to the extent that it sought clarification that, in denying the VSC Turnover Motion, the Bankruptcy Court did not make any ruling whether the VSC APA was an executory contract.

### V

### LEHMAN VD LENDERS' PLAN

### 5.1    Treatment of Unclassified Claims.

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority. However, in accordance with Bankruptcy Code § 1123(a)(1), certain types of Claims are not classified in any Classes under the Plan and the Proponents have not placed such Claims in a Class. These Claims are "unclassified." As to Allowed Administrative Claims and Allowed Priority Tax Claims, these Claims are not considered Impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. The treatment of these unclassified Claims is as provided below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 5.1.1    Treatment of Allowed Administrative Claims.

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, and subject to the Administrative Claim Bar Date set forth in the Plan, the Liquidating Trustee shall pay each Allowed Administrative Claim in full, in Cash, by the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred prior to the Effective Date in the ordinary course of post-petition business by the VD Plan Debtors (including, without limitation, post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

### (a)    Treatment and Repayment of the Lehman Administrative Loan(s).

The Lehman Administrative Loans (certain post-petition and pre-Confirmation financing provided by Lehman ALI and/or other Lehman Related Parties pursuant to order(s) of the Bankruptcy Court, as more fully defined above) are Allowed in the amount loaned or advanced by Lehman ALI and/or other applicable Lehman Related Parties after the commencement of the Cases net of any repayment thereof, shall be paid in Cash in full on the Effective Date from the Lehman Creditor Distribution Funding or shall be payable from the Lehman Creditor Distribution Funding at such later time and on such other terms as the Lehman VD Lenders may agree.  Pending any such payment or during a period of voluntary deferral by Lehman ALI and/or Lehman Related Parties, the Lehman Administrative Loans shall continue to have a first priority Lien against the respective Assets securing such loans as of the moment prior to the Effective Date, including any Cash of the VD Plan Debtors, such as may be deposited in the Plan Reserve or Post-Confirmation Accounts, and any proceeds thereof.

### (b)    Administrative Claim Bar Date.

Any Administrative Claim that is subject to an Administrative Claim Bar Date and not filed by the applicable Administrative Claim Bar Date shall not be Allowed, and no Distribution

1    shall be made on account of any such Administrative Claim.

2                    (i)    General Administrative Claim Bar Date.

3                    All applications of Professionals for final Professional Fees for services rendered and

4    for reimbursement of expenses incurred on or before the Effective Date and all other requests for

5    payment of Administrative Claims incurred before the Effective Date under sections 507(a)(2) or

6    507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations

7    and routine post-petition payroll obligations incurred in the ordinary course of the VD Plan Debtors'

8    postpetition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for

9    which the bar date described in the following section shall apply) shall be filed with the Bankruptcy

10    Court and served upon the Liquidating Trustee no later than the General Administrative Claim Bar

11    Date (the first Business Day following the sixtieth (60th) day after the Confirmation Date), unless

12    such date is extended by the Bankruptcy Court after notice to the Liquidating Trustee.  Any such

13    request for payment of an Administrative Claim that is subject to the General Administrative Claim

14    Bar Date and that is not filed and served on or before the General Administrative Claim Bar Date

15    shall be forever barred; any party that seeks payment of Administrative Claims that is required to file

16    a request for payment of such Administrative Claims and does not file such a request by the deadline

17    established in the Plan, shall be forever barred from asserting such Administrative Claims against the

18    VD Plan Debtors, their properties or assets or the successors thereto, including, without limitation,

19    the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

20                    (ii)    Administrative Tax Claim Bar Date.

21                    All requests for payment of Administrative Claims by a governmental unit for Taxes

22    (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion

23    of which occurs or falls within the period from and including the applicable Petition Date through

24    and including the Effective Date ("Administrative Tax Claims") and for which no bar date has

25    otherwise previously been established, must be filed and served on the Liquidating Trustee on or

26    before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the

27    date that the tax return for such tax year or period to which such Taxes relate is required to be filed

28    with the applicable governmental unit. Any Holder of an Administrative Tax Claim that is required

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    to File a request for payment of such Taxes and does not file and properly serve such a request by

2    the applicable bar date shall be forever barred from asserting any such Administrative Tax Claims

3    against the VD Plan Debtors, their properties or assets or the successors thereto, including, without

4    limitation, the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

5                **5.1.2    Treatment of Priority Tax Claims.**

6                Priority Tax Claims are certain unsecured income, employment and other Taxes

7    described by Bankruptcy Code section 507(a)(8).  The Bankruptcy Code requires that each Holder of

8    such a Priority Tax Claim receive the present value of such Claim in deferred Cash payments over a

9    period not exceeding five (5) years from the applicable Petition Date and that such treatment not be

10   less favorable than the treatment accorded to non-priority unsecured creditors.

11               Allowed Priority Tax Claims, if any, shall receive from the Liquidating Trustee (i)

12   equal Cash payments to be made on the last Business Day of each third full-calendar month

13   following the Effective Date, *provided that* the first payment need not be made any sooner than

14   thirty (30) days following the Effective Date and *provided that* such periodic payments are to be

15   payable until November 6, 2013, on which date the final payment shall be due, with all such

16   payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance

17   from the Effective Date, calculated at the nonbankruptcy interest rate applicable on the Effective

18   Date, if any, or (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim

19   and the Liquidating Trustee, provided such treatment is on more favorable terms to the applicable

20   VD Plan Debtor's Estate than the treatment set forth in clause (i) hereof; provided that, prepayments

21   shall be made and permitted with the consent or at the direction of a Lehman VD Lender, including

22   payment in full any time on or after the Effective Date.

23               **5.2    Classification of Claims and Interests.**

24               As required by the Bankruptcy Code, the Plan places Claims and Interests into

25   various Classes according to their right to priority and other relative rights. The Plan specifies

26   whether each Class of Claims or Interests is Impaired or Unimpaired, and the Plan sets forth the

27   treatment each Class will receive. The table below lists the Classes of Claims established under the

28   Plan and states whether each particular Class is Impaired or left Unimpaired by the Plan.  A Class is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"Unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass even if not expressly designated as such. Further, in the event that any alleged Secured Claim is not, or only is partially, Allowed as a Secured Claim, the deficiency amount (Unsecured Deficiency Claim) if Allowed and, where applicable, filed by the Unsecured Deficiency Claim Bar Date, will constitute a Class 7 or Class 8 Claim against the applicable VD Plan Debtor, as more fully set forth below, and will receive the same treatment as provided to other Claims in Class 7 or Class 8 of such VD Plan Debtor, as appropriate. The deficiency amounts with respect to the Claims of Lehman VD Lenders (Lehman Creditor Deficiency Claims) are Allowed General Unsecured Claims in Class 7, provided that, under the Plan, no Lehman Creditor Deficiency Claim is afforded against SCC Communities or Tesoro.

The Plan does not intend to and does not provide for substantive consolidation of any of the VD Plan Debtors for any purpose, *e.g.*, for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests, including calculations of Distributions among creditors, or for the obligations created under the Plan with respect to Distributions for Creditors. Thus, each Allowed Claim in a Class will be deemed to be in one or more subclasses of the applicable VD Plan Debtor as the classification tables herein reflect. If at the hearing on Confirmation, the Proponents establish a reasonable good faith belief that a particular Class or subclass contains no Allowed Claims, such Class or subclass will be disregarded thereat.

THE INVESTIGATION OF CLAIMS AND INTERESTS IS NOT YET COMPLETE, AND THEIR LISTING IN THE PLAN OR IN THE TABLES BELOW SHOULD NOT BE CONSTRUED AS INDICATING OR PROVIDING THAT SUCH CLAIMS ARE ALLOWED UNDER THE PLAN IN ANY RESPECT (WHETHER AS TO AMOUNT OR AS TO STATUS, E.G., AS A SECURED CLAIM, SECURED REAL PROPERTY TAX CLAIM OR SR. SECURED MECHANIC'S LIEN CLAM), EXCEPT AS EXPRESSLY SET FORTH FOR THE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PARTICULAR CLAIM.

**ADDITIONALLY, ALTHOUGH THE LISTED *POTENTIAL* CLASS 3 SR. SECURED MECHANIC'S LIEN CLAIMS ARE CLAIMS AS TO WHICH A MECHANIC'S LIEN MAY HAVE BEEN FILED, SOME OF THE IDENTIFIED CLAIMS AGAINST GROUP I DEBTORS OTHER THAN SUNCAL SUMMIT VALLEY ARE BELIEVED TO BE JUNIOR TO THE LEHMAN SECURED CLAIMS AGAINST THE APPLICABLE PLAN PROJECT AND, THUS, ARE NOT BELIEVED TO BE ENTITLED TO THE TREATMENT AFFORDED IN CLASS 3 FOR ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS, BUT, INSTEAD, IF ALLOWED, ENTITLED TO CLASS 6, 7 OR 8 TREATMENT, AS APPLICABLE.**

The Lehman Secured Claims and Lehman Creditor Deficiency Claims set forth in the tables below are calculated using, *inter alia,* the applicable Project Value for the applicable Plan Project and estimates of Cash Collateral from recent monthly operating reports filed by the Voluntary Debtors.

| CLASS 1: CLASSIFICATION OF SECURED REAL PROPERTY TAX CLAIMS, <u>IF SO ALLOWED</u> | | Class 1 is Unimpaired | Class 1 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 1.1 | Secured Real Property Tax Claim of Los Angeles County against the Ritter Ranch Project | | Palmdale Hills; Palmdale Hills 12 |
| Class 1.2 | Secured Real Property Tax Claim of Placer County against the Bickford Ranch Project | | SunCal Bickford; SunCal Bickford Scheduled Amount |
| Class 1.3 | Secured Real Property Tax Claim of Los Angeles County against the Acton Project | | Acton Estates; Acton Estates 1 |
| Class 1.4 | Secured Real Property Tax Claim of San Bernardino County against the Joshua Ridge Project. | | SCC Communities; SCC Communities Scheduled Amount |
| Class 1.5 | None; Class Number Reserved. | | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class 1.6.1 | Secured Real Property Tax Claim of Placer County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley; Palmdale Hills 97 |
| --- | --- | --- |
| Class 1.6.2 | Secured Real Property Tax Claim of San Bernardino County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley |
| Class 1.6.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arthur Riggs pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.6.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.6.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.6.6 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 1.7 | Secured Real Property Tax Claim of Los Angeles County against the Tesoro Project. | Tesoro; Tesoro 2 |
| | | **Group II Debtors** |
| Class 1.8 | Secured Real Property Tax Claim of San Bernardino County against the property Kirby Estates' property. | Kirby Estates; Kirby Estates Scheduled Amount |
| Class 1.9.1 | Secured Real Property Tax Claim of San Bernardino County against Seven Brothers' property, exclusive of Seller Financing Encumbered Parcels. | Seven Brothers |
| Class 1.9.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class 1.9.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
|---|---|---|
| Class 1.9.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.9.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.10.1 | Secured Real Property Tax Claim of Riverside County against the Beaumont Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Beaumont; SunCal Beaumont 9 |
| Class 1.10.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
| Class 1.10.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
| Class 1.10.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project. | SunCal Beaumont |
| Class 1.11 | Secured Real Property Tax Claim of Stanislaus County against the Johannson Ranch Project. | SunCal Johannson; SunCal Johannson Scheduled Amount |

| CLASS 2:  CLASSIFICATION OF LEHMAN SECURED CLAIMS | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|

| Class | Claims | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
|-------|--------|-----------------------------------|
| | | **Group I Debtors** |
| Class 2.1 | **Ritter Ranch Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Palmdale Hills arising form the Ritter Ranch Loan Agreement in the Allowed Amount of $287,252,096.31 and as an Allowed Secured Claim against the Ritter Ranch Project, all Cash Collateral and PH CFD Bonds in the amount of $98.5 million. | Palmdale Hills; Palmdale Hills: 65 |
| Class 2.2 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Bickford arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Bickford Ranch Project and all Cash Collateral in the amount of $30.1 million. | SunCal Bickford; SunCal Bickford: 16 |
| Class 2.3 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Acton Estates arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Acton Project and all Cash Collateral in the amount of $6.8 million. | Acton Estates; Acton Estates: 6 |
| Class 2.4 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against SCC Communities, arising from the Interim Loan Agreement in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Joshua Ridge Project and all Cash Collateral in the amount of $1.2 million. | SCC Communities; SCC Communities: 9 |
| Class 2.5 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal I arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Interests in SunCal Johannson and SunCal Beaumont and all Cash Collateral in the amount of $3.55 million. | SunCal I; SunCal I: 1 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 2:  CLASSIFICATION OF LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| Class 2.6 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Summit Valley arising from SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against SunCal Summit Valley's portions of the Summit Valley Project, the Interests in Kirby Estates and Seven Brothers, and all Cash Collateral in the amount of $5.05 million. | | SunCal Summit Valley; SunCal Summit Valley: 12 |
| Class 2.7 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against Tesoro rising from the Interim Loan in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Tesoro Project and all Cash Collateral in the amount of $1.9 million. | | Tesoro; Tesoro: 7 |

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 3.1.1 | Mechanic's Lien Claim of Asphalt Professionals or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | | Palmdale Hills; Palmdale Hills 1 and 46 |
| Class 3.1.2 | Mechanic's Lien Claim of Sierra Cascade Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | | Palmdale Hills; Palmdale Hills 33 |
| Class 3.1.3 | Mechanic's Lien Claim of Staats Construction. Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | | Palmdale Hills; Palmdale Hills 51 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3: CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.1.4 | Mechanic's Lien Claim of Southland Farmers, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | | Palmdale Hills; Palmdale Hills 55, 67 and 68 |
| Class 3.1.5 | Mechanic's Lien Claim of Pinnick, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146 (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | Palmdale Hills; Palmdale Hills 62, 63 and 64 |
| Class 3.1.6 | Mechanic's Lien Claim of Chameleon Design Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | | Palmdale Hills; Palmdale Hills 93, 99 |
| Class 3.1.7 | Mechanic's Lien Claim of HD Supply Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | | Palmdale Hills; Palmdale Hills 15 |
| Class 3.1.8 | Mechanic's Lien Claim of Park West Landscape or its assignee or successor against the Ritter Ranch Project in the amount of $27,624.70. | | Palmdale Hills; Palmdale Hills 109 |
| Class 3.2.1 | Mechanic's Lien Claim of MHM Engineers or its assignee or successor against the Bickford Ranch Project in the amount of $8,916. | | SunCal Bickford; SunCal Bickford 5 |
| Class 3.2.2 | Mechanic's Lien Claim of Land Architecture or its assignee or successor against the Bickford Ranch Project in the amount of $100,245. | | SunCal Bickford; SunCal Bickford 6 |
| Class 3.2.3 | Mechanic's Lien Claim of Kiewit Pacific Co. or its assignee or successor against the Bickford Ranch Project in the amount of $1,868,357. | | SunCal Bickford; SunCal Bickford 10 |
| Class 3.2.4 | Mechanic's Lien Claim of ARB, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $1,052,272. | | SunCal Bickford; SunCal Bickford 15 |
| Class 3.2.5 | Mechanic's Lien Claim of Independent Construction or its assignee or successor against the Bickford Ranch Project in the amount of $117,209. | | SunCal Bickford; SunCal Bickford 28 |
| Class 3.2.6 | Mechanic's Lien Claim of Marques Pipeline, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $330,118. | | SunCal Bickford; SunCal Bickford 29 and 30 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, **IF SO ALLOWED** | | Class 3 is Unimpaired | **Class 3 Claim Holders are Not Entitled to Vote** |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Classes 3.3 – 3.5 | None; Claim Numbers Reserved. | | |
| Class 3.6 | Mechanic's Lien Claim of Pacific Soils Engineering or its assignee or successor against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | | SunCal Summit Valley; SunCal Summit Valley 9 |
| | | | **Group II Debtors** |
| Classes 3.7 – 3.9 | None; Claim Numbers Reserved. | | |
| Class 3.10 | Mechanic's Lien Claim of Proactive Engineering or its assignee or successor against the Beaumont Heights Project in the amount of $46,188. (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | SunCal Beaumont; SunCal Beaumont 11 and 12 |

| CLASS 4:  CLASSIFICATION OF OTHER SECURED CLAIMS, **IF SO ALLOWED** | | Class 4 is Unimpaired | **Class 4 Claim Holders are Not Entitled to Vote** |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | | | **Group I Debtors** |
| Class 4.1 | Allowed Other Secured Claims against Palmdale Hills | | Palmdale Hills |
| Class 4.2 | Allowed Other Secured Claims against SunCal Bickford | | SunCal Bickford |
| Class 4.3 | Allowed Other Secured Claims against Acton Estates | | Acton Estates |
| Class 4.4 | Allowed Other Secured Claims against SCC Communities | | SCC Communities |
| Class 4.5 | Allowed Other Secured Claims against SunCal I | | SunCal I |
| Class 4.6.1 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arthur Riggs, pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $801,900. | | SunCal Summit Valley; SunCal Summit Valley 4 |
| Class 4.6.2 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $668,250. | | SunCal Summit Valley; SunCal Summit Valley 5 |

| CLASS 4:  CLASSIFICATION OF OTHER SECURED CLAIMS, **IF SO ALLOWED** | | **Class 4 is Unimpaired** | **Class 4 Claim Holders are Not Entitled to Vote** |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 4.6.3 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project in the amount of $200,000. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.6.4 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $1,246,500. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.6.4 | Allowed Other Secured Claims against SunCal Summit Valley | | SunCal Summit Valley |
| Class 4.7 | Allowed Other Secured Claims against Tesoro | | Tesoro |
| | | | **Group II Debtors** |
| Class 4.8 | Allowed Other Secured Claims against Kirby Estates | | Kirby Estates |
| Class 4.9.1 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $1,388,156. | | Seven Brothers; SunCal Summit 17 |
| Class 4.9.2 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $296,910. | | Seven Brothers; Seven Brothers Scheduled Amount |
| Class 4.9.3 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $880,000. | | Seven Brothers; Seven Brothers Scheduled Amount |
| Class 4.9.4 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $862,000. | | Seven Brothers; Seven Brothers Scheduled Amount |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 4.9.5 | Allowed Other Secured Claims against Seven Brother | | Seven Brothers |
| Class 4.10.1 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $136,229. | | SunCal Beaumont; Palmdale Hills 101 |
| Class 4.10.2 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $130,000. | | SunCal Beaumont; SunCal Beaumont Scheduled Amount |
| Class 4.10.3 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Wayne & Francis Lee pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $650,000. | | SunCal Beaumont; SunCal Beaumont Scheduled Amount |
| Class 4.10.4 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project in the amount of $154,742. | | SunCal Beaumont; SunCal Beaumont 6 |
| Class 4.10.5 | Allowed Other Secured Claims against SunCal Beaumont | | SunCal Beaumont |
| Class 4.11 | Allowed Other Secured Claims against SunCal Johannson | | SunCal Johannson |

| CLASS 5: CLASSIFICATION OF PRIORITY CLAIMS, IF SO ALLOWED | | Class 5 is Unimpaired | Class 5 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 5.1 | Priority Claims (alleged amount - $10,950). | | Palmdale Hills; Palmdale Hills 70 |
| Class 5.2 | Priority Claims (none alleged) | | SunCal Bickford |
| Class 5.3 | Priority Claims (none alleged) | | Acton Estates |

| Class 5.4 | Priority Claims (none alleged) | SCC Communities |
|---|---|---|
| Class 5.5 | Priority Claims (none alleged) | SunCal I |
| Class 5.6 | Priority Claims (none alleged) | SunCal Summit Valley |
| Class 5.7 | Priority Claims (none alleged) | Tesoro |
| | | **Group II Debtors** |
| Class 5.8 | Priority Claims (none alleged) | Kirby Estates |
| Class 5.9 | Priority Claims (none alleged) | Seven Brothers |
| Class 5.10 | Priority Claims (none alleged) | SunCal Beaumont |
| Class 5.11 | Priority Claims (none alleged) | SunCal Johannson |

| CLASS 6:  CLASSIFICATION OF RELIANCE CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS | | Class 6 is Impaired | Class 6 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| Class 6.1 | Reliance Claims against Palmdale Hills | | Palmdale Hills - Various Filed and Scheduled |
| Class 6.2 | Reliance Claims against SunCal Bickford | | SunCal Bickford - Various Filed and Scheduled |
| Class 6.3 | Reliance Claims against Acton Estates | | Acton Estates - Various Filed and Scheduled |
| Class 6.4 | Reliance Claims against SCC Communities | | SCC Communities - Various Filed and Scheduled |
| Class 6.5 | Reliance Claims against SunCal I | | SunCal I - Various Filed and Scheduled |
| Class 6.6 | Reliance Claims against SunCal Summit Valley | | SunCal Summit Valley - Various Filed and Scheduled |
| Class 6.7 | Reliance Claims against Tesoro | | Tesoro - Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 7: CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS[11] | | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 7.1 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of Lehman Commercial or its assignee or successor arising from the Ritter Ranch Loan Agreement in the Allowed Amount of $188,777,242) | | Palmdale Hills |
| Class 7.2 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of: (a) Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $312,616,387 and (b) Lehman ALI or its assignee or successor arising from the Bickford Second Lien Loan Agreement in the Allowed Amount of $56,494,059) | | SunCal Bickford |
| Class 7.3 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $336,421,391) | | Acton Estates |
| Class 7.4 | General Unsecured Claims | | SCC Communities |
| Class 7.5 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $339,666,269) | | SunCal I |
| Class 7.6 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $338,171,317) | | SunCal Summit Valley |
| Class 7.7 | General Unsecured Claims | | Tesoro |

---

[11] The General Unsecured Claims of the Lehman Creditors indicated below are calculated for Lehman Creditor with recourse Secured Claims against a Plan Debtor's Project by deducting the applicable Project Value and Cash Collateral from the total Allowed Claim arising under the subject Lehman Loan, first against the more senior debt. For a Lehman Creditor of an entity that pledged as collateral to the Lehman Creditor interests in another Plan Debtor that owns a Plan Project, such General Unsecured Claims are calculated by deducting from the total Allowed Amount of the subject Lehman Loan, Cash Collateral of the obligor Debtor and the remainders after deducting Allowed Claims against each subsidiary Plan Debtor that owns a Project from the Project Value and its Cash Collateral.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 8:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP II DEBTORS | | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Classes 8.1 – 8.7 | None; Claim Numbers Reserved. | | |
| Class 8.8 | General Unsecured Claims | | Kirby Estates |
| Class 8.9 | General Unsecured Claims | | Seven Brothers |
| Class 8.10 | General Unsecured Claims | | SunCal Beaumont |
| Class 8.11 | General Unsecured Claims | | SunCal Johannson |

| CLASS 9:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | | | **Group I Debtors** |
| Class 9.1 | Settling Bond Issuer-Related Future Work Claims against Palmdale Hills (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 107 was filed in the aggregate penal amount of $24,859,950, and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 54 was filed in the contingent amount of $155,426,657) | | Palmdale Hills – Various Filed and Scheduled |
| Class 9.2 | Settling Bond Issuer-Related Future Work Claims against SunCal Bickford (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 24 was filed in the amount of $2,827,548) (unliquidated) and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 22 was filed in the contingent amount of $155,426,657) | | SunCal Bickford – Various Filed and Scheduled |
| Class 9.3 | Settling Bond Issuer-Related Future Work Claims against Acton Estates (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 7 was filed in the amount of $1,290,000 (unliquidated), and (b) the Claim of Arch, if Allowed, for which | | Acton Estates – Various Filed and Scheduled |

| CLASS 9:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | | |
| Class 9.4 | Settling Bond Issuer-Related Future Work Claims against SCC Communities (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 4 was filed in the amount of $25,000, and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | | SCC Communities – Various Filed and Scheduled |
| Class 9.5 | Settling Bond Issuer-Related Future Work Claims against SunCal I (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 2 was filed in the contingent amount of $155,426,657) | | SunCal I – Various Filed and Scheduled |
| Class 9.6 | Settling Bond Issuer-Related Future Work Claims against SunCal Summit Valley (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 15 was filed in the contingent amount of $155,426,657) | | SunCal Summit Valley – Various Filed and Scheduled |
| Class 9.7 | Settling Bond Issuer-Related Future Work Claims against Tesoro (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 8 was filed in the contingent amount of $155,426,657) | | Tesoro – Various Filed and Scheduled |
| | | | **Group II Debtors** |
| Class 9.8 | Settling Bond Issuer-Related Future Work Claims against Kirby Estates (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 2 was filed in the contingent amount of $155,426,657) | | Kirby Estates – Various Filed and Scheduled |
| Class 9.9 | Settling Bond Issuer-Related Future Work Claims against Seven Brothers (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 1 was filed in the | | Seven Brothers – Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 9:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | contingent amount of $155,426,657) | | |
| Class 9.10 | Settling Bond Issuer-Related Future Work Claims against SunCal Beaumont (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | | Suncal Beaumont – Various Filed And Scheduled |
| Class 9.11 | Settling Bond Issuer-Related Future Work Claims against SunCal Johannson (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 5 was filed in the contingent amount of $155,426,657) | | SunCal Johannson – Various Filed and Scheduled |

| CLASS 10:  CLASSIFICATION OF INTERESTS, IF ALLOWED | | Class 10 is Impaired | Class 10 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote |
|---|---|---|---|
| Class | Interests (and alleged Holders) | | VD Plan Debtor and Basis for Interests |
| Class 10.1 | Interests in Palmdale Hills (of SCC Palmdale). | | Palmdale Hills Scheduled |
| Class 10.2 | Interests in SunCal Bickford (of SunCal I). | | SunCal Bickford Scheduled |
| Class 10.3 | Interests in Acton Estates (of SunCal I). | | Acton Estates Scheduled |
| Class 10.4 | Interests in SCC Communities (of SCC LLC). | | SCC Communities Scheduled |
| Class 10.5 | Interests in SunCal I (of SCC LLC). | | SunCal I Scheduled |
| Class 10.6 | Interests in SunCal Summit Valley (of SunCal I). | | SunCal Summit Valley Scheduled |
| Class 10.7 | Interests in Tesoro (of SCC LLC). | | Tesoro Scheduled |
| Class 10.8 | Interests in Kirby Estates (of SunCal Summit Valley). | | Kirby Estates Scheduled |
| Class 10.9 | Interests in Seven Brothers (of SunCal Summit Valley). | | Seven Brothers Scheduled |

| CLASS 10:  CLASSIFICATION OF INTERESTS, IF ALLOWED | | Class 10 is Impaired | Class 10 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote |
|---|---|---|---|
| Class | Interests (and alleged Holders) | | VD Plan Debtor and Basis for Interests |
| Class 10.10 | Interests in SunCal Beaumont (of SunCal I). | | SunCal Beaumont Scheduled |
| Class 10.11 | Interests in SunCal Johannson (of SunCal I). | | SunCal Johannson Scheduled |

### 5.3    Treatment Of Classified Claims And Interests

Any references in the Plan to Classes 1 through 10 are summary references made for convenience only to the group of subclasses of each such Class.  Voting and treatment for each subclass are to remain distinct. Regardless of the treatment provided in the Plan for any Holder of a Claim, the Holder may agree to accept less favorable treatment and no Creditor will receive more than 100% of its Allowed Claim (plus any interest, fees or other cost or expenses payable under the Plan).  Provisions for treatment below for Holders of Allowed Claims are not an indication that any particular Claim is Allowed unless expressly provided.

### 5.3.1    Treatment of Allowed Secured Real Property Tax Claims (Class 1).

The treatment of any Allowed Secured Real Property Tax Claims (Class 1) under the Plan is as follows:

(a)    A Voting and Impairment.

Class 1 is Unimpaired under the Plan, and each Holder of an Allowed Secured Real Property Tax Claim is not entitled to vote on the Plan.

(b)    Liens.

As of the Effective Date, each Holder of an Allowed Secured Real Property Tax Claim, on account of such Claim, will retain its underlying Liens on the applicable real property collateral pending full payment in accordance with the Plan.

(c)    Distributions and Distribution Dates.

Each Allowed Secured Real Property Tax Claim will receive, on account of such Claim, one of the three following alternative treatments identified immediately below, performance

of which, when due, will be undertaken by the owner of the Plan Project serving as collateral for the subject Claim as its own obligation and that of the Liquidating Trustee, in full and final satisfaction of each such Allowed Secured Real Property Tax Claim.

(i)    Lump Sum Cure Payment - Section 1124(2) Unimpairment.

On the Effective Date, the applicable Allowed Secured Real Property Tax Claim shall be cured and reinstated, and, as so cured and reinstated, shall receive a lump sum payment in full on the Effective Date from the Lehman Plan Funding.  Under this treatment, the Holder of an Allowed Secured Real Property Tax Claim shall be paid Cash on the Effective Date equal to:

(1)  Base Amount:  The amount of such Allowed Secured Real Property Tax Claim, including any applicable costs, fees or charges, but only to the extent all such amounts were due as of the first date (the "Default Date") when last payable without any amounts that only would be due based on the lack of timely payment (and thus excluding any penalties for untimely payment) (the "Base Amount"); plus

(2)  Minimum Damages:  Interest on the Base Amount from the Default Date until payment payable at the federal judgment interest rate applicable as of the Confirmation Date (the "Minimum Damages"); plus

(3)  Additional Damages or Additional Interest:  To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the Minimum Damages (including any contention that a higher penalty or interest rate applies), it will receive the excess as set forth in Disclosure Statement Section 5.6.2(d); or

(ii)    Quarterly Payments.

As permitted by Bankruptcy Code § 1129(a)(9)(D), each Holder of an Allowed Secured Real Property Tax Claim will receive value as of the Effective Date equal to 100% of its Allowed Secured Real Property Tax Claim through equal Cash payments totaling the Allowed Amount of the Claim, including any applicable costs, fees or charges and plus any amounts payable under California Revenue & Taxation Code §§ 2618 & 4103 (whether denominated as interest or

penalties), with each payment to be made on the last Business Day of each third full-calendar month following the Effective Date (*provided that* the first payment need not be made any sooner than thirty (30) days following the Effective Date).  Such periodic payments will continue until November 6, 2013, on which date (within the five-year payment period mandated under section 1129(a)(9)(D)) the final payment will be due.  Prepayments are permitted any time on or after the Effective Date, including payment in full of the Allowed Amount of the Claim, including any applicable costs, fees or charges and <u>plus</u> any accrued amounts payable under California Revenue & Taxation Code §§ 2618 & 4103, but only with the consent of (and will be made if at the direction of) a Lehman VD Lender; or

(iii)    <u>Simple Unimpairment.</u>

As of the Effective Date, the Holder of any Allowed Secured Real Property Tax Claim, on account of such Claim, will have left unaltered its legal, equitable and/or contractual rights as a Holder of such Allowed Secured Real Property Tax Claim and will be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

(iv)    <u>Determination of Applicable Treatment.</u>

For subclasses as to which the taxes do <u>not</u> relate to Seller Financing Encumbered Parcels, the first alternative treatment will be applicable unless the applicable Lehman VD Lender selects and notifies the subject Creditor prior to the Effective Date of its selection of the second or third alternative treatments.

For subclasses as to which the taxes relate to Seller Financing Encumbered Parcels, the third alternative treatment will be applicable unless the applicable Lehman VD Lender selects and notifies the subject Creditor prior to the Effective Date of its selection of the first or second alternative treatments.

### 5.3.2    Treatment of Lehman Secured Claims (Class 2).

The treatment of Lehman Secured Claims (Class 2) under the Plan will be as follows:

(a)    **Voting.**

Class 2 is <u>Impaired</u> under the Plan, and each Holder of a Lehman Secured Claim is <u>entitled to vote</u> on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(b)**    **Liens.**

As of the Effective Date, each Holder of a Lehman Secured Claim, on account of such Claim, will retain its Lehman Claim Liens pending full payment in Cash of both the secured and unsecured portions of its Claim.

**(c)**    **Claims.**

Each Claim of a Lehman VD Lender will be Allowed for voting and all other purposes of the Plan in the amount and with the status as a Secured Claim or General Unsecured Claim as set forth in the Plan's classification tables.

**(d)**    **Disposition of Collateral**

(i)    On the Effective Date, the Plan Projects (other than any Seller Financing Encumbered Parcel designated by a Lehman VD Lender for conveyance in a filed notice) will be conveyed free and clear of Encumbrances other than the Lehman Claim Liens and other Permitted Liens to one or more Lehman Nominees, as designated by the Lehman VD Lender(s) with a Secured Claim against the applicable Plan Project; and

(ii)    On the Effective Date, the Liquidating Trustee will pay all Cash Collateral for a Lehman Secured Claim to the applicable Lehman VD Lender or, may, at the direction of the Lehman VD Lenders, use all or a portion thereof to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof, unless the applicable Lehman VD Lender(s) otherwise directs), with the balance, if any, payable to the applicable Lehman VD Lender; and

(iii)    Any other remaining collateral for a Lehman Secured Claim may be retained and liquidated or sold by the Liquidating Trustee with the Net Cash Proceeds therefrom to be paid to the applicable Lehman VD Lender, *provided that:*

(a)    the Liquidating Trustee and Lehman VD Lenders may agree to any alternative disposition of such collateral, including transfer of the collateral to the applicable Lehman VD Lender or abandonment to the applicable VD Plan Debtor, which abandonment will be deemed to occur on notice from the Liquidating Trustee;

(b)    the Lehman VD Lender, on reasonable notice to the Liquidating Trustee, may require turnover to it of such collateral, including the PH CFD Bonds; and

1    (c)    if no disposition of such collateral occurs within six (6) months after

2    the Effective Date, the Liquidating Trustee will give the Lehman VD Lenders thirty (30) days'

3    notice indicating the Liquidating Trustee's intention to turn over the collateral to a particular

4    Lehman VD Lender and describing the collateral and:

5    (1)    If before the expiration of the notice period, the Lehman VD

6    Lender rejects such turn over, the Liquidating Trustee will abandon such collateral to the applicable

7    VD Plan Debtor, which abandonment will be deemed to occur on subsequent notice from the

8    Liquidating Trustee to the VD Plan Debtor and applicable Lehman VD Lenders; and

9    (2)    If the Lehman VD Lender does not reject such turn over, upon

10    expiration of the notice period, the Liquidating Trustee will turn over such collateral to the

11    applicable Lehman VD Lenders.

12    **5.3.3    Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3).**

13    The treatment of any Allowed Sr. Secured Mechanic's Lien Claims (Class 3) under

14    the Plan will be as follows:

15    **(a)    Voting and Impairment.**

16    Class 3 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Sr. Secured

17    Mechanic's Lien Claim in Class 3, if any, is <u>not entitled to vote</u> on the Plan.

18    The Lehman Proponents dispute that any Mechanic's Lien Claims against any Group

19    I Debtor (other than SunCal Summit Valley) could be Allowed as Sr. Secured Mechanic's Lien

20    Claims because they believe that the Lehman VD Lenders' Liens are senior Encumbrances and there

21    is no value in the junior Liens of the Holders of such Mechanic's Lien Claims against any Group I

22    Debtor.  For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim

23    against any Group I Debtor, the Ballot will afford an opportunity to waive any contention that the

24    Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on

25    the applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or

26    Reliance Claim, thereby affording the Creditor, as more fully set forth below, the opportunity to

27    elect to receive the Lehman Distribution Enhancement if its Claim is Allowed.  **If the Creditor**

28    **holding a Mechanic's Lien Claim against any Group I Debtor instead waits to see whether its**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  **Claim later is deemed to be entitled to "secured" status and it is unsuccessful in such effort,**

2  **even if its Claim is Allowed as a Reliance Claim or General Unsecured Claim, it will only**

3  **receive 1% on its Claim plus a proportional share of Residual Cash and it will not have the**

4  **opportunity to elect to receive the Lehman Distribution Enhancement.**

5  **(b)    Liens.**

6  As of the Effective Date, each Holder of an Allowed Sr. Secured Mechanic's Lien

7  Claim in Class 3, if any, on account of such Claim, will <u>retain its underlying Liens</u> on the applicable

8  collateral pending full payment;

9  **(c)    Distributions and Distribution Dates.**

10  Each Allowed Sr. Secured Mechanic's Lien Claim, if any, will receive, on account of

11  such Claim, one of the two following alternative treatments identified immediately below in full and

12  final satisfaction of any such Allowed Sr. Secured Mechanic's Lien Claim:

13  **(i)    Section 1124(2) Unimpairment.**

14  On the Effective Date, the applicable Allowed Sr. Secured Mechanic's Lien Claim

15  will be cured and reinstated as of the first date when last payable without interest, fees or penalties.

16  The Holder of such Claim will receive from the owner of the Plan Project serving as collateral for

17  the subject Claim (or from the applicable Settling Bond Issuer for Allowed Sr. Secured Mechanic's

18  Lien Claims that also are Settling Bond Issuer-Backed Non-Future Work Claims ), as an obligation

19  of such owner of the Plan Project and the Liquidating Trustee for the applicable Estate, payment in

20  full equal to the amount of such Allowed Sr. Secured Mechanic's Lien Claim due as of the first date

21  when last payable without interest, fees or penalty, plus any interest thereupon from such date until

22  payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any

23  fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any

24  penalty amounts thereof at any time incurred or charged.  Such amounts will be payable in Cash as a

25  lump sum on the Effective Date if the original maturity date has passed as of the Effective Date or,

26  otherwise, will be payable by curing any defaults and paying any fees in Cash on the Effective Date

27  and making further payments in Cash as required under the applicable contract after reinstatement

28  (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)); or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(ii)      Simple Unimpairment.

As of the Effective Date, the Holder of any such Allowed Sr. Secured Mechanic's Lien Claim, on account of such Claim, will have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Sr. Secured Mechanic's Lien Claim and will be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

(iii)      Determination of Applicable Treatment.

The first treatment indicated above will be applicable to each subclass unless, as to such subclass either the Lehman VD Lender with a Secured Claim against the applicable Plan Project or the Lehman Nominee, if any, taking title to such Plan Project selects and, prior to payment, notifies the applicable Creditor or Creditors of its selection of, the second alternative treatment, in which case the second alternative treatment will be applicable; provided that only the first treatment will be applicable for Allowed Sr. Secured Mechanic's Lien Claims that are Settling Bond Issuer-Backed Non-Future Work Claims; and

**(d)      Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)      The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 3, each Holder of an Allowed Lehman-Owned Settling Bond Issuer-Related Claim in Class 3, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) other Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims against Group I Debtors (Class 6), and (iii) Allowed General Unsecured Claims against Group I Debtors (Class 7).

(ii)      Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 3, will forego certain payments from the VD Plan Debtors' Estates for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date or may waive contentions that such Claim is a Secured Claim.  Based on its

ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 9.

### (e)    Unsecured Deficiency Claims.

If a Holder of an Allowed Sr. Secured Mechanic's Lien Claim contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Sr. Secured Mechanic's Lien Claim then, by the Unsecured Deficiency Claims Bar Date (which is no later than the first Business Day that is at least thirty (30) days following the Effective Date) and regardless of any prior Filing of one or more Proofs of Claim by such Holder, such Holder must file (and serve upon the Liquidating Trustee and the Lehman VD Lenders) an amended Proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, inter alia, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if Allowed, shall be treated as a General Unsecured Claim in Class 7 or Class 8, as applicable.  (With respect to Class 7 treatment, the exchange of a Creditors' Assignment / Release for Lehman for the Lehman Distribution Enhancement is a settlement offer under the Plan to be effectuated through the voting / balloting process for the Plan and is not available thereafter and thus is not available to Claims asserted in accordance with this provision.)

### 5.3.4    Treatment of Allowed Other Secured Claims (Class 4).

The treatment of any Allowed Other Secured Claims in Class 4 under the Plan will be as follows:

### (a)    Voting and Impairment.

Class 4 is Unimpaired under the Plan, and each Holder of an Allowed Secured Claim in Class 4, if any, is not entitled to vote on the Plan.

### (b)    Liens.

As of the Effective Date, each Holder of an Allowed Other Secured Claim in Class 4, if any, on account of such Claim, will retain its underlying Liens on the applicable collateral pending full payment.

### (c)    Distributions and Distribution Dates.

Unless agreed otherwise with the applicable Creditor, each Allowed Other Secured Claim, including, without limitation, any Seller Financing Secured Claim, will receive, in full and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

final satisfaction of any such Allowed Other Secured Claim, the first following treatment identified

immediately below <u>unless</u> the Lehman Proponents or any of them selects the second or third

following alternative treatment identified below, in which case the selected alternative treatment will

be applicable:

(i)    <u>Simple Unimpairment.</u>

As of the Effective Date, the Holder of any such Allowed Other Secured Claim in

Class 4, on account of such Claim, will have left unaltered its legal, equitable and contractual rights

as a Holder of such Allowed Other Secured Claim in Class 4 and will be free to pursue its rights and

remedies, if any, against the underlying collateral under applicable nonbankruptcy law; or

(ii)    <u>Unimpairment With Surrender or Abandonment.</u>The

Liquidating Trustee will abandon or surrender to the Holder of any such Allowed Other Secured

Claim in Class 4 the property securing such Allowed Other Secured Claim in Class 4 and will turn

over possession of such collateral to the Holder of such Allowed Other Secured Claim upon the

Filing, prior to the closing of the Case, of a notice so providing therefor either by: (a) any Lehman

VD Lender or (b) the Liquidating Trustee, either with the consent of a Lehman VD Lender or upon

order of the Court after the refusal of the Lehman VD Lenders to provide reasonable financial

support for the maintenance of such property; or

(iii)    <u>Section 1124(2) Unimpairment.</u>

On the Effective Date, the applicable Allowed Other Secured Claim will be cured and

reinstated as of the first date when last payable without interest, fees or penalties.  The Holder of

such Claim will receive, as an obligation of the Liquidating Trustee for the applicable Estate,

payment in full equal to the amount of such Allowed Other Secured Claim in Class 4 due as of the

first date when last payable without interest, fees or penalty, plus any interest thereupon from such

date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law,

plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of

any penalty amounts thereof at any time incurred or charged.  Such amounts will be payable in Cash

as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date

or, otherwise, will be payable by curing any defaults and paying any fees in Cash on the Effective

Date and making further payments in Cash as required under the applicable contract or statute after

reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)).

(iv)    <u>Unsecured Deficiency Claims.</u>

If a Holder of an Allowed Other Secured Claim contends it holds or wishes to assert

an Unsecured Deficiency Claim related to its Allowed Other Secured Claim then, by the Unsecured

Deficiency Claims Bar Date (which is no later than the first Business Day that is at least thirty (30)

days following the Effective Date) and regardless of any prior Filing of one or more Proofs of Claim

by such Holder, such Holder must file (and serve upon the Liquidating Trustee and the Lehman VD

Lenders) an amended Proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, inter

alia, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if

Allowed, shall be treated as a General Unsecured Claim in Class 7 or Class 8, as applicable.  (With

respect to Class 7 treatment, the exchange of a Creditors' Assignment / Release for Lehman for the

Lehman Distribution Enhancement is a settlement offer under the Plan to be effectuated through the

voting / balloting process for the Plan and is not available thereafter and thus is not available to

Claims asserted in accordance with this provision.)

**5.3.5    Treatment of Allowed Priority Claims (Class 5).**

The treatment of any Allowed Priority Claims in Class 5 under the Plan will be as

follows:

(a)    <b>Voting and Impairment.</b>

Class 5 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Priority Claim

in Class 5 is <u>not entitled to vote</u> on the Plan.

(b)    <b>Distributions and Distribution Dates.</b>

Each Holder of an Allowed Priority Claim in Class 5 will be paid, on account of such

Claim as an obligation of the Liquidating Trustee for the applicable Estate, the full amount of such

Allowed Priority Claim in Cash by the later of (i) the Effective Date, and (ii) the date such Allowed

Priority Claim becomes payable in accordance with the terms governing such Allowed Priority

Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 5.3.6    Treatment of Allowed Reliance Claims Against Group I Debtors (Class 6).

The treatment of any Allowed Reliance Claims in Class 6 under the Plan will be as follows:

#### (a)    Voting and Impairment.

Class 6 is Impaired under the Plan, and each Holder of an Allowed Reliance Claim against a Group I Debtor is entitled to vote on the Plan.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.  For any Creditor to vote its Claim as a Reliance Claim, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.

#### (b)    Distributions.

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) will receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

(2)    Lehman Distribution Enhancement.

A Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) unless such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a Reliance Claim in Class 6 (against a Group I Debtor), who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its Reliance Claim in Class 6 is Allowed, have reserved the right to the following

and thereby will receive, on account of such Allowed Claim, the following additional amount in

Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the

Lehman VD Lenders:

(1)    *Additional 39% Recovery (Increasing Recovery to 40%)*:  The Liquidating
Trustee, in addition to the Guaranteed Minimum Distribution, shall pay an additional thirty-
nine percent (39%) of the Allowed Amount of the Allowed Class 6 Reliance Claim against
the applicable Group I Debtor; and

(2)    *Projected Distribution Bump Up to 50% Recovery:* If the Classes 6/7
Distribution Amount as to a particular Group I Debtor does not exceed the Bump Up
Threshold for that Group I Debtor (which Bump Up Thresholds, in the aggregate, total $2.5
million), then, the Projected Distribution Bump Up shall apply and the Liquidating Trustee,
in addition to the Guaranteed Minimum Distribution, instead, shall pay an additional forty-
nine percent (49%) of the Allowed Amount of the Allowed Class 6 Reliance Claim against
the applicable Group I Debtor. Taking into account their good faith estimates of claims
reductions based on their preliminary reviews of Claims, prior conversations with SunCal
Management or its affiliates, and certain anticipated successes in objecting to Claims prior to
Confirmation, as of June 1, 2011, the Lehman Creditors' good faith estimate is that the
Projected Distribution Bump Up shall apply and that the Classes 6/7 Distribution Amounts
relative to the respective Bump Up Thresholds are as follows:

| | Group I Debtor | Bump Up Threshold | Approximate June 1, 2011 Classes 6/7 Distribution Amount Estimates |
|---|---|---|---|
| (i) | Acton Estates, LLC | $ 106,842 | $ 50,000 |
| (ii) | Palmdale Hills Property, LLC | $1,514,533 | $ 705,000 |
| (iii) | SCC Communities, LLC | $ 6,667 | $ 3,000 |
| (iv) | SunCal Bickford Ranch, LLC | $ 532,304 | $ 248,000 |
| (v) | SunCal Communities I, LLC | $ 0 | $ 0 |
| (vi) | SunCal Summit Valley, LLC | $ 292,569 | $ 136,000 |
| (vii) | Tesoro SF, LLC | $ 47,086 | $ 22,000 |
| | **TOTAL** | $2,500,000 | |

(ii)    Distribution of Residual Cash.

Each Holder of an Allowed Reliance Claim against a Group I Debtor, will receive, on

account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed

Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related

Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims

in Class 8.  Residual Cash is expected to be nominal in amount.

(iii)    Distributions for Allowed Bond-Backed Non-Future Work

Claims in Class 6.

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-

Backed Claimants in respect of Allowed Reliance Claims that are Bond-Backed Claims, which, thus,

may be paid or settled by the applicable Settling Bond Issuer (and may be acquired by such Settling

Bond Issuer as part of any such payment or settlement).

**(c)    Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of

Allowed Reliance Claims in Class 6 after the Effective Date as follows:

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed Reliance

Claim in Class 6 or portion thereof that is not a Future Obligation shall be payable within thirty (30)

days following such Claim's Allowance Determination Date;

(2)    Lehman Distribution Enhancement.

For each Allowed Reliance Claim in Class 6 or portion thereof entitled to the Lehman

Distribution Enhancement that is not a Future Obligation, the applicable Lehman Distribution

Enhancement shall be payable by the later of (a) thirty (30) days following such Claim's Allowance

Determination Date and (b) forty-five days following the Effective Date; provided that if the amount

payable therefor is not the maximum amount that might be payable upon resolution of all Disputed

Claims (which resolution would enable, *inter alia*, a determination of whether the Projected

Distribution Bump Up is available), then, the Liquidating Trustee shall make Interim Capped

Distributions pending such final resolution of Disputed Claims.

(ii)      Residual Cash.

Any Distribution of Residual Cash for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, inter alia, the amount of sums available for Distribution and the progress in the claims allowance process.

(iii)      Distributions as to a Future Obligation.

For an Allowed Class 6 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable by the later of: (a) the date determined as set forth otherwise in the Plan for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (e.g., the obligation becomes due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in the Plan.

**(d)      Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)      The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 6, for Allowed Reliance Claims of the Lehman VD Lenders against Group I Debtors, if any:

(1)      the Lehman VD Lenders, as the Holders thereof, will forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)      to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 8.

(ii)      Based on its consent, each Settling Bond Issuer, in lieu of the treatment

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

provided for other Allowed Claims in Class 6, will forego certain payments from the VD Plan

Debtors' Estates for any Allowed Reliance Claims in Class 6 that also are Settling Bond Issuer-

Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to

the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer

will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class

9.

### 5.3.7    Treatment of Allowed General Unsecured Claims Against Group I Debtors (Class 7).

The treatment of any Allowed General Unsecured Claims in Class 7 under the Plan

will be as follows:

#### (a)    Voting and Impairment.

Class 7 is Impaired under the Plan, and each Holder of an Allowed General

Unsecured Claim against a Group I Debtor is entitled to vote on the Plan.  The same Ballot will be

provided to those Creditors believed by the Proponents to hold General Unsecured Claims or

Reliance Claims.  A Creditor can vote its Claim as a General Unsecured Claim or, if eligible, may

mark its Ballot to indicate that it contends it holds a Reliance Claim.

#### (b)    Distributions.

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed General Unsecured Claim in Class 7 will receive, on

account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is

part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD

Lenders.

(2)    Lehman Distribution Enhancement.

A Holder of an Allowed General Unsecured Claim in Class 7 (against a Group I

Debtor)  will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the

Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below)

unless such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a General Unsecured Claim in Class 7, who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its General Unsecured Claim in Class 8 is Allowed, have reserved the right to the following and thereby will receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders:

> Increase to 5% Recovery:  The Liquidating Trustee, in addition to the Guaranteed Minimum Distribution, shall pay an additional four percent (4%) of the Allowed Amount of the Allowed Class 7 General Unsecured Claim against the applicable Group I Debtor.

(ii)    Distribution of Residual Cash.

Each Holder of an Allowed General Unsecured Claim in Class 7, will receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and (iii) other Allowed General Unsecured Claims in Class 7.  Residual Cash is expected to be nominal in amount.

**(c)    Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 7.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed General Unsecured Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired as part of any such payment or settlement).

**(d)    Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of Allowed General Unsecured Claims in Class 7 after the Effective Date as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed General Unsecured Claim in Class 7 or portion thereof that is not a Future Obligation shall be payable within thirty (30) days following such Claim's Allowance Determination Date;

(2)    Lehman Distribution Enhancement.

For each Allowed General Unsecured Claim in Class 7 or portion thereof entitled to the Lehman Distribution Enhancement that is not a Future Obligation, the applicable Lehman Distribution Enhancement shall be payable by the later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; and

(ii)    Residual Cash.

Any Distribution of Residual Cash for an Allowed Class 7 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

(iii)    Distributions as to a Future Obligation.

For an Allowed Class 7 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable by the later of: (a) the date determined as set forth otherwise in the Plan for an Allowed Class 7 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (e.g., the obligation is due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in the Plan.

**(e)    Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)    The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 7, for Allowed General Unsecured Claims in Class 7 of the Lehman VD Lenders:

1    (1)    the Lehman VD Lenders, as the Holders thereof, will forego any

2    payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next

3    paragraph; and

4    (2)    to the extent such Claims are Lehman-Owned Settling Bond Issuer-

5    Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will

6    be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the

7    applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following

8    subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are

9    Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and

10    (iii) other Allowed General Unsecured Claims in Class 7.

11    (ii)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment

12    provided for other Allowed Claims in Class 7, shall forego certain payments from the VD Plan

13    Debtors' Estates for Allowed General Unsecured Claims in Class 7 that also are Settling Bond

14    Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately

15    prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond

16    Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in

17    Class 9.

18    **5.3.8    Treatment of Allowed General Unsecured Claims Against Group II**

19    **Debtors (Class 8).**

20    The treatment of any Allowed General Unsecured Claims in Class 8 under the Plan

21    will be as follows:

22    **(a)    Voting and Impairment.**

23    Class 8 is Impaired under the Plan, and each Holder of an Allowed General

24    Unsecured Claim against a Group II Debtor is entitled to vote on the Plan.

25    **(b)    Distributions:  Lehman Creditor Distribution Funding.**

26    Each Holder of an Allowed General Unsecured Claim in Class 8 will receive, on

27    account of such Claim, a Distribution in Cash equal to the lesser of:

28    (i)    100% of the Allowed Amount of such Claim, plus post-petition interest at the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Federal Judgment Rate applicable on the applicable Petition Date; and

2         (ii)     a Pro Rata distribution of:

3             (1)     any positive sum resulting from subtracting the Allowed Senior

4   Claims against the applicable VD Plan Debtor from the Project Value for the applicable VD

5   Plan Debtor's Plan Project; and

6             (2)     any Residual Cash of the Estate of the applicable VD Plan Debtor;

7   provided that such Pro Rata Distribution shall not be less than 1% of each Allowed Claim.  Residual

8   Cash is expected to be nominal in amount.

9         **(c)**     **Distribution Dates.**

10        Distributions in the amounts provided under the Plan are payable to Holders of

11  Allowed General Unsecured Claims in Class 8 after the Effective Date as follows:

12        (i)     Lehman Creditor Distribution Funding.

13        For each Allowed General Unsecured Claim in Class 8 or portion thereof that is not a

14  Future Obligation, Distributions shall be payable by the later of (a) thirty (30) days following such

15  Claim's Allowance Determination Date and (b) forty-five days following the Effective Date;

16  provided that if the amount payable therefor is not the maximum amount that might be payable upon

17  resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped

18  Distributions pending such final resolution of Disputed Claims.

19        (ii)     Residual Cash.

20        Any Distribution of Residual Cash for an Allowed Class 8 Claim or portion thereof

21  that is not a Future Obligation shall be payable at such times as determined in the sole discretion of

22  the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and

23  the progress in the claims allowance process.

24        (iii)     Distributions as to a Future Obligation.

25        For an Allowed Class 8 Claim or portion thereof that is a Future Obligation, each

26  Distribution due under the Plan is payable the later of: (a) the date determined as set forth otherwise

27  in the Plan for an Allowed Class 8 Claim or portion thereof that is not a Future Obligation; and (b)

28  thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(e.g., the obligation is due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in the Plan.

### 5.3.9    Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 9).

The treatment of any Allowed Settling Bond Issuer-Related Future Work Claims in Class 9 under the Plan will be as follows:

(a)    **Voting and Impairment.**

Class 9 is Impaired under the Plan, and the Holders of the Allowed Settling Bond Issuer-Related Future Work Claims are entitled to vote on the Plan.

(b)    **Distributions and Distribution Dates.**

Allowed Settling Bond Issuer-Related Future Work Claims consist of Allowed Settling Bond Issuer-Backed Future Work Claims and Allowed Settling Bond Issuer-Owned Future Work Claims.  Each Holder of an Allowed Settling Bond Issuer-Related Future Work Claim will receive the following on account of its Claim:

(i)    The related Future Work obligations will be performed, with no penalties to be applicable (and, to the extent applicable, with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date);

(ii)    The initial payment for the performance of the Future Work obligations will be the obligation of the applicable Settling Bond Issuer that issued a Future Work Bond with respect to the subject Claim and will not be an obligation of the Liquidating Trustee, Lehman Nominee or any VD Plan Debtor's Estate;

(iii)    The Lehman Nominee that takes title to the Plan Project to which the subject Claim relates will cooperate in connection with the performance of such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer;

(iv)    As and to the extent provided in the applicable Settling Bond Issuer Agreement (and subject to the terms and conditions thereof):

(1)    A Lehman Related Party(ies) will take an assignment

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

from the applicable Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and Bond Obligors (unless such Claims are released); and

(2)     In exchange therefor, the Lehman Nominee that takes title to the Plan Project to which the subject Claim relates is to reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds; and

(v)     Nonetheless, pursuant to the Bond Modification Discussions or otherwise, the Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim may agree to forego performance or payment for certain Future Work, such as may occur specifically as to such performance or payment of Future Work or through release of the applicable Future Work Bond.

### 5.3.10  Treatment of Allowed Interests (Class 10).

The treatment of any Allowed Interests in Class 10 under the Plan will be as follows:

(a)     Class 10 is Impaired under the Plan, and each Holder of an Allowed Interest is deemed to reject the Plan and is not entitled to vote; and

(b)     On the Effective Date, all such Allowed Interests will be cancelled and each Holder thereof will not be entitled to, and will not, retain or receive any property or interest in property on account of its Interest.

### 5.4     Means of Execution and Implementation of the Joint VD Plan.

#### 5.4.1   Introduction.

This section is intended to address how the Proponents intend to fund and to have implemented the obligations to Creditors under the Plan.  It thus provides information regarding funding sources and mechanisms for the Plan obligations, management of the VD Plan Debtors' Estates after the Effective Date and other material issues bearing upon the performance of the Plan.

#### 5.4.2   The Liquidating Trustee.

The Estate of each VD Plan Debtor will be managed after the Effective Date by the Liquidating Trustee, who, except as otherwise provided in the Plan, will oversee and effectuate the Distributions to Creditors under the Plan, the liquidation of the Remaining Other Assets, and the sale and transfer of the Plan Projects to the Lehman Nominees, and otherwise will implement the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[_____] will be the Liquidating Trustee or, if such Person declines to serve, another Person selected by the Lehman Proponents and approved by the Court shall be the Liquidating Trustee. The person who becomes the Liquidating Trustee, while serving in his capacity as the Liquidating Trustee, will be an agent of each Estate and not a separate taxable entity therefrom. Compensation of the Liquidating Trustee will be reasonable compensation payable from the VD Plan Debtors' Estates after prior notice to, *inter alia*, the Lehman Creditors, Voluntary Debtors' Committee members, and U.S. Trustee and after order of the Bankruptcy Court. The Bankruptcy Court may, by order, replace the Liquidating Trustee in its reasonable discretion. After the Effective Date, the Liquidating Trustee, *inter alia*, will cooperate in granting, perfecting or reflecting perfection of any Liens acknowledged or created or provided for under the Plan, will cooperate with the Lehman Proponents in the claims process and prosecution, resolution or abandonment of any objections to Claims, and will resolve or dismiss any Remaining Litigation Claims, all in accordance with the Plan.

### 5.4.3  Conditions to Confirmation and Plan Effectiveness (and Current Estimates as to Satisfaction of Monetary Conditions Thereto).

Under the Plan, as more fully set forth herein, the Lehman VD Lenders are to be conveyed the Plan Projects (through the Lehman Nominees) and receive releases, as more fully set forth below, and the Liquidating Trustee is to cooperate with any Lehman Related Party in connection with Bond Modification Discussions that any Lehman Related Party desires to initiate. As discussed more fully below, unless waived by the Lehman VD Lenders in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order for this Plan, which Confirmation Order will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, or to the occurrence of the Plan's Effective Date are: (a) first, execution of a Settling Bond Issuer Agreement by certain of the Lehman Related Parties and each Bond Issuer; (b) second, approval of the role and obligations under the Plan of certain of the Lehman VD Lenders and of each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman VD Lender,

1   and LBHI, which may be a party to the applicable Settling Bond Issuer Agreement (as a guarantor of

2   one or more applicable Lehman Nominee's reimbursement obligations thereunder) and may be a

3   source of funding of the Lehman Plan Funding; (c) third, the Lehman VD Lenders not withdrawing

4   the Plan prior to the Effective Date, which withdrawal may occur if (i) as to the Group I Debtors, the

5   Lehman VD Lenders' good faith estimate of the likely maximum amount for the Lehman Plan

6   Funding exceeds $22 million or (ii) as to the Group II Debtors, the Lehman VD Lenders' good faith

7   estimate of all such Debtors' Allowed Senior Claims exceeds $3 million; (d) fourth, confirmation of

8   the Plan as to all of the VD Plan Debtors and the ability to have Effective Dates for all VD Plan

9   Debtors; (e) fifth, the Confirmation Order must be a Final Order in form and substance reasonably

10  satisfactory to the Lehman VD Lenders; and (f) sixth, all agreements and instruments contemplated

11  by the Plan have been executed and delivered and all conditions to their effectiveness satisfied or

12  waived.

13       As to conditions to Confirmation or the occurrence of the Effective Date or to waivers of

14  conditions:

15       (A) As of June 2011, the Lehman Creditors are in negotiations with both Bond Issuers as to

16  settlement and whether the Lehman VD Lenders would waive the Bond Issuer settlement

17  contingency as to either Bond Issuer may depend on the extent to which claim amounts have

18  otherwise been made certain (such as through progress in objecting to claims) and may require

19  further approval of the New York Bankruptcy Court as to the roles and obligations of LBHI and

20  Lehman Commercial;

21       (B) Taking into account their good faith estimates of claims reductions based on their

22  preliminary reviews of Claims, prior conversations with SunCal Management or its affiliates, and

23  certain anticipated successes in objecting to Claims prior to Confirmation, as of June 1, 2011, the

24  Lehman VD Lenders' good faith estimates are that the monetary conditions to Confirmation will be

25  satisfied as follows:

26       (1)    As of June 1, 2011, the Lehman VD Lenders' good faith estimate of Lehman

27  Plan Funding for the Group I Debtors is approximately $19 million, assuming an Effective Date of

28  November 30, 2011, whereas the Lehman Creditors can withdraw the Plan if their good faith

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

estimate prior to the Effective Date of the likely maximum amount for the Lehman Plan Funding for Group I Debtors exceeds $22 million;

(2)    As of June 1, 2011, the Lehman Creditors' good faith estimate of all Group II Debtors' Allowed Senior Claims is approximately $2 million whereas the Lehman Creditors can withdraw the Plan if their good faith estimate prior to the Effective Date of all Group II Debtors' Allowed Senior Claims exceeds $3 million;

(C) Confirmation of the plan as to all VD Plan Debtors may depend in part on plan voting and waivers of this requirement may depend upon the combination of VD Plan Debtors for which the Joint VD Plan can be confirmed;

(D) The Lehman Creditors expect to have scheduled, before votes are due with respect to the Plan, the hearing for approval of the New York Bankruptcy Court of the role and obligations under the Plan of certain of the Lehman Creditors and of each Settling Bond Issuer Agreement (or the material terms thereof); and

(E)  Although multiple plans are pending in the Lehman Chapter 11 Case and although any change in control of the Lehman VD Lenders before the Confirmation Date could affect satisfaction or waiver of conditions, the Lehman VD Lenders have no reason to believe the confirmation of one plan versus another in the Lehman Chapter 11 Case would affect a decision as to the Joint VD Plan.

### 5.4.4    Lehman Plan Funding.

Under the Plan, the Lehman VD Lenders have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding. Additionally, except as expressly provided otherwise in the Plan, Cash that is not Cash Collateral will first be used to pay all Allowed Administrative Claims, and then Allowed Priority Claims, and then Allowed Secured Real Property Tax Claims, and any excess thereof may be held as a reserve by the Liquidating Trustee for Post-Confirmation Expenses in lieu or prior to becoming Residual Cash.  Although one of the Lehman Creditors, Lehman Commercial, is a debtor in a chapter 11 case (administratively consolidated with other cases including that of its indirect parent, LBHI) in which there is substantial prepetition debt,[12] the Lehman Creditors have ample Cash to fulfill their obligations under the Joint

---

[12]  The *Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code,* Dated

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

TD Plan and Joint VD Plan.  In fact, the February 2011 monthly operating report filed on March 18, 2011 in the New York Bankruptcy Court [Docket No. 15194] reflects ending unrestricted cash and investments that includes cash in demand-deposit accounts, money-market funds, treasury bills and other investments held by Lehman Commercial of approximately $2.726 billion and, together with LBHI, a combined total of $3.669 billion.[13]  (In addition to providing the Lehman Plan Funding, the Lehman VD Lenders also have agreed under this Plan to arrange for the applicable Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed Settling Bond Issuer- Backed Future Work Claim and to reimburse the agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond Issuer-Incurred Future Work Obligations arising under any Future Work Bond.)

(a)    <b>Lehman Creditor Distribution Funding.</b>

The Lehman Creditors have agreed under the Plan to fund, to the extent not paid from other designated sources, through permitting use of Cash Collateral or through new transfers of Cash or through other arrangements, the Distributions that Plan Articles IV and VI mandate for the following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative treatment set forth in the Plan is selected), (viii) the Lehman Guaranteed Minimum Distribution, and (ix) as applicable, the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6.

(i)    <u>Lehman Guaranteed Minimum Distribution.</u>

The Lehman VD Lenders have agreed to fund guaranteed, minimum recoveries, of

---

January 25, 2011, filed on January 25, 2011 in the New York Bankruptcy Court [Docket No. 14151], attached as an exhibit to a Request for Judicial Notice being Filed by the Lehman Creditors with the Bankruptcy Court simultaneously with the initial Filing of this disclosure statement, reflects approximately $623.781 billion in claims have been filed against Lehman Commercial and its parent LBHI.  (The validity of some of such claims has been or will be challenged.)

[13]  The *Final Order Pursuant . . . (A) Authorizing Debtors to (I) Continue to Use Existing Cash Management System, as Modified . . .*, entered by the New York Bankruptcy Court on November 6, 2008 [Docket No. 1416], attached as an exhibit to a Request for Judicial Notice, being Filed by the Lehman Creditors with the Bankruptcy Court simultaneously with the initial Filing of this disclosure statement, authorizes LBHI, Lehman Commercial and other affiliated debtors to make transfers of cash to debtor or non-debtor affiliates, as applicable in exchange for liens or notes with respect to the amounts transferred.

one percent (1%) of each Allowed General Unsecured Claim in Class 8 and Class 9 and one percent (1%) of each Allowed Reliance Claim in Class 6 and Class 7, regardless of whether the individual Creditor holding such Claim executes and delivers for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman.

(ii)    <u>Lehman Distribution Enhancement.</u>

For Creditors holding Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6 who do execute and deliver for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman, the Lehman VD Lenders are increasing recoveries for such Allowed Class 6 and 7 Claims (a) four percent (4%) of each Allowed General Unsecured Claim in Class 7 (for a total recovery of five percent (5%) of such Claims) and (b) thirty-nine percent (39%) or forty-nine percent (49%) of each Allowed Reliance Claim in Class 6 (for a total recovery of forty percent (40%) or fifty percent (50%) of such Claims), provided that the higher percentage of enhanced recovery shall be applicable only if and once it is determined that the particular Debtor's Bump Up Threshold (aggregate amount for distributions on certain Class 6 and Class 7 Claims) has not been exceeded.

**(b)    Lehman Post-Confirmation Expense Funding.**

Under the Plan, the Lehman VD Lenders have agreed to pay an amount (with such amount not to exceed $500,000 and which shall not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

**(c)    Funding with Cash Collateral of a Lehman VD Lender.**

If permitted by the applicable Lehman VD Lender, on the Effective Date, the Liquidating Trustee will use Cash Collateral for a Lehman Secured Claim to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof, unless otherwise specified by the applicable Lehman VD Lender) and then to pay the applicable Lehman VD Lender,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

unless it agrees that the Liquidating Trustee, instead, may hold such Cash Collateral in the Plan Reserve for potential use for payment of Post-Confirmation Expenses.

          **(d)**        **Funding with New Cash Payments from a Lehman Related Party.**

        On the Effective Date, the Lehman VD Lenders will cause to be paid to the Liquidating Trustee from new Cash transfers sufficient amounts such that, when combined with other available and designated sources and Cash Collateral for Lehman Secured Claims and Lehman Administrative Loans, the Liquidating Trustee is holding sufficient funds to make the payments required under the Plan to be paid on the Effective Date from Lehman Plan Funding. Thereafter, the Lehman VD Lenders will pay the Liquidating Trustee further amounts at such times as the VD Plan Debtors and the Liquidating Trustee, as applicable, and the Lehman VD Lenders reasonably determine are necessary to enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan Funding.

          **(e)**        **Plan Reserve.**

        All Lehman Plan Funding provided by a Lehman Related Party will be deposited in or held in the Plan Reserve until utilized in accordance with the Plan. The applicable Lehman VD Lender will report the Cash Collateral, while held in the Plan Reserve, as being owned by it for all applicable federal, state and local income tax purposes. To enable the applicable Lehman VD Lender to pay its applicable federal, state and local income tax with respect to amounts in the Plan Reserve, the Liquidating Trustee will distribute to the applicable Lehman VD Lender, or cause to be distributed, forty five percent (45%) of all income and gain earned with respect to amounts in the Plan Reserve no less than annually and prior to any such amounts being otherwise distributed pursuant to the Plan.

          **(f)**        **Terms and Documentation of Lehman Plan Funding.**

        The Liquidating Trustee will be obligated to repay to the applicable Lehman Related Party any Lehman Plan Funding not utilized in accordance with the Plan. The Liquidating Trustee also will be obligated to repay all of the Lehman Post-Confirmation Expense Funding to the extent of Net Cash Proceeds from Remaining Other Assets, based on such funding being a non-recourse loan against Remaining Other Assets and their Net Cash Proceeds as indicated above. Repayments

will be due immediately upon funds therefor becoming available. Repayment obligations will be

secured by a Lien (or replacement Liens as to use of Cash Collateral) (1) of first priority in all funds

in the Plan Reserve and in any Post-Confirmation Account(s) until such funds have been utilized in

accordance with the Plan and (2) a Lien on any Remaining Other Assets, junior only to any other

valid and indefeasible Liens in the Remaining Other Assets. The Liquidating Trustee will

reasonably execute all documents reasonably requested by a Lehman VD Lender to evidence a loan

or use of Cash Collateral constituting Lehman Post-Confirmation Expense Funding and to evidence

any Liens or replacement Liens for the use of Cash Collateral, securing the Liquidating Trustee's

repayment obligations, on terms and in a form reasonably requested by such Lehman VD Lender,

with customary and reasonable provisions for interest, fees and expenses upon the loan(s).

### 5.4.5    Post-Confirmation Expenses and Intercompany Loans.

Limited functions are required to implement the Plan after the Effective Date. The

Liquidating Trustee will need to distribute Cash to Creditors (most of which is being provided by the

Lehman VD Lenders), convey the Plan Projects to the Lehman Nominees, participate and cooperate

with the Lehman VD Lenders in the claim reconciliation and objection processes, and liquidate the

limited Remaining Other Assets. Post-Confirmation Expenses expected to be incurred include:

(a)    Compensation for the Liquidating Trustee for the period following the

Effective Date;

(b)    Expenses for fees of the professionals retained by the Liquidating Trustee

following the Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities

in respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise

on or after the Effective Date consistent with the Plan.

All Post-Confirmation Expenses may be paid by the Liquidating Trustee from the Post-

Confirmation Account(s) upon ten (10) days' prior written notice and opportunity to object provided

to the Lehman Creditors, but without further notice to any others, including Creditors or Holders of

Interests, or approval of the Bankruptcy Court. Any disputes concerning the payment of Post-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Confirmation Expenses will be submitted to the Bankruptcy Court for resolution.  To the extent

readily determinable, Post-Confirmation Expenses attributable to a particular VD Plan Debtor will

be paid from that VD Plan Debtor's Assets consistent with the provisions of the Plan.  To the extent

of available Assets from each VD Plan Debtor, other Post-Confirmation Expenses will be payable by

each VD Plan Debtor Pro Rata consistent with the Plan, provided that after a VD Plan Debtor's

Available Cash or Assets are exhausted, the other VD Plan Debtors will absorb such VD Plan

Debtor's share of unpaid Post-Confirmation Expenses as provided in the Plan, which will be Pro

Rata to the extent reasonably possible.  To the extent one VD Plan Debtor advances funds on behalf

of another, the Liquidating Trustee will book a receivable for the advancing VD Plan Debtor and a

payable for the borrowing VD Plan Debtor.  Payments of intercompany loans between the VD Plan

Debtors made prior to the Confirmation Date will not be funded by the Lehman VD Lenders and are

waived except to the extent of Remaining Other Assets.

### 5.4.6    Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee.

Except as otherwise provided in the Plan or any agreement, instrument or other

document relating to the Plan, on and after the Effective Date, all property of each VD Plan Debtor's

Estate will vest in each respective Estate, free and clear of all Liens.  Except as may be provided in

the Plan, on and after the Effective Date, the Liquidating Trustee may operate the business of each

Estate and may use, acquire or dispose of property and compromise or settle any Claims or Interests

without supervision or approval by the Bankruptcy Court and free of any restrictions of the

Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan

and the Confirmation Order.  On motion to the Bankruptcy Court and consent of the Lehman VD

Lenders, the Liquidating Trustee may elect hereafter to abandon to the VD Plan Debtors' Assets of

inconsequential value.

### 5.4.7    Disposition and Value of Assets

The Assets of the Estates of the VD Plan Debtors consist primarily of certain Projects

(the Plan Projects).  There also may be some Cash, some of which is Cash Collateral for Lehman

Secured Claims and/or Lehman Administrative Loans, and certain Remaining Other Assets,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   including Remaining Litigation Claims.  (Remaining Litigation Claims possibly could result in

2   affirmative recoveries for the Estates or possibly could reduce the size of the Creditor Claims to

3   share in Available Cash for Distribution.)

4                    **(a)        Disposition and Value of the Plan Projects.**

5                    a.        Pursuant to Bankruptcy Code section 1123(a) and the Plan, each Plan Project

6   and all easements and appurtenances thereto and all associated personal property and rights,

7   including the applicable VD Plan Debtor's Estate's right, title and interest in, to and under any

8   development agreements, plans, engineering reports, permits and community facilities district bonds,

9   but excluding subdivision improvement and monumentation agreements, will be sold and conveyed

10  by virtue of the Confirmation Order to the applicable Lehman Nominee (to be identified for each

11  Plan Project by the Lehman VD Lenders by Filing a statement providing such identification) free

12  and clear of any Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) with

13  such Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) not paid in

14  connection with the transaction to attach to the Lehman Creditor Distribution Funding to the extent

15  payment is due therefor under the Plan. in the same priority and subject to the same defenses and

16  avoidability, if any, as before the closing of the transaction.  After conveyance of a Plan Project to a

17  Lehman Nominee, the Lehman Nominee will report the subject Plan Project and related Assets as

18  being owned by it for all applicable federal, state and local income tax purposes.

19                   b.        To facilitate further conveyances of the Plan Projects, the recording of

20  evidence of the conveyances and the identification of specific Encumbrances from which a Plan

21  Project is being sold free and clear or specific Permitted Liens:

22                           (1)        Separate orders, consistent with the Plan, authorizing such

23  conveyances will be issued by the Bankruptcy Court as reasonably requested by the Lehman VD

24  Lenders or applicable Lehman Nominee, which orders will reflect the conveyance of the Plan

25  Projects free and clear of all Encumbrances (other than Lehman Claim Liens and other Permitted

26  Liens) in accordance with the Plan; and

27                           (2)        Entry of the Confirmation Order, without more and thus

28  automatically, will retroactively and prospectively authorize the VD Plan Debtors and the

Liquidating Trustee to take all actions that a Lehman VD Lender or Lehman Nominee believes in good faith to be necessary or appropriate to consummate the transactions contemplated by the Plan, which actions would include execution of the grant deeds, assignments and other documents set forth in a supplemental exhibit to the Plan (Plan Supplement) to be filed by the Lehman Proponents by **October 18, 2011** and which transactions would include conveyance of the Plan Projects to the Lehman VD Lenders or Lehman Nominees as provided in the Plan; and

(3)     At no material cost to the VD Plan Debtors or Liquidating Trustee, upon the reasonable request of a Lehman VD Lender or Lehman Nominee at any time and from time to time on or after the Effective Date and through the closing of the VD Plan Debtors' Cases, and notwithstanding any prior knowledge of a Lehman Creditor or Lehman Nominee, the VD Plan Debtors, prior to the Effective Date, and the Liquidating Trustee, from and after the Effective Date, will, do, execute, acknowledge and deliver, and cause to be done, executed, acknowledged and delivered, all such further reasonable acts, deeds, transfers, conveyances, assignments, powers of attorney or assurances as may be required (i) to transfer, assign, convey and grant all of the Plan Projects to the applicable Lehman Nominees in accordance with the terms of the Plan, (ii) for the acquiring Lehman Nominees to record such transfers, assignments and conveyances of the Plan Projects in the applicable filing offices of the applicable governmental entity or (iii) to otherwise implement the Plan.

c.     The conveyances, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), of the Plan Projects of the Group I Debtors to the Lehman VD Lenders or Lehman Nominees under the Plan, result in a deficiency owed to the Lehman VD Lenders under the applicable Lehman Loans (the "Lehman Creditor Deficiency Claims"), provided that, under the Plan, no Lender Creditor Deficiency Claim is afforded against SCC Communities or Tesoro.  The Allowed General Unsecured Claims of the Lehman VD Lenders and the Allowed Amount thereof with respect to such Lehman Creditor Deficiency Claims shall be fixed for all purposes relevant to the Plan and Disclosure Statement as to all VD Plan Debtors and Creditors at the amounts set forth in Plan Article V, which determination is based, in part, on the Project Values.

d.     Pursuant to the Plan, the Plan Projects of the Group II Debtors shall also be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

conveyed to the Lehman VD Lenders or Lehman Nominees, free and clear of Encumbrances (other than any Lehman Claim Liens and other Permitted Liens), in exchange for the consideration to be provided to Creditors of the Group II Debtors as set forth in Article VI hereof and based on the Lehman Secured Claims against the Holders of Interests in the Group II Debtors (SunCal I and SunCal Summit Valley) and the applicable Project Values less Allowed Claims.

    **(b)**  **Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other Assets.**

    The Remaining Other Assets (other than Cash) will be liquidated by the Liquidating Trustee, and the Net Cash Proceeds therefrom will be available for payment of Claims and Creditors in accordance with the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and subject to the compromises, waivers and releases provided in the Plan, the Liquidating Trustee will retain all Remaining Litigation Claims whether or not pending on the Effective Date. Unless a Litigation Claim is expressly waived, relinquished, released, compromised or settled in the Plan or prior to the Plan's Effective Date in a Final Order, all rights with respect to such Litigation Claims are reserved and the Liquidating Trustee may pursue such Remaining Litigation Claims.  The Liquidating Trustee will not settle or abandon a Remaining Litigation Claim valued at greater than $100,000, if any, without a Lehman VD Lender's consent; and the Lehman VD Lenders may pursue any Remaining Litigation Claim for the applicable Estate or Estates that, upon request, the Liquidating Trustee does not agree to pursue.  Any disputes concerning the settlement or abandonment of a Remaining Litigation Claim will be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.  All Net Cash Litigation Recoveries realized or obtained in respect of Remaining Litigation Claims of the Estates will be promptly deposited into the Post-Confirmation Account(s) or Plan Reserve, as appropriate. Except as otherwise provided in the Plan and the Confirmation Order, the Net Cash Litigation Recoveries will be free and clear of all Encumbrances and will only be expended in accordance with the provisions of the Plan.

    **5.4.8**  **Bond Claims and the Settling Bond Issuer Agreements.**

    **(a)**  **Background.**

    Prior to the Petition Dates for the VD Plan Debtors, the Bond Issuers, at the request of certain VD Plan Debtors, issued certain Project Bonds in connection with the development of the

Plan Projects owned by such VD Plan Debtors. These Project Bonds issued by the Bond Issuers for the benefit of the VD Plan Debtors consist of either Payment Bonds or Performance Bonds (certain of which Payment Bonds and Performance Bonds constitute Future Work Bonds), securing payment to the applicable third party for work performed by such third party for or with respect to the applicable Plan Project and/or for the performance of certain work by the applicable VD Plan Debtor. Although the definitions herein are controlling, the Payment Bonds might typically secure payment to contractors and others who undertook construction work and Performance Bonds might typically guarantee the performance of Bonded Work such as infrastructure improvements to a municipality who has jurisdiction over the development of the applicable Plan Project and who may have executed a development agreement providing for entitlements relating to such Plan Project. Reimbursement to the Bond Issuer for any payments made under or any liabilities or obligations incurred by such Bond Issuer with respect to the Project Bonds were guaranteed or indemnified by the Bond Obligors.

Prepetition, Bond Issuers are believed to have paid and/or settled with some of the third party beneficiaries of Project Bonds (and, in certain instances, received an assignment of the Claims held by such third parties upon such payment or settlement). As a result, the Claims, if any, of a Bond Issuer against the applicable VD Plan Debtor and relating to such Project Bonds would be non-contingent.

As of the applicable Petition Dates, various other third parties with Bond-Backed Claims allege that they held unpaid or unsatisfied Claims secured by Project Bonds of the Bond Issuers. The Claims, if any, of a Bond Issuer relating thereto would have been contingent.

After the Petition Dates, Bond Issuers are believed to have continued paying and/or settling with Bond-Backed Claimants secured by Project Bonds. To the extent such occurred, any Claim of a Bond Issuer relating thereto may have become non-contingent. Still, there remain Bond-Backed Claimants holding Bond-Backed Claims secured by Project Bonds (including Future Work Bonds) that remain unpaid or unsatisfied. The Claims, if any, of a Bond Issuer relating thereto are contingent.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(b)    Settling Bond Issuer Agreement.**

Absent a settlement with each of the Bond Issuers, each Allowed Bond Claim related to a Future Work Bond[14] will be classified and treated under the Plan as either a Reliance Claim in Class 6 or a General Unsecured Claim in Class 7 or Class 8, depending on which definition the Claim fits within.  Yet, one or both Bond Issuers have contended that: (i) should a Bond Issuer be required to pay or perform under a Project Bond because of a demand from a municipality that is the beneficiary of the Project Bond, the costs for improving the subject Plan Project can be recovered upon sale or transfer of the Plan Project from its subsequent owner; and (ii) absent consent of the applicable Bond Issuer, the Project Bonds must be replaced on sale or transfer of each applicable Plan Project.  Although the Lehman Creditors dispute these contentions, to facilitate confirmation of the Plan, certain of the Lehman Related Parties (including the Lehman Nominees taking title to Plan Projects as to which there are related Bond-Backed Claims secured by Future Work Bonds) are prepared to enter into agreements with respect to certain matters relating to the Allowed Bond-Backed Claims secured by Future Work Bonds.

Under each Settling Bond Issuer Agreement (which shall be subject to further terms and provisions as may be agreed upon by the parties to a Settling Bond Issuer Agreement) and as part of the Lehman Creditor Distribution Funding, the Lehman Nominee that takes title to a Plan Project for which Future Work Bonds were issued and remain outstanding as of the Effective Date, in consideration for an assignment of certain Allowed Claims from the applicable Settling Bond Issuer as described below (or a release thereof), *inter alia*, will reimburse and or commit to reimburse such Settling Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising in connection with the satisfaction of such Settling Bond Issuer's obligations to Bond-Backed Claimants under Future Work Bonds issued by such Settling Bond Issuer and related to such Allowed Claims and may agree to other terms, including with respect to bond premiums, replacement of bonds and others.  Such reimbursement obligations of each applicable Lehman Nominee will be collateralized or credit enhanced in one (and only one) of the following two

---

[14] Such Allowed Bond Claim would be "related" to a Future Work Bond either because such Claim is a Bond-Backed Claim relating to the payment or performance of Future Work secured by a Future Work Bond or because such Claim is a Bond Issuer Claim arising from the exposure and liability of the Bond Issuer under a Future Work Bond.

manners (subject to further terms and provisions as may be agreed upon by the parties to a Settling

Bond Issuer Agreement), as determined by the Lehman VD Lenders in their sole and absolute

discretion (the applicable type of collateral or credit enhancement being provided by any particular

Lehman Nominee being referred to herein as the "Future Work Obligation Collateral"):  (a) a first

Lien deed of trust encumbering the applicable Plan Project owned by such Lehman Nominee and

securing the reimbursement obligations of such Lehman Nominee to the applicable Settling Bond

Issuer, or (b) a guarantee of such Lehman Nominee's reimbursement obligations provided by LBHI,

which guarantee obligation of LBHI will be an administrative claim in the New York Bankruptcy

Cases.  In turn, the applicable Settling Bond Issuer will agree that such Settling Bond Issuer, itself,

will not receive the full amount otherwise due under the Plan from the VD Plan Debtors' Estates

with respect to the Settling Bond Issuer-Owned Claims or any other Claims it may have (provided

that, with respect to Settling Bond  Issuer-Owned Future Work Claims, it will receive the applicable

cooperation and reimbursement from the applicable Lehman Nominees and the applicable Future

Work Obligation Collateral as described above).  Further, under each Settling Bond Issuer

Agreement, the applicable Settling Bond Issuer would agree to cooperate with and assist, if and to

the extent agreed to by the parties under the applicable Settling Bond Issuer Agreement, the Lehman

Related Parties in connection with the Bond Modification Discussions.

Moreover, under each Settling Bond Issuer Agreement, as reflected in the Plan, the

applicable Settling Bond Issuer will agree to assign to the Lehman VD Lenders or another Lehman

Related Party (as determined by the Lehman VD Lenders) or otherwise release, effective as of the

Effective Date, certain Settling Bond Issuer-Owned Claims held by the applicable Settling Bond

Issuer as of the Effective Date and certain Claims acquired by such Settling Bond Issuer thereafter,

as well as certain rights and claims that the Settling Bond Issuer may have against the Bond

Obligors. Upon assignment by the applicable Settling Bond Issuer of Settling Bond Issuer-Owned

Non-Future Work Claims to a Lehman VD Lender or other Lehman Related Party under the Plan,

such Lehman VD Lender or other Lehman Related Party shall be entitled to the proportional share of

the Residual Cash attributable to such Allowed Claim, as more fully set forth in this Plan.  To the

extent that on or after the Effective Date, the applicable Settling Bond Issuer acquires claims that

were to be assigned or released if acquired on or before the Effective Date by the Settling Bond Issuer Release for Lehman Released Parties, promptly thereafter, the applicable Settling Bond Issuer shall execute an assignment / release for the benefit of the Liquidating Trustee and Lehman Released Parties.

Thus, whereas other Creditors are to receive the Lehman Distribution Enhancement with respect to each Allowed General Unsecured Claim or Allowed Reliance Claim that they hold if they execute and deliver the Creditor Assignment / Release for Lehman, under a Settling Bond Issuer Agreement, the applicable Settling Bond Issuer is to receive treatment under the Plan providing less for its Settling Bond Issuer-Owned Non-Future Work Claims and is to receive an agreed-upon reimbursement essentially for all of the Settling Bond Issuer-Incurred Future Work Obligations arising from Future Work Bonds relating to the Allowed Settling Bond Issuer-Related Future Work Claims with such Settling Bond Issuer agreeing to waive payment for any obligations which are not required to be reimbursed pursuant to the terms of the applicable Settling Bond Issuer Agreement.

### (c)    Bond Modification Discussions.

There may be discussions and efforts to approach and initiate discussions by Lehman Related Parties, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman VD Lenders or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds (including Holders of Class 9 Settling Bond Issuer-Backed Future Work Claims), regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding ("Bond Modification Discussions").  Pursuant thereto or otherwise, agreement may be reached by all applicable parties either (a) as to the timing, scope or other matters with respect to certain Future Work or its performance or (b) to forego performance or payment for certain Future Work directly or

through release of the applicable Future Work Bond.

### 5.4.9    Releases for Lehman Released Parties.

In exchange for, *inter alia*, the Lehman Plan Funding, various releases are to be afforded for the benefit of the Lehman Released Parties.

### (a)    Creditors' Assignments / Releases for Lehman.

In exchange for the Lehman Distribution Enhancement, underline each Creditor who holds a Reliance Claim or General Unsecured Claim against a Group I Debtor and checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written assignment or assignment and release in accordance with this Plan, whether or not the Creditor votes in favor of the Plan, automatically upon the occurrence of the Effective Date, assigns to the applicable Lehman VD Lender (or if multiple applicable Lehman VD Lenders, to the Lehman VD Lender holding the most senior Lien against the applicable Plan Project) all rights, benefits and interests of the assigning Holder, including, without limitation, Proofs of Claim and Encumbrances (each a "Claim Right" and, collectively, the "Claim Rights") with respect to each of such Holder's Reliance Claims, General Unsecured Claims, and, if any, Lehman Released Claims held as of the Disclosure Hearing Date and as might arise after the Disclosure Hearing Date as a result of an avoided transfer, with such assignment to be effective immediately upon the Effective Date. Such assignments are to be effective to the greatest extent permitted by applicable law and shall not require anything or any action for their effectiveness except as expressly provided herein. To the extent any such assignment is not effective to assign all of any such Reliance Claim, General Unsecured Claim or Lehman Released Claim or all of any such Claim Rights, each Holder of the applicable Reliance Claim or General Unsecured Claim who, in exchange for the Lehman Distribution Enhancement, checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written release or assignment and release in accordance with this Plan, automatically upon the occurrence of the Effective Date, unconditionally, irrevocably and generally releases, acquits and forever discharges, waives and relinquishes the Holder's General Unsecured Claims, Reliance Claims and Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the VD Plan Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and all Lehman Released Parties, including, without limitation, the Lehman Nominees, with such

release to be effective immediately after the moment that the assignment was to become effective.

Such releases are to be effective to the greatest extent permitted by applicable law and shall not

require anything or any action for their effectiveness except as expressly provided herein. **SUCH**

**RELEASES INCLUDE AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY**

**WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW**

**OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH**

**READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS**

**ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each releasing Creditor, by the release, waives and relinquishes any right or benefit

that such Creditor has or may have under section 1542 of the California Civil Code or any similar

provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent

that such releasing Creditor may lawfully waive such rights and benefits pertaining to the subject

matter of the release set forth above. In that regard, each such releasing Creditor, by the release,

further acknowledges that such Creditor is aware that such Creditor or the attorneys of such Creditor

may hereafter discover claims or facts in addition to or different from those which such Creditor or

such attorneys now know or believe to exist with respect to the subject matter of the release, and that

it is each such releasing Creditor's intention fully, finally, and forever to settle and release the

Holder's General Unsecured Claims, Reliance Claims, Lehman Released Claims (including such

Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim

Rights with respect thereto from and against the VD Plan Debtors and all Lehman Released Parties,

including, without limitation, the Lehman Nominees. Through the release, each such releasing

Creditor is expressly acknowledging that it understands that, notwithstanding the discovery or

existence of any such additional or different claims or facts, the release shall be and remain in full

force and effect as a full and complete general release with respect to the Holder's General

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Unsecured Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise

2    after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect

3    thereto from and against the VD Plan Debtors and all Lehman Released Parties, including, without

4    limitation, the Lehman Nominees. Through the release, each such releasing Creditor further

5    acknowledges that no released Person has made any representation of any kind or character

6    whatsoever in order to induce the execution of the release other than the Disclosure Statement for

7    which certain released Persons are Proponents, subject to its disclaimers.

8         In each case, neither the assignment nor the release shall include for General

9    Unsecured Claims or Reliance Claims (including such Claims as might arise after the Disclosure

10    Hearing Date as a result of an avoided transfer) (1) a Creditor's rights under this Plan to the Lehman

11    Creditor Distribution Funding and (2) the proportional share of Residual Cash attributable under the

12    Plan to the Claims so assigned or released.  Moreover, for clarity, (A) neither the assignment nor the

13    release shall preclude a Creditor holding an assigned or released Claim from opposing or responding

14    defensively to the Filing of an objection to such Claim or request for determination of such Claim's

15    status as a Reliance Claim (nor preclude such Filing of an objection to the Claim or request for

16    determination of such Claim's status as a Reliance Claim); (B) neither the assignment nor the release

17    includes any claim of a Creditor against a Bond Issuer arising under a Project Bond to the extent

18    such claim is severable from any and all of such Creditor's General Unsecured Claims, Reliance

19    Claims, Lehman Released Claims and Claim Rights; and (C) neither the assignment nor the release

20    shall preclude a Creditor against which the Liquidating Trustee asserts a Remaining Litigation Claim

21    from opposing or responding defensively to such Remaining Litigation Claim, including assertion of

22    its Claims for offset, recoupment or setoff purposes (nor preclude the Liquidating Trustee from

23    asserting any Remaining Litigation Claims against such Creditor).

24         On or as soon as practicable after the Effective Date, the assigning and/or releasing

25    Creditor shall dismiss (with prejudice) all litigation pending against a Lehman Released Party with

26    respect to a Lehman Released Claim, with all parties to bear their own costs and professional fees.

27    The assigning and/or releasing Creditor also shall take all appropriate steps to withdraw, dismiss or

28    release any Encumbrances it may hold or have asserted against any of the Plan Projects or other

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Assets of the VD Plan Debtors as a condition of receipt of its Distributions under the Plan.

2             If the Ballot is appropriately marked to indicate the Creditor's election to receive the

3    Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman,

4    the Confirmation Order, without more, shall effectuate the assignment and/or release, waiver and

5    relinquishment described or referenced in this section for the Lehman Released Parties, in

6    accordance herewith.  Nonetheless, and regardless of whether the Ballot is appropriately marked: (a)

7    the Lehman VD Lenders may require the Creditor electing to receive the Lehman Distribution

8    Enhancement to execute and deliver to the VD Plan Debtors, the Liquidating Trustee or a Lehman

9    Released Party, a separate Creditor's Assignment / Release for Lehman in a form determined by the

10   Lehman Released Party and reasonably consistent herewith; and (b) a condition subsequent to the

11   assignment and release shall be the disallowance of all Claims of the Creditor electing to receive the

12   Lehman Distribution Enhancement prior to the Creditor receiving any of the Lehman Distribution

13   Enhancement.

14            If such condition subsequent to a particular Creditor's Assignment / Release for

15   Lehman shall occur: (i) the applicable Creditor's Assignment / Release for Lehman shall be void and

16   (ii) if such Creditor dismissed any litigation pending against a Lehman Released Party with respect

17   to a Lehman Released Claim with the dismissal reciting it was based on this Plan's assignment and

18   release for such Lehman Released Party, then such the Lehman Released Party shall stipulate to

19   reinstatement of such litigation (subject to all applicable defenses, objections and other rights of the

20   applicable Lehman Released Party); provided that such voidance of the applicable Creditor's

21   Assignment / Release for Lehman shall not limit or affect any other provision or effect of the Plan,

22   including, without limitation, such voidance of an applicable Creditor's Assignment / Release for

23   Lehman shall not preserve or restore any Encumbrances from which a Plan Project is conveyed free

24   and clear under the Plan.

25            **(b)      Plan Release for Lehman.**

26            In exchange for the consideration represented by, *inter alia*, the Lehman Plan

27   Funding, as of the Effective Date, the Estate of each VD Plan Debtor, on behalf of itself and its

28   Affiliates exclusive of other Debtors in these Cases, automatically upon the occurrence of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Effective Date, will be deemed to unconditionally, irrevocably and generally release, acquit and

forever discharge, waive and relinquish any and all Lehman Released Claims against each and every

Lehman Released Party.

**THE RELEASE GIVEN ABOVE INCLUDES AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each such releasing Person, by the release, waives and relinquishes any right or

benefit that such Person has or may have under section 1542 of the California Civil Code or any

similar provision of statutory or non-statutory law of California or any other jurisdiction to the

fullest extent that such releasing Person may lawfully waive such rights and benefits pertaining to

the subject matter of the release set forth above. In that regard, each such releasing Person, by the

release, further acknowledges that such Person is aware that such Person or the attorneys of such

Person may hereafter discover claims or facts in addition to or different from those which such

Person or such attorneys now know or believe to exist with respect to the subject matter of the

release, and that it is each such releasing Person's intention fully, finally, and forever to settle and

release any and all Lehman Released Claims against each and every Lehman Released Party.

Through the release, each such releasing Person is expressly acknowledging that it understands that,

notwithstanding the discovery or existence of any such additional or different claims or facts, the

release shall be and remain in full force and effect as a full and complete general release with respect

to any and all Lehman Released Claims against each and every Lehman Released Party. Through the

release, each such releasing Person further acknowledges that no released Person has made any

representation of any kind or character whatsoever in order to induce the execution of the release.

The Confirmation Order, without more, will effectuate the release, waiver and

relinquishment described or referenced in this section for the Lehman Released Parties in accordance

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

herewith.  Nonetheless, the Lehman Released Parties also will be entitled to issuance of a separate

written release, waiver and relinquishment by the Liquidating Trustee in a form acceptable to the

Lehman VD Lenders and Liquidating Trustee or as reasonably proposed by the Lehman VD Lenders

and approved by the Bankruptcy Court at or after the hearing on Confirmation of the Plan.

(c)      <strong>Dismissal of Pending Litigation</strong>

On or as soon as practicable after the Effective Date, the Liquidating Trustee will

dismiss (with prejudice), as to the Estates of all VD Plan Debtors, all litigation pending against a

Lehman Released Party on behalf of any VD Plan Debtor's Estate, including, without limitation, (a)

the Liquidating Trustee will dismiss any action seeking equitable subordination, avoidance of

fraudulent transfers or other relief against any Lehman Released Party, specifically the ES Action,

(b) the Liquidating Trustee will dismiss any appeals adverse to a Lehman Related Party, including,

without limitation, appeals seeking findings relating to the validity or allowance of Proofs of Claim

filed by any of the Lehman Related Parties, and (c) the Liquidating Trustee will withdraw any

opposition to any appeals by Lehman Related Parties, with all parties to bear their own costs and

professional fees (except as expressly provided in the Plan for the Lehman Post-Confirmation

Expense Funding).

(d)      <strong>Process for Execution and Delivery of Creditor's Assignments /
Releases for Lehman.</strong>

The releases contained in the Plan will become effective on the Effective Date

without further notice or action of any Person or party.  Although execution and delivery of a

separate writing reflecting releases contained herein may be required by the Lehman VD Lenders as

more fully set forth in the Plan, such requirement will not affect or diminish the effectiveness of the

releases contained herein.  As to a Holder of a General Unsecured Claim or Reliance Claim, its

execution and delivery of the Creditor Assignment / Release for Lehman herein will occur and be

deemed to occur upon the delivery to the Liquidating Trustee or any of the Lehman Related Parties

of an original, facsimile, electronic formatted or other written Ballot of such Holder marking the

appropriate box thereupon signifying its intent to accept the benefits of the Lehman Distribution

Enhancement and afford the Lehman Released Parties the benefit of the Creditor Assignment /

Release for Lehman herein.  Disallowance in whole of such Creditor's Claim(s) prior to receipt of

any Lehman Distribution Enhancement will be a condition subsequent voiding such release.

The Liquidating Trustee will be entitled to utilize the following procedure to determine which Creditors have appropriately marked their Ballots or otherwise provided the Creditor's Assignment / Release for Lehman entitling it to the Lehman Distribution Enhancement. The procedure may be modified by the Liquidating Trustee with the consent of the Lehman VD Lenders, which they may grant or withhold in their sole and absolute discretion:

(1)     Within two (2) Business Days after the voting deadline, the VD Plan Debtors (or their designated agent, if any) will deliver to the appropriate Lehman VD Lenders or as they direct the duly executed original of each Ballot received by the VD Plan Debtors (or their agent) by the voting deadline and each separately executed Creditor's Assignment / Release for Lehman;

(2)     Within fifteen (15) Business Days after receipt of all such Ballots and Creditors' Assignments / Releases for Lehman, the Lehman VD Lenders will advise the VD Plan Debtors or Liquidating Trustee, as then in place, of any issues with respect to the form or propriety of the execution or delivery of any such Ballots, the marking thereupon of the election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, or any actual Creditors' Assignments / Releases for Lehman;

(3)     Within ten (10) days after expiration of the time for the Lehman VD Lenders to advise the VD Plan Debtors or Liquidating Trustee of issues with respect to the form or propriety of the execution and delivery of such items, if no issues are so raised, the form and propriety of such items will be deemed adequate to entitle the applicable Creditor to the applicable Lehman Distribution Enhancement, as and to the extent set forth in the Plan and if and to the extent such Creditor holds an Allowed Claim.

### 5.4.10  Entry of Final Decrees.

The Liquidating Trustee will cause the entry of a final decree in the Case of each Estate of a VD Plan Debtor at the earliest reasonable opportunity therefor.  Such final decrees may be sought and entered individually for each Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**5.4.11  Dissolution of Voluntary Debtors' Committee and Discharge of Liquidating Trustee.**

The Voluntary Debtors' Committee will dissolve and its members will be released and discharged from all duties and obligations arising from or related to the Cases thirty days following the Effective Date unless the Bankruptcy Court, for good cause shown, extends such date. Except as may be necessary to file applications pursuant to the Plan, the Professionals retained by the Voluntary Debtors' Committee will not be entitled to compensation or reimbursement of expenses for any services rendered after the dissolution of the Voluntary Debtors' Committee.  (The Liquidating Trustee may employ Professionals after the Effective Date.)  The Liquidating Trustee will be discharged upon consummation of the Plan and the entry of a final decree in each Case or as otherwise ordered by the Bankruptcy Court.

**5.5     Distributions.**

**5.5.1   Distribution Agent.**

The Liquidating Trustee will serve as the Distribution Agent for Distributions due under the Plan. The Distribution Agent may employ one or more subagents on such terms and conditions as it may agree in his discretion and pay such subagent as a Post-Confirmation Expense from the Post-Confirmation Account(s). The Distribution Agent will not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

**5.5.2   Distributions.**

**(a)      Dates of Distributions.**

Any Distribution required to be made on the Effective Date will be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim will be deemed timely if made as soon as practicable thereafter. To minimize the need to estimate certain contingent or unliquidated Claims and the expense thereof, the treatment sections of the Plan provide as to certain Claims that Distributions as to Future Obligations first are to be made only after the Claim or portion of the Claim is no longer a Future Obligation.

**(b)** **Limitation on Liability.**

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their Affiliates, nor any of their employees, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals will be liable for:  (i) any debts arising under the Plan; (ii) any acts or omissions or the damages therefrom (except for damages proximately caused by gross negligence or intentional misconduct of such Person) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, including, without limitation, such Person will not be liable as to the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan; or (iii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**5.5.3** **Old Instruments and Securities.**

**(a)** **Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any Distribution pursuant to the Plan in respect of a Claim, each Person holding any note or other instrument or security evidencing such Claim must surrender such instrument or security to the Distribution Agent, if requested.

**(b)** **Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien against any Assets of any VD Plan Debtors, including any Plan Project, will be deemed released and discharged, and the Person holding such Lien will be authorized and directed to release any collateral or other property secured or allegedly secured by such Lien (including, without limitation, any Cash Collateral) held by such Person and to take such actions as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project) to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project).

### 5.5.4   *De Minimis* **Distributions and Fractional Shares.**

No Cash payment of less than ten dollars ($10) will be made by the Liquidating Trustee to any Holder of Claims unless a request therefor is made in writing to the Liquidating Trustee.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment will reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not distributed as a consequence of this section will, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### 5.5.5   **Delivery of Distributions.**

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims will be distributed by mail as follows: (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the Liquidating Trustee; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the VD Plan Debtors, provided, however, that if the VD Plan Debtors or the Liquidating Trustee has received a written notice of a change of address for such Holder, the address set forth in such notice will be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

### 5.5.6   **Unclaimed Property.**

If either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or other similar instrument used for the Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any Allowed Claim on the date such Distribution first could have been made under the Plan and for one hundred twenty (120) days thereafter, then such applicable Distribution will be Unclaimed Property under the Plan and the Liquidating Trustee will be relieved of making such Distribution or any further Distribution to such Holder of such Allowed Claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  unless and until the Liquidating Trustee is notified in writing of the then current address of such

2  Holder of an Allowed Claim.  Subject to the remainder of this section and the following section,

3  Unclaimed Property will remain in the possession of the Liquidating Trustee pursuant to this section,

4  and will be set aside and (in the case of Cash) held in a segregated, interest bearing account to be

5  maintained by the Distribution Agent until such time as the subject Distribution becomes

6  deliverable.  Nothing contained in the Plan will require the Liquidating Trustee or any other Person

7  to attempt to locate the Holder of an Allowed Claim as to which there is Unclaimed Property.

8  **5.5.7    Disposition of Unclaimed Property.**

9  If the Person entitled thereto notifies the Liquidating Trustee of such Person's Claim

10  to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial

11  Distribution Date, the Unclaimed Property distributable to such Person, together with any interest or

12  dividends earned thereon, will be paid or distributed to such Person as soon as practicable. Any

13  Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by

14  the Liquidating Trustee within ninety (90) days after the Holders' initial Distribution Date will no

15  longer have any Claim to or Interest in such Unclaimed Property, and will be forever barred from

16  receiving any Distributions under the Plan or otherwise from the Liquidating Trustee.  In such cases,

17  any property held for Distribution on account of such Claims will become Available Cash and

18  deposited into the Post-Confirmation Account of the VD Plan Debtor's Estate against which the

19  applicable Allowed Claim was asserted.

20  **5.6    Objections to Claims and Disputed Claims.**

21  **5.6.1    Standing for Objections to Claims.**

22  The Liquidating Trustee and Lehman Creditors may file and resolve for the Estates

23  objections to Claims and requests for the determination of Claims' status as Reliance Claims, may

24  do so jointly or separately, and will have the exclusive right to do so, except that only the

25  Liquidating Trustee will have such rights as to any particular Claim for which a disabling conflict

26  exists that precludes all of the Lehman Creditors from performing such functions as determined

27  either by the Lehman Creditors or by the Bankruptcy Court.  The Liquidating Trustee will cooperate

28  in Filing objections and taking action with respect to Claims identified for objection or action by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman Creditors in good faith, except that the Liquidating Trustee need not object to a Claim or to a Claim's asserted status as a Reliance Claim that he reasonably believes is valid. Any objection to a Claim or any objection to a Claim's status as a Reliance Claim, will be filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline, expect as provided in the Plan.

### 5.6.2 Treatment of Disputed Claims.

#### (a) No Distribution Pending Allowance.

If any portion of a Claim is a Disputed Claim or has no Allowed Amount, no payment or Distribution provided for under the Plan shall be made on account of such Claim unless expressly provided hereunder or unless and until such Claim becomes an Allowed Claim and has an Allowed Amount. Except as expressly provided in the Plan, Holders of Disputed Claims, pending their allowance, shall forbear from enforcement of the rights entitled to them under the Plan for their Claims were they Allowed Claims; provided that if the Claim is a Secured Claim, the Creditor may seek adequate protection for its Claim from the Bankruptcy Court. A Claim that has not been Allowed by a Final Order of the Bankruptcy Court and as to which the objection deadline has not passed, including as to its status as a Reliance Claim, may be treated by the Liquidating Trustee as a Disputed Claim and, absent the agreement of the Lehman VD Lenders, the Liquidating Trustee shall so treat any such Secured Claim not expressly Allowed under the Plan and any Reliance Claim to which a payment otherwise would be due from Lehman Creditor Distribution Funding.

#### (b) Distribution After Allowance.

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent will distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

#### (c) Reserves for Disputed Claims.

In the event that Disputed Claims are pending, the Liquidating Trustee will establish reasonable reserves, including the Plan Reserve for such Disputed Claims. The Distribution Agent may move the Bankruptcy Court for approval of its determination to reserve certain amounts.

(d)    **Certain Disputed Cure Amounts for Secured Real Property Tax Claims.**

Alternative treatment provisions are provided in the Plan for Allowed Secured Real Property Tax Claims. One such treatment is Section 1124(2) Unimpariment. Bankruptcy Code § 1123(a)(5)(G) provides that "a plan shall – provide adequate means for the plan's implementation, such as – . . . (G) curing or waiving any default . . . ." Under Bankruptcy Code § 1124(2), an obligation, including a prepetition, fully matured obligation, can be cured and reinstated through a plan. Bankruptcy Code § 1124(2) provides that:

> [A] class of claim is impaired unless . . . the plan – . . . (2) . . . (A) cures any such default . . .; (B) reinstates the maturity of such claim . . .; (C) compensates the holder or such claim . . . for any damages incurred as a result of any reasonable reliance by such holder on . . . such applicable law; . . . and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim . . . entitles the holder of such claim . . ."

In connection with a cure under Bankruptcy Code § 1124(2), the Lehman Proponents contend that no penalty amounts would be payable. *See In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1342 (9th Cir. 1988) ("It is clear that the power to cure under the Bankruptcy Code [section 1124(2)] authorizes a plan to *nullify all consequences of a default, including avoidance of default penalties such as higher interest.*") (emphasis added); *In re DSBC Investments, L.L.C.*, 2009 Bankr. LEXIS 2954 (Bankr. D. Ariz. Sept. 11, 2009). In *DSBC Investments*, the Court ruled: "[T]here have been no changes in the law since the 1988 [*Entz-White*] decision which would dilute or change *Entz-White's* holding. Therefore, Pivotal's claim to default interest and late charges, in view of its payoff and cure pursuant to a confirmed and final Chapter 11 plan, must be rejected as a matter of law." *Id.* at *4-*5.

Supporting this result, courts have found that non-interest tax claims may constitute penalties to be subordinated to other unsecured claims even absent any indication of inequitable or improper conduct by the taxing authority. *See, e.g., In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir. 1990) (subordination of IRS' non-pecuniary loss tax penalty claims to other unsecured creditors in chapter 11 case was proper even without finding of inequitable conduct by IRS; "[T]he penalty provisions in the tax code are expressly meant to deter and punish: two goals in contravention of any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

equity or equitable considerations.  The IRS' attempt to recharacterize the tax penalty as a tax claim in order to avoid subordination is not new but it has never succeeded nor do we conclude it should be successful here."); *In re Morande Enterprises, Inc.*, Case No. 9:05-00699-ALP (Bankr. M.D. Fla. June 29, 2007) (order applying § 726(a)(4) (which statute automatically subordinates to fourth priority the payment of prepetition secured and unsecured claims for any fine or penalty or the like that is not compensation for actual pecuniary loss suffered by the creditor) in chapter 11 case to subordinate tax penalty claims; citations omitted).

While the Lehman Proponents appreciate that certain Holders of Allowed Secured Real Property Tax Claims may disagree, the Lehman Proponents believe that Bankruptcy Code § 511 is simply inapposite. It provides only that:

> If any provision of this title requires the payment of interest on a tax claim . . . or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of **interest** shall be the rate determined under applicable nonbankruptcy law.

California has no interest rate applicable to real property taxes.  California charges only for the principal amount of a real property tax so long they are paid timely. If taxes are not timely paid, all of the additional charges asserted by California are penalties. Some of such penalties are not even calculated like interest. California charges ten percent on an installment as soon as it is one day late (Cal. Rev. & Tax. Code § 2618). That ten percent penalty does not increase over time; it is a flat penalty amount.  California also begins charging a penalty of 1.5% per month (or 18%) annually from the beginning of the next tax year (Cal. Rev. & Tax. Code § 4103). The ordinary provisions for this amount do not refer to this as "interest:"

> Redemption penalties  are the sum of the following: (1) Beginning July 1st of the year of the declaration of the tax default, on the declared amount of defaulted taxes at the rate of 1 1/2 percent a month to the time of redemption . . .

Clearly, particularly in light of the senior priority, secured nature of the real property tax claims, these are penalty rates.[15] Although Cal. Rev. & Tax Code § 4103 purports to recharacterize these

---

[15] *See, e.g., Virtual Network Services Corp.*, 902 F.2d 1246; *Morande Enterprises, Inc.*, Case No. 9:05-00699-ALP (Bankr. M.D. Fla. June 29, 2007).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

penalties as interest for bankruptcy proceedings,[16] "a state statute's characterization of an assessment as 'interest' rather than as a 'penalty,' is not relevant in determining whether the assessment is a penalty for the purpose of the Bankruptcy Code." *In re Golden Ada, Inc.*, Case Nos. 97-30879, 97-30877, 97-30880 (Substantively Consolidated), (Bankr. N.D. Cal. July 24, 2000), (Judge Montali); (Memorandum Decision, available at http://www.canb.uscourts.gov/judges/montali/decisions.

Thus, in connection with Section 1124(2) Unimpairment (the lump sum cure payment), the lump sum payment payable on the Effective Date to each Holder of an Allowed Secured Real Property Tax Claim excludes penalties. To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the amounts payable under the Plan's Section 1124(2) Unimpairment treatment, such Holder's rights will be fully preserved and such Holder will receive the excess (the "Additional Damages or Additional Interest") as follows:

(i)    Such Holder must specify the amount and components of such Additional Damages or Additional Interest and their nature (*e.g.*, as interest, fees or other charges) in a statement ("Additional Damages Statement") that is served on the Lehman Proponents and filed with the Bankruptcy Court by the deadline established by the Bankruptcy Court for objecting to Confirmation. If the Holder's proof of claim contains all such information, reference in the Additional Damages Statement to the proof of claim would be adequate. Such Additional Damages Statement need not include case law or legal argument. Thus, the Additional Damages Statement should be simpler to file than an objection to the Plan.

(ii)    If Confirmation of the Plan occurs, the Liquidating Trustee shall deposit into the Plan Reserve the amount of the Additional Damages or Additional Interest for each Holder of an Allowed Secured Real Property Tax Claim that timely files an Additional Damages Statement.

(iii)    Such Holder shall have until thirty days following the Confirmation Date to file a motion with the Bankruptcy Court, with all appropriate

---

[16] Cal. Rev. & Tax. Code § 4103(b) provides in relevant part: "For purposes of . . . any claim in a bankruptcy proceeding . . . the assessment of penalties . . . constitutes the assessment of interest."

evidence and legal argument, as to why the Additional Damages or Additional Interest are due (the "Damages Motion").

(iv)    Promptly after entry of a Final Order granting the Damages Motion, the Liquidating Trustee shall pay to such Holder the Additional Damages or Additional Interest or such portion thereof as the Bankruptcy Court may award, plus all or any interest earned thereupon in the Plan Reserve. If no Damages Motion is timely filed, if a Damages Motion is withdrawn or  to the extent a Damages Motion is denied by Final Order, the Liquidating Trustee shall remove from the Plan Reserve the amount (or the applicable portion) of the Additional Damages or Additional Interest, plus any interest earned thereupon in the Plan Reserve, and pay such amounts to the Lehman Creditors (whether as Lehman Plan Funding not utilized in accordance with the Plan or in repayment of Lehman Plan Funding, to the extent thereof).

### 5.6.3   New Anaverde Claims.

Notwithstanding anything to the contrary in Article XII of the Joint VD Plan (as described in Section 5.8 of the Joint VD Disclosure Statement):  (a) nothing in the Joint VD Plan determines or resolves (any such resolution or determination, hereinafter an "Anaverde Determination") (i) the Litigation Claims of any Debtor or Estate under or with respect to either (x) the June 29, 2001 "Work and Cost Payment Agreement and First Amendment to Reciprocal Easement Agreement and Cooperation Agreement," between Anaverde LLC and Palmdale Hills (the "Anaverde Agreement") or (y) any Cash held pursuant thereto or (ii) either the Claims of New Anaverde, LLC ("New Anaverde") against Palmdale Hills or its Estate or other rights, interests or entitlements of New Anaverde under or with respect to either the Anaverde Agreement or any Cash held pursuant thereto ("Anaverde Claims"); (b) nothing in the Joint VD Plan limits in any manner the ability of New Anaverde to prosecute or defend, as applicable: (i) the Anaverde Claims before the Bankruptcy Court or, with stay relief, to the extent stay relief is required, before any court; or (2) such Litigation Claims before any court, or (c) if an Anaverde Determination determines that all or any part of the Cash still held pursuant to the Anaverde Agreement as of the Effective Date is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

property of New Anaverde and not any Estate, nothing in the Joint VD Plan limits New Anaverde in

exercising or enforcing any remedies to obtain turnover of such Cash from the Plan Trustee or the

applicable Estate; and (d) if an Anaverde Determination determines that New Anaverde holds an

Allowed Claim against Palmdale Hills or its Estate, nothing in the Joint VD Plan limits New

Anaverde in exercising or enforcing any remedies to obtain from the Estate of Palmdale Hills the

treatment afforded for such Allowed Claim under the Plan.

> **5.7**    **Executory Contracts And Unexpired Leases.**

>> **5.7.1**    **Identification of Executory Contracts and Unexpired Leases.**

The Lehman Proponents may file and/or amend or modify on or prior to the

Confirmation Date an **Exhibit "A"** to the Plan containing, *inter alia*, a list of contracts and leases.

The Liquidating Trustee will assume, assume and assign or reject the executory contracts and

unexpired leases on **Exhibit "A"** to the Plan as requested by the Lehman Proponents no later than

forty-five (45) days after the Effective Date.  The Lehman Proponents may add any executory

contract or unexpired leases to this exhibit or delete any contract or lease therefrom up to and

including the Confirmation Date.

>> **5.7.2**    **Executory Contracts Being Assumed or Assumed and Assigned.**

In accordance with the provisions and requirements of Sections 365 and 1123 of the

Bankruptcy Code, any executory contracts and unexpired leases of the VD Plan Debtors' Estates

listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner

that expressly indicates that such contract or lease is to be assumed or assumed and assigned will be

so assumed or assumed and assigned automatically as of the Effective Date, and the cure amount

therefor will be paid promptly thereafter as an Administrative Claim under the Plan. (Such

assumption or assumption and assignment will be in addition to all executory contracts and

unexpired leases that have been previously assumed by the VD Plan Debtors by order of the

Bankruptcy Court.)

The Proponents will provide notice of any amendments to **Exhibit "A"** to any party

with a lease or contract to be assumed under the Plan and to the Voluntary Debtors' Committee.

To the extent applicable, all executory contracts or unexpired leases of VD Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors or their Estates assumed or assumed and assigned pursuant to the Plan shall be deemed

modified such that the transactions contemplated by the Plan shall not be a "sale", "transfer",

"conveyance", "assignment", "change of control" or words of similar meaning (collectively, a

"transfer"), however such transfer may be defined in the relevant executory contract or unexpired

lease, and any precondition to a transfer (including without limitation any notice or required consent)

under any such contract or lease shall be deemed satisfied by Confirmation of the Plan.

Each executory contract and unexpired lease assumed or assumed and assigned

pursuant the Plan (or pursuant to other Bankruptcy Court order) will remain in full force and effect

and be fully enforceable by the applicable VD Plan Debtors' Estate or assignee in accordance with

its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court

authorizing and providing for its assumption or applicable law.

### 5.7.3    Cure Rights.

Any monetary cure amounts by which each executory contract and unexpired lease to

be assumed pursuant to the Plan is in default will be satisfied, pursuant to Section 365(b)(1) of the

Bankruptcy Code, by payment of the cure amount in Cash by the later of (a) the Effective Date (or as

soon as practicable thereafter), (b) as due in the ordinary course of business or (c) on such other

terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the

event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of any assignee to

provide "adequate assurance of future performance" (within the meaning of Section 365 of the

Bankruptcy Code) under the contract or lease to be assumed or assigned, or (iii) any other matter

pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code

will be made following the entry of a Final Order resolving the dispute and approving the

assumption.  The Proponents may list cure amounts for executory contracts and unexpired leases on

**Exhibit "A."**  The failure of any non-Debtor party to an executory contract or unexpired lease to file

and serve an objection to the cure amount listed on **Exhibit "A"** for such party's contract or lease by

the deadline for objecting to the Plan will be deemed consent to such cure amount; provided,

however, that prior to entry of a Final Order approving the assumption of an executory contract or

unexpired lease, the VD Plan Debtors will be authorized to reject any executory contract or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    unexpired lease to the extent the Lehman Proponents conclude that the amount of the cure obligation

2    as determined by the Bankruptcy Court renders assumption of such executory contract or unexpired

3    lease unfavorable.

4              **5.7.4    Executory Contracts Being Rejected.**

5              Any executory contracts and unexpired leases of the VD Plan Debtors' Estates listed

6    on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that

7    indicates such contract or lease is to be rejected will be so rejected as of the Confirmation Date.

8    Additionally, there will be rejected as of the Confirmation Date all executory contracts and

9    unexpired leases of the VD Plan Debtors' Estates not listed on **Exhibit "A"** to the Plan, as is or as

10   amended prior to the Confirmation Date, provided that such contracts or leases: (a) have not

11   previously expired or terminated pursuant to their own terms, (b) were not previously rejected, and

12   (c) are not the subject of any pending motion, including to assume, to assume on modified terms, to

13   reject or to make any other disposition filed by the VD Plan Debtors on or before the Confirmation

14   Date.  Further, all executory contracts and unexpired leases of the VD Plan Debtors' Estates that are

15   listed on **Exhibit "A"** to the Plan that are not assumed or assumed and assigned within the deadlines

16   set forth in the Plan are automatically rejected after such deadline has expired.

17             **5.7.5    Retention of Property Rights by Lehman Nominees or Liquidating**

18   **Trustee.**

19             To the extent that a matter that provides the VD Plan Debtors or their Estates with

20   property rights does not constitute an executory contract or unexpired lease, or the VD Plan Debtors

21   have obtained property rights under the executed portion of an executory contract or unexpired lease,

22   rejection will not constitute an abandonment by the VD Plan Debtors, the Lehman Nominees or the

23   Liquidating Trustee of any such property rights.

24             **5.7.6    Continuing Obligations.**

25             Continuing obligations of third parties to the VD Plan Debtors under insurance

26   policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on

27   or prior to the Effective Date, including, without limitation, continuing obligations to pay insured

28   claims, to defend against and process claims, to refund premiums or overpayments, to provide

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain

confidentiality, or to honor releases, will continue and will be binding on such third parties

notwithstanding any provision to the contrary in the Plan to the extent no obligations to such third

party must be cured or assumed as a condition thereto by the VD Plan Debtors, their Estates or their

assignees under or pursuant to the Plan, unless otherwise specifically terminated by the VD Plan

Debtors or by order of Bankruptcy Court.  The deemed rejection provided by the Plan is of

executory contracts and unexpired leases and thus will not apply to any such continuing obligations.

### 5.7.7  Bar Date for Rejection Damages.

Any Claim arising out of the rejection of an executory contract or unexpired lease

will be forever barred and will not be enforceable against the VD Plan Debtors, their Estates, the

Liquidating Trustee, their Affiliates, their successors, or their properties, and will not be entitled to

any Distribution under the Plan, unless a Proof of Claim for such Claim is timely filed and served.

For rejections occurring prior to Confirmation, such Claims must have been filed by the later of

March 31, 2009 or thirty (30) days following the date of entry of the order of the Bankruptcy Court

approving rejection.  For Claims related to executory contracts or unexpired leases not listed on

**Exhibit "A"** to the Plan that are rejected under the Plan, such Claim must have been filed and served

on the VD Plan Debtors (if before the Effective Date) or the Liquidating Trustee and Lehman VD

Lenders (if after the Effective Date) within thirty (30) days after the Confirmation Date.  For Claims

related to executory contracts or unexpired leases listed on **Exhibit "A"** to the Plan that are rejected

under or in accordance with the Plan, such Claim must have been filed and served on the Liquidating

Trustee and Lehman VD Lenders within the later of:  (a) thirty (30) days after service upon the non-

debtor party to the contract or lease of any notice of the rejection of the contract or lease, including

service of the Plan and its **Exhibit "A"** if the contract or lease is listed for rejection thereupon; and

(b) thirty (30) days after the Confirmation Date.

### 5.8    Effect Of Confirmation Of The Joint VD Plan.

Following Confirmation, the VD Plan Debtors shall reasonably cooperate with, and

take all actions reasonably requested by, the Lehman VD Lenders in preparing for the Effective Date

and the matters to occur and actions required to be taken in connection therewith.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Except as otherwise expressly provided in the Plan, the documents executed pursuant

2    to the Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held,

3    currently hold, or may hold a debt, Claim, or Interest against a VD Plan Debtor (including but not

4    limited to States and other governmental units, and any State official, employee, or other entity

5    acting in an individual or official capacity on behalf of any State or other governmental units, other

6    than as to matters excepted from the automatic stay by Bankruptcy Code § 362(b)(4), including,

7    without limitation, the commencement or continuation of an action or proceeding by a governmental

8    unit to enforce such governmental unit's police and regulatory power, including the enforcement of a

9    judgment other than a monetary judgment, obtained in an action or proceeding by the governmental

10   unit to enforce such governmental unit's police or regulatory power) shall be permanently enjoined

11   from:

12        (a)    taking any of the following actions *on account of any such debt, Claim, or*

13   *Interest*:[17]

14             (1)    commencing or continuing in any manner any action or other

15   proceeding against the Liquidating Trustee or the Lehman Released Parties (or the successors or

16   property of either of them);

17             (2)    enforcing, attaching, executing, collecting, or recovering in any

18   manner any judgment, award, decree, or order against the Liquidating Trustee or the Lehman

19   Released Parties (or the successors or property of either of them);

20             (3)    creating, perfecting, or enforcing any Lien or encumbrance against the

21   Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

22   and

23             (4)    asserting any set off, right of subrogation, or recoupment of any kind

24   against any obligation due to the Liquidating Trustee or the Lehman Released Parties (or the

25   successors or property of either of them); and

26

27   [17] An action on "account of any such debt, Claim or Interest" does not include an action against the Liquidating Trustee
     or Lehman Released Parties (or the successors or property of either of them) (a "Target") based upon an independent

28   obligation of such Target (such as, by example, a written guaranty of such Target or an obligation of such Target arising
     under law based on the Target's current ownership of real property) so long as the obligation is not alleged to arise based
     upon the Target's post-petition involvement in these Cases or with the Plan.

(b)    challenging the Distributions to be effected by the Plan or the classification of Claims or Interests set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

**5.9    Other Plan Provisions.**

**5.9.1    Limitation Of Liability.**

**(a)    No Liability for Solicitation or Participation.**

As specified in section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, will not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**(b)    Limitation of Liability.**

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their respective Affiliates, nor any of their employees, Professionals, staff, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals will have any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the administration of the Plan, the Cases or the property to be distributed under the Plan, or any contract, instrument, document or other agreement entered into pursuant thereto through and including the Effective Date, except: (a) the Liquidating Trustee, in such capacity, will be liable contractually for the performance of obligations assumed or imposed under or by the Plan; (b) for liability for damages proximately caused by (i) intentional misconduct as finally determined by a Final Order of the Bankruptcy Court and (ii) gross negligence in connection

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, other than liability resulting from the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan. Each of the Liquidating Trustee, his Professionals and staff, and Lehman Related Parties will be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under or with respect to the Plan.

### 5.9.2    Conditions To Confirmation And Effectiveness Of The Joint VD Plan.

#### (a)    Conditions Precedent to Entry of the Confirmation Order.

Unless waived by the Lehman VD Lenders in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order, which will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, are:  (i) first, execution of a Settling Bond Issuer Agreement by certain of the Lehman Related Parties and each Bond Issuer; and (ii) second, approval of the role and obligations under the Plan of certain of the Lehman VD Lenders and each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the Lehman Chapter 11 Case of Lehman Commercial, a Lehman VD Lender, and LBHI, which may be a party to the Settling Bond Issuer Agreements and may be a source of funding of the Lehman Plan Funding.

#### (b)    Conditions Precedent to Plan Effectiveness.

The following will be conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date.

(i)    The Confirmation Order will be a Final Order in form and substance reasonably satisfactory to the Lehman VD Lenders; and

(ii)    Unless waived by the Lehman VD Lenders, all agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, including, without limitation, each of the documents necessary for consummation of the Plan, will have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness will have been satisfied or waived other than the occurrence of the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(c)** **Conditions Precedent to Entry of the Confirmation Order and to Plan Effectiveness**

Two other conditions precedent to entry of the Confirmation Order, the effectiveness of the Plan and the occurrence of the Effective Date are:

(i)    The Lehman VD Lenders not withdrawing the Plan prior to the Effective Date, which withdrawal may occur if either:

(1)    As to the Group I Debtors, that the Lehman VD Lenders' good faith estimate of Lehman Plan Funding exceeds $22 million; or

(2)    As to the Group II Debtors, the Lehman VD Lenders' good faith estimate of all such Debtors' Allowed Senior Claims exceeds $3 million.

If such withdrawal occurs, the Lehman VD Lenders shall file a notice thereof with the Bankruptcy Court; and

(ii)    Unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, Confirmation of the Plan as to all of the VD Plan Debtors and the ability to have the Effective Date occur for all of the VD Plan Debtors.

### 5.9.3   Retention Of Jurisdiction.

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court will not be limited under the Plan and the Bankruptcy Court will retain jurisdiction over the Cases of the VD Plan Debtors and any of the proceedings related to the Cases of the VD Plan Debtors pursuant to Bankruptcy Code § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law.

### 5.9.4   Modification Or Withdrawal Of Plan.

**(a)** **Modification of Plan.**

At any time prior to confirmation of the Plan, the Lehman VD Lenders may supplement, amend, modify or restate the Plan or withdraw it as to any VD Plan Debtor.  After confirmation of the Plan, the Lehman VD Lenders or Liquidating Trustee with the consent of the Lehman VD Lenders may (x) apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or

omissions in the Plan or to reconcile inconsistencies in the Plan.

(b)    <strong>Nonconsensual Confirmation.</strong>

In the event that any Impaired Class of Claims or Interests will fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, Lehman VD Lenders (i) may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and in accordance with the Plan, and (ii) may modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

<strong>5.9.5    Miscellaneous.</strong>

(a)    <strong>Changes in Rates Subject to Regulatory Commission Approval.</strong>

The VD Plan Debtors are not subject to governmental regulatory commission approval of their rates.

(b)    <strong>Payment of Statutory Fees.</strong>

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of Title 28 of the United States Code with respect to the VD Plan Debtors will be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve will have been established and set aside for payment in full thereof, as required by section 1129(a)(l2) of the Bankruptcy Code.  The Liquidating Trustee will remain responsible for timely payment of quarterly fees due and payable after the Effective Date with respect to the VD Plan Debtors until each applicable VD Plan Debtor's Case is closed, to the extent required by section 1930(a)(6) of Title 28 of the United States Code.

(c)    <strong>Payment Dates.</strong>

Whenever any payment or Distribution to be made under the Plan will be due on a day other than a Business Day, such payment or Distribution will instead be made, without interest, on the immediately following Business Day.

(d)    <strong>Headings.</strong>

The headings used in this Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Joint VD Disclosure Statement or the Joint VD Plan nor in any manner affect the construction of the provisions of the Joint VD Disclosure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Statement or the Joint VD Plan.

2                      **(e)      Other Documents and Actions.**

3             The VD Plan Debtors and Liquidating Trustee may execute such other documents and

4    take such other actions as may be necessary or appropriate to effectuate the transactions

5    contemplated under the Plan.

6                      **(f)      Notices.**

7             All notices and requests in connection with the Joint VD Disclosure Statement and

8    the Plan will be in writing and will be hand delivered or sent by mail addressed to:

9         Edward Soto, Esq.
          Nellie P. Camerik, Esq.
10        Weil, Gotshal & Manges LLP
          1395 Brickell Avenue
11        Suite 1200
          Miami, FL 33131
12
          and
13
          Alfredo R. Perez, Esq.
14        Weil, Gotshal & Manges LLP
          767 Fifth Avenue
15        New York, NY  10153-0119

16        With copies to:

17        Dean A. Ziehl, Esq.
          Pachulski Stang Ziehl & Jones LLP
18        10100 Santa Monica Blvd., 11th Fl.
          Los Angeles, CA  90067
19

20            All notices and requests to any Person holding of record any Claim or Interest will be

21    sent to them at their last known address or to the last known address of their attorney of record. Any

22    such Person may designate in writing any other address for purposes of this section, which

23    designation will be effective on receipt.

24                      **(g)      Governing Law.**

25            Unless a rule of law or procedure is supplied by federal law (including the

26    Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to its

27    conflict of law rules) will govern the construction and implementation of the Plan and any

28    agreements, documents, and instruments executed in connection with the Plan, unless otherwise

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    specifically provided in such agreements, documents, or instruments.

2    **(h)    Binding Effect.**

3    The Joint VD Plan and all rights, duties and obligations thereunder will be binding

4    upon and inure to the benefit of the Lehman Creditors, the VD Plan Debtors, the Liquidating

5    Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

6    **(i)    Successors and Assigns.**

7    The rights, benefits, and obligations of any Person named or referred to in the Plan

8    will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors,

9    and assigns of such Person.

10    **(j)    Severability of Plan Provisions.**

11    If, prior to the Confirmation Date, any term or provision of the Plan is held by the

12    Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

13    constitute grounds for denying confirmation of the Plan, the Bankruptcy Court will, with the consent

14    of the Lehman Proponents, have the power to interpret, modify or delete such term or provision (or

15    portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with

16    the original purpose of the term or provision held to be invalid, void or unenforceable, and such term

17    or provision will then be operative as interpreted, modified or deleted. Notwithstanding any such

18    interpretation, modification or deletion, the remainder of the terms and provisions of the Plan will in

19    no way be affected, impaired or invalidated by such interpretation, modification or deletion.

20    **(k)    No Waiver.**

21    The failure of the VD Plan Debtors, Liquidating Trustee, Voluntary Debtors'

22    Committee or Lehman Creditors or any other Person to object to any Claim for purposes of voting

23    will not be deemed a waiver of the Voluntary Debtors' Committee's, the VD Plan Debtors', the

24    Liquidating Trustee's or the Lehman VD Lenders' right to object to or examine such Claim, in

25    whole or in part.

26    **(l)    Inconsistencies.**

27    In the event the terms or provisions of this Disclosure Statement are inconsistent with

28    the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the Plan will control.

2    **(m)    Exemption from Certain Transfer Taxes and Recording Fees.**

3    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a VD Plan

4    Debtor or its Estate to the Liquidating Trustee, the Lehman Nominees or to any other Person

5    pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the

6    VD Plan Debtors' real or personal property or of any other interest in such property (including,

7    without limitation, a security interest), including, without limitation, transfers or sales pursuant to the

8    Confirmation Order or any Sale Order will not be subject to any document recording tax, stamp tax,

9    conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage

10    recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

11    governmental assessment, and the Confirmation Order will direct the appropriate state or local

12    governmental officials or agents to forego the collection of any such tax or governmental assessment

13    and to accept for filing and recordation any of the foregoing instruments or other documents without

14    the payment of any such tax or governmental assessment.

15    **(n)    Post-Confirmation Status Report.**

16    By the earlier of 180 days following the entry of the Confirmation Order a status

17    report will be filed with the Court explaining what progress has been made toward consummation of

18    the confirmed Plan, which report will be filed by the Liquidating Trustee, if the Effective Date

19    occurs within 120 days following the entry of the Confirmation Order and, otherwise, by the

20    Lehman Creditors.  The status report will be served on the United States Trustee, the list of twenty

21    largest unsecured creditors filed by the VD Plan Debtors for the jointly administered Cases of the

22    Debtors, the Lehman Creditors, the Liquidating Trustee and those parties who have requested special

23    notice. Unless otherwise ordered, further status reports will be filed every 180 days and served on

24    the same entities.

25    **(o)    Post-Confirmation Conversion/Dismissal.**

26    A creditor or party in interest may bring a motion to convert or dismiss any Case of a

27    VD Plan Debtor under § 1112(b), after the Plan is confirmed, if there is a default in performing the

28    Plan, subject to the right of any party in interest to object to such motion.  If the Court orders any of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this Case.

### (p)    Final Decree.

Once a VD Plan Debtor's Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Liquidating Trustee, or other party as the Bankruptcy Court will designate in the Confirmation Order, will file a motion with the Bankruptcy Court to obtain a final decree to close the Case of such VD Plan Debtor.

### VI

### **BEST INTERESTS OF CREDITORS TEST**

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, if any creditor or interest holder who holds a claim or interest in an impaired class under a plan does not vote to accept the plan, the plan for that debtor cannot be confirmed unless the Bankruptcy Court determines that the distributions under the plan for such creditor or interest holder are not less than those which the creditor or interest holder would receive in a liquidation under chapter 7 of the Bankruptcy Code (referenced herein as the "Best Interests Test").

The Best Interests Test must be satisfied even if the Joint VD Plan is accepted by each impaired Class of Claims and Interests if any Holder of an Allowed Claim or Allowed Interest objects to the Joint VD Plan on such basis. The Best Interests Test requires the Bankruptcy Court to find either that (i) all Holders of Claims and Interests in an Impaired Class for a particular VD Plan Debtor have accepted the Joint VD Plan, or (ii) the Joint VD Plan for such VD Plan Debtor provides each Holder of Allowed Claim or Interest in an Impaired Class who has not accepted the Joint VD Plan with a recovery of property of a value, as of the effective date of the Joint VD Plan, that is not less than the amount that such Holder would receive if the applicable VD Plan Debtor were liquidated under chapter 7 of the Bankruptcy Code.  Excluding the Secured Claims of the Lehman VD Lenders (who, as Plan Proponents, will vote in favor of the Plan) and ignoring the Claims of Settling Bond Issuers based on the settlement embodied in the applicable Settling Bond Issuer

Agreement, Allowed Claims and Interests classified as Impaired include:

    (1)  the Allowed Reliance Claims against Group I Debtors in Class 6;

    (2)  the Allowed General Unsecured Claims against Group I Debtors in Class 7;

    (3)  the Allowed General Unsecured Claims against Group II Debtors in Class 8;

    (4)  the Allowed Settling Bond Issuer-Related Future Work Claims in Class 9; and

    (5)  the Allowed Interests in Group 10.

Because each of the Plan Projects of the Group I Debtors (other than SunCal Summit Valley) is subject to a Lehman Claim Lien and the amount owed under the applicable Lehman Loan exceeds the value of the applicable Plan Project, unless the equitable subordination claims were successful, Claims in Impaired Classes 6 and 7 would receive no recovery in chapter 7 liquidation Cases from the Plan Projects. The Lehman VD Lenders contend that the equitable subordination claims asserted in the ES Action are without merit. If, however, the litigation with respect to equitable subordination could be adequately funded in a chapter 7 liquidation (or under an alternative plan), and were successful, holders of claims determined to be beneficiaries of equitable subordination and as to which creditor specific injury was shown could be paid in full or in part and, thus, may be paid more than is proposed under the Plan. Further, there is no basis for a present estimate of any value for the other Litigation Claims, primarily consisting of Avoidance Actions.

The Lehman Proponents estimate the outcome as follows if all of the VD Plan Debtors' Cases were converted to Cases under chapter 7 of the Bankruptcy Code: [18]

---

[18] In any event, for net recoveries from Litigation Claims to result in distributions to Holders of Claims in Classes 6, 7 and 9 (a) the Litigation Claims or their proceeds would have to be unencumbered by any Liens and (b) the net recoveries would need to exceed the amount of, at a minimum, Administrative Claims (including postpetition real property taxes), Secured Real Property Tax Claims and Priority Claims, which are estimated to aggregate approximately $17 million presently and are likely to increase pending final conclusion of pursuit of the Litigation Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**LEHMAN PROPONENTS' ESTIMATED DISTRIBUTIONS UNDER CHAPTER 7 CASES FOR CREDITORS OTHER THAN LEHMAN VD LENDERS**

## GROUP I DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 6) | GENERAL UNSECURED CLAIMS (CLASS 7) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 9 |
|---|---|---|---|---|---|---|
| Acton Estates | Unknown | 100% | 100% | 0% | 0% | 0% |
| Palmdale Hills | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal Bickford | Unknown | 100% | 100% | 0% | 0% | 0% |
| SCC Communities | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal I | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal Summit Valley | Unknown | 100% | 100% | 0% | 0% | 0% |
| Tesoro | Unknown | 100% | 100% | 0% | 0% | 0% |

## GROUP II DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | GENERAL UNSECURED CLAIMS (CLASS 8) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 9 |
|---|---|---|---|---|---|
| Kirby Estates | 100% | 100% | Not applicable | Not applicable | Not applicable |

| | **ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4)** | **SECURED REAL PROPERTY TAX CLAIMS** | **ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3)** | **GENERAL UNSECURED CLAIMS** | **SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS -** |
|---|---|---|---|---|---|
| **DEBTOR** | **CLAIMS** | **(CLASS 1)** | **IF ANY** | **(CLASS 8)** | **CLASS 9** |
| Seven Brothers | 100% | 100% | Not applicable | Not applicable | Not applicable |
| SunCal Beaumont | 0% | 100% | 0% | 0% | Not applicable |
| SunCal Johannson | 100% | 100% | Not applicable | 100% | Not applicable |

**GROUP II DEBTORS**

In contrast, under the Plan, Holders of Allowed Claims in Classes 6, 7 and 9 against Group I Debtors all receive Distributions or performance (and the Lehman Proponents believe that any Distribution with respect to Allowed Claims in Class 6, Class 7 or Class 9 under the Plan would be more than a Creditor would receive through a chapter 7 liquidation by depending on success with respect to the ES Action). Allowed Claims in Class 8 against Group II Debtors are projected to receive the same or better treatment as in a liquidation, but sooner.

Under the Plan, Distributions and performance proposed for Creditors other than the Lehman Creditors and other than the Settling Bond Issuers are as set forth in the following charts (with shaded boxes reflecting projected improved treatment from that projected in a chapter 7 case and unshaded boxes reflecting the same projected treatment). *Based on the Lehman VD Lenders' estimates of Claims set forth in the Disclosure Statement as of June 1, 2011, wherever ranges are possible, the highest percentage in the range is estimated to be payable*:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DISTRIBUTIONS UNDER THE PLAN – GROUP I DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 6) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | GENERAL UNSECURED CLAIMS (CLASS 7) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 9 |
|---|---|---|---|---|---|---|
| Acton Estates | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| Palmdale Hills | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| SCC Communities | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| SunCal Bickford | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| SunCal I | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| SunCal Summit Valley | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |
| Tesoro | 100% | 100% | 100% | 40%-50% / 1% | 5% / 1% | 100% |

## DISTRIBUTIONS UNDER THE PLAN – GROUP II DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | GENERAL UNSECURED CLAIMS (CLASS 8) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 9 |
|---|---|---|---|---|---|
| Kirby Estates | 100% | 100% | Not applicable | Not applicable | Not applicable |
| Seven Brothers | 100% | 100% | Not applicable | Not applicable | Not applicable |
| SunCal Beaumont | 100% | 100% | 100% | 1% | Not applicable |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DISTRIBUTIONS UNDER THE PLAN – GROUP II DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | GENERAL UNSECURED CLAIMS (CLASS 8) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 9 |
|---|---|---|---|---|---|
| SunCal Johannson | 100% | 100% | Not applicable | 100% | Not applicable |

For Holders of Allowed Class 6 Reliance Claims, they receive not only their proportional share of Residual Cash, but also: (a) the Guaranteed Minimum Distribution of 1% of the Allowed Claims; and (b) if they elect it, the Lehman Distribution Enhancement, which increases a Holder's recovery to 40% or 50% of its Allowed Claim against a Group I Debtor (depending on whether the Projected Distribution Bump Up is applicable). As to the fairness of the Distributions for Allowed Reliance Claims with respect to the equitable subordination claims, the Lehman VD Lenders believe the Lehman Plan Funding results in fair value for the VD Plan Debtors' Assets based on the complexities of the ES Action with respect to the equitable subordination claims, the lack of definitive funding for the prosecution thereof and for the maintenance of the Plan Projects and VD Plan Debtors' Estates pending resolution of the ES Action, the delay attendant to prosecution of the ES Action as to at least Lehman Commercial due to the automatic stay in its bankruptcy case and the high evidentiary hurdles for either recovery for an individual Creditor or to substantively consolidate multiple VD Plan Debtors to enable recoveries for a broader group of Creditors.

For Holders of Allowed Class 7 General Unsecured Claims, they receive not only their proportional share of Residual Cash, but also the Guaranteed Minimum Distribution of 1% of their Allowed Claims and, if they elect it, the Lehman Distribution Enhancement of up to another 4% of their Allowed Claims.

For Holders of Allowed Class 8 General Unsecured Claims, they receive 100% of

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

their Claims unless Residual Cash and Project Values are insufficient to pay all Claims. In that event, Holders of Allowed Class 8 General Unsecured Claims receive their Pro Rata share of Project Values and Residual Cash after payment of Allowed Senior Claims, but no less than 1% of each Allowed Class 8 Claim.

For Holders of Allowed Class 9 Settling Bond Issuer-Backed Future Work Claims, based on the recommitment from the Settling Bond Issuers, they are to receive essentially the full benefit of their bargains. As described in the Plan and Disclosure Statement, however, Settling Bond Issuers are waiving payment on all or some of their Allowed Claims in Classes 3, 6 and 7.

For Holders of Allowed Group 10 Interests, because (i) all of the Group I Debtors are insolvent and (ii) in the case of the Group II Debtors, Lehman VD Lenders hold Secured Claims in the Interests in the Group II Debtors (entitling them to any Distributions therefor in a chapter 7 liquidation), nothing would be available for Holders of Interests and nothing is payable to them under the Plan. Thus, they do no worse.

**VII**

**PLAN FEASIBILITY**

In order to confirm the Joint VD Plan as to a particular VD Plan Debtor, the Bankruptcy Court must find that confirmation of the Joint VD Plan is not likely to be followed by the liquidation or the need for further financial reorganization of such VD Plan Debtor, unless provided in the Plan. This requirement is imposed by Section 1129(a)(11) of the Bankruptcy Code and is generally referred to as the "feasibility" requirement.

Under the Plan, the Lehman VD Lenders have agreed to provide the Lehman Plan Funding, being the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding. For the Lehman Creditor Distribution Funding, the Lehman VD Lenders have agreed to fund, through permitting use of Cash Collateral or through new transfers of Cash or through other arrangements, the Distributions for the following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative treatment set

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

forth in the Plan is selected), (vii) the Lehman Guaranteed Minimum Distribution, (viii) the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6, and (ix) Allowed General Unsecured Claims in Class 8.  The Lehman VD Lenders also have agreed under the Joint VD Plan to arrange, as provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed Settling Bond Issuer-Backed Future Work Claim and to reimburse the applicable Settling Bond Issuer the agreed amount for the Settling Bond Issuer-Incurred Future Work Obligations arising under any Future Work Bond.

For the Lehman Post-Confirmation Expense Funding, the Lehman VD Lenders have agreed to pay an amount (with such amount not to exceed $500,000 and which will not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans will be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

## VIII

## RISK FACTORS

The Plan essentially provides for (a) payments to Creditors by the Liquidating Trustee from the Lehman Plan Funding, (b) payments to Creditors of Residual Cash by the Liquidating Trustee, (c) conveyance to Lehman Nominees of the Plan Projects, and (d) payments and reimbursements by Lehman Nominees to Bond Issuers and Holders of Secured Real Property Tax Claims.  The following discussion summarizes some of the material risks associated with the Plan and its implementation:

1. The Plan includes in its Article XIV express conditions to its Confirmation and the Effective Date occurring, in addition to the statutory conditions for Confirmation set forth in Bankruptcy Code § 1129.  That such conditions would not be met is a risk that the Plan would not become effective, but these are <u>not</u> risks that the Plan, once effective, would fail.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2. Most of the Distributions from the Lehman Plan Funding and the conveyance of the Plan Projects to the Lehman Nominees are to be made by the Liquidating Trustee. The Liquidating Trustee will be a Person selected by the Lehman VD Lenders, whose identity will be disclosed prior to the hearing on Confirmation. Should there be any issues as to the Liquidating Trustee, whether as to his or her performance, health or other issues, the Bankruptcy Court may, by order, replace the Liquidating Trustee in its reasonable discretion.

3. The Liquidating Trustee requires the Lehman Plan Funding to make a substantial part of the Distributions required under the Plan and such is thereby a risk of the Plan. Article VIII of the Plan requires that, on the Effective Date, the Lehman VD Lenders will cause to be paid to the Liquidating Trustee from new Cash transfers sufficient amounts such that, when combined with Cash Collateral for Lehman Secured Claims, the Liquidating Trustee is holding sufficient funds to make the payments required under the Plan to be paid on the Effective Date from Lehman Plan Funding. Thereafter, the Lehman VD Lenders will pay the Liquidating Trustee further amounts at such times as the Lehman VD Lenders reasonably determine are necessary to enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan Funding, provided that the Post-Confirmation Expense Funding is not to exceed $500,000 nor to be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date.

4. The existence of any Residual Cash for Distribution for a VD Plan Debtor's Estate is dependent, first, on revenue from the liquidation by the Liquidating Trustee of any Remaining Other Assets of such Estate, including any applicable Net Cash Litigation Recoveries in which such Estate has an interest. That any such revenues will materialize is uncertain.

5. Moreover, the existence of Residual Cash also is dependent on whether any revenue from Remaining Other Assets of an Estate will remain after Distributions for Secured Claims with respect thereto and payment or reserve for the Post-Confirmation Expenses, including post-Confirmation Date intercompany payables and reimbursements for Lehman Post-Confirmation Expense Funding. Such deductions or applications of such revenue also are uncertain.

6. Under the Plan, the Lehman Nominees are to perform the following functions and their performance is a risk of the Plan: (a) to cooperate in the performance of Future Work that is the subject of an Allowed Settling Bond Issuer-Backed Future Work Claim and to reimburse the agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond Issuer-Incurred Future Work Obligations arising under any Future Work Bond; and (b) as owners of the Plan Projects, to pay the Allowed Secured Real Property Tax Claims.

## IX

## CERTAIN UNITED STATES FEDERAL INCOME TAX
## CONSEQUENCES OF THE JOINT VD PLAN

The following discussion summarizes certain United States federal income tax consequences of the implementation of the Joint VD Plan to certain Holders of Claims. The following summary does not address the United States federal income tax consequences to Holders of Claims that are not entitled to vote, such as (i) Holders of Claims who are unimpaired or otherwise entitled to payment in full in Cash under the Joint VD Plan or (ii) Holders of Interests as they are deemed to reject the Plan.

The following summary is based on the Internal Revenue Code of 1986 and all rules and treasury regulations promulgated thereunder ("Tax Code"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS"), all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the United States federal income tax consequences described below.

The United States federal income tax consequences of the Joint VD Plan are complex and are subject to significant uncertainties. The Lehman Proponents have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Joint VD Plan. Thus, no assurance can be given as to whether the IRS will successfully assert alternative positions from those set forth herein or the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Joint VD Plan, nor does it address the United States federal alternative minimum or federal income tax consequences of the Joint VD Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks,

mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations (including, without limitation, certain pension funds), persons holding a Claim as part of a constructive sale, straddle or other integrated transaction, and investors in pass-through entities, including partnerships). If a partnership (or other Person taxed as a partnership) holds a Claim, the tax treatment of a partner in the partnership will generally depend upon the status of the partner and upon the activities of the partnership.

Accordingly, the following summary of certain United States federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim.

IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, Holders of Claims are hereby notified that: (a) any discussion of United States federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Lehman Proponents of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from their tax advisors.

### 9.1    Consequences to Holders of Lehman Secured Claims

Pursuant to the Joint VD Plan, the Holders of Lehman Secured Claims will receive property (including Plan Projects), conveyed to the Holders of such Claims or one or more Lehman Nominees) in satisfaction of their Claims.

In general, each Holder of such a Claim should recognize gain or loss in an amount equal to the difference between (x) the amount of cash and the fair market value of other property received by the Holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as imputed interest as further discussed below) and (y) the Holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid interest but including any basis such Holder has as a result of a transfer by a Lehman Related Party of new Cash to fund a Lehman Post-Confirmation Loan).

Distributions to such Holders may be made subsequent to the Effective Date.  Under the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest.  In addition, it is possible that any loss and a portion of any gain realized by such Holder may be deferred until such time as such Holder has received its final distribution.  All Holders of such Claims should consult their tax advisors as to tax consequences of distributions subsequent to the Effective Date.

A Holder's initial tax basis in any Plan Projects conveyed should equal the fair market value thereof.  Gain or loss recognized by a Holder on the sale, exchange or other disposition of the Plan Projects will equal the difference, if any, between the amount realized by the Holder and the Holder's adjusted tax basis in the Plan Projects immediately before the sale, exchange or other disposition.  Any such gain or loss will be long-term if the Holder's holding period for the Plan Project is more than one year at that time.  A Holder's holding period for any conveyed Plan Projects generally should begin the day following the day that it is conveyed to the Holder.  Depending upon the facts at the time, such gain or loss may be capital or may be "Section 1231 Gain" or "Section 1231 Loss."  The discussion in this paragraph is premised upon the Holder being considered the owner of a Plan Project for federal income tax purposes.

**9.2**    **Consequences to Holders of General Unsecured Claims.**

Pursuant to the Joint VD Plan, the Liquidating Trustee will distribute to the Holders of Allowed General Unsecured Claims in Classes 8 and 9 and Allowed Reliance Claims the Guaranteed Minimum Distribution (1% of their Claims) and, Residual Cash, if any, Pro Rata.  In addition, each such Holder of an Allowed General Unsecured Claim or Allowed Reliance Claim that executes and delivers the Creditor's Assignment / Release for Lehman will assign its Claims to the applicable Lehman VD Lender(s) and receive the applicable, additional Lehman Distribution Enhancement.  Holders of Allowed General Unsecured Claims in Class 8 will receive a 100% recovery with post-petition interest, capped by, in effect, their respective pro rata share of the residual value of the applicable Plan Project and Estate's Residual Cash, after application thereof to the Allowed Senior Claims.

In general, each Holder of such a Claim should recognize gain or loss in an amount

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

equal to the difference between (x) the amount of Cash received by the Holder in satisfaction of its

Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as

imputed interest as further discussed below), and (y) the Holder's adjusted tax basis in its Claim

(other than any basis attributable to accrued but unpaid interest).

Distributions to such Holders will be made subsequent to the Effective Date. Under

the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest. In

addition, it is possible that any loss and a portion of any gain realized by such Holder may be

deferred until such time as such Holder has received its final distribution. All Holders of such

Claims should consult their tax advisors as to tax consequences of distributions subsequent to the

Effective Date.

**9.3    Consequences to Holders of Settling Bond Issuer-Related Future Work Claims.**

Settling Bond Issuer-Related Future Work Claims consist of Settling Bond Issuer-

Backed Future Work Claims and Settling Bond Issuer-Owned Future Work Claims. Pursuant to the

Joint VD Plan, (a) each Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim is to

receive performance of the Future Work obligations with respect to such Allowed Claim, without

penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable

Petition Date, as more fully set forth in the Plan and (b) each Holder of an Allowed Settling Bond

Issuer-Owned Future Work Claim is (i) to receive the cooperation of the Lehman Nominee that takes

title to the Plan Project to which the subject Allowed Claim relates in connection with the

performance of such Future Work obligations, contingent upon such payment by the applicable

Settling Bond Issuer and (ii) as and to the extent provided in the applicable Settling Bond Issuer

Agreement: (1) the Lehman Nominee that takes title to the Plan Project to which a subject Claim

relates is to take an assignment from the applicable Settling Bond Issuer of certain of such Settling

Bond Issuer's Claims against the applicable VD Plan Debtor and third parties; and (2) in exchange

therefor, such Lehman Nominee is to reimburse such Settling Bond Issuer agreed amounts, *e.g.*, for

payments made by such Settling Bond Issuer under the applicable Future Work Bonds.

In general, each Holder of such a Claim should recognize gain or loss in an amount

equal to the difference between (x) the amount of Cash received by the Holder in satisfaction of its

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as imputed interest as further discussed below), and (y) the Holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid interest).

Distributions to such Holders will be made subsequent to the Effective Date. Under the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest. In addition, it is possible that any loss and a portion of any gain realized by such Holder may be deferred until such time as such Holder has received its final distribution. All Holders of such Claims should consult their tax advisors as to tax consequences of distributions subsequent to the Effective Date.

**9.4    Distributions in Discharge of Accrued but Unpaid Interest.**

Pursuant to the Joint VD Plan, distributions to any Holder of Allowed Claims will be allocated first to the principal amount of such Claims, as determined for federal income tax purposes, and thereafter, to the portion of such Claim, if any, representing accrued but unpaid interest or original issue discount ("OID"). However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.

In general, to the extent that any consideration received pursuant to the Joint VD Plan by a Holder of an Allowed Claim is received in satisfaction of accrued interest or OID during its holding period, such amount will be taxable to the Holder as interest income (if not previously included in the Holder's gross income). Conversely, a Holder generally recognizes a deductible loss to the extent any accrued interest claimed or amortized OID was previously included in its gross income and is not paid in full. However, the IRS has privately ruled that a holder of a security of a corporate issuer, in an otherwise tax-free exchange, could not claim a current deduction with respect to any unpaid OID. Accordingly it is also unclear whether, by analogy, a Holder of a Claim of a non-corporate issuer would be required to recognize a capital loss, rather than an ordinary loss, with respect to previously included OID that is not paid in full.

Each Holder of a Claim is urged to consult its tax advisor regarding the allocation of consideration and the deductibility of accrued but unpaid interest for federal income tax purposes.

### 9.5    **Character of Gain or Loss**

Where gain or loss is recognized by a Holder of such a Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including, among others, the tax status of the Holder (including method of accounting), whether the Claim constitutes a capital asset in the hands of the Holder, whether the Claim arose in connection with the provision of services by the Holder and how long it has been held, whether the Claim was acquired at a market discount, and whether and to what extent the Holder previously had claimed a bad debt deduction.

### 9.6    **Information Reporting and Withholding**

All distributions to Holders of Allowed Claims under the Joint VD Plan are subject to any applicable tax withholding.  Under United States federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28% and scheduled to increase to 31% beginning in 2011).  Backup withholding generally applies if the Holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is a United States person that is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded by the IRS to the extent it results in an overpayment of tax and the appropriate information is timely supplied to the IRS. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its United States federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require

1  disclosure on the Holders' tax returns.

2        The foregoing summary has been provided for informational purposes only.  All

3  Holders of Claims receiving a distribution under the Plan are urged to consult their tax advisors

4  concerning the United States federal, state and local and foreign tax consequences applicable under

5  the Plan.

6                                    **X**

7              **ALTERNATIVES, CONCLUSION AND RECOMMENDATION**

8        The Joint VD Plan provides for prompt Distributions to Creditors in amounts believed

9  by the Lehman VD Lenders to represent fair value for the Assets of the VD Plan Debtors, including

10  all Litigation Claims.  Although no current alternative to the Plan is contemplated by Lehman

11  Creditors, possible alternatives would be (a) another plan under which someone provided funding to

12  enable continued operation of the VD Plan Debtors pending sale of the Plan Projects and resolution

13  of all Litigation Claims, including those against the Lehman Creditors (the Lehman Proponents

14  believe that the Voluntary Debtors and/or Acquisitions may be proposing an alternative Plan) or (b)

15  conversion of the VD Plan Debtors' Cases to Cases under chapter 7 in which, again, someone would

16  need to provide funding to enable continued operation of the VD Plan Debtors pending sale of the

17  Plan Projects and resolution of all Litigation Claims.  Because the Lehman VD Lenders believe that

18  the current Plan offers fair value for the VD Plan Debtors' Assets, and the foregoing alternatives

19  would involve substantial delay before Distributions would be likely for Holders of unsecured, non-

20  priority Claims, the Lehman VD Lenders recommend that eligible Creditors vote for the Plan.

21  Dated:  March 28, 2011                    PACHULSKI STANG ZIEHL & JONES LLP

22

23                                    By      */s/Robert B. Orgel*
                                          Richard M. Pachulski (CA Bar No. 90073)
24                                          E-mail: rpachulski@pszjlaw.com
                                          Dean A. Ziehl (CA Bar No. 84529)
25                                          E-mail: dziehl@pszjlaw.com
                                          Robert B. Orgel (CA Bar No. 101875)
26                                          E-mail: rorgel@pszjlaw.com

27                                          Attorneys for Lehman Commercial Paper
                                          Inc. and Lehman ALI, Inc.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT "1"

## Summary of Health and Safety Notices

| Ex. No | Citation | Date | Issuing Agency | Applicable Projects |
|---|---|---|---|---|
| 1 | Request for Supplemental Deposit | February 19,2009 | Los Angeles County Department of Regional Planning | Tesoro Project |
| 2 | Letter from City of Palmdale | March 10, 2009 | City of Palmdale | Palmdale Hills |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## EXHIBIT "2"

## Lehman VD Lenders' Claims

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**JOINT VD DISCLOSURE STATEMENT: EXHIBIT "2"**

**Prepetition Lehman VD Lender Claims:  Lehman Secured Claims and Lehman Creditor Deficiency Claims**

| | Class | Prepetition Loan | Loan Amouts Per Loan | Plan Debtors;   Claim # | Loan Amounts Per Plan Debtor | Plan Debtors' Projects' Values* | Cash Collateral & Other Collateral** | Lehman Creditor Secured Claims*** | Lehman Creditor Deficiency Claims | Combined Secured Claims & Deficiency Claims by Lehman Creditor | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Lehman ALI | Lehman Commercial |
| 1 | | Ritter Ranch Loan Agreement Claim Filed by Lehman Commercial: $287,252,096.31 | $287,252,096 | **Group I Debtors:** | | | | | | | |
| | 2.1 | | | Palmdale Hills #65 | $287,252,096 | $42,900,000 | $55,574,854 | $98,474,854 | $188,777,242 | | $287,252,096 |
| 2 | | SunCal Communities I Loan Agreement Claim Filed by Lehman Commercial: $343,221,391.06 | $343,221,391 | **Group I Debtors:** | | | | | | | |
| | 2.2 | | | SunCal Bickford #16 | $343,221,391 | $29,500,000 | $1,105,004 | $30,605,004 | $312,616,387 | | $343,221,391 |
| | 2.3 | | | Acton Estates #6 | $343,221,391 | $6,800,000 | $0 | $6,800,000 | $336,421,391 | | $343,221,391 |
| | | | | SunCal I #[__] | $343,221,391 | $0 | $3,555,122 | $3,555,122 | $339,666,269 | | $343,221,391 |
| | 2.4 | | | SunCal Summit Valley #12 | $343,221,391 | $2,200,000 | $2,850,074 | $5,050,074 | $338,171,317 | | $343,221,391 |
| | 2.6 | | | **Additional Loan Obligor: Not a Plan Debtor:** | | | | | | | |
| | 2.7 | | | SunCal Emerald #7 | $343,221,391 | $12,000,000 | $0 | $12,000,000 | $331,221,391 | | $343,221,391 |
| 3 | | SunCal Bickford 2nd Lien Loan Agreement Claim Filed by Lehman Ali: $56,494,059.38 | $56,494,059 | **Group I Debtors:** | | | | | | | |
| | 8.3 | | | SunCal Bickford #17 | $56,494,059 | $0 | $0 | $0 | $56,494,059 | $56,494,059 | |
| 6 | | Interim Loan Agreement Claim Filed by Lehman ALI: $23,795,012.59 | $23,795,013 | **Group I Debtors:** | | | | | | | |
| | 2.5 | | | SCC Communities #9 | $23,795,013 | $1,200,000 | $2,669 | $1,202,669 | | $1,202,669 | |
| | 2.8 | | | Tesoro #7 | $23,795,013 | $1,850,000 | $71 | $1,850,071 | | $1,850,071 | |
| | | **Totals for Plan Debtors:** | $710,762,559 | | | $1,764,221,745 | $84,450,000 | $63,087,794 | $147,537,794 | $1,572,146,666 | $59,546,799 | $1,660,137,661 |
| | | **Each Lehman VD Lender's Percentage of Total Loan Amounts For VD Plan Debtors** | | | | | | | | | 3% | 97% |
| | | **Total, collectively, for all Lehman VD Lenders:** | | | | | | | | $1,719,684,460 | | |

*For the Plan Debtors' Project Values, the values used are from the Lehman Creditors' appraisals undertaken during these Chapter 11 Cases. Becaue the Bickford Ranch Project's value is less than the amount of the senior lien, no value is shown for the Project with respect to the 2nd Lien loan of Lehman ALI.

**Cash amounts include both Undisputed Cash Collateral and Disputed Cash Collateral. The numbers were derived from January 2011 Filings by the Voluntary Debtors of pleadings and Monthly Operating Reports. Also, Palmdale Hills apparently owns approximately $35.2 million of CFD Bonds.  Additionally, the Lehman VD Lenders' collateral includes the Interests of SunCal Summit Valley in Seven Brothers and Kirby Estates (estimated to be worth $2.82 million) and the Interests of SunCal I in SunCal Beaumont and SunCal Johansson (estimated to be worth $3.55 million, in each case net of the respective Project owners' Allowed Claims).

***Lehman Creditor Deficiency Claims are calculated for Lehman Creditor with recourse Secured Claims against a Plan Debtor's Project by deducting the applicable Project Value and Cash Collateral from the total Allowed Claim arising under the subject Lehman Loan, first against the more senior debt.  For SunCal I, which pledged its interests in SunCal Beamont and SunCal Johannson as collateral to the Lehman Creditor, the Lehman Creditor Deficiency Claim is calculated by deducting from the amount owed on the applicable Lehman Loan both SunCal I's Cash Collateral and the remainder from the value of the Projects of SunCal Beamont and SunCal Johannson after payment of their Allowed Claims.

1    **EXHIBIT "3"**

2    **Definitions**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT "3"

## Definitions

**1.      Acquisitions.** SCC Acquisitions, Inc., a California corporation, and an indirect parent of each of the Debtors, but not a Debtor in any of the Cases.

**2.      Acton Estates.** Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor in these Cases, and the owner of the Acton Project.

**3.      Acton Project.** The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described in **Exhibit "B"** to the Plan..

**4.      Administrative Claim.** Any Claim against a VD Plan Debtor or Estate thereof, incurred after the applicable Petition Date for the applicable VD Plan Debtor but before the Confirmation Date, for any cost or expense of administration of the Case of the applicable VD Plan Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a VD Plan Debtor under section 1930 of Title 28 of the United States Code.

**5.      Administrative Claim Bar Date.** The General Administrative Claim Bar Date and the Administrative Tax Claim Bar Date.

**6.      Administrative Tax Claim** A request for payment of an Administrative Claim by a governmental unit for Taxes (or for interest or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date.

**7.      Administrative Tax Claim Bar Date** The earlier of (a) any bar date otherwise established by the Bankruptcy Court or (b) on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 180 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.

**8.      Affiliate** As to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to

direct or cause the direction of the management and policies of such Person, whether through the

ownership of voting securities or other equity ownership interest, by contract or otherwise; provided

that as to any Lehman Related Party, the term "Affiliate" does not include any Debtor.

**9.** **Allowance Determination Date** As to a Claim, the earliest of the following dates

after the Effective Date: (a) the first Business Day as of which the Claim is Allowed by a Final

Order; (b) the first Business Day as of which both the Claim is Allowed and the last day to timely

object to the Claim has passed; and (c) the date, selected in the sole and unfettered discretion of the

Lehman VD Lenders, as the first Business Day as of which they have determined that they will not

object to the subject Claim and thus are prepared to treat it as Allowed.

**10.** **Allowed** This term is used both separately and in conjunction with other defined

terms in the Plan (*e.g.*, Allowed General Unsecured Claims) and means:

a. with respect to any Administrative Claim: (1) if the Claim is based

upon a Fee Application, an unsecured Claim in the amount of such Fee Application that has been

approved by a Final Order of the Bankruptcy Court; or (2) if the Claim is based upon any

indebtedness or obligation incurred in the ordinary course of business of the VD Plan Debtors and is

not otherwise subject to an Administrative Claim Bar Date, in the amount of such Claim and with a

status as secured or unsecured as each are asserted by such creditor and not disputed by the

Liquidating Trustee or the Lehman Creditors, failing which, the amount and secured or unsecured

status thereof as fixed by a Final Order of the Bankruptcy Court; or (3) if the Holder of such Claim

was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative

Claim Bar Date, (i) in the amount and with the status as secured or unsecured and in the statutory

priority as stated in such proof of Administrative Claim if no objection to such proof of

Administrative Claim is interposed within the applicable period of time, if any, fixed by the

Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court or the Plan, or (ii) in the amount and

with the status as secured or unsecured and in the statutory priority as fixed by Final Order of the

Bankruptcy Court if an objection to such proof was interposed within any applicable period of time

so fixed; or (4) if such Claim is contingent or unliquidated, in the estimated amount and with the

status as secured or unsecured and in the statutory priority as fixed by Final Order of the Bankruptcy

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Court; or (5) in the amount of zero, if the Holder of such Claim was required to file and has <u>not</u> filed

proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, in which event

no Distribution shall be made on account of such Claim; and

b.       with respect to any Claim which is not an Administrative Claim: (1) if

no objection to such Claim was interposed by the Claims Objection Deadline, (i) if the Holder of

such Claim did not file proof thereof with the Bankruptcy Court on or before the applicable Claims

Bar Date, if a Scheduled Claim, in the amount thereof, with the status as secured or unsecured

thereof and with the statutory priority thereof and (ii) if the Holder of such Claim has filed a Proof of

Claim therefor with the Bankruptcy Court on or before the applicable Claims Bar Date, in the

amount and with the status as secured or unsecured and in the statutory priority as stated in such

Proofs of Claim; or (2) if an objection to such Claim was interposed by the Claims Objection

Deadline, in the amount or any estimated amount for purposes of allowance and with the status as

secured or unsecured and in the statutory priority thereof as fixed by Final Order of the Bankruptcy

Court; or (3) if the Holder of such Claim did not file proof thereof with the Bankruptcy Court on or

before the applicable Claims Bar Date, the Claim is not a Scheduled Claim, and the Claim is not

deemed Allowed under the terms of this Plan, in the amount of zero and no Distribution shall be

made on account of such Claim; and

c.       with respect to a Claim's status as a Reliance Claim, (1) with such

status if it is alleged on the Holder's Ballot in the manner provided therefor and if no objection

thereto is interposed by the Claims Objection Deadline, or (2) with such status if it is alleged by the

Liquidating Trustee and either (i) the Lehman VD Lenders consent or (ii) no objection thereto is

filed by the later of the Claims Objection Deadline or seventy-five (75) days after notice thereof to

the Voluntary Debtors' Committee, if surviving, and the Lehman Creditors or (3) as fixed by Final

Order of the Bankruptcy Court; and

d.       with respect to any Interest, (1) if no objection to such Interest was

interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules,

the Plan or the Bankruptcy Court, (i) if the Holder of such Interest did not file proof thereof with the

Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the

Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and with the nature thereof as listed in the VD Plan Debtors' Schedules if listed as neither disputed, contingent or unliquidated and (ii) if the Holder of such Interest has filed a Proof of Interest therefor with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and with the nature thereof as stated in such Proof of Interest, or (2) if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court; but

e.    with respect to any Administrative Claim, Claim or Interest, the term "Allowed" does not signify whether or not such Administrative Claim, Claim or Interest has been subordinated to another Administrative Claim, Claim or Interest or is entitled to the benefits of such subordination.

**11.    Allowed Amount**    The amount in which a Claim or Interest is Allowed. (If the source of allowance of a Claim (*e.g.*, a Proof of Claim) does not specify its amount, there is no Allowed Amount, unless determined by agreement of the payor under the Plan and Holder, by the Bankruptcy Court or by another court of competent jurisdiction.)

**12.    Anaverde Agreement**    That certain *Work and Cost Payment Agreement and First Amendment to Reciprocal Easement Agreement and Cooperation Agreement,* between Anaverde LLC and Palmdale Hills, dated as of June 29, 2001.

**13.    Arch**    Arch Insurance Company or an Affiliate thereof.

**14.    Asset**    Any asset that is property of a VD Plan Debtor pursuant to Bankruptcy Code section 541.

**15.    Available Cash**    Cash held by each VD Plan Debtor as of the Effective Date other than Cash Collateral.

**16.** **Avoidance Actions** All claims and defenses to Claims accruing to the VD Plan Debtors or their Estates under Bankruptcy Code sections 502(d), 506(c), 506(d), 510(c), 541, 542, 544, 545, 547, 548, 549, 550, 551 or 553.

**17.** **Ballot** The ballot to vote to accept or reject the Plan.

**18.** **Bankruptcy Code** The Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

**19.** **Bankruptcy Court** The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases of the VD Plan Debtors and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases of the VD Plan Debtors, such court or unit thereof that exercises jurisdiction over the Cases of the VD Plan Debtors in lieu thereof.

**20.** **Bankruptcy Rules** Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

**21.** **Beaumont Heights Project** The Project owned by SunCal Beaumont, located in the City of Beaumont, California, as more particularly described in **Exhibit "B"** to the Plan.

**22.** **Bickford Ranch Project** The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described in **Exhibit "B"** to the Plan.

**23.** **Bickford Second Lien Loan Agreement** That certain promissory note, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000, made by SunCal Bickford, as borrower, and payable to the order of Lehman ALI, as lender. The loan made pursuant to and/or evidenced by the Bickford Second Lien Loan Agreement is secured by a second priority deed of trust on the Bickford Ranch Project. The outstanding balance of the loan under the Bickford Second Lien Loan Agreement was not less than $54,494,059.38 as of the applicable Petition Date.

**24.** **Bond-Backed Claim** A Claim or portion of a Claim against a VD Plan Debtor, the payment of which is or was at any time secured by a Project Bond. Bond-Backed Claims are further

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

characterized as either Bond-Backed Non-Future Work Claims or Bond-Backed Future Work Claims.

**25.    Bond-Backed Claimant**    Holder(s) of a Bond-Backed Claim other than a Bond Issuer.

**26.    Bond-Backed Future Work Claim**    A Bond-Backed Claim secured by a Future Work Bond.

**27.    Bond-Backed Non-Future Work Claim**    A Bond-Backed Claim secured by a Project Bond other than a Future Work Bond, but excluding any Settling Bond Issuer-Owned Non-Future Work Claims.

**28.    Bond Claim**    A Bond-Backed Claim or a Bond Issuer Claim.

**29.    Bond Issuer**    Bond Safeguard or Arch, each in its capacity as an issuer and surety under a Project Bond.

**30.    Bond Issuer Claim**    A Claim against a VD Plan Debtor held by a Bond Issuer (either directly (including by assignment) or through rights of subrogation), and including a liquidated Claim and a contingent Claim, and arising from, under or in connection with the Bond Issuer's issuance and maintenance of a Project Bond.

**31.    Bond Modification Discussions**    Discussions, including efforts to approach and initiate discussions, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman VD Lenders or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds, regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**32.**    **Bond Obligations**    The obligations of the Bond Obligors to indemnify the Bond Issuers for any payments made or any performance obligations undertaken by the Bond Issuers under their respective Project Bonds.

**33.**    **Bond Obligors**    Obligors (other than VD Plan Debtors) who are liable to a Bond Issuer for any payments made or any performance undertaken by such Bond Issuer under its respective Project Bonds.  The Bond Issuers assert that the Bond Obligors under their respective Project Bonds include Acquisitions and Elieff.

**34.**    **Bond Safeguard**    Bond Safeguard Insurance Company, Lexon Insurance Company or an Affiliate thereof.

**35.**    **Bonded Work**    Any work or improvements, the payment, performance and/or completion of which is secured by one or more Project Bonds. Bonded Work is further characterized as either Future Work or Non-Future Work.

**36.**    **Bump Up Threshold**    As to each Group I Debtor, the following indicated threshold to be utilized in determining whether the Projected Distribution Bump Up is available for a Holder of an Allowed Class 6 Claim against such Group I Debtor:

|  | **Group I Debtor** | **Bump Up Threshold** |
|---|---|---|
| (i) | Acton Estates, LLC | $   106,842 |
| (ii) | Palmdale Hills Property, LLC | $1,514,533 |
| (iii) | SCC Communities, LLC | $      6,667 |
| (iv) | SunCal Bickford Ranch, LLC | $   532,304 |
| (v) | SunCal Communities I, LLC | $          0 |
| (vi) | SunCal Summit Valley, LLC | $   292,569 |
| (vii) | Tesoro SF, LLC | $    47,086 |
|  | **TOTAL** | $2,500,000 |

**37.**    **Business Day**    Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a); provided that with reference to the date on which something is

1  to be filed, it shall not include a day on which the applicable court is inaccessible for the purpose of

2  Filing such paper.

3      **38.**    **Case**    The chapter 11 case of a Debtor pending before the Bankruptcy Court.

4      **39.**    **Cash**    Currency of the United States of America and cash equivalents, including, but

5  not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and

6  other similar forms of payment.

7      **40.**    **Cash Collateral**    This term is used in reference to certain Assets of a VD Plan

8  Debtor's Estate with the same meaning as set forth in Bankruptcy Code section 363(a) and includes,

9  without limitation, any and all Cash that the Lehman VD Lenders assert constitute Cash Collateral

10 and that the applicable VD Plan Debtor may dispute as constituting Cash Collateral, and any and all

11 interests of the applicable VD Plan Debtor in Cash that may be held by the applicable VD Plan

12 Debtor in escrow as of the Effective Date, provided, however, (1) the term shall not include any

13 Cash held by a party other than a VD Plan Debtor pursuant to the Anaverde Agreement, (2) rights of

14 Palmdale Hills with respect to the Anaverde Agreement and amounts held pursuant thereto are

15 Litigation Claims, and (3) any liens or security interests of the Lehman VD Lender that may exist

16 with respect to the Anaverde Agreement and amounts held pursuant thereto are not eliminated or

17 diminished by the exclusion of the same from this definition.

18     **41.**    **Claim**    A claim — as Bankruptcy Code section 101(5) defines the term "claim"—

19 against any VD Plan Debtor or any VD Plan Debtor's property, including, without limitation (a) any

20 right to payment from any of the VD Plan Debtors, whether or not such right is reduced to judgment,

21 liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

22 equitable, secured, or unsecured and (b) any right to an equitable remedy for breach of performance

23 if such breach gives rise to a right of payment from any of the VD Plan Debtors, whether or not such

24 right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent,

25 matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

26     **Claim Right**    The rights, benefits and interests of a Holder with respect to a Claim

27 including, without limitation, Proofs of Claim and Encumbrances securing such Claim.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**42.**    **Claims Bar Date**    The Primary Claims Bar Date or Supplemental Claims Bar Date, as applicable.

**43.**    **Claims Objection Deadline**    For a Claim other than an Administrative Claim and except as otherwise set forth in the Plan, the first Business Day following the one hundred and twentieth (120th) day after the later of (a) the Effective Date or (b) the applicable bar date for the Claim; provided that: (a) upon application to the Bankruptcy Court, the Liquidating Trustee or Lehman VD Lenders may obtain an extension of any such deadline for up to sixty (60) days for cause shown; and (b) any deadline may be extended by agreement of the potential target of the objection and the Liquidating Trustee or a Lehman VD Lender.

**44.**    **Class**    Each group of Claims or Interests classified in Article V. of the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

**45.**    **Classes 6/7 Allowance Determination Date**    The first date, as determined by the Liquidating Trustee in his good faith discretion, as of which the Liquidating Trustee determines that, with respect to each General Unsecured Claim and each Reliance Claim in Classes 6 or 7, as applicable, the Allowance Determination Date has occurred or the Claim has been determined by a Final Order or this Plan not to be susceptible of being an Allowed Claim.

**46.**    **Classes 6/7 Distribution Amount**    The amount due to be distributed in accordance with the Plan in respect of all Classes 6 and 7 Claims that have not been Disallowed, exclusive of amounts to be distributed in respect of:  (a) any of the following Claims: (i) Formerly Secured Claims; (ii) the Allowed Claims, if any, of Elieff, Acquisitions, or any other Bond Obligor, to the extent arising from their liability to a Settling Bond Issuer under an indemnity agreement in favor of such Settling Bond Issuer; and (iii) the Allowed Claims, if any, asserted by a Settling Bond Issuer other than Claims that were originally held by a Bond-Backed Claimant; and (b) any Claim or portion of a Claim that is a Future Obligation.

**47.**    **Confirmation**    As to a particular VD Plan Debtor, the confirming of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**48.**    **Confirmation Date**    The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

**49.**    **Confirmation Order**    The order entered by the Bankruptcy Court approving Confirmation.

**50.**    **Creditor**    Any Person who is or asserts to be the Holder of a Claim against any VD Plan Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the applicable VD Plan Debtor's Confirmation Date, including, without limitation, Claims asserted to be of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**51.**    **Creditor's Assignment / Release for Lehman**    The assignment of Claims and/or release of Creditors for the benefit of the Lehman Released Parties as more fully set forth in Section 8.9.1 of the Plan.

**52.**    **Debtor**    A Voluntary Debtor or a Trustee Debtor.

**53.**    **Del Rio**    North Orange Del Rio Land, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**54.**    **Del Rio CFD Bond Proceeds**    All proceeds of those certain bonds to be designated as "City of Orange, Community Facilities District No. 06-01 (Del Rio Public Improvements) 2007 Special Tax Bonds" or similarly designated bonds to be issued by the City of Orange, California in connection with that certain community facilities district established by the City and known as the City of Orange Community Facilities District No. 06-01 (Del Rio Public Improvements).

**55.**    **Delta Coves**    Delta Coves Venture, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**56.**    **Disclosure Hearing Date**    The last day of the hearing on approval of the Disclosure Statement, which hearing commences prior to the time of entry of the order approving the Disclosure Statement.

**57.**    **Disclosure Statement**    The Joint VD Disclosure Statement.

**58.**    **Disputed Claim**    All or any part of a Claim that is not Allowed, including, without limitation, all or part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim and it is not deemed Allowed under the Plan, and either (a) the Claim is not listed in the Schedules or (b) the Claim is listed in the Schedules as unliquidated,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

disputed, contingent, unknown or in a zero amount, (ii) the liability for, amount, priority or status of the Claim as secured, status as unsecured or status as a Reliance Claim (a) is the subject of a pending proceeding, whether arbitration, mediation, litigation, adversary proceeding or otherwise; (b) is subject to offset based upon a filed judgment, filed order, filed stipulation or express provision in an executed agreement that was filed or executed, as appropriate, after the alleged right to offset arose; (c) is the subject of a timely objection; or (d) is the subject of a request for estimation made in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court or the Plan, in each case that is filed on or before the Claims Objection Deadline, provided that any such proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

**59.    Distribution**  A payment to a Holder of an Allowed Claim or Allowed Interest that is provided for under the Plan.

**60.    Distribution Agent**  The Liquidating Trustee.

**61.    Distribution Date**  With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan or as soon as practicable thereafter.

**62.    Effective Date**  A date selected by the Lehman VD Lenders that is no earlier than the Confirmation Date and no later than the sixtieth (60th) day after the Confirmation Date.

**63.    Elieff**  Bruce Elieff, an owner of and the manager of Acquisitions, an indirect parent of each of the Debtors.

**64.    Emerald Meadows Project**  A 178 acre site situated in the City of Rubidoux in Riverside County, California owned by SunCal Emerald.

**65.    Encumbrance**  Any Lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, unassumed affirmative obligation under a development agreement or subdivision improvement agreement, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject Plan Project, including any right of recovery, tax (including foreign, federal, state and local tax), order of any governmental authority or other claim there against or therein, of any kind or nature (including

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that the acquirer is a successor, transferee or continuation of the sellers or their business, and (iv) any leasehold interest, license or other right, in favor of a person other than the transferor in connection with a sale or conveyance, to use any portion of the subject Project), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

**66.** **ES Action** That certain adversary proceeding filed in the Cases and pending before the Bankruptcy Court (as Adversary Case No. 8:09-ap-01005).

**67.** **Estate or Estates** The bankruptcy estates of the VD Plan Debtors created pursuant to section 541 of the Bankruptcy Code.

**68.** **Federal Judgment Rate** The rate of interest applicable to federal civil judgments, as provided in 28 U.S.C. § 1961(a), as of the applicable Petition Date.

**69.** **Fee Applications** Applications of Professionals under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases of the VD Plan Debtors.

**70.** **Final Confirmation Order** The Confirmation Order when it becomes a Final Order.

**71.** **Final Order** A final and non-appealable judgment, order, ruling or other decree issued and entered by a court of competent jurisdiction.

**72.** **Formerly Secured Claim** An Allowed Claim against a Group I Debtor that is a General Unsecured Claim or Reliance Claim and is Allowed based upon either: (a) there being a Proof of Claim for such Claim against the applicable VD Plan Debtor that alleges that the Claim is a Secured Claim; or (b) the Claim being a Scheduled Claim as to the applicable VD Plan Debtor, with its status indicated as secured on such VD Plan Debtor's Schedules.

**73.** **Future Obligation** A Claim or portion of a Claim against a VD Plan Debtor that is not a Settling Bond Issuer-Related Claim, but, at each relevant time: (a) arises from such VD Plan

Debtor's obligation (pursuant to a contract, a permit or otherwise) to perform, complete or pay for certain work in connection with the development of its Plan Project, which work would have constituted Future Work had the payment and/or performance of the same been secured by a Project Bond, and which obligation of such VD Plan Debtor has not yet become due (pursuant to the terms of the applicable contract, permit or other basis for such obligation) without regard to the effect of any acceleration of the type described in clause (b) below ; or (b) is contingent, without regard to an acceleration triggered by a default of the type specified in Bankruptcy Code § 365(b)(2), *e.g.*, a default arising from the fact of the commencement of the bankruptcy case of the VD Plan Debtor, its insolvency, its financial condition or the appointment of the Trustee; or (c) is unliquidated.

**74.** **Future Work**   That portion of Bonded Work (which may be part of a larger work project):  (a) that relates solely to a particular Plan Project; and (b) that is not performed or otherwise provided to the Plan Project until after the Effective Date.

**75.** **Future Work Bond**   A Project Bond that secures the payment, completion or performance of Future Work.

**76.** **Future Work Obligation Collateral**   The collateralization or credit enhancement for the reimbursement obligations to Settling Bond Issuers of each applicable Lehman Nominee, as more fully described in Plan Section 8.8.2.

**77.** **General Administrative Claim Bar Date**   The last date fixed by the Plan for the filing of Proofs of Claim or requests for payment of Administrative Claims other than for Taxes. Under the Plan, the General Administrative Claim Bar Date shall be the first Business Day following the sixtieth (60th) day after the Confirmation Date.

**78.** **General Unsecured Claim**   A Claim, , without limitation, a Bond-Backed Claim, Bond Issuer Claim or Claim arising under Bankruptcy Code § 502(h), against a VD Plan Debtor that is <u>not</u> any of the following:

(a) an Administrative Claim;

(b) a Priority Tax Claim;

(c) a Secured Claim;

(d) a Priority Claim;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(e) a Reliance Claim; or

(f) a Settling Bond Issuer-Related Future Work Claim.

**79.    Group I Debtor**    Any of the following chapter 11 debtors and debtors-in-possession: Acton Estates; Palmdale Hills; SCC Communities; SunCal I; SunCal Bickford; SunCal Summit Valley; or Tesoro.

**80.    Group II Debtor**    Any of the following chapter 11 debtors and debtors-in-possession:  SunCal Beaumont; SunCal Johannson; Seven Brothers; or Kirby Estates.

**81.    Holder**    The beneficial owner of any Claim or Interest, including the Lehman VD Lenders as to the Lehman Loans.

**82.    Impaired**    Not Unimpaired.

**83.    Insider**    (1) A Person other than a Lehman Related Party that is an "insider" as to any VD Plan Debtor as defined in Bankruptcy Code section 101, (2) an Affiliate of such a Person or (3) without limiting the foregoing, as to all VD Plan Debtors, *inter alia*, each other VD Plan Debtor, SunCal Management, LLC, Acquisitions, Elieff, Voss, Cook & Thel LLP, Greenfield Communications, and SunCal Master Venture Member, LLC.

**84.    Interest**    Any equity security or interest in any VD Plan Debtor within the meaning of section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the VD Plan Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, or any other equity security or interest.

**85.    Interim Capped Distribution**    At the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall calculate the following described Distributions payable to Holders of Claims in the following described Classes, assuming for such calculation that all Disputed Claims will become Allowed Claims and, to the extent still possible, that each Bump Up Threshold will be exceeded; and, within forty-five days following the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall make such additional Distributions to holders of Allowed Claims in the applicable Class as such calculation entitles each such Holder. The first such calculation need not be made sooner than forty-five (45) days following the Effective

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Date and the first additional Distributions, if any, with respect to such calculations shall not be payable sooner than ninety (90) days following the Effective Date.  Such calculations only shall be made with respect to: (a) all Distributions due for Holders of Allowed Claims in Class 8 and (b) Distribution due with respect to the Lehman Distribution Enhancement for Holders of Allowed Claims in Class 6 or Class 7.  Such calculations only shall be made with respect to Claims against an applicable VD Plan Debtor so long as the Liquidating Trustee believes, in the Liquidating Trustee's reasonable discretion, that additional amounts may become available: (i) for Distribution of any amounts payable under the Plan for Holders of Class 8 Claims against the applicable VD Plan Debtor; or (ii) for Distribution of the Lehman Distribution Enhancement for Holders of Class 6 or Class 7 Claims against the applicable VD Plan Debtor.

86.    **Interim Loan Agreement**    That certain Loan Agreement, dated as of October 31, 2007, by and between SCC LLC, as borrower, and Lehman ALI, as agent and lender, pursuant to which the lender thereunder made a loan to the borrower in the maximum aggregate principal amount of approximately $20,000,000.  The outstanding balance of the loan under the Interim Loan Agreement was not less than $23,795,012.59 as of the applicable Petition Date.  The loan made pursuant to and/or evidenced by the Interim Loan Agreement is supported by a Subsidiary Guaranty made by SCC Communities, Tesoro and Del Rio and the obligations of the guarantors thereunder are secured by (a) a first priority deed of trust on the Joshua Ridge Project; (b) a first priority deed of trust on the Tesoro Project; and (c) an assignment of the Del Rio CFD Bond Proceeds.

87.    **Johannson Ranch Project**    The Project owned by SunCal Johannson, located in the City of Modesto, California, as more particularly described in **Exhibit "B"** to the Plan.

88.    **Joint VD Disclosure Statement**    The Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders.

89.    **Joint VD Plan**    The Plan.

90.    **Joshua Ridge Project**    The Project owned by SCC Communities, located in the City of Victorville, California, as more particularly described in **Exhibit "B"** to the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**91.** **Kirby Estates**  Kirby Estates, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**92.** **LBHI**  Lehman Brothers Holdings Inc., a Delaware corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases.

**93.** **Lehman Administrative Loans**  (a) The post-petition financing provided by Lehman ALI to Palmdale Hills, SunCal Bickford, and Acton Estates, under which first priority priming Liens were granted to Lehman ALI on all borrower VD Plan Debtors' assets, and as to which financing, super-priority administrative status was afforded and the automatic stay was modified to the extent necessary to implement the financing; (b) any post-petition financing provided by any Lehman Related Party after September 23, 2009 to any of the VD Plan Debtors or their Estates pursuant to an order of the Bankruptcy Court; and (c) all interest, fees and other charges thereupon.  The aggregate amount of such loans to all of the borrower VD Plan Debtors was not less than approximately $75,000 as of March 28, 2011.

**94.** **Lehman ALI**  Lehman ALI, Inc., a Delaware corporation.

**95.** **Lehman Claim Liens**  The Liens that, as of the moment prior to the Effective Date, secure any, all or some of the Claims of any, all or some of the Lehman VD Lenders.

**96.** **Lehman Commercial**  Lehman Commercial Paper Inc., a New York corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases.

**97.** **Lehman Creditor**  A Lehman VD Lender, Northlake Holdings or OVC Holdings.

**98.** **Lehman Creditor Deficiency Claim**  With respect to each VD Plan Debtor, the Claim of a Lehman VD Lender arising from the deficiency owed to such Lehman VD Lender under the applicable Lehman Loan after the conveyance to a Lehman VD Lender or a Lehman Nominee under the Plan of a Plan Project of a VD Plan Debtor that either is the direct collateral of the Lehman VD Lender or that is owned by an entity the interests in which are collateral of the Lehman VD Lender.  (*See* Plan Article V and Plan Section 8.7.1).

**99.** **Lehman Creditor Distribution Funding**  The agreement under this Plan of the Lehman VD Lenders: (a) to fund, through permitting use of Cash Collateral or through new transfers of Cash or other arrangements, the Distributions that Plan Articles IV. and VI. mandate for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the following to the extent not paid from other designated sources: (i) Allowed Secured Real

Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax

Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims

(Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative

treatment set forth in Section 6.4.3 hereof is selected), (vii) the Lehman Guaranteed Minimum

Distribution, (viii) the Lehman Distribution Enhancement for Holders of Allowed General

Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6, and (ix) Allowed General

Unsecured Claims in Class 8; and (b) to arrange, as provided in Plan Article VI, for the applicable

Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed

Bond-Backed Future Work Claim and to reimburse the agreed amount to the applicable Settling

Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising

under a Future Work Bond, as provided in the applicable Settling Bond Issuer Agreements.

**100.    Lehman Distribution Enhancement**    The enhanced recoveries available under this

Plan to be arranged by the Lehman VD Lenders, increasing recoveries to an amount that is (a) five

percent (5%) of each Allowed General Unsecured Claim against a Group I Debtor and (b) forty or

fifty percent (40% or 50%), as applicable, of each Allowed Reliance Claim against a Group I

Debtor, provided, in each case, that the Holder of such Claim executes and delivers to the Lehman

Creditors the Creditor's Assignment / Release for Lehman.

**101.    Lehman Guaranteed Minimum Distribution**    The guaranteed, minimum

recoveries provided under this Plan to be funded, unconditionally, by the Lehman VD Lenders of

one percent (1%) of each Allowed General Unsecured Claim in Class 7 and one percent (1%) of

each Allowed Reliance Claim in Class 6.

**102.    Lehman Loan**    Each loan (or series of loans) made pursuant to and/or evidenced by

the following agreements: (a) SunCal Communities I Loan Agreement; (b) Bickford Second Lien

Loan Agreement; (c) Ritter Ranch Loan Agreement; and (d) Interim Loan Agreement.

**103.    Lehman Nominee**    The Person or any Person designated by the Lehman VD

Lenders, or any of them, to take title to a Plan Project and/or any other Asset of a VD Plan Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**104.    Lehman-Owned Settling Bond Issuer-Related Claim**    A Settling Bond Issuer – Related Claim after assignment to a Lehman Related Party.

**105.    Lehman Plan Funding**    The agreement under this Plan of the Lehman VD Lenders to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding.

**106.    Lehman Post-Confirmation Expense Funding**    The agreement under this Plan of the Lehman VD Lenders to pay an amount (which amount shall not exceed $500,000 nor shall it be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

**107.    Lehman Proponents**    The Lehman VD Lenders, with reference to their status as Proponents.

**108.    Lehman Related Party**    A Lehman Creditor or Lehman Nominee, or an Affiliate of any of them.

**109.    Lehman Released Claims**    Any and all causes of action, actions, rights of action, suits, judgments, liens, indebtedness, damages, losses, claims, liabilities, obligations, attorneys' fees, costs, expenses and demands of every kind and character, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, asserted or unasserted, fixed or contingent, foreseen or unforeseen, and whether based on contract, tort, statute or other legal or equitable theory of recovery, including, without limitation, any Litigation Claims, whether for damages, subordination or other remedies, and including any and all objections or defenses to all Claims, Liens, rights, or causes of action of all Lehman Related Parties, but (a) not including an obligation of a Lehman VD Lender expressly set forth as arising under the Plan and (b) as to a Creditor, not including claims of the Creditor unrelated in any way to its Claims, these Cases, the VD Plan Debtors or the Plan Projects (*e.g.*, such unrelated claims excluded from this definition may include, by example, a claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to the extent asserted against a TD Plan Debtor for goods or services provided to that TD Plan

Debtor or for money lent to that TD Plan Debtor).  Without limiting the generality of the foregoing,

the Lehman Released Claims shall include, without limitation, any loss, liability, expense and/or

detriment, of any kind or character, in any way arising out of, connected with, or resulting from the

acts or omissions of the Lehman Creditors and the other Lehman Released Parties, or any of them,

including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving

interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair

dealing, breach of confidence, any cause of action or defenses based on the negligence of any

Lehman Creditor or other Lehman Released Party or any "lender liability" theories, breach of

funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence,

bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act,

intentional or negligent infliction of mental distress, tortious interference with contractual relations,

tortious interference with corporate governance or prospective business advantage, breach of

contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance,

or any claim for wrongfully taking any action in connection with the foregoing.

  **110.** **Lehman Released Parties** All of the following Persons:  (a) the Lehman Creditors,

(b) each of the defendants to any complaint, pending or dismissed, in the ES Action, (c) each, every

and any owner, including future owners, of each of the Plan Projects, including the Lehman

Nominees, which owner is, was or will be a grantee, transferee, successor or assign of the applicable

VD Plan Debtor that owns or owned such Plan Project, (d) LBHI, Property Asset Management, Inc.,

and any other direct or indirect subsidiary thereof including, without limitation, any entity that is or

was a member or partner of any upper-tier joint venture, partnership or limited liability company that

is or was a direct or indirect parent of any VD Plan Debtor, (e) Alvarez & Marsal, LLC and (f) the

respective Affiliates of all of the foregoing Persons and each of their respective officers, directors,

shareholders, members, managers, employees, agents, independent contractors, administrators,

consultants, asset managers, attorneys, accountants, trustees, insurers, representatives, successors

and assigns.

  **111.** **Lehman Secured Claim** A Secured Claim held by a Lehman VD Lender.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**112.** **Lehman VD Lender**   Lehman ALI or Lehman Commercial, including each in its capacity as agent, or agent and lender, with respect to the applicable Lehman Loans. Any funding obligation or similar commitment of the "Lehman VD Lenders" under the Plan is a singular, aggregate obligation as to the amount or obligation specified, and thus will be satisfied by a single satisfaction thereof.

**113.** **Liquidating Trustee**   The Person selected by the Proponents to serve as the Liquidating Trustee for the VD Plan Debtors, with the powers and duties set forth in the Plan, whose identity shall be disclosed by the Proponents prior to the Confirmation Hearing, and/or any successor trustee appointed by the Bankruptcy Court in the event that the initial Liquidating Trustee resigns or is removed by the Bankruptcy Court.

**114.** **Litigation Claim**   Any interest of the Estates, the VD Plan Debtors, the Voluntary Debtors' Committee or the Liquidating Trustee, in any claim, right, cause of action, remedy (including under Bankruptcy Code § 550) or objection or defense (including to a Claim or Lien) that has been or may be commenced or asserted by an Estate, a VD Plan Debtor, the Voluntary Debtors' Committee or the Liquidating Trustee, as the case may be, including, but not limited to:  (i) an Avoidance Action; (ii) a claim, right or cause of action for turnover of property to any VD Plan Debtor's Estate and/or the Liquidating Trustee; (iii) a claim, right or cause of action for the recovery of property by, or payment of money to, a VD Plan Debtor's Estate or the Liquidating Trustee; (iv) the right of the Liquidating Trustee to damages, recoupment, or setoff; or (v) an objection to a Claim.

**115.** **Litigation Recoveries**   Any Cash or other property received by the VD Plan Debtors, the Liquidating Trustee, or the Voluntary Debtors' Committee, as the case may be, from all or any portion of a Remaining Litigation Claim(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

**116.** **Mechanic's Lien Claim**   Mechanic's lien claims against a VD Plan Debtor's Project arising pursuant to California Civil Code § 3110, et seq. that were either allegedly perfected prepetition or otherwise and allegedly satisfy the requirements of Bankruptcy Code section 546(b).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

117. **Net Cash Litigation Recoveries**  Any Litigation Recoveries consisting of Cash and any Cash proceeds of Litigation Recoveries less associated Post-Confirmation Expenses incurred in connection therewith.

118. **Net Cash Proceeds**  Net Proceeds consisting of Cash.

119. **Net Proceeds**  Gross proceeds of sale, liquidation or refinancing, less costs, expenses, fees, commissions, taxes (including federal, state and local income tax calculated at an assumed rate of forty-five percent (45%)) and other charges incurred directly in the sale, liquidation or refinancing of the underlying Asset, including payment of Encumbrances senior to those of the most senior Encumbrance of a Lehman Related Party.

120. **New Value**  Money or money's worth in goods, services, or new credit voluntarily transferred or extended to the applicable VD Plan Debtor, but not an obligation substituted for an existing obligation or satisfaction of an antecedent debt owed by the creditor.

121. **New York Bankruptcy Cases**  The chapter 11 bankruptcy cases of, *inter alia,* Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., pending before the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 08‑13555 (JMP).

122. **New York Bankruptcy Court**  The United States Bankruptcy Court for the Southern District of New York having jurisdiction over the New York Bankruptcy Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Southern District of New York; or, in the event such courts cease to exercise jurisdiction over the New York Bankruptcy Cases, such court or unit thereof that exercises jurisdiction over the New York Bankruptcy Cases in lieu thereof.

**Non-Future Work**  Bonded Work that is not otherwise Future Work.

123. **Northlake Holdings**  Northlake Holdings LLC, a Delaware limited liability company.

124. **Other Secured Claim**  A Secured Claim that is not a Secured Real Property Tax Claim, Lehman Secured Claim or Sr. Secured Mechanic's Lien Claim.  Other Secured Claims include, without limitation, any Seller Financing Secured Claims.

**125.**    **OVC Holdings**    OVC Holdings LLC, a Delaware limited liability company.

**126.**    **Palmdale Hills**    Palmdale Hills Property, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Ritter Ranch Project.

**Payment Bond**    A Project Bond (or portion thereof) under which the Bond Issuer guaranteed payment to and for the benefit of contractors and other persons who provide Bonded Work to the applicable Plan Project for which the Payment Bond was issued.

**Performance Bond**    A Project Bond (or portion thereof) under which the Bond Issuer guaranteed the performance and completion of Bonded Work  and the payment of any costs and expenses incurred by the beneficiary in connection therewith.  Typically, a Performance Bond would guarantee to the applicable beneficiary (typically a municipality or other governmental entity) that the obligations of a VD Plan Debtor under a specified contract (such as a subdivision improvement agreement), or certain of such obligations, would be performed and satisfied by the subject VD Plan Debtor.

**127.**    **Permitted Liens**    (a) Statutory liens for Secured Real Property Tax Claims to the extent securing amounts required to be paid under the Plan; (b) easements, covenants, conditions, restrictions and other matters of record affecting real property, leasehold estates or personalty or any interest therein (excluding any rights of appeal from the Sale Order) more particularly described on **Exhibit "C"** attached hereto, (c) the Lehman Claim Liens, (d) the effect of any building and zoning regulations, now existing or hereafter in effect with respect to the relevant Plan Project that are not violated by the current use of the Plan Project, (e) oil, mineral and/or water rights, and claims of title thereto, shown by the public records, (f) discrepancies, conflicts in boundary lines, shortages in area or encroachments which an inspection or survey of the subject Plan Project would disclose and (g) other Liens to which the transferee of the property, in connection with such transfer, agrees to take subject, including any Lehman Claim Liens.

**128.**    **Person**    An individual, unincorporated association or organization, joint venture, partnership, limited liability company, joint-stock company, corporation, trust, business trust, government or associated political subdivision, governmental agency, governmental unit, governmental authority, estate, committee or other entity of whatever nature.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**129.    Petition Dates**    The following are dates that each of the Voluntary Debtors filed their voluntary chapter 11 petitions:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Tesoro | November 19, 2008 |

**130.    PH CFD Bonds**    Those certain bonds of Palmdale Hills, referred to as "CFD" bonds.

**131.    Plan**    This *Second Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders*, together with the Exhibits hereto, as the same may be amended, modified, supplemented or restated from time to time.

**132.    Plan Projects**    All of the Projects of the VD Plan Debtors, as more particularly described in **Exhibit "B"** to the Plan.

**133.    Plan Release for Lehman**    In exchange for, *inter alia*, the Lehman Plan Funding, as more fully set forth in Section 8.9.2 of the Plan, the VD Plan Debtors shall release all Lehman Released Claims against all Lehman Released Parties effective as of the Effective Date.

**134.    Plan Reserve**    A reserve fund established by the Liquidating Trustee to hold all Cash required or permitted to be deposited therein on the Effective Date pursuant to the terms of the Plan and which funds shall be subject to withdrawal pursuant to the terms of the Plan, including (i) any unencumbered Cash of the VD Plan Debtors and (ii) the amounts to be funded pursuant to the Lehman Plan Funding, all upon the terms and conditions set forth in Article VIII of the Plan.  Such funds shall be held in account(s) to be established at an FDIC insured bank to be selected by the Liquidating Trustee with the consent of the Lehman VD Lenders, which consent shall not be unreasonably withheld.

**135.    Plan Supplement**    A supplemental exhibit to this Plan, to be filed by the Lehman Proponents by **October 18, 2011**, containing one or more documents that a Lehman VD Lender or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman Nominee believes in good faith is necessary or appropriate to consummate one or more of the transactions contemplated by this Plan.

**136.**    **Post-Confirmation Account**    An account with a bank, financial institution or similar depository in which the Liquidating Trustee holds Cash or other liquid assets or securities for any VD Plan Debtor, including the Plan Reserve.

**137.**    **Post-Confirmation Expenses**    The fees and expenses incurred by the Liquidating Trustee following the Effective Date for the purpose of paying or satisfying:

(a)    Compensation for the Liquidating Trustee for the period following the Effective Date;

(b)    Expenses for fees of the professionals retained by the Liquidating Trustee following the Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities in respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise on or after the Effective Date consistent with the Plan.

**138.**    **Primary Claims Bar Date**    For Claims, other than Administrative Claims, the last date for Filing Proofs of Claim as was established by order or orders of the Bankruptcy Court, which date was March 31, 2009 for certain Claims; provided that: (a) for Claims arising from the rejection of executory contracts or unexpired leases, the date(s) as set forth in Plan Section 11.6; (b) for Claims resulting from the successful prosecution or settlement of Avoidance Actions, the later of any otherwise applicable date under this paragraph and forty-five (45) days following entry of the Final Order determining such Avoidance Action; and (c) for Claims of governmental units, the later of any otherwise applicable date under this paragraph and 180 days after the date of the applicable order for relief under Bankruptcy Code §§ 301 or 303, as applicable.

**139.**    **Priority Claim**    Any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**140.**    **Priority Tax Claim**    Any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**141.**    **Proof of Claim**    A proof of claim as referenced in Bankruptcy Code section 501(a).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**142.** **Proof of Interest**   A proof of interest as referenced in Bankruptcy Code section 501(a).

**143.** **Professional**   A Person (a) employed by the VD Plan Debtors or the Voluntary Debtors' Committee pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 3291, 330 and 331 of the Bankruptcy Code, (b) employed to perform professional services for the Liquidating Trustee after the Effective Date or (c) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code.

**144.** **Professional Fees**   (a) All Allowed Claims for compensation and for reimbursement of expenses under sections 328, 330 and/or 503(b) of the Bankruptcy Code and (b) reasonable amounts for compensation and reimbursement of expenses for Professionals employed by the Liquidating Trustee.

**Project Bond**   A payment and performance bond, labor and materials bond, payment bond or any other type of bond issued by a Bond Issuer for the benefit of a particular VD Plan Debtor and with respect to, for the benefit of and in connection with the development of the Plan Project owned by such VD Plan Debtor and with respect to which such Bond Issuer has a Claim.  Project Bonds (or portions thereof) are further characterized as either Payment Bonds or Performance Bonds and a single Project Bond can be, in part, a Payment Bond and, in part, a Performance Bond.

**145.** **Project Value**   The following amount under the column titled, "Project Value," for each of the following Projects (or portions thereof) of the following VD Plan Debtors:

| PROJECT | NAME OF DEBTOR | PROJECT VALUE |
|---|---|---|
| | **Group I Debtors:** | |
| Acton Project | Acton Estates | $6,800,000 |
| Ritter Ranch Project | Palmdale Hills | $42,900,000 |
| Joshua Ridge Project | SCC Communities | $1,200,000 |
| Bickford Ranch Project | SunCal Bickford | $29,500,000 |

| PROJECT | NAME OF DEBTOR | PROJECT VALUE |
|---|---|---|
| Summit Valley Project (portion) | SunCal Summit Valley | $2,200,000 |
| Tesoro Project | Tesoro | $1,850,000 |
| | **Group II Debtors:** | |
| Summit Valley Project (portion) | Kirby Estates | $2,800,000 |
| Summit Valley Project (portion) | Seven Brothers | $200,000 |
| Beaumont Heights Project | SunCal Beaumont | $1,800,000 |
| Johannson Ranch Project | SunCal Johannson | $4,000,000 |

146. **Projected Distribution Bump Up**   A ten percent (10%) increase in the Lehman Distribution Enhancement for each Holder of an Allowed Reliance Claim in Class 6 against a Group I Debtor applicable if the Classes 6/7 Distribution Amount as to the applicable Group I Debtor does not exceed the Bump Up Threshold for that Group I Debtor (which Bump Up Thresholds, in the aggregate, total $2.5 million), whereby the Liquidating Trustee, in addition to the Guaranteed Minimum Distribution shall pay such Holder an additional forty-nine percent (49%) (instead of 39%) of the Allowed Amount of the Holder's Allowed Class 6 Reliance Claim against the applicable Group I Debtor.

147. **Projects**   The Debtors' real estate development projects, together with all rights, remedies, privileges and easements appurtenant thereto and all other real and personal, tangible and intangible, property related thereto.

148. **Proponents**   The Lehman VD Lenders, in their capacity as proponents of the Plan.

149. **Pro Rata**   (a) With respect to any Distribution in respect of any Allowed Claim, proportionately, so that the ratio of (i)(1) the amount of property distributed on account of such Allowed Claim to (2) the amount of such Allowed Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class or Classes of the applicable Estate sharing in such Distribution to (2) the amount of all Allowed Claims in such Class or Classes of the applicable Estate; and (b) in calculating allocations of responsibility for obligations

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

among VD Plan Debtors, Pro Rata shall be determined in reference to the Liquidating Trustee's

reasonable estimate of the gross value of each applicable Estate's Assets as of the Confirmation

Date.

**150.**    **Reliance Claim**    A Claim, including a Bond Claim, against a VD Plan Debtor, which

Claim has the following attributes:

(i)    The Claim is for New Value (*i.e.*, money or money's worth in goods, services,

or new credit voluntarily transferred or extended to the applicable VD Plan Debtor, but not an

obligation substituted for an existing obligation or satisfaction of an antecedent debt owed by the

creditor) transferred or extended after the Reliance Date and prior to the applicable Petition Date(s);

(ii)    The Claim was timely of record as follows: either (1) filed by the Primary

Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3)

listed on the filed Schedules by March 25, 2011 as a Scheduled Claim; and

(iii)    The Claim is not any of the following:

(a)    an Administrative Claim;

(b)    a Priority Tax Claim;

(c)    a Secured Claim;

(d)    a Priority Claim;

(e)    a Settling Bond Issuer-Related Future Work Claim;

(f)    a Claim of an Insider; or

(g)    a Claim of a Lehman Creditor (other than a Lehman-Owned Settling

Bond Issuer-Related Claim).

**151.**    **Reliance Claimant**    The Holder of an Allowed Reliance Claim.

**152.**    **Reliance Date**    August 1, 2007, the earliest date on which the Lehman VD Lenders

(or any of their Affiliates) are alleged to have engaged in inequitable conduct as described in the ES

Action.

**153.**    **Remaining Litigation Claim**    A Litigation Claim to the extent not expressly waived,

relinquished, released, compromised or settled under the Plan or prior to the Plan's Effective Date

through entry of a Final Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

154. **Remaining Other Assets**   All of the then remaining Assets of the VD Plan Debtors' Estates excluding the Plan Projects, as of the point in time referenced in any particular utilization of this term in the Plan.

155. **Residual Cash**   As to any particular VD Plan Debtor's Estate, Net Cash Proceeds derived from the liquidation by the Liquidating Trustee of any Remaining Other Assets of such Estate, including any applicable Net Cash Litigation Recoveries in which such Estate has an interest, to the extent not subject to a Secured Claim and payable to or for a Holder thereof and remaining after payment or reserve for the Post-Confirmation Expenses, including post-Confirmation Date intercompany payables and reimbursements for Lehman Post-Confirmation Expense Funding, all as more fully set forth in Section 8.3 of the Plan, and Cash other than Cash Collateral if not utilized for any other expense under the Plan.

156. **Ritter Ranch Loan Agreement**   That certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, and Lehman Commercial, as administrative agent and lender, pursuant to which the lenders thereunder made loans to the borrower in the maximum aggregate principal amount of approximately $264,000,000.  The loans made pursuant to and/or evidenced by the Ritter Ranch Loan Agreement are secured by, among other things, a first priority deed of trust on the Ritter Ranch Project.  The outstanding balance of the loans under the Ritter Ranch Loan Agreement was not less than $287,252,096.31 as of the applicable Petition Date.

157. **Ritter Ranch Project**   The Project owned by Palmdale Hills, located in the City of Palmdale, California, as more particularly described in **Exhibit "B"** to the Plan.

158. **Sale Order**   The Final Confirmation Order or other Final Order that effectuates the conveyance of the applicable Plan Project to the applicable Lehman Nominee.

159. **SCC Communities**   SCC Communities, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Joshua Ridge Project.

160. **SCC LLC**   SCC Acquistions, LLC, a Delaware limited liability company.

161. **SCC/Palmdale**   SCC/Palmdale, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

162.  **Scheduled Claim**  A Claim listed in a VD Plan Debtor's Schedules, if listed as neither disputed, contingent or unliquidated, in the amount for such Claim, with the status as secured or unsecured for such Claim and with the statutory priority for such Claim as listed in the VD Plan Debtors' Schedules.

163.  **Schedules**  The schedules of assets and liabilities and list of equity security holders filed by the VD Plan Debtors, as required by section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

164.  **Section 1124(2) Unimpairment**  Unimpairment that may include the cure or waiver of defaults, reinstatement of the maturity of a Claim that was not fully matured prior to the applicable Petition Date or, in a similar manner to the circumstance in *In re Entz-White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), payment in full on the Effective Date, without payment of any penalty amounts or other amounts related to the default, of a Claim that was fully matured prior to the applicable Petition Date.

165.  **Secured Claim**  Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code section 506, to the extent that it is secured by a valid and unavoidable Lien on an Asset or Assets of one or more VD Plan Debtors.

166.  **Secured Real Property Tax Claims**  Secured Claims, other than Priority Tax Claims, held by various government entities for real property tax assessments secured by Liens on the underlying real properties owned by the VD Plan Debtors but that are non-recourse to the VD Plan Debtors.

167.  **Seller Financing**  Obligations, incurred to a seller of real property in connection with the sale thereof, secured by a first lien deed of trust on such real property.

168.  **Seller Financing Encumbered Parcels**  Real property with respect to which there is a Seller Financing Secured Claim.

169.  **Seller Financing Secured Claim**  Secured Claims for and on account of Seller Financing.

170.    **Senior Claim**   Any or all of the following: (i) Administrative Claims, (ii) Priority Claims, (iii) Priority Tax Claims, and (iv) Secured Claims other than Seller Financing Secured Claims.

171.    **Settling Bond Issuer**   A Bond Issuer that elects to enter into a Settling Bond Issuer Agreement.

172.    **Settling Bond Issuer Agreement**   That certain agreement(s) summarized in Plan Section 8.8.

173.    **Settling Bond Issuer-Backed Claim**   Any Bond-Backed Claim held by a Bond-Backed Claimant or its assignee that is secured by a Project Bond issued by a Settling Bond Issuer, excluding such a Claim when held by the applicable Settling Bond Issuer or an Affiliate thereof. Settling Bond Issuer-Backed Claims are further characterized as Settling Bond Issuer-Backed Non-Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

174.    **Settling Bond Issuer-Backed Future Work Claim**   A Settling Bond Issuer-Backed Claim secured by a Future Work Bond.

175.    **Settling Bond Issuer-Backed Non-Future Work Claim**   A Settling Bond Issuer-Backed Claim secured by a Project Bond other than a Future Work Bond.

176.    **Settling Bond Issuer-Incurred Future Work Obligations**   Any and all payments made by a Settling Bond Issuer under or in respect of a Future Work Bond issued by such Settling Bond Issuer and/or any liabilities incurred and paid by such Settling Bond Issuer in satisfaction of its obligations under a Future Work Bond issued by such Settling Bond Issuer.

177.    **Settling Bond Issuer-Owned Claim**   A Bond Issuer Claim held by a Settling Bond Issuer or its Affiliate immediately prior to the Effective Date including, without limitation, any Bond-Backed Claims acquired by a Settling Bond Issuer in connection with the payment, performance or settlement of its obligations under any Project Bonds.  Settling Bond Issuer-Owned Claims are further characterized as Settling Bond Issuer-Owned Non-Future Work Claims or Settling Bond Issuer-Owned Future Work Claims.

178.    **Settling Bond Issuer-Owned Future Work Claim.**   A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Future Work Bond.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

179. **Settling Bond Issuer-Owned Non-Future Work Claim**  A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Project Bond other than a Future Work Bond.

180. **Settling Bond Issuer-Related Claim**  A Settling Bond Issuer-Owned Claim or a Settling Bond Issuer-Backed Claim.

181. **Settling Bond Issuer-Related Future Work Claim**  A Settling Bond Issuer-Related Claim arising from or covered by a Future Work Bond.  Settling Bond Issuer-Related Future Work Claims are further characterized as Settling Bond Issuer-Owned Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

182. **Settling Bond Issuer Release for Lehman Released Parties**  That certain assignment / release to be issued under the Settling Bond Issuer Agreement in favor of the Lehman Released Parties as described in Plan Section **Error! Reference source not found.**.

183. **Seven Brothers**  Seven Brothers, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of that portion of the Summit Valley Project not owned by Kirby Estates or SunCal Summit Valley.

184. **Simple Unimpairment**  Unimpairment that is not Section 1124(2) Unimpairment or Unimpairment With Surrender or Abandonment.

185. **SJD Development**  SJD Development Corp., a California corporation, a Voluntary Debtor in these Cases.

186. **SJD Partners**  SJD Partners, Ltd., a California limited partnership, a Voluntary Debtor in these Cases.

187. **Sr. Secured Mechanic's Lien Claim**  Mechanic's Lien Claims that are Secured Claims and, under applicable non-bankruptcy law or by agreement, are senior in priority to the Allowed Secured Claim hereunder of the applicable Lehman VD Lender as to the applicable Plan Project.

188. **Summit Valley Project**  The Project owned in part by SunCal Summit Valley, Seven Brothers and Kirby Estates, located in the City of Hesperia, California, as more particularly described in **Exhibit "B"** to the Plan.

189.    **SunCal**    The SunCal Companies, a trade name for Acquisitions and its Affiliates.

190.    **SunCal I**    SunCal Communities I, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the equity membership interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald.

191.    **SunCal III**    SunCal Communities III, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

192.    **SunCal Beaumont**    SunCal Beaumont Heights, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Beaumont Heights Project.

193.    **SunCal Bickford**    SunCal Bickford Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Bickford Ranch Project.

194.    **SunCal Century City**    SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

195.    **SunCal Communities I Loan Agreement**    That certain Credit Agreement, dated as of November 17, 2005, by and among (i) SunCal I and SunCal III, as borrowers, Lehman Brothers, Inc., as sole advisor, sole lead arranger and sole bookrunner, and Lehman Commercial, as syndication and administrative agent and sole lender, pursuant to which the lenders thereunder made a loan to the borrowers in the maximum aggregate principal amount of approximately $395,313,713.37 (as amended).   The loan made pursuant to and/or evidenced by the SunCal Communities I Loan Agreement is secured directly or indirectly by (a) first priority deeds of trust on the Bickford Ranch Project, the Acton Project, and the Emerald Meadows Project, (b) pledges of SunCal I's Allowed Interest in Acton Estates, SunCal Summit Valley, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) pledges of SunCal Summit Valley's Allowed Interest in Seven Brothers and Kirby Estates.   The outstanding balance of the loan under the SunCal Communities I Loan Agreement was $343,221,391.06 as of the applicable Petition Date.

196.    **SunCal Emerald**    SunCal Emerald Meadows, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Emerald Meadows Project.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

197.    **SunCal Heartland**  SunCal Heartland, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

198.    **SunCal Johannson**  SunCal Johannson Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Johansson Ranch Project.

199.    **SunCal Marblehead**  SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

200.    **SunCal Northlake**  LB/L-SunCal Northlake, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

201.    **SunCal Oak Knoll**  SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

202.    **SunCal Oak Valley**  LB/L-SunCal Oak Valley, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

203.    **SunCal PSV**  SunCal PSV, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

204.    **SunCal Summit Valley**  SunCal Summit Valley, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, the owner of that portion of the Summit Valley Project not owned by Kirby Estates or Seven Brothers, and the Holder of Allowed Interests in Kirby Estates and Seven Brothers.

205.    **SunCal Torrance**  SunCal Torrance Properties, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

206.    **Supplemental Claims Bar Date**  For Claims (other than Administrative Claims) as to which the Holder, at least fifteen (15) days prior to the Primary Bar Date, neither had been served with notice of the applicable Primary Claims Bar Date nor actually knew the applicable Primary Claims Bar Date was a bar date, thirty (30) days following service of the Supplemental Claims Bar Date Notice (but only if the Supplemental Claims Bar Date is later than the Primary Claims Bar Date as to such Claim).

**207.    Supplemental Claims Bar Date Notice**    That certain notice of the Supplemental

Claims Bar Date as a bar date for Filing Proofs of Claim to be served after approval of the hearing

on approval of the Disclosure Statement.

**208.    Tax**    Any tax, charge, fee, levy, impost or other assessment by any federal, state,

local or foreign taxing authority, including, without limitation, income, excise, property, sales,

transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance,

stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to,

or imposed on or with respect to such assessments.

**209.    TD Plan Debtor**    A Trustee Debtor other than SunCal Century City.

**210.    Tesoro**    Tesoro SF, LLC, a Delaware limited liability company, a Voluntary Debtor

in these Cases, and the owner of the Tesoro Project.

**211.    Tesoro Project**    The Project owned by Tesoro located in the City of Santa Clarita,

California, as more particularly described in **Exhibit "B"** to the Plan.

**212.    Trustee**    Steven M. Speier, the duly appointed trustee of the Trustee Debtors or any

successor trustee for the Trustee Debtors.

**213.    Trustee Debtor**    Any of the following chapter 11 debtors for which the Trustee was

appointed:  Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak

Valley, SunCal Century City, SunCal PSV, SunCal Torrance, or SunCal Oak Knoll.

**214.    Unclaimed Property**    Cash held for Distribution if either (1) the Distribution of

Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as

undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one

hundred twenty (120) days from sending or (2) the check or other similar instrument used for the

Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120)

days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any

Allowed Claim on the date such Distribution first could have been made under the Plan and for one

hundred twenty (120) days thereafter.

**215.    Unimpaired**    When used with reference to a Claim, subclass or Class, as more

specifically set forth in various sections of Plan Article VI., the circumstance where such Claim,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code §

1124, providing, with certain exceptions, that the Claim have left unaltered the legal, equitable, and

contractual rights to which such Claim entitles the Holder of such Claim.  In accordance with, by

example, Bankruptcy Code §§ 365 or 1123(a)(5)(G), unless expressly specified otherwise, such

treatment includes the waiver or curing of defaults and the reinstatement of maturity of such Claim,

without payment of penalties or other default-related amounts.

**216.** **Unimpairment**   The treatment that makes a Claim Unimpaired.

**217.** **Unimpairment With Surrender or Abandonment**   Unimpairment that includes

that collateral for a Secured Claim may be surrendered or abandoned to the Holder of such Claim.

**218.** **Unsecured Claim**   A Claim that is not a Secured Claim.

**219.** **Unsecured Deficiency Claim**   A Claim by a Person holding a Secured Claim to the

extent the value of such Creditor's collateral, as determined in accordance with Bankruptcy Code

sections 506(a) and 1111, is less than the Allowed Amount of such Creditor's Claim, after taking

into account any election made pursuant to Bankruptcy Code section 1111(b).

**220.** **Unsecured Deficiency Claim Bar Date**   The date that is the first Business Day that

is at least thirty (30) days following the Effective Date, by which, regardless of any prior Filing by

such Holder of one or more Proofs of Claim, a Holder of an Allowed Other Secured Claim or

Allowed Sr. Secured Mechanic's Lien Claim that contends it holds or wishes to assert an Unsecured

Deficiency Claim related to its Allowed Other Secured Claim or allowed Sr. Secured Mechanic's

Lien Claim must file (and serve upon the Liquidating Trustee and Lehman VD Lenders) an amended

proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, *inter alia*, the amount of such

Unsecured Deficiency Claim.

**221.** **VD Plan Debtor**   Any of the following chapter 11 debtors and debtors-in-

possession:  Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Johannson, SunCal

Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC Communities, or Tesoro.

**222.** **Voluntary Debtor**   Any of the following chapter 11 debtors and debtors-in-

possession:  Palmdale Hills; SunCal I; SunCal III; SCC/Palmdale; Acton Estates; SunCal Beaumont;

SunCal Johannson; SunCal Bickford; SunCal Emerald; SunCal Summit Valley; Seven Brothers;

Kirby Estates; SJD Partners; SJD Development; SCC Communities; Del Rio; or Tesoro.

     **223.**    **Voluntary Debtors' Committee**    The Official Committee of Unsecured Creditors of

the Voluntary Debtors appointed in the Cases of the Voluntary Debtors pursuant to section 1102 of

the Bankruptcy Code.

***Lehman Creditor Deficiency Claims are calculated for Lehman Creditor with recourse Secured Claims against a Plan Debtor's Project by deducting the applicable Project Value and Cash Collateral from the total Allowed Claim arising under the subject Lehman Loan, first against the more senior debt.  For SunCal I, which pledged its interests in SunCal Beamont and SunCal Johannson as collateral to the Lehman Creditor, the Lehman Creditor Deficiency Claim is calculated by deducting from the amount owed on the applicable Lehman Loan both SunCal I's Cash Collateral and the remainder from the value of the Projects of SunCal Beamont and SunCal Johannson after payment of their Allowed Claims.

1

**EXHIBIT "4"**

2

**Additional Definitions**

3
4

      1.     **2009 SunCal Disclosure Statement.** The disclosure statement filed in these cases on September 9, 2009 by, *inter alia*, the Voluntary Debtors.

5
6

      2.     **Acquisitions**. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors.

7
8

      3.     **April 2011 SunCal Disclosure Statements**. The four disclosure statements filed in these cases in April 2011 by, *inter alia*, the Voluntary Debtors.

9

      4.     **Danske Bank**. Danske Bank A/S London Branch.

10
11
12
13
14

      5.     **Fenway Capital**. Fenway Capital Funding LLC, which previously owned or held a legal or equitable interest in all or a portion of the Lehman Loans made pursuant to and/or evidenced by the following loan agreements, but for which a Lehman Creditor nonetheless continued as agent: (a) SunCal Communities I Loan Agreement; (b) Ritter Ranch Loan Agreement; (c) SunCal PSV Loan Agreement; (d) Delta Coves Loan Agreement; (e) SunCal Marblehead / SunCal Heartland Loan Agreement; (f) SunCal Oak Valley Loan Agreement; and (g) SunCal Northlake Loan Agreement.

15
16

      6.     **Joint TD Disclosure Statement.**    The disclosure statement with respect to the Joint TD Plan.

17
18

      7.     **Joint TD Plan.**    A plan for eight Trustee Debtors, jointly proposed by the Lehman Creditors and the Trustee for which acceptances may be solicited simultaneously with the soliciting of acceptances for the Joint VD Plan, and prior versions thereof.

19
20
21

      8.     **Lehman Chapter 11 Case.**    The chapter 11 case under the Bankruptcy Code of, *inter alia*, Lehman Commercial and LBHI pending in the New York Bankruptcy Court and jointly administered under case no. 08-13555.

22
23

      9.     **New York Bankruptcy Court.** United States Bankruptcy Court for the Southern District of New York, which court has jurisdiction over the case of Lehman Commercial under the Bankruptcy Code (jointly administered under case no. 08-13555)

24
25

      10.     **SunCal Management**. SunCal Management, LLC, a Delaware limited liability company, and the property manager for the Projects.

26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067**

A true and correct copy of the foregoing document described as *DISCLOSURE STATEMENT WITH RESPECT TO SECOND AMENDED JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS* will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____June 20, 2011_____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____June 20, 2011_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

Attorneys for Arch Insurance Company [U.S. Mail]
Michael J. Dudek
Leo & Weber, P.C.
1 North LaSalle Street, Suite 3600
Chicago, Illinois  60602

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____June 20, 2011_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
    bcook@suncal.com
(3) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue – mneue@thelobelfirm.com
(6) Ch. 11 Trustee (c/o Squar Milner):
    Steven N. Speier - sspeier@squarmilner.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov

(8) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A Lyman - klyman@irell.com
(9) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B Meltzer - hmeltzer@wgllp.com
(10) Counsel for Bond Safeguard & Lexon
    Mark J Krone - mk@amclaw.com, crs@amclaw.com;
    amc@amclaw.com

Edward Soto – Edward.soto@weil.com; odalys.smith@weil.com;
lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Chauncey Cole – chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Mark McKane - mark.mckane@kirkland.com

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:240137.2 52063-001

**I. SERVED BY NEF**

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;sconnor@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40) Michael J Gomez for Cred Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55) Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszjw.com

(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

DOCS_LA:240137.2 52063-001

F 9013-3.1.PROOF.SERVICE

(59) David J Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com,
gdupre@kirkland.com;alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

(62) Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

(63) Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

(64) Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(65) David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

(66) Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

(67) Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

(68) Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

(69) Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

(70) Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

(71) Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

(72) Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

(73) Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

(74) Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

(75) Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

(76) James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com

(77) Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

(78) Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

(79) Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(80) Robert Nida for Cred Kirk Negrete, Inc
Rnida@castlelawoffice.com

(81) Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

(82) Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

(83) Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

(84) Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

(85) Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

(86) Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

(87) Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com

(88) Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

(89) James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

(90) Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

(91) Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

(92) R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

(93) Martha E Romero for Cred California Taxing Authorities
Romero@mromerolawfirm.com

(94) Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

(95) John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

(96) John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

(97) William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

(98) Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

(99) Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

(100) Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

(101) Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarmilner.com, ca85@ecfcbis.com

(102) Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

(103) Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

(104) Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(105) David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(106) James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
pnelson@thelobelfirm.com

(107) United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

(108) Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

(109) Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

(110) Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

(111) Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

(112) Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(113) David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

(114) Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

(115) Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

(116) Marc A. Zimmerman for Creditor Life Church of God in Christ
joshuasdaddy@att.net

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

F 9013-3.1.PROOF.SERVICE

DOCS_LA:240137.2 52063-001

## III. SERVED BY EMAIL

Ken Goddard, Operations Officer
Roddan Paolucci Roddan
kgoddard@roddanpaolucci.com

*John Gentillon,* C.E.O.
john@thelandstewards.com

*Deborah L. Lemanski*
Assistant to Frederick A. Berg, Esq. and
Barry J. Jensen, Esq.
*Kotz, Sangster, Wysocki and Berg, P.C.*
dlemanski@kotzsangster.com
bjensen@kotzsangster.com

Virginia Zareba, Sec'y to Darren G. Burge
Darren G. Burge
Cohen & Burge, LLP
vzareba@cohenburgelaw.com
dburge@cohenburgelaw.com

Brian Cartmell
Independent Construction Co.
bcartmell@indycc.com

Richard Rudolph
Law Offices of Richard B. Rudolph
RRudolph@Rudolph-Law.com

Michele Stubbs
Assistant to Arnold L. Veldkamp
*Superior Ready Mix Concrete, L.P.*
mstubbs@superiorrm.com

David Sanner
General Counsel-Litigation
Craig Realty Group
dsanner@craigrealtygroup.com

Attorney for Villa San Clemente, LLC
(a creditor of SunCal Marblehead, LLC)
David Sanner, General Counsel-Litigation
Craig Realty Group
dsanner@craigrealtygroup.com

Counsel to Kevin L. Crook Architect, Inc.;
Halladay & Mim Mack, Inc.
Crystal N Le, Clerk Supervisor
Murtaugh Meyer Nelson & Treglia, LLP
Crystal N. Le – cle@mmnt.com
Michelle R. Generaux – mgeneraux@mmnt.com

Counsel to Southern California Soil and Testing, Inc.
Justin G. Reden, Esq.
Reden & Reden
jreden@redenandreden.com
greden@redenandreden.com

Sharon Dyer
sdyer@5thgearadv.com

Interested Party In Oak Knoll
Ken Berrick, President / CEO
Seneca Center
ken@senecacenter.org
ken_berrick@senecacenter.org

Michael D. May
Attorney for R.J. Noble Co.
mdmayesq@verizon.net

Attorney for Oak Valley Partners
John Ohanian
Oak Valley Partners
johanian@ovplp.com

Counsel to Palm Springs Village-309, LLC
Ira Glasky, Vice President/General Counsel
Far West Industries
iglasky@farwestindustries.com

Represents Union Pacific
Mary Ann Kilgore
mkilgore@up.com

Paul C. Guerin, Principal Engineer
ENGEO Incorporated
pguerin@engeo.com

Attorneys for Schilling Corporation, Andersen Concrete,
Butsko Utility Design and Trimax Systems
Scott A. Schaelen
Walters, Townsend & Schaelen, A PLC
sas@wts-lawcom

Diane Norris, Controller
Southern California Soil & Testing, Inc.
Dnorris@scst.com

Glen McIntire
Design Alliance
artwork@designalliance3.net

Mark R. McGuire
mrmcguirelaw@cox.net

Attorney for Creditor, Palm
Shannon C. Williams
swilliams@rudolph-law.com

Marvin Benson, Esq.
marv.benson@yahoo.com

Attorneys for New Anaverde, LLC
Filiberto Agusti, Esq.
Joshua Taylor, Esq.
fagusti@steptoe.com
jrtaylor@steptoe.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:240137.2 52063-001

Mr. C.F. Raysbrook
California Department of Fish and Game
Streambed Alteration Team
4949 Viewridge Avenue
San Diego, CA  92123

Bob Hosea
California Department of Fish and Game,
Region 2
Attn.:  Streambed Alteration Agreement
Program
1701 Nimbus Road
Rancho Cordova, CA  95670

County of Riverside Transportation and Land
Management Agency
4080 Lemon Street, 8th Floor
Riverside, CA  92501
Attn.:  Juan C. Perez, P.E., T.E.
        Director of Transportation

Mitchell Ogron
14 Old Lake Circle
Henderson, NV  89074

Rte 60, LLC
14 Old Lake Circle
Henderson, NV  89074
Attn:  Jim Stockhausen

Lee Ann Carranza, Preserve Manager
Center for Natural Lands Management
P.O. Box 2162
Capistrano Beach, CA  92624

U.S. Fish and Wildlife Service
Carlsbad Fish and Wildlife Office
6010 Hidden Valley Road
Carlsbad, CA  92009
Attn.:  Field Supervisor

Denise H. Hering, Esq.
Stradling, Yocca, Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660

[i]Stephen L. Millham
Anaverde LLC
c/o Empire Partners, Inc.
3536 Concours Street, Suite 300
Ontario, CA  91764

California Regional Water Quality
Control Board
Los Angeles Region
320 West 4th Street, Suite 200
Los Angeles, CA  90013

Ms. Leslie Gault
Placer County Water Agency
144 Ferguson Road
Auburn, CA  95604

County of Riverside
P.O. Box 1090
Riverside, CA  92502-1090
Attn.:  George Johnson

Church of God in Jesus Christ
3349 Rubidoux Blvd.
Riverside, CA  92509
Attn.:  Cecilia A. Bennett

Riverside County Economic Development
Agency
1153 Spruce Street, Suite B
Riverside, CA  92507
Attn.:  Tina English,  Deputy Executive Director

U.S. Army Corps of Engineers
Los Angeles District
P.O. Box 532711
Los Angeles, CA  90053-2325
Attn.:  District Counsel

City of San Clemente
City Hall
100 Avenida Presidio
San Clemente, CA  92672
Attn.:  George Scarborough, City Manager

Mr. Sam Wyngaarden
Southern California Gas Company
One Liberty
Aliso Viejo, CA  92656-3830

Mr. Brian Veit
Farallon Capital Management, LLC
One Maritime Plaza, Suite 2100
San Francisco, CA  94111

Dr. Aaron Allen
U.S. Army Corps of Engineers
2151 Alessandro Drive, Suite 110
Ventura, CA  93301

Riverside County Flood Control and Water
Conservation District
1995 Market St.
Riverside, CA  92501
Attn.:  Warren D. Williams
        General Manager & Chief Engineer

Jurupa Area Recreation & Park District
4810 Pedley Rd.
Riverside, CA  92502
Attn.:  Dan Rodriguez, General Manager

Marjorie Ina and Jerry Ray Engelauf
5037 Riverside Drive
Riverside, CA  92509-6427

David R. Brunner, Executive Director
Center for Natural Lands Management
425 E. Alvarado St., Ste. H
Fallbrook, CA  92028-2960

California Department of Fish and Game
4949 Viewridge Avenue
San Diego, CA  92123
Attn.:  Regional Manager

Ron Lebs, Deputy Superintendent
Capistrano Unified School District
Business and Support Services
33122 Valle Road
San Juan Capistrano, CA  92675

Ms. Pinky Oliver
San Diego Gas & Electric
8330 Century Park Court, Room 31-C
San Diego, CA  92123

Mr. Justin Bowman, OSP Planning Mgr.
AT&T
739 E. Santa Clara St., Room 312A
Ventura, CA  93001

Ms. Deborah Schwenk
AT&T
6930 Van Nuys Blvd., Room 110
Van Nuys, CA  91405

Elma Watson, Assistant Planner
City of Lancaster
44933 Fern Avenue
Lancaster, CA  93534

Ms. Laurie Lile
City of Palmdale
38250 N. Sierra Highway
Palmdale, CA  93550-4798

Stephen H. Williams, City Manager
City of Palmdale
38300 N. Sierra Hwy.
Palmdale, CA  93550-4798

Mr. Michael Mischel
City of Palmdale Engineering Department
38250 N. Sierra Highway
Palmdale, CA  93550-4798

Matthew Ditzhazy, City Attorney
Noel James Dorean, Deputy City Attorney
City of Palmdale
38300 N. Sierra Hwy.
Palmdale, CA  93550-4798

Tobi Tyler
California Regional Water Quality Control
Board
Lahontan Region
2501 Lake Tahoe Bouelvard
South Lake Tahoe, CA  96150

Ronnie Burtner
Los Angeles County Sanitation District
P.O. Box 4998
Whittier, CA  90607

Adam Ariki
Los Angeles County Waterworks District No.
40, Antelope Valley
P.O. Box 1460
Alhambra, CA  91802-1406

Mr. Jay R. Olson
Southern California Edison
10180 Telegraph Road
Ventura, CA  93004

Bertram E. Williams
Southern California Edison
26100 Menifee Road
Romoland, CA  92585

City of Torrance
City Hall
3031 Torrance Blvd.
Torrance, CA  90503-2970
Attn.:  Jeffery W. Gibson,
           Community Development Director

City of Torrance
City Attorney's Office
3031 Torrance Blvd.
Torrance, CA 90503
Attn.:  John Fellows, City Attorney

Rutan & Tucker, LLP
611 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626-1931
Attn.:  Jeffrey M. Oderman, Esq.

City of Beaumont
Attn.:  Ernest Egger, Director of Planning
550 E. Sixth St.
Beaumont, CA  92223-0158

City of San Clemente
City Hall
100 Avenida Presidio
San Clemente, CA  92672
Attn.:  George Scarborough, City Manager

Rutan & Tucker, LLP
611 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626-1931
Attn.:  Jeffrey M. Oderman, Esq.

City of Beaumont
Attn.:  Ernest Egger, Director of Planning
550 E. Sixth St.
Beaumont, CA  92223-0158

City of Palmdale
Attn.:  Steve Williams, City Manager
           Matthew Ditzhazy, City Attorney
38300 N. Sierra Hwy.
Palmdale, CA  93550

John Sanabria
Acting Director of Dept. of Regional Planning
County of Los Angeles Dept. of Regional
Planning
1390 Hall of Records
320 West Temple Street
Los Angeles, CA  90012

---

[i] Mail returned 4/1/11

Richard B Andrade on behalf of Creditor JF Shea
Construction Inc
Andrade & Associates
27101 Puerta Real Ste 120
Mission Viejo, CA 92691-8518

Tab L K Artis on behalf of Creditor Desert
Pipeline, Inc.
301 N Lake Ave 7th Fl
Pasadena, CA 91101

William R Baerg on behalf of Defendant Samrod
Corporation
Monteleone & McCrory LLP
725 S Figueroa St #3200
Los Angeles, CA 90017

Shaaron A Bangs on behalf of Defendant Rockey
Murata Landscaping, Inc.
Crawford & Bangs
1290 E Center Ct Dr
Covina, CA 91724

Miller Barondess LLP
,

Patricia D Barrett on behalf of Defendant
Ameripride Guard Services, Inc.
Law Office of Patricia D Barrett
846 W Foothill Blvd Ste M
Upland, CA 91786

William G Bissell on behalf of Creditor Boudreau
Pipeline Corporation
110 Newport Ctr Dr Ste 200
Newport Beach, CA 92660

William Bissell on behalf of Defendant Boudreau
Pipeline Corporation
110 Newport Center Dr Ste 200
Newport Beach, CA 92660

Christopher J Brantingham on behalf of
Defendant Pre-Con Products
Brice E Bryan & Assoc
23945 Calabasas Rd
Calabasas, CA 91302

Brian Construction Co Inc
,

John W Busby on behalf of Creditor Marques
Pipeline, Inc.
251 Lafayette Circle Ste 350
Lafayette, CA 94549

Wayne W Call on behalf of 3rd Pty Defendant
Bova Contracting Corporation
Call & Jensen
610 Newport Ctr Dr Ste 700
Newport Beach, CA 92660

Brent S Clemmer on behalf of Creditor MSA
Consulting, Inc.
Slovak Baron & Empey LLP
1800 E Tahquitz Cyn Wy
Palm Springs, CA 92262

Adrianna M Corrado on behalf of Defendant
Orange County Striping Service, Inc.
Lanak & Hanna
400 N Tustin Ave Ste 120
Santa Ana, CA 92705-3815

Delta Coves Venture LLC
2392 Morse
Irvine, CA 92614

Donald B Devirian on behalf of Defendant ALL
AMERICAN ASPHALT
Devirian & Shinmoto
11400 W Olympic Blvd Ste 200
Los Angeles, CA 90064

Francis T Donohue on behalf of 3rd Pty
Defendant Chino Grading, Inc.
Voss, Cook & Thel LLP
895 Dove Street Suite 450
Newport Beach, CA 92660

Norman A. Filer on behalf of Creditor Mesa
Pacific Construction Inc.
500 N. State College Bl., #1270
Orange, CA 92868

Moses Green
,

Stanley Haren on behalf of Defendant Sierra
Cascade Construction, Inc.
Gill & Baldwin
130 N Baldwin Blvd #405
Glendale, CA 91203

William R Hart on behalf of Defendant BNB
Engineering, Inc.
Hart King & Coldren
200 Sandpointe Fourth Fl
Santa Ana, CA 92707

Andrew C Kienle on behalf of Defendant BNB
Engineering, Inc.
200 Sandpointe, 4th Fl
Santa Ana, CA 92707

LB/L SunCal Northlake LLC
,

LB/L SunCal Oak Valley LLC
,

Vivian Le on behalf of Creditor WEC Corporation
Gary R King & Associates
30950 Rancho Viejo Rd Ste 155
San Juan Capistrano, CA 92675

Wayne Lee
468 Jade Tree Drive
Monterey Park, CA 91754

Manhard Consulting Inc
,

Mark E McKane on behalf of Creditor SC Master
Holdings II LLC
Kirkland & Ellis LLP
555 California St
San Francisco, CA 94104

Louis R Miller
Miller Barondess, LLP
1999 Avenue of the Stars, Ste 1000
Los Angeles, CA 90067

Louis R Miller on behalf of Counter-Defendant
SJD Development Corp.
2121 Avenue Of The Stars, 18th Fl
Los Angeles, CA 90067

Louis R Miller on behalf of Debtor Palmdale Hills
Property, LLC
Miller Barondess LLP
1999 Avenue of the Stars
Ste 1000
Los Angeles, CA 90067

Gerald W Mouzis on behalf of Creditor Hillcrest
Contracting, Inc.
The Mouzis Law Firm APC
13681 Newport Ave Ste 8-605
Tustin, CA 92680

Howard S Nevins on behalf of Creditor
Williams+Paddon Architects+Planners, Inc.
2150 River Plaza Dr Ste 450
Sacramento, CA 95833

Sean A O'Keefe on behalf of Plaintiff Palmdale
Hills Property, LLC
660 Newport Center Dr 4th Fl
Newport Beach, CA 92660

Sean A O'Keefe on behalf of Plaintiff SJD
Partners, Ltd.
660 Newport Center Dr 4th Fl
Newport Beach, CA 92660

Richard Pachulski on behalf of Creditor Lehman
ALI, Inc.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Bl Ste 1100
Los Angeles, CA 90067-4003

Malhar S. Pagay
,

Thomas A Pistone on behalf of Defendant
Developer's Research, Inc.
Pistone & Wolder, LLP
2020 Main Street Suite 900
Irvine, CA 92614

Martin Pritikin on behalf of Debtor Palmdale
Hills Property, LLC
Miller Barondess, LLP
1999 Avenue of the Stars, Ste 1000
Los Angeles, CA 90067

J Patrick Ragan on behalf of 3rd Pty Defendant
Sierra Pacific Electrical Contracting
1881 S Business Center Dr Suite 7b
San Bernardino, CA 92408

Regal Development LLC
c/o Benjamin M Weiss
12770 High Bluff Dr
Ste 160
San Diego, CA 92130

SQUAR, MILNER, MIRANDA & WILLIAMSON, LLP
4100 Newport Place, Third Floor
Newport Beach, CA 92660

David Sandoval
,

Raymond D Scott on behalf of Defendant Kip
Incorporated
1835 W Orangewood Ave Ste 255
Orange, CA 92868

Laurie A Shade on behalf of Creditor Orange
County Tax Collector
333 W Santa Ana Blvd Ste 407
PO Box 1379
Santa Ana, CA 92702-1379

Gene H Shioda on behalf of Defendant Rockey
Murata Landscaping, Inc.
Law Office of Gene H Shioda
5757 West Century Blvd Ste 700
Los Angeles, CA 90045

Edward Soto on behalf of Plaintiff Lehman ALI,
Inc.
1395 Brickell Ave Ste 1200
Miami, FL 33131

Kimberly A Soyer on behalf of Defendant
Marques Pipeline, Inc.
251 Lafayette Cir, Ste 350
Lafayette, CA 94549

Joseph L Strohman on behalf of Creditor SME
Construction, Inc
Ferguson Case Orr Paterson LLP
1050 S Kimball Rd
Ventura, CA 93004

SunCal Century City LLC
2392 Morse
Irvine, CA 92614

SunCal Heartland LLC
2392 Morse
Irvine, CA 92614

SunCal Marblehead LLC
2392 Morse
Irvine, CA 92614

SunCal Oak Knoll LLC
,

SunCal PSV LLC
2392 Morse
Irvine, CA 92614

SunCal Torrance Properties LLC
2392 Morse
Irvine, CA 92614

Dina Tasini
Tasini and Associates
2126 Grant St
Berkeley, CA 94703

Theresa C Tate on behalf of Defendant Chino
Grading, Inc.
Crawford & Bangs LLP
1290 E Center Crt Dr
Covina, CA 91724

Robert S Throckmorton on behalf of Creditor
Paula Cunningham
Throckmorton, Beckstrom & Tomassian, LLP
2 Corporate Park, Ste 210
Irvine, CA 92606-5115

Elizabeth A Walters on behalf of Creditor
Andersen Concrete Inc
3365 Seventh Ave
San Diego, CA 92103

Douglas F Welebir on behalf of Creditor Nancy
and John Probst
Welebir Tierney & Weck
2068 Orange Tree Ln Ste 215
Redlands, CA 92374