1  William N. Lobel (CA Bar No. 93202)
Mike D. Neue (CA Bar No. 179303)
2  THE LOBEL FIRM, LLP
840 Newport Center Drive, Suite 750
3  Newport Beach, California  92660
Telephone:  (949) 999-2860
4  Facsimile:  (949) 999-2870

5  General Insolvency Counsel for Steven M. Speier,
the Chapter 11 Trustee for the Trustee Debtors

6  Richard M. Pachulski (CA Bar No. 90073)
7  Dean A. Ziehl (CA Bar No. 84529)
Steven J. Kahn (CA Bar No. 076933)
8  PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1100
9  Los Angeles, California  90067
Telephone:  (310) 277-6910
10  Facsimile:  (310) 201-0760

11  Edward Soto (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
12  1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone:  (305) 577-3177
13  Facsimile:  (305) 374-7159

14  Counsel for Lehman ALI, Inc.

15              **UNITED STATES BANKRUPTCY COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

                     **SANTA ANA DIVISION**

17  In re:                                    Case No.: 8:08-bk-17206-ES
Palmdale Hills Property, LLC, and Its Related    Jointly Administered With Case Nos.
18  Debtors,
                                              8:08-bk-17209-ES; 8:08-bk-17240-ES;
          Jointly Administered Debtors and    8:08-bk-17224-ES; 8:08-bk-17242-ES;
19        Debtors-In-Possession.              8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                              8:08-bk-17227-ES; 8:08-bk-17246-ES;
20  Affects:                                  8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                              8:08-bk-17236-ES; 8:08-bk-17248-ES;
21  ☐ All Debtors                             8:08-bk-17249-ES; 8:08-bk-17573-ES;
☐ Palmdale Hills Property, LLC            8:08-bk-17574-ES; 8:08-bk-17575-ES;
☐ SunCal Beaumont Heights, LLC            8:08-bk-17404-ES; 8:08-bk-17407-ES;
22  ☐ SCC/Palmdale, LLC                       8:08-bk-17408-ES; 8:08-bk-17409-ES;
☐ SunCal Johannson Ranch, LLC             8:08-bk-17458-ES; 8:08-bk-17465-ES;
23  ☐ SunCal Summit Valley, LLC               8:08-bk-17470-ES; 8:08-bk-17472-ES;
☐ SunCal Emerald Meadows, LLC             and 8:08-bk-17588-ES
24  ☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC                      Chapter 11
25  ☐ Seven Brothers, LLC
☐ SJD Partners, Ltd.                      **JOINT MOTION FOR ORDER**
26  ☐ SJD Development Corp.                   **DISALLOWING AND/OR**
☐ Kirby Estates, LLC                      **ESTIMATING GENERAL**
27  ☐ SunCal Communities I, LLC               **UNSECURED CLAIM OF VILLA SAN**
☐ SunCal Communities III, LLC             **CLEMENTE, LLC (FOR DEBTOR**
28  ☐ SCC Communities, LLC
☐ North Orange Del Rio Land, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

☐ Tesoro SF, LLC
☐ LB-L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LB-L-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

**SUNCAL MARBLEHEAD, LLC, CLAIM NO. 27); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATON OF DARYL G. PARKER IN SUPPORT THEREOF**

**For Debtor SunCal Marblehead, LLC**
Claimant: Villa San Clemente, LLC
Claim No.:27

**<u>Hearing:</u>**
Date:    September 15, 2011
Time:    10:30 a.m.
Place:    411 West Fourth Street
         Santa Ana, CA 92701-4593
         Courtroom 5A

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This *Joint Motion for Order Disallowing and/or Estimating General Unsecured Claim Of Villa San Clemente, LLC (For Debtor SunCal Marblehead, LLC, Claim No. 27)* (the "<u>Objection</u>") is jointly filed by Steven M. Speier, the chapter 11 trustee (the "<u>Trustee</u>") for the Trustee Debtors (as defined below) on the one hand, and Lehman ALI, Inc., on the other hand ("<u>Lehman</u>") and, together with the Trustee, the "<u>Movants</u>"), pursuant to section 502 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules ("<u>LBR</u>") 3007-1 and 9013-1 (b) of the United States Bankruptcy Court for the Central District of California (the "<u>Court</u>").

This Objection is based on the arguments set forth below, the Declaration of Daryl G. Parker (the "<u>Parker</u> Declaration") attached hereto, any exhibits thereto, any and all subsequent pleadings filed by the Movants relating to the Objection, any oral or documentary evidence presented at or prior to the time of the hearing, and the record in these cases.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

This Objection is filed pursuant to Bankruptcy Rule 3007 which governs objections to claims.  Movants submit that Claim No. 27 (the "Claim") filed by Villa San Clemente, LLC (the "Claimant") against SunCal Marblehead, LLC ("Marblehead Debtor") should be disallowed in its entirety because (a) the Marblehead Debtor is not obligated to Claimant for any of the sums asserted in the Claim, (b) even if the Court were to find that the Debtor was somehow obligated to Claimant, the Claim should nonetheless be disallowed because (i) a portion of the Claim attributable to the alleged Unfinished Development Work (as defined below) has been or will be satisfied by performance by Arch Insurance Company ("Arch") which has filed its own claim and such portion of the Claim, to the extent paid or otherwise satisfied by performance, is duplicative as to such portion of the Claim; (ii) the portion of the Claim attributable to alleged Unfinished Development Work is unliquidated and contingent and should be estimated at $0; (iii) the portion of the Claim attributable to the alleged Failure to Perform Work "Lien Free" (as defined below) (x) relates to amounts which do not constitute liens against Claimant's property and for which it cannot claim any loss and (y) includes amounts which have been paid by a third party, Arch; (iv) the portion of the Claim attributable to the alleged Delay Damages (as defined below) includes amounts not caused by any delay and includes non-recoverable unmatured interest; and (v) the Claimant has failed to submit any evidence to support all portions of the Claim.

## I.    BACKGROUND OF THE BANKRUPTCY CASES

In the Court, under case number 8:08-bk-17206-ES, the chapter 11 bankruptcy cases (the "Cases") of twenty-six affiliated debtors (the "Debtors") are being jointly administered.  The Debtors were formed to develop real estate projects ("Projects") throughout California. Some of the Debtors directly own the Projects and others serve as holding companies, owning interests directly or indirectly in the Debtors that hold title to the Projects.  The Debtors collectively owe debts in excess of $2 billion to various unsecured creditors and to creditors Lehman Commercial Paper Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), Northlake Holdings LLC and OVC Holdings LLC (collectively, the "Lehman Creditors"), holding claims secured by liens on assets of the Debtors.

On November 6, 7, and 19, 2008, seventeen of the Debtors filed their respective voluntary

3

petitions under chapter 11 of title 11 of the Bankruptcy Code (the "Voluntary Debtors")[1]. On November 12, 14 and 19, 2008, involuntary petitions were filed against nine Debtors (the "Trustee Debtors").[2] On or about January 8, 2009, the Court entered orders for relief in the Trustee Debtors' cases. On or about January 15, 2009, the Court entered orders granting the appointment of a chapter 11 trustee (the "Trustee") in each of the Trustee Debtors' cases. Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the Trustee for the Trustee Debtors. The Voluntary Debtors continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

As of June 8, 2011, six chapter 11 plans, some overlapping and competing, were pending with respect to almost all of the Debtors. One of the six pending plans was filed for eleven Voluntary Debtors by LCPI and Lehman ALI; another of the pending plans was filed by the Lehman Creditors and the Trustee for eight Trustee Debtors (collectively, the "Lehman Plans"). The other four plans have been proposed by the Voluntary Debtors and/or their affiliates.

Distributions under the pending Lehman Plans to other creditors and/or the effectiveness of both Lehman Plans depend, in part, on the aggregate amount of claims. To facilitate confirmation of the Lehman Plans, in the Trustee Debtors' Cases, the Lehman Creditors with the Trustee are objecting to claims and, in the Voluntary Debtors' Cases, the Lehman Creditors, as parties in interest, are objecting to claims.

## II.   THE COMPONENTS OF THE CLAIM SUBJECT TO OBJECTION

On February 13, 2009, Claimant filed the Claim seeking a general unsecured claim in the

---

[1] The Voluntary Debtors in these cases consist of: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates, LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del Rio Land, LLC (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch, LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows, LLC (Case No. 8:08-17230-ES); SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley, LLC (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).

[2] The Trustee Debtors in these cases consist of: SunCal Heartland, LLC (Case No. 8:08-17407-ES); LB-L-SunCal Northlake, LLC (Case No. 8:08-17408-ES); SunCal Marblehead, LLC (Case No. 8:08-17409-ES); SunCal Century City, LLC (Case No. 8:08-17458-ES); SunCal PSV, LLC (Case No. 8:08-17465-ES); Delta Coves Venture, LLC (Case No. 8:08-17470-ES); SunCal Torrance, LLC (Case No. 8:08-17472-ES); LB-L SunCal Oak Valley, LLC (Case No. 8:08-17404-ES); and SunCal Oak Knoll, LLC (Case No. 8:08-17588-ES).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

1  sum of $13,223,103.00, and designated as Claim No.27.

2      The Claim consists of various components of which can be categorized as follows:

| Component | Amount |
|---|---|
| **Unfinished Development Work**: Damages alleged for cost of unfinished Development Work pursuant to a written agreement dated June 29, 1999, as amended, between Claimant and Debtor ("Agreement"). | $6,358,851.00 |
| **Failure to Perform Work "Lien Free"**: Damages allegedly resulting from Debtor's failure to complete Development Work "lien free". | $3,874,252.00 |
| **Delay Damages**: Damages allegedly resulting from Debtor's failure to timely complete on-site Development Work by August 11, 2007. | $3,000,000.00 |

    A true and correct copy of the Claim is attached hereto and incorporated herein by reference as **Exhibit "A."**

## III.   OBJECTIONS TO COMPONENT OF CLAIM ATTRIBUTABLE TO UNFINISHED DEVELOPMENT WORK

### A.   The Claimant Has Not Provided Proper Documentation to Entitle the Claim Attributed to Development Work to *Prima Facie* Validity

    The allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self contradictory, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). However, where the proof of claim omits an essential element of the substantive claim, the objector "need only note the absence of any such showing" and need not offer evidence in support. *Atwood v. Chase Manhattan Mortgage Co., (In re Atwood)*, 293 B.R. 227, 233 (9th Cir.BAP 2003). The claimant must then prove the validity of the claim by a preponderance of the evidence, and the ultimate burden of persuasion remains at all times on the claimant. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991)). Only if a proof of claim contains

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

allegations that "set forth all the necessary facts to establish a claim and are not self-contradictory," does it "*prima facie* establish the claim." *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991). *Accord, In re Allegheny Int'l Inc.*, 954, F2.d 167, 173 (3rd Cir. 1992) (claim must allege facts sufficient to support a legal liability to the claimant in order to satisfy the claimant's initial obligation to go forward). Thus, it may be said that *the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more. Holm,* 931 F.2d at 620 (emphasis added). Should objection be taken, the objector is then called upon to produce evidence and show "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Id.,* , then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd,* 91 F.3d 151 (9th Cir. 1996).

Nearly half of the total amount of the Claim, $6,358,851.00, is attributable to certain unfinished development work (the "Unfinished Development Work") allegedly required to be completed under the June 29, 1999 Agreement. The support for this portion of the Claim consists entirely of a single page with a list of cryptically labeled items and large dollar amounts for which no support is provided. Thus, among other deficiencies, no information is given to show: (1) the methodology by which the claimed amounts were calculated; (2) whether any of the work attributable to the claimed amounts has been paid for or performed;  (3) the location within the subject property of such work; (4) the basis for the estimated claimed amounts; (5) the basis for the degree of completion indicated; or (6) the contractual basis for the items claimed to be required to be built.

**B.      The Bulk of the Unfinished Development Work Will Be, or Has Been, Performed by the Surety Company, Arch Insurance Company, Pursuant to a Settlement Agreement with the City of San Clemente and the Portion of the Claim relating thereto Is Duplicative Since It is the Subject of a Separate Claim Filed by Arch Insurance Company**

The portion of the Claim attributable to the Unfinished Development Work represents almost half of the total amount claimed. However, it appears unlikely that Claimant will sustain any loss

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   with respect to those amounts and that the magnitude of such loss even if it does occur is not likely

2   to be large because at least a significant portion and possibly all of that work will be performed by

3   Arch Insurance Company ("Arch") pursuant to a settlement agreement between Arch and the City of

4   San Clemente resolving litigation between them related to claims under performance and payment

5   bonds issued by Arch.  Those amounts are the subject of a separate claim filed by Arch against the

6   Marblehead Debtor, Claim No. 34, filed March 18, 2009.  The terms of the agreement for

7   performance of this work are set out in the Agenda Report San Clemente City Council Meeting

8   (Meeting Date: February 16,2010) ("Agenda Report") and the attached "Settlement Agreement"

9   dated February 2, 2010 between Arch and the City of San Clemente (the "Settlement Agreement"),

10  both of which are submitted herewith as **Exhibit B**.  (Parker Declaration, ¶3)

11          The Settlement Agreement provides that Arch is to perform certain work on Claimant's

12  property which overlaps, and possibly includes all of the Unfinished Development Work.  Thus, the

13  "Category B" work described in the Agenda Report at page 2 and in the Settlement Agreement in,

14  among others, sections 2.2, 2.4, and 3.1 expressly refers to work which Arch has agreed to perform

15  on Claimant's property.  See: p. 2 of Agenda Report; Recital D at p. 1 of Settlement Agreement;

16  §2.2 at pp. 3-4 of Settlement Agreement, §2.4 at p. 6 of Settlement Agreement; and §3.1 at p. 9 of

17  the Settlement Agreement.  To the extent that the Unfinished Development Work is subsumed in the

18  work to be performed by Arch pursuant to the Settlement Agreement, and the cost of which is

19  included in Arch's Claim No. 34, Claimant will have obtained nearly all the performance it seeks as

20  to this item, will not have incurred any loss, and its Claim will be duplicative of Arch's Claim.

21          **C.      The Portion of the Claim Attributable to Unfinished Development Work is**

22  **Unliquidated and Contingent and Should be Estimated at $0**

23          11 U.S.C. § 502(c) provides that there shall be estimated for the purposes of allowance

24  (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be,

25  would unduly delay the administration of the case; or (2) any right to payment arising from a right to

26  an equitable remedy for breach of performance.  The loss, if any, to be sustained by Claimant on

27  account of the Unfinished Development Work is both unliquidated and contingent in that it cannot

28  be known until Arch completes its work whether and in what amount Claimant has been damaged, if

DOCS_LA:237055.5 52063-001

any. Therefore, Movants respectfully request that the Claim be estimated at $0.00 for distribution and plan purposes.

## IV. OBJECTIONS TO COMPONENT OF CLAIM ATTRIBUTABLE TO THE ALLEGED FAILURE TO PERFORM WORK "LIEN FREE"

The Claim asserts that Claimant has sustained damages caused by the imposition of mechanic's liens against its property in breach of the Agreement in the following amounts:

| AMOUNT | SUBCONTRACTOR |
|---|---|
| $34,440.00 | Savala Equipment Co. |
| $2,174,131.47 | Chino Grading |
| $1,527,907.90 | Boudreau Pipeline Corp. |
| $10,102.90 | Rialto Concrete Products |
| $75,087.00 | Southwest V-Ditch, Inc |
| $10,682.14 | Trench Shoring Company |
| $42,586.70 | Park West Rescom, Inc |

### A. Arch Has Settled and Acquired a Portion of the Alleged Lien Claims

Certain lien claimants have made demands upon payment bonds issued by Arch with respect to the Project. Arch has settled with and acquired all of the claims of the following lien claimants described in this component of the Claim: (1) Chino Grading:; (2) Boudreau Pipeline:; and (3) Savala Equipment:. To the extent those claims have been assigned to Arch, the same are now owned by Arch and Claimant's assertion of them is duplicative of Arch's claim.

### B. A Portion of the Alleged Lien Claims Are Not Liens Against Any Property Because of Failure to Comply With California Mechanic's Lien Statutes and Therefore Claimant Has Sustained No Loss

Under the California Mechanic's Lien Law, the failure to file a lawsuit to enforce the lien in the County where the subject property is located within 90 days of recordation of the lien renders the lien void. CA Civil Code §3144; *Sprinkler Corp. v Southern California Edison* (1989) 216 C.A.3d 627. The following alleged lien claims cannot constitute lien claims against any property because no

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

lawsuit was filed in Orange County, where the subject property is located, within 90 days of the date

of recordation of the lien indicated in the Claim: (1) Rialto Concrete Products (recorded 02/21/2008

per Claim); (2) Southwest V-Ditch, Inc. (recorded 03/31/2008 per Claim); (3) Trench Shoring

Company (recorded 04/17/2008 and 07/02/2008 per Claim).  See Parker Declaration ¶4 re the failure

to file lawsuits.  Since as to these claims there is no valid lien against Claimant's property, those

claims are at most unsecured claims against the Debtor, not liens against Claimant's property,

Claimant has sustained no loss because of them and the Claim should be disallowed for those

amounts.

**C.  The Park West Rescom Charges Do Not Constitute a Lien Against Claimant's Property**

The Park West Rescom ("PWR") claim was scheduled by Debtor as unsecured and no proof

of claim was filed.  (Parker Decl. ¶ 5)  No lawsuit was filed on the claim against Claimant's property

within 90 days of recordation of the lien.  No notice of intention to enforce lien rights was served

within the time remaining under California law as required by *In re Baldwin Builders* (9th Cir.

B.A.P. 1999) 232 B.R. 406, 414.  (Parker Decl. ¶5)  These charges thus, at most, could represent an

unsecured claim against the Debtor, not a lien on Claimant's property.  Claimant therefore has

sustained no loss on account thereof and the Claim should be disallowed in the amount of the PWR

charges.

**V.    OBJECTIONS TO DELAY DAMAGES**

**A.  The Claimant Has Not Provided Proper Documentation to Entitle that Portion of the Claim Attributable to Delay Damages to *Prima Facie* Validity**

As discussed above, in order to be entitled to the presumption of *prima facie* validity, a claim

must supply documentation adequate to support all elements of a claim.  Although the portion of the

Claim attributable to Delay Damages seeks to recover over $3,000,000, the Claim does not supply

documentation (1) to support the $3 million amount claimed, (2) to indicate how that figure was

arrived at, (3) to specify the contractual basis, if any, for such claimed amount, or (4) to indicate how

the particular damages, which are specified-taxes and interest,-were causally related to the delay.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.  There is No Showing that the Taxes Claimed Were Caused by Delay**

One of the  two specific items of alleged damage attributed to delay in the Claim is for property taxes.  It is hornbook law that damages for breach of contract consist of "the amount which will compensate the party aggrieved for all the detriment **proximately caused thereby**, or which in the ordinary course of things would be **likely to result therefrom**."  CA Civil Code §3300; emphasis added.  Thus, one essential element in establishing damages for delay in performance of a contract is to show a causal connection between the amounts claimed and the delay.  *Mendoyoma, Inc. v County of Mendocino* (1970) 8 CA3d 873, 879-880.  Property taxes are simply an incidental burden of ownership of real property and there is nothing to suggest they were caused by any delay in construction.  Claimant would have had to pay those taxes whether or not construction was completed on time.  The Claim should therefore be disallowed to the extent it includes a demand for such taxes.

**C.  The Delay Damages Portion of the Claim Should be Disallowed to the Extent that it Seeks Recovery of Unmatured Interest**

11 USC 502(b)(2) provides that a claim may not include "unmatured interest."  Unmatured interest means interest which was not due and payable as of the petition date.  See, *e.g.*, *In re Del Mission* (9th Cir. 1993) 998 F.2d 756, 757; *In re LaMarre* (Bankr. D. Mass. 2001) 269 B.R. 266, 267-268.  Here, because of the opacity of the Claim as to what is included in the damages sought, it is not possible to determine how much of the claim for interest is unmatured and hence subject to disallowance under 11 USC 502(b)(2).  However, the relatively small amount of specified pre-petition interest included in the exhibit to the Claim implies that a substantial amount of post-petition interest must have been included in order to arrive at the $3 million figure.  To the extent that interest prohibited by the foregoing section of the Bankruptcy Code is included in the Claim, it should be disallowed.

**VI.    RESERVATION OF RIGHTS**

The Movants reserve the right to further amend, supplement, revise, object or otherwise respond to the Claim on any and all additional relevant factual or legal grounds, either in advance of the hearing on the Objection or at a later date, and, without limiting the foregoing, to (i) amend the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Objection, (ii) adjourn any hearing scheduled on the claim addressed in the Objection; (iii) file

2   additional papers in support of the Objection, and (iv) take all other appropriate actions to

3   (a) respond to any allegation or defense that may be raised in a response; (b) further object to the

4   Claim if the Claimant provides (or attempts to provide) additional documentation to substantiate it;

5   and/or (c) further object to the Claim based on additional information that may be discovered upon

6   further review by Movants or through discovery pursuant to the applicable provisions of the

7   Bankruptcy Rules.

8       Movants further reserve the right to assume or reject any contracts described above to the

9   extent the same may be executory.

10  **VII.    NOTICE**

11      Notice of this Objection is being served on Claimant, Arch and their respective counsel of

12  record, as required by LBR Rule 3007-1(b)(3), and all parties requiring notice in these cases.

13      **WHEREFORE,** the Movants respectfully request the Court to enter an order:

14      1.    Sustaining this Objection in its entirety;

15      2.    Disallowing Claim No. 27;

16      3.    Providing that any ruling by the Court on the Objection shall have no preclusive

17  effect on, and is without prejudice to, the Movants' (including any successor thereof) (a) right to

18  object to or seek disallowance or reclassification of the Claim on any other grounds as the Movants

19  or their successors may later assert, (b) right to assert any claims or demands for relief requiring an

20  adversary proceeding consistent with Rule 3007(b) and Rule 7001 of the Bankruptcy Rules,

21  counterclaims, rights of offset or recoupment, preference actions, fraudulent transfer actions, or any

22  other bankruptcy or non-bankruptcy claims and causes of action against Claimant, and (c) right to

23  withdraw without prejudice the Objection prior to the hearing thereon and, in case of any such

24  withdrawal, to assert the same (or other) objections to such claim in a later objection (or later

25  objections) to such claim; and

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:237055.5 52063-001

1        4.    Granting such other and further relief as the Court deems just and proper.

2
    Dated:    June 27, 2011                        THE LOBEL FIRM, LLP
3

4
                                                William N. Lobel (CA Bar No. 93202)
5                                               Mike D. Neue (CA Bar No. 179303)
                                                840 Newport Center Drive, Suite 750
6                                               Newport Beach, California 92660
                                                Telephone: (949) 999-2860
7                                               Facsimile: (949) 999-2870

8                                               General Insolvency Counsel for Steven M. Speier,
                                                the Chapter 11 Trustee for the Trustee Debtors
9

10

11   Dated:    June 24, 2011                      PACHULSKI STANG ZIEHL & JONES LLP

12
                                                /s/ Daryl G. Parker
13                                              Richard M. Pachulski (CA Bar No. 90073)
                                                Dean A. Ziehl (CA Bar No. 84529)
14                                              Daryl G. Parker (CA Bar No. 047048)
                                                10100 Santa Monica Blvd., Suite 1100
15                                              Los Angeles, CA 90067-4100
                                                Telephone: (310) 277-6910
16                                              Facsimile: (310) 201-0760

17                                              -and-

18
                                                WEIL, GOTSHAL & MANGES LLP
19                                              Edward Soto (admitted *pro hac vice*)
                                                1395 Brickell Avenue, Suite 1200
20                                              Miami, FL 33131
                                                Telephone: (305) 577-3177
21                                              Facsimile: (305) 374-7159

22                                              Counsel for Lehman ALI, Inc.

23

24

25

26

27

28

12

DOCS_LA:237055.5 52063-001

# DECLARATION OF DARYL G. PARKER

I, Daryl G. Parker, do declare and state as follows:

1.      I am of counsel to Pachulski Stang Ziehl & Jones, LLP and am one of the attorneys for Lehman ALI, Inc., one of the Movants in the *Joint Motion for Order Disallowing and/or Estimating  General Unsecured Claim Of the City of San Clemente (For Debtor SunCal Marblehead, LLC, Claim No. 27)* (the "Objection") attached hereto.  I make this declaration in support of the Objection.

2.      A true and correct copy of Claim No. 27 filed by Villa San Clemente on February 13, 2009 as posted on the ECF Claims Register for Debtor SunCal Marblehead, LLC in this case is attached hereto and incorporated herein by reference as Exhibit "A."

3.      I performed an on-line Google search for the website of the City of San Clemente and located a site with URL http://san-clemente.org/sc/News.aspx?PageID=1.  Clicking on the following links from that site led to a site with pdf versions of past Agenda for the City Council of the City of San Clemente ("Agenda Site"):  Meetings-City Council-Agendas.  On page 3 of the Agenda Site, item 736-02-16-10-Revised, is a pdf copy of the Revised Agenda of the City of San Clemente Regular City Council Meeting Agenda ("Agenda") for February 16, 2010.  Page 8 of the Agenda, item 10B under New Business, contains a link to "Arch Insurance Company Settlement (Marblehead Coastal Improvements).  The linked document is entitled "Agenda Report San Clemente City Council Meeting, Meeting Date February 16, 2010", a true and correct copy of which is attached as Exhibit B hereto.

4.      I have reviewed the Online Case Access records of the Superior Court of the State of California, County of Orange to determine whether any mechanic's lien action had been filed by Rialto Concrete Products, Southwest V Ditch, Inc., and Trench Shoring Company.  I could find no record of such actions.

5.      I have reviewed Schedules D (Creditors Holding Secured Claims) and F (Creditors Holding Unsecured Non-Priority Claims) of the Summary of Schedules filed by Debtor in this case on January 27, 2009.  The claim of Park West Rescom, Inc. ("PWR") was not listed on the former and was listed on the latter.  I have also reviewed the ECF Claims Register for Debtor's case and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   determined that no claim is listed there for PWR.  I reviewed the docket for Debtor's case and could

2   find no record of a notice of intention to enforce lien rights having been filed or served at any time.  I

3   further reviewed the Online Case Access records of the Superior Court of the State of California,

4   County of Orange to determine whether any mechanic's lien action had been filed by PWR and

5   \could find no record of such an action.

6        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

7   June 24, 2011 at Los Angeles, California.

8

9                    */s/ Daryl G. Parker*
                    Daryl G. Parker

10

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

# EXHIBIT A

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: SunCal Marblehead, LLC | Case Number: 8:08-bk-17409-ES |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom the debtor owes money or property):**
Villa San Clemente, LLC

**Name and address where notices should be sent:**
David L. Sanner, General Counsel
1500 Quail Street, Suite 100
Newport Beach, California 92660

Telephone number:
(949) 224-4167

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

FILED
FEB 13 2009

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ _____13,233,103.00_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** ___see Attachment No. 2___
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property:$ _____ Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____ Basis for perfection: _____

Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 2/11/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*David L. Sanner*<br>David L. Sanner, General Counsel, Villa San Clemente, LLC | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## Attachment No. 2 - Basis for Claim

Pursuant to a written agreement dated June 29, 1999, as amended ("Agreement"), Claimant, Villa San Clemente, LLC, purchased commercial property from the debtor (SunCal Marblehead, LLC) on May 11, 2006 for the purpose of building an outlet shopping center. Debtor retained ownership of the adjacent property on which it intends to develop a residential community. The commercial property owned by claimant and the adjacent residential site owned by debtor are sometimes referred to as the **Marblehead Project** in San Clemente.

The Agreement between claimant and debtor requires debtor to timely complete certain on-site and off-site work ("Development Work") on the Marblehead Project "lien free" including rough grading, installation of subsurface drains, perimeter retaining walls, utility mains, public streets and sidewalks, etc. Debtor began the Development Work in October 2005. In September 2007, debtor ceased performing the on-site Development Work for claimant due to financial difficulties.

Claimant's damages are summarized as follows:

1. **Damages for cost of completion of the unfinished Development Work**

   By debtor's own estimate (attached as **Exhibit 1**), the on-site Development Work for VSC's property is 68.23% complete and the cost of completion is $5,508,851.52. However, there are additional costs to complete the on-site work of approximately $850,000 including costs to correct errors in the placement of the underground storm drainage system and to recondition the soil because of the passage of time. Therefore, the total cost to complete the on-site work is **$6,358,851**.

2. **Damages resulting from debtor's failure to complete the Development Work "lien free."**

   The Agreement required debtor to complete its on-site Development Work by August 11, 2007 and to pay all costs and expenses to complete the Development Work "lien-free." The current amount of mechanic's liens encumbering creditor's property, including the mechanic's liens of Chino Grading and Boudreau Pipeline, total **$3,874,252**. A summary of the mechanic's liens affecting claimant's property is attached as **Exhibit 2**. The mechanic's liens are also identified in the Chicago Title Insurance Co. Endorsement attached as **Exhibit 3**.

3. **Damages resulting from debtor's failure to timely complete the on-site development work by August 11, 2007.**

   VSC has been forced to delay the commencement of construction on its commercial site for at least two years because of debtor's failure to complete the Development Work by August 11, 2007. Debtor's carrying charges, including interest and property taxes exceed $165,000 per month from September 2007 and continue for each month debtor fails to complete the Development Work. The damages caused by the delay now exceed **$3,000,000**. See **Exhibit 4** (Wells Fargo Loan Billing Statement dated 12-31-08) for claimant's interest charges for 2007 and 2008. See **Exhibit 5** (Property Tax Payment Schedule for tax years 2007-08 and 2008-09).

**Marblehead**
**Commercial Development Holdback**
**Draw # 10**
**Period Ending 3/19/08**

| Description | Line Item | Development Budget | Previous Request to Date | Current Request | Total Request to Date | Balance to Complete | % Complete * | Current Draw |
|---|---|---|---|---|---|---|---|---|
| Site Preparation & Grading | 01 | 4,110,520.00 | 2,937,402.98 | 68,275.94 | 3,005,678.92 | 1,104,841.08 | 80.00% | 68,275.94 |
| Sanitary Sewer | 02 | 3,200.00 | 0.00 | 0.00 | 0.00 | 3,200.00 | 50.00% | 0.00 |
| Storm Drainage | 03 | 4,047,959.00 | 2,811,246.79 | 0.00 | 2,811,246.79 | 1,236,712.21 | 80.00% | 0.00 |
| Domestic Water | 04 | 1,792,612.00 | 963,069.07 | 125,151.30 | 1,088,220.37 | 704,391.63 | 70.00% | 125,151.30 |
| Street Improvements | 06 | 69,314.60 | 0.00 | 0.00 | 0.00 | 69,314.60 | 10.00% | 0.00 |
| Franchise (Dry) Utilities | 07 | 1,700,000.00 | 219,952.41 | 21,735.00 | 241,687.41 | 1,458,312.59 | 50.00% | 21,735.00 |
| Landscaping / Fencing / Signage | 08 | 774,846.50 | 0.00 | 0.00 | 0.00 | 774,846.50 | 10.00% | 0.00 |
| Subtotal | | 12,498,452.10 | 6,931,671.25 | 215,162.24 | 7,146,833.49 | 5,351,618.61 | | 215,162.24 |
| Contingency | 15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| Total Land and Hard Cost | | 12,498,452.10 | 6,931,671.25 | 215,162.24 | 7,146,833.49 | 5,351,618.61 | | 215,162.24 |
| Consulting Services | 20 | 494,952.50 | 325,344.91 | 12,374.68 | 337,719.59 | 157,232.91 | 68.23% | 12,374.68 |
| Fees, Permits & Bonds | 21 | 447,011.01 | 447,011.01 | 0.00 | 447,011.00 | 0.00 | 100.00% | 0.00 |
| Total Indirects | | 941,963.51 | 772,355.92 | 12,374.68 | 784,730.60 | 157,232.91 | | 12,374.68 |
| Total Loan | | 13,440,415.61 | 7,704,027.17 | 227,536.92 | 7,931,564.09 | 5,508,851.52 | | 227,536.92 |

DRAW REQUEST

* ESTIMATE OF CONSTRUCTION
Progress based on March 2...

REGISTERED PROFESSIONAL ENGINEER
PATRICK F. REVERE
No. 62921
Exp. 6-30-08
CIVIL
STATE OF CALIFORNIA

**EXHIBIT 1**

# MECHANIC'S LIENS OF RECORD AFFECTING
# VILLA SAN CLEMENTE'S PROPERTY

|    | Amount |              | Subcontractor             | Recordation Date    |
|----|--------|--------------|---------------------------|---------------------|
| 1  | $      | 34,440.00    | Savala Equipment Co.      | 2/29/08             |
| 2  | $      | 2,174,131.47 | Chino Grading             | 12/26/07 & 3/19/08  |
| 3  | $      | 357,752.50   | Boudreau Pipeline Corp.   | 2/13/08             |
| 4  | $      | 609,750.86   | Boudreau Pipeline Corp.   | 2/13/08             |
| 5  | $      | 560,404.63   | Boudreau Pipeline Corp.   | 2/13/08             |
| 6  | $      | 10,102.90    | Rialto Concrete Products  | 2/21/08             |
| 7  | $      | 75,087.00    | Southwest V-Ditch, Inc.   | 3/31/08             |
| 8  | $      | 2,493.42     | Trench Shoring Company    | 4/17/08             |
| 9  | $      | 8,188.72     | Trench Shoring Company    | 7/2/08              |
| 10 | $      | 42,586.70    | Park West Rescom, Inc.    | 10/7/08             |

**$ 3,874,938.20  TOTAL AMOUNT MECHANIC'S LIENS**

**EXHIBIT 2**

 # Chicago Title Insurance Company

## ENDORSEMENT

### Attached to Order No.: 23803167A-X59

### Issued by

## CHICAGO TITLE INSURANCE COMPANY

### a corporation, herein called the Company

The Company hereby assures the Assured that, subsequent to the date of the Title Policy issued under the above number, no matters are shown by the records referred to in that Policy which would affect the assurances in said Policy other than the following:

Please see attached Exhibit "A"

The total liability of the Company under said Guarantee and under this Endorsement thereto shall not exceed, in the aggregate, the amount stated in said Guarantee.

This endorsement is made a part of said Guarantee and is subject to the exclusions from coverage, the limits of liability and the other provisions of the Conditions and Stipulations therein, except as modified by the provision hereof.


Dated:   November 21, 2008

CHICAGO TITLE INSURANCE COMPANY

By: _____

Authorized Signatory


CLTA Guarantee Form No. 2 (5-10-67)                    **EXHIBIT 3**

# EXHIBIT A

1.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Granted to:         The City of San Clemente, a municipal corporation
    Purpose:            storm drain vault and related improvements
    Recorded:           June 30, 2006 as Instrument No. 2006000440688 of Official Records
    Affects:            That portion of said land as described in the document attached hereto.

2.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Granted to:         The City of San Clemente, a municipal corporation
    Purpose:            sewer line and related improvements
    Recorded:           August 22, 2006 as Instrument No.  2006000559242 of Official
                        Records
    Affects:            That portion of said land as described in the document attached hereto.

3.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Granted to:         San Diego Gas & Electric Company, a corporation
    Purpose:            public utilities
    Recorded:           June 13, 2007 as Instrument No. 2007000376065 of Official Records
    Affects:            That portion of said land as described in the document attached hereto.

4.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Granted to:         San Diego Gas & Electric Company, a corporation
    Purpose:            public utilities
    Recorded:           June 13, 2007 as Instrument No. 2007000376068 of Official Records
    Affects:            That portion of said land as described in the document attached hereto.

5.  A Tract Map Certificate of Correction recorded September 17, 2007 as Instrument No.
    2007000566934 of Official Records correcting Sheet 22 of the map of said Tract No. 8817.

    Reference is hereby made to said document for full particulars.

6.  A claim of mechanic's lien

    Amount:             $34,440.00
    Claimant:           Savala Equipment Co Inc
    Recorded:           November 30, 2007 as Instrument No. 2007000708078, of Official
                        Records

    Reference is hereby made to said document for full particulars.

7.  This exception has been intentionally deleted.

8.  This exception has been intentionally deleted.

CLTA Guarantee Form No. 2 (5-10-67)

Order No.: 23803167A-X59

# EXHIBIT A

(continued)

9.    A claim of mechanic's lien

     Amount:            $2,174,131.47
     Claimant:          Chino Grading, Inc.
     Recorded:          December 26, 2007 as Instrument No. 2007000751391, of Official
                                   Records

Reference is hereby made to said document for full particulars.

10.   This exception has been intentionally deleted.

11.   This exception has been intentionally deleted.

12.   This exception has been intentionally deleted.

13.   This exception has been intentionally deleted.

14.   This exception has been intentionally deleted.

15.   This exception has been intentionally deleted.

16.   This exception has been intentionally deleted.

17.   This exception has been intentionally deleted.

18.   This exception has been intentionally deleted.

19.   This exception has been intentionally deleted.

20.   A claim of mechanic's lien

     Amount:            $357,752.50
     Claimant:          Boudreau Pipeline Corporation
     Recorded:          February 13, 2008 as Instrument No. 2008000064919, of Official
                                   Records

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

     Recorded:          March 3, 2008 as Instrument No. 2008000097867, of Official Records

Reference is hereby made to said document for full particulars.

Order No.: 23803167A-X59

# EXHIBIT A

(continued)

21. A claim of mechanic's lien

|  |  |
|--|--|
| Amount: | $609,750.86 |
| Claimant: | Boudreau Pipeline Corporation |
| Recorded: | February 13, 2008 as Instrument No. 2008000064920, of Official Records |

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

Recorded:                March 3, 2008 as Instrument No. 2008000097867, of Official Records

Reference is hereby made to said document for full particulars.

22. A claim of mechanic's lien

|  |  |
|--|--|
| Amount: | $560,404.63 |
| Claimant: | Boudreau Pipeline Corporation |
| Recorded: | February 13, 2008 as Instrument No. 2008000064921, of Official Records |

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

Recorded:                March 3, 2008 as Instrument No. 2008000097867, of Official Records

Reference is hereby made to said document for full particulars.

23.    This exception has been intentionally deleted.

24.    This exception has been intentionally deleted.

25.    This exception has been intentionally deleted.

26.    This exception has been intentionally deleted.

27. A claim of mechanic's lien

|  |  |
|--|--|
| Amount: | $10,102.90 |
| Claimant: | Rialto Concrete Products |
| Recorded: | February 21, 2008 as Instrument No. 2008000078792, of Official Records |

Reference is hereby made to said document for full particulars.

Order No.: 23803167A-X59

# EXHIBIT A

(continued)

28. This exception has been intentionally deleted.

29. This exception has been intentionally deleted.

30. This exception has been intentionally deleted.

31. This exception has been intentionally deleted.

32. A claim of mechanic's lien

| | |
|---|---|
| Amount: | $34,440.00 |
| Claimant: | Savala Equipment Co Inc |
| Recorded: | February 29, 2008 as Instrument No. 2008000094267, of Official Records |

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

Recorded:          June 13, 2008 as Instrument No. 2008000285441, of Official Records

Reference is hereby made to said document for full particulars.

33. This exception has been intentionally deleted.

34. This exception has been intentionally deleted.

35. This exception has been intentionally deleted.

36. This exception has been intentionally deleted.

37. This exception has been intentionally deleted.

38. This exception has been intentionally deleted.

39. A claim of mechanic's lien

| | |
|---|---|
| Amount: | $2,174,131.47 |
| Claimant: | Chino Grading, Inc. |
| Recorded: | March 19, 2008 as Instrument No. 2008000126727, of Official Records |

Reference is hereby made to said document for full particulars.

Case 8:08-bk-17206-ES    Doc 2271    Filed 06/24/11    Entered 06/24/11 15:51:31    Desc
Case 8:08-bk-17409-ES    Doc 221-1    Filed 02/24/09    Desc Main Document    Page 13
Main Document    Page 28 of 62
of 19

Order No.: 23803167A-X59

# EXHIBIT A

(continued)

A Notice of Pending Action to foreclose said lien

Recorded:                    March 20, 2008 as Instrument No. 2008000130681 and June 23, 2008
                             as Instrument No. 08-300143, both of Official Records

Reference is hereby made to said document for full particulars.

40.    A claim of mechanic's lien

       Amount:                $75,087.10
       Claimant:              Southwest V-Ditch Inc
       Recorded:              March 31, 2008 as Instrument No. 2008000146771, of Official Records

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

Recorded:                    June 26, 2008 as Instrument No. 08-308374, of Official Records

Reference is hereby made to said document for full particulars.

41.    A claim of mechanic's lien

       Amount:                $7,352.27
       Claimant:              Orange County Striping Service, Inc.
       Recorded:              April 17, 2008 as Instrument No. 2008000179044, of Official Records

Reference is hereby made to said document for full particulars.

42.    This exception has been intentionally deleted.

43.    This exception has been intentionally deleted.

44.    This exception has been intentionally deleted.

45.    A claim of mechanic's lien

       Amount:                $186,010.24
       Claimant:              Greg G. Bucilla, Architect
                              Bucilla Group Architecture, Inc.
                              California Registration #C026879
       Recorded:              October 24, 2008 as Instrument No. 2008-000491854, of Official
                              Records

Reference is hereby made to said document for full particulars.

Case 8:08-bk-17206-ES    Doc 2271    Filed 06/24/11    Entered 06/24/11 15:51:31    Desc
Case 8:08-bk-17409-ES    Claim 22-1    Filed 02/23/09    Desc Main Document    Page 14
Main Document    Page 29
of 19

Order No.: 23803167A-X59

# EXHIBIT A
## (continued)

46.    A claim of mechanic's lien

Amount:                    $72,438.50
Claimant:                  Southern California Pipeline Construction, Inc.
Recorded:                  November 18, 2008 as Instrument No. 2008-000538218, of Official
                           Records

Reference is hereby made to said document for full particulars.


END OF EXHIBIT A

## Loan Billing Statement

**WELLS FARGO**

Loan Customer # 9341385151

Payment Due Date:   Jan. 1, 2009
Charge Date:   Jan. 12, 2009

| | |
|---|---|
| Principal | 0.00 |
| Interest | 112,316.66 |
| **Total Amount Due:** | **$112,316.66** |

Amount to be charged 112,316.66

MAC E2148-015
VILLA SAN CLEMENTE, LLC
C/O CRAIG REALTY GROUP #103188
1500 QUAIL ST, STE 100
NEWPORT BEACH CA 92660-2733

REG - ORANGE COUNTY LENDING
MAC E2148-015        AU #01182
P. O. BOX 966
EL SEGUNDO, CA 90245

AU   02955
SU   29550
29550   MOC
50

Loan Customer #
9341385151            4000

Total Amount Due
000000011231666

Invoice #
0811688772-50

AMOUNT TO BE DEDUCTED FROM ACCOUNT 4121113740 ON CHARGE DATE 01-12-2009

AU   02955
SU   29550

REG - ORANGE COUNTY LENDING
MAC E2148-015      AU #01182
P. O. BOX 966
EL SEGUNDO, CA 90245

VILLA SAN CLEMENTE, LLC
Loan Customer #: 9341385151
Invoice #: 0811688772

Statement Date: 12-31-2008

Payment Due Date:   01-01-2009
**Page 1 of 2**

Obligation # 34          REG Loan # 103188

Maturity Date: 01-10-2009

| Effective Date From Date | Thru Date | Transaction Type | Amount | Principal Balance | Rate | Days | Interest/Fee Balance |
|---|---|---|---|---|---|---|---|
| 12-01-08 | | Balance Forward | | 30,000,000.00 | | | |
| 12-01-08 | 12-04-08 | Interest Calc | | 30,000,000.00 | 4.13000 | 4 | 13,766.66 |
| 12-05-08 | | Balance Incr | 30,000,000.00 | 60,000,000.00 | | | |
| 12-05-08 | | Balance Decr | -30,000,000.00 | 30,000,000.00 | | | |
| 12-05-08 | 12-07-08 | Interest Calc | | 30,000,000.00 | 4.38000 | 3 | 10,950.00 |
| 12-08-08 | | Balance Incr | 30,000,000.00 | 30,000,000.00 | | | |
| 12-08-08 | | Balance Decr | -30,000,000.00 | | | | |
| 12-08-08 | 12-31-08 | Interest Calc | | 30,000,000.00 | 4.38000 | 24 | 87,600.00 |

**OBLIGATION SUMMARY**
Interest Paid YTD   1,358,283.34
Interest Paid in 2007 2,223,818.77

| | |
|---|---|
| Principal Due | 0.00 |
| Interest Due | 112,316.66 |
| Total Due | 112,316.66 |

For Customer Service Call 1-888-293-2362.

**EXHIBIT 4**



**Craig Realty Group**
**Property Tax Payment Schedule**
**Tax Year: 2008-09**

| State, County / Property | Assessor ID No. / Parcel Number | Actual Value | Assessed Value | Annual Tax Amt | Tax Rate | Due Date | 1st Installment Payment | 2nd Installment Payment | Delinquent Date | Payee / Comments / Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Orange County | | | | | | | | | | Paul McDonnel, Treasurer |
| San Clemente | | | | | | | | | | *Pay online* |
| Prior Year | | | | | | | | | | |
| (Purchase) AP #691-011-25 | | | | | | | | | | |
| Current Year | | | | | | | | | | |
| 7/1/08 thru 6/30/09 | 691-422-01 | | 1,061,335.00 | 10,776.66 | 1.02% | 11/01/08 | 5,388.33 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 5,388.33 | 04/10/09 | |
| | 691-422-02 | | 1,017,005.00 | 10,327.14 | 1.02% | 11/01/08 | 5,163.57 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 5,163.57 | 04/10/09 | |
| | 691-422-03 | | 1,171,555.00 | 11,894.30 | 1.02% | 11/01/08 | 5,947.15 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 5,947.15 | 04/10/09 | |
| | 691-422-04 | | 2,028,043.00 | 20,579.16 | 1.01% | 11/01/08 | 10,289.58 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 10,289.58 | 04/10/09 | |
| | 691-422-05 | | 958,320.00 | 9,732.08 | 1.02% | 11/01/08 | 4,866.04 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 4,866.04 | 04/10/09 | |
| | 691-422-06 | | 1,229,058.00 | 12,477.38 | 1.02% | 11/01/08 | 6,238.69 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 6,238.69 | 04/10/09 | |
| | 691-422-07 | | 1,080,503.00 | 10,971.02 | 1.02% | 11/01/08 | 5,485.51 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 5,485.51 | 04/10/09 | |
| | 691-422-08 | | 3,874,008.00 | 39,297.44 | 1.01% | 11/01/08 | 19,648.72 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 19,648.72 | 04/10/09 | |
| | 691-422-09 | | 1,203,895.00 | 12,222.22 | 1.02% | 11/01/08 | 6,111.11 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 6,111.11 | 04/10/09 | |
| | 691-422-10 | | 1,406,323.00 | 14,274.86 | 1.02% | 11/01/08 | 7,137.43 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 7,137.43 | 04/10/09 | |
| | 691-422-11 | | 1,293,738.00 | 13,133.24 | 1.02% | 11/01/08 | 6,566.62 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 6,566.62 | 04/10/09 | |
| | 691-422-12 | | 2,211,330.00 | 22,437.72 | 1.01% | 11/01/08 | 11,218.86 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 11,218.86 | 04/10/09 | |
| | 691-422-13 | | 43,164,990.00 | 437,711.92 | 1.01% | 11/01/08 | 218,855.96 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 218,855.96 | 04/10/09 | |
| | 691-422-14 | | | 18.62 | | 11/01/08 | 9.31 | | 12/10/08 | |
| Parcel 691-422-16 is | 691-422-15 | | | 18.62 | | 02/01/09 | | 9.31 | 04/10/09 | |
| owned by SunCal | 691-422-17 | | | 18.62 | | 11/01/08 | 9.31 | | 12/10/08 | |
| | | | | | | 02/01/09 | | 9.31 | 04/10/09 | |
| Total San Clemente: | | | 61,700,103.00 | 625,891.00 | | | 312,945.50 | 312,945.50 | | |
| | | | | | | | | 625,891.00 (+) | | |

**Total $625,891**

**EXHIBIT 5**

rev. 2/11/2009, 11:43 AM

2

**Craig Realty Group**
**Property Tax Payment Schedule**
**Tax Year: 2007-08**

*Orange County*
*San Clemente*
*Prior Year*
*(Purchase) AP #691-011-25*
*Current Year*
*7/1/07 thru 6/30/2008*

| State, County / Property | Assessor ID No. / Parcel Number | Actual Value | Assessed Value | Annual Tax Amt. | Tax Rate | Due Date | 1st Installment Payment | 2nd Installment Payment | Delinquent Date | Payee / Comments / Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | 691-422-01 | 2007 | 1,770,720.00 | 17,981.94 | 1.02% | 11/01/07 / 02/01/08 | 8,990.97 | 8,990.97 | 12/10/07 / 04/10/08 | Paul McDonnell, Treasurer *Pay online* |
| | 691-422-02 | 2007 | 1,698,300.00 | 17,247.12 | 1.02% | 11/01/07 / 02/01/08 | 8,623.56 | 8,623.56 | 12/10/07 / 04/10/08 | |
| | 691-422-03 | 2007 | 1,955,340.00 | 19,855.26 | 1.02% | 11/01/07 / 02/01/08 | 9,927.63 | 9,927.63 | 12/10/07 / 04/10/08 | |
| | 691-422-04 | 2007 | 3,386,400.00 | 34,376.10 | 1.02% | 11/01/07 / 02/01/08 | 17,188.05 | 17,188.05 | 12/10/07 / 04/10/08 | |
| | 691-422-05 | 2007 | 1,601,400.00 | 16,263.88 | 1.02% | 11/01/07 / 02/01/08 | 8,131.94 | 8,131.94 | 12/10/07 / 04/10/08 | |
| | 691-422-06 | 2007 | 2,050,200.00 | 20,817.80 | 1.02% | 11/01/07 / 02/01/08 | 10,408.90 | 10,408.90 | 12/10/07 / 04/10/08 | |
| | 691-422-07 | 2007 | 1,805,400.00 | 18,333.84 | 1.02% | 11/01/07 / 02/01/08 | 9,166.92 | 9,166.92 | 12/10/07 / 04/10/08 | |
| | 691-422-08 | 2007 | 6,466,800.00 | 65,632.60 | 1.01% | 11/01/07 / 02/01/08 | 32,816.30 | 32,816.30 | 12/10/07 / 04/10/08 | |
| | 691-422-09 | 2007 | 2,009,400.00 | 20,403.82 | 1.02% | 11/01/07 / 02/01/08 | 10,201.91 | 10,201.91 | 12/10/07 / 04/10/08 | |
| | 691-422-10 | 2007 | 2,346,000.00 | 23,819.26 | 1.02% | 11/01/07 / 02/01/08 | 11,909.63 | 11,909.63 | 12/10/07 / 04/10/08 | |
| | 691-422-11 | 2007 | 2,159,340.00 | 21,925.24 | 1.02% | 11/01/07 / 02/01/08 | 10,962.62 | 10,962.62 | 12/10/07 / 04/10/08 | |
| | 691-422-12 | 2007 | 3,690,360.00 | 37,460.34 | 1.02% | 11/01/07 / 02/01/08 | 18,730.17 | 18,730.17 | 12/10/07 / 04/10/08 | |
| | 691-422-13 | 2007 | 72,073,200.00 | 731,334.18 | 1.01% | 11/01/07 / 02/01/08 | 365,667.09 | 365,667.09 | 12/10/07 / 04/10/08 | |
| | 691-422-14 | 2007 | 0.00 | 18.66 | | 11/01/07 / 02/01/08 | 9.33 | 9.33 | 12/10/07 / 04/10/08 | |
| Parcel 691-422-16 is owned by SunCal | 691-422-15 | 2007 | 0.00 | 18.66 | | 11/01/07 / 02/01/08 | 9.33 | 9.33 | 12/10/07 / 04/10/08 | |
| | 691-422-17 | 2007 | 0.00 | 18.66 | | 11/01/07 / 02/01/08 | 9.33 | 9.33 | 12/10/07 / 04/10/08 | |
| **Total San Clemente:** | | | 103,012,860.00 | 1,045,507.36 | | | 522,753.68 | 522,753.68 | | |
| | | | | | | | | 1,045,507.36 (*) | | |

Total (before refund) $1,045,507.68
Less refund rec'd.    $ 425,429.00
Total (after refund)  $ 620,078.68

rev 2/11/2009, 11:46 AM

# EXHIBIT B

Approvals:
City Manager
Dept. Head
Attorney
Finance

# AGENDA REPORT
## SAN CLEMENTE CITY COUNCIL MEETING
Meeting Date: February 16, 2010

---

**Department:**      Public Works
**Prepared By:**     William E. Cameron, Director/City Engineer

**Subject:**         *APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE CITY OF SAN CLEMENTE AND ARCH INSURANCE COMPANY FOR COMPLETION OF MARBLEHEAD COASTAL IMPROVEMENTS.*

**Summary:**         After work stopped on the Marblehead Coastal project, the City of San Clemente filed a lawsuit against SunCal Marblehead, LLC and Arch Insurance Company, the insurance company bonding improvements to be constructed. This occurred after the bankruptcy declarations of SunCal and Lehman, the company financing the Marblehead Coastal development project. When attempts to negotiate completion of improvements most affecting the public failed, the City filed a lawsuit against SunCal and Arch. In addition, the City Attorney's office has been involved in the SunCal bankruptcy proceedings and has been successful in convincing the bankruptcy court to release some funds on at least two occasions to perform maintenance work on the site, such as erosion control.

Negotiations have been very complicated. Many nuances are involved in completing improvements on this complex project involving both commercial and residential land uses. The City Council was insistent on certain improvements being immediately completed with other improvements allowed to be delayed if a settlement could be reached versus proceeding to trial. The City's priorities have been to first complete improvements started, but not finished on existing streets. This includes Avenida Pico, El Camino Real (PCH) and Via Soccoro. The next priority has been for improvements necessary to allow continued development of the Marblehead Coastal commercial site. These improvements include completion of the Avenida Vista Hermosa Bridge, Avenida Vista Hermosa street improvements and parks and trail required to be constructed by the California Coastal Commission prior to building permits for any commercial or residential buildings. Work on some improvements can be immediately restarted and others are subject to rights –of-entry being obtained or dry utilities (i.e. – electric, gas, telephone, cable) being installed or relocated.

The final settlement agreement, agreed to by the decision-maker at Arch, addresses many of the City's objectives, subject to certain actions not under Arch's control, being accomplished. The settlement agreement includes terms for three categories of various improvements.

Category A improvements can immediately commence once plans are revised to reflect work yet to be completed, bids are received and awarded by Arch. These include:

1. Avenida Pico Street, median, parkway, traffic signal, sewer and recycled water.
2. Via Soccoro sidewalk.
3. Some rough grading and monumentation.

---

Category B improvements involve those located wholly or partially on property owned by SunCal or some other entity, such as Villa San Clemente or Caltrans. The agreement requires the City and Arch to apply to the Bankruptcy Court for access to the property and Arch is required to start bidding immediately after it is granted access. It is anticipated that access agreements will be obtainable for all Category B improvements. Category B improvements include:

1. Trails (Bond SU5014993).
2. Habitat Management Plan (Bond SU5014722).
3. Street improvements for Cota Azul, Via Artemesia and the park access road.
4. Lot G (now referred to as lot N) park.
5. Storage vaults/CDS units.
6. JRWSS 27" waterline relocation
7. Connect storm drain that is the under water line to the main storm drain system.

Category C improvements are those which necessitate dry utilities (electric, gas, telephone, cable) to be relocated or installed before completion of improvements. The dry utility work is not bonded and is not the responsibility of Arch. As an example, widening El Camino Real (PCH) along the bluffs requires that SDG&E's electric utility vaults and street lights be relocated. The street improvements cannot be completed and the street fully re-opened until the utility relocation work is finished.

There are several options that can be pursued regarding funding dry utility work and completion of impacted improvements:

1. File a request to the Bankruptcy Court to release funds to complete dry utilities' work.
2. Have the City advance funds for dry utilities work for some or all of the remaining improvements with the hopes of recovery in the Bankruptcy proceedings or under the Subdivision Improvements Agreement when a new developer purchases the property.
3. Have Arch construct any or all of Category C improvements before dry utilities are installed and have the dry utilities installed later in the same or different location. While having the advantage of moving forward, this option may have unacceptable disadvantages which could include trenching through newly paved streets and higher costs for utility relocation and installation.
4. Wait for a new developer to purchase the property and enforce Subdivision Improvement Agreement requirements to complete all improvements.

Category C improvements listed in the settlement agreement are:

1. El Camino Real improvements.
2. Los Molinos street improvements.
3. JRWSS water line/rough grade.
4. Caltrans grading bond.
5. Avenida Vista Hermosa improvements.
6. Avenida Vista Hermosa traffic signal improvement
7. Avenida Vista Hermosa median and parking.
8. Avenida Vista Hermosa bridge improvements.

10B-2

Finally, there are improvements that SunCal is required to complete that are designated as "non-priority work" in the Settlement Agreement. These bonded improvements would be constructed by the new property owner who will be required to complete all improvements listed in the Development Agreement and Subdivision Improvement Agreement. Examples are:

1. Improvements necessary to complete the residential portions of Marblehead Coastal.
2. Marblehead Sports Park and some trails and parks.

The Settlement Agreement states that the City and Arch agree that Arch shall not be required to construct or install certain work covered by the bonds, nor shall Arch be required at this time to pay to City the estimated costs to complete the improvements. The City's agreement to defer non-priority work is based upon a combination of factors, including:

(i) CITY has determined that the Non-Priority Work items do not need to be completed at this time to protect the public health and safety; (ii) SunCal is in bankruptcy and is not actively proceeding at this time with development of the residential project on the Residential Site; (iii) as between SunCal and VSC, VSC has assumed responsibility for construction and installation of the Commercial Site Bridge and VSC is not actively proceeding at this time with development of its commercial project on the Commercial Site; (iv) some of the Non-Priority Work items will primarily be of benefit to and are required for the completed developments on the Residential Site and the Commercial Site; and (v), CITY does not wish to assume the maintenance responsibility for the Non-Priority Work items that are to be dedicated to CITY upon completion absent the development of the Residential Site and/or the Commercial Site.

The elements of the non-priority work include:

1. Precise Grade for the Sports Park
2. Precise Grading Lots 1-77
3. Precise Grading Lots 78-120
4. Precise Grading Lots 121-182
5. Precise Grading Lots 183-313
6. Street Improvements Lots 1-77
7. Street Improvements Lots 78-120
8. Street Improvements Lots 121-182
9. Street Improvements Lots 183-313
10. Residential Streets Landscape
11. Entry Monument Signage
12. Precise Grading Lot "RR"
13. MSE Wall Planting
14. Grading Bluff Repair
15. Precise Grade-Pico Park
16. Precise Grade-Lot R Park
17. Commercial Site Bridge
18. Rough Grading pertaining to Commercial Site Bridge

In addition, the Settlement Agreement states the City will reasonably cooperate with the residential site owner and / or commercial site owner to extend the Subdivision Improvement Agreement's completion deadlines to be not more than two years after the Settlement Agreement date. The Settlement Agreement discusses other terms for the non-priority work.

Arch has submitted a schedule of work for the various improvements. It allows time for plan preparation/modification and contracting. For example, the schedule anticipates the Avenida Pico contracting and construction work to take about 10 months. Other improvements are also included on the schedule, many of which cannot begin until right-of-entry agreements and/or dry utility issues are resolved.

The Settlement Agreement also calls for Arch to reimburse the City its cost of litigation expenses of $601,388.31 within fourteen days of execution of the agreement.

In summary, Robert Owen of Rutan and Tucker has stated:

"Obviously, there will be numerous issues to resolve as we move forward with construction. However, we do believe that the Settlement Agreement provides the best means and procedures to construct the public improvements in the most expeditious manner."

*Recommended Action:*  STAFF RECOMMENDS THAT the City Council:

1. Ratify the action taken in the City Council Closed Session of February 12, 2010 to approve and authorize the Mayor to execute the Settlement Agreement between the City of San Clemente and Arch Insurance Company for completion of certain Marblehead Coastal improvements.
2. Approve revenue of $601,390 to Account No. 001-000-36855, General Fund, Misc. Reimbursement.
3. Approve an expenditure of $601,390 from Account No. 001-481-43640-000-30806 from the General Fund, Other Legal Expenses, Marblehead Bond Litigation.

*Fiscal Impact:*  None. The City's litigation expenses will be reimbursed within fourteen days of execution of the Settlement Agreement.

*Attachments:*  Settlement Agreement

*Notification:*  None

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is dated for references purposes only as of the 2nd day of February, 2010 (the "Agreement Date"), and is being entered into by and between the City of San Clemente, a municipal corporation ("CITY"), and Arch Insurance Company, a Missouri corporation ("ARCH"). CITY and ARCH are sometimes hereinafter referred to collectively as the "Parties" and individually as a "Party."

## R E C I T A L S:

The Parties are entering into this Agreement on the basis of the following facts:

A.    The Marblehead property consists of approximately two hundred forty-seven and eighty-eight one hundredths (247.88) acres of land area located in the City of San Clemente, County of Orange, State of California, and bounded generally by El Camino Real (aka Pacific Coast Highway) to the southwest, Avenida Pico to the southeast, the Interstate 5 freeway to the northeast, and the Colony Cove residential subdivision to the northwest (the "Property").

B.    On or about June 21, 2005, CITY and SunCal Marblehead, LLC, a Delaware limited liability company ("SunCal"), entered into that certain Subdivision Improvement Agreement (the "Subdivision Improvement Agreement") relating to the construction and installation of certain "Works of Improvement" which were and are required to be constructed and installed in order to accommodate the planned development of the Property. The Works of Improvement referred to in the Subdivision Improvement Agreement are sometimes collectively referred to in this Agreement as the "Project." Subject to authorized extensions of time for events of force majeure delay, the Subdivision Improvement Agreement requires, *inter alia*, that SunCal complete construction and installation of the Project no later than two years after the date of the Subdivision Improvement Agreement, i.e., on or before June 21, 2007.

C.    At or about the time that CITY and SunCal entered into the Subdivision Improvement Agreement, SunCal, as principal, and ARCH, as surety, executed forty-three (43) statutory subdivision performance bonds (collectively, the "Bonds") in order to guarantee completion of the Project. A list of the Bonds by bond number, with a brief description of the improvements covered by each Bond, is attached hereto as Exhibit "A" and incorporated herein by reference. CITY is the obligee under the Bonds.

D.    At the time CITY and SunCal entered into the Subdivision Improvement Agreement SunCal owned the entire Property. Subsequent to that date, SunCal conveyed approximately 22.3 acres of land area within the Property (the "Commercial Site") to Villa San Clemente, LLC, ("VSC"), and SunCal retained the balance of the Property (the "Residential Site").

E.    Subsequent to entering into the Subdivision Improvement Agreement and posting the Bonds with CITY, SunCal commenced construction and installation of the Project. Due to financial difficulties, however, SunCal later discontinued such work. SunCal did not complete construction and installation of the Project on or before June 21, 2007, or at any time thereafter. The Project remains uncompleted as of the Agreement Date.

112062266-0382
106077N 05 a02/03/10                                              -1-

F.    On November 4, 2008, CITY filed suit in the Superior Court of the State of California, County of Orange, Case No. 30-2008-0016297 (the "**State Court Action**"), against SunCal and ARCH alleging, *inter alia*, that SunCal had breached the Subdivision Improvement Agreement by failing to timely complete the Project and that CITY was entitled to recover from ARCH the full cost of completing construction and installation of the various elements of the Project, plus attorney's fees and costs. On or about December 8, 2008, ARCH filed an answer in the State Court Action generally denying the allegations set forth in CITY's complaint and asserting certain affirmative defenses thereto.

G.    In November of 2008, an involuntary Chapter 11 bankruptcy proceeding was filed against SunCal in the United States Bankruptcy Court, Central District of California, Santa Ana Branch (Case No. 8:08-17409 ES, *In re Suncal Marblehead LLC* [ the "Bankruptcy Action"]). As a result of the filing of the Bankruptcy Action, CITY's claims in the State Court Action against SunCal have been stayed. CITY's claims in the State Court Action against ARCH have not been stayed, however, and those claims have been severed for a separate trial.

H.    As of the Agreement Date, the Bankruptcy Action remains pending. The Bankruptcy Court has appointed an independent trustee, Steven Speier (the "**Trustee**"), to oversee the affairs of the debtor-in-possession. The Trustee is not at present pursuing active construction of the Project.

I.    Mindful of the uncertainty and expense of litigation, CITY and ARCH have agreed to settle certain of the disputes between them in the State Court Action, while reserving their respective rights, obligations, and defenses relating to other disputes, all in accordance with and subject to the terms and conditions set forth in this Agreement.

## C O V E N A N T S:

Based upon the foregoing Recitals, which are incorporated into this Agreement by this reference, and for good and valuable consideration, the receipt and sufficiency of which is acknowledged by both Parties, CITY and ARCH agree as follows:

1.    **ARCH Reimbursement of CITY's Litigation Expenses.**

Within fourteen (14) days after the date upon which this Agreement is fully executed and delivered by the Parties (the "**Effective Date**"), ARCH shall pay to CITY the sum of Six Hundred One Thousand Three Hundred Eighty-Eight Dollars and Thirty-One Cents ($601,388.31) to reimburse CITY for its litigation expenses incurred through the Agreement Date to prosecute the State Court Action, including CITY's attorneys' fees, consultant fees, costs, and miscellaneous expenses.

2.    **Completion of Priority Work by Arch.**

2.1    Category A Priority Work. The Parties believe that the following listed portions of the Project (identified together with the Bonds corresponding thereto) are located entirely on public property and/or within existing dedicated public rights-of-way: (i) Via Socorro

10B-6

Improvements (Bond SU5017324); (ii) Avenida Pico Improvements (Bond 5014996); (iii) Avenida Pico Medians and Parkway (Bond SU5014991); (iv) Avenida Pico Traffic Signal Improvements (Bond SU5015040); (v) AVH/Pico-Sewer Improvements/Reclaimed Water (Bond SU5014792); (vi) Rough Grading (partial) (Bond SU 5014726); and (vii) Monumentation (Bond SU 5014725). The foregoing portions of the Project are sometimes collectively referred to herein as the **"Category A Priority Work"**). If, however, subsequent to the Agreement Date the Parties determine that any of the aforementioned portions of the Project are in fact located on SunCal's Property and subject to the jurisdiction of the Trustee and the Bankruptcy Court in the Bankruptcy Action, such items and the corresponding Bonds relating thereto shall be addressed as Category B Priority Work items in accordance with Section 2.2 hereinbelow.

Within sixty (60) days after the Effective Date of this Agreement, ARCH shall enter into a binding written contract or contracts with a completion contractor or contractors (subject to approval of each such contractor by the City Engineer of CITY, which approval shall not be unreasonably withheld), to complete the Category A Priority Work pursuant to the most recently available plans and specifications approved by CITY for each such item of work. Subject to Section 2.7 of this Agreement, ARCH shall cause such contractor(s) to complete the Category A Priority Work within the times set forth in the Schedule of Performance set forth in Exhibit "B" to this Agreement (the **"Schedule of Performance"**). Arch shall pay all of the costs and expenses incurred to complete the Category A Priority Work.

2.2    Category B Priority Work. The Parties believe that the following listed portions of the Project (identified together with the Bonds corresponding thereto) are located entirely or in part on the Residential Site owned by SunCal, on the Commercial Site owned by VSC, and/or on property owned by the State of California (**"Caltrans"**), or other third party(ies): (i) Trails (Bond SU5014993); (ii) Habitat Management Plan (Bond SU5014722); (iii) Street Improvements for Costa Azul, Artemesa, and Park access Road (Bond SU5014716); (iv) Lot G [now referred to as Lot N] park (Bond SU5014989); (v) Storage Vaults/CDS Units (Bond SU5014794); (vi) JRWSS 27" Water Line (Bond SU5014724); and (vii) Connect Storm Drain underwater line to main storm drain system (Bond SU 5014791). The foregoing portions of the Project are sometimes collectively referred to herein as the **"Category B Priority Work."** Within thirty (30) days after the Effective Date of this Agreement, the Parties shall apply to the Bankruptcy Court in the Bankruptcy Action, to VSC, to Caltrans, and to such other owner or owners of land upon which any of the Category B Priority Work is to be performed, as applicable, to authorize ARCH and CITY and their respective contractors and consultants to enter onto such land to complete the applicable portions of the Category B Priority Work (and any Category C Priority Work located entirely or in part on the Residential Property owned by SunCal) and, to the extent such improvements are located entirely or in part on the Property, to authorize CITY to accept SunCal's offer of dedication for such improvements and the rights-of-way pertaining thereto upon completion. Prior to making such application to the Bankruptcy Court, the Parties shall cooperate in a good faith effort to obtain the Trustee's stipulation agreeing to the elements of said application to the Bankruptcy Court. Arch shall pay all of the costs and expenses incurred to obtain the stipulation of the Trustee, to file any application or motion that needs to be filed in the Bankruptcy Action, and to obtain Bankruptcy Court approval thereof. In seeking authorization to enter onto the Residential Site, the Commercial Site, the Caltrans property, and any other third party's property, as needed to construct/install any portion of the Category B Priority Work (or for any Category C Priority Work for which Bankruptcy

112/062266-0582
1040778 05 a02/03/10

-3-

Court approval is needed), ARCH agrees to act reasonably in executing such entry permit or similar agreement that the owner of the applicable parcel(s) (and, with respect to the Residential Site, the Trustee and the Bankruptcy Court) may require which obligates ARCH to perform only the work authorized by CITY consistent with the Subdivision Improvement Agreement, to comply with applicable laws, to repair and restore any damage to the balance of the parcel(s), to require each completion contractor to maintain reasonable insurance limits naming the owner(s) as an additional insured, to indemnify the owner(s) from claims, of personal injury, property damage, and other similar losses arising out of ARCH's and its contractor's entry, and similar matters.

The parties do not intend that ARCH's request for approval from VSC or other third parties would require ARCH to waive any right to recover the cost of construction of the improvements located on such third party's property, whether by subrogation, reimbursement, indemnification; or otherwise.

Within sixty (60) days after the date that ARCH succeeds in obtaining approval from each applicable owner (and, as to the Residential Site, from the Bankruptcy Court) for entry onto such owner's property to perform the Category B Priority Work on such owner's property, and subject to Section 2.3 hereinbelow, ARCH shall enter into a binding written contract or contracts with a completion contractor or contractors (subject to approval of each such contractor by the City Engineer of CITY, which approval shall not be unreasonably withheld), to complete the Category B Priority Work pursuant to the most recently available plans and specifications approved by CITY for each such item of work. Subject to Section 2.7 of this Agreement, ARCH shall cause such contractor(s) to complete the Category B Priority Work within the times set forth in the Schedule of Performance. ARCH shall pay all of the costs and expenses incurred to complete the Category B Priority Work.

If for any reason any owner of property on which any of the Category B Priority Work is to be performed (and, as to the Residential Site, the Bankruptcy Court) declines to grant the Parties' request, application, or motion for authorization to enter onto such property to perform the work and to authorize CITY to accept SunCal's offer of dedication for such work upon completion, as applicable, then CITY reserves all rights under the Bonds as to any such affected work, and ARCH reserves any defenses.

   2.3 **Category C Priority Work.** The Parties agree that the following portions of the Project cannot practicably be constructed and installed prior to the construction, installation, and/or relocation of certain "dry" utilities herein, the "Dry Utilities"), including but not limited to electrical utilities and fiber optic cable, that are not bonded and are not ARCH's responsibility: (i) El Camino Real Improvements (Bond SU5014997); (ii) Los Molinos Street Improvements (Bond SU50117323); (iii) JRWSS Water Line/Rough Grade (Bond SU5011417); (iv) Caltrans Grading (Bond SU 50114727); (v) AVH Improvements (Bond SU5014995); (vi) AVH Traffic Signal Improvement (Bond SU 5015039); (vii) AVH Median and Parkway (Bond SU5014992); and (viii) AVH Bridge Improvements (Bond SU5014998);. The foregoing portions of the Project are sometimes collectively referred to herein as the "**Category C Priority Work.**"

10B-8

CITY and ARCH understand that SunCal previously made deposits with one or more utility companies and/or Caltrans to pay for some or all of the cost of the unbonded Dry Utility Work. To the extent that the utility companies and Caltrans currently retain any such deposits which are not property of the Debtor in the Bankruptcy Action, CITY will request that the utility companies and Caltrans proceed with the work, subject to Bankruptcy Court approval, if required. ARCH covenants to act with commercially reasonable diligence to coordinate with such utility companies and/or Caltrans to have them or their contractors complete the Dry Utility Work as quickly as is possible so that ARCH can then proceed with the Category C Priority Work pertaining thereto.

CITY and ARCH further understand that one or more utility companies and/or Caltrans may have returned to the Trustee a deposit or deposits previously made by SunCal for some or all of the cost of the Dry Utility Work. If and to the extent this has occurred, ARCH covenants to include in its proposed stipulation with the Trustee and its application or motion with the Bankruptcy Court in the Bankruptcy Action referred to in Section 2.2 above a request that such deposit(s) be re-deposited with the applicable utility company(ies) and/or Caltrans so that the Dry Utility Work can be expeditiously completed and ARCH will then be in a position to proceed with the Category C Priority Work pertaining thereto.

In addition to the foregoing, CITY shall have the right but not the obligation to advance funds to one or more utility companies and/or Caltrans (reserving CITY's rights against SunCal with respect to same) so that said utility company(ies) and/or Caltrans will be able to complete some or all of the Dry Utility Work and ARCH will be in a position to complete the Category C Priority Work relating thereto.

Alternatively, CITY shall have the right but not the obligation to instruct ARCH to complete some or all of the Category C Priority Work prior to completion of the Dry Utility Work pertaining thereto, in which case ARCH shall have no responsibility or liability for either (i) alleged defects in the Category C Priority Work arising out of the absence of the Dry Utility Work pertaining thereto or (ii) costs or damages of any kind whatsoever arising out of the relocation of the Dry Utility Work to another location or locations or any subsequent excavation, cutting, demolition, removal, repair, or reconstruction of the Category C Priority Work for which ARCH is responsible hereunder.

Within sixty (60) days after the date that the Dry Utility Work for any of the Category C Priority Improvements has been completed or the date CITY notifies ARCH in writing that CITY has elected to have ARCH complete some or all of the Category C Priority Work prior to completion of the Dry Utility Work pertaining thereto, whichever first occurs, ARCH shall enter into a binding written contract or contracts with a completion contractor or contractors (subject to approval of each such contractor by the City Engineer of CITY, which approval shall not be unreasonably withheld), to complete the Category C Priority Work (or portion thereof that has been delayed by the Dry Utility Work pertaining thereto) pursuant to the most recently available plans and specifications approved by CITY for each such item of work. Subject to Section 2.7 of this Agreement, ARCH shall cause such contractor(s) to complete the Category C Priority Work or applicable portion(s) thereof within the times set forth in the Schedule of Performance. Subject to CITY's right to tender to ARCH the cost of the Dry Utility Work, as stated in this Section 2.3, and CITY's obligation to tender to ARCH the Deficiency Amount under the

10B-9

circumstances described in Section 2.9 below, ARCH shall pay all of the costs and expenses incurred to complete the Category C Priority Work.

Finally, and notwithstanding any other provision set forth in this Agreement to the contrary, if for any reason the funding for installation of any of the Dry Utility Work has not been secured within six (6) months after the scheduled completion date of Category A Priority Work and Category B Priority Work (excluding work relating to Trails (Bond SU5014993), Habitat Management Plan (Bond SU5014722)), such that ARCH is unable to proceed to complete the corresponding Category C Priority Work at that time (and assuming CITY has neither elected to advance the costs for the Dry Utility Work or have ARCH complete the applicable portions of the Category C Priority Work prior to installation of the Dry Utility Work pertaining thereto), CITY shall have the right, but not the obligation, to require ARCH to pay to CITY the amount reasonably determined by the City Engineer to be needed to complete the unperformed Category C Priority Work, not to exceed the penal sum of the Bond(s) pertaining thereto, and the tender of such deposit shall forever discharge ARCH's obligation with respect to such portion of the Category C Priority Work. CITY agrees that if it accepts a tender of funds from ARCH pursuant to this last paragraph of Section 2.3 it shall hold the deposited sum(s) in trust to secure completion of the Category C Priority Work to which such deposit relates. If at a later date not to exceed two years from the date of ARCH's deposit, CITY determines that the Category C Priority Work for which such deposit relates should not be constructed or installed, or the improvements are completed of the expense of a new owner or third party, CITY shall return to ARCH the full amount of ARCH's deposit relating to such improvement within a reasonable time not to exceed sixty (60) days from the date CITY determines that the particular improvement will not be built. In the event that CITY returns any deposits under this provision prior to completion of the improvements, CITY shall reserve and maintain all of its rights under the Bonds pertaining to the incomplete improvement.

2.4     Additional Matters to be Included in Requests to Property Owners and in Proposed Stipulation with Bankruptcy Trustee and Application/Motion to Bankruptcy Court.   In addition to the matters specifically addressed in Sections 2.1-2.3, ARCH and CITY agree to cooperate by including in their requests to any property owner (including without limitation VSC and/or Caltrans), in their requested stipulation with the Trustee, and in their application/motion to the Bankruptcy Court in the Bankruptcy Action all additional authorizations and approvals consistent with the foregoing as may be reasonably necessary to cause the Category A Priority Work, the Category B Priority Work, and the Category C Priority Work to be commenced and completed within the times set forth in this Agreement. Not by way of limitation of the foregoing, ARCH and CITY understand that SunCal may have custody of certain equipment, materials, and supplies that are needed for the Project (e.g., some or all of the Avenida Pico Traffic Signal Improvements referred to as item (iv) of the Category A Priority Work in Section 2.1) and, to such extent, ARCH and CITY shall request that such equipment, materials, and supplies be released to ARCH and its completion contractors so that the applicable portion(s) of the Project can timely proceed.

2.5     Compliance With Subdivision Improvement Agreement and Applicable Laws.   In constructing and installing the Category A Priority Work, the Category B Priority Work, and the Category C Priority Work (collectively, the "Priority Work"), ARCH shall perform and shall cause its contractor(s) to perform in accordance with the obligations and

10B-10

duties of the Subdivider as set forth in the Subdivision Improvement Agreement and in accordance with all applicable provisions of federal, State, and local laws, regulations, and official policies, including without limitation CITY's and the California Coastal Commission's conditions of approval for the Marblehead development. In the event of any express conflict between the provisions of the Subdivision Improvement Agreement and this Agreement, however (including without limitation with respect to the timing and phasing of the completion of the Priority Work), the provisions of this Agreement shall prevail and control as between CITY and ARCH (and without any intent on the part of either Party to amend or modify the Subdivision Improvement Agreement or waive or release any right or claim that it may have against SunCal).

2.6     City Cooperation.    CITY shall reasonably cooperate with ARCH and the completion contractor(s) engaged by ARCH to make available all information, plans, specifications, and other documents necessary for the obtaining of bids and cost quotes for ARCH's completion of the Priority Work, including access to information of the City Engineer's office. City shall be entitled to charge its normal permitting and inspection fees.

2.7     Extensions of Time.    Notwithstanding the timelines for commencement and completion of the Priority Work set forth in Sections 2.1-2.3 and the Schedule of Performance, said timelines shall be extended for a reasonable time if and to the extent that: (i) final plans and specifications approved by the City Engineer are not available for any of the uncompleted portions of the Project or if for any reason changes or revisions of any of the previously approved plans and specifications are required; (ii) field conditions are discovered after the Agreement Date that vary from the approved plans and specifications and that cause delays in completion of the work; (iii) SunCal would be entitled to an extension of time to perform pursuant to Section 2.3 (entitled "Force Majeure") of the Subdivision Improvement Agreement; or (iv) as to the Category B Priority Work and Category C Priority Work only, if, prior to ARCH's completion of any portions of such work, either SunCal or a new owner of the Residential Site approved by the Bankruptcy Court (collectively, the "**Residential Site Owner**") provides reasonable assurances to CITY that the Residential Site Owner intends to and will assume the obligation to complete such work no later than ninety (90) days after the deadline for ARCH to complete such work in accordance with this Agreement, ARCH ensures that its completion contractors maintain continued compliance with regulatory requirements pertaining to such items as storm water runoff and erosion control during any temporary suspension of work, and the Residential Site Owner diligently pursues such portions of the Category B Priority Work and/or Category C Priority Work to completion within said extended timeline. In all such circumstances, ARCH shall act reasonably to limit the duration of any delay in performance and shall keep the City Engineer informed with respect to all facts pertaining thereto.

2.8     Exoneration/Release/Replacement of Bonds.    In no event shall any ARCH's Bond for any portion of the Priority Work be released or exonerated until the earlier of (i) the date on which all of the Priority Work secured by such Bond is satisfactorily completed and accepted by CITY or the Bonds are replaced or (ii) ARCH tenders to CITY the penal sum of the Bond or portion thereof pursuant to Section 2.3 or 2.9 of this Agreement, as applicable. CITY agrees to accept replacement Bonds from a solvent, admitted surety if the Bankruptcy Court in the Bankruptcy Action orders that the Residential Site Owner (as that term is defined in Section 2.7) tender replacement Bonds to CITY and the surety providing the replacement Bonds

10B-11

assumes ARCH's obligations set forth in this Agreement in a written assignment and assumption agreement approved as to form and content by the City Attorney of CITY. Upon ARCH's satisfactory completion of the Priority Work in accordance with the Subdivision Improvement Agreement and this Agreement and acceptance of the Priority Work by CITY, CITY and ARCH shall release each other and their respective officers, directors, agents, consultants, attorneys, and employees from any and all claims, demands, actions, liabilities, damages, and causes of action, whatsoever, including costs and attorney's fees, in regard to, or in any way arising from or relating to, the Priority Work and the BONDS pertaining to the Priority Work, except for latent defect claims and claims arising during the one year warranty period. The Parties understand that, except as otherwise provided herein, this release extends to any and all claims, demands, actions, and causes of action of any and every kind or nature whatsoever, contractual, tortious, or otherwise, present or future, known or unknown, contemplated or uncontemplated, in connection with, or in any way arising from or relating to, the Priority Work.

2.9    Priority Work Costing More than Penal Sum of Bond.

Notwithstanding any other provision set forth in this Agreement, CITY and ARCH agree that if ARCH reasonably determines prior to entering into a contract or contracts to perform any of the separate items comprising the Priority Work that the cost of completing such work exceeds the penal sum of the Bond that secures such work, ARCH may satisfy its obligations in full to CITY by tendering to CITY the penal sum of the particular Bond; provided, however, that: (i) prior to tendering to CITY the penal sum of a particular Bond, ARCH shall provide CITY with a minimum of thirty (30) days notice of its intention to do so, together with all information available to ARCH (including without limitation bidding documents and responses to ARCH's request for bids from all qualified and licensed contractors who submit bids) substantiating that the cost of the bonded improvement in fact exceeds the penal sum of the Bond and the amount of the deficiency between the penal sum of the Bond and the estimated cost of the work; and (ii) as to Category A Priority Item (iii) (Avenida Pico Medians and Parkway—Bond SU5014991) and Category C Priority Item (vii) (AVH Median and Parkway—Bond SU5014992) if ARCH elects to not construct either such portion of the Project based on its determination that the cost of such work exceeds the penal sum of the Bond(s) therefor, ARCH acknowledges and agrees that it shall still be obligated to and shall stub the bonded utility conduits and utilities to the medians as part of the adjacent street work so that the streets do not have to be cut or damaged at a later date when the medians and parkway improvements are constructed and installed. CITY agrees that if ARCH tenders to CITY the penal sum of a Bond pursuant to this Section 2.9 CITY shall hold the deposited penal sum in trust to secure completion of the bonded portion of the Priority Work to which said deposit relates. If at a later date CITY determines that the particular bonded improvement to which such deposit relates should not be constructed or installed, CITY shall return to ARCH the full amount of ARCH's deposit relating to such improvement within a reasonable time not to exceed sixty (60) days from the date CITY determines that the particular improvements will not be built.

3.    Non-Priority Work.

3.1    Deferral of Obligation to Complete Non-Priority Work. The Parties agree that ARCH shall not be required at this time to construct or install certain of the items of work covered by the Bonds (the "Non-Priority Work"), nor shall ARCH be required at this time to pay to CITY the estimated costs for CITY to complete the same. CITY's agreement to defer

completion of the Non-Priority Work is based upon a combination of factors, including without limitation, the following: (i) CITY has determined that the Non-Priority Work items do not need to be completed at this time to protect the public health and safety; (ii) SunCal is in bankruptcy and is not actively proceeding at this time with development of the residential project on the Residential Site; (iii) as between SunCal and VSC, VSC has assumed responsibility for construction and installation of the Commercial Site Bridge and VSC is not actively proceeding at this time with development of its commercial project on the Commercial Site; (iv) some of the Non-Priority Work items will primarily be of benefit to and are required for the completed developments on the Residential Site and the Commercial Site; and (v) CITY does not wish to assume the maintenance responsibility for the Non-Priority Work Items that are to be dedicated to CITY upon completion absent the development of the Residential Site and/or the Commercial Site. The elements of the Non-Priority Work and the Bonds corresponding thereto are the following (i) Precise Grade for the Sports Park (Bond SU5014988); (ii) Precise Grading Lots 1-77 (Bond SU 5014728); (iii) Precise Grading Lots 78-120 (Bond SU5014729); (iv) Precise Grading Lots 121-182 (Bond SU5014370); (v) Precise Grading Lots 183-313 (Bond SU5014731); (vi) Street Improvements Lots 1-77 (Bond SU 5014712); (vii) Street Improvements Lots 78-120 (Bond SU5014713); (viii) Street Improvements Lots 121-182 (Bond SU 5014714; (ix) Street Improvements Lots 183-313(Bond SU5014715); (x) Residential Streets Landscape (Bond SU5014723); (xi) Entry Monument Signage (Bond SU 5014994); (xii) Precise Grading Lot "RR" (Bond SU5014721); (xiii) MSE Wall Planting (Bond SU 5014986); (xiv) Grading Bluff Repair (Bond SU50111114797); (xv) Precise Grade-Pico Park (Bond SU5014987); (xvi) Precise Grade-Lot R Park (Bond SU5014990); (xvii) Commercial Site Bridge (Bond SU5014796); and (xviii) Rough Grading pertaining to Commercial Site Bridge (Bond SU5014726—partial).

      3.2   **Reservation of Rights and Obligations With Respect to Non-Priority Work; Tolling of Claims.**   The Bonds securing the Non-Priority Work shall remain in full force and effect, in accordance with their terms, and each Party reserves all of its rights, claims, and defenses with respect thereto, except as expressly set forth in this Section 3.2. Upon CITY's dismissal without prejudice of the State Court Action pursuant to Section 4.2 of this Agreement, the Parties agree that the time period for CITY to file a new lawsuit (the "New Lawsuit") arising out of the alleged failure by SunCal or successor to timely complete the Non-Priority Work items and/or ARCH's failure to perform its obligations with respect to the Bonds securing the Non-Priority Work shall be tolled from the original commencement of the State Court Action (i.e., November 4, 2008) through the date(s) upon which the Non-Priority Work is satisfactorily completed or the Bonds pertaining thereto are replaced, whichever occurs sooner (the "Tolling Period"), said the Tolling Period shall not be counted in determining whether CITY has filed the New Lawsuit within the time required by any applicable statute of limitations or in considering any time-related defense that may be asserted by ARCH in the New Lawsuit, including without limitation a defense based on the equitable doctrine of laches.

      CITY further agrees with ARCH that CITY will reasonably cooperate with the Residential Site Owner and/or Commercial Site Owner to extend the applicable deadlines in the Subdivision Improvement Agreement for performance of the various items of Non-Priority Work consistent with such owner's development schedule (for a period not in excess of two (2) additional years after the Agreement Date); provided, however, that (i) neither the Residential Site Owner nor the Commercial Site Owner is intended to be a third party beneficiary of said

10B-13

CITY agreement with ARCH and neither the Residential Site Owner nor the Commercial Site Owner shall have standing to enforce said CITY covenant to ARCH; (ii) any such extension of the deadlines set forth in the Subdivision Improvement Agreement for completion of the Non-Priority Work shall be conditional and contingent upon CITY's entering into a written amendment to the Subdivision Improvement Agreement with SunCal or the appropriate party or parties that succeed(s) to SunCal's rights and obligations thereunder, and CITY makes no representation or warranty to ARCH that such an amendment to the Subdivision Improvement Agreement will be approved or executed; (iii) nothing in this Agreement is intended or shall be interpreted to limit any new conditions that CITY may place upon the other party(ies) to such an amended Subdivision Improvement Agreement relating to the deferred completion of the Non-Priority Work; (iv) notwithstanding any other provision set forth in this Agreement, CITY additionally reserves the right to reinstitute or resume enforcement of ARCH's obligations as surety with respect to the Non-Priority Work if CITY reasonably determines after the Agreement Date that the public health and safety requires completion of any or all of the items of Non-Priority Work prior to the time that the Residential Site Owner or Commercial Site Owner proceeds with its development; (v) if the Residential Site Owner or Commercial Site Owner seeks permission from CITY to materially change the items of Non-Priority Work and CITY and any other governmental agencies with jurisdiction (including without limitation the California Coastal Commission) approves said change, CITY agrees to require the Residential Site Owner or Commercial Site Owner, as applicable, to provide new surety bonds to replace the ARCH bonds and, upon receipt of replacement bonds, CITY shall release ARCH from any and all claims pertaining to the Non-Priority Work and the Bonds that are covered by said replacement bonds.

Upon the satisfactory lien-free completion of the Non-Priority Work by the Residential Site Owner and/or Commercial Site Owner in accordance with the Subdivision Improvement Agreement and the normally applicable CITY requirements pertaining thereto, CITY shall release ARCH from all claims with respect to the Bonds pertaining to such work, except for latent defect and warranty claims arising within the one-year warranty period.

4.    Continuance of Trial in State Court Action; Dismissal Without Prejudice.

4.1    **Continuance of Trial.**    Within three (3) business days after the Effective Date, CITY and ARCH shall jointly apply to the trial judge in the State Court Action for an order continuing the trial date for a period of approximately nine (9) months, which amount of time the Parties mutually expect will be sufficient to enable ARCH to complete the Category A Priority Work and significant portions of the Category B Priority Work. The Parties further agree to support the scheduling of a status conference with the trial court in the State Court Action approximately two (2) months prior to the rescheduled trial date in order to provide an opportunity for the Parties to advise the Court of the status of said work. If ARCH is proceeding with reasonable diligence to complete the Category A Priority Work and Category B Priority Work but said work remains uncompleted at the time of the status conference and/or continued trial date for reasons authorized pursuant to Section 2.7 of this Agreement, the Parties agree to cooperate in seeking additional continuances of the trial date (with the length of any such additional continuance to be based upon the facts and circumstances at said time and the then-anticipated schedule for completion of the work) and additional status conferences until said work is satisfactorily completed. If for any reason ARCH is unable, after and despite its best efforts, to implement the provisions of this Agreement pertaining to performance of the Category

10B-14

A Priority Work and Category B Priority Work (e.g., because the Bankruptcy Court does not authorize ARCH's entry onto the Property to perform the Category B Priority Work), neither Party shall be obligated to consent to further continuances of the trial date. Notwithstanding any other provision set forth in this Agreement to the contrary, if the trial court does not agree to continue the trial date pursuant to the joint request of the Parties pending ARCH's completion of the Category A Priority Work and Category B Priority Work, this Agreement shall be deemed terminated as of the date the trial court issues such order and neither Party shall have any further rights or obligations hereunder.

If the Court will not agree to continuing the trial date pursuant to the joint request of the parties pending compliance with this Agreement, CITY, at its sole option and discretion, may file a dismissal without prejudice of the State Court Action prior to the scheduled trial date. Should the CITY exercise this option, this Agreement shall not be terminated and shall remain in full force and effect, notwithstanding any contrary provision in this Section 4.1. Should the CITY exercise this option, in any event the CITY shall retain all rights to enforce this Agreement and the Bonds, including the filing of a subsequent action. The Parties agree that if the State Court Action is so dismissed, the time period for CITY to file a subsequent action arising out of the alleged failure by SunCal or its successor to timely complete the work covered by the Bonds, and/or ARCH's failure to perform its obligations with respect to the Bonds securing such work, shall be tolled from the original commencement of the State Court Action (i.e., November 4, 2008), through the date upon which a subsequent action is filed. If the CITY files a subsequent action, ARCH agrees that such action may be placed on a "fast track" schedule for expedited trial.

4.2    **Dismissal Without Prejudice As To Arch Only.**    Upon ARCH's satisfactory completion of the Category A Priority Work and the Category B Priority Work, CITY shall file a dismissal without prejudice of the State Court Action as to ARCH only (but not as to SunCal). Thereafter, if CITY files a New Lawsuit against ARCH with respect to any of the Category C Priority Work and/or the Non-Priority Work, ARCH agrees that such action may be placed on a "fast track" schedule for expedited trial.

4.3    **Resolution of Disputes Concerning Interpretation of Construction Performance Duties of this Agreement.**    The Parties desire a quick mechanism to resolve any dispute which may arise between the Parties as to the interpretation of this Agreement with respect to the performance of construction of the improvements under this Agreement by ARCH's completion contractors, including but not limited to, disputes concerning the scope of construction required under any particular bond, the applicable plans, specifications and requirements of such construction, any change orders which may become advisable during the course of construction, and similar types of technical construction disputes. The Parties agree to cooperate in every regard to quickly resolve any dispute which may arise. If the Parties cannot resolve such a dispute voluntarily, the Parties agree to submit such dispute for binding determination on an expedited basis to Judicate West, and the Parties agree to follow any such interpretation of the construction-related obligations of this Agreement made by Judicate West.

This provision is not intended to limit the right of any party to apply to the court to enforce material provisions of this Agreement prior to the dismissal of this action upon an alleged material breach by any other party to this Agreement, or after the dismissal of this Action

112063266-0382
1050278.05 a0203/10                    -11-

if the court retains jurisdiction to enforce provisions of this Agreement after dismissal. Further, no party will oppose a request to the court to retain jurisdiction to enforce material provisions of this Agreement after any dismissal without prejudice of the action.

5.   **MISCELLANEOUS.**

5.1   **Rights Against Third Parties.**  CITY and ARCH agree that this agreement is not intended to limit or otherwise affect their respective rights against third parties pertaining to the project, including but not limited to: (1) any rights of ARCH to pursue indemnity from its principals, indemnitors or third parties, whether in bankruptcy or other legal proceedings including, but not limited to, VSC; (2) any rights of ARCH to seek indemnity, subrogation, reimbursement or recovery of mechanics' liens, or other liens against any property on which ARCH pays for construction of improvements, including any private property not owned by the Debtor in Possession or its assignees; (3) any rights of CITY against Suncal, its successors or assignees, except to the extent that ARCH's performance of the completion contracts may reduce the obligations of its principal SUNCAL MARBLEHEAD LLC to the CITY to the extent of such performance only.

5.2   **Releases; Civil Code Section 1542 Waiver.** Each Party waives with respect to the releases contained herein its respective rights given by Section 1542 of the Civil Code of the State of California, which reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."

Each Party understands and acknowledges the significance and consequence of this specific waiver of Section 1542.

5.3   **Agreement Binding on Successors and Assigns.**  This Agreement shall bind and inure to the benefit of the Parties and to each of their respective successors and assigns.

5.4   **No Admission of Fault, Liability, or Damages.**   It is understood and agreed that this Agreement is a compromise of disputed claims and that nothing contained herein shall be deemed or treated as an admission of any kind by either Party.

5.5   **Entire Agreement; Interpretation.**  This Agreement contains the entire agreement of the Parties and supersedes any prior written or oral agreements between them concerning the subject matter contained herein. This Agreement shall be construed in all respects as having been jointly drafted and shall not be construed in any way against either Party on the ground that that Party was the drafter of this Agreement. This Agreement shall be governed in all respects by the internal laws of the State of California in effect at the time of its execution, without regard to conflict of law principles.

10B-16

5.6    **Amendments and Modifications.**   No supplement, modification, or amendment to this Agreement shall be binding unless the same shall in writing and executed by both Parties.

5.7    **Cooperation.**  Each Party agrees to execute and deliver such other and further documents and perform such other acts as shall be necessary to effectuate the purposes of this Agreement.

5.8    **Attorney's Fees and Costs.**  In any litigation arising from or relating to this Agreement, including, without limitation, proceedings in any state, federal, or bankruptcy court, in addition to whatever other relief to which it may be entitled, the prevailing Party shall be entitled to recover its costs and reasonable attorneys' fees in an amount to be determined by the court.

5.9    **No Third Party Beneficiaries.**     The Parties hereto agree that no third party is intended to be a third party beneficiary of this Agreement, either express or implied.

5.10    **Authority.**    Each person signing this Agreement on behalf of a Party represents that he/she is authorized to execute this Agreement on behalf of his/her respective principal and that his/her signature is sufficient to legally bind his/her respective principal. Each Party represents that it has obtained all necessary authority to enter into this Agreement and that it is aware of no reason why this Agreement is not legally binding and effective.

5.11    **Counterpart Signatures.**    This Agreement may be executed in counterparts by facsimile signature and the counterparts, when taken together, shall have the same force and effect as if a single, original document had been executed by both Parties.

Dated:  _2-2-10_                              CITY OF SAN CLEMENTE

                                             By: _____
                                             Its: Mayor

ATTEST:

By: _____
Its: City Clerk

APPROVED AS TO FORM:

By: _____
Its: City Attorney      By: Robert Owen

*Signatures continued on page 14*

*Signatures continued on page 14*

10B-17

Dated: 2/4/10

ARCH INSURANCE COMPANY

By: _____
Its: Vice President

APPROVED AS TO FORM:

Dated: 2/4/10

GASCOU HOPKINS LLP

By: _____
Ronald W. Hopkins
Attorneys for Arch Insurance Company

10B-18

# EXHIBIT A

10B-19

EXHIBIT A - BONDS

| Bond # | Bond Description | Bond Amount |
|---|---|---|
| SU5014712 | Street Imp., Tract 8817, Lots 1-77 | $ 1,707,100.00 |
| SU5014713 | Street Imp., Tract 8817, Lots 78-120 | $ 863,000.00 |
| SU5014714 | Street Imp., Tract 8817, Lots 121-182 | $ 751,000.00 |
| SU5014715 | Via Cantabria, Via Galicia, Via Asturias, Via Murcia TTM 8817, Lots 183-313 | $ 1,354,600.00 |
| SU5014716 | Avenida Costa Azul, Via Artemesia & Park Access Rd. for TTM 8817 | $ 1,858,866.00 |
| SU5014717 | Rough Grading for JRWSS Waterline Relocation Tract 8817 | $ 180,000.00 |
| SU5014718 | Commercial Service Entry Wall for TTM 8817 | $ 804,000.00 |
| SU5014719 | Canyon Edge Walls for TTM 8817 | $ 15,350.00 |
| SU5014720 | Retaining Wall for TTM 8817 | $ 1,005,000.00 |
| SU5014721 | Precise Grading for Lot V Park (Original Lot RR) | $ 443,727.00 |
| SU5014722 | Habitat Management Plan, Tract 8817 | $ 225,513.00 |
| SU5014723 | Residential Streets Landscape Improvements, Tract 8817 | $ 3,571,133.91 |
| SU5014724 | SCWD/JRWSS 27" Waterline Avh & Ave Pico Comm. Site | $ 1,705,500.00 |
| SU5014725 | Tract No. 8817 | $ 170,000.00 |
| SU5014726 | Rough Grading for TTM 8817 | $ 4,671,000.00 |
| SU5014727 | Caltrans Grading for TTM 8817 | $ 221,100.00 |
| SU5014728 | Production Precise Grading, Tract 8817, Lots 1-77 | $ 508,500.00 |
| SU5014729 | Production Precise Grading, Tract 8817, Lots 78-120 | $ 294,000.00 |
| SU5014730 | Production Precise Grading, Tract 8817, Lots 121-182 | $ 404,800.00 |
| SU5014731 | Production Precise Grading, Tract 8817, Lots 183-313 | $ 866,500.00 |
| SJ5014791 | Backbone Storm Drain for TTM 8817 | $ 3,492,280.00 |
| SJ5014792 | Avh and Pico Sewer/Water/Tecl. Water Plans | $ 1,409,100.00 |
| SU5014794 | Urban Runoff Bioswales, Constructed Wetlands, CDs Units & Storage Vaults for TTM 8817 | $ 3,696,398.55 |
| SU5014795 | Avenida Vista Hermosa Bridge Improvements, Tract 8817 | $ 9,101,200.00 |
| SU5014796 | Commercial Site Bridge Improvements, Tract 8817 | $ 3,243,200.00 |

229063264-0382
1066490.01 s01/27/11

10B-20

| Bond # | Bond Description | Bond Amount |
|---|---|---|
| SUS014797 | Grading for Tract 8817, Bluff Restoration | $ 200,000.00 |
| SUS014986 | MSE Wall Planting, Etc. Tract 8817 | $ 59,946.07 |
| SUS014987 | Precise Grading, Construction & Landscape for Pico Park | $ 1,135,905.00 |
| SUS014988 | Precise Grading, Construction & Landscape for Sports Park | $ 3,261,370.00 |
| SUS014988 | Precise Grading, Construction & Landscape for Playing Field | $ 3,261,370.00 |
| SUS014989 | Precise Grading, Construction & Landscape for Lot N Park (Has changed to Lot G on final map) | $ 658,851.00 |
| SUS014990 | Precise Grading, Construction & Landscape for Lot H Park - (Originally Lot R) | $ 686,819.00 |
| SUS014991 | Avenida Pico Medians & Parkway Improvement Tract 8817 | $ 165,028.00 |
| SUS014992 | Avenida Vista Hermosa Medians & Parkway Tract 8817 | $ 306,200.00 |
| SUS014993 | Trails, Including Interpretive signage, Tract 8817 | $ 1,532,785.00 |
| SUS014994 | Entry Monument Signage | $ 117,832.00 |
| SUS014995 | Avenida Vista Hermosa Storm Drain, Tract 8817 & St. Improvements, Tract 8817 | $ 1,765,526.00 |
| SUS014996 | Avenida Pico Storm Drain, and St. Improvements, Tract 8817 | $ 881,102.00 |
| SUS014997 | El Camino Real Improvements, Tract 8817 | $ 1,086,376.00 |
| SUS015039 | Avh Traffic Signal Improvements TTM 8817 1) avh at I-5 SB Ramps, 2) Avh @ Park Access Rd. 3) Avh nr Avenida Costa Azul, 4) Avh at Commercial Service Entrance No. 2, 5) Avh at Via Canon Verde | $ 901,450.00 |
| SUS015040 | Avenida Pico Traffic Signal Improvements, TTM 88177, 1) Avenida Pico at AVH, 2) Avenida Pico at Water Reclamation Plant Entrance | $ 409,200.00 |
| SUS017323 | Calle De Los Molinos Street Improvements, TTM 8817 | $ 123,806.38 |
| SUS017324 | Via Socorro Street Improvements, TTM 8817 | $ 97,919.25 |

-2-

SRM822264-0332
11S0040 01 07/27/10

10B-21

# EXHIBIT B

10B-22

EXHIBIT B SCHEDULE OF PERFORMANCE

Category "A" Priority Work

1. Bid Process sixty days after Effective Date
2. Anticipated Duration and Sequencing
    a. Via Socorro Improvements(Bond SU017324) 32 days
    b. Avenida Pico Improvements(Bonds SU50-14996, SU5014991, SU5015040 and SU 50-14792) Sequenced Total Duration of 165 days
3. Contingency 30 days
4. Anticipated Total Duration Bidding, Construction and Contingency 255 Days after Effective Date

Category "B" Priority Work

1. Bid Process 60 days after Bankruptcy Court Approval
2. Anticipated Duration and Sequencing
    a. 66" Storm Drain and Wet Well(Bond SU5014791) 121 days
    b. 27" Water line(Bond SU 5014724) 61 days sequenced after item (a)
    c. Remove Temporary 27" Water(Bond SU 5014724) 12 days sequenced after item(b)
    d. Park G(Bond SU5014989) 154 days
    e. Trails and Signs(Bond SU5014993) 184 Days
    f. Detention Basins (Bond            SU5014726)40 days
    g. Street Improvements for Costa Azul, Artemesa and Park Access Road(Bond SU5014716)   (contemporaneous with Park G work—item (d) 14 days)
    h. Habitat Management Plan(Bond SU5014722) 504 days for habitat restoration, 2526 days for habitat maintenance
3. Contingency 60 days
4. Anticipated Total Duration Bidding, Construction and Contingency 304 days after bankruptcy court approval(excluding long-term habitat management items)

Category "C" Priority Work

1. Bid process 60 days after completion of each separate area of non-bonded utility work by utility companies
2. Anticipated duration and sequencing
    a. El Camino Real activities below 142 days total
    b. 8" Water Line(Bond SU 5014997)  42 DAYS
    c. SDG&E Vaults(non-bonded)14 days sequenced after item(b)
    d. CDS conduit(Bond SU5014794) 14 days sequenced after item (c)
    e. Move K rail(Bond SU5014997)2 days sequenced after item (d)
    f. Grade for paving(Bond SU5014997) 21 days sequenced after item (e)
    g. Curb and Gutter(Bond SU5014997)  21 days sequenced after item (f)
    h. Sidewalk(Bond SU5014997) 14 days sequenced after item (g)

10B-23

    i.   Los Molinos(Bond SU50117323) (activities below)
    j.   Underground Utilities(non-bonded) 42 days
    k.   Curb & Gutter(Bond SU     5017323)14 days sequenced after item (j)
    l.   Paving(Bond SU5017777323      ) 14 days sequenced after item(k)
    m.  Cal Trans Area(activities below)
    n.   Install ATT conduit(non-bonded )    ·61 days
    o.   Splice Fiber Optic Lines(non-bonded) 243 days sequenced after item (o)
    p.   Grade Cal Trans Area(Bond SU5014727) 40 days sequenced after item (o)
    q.   AVH Bridge( Bond 5014795) 184 days
    r.   Tie utilities in at AVH Bridge(Bond SU 5014795    ) 61 days
    s.   Bridge Approaches(Bond SU     5014795) 31 days sequenced after (r)
    t.   AVH Curb and Gutter(Bond 5014995) 30 days sequenced after(s)
    u.   Cathodic protection( Bond SU     SU5014792) 30 days also sequenced after(s)
    v.   AVH Paving(Bond SU5014995) 12 days sequenced after (t) and (u)
    w.  Traffic Signals and Street Lights(Bond 5015039) 61 days sequenced after (t) and (u)
    x.   Landscaping(Bond SU 5014992) 61 days sequenced after (w)

3.  Contingency 60 days
4.  Longest Anticipated Duration Bidding, Construction and Contingency including completion of non-bonded utilities for any Sequenced Set is 464 days(Install ATT Conduit, Spice Fiber Optic Lines, and Grade Cal Trans Area)

| | |
|---|---|
| In re:<br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br><br>                Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as *Joint Motion for Order Disallowing and/or Estimating General Unsecured Claim of Villa San Clemente, LLC (for Debtor SunCal Marblehead, LLC, Claim 27); Memorandum of Points and Authorities and Declaration of Daryl G. Parker in Support Thereof* will be served or was served **(a)** on the **Judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___June 24, 2011___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

                ☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____June 24, 2011_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

| | |
|---|---|
| JUDGE'S COPY [Overnight Delivery]<br>The Honorable Erithe A. Smith<br>United States Bankruptcy Court - Central District of California<br>411 West Fourth Street, Suite 5041<br>Santa Ana, CA 92701-4593 | CLAIMANT'S COPY [U.S. Mail]<br>Villa San Clemente, LLC<br>c/o David L. Sanner, General Counsel<br>1500 Quail Street, Suite 100<br>Newport Beach, CA  92660 |

                ☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____June 24, 2011___, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
    bcook@suncal.com
(3) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue – mneue@thelobelfirm.com
(6) Ch. 11 Trustee (c/o Squar Milner):
    Steven N. Speier - sspeier@squarmilner.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov

(8) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A Lyman - klyman@irell.com
(9) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B Meltzer - hmeltzer@wgllp.com
(10) Counsel for Bond Safeguard & Lexon
    Mark J Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
    Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
    Allen Blaustein - Allen.Blaustein@weil.com
    Alfredo R. Perez – alfredo.perez@weil.com
    Lauren Zerbinopoulos– lauren.zerbinopoulos@weil.com
    Erica Rutner – erica.rutner@weil.com
    Chauncey Cole – chauncey.cole@cwt.com
    Betty Shumener - betty.shumener@dlapiper.com
    John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
    Mark McKane - mark.mckane@kirkland.com

                ☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| June 24, 2011 | Nancy H. Brown | /s/ Nancy H. Brown |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:240344.1 52063-001

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

## I.  SERVED BY NEF

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;sconnor@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang Ekvall & Strok, LLP
lekvall@wgllp.com

(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators of Lehman RE Ltd
jonathan.hoff@cwt.com

(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55) Stephen M Judson for Petitioning Cred The Professional Tree Care Co
sjudson@fablaw.com

(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well & Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com,
gdupre@kirkland.com;alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

(62) Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

(63) Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

(64) Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(65) David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

(66) Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

(67) Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

(68) Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

(69) Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

(70) Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

(71) Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

(72) Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

(73) Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

(74) Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

(75) Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

(76) James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com

(77) Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

(78) Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

(79) Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(80) Robert Nida for Cred Kirk Negrete, Inc
Rnida@castlelawoffice.com

(81) Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

(82) Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

(83) Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

(84) Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

(85) Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

(86) Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

(87) Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com

(88) Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

(89) James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

(90) Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

(91) Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

(92) R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

(93) Martha E Romero for Cred California Taxing Authorities
Romero@mromerolawfirm.com

(94) Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

(95) John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

(96) John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

(97) William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

(98) Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

(99) Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

(100) Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

(101) Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarmilner.com, ca85@ecfcbis.com

(102) Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

(103) Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

(104) Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(105) David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(106) James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
pnelson@thelobelfirm.com

(107) United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

(108) Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

(109) Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

(110) Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

(111) Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

(112) Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(113) David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

(114) Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

(115) Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

(116) Marc A. Zimmerman for Creditor Life Church of God in Christ
joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE

DOCS_LA:240344.1 52063-001