1  Kenneth N. Russak (State Bar No. 107283)
   Michael J. Gomez (State Bar No. 251571)
2  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
3  Seventeenth Floor
   Los Angeles, California  90048-4920
4  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
5
   Attorneys for Central Pacific Bank
6

7
                    UNITED STATES BANKRUPTCY COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9
                           SANTA ANA DIVISION
10

| 11 | In re | CASE No. 8:08-bk-17206-ES |
|---|---|---|
| 12 | PALMDALE HILLS PROPERTY, *et al.*, | Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; |
| 13 | Debtors. | 8:08-bk-17225-ES; 8:08-bk-17245-ES; |
| 14 | Affects:<br>☐ All Debtors | 8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES; |
| 15 | ☒ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC | 8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES; |
| 16 | ☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC | 8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES; |
| 17 | ☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows, LLC | 8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES; |
| 18 | ☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC | 8:08-bk-17470-ES; 8:08-bk-17472-ES; and<br>8:08-bk-17588-ES |
| 19 | ☐ Seven Brothers, LLC<br>☐ SJD Partners, Ltd. | Chapter 11 |
| 20 | ☐ SJD Development Corp.<br>☐ Kirby Estates, LLC | **CENTRAL PACIFIC BANK'S**<br>**LIMITED OBJECTION TO:** |
| 21 | ☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC | |
| 22 | ☐ SCC Communities, LLC<br>☐ North Orange Del Rio Land, LLC | **(1) FIRST AMENDED DISCLOSURE**<br>**STATEMENT DESCRIBING FIRST** |
| 23 | ☐ Tesoro SF, LLC<br>☐ LBL-SunCal Oak Valley, LLC | **AMENDED CHAPTER 11 PLANS FILED**<br>**BY SUNCAL PLAN PROPONENTS IN** |
| 24 | ☐ SunCal Heartland, LLC<br>☐ LBL-SunCal Northlake, LLC | **THE CHAPTER 11 CASES OF**<br>**PALMDALE HILLS PROPERTY, LLC,** |
| 25 | ☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC | **SUNCAL BICKFORD RANCH, LLC,**<br>**SUNCAL EMERALD MEADOWS, LLC,** |
| 26 | ☐ SunCal PSV, LLC<br>☐ Delta Coves Venture, LLC | **AND ACTON ESTATES, LLC [GROUP 1:**<br>**VOLUNTARY DEBTORS] [Docket No.** |
| 27 | ☐ SunCal Torrance, LLC<br>☐ SunCal Oak Knoll, LLC | **2244]; AND** |
| 28 | | **(2) DISCLOSURE STATEMENT WITH**<br>**RESPECT TO *SECOND AMENDED*** |

863327.3 | 028995-0342                                  1
CENTRAL PACIFIC BANK'S LIMITED OBJECTION TO DISCLOSURE STATEMENTS

JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS [Docket No. 2247]

DATE:    July 22, 2010
TIME:    11:00 a.m.
CRTRM.:    5A

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:**

In 2007, Debtor Palmdale Hills Property, LLC ("Palmdale Hills"), entered into an agreement with Anaverde LLC, the owner of an adjacent real estate project in a then relatively similar phase of development and construction, pursuant to which they agreed to jointly fund and allocate the costs of offsite improvements beneficial to both projects. Apparently to insure the ready availability of capital, each agreed to deposit substantial funds with Central Pacific Bank ("Bank") under an elaborate agreement that provided a mechanism under which each developer could access funds to pay for or reimburse the costs of constructing the offsite improvements, by sending written instructions to the Bank in accordance with the agreement. Today, the Bank holds over $2.7 million in an account funded by Palmdale Hills and an additional $2 million in an account funded by Anaverde, LLC.

The Bank, of course, is a party to this tri-partite agreement, the so-called "Work and Cost Payment Agreement and First Amendment to Reciprocal Easement Agreement and Cooperation Agreement," dated as of June 29, 2007, (the "Agreement"). For its part, the Bank bargained for and obtained material protections in consideration of its agreement to act as a financial intermediary: (1) clear rules specifying the persons from whom it was entitled to take disbursement instructions and the conditions under which it was authorized and/or required to honor those instructions and (2) indemnities against certain risks associated with its role as a financial intermediary.

One would think it beyond doubt that Palmdale Hills would want to assume the Agreement; and yet both the Palmdale Hills' plan and the Lehman Lenders' plan propose to defer the assumption decision until after confirmation. As a general proposition, the Bank would not

likely resist either a motion to assume or reject the Agreement,[1] and it is willing to interplead the funds with the Court, but it cannot understand why Palmdale Hills or creditors considering the feasibility of any plan would want the issue deferred until after confirmation.

The Bank has no problem continuing to provide the financial services it agreed to provide under the Agreement, provided that it is given adequate assurance of receiving the benefits it bargained for under the Agreement: clear instructions from authorized agents of the developers and an unambiguous assumption of the indemnification obligations owed to the Bank by the development entities. This would be a relatively simple matter had the original developers not filed their own bankruptcy petitions, but they have. This leaves uncertain not only the Bank's duties under the Agreement, but also the rights of the successors to the Agreement in obtaining the funds held by the Bank.

The competing plans proposed only worsen the situation. Both plans hinge upon the sale of Palmdale Hills' development. Palmdale Hills reckons the sale will generate $19,620,000. But a potential purchaser not only acquires the land, but also the rights associated with the land, which presumably includes the funds under the Agreement. The purchaser may be counting on those funds to complete the development. If those funds are not available or there is a perceived problem in obtaining those funds, the potential purchaser may lower its bid for the development accordingly. Certainly, any bidder may want the $2.7 million deposited by Palmdale Hills to offset any expenses of the development. Presumably, both plan proponents want those funds accessible to any successor of Palmdale Hills. But each plan defers the decision to a date when none of the parties will be before this Court or any other court, without addressing and clarifying these issues to facilitate the transfer of the funds to Palmdale Hills' successor, and ensuring a judicial resolution will be needed later, adding further expense and delay.

The Bank objects to the Debtors' Disclosure Statement[2] and the Lehman Disclosure

---

[1] Subject to adequate assurances of future performance.

[2] *First Amended Disclosure Statement Describing First Amended Chapter 11 Plans Filed By Suncal Plan Proponents in the Chapter 11 Cases of Palmdale Hills Property, LLC, Suncal*
(footnote continued)

1  Statement[3] because neither Disclosure Statement discusses whether the Agreement will be
2  assumed and the consequences if it is assumed. In fact, each Disclosure Statement puts off a
3  resolution, indicating that the assignee of Palmdale Hills under the Agreement may not be known
4  until well after this Court conducts the confirmation hearing on the Plans, not only depriving the
5  Bank of its due process rights to be heard on the issue, but also potentially jeopardizing the
6  feasibility of the confirmed plan.

7  Neither Disclosure Statement should be approved unless it discloses whether the
8  Agreement will be rejected, assumed and assigned to a third party, or solely assumed by Palmdale
9  Hills. If the Agreement is assumed or assumed and assigned, as a form of adequate assurance of
10 further performance of the Agreement and ensure feasbility, <u>at a minimum</u> the Disclosure
11 Statements (and the respective Plans) should provide for: (1) the name and location of the agent
12 for Palmdale Hills or its assignee to whom notices should be sent and from whom instructions can
13 be taken; (2) the name and location of the agent for Anaverde[4] to whom notices should be sent and
14 from whom instructions can be taken; (3) signature cards executed in connection with the
15 successful plan of reorganization by the agents described above; and (4) the execution of a
16 modification to the Agreement that binds the successors to every provision of their respective
17 predecessors, including the indemnities.

19 I.  **BACKGROUND**
20  Nearly two years ago, the Voluntary Debtors filed a Turnover Motion[5] whereby Palmdale

---

*Bickford Ranch, LLC, Suncal Emerald Meadows, LLC and Acton Estates, LLC [Group I: Voluntary Debtors]* [docket no. 2244] (the "<u>Debtors' Disclosure Statement</u>").

[3] *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders* [docket no. 2247] (the "<u>Lehman Disclosure Statement</u>," together with the Debtors' Disclosure Statement, the "<u>Disclosure Statements</u>").

[4] New Anaverde, LLC ("<u>Anaverde</u>") subsequently succeeded Anaverde, LLC as a party to the Agreement. (*See* docket no. 2006.)

[5] *Voluntary Debtors' Motion For Order (1) Approving Acquisition's Proposal, (2)*
(footnote continued)

863327.3 | 028995-0342    4
CENTRAL PACIFIC BANK'S LIMITED OBJECTION TO DISCLOSURE STATEMENTS

1  Hills requested an order authorizing rejection of the Agreement and mandating the Bank to
2  turnover funds it holds pursuant to the Agreement, amongst other relief. The Bank, the City of
3  Palmdale, and Anaverde, LLC opposed the Turnover Motion. The Voluntary Debtors withdrew
4  seeking approval of the rejection, but the motion remains pending, albeit continued from time to
5  time, with respect to the turnover of the funds at the request of the U.S. Trustee.[6] Pursuant to the
6  Agreement, Anaverde, LLC was to deposit $1,962,560.00 and Palmdale Hills was to deposit
7  $2,623,005.00 with the Bank. The Bank is currently holding in excess of $2.7 million in Palmdale
8  Hills's account.

## II. OBJECTION

In order for a disclosure statement to be approved, a court must find that it contains adequate information. 11 U.S.C. § 1125(a). Adequate information is defined as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. §1125.

A bankruptcy court may refuse to approve a disclosure statement for dissemination where the plan of reorganization cannot be confirmed. *See, e.g., In re Century Inv. Fund VIII Ltd. P'ship*, 114 B.R. 1003 (Bankr. E.D. Wis. 1990); *In re 266 Washington Assocs.*, 141 B.R. 275, 278, (Bankr. E.D.N.Y. 1992) *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Market Square Inn, Inc.*, 163 B.R. 64, 67-68 (W.D. Pa. 1990); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re Felix, Inc.*, 116 B.R. 37 (Bankr. S.D.N.Y. 1990).

---

*Authorizing Disposition of Certain Depository Accounts, (3) Rejecting Cost Sharing Agreement with Anaverde, LLC, and (4) Turnover of Funds Held By Central Pacific Bank* [docket no. 720] (the "Turnover Motion").

[6] *See* docket no. 749, p. 6-7.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

863327.3 | 028995-0342                    5
CENTRAL PACIFIC BANK'S LIMITED OBJECTION TO DISCLOSURE STATEMENTS

1        From the perspective of adequate disclosure and adequate assurance of future performance
2   of the Agreement (which is required as a condition to confirmation per 11 U.S.C. § 1129(a)(1)),
3   the Disclosure Statements and the Plans of Reorganization are fatally defective. For instance, the
4   Lehman Disclosure Statement provides that executory contracts and unexpired leases that will be
5   rejected, assumed, or assumed and assigned will be listed on "Exhibit A" to the Plan of
6   Reorganization. (Lehman Disclosure Statement, p. 148:17-22, p. 150:5-7.) Exhibit A can be
7   amended up to the "Confirmation Date." The Lehman Disclosure Statement defines the
8   Confirmation Date as the date upon which the Court enters an order confirming the plan of
9   reorganization, which will certainly take place after the Court holds the confirmation hearing. (*Id.*
10  at Ex. 3, Definitions, p. 9-10, Sections 48 and 49, defining Confirmation Date and Confirmation
11  Order.) Thus, non-debtor parties to an executory contract or an unexpired lease may not know
12  whether their executory contract or unexpired lease has been assumed and to whom the executory
13  contract or unexpired lease has been assigned, if it has been assigned at all, until after the Court
14  confirms a plan of reorganization.
15       This not only deprives the non-debtor party of its due process right to be heard regarding
16  the adequacy of the assumption and/or assignment at the confirmation hearing, but it also deprives
17  the non-debtor party of the right to object to the offer of adequate assurance of the future
18  performance provided by the assignee to the executory contract or unexpired lease, as required by
19  section 365(b)(1)(C). Moreover, by the time a non-debtor party may bring these issues before the
20  Court, that is, sometime after the confirmation hearing, the equities will place undue pressures on
21  the non-debtor party for interfering and/or disrupting the implementation of a plan that the Court
22  has already found to be feasible.
23       The Debtors' Disclosure Statement is worse. Instead of Exhibit A, the Debtors' Disclosure
24  Statement provides that the list of executory contracts and unexpired leases that will be rejected,
25  assumed, or assumed and assigned will be set forth in a "Plan Supplement." (Debtors' Disclosure
26  Statement p. 88:21-22.) The Debtors' Disclosure Statement defines "Plan Supplement" as the
27  "compilation of Plan Documents to be filed with the Bankruptcy Court." The term "Plan
28  Documents is defined as the "Plan, the Plan Trust Agreement and all other documents attached to

the Plan Supplement." (*Id.* at p. 20, Section 2.1.113 and 2.1.115.) Apart from the circular reference between Plan Supplement and Plan Documents, the Debtors' Disclosure Statement then goes on to state that the Plan Supplement can be amended at any time prior to the "Effective Date."

The Effective Date can be as late as ninety (90) days after the "Confirmation Date," subject to a potential sixty (60) day extension. (*Id.* at p. 12, Section 2.1.56.) Like the Lehman Disclosure Statement, the Confirmation Date in the Debtors' Disclosure Statement is defined as the date when the Court enters an order confirming the plan of reorganization, which is certainly more likely to fall after the Court conducts the confirmation hearing. (*Id.* at p. 10, Sections 2.1.46 and 2.1.43.) Therefore, the Debtors' Disclosure Statement indicates that non-debtor parties to an executory contract or an unexpired lease may not know whether their executory contract or unexpired lease has been assumed <u>and</u> to whom the executory contract or unexpired lease has been assigned, if it has been assigned at all, until at least 90 to 150 days after the Court confirms a plan of reorganization. That is unacceptable. That is practically half a year after the Court conducts the confirmation hearing.

Furthermore, the Plan of Reorganization pursued by Palmdale Hills depends upon the sale of its assets. Based upon the asset sales, Palmdale Hills estimates returns of 1% to 60% to unsecured creditors. As part of the asset sales, Palmdale Hills expects its main asset to sell for at least $19,620,000. (*Id.* at p. 18, Section 2.1.101.) The Agreement imposes several obligations on Palmdale Hills, however. Though the Bank is holding in excess of $2.7 million in Palmdale Hills's account, if the obligations required by the Agreement can be amply satisfied by the $2.7 million the Bank is holding in Palmdale Hills's account, a potential buyer may bid more for Palmdale Hills's main asset. To the extent the distribution of the funds is disrupted, the amount a potential bidder may offer for Palmdale Hills' asset may suffer. The obligations required by the Agreement and the sums held by the Bank may therefore have a significant impact on how saleable Palmdale Hills' assets are, casting the feasibility of Palmdale Hills' plan of reorganization into question if the Agreement is not properly followed. If the Bank does not who is entitled to the funds, who is bound by the Agreement, and from whom it can take direction, it is likely that

Case 8:08-bk-17206-ES    Doc 2317    Filed 07/07/11    Entered 07/07/11 20:14:41    Desc
Main Document    Page 8 of 8

there will be a dispute over the funds, further impinging the marketability of Palmdale Hills's asset.

### III. RELIEF REQUESTED

Based on the foregoing, the Bank respectfully requests the Court deny approving both Disclosure Statements unless, as a form of adequate assurance of further performance of the Agreement if the Agreement is to be assumed and/or assigned and to ensure the feasibility of the successful plan, they (and their respective Plans) provide for: (1) the name and location of the agent for Palmdale Hills or its assignee to whom notices should be sent and from whom instructions can be taken; (2) the name and location of the agent for Anaverde to whom notices should be sent and from whom instructions can be taken; (3) signature cards executed in connection with the successful plan of reorganization by the agents described above; and (4) the execution of a modification to the Agreement that binds the successors to every provision of their respective predecessors, including the indemnities.

DATED: July 7, 2011

FRANDZEL ROBINS BLOOM & CSATO, L.C.
KENNETH N. RUSSAK
MICHAEL J. GOMEZ

By: /s/ Michael J. Gomez
MICHAEL J. GOMEZ
Attorneys for Central Pacific Bank

863327.3 | 028995-0342    8
CENTRAL PACIFIC BANK'S LIMITED OBJECTION TO DISCLOSURE STATEMENTS