IRELL & MANELLA LLP
Alan J. Friedman (State Bar No. 132580)
afriedman@irell.com
Kerri A. Lyman (State Bar No. 241615)
klyman@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Counsel for the Official Committee of Unsecured Creditors in Chapter 11 Cases of Palmdale Hills Property, LLC et al.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re

PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,

Joint Administered Debtors and Debtors-in-Possession

Affects:

- [ ] All Debtors
- [x] Palmdale Hills Property, LLC
- [ ] SunCal Beaumont Heights, LLC
- [ ] SCC/Palmdale, LLC
- [ ] SunCal Johannson Ranch, LLC
- [ ] SunCal Summit Valley, LLC
- [x] SunCal Emerald Meadows LLC
- [x] SunCal Bickford Ranch, LLC
- [x] Acton Estates, LLC
- [ ] Seven Brothers LLC
- [ ] SJD Partners, Ltd.
- [ ] SJD Development Corp.
- [ ] Kirby Estates, LLC
- [ ] SunCal Communities I, LLC
- [ ] SunCal Communities III, LLC
- [ ] SCC Communities LLC
- [ ] North Orange Del Rio Land, LLC
- [ ] Tesoro SF LLC
- [ ] LBL-SunCal Oak Valley, LLC
- [ ] SunCal Heartland, LLC
- [ ] LBL-SunCal Northlake, LLC

*Caption Continued on Next Page*

Case No. 8:08-bk-17206- ES

Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8-08-bk-17575 ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES 8:08-bk-17588-ES

Chapter 11 Cases

**OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF PALMDALE HILLS PROPERTY, LLC, SUNCAL BICKFORD RANCH, LLC, SUNCAL EMERALD MEADOWS, LLC AND ACTON ESTATES, LLC [GROUP I: VOLUNTARY DEBTORS]**

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

2456264

☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

Hearing:
Date: July 22, 2011
Time: 11:00 a.m.
Place: Courtroom 5A

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, THE RELATED DEBTORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES-IN-INTEREST:**

The Official Joint Committee of Creditors Holding Unsecured Claims (the "Committee"), duly appointed in the related jointly administered chapter 11 cases of Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities LLC, North Orange Del Rio Land, LLC, and Tesoro SF, LLC (the "Voluntary Debtors"),[1] hereby submits this Objection and Reservation of Rights with respect to the *First Amended Disclosure Statement Describing First Amended Chapter 11 Plan Filed by SunCal Plan Proponents in the Chapter 11 Cases of Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC [Group I: Voluntary Debtors]* (the "SunCal I Disclosure Statement"[2] describing the "SunCal I Plan").[3]

---

[1] The Voluntary Debtors' Chapter 11 cases are jointly administered with the following nine (9) related entities: LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (the "Trustee Debtors"). A Chapter 11 Trustee has been appointed in the Trustee Debtors' Chapter 11 cases (the "Trustee") and a separate committee of unsecured creditors was established. The Voluntary Debtors and the Trustee Debtors are hereinafter collectively referred to as the "Related Debtors."

[2] Capitalized terms not otherwise defined herein have the meaning set forth in the SunCal I Disclosure Statement.

[3] The SunCal Plan Proponents have filed four separate plans and four separate disclosure statements. The Committee notes that the prior versions of the SunCal plans accounted for all seventeen of the Voluntary Debtors. However, the current versions of the SunCal plans omit six of the Voluntary Debtors: (1) SCC/Palmdale, LLC; (2) SunCal Summit Valley, LLC; (3) Seven Brothers LLC; (4) Kirby Estates, LLC; (5) SunCal Communities I, LLC; and (6) SunCal

2

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

**OBJECTION**

"A proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Thus, a disclosure statement must have the kind of information that would enable a hypothetical reasonable investor to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1).

Section 1125 of the Bankruptcy Code requires that a disclosure statement contain adequate information. "Adequate information" is defined in § 1125 to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records that would enable a hypothetical reasonable investor typical of holders of claims . . . of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); In re California Fidelity, Inc., 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan. . . . At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote.").

The SunCal I Disclosure Statement does not contain "adequate information" within the meaning set forth in section 1125 of the Bankruptcy Code, and should not be approved in its present form.

Specifically, the Committee notes that a number of the changes that the Committee requested in its objection filed on April 13, 2011 were not made to the SunCal I Disclosure Statement. In the tentative ruling issued by the Court on May 13, 2011, the Court stated that "[a]ll of the objections raised [by the Committee] are well-taken and must be seriously addressed by [the SunCal Plan Proponents]." The Committee therefore requests that the Court require the SunCal Plan Proponents to make the changes previously requested by the Committee, in addition to the changes requested below, before approving the SunCal I Disclosure Statement.

---

Communities III, LLC. The SunCal Plan Proponents have provided no explanation for the omission of these Voluntary Debtors from the plans or how the cases of these debtors will ultimately be resolved.

3

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

**1. The SunCal I Disclosure Statement must be Tailored to the SunCal I Plan**

SunCal has filed four separate plans and four separate disclosure statements. However, many of the provisions of the four SunCal Disclosure Statements are identical and therefore contain information that may not be applicable to the specific plan at issue. For example, many of the definitions listed in section 2.1 of the SunCal Disclosure Statements are used in some, but not all, of the disclosure statements and related plans. Each disclosure statement must be specifically tailored to address the plan at issue and not littered with unused terms and irrelevant discussions.

In addition, the SunCal I Disclosure Statement must be revised to include sufficient information concerning Acton Estates and SunCal Emerald to allow the creditors of these estates to determine how to vote on the SunCal I Plan. For example, footnote 5 of the SunCal I Disclosure Statement must be revised to include Classes 6.4 and 7.4 – which are the holders of Reliance Claims and Unsecured Claims against Acton Estates – so that creditors of Acton Estates know the proposed treatment of their claims. *SunCal I Disclosure Statement*, p. 63, n. 5 ("the SunCal Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1, 6.2 and 6.3 [add 6.4], and 7.1, 7.2 and 7.3 [add 7.4]."). Similarly, the SunCal I Disclosure Statement uses the term "Emerald Compromises" but neither defines this term nor sets forth the terms of the compromise.[4] *SunCal I Disclosure Statement*, § 8.7, p. 71. The SunCal I Disclosure Statement must be revised to provide adequate information to allow the creditors of Acton Estates and SunCal Emerald to make an informed judgment regarding the SunCal I Plan.

**2. Typos Render the SunCal I Disclosure Statement Confusing**

While a few typographical errors in plans and disclosure statements are to be expected, and overlooked, the typographical errors in the SunCal I Disclosure Statement make it challenging for a reasonable investor to properly evaluate the SunCal I Plan. Counsel for the Committee has previously provided a lengthy list of non-substantive comments to counsel for the SunCal Plan Proponents, which comments are not repeated in this Objection. All of these errors

[4] Counsel for the SunCal Plan Proponents has advised counsel for the Committee that this omission was inadvertent.

4

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Main Document Page 5 of 25

must be corrected before this Court can approve the SunCal I Disclosure Statement as providing adequate information.[5]

**3. The Discussion of Administrative Claims in the SunCal I Disclosure Statement is Unclear and Must be Amended**

The SunCal I Disclosure Statement defines Administrative Claims as claims that are incurred after the Petition Date but before the Confirmation Date. *SunCal I Disclosure Statement*, § 2.1.5, p. 5. However, this definition does not comply with applicable bankruptcy law, which provides that claims incurred post-confirmation, pre-effective date are also administrative claims. *See, e.g., In re Zilog, Inc.*, 450 F.3d 996, 999 n.1 (9th Cir. 2006) (suggesting that tort claims that arose post-confirmation but pre-effective date qualified as administrative expense claims against the estate); *In re Lyon's of California, Inc.*, 2005 Bankr. Lexis 3292, *14-*16 (Bankr. S.D. Cal. July 26, 2005) (post-confirmation pre-effective date workers' compensation premium entitled to administrative priority because the payment was an actual, necessary cost of preserving the estate's assets). Moreover, this definition conflicts with section 6.5 of the SunCal I Disclosure Statement, which provides "[a]ll applications for final compensation of Professionals for services rendered and for reimbursement of expenses <u>incurred on or before the Effective Date</u> and all other requests for payment of Administrative Claims <u>incurred before the Effective Date</u> ... shall be Filed with the Bankruptcy Court and served upon the Plan Trustee no later than the Administrative Claims Bar Date..." *SunCal I Disclosure Statement*, § 6.5, p. 58. The SunCal Plan Proponents must clarify this discrepancy and revise the definition of Administrative Claims to include post-confirmation, pre-effective date claims and provide that such claims will be paid in full on the Effective Date. 11 U.S.C. § 1129(a)(9)(A).

In addition, the SunCal Plan Proponents set the Administrative Claims Bar Date sixty (60) days after the Confirmation Date. *SunCal I Disclosure Statement*, § 2.1.6, p. 5. This creates a timing problem because the SunCal Plan Proponents will not know the total amount of all

[5] Moreover, although the number of changes made to the SunCal I Disclosure Statement and SunCal I Plan since the prior versions of the plan and disclosure statement were filed on April 7, 2011 made filing a redline impractical, the Committee requests that, in the future, the SunCal Plan Proponents file redlines reflecting the changes made to the SunCal I Disclosure Statement and SunCal I Plan.

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

5

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Administrative Claims until the Effective Date. It is especially problematic because the SunCal I Plan proposes that a number of events, including the sale of the Group I Projects, will occur post-confirmation and it is likely that substantial professional fees will be incurred during this period of time. The SunCal I Disclosure Statement must explain how this issue will be addressed – for example, if professionals will be required to estimate their time.[6]

**4. The SunCal I Disclosure Statement Fails to Explain Why Holders of Allowed Unsecured Claims cannot Transfer their Beneficial Interests**

Section 2.1.21 of the SunCal I Disclosure Statement provides that the Beneficial Interests in the Plan Trust given to holders of Allowed Unsecured Claims "may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law." *SunCal I Disclosure Statement*, § 2.1.21, p. 8. The SunCal I Disclosure Statement must explain the basis for the prohibition on the transfer of the Beneficial Interests.

**5. The SunCal I Disclosure Statement Does Not Adequately Describe the Effective Date and Must Clarify the Conditions for Effectiveness**

The SunCal I Disclosure Statement states that the Effective Date will occur 90 days after the Confirmation Date. The SunCal Plan Proponents should explain the reason that the Effective Date cannot occur earlier.

Moreover, the definition of Effective Date set forth in section 2.1.56 is inconsistent with the conditions precedent in section 17.2 of the SunCal I Disclosure Statement. Section 2.1.56 states that the Effective Date is "[a] date selected by the SunCal Plan Proponents that is not later than the ninetieth (90th) calendar day after the Confirmation Date. However, in any case where the actions provided for in the Plan would be delayed by the automatic stay applicable in the case of any Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to

[6] If, on the other hand, the SunCal Plan Proponents intend to separately classify administrative claims that are incurred post-confirmation, pre-effective date, the SunCal I Plan must clearly so state, explain the basis for the separate classification, and provide procedures for the determination of such claims and how such claims will be treated.

6

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

obtain relief from any such stay."[7] *SunCal I Disclosure Statement*, § 2.1.56, p. 12. By contrast, section 17.2 states that "[t]he conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities cases." *SunCal I Disclosure Statement*, § 17.2, p. 91. Contrary to the definition of Effective Date, this section does not reference any time limit for the resolution of these material impairments. The SunCal Plan Proponents must clarify whether obtaining relief from the automatic stay is a condition to the effectiveness of the SunCal I Plan and, if so, must provide an explanation of the steps that the SunCal Plan Proponents intend to take to obtain relief from the automatic stay in order to provide creditors with sufficient information to vote on the plan.[8]

**6. The SunCal I Disclosure Statement Fails to Explain why the Lehman Disputed Administrative Loans are Disputed and if Any Amounts Remain Unpaid**

Section 2.1.78 of the SunCal I Disclosure Statement, which defines the Lehman Disputed Administrative Loans, states "[t]he Voluntary Debtors have repaid to Lehman ALI the full amount of $270,731 loaned to the Voluntary Debtors." *SunCal I Disclosure Statement*, § 2.1.78, p. 14. The SunCal I Disclosure Statement, however, fails to provide the amount still outstanding by the Voluntary Debtors on account of the Lehman Disputed Administrative Loans. Moreover, the SunCal I Disclosure Statement does not explain why the Lehman Disputed Administrative Loans are disputed, even though they were approved by orders of the Court. Without this

---

[7] This definition also makes little sense since it is unclear how the SunCal I Plan could go effective, even after an additional sixty (60) day delay, if relief from the Lehman Entities' automatic stay has not been obtained regarding "actions provided for in the Plan." The SunCal Plan Proponents must explain the impact that such a delay would have on implementation of the SunCal I Plan.

[8] To the extent that the Effective Date is conditioned on obtaining relief from the automatic stay in the Lehman Entities' chapter 11 cases, the SunCal I Plan may also be unconfirmable. A court may not confirm a plan of reorganization when the plan is nothing more than a visionary scheme which promises creditors and equity security holders more than it can possibly deliver. 11 U.S.C. § 1129(a)(11); *In re Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir. 1985).

7

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

information, creditors cannot determine the amount of the valid administrative claims against the Group I: Voluntary Debtors' estates. Moreover, this information was specifically requested by the Court at the May 13, 2011 hearing.

In addition, section 6.3 of the SunCal I Disclosure Statement provides that the Disputed Administrative Claims will be paid from funds loaned from LitCo or funds in the applicable Net Sale Proceeds Account. *SunCal I Disclosure Statement*, § 6.3, p. 57. However, the funds in the Net Sale Proceeds Account cannot be utilized until after the objections to the Lehman Entities' Disputed Secured Claims and/or Disputed Liens are resolved. Therefore, the SunCal Plan Proponents should explain the basis for this statement.

**7. The SunCal I Disclosure Statement Fails to Adequately Describe LitCo**

A critical provision in the SunCal I Plan is that holders of Reliance Claims (which, as discussed below, is not sufficiently defined), will be able to sell their claims to an entity known as "LitCo" for sixty (60) cents on the dollar. *SunCal I Disclosure Statement*, § 8.6, p. 70. The SunCal I Disclosure Statement, however, provides no description of LitCo – notwithstanding the fact that the Court specifically ordered the SunCal Plan Proponents to provide this information at the May 13, 2011 hearing.

Furthermore, the Committee has requested this information from the SunCal Plan Proponents on several occasions, even agreeing to enter into a confidentiality agreement and providing a draft agreement to the SunCal Plan Proponents (to which the Committee has received no response). Despite these efforts, the Committee has received no information about LitCo.

The SunCal I Disclosure Statement simply defines LitCo as a "[a] newly formed Delaware limited liability company that will be purchasing the claims and Litigation Rights held by the Reliance Claimants that choose Option A provided for in the Plan." *SunCal I Disclosure Statement*, § 2.1.91, p. 16. No information is provided about the source of the funds that LitCo will use to purchase the claims. Thus, unsecured creditors that hold Reliance Claims have no idea as to whether LitCo will be able to pay for its purchases or whether LitCo will impose any conditions on the purchase. The lack of information prevents Reliance Claimants from making an informed decision about whether to sell their claims to LitCo. SunCal must revise the SunCal

8

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Main Document Page 9 of 25

I Disclosure Statement to provide a better description of LitCo, its ability to fund its obligations under the SunCal I Plan, and of equal importance, to provide the terms upon which such funding will be made.

**8. The SunCal I Disclosure Statement Fails to Adequately Describe, in Any Respect, the LitCo Plan Loan**

A plan of reorganization may only be confirmed if the reorganized debtor can pay off all of its outstanding post-petition expenses and priority on the date that the plan becomes effective. 11 U.S.C. § 1129(a)(9)(A). The SunCal I Disclosure Statement indicates that the Group I: Voluntary Debtors will satisfy this requirement by borrowing money, to the extent necessary, from LitCo by way of the "LitCo Plan Loan."[9] Despite its importance, the SunCal I Disclosure Statement provides a wholly inadequate description of the LitCo Plan Loan. The Disclosure Statement does not describe: (i) the size of the loan; (ii) the security offered to LitCo; (iii) how LitCo plans to fund the loan; or (iv) how the Group I: Voluntary Debtors plan to pay back the LitCo Plan Loan. *See SunCal I Disclosure Statement*, § 2.1.92, p. 16. These are basic provisions that must be described in order for creditors to make a fully informed decision about whether to accept or reject the SunCal I Plan.

In light of the SunCal Plan Proponents' failure to provide sufficient information about either LitCo or the LitCo Plan Loan, LitCo should be forced to make a deposit on the Confirmation Date in an amount equal to all known amounts to be paid on the Effective Date, as well as the total amount required to purchase the Reliance Claims for holders that elected Option A under the SunCal I Plan. This will ensure that LitCo has sufficient funds to make the payments required under the SunCal I Plan.

---

[9] The Committee also notes that the SunCal I Disclosure Statement references the "Acquisitions Administrative Loan" in a number of places. Since this term is not defined, the Committee suspects that these are typos and are meant to be references to the "LitCo Plan Loan." However, these errors should be corrected or clarified.

9

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

**9. The SunCal I Disclosure Statement Fails to Adequately Define Reliance Claims**

A critical aspect of the SunCal I Plan is the concept of "Reliance Claims." Under the SunCal I Plan, LitCo will offer to purchase Reliance Claims for sixty (60) cents on the dollar but it will not purchase general unsecured claims. *SunCal I Disclosure Statement*, §§ 8.6-8.7, pp. 70-71. Thus, unsecured creditors need to know whether they hold a Reliance Claim in order to determine what their recovery will be under the SunCal I Plan and whether they have the option of selling their claim to LitCo. At section 2.1.131, the SunCal I Disclosure Statement defines a Reliance Claim as:

> an Allowed Unsecured Claim against a Group I: Voluntary Debtors [sic] that would entitle the holder thereof to be the beneficiary of any equitable subordination judgment obtained against a Lehman Entity by such holder. This definition includes the holders of qualifying claims that are secured by mechanics liens.

*SunCal I Disclosure Statement*, § 2.1.131, p. 22. Section 2.1.132 then defines a Reliance Claimant as:

> The holder of a Reliance Claim. A list of the Reliance Claims and Reliance Claimants is attached hereto as Exhibit "8," and the holders of mechanics liens claims.

*SunCal I Disclosure Statement*, § 2.1.132, p. 22.[10]

These definitions require an interested creditor to decide whether it is likely to benefit from an equitable subordination judgment against the Lehman Entities. This is a legal issue that is beyond the ability of the average creditor to understand and, therefore, is not adequate information.[11] In order to clarify these definitions, the definition of "Reliance Claim" should reference Exhibit "8," which purports to list all Reliance Claims, and state whether or not the SunCal Plan Proponents have agreed to be bound by Exhibit "8."

---

[10] The Committee notes that the second part of this definition "and the holders of mechanics liens claims" does not make sense and appears to be cut-off.

[11] Nor does the SunCal I Disclosure Statement contain any discussion as to why the holder of a Reliance Claim, as opposed to the holder of a General Unsecured Claim, benefits from the entry of an equitable subordination judgment against the Lehman Entities. This distinction should be explained as requested by the Court at the May 13, 2011 hearing.

10

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Moreover, as currently drafted, Exhibit "8" is grossly inadequate. First, there are no Reliance Claims listed for Emerald Meadows or Acton Estates at all. Second, there is no explanation as to how Exhibit 8 was created or what criteria was used in order to include certain creditors, but not others, as holders of Reliance Claims. For example, in some cases the amount of the Reliance Claim listed on Exhibit "8" corresponds to the amount of the creditor's scheduled claim or amount set forth in the creditor's proof of claim. In other cases, the amount set forth for a claim sets forth the amount of the creditor's scheduled claim, even though such creditor filed a proof of claim that superseded the scheduled amount. In addition, there are a number of creditors that were scheduled and/or filed proofs of claim that do not appear on Exhibit "8" at all – and some parties named on Exhibit "8" that do not appear to have been scheduled or filed proofs of claim against the Group I: Voluntary Debtors. Finally, some claimants listed on Exhibit "8" were scheduled as having unliquidated/disputed claims, but did not file proofs of claim, so the basis for including these claims on Exhibit "8" is unclear. These discrepancies must be explained.

The SunCal I Disclosure Statement should also state whether the SunCal Plan Proponents will agree to be bound by Exhibit "8." In the prior versions of the SunCal I Disclosure Statement, Exhibit "8" contained a footnote stating:

> Note: Some claims listed may have been filed against the wrong debtors' estate. The information contained herein is based on information gathered to date, and is not, nor is it intended to be, an admission as to identity of all creditors, the total amount claimed, or the amounts allowed.

This footnote has now been removed and the SunCal Plan Proponents must clarify whether this was intentional and, if so, whether they intend to be bound by the claims and amounts listed on Exhibit "8."

**10. The SunCal I Disclosure Statement does Not Provide Adequate Information about SunCal Management's Role**

The SunCal I Disclosure Statement states "SunCal Management, LLC, a SunCal Affiliate, has management contracts with respect to all of the Projects and manages the Debtors' day-to-day business affairs." *SunCal I Disclosure Statement*, § 4.1.1, p. 30, lines 3-4. Based on information provided by SunCal Management in connection with various depositions and discovery requests,

11

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

the Committee believes that this statement is incorrect, that SunCal Management ceased to operate in early 2010, and since that time Argent Management, the successor of SunCal Management, has been the manager of the Group I: Voluntary Debtors.

In order to correct this error, SunCal Management and/or Argent Management should be required to disclose copies of all management agreements relating to the Group I: Voluntary Debtors.[12] In addition, the SunCal I Disclosure Statement must be revised to explain what party is currently managing the Group I: Voluntary Debtors, when SunCal Management ceased managing the Group I: Voluntary Debtors, the affiliation between SunCal Management and Argent Management, and the terms of the management agreement under which Argent Management is currently operating.

**11. The SunCal I Disclosure Statement Does Not Adequately Disclose How Much Unencumbered Cash is Held by the Group I: Voluntary Debtors**

On pages 31-32 of the SunCal I Disclosure Statement, the SunCal Plan Proponents provide a chart setting forth the Group I: Voluntary Debtors' cash on hand as of January 31, 2011. *SunCal I Disclosure Statement*, § 4.1.4, p. 31-32. The SunCal Plan Proponents must update the SunCal I Disclosure Statement to provide the amount of cash on hand as of June 30, 2011 and should also explain how much of this cash is alleged to be unencumbered.

**12. The Statement on Pages 32-33 Should Be Striken**

Starting on page 32, line 28, the SunCal I Disclosure Statement states: "[t]he SunCal Plan Proponents believe that this history will lead the Creditors to conclude, when weighing the merits of the Lehman Lenders Plan offer: 'Fool me once shame on you, fool me twice shame on me.'" *SunCal I Disclosure Statement*, § 4.2.1, pp. 32-33. This language has no place in a disclosure statement and should be removed.

[12] The Committee has previously requested copies of all management agreements relating to the Voluntary Debtors both informally and in connection with discovery propounded on the Voluntary Debtors and SunCal Plan Proponents. To date, the Committee has received only three management agreements. This discovery is on-going.

12

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Main Document Page 13 of 25

**13. The SunCal I Disclosure Statement Fails to Adequately Disclose the Group I: Voluntary Debtors' Potential Preferential Transfers**

Section 4.3 of the SunCal I Disclosure Statement addresses the Group I: Voluntary Debtors' potential preferential transfers and refers parties to Exhibit "6." Exhibit "6" should be modified to list the actions that have already been commenced, including the name of the parties allegedly receiving a preferential transfer and the Group I: Voluntary Debtors' anticipated recovery. Exhibit "6" should also be modified to state whether any further actions will be commenced and, if so, the anticipated recovery. Finally, the SunCal I Disclosure Statement should disclose how any potential preferential transfers received by SunCal Management and its affiliates are being investigated.

**14. The SunCal I Disclosure Statement Fails to Provide an Adequate Explanation of the Bid Procedures**

The SunCal I Plan is a liquidating plan pursuant to which the SunCal Plan Proponents will market and sell the Group I Projects. To facilitate the sale process, the SunCal I Plan sets forth a number of Bid Procedures. However, the SunCal I Disclosure Statement does not specify whether a separate motion to approve these procedures will be filed prior to confirmation of the SunCal I Plan. The SunCal I Disclosure Statement should clarify whether any other motion(s) will be filed and, if not, should clearly set forth the Bid Procedures as requested by the Court at the May 13, 2011 hearing.

In addition, a number of the proposed Bid Procedures are problematic.

a) *There is No Explanation for How the Break-Up Fees were Calculated or Why Payment of the Break-Up Fees is Required*

"A breakup fee is an incentive payment to an unsuccessful bidder who placed the estate property in a sales configuration made to attract other bidders to the auction." *In re Integrated Resources*, 147 B.R. 650, 659 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2nd Cir. 1993) (internal citations omitted). In determining whether a break-up fee is necessary to preserve the value of the estate, courts look to determine whether the break-up fee was necessary to produce and preserve the first bid. *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 207-208 (3d

13

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Cir. 2010) (court decided that $15 million break-up fee was not necessary to preserve the value of the estate and in fact hampered bidding); *In re America West Airlines*, 166 B.R. 908 (Bankr. Ariz. 1994) (court denied break-up fee because allowing the fee did not further the diverse interests of the debtor, creditors and equity holders, alike). If the break up fee is not necessary for those purposes or unreasonable, the court should deny the break-up fee. *See Reliant Energy*, 594 F.3d at 207-208.[13]

The SunCal I Disclosure Statement makes no showing that a break-up fee is necessary to preserve the value of the estates, will encourage bidding, or that the amount of the proposed break-up fees, which is approximately 4% of the Minimum Sale Price for each Group I Project, is reasonable.[14] The payment of the Break-Up Fees is especially troubling here because the Stalking Horse Bidder is essentially chosen at the whim of the SunCal Plan Proponents, without oversight or transparency. The SunCal Plan Proponents must amend the disclosure statement to clearly state the basis for the payment of the Break-Up Fees, including the basis for proposing a break-up fee of 4%.[15]

In addition, even if the Court concludes that the payment of a break-up fee is appropriate, the SunCal I Disclosure Statement does not adequately explain how the break-up fee will be paid. No Net Sale Proceeds will exist until the objections to the claims of the Lehman Entities are resolved. The establishment of break-up fees creates administrative liability that the Group I: Voluntary Debtors have no means of paying. Even if the break-up fees will be paid through the LitCo Plan Loan (which is not currently provided for and would only address the timing of the payment), the estates become saddled with additional administrative expenses.

---

[13] The existence of Break-Up Fees in these cases has a significant impact on the bidding process. For example, in connection with the Ritter Ranch Project, a bidder not lucky enough to have been selected as the Stalking Horse Bidder must then make a bid which is at least $970,000 higher than the Opening Bid in order to have a shot at acquiring the property. This would seem to create a relatively high hurdle for entry into the bidding process and could well cost the estate the loss of any number of potential bidders.

[14] The SunCal Emerald Project Break-Up Fee is 5% of the Minimum Sale Price for the SunCal Emerald Project.

[15] At the hearing on May 13, 2011, this Court suggested that a break-up fee of 3-5% was too high.

14

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

b) *There is No Explanation for the Calculation of the Minimum Increment or Why the Minimum Increment is Decreased*

Once bidding has begun, all bids must exceed the Opening Bid (or subsequent Qualifying Bid) by the Minimum Increment, which is defined as:

> Minimum Increment applicable to the sales of the Group II [sic] Projects are the following: one hundred thousand dollars ($100,000) for the Ritter Ranch Project, seventy-five thousand dollars ($75,000) for the Bickford Ranch Project, seventy-five thousand dollars ($75,000) for the SunCal Emerald Project and fifty thousand dollars ($50,000) for the Acton Project, until there are only two Qualified [sic] Bidders submitting bids for a Group II [sic] Project, then the Minimum Increment shall be twenty-five thousand dollars ($25,000).

*SunCal I Disclosure Statement*, § 2.1.100, p. 17.

The SunCal I Disclosure Statement fails to explain how the Minimum Increment was calculated with respect to each of the Group I Projects. In addition, this procedure assumes that only two parties will be bidding by the end of the process and that each party will participate in each round of bidding (as opposed to sitting out some rounds and then joining back in). The SunCal I Disclosure Statement provides no basis for the reduction of the Minimum Increment to $25,000. Absent some explanation, this change should be deleted and the Minimum Increment should remain consistent throughout the bidding process.

c) *The Definition of the Sale Period is Inadequate*

Section 2.1.136 defines the Sale Period as the "time period during which the SunCal Proponents must consummate a <u>sale or liquidation</u> of the Group I Projects…" *SunCal I Disclosure Statement*, § 2.1.136, p. 23. Given that the premise of the SunCal I Plan is the sale of the Group I Projects, the SunCal Plan Proponents must explain the difference between a sale and liquidation and under what circumstances a liquidation may occur.

d) *The Timing of the Auction and Sales Must Be Clarified*

The SunCal I Disclosure Statement provides that the auction will occur 10 days prior to the Effective Date and the Winning Bidder will then have twenty (20) days to *prepare to* close the transaction. *SunCal I Disclosure Statement*, § 10.2.D, pp. 75-76. However, this means that the sales will likely not be completed by the Effective Date (which is inconsistent with section 10.4 of the SunCal I Disclosure Statement). *SunCal I Disclosure Statement*, § 10.4, p. 76 ("<u>On</u>

15

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

the Effective Date, the Group I Project(s) shall be sold free and clear of liens to the Winning Bidder...") (emphasis added). Thus, it is unclear whether the SunCal I Plan provides for the actual closing of the sales by the Effective Date, or merely the selection of the buyer by the Effective Date. The SunCal Plan Proponents must clarify the timing of the auction and sales.

e) *Insufficient Information is Provided Regarding the Independent Real Estate Professional*

The SunCal I Disclosure Statement fails to provide adequate information about the "independent real estate professional" that will oversee the sale process. *SunCal I Disclosure Statement*, § 10.2, p. 76. Information regarding the identity of the independent real estate professional is critical to creditors because the SunCal Plan Proponents, or affiliates of the SunCal Plan Proponents, likely will make a bid to purchase some or all of the Group I Projects. It will be impossible for the SunCal Plan Proponents to carry out their fiduciary duties to the creditors of the Group I: Voluntary Debtors to run the sale process if they are also bidding on or are affiliated in any way with a bidder on the Group I Projects. Thus, the SunCal I Disclosure Statement must state the duties of the real estate professional, how this individual will be selected, how the professional will be compensated, and whether a separate application to employ the professional will be filed prior to confirmation of the SunCal I Plan.

f) *The Committee Should be Entitled to Participate in the Sale Process*

The Committee should be entitled to participate in the sale process set forth in the SunCal I Plan. For example, section 2.1.130 of the SunCal I Disclosure Statement provides that a Qualifying Bidder is one who (a) has made an appropriate deposit into an escrow designated by the SunCal Plan Proponents; (b) has agreed that this sum will serve as liquidated damages if the bidder fails to perform; and (c) has provided the SunCal Plan Proponents evidence confirming that the bidder has the financial means to acquire the relevant Group I Project(s). *SunCal I Disclosure Statement*, § 2.1.130, p. 22. In addition to the foregoing requirements, the SunCal I Disclosure Statement should be modified to state that the Committee will participate in the process of determining whether a Bidder is a Qualifying Bidder and should be entitled to receive all information provided by the bidder to the SunCal Plan Proponents.

16

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Similarly, the Committee should be involved in selecting the Stalking Horse Bidder (should the Court ultimately determine that a Stalking Horse Bidder is required) and should be allowed to participate in the auction.

**15. The SunCal I Disclosure Statement Fails to Adequately Disclose What Other Assets are Available**

As liquidating plans, the crux of each of the SunCal Plans is that the SunCal Plan Proponents will market and sell the Projects and "Other Assets" owned by each of the Related Debtors. However, the SunCal I Disclosure Statement does not define "Other Assets" nor does Exhibit "1" list any assets other than the Projects and Cash.[16] The SunCal I Disclosure Statement must be revised to explain what Other Assets are available or state that the Group I: Voluntary Debtors have no other assets. Further, to the extent that Other Assets exist, the bid procedures should be specifically tailored to each applicable assets.

**16. The SunCal I Disclosure Statement Does Not Provide Adequate Information regarding the Abandonment of the Group I Projects or the Other Assets**

Section 8.2.C and 8.2.E provide that, if the Plan Trustee is unable to sell any of the Group I Projects or the Other Assets, such assets will be abandoned. The SunCal I Disclosure Statement, however, fails to provide an explanation for the circumstances under which these assets would be abandoned. Presumably, if the SunCal Plan Proponents are correct and the Lehman Entities' Disputed Liens and Disputed Claims are disallowed, *any* recovery obtained from a sale of the Group I Projects and/or the Other Assets remaining after the payment of administrative expenses would then be paid to unsecured creditors. The SunCal Plan Proponents must explain the circumstances under which the abandonment of such assets may occur and why such an act would not harm unsecured creditors that would otherwise receive the proceeds of any sale.

This is especially critical in connection with the Group I Projects because the SunCal I Plan provides for a minimum sale price. *SunCal I Disclosure Statement*, § 2.1.101, pp. 17-18.

[16] The Committee also notes that Exhibit "1" to the SunCal I Disclosure Statement omits any discussion of three of the Voluntary Debtors – (1) SunCal Summit Valley, LLC; (2) Seven Brothers LLC; and (3) Kirby Estates, LLC.

17

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

The SunCal I Disclosure Statement must clearly explain the rationale for the establishment of Minimum Sale Prices, how the Minimum Sale Prices were calculated, and whether the Group I Projects will be abandoned if the Minimum Sale Price for the applicable project cannot be obtained.[17]

**17. The SunCal I Disclosure Statement Does Not Provide Adequate Information Regarding the Funding of the 1% Distribution to Holders of Allowed Unsecured Claims**

Pursuant to the SunCal I Plan, the holders of Allowed Unsecured Claims will receive a distribution in cash, on the Effective Date, of 1% of such claimant's allowed claim. *SunCal I Disclosure Statement*, § 8.7, p. 70. The SunCal I Disclosure Statement must disclose the source of the funds for this 1% distribution.

**18. The SunCal I Disclosure Statement Fails to Provide Adequate Information Regarding the Funding of the Plan Trust**

The SunCal I Disclosure Statement must be revised to state the source of funds to pay the Plan Trustee and any professionals that the Plan Trustee may employ (*i.e.* the LitCo Plan Loan or the Net Sales Proceeds) and the terms of the proposed compensation. *SunCal I Disclosure Statement*, § 10.09, p. 78.

**19. The SunCal I Disclosure Statement Fails to Provide Creditors with an Adequate Explanation for Why Acquisitions Must Act as Plan Trustee**

A trustee owes a fiduciary duty to the beneficiaries of a trust. In other words, a trustee must act in the best interests of the trust beneficiaries. The SunCal I Disclosure Statement states that "Acquisitions shall be Trustee of the Plan Trust." *SunCal I Disclosure Statement*, § 10.8, p. 77. Acquisitions is an indirect parent company of all of the Related Debtors. *Id.* The SunCal I

[17] For example, if the Minimum Sales Prices are tied to the real property taxes that are due and owing on each Group I Project, the establishment of the Minimum Sales Prices makes sense. However, there is currently no discussion on that point in the SunCal I Disclosure Statement.

18

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Disclosure Statement must explain to creditors how Acquisitions plans to satisfy its conflicting duties and why Acquisitions must serve as the Plan Trustee.[18]

Moreover, in addition to serving as Plan Trustee, Acquisitions is also the Distribution Agent. *SunCal I Disclosure Statement*, § 2.1.53, p. 11. The SunCal I Disclosure Statement must be modified to clarify what duties Acquisitions will have in each of these roles, as well as whether Acquisitions will be separately compensated and the terms of that compensation.

**20. The SunCal I Disclosure Statement Fails to Provide Any Basis for the Release of Acquisitions**

The SunCal I Disclosure Statement indicates that the Reorganized Debtors, in exchange for "the above referenced services" will waive any claims that they have against Acquisitions. *SunCal I Disclosure Statement*, § 10.21, p. 82. This is an exceptionally troubling provision and should be striken for lack of consideration.

When a plan provides for the release of the estate's claims against the plan proponent, the plan proponent must show that the release is in the best interest of the estate and creditors. *In re Whispering Pines*, 370 B.R. 452, 460-461 (1st Cir. B.A.P. 2007) (court could not confirm plan that released plan proponents without investigating the merits of the released claims); *In re Lighthouse Lodge*, 2010 Bankr. Lexis 3663, *24-*26 (Bankr. N.D. Cal. October 14, 2010) (plan proponent needed to show that the release of claims was fair, equitable, reasonable, and in the best interests of the estate). Here, the SunCal I Disclosure Statement provides no detail as to why this arrangement benefits the Group I: Voluntary Debtors or when the release will become effective.[19] The Related Debtors may have significant claims against Acquisitions and the Reorganized Debtors will waive these claims in return for undefined "services" that Acquisitions is, presumably, being paid to provide. A disclosure statement cannot provide adequate

---

[18] Acquisitions may also be authorized to receive compensation for its duties as Plan Trustee. If SunCal wishes for Acquisitions to serve as Plan Trustee, this compensation must be limited and clearly disclosed to all creditors.

[19] The provision discussing the Committee's rights to commence actions against Acquisitions appears to be nullified by the release language that precedes it. *SunCal I Disclosure Statement*, § 13.1, p. 87.

19

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Main Document Page 20 of 25

information if it fails to explain why the debtors will give away valuable assets to interested parties.

**21. The SunCal I Disclosure Statement Fails to Provide a Deadline for the Filing of the Plan Supplement**

The SunCal I Disclosure Statement does not provide a deadline for the filing of the Plan Supplement. The documents contained in the Plan Supplement, which include the Plan Trust Agreement, are critical to providing unsecured creditors with sufficient information in order to vote on the SunCal I Plan and must be provided at the same time as the SunCal I Disclosure Statement. At the May 13, 2011 hearing, the Court ordered that the Plan Trust Agreement be provided with the SunCal I Disclosure Statement.

**22. The Discussion of the Best Interests of Creditors Test in the SunCal I Disclosure Statement is Not Adequate**

The discussion of the "best interests test" set forth in the SunCal I Disclosure Statement is inadequate because it does not discuss potential actions that the Group I: Voluntary Debtors may have against SunCal Management. *SunCal I Disclosure Statement*, § 15.1, pp. 89-90. The Committee is currently investigating the pre-petition and administrative claims filed by SunCal Management. Despite having requested documents relating to the management agreements that these claims are allegedly based upon, both informally and through formal discovery, the Committee has received copies of only three management agreements and SunCal Management has not yet completed its production of other responsive documents. The SunCal I Disclosure Statement must disclose that the Group I: Voluntary Debtors may have claims against SunCal Management and/or that SunCal Management's claims may be disallowed, as the reduction and/or disallowance of SunCal Management's claims could significantly impact the recovery of unsecured creditors in certain estates.

**23. The SunCal I Disclosure Statement Does Not Provide Adequate Disclosure Regarding Feasibility**

The discussion of feasibility set forth in section 15.2 of the SunCal I Disclosure Statement is inadequate. *SunCal I Disclosure Statement*, § 15.2, p. 90. This section states that the Group I

20

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

Projects will be sold on the Effective Date, which is inconsistent with the timing of the auction (as discussed above). In addition, the section provides that all administrative and priority claims will be paid from the Net Sale Proceeds on that same date, without disclosing the fact that until the objections to the Lehman Entities' claims are completely resolved, the Net Sale Proceeds cannot be used. Similarly, no information has been provided regarding the other alleged source of funding for the payments that must be made on the Effective Date, the LitCo Plan Loan. The SunCal I Disclosure Statement must be amended to provide creditors with adequate information regarding the feasibility of the SunCal I Plan.

**24. The Committee Should be Authorized to Include a Letter in the Solicitation Packages**

The Committee should be authorized (but not required) to include a letter to unsecured creditors in the solicitation packages disseminated by the SunCal Plan Proponents in connection with the SunCal I Plan. This will provide the Committee with an opportunity to inform unsecured creditors of the risks and benefits of the SunCal I Plan.

## RESERVATION OF RIGHTS

The Committee acknowledges that the hearing on the SunCal I Disclosure Statement normally is not a suitable context for raising objections to the confirmation of a plan. The Committee reserves the right to make any and all confirmation objections in connection with the confirmation hearing.

## CONCLUSION

Based on the inadequacies in the SunCal I Disclosure Statement, the Committee requests that the Court order that the SunCal Plan Proponents correct all of the errors and omissions in the SunCal I Disclosure Statement.

Dated: July 8, 2011

IRELL & MANELLA LLP

By: Kerri A. Lyman
Alan J. Friedman
Kerri A. Lyman
Counsel for the Official Unsecured Creditors Committee in Chapter 11 Cases of Palmdale Hills Property, LLC et al.

21

IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS [GROUP I: VOLUNTARY DEBTORS]

| In re: PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206- ES |
|---|---|

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 840 Newport Center Drive, Suite 400, Newport Beach, CA 92660-6324

A true and correct copy of the foregoing document described as **OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF PALMDALE HILLS PROPERTY, LLC, SUNCAL BICKFORD RANCH, LLC, SUNCAL EMERALD MEADOWS, LLC AND ACTON ESTATES, LLC [GROUP I: VOLUNTARY DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 8 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On July 8, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 8, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
CAUSED TO BE SERVED BY PERSONAL DELIVERY/MESSENGER
Chambers of the Honorable Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Bldg., Bin Outside Room 5097
411 W. Fourth Street
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/8/11 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**

Main Document Page 23 of 25

| In re: PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206- ES |
|---|---|

**SERVICE VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Selia M Acevedo sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams jadams@sycr.com
- Raymond H Aver ray@averlaw.com
- James C Bastian jbastian@shbllp.com
- Thomas Scott Belden sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd fednotice@tclaw.net
- Mark Bradshaw mbradshaw@shbllp.com
- Gustavo E Bravo gbravo@smaha.com
- Jeffrey W Broker jbroker@brokerlaw.biz
- Brendt C Butler bbutler@mandersonllp.com
- Andrew W Caine acaine@pszyjw.com
- Carollynn Callari ccallari@venable.com
- Cathrine M Castaldi ccastaldi@rusmiliband.com
- Tara Castro Narayanan tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers dchambers@jmbm.com
- Shirley Cho scho@pszjlaw.com
- Vonn Christenson vrc@paynefears.com
- Brendan P Collins bpcollins@bhfs.com
- Vincent M Coscino vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte ana.damonte@pillsburylaw.com
- Vanessa S Davila vsd@amclaw.com
- Melissa Davis mdavis@shbllp.com
- Daniel Denny ddenny@gibsondunn.com
- Caroline Djang crd@jmbm.com
- Donald T Dunning ddunning@dunningLaw.com
- Meredith R Edelman meredith.edelman@dlapiper.com
- Joseph A Eisenberg jae@jmbm.com
- Lei Lei Wang Ekvall lekvall@wgllp.com
- Richard W Esterkin resterkin@morganlewis.com
- Marc C Forsythe kmurphy@goeforlaw.com
- Alan J Friedman afriedman@irell.com
- Steven M Garber steve@smgarberlaw.com
- Christian J Gascou cgascou@gascouhopkins.com
- Barry S Glaser bglaser@swjlaw.com
- Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg egoldberg@stutman.com
- Richard H Golubow rgolubow@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
January 2009 F 9013-3.1

| In re: PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206- ES |
|---|---|

- Michael J Gomez mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith bkemail@harrisbeach.com
- Matthew Grimshaw mgrimshaw@rutan.com
- Kavita Gupta kgupta@winthropcouchot.com
- Asa S Hami ahami@morganlewis.com
- Michael J Hauser michael.hauser@usdoj.gov
- D Edward Hays ehays@marshackhays.com
- Michael C Heinrichs mheinrichs@omm.com
- Harry D. Hochman hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff jonathan.hoff@cwt.com
- Nancy Hotchkiss nhotchkiss@trainorfairbrook.com
- Michelle Hribar mhribar@rutan.com
- John J Immordino john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson laj@cohenandjacobson.com
- Michael J Joyce mjoyce@crosslaw.com
- Stephen M Judson sjudson@fablaw.com
- Kaleb L Judy ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn skahn@pszyjw.com
- Sheri Kanesaka sheri.kanesaka@bryancave.com
- David I Katzen katzen@ksfirm.com
- Christopher W Keegan ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet ikiet@hkclaw.com
- Claude F Kolm claude.kolm@acgov.org
- Mark J Krone mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally davidlallylaw@gmail.com
- Leib M Lerner leib.lerner@alston.com
- Peter W Lianides plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu cliu@winthropcouchot.com
- Kerri A Lyman klyman@irell.com
- Mariam S Marshall mmarshall@marshallramoslaw.com
- Robert C Martinez rmartinez@mclex.com
- Michael D May mdmayesq@verizon.net
- Hutchison B Meltzer hmeltzer@wgllp.com
- Krikor J Meshefejian kjm@lnbrb.com
- Joel S. Miliband jmiliband@rusmiliband.com
- James M Miller jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller smiller@millerbarondess.com
- Randall P Mroczynski randym@cookseylaw.com
- Mike D Neue mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida Rnida@castlelawoffice.com
- Henry H Oh henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe sokeefe@okeefelc.com
- Robert B Orgel rorgel@pszjlaw.com, rorgel@pszjlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009 F 9013-3.1

Main Document Page 25 of 25

| In re: PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS Debtor(s). | CHAPTER 11<br>CASE NUMBER 8:08-bk-17206- ES |
|---|---|

- Malhar S Pagay mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Daryl G Parker dparker@pszjlaw.com
- Penelope Parmes pparmes@rutan.com
- Ronald B Pierce ronald.pierce@sdma.com
- Katherine C Piper kpiper@steptoe.com
- Cassandra J Richey cmartin@pprlaw.net
- Debra Riley driley@allenmatkins.com
- James S Riley tgarza@sierrafunds.com
- Todd C. Ringstad becky@ringstadlaw.com
- R Grace Rodriguez ecf@lorgr.com
- Martha E Romero Romero@mromerolawfirm.com
- Ronald Rus rrus@rusmiliband.com
- John P Schafer jschafer@mandersonllp.com
- John E Schreiber jschreiber@dl.com
- William D Schuster bills@allieschuster.org
- Christopher P Simon csimon@crosslaw.com
- Wendy W Smith wendy@bindermalter.com
- Steven M Speier Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR) Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James ecf@stjames-law.com
- Michael K Sugar msugar@irell.com
- Cathy Ta cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh cgunruh@sbcglobal.net
- Annie Verdries verdries@lbbslaw.com
- Jason Wallach jwallach@gladstonemichel.com
- Joshua D Wayser , kim.johnson@kattenlaw.com
- Marc J Winthrop mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood dwiseblood@seyfarth.com
- Brett K Wiseman bwiseman@aalaws.com
- Dean A Ziehl dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman joshuasdaddy@att.net

**SERVED VIA FIRST-CLASS MAIL:**

Office of the United States Trustee
Attn: Michael Hauser, Esq.
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701-4593

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009 **F 9013-3.1**