1 | **WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
2 | Lei Lei Wang Ekvall, State Bar No. 163047
lekvall@wgllp.com
3 | Kyra E. Andrassy, State Bar No. 207959
kandrassy@wgllp.com
4 | Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
5 | 650 Town Center Drive, Suite 950
Costa Mesa, California 92626
6 | Telephone:    (714) 966-1000
Facsimile:    (714) 966-1002
7 |
8 | Counsel for the Joint Committee
of Creditors Holding Unsecured Claims

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12 | In re | Case No. 8:08-bk-17206-ES

13 | PALMDALE HILLS PROPERTY, LLC, and
its Related Debtors, | (Jointly Administered with Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
14 | | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
15 | Jointly Administered Debtors
and Debtors-in-Possession. | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
16 | | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
17 | ☐ Affects PALMDALE HILLS
PROPERTY, LLC, Only | 8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
18 | ☐ Affects SUNCAL BEAUMONT
HEIGHTS, LLC, Only | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
19 | ☐ Affects SCC/PALMDALE, Only | 8:08-bk-17470-ES; 8:08-bk-17472-ES; and
8:08-bk-17588-ES)
20 | ☐ Affects SUNCAL JOHANNSON
RANCH, LLC, Only |
21 | ☐ Affects SUNCAL SUMMIT VALLEY,
LLC, Only | Chapter 11 Cases
22 | ☐ Affects SUNCAL EMERALD
MEADOWS, LLC, Only | **JOINT COMMITTEE OF CREDITORS
HOLDING UNSECURED CLAIMS'
OBJECTION TO FIRST AMENDED
DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CHAPTER 11 PLANS
FILED BY SUNCAL PLAN PROPONENTS
IN THE CHAPTER 11 CASES OF SUNCAL
MARBLEHEAD, LLC AND SUNCAL PSV,
LLC**
23 | ☐ Affects SUNCAL BICKFORD RANCH,
LLC, Only |
24 | |
25 | ☐ Affects ACTON ESTATES, LLC, Only |
| ☐ Affects SEVEN BROTHERS, LLC, Only |
26 | ☐ Affects SJD PARTNERS, LTD., Only |
27 | ☐ Affects SJD DEVELOPMENT CORP.,
Only | **[GROUP I: TRUSTEE DEBTORS]**
28 |

OBJECTION TO FIRST AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

☐ Affects KIRBY ESTATES, LLC, Only

☐ Affects SUNCAL COMMUNITIES I, LLC, Only

☐ Affects SUNCAL COMMUNITIES III, LLC, Only

☐ Affects SCC COMMUNITIES, LLC, Only

☐ Affects NORTH ORANGE DEL RIO LAND, LLC, Only

☐ Affects TESORO SF, LLC, Only

☐ Affects LBL-SUNCAL OAK VALLEY, LLC, Only

☐ Affects SUNCAL HEARTLAND, LLC, Only

☐ Affects LBL-SUNCAL NORTHLAKE, LLC, Only

☒ Affects SUNCAL MARBLEHEAD, LLC, Only

☐ Affects SUNCAL CENTURY CITY, LLC, Only

☒ Affects SUNCAL PSV, LLC, Only

☐ Affects DELTA COVES VENTURE, LLC, Only

☐ Affects SUNCAL TORRANCE, LLC, Only

☐ Affects SUNCAL OAK KNOLL, LLC, Only

☐ Affects All Debtors

**DATE:** **July 22, 2011**
**TIME:** **11:00 a.m.**
**CTRM:** **5A**

**Weiland, Golden,**
**Smiley, Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

605951.1

OBJECTION TO FIRST AMENDED
DISCLOSURE STATEMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................................1

II.   THE DISCLOSURE STATEMENT LACKS ADEQUATE
      INFORMATION................................................................................................1

      A.    There Is Inadequate Disclosure Regarding LitCo.........................................2

      B.    The Feasibility of the Plan Is Entirely Dependent Upon the
            Outcome of the Lehman Claim Objection and the Lehman
            Adversary Proceeding, the Risks of Which Are Still Not
            Adequately Disclosed.................................................................................3

      C.    The Responsibility for Overseeing the Marketing and Sale of
            the Group I: Trustee Debtor Projects...........................................................5

      D.    There Is Inadequate Disclosure About the Formulation of the
            Minimum Sale Price and Break-up Fees......................................................5

      E.    The Risks Associated With the Proposed Abandonment of the
            Projects Needs to be Disclosed...................................................................7

      F.    There Are Additional Omissions and Inconsistencies that
            Should Be Corrected as a Condition to Approval of the
            Disclosure Statement.................................................................................7

III.  THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED
      BECAUSE IT DESCRIBES A PLAN THAT IS PATENTLY
      UNCONFIRMABLE...........................................................................................9

      A.    The Plan Is Not Feasible...........................................................................10

      B.    The Plan Violates the Absolute Priority Rule.............................................11

      C.    The Disclosure Statement Forces the Trustee to Go Along with
            the SunCal Plan Proponents Without Regard to His Fiduciary
            Duty..........................................................................................................12

      D.    The Plan Improperly Releases Insiders and Third Parties.........................12

i

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

### CASES

4

*Development Corp. v. Aldrich*
5
   *(In re Rigden),*
   795 F.2d 727 (9th Cir. 1986) ............................................................... 12

6

*Duff v. U.S. Trustee (In re California Fidelity, Inc.),*
7
   198 B.R. 567 (9th Cir. B.A.P. 1996) ...................................................... 2

8

*Financial Security Assurance Inc. v. T-H New Orleans L.P.*
   *(In re T-H New Orleans L.P.),*
9
   116 F.3d 790 (5th Cir. 1997) ............................................................... 10

10

*Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.),*
   145 B.R. 637 (9th Cir. B.A.P. 1992) .................................................... 12

11

*In re America West Airlines, Inc.,*
12
   166 B.R. 908 (Bankr. D. Az. 1994) ........................................................ 6

13

*In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) ............... 9

14

*In re Lionel Corp.,*
   722 F.2d 1063 (2d Cir. 1983) ................................................................ 6

15

*In re Sagewood Manor Assocs. L.P.,*
16
   223 B.R. 756 (Bankr. D. Nev. 1998) .................................................... 10

17

*In re U.S. Brass Corp.,*
   194 B.R. 420 (Bankr. E.D. Tex. 1996) ................................................... 9

18

*In re Wymer,*
19
   5 B.R. 802 (9th Cir. B.A.P. 1980) .......................................................... 7

20

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
   843 F.2d 636 (2d Cir. 1988) ................................................................ 10

21

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
22
   848 F.2d 414 (3d Cir. 1988) .................................................................. 2

23

*Pizza of Hawaii, Inc. v. Shakey's, Inc.*
   *(In re Pizza of Hawaii, Inc.),*
24
   761 F.2d 1374 (9th Cir. 1985) .............................................................. 10

25

*Resorts Int'l, Inc. v. Lowenschuss*
   *(In re Lowenschuss),*
26
   67 F.3d 1394 (9th Cir. 1995) ................................................................ 13

27

28

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

## STATUTES

11 U.S.C. § 1125 ................................................................................................ 1

11 U.S.C. § 1125(a)(1) ....................................................................................... 2

11 U.S.C. § 1129(a)(1), (3) ................................................................................ 9

11 U.S.C. § 1141(d)(2) ...................................................................................... 12

11 U.S.C. § 502(c) .............................................................................................. 8

11 U.S.C. § 507(a)(8) .......................................................................................... 8

11 U.S.C. § 511(a) ............................................................................................... 8

11 U.S.C. 1125(b) ............................................................................................... 1

1129(a)(11) ....................................................................................................... 10

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:**

The Official Joint Committee of Creditors Holding Unsecured Claims (the "Committee") hereby objects to the *First Amended Disclosure Statement Describing First Amended Chapter 11 Plans Filed by SunCal Plan Proponents in the Chapter 11 Cases of SunCal Marblehead, LLC and SunCal PSV, LLC [Group I: Trustee Debtors]* (the "Disclosure Statement") because it raises more questions than it answers and therefore does not provide creditors with sufficient information from which they can make even a modestly informed decision about the plan and because it describes a plan that is patently unconfirmable in several key respects.  In support of its objection, the Committee respectfully represents as follows:

## I.    INTRODUCTION

Disclosure statements are intended to provide creditors "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125.  After reviewing the Disclosure Statement, the Committee has more questions than answers and is left with the impression that the plan is a farce, designed primarily to benefit insiders, to the detriment of creditors.  Because it fails to provide adequate information and describes a plan that is not confirmable, the Disclosure Statement should not be approved.

## II.    THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION

Section 1125(b) of the Bankruptcy Code requires plan proponents to provide creditors and shareholders with a disclosure statement that contains "adequate information." The Code defines "adequate information" as follows:

> . . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to

1

Smiley, **Weiland, Golden,**
**Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1          creditors and other parties in interest, and the cost of providing
           additional information . . . .

2

3    11 U.S.C. § 1125(a)(1).  The primary purpose of a disclosure statement is to provide

4    creditors and shareholders with enough information to decide how to vote on and whether

5    to object to a plan of reorganization.  *See Oneida Motor Freight, Inc. v. United Jersey*

6    *Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *Duff v. U.S. Trustee (In re California Fidelity,*

7    *Inc.)*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996).  In addition to containing a number of

8    typographical errors that are itemized on Exhibit "A" to this Objection, the Disclosure

9    Statement lacks critical information on several key aspects of the Plan.[1]

10          **A.    There Is Inadequate Disclosure Regarding LitCo**

11          Section 5.7.7[2] of the Disclosure Statement provides that LitCo, a newly formed

12   Delaware limited liability company, will make an offer to purchase the Reliance Claims

13   and "will be capitalized by a third party capital partner with funds necessary to fund this

14   claims purchase."  Section 6.3 of the Disclosure Statement provides that "the Lehman

15   Disputed Administrative Loans shall be paid in full, on the date referenced above, from

16   either 1) funds loaned to the Plan Trustee by LitCo or another designated third [sic] party

17   or 2) from the funds in the applicable Net Sale Proceeds Account."

18          There is no information regarding LitCo and its officers, directors, managers, or

19   members.  There is no information regarding whether LitCo has any relationship to

20   insiders.  Similarly, there is no disclosure regarding the "third party capital partner."

21   Indeed, such scant information is provided that the Committee is unable to determine (1)

22   whether LitCo has identified a partner or is still in the process of negotiating and (2)

23   whether there is a commitment to fund LitCo or simply an expectation that LitCo will obtain

24   such a commitment prior to the confirmation hearing.  The Disclosure Statement also

25

26   _____

27      [1]    Unless otherwise indicated, all capitalized terms shall have the same meaning given to them in the
     Disclosure Statement.

28      [2]    All section references are to the Disclosure Statement unless otherwise noted.

1   makes reference to a possible loan from a "designated third party" to pay administrative

2   expenses but there is no information regarding this "third party."

3        In addition, LitCo is not a signatory to the plan and there is no indication that LitCo

4   is or will be bound by the provisions of the plan to purchase Reliance Claims and to make

5   loans.  Moreover, if LitCo does make loans, there is no disclosure regarding the

6   repayment terms.

7        The funding by LitCo, its capital partner or any designated third parties is critical to

8   the success of the plan, because it is the source for, among other things, payment of the

9   Reliance Claims and any allowed administrative claims related to the loans funded by

10  Lehman post-petition with this Court's approval.  Absent disclosure of the identify of LitCo

11  and its third party capital partner, their financial wherewithal, the amount of the

12  capitalization, and the certainty of obtaining the funding, and their commitment to funding

13  as set forth in the plan, creditors cannot make an educated determination about the plan

14  proposed by the SunCal Proponents.

15  **B.**    **The Feasibility of the Plan Is Entirely Dependent Upon the**

16         **Outcome of the Lehman Claim Objection and the Lehman**

17         **Adversary Proceeding, the Risks of Which Are Still Not**

18         **Adequately Disclosed**

19       As the SunCal Plan Proponents acknowledge, the success of their plan hinges on

20  their successfully objecting to the Lehman Disputed Administrative Loans.  Although they

21  acknowledge at Section 11.1.4 of the Disclosure Statement that their ability to object to

22  these claims may be limited to damages arising from wrongs that occurred after the loans

23  were approved by this Court, the Disclosure Statement contains no disclosure or

24  discussion about what those damages might be.  If the Lehman Disputed Administrative

25  Loans are allowed and the SunCal Plan Proponents cannot use the Net Proceeds from

26  the sale of the Group I: Trustee Debtor Projects to pay the administrative claims, then the

27  success of the plan will depend on LitCo to pay these claims.

28

**Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    As discussed in detail above, there is a dearth of information regarding LitCo's

2   funding abilities or commitment.  There is also inadequate disclosure regarding the

3   SunCal Plan Proponent's alternative funding proposal - the use the Net Sales Proceeds

4   from the sale of the Group I: Trustee Debtor Projects before a favorable determination is

5   obtained in the Lehman Adversary Proceeding.  It is unclear whether the SunCal Plan

6   Proponents intend to use the claim objection process to affirmatively make the Net

7   Proceeds (and the Lehman Entities' collateral) available to pay administrative expenses

8   on the Effective Date and post-confirmation expenses.  The Disclosure Statement

9   contains various inconsistent provisions on this issue.  For example, section 10.11

10   provides that the Net Sales Proceeds will be held in the Net Proceeds Accounts subject to

11   disputed liens and that the proceeds would remain in such account until the disputes are

12   resolved.  Section 10.12 of the Disclosure Statement states, however, that this Court can

13   estimate a disputed claimant's rights to assets and assets not deemed to be subject to the

14   rights of the disputed claimant can be used to pay certain plan payments, including

15   unsecured claims.  Section 2.1.35 of the Disclosure Statement references a Claim

16   Objection Reduction Amount as the amount of Net Sales Proceeds that is made available

17   to unsecured creditors due to the entry of a judgment or order on a Lehman Claim

18   Objection that disallows, reduces, or otherwise adversely modifies the secured claims filed

19   by the Lehman Lenders.  These provisions appear internally inconsistent and inconsistent

20   with repeated statements by the SunCal Plan Proponents that the Lehman Claim

21   Objection is defensive in nature.  Thus, it is unclear whether the plan contemplates taking

22   actions that would violate the automatic stay imposed in certain Lehman Entities'

23   bankruptcy cases.  The Disclosure Statement needs to be revised to be clearer and

24   consistent, and if the SunCal Plan Proponents are intending to use the claim objection

25   process to make Net Proceeds available to fund the plan and post-confirmation expenses,

26   then the risks associated with a violation of the automatic stay imposed in the Lehman

27   Entities' bankruptcy cases need to be clearly disclosed.

28

**Smiley, Wang Ekvall & Strok, LLP**
**Weiland, Golden,**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1     The uncertainties and inconsistencies surrounding LitCo and the SunCal Plan

2  Proponents' proposed use of the Net Sales Proceeds leave creditors to guess whether the

3  plan will be feasible immediately upon its confirmation.

4     The purpose of the Disclosure Statement is to eliminate this guesswork and to

5  enable creditors to make educated determinations about whether the support or object to

6  the plan.  Until the Disclosure Statement fulfills this purpose, it should not be approved.

7      **C.    The Responsibility for Overseeing the Marketing and Sale of the**

8         **Group I: Trustee Debtor Projects**

9     The plan provides for the marketing and sale of the projects, which Section 10.2.D.

10  of the Disclosure Statement indicates will be overseen by an "independent real estate

11  professional with experience managing sales of this kind."  Given that the Trustee is

12  provided to remain in place until the Effective Date, the Committee would have greater

13  comfort level in the Trustee having control over selection of the stalking horse bidder and

14  the successful bidder and otherwise overseeing the marketing and sale process.  The

15  Trustee is an independent fiduciary who is already familiar with the projects.

16     Moreover, given the importance of the marketing and sale of the projects and the

17  responsibility that will be vested with this professional, the SunCal Plan Proponents

18  should be required to disclose the identify of the real estate professional in order to enable

19  creditors to make a determination of the likelihood of success of the plan, especially given

20  the extremely short time period allocated by the SunCal Plan Proponents to the marketing

21  and sale of these projects.  The Disclosure Statement should also disclose the

22  compensation proposed to be paid to this professional and this professional's relationship

23  to the SunCal Plan Proponents.

24      **D.    There Is Inadequate Disclosure About the Formulation of the**

25         **Minimum Sale Price and Break-up Fees**

26     Section 10.2 of the Disclosure Statement sets forth the proposed bid procedures

27  for the auction of the Marblehead Project and the PSV Project, including Minimum Sale

28  Prices of $84,420,000 and $9,900,000, respectively.  However, there is no discussion

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  about how the Minimum Sale Prices were set, or why they are less than the valuation

2  opinion of the SunCal Plan Proponents as set forth in Exhibit 2 of the Disclosure

3  Statement (which states that the properties are believed by SunCal to be worth

4  $93,800,000 and $18,000,000, respectively, much less than what the lenders believe the

5  properties are worth).  Further, although the Disclosure Statement indicates that there will

6  be a break-up fee for the Marblehead Project of $3,750,000 and a break-up fee of

7  $440,000 for the PSV Project, there is no discussion about the reasonableness or

8  necessity of these fees that would enable creditors to determine whether the bid

9  procedures are fair to creditors and will encourage, rather than chill, bidding.  Indeed,

10  these break-up fees total nearly 4.5% of the Minimum Sales Prices, an amount that is

11  excessive.  For a break-up fee to be approved, the transaction must "'further the diverse

12  interests of the debtor, creditors, and equity holders, alike.'  *In re Lionel Corp.*, 722 F.2d

13  1063, 1071 (2d Cir. 1983).  The proposed breakup fee must be carefully scrutinizes to

14  insure that the Debtor's estate is not unduly burdened and that the relative rights of the

15  parties in interest are protected."  *In re America West Airlines, Inc.*, 166 B.R. 908, 912

16  (Bankr. D. Az. 1994)(internal citation in original).  Here, there is absolutely no discussion

17  about the appropriateness of the break-up fees or what it is intended to provide

18  compensation for, and the Committee is concerned that they will chill bidding by artificially

19  increasing the required amount of the minimum overbid.  The Disclosure Statement

20  should contain a discussion justifying the excessive break-up fees.

21       The minimum incremental bid for both projects is $100,000 when there is more

22  than a $70 million difference between the Minimum Sale Prices proposed for the two

23  projects.  The minimum incremental bid amount should bear some relations to the

24  Minimum Sales Prices.  The Disclosure Statement should contain a discussion justifying

25  the minimum incremental bid amount.

26

27

28

6

OBJECTION TO FIRST AMENDED
DISCLOSURE STATEMENT

**Weiland, Golden,**
**Smiley, Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

**E.    The Risks Associated With the Proposed Abandonment of the Projects Needs to be Disclosed**

Section 8.2.C provides that if the Plan Trustee cannot sell either or both Group I: Trustee Debtor Projects on the Effective Date, they will be abandoned at 11:59 p.m. on the Effective Date.  It is unclear whether the projects are intended to be abandoned at 11:59 p.m. immediately prior to the Effective Date or on the Effective Date.  Moreover, it does not state to whom they will be abandoned.  Are they being abandoned to the Debtors or the Plan Trust?  If abandoned to the Debtors and secured creditors are given leave to exercise their rights against the properties, then there will be no Net Sales Proceeds.  If that's the case, is there any point in proceeding with the Lehman Adversary Proceeding?  The Court and creditors are not required to guess what is likely to occur upon abandonment, so this information must be clarified and disclosed.

**F.    There Are Additional Omissions and Inconsistencies that Should Be Corrected as a Condition to Approval of the Disclosure Statement**

In addition to the foregoing major concerns held by the Committee, there are a number of other inconsistencies and omissions that must be addressed before the Disclosure Statement is approved.  They include the following:

(1)    At Section 5.4.1.5, the Disclosure Statement provides as follows: "If the Section 502(d) claim objection is successful, the claims of the Lehman Entities identified in the table above will be disallowed.  Although the Lehman Entities will have the right to seek reconsideration of this disallowance, in order to obtain this relief they would have to repay the applicable transfers."  This is inaccurate and confusing.  Nothing in the Bankruptcy Code requires that the Lehman Entities repay the applicable transfers in order to seek reconsideration of any adverse decision against it or to appeal any adverse ruling.  Indeed, it is entirely possible that Lehman could either obtain a discretionary stay without the necessity of post a bond or post a bond in order to obtain a stay.  *See In re Wymer*, 5 B.R. 802, 804-07 (9th Cir. B.A.P. 1980).  Therefore, it is not accurate to state that the

**Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Lehman Entities will have to repay the applicable transfers in order to seek

2  reconsideration of any adverse ruling.

3      (2)    At Section 6.6, the Plan proposes to pay priority unsecured tax claims under

4  § 507(a)(8) over a period of five years from the order for relief "at the interest rate

5  available on ninety (90) day United States Treasuries on the Effective Date."  However,

6  11 U.S.C. § 511(a) requires that the rate "be the rate determined under applicable

7  nonbankruptcy law."  In addition, one of the alternative treatments for these claims that is

8  reserved for the SunCal Plan Proponents is "payment of the full Allowed Priority Tax

9  Claim in cash," but the Disclosure Statement is silent on the timing of any such payment.

10     (3)    At footnote 5 and throughout the Disclosure Statement and Plan, there is

11  reference to Reliance Claimants electing to receive a distribution of $.55 cents on account

12  of their Allowed Unsecured Claims.  More accurately, it should state 55% of their Allowed

13  Unsecured Claims.

14     (4)    Sections 10.6 and 10.7 references the Plan Trust Agreement, which is a part

15  of the Plan Supplement.  No Plan Trust Agreement or Plan Supplement has been filed.

16  Creditors need to be able to review these very important documents as they govern the

17  use and distribution of assets.

18     (5)    Section 10.10 provides that "[t]he expenses incurred by the Plan Trust

19  during the Plan Period, which shall include the compensation payable to the Acquisitions,

20  shall be paid, or adequate reserves shall be created for the payment of such expenses,

21  prior to any distribution to the Plan Trust Beneficiaries."  The Disclosure Statement should

22  explain what compensation is payable to Acquisitions, for what period of time, and define

23  precisely what services are being compensated.

24     (6)    Section 10.12 gives the SunCal Proponents standing to file a claims

25  estimation motion under 11 U.S.C. § 502(c) for any Disputed Claim.  This section goes on

26  to provide that "[a]fter the Bankruptcy Court estimates a Disputed Claimant's rights in, or

27  against an asset of the Estates through this procedure, the Committee shall have the right

28  to use any funds or assets not deemed subject to the rights of the Disputed Claimant, to

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  pay the Allowed Claims under the terms of the Plan, including Allowed Administrative

2  Claims, after the Effective Date."  However, Section 10.23 does not vest the Committee

3  with any distribution rights.  The reference to the Committee should instead be to the Plan

4  Trustee (i.e., Acquisitions), which is charged with paying the claims of Creditors with

5  Allowed Claims.

6        (7)    Section 10.15 provides as follows:  "The Plan Trustee, and to the extent of

7  payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain

8  an accounting of receipts and disbursements of the Plan Trust."  There is no definition

9  provided for "Disbursing Agent" and no provision for the appointment of one.

10       (8)    Section 10.24 provides that "the Plan Trustee shall not settle or abandon a

11  Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written

12  notice and opportunity to object to one or another."  This provision should set forth to

13  whom notice of any such settlement or abandonment must be given.

14       (9)    Section 14.1 allows the SunCal Proponents to provide a list of contracts that

15  they intend to assume or reject with the Plan supplement but permits them to amend the

16  list at any time prior to the Effective Date.  There is no method provided for resolution of

17  disputes regarding cure claims, if any, and no discussion of how the assumption or

18  rejection might affect feasibility of the plan.

19

20  **III.    THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE**

21  **IT DESCRIBES A PLAN THAT IS PATENTLY UNCONFIRMABLE**

22       Although courts have a significant amount of discretion in determining whether to

23  approve a disclosure statement, where the underlying plan is unconfirmable on its face,

24  the disclosure statement should not be approved.  *See In re Beyond.com Corp.*, 289 B.R.

25  138, 140 (Bankr. N.D. Cal. 2003); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D.

26  Tex. 1996).  Among the requirements for confirmation of a plan are that it "complies with

27  all of the applicable provisions of this title" and that it be "proposed in good faith and not

28  by any means forbidden by law."  11 U.S.C. § 1129(a)(1), (3).  A plan must also be

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    feasible, both with respect to payments due on the Effective Date and payments due over

2    time under the provisions of the plan.  *See* 11 U.S.C. § 1129(a)(11).  There are several

3    defects in the plan that render it unconfirmable under these provisions.

4        **A.    The Plan Is Not Feasible**

5        Section 1129(a)(11) requires that confirmation of a plan is not likely to be followed

6    by the liquidation of the debtor or the further reorganization of the debtor, unless such

7    liquidation or reorganization is contemplated by the plan.  *See* 11 U.S.C. § 1129(a)(11).

8    The standard for determining feasibility is whether the plan offers a reasonable assurance

9    of success; success does not need to be guaranteed.  *See Acequia*, 787 F.2d at 1364-65;

10    *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649

11    (2d Cir. 1988); *Financial Security Assurance Inc. v. T-H New Orleans L.P. (In re T-H New

12    Orleans L.P.)*, 116 F.3d 790, 801 (5th Cir. 1997).  The purpose of Section 1129(a)(11) "is

13    to prevent confirmation of visionary schemes which promise creditors and equity security

14    holders more under a proposed plan than the debtor can possibly attain after

15    confirmation." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d

16    1374, 1382 (9th Cir. 1985)(internal quotations marks and citation omitted).  "While a . . .

17    court 'must examine the totality of the circumstances in order to determine whether the

18    plan fulfills the requirements of § 1129(a)(11), only a relatively low threshold of proof [is]

19    necessary to satisfy the feasibility requirement." *In re Sagewood Manor Assocs. L.P.*, 223

20    B.R. 756, 762-63 (Bankr. D. Nev. 1998)(citations and internal quotations marks

21    omitted)(alteration in original).  Here, the plan falls far short of the "relatively low threshold

22    of proof" required.

23        The Plan depends on the successful resolution of the Lehman Claim Objections

24    and the Lehman Adversary Proceeding.  It also requires a successful sale of the Group I:

25    Trustee Debtor Projects after 60-120 days[3] of marketing by an unknown professional for

26

27    ───────────────
     [3]    The Effective Date is defined at section 2.1.52 to be 90 days after the order confirming the plan is

28    entered with a possible one-time extension of 60 days.  Section 10.2.D of the Disclosure Statement provide
     (Continued...)

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  unknown compensation to a purchaser selected solely by the SunCal Plan Proponents.

2  There is virtually no discussion about funding to maintain the Group I: Trustee Debtor

3  Projects prior to their sale, funding for post-confirmation professional fees, or funding for

4  the administrative expense claims that will be required to be paid on the Effective Date.

5  There is no unencumbered cash until a successful resolution of the Lehman Claim

6  Objections (if the SunCal Plan Proponents are intending to affirmatively use the claim

7  objection process) or the Lehman Adversary Proceeding, either of which may require

8  relief from the automatic stay in the Lehman Entities' bankruptcy cases.  Moreover, with

9  respect to the PSV Case, there is no claim objection pending against the Lehman Entities.

10  *See* p. 49 of Disclosure Statement.  Thus, there is not even the possibility of an earlier

11  resolution of the Lehman Entities' claims with respect to the PSV Estate.

12  As the Court is well aware, final resolution could take years and the outcome is far

13  from certain.  The only other funding source mentioned in the Disclosure Statement is

14  LitCo, but no information is provided about LitCo, its financial wherewithal, whether it has

15  agreed to be bound, or even who owns it.  There is also no mention of funding that is

16  necessary for the Lehman Adversary Proceeding.  Recently, special counsel for the

17  Voluntary Debtors and the Trustee filed a motion to withdraw as counsel for the Trustee in

18  the Lehman Adversary Proceeding [docket no. 2276].  Without counsel and funding for

19  counsel, there is little to no chance of prevailing in the Lehman Adversary Proceeding, a

20  ruling that is necessary in order to have the Net Sales Proceeds available for distribution.

21  A cross of the fingers is not enough to render this Plan feasible.  It falls far short of

22  even the low threshold of proof required by the case law and is unconfirmable on its face.

23  **B.**    **The Plan Violates the Absolute Priority Rule**

24  The plan violates the absolute priority rule.  Although the plan technically cancels

25  all interests in the Debtors, the plan vests the control of all assets of the estates in

26  _____

27  (...Continued)
for the auction sale of the projects at least 30 days before the Effective Date.  Thus, in effect, the marketing period is 60-120 days.

28

**Smiley, Weiland, Golden,**
**Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   Acquisitions, an insider of the Debtor.  Neither Acquisitions nor the Debtor is contributing

2   any new value.

3       **C.**    **The Disclosure Statement Forces the Trustee to Go Along with**

4           **the SunCal Plan Proponents Without Regard to His Fiduciary**

5           **Duty**

6       It is undisputed that the Trustee owes a fiduciary duty to creditors and that this duty

7   will remain imposed upon him until he is discharged from his duties.  *See Development*

8   *Corp. v. Aldrich (In re Rigden)*, 795 F.2d 727, 729-30 (9th Cir. 1986); *Holta v. Zerbetz (In*

9   *re Anchorage Nautical Tours, Inc.)*, 145 B.R. 637 (9th Cir. B.A.P. 1992).  Under the Plan,

10  the Trustee will not be discharged until the Effective Date.  Until the Effective Date,

11  Section 10.2 contemplates that "he will be required to work with the SunCal Proponents

12  after the Confirmation Date to promote and facilitate the sale of the Group I: Trustee

13  Debtor Projects in accordance with the Plan terms."  However, it does not appear that the

14  SunCal Proponents intend to consult the Trustee in connection with the selection of the

15  Stalking Horse Bidder, analysis of overbids, qualification of other bidders, the conduct of

16  the auction, or the selection of the winning bidder.  Instead, the Trustee is expected to

17  follow orders of the SunCal Proponents, apparently without regard to his fiduciary duties.

18  The Trustee cannot be forced to follow orders without exposing himself to risk for violating

19  the duties imposed upon him by the Bankruptcy Code, particularly where the SunCal Plan

20  Proponents' interests may be different than the interests of creditors.  Until the Trustee's

21  role is consistent with the duties imposed upon him by the Bankruptcy Code, the Plan is

22  patently unconfirmable.

23       **D.**    **The Plan Improperly Releases Insiders and Third Parties**

24       Because this is a liquidating plan, the Debtors are not entitled to a discharge.  *See*

25  11 U.S.C. § 1141(d)(2).  Although the Disclosure Statement and Plan do not contain an

26  explicit discharge provision, a couple of the sections effectuate a release and discharge of

27  the SunCal Plan Proponents and their affiliates.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

605951.1                    12                  OBJECTION TO FIRST AMENDED
                                                DISCLOSURE STATEMENT

1    Section 10.22 provides that "Acquisitions, and all of its Affiliates shall receive a

2  complete release from all of the Debtors , the Estates, and the Plan Trust of any potential

3  Litigation Claims."  The consideration cited for the release of the SunCal Plan Proponents

4  and its affiliates is Acquisition's management of the affairs of the Plan Trust although

5  Acquisitions will be compensated for its services as the Plan Trustee.  The consideration

6  is illusory and the broadly worded release would result in the release of valuable claims as

7  well as objections to claims that have been filed against various entities relating to

8  Acquisitions, including SunCal Management.

9    Section 10.16 provides, in part, as follows:

10            The Plan Trustee, and its officers, directors, agents, and
              employees shall not be liable for any indebtedness, liability, or
11            obligation incurred or entered into on behalf of the Plan Trust,
              including, without limitation, indebtedness, liabilities, or
12            obligations under agreements, undertakings or commitments
              entered into or executed on behalf of [the] Plan Trust by the
13            Plan Trustee or by any person employed by the Plan Trustee
              or the Plan, it being expressly understood that all such
14            indebtedness, liabilities, and obligations of, and claims against
              the Plan, shall be the sole responsibility of the Plan and shall
15            be satisfied only from the Plan, or such portion thereof as shall,
              under the terms of any agreement, be stated to be liable
16            therefore.  No claim or cause of action may be asserted
              against the Plan Trustee, or any member of the New Board on
17            account of any indebtedness, liability or obligation entered into
              on behalf of the Plan, whether by legal or equitable
18            proceedings, or by virtue of any bankruptcy or non-bankruptcy
              statute, rule or regulation.

19

20  The Committee is very concerned that this provision could be construed to release the

21  Plan Trustee (i.e., Acquisitions) and any of their employees and affiliates from any

22  obligations treated under the Plan.  Not only are the Debtors not entitled to any such

23  release because this is a liquidation plan, but third parties are similarly not entitled to any

24  releases from liability and a plan that purports to give such a release cannot be confirmed.

25  *See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th

26  Cir. 1995).

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1      In sum, the Disclosure Statement describes a plan that, in its present form, is not

2 confirmable, so there is not point to proceeding further at this point.  The Committee

3 respectfully requests that the Court deny approval of the Disclosure Statement.[4]

4

5 Dated:  July 8, 2011                Respectfully submitted,

6                     WEILAND, GOLDEN
                    SMILEY, WANG EKVALL & STROK, LLP

7

8                 By:  /s/ *Lei Lei Wang Ekvall*
                      LEI LEI WANG EKVALL

9                       Attorneys for the Joint Committee of
                      Creditors Holding Unsecured Claims

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 _____

25     [4]   The Committee also notes that the Disclosure Statement and Plan eliminate the right that 11 U.S.C. § 363(k) gives to secured creditors to credit bid their allowed claims in a sale of their collateral.  The Seventh

26 Circuit Court of Appeals recently held that plans that strip secured creditors of their right to credit bid in a cramdown context are not confirmable.  *See River Road Hotel Partners, LLC v. Amalgamated Bank (In re*

27 *River Road Hotel Partners, LLC)*, __ F.3d __, 2011 WL 2547615 at *5-*8 (7th Cir. 2011).  The Plan does not permit credit bids and therefore may not comply with § 1129 if the Lehman Lenders do not support

28 confirmation of the Plan.

OBJECTION TO FIRST AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

EXHIBIT "A"

## **EXHIBIT A:  Typographical Errors**

(1)    Page 22 line 11:  delete the extra period

(2)    Page 28 line 7:  insert an apostrophe after "Debtors"

(3)    Page 30 line 24 through 26:  amounts do not add up correctly

(4)    Page 34 line 14:  "into restructuring agreement" should be changed to "into a restructuring agreement"

(5)    Page 38 lines 19 and 26:  "Ali" should be "ALI"

(6)    Page 38 line 22:  delete the extra period

(7)    Page 43 line 8:  "Miller" should be "Milner"

(8)    Page 46 line 23:  delete the comma between "upon" and "the"

(9)    Page 47 line 6:  insert an apostrophe after "defendants"

(10)    Page 48 line 24:  "an" should be "as"

(11)    Page 49 line 25:  delete the apostrophe after "Debtors"

(12)    Page 50 line 13:  delete the "as" before the parenthetical

(13)    Page 51 line 16:  "SunCal Proponents" should be "SunCal Plan Proponents'"

(14)    Page 52 line 8:  "say" should be "stay"

(15)    Page 57 line 7:  insert "party" after "third"

(16)    Page 57 line 18:  reference to "Debtors in Possession" is incorrect in the context of the Group I: Trustee Debtors' cases

(17)    Page 64 lines 1 and 11:  "Net Proceeds" is not a defined term

(18)    Page 67 line 27:  delete extra "and"

(19)    Page 75 line 18:  "compensation of the Plan Trust" should be "compensation of the Plan Trustee"

(20)    Page 77 line 6:  insert "the" before "Plan Trust"

(21)    Page 77 line 18:  "trustees" should be "trustee"

(22)    Page 78 line 2:  "New Board" is not a defined term

(23)    Page 81 line 15:  "Group II" should be "Group I"

(24)    Page 83 line 8:  "SunCal Proponents" should be "SunCal Plan Proponents'"

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

(25)    Page 83 line 10:  "loan" should be plural

(26)    Page 84 line 16:  delete the comma after "evidencing"

(27)    Page 87 line 6:  "that being" should be "that are being"

(28)    Page 88 line 8:  "bankruptcy code" should be capitalized

(29)    Page 90 line 1:  insert an apostrophe after "Debtors"

**Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

605951.1

16

EXHIBIT A

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is :**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document described as **JOINT COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS' OBJECTION TO FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL MARBLEHEAD, LLC AND SUNCAL PSV, LLC [GROUP I: TRUSTEE DEBTORS]** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **July 8, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☑ Service information continued on attached page

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 8, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**The Honorable Erithe Smith**
**United States Bankruptcy Court**                    **(Via Personal Delivery)**
**411 West Fourth Street**
**Santa Ana, CA 92701**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 8, 2011 | Terri Jones | /s/ *Terri Jones* |
|:---:|:---:|:---:|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
606045.1                    **F 9013-3.1.PROOF.SERVICE**

I.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")**

**Selia M Acevedo**   sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
**Joseph M Adams**   jadams@sycr.com
**Raymond H Aver**   ray@averlaw.com
**James C Bastian**   jbastian@shbllp.com
**Thomas Scott Belden**   sbelden@kleinlaw.com, ecf@kleinlaw.com
**John A Boyd**   fednotice@tclaw.net
**Mark Bradshaw**   mbradshaw@shbllp.com
**Gustavo E Bravo**   gbravo@smaha.com
**Jeffrey W Broker**   jbroker@brokerlaw.biz
**Brendt C Butler**   bbutler@mandersonllp.com
**Andrew W Caine**   acaine@pszyjw.com
**Carollynn Callari**   ccallari@venable.com
**Cathrine M Castaldi**   ccastaldi@rusmiliband.com
**Tara Castro Narayanan**   tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
**Dan E Chambers**   dchambers@jmbm.com
**Shirley Cho**   scho@pszjlaw.com
**Vonn Christenson**   vrc@paynefears.com
**Brendan P Collins**   bpcollins@bhfs.com
**Vincent M Coscino**   vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
**Paul J Couchot**   pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
**Jonathan S Dabbieri**   dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
**Ana Damonte**   ana.damonte@pillsburylaw.com
**Vanessa S Davila**   vsd@amclaw.com
**Melissa Davis**   mdavis@shbllp.com
**Daniel Denny**   ddenny@gibsondunn.com
**Caroline Djang**   crd@jmbm.com
**Donald T Dunning**   ddunning@dunningLaw.com
**Meredith R Edelman**   meredith.edelman@dlapiper.com
**Joseph A Eisenberg**   jae@jmbm.com
**Lei Lei Wang Ekvall**   lekvall@wgllp.com
**Richard W Esterkin**   resterkin@morganlewis.com
**Marc C Forsythe**   kmurphy@goeforlaw.com
**Alan J Friedman**   afriedman@irell.com
**Steven M Garber**   steve@smgarberlaw.com
**Christian J Gascou**   cgascou@gascouhopkins.com
**Barry S Glaser**   bglaser@swjlaw.com
**Robert P Goe**   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
**Eric D Goldberg**   egoldberg@stutman.com
**Richard H Golubow**   rgolubow@winthropcouchot.com, pj@winthropcouchot.com
**Michael J Gomez**   mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
**Kelly C Griffith**   bkemail@harrisbeach.com
**Matthew Grimshaw**   mgrimshaw@rutan.com
**Kavita Gupta**   kgupta@winthropcouchot.com
**Asa S Hami**   ahami@morganlewis.com
**Michael J Hauser**   michael.hauser@usdoj.gov
**D Edward Hays**   ehays@marshackhays.com
**Michael C Heinrichs**   mheinrichs@omm.com
**Harry D. Hochman**   hhochman@pszjlaw.com, hhochman@pszjlaw.com
**Jonathan M Hoff**   jonathan.hoff@cwt.com
**Nancy Hotchkiss**   nhotchkiss@trainorfairbrook.com
**Michelle Hribar**   mhribar@rutan.com
**John J Immordino**   john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
**Lawrence A Jacobson**   laj@cohenandjacobson.com

Michael J Joyce     mjoyce@crosslaw.com
Stephen M Judson     sjudson@fablaw.com
Kaleb L Judy     ecf@kleinlaw.com, kjudy@kleinlaw.com
Steven J Kahn     skahn@pszyjw.com
Sheri Kanesaka     sheri.kanesaka@bryancave.com
David I Katzen     katzen@ksfirm.com
Christopher W Keegan     ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
Payam Khodadadi     pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
Irene L Kiet     ikiet@hkclaw.com
Claude F Kolm     claude.kolm@acgov.org
Mark J Krone     mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
David B Lally     davidlallylaw@gmail.com
Leib M Lerner     leib.lerner@alston.com
Peter W Lianides     plianides@winthropcouchot.com, pj@winthropcouchot.com
Charles Liu     cliu@winthropcouchot.com
Kerri A Lyman     klyman@irell.com
Mariam S Marshall     mmarshall@marshallramoslaw.com
Robert C Martinez     rmartinez@mclex.com
Michael D May     mdmayesq@verizon.net
Hutchison B Meltzer     hmeltzer@wgllp.com
Krikor J Meshefejian     kjm@lnbrb.com
Joel S. Miliband     jmiliband@rusmiliband.com
James M Miller     jmiller@millerbarondess.com, vgunderson@millerbarondess.com
Louis R Miller     smiller@millerbarondess.com
Craig Millet     cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
Randall P Mroczynski     randym@cookseylaw.com
Mike D Neue     mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
Robert Nida     Rnida@castlelawoffice.com
Henry H Oh     henry.oh@dlapiper.com, janet.curley@dlapiper.com
Sean A Okeefe     sokeefe@okeefelc.com
Robert B Orgel     rorgel@pszjlaw.com, rorgel@pszjlaw.com
Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com
Daryl G Parker     dparker@pszjlaw.com
Penelope Parmes     pparmes@rutan.com
Ronald B Pierce     ronald.pierce@sdma.com
Katherine C Piper     kpiper@steptoe.com
Cassandra J Richey     cmartin@pprlaw.net
Debra Riley     driley@allenmatkins.com
James S Riley     tgarza@sierrafunds.com
Todd C. Ringstad     becky@ringstadlaw.com
R Grace Rodriguez     ecf@lorgr.com
Martha E Romero     Romero@mromerolawfirm.com
Ronald Rus     rrus@rusmiliband.com
John P Schafer     jschafer@mandersonllp.com
John E Schreiber     jschreiber@dl.com
William D Schuster     bills@allieschuster.org
Christopher P Simon     csimon@crosslaw.com
Wendy W Smith     wendy@bindermalter.com
Steven M Speier     Sspeier@Squarmilner.com, ca85@ecfcbis.com
Steven M Speier (TR)     Sspeier@asrmanagement.com, ca85@ecfcbis.com
Michael St James     ecf@stjames-law.com
Michael K Sugar     msugar@irell.com
Cathy Ta     cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
David A Tilem     davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
James E Till     jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
Carol G Unruh     cgunruh@sbcglobal.net

**Annie Verdries**    verdries@lbbslaw.com
**Jason Wallach**    jwallach@gladstonemichel.com
**Joshua D Wayser**    , kim.johnson@kattenlaw.com
**Marc J Winthrop**    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
**David M Wiseblood**    dwiseblood@seyfarth.com
**Brett K Wiseman**    bwiseman@aalaws.com
**Dean A Ziehl**    dziehl@pszjlaw.com, dziehl@pszjlaw.com
**Marc A. Zimmerman**    joshuasdaddy@att.net