PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Robert B. Orgel (CA Bar No. 101875)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760

WEIL, GOTSHAL & MANGES LLP
Edward Soto (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone:  (305) 577-3125
Facsimile:  (305) 374-7159

Attorneys for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings, LLC and OVC Holdings, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Palmdale Hills Property, LLC, and its Related Debtors,<br><br>Jointly Administered Debtors<br>and Debtors-In-Possession | Case No.: 8:08-bk-17206-ES<br>Chapter 11<br>Jointly Administered Case Nos.<br><br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES |

Affects:

☐ All Debtors
☑ Palmdale Hills Property, LLC
☑ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☑ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☑ SunCal Emerald Meadows LLC
☑ SunCal Bickford Ranch, LLC
☑ Acton Estates, LLC
☐ Seven Brothers LLC
☑ SJD Partners, Ltd.
☑ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☑ SCC Communities LLC
☑ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC
☑ LB-L-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☑ LB-L-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☑ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance, LLC
☑ SunCal Oak Knoll, LLC

**OBJECTION OF LEHMAN CREDITORS TO FIRST AMENDED DISCLOSURE STATEMENTS DESCRIBING THE AMENDED CHAPTER 11 PLANS OF SUNCAL PLAN PROPONENTS**

**Disclosure Statement Hearing:**
Date:   July 22, 2011
Time:   10:00 a.m.
Place:  Courtroom 5A
411 West Fourth Street
Santa Ana, CA  92701

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS[1]

**Page No.**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. FACTS ......................................................................................................................... 4

III. DISCUSSION .............................................................................................................. 5

    A.    The Amended SunCal Discos Should Not Be Approved Because the Amended SunCal Plans Are Patently Unconfirmable ........................................................ 5

    B.    The Amended SunCal Discos Do Not Contain Adequate Information Pursuant to Section 1125 of the Bankruptcy Code ...................................................... 7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] This brief does not exceed the page limitations of LBR 9013-2(b). The brief and Exhibit A, which arguably could have gone in the body of the brief, do not exceed 35 pages. Exhibit B and Exhibit C are operative documents that could not be included in the body of the brief and, thus, their pages are excluded in the page calculation.

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Eastern Maine Elec. Co-op., Inc.*,
    125 B.R. 329 (Bankr. D. Me. 1991) ................................................................. 5

*In re 266 Washington Assocs.*,
    141 B.R. 275 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992) ................. 6

*In re Adelphia Communications Corp.*
    361 B.R. 337 (S.D.N.Y. 2007) ....................................................................... 7

*In re Allied Gaming Mgmt., Inc.*,
    209 B.R. 201 (Bankr. W.D. La. 1997) ............................................................. 5

*In re Atlanta West VI*,
    91 B.R. 620 (Bankr. N.D. Ga. 1988) ............................................................... 6

*In re Beyond.com Corp.*,
    289 B.R. 138 (Bankr. N.D. Cal. 2003) ............................................................ 5

*In re Brotby*
    303 B.R. 177 (9th Cir. B.A.P. 2003) ............................................................... 7

*In re Felicity Assocs., Inc.*,
    197 B.R. 12 (Bankr. D.R.I. 1996) ................................................................... 6

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ......................................................................... 6

*In re Philadelphia Newspapers, LLC*,
    599 F.3d 298 (3d Cir. 2010) .......................................................................... 6

*In re River Road Hotel Partners, LLC*,
    --- F.3d ---, 2011 WL 2547615 (7th Cir. 2011) ................................................ 6

*In re Smith*
    123 B.R. 863 (Bankr. C.D. Cal. 1991) ............................................................ 7

**Statutes**

11 U.S.C. § 1123(a)(4) .................................................................................... 7
11 U.S.C. § 1125 ............................................................................................ 7
11 U.S.C. § 1125(b) ....................................................................................... 6
11 U.S.C. § 1129 ............................................................................................ 6
11 U.S.C. § 1129(a)(5)(A)(II) .......................................................................... 7
11 U.S.C. § 1129(b)(2)(A) .............................................................................. 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, AND

2   ALL CREDITORS AND OTHER PARTIES IN INTEREST HEREIN:

3        Lehman Commercial Paper, Inc. ("LCPI"), Lehman ALI, Inc. ("ALI"), Northlake Holdings,

4   LLC ("Northlake Holdings"), and OVC Holdings, LLC ("OVC Holdings" and, collectively, with

5   LCPI, ALI and Northlake Holdings, the "Lehman Creditors")[2] hereby file this objection (the

6   "Objection") to the eight pending disclosure statements (the "Amended SunCal Discos") filed by

7   SCC Acquisitions, Inc. ("Acquisitions") and the Voluntary Debtors,[3] as plan proponents (the

8   "SunCal Plan Proponents") in support of, and describing eight related plans (the "Amended SunCal

9   Plans").

**I.**

**PRELIMINARY STATEMENT**

12       The SunCal Plan Proponents need to address the issues raised by this Court in its tentative

13  ruling issued prior to the disclosure hearing held on May 13, 2011, which the Amended SunCal

14  Discos fail to do in several material respects.  A variety of other important deficiencies in the

15  Amended SunCal Discos and/or Amended SunCal Plans are outlined below and detailed in **Exhibit**

16  **A**, which is a chart (the "Objection Chart") containing specific comments and objections of the

17  Lehman Creditors that are sequenced in accordance with the applicable section numbers in the

18  Amended SunCal Discos.  Where the Lehman Creditors' objection duplicates the comments of the

19  Court made in its tentative ruling issued in connection with the May 13, 2011 disclosure hearing,

20  those objections, using the language of the Court, appear in the chart in **_bold italicized font_**.

21  Further, as offered by the Court in connection with the May 13, 2011 disclosure statement hearing,

22  the Lehman Creditors' desire to have the SunCal Plan Proponents disseminate in their solicitation

[2]  The Lehman Creditors are filing this Objection in their own capacities as lenders as well as in their capacities as agents under the Lehman Loans.

[3]  The "Voluntary Debtors" in these cases are those for which the debtors remain debtors-in-possession and are as follows: Palmdale Hills Property, LLC (Main Case) (Case No. 8:08-17206-ES); Acton Estates LLC (Case No. 8:08-17236-ES); Kirby Estates, LLC (Case No. 8:08-17246-ES); North Orange Del Rio (Case No. 8:08-17574-ES); SCC Communities, LLC (Case No. 8:08-17573-ES); SCC/Palmdale, LLC (Case No. 8:08-17224-ES); Seven Brothers, LLC (Case No. 8:08-17240-ES); SJD Development Corp. (Case No. 8:08-17245-ES); SJD Partners, Ltd. (Case No. 8:08-17242-ES); SunCal Beaumont Heights, LLC (Case No. 8:08-17209-ES); SunCal Bickford Ranch LLC (Case No. 8:08-17231-ES); SunCal Communities I, LLC (Case No. 8:08-17248-ES); SunCal Communities III, LLC (Case No. 8:08-17249-ES); SunCal Emerald Meadows LLC (Case No. 8:08-17230-ES) ; SunCal Johannson Ranch, LLC (Case No. 8:08-17225-ES); SunCal Summit Valley LLC (Case No. 8:08-17227-ES); and Tesoro SF, LLC (Case No. 8:08-17575-ES).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    packages "NO" Letters from the Lehman Creditors.  A version thereof to be sent with SunCal's

2    Plans for the Trustee Debtors is attached hereto as **Exhibit B** and a version to be sent with SunCal's

3    Plans for the Voluntary Debtors is attached hereto as **Exhibit C**.

4    The prior objections[4] and Court comments made at or before the disclosure statement

5    hearing held May 13, 2011 afforded the SunCal Plan Proponents the opportunity to address specific

6    requirements of this Court (and criticisms or requests of creditors).  Yet, more than anything, the

7    SunCal Plan Proponents appear to have complicated matters, *e.g.*, they have doubled the number of

8    plans on file, increased the number of illusory "Reliance Claim" offers being made, and organized

9    the Debtors into new plan groups (again without explaining their rationale for the groupings).  A

10   key and critical deficiency is the inadequate disclosure regarding plan funding and feasibility.  In

11   the Lehman April 2011 Objection, the Lehman Creditors repeatedly complained that the SunCal

12   Proponents had failed to identify the funding source for the SunCal plans (*e.g.*, Art. III. A. 2 &3).

13   The Court itself provided written comments in its tentative ruling for the May 13, 2011 disclosure

14   statement hearing that feasibility was inadequately addressed and that "the description of Litco . . .

15   is inadequate to provide creditors with adequate information regarding the source of funds."

16   Nonetheless, the SunCal Plan Proponents still have not revealed who will be funding their plans,

17   the extent of such person's financial capabilities, and the terms and conditions of any such funding.

18   Soliciting votes for competing plans based on a speculative funding proposition is improper and

19   unfair.

20   The SunCal Plan Proponents instead compound that inadequacy in the Amended SunCal

21   Plans and Amended SunCal Discos by increasing the number of Debtors for which their plans

22   purport to make unfunded "offers" to Reliance Claimants or other creditors.  Specifically, three

23   Amended SunCal Plans now on file affecting eight Debtors contain a "right to sell" for Reliance

24   Claimants.  The two plans for the four Group I and Group II Trustee Debtors each include a so-

---

25   [4] On April 29, 2011, the Lehman Creditors filed the *Objection of Lehman Commercial Paper Inc., Lehman ALI, Inc.,
     Northlake Holdings, LLC and OVC Holdings, LLC to Disclosure Statements Describing Chapter 11 Plans Filed by*

26   *SunCal Plan Proponents [Groups I-IV Debtors]* [Docket No. 2026] (the "Lehman April 2011 Objection").  The Court
     is familiar with and already considered the Lehman April 2011 Objection in connection with the May 13, 2011

27   disclosure hearing.  Many of the Lehman Creditors' objections (and authorities therefor) applicable to the Amended
     SunCal Plans and Amended SunCal Discos are the same as the objections and authorities set forth in the Lehman

28   April 2011 Objection.  To a large extent, such objections and authorities will not be repeated in the body hereof and
     are incorporated herein by this reference.

called "offer" to purchase Reliance Claims (a "<u>LitCo Offer</u>") at 55% of allowed Reliance Claims. The plan for the four Group I Voluntary Debtors includes a Litco Offer at 60% of allowed Reliance Claims.  Also, the plan for the two Group IV Voluntary Debtors (the "<u>SJD Plan</u>") includes a contingent offer to increase creditor distributions to 50% if "Litco" reacquires the Pacific Point Project (without explaining under what process that acquisition might occur).

The current Litco Offers to purchase Reliance Claims <u>all appear illusory</u>. Nowhere is there any indication that Litco or anyone else is committing to make the purchases, pay the claims or has the funds to do so.  If no identified party is committing to make the Litco Offers or pay the claims or such party lacks the financial wherewithal to perform, the offers in these four plans are misleading and unfair.  *It is unfair to creditors, the Lehman Creditors, and the Trustee (particularly in a competing plan situation) to have the SunCal Plan Proponents solicit votes to their plans if there actually is no present committed offeror and absent disclosure enabling creditors to determine that such offeror has sufficient financial wherewithal to perform.*  Disclosure now of the SunCal Plan Proponents' funding source thus is essential. ***If the SunCal Plan Proponents don't have a current funding source for their apparently illusory Reliance Claims purchase offers (or for the 50% contingent offer under the SJD Plan) and cannot currently provide adequate disclosure that such person has sufficient financial resources committed to such offers, then those speculative offers should be required to be deleted from the SunCal Plan Proponents' plans[5].***

The SunCal Plan Proponents also should be required to address feasibility more broadly as to all of their plans by identifying who will pay the required effective date payments and where that payor will get the resources for doing so.  While the Amended SunCal Discos are not entirely clear on this point, it appears that SunCal affiliate, SCC Acquisitions, Inc., no longer is proposed to provide any plan funding.  The SunCal Plan Proponents' current plans and disclosure statements provide in the "feasibility" section that if the pending litigation doesn't fund effective date

---

[5] Subsequently, if an actual offeror with sufficient financial wherewithal ever comes forth, it can make its offer directly to creditors against the backdrop of an approved disclosure statement.  In any event, the plan process should not be slowed while the SunCal Plan Proponents try to find or firm up arrangements with some presently unidentified third party who actually could make the offers to buy Reliance Claims or other claims (which offers their plans imply already exist).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  payments, such obligations will be paid through a "Litco Plan Loan" from a third party source. This

2  disclosure simply is inadequate as to both of the funding alternatives.  As to the pending litigation

3  against the Lehman Creditors, if such litigation is prosecuted consistent with due process, it cannot

4  conceivably be completed by the confirmation hearing date of October 24, 2011 or any time shortly

5  thereafter and none of the Trustee, bond issuers, Voluntary Committee or the Lehman Creditors

6  favor material delay of the confirmation process.  As to third party funding, as noted above, the

7  SunCal Plan Proponents provide no information whatsoever as to the identity or even existence of a

8  third party funding source, never mind that there is no information regarding such person's

9  financial capabilities.

10      Although the Lehman Creditors want a fair process and appropriate disclosure from the

11  SunCal Proponents, their greatest concern is to maintain the current confirmation schedule for the

12  two competing plans of the Lehman Creditors and Trustee.  Yet, while no material delay should be

13  countenanced, to ensure fair and adequate disclosure and enable creditors to fairly evaluate their

14  choices, dissemination of the SunCal Plan Proponents' Amended SunCal Discos and solicitation of

15  votes on their Amended SunCal Plans should be permitted only after the SunCal Plan Proponents

16  promptly remedy the identified deficiencies.

17                                 **II.**

18                               **FACTS**

19      As in the case of the prior iterations of the plans proposed by the SunCal Plan Proponents,

20  the Amended SunCal Plans are structured as liquidation plans with creditor recoveries premised on

21  continued litigation against the Lehman Creditors, the sale of certain Projects, and, for some

22  Debtors, the so-called LitCo Offers.[6]

23

24

25

26

---

27  [6]  Additional relevant facts are set forth in the *Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders* [Docket No. 2247] and the *Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors* [Docket No. 2250] filed on June 20, 2011.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## DISCUSSION

**A.    The Amended SunCal Discos Should Not Be Approved Because the Amended SunCal Plans Are Patently Unconfirmable**

The Amended SunCal Discos should not be approved because the Amended SunCal Plans are patently unconfirmable as a matter of law.  "[I]f the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures." *Eastern Maine Elec. Co-op., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991); *see also In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("[N]otwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed") (citations omitted); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation"); *In re Felicity Assocs., Inc.*, 197 B.R. 12, 14 (Bankr. D.R.I. 1996) (analysis of such issues at this stage of the confirmation process has become a "standard Chapter 11 practice").  The primary reason to evaluate confirmability is to "avoid engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on a plan when the plan is unconfirmable on its face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

The Amended SunCal Plans violate section 1129 of the  Bankruptcy Code in several respects as more fully discussed above and in **Exhibit A** and summarized below:

- The Amended SunCal Plans are Not Feasible

- The Amended SunCal Plans' Treatment of the Lehman Creditors' Claims is Unconfirmable

    o  The Proposed Sales and Bidding Procedures are Circular, Ill-Defined, Unfair, and Tainted and Do Not Ensure that the Lehman Creditors Receive the Indubitable Equivalence of their Claims

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

o    The Amended SunCal Plans Propose to Improperly Strip the Lehman Creditors of Recourse Claims against the Plan Trust

o    Prohibiting All Credit Bidding Is Unnecessary and Impermissible[7]

o    The SJD Plan's Deemed Disallowance of the Lehman Creditors' Claims is Improper

• The Amended SunCal Plans Do Not Provide Adequate Means for their Implementation

o    The Amended SunCal Plans Must Provide Disputed Claims Reserves for Unsecured Claims

o    The SJD Plan Must Provide a Sale Process

• The Amended SunCal Plans' Treatment of Secured Claims is Unconfirmable

• The Amended SunCal Plans Violate the Absolute Priority Rule

• The Appointment of Acquisitions as the Plan Trustee Violates Bankruptcy Code Section 1129(a)(5)(A)(II)

• The Amended SunCal Plans' Treatment of Reliance Claims Fails to Satisfy the Requirement that Each Unconsenting Holder of a Claim in a Class Receive the Same Treatment

o    The LitCo Offers include a contingency that creditors must vote in favor of the applicable Amended SunCal Plans. Inclusion of this voting contingency represents a blatant effort to acquire votes in support of the Amended SunCal Plans. Because this contingency is unnecessary and results in the unequal treatment of Reliance Claimants, the treatment violates section 1123(a)(4) of the Bankruptcy Code, which requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4); *In re Adelphia Communications Corp.*, 361 B.R. 337, 361 (S.D.N.Y. 2007) (granting releases only to creditors that accepted plan was not equal treatment); *see also In re Brotby*, 303 B.R. 177, 185-86 (9th Cir. B.A.P. 2003) (reversing plan approval where single creditor in class would not receive distribution at same time as others); *In re Smith*, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991) (denying confirmation where all creditors in class paid except one creditor forced to litigate outside of bankruptcy case).

• The Amended SunCal Plans Violate the Best Interest of Creditors Test

---

[7] On June 28, 2011, the Court of Appeals for the Seventh Circuit issued a decision rejecting the majority opinions of its sister circuits in *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. June 28, 2010) and *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), and ruling that cramdown plans providing for the sale of encumbered assets at auction free and clear of liens must satisfy subsection (ii) of 1129(b)(2)(A). *See In re River Road Hotel Partners, LLC*, --- F.3d ---, 2011 WL 2547615 (7th Cir. 2011) (adopting the view of the dissenting Circuit Judge in *Philadelphia Newspapers*).

**B.      The Amended SunCal Discos Do Not Contain Adequate Information
            Pursuant to Section 1125 of the Bankruptcy Code**

Because the Amended SunCal Discos are materially inaccurate, misleading, and incomplete, the Court should deny their approval in their current forms. They fail to provide creditors with full and fair information. In addition, the Amended SunCal Discos and Amended SunCal Plans are replete with clerical errors or the inclusion of plan definitions or provisions that have no application to the plan in which they appear. Both of these problems only serve to magnify the other disclosure issues discussed herein and in the attached **Exhibit A**. Thus, the Amended SunCal Discos fail to satisfy section 1125 of the Bankruptcy Code in several material respects as set forth in **Exhibit A** and summarized below:

- The Funding Source(s) for the Plan and Litco Offers and Such Entity's Financial Wherewithal Must be Disclosed

- The SunCal Plan Proponents' Disclosure Concerning the Uncertainties and Merits of the Lehman Adversary Proceeding is Inadequate

- The Amended SunCal Discos Do Not Fully or Fairly Present Likely Distributions under the Amended SunCal Plans or the Timing of Any Such Distributions

- The Amended SunCal Discos Lack Adequate Information Concerning the Necessity, Availability and Effect of Partial Substantive Consolidation

- The Sales and Bidding Procedures Are Circular and Ill-Defined

- The Amended SunCal Discos Lack Adequate Information Concerning the Best Interests of Creditors Test and Alternatives

- The Amended SunCal Discos Do Not Provide Adequate Information Concerning Acquisitions' Conflicts of Interest and the General Release Being Granted to Acquisitions and its Affiliates

- The Amended SunCal Discos Lack Adequate Information Regarding Feasibility, Including the Financial Wherewithal of Acquisitions

- Several of the SunCal Plans Fail to Adequately Explain the Context, Purpose or Effect of the Plans:

  o  Group I Voluntary Debtor SunCal Emerald Meadows: SunCal values the primary asset, a Project, at $6.1 million. Presently, the Project appears to be encumbered by a third party lien of over $6 million that SunCal's plan and disclosure statement do not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

address. Moreover, certain of Emerald Meadows' creditors claim an equitable lien or constructive trust on parts of the Project. None of this is set forth or addressed.

    o   <u>Group III Voluntary Debtor North Orange Del Rio Land, LLC:</u> This Debtor appears only to have rights in an escrow and Lehman Creditors claim to be entitled to all of any remaining proceeds (and to recovery of certain prior distributions). The purpose and effect of the plan and these circumstances are not explained or addressed.

    o   <u>Group IV Voluntary Debtors SJD Partners, Ltd. and SJD Development Corp.:</u> SJD Partners only owns litigation claims. It would appear nothing can be distributed until that litigation is resolved. This circumstance and the purpose and effect of the plan are not explained or addressed. SJD Development Corp. only owns the interests in the insolvent SJD Partners and, according to SunCal, all claims against it are appropriately claims against SJD Partners. Why any plan is proposed for SJD Development Corp. is not explained or addressed.

WHEREFORE, the Lehman Creditors request that approval of the Amended SunCal Discos be denied.

Dated:    July 8, 2011          PACHULSKI STANG ZIEHL & JONES LLP

                                   <u>*/s/ Robert B. Orgel*</u>
                                   Richard M. Pachulski (CA Bar No. 90073)
                                   Dean A. Ziehl (CA Bar No. 84529)
                                   Robert B. Orgel (CA Bar No. 101875)
                                   10100 Santa Monica Blvd., Suite 1100
                                   Los Angeles, CA 90067-4100
                                   Telephone:  (310) 277-6910
                                   Facsimile:  (310) 201-0760

                                   -and-

                                   WEIL, GOTSHAL & MANGES LLP
                                   Edward Soto (admitted *pro hac vice*)
                                   1395 Brickell Avenue, Suite 1200
                                   Miami, FL 33131
                                   Telephone:  (305) 577-3125
                                   Facsimile:  (305) 374-7159

                                   Attorneys for Lehman Commercial Paper Inc.,
                                   Lehman ALI, Inc., Northlake Holdings, LLC
                                   and OVC Holdings, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

<u>EXHIBIT A</u>

Lehman Creditors' Objection to SunCal Amended Disclosure Statements

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 1. | Omission as to all Discos | <u>Omission re Plan Groupings:</u> SunCal fails to itself disclose to the Court or creditors the basis for its plan groupings. After doing their own analysis, the Lehman Creditors assume the following groupings have the following distinguishing characteristics:<br><br>**11 of 17 Voluntary Debtors ("VD")**<br><br>Group I: (4 Debtors):  Acton Estates, LLC; Palmdale Hills Property, LLC; SunCal Bickford Ranch, LLC; SunCal Emerald Meadows, LLC ("<u>Emerald Meadows</u>")<br><br>Lehman Commercial asserts direct interest in each Lehman Loan<br>60% Illusory Claims Purchase Offer & Auction of 4 Projects<br>Lehman/SunCal Litigation  Continues<br>Purpose of Plan as to Emerald Meadows unclear:  SunCal values Emerald Meadows Project at $6.1 million; No Discussion of 3rd Party $6 million+ Lien<br>No Discussion of other Creditors' asserted equitable lien & constructive trust Claims<br><br>Group II: (2 Debtors):  SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC<br><br>Lehman Commercial has pledge of Interests<br>No Lehman Creditor asserts a direct Claim or Lien<br>No Claims Purchase Offer; Auction of 2 Projects<br><br>Group III: (3 Debtors):  North Orange Del Rio Land, LLC; SCC Communities, LLC; & Tesoro SF, LLC<br><br>Lehman ALI asserts direct interests in the Loans<br>No Claims Purchase Offer; Auction of 2 Projects and Del Rio Escrow Rights<br>With no Project currently available to auction, purpose of Plan as to Del Rio unclear<br>Lehman/SunCal Litigation Continues<br><br>Group IV (2 Debtors):   SJD Development Corp.; SJD Partners, Ltd.<br><br>Lehman ALI asserts direct interests in the Loan<br>No Claims Purchase Offer; No Current Project<br>Lehman/SunCal Litigation Continues<br>Assumes: Project Recovered Through Litigation & Subsequently Sold<br>No Discussion of Project Disposition Process<br>With no Project currently available to auction, purpose of Plan is unclear<br><br>**All 9 Trustee Debtors ("TD")**<br>Group I: (2 Debtors):  SunCal Marblehead, LLC; SunCal PSV, LLC<br><br>Lehman ALI and Lehman Commercial assert direct interests in each Lehman Loan<br>55% Illusory Claims Purchase Offer & Auction of 2 Projects<br>Lehman/SunCal Litigation Continues | Disclosure |

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | Group II: (2 Debtors):  SunCal Oak Knoll, LLC; SunCal Torrance, LLC<br><br>Lehman ALI asserts direct interests in each Lehman Loan<br>55% Illusory Claims Purchase Offer & Auction of 2 Projects<br>Lehman/SunCal Litigation Continue<br><br>Group III: (4 Debtors):  LB/L SunCal Oak Valley, LLC; SunCal Heartland, LLC; Delta Coves Ventures, LLC & LB/L-SunCal Northlake, LLC<br><br>Lehman Commercial and/or Lehman ALI assert direct interest in the Lehman Loans<br>No Claims Purchase Offer; Auction of 4 Projects<br>Lehman/SunCal Litigation Continue<br><br>Fourth Plan (1 Debtor):  SunCal Century City, LLC<br><br>No Lehman Creditor presently asserts a Claim or Lien<br>No Claims Purchase Offer; No Project now owned; No auction<br>Debtor holds Cash; Lehman/SunCal Litigation Continue | |
| 2. | VD Group I §§ 2.1.13 & 6.2<br>VD Group II §§ 2.1.16 & 6.2<br>TD Group I §§ 2.1.13 & 6.2<br>TD Group II §§ 2.1.13 & 6.2<br>TD Group III §§ 2.1.13 & 6.2 | "Acquisitions Administrative Loan:" Plan funding is a key issue, is unclear and made confusing by this error. This definition has been omitted; however, references to the Acquisitions Administrative Loan still remain.  Is Acquisitions making a loan or not? If so, what cash resources does it have?  Clarification or clean up is needed. If the loan is being made, disclosure is needed regarding its amount, purposes, and a detailed explanation of the consideration therefor.  Any insider Administrative Claims to be allowed must be itemized and Court approved and/or verified by an independent trustee. There must also be disclosure of whether the repayment obligations of the Debtors are joint and several or independent and whether the Debtors will indemnify each other if one pays in excess of its share.<br><br>*J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "DS does not adequately describe this loan, as in the terms, if it will cover all administrative expenses, etc. Specifically, they fail to describe the size of the loan, security offered to Acquisitions in exchange, how Debtors will pay back this loan, etc."* | Disclosure; Confirmation; Clerical |
| 3. | VD Group I § 2.1.5<br>VD Group II § 2.1.5<br>VD Group III § 2.1.2<br>VD Group IV § 2.1.2<br>TD Group I § 2.1.2<br>TD Group II § 2.1.2<br>TD Group III § 2.1.2 | The definition of "Administrative Claim(s)" should be revised so that it does not include claims arising under section 507(a)(3) of the Bankruptcy Code because this is already a requirement under section 1129(a)(9)(A).  In addition, it is only applicable with respect to the Trustee Debtors, not the Voluntary Debtors.<br><br>*J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "omit claims under 507(a)(3), which is required under 1129(a)(9)(A)."* | Confirmation |
| 4. | VD Group I § 2.1.6<br>VD Group II § 2.1.6<br>VD Group III § 2.1.3<br>VD Group IV § 2.1.3<br>TD Group I § 2.1.3 | To ensure adequate means of implementation of the plans, provision must be made for paying claims incurred between confirmation and the effective dates. Thus, the definition of "Administrative Claims Bar Date" should be changed to some date after the Effective Date, not after the Confirmation Date. | Disclosure; Confirmation |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group II§ 2.1.3<br>TD Group III § 2.1.3 | | |
| 5. | VD Group I §§ 2.1.8-10<br>VD Group II §§ 2.1.8-10<br>VD Group III §§ 2.1.5-.7<br>VD Group IV § 2.1.7-10<br>TD Group I § 2.1.5-.10<br>TD Group II §§ 2.1.5-.10<br>TD Group III §§ 2.1.5-.10<br>SCC § 2.1.6-.11 | "Allowed:" The relating definitions are unclear as to whether any objections are permissible to the status of claims, (e.g., administrative, priority or secured), as opposed to their amount, or whether objections are permitted to claims scheduled as undisputed, unliquidated and contingent.  Such objections must be permitted and the definitions should be clear on this. | Confirmation; Disclosure |
| 6. | VD Group I §§ 2.1.25 & 2.1.27<br>VD Group II §§ 2.1.26 & 2.1.28<br>VD Group III §§ 2.1.19 & 2.1.21<br>VD Group IV §§ 2.1.19 & 2.1.21<br>TD Group I §§ 2.1.21 & 2.1.23<br>TD Group II §§ 2.1.19 & 2.1.21<br>TD Group III §§ 2.1.19 & 2.1.21<br>SCC § 2.1.20 | "Bond Claim(s)" and "Bond Indemnification Claim":  Disclosure not adequate because the use of the terms appears to be incorrect. By example only, the definitions of "Acquisitions" and "Elieff" describe them as purportedly liable on the "Bond Claims" while it appears that they are purportedly liable on what are described here as "Bond Indemnification Claims." | Disclosure; Confirmation; Clerical Error |
| 7. | SCC § 2.1.20 | "Bond Issuer" referenced in definition of "Bond Claim(s)" at 2.1.20 but not defined. | Disclosure |
| 8. | VD Group I §§2.1.4, .23, .135 & 10.2.D.1<br>VD Group II §§ 2.1.22, .74, & 10.2.C.2<br>VD Group III §§ 2.1.41,<br>TD Group I §§ 2.1.88, 2.1.102 & 10.2.C.2<br>TD Group II §§ 2.1.96, 2.1.101 & 10.2.C.2 | "Break-Up Fee:"  The definition was removed from the glossary of terms in exchange for break-up fees for each of the Projects to be sold under the applicable Plan.  The definition for each applicable Break-Up Fee should disclose its applicable percentage of the purchase price.  Break-Up Fees are unnecessary and disclosure is needed for their justification, particularly if an insider can qualify to receive one.  They should not be at the upper end of acceptable ranges.  All of the Break-Up Fees are at the upper end, 4.45%.  Disclosure is required as to why all other Projects have break up fees other than the Emerald Meadows Project.<br><br>More importantly, the "Minimum Sale Price" establishes the floor for the Opening Bid and presumably the Stalking Horse Bidder.  However, the values ascribed for the Minimum Sale Price for each of the Projects to be sold under SunCal's value opinion, which in most cases is far less than the Lehman Creditors' 2009 appraisal amounts. An artificially low sale price enables a party to receive a Break-Up Fee without providing the estates even the benefit of a reasonable offer.  Disclosure is | Disclosure; Confirmation |

3

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group III §§ 2.1.44, 2.1.65, 2.1.101, 2.1.104 & 10.2.C.2 | required of why Break-Up Fees should be payable for Project offers below SunCal's estimated values (if at all). This is particularly true because Acquisitions can selecting itself or an affiliate to have the Opening Bid and thus receive the Break-Up Fee being proposed supposedly as a necessary tool to attract bidders. In the end, has SunCal failed to describe why a Break-Up Fee is appropriate in these cases or provide any disclosure regarding the criteria or methodology used to make the determination.<br><br>An auction process resulting in anything less than fair market value cannot afford the Lehman Creditors the indubitable equivalence of their claims and liens.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same: "define 'Break Up fees' as 'Break-up Fee means a fee granted to a Stalking Horse Bidder up to three percent (3%) of the Opening Bid for a Project and up to five percent (5%) of the Opening Bid for other Plan Trust Assets'. A break up fee between 3-5% seems a little high, especially as each Property have different values, and may be separately bid for. The DS needs to provide additional information regarding the sales procedures."*** | |
| 9. | VD Group I § 2.1.37<br><br>VD Group II § 2.1.38<br><br>VD Group III § 2.1.30<br><br>VD Group IV § 2.1.29<br><br>TD Group I § 2.1.33<br><br>TD Group II § 2.1.31<br><br>TD Group III § 2.1.31<br><br>SCC § 2.1.26 | <u>"Claims Bar Date"</u> definition of March 31, 2009 ignores exceptions identified in Debtors' prior notice for governmental entity claims, rejection claims, etc. | Confirmation or Clerical Error |
| 10. | VD Group I §§ 2.1.38, 2.1.55, 12.2.1 & 13.2.1<br><br>VD Group II §§ 2.1.39, 2.1.56, 12.2.1 & 13.2.1<br><br>VD Group III §§ 2.1.31, 2.1.51, 12.2.1 & 13.2.1<br><br>VD Group IV §§ 2.1.29, 2.1.47, 12.2.1 & 13.2.1<br><br>TD Group I §§ 2.1.35, 2.1.45, 2.1.47, 2.1.80, 2.1.97, 12.2.1, 12.2.2, 13.2.1 & 13.2.2<br><br>TD Group II §§ 2.1.45, 2.1.47, 2.1.80, 12.2.1, 12.2.2, 13.2.1 & 13.2.2<br><br>TD Group III §§ 2.1.47, 2.1.49, 2.1.84, 12.2.1 & 12.2.2 | <u>No Disputed Claims Reserve</u>: The Plans fail to include adequate means for their implementation. The disputed claim mechanics contemplate reorganized Debtors with ongoing revenue from which to pay disputed claims as they are allowed, not a liquidating plan with no replenishing revenues. Thus, while the Plans appear to contemplate claims objections post-Confirmation, they lack any mechanic for delaying payment for potentially disputed Claims or reserving payment on initially Disputed Claims. In these liquidating plans, (a) if payments to holders of Disputed Claims are not delayed, holders of Allowed Claims would be diluted by improper payments and receive too little; and (b) if delayed payments for Disputed Claims are not put in a reserve, there may be nothing to pay them when their claims are allowed. Either circumstance would cause a failure of the best interests test in a liquidating, absolute priority case and result in disparate treatment of like claims within a class. | Confirmation; Feasibility |

4

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 11. | VD Group I § 2.1.44<br>VD Group II § 2.1.45<br>VD Group III § 2.1.36<br>VD Group IV§ 2.1.36<br>TD Group I § 2.1.40<br>TD Group II § 2.1.38<br>TD Group III § 2.1.38<br>SCC § 2.1.31 | <u>Contributing to the confusion in these plans and disclosure statements, "Contingent Bond Claims"</u> are defined as "Unmatured Bond Claims." First, this makes no sense. Maturity relates to whether a claim is "due." The contingent nature of a claim relates to whether a claim is "owing." Second, the capitalized term "Unmatured Bond Claims" is itself undefined. | Disclosure; Clerical Error |
| 12. | VD Group I § 2.1.50<br>VD Group II § 2.1.51<br>VD Group III § 2.1.46<br>VD Group IV § 2.1.42<br>TD Group I § 2.1.46<br>TD Group II § 2.1.46<br>TD Group III § 2.1.48<br>SCC § 2.1.37 | <u>"Disputed Liens"</u> appear to be defined too broadly by making all liens "disputed" that are "subject to a Disputed Secured Claim." In fact, Section 506(c) expressly provides that a lien cannot be avoided where the claim is disputed if disputed based on failure to file a timely proof of claim. Treating such Liens as "disputed" discriminates against their holders unfairly. The Debtors must either limit the definition or add a qualifier in usage of the term to avoid conflict with § 506(c). | Disclosure; Confirmation |
| 13. | VD Group I § 2.1.56<br>VD Group II § 2.1.57<br>VD Group IV § 2.1.48<br>TD Group I § 2.1.52<br>TD Group II § 2.1.52<br>TD Group III § 2.1.54<br>SCC § 2.1.43 | "The Plans violate Bankruptcy Code section 1129(a)(9) through the attempt to define away obligations to make payments to holders of administrative and priority claims when the plans become effective. If the auction process for Projects can begin after confirmation, then the Plan is "effective" at that time. Yet, the plans define the "Effective Date" as a later date to avoid having to fund effective date payments to administrative and priority creditors..<br><br>For VD Group I and II, the Effective Date is date is defined as one selected by SunCal Plan Proponents within 90 days after Confirmation Date or, if the actions contemplated under the applicable Plan are barred as a result of the Lehman Creditors' automatic stay, the SunCal Plan Proponents may extend for an additional 30- 60 days (depending upon the applicable Plan) to obtain relief from such stay if such stay applies.<br><br>For VD Group IV, the definition provides that the Effective Date will be tolled if "there is not stay pending appeal…" The SunCal Proponents should disclose why this tolling provision is not included in any other SunCal Disco. Additionally, presumably the word "not" should be deleted and it should be clarified that the "appeal" refers to an appeal of the Confirmation Order. | Confirmation |
| 14. | VD Group I § 2.1.64<br>VD Group II § 2.1.64<br>VD Group III § 2.1.58<br>VD Group IV § 2.1.54<br>TD Group I § 2.1.59<br>TD Group II § 2.1.59<br>TD Group III § 2.1.61 | The plans and disclosure statements are confusing due to clerical errors. For example, "Final Order" is defined as any order entered by the Bankruptcy Court. The definition makes the term "Final" superfluous. Either the term should be changed (e.g., "Order") or the definition should be modified to discuss finality. | Disclosure; Clerical Error |

5

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | SCC § 2.1.50 | | |
| 15. | VD Group I § 2.1.75<br>VD Group III § 2.1.87<br>VD Group IV § 2.1.78<br>TD Group I § 2.1.90<br>TD Group II § 2.1.88<br>TD Group III § 2.1.92<br>SCC § 2.1.70 | "Legal Rate:"  This term is not used, or used and not defined. | Clerical Error |
| 16. | VD Group I § 2.1.76<br>VD Group II § 2.1.79<br>VD Group III § 2.1.70<br>VD Group IV § 2.1.62<br>SCC §§ 2.1.57 | "Lehman Adversary Proceeding" should be qualified to carve out LCPI from the definition of Lehman Lenders and/or the Lehman Successors because LCPI is not currently a defendant in this proceeding. | Disclosure; Clerical Error |
| 17. | VD Group I §§ 2.1.78 & 6.3<br>VD Group II §§ 2.1.81 & 6.3<br>VD Group III §§ 2.1.72 & 2.1.79<br>VD Group IV § 2.1.72<br>SCC § 2.1.65 | "Lehman Disputed Administrative Loans:"  The definition should be revised to reflect that as of June 1, 2011 the Lehman Administrative Loans to all of the Trustee Debtors is approximately $39 million.  In VD Group III and IV Plans, this term is used but not defined (if not relevant to such Plan, should be removed entirely to avoid confusion).  (In the Voluntary Cases, the Lehman Creditors are owed roughly $66,000 for administrative loans as of June 1, 2011.)<br><br>(*See also* the objection below related to, inter alia, VD Group I § 5.3.2, where J. Smith's ruling is partially addressed.)<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "However, these administrative loans were post-petition financing which were approved by the court. Thus, it is unclear why the DS lists these loans as "disputed". The DS needs to explain why these are disputed considering they were court approved, etc."*** | Disclosure; Confirmation |
| 18. | VD Group I § 2.1.92<br>VD Group III § 2.1.82<br>VD Group IV § 2.1.75<br>TD Group I § 2.1.83<br>TD Group II § 2.1.83<br>TD Group III § 2.1.87 | "LitCo"  As discussed in greater detail below regarding Reliance Claims, there is insufficient disclosure regarding the source of funds, the management, and principals of this company.  In addition, the term should only be used in those Plans in which LitCo. Actually has a proposed role.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "The LitCo option is applicable  to Class 5 Claimants for Disclosure Statement I, and is not an option in Plan II."*** | Disclosure |
| 19. | VD Group I §§ 2.1.82 & 5.7.7<br>VD Group III § 2.1.83<br>TD Group I §§ 2.1.84 & 5.7.7<br>TD Group II §§ 2.1.84 & 5.7.4<br>TD Group III § 2.1.88 | "Litco Plan Loan:"  The definition and description lack appropriate disclosure and are vague.<br><br>The definition provides that a loan will be made by LitCo "to the extent necessary" to pay Administrative Claims, sale process costs and Plan Trust costs "if no other source is available."  It also provides that "LitCo will be capitalized with funds provided by a third party."  Section 5.7.7 states that (i) LitCo will be capitalized by "a third party capital partner with the funds necessary to fund this claims purchase" and (ii) that such loan is more fully explained in Article VII (VD Group I), however, there is no further explanation.  In VD Group III Plan, this term is defined but not used.  If not relevant to such plan, should be removed entirely to avoid confusion. | Disclosure; Confirmation |

DOCS_LA:241021.2 52063-001

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | SunCal must disclose the identity of the third party, any commitment letter or other agreement binding such third party to loan the funds, such party's financial wherewithal to fund LitCo with what will necessarily be substantial amounts necessary to pay the expenses set forth in the definition. SunCal also fails to and must disclose the amount of the loan, security, and repayment terms of such loan. | |
| 20. | VD Group I § 2.1.97<br>VD Group III 2.1.87<br>VD Group IV § 2.1.78<br>TD Group I § 2.1.90<br>TD Group II § 2.1.88<br>TD Group III § 2.1.92<br>SCC § 2.1.70 | "Maximum Distribution:"  This term is not used.  If not applicable, should be removed to avoid confusion. | Clerical Error |
| 21. | VD Group I § 2.1.100<br>TD Group I § 2.1.93<br>TD Group II § 2.1.91<br>TD Group III § 2.1.95 | "Minimum Increment" The definition contains references to incorrect plan groups (e.g., in the Voluntary Debtor Group I Disclosure Statement, there is a reference here to "Group II," where it should be "Voluntary Debtor Group I", etc.). This should be corrected. | Clerical Error |
| 22. | VD Group I § 2.1.101<br>VD Group II § 2.1.102<br>VD Group III § 2.1.90<br>TD Group I § 2.1.94<br>TD Group II § 2.1.92<br>TD Group III §  2.1.96 | "Minimum Sale Price"  The definition contains references to incorrect plan groups (e.g., in the Voluntary Debtor Group I Disclosure Statement, there is a reference here to "Group II," where it should be "Voluntary Debtor Group I", etc.). This should be corrected. | Clerical Error; Confirmation |
| 23. | VD Group I § 2.1.103<br>VD Group II § 2.1.104<br>VD Group III § 2.1.93<br>VD Group IV § 2.1.82<br>TD Group I § 2.1.96<br>TD Group II § 2.1.94<br>TD Group III § 2.1.98<br>SCC § 2.1.74 | "Net Sales Proceeds" The definition should be revised to remove reference to "Chapter 11 Trustee Fees" with respect to all Plans.  For the Voluntary Debtors, such fees will not be incurred – there is no Chapter 11 Trustee.  For the Trustee Debtors, this fee is a general expense of administration and is not payable for a secured creditors' collateral.  Moreover, to meet the indubitable equivalence standard, the list of "Post-Confirmation Expenses" must be further explained.  By example, expenses of unsuccessfully objecting to the claims of the Lehman Creditors cannot be deducted from the Lehman Creditors' collateral. Secured Creditors are entitled to specific enumeration of expenses to be paid from their collateral and/or hearing after the fact for approval thereof if such creditors have not provided consent to use their collateral to pay such expenses. | Clerical Error; Disclosure; Confirmation |
| 24. | VD Group I § 2.1.105<br>VD Group II § 2.1.106<br>VD Group III § 2.1.95<br>TD Group I § 2.1.98<br>TD Group II § 2.1.98 | "Opening Bid:"  Under all Disclosure Statements, all references to Projects should refer to the Projects that are associated with the applicable Plan.  As discussed in greater detail below with respect to the sale/bidding procedures, there is no discussion regarding (i) the criteria to be used to select a Stalking Horse Bidder or (ii) why the Minimum Sales Price is reasonable.  Without more disclosure, this definition, along with the balance of the sale/bidding procedures, cannot be approved and do not satisfy the fair and equitable requirement under section 1129(b) as they permit the SunCal Plan Proponents to select insiders or any other party as a Stalking Horse Bidder without any criteria and essentially guarantee | Clerical Error; Disclosure; Confirmation |

DOCS_LA:241021.2 52063-001

| Obj .# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group III § 2.1.105 | such parties payment of a Break-Up Fee. *J. Smith May 13, 2011 Tentative Ruling Regarding Same: "defines Opening Bid as 'the first Qualifying Bid accepted by the Debtor for any of the Plan Trust Assets.' However, this is the only detail given, there is no other explanation. As stated above, the Reply admits as such as states 'In the revised version of the Plans and the Disclosure Statements, the bid procedures shall be described in more detail.' Reply, pg. 8, Ins 3-4. However, until the DS's are revised to include all terms of the Sales Procedure, the DS cannot be said to contain "adequate information."* | |
| 25. | VD Group I §§ 2.1.113 & 2.1.115  VD Group II §§ 2.1.114 & 2.1.116  VD Group III §§ 2.1.101 & 2.1.103  VD Group IV § 2.1.91 & 2.1.93  TD Group I §§ 2.1.106 & 2.1.108  TD Group II §§ 2.1.105 & 2.1.107  TD Group III §§ 2.1.111 & 2.1.113  SCC §§ 2.1.80 & 2.1.82 | "Plan Documents" and "Plan Supplement" The definition for each is circular. The "Plan Supplement" should be s a subset of the "Plan Documents" and the proposed definitions have each being a subset of the other. In addition, the definition of "Plan Supplement" does not disclose what these documents might include other than stating that they will be filed with the Bankruptcy Court. | Disclosure; Confirmation; Clerical Error |
| 26. | VD Group I § 2.1.119  VD Group II § 2.1.120  VD Group III § 2.1.107  VD Group IV § 2.1.97  TD Group I § 2.1.112  TD Group II § 2.1.111  TD Group III § 2.1.117  SCC § 2.1.74 | "Plan Trustee" There is an inherent conflict of interest to have Acquisitions serve as Plan Trust given that this entity is the indirect parent of the Debtors. The SunCal Proponent's proposal to use an independent professional does not address the conflict and adds an unnecessary layer of administrative expenses. Besides the confirmation issue, the nature of the conflicts and potential areas of conflict need to be fully disclosed in the event they might affect plan voting. *J. Smith May 13, 2011 Tentative Ruling Regarding Same: "The 'Plan Trustee' is defined as Acquisitions. It goes without saying that this is troublesome as Acquisitions is the indirect parent of all Debtors. However, the Reply sates that they will hire an 'independent professional' to oversee the Sales Procedures. Reply, pg. 8, In 6. However, this does not solve the underlying issue."* | Disclosure; Confirmation |
| 27. | VD Group I § 2.1.120  VD Group II § 2.1.121  VD Group III § 2.1.108  VD Group IV § 2.1.98  TD Group I § 2.1.113  TD Group II § 2.1.112 | "Plan Trust Agreement" With the plans and disclosure statements now revealing so little, disclosure cannot be adequate unless the Plan Trust Agreement is provided with the Disclosure Statements. *J. Smith May 13, 2011 Tentative Ruling Regarding Same: "DS contemplates a Plan Trust Agreement, and states that "will be in substantially the form contained in the Plan Supplement". However, no Plan Trust Agreement was provided in the DS. Thus, in order to have adequate disclosure, the Plan Trust Agreement needs to be provided with the DS I."* | Disclosure; Confirmation |

8

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group III § 2.1.118<br>SCC § 2.1.87 | | |
| 28. | VD Group I § 2.1.122<br>VD Group II § 2.1.123<br>VD Group III § 2.1.110<br>VD Group IV § 2.1.100<br>TD Group I § 2.1.115<br>TD Group II § 2.1.114<br>TD Group III § 2.1.120<br>SCC § 2.1.89 | "Plan Trust Property:"  The definition does not provide any disclosure discussing why certain property would be excluded by the Plan Trustee (*i.e.*, Acquisitions).  The definition permits Acquisitions to exclude any property it chooses without any further discussion or disclosure of this broad discretion, the exercise of which prevents creditors from getting as much as they would in a liquidation, where assets would be excluded only where an independent party (trustee) assessed them to be burdensome to the estate.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same:*** *"defined Plan Trust Property as 'all property within the Chapter 11 estates of the Group I Debtors, other than property that is affirmatively excluded by the Plan Trustee.' However, just above this line is the definition of 'Plan Trust' which states 'the purpose of the Plan Trust will be to liquidate the Debtors' Assets and to otherwise consummate the Plan.' Thus, as this is a liquidating Plan, it does not make sense why certain property would be excluded and why."* | Disclosure; Confirmation |
| 29. | VD Group I § 2.1.130<br>VD Group II § 2.1.131<br>VD Group III § 2.1.118<br>TD Group I § 2.1.123<br>TD Group II § 2.1.122<br>TD Group III § 2.1.128 | "Qualifying Bidder:" This definition and the balance of the sale/bidding procedures do not adequately disclose the criteria to be used in the sale/bidding process.  To assure attracting the highest and best bids (to show indubitable equivalence and adequate means of the plan's implementation), there should be clarity that the deposits will be held in segregated, DIP trust accounts or in escrow and the terms of return thereof should be detailed in accordance with customary practice. Further, nothing prevents Acquisitions from selecting itself, another insider, or an entity who agrees to use Acquisitions as its developer/manager as a Qualifying Bidder itself.  Without disclosure of fair criteria, the sale procedures are not fair or equitable and indubitable equivalence cannot be shown.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same:*** *"The DS describes the 'Qualifying Bidder'. However as several objections noted, there are several different properties all with different values, etc. Thus, the application of one bid procedure to all the Properties would seem inappropriate. The Reply admits as such as states 'In the revised version of the Plans and the Disclosure Statements, the bid procedures shall be described in more detail.' Reply, pg. 8, Ins 3-4. Until that occurs, the bid procedures as described throughout the plan are not sufficient to be called 'Adequate Information.'"* | Disclosure; Confirmation |
| 30. | VD Group I §§  2.1.131 & 2.1.132<br>VD Group IV § 2.1.107 & 2.1.108<br>TD Group I §§ 2.1.124 & 2.1.125<br>TD Group II §§ 2.1.123 & 2.1.124<br>TD Group III §§ 2.1.129 & 2.1.130 | More disclosure is needed to ensure no unfair discrimination.<br><br>"Reliance Claim" and "Reliance Claimants:"  It is the Lehman Creditors understanding from SunCal that it does not necessarily intend to afford Reliance Claimants the "right to sell" at the amounts set forth on Exhibit 8 (*e.g.*, at least as to listed contingent claims and possibly others). Thus, while the listing of Reliance Claimants, in the appropriate context, may be beneficial to creditors, the following omissions or provisions make the current formulation of these definitions cause SunCal's disclosure statement to lack adequate disclosure and make the plan unfair and inequitable: (a) SunCal fails to indicate whether this list of Reliance Claimants is exhaustive or others can apply to have the treatment made applicable to them, (b) if Exhibit 8 is not an exhaustive list, there is no disclosure regarding the standards or process for a creditor to get onto the list; and (c) if Exhibit 8 is not an exhaustive list, no disclosure regarding the methodology or criteria for determining why some are or are not included on the list. | Disclosure; Confirmation |
| 31. | VD Group I §§ 2.1.56 & 2.1.136<br>VD Group II §§ 2.1.57 & | "Sale Period" The concept and definition is vague and does not provide adequate disclosure, rendering the Plans unfair and inequitable.<br><br>The "Sale Period" is defined as the period starting on Confirmation and ending on the Effective Date.  The "Effective Date" | Disclosure; Confirmation |

9

| Obj .# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | 2.1.134<br>VD Group IV § 2.1.109<br>TD Group I §§ 2.1.52 & 2.1.126<br>TD Group II §§ 2.1.52 & 2.1.125<br>TD Group III §§ 2.1.54 & 2.1.131 | is defined as a date selected by SunCal that is not later than 90 days after Confirmation, except in the case of actions stayed by the automatic stay imposed in the Lehman cases. With respect to those actions, SunCal has the right to extend the Effective Date for an additional 60 days to obtain relief from such stay. Thus, the definition of "Sale Period" is effectively the same as that provided under the previously filed disclosure statements, which provided that the sale period with respect to Projects subject to the Lehman Creditors' liens and claims was to commence on Confirmation and expire 60 days after the Effective Date. SunCal provides no explanation regarding the possibility that they are unable to obtain relief from stay during such 60-day extension period, whether because such request is denied or such request is granted but appealed. SunCal must provide for such contingencies and describe what actions they propose to take during such period. SunCal appears to contemplate that confirmation of a non-effective plan will authorize them to conduct the sale process short of closing the sale. If a plan provides that prior to its defined "Effective Date," a plan actually is effective, then the plan's definitions are too confusing and leave the plan unfair and inequitable.<br><br>Second, the Plan fails to provide adequate protection of any kind for any secured claim holders prior to the Effective Date, which for the Lehman Creditors may be at least 150 days after Confirmation.<br><br>For VD Group IV, the Sale Period for the Pacific Point Project expires on the Effective Date. It is unclear what happens if the property has not been "reacquired" by LitCo or the Plan Trustee by then. | |
| 32. | VD Group I § 2.1.140<br>VD Group II § 2.1.139<br>VD Group III § 2.1.124<br>TD Group I § 2.1.129<br>TD Group II § 2.1.128<br>TD Group III § 2.1.134 | "Stalking Horse Bidder" As with the other definitions relating to the sale/bidding procedures, and the procedures themselves, there is no disclosure regarding the methodology and criteria to be used when selecting a Stalking Horse Bidder and Opening Bid. Without such disclosure, the sale/bidding procedures permit the SunCal Plan Proponents to select an insider as the Stalking Horse Bidder. Moreover, there is no disclosure explaining why a Stalking Horse bidder is necessary or beneficial to the estates. The current sale/bidding procedures are not fair or equitable.<br><br>*J. Smith May 13, 2011 Tentative Ruling Regarding Same: "'Stalking Horse Bidder'. As stated above the Sales Procedures are not adequately disclosed. The Reply admits as such as states 'In the revised version of the Plans and the Disclosure Statements, the bid procedures shall be described in more detail.' Reply, pg. 8, lns 3-4. However, until the DS's are revised to include all terms of the Sales Procedure, the DS cannot be said to contain 'adequate information.'"* | Disclosure; Confirmation |
| 33. | VD Group I § 2.1.141<br>VD Group II § 2.1.140<br>VD Group III § 2.1.126<br>VD Group IV § 2.1.116<br>TD Group I § 2.1.131<br>TD Group II § 2.1.129<br>TD Group III § 2.1.136<br>SCC § 2.1.100 | "State Court Action" The reference to the State Court Action should disclose that this action was removed by the certain of the Lehman Creditors to the Bankruptcy Court and is the subject of a motion to remand by the plaintiffs therein and is being contested by the Lehman Creditors. | Disclosure |
| 34. | § 4.1.1 of all Discos | SunCal Management … has management contracts with respect to all of the Projects." The disclosure regarding this statement is not verified and is contested by the Lehman Creditors. The Lehman Creditors believe that certain of such alleged contracts are not in writing. Accordingly, the phrasing above is not accurate. The description should be revised to include that the Lehman Creditors contest this assertion. | Disclosure |
| 35. | VD Group I § 4.1.1 | "Group II" The SunCal Plan Proponents make numerous references to "Group II" in the Plan relating to Group I. All such | Disclosure; |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group I Global | references in this section, and throughout the Group I Plan should be corrected. | Confirmation; Clerical Error |
| 36. | VD Group I § 4.1.1<br>VD Group II § 4.1.1<br>VD Group III § 4.1.1<br>TD Group I § 4.1.1<br>TD Group II § 4.1.1<br>TD Group III § 4.1.1 | "Sales Procedures"  The disclosure statement describes the plan's sale/bidding procedures as "designed to yield the highest market price for these assets."  This statement should be qualified by adding that this is the belief of the SunCal Plan Proponents and that the Lehman Creditors dispute the same contending that such procedures do not provide sufficient disclosure regarding the applicable methodology and criteria, and that the Lehman Creditors believe such procedures are not fair and equitable and do not afford them the required indubitable equivalence of their claims and liens. | Disclosure; Confirmation |
| 37. | VD Group I § 4.1.3<br>VD Group II § 4.1.3<br>VD Group III § 4.1.3<br>VD Group IV § 4.1.3<br>TD Group I § 4.1.2<br>TD Group II § 4.1.2<br>TD Group III § 4.1.2 | "Primary Secured Creditors"  For disclosure purposes, SunCal Plan Proponent's narrative description is inconsistent with its description of the same claims in Exhibit 3 to the disclosure statement, referenced in section 4.1.3. This narrative is also inconsistent with the Lehman Creditors' assertions contained in their previously and currently filed disclosure statements. Accordingly, the description of the claim amounts filed by the Lehman Creditors should be changed to reflect the correct amount. | Disclosure |
| 38. | VD Group I §§ 4.2 – 5.7.6<br>VD Group II §§ 4.2 – 5.7.6<br>VD Group III §§ 4.2 – 5.4<br>VD Group IV §§ 4.2 – 5.3.2<br>TD Group I §§ 4.2, 4.3 & V<br>TD Group II §§ 4.2, 4.3 & V<br>TD Group III §§ 4.2, 4.3 & V<br>SCC § 4.2-5.4 | "Factual Circumstances," "Potential Preferential Transfers," and "Significant Events:"  The discussion in these pages is outdated, does not reflect the non-disputes events that have occurred over the past year, and drafted entirely from the perspective of the SunCal Plan Proponents.  In that regard, the discussion does not disclose that these are the beliefs of the SunCal Plan Proponents, that they could be incorrect, and that the Lehman Creditors have filed numerous pleadings that contest the SunCal Plan Proponents' description of the facts and claims.  Accordingly, the discussion is inadequate and misleading, especially in the context of competing plans to ensure a fair, voting process.  As written, these discussions reflect the inadequate disclosure regarding the SunCal plans.<br><br>By example only:<br><br>• In section 4.2.1, SunCal alleges as fact a series of unsubstantiated, opinion statements or factual statements with material omissions that lead it to, misleadingly, invite creditors "to take the measure of the parties who are now proffering the competing plans – the Lehman Lenders." In this one paragraph alone:<br><br>• SunCal asserts as fact that "most of the unsecured claims asserted against the Debtors were incurred at the insistence of the Lehman Lenders" and "a substantial part of claims that the Lehman Lenders failed to pay are being asserted against all of the Debtors."  Yet, by far, the largest unsecured claims in the cases, outside of the Lehman Creditors' deficiency claims, appear to be the contingent claims of Arch and Bond Safeguard based on their performance bonds issued for the benefit of municipalities. (*See* SunCal's Ex. 8 to disclosure statement.)  The Lehman Creditors believe that most of those commitments to the municipalities and issuances of performance bonds preceded mid-2007.  And, SunCal alleges that, "[p]rior to the market downturn in the middle of 2007, Lehman Representatives afforded SunCal substantial discretion in the management and development of the Projects." Thus, without more information or description, the above quoted statements appear substantially misleading and need clarification. | Disclosure |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | • Also, SunCal states as fact that "the Lehman Lenders failed to pay the claims of Creditors prepetition" without adding, as it does buried in section 5.4.1.7, that the Lehman Creditors deny having had or having any obligation to make such payments.  Further, SunCal states as fact that "the Lehman Lenders attempted to foreclose upon the Group I Project post-petition in order to deny the unsecured creditors any recovery" (emphasis added) without any basis for attributing such a ridiculous motive to the Lehman Creditors.  Finally, SunCal states as fact that "the Lehman Lenders attempted to destroy the Debtors' reorganization and sale efforts to (sic) manipulating LCPI's alleged automatic stay," (apparently referencing the unwinding of the Lehman Commercial repo to Fenway, which included certain of the subject loans), without mentioning, as SunCal appears to begrudgingly do later in section 5.5.1, that such unwinding of the repo was approved by the New York Bankruptcy Court.<br><br>• Most importantly, SunCal asks that creditors use this misleading recitation of alleged facts "to take the measure of the parties who are now proffering the competing plans – the Lehman Lenders." SunCal is explicit in its hope that this false and misleading "history will lead the Creditors to conclude, when weighing the merits of the Lehman Lenders (sic) Plan offer:  "Fool me once shame on you, fool me twice shame on me."<br><br>• In sections 4.2.2 to 4.3, SunCal sets forth allegations as if from a complaint without providing any disclosure of whether or the nature of the Lehman Creditors' disputes of the allegations. This is not disclosure.  SunCal must acknowledge the disputed nature of the allegations and, where appropriate, set forth the nature of the disputes.<br><br>• Section 5.1.2 should reference the pending application by the MB Firm regarding potential conflicts of interest among its clients. This section should be updated.<br><br>• In section 5.1.3, SunCal accuses the Lehman Creditors of filing a motion for stay relief on loans they didn't own and implies this means creditors cannot "trust" them.  Yet, SunCal fails to disclose the position taken by the Lehman Creditors with respect to these loans or to explain how granting stay relief to a party that allegedly doesn't hold a lien would benefit that party or how it would hurt the Debtors.  The Debtors attempt to prove too much.<br><br>• In section 5.3.2, of TD Group I Disco, SunCal refers to the DIP financing to the Trustee from the Lehman Creditors as a "forced loan" without mentioning that this Court approved the so-called "forced loan."  SunCal defines these loans as the Lehman Disputed Administrative Loans, and now discloses that the ground for objection is that Lehman made false representations about ownership of the loans *after* the  DIP loans were approved and admin. claims granted.  The first of the DIP loan order was entered in April 2009.  Section 5.4.1.4 provides that as soon as SunCal became aware of the purported ownership issue they filed a motion to strike the Lehman claims in May 2009, i.e., *before all but the very first* DIP orders were entered.  Thus, the additional disclosure regarding the grounds for objection is inaccurate and misleading.<br><br>• Sections 4.1.2 and 4.2.9 of the VD Group IV Disco describing the litigation, claims and related issues  regarding the Pacific Point Project is one-sided.  These issues are the subject of pending litigation (*i.e.*, the Lehman Adversary Proceeding and the State Court Action).  Thus, in order to provide adequate disclosure, SunCal must acknowledge the disputed nature of the allegations and, where appropriate, set forth the nature of the disputes.<br><br>As written, the disclosure is inadequate and misleading and fails to separate fact from opinion.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same: "Describes the history of SunCal & Lehman's relationship. I note that this DS was provided by the SunCal Proponents, however, it does not disclose the Lehman disputes to these*** | |

12

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | *allegations. In fact, it merely reads as a rant against Lehman."* | |
| 39. | VD Group I § 4.2.9<br>VD Group II § 4.2.9<br>VD Group IV § 4.2.9<br>TD Group I § 4.2.9<br>TD Group II § 4.2.9<br>TD Group III § 4.2.9 | <u>SJD Partners' Connection to Other Debtors:</u>  "This course of conduct [of Lehman ALI and LV Pacific Point] is relevant [because] [t]he holders of bond claims against SJD Partners are asserting their massive claims against the estates of all of the Debtors, including the estates of the Group I Debtors. Accordingly, Lehman ALI's wrongs against SJD Partners directly affect the Group I Debtors' cases."<br><br>This is misleading absent noting that SunCal also contends that the cross-indemnity claims of the bond issuers are voidable as fraudulent transfers, which, if correct, would undercut the foregoing contention. | Disclosure |
| 40. | VD Group III § 5.4.1.5 & Ex. 1 | <u>"Del Rio CFD Bond Proceeds:"</u> The Debtors' Projects and other assets, including the Del Rio CFD Bond proceeds,  are identified in Ex. "1." As SunCal is aware, the Lehman Creditors have attempted to investigate and get authority to obtain through discovery documents concerning Del Rio, its assets and/or their disposition. Exhibit 1 and the Disclosure Statement for the Group III: Voluntary Debtor Plan now include a statement that SunCal filed a motion on April 13, 2011 requesting that the Court approve certain payments made from the CFD Bond proceeds to insiders, but fails to mention that such motion was withdrawn on June 28, 2011.  The notice of withdrawal states that SunCal will file an amended  motion. The Lehman  Creditors will oppose any request for approval of such payments.  SunCal is aware of the grounds for the Lehman Creditors' opposition and should include a description of the relief to be sought in the amended motion and the Lehman Creditors' opposition both in Ex. 1 to the Disclosure Statements and in section 5.4.1.5 of the Disco for the Group III: Voluntary Debtor Plan. | Disclosure; Confirmation; Clerical Error |
| 41. | VD Group I § 5.4.1.7<br>VD Group II § 5.4.5<br>VD Group IV § 4.1.2 & 4.2.9<br>TD Group I § 5.4.1.6 | <u>"Lehman Recoupment Objection" and "State Court Action"</u>  As this section is included in the discussion above, the disclosure is inadequate.  In addition, there is no analysis or disclosure regarding the merits of the claims or the potential risk.  The only reference to the Lehman Creditors' view is a single sentence that they "dispute" the claims and believe they had the discretion whether to pay the vendor expenses.<br><br>*J. Smith May 13, 2011 Tentative Ruling Regarding Same: "DS's describe the Lehman Recoupment Claim Objections and State Court Action. However, the DS does not contain any analysis or discussion regarding the merits of these claims, or any potential risk. For instance, they should at least discuss what Lehman's contentions or how Lehman disputes these claims. "Adequate Information" would entail a clear summary of how Lehman disputes these claims, and the probability of success. Moreover, as it relates to Group I and II Debtors, the DS is silent that in order to proceed in this relief, the Moving Party would need to require relief from stay in the Lehman Commercial Bankruptcy Case. This may be a major impediment to success of the Recoupment Claims. "the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible', the court should exercise its discretion to refuse to consider the adequacy of disclosures." Eastern Maine Elec. Co-op, Inc.,  125 B.R. 329, 333 (Bankr. D. Me., 1991). Thus, the feasibility of the Plan is in such doubt to warrant denial of the Disclosure Statement."* | Disclosure; Confirmation |
| 42. | VD Group I § 5.1.3<br>VD Group II § 5.1.3<br>VD Group III § 5.1.3<br>TD Group I § 5.1.3<br>TD Group II § 5.1.3 | <u>Allegation that Lehman Creditors cannot be trusted:</u>  "Lehman ALI and LCPI – are asking these same creditors to vote on their plan and to "trust" them.<br><br>Besides the unfairness of the entire context of this, as noted above, this also is misleading absent identifying the sense in which the plans proposed or co-proposed by the Lehman Creditors ask creditors to "trust" them. | Disclosure |

13

| Obj .# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group III § 5.1.3 | | |
| 43. | VD Group I § 5.3.2<br>TD Group I § 5.3.2<br>TD Group II § 5.3.2<br>TD Group III § 5.3.2 | This is a key issue affecting Plan funding.<br><br>Lehman Administrative Loans"  To avoid having to come up with the cash to pay the almost $39 million in administrative claims owed to the Lehman Creditors, SunCal spuriously disputes them.  Focusing at this stage only on "disclosure," the disclosure provided is inaccurate, misleading and inadequate, particularly in one key respect.  SunCal argues that AFTER the administrative loans were made, the Lehman Creditors lied about their ownership of the prepetition loans (*e.g.*, they claim Fenway owned the loans and the Lehman Creditors knowingly lied).  Although the Lehman Creditors dispute this contention, what makes this allegation in bad faith is that it skirts the obvious.  The Lehman Creditors and Trustee filed financing motions on notice and got orders from this Court affording them administrative (and secured) claims long after the SunCal Proponents began complaining about the "Fenway issue."  Thus, the SunCal Proponents should be required to at least disclose what it is that prevented them from objecting to the financing motions with which they were served after they first alleged that Fenway was the true owner of the loans. With the SunCal Proponents having had notice and with an order from this Court having issued granting administrative (and secured) claims to the Lehman Creditors, the SunCal Proponents should not be permitted to solicit plans only made feasible (if feasible even then) by discounting this allowed administrative claims without basis. | Disclosure |
| 44. | VD Group I §§ 5.4.1.5-5.4.1.4 & 11.1.3<br>VD Group II § 5.4<br>VD Group III §§ 5.4.1-5.4.4<br>VD Group IV § 4.1.2<br>TD Group I § 5.4<br>TD Group II § 5.4<br>TD Group III § 5.4<br>SCC § 5.3 | Litigation Against Lehman Creditors:  SunCal must provide additional disclosure regarding the possibility that the various litigations commenced by SunCal against the Lehman Creditors may be unsuccessful, the anticipated time period for prosecution of such litigation, and the specific consequences to creditors in the event they are unsuccessful (*see, e.g.*, as applicable, section 11.1.3, which states that the Plan will fail in the event that the Lehman Administrative Loan Claims are allowed and SunCal has insufficient funds on the Effective Date to pay such claims on such date). | Disclosure |
| 45. | VD Group I § 5.4.1.6<br>VD Group II § 5.4.4<br>VD Group III § 5.4.1.4<br>TD Group I § 5.4.1.5<br>TD Group II § 5.4.1.5<br>TD Group III § 5.4.1.5 | 502(d) Motion:  This section does not disclose the variety of ways in which the Lehman Creditors may have their claims allowed in the event that SunCal obtained the relief sought in the 502(d) Motion.  In that regard, the Lehman Creditors could also seek temporary allowance of their claims for the purposes of voting on the Plans pursuant to Bankruptcy Rule 3018 or win the underlying litigation that the 502(d) Motion is based upon. | |
| 46. | VD Group I § 5.4.1.7<br>VD Group II § 5.4.5<br>TD Group I § 5.4.1.6<br>TD Group II § 5.4.1.6<br>TD Group III § 5.4.1.6 | Confirmation Hearing to be Used to Try Equitable Subordination Claims:  "[A]s the above facts and those that will adduced prior to and at the confirmation of the Plan will demonstrate, the Lehman Entities are in fact obligated to pay [the claims of the vendors who provided goods and services to the Projects and the claims asserted by the Bond Claimants]"<br><br>The Lehman Creditors believe that the trial on equitable subordination cannot and/or will not take place at the confirmation hearing and, thus, that the above statement either needs modification or elimination. | Disclosure |

DOCS_LA:241021.2 52063-001

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 47. | VD Group I § 5.4.1.7<br>VD Group II § 5.4.5<br>TD Group I § 5.4.1.6<br>TD Group II § 5.4.1.6<br>TD Group III § 5.4.1.6 | <u>Equitable Subordination by Recoupment</u>:  "A reduction in the amount of the Lehman Entities' secured claims by the amount of damages resulting from the Lehman Entities' breach of their obligations under these agreements;"<br><br>The SunCal Plan Proponents should be required to disclose that the Lehman Creditors contend:  (a) that any offset, if applicable, ultimately may result in a reduction of the debt amount, but such offset would occur <u>before</u> bifurcation of the debt into secured and unsecured claims, such that it only would affect the Lehman Creditors' deficiency claims; and (b) only equitable subordination on a creditor-by-creditor basis can re-order the priority of two allowed claims and the Lehman Creditors vigorously dispute the availability and applicability of equitable subordination in these cases. | Disclosure |
| 48. | VD Group I § 2.1.56<br>VD Group II § 2.1.57<br>TD Group I § 2.1.52<br>TD Group II § 2.1.52<br>TD Group III § 2.1.54 | <u>Delayed Effective Date</u>:  Delaying the "Effective Date" (defined for at least the Group I and Group II Debtors as when LCPI stay is lifted) impermissibly delays payment of priority and administrative claims payable under § 1129(a)(9) on the "effective date of the plan." Defining the "Effective Date" to be something other than the actual "effective date of the plan," cannot satisfy the mandate of § 1129(a)(9). | Confirmation |
| 49. | VD Group I § 5.5.1<br>VD Group II § 5.5.1<br>TD Group I § 5.5.1<br>TD Group II § 5.5.1<br>TD Group III § 5.5.1 | <u>"Lehman Fenway Transaction"</u>  The title of the description should strike the word "proposed" because this transaction is final.  In addition, the description should include a description of the transaction from the perspective of the Lehman Creditors. | Disclosure |
| 50. | VD Group I § 5.7.7<br>TD Group I § 5.7.7<br>TD Group II § 5.7.4<br>SCC § 10.21 | <u>"LitCo"</u>  These offers from Litco make no sense and should be deleted if there is no current offer from Litco. If there is no current offer from Litco, then the SunCal Proponents just HOPE that someone will come along and offer to buy claims (or fund the SJD Partners Plan). To keep these offers in the plans, there must be disclosure of (i) who is making a current offer (ii) information regarding LitCo's financial wherewithal or the financial wherewithal of the unidentified "third party" proposed to capitalize LitCo and (iii) evidence that LitCo is bound to make the offer to purchase the Reliance Claims (or purchase the Pacific Point Project) and incorporate such contract into the Plans as applicable.  If LitCo is not applicable to a Plan, then all references should be removed from the applicable Plan and Disclosure Statements. | Disclosure; Confirmation |
| 51. | VD Group I § 6.3<br>VD Group II § 6.2<br>TD Group I § 6.2<br>TD Group II § 6.2 | <u>"Treatment of Allowed Administrative Claims"</u>  Provides that such claims will be paid from the "Acquisitions Administrative Loan."  No such term is defined or used in the Plan.  Consequently, it is not clear how these claims will be paid or the source of the funds. | Disclosure; Confirmation |
| 52. | VD Group I § 6.3<br>VD Group II § 6.3<br>TD Group I § 6.3<br>TD Group II § 6.3<br>TD Group III § 6.3 | <u>"Lehman Administrative Loans"</u>  Provision for repayment of "Lehman Administrative Loans" is contrary to the express requirements under the Bankruptcy Code.  Section 1129(a)(9)(A) expressly requires that holders of administrative claims receive "on the effective date . . . cash equal to the allowed amount of such claim."  <u>This provision, instead, proposes that Lehman Administrative Claims are non-recourse</u>. It limits their payment to funds loaned to the Debtors by LitCo or from the Net Sales Proceeds from the applicable Projects.  No plan can be confirmed without providing for payment of administrative claims on the effective date in cash and not with funds derived from the Lehman Creditors' collateral.  In addition, the disclosure discussing why such loans are not payable given that they have been approved by the Bankruptcy Court and such orders have not been stayed or appealed is misleading.  See comment no. 43 above. | Disclosure; Confirmation |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 53. | VD Group I § 8.1<br>VD Group II § 8.1<br>VD Group III § 8.1<br>TD Group I § 8.1<br>TD Group II § 8.1<br>TD Group III § 8.1 | <u>Secured real property tax claims</u> in Classes 1.1 to 1.4 (as applicable) receive no payments during the "Sales Period," are proscribed from enforcing their liens during the Sales Period and are not afforded adequate protection. This cannot afford them the indubitable equivalence of their liens. Rights to adequate protection pending payment cannot be taken away absent clear provisions to ensure collateral value will be maintained.  Each Plan should refer to the Projects that are governed by applicable Plans (*i.e.*, Group I Plan should refer to Group II Projects, not Group I Projects, etc.). | Clerical Error; Disclosure; Confirmation |
| 54. | VD Group I §§ 8.2 & 10.2<br>VD Group III §§ 8.2 & 10.2<br>VD Group IV §§8.1 & 8.2<br>TD Group I §§ 8.2 & 10.2<br>TD Group II §§ 8.2 & 10.2<br>TD Group III §§ 8.2 & 10.2 | Project Sales Provisions re Lehman Secured Claims:<br><br>The treatment of Lehman Secured Claims cannot satisfy cramdown requirements.<br><br>§ 8.2(A):  Lehman Secured Claims in Classes 2.1 to 2.2 get no payments during the "Sale Period," and are not afforded adequate protection. This cannot afford them the indubitable equivalence of their liens. Although SunCal has deleted the provision proscribing the Lehman Creditors from enforcing their Liens during the Sale Period, it is still unclear whether it is SunCal's intention to permit such enforcement after Confirmation but prior to the Effective Date (i.e., the Sale Period).  By providing for an extended Effective Date, SunCal is holding the Lehman Creditors hostage to the SunCal automatic stay, which will remain in place until the Effective Date.  Rights to adequate protection pending payment cannot be taken away absent clear provisions to ensure collateral value will be maintained.<br><br>§ 8.2(A)(3):  SunCal has added a new provision, which states as follows:<br><br>"Notwithstanding the existence of Disputed Secured Claims and the Disputed Liens, the Plan Trustee may seek a release of the funds in the Net Proceeds Account subject to these claims and liens to pay the claims of other creditors in accordance with the terms of the Plan, if the Class 2.1 and 2.2 claimants" (i.e., the Lehman Creditors') interests in this property will remain adequately protected after this release." SunCal does not explain how the Lehman Creditors' interests in such funds could ever be adequately protected if those very funds are released.   A release of these funds to pay creditors junior to the Lehman Creditors will violate the absolute priority rule.<br><br>VD Group IV Plan § 8.1:  This section provides that the Disputed Lehman Secured Claim against SJD Partners is disallowed under 506(a) and (d) because there is no collateral to support such claims.  Such treatment is improper and, further, SunCal does not provide for treatment of such claims in the event the Pacific Point Project is reacquired.  In addition, section 506 determines the secured status of a claim, not its disallowance.<br><br><u>Sale Procedures:</u><br><br>§ 10.2(A):  Marketing. Secured creditors and other creditors have a right to be told and comment upon and Court must approve proposed marketing and advertising means, terms, cost, and effort, in addition to timing;<br><br>§ 10.2(B):  Now the "SunCal Parties" – an undefined term – have the right to accept an Opening Bid from a party who will become the Stalking Horse.  It is impossible to determine whether the SunCal Parties include Acquisitions.  It is improper for an interested, conflicted  party, Acquisitions, to control selection of the Opening Bid and the Stalking Horse.  SunCal provides that "[t]he entire process of marketing and selling the [  ] Projects will be overseen by an independent real estate professional with experience managing  sales of this kind.  This professional will participate in every material aspect of the sale effort, and he or she shall have the right to file an objection to the sale effort with the Court if the process is not proceeding in a fair and effective manner."  While the Lehman Creditors agree that an  independent trustee should control | Confirmation; Clerical Errors |

16

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | the sale process, this provision does not adequately disclose how SunCal will choose such real estate professional, whether parties in interest will have the ability to participate in such selection process or whether the Court will approve such retention..<br><br>§10.2(C) : In light of potential interest of Lehman Creditors in bidding and in accordance with customary practice for real estate sales in bankruptcy, it should be express that there will be no restrictive terms in the sales contracts, such as might limit bidding to a single contract that includes terms not necessary to maximize the value of the Projects. This should not be left to Acquisitions.<br><br>§ 10.2(C)(3): Practically, to enable the free and clear sale there must be a provision that enables getting a separate recordable order for that purpose. Moreover, there must be certain limitations on the "free and clear" nature of the sale and those should be more clearly identified. E.g., (a) statutory liens for secured real property tax claims to the extent securing amounts required to be paid under the Plan; (b) certain easements, covenants, conditions, restrictions and other matters of record affecting real property, leasehold estates or personalty or any interest therein (to be particularly described with reference to appropriate preliminary title reports), (c) the effect of any building and zoning regulations, now existing or hereafter in effect with respect to the relevant Project that are not violated by the current use of the Project, (e) oil, mineral and/or water rights, and claims of title thereto, shown by the public records, (f) discrepancies, conflicts in boundary lines, shortages in area or encroachments which an inspection or survey of the subject Project would disclose and (g) other liens to which the transferee of the property, in connection with such transfer, agrees to take subject.<br><br>Note:  At confirmation the Lehman Creditors will challenge these sales procedures on additional grounds.<br><br>For example, even if the disputes with the Lehman Creditors prevent some credit bidding, even the SunCal Proponents only allege that holders of Reliance Claims are to be paid from the Lehman Creditors' collateral before the Lehman Creditors. Thus, there is no reason to deny the Lehman Creditors credit bid rights with respect to the balance of their enormous claims after bidding cash for the amount of the alleged Reliance Claims against the particular Debtor. Credit bidding enables the Lehman Creditors to ensure that a fair price is obtained for their collateral. Further, because the Lehman Creditors will reject these plans and because the SunCal Proponents propose to deny credit bid rights to the Lehman Creditors (which the Lehman Creditors dispute), even if such denial is approved, cram down will require that the Lehman Creditors receive through plan treatment the indubitable equivalence of what their liens (and secured claims) would get them absent a bankruptcy. This means that any disposition of the Projects that yields less than fair market value is insufficient to meet this test.  Because the sales procedures put control of the sales process in the hands of an insider with economic interests in conflict with achieving the highest and best price – that is, the insider would like to develop the projects and might be incentivized to take a lower bid, these plans can never result in the Lehman Creditors being assured of getting the indubitable equivalence of their claims.<br><br>Omitted Provision for Project Sales on the Effective Date Requiring Proceeds to be Segregated and Liens to Attach to Proceeds:<br><br>(a) To provide the indubitable equivalence, it is insufficient to provide that the proceeds of the sales of the Projects all will be deposited into a Net Sales Proceeds account and that the disputed secured claims and liens will attach to the proceeds pending resolution of the disputes. There also must be provisions to provide adequate protection to the holders of disputed secured claims as to such account – that it will be held a U.S. Trustee approved institution, that the disputed secured creditors will be granted a lien on its contents which is perfected by the order confirming the plan and which they may require also be perfected by a control agreement (even if only enforceable on application to this Court) and that the account | |

17

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | holder will be an independent trustee or disclosed and qualified institutional escrow agent. | |
| | | (b) The account must be interest bearing with the disputed lien attaching thereto as well. | |
| | | § 8.2(D):  The definition of Plan Trust Property (presumably what is referred to as the "Plan Trust Assets" in this section because Plan Trust Assets is not a defined term) permits Acquisitions to exclude any asset it wishes to exclude. This is impermissible. Absent an order establishing that the asset is burdensome, failure to include it would deny creditor's indubitable equivalence and the plan would fail the "best interests" test. | |
| | | § 8.2(D)(1) – (5):  All of the comments as to § 8.2(A) apply. | |
| | | § 8.2 (D)(5):  The comments above as to the Net Sales Proceed account are equally applicable as to the account with respect to the sale of non-Project assets. | |
| | | § 8.2(E):  If  a non-Project Asset is not sold during the Sales Period it is abandoned,  but there is no explicit provision that the disputed secured creditor retains and may enforce its disputed claim and disputed lien, just a provision that the holder can pursue its claim "subject to a Final Order determining the … validity of the Disputed Liens." There is no provision requiring that the Plan Trustee maintain the Project or Asset or that otherwise affords a creditor adequate protection as to its collateral. Thus, the Plan Trustee can let the asset deteriorate while holding up the creditor by disputing its claim. | |
| | | ***J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "Plan describes the Treatment of Lehman's Disputed Claims and Disputed Liens states if the sale effort is successful, then Lehman will retain their interest in their Disputed Lien 'pending a Final Order(s) resolving the Allowance of applicable Disputed Claim(s) and determining the validity, priority, and extent of the applicable Disputed Plan Lien(s) against the applicable Plan Trust's Assets.' However, it does not appear that is the 'undubitable equivalent' of their claims, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii)."*** | |
| | | Sale Procedures in Group IV VD Disco/Plan with respect to Pacific Point Project: | |
| | | The Group IV VD Plan provides for a sale of the Pacific Point Project in the event such project is "reacquired" by the Plan Trustee or LitCo; however, no procedures or any disclosure whatsoever is provided with respect to how such sale will proceed, who will oversee such sale (*e.g.*, does SunCal propose that it will be Acquisitions or LitCo?), will it be subject to a separate motion and Court approval, etc.  Full disclosure of the sale procedures is needed. | |
| 55. | VD Group I § 8.3<br>TD Group I § 8.3<br>TD Group II § 8.3<br>TD Group III § 8.3 | The Treatment of Mechanic's Liens cannot satisfy cramdown requirements to the extent any actually are Secured Claims.<br><br>All references to Projects should refer to those Projects governed by the applicable Plan.<br><br>Mechanic's Lien Claims in Classes receive no payments during the "Sales Period," are proscribed from enforcing their liens and are not afforded adequate protection. This cannot afford them the indubitable equivalence or their liens nor meet cramdown requirements. Rights to adequate protection pending payment cannot be taken away absent clear provisions to ensure collateral value will be maintained.<br><br>The plan further provides that holders of Mechanic's Liens get no recourse to the Debtors. Because this class apparently includes Mechanic's Lien Claims, whether or not secured, to deny treatment to a creditors' deficiency claim would prevent the plan from satisfying the best interests test and would preclude cram down of this class. Moreover, affording a discharge to a Debtor in a liquidating Plan violates § 1141. | Clerical Error; Disclosure; Confirmation |
| 56. | VD Group I § 8.4 | Treatment of Bond Claims | Clerical Error; |

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
|  | TD Group I § 8.4<br>TD Group II § 8.4<br>TD Group III § 8.4 | All references to "Group II Projects" in the Voluntary Debtor Group I Plan need to be corrected so they refer to the applicable Projects.<br><br>Class 4.1 receives no payments during the "Sales Period", are proscribed from enforcing their liens during the Sales Period and are not afforded adequate protection. This cannot afford them the indubitable equivalence of their liens. Rights to adequate protection pending payment cannot be taken away absent clear provisions to ensure collateral value will be maintained. | Disclosure; Confirmation |
| 57. | VD Group I § 8.5<br>VD Group IV § 8.6<br>TD Group I § 8.5<br>TD Group II § 8.5<br>TD Group III § 8.5 | The Treatment of Priority Claims violates § 1129(a)(9).<br><br>Delaying the "Effective Date" As when the LCPI stay is lifted impermissibly delays payment of priority and administrative claims payable under § 1129(a)(9) on the "effective date of the plan." Defining the "Effective Date" to be something other than the actual "effective date of the plan," cannot satisfy the mandate of § 1129(a)(9). | Confirmation |
| 58. | VD Group I § 8.6<br>TD Group I § 8.6<br>TD Group II § 8.6<br>TD Group III § 8.6 | Treatment of "Reliance Claims"<br><br>In addition to the comments made above with respect to the definition for "Reliance Claims," the proposed treatment of such claims is not confirmable because it is dependent upon the vote of the holder of the Reliance Claim.  The SunCal Plan Proponents proposed to purchase Reliance Claims from those holders that vote in favor of the applicable Plan and pay such holders on the Effective Date.  However, all other holders of Reliance Claims that vote against the applicable Plan will only receive cash that is recovered from the various litigations against the Lehman Creditors that is equal to 1% of their claim.  Thus, holders of Reliance Claims that vote to accept the Plan will get paid 55%-60% of their claims on the Effective Date but holders that vote to reject the Plan will not get paid their 1% until the conclusion of the litigations, which means they might never receive payment if SunCal does not succeed.  The applicable Plans are not confirmable because the above-described discrimination violates section 1123(a)(4).  In addition, the SunCal Plan Proponents do not provide any disclosure or justification for the proposed unequal treatment.<br><br>(a) Disclosure is inadequate where holders of Reliance Claims are afforded a "right to sell" their claims without anywhere creating an obligation of Litco to buy the Claims or providing any evidence or information regarding who is making the "Litco Offer" and Litco's financial capabilities.<br><br>*J. Smith May 13, 2011 Tentative Ruling Regarding Same:  "However, the DS does not contain adequate information regarding what an 'Allowed Unsecured Claim' is. In fact, the DS does not provide a definition of 'Allowed Unsecured Claim' but does provide a definition of 'Allowed Secured Claims' and 'Allowed Claim'. Also it should be noted that the Plan will pay the Reliance Claims first upon recovery of funds, and parties holding other unsecured claims will receive nothing until the Reliance Claims are paid in full. This appears to be a violation of §1123(a)(4), as discriminates against unsecured creditors. However, it must be noted that this is a confirmation issue, and not necessarily a DS issue. Regardless, Debtors should explain this or at least amend the Plan to comply with §1123(a)(4)."*<br><br>*"Option A for any Class 5 claimant who votes in favor of the Plan will have the right to sell to LitCo all of their rights for $0.55 on the dollar. However, the description of Litco on pg. 15 is inadequate to provide creditors with adequate information regarding the source of funds, who LitCo is, etc. More information is warranted regarding the Litco offer."* | Disclosure; Confirmation |
| 59. | VD Group II § 8.5<br>VD Group IV § 8.6 | "Treatment of Holders of Allowed Interests"  There is no disclosure regarding the justification to cancel the interests in the applicable Debtors.  In that regard, there is no disclosure regarding the estimated recoveries of creditors that are structurally | Disclosure; Confirmation |

19

DOCS_LA:241021.2 52063-001

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group I § 8.5<br>TD Group II § 8.5<br>TD Group III § 8.5<br>SCC § 8.2 | senior to the repayment of the holders of interest.  Without such discussion, the disclosure is inadequate and the Plan is not confirmable. | |
| 60. | VD Group I §§ 9.3 & 9.6<br>VD Group IV §§ 9.3 & 9.6<br>TD Group I §§ 9.3 & 9.6<br>TD Group II §§ 9.3 & 9.6<br>TD Group III §§ 9.3 & 9.6<br>SCC §§ 9.3 & 9.6 | Who Can Vote:  The sections contain errant and inconsistent statements about who can vote.  One section states that Allowed Claims in an impaired Class can vote without noting that the Claims must receive something under the plan.  The later section for VD Group I and II corrects that but also includes a statement that all Classes can vote other than Classes 5.1, although in VD Group I it later notes that Classes 8.1 to 8.4 are deemed to vote to reject the Plan. This is confusing. | Clerical Error |
| 61. | VD Group I § 10.2<br>VD Group II § 10.2<br>VD Group III § 10.2<br>VD Group IV § 10.2<br>TD Group I § 10.2<br>TD Group II § 10.2<br>TD Group III § 10.2 | Omissions re Acquisitions' Conflicts and Compensation:  The Lehman Creditors, in their competing plans and disclosure statements, forthrightly acknowledge that they want to obtain conveyance of the Projects and provide for an independent trustee to be paid hourly to administer funds and claims for the creditors.  SunCal offers inadequate disclosure as to the interests, conflicts and motivations of Acquisitions (which, effectively, is Elieff). This omission is critical. Acquisitions, as Plan Trustee, will have exclusive authority to propose or not propose settling the Lehman Adversary Proceeding, discretion to select an Opening Bid and Stalking Horse Bidder and determine Qualifying Bidders and determine the Claims to object to. Yet, nowhere is there clear disclosure that SunCal has economic interests that are in conflict with other creditors (*e.g.*, an interest in finding a buyer or approving a settlement where SunCal is selected to develop/manage the Projects and in having someone assume/eliminate Elieff's and Acquisitions' Bond Issuer indemnity obligations). Nor is it disclosed that SunCal's economic interests may be satisfied prior to other creditors and, thereafter, it may have no economic interest in prosecuting the Lehman Adversary Proceeding that it is supposed to fund.  There also is no disclosure of the Plan Trustee's compensation. | Disclosure |
| 62. | VD Group I § 10.2<br>TD Group I § 10.2<br>TD Group II § 10.2<br>TD Group III § 10.2 | Sale Process  All references to Projects should refer to the Projects governed by the applicable Plan. | Clerical Error |
| 63. | VD Group I § 10.2<br>VD Group II § 10.2<br>VD Group III § 10.2<br>TD Group I § 10.2<br>TD Group II § 10.2<br>TD Group III § 10.2 | Sale Procedures<br>Nothing prevents Acquisitions from selecting itself, another insider, or an entity who agrees to use Acquisitions as its developer/manager as a Qualifying Bidder itself.  Without disclosure of fair criteria, the sale procedures are not fair or equitable.  There should be clarity that the deposits will be held in segregated, DIP trust accounts or in escrow and the terms of return thereof should be detailed in accordance with customary practice. | Clerical Errors; Disclosure; Confirmation |
| 64. | VD Group I § 10.2.B<br>VD Group II § 10.2.A<br>VD Group III § 10.2.A | "Stalking Horse Bidder"  There is no disclosure that explains the terms under which a Stalking Horse Bidder will be selected or why a Stalking Horse Bidder is necessary at all. | Disclosure; Confirmation |

20

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group I § 10.2.B<br>TD Group II § 10.2.B<br>TD Group III § 10.2.B | | |
| 65. | VD Group I § 10.2.D.2<br>VD Group III § 10.2.B.3<br>TD Group I § 10.2.C.3<br>TD Group II § 10.2.C.3<br>TD Group III § 10.2.C.3 | "Sale Free and Clear of Lien"  No disclosure regarding which provision under section 363(f) will provide the basis for the sale of Projects free and clear of liens and interest.  The prohibition against credit bidding is a direct violation of section 103(a)'s incorporation of section 363(k) application to cases governed by chapter 11 and *In Re River Road Hotel Partners, LLC*, ___ F.3d ___, 2011 WL 2547615 (7th Cir. June 28, 2011) (following the dissent in *Philadelphia Newspapers*). | Disclosure; Confirmation |
| 66. | VD Group I §§ 10.3, 10.8, & 10.9<br>VD Group II §§ 10.3, 10.8, & 10.9<br>VD Group III §§ 10.3, 10.8, & 10.9<br>VD Group IV §§ 10.3, 10.7, & 10.8<br>TD Group I §§ 10.3, 10.9, & 10.10<br>TD Group II §§ 10.3, 10.9, & 10.10<br>TD Group III §§ 10.3, 10.8, & 10.9<br>SCC §§ 10.3, 10.8, & 10.9 | Acquisitions as Plan Trustee:  Conflicts make this inappropriate. The SunCal disclosure fails to point out the conflicts. It also says the Plan Trust's expenses will include compensation payable to Acquisitions without disclosing that compensation. Acquisitions is aware of the Lehman Creditors view that it has asserted enormous administrative Claims in these Cases that appear wholly or largely unjustified.  By not identifying these conflicts and compensation going forward, prevents confirmation due to, *inter alia*, §§ 1129(a)(5)(A) & (B). | Disclosure; Confirmation |
| 67. | VD Group I § 10.8<br>VD Group II § 10.8<br>VD Group III § 10.8<br>VD Group IV § 10.7<br>TD Group I § 10.9<br>TD Group II § 10.9<br>TD Group III § 10.8<br>SCC § 10.7 | Acquisitions as Plan Trustee:  Acquisitions conflicts are not disclosed, but disqualify it from serving as Plan Trustee under Bankruptcy Code § 1129(a)(5)(A)(II). | Disclosure; Confirmation |
| 68. | VD Group I § 10.9<br>VD Group II § 10.9<br>VD Group III § 10.10<br>VD Group IV § 10.8 | Payment of Plan Trust Expenses:  There is no indication of which Debtor will pay for what or how or whether allocation will occur of the Plan Trust's expenses.  Substantive consolidation is inappropriate with evidentiary showings likely impossible here. There must be a disclosed mechanism for allocation of expenses among Debtors. | Disclosure; Confirmation |

21

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group I § 10.10<br>TD Group II § 10.10<br>TD Group III § 10.9<br>SCC § 10.8 | | |
| 69. | VD Group I § 10.11<br>VD Group II § 10.11<br>VD Group III § 10.12<br>VD Group IV § 10.10<br>TD Group I § 10.12<br>TD Group II § 10.12<br>TD Group III § 10.11<br>SCC § 10.10 | <u>Committees making Payment</u>:  This section says "the Committees" shall have the right to use certain funds to pay Allowed Claims. This is inconsistent with the rest of the Plan. | Clerical Error |
| 70. | VD Group I § 10.15<br>VD Group II § 10.15<br>VD Group III § 10.16<br>VD Group IV § 10.14<br>TD Group I § 10.16<br>TD Group II § 10.16<br>TD Group III § 10.15<br>SCC § 10.14 | <u>Liability Limitations for Acquisitions are Inappropriate</u>:  As Benjamin Cardozo famously wrote in *Meinhard v. Salmon*, 249 N.Y. 458 (1928):  "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." SunCal  proposes that Acquisitions be a go-forward, post-confirmation fiduciary, as Plan Trustee to the trust beneficiaries, including the Lehman Creditors, with no liability absent gross negligence or willful misconduct, and at times refers to only having to act in good faith. This is inappropriate, particularly here where the proposed Plan Trustee is a conflicted, insider being vested with broad discretionary powers that affect the Lehman Creditors and other creditors under the Plan, including tax valuations, abandonment of collateral, pursuit of Claims exclusive control of whether ever to on settle the Lehman Adversary Proceeding. | Confirmation |
| 71. | VD Group I § 10.18<br>VD Group II § 10.18<br>VD Group III § 10.19<br>VD Group IV § 10.17<br>TD Group I § 10.19<br>TD Group II § 10.19<br>TD Group III § 10.18<br>SCC § 10.17 | All references to section "1146(c)" should be changed to "1146(a)." | Clerical Error |
| 72. | VD Group I §§ 10.21 & 10.22.1<br>VD Group II §§ 10.21 & 10.22.1<br>VD Group III §§ 10.19 & 10.21.1 | <u>Acquisitions Conflicting Economic Interests</u>:<br><br>"<u>Acquisitions' Obligations</u>"  As noted above, there is an inherent conflict of interest by having Acquisitions as Plan Trustee that cannot be cured by having an independent professional.<br><br>Acquisitions should be required to disclose that if the Claims of it and its affiliates are disallowed, Acquisition's sole economic interest in such a settlement would be to require that it be afforded the ability to develop the Projects. Thus, creditors looking for an economic settlement would be ceding control of settlement to a party with a very different | Disclosure; Confirmation |

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | TD Group I §§ 10.21 & 10.22<br>TD Group II §§ 10.21 & 10.22<br>TD Group III §§ 10.20 & 10.21 | motivation.<br><br>Acquisitions' conflicted interests should preclude it from having exclusive control over whether a settlement with the Lehman Creditors ever would or could get proposed.<br><br>If Lehman's Creditors' claims are subordinated, which is the goal of this plan, then only they will benefit or be harmed by the allowance or disallowance of SunCal's Claims and they must have authority to bring and prosecute such objections. | |
| 73. | VD Group I § 10.21<br>VD Group II § 10.21<br>TD Group I § 10.22<br>TD Group II § 10.22<br>TD Group III § 10.21 | Release of Acquisitions is Inappropriate:  The "complete release" for Acquisitions and Affiliates, includes "Litigation Claims," which include claims objections. This is counter to the power afforded the Committees to object under Plan § 10.1 to the claims of Acquisitions and its affiliates.  Further, the consideration for the release is illusory.  Previous plans provided a complete release to Acquisitions in exchange for its promise to *fund* plan expenses.  Now that Acquisitions is no longer providing such funding, SunCal provides that such release is in exchange for  Acquisition's management of the Plan Trust's affairs and management, not funding, of  the payments to be made on the Effective Date and other post-confirmation expenses.  The disclosure statement provides, with no analysis or support whatsoever, that the "Group I: Trustee Debtors consider this a fair exchange, because they do not believe that they hold any material claims against Acquisitions."  In addition, no mention is made regarding whether they believe they have no material claims against other "Affiliates."<br><br>Providing Elieff and Acquisitions and their affiliates a release, including as to objections to their claims, without fair consideration (as well as providing them control of sales and claims objections) violates the "absolute priority rule" and causes the plans not to be "fair and equitable." | Confirmation |
| 74. | VD Group I § 10.23<br>VD Group II § 10.23<br>VD Group III § 10.21<br>VD Group IV § 10.21<br>TD Group I § 10.24<br>TD Group II § 10.24<br>TD Group III § 10.23<br>SCC § 10.21 | Clarity, Modification Needed for "Litigation Claims" provisions:  The "Litigation Claims" provision is confusing, lacks adequate disclosure and is inconsistent with other Plan provisions.<br><br>The section refers to the Plan Trust owning "Litigation Claims" (defined as claims belonging to a Debtor) "that are not purchased by Litco." But, while Reliance Claimants are afforded a "right to sell" their Reliance Claims to Litco, those claimants cannot sell what the Debtors own. This just makes no sense.<br><br>The section provides different treatment for Litigation Claims "valued at greater than" $100,000 without providing such valuation or means therefor.<br><br>For certain plans, treatment sections for Mechanic's Liens and Lehman Secured Claims provide (inconsistently) for automatic abandonment of Assets (which, by definition, include Litigation Claims) and this section requires written notice for abandonment of Litigation Claims valued at greater than $100,000. | Disclosure;<br>Confirmation;<br>Clerical Error |
| 75. | VD Group I § 10.23<br>VD Group II § 10.23<br>VD Group III § 10.21<br>VD Group IV § 10.21<br>TD Group I § 10.24<br>TD Group II § 10.24<br>TD Group III § 10.23<br>SCC § 10.21 | This section in each disco provides that "the Plan Trust shall retain all Litigation Claims . . . not purchased by Litco." Disclosure should be provided of the process under which LitCo is purchasing Litigation Claims and if LitCo is not purchasing any claims against the applicable Debtors, such references should be removed from the Disclosure Statements and Plans. | Clerical Error |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 76. | VD Group I § 10.24<br>VD Group II § 10.24<br>VD Group III § 10.22<br>VD Group IV § 10.22<br>TD Group I § 10.25<br>TD Group II § 10.25<br>TD Group III § 10.24<br>SCC § 10.22 | "Collection of Litigation Recoveries" This Plan section indicates that the Committees may deposit Litigation Recoveries in the applicable Distribution Accounts. Yet, it doesn't appear the Committees get control of anything other than insider claims objections. | Clerical Error |
| 77. | VD Group I § 11.1.2<br>TD Group I § 11.1.2<br>TD Group II § 11.1.2 | "Section 11.1.2" should reference the Projects that are governed by the applicable Plan. | Clerical Error |
| 78. | VD Group I § 11.1.3<br>VD Group III § 11.4<br>VD Group IV § 11.3<br>TD Group I § 11.1.3<br>TD Group II § 11.1.3<br>TD Group III § 11.1.3<br>SCC § 11.3 | "Adverse Outcome of Pending Litigation"  The disclosure does not adequate disclose Lehman's point of view and its arguments against the pending litigations.  There is also no disclosure regarding the merits of the claims other than for example stating they have "merits and that they will be sustained and that relief will be granted in the Lehman Adversary Proceeding" and the State Court Action.  More disclosure is necessary to ensure that creditors understand that effectuating the SunCal Plan Proponents' plans are dependent upon obtaining rulings in their favor with respect to these litigations. | Disclosure; Confirmation |
| 79. | § 12.1 of all Discos | Distribution Agent:  Acquisitions should not be excused from providing a fiduciary bond as to money for which it is a fiduciary. | Confirmation |
| 80. | § 12.2.2 of all Discos | Inappropriate Limitation on Acquisitions' Liability:  Limiting Acquisitions' liability to gross negligence or willful misconduct is inappropriate under this Plan.  Absent use of an independent trustee, with a conflicted insider involved, its fiduciary obligations should be as defined by California law and not limited.  See discussion of § 10.16. | Confirmation |
| 81. | VD Group I § 12.3.4<br>VD Group II § 12.3.4<br>VD Group III § 12.3.4<br>VD Group IV § 12.3.4<br>TD Group I § 12.3.4<br>TD Group II § 12.5<br>TD Group III § 12.3.4<br>SCC § 12.3.4 | "official claims agent for the Debtors:" This section refers to a claims agent of which the Lehman Creditors are unaware or whose retention was authorized by the Bankruptcy Court. | Clerical Error |
| 82. | § 13.1 of all Discos | Acquisitions Exclusive Control of Claim Objections; Absence of Disputed Claims Reserve:  If Lehman's Creditors' claims are subordinated, which is the goal of the plans, then only they will benefit or be harmed by the allowance or disallowance of any Claims and they must have authority to bring and prosecute such objections.  Acquisitions is not disinterested and is | Confirmation |

| Obj.# | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| | | not proposing, based on the liability limitations it proposes, to be held to fiduciary standards. Also, Acquisitions or its affiliates have a personal interest in allowance (and maximum payment by the Debtors) of the Bond Claims because they indemnified the Bond Issuers as to those debts. Additionally, no Disputed Claims Reserve is provided for. | |
| 83. | VD Group I § 15.1 & Ex. 7<br>VD Group II § 15.1 & Ex. 7<br>VD Group III § 15.1 & Ex. 7<br>VD Group IV § 15.1 & Ex. 7<br>TD Group I § 15.1 & Ex. 7<br>TD Group II § 15.1 & Ex. 7<br>TD Group III § 15.1 & Ex. 7<br>SCC § 15.7 & Ex. 7 | Best Interests<br><br>Exhibit 7 to SunCal Disco Group I includes a note referencing "Estimate of Allowed Non-Lehman Claims" but does not include such claim amounts in the charts (as opposed to, for example, Exhibit 7 to the SunCal Disco Group III, which does include such claim amounts in the charts). It is unclear whether the amounts are not included because no such claims exist for Group I Debtors. If that is the case, then the note should be removed from Exhibit 7 to the SunCal Disco I.<br><br>Exhibit 7 also does not differentiate between the projected return for holders of Reliance Claims and other General Unsecured Claims. SunCal's failure to disclose a projected return for Creditors holding General Unsecured Claims that are NOT "Reliance Claims" is a fatal omission. In light of there being competing plans, this is essential to enable fair voting.<br><br> The Best Interest Test discussion is exactly the same as that contained in the previously filed disclosure statements, and continues to be inadequate and misleading. The inclusion of the two charts in Exhibit 7, with no narrative, does not provide adequate disclosure regarding whether the best interests test is satisfied. Further, there is still no analysis of what recoveries would be under a chapter 7 liquidation. Simply stating that creditors are receiving "at least as much" as they would receive in chapter 7 is insufficient.<br><br>SunCal's statements regarding credit bidding are inaccurate and incomplete. Credit bidding is a protection for secured creditors to help ENSURE that any sales process achieves a "fair market value." The Lehman Creditors contend this assurance is essential here where the Lehman Creditors interest in achieving the highest and best price is in direct conflict with Acquisitions economic interest in being selected by the buyer as its partner to develop the Projects.<br><br>***J. Smith May 13, 2011 Tentative Ruling Regarding Same:***<br><br>***"The Liquidation analysis provided in all four Disclosure Statements needs to be revised. Specifically, Exhibit 7 to the Group 1 Disclosure Statement, is entitled 'Best Interest of Creditors Test Assuming the Debtors Prevail in Equitable Subordination." Disclosure Statement I, Ex. 7. A review of Exhibit 7 shows that it is incomplete. First, the column entitled "Estimate of Allowed Non-Lehman Entities Claims an Lehman Administrative Claims" have some sort of error as the amount listed in 99% of the entire column is "#REF". Thus, the Liquidation Analysis is incomplete. Also, the Best Interest of Creditors test does not differentiate between Reliance Claimants and other General Unsecured Creditors. Further, there is no analysis whatsoever what the creditors would have received in a Chapter 7 liquidation."***<br><br>***"Moreover, the Liquidation Analysis is premised on 'Assuming the Debtors Prevail in Equitable Subordination'. Disclosure Statement I, Ex. 7. However, no analysis is found in the 'Best Interest of Creditors' discussion on pg. 86-87 of the DS if Debtors do not prevail in the equitable subordination action. While, the SunCal Proponents may feel confident in the outcome, §1125 would dictate providing a best interest of creditors analysis assuming Debtors do not prevail. Moreover, the mere statement of 'under the Terms of the Plan, each individual creditors is receiving 'at least as much' as a creditor would receive in a Chapter 7' is inadequate. Debtors need to provide figures indicating as such. (Ie, what the analysis would be in a Chapter 7 liquidation). This becomes more important as Group III and IV Debtors are primarily being funded via recovered funds from the Adversary Proceedings and Claims Objections. In essence, this liquidation analysis was extremely poor in construction. Therefore, Debtors will have to provide a more thorough liquidation analysis."*** | Disclosure; Confirmation; Clerical Error |

| Obj. # | Applicable Disclosure Statement Citations | Description of Objection | Nature of Objection |
|---|---|---|---|
| 84. | § 15.2 of all Discos | <u>Feasibility</u>:  SunCal's plan lacks feasibility and/or adequate disclosure regarding it.  SunCal hinges feasibility on using Project sales and the "Litco Plan Loan" (which apparently replaces the previous "Acquisitions Administrative Loan") on the Effective Date to fund administrative and priority claims. First, Project sales can occur after the Effective Date.  Thus, SunCal must and fails to show that there is an actual person or entity currently offering to fund Litco with cash sufficient to fund the administrative and priority claims through the supposed "Litco Plan Loan." Second, SunCal fails to disclose how the proceedings against the Lehman Creditors could be completed consistent with due process before the scheduled confirmation hearing of October 24, 2011 or any time shortly thereafter.  SunCal also fails to sufficiently describe the bases for asserting that "recoupment" enables them to reduce first secured portion of a bifurcated claim. Third, SunCal ignores that Litco supposedly is to fund litigation expenses and the "right to sell" of Reliance Claimants in a total amount not disclosed, but which appears substantial from Exhibit 8.  SunCal simply states that "Litco will be capitalized with funds provided by a third party," which party is not disclosed.  The omission of any information regarding the financial wherewithal of Litco (or the undisclosed third party purportedly capitalizing LitCo) precludes a finding of feasibility and supports the Lehman Creditors' view that SunCal and its affiliates lack such financial capability and/or willingness to fund plan expenses. | Disclosure; Confirmation |
| 85. | § 20.12 of all Discos | "<u>Exemption from Certain Transfer Taxes and Recording Fees</u>"  This section inadvertently refers to "Section 1146(c)" when it should refer to Section 1146(a). | Clerical Error |

26

# EXHIBIT B

EXHIBIT B

| | |
|---|---|
| *STATEMENT IN OPPOSITION TO SUNCAL'S PLANS* **FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS** | |
| **Summary** | The SunCal Plans (defined below) and their "lottery ticket" litigation strategy appear to be just a smokescreen for a course of action by SunCal (defined below) designed primarily to benefit its ultimate equity holder, Bruce Elieff (despite his equity interests being out of the money), increasing his opportunities to continue management of the Projects, enabling him to eliminate his indemnity liability to bond issuers, providing him control of when, whether and if to settle with the Lehman Creditors and with other key creditors, and giving him access to cash on hand and all other litigation proceeds of all of the plan Debtors to support his litigation strategy. Absent settlement, and in the event of likely appeals, payment to Creditors could be delayed by years. |
| | **This <u>Statement in Opposition</u> urges you to vote "against" or "No" on the accompanying plan proposed by the Voluntary Debtors and SunCal Acquisitions, Inc.** |
| **Trustee and Lehman Creditors** | The "Trustee" is Steven M. Speier, duly appointed by the Bankruptcy Court as the chapter 11 trustee for the Trustee Debtors. |
| | The Lehman Creditors are (a) Lehman ALI, Inc., (b) Northlake Holdings LLC, (c) OVC Holdings LLC, each in its capacity as a lender in its own right and/or as agent for themselves and/or Lehman Commercial Paper Inc. ("LCPI"), with respect to the applicable loans, and (d) LCPI, as the owner of a legal or equitable interest in certain of the applicable loans. |
| **Background** | The Debtors are entities formed to develop real estate projects (the "<u>Projects</u>") throughout California. All of the Projects were managed by a non-debtor entity, owned and controlled by Bruce Elieff, SunCal Management, LLC (which is referred to below, together with its affiliates. including SCC Acquisitions, Inc. and the Voluntary Debtors, but not including the Trustee Debtors, as "<u>SunCal</u>"). Besides some small amount of cash and various lawsuits filed by SunCal, the only assets of the Trustee Debtors of meaningful value are their Projects. |
| | SunCal's business is focused upon the acquisition and development of residential land. The land development process is inherently capital intensive due to size and costs of the assets being acquired, the front-loaded capital requirements, and the length of time between the initial acquisition and the ultimate realization of profits. The purchase of a typical SunCal project was financed through an equity contribution coupled with a land or acquisition loan. Thereafter, one or more development and entitlement credit facilities would either be incorporated into the acquisition loan, or an entirely new facility would be obtained to fund the development of the project. In some cases a layer of mezzanine debt (secured by a pledge of the equity ownership interests in the entity that owns the project) was obtained to provide additional funding. |
| | As a result of such funding, the Lehman Creditors have debt claims of over $1.1 billion which they contend are secured by first priority deeds of trust on the Projects that, based on current Project values, leave no value in the Projects for |

EXHIBIT B

| | **STATEMENT IN OPPOSITION TO SUNCAL'S PLANS**<br>**FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS** |
|---|---|
| | the unsecured Creditors of the Trustee Debtors (other than SunCal Century City), who collectively hold claims of approximately $128 million.<br><br>SunCal has not disputed that the Lehman Creditors funded over $1.1 billion in loans to the Trustee Debtors or that they received perfected first priority deeds of trust on the Projects.  SunCal, however, contends, and has filed several litigation proceedings contending (the "SunCal/Lehman Litigation"), that the Debtors' Estates or certain of the Debtors' unsecured Creditors have substantial causes of action and challenges against the Lehman Creditors with respect to the loans and Claims of the Lehman Creditors that would result either in the subordination of the Claims of the Lehman Creditors against the Debtors to payment in full of all, or a substantial portion of, the claims of the Debtors' unsecured Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman Creditors assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors' Estates from the Lehman Creditors.  The Lehman Creditors dispute all such allegations and are contesting or will vigorously contest their assertion. |
| **Competing Plans** | SunCal has proposed Plans for all nine Trustee Debtors through four separate documents (*i.e.*, the Group I Plan, the Group II Plan, the Group III Plan and the SunCal Century City Plan) (each, a "SunCal Plan" and collectively, the "SunCal Plans").<br><br>The Trustee and Lehman Creditors have filed a single document (the "Lehman/Trustee TD Plan") that encompasses separate plans for all of the Trustee Debtors other than SunCal Century City. |
| **Your Options as to Plans:** | Confirmation can occur only as to one plan for each Trustee Debtor.  For the Court to confirm a plan, it must consider the votes of Creditors and also make other determinations, including that the plan is feasible (*i.e.*, not likely to be followed by an unplanned liquidation). All creditors and parties in interest can object to any plan on appropriate grounds. Objections must be filed and served by September 26, 2011.<br><br>Certain Creditors, as identified in each disclosure statement, can vote for or against each plan. If a Creditor is given the opportunity to vote for or against more than one plan, the Creditor may vote:<br><br>• In favor of both plans;<br><br>• Against both plans; or<br><br>• For one plan and against another.<br><br>After voting, if only one plan affecting a Trustee Debtor receives sufficient votes accepting such plan and otherwise satisfies the confirmation requirements under the Bankruptcy Code, it will be confirmed by the Bankruptcy Court and become effective as to such Trustee Debtor. If two or more plans as to a Trustee Debtor receive sufficient votes and otherwise satisfy the confirmation requirements, the |

EXHIBIT B

| | STATEMENT IN OPPOSITION TO SUNCAL'S PLANS<br>FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS |
|---|---|
| | Bankruptcy Court "shall consider the preferences of creditors and equity security holders in determining which plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code. |
| **Competing Plan Strategies** | **SunCal wants to continue the SunCal/Lehman Litigation.**<br><br>**The Trustee and Lehman Creditors want to settle the SunCal/Lehman Litigation.**<br><br>All plans, as they must, essentially offer payment in full to holders of administrative, priority and secured claims. What distinguishes the SunCal Plans from the Lehman/Trustee TD Plan are: (a) whether the plans are viable / feasible or will fall apart, such as from lack of funding; and (b) the treatment of creditors holding prepetition, non-priority, unsecured claims. |
| <u>Recommendation:</u> | **The Trustee and Lehman Creditors recommend that you vote in favor of settlement and thus in favor of the Lehman/Trustee TD Plan and the Lehman Creditors recommend you vote against the SunCal Plan.**<br><br><u>If you support the settlement in the Lehman/Trustee TD Plan, the Trustee and Lehman Creditors recommend that you vote for the Lehman/Trustee TD Plan and the Lehman Creditors recommend you vote against the SunCal Plan.</u><br><br>    The Trustee and Lehman Creditors believe the SunCal/Lehman Litigation will take years to resolve and that the Lehman/Trustee TD Plan and the settlement embodied therein provides a fair resolution of the SunCal/Lehman Litigation and the fastest alternative for payment of Creditors.<br><br><u>Even if you do not support a current settlement of the SunCal/Lehman Litigation, the Lehman Creditors still recommend that you vote against the SunCal Plan.</u><br><br>    A "no" vote on the Lehman/Trustee TD Plan would voice your opposition to the settlement therein.  If you vote in favor of the SunCal Plan, however, under the terms of the SunCal Plan, you would give SunCal a veto right over any future settlement offer, no matter how high, regardless of your preferences.  (Nothing in the SunCal Plan can or would make the SunCal/Lehman Litigation resolve faster.)  Thus, even if you oppose the current settlement in the Lehman/Trustee TD Plan, the Lehman Creditors recommend you vote against the SunCal Plan.<br><br><u>If you have been offered a "right to sell" your claim, the Lehman Creditors urge you to vote against the SunCal Plan and see that offer for what it is:  a mirage designed to distract you from the only real buyout alternative you have – the settlement offer contained in the Lehman/Trustee TD Plan.</u><br><br>    To entice some of you holding Reliance Claims to vote for the SunCal Plan and against the Lehman/Trustee TD Plan, in certain cases, SunCal includes the so-called "right to sell." The Lehman Creditors view this offer as illusory and view supporting the SunCal Plan as simply leading to higher expenses that must get paid first before prepetition, unsecured creditors can receive any payment.  SunCal has not identified anyone (and |

EXHIBIT B

| | |
|---|---|
| | **STATEMENT IN OPPOSITION TO SUNCAL'S PLANS FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS** |

the Lehman Creditors doubt there is anyone) willing to pay the required percentage of your claims for the speculative benefits that you might have in the heavily disputed, uncertain and expensive SunCal/Lehman Litigation.  Although SunCal may have experience finding sources to fund purchases of real estate, they have identified no such experience in finding funding sources for speculative litigation, particularly at the high percentages listed in the SunCal Plans.  Instead, this "right to sell" appears to be just a means of enticing you to vote against the Lehman/Trustee TD Plan. Don't be deceived. This "right to sell" is a dead end and when SunCal is unable to fund the SunCal Plans, the opportunity to settle may be lost and, even if available, the process would need to begin anew causing further delay.  Moreover, the only result of having approved the SunCal Plans will be that higher priority administrative expenses would have to be paid in full before prepetition, unsecured creditors could be paid anything.

**Even if you do choose to vote for a SunCal Plan, the Trustee and the Lehman Creditors also urge you to also vote for the Lehman/Trustee TD Plan**.

The SunCal Plans appear to lack adequate funding. They have identified no third party funding source and, as to certain non-debtor persons and entities that own SunCal, there are outstanding unpaid legal judgments, including an unsatisfied writ of attachment for $7.9 million against Bruce Elieff and SunCal Acquisitions, Inc., seeming to reflect their financial difficulties.  Confirmation is scheduled for October 24, 2011. Although SunCal's ability to fund the SunCal Plans would be considered by the Court at confirmation, if you are distracted by the SunCal Plans to vote against the Lehman/Trustee TD Plan, doing so may reduce the likelihood that the Lehman/Trustee TD Plan could be confirmed this year even if the applicable SunCal Plan later fails from inadequate funding. Thus, voting for the Lehman/Trustee TD Plan better assures sooner resolution of these cases that will have been pending almost 3 years as of the scheduled October 24, 2011 confirmation hearing date.

*SunCal Century City*:

*As to SunCal Century City, the Lehman Creditors are not currently creditors (although that Estate of SunCal Century City asserts certain claims against certain of the Lehman Creditors) and no alternative plan to the SunCal Plan currently has been proposed by any party. Nonetheless, the Lehman Creditors fear that the SunCal Plan is intended to permit SunCal to use the cash held by SunCal Century City which is available now for Distribution to instead fund its continued litigation with the Lehman Creditors.  After the Lehman/Trustee TD Plan is confirmed, the Lehman Creditors understand that the Trustee intends to approach*

EXHIBIT B

| | |
|---|---|
| | **STATEMENT IN OPPOSITION TO SUNCAL'S PLANS**<br>**FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS** |
| | *them regarding settlement and, thereafter, intends to file a plan for SunCal Century City. In the meantime, the Lehman Creditors recommend that other creditors vote against the SunCal Plan for SunCal Century City to prevent putting the use of the cash held by SunCal Century City under the control of SunCal.* |
| **Argument** | **The SunCal Plans.** The SunCal Plans are a mirage. All funding for the SunCal Plans appears uncertain. Moreover, the so-called "right to sell" offer contained in certain of the SunCal Plans for some holders of Reliance Claims appears unfunded, illusory and a distraction that could delay and make more difficult confirming a workable plan in the Trustee Debtors' cases. Although the Lehman/Trustee TD Plan has its own contingencies, they are far less significant than the apparent funding inadequacy of the SunCal Plans.<br><br>**The Lehman/Trustee Plan.** The Lehman/Trustee TD Plan is a fair, viable plan for finally resolving the chapter 11 cases. The settlement in the Lehman/Trustee TD Plan attempts to identify by category as "Reliance Claims" those claims most likely to have benefited from a victory in the SunCal/Lehman Litigation and offers the Creditors holding such Reliance Claims 40-50% on their claims in exchange for providing a release for the Lehman Creditors and certain related parties. Other prepetition, non-priority, unsecured Creditors are offered 5% on their claims under the Lehman/Trustee TD Plan if they provide such release even though their claims do not have the characteristics making them possible beneficiaries of the SunCal/Lehman Litigation. (Prepetition, non-priority, unsecured Creditors refusing to provide the release still would get 1% on their claims <u>and</u> retain whatever litigation rights they themselves might have against any Lehman Creditor.) In contrast, SunCal's course seems designed to pursue the SunCal/Lehman Litigation until SunCal gets what it wants, which may take years and might not result in any more value for other Creditors, might result in substantially less and would disenfranchise other Creditors from controlling what settlement to accept.<br><br>Further, the Trustee believes the current settlement offer in the Lehman/Trustee TD Plan is fair, reasonable and appropriate and is co-sponsoring the Lehman/Trustee TD Plan. The Lehman Creditors believe that, with a 40-50% offer available to holders of Reliance Claims, choosing a plan that depends upon the continuation of the SunCal/Lehman Litigation for years makes no sense. Moreover, although a future settlement is possible even if the SunCal Plans are confirmed, leaving Bruce Elieff with control of future settlement risks that he will not support settlement absent it providing him the personal benefits of reducing or eliminating his personal liability with respect to his guarantee to bond issuers Arch Insurance and Bond Safeguard and without settlement taking a form that ensures that Mr. Elieff or his development company retain control of development of the Projects.<br><br>Also, if the Lehman/Trustee TD Plan receives sufficient votes, it is more likely to |

EXHIBIT B

| STATEMENT IN OPPOSITION TO SUNCAL'S PLANS FOR TRUSTEE DEBTORS SUBMITTED BY THE LEHMAN CREDITORS | | | |
|---|---|---|---|
| | become effective than the SunCal Plans if they receive sufficient votes in the following respect.  As to adequate funding, although the Lehman Creditors are all related to Lehman Brothers Holdings, Inc. ("LBHI"), which itself is a debtor with LCPI in the largest chapter 11 bankruptcy case ever filed pending in a New York bankruptcy court, LBHI and LCPI both have substantial cash (in the billions).  As to motivation, the Lehman Creditors and their own creditors are motivated to obtain finality to this matter sooner than later.  Further, although the Lehman Creditors would rather pay less, that does not change that they are willing (and have offered) to pay substantial amounts now to end the SunCal/Lehman Litigation and obtain ownership of the Projects.  In sum, although the Lehman Creditors remain unwilling to leave SunCal in control of development and have been unable to secure SunCal's support for the present settlement, SunCal may have its own agenda and the Trustee, a fiduciary appointed by the Court, agrees with and support the fairness, amount and structure of the settlement embodied in the Lehman/Trustee TD Plan. | | |
| The SunCal Plans by Group and Trustee Debtor | **Group I** | **Illusory "Right to Sell" Reliance Claim** | **Competing Lehman TD Plan Reliance Claim Offer** |
| | SunCal Marblehead, LLC | Yes | Yes |
| | SunCal PSV, LLC | Yes | Yes |
| | **Group II** | | |
| | SunCal Oak Knoll, LLC | Yes | Yes |
| | SunCal Torrance Properties, LLC | Yes | Yes |
| | **Group III** | | |
| | LB/L-SunCal Oak Valley, LLC | No | Yes |
| | SunCal Heartland, LLC | No | Yes |
| | Delta Coves Ventures, LLC | No | Yes |
| | LB/L-SunCal Northlake, LLC | No | Yes |
| | **Group IV** | | |
| | SunCal Century City, LLC | No | Not a TD Plan Debtor |

# **<u>EXHIBIT C</u>**

EXHIBIT C

| | |
|---|---|
| | ***STATEMENT IN OPPOSITION TO SUNCAL'S PLANS***<br>**FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** |
| **Summary** | The SunCal Plans (defined below) and their "lottery ticket" litigation strategy appear to be just a smokescreen for a course of action by SunCal (defined below) designed primarily to benefit its ultimate equity holder, Bruce Elieff (despite his equity interests being out of the money), increasing his opportunities to continue management of the Projects, enabling him to eliminate his indemnity liability to bond issuers, providing him control of when, whether and if to settle with the Lehman VD Lenders and with other key creditors, and giving him access to cash on hand and all other litigation proceeds of all of the plan Debtors to support his litigation strategy. Absent settlement, and in the event of likely appeals, payment to Creditors could be delayed by years.<br><br>**This <u>Statement in Opposition</u> urges you to vote "against" or "No" on the accompanying plan proposed by the Voluntary Debtors and SunCal Acquisitions, Inc.** |
| **Lehman VD Lenders and VD Committee** | The Lehman VD Lenders are (a) Lehman ALI, Inc., in its capacity as a lender in its own right and/or as agent for itself and/or Lehman Commercial Paper Inc. ("<u>LCPI</u>"), with respect to the applicable loans, and (b) LCPI, as the owner of a legal or equitable interest in certain of the applicable loans.<br><br>The VD Committee is the official committee of creditors holding unsecured claims appointed in the cases of the Voluntary Debtors. |
| **Background** | The Debtors are entities formed to develop real estate projects (the "<u>Projects</u>") throughout California. All of the Projects were managed by a non-debtor entity, owned and controlled by Bruce Elieff, SunCal Management, LLC (which is referred to below, together with its affiliates. including SCC Acquisitions, Inc. and the Voluntary Debtors, but not including the Trustee Debtors, as "<u>SunCal</u>").<br><br>The primary assets of the eleven Group I, Group II, Group III and Group IV Voluntary Debtors are as follows:  (1) Del Rio's primary asset is escrowed cash; (2) SJD Development Corp.'s primary asset is its interests in SJD Partners, Ltd.; (3) SJD Partner's project was foreclosed upon prepetition and its primary asset is its lawsuit to set aside the foreclosure; and (4) for the other eight Voluntary Debtors, their Projects are their primary assets, except that Palmdale Hills also owns significant cash subject to a security interest of the Lehman VD Lenders perfected through a duly executed control agreement.<br><br>SunCal's business is focused upon the acquisition and development of residential land.  The land development process is inherently capital intensive due to size and costs of the assets being acquired, the front-loaded capital requirements, and the length of time between the initial acquisition and the ultimate realization of profits. The purchase of a typical SunCal project was financed through an equity contribution coupled with a land or acquisition loan. Thereafter, one or more development and entitlement credit facilities would either be incorporated into the acquisition loan, or an entirely new facility would be obtained to fund the development of the project. In some cases a layer of mezzanine debt (secured by a pledge of the equity ownership interests in the entity that owns the project) was obtained to provide additional funding.<br><br>As a result of such funding, the Lehman VD Lenders have debt claims against Group |

EXHIBIT C

| | |
|---|---|
| *STATEMENT IN OPPOSITION TO SUNCAL'S PLANS*<br>**FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** ||
| | I Debtor Palmdale Hills of over $287 million, claims against each of the other Group I Debtors of over $343 million, claims against each of the Group III Debtors of over $23 million and contingent claims against the Group IV Debtor SJD Partners of over $46 million, which the Lehman VD Lenders contend are secured by first priority deeds of trust on the Projects owned by the applicable Voluntary Debtor (or in the case of SJD Partners, allegedly to be reacquired by that Debtor).  Based on current Project values, if the Lehman VD Lenders' claims are valid, there would be no value in the Projects for the other Creditors of such Voluntary Debtors.  As to the Group II Debtors, the Lehman VD Lenders hold a pledge of the equity ownership interests therein securing a claim of over $343 million. |
| | SunCal has not disputed that the Lehman VD Lenders funded the claimed amounts to the Voluntary Debtors or that they received perfected first priority deeds of trust on the Projects, as alleged.  SunCal, however, contends, and has filed several litigation proceedings contending (the "<u>SunCal/Lehman Litigation</u>"), that the Debtors' Estates or certain of the Debtors' Creditors have substantial causes of action and challenges against the Lehman VD Lenders with respect to the loans and Claims of the Lehman VD Lenders that would result either in the subordination of the Claims of the Lehman VD Lenders against the Debtors to payment in full of all, or a substantial portion of, the claims of the Debtors' unsecured Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman VD Lenders assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors' Estates from the Lehman VD Lenders.  The Lehman VD Lenders dispute all such allegations and are contesting or will vigorously contest their assertion. |
| **Competing Plans** | SunCal has proposed Plans for eleven of the Voluntary Debtors through four separate documents (*i.e.*, the Group I Plan, Group II Plan, Group III Plan, and Group IV Plan) (each, a "<u>SunCal Plan</u>" and collectively, the "<u>SunCal Plans</u>"). |
| | The Lehman VD Lenders have filed a single document (the "<u>Lehman VD Plan</u>") that encompasses separate Plans for eleven Voluntary Debtors. The Lehman VD Plan overlaps with the SunCal Plans for Voluntary Debtors as to seven Voluntary Debtors. |
| **Your Options as to Plans:** | Confirmation can occur only as to one plan for each Voluntary Debtor.  For the Court to confirm a plan, it must consider the votes of Creditors and also make other determinations, including that the plan is feasible (*i.e.*, not likely to be followed by an unplanned liquidation). All creditors and parties in interest can object to any plan on appropriate grounds. Objections must be filed and served by September 26, 2011. |
| | Certain Creditors, as identified in each disclosure statement, can vote for or against each plan. If a Creditor is given the opportunity to vote for or against more than one plan, the Creditor may vote: |
| | • In favor of both plans; |
| | • Against both plans; or |
| | • For one plan and against another. |
| | After voting, if only one plan affecting a Voluntary Debtor receives sufficient votes |

EXHIBIT C

| | |
|---|---|
| | ***STATEMENT IN OPPOSITION TO SUNCAL'S PLANS***<br>**FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** |
| | accepting such plan and otherwise satisfies the confirmation requirements under the Bankruptcy Code, it will be confirmed by the Bankruptcy Court and become effective as to such Voluntary Debtor. If two or more plans as to a Voluntary Debtor receive sufficient votes and otherwise satisfy the confirmation requirements, the Bankruptcy Court "shall consider the preferences of creditors and equity security holders in determining which plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code. |
| **Competing Plan Strategies** | **SunCal wants to continue the SunCal/Lehman Litigation.  The Lehman VD Lenders want to settle the SunCal/Lehman Litigation as to certain applicable Debtors (and resolve issues to enable progress as to other Debtors).**<br><br>All plans, as they must, essentially offer payment in full to holders of administrative, priority and secured claims. What distinguishes the SunCal Plans from the Lehman VD Plan are: (a) whether the plans are viable / feasible or will fall apart, such as from lack of funding; and (b) the treatment of creditors holding prepetition, non-priority, unsecured claims. |
| <u>**Recommendation:**</u> | **The Lehman VD Lenders recommend that you vote against the SunCal Plan and, if the Lehman VD Plan applies to your applicable Voluntary Debtor(s), vote in favor of settlement and thus in favor of the Lehman VD Plan.**<br><br>**<u>For Debtors for which the Lehman VD Plan applies:</u>**<br><br><u>If you support the settlement in the Lehman VD Plan, the Lehman VD Lenders recommend that you vote for the Lehman VD Plan and against the SunCal Plan.</u><br><br>The Lehman VD Lenders believe the SunCal/Lehman Litigation will take years to resolve and that the Lehman VD Plan and the settlement embodied therein provides a fair resolution of the SunCal/Lehman Litigation and the fastest alternative for payment of Creditors.<br><br><u>Even if you do not support a current settlement of the SunCal/Lehman Litigation, the Lehman VD Lenders still recommend that you vote against the SunCal Plan.</u><br><br>A "no" vote on the Lehman VD Plan would voice your opposition to the settlement therein.  If you vote in favor of the SunCal Plan, however, under the terms of the SunCal Plan, you would give SunCal a veto right over any future settlement offer, no matter how high, regardless of your preferences.  (Nothing in the SunCal Plan can or would make the SunCal/Lehman Litigation resolve faster.)  Thus, even if you oppose the current settlement in the Lehman VD Plan, the Lehman VD Lenders recommend you vote against the SunCal Plans.<br><br><u>If you have been offered by SunCal a "right to sell" your Reliance Claim, the Lehman VD Lenders urge you to vote against the SunCal Plan and see that offer for what it is:  a mirage designed to distract you from the only real buyout alternative you have – the settlement offer contained in the Lehman</u> |

**EXHIBIT C**

| | |
|---|---|
| | ***STATEMENT IN OPPOSITION TO SUNCAL'S PLANS***<br>**FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** |
| | VD Plan.

    SunCal wants you to vote for the SunCal Plan and against the Lehman VD Plan.  To entice some of you holding Reliance Claims, in certain cases they include the so-called "right to sell." The Lehman VD Lenders view this offer as illusory and view supporting the SunCal Plan as simply leading to higher expenses that must get paid first before prepetition, unsecured Creditors can receive any payment. SunCal has not identified anyone (and the Lehman VD Lenders doubt there is anyone) willing to pay the required percentage of your claims for the speculative benefits that you might have in the heavily disputed, uncertain and expensive SunCal/Lehman Litigation. Although SunCal may have experience finding sources to fund purchases of real estate, they have identified no such experience in finding funding sources for speculative litigation, particularly at the high percentages listed in the SunCal Plans.  Instead, this "right to sell" appears to be just a means of enticing you to vote against the Lehman VD Plan. Don't be deceived. This "right to sell" is a dead end and when SunCal is unable to fund their applicable plans, the opportunity to settle may be lost and, even if available, the process would need to begin anew causing further delay.  Moreover, the only result of having approved the SunCal Plans will be that higher priority administrative expenses would have to be paid in full before prepetition, unsecured Creditors could be paid anything.

**Even if you do choose to vote for a SunCal Plan, the Lehman VD Lenders also urge you to also vote for the Lehman VD Plan.**

    The SunCal Plans appear to lack adequate funding. They have identified no third party funding source and, as to certain non-debtor persons and entities that own SunCal, there are outstanding unpaid legal judgments, including an unsatisfied writ of attachment for $7.9 million against Bruce Elieff and SunCal Acquisitions, Inc., seeming to reflect their financial difficulties.  Confirmation is scheduled for October 24, 2011. Although SunCal's ability to fund the SunCal Plans would be considered by the Court at confirmation, if you are distracted by the SunCal Plans to vote against the Lehman VD Plan, doing so may reduce the likelihood that the Lehman VD Plan could be confirmed this year even if the applicable SunCal Plan later fails from inadequate funding. Thus, voting for the Lehman VD Plan better assures sooner resolution of these cases that will have been pending almost 3 years as of the scheduled October 24, 2011 confirmation hearing date.

**For Debtors for which the Lehman VD Plan does not apply:**

    As to the four Voluntary Debtors for which SunCal filed a plan and the |

EXHIBIT C

| | |
|---|---|
| | ***STATEMENT IN OPPOSITION TO SUNCAL'S PLANS*** <br> **FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** |
| | Lehman VD Lenders did not, as indicated above, the Lehman VD Lenders recommend a "No" vote on the applicable SunCal Plan. |
| **Argument** | **The SunCal Plans:**  The SunCal Plans are a mirage.  All funding for the SunCal Plans appears uncertain. Moreover, the so-called "right to sell" offer contained in certain of the SunCal Plans for some holders of Reliance Claims appears unfunded, illusory and a distraction that could delay and make more difficult confirming a workable plan in the Voluntary Debtors' cases.  Although the Lehman VD Plan has its own contingencies, they are far less significant than the apparent funding inadequacy of the SunCal Plans. <br><br> **The Lehman VD Plan:**  For creditors of Debtors subject to the Lehman VD Plan, that plan, instead, is a fair, viable plan for finally resolving the chapter 11 cases of the applicable Debtors. <br><br> For the SunCal Plan's Group II Voluntary Debtors above, the Lehman VD Plan effectively offers them a projected 100% recovery from an acquisition by the Lehman VD Lenders at a price significantly in excess of SunCal's value estimate, as noted above.  SunCal, on the other hand, offers no assurance that cash from a sale of the Projects will be used exclusively to pay creditors instead of funding the SunCal/Lehman Litigation that SunCal appears determined to pursue. <br><br> For other Debtors subject to the Lehman VD Plan, the settlement therein attempts to identify by category as "Reliance Claims" those claims most likely to have benefited from a victory in the SunCal/Lehman Litigation and offers the creditors holding such Reliance Claims 40-50% on their claims in exchange for providing a release for the Lehman VD Lenders and certain related parties.  Other prepetition, non-priority, unsecured Creditors are offered 5% on their claims under the Lehman VD Plan if they provide such release even though their claims don't have the characteristics making them possible beneficiaries of the SunCal/Lehman Litigation.  (Prepetition, non-priority, unsecured Creditors refusing to provide the release still would get 1% on their claims <u>and</u> retain whatever litigation rights they themselves might have against any Lehman VD Lender.)  In contrast, SunCal's course seems designed to pursue the SunCal/Lehman Litigation until SunCal gets what it wants, which may take years and might not result in any more value for other Creditors, might result in substantially less and would disenfranchise other Creditors from controlling what settlement to accept. <br><br> The Lehman VD Lenders contend that their current settlement offer in the Lehman VD Plan is fair, reasonable and appropriate and that, with a 40-50% offer available to holders of Reliance Claims, waiting years to resolve the SunCal/Lehman Litigation makes no sense. Moreover, although a future settlement is possible even if the SunCal Plans are confirmed, leaving Bruce Elieff with control of future settlement risks that he will not support settlement absent it providing him the personal benefits of reducing or eliminating his personal liability with respect to his guarantee to bond issuers Arch Insurance and Bond Safeguard and without settlement taking a form that |

EXHIBIT C

| |
|---|
| ***STATEMENT IN OPPOSITION TO SUNCAL'S PLANS*** <br> **FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS** |

ensures that Mr. Elieff or his development company retain control of development of the Projects.

Also, if the Lehman VD Plan receives sufficient votes, it is more likely to become effective than the SunCal Plans if they receive sufficient votes in the following respect. As to adequate funding, although the Lehman VD Lenders are both related to Lehman Brothers Holdings, Inc. ("LBHI"), which itself is a debtor with LCPI in the largest chapter 11 bankruptcy case ever filed pending in a New York bankruptcy court, LBHI and LCPI both have substantial cash (in the billions). As to motivation, the Lehman VD Lenders and their own creditors are motivated to obtain finality to this matter sooner than later. Further, although the Lehman VD Lenders would rather pay less, that does not change that they are willing (and have offered) to pay substantial amounts now to end the SunCal/Lehman Litigation and obtain ownership of the Projects. In sum, although the Lehman VD Lenders remain unwilling to leave SunCal in control of development and have been unable to secure SunCal's support for the present settlement, SunCal may have its own agenda and the Lehman VD Lenders ask creditors to agree with and support the settlement embodied in the Lehman VD Plan and, in any event, reject all SunCal Plans.

As to the four Voluntary Debtors for which SunCal has proposed a plan and the Lehman VD Lenders have not, rejecting the SunCal Plans is recommended for the following reasons.

Emerald Meadows, which SunCal values at $6.1 million, is encumbered by a third party lien of over $6 million that SunCal's plan does not address. Moreover, certain of Emerald Meadows' creditors claim an equitable lien or constructive trust on parts of the Project. A plan makes no sense at this time and is a waste of time and money until and unless these matters are addressed. The only thing a plan does is prevent creditors from ever having a voice if settlements later are possible, leaving SunCal in control as Plan Trustee with less court supervision and with Creditors getting no vote.

Del Rio only has rights in an escrow and the Lehman VD Lenders claim to be entitled to all of the proceeds and to recover certain prior distributions. The only thing a plan does is prevent Creditors from ever having a voice if a settlement later is proposed, leaving SunCal in control as Plan Trustee with less court supervision and Creditors getting no vote.

SJD Partners only owns a litigation claim against Lehman Re (which is different from the Lehman VD Lenders) and against the Lehman VD Lenders. Nothing can be distributed until that litigation is resolved. Again, the only thing a plan does is prevent Creditors from ever having a voice if a settlement later is proposed, leaving SunCal in control as Plan Trustee with less court supervision and with Creditors getting no vote.

SJD Development Corp. only owns the interests in the insolvent SJD Partners and, according to SunCal, all claims against it are appropriately claims against SJD Partners. Thus, its plan is irrelevant and should be rejected, if voted upon at all.

EXHIBIT C

| STATEMENT IN OPPOSITION TO SUNCAL'S PLANS FOR VOLUNTARY DEBTORS SUBMITTED BY THE LEHMAN VD LENDERS | | |
|---|---|---|
| **The SunCal Plans by Group and Voluntary Debtor** | **Group I** | *Illusory* **"Right to Sell" Reliance Claim (Funding Unknown) or Other Means of Creating Revenue** | **Competing Lehman VD Plan With Reliance Claim Offer or Acquisition Offer Funded by Lehman VD Lenders** |
| | Acton Estates, LLC | Yes: Reliance Claim Offer | Yes: Reliance Claim Offer |
| | Palmdale Hills Property, LLC ("Palmdale Hills") | Yes: Reliance Claim Offer | Yes: Reliance Claim Offer |
| | SunCal Bickford Ranch, LLC | Yes: Reliance Claim Offer | Yes: Reliance Claim Offer |
| | SunCal Emerald Meadows, LLC ("Emerald Meadows") | Yes: Reliance Claim Offer | Not a VD Plan Debtor |
| | **Group II** | | |
| | SunCal Beaumont Heights, LLC | No/Auction: SunCal Est. Project Val: $1,020,000 | Yes/Project Acquisition by Lehman VD Lenders @ $1.8mm |
| | SunCal Johannson Ranch, LLC | No/Auction: SunCal Est. Project Val: $540,000 | Yes/Project Acquisition by Lehman VD Lenders @ $4 million |
| | **Group III** | | |
| | SSC Communities, LLC | No/Auction | Yes: Reliance Claim Offer |
| | North Orange Del Rio Land, LLC ("Del Rio") | No/Auction of Escrow Rights | Not a VD Plan Debtor |
| | Tesoro SF, LLC | No/Auction | Yes: Reliance Claim Offer |
| | **Group IV** | | |
| | SJD Development Corp. | Yes:  Contingent Reliance Claim Offer /Sale Process Unspecified | Not a VD Plan Debtor |
| | SJD Partners, Ltd. ("SJD Partners") | Yes:  Contingent : Reliance Claim Offer /Sale Process Unspecified | Not a VD Plan Debtor |

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as *OBJECTION OF LEHMAN CREDITORS TO FIRST AMENDED DISCLOSURE STATEMENTS DESCRIBING FIRST AMENDED CHAPTER 11 PLANS OF SUNCAL PLAN PROPONENTS* will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____July 8, 2011____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On ____July 8, 2011____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
<u>JUDGE'S COPY</u> [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____July 8, 2011____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
  Paul Couchot - pcouchot@winthropcouchot.com
  Marc J Winthrop - pj@winthropcouchot.com
  Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
  bcook@suncal.com
(3) Counsel for SunCal Management:
  Ronald Rus – rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
  Louis Miller - smiller@millerbarondess.com
  Martin Pritikin – mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee (Speier):
  William Lobel - wlobel@thelobelfirm.com
  Mike Neue – mneue@thelobelfirm.com
(6) Ch. 11 Trustee:
  Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
  Michael Hauser - michael.hauser@usdoj.gov

(8) Counsel for Voluntary Debtors' Committee:
  Alan Friedman - afriedman@irell.com
  Kerri A Lyman - klyman@irell.com
(9) Counsel for Trustee Debtors' Committee:
  Lei Lei Wang Ekvall - lekvall@wgllp.com
  Hutchison B Meltzer - hmeltzer@wgllp.com
(10) Counsel for Bond Safeguard & Lexon
  Mark J Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Lauren Zerbinopoulos– lauren.zerbinopoulos@weil.com
Erica Rutner – erica.rutner@weil.com
Chauncey Cole – chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Mark McKane - mark.mckane@kirkland.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 8, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                    **F 9013-3.1.PROOF.SERVICE**

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

## I.  SERVED BY NEF

**8:08-bk-17206-ES Notice will be electronically mailed to:**

*(1)*  Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

*(2)*  Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

*(3)*  Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

*(4)*  James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

*(5)*  Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

*(6)*  John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

*(7)*  Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

*(8)*  Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

*(9)*  Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

*(10)*  Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

*(11)*  Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

*(12)*  Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

*(13)*  Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

*(14)*  Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

*(15)*  Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

*(16)*  Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

*(17)*  Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

*(18)*  Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

*(19)*  Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

*(20)*  Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;sconnor@winthropcouchot.com

*(21)*  Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

*(22)*  Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

*(23)*  Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

*(24)*  Melissa Davis for Cred City of Orange
mdavis@shbllp.com

*(25)*  Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

*(26)*  Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

*(27)*  Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

*(28)*  Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

*(29)*  Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

*(30)*  Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang Ekvall & Strok, LLP
lekvall@wgllp.com

*(31)*  Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

*(32)*  Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

*(33)*  Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

*(34)*  Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

*(35)*  Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

*(36)*  Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

*(37)*  Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

*(38)*  Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@dlapiper.com

*(39)*  Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

*(40)*  Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

*(41)*  Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

*(42)*  Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

*(43)*  Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

*(44)*  Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

*(45)*  Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

*(46)*  D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

*(47)*  Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

*(48)*  Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

*(49)*  Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators of Lehman RE Ltd
jonathan.hoff@cwt.com

*(50)*  Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

*(51)*  Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

*(52)*  John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

*(53)*  Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

*(54)*  Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

*(55)*  Stephen M Judson for Petitioning Cred The Professional Tree Care Co
sjudson@fablaw.com

*(56)*  Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well & Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

*(57)*  Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

*(58)*  Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                                      **F 9013-3.1.PROOF.SERVICE**

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com,
gdupre@kirkland.com;alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

(62) Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

(63) Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

(64) Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(65) David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

(66) Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

(67) Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

(68) Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

(69) Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

(70) Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

(71) Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

(72) Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

(73) Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

(74) Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

(75) Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

(76) James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com

(77) Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

(78) Craig Millet for Int Pty Doug Champion
cmillet@gibsondunn.com,
pcrawford@gibsondunn.com;cmillet@gibsondunn.com

(79) Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

(80) Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(81) Robert Nida for Cred Kirk Negrete, Inc
Rnida@castlelawoffice.com

(82) Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

(83) Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

(84) Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

(85) Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

(86) Daryl G Parker for Cred Lehman ALI, Inc.
dparker@pszjlaw.com

(87) Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

(88) Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

(89) Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com

(90) Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

(91) James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

(92) Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

(93) Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

(94) R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

(95) Martha E Romero for Cred California Taxing Authorities
Romero@mromerolawfirm.com

(96) Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

(97) John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

(98) John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

(99) William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

(100) Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

(101) Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

(102) Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

(103) Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarmilner.com, ca85@ecfcbis.com

(104) Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

(105) Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

(106) Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(107) David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(108) James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
pnelson@thelobelfirm.com

(109) United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

(110) Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

(111) Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

(112) Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

(113) Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

(114) Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(115) David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

(116) Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

(117) Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

(118) Marc A. Zimmerman for Creditor Life Church of God in Christ
joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE