1  PAUL J. COUCHOT - State Bar No. 131934
   pcouchot@winthropcouchot.com
2  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
3  Center Drive, Fourth Floor
   Newport Beach, CA 92660
4  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
5  General Insolvency Counsel for Palmdale Hills
6  Property, LLC et. al.

7  RONALD RUS - State Bar No. 67369
   rrus@rusmiliband.com
8  JOEL S. MILIBAND - State Bar No. 77438
   jmiliband@rusmiliband.com
9  **RUS MILIBAND & SMITH**
   **A PROFESSIONAL CORPORATION**
10 2211 Michelson Drive, Seventh Floor
   Irvine, California 92612
11 Telephone: (949) 752-7100
   Facsimile:  (949) 252-1514
12
   Counsel for SunCal Management LLC and
13 SCC Acquisitions Inc.

14         **UNITED STATES BANKRUPTCY COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
15              **SANTA ANA DIVISION**

16 In re                              | Case No. 8:08-bk-17206-ES
   PALMDALE HILLS PROPERTY, AND ITS   | Jointly Administered With Case Nos.
17 RELATED DEBTORS,                   | 8:08-bk-17209-ES; 8:08-bk-17240-ES;
           Jointly Administered Debtors | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
           and Debtors-in-Possession   | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
18                                     | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                       | 8:08-bk-17230-ES; 8:08-bk-17231-ES;
19 Affects:                           | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ All Debtors                      | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
20 ☒ Palmdale Hills Property,         | 8:08-bk-17574-ES; 8:08-bk-17575-ES;
   ☒ SunCal Beaumont Heights, LLC     | 8:08-bk-17404-ES; 8:08-bk-17407-ES;
21 ☐ SCC/Palmdale,                    | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☒ SunCal Johannson Ranch, LLC      | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
22 ☒ SunCal Summit Valley, LLC        | 8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☒ SunCal Emerald Meadows LLC       | and 8:08-bk-17588-ES
23 ☒ SunCal Bickford Ranch, LLC       |
   ☒ Acton Estates, LLC               | Chapter 11 Proceedings
24 ☒ Seven Brothers LLC               |
   ☒ SJD Partners, Ltd.               |
25 ☒ SJD Development Corp.            | **SUNCAL PLAN PROPONENTS' OMNIBUS**
   ☐ Kirby Estates, LLC               | **REPLY TO OBJECTIONS TO FIRST**
26 ☒ SunCal Communities I, LLC        | **AMENDED DISCLOSURE STATEMENTS**
   ☒ SunCal Communities III, LLC      |
27 ☒ SCC Communities LLC              | DATE: July 22, 2011
   ☒ North Orange Del Rio Land, LLC   | TIME:  11:00 a.m.
28 ☒ Tesoro SF LLC                    | PLACE: Ctrm. 5A
        ***Continued on Next Page***   |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Continued from Previous Page***

☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☒ SunCal PSV, LLC
☒ Delta Coves Venture, LLC
☒ SunCal Torrance, LLC
☒ SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

**PAGE**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  THE RELEVANT LEGAL STANDARD ................................................ 2

III. GENERAL OBJECTIONS THAT APPLY TO ALL SUNCAL PLAN
     PROPONENTS PLANS AND DISCLOSURE STATEMENTS .................. 3
     A.   Litco ................................................................................................. 3
     B.   Solicitation Letters ........................................................................ 5

IV.  REPLY TO OBJECTIONS TO THE VOLUNTARY DEBTORS PLANS
     AND DISCLOSURE STATEMENTS BY THE VOLUNTARY
     DEBTORS COMMITTEE AND THE LEHMAN ENTITIES ................... 6
     A.   Typographical Errors and Streamline Issues ................................. 6
     B.   Administrative Claims and Administrative Claims Bar Date ......... 6
     C.   Beneficial Interests in Plan Trust .................................................. 6
     D.   Description Regarding Assets Is Sufficient .................................... 6
     E.   Disclosure of SunCal Management ................................................ 6
     F.   The Disclosure Regarding Unencumbered Cash Is Adequate ........ 7
     G.   The Disclosure Regarding Potential Preferential Transfers
          Have Been Amended ...................................................................... 7
     H.   Disclosure Regarding Bid Procedures ........................................... 7
     I.   Acquisitions Should Act as the Plan Trustee ................................ 8
     J.   The Deadline for the Plan Supplement .......................................... 8
     K.   Risk Facts for Failure to Sell Projects .......................................... 8
     L.   Best Interest of Creditors Test Disclosure Is Adequate ................ 8
     M.   Feasibility Disclosure Is Adequate ............................................... 8
     N.   Specific Objections to the Group II: Voluntary Debtors
          Disclosure Statement ..................................................................... 9
     O.   Specific Objections to the Group III: Voluntary Debtors
          Disclosure Statement ..................................................................... 9

V.   REPLY TO OBJECTIONS TO THE TRUSTEE DEBTORS PLANS
     AND DISCLOSURE STATEMENTS BY THE TRUSTEE DEBTORS
     COMMITTEE AND THE LEHMAN ENTITIES ................................... 9
     A.   Typographical Errors and Streamline Issues ................................. 9
     B.   Objections Regarding Litco and Administrative Expenses ........... 10
     C.   The Sale Process Is Fair and Adequate ........................................ 10
     D.   Risk Facts Are Adequate .............................................................. 10
     E.   The Plans Are Feasible and Disclosure Thereon Is Adequate ...... 10
     F.   The Absolutely Priority Rate Is Not Violated .............................. 11
     G.   The Trustee Is Not Required to Act Without His
          Fiduciary Duties ........................................................................... 11

# TABLE OF CONTENTS

## (Continued)

PAGE

H.    Release Language Will Be Deleted .................................................... 12
I.    Payment of Administrative Claims and Feasibility Challenges .................... 12
J.    Retention of Sales Proceeds............................................................ 14
K.    The Unequal Treatment Argument..................................................... 14
L.    The Section 1129(a)(7) Objections.................................................... 15
M.    The Fair and Equitable Allegation..................................................... 15
N.    The Cases Cited by the Lehman Entities Are Inapposite ............................ 15
O.    The Section 1129(a)(5) Allegation ................................................... 19
P.    The Description of the ES Action...................................................... 20
Q.    Other Disclosure and Plan Issues Raised by Lehman Entities ..................... 21
R.    Specific Objections to SunCal Century City Disclosure Statement ............. 21
      1.    The SunCal Century City Disclosure Statement Will Be
            Amended to Include Administrative Claims Asserted
            Against SunCal Century City and the Potential Distribution
            to Holders of Allowed General Unsecured Claims ........................ 21
      2.    The SunCal Century City Disclosure Statement Will Be
            Amended to Include Adequate Information Regarding the
            Risks and Costs of the Lehman Adversary Proceeding.................... 22
      3.    The SunCal Century City Disclosure Statement Will Be
            Amended to Include Adequate Information Fees and Costs
            Associated with Administering the Plan Trust ............................. 22
      4.    The Remaining Disclosure Objections Are Meritless and/or
            Addressed in the SunCal Century City Disclosure Statement.......... 23
      5.    The Plan Objections Should Be Overruled....................................... 23

VI.    REPLY TO CITY OF PALMDALE'S OBJECTION ............................................... 23

VII.   REPLY TO THE BOND COMPANIES' OBJECTIONS ......................................... 24

VIII.  REPLY TO THE LEHMAN RE'S OBJECTIONS ................................................... 25
A.    The Group IV: Voluntary Debtors Disclosure Statement Provides
      Adequate Information that the Group IV: Voluntary Debtors Plan
      Is Predicated on Success of the Lehman Adversary Proceeding and/or
      the Contract Action....................................................................... 25
B.    The Group IV: Voluntary Debtors Disclosure Statement Will Provide
      Adequate Information Regarding Lehman Re's JOP Motion........................ 25
C.    The Causes of Action Against Lehman Re and Lehman ALI in the
      Lehman Adversary Proceeding Are Not Stayed........................................ 25
D.    The Group IV: Voluntary Debtors Provide Adequate Information
      Regarding the Treatment for Classes 1.1 and 1.2 ..................................... 26

# TABLE OF CONTENTS

## (Continued)

PAGE

E.    The SunCal Plan Proponents Have Amended the Group IV:
Disclosure Statement to Provide Adequate Information Regarding
the SunCal Valuation of the Pacific Point Project and Have Revised
the Disclosure Regarding the Pacific Point Project Foreclosure .................. 26

F.    The Description Regarding the Pacific Point Project Foreclosure Is
Accurate But Has Been Amended to Include Lehman Re's Response ......... 27

G.    The Disclosure Regarding Best Interest of Creditors Tests
Is Adequate ..................................................................................................... 27

H.    The Disclosure Regarding Reliance Claims and Recovery of the
Pacific Point Project and/or Damages Is Adequate ...................................... 27

I.    Exhibit "6" Regarding Preferential Transfers Has Been Revised ................. 28

IX.    REPLY TO CENTRAL PACIFIC BANK'S AND ANAVERDE'S
OBJECTIONS ............................................................................................................ 28

X.    REPLY TO COUNTY OF LOS ANGELES TAX COLLECTOR'S
OBJECTIONS ............................................................................................................ 29

XI.    REPLY TO IRONHOUSE SANITARY DISTRICT'S OBJECTIONS ................... 29

XII.    OPEN ISSUES REGARDING THE COURT'S TENTATIVE DATED
MAY 13, 2011 ............................................................................................................ 29

MAINDOCS-#164340-v3-SunCal_Reply_to_DS_Objections_(7_22).DOC

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**<u>PAGE</u>**

3

**CASES**

4

*Bank of America Nat'l Trust & Savings Assoc. v. 203 N. LaSalle St. P'ship,*
526 U.S. 434 (1999) .................................................................................. 11

5

6

*Corestates Bank, N.A. v. United Chem. Techs., Inc.,*
202 B.R. 33 (E.D.Pa.1996).......................................................................... 17

7

*In re Bashas' Inc.,*
437 B.R. 874 (Bankr.D.Ariz. 2010) ............................................................. 18

8

9

*In re Bonner Mall Partnership,*
2 F.3d 899 (9th Cir. 1993).......................................................................... 18

10

11

*In re California Hancock, Inc.,*
88 B.R. 226 (9th Cir. BAP 1988) ..................................................... 15, 16, 17

12

In re Canyon Partnership,
55 B.R. 520 (Bankr. S.D. Cal. 1985)............................................................. 7

13

14

*In re Charter Communications,*
419 B.R. 221 (Bankr. S.D.N.Y. 2009) ......................................................... 11

15

16

*In re Columbia Gas Sys., Inc.,*
91-803, 1995 WL 404892 (Bankr. D. Del. June 16, 1995) .................... 3, 12

17

*In re Dakota Rail, Inc.,*
104 B.R. 138 (Bankr. D. Minn. 1989)............................................................ 2

18

19

*In re Eastland Partners Ltd. P'ship,*
149 B.R. 105 (Bankr. E.D. Mich. 1992) ...................................................... 12

20

21

In re Financial News Network,
158 B.R. 570 (S.D.N.Y. 1993) ..................................................................... 33

22

*In re Idearc Inc.,*
423 B.R. 138 (Bankr. N.D.  Tex. 2009) ....................................................... 14

23

24

*In re Journal Register Co.,*
407 B.R. 520 (Bankr. S.D.N.Y. 2009) ......................................................... 14

25

*In re Linda Vista Cinemas, L.L.C.,*
442 B.R. 724 (Bankr.D.Ariz. 2010) ............................................................. 18

26

27

*In re Mass,*
2008 WL 8013413 (Bankr. S.D. Cal. Apr. 23, 2008) ............................ 4, 12

28

MAINDOCS-#164340-v3-SunCal_Reply_to_DS_Objections_(7_22).DOC

# TABLE OF AUTHORITIES

## (Continued)

**PAGE**

In re Metiom,
301 B.R. 634 (Bankr.S.D.N.Y. 2003) ................................................................................. 33

*In re Monarch Beach Venture*,
166 B.R. 428 (C.D.Cal. 1993)............................................................................... 15, 17, 18, 19

*In re New Midland Plaza Associates*,
247 B.R. 877 (Bankr. S.D.Fla. 2000) ................................................................................ 17

*In re Pacific Lumber*,
584 F.3d 229 (5th Cir. 2009)................................................................................................ 3

In re *Philadelphia Newspapers, LLC*,
599 F.3d 298 (3rd Cir. 2010)................................................................................................ 3

*In re Price*,
353 F.3d 1135 (9th Cir. 2004) ........................................................................................... 18

In re PRS Ins. Group,
331 B.R. 580 (Bankr.D.Del. 2005)..................................................................................... 33

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir.2000) ............................................................................................... 11

*In re Racing Services, Inc.*,
571 F.3d 729 (8th Cir. 2009) ............................................................................................. 13

*In re Sagewood Manor Associates Ltd. Partnership*,
223 B.R. 756 (Bankr.D.Nev. 1998)................................................................................... 18

In re Way,
229 B.R. 11 (9th Cir. BAP 1998) ...................................................................................... 32

In re Wheatfield Business Park,
308 B.R. 463 (9th Cir. BAP 2004) .................................................................................... 32

*In re WorldCom Inc.*,
No. 02–13533, 2003 WL 23861928 (Bankr.S.D.N.Y. Oct. 31, 2003).................................... 14

*Matter of Best Refrigerated Exp., Inc.*,
192 B.R. 503 (Bankr. D.Neb. 1996)................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

*Matter of Sandy Ridge,*
   881 F.2d 1346 (5th Cir. 1989) ............................................................. 17

*Steelcase v. Johnston,*
   21 F.3d 323 (9th Cir. 1994) ......................................................... 18, 19

**STATUTES**

11 U.S.C. § 363(k) .................................................................................. 16
11 U.S.C. § 502(d) ...................................................................... 12, 13, 30
11 U.S.C. § 506(a) .................................................................................. 26
11 U.S.C. § 506(b) .................................................................................. 27
11 U.S.C. § 506(d) ............................................................................ 26, 27
11 U.S.C. § 510(c)(1) .............................................................................. 13
11 U.S.C. § 546(a) .................................................................................. 28
11 U.S.C. § 554 ...................................................................................... 31
11 U.S.C. § 1111(b) ................................................................................ 16
11 U.S.C. § 1111(b)(1)(A) ....................................................................... 16
11 U.S.C. § 1115 ..................................................................................... 17
11 U.S.C. § 1123(a)(4) ...................................................................... 14, 32
11 U.S.C. § 1125 ....................................................................................... 2
11 U.S.C. § 1129(b) .......................................................................... 11, 15
11 U.S.C. § 1129(a)(5) ............................................................................ 19
11 U.S.C. § 1129(a)(7) ............................................................................ 15
11 U.S.C. § 1129(b)(2)(A) ....................................................................... 17
11 U.S.C. § 1129(b)(2)(A)(ii) .................................................................. 33
11 U.S.C. § 1129(b)(2)(A)(iii) ............................................. 2, 3, 16, 17, 33
11 U.S.C. § 1129(b)(2)(B) ....................................................................... 17
11 U.S.C. §  1129(b)(2)(B)(i) .................................................................. 18
11 U.S.C. § 1129(b)(2)(B)(ii) .................................................................. 18

1     Palmdale Hills Property, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal

2 Emerald, LLC, SunCal Johansson, LLC, SunCal Bickford, LLC, SJD Partners, LLC, SJD

3 Development, LLC, SCC Communities, LLC, North Orange Del Rio, LLC and Tesoro SF, LLC, in

4 their capacities as debtors and debtors-in-possession and as SunCal Plan Proponents in their

5 respective cases (the "Voluntary Debtors")[1] and SCC Acquisitions, LLC ("Acquisitions") in its

6 capacity as the SunCal Plan Proponent in eight of the Trustee Debtor Cases[2] (collectively the

7 "SunCal Plan Proponents") hereby submit the following *Reply* to the *Objections* ("Objections") to

8 the First Amended Disclosure Statements filed by the SunCal Plan Proponents (the "Disclosure

9 Statements") in support of their Chapter 11 Plans (the "Plans").

10 **I**

11 **PRELIMINARY STATEMENT**

12     The Plans proposed by the SunCal Plan Proponents are based on an incontestable premise:

13 The highest price for the Projects can only be obtained through a market sale, conducted without

14 the restraints imposed by the disputed liens and claims asserted by Lehman ALI, Inc., a *non*-debtor

15 Lehman lender ("Lehman ALI"), and Lehman Commercial Paper, Inc. ("LCPI") (together the

16 "Lehman Entities") against these properties.  Once the assets are sold, the merits of the claims

17 being asserted by the Lehman Entities will be resolved in due course, and all claims will then be

18 paid in accordance with their priority.

19     The foregoing plan template is neither unfair nor controversial, despite the Lehman

20 Entities' vociferous, but meritless objections.  The Lehman Entities simply do not like the idea that

21 they will be outbid, *a second time*[3], if they are forced to participate in a fair sale contest.

22     The SunCal Plan Proponents have substantially revised the Disclosure Statements to

23 incorporate the changes and disclosures requested by the pleadings filed by the both of the Official

24 Committee of Unsecured Creditors (the "Committees"), and Bond Safeguard.  The SunCal

---

[1] The Voluntary Debtors that are filing this Reply are Palmdale Hills Property LLC, SunCal Beaumont H eights LLC,
SunCal Johansson Ranch LLC, SunCal Emerald Meadows LLC, SunCal Bickford Ranch LLC, Acton Estates LLC,
SJD Partners Ltd., SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land LLC, and Tesoro
SF LLC.
[2] Acqusitions is the SunCal Plan Proponent for LBL-SunCal Oak Valley LLC, SunCal Heartland LLC, SunCal
Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal Torrance LLC
and SunCal Oak Knoll LLC
[3] See Exhibit A attached hereto.

1   Proponents are filing a redlined version of the Second Amended Disclosure Statements filed

2   concurrently herewith.

3          In the case of objections filed by the County of Los Angeles, the City of Palmdale and New

4   Anaverde, LLC, the SunCal Plan Proponents are willing to agree, in substantial measure, to

5   address the relevant disclosure objections raised by these claimants.  The same is true of the

6   relevant disclosure objections raised by the bond companies.

7                                              **II**

8                            **THE RELEVANT LEGAL STANDARD**

9          A disclosure statement is sufficient if it provides a hypothetical investor/creditor "adequate

10  information" regarding a proponent's reorganization plan. 11 U.S.C. § 1125.  A disclosure

11  statement hearing should focus on disclosure issues: It should not be used as a forum for resolving

12  plan confirmation issues, except in those circumstances where the proposed plan is patently un-

13  confirmable *on its face*.  *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) ("In

14  ruling on a disclosure statement a bankruptcy court must distinguish between 1) whether the

15  disclosure statement contains adequate information to allow the typical creditor to make an

16  informed decision on how to vote, and 2) whether the plan can be confirmed. Only where the

17  disclosure statement on its *face* relates to a plan that cannot be confirmed does the court have an

18  obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of

19  the plan; otherwise confirmation issues are left for later consideration.").  In this case, the latter

20  circumstance is not presented.

21         The Disclosure Statements filed by the SunCal Plan Proponents clearly describe simple

22  Plans that address the complex issues presented by these estates.  All estate assets will be sold for

23  the highest price obtainable, or abandoned, within 90 days of the Confirmation Date.  The sales,

24  which will be made without allowing credit bids pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), will

25  trigger the Effective Date of the plan.  All *allowed* administrative claims and all allowed secured

26  claims will then be paid from the proceeds, in their order of priority.  Any payout to the disputed

27  claims asserted by the Lehman Entities, and any payout to junior creditors, will have to await the

28

1   resolution of the disputes relating to the Lehman Entities' claims. Once this is resolved, all allowed

2   claims will then be paid in accordance with their lien or priority rights.

3       Although the Lehman Entities vehemently oppose the Plans, their opposition does not

4   render the Plans "patently unconfirmable" on their face. 104 B.R. 138.  To the contrary, within the

5   last three years, two courts of appeal have specifically held that plans providing for sales without

6   credit bid rights are expressly authorized under 11 U.S.C. § 1129(a)(2)(A)(iii).  I*n re Philadelphia*

7   *Newspapers, LLC*, 599 F.3d 298 (3rd Cir. 2010); *In re Pacific Lumber*, 584 F.3d 229 (5th Cir.

8   2009).  The Lehman Entities' transparent attempt to deny creditors an opportunity to vote on this

9   plan option should be rejected.  The Lehman Entities' self serving suggestion that the SunCal Plan

10  Proponents lack the desire or the means to perform under the terms of the Plan was decisively laid

11  to rest by the results of the recent bidding contest that occurred in the SunCal cases being

12  administered by Chapter 11 trustee Alfred Siegel.  A*s the article attached hereto as Exhibit A*

13  *confirms, SunCal outbid the Lehman Entities in the auction held in those cases by tens of millions,*

14  *which is exactly why the Lehman Entities are so determined to avoid an auction in this case.*

15                                  **III**

16      **GENERAL OBJECTIONS THAT APPLY TO ALL SUNCAL PLAN**

17          **PROPONENTS PLANS AND DISCLOSURE STATEMENTS**

18      **A.    Litco.**

19      In the Objections, the objecting parties have questioned the SunCal Proponents' ability to

20  make the Plan payments.  SunCal would submit that the objecting parties' position ignore the

21  results recently achieved in the Pool 1 cases. In those Chapter 11 cases, SunCal successfully raised

22  the sum of $71.0 million and outbid the Lehman Entities in the property auction. They have every

23  confidence, based upon their ongoing discussions with third party financing sources, that they will

24  be able to raise the amount of capital required to fund the claims purchases, payment of the

25  Administrative Claims and Post Confirmation Expenses in these cases. The SunCal Proponents

26  would also submit that a challenge to their *ability* to pay the Administrative Claims, fund these

27  purchases and payments, raises a feasibility issue that should be deferred until confirmation. *See In*

28  *re Columbia Gas Sys., Inc.*, 91-803, 1995 WL 404892 (Bankr. D. Del. June 16, 1995) ("Feasibility

of the plan is a confirmation issue."); *In re Mass*, 2008 WL 8013413 (Bankr. S.D. Cal. Apr. 23, 2008) ("Plan feasibility is really a plan confirmation issue."). The SunCal Parties will meet their obligations as they have in the past.

The objecting parties' suggestion that the SunCal Parties will not have access to any of the Net Sale Proceeds prior to the Plan Effective Date is premised upon a very large assumption:  To wit, that such a ruling will not have occurred by this date. This assumption is at least debatable. Pursuant to the terms of their Plan, the SunCal Plan Proponents will be assuming both the Restructuring Agreement entered into on May 23, 2008 and the related Settlement Agreement (the "Restructuring Agreements"). Under these agreements, which the Lehman Entities breached prepetition, Lehman Ali was obligated to a) take title to sixteen of the Projects (five of the Trustee Debtors' Projects and eleven of the Voluntary Debtors' projects) through a series of newly formed entities; b) assume the Lehman loans secured by liens against these Projects; c) pay the payables owing to vendors on account of work performed on these Projects; and d) assume or pay the bond claims associated with these Projects. Lehman Ali's breach of the Restructuring Agreements conveys upon the sixteen affected Debtors recoupment claims *in the amount of all damages incurred through this breach*. These claims include both the payments that were due under these agreements, *and the costs of maintaining and preserving these Projects after the breach through the present date, which otherwise would not have been the responsibility of these Debtors* (consequential damages). When these sixteen Projects are sold, which sales shall occur on the Effective Date, the SunCal Proponents will immediately "recoup" from these sales proceeds the damages owed and immediately pay any **allowed** administrative claims.

Although the Lehman Entities have been able to delay any inquiry into their ability to rebut the SunCal Proponents' case by refusing to allow discovery, this obstruction is now at an end. Depositions are now proceeding and they will be substantially completed during the next four to five weeks. The SunCal Proponents believe that this process will establish that the Lehman Entities' lack any rebuttal case, and this will allow the SunCal Proponents to seek a ruling on the claim disputes through summary judgment in late September or early October.

MAINDOCS-#164340-v3-SunCal_Reply_to_DS_Objections_(7_22).DOC

1    Secondarily, the Debtors would note that the bankruptcy code allows a debtor to use cash

2    over the objection of a secured claimant. As long as the alleged secured claimant's rights will

3    remain adequately protected after the proposed expenditure of the funds, usage is allowed. The

4    SunCal Proponents believe that they will be able to satisfy this "adequate protection" burden, as to

5    the use of a part of the Net Sales Proceeds, on the Effective Date, for the following reason. By that

6    point in time, the quantum evidence before the Court confirming the merits of their defenses to the

7    Lehman Claims will all but assure future disallowance of the claims in an amount that exceeds the

8    proposed usage. Under these circumstances, use of Net Proceeds in the anticipated amount of this

9    disallowance should be allowed.

10    Thirdly, there is no automatic stay that exists against the Group II: Voluntary Debtors, the

11    Group III: Voluntary Debtors, the Group IV: Voluntary Debtors, and SunCal Century City.

12    Finally, in the Plans for the Group I: Voluntary Debtors, the Group I: Trustee Debtors and

13    the Group II: Trustee Debtors, the Holders of Reliance Claims are provided a purchase offer of

14    such Claims by Litco. in the amount of 55 cents of their Allowed Claims regardless of whether

15    LCPI's automatic stay is applicable.

16    **B.    Solicitation Letters.**

17    The Voluntary Debtors Committee requests to include a letter in the solicitation packages,

18    to which the SunCal Proponents have no objection.

19    Lehman Entities also request to include solicitation letters in the forms attached as Exhibit

20    B and C to their objection.  The SunCal Plan Proponents oppose this request.  The Lehman

21    Entities' Disclosure Statements already purports to mischaracterize the SunCal Proponents Plans

22    and Disclosure Statement.  Further, the Lehman Entities will have an opportunity to file objections

23    to the SunCal Proponents Plan. Giving the Lehman Entities addition platforms is both unfair, and

24    confusing to creditors.  If the Lehman Entities are given an opportunity to include its letter in the

25    SunCal Plan Proponents' solicitation packages, then the SunCal Plan Proponents should be

26    afforded the same opportunity to include a letter in the Lehman Entities' solicitation packages.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV

## <u>REPLY TO OBJECTIONS TO THE VOLUNTARY DEBTORS</u>

## <u>PLANS AND DISCLOSURE STATEMENTS BY THE</u>

## <u>VOLUNTARY DEBTORS COMMITTEE AND THE LEHMAN ENTITIES</u>

### A.    <u>Typographical Errors and Streamline Issues</u>.

The Plans and Disclosure Statements have been amended to revise typographical errors and to tailor the Plans and Disclosure Statements to the Projects and Debtors that are subject thereto.  Moreover, various provisions have been amended to resolve ambiguities and arguable inconsistencies.

### B.    <u>Administrative Claims and Administrative Claims Bar Date</u>.

The definitions of Administrative Claims and Administrative Claims Bar Date have been amended to respond to the issued raised by the Committee.  Specifically, Administrative Claims are now defined to including claims accruing up through the Effective Date, and the Administrative Claims Bar Date now is twenty one days after the Effective Date.

### C.    <u>Beneficial Interests in Plan Trust</u>.

The definition of "beneficial interests" in the Disclosure Statements has been amended to merely require notice of such transfer to the Plan Trustee.

### D.    <u>Description Regarding Assets Is Sufficient</u>.

The Disclosure Statements describe the applicable Debtor's Assets, including among other things, such Debtor's Project, Cash, Litigation Claims, and where relevant CFD Bond Proceeds. The SunCal Plan Proponents are not aware of any other material assets.  Accordingly, the disclosure on the Debtor's Assets is adequate.

### E.    <u>Disclosure of SunCal Management</u>.

The definition of SunCal Management has been amended as follows: SunCal Management, LLC, a Delaware limited liability company, and the former property manager for the Projects, which has been succeed by Argent Management.

**F.    The Disclosure Regarding Unencumbered Cash Is Adequate.**

Each Disclosure Statement includes a description of the amount that the SunCal Plan Proponents assert to be unencumbered cash for each Debtor.  No more disclosure is necessary.

**G.    The Disclosure Regarding Potential Preferential Transfers Have Been Amended.**

Exhibit 6 to the Disclosure Statements has been amended to provide updated disclosure regarding the status of the pending preference actions.  Exhibit 6 has further been amended to include a chart regarding additional preference actions that may be brought.

**H.    Disclosure Regarding Bid Procedures.**

The Committee alleges that the Disclosure Statements fail to provide an adequate explanation of bid procedures.  The SunCal Proponents have amended and revised the bid procedures in the redlined version of the Second Amended Disclosure Statements filed concurrently herewith.

The SunCal Proponents have reduced the respective Break Up Fees to two and one half percent (2-1/2%) of the respective Minimum Sales Prices, plus the actual amounts to be paid to Allowed Administrative Claims as to each applicable Debtor.  A two and one half percent is reasonable under applicable case law.  See e.g., In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985) (approved overbid of $20,000 was 3% of sale price of $662,000).  The additional amounts as to the Allowed Administrative Claims merely represents repayment of the LitCo Plan Loan for the funding of payments to Allowed Administrative Claims under the applicable Plans.  A Stalking Horse Bidder will need assurances of prompt repayment of the Litco Plan Loan if it is not the Winner Bidder.  Without the repayment of the amounts Litco will fund for the payment of Allowed Administrative Claims, it will be difficult, if not impossible, to attract a Stalking Horse Bidder.

The Debtors have also revised the "Minimum Increments" for the bids are after the initial overbid, in particular with respect to Group III: Voluntary Debtors, to reflect increments proportionate to the Minimum Sale Price.

1    **I.    Acquisitions Should Act as the Plan Trustee.**

2         The Committee requests disclosure regarding the Acquisitions' potential conflicting duties

3    to the parent company of the Debtors and the Plan Trustee, as well as Acquisitions' duties and

4    compensation as the Distribution Agent.  The SunCal Proponents have revised the Disclosure

5    Statements to delete any compensation for Acquisitions, in its capacity as Plan Trustee, other than

6    mere reimbursement of expenses.  The Disclosure Statement now clarifies that the Committee is

7    given the authority to pursue any claims against SunCal Affiliates, as well as objections to the

8    claims of Affiliates.  The Disclosure Statement now further provides that the respective Debtors

9    will be dissolved upon the Effective Date.  In light of the foregoing, the Committee fails to identify

10   any other conflicts which would prevent Acquisitions from acting as Plan Trustee.

11   **J.    The Deadline for the Plan Supplement.**

12        The Committee requests the timing in which the Plan Supplement will be provided.  The

13   Disclosure Statements have been amended to remove the necessity for a Plan Supplement.

14   **K.    Risk Factors for Failure to Sell Projects.**

15        The SunCal Plan Proponents currently have disclosure regarding failure to sell the assets

16   and no further disclosure is necessary on that issue.  Any further disclosure is not necessary, and is

17   at best a feasibility issue properly addressed at confirmation.

18   **L.    Best Interest of Creditors Test Disclosure Is Adequate.**

19        The Committee alleges that the best interest test is no adequate because it does not discuss

20   potential actions against SunCal Management.  SunCal Management likely has a complete defense

21   based upon new value, contemporaneous exchange, and/or ordinary course of business.  As set

22   forth above, Exhibit 6 has been amended to include additional potential preference claims.

23   However, the recovery on such actions would not impact the best interest test because the same

24   recovery is available in Chapter 7 as is in Chapter 11.

25   **M.    Feasibility Disclosure Is Adequate.**

26        The Disclosure Statements have been amended to change the timeframe for the sale of the

27   Projects.  The Plan will be revised to be consistent there with.

28

1    **N.    Specific Objections to the Group II: Voluntary Debtors Disclosure Statement**.

2    In response to some of the more specific objections raised by the Committee to the Group

3  II: Voluntary Debtors, the amount that the SunCal Plan Proponents assert to be unencumbered cash

4  for each Group II: Voluntary Debtor, is disclosed.  The SunCal Plan Proponents currently have a

5  discussion in regarding "Failure to Sell the Group II: Assets: Voluntary Debtors" and no further

6  disclosure is necessary on that issue.

7    **O.    Specific Objections to the Group III: Voluntary Debtors Disclosure Statement**.

8    In response to some of the more specific objections raised by the Committee to the Group

9  III: Voluntary Debtors, (1) the Group III: Voluntary Debtors Disclosure Statement has been

10  amended to include the SunCal valuation of the Net Del Rio CFD Bonds Proceeds at $7.1 million,

11  (2) the amount that the SunCal Plan Proponents assert to be unencumbered cash for each Group

12  III: Voluntary Debtor, exclusive of the Net Del Rio CFD Bonds Proceeds, is disclosed and (3) a

13  statement that "Del Rio is not aware of any UCC statement having been filed against Del Rio in

14  connection with the Del Rio CFD Bonds either in Delaware or in California as of Del Rio's

15  Petition Date."  The Group III: Voluntary Debtors Disclosure Statement has also been amended to

16  disclosure creditors who received payment from the Del Rio CFD Bonds and the remaining

17  Holders of General Unsecured Claims.  Finally, the Group III: Voluntary Debtors Disclosure

18  Statement has been amended to adequately disclose payment to Del Rio's creditors from the bond

19  issuance.

20    **V.**

21    **REPLY TO OBJECTIONS TO THE TRUSTEE**

22    **DEBTORS PLANS AND DISCLOSURE STATEMENTS BY THE**

23    **TRUSTEE DEBTORS COMMITTEE AND THE LEHMAN ENTITIES**

24    **A.    Typographical Errors and Streamline Issues**

25    The Plans and Disclosure Statements have been amended to revise typographical errors and

26  to tailor the Plans and Disclosure Statements to the Projects and Debtors that are subject thereto.

27  Moreover, various provisions have been amended to resolve ambiguities and arguable

28  inconsistencies.

1     **B.     Objections Regarding Litco and Administrative Expenses.**

2          The objecting parties request additional disclosure regarding Litco. and payment of

3     Administrative Expenses.  The objections regarding Litco and Administrative Expenses have been

4     addressed above.

5          Moreover, the objecting parties allege that the Plans have inconsistent provisions.  The

6     Plans have been revised to remove inconsistencies therein.

7     **C.     The Sale Process Is Fair and Adequate.**

8          The Committee alleges that there is inadequate disclosure about the formulation of the

9     Minimum Sales Price and the Break-Up Fee and the basis for such formulation.  The Minimum

10    Sales Prices represent of 90% of the SunCal valuation of the Projects, which is disclosed in the

11    Disclosure Statements.  Moreover, the Break-Up Fee definition has been revised to an amount

12    equal to 2.5% of the Minimum Sales Price for the applicable Project, plus actual amounts paid on

13    Allowed Administrative Claims for the applicable Debtor.  Such amount is reasonable based on the

14    case law.

15    **D.     Risk Factors Are Adequate.**

16         The Committee alleges that there should be a discussion regarding abandonment of the

17    Projects.  The Disclosure Statements have been revised to remove abandonment of the Projects.

18    **E.     The Plans Are Feasible and Disclosure Thereon Is Adequate.**

19         The objecting parties allege that the success of the Plan hinge upon the Plan Proponents'

20    successfully funding the Plans, which is addressed above.

21         They further allege that the success of the Plan hinge upon the Plan Proponents'

22    successfully objecting to the Disputed Lehman Administrative Loans and allege that Disclosure

23    Statements should contain additional disclosure regarding the damages that might arise from the

24    wrongs committed by the Lehman Entities after approval of the loans by the Court.  The successes

25    of the Plans are not dependent upon the successful objection to the Disputed Lehman

26    Administrative Loans.  As set forth above, the Break-Up Fees have been revised to include the

27    repayment of any Litco Plan Loan amounts necessary to pay the Disputed Lehman Administrative

28    Loans, if allowed.

1    **F.    The Absolute Priority Rule Is Not Violated.**

2    The Committee alleges that although equity is cancelled, the Plan vests control in

3    Acquisitions, which is not contributing any new value.  Acquisitions is acting as Plan Trustee

4    without compensation.  Acquisitions will not receive any distribution on account of its interests in

5    violation of Section 1129(b).  The Committee fails to cite any authority there merely acting as a

6    Plan Trustee violates the Absolute Priority Rule.  The absolute priority rule only applies to

7    "property" that is retained "on account of" an equity interest. S*ee Bank of America Nat'l Trust &*

8    *Savings Assoc. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).  *The Plans explicitly state that*

9    *the SCC's equity interests are being cancelled*.  To the extent that the "rights" referenced above

10    have any value or constitute "property," they are being conveyed upon SCC in consideration for

11    the *post-petition services* that it will be providing as the Plan Trustee.  Such rights are not being

12    provided on "account of" SCC's interest in the Voluntary Debtors. S*ee In re PWS Holding Corp.,*

13    228 F.3d 224, 242 (3d Cir.2000) (equity holder's recovery cannot be deemed to be "on account of"

14    the equity interest "without some evidence of a causal relationship"); *In re Charter*

15    *Communications*, 419 B.R. 221, 269 (Bankr. S.D.N.Y. 2009) ("Courts have not prohibited parties

16    such as Mr. Allen who happen to hold equity from recovering other consideration. ... Accordingly,

17    the objection of the CCI Noteholders based on the absolute priority rule mischaracterizes the

18    settlement with Mr. Allen and is without merit.").

19    Lastly, the absolute priority rule is only relevant in the event that unsecured creditors did

20    not vote to accept the plan.  Thus it is premature to address this plan confirmation (cram down

21    issues) when creditors have not even voted on the Plans.

22    **G.    The Trustee Is Not Required to Act Without His Fiduciary Duties.**

23    The Committee alleges that the SunCal Plan Proponents do not intend to consult with the

24    Trustee in connection with the selection of the stalking horse bidder, analysis of overbids, etc., and

25    that the Trustee is expected to follow orders of the SunCal Plan Proponents, without regard to his

26    fiduciary duties.  This characterization is incorrect on two grounds.  First, the Plan provide for the

27    removal of the Trustee.  Second, until removed, the Trustee has the power to take any action that

28    the Trustee deems proper and appropriate.

MAINDOCS-#164340-v3-SunCal_Reply_to_DS_Objections_(7_22).DOC

**H.    Release Language Will Be Deleted.**

The Plans and the Disclosure Statements will be amended to delete releases of Insiders and third parties.

**I.    Payment of Administrative Claims & Feasibility Challenges**.

The Lehman Entities contention that the Plans do not provide for the payment of administrative claims on the Effective Date is in error. The Plans clearly state all *Allowed* administrative claims will be paid on the Effective Date. To the extent that the Lehman Entities are contesting the SunCal Proponents *ability* to pay the administrative claims, this raises a feasibility issue, which should be deferred until confirmation. *See In re Columbia Gas Sys., Inc.*, 91-803, 1995 WL 404892 (Bankr. D. Del. June 16, 1995) ("Feasibility of the plan is a confirmation issue."); *In re Mass*, 2008 WL 8013413 (Bankr. S.D. Cal. Apr. 23, 2008) ("Plan feasibility is really a plan confirmation issue.").

The Lehman Entities' feasibility objection ignores the structure of the Plans, and the recoupment and Section 502(d) rights held by the individual estates. The Plans are premised upon the sale of the Projects. These sales will close on the Effective Date. As this Court is aware, the last time the Projects were put up for sale, a qualified buyer promptly offered to acquire the same for hundreds of millions in cash. There is every reason to believe that this buyer, and other qualified buyers, will come forward and submit cash offers during the Sales Period. Since the feasibility test only requires a showing that the Plans are "not likely to fail," *In re Eastland Partners Ltd. P'ship*, 149 B.R. 105, 108 (Bankr. E.D. Mich. 1992) ("The debtor bears the burden of proving by a preponderance of the evidence that the plan is not likely to fail."), the SunCal Proponents have satisfied their burden. Sufficient funds will be available on the Effective Dates to pay all Allowed Administrative Claims.

The Lehman Entities presume that the sales proceeds will be unavailable to pay allowed administrative claims, but the terms of the Plans provide for an assumption of both the Restructuring Agreement entered into on May 23, 2008, and the related Settlement Agreement (the "Restructuring Agreements"). Under these agreements, which the Lehman Entities breached prepetition, Lehman ALI was obligated to cause a series of newly formed entities to a) take title to

1    sixteen of the Projects (five of the Trustee Debtors' Projects and eleven of the Voluntary Debtors'

2    projects); b) assume the Lehman loans secured by liens against these Projects; c) pay the payables

3    owing to vendors on account of work performed on these Projects; and d) assume or pay the bond

4    claims associated with these Projects.

5    Lehman ALI's breach of the Restructuring Agreements conveys upon the sixteen affected

6    Debtors recoupment claims in the amount of all damages incurred through such breach.  These

7    claims include both the payments that were due under these agreements, *and the costs of*

8    *maintaining and preserving these Projects after the breach through the present date, which*

9    *otherwise would not have been the responsibility of these Debtors* (consequential damages). When

10   these sixteen Projects are sold, which sales shall occur on the Effective Date, the SunCal

11   Proponents will immediately "recoup" from these sales proceeds the damages owed and

12   immediately pay any **allowed** administrative claims.  The initial hearing on the Recoupment Claim

13   Objection was heard on June 9, 2011.

14   The bulk of the "administrative" claims that the Lehman Entities are referring to are the

15   advances that Lehman ALI has made post-petition to the Trustee Debtors - loans that were only

16   necessary due to Lehman ALI's prepetition breach.  The SunCal Proponents have filed objections

17   to these claims based upon 11 U.S.C. § 502(d), since Lehman ALI was the recipient of over twenty

18   million in unpaid preference claims.  The SunCal Proponents believe these objections will result in

19   the disallowance of the Lehman ALI's administrative claims, until its returns the twenty million in

20   preferences that it owes and until the subordination action is resolved.  S*ee, In re Racing Services,*

21   *Inc.*, 571 F.3d 729, 731 (8th Cir. 2009) ("Administrative claims for post-petition services to a

22   bankruptcy estate have first priority when the assets of the estate are distributed to

23   creditors...However, § 510(c)(1) of the Bankruptcy Code authorizes the bankruptcy court to

24   subordinate an allowed administrative claim to other claims "under principles of equitable

25   subordination."); *Matter of Best Refrigerated Exp., Inc.*, 192 B.R. 503, 512-13 (Bankr. D.Neb.

26   1996) ("There is no question that subordinating an administrative claim to general unsecured

27   claims disturbs the order of payment set forth under the Bankruptcy Code. However, Section

28   510(c)(1) gives bankruptcy courts the authority to so reorder priorities."). Once Lehman ALI

1  returns the preferences that it has received, these funds, along with the funds recouped from the

2  sales proceeds, will provide more than sufficient funds to repay any outstanding allowed

3  administrative claims.

4      **J.**    **Retention of Sales Proceeds.**

5        The Lehman Entities contend that it is inappropriate for Acquisitions, in its capacity as the

6  Plan Trustee, to hold the Net Sales Proceeds.  In fact, as indicated above, the Net Sales Proceeds

7  will be held in the Net Sales Proceeds Account, not in Acquisitions's accounts.  To the extent that

8  the Lehman Entities do not believe this is "secure" enough for their needs, and the Court considers

9  this a material issue, the SunCal Proponents are willing to enter into a Deposit Control Agreement

10  or similar escrow arrangement that would limit access until either the Committee consented in

11  writing or the Court approved the release through an order.

12      **K.**    **The Unequal Treatment Argument.**

13        The Lehman Entities contend that a third party making an offer to buy claims – LitCo

14  under the Plan – cannot present an offer to creditors that pays more to creditors who both sell their

15  claims against Lehman and vote in favor of the Plan, This position is in error.  Because the third

16  party purchase offer is not funded estate assets, this does not unfairly discriminate against the other

17  unsecured creditors.  *In re Idearc Inc.,* 423 B.R. 138, 172 (Bankr. N.D.  Tex. 2009) ("Finally,

18  because the $3.0 million fund from which distributions will be made for Sub–Class 2 is being

19  gifted from the Lenders' collateral—and will not be made from the Debtors' assets—any slight

20  discrimination that could exist against claimants in Sub–Class 1 in favor of claimants in Sub–Class

21  2 does not violate the Bankruptcy Code."); *In re Journal Register Co.,* 407 B.R. 520 (Bankr.

22  S.D.N.Y. 2009) (finding that gift plan did not unfairly discriminate under section 1123(a)(4) of the

23  Bankruptcy Code because removing the gift from the plan would not change the recovery of the

24  objecting creditors, and so the creditors that received the gift did not do so at the expense of other

25  creditors in the same class); *In re WorldCom Inc.,* No. 02–13533, 2003 WL 23861928

26  (Bankr.S.D.N.Y. Oct. 31, 2003) (approving gift from class of creditors, instead of individual,

27  where class voted in favor of gift).  The Reliance Creditors are selling an individual asset, namely

28

1  their individual claims against the Lehman Entities.  They have a right to be paid more for this

2  additional asset.

3       **L.**    **The Section 1129(a)(7) Objections.**

4      The Lehman Entities object to the "best interests" analysis in the Disclosure Statements on

5  various grounds.  The exhibit reflecting this analysis will be corrected. Nothing more is necessary

6  from a disclosure perspective.  Moreover, it is worth noting that the "best interests" analysis in the

7  Lehman Entities' Disclosure Statement concludes that all creditors other than the Lehman Entities

8  would receive nothing in Chapter 7.  Accordingly, the Lehman Entities need no additional

9  disclosure regarding this issue.

10       **M.**    **The Fair and Equitable Allegation.**

11      In the Objection, the Lehman Entities contend that the Plans provisions addressing the

12  estates' recoupment rights fail to satisfy the "fair and equitable" test in 11 U.S.C. § 1129(b). First,

13  this is clearly a confirmation issue, not a disclosure issue.  Second, this issue will be tested when

14  the recoupment objection is either well along or resolved by the Court.  In either case, the Court

15  will be in a better position at that juncture to resolve the merits of what again is clearly a

16  confirmation issue.

17       **N.**    **The Cases Cited by the Lehman Entities Are Inapposite.**

18      In the Objection, the Lehman Entities argue that the cases of *In re California Hancock,*

19  *Inc.*, 88 B.R. 226 (9th Cir. BAP 1988), and *In re Monarch Beach Venture*, 166 B.R. 428 (C.D.Cal.

20  1993), render the Plans unconfirmable. Neither case stands for the proposition cited and the

21  *Monarch* ruling is not good law in any event.

22      In the *Hancock* case, a debtor filed a plan of reorganization in a single asset real estate case

23  shortly before a motion for relief from stay was filed.  *Hancock*, 88 B.R. at 226.  The plan

24  provided for the sale of the apartment project, which was over-encumbered by secured debt, to a

25  purported third party buyer.  *Id*. Under the terms of the sale, the buyer would pay a cash sum equal

26  to the allegedly "secured" part of the lender's claim.  The unsecured part of the lender's claim,

27  being attributable to a loan that was expressly non-recourse, would cease to exist.  *Id*.  The sale

28

1    agreement described in the plan further provided that the buyer and the debtor-seller would share

2    the future growth in the value of the project through a participatory note.

3         The bankruptcy court in *Hancock* rejected the plan, holding that the proposed sale was not

4    a true sale, but rather a "joint venture" that violated the absolute priority rule, the recourse

5    provisions in 11 U.S.C. § 1111(b) (converting a nonrecourse debt to recourse except where a sale

6    occurs) and the credit bid provisions in 11 U.S.C. § 363(k). *Id.* The debtor appealed this ruling.

7         At the outset of the appeal, the BAP acknowledged that the property had already been

8    foreclosed upon. Accordingly, under clear Ninth Circuit authority (which the court cited), the case

9    was "moot", depriving the Court of Article III jurisdiction. 88 B.R. at 227. Notwithstanding this

10   fact, the BAP gratuitously elected to opine on the substantive issues. In essence, the entire opinion

11   is dicta.

12        In the dicta part of the opinion (essentially the entire opinion), the Court agreed with the

13   lower court that the purported sale in the plan was not a true sale, and consequently this exception

14   to the recourse rights afforded to a non-recourse lender should have applied. The BAP also agreed

15   that the sale violated the absolute priority rule, since it was a joint venture. Finally, the BAP held

16   that the credit bid rights referenced in Section 363(k) should apply *on the facts* stating: "By

17   holding that it would allow the appellee the right to credit bid as set forth in § 363(k), the

18   bankruptcy court ruled that the appellee should be protected from the consequences of the loss of

19   recourse treatment as set forth in § 1111(b)(1)(A). The legislative history to § 363(k) clearly

20   contemplates such protection." *Hancock* at 88 B.R. at 230-31. This ruling has no application to

21   the facts of this case and does not directly address 11 U.S.C. § 1129(b)(2)(A)(iii).

22        In *Hancock*, the debtor was attempting to sell the property free and clear of the lender's lien

23   based upon the lender's relief from stay value, and then force the lender to accept only this value in

24   full satisfaction of its nonrecourse debt. This treatment obviously deprived the lender of its credit

25   bid right, the benefits of a true sale, and its right to deficiency under Section 1111(b). Here, the

26   facts are very different.

27        Under the SunCal Proponents' Plans, the Lehman Entities retain their deficiency rights

28   against 100% of the proceeds derived from a true sale. To the extent that they have a deficiency

claim over and above whatever part of the sales proceeds they receive, this claim will fall into the

general unsecured class, unless it is subordinated to the claims in this class, which is entirely

possible. In sum, *Hancock* is not binding authority, but dicta, and it does not apply to the fact in

this case.

The *Monarch* case cited by the Lehman Entities is factually inapposite and arguably not

good law. The *Monarch* court did not state that the denial of credit bid rights was not allowed

under 11 U.S.C. § 1129(b)(2)(A)(iii). Instead, the court ruled that 1) the absolute priority rule was

an "implicit" part of the "fair and equitable" requirement in 11 U.S.C. § 1129(b)(2)(A)**,** and 2) the

particular treatment granted the secured creditor in that case did not comply with the "implicit"

absolute priority rule. According to the *Monarch* court, any plan that allowed unsecured creditors

to receive a penny before all secured claims were paid in full necessarily violates the absolute

priority rule  - a position that has been rejected by the Ninth Circuit.

The so-called absolute priority rule is set forth in 11 U.S.C. § 1129(b)(2)(B):

> (B) With respect to **a class of unsecured claims**—
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; **or**
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

11 U.S.C. § 1129(b)(2)(B) (emphasis added). The "absolute priority rule" appears in

subparagraph (ii) of the above section. This section, by its express language, only applies to the

treatment accorded *unsecured* claims. See *Corestates Bank, N.A. v. United Chem. Techs., Inc.,*

202 B.R. 33, 55 (E.D.Pa.1996) ("This Court feels that if Congress wanted the payout of secured

claims to satisfy the absolute priority rule for purposes of determining whether a plan is fair and

equitable, it would have specifically included that requirement in § 1129(b)(2)(A) as it did in §

1129(b)(2)(B)."); *Matter of Sandy Ridge,* 881 F.2d 1346, 1350 (5th Cir. 1989) (stating "section

1129(b)(2)(A) deals with secured claims, while section 1129(b)(2)(B) deals with unsecured

claims"); *In re New Midland Plaza Associates*, 247 B.R. 877, 894 (Bankr. S.D.Fla. 2000) ("As a

1  fully secured creditor, Coolidge does not have standing to assert the absolute priority rule of §

2  1129(b)(2)(B)(ii).”); *In re Linda Vista Cinemas, L.L.C*., 442 B.R. 724, 753 (Bankr.D.Ariz. 2010)

3  (“this court disagrees with the *Monarch* decision, if it is intended to apply the absolute priority rule

4  to a *secured* class of creditors.  This is because the statute expressly contains the solitary

5  expression of this rule in the section that *only* deals with *unsecured* creditors.”); *In re Bashas' Inc*.,

6  437 B.R. 874, 928 (Bankr.D.Ariz. 2010) (same).  Although the Ninth Circuit has not expressly

7  addressed this point, the Ninth Circuit has indicated that it considers the statutory language in this

8  section to be crystal clear on this issue – the rule is applicable to unsecured creditors.  S*ee In re

9  Bonner Mall Partnership*, 2 F.3d 899, 907 (9th Cir. 1993); *Steelcase v. Johnston*, 21 F.3d 323, 329

10 (9th Cir. 1994).

11        In *Bonner Mall*, the Ninth Circuit stated “In determining whether section 1129(b)(2)(B)(ii)

12 abolishes the new value exception we apply the traditional tools of statutory construction.  The

13 interpretation of a statutory provision must begin with the plain meaning of its language. (citation

14 omitted). “If the statutory language is unambiguous, then [court’s] judicial inquiry is complete.”

15 *In re Price*, 353 F.3d 1135, 1141 (9th Cir. 2004).  The Ninth Circuit went on to state: “Here, **each

16 of the <u>unsecured</u> claims** against Bonner will not be paid in full on the effective date of the Plan.

17 As a result, section 1129(b)(2)(B)(i) cannot be satisfied.  Therefore, Bonner's Plan cannot be held

18 to be “fair and equitable” unless it complies with the provisions of section 1129(b)(2)(B)(ii).”  In

19 *Steelcase,* the Court stated “The absolute priority rule comes into play in the ‘cramdown’ situation

20 evident here; that is, where the court confirms a reorganization plan over the objections of a class

21 or classes of ***unsecured creditors*** … .” *Steelcase,* at 329 (emphasis added).  See also *In re

22 Sagewood Manor Associates Ltd. Partnership*, 223 B.R. 756, 773 (Bankr.D.Nev. 1998) (“The

23 United States Supreme Court and the Ninth Circuit, in explaining the absolute priority rule, have

24 indicated that the absolute priority rule applies only to unsecured creditors.”)   Accordingly, the

25 absolute priority rule does not apply to the Lehman Entities' secured claim, depriving the Lehman

26 Entities of standing to raise this issue.

27        The SunCal Proponents would also note that after the *Monarch* case was remanded by the

28 District Court on the basis of the above opinion, the same exact plan was then re-confirmed by

1   Judge Barr.  Aetna then appealed this second order, which was supported by sixteen pages of

2   findings that tracked the requirements in the *Steelcase* decision. When the merits of the confirmed

3   plan were presented to the District Court judge a second time in the form of a motion for stay

4   pending appeal, he declined to issue the stay requested, as did the Ninth Circuit.  In sum, the plan

5   in the *Monarch* case was confirmed - exactly as written.  <u>M</u>*onarch*, is not good law.

6   **O.    The Section 1129(a)(5) Allegation.**

7           In the Objection the Lehman Entities contend that the Plans include structural conflicts of

8   interest that bar confirmation under the "consistent with public policy" provision in Section

9   1129(a)(5).  These conflicts allegedly include the possibility that Mr. Elieff will negotiate Project

10  sales that generate lower sales price in return for the assumption of larger bond liabilities, and the

11  possibility that SCC Acquisitions will use its position as Plan Trustee to acquire the ES Claims on

12  more favorable conditions than otherwise might be available.

13          These allegations raise a confirmation issue, not a disclosure issue, and they are also

14  spurious.  The Plans provide that the Projects will be sold through a public auction.  Any qualified

15  bidder will be allowed to bid and will be encouraged to bid the highest price possible.  Mr. Elieff

16  will have no ability to manipulate the pricing.

17          Moreover the idea that the assumption of bond liabilities will be "traded" for lower pricing

18  ignores reality.  Any buyer will be required to replace or assume the bonds for two reasons.  First,

19  the Projects cannot be developed without the replacement or assumption of the bonds – these

20  liabilities constitute a charge against the land that runs with the land.  Accordingly, it is highly

21  unlikely that any buyer will attempt to acquire the Projects without addressing this circumstance in

22  its bid.  At the request of Bond Safeguard, the SunCal Plan Proponents have specifically amended

23  the plans to provide that the bonds will not be transferred to the Winner Bidder.  Second, the

24  objective of the sales is to obtain the highest *net yield* for creditors.  Ascertaining the highest and

25  best price as between an offer that provides for the assumption of the bonds and one that does not

26  will be both a simple and transparent exercise.  Third and finally, since the Committees will remain

27  in place during the Sales Period, they will be able to object to any sale that will not yield the

28  highest price.  In sum, no conflict exists under structure designed into the Plans and even if a

1    conflict arose in the future, checks and balance remain in place that will prevent such a conflict

2    from negatively impacting the Plan.

3      **P.**  **The Description of the ES Action.**

4       In the Objection, the Lehman Entities contend that the description of the ES Action in the

5    Disclosure Statement is insufficient.  According to the Lehman Entities the following

6    modifications/additions are required: 1) The Lehman Entities' perspective on the lawsuit must be

7    included; 2) the description should provide more detail regarding the risks; 3) the description

8    should explain that any recovery would be creditor specific, with some creditors receiving a

9    benefit and others receiving nothing; and 4) the liquidation analysis should reflect a return of zero

10    if the action fails.

11       The first contention raised above should be rejected by the Court.  The Disclosure

12    Statement is intended to describe the material facts relating to the SunCal Proponents' Plan. Here

13    the material facts are disclosed.  The SunCal Proponents' are entitled to present their opinion of

14    what these facts mean or will yield in the future, which view is presented.  The creditors will

15    receive a contrary view in the Lehman Entities' Disclosure Statement or through the Lehman

16    Entities' objection to plan confirmation.  Amalgamating the two documents as the Lehman Entities

17    suggest would simply create a monstrous and totally incomprehensible to me that few creditors

18    would read.  In sum, the present description in the Disclosure Statement provides all creditors

19    "adequate" information regarding the ES Action.

20       The second contention is an alternate version of the first and should be rejected for the

21    same reason.  The Court should reject the Lehman Entities' desire to clutter up the Disclosure

22    Statement with a self-serving dissertation concerning the risks associated with the ES Action.

23    Certainly the creditors are more than capable of discerning the obvious: Not every lawsuit

24    succeeds.  A risk that is already set forth in the Disclosure Statements.

25       The Lehman Entities' third contention ignores the fact that the Disclosure Statement details

26    the distinction between those creditors who are entitled to recover from the relief sought in the ES

27    Action and those who are not.  No more is required.  The Lehman Entities' contention that some

28    creditors will receive zero benefit from a successful prosecution of the ES Action is in error.  To

1   the extent that a Reliance Claimant's unsecured claim is reduced by  payment carved-out from

2   collateral  otherwise  only available to the Lehman Entities, such payment increases the dividend

3   payable to the other general unsecured claims.

4          The fourth contention is factually in error.  If the ES Action fails, the creditors will receive

5   a distribution from the estate in the amount of their pro rata share of any unencumbered assets.

6   These assets include, but are not limited to preference and fraudulent transfer recoveries and

7   unencumbered cash.  Although this dividend would be smaller than the dividend that would

8   otherwise be payable if the ES Action succeeds, it would not be zero.  The SunCal Proponents are

9   willing to include an alternative liquidation schedule in their Disclosure Statement that addresses

10  this possibility.

11          **Q.      Other Disclosure and Plan Issues Raised by Lehman Entities.**

12          The Court's tentative ruling specifically overruled "objections re who should conduct

13  auction of property" and states "it is not the court's role to rewrite substantive provision of the

14  Plan.  The bulk of the first several pages of the opposition relates to Lehman's displeasure with

15  plan terms."  Lehman Entities have raised numerous of these issues again, which based on the

16  Court's tentative ruling on May 13, 2011, are not addressed herein.

17          **R.      Specific Objections to SunCal Century City Disclosure Statement.**

18                  **1.      The SunCal Century City Disclosure Statement Will Be Amended to**

19                          **Include Administrative Claims Asserted Against SunCal Century City**

20                          **and the Potential Distribution to Holders of Allowed General Unsecured**

21                          **Claims.**

22          Section 4.1.3 of the SunCal Century City Disclosure Statement will be amended to include

23  the amount of the Administrative Claims and General Unsecured Claims that have been asserted

24  against the SunCal Century City Estate and the expected initial Distribution to Holders of General

25  Unsecured Claims as follows:

26          In summary, the asserted Claims against SunCal Century City consist of filed
            Administrative Claims and unpaid Professional Fees in the approximate amount
27          of $2,603,064 and General Unsecured Claims in the approximate amount of
            $4,390,043…

28

SunCal Century City's unencumbered cash on hand as of July 6, 2011, 2011 was $3,568,824.79.

As stated above, the SunCal Century City Reserve is in the amount of $300,000. Based on the foregoing, the Distribution to Holders of General Unsecured Claims is anticipated to be 15%. The foregoing percentage should not significantly decrease since there are no on on-going Administrative Claims other than limited discovery being conducted by the MB Firm in connection with the SunCal Century City Preference Claim, which is included in the fee estimated of unpaid Professional Fees. Further, the amount can be increased in the event certain Disputed Claims are disallowed and/or there is recovery, in excess of costs, on the SunCal Century City Preference Claim.

The SunCal Century City Plan has been amended to provide for a potential second Distribution based on any recovery from the SunCal Century City Preference Claim.

> ## 2.    The SunCal Century City Disclosure Statement Will Be Amended to Include Adequate Information Regarding the Risks and Costs of the Lehman Adversary Proceeding.

Section 10.24 of the SunCal Century City Disclosure Statement has been amended to include the following disclosure. The SunCal Plan Proponents shall have the right to move forward with the SunCal Century City Preference Claim in the event the SunCal Plan Proponents retain counsel, on a contingency fee basis, to prosecute the SunCal Century City Preference Claim. The costs associated with the prosecution of such litigation shall be paid from the SunCal Century City Reserve. Based on the contingency fee structure of any such litigation, Creditors may receive higher recoveries in the event that the SunCal Plan Proponents are successful in such litigation.

> ## 3.    The SunCal Century City Disclosure Statement Will Be Amended to Include Adequate Information Fees and Costs Associated with Administering the Plan Trust.

Section 10.8 of the SunCal Century City Disclosure Statement has been amended to include the following language:

The Plan shall reserve in the SunCal Century City Reserve an amount of $100,000 for the Committee to file claims against SunCal Affiliates and to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates and bond claims and reserve an additional $200,000 for funding costs of a contingency fee arrangement to prosecute the SunCal Century City Preference Claim and to pay Post Confirmation Expenses.

-22-

**4.      The Remaining Disclosure Objections Are Meritless and/or Addressed in the SunCal Century City Disclosure Statement.**

(1) The SunCal Century City Plan and the SunCal Century City Disclosure Statement have been amended to delete any and all references to Plan Supplement.

(2) The reference to Disbursing Agent was in error and has been replaced by Distribution Agent, which is a defined term.

(3) The Plan Trustee will not join in the Contract Action.  The following language has been deleted: If the Plan is Confirmed, the Plan Trustee reserves the right to join the Contract Action as additional plaintiffs.

(4) The language regarding Litigation Claims to be purchased by Litco. have been deleted.

(5) The Plan shall reject any and all executory contracts and Section 11.1 of the SunCal Century City Disclosure Statement has so been amended.  In addition, the Plan Proponent believes there will be no rejection claims.

**5.      The Plan Objections Should Be Overruled.**

The treatment for allowed Interests provides that "All … Interests shall receive a pro-rata share of any funds payable from the Distribution Account, after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, Allowed Priority Claims, and Allowed General Unsecured Claims receive a Maximum Distribution."  The SunCal Century City Plan has been further amended to clarify that Allowed Interests are cancelled.  Consequently, the SunCal Century City Plan complies with the absolute priority rule.

**VI.**

**REPLY TO CITY OF PALMDALE'S OBJECTION**

City of Palmdale's objections concern the Group I: Voluntary Debtors' Disclosure Statement.  The Group I: Voluntary Debtors' Disclosure Statement has been amended regarding the Project documents referenced in the objection.  Moreover, issues concerning feasibility are addressed elsewhere in the Group I: Voluntary Debtors Disclosure Statement.

City of Palmdale has raised the following two additional objections (1) the Group I: Voluntary Debtors Disclosure Statement fails to address delinquent unpaid special taxes and the

1   estimated amount of other Administrative Claims and (2) the Group I: Voluntary Debtors

2   Disclosure Statement fails to address the transferability of the Project documents.  Each is

3   addressed below.

4          With respect to the amount of claims, the Disclosure Statements provides a chart reflecting

5   Unpaid Real Property Taxes and Administrative Claims.  Any special taxes should be included in

6   the Unpaid Real Property Taxes.

7          With respect to transferability of Project documents, under the Group I Voluntary Debtors'

8   Plan, the Ritter Ranch Project will be sold.  As a result, the Palmdale Hills will assume only those

9   executory contracts and unexpired leases to be assigned to the Winning Bidder with respect to the

10  applicable Project.  A Schedule of Assumed and Assigned Agreements will be attached to the

11  Disclosure Statement as Exhibit "9".  The procedures for assumption and assignment of executory

12  contracts provide for appropriate deadlines to object to any proposed assumption and assignment.

13  Whether the Winner Bidder will seek assignment of the Project Documents and whether the City

14  objects to such assignment will be appropriately addressed at such time.

15                                         **VII.**

16                **REPLY TO THE BOND COMPANIES' OBJECTIONS**

17         On May 13, 2011, the Court issued a tentative ruling on the SunCal Plan Proponents' First

18  Amended Disclosure Statement wherein the Court indicated that the SunCal Plan Proponents had

19  satisfactorily responded to the Bond Companies objections.  The Court required disclosure of the

20  classes in which the Bond Companies' Claims were a part.  In the Second Amended Disclosure

21  Statements, the SunCal Plan Proponents have made clear that Bond Indemnification Claims are

22  treated as Reliance Claims whether Allowed General Unsecured Claims or Mechanic Lien Claims.

23         The SunCal Proponents have also been in contact with Bond Safeguard's counsel, and have

24  made various revisions to the Disclosure Statement at their request.

25  / / /

26

27

28

# VIII.

## REPLY TO THE LEHMAN RE'S OBJECTIONS

A. **The Group IV: Voluntary Debtors Disclosure Statement Provides Adequate Information that the Group IV: Voluntary Debtors Plan Is Predicated on Success of the Lehman Adversary Proceeding and/or the Contract Action.**

The Group IV: Voluntary Debtors' Plan is not solely dependent upon the success in the Lehman Adversary Proceeding.  Rather, the success of the Group IV: Voluntary Debtors' Plan is dependent upon the success in the Lehman Adversary Proceeding and/or the Contract Action.  Section 4.1.2 of the Group IV: Voluntary Debtors' Disclosure Statement provides adequate information in that regard.  Although rescission and equitable subordination are remedies sought in the Lehman Adversary Proceeding, the Group IV: Voluntary Debtors also seek damages against Lehman ALI in the SunCal Century City Preference Claim.  Such damages would be in the amount of at least equal to the value of the Pacific Point Project.

B. **The Group IV: Voluntary Debtors Disclosure Statement Will Provide Adequate Information Regarding Lehman Re's JOP Motion.**

The SunCal Plan Proponents have amended Section 4.1.2 of the Group IV: Voluntary Debtors Disclosure Statement to discuss Lehman Re's position in Lehman Re's Motion for Judgment on the Pleadings and to Expunge Lis Pendes Relating to the Pacific Point Property (the "JOP Motion").

C. **The Causes of Action Against Lehman Re and Lehman ALI in the Lehman Adversary Proceeding Are Not Stayed.**

Lehman Re alleges that the pursuit of the Lehman Adversary Proceeding has come to a grinding halt for a period of over one year, due to a series of court rulings regarding the applicability of LCPI's automatic stay.  This allegation is not true.  Although certain causes of action in the Lehman Adversary Proceeding have been stayed, the causes of action against non-Lehman defendant third parties, including Lehman Re, are not stayed.  Moreover, the additional causes of action against Lehman ALI in the Contract Action and the Lehman Adversary Proceeding are not stayed.  In fact, in a recent status conference, SJD Partners agreed, and Lehman

-25-

1    Re declined, to set a hearing date on the JOP Motion.  As another example, three of the Voluntary

2    Debtors have a hearing on a motion for summary judgment against Lehman ALI on certain causes

3    of action in the Lehman Adversary Proceeding, which is set for hearing on August 25, 2011.

4        **D.**    **The Group IV: Voluntary Debtors Provide Adequate Information Regarding**

5           **the Treatment for Classes 1.1 and 1.2.**

6        It is clear from Lehman Re's lengthy objection that the Group IV: Voluntary Debtors

7    Disclosure Statement contains adequate information regarding the treatment of Class 1.1 and 1.2

8    Disputed Claims, arising from the Pacific Point First Loan Agreement and the Pacific Point Second

9    Loan Agreement, respectively, under Bankruptcy Code Section 506(a) and 506(d).  However,

10   Lehman Re is correct in pointing out that there is no discussion regarding their potential unsecured

11   deficiency claims arising from the treatment of the Class 1.1 and 1.2 Disputed Claims.

12   Consequently, the Group IV: Voluntary Debtors Disclosure Statement has been amended to make

13   clear that any deficiency claim arising under Classes 1.1 and 1.2 Claims are not Reliance Claims

14   and that such Claims, to the extent that such Claims are Allowed, will be treated as Class 5.1

15   General Unsecured Claims.

16       **E.**    **The SunCal Plan Proponents Have Amended the Group IV: Disclosure**

17          **Statement to Provide Adequate Information Regarding the SunCal Valuation**

18          **of the Pacific Point Project and Have Revised the Disclosure Regarding the**

19          **Pacific Point Project Foreclosure.**

20       The Group IV: Voluntary Debtors Disclosure Statement has been amended as follows:

21   (1) to provide that the $16,000,000 value for the Pacific Point Project reflects the estimate made by

22   SunCal's underwriting team; and (2) to delete the word "illegal" in connection with the foreclosure

23   of the Pacific Point Project, and rather reference that the foreclosure of the Pacific Point Project is

24   subject to litigation in the Lehman Adversary Proceeding and in the Contract Action.

25       Moreover, the Group IV: Voluntary Debtors have amended Section 4.1.4 of the Disclosure

26   Statement to provide that the Group IV: Voluntary Debtors' review of the applicable loan and lien

27   document indicates that any purported liens on the cash were not validly perfected because the

28

1   accounts lack control agreements and therefore do not constitute "cash collateral."  In fact, no

2   Lehman Entity has asserted an interest in such cash.

3        The SunCal Plan Proponents will not delete the word "allegedly" in connection with the

4   alleged secured status of the Pacific Point Project because of the fact that Sections 506(b) and

5   506(d) render such liens null and void and because of the ongoing Lehman Adversary Proceeding.

6   **F.    The Description Regarding the Pacific Point Project Foreclosure Is Accurate**

7        **But Has Been Amended to Include Lehman Re's Response.**

8        The SunCal Plan Proponents believe that the disclosure regarding the litigation in the

9   Lehman Adversary Proceeding and the Contract Action regarding the Pacific Point Project is

10  accurate.  However, the SunCal Plan Proponents have amended Section 4.1.2 of the Group IV:

11  Voluntary Debtors' Disclosure Statement to include Lehman Re's response that disputes the

12  SunCal Plan Proponent's position.

13  **G.    The Disclosure Regarding Best Interest of Creditors Test Is Adequate.**

14       As set forth above, the SunCal Plan Proponents have amended the Group IV: Voluntary

15  Debtors Disclosure Statement to include Lehman Re's response to the SunCal Plan Proponents

16  position regarding the foreclosure of the Pacific Point Project.  Moreover, Section 15.1 of the

17  Group IV: Voluntary Debtors Disclosure Statement provides the following:

18       The Plan proposed by the Group IV: Voluntary Debtors is essentially a litigation and
         liquidation plan. It provides for the recovery of the Pacific Point Project and/or damages
19       through the Lehman Adversary Proceeding or the Contract Action and for the distribution
         of the resulting net proceeds, in accordance with the priorities provided for in the
20       Bankruptcy Code and under California law.

21       Moreover, Exhibit 7 provides a scenario in which the Group IV: Voluntary Debtors are

22  successful in their litigation attempts to recover the Pacific Point Project or damages which are

23  valued at $16,000,000 and a scenario in which they are not successful.  Accordingly, the Group IV:

24  Voluntary Debtors Disclosure Statement provides adequate information with this regard.

25  **H.    The Disclosure Regarding Reliance Claims and Recovery of the Pacific Point**

26       **Project and/or Damages Is Adequate.**

27       As set forth above, the Group IV: Voluntary Debtors Disclosure Statement contains a

28  comprehensive description of the Lehman Adversary Proceeding and the Contract Action in

1   connection with the litigation over the foreclosure of the Pacific Point Project.  Moreover, the

2   Group IV: Voluntary Debtors Disclosure Statement contains a definition of Reliance Claim as

3   follows:  "An Allowed Unsecured Claim and/or Allowed Mechanics Lien Claim against a Group

4   IV: Voluntary Debtor that would entitle the holder thereof to be the beneficiary of any recovery in

5   the Lehman Adversary Proceeding against a Lehman Entity by such Group IV: Voluntary Debtor,

6   as set forth in Exhibit "8" hereto."  Exhibit "8" to the Group IV: Voluntary Debtors Disclosure

7   Statement contains a list of the Reliance Claimants.  Accordingly, the Group IV: Voluntary

8   Debtors Disclosure Statement contains adequate information in connection therewith.

9       **I.**    **Exhibit "6" Regarding Preferential Transfers Has Been Revised.**

10         Exhibit "6" to the Group IV: Voluntary Debtors Disclosure Statement regarding

11   preferential transfers has been revised to include actions that may be brought against additional

12   parties, including SunCal Affiliates and their professional.  The Group IV: Voluntary Debtors Plan

13   has also been amended to provide that the Committee shall have the sole and exclusive right to file,

14   prosecute and resolve objections to Claims filed by the SunCal Affiliates and their professionals.

15   The Disclosure Statement has also been amended to disclose the following:  "The Voluntary

16   Debtors filed a Motion for an Order Extending the Limitations Period Under 11 U.S.C. §546(a)

17   requesting an extension of the limitations period under Section 546 through and including

18   October 24, 2011 under Local Bankruptcy Rule 9013-1.  No opposition was filed and the

19   Voluntary Debtors have uploaded an order.  To date, the order has not been entered."

20                       **IX**

21   **REPLY TO CENTRAL PACIFIC BANK'S AND ANAVERDE'S OBJECTIONS**

22         The Group I: Voluntary Debtors Disclosure Statement has been amended to provide for

23   procedures for notice to parties to executory contracts and unexpired leases and providing them

24   notice and opportunity to object prior to assumption, which addresses with their objections.

25         Moreover, the Group I: Voluntary Debtors' Disclosure Statement has been amended

26   address the objection of Anaverde and now includes agreed language to the definition of Available

27   Cash.

28

**X.**

**REPLY TO COUNTY OF LOS ANGELES TAX COLLECTOR'S OBJECTIONS**

The County of Los Angeles raises two objections.  The first objection is that the amount of Unpaid Secured Real Property Tax Claims in the Disclosure Statements is incorrect.  The Disclosure Statement has been amended to provide the following Unpaid Secured Real Property Tax Claims as set forth in the objection:  (1) Tesoro: $103,085.52, (2) Palmdale Hills: $3,008,044.29; (3) SunCal Torrance: $773,211.47; (4) Acton Estates: $463,324.95.

The second objection involves the treatment of the Unpaid Real Property Taxes.  The County of Los Angeles alleges that the County is entitled to a 10% delinquent penalty and a redemption interest rate of 1.5% per month.  The SunCal Plan Proponents have clarified that Allowed Secured Property Taxes will receive interest consistent with Section 511 of the Bankruptcy Code.  If and to the extent the County of Los Angeles has any further objection, it is a confirmation issue, not disclosure issues, and need not be addressed at this point.

**XI.**

**REPLY TO IRONHOUSE SANITARY DISTRICT'S OBJECTIONS**

According to the Delta Coves' books and records, the SunCal Plan Proponents do not believe there is an agreement which requires Delta Coves to make any payment to Ironhouse Sanitary District ("ISD") as a condition to ISD issuing a connection permit.  Any party who obtains the Delta Coves Project would necessarily need to do what is necessary to get appropriate permits for the sewer system.  Accordingly, no additional disclosure is necessary.

**XII.**

**OPEN ISSUES REGARDING THE COURT'S TENTATIVE DATED MAY 13, 2011**

Many of the Court's comments in the Court's tentative ruling on May 13, 2011 have been discussed and addressed above.  The below are responses to additional responses to the Court's comments.

(1)      Objections of Bond Safeguard and Lexon Insurance have been addressed as set forth above.

(2)      Objections of New Anaverde LLC have been addressed as set forth above.

-29-

1          (3)      Objections of City of Palmdale have been addressed as set forth above.

2          (4)      The Disclosure Statements should contain disclosure why executory contracts

3    cannot be disclosed at this time.  The Disclosure Statement has added Exhibit 9, which lists the

4    executory contracts that each Debtor will assume and assign.

5          (5)      The May 13, 2011 tentative states that the statement that "Accordingly, the

6    Creditors holding claims against the debtors will have an opportunity to choose between one of

7    two Plan" is incorrect because "a Creditor can vote for competing Plan."  The SunCal Plan

8    Proponents have revised the Disclosure Statement to reflect that Creditors can in favor of one, or

9    both, of the competing plans.

10         (6)      The May 13, 2011 tentative states that "A break up fee between 3-5% seems a little

11   high… The DS needs to provide additional information regarding the sales procedures."

12         As set forth above, the Disclosure Statements have been revised to provide a 2.5% break-

13   up fee.  As set forth above, the additional amounts as to the Allowed Administrative Claims

14   merely represent repayment of the LitCo Plan Loan for the funding of payments to Allowed

15   Administrative Claims under the applicable Plans.  A Stalking Horse Bidder will need assurances

16   of prompt repayment of the Litco Plan Loan if it is not the Winner Bidder.

17         (7)      The May 13, 2011 tentative states that the Disputed Lehman Administrative Loans

18   "were post-petition financing which were approved by the court. Thus, it is unclear why the DS

19   lists these loans as 'disputed'" or forced."

20         The language in the applicable Disclosure Statements has been amended to rectify this

21   issue.  First, the reference to the Disputed Lehman Administrative Loans has been deleted from the

22   Voluntary Debtors' Plans.  As to the Trustee Debtors' Plans, the revisions to the Disclosure

23   Statement contains discussions with respect to objection to the Disputed Lehman Administrative

24   Loans based upon the 502(d) Objection, as well as the Contract Action providing a potential offset

25   against the Disputed Administrative Loan.  Further, the applicable Disclosure Statements contain

26   additions grounds based inter alia upon the misrepresentations made by Lehman Lenders to the

27   Debtors and the Court regarding their purported ownership of eight of the Lehman Loans that are

28   at issue in this case.

(8)    The May 13, 2011 tentative states that the Minimum Increment should be tailored for each Project based on its value.  The Debtors have revised the "Minimum Increments" for the bids are after the Initial Overbid, in particular with respect to Group III: Voluntary Debtors, to reflect increments proportionate to the Minimum Sale Price.

(9)    The May 13, 2011 tentative states that bid procedures require more detail.  The SunCal Proponents have revised the bid procedures in the redline Disclosure Statement.

(10)    The May 13, 2011 tentative states "as this is a liquidating Plan, it does not make sense why certain property would be excluded and why."  The Plans provide for all assets of the estate, which are not otherwise sold, to be transferred to the Plan Trust.  The Plan Trustee may seek to abandon property consistent with the standards set forth in Section 554.  If the Court requires that the Plan Trustee may only abandon property subject to Court approval under Section 554, then the SunCal Plan Proponents can further modify the Plan accordingly.

(11)    The May 13, 2011 tentative states, in regards to the "Sales Period" the following: However, it should be noted that as to Group I and II Debtors, the stay is in effect. So in essence the Sales Period for Group I and II Debtors could surpass the 60 day limit after the Effective Date."  To address this concern, the Effective Date has been revised as follows:

> Effective Date. A date selected by the applicable SunCal Plan Proponent(s) that is not later than the ninetieth (90th) calendar day after the Confirmation Date, and provided there is no stay pending appeal of the Confirmation Order. However, in any case where the actions provided for in the Plan would be delayed by the automatic stay applicable in the case of any Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to obtain relief from any such stay.  The Effective Date may be further extended by the Bankruptcy Court after notice and hearing to all parties in interest.

The Disclosure Statement further provides that if the Court determines there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss or convert the case.

(12)    The May 13, 2011 tentative states, in regards to "Reliance Claim" the following: "However, the DS does not contain adequate information regarding what an "Allowed Unsecured Claim" is. In fact, the DS does not provide a definition of "Allowed Unsecured Claim" but does provide a definition of "Allowed Secured Claims" and "Allowed Claim". Also it should be noted

-31-

that the Plan will pay the Reliance Claims first upon recovery of funds, and parties holding other unsecured claims will receive nothing until the Reliance Claims are paid in full. This appears to be a violation of § 1123(a)(4), as discriminates against unsecured creditors. However, it must be noted that this is a confirmation issue, and not necessarily a DS issue. Regardless, Debtors should explain this or at least amend the Plan to comply with § 1123(a)(4)."

The Disclosure Statement has been revised to include a definition of "Allowed Unsecured Claim".  Furthermore, Reliance claims are separately classified from other unsecured claims which are not reliance claims.  Thus, the Plan does "provide the same treatment for each claim… of a particular class" consistent with Section 1123(a)(4).

(13)    The May 13, 2011 tentative states, in regards to the Lehman Recoupment Claim Objections and State Court Action, the following: "However, the DS does not contain any analysis or discussion regarding the merits of these claims, or any potential risk. For instance, they should at least discuss what Lehman's contentions or how Lehman disputes these claims.  'Adequate Information' would entail a clear summary of how Lehman disputes these claims, and the probability of success. Moreover, as it relates to Group I and II Debtors, the DS is silent that in order to proceed in this relief, the Moving Party would need to require relief from stay in the Lehman Commercial Bankruptcy Case. This may be a major impediment to success of the Recoupment Claims. 'the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible', the court should exercise its discretion to refuse to consider the adequacy of disclosures.'  Thus, the feasibility of the Plan is in such doubt to warrant denial of the Disclosure Statement.

The Disclosure Statement has been revised to include an analysis of Lehman's Opposition to the 502(d) Objection. The applicable Disclosure Statements have also been amended to include over two pages of disclosure on the Recoupment Objection.

As to the applicability of LCPI's automatic stay, at various hearings since May 13th, this Court has resolved this issue.  Both the Recoupment Objection and the 502(d) Objection are claim objections, and therefore not subject to LCPI's automatic stay.  See In re Wheatfield Business Park, 308 B.R. 463, 466 (9th Cir. BAP 2004); In re Financial News Network, 158 B.R. 570

(S.D.N.Y. 1993); In re Metiom, 301 B.R. 634, 638-639 (Bankr. S.D.N.Y. 2003); In re PRS Ins. Group, 331 B.R. 580, 587 (Bankr.D.Del. 2005).  Similarly, the Contract Action is asserted against various Lehman Entities which are not chapter 11 debtors, and therefore no automatic stay is implicated.

(14)    The May 13, 2011 tentative states, in regards to the treatment of Allowed Administrative Claims, the following: "However, it should be noted that the Effective Date as defined to 'occur on the120th Day after the later of: (1) the Confirmation Date or (2) the date any stay barring the implementation of the Plan arising from the Lehman Entities cases is no longer applicable, has been deemed inapplicable, or has been lifted by a Court of competent jurisdiction. However, the Plan provides for payment of 55% to certain non priority unsecured claims defined as 'Reliance Claims', which will be paid 60 days after the Confirmation Date, this is a violation of the absolute priority rule, and needs to be addressed."

The Disclosure Statement has been revised to clarify that Reliance Claims are paid on the Effective Date.

(15)    The May 13, 2011 tentative, in regards to treatment of Lehman's Disputed Claims, states the following: "Plan describes the Treatment of Lehman's Disputed Claims and Disputed Liens states if the sale effort is successful, then Lehman will retain their interest in their Disputed Lien 'pending a Final Order(s) resolving the Allowance of applicable Disputed Claim(s) and determining the validity, priority, and extent of the applicable Disputed Lien(s) against the applicable Plan Trust's Assets.' However, it does not appear that is the 'indubitable equivalent' of their claims, pursuant to 11 U.S.C. §1129(b)(2)(A)(iii).  The proposed plan treatment satisfied 11 U.S.C. §1129(b)(2)(A)(ii), where the Lehman Entities retain their lien on the sale proceeds, pending a determination of their Disputed Liens.

(16)    The May 13, 2011 tentative, in regards to the Litco. Plan Loan, states the following: "However, the DS does not adequately describe this loan, as in the terms, if it will cover all administrative expenses, etc. Specifically, they fail to describe the size of the loan, security offered to Acquisitions in exchange, how Debtors will pay back this loan, etc. Moreover, according to Section 10.20 of the DS I, Acquisitions will receive a complete release of all claims the

1   Reorganized Debtor may have against it. Disclosure Statement Group I, pg. 80, ln 10-15. Thus, the

2   DS fails to explain basic information regarding this loan, and what Debtors are giving away in

3   exchange."   The status of the Litco Plan Loan is discussed above.

4          (17)    On pg. 19, lns 25-26, the DS contemplates a Plan Trust Agreement, and states that

5   'will be in substantially the form contained in the Plan Supplement'. However, no Plan Trust

6   Agreement was provided in the DS.   Thus, in order to have adequate disclosure, the Plan Trust

7   Agreement needs to be provided with the DS I.

8          The Disclosure Statements have been amended to provide greater detail regarding the Plan

9   Trust, such that a separate Plan Trust Agreement and Plan Supplement have been deleted.

10         (18)    On Pg. 19, lns 23-24, the 'Plan Trustee' is defined as Acquisitions. It goes without

11  saying that this is troublesome as Acquisitions is the indirect parent of all Debtors. However, the

12  Reply sates that they will hire an "independent professional" to oversee the Sales Procedures.

13  Reply, pg. 8, ln 6. However, this does not solve the underlying issue.

14         The SunCal Proponents have revised the Disclosure Statements to delete any compensation

15  for Acquisitions, in its capacity as Plan Trustee, other than mere reimbursement of expenses.

16  Based upon discussions with counsels for the Committees, the Disclosure Statement now provides

17  that the Committees are given the authority to pursue any claims against SunCal Affiliates, as well

18  as objections to the claims of Affiliates.  The SunCal Plan Proponents believe this should

19  adequately address any conflict issues.

20         (19)    The May 13, 2011 tentative, in regards to the liquidation analysis, states the

21  analysis were incomplete.  Exhibit 7 to each Disclosure Statement was revised.

22  DATED:  July 18, 2011                    **WINTHROP COUCHOT**
                                             **PROFESSIONAL CORPORATION**
23

24                                          By:___/s/ *Paul J. Couchot*_____
                                                  Paul J. Couchot, Esq.
25                                          General Insolvency Counsel for Voluntary Debtors,
                                            Palmdale Hills Property, LLC, et. al.
26

27

28

-34-

1

# PROOF OF SERVICE OF DOCUMENT

2

3
I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

4

5
A true and correct copy of the foregoing document described as:  **SUNCAL PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO FIRST AMENDED DISCLOSURE STATEMENTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

6

7
I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

8

9
☒  Service information continued on attached page

10

11
II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

12

13

14

15
☐  Service information continued on attached page

16

17
III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 18, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

18

19

20
**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

21

22

23
☐  Service information continued on attached page

24

25
I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

26

| July 18, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

27

28

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbaronedess.com, mpritikin@millerbaronedess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wisebloood    dwisebloood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

MAINDOCS-#164340-v3-SunCal_Reply_to_DS_Objections_(7_22).DOC