1

PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.

2

660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660

3

Telephone: (949) 720-4100
Facsimile: (949) 720-4111

4

General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

5

6

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH A PROFESSIONAL
CORPORATION

7

8

2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100

9

Facsimile:  (949) 252-1514

10

Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

11

12

In re

13

PALMDALE HILLS PROPERTY, AND ITS
RELATED DEBTORS,

14

Joint Administered Debtors and
Debtors-in-Possession

15

16

Affects:

17

☐ All Debtors

☐ Palmdale Hills Property, LLC

18

☐ SunCal Beaumont Heights, LLC

☐ SCC/Palmdale, LLC

19

☐ SunCal Johannson Ranch, LLC

20

☐ SunCal Summit Valley, LLC

21

☐ SunCal Emerald Meadows LLC

☐ SunCal Bickford Ranch, LLC

22

☐ Acton Estates, LLC

23

☐ Seven Brothers LLC

☐ SJD Partners, Ltd.

24

☐ SJD Development Corp.

25

☐ Kirby Estates, LLC

☐ SunCal Communities I, LLC

26

☐ SunCal Communities III, LLC

27

☐ SCC Communities LLC

☐ North Orange Del Rio Land, LLC

28

☐ Tesoro SF LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 Proceedings

~~FIRST AMENDED~~**[REDLINED] SECOND**
**AMENDED** DISCLOSURE STATEMENT
DESCRIBING ~~FIRST AMENDED~~**SECOND**
**AMENDED** CHAPTER 11 PLAN FILED
BY ~~SUNCAL PLAN~~
~~PROPONENTS~~**SUNCAL PLAN**
**PROPONENT** IN THE CHAPTER 11 CASE
OF SUNCAL CENTURY CITY, LLC

Date:        July 22, 2011
Time:       11:00 a.m.
Place:       Courtroom 5A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LBL-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☒ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................    2

II.     DEFINITIONS AND RULES OF INTERPRETATION ...................................    3
        2.1    Definitions .............................................................................................    3
        2.2    Rules of Construction ...........................................................................    19
        2.3    Exhibits ..................................................................................................    20

III.    PLAN CONFIRMATION DEADLINES ...........................................................    20
        3.1    Time and Place of the Confirmation Hearing ......................................    20
        3.2    Deadline for Voting for or Against the Plan ........................................    20
        3.3    Deadline for Objecting to the Confirmation of the Plan.......................    20
        3.4    Identity of Person to Contact for More Information
               Regarding the Plan ...............................................................................    21
        3.5    Disclaimer ..............................................................................................    21

IV.     FACTUAL BACKGROUND OF THE DEBTORS ............................................    22
        4.1    The Formation of the Debtors and the Projects ...................................    22
               4.1.1   Overview of the Debtors and Their Projects............................    22
               4.1.2   Disputed Claims and Liens ......................................................    23
               4.1.3   A Summary of All of the Alleged Claims
                       Against SunCal Century City ..................................................    23
               4.1.4   Summary of SunCal Century City's Cash................................    23
        4.2    Factual Circumstances Leading to the Filing of the
               Debtors' Chapter 11 Cases....................................................................    24
               4.2.1   Introduction..............................................................................    24
               4.2.2   Background on the SunCal Companies .....................................    24
               4.2.3   The Origins of the SunCal/Lehman Joint Venture...................    24
               4.2.4   Lehman's Effective Control over the Management
                       of the Debtors and Promises of Ongoing Funding...................    25
               4.2.5   The 2008 Restructuring Agreement...........................................    26
               4.2.6   The Lehman Lenders Hire Radco ..............................................    28
               4.2.7   The Lehman Lenders' Failure to Close on the
                       Settlement Agreement...............................................................    28
               4.2.8   The Lehman Lenders' Undisclosed Sale of Most
                       of the Debtors' Loans...............................................................    29
               4.2.9   Lehman's Foreclosure Sale and Purchase of the
                       Pacific Point Project.................................................................    29
               4.2.10  Alvarez and Marsal Take Over Control of the
                       Lehman Entities After the Chapter 11 Filing of
                       LBHI and LCPI .........................................................................    31
        4.3    The Debtors' Potential Preferential Transfers ....................................    31

# TABLE OF CONTENTS

## (Continued)

| | | PAGE |
|---|---|---|
| V. | SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES | 31 |
| | 5.1    Voluntary Debtors | 31 |
| |      5.1.1   Joint Administration of the Voluntary Debtors and the Trustee Debtors | 31 |
| | 5.2    The Trustee Debtors and Their Professionals | 31 |
| | 5.3    The Debtors' Various Motions Relating to Financing for the Projects and to Pay Professional Fees | 32 |
| | 5.4    SunCal's Discovery of the Danske Repo | 33 |
| | 5.5    The Sale of the 10,000 Santa Monica Project to Danske Bank | 33 |
| VI. | TREATMENT OF UNCLASSIFIED CLAIMS | 33 |
| | 6.1    Introductions | 33 |
| | 6.2    Treatment of Allowed Administrative Claims | 33 |
| | 6.3    Administrative Claims Bar Date | 34 |
| | 6.4    Treatment of Priority Unsecured Tax Claims | 35 |
| VII. | CLASSIFICATION OF CLAIMS AND INTERESTS | 35 |
| VIII. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 36 |
| | 8.1    The Plan's Treatment of Holders of General Unsecured Claims (Class 1.1) | 36 |
| | 8.2    The Plan's Treatment of Holders of Allowed Interests | 36 |
| IX. | ACCEPTANCE OR REJECTION OF THE PLAN | 36 |
| | 9.1    Introduction | 36 |
| | 9.2    Who May Object to Confirmation of the Plan | 37 |
| | 9.3    Who May Vote to Accept/Reject the Plan | 37 |
| | 9.4    What Is an Allowed Claim/Interest | 37 |
| | 9.5    What Is an Impaired Class | 37 |
| | 9.6    Who Is Not Entitled to Vote | 37 |
| | 9.7    Who Can Vote in More than One Class | 38 |
| | 9.8    Votes Necessary for a Class to Accept the Plan | 38 |
| | 9.9    Treatment of Nonaccepting Classes | 38 |
| | 9.10   Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 39 |
| X. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 39 |
| | 10.1   Introduction | 39 |
| | 10.2   Removal of Trustee | 39 |
| | 10.3   Transfer of Property To The Plan Trust | 39 |
| | 10.4   Purpose of the Plan Trust Assets After Effective Date | 40 |
| | 10.5   Trust Agreement | 40 |

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

| | | |
|---|---|---|
| 10.6 | Operations of the Plan Trustee | 41 |
| 10.7 | The Plan Trustee | 41 |
| 10.8 | Payment of Trust Expenses | 41 |
| 10.9 | Plan Distribution System | 41 |
| 10.10 | Claims Estimation Rights | 42 |
| 10.11 | No Payment of Transfer-Related Fees to the United States Trustee | 42 |
| 10.12 | No Payment of Transfer-Related Fees to the Trustee | 42 |
| 10.13 | Books and Records of Trust | 42 |
| 10.14 | Limitations on Liability | 42 |
| 10.15 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 43 |
| 10.16 | Termination of the Trust | 44 |
| 10.17 | Exemption from Certain Transfer Taxes | 44 |
| 10.18 | Tax Consequence of The Plan | 45 |
| 10.19 | The Plan Sponsor | 45 |
| 10.20 | The Trustee Debtors' Committee. | 45 |
| | 10.21.1    Duties and Powers | 45 |
| | 10.21.2    Dissolution of Committee | 46 |
| 10.22 | Litigation Claims | 46 |
| 10.23 | Collection of Litigation Recoveries | 46 |
| **XI.** | **RISK FACTORS** | 46 |
| 11.1 | Plan Risks | 46 |
| 11.2 | The Plan May Not be Accepted or Confirmed | 47 |
| 11.3 | Adverse Outcome of Pending Litigation | 47 |
| **XII.** | **DISTRIBUTIONS** | 47 |
| 12.1 | Distribution Agent | 47 |
| 12.2 | Distributions | 47 |
| | 12.2.1  Dates of Distributions | 47 |
| | 12.2.2  Limitation on Liability | 48 |
| 12.3 | Old Instruments and Securities | 48 |
| | 12.3.1  Surrender and Cancellation of Instruments and Securities | 48 |
| | 12.3.2  Cancellation of Liens | 48 |
| | 12.3.3 De Minimis Distributions and Fractional Shares | 48 |
| | 12.3.4  Delivery of Distributions | 49 |
| | 12.3.5  Undeliverable Distributions | 49 |
| | 12.3.6  Disposition of Unclaimed Property | 49 |
| **XIII.** | **OBJECTION TO CLAIMS AND DISPUTE CLAIMS** | 50 |
| 13.1 | Standing for Objections to Claims | 50 |
| 13.2 | Treatment of Disputed Claims and Disputed Liens | 50 |
| | 13.2.1    No Distribution Pending Allowance | 50 |
| | 13.2.2    Distribution After Allowance | 50 |
| **XIV.** | **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | 51 |
| 14.1 | Executory Contracts Being Assumed | 51 |
| 14.2 | Executory Contracts Being Rejected | 51 |

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC__CC__DS.DOCMAINDOCS-#163421-v5-SCC-CC-DS.DOCMerge.DOC

14.3    Bar Date for Rejection Damages..................................................... 51
14.4    Changes in Rates Subject to Regulatory Commission Approval.................. 51

XV.    BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY .............. 51
15.1    Best Interest Test..................................................................... 51
15.2    Feasibility............................................................................. 52

XVI.    LIMITATION OF LIABILITY ...................................................... 53
16.1    No Liability for Solicitation or Participation ................................ 53

XVII.    CONDITIONS TO CONFIRMATION AND EFFECTIVENESS
OF THE PLAN ..................................................................... 53
17.1    Conditions Precedent to Plan Confirmation .............................. 53
17.2    Conditions Precedent to Plan Effectiveness ............................. 53

XVIII. RETENTION OF JURISDICTION ................................................ 54

XIX.    MODIFICATION OR WITHDRAWAL OF THE PLAN......................... 54
19.1    Modification of Plan ............................................................ 54
19.2    Nonconsensual Confirmation................................................. 54

XX.    MISCELLANEOUS ................................................................. 54
20.1    Payment of Statutory Fees .................................................... 54
20.2    Payment Dates................................................................... 55
20.3    Headings ......................................................................... 55
20.4    Other Documents and Actions ................................................ 55
20.5    Notices ........................................................................... 55
20.6    Governing Law ................................................................. 56
20.7    Binding Effect................................................................... 56
20.8    Successors and Assigns........................................................ 56
20.9    Severability of Plan Provisions .............................................. 56
20.10  No Waiver ....................................................................... 57
20.11  Inconsistencies ................................................................. 57
20.12  Exemption from Certain Transfer Taxes and Recording Fees.............. 57
20.13  Post-Confirmation Status Report ............................................ 57
20.14  Post-Confirmation Conversion/Dismissal ................................. 58
20.15  Final Decree .................................................................... 58

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed by Acquisitions as the SunCal Plan Proponent ~~s,~~ in the ~~Debtor's~~ Chapter 11 Case ~~SunCal Century City~~.  In addition to being the proponent, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for ~~all of the Debtors' cases for such Plans that~~ Cases in which the SunCal Plan Proponents' Plan(s) are ~~confirmed~~ the Plan.  ~~.~~

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the SunCal Plan Proponent ~~s is~~ are the proponent ~~s~~ of the Plan sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides for the ~~-~~prosecution and recovery of the proceeds of the ~~SunCal Century City Preference Claim~~Lehman Preference Claim against Lehman ALI and the ~~distribution~~Distribution of the Available Cash ~~of the remaining proceeds of the 10,000 Santa Monica Project (formerly owned by SunCal Century City)~~ to Creditors holding Allowed Claims~~, and potentially Holders of Interests~~, in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.  The Plan also provides for the potential prosecution and potential recovery of the Lehman Preference Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation Recoveries.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

> ➤ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> ➤ **HOW YOUR CLAIM IS TREATED;**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC—CC—DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1     ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**

2        **RECEIVE IN LIQUIDATION;**

3     ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS**

4        **DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

5     ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**

6        **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

7     ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

8     ➢ **WHETHER THE PLAN IS FEASIBLE.**

9  This Disclosure Statement cannot tell you everything about your rights.  You should

10  consider consulting your own attorney to obtain more specific advice on how the Plan will affect

11  you and your best course of action.

12  Be sure to read the Plan as well as this Disclosure Statement.  If there are any

13  inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

14  The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

15  concerning the Plan.  On _____, 2011, the Bankruptcy Court entered an order approving this

16  Disclosure Statement, based upon a finding that this document contained "adequate information"

17  to enable parties affected by the Plan to make an informed judgment regarding the Plan.  Any party

18  can now solicit votes for or against the Plan.

19  <div align="center">**II.**</div>

20  <div align="center">**DEFINITIONS AND RULES OF INTERPRETATION**</div>

21  **2.1    Definitions.**

22  The following defined terms are used in this Disclosure Statement.  Any capitalized term

23  that is not defined herein, but is defined in the Bankruptcy Code ~~s~~or the Bankruptcy Rules, shall

24  have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

25      2.1.1    <u>10,000 Santa Monica Project</u>.  The Project formerly owned by ~~SunCal~~

26  ~~Century City~~<u>the Debtor</u>, located in the City of Century City, California, <u>which was sold to Danske</u>

27  <u>Bank pursuant to a Final Order of the Bankruptcy Court for complete forgiveness of the SunCal</u>

28  <u>Century City Loan Agreement and $5.3 million,</u> as more particularly described herein.

2.1.2    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a Creditor of the Debtor, the SunCal Plan Proponent, the Distribution Agent and the Plan Trustee. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported obligor on the Bond Claims certain bond claims, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.3    Administrative Claim(s).  Any Claim against SunCal Century City the Debtor or its Estate  incurred after the applicable Petition Date for SunCal Century City the Debtor but before the Confirmation Effective Date, for any cost or expense of administration of the Case of SunCal Century City the Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of SunCal Century City the Debtor under section 1930 of Title 28 of the United States Code.

2.1.4    Administrative Claims Bar Date.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date. The last date fixed by the Plan for the filing of Proof of Claims or requests for payment of Administrative Claims.  Under the SunCal Century City Plan, the Administrative Claims Bar Date shall be the first business day after the sixtieth (60th) day after the Confirmation Date.

2.1.5    Affiliate.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

1    2.1.6    Allowed.  When used to describe Claim(s) or Interest(s), ) against SunCal

2    Century Citythe Debtor, such Claim(s) or Interest(s), to the extent that it or they are "Allowed

3    Claim(s)" or "Allowed Interest(s)."

4    2.1.7    Allowed Amount against SunCal Century City shall mean:

5    A.    With respect to any Administrative Claim (i) if the Claim is based

6    upon a Fee Application, the amount of such Fee Application that has been approved by a Final

7    Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

8    incurred in the ordinary course of business of SunCal Century Citythe Debtor and is not otherwise

9    subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

10   SunCal Century Citythe Debtor and such creditor, failing which, the amount thereof as fixed by a

11   Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

12   has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

13   (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

14   applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

15   Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

16   such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

17   Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

18   which is subject to an Administrative Claims Bar Date and not filed by the applicable

19   Administrative Claims Bar Date shall be zero, and no distributionDistribution shall be made on

20   account of any such Administrative Claim;

21   B.    with respect to any Claim which is not an Administrative Claim

22   (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the

23   Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in SunCal

24   Century Citythe Debtor's Schedules as neither disputed, contingent nor unliquidated; or (ii) if the

25   Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims

26   Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed

27   within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan

28   or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1  if an objection to such proof was interposed within the applicable period of time fixed by the

2  Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount

3  of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on ~~SunCal~~

4  ~~Century City~~the Debtor's Schedules or is listed as disputed, unliquidated, contingent or unknown,

5  and is not allowed under the terms of the Plan shall be zero, and no ~~distribution~~Distribution shall

6  be made on account of any such Claim; and

7                    C.    with respect to any Interest, (i) the amount provided by or

8  established in the records of ~~SunCal Century City~~the Debtor at the Confirmation Date, provided,

9  however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

10  records of ~~SunCal Century City~~the Debtor; or (ii) the amount stated in a proof of Interest Filed

11  prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

12  Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

13  by a Final Order of the Bankruptcy Court.

14        2.1.8    Allowed Claim.  Except as otherwise provided in the ~~SunCal Century City~~

15  ~~Plan~~Plan (including with respect to those Classes for which the amount of the Allowed Claims is

16  specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of

17  such Claim.

18        2.1.9    Allowed Interest.  Any Interest to the extent, and only to the extent, of the

19  Allowed Amount of such Interest.

20        2.1.10    Allowed Secured Claims.  All or ~~a~~ a portion of a Secured Claim that is an

21  Allowed Claim~~.~~ against ~~SunCal Century City~~the Debtor.

22        2.1.11    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

23  an Allowed Claim against ~~SunCal Century City~~the Debtor.

24        2.1.12    Assets.  All assets that are property of the Debtor(s) pursuant to

25  Bankruptcy Code Section 541.

26        ~~2.1.13    Arch.  Arch Insurance Company, a Bond Issuer.~~

27        ~~2.1.14~~ 2.1.13  Available Cash.  ~~SunCal Century City~~The Debtor's Cash deposited

28  into the applicable Distribution Account(s) on or after the Effective Date that is available for

1  making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General

2  Unsecured Claims.  The Available Cash shall consist of ~~SunCal Century City~~the Debtor's cash on

3  hand as of the Effective Date~~ that is not subject to a Disputed Lien, proceeds of Net Litigation~~

4  ~~Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash~~

5  ~~upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly~~

6  ~~encumbering such Cash~~.  All Available Cash shall be deposited into the applicable Distribution

7  Account(s).  ~~Available Cash shall not include Net Sale Proceeds in the Net Sales Proceeds Account~~

8  ~~where the Disputed Secured Claims are Allowed but subject to an equitable subordination~~

9  ~~judgment.~~

10          ~~2.1.15~~ 2.1.14  Avoidance Actions.  All Claims and defenses to Claims accruing to

11  ~~SunCal Century City~~the Debtor and their Estates under Bankruptcy Code Sections 506(d), 510(c),

12  541, 544, 545, 547, 548, 549, 550, or 551~~.~~, including but not limited to the ~~SunCal Century City~~

13  ~~Preference Claim~~Lehman Preference Claim and the Potential SunCal Preference Claim~~.~~.

14          ~~2.1.16~~ 2.1.15  Bankruptcy Code.  The United States Bankruptcy Code.

15          ~~2.1.17~~ 2.1.16  Bankruptcy Court.  The United States Bankruptcy Court for the

16  Central District of California, having jurisdiction over the Cases and, to the extent of any

17  withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the

18  United States District Court for the Central District of California; or, in the event such courts cease

19  to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over

20  the Cases in lieu thereof.

21          ~~2.1.18~~  Bankruptcy Rules.  Collectively, as now in effect or hereafter amended

22  and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

23  Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

24          ~~2.1.19~~ 2.1.17  ~~Beneficial Interests. means, collectively~~Collectively, the interests of

25  ~~the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions~~Distributions to

26  ~~be made by the Plan Trust on account of Allowed Unsecured Claims~~ with respect to SunCal

27  ~~Century City. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust,~~

28

(b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.18    Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.20    Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer under various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s) under various payment or performance bonds.

2.1.21  2.1.19  Business Day.  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.22  2.1.20  Case.  The Chapter 11 case of SunCal Century Citythe Debtor pending before the Bankruptcy Court.

2.1.23  2.1.21  Cash.  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

2.1.24  2.1.22  Chapter 11 Trustee.  Steven M. Speier, the duly appointed trustee of the Trustee Debtors in their pending Chapter 11 Cases.

2.1.25  2.1.23  Claim.  This term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of SunCal Century Citythe Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of SunCal Century Citythe Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1    ~~2.1.26~~ 2.1.24  Claims Bar Date.  For any Claim ~~other than an Administrative~~

2    ~~Claim,~~ March 31, 2009, which was established by the Bankruptcy Court as the last date for

3    creditors to file Proof of Claims with the Bankruptcy Court in ~~all of SunCal Century City~~the

4    Debtor's ~~case~~Case, except for the following: (a) Administrative Claims, for which the

5    Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory

6    contracts or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of

7    claim is (i) 30 days after the date of entry of the order authorizing the rejection, or (ii) March 31,

8    2009, whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. §

9    101(27), for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the

10   Order for Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)),

11   and (d) claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the

12   last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or

13   March 31, 2009, whichever is later.

14   ~~2.1.27~~ 2.1.25  Claims Objection Deadline.  The ~~later of (i) the~~ first business day

15   following the ~~one hundred~~sixtieth (60th) ~~and eightieth (180th)~~ day after the Effective Date~~, or~~

16   ~~(ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by~~

17   ~~agreement between the Plan Trustee and the Holder of the Claim.~~

18   ~~2.1.28~~ 2.1.26  Class.  Each group of Claims or Interests classified in Article ~~V~~IV of

19   the ~~SunCal Century City Plan~~Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

20   ~~2.1.29~~ 2.1.27  Confirmation Date.  The date on which the Confirmation Order is

21   entered in the Bankruptcy Court's docket.

22   ~~2.1.30~~ 2.1.28  Confirmation Order.  The order entered by the Bankruptcy Court

23   confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code with

24   respect to ~~SunCal Century City Plan~~Plan.

25   ~~2.1.31     Contingent Bond Claims.  Unmatured Bond Claims.~~

26   ~~2.1.32~~ 2.1.29  Creditor.  Any Person who is the Holder of a Claim against ~~any~~

27   ~~Debtor~~SunCal Century City~~the Debtor~~ that arose or accrued or is deemed to have arisen or accrued

28   or to have matured, or otherwise become due, owing, and payable on or before the Petition Date,

including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.30    ~~Debtor(s).  Individually or collectively~~Debtor.  SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

~~2.1.33~~    Debtors.  Collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached ~~hereto~~to the Disclosure Statement.

2.1.31

~~2.1.34~~    Debtor(s)- ~~Debtors~~-in-Possession.  The Voluntary ~~Debtor(s)~~Debtors when acting in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.32

~~2.1.35~~ 2.1.33  Disclosure Statement.  The document accompanying the Plan for ~~SunCal Century City~~the Debtor that is entitled "~~First Amended~~Second Amended ~~Disclosure Statement Describing First Amended~~ Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponent~~s~~ In The Chapter 11 Case Of SunCal Century City" and with all accompanying exhibits.

~~2.1.36~~ 2.1.34  Disputed Claim(s).  All or any part of a ~~SunCal Century City~~ Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

2.1.37  2.1.35  Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s)SunCal Century Citythe Debtor that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

2.1.38  2.1.36  Disputed Secured Claim(s). That part of a Disputed Claim against SunCal Century Citythe Debtor that is a Secured Claim.

2.1.39  2.1.37  Distribution(s).  Payments to Holders of Allowed Claims provided for under the Plan.

2.1.40  2.1.38  Distribution Agent.  The entity that is responsible for making Distributions under the SunCal Century City PlanPlan, which shall be Acquisitions.

2.1.41  2.1.39  Distribution Account(s).  SA separate account(s) to be established by the Plan Trustee at an FDIC insured bank into which SunCal Century Citythe Debtor's Available Cash shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to SunCal Century Citythe Debtor shall be deposited, other than Net Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

2.1.42  2.1.40  Distribution Date.  With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the SunCal Century City PlanPlan.

2.1.43  2.1.41  Effective Date. A date selected by the SunCal Plan ProponentsSunCal Plan Proponent that is not later than the ninetieth thirtieth (90th30th) calendar day after the Confirmation Date of the SunCal Century City PlanPlan, provided that there is no stay pending appeal of the Confirmation Order, in which case the Effective Date shall be tolled until the dissolution of such stay.

2.1.44   Elieff.  Bruce Elieff, the president of Acquisitions, a purported obligor on the Bond Claimscertain bond claims with corresponding indemnity Claims against the Debtors.

1          2.1.45  2.1.42  Estate.  The bankruptcy estate of SunCal Century Citythe Debtor

2    created pursuant to Section 541 of the Bankruptcy Code.

3          2.1.46  2.1.43  Fee Applications.  Applications of Professional Persons under

4    Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and

5    reimbursement of expenses in the CasesSunCal Century Citythe Debtor Case.

6          2.1.47  2.1.44  Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy

7    Code for allowance of compensation and reimbursement of expenses in the CasesSunCal Century

8    Citythe Debtor Case.

9          2.1.48

10          2.1.49  2.1.45  Filed.  Delivered to, received by and entered upon the legal docket

11    by the Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

12          2.1.50  2.1.46  Final Order.  A judgment, order, ruling or other decree issued and

13    entered by the Bankruptcy Court that has not been reversed, stayed, modified or amended..

14          2.1.51  2.1.47  General Unsecured Claim.  A Claim against SunCal Century Citythe

15    Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a

16    Priority Claim.

17          2.1.52  2.1.48  Holder.  The beneficial owner of any Claim or Interest. against

18    SunCal Century Citythe Debtor.

19          2.1.53  2.1.49  Insider.  The term shall have the broadest meaning possible under

20    Section 101(31), including, but not limited to, a person in control of the DebtorSunCal Century

21    Citythe Debtor, Affiliates and Insiders of such Affiliates, including the Lehman Entities.

22          2.1.54  2.1.50  Interest.  Any equity security interest in SunCal Century Citythe

23    Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without

24    limitation, any equity ownership interest in any of SunCal Century Citythe Debtor, whether in the

25    form of common or preferred stock, stock options, warrants, partnership interests, or membership

26    interests.

27

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1    ~~2.1.55~~ 2.1.51  **LBHI**.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

2  company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

3  in the Bankruptcy Court for the Southern District of New York.

4    ~~2.1.56~~ 2.1.52  **LCPI**.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

5  bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

6    ~~2.1.57~~ 2.1.53  **Lehman Adversary Proceeding**.  The Debtors' pending adversary

7  proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

8  action including equitable subordination, fraudulent inducement, fraudulent conveyances and

9  preferential transfers (including the Lehman Preference Claim).~~.~~

10    ~~2.1.58~~ 2.1.54  **Lehman ALI**.  Lehman ALI, Inc.

11    ~~Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by a~~

12  ~~Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the Lehman~~

13  ~~Disputed Loans and the Lehman Disputed Administrative Loans.~~

14    ~~Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of Secured~~

15  ~~Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11 Cases arising~~

16  ~~from the Lehman Disputed Loans.~~

17    ~~2.1.59    Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and~~

18  ~~LBHI.~~

19    ~~2.1.60    Lehman Equity Members.  Lehman Entities that own direct or indirect~~

20  ~~membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal~~

21  ~~Marblehead.~~

22    ~~2.1.61    Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC~~

23  ~~Holdings.~~

24    ~~2.1.62    Lehman Disputed Loans.  Collectively the following loans that are the~~

25  ~~purported basis for the Lehman's Disputed Claims: (a) SunCal Communities I Loan Agreement;~~

26  ~~(b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;~~

27  ~~(e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal~~

28  ~~Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan~~

1    Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

2    Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

3    and (n) Pacific Point Second Loan Agreement.

4           2.1.55   Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

5    LBHI.

6           2.1.56   Lehman Equity Members.  Lehman Entities that own direct or indirect

7    membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

8    Marblehead.

9           2.1.57   Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC

10   Holdings.

11          2.1.58   Lehman Preference Claim.  The fourth cause of action in the Lehman

12   Adversary Proceeding seeking to avoid and recover allegedly preferential transfers made by the

13   Debtor to Lehman ALI in the amount of $10,628,948.64.

14          2.1.63  2.1.59  Lehman Representatives.  The individuals that controlled the

15   Lehman Entities.

16          2.1.64  2.1.60  Lehman Successor(s).  Entities other than the Lehman Lenders that

17   either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the

18   Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske

19   Bank.

20          2.1.65   Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by

21   a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

22   Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

23          2.1.66   Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of

24   Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

25   Cases arising from the Lehman Disputed Loans.

26          2.1.67   Lexon.  Lexon Insurance Co.

27          2.1.68  2.1.61  Litigation Claims.  Any and all interests of the Debtor in any and all

28   Claims, rights, causes of action which have been or may be commenced by the Chapter 11 Trustee

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

and/or the Plan Trust, as the case may be, including, but not limited to the Lehman Preference Claim and the Potential SunCal Preference Claim. ~~Any and all interests of SunCal Century City in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights, or causes of action which have been or may be commenced by SunCal Century City, the Chapter 11 Trustee, or the Trustee Debtors' Committee, as the case may be, including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to SunCal Century City's Estate and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary Proceeding; (vi) the State Court Action, and (vii)(vii) Lehman Claim Objections (and related Claim Objection Reduction Amount) and (viii) any and all other Claims against Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.~~

~~2.1.69~~ 2.1.62  **Litigation Recoveries**.  Any Cash or other property received by the Chapter 11 Trustee, the Plan Trustee and/or the Plan Trust as the case may be, ~~from all or any portion of the SunCal Century City Preference Claim,~~ including but not limited to, the Lehman Preference Claim and the Potential SunCal Preference Claim.

~~2.1.70~~ 2.1.63  **Maximum Distributions**.  A Distribution to a Holder of an Allowed General Unsecured Claim against ~~SunCal Century City~~the Debtor equal to one hundred percent (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of ~~SunCal Century City~~the Debtor's ~~Petition Date~~Order for Relief Date.

~~2.1.71~~ 2.1.64  **MB Firm**.  Miller Barondess, LLP.

~~2.1.72   Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise allegedly satisfy the requirements of Bankruptcy Code 546(b).~~

~~2.1.73~~ 2.1.65  **Net Litigation Recoveries**.  Litigation Recoveries less associated Administrative Claims, ~~and~~ Post-Confirmation Expenses and contingency fees incurred in connection with such Litigation Recoveries.

1    ~~2.1.74    Net Sales Proceeds.  The remaining Cash generated from the sale of the~~

2    ~~10,000 Santa Monica Project or the Plan Trust's Assets, less payment of selling expenses, taxes,~~

3    ~~Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative~~

4    ~~Claims incurred in furtherance of such sales or liquidation of such Assets.~~

5    ~~2.1.75    Net Sales Proceeds Account(s).  Separate account(s) that will be~~

6    ~~established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be~~

7    ~~deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)~~

8    ~~and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale~~

9    ~~Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except~~

10   ~~where there are two Disputed Liens on a single Project, in which case, there shall be a single~~

11   ~~account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or~~

12   ~~Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any~~

13   ~~Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or~~

14   ~~applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a~~

15   ~~particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy~~

16   ~~Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject~~

17   ~~thereto shall become Available Cash and shall be transferred to the applicable Distribution~~

18   ~~Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are~~

19   ~~allowed and deemed valid but subject to the equitable subordination causes of action in the~~

20   ~~Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final~~

21   ~~Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.~~

22   ~~2.1.76~~ 2.1.66  Orders for Relief Date.  The following are dates that orders for relief

23   were entered for each of the Trustee Debtors:

24   
| SunCal Oak Valley | January 6, 2009 |
| --- | --- |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

| SunCal Oak Knoll | January 6, 2009 |

2.1.77 2.1.67        **Person**.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.78 2.1.68        **Petition Dates**.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.79 2.1.69        **Plan**.  The First Amended Second Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponents SunCal Plan Proponent In The Chapter 11 Case Of SunCal Century City, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

-17-

1    2.1.80    Plan Documents.  The SunCal Century City Plan, the SunCal Century City

2    Plan Trust Agreement and all other documents attached to the SunCal Century City Plan

3    Supplement.

4    2.1.81  2.1.70    Plan Period. The period from the Effective Date to the

5    SunCal Century City PlanPlan Termination Date.

6    2.1.71    Plan Reserve.  A reserve in the amount of $300,000 to be established from

7    the Available Cash on the Effective Date.  Up to $200,000 of such reserve shall be used for

8    payment of costs associated with the prosecution of the Lehman Preference Claim and payment of

9    Post Confirmation Expenses and up to $100,000 of such reserve shall be used for payment of

10    Committee's fees and costs associated with objections to Claims and prosecution of the Potential

11    SunCal Preference Claim.

12    2.1.82    Plan Supplement. The compilation of the SunCal Century City Plan

13    Documents to be filed with the Bankruptcy Court.

14    2.1.83  2.1.72    Plan Termination Date. The fifth (5th) anniversary date of the

15    Effective Date of the SunCal Century Citythe Debtor, unless the Plan elects an earlier date.

16    2.1.84  2.1.73    Plan Sponsor.  The entity that has committed to cause the

17    funding of certain specified obligations under the SunCal Century City PlanPlan on or after the

18    Effective Date.  The Plan Sponsor is Acquisitions.

19    2.1.74    Plan Trust.  A liquidating trust to be established pursuant to Article X of

20    the Plan prior to or on the Effective Date, with Acquisitions as the SunCal Century City PlanPlan

21    Trustee and the Holders of Allowed Claims against the DebtorsSunCal Century Citythe Debtor as

22    the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors'SunCal Century

23    Citythe Debtor's Assets (other than Assets that are excluded by the SunCal Century City PlanPlan

24    Trustee on the grounds that they lack value or would be difficult to administer), distribution the

25    Available Cash to Holders of Allowed Claims and to otherwise consummate the SunCal Century

26    City PlanPlan.

27

28

-18-

1    2.1.85  2.1.75  Plan Trust Beneficiaries.   The Plan Trust Beneficiaries are (i) the

2    holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that

3    shall be satisfied from Plan Trust Property in accordance with the terms of the Plan.

4          2.1.86  2.1.76          Plan Trustee. The Person or entity appointed pursuant to the

5    Plan to act as trustee of and to administer the Plan Trust, which shall be Acquisitions.The SunCal

6    Century City Plan Trustee under the SunCal Century City Plan Trust Agreement is Acquisitions.

7          2.1.87        Plan Trust Agreement. The liquidating trust agreement governing the

8    affairs of the SunCal Century City Plan Trust, which will be in substantially the form contained in

9    the SunCal Century City Plan Supplement.

10          2.1.77        Plan Trust Beneficiaries. The SunCal Century City PlanPlan Trust

11    Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of

12    Allowed Claims that shall be satisfied from the SunCal Century City PlanPlan Trust Property in

13    accordance with the terms of the SunCal Century City PlanPlan.

14          2.1.88  2.1.78          Plan Trust Property. Plan Trust Property means all All

15    property within the Chapter 11 estate of SunCal Century Citythe Debtor, other than property that is

16    affirmatively excluded by the SunCal Century City PlanPlan Trustee.

17          2.1.89  2.1.79          Post-Confirmation Expenses.  The expenses incurred by the

18    Plan Trust and the Plan Trustee, and the fees and expenses incurred by the Committee's

19    professionals and the Plan Trustee's professionals following the Confirmation Date for the purpose

20    of (i) funding the costs of the Lehman Preference Claim; (ii) objecting to and resolving Disputed

21    Claims; (iii) effectuating Distributions under the Plan; and (iv) otherwise consummating the Plan

22    and closing the Debtor's Chapter 11 Case.  The fees and expenses incurred by the SunCal Century

23    City Plan Sponsor, the SunCal Century City Plan Trustee and the Trustee Debtors' Committee and

24    their professionals following the Confirmation Date (including the fees and costs of Professionals)

25    for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and

26    resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan

27    Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the

28    Plan and closing SunCal Century City's Chapter 11 Case.

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.Doc

1      2.1.80     Potential SunCal Preference Claim.  Potential preference claims against

2   SunCal Affiliates pursuant to Section 547 of the Bankruptcy Code.

3      2.1.90  2.1.81  Priority Claim.  Any Claim, other than an Administrative Claim or a

4   Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

5      2.1.91  2.1.82  Pro Rata.  Proportionately, so that with respect to any

6   distribution Distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property

7   distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the

8   same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of

9   the Class or Classes sharing in such distribution Distribution to (ii) the amount of all Allowed

10   Claims in such Class or Classes.

11      2.1.92  2.1.83  Professional.  A Person or Entity (a) employed by SunCal Century

12   City the Debtor, the Trustee Debtors' Committee pursuant to a Final Order in accordance with

13   Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior

14   to the Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or

15   (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court

16   pursuant to Section 503(b) of the Bankruptcy Code.

17      2.1.93  2.1.84  Professional Fees.  All Allowed Claims for compensation and for

18   reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

19      2.1.94  2.1.85  Projects.  The Debtors' residential real estate development projects

20   and other assets as separately defined herein and described in Exhibit "1" to the Disclosure

21   Statement including the 10,000 Santa Monica Project, which was sold postpetition post-petition

22   pursuant to a Final Order of the Bankruptcy Court.

23      2.1.95  2.1.86  SCC LLC.  SCC Acquisitions LLC, a limited liability company, a

24   subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

25      2.1.96  2.1.87  Schedules.  The schedules of assets and liabilities and list of equity

26   security holders Filed by SunCal Century City the Debtor, as required by Section 521(1) of the

27   Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

28   as amended from time to time.

1    2.1.97    Secured Claim.  A Claim secured by a lien on any property of any of the

2    SunCal Century City Estate, but only to the extent of the value of the interest of the holder of such

3    Allowed Claim in the interest of the Estate in such property.

4    2.1.98  2.1.88  Secured Claim.  Any Claim, including interest, fees, costs, and

5    charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid

6    and unavoidable Lien on SunCal Century Citythe Debtor's Assets.

7    2.1.99    State Court Action.  The action filed by certain Voluntary Debtors against

8    Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

9    Orange (Case No. 30-2011-0040847-CU-BC-CJC), and a reservation of rights to add the Plan

10    Trustee and/or the Trustee Debtors as additional plaintiffs therein.

11    2.1.100  2.1.89        SunCal.  The SunCal Companies, a trade name for

12    Acquisitions and its Affiliates.

13    2.1.101    SunCal Century City.  SunCal Century City, LLC, a Delaware limited

14    liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

15    2.1.90

16    2.1.102  2.1.91        SunCal Century City Loan Agreement.  A certain Loan

17    Agreement by and between SunCal Century Citythe Debtor, as borrower and Lehman ALI, as

18    agent and sole lender pursuant to which Lehman ALI made a loan in the aggregate maximum

19    principal amount of approximately $120,000,000.  The SunCal Century City Loan Agreement was

20    allegedly secured by a first-priority deed of trust on the 10000 Santa Monica Project.  The SunCal

21    Century City Loan Agreement had an alleged balance due of $120,000,000.00 as of April 1, 2009.

22    Danske Bank was formerly the Holder of the Century City Loan Agreement and related deed of

23    trust, which has been satisfied in full pursuant to Danske Bank's purchase of the 10000 Santa

24    Monica Project for $5.3 million, less payment of an Unpaid Real Property Tax Claim of $1.6

25    million.

26    2.1.103    SunCal Century City Preference Claim.  The fourth cause of action in the

27    Lehman Adversary Proceeding seeking to avoid and recover preferential transfers made by SunCal

28

1   Century City to Lehman ALI in the amount of $10,628,948.64 in the year preceding the SunCal

2   Century City Petition Date. .

3           2.1.92    SunCal Management.  SunCal Management, LLC, a Delaware limited

4   liability company, and the former property manager for the Projects, which has been succeed by

5   Argent Management.

6           2.1.104   and the property manager for the Projects.

7           2.1.93    SunCal Plan Proponent(s).  Acquisitions as the party-in-interest that is

8   proposing the SunCal Century City PlanPlan.

9           2.1.105  2.1.94    Tax.  Any tax, charge, fee, levy, impost or other assessment

10  by any federal, state, local or foreign taxing authority, including, wisthout limitation, income,

11  excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

12  estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

13  additions attributable to, or imposed on or with respect to such assessments.

14          2.1.106  2.1.95    Tax Claim.  Any Claim for any Tax to the extent that it is

15  entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

16          2.1.107  2.1.96    Trustee Debtor(s).  The following Debtors, individually or

17  collectively, that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland,

18  SunCal Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV,

19  SunCal Torrance, and SunCal Oak Knoll.

20          2.1.108  2.1.97    Trustee Debtors' Committee.  The Official Committee of

21  Unsecured Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

22  Bankruptcy Code.

23          2.1.109   Unpaid Secured Real Property Tax Claims.  Secured Claims held by

24  various government entities secured by liens on the underlying real properties owned by the

25  Debtors but that are non-recourse to the Debtors.

26          2.1.110  2.1.98    Unsecured Claim. An Unsecured Claim is any Claim that is

27  not an Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

28

2.1.111  2.1.99        Voluntary Debtor(s).  The following  Chapter 11 debtors and debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio and Tesoro.

**2.2**    **Rules of Construction.**

For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan or this Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in the Plan or this Disclosure Statement, any reference in the Plan or this Disclosure Statement to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; (h) any reference in the Plan or this Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan or this Disclosure Statement or any other provision in this Section 2.2.

**2.3**    **Exhibits.**

1    All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

2    therein.

3                                                      III.

4                          **PLAN CONFIRMATION DEADLINES**

5    The Bankruptcy Court has not confirmed the Plan described in this Disclosure Statement.

6    Accordingly, the terms of the Plan are not binding on anyone.  However, if the Bankruptcy Court

7    confirms the Plan, then the Plan will be binding on the Debtor(s), the Plan Trustee, and on all

8    Creditors and Interest Holders in such Cases.

9         **3.1     Time and Place of the Confirmation Hearing.**

10   The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan

11   will take place at 411 West Fourth Street, Santa Ana, CA 92701-4593 on October 24, 2011, at 9:30

12   a.m. in Courtroom 5A.

13        **3.2     Deadline for Voting for or Against the Plan.**

14   If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

15   return the ballot to:

16                        Winthrop Couchot Professional Corporation
17                        660 Newport Center Drive, Suite 400
                          Newport Beach, CA 92660
18                        Facsimile:  (949) 720-4111
                          Attn:  P.J. Marksbury
19

20   Your ballot must be **received by**  September 26, 2011**,** or it will not be counted.

21        **3.3     Deadline for Objecting to the Confirmation of the Plan.**

22   Objections to the confirmation of the Plan must be filed with the Bankruptcy Court, and

23   served upon the following parties so that they are received by September 26, 2011:

24   **Counsel to the Voluntary**          Paul J. Couchot
     **Debtors**                           Winthrop Couchot Professional Corporation
25                                          660 Newport Center Drive, Suite 400,
                                            Newport Beach, CA 92660
26

27   **Authorized Agent for**              Bruce V. Cook
     **Voluntary Debtors**                 General Counsel
28                                          2392 Morse Ave
                                            Irvine, CA 92614-6234

-24-

| | |
|---|---|
| **Counsel for SunCal Management LLC and SCC Acquisitions Inc**. | Ronald Rus<br>Rus Miliband & Smith A<br>Professional Corporation<br>2211 Michelson Drive, Seventh Floor<br>Irvine, California 92612 |
| **Authorized Agent for SunCal Management and SCC Acquisitions, Inc**. | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |

### 3.4    Identity of Person to Contact for More Information Regarding the Plan.

Any interested party desiring further information about the Plan should contact the Voluntary Debtors' counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Suite 400, Newport Beach, CA 92660, Attn:  Paul J. Couchot, (949) 720-4100; Peter W. Lianides, (949) 720-4155; Payam Khodadadi, (949) 720-4160.

### 3.5    Disclaimer.

The information contained in this Disclosure Statement is provided by the ~~SunCal Plan Proponents~~SunCal Plan Proponent.  The ~~SunCal Plan Proponents~~SunCal Plan Proponent represent that everything stated in this Disclosure Statement is true to the best of their knowledge.  The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

The discussion in this Disclosure Statement regarding ~~SunCal Century City~~the Debtor may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate," or "continue," or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.  The liquidation analyses, distribution projections, projections of financial results and other information are estimates only, and the timing, amount and value of actual distributions to Creditors may be

-25-

1    affected by many factors that cannot be predicted.  Therefore, any analyses, estimates, or

2    projections may or may not turn out to be accurate.

3    **3.6      A Summary of All of the Alleged Claims Against the Debtor and a Summary of**

4    **the Debtor's Primary Assets.**

5    The asserted Claims against the Debtor consist of Administrative Claims (including unpaid

6    Professional Fees) in the approximate amount of $2,603,064 and General Unsecured Claims in the

7    approximate amount of $4,390,043.  There are also ongoing Professional Fees, which continue to

8    accrue.  The SunCal Plan Proponent believe that these balances may be reduced through claims

9    objections resulting in lower "Allowed" claims balances.

10    Throughout the Chapter 11 Case, the attorneys for the Committee have been administering

11    objections to Claims.  The remaining potential Disputed Claims identified by the attorneys for the

12    Committee total $2,507,660.26 in Administrative Claims of SunCal Affiliates and $1,023,802.98 in

13    General Unsecured Claims of SunCal Affiliates.  Moreover, the Committee has filed a motion

14    objecting to Bond Safeguard's contingent claim.

15    The Debtor's Available Cash on hand as of July 6, 2011, 2011 was $3,568,824.79.  As

16    stated herein, the Plan Reserve is in the amount of $300,000.  Based on the foregoing, the

17    Distribution to Holders of General Unsecured Claims from the Available Cash would be 15% if the

18    Disputed Claims referenced above are Allowed and 100% if the Disputed Claims referenced above

19    are Disallowed.  The foregoing percentage should not significantly decrease since there are no on

20    on-going Administrative Claims other than limited discovery being conducted by the MB Firm in

21    connection with the Lehman Preference Claim, which is included in the fee estimated of unpaid

22    Professional Fees.

23    As stated herein, the Debtor also has certain Litigation Claims.  In particular, the fourth

24    cause of action in the Lehman Adversary Proceeding seeks to avoid and recover the Lehman

25    Preference Claim in the amount of $10,628,948.64 from Lehman ALI.  Furthermore, the Debtor

26    made transfers in the amount of $747,727.13 to SunCal Affiliates (SunCal Management and

27    Acquisitions) in the one year period preceding the Debtor's Petition Date, which may be avoided

28    and recovered.  The SunCal Plan Proponent, however, have done a preliminary investigation of the

1  transfers made to the SunCal Affiliates and believe that valid defenses exist to such transfers,

2  including but not limited to new value and ordinary course of business defenses.

3       Although the Debtor also made transfers in the aggregate amount of $190,087 to non-

4  insiders within the 90 day preference period preceding the Petition Date, the pursuit of such

5  transfers do not appear to be economical and the SunCal Plan Proponents do not believe that any

6  actions will be brought to avoid and recover any of such transfers.

7       Obviously, recovery on the Lehman Preference Action and/or the Potential SunCal

8  Preference Action can significantly increase the Distributions to Holders of Allowed Unsecured

9  Claims.  Other than the Plan Reserve, the Debtor's funds will not be used to fund the Potential

10  SunCal Preference Claim, other than costs, and any such action shall be required to be prosecuted

11  on a contingency fee basis.  Accordingly, the range above may increase from 15% depending on the

12  recovery, if any, from the Lehman Preference Claim and the Potential SunCal Preference Claim.

13                                   **IV.**

14                     **FACTUAL BACKGROUND OF THE DEBTORS**

15       **4.1     The Formation of the Debtors and the Projects.**

16            **4.1.1     Overview of the Debtors and their Projects.**

17       SunCal Century CityThe Debtor are twois one of twenty-six entities (collectively the

18  "Debtors") that were formed pursuant to a joint venture between Affiliates of the SunCal

19  Companies ("SunCal") and the Lehman Entities (the "SunCal/Lehman Joint Venture"). The

20  Debtors' role in the venture was to own and develop the large residential projects that were the core

21  assets in this joint undertaking.

22       At the inception of SunCal/Lehman Joint Venture, it was agreed that SunCal would be the

23  developer/manager of the Projects and the Lehman Entities would provide the necessary capital.

24  Attached hereto as Exhibit "1" is a general description of the Debtors' Projects, including the, and

25  the Debtors' other primary Assets, excluding Cash and the Litigation Claims, and a description of

26  the loans for the Projects.

27       All of the Debtors are Affiliates of Acquisitions and SCC LLC.  Some of the Debtors

28  directly own the Projects, while others serve as holding companies, owning Allowed Interests in the

1  Debtors that hold title to the Projects.  SunCal Management, LLC, a SunCal Affiliate, has

2  management contracts with respect to all of the Projects and manages the Debtors' day-to-day

3  business affairs.

4          The seventeen Debtors who are referred to herein as the "Voluntary Debtors" are wholly

5  owned by SunCal Affiliates, and consequently the SunCal Affiliates have full corporate

6  governance authority over these entities.  The Voluntary Debtors own eleven (11) of the Projects.

7  As described herein, SJD Partners formerly owned the Pacific Point Project.

8          In the case of the nine Trustee Debtors, the SunCal Affiliates and the Lehman Affiliates

9  initially shared ownership equally (50% each). However, after the Petition Date, the SunCal

10  Affiliates became the owner of hundred percent (100%) of the equity in two of the nine Trustee

11  Debtors - SunCal Heartland and SunCal Marblehead.  As of the Petition Date, the Trustee Debtors

12  own nine (9) Projects.  However, as mentioned, the 10,000 Santa Monica Project was sold

13  postpetition pursuant to a Final Order of the Bankruptcy Court. Attached hereto as Exhibit "2" is a

14  chart that sets forth the appraised value of the Debtor's Projects.  This chart lists both the Lehman

15  Lenders' value estimates and SunCal's valuation estimates.[2]

16                                    ~~Disputed Claims and Liens.~~

17                                                        ~~As discussed in detail herein, during~~

18              ~~the course of the Debtors' Cases, the Debtors initiated litigation disputing the~~

19              ~~validity of Lehman's Disputed Secured Claims, and the validity, priority and~~

20              ~~extent of Lehman's Disputed Liens.  This litigation is being pursued through~~

21              ~~the Lehman Adversary Proceeding, various contested matters, and in~~

22              ~~potential lawsuits based on the post-petition conduct of the Lehman Entities~~

23              ~~and/or their agents.~~

24  ~~4   Attached hereto as Exhibit "3" is a chart that sets forth Lehman's Disputed Secured Claims, the~~

25      ~~alleged Holders of the Lehman Disputed Secured Claims, the collateral encumbered by the~~

26      ~~Lehman Disputed Liens, and the alleged outstanding amount based on the filed Proofs of~~

27      ~~Claim.~~

28

─────────────────────

[2] Values may have changed since these analyses were prepared.

1          A Summary of All of the Alleged Claims Against SunCal Century City.

2      Attached hereto as Exhibit "4" is a chart that sets forth the prepetition Claims that have been

3 asserted against all of the Debtors.  In summary, the asserted Claims against SunCal Century

4 City consist of General Unsecured Claims in the approximate amount of $4,390,043. There are

5 also ongoing administrative claims, which continue to accrue.

6  The SunCal Plan Proponents believe that these balances may be reduced through claims

7 objections resulting in lower "Allowed" claims balances.

8      4.1.2                                    Summary of SunCal Century City's

9 Cash.

10      SunCal Century City's unencumbered cash on hand as of January 31, 2011 was $3,610,531.78.

11      **4.2 Factual Circumstances Leading to the Filing of the Debtors' Chapter 11 Cases.**

12          **4.2.1    Introduction**.

13          In this section of the Disclosure Statement, the ~~SunCal Proponents~~SunCal Plan Proponent

14 have provided a description of the relationship between the Debtors and the Lehman Entities, and

15 more specifically ~~SunCal Century City~~the Debtor's relationship with Lehman ALI and Danske

16 Bank.

17          **4.2.2    Background of the SunCal Companies**.

18          SunCal is a family-owned and operated real estate business that has been successfully

19 developing properties throughout the western United States for over 70 years.  SunCal's business

20 focuses upon the "development" of residential land. A typical SunCal development begins with the

21 acquisition of one or more parcels of raw land. Thereafter, the SunCal team develops a master plan

22 for the acreage that incorporates streets, homes, parks, schools and commercial areas, and then it

23 works with the applicable municipal planning authorities (the city, county, state and federal) to

24 secure the necessary approvals or "entitlements" to gain approval of the Plan. This process, which

25 requires the assistance of land planners, civil engineers, architects, lawyers, and other land

26 specialists, takes a period of years. Once the master plan is approved, SunCal provides for the

27 grading of the project and the installation of the foundational infrastructure (streets, utilities, etc.)

28 and then sells the lots or parcels within the project to merchant builders.

### 4.2.3    The Origins of the SunCal/Lehman Joint Venture.

SunCal historically financed its projects with loans and/or equity from a number of different sources.  However, beginning in 1997, an increasing number of SunCal's projects were financed by the Lehman Entities, as Mark Walsh ("Walsh"), the head of LBHI's Global Real Estate Group, began cultivating a business relationship with SunCal's principals.

By 2003, the Lehman Entities and SunCal had entered into joint ventures involving approximately fifteen projects.  By 2007, that number had grown to over forty, and the Lehman Entities had become, with limited exceptions, the exclusive provider of financing for the SunCal Projects pursuant to a written agreement executed in 2006.  The Lehman Entities also consisted of the Lehman Equity Members that either directly or indirectly owned a fifty percent (50%) equity interest in all nine of the Trustee Debtors.

In their dealings with SunCal, the Lehman Representatives made no distinction between Projects financed by Lehman ALI and Projects financed by LCPI. They also made no distinction between the Debtors in which Lehman Equity Members held 50% equity memberships or the Debtors in which the Lehman Entities held no equity membership interest.  As agents of the financial partner in the parties' joint venture, the Lehman Representatives would determine which Lehman Entity would provide financing on which Projects, and would dictate the structure that the financing would take, according to whatever suited the Lehman Entities' needs.

### 4.2.4    Lehman's Effective Control over the Management of the Debtors and Promises of Ongoing Funding.

Prior to the market downturn in the middle of 2007, Lehman Representatives afforded SunCal substantial discretion in the management and development of the Projects.  The Debtors would contract with third-party vendors to perform grading, health and safety compliance, construction, landscaping, and other necessary services on the Project sites, and they would work with the local municipalities to obtain the necessary entitlements and other authorizations necessary to proceed with development.  The Lehman Representatives, SunCal and the Debtors would discuss anticipated quarterly expenditures at periodic budget meetings, and , as expenses were incurred each month, SunCal and the Debtors would submit requests for payment to the

1   Lehman Representatives, supported by the necessary documentation. The Lehman Representatives

2   would then provide the funding necessary to pay these expenses.

3         During the third quarter of 2007, the foregoing management and payment dichotomy

4   changed, after the real estate market experienced a sudden downturn, and many of the Projects

5   significantly declined in value.  In response to this dramatic economic change, a series of high

6   level discussions occurred between SunCal's representatives and the Lehman Representatives --

7   including Walsh, Paul Hughson ("Hughson") and Frank Gilhool ("Gilhool"), the Managing

8   Directors of Lehman's Global Real Estate.  In these discussions, SunCal's representatives, acting

9   on behalf of the Debtors, expressed concerns about the loans on the Projects being out of balance,

10  and suggested shutting down the Projects, or at least slowing the pace of development.  However,

11  Walsh specifically instructed SunCal not to slow down or stop work.  He assured SunCal that the

12  Lehman Entities would provide the necessary funding to pay vendors and to keep the development

13  of the Projects moving forward.

14        The foregoing assurances of payments were confirmed in numerous telephone

15  conversations between Gilhool and SunCal's COO, Frank Faye ("Faye"), SunCal's General

16  Counsel, Bruce Cook ("Cook"), Steve Elieff and/or Bruce Elieff that took place during 2007 and

17  2008. In each exchange, Gilhool assured SunCal that the Lehman Entities were committed to

18  funding the debts and obligations being incurred at the Projects and they continued to insist that

19  work proceed.

20        During this time frame, the Lehman Representatives became much more "hands on,"

21  scrutinizing and approving all budgets and expenses through a new control and approval structure.

22  Under the new structure, SunCal would submit budgets to the Lehman Representatives on a

23  weekly basis and explain, during period conference calls, what Project payables they believe had to

24  be paid and what work had to be performed on the Projects.  The Lehman Representatives would

25  then unilaterally decide what future work would proceed, the Lehman Representatives would

26  authorize the work and the Lehman Representatives would decide what payables would be paid

27  timely by designating them as "urgent," and what other payables were not urgent and hence would

28  not be paid on a timely basis.  However, even under this new Lehman controlled management and

-31-

1  payment regime, the Lehman Representatives made it clear that all payables being incurred would

2  be funded.

3  ### 4.2.5    The 2008 Restructuring Agreement.

4      By the fall of 2007, both SunCal and the Lehman Representatives contemplated entering

5  into a restructuring agreement in the near term, with a closing to occur no later than January or

6  February of 2008.  However, this transaction was delayed by the Lehman Entities' extensive

7  documentation demands until May 23, 2008. On this date, SunCal and most of the Debtors finally

8  entered into an omnibus "Restructuring Agreement" with LBHI, Lehman ALI and the other

9  Lehman Entities.  The same Lehman Representative signed the Restructuring Agreement on behalf

10  of all of the Lehman Entities.

11      Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect to each

12  Loan," committed, among other things, to: (1) make advances under existing loans to fund the

13  continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the

14  accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid

15  for their work; and (3) to close the transaction, whereby newly-created Lehman Entities would

16  assume the debt and obligations of the Projects.

17      As originally executed in May 2008, the Restructuring Agreement applied to twelve of the

18  twenty Projects (as well as several other projects not at issue in the Lehman Adversary

19  Proceeding):  (1) Acton Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald

20  Meadows; (5) Heartland; (6) Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley;

21  (10) Pacific Point; (11) Ritter Ranch; and (12) Summit Valley.  The Debtors that owned and/or

22  held equity interests in the entities that owned  these Projects were signatories to the May 2008

23  agreement.[3]

---

24  [3] Specifically, the Restructuring Agreement was entered into by, among others, the "Borrowers,"

25  "Grantors" and "Pledgors," as defined in Annex 1 thereto.  The "Borrowers" included SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SCC Palmdale,

26  SunCal I, SunCal III, and SunCal Bickford.

27  The "Grantors" included SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SunCal Bickford, SunCal Acton, SunCal Summit and SunCal Emerald, and

28  Debtors SunCal Beaumont and SunCal Johannson.

1    Between May and August 2008, the parties agreed to add four additional projects to the

2    Restructuring Agreement: (1) Del Rio; (2) Joshua Ridge; (3) Palm Springs Village; and (4) Tesoro

3    Burnham, and the four Debtors associated with these Projects—SunCal Del Rio, SCC

4    Communities, SunCal PSV, and SunCal Tesoro.  Only four Projects were  not included in the

5    Restructuring Agreement: Century City, Delta Coves, Oak Knoll and Del Amo.  Accordingly, the

6    four Debtors associated with these Projects—SunCal Century City, Delta Coves, SunCal Oak

7    Knoll and SunCal Torrance—were not signatories thereto.  Lehman ALI was the lender on each of

8    these Projects and , and as with the other Projects, Lehman Ali continued to insist that these four

9    debtors  proceed with the development of the four Projects, it approved all expenses, and it

10    continually provided assurances of payment.

### 4.2.6    The Lehman Lenders Hire Radco.

12    Subsequent to the execution of the Restructuring Agreement, Lehman ALI arranged for a

13    third party, Radco, to directly settle outstanding contractor payables, as its agent.  Radco was

14    provided some limited funding and authority to negotiate settlements, and did in fact reach

15    settlement with a number of creditors.  The funding for these settlements, whether the debts related

16    to Lehman ALI or LCPI funded Projects, came from the same source.  Lehman ALI and LCPI also

17    provided approval for new work on the Projects, and Lehman ALI paid for some of this work.

18    However, this funding was minimal and it soon stopped.

19    In August 2008, Lehman ALI withdrew funding and settlement authority from Radco,

20    leaving millions of dollars in outstanding contractor payables unresolved, notwithstanding the

21    contrary provisions in the Restructuring Agreement.  Leman Ali's actions also impaired the

22    Debtors' ability to resolve ongoing public health and safety issues arising at the Projects.

23    Ultimately,  only a fraction of the total outstanding payables were resolved, contrary to the  past

24    promises made by Lehman Representatives.

### 4.2.7    The Lehman Lenders' Failure to Close on the Settlement Agreement.

26    Pursuant to the terms of the Restructuring Agreement, the parties agreed to enter into a

27    Settlement Agreement, the form of which was attached to the Restructuring Agreement.  The

28

The "Pledgors" included SCC Palmdale, SunCal I, SunCal Summit and SJD Development.

1    Settlement Agreement provided for the transfer of the Projects included within the Restructuring

2    Agreement to a series of newly formed Lehman-controlled entities (each with "SCLV" in its

3    name, for "SunCal-Lehman Venture"). The agreement further provided that the entity taking title

4    to the Project would assume the Lehman Lender debt obligations associated with the Projects,

5    assume certain bond obligations associated with the Projects, and provide indemnifications to

6    SunCal and the Debtors for unpaid claims.

7        On August 25, 2008, the Settlement Agreement and a series of related documents were

8    formally executed by SunCal and the applicable Lehman Lenders and Lehman Equity Members at

9    a meeting held in Los Angeles on August 25, 2008.  Once these documents were signed, all that

10   remained was the mechanical closing of the series of transactions described in the Settlement

11   Agreement. Since all of the conditions precedent to the closings had been satisfied, or could have

12   been satisfied at the meeting, this should have occurred at the August 25, 2008 meeting. However,

13   the Lehman Representative asked SunCal to extend the closing date for thirty days, to September

14   30, 2008. Accordingly to the Lehman Representatives, this short extension would enable them to

15   secure certain outstanding third party consents. Although SunCal knew these third party consents

16   were readily available, within a few days they agreed to this extension, believing the request was

17   made in good faith. In fact, as more fully explained blow, it was not.

18            **4.2.8    The Lehman Lenders' Undisclosed Sale of Most of the Debtors' Loans.**

19       As explained above, the Settlement Agreement was duly executed by all parties at a formal

20   closing meeting held on August 25, 2008. When the parties signed this agreement, which was a

21   binding contract, they both represented that they intended and had the power and capacity to

22   perform all of the obligations undertaken therein. However, in the case of the Lehman Entities, this

23   representation was later discovered to be false.

24       When the closing occurred on August 25, 2008, the Lehman Lenders had already sold the

25   very obligations they were agreeing to assume and restructure in the Settlement Agreement  to

26   either Fenway Capital, Lehman Re, and in the case of SunCal Century City, Danske Bank, pursuant

27   to repurchase agreement.

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

### 4.2.9    Alvarez and Marsal Take Over Control of the Lehman Entities After the Chapter 11 Filings of LBHI and LCPI.

LBHI filed for bankruptcy in September 2008 and LCPI filed for bankruptcy in October 2008.  After LBHI's filing, Bryan Marsal ("Marsal") of Alvarez & Marsal ("A&M") was appointed to serve as LBHI's Chief Restructuring Officer. Marsal and A&M are in charge of liquidating the now defunct Lehman Entities, including Chapter 11 debtors LBHI and LCPI, and the non-bankrupt Lehman Lenders (Lehman ALI, OVC, and Northlake Holdings, as well as the non-bankrupt Lehman Equity Members.

Although A&M was not employed until after the events that occurred on August 25, 2008 described above, it should be noted that A&M hired the same law firm that represented the Lehman Lenders in the August 25, 2008 meeting – Weil, Gotshal & Manges, LLP. Moreover, as more fully explained herein, it was A&M that directed Lehman Ali not to perform its contractual obligations under the Settlement Agreement after September of 2008. Accordingly, the same individuals that caused the damages to unsecured creditors by insisting upon the breach of the Settlement Agreement, are now asking for their vote in the competing plan filed by the Lehman Lenders.

LBHI's bankruptcy filing and the Lehman Lenders refusal, at A&M's direction, to close the transactions provided for under the Settlement Agreement as agreed, were not small matters. They severely damaged the Debtors. Although the Debtors were not proceeding with any new construction or development, the Debtors were still required to expend significant sums on site security, erosion control, property taxes and other measures in order to prevent the Projects from becoming a public safety hazard, and in order to avoid the loss of valuable entitlements, and to mitigate penalties and fines being incurred by the Projects.  Although SunCal and the Debtors repeatedly requested that the Lehman Entities pay for critical health and safety and value preservation measures on the Projects, these efforts were unavailing.

Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Robert Brusco, an authorized agent of the Lehman Entities, nearly two dozen letters requesting that the Lehman Lenders provide the funding necessary to address critical needs on the Projects as

1    promised.  A summary of these health and safety notices are attached hereto as Exhibit "5".  The

2    Lehman Entities ignored these requests until November 2008, when Brusco, purportedly on behalf

3    of the Lehman Lenders, delivered the message that the Lehman Lenders were unwilling to fund the

4    Projects and that, instead, they intended to foreclose on all of the Projects.

5            As a result, as set forth in Exhibit "4," there are now over 240 vendors, municipalities,

6    counties and bonding companies claiming over $400 million in work, improvements and property

7    tax claims against the Projects.  Substantially all of these sums are due to work performed or

8    bonded at Lehman's request based upon Lehman's promises of payment.

9            4.1    **The Debtors' Potential Preferential Transfers**.

10   IAttached hereto as Exhibit "6" are charts setting forth payments made to third parties during the

11   ninety (90) day time period preceding the filing of the Debtors' Chapter 11 Cases as well as

12   payments made to the Lehman Entities and to SunCal Affiliates during the one-year time period

13   preceding the filing of the Debtors' Chapter 11 Cases.

14   IIAs the charts in Exhibit 6" indicate, SunCal Century City made payments in the following

15   aggregate amounts to non-insiders within the 90 day preference period preceding the Petition Date:

16   SunCal Century City: $190,087.  The corresponding figures for payments made to "insiders"

17   within the one year preference period preceding the Petition Date were: SunCal Century City:

18   $11,376,547, of which $10,628,948.64 was paid to Lehman ALI.

19                                                **V.**

20                    **SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES**

21           ~~17.1~~ **5.1.**                   **Voluntary Debtors**.

22                    ~~1~~**5.1.1**                 **Joint Administration of the Voluntary Debtors and the**

23                    **Trustee Debtors**.

24           Since their respective Petition Dates, the seventeen (17) Voluntary Debtors have continued

25   to operate as "debtors-in-possession," subject to the supervision of the Bankruptcy Court and in

26   accordance with the Bankruptcy Code.  The Voluntary Debtors are authorized to operate their

27   businesses in the ordinary course during the Chapter 11 proceedings.  Transactions outside the

28   ordinary course of business must be approved by the Bankruptcy Court.

1    The Voluntary Debtors' Cases are being jointly administered pursuant to orders entered on

2    November 19, 2008 and December 9, 2008.  The Voluntary Debtors' Cases are being jointly

3    administered with the Trustee Debtors' cases pursuant to an order entered on March 11, 2009.

4    The Voluntary Debtors have employed Winthrop Couchot Professional Corporation as their

5    general insolvency counsel, and the MB Firm as their special litigation counsel.

6    **17.2  5.2.    The Trustee Debtors and Their Professionals.**

7    Orders for Relief were entered in the involuntary cases beginning on January 6, 2009.  The

8    Trustee Debtors are represented by their duly-appointed Chapter 11 Trustee, Mr. Steven M. Speier

9    pursuant to orders of the Bankruptcy Court entered on January 15, 2009.  The Trustee Debtors'

10    Cases were shortly thereafter jointly administered with the Voluntary Debtors Cases pursuant to an

11    Order of the Court.

12    The Chapter 11 Trustee has employed the Lobel Firm as the Chapter 11 Trustee's general

13    insolvency counsel and the MB Firm, as special litigation counsel and Squar ~~Miller~~Milner, LLP as

14    its accountants

15    The Trustee Debtors' Committee has employed Weiland, Golden, Smiley, Wang Ekvall & Strok as

16    its general insolvency counsel.

17    **17.3    SunCal Century City's Preference Claim Against Lehman ALI in the Lehman**

18    **Adversary Proceeding.**

19    As stated, in the Fourth Amended Complaint of the Lehman Adversary Proceeding, pursuant to

20    Section 547 of the Bankruptcy Code, the SunCal Century City Preference Claim seeks to avoid and

21    recover preferential transfers made by SunCal Century City to alleged creditor Lehman ALI in the

22    amount of $10,628,948.64.  Such transfers were were made for, or on account of, an antecedent debt

23    owed by SunCal Century City to Lehman ALI before such transfers were made, at a time when

24    SunCal Century City was insolvent and at a time when the SunCal Century City Loan Agreement

25    was unsecured.  Accordingly, Lehman ALI received more than it would have received if:  (i) the

26    SunCal Century City Case was a case under chapter 7 of the Bankruptcy Code; (ii) the transfers

27    had not been made; and (iii) Lehman ALI received payment of such antecedent debt under the

28    provisions of the Bankruptcy Code.

1   The preference claims set forth in the Fourth Amended Complaint include the following: Transfers

2   made to a Lehman Entity by a Debtor, where such Debtor was either owned by a Lehman Equity

3   Member (50%) or where a Lehman Equity Member of Lehman Entity controlled such Debtor at the

4   time of the transfer.  Furthermore, according to the Lehman Lenders' appraisals submitted on the

5   Projects of these Debtors, all of the loans were vastly undersecured at the time of the transfers.   In

6   the case of SunCal Century City Preference Claim, the Debtors seek to avoid and recover

7   preferential transfers made by SunCal Century City to Lehman ALI in the amount of

8   $10,628,948.64, described above.

9

10      **17.4  5.3.    SunCal's Discovery of the Danske Bank Repo.**

11      In the SunCal Century Citythe Debtor's efforts to sell the 10,000 Santa Monica Project to

12  D.E. Shaw during the course of the case and through independent discovery efforts, it was

13  discovered that the SunCal Century City Loan had been sold to Danske Bank years earlier pursuant

14  to a repurchase agreement.  Therefore, Danske Bank was the true holder of the SunCal Century

15  City Loan Agreement and filed a claim against SunCal Century Citythe Debtor in the amount of

16  $120,000,000

17      **17.5  5.4.    The Sale of the 10,000 Santa Monica Project to Danske Bank.**

18      SunCal Century CityThe Debtor owned the 10,000 Santa Monica Project and this project

19  was subject to an alleged first priority deed of trust held by Danske Bank pursuant to the SunCal

20  Century City Loan Agreement.  However, during the Chapter 11 case the 10,000 Santa Monica

21  Project was sold to Danske Bank pursuant to a settlement agreement, in full satisfaction of the

22  amounts owed under the SunCal Century City Loan Agreement, plus a payment by Danske Bank

23  of $5.3 million.  Pursuant to this settlement agreement, SunCal Century Citythe Debtor retained the

24  right to pursue the SunCal Century City Preference ClaimLehman Preference Claim against

25  Lehman ALI.  Danske Bank has acknowledged that it has not received any of the payments that

26  were a part of the SunCal Century City Preference ClaimLehman Preference Claim.

27                                      **VI.**

28                          **TREATMENT OF UNCLASSIFIED CLAIMS**

-38-

1    ~~10.1.~~6.1    **Introduction**. As required by the Bankruptcy Code, the ~~SunCal Century~~

2    ~~City Plan~~Plan places Claims and Interests into various Classes according to their right to priority.

3    However, certain types of Claims are not classified in any Classes under the ~~SunCal Century City~~

4    ~~Plan~~Plan.  These Claims are deemed "unclassified" under the provisions of the Code.  They are not

5    considered impaired and they do not vote on the ~~SunCal Century City Plan~~Plan, because they are

6    automatically entitled to specific treatment provided for them in the Code.  As such, the ~~SunCal~~

7    ~~Plan Proponents~~SunCal Plan Proponent have not placed the following Claims in a Class.  The

8    treatment of these unclassified Claims is as provided below.

9    ~~10.2.~~6.2    **Treatment of Allowed Administrative Claims.**

10    The Code requires that all Allowed Administrative Claims be paid on the later of Effective

11    Date of the ~~SunCal Century City Plan~~Plan or the date of their allowance, unless a particular Holder

12    agrees to a different treatment.  The treatment of Allowed Administrative Claims is as described

13    below.  However, such Administrative Claims are continuing to be incurred.  The Allowed

14    Administrative Claims shall be paid from the applicable Distribution Account(s).

15    Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

16    different treatment and subject to the Administrative Claims Bar Date set forth herein, the

17    Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

18    (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

19    becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

20    becomes due according to its terms. ~~Notwithstanding the foregoing, any Allowed Administrative~~

21    ~~Claim representing obligations incurred in the ordinary course of post-petition business by the~~

22    ~~Debtors in Possession (including without limitation post-petition trade obligations and routine~~

23    ~~post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the~~

24    ~~ordinary course of business, in accordance with the terms of the particular obligation.~~

25    ~~10.3.~~6.3    **Administrative Claims Bar Date.**

26    All applications for final compensation of Professionals for services rendered and for

27    reimbursement of expenses incurred on or before the Effective Date and all other requests for

28    payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

obligations and routine post-petition payroll obligations incurred in the ordinary course of ~~the~~

~~Debtors' SunCal Century City~~the Debtor's post-petition business, for which no bar date shall apply,

and (ii) post-petition tax obligations, for which no bar date shall apply) shall be Filed with the

Bankruptcy Court and served upon the Plan Trustee no later than the Administrative Claims Bar

Date, unless such date is extended by the Bankruptcy Court after notice to the Plan Trustee.  Any

such request for payment of an Administrative Claim that is subject to the General Administrative

Claims Bar Date and that is not Filed and served on or before the Administrative Claims Bar Date

shall be forever barred; any party that seeks payment of Administrative Claims that (i) is required

to file a request for payment of such Administrative Claims and (ii) does not file such a request by

the deadline established herein shall be forever barred from asserting such Administrative Claims

against ~~the Debtors~~~~SunCal Century City~~the Debtor, the Plan Trust, their estates, or any of their

property.

### ~~10.4.~~6.4        **Treatment of Unsecured Tax Claims.**

Tax Claims are certain unsecured income, employment and other taxes described by Code

Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

receive the present value of such Claim in deferred cash payments, over a period not exceeding

five (5) years from the petition date and that such treatment not be less favorable than the treatment

accorded to non priority unsecured creditors.

At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

each three-month period following the Effective Date, during a period not to exceed five years

after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

favorable terms to ~~the Debtors~~ ~~SunCal Century City~~the Debtor(or the Plan Trust after the Effective

1  Date) than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed Priority

2  Tax Claim in Cash.

3  **VII**.

4  **CLASSIFICATION OF CLAIMS AND INTERESTS**

5  As required by the Code, the ~~SunCal Century City Plan~~Plan places Claims and Interests

6  into various Classes according to their right to priority and other relative rights.  The ~~SunCal~~

7  ~~Century City Plan~~Plan specifies whether each Class of Claims or Interests is impaired or

8  unimpaired, and the ~~SunCal Century City Plan~~Plan sets forth the treatment each Class will receive.

9  The table below lists the Classes of Claims established under the ~~SunCal Century City Plan~~Plan

10  and states whether each particular Class is impaired or left unimpaired by the ~~SunCal Century City~~

11  ~~Plan~~Plan.  A Class is "unimpaired" if the ~~SunCal Century City Plan~~Plan leaves unaltered the legal,

12  equitable and contractual rights to which the Holders of Claims or Interests in the Class are

13  entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF ~~GENERAL~~ **PRIORITY** UNSECURED CLAIMS **AGAINST** ~~SUNCAL CENTURY CITY~~**THE DEBTOR** | | |
|---|---|---|
| **Class 1** | ~~**Claimant**~~ | **Claim Nos.** |
| Class 1.1 | ~~Claimants holding Allowed Unsecured~~ The Holders of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted against ~~SunCal Century City~~ the Debtor. | Various Filed and Scheduled Claims in the Estimated Amount of $0 |

| CLASSIFICATION OF ~~INTEREST HOLDERS~~**GENERAL UNSECURED CLAIMS AGAINST** ~~SUNCAL CENTURY CITY~~**THE DEBTOR** | | |
|---|---|---|
| **Class 2** | ~~**Holders**~~ **Claimant** | **Scheduled****Claim Nos.** |
| Class 2.1 | ~~Holders of Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC (50%) and LBREP II/SunCal Land Fund Member LLC (50%).~~ Claimants holding Allowed Unsecured Claims against ~~SunCal Century City~~ the Debtor. | ~~50% Each~~ Various Filed and Scheduled in the Estimated Amount of $4,390,043 |

| **CLASSIFICATION OF INTEREST HOLDERS AGAINST** ~~SUNCAL CENTURY CITY~~**THE DEBTOR** | | |
|---|---|---|
| **Class 3** | **Holder** | **Amount** |
| Class 3.1 | Holders of Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC (50%) and LBREP II/SunCal Land Fund Member LLC (50%). | 50% Each |

## VIII.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**8.1.    The Plan's Treatment of Holders of Priority Claims Against** ~~SunCal Century City~~ **the Debtor (Class 1.1)**.

The treatment of the Holders of Allowed Priority Claims under the ~~SunCal Century City Plan~~ Plan shall be as follows:

A.    The Holder(s) are unimpaired under the ~~SunCal Century City Plan~~ Plan; and

B.    The Holder(s) shall be paid in full from the Distribution Account on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Priority Claim, (c) the date

-42-

1  such Allowed Priority Claim becomes payable in accordance with the terms governing such

2  Allowed Priority Claim, or (d) the date that any Disputed Administrative and Priority Claims are all

3  resolved by Final Orders of the Bankruptcy Court.The Holder(s) shall be paid either from the

4  Distribution Account (i) the full amount of such Allowed Priority Claim in Cash on the later of (x)

5  the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such

6  Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed

7  Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and

8  the Plan Trustee.

9    **8.1.**    **The Plan's Treatment of Holders of Allowed General Unsecured Claims**

10    **Against SunCal Century Citythe Debtor (Class 12.1).**

11    **8.2.**    The rights of Holders of Allowed Class 1.1 Claims2.1Claims are impaired under the

12    SunCal Century City Plan. Under the SunCal Century City Plan, each claimant

13    willshall receive a pro-rata share of any funds payable from the Distribution

14    Account, after payment in full of all Post Confirmation Expenses, Allowed

15    Administrative Claims, and Allowed Priority Claims.

16    The rights of Holders of Allowed Class 2.1 Claims under the Plan are impaired under the

17  Plan. Under the Plan, each claimant shall receive an initial Distribution ("Initial Distribution")

18  from the Available Cash constituting a pro-rata share of any Available Cash, after payment in full

19  of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

20  The Initial Distribution shall be made on the later of the Distribution Date or within thirty days

21  after the resolution of all Disputed Administrative Claims and Priority Claims.

22    Thereafter, the Holders of Allowed Class 2.1 Claims shall receive potential supplemental

23  Distributions (the "Supplemental Distributions") consisting of their pro-rata share of any Net

24  Litigation Recoveries, if any, until such Holders have received a Maximum Distribution.

25

26    **8.2.8.3.**        **The Plan's Treatment of Holders of Allowed Interests. Against SunCal**

27    **Century Citythe Debtor (Class 3.1).**

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1    ~~The Interests of the Holders in Class 23.1 are impaired under the SunCal Century City Plan.~~

2    ~~All such Interests shall receive a pro-rata share of any funds payable from the Distribution~~

3    ~~Account, after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims,~~

4    ~~Allowed Priority Claims, and Allowed General Unsecured Claims.~~The Interests of the Holders in

5    Class 3.1 are impaired under the Plan.  All such Interests shall be cancelled as of the Effective Date

6    and no Distribution shall be made to these Holders on account of such Interest(s).

7

8    <div align="center">**IX.**</div>

9    <div align="center">**ACCEPTANCE OR REJECTION OF THE PLAN**</div>

10        **9.1.**    **Introduction.**

11    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

12    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

13    CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

14    discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

15    which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors

16    cannot represent that the discussion contained below is a complete summary of the law on this

17    topic.

18    Many requirements must be met before the Court can confirm the Plan.  Some of the

19    requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

20    the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

21    whether the Plan is feasible.  The requirements described herein are _not_ the only requirements for

22    confirmation.

23        **9.2.**    **Who May Object to Confirmation of the Plan.**

24    Any party in interest may object to the confirmation of the Plan, but as explained below not

25    everyone is entitled to vote to accept or reject the Plan.

26        **9.3.**    **Who May Vote to Accept/Reject the Plan.**

27

28

1    A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of

2    the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and

3    (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected").

4    The votes will be tabulated on a Debtor by Debtor basis.

5    **9.4.    What Is an Allowed Claim/Interest.**

6    As noted above, a Holder of Claim or Interest must first have an Allowed Claim or

7    Allowed Interest to vote.

8    **9.5.    What Is an Impaired Class.**

9    A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

10    or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

11    In this case, the Debtors believes that all Classes, except Class 1.1, are impaired.

12    **9.6.    Who Is Not Entitled to Vote.**

13    The following four types of Claims are not entitled to vote: (1) Claims that have been

14    disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to

15    Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain

16    any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such

17    Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy

18    Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

19    they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes

20    that do not receive or retain any property under the Plan do not vote because such Classes are

21    deemed to have rejected the Plan.  The Debtors believes that all Classes are entitled to vote except

22    Class 5.1. These classes are1. This class is not impaired under the Plan and consequently areis not

23    entitled to vote. They are conclusively deemed to have accepted the Plan.  The Interests held by the

24    Holders in Class 23.1- are being cancelled under the Plan; accordingly these Interest Holders are

25    deemed to have voted to reject the Plan.

26    EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

27    HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

28    **9.7.    Who Can Vote in More than One Class.**

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

### 9.8.    Votes Necessary for a Class to Accept the Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

### 9.9.    Treatment of Nonaccepting Classes.

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

### 9.10.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

The ~~SunCal Plan Proponents~~SunCal Plan Proponent will ask the Court to confirm the Plan by cramdown on any impaired Class if such Class does not vote to accept the Plan.

## X.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

This Section is intended to explain how the Plan Trustee intends to effectuate the liquidation contemplated by the Plan, and how the Trustee intends to fund the obligations to

Holders of Allowed Claims as provided in the Plan.  This section provides information regarding the funding sources for Plan obligations, the establishment of the Plan Trust, and other material issues bearing upon performance of the Plan.

**10.1.    Removal of Chapter 11 Trustee**.

As of the Effective Date, the appointment of the Chapter 11 Trustee in the Debtor's Case shall terminate, and possession and control over all property within this estate shall pass to the Plan Trust.

**10.2.    ~~Introduction.~~  The Plan Trust and Plan Trustee**

A.    Establishment of the Plan Trust.

The Plan Trust shall be established and shall become effective on the Effective Date.  The Plan Trust is created pursuant to the Plan and the Confirmation Order, and separate trust instrument shall be required.  The primary purpose of the Plan Trust is the liquidation and distribution of the Assets transferred to it, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust.  The Plan Trust shall hold and administer the Assets of the Debtor and the Distribution in accordance with the terms of the Plan.

B.    The Plan Distributions.

The Plan trustee shall liquidate the Assets and shall Distribution the Available Cash and the Net Litigation Recopies in accordance with the terms of the Plan.  All distributions to the Holders of Allowed Claims shall be from the Plan Trust.  Any person or entity dealing with the Plan Trustee, or seeking to assert Claims against the Debtor or the Debtor's Estate or the Plan Trust, shall look only to property of the Debtor, the Estate or the Plan Trust to satisfy any liability to such person or entity, and the Plan Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

C.    Duration of the Plan Trust.

The Plan Trust shall have an initial term of five (5) years; provided, however, that the tem of the Plan Trust may be extended for a finite term upon a finding of "cause" by the Court.  The

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

Plan Trustee may seek an extension of the Plan Trust's term by Motion filed by the expiration of the term to be extended.  The Plan Trust may be terminated earlier than its scheduled termination if (a) the Court has entered a Final Order closing the Case pursuant to 11 U.S.C. §350(a) and (b) the Plan Trustee has administered all assets of the Plan Trust and performed all other duties required by the Plan.

        D.      The Plan Trustee.

        1.      Appointment.  The appointment of the Plan Trustee shall be effective as of the Effective Date.

        2.      Term.  Unless the Plan Trustee resigns, dies or is removed by Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the United States Trustee shall select and recommend to the Court a successor trustee.

        3.      Powers and Duties.  On the Effective Date, the Plan Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

        i.      employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan;

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1    ii.    control and effectuate the Claims reconciliation process,

2    including to object to, seek to subordinate, compromise or settle any and all Claims against the

3    Debtor pursuant to the terms of the Plan;

4    iii.    open, maintain and administer bank accounts as necessary to

5    discharge the duties of the Plan Trustee under the Plan;

6    iv.    make Distributions to the Holders of Allowed Claims in

7    accordance with the Plan;

8    v.    retain professionals to assist in performing his or her duties

9    under the Plan;

10    vi.    pay reasonable and necessary professional fees, costs, and

11    expenses;

12    vii.    investigate, analyze, commence, prosecute, litigate,

13    compromise, settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions

14    for the benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other

15    necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all

16    Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests

17    of the Plan Trust;

18    viii.    administer, sell, liquidate, or otherwise dispose of the Assets

19    in accordance with the terms of the Plan;

20    ix.    incur and pay reasonable and necessary expenses in

21    connection with the performance of the Plan Trustee's duties under the Plan;

22    x.    represent the Estates before the Court and other courts of

23    competent jurisdiction with respect to mattes concerning the Plan Trust;

24    xi.    seek the examination of any entity under the subject to the

25    provisions of Bankruptcy Rule 2004;

26    xii.    comply with applicable orders of the court and any other

27    court of competent jurisdiction over the matters set forth in the Plan;

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

xiii.    comply with all applicable laws and regulations concerning the matters set forth in the Plan;

xiv.    exercise such other powers as may be vested in the Plan Trust pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court;

xv.    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Plan Trust;

xvi.    (1) seek a determination of tax liability under §505 of the code, (2) pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns r3equired with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on behalf of the Plan Trust, and 95) pay taxes, if any, payable by the Plan Trust; and

xvii.    stand in the shoes of the Debtor for all purposes.

E.    Retention of Professionals and Compensation Procedure.

On and after the Effective Date, the Plan Trustee may, without further application or Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out the provisions of the Plan.  The Plan Trustee may employ such professionals on any reasonable terms and conditions of employment to be determined by the Plan Trustee.  For the services performed on and after the Effective Date, the professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan Trustee.

F.    Fees and Expenses.

The Plan Trustee and the Plan Trustee Professionals shall be entitled to reasonable compensation for their services, and reimbursement of expenses.  The Plan Trustee shall be paid on an hourly basis at the rate of $575.00, as may be increased from time to time as is consistent with the Plan Trustee's ordinary practices.  Compensation of the Plan Trustee and the costs and expenses of the Plan trust (including, without limitation, fees and expenses of the Plan Trustee Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order,

-50-

1. notice or application to the Court, the reasonable fees and expenses of the Plan Trustee and the

2. Plan Trustee Professionals, as necessary to discharge the Plan trustee's duties under the Plan.  The

3. Plan Trustee shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the

4. expenses and fees of the Plan trustee and the Plan Trustee Professionals before making any

5. Distributions under the Plan.

6.         G.     Limitation of Liability and Indemnification.

7.      Neither the Plan Trustee nor his or her employees, Plan Trustee Professionals or agents hall

8. be liable (a) for any loss or damages by reason of any action taken or omitted by him or her, except

9. in the case of fraud, willful misconduct, bad faith, or gross negligence, or (b) for any act or

10. omission made in reliance upon the Debtor's books and records or upon information or advice

11. given to the Plan trustee by his or her professionals.  Except as otherwise provided in this Plan, the

12. Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate, statement,

13. instrument, opinion, report, notice, consent, or other document believed by him or her to be

14. genuine and to have been signed by the proper party or parties.

15.      The Plan Trustee and his or her employees, Plan Trustee Professionals or agents

16. (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall be indemnified and

17. receive reimbursement from and against any and all loss, liability, expense (including attorneys'

18. fees) or damage of any kind, type or nature, which the Indemnified Party may incur or sustain the

19. exercise and performance of any of the Plan Trustee's powers and duties under this Plan or the

20. Confirmation Order, or in the rendering of services by the Indemnified Party to the Plan Trustee, to

21. the full extent permitted by applicable law, except if such loss, liability, expense or damage is

22. finally determined by a court of competent jurisdiction to result from the Plan Trustee's or an

23. Indemnified Person's fraud, willful misconduct, bad faith, or gross negligence.  The amounts

24. necessary for such indemnification and reimbursement shall be paid by the Plan Trustee out of the

25. Plan Trust assets.  The Plan Trustee shall not be personally liable for the payment of any Plan Trust

26. expense or claim or other liability of the Plan Trust, and no Person shall look to the Indemnified

27. Parties personally for the payment of any such expense or liability.  This indemnification shall

28. survive the death, resignation or removal, as may be applicable, of the Plan Trustee, or the

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

termination of the Plan Trust, and shall inure to the benefit of the Plan Trustee's and the Indemnified Person's heirs and assigns.

H.    Plan Trustee as Successor.

Pursuant to Bankruptcy Code the Plan Trustee shall be the successor to the Debtor and the Trustee for all purposes.  The Plan trustee shall stand in the same position as the Debtor and the Trustee with respect to any claim the Debtor may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Plan Trust shall succeed to all of the Debtor's rights to preserve, assert, or waive any such privilege.

I.    Vesting of Assets.

On the Effective Date, all Assets shall be transferred to and vest in the Plan Trust free and clear of all Claims, liens, encumbrances, or other interests (unless otherwise stated expressly in the Plan).

J.    Plan Trustee as Disbursing Agent.

The Plan Trustee shall make all Distributions required under the Plan, subject to the terms and provisions of the Plan.  The Plan Trustee shall make continuing efforts to dispose of the Plan Trust's assets, make Distributions, and not unduly prolong the duration of the Plan Trust.

K.    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Plan Trustee does not dispute at the time and in the manner that the Plan Trustee makes Distributions to the Holders of Allowed Claims pursuant to the provisions of the Plan.

L.    Reserves for Disputed Claims

In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the Plan Trustee shall establish and maintain a reserve for such Disputed Claims.  For purposes of

-52-

establishing a reserve, Cash will be set aside equal to the amount that would have been distributed

to the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a

Distribution is made to the Holders of Allowed Claims in the same Class or of the same priority as

the Disputed Claims.  If a Disputed Claim ultimately becomes an Allowed Claim, the amount of

Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the distributed Date

following the date when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days

after such Disputed Claim becomes an Allowed Claim.  Any reserved Cash not ultimately

distributed to the Holder of a Disputed Claim because the Disputed Claim does not become an

Allowed Claim shall become property of the Plan Trust and shall be distributed in accordance with

the terms of the Plan.

M.    Limitation on Liability

13.1      The Trustee, the Committee, the Plan Trustee, and any of their respective

employees, members, officers, directors, shareholders, agents, or professionals shall not be liable

for (i) any acts or omissions, except for willful misconduct, in connection with implementing the

Distribution provisions of the Plan and the making or withholding of Distributions under the Plan,

or (ii) any change in the value of Distributions made under the Plan resulting from any delays in

making such Distributions in accordance with the terms of the Plan (including, but not limited to,

any delays caused by the resolution of Disputed Claims).

This section is intended to address how the SunCal Plan Proponents intend to implement the

provisions of the Plan.  It addresses the transfer of the Plan Trust Property to the Plan Trust, the

nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

resolution of disputed claims, the sources of funds that will be used to pay claims and the

mechanics of how claims will be paid.

Removal of Chapter 11 Trustee.

11      As of the Effective Date, the appointment of the Chapter 11 Trustee in the SunCal Century

City shall terminate, and possession and control over all property within this estate shall pass to the

Plan Trust.

10.3.    The Trustee Debtors' Committee.

1    On the Effective Date, the Committee shall continue to serve as the Committee, subject to

2    the following:

3    **A.    Duties and Powers.**

4    The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

5    monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

6    in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

7    that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

8    Claim.   The Trustee Debtors' Committee shall receive notice of and the right to review all

9    payments and Distributions.

10    The Committee shall be entitled to retain, employ and compensate Professionals, in order

11    to assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the

12    Plan.  Such compensation shall be paid from the Plan Reserve.  However, the fees incurred arising

13    from the Potential SunCal Preference Claim shall only be paid on a contingency fee basis.

14    **B.    Dissolution of Trustee Debtors' Committee.**

15    The Committee shall be dissolved upon the entry of an order converting, closing or

16    dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution,

17    the Trustee Debtors' Committee shall have no other or further obligations or responsibilities on

18    behalf of the Plan Trust.

19    ~~Transfer of Property To The Plan Trust~~.

20    ~~12~~    ~~On the Effective Date, title to and possession of all property of SunCal Century City,~~

21    ~~excepting those items of property that the Plan Trustee affirmatively elects not to transfer to the~~

22    ~~Plan Trust, shall be deemed transferred and delivered to the Plan Trust, without further act or action~~

23    ~~under any applicable agreement, law, regulation, order or rule of law.~~

24    ~~Purposes of The Plan Trust~~.

25    ~~13~~    ~~The Plan Trust's purposes, powers and objectives include, but are not limited to the~~

26    ~~following: (i) to take control over, manage and over time sell or otherwise dispose of all Plan Trust~~

27    ~~Property for the highest return reasonably obtainable; (ii) to pursue all Litigation Claims through~~

28    ~~collection efforts, including through litigation in any court of competent jurisdiction, and to obtain~~

the most favorable recovery on the same, with due consideration of all relevant factors, including cost; (iii) to cause all Available Cash to be deposited into the applicable Distribution Accounts; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Bankruptcy Court; (iv) to take such other actions as are necessary or useful to maximize the value of all property received by the Plan Trust; (v) to make the payments and distributionsDistributions to creditors and holders of Beneficial Interests as required by the Plan; and (vi) to enforce all rights with respect to the Plan Trust Property; and (vii) to take all actions reasonable and necessary to implement the terms of the Plan. A more complete statement of the Plan Trust's powers and limitations is set forth in the Plan Trust Agreement, which is a part of the Plan Supplement.

14    It is intended that the Plan Trust will be classified for U.S. federal income tax purposes as a "liquidating trust," with the primary objective of liquidating the Plan Trust Property and distributing the net proceeds thereof, with no objective to continue or engage in the conduct or a trade or business in accordance with Treasury Regulation 301.7701-4(d), and, notwithstanding anything to the contrary in the Plan, all actions taken by the Plan Trust or any person acting on behalf of the Plan Trust shall be consistent with such primary objective.

**Trust Agreement**.

15    Copies of the Plan Trust Agreement shall be contained in the Plan Supplement. The Plan Trust Agreement shall, among other matters, create the Plan Trust, identify Acquisitions as the initial trustee of the Plan Trust, identify the compensation of the Plan Trust, and specify the authorities and powers of the Plan Trustee, consistent with the Plan.

**Operations of the Plan Trust**.

16    From and after the Effective Date, the Plan Trust may use, acquire and dispose of the Plan Trust Property held in the Plan Trust, and take any of the actions set forth in this Article or in the Plan Trust Agreement, without the approval of the Bankruptcy Court and free of the restrictions of the Bankruptcy Code, the Bankruptcy Rules or the prior orders of the Bankruptcy Court, other than restrictions expressly imposed by the Plan, the Confirmation Order or the Plan

1  Trust Agreement, provided that the Plan Trust is administered so that it qualifies as a liquidating

2  trust under Treasury Regulation § 301.7701-4(d).

3  ————**The Plan Trustee**.

4  Acquisitions shall be Trustee of the Plan Trust.  Acquisitions is thea direct or indirect

5  parent of all of Debtors.

6  ————**Payment of Trust Expenses.**

7  The expenses incurred by the Plan Trust during the Plan Period, which shall include the

8  compensation payable to the Acquisitions, shall be paid, or adequate reserves shall be created for

9  the payment of such expenses, prior to any distributionDistribution to the Plan Trust Beneficiaries.

10  ————**Plan Distribution System**.

11  The Plan Trustee shall establish a separate "Distribution Account" for SunCal Century City

12  at an FDIC insured bank. SunCal Century City's Available Cash, whether on hand as of the

13  Effective Date or received thereafter, shall be deposited into SunCal Century City's Distribution

14  Account. The only exception to this provision shall be in the case of Net Sales Proceeds that are

15  subject to disputed liens. Such proceeds shall remain in the applicable Net Proceeds Accounts

16  established to receive the proceeds from the sale of a particular property. Once all disputes

17  regarding entitlement to the funds in the Net Proceeds Accounts have been resolved, the proceeds

18  remaining (after the payment of the Allowed Claims secured by liens on these proceeds) shall be

19  transferred to the Distribution Account. These funds will then be used to pay the claims of

20  Creditors holding Allowed Claims in their order of priority as provided for in the Plan.

21  ————**Claims Estimation Rights**.

22  On the Confirmation Date, the SunCal Proponents shall be vested with standing to file a

23  motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

24  motion the estimation, for distributionDistribution purposes, of any Disputed Claim seeking

25  recourse to, or claiming an interest in, any asset of SunCal Century City. After the Bankruptcy

26  Court estimates a Disputed Claimant's rights in, or against an asset of the Estates through this

27  procedure, the Trustee Debtors' Committee shall have the right to use any funds or assets not

28

1  deemed subject to the rights of the Disputed Claimant, to pay the Allowed Claims under the terms

2  of the Plan, including Allowed Administrative Claims, after the Effective Date.

3      **10.4.   No Payment of Transfer-Related Fees to the United States Trustee**.

4      The Plan Trust shall not be required to pay any fees to the United States Trustee based on

5  any transfers of the Plan Trust Property to the Plan Trust or from the Plan Trust.

6      **10.5.   No Payment of Transfer-Related Fees to the Trustee**.

7      The Plan Trust shall not be required to pay any fees to the Trustee based on any transfers of

8  Plan Trust Property from the Trustee DebtorsSunCal Century Citythe Debtor to the Plan Trust, or

9  from the Plan Trust.

10     **10.6.   Books and Records of Trust.**

11     The Plan Trustee, and to the extent of payments and distributionsDistributions by any

12 Disbursing AgentDistribution Agent, the Disbursing Agent, shall maintain an accounting of

13 receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and

14 records of the Plan Trust, or provide storage for such book and records, for the longer of six (6)

15 years, or while Plan is in existence, provided that the Court may, upon application by the Plan

16 Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as

17 Plan Trust has no further need for such books and records. The Plan Trust's books and records

18 shall be open to inspection at all reasonable times, upon written request by the Trustee Debtors'

19 Committee.

20     **10.7.   Limitations on Liability**.

21     The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating

22 trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan

23 Trust shall not be liable in any event for any claims, liabilities or damages based upon or arising

24 out of any conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless

25 such claims, liabilities or damages arise from Plan's gross negligence or willful misconduct.

26     The Plan Trustee, and its officers, directors, agents and employees shall not be liable for

27 any indebtedness, liability or obligation incurred or entered into on behalf of the Plan Trust,

28 including, without limitation, indebtedness, liabilities or obligations under agreements,

1    ~~undertakings or commitments entered into or executed on behalf of Plan Trust by the Plan Trustee~~

2    ~~or by any person employed by the Plan Trustee or the Plan, it being expressly understood that all~~

3    ~~such indebtedness, liabilities and obligations of, and claims against the Plan, shall be the sole~~

4    ~~responsibility of the Plan and shall be satisfied only from the Plan, or such portion thereof as shall,~~

5    ~~under the terms of any agreement, be stated to be liable therefore. No claim or cause of action may~~

6    ~~be asserted against the Plan Trustee, or any member of the New Board on account of any~~

7    ~~indebtedness, liability or obligation entered into on behalf of the Plan, whether by legal or~~

8    ~~equitable proceedings, or by virtue of any bankruptcy or non-bankruptcy statute, rule or regulation.~~

9    Any undertaking, contract or agreement entered into in writing by the Plan may, except as

10   otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal

11   liability of Plan Trustee.

12   **10.8.    Federal Income Tax Treatment of the Holders of Plan Trust Beneficial**

13   **Interests**.

14   For all United States federal income tax purposes, the transfers by ~~SunCal Century City~~the

15   Debtor shall be treated by ~~SunCal Century City~~the Debtor, their estates, the Plan Trust and the Plan

16   Trust Beneficiaries as a transfer of the Plan Trust Property by ~~SunCal Century City~~the Debtor to

17   the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Property by such the Plan

18   Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and

19   deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust

20   Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust

21   Property consistently with the values placed upon the Plan Trust Property by the Plan Trust, and to

22   use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent

23   valuations of the Plan Trust Property by the Plan Trust Trustee and the Plan Trust Beneficiaries,

24   and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Property

25   within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust

26   Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be

27   conclusively deemed to agree to use such valuations for all purposes, including, without limitation,

28   in computing any gain recognized upon the exchange of such holder's claim for purposes of

-58-

1  determining any United States Federal income tax, and shall be required to include those items of

2  income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

3  its taxable income.

4      **10.9.**    **Termination of the Trust**.

5      The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

6  Property has been liquidated, all proceeds have been converted to cash or distributed in kind, all

7  the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

8  Trust Trustee is obligated to make ~~distributions~~Distributions on have been paid, all

9  ~~distributions~~Distributions to be made with respect to the Beneficial Interests have been made, all

10 litigation to which the Plan Trust is a party have been concluded by dismissal or an order issued by

11 the court in which such litigation is pending and such order has become "final" (consistent with the

12 definition of Final Order in the Plan for orders issued by the Bankruptcy Court), and the Chapter

13 11 Case has been closed; and (b) the expiration of five (5) years from the Effective Date; provided,

14 however, that the Plan Trust may request the Bankruptcy Court to extend the permitted life of the

15 Plan Trust for such additional period as is reasonably necessary to conclude the liquidation and

16 ~~distributions~~Distributions, not to exceed a total of ten (10) years from the Effective Date, which

17 request shall be filed so the Bankruptcy Court may consider and rule on the request within six (6)

18 months prior to the expiration of the initial five-year term.

19     **10.10.**   **Exemption from Certain Transfer Taxes**.

20     In accordance with Section 1146(~~e~~a) of the Bankruptcy Code, the issuance, transfer or

21 exchange of a security or the making or delivery of an instrument of transfer under the Plan may

22 not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

23 agents shall forego the assessment and collection of any such tax or governmental assessment and

24 shall accept for filing and recordation any of the foregoing instruments or other documents without

25 payment of such tax or other governmental assessment.

26     **10.11.**   **Tax Consequence of The Plan**.

27     The implementation of the Plan may have federal, state and local tax consequences to ~~SunCal~~

28 ~~Century City~~the Debtor, Creditors and Interest Holders.  No tax opinion has been sought or will be

obtained with respect to any tax consequences of the Plan. ~~This~~The Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS ~~CONTEMPLATED~~CONTEMPLATED BY THE PLAN, ~~INCLUDING~~INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**~~a.~~10.12.    The Plan Sponsor.**

The Plan Sponsor shall be Acquisitions.

**~~12.3.1    The Trustee Debtors' Committee.~~**

~~On the Effective Date, the Trustee Debtors' Trustee Debtors' Committee shall continue to serve its SunCal Century City as the Trustee Debtors' Committee, subject to the following:~~

**~~Duties and Powers.~~**

~~10    The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, standing to object to any settlement of any Litigation Claim in excess of $100,000, and standing to object to any proposed sales procedures on sale of the Debtors' Projects. The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.~~

~~11    The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the Plan. Such compensation shall be paid from the applicable Distribution Account(s).~~

~~The Trustee Debtors' shall be vested with the power to investigate and/or object to the SunCal Affiliate Claims.~~

**~~Dissolution of Trustee Debtors' Committee.~~**

12    The Trustee Debtors' Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Trustee Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

### 12.3.2 10.13.  Litigation Claims.

Pursuant to §Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo. Unless a Litigation Claim is expressly waived, relinquished, released, compromised, settled or sold in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may pursue such Litigation Claims but shall not be obligated to do so.  TheIf the Plan is Confirmed, the Plan Trustee reserves the right to join the State Court Action as a plaintiffadditional plaintiffs.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a Litigation Claim valued at greater than $100,000 except uponwithout ten (10) days' prior written notice and opportunity to object to the Trustee Debtors' Committee.  Any disputes concerning the settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

### 12.3.3 10.14.  Collection of Litigation Recoveries.

All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Trustee Debtors' Committee shall be promptly deposited into the applicable Distribution Account(s). Except as otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

The SunCal Plan Proponent shall have the right to move forward with the Lehman Preference Claim in the event the SunCal Plan Proponent retain counsel, on a contingency fee basis, to prosecute the Lehman Preference Claim.  The costs associated with the prosecution of such litigation shall be paid from the Plan Reserve.  Based on the contingency fee structure of any such litigation, Creditors may receive higher recoveries in the event that the SunCal Plan Proponent are successful in such litigation.

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

# XI.

## RISK FACTORS

**11.1    Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

**11.2    The Plan May Not Be Accepted or Confirmed**.

While the ~~SunCal Proponents~~SunCal Plan Proponent believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

**11.3    Adverse Outcome of Pending Litigation**.

The ~~SunCal Proponent~~SunCal Plan Proponent believes that the ~~SunCal Century City Preference Claim~~Lehman Preference Claim is meritorious. However, there is no assurance that ~~SunCal Century City~~the Debtor will recover on the ~~SunCal Century City Preference Claim~~Lehman Preference Claim.

The SunCal Plan Proponents believe that valid defenses exist to the Potential SunCal Preference Claim.

# XII.

## DISTRIBUTIONS

**12.1    Distribution Agent**.

Acquisitions shall serve as the Distribution Agent for ~~distributions~~Distributions due under the Plan.  The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense

from the Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

## 12.2  **Distributions.**

### ~~i.~~12.2.1      **Dates of Distributions.**

Any ~~distribution~~Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any ~~distribution~~Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

### ~~ii.~~12.2.2      **Limitation on Liability.**

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of ~~distributions~~Distributions made pursuant to the Plan resulting from any delays in making such ~~distributions~~Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

## 12.3  **Old Instruments and Securities.**

### ~~4.1.1~~12.3.1      **Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any ~~distribution~~Distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing~~,~~ an existing Claim(s) against ~~the Debtor(s)~~~~SunCal Century City~~the Debtor must surrender such Instrument or Security to the Distribution Agent.

### ~~4.1.2~~12.3.2      **Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized

and directed to release any collateral or other property of ~~the Debtors~~SunCal Century Citythe Debtor (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

### 12.3.3        De Minimis Distributions and Fractional Shares.

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this section shall, after the last ~~distribution~~Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### ~~14.1~~ 12.3.4      Delivery of Distributions.

Except as provided in the Plan with respect to Unclaimed Property, ~~distributions~~Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for ~~the Debtors~~SunCal Century Citythe Debtor; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by ~~the Debtors~~SunCal Century Citythe Debtor, provided, however, that if ~~the Debtors~~SunCal Century Citythe Debtor or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

### ~~14.2~~ 12.3.5      Undeliverable Distributions.

If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such ~~distribution~~Distribution being hereinafter referred to as "Unclaimed Property"), no further ~~distribution~~Distribution shall be made to such Holder unless and until the Plan Trustee is notified in

1   writing of such Holder's then current address.  Subject to the remainder of this Section and the

2   following section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant

3   to this Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing

4   account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such

5   time as the subject Distribution becomes deliverable.  Nothing contained in the Plan shall require

6   the Plan Trustee or any other Person to attempt to locate such Person.

7              14.3  12.3.6     **Disposition of Unclaimed Property**.

8              If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a

9   Distribution of Unclaimed Property within ninety (90) days following such Person's initial

10  Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together

11  with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as

12  practicable.  Any Holder of an Allowed Claim that does not assert a Claim in writing for

13  Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial

14  Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and

15  shall be forever barred from receiving any distributions Distributions under the Plan or otherwise

16  from the Plan Trustee.  In such cases, any property held for Distribution on account of such Claims

17  shall become Available Cash and deposited into the Distribution Account.

18                              12      **XIII.**

19              **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

20         1. 13.1  **Standing for Objections to Claims.**

21  The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

22  objections to Claims other than to the right to object to the claims of SunCal Affiliates, which shall

23  be vested with the Trustee Debtors' Committee.  The Trustee Debtors' Committee shall have

24  standing to object to any settlement of any Litigation Claim in excess of $100,000 and standing to

25  object to any proposed sales procedures and sale of the Debtors' Projects.. The Plan Trustee shall

26  have the sole and exclusive right to file, prosecute and resolve objections to Claims, excluding

27  Claims filed by Insiders that are SunCal Affiliates.  The Committee shall have the sole and

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1  exclusive right to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal

2  Affiliates.

3         Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person

4  holding such Claim on or before the applicable Claims Objection Deadline.  The Plan Trustee shall

5  have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the

6  Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

7         **2.13.2        Treatment of Disputed Claims and Disputed Liens.**

8              **13.2.1  No Distribution Pending Allowance.**

9         If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

10  or distributionDistribution provided for under the Plan shall be made on account of such Claim or

11  Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

12             **13.2.2  Distribution After Allowance.**

13         On the next Distribution Date following the date on which a Disputed Claim

14  becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

15  distribute to the Person holding such Claim any Cash that would have been distributable to such

16  Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

17  Disputed Claim.

18                      **XIV.**

19           **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

20         1.      **Executory Contracts Potentially Being Assumed.**

21         The Plan Trustee shall have until the expiration of the Sales Period to assume or reject any

22  of the executory contracts and unexpired leases attached to the Plan as Exhibit "2" to the Plan.

23  The SunCal Plan Proponents may add any executory contract or unexpired leases to these exhibits,

24  or delete any contract or lease therefrom up to and including the Confirmation Date.  All contracts

25  or leases not assumed by the expiration of the Sales Period shall be deemed rejected.

26         **2.14.1        Executory Contracts Being Rejected.**

27         The Debtor DebtorsSunCal Century City hereby rejectrejects all of the executory contracts

28  and unexpired leases set forth in the Debtors'SunCal Century Citythe Debtor's Schedules attached

to the Plan as Exhibit "~~3~~2."  The ~~SunCal Plan Proponents~~SunCal Plan Proponent reserve the right

to amend Exhibit "~~3~~2" to the Plan to include additional leases and contracts on this exhibit, or to

delete leases and contracts from this exhibit, up to and including the Confirmation Date.

### ~~3.~~14.2         **Bar Date for Rejection Damages.**

Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

forever barred and shall not be enforceable against ~~the Debtors~~SunCal Century Citythe Debtor, the

Plan Trust, their Affiliates, their successors, or their properties, and shall not be entitled to any

~~distribution~~Distribution under the Plan, unless a Proof of Claim for such Claim is filed and served

on ~~the Debtors~~SunCal Century Citythe Debtor, or the Plan Trust within thirty (30) days after the

receipt of a notice of the rejection of any contract or lease.

### ~~4.~~14.3         **Changes in Rates Subject to Regulatory Commission Approval.**

The Debtor ~~Debtors are~~SunCal Century City is not subject to governmental regulatory

commission approval of their rates**.**

<div align="center">

**XV.**

**BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

</div>

### 15.1    **Best Interests Test**.

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless

the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and

Interests who have not accepted the plan and whose Claims are classified in Classes that are

impaired under the plan, are not less than those which they would receive in a liquidation under

Chapter 7 of the Bankruptcy Code.

The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each

impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis.

The Best Interests Test requires the Bankruptcy Court to find either that either (i) <u>all</u> Holders of

Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder

of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property

of a value, as of the effective date of the Plan, that is not less than the amount that such Holder

would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1    The Plan proposed by the Plan Proponents is essentially a litigation and liquidating plan.

2    The Plan provides for the potential prosecution and potential recovery of the Lehman Preference

3    Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation

4    Recoveries.  The Plan It provides for the litigation of the SunCal Century City Claim through the

5    Lehman Adversary Proceeding and for the distribution Distribution of the resulting net proceeds, in

6    accordance with the priorities provided for in the Bankruptcy Code and under California law.

7    If a Chapter 7 trustee were appointed in this case and chose to prosecute the Litigation

8    Claims SunCal Century City Preference Claim in the Lehman Adversary Proceeding, it would be

9    compelled to liquidate SunCal Century City the Debtor's assets in the same manner as provided for

10    in the Plan and to pay out the proceeds in the same manner as provided for in the Plan. Accordingly,

11    under the terms of the Plan, each individual creditor is receiving "at least as much" as such creditor

12    would receive in a Chapter 7 case, which is all that is required under the Best Interests Test.

13    **15.2    Feasibility**.

14    In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

15    of the Plan is not likely to be followed by the liquidation or the need for further financial

16    reorganization of the Debtor(s).  This requirement is imposed by Section 1129(a)(11) of the

17    Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

18    the  Plan provides for pursuing the SunCal Century City Preference Claim Litigation Claims, the

19    liquidation of any recoveries,  and for the distribution of the proceeds. Within the context of the

20    Plan, feasibility is limited to having sufficient funds to pay administrative and priority claims on

21    the Effective Date and sufficient funds to fund to finance the litigation.

22    <div align="center">**XVI.**</div>

23    <div align="center">**LIMITATION OF LIABILITY**</div>

24    **16.1    No Liability for Solicitation or Participation.**

25    As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

26    rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

27    offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

28    the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

1  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

2  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

3  <center>**XVII.**</center>

4  <center>**CONDITIONS TO CONFIRMATION AND**</center>

5  <center>**EFFECTIVENESS OF THE PLAN**</center>

6  ~~20.1~~ **17.1** **Conditions Precedent to Plan Confirmation.**

7  The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

8  have entered a Confirmation Order in form and substance reasonably acceptable to the ~~SunCal Plan~~

9  ~~Proponents~~SunCal Plan Proponent.

10  ~~20.2~~ **17.2** **Conditions Precedent to Plan Effectiveness.**

11  ~~The conditions precedent to the effectiveness of the Plan and the occurrence of the~~

12  ~~Effective Date~~ is that the Confirmation Order shall be a Final Order in form and substance

13  reasonably satisfactory to the ~~SunCal Plan Proponents~~SunCal Plan Proponent~~, and the resolutions~~

14  ~~of any material impairment of the Plan terms caused by the automatic stays applicable in the~~

15  ~~Lehman Entities cases. The automatic stay in the Debtors cases shall continue to be applicable~~

16  ~~until the Effective Date~~ and not subject to a stay pending appeal.

17  <center>**XVIII.**</center>

18  <center>**RETENTION OF JURISDICTION**</center>

19  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

20  Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court's

21  jurisdiction shall apply to the fullest extent possible under applicable law.

22  <center>**XIX.**</center>

23  <center>**MODIFICATION OR WITHDRAWAL OF THE PLAN**</center>

24  ~~a.~~**19.1** **Modification of Plan.**

25  At any time prior to confirmation of the Plan, ~~the former Debtor(s)~~SunCal Plan Proponent

26  may supplement, amend or modify the Plan.  After confirmation of the Plan,  ~~the Debtors~~SunCal

27  Plan Proponent or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127

28

MAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMAINDOCS-#163421-v5-SCC_CC_DS.DOCMerge.DOC

1  of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy

2  defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

3  **b.19.2      Nonconsensual Confirmation.**

4  In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

5  accordance with Section 1129(a)(8) of the Bankruptcy Code, ~~SunCal Plan Proponents~~SunCal Plan

6  Proponent (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section

7  1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may

8  modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

9  **XX.**

10  **MISCELLANEOUS**

11  **a.20.1      Payment of Statutory Fees.**

12  All quarterly fees due and payable to the Office of the United States Trustee pursuant to

13  Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

14  Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

15  been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

16  Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

17  due and payable after the Effective Date and until ~~the Debtors' Cases are~~~~SunCal Century City~~the

18  Debtor's Case is closed, to the extent required by Section 1930(a)(6) of title 28 of the United States

19  Code.

20  **b.20.2      Payment Dates.**

21  Whenever any payment or ~~distribution~~Distribution to be made under the Plan shall be due on

22  a day other than a Business Day, such payment or ~~distribution~~Distribution shall instead be made,

23  without interest, on the immediately following Business Day.

24  **c.20.3  Headings.**

25  The headings used in ~~this~~the Disclosure Statement and in the Plan are inserted for

26  convenience only and neither constitutes a portion of ~~this~~the Disclosure Statement or the Plan nor

27  in any manner affect the construction of the provisions of ~~this~~the Disclosure Statement or the Plan.

28  **d.20.4      Other Documents and Actions.**

1    The Plan Trustee may execute such other documents and take such other actions as may be

2    necessary or appropriate to effectuate the transactions contemplated under the Plan.

3    **e.20.5  Notices.**

4    All notices and requests in connection with ~~this~~the Disclosure Statement and the Plan shall

5    be in writing and shall be hand delivered or sent by mail addressed to:

6    **To the ~~SunCal Plan Proponents~~SunCal Plan Proponent**:

   Bruce V. Cook

7    General Counsel

8    Authorized Agent of the ~~SunCal Plan Proponents~~SunCal Plan Proponent

   2392 Morse Ave

9    Irvine, CA 92614-6234

10    **With copies to:**

   Paul J. Couchot

11    Winthrop & Couchot, Professional Corporation

12    660 Newport Center Drive, Suite 400

   Newport Beach, CA 92660

13

   Ronald Rus

14    Rus Miliband & Smith A Professional Corporation

15    2211 Michelson Drive, Seventh Floor

   Irvine, California 92612

16    All notices and requests to any Person holding of record any Claim or Interest shall be sent

17    to them at their last known address or to the last known address of their attorney of record.  Any

18    such Person may designate in writing any other address for purposes of this Section ~~21.5~~, which

19    designation will be effective on receipt.

20    **f.20.6  Governing Law.**

21    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy

22    Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

23    law rules) shall govern the construction and implementation of the Plan and any agreements,

24    documents, and instruments executed in connection with the Plan, unless otherwise specifically

25    provided in such agreements, documents, or instruments.

26    **g.20.7          Binding Effect.**

27

28

1    The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

2 the benefit of the Plan Sponsor~~Debtors~~, the Plan Trustee, Holders of Claims, Holders of Interests,

3 and their respective successors and assigns.

4    **h.20.8        Successors and Assigns.**

5    The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

6 binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

7 assigns of such entity.

8    **i.20.9   Severability of Plan Provisions.**

9    If, prior to the Confirmation Date, any term or provision of the Plan is held by the

10 Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

11 constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

12 consent of ~~the Debtors~~SunCal Century Citythe Debtor, have the power to interpret, modify or delete

13 such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent

14 practicable, consistent with the original purpose of the term or provision held to be invalid, void or

15 unenforceable, and such term or provision shall then be operative as interpreted, modified or

16 deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the

17 terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such

18 interpretation, modification or deletion.

19    **j.20.10        No Waiver.**

20    The failure of ~~the Debtors~~SunCal Century Citythe Debtor or any other Person to object to any

21 Claim for purposes of voting shall not be deemed a waiver of the Trustee Debtors'

22 ~~Committee'~~Committee, the Debtors' or the Plan Trustee's right to object to or examine such Claim,

23 in whole or in part.

24    **k.20.11        Inconsistencies.**

25    In the event the terms or provisions of ~~this~~the Disclosure Statement are inconsistent with the

26 terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

27 the Plan shall control.

28    **l.20.12        Exemption from Certain Transfer Taxes and Recording Fees.**

1   Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a DebtorSunCal

2   Century CityThe Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or

3   any agreement regarding the transfer of title to or ownership of any of the Debtors'SunCal Century

4   Citythe Debtor's real or personal property or of any other interest in such property (including,

5   without limitation, a security interest) will not be subject to any document recording tax, stamp tax,

6   conveyance fee, intangibles or similar tax, mortgage tax,

7   stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

8   recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

9   direct the appropriate state or local governmental officials or agents to forego the collection of any

10  such tax or governmental assessment and to accept for filing and recordation any of the foregoing

11  instruments or other documents without the payment of any such tax or governmental assessment.

12      m.20.13      **Post-Confirmation Status Report.**

13      Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

14  status report with the Court explaining what progress has been made toward consummation of the

15  confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

16  unsecured creditors, and those parties who have requested special notice.  Unless otherwise

17  ordered, further status reports shall be filed every 180 days and served on the same entities.

18      n.20.14      **Post-Confirmation Conversion/Dismissal.**

19      A creditor or party in interest may bring a motion to convert or dismiss the case under

20  § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

21  Trustee reserves the right to object to any motion for conversion or dismissal.  If the Court orders

22  any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been

23  property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

24  in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent

25  that relief from stay was not previously authorized by the Court during this case.

26      o.20.15      **Final Decree.**

27      Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

28  Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

1    motion with the Court to obtain a final decree to close the Case of ~~such~~ the Debtor~~SunCal Century~~

2    ~~City~~.

3    Date:  ~~June 20~~July 18, ——. 2011

4

5                                                        By:____/s/ Bruce Cook_____

6                                                             Bruce Cook
                                                             General Counsel, Authorized Agent for the
7                                                             Voluntary Debtors and Acquisitions

8    **Submitted By:**

9    **WINTHROP COUCHOT**                    **RUS MILIBAND & SMITH**
     **PROFESSIONAL CORPORATION**            **A PROFESSIONAL CORPORATION**

10

11
     By: /s/ *Paul J. Couchot*_____        By: _/s/ *Ronald Rus*_____
12           Paul J. Couchot, Esq.                    Ronald Rus, Esq.
             General Insolvency Counsel for            Joel S. Miliband, Esq.
13           the Voluntary Debtors             Attorneys for SCC Acquisitions Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-74-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4^(th) Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: ~~FIRST AMENDED~~SECOND AMENDED **DISCLOSURE STATEMENT DESCRIBING** ~~FIRST AMENDED~~SECOND AMENDED **CHAPTER 11 PLAN FILED BY** ~~SUNCAL PLAN PROPONENTS~~SUNCAL PLAN PROPONENT **IN THE CHAPTER 11 CASE OF SUNCAL CENTURY CITY, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, ~~ne 20,~~ 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 18, ~~ne 20,~~ 2011 | ~~Susan Connor~~Gretchen Crumpacker | /s/ ~~Susan Connor~~Gretchen Crumpacker |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

## NEF SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

1
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com

2
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com

3
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com

4
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com

5
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

6
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org

7
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com

8
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com

9
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com

10
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com

11
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com

12
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com

13
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com

14
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com

15
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com

16
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com

17
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

18
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com

19
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com

20
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net

21
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com

22
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com

23
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com

24
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com

25
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com

26
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

27
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com

28
- Michael K Sugar    msugar@irell.com

1

- Cathy Ta     cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem     davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

2

- James E Till     jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

3

- Carol G Unruh     cgunruh@sbcglobal.net
- Annie Verdries     verdries@lbbslaw.com

4

- Jason Wallach     jwallach@gladstonemichel.com
- Joshua D Wayser     , kim.johnson@kattenlaw.com

5

- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

6

- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com

7

- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

8

9

- Selia M Acevedo     sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel@millerbarondess.com

10

- Joseph M Adams     jadams@sycr.com

11

- Raymond H Aver     ray@averlaw.com
- James C Bastian     jbastian@shbllp.com

12

- Thomas Scott Belden     sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd     fednotice@tclaw.net

13

- Mark Bradshaw     mbradshaw@shbllp.com
- Gustavo E Bravo     gbravo@smaha.com

14

- Jeffrey W Broker     jbroker@brokerlaw.biz
- Brendt C Butler     bbutler@mandersonllp.com

15

- Andrew W Caine     acaine@pszyjw.com
- Carollynn Callari     ccallari@venable.com

16

- Dan E Chambers     dchambers@jmbm.com
- Shirley Cho     scho@pszjlaw.com

17

- Vonn Christenson     vrc@paynefears.com
- Brendan P Collins     bpcollins@bhfs.com

18

- Vincent M Coscino     vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot     pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com

19

- Jonathan S Dabbieri     dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com

20

- Ana Damonte     ana.damonte@pillsburylaw.com

21

- Vanessa S Davila     vsd@amclaw.com
- Melissa Davis     mdavis@shbllp.com

22

- Daniel Denny     ddenny@gibsondunn.com
- Caroline Djang     crd@jmbm.com

23

- Donald T Dunning     ddunning@dunningLaw.com
- Joseph A Eisenberg     jae@jmbm.com

24

- Lei Lei Wang Ekvall     lekvall@wgllp.com
- Richard W Esterkin     resterkin@morganlewis.com

25

- Marc C Forsythe     kmurphy@goeforlaw.com
- Alan J Friedman     afriedman@irell.com

26

- Steven M Garber     steve@smgarberlaw.com
- Christian J Gascou     cgascou@gascouhopkins.com

27

- Barry S Glaser     bglaser@swjlaw.com
- Robert P Goe     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com

28

- Eric D Goldberg     egoldberg@stutman.com

- Richard H Golubow — rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez — mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith — bkemail@harrisbeach.com
- Matthew Grimshaw — mgrimshaw@rutan.com
- Kavita Gupta — kgupta@winthropcouchot.com
- Asa S Hami — ahami@morganlewis.com
- Michael J Hauser — michael.hauser@usdoj.gov
- D Edward Hays — ehays@marshackhays.com
- Michael C Heinrichs — mheinrichs@omm.com
- Harry D. Hochman — hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff — jonathan.hoff@cwt.com
- Nancy Hotchkiss — nhotchkiss@trainorfairbrook.com
- Michelle Hribar — mhribar@rutan.com
- John J Immordino — john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson — laj@cohenandjacobson.com
- Michael J Joyce — mjoyce@crosslaw.com
- Stephen M Judson — sjudson@fablaw.com
- Kaleb L Judy — ecf@kleinlaw.com, kjudy@kleinlaw.com
- Sheri Kanesaka — sheri.kanesaka@bryancave.com
- David I Katzen — katzen@ksfirm.com
- Christopher W Keegan — ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi — pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet — ikiet@hkclaw.com
- Mark J Krone — mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally — davidlallylaw@gmail.com
- Leib M Lerner — leib.lerner@alston.com
- Peter W Lianides — plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu — cliu@winthropcouchot.com
- Kerri A Lyman — klyman@irell.com
- Mariam S Marshall — mmarshall@marshallramoslaw.com
- Robert C Martinez — rmartinez@mclex.com
- Michael D May — mdmayesq@verizon.net
- Hutchison B Meltzer — hmeltzer@wgllp.com
- Krikor J Meshefejian — kjm@lnbrb.com
- Joel S. Miliband — jmiliband@rusmiliband.com
- James M Miller — jmiller@millerbarondess.com
- Louis R Miller — smiller@millerbarondess.com
- Randall P Mroczynski — randym@cookseylaw.com
- Mike D Neue — mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida — Rnida@castlelawoffice.com
- Henry H Oh — henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe — sokeefe@okeefelc.com
- Robert B Orgel — rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay — mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes — pparmes@rutan.com
- Ronald B Pierce — ronald.pierce@sdma.com
- Katherine C Piper — kpiper@steptoe.com
- Cassandra J Richey — cmartin@pprlaw.net
- Debra Riley — driley@allenmatkins.com
- James S Riley — tgarza@sierrafunds.com
- Todd C. Ringstad — becky@ringstadlaw.com
- R Grace Rodriguez — ecf@lorgr.com
- Martha E Romero — Romero@mromerolawfirm.com
- Ronald Rus — rrus@rusmiliband.com
- John P Schafer — jschafer@mandersonllp.com

1
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
2
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
3
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
4
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
5
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
6
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
7
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
8
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
9
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
10
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wisebblood    dwiseblood@seyfarth.com
11
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
12
- Marc A. Zimmerman    joshuasdaddy@att.net

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28