Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings LLC and OVC Holdings LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>        Jointly Administered Debtors and<br>        Debtors-In-Possession.<br>_____<br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows, LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☒ SJD Partners, Ltd.<br>☒ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☒ LB-L-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☐ LB-L-SunCal Northlake, LLC<br>☒ SunCal Marblehead, LLC<br>☒ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos.<br><br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**JOINT STATEMENT RE PROPOSED PLAN FUNDING INSERTS TO SUNCAL DISCLOSURE STATEMENTS PROPOSED BY VARIOUS PARTIES**<br><br>Hearing Held:  July 22, 2011<br>Time:          10:00 a.m.<br>Place:         Courtroom 5A<br>               411 West Fourth Street<br>               Santa Ana, CA 92701 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This *Joint Statement Re Proposed Plan Funding Inserts To SunCal Disclosure Statements Proposed By Various Parties* (the "Statement") is proposed by: (1) Lehman Commercial Paper Inc., Lehman ALI, Inc., Northlake Holdings LLC, and OVC Holdings LLC; (2) the Official Committee of Unsecured Creditors of the Voluntary Committee; (3) the Official Committee of Unsecured Creditors of the Trustee Committee; and (4) Steven M. Speier, the chapter 11 trustee of the involuntary debtors (collectively, the "Parties").  For their Statement, the Parties represent as follows:

1.      On July 22, 2011, the Court held a continued hearing (the "Hearing") on the proposed disclosure statements (collectively, the "Disclosure Statements") describing the proposed second amended plans filed by the Voluntary Debtors[1] and SCC Acquisitions Inc. (collectively, the "SunCal Plan Proponents").  In response to certain objections made by the Parties to the Disclosure Statements, the Court required additional disclosure therein regarding "Litco" (as defined in the Disclosure Statements), plan funding and plan funding risks and that such additional disclosure be repeated in the "Risk Factors" section thereof.

2.      Although requiring no further hearing regarding the additional disclosure, at the Hearing, the Court set July 26, 2011 at 12:00 p.m. (Pacific) as the deadline for the Parties to submit proposed language regarding such additional disclosure and set July 28, 2011 at 12:00 p.m. (Pacific) for the SunCal Plan Proponents to file any alternative language or response. At the Hearing, the Court also set a related deadline of August 5, 2011 for the SunCal Plan Proponents to file final versions of their Disclosure Statements, which are to be in conformance with any ruling with respect to this additional disclosure entered prior to such date.

---

[1] The "Voluntary Debtors" in these cases are those debtors that remain debtors-in-possession and for which no chapter 11 trustee has been appointed.  The subject plans affect Acton Estates, LLC, North Orange Del Rio Land, LLC, Palmdale Hills Property, LLC, SCC Communities, LLC, SJD Development Corp., SJD Partners, Ltd., SunCal Beaumont, SunCal Bickford Ranch, LLC, SunCal Emerald Meadows, LLC, SunCal Johannson Ranch, LLC, and Tesoro SF, LLC.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.    The Parties have conferred and reached agreement regarding the form, substance, and location of the additional disclosure, which they believe to be evenly balanced and to accurately reflect the applicable contingencies, and which is set forth in the attached exhibits (**Exhibit A** through **Exhibit E**), with each exhibit containing revised Art. I & XI for the applicable Disclosure Statement and with the new language highlighted / shaded.

WHEREFORE the Parties respectfully request that the Court require that the Disclosure Statements include the additional disclosure set forth in the attached exhibits and grant such other relief as is just and proper.

Dated:    July 26, 2011               PACHULSKI STANG ZIEHL & JONES LLP


                                      */s/ Robert B. Orgel*
                                      Richard M. Pachulski (CA Bar No. 90073)
                                      Dean A. Ziehl (CA Bar No. 84529)
                                      Robert B. Orgel (CA Bar No. 101875)
                                      10100 Santa Monica Blvd., Suite 1100
                                      Los Angeles, CA 90067-4100
                                      Telephone:  (310) 277-6910
                                      Facsimile:  (310) 201-0760

                                      -and-

                                      WEIL, GOTSHAL & MANGES LLP
                                      Edward Soto (admitted *pro hac vice*)
                                      Alfredo R. Perez (admitted *pro hac vice*)
                                      767 Fifth Avenue
                                      New York, NY  10153-0119
                                      Telephone:  (212) 310-8000
                                      Facsimile:  (212) 310-8007

                                      Counsel for Lehman Commercial Paper Inc.,
                                      Lehman ALI, Inc., Northlake Holdings, LLC and
                                      OVC Holdings, LLC

THE LOBEL FIRM, LLP

_____

William N. Lobel
Mike D. Neue
840 Newport Center Drive, Suite 750
Newport Beach, CA 92660
Telephone: (949) 999-2860
Facsimile: (949) 999-2870

General Counsel to the Chapter 11 Trustee,
Steven M. Speier


IRELL & MANELLA LLP


_____

Alan J. Friedman
Kerri A. Lyman
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200


Counsel for the Official Committee of Unsecured
Creditors in Chapter 11 Cases of Palmdale Hills
Property, LLC, et al.

WEILAND, GOLDEN, SMILEY, WANG
EKVALL & STROK, LLP


_____

Lei Lei Wang Ekvall
Hutchinson B. Meltzer
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Counsel for the Official Committee of Creditors
Holding Unsecured Claims in the Trustee Cases

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

THE LOBEL FIRM, LLP

William N. Lobel
Mike D. Neue
840 Newport Center Drive, Suite 750
Newport Beach, CA  92660
Telephone:  (949) 999-2860
Facsimile:  (949) 999-2870

General Counsel to the Chapter 11 Trustee,
Steven M. Speier

IRELL & MANELLA LLP

Alan J. Friedman
Kerri A. Lyman
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Counsel for the Official Committee of Unsecured
Creditors in Chapter 11 Cases of Palmdale Hills
Property, LLC, et al.

WEILAND, GOLDEN, SMILEY, WANG
EKVALL & STROK, LLP

Lei Lei Wang Ekvall
Hutchinson B. Meltzer
650 Town Center Drive, Suite 950
Costa Mesa, CA  92626
Telephone:  (714) 966-1000
Facsimile:  (714) 966-1002

Counsel for the Official Committee of Creditors
Holding Unsecured Claims in the Trustee Cases

1

2          THE LOBEL FIRM, LLP

3

4          William N. Lobel
           Mike D. Neue
5          840 Newport Center Drive, Suite 750
           Newport Beach, CA  92660
6          Telephone:  (949) 999-2860
           Facsimile:  (949) 999-2870
7
           General Counsel to the Chapter 11 Trustee,
8          Steven M. Speier

9

10         IRELL & MANELLA LLP

11

12         Alan J. Friedman
           Kerri A. Lyman
13         840 Newport Center Drive, Suite 400
           Newport Beach, CA  92660
14         Telephone:  (949) 760-0991
           Facsimile:  (949) 760-5200
15

16

17         Counsel for the Official Committee of Unsecured
           Creditors in Chapter 11 Cases of Palmdale Hills
           Property, LLC, et al.
18
           WEILAND, GOLDEN, SMILEY, WANG
19         EKVALL & STROK, LLP

20

21         Lei Lei Wang Ekvall
           Hutchinson B. Meltzer
22         650 Town Center Drive, Suite 950
           Costa Mesa, CA  92626
23         Telephone:  (714) 966-1000
           Facsimile:  (714) 966-1002
24
           Counsel for the Official Committee of Creditors
25         Holding Unsecured Claims in the Trustee Cases

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## EXHIBIT A

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group I Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

# INTRODUCTION

This Disclosure Statement[1] is filed jointly by, and the accompanying Plans are proposed respectively by,  Palmdale Hills Property, LLC, SunCal Bickford, LLC, SunCal Emerald Meadows, LLC, and Acton Estates, LLC (the "Group I: Voluntary Debtors"), as the SunCal Proponents, in their respective Chapter 11 Cases in their capacities as debtors in possession. Under each of the Group I Voluntary Debtor's Plans, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group I Voluntary Debtor's Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the Group I: Voluntary Debtors are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan(s) individually provides for the sale of the Ritter Ranch Project, the Bickford Ranch, SunCal Emerald and the Acton Project (the "Group I Projects"), and for the liquidation of all other assets of the Group I: Voluntary Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

**The Plan also offers the holders of a certain claims against the Group I: Voluntary Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

the sum of fifty-five cents ($0.55) per dollar of claim.  The purchase offer is conditioned upon confirmation of the applicable Plan , the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date.  Locating a third party to fund the Litco purchase offer and certain other Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.4, 2.1.23, 2.1.134, 2.1.143, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION

**OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.**

Although substantial identical and consolidated Plans are being filed in the Cases of all four Group I: Voluntary Debtors, confirmation of each such Plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case.  Accordingly, the applicable Plan may be confirmed in the Cases of some of the Group I: Voluntary Debtors, but not in others.

The Lehman Lenders and the Chapter 11 Trustee have also filed a competing and alternative plan of reorganization in the Group I: Voluntary Debtors' Cases ("Lehman Competing Group I: Voluntary Debtors Plan").  Accordingly, the creditors holding claims against the Group I: Voluntary Debtors will have the opportunity to vote for the applicable Sun Cal Proponents Group I:  Voluntary Debtors Plan or for Lehman's Competing Group I: Voluntary Debtors Plan.  Alternatively, they can vote for or reject all of the Plans and allow the Court to decide which plan should be approved.  The Group I:  Voluntary Debtors believe that the aggregate benefits offered under their Plans are superior to what is being offered to Creditors under the Lehman Lenders' competing Plans, because the consideration paid to the holders of the Reliance Claims is 55 percent under the SunCal Plans in contrast to only a potential distribution of 40percent under the Lehman Lenders and Chapter 11 Trustee Plans for the Group I: Voluntary Debtors.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

> **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> **HOW YOUR CLAIM IS TREATED;**

> **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

> **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

> **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

> **WHAT IS THE EFFECT OF CONFIRMATION; AND**

> **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plans. On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plan. Any party can now solicit votes for or against the Plans.

## XI.

## RISK FACTORS

**11.1    Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.1.1  The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.1.2  Inability to Obtain Plan and Litco Funding

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date.  Locating a third party to fund the Litco purchase offer and certain other

Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  There can be no assurance that a capable investor/lender to provide Plan funding will be located and will commit to provide the necessary funding.

To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.4, 2.1.23, 2.1.134, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

### 11.1.3   Failure to Sell The Group I: Voluntary Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group I Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4   Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary

Proceeding. However, there is no assurance that this will occur. Litigation involves risks,
including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling
will not affect Holders of Class 6.1, 6.2, 6.3 and 6.4 Claims that vote in favor of Option A (55
percent distribution), it will affect those that vote in favor of Option B, and it will affect the
future distributions payable to the Class 7.1, 7.2, 7.3 and 7.4.

## **EXHIBIT B**

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group III Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## **INTRODUCTION**

This Disclosure Statement[1] is filed jointly by, and the accompanying Plans are proposed respectively by, SCC Communities, Del Rio and Tesoro (the "Group III: Voluntary Debtors"), as the SunCal Plan Proponents, in their respective Chapter 11 Cases in their capacities as debtors-in-possession.  Under each of the Group III Voluntary Debtor's Plans, Acquisitions shall be the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group III Voluntary Debtor's Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the Group III Voluntary Debtors are the proponents of their respective Plan(s) sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plan(s), certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan(s) individually provide for the sale of the SCC Communities Assets, the Tesoro Assets, and the Del Rio Assets (the "Group III Assets: Voluntary Debtors"), free and clear of all claims and liens.  The Net Sales Proceeds from these sales and/or liquidation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law.

Plan funding (*e.g.*, for required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor the new Litco entity through which such funding is to be provided has been able to obtain a commitment from any party for such funding to date.  Locating a third party to provide Plan funding is both a condition to making the payments therefrom and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.4 2, 2.1.118, 2.1.131, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

Although substantially identical and consolidated Plans are being filed in the Cases of all three Group III: Voluntary Debtors, confirmation of each such Plan is independent of each others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, a particular Plan may be confirmed in the Cases of some of the Group III: Voluntary Debtors, but not in others.

The Lehman Lenders have also filed competing and alternative plans of reorganization in the SCC Communities and Tesoro Chapter 11 Cases, but not in the Del Rio Chapter 11 Case ("Lehman Competing Group III:  Voluntary Debtors Plan").  Accordingly, the creditors holding claims against SCC Communities and Tesoro will have the opportunity to vote for the applicable Sun Cal Proponents Group III:  Voluntary Debtors Plan or for Lehman's Competing Group III: Voluntary Debtors Plan.  Alternatively, they can vote for or reject all of the Plans and allow the Court to decide which plan should be approved.

**<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT</u>**:

➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

➢ **HOW YOUR CLAIM IS TREATED;**

➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement.  If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

**THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO CONTAIN "ADEQUATE INFORMATION" CONCERNING THE PLANS.  ON _____, 2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS DISCLOSURE STATEMENT, BASED UPON A FINDING THAT THIS DOCUMENT CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT REGARDING THE PLAN.  ANY PARTY CAN NOW SOLICIT VOTES FOR OR AGAINST THE PLANS.**

# XI.

## RISK FACTORS

**11.1    Plan(s) Risks**.

The respective Group III: Voluntary Debtor's Plan, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the respective Group III: Voluntary Debtor's Plan. The more material of these risks are summarized below.

**11.2    The Plan(s) May All Not Be Accepted or Confirmed.**

While the SunCal Plan Proponents believe that the respective Group III: Voluntary Debtor's Plan are confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the respective Group III: Voluntary Debtor's Plan to be confirmable. If a respective Group III: Voluntary Debtor's Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the respective Group III: Voluntary Debtor's Plan.

**11.3    Inability to Obtain Plan and Litco Funding**

Plan funding (*e.g.*, for required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders. While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor the new Litco entity through which such funding is to be provided has been able to obtain a commitment from

any party for such funding to date.  Locating a third party to provide Plan funding is both a condition to making the payments therefrom and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  There can be no assurance that a capable investor/lender to provide Plan funding will be located and will commit to provide the necessary funding.

To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.4 2, 2.1.118, 2.1.131, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

### 11.4    Failure to Sell The Group III Assets: Voluntary Debtors.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to sell the Group III Assets: Voluntary Debtors for at least the Minimum Sales Prices on the Effective Date. Although the Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sale will not occur. If this occurs then the creditors holding liens against the Group III Assets: Voluntary Debtors will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.5    Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding, Lehman Claim Objections and the Contract Action against Lehman ALI. The SunCal Plan Proponents believe that their defenses to the claims asserted by Lehman ALI have merits and that they will be sustained and that relief will

also be granted. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling.

## <u>EXHIBIT C</u>

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group IV Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## <u>INTRODUCTION</u>

This Disclosure Statement[1] is filed by, and the accompanying Plan is proposed by SJD Partners and SJD Development (the "Group IV: Voluntary Debtors"), as the SunCal Plan Proponents, in respective Chapter 11 Cases of the Group IV: Voluntary Debtors.  In addition to being the SunCal Plan Proponent in the Trustee Debtors' Cases, Acquisitions shall be the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for all of the Debtors' Cases in which the SunCal Plan Proponents' Plan(s) are confirmed.  SJD Development is the sole equity owner of SJD Partners.  SJD Partners is the former owner of the Pacific Point Project.  This Disclosure Statement and the Plan assume that all claims filed against SJD Development were inadvertent and should have been filed against SJD Partners as the project-owning entity that incurred such debt.  Consequently, a joint Plan is filed in the cases of the Group IV: Voluntary Debtors.

SJD Development is the 100% equity holder of SJD Partners.  SJD Partners formerly owned the Pacific Point Project.  The Pacific Point Project was lost through a non-judicial foreclosure sale by Lehman ALI, which caused a Lehman Affiliate, LV Pacific Point LLC, a Delaware limited liability company, a Lehman Entity, a Delaware Limited Liability Company, to purchase the Pacific Point Project at a foreclosure sale conducted on August 28, 2008.  The Group IV: Voluntary Debtors have initiated litigation regarding the foregoing as described herein.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in

determining whether or not to confirm the Plan.

In summary, the Plan provides for the recovery of the Pacific Point Project and/or

liquidation of Litigation Recoveries of Group IV: Voluntary Debtors.  The Net Sales Proceeds

will then be distributed to Creditors holding Allowed Claims in accordance with their rights and

priorities under the Bankruptcy Code and under other applicable law.  In addition, holders of

Allowed Reliance Claims will receive an initial distribution equal to 1% of such holder's

Allowed Claim, and, potentially, an additional distribution of up to 49% thereof from Litco in the

event that such newly formed entity obtains free and clear title to the Pacific Point Project.

Plan funding and funding for Litco (*e.g.*, to make required payments to Creditors holding

Allowed Administrative Claims, Priority Claims, Tax Claims and Reliance Claims) will not be

provided by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for

proposed investors/lenders who would provide such funding and have to accept that the

repayment of any such investments/loans would be dependent upon recoveries, if any, from

litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been

in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither

the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for

such funding to date.  Locating a third party to provide Plan funding is both a condition to

making the payments therefrom and a condition to the viability of the Plan (and thus to its

feasibility and to Bankruptcy Court approval of it).

<u>**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**</u>

<u>**KNOW ABOUT**</u>:

> ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> ➢ **HOW YOUR CLAIM IS TREATED;**

> ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**
> **RECEIVE IN LIQUIDATION;**

> ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

> ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

> ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

> ➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement.  If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plans.  On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plan.  Any party can now solicit votes for or against the Plans.

# XI.

## RISK FACTORS

### 11.1    Plan Risks.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.2.    The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.3    Inability to Obtain Plan Funding

Plan funding and funding for Litco (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims, Tax Claims and Reliance Claims) will not be provided by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date.  Locating a third party to provide Plan funding is both a condition to

making the payments therefrom and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).

**11.4** **Adverse Outcome of Pending Litigation.**

The Group IV: Voluntary Debtors are plaintiffs in the Lehman Adversary Proceeding and the Contract Action.  The Group IV: Voluntary Debtors believe that their causes of action in the Lehman Adversary Proceeding and the Contract Action are meritorious.  However, there is no assurance that they will prevail in either action.

# EXHIBIT D

(Proposed Plan Funding Disclosure for Art. I & XI:    TD Group I Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed by the Acquisitions, as the SunCal Plan Proponents, in the Chapter 11 Cases of the following Debtors:

> SunCal Oak Valley, LLC
>
> SunCal Heartland, LLC
>
> Delta Coves Venture, LLC
>
> SunCal PSV, LLC
>
> SunCal Marblehead, LLC

(the "Group I: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group I Trustee Debtor Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, Acquisitions is the SunCal Plan Proponent of the Plan sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plans, certain information relating to the Plans and the process the Bankruptcy Court follows in determining whether or not to confirm the Plans.

In summary, the Plan(s) individually provide for sale of the Oak Valley Project, the Heartland Project, the Delta Coves Project, Palms Springs Village Project and the Marblehead Project (the "Group I Projects"), free and clear of liens, claims and any purported credit bid rights of the Group I: Trustee Debtors' primary secured creditor, Lehman ALI, and for the

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

liquidation of all other assets of the Group I: Trustee Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group I: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim. The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein. However, this purchase offer is not contingent upon the sale of the Group I Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.**

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders. While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date. Locating a third party to fund the Litco purchase offer and certain other Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it). To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor. *See* Plan §§ 2.1.47, 2.1.68, 2.1.95, 2.1.106, 2.1.111,

8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

**EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.**

Although substantially identical Plans are being filed in the Cases of all five Group I: Trustee Debtors, confirmation of each such Plan is independent of each others.  In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of some of the Group I: Trustee Debtors, but not in others.

The Lehman Lenders and the Chapter 11 Trustee have filed a competing and alternative plans of reorganization in the Group I: Trustee Debtors' Cases. Accordingly, the creditors holding claims against the Group I: Trustee Debtors will have the opportunity to vote for one plan or the other, or they can vote for or reject both plans and allow the Court to decide which plan should be approved.  The SunCal Plan Proponents believe that the aggregate benefits offered under their Plans are superior to what is being offered to Creditors under the Lehman

Lenders' competing Plans, because the consideration paid to the holders of the Reliance Claims

is 55 percent under the SunCal Plans in contrast to only a potential distribution of 40 percent

under the Lehman Lenders and Chapter 11 Trustee Plans for the Group I: Trustee Debtors.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

**KNOW ABOUT**:

> ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> ➢ **HOW YOUR CLAIM IS TREATED;**

> ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**
> **RECEIVE IN LIQUIDATION;**

> ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS**
> **DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

> ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**
> **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

> ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

> ➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should

consider consulting your own attorney to obtain more specific advice on how the Plan

will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement.  If there are any

inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan

provisions will govern.

THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO CONTAIN "ADEQUATE

INFORMATION" CONCERNING THE PLAN.  ON _____, 2011, THE BANKRUPTCY COURT

ENTERED AN ORDER APPROVING THIS DISCLOSURE STATEMENT, BASED UPON A FINDING THAT

THIS DOCUMENT CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY

THE PLANS TO MAKE AN INFORMED JUDGMENT REGARDING THE PLANS.  ANY PARTY CAN NOW

SOLICIT VOTES FOR OR AGAINST THE PLANS.

# XI.

# RISK FACTORS

**11.1** **Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.1.1 **The Plan May Not Be Accepted or Confirmed**.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.1.2 **Inability to Obtain Plan and Litco Funding**

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders. While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date. Locating a third party to fund the Litco purchase offer and certain other

Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  There can be no assurance that a capable investor/lender to provide Plan funding will be located and will commit to provide the necessary funding.

To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.47, 2.1.68, 2.1.95, 2.1.106, 2.1.111, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

### 11.1.3   Failure to Sell the Group I Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group I Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4  Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case.  The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits

and that they will be sustained and that relief will also be granted in the Lehman Adversary Proceeding. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect Holders of Class 6.1 through 6.5 Claims that vote in favor of Option A (55 percent distribution), it will affect those that vote in favor of Option B, and it will affect the future distributions payable to the Class 7.1 through 7.5.

### 11.1.5   Risks Associated with Lehman Disputed Administrative Loans.

The SunCal Plan Proponents will be filing objections to the Lehman Disputed Administrative Loans. Since these loans were approved by an order of the Court, the SunCal Plan Proponents ability to object to these claims may be limited to damages arising from wrongs that occurred after these loans were approved. If these objections are not successful, the sums owed on account of the Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or on the date that they are allowed. If the SunCal Plan Proponents are not allowed to use the Net Proceeds from the sale of the Group I Projects to pay these obligations and they are unable to pay these claims from their own resources, or through funding or financing provided by third parties, the Plan will fail.

# **EXHIBIT E**

(Proposed Plan Funding Disclosure for Art. I & XI:    TD Group II Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## __INTRODUCTION__

This Disclosure Statement[1] is filed by Acquisitions, as the SunCal Plan Proponents, in the Chapter 11 Cases of the following Debtors:

**SunCal Torrance, LLC**

**SunCal Oak Knoll, LLC**

(the "Group II: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group II Trustee Debtor Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, Acquisitions is the SunCal Plan Proponent of the Plans sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plans, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plans.

In summary, the Plan(s) individually provide for sale of the Oak Knoll Project and the Del Amo Project (the "Group II: Trustee Debtors Projects"), free and clear of liens, claims and any purported credit bid rights of the Group II: Trustee Debtors' primary secured creditor, Lehman ALI, and for the liquidation of all other assets of the Group II: Trustee Debtors. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group II: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

with  any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim.  The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.  However, this purchase offer is not contingent upon the sale of the Group II: Trustee Debtor Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date.  Locating a third party to fund the Litco purchase offer and certain other Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it).  To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor.  *See* Plan §§ 2.1.96, 2.1.101, 8.2(B)(2), 10.2(2) & 10.2(C)(2).  This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds.  At the confirmation hearing on

the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

Although the substantially identical Plans are being filed in the Cases of all Group II: Trustee Debtors, confirmation of each Plan is independent of the other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of one of the Group II: Trustee Debtors, but not in the other.

The Lehman Lenders and the Chapter 11 Trustee have filed a competing and alternative plans of reorganization in the Group II: Trustee Debtors' Cases. Accordingly, the creditors holding claims against the Debtors will have the opportunity to vote for one plan or the other, or they can vote for or reject both plans and allow the Court to decide which plan should be approved. The SunCal Plan Proponents believe that the aggregate benefits offered under their Plan are superior to what is being offered to Creditors under the Lehman Lenders' competing Plans, because the consideration paid to the holders of the Reliance Claims is 55 percent under the SunCal Plans, in contrast to only a potential distribution of 40 percent under the Lehman Lenders and Chapter 11 Trustee Plans for the Group II: Trustee Debtors.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

➢ **HOW YOUR CLAIM IS TREATED;**

➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement.  If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plans.  Any party can now solicit votes for or against the Plans.

# XI.

# RISK FACTORS

**11.1    Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.1.1  The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.1.2  Inability to Obtain Plan and Litco Funding

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are searching for proposed investors/lenders who would provide such funding and have to accept that the repayment of any such investments/loans would be dependent upon recoveries, if any, from litigation against certain of the Lehman Lenders.  While the SunCal Plan Proponents have been in discussions with third parties with respect to obtaining funding for the SunCal Plan, neither the SunCal Plan Proponents nor Litco has been able to obtain a commitment from any party for such funding to date.  Locating a third party to fund the Litco purchase offer and certain other

Plan funding is both a condition to making those payments and a condition to the viability of the Plan (and thus to its feasibility and to Bankruptcy Court approval of it). There can be no assurance that a capable investor/lender to provide Plan funding will be located and will commit to provide the necessary funding.

To facilitate locating all or part of such Plan funding, the Plan includes as part of the break-up fee payable to the Stalking Horse Bidder for a Project, if it is not the Winning Bidder, the amount of all Administrative Claims against the applicable Debtor. *See* Plan §§ 2.1.96, 2.1.101, 8.2(B)(2), 10.2(2) & 10.2(C)(2). This aspect of each break-up fee is included because the SunCal Parties may propose that anyone wishing to make an Opening Bid to purchase a Project must also provide Plan funding to satisfy Administrative Claims associated with the applicable Debtor. The Project auction must be designed to yield maximum Net Sale Proceeds. At the confirmation hearing on the approval of the Plan, the Bankruptcy Court would have to approve inclusion of this bidding requirement as being consistent with this goal.

### 11.1.3   Failure to Sell The Group II: Trustee Debtor Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group II: Trustee Debtor Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group II: Trustee Debtor Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4  Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary

Proceeding. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect Holders of Class 6.1 and 6.2 Claims that vote in favor of Option A ($.55 cent distribution), it will affect those that vote in favor of Option B, and it will affect the future distributions payable to the Class 7.1 and 7.2.

### 11.1.5  **Risks Associated With Lehman Disputed Administrative Loans.**

The SunCal Plan Proponents will be filing objections to the Lehman Disputed Administrative Loans. Since these loans were approved by an order of the Court, the SunCal Plan Proponents ability to object to these claims may be limited to damages arising from wrongs that occurred after these loans were approved. If these objections are not successful, the sums owed on account of the Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or on the date that they are allowed. If the SunCal Plan Proponents are not allowed to use the Net Sales Proceeds from the sale of the Group II: Trustee Debtor Projects to pay these obligations and they are unable to pay these claims from their own resources, or through funding or financing provided by third parties, the Plan will fail.

In re: Case 8:08-bk-17206-ES   Doc 2431   Filed 07/26/11   Entered 07/26/11 11:27:03   Desc
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS Main Document   Page 44 of 46

CASE NUMBER 08-17206-ES

Debtor(s).

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***JOINT STATEMENT RE PROPOSED PLAN FUNDING INSERTS TO SUNCAL DISCLOSURE STATEMENTS PROPOSED BY VARIOUS PARTIES*** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____July 26, 2011____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ____July 26, 2011____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Counsel for Arch Ins.:    T. Scott Leo [U.S. MAIL]
LEO & WEBER
One N. LaSalle Street, Ste. 3600
Chicago, Illinois 60602                                  s    ☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____July 26, 2011____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [HAND Delivery]

The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

(1) Gen'l Counsel for Voluntary Debtors:
Paul Couchot - pcouchot@winthropcouchot.com
Marc J Winthrop - pj@winthropcouchot.com
Paul Lianides - plianides@winthropcouchot.com
(2) Debtors (Palmdale Hills Property, LLC and related entities):
bcook@suncal.com
(3) Counsel for SunCal Management:
Ronald Rus - rrus@rusmiliband.com
(4) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
Louis Miller - smiller@millerbarondess.com; jmiller@millerbarondess.com
Martin Pritikin - mpritikin@millerbarondess.com
(5) Gen'l Counsel for Ch. 11 Trustee Speier:
William Lobel - wlobel@thelobelfirm.com
Mike Neue - mneue@thelobelfirm.com
(6) Ch. 11 Trustee:
Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(7) Office of the United States Trustee:
Michael Hauser - michael.hauser@usdoj.gov
(8) Counsel for Voluntary Debtors' Committee:
Alan Friedman - afriedman@irell.com
Kerri A Lyman - klyman@irell.com

(9) Counsel for Trustee Debtors' Committee:
Lei Lei Wang Ekvall - lekvall@wgllp.com
Hutchison B Meltzer - hmeltzer@wgllp.com
(10) Counsel for Bond Safeguard & Lexon
Mark E. Aronson - mea@amclaw.com
Mark J Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
(11) Counsel for Joint Provisional Liquidators of Lehman RE Ltd
Betty Shumener - betty.shumener@dlapiper.com
Jonathan Hoff - jonathan.hoff@cwt.com
(12) Counsel for New Anaverde LLC
Lawrence Jacobson - laj@cohenandjacobson.com
Sean Jacobson - sean@cohenandjacobson.com
(13) Counsel for City of Oakland / Oakland Redev. Agency
Joshua Taylor - jrtaylor@steptoe.com
Filberto Agusti - fagusti@steptoe.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez - alfredo.perez@weil.com
Lauren Zerbinopoulos- lauren.zerbinopoulos@weil.com
Erica Rutner - erica.rutner@weil.com
Chauncey Cole - chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Mark McKane - mark.mckane@kirkland.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 26, 2011 | Melisa DesJardiens | /s/ Melisa DesJardien |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                              **F 9013-3.1.PROOF.SERVICE**

**I.  SERVED BY NEF**

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1)   Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2)   Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3)   Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4)   James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5)   Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6)   John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7)   Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8)   Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9)   Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10)  Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11)  Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12)  Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13)  Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14)  Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15)  Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16)  Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17)  Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18)  Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19)  Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20)  Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com

(21)  Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22)  Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23)  Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24)  Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25)  Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26)  Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27)  Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28)  Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29)  Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30)  Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(31)  Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32)  Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33)  Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34)  Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35)  Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36)  Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37)  Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38)  Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39)  Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40)  Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41)  Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42)  Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43)  Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44)  Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45)  Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46)  D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47)  Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48)  Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49)  Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(50)  Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51)  Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52)  John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53)  Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54)  Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55)  Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(56)  Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57)  Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

(58)  Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

(59)  David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60)  Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com,
gdupre@kirkland.com;alevin@kirkland.com

(61)  Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                                    F 9013-3.1.PROOF.SERVICE

*(62)* Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

*(63)* Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

*(64)* Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

*(65)* David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

*(66)* Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

*(67)* Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

*(68)* Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

*(69)* Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

*(70)* Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

*(71)* Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

*(72)* Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

*(73)* Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

*(74)* Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

*(75)* Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

*(76)* James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com

*(77)* Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

*(78)* Craig Millet for Int Pty Doug Champion
cmillet@gibsondunn.com,
pcrawford@gibsondunn.com;cmillet@gibsondunn.com

*(79)* Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

*(80)* Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

*(81)* Robert Nida for Cred Kirk Negrete, Inc
Rnida@castlelawoffice.com

*(82)* Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

*(83)* Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

*(84)* Scott H Olson for Cred Bethel Island Muni Improvement District
solson@seyfarth.com

*(85)* Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

*(86)* Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

*(87)* Daryl G Parker for Cred Lehman ALI, Inc.
dparker@pszjlaw.com

*(88)* Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

*(89)* Robert J Pfister on behalf of Int Pty Courtesy NEF
rpfister@ktbslaw.com

*(90)* Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

*(91)* Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com, smcloughlin@steptoe.com

*(92)* Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

*(93)* James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

*(94)* Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

*(95)* Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

*(96)* R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

*(97)* Martha E Romero for Cred California Taxing Authorities
Romero@mromerolawfirm.com

*(98)* Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

*(99)* John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

*(100)* John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

*(101)* William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

*(102)* Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

*(103)* Gerald N Sims for Int Pty Courtesy NEF
jerrys@psdslaw.com, bonniee@psdslaw.com

*(104)* Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

*(105)* Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

*(106)* Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarrmilner.com, ca85@ecfcbis.com

*(107)* Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

*(108)* Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

*(109)* Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

*(110)* David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
dianachau@tilemlaw.com;kmishigian@tilemlaw.com

*(111)* James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
pnelson@thelobelfirm.com

*(112)* United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

*(113)* Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

*(114)* Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

*(115)* Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

*(116)* Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

*(117)* Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

*(118)* David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

*(119)* Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

*(120)* Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

*(121)* Marc A. Zimmerman for Creditor Life Church of God in Christ
joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                    **F 9013-3.1.PROOF.SERVICE**