1  PAUL J. COUCHOT -- State Bar No. 131934
   **WINTHROP COUCHOT, P.C.**
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")
5
   RONALD RUS - State Bar No. 67369
6  JOEL S. MILIBAND - State Bar No. 77438
   **RUS MILIBAND & SMITH**
7  **A PROFESSIONAL CORPORATION**
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile: (949) 252-1514
   Counsel for SCC Acquisitions, Inc.

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **SANTA ANA DIVISION**

14  In re
    PALMDALE HILLS PROPERTY, AND ITS
15  RELATED DEBTORS,
              Jointly Administered Debtors
16            and Debtors-in-Possession

17  _____
    Affects:
18  ☐ All Debtors
    ☒ Palmdale Hills Property,
19  ☒ SunCal Beaumont Heights, LLC
    ☐ SCC/Palmdale,
20  ☒ SunCal Johannson Ranch, LLC
    ☐ SunCal Summit Valley, LLC
21  ☒ SunCal Emerald Meadows LLC
    ☒ SunCal Bickford Ranch, LLC
22  ☒ Acton Estates, LLC
    ☐ Seven Brothers LLC
23  ☐ SJD Partners, Ltd.
    ☒ SJD Development Corp.
24  ☐ Kirby Estates, LLC
    ☐ SunCal Communities I, LLC
25  ☐ SunCal Communities III, LLC
    ☒ SCC Communities LLC
26  ☒ North Orange Del Rio Land, LLC
    ☒ Tesoro SF LLC
27
28

Case No. 8:08-bk-17206-ES
Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 Proceedings

**SUNCAL PLAN PROPONENTS'
STATEMENT RE PROPOSED PLAN
FUNDING INSERTS FOR SUNCAL PLAN
PROPONENTS' DISCLOSURE
STATEMENTS**

Hearing Held: July 22, 2011
Time:  10:00 a.m.
Place: Courtroom. 5A

MAINDOCS-#164931-v1-SunCal_Statement_re_DS_Inserts.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☒ SunCal PSV, LLC
☒ Delta Coves Venture, LLC
☒ SunCal Torrance, LLC
☒ SunCal Oak Knoll, LLC

-2-

1      This *SunCal Plan Proponents' Statement re Proposed Plan Funding Inserts for SunCal*

2  *Plan Proponents' Disclosure Statements* (the "SunCal Plan Proponents Statement") is proposed

3  by Palmdale Hills Property, LLC, SunCal Beaumont Heights, LLC, SunCal Johannson Ranch,

4  LLC, SunCal Emerald Meadows LLC, SunCal Bickford Ranch, LLC, Acton Estates, LLC, SJD

5  Partners, Ltd., SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land,

6  LLC, Tesoro SF, LLC, in their capacities as debtors and debtors-in-possession (the "Voluntary

7  Debtors"), and SCC Acquisitions, Inc. ("Acquisitions"), as the plan proponents of the respective

8  plans for each of the Voluntary Debtors, and as the plan proponents for each of the respective

9  plans for each of LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, SunCal Marblehead,

10  LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal

11  Torrance, LLC, SunCal Oak Knoll, LLC (the "Trustee Debtors").  The Voluntary Debtors and

12  Acquisitions are collectively referred to as the "SunCal Plan Proponents."

13      The SunCal Plan Proponents object to that the *Joint Statement re Proposed Plan Funding*

14  *Inserts to SunCal Disclosure Statements Proposed by Various Parties* (the "Joint Statement")

15  filed by the Lehman Entities and others, and provide alternative inserts attached as Exhibits A

16  through E.  The SunCal Plan Proponents' alternative inserts are consistent with the Court's ruling

17  at the hearing on the Disclosure Statement on July 22, 2011 (the "July 22 Hearing").

18      Prior to the July 22 Hearing, the Court issued the following tentative:

19          1. As to Plans involving Group I Voluntary Debtors, Group I Trustee
            Debtors, and Group II Trustee Debtors,, additional language to following
20          effect should be added to the Third Amended Disclosure Statement:

21          "The SunCal Plan Proponents are currently not in a position to provide
            more specific information regarding the ability of LitCo 1) to provide the
22          plan funding referenced in this disclosure statement, e.g., to pay some or
            all Administrative Claims, post Confirmation Date costs, and post
23          Effective Date costs, or 2) to provide the purchase offer of Reliance
            Claims in the amount of 55 cents of Allowed Claims. Similarly, the
24          SunCal Plan Proponents are currently not in a position to provide
            information regarding the terms of a the Litco Plan Loan as such terms are
25          not known. It is anticipated that the particulars regarding LitCo and the
            LitCo Plan Loan will be provided at the Confirmation Hearing."
26

27          2. As to all other Plans, the following language should be added to the
            Third Amended Disclosure Statement:
28

-3-

"The SunCal Plan Proponents are currently not in a position to provide more specific information regarding the ability of LitCo to provide the plan funding referenced in this disclosure statement, e.g., to pay some or all Administrative Claims, post Confirmation Date costs and post Effective Date costs if no other source of funding is available. Similarly, the SunCal Plan Proponents are currently not in a position to provide information regarding the terms of a the Litco Plan Loan as such terms are not known. It is anticipated that the particulars regarding the LitCo and the LitCo Plan Loan will be provided at the Confirmation Hearing."

The Court ultimately stated that while it was not requiring any particular language, the SunCal Plan Proponents' Disclosure Statements must disclose the fact that several of their plans require financial commitments from third parties, that the SunCal Plan Proponents currently do not have such a commitment, that the SunCal Plan Proponents are not in a position to disclose the identity of such third party funding source, and the SunCal Plan Proponents are not in position to disclose the terms of such financing. The SunCal Plan Proponents' Statement is consistent with this ruling, while the Joint Statement unfairly exceeds the Court's mandate.

The Official Committee of Unsecured Creditors of the Voluntary Debtors ("Voluntary Committee") has approved the SunCal Plan Proponents' proposed inserts and has signified that approval by execution of this Statement.[1]

///

///

///

///

///

---

[1] However, in approving the SunCal Plan Proponents inserts, the Committee has indicated that it does not adopt the position of the SunCal Plan Proponents as to the Joint Statement from which it has not withdrawn. In other words, the Voluntary Committee has approved both sets of inserts.

MAINDOCS-#164931-v1-SunCal_Statement_re_DS_Inserts.DOC

1    WHEREFORE the SunCal Plan Proponents respectfully request that the Court approve

2   the SunCal Plan Proponents' proposed Disclosure Statement inserts set forth in the attached

3   exhibits and grant such other relief as is just and proper.

4   DATED: July 28, 2011                    **WINTHROP COUCHOT**
                                            **PROFESSIONAL CORPORATION**
5

6
                                           By:   /s/ Paul J. Couchot
7                                                Paul J. Couchot, Esq.
                                           General Insolvency Counsel for
8                                          Administratively Consolidated Voluntary Debtors

9
                                           **RUS MILIBAND & SMITH**
10                                         **A PROFESSIONAL CORPORATION**

11
                                           By:   /s/ Ronald Rus
12                                               Ronald Rus, Esq.
                                                 Joel Miliband, Esq.
13                                         Attorneys for SCC Acquisitions, Inc.

14
                                           **IRELL & MANELLA LLP**
15

16                                         By:   /s/ Alan J. Friedman
                                                 Alan J. Friedman
17                                         Counsel for the Official Committee of Unsecured
                                           Creditors in Chapter 11 Cases of Palmdale Hills
18                                         Property, LLC et al.

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group I Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed jointly by, and the accompanying Plans are proposed respectively by, Palmdale Hills Property, LLC, SunCal Bickford, LLC, SunCal Emerald Meadows, LLC, and Acton Estates, LLC (the "Group I: Voluntary Debtors"), as the SunCal Proponents, in their respective Chapter 11 Cases in their capacities as debtors in possession. Under each of the Group I Voluntary Debtor's Plans, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group I Voluntary Debtor's Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, the Group I: Voluntary Debtors are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan(s) individually provides for the sale of the Ritter Ranch Project, the Bickford Ranch, SunCal Emerald and the Acton Project (the "Group I Projects"), and for the liquidation of all other assets of the Group I: Voluntary Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

**The Plan also offers the holders of a certain claims against the Group I: Voluntary Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2

the sum of fifty-five cents ($0.55) per dollar of claim. The purchase offer is conditioned upon confirmation of the applicable Plan , the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

**EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.**

Although substantial identical and consolidated Plans are being filed in the Cases of all four Group I: Voluntary Debtors, confirmation of each such Plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the

3

applicable Plan will be approved in their Case. Accordingly, the applicable Plan may be confirmed in the Cases of some of the Group I: Voluntary Debtors, but not in others.

The Lehman Lenders and the Chapter 11 Trustee have also filed a competing and alternative plan of reorganization in the Group I: Voluntary Debtors' Cases ("Lehman Competing Group I: Voluntary Debtors Plan"). Accordingly, the creditors holding claims against the Group I: Voluntary Debtors will have the opportunity to vote for the applicable Sun Cal Proponents Group I: Voluntary Debtors Plan or for Lehman's Competing Group I: Voluntary Debtors Plan. Alternatively, they can vote for or reject all of the Plans and allow the Court to decide which plan should be approved. The Group I: Voluntary Debtors believe that the aggregate benefits offered under their Plans are superior to what is being offered to Creditors under the Lehman Lenders' competing Plans, because the consideration paid to the holders of the Reliance Claims is 55 percent under the SunCal Plans in contrast to only a potential distribution of 40percent under the Lehman Lenders and Chapter 11 Trustee Plans for the Group I: Voluntary Debtors.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

- ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**
- ➢ **HOW YOUR CLAIM IS TREATED;**
- ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**
- ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**
- ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**
- ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**
- ➢ **WHETHER THE PLAN IS FEASIBLE.**

4

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plans. On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plan. Any party can now solicit votes for or against the Plans.

5

# XI.

## RISK FACTORS

### 11.1    Plan Risks.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

#### 11.1.1    The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

#### 11.1.2    Status of Litco Funding

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (e.g., to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

#### 11.1.3    Failure to Sell The Group I: Voluntary Projects.

6

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group I Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4 Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary Proceeding. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect Holders of Class 6.1, 6.2, 6.3 and 6.4 Claims that vote in favor of Option A (55 percent distribution), it will affect those that vote in favor of Option B, and it will affect the future distributions payable to the Class 7.1, 7.2, 7.3 and 7.4.

7

# EXHIBIT B

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group III Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed jointly by, and the accompanying Plans are proposed respectively by, SCC Communities, Del Rio and Tesoro (the "Group III: Voluntary Debtors"), as the SunCal Plan Proponents, in their respective Chapter 11 Cases in their capacities as debtors-in-possession.  Under each of the Group III Voluntary Debtor's Plans, Acquisitions shall be the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group III Voluntary Debtor's Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the Group III Voluntary Debtors are the proponents of their respective Plan(s) sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plan(s), certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan(s) individually provide for the sale of the SCC Communities Assets, the Tesoro Assets, and the Del Rio Assets (the "Group III Assets: Voluntary Debtors"), free and clear of all claims and liens.  The Net Sales Proceeds from these sales and/or liquidation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law.

Plan funding (*e.g.*, for required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) (the "Effective Date Payments"), to the extent estate assets are not available, is not intended to be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding.  While the SunCal Plan Proponents are in discussions with third parties with respect to

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2

obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

The SunCal Plan Proponents do not believe that a third party financing source is material to the feasibility of the Plan, because the Effective Date Payments are minimal, such that Acquisitions or an Affiliate of Acquisitions will fund the Effective Date Payments, if necessary.

Although substantially identical and consolidated Plans are being filed in the Cases of all three Group III: Voluntary Debtors, confirmation of each such Plan is independent of each others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, a particular Plan may be confirmed in the Cases of some of the Group III: Voluntary Debtors, but not in others.

The Lehman Lenders have also filed competing and alternative plans of reorganization in the SCC Communities and Tesoro Chapter 11 Cases, but not in the Del Rio Chapter 11 Case ("Lehman Competing Group III: Voluntary Debtors Plan"). Accordingly, the creditors holding claims against SCC Communities and Tesoro will have the opportunity to vote for the applicable Sun Cal Proponents Group III: Voluntary Debtors Plan or for Lehman's Competing Group III: Voluntary Debtors Plan. Alternatively, they can vote for or reject all of the Plans and allow the Court to decide which plan should be approved.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

> **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> **HOW YOUR CLAIM IS TREATED;**

> **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

> **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

3

> ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

> ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

> ➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO CONTAIN "ADEQUATE INFORMATION" CONCERNING THE PLANS. ON _____, 2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS DISCLOSURE STATEMENT, BASED UPON A FINDING THAT THIS DOCUMENT CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT REGARDING THE PLAN. ANY PARTY CAN NOW SOLICIT VOTES FOR OR AGAINST THE PLANS.

4

# XI.

## RISK FACTORS

### 11.1    Plan(s) Risks.

The respective Group III: Voluntary Debtor's Plan, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the respective Group III: Voluntary Debtor's Plan. The more material of these risks are summarized below.

### 11.2    The Plan(s) May All Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the respective Group III: Voluntary Debtor's Plan are confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the respective Group III: Voluntary Debtor's Plan to be confirmable. If a respective Group III: Voluntary Debtor's Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the respective Group III: Voluntary Debtor's Plan.

### 11.3    Status of Litco Funding

Plan funding (*e.g.*, for required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) (the "Effective Date Payments"), to the extent estate assets are not available, is not intended to be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

5

The SunCal Plan Proponents do not believe that a third party financing source is material to the feasibility of the Plan, because the Effective Date Payments are minimal, such that Acquisitions or an Affiliate of Acquisitions will fund the Effective Date Payments, if necessary.

### 11.4    Failure to Sell The Group III Assets: Voluntary Debtors.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to sell the Group III Assets: Voluntary Debtors for at least the Minimum Sales Prices on the Effective Date. Although the Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sale will not occur. If this occurs then the creditors holding liens against the Group III Assets: Voluntary Debtors will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.5    Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding, Lehman Claim Objections and the Contract Action against Lehman ALI. The SunCal Plan Proponents believe that their defenses to the claims asserted by Lehman ALI have merits and that they will be sustained and that relief will also be granted. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling.

# EXHIBIT C

(Proposed Plan Funding Disclosure for Art. I & XI:    VD Group IV Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed by, and the accompanying Plan is proposed by SJD Partners and SJD Development (the "Group IV: Voluntary Debtors"), as the SunCal Plan Proponents, in respective Chapter 11 Cases of the Group IV: Voluntary Debtors. In addition to being the SunCal Plan Proponent in the Trustee Debtors' Cases, Acquisitions shall be the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for all of the Debtors' Cases in which the SunCal Plan Proponents' Plan(s) are confirmed. SJD Development is the sole equity owner of SJD Partners. SJD Partners is the former owner of the Pacific Point Project. This Disclosure Statement and the Plan assume that all claims filed against SJD Development were inadvertent and should have been filed against SJD Partners as the project-owning entity that incurred such debt. Consequently, a joint Plan is filed in the cases of the Group IV: Voluntary Debtors.

SJD Development is the 100% equity holder of SJD Partners. SJD Partners formerly owned the Pacific Point Project. The Pacific Point Project was lost through a non-judicial foreclosure sale by Lehman ALI, which caused a Lehman Affiliate, LV Pacific Point LLC, a Delaware limited liability company, a Lehman Entity, a Delaware Limited Liability Company, to purchase the Pacific Point Project at a foreclosure sale conducted on August 28, 2008. The Group IV: Voluntary Debtors have initiated litigation regarding the foregoing as described herein.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2

Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides for the recovery of the Pacific Point Project and/or liquidation of Litigation Recoveries of Group IV: Voluntary Debtors. The Net Sales Proceeds will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law. In addition, holders of Allowed Reliance Claims will receive an initial distribution equal to 1% of such holder's Allowed Claim, and, potentially, an additional distribution of up to 49% thereof from Litco in the event that such newly formed entity obtains free and clear title to the Pacific Point Project (the "Litco Enhancement").

Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims, Tax Claims and Reliance Claims) (the "Effective Date Payments"), to the extent estate assets are not available, is not contemplated to be provided by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders to make the Effective Date Payments (including the 1% Distribution to Holders of Reliance Claim, for which estate assets cannot be used). While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for these payments, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

The SunCal Plan Proponents do not believe that a third party financing source is material to the feasibility of the Plan, because the Effective Date Payments are relatively minimal such that Acquisitions or an Affiliate of Acquisitions will fund such payments. The Litco Enhancement to Holders of Reliance Claims, is only a Plan obligation in the event Litco or its designee acquires the PacPoint Project free and clear of all claims and liens during the five-year Plan term, and financing for the Litco Enhancement will be obtained in connection with that

3

acquisition. At the present time, free and clear title to the PacPoint Project cannot be obtained absent the consent of Lehman ALI, and it is uncertain whether such consent will be obtained.s

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

> - **WHO CAN VOTE OR OBJECT TO THE PLAN;**
> - **HOW YOUR CLAIM IS TREATED;**
> - **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**
> - **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**
> - **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**
> - **WHAT IS THE EFFECT OF CONFIRMATION; AND**
> - **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plans. On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plan. Any party can now solicit votes for or against the Plans.

4

# XI.

## RISK FACTORS

### 11.1    Plan Risks.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.2.    The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.3    Status of Litco Funding

Plan funding for the Effective Date Payments, to the extent estate assets are not available, is not contemplated to be provided by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are working with proposed investors/lenders to make the Effective Date Payments (including the 1% Distribution to Holders of Reliance Claim, for which estate assets cannot be used).  While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for these payments, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time.  There is no guarantee that such funding will be obtained.

The SunCal Plan Proponents do not believe that a third party financing source is material to the feasibility of the Plan, because the Effective Date are relatively minimal such that

5

Acquisitions or an Affiliate of Acquisitions will fund such payments. The Litco Enhancement is only a Plan obligation in the event Litco or its designee acquires the PacPoint Project free and clear of all claims and liens during the five-year Plan term, and financing for the Litco Enhancement will be obtained in connection with that acquisition. At the present time, free and clear title to the PacPoint Project cannot be obtained absent the consent of Lehman ALI, and it is uncertain whether such consent will be obtained.

    **11.4**    <u>**Adverse Outcome of Pending Litigation.**</u>

The Group IV: Voluntary Debtors are plaintiffs in the Lehman Adversary Proceeding and the Contract Action. The Group IV: Voluntary Debtors believe that their causes of action in the Lehman Adversary Proceeding and the Contract Action are meritorious. However, there is no assurance that they will prevail in either action.

6

# EXHIBIT D

(Proposed Plan Funding Disclosure for Art. I & XI:    TD Group I Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed by the Acquisitions, as the SunCal Plan Proponents, in the Chapter 11 Cases of the following Debtors:

> SunCal Oak Valley, LLC
>
> SunCal Heartland, LLC
>
> Delta Coves Venture, LLC
>
> SunCal PSV, LLC
>
> SunCal Marblehead, LLC

(the "Group I: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group I Trustee Debtor Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, Acquisitions is the SunCal Plan Proponent of the Plan sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the Plans, certain information relating to the Plans and the process the Bankruptcy Court follows in determining whether or not to confirm the Plans.

In summary, the Plan(s) individually provide for sale of the Oak Valley Project, the Heartland Project, the Delta Coves Project, Palms Springs Village Project and the Marblehead Project (the "Group I Projects"), free and clear of liens, claims and any purported credit bid rights of the Group I: Trustee Debtors' primary secured creditor, Lehman ALI, and for the

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2

liquidation of all other assets of the Group I: Trustee Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group I: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim. The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein. However, this purchase offer is not contingent upon the sale of the Group I Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.**

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

**EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE**

3

**EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.**

Although substantially identical Plans are being filed in the Cases of all five Group I: Trustee Debtors, confirmation of each such Plan is independent of each others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of some of the Group I: Trustee Debtors, but not in others.

The Lehman Lenders and the Chapter 11 Trustee have filed a competing and alternative plans of reorganization in the Group I: Trustee Debtors' Cases. Accordingly, the creditors holding claims against the Group I: Trustee Debtors will have the opportunity to vote for one plan or the other, or they can vote for or reject both plans and allow the Court to decide which plan should be approved. The SunCal Plan Proponents believe that the aggregate benefits offered under their Plans are superior to what is being offered to Creditors under the Lehman Lenders' competing Plans, because the consideration paid to the holders of the Reliance Claims is 55 percent under the SunCal Plans in contrast to only a potential distribution of 40 percent under the Lehman Lenders and Chapter 11 Trustee Plans for the Group I: Trustee Debtors.

> **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**
> - ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**
> - ➢ **HOW YOUR CLAIM IS TREATED;**
> - ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**
> - ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

4

> ➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

> ➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

> ➢ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO CONTAIN "ADEQUATE INFORMATION" CONCERNING THE PLAN. ON _____, 2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS DISCLOSURE STATEMENT, BASED UPON A FINDING THAT THIS DOCUMENT CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY THE PLANS TO MAKE AN INFORMED JUDGMENT REGARDING THE PLANS. ANY PARTY CAN NOW SOLICIT VOTES FOR OR AGAINST THE PLANS.

# XI.

## RISK FACTORS

### 11.1    Plan Risks.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

#### 11.1.1    The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

#### 11.1.2    Status of Litco Funding

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

6

### 11.1.3  Failure to Sell the Group I Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group I Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group I Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4  Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary Proceeding. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect Holders of Class 6.1 through 6.5 Claims that vote in favor of Option A (55 percent distribution), it will affect those that vote in favor of Option B, and it will affect the future distributions payable to the Class 7.1 through 7.5.

### 11.1.5  Risks Associated with Lehman Disputed Administrative Loans.

The SunCal Plan Proponents will be filing objections to the Lehman Disputed Administrative Loans. Since these loans were approved by an order of the Court, the SunCal Plan Proponents ability to object to these claims may be limited to damages arising from wrongs that occurred after these loans were approved. If these objections are not successful, the sums owed on account of the Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or on the date that they are allowed. If the SunCal Plan Proponents are not allowed to use the Net Proceeds from the sale of the Group I Projects to pay these

7

obligations and they are unable to pay these claims from their own resources, or through funding

or financing provided by third parties, the Plan will fail.

## **EXHIBIT E**

(Proposed Plan Funding Disclosure for Art. I & XI:    TD Group II Disclosure Statement)

[New Language Highlighted / Shaded]

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed by Acquisitions, as the SunCal Plan Proponents, in the Chapter 11 Cases of the following Debtors:

**SunCal Torrance, LLC**

**SunCal Oak Knoll, LLC**

(the "Group II: Trustee Debtors"). In addition to being one of the proponents of the Plan, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group II Trustee Debtor Plan that is confirmed.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan. As stated, Acquisitions is the SunCal Plan Proponent of the Plans sent to you in the same envelope as this Disclosure Statement. This document summarizes the contents of the Plans, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plans.

In summary, the Plan(s) individually provide for sale of the Oak Knoll Project and the Del Amo Project (the "Group II: Trustee Debtors Projects"), free and clear of liens, claims and any purported credit bid rights of the Group II: Trustee Debtors' primary secured creditor, Lehman ALI, and for the liquidation of all other assets of the Group II: Trustee Debtors. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group II: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2

with  any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim.  The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.  However, this purchase offer is not contingent upon the sale of the Group II: Trustee Debtor Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding.  While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time.  There is no guarantee that such funding will be obtained.

Although the substantially identical Plans are being filed in the Cases of all Group II: Trustee Debtors, confirmation of each Plan is independent of the other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of one of the Group II: Trustee Debtors, but not in the other.

The Lehman Lenders and the Chapter 11 Trustee have filed a competing and alternative plans of reorganization in the Group II: Trustee Debtors' Cases. Accordingly, the creditors holding claims against the Debtors will have the opportunity to vote for one plan or the other, or they can vote for or reject both plans and allow the Court to decide which plan should be approved. The SunCal Plan Proponents believe that the aggregate benefits offered under their Plan are superior to what is being offered to Creditors under the Lehman Lenders' competing

3

Plans, because the consideration paid to the holders of the Reliance Claims is 55 percent under the SunCal Plans, in contrast to only a potential distribution of 40 percent under the Lehman Lenders and Chapter 11 Trustee Plans for the Group II: Trustee Debtors.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

- ➤ **WHO CAN VOTE OR OBJECT TO THE PLAN;**
- ➤ **HOW YOUR CLAIM IS TREATED;**
- ➤ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**
- ➤ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**
- ➤ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**
- ➤ **WHAT IS THE EFFECT OF CONFIRMATION; AND**
- ➤ **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own attorney to obtain more specific advice on how the Plan will affect you and your best course of action.

Be sure to read the applicable Plan as well as this Disclosure Statement. If there are any inconsistencies between the applicable Plan and this Disclosure Statement, the applicable Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. On _____, 2011, the Bankruptcy Court entered an order approving this Disclosure Statement, based upon a finding that this document contained "adequate information" to enable parties affected by the Plans to make an informed judgment regarding the Plans. Any party can now solicit votes for or against the Plans.

4

# XI.

# RISK FACTORS

## 11.1    Plan Risks.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

### 11.1.1    The Plan May Not Be Accepted or Confirmed.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

### 11.1.2    Status of Litco Funding

The offer by Litco to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents. Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding. While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time. There is no guarantee that such funding will be obtained.

5

### 11.1.3  Failure to Sell The Group II: Trustee Debtor Projects.

The Plan is based upon the assumption that the SunCal Plan Proponents will be able to close the sale of the Group II: Trustee Debtor Projects for at least the Minimum Sales Prices on the Effective Date. Although the SunCal Plan Proponents are confident that they can achieve sales at these prices based upon their market research and familiarity with the projects, a possibility exists that these sales will not occur. If this occurs then the creditors holding liens against the Group II: Trustee Debtor Projects will be entitled to seek recourse against these properties, and this recourse would include foreclosure.

### 11.1.4  Adverse Outcome of Pending Litigation.

The SunCal Plan Proponents have filed objections to the claims of the Lehman Lenders, and they intend to pursue the Lehman Adversary Proceeding against LCPI claims and liens once they obtain relief from the automatic stay in LCPI's Chapter 11 case. The SunCal Plan Proponents believe that their defenses to the claims asserted by the Lehman Lender have merits and that they will be sustained and that relief will also be granted in the Lehman Adversary Proceeding. However, there is no assurance that this will occur. Litigation involves risks, including most importantly the risk of an adverse ruling. Although the risk of an adverse ruling will not affect Holders of Class 6.1 and 6.2 Claims that vote in favor of Option A ($.55 cent distribution), it will affect those that vote in favor of Option B, and it will affect the future distributions payable to the Class 7.1 and 7.2.

### 11.1.5  Risks Associated With Lehman Disputed Administrative Loans.

The SunCal Plan Proponents will be filing objections to the Lehman Disputed Administrative Loans. Since these loans were approved by an order of the Court, the SunCal Plan Proponents ability to object to these claims may be limited to damages arising from wrongs that occurred after these loans were approved. If these objections are not successful, the sums owed on account of the Lehman Disputed Administrative Loans will have to be paid on the Effective Date of the Plan, or on the date that they are allowed. If the SunCal Plan Proponents are not allowed to use the Net Sales Proceeds from the sale of the Group II: Trustee Debtor

6

Projects to pay these obligations and they are unable to pay these claims from their own resources, or through funding or financing provided by third parties, the Plan will fail.

Exhibit E, Page 34

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **SUNCAL PLAN PROPONENTS' STATEMENT RE PROPOSED PLAN FUNDING INSERTS FOR SUNCAL PLAN PROPONENTS' DISCLOSURE STATEMENTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 28, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On July 28, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Via first class mail

| | |
|---|---|
| T. Scott Leo, Esq.<br>Leo & Weber<br>One N. LaSalle St., #2600<br>Chicago, IL 60602 | Counsel for Arch Ins. |

☐  Service information continued on attached page
**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 28, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 28, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#164931-v1-SunCal_Statement_re_DS_Inserts.DOC

## NEF SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@gocforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com

MAINDOCS-#164931-v1-SunCal_Statement_re_DS_Inserts.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com

- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

**SERVICE VIA E-MAIL**

Edward Soto – Edward.soto@weil.com; odalys.smith@weil.com; lori.scavey@weil.com
Allen Blaustein – Allen.Blaustein@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Lauren Zerbinopoulos – lauren.xzerbinopoulos@weil.com
Erica Rutner – Erica.rutner@weil.com
Chauncey Cole – Chauncey.cole@cwt.com
R. Reinthaler@dl.com
Marc McKane – Mark.mckane@kirkland.com
Counsel for Bond Sageguard – Mark E. Aronson – mea@amclaw.com
Counsel for Joint Provisional Liquidators of Lehman RE LTd. – Betty Shumener –
betty.shumener@dlapiper.com
Counsel for New Anaverde – Sean Jacobson – sean@cohenandjacobson.com
Counsel for City of Oakland/Oakland Redev. Agency – Filbert Augsti – faugusti@steptoe.com

MAINDOCS-#164931-v1-SunCal_Statement_re_DS_inserts.DOC