1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")
5

6  RONALD RUS - State Bar No. 67369
   JOEL S. MILIBAND - State Bar No. 77438
7  RUS MILIBAND & SMITH
   A PROFESSIONAL CORPORATION
8  2211 Michelson Drive, Seventh Floor
   Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile:  (949) 252-1514

10 Counsel for SCC Acquisitions Inc.

11              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12                    **SANTA ANA DIVISION**

13 In re                                    Case No. 8:08-bk-17206-ES

   PALMDALE HILLS PROPERTY, AND ITS         Jointly Administered With Case Nos.
14 RELATED DEBTORS,                         8:08-bk-17209-ES; 8:08-bk-17240-ES;
                                            8:08-bk-17224-ES; 8:08-bk-17242-ES;
        Joint Administered Debtors and      8:08-bk-17225-ES; 8:08-bk-17245-ES;
15      Debtors-in-Possession              8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                            8:08-bk-17230-ES; 8:08-bk-17231-ES;
16                                          8:08-bk-17236-ES; 8:08-bk-17248-ES;
   Affects:                                 8:08-bk-17249-ES; 8:08-bk-17573-ES;
17 ☐ All Debtors                            8:08-bk-17574 ES; 8:08-bk-17575-ES;
                                            8:08-bk-17404-ES; 8:08-bk-17407-ES;
18 ☐ Palmdale Hills Property, LLC           8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☐ SunCal Beaumont Heights, LLC           8:08-bk-17458-ES; 8:08-bk-17465-ES;
19 ☐ SCC/Palmdale, LLC                      8:08-bk-17470-ES; 8:08-bk-17472-ES;
                                            and 8:08-bk-17588-ES
20 ☐ SunCal Johannson Ranch, LLC
   ☐ SunCal Summit Valley, LLC
21 ☐ SunCal Emerald Meadows LLC             Chapter 11 Proceedings

22 ☐ SunCal Bickford Ranch, LLC             **THIRD AMENDED DISCLOSURE**
   ☐ Acton Estates, LLC                     **STATEMENT DESCRIBING THIRD**
23 ☐ Seven Brothers LLC                     **AMENDED CHAPTER 11 PLAN FILED**
                                            **BY SUNCAL PLAN PROPONENTS IN**
24 ☐ SJD Partners, Ltd.                     **THE CHAPTER 11 CASE OF SUNCAL**
   ☐ SJD Development Corp.                  **CENTURY CITY, LLC**
25 ☐ Kirby Estates, LLC
                                            Date:     July 22, 2011
26 ☐ SunCal Communities I, LLC              Time:     11:00 a.m.
   ☐ SunCal Communities III, LLC            Place:    Courtroom 5A
27 ☐ SCC Communities LLC
28 ☐ North Orange Del Rio Land, LLC
   ☐ Tesoro SF LLC

1

*Continued from Previous Page*

2  ☐ LBL-SunCal Oak Valley, LLC

3  ☐ SunCal Heartland, LLC
   ☐ LBL-SunCal Northlake, LLC

4  ☐ SunCal Marblehead, LLC

5  ☒ SunCal Century City, LLC
   ☐ SunCal PSV, LLC

6  ☐ Delta Coves Venture, LLC

7  ☐ SunCal Torrance, LLC
   ☐ SunCal Oak Knoll, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION...................................................................................................    2

II.    DEFINITIONS AND RULES OF INTERPRETATION.................................    3
    2.1    Definitions.  .....................................................................................    3
    2.2    Rules of Construction.  ....................................................................    17
    2.3    Exhibits.  ...........................................................................................    18

III.    PLAN CONFIRMATION DEADLINES .............................................................    18
    3.1    Time and Place of the Confirmation Hearing.  .............................    18
    3.2    Deadline for Voting for or Against the Plan.  ..............................    18
    3.3    Deadline for Objecting to the Confirmation of the Plan.  ...........    19
    3.4    Identity of Person to Contact for More Information
        Regarding the Plan .........................................................................    19
    3.5    Disclaimer ........................................................................................    19
    3.6    Summary of All of the Alleged Claims Against the Debtor and a
        Summary of the Debtor's Primary Assets........................................    20

IV.    FACTUAL BACKGROUND OF THE DEBTORS ............................................    22
    4.1    The Formation of the Debtors and the Projects.  ..........................    22
    4.2    Factual Circumstances Leading to the Filing of the Debtors'
        Chapter 11 Cases. ...........................................................................    23

V.    SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES .................    30
    5.1.    Voluntary Debtors.  ........................................................................    30
    5.2.    The Trustee Debtors and Their Professionals and the Trustee
        Debtors' Committee and Its Professionals.  ..................................    30
    5.3.    SunCal's Discovery of the Danske Bank Repo. .............................    31
    5.4.    The Sale of the 10,000 Santa Monica Project to Danske Bank.  .................    31

VI.    TREATMENT OF UNCLASSIFIED CLAIMS .................................................    31
    6.1    Introduction. ....................................................................................    31
    6.2    Treatment of Allowed Administrative Claims.  .............................    31
    6.3    Administrative Claims Bar Date. ....................................................    32
    6.4    Treatment of Unsecured Tax Claims.  ............................................    32

VII.    CLASSIFICATION OF CLAIMS AND INTERESTS ............................................    33

VIII.    THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.......    34
    8.1.    The Plan's Treatment of Holders of Priority Claims
        Against the Debtor (Class 1.1). ......................................................    34
    8.2.    The Plan's Treatment of Holders of Allowed General
        Unsecured Claims Against the Debtor (Class 2.1).  .....................    34
    8.3.    The Plan's Treatment of Holders of Allowed Interests
        Against the Debtor (Class 3.1). ......................................................    35

IX.     ACCEPTANCE OR REJECTION OF THE PLAN ...................................................    35
        9.1.    Introduction. .......................................................................................    35
        9.2.    Who May Object to Confirmation of the Plan. .............................    35
        9.3.    Who May Vote to Accept/Reject the Plan. ....................................    36
        9.4.    What Is an Allowed Claim/Interest. ..............................................    36
        9.5.    What Is an Impaired Class. ...........................................................    36
        9.6.    Who Is Not Entitled to Vote. .........................................................    36
        9.7.    Who Can Vote in More than One Class. .........................................    37
        9.8.    Votes Necessary for a Class to Accept the Plan. ...........................    37
        9.9.    Treatment of Nonaccepting Classes. .............................................    37
        9.10.   Request for Confirmation Despite Nonacceptance by
                Impaired Class(es). ........................................................................    37

X.      MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ..............    38

        10.1.   Removal of Chapter 11 Trustee. ...................................................    38
        10.2    Establishment and Operations of the Plan Trust. .........................    38
        10.3    Preservation and Pursuit of Litigation Claims and
                Recovery for the Plan Trust. .........................................................    38
        10.4    Payment of Plan Trust Expenses. .................................................    39
        10.5    The Plan Trust Distribution System. .............................................    40
        10.6    The Plan Trustee. ...........................................................................    40
        10.7    The Plan Trust Beneficiaries. ........................................................    44
        10.8    No Payment of Transfer-Related Fees to the
                United States Trustee. ....................................................................    44
        10.9    No Payment of Transfer-Related Fees to the Plan Trustee. ..........    44
        10.10   Books and Records of Trust. .........................................................    45
        10.11   Federal Income Tax Treatment of the Holders of the
                Plan Trust Beneficial Interests. .....................................................    45
        10.12   Termination of the Trust. ...............................................................    46
        10.13   Exemption from Certain Transfer Taxes. ......................................    46
        10.14   Tax Consequence of The Plan. .....................................................    46
        10.15   The Trustee Debtors' Committee. .................................................    47

XI.     RISK FACTORS ..................................................................................................    48
        11.1    Plan Risks. ......................................................................................    48
        11.2    The Plan May Not Be Accepted or Confirmed. ............................    48
        11.3    Adverse Outcome of Pending Litigation. ......................................    48

XII.    DISTRIBUTIONS...................................................................................................    48
        12.1    Distribution Agent.  ........................................................................    48
        12.2    Distributions. ..................................................................................    49
        12.3    Old Instruments and Securities. .....................................................    49

XIII.   OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS ......................................    51
        13.1    Standing for Objections to Claims. ...............................................    51

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

13.2    Treatment of Disputed Claims and Disputed Liens. ..................................... 51

XIV.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 51
        14.1    Executory Contracts Being Rejected.  ........................................... 51
        14.2    Bar Date for Rejection Damages.  ................................................ 52

XV.    BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY ............... 52
        15.1    Best Interests Test.  ................................................................ 52
        15.2    Feasibility.  ......................................................................... 53

XVI.    LIMITATION OF LIABILITY ................................................................ 53
        16.1    No Liability for Solicitation or Participation.  ................................ 53

XVII.   CONDITIONS TO CONFIRMATION AND
        EFFECTIVENESS OF THE PLAN ........................................................... 54
        17.1    Conditions Precedent to Plan Confirmation.  ................................. 54
        17.2    Conditions Precedent to Plan Effectiveness.  ................................ 54

XVIII. RETENTION OF JURISDICTION ............................................................ 54

XIX.    MODIFICATION OR WITHDRAWAL OF THE PLAN ................................... 54
        19.1    Modification of Plan.  .............................................................. 54
        19.2    Nonconsensual Confirmation.  ................................................... 54

XX.    MISCELLANEOUS ............................................................................. 55
        20.1    Payment of Statutory Fees.  ...................................................... 55
        20.2    Changes in Rates Subject to Regulatory Commission Approval.  ................ 55
        20.3    Payment Dates.  ................................................................... 55
        20.4    Headings.  ......................................................................... 55
        20.5    Other Documents and Actions.  ................................................. 55
        20.6    Notices.  ........................................................................... 55
        20.7    Governing Law.  ................................................................... 56
        20.8    Binding Effect.  ................................................................... 56
        20.9    Successors and Assigns.  ......................................................... 56
        20.10   Severability of Plan Provisions.  ............................................... 57
        20.11   No Waiver.  ........................................................................ 57
        20.12   Inconsistencies.  ................................................................. 57
        20.13   Exemption from Certain Transfer Taxes and Recording Fees.  .................... 57
        20.14   Post-Confirmation Status Report.  ............................................. 58
        20.15   Post-Confirmation Conversion/Dismissal.  ..................................... 58
        20.16   Final Decree.  ..................................................................... 58

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

# I.

## INTRODUCTION

This Disclosure Statement[1] is filed jointly by, and the accompanying Plan is proposed respectively by, Acquisitions and the Voluntary Debtors, as the SunCal Plan Proponents in the Debtor's Chapter 11 Case.  In addition to being a SunCal Plan Proponent, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for the Plan.

Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.  As stated, the SunCal Plan Proponents are the proponents of the Plan sent to you in the same envelope as this Disclosure Statement.  This document summarizes the contents of the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

In summary, the Plan provides for the prosecution and recovery of the proceeds of the Lehman Preference Claim against Lehman ALI and the Distribution of the Available Cash to Creditors holding Allowed Claims, in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.  The Plan also provides for the potential prosecution and potential recovery of the Lehman Preference Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation Recoveries.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

> ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

> ➢ **HOW YOUR CLAIM IS TREATED;**

> ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

> ➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1  ➤ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**

2  **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

3  ➤ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

4  ➤ **WHETHER THE PLAN IS FEASIBLE.**

5  This Disclosure Statement cannot tell you everything about your rights.  You should

6  consider consulting your own attorney to obtain more specific advice on how the Plan will affect

7  you and your best course of action.

8  Be sure to read the Plan as well as this Disclosure Statement.  If there are any

9  inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

10  **THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO**

11  **CONTAIN "ADEQUATE INFORMATION" CONCERNING THE PLAN.  ON _____,**

12  **2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS**

13  **DISCLOSURE STATEMENT, BASED UPON A FINDING THAT THIS DOCUMENT**

14  **CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY**

15  **THE PLAN TO MAKE AN INFORMED JUDGMENT REGARDING THE PLAN.  ANY**

16  **PARTY CAN NOW SOLICIT VOTES FOR OR AGAINST THE PLAN.**

17  **II.**

18  **DEFINITIONS AND RULES OF INTERPRETATION**

19  **2.1**    **Definitions.**

20  The following defined terms are used in this Disclosure Statement.  Any capitalized term

21  that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall

22  have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

23  2.1.1    <u>10,000 Santa Monica Project</u>.  The Project formerly owned by the Debtor,

24  located in the City of Century City, California, which was sold to Danske Bank pursuant to a Final

25  Order of the Bankruptcy Court for complete forgiveness of the SunCal Century City Loan

26  Agreement and $5.3 million, as more particularly described herein.

27

28

2.1.2   <u>Acquisitions</u>.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a Creditor of the Debtor, a SunCal Plan Proponents, the Distribution Agent and the Plan Trustee.

2.1.3   <u>Administrative Claim(s)</u>.  Any Claim against the Debtor or its Estate incurred after the applicable Petition Date for the Debtor but before the Effective Date, for any cost or expense of administration of the Case of the Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of  the Debtor under section 1930 of Title 28 of the United States Code.

2.1.4   <u>Administrative Claims Bar Date</u>.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date.

2.1.5   <u>Affiliate</u>.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.6   <u>Allowed</u>.  When used to describe Claim(s) or Interest(s) against the Debtor, such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.7   <u>Allowed Amount</u> shall mean:

A.      With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Debtor and is not otherwise subject to an

Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no Distribution shall be made on account of any such Administrative Claim;

B.     with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtor's Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtor's Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no Distribution shall be made on account of any such Claim; and

C.     with respect to any Interest, (i) the amount provided by or established in the records of the Debtor at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtor; or

(ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.8    Allowed Claim.  Except as otherwise provided in the Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.9    Allowed Interest.  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.10    Allowed Secured Claims.  All or a portion of a Secured Claim that is an Allowed Claim against the Debtor.

2.1.11    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is an Allowed Claim against the Debtor.

2.1.12    Assets.  All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.13    Available Cash.  The Debtor's Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims. The Available Cash shall consist of the Debtor's cash on hand as of the Effective Date.  All Available Cash shall be deposited into the applicable Distribution Account(s).

2.1.14    Avoidance Actions.  All Claims and defenses to Claims accruing to the Debtor and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551, including but not limited to the Lehman Preference Claim and the Potential SunCal Preference Claim.

2.1.15    Bankruptcy Code.  The United States Bankruptcy Code.

2.1.16    Bankruptcy Court.  The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise

1   jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

2   lieu thereof.

3           2.1.17   <u>Bankruptcy Rules</u>.  Collectively, as now in effect or hereafter amended

4   and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

5   Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

6           2.1.18   <u>Beneficial Interests</u>. means, collectively, the interests of the holders of

7   Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust

8   on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books

9   and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be

10  transferred, sold, assigned or transferred by will, intestate succession or operation of law.

11          2.1.19   <u>Business Day</u>.  Any day, other than a Saturday, a Sunday or a "legal

12  holiday," as defined in Bankruptcy Rule 9006(a).

13          2.1.20   <u>Case</u>.  The Chapter 11 case of the Debtor pending before the Bankruptcy

14  Court.

15          2.1.21   <u>Cash</u>.  Currency of the United States of America and cash equivalents,

16  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

17  transfers and other similar forms of payment.

18          2.1.22   <u>Chapter 11 Trustee</u>.  Steven M. Speier, the duly appointed trustee of the

19  Trustee Debtors in their pending Chapter 11 Cases.

20          2.1.23   <u>Claim</u>.  This term shall have the broadest possible meaning under

21  Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from the Debtor,

22  whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

23  matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right

24  to an equitable remedy for breach of performance if such breach gives rise to a right of payment

25  from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed,

26  contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

27          2.1.24   <u>Claims Bar Date</u>.  For any Claim, March 31, 2009, which was established

28  by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy

1    Court in the Debtor's Case, except for the following: (a) Administrative Claims, for which the

2    Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory

3    contracts or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of

4    claim is (i) 30 days after the date of entry of the order authorizing the rejection, or (ii) March 31,

5    2009, whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. §

6    101(27), for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the

7    Order for Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)),

8    and (d) claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the

9    last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or

10    March 31, 2009, whichever is later.

11    2.1.25    <u>Claims Objection Deadline</u>.  The  first business day following the sixtieth

12    (60th) day after the Effective Date.

13    2.1.26    <u>Class</u>.  Each group of Claims or Interests classified in Article IV of the

14    Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

15    2.1.27    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered

16    in the Bankruptcy Court's docket.

17    2.1.28    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court

18    confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code with

19    respect to Plan.

20    2.1.29    <u>Creditor</u>.  Any Person who is the Holder of a Claim against the Debtor that

21    arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become

22    due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the

23    kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

24    2.1.30    <u>Debtor</u>.  SunCal Century City, LLC, a Delaware limited liability company,

25    a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

26    2.1.31    <u>Debtors</u>.  Collectively, the Voluntary Debtors and the Trustee Debtors, as

27    specifically defined in Exhibit "1" attached to the Disclosure Statement.

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1               2.1.32      Debtor(s)- in-Possession.  The Voluntary Debtors in their capacity as

2 representatives of their respective Estates in their respective Chapter 11 Cases.

3               2.1.33      Disclosure Statement.  The document accompanying the Plan for the

4 Debtor that is entitled "Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan

5 Proponents In The Chapter 11 Case Of SunCal Century City" and with all accompanying exhibits.

6               2.1.34      Disputed Claim(s).  All or any part of a Claim other than any Allowed

7 Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

8 with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

9 is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

10 (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

11 Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

12 for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

13 order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

14 Deadline, which Adversary Proceeding, objection, or request for estimation has not been

15 dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

16 "Disputed Claim" pursuant to the Plan.

17              2.1.35      Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor that is

18 either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or

19 subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However,

20 pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not

21 an allowed secured claim due only to the failure of any entity to file a proof of such claim under

22 section 501 of this title."

23              2.1.36      Disputed Secured Claim(s). That part of a Disputed Claim against the

24 Debtor that is a Secured Claim.

25              2.1.37      Distribution(s).  Payments to Holders of Allowed Claims provided for

26 under the Plan.

27              2.1.38      Distribution Agent.  The entity that is responsible for making Distributions

28 under the Plan, which shall be Acquisitions.

2.1.39    Distribution Account.  A separate account to be established by the Plan Trustee at an FDIC insured bank into which the Debtor's Available Cash shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to the Debtor shall be deposited.

2.1.40    Distribution Date.  With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan.

2.1.41    Effective Date. A date selected by the SunCal Plan Proponents that is not later than the thirtieth (30th) calendar day after the Confirmation Date of the Plan, provided that there is no stay pending appeal of the Confirmation Order, in which case the Effective Date shall be tolled until the dissolution of such stay.  The Effective Date may be extended by the Bankruptcy Court after notice and hearing to all parties in interest.

2.1.42    Estate.  The bankruptcy estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code.

2.1.43    Fee Applications.  Applications of Professional Persons under Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Debtor Case.

2.1.44    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Debtor Case.

2.1.45    Filed.  Delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

2.1.46    Final Order.  A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court that has not been reversed, stayed, modified or amended.

2.1.47    General Unsecured Claim.  A Claim against the Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

2.1.48    Holder.  The beneficial owner of any Claim or Interest against the Debtor.

2.1.49    Insider.  The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates, including the Lehman Entities.

1               2.1.50     <u>Interest</u>.  Any equity security interest in the Debtor within the meaning, of

2    Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership

3    interest in any of the Debtor, whether in the form of common or preferred stock, stock options,

4    warrants, partnership interests, or membership interests.

5               2.1.51     <u>LBHI</u>.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

6    company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

7    in the Bankruptcy Court for the Southern District of New York.

8               2.1.52     <u>LCPI</u>.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

9    bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

10             2.1.53     <u>Lehman Adversary Proceeding</u>.  The Debtors' pending adversary

11    proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

12    action including equitable subordination, fraudulent inducement, fraudulent conveyances and

13    preferential transfers (including the Lehman Preference Claim).

14             2.1.54     <u>Lehman ALI</u>.  Lehman ALI, Inc.

15             2.1.55     <u>Lehman Entities</u>.  The Lehman Lenders, the Lehman Equity Members and

16    LBHI.

17             2.1.56     <u>Lehman Equity Members</u>.  Lehman Entities that own direct or indirect

18    membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

19    Marblehead.

20             2.1.57     <u>Lehman Lenders</u>.  Lehman ALI, LCPI, Northlake Holdings, and OVC

21    Holdings.

22             2.1.58     <u>Lehman Preference Claim</u>.  The fourth cause of action in the Lehman

23    Adversary Proceeding seeking to avoid and recover allegedly preferential transfers made by the

24    Debtor to Lehman ALI in the amount of $10,628,948.64.

25             2.1.59     <u>Lehman Representatives</u>.  The individuals that controlled the Lehman

26    Entities.

27

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1          2.1.60    Lehman Successor(s).  Entities other than the Lehman Lenders that either

2   assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

3   Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

4          2.1.61    Litigation Claims.   Any and all interests of the Debtor in any and all

5   Claims, rights, causes of action which have been or may be commenced by the Chapter 11 Trustee

6   and/or the Plan Trust, as the case may be, including, but not limited to the Lehman Preference

7   Claim and the Potential SunCal Preference Claim.

8          2.1.62    Litigation Recoveries.  Any Cash or other property received by the

9   Chapter 11 Trustee, the Plan Trustee and/or the Plan Trust as the case may be, including but not

10   limited to, the Lehman Preference Claim and the Potential SunCal Preference Claim.

11          2.1.63    Maximum Distributions.  A Distribution to a Holder of an Allowed

12   General Unsecured Claim against  the Debtor equal to one hundred percent (100%) of the amount

13   of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of

14   the Debtor's Order for Relief Date.

15          2.1.64    MB Firm.  Miller Barondess, LLP.

16          2.1.65    Net Litigation Recoveries.  Litigation Recoveries less associated

17   Administrative Claims, Post-Confirmation Expenses and contingency fees incurred in connection

18   with such Litigation Recoveries.

19          2.1.66    Orders for Relief Date.  The following are dates that orders for relief were

20   entered for each of the Trustee Debtors:

21

| SunCal Oak Valley | January 6, 2009 |
|---|---|
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.67    <u>Person</u>.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.68    <u>Petition Dates</u>.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.69    <u>Plan</u>.  The Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponents In The Chapter 11 Case Of SunCal Century City, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.70    <u>Plan Period</u>. The period from the Effective Date to the Plan Termination Date.

-13-

2.1.71    Plan Reserve.  A reserve in the amount of $300,000 to be established from the Available Cash on the Effective Date.  Up to $200,000 of such reserve shall be used for payment of costs associated with the prosecution of the Lehman Preference Claim and payment of Post Confirmation Expenses and up to $100,000 of such reserve shall be used for payment of Trustee Debtors' Committee's fees and costs associated with objections to Claims and prosecution of the Potential SunCal Preference Claim.

2.1.72    Plan Termination Date. The fifth (5th) anniversary date of the Effective Date of the Debtor, unless the Plan elects an earlier date.

2.1.73    Plan Sponsor.  The entity that has committed to cause and/or arrange the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

2.1.74    Plan Trust.  A liquidating trust to be established pursuant to Article X of the Plan prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtor as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtor's Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer), distribution the Available Cash to Holders of Allowed Claims and to otherwise consummate the Plan.

2.1.75    Plan Trust Assets. All assets within the Debtor's Chapter 11 estate.

2.1.76    Plan Trust Beneficiaries.   The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Assets in accordance with the terms of the Plan.

2.1.77    Plan Trustee. The Person or entity appointed pursuant to the Plan to act as trustee of and to administer the Plan Trust, which shall be Acquisitions.

2.1.78    Post-Confirmation Expenses.  The expenses incurred by the Plan Trust and the Plan Trustee, and the fees and expenses incurred by the Trustee Debtors' Committee's professionals and the Plan Trustee's professionals following the Confirmation Date for the purpose of (i) funding the costs of the Lehman Preference Claim; (ii) objecting to and resolving Disputed

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

Claims; (iii) effectuating Distributions under the Plan; and (iv) otherwise consummating the Plan

and closing the Debtor's Chapter 11 Case.

2.1.79    <u>Potential SunCal Preference Claim</u>.  Potential preference claims against

SunCal Affiliates pursuant to Section 547 of the Bankruptcy Code.

2.1.80    <u>Priority Claim</u>.  Any Claim, other than an Administrative Claim or a Tax

Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.81    <u>Pro Rata</u>.  Proportionately, so that with respect to any Distribution in

respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

such Distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.82    <u>Professional</u>.  A Person or Entity (a) employed by the Debtor, the Trustee

Debtors' Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the

Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant

to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation

and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the

Bankruptcy Code.

2.1.83    <u>Professional Fees</u>.  All Allowed Claims for compensation and for

reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.84    <u>Projects</u>.  The Debtors' residential real estate development projects and

other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement

including the 10,000 Santa Monica Project, which was sold post-petition pursuant to a Final Order

of the Bankruptcy Court

2.1.85    <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a

subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.86    <u>Schedules</u>.  The schedules of assets and liabilities and list of equity

security holders Filed by the Debtor, as required by Section 521(1) of the Bankruptcy Code,

1    Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from

2    time to time.

3            2.1.87    Secured Claim.  Any Claim, including interest, fees, costs, and charges to

4    the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

5    unavoidable Lien on the Debtor's Assets.

6            2.1.88    SunCal.  The SunCal Companies, a trade name for Acquisitions and its

7    Affiliates.

8            2.1.89    SunCal Century City.  SunCal Century City, LLC, a Delaware limited

9    liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

10            2.1.90    SunCal Century City Loan Agreement.  A certain Loan Agreement by and

11    between the Debtor, as borrower and Lehman ALI, as agent and sole lender pursuant to which

12    Lehman ALI made a loan in the aggregate maximum principal amount of approximately

13    $120,000,000.  The SunCal Century City Loan Agreement was allegedly secured by a first-priority

14    deed of trust on the 10000 Santa Monica Project.  The SunCal Century City Loan Agreement had

15    an alleged balance due of $120,000,000.00 as of April 1, 2009.  Danske Bank was formerly the

16    Holder of the Century City Loan Agreement and related deed of trust, which has been satisfied in

17    full pursuant to Danske Bank's purchase of the 10000 Santa Monica Project for $5.3 million, less

18    payment of an Unpaid Real Property Tax Claim of $1.6 million.

19            2.1.91    SunCal Management.  SunCal Management, LLC, a Delaware limited

20    liability company, and the former property manager for the Projects, which has been succeed by

21    Argent Management.

22            2.1.92    SunCal Plan Proponents.  The Voluntary Debtors, in their capacity as

23    debtors and debtors in possession in their respective Chapter 11 cases, and Acquisitions as a

24    creditor and party-in-interest, that are proposing the Plan.

25            2.1.93    Tax.  Any tax, charge, fee, levy, impost or other assessment by any

26    federal, state, local or foreign taxing authority, including, without limitation, income, excise,

27    property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1   estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

2   additions attributable to, or imposed on or with respect to such assessments.

3           2.1.94     <u>Tax Claim</u>.  Any Claim for any Tax to the extent that it is entitled to

4   priority in payment under Section 507(a)(8) of the Bankruptcy Code.

5           2.1.95     <u>Trustee Debtor(s)</u>. The following Debtors, individually or collectively,

6   that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

7   Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

8   Torrance, and SunCal Oak Knoll.

9           2.1.96     <u>Trustee Debtors' Committee</u>.  The Official Committee of Unsecured

10  Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

11  Bankruptcy Code.

12          2.1.97     <u>Unsecured Claim</u>. An Unsecured Claim is any Claim that is not an

13  Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

14          2.1.98     <u>Voluntary Debtor(s)</u>.  The following  Chapter 11 debtors and debtors-in-

15  possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

16  Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

17  Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

18  Rio and Tesoro.

19      **2.2**    **<u>Rules of Construction.</u>**

20      For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or

21  in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

22  singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

23  masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

24  Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means

25  such document or schedule, as it may have been or may be amended, modified or supplemented

26  pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

27  entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

28  or this Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

1  and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

2  in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

3  the Plan or this Disclosure Statement, any reference in the Plan or this Disclosure Statement to a

4  contract, instrument, release, indenture, agreement, or other document being in a particular form or

5  on particular terms and conditions means that such document shall be substantially and materially

6  in such form or substantially and materially on such terms and conditions; (h) any reference in the

7  Plan or this Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

8  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

9  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

10  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

11  express terms of the Plan or this Disclosure Statement or any other provision in this Section 2.2.

12      **2.3**    **Exhibits.**

13      All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

14  therein.

15  **III.**

16  **PLAN CONFIRMATION DEADLINES**

17      The Bankruptcy Court has not confirmed the Plan described in this Disclosure Statement.

18  Accordingly, the terms of the Plan are not binding on anyone.  However, if the Bankruptcy Court

19  confirms the Plan, then the Plan will be binding on the Debtor(s), the Plan Trustee, and on all

20  Creditors and Interest Holders in such Cases.

21      **3.1**    **Time and Place of the Confirmation Hearing.**

22      The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan

23  will take place at 411 West Fourth Street, Santa Ana, CA 92701-4593 on October 24, 2011, at 9:30

24  a.m. in Courtroom 5A.

25      **3.2**    **Deadline for Voting for or Against the Plan.**

26      If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

27  return the ballot to:

28  Winthrop Couchot Professional Corporation

-18-

660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Facsimile: (949) 720-4111
Attn: P.J. Marksbury

Your ballot must be **received by** September 26, 2011**,** or it will not be counted.

**3.3     Deadline for Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court, and

served upon the following parties so that they are received by September 26, 2011:

| | |
|---|---|
| **Counsel to the Voluntary Debtors** | Paul J. Couchot<br>Winthrop Couchot Professional Corporation<br>660 Newport Center Drive, Suite 400,<br>Newport Beach, CA 92660 |
| **Authorized Agent for Voluntary Debtors** | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |
| **Counsel for SunCal Management LLC and SCC Acquisitions Inc**. | Ronald Rus<br>Rus Miliband & Smith A<br>Professional Corporation<br>2211 Michelson Drive, Seventh Floor<br>Irvine, California 92612 |
| **Authorized Agent for SunCal Management and SCC Acquisitions, Inc**. | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |

**3.4     Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact the

Voluntary Debtors' counsel, Winthrop Couchot Professional Corporation, 660 Newport Center

Drive, Suite 400, Newport Beach, CA 92660, Attn: Paul J. Couchot, (949) 720-4100; Peter W.

Lianides, (949) 720-4155; Payam Khodadadi, (949) 720-4160.

**3.7     Disclaimer.**

The information contained in this Disclosure Statement is provided by the SunCal Plan

Proponents. The SunCal Plan Proponents represent that everything stated in this Disclosure

Statement is true to the best of their knowledge. The Bankruptcy Court has not yet determined

-19-

1   whether or not the Plan is confirmable and makes no recommendation as to whether or not you

2   should support or oppose the Plan.

3        The discussion in this Disclosure Statement regarding the Debtor may contain "forward

4   looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

5   Such statements consist of any statement other than a recitation of historical fact and can be

6   identified by the use of forward looking terminology such as "may," "expect," "anticipate,"

7   "estimate," or "continue," or the negative thereof or other variations thereon or comparable

8   terminology.  The reader is cautioned that all forward looking statements are necessarily

9   speculative and there are certain risks and uncertainties that could cause actual events or results to

10  differ materially from those referred to in such forward looking statements.  The liquidation

11  analyses, distribution projections, projections of financial results and other information are

12  estimates only, and the timing, amount and value of actual distributions to Creditors may be

13  affected by many factors that cannot be predicted.  Therefore, any analyses, estimates, or

14  projections may or may not turn out to be accurate.

15      3.8      **A Summary of All of the Alleged Claims Against the Debtor and a Summary of**

16               **the Debtor's Primary Assets.**

17      The asserted Claims against the Debtor consist of Administrative Claims (including unpaid

18  Professional Fees) in the approximate amount of $2,603,064 and General Unsecured Claims in the

19  approximate amount of $4,390,043.  There are also ongoing Professional Fees, which continue to

20  accrue.  The SunCal Plan Proponents believe that these balances may be reduced through claims

21  objections resulting in lower "Allowed" claims balances.

22      Throughout the Chapter 11 Case, the attorneys for the Trustee Debtors' Committee have

23  been administering objections to Claims.  The remaining potential Disputed Claims identified by

24  the attorneys for the Trustee Debtors' Committee total $2,507,660.26 in Administrative Claims of

25  SunCal Affiliates and $1,023,802.98 in General Unsecured Claims of SunCal Affiliates.

26  Moreover, the Trustee Debtors' Committee has filed a motion objecting to Bond Safeguard's

27  contingent claim.

28

1      The Debtor's Available Cash on hand as of July 6, 2011, 2011 was $3,568,824.79.  As

2  stated herein, the Plan Reserve is in the amount of $300,000.  Based on the foregoing, the

3  Distribution to Holders of General Unsecured Claims from the Available Cash would be 15% if the

4  Disputed Claims referenced above are Allowed and 100% if the Disputed Claims referenced above

5  are Disallowed.  The foregoing percentage should not significantly decrease since there are no on

6  on-going Administrative Claims other than limited discovery being conducted by the MB Firm in

7  connection with the Lehman Preference Claim, which is included in the fee estimated of unpaid

8  Professional Fees.

9      As stated herein, the Debtor also has certain Litigation Claims.  In particular, the fourth

10  cause of action in the Lehman Adversary Proceeding seeks to avoid and recover the Lehman

11  Preference Claim in the amount of $10,628,948.64 from Lehman ALI.  Furthermore, the Debtor

12  made transfers in the amount of $747,727.13 to SunCal Affiliates (SunCal Management and

13  Acquisitions) in the one year period preceding the Debtor's Petition Date, which may be avoided

14  and recovered.  The SunCal Plan Proponents, however, have done a preliminary investigation of

15  the transfers made to the SunCal Affiliates and believe that valid defenses exist to such transfers,

16  including but not limited to new value and ordinary course of business defenses.

17      Although the Debtor also made transfers in the aggregate amount of $190,087 to non-

18  insiders within the 90 day preference period preceding the Petition Date, the pursuit of such

19  transfers do not appear to be economical and the SunCal Plan Proponents do not believe that any

20  actions will be brought to avoid and recover any of such transfers.

21      Obviously, recovery on the Lehman Preference Action and/or the Potential SunCal

22  Preference Action can significantly increase the Distributions to Holders of Allowed Unsecured

23  Claims.  Other than the Plan Reserve, the Debtor's funds will not be used to fund the Potential

24  SunCal Preference Claim, other than costs, and any such action shall be required to be prosecuted

25  on a contingency fee basis.  Accordingly, the range above may increase from 15% depending on the

26  recovery, if any, from the Lehman Preference Claim and the Potential SunCal Preference Claim.

27

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

# IV.

## FACTUAL BACKGROUND OF THE DEBTORS

### 4.1    The Formation of the Debtors and the Projects.

#### 4.1.1    Overview of the Debtors and their Projects.

The Debtor is one of twenty-six entities (collectively the "Debtors") that were formed pursuant to a joint venture between Affiliates of the SunCal Companies ("SunCal") and the Lehman Entities (the "SunCal/Lehman Joint Venture"). The Debtors' role in the venture was to own and develop the large residential projects that were the core assets in this joint undertaking.

At the inception of SunCal/Lehman Joint Venture, it was agreed that SunCal would be the developer/manager of the Projects and the Lehman Entities would provide the necessary capital. Attached hereto as Exhibit "1" is a general description of the Debtors' Projects, including the, and the Debtors' other primary Assets, excluding Cash and the Litigation Claims, and a description of the loans for the Projects.

All of the Debtors are Affiliates of Acquisitions and SCC LLC.  Some of the Debtors directly own the Projects, while others serve as holding companies, owning Allowed Interests in the Debtors that hold title to the Projects.  SunCal Management, LLC, a SunCal Affiliate, has management contracts with respect to all of the Projects and manages the Debtors' day-to-day business affairs.

The seventeen Debtors who are referred to herein as the "Voluntary Debtors" are wholly owned by SunCal Affiliates, and consequently the SunCal Affiliates have full corporate governance authority over these entities.  The Voluntary Debtors own eleven (11) of the Projects. As described herein, SJD Partners formerly owned the Pacific Point Project.

In the case of the nine Trustee Debtors, the SunCal Affiliates and the Lehman Affiliates initially shared ownership equally (50% each). However, after the Petition Date, the SunCal Affiliates became the owner of hundred percent (100%) of the equity in two of the nine Trustee Debtors - SunCal Heartland and SunCal Marblehead.  As of the Petition Date, the Trustee Debtors own nine (9) Projects.  However, as mentioned, the 10,000 Santa Monica Project was sold postpetition pursuant to a Final Order of the Bankruptcy Court.  Attached hereto as Exhibit "2" is a

1    chart that sets forth the appraised value of the Debtor's Projects.  This chart lists both the Lehman

2    Lenders' value estimates and SunCal's valuation estimates.[2]

3        **4.2      Factual Circumstances Leading to the Filing of the Debtors' Chapter 11 Cases.**

4            **4.2.1    Introduction**.

5        In this section of the Disclosure Statement, the SunCal Plan Proponents have provided a

6    description of the relationship between the Debtors and the Lehman Entities, and more specifically

7    the Debtor's relationship with Lehman ALI and Danske Bank.

8            **4.2.2    Background of the SunCal Companies**.

9        SunCal is a family-owned and operated real estate business that has been successfully

10   developing properties throughout the western United States for over 70 years.  SunCal's business

11   focuses upon the "development" of residential land. A typical SunCal development begins with the

12   acquisition of one or more parcels of raw land. Thereafter, the SunCal team develops a master plan

13   for the acreage that incorporates streets, homes, parks, schools and commercial areas, and then it

14   works with the applicable municipal planning authorities (the city, county, state and federal) to

15   secure the necessary approvals or "entitlements" to gain approval of the Plan. This process, which

16   requires the assistance of land planners, civil engineers, architects, lawyers, and other land

17   specialists, takes a period of years. Once the master plan is approved, SunCal provides for the

18   grading of the project and the installation of the foundational infrastructure (streets, utilities, etc.)

19   and then sells the lots or parcels within the project to merchant builders.

20           **4.2.3    The Origins of the SunCal/Lehman Joint Venture**.

21       SunCal historically financed its projects with loans and/or equity from a number of

22   different sources.  However, beginning in 1997, an increasing number of SunCal's projects were

23   financed by the Lehman Entities, as Mark Walsh ("Walsh"), the head of LBHI's Global Real

24   Estate Group, began cultivating a business relationship with SunCal's principals.

25       By 2003, the Lehman Entities and SunCal had entered into joint ventures involving

26   approximately fifteen projects.  By 2007, that number had grown to over forty, and the Lehman

27   Entities had become, with limited exceptions, the exclusive provider of financing for the SunCal

28

---

[2] Values may have changed since these analyses were prepared.

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    Projects pursuant to a written agreement executed in 2006.  The Lehman Entities also consisted of

2    the Lehman Equity Members that either directly or indirectly owned a fifty percent (50%) equity

3    interest in all nine of the Trustee Debtors.

4          In their dealings with SunCal, the Lehman Representatives made no distinction between

5    Projects financed by Lehman ALI and Projects financed by LCPI. They also made no distinction

6    between the Debtors in which Lehman Equity Members held 50% equity memberships or the

7    Debtors in which the Lehman Entities held no equity membership interest.  As agents of the

8    financial partner in the parties' joint venture, the Lehman Representatives would determine which

9    Lehman Entity would provide financing on which Projects, and would dictate the structure that the

10   financing would take, according to whatever suited the Lehman Entities' needs.

11          **4.2.4    Lehman's Effective Control over the Management of the Debtors and**

12                   **Promises of Ongoing Funding.**

13          Prior to the market downturn in the middle of 2007, Lehman Representatives afforded

14   SunCal substantial discretion in the management and development of the Projects.  The Debtors

15   would contract with third-party vendors to perform grading, health and safety compliance,

16   construction, landscaping, and other necessary services on the Project sites, and they would work

17   with the local municipalities to obtain the necessary entitlements and other authorizations

18   necessary to proceed with development.  The Lehman Representatives, SunCal and the Debtors

19   would discuss anticipated quarterly expenditures at periodic budget meetings, and , as expenses

20   were incurred each month, SunCal and the Debtors would submit requests for payment to the

21   Lehman Representatives, supported by the necessary documentation. The Lehman Representatives

22   would then provide the funding necessary to pay these expenses.

23          During the third quarter of 2007, the foregoing management and payment dichotomy

24   changed, after the real estate market experienced a sudden downturn, and many of the Projects

25   significantly declined in value.  In response to this dramatic economic change, a series of high

26   level discussions occurred between SunCal's representatives and the Lehman Representatives --

27   including Walsh, Paul Hughson ("Hughson") and Frank Gilhool ("Gilhool"), the Managing

28   Directors of Lehman's Global Real Estate.  In these discussions, SunCal's representatives, acting

1   on behalf of the Debtors, expressed concerns about the loans on the Projects being out of balance,

2   and suggested shutting down the Projects, or at least slowing the pace of development.  However,

3   Walsh specifically instructed SunCal not to slow down or stop work.  He assured SunCal that the

4   Lehman Entities would provide the necessary funding to pay vendors and to keep the development

5   of the Projects moving forward.

6        The foregoing assurances of payments were confirmed in numerous telephone

7   conversations between Gilhool and SunCal's COO, Frank Faye ("Faye"), SunCal's General

8   Counsel, Bruce Cook ("Cook"), Steve Elieff and/or Bruce Elieff that took place during 2007 and

9   2008. In each exchange, Gilhool assured SunCal that the Lehman Entities were committed to

10  funding the debts and obligations being incurred at the Projects and they continued to insist that

11  work proceed.

12       During this time frame, the Lehman Representatives became much more "hands on,"

13  scrutinizing and approving all budgets and expenses through a new control and approval structure.

14  Under the new structure, SunCal would submit budgets to the Lehman Representatives on a

15  weekly basis and explain, during period conference calls, what Project payables they believe had to

16  be paid and what work had to be performed on the Projects.  The Lehman Representatives would

17  then unilaterally decide what future work would proceed, the Lehman Representatives would

18  authorize the work and the Lehman Representatives would decide what payables would be paid

19  timely by designating them as "urgent," and what other payables were not urgent and hence would

20  not be paid on a timely basis.  However, even under this new Lehman controlled management and

21  payment regime, the Lehman Representatives made it clear that all payables being incurred would

22  be funded.

23      **4.2.5**    **The 2008 Restructuring Agreement.**

24       By the fall of 2007, both SunCal and the Lehman Representatives contemplated entering

25  into a restructuring agreement in the near term, with a closing to occur no later than January or

26  February of 2008.  However, this transaction was delayed by the Lehman Entities' extensive

27  documentation demands until May 23, 2008. On this date, SunCal and most of the Debtors finally

28  entered into an omnibus "Restructuring Agreement" with LBHI, Lehman ALI and the other

-25-

1    Lehman Entities.  The same Lehman Representative signed the Restructuring Agreement on behalf

2    of all of the Lehman Entities.

3            Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect to each

4    Loan," committed, among other things, to: (1) make advances under existing loans to fund the

5    continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the

6    accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid

7    for their work; and (3) to close the transaction, whereby newly-created Lehman Entities would

8    assume the debt and obligations of the Projects.

9            As originally executed in May 2008, the Restructuring Agreement applied to twelve of the

10   twenty Projects (as well as several other projects not at issue in the Lehman Adversary

11   Proceeding):  (1) Acton Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald

12   Meadows; (5) Heartland; (6) Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley;

13   (10) Pacific Point; (11) Ritter Ranch; and (12) Summit Valley.  The Debtors that owned and/or

14   held equity interests in the entities that owned these Projects were signatories to the May 2008

15   agreement.[3]

16           Between May and August 2008, the parties agreed to add four additional projects to the

17   Restructuring Agreement: (1) Del Rio; (2) Joshua Ridge; (3) Palm Springs Village; and (4) Tesoro

18   Burnham, and the four Debtors associated with these Projects—SunCal Del Rio, SCC

19   Communities, SunCal PSV, and SunCal Tesoro.  Only four Projects were not included in the

20   Restructuring Agreement: Century City, Delta Coves, Oak Knoll and Del Amo.  Accordingly, the

21   four Debtors associated with these Projects—SunCal Century City, Delta Coves, SunCal Oak

22   Knoll and SunCal Torrance—were not signatories thereto.  Lehman ALI was the lender on each of

23   these Projects and, and as with the other Projects, Lehman Ali continued to insist that these four

24   _____

25   [3] Specifically, the Restructuring Agreement was entered into by, among others, the "Borrowers," "Grantors" and
     "Pledgors," as defined in Annex 1 thereto.  The "Borrowers" included SunCal Marblehead, SunCal Heartland, SunCal
     Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SCC Palmdale, SunCal I, SunCal III, and SunCal
     Bickford.

26   

27   The "Grantors" included SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners,
     Palmdale Hills, SunCal Bickford, SunCal Acton, SunCal Summit and SunCal Emerald, and Debtors SunCal Beaumont
     and SunCal Johannson.

28   The "Pledgors" included SCC Palmdale, SunCal I, SunCal Summit and SJD Development.

1  debtors  proceed with the development of the four Projects, it approved all expenses, and it

2  continually provided assurances of payment.

3  ### 4.2.6    The Lehman Lenders Hire Radco.

4  Subsequent to the execution of the Restructuring Agreement, Lehman ALI arranged for a

5  third party, Radco, to directly settle outstanding contractor payables, as its agent.  Radco was

6  provided some limited funding and authority to negotiate settlements, and did in fact reach

7  settlement with a number of creditors.  The funding for these settlements, whether the debts related

8  to Lehman ALI or LCPI funded Projects, came from the same source.  Lehman ALI and LCPI also

9  provided approval for new work on the Projects, and Lehman ALI paid for some of this work.

10  However, this funding was minimal and it soon stopped.

11  In August 2008, Lehman ALI withdrew funding and settlement authority from Radco,

12  leaving millions of dollars in outstanding contractor payables unresolved, notwithstanding the

13  contrary provisions in the Restructuring Agreement.  Leman Ali's actions also impaired the

14  Debtors' ability to resolve ongoing public health and safety issues arising at the Projects.

15  Ultimately,  only a fraction of the total outstanding payables were resolved, contrary to the  past

16  promises made by Lehman Representatives.

17  ### 4.2.7    The Lehman Lenders' Failure to Close on the Settlement Agreement.

18  Pursuant to the terms of the Restructuring Agreement, the parties agreed to enter into a

19  Settlement Agreement, the form of which was attached to the Restructuring Agreement.  The

20  Settlement Agreement provided for the transfer of the Projects included within the Restructuring

21  Agreement to a series of newly formed Lehman-controlled entities (each with "SCLV" in its name,

22  for "SunCal-Lehman Venture"). The agreement further provided that the entity taking title to the

23  Project would assume the  Lehman Lender debt obligations associated with the Projects, assume

24  certain bond obligations associated with the Projects, and provide indemnifications to SunCal and

25  the Debtors for unpaid claims.

26  On August 25, 2008, the Settlement Agreement and a series of related documents were

27  formally executed by SunCal and the applicable Lehman Lenders and Lehman Equity Members at

28  a meeting held in Los Angeles on August 25, 2008.  Once these documents were signed, all that

1   remained was the mechanical closing of the series of transactions described in the Settlement

2   Agreement. Since all of the conditions precedent to the closings had been satisfied, or could have

3   been satisfied at the meeting, this should have occurred at the August 25, 2008 meeting. However,

4   the Lehman Representative asked SunCal to extend the closing date for thirty days, to September

5   30, 2008. Accordingly to the Lehman Representatives, this short extension would enable them to

6   secure certain outstanding third party consents. Although SunCal knew these third party consents

7   were readily available, within a few days they agreed to this extension, believing the request was

8   made in good faith.

9          **4.2.8**    **The Lehman Lenders' Undisclosed Sale of Most of the Debtors' Loans**.

10        As explained above, the Settlement Agreement was duly executed by all parties at a formal

11  closing meeting held on August 25, 2008. When the parties signed this agreement, which was a

12  binding contract, they both represented that they intended and had the power and capacity to

13  perform all of the obligations undertaken therein. However, in the case of the Lehman Entities, this

14  representation was later discovered to be false.

15        When the closing occurred on August 25, 2008, the Lehman Lenders had already sold the

16  very obligations they were agreeing to assume and restructure in the Settlement Agreement  to

17  either Fenway Capital, Lehman Re, and in the case of SunCal Century City, Danske Bank, pursuant

18  to repurchase agreement.

19          **4.2.9**    **Alvarez and Marsal Take Over Control of the Lehman Entities After**

20                   **the Chapter 11 Filings of LBHI and LCPI.**

21        LBHI filed for bankruptcy in September 2008 and LCPI filed for bankruptcy in October

22  2008.  After LBHI's filing, Bryan Marsal ("Marsal") of Alvarez & Marsal ("A&M") was appointed

23  to serve as LBHI's Chief Restructuring Officer. Marsal and A&M are in charge of liquidating the

24  now defunct Lehman Entities, including Chapter 11 debtors LBHI and LCPI, and the non-bankrupt

25  Lehman Lenders (Lehman ALI, OVC, and Northlake Holdings, as well as the non-bankrupt

26  Lehman Equity Members.

27        Although A&M was not employed until after the events that occurred on August 25, 2008

28  described above, it should be noted that A&M hired the same law firm that represented the

1    Lehman Lenders in the August 25, 2008 meeting – Weil, Gotshal & Manges, LLP. Moreover, as

2    more fully explained herein, it was A&M that directed Lehman Ali not to perform its contractual

3    obligations under the Settlement Agreement after September of 2008.

4         LBHI's bankruptcy filing and the Lehman Lenders refusal, at A&M's direction, to close the

5    transactions provided for under the Settlement Agreement as agreed, were not small matters. They

6    severely damaged the Debtors. Although the Debtors were not proceeding with any new

7    construction or development, the Debtors were still required to expend significant sums on site

8    security, erosion control, property taxes and other measures in order to prevent the Projects from

9    becoming a public safety hazard, and in order to avoid the loss of valuable entitlements, and to

10   mitigate penalties and fines being incurred by the Projects.  Although SunCal and the Debtors

11   repeatedly requested that the Lehman Entities pay for critical health and safety and value

12   preservation measures on the Projects, these efforts were unavailing.

13        Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Robert

14   Brusco, an authorized agent of the Lehman Entities, nearly two dozen letters requesting that the

15   Lehman Lenders provide the funding necessary to address critical needs on the Projects as

16   promised.  A summary of these health and safety notices are attached hereto as Exhibit "5".  The

17   Lehman Entities ignored these requests until November 2008, when Brusco, purportedly on behalf

18   of the Lehman Lenders, delivered the message that the Lehman Lenders were unwilling to fund the

19   Projects and that, instead, they intended to foreclose on all of the Projects.

20        As a result, as set forth in Exhibit "4," there are now over 240 vendors, municipalities,

21   counties and bonding companies claiming over $400 million in work, improvements and property

22   tax claims against the Projects.  Substantially all of these sums are due to work performed or

23   bonded at Lehman's request based upon Lehman's promises of payment.

24

25

26

27

28

# V.

## SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES

### 5.1    Voluntary Debtors.

#### 5.1.1    Joint Administration of the Voluntary Debtors and the Trustee Debtors.

Since their respective Petition Dates, the seventeen (17) Voluntary Debtors have continued to operate as "debtors-in-possession," subject to the supervision of the Bankruptcy Court and in accordance with the Bankruptcy Code.  The Voluntary Debtors are authorized to operate their businesses in the ordinary course during the Chapter 11 proceedings.  Transactions outside the ordinary course of business must be approved by the Bankruptcy Court.

The Voluntary Debtors' Cases are being jointly administered pursuant to orders entered on November 19, 2008 and December 9, 2008.  The Voluntary Debtors' Cases are being jointly administered with the Trustee Debtors' cases pursuant to an order entered on March 11, 2009.

The Voluntary Debtors have employed Winthrop Couchot Professional Corporation as their general insolvency counsel, and the MB Firm as their special litigation counsel.

### 5.2    The Trustee Debtors and Their Professionals and the Trustee Debtors' Committee and Its Professionals.

Orders for Relief were entered in the involuntary cases beginning on January 6, 2009.  The Trustee Debtors are represented by their duly-appointed Chapter 11 Trustee, Mr. Steven M. Speier pursuant to orders of the Bankruptcy Court entered on January 15, 2009.  The Trustee Debtors' Cases were shortly thereafter jointly administered with the Voluntary Debtors Cases pursuant to an Order of the Court.

The Chapter 11 Trustee has employed the Lobel Firm as the Chapter 11 Trustee's general insolvency counsel and the MB Firm, as special litigation counsel and Squar Milner, LLP as its accountants

The Trustee Debtors' Committee has employed Weiland, Golden, Smiley, Wang Ekvall & Strok as its general insolvency counsel.

1         **5.3**     **SunCal's Discovery of the Danske Bank Repo.**

2         In the Debtor's efforts to sell the 10,000 Santa Monica Project to D.E. Shaw during the

3 course of the case and through independent discovery efforts, it was discovered that the SunCal

4 Century City Loan had been sold to Danske Bank years earlier pursuant to a repurchase agreement.

5 Therefore, Danske Bank was the true holder of the SunCal Century City Loan Agreement and filed

6 a claim against the Debtor in the amount of $120,000,000

7         **5.4**     **The Sale of the 10,000 Santa Monica Project to Danske Bank.**

8         The Debtor owned the 10,000 Santa Monica Project and this project was subject to an

9 alleged first priority deed of trust held by Danske Bank pursuant to the SunCal Century City Loan

10 Agreement.  However, during the Chapter 11 case the 10,000 Santa Monica Project was sold to

11 Danske Bank pursuant to a settlement agreement, in full satisfaction of the amounts owed under

12 the SunCal Century City Loan Agreement, plus a payment by Danske Bank of $5.3 million.

13 Pursuant to this settlement agreement, the Debtor retained the right to pursue the Lehman

14 Preference Claim against Lehman ALI.  Danske Bank has acknowledged that it has not received

15 any of the payments that were a part of the Lehman Preference Claim.

16 **VI.**

17 **TREATMENT OF UNCLASSIFIED CLAIMS**

18         **6.1**     **Introduction**.

19         As required by the Bankruptcy Code, the Plan places Claims and Interests into various

20 Classes according to their right to priority.  However, certain types of Claims are not classified in

21 any Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the

22 Code.  They are not considered impaired and they do not vote on the Plan, because they are

23 automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal

24 Plan Proponents have not placed the following Claims in a Class.  The treatment of these

25 unclassified Claims is as provided below.

26         **6.2**     **Treatment of Allowed Administrative Claims.**

27         The Code requires that all Allowed Administrative Claims be paid on the later of Effective

28 Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such

2    Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be

3    paid from the applicable Distribution Account(s).

4    Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

5    different treatment and subject to the Administrative Claims Bar Date set forth herein, the

6    Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

7    (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

8    becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

9    becomes due according to its terms.

10    **6.3    Administrative Claims Bar Date.**

11    All applications for final compensation of Professionals for services rendered and for

12    reimbursement of expenses incurred on or before the Effective Date and all other requests for

13    payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

14    or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

15    obligations and routine post-petition payroll obligations incurred in the ordinary course of the

16    Debtor's post-petition business, for which no bar date shall apply, and (ii) post-petition tax

17    obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

18    upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

19    extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

20    of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

21    is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

22    any party that seeks payment of Administrative Claims that (i) is required to file a request for

23    payment of such Administrative Claims and (ii) does not file such a request by the deadline

24    established herein shall be forever barred from asserting such Administrative Claims against the

25    Debtor, the Plan Trust, their estates, or any of their property.

26    **6.4    Treatment of Unsecured Tax Claims.**

27    Tax Claims are certain unsecured income, employment and other taxes described by Code

28    Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

1   receive the present value of such Claim in deferred cash payments, over a period not exceeding

2   five (5) years from the petition date and that such treatment not be less favorable than the treatment

3   accorded to non priority unsecured creditors.

4        At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

5   entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

6   each three-month period following the Effective Date, during a period not to exceed five years

7   after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

8   unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

9   United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

10  the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

11  favorable terms to the Debtor(or the Plan Trust after the Effective Date) than the treatment set forth

12  in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

13                                   **VII**.

14                 **CLASSIFICATION OF CLAIMS AND INTERESTS**

15       As required by the Code, the Plan places Claims and Interests into various Classes

16  according to their right to priority and other relative rights.  The Plan specifies whether each Class

17  of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

18  will receive.  The table below lists the Classes of Claims established under the Plan and states

19  whether each particular Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired"

20  if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

21  Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

22  Code.

23

| **CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE DEBTOR** | | |
|---|---|---|
| **Class 1** | | **Claim Nos.** |
| Class 1.1 | The Holders of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted against the Debtor. | Various Filed and Scheduled Claims in the Estimated Amount of $0 |

24

25

26

27

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 2** | **Claimant** | **Scheduled Claim Nos.** |
| Class 2.1 | Claimants holding Allowed Unsecured Claims against the Debtor. | Various Filed and Scheduled in the Estimated Amount of $4,390,043 |

| CLASSIFICATION OF INTEREST HOLDERS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 3** | **Holder** | **Amount** |
| Class 3.1 | Holders of Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC (50%) and LBREP II/SunCal Land Fund Member LLC (50%). | 50% Each |

# VIII.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 8.1 The Plan's Treatment of Holders of Priority Claims Against the Debtor (Class 1.1).

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

    A.    The Holder(s) are unimpaired under the Plan; and

    B.    The Holder(s) shall be paid in full from the Distribution Account on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Priority Claim, (c) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (d) the date that any Disputed Administrative and Priority Claims are all resolved by Final Orders of the Bankruptcy Court..

### 8.2 The Plan's Treatment of Holders of Allowed General Unsecured Claims Against the Debtor (Class 2.1).

The rights of Holders of Allowed Class 2.1 Claims under the Plan are impaired under the Plan. Under the Plan, each claimant shall receive an initial Distribution ("Initial Distribution") from the Available Cash constituting a pro-rata share of any Available Cash, after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

-34-

The Initial Distribution shall be made on the later of the Distribution Date or within thirty days after the resolution of all Disputed Administrative Claims and Priority Claims.

Thereafter, the Holders of Allowed Class 2.1 Claims shall receive potential supplemental Distributions (the "Supplemental Distributions") consisting of their pro-rata share of any Net Litigation Recoveries, if any, until such Holders have received a Maximum Distribution.

**8.3    The Plan's Treatment of Holders of Allowed Interests Against the Debtor (Class 3.1).**

The Interests of the Holders in Class 3.1 are impaired under the Plan.  All such Interests shall be cancelled as of the Effective Date and no Distribution shall be made to these Holders on account of such Interest(s).

**IX.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**9.1    Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtor cannot represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  The requirements described herein are <u>not</u> the only requirements for confirmation.

**9.2    Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 9.3    Who May Vote to Accept/Reject the Plan.

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected"). The votes will be tabulated on a Debtor by Debtor basis.

### 9.4    What Is an Allowed Claim/Interest.

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

### 9.5    What Is an Impaired Class.

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtor believes that all Classes, except Class 1.1, are impaired.

### 9.6    Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan.  The Debtor believes that all Classes are entitled to vote except Class 1.1. This class is not impaired under the Plan and consequently is not entitled to vote. They are conclusively deemed to have accepted the Plan.  The Interests held by the Holders in Class 3.1 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**9.7     Who Can Vote in More than One Class.**

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

**9.8     Votes Necessary for a Class to Accept the Plan.**

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

**9.10     Treatment of Nonaccepting Classes.**

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

**9.11.     Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any impaired Class if such Class does not vote to accept the Plan.

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

# X.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

This Section is intended to explain how the Plan Trustee intends to effectuate the liquidation contemplated by the Plan, and how the Trustee intends to fund the obligations to Holders of Allowed Claims as provided in the Plan.  This section provides information regarding the funding sources for Plan obligations, the establishment of the Plan Trust, and other material issues bearing upon performance of the Plan.

### 10.1    Removal of Chapter 11 Trustee.

As of the Effective Date, the appointment of the Chapter 11 Trustee in the Debtor's Case shall terminate, and possession and control over all property within this estate shall pass to the Plan Trust.

### 10.2    Establishment and Operations of the Plan Trust.

The Plan Trust shall be established and shall become effective on the Effective Date.  The Plan Trust is created pursuant to the Plan and the Confirmation Order, and separate trust instrument shall be required.  The primary purpose of the Plan Trust is the liquidation and distribution of the Assets transferred to it, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust.  The Plan Trust shall hold and administer the Assets of the Debtor and the Distribution in accordance with the terms of the Plan.

### 10.3    Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust.

On the Effective Date, title to and possession of all property of the Debtor shall be deemed transferred and delivered to the Plan Trust, without further act or action under any applicable agreement, law, regulation, order or rule of law.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, all litigation Claims shall be a part of the Plan Trust, whether or not pending on the Effective Date.  Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may

-38-

1    pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee shall not settle or

2    abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior

3    written notice and opportunity to object to the proposed action.  Any disputes concerning the

4    settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

5    resolution on no less than ten (10) days' notice to the objecting party.

6         The SunCal Plan Proponents shall have the right to move forward with the Lehman

7    Preference Claim in the event the SunCal Plan Proponents retain counsel, on a contingency fee

8    basis, to prosecute the Lehman Preference Claim.  The costs associated with the prosecution of

9    such litigation shall be paid from the Plan Reserve.  Based on the contingency fee structure of any

10   such litigation, Creditors may receive higher recoveries in the event that the SunCal Plan

11   Proponents are successful in such litigation.

12        The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

13   monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

14   in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

15   that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

16   Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs

17   incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors'

18   Committee shall receive notice of and the right to review all payments and Distributions.

19        All Litigation Recoveries realized or obtained by the Plan Trustee or the Trustee Debtors'

20   Committee shall be promptly deposited into the applicable Distribution Account(s).  Except as

21   otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free

22   and clear of all Claims and Liens and shall only be expended in accordance with the provisions of

23   the Plan.

24        **10.4    Payment of Plan Trust Expenses**.

25        The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be

26   paid, or adequate reserves shall be created for the payment of such expenses, prior to any

27   distribution to the Plan Trust Beneficiaries.

28

**10.5    The Plan Trust Distribution System.**

The Plan Trustee shall establish a separate "Distribution Account" for the Debtor at an FDIC insured bank. The Debtor's Available Cash, whether on hand as of the Effective Date or received thereafter, shall be deposited into the Debtor's Distribution Account.  These funds will then be used to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons dealing with the Plan Trustee, or seeking to assert Claims against the Debtor, the Estate or the Plan Trust, shall look only to property of the Debtor, the Estate or the Plan Trust to satisfy any liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

**10.6    The Plan Trustee**.

**10.6.1    Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The appointment of the Plan Trustee shall be effective as of the Effective Date.

**10.6.2    Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan Trustee.

**10.6.3    Powers and Duties**.  On the Effective Date, the Plan Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

i.    employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert

witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under the Plan;

      ii.    control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors pursuant to the terms of the Plan;

      iii.    open, maintain and administer bank accounts as necessary to discharge the duties of the Plan Trustee under the Plan;

      iv.    make Distributions to the Holders of Allowed Claims in accordance with the Plan;

      v.    retain professionals to assist in performing his or her duties under the Plan;

      vi.    pay reasonable and necessary professional fees, costs, and expenses;

      vii.    investigate, analyze, commence, prosecute, litigate, compromise, settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests of the Plan Trust;

      viii.    administer, sell, liquidate, or otherwise dispose of the Assets in accordance with the terms of the Plan;

      ix.    incur and pay reasonable and necessary expenses in connection with the performance of the Plan Trustee's duties under the Plan;

      x.    represent the Estates before the Court and other courts of competent jurisdiction with respect to matters concerning the Plan Trust;

      xi.    seek the examination of any entity under the subject to the provisions of Bankruptcy Rule 2004;

      xii.    comply with applicable orders of the court and any other court of competent jurisdiction over the matters set forth in the Plan;

1    xiii.    comply with all applicable laws and regulations concerning the

2 matters set forth in the Plan;

3    xiv.    exercise such other powers as may be vested in the Plan Trust

4 pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

5    xv.    execute any documents, instruments, contracts, and agreements

6 necessary and appropriate to carry out the powers and duties of the Plan Trust;

7    xvi.    (1) seek a determination of tax liability under §505 of the code, (2)

8 pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

9 required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a

10 "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

11 behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

12    xvii.    stand in the shoes of the Debtor for all purposes.

13    **10.6.4    Retention of Professionals and Compensation Procedure.**

14    On and after the Effective Date, the Plan Trustee may, without further application or

15 Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may

16 be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out

17 the provisions of the Plan.  The Plan Trustee may employ such professionals on any reasonable

18 terms and conditions of employment to be determined by the Plan Trustee.  For the services

19 performed on and after the Effective Date, the professionals engaged by the Plan Trustee (the "Plan

20 Trustee Professionals") shall receive reasonable compensation and reimbursement of expenses in a

21 manner to be determined by the Plan Trustee.

22    **10.6.5    Fees and Expenses.**

23    Acquisitions shall not receive any compensation for the services it performs as the Plan

24 Trustee.  The Plan Trustee Professionals shall be entitled to reasonable compensation for their

25 services, and reimbursement of expenses.  The costs and expenses of the Plan Trust (including,

26 without limitation, fees and expenses of the Plan Trustee Professionals) shall be paid from the Plan

27 Trust.  The Plan Trustee shall pay, without further order, notice or application to the Court, the

28 reasonable fees and expenses of the Plan Trustee Professionals, as necessary to discharge the Plan

1   Trustee's duties under the Plan.  The Plan Trustee shall be authorized to reserve funds from the

2   Plan Trust as is reasonable to pay the expenses of the Plan Trustee and the expenses and fees of the

3   Plan Trustee Professionals before making any Distributions under the Plan.

4   **10.6.6    Limitation of Liability and Indemnification.**

5   The Debtor, the Trustee Debtors' Committee, the Plan Sponsor, the SunCal Plan

6   Proponents, the Plan Trustee, their Professionals, nor any of their respective members, officers,

7   directors, shareholders, employees, or agents (the "Indemnified Parties") shall be liable (a) for any

8   loss or damages by reason of any action taken or omitted by him or her, except in the case of fraud,

9   willful misconduct, bad faith, or gross negligence, (b) for any act or omission made in reliance

10  upon the Debtors' books and records or upon information or advice given to the Plan Trustee by

11  his or her professionals, or (c) for any action taken or omission made in connection with or related

12  to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the

13  approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan,

14  or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the

15  fullest extent permitted by applicable statute and case law.  Except as otherwise provided in this

16  Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate,

17  statement, instrument, opinion, report, notice, consent, or other document believed by him or her to

18  be genuine and to have been signed by the proper party or parties.

19  The Indemnified Parties shall be indemnified and receive reimbursement from and against

20  any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature,

21  which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan

22  Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of

23  services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable

24  law, except if such loss, liability, expense or damage is finally determined by a court of competent

25  jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct,

26  bad faith, or gross negligence.  The amounts necessary for such indemnification and

27  reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee

28  shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan

1   Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or

2   liability.  This indemnification shall survive the dissolution, resignation or removal, as may be

3   applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit

4   of the Plan Trustee's and the Indemnified Person's heirs and assigns.

5         **10.7    The Plan Trust Beneficiaries**.

6         The Holders of Allowed Claims under the Plan, or any successors to such Holders'

7   Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust

8   which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the

9   times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be

10  evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except

11  as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a

12  beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan

13  Trust Assets or to any right to call for a partition or division of such assets or to require an

14  accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner

15  provided in the Plan.

16        The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities"

17  under applicable law.  However, such rights have not been defined as "securities" under the Plan

18  because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

19  arising under the Plan Trust are deemed to be "securities," the exemption from registration under

20  §1145 of the Bankruptcy code is intended to be applicable to such securities.

21        **10.8    No Payment of Transfer-Related Fees to the United States Trustee**.

22        The Plan Trust shall not be required to pay any fees to the United States Trustee based on

23  any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

24        **10.9    No Payment of Transfer-Related Fees to the Plan Trustee**.

25        The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any

26  transfers of Plan Trust Assets from the Debtor to the Plan Trust, or from the Plan Trust.

27

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

**10.10    Books and Records of Trust**.

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence, provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for such books and records. The Plan Trust's books and records shall be open to inspection at all reasonable times, upon written request by the Trustee Debtors' Committee.

**10.11    Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial Interests**.

For all United States federal income tax purposes, the transfers by the Debtor shall be treated by the Debtor, their estates, the Plan Trust and the Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Debtor to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Assets consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Assets within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively deemed to agree to use such valuations for all purposes, including, without limitation, in computing any gain recognized upon the exchange of such holder's claim for purposes of determining any United States Federal income tax, and shall be required to include those items of income, deductions and tax credits that are attributable to its the Beneficial Interest in computing its taxable income.

**10.12    Termination of the Trust**.

The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust Assets has been liquidated, all proceeds have been converted to cash or distributed in kind, all the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust Trustee is obligated to make Distributions on have been paid, all distributions to be made with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party have been concluded by dismissal or an order issued by the court in which such litigation is pending and such order has become "final" (consistent with the definition of Final Order in the Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b) the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional period as is reasonably necessary to conclude the liquidation and Distributions, not to exceed a total of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may consider and rule on the request within six (6) months prior to the expiration of the initial five-year term.

**10.13    Exemption from Certain Transfer Taxes**.

In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and agents shall forego the assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**10.14    Tax Consequence of The Plan**.

The implementation of the Plan may have federal, state and local tax consequences to the Debtor, Creditors and Interest Holders.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan. This Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

### 10.15   The Trustee Debtors' Committee.

On the Effective Date, the Trustee Debtors' Committee shall continue to serve the Debtor as Trustee Debtors' Committee to the Debtor, subject to the following:

#### 10.15.1       Duties and Powers.

The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the Plan.  Such compensation shall be paid from the Plan Reserve.  However, the fees incurred arising from the Potential SunCal Preference Claim shall only be paid on a contingency fee basis.

#### 10.15.2   Dissolution of The Trustee Debtors' Committee.

The Trustee Debtors' Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Trustee Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

# XI.

# RISK FACTORS

**11.1** **Plan Risks**.

The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that creditors should be aware of prior to voting on the Plan. The more material of these risks are summarized below.

**11.2** **The Plan May Not Be Accepted or Confirmed**.

While the SunCal Plan Proponents believe that the Plan is confirmable under the standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a liquidation, or that any alternative plan of reorganization could or would be formulated on terms as favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

**11.3** **Adverse Outcome of Pending Litigation**.

The SunCal Plan Proponents believes that the Lehman Preference Claim is meritorious. However, there is no assurance that the Debtor will recover on the Lehman Preference Claim.

The SunCal Plan Proponents believe that valid defenses exist to the Potential SunCal Preference Claim.

# XII.

# DISTRIBUTIONS

**12.1** **Distribution Agent**.

Acquisitions shall serve as the Distribution Agent for Distributions due under the Plan. The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

## 12.2 **Distributions.**

### 12.2.1 **Dates of Distributions.**

Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

### 12.2.2 **Limitation on Liability.**

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

## 12.3 **Old Instruments and Securities.**

### 12.3.1 **Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any Distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing an existing Claim(s) against the Debtor must surrender such Instrument or Security to the Distribution Agent.

### 12.3.2 **Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

### 12.3.3  **De Minimis Distributions and Fractional Shares**.

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### 12.3.4  **Delivery of Distributions**.

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtor; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtor, provided, however, that if the Debtor or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

### 12.3.5  **Undeliverable Distributions**.

If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then current address.  Subject to the remainder of this Section and the following section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or any other Person to attempt to locate such Person.

1

**XIII.**

2

**OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

3    **13.1    Standing for Objections to Claims.**

4    The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

5 objections to Claims, excluding Claims filed by Insiders that are SunCal Affiliates.  The Trustee

6 Debtors' Committee shall have the sole and exclusive right to file, prosecute and resolve

7 objections to Claims filed by Insiders that are SunCal Affiliates.

8    Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the

9 Person holding such Claim on or before the applicable Claims Objection Deadline.  The Plan

10 Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an

11 extension of the Claims Objection Deadline if a complete review of all Claims cannot be

12 completed by such date.

13    **13.2    Treatment of Disputed Claims and Disputed Liens.**

14    **13.2.1  No Distribution Pending Allowance.**

15    If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

16 or Distribution provided for under the Plan shall be made on account of such Claim or Lien unless

17 and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

18    **13.2.2  Distribution After Allowance.**

19    On the next Distribution Date following the date on which a Disputed Claim

20 becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

21 distribute to the Person holding such Claim any Cash that would have been distributable to such

22 Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

23 Disputed Claim.

24

**XIV.**

25

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

26    **14.1    Executory Contracts Being Rejected.**

27    The Debtor hereby rejects all of the executory contracts and unexpired leases set forth in

28 the Debtor's Schedules, attached to the Disclosure Statement as Exhibit "9."  The SunCal Plan

1   Proponents reserve the right to amend Exhibit "9" to the Disclosure Statement to include

2   additional leases and contracts on this exhibit, or to delete leases and contracts from this exhibit,

3   up to and including the Confirmation Date.

4       **14.2    Bar Date for Rejection Damages.**

5       Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

6   forever barred and shall not be enforceable against the Debtor, the Plan Trust, their Affiliates, their

7   successors, or their properties, and shall not be entitled to any Distribution under the Plan, unless a

8   Proof of Claim for such Claim is filed and served on the Debtor, or the Plan Trust within thirty

9   (30) days after the receipt of a notice of the rejection of any contract or lease.

10                                      **XV.**

11      **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

12      **15.1    Best Interests Test**.

13      Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless

14  the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and

15  Interests who have not accepted the Plan and whose Claims are classified in Classes that are

16  impaired under the Plan, are not less than those which they would receive in a liquidation under

17  Chapter 7 of the Bankruptcy Code.

18      The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each

19  impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis.

20  The Best Interests Test requires the Bankruptcy Court to find either that either (i) <u>all</u> Holders of

21  Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder

22  of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property

23  of a value, as of the effective date of the Plan, that is not less than the amount that such Holder

24  would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

25      The Plan proposed by the Plan Proponents is essentially a litigation and liquidating plan.

26  The Plan provides for the potential prosecution and potential recovery of the Lehman Preference

27  Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation

28

1    Recoveries.  The Plan provides for the Distribution of the resulting net proceeds, in accordance

2    with the priorities provided for in the Bankruptcy Code and under California law.

3            If a Chapter 7 trustee were appointed in this case and chose to prosecute the Litigation

4    Claims, it would be compelled to liquidate the Debtor's assets in the same manner as provided for

5    in the Plan and to pay out the proceeds in the same manner as provided for in the Plan.

6    Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as much" as

7    such creditor would receive in a Chapter 7 case, which is all that is required under the Best

8    Interests Test.

9            **15.2    <u>Feasibility</u>**.

10            In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation

11   of the Plan is not likely to be followed by the liquidation or the need for further financial

12   reorganization of the Debtor(s).  This requirement is imposed by Section 1129(a)(11) of the

13   Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above,

14   the Plan provides for pursuing the Litigation Claims, the liquidation of any recoveries,  and for the

15   distribution of the proceeds. Within the context of the Plan, feasibility is limited to having

16   sufficient funds to pay administrative and priority claims on the Effective Date and sufficient funds

17   to fund to finance the litigation.

18                                     **XVI.**

19                        **<u>LIMITATION OF LIABILITY</u>**

20            **16.1    <u>No Liability for Solicitation or Participation</u>.**

21            As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

22   rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

23   offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

24   the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

25   violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

26   rejections of the Plan or the offer, issuance, sale, or purchase of securities.

27

28

MAINDOCS-#164994-v3-SunCal_3rd_Am_CC_DS.DOC

**XVII.**

**CONDITIONS TO CONFIRMATION AND**

**EFFECTIVENESS OF THE PLAN**

**17.1    Conditions Precedent to Plan Confirmation.**

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan Proponents.

**17.2    Conditions Precedent to Plan Effectiveness.**

The Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents and not subject to a stay pending appeal.

**XVIII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.

**XIX.**

**MODIFICATION OR WITHDRAWAL OF THE PLAN**

**19.1    Modification of Plan.**

At any time prior to confirmation of the Plan, SunCal Plan Proponents may supplement, amend or modify the Plan.  After confirmation of the Plan,  SunCal Plan Proponents or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**19.2    Nonconsensual Confirmation.**

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

1    Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

2    accordance with Section 1127(a) of the Bankruptcy Code.

3                                                **XX.**

4                                          **MISCELLANEOUS**

5        **20.1    Payment of Statutory Fees.**

6        All quarterly fees due and payable to the Office of the United States Trustee pursuant to

7    Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

8    Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

9    been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

10   Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

11   due and payable after the Effective Date and until the Debtor's Case is closed, to the extent

12   required by Section 1930(a)(6) of title 28 of the United States Code.

13       **20.2    Changes in Rates Subject to Regulatory Commission Approval.**

14       The Debtor is not subject to governmental regulatory commission approval of their rates**.**

15       **20.3    Payment Dates.**

16       Whenever any payment or Distribution to be made under the Plan shall be due on a day

17   other than a Business Day, such payment or Distribution shall instead be made, without interest, on

18   the immediately following Business Day.

19       **20.4    Headings.**

20       The headings used in the Disclosure Statement and in the Plan are inserted for convenience

21   only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

22   affect the construction of the provisions of the Disclosure Statement or the Plan.

23       **20.5    Other Documents and Actions.**

24       The Plan Trustee may execute such other documents and take such other actions as may be

25   necessary or appropriate to effectuate the transactions contemplated under the Plan.

26       **20.6    Notices.**

27       All notices and requests in connection with the Disclosure Statement and the Plan shall be

28   in writing and shall be hand delivered or sent by mail addressed to:

**To the SunCal Plan Proponents**:
Bruce V. Cook
General Counsel
Authorized Agent of the SunCal Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Ronald Rus
Rus Miliband & Smith A Professional Corporation
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section, which designation will be effective on receipt.

### 20.7    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 20.8    Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 20.9    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

1    **20.10    Severability of Plan Provisions.**

2        If, prior to the Confirmation Date, any term or provision of the Plan is held by the

3    Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

4    constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

5    consent of the Debtor, have the power to interpret, modify or delete such term or provision (or

6    portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

7    with the original purpose of the term or provision held to be invalid, void or unenforceable, and

8    such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding

9    any such interpretation, modification or deletion, the remainder of the terms and provisions of the

10    Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or

11    deletion.

12    **20.11    No Waiver.**

13        The failure of the Debtor or any other Person to object to any Claim for purposes of voting

14    shall not be deemed a waiver of the Trustee Debtors' Committee, the Debtors' or the Plan

15    Trustee's right to object to or examine such Claim, in whole or in part.

16    **20.12    Inconsistencies.**

17        In the event the terms or provisions of the Disclosure Statement are inconsistent with the

18    terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

19    the Plan shall control.

20    **20.13    Exemption from Certain Transfer Taxes and Recording Fees.**

21        The Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any

22    agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal

23    property or of any other interest in such property (including, without limitation, a security interest)

24    will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

25    similar tax, mortgage tax,

26    stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

27    recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

28    direct the appropriate state or local governmental officials or agents to forego the collection of any

such tax or governmental assessment and to accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

### 20.14  Post-Confirmation Status Report.

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

status report with the Court explaining what progress has been made toward consummation of the

confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

unsecured creditors, and those parties who have requested special notice.  Unless otherwise

ordered, further status reports shall be filed every 180 days and served on the same entities.

### 20.15  Post-Confirmation Conversion/Dismissal.

A creditor or party in interest may bring a motion to convert or dismiss the case under

§ 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

Trustee reserves the right to object to any motion for conversion or dismissal.  If the Court orders

any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been

property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest

in the Chapter 7 estate.

### 20.16  Final Decree.

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

motion with the Court to obtain a final decree to close the Case of the Debtor.

Date:  August 5, 2011                    By:____/s/ *Bruce Cook*_____
                                                            Bruce Cook
                                                    General Counsel, Authorized Agent for the Voluntary
                                                    Debtors and Acquisitions

**Submitted By:**
**WINTHROP COUCHOT**                    **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**            **A PROFESSIONAL CORPORATION**

By: /s/ *Paul J. Couchot*_____    By:  _/s/ *Ronald Rus*_____
        Paul J. Couchot, Esq.                          Ronald Rus, Esq.
        General Insolvency Counsel for              Joel S. Miliband, Esq.
        the Voluntary Debtors                    Counsel for SCC Acquisitions Inc.

-58-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING THIRD AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASE OF SUNCAL CENTURY CITY, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On August 5, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| Date | Type Name | Signature |

- **NEF SERVICE LIST**
  Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com,
  pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net