1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for
   Palmdale Hills Property, LLC et. al. (the "Voluntary Debtors")

5  RONALD RUS - State Bar No. 67369
   JOEL S. MILIBAND - State Bar No. 77438
6  RUS MILIBAND & SMITH
   A PROFESSIONAL CORPORATION
7  2211 Michelson Drive, Seventh Floor
   Irvine, California 92612
8  Telephone: (949) 752-7100
   Facsimile:  (949) 252-1514
9  Counsel for SCC Acquisitions Inc.

10                 **UNITED STATES BANKRUPTCY COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
11                        **SANTA ANA DIVISION**

12 | In re                                    | Case No. 8:08-bk-17206-ES
13 | PALMDALE HILLS PROPERTY, AND ITS         | Jointly Administered With Case Nos.
   | RELATED DEBTORS,                         | 8:08-bk-17209-ES; 8:08-bk-17240-ES;
14 |         Joint Administered Debtors and   | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
   |         Debtors-in-Possession            | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
15 |                                          | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
   | Affects:                                 | 8:08-bk-17230-ES; 8:08-bk-17231-ES;
16 | ☐  All Debtors                           | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
   | ☒  Palmdale Hills Property, LLC          | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
17 | ☐  SunCal Beaumont Heights, LLC          | 8:08-bk-17574 ES; 8:08-bk-17575-ES;
   | ☐  SCC/Palmdale, LLC                     | 8:08-bk-17404-ES; 8:08-bk-17407-ES;
18 | ☐  SunCal Johannson Ranch, LLC           | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
   | ☐  SunCal Summit Valley, LLC             | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
19 | ☒  SunCal Emerald Meadows LLC            | 8:08-bk-17470-ES; 8:08-bk-17472-ES;
   | ☒  SunCal Bickford Ranch, LLC            | and 8:08-bk-17588-ES
20 | ☒  Acton Estates, LLC                    |
21 | ☐  Seven Brothers LLC                    | Chapter 11 Proceedings
   | ☐  SJD Partners, Ltd.                    |
22 | ☐  SJD Development Corp.                 | **THIRD AMENDED CHAPTER 11 PLANS**
   | ☐  Kirby Estates, LLC                    | **FILED BY PALMDALE HILLS PROPERTY,**
23 | ☐  SunCal Communities I, LLC             | **LLC, SUNCAL BICKFORD RANCH, LLC,**
   | ☐  SunCal Communities III, LLC           | **SUNCAL EMERALD MEADOWS, LLC AND**
24 | ☐  SCC Communities LLC                   | **ACTON ESTATES, LLC [GROUP I:**
   | ☐  North Orange Del Rio Land, LLC        | **VOLUNTARY DEBTORS]**
25 | ☐  Tesoro SF LLC                         |
26 |                                          | **Confirmation Hearing**
   |                                          | Date:     October 24, 2011
27 |                                          | Time:     9:30 a.m.
   |                                          | Place:    Courtroom 5A
28 |                                          |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

| | | **PAGE** |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 3 |
| | 2.1 Definitions | 3 |
| | 2.2 Rules of Construction | 26 |
| | 2.3 Exhibits | 27 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 27 |
| | 3.1 Introduction | 27 |
| | 3.2 Treatment of Allowed Administrative Claims | 27 |
| | 3.3 Repayment of Allowed Administrative Claims | 27 |
| | 3.4 Administrative Claims Bar Date | 28 |
| | 3.5 Treatment of Unsecured Tax Claims | 28 |
| | 3.5 Summary of the Group I: Voluntary Debtors Plan's Treatment of Bond Indemnity Claims | 29 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS | 29 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 35 |
| | 5.1 The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against Group I: Voluntary Projects (Classes 1.1 through 1.4) | 35 |
| | 5.2 The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) Against Group I: Voluntary Debtors (Classes 2.1 and 2.4) | 36 |
| | 5.3 The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Group I: Voluntary Projects (Classes 3.1 through 3.14)) | 38 |
| | 5.4 The Plan's Treatment of Holders of Contingent Bond Indemnification Claims Against Group I: Voluntary Projects (Class 4.1) | 38 |
| | 5.5 The Plan's Treatment of Holders of Priority Claims Against Group I: Voluntary Debtors (Class 5.1) | 39 |
| | 5.6 The Plan's Treatment of Holders of General Unsecured Claims that are Reliance Claims Against the Group I: Voluntary Debtors (Classes 6.1,6.2,6.3 and 6.4) | 40 |
| | 5.7 The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims Against The Group I: Voluntary Debtors (Classes 7.1, 7.2, 7.3 and 7.4) | 41 |
| | 5.8 The Plan's Treatment of Holders of Allowed Interests Against the Group I: Voluntary Debtors | 41 |

-i-

VI.    ACCEPTANCE OR REJECTION OF THE PLAN ................................................. 41
    6.1    Introduction.......................................................................................... 41
    6.2    Who May Object to Confirmation of the Plan .................................... 42
    6.3    Who May Vote to Accept/Reject the Plan .......................................... 42
    6.4    What Is an Allowed Claim/Interest..................................................... 42
    6.5    What Is an Impaired Class ................................................................... 42
    6.6    Who Is Not Entitled to Vote ................................................................ 42
    6.7    Who Can Vote in More than One Class................................................ 43
    6.8    Votes Necessary for a Class to Accept the Plan ................................. 43
    6.9    Treatment of Nonaccepting Classes..................................................... 43
    6.10   Request for Confirmation Despite Nonacceptance by
           Impaired Class(es)............................................................................... 44

VII.   MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN .............. 44
    7.1    Introduction.......................................................................................... 44
    7.2    Sale Process for the Group I: Voluntary Projects and Group I:
           Voluntary Other Assets During the Sales Period.............................. 44
    7.3    Establishment and Operations of the Plan Trust................................. 47
    7.4    Preservation and Pursuit of Litigation Claims and Recovery for the
           Plan Trust    ........................................................................................ 47
    7.5    Payment of Trust Expenses.................................................................. 48
    7.6    The Plan Trust Distribution System..................................................... 48
    7.7    The Plan Trustee .................................................................................. 48
    7.8    The Plan Trust Beneficiaries................................................................ 53
    7.9    No Payment of Transfer-Related Fees to the United States Trustee.............. 53
    7.10   No Payment of Transfer-Related Fees to the Plan Trustee ............................ 53
    7.11   Books and Records of Trust.................................................................. 53
    7.12   Federal Income Tax Treatment of the Holders of Plan
           Trust Beneficial Interests ................................................................... 54
    7.13   Termination of the Trust ...................................................................... 54
    7.14   Exemption from Certain Transfer Taxes ............................................. 55
    7.15   Tax Consequences of the Plan ............................................................. 55
    7.16   The Voluntary Debtors' Committee ..................................................... 56
    7.17   Claims Estimation Rights .................................................................... 56

VIII.  DISTRIBUTIONS................................................................................................. 57
    8.1    Distribution Agent ............................................................................... 57
    8.2    Distributions......................................................................................... 57
    8.3    Old Instruments and Securities ........................................................... 58

IX.    OBJECTION TO CLAIMS AND DISPUTED CLAIMS ................................... 59
    9.1    Standing for Objections to Claims....................................................... 59
    9.2    Treatment of Disputed Claims and Disputed Liens ........................... 60

X.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................. 60
    10.1   Executory Contracts to be Assumed and Assigned....................................... 60
    10.2   Executory Contracts to be Rejected .................................................... 63

-ii-

| XI. | LIMITATION OF LIABILITY | 64 |
|---|---|---|
| | 11.1 No Liability for Solicitation or Participation | 64 |
| XII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 64 |
| | 12.1 Conditions Precedent to Plan Confirmation | 64 |
| | 12.2 Conditions Precedent to Plan Effectiveness | 64 |
| XIII. | RETENTION OF JURISDICTION | 65 |
| XIV. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 66 |
| | 14.1 Modification of Plan | 66 |
| | 14.2 Nonconsensual Confirmation | 66 |
| XV. | EFFECT OF CONFIRMATION | 67 |
| | 15.1 Discharge | 67 |
| | 15.2 Revesting of the Assets | 67 |
| XVI. | MISCELLANEOUS | 67 |
| | 16.1 Payment of Statutory Fees | 67 |
| | 16.2 Changes in Rates Subject to Regulatory commission Approval | 67 |
| | 16.3 Payment Dates | 67 |
| | 16.4 Headings | 68 |
| | 16.5 Other Documents and Actions | 68 |
| | 16.6 Notices | 68 |
| | 16.7 Governing Law | 69 |
| | 16.8 Binding Effect | 69 |
| | 16.9 Successors and Assigns | 69 |
| | 16.10 Severability of Plan Provisions | 69 |
| | 16.11 No Waiver | 69 |
| | 16.12 Inconsistencies | 70 |
| | 16.13 Exemption from Certain Transfer Taxes and Recording Fees | 70 |
| | 16.14 Post-Confirmation Status Report | 70 |
| | 16.15 Post-Confirmation Conversion/Dismissal | 70 |
| | 16.16 Final Decree | 71 |

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

# I.

## __INTRODUCTION__

These Plans[1] are proposed respectively by, and the accompanying Disclosure Statement is filed jointly by, Palmdale Hills Property, LLC, SunCal Bickford, LLC, SunCal Emerald Meadows, LLC, and Acton Estates, LLC (the "Group I: Voluntary Debtors"), in their respective Chapter 11 Cases in their capacities as debtors in possession, and by Acquisitions, as the SunCal Proponents. In addition to being one of the SunCal Plan Proponents, Acquisitions is also the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group I: Voluntary Debtor's Plan that is confirmed.

In summary, the Plan(s) individually provides for the sale of the Ritter Ranch Project, the Bickford Ranch, SunCal Emerald and the Acton Project (the "Group I Projects"), and for the liquidation of all other assets of the Group I: Voluntary Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under other applicable law.

**The Plan also offers the holders of a certain claims against the Group I: Voluntary Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty-five cents ($0.55) per dollar of claim. The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.**

Although substantial identical and consolidated Plans are being filed in the Cases of all four Group I: Voluntary Debtors, confirmation of each such Plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the applicable Plan may be confirmed in the Cases of some of the Group I: Voluntary Debtors, but not in others.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached to the Disclosure Statement.

The Plans are accompanied by the Disclosure Statement.  The Disclosure Statement has been approved by the Court.  It is being provided along with the Plans in order to provide you with critical information about the Group I: Voluntary Debtors and to help you understand the Plans.

**II.**

**DEFINITIONS AND RULES OF INTERPRETATION**

**2.1**    **Definitions.**

The following defined terms are used in the Plans.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported Bond Indemnitor, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    Acton Estates.  Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor herein, and the owner of the Acton Project.

2.1.3    Acton Project. The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described herein.

2.1.4    Acton Project Break-up Fee. The amount equal to 2.5% of the Minimum Sales Price for the Acton Project, plus actual amounts paid by LitCo on Allowed Administrative Claims for the Acton Estates Case if LitCo is the Stalking Horse Bidder and is not the Winning Bidder.

2.1.5    Administrative Claim(s).  Any Claim against a Group I: Voluntary Debtor or its Estate incurred after the applicable Petition Date for the applicable Group I: Voluntary Debtor but before the Effective Date, for any cost or expense of administration of the Case of the applicable Group I: Voluntary Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group I: Voluntary Debtor under section 1930 of Title 28 of the United States Code.

2.1.6    Administrative Claims Bar Date.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative

1    Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective

2    Date.

3                    2.1.7    Affiliate.  The term shall have the meaning set forth under Section 101(2),

4    including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

5    controls, is owned or controlled by, or is under common ownership or control with, such Person.

6    The term "control" (including, with correlative meanings, the terms "controlled by" and "under

7    common control with"), as applied to any Person, means the possession, direct or indirect, of the

8    power to direct or cause the direction of the management and policies of such Person, whether

9    through the ownership of voting securities or other equity ownership interest, by contract or

10    otherwise.

11                    2.1.8    Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or

12    Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

13                    2.1.9    Allowed Amount shall mean:

14                    A.        With respect to any Administrative Claim (i) if the Claim is based

15    upon a Fee Application, the amount of such Fee Application that has been approved by a Final

16    Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

17    incurred in the ordinary course of business of the Group I: Voluntary Debtor and is not otherwise

18    subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

19    the Group I: Voluntary Debtor and such creditor, failing which, the amount thereof as fixed by a

20    Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

21    has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

22    (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

23    applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

24    Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

25    such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

26    Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

27    which is subject to an Administrative Claims Bar Date and not filed by the applicable

28    Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

1    such Administrative Claim;

2              B.        With respect to any Claim which is not an Administrative Claim (the

3    "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the

4    Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

5    Group I: Voluntary Debtors' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

6    the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

7    Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

8    interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

9    Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

10    Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

11    fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The

12    Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

13    listed on the Group I: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

14    contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no

15    distribution shall be made on account of any such Claim; and

16              C.        with respect to any Interest, (i) the amount provided by or established

17    in the records of the Group I: Voluntary Debtors at the Confirmation Date, provided, however, that

18    a timely filed proof of Interest shall supersede any listing of such Interest on the records of the

19    Group I: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the

20    Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such

21    later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final

22    Order of the Bankruptcy Court.

23              2.1.10    Allowed Claim.  Except as otherwise provided in the Plan (including with

24    respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

25    Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

26              2.1.11    Allowed Interest.  Any Interest to the extent, and only to the extent, of the

27    Allowed Amount of such Interest.

28              2.1.12    Allowed Secured Claims.  All or  a portion of a Secured Claim that is an

1    Allowed Claim.

2            2.1.13    <u>Allowed Unsecured Claim</u>. All or a portion of an Unsecured Claim that is

3    an Allowed Claim.

4            2.1.14    <u>Arch</u>.  Arch Insurance Company, a Bond Issuer.

5            2.1.15    <u>Available Cash</u>.  Each Group I: Voluntary Debtors' Cash deposited into

6    the applicable Distribution Account(s) on or after the Effective Date that is available for making

7    Distributions under the Plan to Holders of Allowed Administrative, Priority, and Unsecured

8    Claims.  The Available Cash shall consist of the respective Group I: Voluntary Debtors' cash on

9    hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation

10    Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash

11    upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly

12    encumbering such Cash, or proceeds from the LitCo Plan Loan.  All Available Cash shall be

13    deposited into the applicable Distribution Account(s).  Available Cash shall not include Net Sale

14    Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are Allowed but

15    subject to an equitable subordination judgment.  For avoidance of doubt, and notwithstanding

16    anything to the contrary contained herein or any Confirmation Order, (i) Available Cash shall not

17    include any Cash held in the "Funds Control Account" pursuant to that certain *Work and Cost*

18    *Payment Agreement and First Amendment to Reciprocal Easement Agreement and Cooperation*

19    *Agreement* between Anaverde LLC and Palmdale Hills, dated as of June 29, 2001 (the "Work and

20    Cost Agreement "), (ii) the claims, defenses and all other rights of all applicable parties, including

21    New Anaverde LLC and Palmdale Hills Property, LLC, with respect to the Funds Control Account

22    and the Work and Cost Agreement are expressly preserved, and (iii) the Funds Control Account

23    shall only be distributed upon (a) agreement of all of  the applicable parties, including New

24    Anaverde LLC, and Palmdale Hills Property, LLC, (b) as provided pursuant to the terms of the

25    Work and Cost Agreement, or (c) further order of a court of competent jurisdiction.

26            2.1.16    <u>Avoidance Actions</u>.  All Claims and defenses to Claims accruing to the

27    Group I: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541,

28    544, 545, 547, 548, 549, 550, or 551.

2.1.17    <u>Bankruptcy Code</u>.  The United States Bankruptcy Code.

2.1.18    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.19    <u>Bankruptcy Rules</u>.  Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.20    <u>Beneficial Interests</u>  Collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law without written notification to the Plan Trustee confirming and acknowledging the transfer by both the holder and the transferee.

2.1.21    <u>Bickford Ranch Project</u>.  The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described herein.

2.1.22    <u>Bickford Ranch Project Break-up Fee</u>. The amount equal to 2.5% of the Minimum Sales Price for the Bickford Ranch Project, plus actual amounts paid by LitCo on Allowed Administrative Claims for the SunCal Bickford Case if LitCo is the Stalking Horse Bidder and is not the Winning Bidder.

2.1.23    <u>Bickford Second Loan Agreement</u>.  That certain promissory note secured by a deed of trust, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000 executed by SunCal Bickford, as borrower, and payable to the order of Lehman ALI.  The Bickford Second Lien Loan Agreement is allegedly secured by a second priority deed of trust on the Bickford Ranch Project.  The Bickford Second Loan Agreement has an

-7-

1  asserted balance due of $56,494,059.38 as of March 30, 2009.

2          2.1.24    Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer under

3  various payment or performance bonds.

4          2.1.25    Bond Claimant.  Holder(s) of a Bond Claim.

5          2.1.26    Bond Indemnification Claim.  All Claims by Bond Issuers for

6  indemnification against a Bond Indemnitor for the Bond Issuer's actual payment or purchase of a

7  Bond Claim with respect to the Group I: Voluntary Debtors' Projects.

8          2.1.27    Bond Indemnitors.  The individuals and entities that are allegedly liable on

9  the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

10  Affiliates of Acquisitions, and Elieff.

11          2.1.28    Bond Issuer(s).  Bond Safeguard, Lexon and Arch in their capacities as

12  issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

13          2.1.29    Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

14          2.1.30    Business Day.  Any day, other than a Saturday, a Sunday or a "legal

15  holiday," as defined in Bankruptcy Rule 9006(a).

16          2.1.31    Cases.  The Chapter 11 cases of the Group I: Voluntary Debtors pending

17  before the Bankruptcy Court.

18          2.1.32    Cash.  Currency of the United States of America and cash equivalents,

19  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

20  transfers and other similar forms of payment.

21          2.1.33    CFD Bonds.  Community facilities district bonds issued by a

22  governmental entity.

23          2.1.34    Chapter 11 Trustee.  Steven M. Speier, the duly appointed trustee of the

24  Trustee Debtors in their pending Chapter 11 Cases.

25          2.1.35    Claim.  This term shall have the broadest possible meaning under

26  Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

27  Group I: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated,

28  unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

-8-

1    secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

2    breach gives rise to a right of payment from any of the Group I: Voluntary Debtors, whether or not

3    such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

4    disputed, undisputed, secured, or unsecured.

5    　　　　2.1.36    <u>Claims Bar Date</u>.  For any Claim, other than the exceptions noted below,

6    March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

7    file Proof of Claims with the Bankruptcy Court in all of the Group I: Voluntary Debtors' cases,

8    except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date

9    shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to

10   11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry

11   of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of

12   "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are

13   timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by

14   March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the

15   avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim

16   is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

17   　　　　2.1.37    <u>Claims Objection Deadline</u>.  The later of (i) the first business day

18   following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

19   period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

20   the Plan Trustee and the Holder of the Claim.

21   　　　　2.1.38    <u>Claim Objection Reduction Amount</u>. The amount of Net Sales Proceeds

22   that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment

23   or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the

24   secured claims filed by the Lehman Lenders.

25   　　　　2.1.39    <u>Class</u>.  Each group of Claims or Interests classified in Article V of the Plan

26   pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

27   　　　　2.1.40    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered

28   in the Bankruptcy Court's docket.

2.1.41    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.42    <u>Contingent Bond Claims</u>.  Bond Indemnification Claims in which the Bond Issuer has not yet paid or purchased the underlying Bond Claim.

2.1.43    <u>Contract Action</u>. The action filed by certain Voluntary Debtors against Lehman ALI, Inc., and certain other defendants, in California Superior Court for the County of Orange (Case No. 30-2011-0040847-CU-BC-CJC), that was removed to the bankruptcy court as Adv.  No. 8:11-ap-01212-ES, with a reservation of rights to add the Plan Trustee and/or the Trustee Debtors (and their successors) as additional plaintiffs therein.

2.1.44    <u>Creditor.</u>  Any Person who is the Holder of a Claim against any Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.45    <u>Debtor(s)</u>.  Individually or collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

2.1.46    <u>Debtor(s)-in-Possession</u>.  The Voluntary Debtor(s) in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.47    <u>Disclosure Statement</u>.  This document accompanying the Plan that is entitled "Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC," as amended and with all accompanying exhibits.

2.1.48    <u>Disputed Claim(s)</u>.  All or any part of a Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) an unresolved Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection to such Claim that has not been resolved by a Final

-10-

1    Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy

2    Rules, any applicable order of the Bankruptcy Court, or the applicable Plan(s) which is Filed on or

3    before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for

4    estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is

5    otherwise treated as a "Disputed Claim" pursuant to the Plan.

6            2.1.49    Disputed Lien(s).  An asserted lien(s) against Assets of the Group I

7    Voluntary Debtor(s) that is either subject to a Disputed Secured Claim, not duly perfected, subject

8    to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2)

9    and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed merely because it

10   secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a

11   proof of such claim under section 501 of this title."

12           2.1.50    Disputed Secured Claim(s). That part of a Disputed Claim that is a

13   Secured Claim.

14           2.1.51    Distribution(s).  Payments to Holders of Allowed Claims provided for

15   under the Plan.

16           2.1.52    Distribution Agent.  The entity that is responsible for making Distributions

17   under the Plan, which shall be Acquisitions.

18           2.1.53    Distribution Account(s).  Separate account(s) to be established by the Plan

19   Trustee at an FDIC insured bank into which each Group I: Voluntary Debtor's Available Cash

20   shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date

21   that would have belonged to such Group I: Voluntary Debtor shall be deposited, other than Net

22   Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

23           2.1.54    Distribution Date.  With respect to any Allowed Claim or Allowed

24   Interest, the date on which a Distribution is required to be made under the Plan.

25           2.1.55    Effective Date. A date selected by the applicable SunCal Plan Proponents

26   that is not later than the ninetieth (90th) calendar day after the Confirmation Date, and provided

27   there is no stay pending appeal of the Confirmation Order, in which case the Effective Date shall

28   be tolled until the dissolution of such stay. However, in any case where the actions provided for in

-11-

1   the Plan would be delayed by the automatic stay applicable in the case of any Lehman Entity

2   operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan Proponents shall have

3   the right to extend the Effective Date for an additional sixty (60) days to obtain relief from any

4   such stay.  The Effective Date may be further extended (beyond the above referenced initial sixty

5   (60) day extension) by the Bankruptcy Court after notice and hearing to all parties in interest.

6           2.1.56    <u>Elieff</u>.  Bruce Elieff, the president of Acquisitions, a purported Bond

7   Indemnitor with alleged corresponding indemnity Claims against the Debtors.

8           2.1.57    <u>Emerald Compromise</u>.  The compromise set forth and attached to the

9   *Motion For An Order Approving Compromise of Controversies with Rubidoux 60, LLC, EMR*

10   *Residential Properties LLC, Mitchell Ogron, Life Church of God in Christ, Moses Green and*

11   *David Sandoval* ("Emerald Compromise Motion"), filed on or about March 14, 2011, by SunCal

12   Emerald, as may be further amended or revised.

13           2.1.58    <u>Emerald Meadows Project</u>.  The Project owned by SunCal Emerald,

14   located in the City of Rubidoux, California, as more particularly described herein.

15           2.1.59    <u>Estates</u>.  The bankruptcy estates of the Group I: Voluntary Debtors created

16   pursuant to Section 541 of the Bankruptcy Code.

17           2.1.60    <u>Fee Applications</u>.  Applications of Professional Persons under Sections

18   330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

19   expenses in the Cases.

20           2.1.61    <u>Fee Claim</u>.  A Claim under Sections 330 or 503 of the Bankruptcy Code

21   for allowance of compensation and reimbursement of expenses in the Cases.

22           2.1.62    <u>Fenway Capital</u>.  Fenway Capital Funding LLC, a Lehman Successor to

23   Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

24   Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

25   (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

26   (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

27   Valley Loan Agreement.  Such Disputed Claims and Disputed Liens were transferred back to LCPI

28   pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

1     2.1.63 <u>Filed</u>.  Delivered to, received by and entered upon the legal docket by the

2 Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

3     2.1.64 <u>Final Order</u>.  A judgment, order, ruling or other decree issued and entered

4 by the Bankruptcy Court, that has not been reversed, stayed, modified or amended.

5     2.1.65 <u>General Unsecured Claim</u>.  A Claim against a Group I: Voluntary Debtor

6 that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority

7 Claim.

8     2.1.66 <u>Group I: Voluntary Debtors</u>. Palmdale Hills Property, LLC, SunCal

9 Bickford Ranch, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC.

10     2.1.67 <u>Group I: Voluntary Debtors Assets</u>.  All assets that are property of the

11 Group I: Voluntary Debtor(s) pursuant to Bankruptcy Code Section 541, including the Group I:

12 Voluntary Projects, the Litigation Claims and the Net Sales Proceeds.

13     2.1.68 <u>Group I: Voluntary Other Assets</u>.  All assets of the Group I: Voluntary

14 Debtors excluding the Group I: Voluntary Projects, Litigation Claims and Net Sales Proceeds.

15     2.1.69 <u>Group I: Voluntary Projects</u>. The Ritter Ranch Project, the Bickford Ranch

16 Project, the Emerald Meadows Project and the Acton Project.

17     2.1.70 <u>Voluntary Project Holder</u>.  The beneficial owner of any Claim or Interest.

18     2.1.71 <u>Initial Overbid</u>. The Initial Overbid is the first Qualifying Bid after the

19 Opening Bid that is equal to or in excess of the Initial Overbid Amount.

20     2.1.72 <u>Initial Overbid Amount</u>. In the case of the Ritter Ranch Project, the Initial

21 Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Ritter

22 Ranch Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the

23 Bickford Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the

24 applicable Opening Bid, the Bickford Ranch Project Break-up Fee and seventy-five thousand

25 dollars ($75,000). In the case of the Emerald Meadow Project, the Initial Overbid Amount is a sum

26 that is not less than the sum of the applicable Opening Bid, the Emerald Meadow Project Break-up

27 Fee and seventy-five thousand dollars ($75,000). In the case of the Acton Project, the Initial

28 Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Acton

-13-

1   Project Break-up Fee, and one-hundred fifty-thousand dollars ($150,000).

2      2.1.73 <u>Insider</u>.  The term shall have the broadest meaning possible under

3   Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

4   Insiders of such Affiliates.

5      2.1.74 <u>Interest</u>.  Any equity security interest in any Group I: Voluntary Debtor

6   within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

7   equity ownership interest in any of the Group I: Voluntary Debtors, whether in the form of

8   common or preferred stock, stock options, warrants, partnership interests, or membership interests.

9      2.1.75 <u>LBHI</u>.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

10   company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

11   in the Bankruptcy Court for the Southern District of New York.

12      2.1.76 <u>LCPI</u>.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

13   bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

14      2.1.77 <u>Legal Rate</u>.  The rate of interest payable on judgments obtained in the

15   United States District Courts as set forth in 28 U.S.C. § 1961.  The rate applicable under the Plan is

16   1.44% per annum, representing the applicable rate on November 6, 2008.

17      2.1.78 <u>Lehman Adversary Proceeding</u>.  The Debtors' pending adversary

18   proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

19   action including equitable subordination, fraudulent conveyances and preferential transfers.

20      2.1.79 <u>Lehman ALI</u>.  Lehman ALI, Inc.

21      2.1.80 <u>Lehman Disputed Administrative Loans</u>.  The post-petition financing

22   provided by Lehman ALI to SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal

23   Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which

24   grants priming liens on all borrower Trustee Debtors' assets, and for super-priority administrative

25   status to Lehman ALI.  The aggregate amount of the Lehman Disputed Administrative Loans to all

26   of the above reference Trustee Debtors was approximately $40 million as of March 1, 2011 and

27   continuing to increase.  The Lehman Disputed Administrative Loans are the subject of claim

28   objections, specifically the pending 502(d) Objection. Until these objections are resolved in the

1 applicable Case, these Lehman Disputed Administrative Loans shall not be Allowed Claims.

2         2.1.81 <u>Lehman Claim Objections</u>. The objections filed by the Debtors to the

3 claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

4 Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

5 Objection and the Lehman 502(d) Objection.

6         2.1.82 <u>Lehman Entities</u>.  The Lehman Lenders, the Lehman Equity Members and

7 LBHI.

8         2.1.83 <u>Lehman Equity Members</u>.  Lehman Entities that own direct or indirect

9 membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

10 Marblehead.

11         2.1.84 <u>Lehman Lenders</u>.  Lehman ALI, LCPI, Northlake Holdings, and OVC

12 Holdings.

13         2.1.85 <u>Lehman Disputed Loans</u>.  Collectively the following loans that are the

14 purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan Agreement;

15 (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

16 (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

17 Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

18 Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

19 Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

20 (n) Pacific Point Second Loan Agreement, and (o) the Lehman Disputed Administrative Loan.

21         2.1.86 <u>Lehman Recoupment Objection</u>. A claim objection filed with respect to

22 certain claims filed by the Lehman Lenders that is based upon the affirmative defenses of

23 recoupment, unjust enrichment and unclean hands.

24         2.1.87 <u>Lehman Representatives</u>.  The individuals that controlled the Lehman

25 Entities.

26         2.1.88 <u>Lehman Successor(s)</u>.  Entities other than the Lehman Lenders that either

27 assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

28 Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

1          2.1.89    <u>Lehman's Disputed Claim(s)</u>.  All of the Proofs of Secured Claims filed by

2 a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

3 Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

4          2.1.90    <u>Lehman's Disputed Lien(s)</u>.  All of the alleged liens relating to Proofs of

5 Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

6 Cases arising from the Lehman Disputed Loans.

7          2.1.91    <u>Lehman 502(d) Objection</u>. A claim objection filed with respect to certain

8 claims filed by the Lehman Lenders that based upon Section 502(d) of the bankruptcy code.

9          2.1.92    <u>Lexon</u>.  Lexon Insurance Co.

10          2.1.93    <u>LitCo</u> A Delaware limited liability company that will be formed for the

11 purpose of (i) purchasing the claims and Litigation Rights held by the Reliance Claimants that

12 choose to sell such Reliance Claims, (ii) funding the LitCo Plan Loan, and (iii) potentially being

13 selected as the Stalking Horse Bidder under the Group I: Voluntary Debtors' Plans.

14          2.1.94    <u>LitCo Plan Loan</u>. A loan that will be made by LitCo to the extent

15 necessary to pay Allowed Priority Claims, Allowed Administrative Claims and Post Confirmation

16 Expenses incurred by the Plan Trust, the Plan Trustee and its professionals and to the Voluntary

17 Debtors Committee and its professionals if no other source is available from the applicable Group

18 I: Voluntary Debtor's Assets.

19          2.1.95    <u>Litigation Claims</u>.   Any and all interests of the Group I: Voluntary

20 Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

21 rights, or causes of action which have been or may be commenced by the Group I: Voluntary

22 Debtor(s), the Chapter 11 Trustee, or the Voluntary Debtors' Committee, as the case may be,

23 including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Group

24 I: Voluntary Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment of

25 money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the

26 form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the

27 Lehman Adversary Proceeding; (vi) the Contract Action, and (vii) any and all other Claims against

28 Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

1    Statement.

2        2.1.96    Litigation Recoveries.  Any Cash or other property received by the

3    Chapter 11 Trustee, the Group I: Voluntary Debtors, the Voluntary Debtors' Committee and/or the

4    Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not

5    limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

6    whether recovered by way of settlement, execution on judgment or otherwise.

7        2.1.97    Litigation Rights. Any Claims held by a party against the Group I:

8    Voluntary Debtors , and if applicable, against third parties arising or relating to the Claim against

9    the applicable Group I Voluntary Debtor, that have not been fixed in a final judgment prior to the

10   Effective Date.

11        2.1.98    Marblehead Project.  The Project owned by SunCal Marblehead, located in

12   the City of San Clemente, California, as more particularly described herein.

13        2.1.99    Maximum Distribution.  A Distribution to a Holder of an Allowed

14   Unsecured Claim against a Group I: Voluntary Debtor equal to one hundred percent (100%) of the

15   amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and

16   as of the Group I: Voluntary Debtor's Petition Date.

17        2.1.100    MB Firm.  Miller Barondess, LLP.

18        2.1.101    Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to

19   California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

20   allegedly satisfy the requirements of Bankruptcy Code 546(b).

21        2.1.102    Minimum Increment.  Minimum Increment applicable to the sales of the

22   Group I: Voluntary Projects are the following: one hundred thousand dollars ($100,000) for the

23   Ritter Ranch Project, seventy-five thousand dollars ($75,000) for the Bickford Ranch Project,

24   seventy-five thousand dollars ($75,000) for the Emerald Meadow Project and fifty thousand dollars

25   ($50,000) for the Acton Project.

26        2.1.103    Minimum Sale Price. The minimum gross sale price that must be paid for

27   Group I: Voluntary Project before such projects can be sold pursuant to the Plan, which prices are

28   the following: Ritter Ranch Project - $19,620,000, Bickford Ranch Project - $9,810,000, Emerald

-17-

1  Meadows Project - $5,490,000, and Acton Project - $1,500,000.

2         2.1.104  <u>Net Litigation Recoveries</u>.  Litigation Recoveries less associated

3  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

4  Litigation Recoveries.

5         2.1.105  <u>Net Sales Proceeds</u>.  The Cash generated from the sale(s) or liquidation of

6  the Group I: Voluntary Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling

7  expenses, taxes,  and any associated Post-Confirmation Expenses and Administrative Claims

8  incurred in furtherance of such sales or liquidation of such Assets.

9         2.1.106  <u>Net Sales Proceeds Account(s)</u>.  Separate account(s) that will be

10  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

11  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

12  and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

13  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

14  where there are two Disputed Liens on a single Project, in which case, there shall be a single

15  account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or

16  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

17  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

18  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

19  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

20  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

21  thereto shall become Available Cash and shall be transferred to the applicable Distribution

22  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

23  allowed and deemed valid but subject to the equitable subordination causes of action in the

24  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

25  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

26         2.1.107  <u>Opening Bid</u>.  Opening Bid means the offer for one, or both of the Group

27  I: Voluntary Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for

28  either one, some or all of the Group I: Voluntary Projects.

2.1.108   <u>Orders for Relief Date</u>.  The following are dates that orders for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.109   <u>Palmdale Hills</u>.  Palmdale Hills Property LLC, a Delaware limited liability company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

2.1.110   <u>Palmdale Hills CFD Bonds</u>.  Certain CFD bonds issued by the City of Palmdale, in the amount of approximately $33 million that are owned by Palmdale Hills.

2.1.111   <u>Palm Springs Village Project</u>.  The Project owned by SunCal PSV, located in the City of Palm Springs, California, as more particularly described herein.

2.1.112   <u>Person</u>.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.113   <u>Petition Dates</u>.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |

| | |
|---|---|
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.114   <u>Plan(s)</u>.  The "Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC," together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan(s).

2.1.115   <u>Plan Period</u>. The period from the Effective Date to the Plan Termination Date.

2.1.116   <u>Plan Termination Date</u>. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.117   <u>Plan Sponsor</u>.  The entity that has committed to cause and/or arrange the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

2.1.118   <u>Plan Trust</u>.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.119   <u>Plan Trustee</u>. The Plan Trustee under the Plan Trust is Acquisitions.

2.1.120    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Assets in accordance with the terms of the Plan.

2.1.121    Plan Trust Assets. Plan Trust Assets means all property within the Chapter 11 estates of the Group I: Voluntary Debtors.

2.1.122    Post-Confirmation Expenses. The fees and expenses incurred by the Plan Trust, the Plan Trustee and the Voluntary Debtors' Committee and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Group I: Voluntary Debtors' Chapter 11 Cases.

2.1.123    Priority Claim. Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.124    Pro Rata. Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.125    Professional. A Person or Entity (a) employed by the Group I: Voluntary Debtors, the Voluntary Debtors' Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.126    Professional Fees. All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.127    Projects. The Debtors' residential real estate development projects and

1    other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

2            2.1.128    <u>Qualifying Bid</u>.  Qualifying Bid means, with respect to any bid on a

3    Group I: Voluntary Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the

4    Initial Overbid Amount, unless it is the Initial Overbid, or B) in excess of the immediately

5    preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

6            2.1.129    <u>Qualifying Bidder</u>.  Qualifying Bidder means a bidder who a) has

7    deposited the sum of three hundred thousand dollars ($300,000) into an escrow designated by the

8    SunCal Plan Proponents in the case of a bid for the Ritter Ranch Project or a bid for the Bickford

9    Ranch Project, the sum of two hundred thousand dollars ($200,000) in the case of a bid for the

10   Emerald Meadows Project, and one hundred thousand dollars ($100,000) in the case of a bid for

11   the Acton Project; b) who has provided the SunCal Plan Proponents evidence confirming that such

12   bidder has the financial means to acquire the applicable Group I Assets: Voluntary Debtor(s) that

13   such bidder is seeking to acquire, and c) agreed that this sum will be forfeited as liquidated

14   damages if such bidder is the Winning Bidder and fails to perform.

15           2.1.130    <u>Reliance Claim</u>. An Allowed Unsecured Claim, Allowed Mechanic's

16   Lien Claim, or Allowed Bond Indemnification Claim against a Group I: Voluntary Debtor that

17   would entitle the holder thereof to be the beneficiary of any equitable subordination judgment

18   obtained against a Lehman Entity by such holder. This definition includes the holders of qualifying

19   claims that are secured by mechanics liens.  All Allowed Mechanic's Lien Claims and Bond

20   Indemnification Claims are Reliance Claims.  Moreover, all Allowed General Unsecured Claims

21   against Acton are Reliance Claims (excluding any deficiency claim arising from the Lehman

22   Disputed Claims).  Further, all Allowed General Unsecured Claim against SunCal Emerald are

23   also Reliance Claims (excluding claims address in the Emerald Compromise and excluding any

24   deficiency claim arising from the Lehman Disputed Claims).  A list of the Reliance Claims for

25   Palmdale Hills and SunCal Bickford is attached to the Disclosure Statement as Exhibit "8."

26           2.1.131    <u>Reliance Claimant</u>. The holder of a Reliance Claim. A list of the Reliance

27   Claimants for Palmdale Hills and SunCal Bickford are attached to the Disclosure Statement as

28   Exhibit "8," and the holders of mechanics lien claims.

2.1.132    <u>Ritter Ranch Loan Agreement</u>.  That certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, LCPI, as administrative agent and lender, pursuant to which LCPI made a loan in the maximum aggregate principal amount of approximately $264,000,000.  The Ritter Ranch Loan Agreement is allegedly secured by a first-priority deed of trust on all real and personal property owned by Palmdale Hills.  The Ritter Ranch Loan Agreement has an asserted balance due of $287,252,096.31 as of March 30, 2009.

2.1.133    <u>Ritter Ranch Project</u>.  The Project owned by Palmdale Hills, located in the City of Palmdale, California, as more particularly described herein.

2.1.134    <u>Ritter Ranch Project Break-up Fee</u>. The amount equal to 2.5% of the Minimum Sales Price for the Ritter Ranch Project, plus actual amounts paid by LitCo on Allowed Administrative Claims for the Palmdale Hills Case if LitCo is the Stalking Horse Bidder and is not the Winning Bidder.

2.1.135    <u>Sale Period</u>.  The Sale Period is the time period during which the SunCal Plan Proponents must consummate a sale or liquidation of the Group I: <u>Voluntary</u> Projects. The Sale Period shall commence on the Confirmation Date and shall expire on the thirtieth (30th) day after the Effective Date, unless extended by the Bankruptcy Court after notice and hearing.

2.1.136    <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.137    <u>Schedules</u>.  The schedules of assets and liabilities and list of equity security holders Filed by the Group I: Voluntary Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.138    <u>Secured Claim</u>.  Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and unavoidable Lien on the Group I: Voluntary Debtor(s)' Assets.

2.1.139    <u>Stalking Horse Bidder</u>.  The Qualified Bidder who submits the Opening Bid.

2.1.140    <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its

1    Affiliates.

2         2.1.141    <u>SunCal Bickford</u>.  SunCal Bickford Ranch, LLC, a Delaware limited

3    liability company, a Voluntary Debtor herein, and the owner of the Bickford Ranch Project.

4         2.1.142    <u>SunCal Emerald</u>. SunCal Emerald Meadows, LLC, a Delaware limited

5    liability company, a Voluntary Debtor herein, and the owner of the Emerald Meadows Project.

6         2.1.143    <u>SunCal Emerald Meadow Project Break-up Fee</u>. The amount equal to

7    2.5% of the Minimum Sales Price for the Emerald Meadows Project, plus actual amounts paid by

8    LitCo on Allowed Administrative Claims for the SunCal Emerald Case if LitCo is the Stalking

9    Horse Bidder and is not the Winning Bidder.

10         2.1.144    <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited

11    liability company, and the former property manager for the Projects, which has been succeeded by

12    Argent Management.

13         2.1.145    <u>SunCal Marblehead</u>. SunCal Marblehead, LLC, a Delaware limited

14    liability company, a Trustee Debtor, and the owner of the Marblehead Project.

15         2.1.146    <u>SunCal Marblehead/SunCal Heartland Loan Agreement</u>.  That certain

16    Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

17    as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

18    Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

19    pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of

20    approximately $316,061,300.  The SunCal Marblehead/SunCal Heartland Loan Agreement is

21    allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

22    The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

23    $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to this loan

24    agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

25         2.1.147    <u>SunCal Plan Proponents</u>.  The Group I: Voluntary Debtors, in their

26    capacity as debtors and debtors in possession in their respective Chapter 11 cases, and Acquisitions

27    as a creditor and party-in-interest, that are proposing the Plans.

28         2.1.148    <u>SunCal PSV</u>. SunCal PSV, LLC, a Delaware limited liability company, a

-24-

1  Trustee Debtor (a Group I: Voluntary Debtor), and the owner of the Palm Springs Village Project.

2      2.1.149   SunCal PSV Loan Agreement.  That certain Term Loan and Revolving

3  Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower,

4  and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the

5  maximum aggregate principal amount of approximately $90 million.  The SunCal PSV Loan

6  Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project.

7  The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30,

8  2009.

9      2.1.150   Tax.  Any tax, charge, fee, levy, impost or other assessment by any

10  federal, state, local or foreign taxing authority, including, without limitation, income, excise,

11  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

12  estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

13  additions attributable to, or imposed on or with respect to such assessments.

14      2.1.151   Tax Claim.  Any Claim for any Tax to the extent that it is entitled to

15  priority in payment under Section 507(a)(8) of the Bankruptcy Code.

16      2.1.152   Trustee Debtor(s). The following Debtors, individually or collectively,

17  that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

18  Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal

19  Torrance, and SunCal Oak Knoll.

20      2.1.153   Unpaid Secured Real Property Tax Claims.  Secured Claims held by

21  various government entities secured by liens on the underlying real properties owned by the

22  Debtors but that are non-recourse to the Debtors.

23      2.1.154   Unsecured Claim. An Unsecured Claim is any Claim that is not an

24  Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

25      2.1.155   Voluntary Debtor(s).  The following  Chapter 11 debtors and debtors-in-

26  possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

27  Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

28  Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

1    Rio and Tesoro.

2              2.1.156    <u>Voluntary Debtors' Committee</u>.  The Official Committee of Unsecured

3    Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

4    Bankruptcy Code.

5              2.1.157    <u>Winning Bid</u>. The highest Qualifying Bid received for the Ritter Ranch

6    Project, the Bickford Ranch Project, Emerald Meadows Project or the Acton Project.

7              2.1.158    <u>Winning Bidder</u>.  The party that submits the highest Qualifying Bid.

8        **2.2**    **Rules of Construction.**

9              For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

10    in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

11    singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

12    masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

13    Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

14    such document or schedule, as it may have been or may be amended, modified or supplemented

15    pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

16    entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

17    or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

18    and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

19    in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

20    the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

21    contract, instrument, release, indenture, agreement, or other document being in a particular form or

22    on particular terms and conditions means that such document shall be substantially and materially

23    in such form or substantially and materially on such terms and conditions; (h) any reference in the

24    Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

25    Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

26    may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

27    102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

28    express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

**2.3**     **Exhibits.**

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full therein.

**III.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

**3.1**     **Introduction**.

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority.  However, certain types of Claims are not classified in any Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the Code.  They are not considered impaired and they do not vote on the Plan, because they are automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal Plan Proponents have not placed the following Claims in a Class.  The treatment of these unclassified Claims is as provided below.

**3.2**     **Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the later of Effective Date of the Plan(s) or the date of their allowance, unless a particular Holder agrees to a different treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be paid from the applicable Distribution Account(s) pursuant to the LitCo Plan Loan.

**3.3**     **Repayment of Allowed Administrative Claims.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the

-27-

Debtors in Possession (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**3.4    Administrative Claims Bar Date.**

All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred; any party that seeks payment of Administrative Claims that (i) is required to file a request for payment of such Administrative Claims and (ii) does not file such a request by the deadline established herein shall be forever barred from asserting such Administrative Claims against the Debtors, the Plan Trust, their estates, or any of their property.

**3.5    Treatment of Unsecured Tax Claims.**

Tax Claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim receive the present value of such Claim in deferred cash payments, over a period not exceeding five (5) years from the petition date and that such treatment not be less favorable than the treatment accorded to non priority unsecured creditors.

At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of each three-month period following the Effective Date, during a period not to exceed five years

1  after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

2  unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

3  United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

4  the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

5  favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

6  forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

7      **3.6    Summary of the Group I: Voluntary Debtors Plans' Treatment of Bond**

8           **Indemnity Claims.**

9      Allowed Bond Indemnification Claims are treated as Reliance Claims.  In the event that

10  such Bond Indemnification Claim arises from a general unsecured claim, it is classified in Class 6.

11  If the event that such Bond indemnification Claim arises from a Mechanic's Lien Claim, then it is

12  classified in Class 3.  Contingent Bond Indemnification Claims are classified separately as Class 4

13  Claims.

14      The Bond Companies assert that surety bonds were executed on behalf of all or some of the

15  Group I: Voluntary Debtors as a principal for its respective Group I: Voluntary Project ("Surety

16  Bonds").  The Surety Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning

17  Bidder(s) determines to develop the Group I: Voluntary Project(s), the Surety Bond will not apply

18  to the Winning Bidder(s)' bonding requirements with respect to such development.  If a Winning

19  Bidder(s) determines to develop all or a portion of its respective Group I: Voluntary Project(s), it

20  will be required at that time to obtain new Surety Bonds from the Bond Companies or another

21  surety, to the extent surety bonds are required by applicable state and local development

22  requirements.

23                    **IV**.

24         **CLASSIFICATION OF CLAIMS AND INTERESTS**

25      As required by the Code, the Plan places Claims and Interests into various Classes

26  according to their right to priority and other relative rights.  Each of the Plan(s) specify whether

27  each Class of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment

28  each Class will receive.  The table below lists the Classes of Claims established under the Plan and

states whether each particular Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS AGAINST THE GROUP I: VOLUNTARY PROJECTS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| **Class 1.1** | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Ritter Ranch Project in the amount of $3,008,044.29. | Palmdale Hills 12 |
| **Class 1.2** | Placer County as the Holder of an Unpaid Secured Real Property Tax Claim against the Bickford Ranch Project in the amount of $9,467,165. | Scheduled Amount |
| **Class 1.3** | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Emerald Meadows Project in the amount of $798,256. | SunCal Emerald Meadows 9 |
| **Class 1.4** | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Acton Project in the amount of $463,325. | Acton Estates 1 |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.1** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal Bickford  arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | SunCal Bickford: 16 |

---

[2] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

-30-

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.2** | The Holder of Lehman's Disputed Claims filed by LCPI against Palmdale Hills arising from the Ritter Ranch Loan Agreement in the asserted amount of $287,252,096. | Palmdale Hills 65 |
| **Class 2.3** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal I, SunCal III, Acton Estates, SunCal Emerald, SunCal Bickford, SunCal Summit Valley arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | SunCal Emerald Meadows 7 |
| **Class 2.4** | The Holders of Lehman's Disputed Claims filed by LCPI against SunCal I, SunCal III, Acton Estates, SunCal Emerald, SunCal Bickford, SunCal Summit Valley arising from the SunCal Communities I Loan Agreement in the asserted amount of $343,221,391. | Acton Estates:  6 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: VOLUNTARY PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.1** | The Holder of the asserted Mechanic Lien Claim held by Asphalt Professionals against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | Palmdale Hills 1 and 46 |
| **Class 3.2** | The Holder of the asserted Mechanic Lien Claim held by Sierra Cascade Construction against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | Palmdale Hills 33 |
| **Class 3.3** | The Holder of the asserted Mechanic Lien Claim held by Staats Construction. Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | Palmdale Hills 51 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: VOLUNTARY PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.4** | The Holder of the asserted Mechanic Lien Claim held by Southland Farmers, Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | Palmdale Hills 55, 67 and 68 |
| **Class 3.5** | The Holder of the asserted Mechanic Lien Claim held by Chamelon Design Inc. against the Ritter Ranch Project owned by Palmdale Hills in the amount of $60,920. | Palmdale Hills 93, 99 |
| **Class 3.6** | The Holder of the asserted Mechanic Lien Claim held by MHM Engineers against the Bickford Ranch Project in the amount of $8,916. | SunCal Bickford 5 |
| **Class 3.7** | The Holder of the asserted Mechanic Lien Claim held by Land Architecture against the Bickford Ranch Project in the amount of $100,245. | SunCal Bickford 6 |
| **Class 3.8** | The Holder of the asserted Mechanic Lien Claim held by Kiewit Pacific Co. against the Bickford Ranch Project in the amount of $1,868,357. | SunCal Bickford 10 |
| **Class 3.9** | The Holder of the asserted Mechanic Lien Claim held by ARB, Inc. against the Bickford Ranch Project in the amount of $1,052,272. | SunCal Bickford 15 |
| **Class 3.10** | The Holder of the asserted Mechanic Lien Claim held by Independent Construction against the Bickford Ranch Project in the amount of $117,209. | SunCal Bickford 28 |
| **Class 3.11** | The Holder of the asserted Mechanic Lien Claim held by Marques Pipeline, Inc. against the Bickford Ranch Project in the amount of $330,118. | SunCal Bickford 29 and 30 |
| **Class 3.12** | The Holder of the asserted Mechanic Lien Claim held by Hall & Foreman, Inc. against the Emerald Meadows Project in the amount of $287,727. | SunCal Emerald 13 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: VOLUNTARY PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.13** | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Emerald Meadows Project in the amount of $991,315. | SunCal Emerald 15 and 16 |
| **Class 3.14** | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Emerald Meadows Project owned by SunCal Emerald in the amount of $14,893. | Palmdale Hills 15 |

| CLASSIFICATION OF CONTINGENT BOND INDEMNIFICATION CLAIMS AGAINST THE GROUP I: VOLUNTARY PROJECTS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Contingent Bond Indemnification Claims that are Allowed Secured Claims arising from bonds issued with respect to the Group I: Voluntary Projects | **Various Filed and Scheduled** |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| **Class 5.1** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $10,950 against the Group I: Voluntary Debtors. | Various Filed and Scheduled |

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS [3] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.1** | The holders of Allowed Unsecured Reliance Claims against Palmdale. | Various Filed and Scheduled |
| **Class 6.2** | The holders of Allowed Unsecured Reliance Claims against SunCal Bickford. | Various Filed and Scheduled |
| **Class 6.3** | The holders of Allowed Unsecured Reliance Claims against SunCal Emerald Meadows. | Various Filed and Scheduled |
| **Class 6.4** | The holders of Allowed Unsecured Reliance Claims against Acton Estates. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS [4] | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.1** | Claimants holding Allowed Unsecured Claims against Palmdale that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.2** | Claimants holding Allowed Unsecured Claims against SunCal Bickford that are not Reliance Claims | Various Filed and Scheduled |

[3] Unsecured Claims are generally be placed within the same class and they receive the same treatment under a Plan. However, the SunCal Plan Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1, 6.2. 6.3 and 6.4, and 7.1, 7.2, 7.3 and 7.4. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1, 6.2, 6.3 and 6.4, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The SunCal Plan Proponents believe that the Holders of Reliance Claims are the potential beneficiaries of the equitable subordination causes of action in the Lehman Adversary Proceeding. The Unsecured Creditors in Classes 7.1, 7.2, 7.3 and 7.4 do not hold Reliance Claims. Under the Plan, the Reliance Claimants who sell their Reliance Claimants to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of 55 percent on their Allowed Unsecured Claims *from non-estate funds. Accordingly, the 55 percent payment is being paid from non-estate funds, for a non-estate asset.* If a Reliance Claimant elects not to sell this claim, then this claimant will receive the exact same distribution rights that the Class 7.1, 7.2, 7.3 and 7.4 claimants, respectively, will receive under the Plan, unless the Court allocates a part of any judgment granted in the Lehman Adversary Proceeding to these particular claims. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.

[4] This Class includes, but it is not limited to, Bond Claims that are not Allowed Secured Claims within Class 4.1.

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS AGAINST THE GROUP I: VOLUNTARY DEBTORS[4] | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.3** | Claimants holding Allowed Unsecured Claims against SunCal Emerald Meadows that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.4** | Claimants holding Allowed Unsecured Claims against Acton Estates that are not Reliance Claims | Various Filed and Scheduled |

| HOLDERS OF ALLOWED INTERESTS AGAINST THE GROUP I: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 8** | **Claimant** | **Scheduled** |
| **Class 8.1** | Allowed Interests in Palmdale held by SCC Palmdale, LLC | As scheduled |
| **Class 8.2** | Allowed Interests in SunCal Bickford held by SunCal I. | Scheduled Amount |
| **Class 8.3** | Allowed Interests in SunCal Emerald Meadows held by SunCal I | Scheduled Amount |
| **Class 8.4** | Allowed Interests in Acton Estates held by SunCal I | Scheduled Amount |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1    The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against the Group I: Voluntary Projects (Classes 1.1 through 1.4).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 through 1.4 are impaired under the Plan and shall receive one of the following two treatments at the Plan Trustee's discretion based solely on the option of the Group I: Voluntary Debtor:

A.    Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and such Allowed Claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2) from the sale of the Group I: Voluntary Projects during the Sales Period; or

-35-

B.      Such Holders shall retain their existing lien rights and shall accrue interest

as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and

California Revenue and Taxation Code Sections 4102 and 4103, and payment on such

Allowed Claims shall be satisfied over sixty-one (61) months from the applicable Group I:

Voluntary Debtor's Petition Date.

**5.2      The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s)
Against the Group I: Voluntary Debtors (Class 2.1 through 2.4).**

The Holder(s) of Disputed Secured Claims within Class 2.1 through 2.4 shall receive the

indubitable equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii),

through the following treatment:

A.      <u>Lien Rights</u>. The Class 2.1 through 2.4 Holder(s) shall retain their interest in

the Disputed Lien(s) against the applicable Group I: Voluntary Projects and the Group I: Voluntary

Other Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the

Allowance of such Disputed Secured Claims and determining the validity, priority and extent of

the applicable Disputed Liens against the applicable Group I: Voluntary Projects, which secure

these claims, except as follows:

1.      The Group I: Voluntary Projects and the Group I: Voluntary Other

Assets subject to the Class 2.1 through 2.4 Disputed Liens will be sought to be sold free and clear

of such liens during the Sales Period, without the right to credit bid under Section 363(k) with

respect to Disputed Claims and Disputed Liens. These Disputed Liens shall then attach to the Net

Sales Proceeds from the sale, which shall be deposited into the Net Sales Proceeds Account,

pending a resolution of such Disputed Secured Claims and Disputed Liens.  The marketing process

and sales procedures for the Group I: Voluntary Projects and the Group I: Voluntary Other Assets

are described in Article X hereof.

2.      To the extent that a Disputed Secured Claim held by either the Class

2.1 through 2.4 Claimants against the applicable Group I: Voluntary Projects and Group I:

Voluntary Other Assets  is disallowed, and the Disputed Lien associated with this Disputed

Secured Claim is consequently released to the extent of this disallowance, the Plan Trustee shall be

-36-

1    authorized to use to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s) to pay

2    other Allowed Claims in their order of priority, in accordance with the terms of the Plan;

3                        3.        To the extent that a Disputed Secured Claim held by either the Class

4    2.1 through 2.4 Claimant and the associated Disputed Lien(s) against the applicable Group I:

5    Voluntary Projects and Group I: Voluntary Other Assets  is subordinated, the Plan Trustee shall be

6    authorized to use to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s), or

7    where the priority of the Disputed Liens has been subordinated by the Court, to pay other Allowed

8    Claims in their order of priority, in accordance with the terms of the Plan, to the extent of the

9    subordination; and

10                       Notwithstanding the existence of the Disputed Secured Claims and the

11   Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Sales Proceeds

12   Account subject to these claims and liens to pay the claims of other creditors in accordance with

13   the terms of the applicable Plan, if the Class 2.1 through 2.4 claimants' interests in Group I will

14   remain adequately protected after this release.

15                   B.        Distributions To The Class 2.1 through 2.4 Claimants. If the Plan Trustee

16   consummates a sale or otherwise liquidates the particular Group I Voluntary Project and/or Group

17   I: Voluntary Other Assets subject to the Class 2.1 through  2.4 Disputed Secured Claim(s) and/or

18   Disputed Lien(s) during the Sales Period, as provided for above, the Holder(s) of such Disputed

19   Secured Claim shall receive a distribution to the extent of available funds from the applicable Net

20   Sale Proceeds Account(s) to the extent required by an entered Order of the Court, that is not

21   subject to a stay pending appeal, determining the allowance and priority of the Disputed Secured

22   Claims and the validity, priority and extent of the Disputed Liens in, including but not limited to,

23   the Lehman Adversary Proceeding and the Lehman Claims Objections.

24                   C.        Abandonment of Unsold Group I: Voluntary Projects and Group I:

25   Voluntary Other Assets. If for any reason the Plan Trustee is unable to sell any of the Group I:

26   Voluntary Projects and/or Group I: Voluntary Other Assets during the Sales Period, they will be

27   abandoned as of 11:59 p.m. on the last day of the Sales Period, no payment shall be made to

28   Holders of Class 2.1 through  2.4 Claims, as the case may be, and such Holder(s) shall be free to

1    exercise any and all remedies that they may hold with respect to the Group I: Voluntary Projects

2    and the Group I: Voluntary Other Assets under applicable California law.

3    **5.3    The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against**

4    **the Group I: Voluntary Projects (Classes 3.1 Through 3.14).**

5    The treatment of the Holders of Allowed Classes 3.1 through 3.14 Secured Claims under

6    the applicable Plan shall be as follows:

7    A.    The Holder(s)' rights are impaired under the Plan;

8    B.    The Holder(s) shall retain their respective underlying liens on the applicable

9    Group I: Voluntary Projects, but shall forebear from pursuing their rights and remedies until the

10    expiration of the Sales Period;

11    C.    The Holders of Class 3.1 through 3.14 claims shall receive a distribution, to

12    the extent of available, of Net Sale Proceeds in accordance with the priorities set forth under the

13    Bankruptcy Code, subject to a Final Order(s) resolving the allowance and priority of the applicable

14    Lehman's Disputed Claim(s) and the validity of the applicable Lehman Disputed Lien(s) in,

15    including but not limited to, the Lehman Adversary Proceeding; and

16    D.    If for any reason the Plan Trustee is unable to sell any of the Group I:

17    Voluntary Projects during the Sales Period, they will be abandoned as of 11:59 p.m. on the last day

18    of the Sales Period, no payment shall be made to Holders of Classes 3.1 through 3.14 Claims, as

19    the case may be, and such Holder(s) shall be free to exercise any and all remedies that they may

20    hold with respect to the Group I: Voluntary Projects under applicable California law.

21    **5.4    The Plan's Treatment of Holders of Contingent Bond Indemnification Claims**

22    **Against the Group I: Voluntary Projects (Class 4.1).**

23    The Bond Companies assert that surety bonds were executed on behalf of all or some of the

24    Group I: Voluntary Debtors as a principal for its respective Group I: Voluntary Project ("Surety

25    Bonds"). The Surety Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning

26    Bidder(s) determines to develop the Group I: Voluntary Project(s), the Surety Bond will not apply

27    to the Winning Bidder(s)' bonding requirements with respect to such development. If a Winning

28    Bidder(s) determines to develop all or a portion of its respective Group I: Voluntary Project(s), it

-38-

1   will be require at that time to obtain new Surety Bonds from the Bond Companies or another

2   surety, to the extent surety bonds are required by applicable state and local development

3   requirements.

4         The rights of each holder of an Allowed Contingent Bond Indemnification Claim arising

5   from a bond issued with respect to a Group I <u>Voluntary</u> Project, shall, to the extent such claim(s)

6   are determined to be a secured claim(s), be impaired under the Plan. Such claims shall receive the

7   following treatment:

8           A.    Each such Allowed Secured Claim shall be placed in a separate class and

9   receive a separate ballot for voting purpose;

10          B.    Each Holder(s) shall retain their respective underlying liens on the

11  applicable Group I: Voluntary Project, but shall forebear from pursuing their rights and remedies

12  until the expiration of the Sales Period;

13          C.    If the Plan Trustee is able to consummate a sale of the Group I: <u>Voluntary</u>

14  Projects subject to the liens asserted by the Holders of Class 4.1 claimants  during the Sales Period,

15  such Holders shall receive a distribution, to the extent of available Net Sale Proceeds in accordance

16  with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s) resolving the

17  allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity of the

18  applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

19  Proceeding; and

20          D.    If the Plan Trustee is unable to consummate a sale of the Group I: <u>Voluntary</u>

21  Projects during the Sales Period, such real property collateral shall be deemed abandoned by the

22  Plan Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to

23  pursue their respective rights against the real property collateral under applicable California law.

24  **5.5**    <u>**The Plan's Treatment of Holders of Priority Claims Against the Group I:**</u>

25      <u>**Voluntary Debtors (Class 5.1)**</u>.

26  The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows**:**

27          A.    The Holder(s) are unimpaired under the Plan; and

28          B.    The Holder(s) shall be paid from the applicable Distribution Account(s) or

1    the LitCoPlan Loan (i) the full amount of such Allowed Priority Claim in Cash on the later of (x)

2    the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such

3    Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed

4    Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and

5    the Plan Trustee.

6    **5.6**    **The Plan's Treatment of Holders of General Unsecured Claims that are**

7    **Reliance Claims Against the Group I: Voluntary Debtors (Classes 6.1, 6.2, 6.3**

8    **and 6.4).**

9    The rights of Holders of Allowed Class 6.1, 6.2., 6.3 and 6.4 Claims are impaired under the

10    Plan. They have the right to choose between the following treatment options:

11    A.    Option A: A claimant in these classes *who votes in favor of the Plan*, and

12    who chooses Option A, will have the right to sell to LitCo all of the claimant's right, title and

13    interest in all Allowed Reliance Claims and all of the claimant's Litigation Rights against the

14    applicable Debtor, SunCal Affiliates, and the Lehman Entities, for the sum of fifty-five cents

15    ($0.55) per dollar of allowed claim, payable in cash on the Effective Date, provided there is no stay

16    pending an appeal of the Confirmation Order, in full satisfaction of such claimant's Allowed

17    Reliance Claims; or

18    B.    Option B: A claimant in these classes who votes against the Plan, or who

19    votes in favor of the Plan, but does not choose Option A, or who does not vote on the Plan, will 1)

20    receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such

21    claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the

22    Lehman Entities and its right to receive such claimant's share, as determined by the Court, in the

23    benefits and Litigation Recoveries resulting from a judgment or order entered in the Lehman

24    Adversary Proceeding, the Contract Action, or the Lehman Claims Objections, and 3) right to

25    receive a pro-rata share of any funds payable from the applicable Distribution Account(s), after

26    payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed

27    Priority Claims.

28

1

2     **5.7**     **The Plan's Treatment of Holders of Allowed General Unsecured Claims that**

3                 **Are Not Reliance Claims Against the Group I: Voluntary Debtors (Classes 7.1,**

4                 **7.2, 7.3 and 7.4).**

5         The rights of Holders of Allowed Class 7.1, 7.2, and 7.4 Claims are impaired under the

6 Plan. Under the Plan, each claimant will 1) receive a minimum distribution in cash, on the

7 Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-

8 rata share of any funds payable from the applicable Distribution Account(s), after payment in full

9 of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims

10 and any sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class

11 6.1, 6.2, 6.3 and 6.4 Claims from either the Claim Reduction Amounts, or on account of a

12 judgment in the Lehman Adversary Proceeding.

13         Class 7.3 consists of the claims subject to the Emerald Compromise.  The Emerald

14 Compromise, as modified or amended, shall be approved by separate order of the Court pursuant to

15 Bankruptcy Rule 9019, or as provided in the Plan and approved by the Court.

16     **5.8**     **The Plan's Treatment of Holders of Allowed Interests Against the Group I:**

17                 **Voluntary Debtors.**

18         The Interests of the Holders in Class 8.1, 8.2, 8.3 and 8.4 are impaired under the Plan. All

19 such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these

20 Holders on account of such Interest(s).

21                                 **VI.**

22                 **ACCEPTANCE OR REJECTION OF THE PLAN**

23     **6.1**     **Introduction.**

24         PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

25 SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

26 CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

27 discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

28 which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors

1   cannot represent that the discussion contained below is a complete summary of the law on this

2   topic.

3        Many requirements must be met before the Court can confirm the Plan.  Some of the

4   requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

5   the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

6   whether the Plan is feasible.  The requirements described herein are not the only requirements for

7   confirmation.

8        **6.2    Who May Object to Confirmation of the Plan.**

9        Any party in interest may object to the confirmation of the Plan, but as explained below not

10  everyone is entitled to vote to accept or reject the Plan.

11       **6.3    Who May Vote to Accept/Reject the Plan.**

12       A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of

13  the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and

14  (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected").

15  The votes will be tabulated on a Debtor by Debtor basis.

16       **6.4    What Is an Allowed Claim/Interest.**

17       As noted above, a Holder of a Claim or Interest must first have an Allowed Claim or

18  Allowed Interest to vote.

19       **6.5    What Is an Impaired Class.**

20       A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

21  or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

22  In this case, the Debtors believe that all Classes, except for Class 5.1 are impaired.

23       **6.6    Who Is Not Entitled to Vote.**

24       The following four types of Claims are not entitled to vote: (1) Claims that have been

25  disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to

26  Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain

27  any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such

28  Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy

-42-

1   Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

2   they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes

3   that do not receive or retain any property under the Plan do not vote because such Classes are

4   deemed to have rejected the Plan. The Debtors believe that all Classes are entitled to vote except

5   Classes 1.1 through 1.4 and 5.1. These classes are not impaired under the Plan and consequently

6   are not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held

7   by the Holders in Classes 8.1, 8.2, 8.3 and 8.4 are being cancelled under the Plan; accordingly

8   these Interest Holders are deemed to have voted to reject the Plan.

9        EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

10   HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

11        **6.7    Who Can Vote in More than One Class.**

12        A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

13   Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

14   the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

15   otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

16   Subordinated Note Claims), and may vote the Claims held in each Class.

17        **6.8    Votes Necessary for a Class to Accept the Plan.**

18        A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

19   number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

20   accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

21   two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

22   the Plan.

23        **6.9    Treatment of Nonaccepting Classes.**

24        As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

25   Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

26   required by the Code and at least one impaired Class of Claims accepts the Plan. The process by

27   which a plan may be confirmed and become binding on non-accepting Classes is commonly

28   referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

-43-

1    nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

2    requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

3    equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

4    11 U.S.C. § 1129(b) and applicable case law.

5          **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

6          The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

7    impaired Class if such Class does not vote to accept the Plan.

8                                            **VII.**

9          **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

10          **7.1    Introduction.**

11          This section is intended to address how the SunCal Plan Proponents intend to implement

12    the provisions of the Plan.  It addresses the marketing and the sale of the Group I: Voluntary

13    Projects and the Group I: Voluntary Other Assets, the transfer of the Plan Trust Assets to the Plan

14    Trust, the nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust,

15    the resolution of disputed claims, the sources of funds that will be used to pay claims and the

16    mechanics of how claims will be paid.

17          **7.2    Sale Process for the Group I: Voluntary Projects and Group I: Voluntary**

18                  **Other Assets During the Sales Period**.

19          The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

20    the highest dividend possible by selling the estates' primary assets, the Group I: Voluntary

21    Projects, to the highest bidder. The process of marketing the Group I: Voluntary Projects for sale

22    will begin, pursuant to the Confirmation Order, immediately after the entry of this order.

23    Acquisitions shall manage the marketing process initially in its capacity as a SunCal Plan

24    Proponent and as the Plan Trustee after the Effective Date.  Furthermore, the Voluntary Debtors'

25    Committee shall be consulted and have the opportunity to object to the sales process and request a

26    hearing with the Bankruptcy Court.

27          7.2.1    The Group I: Voluntary Projects Marketing and Bid Procedures.

28          The SunCal Plan Proponents and the Plan Trustee will pursue the following sale

procedures culminating into a public auction for the sale of the Group I: Voluntary Projects after the Confirmation Date and during the Sales Period.

    7.2.2    Implementation of a Marketing Program. Once the Plan is confirmed, the SunCal Plan Proponents will market the Group I: Voluntary Projects for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group I Voluntary Project to the real estate brokerage community; b) advertising the Group I: Voluntary Projects for sale on a website that includes links allowing direct access to all relevant information regarding the Group I: Voluntary Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

    7.2.3    Identifying a Stalking Horse Bidder. On the first business day after the Effective Date, the Plan Trustee will accept, on a provisional basis, an Opening Bid for the Group I: Voluntary Projects.  The bidder whose Opening Bid is accepted for each Group I Voluntary Project will become the "Stalking Horse Bidder."  The Opening Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group I Voluntary Project. The Plan Trustee shall also select Qualified Bidders at this time.

    7.2.4    The Sale Contract. The sale contract that will be entered into with the Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

        1.    Overbid Provisions. The contract will allow the Plan Trustee to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the Stalking Horse Bid by the Initial Overbid Amount applicable to each Group I Voluntary Project. In the case of Ritter Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Ritter Ranch Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Bickford Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the Bickford Ranch Break-up Fee and seventy-five thousand dollars ($75,000). In the case of the Emerald Meadows Project, the Initial Overbid Amount is a sum that is not less than the sum of the

-45-

applicable Opening Bid, the Emerald Meadows Break-up Fee and seventy-five

thousand dollars ($75,000). In the case of the Acton Project, the Initial Overbid

Amount is a sum that is not less than the sum of the applicable Opening Bid, the

Acton Project Break-up Fee, and fifty thousand dollars ($50,000).

2.      Break-Up Fees. The sale contract will include a "break-up fee"

provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid

is overbid, and another Qualified Bidder purchases the Group I Voluntary Project(s)

that is the subject of the Opening Bid.

3.      Sale Free and Clear of Liens. The sale contract will provide that the

Group I Voluntary Project(s) are being sold free and clear of all monetary liens and

encumbrances and that no party holding a lien against the projects, including the

Lehman Lenders, may submit a "credit bid" based upon the amount allegedly owing

on the claims secured by the project being sold.

7.2.5    The Auction.  Fourteen (14) days after the date of the selection of the

Stalking Horse Bidder, the Plan Trustee will conduct a public auction wherein all Qualified

Bidders who have submitted Qualified Bids for the Group I: Voluntary Projects will have

the opportunity to increase their bids for these Projects. The Qualified Bidder that submits

the highest bid for the Project will then be designated the Winning Bidder. The Winning

Bidder will then have fifteen (15) days pay the Winning Bid amount and the closing shall

occur no later than the first business day following the thirtieth (30th) day after the

Effective Date.

7.2.6    The Group I: Voluntary Other Assets Marketing and Bid Procedures.

To the extent that the SunCal Plan Proponents believe that the Group I: Voluntary Other

Assets have any material value, the SunCal Plan Proponents will pursue the following process for

the sale of the Group I: Voluntary Other Assets after the Confirmation Date and during the Sales

Period:

1.      After the Confirmation Date, the SunCal Plan Proponents will

implement commercially reasonable marketing efforts for the sale of the Group I:

1   Voluntary Other Assets;

2       2.    The sales procedures will be determined by the SunCal Plan

3   Proponents after consultation with the Voluntary Debtors' Committee; and

4       3.    The sale contract will provide that the Group I: Voluntary Other

5   Assets(s) are being sold free and clear of all monetary liens and encumbrances and

6   that no party holding a lien against the Group I: Voluntary Other Assets, including

7   the Lehman Lenders, may submit a "credit bid" based upon the amount allegedly

8   owing on the claims secured by the Group I: Voluntary Other Assets being sold.

9       4.    Within seven (7) days after the Effective Date, the Plan Trustee will

10  hold a public auction for the sale of the Group I: Voluntary Assets to the bidder that

11  submits the highest and best bid.  The winning bidder will then have seven (10)

12  days to close this purchase transaction by paying the winning bid amount.

13  **7.3**    **<u>Establishment and Operations of the Plan Trust</u>**.

14      The Plan Trust shall be established and shall become effective on the Effective Date.  The

15  Plan Trust is created pursuant to the Plan and the Confirmation Order.  The primary purpose of the

16  Plan Trust is to consummate the sales and/or the liquidation of the Group I: Voluntary Projects and

17  the Group I: Voluntary Other Assets transferred to it and the Distribution of the Net Sales Proceeds

18  to Creditors, with no objective to continue or engage in the conduct of a trade or business, except

19  to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan

20  Trust.  The Plan Trust shall hold title to and administer the Plan Trust Assets, including, but not

21  limited to, any Litigation Claims, and the proceeds thereof for liquidation and distribution in

22  accordance with the terms of the Plan.

23  **7.4**    **<u>Preservation and Pursuit of Litigation Claims and Recovery for the Plan</u>**

24      **<u>Trust</u>**.

25      On the Effective Date, title to and possession of all property of the Group I: Voluntary

26  Debtors shall be deemed transferred and delivered to the Plan Trust, without further act or action

27  under any applicable agreement, law, regulation, order or rule of law.

28      Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

-47-

1    Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo

2    Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled

3    in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the

4    Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee

5    shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10)

6    days' prior written notice and opportunity to object to the proposed action.  Any disputes

7    concerning the settlement or abandonment of a Litigation Claim shall be submitted to the

8    Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

9    　　　　All Litigation Recoveries realized or obtained by the Plan Trustee shall be promptly

10    deposited into the applicable Distribution Account(s).  Except as otherwise provided in the Plan

11    and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and

12    Liens and shall only be expended in accordance with the provisions of the Plan.

13    　　　　**7.5**　　**Payment of Plan Trust Expenses**.

14    　　　　The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be

15    paid, or adequate reserves shall be created for the payment of such expenses, prior to any

16    distribution to the Plan Trust Beneficiaries.

17    　　　　**7.6**　　**The Plan Trust Distribution System.**

18    　　　　The Plan Trustee shall establish a separate "Distribution Account" for each Group I:

19    Voluntary Debtor at an FDIC insured bank. Each Group I: Voluntary Debtor's Available Cash,

20    whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group

21    I: Voluntary Debtor's Distribution Account.  These funds will then be used to pay the claims of

22    Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons

23    dealing with the Plan Trustee, or seeking to assert Claims against the Debtors, the Estates or the

24    Plan Trust, shall look only to property of the Debtors, the Estates or the Plan Trust to satisfy any

25    liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual

26    obligation to satisfy any such liability.

27    　　　　**7.7**　　**The Plan Trustee**.

28    　　　　　　　　**7.7.1**　　**Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The

-48-

1  appointment of the Plan Trustee shall be effective as of the Effective Date.

2  **7.7.2  Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court

3  order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to

4  the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to

5  termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan

6  Trustee.

7  **7.7.3  Powers and Duties**.  On the Effective Date, the Plan Trustee shall have

8  the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code

9  §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan

10 and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with

11 the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the

12 extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan

13 Trustee shall be authorized, empowered and directed to take all actions necessary to comply with

14 the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without

15 limitation to:

16         i.     employ, retain, and replace one or more attorneys, accountants,

17 auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert

18 witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under

19 the Plan;

20         ii.    control and effectuate the Claims reconciliation process, including to

21 object to, seek to subordinate, compromise or settle any and all Claims against the Debtors

22 pursuant to the terms of the Plan;

23         iii.   open, maintain and administer bank accounts as necessary to

24 discharge the duties of the Plan Trustee under the Plan;

25         iv.   make Distributions to the Holders of Allowed Claims in accordance

26 with the Plan;

27         v.    retain professionals to assist in performing his or her duties under the

28 Plan;

-49-

1          vi.      pay reasonable and necessary professional fees, costs, and expenses;

2          vii.     investigate, analyze, commence, prosecute, litigate, compromise,

3    settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the

4    benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other

5    necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all

6    Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests

7    of the Plan Trust;

8          viii.    administer, sell, liquidate, or otherwise dispose of the Assets in

9    accordance with the terms of the Plan;

10         ix.      incur and pay reasonable and necessary expenses in connection with

11   the performance of the Plan Trustee's duties under the Plan;

12         x.       represent the Estates before the Court and other courts of competent

13   jurisdiction with respect to mattes concerning the Plan Trust;

14         xi.      seek the examination of any entity under the subject to the provisions

15   of Bankruptcy Rule 2004;

16         xii.     comply with applicable orders of the court and any other court of

17   competent jurisdiction over the matters set forth in the Plan;

18         xiii.    comply with all applicable laws and regulations concerning the

19   matters set forth in the Plan;

20         xiv.     exercise such other powers as may be vested in the Plan Trust

21   pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

22         xv.      execute any documents, instruments, contracts, and agreements

23   necessary and appropriate to carry out the powers and duties of the Plan Trust;

24         xvi.     (1) seek a determination of tax liability under §505 of the code, (2)

25   pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

26   required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a

27   "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

28   behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

1      xvii.    stand in the shoes of the Debtors for all purposes.

2      **7.7.4**      **Retention of Professionals and Compensation Procedure.**

3      On and after the Effective Date, the Plan Trustee may, without further application or

4  Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may

5  be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out

6  the provisions of the Plan, including, but not limited to, the Professionals retained prior to the

7  Effective Date by either the Debtors or the Voluntary Debtors' Committee.  The Plan Trustee may

8  employ such professionals on any reasonable terms and conditions of employment to be

9  determined by the Plan Trustee.  For the services performed on and after the Effective Date, the

10  professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive

11  reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan

12  Trustee.

13      **7.7.5**   **Fees and Expenses.**

14      Acquisitions shall not receive any compensation for the services it performs as the Plan

15  Trustee.  The Plan Trustee Professionals shall be entitled to reasonable compensation for their

16  services, and reimbursement of expenses.  The costs and expenses of the Plan Trust (including,

17  without limitation, fees and expenses of the Plan Trustee Professionals) shall be paid from the Plan

18  Trust.  The Plan Trustee shall pay, without further order, notice or application to the Court, the

19  reasonable fees and expenses of the Plan Trustee Professionals, as necessary to discharge the Plan

20  Trustee's duties under the Plan.  The Plan Trustee shall be authorized to reserve funds from the

21  Plan Trust as is reasonable to pay the expenses of the Plan Trustee and the expenses and fees of the

22  Plan Trustee Professionals before making any Distributions under the Plan.

23      **7.7.6**      **Limitation of Liability and Indemnification.**

24      None of the Group I: Voluntary Debtors, the Voluntary Debtors' Committee, the Plan

25  Sponsor, the SunCal Plan Proponents, the Plan Trustee, the Professionals, nor any of their

26  respective members, officers, directors, shareholders, employees, or agents (the "Indemnified

27  Parties") shall be liable (a) for any loss or damages by reason of any action taken or omitted by him

28  or her, except in the case of fraud, willful misconduct, bad faith, or gross negligence, (b) for any

act or omission made in reliance upon the Debtors' books and records or upon information or advice given to the Plan Trustee by his or her professionals, or (c) for any action taken or omission made in connection with or related to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the fullest extent permitted by applicable statute and case law. Except as otherwise provided in this Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, consent, or other document believed by him or her to be genuine and to have been signed by the proper party or parties.

The Indemnified Parties shall be indemnified and receive reimbursement from and against any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature, which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct, bad faith, or gross negligence.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or liability.  This indemnification shall survive the dissolution, resignation or removal, as may be applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit of the Plan Trustee's and the Indemnified Person's heirs and assigns.

### 7.7.7  Plan Trustee as Successor.

Pursuant to Code §1123(b), the Plan Trustee shall be the successor to the Group I Voluntary Debtors for all purposes.

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

### 7.8    The Plan Trust Beneficiaries.

The Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan Trust assets or to any right to call for a partition or division of such assets or to require an accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner provided in the Plan.

The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights arising under the Plan Trust are deemed to be "securities," the exemption from registration under §1145 of the Bankruptcy code is intended to be applicable to such securities.

### 7.9    No Payment of Transfer-Related Fees to the United States Trustee.

The Plan Trust shall not be required to pay any fees to the United States Trustee based on any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

### 7.10    No Payment of Transfer-Related Fees to the Plan Trustee.

The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any transfers of Plan Trust Assets from the Voluntary Debtors to the Plan Trust, or from the Plan Trust.

### 7.11    Books and Records of Trust.

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence, provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

1  the Plan Trusts books and records at such time as Plan Trust has no further need for such books

2  and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

3  upon written request by the Voluntary Debtors' Committee.

4      **7.12    Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial**

5          **Interests**.

6          For all United States federal income tax purposes, the transfers by the Group I: Voluntary

7  Debtors shall be treated by the Group I: Voluntary Debtors, their estates, the Plan Trust and the

8  Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Group I: Voluntary Debtors to

9  the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan Trust

10 Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed

11 owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and

12 the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Assets

13 consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use such

14 valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the

15 Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that

16 the Plan Trust will determine the fair market value of the Plan Trust Assets within thirty (30) days

17 after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its

18 acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively

19 deemed to agree to use such valuations for all purposes, including, without limitation, in

20 computing any gain recognized upon the exchange of such holder's claim for purposes of

21 determining any United States Federal income tax, and shall be required to include those items of

22 income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

23 its taxable income.

24      **7.13    Termination of the Trust**.

25          The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

26 Assets has been liquidated, all proceeds have been converted to cash or distributed in kind, all the

27 Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust

28 Trustee is obligated to make distributions on have been paid, all distributions to be made with

-54-

respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party

have been concluded by dismissal or an order issued by the court in which such litigation is

pending and such order has become "final" (consistent with the definition of Final Order in the

plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

consider and rule on the request within six (6) months prior to the expiration of the initial five-year

term.

### 7.14   **Exemption from Certain Transfer Taxes**.

In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

exchange of a security or the making or delivery of an instrument of transfer under the plan may

not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

agents shall forego the assessment and collection of any such tax or governmental assessment and

shall accept for filing and recordation any of the foregoing instruments or other documents without

payment of such tax or other governmental assessment.

### 7.15   **Tax Consequence of The Plan**.

The implementation of the Plan may have federal, state and local tax consequences to the

Group I: Voluntary Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will

be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not

constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the

summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**7.16    The Voluntary Debtors' Committee.**

On the Effective Date, the Voluntary Debtors' Committee shall continue to serve their applicable Debtors as Voluntary Debtors' Committee to the applicable reorganized Debtors, subject to the following:

**7.16.1    Duties and Powers.**

The duties of the Voluntary Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to the sales process, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, and the Contract Action, standing to object to any settlement of any Litigation Claim in excess of $100,000, standing to object to any proposed sales procedures on sale of the Debtors' Projects, and standing and sole and exclusive right to file, prosecute and resolve potential Avoidance Actions against and objections to Claims filed by (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing, LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP, The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.  Voluntary Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Voluntary Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Voluntary Debtors' Committee under the terms of the Plan.  Such compensation shall be paid from the applicable Distribution Account(s).

**7.16.2    Dissolution of Voluntary Debtors' Committee.**

The Voluntary Debtors' Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Voluntary Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

**7.17    Claims Estimation Rights.**

On the Confirmation Date, the SunCal Plan Proponents shall be vested with standing to file a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

1    motion the estimation, for Distribution purposes, of any Disputed Claim seeking recourse to, or

2    claiming an interest in, any asset of the Group I: Voluntary Debtors. After the Bankruptcy Court

3    estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

4    the Plan Trustee shall have the right to use any funds or assets not deemed subject to the rights of

5    the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

6    Administrative Claims, after the Effective Date.

7    **VIII.**

8    **DISTRIBUTIONS**

9    **8.1    Distribution Agent.**

10    Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The

11    Distribution Agent may employ one or more sub agents on such terms and conditions as it may

12    agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

13    Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in

14    connection with the making of any Distributions pursuant to the Plan.

15    **8.2    Distributions.**

16    **8.2.1    Dates of Distributions.**

17    Any distribution required to be made on the Effective Date shall be deemed timely if made

18    as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any

19    distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

20    longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

21    **8.2.2    Limitation on Liability.**

22    Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any

23    of their employees, members, officers, directors, agents, or professionals or Affiliates shall be

24    liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in

25    connection with implementing the Distribution provisions of the Plan and the making or

26    withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions

27    made pursuant to the Plan resulting from any delays in making such distributions in accordance

28

1    with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed

2    Claims).

3    **8.3    Old Instruments and Securities.**

4    **8.3.1    Surrender and Cancellation of Instruments and Securities.**

5    As a condition to receiving any distribution pursuant to the Plan, each Person holding any

6    note or other instrument or security (collectively "Instruments or Securities" and individually an

7    "Instrument or Security") evidencing an existing Claim(s) against the Debtor(s) must surrender

8    such Instrument or Security to the Distribution Agent.

9    **8.3.2    Cancellation of Liens.**

10    Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be

11    deemed released and discharged, and the Person holding such Secured Claim shall be authorized

12    and directed to release any collateral or other property of the Debtors (including, without

13    limitation, any cash collateral) held by such Person and to take such actions as may be requested by

14    the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution,

15    delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

16    **8.3.3    De Minimis Distributions and Fractional Shares.**

17    No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any

18    Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever

19    payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a

20    rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not

21    distributed as a consequence of this section shall, after the last distribution on account of Allowed

22    Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

23    **8.3.4    Delivery of Distributions.**

24    Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders

25    of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1)

26    with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for

27    such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each

28    Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the

1  Schedules filed by the Debtors, _provided_, _however_, that if the Debtors or the Plan Trust has

2  received a written notice of a change of address for such Holder, the address set forth in such

3  notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

4  such address as the Holder may specify in writing.

5  **8.3.5    Undeliverable Distributions.**

6  If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

7  Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

8  such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

9  shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

10  Holder's then current address.  Subject to the remainder of this Section and the following section,

11  Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and

12  shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash

13  Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject

14  Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or

15  any other Person to attempt to locate such Person.

16  **IX.**

17  **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

18  **9.1    Standing for Objections to Claims.**

19  The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

20  objections to Claims, except as specifically provided herein.  The Voluntary Debtors Committee

21  shall have the sole and exclusive right to file, prosecute and resolve objections to Claims filed by

22  (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing,

23  LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP,

24  The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.  Any objection to a

25  Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or

26  before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition

27  the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection

28  Deadline if a complete review of all Claims cannot be completed by such date.

-59-

**9.2    Treatment of Disputed Claims and Disputed Liens.**

**9.2.1    No Distribution Pending Allowance.**

If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or distribution provided for under the Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien, and all objections thereto have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Plan Trustee does not dispute at the time and in the manner that the Plan Trustee makes Distributions to the Holders of Allowed Claims pursuant to the provisions of the Plan

**9.2.2    Distribution After Allowance.**

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

**X.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**10.1    Executory Contracts to be Assumed and Assigned.**

Under the Plans, the Group I: Voluntary Projects will be sold.  As a result, the Group I: Voluntary Debtors will assume only those executory contracts and unexpired leases to be assigned to the Winning Bidder with respect to the applicable Project and the Restructuring Agreement and Settlement Agreement.

On the Effective Date, the executory contracts and unexpired leases identified on the Schedule of Assumed and Assigned Agreements attached or to be attached to the Disclosure Statement as Exhibit "9" or filed or to be filed as Exhibit "9" shall be deemed assumed and assigned to the applicable Winning Bidder, as specified in the Confirmation Order.  The SunCal

1  Plan Proponents intend to file the Schedule of Assumed and Assigned Agreements with the Court

2  no later than twenty-eight (28) days prior to the Confirmation Hearing.  The Schedule of Assumed

3  and Assigned Agreements also identifies or will identify any amounts that must be paid to cure

4  defaults under the executory contacts and unexpired leases to be assumed and assigned under the

5  Plan (the "Cure Amount").  If filed earlier, the SunCal Plan Proponents reserve the right to amend

6  the Schedule of Assumed Agreements up to twenty-eight (28) days prior to the Confirmation

7  Hearing (October 24, 2011) to: (a) add any executory contract or unexpired lease and provide for

8  its assumption and assignment; or (b) modify the Cure Amount for any particular executory

9  contract or unexpired lease.  The SunCal Plan Proponents further reserve the right to amend the

10  Schedule of Assumed Agreements to delete any executory contract or unexpired lease and provide

11  for its rejection at any time prior to the Confirmation Hearing.  The SunCal Plan Proponents will

12  provide notice of any amendment to the Schedule of Assumed and Assigned Agreements to any

13  party or parties to the executory contracts or unexpired leases affected by the amendment.  Absent

14  a timely objection as provided below, the Confirmation Order will constitute a Court Order

15  approving the assumption and assignment, on the Effective Date, of the executory contracts and

16  unexpired leases then identified on the Schedule of Assumed and Assigned Agreements, and shall

17  constitute a final determination of the Cure Amount and that the estate has shown adequate

18  assurance of future performance.  Furthermore, any Cure Amount ordered by the Court, through

19  entry of the Confirmation Order, and paid shall be deemed to satisfy any and all defaults arising

20  from, out of or related to the executory contract of unexpired lease, including any tort claims that

21  were or could be asserted by the non-debtor party to the contract or lease on or prior to the entry of

22  the Confirmation Order, and all actual or pecuniary losses that have resulted from such defaults.

23       If you are a party to an executory contract or unexpired lease to be assumed and assigned

24  and you object to the assumption and assignment of your lease or contract and/or you dispute the

25  Cure Amount related to your lease or contract, then you must File and serve upon counsels for the

26  SunCal Plan Proponents (at the address on the upper left hand corner of the caption page) a written

27  objection by fourteen days before the Confirmation Hearing.  An objection to the Cure Amount

28  must also set forth the amount you contend to be the correct Cure Amount and contain evidence to

-61-

1   support such amount.  Failure to timely File an objection as provided herein shall be deemed

2   consent to the proposed assumption and assignment and to the Cure Amount and a waiver of any

3   and all rights to challenge such assumption and assignment and the Cure Amount.

4           With respect to each executory contract and unexpired lease identified on the Schedule of

5   Assumed and Assigned Agreements, if no dispute arises regarding the Cure Amount, adequate

6   assurances, or some other matter related to the assumption of the executory contact or unexpired

7   lease, then the Cure Amount set forth in the schedule of Assumed and Assigned Agreements shall

8   be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably

9   practicable thereafter.  If a dispute arises regarding (a) whether the proposed assignee has provided

10  adequate assurance of future performance of an executory contract or unexpired lease to be

11  assumed, or (b) any other matter pertaining to a proposed assumption and assignment, the Cure

12  Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or

13  (2) within thirty (30) days after entry of a Final order resolving the dispute and approving the

14  assumption and assignment; provided, however, if a dispute arises regarding any of the foregoing,

15  the SunCal Plan Proponents reserve, for themselves and the Plan Trustee, the right to completely

16  forego assumption and assignment of and, instead, reject the subject executory contract or

17  unexpired lease.

18          If a party to an executory contract or unexpired lease identified on the Schedule of

19  Assumed and Assigned Agreements Files an objection disputing the Cure Amount, then the

20  SunCal Plan Proponents may amend the Schedule of Assumed and Assigned Agreements at any

21  time prior to the Confirmation Hearing to delete the subject executory contract or unexpired lease

22  and provide for its rejection.  Executory contracts or unexpired leases not so deleted shall be

23  conditionally assumed, subject to the SunCal Plan Proponents' and/or the Plan Trustee's right to

24  file a Motion to determine the appropriate Cure Amount up to the first (1st) Business Day that is at

25  least sixty (60) days following the Effective Date.  The SunCal Plan Proponents and/or the Plan

26  Trustee will serve any such Motion on the party to the executory contract or unexpired lease

27  affected by the Motion (or its attorneys, if any).  If the SunCal Plan Proponents and Plan Trustee

28  does not file a Motion to determine the appropriate Cure Amount, then the executory contract or

-62-

1    unexpired lease shall be assumed and assigned, as of the Effective Date, and the Cure Amount

2    shall be the alternative Cure Amount asserted by the non-debtor party to the subject executory

3    contract or unexpired lease in its objection to the Plan.  The Cure Amount shall be paid as soon as

4    reasonably practicable following the expiration of the 60-day deadline.

5         If the SunCal Plan Proponents or the Plan Trustee files a Motion to determine the

6    appropriate Cure Amount, then the SunCal Plan Proponents and/or Plan Trust shall have the right

7    to amend the Schedule of Assume and Assigned Agreements to completely forego assumption and

8    assignment of and, instead, reject the subject executory contract or unexpired lease up to the first

9    (1st) Business Day that is at least fifteen (15) days after the entry of an order fixing the Cure

10   Amount.  The SunCal Plan Proponents and/or Plan Trustee will provide notice of any amendment

11   to the Schedule of Assumed and Assigned Agreements to the party to the executory contract or

12   unexpired lease affected by the amendment.  If the SunCal Plan Proponents and/or Plan Trustee

13   has filed such a Motion and does not timely amend the Schedule of Assumed and Assigned

14   Agreements within fifteen (15) days after entry of an order fixing the Cure Amount, then the

15   executory contract or unexpired lease shall be assumed and assigned, as of the Effective Date, and

16   the Cure Amount shall be fixed as the Cure Amount ordered by the Court.  The Cure Amount as

17   soon as reasonably practicable following the expiration of the 15-day deadline.

18        **10.2    <u>Executory Contracts to be Rejected</u>.**

19        On the Effective Date, the estate will be deemed to have rejected any and all executory

20   contacts and unexpired leases <u>not</u> identified on the Schedule of Assumed and Assigned

21   Agreements attached or to be attached to the Disclosure Statement as Exhibit "9," or filed or to be

22   filed as Exhibit "9".  The Confirmation Order will constitute a Court order approving the rejection,

23   as of the Effective Date, of such executory contacts and unexpired leases.  Any Claim for damages

24   arising from the rejection under the Plan of any executory contract or unexpired lease must be filed

25   with the Court and served upon the SunCal Plan Proponents and the Plan Trustee within thirty (30)

26   days of the later of (a) the Confirmation Date, and (b) the Plan Trustee's amendment of the

27   Schedule of Assumed and Assigned Agreements to eliminate the executory contract or unexpired

28   lease.  Any such damage Claims that are not timely filed and served will be forever barred and

-63-

1   unenforceable against the applicable Debtors, the Estates, the Plan Trustee, the Plan Trust, and

2   their respective property.  Persons holding these Claims who fail to timely file claims will be

3   barred from receiving any Distributions under the Plan on account of their rejection damage

4   Claims.

5          If you are a party to a lease or contract to be rejected and you object to the rejection of your

6   lease or contract, then you must file and serve your objection by fourteen days before the

7   Confirmation Hearing.

8                                          **XI.**

9                          **LIMITATION OF LIABILITY**

10         **11.1     No Liability for Solicitation or Participation.**

11         As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

12  rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

13  offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

14  the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

15  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

16  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

17                                         **XII.**

18   **CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

19         **12.1     Conditions Precedent to Plan Confirmation.**

20         The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

21  have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

22  Proponents.

23

24         **12.2     Conditions Precedent to Plan Effectiveness.**

25         The conditions precedent to the effectiveness of the Plan and the occurrence of the

26  Effective Date is that the Confirmation Order shall be a Final Order in form and substance

27  reasonably satisfactory to the SunCal Plan Proponents.

28

# XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.  The Court will retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising from the administration of the Plan, upon request of a party-in-interest and after notice and a hearing, including, without limitation:

a.     The adjudication of the validity, scope, classification, allowance, and disallowance of any Claim;

b.     The estimation of any Claim;

c.     The allowance or disallowance of Professional-Fee Claims, compensation, or other Administrative Expense Claims;

d.     To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§ 346, 505, 525, and 1146;

e.     To hear and determine any action or proceeding brought under Bankruptcy Code §§108, 510, 543, 544, 545, 547, 548, 549, 550, 551 and 553;

f.     To hear and determine all actions and proceedings which relate to pre-confirmation matters;

g.     To hear and determine any issue relating to the assumption or rejection of executory contracts and unexpired leases;

h.     To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and Bankruptcy Code;

i.     To enforce and interpret the terms of the Plan;

j.     To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

k.     the entry of any order, including injunctions, necessary to enforce title,

1  rights and powers of the Plan Trust, and to impose such limitations, restrictions, terms and

2  conditions on such title, rights and powers as the Court may deem necessary including,

3  without limitation, any right of the Plan Trust to recover and liquidate assets;

4  l.    To determine the validity, extent and priority of all liens and security

5  interests against property of the Estates or the Plan Trust;

6  m.    To hear and resolve any disputes regarding employment applications and

7  professional fees;

8  n.    To hear and determine such matters and make such orders as are consistent

9  with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any

10  disputes arising under or relating to any order entered by the Court in these Cases;

11  o.    The entry of an order concluding and terminating these Cases; and

12  p.    To resolve any disputes as to whether there has been a default under the

13  Plan.

**XIV.**

**MODIFICATION OR WITHDRAWAL OF THE PLAN**

16  **14.1    Modification of Plan.**

17  At any time prior to confirmation of the Plan, the Plan Proponents may supplement, amend

18  or modify the Plan.  After confirmation of the Plan, the Plan Proponents or Plan Trustee may (x)

19  apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the

20  Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to

21  reconcile inconsistencies in the Plan.

22  **14.2    Nonconsensual Confirmation.**

23  In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

24  accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may

25  request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

26  Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

27  accordance with Section 1127(a) of the Bankruptcy Code.

28

-66-

**XV**.

**EFFECT OF CONFIRMATION**

### 15.1    Discharge.

Confirmation of the Plan does not discharge the Group I: Voluntary Debtors as set forth in Bankruptcy Code §1141.

### 15.2    Revesting of the Assets.

The Assets shall not be vested in the Group I: Voluntary Debtors on or following the Effective Date, but shall be vested in the Plan Trust and continue to be subject to the jurisdiction of the Court following confirmation of the Plan until such Assets are distributed to the Holders of Allowed Claims in accordance with the provisions of the Plan.

**XVI.**

**MISCELLANEOUS**

### 16.1    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

### 16.2    Changes in Rates Subject to Regulatory Commission Approval.

The Group I: Voluntary Debtors are not subject to governmental regulatory commission approval of their rates.

### 16.3    Payment Dates.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

-67-

1    **16.4    <u>Headings</u>.**

2        The headings used in the Disclosure Statement and in the Plan are inserted for convenience

3    only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

4    affect the construction of the provisions of the Disclosure Statement or the Plan.

5    **16.5    <u>Other Documents and Actions</u>.**

6        The Plan Trustee may execute such other documents and take such other actions as may be

7    necessary or appropriate to effectuate the transactions contemplated under the Plan.

8    **16.6    <u>Notices</u>.**

9        All notices and requests in connection with the Disclosure Statement and the Plan shall be

10   in writing and shall be hand delivered or sent by mail addressed to:

11           **To the SunCal Plan Proponents**:

12           Bruce V. Cook
        General Counsel

13           Authorized Agent of the SunCal Plan Proponents
        2392 Morse Ave

14           Irvine, CA 92614-6234

15

16           **With copies to:**

17           Paul J. Couchot
        Winthrop & Couchot, Professional Corporation

18           660 Newport Center Drive, Suite 400
        Newport Beach, CA 92660

19

20           Ronald Rus
        Rus Miliband & Smith P.C.

21           2211 Michelson Drive, Seventh Floor
        Irvine, California 92612

22       All notices and requests to any Person holding of record any Claim or Interest shall be sent

23   to them at their last known address or to the last known address of their attorney of record.  Any

24   such Person may designate in writing any other address for purposes of this Section, which

25   designation will be effective on receipt.

26

27

28

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

### 16.7  Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 16.8  Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 16.9  Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

### 16.10  Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

### 16.11  No Waiver.

The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Voluntary Debtors' Committee', the Debtors' or the Plan

1    Trustee's right to object to or examine such Claim, in whole or in part.

2    **16.12   Inconsistencies.**

3    In the event the terms or provisions of the Disclosure Statement are inconsistent with the

4    terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

5    the Plan shall control.

6    **16.13   Exemption from Certain Transfer Taxes and Recording Fees.**

7    Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the

8    Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the

9    transfer of title to or ownership of any of the Debtors' real or personal property or of any other

10   interest in such property (including, without limitation, a security interest) will not be subject to

11   any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,

12   stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

13   recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

14   direct the appropriate state or local governmental officials or agents to forego the collection of any

15   such tax or governmental assessment and to accept for filing and recordation any of the foregoing

16   instruments or other documents without the payment of any such tax or governmental assessment.

17   **16.14   Post-Confirmation Status Report.**

18   Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

19   status report with the Court explaining what progress has been made toward consummation of the

20   confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

21   unsecured creditors, and those parties who have requested special notice.  Unless otherwise

22   ordered, further status reports shall be filed every 180 days and served on the same entities.

23   **16.15   Post-Confirmation Conversion/Dismissal.**

24   A creditor or party in interest may bring a motion to convert or dismiss the case under

25   § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

26   Trustee reserves the right to object to any motion for conversion or dismissal.  In addition, as set

27   forth in the definition of the Effective Date, the Effective Date may be further extended by order of

28   the Bankruptcy Court after notice and hearing to all parties in interest.  If the Court determines

1    there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss

2    or convert the Case(s).

3       If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then

4    all property that had been property of the Chapter 11 Estate, and that has not been disbursed

5    pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be re-imposed

6    upon the revested property, but only to the extent that relief from stay was not previously

7    authorized by the Court during this case.

8       **16.16  Final Decree.**

9       Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

10   Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

11   motion with the Court to obtain a final decree to close the Case of such Debtor.

12   Date:  August 5, 2011

13

14                               By:  /s/ Bruce Cook_____
                                    Bruce Cook

15                                 General Counsel, Authorized Agent for the Voluntary
                                Debtors and Acquisitions

16   **Submitted By:**

17

18   **WINTHROP COUCHOT**                **RUS MILIBAND & SMITH**
     **PROFESSIONAL CORPORATION**     **A PROFESSIONAL CORPORATION**

19

20   By: /s/ *Paul J. Couchot*_____     By:___ */s/ Ronald Rus*_____
      Paul J. Couchot,                            Ronald Rus, Esq.

21   General Insolvency Counsel for            Joel S. Miliband, Esq.
     the Voluntary Debtors                   Counsel for SCC Acquisitions, Inc.

22

23

24

25

26

27

28

-71-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **THIRD AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF PALMDALE HILLS PROPERTY, LLC, SUNCAL BICKFORD RANCH, LLC, SUNCAL EMERALD MEADOWS, LLC AND ACTON ESTATES, LLC [GROUP I: VOLUNTARY DEBTORS]**will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2011 | Gretchen Crumpacker | /s/  Gretchen Crumpacker |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

MAINDOCS-#165266-v3-SunCal_3rd_Am_Group_I_VD_Plan.DOC

- **NEF SERVICE LIST**
  Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com

- Kavita Gupta     kgupta@winthropcouchot.com
- Asa S Hami     ahami@morganlewis.com
- Michael J Hauser     michael.hauser@usdoj.gov
- D Edward Hays     ehays@marshackhays.com
- Michael C Heinrichs     mheinrichs@omm.com
- Harry D. Hochman     hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff     jonathan.hoff@cwt.com
- Nancy Hotchkiss     nhotchkiss@trainorfairbrook.com
- Michelle Hribar     mhribar@rutan.com
- John J Immordino     john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson     laj@cohenandjacobson.com
- Michael J Joyce     mjoyce@crosslaw.com
- Stephen M Judson     sjudson@fablaw.com
- Kaleb L Judy     ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn     skahn@pszyjw.com
- Sheri Kanesaka     sheri.kanesaka@bryancave.com
- David I Katzen     katzen@ksfirm.com
- Christopher W Keegan     ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi     pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet     ikiet@hkclaw.com
- Claude F Kolm     claude.kolm@acgov.org
- Mark J Krone     mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally     davidlallylaw@gmail.com
- Leib M Lerner     leib.lerner@alston.com
- Peter W Lianides     plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu     cliu@winthropcouchot.com
- Kerri A Lyman     klyman@irell.com
- Mariam S Marshall     mmarshall@marshallramoslaw.com
- Robert C Martinez     rmartinez@mclex.com
- Michael D May     mdmayesq@verizon.net
- Hutchison B Meltzer     hmeltzer@wgllp.com
- Krikor J Meshefejian     kjm@lnbrb.com
- Joel S. Miliband     jmiliband@rusmiliband.com
- James M Miller     jmiller@millerbarondess.com, vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller     smiller@millerbarondess.com
- Craig Millet     cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski     randym@cookseylaw.com
- Mike D Neue     mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida     Rnida@castlelawoffice.com
- Henry H Oh     henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe     sokeefe@okeefelc.com
- Scott H Olson     solson@seyfarth.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Robert B Orgel     rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park     ernie.park@bewleylaw.com
- Daryl G Parker     dparker@pszjlaw.com
- Penelope Parmes     pparmes@rutan.com
- Robert J Pfister     rpfister@ktbslaw.com
- Ronald B Pierce     ronald.pierce@sdma.com
- Katherine C Piper     kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey     cmartin@pprlaw.net
- Debra Riley     driley@allenmatkins.com
- James S Riley     tgarza@sierrafunds.com
- Todd C. Ringstad     becky@ringstadlaw.com
- R Grace Rodriguez     ecf@lorgr.com
- Martha E Romero     Romero@mromerolawfirm.com
- Ronald Rus     rrus@rusmiliband.com
- John P Schafer     jschafer@mandersonllp.com
- John E Schreiber     jschreiber@dl.com
- William D Schuster     bills@allieschuster.org
- Christopher P Simon     csimon@crosslaw.com
- Gerald N Sims     jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith     wendy@bindermalter.com
- Steven M Speier     Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)     Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James     ecf@stjames-law.com
- Michael K Sugar     msugar@irell.com
- Cathy Ta     cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem     davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till     jtill@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh     cgunruh@sbcglobal.net
- Annie Verdries     verdries@lbbslaw.com
- Jason Wallach     jwallach@gladstonemichel.com
- Joshua D Wayser     , kim.johnson@kattenlaw.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net