1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for
   Palmdale Hills Property, LLC et. al. (the "Voluntary Debtors")

5
   RONALD RUS - State Bar No. 67369
6  JOEL S. MILIBAND - State Bar No. 77438
   RUS MILIBAND & SMITH
7  A PROFESSIONAL CORPORATION
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone: (949) 752-7100
9  Facsimile:  (949) 252-1514
   Counsel for SCC Acquisitions Inc.

10
                    **UNITED STATES BANKRUPTCY COURT**
11                   **CENTRAL DISTRICT OF CALIFORNIA**
                     **SANTA ANA DIVISION**
12
   In re                                    Case No. 8:08-bk-17206-ES
13 PALMDALE HILLS PROPERTY, AND ITS
   RELATED DEBTORS,                         Jointly Administered With Case Nos.
                                            8:08-bk-17209-ES; 8:08-bk-17240-ES;
14          Joint Administered Debtors and  8:08-bk-17224-ES; 8:08-bk-17242-ES;
            Debtors-in-Possession           8:08-bk-17225-ES; 8:08-bk-17245-ES;
15                                          8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                            8:08-bk-17230-ES; 8:08-bk-17231-ES;
16 Affects:                                 8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ All Debtors                            8:08-bk-17249-ES; 8:08-bk-17573-ES;
17 ☐ Palmdale Hills Property, LLC           8:08-bk-17574 ES; 8:08-bk-17575-ES;
   ☒ SunCal Beaumont Heights, LLC           8:08-bk-17404-ES; 8:08-bk-17407-ES;
18 ☐ SCC/Palmdale, LLC                      8:08-bk-17408-ES; 8:08-bk-17409-ES;
                                            8:08-bk-17458-ES; 8:08-bk-17465-ES;
19 ☒ SunCal Johannson Ranch, LLC            8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☐ SunCal Summit Valley, LLC              and 8:08-bk-17588-ES
20 ☐ SunCal Emerald Meadows LLC
                                            Chapter 11 Proceedings
21 ☐ SunCal Bickford Ranch, LLC
   ☐ Acton Estates, LLC                     **THIRD AMENDED CHAPTER 11 PLANS**
22 ☐ Seven Brothers LLC                     **FILED BY SUNCAL PLAN PROPONENTS**
                                            **IN THE CHAPTER 11 CASES OF SUNCAL**
23 ☐ SJD Partners, Ltd.                     **BEAUMONT HEIGHTS, LLC AND**
   ☐ SJD Development Corp.                  **SUNCAL JOHANNSON RANCH, LLC**
24 ☐ Kirby Estates, LLC                     **[GROUP II: VOLUNTARY DEBTORS]**
25 ☐ SunCal Communities I, LLC
   ☐ SunCal Communities III, LLC            **<u>Confirmation Hearing</u>**
26 ☐ SCC Communities LLC                    Date:    October 24, 2011
                                            Time:    9:30 a.m.
27 ☐ North Orange Del Rio Land, LLC         Place:   Courtroom 5A
28 ☐ Tesoro SF LLC

*Continued from Previous Page*

- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LBL-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

# TABLE OF CONTENTS

|  | | **PAGE** |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 3 |
| | 2.1 Definitions | 3 |
| | 2.2 Rules of Construction | 21 |
| | 2.3 Exhibits | 22 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 22 |
| | 3.1 Introduction | 22 |
| | 3.2 Treatment of Allowed Administrative Claims | 22 |
| | 3.3 Repayment of Allowed Administrative Claims | 22 |
| | 3.4 Administrative Claims Bar Date | 23 |
| | 3.5 Treatment of Unsecured Tax Claims | 23 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS | 24 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 25 |
| | 5.1 The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims on the Group II: Voluntary Projects (Classes 1.1 and 1.2). | 25 |
| | 5.2 The Plan's Treatment of Mechanics Lien Claims Against Group II: Voluntary Projects (Class 2.1). | 26 |
| | 5.3 The Plan's Treatment of Holders of Priority Claims (Class 3.1). | 27 |
| | 5.4 The Plan's Treatment of Holders of Allowed General Unsecured Claims (Class 4.1) | 27 |
| | 5.5 The Plan's Treatment of Holders of Allowed Interests | 27 |
| VI. | ACCEPTANCE OR REJECTION OF THE PLAN | 27 |
| | 6.1 Introduction | 27 |
| | 6.2 Who May Object to Confirmation of the Plan | 28 |
| | 6.3 Who May Vote to Accept/Reject the Plan | 28 |
| | 6.4 What Is an Allowed Claim/Interest | 28 |
| | 6.5 What Is an Impaired Class | 28 |
| | 6.6 Who Is Not Entitled to Vote | 28 |
| | 6.7 Who Can Vote in More than One Class | 29 |
| | 6.8 Votes Necessary for a Class to Accept the Plan | 29 |
| | 6.9 Treatment of Nonaccepting Classes | 29 |
| | 6.10 Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 30 |
| VII. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 30 |
| | 7.1 Introduction | 30 |
| | 7.2 Sale Process of the Group II: Voluntary Projects During the Sale Period | 30 |

| | | |
|---|---|---|
| 7.3 | Establishment and Operations of the Plan Trust | 33 |
| 7.4 | Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust | 33 |
| 7.5 | Payment of Plan Trust Expenses | 34 |
| 7.6 | The Plan Trust Distribution System | 34 |
| 7.7 | The Plan Trustee | 34 |
| 7.8 | The Plan Trust Beneficiaries | 38 |
| 7.9 | No Payment of Transfer-Related Fees to the United States Trustee | 39 |
| 7.10 | No Payment of Transfer-Related Fees to the Plan Trustee | 39 |
| 7.11 | Books and Records of Trust | 39 |
| 7.12 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 39 |
| 7.13 | Termination of the Trust | 40 |
| 7.14 | Exemption from Certain Transfer Taxes | 41 |
| 7.15 | Tax Consequences of the Plan | 41 |
| 7.16 | The Voluntary Debtors' Committee | 41 |
| 7.17 | Claims Estimation Rights | 42 |

**VIII. DISTRIBUTIONS** ... 42
| 8.1 | Distribution Agent | 42 |
| 8.2 | Distributions | 43 |
| 8.3 | Old Instruments and Securities | 43 |

**IX. OBJECTION TO CLAIMS AND DISPUTED CLAIMS** ... 45
| 9.1 | Standing for Objections to Claims | 45 |
| 9.2 | Treatment of Disputed Claims and Disputed Liens | 45 |

**X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ... 46
| 10.1 | Executory Contracts to be Assumed and Assigned | 46 |
| 10.2 | Executory Contracts to be Rejected | 49 |

**XI. LIMITATION OF LIABILITY** ... 50
| 11.1 | No Liability for Solicitation or Participation | 50 |

**XII. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN** ... 50
| 12.1 | Conditions Precedent to Plan Confirmation | 50 |
| 12.2 | Conditions Precedent to Plan Effectiveness | 50 |

**XIII. RETENTION OF JURISDICTION** ... 50

**XIV. MODIFICATION OR WITHDRAWAL OF THE PLAN** ... 52
| 14.1 | Modification of Plan | 52 |
| 14.2 | Nonconsensual Confirmation | 52 |

**XV. EFFECT OF CONFIRMATION** ... 52
| 15.1 | Discharge | 52 |
| 15.2 | Revesting of the Assets | 53 |

| | | | |
|---|---|---|---:|
| | 15.3 | Exculpation and Releases ............................................................................ | 53 |
| XVI. | | MISCELLANEOUS .............................................................................................. | 53 |
| | 16.1 | Payment of Statutory Fees ......................................................................... | 53 |
| | 16.2 | Changes in Rates Subject to Regulatory commission Approval.................. | 54 |
| | 16.3 | Payment Dates............................................................................................ | 54 |
| | 16.4 | Headings ..................................................................................................... | 54 |
| | 16.5 | Other Documents and Actions.................................................................... | 54 |
| | 16.6 | Notices ........................................................................................................ | 54 |
| | 16.7 | Governing Law ........................................................................................... | 55 |
| | 16.8 | Binding Effect ............................................................................................ | 55 |
| | 16.9 | Successors and Assigns............................................................................... | 55 |
| | 16.10 | Severability of Plan Provisions .................................................................. | 55 |
| | 16.11 | No Waiver ................................................................................................... | 56 |
| | 16.12 | Inconsistencies ........................................................................................... | 56 |
| | 16.13 | Exemption from Certain Transfer Taxes and Recording Fees..................... | 56 |
| | 16.14 | Post-Confirmation Status Report ............................................................... | 56 |
| | 16.15 | Post-Confirmation Conversion/Dismissal .................................................. | 57 |
| | 16.16 | Final Decree ............................................................................................... | 58 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## __INTRODUCTION__

These Plans[1] are proposed respectively by, and accompanying Disclosure Statement is filed jointly by, SunCal Beaumont Heights, LLC and SunCal Johannson, LLC (the "Group II: Voluntary Debtors"), in their respective Chapter 11 Cases in their capacities as debtors in possession, and by Acquisitions, as the SunCal Proponents.  In addition to being one of the SunCal Plan Proponents, Acquisitions is also the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for each Group II: Voluntary Debtor's Plan that is confirmed.

In summary, the Plans provide for sale of the Beaumont Heights Project and the Johannson Ranch Project (the "Group II: Voluntary Projects"), and for the liquidation of all other assets of the Group II: Voluntary Debtors. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law. Based upon the SunCal Plan Proponents' analysis of the value of the Group II: Voluntary Projects, and the amount of Allowed Claims against the estates of the respective Group II: Voluntary Debtors, there is a reasonable likelihood that all Allowed Claims will be paid in full under the Plan.

Although substantially similar Plans are being filed in the Cases of both Group II: Voluntary Debtors, confirmation of each Plan is independent of each others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, a Plan may be confirmed in one of the Group II: Voluntary Debtors Cases, but not in the other.

The Plans are accompanied by the Disclosure Statement.  The Disclosure Statement has been approved by the Court.  It is being provided along with the Plans in order to provide you with critical information about the Group II: Voluntary Debtors and to help you understand the Plans.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached to the Disclosure Statement.

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

1

# II.

2

## DEFINITIONS AND RULES OF INTERPRETATION

3

### 2.1 Definitions.

4

The following defined terms are used in the Plans.  Any capitalized term that is not defined

5

herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning

6

ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

7

2.1.1   Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect

8

parent company of all of the Debtors, a purported Bond Indemnitor, a Creditor of all of the

9

Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

10

2.1.3   Acton Estates.  Acton Estates, LLC, a Delaware limited liability, and the

11

owner of the Acton Project.

12

2.1.4   Acton Project. The Project owned by Acton Estates, located in Los Angeles

13

County, California, as more particularly described herein.

14

2.1.5   Administrative Claim(s).  Any Claim against a Group II: Voluntary Debtor

15

or its Estate  incurred after the applicable Petition Date for the applicable Group II: Voluntary

16

Debtor but before the Effective Date, for any cost or expense of administration of the Case of the

17

applicable Group II: Voluntary Debtor, which Claim is entitled to priority under section 507(a)(2)

18

or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an

19

Estate of a Group II: Voluntary Debtor under section 1930 of Title 28 of the United States Code.

20

2.1.6   Administrative Claims Bar Date.  The last date fixed by the Plan for the

21

filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative

22

Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective

23

Date.

24

2.1.7   Affiliate.  The term shall have the meaning set forth under Section 101(2),

25

including, but not limited to, as to any Person, any other Person that directly or indirectly owns or

26

controls, is owned or controlled by, or is under common ownership or control with, such Person.

27

The term "control" (including, with correlative meanings, the terms "controlled by" and "under

28

common control with"), as applied to any Person, means the possession, direct or indirect, of the

1   power to direct or cause the direction of the management and policies of such Person, whether

2   through the ownership of voting securities or other equity ownership interest, by contract or

3   otherwise.

4           2.1.8   Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or

5   Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

6           2.1.9   Allowed Amount shall mean:

7                   A.      With respect to any Administrative Claim (i) if the Claim is based

8   upon a Fee Application, the amount of such Fee Application that has been approved by a Final

9   Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

10  incurred in the ordinary course of business of the Group II: Voluntary Debtors and is not otherwise

11  subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

12  the Group II: Voluntary Debtors and such creditor, failing which, the amount thereof as fixed by a

13  Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

14  has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

15  (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

16  applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

17  Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

18  such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

19  Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

20  which is subject to an Administrative Claims Bar Date and not filed by the applicable

21  Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

22  such Administrative Claim;

23                  B.      with respect to any Claim which is not an Administrative Claim

24  (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the

25  Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

26  Group II: Voluntary Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

27  the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

28  Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

1   interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

2   Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

3   Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

4   fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The

5   Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

6   listed on the Group II: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

7   contingent or unknown, and is not allowed under the terms of this Plan shall be zero, and no

8   distribution shall be made on account of any such Claim; and

9                           C.    with respect to any Interest, (i) the amount provided by or

10  established in the records of the Group II: Voluntary Debtors at the Confirmation Date, provided,

11  however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

12  records of the Group II: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed

13  prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

14  Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

15  by a Final Order of the Bankruptcy Court.

16          2.1.10   Allowed Claim.  Except as otherwise provided in the Plan (including with

17  respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

18  Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

19          2.1.11   Allowed Interest.  Any Interest to the extent, and only to the extent, of the

20  Allowed Amount of such Interest.

21          2.1.12   Allowed Secured Claims.  All or  a portion of a Secured Claim that is an

22  Allowed Claim.

23          2.1.13   Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

24  an Allowed Claim.

25          2.1.14   Assets.  All assets that are property of the Debtor(s) pursuant to

26  Bankruptcy Code Section 541.

27          2.1.15   Arch.  Arch Insurance Company, a Bond Issuer.

28

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

2.1.16    <u>Available Cash</u>.  Each Group II: Voluntary Debtors' Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and Unsecured Claims.  The Available Cash shall consist of the respective Group II: Voluntary Debtors' cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly encumbering such Cash, or proceeds from the LitCo Plan Loan.  All Available Cash shall be deposited into the applicable Distribution Account(s).  Available Cash shall not include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are Allowed but subject to an equitable subordination judgment.

2.1.17    <u>Avoidance Actions</u>.  All Claims and defenses to Claims accruing to the Group II: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.18    <u>Bankruptcy Code</u>.  The United States Bankruptcy Code.

2.1.19    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.20    <u>Bankruptcy Rules</u>.  Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.21    <u>Beaumont Heights Project</u>.  The Project owned by SunCal Beaumont, located in the City of Beaumont, California, as more particularly described herein.

2.1.22    <u>Beaumont Heights Break-up Fee</u>. The amount equal to 2.5% of the Minimum Sales Price for the Beaumont Heights Project that will be paid to the Stalking Horse

1  Bidder that submits the Opening Bid for the Beaumont Heights Project, if such Stalking Horse

2  Bidder is not the Winning Bidder.

3        2.1.23   Beneficial Interests. means, collectively, the interests of the holders of

4  Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust

5  on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books

6  and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be

7  transferred, sold, assigned or transferred by will, intestate succession or operation of law without

8  written notification to the Plan Trustee confirming and acknowledging the transfer by both the

9  holder and the transferee.

10        2.1.24   Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer under

11  various payment or performance bonds, and/or any claims of Bond Issuer(s) against the Debtor(s)

12  under various payment or performance bonds.

13        2.1.25   Bond Claimant.  Holder(s) of a Bond Claim.

14        2.1.26   Bond Indemnitors.  The individuals and entities that are allegedly liable on

15  the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

16  Affiliates of Acquisitions, and Elieff.

17        2.1.27   Bond Issuer(s).  Bond Safeguard, Lexon and Arch in their capacities as

18  issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

19        2.1.28   Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

20        2.1.29   Business Day.  Any day, other than a Saturday, a Sunday or a "legal

21  holiday," as defined in Bankruptcy Rule 9006(a).

22        2.1.30   Cases.  The Chapter 11 cases of the Group II: Voluntary Debtors pending

23  before the Bankruptcy Court.

24        2.1.31   Cash.  Currency of the United States of America and cash equivalents,

25  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

26  transfers and other similar forms of payment.

27        2.1.32   CFD Bonds.  Community facilities district bonds issued by a

28  governmental entity.

2.1.33    <u>Claim</u>.  This term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the Group II: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the Group II: Voluntary Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.34    <u>Claims Bar Date</u>.  For any Claim the exceptions noted below, March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy Court in all of the Group II: Voluntary Debtors' cases, except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

2.1.35    <u>Claims Objection Deadline</u>.  The later of (i) the first business day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Trustee and the Holder of the Claim.

2.1.36    <u>Claim Objection Reduction Amount</u>. The amount of Net Sales Proceeds that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the secured claims filed by the Lehman Lenders.

1        2.1.37    <u>Class</u>.  Each group of Claims or Interests classified in Article V of the Plan

2 pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

3        2.1.38    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered

4 in the Bankruptcy Court's docket.

5        2.1.39    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court

6 confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

7        2.1.40    <u>Contract Action</u>. The action filed by certain Voluntary Debtors against

8 Lehman ALI, Inc., and certain other defendants, in California Superior Court for the County of

9 Orange (Case No. 30-2011-0040847-CU-BC-CJC), that was removed to the bankruptcy court as

10 Adv.  No. 8:11-ap-01212-ES, with a reservation of rights to add the Plan Trustee and/or the

11 Trustee Debtors as additional plaintiffs therein.

12        2.1.41    <u>Creditor</u>.  Any Person who is the Holder of a Claim against any Debtor

13 that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

14 become due, owing, and payable on or before the Petition Date, including, without limitation,

15 Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

16        2.1.42    <u>Debtor(s)</u>.  Individually or collectively, the Voluntary Debtors and the

17 Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

18        2.1.43    <u>Debtor(s)-in-Possession</u>.  The Voluntary Debtor(s) in their capacity as

19 representatives of their respective Estates in their respective Chapter 11 Cases.

20        2.1.44    <u>Disclosure Statement</u>.  The document accompanying the Plan that is

21 entitled "Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed

22 by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Beaumont Heights, LLC and

23 SunCal Johannson Ranch, LLC [Group II: Voluntary Debtors]," as amended and with all

24 accompanying exhibits.

25        2.1.45    <u>Disputed Claim(s)</u>.  All or any part of a Claim other than any Allowed

26 Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

27 with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

28 is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

(ii) the Claim is the subject of (a) an unresolved Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection to such Claim that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

2.1.46    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

2.1.47    Disputed Secured Claim(s). That part of a Disputed Claim that is a Secured Claim.

2.1.48    Distribution(s).  Payments to Holders of Allowed Claims provided for under the Plan.

2.1.49    Distribution Agent.  The entity that is responsible for making Distributions under the Plan, which shall be Acquisitions.

2.1.50    Distribution Account(s).  Separate account(s) to be established by the Plan Trustee at an FDIC insured bank into which each Group II: Voluntary Debtors' Available Cash shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date.

2.1.51    Distribution Date.  With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan.

2.1.52    Effective Date. A date selected by the SunCal Plan Proponents that is not later than the thirtieth (30th) calendar day after the Confirmation Date of the applicable Group II: Voluntary Debtor's Plan, and provided there is no stay pending appeal of the Confirmation Order,

1  in which case the Effective Date shall be tolled until the dissolution of such stay.  The Effective

2  Date may be extended by the Bankruptcy Court after notice and hearing to all parties in interest.

3         2.1.53    Elieff.  Bruce Elieff, the president of Acquisitions, a purported Bond

4  Indemnitor with alleged corresponding indemnity Claims against the Debtors.

5         2.1.54    Estates.  The bankruptcy estates of the Group II: Voluntary Debtors

6  created pursuant to Section 541 of the Bankruptcy Code.

7         2.1.55    Fee Applications.  Applications of Professional Persons under Sections

8  330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

9  expenses in the Cases.

10         2.1.56    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code

11  for allowance of compensation and reimbursement of expenses in the Cases.

12         2.1.57    Filed.  Delivered to, received by and entered upon the legal docket by the

13  Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

14         2.1.58    Final Order.  A judgment, order, ruling or other decree issued and entered

15  by the Bankruptcy Court that has not been reversed, stayed, modified or amended.

16         2.1.59    General Unsecured Claim.  A Claim against a Group II: Voluntary Debtor

17  that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority

18  Claim.

19         2.1.60    Group II: Voluntary Debtors. SunCal Beaumont Heights, LLC and SunCal

20  Johannson, LLC.

21         2.1.61    Group II: Voluntary Projects. Beaumont Heights Project and Johannson

22  Ranch Project.

23         2.1.62    Holder.  The beneficial owner of any Claim or Interest.

24         2.1.63    Initial Overbid. The Initial Overbid is the first Qualifying Bid after the

25  Opening Bid that is equal to or in excess of the Initial Overbid Amount.

26         2.1.64    Initial Overbid Amount. In the case of Beaumont Heights Project, the

27  Initial Overbid Amount is a sum that is not less than the sum of the applicable Opening Bid, the

28  Beaumont Heights Project Break-up Fee and the Minimum Increment. In the case of the Johannson

1    Ranch Project, the Initial Overbid Amount is a sum that is not less than the sum of the applicable

2    Opening Bid, the Johannson Project Break-up Fee and the Minimum Increment.

3            2.1.65    <u>Insider</u>.  The term shall have the broadest meaning possible under

4    Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

5    Insiders of such Affiliates.

6            2.1.66    <u>Interest</u>.  Any equity security interest in any Group II: Voluntary Debtor

7    within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

8    equity ownership interest in any of the Group II: Voluntary Debtors, whether in the form of

9    common or preferred stock, stock options, warrants, partnership interests, or membership interests.

10            2.1.67    <u>Johannson Ranch Project</u>.  The Project owned by SunCal Johannson,

11    located in the City of Modesto, California, as more particularly described in Exhibit 1.

12            2.1.68    <u>Johannson Ranch Break-up Fee</u>. The amount equal to 2.5% of the

13    Minimum Sales Price for the Johannson Ranch Project that will be paid to the Stalking Horse

14    Bidder that submits the Opening Bid for the Johannson Ranch Project, if such Stalking Horse

15    Bidder is not the Winning Bidder.

16            2.1.69    <u>LBHI</u>.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

17    company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

18    in the Bankruptcy Court for the Southern District of New York.

19            2.1.70    <u>LCPI</u>.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

20    bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

21            2.1.71    <u>Legal Rate</u>.  The rate of interest payable on judgments obtained in the

22    United States District Courts as set forth in 28 U.S.C. § 1961.  The rate applicable under the Plan is

23    1.44% per annum, representing the applicable rate on November 6, 2008.

24            2.1.72    <u>Lehman Adversary Proceeding</u>.  The Debtors' pending adversary

25    proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

26    action including equitable subordination, fraudulent conveyances and preferential transfers.

27            2.1.73    <u>Lehman ALI</u>.  Lehman ALI, Inc.

28

1                    2.1.74     Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

2    LBHI.

3                    2.1.75     Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC

4    Holdings.

5                    2.1.76     Lehman Representatives.  The individuals that controlled the Lehman

6    Entities.

7                    2.1.77     Lehman 502(d) Objection. A claim objection filed with respect to certain

8    claims filed by the Lehman Lenders that based upon Section 502(d) of the bankruptcy code.

9                    2.1.78     LitCo  A Delaware limited liability company that will be formed for the

10    purpose of funding the LitCo Plan Loan.

11                   2.1.79     LitCo Plan Loan.  A loan that will be made by LitCo to the extent

12    necessary to pay Allowed Priority Claims, Allowed Administrative Claims and Post Confirmation

13    Expenses incurred by the Plan Trust, the Plan Trustee and its professionals and to the Voluntary

14    Debtors' Committee and its professionals if no other source is available from the applicable Group

15    II: Voluntary Debtor's Assets.

16                   2.1.80     Litigation Claims.  Any and all interests of the Group II: Voluntary

17    Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

18    rights, or causes of action which have been or may be commenced by the Group II: Debtor(s), or

19    the Voluntary Debtors' Committee as the case may be, including, but not limited to, any

20    (i) Avoidance Actions; (ii) for turnover of property to the Group II: Voluntary Debtors' Estates

21    and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the

22    Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages,

23    recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary

24    Proceeding; (vi) the Contract Action, and (vii) any and all other Claims against Lehman's Disputed

25    Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

26                   2.1.81     Litigation Recoveries.  Any Cash or other property received by the

27    Chapter 11 Trustee, the Group II: Voluntary Debtors, the Voluntary Debtors' Committee and/or the

28    Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not

1    limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

2    whether recovered by way of settlement, execution on judgment or otherwise.

3              2.1.82    Litigation Rights. Any Claims held by a party against the Group II:

4    Voluntary Debtors, and if applicable, against third parties arising or relating to the Claim against

5    the applicable Group II Voluntary Debtor, that have not been fixed in a final judgment prior to the

6    Effective Date.

7              2.1.83    Maximum Distribution.  A Distribution to a Holder of an Allowed

8    Unsecured Claim against a Group II: Voluntary Debtor equal to one hundred percent (100%) of the

9    amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and

10    as of the Group II: Voluntary Debtor's Petition Date.

11              2.1.84    MB Firm.  Miller Barondess, LLP.

12              2.1.85    Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to

13    California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

14    allegedly satisfy the requirements of Bankruptcy Code 546(b).

15              2.1.86    Minimum Increment.  Minimum Increment applicable to the sales of the

16    Group II: Voluntary Projects are the following: twenty-five thousand dollars ($25,000) for the

17    Beaumont Heights Project and fifteen thousand dollars ($15,000) for the Johannson Ranch Project.

18              2.1.87    Minimum Sale Price. The minimum gross sale price that must be paid for

19    each Group II Project before such projects can be sold pursuant to the Plan, which prices are the

20    following: Beaumont Height Project - $900,000 and Johannson Ranch Project - $600,000.

21              2.1.88    Net Litigation Recoveries.  Litigation Recoveries less associated

22    Administrative Claims and Post-Confirmation Expenses incurred in connection with such

23    Litigation Recoveries.

24              2.1.89    Net Sales Proceeds.  The Cash generated from the sale(s) or liquidation of

25    the Group II: Voluntary Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling

26    expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and

27    Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

28

2.1.90    <u>Net Sales Proceeds Account(s)</u>.  Separate account(s) that will be established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s) and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except where there are two Disputed Liens on a single Project, in which case, there shall be a single account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject thereto shall become Available Cash and shall be transferred to the applicable Distribution Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are allowed and deemed valid but subject to the equitable subordination causes of action in the Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

2.1.91    <u>Opening Bid</u>.  Opening Bid means the offer by a Qualified Bidder for one, or both of the Group II: Voluntary Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for either one or both of the Group II: Voluntary Projects.

2.1.92    <u>Orders for Relief Date</u>.  The following are dates that orders for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.93    Person.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.94    Petition Dates.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| Palmdale Hills | November 6, 2008 |
|---|---|
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.95    Plan(s).  The Chapter 11 Plan for the Group II: Voluntary Debtors together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.96    Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.97    Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan elects and earlier date.

2.1.98    Plan Sponsor.  The entity that has committed to cause and/or arrange the funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan Sponsor is Acquisitions.

2.1.99    Plan Trust.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.100    Plan Trustee. The Plan Trustee under the Plan Trust is Acquisitions.

2.1.101    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from Plan Trust Asset in accordance with the terms of the Plan.

2.1.102    Plan Trust Asset. Plan Trust Asset means all property within the Chapter 11 estates of the Group II: Voluntary Debtors.

2.1.103    Post-Confirmation Expenses.  The fees and expenses incurred by the Plan Trust, the Plan Trustee and the Voluntary Debtors' Committee and their professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and closing the Group II: Voluntary Debtors' Chapter 11 Cases.

2.1.104    Priority Claim.  Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.105    Pro Rata.  Proportionately, so that with respect to any distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

1    amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

2    such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

3          2.1.106    Professional.  A Person or Entity (a) employed by the Group II: Voluntary

4    Debtors, the Voluntary Debtors' Committee pursuant to a Final Order in accordance with Sections

5    327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the

6    Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for

7    which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to

8    Section 503(b) of the Bankruptcy Code.

9          2.1.107    Professional Fees.  All Allowed Claims for compensation and for

10   reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

11         2.1.108    Projects.  The Debtors' residential real estate development projects and

12   other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

13         2.1.109    Qualifying Bid.  Qualifying Bid means, with respect to any bid on a

14   Group II Voluntary Debtor Project, a bid made by Qualifying Bidder that is A) equal to or in

15   excess of the Initial Overbid Amount, unless it is the Initial Overbid, or B) in excess of the

16   immediately preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

17         2.1.110    Qualifying Bidder.  Qualifying Bidder means a bidder who a) has

18   deposited the sum of thirty thousand dollars ($30,000) into an escrow designated by the SunCal

19   Plan Proponents in the case of a bid for the Beaumont Heights Project, twenty thousand dollars or

20   ($20,000) in the case of a bid for the Johannson Ranch Project; b) agreed that this sum will be

21   forfeited as liquidated damages if such bidder fails to perform; and c) who has provided the SunCal

22   Plan Proponents evidence confirming that such bidder has the financial means to acquire the

23   applicable Group II: Voluntary Project(s) that such bidder is seeking to acquire.

24         2.1.111    Sale Period.  For each Group II: Voluntary Debtor's Plan(s), the Sale

25   Period is the time period during which the SunCal Plan Proponents must consummate a sale or

26   liquidation of the Group II: Voluntary Projects. The Sale Period shall commence on the

27   Confirmation Date and shall expire on the thirtieth (30th) day after the Effective Date, unless

28   extended by the Bankruptcy Court after notice and hearing.

1             2.1.112    <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a

2 subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

3             2.1.113    <u>Schedules</u>.  The schedules of assets and liabilities and list of equity

4 security holders Filed by the Group II: Voluntary Debtors, as required by Section 521(1) of the

5 Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

6 as amended from time to time.

7             2.1.114    <u>Secured Claim</u>.  Any Claim, including interest, fees, costs, and charges to

8 the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

9 unavoidable Lien on the Group II: Voluntary Debtor(s)' Assets.

10             2.1.115    <u>Stalking Horse Bidder</u>.  The Qualified Bidder who submits the Opening

11 Bid.

12             2.1.116    <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its

13 Affiliates.

14             2.1.117    <u>SunCal I</u>. SunCal Communities I, LLC, a Delaware limited liability

15 company, a Voluntary Debtor herein, and the owner of the equity membership interests in Acton

16 Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and

17 SunCal Emerald.

18             2.1.118    <u>SunCal Communities I Loan Agreement</u>.  The loan agreement by and

19 among (i) SunCal I and SunCal III, as borrowers and (ii) LCPI, as administrative agent and lender,

20 pursuant to which LCPI made a loan to SunCal I and SunCal III, as borrowers in the maximum

21 aggregate principal amount of approximately $395,313,713.37.  The loan agreement is allegedly

22 secured by (a) alleged first-priority deeds of trust on the SunCal Bickford, the Acton Estates, and

23 the SunCal Emerald Projects, (b) an alleged pledge of SunCal I's Allowed Interest in Acton

24 Estates, SunCal Summit, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal

25 Bickford; and (c) an alleged pledge of SunCal Summit's Allowed Interest in Seven Brothers and

26 Kirby.  The SunCal Communities I Loan Agreement has an alleged balance due of

27 $343,221,391.06 as of March 30, 2009.

28

1          2.1.119    SunCal Management.  SunCal Management, LLC, a Delaware limited

2  liability company, and the former property manager for the Projects, which has been succeeded by

3  Argent Management.

4          2.1.120    SunCal Plan Proponents.  The Group II: Voluntary Debtors, in their

5  capacity as debtors and debtors in possession in their respective Chapter 11 cases, and Acquisitions

6  as a creditor and party-in-interest, that are proposing the Plans.

7          2.1.121    Tax.  Any tax, charge, fee, levy, impost or other assessment by any

8  federal, state, local or foreign taxing authority, including, without limitation, income, excise,

9  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

10  estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

11  additions attributable to, or imposed on or with respect to such assessments.

12          2.1.122    Tax Claim.  Any Claim for any Tax to the extent that it is entitled to

13  priority in payment under Section 507(a)(8) of the Bankruptcy Code.

14          2.1.123    Trustee Debtor(s). The following Debtors, individually or collectively,

15  that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

16  Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal

17  Torrance, and SunCal Oak Knoll.

18          2.1.124    Unpaid Secured Real Property Tax Claims.  Secured Claims held by

19  various government entities secured by liens on the underlying real properties owned by the

20  Debtors but that are non-recourse to the Debtors.

21          2.1.125    Unsecured Claim. An Unsecured Claim is any Claim that is not an

22  Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

23          2.1.126    Voluntary Debtor(s).  The following  Chapter 11 debtors and debtors-in-

24  possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

25  Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

26  Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

27  Rio and Tesoro.

28

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

1    2.1.127    <u>Voluntary Debtors' Committee</u>.  The Official Committee of Unsecured

2  Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

3  Bankruptcy Code.

4    2.1.128    <u>Winning Bid</u>. The highest and best Qualifying Bid received for the

5  Beaumont Heights Project and/or  the Johannson Ranch Project.

6    2.1.129    <u>Winning Bidder</u>.  The party that submits the highest Qualifying Bid that

7  is accepted by the applicable Group II: Voluntary Debtor.

8    **2.2**    **<u>Rules of Construction.</u>**

9    For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

10  in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

11  singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

12  masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

13  Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

14  such document or schedule, as it may have been or may be amended, modified or supplemented

15  pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

16  entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

17  or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

18  and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

19  in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

20  the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

21  contract, instrument, release, indenture, agreement, or other document being in a particular form or

22  on particular terms and conditions means that such document shall be substantially and materially

23  in such form or substantially and materially on such terms and conditions; (h) any reference in the

24  Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

25  Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

26  may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

27  102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

28  express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

1    **2.3    Exhibits**.

2        All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

3    therein.

4    **III.**

5    **TREATMENT OF UNCLASSIFIED CLAIMS**

6    **3.1    Introduction**. As required by the Bankruptcy Code, the Plan places Claims and

7    Interests into various Classes according to their right to priority.  However, certain types of Claims

8    are not classified in any Classes under the Plan.  These Claims are deemed "unclassified" under the

9    provisions of the Code.  They are not considered impaired and they do not vote on the Plan,

10    because they are automatically entitled to specific treatment provided for them in the Code.  As

11    such, the SunCal Plan Proponents have not placed the following Claims in a Class.  The treatment

12    of these unclassified Claims is as provided below.

13    **3.2    Treatment of Allowed Administrative Claims**.

14        The Code requires that all Allowed Administrative Claims be paid on the later of Effective

15    Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

16    treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such

17    Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be

18    paid from the applicable Distribution Account(s) pursuant to the LitCo Plan Loan.

19    **3.3    Repayment of Allowed Administrative Claims**.

20        Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

21    different treatment and subject to the Administrative Claims Bar Date set forth herein, the

22    Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

23    (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

24    becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

25    becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative

26    Claim representing obligations incurred in the ordinary course of post-petition business by the

27    Debtors in Possession (including without limitation post-petition trade obligations and routine

28

1    post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the

2    ordinary course of business, in accordance with the terms of the particular obligation.

3         **3.4**    <u>**Administrative Claims Bar Date**</u>.

4         All applications for final compensation of Professionals for services rendered and for

5    reimbursement of expenses incurred on or before the Effective Date and all other requests for

6    payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

7    or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

8    obligations and routine post-petition payroll obligations incurred in the ordinary course of the

9    Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

10    obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

11    upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

12    extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

13    of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

14    is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

15    any party that seeks payment of Administrative Claims that (i) is required to file a request for

16    payment of such Administrative Claims and (ii) does not file such a request by the deadline

17    established herein shall be forever barred from asserting such Administrative Claims against the

18    Debtors, the Plan Trust, their estates, or any of their property.

19         **3.5**    <u>**Treatment of Unsecured Tax Claims**</u>.

20         Tax Claims are certain unsecured income, employment and other taxes described by Code

21    Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

22    receive the present value of such Claim in deferred cash payments, over a period not exceeding

23    five (5) years from the petition date and that such treatment not be less favorable than the treatment

24    accorded to non priority unsecured creditors.

25         At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

26    entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

27    each three-month period following the Effective Date, during a period not to exceed five years

28    after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

1  unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

2  United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

3  the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

4  favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

5  forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

6  **IV**.

7  **CLASSIFICATION OF CLAIMS AND INTERESTS**

8  　　　　As required by the Code, the Plan places Claims and Interests into various Classes

9  according to their right to priority and other relative rights.  The Plan specifies whether each Class

10  of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

11  will receive.  The table below lists the Classes of Claims established under the Plan and states

12  whether each particular Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired"

13  if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

14  Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

15  Code.

| CLASSIFICATION OF HOLDERS OF UNPAID SECURED REAL PROPERTY TAX CLAIMS AGAINST THE GROUP II: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.** |
| Class 1.1 | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Beaumont Heights Project in the amount of $442,201. | SunCal Beaumont 9 |
| Class 1.2 | Stanislaus County as the Holder of an Unpaid Secured Real Property Tax Claim against the Johannson Ranch Project in the amount of $434,830. | Unknown |

| CLASSIFICATION OF ASSERTED MECHANICS LIEN CLAIMS AGAINST THE GROUP II: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 2** | **Claimant** | **Claim Nos.** |
| Class 2.1 | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Beaumont Heights Project in the amount of $43,355. | SunCal Beaumont 11 and 12 |

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE GROUP II: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| Class 3.1 | The Holder of Allowed Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against any of the Group II: Voluntary Debtors | None filed |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS AGAINST THE GROUP II: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| Class 4.1 | Claimants holding Allowed Unsecured Claims against SunCal Beaumont in the amount of $180,713. | Various Filed and Scheduled |
| Class 4.2 | Claimants holding Allowed Unsecured Claims against SunCal Johannson Ranch in the amount of $41,181. | Various Filed and Scheduled |

| CLASSIFICATION OF INTEREST HOLDERS AGAINST THE GROUP II: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Scheduled** |
| Class 5.1 | Allowed Interests in SunCal Beaumont held by SunCal I. | Scheduled Amount |
| Class 5.2 | Allowed Interests in SunCal Johannson Ranch held by SunCal I | Scheduled Amount |

### V.

### THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1** **The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims on the Group II: Voluntary Projects (Classes 1.1 and 1.2).**

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 through 1.2 are impaired under the Plan and shall receive one of the following two treatments at the Plan Trustee's discretion based solely on the option of the Group II: Voluntary Debtor:

A. Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and such Allowed Claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2) from the sale of the Group II: Voluntary Projects during the Sales Period; or

B. Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and

1    California Revenue and Taxation Code Sections 4102 and 4103, and payment on such

2    Allowed Claims shall be satisfied over sixty-one (61) months from the applicable Group

3    III: Voluntary Debtor's Petition Date.

4    **5.2    The Plan's Treatment of Mechanics Lien Claims Against Group II: Voluntary**

5    **Projects (Class 2.1).**

6    The Holder(s) of Allowed Secured Claims within Class 2.1 shall receive the indubitable

7    equivalent of their claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii),  after payment

8    of Class 1 Claims, through the following treatment:

9    A.    The sale of the Group II: Voluntary Projects shall be sold, free and clear of

10    all monetary liens and encumbrance, pursuant to the following sales procedures:

11    1.    The Group II: Voluntary Projects will be sold through a public

12    auction after a commercially reasonable marketing and advertising effort of at least sixty (60) days

13    duration;

14    2.    The SunCal Plan Proponents shall have the right to provisionally

15    accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this

16    bidder the right to receive the Beaumont Heights Project Break-up Fee or the Johannson Ranch

17    Project Break-up Fee, the as the case may be, if such bidder is not the Winning Bidder;

18    3.    Other Qualified Bidders shall have the right to overbid the Opening

19    Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must

20    be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be

21    increased by an amount equal to or in excess of the Minimum Increment;

22    4.    The highest Qualifying Bid received from a Qualified Bidder, shall

23    be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon

24    payment of the Winning Bid, the Winner bidder shall receive title to the applicable Group II:

25    Voluntary Project free and clear of all monetary liens and encumbrances; and

26    5.     The Net Sales Proceeds from the sale of the Group II: Voluntary

27    Projects shall be deposited into the applicable Net Sales Proceeds Account and the liens held by

28

the holder of the Class 2.1 lien shall attach to the Net Sales Proceeds. The Class 2.1 claim shall be paid from the Net Sales Proceeds within three (3) business days of the date they are Allowed.

**5.3    The Plan's Treatment of Holders of Priority Claims (Class 3.1)**.

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows**:**

   A. The Holder(s) are unimpaired under the Plan; and

   B. The Holder(s) shall be paid from the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.4    The Plan's Treatment of Holders of Allowed General Unsecured Claims (Class 4.1).**

The rights of Holders of Allowed Class 4.1 Claims are impaired under the Plan. Under the Plan, each claimant will receive a distribution of the Available Cash, if any, on or before the thirtieth (30th) day after the Effective Date, equal to the Net Sales Proceeds remaining after the payment of all Allowed Administrative, Priority and Secured Claims, including Holders of Mechanic Lien Claims, but only up to the Maximum Distribution.

**5.5    The Plan's Treatment of Holders of Allowed Interests.**

The Interests of the Holders in Class 5.1 and 5.2 are impaired under the Plan. All such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these Holders on account of such Interest(s).

**VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1    Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

1   which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors

2   cannot represent that the discussion contained below is a complete summary of the law on this

3   topic.

4          Many requirements must be met before the Court can confirm the Plan.  Some of the

5   requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

6   the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

7   whether the Plan is feasible.  The requirements described herein are <u>not</u> the only requirements for

8   confirmation.

9          **6.2      Who May Object to Confirmation of the Plan.**

10         Any party in interest may object to the confirmation of the Plan, but as explained below not

11  everyone is entitled to vote to accept or reject the Plan.

12         **6.3      Who May Vote to Accept/Reject the Plan.**

13         A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of

14  the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and

15  (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected").

16  The votes will be tabulated on a Debtor by Debtor basis.

17         **6.4      What Is an Allowed Claim/Interest.**

18         As noted above, a Holder of Claim or Interest must first have an Allowed Claim or

19  Allowed Interest to vote.

20         **6.5      What Is an Impaired Class.**

21         A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

22  or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

23  In this case, the SunCal Plan Proponents believe that all Classes, except for Class 3.1 are impaired.

24         **6.6      Who Is Not Entitled to Vote.**

25         The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been

26  disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to

27  Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain

28  any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such

1    Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy

2    Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

3    they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes

4    that do not receive or retain any property under the Plan do not vote because such Classes are

5    deemed to have rejected the Plan. The SunCal Plan Proponents believe that all Classes, except

6    Class 3.1, are entitled to vote.

7            EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

8    HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

9            **6.7     Who Can Vote in More than One Class.**

10           A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

11   Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

12   the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

13   otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

14   Subordinated Note Claims), and may vote the Claims held in each Class.

15           **6.8     Votes Necessary for a Class to Accept the Plan.**

16           A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

17   number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

18   accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

19   two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

20   the Plan.

21           **6.9     Treatment of Nonaccepting Classes.**

22           As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

23   Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

24   required by the Code and at least one impaired Class of Claims accepts the Plan. The process by

25   which a plan may be confirmed and become binding on non-accepting Classes is commonly

26   referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

27   nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

28   requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

1  equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

2  11 U.S.C. § 1129(b) and applicable case law.

3  **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

4  The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

5  impaired Class if such Class does not vote to accept the Plan.

6  **VII.**

7  **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

8  **7.1    Introduction.**

9  This section is intended to address how the SunCal Plan Proponents intend to implement

10  the provisions of the Plan.  It addresses the transfer of the Plan Trust Asset to the Plan Trust, the

11  nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

12  resolution of disputed claims, the sources of funds that will be used to pay claims and the

13  mechanics of how claims will be paid.

14  **7.2    Sale Process of the Group II: Voluntary Projects During the Sale Period**.

15  The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

16  the highest dividend possible by selling the estates' primary assets, the Group II: Voluntary

17  Projects, to the highest bidder. The process of marketing the Group II: Voluntary Projects for sale

18  will begin, pursuant to the Confirmation Order, immediately after the entry of this order.

19  Acquisitions shall manage the marketing process initially in its capacity as a SunCal Plan

20  Proponent and as the Plan Trustee after the Effective Date.  Furthermore, the Voluntary Debtors'

21  Committee shall be consulted and have the opportunity to object to the sales process and request a

22  hearing with the Bankruptcy Court.

23  The sale of the Group II: Voluntary Projects shall be sold, free and clear of all

24  monetary liens and encumbrance, pursuant to the following sales procedures:

25  1.    The Group II: Voluntary Projects will be sold through a public

26  auction after a commercially reasonable marketing and advertising effort of at least sixty (60) days

27  duration;

28

2.     The SunCal Plan Proponents shall have the right to provisionally accept an Opening Bid from a Stalking Horse Bidder prior to the public auction and to grant this bidder the right to receive the Beaumont Heights Project Break-up Fee or the Johannson Ranch Project Break-up Fee, as the case may be, if such bidder is not the Winning Bidder;

3.     Other Qualified Bidders shall have the right to overbid the Opening Bid by submitting a Qualifying Bid. The first round of Qualifying Bids after the Opening Bid must be equal to or in excess of the Initial Overbid Amount. Thereafter, all Qualifying Bids shall be equal to or in excess or the Minimum Increment;

4.     The highest Qualifying Bid received from a Qualified Bidder, shall be accepted as the Winning Bid, and the submitting bidder shall be the Winning Bidder. Upon payment of the Winning Bid, the Winner bidder shall receive title to the applicable Group II: Voluntary Project free and clear of all monetary liens and encumbrances; and

5.     The Net Sales Proceeds from the sale of the Group II: Voluntary Projects shall be deposited into the applicable Net Sales Proceeds Account.

The SunCal Plan Proponents will pursue the following sale procedures after the Confirmation Date:

A.     Implementation of a Marketing Program. On or before the Confirmation Date, the SunCal Plan Proponents will market the Group II: Voluntary Projects for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group II: Voluntary Project to the real estate brokerage community; b) advertising the Group II: Voluntary Projects for sale on a website that includes links allowing direct access to all relevant information regarding the Group II: Voluntary Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

B.     Identifying a Stalking Horse Bidder. On the first business day after the Effective Date, the Plan Trustee will accept, on a provisional basis, an Opening Bid for one or both of the Group II: Voluntary Projects.  The bidder whose Opening Bid is accepted for each Group II: Voluntary Project will become the "Stalking Horse Bidder."  The Opening Bid must be equal to

-31-

1   the Minimum Sale Price(s) fixed in the Plan for each Group II: Voluntary Project.  The Plan

2   Trustee shall also select Qualified Bidders at this time.

3           C.      The Sale Contract. The sale contract that will be entered into with the

4   Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

5           1.      Overbid Provisions. The contract will allow the SunCal Plan

6   Proponents to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that

7   exceeds the Stalking Horse Bid by the Initial Overbid Amount applicable to each Group II:

8   Voluntary Project. In the case of Beaumont Heights Project, the Initial Overbid Amount is a sum

9   that is not less than the sum of the applicable Opening Bid, the Beaumont Heights Ranch Break-up

10  Fee and Minimum Increment. In the case of the Johannson Ranch Project, the Initial Overbid

11  Amount is a sum that is not less than the sum of the applicable Opening Bid, the Johannson Ranch

12  Break-up Fee and the Minimum Increment.

13          2.      Break-Up Fees. The sale contract will include a "break-up fee"

14  provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and

15  another Qualified Bidder purchases the Group II: Voluntary Project(s) that is the subject of the

16  Opening Bid.

17          3.      Sale Free And Clear of Liens. The sale contract will provide that the

18  Group II: Voluntary Project(s) are being sold free and clear of all monetary liens and

19  encumbrances.

20          D.      The Auction.  Fourteen (14) days after the date of the selection of the

21  Stalking Horse Bidder, the Plan Trustee will conduct a public auction wherein all Qualified

22  Bidders who have submitted Qualified Bids for the Group II: Voluntary Projects will have the

23  opportunity to increase their bids for these Projects. The Qualified Bidder that submits the highest

24  bid for the Project will then be designated the Winning Bidder. The Winning Bidder will then have

25  fifteen (15) days pay the Winning Bid amount and the closing shall occur no later than the first

26  business day following the thirtieth (30th) day after the Effective Date.

27

28

**7.3     <u>Establishment and Operations of the Plan Trust</u>**.

The Plan Trust shall be established and shall become effective on the Effective Date.  The Plan Trust is created pursuant to the Plan and the Confirmation Order.  The primary purpose of the Plan Trust is to consummate the sales and/or the liquidation of the Group II: Voluntary Projects transferred to it and the Distribution of the Net Sales Proceeds to Creditors, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust.  The Plan Trust shall hold title to and administer the Plan Trust Assets, including, but not limited to, any Litigation Claims, and the proceeds thereof for liquidation and distribution in accordance with the terms of the Plan.

**7.4     <u>Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust</u>**.

On the Effective Date, title to and possession of all property of the Group II: Voluntary Debtors shall be deemed transferred and delivered to the Plan Trust, without further act or action under any applicable agreement, law, regulation, order or rule of law.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written notice and opportunity to object to the proposed action.  Any disputes concerning the settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

All Litigation Recoveries realized or obtained by the Plan Trustee shall be promptly deposited into the applicable Distribution Account(s).  Except as otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and Liens and shall only be expended in accordance with the provisions of the Plan.

**7.5**     **Payment of Plan Trust Expenses**.

The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be paid, or adequate reserves shall be created for the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

**7.6**     **The Plan Trust Distribution System.**

The Plan Trustee shall establish a separate "Distribution Account" for each Group II: Voluntary Debtor at an FDIC insured bank. Each Group II: Voluntary Debtor's Available Cash, whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group II: Voluntary Debtor's Distribution Account.  These funds will then be used to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons dealing with the Plan Trustee, or seeking to assert Claims against the Debtors, the Estates or the Plan Trust, shall look only to property of the Debtors, the Estates or the Plan Trust to satisfy any liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

**7.7**     **The Plan Trustee**.

**7.7.1**     **Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The appointment of the Plan Trustee shall be effective as of the Effective Date.

**7.7.2**     **Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan Trustee.

**7.7.3**     **Powers and Duties**.  On the Effective Date, the Plan Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

        i.      employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under the Plan;

        ii.      control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors pursuant to the terms of the Plan;

        iii.      open, maintain and administer bank accounts as necessary to discharge the duties of the Plan Trustee under the Plan;

        iv.      make Distributions to the Holders of Allowed Claims in accordance with the Plan;

        v.      retain professionals to assist in performing his or her duties under the Plan;

        vi.      pay reasonable and necessary professional fees, costs, and expenses;

        vii.      investigate, analyze, commence, prosecute, litigate, compromise, settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests of the Plan Trust;

        viii.      administer, sell, liquidate, or otherwise dispose of the Assets in accordance with the terms of the Plan;

        ix.      incur and pay reasonable and necessary expenses in connection with the performance of the Plan Trustee's duties under the Plan;

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

x.      represent the Estates before the Court and other courts of competent

jurisdiction with respect to matters concerning the Plan Trust;

xi.      seek the examination of any entity under the subject to the provisions

of Bankruptcy Rule 2004;

xii.      comply with applicable orders of the court and any other court of

competent jurisdiction over the matters set forth in the Plan;

xiii.      comply with all applicable laws and regulations concerning the

matters set forth in the Plan;

xiv.      exercise such other powers as may be vested in the Plan Trust

pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

xv.      execute any documents, instruments, contracts, and agreements

necessary and appropriate to carry out the powers and duties of the Plan Trust;

xvi.      (1) seek a determination of tax liability under §505 of the code, (2)

pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a

"grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

xvii.      stand in the shoes of the Debtors for all purposes.

**7.7.4**      **Retention of Professionals and Compensation Procedure.**  On and

after the Effective Date, the Plan Trustee may, without further application or Motion, notice,

hearing, or Court order, engage or employ such professionals and experts as may be deemed

necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out the

provisions of the Plan, including, but not limited to, the Professionals retained prior to the

Effective Date by either the Debtors or the Voluntary Debtors' Committee.  The Plan Trustee may

employ such professionals on any reasonable terms and conditions of employment to be

determined by the Plan Trustee.  For the services performed on and after the Effective Date, the

professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive

1   reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan

2   Trustee.

3          **7.7.5   Fees and Expenses.**  Acquisitions shall not receive any compensation for

4   the services it performs as the Plan Trustee.  The Plan Trustee Professionals shall be entitled to

5   reasonable compensation for their services, and reimbursement of expenses.  The costs and

6   expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee

7   Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order,

8   notice or application to the Court, the reasonable fees and expenses of the Plan Trustee

9   Professionals, as necessary to discharge the Plan Trustee's duties under the Plan.  The Plan Trustee

10  shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the

11  Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any

12  Distributions under the Plan.

13         **7.7.6       Limitation of Liability and Indemnification.**  None of the Group II:

14  Voluntary Debtors, the Voluntary Debtors' Committee, the Plan Sponsor, the SunCal Plan

15  Proponents, the Plan Trustee, the Professionals, nor any of their respective members, officers,

16  directors, shareholders, employees, or agents (the "Indemnified Parties") shall be liable (a) for any

17  loss or damages by reason of any action taken or omitted by him or her, except in the case of fraud,

18  willful misconduct, bad faith, or gross negligence, (b) for any act or omission made in reliance

19  upon the Debtors' books and records or upon information or advice given to the Plan Trustee by

20  his or her professionals, or (c) for any action taken or omission made in connection with or related

21  to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the

22  approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan,

23  or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the

24  fullest extent permitted by applicable statute and case law.  Except as otherwise provided in this

25  Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate,

26  statement, instrument, opinion, report, notice, consent, or other document believed by him or her to

27  be genuine and to have been signed by the proper party or parties.

28

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

1       The Indemnified Parties shall be indemnified and receive reimbursement from and

2  against any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type

3  or nature, which the Indemnified Party may incur or sustain the exercise and performance of any of

4  the Plan Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering

5  of services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable

6  law, except if such loss, liability, expense or damage is finally determined by a court of competent

7  jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct,

8  bad faith, or gross negligence.  The amounts necessary for such indemnification and

9  reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee

10  shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan

11  Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or

12  liability.  This indemnification shall survive the dissolution, resignation or removal, as may be

13  applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit

14  of the Plan Trustee's and the Indemnified Person's heirs and assigns.

15       **7.7.7**  **Plan Trustee as Successor.**  Pursuant to Code §1123(b), the Plan Trustee

16  shall be the successor to the Group II: Voluntary Debtors for all purposes.

17       **7.8**    **The Plan Trust Beneficiaries**.

18       The Holders of Allowed Claims under the Plan, or any successors to such Holders'

19  Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust

20  which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the

21  times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be

22  evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except

23  as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a

24  beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan

25  Trust assets or to any right to call for a partition or division of such assets or to require an

26  accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner

27  provided in the Plan.

28

1      The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities"

2  under applicable law.  However, such rights have not been defined as "securities" under the Plan

3  because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

4  arising under the Plan Trust are deemed to be "securities," the exemption from registration under

5  §1145 of the Bankruptcy code is intended to be applicable to such securities.

6      **7.9  <u>No Payment of Transfer-Related Fees to the United States Trustee</u>**.

7      The Plan Trust shall not be required to pay any fees to the United States Trustee based on

8  any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

9      **7.10  <u>No Payment of Transfer-Related Fees to the Plan Trustee</u>**.

10      The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any

11  transfers of Plan Trust Assets from the Group II: Voluntary Debtors to the Plan Trust, or from the

12  Plan Trust.

13      **7.11  <u>Books and Records of Trust</u>**.

14      The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent,

15  the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

16  Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

17  for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

18  that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

19  the Plan Trusts books and records at such time as Plan Trust has no further need for such books

20  and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

21  upon written request by the Voluntary Debtors' Committee.

22      **7.12  <u>Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial</u>**

23      **<u>Interests</u>**.

24      For all United States federal income tax purposes, the transfers by the Group II: Voluntary

25  Debtors shall be treated by the Group II: Voluntary Debtors, their estates, the Plan Trust and the

26  Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Group II: Voluntary Debtors

27  to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan

28  Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and

1   deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust

2   Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust

3   Assets consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use

4   such valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations

5   of the Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall

6   provide that the Plan Trust will determine the fair market value of the Plan Trust Assets within

7   thirty (30) days after the Effective Date, and send such determination to each the Plan Trust

8   Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be

9   conclusively deemed to agree to use such valuations for all purposes, including, without limitation,

10  in computing any gain recognized upon the exchange of such holder's claim for purposes of

11  determining any United States Federal income tax, and shall be required to include those items of

12  income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

13  its taxable income.

14      **7.13    <u>Termination of the Trust</u>.**

15      The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

16  Assets has been liquidated, all proceeds have been converted to cash or distributed in kind, all the

17  Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust

18  Trustee is obligated to make Distributions on have been paid, all distributions to be made with

19  respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party

20  have been concluded by dismissal or an order issued by the court in which such litigation is

21  pending and such order has become "final" (consistent with the definition of Final Order in the

22  Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

23  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

24  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

25  period as is reasonably necessary to conclude the liquidation and Distributions, not to exceed a

26  total of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy

27  Court may consider and rule on the request within six (6) months prior to the expiration of the

28  initial five-year term.

1    **7.14**    **Exemption from Certain Transfer Taxes**.

2        In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

3    exchange of a security or the making or delivery of an instrument of transfer under the Plan may

4    not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

5    agents shall forego the assessment and collection of any such tax or governmental assessment and

6    shall accept for filing and recordation any of the foregoing instruments or other documents without

7    payment of such tax or other governmental assessment.

8    **7.15**    **Tax Consequence of The Plan**.

9        The implementation of the Plan may have federal, state and local tax consequences to the

10    Group II: Voluntary Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will

11    be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not

12    constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the

13    summary contained herein is provided for informational purposes only.

14        CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

15    OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

16    DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

17    FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

18    **7.16**    **The Voluntary Debtors' Committee.**

19        On the Effective Date, the Voluntary Debtors' Committee shall continue to serve their

20    applicable Debtors as Voluntary Debtors' Committee to the applicable reorganized Debtors,

21    subject to the following:

22        **7.16.1 Duties and Powers.**  The duties of the Voluntary Debtors' Committee after

23    the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity

24    to object to the sales process, notice and opportunity to object to any settlement of the Lehman

25    Adversary Proceeding, and the Contract Action, standing to object to any settlement of any

26    Litigation Claim in excess of $100,000, standing to object to any proposed sales procedures on sale

27    of the Group II: Voluntary Projects, and standing and sole and exclusive right to file, prosecute and

28    resolve potential Avoidance Actions against and objections to Claims filed by (i) SunCal

1  Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing, LLC and

2  (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP, The MB

3  Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.  Voluntary Debtors'

4  Committee shall receive notice of and the right to review all payments and Distributions.

5       The Voluntary Debtors' Committee shall be entitled to retain, employ and

6  compensate Professionals, in order to assist with the obligations and rights of the Voluntary

7  Debtors' Committee under the terms of the Plan.  Such compensation shall be paid from the

8  applicable Distribution Account(s).

9       **7.16.2  <u>Dissolution of Voluntary Debtors' Committee</u>.**  The Voluntary Debtors'

10  Committee shall be dissolved upon the entry of an order converting, closing or dismissing the

11  Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Voluntary

12  Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the

13  Plan Trust.

14       **7.17  <u>Claims Estimation Rights.</u>**

15       On the Confirmation Date, the SunCal Plan Proponents shall be vested with standing to file

16  a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

17  motion the estimation, for Distribution purposes, of any Disputed Claim seeking recourse to, or

18  claiming an interest in, any asset of the Group II: Voluntary Debtors. After the Bankruptcy Court

19  estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

20  the Plan Trustee shall have the right to use any funds or assets not deemed subject to the rights of

21  the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

22  Administrative Claims, after the Effective Date.

23                 **VIII.**

24               **<u>DISTRIBUTIONS</u>**

25       **8.1  <u>Distribution Agent</u>.**

26       Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The

27  Distribution Agent may employ one or more sub agents on such terms and conditions as it may

28  agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

1  Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in

2  connection with the making of any Distributions pursuant to the Plan.

3      **8.2      Distributions.**

4          **8.2.1      Dates of Distributions.**  Any distribution required to be made on the

5  Effective Date shall be deemed timely if made as soon as practicable after such date and, in any

6  event, within thirty (30) days after such date.  Any distribution required to be made upon a

7  Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be

8  deemed timely if made as soon as practicable thereafter.

9          **8.2.2      Limitation on Liability.**  Neither the Plan Sponsor, the Plan Trustee, the

10  Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors,

11  agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross

12  negligence or willful misconduct) in connection with implementing the Distribution provisions of

13  the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in

14  the value of distributions made pursuant to the Plan resulting from any delays in making such

15  distributions in accordance with the Plan's terms (including but not limited to any delays caused by

16  the resolution of Disputed Claims).

17      **8.3      Old Instruments and Securities.**

18          **8.3.1      Surrender and Cancellation of Instruments and Securities.**  As a

19  condition to receiving any distribution pursuant to the Plan, each Person holding any note or other

20  instrument or security (collectively "Instruments or Securities" and individually an "Instrument or

21  Security") evidencing, an existing Claim(s) against the Debtor(s) must surrender such Instrument

22  or Security to the Distribution Agent.

23          **8.3.2      Cancellation of Liens.**  Except as otherwise provided in the Plan, any Lien

24  securing any Secured Claim shall be deemed released and discharged, and the Person holding such

25  Secured Claim shall be authorized and directed to release any collateral or other property of the

26  Debtors (including, without limitation, any cash collateral) held by such Person and to take such

27  actions as may be requested by the Plan Trustee to evidence the release of such Lien, including,

28

1   without limitation, the execution, delivery and Filing or recording of such releases as may be

2   requested by the Plan Trustee.

3         **8.3.4**   **De Minimis Distributions and Fractional Shares.**  No Cash payment of

4   less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request

5   therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would

6   otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the

7   nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this

8   section shall, after the last distribution on account of Allowed Claims in the applicable Class, be

9   treated as "Unclaimed Property" under the Plan.

10         **8.3.5**   **Delivery of Distributions.**  Except as provided in the Plan with respect to

11   Unclaimed Property, distributions to Holders of Allowed Claims and Allowed Administrative

12   Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed

13   Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official

14   claims agent for the Debtors; (2) with respect to each Holder of an Allowed Claim that has not

15   filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtors, provided,

16   however, that if the Debtors or the Plan Trust has received a written notice of a change of address

17   for such Holder, the address set forth in such notice shall be used; or (3) with respect to each

18   Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

19         **8.3.6**   **Undeliverable Distributions.**  If the Distribution of Cash to the Holder of

20   any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not

21   negotiated within 90 days of mailing (any such distribution being hereinafter referred to as

22   "Unclaimed Property"), no further distribution shall be made to such Holder unless and until the

23   Plan Trustee is notified in writing of such Holder's then current address.  Subject to the remainder

24   of this Section and the following section, Unclaimed Property shall remain in the possession of the

25   Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a

26   segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the

27   Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing

28

1    contained in the Plan shall require the Plan Trustee or any other Person to attempt to locate such

2    Person.

3                        **IX.**

4        **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

5      **9.1**      **Standing for Objections to Claims.**

6         The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

7    objections to Claims, except as specifically provided herein.  The Voluntary Debtors' Committee

8    shall have the sole and exclusive right to file, prosecute and resolve objections to Claims filed by

9    (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing,

10   LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP,

11   The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.  Any objection to a

12   Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or

13   before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition

14   the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection

15   Deadline if a complete review of all Claims cannot be completed by such date.

16      **9.2**      **Treatment of Disputed Claims and Disputed Liens.**

17        **9.2.1**    **No Distribution Pending Allowance.**  If any portion of a Claim or Lien is a

18   Disputed Claim or Disputed Lien, no payment or distribution provided for under the Plan shall be

19   made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed

20   Claim and/or Allowed Lien.

21        **9.2.2**    **Distribution After Allowance.**  On the next Distribution Date following the

22   date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim,

23   the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have

24   been distributable to such Person if on the initial Distribution Date such Claim had been an

25   Allowed Claim and not a Disputed Claim.

26        **9.2.3**    **Reserves for Disputed Claims.**  In the event that Disputed Claims are

27   pending at the time of a Distribution under the Plan, the Plan Trustee shall establish and maintain a

28   reserve for such Disputed Claims.  For purposes of establishing a reserve, Cash will be set aside

equal to the amount that would have been distributed to the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a Distribution is made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims.  If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the distributed Date following the date when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim because the Disputed Claim does not become an Allowed Claim shall become property of the Plan Trust and shall be distributed in accordance with the terms of the Plan.

**X.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**10.1    Executory Contracts to be Assumed and Assigned.**

Under the Plans, the Group II: Voluntary Projects will be sold.  As a result, the Group II: Voluntary Debtors will assume only those executory contracts and unexpired leases to be assigned to the Winning Bidder with respect to the applicable Group II: Voluntary Project and the Restructuring Agreement and Settlement Agreement.

On the Effective Date, the executory contracts and unexpired leases identified on the Schedule of Assumed and Assigned Agreements attached or to be attached to the Disclosure Statement as Exhibit "9" or filed or to be filed as Exhibit "9" shall be deemed assumed and assigned to the applicable Winning Bidder, as specified in the Confirmation Order.  The SunCal Plan Proponents intend to file the Schedule of Assumed and Assigned Agreements with the Court no later than twenty-eight (28) days prior to the Confirmation Hearing.  The Schedule of Assumed and Assigned Agreements also identifies or will identify any amounts that must be paid to cure defaults under the executory contacts and unexpired leases to be assumed and assigned under the Plan (the "Cure Amount").  If filed earlier, the SunCal Plan Proponents reserve the right to amend the Schedule of Assumed Agreements up to twenty-eight (28) days prior to the Confirmation Hearing (October 24, 2011) to: (a) add any executory contract or unexpired lease and provide for its assumption and assignment; or (b) modify the Cure Amount for any particular executory

contract or unexpired lease.  The SunCal Plan Proponents further reserve the right to amend the

Schedule of Assumed Agreements to delete any executory contract or unexpired lease and provide

for its rejection at any time prior to the Confirmation Hearing.  The SunCal Plan Proponents will

provide notice of any amendment to the Schedule of Assumed and Assigned Agreements to any

party or parties to the executory contracts or unexpired leases affected by the amendment.  Absent

a timely objection as provided below, the Confirmation Order will constitute a Court Order

approving the assumption and assignment, on the Effective Date, of the executory contracts and

unexpired leases then identified on the Schedule of Assumed and Assigned Agreements, and shall

constitute a final determination of the Cure Amount and that the estate has shown adequate

assurance of future performance.  Furthermore, any Cure Amount ordered by the Court, through

entry of the Confirmation Order, and paid shall be deemed to satisfy any and all defaults arising

from, out of or related to the executory contract of unexpired lease, including any tort claims that

were or could be asserted by the non-debtor party to the contract or lease on or prior to the entry of

the Confirmation Order, and all actual or pecuniary losses that have resulted from such defaults.

        If you are a party to an executory contract or unexpired lease to be assumed and assigned

and you object to the assumption and assignment of your lease or contract and/or you dispute the

Cure Amount related to your lease or contract, then you must File and serve upon counsels for the

SunCal Plan Proponents (at the address on the upper left hand corner of the caption page) a written

objection by fourteen days before the Confirmation Hearing.  An objection to the Cure Amount

must also set forth the amount you contend to be the correct Cure Amount and contain evidence to

support such amount.  Failure to timely File an objection as provided herein shall be deemed

consent to the proposed assumption and assignment and to the Cure Amount and a waiver of any

and all rights to challenge such assumption and assignment and the Cure Amount.

        With respect to each executory contract and unexpired lease identified on the Schedule of

Assumed and Assigned Agreements, if no dispute arises regarding the Cure Amount, adequate

assurances, or some other matter related to the assumption of the executory contact or unexpired

lease, then the Cure Amount set forth in the schedule of Assumed and Assigned Agreements shall

be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably

1    practicable thereafter.  If a dispute arises regarding (a) whether the proposed assignee has provided

2    adequate assurance of future performance of an executory contract or unexpired lease to be

3    assumed, or (b) any other matter pertaining to a proposed assumption and assignment, the Cure

4    Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or

5    (2) within thirty (30) days after entry of a Final order resolving the dispute and approving the

6    assumption and assignment; provided, however, if a dispute arises regarding any of the foregoing,

7    the SunCal Plan Proponents reserve, for themselves and the Plan Trustee, the right to completely

8    forego assumption and assignment of and, instead, reject the subject executory contract or

9    unexpired lease.

10    　　　　If a party to an executory contract or unexpired lease identified on the Schedule of

11    Assumed and Assigned Agreements Files an objection disputing the Cure Amount, then the

12    SunCal Plan Proponents may amend the Schedule of Assumed and Assigned Agreements at any

13    time prior to the Confirmation Hearing to delete the subject executory contract or unexpired lease

14    and provide for its rejection.  Executory contracts or unexpired leases not so deleted shall be

15    conditionally assumed, subject to the SunCal Plan Proponents' and/or the Plan Trustee's right to

16    file a Motion to determine the appropriate Cure Amount up to the first (1st) Business Day that is at

17    least sixty (60) days following the Effective Date.  The SunCal Plan Proponents and/or the Plan

18    Trustee will serve any such Motion on the party to the executory contract or unexpired lease

19    affected by the Motion (or its attorneys, if any).  If the SunCal Plan Proponents and Plan Trustee

20    does not file a Motion to determine the appropriate Cure Amount, then the executory contract or

21    unexpired lease shall be assumed and assigned, as of the Effective Date, and the Cure Amount

22    shall be the alternative Cure Amount asserted by the non-debtor party to the subject executory

23    contract or unexpired lease in its objection to the Plan.  The Cure Amount shall be paid as soon as

24    reasonably practicable following the expiration of the 60-day deadline.

25    　　　　　　If the SunCal Plan Proponents or the Plan Trustee files a Motion to determine the

26    appropriate Cure Amount, then the SunCal Plan Proponents and/or Plan Trust shall have the right

27    to amend the Schedule of Assume and Assigned Agreements to completely forego assumption and

28    assignment of and, instead, reject the subject executory contract or unexpired lease up to the first

(1st) Business Day that is at least fifteen (15) days after the entry of an order fixing the Cure

Amount.  The SunCal Plan Proponents and/or Plan Trustee will provide notice of any amendment

to the Schedule of Assumed and Assigned Agreements to the party to the executory contract or

unexpired lease affected by the amendment.  If the SunCal Plan Proponents and/or Plan Trustee

has filed such a Motion and does not timely amend the Schedule of Assumed and Assigned

Agreements within fifteen (15) days after entry of an order fixing the Cure Amount, then the

executory contract or unexpired lease shall be assumed and assigned, as of the Effective Date, and

the Cure Amount shall be fixed as the Cure Amount ordered by the Court.  The Cure Amount as

soon as reasonably practicable following the expiration of the 15-day deadline.

**10.2    Executory Contracts to be Rejected.**

On the Effective Date, the estate will be deemed to have rejected any and all executory

contacts and unexpired leases not identified on the Schedule of Assumed and Assigned

Agreements attached or to be attached to the Disclosure Statement as Exhibit "9," or filed or to be

filed as Exhibit "9".  The Confirmation Order will constitute a Court order approving the rejection,

as of the Effective Date, of such executory contacts and unexpired leases.  Any Claim for damages

arising from the rejection under the Plan of any executory contract or unexpired lease must be filed

with the Court and served upon the SunCal Plan Proponents and the Plan Trustee within thirty (30)

days of the later of (a) the Confirmation Date, and (b) the Plan Trustee's amendment of the

Schedule of Assumed and Assigned Agreements to eliminate the executory contract or unexpired

lease.  Any such damage Claims that are not timely filed and served will be forever barred and

unenforceable against the applicable Debtors, the Estates, the Plan Trustee, the Plan Trust, and

their respective property.  Persons holding these Claims who fail to timely file claims will be

barred from receiving any Distributions under the Plan on account of their rejection damage

Claims.

If you are a party to a lease or contract to be rejected and you object to the rejection

of your lease or contract, then you must file and serve your objection by fourteen days before the

Confirmation Hearing.

-49-

**XI.**

**LIMITATION OF LIABILITY**

**11.1**   **No Liability for Solicitation or Participation.**

As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**XII.**

**CONDITIONS TO CONFIRMATION AND**

**EFFECTIVENESS OF THE PLAN**

**12.1**   **Conditions Precedent to Plan Confirmation.**

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan Proponents.

**12.1**   **Conditions Precedent to Plan Effectiveness.**

The conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents.

**XIII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.  The Court will retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising from the administration of the Plan, upon request of a party-in-interest and after notice and a hearing, including, without limitation:

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

1        a.      The adjudication of the validity, scope, classification, allowance, and disallowance

2 of any Claim;

3        b.      The estimation of any Claim;

4        c.      The allowance or disallowance of Professional-Fee Claims, compensation, or other

5 Administrative Expense Claims;

6        d.      To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§

7 346, 505, 525, and 1146;

8        e.      To hear and determine any action or proceeding brought under Bankruptcy Code

9 §§108, 510, 543, 544, 545, 547, 548, 549, 550, 551 and 553;

10        f.      To hear and determine all actions and proceedings which relate to pre-confirmation

11 matters;

12        g.      To hear and determine any issue relating to the assumption or rejection of executory

13 contracts and unexpired leases;

14        h.      To hear and determine any modification to the Plan in accordance with the

15 Bankruptcy Rules and Bankruptcy Code;

16        i.      To enforce and interpret the terms of the Plan;

17        j.      To correct any defects, cure any omissions, or reconcile any inconsistency in the

18 Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

19        k.      the entry of any order, including injunctions, necessary to enforce title, rights and

20 powers of the Plan Trust, and to impose such limitations, restrictions, terms and conditions on such

21 title, rights and powers as the Court may deem necessary including, without limitation, any right of

22 the Plan Trust to recover and liquidate assets;

23        l.      To determine the validity, extent and priority of all liens and security interests

24 against property of the Estates or the Plan trust;

25        m.      To hear and resolve any disputes regarding employment applications and

26 professional fees;

27

28

n.    To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in these Cases;

o.    The entry of an order concluding and terminating these Cases; and

p.    To resolve any disputes as to whether there has been a default under the Plan.

**XIV.**

**<u>MODIFICATION OR WITHDRAWAL OF THE PLAN</u>**

**14.1    <u>Modification of Plan</u>.**

At any time prior to the confirmation of the respective Group II: Voluntary Debtor's Plan, the SunCal Plan Proponents may supplement, amend or modify the respective Group II: Voluntary Debtor's Plan.  After confirmation of the respective Group II: Voluntary Debtor's Plan, SunCal Plan Proponents or respective Group II: Voluntary Debtor's Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the respective Group II: Voluntary Debtor's Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the respective Group II: Voluntary Debtor's Plan or to reconcile inconsistencies in the respective Group II: Voluntary Debtor's Plan.

**14.2    <u>Nonconsensual Confirmation</u>.**

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

**XV.**

**<u>EFFECT OF CONFIRMATION</u>**

**15.1    <u>Discharge</u>.**

Confirmation of the Plan does not discharge the Group II: Voluntary Debtors as set forth in Bankruptcy Code §1141.

**15.2     Revesting of the Assets.**

The Assets shall not be vested in the Group II: Voluntary Debtors on or following the

Effective Date, but shall be vested in the Plan Trust and continue to be subject to the jurisdiction of

the Court following confirmation of the Plan until such Assets are distributed to the Holders of

Allowed Claims in accordance with the provisions of the Plan.

**15.3     Exculpation and Releases**

Effective upon the entry of the Confirmation Order, neither the Group II: Voluntary

Debtors, the Voluntary Debtors' Committee, Plan Sponsor, the SunCal Plan Proponents, the

Professionals, nor any of their respective members, officers, directors, shareholders, employees, or

agents, shall have or incur any liability to any Person, including any creditors or Interest Holder of

the Debtors, for any act taken or omission made in connection with or related to the negotiation,

formulation, or preparation of the Plan and the Disclosure Statement, the approval of the

Disclosure Statement, the confirmation of the Plan, the consummation of the Plan, or the

administration of the Plan, the Cases, or the property to be distributed under the Plan, to the fullest

extent permitted by applicable statues and case law, except that the Plan Trust will be liable for the

performance of obligations assumed by it or imposed upon it under or by the Plan.

## XVI.

## MISCELLANEOUS

**16.1     Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to

Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the

Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the

Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent

required by Section 1930(a)(6) of title 28 of the United States Code.

**16.2    Changes in Rates Subject to Regulatory Commission Approval.**

The Group II: Voluntary Debtors are not subject to governmental regulatory commission approval of their rates.

**16.3    Payment Dates.**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**16.4    Headings.**

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

**16.5    Other Documents and Actions.**

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**16.6    Notices.**

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

**To the SunCal Plan Proponents**:
Bruce V. Cook
General Counsel
Authorized Agent of the SunCal Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Ronald Rus
Rus Miliband & Smith P.C.
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

1    All notices and requests to any Person holding of record any Claim or Interest shall be sent

2    to them at their last known address or to the last known address of their attorney of record.  Any

3    such Person may designate in writing any other address for purposes of this Section 21.5, which

4    designation will be effective on receipt.

5        **16.7    Governing Law.**

6    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy

7    Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

8    law rules) shall govern the construction and implementation of the Plan and any agreements,

9    documents, and instruments executed in connection with the Plan, unless otherwise specifically

10    provided in such agreements, documents, or instruments.

11        **16.8    Binding Effect.**

12    The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

13    the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests,

14    and their respective successors and assigns.

15        **16.9    Successors and Assigns.**

16    The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

17    binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

18    assigns of such entity.

19        **16.10    Severability of Plan Provisions.**

20    If, prior to the Confirmation Date, any term or provision of the Plan is held by the

21    Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

22    constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

23    consent of the Debtors, have the power to interpret, modify or delete such term or provision (or

24    portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

25    with the original purpose of the term or provision held to be invalid, void or unenforceable, and

26    such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding

27    any such interpretation, modification or deletion, the remainder of the terms and provisions of the

28

1  Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or

2  deletion.

3  **16.11  No Waiver.**

4  The failure of the respective Group II: Voluntary Debtor or any other Person to object to

5  any Claim for purposes of voting shall not be deemed a waiver of the Voluntary Debtors'

6  Committee's, the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole

7  or in part.

8  **16.12  Inconsistencies.**

9  In the event the terms or provisions of the Disclosure Statement are inconsistent with the

10  terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

11  the Plan shall control.

12  **16.13  Exemption from Certain Transfer Taxes and Recording Fees.**

13  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to the

14  Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the

15  transfer of title to or ownership of any of the Debtors' real or personal property or of any other

16  interest in such property (including, without limitation, a security interest) will not be subject to

17  any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,

18  stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

19  recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

20  direct the appropriate state or local governmental officials or agents to forego the collection of any

21  such tax or governmental assessment and to accept for filing and recordation any of the foregoing

22  instruments or other documents without the payment of any such tax or governmental assessment.

23  **16.14  Post-Confirmation Status Report.**

24  Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

25  status report with the Court explaining what progress has been made toward consummation of the

26  confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

27  unsecured creditors, and those parties who have requested special notice.  Unless otherwise

28  ordered, further status reports shall be filed every 180 days and served on the same entities.

1  **16.15  Post-Confirmation Conversion/Dismissal.**

2  A creditor or party in interest may bring a motion to convert or dismiss the case under

3  § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

4  Trustee reserves the right to object to any motion for conversion or dismissal.  In addition, as set

5  forth in the definition of the Effective Date, the Effective Date may be further extended by order of

6  the Bankruptcy Court after notice and hearing to all parties in interest.  If the Court determines

7  there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss

8  or convert the case.

9  If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then

10  all property that had been property of the Chapter 11 Estate, and that has not been disbursed

11  pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be re-imposed

12  upon the revested property, but only to the extent that relief from stay was not previously

13  authorized by the Court during this case.

14  **16.16  Final Decree.**

15  Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

16  Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

17  motion with the Court to obtain a final decree to close the Case of such Debtor.

18  Date:  August 5, 2011                    By: /s/ Bruce Cook_____

19                                                     Bruce Cook
                                                       General Counsel, Authorized Agent for the
20                                                     Voluntary Debtors and Acquisitions

21  **WINTHROP COUCHOT**                **RUS MILIBAND & SMITH**
    **PROFESSIONAL CORPORATION**        **A PROFESSIONAL CORPORATION**
22

23                                                     By: ___/s/ Ronald Rus_____
    By:____/s/ Paul J. Couchot_____          Ronald Rus, Esq.
24       Paul J. Couchot, Esq.                          Joel S. Miliband, Esq.
         Sean OKeefe, Esq.                         Counsel for SCC Acquisitions, Inc.
25  General Insolvency Counsel for
    Administratively Consolidated Voluntary
26  Debtors

27

28

-57-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING THIRD AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL BEAUMONT HEIGHTS, LLC AND SUNCAL JOHANNSON RANCH, LLC , [GROUP II: VOLUNTARY DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

- **NEF SERVICE LIST**
  Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com,
  pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

MAINDOCS-#165265-v2-SunCal_3rd_Am_Group_II_VD_Plan.DOC

- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net