1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")

5  RONALD RUS - State Bar No. 67369
   JOEL S. MILIBAND - State Bar No. 77438
6  RUS MILIBAND & SMITH
   A PROFESSIONAL CORPORATION
7  2211 Michelson Drive, Seventh Floor
   Irvine, California 92612
8  Telephone: (949) 752-7100
   Facsimile:  (949) 252-1514
9  Counsel for SCC Acquisitions Inc.

10          UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
                  SANTA ANA DIVISION

11  In re                              | Case No. 8:08-bk-17206-ES
12  PALMDALE HILLS PROPERTY, AND ITS   | Jointly Administered With Case Nos.
    RELATED DEBTORS,                   | 8:08-bk-17209-ES; 8:08-bk-17240-ES;
13  Joint Administered Debtors and Debtors-in- | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
    Possession                         | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
14                                     | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                       | 8:08-bk-17230-ES; 8:08-bk-17231-ES;
15  Affects:                           | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
16  ☐    All Debtors                   | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
    ☐    Palmdale Hills Property, LLC  | 8:08-bk-17574 ES; 8:08-bk-17575-ES;
17  ☐    SCC/Palmdale, LLC             | 8:08-bk-17404-ES; 8:08-bk-17407-ES;
    ☐    unCal Johannson Ranch, LLC    | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
18  ☐    SunCal Summit Valley, LLC     | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
    ☐    SunCal Emerald Meadows LLC    | 8:08-bk-17470-ES; 8:08-bk-17472-ES;
19  ☐    SunCal Bickford Ranch, LLC    | and 8:08-bk-17588-ES
20  ☐    Acton Estates, LLC            | Chapter 11 Proceedings
    ☐    Seven Brothers LLC            |
21  ☐    SJD Partners, Ltd.            | **THIRD AMENDED CHAPTER 11 PLANS
    ☐    SJD Development Corp.          | FILED BY SUNCAL PLAN
22  ☐    Kirby Estates, LLC            | PROPONENTS IN THE CHAPTER 11
23  ☐    SunCal Communities I, LLC     | CASES OF SUNCAL OAK VALLEY,
    ☐    SunCal Communities III, LLC   | LLC, SUNCAL HEARTLAND, LLC,
24  ☐    SCC Communities LLC           | DELTA COVES VENTURE LLC,
    ☐    North Orange Del Rio Land, LLC | SUNCAL MARBLEHEAD, LLC AND
25  ☐    Tesoro SF LLC                 | SUNCAL PSV, LLC [GROUP I: TRUSTEE
26                                     | DEBTORS]**

27

28

*Continued from Previous Page*

☒ LBL-SunCal Oak Valley, LLC

☒ SunCal Heartland, LLC

☐ LBL-SunCal Northlake, LLC

☒ SunCal Marblehead, LLC

☐ SunCal Century City, LLC

☒ SunCal PSV, LLC

☒ Delta Coves Venture, LLC

☐ SunCal Torrance, LLC

☐ SunCal Oak Knoll, LLC

**Confirmation Hearing**

Date:      October 24, 2011
Time:      9:30 a.m.
Place:   Courtroom 5A

# **TABLE OF CONTENTS**

|  |  | **PAGE** |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 3 |
| | 2.1　Definitions | 3 |
| | 2.2　Rules of Construction | 26 |
| | 2.3　Exhibits | 27 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | 27 |
| | 3.1　Introduction | 27 |
| | 3.2　Treatment of Allowed Administrative Claims | 27 |
| | 3.3　Treatment and Repayment of the Lehman's Administrative Loan(s) | 28 |
| | 3.4　Repayment of Allowed Administrative Claims Other than the Lehman Administrative Loans | 28 |
| | 3.5　Administrative Claims Bar Date | 28 |
| | 3.6　Treatment of Unsecured Tax Claims | 29 |
| | 3.7　Summary of the Group I: Trustee Debtors Plan's Treatment of Bond Indemnity Claims | 30 |
| IV. | CLASSIFICATION OF CLAIMS AND INTERESTS | 30 |
| V. | THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | 37 |
| | 5.1　The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against the Group I: Trustee Projects (Classes 1.1 and 1.5) | 37 |
| | 5.2　The Plan's Treatment of Lehman's Disputed Claims(s) and Disputed Lien(s) Against the Group I: Trustee Debtors (Classes 2.1 and 2.5) | 37 |
| | 5.3　The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Group I: Trustee Projects (Classes 3.1 Through 3.3) | 39 |
| | 5.4　The Plan's Treatment of Holders of Contingent Bond Indemnification Claims Against the Group I: Trustee Projects (Class 4.1 through 4.5) | 40 |
| | 5.5　The Plan's Treatment of Holders of Priority Claims Group I: Trustee Debtors (Class 5.1 through 5.5) | 41 |
| | 5.6　The Plan's Treatment of Holders of General Unsecured Claims that are Reliance Claims Group I: Trustee Debtors (Classes 6.1 and 6.5) | 42 |
| | 5.7　The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims Group I: Trustee Debtors (Classes 7.1 and 7.5) | 42 |
| | 5.8　The Plan's Treatment of Holders of Allowed Interests Group I: Trustee Debtors. | 43 |

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

# TABLE OF CONTENTS

### (Continued)

|  |  | PAGE |
|---|---|---|
| **VI.** | **ACCEPTANCE OR REJECTION OF THE PLAN** | 43 |
| | 6.1 Introduction | 43 |
| | 6.2 Who May Object to Confirmation of the Plan | 43 |
| | 6.3 Who May Vote to Accept/Reject the Plan | 44 |
| | 6.4 What Is an Allowed Claim/Interest | 44 |
| | 6.5 What Is an Impaired Class | 44 |
| | 6.6 Who Is Not Entitled to Vote | 44 |
| | 6.7 Who Can Vote in More than One Class | 45 |
| | 6.8 Votes Necessary for a Class to Accept the Plan | 45 |
| | 6.9 Treatment of Nonaccepting Classes | 45 |
| | 6.10 Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 45 |
| **VII.** | **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN** | 46 |
| | 7.1 Introduction | 46 |
| | 7.2 Sale Process of the Group I: Trustee Projects and the Group I: Trustee Other Assets During the Sales Period | 46 |
| | 7.3 Establishment and Operations of the Plan Trust | 49 |
| | 7.4 Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust | 49 |
| | 7.5 Removal of Chapter 11 Trustee | 50 |
| | 7.6 Payment of Trust Expenses | 50 |
| | 7.7 The Plan Trust Distribution System | 50 |
| | 7.8 The Plan Trustee | 50 |
| | 7.9 The Plan Trust Beneficiaries | 54 |
| | 7.10 No Payment of Transfer-Related Fees to the United States Trustee | 55 |
| | 7.11 No Payment of Transfer-Related Fees to the Plan Trustee | 55 |
| | 7.12 Books and Records of Trust | 55 |
| | 7.13 Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 56 |
| | 7.14 Termination of the Trust | 56 |
| | 7.15 Exemption from Certain Transfer Taxes | 57 |
| | 7.16 Tax Consequences of the Plan | 57 |
| | 7.17 The Trustee Debtors' Committee | 57 |
| | 7.18 Duties and Powers | 58 |
| | 7.19 Dissolution of Trustee Debtors' committee | 58 |
| | 7.20 Claims Estimation Rights | 58 |
| **VIII.** | **DISTRIBUTIONS** | 59 |
| | 8.1 Distribution Agent | 59 |
| | 8.2 Distributions | 59 |
| | 8.3 Limitation on Liability | 59 |
| | 8.4 Old Instruments and Securities | 59 |

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

# TABLE OF CONTENTS

### (Continued)

| | | PAGE |
|---|---|---|
| IX. | OBJECTION TO CLAIMS AND DISPUTED CLAIMS | 61 |
| | 9.1 Standing for Objections to Claims | 61 |
| | 9.2 Treatment of Disputed Claims and Disputed Liens | 61 |
| X. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 63 |
| | 10.1 Executory Contracts to be Assumed and Assigned | 63 |
| | 10.2 Executory Contracts to be Rejected | 66 |
| XI. | LIMITATION OF LIABILITY | 66 |
| | 11.1 No Liability for Solicitation or Participation | 66 |
| XII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 67 |
| | 12.1 Conditions Precedent to Plan Confirmation | 67 |
| | 12.2 Conditions Precedent to Plan Effectiveness | 67 |
| XIII. | RETENTION OF JURISDICTION | 67 |
| XIV. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 69 |
| | 14.1 Modification of Plan | 69 |
| | 14.2 Nonconsensual Confirmation | 69 |
| XV. | EFFECT OF CONFIRMATION | 69 |
| | 15.1 Discharge | 69 |
| | 15.2 Revesting of the Assets | 69 |
| XVI. | MISCELLANEOUS | 70 |
| | 16.1 Payment of Statutory Fees | 70 |
| | 16.2 Changes in Rates Subject to Regulatory Commission Approval | 70 |
| | 16.3 Payment Dates | 70 |
| | 16.4 Headings | 70 |
| | 16.5 Other Documents and Actions | 70 |
| | 16.6 Notices | 70 |
| | 16.7 Governing Law | 71 |
| | 16.8 Binding Effect | 71 |
| | 16.9 Successors and Assigns | 71 |
| | 16.10 Severability of Plan Provisions | 72 |
| | 16.11 No Waiver | 72 |
| | 16.12 Inconsistencies | 72 |
| | 16.13 Exemption from Certain Transfer Taxes and Recording Fees | 72 |
| | 16.14 Post-Confirmation Status Report | 73 |
| | 16.15 Post-Confirmation Conversion/Dismissal | 73 |
| | 16.16 Final Decree | 73 |

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

# I.

## __INTRODUCTION__

These Plans[1] are proposed respectively by, and the accompanying Disclosure Statement is filed jointly by, Acquisitions and the Voluntary Debtors, as the SunCal Plan Proponents, in the Chapter 11 Cases of SunCal Oak Valley, LLC, SunCal Heartland, LLC, Delta Coves Venture, LLC, SunCal PSV, LLC and SunCal Marblehead, LLC (the "Group I: Trustee Debtors"). In addition to being one of the SunCal Plan Proponents, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group I: Trustee Debtor Plan that is confirmed.

In summary, the Plan(s) individually provide for sale of the Oak Valley Project, the Heartland Project, the Delta Coves Project, Palms Springs Village Project and the Marblehead Project (the "Group I: Trustee Projects"), free and clear of liens, claims and any purported credit bid rights of the Group I: Trustee Debtors' primary secured creditor, Lehman ALI, and for the liquidation of all other assets of the Group I: Trustee Debtors. The Net Sale Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group I: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim.  The purchase offer is conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on the applicable Plan's Effective Date as defined herein.  However, this purchase offer is not contingent upon the sale of the Group I: Trustee Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.**

**EXCEPT AS PROVIDED IN THE PURCHASE OFFER TO HOLDERS OF RELIANCE CLAIMS REFERENCED ABOVE, AS EXPLAINED IN THE DEFINITION**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached to the Disclosure Statement.

1  **OF THE TERM "EFFECTIVE DATE," WHICH IS THE DATE ON WHICH THE PLAN**

2  **BECOMES EFFECTIVE, NO ACTION PROVIDED FOR IN THE PLAN SHALL BE**

3  **TAKEN AGAINST EITHER LEHMAN COMMERCIAL PAPER, INC. ("LCPI") OR**

4  **LEHMAN BROTHERS HOLDINGS, INC. ("LBHI") THAT WOULD HAVE THE**

5  **EFFECT OF VIOLATING ANY APPLICABLE AUTOMATIC STAY THAT MAY EXIST**

6  **IN THEIR CHAPTER 11 CASES. ANY SUCH ACTION WILL ONLY PROCEED AFTER**

7  **ANY APPLICABLE STAY IS EITHER LIFTED OR DEEMED INAPPLICABLE.**

8  Although substantially identical Plans are being filed in the Cases of all five Group I:

9  Trustee Debtors, confirmation of each such Plan is not dependant on confirmation of any other

10  Plan.  In other words, the Creditors in each Case will determine, subject to Court approval, whether

11  the applicable Plan will be approved in their Case. Accordingly, a Plan may be confirmed in the

12  Cases of one or more of the Group I: Trustee Debtors, but Plan confirmation may be denied in

13  other Group I: Trustee Debtors' Cases.

14  These Plans are accompanied by the Disclosure Statement.  The Disclosure Statement has

15  been approved by the Court.  It is being provided along with the Plans in order to provide you with

16  critical information about the Group I: Trustee Debtors and to help you understand the Plans.

17  **II.**

18  **DEFINITIONS AND RULES OF INTERPRETATION**

19  **2.1**    **Definitions.**

20  The following defined terms are used in the Plans.  Any capitalized term that is not defined

21  herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning

22  ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

23  2.1.1    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect

24  parent company of all of the Debtors, a purported Bond Indemnitor, a Creditor of all of the

25  Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

26  2.1.2    Administrative Claim(s).  Any Claim against a Group I: Trustee Debtor or

27  its Estate  incurred after the applicable Petition Date for the applicable Group I: Trustee Debtor but

28  before the Effective Date, for any cost or expense of administration of the Case of the applicable

Group I: Trustee Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group I: Trustee Debtor under section 1930 of Title 28 of the United States Code.

2.1.3    Administrative Claims Bar Date.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty first (21st) day after the Effective Date.

2.1.4    Affiliate.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.5    Allowed.  When used to describe Claim(s) or Interest(s), such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.6    Allowed Amount shall mean:

A.    With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Group I: Trustee Debtors and is not otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Group I: Trustee Debtors and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

-4-

Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any such Administrative Claim;

B.      with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Group I: Trustee Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Group I: Trustee Debtors' Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of the plan shall be zero, and no distribution shall be made on account of any such Claim; and

C.      with respect to any Interest, (i) the amount provided by or established in the records of the Group I: Trustee Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Group I: Trustee Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1    2.1.7    Allowed Claim. Except as otherwise provided in the Plan(s) (including

2 with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan),

3 a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

4    2.1.8    Allowed Interest. Any Interest to the extent, and only to the extent, of the

5 Allowed Amount of such Interest.

6    2.1.9    Allowed Secured Claims. All or a portion of a Secured Claim that is an

7 Allowed Claim.

8    2.1.10    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

9 an Allowed Claim.

10    2.1.11    Arch. Arch Insurance Company, a Bond Issuer.

11    2.1.12    Available Cash. Each Group I: Trustee Debtors' Cash deposited into the

12 applicable Distribution Account(s) on or after the Effective Date that is available for making

13 Distributions under the Plan to Holders of Allowed Administrative, Priority, and General

14 Unsecured Claims. The Available Cash shall consist of the respective Group I: Trustee Debtors'

15 cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net

16 Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become

17 Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien

18 purportedly encumbering such Cash, or proceeds from the LitCo Plan Loan. All Available Cash

19 shall be deposited into the applicable Distribution Account(s). Available Cash shall not include

20 Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are

21 Allowed but subject to an equitable subordination judgment.

22    2.1.13    Avoidance Actions. All Claims and defenses to Claims accruing to the

23 Group I: Trustee Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541,

24 544, 545, 547, 548, 549, 550, or 551.

25    2.1.14    Bankruptcy Code. The United States Bankruptcy Code.

26    2.1.15    Bankruptcy Court. The United States Bankruptcy Court for the Central

27 District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

28 reference made pursuant to Section 157 of title 28 of the United States Code, the United States

District Court for the Central District of California; or, in the event such courts cease to exercise

jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

lieu thereof.

2.1.16    <u>Bankruptcy Rules</u>.  Collectively, as now in effect or hereafter amended

and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.17    <u>Beneficial Interests</u>. means, collectively, the interests of the holders of

Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust

on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books

and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be

transferred, sold, assigned or transferred by will, intestate succession or operation of law without

written notification to the Plan Trustee confirming and acknowledging the transfer by both the

holder and the transferee.

2.1.18    <u>Bond Claim(s)</u>.  Any Claim against the Debtor(s) and a Bond Issuer under

various payment or performance bonds.

2.1.19    <u>Bond Claimant</u>.  Holder(s) of a Bond Claim.

2.1.20    <u>Bond Indemnification Claim</u>.  All Claims by Bond Issuers for

indemnification against a Bond Indemnitor for the Bond Issuer's actual payment or purchase of a

Bond Claim with respect to the Group I: Trustee Debtors' Projects.

2.1.21    <u>Bond Indemnitors</u>.  The individuals and entities that are allegedly liable on

the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

Affiliates of Acquisitions, and Elieff.

2.1.22    <u>Bond Issuer(s)</u>.  Bond Safeguard, Lexon and Arch in their capacities as

issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

2.1.23    <u>Bond Safeguard</u>.  Bond Safeguard Insurance Company, a Bond Issuer.

2.1.24    <u>Business Day</u>.  Any day, other than a Saturday, a Sunday or a "legal

holiday," as defined in Bankruptcy Rule 9006(a).

1           2.1.25    <u>Cases</u>.  The Chapter 11 cases of the Group I: Trustee Debtors pending

2 before the Bankruptcy Court.

3           2.1.26    <u>Cash</u>.  Currency of the United States of America and cash equivalents,

4 including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

5 transfers and other similar forms of payment.

6           2.1.27    <u>CFD Bonds</u>.  Community facilities district bonds issued by a

7 governmental entity.

8           2.1.28    <u>Chapter 11 Trustee</u>.  Steven M. Speier, the duly appointed trustee of the

9 Trustee Debtors in their pending Chapter 11 Cases.

10           2.1.29    <u>Claim</u>.  This term shall have the broadest possible meaning under

11 Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

12 Group I: Trustee Debtors, whether or not such right is reduced to judgment, liquidated,

13 unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

14 secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

15 breach gives rise to a right of payment from any of the Group I: Trustee Debtors, whether or not

16 such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

17 disputed, undisputed, secured, or unsecured.

18           2.1.30    <u>Claims Bar Date</u>.  For any Claim other than the exceptions noted below,

19 March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

20 file Proof of Claims with the Bankruptcy Court in all of the Group I: Trustee Debtors' Cases,

21 except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date

22 shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to

23 11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry

24 of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of

25 "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are

26 timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by

27 March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the

28

avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

2.1.31    <u>Claims Objection Deadline</u>.  The later of (i) the first business day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Trustee and the Holder of the Claim.

2.1.32    <u>Claim Objection Reduction Amount</u>. The amount of Net Sales Proceeds that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the secured claims filed by the Lehman Lenders.

2.1.33    <u>Class</u>.  Each group of Claims or Interests classified in Article V of the Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.34    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

2.1.35    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.36    <u>Contingent Bond Indemnification Claims</u>.  Bond Indemnification Claims in which the Bond Issuer has not yet paid or purchased the underlying Bond Claim.

2.1.37    <u>Contract Action</u>. The action filed by certain Voluntary Debtors against Lehman ALI, Inc., and certain other defendants, in California Superior Court for the County of Orange (Case No. 30-2011-0040847-CU-BC-CJC), that was removed to the bankruptcy court as Adv.  No. 8:11-ap-01212-ES, with a reservation of rights to add the Plan Trustee and/or the Trustee Debtors (and their successors) as additional plaintiffs therein.

2.1.38    <u>Creditor</u>.  Any Person who is the Holder of a Claim against any Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.39    Debtor(s).  Individually or collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

2.1.40    Debtor(s)-in-Possession.  The Voluntary Debtor(s) in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.41    Delta Coves.  Delta Coves Ventures, LLC, a limited liability company, a Trustee Debtor, and the owner of the Delta Coves Project.

2.1.42    Delta Coves Project.  The Project owned by Delta Coves, located in the Contra Costa County, California, as more particularly described herein.

2.1.43    Delta Coves Project Break-up Fee. The sum equal to two and one-half (2-1/2%) percent of the Minimum Sale Prince of the Delta Coves Project plus actual amounts paid by LitCo on Allowed Administrative Claims for the Delta Coves Case if LitCo is the Stalking Horse Bidder and is not the Winning Bidder.

2.1.44    Delta Coves Loan Agreement.  A certain Amended and Restated Loan Agreement, dated as of April 20, 2007, by and between Delta Coves, as borrower, and Lehman ALI as lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $236 million.  The Delta Coves Loan Agreement is allegedly secured by a first-priority deed of trust on the Delta Coves Project.  The Delta Coves Loan Agreement has an asserted balance due of $206,023,142.48 as of March 30, 2009.

2.1.45    Disclosure Statement.  The document accompanying the Plan that is entitled "Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Valley, LLC, SunCal Heartland, LLC, Delta Coves Venture, LLC, SunCal Marblehead, LLC and SunCal PSV, LLC," as amended and with all accompanying exhibits.

2.1.46    Disputed Claim(s).  All or any part of a Claim against a Group I: Trustee Debtor as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) a unresolved Litigation Claim; (b) the Claim is subject to offset by a

Litigation Claim; (c) a timely objection to such Claim that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the applicable Plan(s) which is Filed on or before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

        2.1.47    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor(s) that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

        2.1.48    Disputed Secured Claim(s). That part of a Disputed Claim that is a Secured Claim.

        2.1.49    Distribution(s).  Payments to Holders of Allowed Claims provided for under the Plan.

        2.1.50    Distribution Agent.  The entity that is responsible for making Distributions under the Plan, which shall be Acquisitions.

        2.1.51    Distribution Account(s).  Separate account(s) to be established by the Plan Trustee at an FDIC insured bank into which each Group I: Trustee Debtors' Available Cash shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to such Group I: Trustee Debtor shall be deposited, other than Net Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

        2.1.52    Distribution Date.  With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan.

        2.1.53    Effective Date. A date selected by the applicable SunCal Plan Proponent(s) that is not later than the ninetieth (90th) calendar day after the Confirmation Date, and provided there is no stay pending appeal of the Confirmation Order, in which case the Effective

1    Date shall be tolled until the dissolution of such stay.  However, in any case where the actions

2    provided for in the Plan would be delayed by the automatic stay applicable in the case of any

3    Lehman Entity operating under the protection of Chapter 11 or Chapter 7, the SunCal Plan

4    Proponents shall have the right to extend the Effective Date for an additional sixty (60) days to

5    obtain relief from any such stay.  The Effective Date may be further extended (beyond the above

6    referenced initial sixty (60) day extension) by an order of the Bankruptcy Court after notice and

7    hearing to all parties in interest.

8        2.1.54    Elieff.  Bruce Elieff, the president of Acquisitions, a purported Bond

9    Indemnitor with alleged corresponding indemnity Claims against the Debtors.

10        2.1.55    Estates.  The bankruptcy estates of the Group I: Trustee Debtors created

11    pursuant to Section 541 of the Bankruptcy Code.

12        2.1.56    Fee Applications.  Applications of Professional Persons under Sections

13    330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

14    expenses in the Cases.

15        2.1.57    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code

16    for allowance of compensation and reimbursement of expenses in the Cases.

17        2.1.58    Fenway Capital.  Fenway Capital Funding LLC, a Lehman Successor to

18    Lehman's Disputed Claims and Lehman's Disputed Liens arising from (i) SunCal Communities I

19    Loan Agreement, (ii) Ritter Ranch Loan Agreement, (iii) Bickford Second Loan Agreement,

20    (iv) SunCal PSV Loan Agreement, (v) SunCal Marblehead/SunCal Heartland Loan Agreement,

21    (vi) Delta Coves Loan Agreement (vii) SunCal Northlake Loan Agreement, and (viii) SunCal Oak

22    Valley Loan Agreement.  Such Disputed Claims and Disputed Liens were transferred back to LCPI

23    pursuant to a compromise approved by the New York Bankruptcy Court on May 12, 2010.

24        2.1.59    Filed.  Delivered to, received by and entered upon the legal docket by the

25    Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

26        2.1.60    Final Order.  A judgment, order, ruling or other decree issued and entered

27    by the Bankruptcy Court, that has not been reversed, stayed, modified or amended.

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1      2.1.61      General Unsecured Claim.  A Claim against a Group I: Trustee Debtor that

2  is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

3      2.1.62      Group I: Trustee Debtors. SunCal Oak Valley, LLC, SunCal Heartland,

4  LLC, Delta Coves Venture, LLC, SunCal PSV, LLC and SunCal Marblehead, LLC.

5      2.1.63      Group I: Trustee Debtors Assets.  All assets that are property of the Group

6  I: Trustee Debtor(s) pursuant to Bankruptcy Code Section 541, including the Group I: Trustee

7  Projects, the Litigation Claims and the Net Sales Proceeds.

8      2.1.64      Group I: Trustee Other Assets.  All assets of the Group I: Trustee Debtors

9  excluding the Group I: Trustee Projects, Litigation Claims and Net Sales Proceeds.

10      2.1.65      Group I: Trustee Projects.  The Oak Valley Project, the Heartland Project,

11  the Delta Coves Project, the Palm Springs Village Project and the Marblehead Project.

12      2.1.66      Heartland Project Break-up Fee. The sum equal to two and one-half  (2-

13  1/2%) percent of the Minimum Sale Prince of the Heartland Project plus actual amounts paid by

14  LitCo on Allowed Administrative Claims for the SunCal Heartland Case if LitCo is the Stalking

15  Horse Bidder and is not the Winning Bidder.

16      2.1.67      Heartland Project.  The Project owned by SunCal Heartland, located in the

17  Riverside County, California, as more particularly described herein.

18      2.1.68      Holder.  The beneficial owner of any Claim or Interest.

19      2.1.69      Initial Overbid. The Initial Overbid is the first Qualifying Bid after the

20  Opening Bid that is equal to or in excess of the Initial Overbid Amount.

21      2.1.70      Initial Overbid Amount. In the case of the Oak Valley Project, the Initial

22  Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Oak Valley Project

23  Break-up Fee and one hundred thousand dollars ($100,000). In the case of the Heartland Project,

24  the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Heartland

25  Project Break-up Fee and one hundred thousand dollars ($100,000).  In the case of the Delta Coves

26  Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the

27  Delta Coves Project Break-up Fee and one hundred thousand dollars ($100,000). In the case of the

28  Marblehead Project, the Initial Overbid Amount is a sum that is not less than the sum of the

1    Opening Bid, the Marblehead Break-up Fee and one hundred thousand dollars ($100,000). In the

2    case of the Palm Springs Village Project, the Initial Overbid Amount is a sum that is not less than

3    the sum of the Opening Bid, the PSV Break-up Fee and seventy-five thousand dollars ($75,000).

4               2.1.71    Insider.  The term shall have the broadest meaning possible under

5    Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

6    Insiders of such Affiliates, and including Affiliates of Acquisitions and the Lehman Entities.

7               2.1.72    Interest.  Any equity security interest in any Group I: Trustee Debtor

8    within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

9    equity ownership interest in any of the Group I: Trustee Debtors, whether in the form of common

10   or preferred stock, stock options, warrants, partnership interests, or membership interests.

11              2.1.73    LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

12   company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

13   in the Bankruptcy Court for the Southern District of New York.

14              2.1.74    LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

15   bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

16              2.1.75    Lehman Adversary Proceeding.  The Debtors' pending adversary

17   proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

18   action including equitable subordination, fraudulent conveyances and preferential transfers.

19              2.1.76    Lehman ALI.  Lehman ALI, Inc.

20              2.1.77    Lehman Disputed Administrative Loans.  The post-petition financing

21   provided by Lehman ALI to SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal

22   Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, which

23   grants priming liens on all borrower Trustee Debtors' assets, and for super-priority administrative

24   status to Lehman ALI.    The aggregate amount of the Lehman Disputed Administrative Loans to

25   all of the above reference Trustee Debtors was approximately $40 million as of March 1, 2011 and

26   continuing to increase.  The Lehman Disputed Administrative Loans are the subject of claim

27   objections, specifically the pending 502(d) Objection. Until these objections are resolved in the

28   applicable Case, these Lehman Disputed Administrative Loans shall not be Allowed Claims.

1           2.1.78     Lehman Claim Objections. The objections filed by the Debtors to the

2  claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

3  Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

4  Objection and the Lehman 502(d) Objection.

5           2.1.79     Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

6  LBHI.

7           2.1.80     Lehman Equity Members.  Lehman Entities that own direct or indirect

8  membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

9  Marblehead.

10          2.1.81     Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC

11  Holdings.

12          2.1.82     Lehman Disputed Loans.  Collectively the following loans that are the

13  purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan Agreement;

14  (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

15  (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

16  Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

17  Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

18  Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

19  (n) Pacific Point Second Loan Agreement, and (o) the Lehman Disputed Administrative Loan.

20          2.1.83     Lehman Representatives.  The individuals that controlled the Lehman

21  Entities.

22          2.1.84     Lehman Successor(s).  Entities other than the Lehman Lenders that either

23  assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

24  Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

25          2.1.85     Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by

26  a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from the

27  Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1     2.1.86    <u>Lehman's Disputed Lien(s)</u>.  All of the alleged liens relating to Proofs of

2  Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

3  Cases arising from the Lehman Disputed Loans.

4     2.1.87    <u>Lexon</u>.  Lexon Insurance Co.

5     2.1.88    <u>LitCo</u>  A Delaware limited liability company that will be formed for the

6  purpose of (i) purchasing the claims and Litigation Rights held by the Reliance Claimants that

7  choose to sell such Reliance Claims, (ii) funding the LitCo Plan Loan, and (iii) potentially being

8  selected as the Stalking Horse Bidder under the Group I: Trustee Debtors' Plans.

9     2.1.89    <u>LitCo Plan Loan</u>.  A loan that will be made by LitCo to the extent

10  necessary to pay Allowed Priority Claims, Allowed Administrative Claims and Post Confirmation

11  Expenses incurred by the Plan Trust, the Plan Trustee and its professionals and to the Trustee

12  Debtors Committee and its professionals if no other source is available from the applicable Group

13  I: Trustee Debtor's Assets.

14     2.1.90    <u>Litigation Claims</u>.   Any and all interests of the Group I: Trustee Debtors

15  in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights,

16  or causes of action which have been or may be commenced by the Group I: Trustee Debtor(s), the

17  Chapter 11 Trustee, or the Trustee Debtors' Committee, as the case may be, including, but not

18  limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Group I: Trustee Debtors'

19  Estates and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to

20  the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages,

21  recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman Adversary

22  Proceeding; (vi) the Contract Action, and (vii) any and all other Claims against Lehman's Disputed

23  Claims and/or Disputed Liens referenced in the Plan or the Disclosure Statement.

24     2.1.91    <u>Litigation Recoveries</u>.  Any Cash or other property received by the

25  Chapter 11 Trustee, the Group I: Trustee Debtors, the Trustee Debtors' Committee and/or the Plan

26  Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not

27  limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

28  whether recovered by way of settlement, execution on judgment or otherwise.

1          2.1.92    Litigation Rights. Any Claims held by a party against the Group I: Trustee

2  Debtors, and if applicable, against third parties arising or relating to the Claim against the

3  applicable Group I: Trustee Debtor, that have not been fixed in a final judgment prior to the

4  Effective Date.

5          2.1.93    Marblehead Break-up Fee. The sum equal to two and one-half  (2-1/2%)

6  percent of the Minimum Sale Prince of the Marblehead Project plus actual amounts paid by LitCo

7  on Allowed Administrative Claims for the SunCal Marblehead Case if LitCo is the Stalking Horse

8  Bidder and is not the Winning Bidder.

9          2.1.94    Marblehead Project.  The Project owned by SunCal Marblehead, located in

10  the City of San Clemente, California, as more particularly described herein.

11          2.1.95    Maximum Distributions.  A Distribution to a Holder of an Allowed

12  General Unsecured Claim against a Group I: Trustee Debtor equal to one hundred percent (100%)

13  of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate

14  from and as of the Group I: Trustee Debtor's Order for Relief.

15          2.1.96    MB Firm.  Miller Barondess, LLP.

16          2.1.97    Mechanic Lien Claims.  Mechanic Lien Claims arising pursuant to

17  California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

18  allegedly satisfy the requirements of Bankruptcy Code 546(b).

19          2.1.98    Minimum Increment.  The Minimum Increment is the additional sum that

20  must be bid for one of the Group I: Trustee Projects in excess of a prior Qualified Bid. The

21  Minimum Increment applicable to the sale of the Oak Valley Project and the Delta Coves Project is

22  the sum of seventy-five thousand dollars ($75,000), until there are only two Qualified Bidders

23  submitting bids for these Projects, then the Minimum Increment shall be fifty thousand dollars

24  ($50,000). The Minimum Increment applicable to the sale of the Heartland Project is the sum of

25  fifty thousand dollars ($50,000), until there are only two Qualified Bidders submitting bids for

26  these Projects, then the Minimum Increment shall be twenty thousand dollars ($20,000). Minimum

27  Increment applicable to the sale of the Marblehead Project and the Palm Springs Village Project is

28  one hundred thousand dollars ($100,000), until there are only two Qualified Bidders submitting

1  bids for a Group I: Trustee Project, then the Minimum Increment shall be fifty thousand dollars

2  ($50,000).

3         2.1.99   Minimum Sale Price. The minimum gross sale price that must be paid for

4  the Group I: Trustee Projects, respectively, before such projects can be sold pursuant to the Plan.

5  The Minimum Sale Price for the Marblehead Project is $84,420,000, for the Palm Spring Village

6  Project is $9,990,000, for the Oak Valley Project is $18,900,000, for the Heartland Project is

7  $6,750,000, and for the Delta Cove Project is $18,720,000.

8         2.1.100   Net Litigation Recoveries.  Litigation Recoveries less associated

9  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

10  Litigation Recoveries.

11         2.1.101   Net Sales Proceeds.  The Cash generated from the sale(s) or liquidation of

12  the Group I: Trustee Debtor(s)' Assets or the Plan Trust's Assets, less payment of selling expenses,

13  taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses and Administrative

14  Claims incurred in furtherance of such sales or liquidation of such Assets.

15         2.1.102   Net Sales Proceeds Account(s).  Separate account(s) that will be

16  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

17  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

18  and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

19  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

20  where there are two Disputed Liens on a single Project, in which case, there shall be a single

21  account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or

22  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

23  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

24  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

25  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

26  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

27  thereto shall become Available Cash and shall be transferred to the applicable Distribution

28  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1  allowed and deemed valid but subject to the equitable subordination causes of action in the

2  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

3  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

4       2.1.103   Oak Valley Project.  The Project owned by SunCal Oak Valley, located in

5  the Riverside County, California, as more particularly described herein.

6       2.1.104   Oak Valley Project Break-up Fee. The sum equal to two and one-half  (2-

7  1/2%) percent of the Minimum Sale Prince of the Oak Valley Project plus actual amounts paid by

8  LitCo on Allowed Administrative Claims for the Oak Valley Case if LitCo is the Stalking Horse

9  Bidder and is not the Winning Bidder.

10      2.1.105   Opening Bid.  Opening Bid means the offer for one, or both of the Group

11  I: Trustee Projects, which is equal to the Minimum Sale Price(s) accepted by the Debtor for either,

12  some or all of the Group I: Trustee Projects.

13      2.1.106   Orders for Relief Date.  The following are dates that orders for relief were

14  entered for each of the Trustee Debtors:

| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

21      2.1.107   Palmdale Hills.  Palmdale Hills Property, a Delaware limited liability

22  company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project

23      2.1.108   Palm Springs Village Project.  The Project owned by SunCal PSV, located

24  in the City of Palm Springs, California, as more particularly described herein.

25      2.1.109   PSV Break-up Fee. The sum equal to two and one-half (2-1/2%) percent

26  of the Minimum Sale Prince of the Palm Springs Village Project plus actual amounts paid by LitCo

27  on Allowed Administrative Claims for the Palm Springs Village Case if LitCo is the Stalking

28  Horse Bidder and is not the Winning Bidder.

1    2.1.110  <u>Person</u>.  An individual, partnership, corporation, limited liability company,

2    business trust, joint stock company, trust, unincorporated association, joint venture, governmental

3    authority, governmental unit, committee or other entity of whatever nature.

4    2.1.111  <u>Petition Dates</u>.  The following are dates that each of the Voluntary Debtors

5    filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions

6    against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

23    2.1.112  <u>Plan(s)</u>.  The "Third Amended Chapter 11 Plan Filed by SunCal Plan

24    Proponents In The Chapter 11 Cases Of SunCal Oak Valley, LLC, SunCal Heartland, LLC, Delta

25    Coves Venture, LLC, SunCal PSV, LLC, and SunCal Marblehead, LLC [Group I: Trustee

26    Debtors]"together with the Exhibits thereto, as the same may be amended or modified from time to

27    time in accordance with the Plan(s).

28

1      2.1.113 <u>Plan Period</u>. The period from the Effective Date to the Plan Termination

2 Date.

3      2.1.114 <u>Plan Termination Date</u>. The fifth (5th) anniversary date of the Effective

4 Date, unless the Plan Trustee elects an earlier date.

5      2.1.115 <u>Plan Sponsor</u>.  The entity that has committed to cause and/or arrange the

6 funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan

7 Sponsor is Acquisitions.

8      2.1.116 <u>Plan Trust</u>.  A liquidating trust to be established prior to or on the

9 Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against

10 the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors'

11 Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value

12 or would be difficult to administer) and to otherwise consummate the Plan.

13      2.1.117 <u>Plan Trustee</u>. The Plan Trustee under the Plan Trust Agreement is

14 Acquisitions.

15      2.1.118 <u>Plan Trust Beneficiaries</u>. The Plan Trust Beneficiaries are (i) the holders

16 of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be

17 satisfied from Plan Trust Assets in accordance with the terms of the Plan.

18      2.1.119 <u>Plan Trust Assets</u>. Plan Trust Assets means all property within the

19 Chapter 11 estates of the Group I: Trustee Debtors, other than property that is affirmatively

20 excluded by the Plan Trustee.

21      2.1.120 <u>Post-Confirmation Expenses</u>.  The fees and expenses incurred by the Plan

22 Trust, the Plan Trustee and the Trustee Debtors' Committee and their professionals following the

23 Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting

24 and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed Claims and Disputed

25 Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions

26 under the Plan; and (v) otherwise consummating the Plan and closing the Group I: Trustee

27 Debtors' Chapter 11 Cases.

28

1          2.1.121    Priority Claim.  Any Claim, other than an Administrative Claim or a Tax

2    Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

3          2.1.122    Pro Rata.  Proportionately, so that with respect to any distribution in

4    respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

5    such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

6    amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

7    such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

8          2.1.123    Professional.  A Person or Entity (a) employed by the Group I: Trustee

9    Debtors, the Trustee Debtors' Committee pursuant to a Final Order in accordance with Sections

10    327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the

11    Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b)

12    for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to

13    Section 503(b) of the Bankruptcy Code.

14          2.1.124    Professional Fees.  All Allowed Claims for compensation and for

15    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

16          2.1.125    Projects.  The Debtors' residential real estate development projects and

17    other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

18          2.1.126    Qualifying Bid.  Qualifying Bid means, with respect to any bid on a

19    Group I: Trustee Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the

20    Initial Overbid Amount, unless it is the Initial Overbid, or B) in excess of the immediately

21    preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

22          2.1.127    Qualifying Bidder.  Qualifying Bidder means a bidder who a) has

23    deposited the sum of five hundred thousand dollars ($500,000) in an escrow designated by the

24    SunCal Plan Proponents; b) who has provided the SunCal Plan Proponents evidence confirming

25    that such bidder has the financial means to acquire the applicable Group I: Trustee Project(s) that

26    such bidder is seeking to acquire, and c) agreed that this sum will be forfeited as liquidated

27    damages if such bidder is the Winning Bidder and fails to perform.

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1          2.1.128    <u>Reliance Claim</u>. An Allowed Unsecured Claim, Allowed Mechanic's

2    Lien Claim, or Allowed Bond Indemnification Claim against a Group I: Trustee Debtor that would

3    entitle the holder thereof to be the beneficiary of any equitable subordination judgment obtained

4    against a Lehman Entity by such Group I: Trustee Debtor.  All Allowed Mechanic's Lien Claims,

5    Allowed Bond Indemnification Claims and certain Allowed General Unsecured Claims are

6    Reliance Claims.  A list of the Reliance Claims for the Group I: Trustee Debtors is attached to the

7    Disclosure Statement as Exhibit "8."

8          2.1.129    <u>Reliance Claimant</u>. The holder of a Reliance Claim. A list of the Reliance

9    Claimants is attached to the Disclosure Statement as Exhibit "8."

10          2.1.130    <u>Sale Period</u>.  The Sale Period is the time period during which the SunCal

11    Plan Proponents must consummate a sale or liquidation of the Group I: Trustee Projects. The Sales

12    Period shall commence on or before the Confirmation Date and shall expire on thirty (30) days

13    after the Effective Date, unless extended by the Bankruptcy Court after notice and hearing.

14          2.1.131    <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a

15    subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

16          2.1.132    <u>Schedules</u>.  The schedules of assets and liabilities and list of equity

17    security holders Filed by the Group I: Trustee Debtors, as required by Section 521(1) of the

18    Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

19    as amended from time to time.

20          2.1.133    <u>Stalking Horse Bidder</u>.  The Qualified Bidder who submits the Opening

21    Bid that is accepted by the applicable Debtor.

22          2.1.134    <u>Secured Claim</u>.  Any Claim, including interest, fees, costs, and charges to

23    the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

24    unavoidable Lien on the Group I: Trustee Debtor(s)' Assets.

25          2.1.135    <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its

26    Affiliates.

27

28

1      2.1.136    <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited

2  liability company, and the former property manager for the Projects, which has been succeed by

3  Argent Management.

4      2.1.137    <u>SunCal Marblehead</u>. SunCal Marblehead, LLC, a Delaware limited

5  liability company, a Trustee Debtor (a Group I: Trustee Debtor), and the owner of the Marblehead

6  Project.

7      2.1.138    <u>SunCal Marblehead/SunCal Heartland Loan Agreement</u>.  That certain

8  Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated

9  as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal

10  Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender,

11  pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of

12  approximately $316,061,300.  The SunCal Marblehead/SunCal Heartland Loan Agreement is

13  allegedly secured by first-priority deeds of trust on the Marblehead and the Heartland Projects.

14  The SunCal Marblehead/SunCal Heartland Loan Agreement has an alleged balance due of

15  $354,325,126.15 as of March 30, 2009. The proofs of claim filed with respect to this loan

16  agreement are the subject of the Lehman Adversary Proceeding and the Lehman Claim Objections.

17      2.1.139    <u>SunCal Oak Valley.</u>  SunCal Oak Valley, LLC, a Delaware limited

18  liability company, a Trustee Debtor (a Group I: Trustee Debtor), and the owner of the Oak Valley

19  Project.

20      2.1.140    <u>SunCal Oak Valley Loan Agreement</u>.  A certain Term Loan and

21  Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, by and between SunCal Oak

22  Valley, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which

23  OVC Holdings' predecessor (Lehman ALI) made a loan in the maximum aggregate principal

24  amount of approximately $120,000,000.  The SunCal Oak Valley Loan Agreement is allegedly

25  secured by a first-priority deed of trust on the Oak Valley Project.  The SunCal Oak Valley Loan

26  Agreement has an alleged balance due of $141,630,091.63 as of March 30, 2009.

27

28

1            2.1.141    SunCal Plan Proponents.  The Voluntary Debtors, in their capacity as

2 debtors and debtors in possession in their respective Chapter 11 cases, and Acquisitions as a

3 creditor and party-in-interest, that are proposing the Plans.

4            2.1.142    SunCal PSV. SunCal PSV, LLC, a Delaware limited liability company, a

5 Trustee Debtor (a Group I: Trustee Debtor), and the owner of the Palm Springs Village Project.

6            2.1.143    SunCal PSV Loan Agreement.  That certain Term Loan and Revolving

7 Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower,

8 and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the

9 maximum aggregate principal amount of approximately $90 million.  The SunCal PSV Loan

10 Agreement is allegedly secured by a first-priority deed of trust on the Palm Springs Village Project.

11 The SunCal PSV Loan Agreement has an alleged balance due of $88,257,340.20 as of March 30,

12 2009.

13           2.1.144    Tax.  Any tax, charge, fee, levy, impost or other assessment by any

14 federal, state, local or foreign taxing authority, including, without limitation, income, excise,

15 property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

16 estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

17 additions attributable to, or imposed on or with respect to such assessments.

18           2.1.145    Tax Claim.  Any Claim for any Tax to the extent that it is entitled to

19 priority in payment under Section 507(a)(8) of the Bankruptcy Code.

20           2.1.146    Trustee Debtor(s). The following Debtors, individually or collectively,

21 that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

22 Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

23 Torrance, and SunCal Oak Knoll.

24           2.1.147    Trustee Debtors' Committee.  The Official Committee of Unsecured

25 Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the

26 Bankruptcy Code.

27

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

2.1.148    <u>Unpaid Secured Real Property Tax Claims</u>.  Secured Claims held by various government entities secured by liens on the underlying real properties owned by the Debtors but that are non-recourse to the Debtors.

2.1.149    <u>Unsecured Claim</u>. An Unsecured Claim is any Claim that is not an Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

2.1.150    <u>Voluntary Debtor(s)</u>.  The following  Chapter 11 debtors and debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio and Tesoro.

2.1.151    <u>Winning Bid</u>. The highest and best Qualifying Bid received for the the Oak Valley Project, the Heartland Project, the Delta Coves Project, Marblehead Project or the Palm Springs Village Project, respectively.

2.1.152    <u>Winning Bidder</u>.  The party that submits the highest Qualifying Bid that is accepted by the applicable Debtor.

**2.2    <u>Rules of Construction</u>.**

For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

1    contract, instrument, release, indenture, agreement, or other document being in a particular form or

2    on particular terms and conditions means that such document shall be substantially and materially

3    in such form or substantially and materially on such terms and conditions; (h) any reference in the

4    Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

5    Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

6    may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

7    102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

8    express terms of the Plan or the Disclosure Statement or any other provision in this Section.

9       **2.3    Exhibits.**

10       All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

11    therein.

12       **III.**

13       **TREATMENT OF UNCLASSIFIED CLAIMS**

14       **3.1    Introduction**.

15       As required by the Bankruptcy Code, the Plan places Claims and Interests into various

16    Classes according to their right to priority.  However, certain types of Claims are not classified in

17    any Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the

18    Code.  They are not considered impaired and they do not vote on the Plan, because they are

19    automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal

20    Plan Proponents have not placed the following Claims in a Class.  The treatment of these

21    unclassified Claims is as provided below.

22       **3.2    Treatment of Allowed Administrative Claims.**

23       The Code requires that all Allowed Administrative Claims be paid on the later of Effective

24    Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

25    treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such

26    Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be

27    paid from the applicable Distribution Account(s) pursuant to the LitCo Plan Loan.

28

**3.3    Treatment and Repayment of the Lehman Administrative Loan(s).**

The Lehman Disputed Administrative Loans shall be paid in full on the later of the Effective Date, or the date any objections to the same are overruled by the Court leaving them Allowed claims. Prior to payment, or until disallowed, these claims shall continue to be secured by their existing liens against the respective Assets of the Trustee Debtors.

The Lehman Disputed Administrative Loans shall be paid in full, on the date referenced above, from either 1) funds loaned to the Plan Trust by LitCo or another designated third party, or 2) from the funds in the applicable Net Sale Proceeds Account.

**3.4    Repayment of Allowed Administrative Claims Other than the Lehman Administrative Loans.**

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the estate (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**3.5    Administrative Claims Bar Date.**

All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

-28-

1  upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

2  extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

3  of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

4  is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

5  any party that seeks payment of Administrative Claims that (i) is required to file a request for

6  payment of such Administrative Claims and (ii) does not file such a request by the deadline

7  established herein shall be forever barred from asserting such Administrative Claims against the

8  Debtors, the Plan Trust, their estates, or any of their property.

9       **3.6**     **<u>Treatment of Unsecured Tax Claims</u>.**

10       Tax Claims are certain unsecured income, employment and other taxes described by Code

11  Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

12  receive the present value of such Claim in deferred cash payments, over a period not exceeding

13  five (5) years from the petition date and that such treatment not be less favorable than the treatment

14  accorded to non priority unsecured creditors.

15       At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

16  entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

17  each three-month period following the Effective Date, during a period not to exceed five years

18  after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

19  unpaid balance from the Effective Date, calculated at the interest rate applicable pursuant to 11

20  U.S.C. §511, (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim

21  and the Plan Trustee, provided such treatment is on more favorable terms to the Debtors (or the

22  Plan Trust after the Effective Date) than the treatment set forth in clause (i) hereof, or (iii) payment

23  of the full Allowed Priority Tax Claim in Cash.

24       **3.7**     **<u>Summary of the Group I: Trustee Debtors Plans' Treatment of Bond</u>**

25       **<u>Indemnity Claims</u>.**

26       Bond Indemnification Claims are treated as Reliance Claims.  In the event that such Bond

27  Indemnification Claim arises from a general unsecured claim, it is classified in Class 6.  If the

28  event that such Bond indemnification Claim arises from a Mechanic's Lien Claim, then it is

-29-

1 | classified in Class 3. Contingent Bond Indemnification Claims are classified separately as Class 4

2 | Claims.

3 |       The Bond Companies assert that surety bonds were executed on behalf of all or some of the

4 | Group I: Trustee Debtors as a principal for its respective Group I: Trustee Project ("Surety

5 | Bonds"). The Surety Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning

6 | Bidder(s) determines to develop the Group I: Trustee Project(s), the Surety Bond will not apply to

7 | the Winning Bidder(s)' bonding requirements with respect to such development. If a Winning

8 | Bidder(s) determines to develop all or a portion of its respective s(s), it will be required at that time

9 | to obtain new Surety Bonds from the Bond Companies or another surety, to the extent surety bonds

10 | are required by applicable state and local development requirements.

11 | **IV**.

12 | **<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

13 |       As required by the Code, the Plan places Claims and Interests into various Classes

14 | according to their right to priority and other relative rights. The Plan specifies whether each Class

15 | of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

16 | will receive. The table below lists the Classes of Claims established under the Plan and states

17 | whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired"

18 | if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

19 | Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

20 | Code.

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| **Class 1.1** | Contra Costa County as the Holder of an Unpaid Secured Real Property Tax Claim against the Delta Coves Project in alleged the amount of $406,976. | **Delta Coves 16** |
| **Class 1.2** | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Heartland Project in the alleged amount of $985,141. | **SunCal Heartland 5** |

[2] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

-30-

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| **Class 1.3** | Riverside County as the Holder of an Unpaid Secured Real Property Tax Claim against the Oak Valley Project in the alleged amount of $175,158. | **SunCal Oak Valley 9** |
| **Class 1.4** | Orange County as the Holder of an Unpaid Secured Real Property Tax Claim against the Marblehead Project in the amount of $2,500,646. | **SunCal Marblehead 49 and 57** |
| **Class 1.5** | San Bernardino County as the Holder of an Unpaid Secured Real Property Tax Claim against the Palm Springs Village Project in the amount of $1,725,166. | **SunCal PSV 22** |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP I: TRUSTEE DEBTORS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.1** | The Holder of Lehman's Disputed Claims filed by Lehman ALI against Delta Coves arising from the Delta Coves Loan Agreement in the asserted amount of $206,023,142. | **Delta Coves 21** |
| **Class 2.2** | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against SunCal Marblehead and SunCal Heartland, which claim is based upon funds allegedly advanced pursuant to the SunCal Marblehead/SunCal Heartland Loan Agreement. | **SunCal Heartland 9** |
| **Class 2.3** | The Holder of Lehman's Disputed Claims filed by OVC Holdings against SunCal Oak Valley arising from the SunCal Oak Valley Loan Agreement in the asserted amount of $141,630,091. | **SunCal Oak Valley 16** |
| **Class 2.4** | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against SunCal Marblehead and SunCal Heartland, which claim is based upon funds allegedly advanced pursuant to the SunCal Marblehead/SunCal Heartland Loan Agreement. | **SunCal Marblehead: 21** |
| **Class 2.5** | The Holder of the Disputed Secured Claim that is secured by a Disputed Lien against the Palm Springs Village Project, which claim is based upon funds allegedly advanced pursuant to the SunCal PSV Loan Agreement in the asserted amount of $88,257,340. | **SunCal PSV 12** |

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.1** | The Holder of the disputed asserted Mechanic Lien Claim held by Hertz Equipment Rental Corporation against the Delta Coves Project in the amount of $25,444. | **Delta Coves 2** |
| **Class 3.2** | The Holder of the asserted Mechanic Lien Claim held by MBH Architects against the Delta Coves Project in the amount of $97,091. | **Delta Coves 8** |
| **Class 3.3** | The Holder of the asserted Mechanic Lien Claim held by Top Grade Construction, Inc. against the Delta Coves Project in the amount of $250,000. | **Delta Coves 3** |
| **Class 3.4** | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Heartland Project in the amount of $47,675. | **SunCal Heartland 2** |
| **Class 3.5** | The Holder of the asserted Mechanic Lien Claim held by Pinnik, Inc. against the Heartland Project in the amount of $522,238. | **SunCal Heartland 8** |
| **Class 3.6** | The Holder of the asserted Mechanic Lien Claim held by Dennis M. McCoy & Sons against the Heartland Project in the amount of $638,167. | **SunCal Heartland 16** |
| **Class 3.7** | The Holder of the asserted Mechanic Lien Claim held by HD Supply Construction against the Oak Valley Project in the amount of $52,806. | **SunCal Oak Valley 3** |
| **Class 3.8** | The Holder of the asserted Mechanic Lien Claim held by Pinnik Inc. against the Oak Valley Project in the amount of $966,987. | **SunCal Oak Valley 12 and 14** |
| **Class 3.9** | The Holder of the asserted Mechanic Lien Claim held by Hillcrest Contracting Inc. against the Oak Valley Project in the amount of $136,567. | **SunCal Oak Valley 23** |
| **Class 3.10** | The Holder of the asserted Mechanic Lien Claim held by MacKenzie Landscape against the Oak Valley Project in the amount of $121,297. | **SunCal Oak Valley 25** |
| **Class 3.11** | The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Oak Valley Project in the amount of $60,355. | **SunCal Oak Valley 26** |
| **Class 3.12** | The Holder of the asserted Mechanic Lien Claim held by Proactive Engineering against the Oak Valley Project in the amount of $280,685. | **SunCal Oak Valley 35 and 36** |
| **Class 3.13** | The Holder of the asserted Mechanic Lien Claim held by The Jasper Companies against the Marblehead Project in the amount of $146,657. | **SunCal Marblehead 29** |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.14** | The Holder of the asserted Mechanic Lien Claim held by Kirk Negrete, Inc. dba United Steel Placers against the Marblehead Project in the amount of $270,056. | **SunCal Marblehead 38** |
| **Class 3.15** | The Holder of the asserted Mechanic Lien Claim held by RBF Consulting against the Marblehead Project in the amount of $125,093. | **SunCal Marblehead 39** |
| **Class 3.16** | The Holder of the asserted Mechanic Lien Claim held by RJ Noble Co. against the Marblehead Project in the amount of $175,030. | **SunCal Marblehead 42, 50 and 58** |
| **Class 3.17** | The Holder of the asserted Mechanic Lien Claim held by Orange County Stripping Services against the Marblehead Project in the amount of $11,752. | **SunCal Marblehead 46 and 54** |
| **Class 3.18** | The Holder of the asserted Mechanic Lien Claim held by Savala Equipment Co. Inc. against the Marblehead Project in the amount of $34,440. | **SunCal Marblehead 48 and 56** |
| **Class 3.19** | The Holder of the asserted Mechanic Lien Claim held by All American Asphalt against the Marblehead Project in the amount of $1,344,445. | **SunCal Marblehead 63** |
| **Class 3.20** | The Holder of the asserted Mechanic Lien Claim held by Rockey Murata Landscaping against the Marblehead Project in the amount of $285,643. | **SunCal Marblehead 60** |
| **Class 3.21** | The Holder of the asserted Mechanic Lien Claim held by BNB Engineering, Inc. against the Marblehead Project in the amount of $1,608,723. | **SunCal Marblehead 37** |
| **Class 3.22** | The Holder of the asserted Mechanic Lien Claim held by Brudvik Inc. against the Palm Springs Village Project in the amount of $43,365. | **SunCal PSV 4** |
| **Class 3.23** | The Holder of the asserted Mechanic Lien Claim held by Larry Jacinto Construction Inc. against the Palm Springs Village Project in the amount of $212,663. | **SunCal PSV 5 and 24** |
| **Class 3.24** | The Holder of the asserted Mechanic Lien Claim held by William + Paddon Architects + Planners Inc. against the Palm Springs Village Project in the amount of $73,798. | **SunCal PSV 9 and 10** |
| **Class 3.25** | The Holder of the asserted Mechanic Lien Claim held by Southern California Edison against the Palm Springs Village Project in the amount of $23,861. | **SunCal PSV 26** |
| **Class 3.26** | The Holder of the asserted Mechanic Lien Claim held by Pacific Masonry Walls, Inc. against the Palm Springs Village Project in the amount of $314,061. | **SunCal PSV 33 and 39** |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| **Class 3.27** | The Holder of the asserted Mechanic Lien Claim held by J.R. Simplot Company against the Palm Springs Village Project in the amount of $3,467. | **SunCal PSV 34 and 40** |
| **Class 3.28** | The Holder of the asserted Mechanic Lien Claim held by Desert Pipeline Inc. against the Palm Springs Village Project in the amount of $469,784. | **SunCal PSV 36, 42 and 47** |
| **Class 3.29** | The Holder of the asserted Mechanic Lien Claim held by MSA Consulting against the Palm Springs Village Project in the amount of $666,897. | **SunCal PSV 43** |
| **Class 3.30** | The Holder of the asserted Mechanic Lien Claim held by Jackson DeMarco against the Palm Springs Village Project in the amount of $52,234. | **SunCal PSV 45** |

| CLASSIFICATION OF CONTINGENT BOND INDEMNIFICATION CLAIMS AGAINST THE GROUP I: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect to the Del Coves Project. | **Various Filed** |
| **Class 4.2** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect the Heartland Project. | **Various Filed** |
| **Class 4.3** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect to the Oak Valley Project. | **Various Filed** |
| **Class 4.4** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect to the Marblehead Project | **Various Filed** |
| **Class 4.5** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect to the Palm Springs Village Project | **Various Filed** |

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE GROUP I: TRUSTEE DEBTORS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| **Class 5.1** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against Delta Coves. | **Various Filed and Scheduled** |
| **Class 5.2** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against SunCal Heartland. | **Various Filed and Scheduled** |
| **Class 5.3** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against Oak Valley. | **Various Filed and Scheduled** |
| **Class 5.4** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $10,950 against SunCal Marblehead. | **Scheduled Amount and SunCal Marblehead 45** |
| **Class 5.5** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) against SunCal PSV | **Various Filed and Scheduled** |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[3] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.1** | The holders of Allowed Unsecured Reliance Claims against Delta Coves. | **Various Filed and Scheduled** |
| **Class 6.2** | The holders of Allowed Unsecured Reliance Claims against SunCal Heartland. | **Various Filed and Scheduled** |
| **Class 6.3** | The holders of Allowed Unsecured Reliance Claims against SunCal Oak Valley. | **Various Filed and Scheduled** |

---

[3] Unsecured Claims are generally placed within the same class and they receive the same treatment under a Plan. However, the SunCal Plan Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1 through 6.5, and 7.1 through 7.5. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1 through 6.5, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The SunCal Plan Proponents believe that the Holders of Reliance Claims are the potential beneficiaries of the equitable subordination causes of action in the Lehman Adversary Proceeding. The Unsecured Creditors in Classes 7.1 through 7.5 do not hold Reliance Claims. Under the Plan, the Reliance Claimants who sell their Reliance Claims to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of 55 percent on their Allowed Unsecured Claims *from non-estate funds. Accordingly, the 55 percent payment is being paid from non-estate funds, for a non-estate asset*. If a Reliance Claimant elects not to sell this claim, then this claimant will receive the exact same distribution rights that the Class 7.1 through 7.5 claimants, respectively, will receive under the Plan, unless the Court allocates a part of any judgment granted in the Lehman Adversary Proceeding to these particular claims. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[3] | | |
|---|---|---|
| **Class 6** | **Claimant** | **Claim Nos.** |
| **Class 6.4** | The holders of Allowed Unsecured Reliance Claims against SunCal Marblehead. | Various Filed and Scheduled |
| **Class 6.5** | The holders of Allowed Unsecured Reliance Claims against SunCal PSV. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS[4] | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.1** | Claimants  holding Allowed Unsecured Claims against Delta Coves that are not Reliance Claims. | **Various Filed and Scheduled** |
| **Class 7.2** | Claimants  holding Allowed Unsecured Claims against SunCal Heartland that are not Reliance Claims. | **Various Filed and Scheduled** |
| **Class 7.3** | Claimants  holding Allowed Unsecured Claims against Oak Valley that are not Reliance Claims. | **Various Filed and Scheduled** |
| **Class 7.4** | Claimants  holding Allowed Unsecured Claims against SunCal Marblehead that are not Reliance Claims | Various Filed and Scheduled |
| **Class 7.5** | Claimants  holding Allowed Unsecured Claims against SunCal PSV that are not Reliance Claims | Various Filed and Scheduled |

| **Class 8** | **Claimant** | **Scheduled** |
|---|---|---|
| **Class 8.1** | Allowed Interests in Delta Coves held by Delta Coves Master JV LLC and LB/L-DUC III Master LLC. | Scheduled Amount |
| **Class 8.2** | Allowed Interests in SunCal Heartland held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| **Class 8.3** | Allowed Interests in SunCal Oak Valley held by SCLV Oak Valley, LLC and SCC/Oak Valley, LLC. | Scheduled Amount |
| **Class 8.4** | Allowed Interests in SunCal Marblehead held by SunCal Marblehead Heartland Master LLC. | Scheduled Amount |
| **Class 8.5** | Allowed Interests in SunCal PSV, LLC held by Lehman SunCal Real Estate Fund LLC | Scheduled Amount |

---

[4] This Class includes, but it is not limited to, Bond Claims that are not Allowed Secured Claims within Class 4.1.

-36-

# V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.1 The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against the Group I: Trustee Projects (Classes 1.1 through 1.5).

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 through 1.5 are impaired under the Plan and shall receive one of the following two treatments at the Plan Trustee's discretion based solely on the option of the Group I: Trustee Debtor:

  A. Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and such Allowed Claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2) from the sale of the Group I: Trustee Projects during the Sales Period; or

  B. Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and California Revenue and Taxation Code Sections 4102 and 4103, and payment on such Allowed Claims shall be satisfied over sixty-one (61) months from the applicable Group I: Trustee Debtor's Petition Date.

### 5.2 The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s) Against the Group I: Trustee Debtors (Classes 2.1 through 2.5).

The Holder(s) of Disputed Secured Claims within Class 2.1 through 2.5 shall receive the indubitable equivalent of their disputed claims under the Plan, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii), through the following treatment:

  A. _Lien Rights_. The Class 2.1 through 2.5 Holder(s) shall retain their interest in the Disputed Lien(s) against the applicable Group I: Trustee Projects and the Group I: Trustee Other Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the Allowance of such Disputed Secured Claims and determining the validity, priority and extent of the applicable Disputed Liens against the applicable Group I: Trustee Projects, which secure these claims, except as follows:

1        1.      The Group I: Trustee Projects and the Group I: Trustee Other Assets subject

2    to the Class 2.1 through 2.5 Disputed Liens will be sought to be sold free and clear of such liens

3    during the Sales Period, without the right to credit bid under Section 363(k) with respect to

4    Disputed Claims and Disputed Liens. These Disputed Liens shall then attach to the Net Sales

5    Proceeds from the sale, which shall be deposited into the Net Sales Proceeds Account, pending a

6    resolution of such Disputed Secured Claims and Disputed Liens.  The marketing process and sales

7    procedures for the Group I: Trustee Projects and the Group I: Trustee Other Assets are described in

8    Article X hereof.

9        2.      To the extent that a Disputed Secured Claim held by either the Class 2.1

10   through 2.5 Claimants against the applicable Group I: Trustee Projects and Group I: Trustee Other

11   Assets  is disallowed, and the Disputed Lien associated with this Disputed Secured Claim is

12   consequently released to the extent of this disallowance, the Plan Trustee shall be authorized to use

13   to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s) to pay other Allowed

14   Claims in their order of priority, in accordance with the terms of the Plan;

15       3.      To the extent that a Disputed Secured Claim held by either the Class 2.1

16   through 2.5 Claimant and the associated Disputed Lien(s) against the applicable Group I: Trustee

17   Projects and Group I: Trustee Other Assets  is subordinated, the Plan Trustee shall be authorized to

18   use to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s), or where the

19   priority of the Disputed Liens has been subordinated by the Court, to pay other Allowed Claims in

20   their order of priority, in accordance with the terms of the Plan, to the extent of the subordination;

21   and

22       Notwithstanding the existence of the Disputed Secured Claims and the Disputed

23   Liens, the Plan Trustee may a seek a release of the funds in the Net Sales Proceeds Account subject

24   to these claims and liens to pay the claims of other creditors in accordance with the terms of the

25   applicable Plan, if the Class 2.1 through 2.5 claimants' interests in Group I will remain adequately

26   protected after this release.

27       B.      <u>Distributions To The Class 2.1 through 2.5 Claimants</u>. If the Plan Trustee

28   consummates a sale or otherwise liquidates the particular Group I Trustee Project and/or Group I:

-38-

1 Trustee Other Assets subject to the Class 2.1 through 2.5 Disputed Secured Claim(s) and/or

2 Disputed Lien(s) during the Sales Period, as provided for above, the Holder(s) of such Disputed

3 Secured Claim shall receive a distribution to the extent of available funds from the applicable Net

4 Sale Proceeds Account(s) to the extent required by an entered Order of the Court, that is not

5 subject to a stay pending appeal, determining the allowance and priority of the Disputed Secured

6 Claims and the validity, priority and extent of the Disputed Liens in, including but not limited to,

7 the Lehman Adversary Proceeding and the Lehman Claims Objections.

8    C. <u>Abandonment of Unsold Group I: Trustee Projects and Group I: Trustee</u>

9 <u>Other Assets</u>. If for any reason the Plan Trustee is unable to sell any of the Group I: Trustee

10 Projects and/or Group I: Trustee Other Assets during the Sales Period, they will be abandoned as

11 of 11:59 p.m. on the last day of the Sales Period, no payment shall be made to Holders of Class 2.1

12 through 2.5 Claims, as the case may be, and such Holder(s) shall be free to exercise any and all

13 remedies that they may hold with respect to the Group I: Trustee Projects and the Group I: Trustee

14 Assets under applicable California law.

15  **5.3** **<u>The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against</u>**

16    **<u>the Group I: Trustee Projects (Classes 3.1 Through 3.30).</u>**

17   The treatment of the Holders of Allowed Classes 3.1 through 3.30 Secured Claims under

18 the Plan shall be as follows:

19    A. The Holder(s)' rights are impaired under the Plan;

20    B. The Holder(s) shall retain their respective underlying liens on the applicable

21 Group I: Trustee Project(s), but shall forebear from pursuing their rights and remedies until the

22 expiration of the Sales Period;

23    C. If the Plan Trustee is able to consummate a sale of the Group I: Trustee

24 Projects subject to the liens asserted by the Holders of Class 3.1 through 3.30 claims  during the

25 Sales Period, such Holders shall receive a distribution, to the extent of available, of Net Sale

26 Proceeds in accordance with the priorities set forth under the Bankruptcy Code, subject to a Final

27 Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and

28

1   the validity of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman

2   Adversary Proceeding; and

3           D.    If for any reason the Plan Trustee is unable to sell any of the Group I:

4   Trustee Projects during the Sales Period, they will be abandoned as of 11:59 p.m. on the last day of

5   the Sales Period, no payment shall be made to Holders of Classes 3.1 through 3.30 Claims, as the

6   case may be, and such Holder(s) shall be free to exercise any and all remedies that they may hold

7   with respect to the Group I: Trustee Projects under applicable California law.

8       **5.4**    **The Plan's Treatment of Holders of Contingent Bond Indemnification Claims**

9              **Against the Group I: Trustee Projects (Classes 4.1 through 4.5).**

10       The Bond Companies assert that surety bonds were executed on behalf of all or some of the

11   Group I: Trustee Debtors as a principal for its respective Group I: Trustee Project ("Surety

12   Bonds"). The Surety Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning

13   Bidder(s) determines to develop the Group I: Trustee Project(s), the Surety Bond will not apply to

14   the Winning Bidder(s)' bonding requirements with respect to such development. If a Winning

15   Bidder(s) determines to develop all or a portion of its respective Group I: Trustee Project(s), it will

16   be require at that time to obtain new Surety Bonds from the Bond Companies or another surety, to

17   the extent surety bonds are required by applicable state and local development requirements.

18       The rights of each holder of an Allowed Contingent Bond Indemnification Claim arising

19   from a bond issued with respect to a Group I: Trustee Project, shall, to the extent such claim(s) are

20   determined to be a secured claim(s), be impaired under the Plan. Such claims shall receive the

21   following treatment:

22         A.  Each such Allowed Secured Claim shall be placed in a separate class and receive a

23   separate ballot for voting purpose

24         B.  Each Holder(s) shall retain their respective underlying liens on the applicable Group

25   I: Trustee Project(s), but shall forebear from pursuing their rights and remedies until the expiration

26   of the Sales Period;

27         C.  If the Plan Trustee is able to consummate a sale of the Group I: Trustee Projects

28   subject to the liens asserted by the Holders of Classes 4.1 through 4.5 claimants during the Sales

1    Period, such Holders shall receive a distribution, to the extent of available Net Sale Proceeds in

2    accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s)

3    resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity

4    of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary

5    Proceeding; and

6        D.  If the Plan Trustee is unable to consummate a sale of the Group I: Trustee Projects

7    during the Sales Period, such real property collateral shall be deemed abandoned by the Plan

8    Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to

9    pursue their respective rights against the real property collateral under applicable California law.

10       **5.5**    **The Plan's Treatment of Holders of Priority Claims Against the Group I:**

11            **Trustee Debtors (Classes 5.1 through 5.5)**.

12       The treatment of the Holders of Allowed Priority Claims under the applicable Plan(s) shall

13    be as follows**:**

14            A.    The Holder(s) are unimpaired under the Plan; and

15            B.    The Holder(s) shall be paid from either the applicable Distribution

16    Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the

17    Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such

18    Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed

19    Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and

20    the Plan Trustee.

21       **5.6**    **The Plan's Treatment of Holders of General Unsecured Claims That Are**

22            **Reliance Claims Group I: Trustee Debtors (Classes 6.1 through 6.5).**

23       The rights of Holders of Allowed Classes 6.1 through 6.5 Claims are impaired under the

24    applicable Plan(s). They have the right to choose between the following treatment options:

25            A.    Option A: A claimant in these classes *who votes in favor of the Plan*, and

26    who chooses Option A, will have the right to sell to LitCo all of the claimant's right, title and

27    interest in all Allowed Reliance Claims and all of the claimant's Litigation Rights against the

28    applicable Debtor, SunCal Affiliates, and the Lehman Entities, for the sum of fifty five cents

1    ($0.55) per dollar of allowed claim, payable in cash on the Effective Date, provided there is no stay

2    pending an appeal of the Confirmation Order, in full satisfaction of such claimant's Allowed

3    Reliance Claims; or

4        B.    Option B: A claimant in these classes who votes against the Plan, or who

5    votes in favor of the Plan, but does not choose Option A, or who does not vote on the Plan, will 1)

6    receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such

7    claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the

8    Lehman Entities and its right to receive such claimant's share, as determined by the Court, in the

9    benefits and recoveries resulting from a judgment or order entered in the Lehman Adversary

10    Proceeding, the Contract Action, or the Lehman Claims Objections,  and 3) right to receive a pro-

11    rata share of any funds payable from the applicable Distribution Account(s), after payment in full

12    of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

13    **5.7**    **The Plan's Treatment of Holders of Allowed General Unsecured Claims That**

14    **Are Not Reliance Claims Group I: Trustee Debtors (Classes 7.1 through 7.5).**

15        The rights of Holders of Allowed Class 7.1 through 7.5 Claims are impaired under the

16    Plan(s). Under the Plan(s), each claimant will 1) receive a minimum distribution in cash, on the

17    Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-

18    rata share of any funds payable from the applicable Distribution Account(s), after payment in full

19    of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims

20    and any sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class

21    6.1 through 6.5 Claims from either the Claim Reduction Amounts or on account of a judgment in

22    the Lehman Adversary Proceeding.

23    **5.8**    **The Plan's Treatment of Holders of Allowed Interests Group I: Trustee**

24    **Debtors.**

25        The Interests of the Holders in Class 8.1 and 8.5 are impaired under the Plan. All such

26    Interests shall be cancelled as of the Effective Date and no distribution shall be made to these

27    Holders on account of such Interest(s).

28

# VI.

## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    Introduction.

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors cannot represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  The requirements described herein are <u>not</u> the only requirements for confirmation.

### 6.2    Who May Object to Confirmation of the Plan.

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 6.3    Who May Vote to Accept/Reject the Plan.

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected").  The votes will be tabulated on a Debtor by Debtor basis.

### 6.4    What Is an Allowed Claim/Interest.

As noted above, a Holder of a Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

### 6.5    What Is an Impaired Class.

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtors believe that all Classes, except for Classes 5.1 through 5.5, are impaired.

### 6.6    Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan.  The SunCal Plan Proponents believe that all Classes are entitled to vote except Classes 5.1 through 5.5. These classes are not impaired under the Plan and consequently are not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Classes 8.1 through 8.5 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 6.7    Who Can Vote in More than One Class.

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1    **6.8**    <u>**Votes Necessary for a Class to Accept the Plan**</u>.

2        A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

3    number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

4    accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

5    two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

6    the Plan.

7    **6.9**    <u>**Treatment of Nonaccepting Classes**</u>.

8        As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

9    Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

10   required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by

11   which a plan may be confirmed and become binding on non-accepting Classes is commonly

12   referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

13   nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

14   requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

15   equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

16   11 U.S.C. § 1129(b) and applicable case law.

17   **6.10**    <u>**Request for Confirmation Despite Nonacceptance by Impaired Class(es)**</u>.

18       The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

19   impaired Class if such Class does not vote to accept the Plan.

20   **VII.**

21   <u>**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**</u>

22   **7.1**    <u>**Introduction**</u>.

23       This section is intended to address how the SunCal Plan Proponents intend to implement

24   the provisions of the Plan.  It addresses the marketing and the sale of the Group I: Trustee Projects

25   and the Group I: Trustee Other Assets, the transfer of the Plan Trust Assets to the Plan Trust, the

26   nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the

27   resolution of disputed claims, the sources of funds that will be used to pay claims and the

28   mechanics of how claims will be paid.

**7.2**     **Sale Process of the Group I: Trustee Projects and the Group I: Trustee Other Assets During the Sales Period**.

The core objective of the Plan is to enable all creditors holding Allowed Claims to receive the highest dividend possible by selling the estates' primary assets, the Group I: Trustee Projects, to the highest bidder. The process of marketing the Group I: Trustee Projects for sale will begin, pursuant to the Confirmation Order, immediately after the entry of this order.  Acquisitions shall manage the marketing process initially in its capacity as a SunCal Plan Proponent and as the Plan Trustee after the Effective Date.  Furthermore, the Trustee Debtors' Committee shall be consulted and have the opportunity to object to the sales process and request a hearing with the Bankruptcy Court.

7.2.1.   The Group I: Trustee Projects Marketing and Bid Procedures.

The SunCal Plan Proponents and the Plan Trustee will pursue the following sale procedures culminating into a public auction for the sale of the Group I: Trustee Projects after the Confirmation Date and during the Sales Period.

7.2.1.1 Implementation of a Marketing Program. Once the Plan is confirmed, the SunCal Plan Proponents will market the Group I: Trustee Projects for sale through a comprehensive sale effort during the Sale Period. This sale effort will include 1) sending sale packages describing each Group I: Trustee Project to the real estate brokerage community; b) advertising the Group I: Trustee Projects for sale on a website that includes links allowing direct access to all relevant information regarding the Group I: Trustee Projects; and c) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

7.2.1.2 Identifying a Stalking Horse Bidder. On the first business day after the Effective Date, the Plan Trustee will accept, on a provisional basis, an Opening Bid for the Group I: Trustee Projects.  The bidder whose Opening Bid is accepted for each Group I Trustee Project will become the "Stalking Horse Bidder."  The Opening Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group I Trustee Project.  The Plan Trustee shall also select Qualified Bidders at this time.

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

7.2.1.3 <u>The Sale Contract</u>. The sale contract that will be entered into with the Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

1.      <u>Overbid Provisions</u>. The contract will allow the Plan Trustee to seek "overbids" from other Qualified Buyers, and to accept an Initial Overbid that exceeds the Stalking Horse Bid by the Initial Overbid Amount applicable to each Group I: Trustee Project.  In the case of the Heartland Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Heartland Project Break-up Fee and one hundred thousand dollars ($100,000).  In the case of the Delta Coves Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Delta Coves Project Break-up Fee and one hundred thousand dollars ($100,000).  In the case of the Oak Valley Project, the Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Oak Valley Project Break-up Fee and one hundred thousand dollars ($100,000).  In the case of the Marblehead Project, the Initial Overbid Amount is a sum that is not less than $84,420,000, plus the Marblehead Break-up Fee, plus one hundred thousand dollars ($100,000).  In the case of the Palm Springs Village Project, the Initial Overbid Amount is $9,990,000, plus the PSV Break-up Fee, plus seventy-five thousand dollars ($75,000).

2.      <u>A Break-Up Fee</u>. The sale contract will include a "break-up fee" provision. This fee will be payable to the Stalking Horse Bidder if the Opening Bid is overbid, and another Qualified Bidder purchases the Group I: Trustee Project(s) that is the subject of the Opening Bid.

3.      <u>Sale Free And Clear of Liens</u>. The sale contract will provide that the Group I: Trustee Project(s) are being sold free and clear of all monetary liens and encumbrances and that no party holding a lien against the Assets, including the Lehman Lenders, may submit a "credit bid" based upon the amount allegedly owing on the claims secured by the project being sold.

7.2.1.4 <u>The Auction</u>.  Fourteen (14) days after the date of the selection of the Stalking Horse Bidder, the Plan Trustee will conduct a public auction wherein all Qualified Bidders who have submitted Qualified Bids for the Group I: Trustee Projects will have the opportunity to increase their bids for these Projects. The Qualified Bidder that submits the highest

-47-

bid for the Project will then be designated the Winning Bidder. The Winning Bidder will then have fifteen (15) days pay the Winning Bid amount and the closing shall occur no later than the first business day following the thirtieth (30th) day after the Effective Date.

7.2.2    The Group I: Trustee Other Assets Marketing and Bid Procedures.

To the extent that the SunCal Plan Proponents believe that the Group I: Trustee Other Assets have any material value, the SunCal Plan Proponents will pursue the following process for the sale of the Group I: Trustee Other Assets after the Confirmation Date and during the Sales Period:

1.    After the Confirmation Date, the SunCal Plan Proponents will implement commercially reasonable marketing efforts for the sale of the Group I: Trustee Other Assets;

2.    The sales procedures will be decided by the SunCal Plan Proponents after consultation with the Trustee Debtors' Committee; and

3.    The sale contract will provide that the Group I: Trustee Other Assets(s) are being sold free and clear of all monetary liens and encumbrances and that no party holding a lien against the Group I: Trustee Other Assets, including the Lehman Lenders, may submit a "credit bid" based upon the amount allegedly owing on the claims secured by the Group I: Trustee Other Assets being sold.

4.    Within seven (7) days after the Effective Date, the Plan Trustee will hold a public auction for the sale of the Group I: Trustee Assets to the bidder that submits the highest and best bid.  The winning bidder will then have seven (10) days to close this purchase transaction by paying the winning bid amount.

**7.3    Establishment and Operations of the Plan Trust**.

The Plan Trust shall be established and shall become effective on the Effective Date.  The Plan Trust is created pursuant to the Plan and the Confirmation Order.  The primary purpose of the Plan Trust is to consummate the sales and/or the liquidation of the Group I: Trustee Projects and the Group I: Trustee Other Assets transferred to it and the Distribution of the Net Sales Proceeds to Creditors, with no objective to continue or engage in the conduct of a trade or business, except to

-48-

1   the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust.

2   The Plan Trust shall hold title to and administer the Plan Trust Property, including, but not limited

3   to, any Litigation Claims, and the proceeds thereof for liquidation and distribution in accordance

4   with the terms of the Plan.

5       **7.4**    **Preservation and Pursuit of Litigation Claims and Recovery for the Plan**

6            **Trust**.

7       On the Effective Date, title to and possession of all property of the Group I: Trustee

8   Debtors shall be deemed transferred and delivered to the Plan Trust, without further act or action

9   under any applicable agreement, law, regulation, order or rule of law.

10       Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

11   Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo

12   Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled

13   in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the

14   Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee

15   shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10)

16   days' prior written notice and opportunity to object to the proposed action.  Any disputes

17   concerning the settlement or abandonment of a Litigation Claim shall be submitted to the

18   Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

19       All Litigation Recoveries realized or obtained by the Plan Trustee shall be promptly

20   deposited into the applicable Distribution Account(s).  Except as otherwise provided in the Plan

21   and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and

22   Liens and shall only be expended in accordance with the provisions of the Plan.

23       **7.5**    **Removal of Chapter 11 Trustee**.

24       As of the Effective Date, the appointment of the Chapter 11 Trustee for SunCal Oak

25   Valley, SunCal Heartland and Delta Coves Cases, SunCal Marblehead, and SunCal PSV shall

26   terminate, and possession and control over all property within these estates shall pass to the Plan

27   Trust.

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

**7.6**     **Payment of Plan Trust Expenses**.

The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be paid, or adequate reserves shall be created for the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

**7.7**     **The Plan Trust Distribution System.**

The Plan Trustee shall establish a separate "Distribution Account" for each Group I: Trustee Debtor at an FDIC insured bank. Each Group I: Trustee Debtor's Available Cash, whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group I: Trustee Debtor's Distribution Account.  These funds will then be used to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons dealing with the Plan Trustee, or seeking to assert Claims against the Debtors, the Estates or the Plan Trust, shall look only to property of the Debtors, the Estates or the Plan Trust to satisfy any liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

**7.8**     **The Plan Trustee**.

    **7.8.1**     **Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The appointment of the Plan Trustee shall be effective as of the Effective Date.

    **7.8.2**     **Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan Trustee.

    **7.8.3**     **Powers and Duties**.  On the Effective Date, the Plan Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan

1   Trustee shall be authorized, empowered and directed to take all actions necessary to comply with

2   the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without

3   limitation to:

4          i.      employ, retain, and replace one or more attorneys, accountants, auctioneers,

5   brokers, managers, consultants, other professionals, agents, investigators, expert witnesses,

6   consultants, and advisors as necessary to discharge the duties of the Plan Trustee under the Plan;

7          ii.     control and effectuate the Claims reconciliation process, including to object

8   to, seek to subordinate, compromise or settle any and all Claims against the Debtors pursuant to the

9   terms of the Plan;

10         iii.    open, maintain and administer bank accounts as necessary to discharge the

11  duties of the Plan Trustee under the Plan;

12         iv.    make Distributions to the Holders of Allowed Claims in accordance with the

13  Plan;

14         v.     retain professionals to assist in performing his or her duties under the Plan;

15         vi.    pay reasonable and necessary professional fees, costs, and expenses;

16         vii.    investigate, analyze, commence, prosecute, litigate, compromise, settle,

17  dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of

18  the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and

19  appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of

20  Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests of the

21  Plan Trust;

22         viii.   administer, sell, liquidate, or otherwise dispose of the Assets in accordance

23  with the terms of the Plan;

24         ix.    incur and pay reasonable and necessary expenses in connection with the

25  performance of the Plan Trustee's duties under the Plan;

26         x.     represent the Estates before the Court and other courts of competent

27  jurisdiction with respect to matters concerning the Plan Trust;

28

1          xi.      seek the examination of any entity under the subject to the provisions of

2    Bankruptcy Rule 2004;

3          xii.     comply with applicable orders of the court and any other court of competent

4    jurisdiction over the matters set forth in the Plan;

5          xiii.    comply with all applicable laws and regulations concerning the matters set

6    forth in the Plan;

7          xiv.     exercise such other powers as may be vested in the Plan Trust pursuant to

8    the Plan, the Confirmation Order, or other Final Orders of the Court.

9          xv.      execute any documents, instruments, contracts, and agreements necessary

10   and appropriate to carry out the powers and duties of the Plan Trust;

11         xvi.     (1) seek a determination of tax liability under §505 of the code, (2) pay

12   taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

13   r3equired with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a

14   "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

15   behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

16         xvii.    stand in the shoes of the Debtors for all purposes.

17         **7.8.4**        **Retention of Professionals and Compensation Procedure.**

18         On and after the Effective Date, the Plan Trustee may, without further application or

19   Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may

20   be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out

21   the provisions of the Plan, including, but not limited to, the Professionals retained prior to the

22   Effective Date by either the Debtors or the Trustee Debtors' Committee.  The Plan Trustee may

23   employ such professionals on any reasonable terms and conditions of employment to be

24   determined by the Plan Trustee.  For the services performed on and after the Effective Date, the

25   professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive

26   reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan

27   Trustee.

28

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

### 7.8.5    Fees and Expenses.

Acquisitions shall not receive any compensation for the services it performs as the Plan Trustee.  The Plan Trustee Professionals shall be entitled to reasonable compensation for their services, and reimbursement of expenses.  The costs and expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order, notice or application to the Court, the reasonable fees and expenses of the Plan Trustee Professionals, as necessary to discharge the Plan Trustee's duties under the Plan.  The Plan Trustee shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any Distributions under the Plan.

### 7.8.6    Limitation of Liability and Indemnification.

None of the Group I: Trustee Debtors, the Trustee Debtors' Committee, the Plan Sponsor, the SunCal Plan Proponents, the Plan Trustee, the Professionals, nor any of their respective members, officers, directors, shareholders, employees, or agents (the "Indemnified Parties") shall be liable (a) for any loss or damages by reason of any action taken or omitted by him or her, except in the case of fraud, willful misconduct, bad faith, or gross negligence, (b) for any act or omission made in reliance upon the Debtors' books and records or upon information or advice given to the Plan Trustee by his or her professionals, or (c) for any action taken or omission made in connection with or related to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the fullest extent permitted by applicable statute and case law. Except as otherwise provided in this Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, consent, or other document believed by him or her to be genuine and to have been signed by the proper party or parties.

The Indemnified Parties shall be indemnified and receive reimbursement from and against any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature,

1    which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan

2    Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of

3    services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable

4    law, except if such loss, liability, expense or damage is finally determined by a court of competent

5    jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct,

6    bad faith, or gross negligence.  The amounts necessary for such indemnification and

7    reimbursement shall be paid by the Plan Trustee out of the Plan Trust Property.  The Plan Trustee

8    shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan

9    Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or

10    liability.  This indemnification shall survive the dissolution, resignation or removal, as may be

11    applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit

12    of the Plan Trustee's and the Indemnified Person's heirs and assigns.

13    **7.8.7    Plan Trustee as Successor.**

14    Pursuant to Code §1123(b), the Plan Trustee shall be the successor to the Group I

15    Voluntary Debtors for all purposes.

16    **7.9    The Plan Trust Beneficiaries**.

17    The Holders of Allowed Claims under the Plan, or any successors to such Holders'

18    Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust

19    which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the

20    times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be

21    evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except

22    as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a

23    beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan

24    Trust assets or to any right to call for a partition or division of such assets or to require an

25    accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner

26    provided in the Plan.

27    The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities"

28    under applicable law.  However, such rights have not been defined as "securities" under the Plan

1    because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

2    arising under the Plan Trust are deemed to be "securities," the exemption from registration under

3    §1145 of the Bankruptcy code is intended to be applicable to such securities.

4          **7.10**    **No Payment of Transfer-Related Fees to the United States Trustee**.

5          The Plan Trust shall not be required to pay any fees to the United States Trustee based on

6    any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

7          **7.11**    **No Payment of Transfer-Related Fees to the Plan Trustee**.

8          The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any

9    transfers of Plan Trust Assets from the Group I: Trustee Debtors to the Plan Trust, or from the Plan

10    Trust.

11          **7.12**    **Books and Records of Trust**.

12          The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent,

13    the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

14    Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

15    for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

16    that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

17    the Plan Trusts books and records at such time as Plan Trust has no further need for such books

18    and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

19    upon written request by the Trustee Debtors' Committee.

20          **7.13**    **Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial**

21                **Interests**.

22          For all United States federal income tax purposes, the transfers by the Group I: Trustee

23    Debtors shall be treated by the Group I: Trustee Debtors, their estates, the Plan Trust and the Plan

24    Trust Beneficiaries as a transfer of the Plan Trust Assets by the Group I: Trustee Debtors to the

25    Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan Trust

26    Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed

27    owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and

28    the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Assets

1   consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use such

2   valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the

3   Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that

4   the Plan Trust will determine the fair market value of the Plan Trust Assets within thirty (30) days

5   after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its

6   acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively

7   deemed to agree to use such valuations for all purposes, including, without limitation, in

8   computing any gain recognized upon the exchange of such holder's claim for purposes of

9   determining any United States Federal income tax, and shall be required to include those items of

10  income, deductions and tax credits that are attributable to its Beneficial Interest in computing

11  its taxable income.

12      **7.14    Termination of the Trust.**

13          The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

14  Assets has been liquidated, all proceeds have been converted to cash or distributed in kind, all the

15  Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust

16  Trustee is obligated to make distributions on have been paid, all distributions to be made with

17  respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party

18  have been concluded by dismissal or an order issued by the court in which such litigation is

19  pending and such order has become "final" (consistent with the definition of Final Order in the

20  plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

21  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

22  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

23  period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a total

24  of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

25  consider and rule on the request within six (6) months prior to the expiration of the initial five-year

26  term.

27      **7.15    Exemption from Certain Transfer Taxes.**

28          In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

-56-

exchange of a security or the making or delivery of an instrument of transfer under the plan may not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and agents shall forego the assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**7.16    Tax Consequence of The Plan.**

The implementation of the Plan may have federal, state and local tax consequences to the Group I: Trustee Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**7.17    The Trustee Debtors' Committee.**

On the Effective Date, the Trustee Debtors' Committee shall continue to serve their applicable Debtors as Trustee Debtors' Committee to the applicable reorganized Debtors, subject to the following:

**7.18    Duties and Powers.**

The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to the sales process, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, and the Contract Action, standing to object to any settlement of any Litigation Claim in excess of $100,000, standing to object to any proposed sales procedures on sale of the Debtors' Projects and standing to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates and their professionals.  The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the Plan.  Such compensation shall be paid from the applicable Distribution Account(s).

### 7.19    Dissolution of Trustee Debtors' Committee.

The Trustee Debtors' Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Trustee Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the Plan Trust.

### 7.20    Claims Estimation Rights.

On the Confirmation Date, the SunCal Plan Proponents shall be vested with standing to file a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such motion the estimation, for Distribution purposes, of any Disputed Claim seeking recourse to, or claiming an interest in, any asset of the Group I: Trustee Debtors. After the Bankruptcy Court estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure, the Plan Trustee shall have the right to use any funds or assets not deemed subject to the rights of the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed Administrative Claims, after the Effective Date.

### VIII.

### DISTRIBUTIONS

### 8.1    Distribution Agent.

Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

### 8.2 Distributions.

#### 8.2.1 Dates of Distributions.

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

### 8.3 Limitation on Liability.

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions made pursuant to the Plan resulting from any delays in making such distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

### 8.4 Old Instruments and Securities.

#### 8.4.1 Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

#### 8.4.2 Cancellation of Liens.

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation,

1   the execution, delivery and Filing or recording of such releases as may be requested by the Plan

2   Trustee.

3   ### 8.4.3    De Minimis Distributions and Fractional Shares.

4   No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to

5   any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever

6   payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a

7   rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not

8   distributed as a consequence of this section shall, after the last distribution on account of Allowed

9   Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

10   ### 8.4.4    Delivery of Distributions.

11   Except as provided in the Plan with respect to Unclaimed Property, distributions to

12   Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as

13   follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at

14   the address for such Holder as maintained by the official claims agent for the Debtors; (2) with

15   respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address

16   reflected on the Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan

17   Trust has received a written notice of a change of address for such Holder, the address set forth in

18   such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim,

19   at such address as the Holder may specify in writing.

20   ### 8.4.5    Undeliverable Distributions.

21   If the Distribution of Cash to the Holder of any Allowed Claim is returned to the

22   Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing

23   (any such distribution being hereinafter referred to as "Unclaimed Property"), no further

24   distribution shall be made to such Holder unless and until the Plan Trustee is notified in writing of

25   such Holder's then current address.  Subject to the remainder of this Section and the following

26   section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this

27   Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing

28   account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such

1  time as the subject Distribution becomes deliverable.  Nothing contained in the Plan shall require

2  the Plan Trustee or any other Person to attempt to locate such Person.

3                                                              **IX.**

4                      **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

5          **9.1      Standing for Objections to Claims.**

6          The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

7  objections to Claims, excluding Claims filed that are SunCal Affiliates including SunCal

8  Management.  The Trustee Debtors' Committee shall have the sole and exclusive right to file,

9  prosecute and resolve potential Avoidance Actions against and objections to Claims filed by

10  (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing,

11  LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP,

12  The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.

13          Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person

14  holding such Claim on or before the applicable Claims Objection Deadline.  The Plan Trustee shall

15  have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the

16  Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

17          **9.2      Treatment of Disputed Claims and Disputed Liens.**

18                  **9.2.1    No Distribution Pending Allowance.**

19          If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment

20  or distribution provided for under the Plan shall be made on account of such Claim or Lien unless

21  and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

22                  **9.2.2    Distribution After Allowance.**

23          On the next Distribution Date following the date on which a Disputed Claim

24  becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall

25  distribute to the Person holding such Claim any Cash that would have been distributable to such

26  Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a

27  Disputed Claim.

28

### 9.2.3   Reserves for Disputed Claims

In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the Plan Trustee shall establish and maintain a reserve for such Disputed Claims.  For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a Distribution is made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims.  If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the distributed Date following the date when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim because the Disputed Claim does not become an Allowed Claim shall become property of the Plan Trust and shall be distributed in accordance with the terms of the Plan.

## X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1   Executory Contracts to be Assumed and Assigned.

Under the Plans, the Group I: Trustee Debtors Projects will be sold.  As a result, the Group I: Trustee Debtors will assume only those executory contracts and unexpired leases to be assigned to the Winning Bidder with respect to the applicable Project and the Restructuring Agreement and Settlement Agreement.

On the Effective Date, the executory contracts and unexpired leases identified on the Schedule of Assumed and Assigned Agreements attached or to be attached to the Disclosure Statement as Exhibit "9" or filed or to be filed as Exhibit "9" shall be deemed assumed and assigned to the applicable Winning Bidder, as specified in the Confirmation Order.  The SunCal Plan Proponents intend to file the Schedule of Assumed and Assigned Agreements with the Court no later than twenty-eight (28) days prior to the Confirmation Hearing.  The Schedule of Assumed and Assigned Agreements also identifies or will identify any amounts that must be paid to cure defaults under the executory contacts and unexpired leases to be assumed and assigned under the

Plan (the "Cure Amount").  If filed earlier, the SunCal Plan Proponents reserve the right to amend the Schedule of Assumed Agreements up to twenty-eight (28) days prior to the Confirmation Hearing (October 24, 2011) to: (a) add any executory contract or unexpired lease and provide for its assumption and assignment; or (b) modify the Cure Amount for any particular executory contract or unexpired lease.  The SunCal Plan Proponents further reserve the right to amend the Schedule of Assumed Agreements to delete any executory contract or unexpired lease and provide for its rejection at any time prior to the Confirmation Hearing.  The SunCal Plan Proponents will provide notice of any amendment to the Schedule of Assumed and Assigned Agreements to any party or parties to the executory contracts or unexpired leases affected by the amendment.  Absent a timely objection as provided below, the Confirmation Order will constitute a Court Order approving the assumption and assignment, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed and Assigned Agreements, and shall constitute a final determination of the Cure Amount and that the estate has shown adequate assurance of future performance.  Furthermore, any Cure Amount ordered by the Court, through entry of the Confirmation Order, and paid shall be deemed to satisfy any and all defaults arising from, out of or related to the executory contract of unexpired lease, including any tort claims that were or could be asserted by the non-debtor party to the contract or lease on or prior to the entry of the Confirmation Order, and all actual or pecuniary losses that have resulted from such defaults.

If you are a party to an executory contract or unexpired lease to be assumed and assigned and you object to the assumption and assignment of your lease or contract and/or you dispute the Cure Amount related to your lease or contract, then you must File and serve upon counsels for the SunCal Plan Proponents (at the address on the upper left hand corner of the caption page) a written objection by fourteen days before the Confirmation Hearing.  An objection to the Cure Amount must also set forth the amount you contend to be the correct Cure Amount and contain evidence to support such amount.  Failure to timely File an objection as provided herein shall be deemed consent to the proposed assumption and assignment and to the Cure Amount and a waiver of any and all rights to challenge such assumption and assignment and the Cure Amount.

1    With respect to each executory contract and unexpired lease identified on the Schedule of

2  Assumed and Assigned Agreements, if no dispute arises regarding the Cure Amount, adequate

3  assurances, or some other matter related to the assumption of the executory contact or unexpired

4  lease, then the Cure Amount set forth in the schedule of Assumed and Assigned Agreements shall

5  be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably

6  practicable thereafter.  If a dispute arises regarding (a) whether the proposed assignee has provided

7  adequate assurance of future performance of an executory contract or unexpired lease to be

8  assumed, or (b) any other matter pertaining to a proposed assumption and assignment, the Cure

9  Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or

10  (2) within thirty (30) days after entry of a Final order resolving the dispute and approving the

11  assumption and assignment; provided, however, if a dispute arises regarding any of the foregoing,

12  the SunCal Plan Proponents reserve, for themselves and the Plan Trustee, the right to completely

13  forego assumption and assignment of and, instead, reject the subject executory contract or

14  unexpired lease.

15    If a party to an executory contract or unexpired lease identified on the Schedule of

16  Assumed and Assigned Agreements Files an objection disputing the Cure Amount, then the

17  SunCal Plan Proponents may amend the Schedule of Assumed and Assigned Agreements at any

18  time prior to the Confirmation Hearing to delete the subject executory contract or unexpired lease

19  and provide for its rejection.  Executory contracts or unexpired leases not so deleted shall be

20  conditionally assumed, subject to the SunCal Plan Proponents' and/or the Plan Trustee's right to

21  file a Motion to determine the appropriate Cure Amount up to the first (1st) Business Day that is at

22  least sixty (60) days following the Effective Date.  The SunCal Plan Proponents and/or the Plan

23  Trustee will serve any such Motion on the party to the executory contract or unexpired lease

24  affected by the Motion (or its attorneys, if any).  If the SunCal Plan Proponents and Plan Trustee

25  does not file a Motion to determine the appropriate Cure Amount, then the executory contract or

26  unexpired lease shall be assumed and assigned, as of the Effective Date, and the Cure Amount

27  shall be the alternative Cure Amount asserted by the non-debtor party to the subject executory

28

1  contract or unexpired lease in its objection to the Plan.  The Cure Amount shall be paid as soon as

2  reasonably practicable following the expiration of the 60-day deadline.

3       If the SunCal Plan Proponents or the Plan Trustee files a Motion to determine the

4  appropriate Cure Amount, then the SunCal Plan Proponents and/or Plan Trust shall have the right

5  to amend the Schedule of Assume and Assigned Agreements to completely forego assumption and

6  assignment of and, instead, reject the subject executory contract or unexpired lease up to the first

7  (1st) Business Day that is at least fifteen (15) days after the entry of an order fixing the Cure

8  Amount.  The SunCal Plan Proponents and/or Plan Trustee will provide notice of any amendment

9  to the Schedule of Assumed and Assigned Agreements to the party to the executory contract or

10  unexpired lease affected by the amendment.  If the SunCal Plan Proponents and/or Plan Trustee

11  has filed such a Motion and does not timely amend the Schedule of Assumed and Assigned

12  Agreements within fifteen (15) days after entry of an order fixing the Cure Amount, then the

13  executory contract or unexpired lease shall be assumed and assigned, as of the Effective Date, and

14  the Cure Amount shall be fixed as the Cure Amount ordered by the Court.  The Cure Amount as

15  soon as reasonably practicable following the expiration of the 15-day deadline.

16      **10.2**  **Executory Contracts to be Rejected.**

17       On the Effective Date, the estate will be deemed to have rejected any and all executory

18  contacts and unexpired leases <u>not</u> identified on the Schedule of Assumed and Assigned

19  Agreements attached or to be attached to the Disclosure Statement as Exhibit "9," or filed or to be

20  filed as Exhibit "9" to the Disclosure Statement.  The Confirmation Order will constitute a Court

21  order approving the rejection, as of the Effective Date, of such executory contacts and unexpired

22  leases.  Any Claim for damages arising from the rejection under the Plan of any executory contract

23  or unexpired lease must be filed with the Court and served upon the SunCal Plan Proponents and

24  the Plan Trustee within thirty (30) days of the later of (a) the Confirmation Date, and (b) the Plan

25  Trustee's amendment of the Schedule of Assumed and Assigned Agreements to eliminate the

26  executory contract or unexpired lease.  Any such damage Claims that are not timely filed and

27  served will be forever barred and unenforceable against the applicable Debtors, the Estates, the

28  Plan Trustee, the Plan Trust, and their respective property.  Persons holding these Claims who fail

1  to timely file claims will be barred from receiving any Distributions under the Plan on account of

2  their rejection damage Claims.

3        If you are a party to a lease or contract to be rejected and you object to the rejection of your

4  lease or contract, then you must file and serve your objection by fourteen days before the

5  Confirmation Hearing.

6                                          **XI.**

7                          **LIMITATION OF LIABILITY**

8        **11.1    No Liability for Solicitation or Participation.**

9        As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

10  rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

11  offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

12  the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

13  violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

14  rejections of the Plan or the offer, issuance, sale, or purchase of securities.

15                                         **XII.**

16                      **CONDITIONS TO CONFIRMATION AND**

17                       **EFFECTIVENESS OF THE PLAN**

18        **12.1    Conditions Precedent to Plan Confirmation.**

19        The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

20  have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

21  Proponents.

22        **12.2    Conditions Precedent to Plan Effectiveness.**

23        The conditions precedent to the effectiveness of the Plan and the occurrence of the

24  Effective Date is that the Confirmation Order shall be a Final Order in form and substance

25  reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material

26  impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities

27  cases. The automatic stay in the Debtors' cases shall continue to be applicable until the Effective

28  Date.

# XIII.

## **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.  The Court will retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising from the administration of the Plan, upon request of a party-in-interest and after notice and a hearing, including, without limitation:

a.      The adjudication of the validity, scope, classification, allowance, and disallowance of any Claim;

b.      The estimation of any Claim;

c.      The allowance or disallowance of Professional-Fee Claims, compensation, or other Administrative Expense Claims;

d.      To her and determine Claims concerning taxes pursuant to Bankruptcy Code §§ 346, 505, 525, and 1146;

e.      To hear and determine any action or proceeding brought under Bankruptcy Code §§108, 510, 543, 544, 545, 547, 548, 549, 550, 551 and 553;

f.      To hear and determine all actions and proceedings which relate to pre-confirmation matters;

g.      To hear and determine any issue relating to the assumption or rejection of executory contracts and unexpired leases;

h.      To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and Bankruptcy Code;

i.      To enforce and interpret the terms of the Plan;

j.      To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

k.      the entry of any order, including injunctions, necessary to enforce title, rights and powers of the Plan Trust, and to impose such limitations, restrictions, terms and conditions on such

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1  title, rights and powers as the Court may deem necessary including, without limitation, any right of

2  the Plan Trust to recover and liquidate assets;

3       l.     To determine the validity, extent and priority of all liens and security interests

4  against property of the Estates or the Plan Trust;

5       m.     To hear and resolve any disputes regarding employment applications and

6  professional fees;

7       n.     To her and determine such matters and make such orders as are consistent with the

8  Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising

9  under or relating to any order entered by the Court in these Cases;

10       o.     The entry of an order concluding and terminating these Cases; and

11       p.     To resolve any disputes as to whether there has been a default under the Plan.

12

13

14  **XIV.**

15  **MODIFICATION OR WITHDRAWAL OF THE PLAN**

16  **14.1**  **Modification of Plan.**

17  At any time prior to confirmation of the Plan, the Plan Proponent may supplement, amend

18  or modify the Plan.  After confirmation of the Plan, the Plan Proponent or Plan Trustee may (x)

19  apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the

20  Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to

21  reconcile inconsistencies in the Plan.

22  **14.2**  **Nonconsensual Confirmation.**

23  In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in

24  accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may

25  request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

26  Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in

27  accordance with Section 1127(a) of the Bankruptcy Code.

28

## XV.

## EFFECT OF CONFIRMATION

### 15.1    Discharge.

Confirmation of the Plan does not discharge the Group I: Trustee Debtors as set forth in Bankruptcy Code §1141.

### 15.2    Revesting of the Assets.

The Assets shall not be vested in the Group I: Trustee Debtors on or following the Effective Date, but shall be vested in the Plan Trust and continue to be subject to the jurisdiction of the Court following confirmation of the Plan until such Assets are distributed to the Holders of Allowed Claims in accordance with the provisions of the Plan.

## XVI.

## MISCELLANEOUS

### 16.1    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

### 16.2    Changes in Rates Subject to Regulatory Commission Approval.

The Debtors are not subject to governmental regulatory commission approval of their rates.

### 16.3    Payment Dates.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

1

**16.4    Headings.**

2     The headings used in the Disclosure Statement and in the Plan are inserted for convenience

3 only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

4 affect the construction of the provisions of the Disclosure Statement or the Plan.

5

**16.5    Other Documents and Actions.**

6     The Plan Trustee may execute such other documents and take such other actions as may be

7 necessary or appropriate to effectuate the transactions contemplated under the Plan.

8

**16.6    Notices.**

9     All notices and requests in connection with the Disclosure Statement and the Plan shall be

10 in writing and shall be hand delivered or sent by mail addressed to:

11

**To the SunCal Plan Proponents**:

12     Bruce V. Cook
      General Counsel

13     Authorized Agent of the SunCal Plan Proponents
      2392 Morse Ave

14     Irvine, CA 92614-6234

15

**With copies to:**

16     Paul J. Couchot
      Winthrop & Couchot Professional Corporation

17     660 Newport Center Drive, Suite 400
      Newport Beach, CA 92660

18

19     Ronald Rus
      Rus Miliband & Smith P.C.

20     2211 Michelson Drive, Seventh Floor
      Irvine, California 92612

21

22     All notices and requests to any Person holding of record any Claim or Interest shall be sent

23 to them at their last known address or to the last known address of their attorney of record.  Any

24 such Person may designate in writing any other address for purposes of this Section, which

25 designation will be effective on receipt.

26

**16.7    Governing Law.**

27     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy

28 Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

-70-

law rules) shall govern the construction and implementation of the Plan and any agreements,

documents, and instruments executed in connection with the Plan, unless otherwise specifically

provided in such agreements, documents, or instruments.

### 16.8    **Binding Effect.**

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of Interests,

and their respective successors and assigns.

### 16.9    **Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

assigns of such entity.

### 16.10    **Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the

Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

consent of the Debtors, have the power to interpret, modify or delete such term or provision (or

portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

with the original purpose of the term or provision held to be invalid, void or unenforceable, and

such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding

any such interpretation, modification or deletion, the remainder of the terms and provisions of the

Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or

deletion.

### 16.11    **No Waiver.**

The failure of the Debtors or any other Person to object to any Claim for purposes of voting

shall not be deemed a waiver of the Trustee Debtors' Committee(s)', the Debtors' or the Plan

Trustee's right to object to or examine such Claim, in whole or in part.

**16.12    Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**16.13    Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**16.14    Post-Confirmation Status Report.**

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**16.15    Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan Trustee reserves the right to object to any motion for conversion or dismissal.  In addition, as set forth in the definition of the Effective Date, the Effective Date may be further extended by order of the Bankruptcy Court after notice and hearing to all parties in interest.  If the Court determines

MAINDOCS-#165262-v4-SunCal_3rd_Am_Group_I_TD_Plan.DOC

1   there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss

2   or convert the Case(s).

3          If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then

4   all property that had been property of the Chapter 11 Estate, and that has not been disbursed

5   pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed

6   upon the revested property, but only to the extent that relief from stay was not previously

7   authorized by the Court during this case.

8          **16.16   Final Decree.**

9          Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

10  Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

11  motion with the Court to obtain a final decree to close the Case of such Debtor.

12  Date:  August 5, 2011

13
                                        By: __/s/ Bruce Cook_____
14                                          Bruce Cook, General Counsel
                                            Authorized Agent for the Voluntary Debtors and
15                                          Acquisitions

16  Submitted By:

17  WINTHROP COUCHOT                        RUS MILIBAND & SMITH
18  PROFESSIONAL CORPORATION                A Professional Corporation

19                                          By:___/s/ Ronald Rus_____
20  By: /s/ Paul J. Couchot_____     Ronald Rus, Esq.
        Paul J. Couchot,                          Joel S. Miliband, Esq.
21  General Insolvency Counsel for          Counsel for SCC Acquisitions, Inc.
    the Voluntary Debtors

22

23

24

25

26

27

28

| In re: | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK VALLEY, LLC, SUNCAL HEARTLAND, LLC, DELTA COVES VENTURE LLC, SUNCAL MARBLEHEAD, LLC AND SUNCAL PSV, LLC [GROUP I: TRUSTEE DEBTORS]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                           **F 9013-3.1**

| In re: | CHAPTER  11 |
| | |
| Debtor(s). | CASE NUMBER |

## NEF SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**

| In re: | CHAPTER   11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                           **F 9013-3.1**

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Robert B Orgel     rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park     ernie.park@bewleylaw.com
- Daryl G Parker     dparker@pszjlaw.com
- Penelope Parmes     pparmes@rutan.com
- Robert J Pfister     rpfister@ktbslaw.com
- Ronald B Pierce     ronald.pierce@sdma.com
- Katherine C Piper     kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey     cmartin@pprlaw.net
- Debra Riley     driley@allenmatkins.com
- James S Riley     tgarza@sierrafunds.com
- Todd C. Ringstad     becky@ringstadlaw.com
- R Grace Rodriguez     ecf@lorgr.com
- Martha E Romero     Romero@mromerolawfirm.com
- Ronald Rus     rrus@rusmiliband.com
- John P Schafer     jschafer@mandersonllp.com
- John E Schreiber     jschreiber@dl.com
- William D Schuster     bills@allieschuster.org
- Christopher P Simon     csimon@crosslaw.com
- Gerald N Sims     jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith     wendy@bindermalter.com
- Steven M Speier     Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)     Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James     ecf@stjames-law.com
- Michael K Sugar     msugar@irell.com
- Cathy Ta     cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem     davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till     jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh     cgunruh@sbcglobal.net
- Annie Verdries     verdries@lbbslaw.com
- Jason Wallach     jwallach@gladstonemichel.com
- Joshua D Wayser     , kim.johnson@kattenlaw.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**