1  PAUL J. COUCHOT -- State Bar No. 131934
   WINTHROP COUCHOT, P.C.
2  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
3  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
4  General Insolvency Counsel for Palmdale Hills
   Property, LLC et. al. (the "Voluntary Debtors")
5
6  RONALD RUS - State Bar No. 67369
   JOEL S. MILIBAND - State Bar No. 77438
7  RUS MILIBAND & SMITH
   A PROFESSIONAL CORPORATION
8  2211 Michelson Drive, Seventh Floor
   Irvine, California 92612
9  Telephone: (949) 752-7100
   Facsimile:  (949) 252-1514
10 Counsel for SCC Acquisitions Inc.

11          **UNITED STATES BANKRUPTCY COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
12               **SANTA ANA DIVISION**

13 In re                                    Case No. 8:08-bk-17206-ES
   PALMDALE HILLS PROPERTY, AND ITS
14 RELATED DEBTORS,                         Jointly Administered With Case Nos.
                                            8:08-bk-17209-ES; 8:08-bk-17240-ES;
15         Joint Administered Debtors and   8:08-bk-17224-ES; 8:08-bk-17242-ES;
           Debtors-in-Possession           8:08-bk-17225-ES; 8:08-bk-17245-ES;
16                                          8:08-bk-17227-ES; 8:08-bk-17246-ES;
   Affects:                                 8:08-bk-17230-ES; 8:08-bk-17231-ES;
17                                          8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ All Debtors                            8:08-bk-17249-ES; 8:08-bk-17573-ES;
18 ☐ Palmdale Hills Property, LLC           8:08-bk-17574 ES; 8:08-bk-17575-ES;
                                            8:08-bk-17404-ES; 8:08-bk-17407-ES;
19 ☐ SunCal Beaumont Heights, LLC           8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☐ SCC/Palmdale, LLC                      8:08-bk-17458-ES; 8:08-bk-17465-ES;
20 ☐ SunCal Johannson Ranch, LLC            8:08-bk-17470-ES; 8:08-bk-17472-ES;
                                            and 8:08-bk-17588-ES
21 ☐ SunCal Summit Valley, LLC
   ☐ SunCal Emerald Meadows LLC             Chapter 11 Proceedings
22 ☐ SunCal Bickford Ranch, LLC
                                            **THIRD AMENDED CHAPTER 11 PLAN**
23 ☐ Acton Estates, LLC                     **FILED BY SUNCAL PLAN PROPONENTS**
   ☐ Seven Brothers LLC                     **IN THE CHAPTER 11 CASE OF SUNCAL**
24 ☐ SJD Partners, Ltd.                     **CENTURY CITY, LLC**
   ☐ SJD Development Corp.
25 ☐ Kirby Estates, LLC                     <u>**Confirmation Hearing**</u>
                                            Date:      October 24, 2011
26 ☐ SunCal Communities I, LLC              Time:      9:30 a.m.
   ☐ SunCal Communities III, LLC            Place:     Courtroom 5A
27 ☐ SCC Communities LLC
   ☐ North Orange Del Rio Land, LLC
28 ☐ Tesoro SF LLC

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ................................................................................... 2

II.     DEFINITIONS AND RULES OF INTERPRETATION ........................................ 2
  2.1    Definitions .................................................................................. 2
  2.2    Rules of Construction .................................................................. 16
  2.3    Exhibits ..................................................................................... 17

III.    TREATMENT OF UNCLASSIFIED CLAIMS ................................................. 17
  3.1    Introduction ................................................................................ 17
  3.2    Treatment of Allowed Administrative Claims ................................. 17
  3.3    Administrative Claims Bar Date .................................................... 18
  3.4    Treatment of Unsecured Tax Claims .............................................. 18

IV.     CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 19

V.      THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
        AND INTERESTS ................................................................................. 20
  5.1    The Plan's Treatment of Holders of Priority Claims Against the Debtor
         (Class 1.1)    ........................................................................ 20
  5.2    The Plan's Treatment of Holders of Allowed General
         Unsecured Claims Against the Debtor(Class 2.1) ........................... 20
  5.3    The Plan's Treatment of Holders of Allowed Interests
         Against the Debtor (Class 3.1)..................................................... 21

VI.     ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 21
  6.1    Introduction ................................................................................ 21
  6.2    Who May Object to Confirmation of the Plan ................................ 21
  6.3    Who May Vote to Accept/Reject the Plan ..................................... 22
  6.4    What Is an Allowed Claim/Interest ............................................... 22
  6.5    What Is an Impaired Class ........................................................... 22
  6.6    Who Is Not Entitled to Vote ........................................................ 22
  6.7    Who Can Vote in More than One Class........................................... 23
  6.8    Votes Necessary for a Class to Accept the Plan .............................. 23
  6.9    Treatment of Nonaccepting Classes............................................... 23
  6.10   Request for Confirmation Despite Nonacceptance by
         Impaired Class(es)...................................................................... 23

VII.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ............... 24
  7.1    Removal of Chapter 11 Trustee ................................................... 24
  7.2    Establishment and Operations of the Plan Trust............................ 24
  7.3    Preservation and Pursuit of Litigation Claims and Recovery for the
         Plan Trust .................................................................................. 24
  7.4    Payment of Plan Trust Expenses.................................................... 25
  7.5    The Plan Trust Distribution System............................................... 26
  7.6    The Plan Trustee ......................................................................... 26

# TABLE OF CONTENTS

### (Continued)

| | | PAGE |
|---|---|---|
| 7.7 | The Plan Trust Beneficiaries | 30 |
| 7.8 | No Payment of Transfer-Related Fees to the United States Trustee | 30 |
| 7.9 | No Payment of Transfer-Related Fees to the Plan Trustee | 30 |
| 7.10 | Books and Records of Trust | 31 |
| 7.11 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 31 |
| 7.12 | Termination of the Trust | 32 |
| 7.13 | Exemption from Certain Transfer Taxes | 32 |
| 7.14 | Tax Consequences of the Plan | 32 |
| 7.15 | The Trustee Debtors' Committee | 33 |
| VIII. | DISTRIBUTIONS | 34 |
| 8.1 | Distribution Agent | 34 |
| 8.2 | Distributions | 34 |
| 8.3 | Old Instruments and Securities | 34 |
| IX. | OBJECTION TO CLAIMS AND DISPUTED CLAIMS | 36 |
| 9.1 | Standing for Objections to Claims | 36 |
| 9.2 | Treatment of Disputed Claims and Disputed Liens | 36 |
| X. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 37 |
| 10.1 | Executory Contracts to be Rejected | 37 |
| 10.2 | Bar Date for Rejection Damages | 37 |
| XI. | LIMITATION OF LIABILITY | 37 |
| 11.1 | No Liability for Solicitation or Participation | 37 |
| XII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 38 |
| 12.1 | Conditions Precedent to Plan Confirmation | 38 |
| 12.2 | Conditions Precedent to Plan Effectiveness | 38 |
| XIII. | RETENTION OF JURISDICTION | 38 |
| XIV. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 38 |
| 14.1 | Modification of Plan | 38 |
| 14.2 | Nonconsensual Confirmation | 38 |
| XV. | MISCELLANEOUS | 39 |
| 15.1 | Payment of Statutory Fees | 39 |
| 15.2 | Changes in Rates Subject to Regulatory Commission Approval | 39 |
| 15.3 | Payment Dates | 39 |
| 15.4 | Headings | 39 |
| 15.5 | Other Documents and Actions | 39 |

# TABLE OF CONTENTS

### (Continued)

|  |  | **PAGE** |
|---|---|---|
| 15.6 | Notices | 39 |
| 15.7 | Governing Law | 40 |
| 15.8 | Binding Effect | 40 |
| 15.9 | Successors and Assigns | 40 |
| 15.10 | Severability of Plan Provisions | 41 |
| 15.11 | No Waiver | 41 |
| 15.12 | Inconsistencies | 41 |
| 15.13 | Exemption from Certain Transfer Taxes and Recording Fees | 41 |
| 15.14 | Post-Confirmation Status Report | |
| 15.15 | Post-Confirmation Conversion/Dismissal | |
| 15.16 | Final Decree | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAINDOCS-#165263-v2-SunCal_3rd_Am_CC_Plan.DOC

# I.

## INTRODUCTION

This Plan[1] is proposed respectively by, and the accompanying Disclosure Statement is filed jointly by, Acquisitions and the Voluntary Debtors, as the SunCal Plan Proponents in the Debtor's Chapter 11 Case.  In addition to being one of the SunCal Plan Proponents, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for the Plan.

In summary, the Plan provides for the prosecution and recovery of the proceeds of the Lehman Preference Claim against Lehman ALI and the Distribution of the Available Cash to Creditors holding Allowed Claims, in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.  The Plan also provides for the potential prosecution and potential recovery of the Lehman Preference Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation Recoveries.

The Plan is accompanied by the Disclosure Statement.  The Disclosure Statement has been approved by the Court.  It is being provided along with the Plan in order to provide you with critical information about the Debtor and to help you understand the Plan.

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

### 2.1    Definitions.

The following defined terms are used in the Plan.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    10,000 Santa Monica Project.  The Project formerly owned by the Debtor, located in the City of Century City, California, which was sold to Danske Bank pursuant to a Final Order of the Bankruptcy Court for complete forgiveness of the SunCal Century City Loan Agreement and $5.3 million, as more particularly described herein.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

2.1.2    <u>Acquisitions</u>.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a Creditor of the Debtor, the SunCal Plan Proponents, the Distribution Agent and the Plan Trustee.

2.1.3    <u>Administrative Claim(s)</u>.  Any Claim against the Debtor or its Estate incurred after the applicable Petition Date for the Debtor but before the Effective Date, for any cost or expense of administration of the Case of the Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of  the Debtor under section 1930 of Title 28 of the United States Code.

2.1.4    <u>Administrative Claims Bar Date</u>.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date.

2.1.5    <u>Affiliate</u>.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.6    <u>Allowed</u>.  When used to describe Claim(s) or Interest(s) against the Debtor, such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.7    <u>Allowed Amount</u> shall mean:

A.    With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Debtor and is not otherwise subject to an

Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no Distribution shall be made on account of any such Administrative Claim;

B.    with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtor's Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtor's Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no Distribution shall be made on account of any such Claim; and

C.    with respect to any Interest, (i) the amount provided by or established in the records of the Debtor at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtor; or (ii) the

1    amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such

2    Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows;

3    or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

4              2.1.8    Allowed Claim.  Except as otherwise provided in the Plan (including with

5    respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a

6    Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

7              2.1.9    Allowed Interest.  Any Interest to the extent, and only to the extent, of the

8    Allowed Amount of such Interest.

9              2.1.10    Allowed Secured Claims.  All or a portion of a Secured Claim that is an

10    Allowed Claim against the Debtor.

11              2.1.11    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is an

12    Allowed Claim against the Debtor.

13              2.1.12    Assets.  All assets that are property of the Debtor(s) pursuant to Bankruptcy

14    Code Section 541.

15              2.1.13    Available Cash.  The Debtor's Cash deposited into the applicable

16    Distribution Account(s) on or after the Effective Date that is available for making Distributions

17    under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims.

18    The Available Cash shall consist of the Debtor's cash on hand as of the Effective Date.  All

19    Available Cash shall be deposited into the applicable Distribution Account(s).

20              2.1.14    Avoidance Actions.  All Claims and defenses to Claims accruing to the

21    Debtor and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548,

22    549, 550, or 551, including but not limited to the Lehman Preference Claim and the Potential

23    SunCal Preference Claim.

24              2.1.15    Bankruptcy Code.  The United States Bankruptcy Code.

25              2.1.16    Bankruptcy Court.  The United States Bankruptcy Court for the Central

26    District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

27    reference made pursuant to Section 157 of title 28 of the United States Code, the United States

28    District Court for the Central District of California; or, in the event such courts cease to exercise

jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.17  Bankruptcy Rules.  Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.18  Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.19  Business Day.  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.20  Case.  The Chapter 11 case of the Debtor pending before the Bankruptcy Court.

2.1.21  Cash.  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

2.1.22  Chapter 11 Trustee.  Steven M. Speier, the duly appointed trustee of the Trustee Debtors in their pending Chapter 11 Cases.

2.1.23  Claim.  This term shall have the broadest possible meaning under Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.24  Claims Bar Date.  For any Claim, March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy

Court in the Debtor's Case, except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

2.1.25  <u>Claims Objection Deadline</u>.  The  first business day following the sixtieth (60th) day after the Effective Date.

2.1.26  <u>Class</u>.  Each group of Claims or Interests classified in Article IV of the Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.27  <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

2.1.28  <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code with respect to Plan.

2.1.29  <u>Creditor</u>.  Any Person who is the Holder of a Claim against the Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.30  <u>Debtor</u>.  SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

2.1.31  <u>Debtors</u>.  Collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

1          2.1.32  <u>Debtor(s)- in-Possession</u>.  The Voluntary Debtors in their capacity as

2  representatives of their respective Estates in their respective Chapter 11 Cases.

3          2.1.33  <u>Disclosure Statement</u>.  The document accompanying the Plan for the Debtor

4  that is entitled "Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan

5  Proponents In The Chapter 11 Case Of SunCal Century City" and with all accompanying exhibits.

6          2.1.34  <u>Disputed Claim(s)</u>.  All or any part of a Claim other than any Allowed

7  Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed

8  with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim

9  is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount,

10  (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a

11  Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request

12  for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable

13  order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection

14  Deadline, which Adversary Proceeding, objection, or request for estimation has not been

15  dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a

16  "Disputed Claim" pursuant to the Plan.

17          2.1.35  <u>Disputed Lien(s)</u>.  An asserted lien(s) against Assets of the Debtor that is

18  either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or

19  subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However,

20  pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not

21  an allowed secured claim due only to the failure of any entity to file a proof of such claim under

22  section 501 of this title."

23          2.1.36  <u>Disputed Secured Claim(s)</u>. That part of a Disputed Claim against the

24  Debtor that is a Secured Claim.

25          2.1.37  <u>Distribution(s)</u>.  Payments to Holders of Allowed Claims provided for under

26  the Plan.

27          2.1.38  <u>Distribution Agent</u>.  The entity that is responsible for making Distributions

28  under the Plan, which shall be Acquisitions.

1    2.1.39  <u>Distribution Account</u>.  A separate account to be established by the Plan

2  Trustee at an FDIC insured bank into which the Debtor's Available Cash shall be deposited and all

3  Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to

4  the Debtor shall be deposited.

5    2.1.40  <u>Distribution Date</u>.  With respect to any Allowed Claim or Allowed Interest,

6  the date on which a Distribution is required to be made under the Plan.

7    2.1.41  <u>Effective Date</u>. A date selected by the SunCal Plan Proponents that is not

8  later than the thirtieth (30th) calendar day after the Confirmation Date of the Plan, provided that

9  there is no stay pending appeal of the Confirmation Order, in which case the Effective Date shall

10  be tolled until the dissolution of such stay.  The Effective Date may be extended by the Bankruptcy

11  Court after notice and hearing to all parties in interest.

12    2.1.42  <u>Estate</u>.  The bankruptcy estate of the Debtor created pursuant to Section 541

13  of the Bankruptcy Code.

14    2.1.43  <u>Fee Applications</u>.  Applications of Professional Persons under Sections 330,

15  331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses

16  in the Debtor Case.

17    2.1.44  <u>Fee Claim</u>.  A Claim under Sections 330 or 503 of the Bankruptcy Code for

18  allowance of compensation and reimbursement of expenses in the Debtor Case.

19    2.1.45  <u>Filed</u>.  Delivered to, received by and entered upon the legal docket by the

20  Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

21    2.1.46  <u>Final Order</u>.  A judgment, order, ruling or other decree issued and entered by

22  the Bankruptcy Court that has not been reversed, stayed, modified or amended.

23    2.1.47  <u>General Unsecured Claim</u>.  A Claim against the Debtor that is not (a) a

24  Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

25    2.1.48  <u>Holder</u>.  The beneficial owner of any Claim or Interest against the Debtor.

26    2.1.49  <u>Insider</u>.  The term shall have the broadest meaning possible under

27  Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

28  Insiders of such Affiliates, including the Lehman Entities.

1    2.1.50  Interest.  Any equity security interest in the Debtor within the meaning, of

2    Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership

3    interest in any of the Debtor, whether in the form of common or preferred stock, stock options,

4    warrants, partnership interests, or membership interests.

5    2.1.51  LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

6    company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

7    in the Bankruptcy Court for the Southern District of New York.

8    2.1.52  LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a bankruptcy

9    proceeding pending in the Bankruptcy Court for the Southern District of New York.

10    2.1.53  Lehman Adversary Proceeding.  The Debtors' pending adversary proceeding

11    against the Lehman Lenders and/or the Lehman Successors asserting various causes of action

12    including equitable subordination, fraudulent inducement, fraudulent conveyances and preferential

13    transfers (including the Lehman Preference Claim).

14    2.1.54  Lehman ALI.  Lehman ALI, Inc.

15    2.1.55  Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and

16    LBHI.

17    2.1.56  Lehman Equity Members.  Lehman Entities that own direct or indirect

18    membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal

19    Marblehead.

20    2.1.57  Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC

21    Holdings.

22    2.1.58  Lehman Preference Claim.  The fourth cause of action in the Lehman

23    Adversary Proceeding seeking to avoid and recover allegedly preferential transfers made by the

24    Debtor to Lehman ALI in the amount of $10,628,948.64.

25    2.1.59  Lehman Representatives.  The individuals that controlled the Lehman

26    Entities.

27

28

2.1.60 <u>Lehman Successor(s)</u>.  Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.61 <u>Litigation Claims</u>.   Any and all interests of the Debtor in any and all Claims, rights, causes of action which have been or may be commenced by the Chapter 11 Trustee and/or the Plan Trust, as the case may be, including, but not limited to the Lehman Preference Claim and the Potential SunCal Preference Claim.

2.1.62 <u>Litigation Recoveries</u>.  Any Cash or other property received by the Chapter 11 Trustee, the Plan Trustee and/or the Plan Trust as the case may be, including but not limited to, the Lehman Preference Claim and the Potential SunCal Preference Claim.

2.1.63 <u>Maximum Distributions</u>.  A Distribution to a Holder of an Allowed General Unsecured Claim against  the Debtor equal to one hundred percent (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the Debtor's Order for Relief Date.

2.1.64 <u>MB Firm</u>.  Miller Barondess, LLP.

2.1.65 <u>Net Litigation Recoveries</u>.  Litigation Recoveries less associated Administrative Claims, Post-Confirmation Expenses and contingency fees incurred in connection with such Litigation Recoveries.

2.1.66 <u>Orders for Relief Date</u>.  The following are dates that orders for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.67    Person.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.68    Petition Dates.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.69    Plan.  The Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponents In The Chapter 11 Case Of SunCal Century City, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.70    Plan Period. The period from the Effective Date to the Plan Termination Date.

1    2.1.71    Plan Reserve.  A reserve in the amount of $300,000 to be established from

2    the Available Cash on the Effective Date.  Up to $200,000 of such reserve shall be used for

3    payment of costs associated with the prosecution of the Lehman Preference Claim and payment of

4    Post Confirmation Expenses and up to $100,000 of such reserve shall be used for payment of

5    Trustee Debtors' Committee's fees and costs associated with objections to Claims and prosecution

6    of the Potential SunCal Preference Claim.

7    2.1.72    Plan Termination Date. The fifth (5th) anniversary date of the Effective

8    Date of the Debtor, unless the Plan elects an earlier date.

9    2.1.73    Plan Sponsor.  The entity that has committed to cause and/or arrange the

10    funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan

11    Sponsor is Acquisitions.

12    2.1.74    Plan Trust.  A liquidating trust to be established pursuant to Article X of

13    the Plan prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of

14    Allowed Claims against the Debtor as the beneficiaries. The purpose of the Plan Trust will be to

15    liquidate the Debtor's Assets (other than Assets that are excluded by the Plan Trustee on the

16    grounds that they lack value or would be difficult to administer), distribution the Available Cash to

17    Holders of Allowed Claims and to otherwise consummate the Plan.

18    2.1.75    Plan Trust Assets. All assets within the Debtor's Chapter 11 estate.

19    2.1.76    Plan Trust Beneficiaries.   The Plan Trust Beneficiaries are (i) the holders

20    of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be

21    satisfied from Plan Trust Assets in accordance with the terms of the Plan.

22    2.1.77    Plan Trustee. The Person or entity appointed pursuant to the Plan to act as

23    trustee of and to administer the Plan Trust, which shall be Acquisitions.

24    2.1.78    Post-Confirmation Expenses.  The expenses incurred by the Plan Trust

25    and the Plan Trustee, and the fees and expenses incurred by the Trustee Debtors' Committee's

26    professionals and the Plan Trustee's professionals following the Confirmation Date for the purpose

27    of (i) funding the costs of the Lehman Preference Claim; (ii) objecting to and resolving Disputed

28

Claims; (iii) effectuating Distributions under the Plan; and (iv) otherwise consummating the Plan and closing the Debtor's Chapter 11 Case.

2.1.79    Potential SunCal Preference Claim.  Potential preference claims against SunCal Affiliates pursuant to Section 547 of the Bankruptcy Code.

2.1.80    Priority Claim.  Any Claim, other than an Administrative Claim or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

2.1.81    Pro Rata.  Proportionately, so that with respect to any Distribution in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in such Distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

2.1.82    Professional.  A Person or Entity (a) employed by the Debtor, the Trustee Debtors' Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

2.1.83    Professional Fees.  All Allowed Claims for compensation and for reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

2.1.84    Projects.  The Debtors' residential real estate development projects and other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement including the 10,000 Santa Monica Project, which was sold post-petition pursuant to a Final Order of the Bankruptcy Court

2.1.85    SCC LLC.  SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.86    Schedules.  The schedules of assets and liabilities and list of equity security holders Filed by the Debtor, as required by Section 521(1) of the Bankruptcy Code,

1    Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from

2    time to time.

3              2.1.87    Secured Claim.  Any Claim, including interest, fees, costs, and charges to

4    the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

5    unavoidable Lien on the Debtor's Assets.

6              2.1.88    SunCal.  The SunCal Companies, a trade name for Acquisitions and its

7    Affiliates.

8              2.1.89    SunCal Century City.  SunCal Century City, LLC, a Delaware limited

9    liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

10              2.1.90    SunCal Century City Loan Agreement.  A certain Loan Agreement by and

11   between the Debtor, as borrower and Lehman ALI, as agent and sole lender pursuant to which

12   Lehman ALI made a loan in the aggregate maximum principal amount of approximately

13   $120,000,000.  The SunCal Century City Loan Agreement was allegedly secured by a first-priority

14   deed of trust on the 10000 Santa Monica Project.  The SunCal Century City Loan Agreement had

15   an alleged balance due of $120,000,000.00 as of April 1, 2009.  Danske Bank was formerly the

16   Holder of the Century City Loan Agreement and related deed of trust, which has been satisfied in

17   full pursuant to Danske Bank's purchase of the 10000 Santa Monica Project for $5.3 million, less

18   payment of an Unpaid Real Property Tax Claim of $1.6 million.

19              2.1.91    SunCal Management.  SunCal Management, LLC, a Delaware limited

20   liability company, and the former property manager for the Projects, which has been succeed by

21   Argent Management.

22              2.1.92    SunCal Plan Proponents.  The Voluntary Debtors, in their capacity as

23   debtors and debtors in possession in their respective Chapter 11 cases, and Acquisitions as a

24   creditor and party-in-interest, that are proposing the Plan.

25              2.1.93    Tax.  Any tax, charge, fee, levy, impost or other assessment by any

26   federal, state, local or foreign taxing authority, including, without limitation, income, excise,

27   property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

28

estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

2.1.94    Tax Claim.  Any Claim for any Tax to the extent that it is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.1.95    Trustee Debtor(s). The following Debtors, individually or collectively, that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal Torrance, and SunCal Oak Knoll.

2.1.96    Trustee Debtors' Committee.  The Official Committee of Unsecured Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code.

2.1.97    Unsecured Claim. An Unsecured Claim is any Claim that is not an Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

2.1.98    Voluntary Debtor(s).  The following  Chapter 11 debtors and debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio and Tesoro.

**2.2    Rules of Construction.**

For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

contract, instrument, release, indenture, agreement, or other document being in a particular form or

on particular terms and conditions means that such document shall be substantially and materially

in such form or substantially and materially on such terms and conditions; (h) any reference in the

Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

### 2.3    Exhibits.

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

therein.

### III.

### TREATMENT OF UNCLASSIFIED CLAIMS

### 3.1    Introduction.

As required by the Bankruptcy Code, the Plan places Claims and Interests into various

Classes according to their right to priority.  However, certain types of Claims are not classified in

any Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the

Code.  They are not considered impaired and they do not vote on the Plan, because they are

automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal

Plan Proponents have not placed the following Claims in a Class.  The treatment of these

unclassified Claims is as provided below.

### 3.2    Treatment of Allowed Administrative Claims.

The Code requires that all Allowed Administrative Claims be paid on the later of Effective

Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such

1    Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be

2    paid from the applicable Distribution Account(s).

3         Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

4    different treatment and subject to the Administrative Claims Bar Date set forth herein, the

5    Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of

6    (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

7    becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

8    becomes due according to its terms.

9         **3.3    Administrative Claims Bar Date.**

10    All applications for final compensation of Professionals for services rendered and for

11    reimbursement of expenses incurred on or before the Effective Date and all other requests for

12    payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

13    or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

14    obligations and routine post-petition payroll obligations incurred in the ordinary course of the

15    Debtor's post-petition business, for which no bar date shall apply, and (ii) post-petition tax

16    obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

17    upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

18    extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

19    of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

20    is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

21    any party that seeks payment of Administrative Claims that (i) is required to file a request for

22    payment of such Administrative Claims and (ii) does not file such a request by the deadline

23    established herein shall be forever barred from asserting such Administrative Claims against the

24    Debtor, the Plan Trust, their estates, or any of their property.

25         **3.4    Treatment of Unsecured Tax Claims.**

26    Tax Claims are certain unsecured income, employment and other taxes described by Code

27    Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

28    receive the present value of such Claim in deferred cash payments, over a period not exceeding

five (5) years from the petition date and that such treatment not be less favorable than the treatment

accorded to non priority unsecured creditors.

At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

each three-month period following the Effective Date, during a period not to exceed five years

after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

favorable terms to the Debtor(or the Plan Trust after the Effective Date) than the treatment set forth

in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

**IV.**

**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

As required by the Code, the Plan places Claims and Interests into various Classes

according to their right to priority and other relative rights.  The Plan specifies whether each Class

of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class

will receive.  The table below lists the Classes of Claims established under the Plan and states

whether each particular Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired"

if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of

Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy

Code.

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.** |
| Class 1.1 | The Holders of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted against the Debtor. | Various Filed and Scheduled Claims in the Estimated Amount of $0 |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 2** | **Claimant** | **ScheduledClaim Nos.** |
| Class 2.1 | Claimants holding Allowed Unsecured Claims against the Debtor. | Various Filed and Scheduled in the Estimated Amount of $4,390,043 |

| CLASSIFICATION OF INTEREST HOLDERS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 3** | **Holder** | **Amount** |
| Class 3.1 | Holders of Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC (50%) and LBREP II/SunCal Land Fund Member LLC (50%). | 50% Each |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1**     **The Plan's Treatment of Holders of Priority Claims Against the Debtor (Class 1.1)**.

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

       A.      The Holder(s) are unimpaired under the Plan; and

       B.      The Holder(s) shall be paid in full from the Distribution Account on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Priority Claim, (c) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (d) the date that any Disputed Administrative and Priority Claims are all resolved by Final Orders of the Bankruptcy Court..

**5.2**     **The Plan's Treatment of Holders of Allowed General Unsecured Claims Against the Debtor (Class 2.1).**

The rights of Holders of Allowed Class 2.1 Claims under the Plan are impaired under the Plan. Under the Plan, each claimant shall receive an initial Distribution ("Initial Distribution") from the Available Cash constituting a pro-rata share of any Available Cash, after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

1    The Initial Distribution shall be made on the later of the Distribution Date or within thirty days

2    after the resolution of all Disputed Administrative Claims and Priority Claims.

3        Thereafter, the Holders of Allowed Class 2.1 Claims shall receive potential supplemental

4    Distributions (the "Supplemental Distributions") consisting of their pro-rata share of any Net

5    Litigation Recoveries, if any, until such Holders have received a Maximum Distribution.

6    **5.3    The Plan's Treatment of Holders of Allowed Interests Against the Debtor**

7        **(Class 3.1).**

8        The Interests of the Holders in Class 3.1 are impaired under the Plan.  All such Interests

9    shall be cancelled as of the Effective Date and no Distribution shall be made to these Holders on

10   account of such Interest(s).

11                                **VI.**

12                **ACCEPTANCE OR REJECTION OF THE PLAN**

13   **6.1    Introduction.**

14       PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

15   SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

16   CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

17   discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

18   which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtor cannot

19   represent that the discussion contained below is a complete summary of the law on this topic.

20       Many requirements must be met before the Court can confirm the Plan.  Some of the

21   requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

22   the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

23   whether the Plan is feasible.  The requirements described herein are not the only requirements for

24   confirmation.

25   **6.2    Who May Object to Confirmation of the Plan.**

26       Any party in interest may object to the confirmation of the Plan, but as explained below not

27   everyone is entitled to vote to accept or reject the Plan.

28

### 6.3 Who May Vote to Accept/Reject the Plan.

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected"). The votes will be tabulated on a Debtor by Debtor basis.

### 6.4 What Is an Allowed Claim/Interest.

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

### 6.5 What Is an Impaired Class.

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the Debtor believes that all Classes, except Class 1.1, are impaired.

### 6.6 Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan. The Debtor believes that all Classes are entitled to vote except Class 1.1. This class is not impaired under the Plan and consequently is not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Class 3.1 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

1    EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

2    HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

3    **6.7    Who Can Vote in More than One Class.**

4    A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

5    Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

6    the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

7    otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

8    Subordinated Note Claims), and may vote the Claims held in each Class.

9    **6.8    Votes Necessary for a Class to Accept the Plan.**

10    A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

11    number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

12    accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

13    two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

14    the Plan.

15    **6.9    Treatment of Nonaccepting Classes.**

16    As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

17    Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

18    required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by

19    which a plan may be confirmed and become binding on non-accepting Classes is commonly

20    referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

21    nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

22    requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

23    equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

24    11 U.S.C. § 1129(b) and applicable case law.

25    **6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

26    The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

27    impaired Class if such Class does not vote to accept the Plan.

28

1

2

3                                          VII.

4          **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

5          This Section is intended to explain how the Plan Trustee intends to effectuate the

6  liquidation contemplated by the Plan, and how the Trustee intends to fund the obligations to

7  Holders of Allowed Claims as provided in the Plan.  This section provides information regarding

8  the funding sources for Plan obligations, the establishment of the Plan Trust, and other material

9  issues bearing upon performance of the Plan.

10         **7.1     Removal of Chapter 11 Trustee**.

11         As of the Effective Date, the appointment of the Chapter 11 Trustee in the Debtor's Case

12  shall terminate, and possession and control over all property within this estate shall pass to the Plan

13  Trust.

14

15         **7.2     Establishment and Operations of the Plan Trust**.

16         The Plan Trust shall be established and shall become effective on the Effective Date.  The

17  Plan Trust is created pursuant to the Plan and the Confirmation Order, and separate trust

18  instrument shall be required.  The primary purpose of the Plan Trust is the liquidation and

19  distribution of the Assets transferred to it, with no objective to continue or engage in the conduct of

20  a trade or business, except to the extent reasonably necessary to, and consistent with, the

21  liquidating purpose of the Plan Trust.  The Plan Trust shall hold and administer the Assets of the

22  Debtor and the Distribution in accordance with the terms of the Plan.

23         **7.3     Preservation and Pursuit of Litigation Claims and Recovery for the Plan
                     Trust**.

24

25         On the Effective Date, title to and possession of all property of the Debtor shall be deemed

26  transferred and delivered to the Plan Trust, without further act or action under any applicable

27  agreement, law, regulation, order or rule of law.

28         Pursuant to Section 1123(b)(3) of the Bankruptcy Code, all litigation Claims shall be a part

   of the Plan Trust, whether or not pending on the Effective Date.  Unless a Litigation Claim is

                                          -24-

1    expressly waived, relinquished, released, sold, compromised or settled in the Plan or in a Final

2    Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may

3    pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee shall not settle or

4    abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior

5    written notice and opportunity to object to the proposed action.  Any disputes concerning the

6    settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

7    resolution on no less than ten (10) days' notice to the objecting party.

8         The SunCal Plan Proponents shall have the right to move forward with the Lehman

9    Preference Claim in the event the SunCal Plan Proponents retain counsel, on a contingency fee

10   basis, to prosecute the Lehman Preference Claim.  The costs associated with the prosecution of

11   such litigation shall be paid from the Plan Reserve.  Based on the contingency fee structure of any

12   such litigation, Creditors may receive higher recoveries in the event that the SunCal Plan

13   Proponents are successful in such litigation.

14        The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

15   monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

16   in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

17   that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

18   Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs

19   incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors'

20   Committee shall receive notice of and the right to review all payments and Distributions.

21        All Litigation Recoveries realized or obtained by the Plan Trustee or the Trustee Debtors'

22   Committee shall be promptly deposited into the applicable Distribution Account(s).  Except as

23   otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free

24   and clear of all Claims and Liens and shall only be expended in accordance with the provisions of

25   the Plan.

26

27

28

**7.4    Payment of Plan Trust Expenses**.

The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be paid, or adequate reserves shall be created for the payment of such expenses, prior to any distribution to the Plan Trust Beneficiaries.

**7.5    The Plan Trust Distribution System.**

The Plan Trustee shall establish a separate "Distribution Account" for the Debtor at an FDIC insured bank. The Debtor's Available Cash, whether on hand as of the Effective Date or received thereafter, shall be deposited into the Debtor's Distribution Account.  These funds will then be used to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons dealing with the Plan Trustee, or seeking to assert Claims against the Debtor, the Estate or the Plan Trust, shall look only to property of the Debtor, the Estate or the Plan Trust to satisfy any liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.

**7.6    The Plan Trustee**.

**7.6.1    Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The appointment of the Plan Trustee shall be effective as of the Effective Date.

**7.6.2    Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan Trustee.

**7.6.3    Powers and Duties**.  On the Effective Date, the Plan Trustee shall have the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan Trustee shall be authorized, empowered and directed to take all actions necessary to comply with

1  the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without

2  limitation to:

3         i.     employ, retain, and replace one or more attorneys, accountants,

4  auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert

5  witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under

6  the Plan;

7         ii.    control and effectuate the Claims reconciliation process, including to

8  object to, seek to subordinate, compromise or settle any and all Claims against the Debtors

9  pursuant to the terms of the Plan;

10         iii.    open, maintain and administer bank accounts as necessary to

11  discharge the duties of the Plan Trustee under the Plan;

12         iv.    make Distributions to the Holders of Allowed Claims in accordance

13  with the Plan;

14         v.     retain professionals to assist in performing his or her duties under the

15  Plan;

16         vi.    pay reasonable and necessary professional fees, costs, and expenses;

17         vii.    investigate, analyze, commence, prosecute, litigate, compromise,

18  settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the

19  benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other

20  necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all

21  Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests

22  of the Plan Trust;

23         viii.    administer, sell, liquidate, or otherwise dispose of the Assets in

24  accordance with the terms of the Plan;

25         ix.    incur and pay reasonable and necessary expenses in connection with

26  the performance of the Plan Trustee's duties under the Plan;

27         x.     represent the Estates before the Court and other courts of competent

28  jurisdiction with respect to matters concerning the Plan Trust;

xi.     seek the examination of any entity under the subject to the provisions of Bankruptcy Rule 2004;

xii.     comply with applicable orders of the court and any other court of competent jurisdiction over the matters set forth in the Plan;

xiii.     comply with all applicable laws and regulations concerning the matters set forth in the Plan;

xiv.     exercise such other powers as may be vested in the Plan Trust pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

xv.     execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Plan Trust;

xvi.     (1) seek a determination of tax liability under §505 of the code, (2) pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on behalf of the Plan Trust, and 95) pay taxes, if any, payable by the Plan Trust; and

xvii.     stand in the shoes of the Debtor for all purposes.

**7.6.4**     <u>**Retention of Professionals and Compensation Procedure.**</u>  On and after the Effective Date, the Plan Trustee may, without further application or Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out the provisions of the Plan.  The Plan Trustee may employ such professionals on any reasonable terms and conditions of employment to be determined by the Plan Trustee.  For the services performed on and after the Effective Date, the professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan Trustee.

**7.6.5**     <u>**Fees and Expenses.**</u>  Acquisitions shall not receive any compensation for the services it performs as the Plan Trustee.  The Plan Trustee Professionals shall be entitled to reasonable compensation for their services, and reimbursement of expenses.  The costs and

1    expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee

2    Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order,

3    notice or application to the Court, the reasonable fees and expenses of the Plan Trustee

4    Professionals, as necessary to discharge the Plan Trustee's duties under the Plan.  The Plan Trustee

5    shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the

6    Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any

7    Distributions under the Plan.

8            **7.6.6**    **Limitation of Liability and Indemnification.**  The Debtor, the Trustee

9    Debtors' Committee, the Plan Sponsor, the SunCal Plan Proponents, the Plan Trustee, their

10    Professionals, nor any of their respective members, officers, directors, shareholders, employees, or

11    agents (the "Indemnified Parties") shall be liable (a) for any loss or damages by reason of any

12    action taken or omitted by him or her, except in the case of fraud, willful misconduct, bad faith, or

13    gross negligence, (b) for any act or omission made in reliance upon the Debtors' books and records

14    or upon information or advice given to the Plan Trustee by his or her professionals, or (c) for any

15    action taken or omission made in connection with or related to the negotiations, formulation, or

16    preparation of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the

17    confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, the

18    Cases, or the property to be distributed under the Plan, to the fullest extent permitted by applicable

19    statute and case law.  Except as otherwise provided in this Plan, the Plan Trustee shall rely and

20    shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report,

21    notice, consent, or other document believed by him or her to be genuine and to have been signed

22    by the proper party or parties.

23            The Indemnified Parties shall be indemnified and receive reimbursement from and against

24    any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature,

25    which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan

26    Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of

27    services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable

28    law, except if such loss, liability, expense or damage is finally determined by a court of competent

1  jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct,

2  bad faith, or gross negligence.  The amounts necessary for such indemnification and

3  reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee

4  shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan

5  Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or

6  liability.  This indemnification shall survive the dissolution, resignation or removal, as may be

7  applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit

8  of the Plan Trustee's and the Indemnified Person's heirs and assigns.

9       **7.7     The Plan Trust Beneficiaries.**

10           The Holders of Allowed Claims under the Plan, or any successors to such Holders'

11  Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust

12  which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the

13  times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be

14  evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except

15  as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a

16  beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan

17  Trust Assets or to any right to call for a partition or division of such assets or to require an

18  accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner

19  provided in the Plan.

20           The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities"

21  under applicable law.  However, such rights have not been defined as "securities" under the Plan

22  because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

23  arising under the Plan Trust are deemed to be "securities," the exemption from registration under

24  §1145 of the Bankruptcy code is intended to be applicable to such securities.

25       **7.8     No Payment of Transfer-Related Fees to the United States Trustee.**

26           The Plan Trust shall not be required to pay any fees to the United States Trustee based on

27  any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

28

**7.9**    **No Payment of Transfer-Related Fees to the Plan Trustee**.

The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any transfers of Plan Trust Assets from the Debtor to the Plan Trust, or from the Plan Trust.

**7.10**    **Books and Records of Trust**.

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence, provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for such books and records. The Plan Trust's books and records shall be open to inspection at all reasonable times, upon written request by the Trustee Debtors' Committee.

**7.11**    **Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial Interests**.

For all United States federal income tax purposes, the transfers by the Debtor shall be treated by the Debtor, their estates, the Plan Trust and the Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Debtor to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Assets consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use such valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of the Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide that the Plan Trust will determine the fair market value of the Plan Trust Assets within thirty (30) days after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively deemed to agree to use such valuations for all purposes, including, without limitation, in computing any gain recognized upon the exchange of

such holder's claim for purposes of determining any United States Federal income tax, and shall be required to include those items of income, deductions and tax credits that are attributable to its the Beneficial Interest in computing its taxable income.

**7.12    Termination of the Trust.**

The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust Assets has been liquidated, all proceeds have been converted to cash or distributed in kind, all the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust Trustee is obligated to make Distributions on have been paid, all distributions to be made with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party have been concluded by dismissal or an order issued by the court in which such litigation is pending and such order has become "final" (consistent with the definition of Final Order in the Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b) the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional period as is reasonably necessary to conclude the liquidation and Distributions, not to exceed a total of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may consider and rule on the request within six (6) months prior to the expiration of the initial five-year term.

**7.13    Exemption from Certain Transfer Taxes.**

In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and agents shall forego the assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**7.14    Tax Consequence of The Plan.**

The implementation of the Plan may have federal, state and local tax consequences to the Debtor, Creditors and Interest Holders.  No tax opinion has been sought or will be obtained with

respect to any tax consequences of the Plan. The Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

### 7.15    The Trustee Debtors' Committee.

On the Effective Date, the Trustee Debtors' Committee shall continue to serve the Debtor as Trustee Debtors' Committee to the Debtor, subject to the following:

#### 7.15.1    Duties and Powers.

The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the Plan.  Such compensation shall be paid from the Plan Reserve.  However, the fees incurred arising from the Potential SunCal Preference Claim shall only be paid on a contingency fee basis.

#### 7.15.2    Dissolution of The Trustee Debtors' Committee.

The Trustee Debtors' Committee shall be dissolved upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11

1    Cases.  On dissolution, the Trustee Debtors' Committee shall have no other or further obligations

2    or responsibilities on behalf of the Plan Trust.

3                                                        **VIII.**

4                                            **DISTRIBUTIONS**

5        **8.1        Distribution Agent.**

6            Acquisitions shall serve as the Distribution Agent for Distributions due under the Plan.

7    The Distribution Agent may employ one or more sub agents on such terms and conditions as it may

8    agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

9    Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in

10   connection with the making of any Distributions pursuant to the Plan.

11       **8.2        Distributions.**

12           **8.2.1        Dates of Distributions.**  Any Distribution required to be made on the

13   Effective Date shall be deemed timely if made as soon as practicable after such date and, in any

14   event, within thirty (30) days after such date.  Any Distribution required to be made upon a

15   Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be

16   deemed timely if made as soon as practicable thereafter.

17           **8.2.2.        Limitation on Liability.**  Neither the Plan Sponsor, the Plan Trustee, the

18   Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors,

19   agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross

20   negligence or willful misconduct) in connection with implementing the Distribution provisions of

21   the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in

22   the value of Distributions made pursuant to the Plan resulting from any delays in making such

23   Distributions in accordance with the Plan's terms (including but not limited to any delays caused

24   by the resolution of Disputed Claims).

25       **8.3        Old Instruments and Securities.**

26           **8.3.1    Surrender and Cancellation of Instruments and Securities.**  As a

27   condition to receiving any Distribution pursuant to the Plan, each Person holding any note or other

28   instrument or security (collectively "Instruments or Securities" and individually an "Instrument or

-34-

Security") evidencing an existing Claim(s) against the Debtor must surrender such Instrument or Security to the Distribution Agent.

**8.3.2** **Cancellation of Liens.**  Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

**8.3.3** **De Minimis Distributions and Fractional Shares.**  No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

**8.3.4** **Delivery of Distributions.**  Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtor; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtor, provided, however, that if the Debtor or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

**8.3.5** **Undeliverable Distributions.**  If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such Distribution being hereinafter referred to as

"Unclaimed Property"), no further Distribution shall be made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then current address.  Subject to the remainder of this Section and the following section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or any other Person to attempt to locate such Person.

**IX.**

**OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

**9.1**　　**Standing for Objections to Claims.**

The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims, excluding Claims filed by Insiders that are SunCal Affiliates.  The Trustee Debtors' Committee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates.

Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

**9.2**　　**Treatment of Disputed Claims and Disputed Liens.**

**9.2.1**　　**No Distribution Pending Allowance.**　If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or Distribution provided for under the Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

**9.2.2**　　**Distribution After Allowance.**　On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have

1  been distributable to such Person if on the initial Distribution Date such Claim had been an

2  Allowed Claim and not a Disputed Claim.

3                                            **X.**

4              **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5        **10.1    Executory Contracts Being Rejected.**

6            The Debtor hereby rejects all of the executory contracts and unexpired leases set forth in

7  the Debtor's Schedules.  See Disclosure Statement as Exhibit "9."  The SunCal Plan Proponents

8  reserve the right to amend Exhibit "9" to include additional leases and contracts on this exhibit, or

9  to delete leases and contracts from this exhibit, up to and including the Confirmation Date.

10       **10.2    Bar Date for Rejection Damages.**

11           Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

12 forever barred and shall not be enforceable against the Debtor, the Plan Trust, their Affiliates, their

13 successors, or their properties, and shall not be entitled to any Distribution under the Plan, unless a

14 Proof of Claim for such Claim is filed and served on the Debtor, or the Plan Trust within thirty

15 (30) days after the receipt of a notice of the rejection of any contract or lease.

16                                           **XI.**

17                        **LIMITATION OF LIABILITY**

18       **11.1    No Liability for Solicitation or Participation.**

19           As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

20 rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

21 offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

22 the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

23 violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

24 rejections of the Plan or the offer, issuance, sale, or purchase of securities.

25 / / /

26 / / /

27 / / /

28

# XII.

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

### 12.1    Conditions Precedent to Plan Confirmation.

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan Proponents.

### 12.2    Conditions Precedent to Plan Effectiveness.

The conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents.

# XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.

# XIV.

## MODIFICATION OR WITHDRAWAL OF THE PLAN

### 14.1    Modification of Plan.

At any time prior to confirmation of the Plan, SunCal Plan Proponents may supplement, amend or modify the Plan.  After confirmation of the Plan,  SunCal Plan Proponents or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

### 14.2    Nonconsensual Confirmation.

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

**XV.**

**MISCELLANEOUS**

**15.1    Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Debtor's Case is closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

**15.2    Changes in Rates Subject to Regulatory Commission Approval.**

The Debtor is not subject to governmental regulatory commission approval of their rates.

**15.3    Payment Dates.**

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.

**15.4    Headings.**

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

**15.5    Other Documents and Actions.**

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**15.6    Notices.**

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

**To the SunCal Plan Proponents**:
Bruce V. Cook
General Counsel
Authorized Agent of the SunCal Plan Proponents
2392 Morse Ave
Irvine, CA 92614-6234

**With copies to:**
Paul J. Couchot
Winthrop & Couchot, Professional Corporation
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Ronald Rus
Rus Miliband & Smith A Professional Corporation
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section, which designation will be effective on receipt.

### 15.7    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 15.8    Binding Effect.

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Plan Sponsor, the Plan Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 15.9    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**15.10    Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**15.11    No Waiver.**

The failure of the Debtor or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Trustee Debtors' Committee, the Debtors' or the Plan Trustee's right to object to or examine such Claim, in whole or in part.

**15.12    Inconsistencies.**

In the event the terms or provisions of the Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**15.13    Exemption from Certain Transfer Taxes and Recording Fees.**

The Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property or of any other interest in such property (including, without limitation, a security interest) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and

recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 15.14   Post-Confirmation Status Report.

Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

### 15.15   Post-Confirmation Conversion/Dismissal.

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan Trustee reserves the right to object to any motion for conversion or dismissal.  If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.

### 15.16   Final Decree.

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Case of the Debtor.

Date:  August 5, 2011                              By:____/s/ Bruce Cook_____
                                                              Bruce Cook
                                                              General Counsel, Authorized Agent for the
                                                              Voluntary Debtors and Acquisitions

**Submitted By:**

**WINTHROP COUCHOT**                    **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**       **A PROFESSIONAL CORPORATION**


By: /s/ Paul J. Couchot_____       By:  _/s/ Ronald Rus_____
        Paul J. Couchot, Esq.                                    Ronald Rus, Esq.
        General Insolvency Counsel for                     Joel S. Miliband, Esq.
        the Voluntary Debtors                          Counsel for SCC Acquisitions Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING THIRD AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASE OF SUNCAL CENTURY CITY, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| Date | Type Name | Signature |

- **NEF SERVICE LIST**
  Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com

| | |
|---|---|
| 1 | |

- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net