1

2

3

PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

4

General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

5

6

7

8

9

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

10

Counsel for ~~SunCal Management LLC and~~ SCC
Acquisitions Inc.

11

12

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | In re |
| 2 | PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, |
| 3 |      Joint Administered Debtors and Debtors-in-Possession |

In re

PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,

        Joint Administered Debtors and Debtors-in-Possession

Affects:

☐ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☒ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES

Chapter 11 Proceedings

**[REDLINED] ~~SECOND~~<ins>THIRD</ins> AMENDED DISCLOSURE STATEMENT DESCRIBING ~~SECOND~~<ins>THIRD</ins> AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN ~~PROPONENT~~<ins>PROPONENTS</ins> IN THE CHAPTER 11 CASE OF SUNCAL CENTURY CITY, LLC**

Date:      July 22, 2011
Time:     11:00 a.m.
Place:    Courtroom 5A

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................. 2

II.     DEFINITIONS AND RULES OF INTERPRETATION ......................................... 3

2.1      ~~2.1~~
         Definitions. .................................................................... 3

2.2      ~~2.2.~~ ............................................................................Rules of
Construction. ~~19~~17

2.3      ~~2.3.~~ ...................................................................................Exhibits.
         ~~20~~18

III.    PLAN CONFIRMATION DEADLINES ................................................ ~~20~~18

3.1      ~~3.1~~ ..............................................................................Time and
Place of the Confirmation Hearing. ..................................... ~~20~~18

3.2      ~~3.2.~~ ..............................................................................Deadline
for Voting for or Against the Plan. ..................................... ~~20~~18

3.3      ~~3.3.~~ ..............................................................................Deadline
for Objecting to the Confirmation of the Plan. ..................... ~~20~~19

3.4      ~~3.4.~~ ..............................................................................Identity
of Person to Contact for More Information
        Regarding the Plan .................................................... ~~21~~19

3.5      ~~3.5~~
         Disclaimer ................................................................. ~~21~~19

3.6      Summary of All of the Alleged Claims Against the Debtor and a
         Summary of the Debtor's Primary Assets ............................... 20

IV.     FACTUAL BACKGROUND OF THE DEBTORS ................................. 22

4.1      ~~4.1~~ ...................................................................................The
        Formation of the Debtors and the Projects. .......................... 22

4.2      ~~4.1.1~~
~~Overview of the Debtors and Their Projects~~ ~~22~~

4.3      ~~4.1.2~~ ............................................................................~~Disputed~~
~~Claims and Liens~~ ~~23~~

4.4      ~~4.1.3~~ ...................................................................................~~A~~
~~Summary of All of the Alleged Claims~~

4.5      .....................................................................................~~Against~~
~~SunCal Century City~~ ~~23~~

4.6      ~~4.1.4~~
~~Summary of SunCal Century City's Cash~~..........................................~~23~~

MAINDOCS-#~~163421-v5-SCC~~164994-v3-SunCal_3rd_Am_CC_DS.DOC

4.7    4.2    Factual Circumstances Leading to the Filing of the Debtors' Chapter 11 Cases. ................................................................. 23

4.8    Debtors' Chapter 11 Cases.................................................... 24

4.9    4.2.1    Introduction ............................................................. 24

4.10    4.2.2    Background on the SunCal Companies ................................ 24

4.11    4.2.3    The Origins of the SunCal/Lehman Joint Venture .................. 24

4.12    4.2.4    Lehman's Effective Control over the Management

4.13    ................................................................. of the Debtors and Promises of Ongoing Funding ................................ 25

4.14    4.2.5    The 2008 Restructuring Agreement ............................................. 26

4.15    4.2.6    The Lehman Lenders Hire Radco ........................................... 28

4.16    4.2.7    The Lehman Lenders' Failure to Close on the

4.17    Settlement Agreement .................................................. 28

4.18    4.2.8    The Lehman Lenders' Undisclosed Sale of Most

4.19    ................................................................. of the Debtors' Loans ...................................................... 29

4.20    4.2.9    Lehman's Foreclosure Sale and Purchase of the

4.21    ................................................................. Pacific Point Project    29

4.22    4.2.10    Alvarez and Marsal Take Over Control of the

4.23    ................................................................. Lehman Entities After the Chapter 11 Filing of

4.24    ................................................................. LBHI and LCPI    31

4.25    4.3    The Debtors' Potential Preferential Transfers .......................... 31

4.26

**TABLE OF CONTENTS**

**(Continued)**

**PAGE**

V.    SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES .................. ~~31~~30

    5.1.    ~~5.1~~ Voluntary Debtors ~~31~~ ........................................................ 30

5.2.    ~~5.1.1    Joint Administration of the Voluntary Debtors~~

5.3.    ~~and the Trustee Debtors~~ .................................................. ~~31~~

    5.4.    ~~5.2~~ The Trustee Debtors and Their Professionals ~~31~~ and the Trustee Debtors' Committee and Its Professionals. ..... 30

5.5.    ~~5.3    The Debtors' Various Motions Relating to Financing for the~~

5.6.    ~~Projects and to Pay Professional Fees~~ ................................. ~~32~~

    5.7.    ~~5.4~~ SunCal's Discovery of the Danske Bank Repo. ........................... ~~33~~31

    5.8.    ~~5.5~~ The Sale of the 10,000 Santa Monica Project to Danske Bank. .................... ~~33~~31

VI.    TREATMENT OF UNCLASSIFIED CLAIMS ....................................... ~~33~~31

~~6.1    Introductions~~ .................................................................... ~~33~~

6.1    Introduction. .................................................................. 31

6.2    ~~6.2~~ Treatment of Allowed Administrative Claims. ......................... ~~33~~31

6.3    ~~6.3~~ Administrative Claims Bar Date. ........................................ ~~34~~32

6.4    ~~6.4~~ Treatment of ~~Priority~~ Unsecured Tax Claims. ....................... ~~35~~32

VII.    CLASSIFICATION OF CLAIMS AND INTERESTS ............................... ~~35~~33

VIII.    THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS ....................... AND INTERESTS    ~~36~~34

    8.1.    ~~8.1~~ The Plan's Treatment of Holders of ~~General Unsecured~~ Priority Claims Against the Debtor (Class 1.1). ................................. 34

    8.2.    ~~Claims~~ The Plan's Treatment of Holders of Allowed General Unsecured Claims Against the Debtor (Class ~~1.1~~2.1). .............................. ~~36~~34

    8.3.    ~~8.2~~ The Plan's Treatment of Holders of Allowed Interests ~~36~~ Against the Debtor (Class 3.1). .......................................... 35

IX.    ACCEPTANCE OR REJECTION OF THE PLAN ................................... ~~36~~35

    9.1.    ~~9.1~~ Introduction. ................................................................ ~~36~~35

9.2. ~~9.2~~ Who May Object to Confirmation of the Plan........................................ ~~37~~35

9.3. ~~9.3.~~ Who May Vote to Accept/Reject the Plan........................................ ~~37~~36

9.4. ~~9.4.~~ What Is an Allowed Claim/Interest........................................ ~~37~~36

9.5. ~~9.5.~~ What Is an Impaired Class........................................ ~~37~~36

9.6. ~~9.6.~~ Who Is Not Entitled to Vote........................................ ~~37~~36

9.7. ~~9.7~~ Who Can Vote in More than One Class........................................ ~~38~~37

9.8. ~~9.8.~~ Votes Necessary for a Class to Accept the Plan........................................ ~~38~~37

9.9. ~~9.9~~ Treatment of Nonaccepting Classes........................................ ~~38~~37

9.10. ~~9.10.~~ Request for Confirmation Despite Nonacceptance by Impaired Class(es)........................................ ~~39~~37

X.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ............... ~~39~~38

~~10.1   Introduction........................................ 39~~

10.1. ~~10.2.~~ Removal of Chapter 11 Trustee........................................ ~~39~~38

10.2    Establishment and Operations of the Plan Trust........................................ 38

~~10.3   Transfer of Property To The~~10.3 Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust........................................ ~~39~~38

~~10.4   Purpose of the Plan Trust Assets After Effective Date........................................ 40~~

~~10.5   Trust Agreement........................................ 40~~

~~10.6   Operations of the Plan Trustee........................................ 41~~

~~10.7   The Plan Trustee........................................ 41~~

~~10.8~~10.4    Payment of Plan Trust Expenses........................................ ~~41~~39

~~10.9~~10.5    The Plan Trust Distribution System~~41~~........................................ 40

~~10.10   Claims Estimation Rights........................................ 42~~

10.6    The Plan Trustee........................................ 40

10.7    The Plan Trust Beneficiaries........................................ 44

~~10.11~~10.8    No Payment of Transfer-Related Fees to the United States Trustee........................................ ~~42~~44

~~10.12~~10.9    No Payment of Transfer-Related Fees to the Plan Trustee........................................ ~~42~~44

~~10.13~~10.10    Books and Records of Trust~~42~~........................................ 45

~~10.14   Limitations on Liability........................................ 42~~

~~10.15~~10.11    Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial Interests........................................ ~~43~~45

~~10.16~~10.12    Termination of the Trust........................................ ~~44~~46

~~10.17~~10.13    Exemption from Certain Transfer Taxes........................................ ~~44~~46

~~10.18~~10.14    Tax Consequence of The Plan~~45~~........................................ 46

MAINDOCS-#~~163421-v5-SCC~~164994-v3-SunCal_3rd_Am_CC_DS.DOC

10.19  The Plan Sponsor ............................................................... 45

10.20 10.15    The Trustee Debtors' Committee.  ................................................ 45 47

10.21.1        Duties and Powers. ................................................ 45

10.21.2        Dissolution of Committee ............................................ 46

10.22  Litigation Claims ............................................................... 46

10.23  Collection of Litigation Recoveries .......................................... 46

XI.    RISK FACTORS ............................................................... 46 48

       11.1    Plan Risks. ............................................................ 46 48

       11.2    The Plan May Not be Be Accepted or Confirmed. ......................... 47 48

       11.3    Adverse Outcome of Pending Litigation. ................................ 47 48

XII.   DISTRIBUTIONS ............................................................... 47 48

       12.1            12.1

               Distribution Agent ..................................................... 47

12.2            12.2    Distributions. ......................................... 47

12.3                    12.2.1                                                  Dates of

Distributions                    47                                             12.2.2

       Limitation on Liability. ...................................................... 48

       12.4    Distributions. ............................................................ 49

       12.5            12.3.                                                  Old

Instruments and Securities ........................................................ 48

12.6                    12.3.1

       Surrender and Cancellation of Instruments and Securities ...................... 48

12.7                    12.3.2

       Cancellation of Liens ......................................................... 48

12.8            12.3.3 De Minimis Distributions and Fractional Shares .................... 48

12.9            12.3.4                                                      Delivery

of Distributions                                                        49

12.10           12.3.5

       Undeliverable Distributions ................................................... 49

               12.3.6  Disposition of Unclaimed Property. ............................ 49

XIII.  OBJECTION OBJECTIONS TO CLAIMS AND DISPUTE DISPUTED CLAIMS . ......... 50 51

       13.1            13.1 ....................................................... Standing

for Objections to Claims. ......................................................... 50 51

       13.2            13.2

               Treatment of Disputed Claims and Disputed Liens 50 ................... 51

               13.2.1  No Distribution Pending Allowance ............................ 50

               13.2.2  Distribution After Allowance ................................. 50

XIV.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................. 51

       14.1    Executory Contracts Being Assumed ..................................... 51

       14.1            14.2

               Executory Contracts Being Rejected. ................................ 51

       14.2            14.3 ..................................................... Bar Date

for Rejection Damages 51 ........................................................ 52

14.3            14.4  Changes in Rates Subject to Regulatory Commission Approval ....... 51

XV.    BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY ............... 5152

        15.1    Best InterestInterests Test. ........................................................... 5152
        15.2    Feasibility. ................................................................................. 5253

XVI.    LIMITATION OF LIABILITY ............................................................. 53
        16.1    16.1 .........................................No
                Liability for Solicitation or Participation. ..................................... 53

XVII.   CONDITIONS TO CONFIRMATION AND
        EFFECTIVENESS    OF THE PLAN .................................................. 5354
        17.1    17.1
                Conditions Precedent to Plan Confirmation. .............................. 5354
        17.2    17.2
                Conditions Precedent to Plan Effectiveness. .............................. 5354

XVIII.  RETENTION OF JURISDICTION ..................................................... 54

XIX.    MODIFICATION OR WITHDRAWAL OF THE PLAN ........................... 54
        19.1    19.1
                Modification of Plan. .............................................................. 54
        19.2    19.2
                Nonconsensual Confirmation. .................................................. 54

XX.     MISCELLANEOUS ....................................................................... 5455
        20.1    20.1 .........................................Payment
of Statutory Fees. ............................................................................. 5455
        20.2    Changes in Rates Subject to Regulatory Commission Approval. ............... 55
        20.3    20.2 .........................................Payment
Dates. ..............    55
        20.4    20.3
        Headings. ..........................................................................55
        20.5    20.4 .........................................Other
Documents and Actions. ..................................................... 55
        20.6    20.5 .........................................Notices.
                55
        20.7    20.6
        Governing Law. .................................................................. 56
        20.8    20.7 .........................................Binding
Effect. ..............    56
        20.9    20.8
        Successors and Assigns. ...................................................... 56
        20.10   20.9
        Severability of Plan Provisions. .......................................... 5657
        20.11   20.10 .........................................No
Waiver. .............    57
        20.12   20.11
        Inconsistencies. ................................................................ 57

20.13    20.12
Exemption from Certain Transfer Taxes and Recording Fees. ................................. 57

20.14    20.13
Post-Confirmation Status Report. ......................................................... 5758

20.15    20.14
Post-Confirmation Conversion/Dismissal. ................................................. 58

20.16    20.15 ..........................................................Final
Decree. 58

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1

**I.**

2

**INTRODUCTION**

3       This Disclosure Statement[1] is filed ~~by~~jointly by, and the accompanying Plan is proposed

4  respectively by, Acquisitions and the Voluntary Debtors, as the SunCal Plan ~~Proponent~~Proponents

5  in the Debtor's Chapter 11 Case.  In addition to being ~~the proponent~~a SunCal Plan Proponent,

6  Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for

7  the Plan.

8       Chapter 11 allows debtors-in-possession, Chapter 11 trustees, and under some

9  circumstances, creditors, interest holders and others parties in interest, to propose a Chapter 11 plan.

10  As stated, the SunCal Plan ~~Proponent is~~Proponents are the ~~proponent~~proponents of the Plan sent to

11  you in the same envelope as this Disclosure Statement.  This document summarizes the contents of

12  the Plan, certain information relating to the Plan and the process the Bankruptcy Court follows in

13  determining whether or not to confirm the Plan.

14       In summary, the Plan provides for the prosecution and recovery of the proceeds of the

15  Lehman Preference Claim against Lehman ALI and the Distribution of the Available Cash to

16  Creditors holding Allowed Claims, in accordance with their rights and priorities under the

17  Bankruptcy Code and under other applicable law.  The Plan also provides for the potential

18  prosecution and potential recovery of the Lehman Preference Claim, the Potential SunCal Preference

19  Claim and the Distribution of any Net Litigation Recoveries.

20       **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

21  **KNOW ABOUT**:

22            ➢ **WHO CAN VOTE OR OBJECT TO THE PLAN;**

23            ➢ **HOW YOUR CLAIM IS TREATED;**

24            ➢ **HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD**

25               **RECEIVE IN LIQUIDATION;**

26

27  _____

28  [1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1"
attached hereto.

1  ➢  **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS**

2  **DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDING;**

3  ➢  **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO**

4  **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

5  ➢  **WHAT IS THE EFFECT OF CONFIRMATION; AND**

6  ➢  **WHETHER THE PLAN IS FEASIBLE.**

7  This Disclosure Statement cannot tell you everything about your rights.  You should consider

8  consulting your own attorney to obtain more specific advice on how the Plan will affect you and your

9  best course of action.

10  Be sure to read the Plan as well as this Disclosure Statement.  If there are any inconsistencies

11  between the Plan and this Disclosure Statement, the Plan provisions will govern.

12  ~~The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"~~

13  ~~concerning the Plan.  On _____, 2011, the Bankruptcy Court entered an order approving this~~

14  ~~Disclosure Statement, based upon a finding that this document contained "adequate information" to~~

15  ~~enable parties affected by the Plan to make an informed judgment regarding the Plan.  Any party can~~

16  ~~now solicit votes for or against the Plan~~

17  **THE BANKRUPTCY CODE REQUIRES A DISCLOSURE STATEMENT TO**

18  **CONTAIN "ADEQUATE INFORMATION" CONCERNING THE PLAN.  ON _____,**

19  **2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS**

20  **DISCLOSURE STATEMENT, BASED UPON A FINDING THAT THIS DOCUMENT**

21  **CONTAINED "ADEQUATE INFORMATION" TO ENABLE PARTIES AFFECTED BY**

22  **THE PLAN TO MAKE AN INFORMED JUDGMENT REGARDING THE PLAN.  ANY**

23  **PARTY CAN NOW SOLICIT VOTES FOR OR AGAINST THE PLAN**.

24  **II.**

25  **DEFINITIONS AND RULES OF INTERPRETATION**

26  ~~2.1~~ **2.1 Definitions.**

27

28

The following defined terms are used in this Disclosure Statement.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1   <u>10,000 Santa Monica Project</u>.  The Project formerly owned by the Debtor, located in the City of Century City, California, which was sold to Danske Bank pursuant to a Final Order of the Bankruptcy Court for complete forgiveness of the SunCal Century City Loan Agreement and $5.3 million, as more particularly described herein.

2.1.2   <u>Acquisitions</u>.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a Creditor of the Debtor, ~~the~~a SunCal Plan ~~Proponent~~Proponents, the Distribution Agent and the Plan Trustee.

2.1.3   <u>Administrative Claim(s)</u>.  Any Claim against the Debtor or its Estate  incurred after the applicable Petition Date for the Debtor but before the Effective Date, for any cost or expense of administration of the Case of the Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of  the Debtor under section 1930 of Title 28 of the United States Code.

2.1.4   <u>Administrative Claims Bar Date</u>.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date.

2.1.5   <u>Affiliate</u>.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

2.1.6    <u>Allowed</u>.  When used to describe Claim(s) or Interest(s) against the Debtor, such Claim(s) or Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

2.1.7    <u>Allowed Amount</u> shall mean:

A.    With respect to any Administrative Claim (i) if the Claim is based upon a Fee Application, the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the Debtor and is not otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the applicable Administrative Claims Bar Date shall be zero, and no Distribution shall be made on account of any such Administrative Claim;

B.    with respect to any Claim which is not an Administrative Claim (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the Debtor's Schedules as neither disputed, contingent nor unliquidated; or (ii) if the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

Bankruptcy Rules, the Plan or the Bankruptcy Court.  The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Debtor's Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no Distribution shall be made on account of any such Claim; and

C.      with respect to any Interest, (i) the amount provided by or established in the records of the Debtor at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Debtor; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.8     Allowed Claim.  Except as otherwise provided in the Plan (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.9     Allowed Interest.  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.10    Allowed Secured Claims.  All or a portion of a Secured Claim that is an Allowed Claim against the Debtor.

2.1.11    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is an Allowed Claim against the Debtor.

2.1.12    Assets.  All assets that are property of the Debtor(s) pursuant to Bankruptcy Code Section 541.

2.1.13    Available Cash.  The Debtor's Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims.  The Available Cash shall consist of the Debtor's cash on hand as of the Effective Date.  All Available Cash shall be deposited into the applicable Distribution Account(s).

2.1.14    Avoidance Actions.  All Claims and defenses to Claims accruing to the Debtor and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548,

1  549, 550, or 551, including but not limited to the Lehman Preference Claim and the Potential SunCal

2  Preference Claim.

3          2.1.15    Bankruptcy Code. The United States Bankruptcy Code.

4          2.1.16    Bankruptcy Court. The United States Bankruptcy Court for the Central

5  District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

6  reference made pursuant to Section 157 of title 28 of the United States Code, the United States

7  District Court for the Central District of California; or, in the event such courts cease to exercise

8  jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

9  lieu thereof.

10          2.1.17    Bankruptcy Rules. Collectively, as now in effect or hereafter amended and

11  as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

12  Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

13          2.1.18    Beneficial Interests. means, collectively, the interests of the holders of

14  Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on

15  account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and

16  records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold,

17  assigned or transferred by will, intestate succession or operation of law.

18          2.1.19    Business Day. Any day, other than a Saturday, a Sunday or a "legal

19  holiday," as defined in Bankruptcy Rule 9006(a).

20          2.1.20    Case. The Chapter 11 case of the Debtor pending before the Bankruptcy

21  Court.

22          2.1.21    Cash. Currency of the United States of America and cash equivalents,

23  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

24  transfers and other similar forms of payment.

25          2.1.22    Chapter 11 Trustee. Steven M. Speier, the duly appointed trustee of the

26  Trustee Debtors in their pending Chapter 11 Cases.

27          2.1.23    Claim. This term shall have the broadest possible meaning under Section

28  101(5) of the Bankruptcy Code, and shall include (a) any right to payment from the Debtor, whether

1  or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

2  unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an

3  equitable remedy for breach of performance if such breach gives rise to a right of payment from the

4  Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent,

5  matured, unmatured, disputed, undisputed, secured, or unsecured.

6          2.1.24    <u>Claims Bar Date</u>.  For any Claim, March 31, 2009, which was established

7  by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy

8  Court in the Debtor's Case, except for the following: (a) Administrative Claims, for which the

9  Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory contracts

10  or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of claim is (i)

11  30 days after the date of entry of the order authorizing the rejection, or (ii) March 31, 2009,

12  whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. § 101(27),

13  for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the Order for

14  Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d)

15  claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day

16  to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or March 31, 2009,

17  whichever is later.

18          2.1.25    <u>Claims Objection Deadline</u>.  The  first business day following the sixtieth

19  (60th) day after the Effective Date.

20          2.1.26    <u>Class</u>.  Each group of Claims or Interests classified in Article IV of the Plan

21  pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

22          2.1.27    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered in

23  the Bankruptcy Court's docket.

24          2.1.28    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court

25  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code with

26  respect to Plan.

27          2.1.29    <u>Creditor</u>.  Any Person who is the Holder of a Claim against the Debtor that

28  arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due,

owing, and payable on or before the Petition Date, including, without limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.1.30    Debtor.  SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica Project.

2.1.31    Debtors.  Collectively, the Voluntary Debtors and the Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

2.1.32    Debtor(s)- in-Possession.  The Voluntary Debtors when acting in their capacity as representatives of their respective Estates in their respective Chapter 11 Cases.

2.1.33    Disclosure Statement.  The document accompanying the Plan for the Debtor that is entitled "Second Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponent Proponents In The Chapter 11 Case Of SunCal Century City" and with all accompanying exhibits.

2.1.34    Disputed Claim(s).  All or any part of a Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) a Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the Plan which is Filed on or before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

2.1.35    Disputed Lien(s).  An asserted lien(s) against Assets of the Debtor that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

1         2.1.36    Disputed Secured Claim(s). That part of a Disputed Claim against the

2    Debtor that is a Secured Claim.

3         2.1.37    Distribution(s).  Payments to Holders of Allowed Claims provided for

4    under the Plan.

5         2.1.38    Distribution Agent.  The entity that is responsible for making Distributions

6    under the Plan, which shall be Acquisitions.

7         2.1.39    Distribution Account.  A separate account to be established by the Plan

8    Trustee at an FDIC insured bank into which the Debtor's Available Cash shall be deposited and all

9    Available Cash received by the Plan Trust after the Confirmation Date that would have belonged to

10   the Debtor shall be deposited.

11        2.1.40    Distribution Date.  With respect to any Allowed Claim or Allowed Interest,

12   the date on which a Distribution is required to be made under the Plan.

13        2.1.41    Effective Date. A date selected by the SunCal Plan ~~Proponent~~Proponents

14   that is not later than the thirtieth (30th) calendar day after the Confirmation Date of the Plan, provided

15   that there is no stay pending appeal of the Confirmation Order, in which case the Effective Date shall

16   be tolled until the dissolution of such stay.  The Effective Date may be extended by the Bankruptcy

17   Court after notice and hearing to all parties in interest.

18        2.1.42    Estate.  The bankruptcy estate of the Debtor created pursuant to Section 541

19   of the Bankruptcy Code.

20        2.1.43    Fee Applications.  Applications of Professional Persons under Sections

21   330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

22   expenses in the Debtor Case.

23        2.1.44    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code for

24   allowance of compensation and reimbursement of expenses in the Debtor Case.

25        2.1.45    Filed.  Delivered to, received by and entered upon the legal docket by the

26   Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

27        2.1.46    Final Order.  A judgment, order, ruling or other decree issued and entered

28   by the Bankruptcy Court that has not been reversed, stayed, modified or amended.

2.1.47    General Unsecured Claim.  A Claim against the Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a Priority Claim.

2.1.48    Holder.  The beneficial owner of any Claim or Interest against the Debtor.

2.1.49    Insider.  The term shall have the broadest meaning possible under Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and Insiders of such Affiliates, including the Lehman Entities.

2.1.50    Interest.  Any equity security interest in the Debtor within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, or membership interests.

2.1.51    LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

2.1.52    LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

2.1.53    Lehman Adversary Proceeding.  The Debtors' pending adversary proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of action including equitable subordination, fraudulent inducement, fraudulent conveyances and preferential transfers (including the Lehman Preference Claim).

2.1.54    Lehman ALI.  Lehman ALI, Inc.

2.1.55    Lehman Entities.  The Lehman Lenders, the Lehman Equity Members and LBHI.

2.1.56    Lehman Equity Members.  Lehman Entities that own direct or indirect membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal Marblehead.

2.1.57    Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and OVC Holdings.

1    2.1.58    Lehman Preference Claim.  The fourth cause of action in the Lehman

2  Adversary Proceeding seeking to avoid and recover allegedly preferential transfers made by the

3  Debtor to Lehman ALI in the amount of $10,628,948.64.

4    2.1.59    Lehman Representatives.  The individuals that controlled the Lehman

5  Entities.

6    2.1.60    Lehman Successor(s).  Entities other than the Lehman Lenders that either

7  assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman

8  Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

9    2.1.61    Litigation Claims.  Any and all interests of the Debtor in any and all

10  Claims, rights, causes of action which have been or may be commenced by the Chapter 11 Trustee

11  and/or the Plan Trust, as the case may be, including, but not limited to the Lehman Preference Claim

12  and the Potential SunCal Preference Claim.

13    2.1.62    Litigation Recoveries.  Any Cash or other property received by the Chapter

14  11 Trustee, the Plan Trustee and/or the Plan Trust as the case may be, including but not limited to,

15  the Lehman Preference Claim and the Potential SunCal Preference Claim.

16    2.1.63    Maximum Distributions.  A Distribution to a Holder of an Allowed General

17  Unsecured Claim against  the Debtor equal to one hundred percent (100%) of the amount of the

18  Holder's Allowed General Unsecured Claim plus interest at the Legal Rate from and as of the

19  Debtor's Order for Relief Date.

20    2.1.64    MB Firm.  Miller Barondess, LLP.

21    2.1.65    Net Litigation Recoveries.  Litigation Recoveries less associated

22  Administrative Claims, Post-Confirmation Expenses and contingency fees incurred in connection

23  with such Litigation Recoveries.

24    2.1.66    Orders for Relief Date.  The following are dates that orders for relief were

25  entered for each of the Trustee Debtors:

| SunCal Oak Valley | January 6, 2009 |
|---|---|
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |

-12-

| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.67    <u>Person</u>.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.68    <u>Petition Dates</u>.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.69    <u>Plan</u>.  The ~~Second~~Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan ~~Proponent~~Proponents In The Chapter 11 Case Of SunCal Century City, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

-13-

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1          2.1.70      Plan Period. The period from the Effective Date to the Plan Termination

2    Date.

3          2.1.71      Plan Reserve.  A reserve in the amount of $300,000 to be established from

4    the Available Cash on the Effective Date.  Up to $200,000 of such reserve shall be used for payment

5    of costs associated with the prosecution of the Lehman Preference Claim and payment of Post

6    Confirmation Expenses and up to $100,000 of such reserve shall be used for payment of Trustee

7    Debtors' Committee's fees and costs associated with objections to Claims and prosecution of the

8    Potential SunCal Preference Claim.

9          2.1.72      Plan Termination Date. The fifth (5th) anniversary date of the Effective Date

10   of the Debtor, unless the Plan elects an earlier date.

11         2.1.73      Plan Sponsor.  The entity that has committed to cause and/or arrange the

12   funding of certain specified obligations under the Plan on or after the Effective Date.  The Plan

13   Sponsor is Acquisitions.

14         2.1.74      Plan Trust.  A liquidating trust to be established pursuant to Article X of

15   the Plan prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of

16   Allowed Claims against the Debtor as the beneficiaries. The purpose of the Plan Trust will be to

17   liquidate the Debtor's Assets (other than Assets that are excluded by the Plan Trustee on the grounds

18   that they lack value or would be difficult to administer), distribution the Available Cash to Holders

19   of Allowed Claims and to otherwise consummate the Plan.

20         2.1.75      Plan Trust Assets. All assets within the Debtor's Chapter 11 estate.

21         2.1.76    2.1.75  Plan Trust Beneficiaries.   The Plan Trust Beneficiaries are (i) the

22   holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall

23   be satisfied from Plan Trust PropertyAssets in accordance with the terms of the Plan.

24         2.1.77    2.1.76  Plan Trustee. The Person or entity appointed pursuant to the Plan

25   to act as trustee of and to administer the Plan Trust, which shall be Acquisitions.

26         2.1.77    Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the holders of

27   Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied

28   from the Plan Trust Property in accordance with the terms of the Plan.

1    ~~2.1.78    Plan Trust Property. All property within the Chapter 11 estate of the~~

2    ~~Debtor, other than property that is affirmatively excluded by the Plan Trustee.~~

3    2.1.78    ~~2.1.79~~ Post-Confirmation Expenses.  The expenses incurred by the Plan

4    Trust and the Plan Trustee, and the fees and expenses incurred by the Trustee Debtors' Committee's

5    professionals and the Plan Trustee's professionals following the Confirmation Date for the purpose

6    of (i) funding the costs of the Lehman Preference Claim; (ii) objecting to and resolving Disputed

7    Claims; (iii) effectuating Distributions under the Plan; and (iv) otherwise consummating the Plan

8    and closing the Debtor's Chapter 11 Case.

9    2.1.79    ~~2.1.80~~ Potential SunCal Preference Claim.  Potential preference claims

10    against SunCal Affiliates pursuant to Section 547 of the Bankruptcy Code.

11    2.1.80    ~~2.1.81~~ Priority Claim.  Any Claim, other than an Administrative Claim or

12    a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

13    2.1.81    ~~2.1.82~~ Pro Rata.  Proportionately, so that with respect to any Distribution

14    in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

15    such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

16    amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

17    such Distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

18    2.1.82    ~~2.1.83~~ Professional.  A Person or Entity (a) employed by the Debtor, the

19    Trustee Debtors' Committee pursuant to a Final Order in accordance with Sections 327 and 1103 of

20    the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date,

21    pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or (b) for which

22    compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section

23    503(b) of the Bankruptcy Code.

24    2.1.83    ~~2.1.84~~ Professional Fees.  All Allowed Claims for compensation and for

25    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

26    2.1.84    ~~2.1.85~~ Projects.  The Debtors' residential real estate development projects

27    and other assets as separately defined herein and described in Exhibit "1" to the Disclosure

28

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    Statement including the 10,000 Santa Monica Project, which was sold post-petition pursuant to a

2    Final Order of the Bankruptcy Court

3        2.1.85    2.1.86  SCC LLC.  SCC Acquisitions LLC, a limited liability company, a

4    subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

5        2.1.86    2.1.87  Schedules.  The schedules of assets and liabilities and list of equity

6    security holders Filed by the Debtor, as required by Section 521(1) of the Bankruptcy Code,

7    Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time

8    to time.

9        2.1.87    2.1.88  Secured Claim.  Any Claim, including interest, fees, costs, and

10   charges to the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid

11   and unavoidable Lien on the Debtor's Assets.

12       2.1.88    2.1.89  SunCal.  The SunCal Companies, a trade name for Acquisitions

13   and its Affiliates.

14       2.1.89    2.1.90  SunCal Century City.  SunCal Century City, LLC, a Delaware

15   limited liability company, a Trustee Debtor, and the former owner of the 10,000 Santa Monica

16   Project.

17       2.1.90    2.1.91  SunCal Century City Loan Agreement.  A certain Loan Agreement

18   by and between the Debtor, as borrower and Lehman ALI, as agent and sole lender pursuant to which

19   Lehman ALI made a loan in the aggregate maximum principal amount of approximately

20   $120,000,000.  The SunCal Century City Loan Agreement was allegedly secured by a first-priority

21   deed of trust on the 10000 Santa Monica Project.  The SunCal Century City Loan Agreement had an

22   alleged balance due of $120,000,000.00 as of April 1, 2009.  Danske Bank was formerly the Holder

23   of the Century City Loan Agreement and related deed of trust, which has been satisfied in full

24   pursuant to Danske Bank's purchase of the 10000 Santa Monica Project for $5.3 million, less

25   payment of an Unpaid Real Property Tax Claim of $1.6 million.

26       2.1.91    2.1.92  SunCal Management.  SunCal Management, LLC, a Delaware

27   limited liability company, and the former property manager for the Projects, which has been succeed

28   by Argent Management.

2.1.92    2.1.93  SunCal Plan Proponent.  Acquisitions as the Proponents.  The
Voluntary Debtors, in their capacity as debtors and debtors in possession in their respective Chapter
11 cases, and Acquisitions as a creditor and party-in-interest, that is are proposing the Plan.

2.1.93    2.1.94  Tax.  Any tax, charge, fee, levy, impost or other assessment by any
federal, state, local or foreign taxing authority, including, wisthout without limitation, income,
excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,
estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or
additions attributable to, or imposed on or with respect to such assessments.

2.1.94    2.1.95  Tax Claim.  Any Claim for any Tax to the extent that it is entitled to
priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.1.95    2.1.96  Trustee Debtor(s). The following Debtors, individually or
collectively, that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal
Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal
Torrance, and SunCal Oak Knoll.

2.1.96    2.1.97  Trustee Debtors' Committee.  The Official Committee of
Unsecured Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the
Bankruptcy Code.

2.1.97    2.1.98  Unsecured Claim. An Unsecured Claim is any Claim that is not an
Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

2.1.98    2.1.99  Voluntary Debtor(s).  The following  Chapter 11 debtors and
debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC
Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford,
SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC
Communities, Del Rio and Tesoro.

**2.2  2.2 Rules of Construction.**

For purposes of the Plan and this Disclosure Statement, unless otherwise provided herein or
in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the singular
or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine,

feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or this Disclosure Statement to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan or this Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in the Plan or this Disclosure Statement, any reference in the Plan or this Disclosure Statement to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; (h) any reference in the Plan or this Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan or this Disclosure Statement or any other provision in this Section 2.2.

**2.3 2.3 Exhibits.**

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full therein.

### III.

### PLAN CONFIRMATION DEADLINES

The Bankruptcy Court has not confirmed the Plan described in this Disclosure Statement. Accordingly, the terms of the Plan are not binding on anyone.  However, if the Bankruptcy Court confirms the Plan, then the Plan will be binding on the Debtor(s), the Plan Trustee, and on all Creditors and Interest Holders in such Cases.

**3.1 3.1 Time and Place of the Confirmation Hearing.**

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan

2    will take place at 411 West Fourth Street, Santa Ana, CA 92701-4593 on October 24, 2011, at 9:30

3    a.m. in Courtroom 5A.

4    ~~3.2~~ **3.2 Deadline for Voting for or Against the Plan.**

5    If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

6    return the ballot to:

7

8    Winthrop Couchot Professional Corporation
     660 Newport Center Drive, Suite 400
     Newport Beach, CA 92660

9    Facsimile:  (949) 720-4111
     Attn:  P.J. Marksbury

10

11    Your ballot must be **received by**  September 26, 2011**,** or it will not be counted.

12    ~~3.3~~ **3.3 Deadline for Objecting to the Confirmation of the Plan.**

13    Objections to the confirmation of the Plan must be filed with the Bankruptcy Court, and

14    served upon the following parties so that they are received by September 26, 2011:

| | |
|---|---|
| **Counsel to the Voluntary Debtors** | Paul J. Couchot<br>Winthrop Couchot Professional Corporation<br>660 Newport Center Drive, Suite 400,<br>Newport Beach, CA 92660 |
| **Authorized Agent for Voluntary Debtors** | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |
| **Counsel for SunCal Management LLC and SCC Acquisitions Inc**. | Ronald Rus<br>Rus Miliband & Smith A<br>Professional Corporation<br>2211 Michelson Drive, Seventh Floor<br>Irvine, California 92612 |
| **Authorized Agent for SunCal Management and SCC Acquisitions, Inc**. | Bruce V. Cook<br>General Counsel<br>2392 Morse Ave<br>Irvine, CA 92614-6234 |

27    ~~3.4~~

28    **3.4    Identity of Person to Contact for More Information Regarding the Plan.**

-19-

1   Any interested party desiring further information about the Plan should contact the Voluntary

2   Debtors' counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Suite

3   400, Newport Beach, CA 92660, Attn:  Paul J. Couchot, (949) 720-4100; Peter W. Lianides, (949)

4   720-4155; Payam Khodadadi, (949) 720-4160.

5       **3.7**   ~~3.5~~ **Disclaimer.**

6       The information contained in this Disclosure Statement is provided by the SunCal Plan

7   ~~Proponent~~Proponents.  The SunCal Plan ~~Proponent~~Proponents represent that everything stated in this

8   Disclosure Statement is true to the best of their knowledge.  The Bankruptcy Court has not yet

9   determined whether or not the Plan is confirmable and makes no recommendation as to whether or

10  not you should support or oppose the Plan.

11      The discussion in this Disclosure Statement regarding the Debtor may contain "forward

12  looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.

13  Such statements consist of any statement other than a recitation of historical fact and can be

14  identified by the use of forward looking terminology such as "may," "expect," "anticipate,"

15  "estimate," or "continue," or the negative thereof or other variations thereon or comparable

16  terminology.  The reader is cautioned that all forward looking statements are necessarily speculative

17  and there are certain risks and uncertainties that could cause actual events or results to differ

18  materially from those referred to in such forward looking statements.  The liquidation analyses,

19  distribution projections, projections of financial results and other information are estimates only, and

20  the timing, amount and value of actual distributions to Creditors may be affected by many factors

21  that cannot be predicted.  Therefore, any analyses, estimates, or projections may or may not turn out

22  to be accurate.

23      **3.8**   ~~3.6~~ **A Summary of All of the Alleged Claims Against the Debtor and a Summary**

24      **of the Debtor's Primary Assets.**

25      The asserted Claims against the Debtor consist of Administrative Claims (including unpaid

26  Professional Fees) in the approximate amount of $2,603,064 and General Unsecured Claims in the

27  approximate amount of $4,390,043.  There are also ongoing Professional Fees, which continue to

28

1   accrue.  The SunCal Plan ~~Proponent~~Proponents believe that these balances may be reduced through

2   claims objections resulting in lower "Allowed" claims balances.

3           Throughout the Chapter 11 Case, the attorneys for the Trustee Debtors' Committee have been

4   administering objections to Claims.  The remaining potential Disputed Claims identified by the

5   attorneys for the Trustee Debtors' Committee total $2,507,660.26 in Administrative Claims of

6   SunCal Affiliates and $1,023,802.98 in General Unsecured Claims of SunCal Affiliates.  Moreover,

7   the Trustee Debtors' Committee has filed a motion objecting to Bond Safeguard's contingent claim.

8           The Debtor's Available Cash on hand as of July 6, 2011, 2011 was $3,568,824.79.  As stated

9   herein, the Plan Reserve is in the amount of $300,000.  Based on the foregoing, the Distribution to

10  Holders of General Unsecured Claims from the Available Cash would be 15% if the Disputed Claims

11  referenced above are Allowed and 100% if the Disputed Claims referenced above are Disallowed.

12  The foregoing percentage should not significantly decrease since there are no on on-going

13  Administrative Claims other than limited discovery being conducted by the MB Firm in connection

14  with the Lehman Preference Claim, which is included in the fee estimated of unpaid Professional

15  Fees.

16          As stated herein, the Debtor also has certain Litigation Claims.  In particular, the fourth cause

17  of action in the Lehman Adversary Proceeding seeks to avoid and recover the Lehman Preference

18  Claim in the amount of $10,628,948.64 from Lehman ALI.  Furthermore, the Debtor made transfers

19  in the amount of $747,727.13 to SunCal Affiliates (SunCal Management and Acquisitions) in the

20  one year period preceding the Debtor's Petition Date, which may be avoided and recovered.  The

21  SunCal Plan ~~Proponent~~Proponents, however, have done a preliminary investigation of the transfers

22  made to the SunCal Affiliates and believe that valid defenses exist to such transfers, including but

23  not limited to new value and ordinary course of business defenses.

24          Although the Debtor also made transfers in the aggregate amount of $190,087 to non-insiders

25  within the 90 day preference period preceding the Petition Date, the pursuit of such transfers do not

26  appear to be economical and the SunCal Plan Proponents do not believe that any actions will be

27  brought to avoid and recover any of such transfers.

28

1    Obviously, recovery on the Lehman Preference Action and/or the Potential SunCal

2    Preference Action can significantly increase the Distributions to Holders of Allowed Unsecured

3    Claims.  Other than the Plan Reserve, the Debtor's funds will not be used to fund the Potential

4    SunCal Preference Claim, other than costs, and any such action shall be required to be prosecuted on

5    a contingency fee basis.  Accordingly, the range above may increase from 15% depending on the

6    recovery, if any, from the Lehman Preference Claim and the Potential SunCal Preference Claim.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**FACTUAL BACKGROUND OF THE DEBTORS**

~~4.1~~ **4.1 The Formation of the Debtors and the Projects.**

### 4.1.1    Overview of the Debtors and their Projects.

The Debtor is one of twenty-six entities (collectively the "Debtors") that were formed pursuant to a joint venture between Affiliates of the SunCal Companies ("SunCal") and the Lehman Entities (the "SunCal/Lehman Joint Venture"). The Debtors' role in the venture was to own and develop the large residential projects that were the core assets in this joint undertaking.

At the inception of SunCal/Lehman Joint Venture, it was agreed that SunCal would be the developer/manager of the Projects and the Lehman Entities would provide the necessary capital. Attached hereto as Exhibit "1" is a general description of the Debtors' Projects, including the, and the Debtors' other primary Assets, excluding Cash and the Litigation Claims, and a description of the loans for the Projects.

All of the Debtors are Affiliates of Acquisitions and SCC LLC.  Some of the Debtors directly own the Projects, while others serve as holding companies, owning Allowed Interests in the Debtors that hold title to the Projects.  SunCal Management, LLC, a SunCal Affiliate, has management contracts with respect to all of the Projects and manages the Debtors' day-to-day business affairs.

The seventeen Debtors who are referred to herein as the "Voluntary Debtors" are wholly owned by SunCal Affiliates, and consequently the SunCal Affiliates have full corporate governance authority over these entities.  The Voluntary Debtors own eleven (11) of the Projects.  As described herein, SJD Partners formerly owned the Pacific Point Project.

In the case of the nine Trustee Debtors, the SunCal Affiliates and the Lehman Affiliates initially shared ownership equally (50% each). However, after the Petition Date, the SunCal Affiliates became the owner of hundred percent (100%) of the equity in two of the nine Trustee Debtors - SunCal Heartland and SunCal Marblehead.  As of the Petition Date, the Trustee Debtors own nine (9) Projects.  However, as mentioned, the 10,000 Santa Monica Project was sold postpetition pursuant to a Final Order of the Bankruptcy Court.  Attached hereto as Exhibit "2" is a

1    chart that sets forth the appraised value of the Debtor's Projects.  This chart lists both the Lehman

2    Lenders' value estimates and SunCal's valuation estimates.[2]

3    ~~4.2~~ **4.2 Factual Circumstances Leading to the Filing of the Debtors' Chapter 11 Cases.**

4          **4.2.1    Introduction**.

5          In this section of the Disclosure Statement, the SunCal Plan ~~Proponent~~Proponents have

6    provided a description of the relationship between the Debtors and the Lehman Entities, and more

7    specifically the Debtor's relationship with Lehman ALI and Danske Bank.

8          **4.2.2    Background of the SunCal Companies**.

9          SunCal is a family-owned and operated real estate business that has been successfully

10   developing properties throughout the western United States for over 70 years.  SunCal's business

11   focuses upon the "development" of residential land. A typical SunCal development begins with the

12   acquisition of one or more parcels of raw land. Thereafter, the SunCal team develops a master plan

13   for the acreage that incorporates streets, homes, parks, schools and commercial areas, and then it

14   works with the applicable municipal planning authorities (the city, county, state and federal) to

15   secure the necessary approvals or "entitlements" to gain approval of the Plan. This process, which

16   requires the assistance of land planners, civil engineers, architects, lawyers, and other land

17   specialists, takes a period of years. Once the master plan is approved, SunCal provides for the grading

18   of the project and the installation of the foundational infrastructure (streets, utilities, etc.) and then

19   sells the lots or parcels within the project to merchant builders.

20         **4.2.3    The Origins of the SunCal/Lehman Joint Venture**.

21         SunCal historically financed its projects with loans and/or equity from a number of different

22   sources.  However, beginning in 1997, an increasing number of SunCal's projects were financed by

23   the Lehman Entities, as Mark Walsh ("Walsh"), the head of LBHI's Global Real Estate Group,

24   began cultivating a business relationship with SunCal's principals.

25         By 2003, the Lehman Entities and SunCal had entered into joint ventures involving

26   approximately fifteen projects.  By 2007, that number had grown to over forty, and the Lehman

27   Entities had become, with limited exceptions, the exclusive provider of financing for the SunCal

28

---

[2] Values may have changed since these analyses were prepared.

MAINDOCS-#~~163421-v5-SCC~~164994-v3-SunCal_3rd_Am_CC_DS.DOC

1   Projects pursuant to a written agreement executed in 2006.  The Lehman Entities also consisted of

2   the Lehman Equity Members that either directly or indirectly owned a fifty percent (50%) equity

3   interest in all nine of the Trustee Debtors.

4       In their dealings with SunCal, the Lehman Representatives made no distinction between

5   Projects financed by Lehman ALI and Projects financed by LCPI. They also made no distinction

6   between the Debtors in which Lehman Equity Members held 50% equity memberships or the

7   Debtors in which the Lehman Entities held no equity membership interest.  As agents of the financial

8   partner in the parties' joint venture, the Lehman Representatives would determine which Lehman

9   Entity would provide financing on which Projects, and would dictate the structure that the financing

10  would take, according to whatever suited the Lehman Entities' needs.

11          **4.2.4    Lehman's Effective Control over the Management of the Debtors and**

12                  **Promises of Ongoing Funding.**

13      Prior to the market downturn in the middle of 2007, Lehman Representatives afforded

14  SunCal substantial discretion in the management and development of the Projects.  The Debtors

15  would contract with third-party vendors to perform grading, health and safety compliance,

16  construction, landscaping, and other necessary services on the Project sites, and they would work

17  with the local municipalities to obtain the necessary entitlements and other authorizations necessary

18  to proceed with development.  The Lehman Representatives, SunCal and the Debtors would discuss

19  anticipated quarterly expenditures at periodic budget meetings, and , as expenses were incurred each

20  month, SunCal and the Debtors would submit requests for payment to the Lehman Representatives,

21  supported by the necessary documentation. The Lehman Representatives would then provide the

22  funding necessary to pay these expenses.

23      During the third quarter of 2007, the foregoing management and payment dichotomy

24  changed, after the real estate market experienced a sudden downturn, and many of the Projects

25  significantly declined in value.  In response to this dramatic economic change, a series of high level

26  discussions occurred between SunCal's representatives and the Lehman Representatives -- including

27  Walsh, Paul Hughson ("Hughson") and Frank Gilhool ("Gilhool"), the Managing Directors of

28  Lehman's Global Real Estate.  In these discussions, SunCal's representatives, acting on behalf of the

1   Debtors, expressed concerns about the loans on the Projects being out of balance, and suggested

2   shutting down the Projects, or at least slowing the pace of development.  However, Walsh

3   specifically instructed SunCal not to slow down or stop work.  He assured SunCal that the Lehman

4   Entities would provide the necessary funding to pay vendors and to keep the development of the

5   Projects moving forward.

6          The foregoing assurances of payments were confirmed in numerous telephone conversations

7   between Gilhool and SunCal's COO, Frank Faye ("Faye"), SunCal's General Counsel, Bruce Cook

8   ("Cook"), Steve Elieff and/or Bruce Elieff that took place during 2007 and 2008. In each exchange,

9   Gilhool assured SunCal that the Lehman Entities were committed to funding the debts and

10  obligations being incurred at the Projects and they continued to insist that work proceed.

11         During this time frame, the Lehman Representatives became much more "hands on,"

12  scrutinizing and approving all budgets and expenses through a new control and approval structure.

13  Under the new structure, SunCal would submit budgets to the Lehman Representatives on a weekly

14  basis and explain, during period conference calls, what Project payables they believe had to be paid

15  and what work had to be performed on the Projects.  The Lehman Representatives would then

16  unilaterally decide what future work would proceed, the Lehman Representatives would authorize

17  the work and the Lehman Representatives would decide what payables would be paid timely by

18  designating them as "urgent," and what other payables were not urgent and hence would not be paid

19  on a timely basis.  However, even under this new Lehman controlled management and payment

20  regime, the Lehman Representatives made it clear that all payables being incurred would be funded.

21              **4.2.5     The 2008 Restructuring Agreement.**

22         By the fall of 2007, both SunCal and the Lehman Representatives contemplated entering into

23  a restructuring agreement in the near term, with a closing to occur no later than January or February

24  of 2008.  However, this transaction was delayed by the Lehman Entities' extensive documentation

25  demands until May 23, 2008. On this date, SunCal and most of the Debtors finally entered into an

26  omnibus "Restructuring Agreement" with LBHI, Lehman ALI and the other Lehman Entities.  The

27  same Lehman Representative signed the Restructuring Agreement on behalf of all of the Lehman

28  Entities.

1    Pursuant to the Restructuring Agreement, Lehman ALI, "as the Lender with respect to each

2    Loan," committed, among other things, to: (1) make advances under existing loans to fund the

3    continuing costs necessary to preserve the value of the Projects; (2) move forward to resolve the

4    accrued outstanding subcontractor payables, i.e., to make sure that the Projects' creditors were paid

5    for their work; and (3) to close the transaction, whereby newly-created Lehman Entities would

6    assume the debt and obligations of the Projects.

7    As originally executed in May 2008, the Restructuring Agreement applied to twelve of the

8    twenty Projects (as well as several other projects not at issue in the Lehman Adversary Proceeding):

9    (1) Acton Estates; (2) Beaumont Heights; (3) Bickford Ranch; (4) Emerald Meadows; (5) Heartland;

10   (6) Johannson Ranch; (7) Marblehead; (8) Northlake; (9) Oak Valley; (10) Pacific Point; (11) Ritter

11   Ranch; and (12) Summit Valley.  The Debtors that owned and/or held equity interests in the entities

12   that owned  these Projects were signatories to the May 2008 agreement.[3]

13   Between May and August 2008, the parties agreed to add four additional projects to the

14   Restructuring Agreement: (1) Del Rio; (2) Joshua Ridge; (3) Palm Springs Village; and (4) Tesoro

15   Burnham, and the four Debtors associated with these Projects—SunCal Del Rio, SCC Communities,

16   SunCal PSV, and SunCal Tesoro.  Only four Projects were  not included in the Restructuring

17   Agreement: Century City, Delta Coves, Oak Knoll and Del Amo.  Accordingly, the four Debtors

18   associated with these Projects—SunCal Century City, Delta Coves, SunCal Oak Knoll and SunCal

19   Torrance—were not signatories thereto.  Lehman ALI was the lender on each of these Projects and ,

20   and as with the other Projects, Lehman Ali continued to insist that these four debtors  proceed with

21   the development of the four Projects, it approved all expenses, and it continually provided

22   assurances of payment.

23   **4.2.6    The Lehman Lenders Hire Radco.**

24   _____

25   [3] Specifically, the Restructuring Agreement was entered into by, among others, the "Borrowers," "Grantors" and
     "Pledgors," as defined in Annex 1 thereto.  The "Borrowers" included SunCal Marblehead, SunCal Heartland, SunCal
26   Northlake, SunCal Oak Valley, SJD Partners, Palmdale Hills, SCC Palmdale, SunCal I, SunCal III, and SunCal Bickford.

27   The "Grantors" included SunCal Marblehead, SunCal Heartland, SunCal Northlake, SunCal Oak Valley, SJD Partners,
     Palmdale Hills, SunCal Bickford, SunCal Acton, SunCal Summit and SunCal Emerald, and Debtors SunCal Beaumont
28   and SunCal Johannson.

     The "Pledgors" included SCC Palmdale, SunCal I, SunCal Summit and SJD Development.

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    Subsequent to the execution of the Restructuring Agreement, Lehman ALI arranged for a

2    third party, Radco, to directly settle outstanding contractor payables, as its agent.  Radco was

3    provided some limited funding and authority to negotiate settlements, and did in fact reach settlement

4    with a number of creditors.  The funding for these settlements, whether the debts related to Lehman

5    ALI or LCPI funded Projects, came from the same source.  Lehman ALI and LCPI also provided

6    approval for new work on the Projects, and Lehman ALI paid for some of this work.  However, this

7    funding was minimal and it soon stopped.

8    In August 2008, Lehman ALI withdrew funding and settlement authority from Radco, leaving

9    millions of dollars in outstanding contractor payables unresolved, notwithstanding the contrary

10    provisions in the Restructuring Agreement.  Leman Ali's actions also impaired the Debtors' ability to

11    resolve ongoing public health and safety issues arising at the Projects.  Ultimately,  only a fraction of

12    the total outstanding payables were resolved, contrary to the  past promises made by Lehman

13    Representatives.

14    **4.2.7    The Lehman Lenders' Failure to Close on the Settlement Agreement.**

15    Pursuant to the terms of the Restructuring Agreement, the parties agreed to enter into a

16    Settlement Agreement, the form of which was attached to the Restructuring Agreement.  The

17    Settlement Agreement provided for the transfer of the Projects included within the Restructuring

18    Agreement to a series of newly formed Lehman-controlled entities (each with "SCLV" in its name,

19    for "SunCal-Lehman Venture"). The agreement further provided that the entity taking title to the

20    Project would assume the  Lehman Lender debt obligations associated with the Projects, assume

21    certain bond obligations associated with the Projects, and provide indemnifications to SunCal and

22    the Debtors for unpaid claims.

23    On August 25, 2008, the Settlement Agreement and a series of related documents were

24    formally executed by SunCal and the applicable Lehman Lenders and Lehman Equity Members at a

25    meeting held in Los Angeles on August 25, 2008.  Once these documents were signed, all that

26    remained was the mechanical closing of the series of transactions described in the Settlement

27    Agreement. Since all of the conditions precedent to the closings had been satisfied, or could have

28    been satisfied at the meeting, this should have occurred at the August 25, 2008 meeting. However,

1    the Lehman Representative asked SunCal to extend the closing date for thirty days, to September 30,

2    2008. Accordingly to the Lehman Representatives, this short extension would enable them to secure

3    certain outstanding third party consents. Although SunCal knew these third party consents were

4    readily available, within a few days they agreed to this extension, believing the request was made in

5    good faith. In fact, as more fully explained blow, it was not.

6              **4.2.8    The Lehman Lenders' Undisclosed Sale of Most of the Debtors' Loans.**

7              As explained above, the Settlement Agreement was duly executed by all parties at a formal

8    closing meeting held on August 25, 2008. When the parties signed this agreement, which was a

9    binding contract, they both represented that they intended and had the power and capacity to perform

10   all of the obligations undertaken therein. However, in the case of the Lehman Entities, this

11   representation was later discovered to be false.

12             When the closing occurred on August 25, 2008, the Lehman Lenders had already sold the

13   very obligations they were agreeing to assume and restructure in the Settlement Agreement  to either

14   Fenway Capital, Lehman Re, and in the case of SunCal Century City, Danske Bank, pursuant to

15   repurchase agreement.

16             **4.2.9    Alvarez and Marsal Take Over Control of the Lehman Entities After the**

17             **Chapter 11 Filings of LBHI and LCPI.**

18             LBHI filed for bankruptcy in September 2008 and LCPI filed for bankruptcy in October

19   2008.  After LBHI's filing, Bryan Marsal ("Marsal") of Alvarez & Marsal ("A&M") was appointed

20   to serve as LBHI's Chief Restructuring Officer. Marsal and A&M are in charge of liquidating the

21   now defunct Lehman Entities, including Chapter 11 debtors LBHI and LCPI, and the non-bankrupt

22   Lehman Lenders (Lehman ALI, OVC, and Northlake Holdings, as well as the non-bankrupt Lehman

23   Equity Members.

24             Although A&M was not employed until after the events that occurred on August 25, 2008

25   described above, it should be noted that A&M hired the same law firm that represented the Lehman

26   Lenders in the August 25, 2008 meeting – Weil, Gotshal & Manges, LLP. Moreover, as more fully

27   explained herein, it was A&M that directed Lehman Ali not to perform its contractual obligations

28   under the Settlement Agreement after September of 2008. Accordingly, the same individuals that

1   ~~caused the damages to unsecured creditors by insisting upon the breach of the Settlement~~

2   ~~Agreement, are now asking for their vote in the competing plan filed by the Lehman Lenders.~~

3          LBHI's bankruptcy filing and the Lehman Lenders refusal, at A&M's direction, to close the

4   transactions provided for under the Settlement Agreement as agreed, were not small matters. They

5   severely damaged the Debtors. Although the Debtors were not proceeding with any new construction

6   or development, the Debtors were still required to expend significant sums on site security, erosion

7   control, property taxes and other measures in order to prevent the Projects from becoming a public

8   safety hazard, and in order to avoid the loss of valuable entitlements, and to mitigate penalties and

9   fines being incurred by the Projects.  Although SunCal and the Debtors repeatedly requested that the

10  Lehman Entities pay for critical health and safety and value preservation measures on the Projects,

11  these efforts were unavailing.

12         Between October 9 and November 4, 2008, SunCal's general counsel Cook sent Robert

13  Brusco, an authorized agent of the Lehman Entities, nearly two dozen letters requesting that the

14  Lehman Lenders provide the funding necessary to address critical needs on the Projects as promised.

15  A summary of these health and safety notices are attached hereto as Exhibit "5".  The Lehman

16  Entities ignored these requests until November 2008, when Brusco, purportedly on behalf of the

17  Lehman Lenders, delivered the message that the Lehman Lenders were unwilling to fund the

18  Projects and that, instead, they intended to foreclose on all of the Projects.

19         As a result, as set forth in Exhibit "4," there are now over 240 vendors, municipalities,

20  counties and bonding companies claiming over $400 million in work, improvements and property

21  tax claims against the Projects.  Substantially all of these sums are due to work performed or bonded

22  at Lehman's request based upon Lehman's promises of payment.

23

24

25

26

27

28                                          **V.**

# SIGNIFICANT EVENTS IN THE DEBTORS' CHAPTER 11 CASES

## 5.1. 5.1 Voluntary Debtors.

### 5.1.1    Joint Administration of the Voluntary Debtors and the Trustee Debtors.

Since their respective Petition Dates, the seventeen (17) Voluntary Debtors have continued to operate as "debtors-in-possession," subject to the supervision of the Bankruptcy Court and in accordance with the Bankruptcy Code.  The Voluntary Debtors are authorized to operate their businesses in the ordinary course during the Chapter 11 proceedings.  Transactions outside the ordinary course of business must be approved by the Bankruptcy Court.

The Voluntary Debtors' Cases are being jointly administered pursuant to orders entered on November 19, 2008 and December 9, 2008.  The Voluntary Debtors' Cases are being jointly administered with the Trustee Debtors' cases pursuant to an order entered on March 11, 2009.

The Voluntary Debtors have employed Winthrop Couchot Professional Corporation as their general insolvency counsel, and the MB Firm as their special litigation counsel.

## 5.2. 5.2 The Trustee Debtors and Their Professionals and the Trustee Debtors' Committee and Its Professionals.

Orders for Relief were entered in the involuntary cases beginning on January 6, 2009.  The Trustee Debtors are represented by their duly-appointed Chapter 11 Trustee, Mr. Steven M. Speier pursuant to orders of the Bankruptcy Court entered on January 15, 2009.  The Trustee Debtors' Cases were shortly thereafter jointly administered with the Voluntary Debtors Cases pursuant to an Order of the Court.

The Chapter 11 Trustee has employed the Lobel Firm as the Chapter 11 Trustee's general insolvency counsel and the MB Firm, as special litigation counsel and Squar Milner, LLP as its accountants

The Trustee Debtors' Committee has employed Weiland, Golden, Smiley, Wang Ekvall & Strok as its general insolvency counsel.

## 5.3. 5.3 SunCal's Discovery of the Danske Bank Repo.

1    In the Debtor's efforts to sell the 10,000 Santa Monica Project to D.E. Shaw during the course

2    of the case and through independent discovery efforts, it was discovered that the SunCal Century City

3    Loan had been sold to Danske Bank years earlier pursuant to a repurchase agreement.  Therefore,

4    Danske Bank was the true holder of the SunCal Century City Loan Agreement and filed a claim

5    against the Debtor in the amount of $120,000,000

6    5.4.  **5.4  The Sale of the 10,000 Santa Monica Project to Danske Bank**.

7    The Debtor owned the 10,000 Santa Monica Project and this project was subject to an alleged

8    first priority deed of trust held by Danske Bank pursuant to the SunCal Century City Loan

9    Agreement.  However, during the Chapter 11 case the 10,000 Santa Monica Project was sold to

10    Danske Bank pursuant to a settlement agreement, in full satisfaction of the amounts owed under the

11    SunCal Century City Loan Agreement, plus a payment by Danske Bank of $5.3 million.  Pursuant to

12    this settlement agreement, the Debtor retained the right to pursue the Lehman Preference Claim

13    against Lehman ALI.  Danske Bank has acknowledged that it has not received any of the payments

14    that were a part of the Lehman Preference Claim.

15    **VI.**

16    **TREATMENT OF UNCLASSIFIED CLAIMS**

17    6.1  **6.1  Introduction**.

18    As required by the Bankruptcy Code, the Plan places Claims and Interests into various

19    Classes according to their right to priority.  However, certain types of Claims are not classified in any

20    Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the Code.

21    They are not considered impaired and they do not vote on the Plan, because they are automatically

22    entitled to specific treatment provided for them in the Code.  As such, the SunCal Plan

23    Proponent Proponents have not placed the following Claims in a Class.  The treatment of these

24    unclassified Claims is as provided below.

25    6.2  **6.2  Treatment of Allowed Administrative Claims**.

26    The Code requires that all Allowed Administrative Claims be paid on the later of Effective

27    Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

28    treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such

1   Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be

2   paid from the applicable Distribution Account(s).

3          Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different

4   treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent

5   shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date,

6   (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed

7   Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according

8   to its terms.

9        **6.3 6.3 Administrative Claims Bar Date.**

10        All applications for final compensation of Professionals for services rendered and for

11   reimbursement of expenses incurred on or before the Effective Date and all other requests for

12   payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2) or

13   507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations

14   and routine post-petition payroll obligations incurred in the ordinary course of the Debtor's

15   post-petition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for

16   which no bar date shall apply) shall be Filed with the Bankruptcy Court and served upon the Plan

17   Trustee no later than the Administrative Claims Bar Date, unless such date is extended by the

18   Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment of an

19   Administrative Claim that is subject to the General Administrative Claims Bar Date and that is not

20   Filed and served on or before the Administrative Claims Bar Date shall be forever barred; any party

21   that seeks payment of Administrative Claims that (i) is required to file a request for payment of such

22   Administrative Claims and (ii) does not file such a request by the deadline established herein shall be

23   forever barred from asserting such Administrative Claims against the Debtor, the Plan Trust, their

24   estates, or any of their property.

25        **6.4 6.4 Treatment of Unsecured Tax Claims.**

26        Tax Claims are certain unsecured income, employment and other taxes described by Code

27   Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim receive

28   the present value of such Claim in deferred cash payments, over a period not exceeding five (5) years

1  from the petition date and that such treatment not be less favorable than the treatment accorded to

2  non priority unsecured creditors.

3        At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

4  entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

5  each three-month period following the Effective Date, during a period not to exceed five years after

6  November 6, 2008, totaling the principal amount of such Claim plus simple interest on any unpaid

7  balance from the Effective Date, calculated at the interest rate available on ninety (90) day United

8  States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of the

9  Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more favorable

10  terms to the Debtor(or the Plan Trust after the Effective Date) than the treatment set forth in clause

11  (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

12  **VII**.

13  **CLASSIFICATION OF CLAIMS AND INTERESTS**

14        As required by the Code, the Plan places Claims and Interests into various Classes according

15  to their right to priority and other relative rights.  The Plan specifies whether each Class of Claims or

16  Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class will receive.  The

17  table below lists the Classes of Claims established under the Plan and states whether each particular

18  Class is impaired or left unimpaired by the Plan.  A Class is "unimpaired" if the Plan leaves unaltered

19  the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are

20  entitled, with certain exceptions specified in the Bankruptcy Code.

21

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 1** | | **Claim Nos.** |
| Class 1.1 | The Holders of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted against the Debtor. | Various Filed and Scheduled Claims in the Estimated Amount of $0 |

26

27

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS AGAINST THE DEBTOR |
|---|

| Class 2 | Claimant | ~~Scheduled Claim~~ Scheduled Claim Nos. |
|---|---|---|
| Class 2.1 | Claimants holding Allowed Unsecured Claims against the Debtor. | Various Filed and Scheduled in the Estimated Amount of $4,390,043 |

| CLASSIFICATION OF INTEREST HOLDERS AGAINST THE DEBTOR | | |
|---|---|---|
| **Class 3** | **Holder** | **Amount** |
| Class 3.1 | Holders of Allowed Interests in Sun Cal Century City held by Lehman SunCal Real Estate Fund LLC (50%) and LBREP II/SunCal Land Fund Member LLC (50%). | 50% Each |

# VIII.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

~~8.1.~~ **8.1 The Plan's Treatment of Holders of Priority Claims Against the Debtor (Class 1.1)**.

The treatment of the Holders of Allowed Priority Claims under the Plan shall be as follows:

    A.    The Holder(s) are unimpaired under the Plan; and

    B.    The Holder(s) shall be paid in full from the Distribution Account on the later of (a) the Effective Date, (b) the date such Claim becomes an Allowed Priority Claim, (c) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (d) the date that any Disputed Administrative and Priority Claims are all resolved by Final Orders of the Bankruptcy Court..

~~8.2.~~ **8.2 The Plan's Treatment of Holders of Allowed General Unsecured Claims Against the Debtor (Class 2.1).**

The rights of Holders of Allowed Class 2.1 Claims under the Plan are impaired under the Plan. Under the Plan, each claimant shall receive an initial Distribution ("Initial Distribution") from the Available Cash constituting a pro-rata share of any Available Cash, after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims. The Initial Distribution shall be made on the later of the Distribution Date or within thirty days after the resolution of all Disputed Administrative Claims and Priority Claims.

1    Thereafter, the Holders of Allowed Class 2.1 Claims shall receive potential supplemental

2    Distributions (the "Supplemental Distributions") consisting of their pro-rata share of any Net

3    Litigation Recoveries, if any, until such Holders have received a Maximum Distribution.

4    **8.3. 8.3 The Plan's Treatment of Holders of Allowed Interests Against the Debtor**

5    **(Class 3.1).**

6    The Interests of the Holders in Class 3.1 are impaired under the Plan.  All such Interests shall

7    be cancelled as of the Effective Date and no Distribution shall be made to these Holders on account

8    of such Interest(s).

9    **IX.**

10   **ACCEPTANCE OR REJECTION OF THE PLAN**

11   **9.1. 9.1 Introduction.**

12   PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

13   SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

14   CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

15   discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

16   which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtor cannot

17   represent that the discussion contained below is a complete summary of the law on this topic.

18   Many requirements must be met before the Court can confirm the Plan.  Some of the

19   requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

20   the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

21   whether the Plan is feasible.  The requirements described herein are _not_ the only requirements for

22   confirmation.

23   **9.2. 9.2 Who May Object to Confirmation of the Plan.**

24   Any party in interest may object to the confirmation of the Plan, but as explained below not

25   everyone is entitled to vote to accept or reject the Plan.

26

27   **9.3. 9.3 Who May Vote to Accept/Reject the Plan.**

28

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the

2    Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2)

3    Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected").  The

4    votes will be tabulated on a Debtor by Debtor basis.

5        9.4. **9.4 What Is an Allowed Claim/Interest**.

6        As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed

7    Interest to vote.

8        9.5. **9.5 What Is an Impaired Class**.

9        A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims

10   or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults.

11   In this case, the Debtor believes that all Classes, except Class 1.1, are impaired.

12       9.6. **9.6 Who Is Not Entitled to Vote**.

13       The following four types of Claims are not entitled to vote: (1) Claims that have been

14   disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy

15   Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under

16   the Plan.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to

17   have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8)

18   are not entitled to vote because such Claims are not placed in Classes and they are required to receive

19   certain treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or retain

20   any property under the Plan do not vote because such Classes are deemed to have rejected the Plan.

21   The Debtor believes that all Classes are entitled to vote except Class 1.1. This class is not impaired

22   under the Plan and consequently is not entitled to vote. They are conclusively deemed to have

23   accepted the Plan.  The Interests held by the Holders in Class 3.1 are being cancelled under the Plan;

24   accordingly these Interest Holders are deemed to have voted to reject the Plan.

25       EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

26   HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

27       9.7. **9.7 Who Can Vote in More than One Class**.

28

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and Subordinated Note Claims), and may vote the Claims held in each Class.

**9.8. 9.8 Votes Necessary for a Class to Accept the Plan.**

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

**9.9. 9.10 Treatment of Nonaccepting Classes.**

As noted above, even if there are impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by which a plan may be confirmed and become binding on non-accepting Classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.

**9.11. 9.10. Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The SunCal Plan ProponentProponents will ask the Court to confirm the Plan by cramdown on any impaired Class if such Class does not vote to accept the Plan.

**X.**

1    **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

2    This Section is intended to explain how the Plan Trustee intends to effectuate the liquidation

3    contemplated by the Plan, and how the Trustee intends to fund the obligations to Holders of Allowed

4    Claims as provided in the Plan.  This section provides information regarding the funding sources for

5    Plan obligations, the establishment of the Plan Trust, and other material issues bearing upon

6    performance of the Plan.

7    ~~10.1.~~ **10.1 Removal of Chapter 11 Trustee**.

8    As of the Effective Date, the appointment of the Chapter 11 Trustee in the Debtor's Case

9    shall terminate, and possession and control over all property within this estate shall pass to the Plan

10   Trust.

11   ~~10.2.    The Plan Trust and Plan Trustee~~

12   ~~A.~~

13   **10.2    Establishment and Operations of the Plan Trust**.

14   The Plan Trust shall be established and shall become effective on the Effective Date.  The

15   Plan Trust is created pursuant to the Plan and the Confirmation Order, and separate trust instrument

16   shall be required.  The primary purpose of the Plan Trust is the liquidation and distribution of the

17   Assets transferred to it, with no objective to continue or engage in the conduct of a trade or business,

18   except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan

19   Trust.  The Plan Trust shall hold and administer the Assets of the Debtor and the Distribution in

20   accordance with the terms of the Plan.

21   ~~B.    The Plan~~

22   **10.3    Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust.**

23   On the Effective Date, title to and possession of all property of the Debtor shall be deemed

24   transferred and delivered to the Plan Trust, without further act or action under any applicable

25   agreement, law, regulation, order or rule of law.

26   Pursuant to Section 1123(b)(3) of the Bankruptcy Code, all litigation Claims shall be a part

27   of the Plan Trust, whether or not pending on the Effective Date.  Unless a Litigation Claim is

28   expressly waived, relinquished, released, sold, compromised or settled in the Plan or in a Final

1    Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may pursue

2    such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon

3    a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior written notice

4    and opportunity to object to the proposed action.  Any disputes concerning the settlement or

5    abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no

6    less than ten (10) days' notice to the objecting party.

7            The SunCal Plan Proponents shall have the right to move forward with the Lehman

8    Preference Claim in the event the SunCal Plan Proponents retain counsel, on a contingency fee basis,

9    to prosecute the Lehman Preference Claim.  The costs associated with the prosecution of such

10   litigation shall be paid from the Plan Reserve.  Based on the contingency fee structure of any such

11   litigation, Creditors may receive higher recoveries in the event that the SunCal Plan Proponents are

12   successful in such litigation.

13           The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

14   monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

15   in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

16   that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

17   Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs

18   incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors'

19   Committee shall receive notice of and the right to review all payments and Distributions.

20           The Plan trustee shall liquidate the Assets and shall Distribution the Available Cash and the

21   Net Litigation Recopies in accordance with the terms of the Plan.  All distributions to the Holders of

22   Allowed Claims shall be from

23           All Litigation Recoveries realized or obtained by the Plan Trustee or the Trustee Debtors'

24   Committee shall be promptly deposited into the applicable Distribution Account(s).  Except as

25   otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall be free

26   and clear of all Claims and Liens and shall only be expended in accordance with the provisions of the

27   Plan.

28       **10.4    Payment of Plan Trust Expenses**.

1    The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be
2    paid, or adequate reserves shall be created for the payment of such expenses, prior to any distribution
3    to the Plan Trust Beneficiaries.
4
5    **10.5    The Plan Trust Distribution System.**
6    The Plan Trustee shall establish a separate "Distribution Account" for the Debtor at an FDIC
7    insured bank. The Debtor's Available Cash, whether on hand as of the Effective Date or received
8    thereafter, shall be deposited into the Debtor's Distribution Account.  These funds will then be used
9    to pay the claims of Creditors holding Allowed Claims in their order of priority as provided for in the
10    Plan Trust.  Any person or entity.  Persons dealing with the Plan Trustee, or seeking to assert Claims
11    against the Debtor or, the Debtor's Estate or the Plan Trust, shall look only to property of the Debtor,
12    the Estate or the Plan Trust to satisfy any liability to such person or entityPersons, and the Plan
13    Trustee shall have no corporate, personal, or individual obligation to satisfy any such liability.
14    C.      Duration of the 10.6    The Plan Trust.Trustee.
15    The Plan Trust shall have an initial term of five (5) years; provided, however, that, the tem of
16    the Plan Trust may be extended for a finite term upon a finding of "cause" by the Court.  The Plan
17    Trustee may seek an extension of the Plan Trust's term by Motion filed by the expiration of the term
18    to be extended.  The Plan Trust may be terminated earlier than its scheduled termination if (a) the
19    Court has entered a Final Order closing the Case pursuant to 11 U.S.C. §350(a) and (b) the Plan
20    Trustee has administrated all assets of the Plan Trust and performed all other duties required by the
21    Plan.
22                    D.      The Plan Trustee.
23                    1. 10.6.1 Appointment.  Acquisitions shall be Plan Trustee of the Plan Trust.  The
24    appointment of the Plan Trustee shall be effective as of the Effective Date.
25                    2. 10.6.2 Term.  Unless the Plan Trustee resigns, diesdissolves or is removed by
26    Court order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant
27    to the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to
28

1    termination of the Plan Trust, the ~~United States Trustee~~UST shall select and recommend to the Court

2    a successor ~~trustee.~~Plan Trustee.

3                         ~~3.~~ **10.6.3 Powers and Duties**.  On the Effective Date, the Plan Trustee shall have the

4    rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code §§505,

5    1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan and the

6    Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with the Plan.

7    Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the extent

8    applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan Trustee

9    shall be authorized, empowered and directed to take all actions necessary to comply with the Plan

10   and exercise and fulfill the duties and obligations arising thereunder, including, without limitation

11   to:

12                         ~~i.~~ i. employ, retain, and replace one or more attorneys, accountants, auctioneers,

13   brokers, managers, consultants, other professionals, agents, investigators, expert witnesses,

14   consultants, and advisors as necessary to discharge the duties of the ~~Liquidating~~Plan Trustee under

15   the Plan;

16                         ~~ii.~~ ii. control and effectuate the Claims reconciliation process, including to object to,

17   seek to subordinate, compromise or settle any and all Claims against the ~~Debtor~~Debtors pursuant to

18   the terms of the Plan;

19                         ~~iii.~~ iii. open, maintain and administer bank accounts as necessary to discharge the

20   duties of the Plan Trustee under the Plan;

21                         ~~iv.~~ iv. make Distributions to the Holders of Allowed Claims in accordance with the

22   Plan;

23                         ~~v.~~ v. retain professionals to assist in performing his or her duties under the Plan;

24                         ~~vi.~~ vi. pay reasonable and necessary professional fees, costs, and expenses;

25                         ~~vii.~~ vii. investigate, analyze, commence, prosecute, litigate, compromise, settle,

26   dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of the

27   Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and

28   appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of

1    Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests of the Plan

2    Trust;

3    viii. viii. administer, sell, liquidate, or otherwise dispose of the Assets in accordance

4    with the terms of the Plan;

5    ix. ix. incur and pay reasonable and necessary expenses in connection with the

6    performance of the Plan Trustee's duties under the Plan;

7    x. x. represent the Estates before the Court and other courts of competent jurisdiction

8    with respect to mattes matters concerning the Plan Trust;

9    xi. xi. seek the examination of any entity under the subject to the provisions of

10    Bankruptcy Rule 2004;

11    xii. xii. comply with applicable orders of the court and any other court of competent

12    jurisdiction over the matters set forth in the Plan;

13    xiii. xiii. comply with all applicable laws and regulations concerning the matters set

14    forth in the Plan;

15    xiv. xiv. exercise such other powers as may be vested in the Plan Trust pursuant to

16    the Plan, the Confirmation Order, or other Final Orders of the Court;.

17    xv. xv. execute any documents, instruments, contracts, and agreements necessary

18    and appropriate to carry out the powers and duties of the Plan Trust;

19    xvi. xvi. (1) seek a determination of tax liability under §505 of the code, (2) pay

20    taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

21    r3equired required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust

22    as a "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

23    behalf of the Plan Trust, and 95(5) pay taxes, if any, payable by the Plan Trust; and

24    xvii. xvii. stand in the shoes of the Debtor for all purposes.

25    **E. 10.6.4 Retention of Professionals and Compensation Procedure.**

26    On and after the Effective Date, the Plan Trustee may, without further

27    application or Motion, notice, hearing, or Court order, engage or employ such professionals and

28    experts as may be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

carrying out the provisions of the Plan.  The Plan Trustee may employ such professionals on any

reasonable terms and conditions of employment to be determined by the Plan Trustee.  For the

services performed on and after the Effective Date, the professionals engaged by the Plan Trustee

(the "Plan Trustee Professionals") shall receive reasonable compensation and reimbursement of

expenses in a manner to be determined by the Plan Trustee.

**F.  10.6.5 Fees and Expenses.**

The Acquisitions shall not receive any compensation for the services it performs as

the Plan Trustee and the.  The Plan Trustee Professionals shall be entitled to reasonable

compensation for their services, and reimbursement of expenses.  The Plan Trustee shall be paid on

an hourly basis at the rate of $575.00, as may be increased from time to time as is consistent with the

Plan Trustee's ordinary practices.  Compensation of the Plan Trustee and the costs and expenses of

the Plan trustTrust (including, without limitation, fees and expenses of the Plan Trustee

Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order,

notice or application to the Court, the reasonable fees and expenses of the Plan Trustee and the Plan

Trustee Professionals, as necessary to discharge the Plan trusteeTrustee's duties under the Plan.  The

Plan Trustee shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the

expenses of the Plan Trustee and the expenses and fees of the Plan trustee and the Plan Trustee

Professionals before making any Distributions under the Plan.

**G.  10.6.6 Limitation of Liability and Indemnification.**

Neither the Plan Trustee nor his or her employees, Plan Trustee ProfessionalsThe

Debtor, the Trustee Debtors' Committee, the Plan Sponsor, the SunCal Plan Proponents, the Plan

Trustee, their Professionals, nor any of their respective members, officers, directors, shareholders,

employees, or agents hall(the "Indemnified Parties") shall be liable (a) for any loss or damages by

reason of any action taken or omitted by him or her, except in the case of fraud, willful misconduct,

bad faith, or gross negligence, or(b) for any act or omission made in reliance upon the

Debtor'sDebtors' books and records or upon information or advice given to the Plan trusteeTrustee

by his or her professionals, or (c) for any action taken or omission made in connection with or related

to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the

approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the fullest extent permitted by applicable statute and case law.  Except as otherwise provided in this Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, consent, or other document believed by him or her to be genuine and to have been signed by the proper party or parties.

The Plan Trustee and his or her employees, Plan Trustee Professionals or agents (collectively, the "The Indemnified Parties" and each, an "Indemnified Party") shall be indemnified and receive reimbursement from and against any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature, which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct, bad faith, or gross negligence.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Trustee out of the Plan Trust assetsAssets.  The Plan Trustee shall not be personally liable for the payment of any Plan Trust expense or claim or other liability of the Plan Trust, and no Person shall look to the Indemnified Parties personally for the payment of any such expense or liability.  This indemnification shall survive the deathdissolution, resignation or removal, as may be applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit of the Plan Trustee's and the Indemnified Person's heirs and assigns.

H.    Plan Trustee as Successor.

Pursuant to Bankruptcy Code the Plan Trustee shall be the successor to the Debtor and the Trustee for all purposes.  The Plan trustee shall stand in the same position as the Debtor and the Trustee with respect to any claim the Debtor may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Plan Trust shall succeed to all of the Debtor's rights to preserve, assert, or waive any such privilege.

1    I.    Vesting of Assets.

2    On the Effective Date, all Assets shall be transferred to and vest in the Plan Trust free and

3    clear of all Claims, liens, encumbrances, or other interests (unless otherwise stated expressly in the

4    Plan).

5    J.    Plan Trustee as Disbursing Agent.

6    The Plan Trustee shall make all Distributions required under the Plan, subject to the terms

7    and provisions of the Plan.  The Plan Trustee shall make continuing efforts to dispose of the Plan

8    Trust's assets, make Distributions, and not unduly prolong the duration of the Plan Trust.

9    K.    No Distribution Pending Allowance

10    Notwithstanding any other provision of the Plan, no payments or Distributions shall be made

11    with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed

12    Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed

13    Claim, or some portion thereof, has become an Allowed Claim; provided, however, that if the only

14    dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed

15    Claim shall

16    **10.7    The Plan Trust Beneficiaries**.

17    The Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed

18    Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust which

19    shall, subject to the Plan, be entitled to a Distribution on account of that portion of the Disputed

20    Claim which the Plan Trustee does not dispute at the time and in the manner that the Plan Trustee

21    makes Distributions to the Holders of Allowed Claims pursuant to the provisions of the Plan.

22    L.    Reserves for Disputed Claims

23    In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the

24    Plan Trustee shall establish and maintain a reserve for such Disputed Claims.  For purposes of

25    establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to

26    the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a Distribution

27    is made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed

28    Claims. If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for

that Disputed Claim shall be distributed on the earlier of (a) the distributed Date following the date

when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days after such Disputed

Claim becomes an Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a

Disputed Claim because the Disputed Claim does not become an Allowed Claim shall become

property of the Plan Trust and shall be distributed in accordance with the terms of the Plan.

M.    Limitation on Liability

The Trustee, the Committee, the Plan Trustee, and any of their respective employees,

members, officers, directors, shareholders, agents, or professionals shall not be liable for (i) any acts

or omissions, except for willful misconduct, in connection with implementing the Distribution

provisions of the Plan and the making or withholding of Distributions under the Plan, or (ii) any

change in the value of Distributions made under the Plan resulting from any delays in making such

Distributions in accordance with the terms of the Plan (including, but not limited to, any delays

caused by the resolution of Disputed Claims).

10.3.    **The Trustee Debtors' Committee.**

On the Effective Date, the Committee shall continue to serve as the Committee, subject to the

following:

A.    **Duties and Powers.**

The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

Claim.  The Trustee Debtors' Committee shall receive notice of and the right to review all payments

and Distributions.

The Committee shall be entitled to retain, employ and compensate Professionals, in order to

assist with the obligations and rights of the Trustee Debtors' Committee under the terms of the Plan.

Such compensation shall be paid from the Plan Reserve.  However, the fees incurred arising from the

Potential SunCal Preference Claim shall only be paid on a contingency fee basis.

B.    **Dissolution of Trustee Debtors' Committee.**

-47-

1    ~~The Committee shall be dissolved upon the entry of an order converting, closing or~~
2    ~~dismissing the Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution,~~
3    ~~the Trustee Debtors' Committee shall have no other or further obligations or responsibilities on~~
4    ~~behalf of the Plan Trust.~~, if any, in the amounts, and at the times, set forth in the Plan.  Ownership of
5    a beneficial interest in the Plan Trust shall not be evidenced by any certificate, security, or receipt or
6    in any other form or manner whatsoever, except as maintained on the books and records of the Plan
7    Trust by the Plan Trustee.  The ownership of a beneficial interest in the Plan Trust shall not entitle
8    any Beneficiary to any title in or to the Plan Trust Assets or to any right to call for a partition or
9    division of such assets or to require an accounting.  The Plan Trustee shall make Distributions, if
10   any, to Beneficiaries in the manner provided in the Plan.

11          The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities" under
12   applicable law.  However, such rights have not been defined as "securities" under the Plan because
13   (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights arising under
14   the Plan Trust are deemed to be "securities," the exemption from registration under §1145 of the
15   Bankruptcy code is intended to be applicable to such securities.

16          ~~10.4.~~ **10.8** No Payment of Transfer-Related Fees to the United States Trustee.

17          The Plan Trust shall not be required to pay any fees to the United States Trustee based on any
18   transfers of the Plan Trust ~~Property~~Assets to the Plan Trust or from the Plan Trust.

19          ~~10.5.~~ **10.9** No Payment of Transfer-Related Fees to the Plan Trustee.

20          The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any transfers
21   of Plan Trust ~~Property~~Assets from the Debtor to the Plan Trust, or from the Plan Trust.

22

23

24          ~~10.6.~~ **10.10** Books and Records of Trust.

25          The ~~Distribution Agent~~Plan Trustee, and to the extent of payments and distributions by any
26   Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements
27   of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide
28   storage for such book and records, for the longer of six (6) years, or while Plan is in existence,

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1 provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to

2 destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for

3 such books and records. The Plan Trust's books and records shall be open to inspection at all

4 reasonable times, upon written request by the Trustee Debtors' Committee.

5 ~~10.7.    Limitations on Liability.~~

6 ~~The Plan Trustee shall not be liable for any act it may do or fail to do as the liquidating~~

7 ~~trustees hereunder while acting in good faith and in the exercise of its best judgment. The Plan Trust~~

8 ~~shall not be liable in any event for any claims, liabilities or damages based upon or arising out of any~~

9 ~~conduct of the Plan Trustee in the course of its activities as liquidating trustee, unless such claims,~~

10 ~~liabilities or damages arise from Plan's gross negligence or willful misconduct.~~

11 ~~Any undertaking, contract or agreement entered into in writing by the Plan may, except as~~

12 ~~otherwise provided by the Plan or the Plan Trust Agreement, expressly disclaim the personal liability~~

13 ~~of Plan Trustee.~~

14 **~~10.8.~~ 10.11 Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial**

15 **Interests**.

16 For all United States federal income tax purposes, the transfers by the Debtor shall be treated

17 by the Debtor, their estates, the Plan Trust and the Plan Trust Beneficiaries as a transfer of the Plan

18 Trust ~~Property~~Assets by the Debtor to the Plan Trust Beneficiaries followed by a transfer of the Plan

19 Trust ~~Property~~Assets by such the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries

20 shall be treated as the grantors and deemed owners of the Plan Trust for United States federal income

21 tax purposes. The Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their

22 interests in the Plan Trust ~~Property~~Assets consistently with the values placed upon the Plan Trust

23 ~~Property~~Assets by the Plan Trust, and to use such valuations for all purposes. The Plan Trust

24 Agreement shall provide for consistent valuations of the Plan Trust ~~Property~~Assets by the Plan Trust

25 Trustee and the Plan Trust Beneficiaries, and shall provide that the Plan Trust will determine the fair

26 market value of the Plan Trust ~~Property~~Assets within thirty (30) days after the Effective Date, and

27 send such determination to each the Plan Trust Beneficiary. By its acceptance of a the Beneficial

28 Interest, each recipient of such an interest will be conclusively deemed to agree to use such

1   valuations for all purposes, including, without limitation, in computing any gain recognized upon the

2   exchange of such holder's claim for purposes of determining any United States Federal income tax,

3   and shall be required to include those items of income, deductions and tax credits that are

4   attributable to its the Beneficial Interest in computing its taxable income.

5          10.9. **10.12 Termination of the Trust.**

6          The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

7   Property Assets has been liquidated, all proceeds have been converted to cash or distributed in kind,

8   all the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

9   Trust Trustee is obligated to make Distributions on have been paid, all Distributions distributions to

10  be made with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust

11  is a party have been concluded by dismissal or an order issued by the court in which such litigation is

12  pending and such order has become "final" (consistent with the definition of Final Order in the Plan

13  for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b) the

14  expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

15  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional period

16  as is reasonably necessary to conclude the liquidation and Distributions, not to exceed a total of ten

17  (10) years from the Effective Date, which request shall be filed so the Bankruptcy Court may

18  consider and rule on the request within six (6) months prior to the expiration of the initial five-year

19  term.

20         10.10. **10.13 Exemption from Certain Transfer Taxes**.

21         In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

22  exchange of a security or the making or delivery of an instrument of transfer under the Plan may not

23  be taxed under any law imposing a stamp tax or similar tax. All governmental officials and agents

24  shall forego the assessment and collection of any such tax or governmental assessment and shall

25  accept for filing and recordation any of the foregoing instruments or other documents without

26  payment of such tax or other governmental assessment.

27         10.11. **10.14 Tax Consequence of The Plan**.

28

1    The implementation of the Plan may have federal, state and local tax consequences to the

2    Debtor, Creditors and Interest Holders.  No tax opinion has been sought or will be obtained with

3    respect to any tax consequences of the Plan. ~~The~~This Disclosure Statement does not constitute and is

4    not intended to constitute either a tax opinion or tax advice to any person, and the summary

5    contained herein is provided for informational purposes only.

6    CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR

7    OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE

8    DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING

9    FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

10    ~~10.12.   The Plan Sponsor.~~

11    **10.15   The Trustee Debtors' Committee.**

12    On the Effective Date, the Trustee Debtors' Committee shall continue to serve the Debtor as

13    Trustee Debtors' Committee to the Debtor, subject to the following:

14    **10.15.1    Duties and Powers.**

15    The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to

16    monitoring the Plan's implementation, standing to object to any settlement of any Litigation Claim

17    in excess of $100,000, standing to file, prosecute and resolve objections to Claims filed by Insiders

18    that are SunCal Affiliates and standing to investigate and prosecute Potential SunCal Preference

19    Claim, subject to the $100,000 cap on fees incurred in prosecuting the claim objections and costs

20    incurred in the prosecution of the Potential SunCal Preference Claim.  The Trustee Debtors'

21    Committee shall receive notice of and the right to review all payments and Distributions.

22    The Trustee Debtors' Committee shall be entitled to retain, employ and compensate

23    Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee

24    under the terms of the Plan.  Such compensation shall be paid from the Plan Reserve.  However, the

25    fees incurred arising from the Potential SunCal Preference Claim shall only be paid on a contingency

26    fee basis.

27    **10.15.2   Dissolution of The Trustee Debtors' Committee.**

28

1    The Plan Sponsor shall be Acquisitions.  Trustee Debtors' Committee shall be dissolved

2    upon the entry of an order converting, closing or dismissing the Chapter 11 Cases or entry of a final

3    decree in the Chapter 11 Cases.  On dissolution, the Trustee Debtors' Committee shall have no other

4    or further obligations or responsibilities on behalf of the Plan Trust.

5    10.13.  **Litigation Claims.**

6    Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

7    Litigation Claims.  Unless a Litigation Claim is expressly waived, relinquished, released,

8    compromised, settled or sold in the Plan or in a Final Order, all rights with respect to such Litigation

9    Claims are reserved and the Plan Trustee may pursue such Litigation Claims but shall not be

10   obligated to do so.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a

11   Litigation Claim without ten (10) days' prior written notice and opportunity to object to the Trustee

12   Debtors' Committee.  Any disputes concerning the settlement or abandonment of a Litigation Claim

13   shall be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the

14   objecting party.

15   10.14.  **Collection of Litigation Recoveries.**

16   All Litigation Recoveries realized or obtained by the Plan Trustee and/or the Trustee

17   Debtors' Committee shall be promptly deposited into the applicable Distribution Account(s).

18   Except as otherwise provided in the Plan and the Confirmation Order, the Litigation Recoveries shall

19   be free and clear of all Claims and Liens and shall only be expended in accordance with the

20   provisions of the Plan.

21   The SunCal Plan Proponent shall have the right to move forward with the Lehman Preference

22   Claim in the event the SunCal Plan Proponent retain counsel, on a contingency fee basis, to

23   prosecute the Lehman Preference Claim.  The costs associated with the prosecution of such litigation

24   shall be paid from the Plan Reserve.  Based on the contingency fee structure of any such litigation,

25   Creditors may receive higher recoveries in the event that the SunCal Plan Proponent are successful in

26   such litigation.

27

28

1

2                                          **XI.**

3                                   **RISK FACTORS**

4          **11.1    Plan Risks**.

5          The Plan in this case, like any Chapter 11 reorganization plan, includes a number of risks that

6   creditors should be aware of prior to voting on the Plan. The more material of these risks are

7   summarized below.

8          **11.2    The Plan May Not Be Accepted or Confirmed**.

9          While the SunCal Plan ~~Proponent~~Proponents believe that the Plan is confirmable under the

10  standards set forth in 11 U.S.C. § 1129, there can be no guarantee that the Bankruptcy Court will find

11  the Plan to be confirmable. If the Plan is not confirmed, it is possible that an alternative plan can be

12  negotiated and presented to the Bankruptcy Court for approval; however, there can be no assurance

13  that any alternative plan would be confirmed, that the Chapter 11 Cases would not be converted to a

14  liquidation, or that any alternative plan of reorganization could or would be formulated on terms as

15  favorable to the Creditors and holders of Equity Interests as the terms of the Plan.

16         **11.3    Adverse Outcome of Pending Litigation**.

17         The SunCal Plan ~~Proponent~~Proponents believes that the Lehman Preference Claim is

18  meritorious. However, there is no assurance that the Debtor will recover on the Lehman Preference

19  Claim.

20         The SunCal Plan Proponents believe that valid defenses exist to the Potential SunCal

21  Preference Claim.

22                                         **XII.**

23                                  **DISTRIBUTIONS**

24         ~~12.1~~ **12.1 Distribution Agent**.

25         Acquisitions shall serve as the Distribution Agent for Distributions due under the Plan.  The

26  Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree

27  in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution

28

Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

**12.2  12.2 Distributions.**

### 12.2.1   Dates of Distributions.

Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

### 12.2.2   Limitation on Liability.

Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**12.3  12.3 Old Instruments and Securities.**

### 12.3.1  Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any Distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing an existing Claim(s) against the Debtor must surrender such Instrument or Security to the Distribution Agent.

### 12.3.2  Cancellation of Liens.

Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

### 12.3.3  De Minimis Distributions and Fractional Shares.

No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### 12.3.4  Delivery of Distributions.

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the official claims agent for the Debtor; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Debtor, provided, however, that if the Debtor or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

### 12.3.5  Undeliverable Distributions.

If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then current address.  Subject to the remainder of this Section and the following section, Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the Distribution Agent until such time as the subject Distribution

becomes deliverable.  Nothing contained in the Plan shall require the Plan Trustee or any other Person to attempt to locate such Person.

~~12.3.6        Disposition of Unclaimed Property.~~

~~If the Person entitled thereto notifies the Plan Trustee of such Person's Claim to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial Distribution Date, Effective Date, the Unclaimed Property distributable to such Person, together with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as practicable.  Any Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by the Plan Trustee within ninety (90) days after the Holder's initial Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and shall be forever barred from receiving any Distributions under the Plan or otherwise from the Plan Trustee.  In such cases, any property held for Distribution on account of such Claims shall become Available Cash and deposited into the Distribution Account.~~

~~12~~ **XIII.**

**OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

~~13.1~~ **13.1 Standing for Objections to Claims.**

The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims, excluding Claims filed by Insiders that are SunCal Affiliates.  The <u>Trustee Debtors'</u> Committee shall have the sole and exclusive right to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates.

Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    13.2   **13.2 Treatment of Disputed Claims and Disputed Liens**.

2              **13.2.1  No Distribution Pending Allowance**.

3              If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or

4    Distribution provided for under the Plan shall be made on account of such Claim or Lien unless and

5    until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

6              **13.2.2  Distribution After Allowance**.

7              On the next Distribution Date following the date on which a Disputed Claim becomes

8    an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the

9    Person holding such Claim any Cash that would have been distributable to such Person if on the

10   initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

11                                   **XIV.**

12                **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

13   14.1   **14.1 Executory Contracts Being Rejected**.

14             The Debtor hereby rejects all of the executory contracts and unexpired leases set forth in the

15   Debtor's Schedules, attached to the ~~Plan~~Disclosure Statement as Exhibit "~~2~~9."  The SunCal Plan

16   ~~Proponent~~Proponents reserve the right to amend Exhibit "~~2~~9" to the ~~Plan~~Disclosure Statement to

17   include additional leases and contracts on this exhibit, or to delete leases and contracts from this

18   exhibit, up to and including the Confirmation Date.

19             14.2   **14.2 Bar Date for Rejection Damages**.

20             Any Claim arising out of the rejection of an executory contract or unexpired lease shall be

21   forever barred and shall not be enforceable against the Debtor, the Plan Trust, their Affiliates, their

22   successors, or their properties, and shall not be entitled to any Distribution under the Plan, unless a

23   Proof of Claim for such Claim is filed and served on the Debtor, or the Plan Trust within thirty (30)

24   days after the receipt of a notice of the rejection of any contract or lease.

25             ~~14.3    Changes in Rates Subject to Regulatory Commission Approval.~~

26             ~~The Debtor is not subject to governmental regulatory commission approval of their rates.~~

27                                   **XV.**

28                **BEST INTEREST OF CREDITORS TEST AND PLAN FEASIBILITY**

**15.1    Best Interests Test**.

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, a Plan cannot be confirmed unless the Bankruptcy Court determines that Distributions under the Plan to all Holders of Claims and Interests who have not accepted the ~~plan~~Plan and whose Claims are classified in Classes that are impaired under the ~~plan~~Plan, are not less than those which they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

The Best Interest of Creditors Test must be satisfied even if the Plan is accepted by each impaired Class of Claims and if any Holder of an Allowed Claim objects to the Plan on such basis. The Best Interests Test requires the Bankruptcy Court to find either that either (i) all Holders of Claims in an impaired Class of Claims have accepted the Plan or (ii) the Plan provides each Holder of Allowed Claims of an impaired Class who has not accepted the Plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount that such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

The Plan proposed by the Plan Proponents is essentially a litigation and liquidating plan. The Plan provides for the potential prosecution and potential recovery of the Lehman Preference Claim, the Potential SunCal Preference Claim and the Distribution of any Net Litigation Recoveries.  The Plan provides for the Distribution of the resulting net proceeds, in accordance with the priorities provided for in the Bankruptcy Code and under California law.

If a Chapter 7 trustee were appointed in this case and chose to prosecute the Litigation Claims, it would be compelled to liquidate the Debtor's assets in the same manner as provided for in the Plan and to pay out the proceeds in the same manner as provided for in the Plan. Accordingly, under the terms of the Plan, each individual creditor is receiving "at least as much" as such creditor would receive in a Chapter 7 case, which is all that is required under the Best Interests Test.

**15.2    Feasibility**.

In addition, in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor(s). This requirement is imposed by Section 1129(a)(11) of the Bankruptcy Code and is generally referred to as the "feasibility" requirement. As explained above, the  Plan provides for

-58-

1   pursuing the Litigation Claims, the liquidation of any recoveries,  and for the distribution of the

2   proceeds. Within the context of the Plan, feasibility is limited to having sufficient funds to pay

3   administrative and priority claims on the Effective Date and sufficient funds to fund to finance the

4   litigation.

## XVI.

## LIMITATION OF LIABILITY

16.1  **16.1 No Liability for Solicitation or Participation.**

As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the

Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of

any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the

Plan or the offer, issuance, sale, or purchase of securities.

## XVII.

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

17.1  **17.1 Conditions Precedent to Plan Confirmation.**

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

ProponentProponents.

17.2  **17.2 Conditions Precedent to Plan Effectiveness.**

is that theThe Confirmation Order shall be a Final Order in form and substance reasonably

satisfactory to the SunCal Plan ProponentProponents and not subject to a stay pending appeal.

## XVIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.

## XIX.

## MODIFICATION OR WITHDRAWAL OF THE PLAN

**19.1  19.1 Modification of Plan.**

At any time prior to confirmation of the Plan, SunCal Plan ~~Proponent~~Proponents may supplement, amend or modify the Plan.  After confirmation of the Plan,  SunCal Plan ~~Proponent~~Proponents or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**19.2  19.2 Nonconsensual Confirmation.**

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan ~~Proponent~~Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

## XX.

## MISCELLANEOUS

**20.1  20.1 Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees

1    due and payable after the Effective Date and until the Debtor's Case is closed, to the extent required

2    by Section 1930(a)(6) of title 28 of the United States Code.

3        **20.2    Changes in Rates Subject to Regulatory Commission Approval.**

4    The Debtor is not subject to governmental regulatory commission approval of their rates.

5    ~~20.2~~ **20.3 Payment Dates.**

6        Whenever any payment or Distribution to be made under the Plan shall be due on a day other

7    than a Business Day, such payment or Distribution shall instead be made, without interest, on the

8    immediately following Business Day.

9    ~~20.3~~ **20.4 Headings.**

10       The headings used in the Disclosure Statement and in the Plan are inserted for convenience

11   only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

12   affect the construction of the provisions of the Disclosure Statement or the Plan.

13   ~~20.4~~ **20.5 Other Documents and Actions.**

14       The Plan Trustee may execute such other documents and take such other actions as may be

15   necessary or appropriate to effectuate the transactions contemplated under the Plan.

16   ~~20.5~~ **20.6 Notices.**

17       All notices and requests in connection with the Disclosure Statement and the Plan shall be in

18   writing and shall be hand delivered or sent by mail addressed to:

19                   **To the SunCal Plan ~~Proponent~~Proponents**:

20                   Bruce V. Cook
                     General Counsel

21                   Authorized Agent of the SunCal Plan ~~Proponent~~Proponents

22                   2392 Morse Ave
                     Irvine, CA 92614-6234

23

24                   **With copies to:**
                     Paul J. Couchot

25                   Winthrop & Couchot, Professional Corporation
                     660 Newport Center Drive, Suite 400

26                   Newport Beach, CA 92660

27                   Ronald Rus
                     Rus Miliband & Smith A Professional Corporation

28                   2211 Michelson Drive, Seventh Floor
                     Irvine, California 92612

1    All notices and requests to any Person holding of record any Claim or Interest shall be sent to

2    them at their last known address or to the last known address of their attorney of record.  Any such

3    Person may designate in writing any other address for purposes of this Section, which designation

4    will be effective on receipt.

5    20.6   **20.7 Governing Law.**

6    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code

7    and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law

8    rules) shall govern the construction and implementation of the Plan and any agreements, documents,

9    and instruments executed in connection with the Plan, unless otherwise specifically provided in such

10   agreements, documents, or instruments.

11   20.7   **20.8 Binding Effect.**

12   The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

13   the benefit of the Plan Sponsor, the Plan Trustee, Holders of Claims, Holders of Interests, and their

14   respective successors and assigns.

15   20.8   **20.9 Successors and Assigns.**

16   The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

17   binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

18   assigns of such entity.

19   20.9   **20.10 Severability of Plan Provisions.**

20   If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy

21   Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds

22   for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtor,

23   have the power to interpret, modify or delete such term or provision (or portions thereof) to make it

24   valid or enforceable to the maximum extent practicable, consistent with the original purpose of the

25   term or provision held to be invalid, void or unenforceable, and such term or provision shall then be

26   operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification

27   or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected,

28   impaired or invalidated by such interpretation, modification or deletion.

1    20.10  **20.11 No Waiver.**

2        The failure of the Debtor or any other Person to object to any Claim for purposes of voting

3    shall not be deemed a waiver of the Trustee Debtors' Committee, the Debtors' or the Plan Trustee's

4    right to object to or examine such Claim, in whole or in part.

5    20.11  **20.12 Inconsistencies.**

6        In the event the terms or provisions of the Disclosure Statement are inconsistent with the

7    terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the

8    Plan shall control.

9    20.12  **20.13 Exemption from Certain Transfer Taxes and Recording Fees.**

10        The Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any

11    agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal

12    property or of any other interest in such property (including, without limitation, a security interest)

13    will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar

14    tax, mortgage tax,

15    stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

16    recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

17    direct the appropriate state or local governmental officials or agents to forego the collection of any

18    such tax or governmental assessment and to accept for filing and recordation any of the foregoing

19    instruments or other documents without the payment of any such tax or governmental assessment.

20    20.13  **20.14 Post-Confirmation Status Report.**

21        Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

22    status report with the Court explaining what progress has been made toward consummation of the

23    confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

24    unsecured creditors, and those parties who have requested special notice.  Unless otherwise ordered,

25    further status reports shall be filed every 180 days and served on the same entities.

26    20.14  **20.15 Post-Confirmation Conversion/Dismissal.**

27        A creditor or party in interest may bring a motion to convert or dismiss the case under §

28    1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan Trustee

MAINDOCS-#163421-v5-SCC164994-v3-SunCal_3rd_Am_CC_DS.DOC

1    reserves the right to object to any motion for conversion or dismissal.  If the Court orders any of the

2    Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of

3    the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter

4    7 estate.

5           20.15   **20.16 Final Decree.**

6           Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan

7    Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a motion

8    with the Court to obtain a final decree to close the Case of the Debtor.

9    Date:  July 18,August 5, 2011                              By:     /s/ *Bruce Cook*
10   _____

11                                                              Bruce Cook
                                                               General Counsel, Authorized Agent for the Voluntary
12                                                             Debtors and Acquisitions

13   **Submitted By:**

14   **WINTHROP COUCHOT**                      **RUS MILIBAND & SMITH**
     **PROFESSIONAL CORPORATION**             **A PROFESSIONAL CORPORATION**
15

16   By: /s/ *Paul J. Couchot*                     By:  /s/ *Ronald Rus*
17          Paul J. Couchot, Esq.                        Ronald Rus, Esq.
            General Insolvency Counsel for               Joel S. Miliband, Esq.
18          the Voluntary Debtors                    AttorneysCounsel for SCC Acquisitions Inc.

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: ~~SECOND~~THIRD **AMENDED DISCLOSURE STATEMENT DESCRIBING** ~~SECOND~~THIRD **AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN** ~~PROPONENT~~PROPONENTS **IN THE CHAPTER 11 CASE OF SUNCAL CENTURY CITY, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ~~July 18,~~August 5, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| ~~July 18,~~August 5, 2011 | Gretchen Crumpacker | */s/ Gretchen Crumpacker* |
| *Date* | *Type Name* | *Signature* |

29

**NEF SERVICE LIST**

30
- Selia M Acevedo      sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams      jadams@sycr.com

31
- Raymond H Aver      ray@averlaw.com

32
- James C Bastian      jbastian@shbllp.com
- Thomas Scott Belden      sbelden@kleinlaw.com, ecf@kleinlaw.com

33
- John A Boyd      fednotice@tclaw.net
- Mark Bradshaw      mbradshaw@shbllp.com

34
- Gustavo E Bravo      gbravo@smaha.com

35
- Jeffrey W Broker      jbroker@brokerlaw.biz
- Brendt C Butler      bbutler@mandersonllp.com

36
- Andrew W Caine      acaine@pszyjw.com
- Carollynn Callari      ccallari@venable.com

37
- Cathrine M Castaldi      ccastaldi@rusmiliband.com
- Tara Castro Narayanan      tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

38
- Dan E Chambers      dchambers@jmbm.com

39
- Shirley Cho      scho@pszjlaw.com
- Vonn Christenson      vrc@paynefears.com

40
- Brendan P Collins      bpcollins@bhfs.com
- Vincent M Coscino      vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

41
- Paul J Couchot      pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;~~sconnor~~gcrumpacker@winthropcouchot.com

42
- Jonathan S Dabbieri      dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com

43

44
- Ana Damonte      ana.damonte@pillsburylaw.com
- Vanessa S Davila      vsd@amclaw.com

45
- Melissa Davis      mdavis@shbllp.com

46
- Daniel Denny      ddenny@gibsondunn.com
- Caroline Djang      crd@jmbm.com

47
- Donald T Dunning      ddunning@dunningLaw.com
- Meredith R Edelman      meredith.edelman@dlapiper.com

48
- Joseph A Eisenberg      jae@jmbm.com
- Lei Lei Wang Ekvall      lekvall@wgllp.com

49
- Richard W Esterkin      resterkin@morganlewis.com

50
- Marc C Forsythe      kmurphy@goeforlaw.com
- Alan J Friedman      afriedman@irell.com

51
- Steven M Garber      steve@smgarberlaw.com

52
- Christian J Gascou      cgascou@gascouhopkins.com
- Barry S Glaser      bglaser@swjlaw.com

1
- Robert P Goe      kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com

2
- Eric D Goldberg      egoldberg@stutman.com

3
- Richard H Golubow      rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez      mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

4
- Kelly C Griffith      bkemail@harrisbeach.com
- Matthew Grimshaw      mgrimshaw@rutan.com

- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com

- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  REDLINED DISCLOSURE STATEMENT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 8, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  <u>**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**</u>(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  <u>**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**</u> (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 8, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Robert Orgel:  Rorgel@pszjlaw.com
Richard Pachulaki:  rpachulski@pszjlaw.com
John W. Lucas: jlucas@pszjlaw.co,

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 8, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

NEF SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.c
  om
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com

- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Benjamin M Weiss    bweiss@lansingcompanies.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net