PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for
Palmdale Hills Property, LLC et. al. (the "Voluntary Debtors")

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514
Counsel for SCC Acquisitions Inc.

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>Joint Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES |

Affects:

☐ All Debtors

☐ Palmdale Hills Property, LLC

☐ SunCal Beaumont Heights, LLC

☐ SCC/Palmdale, LLC

☐ SunCal Johannson Ranch, LLC

☐ SunCal Summit Valley, LLC

☐ SunCal Emerald Meadows LLC

☐ SunCal Bickford Ranch, LLC

☐ Acton Estates, LLC

☐ Seven Brothers LLC

☒ SJD Partners, Ltd.

☒ SJD Development Corp.

☐ Kirby Estates, LLC

☐ SunCal Communities I, LLC

☐ SunCal Communities III, LLC

☐ SCC Communities LLC

☐ North Orange Del Rio Land, LLC

☐ Tesoro SF LLC

Chapter 11 Proceedings

**FOURTH AMENDED JOINT CHAPTER 11 PLAN FILED BY SJD PARTNERS, LTD. AND SJD DEVELOPMENT CORP. [GROUP IV: VOLUNTARY DEBTORS]**

**<u>Confirmation Hearing</u>**
Date:    October 24, 2011
Time:    9:30 a.m.
Place:    Courtroom 5A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☐ LBL-SunCal Oak Valley, LLC

☐ SunCal Heartland, LLC

☐ LBL-SunCal Northlake, LLC

☐ SunCal Marblehead, LLC

☐ SunCal Century City, LLC

☐ SunCal PSV, LLC

☐ Delta Coves Venture, LLC

☐ SunCal Torrance, LLC

☐ SunCal Oak Knoll, LLC

# **TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION................................................................................................      2

II.     DEFINITIONS AND RULES OF INTERPRETATION.........................................      3
        2.1    Definitions................................................................................      3
        2.2    Rules of Construction .................................................................      20
        2.3    Exhibits .......................................................................................      21

III.    TREATMENT OF UNCLASSIFIED CLAIMS ...................................................      21
        3.1    Introduction.................................................................................      21
        3.2    Treatment of Allowed Administrative Claims.............................      21
        3.3    Administrative Claims Bar Date .................................................      22
        3.4    Treatment of Unsecured Tax Claims ..........................................      22
        3.5    Summary of the Plan's Treatment of Bond Indemnity Claims.....................      23

IV.     CLASSIFICATION OF CLAIMS AND INTERESTS...........................................      23

V.      THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
        AND INTERESTS.............................................................................................      25
        5.1    The Plan's Treatment of Lehman's Disputed Secured Claim(s)
               and Disputed Lien(s) Against Group IV:  Voluntary Debtors
               (Classes 1.1 and 1.2) ..................................................................      25
        5.2    The Plan's Treatment of Holders of Priority Claims Against
               Group IV:  Voluntary Debtors (Class 2.1) .................................................      25
        5.3    The Plan's Treatment of Holders of General Unsecured
               Claims Against Group IV:  Voluntary Debtors that Are
               Reliance Claims (See Exhibit 8 to Disclosure Statement
               (Class 4.1) ..................................................................................      26
        5.4    The Plan's Treatment of Holders of Allowed General Unsecured
               Claims Against Group IV:  Voluntary Debtors that Are Not
               Reliance Claims (Class 5.1)........................................................      26
        5.5    The Plan's Treatment of Holders of Allowed Interests
               Against Group IV:  Voluntary Debtors ........................................      27

VI.     ACCEPTANCE OR REJECTION OF THE PLAN ............................................      27
        6.1    Introduction................................................................................      27
        6.2    Who May Object to Confirmation of the Plan............................      27
        6.3    Who May Vote to Accept/Reject the Plan ..................................      28
        6.4    What Is an Allowed Claim/Interest.............................................      28
        6.5    What Is an Impaired Class ..........................................................      28
        6.6    Who Is Not Entitled to Vote .......................................................      28
        6.7    Who Can Vote in More than One Class........................................      29
        6.8    Votes Necessary for a Class to Accept the Plan .........................      29
        6.9    Treatment of Nonaccepting Classes............................................      29
        6.10   Request for Confirmation Despite Nonacceptance by

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

Impaired Class(es)............................................................................. 29

VII.  MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN .............. 30
      7.1   Introduction......................................................................................... 30
      7.2   Establishment and Operations of the Plan Trust............................................ 30
      7.3   Preservation and Pursuit of Litigation Claims and Recovery for the 30
            Plan Trust ........................................................................................... 31
      7.4   Payment of Trust Expenses.................................................................. 31
      7.5   The Plan Trust Distribution System.................................................... 31
      7.6   The Plan Trustee ................................................................................ 31
      7.7   The Plan Trust Beneficiaries............................................................... 35
      7.8   No Payment of Transfer-Related Fees to the United States Trustee.............. 36
      7.9   No Payment of Transfer-Related Fees to the Plan Trustee ....................... 36
      7.10  Books and Records of Trust................................................................ 36
      7.11  Federal Income Tax Treatment of the Holders of Plan
            Trust Beneficial Interests ................................................................... 36
      7.12  Termination of the Trust .................................................................... 37
      7.13  Exemption from Certain Transfer Taxes ............................................. 38
      7.14  Tax Consequences of the Plan ........................................................... 38
      7.15  The Plan Sponsor .............................................................................. 38
      7.16  The Voluntary Debtors' Committee ................................................... 38
            7.16.1 Duties and Powers.................................................................. 38
            7.16.2 Dissolution of Voluntary Debtors' Committees ....................... 39
      7.17  Claims Estimation Rights .................................................................. 39

VIII. DISTRIBUTIONS............................................................................................ 40
      8.1   Distribution Agent ............................................................................. 40
      8.2   Distributions...................................................................................... 40
            8.2.1   Dates of Distributions .......................................................... 40
            8.2.2   Limitation on Liability .......................................................... 40
      8.3   Old Instruments and Securities .......................................................... 40
            8.3.1   Surrender and Cancellation of Instruments and Securities ............... 40
            8.3.2   Cancellation of Liens ............................................................ 41
            8.3.3   De Minimis Distributions and Fractional Shares............................ 41
            8.3.4   Delivery of Distributions ...................................................... 41
            8.3.5   Undeliverable Distributions .................................................. 41
            8.3.6   Disposition of Unclaimed Property......................................... 42

IX.   OBJECTION TO CLAIMS AND DISPUTED CLAIMS.................................. 42
      9.1   Standing for Objections to Claims ...................................................... 42
      9.2   Treatment of Disputed Claims and Disputed Liens ............................. 43
            9.2.1   No Distribution Pending Allowance ...................................... 43
            9.2.2   Distribution After Allowance ................................................ 43
            9.2.3   Reserves for Disputed Claims ................................................ 43

X.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................ 44
      10.1  Executory Contracts to be Assumed ................................................... 44
      10.2  Executory Contracts to be Rejected .................................................... 46

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

XI.    LIMITATION OF LIABILITY ................................................................. 47
       11.1   No Liability for Solicitation or Participation ................................. 47

XII.   CONDITIONS TO CONFIRMATION AND EFFECTIVENESS
       OF THE PLAN ...................................................................................... 47
       12.1   Conditions Precedent to Plan Confirmation ................................. 47
       12.2   Conditions Precedent to Plan Effectiveness ................................. 47

XIII.  RETENTION OF JURISDICTION ........................................................ 48

XIV.   MODIFICATION OR WITHDRAWAL OF THE PLAN ...................... 49
       14.1   Modification of Plan ..................................................................... 49
       14.2   Nonconsensual Confirmation........................................................ 49

XV.    EFFECT OF CONFIRMATION............................................................. 50
       15.1   Discharge    ................................................................................. 50
       15.2   Revesting of the Group IV: Voluntary Debtors ........................... 50

XVI.   MISCELLANEOUS .............................................................................. 50
       16.1   Payment of Statutory Fees ............................................................ 50
       16.2   Changes in Rates Subject to Regulatory commission Approval.... 50
       16.3   Payment Dates............................................................................... 50
       16.4   Headings ....................................................................................... 51
       16.5   Other Documents and Actions ...................................................... 51
       16.6   Notices .......................................................................................... 51
       16.7   Governing Law .............................................................................. 51
       16.8   Binding Effect ............................................................................... 52
       16.9   Successors and Assigns.................................................................. 52
       16.10  Severability of Plan Provisions .................................................... 52
       16.11  No Waiver...................................................................................... 52
       16.12  Inconsistencies ............................................................................. 53
       16.13  Exemption from Certain Transfer Taxes and Recording Fees...... 53
       16.14  Post-Confirmation Status Report .................................................. 53
       16.15  Post-Confirmation Conversion/Dismissal .................................... 53
       16.16  Final Decree .................................................................................. 54

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## __INTRODUCTION__

This Plan[1] is filed by, and the accompanying Disclosure Statement is proposed by, SJD Partners and SJD Development (the "Group IV: Voluntary Debtors"), in their respective Chapter 11 Cases in their capacities as debtors in possession, and by Acquisitions, as the SunCal Proponents.  In addition to being one of the SunCal Plan Proponents, Acquisitions is also the Plan Sponsor, the Plan Trustee of the Plan Trust, and the Distribution Agent for the Plan.

SJD Development is the sole equity owner of SJD Partners.  SJD Partners is the former owner of the Pacific Point Project.  This Plan assumes that all claims filed against SJD Development were inadvertent and should have been filed against SJD Partners as the project-owning entity that incurred such debt.  Consequently, a joint Plan is filed in the cases of the Group IV:  Voluntary Debtors.

In summary, the Plan provides for the recovery of the Pacific Point Project and/or liquidation of Litigation Recoveries of Group IV: Voluntary Debtors.  The net proceeds will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under other applicable law.  In addition, holders of Allowed Reliance Claims will receive an initial distribution equal to 1% of such holder's Allowed Claim, and, potentially, an additional distribution of up to 49% thereof from LitCo in the event that such newly formed entity obtains free and clear title to the Pacific Point Project (the "LitCo Enhancement").

The Plan is accompanied by the Disclosure Statement.  The Disclosure Statement has been approved by the Court.  It is being provided along with the Plan in order to provide you with critical information about the Group IV: Voluntary Debtors and to help you understand the Plan.

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached to the Disclosure Statement.

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

## II.

## DEFINITIONS AND RULES OF INTERPRETATION

**2.1    Definitions.**

The following defined terms are used in the Plan.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    Acquisitions.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported Bond Indemnitor, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    Administrative Claim(s).  Any Claim against a Group IV: Voluntary Debtor or such Group IV: Voluntary Debtor's Estate incurred after the applicable Petition Date for the applicable Group IV: Voluntary Debtor but before the Effective Date, for any cost or expense of administration of the Case of the applicable Group IV: Voluntary Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group IV: Voluntary Debtor under section 1930 of Title 28 of the United States Code.

2.1.3    Administrative Claims Bar Date.  The last date fixed by the Group IV: Voluntary Debtors Plan for the filing of requests for payment of Administrative Claims.  Under the Group IV: Voluntary Debtors Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date.

2.1.4    Affiliate.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise.

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1          2.1.5    <u>Allowed</u>.  When used to describe Claim(s) or Interest(s) against the

2    applicable Group IV: Voluntary Debtor, such Claim(s) or Interest(s), to the extent that it or they are

3    "Allowed Claim(s)" or "Allowed Interest(s)."

4          2.1.6    <u>Allowed Amount</u> shall mean:

5                   A.    With respect to any Administrative Claim (i) if the Claim is based

6    upon a Fee Application, the amount of such Fee Application that has been approved by a Final

7    Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

8    incurred in the ordinary course of business of the Group IV: Voluntary Debtors and is not

9    otherwise subject to an Administrative Claim Bar Date, the amount of such Claim that has been

10   agreed to by the Group IV: Voluntary Debtors and such creditor, failing which, the amount thereof

11   as fixed by a Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required

12   to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar

13   Date, (1) the amount stated in such proof if no objection to such Proof of Claim is interposed

14   within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the

15   Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an

16   objection to such proof was interposed within the applicable period of time fixed by the

17   Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any

18   Administrative Claim which is subject to an Administrative Claims Bar Date and not filed by the

19   applicable Administrative Claims Bar Date shall be zero, and no Distribution shall be made on

20   account of any such Administrative Claim;

21                   B.    with respect to any Claim which is not an Administrative Claim

22   (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the

23   Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

24   Group IV: Voluntary Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

25   the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

26   Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

27   interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

28   Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the

1    Bankruptcy Court if an objection to such proof was interposed within the applicable period of time

2    fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court.  The

3    Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not

4    listed on the Group IV: Voluntary Debtors' Schedules or is listed as disputed, unliquidated,

5    contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no

6    Distribution shall be made on account of any such Claim; and

7                           C.    with respect to any Interest, (i) the amount provided by or

8    established in the records of the Group IV: Voluntary Debtors at the Confirmation Date, provided,

9    however, that a timely filed proof of Interest shall supersede any listing of such Interest on the

10   records of the Group IV: Voluntary Debtors; or (ii) the amount stated in a proof of Interest Filed

11   prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation

12   Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed

13   by a Final Order of the Bankruptcy Court.

14              2.1.7    Allowed Claim.  Except as otherwise provided in the Plan(s) (including

15   with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan),

16   a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

17              2.1.8    Allowed Interest.  Any Interest to the extent, and only to the extent, of the

18   Allowed Amount of such Interest.

19              2.1.9    Allowed Secured Claims.  All or a portion of a Secured Claim that is an

20   Allowed Claim against the applicable Group IV: Voluntary Debtor.

21              2.1.10    Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is

22   an Allowed Claim against the applicable Group IV: Voluntary Debtor.

23              2.1.11    Arch.  Arch Insurance Company, a Bond Issuer.

24              2.1.12    Available Cash.  Each Group IV: Voluntary Debtors' Cash deposited into

25   the applicable Distribution Account(s) on or after the Effective Date that is available for making

26   Distributions under the Plan to Holders of Allowed Administrative, Priority, and General

27   Unsecured Claims.  The Available Cash shall consist of the respective Group IV: Voluntary

28   Debtors' cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of

1　Net Litigation Recoveries that are not subject to a Disputed Lien, proceeds that become Available

2　Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly

3　encumbering such Cash.  All Available Cash shall be deposited into the applicable Distribution

4　Account(s).

5　　　　　2.1.13　　Avoidance Actions.  All Claims and defenses to Claims accruing to the

6　Group IV: Voluntary Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c),

7　541, 544, 545, 547, 548, 549, 550, or 551.

8　　　　　2.1.14　　Bankruptcy Code.  The United States Bankruptcy Code.

9　　　　　2.1.15　　Bankruptcy Court.  The United States Bankruptcy Court for the Central

10　District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the

11　reference made pursuant to Section 157 of title 28 of the United States Code, the United States

12　District Court for the Central District of California; or, in the event such courts cease to exercise

13　jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in

14　lieu thereof.

15　　　　　2.1.16　　Bankruptcy Rules.  Collectively, as now in effect or hereafter amended

16　and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local

17　Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

18　　　　　2.1.17　　Beneficial Interests. Collectively, the interests of the holders of Allowed

19　Unsecured Claims in the Plan Trust and in all Distributions to be made by the Plan Trust on

20　account of Allowed Unsecured Claims with respect to the Group IV: Voluntary Debtors. The

21　Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be

22　evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will,

23　intestate succession or operation of law without written notification to the Plan Trustee confirming

24　and acknowledging the transfer by both the holder and the transferee.

25　　　　　2.1.18　　Bond Claim(s).  Any Claim against the Group IV: Voluntary Debtor(s)

26　and a Bond Issuer under various payment or performance bonds.

27　　　　　2.1.19　　Bond Claimant.  Holder(s) of a Bond Claim.

28

1          2.1.20    Bond Indemnification Claim.  All Claims by Bond Issuers for

2  indemnification against a Bond Indemnitor for the Bond Issuer's actual payment or purchase of a

3  Bond Claim with respect to the Pacific Point Project.

4          2.1.21    Bond Indemnitors.  The individuals and entities that are allegedly liable on

5  the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

6  Affiliates of Acquisitions, and Elieff.

7          2.1.22    Bond Issuer(s).  Bond Safeguard, Lexon and Arch in their capacities as

8  issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

9          2.1.23    Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

10         2.1.24    Business Day.  Any day, other than a Saturday, a Sunday or a "legal

11  holiday," as defined in Bankruptcy Rule 9006(a).

12         2.1.25    Cases.  The Chapter 11 cases of the Group IV: Voluntary Debtors pending

13  before the Bankruptcy Court.

14         2.1.26    Cash.  Currency of the United States of America and cash equivalents,

15  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

16  transfers and other similar forms of payment.

17         2.1.27    Claim.  This term shall have the broadest possible meaning under

18  Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

19  Group IV: Voluntary Debtors, whether or not such right is reduced to judgment, liquidated,

20  unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

21  secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

22  breach gives rise to a right of payment from any of the Group IV: Voluntary Debtors, whether or

23  not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured,

24  unmatured, disputed, undisputed, secured, or unsecured.

25         2.1.28    Claims Bar Date.  For any Claim other than the exceptions noted below,

26  March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to

27  file Proof of Claims with the Bankruptcy Court in all of the Group IV: Voluntary Debtors' Cases,

28  except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date

1    shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to

2    11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry

3    of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of

4    "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are

5    timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by

6    March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the

7    avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim

8    is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

9            2.1.29    <u>Claims Objection Deadline</u>.  The later of (i) the first business day

10    following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater

11    period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between

12    the Plan Trustee and the Holder of the Claim.

13            2.1.30    <u>Class</u>.  Each group of Claims or Interests classified in Article IV of the

14    Group IV: Voluntary Debtor's Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

15            2.1.31    <u>Confirmation Date</u>.  The date on which the Confirmation Order is entered

16    in the Bankruptcy Court's docket.

17            2.1.32    <u>Confirmation Order</u>.  The order entered by the Bankruptcy Court

18    confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code with

19    respect to the Group IV Voluntary Debtor's Plan.

20            2.1.33    <u>Contingent Bond Claims</u>.  Bond Indemnification Claims in which the

21    Bond Issuer has not yet paid or purchased the underlying Bond Claim.

22            2.1.34    <u>Contract Action</u>. The action filed by certain Voluntary Debtors against

23    Lehman Ali, Inc., and certain other defendants, in California Superior Court for the County of

24    Orange (Case No. 30-2011-0040847-CU-BC-CJC), that was removed to the Bankruptcy Court as

25    Adv. No. 8:11-ap-01212-ES, with a reservation of rights to add the Plan Trustee and/or the Trustee

26    Debtors (or their successors) as additional plaintiffs therein.

27            2.1.35    <u>Creditor</u>.  Any Person who is the Holder of a Claim against any Group IV:

28    Voluntary Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured,

1    or otherwise become due, owing, and payable on or before the Petition Date, including, without

2    limitation, Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy

3    Code.

4            2.1.36    <u>Debtor(s)</u>.  Individually or collectively, the Voluntary Debtors and the

5    Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

6            2.1.37    <u>Debtor(s)-in-Possession</u>.  The Voluntary Debtor(s) in their capacity as

7    representatives of their respective Estates in their respective Chapter 11 Cases.

8            2.1.38    <u>Disclosure Statement</u>.  The document accompanying the applicable Group

9    IV: Voluntary Debtors' Plan that is entitled "Fourth Amended Disclosure Statement Describing

10    Fourth Amended Joint Chapter 11 Plan Filed by SJD Partners, Ltd. and SJD Development Corp."

11    and with all accompanying exhibits.

12            2.1.39    <u>Disputed Claim(s)</u>.  All or any part of a Group IV: Voluntary Debtors'

13    Claim other than any Allowed Amount thereof as to which any one of the following applies: (i) no

14    Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in

15    the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent,

16    unknown or in a zero amount, (ii) the Claim is the subject of (a) an unresolved  Litigation Claim;

17    (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection to such Claim that

18    has not been resolved by a Final Order; or (d) a request for estimation in accordance with the

19    Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the

20    applicable Plan which is Filed on or before the Claims Objection Deadline, which Adversary

21    Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined

22    by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

23            2.1.40    <u>Disputed Lien(s)</u>.  An asserted lien(s) against Group IV: Voluntary Assets

24    of the Group IV: Voluntary Debtor(s) that is either subject to a Disputed Secured Claim, not duly

25    perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code

26    Sections 510(c)(2) and/or 506(d).  However, pursuant to Section 506(d)(2), a lien is not disputed

27    merely because it secures a claim that "is not an allowed secured claim due only to the failure of

28    any entity to file a proof of such claim under section 501 of this title."

1        2.1.41    Disputed Secured Claim(s). That part of a Disputed Claim against the

2    Group IV: Voluntary Debtors that is a Secured Claim.

3        2.1.42    Distribution(s).  Payments to Holders of Allowed Claims provided for

4    under the Plan.

5        2.1.43    Distribution Agent.  The entity that is responsible for making Distributions

6    under the Group IV: Voluntary Debtors' Plan, which shall be Acquisitions.

7        2.1.44    Distribution Account(s).  Separate account(s) to be established by the Plan

8    Trustee at an FDIC insured bank into which each Group IV: Voluntary Debtors' Available Cash

9    shall be deposited and all Available Cash received by the Plan Trust after the Confirmation Date

10   that would have belonged to such Group IV: Voluntary Debtor shall be deposited.

11       2.1.45    Distribution Date.  With respect to any Allowed Claim or Allowed

12   Interest, the date on which a Distribution is required to be made under the Group IV: Voluntary

13   Debtors' Plan.

14       2.1.46    Effective Date. A date selected by the SunCal Plan Proponents that is not

15   later than the thirteenth (30th) calendar day after the Confirmation Date of the Group IV: Voluntary

16   Debtors' Plan, provided there is no stay pending appeal of the Confirmation Order, in which case

17   the Effective Date shall be tolled until the dissolution of such stay.  The Effective Date may be

18   further extended by the Bankruptcy Court after notice and hearing to all parties in interest.

19       2.1.47    Elieff.  Bruce Elieff, the president of Acquisitions, a purported Bond

20   Indemnitor Claims with alleged corresponding indemnity Claims against the Debtors.

21       2.1.48    Estates.  The bankruptcy estates of the Group IV: Voluntary Debtors

22   created pursuant to Section 541 of the Bankruptcy Code.

23       2.1.49    Fee Applications.  Applications of Professional Persons under Sections

24   330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

25   expenses in the Group IV: Voluntary Debtors' Cases.

26       2.1.50    Fee Claim.  A Claim under Sections 330 or 503 of the Bankruptcy Code

27   for allowance of compensation and reimbursement of expenses in the Group IV Voluntary

28   Debtors' Cases.

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1       2.1.51    <u>Filed</u>.  Delivered to, received by and entered upon the legal docket by the

2   Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

3       2.1.52    <u>Final Order</u>.  A judgment, order, ruling or other decree issued and entered

4   by the Bankruptcy Court that has not been reversed, stayed, modified or amended.

5       2.1.53    <u>General Unsecured Claim</u>.  A Claim against a Group IV: Voluntary Debtor

6   that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim (d) a Priority Claim

7   or (e) a Bond Indemnification Claim.

8       2.1.54    <u>Group IV: Voluntary Assets</u>.  All assets that are property of the Group IV:

9   Voluntary Debtor(s) pursuant to Bankruptcy Code Section 541, which include the Assets described

10  in Exhibit "1" to the Disclosure Statement, the Group IV: Voluntary Debtors' Cash, and the Group

11  IV: Voluntary Debtor(s)' Litigation Claims.

12      2.1.55    <u>Group IV: Voluntary Debtors</u>.  SJD Partners, Ltd. and SJD Development

13  Corp..

14      2.1.56    <u>Holder</u>.  The beneficial owner of any Claim or Interest against the Group

15  IV: Voluntary Debtors.

16      2.1.57    <u>Insider</u>.  The term shall have the broadest meaning possible under

17  Section 101(31), including, but not limited to, a person in control of the Group IV: Voluntary

18  Debtors, Affiliates and Insiders of such Affiliates, including the Lehman Entities.

19      2.1.58    <u>Interest</u>.  Any equity security interest in any Group IV: Voluntary Debtor

20  within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

21  equity ownership interest in any of the Group IV: Voluntary Debtors, whether in the form of

22  common or preferred stock, stock options, warrants, partnership interests, or membership interests.

23      2.1.59    <u>LBHI</u>.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

24  company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

25  in the Bankruptcy Court for the Southern District of New York.

26      2.1.60    <u>LCPI</u>.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

27  bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

28

1     2.1.61  Lehman Adversary Proceeding.  The Debtors' (including the Group IV:

2 Voluntary Debtors) pending adversary proceeding against the Lehman Lenders and/or the Lehman

3 Successors asserting various causes of action including equitable subordination, fraudulent

4 inducement, fraudulent conveyances and preferential transfers.

5     2.1.62  Lehman ALI.  Lehman ALI, Inc.

6     2.1.63  Lehman Re.  Lehman Re LTD., an Affiliate of the Lehman Entities and a

7 Lehman Successor to Lehman's Disputed Claim and Disputed Liens arising from the Pacific Point

8 First Loan Agreement.

9     2.1.64  Lehman Claim Objections. The objections filed by the Debtors to the

10 claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

11 Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

12 Objection and the Lehman 502(d) Objection.

13     2.1.65  Lehman's Disputed Claim(s).  All of the Proofs of Secured Claims filed by

14 a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases, including in the Group

15 IV: Voluntary Debtors' Cases, arising from the Lehman Disputed Loans and the Lehman Disputed

16 Administrative Loans.

17     2.1.66  Lehman's Disputed Lien(s).  All of the alleged liens relating to Proofs of

18 Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's Chapter 11

19 Cases arising from the Lehman Disputed Loans.

20     2.1.67  Lehman Disputed Loans.  Collectively the following loans that are the

21 purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan Agreement;

22 (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC Palmdale Loan;

23 (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (g) SunCal

24 Century City Loan Agreement; (h) SunCal PSV Loan Agreement; (i) SunCal Delta Coves Loan

25 Agreement; (j) SunCal Marblehead/SunCal Heartland Loan Agreement; (k) Sun Cal Oak Valley

26 Loan Agreement; (l) SunCal Northlake Loan Agreement; (m) Pacific Point First Loan Agreement;

27 (n) Pacific Point Second Loan Agreement , and (o) the Lehman Disputed Administrative Loan.

28

2.1.68    <u>Lehman Entities</u>.  The Lehman Lenders, the Lehman Equity Members and LBHI.

2.1.69    <u>Lehman Equity Members</u>.  Lehman Entities that own direct or indirect membership Interests in all of the Trustee Debtors, except for SunCal Heartland and SunCal Marblehead.

2.1.70    <u>Lehman Lenders</u>.  Lehman ALI, LCPI, Northlake Holdings, and OVC Holdings.

2.1.71    <u>Lehman Representatives</u>.  The individuals that controlled the Lehman Entities.

2.1.72    <u>Lehman Successor(s)</u>.  Entities other than the Lehman Lenders that either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske Bank.

2.1.73    <u>Lexon</u>.  Lexon Insurance Co.

2.1.74    <u>LitCo</u> A Delaware limited liability company that will be formed for the purpose of funding the LitCo Plan Loan.

2.1.75    <u>LitCo Plan Loan</u>. A loan that will be made by LitCo to the extent necessary to pay Allowed Priority Claims, Allowed Administrative Claims and Post Confirmation Expenses incurred by the Plan Trust, the Plan Trustee and its professionals and to the Voluntary Debtors' Committee and its professionals if no other source is available from the Group IV: Voluntary Assets, and to make the 1% Distribution to Holders of Allowed Reliance Claims.

2.1.76    <u>Litigation Claims</u>.  Any and all interests of the Group IV: Voluntary Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens, rights, or causes of action which have been or may be commenced by the Group IV: Voluntary Debtor(s), the Voluntary Debtors and/or the Plan Trust, as the case may be, including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Group IV: Voluntary Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment of money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the Lehman

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1  Adversary Proceeding; (vi) the Contract Action, (vii) Lehman Claim Objections and (viii) any and

2  all other Claims against Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan

3  or the Disclosure Statement.

4          2.1.77  <u>Litigation Recoveries</u>.  Any Cash or other property received by the

5  Chapter 11 Trustee, the Group IV: Voluntary Debtors, the Voluntary Debtors' Committee and/or

6  the Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but

7  not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

8  whether recovered by way of settlement, execution on judgment or otherwise.

9          2.1.78  <u>Litigation Rights</u>. Any Claims held by a party against the Group IV:

10  Voluntary Debtors, and if applicable, against third parties arising or relating to the Claim against

11  the applicable Group IV Voluntary Debtor, that have not been fixed in a final judgment prior to the

12  Effective Date.

13          2.1.79  <u>Maximum Distributions</u>.  A Distribution to a Holder of an Allowed

14  General Unsecured Claim against a Group IV: Voluntary Debtor equal to one hundred percent

15  (100%) of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal

16  Rate from and as of the Group IV: Voluntary Debtor's Petition Date.

17          2.1.80  <u>MB Firm</u>.  Miller Barondess, LLP.

18          2.1.81  <u>Mechanic Lien Claims</u>.  Mechanic Lien Claims arising pursuant to

19  California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise

20  allegedly satisfy the requirements of Bankruptcy Code 546(b).

21          2.1.82  <u>Net Litigation Recoveries</u>.  Litigation Recoveries less associated

22  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

23  Litigation Recoveries.

24          2.1.83  <u>Orders for Relief Date</u>.  The following are dates that orders for relief were

25  entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |

-14-

| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

2.1.84    Pacific Point First Loan Agreement.  A certain loan agreement, dated February 16, 2006, by and among Lehman ALI, SJD Development and SJD Partners, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $125,000,000. The Pacific Point First Loan Agreement is allegedly secured by a first-priority deed of trust on the Pacific Point Project.  The Pacific Point First Loan Agreement had an asserted balance due of $120,110,237 as of March 30, 2009.  The ownership of the term loan portion of the Pacific Point First Loan Agreement is now allegedly held by Lehman Re, a Bermuda business entity and the ownership of the revolving portion of this loan is allegedly held by Lehman ALI.

2.1.85    Pacific Point Second Loan Agreement. A certain loan agreement, dated May 1997, by and between Lehman ALI and SJD Partners, pursuant to which Lehman ALI initially made a loan in the maximum aggregate principal amount of approximately $20,000,000.  The Pacific Point Second Loan Agreement was secured by a second-priority deed of trust on the Pacific Point Project, which was foreclosed upon on August 28, 2008 by LV Pacific Point, as assignee of Lehman ALI.

2.1.86    Pacific Point Project.  The Project formerly owned by SJD Partners, located in the San Juan Capistrano, California, as more particularly described herein.

2.1.87    Person.  An individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, committee or other entity of whatever nature.

2.1.88    Petition Dates.  The following are dates that each of the Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary Chapter 11 petitions against the Trustee Debtors:

| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |

| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |
| SJD Development | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Del Rio | November 19, 2008 |
| Tesoro | November 19, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 19, 2008 |

2.1.89    Plan.  The Fourth Amended Joint Chapter 11 Plan Filed by SJD Partners, Ltd. and SJD Development Corp. in their capacities as debtors and debtors in possession, together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.90    Plan Period. The period from the Effective Date to the Group IV: Voluntary Debtors Plan Termination Date.

2.1.91    Plan Termination Date. The fifth (5th) anniversary date of the Effective Date for the Group IV: Voluntary Debtors, unless the Group IV: Voluntary Debtors Plan elects an earlier date.

2.1.92    Plan Sponsor.  The entity that has committed to cause and/or arrange the funding of certain specified obligations under the Plan on or after the Effective Date.  The Group IV: Voluntary Debtors Plan Sponsor is Acquisitions.

2.1.93    Plan Trust.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Group IV: Voluntary Debtors Plan Trustee and the Holders of Allowed Claims against the Group IV: Voluntary Debtors as the Plan Trust Beneficiaries. The purpose of the Plan Trust will be to liquidate the Group IV: Voluntary Assets

-16-

1  (other than Group IV: Voluntary Assets that are excluded by the Group IV: Voluntary Debtors Plan

2  Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise

3  consummate the Group IV: Voluntary Debtors Plan.

4          2.1.94    <u>Plan Trust Assets</u>. All property within the Chapter 11 estates of the Group

5  IV: Voluntary Debtors.

6          2.1.95    <u>Plan Trust Beneficiaries</u>. The Group IV: Voluntary Debtors Plan Trust

7  Beneficiaries are (i) the holders of Beneficial Interests, as of any point in time, and (ii) holders of

8  Allowed Claims that shall be satisfied from the Group IV: Voluntary Debtors Plan Trust Assets in

9  accordance with the terms of the Group IV: Voluntary Debtors Plan.

10         2.1.96    <u>Plan Trustee</u>. The Group IV: Voluntary Debtors Plan Trustee under the

11  Group IV: Voluntary Debtors Plan Trust is Acquisitions.

12         2.1.97    <u>Post-Confirmation Expenses</u>.  The fees and expenses incurred by the

13  Group IV: Voluntary Debtors Plan Trust, the Group IV: Voluntary Debtors Plan Trustee and the

14  Voluntary Debtors' Committee and their professionals following the Confirmation Date (including

15  the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Litigation

16  Claims; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or

17  otherwise liquidating the Plan Trust's Assets; (iv) effectuating Distributions under the Plan; and

18  (v) otherwise consummating the Plan and closing the Group IV: Voluntary Debtors' Chapter 11

19  Cases.

20         2.1.98    <u>Priority Claim</u>.  Any Claim, other than an Administrative Claim or a Tax

21  Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

22         2.1.99    <u>Pro Rata</u>.  Proportionately, so that with respect to any Distribution in

23  respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of

24  such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i) the

25  amount of property distributed on account of all Allowed Claims of the Class or Classes sharing in

26  such Distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

27         2.1.100   <u>Professional</u>.  A Person or Entity (a) employed by the Group IV:

28  Voluntary Debtors, the Voluntary Debtors' Committee pursuant to a Final Order in accordance

1   with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered

2   prior to the Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy

3   Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy

4   Court pursuant to Section 503(b) of the Bankruptcy Code.

5           2.1.101    Professional Fees.  All Allowed Claims for compensation and for

6   reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

7           2.1.102    Projects.  The Debtors' residential real estate development projects and

8   other assets as separately defined herein and described in Exhibit "1" to the Disclosure Statement.

9           2.1.103    Reliance Claim(s). An Allowed Unsecured Claim, Allowed Mechanic's

10  Lien Claim, or Allowed Bond Indemnification Claim against a Group IV: Voluntary Debtor that

11  would entitle the holder thereof to be the beneficiary of any judgment obtained in the Lehman

12  Adversary Action against a Lehman Entity by such Group IV: Voluntary Debtor.  All Allowed

13  Mechanic's Lien Claims, Allowed Bond Indemnification Claims and certain Allowed General

14  Unsecured Claims are Reliance Claims.  A list of the Reliance Claims for the Group IV: Voluntary

15  Debtors is attached to the Disclosure Statement as Exhibit "8."

16          2.1.104    Reliance Claimant. The holder of a Reliance Claim against a Group IV:

17  Voluntary Debtor.  A list of the Reliance Claimants against the Group IV: Voluntary Debtors is

18  attached to the Disclosure Statement as Exhibit "8."

19          2.1.105    SCC LLC.  SCC Acquisitions LLC, a limited liability company, a

20  subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

21          2.1.106    Schedules.  The schedules of assets and liabilities and list of equity

22  security holders Filed by the Group IV: Voluntary Debtors, as required by Section 521(1) of the

23  Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6,

24  as amended from time to time.

25          2.1.107    Secured Claim.  Any Claim, including interest, fees, costs, and charges to

26  the extent allowable pursuant to Bankruptcy Code Section 506, that is secured by a valid and

27  unavoidable Lien on the Group IV: Voluntary Assets.

28

1     2.1.108 <u>SJD Development</u>. SJD Development Corp., a California corporation, a

2 Voluntary Debtor, a Group IV: Voluntary Debtor, and the parent of SJD Partners.

3     2.1.109 <u>SJD Partners</u>. SJD Partners, Ltd., a Group IV: Voluntary Debtor, and the

4 owner of the former owner of the Pacific Point Project.

5     2.1.110 <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its

6 Affiliates.

7     2.1.111 <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited

8 liability company, and the former property manager for the Projects, which has been succeeded by

9 Argent Management.

10     2.1.112 <u>SunCal Plan Proponents</u>.  The Group IV: Voluntary Debtors, in their

11 capacity as debtors and debtors in possession in their respective Chapter 11 Cases, and

12 Acquisitions as a creditor and party-in-interest, that are proposing the Plan.

13     2.1.113 <u>Tax</u>.  Any tax, charge, fee, levy, impost or other assessment by any

14 federal, state, local or foreign taxing authority, including, without limitation, income, excise,

15 property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

16 estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

17 additions attributable to, or imposed on or with respect to such assessments.

18     2.1.114 <u>Tax Claim</u>.  Any Claim for any Tax to the extent that it is entitled to

19 priority in payment under Section 507(a)(8) of the Bankruptcy Code.

20     2.1.115 <u>Trustee Debtor(s)</u>. The following Debtors, individually or collectively,

21 that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland, SunCal

22 Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV, SunCal

23 Torrance, and SunCal Oak Knoll.

24     2.1.116 <u>Unsecured Claim</u>. An Unsecured Claim is any Claim that is not an

25 Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

26     2.1.117 <u>Voluntary Debtor(s)</u>.  The following  Chapter 11 debtors and debtors-in-

27 possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC Palmdale,

28 Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal Bickford, SunCal

1    Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del

2    Rio and Tesoro.

3            2.1.118    <u>Voluntary Debtors' Committee</u>.  The Official Committee of Unsecured

4    Creditors of the Voluntary Debtors appointed in the Cases pursuant to Section 1102 of the

5    Bankruptcy Code.

6        **2.2**    **Rules of Construction.**

7            For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

8    in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

9    singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

10    masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

11    Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

12    such document or schedule, as it may have been or may be amended, modified or supplemented

13    pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

14    entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

15    or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

16    and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

17    in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

18    the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

19    contract, instrument, release, indenture, agreement, or other document being in a particular form or

20    on particular terms and conditions means that such document shall be substantially and materially

21    in such form or substantially and materially on such terms and conditions; (h) any reference in the

22    Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

23    Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

24    may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

25    102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

26    express terms of the Plan or the Disclosure Statement or any other provision in this Section 2.2.

27

28

**2.3**    **Exhibits.**

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full therein.

### III.

### TREATMENT OF UNCLASSIFIED CLAIMS

**3.1**    **Introduction**.

As required by the Bankruptcy Code, the Group IV: Voluntary Debtors Plan places Claims and Interests into various Classes according to their right to priority.  However, certain types of Claims are not classified in any Classes under the Group IV: Voluntary Debtors Plan.  These Claims are deemed "unclassified" under the provisions of the Code.  They are not considered impaired and they do not vote on the Group IV: Voluntary Debtors Plan, because they are automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal Plan Proponents have not placed the following Claims in a Class.  The treatment of these unclassified Claims is as provided below.

**3.2**    **Treatment of Allowed Administrative Claims.**

The Code requires that all Allowed Administrative Claims be paid on the later of Effective Date of the Group IV: Voluntary Debtors Plan or the date of their allowance, unless a particular Holder agrees to a different treatment.  The treatment of Allowed Administrative Claims is as described below.  However, such Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims shall be paid from the applicable Distribution Account(s).

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred in the ordinary course of post-petition business by the Debtors in Possession (including without limitation post-petition trade obligations and routine

-21-

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1    post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee in the

2    ordinary course of business, in accordance with the terms of the particular obligation.

3          **3.3**      **Administrative Claims Bar Date.**

4          All applications for final compensation of Professionals for services rendered and for

5    reimbursement of expenses incurred on or before the Effective Date and all other requests for

6    payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

7    or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

8    obligations and routine post-petition payroll obligations incurred in the ordinary course of the

9    Group IV: Voluntary Debtors' post-petition business, for which no bar date shall apply, and (ii)

10   post-petition tax obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy

11   Court and served upon the Plan Trustee no later than the Administrative Claims Bar Date, unless

12   such date is extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request

13   for payment of an Administrative Claim that is subject to the General Administrative Claims Bar

14   Date and that is not Filed and served on or before the Administrative Claims Bar Date shall be

15   forever barred; any party that seeks payment of Administrative Claims that (i) is required to file a

16   request for payment of such Administrative Claims and (ii) does not file such a request by the

17   deadline established herein shall be forever barred from asserting such Administrative Claims

18   against the Group IV: Voluntary Debtors, the Plan Trust, their estates, or any of their property.

19         **3.4**      **Treatment of Unsecured Tax Claims.**

20         Tax Claims are certain unsecured income, employment and other taxes described by Code

21   Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

22   receive the present value of such Claim in deferred cash payments, over a period not exceeding

23   five (5) years from the petition date and that such treatment not be less favorable than the treatment

24   accorded to non priority unsecured creditors.

25         At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

26   entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

27   each three-month period following the Effective Date, during a period not to exceed five years

28   after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

1    unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

2    United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

3    the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

4    favorable terms to the Group IV: Voluntary Debtors (or the Plan Trust after the Effective Date)

5    than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax

6    Claim in Cash.

7        **3.5    <u>Summary of the Plan's Treatment of Bond Indemnity Claims.</u>**

8        Allowed Bond Indemnification Claims are treated as Reliance Claims.  In the event that

9    such Bond Indemnification Claim arises from a general unsecured claim, it is classified in Class 3.

10                        **IV.**

11            **<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

12        As required by the Code, the Group IV: Voluntary Debtors Plan places Claims and Interests

13    into various Classes according to their right to priority and other relative rights.  The Group IV:

14    Voluntary Debtors Plan specifies whether each Class of Claims or Interests is impaired or

15    unimpaired, and the Group IV: Voluntary Debtors Plan sets forth the treatment each Class will

16    receive.  The table below lists the Classes of Claims established under the Group IV: Voluntary

17    Debtors Plan and states whether each particular Class is impaired or left unimpaired by the Group

18    IV: Voluntary Debtors Plan.  A Class is "unimpaired" if the Group IV: Voluntary Debtors Plan

19    leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or

20    Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP IV: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 1** | **Claims** | **Claim Nos.** |
| Class 1.1 | The Holder of the Disputed Claim filed by Lehman ALI on behalf of Lehman Re and Lehman ALI against SJD Partners arising from the Pacific Point First Loan Agreement in the asserted amount of $120,110,237. | SJD Partners No. 23; SJD Development No. 2<br><br>Disputed in the Amount of $120,110,237 |

-23-

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP IV: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 1** | **Claims** | **Claim Nos.** |
| Class 1.2 | The Holder of Lehman's Disputed (Contingent) Claim filed by Lehman ALI against SJD Partners arising from the Pacific Point Second Loan Agreement. | SJD Partners No. 24<br><br>Disputed |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE GROUP IV: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 2** | **Claimant** | **Claim Nos.** |
| Class 2.1 | The Holder of Priority Claims that fall within Code Sections 507(a)(4), (5), (6), and (7). | Schedule Amount and SJD Partners No. 12 in the Estimated Amount of $4,188 |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[2] AGAINST THE GROUP IV: VOLUNTARY DEBTORS AS SET FORTH IN EXHIBIT "8" TO THE DISCLOSURE STATEMENT | | |
|---|---|---|
| **Class 3** | **Claimant** | **Claim Nos.** |
| Class 3.1 | The holders of Reliance Claims against SJD Partners. | Various Filed and Scheduled Claims in the Estimated Amount of $6,419,915 |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS AGAINST THE GROUP IV: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| Class 4.1 | Claimants holding Allowed Unsecured Claims against SJD Partners that are not Reliance Claims, including any Allowed deficiency claim arising from the Pacific Point First Loan and/or the Pacific Point Second Loan. | Various Filed and Scheduled Claims in the Estimated Amount of $49,786,494 |

---

[2] Unsecured Claims are generally placed within the same class and they receive the same treatment under the Group IV: Voluntary Debtors Plan. However, the SunCal Plan Proponents have divided Unsecured claims into two classes in the Group IV: Voluntary Debtors Plan. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The other Unsecured Creditors do not hold Reliance Claims.

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

| CLASSIFICATION OF INTEREST HOLDERS AGAINST THE GROUP IV: VOLUNTARY DEBTORS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Amount** |
| Class 5.1 | Allowed Interests in SJD Partners held by SJD Development. | 100% |
| Class 5.2 | Allowed Interests in SJD Development held by Elieff. | 100% |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.1** **The Plan's Treatment of Lehman's Disputed Secured Claim(s) and Disputed Lien(s) Against Group IV: Voluntary Debtors (Classes 1.1 and 1.2).**

The Disputed Secured Claims within Classes 1.1 and 1.2 shall be disallowed pursuant to Bankruptcy Code Sections 506(a) and 506(d) because there is no collateral to support such alleged Claims and the liens shall be declared null and void. Therefore, the Holders of such Disputed Secured Claims shall not receive a Distribution under the Plan. To the extent that any Allowed deficiency Claim arises under Classes 1.1 and 1.2 Claims, such Claims shall be treated as Class 4.1 General Unsecured Claims.

**5.2** **The Plan's Treatment of Holders of Priority Claims Against Group IV: Voluntary Debtors (Class 2.1)**.

The treatment of the Holders of Allowed Priority Claims under the Group IV: Voluntary Debtors Plan shall be as follows**:**

A.    The Holder(s) are unimpaired under the Group IV: Voluntary Debtors Plan; and

B.    The Holder(s) shall be paid from the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

-25-

**5.3** **The Plan's Treatment of Holders of General Unsecured Claims Against Group IV: Voluntary Debtors that Are Reliance Claims  (See Exhibit 8 to Disclosure Statement) (Class 3.1).**

The rights of Holders of Allowed Class 3.1 Claims are impaired under the Group IV: Voluntary Debtors Plan and shall be treated as follows:

A.    On the Distribution Date, such Holders shall receive a Distribution in cash, on the Effective Date, equal to one percent (1%) of such claimant's Allowed Claim from the LitCo Plan Loan.

B.    On or after the Distribution Date, such Holders shall receive a pro-rata share of any funds payable from the applicable Distribution Account(s), including the Litigation Recoveries (inclusive of applicable Litigation Recoveries from the Lehman Adversary Proceeding), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, Allowed Priority Claims, if and when such funds become available for Distribution.

C.    If during the Plan term, LitCo, and/or its designee, acquires the Pacific Point Project free and clear of all claims and liens (with the exception of Allowed Contingent Bond Indemnification Claims), and to the extent the Distributions to date made to such Holders is less than 50% on account of such Allowed Claims, such Holders shall receive an additional Distribution equal to the difference between the Distributions previously provided to such Holders and a 50% Distribution on account of such Holders' Allowed Claims in full satisfaction of such Allowed Claims.  Currently, the Pacific Point Project is owned by LV Pacific Point, a Lehman ALI Affiliate.  Consequently, at the present time, free and clear title to the Pacific Point Project cannot be obtained absent the consent of Lehman ALI, and it is uncertain whether such consent will be obtained.

**5.4** **The Plan's Treatment of Holders of Allowed General Unsecured Claims Against Group IV: Voluntary Debtors that Are Not Reliance Claims (Class 4.1).**

The rights of Holders of Allowed Class 4.1 Claims are impaired under the Group IV: Voluntary Debtors Plan.  Under the Group IV: Voluntary Debtors Plan, each claimant shall receive

their pro-rata share of any funds payable from the applicable Distribution Account(s) arising from Litigation Claims (excluding recoveries from the Lehman Adversary Proceeding), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

**5.5** **The Plan's Treatment of Holders of Allowed Interests Against Group IV: Voluntary Debtors (Classes 5.1 and 5.2).**

The Interests of the Holders in Class 5.1 to 5.2 are impaired under the Group IV: Voluntary Debtors Plan. All such Interests shall be cancelled as of the Effective Date and no Distribution shall be made to these Holders on account of such Interest(s).

**VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1** **Introduction.**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Group IV: Voluntary Debtors cannot represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  The requirements described herein are <u>not</u> the only requirements for confirmation.

**6.2** **Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 6.3 **Who May Vote to Accept/Reject the Plan.**

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected"). The votes will be tabulated on a Debtor by Debtor basis.

### 6.4 **What Is an Allowed Claim/Interest.**

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or Allowed Interest to vote.

### 6.5 **What Is an Impaired Class.**

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the SunCal Plan Proponents believe that all Classes, except for Class 2.1 are impaired.

### 6.6 **Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan. The Group IV: Voluntary Debtors believe that all Classes are entitled to vote except Classes 2.1, 5.1 and 5.2. Class 2.1 is not impaired under the Plan and consequently is not entitled to vote. They are conclusively deemed to have accepted the Plan. The Interests held by the Holders in Classes 5.1 and 5.2 are being cancelled under the Plan; accordingly these Interest Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

1

### 6.7    Who Can Vote in More than One Class.

2      A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

3 Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

4 the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

5 otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

6 Subordinated Note Claims), and may vote the Claims held in each Class.

7

### 6.8    Votes Necessary for a Class to Accept the Plan.

8      A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

9 number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

10 accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

11 two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

12 the Plan.

13

### 6.9    Treatment of Nonaccepting Classes.

14      As noted above, even if there are impaired Classes that do not accept the proposed Plan, the

15 Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

16 required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by

17 which a plan may be confirmed and become binding on non-accepting Classes is commonly

18 referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on

19 nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

20 requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

21 equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

22 11 U.S.C. § 1129(b) and applicable case law.

23

### 6.10    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

24      The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

25 impaired Class if such Class does not vote to accept the Plan.

26

27

28

**VII.**

**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

**7.1**      **Introduction.**

This section is intended to address how the SunCal Plan Proponents intend to implement the provisions of the Plan.  It addresses the transfer of the Plan Trust Assets to the Plan Trust, the nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust, the resolution of disputed claims, the sources of funds that will be used to pay claims and the mechanics of how claims will be paid.

**7.2**      **Establishment and Operations of the Plan Trust**.

The Plan Trust shall be established and shall become effective on the Effective Date.  The Plan Trust is created pursuant to the Plan and the Confirmation Order.  The primary purpose of the Plan Trust is the liquidation the Group IV: Voluntary Assets and the Distribution of the proceeds to Creditors, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust. The Plan Trust shall hold title to and administer the Plan Trust Assets, including, but not limited to, any Litigation Claims, and the proceeds thereof for liquidation and Distribution in accordance with the terms of the Plan.

**7.3**      **Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust**.

On the Effective Date, title to and possession of all property of the Group IV: Voluntary Debtors shall be deemed transferred and delivered to the Plan Trust, without further act or action under any applicable agreement, law, regulation, order or rule of law.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all Litigation Claims whether or not pending on the Effective Date.  Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and the Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan Trustee shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon ten (10) days' prior

-30-

1  written notice and opportunity to object to the proposed action.  Any disputes concerning the

2  settlement or abandonment of a Litigation Claim shall be submitted to the Bankruptcy Court for

3  resolution on no less than ten (10) days' notice to the objecting party.

4     All Litigation Recoveries realized or obtained by the Plan Trustee shall be promptly

5  deposited into the applicable Distribution Account(s).  Except as otherwise provided in the Plan

6  and the Confirmation Order, the Litigation Recoveries shall be free and clear of all Claims and

7  Liens and shall only be expended in accordance with the provisions of the Plan.

8     **7.4**  **Payment of Plan Trust Expenses**.

9     The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall be

10  paid, or adequate reserves shall be created for the payment of such expenses, prior to any

11  Distribution to the Plan Trust Beneficiaries.

12     **7.5**  **The Plan Trust Distribution System.**

13     The Plan Trustee shall establish a separate "Distribution Account" for each Group IV:

14  Voluntary Debtor at an FDIC insured bank. Each Group IV: Voluntary Debtor's Available Cash,

15  whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group

16  IV: Voluntary Debtor's Distribution Account.  These funds will then be used to pay the claims of

17  Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons

18  dealing with the Plan Trustee, or seeking to assert Claims against the Debtors, the Estates or the

19  Plan Trust, shall look only to property of the Debtors, the Estates or the Plan Trust to satisfy any

20  liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual

21  obligation to satisfy any such liability.

22     **7.6**  **The Plan Trustee**.

23      **7.6.1**  **Appointment**.  Acquisitions shall be Plan Trustee of the Plan Trust.  The

24  appointment of the Plan Trustee shall be effective as of the Effective Date.

25      **7.6.2**  **Term**.  Unless the Plan Trustee resigns, dissolves or is removed by Court

26  order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to

27  the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to

28

1    termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan

2    Trustee.

3          **7.6.3**      **Powers and Duties**.  On the Effective Date, the Plan Trustee shall have

4    the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code

5    §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan

6    and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with

7    the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the

8    extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan

9    Trustee shall be authorized, empowered and directed to take all actions necessary to comply with

10   the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without

11   limitation to:

12          i.      employ, retain, and replace one or more attorneys, accountants,

13   auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert

14   witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under

15   the Plan;

16          ii.      control and effectuate the Claims reconciliation process, including to

17   object to, seek to subordinate, compromise or settle any and all Claims against the Debtors

18   pursuant to the terms of the Plan;

19          iii.      open, maintain and administer bank accounts as necessary to

20   discharge the duties of the Plan Trustee under the Plan;

21          iv.      make Distributions to the Holders of Allowed Claims in accordance

22   with the Plan;

23          v.      retain professionals to assist in performing his or her duties under the

24   Plan;

25          vi.      pay reasonable and necessary professional fees, costs, and expenses;

26          vii.      investigate, analyze, commence, prosecute, litigate, compromise,

27   settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the

28   benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1    necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all

2    Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests

3    of the Plan Trust;

4            viii.    administer, sell, liquidate, or otherwise dispose of the Assets in

5    accordance with the terms of the Plan;

6            ix.    incur and pay reasonable and necessary expenses in connection with

7    the performance of the Plan Trustee's duties under the Plan;

8            x.    represent the Estates before the Court and other courts of competent

9    jurisdiction with respect to matters concerning the Plan Trust;

10            xi.    seek the examination of any entity under the subject to the provisions

11    of Bankruptcy Rule 2004;

12            xii.    comply with applicable orders of the court and any other court of

13    competent jurisdiction over the matters set forth in the Plan;

14            xiii.    comply with all applicable laws and regulations concerning the

15    matters set forth in the Plan;

16            xiv.    exercise such other powers as may be vested in the Plan Trust

17    pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

18            xv.    execute any documents, instruments, contracts, and agreements

19    necessary and appropriate to carry out the powers and duties of the Plan Trust;

20            xvi.    (1) seek a determination of tax liability under §505 of the code, (2)

21    pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns

22    required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a

23    "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on

24    behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

25            xvii.    stand in the shoes of the Debtors for all purposes.

26            **7.6.4**    **Retention of Professionals and Compensation Procedure.**    On and

27    after the Effective Date, the Plan Trustee may, without further application or Motion, notice,

28    hearing, or Court order, engage or employ such professionals and experts as may be deemed

-33-

1    necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out the

2    provisions of the Plan, including, but not limited to, the Professionals retained prior to the

3    Effective Date by either the Debtors or the Voluntary Debtors' Committee.  The Plan Trustee may

4    employ such professionals on any reasonable terms and conditions of employment to be

5    determined by the Plan Trustee.  For the services performed on and after the Effective Date, the

6    professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive

7    reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan

8    Trustee.

9    **7.6.5    Fees and Expenses.**  Acquisitions shall not receive any compensation for

10    the services it performs as the Plan Trustee.  The Plan Trustee Professionals shall be entitled to

11    reasonable compensation for their services, and reimbursement of expenses.  The costs and

12    expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee

13    Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order,

14    notice or application to the Court, the reasonable fees and expenses of the Plan Trustee

15    Professionals, as necessary to discharge the Plan Trustee's duties under the Plan.  The Plan Trustee

16    shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the

17    Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any

18    Distributions under the Plan.

19    **7.6.6    Limitation of Liability and Indemnification.**  None of the Group IV:

20    Voluntary Debtors, the Voluntary Debtors' Committee, the Plan Sponsor, the SunCal Plan

21    Proponents, the Plan Trustee, the Professionals, nor any of their respective members, officers,

22    directors, shareholders, employees, or agents (the "Indemnified Parties") shall be liable (a) for any

23    loss or damages by reason of any action taken or omitted by him or her, except in the case of fraud,

24    willful misconduct, bad faith, or gross negligence, (b) for any act or omission made in reliance

25    upon the Debtors' books and records or upon information or advice given to the Plan Trustee by

26    his or her professionals, or (c) for any action taken or omission made in connection with or related

27    to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the

28    approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan,

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1    or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the

2    fullest extent permitted by applicable statute and case law.  Except as otherwise provided in this

3    Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate,

4    statement, instrument, opinion, report, notice, consent, or other document believed by him or her to

5    be genuine and to have been signed by the proper party or parties.

6        The Indemnified Parties shall be indemnified and receive reimbursement from and against

7    any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or nature,

8    which the Indemnified Party may incur or sustain the exercise and performance of any of the Plan

9    Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of

10    services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable

11    law, except if such loss, liability, expense or damage is finally determined by a court of competent

12    jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct,

13    bad faith, or gross negligence.  The amounts necessary for such indemnification and

14    reimbursement shall be paid by the Plan Trustee out of the Plan Trust Assets.  The Plan Trustee

15    shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan

16    Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or

17    liability.  This indemnification shall survive the dissolution, resignation or removal, as may be

18    applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit

19    of the Plan Trustee's and the Indemnified Person's heirs and assigns.

20        **7.6.7    Plan Trustee as Successor.**  Pursuant to Code §1123(b), the Plan Trustee

21    shall be the successor to the Group IV Voluntary Debtors for all purposes.

22        **7.7    The Plan Trust Beneficiaries**.

23        The Holders of Allowed Claims under the Plan, or any successors to such Holders'

24    Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust

25    which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the

26    times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be

27    evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except

28    as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a

1   beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan

2   Trust assets or to any right to call for a partition or division of such assets or to require an

3   accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner

4   provided in the Plan.

5          The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities"

6   under applicable law.  However, such rights have not been defined as "securities" under the Plan

7   because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

8   arising under the Plan Trust are deemed to be "securities," the exemption from registration under

9   §1145 of the Bankruptcy code is intended to be applicable to such securities.

10         **7.8     No Payment of Transfer-Related Fees to the United States Trustee**.

11         The Plan Trust shall not be required to pay any fees to the United States Trustee based on

12   any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

13         **7.9     No Payment of Transfer-Related Fees to the Plan Trustee**.

14         The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any

15   transfers of Plan Trust Assets from the Voluntary Debtors to the Plan Trust, or from the Plan Trust.

16         **7.10    Books and Records of Trust**.

17         The Plan Trustee, and to the extent of payments and Distributions by any Disbursing Agent,

18   the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan

19   Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage

20   for such book and records, for the longer of six (6) years, or while Plan is in existence, provided

21   that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of

22   the Plan Trusts books and records at such time as Plan Trust has no further need for such books

23   and records. The Plan Trust's books and records shall be open to inspection at all reasonable times,

24   upon written request by the Voluntary Debtors' Committee.

25         **7.11    Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial**

26                 **Interests**.

27         For all United States federal income tax purposes, the transfers by the Group IV: Voluntary

28   Debtors shall be treated by the Group IV: Voluntary Debtors, their estates, the Plan Trust and the

-36-

1   Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Group IV: Voluntary Debtors

2   to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan

3   Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and

4   deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust

5   Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust

6   Assets consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use

7   such valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations

8   of the Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall

9   provide that the Plan Trust will determine the fair market value of the Plan Trust Assets within

10  thirty (30) days after the Effective Date, and send such determination to each the Plan Trust

11  Beneficiary. By its acceptance of a the Beneficial Interest, each recipient of such an interest will be

12  conclusively deemed to agree to use such valuations for all purposes, including, without limitation,

13  in computing any gain recognized upon the exchange of such holder's claim for purposes of

14  determining any United States Federal income tax, and shall be required to include those items of

15  income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

16  its taxable income.

17      **7.12    Termination of the Trust.**

18          The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan Trust

19  Assets have been liquidated, all proceeds have been converted to cash or distributed in kind, all the

20  Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan Trust

21  Trustee is obligated to make Distributions on have been paid, all Distributions to be made with

22  respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a party

23  have been concluded by dismissal or an order issued by the court in which such litigation is

24  pending and such order has become "final" (consistent with the definition of Final Order in the

25  Plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

26  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust may

27  request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

28  period as is reasonably necessary to conclude the liquidation and Distributions, not to exceed a

total of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy

Court may consider and rule on the request within six (6) months prior to the expiration of the

initial five-year term.

### 7.13    Exemption from Certain Transfer Taxes.

In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

exchange of a security or the making or delivery of an instrument of transfer under the plan may

not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and

agents shall forego the assessment and collection of any such tax or governmental assessment and

shall accept for filing and recordation any of the foregoing instruments or other documents without

payment of such tax or other governmental assessment.

### 7.14    Tax Consequence of The Plan.

The implementation of the Plan may have federal, state and local tax consequences to the

Group IV: Voluntary Debtors, Creditors and Interest Holders.  No tax opinion has been sought or

will be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does

not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and

the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH

THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND

TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN,

INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

### 7.15    The Plan Sponsor.

The Plan Sponsor shall be Acquisitions.

### 7.16    The Voluntary Debtors' Committee.

On the Effective Date, the Voluntary Debtors' Committee shall continue to serve its

applicable Group IV: Voluntary Debtors as Voluntary Debtors' Committee to the applicable

reorganized Group IV: Voluntary Debtors, subject to the following:

#### 7.16.1    Duties and Powers.  The duties of the Voluntary Debtors' Committee after

the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity

1    to object to any settlement of the Lehman Adversary Proceeding, and the Contract Action, standing

2    to object to any settlement of any Litigation Claim in excess of $100,000, and standing and sole

3    and exclusive right to file, prosecute and resolve potential Avoidance Actions against and

4    objections to Claims filed by (i) SunCal Affiliates, including SunCal Management, Acquisitions,

5    and SC Master Marketing, LLC and (ii) certain professionals for the SunCal Affiliates, including

6    Voss, Cook & Thel, LLP, The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown

7    LLP.  Voluntary Debtors' Committee shall receive notice of and the right to review all payments

8    and Distributions.

9         The Voluntary Debtors' Committee shall be entitled to retain, employ and compensate

10    Professionals, in order to assist with the obligations and rights of the Voluntary Debtors'

11    Committee under the terms of the Plan.  Such compensation shall be paid from the applicable

12    Distribution Account(s).

13         **7.16.2  <u>Dissolution of Voluntary Debtors' Committee</u>.**  The Voluntary Debtors'

14    Committee shall be dissolved upon the entry of an order converting, closing or dismissing the

15    Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Voluntary

16    Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the

17    Plan Trust.

18         **7.17    <u>Claims Estimation Rights.</u>**

19         On the Confirmation Date, the SunCal Plan Proponents shall be vested with standing to file

20    a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

21    motion the estimation, for Distribution purposes, of any Disputed Claim seeking recourse to, or

22    claiming an interest in, any asset of the Group IV: Voluntary Debtors. After the Bankruptcy Court

23    estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

24    the Plan Trustee shall have the right to use any funds or assets not deemed subject to the rights of

25    the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

26    Administrative Claims, after the Effective Date.

27

28

# VIII.

## DISTRIBUTIONS

**8.1     Distribution Agent.**

Acquisitions shall serve as the Distribution Agent for Distributions due under the Plan. The Distribution Agent may employ one or more sub agents on such terms and conditions as it may agree in its discretion and pay such sub agent as a Post Confirmation Expense from the Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

**8.2     Distributions.**

**8.2.1     Dates of Distributions.**  Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

**8.2.2     Limitation on Liability.**  Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**8.3     Old Instruments and Securities.**

**8.3.1         Surrender and Cancellation of Instruments and Securities.**  As a condition to receiving any Distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing, an existing Claim(s) against the Group IV: Voluntary Debtors must surrender such Instrument or Security to the Distribution Agent.

**8.3.2**        **Cancellation of Liens.**  Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Group IV: Voluntary Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

**8.3.3**        **De Minimis Distributions and Fractional Shares.**  No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

**8.3.4**        **Delivery of Distributions.**  Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as set forth in the Proof of Claim; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the Group IV: Voluntary Debtors, provided, however, that if the Group IV: Voluntary Debtors or the Plan Trust has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

**8.3.5**        **Undeliverable Distributions.**  If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Holder unless and until the

1    Plan Trustee is notified in writing of such Holder's then current address.  Subject to the remainder

2    of this Section and the following section, Unclaimed Property shall remain in the possession of

3    the Plan Trustee pursuant to this Section, and shall be set aside and (in the case of Cash) held in a

4    segregated interest bearing account (as to Cash Unclaimed Property) to be maintained by the

5    Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing

6    contained in the Plan shall require the Plan Trustee or any other Person to attempt to locate such

7    Person.

8            **8.3.6**        **Disposition of Unclaimed Property.**  If the Person entitled thereto

9    notifies the Plan Trustee of such Person's Claim to a Distribution of Unclaimed Property within

10    ninety (90) days following such Person's initial Distribution Date, Effective Date, the Unclaimed

11    Property distributable to such Person, together with any interest or dividends earned thereon, shall

12    be paid or distributed to such Person as soon as practicable.  Any Holder of an Allowed Claim

13    that does not assert a Claim in writing for Unclaimed Property held by the Plan Trustee within

14    ninety (90) days after the Holder's initial Distribution Date shall no longer have any Claim to or

15    Interest in such Unclaimed Property, and shall be forever barred from receiving any Distributions

16    under the Plan or otherwise from the Plan Trustee.  In such cases, any property held for

17    Distribution on account of such Claims shall become Available Cash and deposited into the

18    Distribution Account.

19                            **IX.**

20                **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

21        **9.1**        **Standing for Objections to Claims.**

22            The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

23    objections to Claims, except as specifically provided herein.  The Voluntary Debtors Committee

24    shall have the sole and exclusive right to file, prosecute and resolve objections to Claims filed by

25    (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing,

26    LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP,

27    The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.  Any objection to a

28    Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or

1    before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition

2    the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection

3    Deadline if a complete review of all Claims cannot be completed by such date.

4      **9.2**  **Treatment of Disputed Claims and Disputed Liens.**

5       **9.2.1** **No Distribution Pending Allowance.**  If any portion of a Claim or Lien is a

6    Disputed Claim or Disputed Lien, no payment or Distribution provided for under the Plan shall be

7    made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed

8    Claim and/or Allowed Lien.

9       **9.2.2** **Distribution After Allowance.**  On the next Distribution Date following the

10    date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim,

11    the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have

12    been distributable to such Person if on the initial Distribution Date such Claim had been an

13    Allowed Claim and not a Disputed Claim.

14       **9.2.3** **Reserves for Disputed Claims.**  In the event that Disputed Claims are

15    pending at the time of a Distribution under the Plan, the Plan Trustee shall establish and maintain a

16    reserve for such Disputed Claims.  For purposes of establishing a reserve, Cash will be set aside

17    equal to the amount that would have been distributed to the Holders of the Disputed Claims had

18    the Disputed Claims been Allowed on the date a Distribution is made to the Holders of Allowed

19    Claims in the same Class or of the same priority as the Disputed Claims.  If a Disputed Claim

20    ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall

21    be distributed on the earlier of (a) the distributed Date following the date when the Disputed Claim

22    becomes an Allowed Claim, or (b) ninety (90) days after such Disputed Claim becomes an

23    Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim

24    because the Disputed Claim does not become an Allowed Claim shall become property of the Plan

25    Trust and shall be distributed in accordance with the terms of the Plan.

26

27

28

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

# X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1    Executory Contracts to be Assumed.

On the Effective Date, the executory contracts and unexpired leases identified on the Schedule of Assumed Agreements attached or to be attached to the Disclosure Statement as Exhibit "9" or filed or to be filed as Exhibit "9" to this document shall be deemed assumed by the Plan Trust, as specified in the Confirmation Order.  The SunCal Plan Proponents intend to file the Schedule of Assumed Agreements with the Court no later than twenty-eight (28) days prior to the Confirmation Hearing.  The Schedule of Assumed Agreements also identifies or will identify any amounts that must be paid to cure defaults under the executory contacts and unexpired leases to be assumed under the Plan (the "Cure Amount").  If filed earlier, the SunCal Plan Proponents reserve the right to amend the Schedule of Assumed Agreements up to twenty-eight (28) days prior to the Confirmation Hearing (October 24, 2011) to: (a) add any executory contract or unexpired lease and provide for its assumption; or (b) modify the Cure Amount for any particular executory contract or unexpired lease.  The SunCal Plan Proponents further reserve the right to amend the Schedule of Assumed Agreements to delete any executory contract or unexpired lease and provide for its rejection at any time prior to the Confirmation Hearing.  The SunCal Plan Proponents will provide notice of any amendment to the Schedule of Assumed Agreements to any party or parties to the executory contracts or unexpired leases affected by the amendment.  Absent a timely objection as provided below, the Confirmation Order will constitute a Court Order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed Agreements, and shall constitute a final determination of the Cure Amount and that the estate has shown adequate assurance of future performance.  Furthermore, any Cure Amount ordered by the Court, through entry of the Confirmation Order, and paid shall be deemed to satisfy any and all defaults arising from, out of or related to the executory contract of unexpired lease, including any tort claims that were or could be asserted by the non-debtor party to the contract or lease on or prior to the entry of the Confirmation Order, and all actual or pecuniary losses that have resulted from such defaults.

-44-

If you are a party to an executory contract or unexpired lease to be assumed and you object to the assumption of your lease or contract and/or you dispute the Cure Amount related to your lease or contract, then you must File and serve upon counsels for the SunCal Plan Proponents (at the address on the upper left hand corner of the caption page) a written objection by fourteen days before the Confirmation Hearing. An objection to the Cure Amount must also set forth the amount you contend to be the correct Cure Amount and contain evidence to support such amount. Failure to timely File an objection as provided herein shall be deemed consent to the proposed assumption and to the Cure Amount and a waiver of any and all rights to challenge such assumption and the Cure Amount.

With respect to each executory contract and unexpired lease identified on the Schedule of Assumed Agreements, if no dispute arises regarding the Cure Amount, adequate assurances, or some other matter related to the assumption of the executory contact or unexpired lease, then the Cure Amount set forth in the schedule of Assumed Agreements shall be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably practicable thereafter. If a dispute arises regarding any matter pertaining to a proposed assumption, the Cure Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or (2) within thirty (30) days after entry of a Final order resolving the dispute and approving the assumption; provided, however, if a dispute arises regarding any of the foregoing, the SunCal Plan Proponents reserve, for themselves and the Plan Trustee, the right to completely forego assumption of and, instead, reject the subject executory contract or unexpired lease.

If a party to an executory contract or unexpired lease identified on the Schedule of Assumed Agreements Files an objection disputing the Cure Amount, then the SunCal Plan Proponents may amend the Schedule of Assumed Agreements at any time prior to the Confirmation Hearing to delete the subject executory contract or unexpired lease and provide for its rejection. Executory contracts or unexpired leases not so deleted shall be conditionally assumed, subject to the SunCal Plan Proponents' and/or the Plan Trustee's right to file a Motion to determine the appropriate Cure Amount up to the first (1st) Business Day that is at least sixty (60) days following the Effective Date. The SunCal Plan Proponents and/or the Plan Trustee will serve

1   any such Motion on the party to the executory contract or unexpired lease affected by the Motion

2   (or its attorneys, if any).  If the SunCal Plan Proponents and Plan Trustee does not file a Motion to

3   determine the appropriate Cure Amount, then the executory contract or unexpired lease shall be

4   assumed, as of the Effective Date, and the Cure Amount shall be the alternative Cure Amount

5   asserted by the non-debtor party to the subject executory contract or unexpired lease in its

6   objection to the Plan.  The Cure Amount shall be paid as soon as reasonably practicable following

7   the expiration of the 60-day deadline.

8            If the SunCal Plan Proponents or the Plan Trustee files a Motion to determine the

9   appropriate Cure Amount, then the SunCal Plan Proponents and/or Plan Trust shall have the right

10   to amend the Schedule of Assumed Agreements to completely forego assumption of and, instead,

11   reject the subject executory contract or unexpired lease up to the first (1st) Business Day that is at

12   least fifteen (15) days after the entry of an order fixing the Cure Amount.  The SunCal Plan

13   Proponents and/or Plan Trustee will provide notice of any amendment to the Schedule of Assumed

14   Agreements to the party to the executory contract or unexpired lease affected by the amendment.  If

15   the SunCal Plan Proponents and/or Plan Trustee has filed such a Motion and does not timely

16   amend the Schedule of Assumed Agreements within fifteen (15) days after entry of an order fixing

17   the Cure Amount, then the executory contract or unexpired lease shall be assumed, as of the

18   Effective Date, and the Cure Amount shall be fixed as the Cure Amount ordered by the Court.  The

19   Cure Amount as soon as reasonably practicable following the expiration of the 15-day deadline.

20           **10.2    Executory Contracts to be Rejected.**

21           On the Effective Date, the estate will be deemed to have rejected any and all executory

22   contacts and unexpired leases not identified on the Schedule of Assumed Agreements attached or

23   to be attached as Exhibit "9," or filed or to be filed as Exhibit "9" to the Disclosure Statement.

24   The Confirmation Order will constitute a Court order approving the rejection, as of the Effective

25   Date, of such executory contacts and unexpired leases.  Any Claim for damages arising from the

26   rejection under the Plan of any executory contract or unexpired lease must be filed with the Court

27   and served upon the SunCal Plan Proponents and the Plan Trustee within thirty (30) days of the

28   later of (a) the Confirmation Date, and (b) the Plan Trustee's amendment of the Schedule of

1    Assumed Agreements to eliminate the executory contract or unexpired lease.  Any such damage

2    Claims that are not timely filed and served will be forever barred and unenforceable against the

3    applicable Debtors, the Estates, the Plan Trustee, the Plan Trust, and their respective property.

4    Persons holding these Claims who fail to timely file claims will be barred from receiving any

5    Distributions under the Plan on account of their rejection damage Claims.

6         If you are a party to a lease or contract to be rejected and you object to the rejection of your

7    lease or contract, then you must file and serve your objection by fourteen days before the

8    Confirmation Hearing.

9                                    **XI.**

10                      **LIMITATION OF LIABILITY**

11         **11.1    No Liability for Solicitation or Participation.**

12         As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or

13    rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

14    offered or sold under the Plan, in good faith and in compliance with the applicable provisions of

15    the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for

16    violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

17    rejections of the Plan or the offer, issuance, sale, or purchase of securities.

18                                   **XII.**

19                   **CONDITIONS TO CONFIRMATION AND**

20                   **EFFECTIVENESS OF THE PLAN**

21         **12.1    Conditions Precedent to Plan Confirmation.**

22         The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall

23    have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan

24    Proponents.

25         **12.2    Conditions Precedent to Plan Effectiveness.**

26         The conditions precedent to the effectiveness of the Plan and the occurrence of the

27    Effective Date is that the Confirmation Order shall be a Final Order in form and substance

28

1  reasonably satisfactory to the SunCal Plan Proponents. The automatic stay in the Group IV:

2  Voluntary Debtors cases shall continue to be applicable until the Effective Date.

3  **XIII.**

4  **RETENTION OF JURISDICTION**

5    Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

6  Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy

7  Court's jurisdiction shall apply to the fullest extent possible under applicable law.  The Court will

8  retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising

9  from the administration of the Plan, upon request of a party-in-interest and after notice and a

10  hearing, including, without limitation:

11    a.  The adjudication of the validity, scope, classification, allowance, and disallowance

12  of any Claim;

13    b.  The estimation of any Claim;

14    c.  The allowance or disallowance of Professional-Fee Claims, compensation, or other

15  Administrative Expense Claims;

16    d.  To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§

17  346, 505, 525, and 1146;

18    e.  To hear and determine any action or proceeding brought under Bankruptcy Code

19  §§108, 510, 543, 544, 545, 547, 548, 549, 550, 551 and 553;

20    f.  To hear and determine all actions and proceedings which relate to pre-confirmation

21  matters;

22    g.  To hear and determine any issue relating to the assumption or rejection of executory

23  contracts and unexpired leases;

24    h.  To hear and determine any modification to the plan in accordance with the

25  Bankruptcy Rules and Bankruptcy Code;

26    i.  To enforce and interpret the terms of the Plan;

27    j.  To correct any defects, cure any omissions, or reconcile any inconsistency in the

28  Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

-48-

k.    the entry of any order, including injunctions, necessary to enforce title, rights and powers of the Plan Trust, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Plan Trust to recover and liquidate assets;

l.    To determine the validity, extent and priority of all liens and security interests against property of the Estates or the Plan trust;

m.    To hear and resolve any disputes regarding employment applications and professional fees;

n.    To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in these Cases;

o.    The entry of an order concluding and terminating these Cases; and

p.    To resolve any disputes as to whether there has been a default under the Plan.

**XIV.**

**MODIFICATION OR WITHDRAWAL OF THE PLAN**

**14.1    Modification of Plan.**

At any time prior to confirmation of the Plan, the SunCal Plan Proponents may supplement, amend or modify the Plan.  After confirmation of the Plan, the SunCal Plan Proponents or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**14.2    Nonconsensual Confirmation.**

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

**XV.**

**EFFECT OF CONFIRMATION**

**15.1    Discharge.**

Confirmation of the Plan does not discharge the Group IV: Voluntary Debtors as set forth in Bankruptcy Code §1141.

**15.2    Revesting of the Group IV: Voluntary Assets.**

The Group IV: Voluntary Assets shall not be vested in the Group IV: Voluntary Debtors on or following the Effective Date, but shall be vested in the Plan Trust and continue to be subject to the jurisdiction of the Court following confirmation of the Plan until such Group IV: Voluntary Assets are distributed to the Holders of Allowed Claims in accordance with the provisions of the Plan.

**XVI.**

**MISCELLANEOUS**

**16.1    Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date and until the Group IV: Voluntary Debtors' Cases are closed, to the extent required by Section 1930(a)(6) of title 28 of the United States Code.

**16.2    Changes in Rates Subject to Regulatory Commission Approval.**

The Group IV: Voluntary Debtors are not subject to governmental regulatory commission approval of their rates.

**16.3    Payment Dates.**

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.

**16.4    Headings.**

The headings used in the Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Disclosure Statement or the Plan.

**16.5    Other Documents and Actions.**

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**16.6    Notices.**

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> **To the SunCal Plan Proponents**:
> Bruce V. Cook
> General Counsel
> Authorized Agent of the SunCal Plan Proponents
> 2392 Morse Ave
> Irvine, CA 92614-6234
>
> **With copies to:**
> Paul J. Couchot
> Winthrop & Couchot, Professional Corporation
> 660 Newport Center Drive, Suite 400
> Newport Beach, CA 92660
>
> Ronald Rus
> Rus Miliband & Smith A Professional Corporation
> 2211 Michelson Drive, Seventh Floor
> Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section 16.6, which designation will be effective on receipt.

**16.7    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of

1　law rules) shall govern the construction and implementation of the Plan and any agreements,

2　documents, and instruments executed in connection with the Plan, unless otherwise specifically

3　provided in such agreements, documents, or instruments.

4　　　**16.8**　**Binding Effect.**

5　　　The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

6　the benefit of the Plan Sponsor, the Plan Trustee, Holders of Claims, Holders of Interests, and their

7　respective successors and assigns.

8　　　**16.9**　**Successors and Assigns.**

9　　　The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

10　binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

11　assigns of such entity.

12　　　**16.10**　**Severability of Plan Provisions.**

13　　　If, prior to the Confirmation Date, any term or provision of the Plan is held by the

14　Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

15　constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

16　consent of the Group IV: Voluntary Debtors, have the power to interpret, modify or delete such

17　term or provision (or portions thereof) to make it valid or enforceable to the maximum extent

18　practicable, consistent with the original purpose of the term or provision held to be invalid, void or

19　unenforceable, and such term or provision shall then be operative as interpreted, modified or

20　deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the

21　terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such

22　interpretation, modification or deletion.

23　　　**16.11**　**No Waiver.**

24　　　The failure of the Group IV: Voluntary Debtors or any other Person to object to any Claim

25　for purposes of voting shall not be deemed a waiver of the Voluntary Debtors' Committee, the

26　Group IV: Voluntary Debtors' or the Plan Trustee's right to object to or examine such Claim, in

27　whole or in part.

28

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1    **16.12    Inconsistencies.**

2        In the event the terms or provisions of the Disclosure Statement are inconsistent with the

3    terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

4    the Plan shall control.

5    **16.13    Exemption from Certain Transfer Taxes and Recording Fees.**

6        Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Group IV:

7    Voluntary Debtor to the Plan Trust or to any other Person or entity pursuant to the Plan, or any

8    agreement regarding the transfer of title to or ownership of any of the Group IV: Voluntary

9    Debtors' real or personal property or of any other interest in such property (including, without

10    limitation, a security interest) will not be subject to any document recording tax, stamp tax,

11    conveyance fee, intangibles or similar tax, mortgage tax,

12    stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

13    recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

14    direct the appropriate state or local governmental officials or agents to forego the collection of any

15    such tax or governmental assessment and to accept for filing and recordation any of the foregoing

16    instruments or other documents without the payment of any such tax or governmental assessment.

17    **16.14    Post-Confirmation Status Report.**

18        Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file a

19    status report with the Court explaining what progress has been made toward consummation of the

20    confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

21    unsecured creditors, and those parties who have requested special notice.  Unless otherwise

22    ordered, further status reports shall be filed every 180 days and served on the same entities.

23    **16.15    Post-Confirmation Conversion/Dismissal.**

24        A creditor or party in interest may bring a motion to convert or dismiss the case under

25    § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

26    Trustee reserves the right to object to any motion for conversion or dismissal.  In addition, as set

27    forth in the definition of the Effective Date, the Effective Date may be further extended by order of

28    the Bankruptcy Court after notice and hearing to all parties in interest.  If the Court determines

MAINDOCS-#165766-v1-SunCal_4th_Amd_Plan_Group_IV.DOC

1   there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss

2   or convert the case.

3        If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then

4   all property that had been property of the Chapter 11 Estate, and that has not been disbursed

5   pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed

6   upon the revested property, but only to the extent that relief from stay was not previously

7   authorized by the Court during this case.

8        **16.16   Final Decree.**

9        Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

10  Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

11  motion with the Court to obtain a final decree to close the Case of such Group IV: Voluntary

12  Debtor.

13  Date:  August 12, 2011                      By: ___*/s/ Bruce v. Cook*_____
                                                   Bruce Cook
14                                                 General Counsel, Authorized Agent for the
                                                   Voluntary Debtors and Acquisitions
15

16

17  **Submitted By:**

18
    **WINTHROP COUCHOT**                        **RUS MILIBAND & SMITH**
19  **PROFESSIONAL CORPORATION**                **A PROFESSIONAL CORPORATION**

20
21  By: /s/ *Paul J. Couchot*_____   By: _/s/ *Ronald Rus*_____
         Paul J. Couchot,                            Ronald Rus, Esq.
22  General Insolvency Counsel for                   Joel S. Miliband, Esq.
    the Voluntary Debtors                        Counsel for SCC Acquisitions Inc.
23

24

25

26

27

28

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **FOURTH AMENDED JOINT CHAPTER 11 PLAN FILED BY SJD PARTNERS, LTD. AND SJD DEVELOPMENT CORP. [GROUP IV: VOLUNTARY DEBTORS]**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 12, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On August 12, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Palmdale Hills Property, LLC
and its related entities
Attn:  Bruce Elieff, Manager
2392 Morse Ave.
Irvine, CA 92614

U.S. Trustee's Office
Michael Hauser, Esq.
411 West Fourth St., #9041
Santa Ana, CA 92701

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 12, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- **NEF SERVICE LIST**

- Selia M Acevedo      sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams      jadams@sycr.com
- Raymond H Aver      ray@averlaw.com
- James C Bastian      jbastian@shbllp.com
- Thomas Scott Belden      sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd      fednotice@tclaw.net
- Mark Bradshaw      mbradshaw@shbllp.com
- Gustavo E Bravo      gbravo@smaha.com
- Jeffrey W Broker      jbroker@brokerlaw.biz
- Brendt C Butler      bbutler@mandersonllp.com
- Andrew W Caine      acaine@pszyjw.com
- Carollynn Callari      ccallari@venable.com
- Cathrine M Castaldi      ccastaldi@rusmiliband.com
- Tara Castro Narayanan      tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers      dchambers@jmbm.com
- Shirley Cho      scho@pszjlaw.com
- Vonn Christenson      vrc@paynefears.com
- Brendan P Collins      bpcollins@bhfs.com
- Vincent M Coscino      vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot      pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri      dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte      ana.damonte@pillsburylaw.com
- Vanessa S Davila      vsd@amclaw.com
- Melissa Davis      mdavis@shbllp.com
- Daniel Denny      ddenny@gibsondunn.com
- Caroline Djang      crd@jmbm.com
- Donald T Dunning      ddunning@dunningLaw.com
- Meredith R Edelman      meredith.edelman@dlapiper.com
- Joseph A Eisenberg      jae@jmbm.com
- Lei Lei Wang Ekvall      lekvall@wgllp.com
- Richard W Esterkin      resterkin@morganlewis.com
- Marc C Forsythe      kmurphy@goeforlaw.com
- Alan J Friedman      afriedman@irell.com
- Steven M Garber      steve@smgarberlaw.com
- Christian J Gascou      cgascou@gascouhopkins.com
- Barry S Glaser      bglaser@swjlaw.com
- Robert P Goe      kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg      egoldberg@stutman.com
- Richard H Golubow      rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez      mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**

| In re: | CHAPTER  11 |
|--------|-------------|
| Debtor(s). | CASE NUMBER |

- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Sean A Okeefe     sokeefe@okeefelc.com
- Scott H Olson     solson@seyfarth.com
- Robert B Orgel     rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park     ernie.park@bewleylaw.com
- Daryl G Parker     dparker@pszjlaw.com
- Penelope Parmes     pparmes@rutan.com
- Robert J Pfister     rpfister@ktbslaw.com
- Ronald B Pierce     ronald.pierce@sdma.com
- Katherine C Piper     kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey     cmartin@pprlaw.net
- Debra Riley     driley@allenmatkins.com
- James S Riley     tgarza@sierrafunds.com
- Todd C. Ringstad     becky@ringstadlaw.com
- R Grace Rodriguez     ecf@lorgr.com
- Martha E Romero     Romero@mromerolawfirm.com
- Ronald Rus     rrus@rusmiliband.com
- John P Schafer     jschafer@mandersonllp.com
- John E Schreiber     jschreiber@dl.com
- William D Schuster     bills@allieschuster.org
- Christopher P Simon     csimon@crosslaw.com
- Gerald N Sims     jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith     wendy@bindermalter.com
- Steven M Speier     Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)     Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James     ecf@stjames-law.com
- Michael K Sugar     msugar@irell.com
- Cathy Ta     cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem     davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till     jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh     cgunruh@sbcglobal.net
- Annie Verdries     verdries@lbbslaw.com
- Jason Wallach     jwallach@gladstonemichel.com
- Joshua D Wayser     , kim.johnson@kattenlaw.com
- Benjamin M Weiss     bweiss@lansingcompanies.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**