PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for
Palmdale Hills Property, LLC et. al. (the "Voluntary Debtors")

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Counsel for SCC Acquisitions Inc.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><br>    Joint Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos. 8:08-bk-17209-ES; 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES; 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES; 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES; 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES; 8:08-bk-17573-ES; 8:08-bk-17574 ES; 8:08-bk-17575-ES; 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES; 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES; 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-bk-17588-ES<br><br>Chapter 11 Proceedings |

Affects:
- ☐ All Debtors
- ☒ Palmdale Hills Property,
- ☒ SunCal Beaumont Heights, LLC
- ☐ SCC Palmdale, LLC
- ☒ SunCal Johannson Ranch, LLC
- ☐ SunCal Summit Valley, LLC
- ☒ SunCal Emerald Meadows LLC
- ☒ SunCal Bickford Ranch, LLC
- ☒ Acton Estates, LLC
- ☐ Seven Brothers LLC
- ☒ SJD Partners, Ltd.
- ☒ SJD Development Corp.
- ☐ Kirby Estates, LLC
- ☐ SunCal Communities I, LLC
- ☐ SunCal Communities III, LLC
- ☒ SCC Communities LLC
- ☒ North Orange Del Rio Land, LLC
- ☒ Tesoro SF LLC

**SUNCAL PROPONENTS PROPOSED PLAN SOLICITATION LETTERS**

Date:    August 22, 2011
Time:    2:30 p.m.
Place:    Courtroom 5A

*Continued on Next Page*

1

*Continued from Previous Page*

2 ☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC

3 ☐ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC

4 ☒ SunCal Century City, LLC
☒ SunCal PSV, LLC

5 ☒ Delta Coves Venture, LLC

6 ☒ SunCal Torrance, LLC
☒ SunCal Oak Knoll, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    SCC Acquisitions, Inc. and the following Voluntary Debtors are the Plan Proponents of the

2    Chapter 11 Plans of Reorganization for Palmdale Hills Property; SunCal Beaumont Heights, LLC;

3    SunCal Johannson Ranch, LLC; SunCal Emerald Meadows, LLC; SunCal Bickford Ranch, LLC;

4    Acton Estates, LLC; SJD Partners, Ltd.; SJD Development Corp.; SCC Communities LLC; North

5    Orange Del Rio Land, LLC; Tesoro SF LLC; LBL SunCal Oak Valley; SunCal Heartland, LLC;

6    LBL SunCal Northlake, LLC; SunCal Marblehead, LLC; SunCal Century City, LLC; SunCal PSV,

7    LLC; Delta Coves Venture, LLC; SunCal Torrance, LLC; and SunCal Oak Knoll, LLC (the

8    SunCal Plan Proponents"). True and correct copies of the SunCal Plan Proponents proposed Plan

9    Solicitation Letters that are proposed to accompany the Plan Package materials are attached hereto

10   as Exhibits "1" through "18."

11   DATE:  August 12, 2011            **WINTHROP COUCHOT**
                                       **PROFESSIONAL CORPORATION**
12

13
                                       By:  ___/s/ Paul J. Couchot_____  _____
14                                          Paul J. Couchot
                                            General Insolvency Counsel
15                                          for the Voluntary Debtors

16

17                                     **RUS MILIBAND & SMITH**
                                       **A PROFESSIONAL CORPORATION**
18

19
                                       By:  _/s/ Ronald Rus_____  _____
20                                          Ronald Rus, Esq.
                                            Joel S. Miliband, Esq.
21                                      Counsel for SCC Acquisitions Inc.

22

23

24

25

26

27

28

**Solicitation Letter for Palmdale Hills Property**

## The SunCal Plan Proponents Plan Solicitation Letter for Palmdale Hills

To the Holders of Allowed Claims Against Palmdale Hills, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of Palmdale Hills. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of Palmdale Hills Property, LLC, which was jointly filed with the Chapter 11 Plans of SunCal Bickford Ranch, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC (the "SunCal Proponents Palmdale Hills Plan").

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Palmdale Hills Plan provides for sale of the Ritter Ranch Project, free and clear of liens, claims and any purported credit bid rights of Palmdale Hills' primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Ritter Ranch Project has a fair market value of $21,800,000 and LCPI has asserted a first priority secured claim in the amount of $287,252,096. The SunCal Plan Proponents believe that other claims asserted against Palmdale Hills are in the amount of $67,643,276. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against Palmdale Hills and the Ritter Ranch Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against Palmdale Hills is attached to the Disclosure Statement as Exhibit "8." A list of all claims against Palmdale Hills is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Palmdale Hills Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Palmdale Hills Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Palmdale Hills Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Palmdale Hills Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Palmdale Hills Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Palmdale Hills Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender have filed a competing plan of reorganization in the Chapter 11 Case of Palmdale Hills (the "Lehman Palmdale Hills Plan"). Accordingly, the Creditors holding Claims against Palmdale Hills will have the opportunity to vote for the SunCal Proponents Palmdale Hills Plan or the Lehman Palmdale Hills Plan, or they can vote for both the SunCal Proponents Palmdale Hills Plan and the Lehman Palmdale Hills Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Palmdale Hills Plan and the Lehman Palmdale Hills Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Palmdale Hills Plan are superior to what is being offered to Creditors under the Lehman Palmdale Hills Plan:

• The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Palmdale Hills Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Palmdale Hills Plan.

• The consideration paid by Lehman to Creditors under the Lehman Palmdale Hills Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

• The Lehman Palmdale Hills Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the Palmdale Hills Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Palmdale Hills Plan.

• The Lehman Voluntary Debtor Plans all provide that if one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Voluntary Debtors Plans for the other Voluntary Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Palmdale Hills Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Voluntary Debtors Plans.

- The Lehman Palmdale Hills Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Palmdale Hills Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Palmdale Hills Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render the Lehman Voluntary Debtors Plans unfeasible and therefore unconfirmable.

- The Lehman Palmdale Hills Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- The Lehman Palmdale Hills Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Palmdale Hills Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Palmdale Hills Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Palmdale Hills Plan provides the Lehman Entities the right to foreclose on the Palmdale Hills Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS PALMDALE HILLS PLAN AND CAST A VOTE AGAINST THE LEHMAN PALMDALE HILLS PLAN, AS THE SUNCAL PROPONENTS PALMDALE HILLS PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT**                    **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**            **A PROFESSIONAL CORPORATION**

By:  _/s/ Paul J. Couchot_              By:  _/s/ Ronald Rus_
    Paul J. Couchot, Esq.                   Ronald Rus, Esq.
General Insolvency Counsel for              Joel S. Miliband, Esq.
the Voluntary Debtors                   Counsel for SCC Acquisitions Inc.

**Solicitation Letter for Beaumont Heights, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter For SunCal Beaumont**

To the Holders of Allowed Claims Against SunCal Beaumont Heights, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Beaumont. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case Of SunCal Beaumont Heights LLC (the "SunCal Proponents Beaumont Plan"), which was filed jointly with the Chapter 11 Plan of SunCal Johannson Ranch, LLC.

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Beaumont Plan provides for the sale of the Beaumont Heights Project, free and clear of all claims and liens. The sale will be pursuant to a public auction and subject to Court approved bidding procedures. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

Based upon the SunCal Plan Proponents' analysis of the value of the Beaumont Heights Project, extensive negotiations with a potential Stalking Horse Bidder willing to submit a minimum bid for a purchase price of $900,000, and the estimated aggregate amount of Allowed Claims against the SunCal Beaumont Estate ($770,885), there is a reasonable likelihood that all Allowed Claims will be paid in full under the SunCal Proponents Beaumont Plan within thirty (30) days after the Confirmation Date.

The Lehman Lenders have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Beaumont (the "Lehman Beaumont Plan"). The Lehman Beaumont Plan provides for a Distribution to Holders of General Unsecured Claims equal to 100% of each Claim, unless such Claims exceed the value of the Beaumont Heights Project, which the Lehman Beaumont Plan estimates to be $1,800,000. In such event, Holders of Allowed Claims will also, in all likelihood, receive a 100% distribution, but as long as 135 days after the Confirmation Date and the impermissible cancellation of equity in an admittedly solvent Chapter 11 case.

Accordingly, the Creditors holding Claims against SunCal Beaumont will have the opportunity to vote for the SunCal Proponents Beaumont Plan or the Lehman Beaumont Plan, or they can vote for or reject both the SunCal Proponents Beaumont Plan or the Lehman Beaumont Plan. If both plans receive the requisite voting and are otherwise comfirmable, the Bankruptcy Court will decide which plan should be approved.

---

[1] The capitalized terms used herein are defined in Article II of the SunCal Proponents Beaumont Plan, Article II of the SunCal Beaumont Disclosure Statements and Exhibit "1" attached to the SunCal Beaumont Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Beaumont and SunCal Johannson, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in one of the Debtor's Cases, but not in the other.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Beaumont Plan are superior to what is being offered to Creditors under the Lehman Beaumont Plan:

- Based on extensive negotiations with a potential Stalking Horse Bidder, the SunCal Proponents Beaumont Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interest depending on the results of the auction, whereas the Lehman Beaumont Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case.

- If one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the other Lehman Voluntary Debtors Plans that are otherwise confirmed.

- The Lehman Beaumont Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- Finally, the Lehman Voluntary Debtor Plans are contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to the Lehman Beaumont Plans.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS BEAUMONT PLAN AND CAST A VOTE AGAINST THE LEHMAN BEAUMONT PLAN, AS THE SUNCAL PLAN PROPONENTS BEAUMONT PLAN REPRESENTS THE BEST, QUICKEST AND MOST CERTAIN MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: **August 12, 2011**

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:    */s/ Paul J. Couchot*
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated: **August 12, 2011**

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**

By:    */s/ Ronald Rus*
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

# Solicitation Letter for SunCal Johannson Ranch, LLC

**The SunCal Plan Proponents Plan Solicitation Letter For SunCal Johannson**

To the Holders of Allowed Claims Against SunCal Johannson Ranch, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Johannson. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case Of SunCal Johannson, LLC (the "SunCal Proponents Johannson Plan"), which was filed jointly with the Chapter 11 Plan of SunCal Beaumont Heights, LLC.

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Johannson Plan provides for the sale of the Johannson Ranch Project, free and clear of all claims and liens. The sale will be pursuant to a public auction and subject to Court approved bidding procedures. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

Based upon the SunCal Plan Proponents' analysis of the value of the Johannson Ranch Project, extensive negotiations with a potential Stalking Horse Bidder willing to submit a minimum bid for a purchase price of $600,000, and the estimated aggregate amount of Allowed Claims against the SunCal Johannson Estate ($586,162), there is a reasonable likelihood that all Allowed Claims will be paid in full under the SunCal Proponents Johannson Plan within thirty (30) days after the Confirmation Date.

The Lehman Lenders have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Johannson (the "Lehman Johannson Plan"). The Lehman Johannson Plan provides for a Distribution to Holders of General Unsecured Claims equal to 100% of each Claim, unless such Claims exceed the value of the Johannson Ranch Project, which the Lehman Johannson Plan estimates to be $4,000,000. In such event, Holders of Allowed Claims will also, in all likelihood, receive a 100% distribution, but as long as 135 days after the Confirmation Date and the impermissible cancellation of equity in an admittedly solvent Chapter 11 case.

Accordingly, the Creditors holding Claims against SunCal Johannson will have the opportunity to vote for the SunCal Proponents Johannson Plan or the Lehman Johannson Plan, or they can vote for or reject both the SunCal Proponents Johannson Plan or the Lehman Johannson Plan. If both plans receive the requisite voting and are otherwise comfirmable, the Bankruptcy Court will decide which plan should be approved.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Johannson Plan are superior to what is being offered to Creditors under the Lehman Johannson Plan:

---

[1] The capitalized terms used herein are defined in Article II of the SunCal Johannson Plan, Article II of the SunCal Johannson Disclosure Statements and Exhibit "1" attached to the SunCal Johannson Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Beaumont and SunCal Johannson, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in one of the Debtor's Cases, but not in the other.

- Based on extensive negotiations with a potential Stalking Horse Bidder, the SunCal Proponents Johannson Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interest depending on the results of the auction, whereas the Lehman Johannson Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case.

- If one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the other Lehman Voluntary Debtors Plans that are otherwise confirmed.

- The Lehman Johannson Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- Finally, the Lehman Voluntary Debtor Plans are contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to the Lehman Johannson Plans.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS JOHANNSON PLAN AND CAST A VOTE AGAINST THE LEHMAN JOHANNSON PLAN, AS THE SUNCAL PLAN PROPONENTS JOHANNSON PLAN REPRESENTS THE BEST, QUICKEST AND MOST CERTAIN MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:  __/s/ Paul J. Couchot__
      Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated:  August 12, 2011

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**

By:  __/s/ Ronald Rus__
      Ronald Rus, Esq.
      Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Emerald Meadows, LLC**

### The SunCal Plan Proponents Plan Solicitation Letter for Emerald Meadows

To the Holders of Allowed Claims Against SunCal Emerald Meadows, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Emerald. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Emerald Meadows, LLC, which was jointly filed with the Chapter 11 Plans of Palmdale Hills, LLC, Acton Estates, LLC and SunCal Bickford Ranch, LLC (the "SunCal Proponents Emerald Plan").

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Emerald Plan provides for sale of the Emerald Meadows Project, free and clear of liens, claims and any purported credit bid rights of SunCal Emerald's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Emerald Meadows Project has a fair market value of $6,100,000 and LCPI has asserted a first priority secured claim in the amount of $343,221,391. The SunCal Plan Proponents believe that other claims asserted against SunCal Emerald are in the amount of $9,941,168. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal Emerald and the Emerald Meadows Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.[2]

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Emerald Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

[2] SunCal Emerald is involved in various lawsuits. In one lawsuit, Rubidoux and EMR commenced an action against SunCal Emerald (the "Rubidoux Action"). The Rubidoux Action asserts causes of action against SunCal Emerald for breach of contract, breach of implied covenant of good faith and fair dealings, and declaratory relief. In addition, Life Church of God in Christ ("Life Church") is the plaintiff in an adversary proceeding against SunCal Emerald (the "Life Church Action"). The Rubidoux Action and the Life Church Action are referred to herein as the "SunCal Emerald Lawsuits.

The parties to the SunCal Emerald Lawsuits recently entered into a Settlement Agreement, which *inter alia* provided for the release of certain escrowed funds (in which SunCal Emerald has no interest), and the extension of certain deadlines under certain agreements with respect to the finalization and recordation of the I-Map, the transfer of certain properties, and the commencement and completion dates for the construction of certain subdivision improvements ("Emerald Compromise"). On or about March 14, 2011, SunCal Emerald filed a motion to approve this settlement agreement ("Emerald Compromise Motion"). SunCal Emerald and LCPI are currently in informal discussions to resolve LCPI's concerns with respect to the Emerald Compromise Motion. SunCal Emerald has extended LCPI's deadline to file an opposition to the Emerald Compromise Motion to August 31, 2011.

Moreover, the Evangelical Christian Credit Union ("ECCU") holds a lien on the "Old Church Parcel" securing a loan to Life Church. The Old Church Parcel is currently held by SunCal Emerald, and is further subject to a junior lien in favor of LCPI. ECCU has recently filed a motion for relief from stay in LCPI's New York bankruptcy proceeding to allow ECCU to enforce its remedies against the Old Church Parcel, which has been continued pending discussions between the parties. ECCU has not yet filed a motion for relief from stay as against SunCal Emerald Meadows.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Emerald is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Emerald is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Emerald Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Emerald Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Emerald Meadows Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Emerald Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Emerald Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Emerald (the "Lehman Emerald Plan"). Accordingly, the Creditors holding Claims against SunCal Emerald will have the opportunity to vote for the SunCal Proponents Emerald Plan or the Lehman Emerald Plan, or they can vote for both the SunCal Proponents Emerald Plan and the Lehman Emerald Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Emerald Plan and the Lehman Emerald Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Emerald Plan are superior to what is being offered to Creditors under the Lehman Emerald Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Emerald Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Emerald Plan.

- The consideration paid by Lehman to Creditors under the Lehman Emerald Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Emerald Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Emerald Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Emerald Plan.

- The Lehman Voluntary Debtor Plans all provide that if one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Voluntary Debtors Plans for the other Voluntary Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Emerald Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Voluntary Debtors Plans.

- The Lehman Emerald Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Emerald Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Emerald Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render the Lehman Voluntary Debtors Plans unfeasible and therefore unconfirmable.

- The Lehman Emerald Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- The Lehman Emerald Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Emerald Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Emerald Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Emerald Plan provides the Lehman Entities the right to foreclose on the Emerald Meadows Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS EMERALD PLAN AND CAST A VOTE AGAINST THE LEHMAN EMERALD PLAN, AS THE SUNCAL PROPONENTS EMERALD PLAN REPRESENTS CURRENTLY THE*

***BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.***

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:  */s/ Paul J. Couchot*
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

By:  */s/ Ronald Rus*
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Bickford Ranch, LLC**

## The SunCal Plan Proponents Plan Solicitation Letter for Bickford Ranch

To the Holders of Allowed Claims Against Bickford Ranch, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of Bickford Ranch. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Bickford Ranch, LLC, which was jointly filed with the Chapter 11 Plans of Palmdale Hills, LLC, SunCal Emerald Meadows, LLC and Acton Estates, LLC (the "SunCal Proponents Bickford Plan").

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Bickford Plan provides for sale of the Bickford Ranch Project, free and clear of liens, claims and any purported credit bid rights of SunCal Bickford's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Bickford Ranch Project has a fair market value of $10,900,000 and LCPI has asserted a first priority secured claim in the amount of $343,221,391. The SunCal Plan Proponents believe that other claims asserted against SunCal Bickford are in the amount of $20,435,510. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal Bickford and the Bickford Ranch Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Bickford is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Bickford is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Bickford Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Bickford Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Bickford Ranch Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Bickford Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Bickford Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Bickford Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Bickford (the "Lehman Bickford Plan"). Accordingly, the Creditors holding Claims against SunCal Bickford will have the opportunity to vote for the SunCal Proponents Bickford Plan or the Lehman Bickford Plan, or they can vote for both the SunCal Proponents Bickford Plan and the Lehman Bickford Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Bickford Plan and the Lehman Bickford Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Bickford Plan are superior to what is being offered to Creditors under the Lehman Bickford Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Bickford Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Bickford Plan.

- The consideration paid by Lehman to Creditors under the Lehman Bickford Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Bickford Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Bickford Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Bickford Plan.

- The Lehman Voluntary Debtor Plans all provide that if one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Voluntary Debtors Plans for the other Voluntary Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Bickford Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Voluntary Debtors Plans.

- The Lehman Bickford Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Bickford Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Bickford Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render the Lehman Voluntary Debtors Plans unfeasible and therefore unconfirmable.

- The Lehman Bickford Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- The Lehman Bickford Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Bickford Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Bickford Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Bickford Plan provides the Lehman Entities the right to foreclose on the Bickford Ranch Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST
YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS
BICKFORD PLAN AND CAST A VOTE AGAINST THE LEHMAN BICKFORD PLAN, AS
THE SUNCAL PROPONENTS BICKFORD PLAN REPRESENTS CURRENTLY THE
BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON
THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:   */s/ Ronald Rus*
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for Acton Estates**

## The SunCal Plan Proponents Plan Solicitation Letter for Acton Estates

To the Holders of Allowed Claims Against Acton Estates, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of Acton Estates. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of Acton Estates, LLC, which was jointly filed with the Chapter 11 Plans of Palmdale Hills, LLC, SunCal Emerald Meadows, LLC and SunCal Bickford Ranch, LLC (the "SunCal Proponents Acton Plan").

The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors and the SunCal Proponents' proposed plans for certain of the Voluntary Debtors are collectively referred as the SunCal Voluntary Debtor Plans.

The SunCal Proponents Acton Plan provides for sale of the Acton Project, free and clear of liens, claims and any purported credit bid rights of Acton's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Acton Project has a fair market value of $1,600,000 and LCPI has asserted a first priority secured claim in the amount of $343,221,391. The SunCal Plan Proponents believe that other claims asserted against Acton are in the amount of $3,387,691. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against Acton and the Acton Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement[2].

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery.  A list of the Reliance Claims

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Acton Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

[2] In the 502(d) Objection, Acton Estates has also asserted that LCPI's Disputed Claim and Disputed Lien are invalid pursuant to Section 502(b) of the Bankruptcy Code. In particular, LCPI has failed to attach or establish the existence of any documentary evidence whereby Acton Estates incurred the liability set forth in LCPI's Proof of Claim No. 6. Specifically, LCPI entered into the SunCal Communities I Loan Agreement with SunCal I, as borrower. Bickford Ranch, Summit Valley and Emerald Meadows were not original borrower under the SunCal Communities I Loan, but rather subsequently executed "Assumption Agreements" – which are attached to LCPI's Proof of Claim - whereby they each purported to become additional grantors as to the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan. However, LCPI's Proof of Claim No. 6 fail to attach or establish the existence of an Assumption Agreement as to Acton. Rather, Proof of Claim No. 6 attaches *Summit Valley's* Assumption Agreement which is also executed by Acton. However, this Assumption Agreement does not in any way purport to establish liability on the part of Acton. Simply put, there is no Assumption Agreement purporting to establish Acton's liability.  The signature pages in Proof of Claim No. 6 are consecutively numbered, such that LCPI cannot contend that there are simply missing pages. The Debtors' business records do not reflect any Assumption Agreement executed as Acton.

The Lehman Entities' response to the 502(d) Motion effectively admits that there is no separate Assumption Agreement as to Acton. Rather, the response contends that Summit Valley's Assumption Agreement may be "reformed" under New York law to correct a "scrivener's error" in its omission of Acton. However, the Lehman Entities fail to address well established case law that erroneous loan documents cannot be "reformed" post-petition in violation of the estate's strong arm powers under Section 544(a). In the absence of a valid executed agreement, LCPI's Proof of Claim No. 6 against Acton must be disallowed.

against Acton is attached to the Disclosure Statement as Exhibit "8." A list of all claims against Acton is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Acton Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Acton Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Acton Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Acton Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Acton Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender have filed a competing plan of reorganization in the Chapter 11 Case of Acton (the "Lehman Acton Plan"). Accordingly, the Creditors holding Claims against Acton will have the opportunity to vote for the SunCal Proponents Acton Plan or the Lehman Acton Plan, or they can vote for both the SunCal Proponents Acton Plan and the Lehman Acton Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Acton Plan and the Lehman Acton Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Acton Plan are superior to what is being offered to Creditors under the Lehman Acton Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Acton Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Acton Plan.

- The consideration paid by Lehman to Creditors under the Lehman Acton Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Acton Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the Acton Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Acton Plan.

- The Lehman Voluntary Debtor Plans all provide that if one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Voluntary Debtors Plans for the other Voluntary Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Acton Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Voluntary Debtors Plans.

- The Lehman Acton Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Acton Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Acton Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render the Lehman Voluntary Debtors Plans unfeasible and therefore unconfirmable.

- The Lehman Acton Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- The Lehman Acton Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Acton Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Acton Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Acton Plan provides the Lehman Entities the right to foreclose on the Acton Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST
YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS
ACTON PLAN AND CAST A VOTE AGAINST THE LEHMAN ACTON PLAN, AS THE
SUNCAL PROPONENTS ACTON PLAN REPRESENTS CURRENTLY THE BEST MEANS
FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR
CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**              **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**      **A PROFESSIONAL CORPORATION**


By:  ___*/s/ Paul J. Couchot*___      By:  ___*/s/ Ronald Rus*_____
     Paul J. Couchot, Esq.                 Ronald Rus, Esq.
General Insolvency Counsel for             Joel S. Miliband, Esq.
the Voluntary Debtors                 Counsel for SCC Acquisitions Inc.

MAINDOCS-#165745-v2-Acton_Estates_Solicitation_Letter.DOC

# Solicitation Letter for SJD Partners, Ltd. and SJD Development Corp.

**The SunCal Plan Proponents Plan Solicitation Letter for SJD Partners and SJD Development**

To the Holders of Allowed Claims Against SJD Partners, Ltd. and SJD Development Corp. (the "SJD Entities"):

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Cases of SJD Partners and SJD Development (the "SJD Debtors"). This letter is accompanied by the Fourth Amended Disclosure Statement and the Fourth Amended Joint Chapter 11 Plan Filed by SJD Partners, Ltd. and SJD Development Corp. (the "SunCal Proponents SJD Plan")[2].

SJD Partners formerly owned the Pacific Point Project in San Juan Capistrano, California. SJD Development is the parent company of SJD Partners. Pursuant to the Restructuring Agreement and the Settlement Agreement between SunCal and Lehman, the Pacific Point Project was non-judicially foreclosed by Lehman ALI, which caused a Lehman Affiliate, LV Pacific Point LLC, a Delaware limited liability company, to purchase the Pacific Point Project at a foreclosure sale conducted on August 28, 2008. Consequently, among other provisions under the Lehman/SunCal Agreement, SunCal and the SJD Debtors would not contest the foreclosure in exchange for certain Lehman Entities Agreement to pay millions of dollars in creditor claims and assume millions of dollars in other creditor claims. This did not occur. The SJD Entities have initiated litigation regarding the foregoing as described in the SJD Disclosure Statement. These include the Lehman Adversary Proceeding (for Holders of Reliance Claims), the Contract Action and the Lehman Recoupment Objection.

Dependent upon the results of the above-referenced litigation, the SunCal Proponents SJD Plan provides for the recovery of the Pacific Point Project and/or damages that will result from Litigation Recoveries. The Litigation Recoveries will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code, applicable law, and the SunCal Proponents SJD Plan. In addition, Holders of Allowed Reliance Claims (as set forth in Exhibit "8" to the SJD Disclosure Statement) will receive an initial Distribution equal to 1% of such Holder's Allowed Claim, and, potentially, an additional Distribution of up to 49% in the event that LitCo or its designee obtains free and clear title to the Pacific Point Project (the "LitCo Enhancement") during the Plan term.

The Lehman Lenders have not filed a competing plan of reorganization in the Chapter 11 Cases of the SJD Entities. In the event that the SunCal Proponents SJD Plan is not approved, the SJD Entities' Case will likely be converted to a Case under Chapter 7 of the Bankruptcy Code, in which case the Chapter 7 Trustee would in all likelihood close the cases and not provide any distribution to creditors. Accordingly, under the terms of the SunCal Proponents SJD Plan, each individual creditor is receiving "at least as much" as such creditor would receive in a Chapter 7 Case.

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the SunCal Proponents SJD Plan, Article II of the SJD Disclosure Statements and Exhibit "1" attached to the SJD Disclosure Statement. SJD Partners and SJD Development are collectively referred to herein as the SJD Entities.

[2] SJD Development is the sole equity owner of SJD Partners. The SunCal Proponents SJD Plan assumes that all claims filed against SJD Development were inadvertent and should have been filed against SJD Partners as the project-owning entity that incurred such debt. Consequently, a joint Plan has been filed in the SJD Entities' Cases.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS SJD PLAN, AS THE SUNCAL PROPONENTS SJD PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:    */s/ Paul J. Couchot*
　　　Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated:  August 12, 2011

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**

By:    */s/ Ronald Rus*
　　　Ronald Rus, Esq.
　　　Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SCC Communities, LLC**

### SunCal Plan Proponents Plan Solicitation Letter for SCC Communities

To the Holders of Allowed Claims Against SCC Communities, LLC:

This letter is provided to you by the SunCal Plan Proponents in the Chapter 11 Case of SCC Communities. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by Sun Cal Plan Proponents In The Chapter 11 Case of SCC Communities, LLC, which was filed jointly with the Chapter 11 Plans for the Chapter 11 Cases Of Tesoro SF LLC and North Orange Del Rio Land, LLC (the "SunCal Proponents SCC Communities Plan")[1].

SCC Communities' primary asset is its interest in the Joshua Ridge Project. The Joshua Ridge Project is encumbered by a disputed lien held by Lehman ALI that is in the alleged amount of $23 million arising from the Disputed Interim Loan Agreement. Of the $20 million in proceeds from the Disputed Interim Loan Agreement, only $78,000—less than one half of one percent of the total—was used to fund SCC Communities and two other related Voluntary Debtors (Tesoro and Del Rio). According to the SunCal Plan Proponents, at Lehman ALI's direction and insistence, the remainder of the proceeds was transferred to parties other than these Debtors, primarily those which owed debts with regard to Projects on which Lehman ALI or its Affiliates were lenders.

The SunCal Proponents SCC Communities Plan provides for the sale of the SCC Communities Assets, free and clear of all disputed claims and liens, and interest any purported credit bid rights of Lehman ALI. The Net Sales Proceeds from these sale and/or liquidation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law. Currently, there are an estimated $167,961 of unpaid claims, other than Lehman ALI against the SCC Communities Estate.

The success of the SunCal Proponents SCC Communities Plan is primarily dependant on SCC Communities prevailing on the fraudulent conveyance cause of action  This is because the SunCal Plan Proponents have a preliminary agreement with a stalking horse bidder in the amount of $175,000, subject to overbid, that will provide a 100% Distribution to Holders of all Allowed Claims of Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

The Lehman Lenders have filed a competing plan of reorganization in the Chapter 11 Case of SCC Communities (the "Lehman SCC Communities Plan"). Accordingly, the Creditors holding Claims against SCC Communities will have the opportunity to vote for the SunCal Proponents SCC Communities Plan or the Lehman SCC Communities Plan, or they can vote for or reject both the SunCal Proponents SCC Communities Plan or the Lehman SCC Communities Plan. If both plans receive the requisite voting and are otherwise comfirmable, the Bankruptcy Court will decide which plan should be approved.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents SCC Communities Plan are superior to what is being offered to Creditors under the Lehman SCC Communities Plan:

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the SunCal Proponents SCC Communities Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Tesoro, SCC Communities and Del Rio, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

- Based on extensive negotiations with a potential Stalking Horse Bidder, the SunCal Proponents SCC Communities Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interest depending on the results of the auction, whereas the Lehman SCC Communities Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman SCC Communities Plan) and whether or not such Creditor agrees to assign such claims to Lehman.

- If one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the other Lehman Voluntary Debtors Plans that are otherwise confirmed.

- The Lehman SCC Communities Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- Finally, the Lehman Voluntary Debtor Plans are contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to the Lehman SCC Communities Plans.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS SCC COMMUNITIES PLAN AND CAST A VOTE AGAINST THE LEHMAN SCC COMMUNITIES PLAN, AS THE SUNCAL PLAN PROPONENTS SCC COMMUNITIES PLAN REPRESENTS THE BEST, QUICKEST AND MOST CERTAIN MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  **August 12, 2011**

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*
          Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated:  **August 12, 2011**

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**

By:   */s/ Ronald Rus*
          Ronald Rus, Esq.
          Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for North Orange Del Rio Land, LLC**

### SunCal Plan Proponents Plan Solicitation Letter for North Orange Del Rio Land

To the Holders of Allowed Claims Against North Orange Del Rio Land, LLC:

This letter is provided to you by the SunCal Plan Proponents in the Chapter 11 Case of Del Rio. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by Sun Cal Plan Proponents In The Chapter 11 Case of North Orange Del Rio Land, LLC, which was filed jointly with the Chapter 11 Plans for the Chapter 11 Cases Of SCC Communities LLC and Tesoro SF LLC (the "SunCal Proponents Del Rio Plan")[1].

Del Rio's primary asset is its interest in certain of the Net Rio CFD Bonds Proceeds discussed in Section 4.1.3 of the Disclosure Statement) with an estimated value of $7.1 million. The Net Rio CFD proceeds are encumbered by a disputed lien held by Lehman ALI that is in the alleged amount of $23 million arising from the Disputed Interim Loan Agreement.  Of the $20 million in proceeds from the Disputed Interim Loan Agreement, only $78,000—less than one half of one percent of the total—was used to fund Del Rio and two other related Voluntary Debtors (SCC Communities and SunCal Tesoro) Projects.  According to the SunCal Plan Proponents, at Lehman ALI's direction and insistence, the remainder of the proceeds was transferred to parties other than these Debtors, primarily those which owed debts with regard to Projects on which Lehman ALI or its Affiliates were lenders.

The SunCal Proponents Del Rio Plan provides for the sale of the Del Rio Assets, free and clear of all disputed claims and liens, and interest any purported credit bid rights of Lehman ALI. The Net Sales Proceeds from these sale and/or liquidation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law.  Currently, there are estimated $975,000 of unpaid claims, other than Lehman ALI against the Del Rio Estate.

The success of the SunCal Proponents Del Rio Plan is primarily dependant on Del Rio prevailing on the fraudulent conveyance cause of action   This is because the SunCal Plan Proponents have a preliminary agreement with a stalking horse bidder in the amount of $6,000,000, subject to overbid, that will provide a 100% Distribution to Holders of all Allowed Claims of Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Del Rio, Tesoro and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

The Lehman Lenders have not filed a competing plan of reorganization in the Chapter 11 Case of Del Rio.  If this Case is converted to one under Chapter 7 of the Bankruptcy Code, the Chapter 7 Trustee may attempt to sell or liquidate the Del Rio's assets in the same manner as provided for in the SunCal Proponents Del Rio Plan or choose to abandon the litigation.. Accordingly, under the terms of the SunCal Proponents Del Rio Plan, each individual creditor is receiving "at least as much" as such creditor would receive in a Chapter 7 Case.

### *THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS DEL RIO*

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the SunCal Proponents Del Rio Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Tesoro, SCC Communities and Del Rio, confirmation of each such plan is independent of each other.  In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

*PLAN, AS THE SUNCAL PROPONENTS DEL RIO PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**


By: ___*/s/ Paul J. Couchot*___
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated: August 12, 2011

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**


By: ___*/s/ Ronald Rus*___
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for Tesoro SF, LLC**

## SunCal Plan Proponents Plan Solicitation Letter for SunCal Tesoro

To the Holders of Allowed Claims Against Tesoro SF, LLC:

This letter is provided to you by the SunCal Plan Proponents in the Chapter 11 Case of Tesoro. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by Sun Cal Plan Proponents In The Chapter 11 Case of Tesoro SF LLC, which was filed jointly with the Chapter 11 Plans for the Chapter 11 Cases Of SCC Communities LLC and North Orange Del Rio Land, LLC (the "SunCal Proponents Tesoro Plan")[1].

Tesoro's primary asset is its interest in the Tesoro Project. The Tesoro Project is encumbered by a disputed lien held by Lehman ALI that is in the alleged amount of $23 million arising from the Disputed Interim Loan Agreement. Of the $20 million in proceeds from the Disputed Interim Loan Agreement, only $78,000—less than one half of one percent of the total—was used to fund Tesoro and two other related Voluntary Debtors (SCC Communities and Del Rio). According to the SunCal Plan Proponents, at Lehman ALI's direction and insistence, the remainder of the proceeds was transferred to parties other than these Debtors, primarily those which owed debts with regard to Projects on which Lehman ALI or its Affiliates were lenders.

The SunCal Proponents Tesoro Plan provides for the sale of the Tesoro Assets, free and clear of all disputed claims and liens, and interest any purported credit bid rights of Lehman ALI. The Net Sales Proceeds from these sale and/or liquidation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and under any other applicable law. Currently, there are an estimated $659,253 of unpaid claims, other than Lehman ALI against the Tesoro Estate.

The success of the SunCal Proponents Tesoro Plan is primarily dependant on Tesoro prevailing on the fraudulent conveyance cause of action. This is because the SunCal Plan Proponents have a preliminary agreement with a stalking horse bidder in the amount of $675,000, subject to overbid, that will provide a 100% Distribution to Holders of all Allowed Claims of Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

The Lehman Lenders have filed a competing plan of reorganization in the Chapter 11 Case of Tesoro (the "Lehman Tesoro Plan"). Accordingly, the Creditors holding Claims against Tesoro will have the opportunity to vote for the SunCal Proponents Tesoro Plan or the Lehman Tesoro Plan, or they can vote for or reject both the SunCal Proponents Tesoro Plan or the Lehman Tesoro Plan. If both plans receive the requisite voting and are otherwise comfirmable, the Bankruptcy Court will decide which plan should be approved.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Tesoro Plan are superior to what is being offered to Creditors under the Lehman Tesoro Plan:

• Based on extensive negotiations with a potential Stalking Horse Bidder, the SunCal Proponents Tesoro Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the SunCal Proponents Tesoro Plan, Article II of the Disclosure Statements and Exhibit "1" attached to the Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Tesoro, SCC Communities and Del Rio, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

equity interest depending on the results of the auction, whereas the Lehman Tesoro Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman Tesoro Plan) and whether or not such Creditor agrees to assign such claims to Lehman.

- If one Lehman Voluntary Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the other Lehman Voluntary Debtors Plans that are otherwise confirmed.

- The Lehman Tesoro Plan is illusory because if the Lehman Voluntary Debtors Plans fail to meet the funding cap of $23 million, the Lehman Entities have the right to withdraw the other Lehman Voluntary Debtors Plans if otherwise confirmed. The SunCal Plan Proponents believe that the Lehman Voluntary Debtors Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow.

- Finally, the Lehman Voluntary Debtor Plans are contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to the Lehman Tesoro Plans.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS TESORO PLAN AND CAST A VOTE AGAINST THE LEHMAN TESORO PLAN, AS THE SUNCAL PLAN PROPONENTS TESORO PLAN REPRESENTS THE BEST, QUICKEST AND MOST CERTAIN MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:  ___/s/ Paul J. Couchot_____
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

Dated:  August 12, 2011

**RUS MILIBAND & SMITH
A PROFESSIONAL CORPORATION**

By:  ___/s/ Ronald Rus_____
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for LBL-SunCal Oak Valley, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter for SunCal Oak Valley**

To the Holders of Allowed Claims Against SunCal Oak Valley, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Oak Valley. This letter is accompanied by the *Disclosure Statement and Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case of SunCal Oak Valley jointly filed with the Chapter 11 Cases Of SunCal Marblehead, SunCal Heartland, Delta Coves Venture, and SunCal PSV* (the "SunCal Proponents Oak Valley Plan").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal Oak Valley, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Oak Valley Plan provides for sale of the Oak Valley Project, free and clear of liens, claims and any purported credit bid rights of SunCal Oak Valley's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Oak Valley Project has a fair market value of $21,000,000 and LCPI has asserted a first priority secured claim in the amount of $141,630,092. The SunCal Plan Proponents believe that other claims asserted against SunCal Oak Valley are in the amount of $33,971,402. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal Oak Valley and the Oak Valley Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Oak Valley is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Oak Valley is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Oak Valley Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Oak Valley Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal Oak Valley Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Oak Valley Plan, Article II of the Oak Valley Disclosure Statements and Exhibit "1" attached to the Oak Valley Disclosure Statement.

Although substantially similar and combined plans are being filed in the Chapter 11 Cases of SunCal Oak Valley, SunCal Heartland, Delta Coves, SunCal PSV and SunCal Marblehead, each plan is independent of the others and confirmation of each such plan is not dependent on confirmation of others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Oak Valley Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Oak Valley Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Oak Valley (the "Lehman Oak Valley Plan"). Accordingly, the Creditors holding Claims against SunCal Oak Valley will have the opportunity to vote for the SunCal Proponents Oak Valley Plan or the Lehman Oak Valley Plan, or they can vote for both the SunCal Proponents Oak Valley Plan and the Lehman Oak Valley Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Oak Valley Plan and the Lehman Oak Valley Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Oak Valley Plan are superior to what is being offered to Creditors under the Lehman Oak Valley Plan:

• The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Oak Valley Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Oak Valley Plan.

• The consideration paid by Lehman to Creditors under the Lehman Oak Valley Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

• The Lehman Oak Valley Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal Oak Valley Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Oak Valley Plan.

• The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Oak Valley Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman Oak Valley Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Oak Valley Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Oak Valley Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman Oak Valley Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman Oak Valley Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Oak Valley Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Oak Valley Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Oak Valley Plan provides the Lehman Entities the right to foreclose on the SunCal Oak Valley Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS OAK VALLEY PLAN AND CAST A VOTE AGAINST THE LEHMAN OAK VALLEY PLAN, AS THE SUNCAL PROPONENTS OAK VALLEY PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**              **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**      **A PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*        By:   */s/ Ronald Rus*
    Paul J. Couchot, Esq.            Ronald Rus, Esq.
General Insolvency Counsel for         Joel S. Miliband, Esq.
the Voluntary Debtors             Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Heartland, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter for SunCal Heartland**

To the Holders of Allowed Claims Against SunCal Heartland, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Heartland. This letter is accompanied by the *Disclosure Statement and Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case of SunCal Heartland jointly filed with the Chapter 11 Cases Of SunCal Oak Valley, SunCal Marblehead, Delta Coves Venture, and SunCal PSV* (the "SunCal Proponents Heartland Plan").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal Heartland, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Heartland Plan provides for sale of the Heartland Project, free and clear of liens, claims and any purported credit bid rights of SunCal Heartland's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Heartland Project has a fair market value of $7,500,000 and LCPI has asserted a first priority secured claim in the amount of $354,325,126. The SunCal Plan Proponents believe that other claims asserted against SunCal Heartland are in the amount of $37,912,594. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal Heartland and the Heartland Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Heartland is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Heartland is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Heartland Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Heartland Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal Heartland Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Heartland Plan, Article II of the Heartland Disclosure Statements and Exhibit "1" attached to the Heartland Disclosure Statement.

Although substantially similar and combined plans are being filed in the Chapter 11 Cases of SunCal Oak Valley, SunCal Heartland, Delta Coves, SunCal PSV and SunCal Marblehead, each plan is independent of the others and confirmation of each such plan is not dependent on confirmation of others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Heartland Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Heartland Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Heartland (the "Lehman Heartland Plan"). Accordingly, the Creditors holding Claims against SunCal Heartland will have the opportunity to vote for the SunCal Proponents Heartland Plan or the Lehman Heartland Plan, or they can vote for both the SunCal Proponents Heartland Plan and the Lehman Heartland Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Heartland Plan and the Lehman Heartland Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Heartland Plan are superior to what is being offered to Creditors under the Lehman Heartland Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Heartland Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Heartland Plan.

- The consideration paid by Lehman to Creditors under the Lehman Heartland Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Heartland Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal Heartland Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Heartland Plan.

- The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Heartland Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman Heartland Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Heartland Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Heartland Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman Heartland Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman Heartland Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Heartland Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Heartland Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Heartland Plan provides the Lehman Entities the right to foreclose on the SunCal Heartland Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS HEARTLAND PLAN AND CAST A VOTE AGAINST THE LEHMAN HEARTLAND PLAN, AS THE SUNCAL PROPONENTS HEARTLAND PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*
    Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

By:   */s/ Ronald Rus*
    Ronald Rus, Esq.
    Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Marblehead, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter for SunCal Marblehead**

To the Holders of Allowed Claims Against SunCal Marblehead, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Marblehead. This letter is accompanied by the *Disclosure Statement and Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case of SunCal Marblehead jointly filed with the Chapter 11 Cases Of SunCal Oak Valley, SunCal Heartland, Delta Coves Venture, and SunCal PSV* (the "SunCal Proponents Marblehead Plan").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal Marblehead, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Marblehead Plan provides for sale of the Marblehead Project, free and clear of liens, claims and any purported credit bid rights of SunCal Marblehead's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Marblehead Project has a fair market value of $93,800,000 and LCPI has asserted a first priority secured claim in the amount of $354,325,126. The SunCal Plan Proponents believe that other claims asserted against SunCal Marblehead are in the amount of $82,144,949. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal Marblehead and the Marblehead Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Marblehead is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Marblehead is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Marblehead Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Marblehead Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal Marblehead Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Marblehead Plan, Article II of the Marblehead Disclosure Statements and Exhibit "1" attached to the Marblehead Disclosure Statement.

Although substantially similar and combined plans are being filed in the Chapter 11 Cases of SunCal Oak Valley, SunCal Heartland, Delta Coves, SunCal PSV and SunCal Marblehead, each plan is independent of the others and confirmation of each such plan is not dependent on confirmation of others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Marblehead Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Marblehead Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Marblehead (the "Lehman Marblehead Plan"). Accordingly, the Creditors holding Claims against SunCal Marblehead will have the opportunity to vote for the SunCal Proponents Marblehead Plan or the Lehman Marblehead Plan, or they can vote for both the SunCal Proponents Marblehead Plan and the Lehman Marblehead Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Marblehead Plan and the Lehman Marblehead Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Marblehead Plan are superior to what is being offered to Creditors under the Lehman Marblehead Plan:

•       The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Marblehead Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Marblehead Plan.

•       The consideration paid by Lehman to Creditors under the Lehman Marblehead Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

•       The Lehman Marblehead Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal Marblehead Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Marblehead Plan.

•       The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

                    Exhibit "13", Page 40

- The Lehman Marblehead Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman Marblehead Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Marblehead Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Marblehead Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman Marblehead Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman Marblehead Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Marblehead Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Marblehead Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Marblehead Plan provides the Lehman Entities the right to foreclose on the SunCal Marblehead Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

Exhibit "13", Page 41

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS MARBLEHEAD PLAN AND CAST A VOTE AGAINST THE LEHMAN MARBLEHEAD PLAN, AS THE SUNCAL PROPONENTS MARBLEHEAD PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**                    **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**            **A PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*             By:   */s/ Ronald Rus*
    Paul J. Couchot, Esq.                  Ronald Rus, Esq.
General Insolvency Counsel for              Joel S. Miliband, Esq.
the Voluntary Debtors                   Counsel for SCC Acquisitions Inc.

Exhibit "13", Page 42

**Solicitation Letter for SunCal Century City, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter For SunCal Century City**

To the Holders of Allowed Claims Against SunCal Century City:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Century City. This letter is accompanied by the Third Amended Disclosure Statement and the Third Amended Chapter 11 Plan Filed by Acquisitions as the SunCal Plan Proponents In The Chapter 11 Case Of SunCal Century City (the "SunCal Proponents Century City Plan").

SunCal Century City formerly owned the 10,000 Santa Monica Project, which was subject to a first priority deed of trust held by Danske Bank (as the successor to Lehman ALI) pursuant to the SunCal Century City Loan Agreement in the amount of $120,000,000. During SunCal Century City's Chapter 11 Case, the 10,000 Santa Monica Project was sold to Danske Bank pursuant to a settlement agreement, in full satisfaction of the amounts owed under the SunCal Century City Loan Agreement, plus a payment by Danske Bank of $5.3 million to the SunCal Century City Estate, approximately $1.4 million of which was used to pay real property taxes.

The SunCal Proponents Century City Plan provides for the Distribution of the remaining Available Cash of Creditors holding Allowed Claims, in accordance with the priorities scheme of the Bankruptcy Code, with the exception of the establishment of a $300,000 Plan Reserve for purposes described below. SunCal Century City's remaining cash on hand as of July 6, 2011, 2011 was $3,568,824.79. The asserted Claims against the SunCal Century City consist of Administrative Claims (including unpaid Professional Fees) in the approximate amount of $2,603,064 and General Unsecured Claims in the approximate amount of $4,390,043. Based on the above information, there would be a projected distribution on the Effective Date to Holders of Allowed Administrative Claims of 100% and the Holders of Allowed General Unsecured Claims of approximately 15%. There are also ongoing Professional Fees, which continue to accrue, but such fees have been minimal since the closing of the asset sale. Furthermore, as described below, the claim balances may be reduced through claims objections resulting in lower "Allowed" Claims and higher percentage distribution.

Throughout the Chapter 11 Case, the attorneys for the Trustee Debtors' Committee (the "Committee") have been administering objections to Claims. The remaining potential Disputed Claims identified by the attorneys for the Committee total $2,507,660.26 in Administrative Claims and $1,023,802.98 in General Unsecured Claims of SunCal Management. Moreover, the Trustee Debtors' Committee has filed a motion objecting to Bond Safeguard's contingent claim.

The SunCal Proponents Century City Plan also provides for the Plan Trustee's potential prosecution and potential recovery of the Lehman Preference Claim in the alleged amount of $10,628,948.64, and the potential prosecution by the Committee of the Potential SunCal Preference Claim in the amount of $747,727.13, which consists of transfers by SunCal Century City to SunCal Affiliates (SunCal Management and Acquisitions) in the one year period preceding the filing of SunCal Century City's Chapter 11 Case. The Lehman Preference Claim is currently pending in the Fourth Amended Complaint of the Lehman Adversary Proceeding. The Trustee conducted a preliminary review of the Potential SunCal Preference Claim and concluded that valid defenses exist to such transfers, including but not limited to new value and ordinary course of business defenses.

---

[1] The capitalized terms used herein are defined in Article II of the SunCal Proponents Century City Plan, Article II of the SunCal Proponents Century City Disclosure Statements and Exhibit "1" attached to the SunCal Proponents Century City Disclosure Statement.

Exhibit "14", Page 43
MAINDOCS-#165607-v5-SunCal_Century_City_Solicitation_Letter.DOC

Both the pending Lehman Preference Claim and the Potential SunCal Preference Claim are required to be prosecuted on a contingency fee basis. To that end, the SunCal Proponents Century City Plan provides for the plan reserve in the amount of $300,000 to be established from the Available Cash on the Effective Date. Up to $200,000 of such reserve shall be used for payment of costs associated with the prosecution of the Lehman Preference Claim and payment of Post Confirmation Expense and up to $100,000 of such reserve shall be used for payment of Trustee Committee's fees and associated with potential objections to SunCal Management's Claims and prosecution of the Potential SunCal Preference Claim.

The Lehman Lenders and the Chapter 11 Trustee have not filed a competing plan of reorganization in the Chapter 11 Case of SunCal Century City. If this Case was converted to one under Chapter 7 of the Bankruptcy Code, a Chapter 7 Trustee may or may not choose to prosecute the Lehman Preference Claim and the Potential SunCal Preference Claim. The Chapter 7 Trustee would, however, distribute the proceeds in the same manner as provided for in the SunCal Proponents Century City Plan. However, the SunCal Plan Proponents believe that there would be significant costs and fees incurred in such transition. Accordingly, under the terms of the SunCal Proponents Century City Plan, each individual creditor is receiving "at least as much" as such creditor would receive in a Chapter 7 Case.

*THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS CENTURY CITY PLAN, AS THE SUNCAL PROPONENTS CENTURY CITY PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: **August 12, 2011**　　　　　　Dated: **August 12, 2011**

**WINTHROP COUCHOT**　　　　　　**RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**　　**A PROFESSIONAL CORPORATION**

By: ___*/s/ Paul J. Couchot*___　　　　By: ___*/s/ Ronald Rus*___
　　Paul J. Couchot, Esq.　　　　　　　　Ronald Rus, Esq.
General Insolvency Counsel for　　　　　Joel S. Miliband, Esq.
the Voluntary Debtors　　　　　　　　Counsel for SCC Acquisitions Inc.

Exhibit "14", Page 44
MAINDOCS-#165607-v5-SunCal_Century_City_Solicitation_Letter.DOC

**Solicitation Letter for SunCal PSV, LLC**

### The SunCal Plan Proponents Plan Solicitation Letter for SunCal PSV

To the Holders of Allowed Claims Against SunCal PSV, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal PSV. This letter is accompanied by the *Disclosure Statement and Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case of SunCal PSV jointly filed with the Chapter 11 Cases Of SunCal Oak Valley, SunCal Heartland, Delta Coves Venture, and SunCal Marblehead* (the "SunCal Proponents PSV Plan").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. These The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal PSV, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents PSV Plan provides for sale of the PSV Project, free and clear of liens, claims and any purported credit bid rights of SunCal PSV's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the PSV Project has a fair market value of $18,000,000 and LCPI has asserted a first priority secured claim in the amount of $88,257,340. The SunCal Plan Proponents believe that other claims asserted against SunCal PSV are in the amount of $30,435,869. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against SunCal PSV and the PSV Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal PSV is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal PSV is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents PSV Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents PSV Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal PSV Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents PSV Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the PSV Plan, Article II of the PSV Disclosure Statements and Exhibit "1" attached to the PSV Disclosure Statement.

Although substantially similar and combined plans are being filed in the Chapter 11 Cases of SunCal Oak Valley, SunCal Heartland, Delta Coves, SunCal PSV and SunCal Marblehead, each plan is independent of the others and confirmation of each such plan is not dependent on confirmation of others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents PSV Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal PSV (the "Lehman PSV Plan"). Accordingly, the Creditors holding Claims against SunCal PSV will have the opportunity to vote for the SunCal Proponents PSV Plan or the Lehman PSV Plan, or they can vote for both the SunCal Proponents PSV Plan and the Lehman PSV Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents PSV Plan and the Lehman PSV Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents PSV Plan are superior to what is being offered to Creditors under the Lehman PSV Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents PSV Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman PSV Plan.

- The consideration paid by Lehman to Creditors under the Lehman PSV Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman PSV Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal PSV Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman PSV Plan.

- The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman PSV Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman PSV Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In

particular, pursuant to the Lehman PSV Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman PSV Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman PSV Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman PSV Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman PSV Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman PSV Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman PSV Plan provides the Lehman Entities the right to foreclose on the SunCal PSV Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS PSV PLAN AND CAST A VOTE AGAINST THE LEHMAN PSV PLAN, AS THE SUNCAL PROPONENTS PSV PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT**            **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**    **A PROFESSIONAL CORPORATION**

By:  */s/ Paul J. Couchot*          By:  */s/ Ronald Rus*
    Paul J. Couchot, Esq.                  Ronald Rus, Esq.
General Insolvency Counsel for       Joel S. Miliband, Esq.
the Voluntary Debtors                Counsel for SCC Acquisitions Inc.

**Solicitation Letter for Delta Coves Venture, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter for Delta Coves Venture, LLC**

To the Holders of Allowed Claims Against Delta Coves Venture, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of Delta Coves Venture. This letter is accompanied by the *Disclosure Statement and Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Case of Delta Coves Venture jointly filed with the Chapter 11 Cases Of SunCal Oak Valley, SunCal Heartland, SunCal Marblehead, and SunCal PSV* (the "SunCal Proponents Delta Coves Plan").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including Delta Coves Venture, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Delta Coves Plan provides for sale of the Delta Coves Project, free and clear of liens, claims and any purported credit bid rights of Delta Coves Venture's primary secured creditor, LCPI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Delta Coves Project has a fair market value of $20,800,000 and LCPI has asserted a first priority secured claim in the amount of $206,023,142. The SunCal Plan Proponents believe that other claims asserted against Delta Coves Venture are in the amount of $38,923,987. However, the SunCal Plan Proponents have disputed LCPI's asserted claim against Delta Coves Venture and the Delta Coves Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against Delta Coves Venture is attached to the Disclosure Statement as Exhibit "8." A list of all claims against Delta Coves Venture is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Delta Coves Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty-five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Delta Coves Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Delta Coves Venture Project or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All capitalized terms used herein have the same meanings as defined in Article II of the Delta Coves Plan, Article II of the Delta Coves Disclosure Statements and Exhibit "1" attached to the Delta Coves Disclosure Statement.

Although substantially similar and combined plans are being filed in the Chapter 11 Cases of SunCal Oak Valley, SunCal Heartland, Delta Coves, SunCal PSV and SunCal Marblehead, each plan is independent of the others and confirmation of each such plan is not dependent on confirmation of others. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in the Cases of some of such Debtors, but not in others.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Delta Coves Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Delta Coves Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of Delta Coves Venture (the "Lehman Delta Coves Plan"). Accordingly, the Creditors holding Claims against Delta Coves Venture will have the opportunity to vote for the SunCal Proponents Delta Coves Plan or the Lehman Delta Coves Plan, or they can vote for both the SunCal Proponents Delta Coves Plan and the Lehman Delta Coves Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Delta Coves Plan and the Lehman Delta Coves Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Delta Coves Plan are superior to what is being offered to Creditors under the Lehman Delta Coves Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Delta Coves Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Delta Coves Plan.

- The consideration paid by Lehman to Creditors under the Lehman Delta Coves Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Delta Coves Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the Delta Coves Venture Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Delta Coves Plan.

- The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Delta Coves Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman Delta Coves Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Delta Coves Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Delta Coves Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman Delta Coves Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman Delta Coves Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Delta Coves Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Delta Coves Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Delta Coves Plan provides the Lehman Entities the right to foreclose on the Delta Coves Venture Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS DELTA COVES PLAN AND CAST A VOTE AGAINST THE LEHMAN DELTA COVES PLAN, AS THE SUNCAL PROPONENTS DELTA COVES PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:   */s/ Paul J. Couchot*
   Paul J. Couchot, Esq.
General Insolvency Counsel for
the Voluntary Debtors

By:   */s/ Ronald Rus*
   Ronald Rus, Esq.
   Joel S. Miliband, Esq.
Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Torrance, LLC**

## The SunCal Plan Proponents Plan Solicitation Letter for SunCal Torrance

To the Holders of Allowed Claims Against SunCal Torrance, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Torrance. This letter is accompanied by the *Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC* (the "Torrance Plan") and the *Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC* (the "Torrance Disclosure Statement").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal Torrance, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Torrance Plan provides for sale of the Torrance Project, free and clear of liens, claims and any purported credit bid rights of SunCal Torrance's primary secured creditor, Lehman ALI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Torrance Project has a fair market value of $13,500,000 and Lehman ALI has asserted a first priority secured claim in the amount of $158,141,365. The SunCal Plan Proponents believe that other claims asserted against SunCal Torrance are in the amount of $3,916,207. However, the SunCal Plan Proponents have disputed Lehman ALI's asserted claim against SunCal Torrance and the Torrance Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Torrance is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Torrance is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Torrance Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Torrance Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal Torrance Project nor a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the Torrance Plan, Article II of the Torrance Disclosure Statements and Exhibit "1" attached to the Torrance Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Torrance and SunCal Oak Knoll, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in one of the Debtor's Cases, but not in the other.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Torrance Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Torrance Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Torrance (the "Lehman Torrance Plan"). Accordingly, the Creditors holding Claims against SunCal Torrance will have the opportunity to vote for the SunCal Proponents Torrance Plan or the Lehman Torrance Plan, or they can vote for both the SunCal Proponents Torrance Plan and the Lehman Torrance Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Torrance Plan and the Lehman Torrance Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Torrance Plan are superior to what is being offered to Creditors under the Lehman Torrance Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Torrance Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Torrance Plan.

- The consideration paid by Lehman to Creditors under the Lehman Torrance Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Torrance Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal Torrance Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Torrance Plan.

- The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

- The Lehman Torrance Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

- The Lehman Torrance Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Torrance Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Torrance Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

- The Lehman Torrance Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

- The Lehman Torrance Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Torrance Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Torrance Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Torrance Plan provides the Lehman Entities the right to foreclose on the SunCal Torrance Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS TORRANCE PLAN AND CAST A VOTE AGAINST THE LEHMAN TORRANCE PLAN, AS THE SUNCAL PROPONENTS TORRANCE PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated: August 12, 2011

**WINTHROP COUCHOT**          **RUS MILIBAND & SMITH**
**PROFESSIONAL CORPORATION**    **A PROFESSIONAL CORPORATION**

By: __*/s/ Paul J. Couchot*___       By: __*/s/ Ronald Rus*_____
    Paul J. Couchot, Esq.            Ronald Rus, Esq.
General Insolvency Counsel for      Joel S. Miliband, Esq.
the Voluntary Debtors             Counsel for SCC Acquisitions Inc.

**Solicitation Letter for SunCal Oak Knoll, LLC**

**The SunCal Plan Proponents Plan Solicitation Letter for SunCal Oak Knoll**

To the Holders of Allowed Claims Against SunCal Oak Knoll, LLC:

This letter is provided to you by the SunCal Plan Proponents[1] in the Chapter 11 Case of SunCal Oak Knoll. This letter is accompanied by the *Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC* (the "Oak Knoll Plan") and the *Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC* (the "Oak Knoll Disclosure Statement").

All of the above referenced Chapter 11 Debtors, along with SunCal Century City, are represented by Steven M. Speier, in his capacity, as the Chapter 11 Trustee. The eight (8) Chapter 11 Debtors represented by Steven M. Speier, including SunCal Oak Knoll, are collectively referred to as the Trustee Debtors and the SunCal Proponents proposed plans for the Trustee Debtors are collectively referred as the SunCal Trustee Debtors Plans.

The SunCal Proponents Oak Knoll Plan provides for sale of the Oak Knoll Project, free and clear of liens, claims and any purported credit bid rights of SunCal Oak Knoll's primary secured creditor, Lehman ALI. The Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

The SunCal Plan Proponents believe the Oak Knoll Project has a fair market value of $25,400,000 and Lehman ALI has asserted a first priority secured claim in the amount of $158,141,365. The SunCal Plan Proponents believe that other claims asserted against SunCal Oak Knoll are in the amount of $28,679,367. However, the SunCal Plan Proponents have disputed Lehman ALI's asserted claim against SunCal Oak Knoll and the Oak Knoll Project. Specifically, the Lehman Lenders' Claims are disputed in the Lehman Adversary Proceeding, the Contract Action, the Lehman Recoupment Objection and the 502(d) Objection described in Article V of the Disclosure Statement.

If successful in the Litigation Claims, the SunCal Plan Proponents believe that non-Lehman Reliance Claimants could receive up to a 100% recovery. A list of the Reliance Claims against SunCal Oak Knoll is attached to the Disclosure Statement as Exhibit "8." A list of all claims against SunCal Oak Knoll is attached as Exhibit "4" to the Disclosure Statement.

In order to avoid the risk and delay of litigation, the SunCal Proponents Oak Knoll Plan also offers the holders of Reliance Claims the right to sell these Claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of their Allowed Claim. The purchase offer is conditioned upon the entry of a Final Confirmation Order confirming the SunCal Proponents Oak Knoll Plan, and that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the SunCal Oak Knoll Project nor a determination regarding the lifting, modification or expiration of LCPI's own automatic stay arising from LCPI's pending Chapter 11 proceeding.

---

[1] All defined terms used herein have the same meanings as set forth in Article II of the Oak Knoll Plan, Article II of the Oak Knoll Disclosure Statements and Exhibit "1" attached to the Oak Knoll Disclosure Statement.

Although substantially similar plans are being filed in the Chapter 11 Cases of SunCal Torrance and SunCal Oak Knoll, confirmation of each such plan is independent of each other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable plan will be approved in their Case. Accordingly, a plan may be confirmed in one of the Debtor's Cases, but not in the other.

MAINDOCS-#165737-v2-SunCal_Oak_Knoll_Solicitation_Letter.DOC

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of Claim and the LitCo loan for certain other SunCal Proponents Oak Knoll Plan funding will not be funded by the SunCal Plan Proponents. Rather, the SunCal Plan Proponents are in discussions with various potential investors/lenders who would provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained on or before the SunCal Proponents Oak Knoll Plan's Effective Date. It is typical in the obtaining of financing relating to real estate projects that a lender will not provide a written commitment bound to make a loan or provide capital unless and until the definitive documentation acceptable to the Lender is finalized and signed by all parties. This is also the way SunCal's business has been conducted in real estate acquisitions it has been involved in both prior to and during the current recession. In fact, during the post petition period, now approaching three years, SunCal has been involved in closing of transactions exceeding the amount of $150 million that have operated in just this manner. These projects include, but are not limited to, SunCal being involved with residential lots in Las Vegas, Nevada, property in Sacramento, California, property in Chicago, Illinois, a large residential project in Prince William County, Virginia, and ironically the winning bid for three residential projects in related bankruptcy proceedings before the same Bankruptcy Court, known as the McAllister Ranch, Summerwind Ranch and McSweeny Farms projects, all of which closed within a very short time period following court approval of the auction, but without any binding written commitments until after sale approval shortly before the closings of these transactions.

The Lehman Lender and the Chapter 11 Trustee have filed a competing plan of reorganization in the Chapter 11 Case of SunCal Oak Knoll (the "Lehman Oak Knoll Plan"). Accordingly, the Creditors holding Claims against SunCal Oak Knoll will have the opportunity to vote for the SunCal Proponents Oak Knoll Plan or the Lehman Oak Knoll Plan, or they can vote for both the SunCal Proponents Oak Knoll Plan and the Lehman Oak Knoll Plan or the Lehman Plan and allow the Court to decide which plan should be approved. Conversely, such creditors are free to reject both the SunCal Proponents Oak Knoll Plan and the Lehman Oak Knoll Plan.

For the following reasons, the SunCal Plan Proponents believe that the aggregate benefits offered under the SunCal Proponents Oak Knoll Plan are superior to what is being offered to Creditors under the Lehman Oak Knoll Plan:

- The consideration paid by the Holders of Allowed Reliance Claims is 55 percent under the SunCal Proponents Oak Knoll Plan in contrast to only a potential payment between of 40 to 50 percent under the Lehman Oak Knoll Plan.

- The consideration paid by Lehman to Creditors under the Lehman Oak Knoll Plan is not a "fair" exchange for the release provided to the Lehman Entities given that the Lehman Lenders' Claims are Disputed in their entirety in several different proceedings.

- The Lehman Oak Knoll Plan is not confirmable because it inappropriately provides that the Lehman Entities and the Trustee will receive full releases from the SunCal Oak Knoll Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling them to perform under the Lehman Oak Knoll Plan.

- The Lehman Trustee Debtor Plans all provide that if one Trustee Debtor Plan is not confirmed, Lehman has the absolute right to withdraw the Lehman Trustee Debtors Plans for the other Trustee Debtors for which it has proposed and has an otherwise confirmable Plan.

• The Lehman Oak Knoll Plan is contingent upon non-existent settlements with the Bond Companies, which are a material express condition precedent to all of the Lehman Trustee Debtors Plans.

• The Lehman Oak Knoll Plan is not confirmable because, under applicable law, it impermissibly discriminates against the Claims held by SunCal Management and its affiliate. In particular, pursuant to the Lehman Oak Knoll Plan, the Lehman Entities specifically exclude potential Reliance Claims held by SunCal Insiders held by SunCal, that would otherwise fall within this class and receive the potential 40% - 50% distribution. Under applicable law, the mere fact that a claim is held by an insider is not a sufficient basis for discriminatory treatment and renders the Lehman Oak Knoll Plan unconfirmable even if the Lehman Lenders receive the requisite vote. Conversely, the inclusion of the claims of SunCal Management and its affiliates would render Lehman's Trustee Debtors' Plans unfeasible and therefore unconfirmable.

• The Lehman Oak Knoll Plan is illusory because it fails to meet either the claim's cap in the amount of $30 million for all of the Lehman Trustee Debtors Plans or the funding cap in the amount of $55 million for all of the Trustee Debtors' Plans, both of which give the Lehman Entities the right to withdraw the Lehman Trustee Debtors Plans even after confirmation. The SunCal Plan Proponents believe that the plans proposed by the Lehman Entities for the Trustee Debtors already exceed their claim cap and funding cap. Specifically, the SunCal Plan Proponents estimate that the Allowed Amount of General Unsecured Claims for the Trustee Debtors is in the amount of $34,313,903 (excluding future Bond Claims) and that the overall funding requirements for the Trustee Debtors are currently in the minimum amount of $70,595,476 and continue to accrue. See Exhibit "4" to the Disclosure Statement.

• The Lehman Oak Knoll Plan is also not unconfirmable because it incorporates provisions that violate California law made applicable to the Lehman Oak Knoll Plan by the Bankruptcy Code. California law prohibits a real property deficiency claim, unless there has been a judicial foreclosure sale, a fair value hearing on the subject real estate, and a one year right of redemption. Under the Lehman Oak Knoll Plan, the Lehman Entities violate California anti-deficiency statutes. Specifically, the Lehman Oak Knoll Plan provides the Lehman Entities the right to foreclose on the SunCal Oak Knoll Project, in a private sale with no bidding allowed, no fair value hearing, no one year redemption and for Lehman to retain a fixed deficiency claim. This, the Lehman Entities cannot legally do.

*IN SUM, THE SUNCAL PLAN PROPONENTS RECOMMEND THAT YOU CAST YOUR VOTE IN FAVOR OF CONFIRMATION OF THE SUNCAL PROPONENTS OAK KNOLL PLAN AND CAST A VOTE AGAINST THE LEHMAN OAK KNOLL PLAN, AS THE SUNCAL PROPONENTS OAK KNOLL PLAN REPRESENTS CURRENTLY THE BEST MEANS FOR CREDITORS TO OBTAIN THE MOST FAVORABLE RECOVERY ON THEIR CLAIMS.*

Very truly yours,

Dated:  August 12, 2011

**WINTHROP COUCHOT**  
**PROFESSIONAL CORPORATION**

**RUS MILIBAND & SMITH**  
**A PROFESSIONAL CORPORATION**

By:   _/s/ Paul J. Couchot_  
      Paul J. Couchot, Esq.  
General Insolvency Counsel for  
the Voluntary Debtors

By:   _/s/ Ronald Rus_  
      Ronald Rus, Esq.  
      Joel S. Miliband, Esq.  
Counsel for SCC Acquisitions Inc.

MAINDOCS-#165737-v2-SunCal_Oak_Knoll_Solicitation_Letter.DOC

| In re: | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **VOLUNTARY DEBTORS' PROPOSED PLAN SOLICITATION LETTERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 12, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 12, 2011 | Jeannie Martinez | /s/ Jeannie Martinez |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                        **F 9013-3.1**

| In re: | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- **NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1

| In re: | CHAPTER 11 |
|        |            |
| Debtor(s). | CASE NUMBER |

- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER |

- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Benjamin M Weiss    bweiss@lansingcompanies.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

January 2009

F 9013-3.1