PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
SEAN A. O'KEEFE -- State Bar No. 122417
sokeefe@winthropcouchot.com
Newport Center Drive, Suite 400
Newport Beach, CA 92660
Tel: (949) 720-4100/Fax: (949) 720-4111
General Insolvency Counsel for Palmdale
Hills Property, LLC et. al. (the
"Voluntary Debtors")

RONALD RUS - State Bar No. 67369
rrus@rusmiliband.com
JOEL S. MILIBAND - State Bar No. 77438
jmiliband@rusmiliband.com
RUS MILIBAND & SMITH P.C.
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Tel.: (949) 752-7100/Fax: (949) 252-1514
Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br>    Jointly Administered Debtors and Debtors-in-Possession<br><br>Affects:<br>☒ All Debtors<br>☐ Palmdale Hills Property,<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale,<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☐ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF LLC | Case No. 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574 ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11 Proceedings<br><br>**SUNCAL PARTIES' REPLY TO PLAN LETTERS PROPOSED BY THE LEHMAN ENTITIES**<br><br>DATE:    August 22, 2011<br>TIME:    2:00 p.m<br>PLACE:    Courtroom 5A |

MAINDOCS-#165947-v1-SCC_Objection_Lehman_Plan.DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Continued on Next Page*
*Continued from Previous Page*

- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LBL-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☐ SunCal Torrance, LLC
- ☐ SunCal Oak Knoll, LLC

Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal Emerald, LLC, SunCal Johansson, LLC, SunCal Bickford, LLC, SunCal Summit, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, LLC, SJD Development, LLC, SCC Communities, LLC, North Orange Del Rio, LLC and Tesoro SF, LLC and SunCal Management LLC, and SCC Acquisitions, LLC (collectively the "SunCal Parties") hereby submit the following *Reply* to the letters that the Lehman Entities propose to include in their plan packages (the "Lehman Letters").

# I

## PRELIMINARY STATEMENT

The Lehman Letters, like the Lehman Entities' Disclosure Statements, fundamentally misrepresent the facts. In the Lehman Letters, the Lehman Entities represent, again and again, that their plan offers a guaranteed 40% distribution to the holders of Reliance Claims, and further represents that this distribution could increase to 49%. In fact, the reality is their plan is a 0% to 1% plan for very simple reason: The Lehman Entities have not agreed that any "allowed" Reliance Claims exist.

If the Court approves the Lehman Letters, as is, then every unsecured creditor that receives the Lehman Letter will assume that their claim is a "Reliance Claim," and they will further assume that they will receive a 40% to 50% distribution on this claim "promptly." What these creditors need to understand is that all the Lehman Entities are really offering is an opportunity to litigate the validity, priority and amount of their claims with a massive, well-heeled opponent. These creditors also need to understand that they will have to pay for the cost of this fight and that they will receive the 40% offered only if they win, a year plus down the road. Finally, they need to understand that if they are not willing to engage in this fight, their upside

1  is 0% to 1%, if they are lucky. That is not what is conveyed in the Lehman
2  Letters.
3        The SunCal Parties would respectfully submit that all of the
4  professionals involved in this case fully recognize that the Lehman Entities'
5  plan is quite simply a "beat down" plan. No one gets anything unless they can
6  get past the Lehman Entities litigation machine, and anyone who is lucky enough
7  to do so, will be paid first, not from the Lehman Entities' own money, but from
8  the Debtor's cash on hand – money the unsecured creditors were already entitled
9  to receive. In a best case scenario, the Lehman Entities will validate a few
10 token "Reliance Claims" post confirmation to avoid the ire of the Court. All
11 other creditors can look forward to 1% at best. At the end of the day the "net
12 outflow" to unsecured creditors will, quite miraculously, be just about equal
13 to what the creditors would have received from the unencumbered cash in the
14 estate (but only after the Lehman Entities' have paid their legal fees).
15       Given these facts, the Court should compel the Lehman Entities to make
16 the following statement in their Plan Letters:

17
18
19
20
21
22
23
> The dividend payable under our Plan is only payable on claims that
> we agree should be allowed, or that the Court forces us to accept
> as "allowed," after litigation. Since the Lehman Entities have not
> agreed at this juncture that ANY claims should be "allowed" as
> Reliance Claims, you should assume, when voting, that you will not
> receive the higher dividend quoted herein *unless you prevail in
> litigation with the Lehman Entities*. As we stated elsewhere in our
> letter, litigation is typically a lengthy process, so even if you
> prevail in this litigation, which you will have to fund, and
> thereby force us to pay your claim, the 40% to 49% dividend will
> not be payable for some time.

24       Alternatively, the Lehman Letters should state:

25
26
27
28
> Although the Lehman Entities reference a 40% distribution, as
> explained, this is only payable to the holders of Allowed Reliance
> Claims, and the Lehman Entities are of the opinion that no such
> claims exist. Accordingly, in the Lehman Entities' estimation, all
> claimants holding unsecured claims will receive a maximum
> distribution of only 1%. Here again, this 1% will only be payable

on claims that we agree should be "allowed," or that the Court forces us to "allow" after litigation.

In short, the average unsecured creditor should not be bamboozled into thinking that he/she/it is going to receive a check on the Effective Date of 40% to 50% per the Lehman Letters. It should be made clear in these letters know that an unsecured creditor will only realize this distribution if they can overcome the Lehman Entities' objections to their claims.

Since the Lehman Entities will vociferously oppose the disclosure of any inkling of the litigation "beat down" to come, the SunCal Parties would ask that the Court pose the following inquiry to the Committee appointed in the Trustee Cases, which had a duty to investigate these issues:

> In your negotiations with the Lehman Entities, did you review their analysis of the unsecured claims to obtain an understanding of how many claims were "Reliance" claims and how many of these claims the Lehman Entities intended to "allow" for payment purposes, and did you make that information available to the affected creditors?
>
> How many non-reliance claims do the Lehman Entities believe will be allowed and have you disclosed or otherwise made this information available to the affected creditors?
>
> Since it will be financially unproductive for most unsecured creditors to fight to protect their claims, particularly the 1% dividend creditors, what have *you* done to insure the members of your constituency will not be subjected to a litigation onslaught by the Lehman Entities, post-confirmation, thereby depriving these creditors of their promised dividend?
>
> Why, *as in most pot plan cases*, didn't the Committee insist that claim objections were their task alone, in order to avoid the very "beat down" scenario referenced herein?

The SunCal Parties would submit that the Committee's answers to these questions, assuming the Court can extract answers, will "no" and "none" in each instance. This means that the Lehman Entities "beat down" plan will move forward like the Trojan Horse and the claims of unsecured creditors will share the fate of the Trojans.

## II

## **INDIVIDUAL COMMENTS/OBJECTIONS**

## **TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT A**

2.1.  Page 1. The order in which voting options are presented to creditors, who are typically interfacing with the bankruptcy process for the first time, is critical. Most of these creditors will be unaware of the fact that they have the option of voting in favor of both plans and then allowing the Court to decide between the two plans. Given this circumstance, this voting option should appear first, the other options should appear thereafter. Throughout the Lehman Letters, this option is listed last.

2.2.  Page 1. The following language in the third paragraph appearing in first box on the Exhibit A letter should be deleted: "Because there is a risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal to find adequate funding, if the Trustee/Lehman Plan …nothing would be likely to be paid to creditors this year or any time soon." First, there is a risk that *both* plans could fail regardless of the creditor's vote, because the Court could find that one or more of the elements of Section 1129 have not been satisfied. Accordingly, this sentence should be modified to say that both could fail. Second, the latter part of this sentence includes a false statement. If the Lehman Entities' plan fails the creditors will receive a distribution in a worst case scenario. This distribution will be comprised of their pro rata share of unencumbered cash, which is substantial, and the collections obtained from estate's claims against the Lehman Entities.

2.3.  Page 1. The following sentence that appears in the second paragraph in second box in the Exhibit A letter is false and should be deleted: "As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Creditors.… has not yet found anyone else to do.)" This allegation is disputed by the SunCal Parties.

2.4.  Page 1. The following sentence in the third paragraph in the second box in the Exhibit A letter is false and should be deleted: "The SunCal Plan commits to *nothing* for holders of General Unsecured Claims who must depend on SunCal's litigation strategy." (Emphasis added). In fact, the SunCal Plan provides that the Projects will be sold free and clear of liens and that the litigation against the Lehman Entities will proceed. If this litigation is successful, the General Unsecured Creditors will receive their pro rata share of the value in the estate, which the SunCal Parties contend should yield payment in full.

2.5.  Page 1. The following sentence in the third paragraph in the second box in the Exhibit A letter is false and should be deleted: "Yet there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner." In fact, the SunCal Plan preserves and provides for the pursuit of the SunCal/Lehman Litigation, where the Lehman Plan seeks to extinguish this litigation. Accordingly, the SunCal Plan does enable this litigation to "reach a resolution faster or get creditors paid sooner" than the relevant comparative – the treatment of this litigation provided for in the Lehman Plan.

2.6.  Page 1. The following sentence in the third paragraph in the second box in the Exhibit A letter is false and should be deleted: "Please consider that …litigation and appeals would delay for years any payment to creditors." This is speculation and in fact the Section 502(c) motion that the SunCal Parties are filing would, through the estimation process, allow distributions to be made shortly after the Effective Date.

2.7.  Page 1. The words "but this LitCo offer is illusory" in the third paragraph in the second box in the Exhibit A letter should be stricken. The fact that funding for the acquisition of these claims has not been obtained *at*

-6-

*the present time* does not render the offer illusory. It simply means that the funding has not been obtained for this acquisition at this point in time.

2.8. <u>Page 1</u>. The following sentence in the third paragraph in second box in the Exhibit A letter is false and should be deleted: "Although SunCal indicates that some funding will come from the sale of the Projects, ...SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years." If the Lehman Entities' secured claims are estimated pursuant to 11 U.S.C. § 502(c), then distributions post-sale can occur notwithstanding a final ruling in the litigation. At best, the Lehman Entities can state that the foregoing is "their contention."

2.9. <u>Page 2</u>. The first sentence that appears in the first box on page 2 of Exhibit "A" fails to explain to creditors that the offer of 40% is only payable if the Lehman Entities agree that a claim satisfies the requisite criteria, or this claim is validated over their objection. This is a critical issue in this case, because the Lehman Entities have not agreed that any claims are allowed Reliance Claims. Accordingly, creditors who see this "offer" have to know that they are buying into a fight.

In the second sentence that appears in the first box on page 2 of Exhibit A, the Lehman Entities state that the general unsecured creditors are "offered 5% of their allowed claims." This is not the case. They are offered 1%. The additional increment up to 5% is purely contingent. In this same sentence, the Lehman Entities state that the general unsecured creditors "are unlikely to receive any material recovery even if SunCal prevails in the litigation." This statement is contrary to the evidence and reflects at best speculation. It should be prefaced by the statement "the Lehman Entities' contend."

2.10. <u>Page 2</u>. In the first sentence that appears in the second box on page 2 of Exhibit A, the Lehman Entities again glibly state that they are

offering a 50% offer "for Reliance Claims." This not correct. They are offering up to 50%, to the holder of claims that that they deem to be allowed Reliance Claims, and as this writing, they have not agreed that any are allowed. As indicated in the Preliminary Statement, it is critical that the Lehman Entities disclose to the alleged Reliance Creditors that they have not agreed that any creditors exist within this category. If this is disclosed these creditors will realize that the 50% offer is nothing more than an offer to litigate.

2.11. <u>Page 2</u>. In the first sentence appearing in the third box on page 2 of Exhibit A, the Lehman Entities state that the creditors are left "to fight for payment with the Lehman Creditors any other secured creditors to determine whose lien is junior or senior." This is false. The SunCal Plan makes it clear that SunCal will be litigating with the Lehman Entities.

## III
## INDIVIDUAL COMMENTS/OBJECTIONS
## TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT B

The SunCal Parties' comments and objections to the Exhibit B letter are the same as the comments and objections made to the Exhibit A letter.

## IV
## INDIVIDUAL COMMENTS/OBJECTIONS
## TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT C

The Lehman Entities have not filed a plan in the case of SunCal Century City, yet they are demanding the right to insert a "no" letter in the plan package that the SunCal Parties' are serving. They have no standing or right to seek this relief and there is no case law that the SunCal Parties have found that even suggests that the holder of an administrative claim, whose claim will be paid in full on the Effective Date, has the right to submit a "plan" letter urging rejection of another parties' plan. In short, the Lehman Entities have

no proverbial "dog in the fight." Accordingly, their effort to gratuitously insert themselves into the SunCal Parties' plan effort should be rejected.

Moreover, this letter fails to disclose the most critical issue – one of the core objectives of the plan that the SunCal Parties filed in this case is to preserve the $11 million claim that the estate holds against Lehman Ali, Inc., a claim that the Trustee in this case, whose fees are being paid by Lehman Ali, does not intend to pursue. Respectfully, this letter should be rejected and the Lehman Entities should be barred from interfering in the Plan solicitation process in this case.

## V

## INDIVIDUAL COMMENTS/OBJECTIONS

## TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT E

The SunCal Parties' comments with respect to the Exhibit A letter also apply to the Exhibit E letter.

## VI

## INDIVIDUAL COMMENTS/OBJECTIONS

## TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT F

6.1. <u>Page 1</u>. The following language in the third paragraph appearing in the first box on the Exhibit F letter should be deleted: "Because there is a risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal to find adequate funding, if the Lehman Plan ...nothing would be likely to be paid to creditors this year or any time soon." First, there is a risk that *both* plans could fail regardless of the creditor's vote, because the Court could find that one or more of the elements of Section 1129 have not been satisfied. Accordingly, this sentence should be modified to say that both plans could fail, not just the SunCal Plan. Second, the latter part of this sentence includes a false statement. If the Lehman Entities' plan fails the creditors will receive a distribution in a worst case

scenario. This distribution will be comprised of their pro rata share of unencumbered cash, which is substantial, and the collections obtained from claim against the Lehman Entities.

6.2. <u>Page 1</u>. The following sentence that appears in the second paragraph in the second box in the Exhibit F letter is false and should be deleted: "As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Creditors…. has not yet found anyone else to do.)" This allegation is disputed by the SunCal Parties.

6.3. <u>Page 1</u>. The following sentence in the third paragraph in the second box in the Exhibit F letter is false and should be deleted: "Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve." This is speculation and in fact the Section 502(c) motion that the SunCal Parties are filing would, through the estimation process, allow distributions to be made shortly after the Effective Date.

6.4. <u>Page 1</u>. The following sentence in the third paragraph in second box in the Exhibit F letter is false and should be deleted: "Yet there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner." In fact, the SunCal Plan preserves and provides for the pursuit of the SunCal/Lehman Litigation, where the Lehman Plan seeks to extinguish this litigation. Accordingly, the SunCal Plan does enable this litigation to "reach a resolution faster or get creditors paid sooner" than the relevant comparative – the treatment of this litigation provided for in the Lehman Plan.

6.5. <u>Page 2</u>. The following sentence in the third paragraph in the first box in the Exhibit F letter is false and should be deleted: Although SunCal indicates that some funding will come from the sale of the Projects, …SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years." If the Lehman

Entities' secured claims are estimated pursuant to 11 U.S.C. § 502(c), then distributions post-sale can occur notwithstanding a final ruling in the litigation. At best the Lehman Entities can state that it the foregoing is "their contention."

6.6. In the third paragraph that appears in the first box on page 2 of Exhibit F, fails to explain to creditors that the offer of 40% is only payable if the Lehman Entities agree that a claim satisfies the requisite criteria, or this claim is validated over their objection. This is a critical issue in this case, because the Lehman Entities have not agreed that any claims are allowed Reliance Claims. Accordingly, creditors who see this "offer" have to know that they are buying into a fight.

In the second sentence that appears in in this paragraph, the Lehman Entities state that the general unsecured creditors are "offered 5% of their allowed claims." This is not the case. They are offered 1%. The additional increment up to 5% is purely contingent. In this same sentence, the Lehman Entities state that the general unsecured creditors "are unlikely to receive any material recovery even if SunCal prevails in the litigation." This statement is contrary to the evidence and reflects at best speculation. It should be prefaced by the statement "the Lehman Entities' contend".

In the second box appearing on page 2, the Lehman Entities reference "inappropriate distributions" from the CFD escrow. This statement is both false and irrelevant and should be stricken.

## VII

## INDIVIDUAL COMMENTS/OBJECTIONS

## TO THE LEHMAN ENTITIES' PLAN LETTER – EXHIBIT G

The Lehman Entities have not filed a plan in Chapter 11 cases of SJD Partners and SJD Development, yet they are demanding the right to insert a "no" letter in the plan package that the SunCal Parties' are serving. They have no

standing or right to seek this relief and there is no case law that the SunCal Parties have found that even suggests that such an entitlement exists. Accordingly, their effort to gratuitously insert themselves into the SunCal Parties' plan effort should be rejected.

## VIII

## THE LEHMAN ENTITIES' CONTENTION THAT THEY SHOULD BE ABLE TO ADD THEIR PLAN LETTERS TO DEBTOR'S PLAN PACKAGES SHOULD BE REJECTED

The Lehman Entities seem to be contending that their plan letters should be included in the SunCal Parties' plan packages. This contention should be rejected. The Lehman Entities can certainly include court approved material in their own plan packages, but they are not entitled to include their matter in the SunCal Parties' solicitation.

DATED: August 17, 2011

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By: /s/ *Paul J. Couchot*
Paul J. Couchot, Esq.
Sean A. O'Keefe, Esq.
General Insolvency Counsel for
Administratively Consolidated Debtors-in-Possession ("Voluntary Debtors")

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described **SUNCAL PARTIES' REPLY TO PLAN LETTERS PROPOSED BY THE LEHMAN ENTITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 17, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On August 17, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 17, served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

   Edward Soto, Esq. - edward.soto@weil.com
   Alfredo R. Perez – alfredo.perez@weil.com
   Richard Pachulski – rpachulski@pszjlaw.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 17, 2011 | PJ Marksbury | /s/ *PJ Marksbury* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

-13-

# SERVICE LIST

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com

|    |                                                                                                                   |
|----|-------------------------------------------------------------------------------------------------------------------|
| 1  | • Jonathan M Hoff    jonathan.hoff@cwt.com                                                                        |
|    | • Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com                                                              |
| 2  | • Michelle Hribar    mhribar@rutan.com                                                                            |
|    | • John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com                              |
| 3  | • Lawrence A Jacobson    laj@cohenandjacobson.com                                                                 |
|    | • Michael J Joyce    mjoyce@crosslaw.com                                                                          |
| 4  | • Stephen M Judson    sjudson@fablaw.com                                                                          |
|    | • Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com                                                            |
| 5  | • Steven J Kahn    skahn@pszyjw.com                                                                               |
|    | • Sheri Kanesaka    sheri.kanesaka@bryancave.com                                                                  |
| 6  | • David I Katzen    katzen@ksfirm.com                                                                             |
|    | • Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com             |
| 7  | • Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com                                       |
|    | • Irene L Kiet    ikiet@hkclaw.com                                                                                |
| 8  | • Claude F Kolm    claude.kolm@acgov.org                                                                          |
|    | • Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com                                                    |
| 9  | • David B Lally    davidlallylaw@gmail.com                                                                        |
|    | • Leib M Lerner    leib.lerner@alston.com                                                                         |
| 10 | • Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com                                       |
|    | • Charles Liu    cliu@winthropcouchot.com                                                                         |
| 11 | • Kerri A Lyman    klyman@irell.com                                                                               |
|    | • Mariam S Marshall    mmarshall@marshallramoslaw.com                                                             |
| 12 | • Robert C Martinez    rmartinez@mclex.com                                                                        |
|    | • Michael D May    mdmayesq@verizon.net                                                                           |
| 13 | • Hutchison B Meltzer    hmeltzer@wgllp.com                                                                       |
|    | • Krikor J Meshefejian    kjm@lnbrb.com                                                                           |
| 14 | • Joel S. Miliband    jmiliband@rusmiliband.com                                                                   |
|    | • James M Miller    jmiller@millerbarondess.com,                                                                  |
| 15 | vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com                          |
|    | • Louis R Miller    smiller@millerbarondess.com                                                                   |
| 16 | • Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com                         |
|    | • Randall P Mroczynski    randym@cookseylaw.com                                                                   |
| 17 | • Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com                      |
|    | • Robert Nida    Rnida@castlelawoffice.com                                                                        |
| 18 | • Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com                                                  |
|    | • Sean A Okeefe    sokeefe@okeefelc.com                                                                           |
| 19 | • Scott H Olson    solson@seyfarth.com                                                                            |
|    | • Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com                                                        |
| 20 | • Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com                                                        |
|    | • Ernie Zachary Park    ernie.park@bewleylaw.com                                                                  |
| 21 | • Daryl G Parker    dparker@pszjlaw.com                                                                           |
|    | • Penelope Parmes    pparmes@rutan.com                                                                            |
| 22 | • Robert J Pfister    rpfister@ktbslaw.com                                                                        |
|    | • Ronald B Pierce    ronald.pierce@sdma.com                                                                       |
| 23 | • Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com                                                |
|    | • Cassandra J Richey    cmartin@pprlaw.net                                                                        |
| 24 | • Debra Riley    driley@allenmatkins.com                                                                          |
|    | • James S Riley    tgarza@sierrafunds.com                                                                         |
| 25 | • Todd C. Ringstad    becky@ringstadlaw.com                                                                       |
|    | • R Grace Rodriguez    ecf@lorgr.com                                                                              |
| 26 | • Martha E Romero    Romero@mromerolawfirm.com                                                                    |
| 27 | • Ronald Rus    rrus@rusmiliband.com                                                                              |
|    | • John P Schafer    jschafer@mandersonllp.com                                                                     |
| 28 | • John E Schreiber    jschreiber@dl.com                                                                           |
|    | • William D Schuster    bills@allieschuster.org                                                                   |

1
2
3
4
5
6
7
8
9
10
11
12

- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Benjamin M Weiss    bweiss@lansingcompanies.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28