Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings LLC and OVC Holdings LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>Jointly Administered Debtors and<br>Debtors-In-Possession.<br><br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows, LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☒ Seven Brothers, LLC<br>☒ SJD Partners, Ltd.<br>☒ SJD Development Corp.<br>☒ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☒ LB-L-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☒ LB-L-SunCal Northlake, LLC<br>☒ SunCal Marblehead, LLC<br>☒ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**LEHMAN CREDITORS':**<br>**(1) LIMITED OBJECTION TO**<br>**SUNCAL PROPONENTS' PROPOSED**<br>**PLAN SOLICITATION LETTERS;**<br>**(2) ERRATA AND PARTIAL**<br>**RESPONSE TO VOLUNARY**<br>**COMMITTEE'S STATEMENT; AND**<br>**(3) RESPONSE RE SUNCAL'S**<br>**ALTERNATIVE FORMULATION OF**<br>**YES/NO LETTERS**<br><br>Hearing:     August 22, 2011<br>Time:        2:00 p.m.<br>Place:       Courtroom 5A |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    This *Lehman Creditors' (1) Limited Objection to SunCal Proponents' Proposed Plan*

2    *Solicitation Letters; (2) Errata and Partial Response to Voluntary Committee Statement; and (3)*

3    *Response Re SunCal's Alternative Formulation of Yes/No Letters* ("Limited Objection") is filed by

4    Lehman Commercial Paper Inc., Lehman ALI, Inc., Northlake Holdings LLC, and OVC Holdings

5    LLC (the "Lehman Creditors") with respect to the *SunCal Plan Proponents' Proposed Plan*

6    *Solicitation Letters* (the "SunCal Letters Pleading"), filed August 12, 2011 [Docket No. 2559],

7    attaching eighteen separate recommendation letters (each a "SunCal Letter") that the Voluntary

8    Debtors[1] and SCC Acquisitions Inc. (collectively, the "SunCal Plan Proponents" or "SunCal") seek

9    authority to include with the solicitation packages for their seven plans. For their Limited Objection,

10    the Lehman Creditors respectfully represent:

## I.
## LIMITED OBJECTION TO
## SUNCAL PROPONENTS' PROPOSED PLAN SOLICITATION LETTERS

**A.    Information Not Contained In The Disclosure Statements, Or Expressly Withheld In Discovery, Or That Is False Or Misleading Should Be Omitted Or Corrected.**

16    The Lehman Creditors believe that the proposed SunCal Letters would violate section 1125

17    of the Bankruptcy Code without the proposed changes discussed herein and as set forth in the

18    proposed order annexed hereto as **Exhibit L**. The Lehman Creditors appreciate that the SunCal

19    Letters are expected to contain opinions since they are essentially position statements. Nonetheless,

20    the SunCal Letters and the letters supplied by the Lehman Creditors are part of what creditors will

21    rely upon when voting. Thus, the SunCal Plan Proponents should not be permitted to include

22    information that is not contained in their approved Disclosure Statements. In nearly all of the

23    instances identified herein of new information, the SunCal Plan Proponents never produced such

24    information in connection with the discovery of these matters. In this regard, information that was

25    shielded from discovery should not be included in the SunCal Letters because the Lehman Creditors

---

[1] The "Voluntary Debtors" in these cases are those debtors that remain debtors-in-possession and for which no chapter 11 trustee has been appointed.

DOCS_SF:77870.9 52063-001

1    were never permitted the opportunity to test whether such information is being adequately disclosed

2    and fairly presented.

3        Furthermore, under any circumstance, the information in the SunCal Letters should be

4    corrected so that it is not false or misleading.  Fair voting and adequate disclosure requires that the

5    SunCal Letters omit, or be revised to mitigate, information that is not contained in the approved

6    Disclosure Statements, or was withheld in discovery, or is false or misleading.  *In re Gulph Woods,*

7    *Corp.*, 83 B.R. 339, 343 (Bankr. E.D. Pa. 1988) (holding that a debtor may solicit rejection of a

8    creditor's competing plan, but the solicitation may not contain mischaracterizations, or falsehoods

9    which might unfairly influence voters).

10       The narrative below describes the nature of the changes requested to the 18 SunCal Letters.

11    Many of the 18 Letters include similar provisions. Thus, for each type of change, a sample was

12    selected and the proposed changes are indicated below for that sample, with additions highlighted

13    and underscored and deletions highlighted and struck-through.  Moreover, for clarity, the form of

14    each proposed change requested herein to the SunCal Letters is set forth in a clean form in the

15    proposed order annexed hereto as **Exhibit L**.

16

17    **B.**      **SunCal's Past Financing Experience With Respect To Real Estate Developments That**

18    **Is Not Contained In the Disclosure Statements Should Be Removed So That It Is Not**

19    **Misleadingly Construed To Support SunCal's Alleged Ability To Finance Litco's Offer To**

20    **Purchase Claims.**

21       The SunCal Plan Proponents' ability to raise financing for the purchase of unrelated real

22    estate developments was not disclosed in the Disclosure Statements and should not be included in

23    the SunCal Letters.  In any event, the information is irrelevant and should be excluded because

24    financing in the context of purchasing real estate does not have any correlation with the SunCal Plan

25    Proponents' ability to raise financing for Litco to purchase Reliance Claims at 55 percent.  Thus, the

26    citation to extensive past experience in raising funds that is not contained in their Disclosure

27    Statements, but also is presented as if this unrelated financing is identical to the financing needed for

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Litco to purchase litigation claims, should be removed.  As the Court itself remarked at the July 22,

2011 Disclosure Statement hearing:

> Well, right now, there's no information as to who LitCo is or will be, I guess.  And if, you know, the Debtors say -- or I should say, the proponents say in the disclosure statement, you know, pretty much trust us.  We're going to come up with the money.  We sort of did before.  And I say "sort of did," because that was another transaction.
>
> And I would prefer it not to -- as a matter of fact, I didn't mention it in the tentative, not to confuse that.  Because I don't want to give creditors the impression that, well, they accomplished a sale in this other case, where they raised money to do it.  So, obviously, they have the ability to do it here.  I don't think that's so obvious, and I don't think that, you know, a connection necessarily follows.
>
> * * *
>
> But I think, you know, belief is great, and it can be sincere, but it may never become reality.  So, I think that this is sort of an Achilles heel of the disclosure statement, to be honest.

July 22, 2001 Transcript, 30:13-25, 31:1-4, and 31:15-18.  Moreover, counsel for the SunCal Plan

Proponents acknowledged the distinction between SunCal's prior fund raising and the needed plan

financing by stating that such statements did not appear in the Disclosure Statements but only in

their reply to objections.  *See* July 22, 2001 Transcript, 31:5-7.

      As we know, these litigation rights are entirely contingent upon the outcome of litigation

with the Lehman Creditors and any financing of "Litco" would not be a stand-alone investment in

real estate.  In light of the disclosure defect in their Disclosure Statements, the Court directed the

SunCal Plan Proponents to produce information relating to the financing for Litco and make

available the relevant individuals for depositions on or before September 23, 2011.  Thus, the

SunCal Plan Proponents should not be permitted to disclose information to voting creditors before

the Lehman Creditors will have the opportunity to review and depose the individuals regarding the

information.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The proposed changes below to the SunCal Letter located in the SunCal Letters Pleading,

2   page 4 of Exhibit 1 would be identical to the inserts and deletions proposed for the other SunCal

3   Letters containing the same statement:[2]

4        Notwithstanding the lack of a firm commitment for financing, the
5        SunCal Plan Proponents are confident that such financing will be
         obtained. on or before the SunCal Proponents Palmdale Hills Plan's
6        Effective Date.  Even though the financing sought would not be for the
         purpose of purchasing real estate, but instead, would be for purchasing
7        litigation rights to distributions from Net Sale Proceeds only payable if
         the Lehman Creditors' liens are defeated or their claims subordinated,
8        nonetheless, the SunCal Plan Proponents believe that their past
         experience in raising funds for real estate development projects is
9        instructive of their ability to raise funds for Litco. It is typical in the
         obtaining of financing relating to real estate projects that a lender will
10       not provide a written commitment bound to make a loan or provide
         capital unless and until the definitive documentation acceptable to the
11       Lender is finalized and signed by all parties. This is also the way
         SunCal's business has been conducted in real estate acquisitions it has
12       been involved in both prior to and during the current recession.  In
         fact, during During the post-petition period, now approaching three
13       years, SunCal has been involved in a closing of financing transactions
         in other matters exceeding the amount of $150 million. that have
14       operating in just this manner.  These projects include, but are not
         limited to, SunCal being involved with residential lots in Las Vegas,
15       Nevada, property in Sacramento, California, property in Chicago,
         Illinois, and a large residential project in Prince Williams County,
16       Virginia, and ironically, the winning bid for three residential projects
         in related bankruptcy proceedings before the same Bankruptcy Court,
17       known as the McAllister Ranch, Summerwind Ranch and McSweeney
         Farms projects, all of which closed within a very short time period
18       following court approval of the auction, but without any binding
         written commitment until after sale approval shortly before the
19       closings of these transactions.[3]

20   **C.    Another Statement in Several SunCal Letters Regarding Litco Requires Correction**

21   **Due to Clerical Error and Misleadingly Implying that the Litco Offer Already is Concrete.**

22       Several SunCal Letters also include a statement regarding Litco funding that both contains a

23   clerical error and misleadingly implies that the Litco Offer is concrete.  The Lehman Creditors

24   believe that minor changes can correct the clerical error and the misleading aspects of this statement.

25

26

[2] All references to the SunCal Letters relate to the page and exhibit numbers used in the lower right corner of the letters.
27   All changes proposed by the Lehman Creditors are reflected by highlighting/shading and underscoring or striking
     through the added or deleted portion of the letter.
[3] For this specific defect, see also, Exhibit 4, p. 12; Exhibit 5, p. 16; Exhibit 6, p. 20; Exhibit 11, p. 32; Exhibit 12, p. 36;
28   Exhibit 13, p. 40; Exhibit 15, p. 46; Exhibit 16, p. 50; Exhibit 17, p. 54; and Exhibit 18, p. 58.

DOCS_SF:77870.9 52063-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Changes in each such letter can be made as exemplified by the following proposed changes to the SunCal Letter found in the SunCal Letters Pleading, page 4 of Exhibit 1:

> The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Palmdale Hills Plan in contrast to only a potential payment by Lehman between of 40 or 50 percent under the Lehman Palmdale Hills Plan.[4]

Similarly, the SunCal Letter for the Group IV Voluntary Debtors Plan of SJD Partners, LLC and SJD Development Corp. is misleading and requires correction due to a reference to funding by Litco without any mention of the contingent nature of such funding.  Thus, the Lehman Creditors propose minor changes to the SunCal Letter found on page 23 of Exhibit 7, as follows:

> In addition, Holders of Allowed Reliance Claims . . . will receive an initial Distribution equal to 1% of such Holder's Allowed Claim, and, potentially, an additional Distribution of up to 49% in the event that the SunCal Plan Proponents are successful obtaining funding for LitCo and it or its designee obtains free and clear title to the Pacific Point Project (the "LitCo Enhancement") during the Plan term.

Without the above qualifications, creditors could be misled to believe that the SunCal Plan Proponents actually have already received commitments for the necessary Litco funding.  The proposed changes above are further supported by the fact that when asked in discovery to provide information regarding financing commitments, the SunCal Plan Proponents negotiated to have the relevant depositions occur later and to provide information regarding financing commitments by September 23, 2011.

**D.    The SunCal Letters Should Reflect That The Distribution Of "Net Sale Proceeds" Is Dependent Upon The Final Adjudication Of The Lehman Creditors' Liens And Claims.**

Several SunCal Letters misleadingly imply that the "Net Sale Proceeds" derived from the sale of the applicable Projects can be distributed to creditors after any Project sales without first resolving the liens and claims against such Projects.  The Lehman Creditors believe that an addition

---

[4] For this specific defect, see also, Exhibit 4, p. 13; Exhibit 5, p. 16; Exhibit 6. p. 20; Exhibit 11, p. 32; Exhibit 12, p. 36; Exhibit 13, p. 40; Exhibit 15, p. 46; Exhibit 16, p. 50; Exhibit 17, p. 54; and Exhibit 18, p. 58.

DOCS_SF:77870.9 52063-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of qualifying language to each of the applicable SunCal Letters is necessary to appropriately clarify this issue, as exemplified by the following revised quotation from the SunCal Letter found in the SunCal Letters Pleading, page 3 of Exhibit 1:

> The SunCal Proponents Palmdale Hills Plan provides for sale of the Ritter Ranch Project, free and clear of liens, claims and any purported credit bid rights of Palmdale Hills' primary secured creditor, LCPI. After disputes regarding LCPI's liens are resolved, The the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.[5]

The SunCal Letter for SunCal Emerald Meadows also requires a substantially similar qualification with respect to the sale proceeds, noting also the other unresolved issues:

> The SunCal Proponents Emerald Plan provides for sale of the Emerald Meadows Project, free and clear of liens, claims and any purported credit bid rights of Emerald's primary secured creditor, LCPI. After disputes regarding LCPI's liens, the lien of the Evangelical Christian Credit Union (discussed below) and certain constructive trust claims are resolved, The the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

*See* SunCal Letters Pleading, p. 11 of Exhibit 4.

**E.    The Applicable SunCal Letters Should Remove their Criticism Of The Lehman Plan Release And Injunction Because They Both Are Clear In Permitting Creditors To Enforce The Terms Of The Lehman Plans.**

As noted above, false statements without any basis cannot be permitted.  Several of the SunCal Letters falsely state, without any basis in the language of the plans for which the Lehman Creditors are proponents (the "Trustee/Lehman Plans"), that the release and injunction in those plans prevents creditors from enforcing their terms.  As the Lehman Creditors have previously noted (multiple times), the creditor's release in each plan includes the following statement:

> In each case, neither the assignment nor the release shall include for General Unsecured Claims or Reliance Claims . . . (1) a Creditor's rights under the Joint TD Plan to the Lehman Creditor Distribution

---

[5] For this specific defect, see also, Exhibit 2, p. 7; Exhibit 4, p. 11; Exhibit 5, p. 15; Exhibit 6, p. 19; Exhibit 8, p. 25; Exhibit 9, p. 27; Exhibit 10, p. 29; Exhibit 11, p. 31; Exhibit 12, p. 35; Exhibit 13, p. 39; Exhibit 15, p. 45; Exhibit 16, p. 49; Exhibit 17, p. 53; and Exhibit 18, p. 57.

7

Funding and (2) the proportional share of Residual Cash attributable under the Plan to the Claims so assigned or released.

As to the injunction in the Trustee/Lehman Plans, each clause of the injunction is clear in excepting from its application any treatment expressly provided under the Plan. Clause "(a)" begins with "[e]xcept as otherwise expressly provided in the Plan." and clause "(b)" ends with "except as expressly provided in and permitted by the Plan." Thus, the injunctions do not prevent the terms of the Trustee/Lehman Plans from being enforced by creditors and there is no basis to say differently.

To prevent the SunCal Letters from being false and misleading, the Lehman Creditors believe that a deletion is necessary, which deletion is exemplified by the following proposed change to the SunCal Letter found at page 4 of Exhibit 1:

> The Lehman Palmdale Hills Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the Palmdale Hills Estate, as well as prospective injunctions against both Creditors and even government agencies from compelling to perform under the Lehman Palmdale Hills Plan.[6]

## F.    The SunCal Letters Should Not Include Information That Was Not Disclosed In The Disclosure Statements Or Shielded From Discovery On the Basis Of Confidentiality.

The SunCal Letters should not include information that was not disclosed in the SunCal Plan Proponents' Disclosure Statements or information that was presented in a materially different manner in such Disclosure Statements. The following references to negotiations with Stalking Horse Bidders and undisclosed valuations should each be revised to reflect what was disclosed in the SunCal Plan Proponents' Disclosure Statements:

- Based upon the SunCal Plan Proponents' analysis of the value of the Beaumont Heights Project, extensive negotiations with a potential Stalking Horse Bidder willing to submit a minimum bid for a purchase price of $900,000, and the estimated aggregate amount of Allowed Claims against the SunCal Beaumont Estate ($770,885), there is a reasonable likelihood that all Allowed Claims will be paid in full under the SunCal Proponents Beaumont Plan within thirty (30) days after the Confirmation Date. *See* Exhibit 2, p. 7.

- Based on extensive negotiations with a potential Stalking Horse Bidder the SunCal Plan Proponents' analysis of the value of the Beaumont Heights Project,

---

[6] For this specific defect, see also, Exhibit 4, p. 13; Exhibit 5, p. 16; Exhibit 6, p. 21; Exhibit 11, p. 32; Exhibit 12, p. 36; Exhibit 13, p. 40; Exhibit 15, p. 46; Exhibit 16, p. 50; Exhibit 17, p. 54; and Exhibit 18, p. 58.

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the SunCal Proponents Beaumont Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Beaumont Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case. *See* Exhibit 2, p. 8.

- Based upon the SunCal Plan Proponents' analysis of the value of the Johannson Ranch Project~~, extensive negotiations with a potential Stalking Horse Bidder willing to submit a minimum bid for a purchase price of $600,000,~~ and the estimated aggregate amount of Allowed Claims against the SunCal Johannson Estate ($586,162), there is a reasonable likelihood that all Allowed Claims will be paid in substantial part ~~full~~ under the SunCal Proponents Johannson Plan within thirty (30) days after the Confirmation Date. *See* Exhibit 3, p. 9.

- Based on ~~extensive negotiations with a potential Stalking Horse Bidder~~ the SunCal Plan Proponents' analysis of the value of the Johannson Ranch Project, the SunCal Proponents Johannson Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Johannson Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case. *See* Exhibit 3, p. 10.

- The success of the SunCal Proponents SCC Communities Plan is primarily dependent on SCC Communities prevailing on the fraudulent conveyance cause of action. This is because if the SunCal Plan Proponents ~~have a preliminary~~ an ~~enter into~~ agreement with a potential purchaser ~~stalking horse bidder~~ in the amount of $175,000, subject to overbid, that will provide 100% Distribution to Holders of all Allowed Claims ~~o~~if Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23. *See* Exhibit 8, p. 25.

- Based on ~~extensive negotiations with a potential Stalking Horse Bidder, the~~ SCC Communities prevailing on the fraudulent conveyance action and a $175,000 sale price for the Joshua Ridge Project, the SunCal Proponents SCC Communities Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman SCC Communities Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman SCC Communities Plan) and whether or not such Creditor agrees to assign such claims to Lehman. *See* Exhibit 8, p. 26.

- The success of the SunCal Proponents Del Rio Plan is primarily dependent on Del Rio prevailing on the fraudulent conveyance cause of action. This is because if the SunCal Plan Proponents ~~have~~ enter into an ~~a preliminary~~ agreement with a ~~stalking horse bidder~~ potential purchaser in the amount of $6,000,000, subject to overbid, that will provide 100% Distribution to Holders of all Allowed Claims ~~o~~if Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Del Rio, Tesoro and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23. *See* Exhibit 9, p. 27.

9

- The success of the SunCal Proponents Tesoro Plan is primarily dependent on Tesoro prevailing on the fraudulent conveyance cause of action. This is because if the SunCal Plan Proponents enter into an ~~have a preliminary~~ agreement with a potential purchaser ~~stalking horse bidder~~ in the amount of $675,000, subject to overbid, that will provide 100% Distribution to Holders of all Allowed Claims ~~o~~if Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23. *See* Exhibit 10, p. 29.

- Based on ~~extensive negotiations with a potential Stalking Horse Bidder~~ Tesoro prevailing on the fraudulent conveyance cause of action and a $675,000 sale price for the Tesoro Project, the SunCal Proponents Tesoro will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Tesoro Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman Tesoro Plan) and whether or not such Creditor agrees to assign such claims to Lehman. *See* Exhibit 10, p. 29.

All of the foregoing references to negotiations (and indicative values therefrom) should be removed. First, no mention of the "extensive" stalking horse negotiations appears in the approved Disclosure Statements. Having failed to include the information regarding stalking horse bidders in the Disclosure Statements, creditors, including the Lehman Creditors, were unable to test, through discovery or otherwise, the adequacy of this disclosure or the fairness of the manner in which the information is being presented. Accordingly, the SunCal Letters should not include any descriptions of the content of negotiations with such bidders.

Second, at the recent "meet and confer" on August 9, 2011, SunCal expressly informed the Lehman Creditors that they would confirm that they have not received any indications of interest, bids, or offers for the sale of any of the Projects or other asserts during the past twelve months. Third, regarding outstanding discovery issues the SunCal Plan Proponents' also shielded the above information on the basis that the negotiations are confidential and until a deal is struck all negotiations are irrelevant. SunCal's own logic dictates that this information should not be disclosed to creditors until a deal is struck. To have it any other way would expose creditors to irrelevant matters when they are deciding how to cast their vote. If not, the Lehman Creditors, when they sought such information in connection with discovery, should have been permitted to examine the

DOCS_SF:77870.9 52063-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   alleged facts to enable them to argue to the Court whether the facts were being adequately and fairly

2   presented.

3       Third, the SunCal Letter for SunCal Johannson includes a reference to an implied value for

4   the Project of $600,000 based on these "extensive," but evidently incomplete, negotiations whereas

5   the SunCal Plan Proponents' value estimate of April 2011 used in their already approved Disclosure

6   Statement was $540,000.  The creditors, including the Lehman Creditors were not permitted

7   discovery on this information as they would have been if contained in the applicable Disclosure

8   Statement.  Thus, this information should be removed from the SunCal Letter for SunCal Johannson.

9   As a result, in that the $540,000 SunCal value estimate is just slightly less than its estimate of the

10  SunCal Johannson's debts, the proposed modification above changes slightly the claim that creditors

11  are projected to be paid 100% to creditors being paid in "substantial part."

## II.
## ERRATA AND PARTIAL RESPONSE TO VOLUNTARY COMMITTEE STATEMENT

14      On August 12, 2011, the Lehman Creditors filed their own seven proposed "Yes/No Letters"

15  (the "Lehman Letters"), with one each proposed for inclusion with each of SunCal's seven plans.

16  On August 17, 2011, the Official Committee of Creditors Holding General Unsecured Claims filed

17  its *Statement . . . On the Lehman Creditor's Submission of Proposed Yes/No Letters to Send with*

18  *SunCal's Seven Plans* [Docket #2575] (the "VD Committee Statement").

19

20  **A.**    **Minor Corrections to the Lehman Letters are Included in the Attached Exhibits.**

21      Redlines of the Lehman Letters reflecting any changes proposed due to minor errors in the

22  original or responsive to the matters raised in the VD Committee Statement are attached as **Exhibit**

23  **A** through **Exhibit G**.

24

25  **B.**    **The Lehman Letters' Tone is Entirely Appropriate.**

26      The tone of the Lehman Letters is entirely appropriate. The Lehman Creditors have had to

27  reluctantly accept that SunCal gets to seek votes on its plans that include a 55% Litco Offer for

28  Reliance Claims and a promise of funding of administrative claims on their plans' effective dates

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

1  without SunCal first finding any such offer or funding.  Despite all warnings, this means that some

2  creditors may "assume" from the fact that SunCal gets to solicit votes on its plans with a court-

3  approved disclosure statement that the Litco Offer, administrative claim funding and other needed

4  post-confirmation funding are available. Although it is true that the Lehman Letters emphasize that

5  there is no current funding and although the Lehman Letters include that the Lehman Lenders

6  believe that some of the funding (*i.e.*, the funding to purchase litigation claims) is not likely to be

7  found, this expression of opinion is the point of these letters and is not inappropriate.

8

9  **C.    The Lehman Letters for SunCal Emerald Meadows, LLC, North Orange Del Rio Land,**

10  **LLC, SJD Partners, Ltd., SJD Development Corp. and SunCal Century City, LLC all are**

11  **Appropriate.**

12         The relationship of these twenty-six related Debtors is clear and it is no coincidence that

13  plans presently are going forward at the same time for the vast majority of these Debtors.  The

14  Lehman Creditors are a key constituent in all of the cases.

15         Although the Lehman Creditors have not filed plans for SunCal Emerald Meadows, LLC,

16  North Orange Del Rio Land, LLC, SJD Partners, Ltd., SJD Development Corp. and SunCal Century

17  City, LLC, they are creditors or contingent creditors of each such Debtor, holding substantial claims

18  or contingent claims.  Furthermore, SunCal makes the centerpiece of each such plan litigation

19  against the Lehman Creditors.  Moreover, one of the key reasons that the Lehman Creditors did not

20  file a "cookie cutter" plan for a few of these Debtors was that the Debtors have unresolved issues

21  besides SunCal's dispute of the Lehman liens and claims, which other unresolved issues are NOT

22  even purported to be resolved by the SunCal plans.  This failure of the SunCal Plan to resolve the

23  key non-Lehman issues facing the Debtors is the predominant argument raised in most of these

24  Lehman Letters.  These Lehman Letters should be permitted.

25

26  **D.    The Lehman Letters Specifically Referenced in the VD Committee Statement Are**

27  **Clarified in the Exhibits Hereto to Eliminate Any Implication that a Future Plan May Provide**

28  **More Favorable Treatment.**

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

12

The VD Committee Statement challenges references to the Lehman Creditors' hopes in the matter of SJD Partners and SJD Development that "fruitful settlement negotiations can proceed" after the SunCal Plans are defeated. The VD Committee Statement also objects to a reference to unresolved issues at SunCal Emerald having caused the Lehman Creditors not to present a plan. The VD Committee Statement equates both references as tantamount to touting the benefits of an alternative plan that the Court has not yet approved.  This makes no sense.

In both cases, no alternative treatment was being referenced or suggested. For SunCal Emerald, the Lehman Letter refers to the existence of constructive trust claims that are unresolved by the SunCal Plan and a $6 million lien of the Evangelical Christian Credit Union that is unaddressed by the SunCal Plan. The Lehman Creditors explained only that they are not presenting a plan because these issues are unresolved, noting that no plan that ignores them, as does the SunCal Plan, can accomplish anything meaningful for creditors. This is not in any way intimating that there is a better "treatment" being offered. It is simply pointing out that the SunCal Plan doesn't solve key issues required to get creditors paid.

Similarly, as to SJD Partners and SJD Development Corp., with SunCal expressly acknowledging that the Debtors do not currently own or possess the Project and that it must be reacquired before it can be sold, the Lehman Creditors only make the point that the key issue is resolving issues with the Lehman Creditors, that the only effect of the SunCal Plan is to give SunCal veto rights on a future settlement and that such settlement can better be achieved with closer court supervision and creditor input.

To the extent it was the Lehman Creditors lack of clarity that led to the comments in the VD Committee Statement, the Lehman Creditor offer revisions of the Lehman Letters, as set forth in **Exhibit A** through **Exhibit G**.

### III.

### RESPONSE RE SUNCAL'S ALTERNATIVE FORMULATION OF YES/NO LETTERS

The Lehman Creditor and SunCal made differing assumptions about the placement of the SunCal Letters and Lehman Letters.  The Lehman Creditors prepared 7 letters corresponding to

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  SunCal's seven plans to be sent with SunCal's seven plan.  SunCal prepared 18 letters also to be sent

2  with their seven plans.

3      The Lehman Creditors assumed that their own plans and disclosure statements stood on their

4  own and would be accompanied by a letter or cover sheet from the Lehman Creditors that would not

5  require Court approval – essentially just listing the contents of the package.  The Lehman Creditors

6  assumed that the Lehman Letters instead would be placed on top of the seven SunCal Plans and

7  SunCal Disclosure Statements with the letters of the two committees.

8      SunCal, on the other hand, apparently assumed that their letters should be sent with their own

9  plans.  Moreover, instead of 7 letters, they prepared 18 letters – one for each Debtor subject to any of

10  the seven plans.  This was surprising.  At the hearing on July 22, 2011, when SunCal complained of

11  the burden of preparing so many letters, it was discussed that there only would be one letter per plan,

12  not per Debtor.  However, the Court never expressly ruled on that issue.

13      This presents a small dilemma.  As presented by SunCal and the Lehman Creditors, SunCal

14  would be sending both the SunCal Letters and the Lehman Letters.  The Lehman Creditors believe

15  that their original formulation is more appropriate.  Nonetheless, fearing that there may be

16  insufficient time for SunCal to redraft their 18 letters, the Lehman Creditors propose to, not only ask

17  that SunCal be required to send the 7 Lehman Letters previously filed, as modified herein, but also

18  that the Lehman Creditors be permitted to send a Lehman Letter with each of the Trustee/Lehman

19  Plans, which proposed letters, attached as **Exhibit H** and **Exhibit I** hereto, are simply combinations

20  of the similar information already contained in the original 7 Lehman Letters, as modified.

21      Moreover, if (and only if) the Court rules that SunCal need not send any letter for the

22  Lehman Creditors relating to a Debtor for which the Lehman Creditors have a plan pending, then,

23  the Lehman Creditors prepared individual Lehman Letters for SunCal Emerald and Del Rio, attached

24  as **Exhibit J** and **Exhibit K** hereto, whose creditors otherwise would receive no Lehman Letter.

25      Additionally, the Lehman Creditors believe that the following should be ordered:

26          a.    Each party may elect to either send some or all of their approved solicitation

27  letters in the solicitation package for which the particular solicitation letter was designed or send it or

28  them under separate cover (with non-material modifications thereto to so permit).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

1    b.    If a party wishes to have another party, *i.e.*, the Lehman Creditors or SunCal

2    Plan Proponents, send some or all of their solicitation letters in such other party's solicitation

3    packages, then the applicable solicitation letters must be transmitted to such party in electronic

4    format by 11:00 a.m. on August 24, 2011 and reasonable efforts should be made by the party

5    handling a mailing to place all solicitation letters together in their solicitation packages.

6    WHEREFORE the Lehman Creditors respectfully request that the Court require that the

7    SunCal Letters be required to be modified as set forth above, that the original Lehman Letters, as

8    modified, be approved, and that the Lehman Creditors also be permitted to send with the

9    Trustee/Lehman Plans, the letters attached as **Exhibit H** and **Exhibit I** hereto.

10

11    Dated:    August 17, 2011                    PACHULSKI STANG ZIEHL & JONES LLP

12                                          */s/ Robert B. Orgel*
                                         Richard M. Pachulski (CA Bar No. 90073)
13                                         Dean A. Ziehl (CA Bar No. 84529)
                                         Robert B. Orgel (CA Bar No. 101875)
14                                         10100 Santa Monica Blvd., Suite 1100
                                         Los Angeles, CA 90067-4100
15                                         Telephone: (310) 277-6910
                                         Facsimile: (310) 201-0760
16
                                         -and-
17
                                         WEIL, GOTSHAL & MANGES LLP
18                                         Edward Soto (admitted *pro hac vice*)
                                         Alfredo R. Perez (admitted *pro hac vice*)
19                                         767 Fifth Avenue
                                         New York, NY 10153-0119
20                                         Telephone: (212) 310-8000
                                         Facsimile: (212) 310-8007
21
                                         Counsel for Lehman Commercial Paper Inc.,
22                                         Lehman ALI, Inc., Northlake Holdings, LLC and
                                         OVC Holdings, LLC
23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

DOCS_SF:77870.9 52063-001

# EXHIBIT A

**EXHIBIT A**

| |
|---|
| ***Statement of the Lehman Creditors*** <br> ***Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:*** <br> ***(1) SunCal Marblehad, LLC; (2) SunCal Oak Valley, LLC,; (3) SunCal Heartland, LLC,; (4) Delta Coves Ventures,; LLC & (5) SunCal PSV, LLC*** |

**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents[1] (the "SunCal Plan")** and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "Trustee/Lehman Plan"). The SunCal Plan and the competing Trustee/Lehman Plan apply to all Group I Trustee Debtors.

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan. If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors. *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal[4] to find adequate funding, if the Trustee/Lehman Plan does not receive sufficient votes to ACCEPT it, then, the Trustee/Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors this year or any time soon.*

| |
|---|
| *Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan** |

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values. As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy their claims (something SunCal itself will not do, and has not yet found anyone else to do). Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

*SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.* The SunCal Plan commits to nothing for holders of General Unsecured Claim who must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner. Please consider that even if SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors. Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer. The Lehman Creditors believe that SunCal's own claims will be substantially disallowed. If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors, but this Litco Offer is illusory. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). SunCal also fails to identify any source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $22.3 million payable to the Lehman Creditors for postpetition expense loans). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("Northlake") and OVC Holdings, LLC. The Lehman Creditors' relevant claims in these cases were filed by various Lehman Creditors other than Northlake.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**EXHIBIT A**

| |
|---|
| ***Statement of the Lehman Creditors*** <br> ***Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:*** <br> ***(1) SunCal Marblehad, LLC; (2) SunCal Oak Valley, LLC; (3) SunCal Heartland, LLC; (4) Delta Coves Ventures, LLC & (5) SunCal PSV, LLC*** |

that benefit SunCal but do not maximize price.

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims. The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for holders of **Reliance Claims*** |

**REJECT the SunCal Plan because the "Litco Offer" is unfunded, illusory and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims. Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement. SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." *The Lehman Creditors believe that Suncal will never be able to raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.* Without having already found someone actually committed to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% or anything at all to purchase Reliance Claims and litigation rights. Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected. If you gamble that such a higher offer could be found and the Trustee/Lehman Plan does not receive sufficient votes, when the SunCal Plan fails, as the Lehman Creditors believe it will, you risk having lost the opportunity now in your grasp to select the Trustee/Lehman Plan's funded offer for prompt payment. We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims*** |

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved, leaving you thereafter to fight for payment with the Lehman Creditors and any other secured creditors to determine whose lien is junior or senior. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

Document comparison by Workshare Professional on Wednesday, August 17, 2011 3:07:00 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242834/3 |
| Description | DOCS_LA-#242834-v3-NO_Letters:_Trustee_Debtors_Group_I_(55%_offer) |
| Document 2 ID | PowerDocs://DOCS_LA/242834/4 |
| Description | DOCS_LA-#242834-v4-NO_Letters:_Trustee_Debtors_Group_I_(55%_offer) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 6 |
| Deletions | 4 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 10 |

# EXHIBIT B

**EXHIBIT B**

| |
|---|
| ***Statement of the Lehman Creditors*** <br> ***Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:*** <br> ***SunCal Oak Knoll, LLC and SunCal Torance, LLC*** |

**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents[1] (the "SunCal Plan")** and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "Trustee/Lehman Plan"). The SunCal Plan and the competing Trustee/Lehman Plan apply to all Group II Trustee Debtors.

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan. If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors. *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal[4] to find adequate funding, if the Trustee/Lehman Plan does not receive sufficient votes to ACCEPT it, then, the Trustee/Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors this year or any time soon.*

| |
|---|
| *Competing Plan Strategies and Reasons to* ***REJECT the SunCal Plan*** |

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values. As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do). Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.*** The SunCal Plan commits to nothing for holders of General Unsecured Claim who must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner. Please consider that even if SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors. Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer. The Lehman Creditors believe that SunCal's own claims will be substantially disallowed. If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors, but this Litco Offer is illusory. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). SunCal also fails to identify and source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $16.5 million payable to the Lehman Creditors for postpetition expense loans). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. Lehman ALI, for itself or as agent, filed the relevant claims of the Lehman Creditors in these cases.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**EXHIBIT B**

| |
|---|
| ***Statement of the Lehman Creditors*** <br> ***Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:*** <br> ***SunCal Oak Knoll, LLC and SunCal Torance, LLC*** |

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims. The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for holders of **Reliance Claims*** |

**REJECT the SunCal Plan because the "Litco Offer" is unfunded, illusory and represents a highly speculative gamble.**

  SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims. Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement. SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." *The Lehman Creditors believe that Suncal will never be able to raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.* Without having already found someone actually committed to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% or anything at all to purchase Reliance Claims and litigation rights. Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected. If you gamble that such a higher offer could be found and the Trustee/Lehman Plan does not receive sufficient votes, when the SunCal Plan fails, as the Lehman Creditors believe it will, you risk having lost the opportunity now in your grasp to select the Trustee/Lehman Plan's funded offer for prompt payment. We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims*** |

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved, leaving you thereafter to fight for payment with the Lehman Creditors and any other secured creditors to determine whose lien is junior or senior. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

# EXHIBIT C

**EXHIBIT C**

***Statement of the Lehman Creditors***
***Urging You to REJECT the SunCal Plan For SunCal Century City, LLC***

**We urge you to REJECT the accompanying plan (the "SunCal Plan") proposed by the SunCal Plan Proponents.**

You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the SunCal Plan for SunCal Century City, LLC ("SunCal Century City").

*Reasons to **REJECT** the SunCal Plan*

**$3.5 million in cash** is being held for the Debtor's estate by Steven M. Speier, the chapter 11 trustee ("Trustee"), remaining from his cash sale, during the chapter 11 case, of the Debtor's Project to its secured lender, Danske Bank. Additionally, *the Debtor's estate has actual or potential preference actions*, including a filed action that is part of the wide-ranging litigation of SunCal[1] against the Lehman Creditors[2] (the "SunCal/Lehman Litigation"), miscellaneous smaller potential actions possibly not worth pursuing, and *a potential action against against SunCal for $748,000*.

**$3.5 million in claims** is also the approximate amount of undisputed claims, consisting of $100,000 in postpetition, administrative claims and $3.4 million in prepetition, general, unsecured claims.

**Another $3.6 million in <u>disputed</u> Claims** creates the potential shortfall either due to the expenses of addressing these claims or in the event that they are allowed.

**$2.5 million of the disputed Claims are asserted by SunCal and are alleged to be administrative claims** that, if allowed, would have to be paid first and would dilute substantially payment to non-priority, unsecured creditors.

*The SunCal Plan represents overreaching by SunCal.  At your expense, it affords SunCal a $200,000 war chest to aide in the prosecution of its wide-ranging SunCal/Lehman Litigation. At the same time, it limits expenditures of your Creditors Committee on the litigation against SunCal to $100,000.*

**The SunCal Plan is unnecessary, wasteful of your money, eliminates close court supervision and replaces the neutral Trustee and Creditors Committee with a conflicted SunCal that has its own agenda.**

From the SunCal Disclosure Statement, it appears that there are essentially three tasks to accomplish for SunCal Century City:  (1) resolve objections to disputed Claims, (2) examine and settle or prosecute preference actions, and (3) pay creditors.  Your Creditors Committee, according to the SunCal Disclosure Statement, itself, has been prosecuting claims objections.  The Lehman Creditors know that the Trustee has contacted them to discuss their receipt of the allegedly preferential transfers and an exchange of information is ongoing.

We urge you permit the unresolved matters to be addressed by your Creditors Committee and Trustee in the chapter 11 case, which offers greater transparency and in which creditors still have a forum and an ability to assert control. <u>REJECT the SunCal Plan</u>.

---

[1] Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and their affiliates (other than the Trustee Debtors) are referred to herein as "SunCal."

[2] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. The Lehman Creditors, as targets of a preference claim of this Debtor, are contingent creditors to the extent of any payment they might make.

Document comparison by Workshare Professional on Wednesday, August 17, 2011 3:11:15 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242838/2 |
| Description | DOCS_LA-#242838-v2-NO_Letter:_Trustee_Debtors_Group_III_Century_City |
| Document 2 ID | PowerDocs://DOCS_LA/242838/4 |
| Description | DOCS_LA-#242838-v4-NO_Letter:_Trustee_Debtors_Group_III_Century_City |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 4 |
| Deletions | 1 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 5 |

# EXHIBIT D

**Exhibit D**

| |
|---|
| *Statement of the Lehman Lenders*<br>*Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:*<br>*Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates* |

<u>We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents</u><u><sup>1</sup></u> (the "SunCal Plan") and urge creditors of Palmdale Hills, SunCal Bickford and Acton Estates to vote to ACCEPT the competing plan of the Lehman *Lenders*[2] (the "Lehman Plan"). The SunCal Plan applies to all Group I Voluntary Debtors and the competing Lehman Plan applies to all Group I Voluntary Debtors other than SunCal Emerald. If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan</u>. If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors. *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal*[3] *to find adequate funding, if the Lehman Plan does not receive sufficient votes, then, the Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors any time soon.*

*Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan**

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. <u>The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values.</u> As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do). Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.*** Under the SunCal Plan, holders of General Unsecured Claim must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner. If SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors. <u>Moreover, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.</u> SunCal's own claims are likely to be substantially disallowed. If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims, despite the <u>Litco Offer, which is illusory.</u> By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.</u> Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors (and seek to resolve issues to enable progress as to SunCal Emerald).*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offers such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman Commercial Paper Inc, for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**Exhibit D**

| |
|---|
| ***Statement of the Lehman Lenders***<br>***Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:***<br>***Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates*** |
| offered 5% of their allowed claims.  The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable. |
| *Special Reasons to REJECT the SunCal Plan for Holders of all **voting Claims against SunCal Emerald*** |
| **REJECT the SunCal Plan because it is premature, incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**  Four creditors, who assert constructive trust Claims against the Project, objected to the Lehman Lenders' prior proposed plan, arguing any Emerald Meadows Project disposition required first a resolution of their claims. Recently another lender asserted a lien of over $6 million against portions of this Project (which SunCal values in the entirety at $6.1 million). ~~These unresolved issues account~~Whether or not you would find favorable any resolution of these issues that the Lehman Lenders could devise, that these issues remain today unresolved accounts for the absence of ~~a~~ny present plan for this Debtor from the Lehman Lenders. The SunCal Plan does not resolve these issues, will not help those issues to be resolved faster and will not get creditors paid sooner than if no plan were confirmed at all. It only affords SunCal veto rights over any later resolution.  If these issues are not to be settled through a plan upon which you vote, they should, instead, be resolved in the chapter 11 case, with its greater transparency and opportunity for creditor input.  REJECT the SunCal Plan. |
| *Special Reasons to REJECT the SunCal Plan for holders of **Reliance Claims*** |
| **REJECT the SunCal Plan because the "Litco Offer" is unfunded, illusory and represents a highly speculative gamble.**  SunCal, after seeking a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer."  Read the introduction to SunCal's Disclosure Statement.  Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  *The Lehman Lenders believe that Suncal will never raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.*  Without someone actually committing to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% to purchase Reliance Claims and litigation rights.  *Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected.*  If you gamble that such a higher offer could be found and the Lehman Plan does not receive sufficient votes, when the SunCal Plan fails, as the Lehman Lenders believe it will, you risk having lost the opportunity now in your grasp to select the Lehman Plan's funded offer for prompt payment. We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan. |
| *Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims*** |
| **REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**<br>Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved, leaving you thereafter to fight for payment with the Lehman Lenders and any other secured creditors to determine whose lien is junior or senior.  In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan. |

Document comparison by Workshare Professional on Wednesday, August 17, 2011 3:13:20 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242597/7 |
| Description | DOCS_LA-#242597-v7-No_Letter:_Voluntary_Debtors_Group_1_(55%_Offer) |
| Document 2 ID | PowerDocs://DOCS_LA/242597/9 |
| Description | DOCS_LA-#242597-v9-No_Letter:_Voluntary_Debtors_Group_1_(55%_Offer) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 6 |

# EXHIBIT E

**EXHIBIT E**

| |
|---|
| ***Statement of the Lehman Lenders*** <br> ***Urging You REJECT the SunCal Plan For Group II Voluntary Debtors:*** <br> <u>***SunCal Beamont and SunCal Johannson***</u> |

**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents[1] (the "<u>SunCal Plan</u>")** and urge you to vote to ACCEPT the competing plan proposed by the Lehman Lenders[2] (the "<u>Lehman Plan</u>").

**Competing Plan Strategies**

The primary assets of the Group II Voluntary Debtors are their Projects.

**SunCal[3] is *hoping to find* an offer to purchase the Projects and pay creditors. <u>Creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims</u>.** The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million. Claims against SunCal Beaumont approximate $1.77 million and none of these amounts are owed to the Lehman Lenders. SunCal estimates the Johannson Ranch Project to be worth $540,000. Claims against SunCal Johannson approximate $573,000 and none of these amounts are owed to the Lehman Lenders. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).) Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

**The Lehman Lenders have *made* a funded offer to receive the Projects for a prompt payment to creditors.[4] <u>Creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.</u>** The Lehman Lenders hold a pledge of the equity ownership interests of the Debtors and have filed the Lehman Plan to protect their rights to the equity in the Projects. Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the Projects at prices substantially in excess of SunCal's estimated values. The Lehman Lenders have offered **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate*), which offer exceeds the $1.77 million of estimated debt. The Lehman Lenders have offered **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate*), which offer is substantially in excess of the $573,000 of estimated debt. <u>Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%.</u>

**Your Options**

The SunCal Plan and competing Lehman Plan both apply to all Group II Voluntary Debtors. If you are given the opportunity to vote to accept or reject more than one plan, you may vote to : (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>**Reasons to REJECT the SunCal Plan:**</u>

**REJECT the SunCal Plan because it is not likely to result in more cash to pay creditors, is speculative, is unfunded and because the Lehman Plan represents a funded offer likely to result in full prompt payment to creditors based on higher values.** Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed. Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain such funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan based on Project prices substantially in excess of SunCal's estimated values.* <u>We urge you to vote to REJECT the SunCal Plan.</u>

<u>**Reason to Instead ACCEPT the Competing Lehman Plan**</u>

***The Lehman Plan is better: it is* funded, more certain, less contingent and will result in prompt payment to creditors.** Under the Lehman Plan, the Lehman Lenders are paying consideration far in excess of SunCal's value estimates for the Projects, and creditors are projected to be paid 100% of their allowed claims. Current estimates and projections are that the contingencies to the Lehman Plan all will be met. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, as set forth above, the SunCal Plan remains contingent, lacking funding and lacking any current purchase offers. <u>We urge you to vote to ACCEPT the Lehman Plan.</u>

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] Secured trust deed creditors on abandoned parcels must look to their collateral.

# EXHIBIT F

**EXHIBIT F**

| |
|---|
| *Statement of the Lehman Lenders*<br>*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:*<br>*SCC Communities, Del Rio & Tesoro* |

<u>**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents**</u>[1] **(the "SunCal Plan")** and urge creditors of SCC Communities and Tesoro to vote to ACCEPT the competing plan of the Lehman *Lenders*[2] (the "<u>Lehman Plan</u>").

The SunCal Plan applies to all Group III Voluntary Debtors and the competing Lehman Plan applies to all Group II Voluntary Debtors other than Del Rio.[3]  If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan</u>.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors.  *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal*[4] *to find adequate funding, if the Lehman Plan does not receive sufficient votes then, the Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors any time soon.*

| |
|---|
| *Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan** |

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*

The primary asset of Del Rio is anticipated CFD bond proceeds and of SCC Communities and Tesoro are their Projects.  <u>The Lehman Lenders have liens against these assets that are far in excess of any parties' estimates of the asset values.  As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do).</u>  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.***

The SunCal Plan commits to nothing for holders of General Unsecured Claim who must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner.  Please consider that even if SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors.  Furthermore, <u>if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.</u>  The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. <u>Moreover, SunCal also fails to identify any source for funding needed to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.</u>  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal claims it will fund

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] As discussed below, the Lehman Lenders believe any plan for Del Rio is premature due to unresolved open issue.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**EXHIBIT F**

---

*Statement of the Lehman Lenders*
*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:*
*SCC Communities, Del Rio & Tesoro*

---

certain of the required payments itself, nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement (there are known to be over $7.9 million in unsatisfied judgments outstanding against SunCal). SunCal's Disclosure Statement acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "is not intended to be funded by the SunCal Plan Proponents." Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Lenders believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors* (and seek to resolve issues to enable progress as to Del Rio).**

To obtain ownership of the Projects, the Lehman Plan identifies the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims. The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers and being, in the Lehman Lenders' views, unconfirmable.

---

*Special Reasons to REJECT the SunCal Plan for Holders of all **voting Claims against Del Rio***

---

**REJECT the SunCal Plan because it is premature and incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**

Del Rio has no Project, only anticipated proceeds from a Communities Facilities District (CFD) bond issuance, to be disbursed to Del Rio upon completion of a sports park. Unpaid creditors seek payment from such proceeds, against which the Lehman Lenders hold a lien, and there were prior, inappropriate distributions from escrow. SunCal proposes selling disputed rights to the CFD bond proceeds, subject to the Lehman Lenders' lien, without ~~showing~~having included in their Disclosure Statement any description of any offer, including any conditions to such offer, and without having shown that there is a market for these rights or that they have any experience in selling such speculative rights. The SunCal Plan itself does not resolve the open issues over rights to the CFD bond proceeds, will not help to resolve those issues ~~to be resolved~~ faster and will not get creditors paid sooner than if no plan were confirmed at all. (If someone wants to buy your Claims, they can do so without a Plan.) The SunCal Plan's only ~~affords~~accomplishment would be to afford SunCal veto rights over any later resolution of these issues. If the relevant matters are not to be settled (or rights sold) through a disclosed offer in a plan upon which you vote, ~~they should~~any settlement offer or sale, instead, ~~be resolved in~~should occur during, the chapter 11 case, with its greater transparency and opportunity for creditor input. REJECT the SunCal Plan.

Document comparison by Workshare Professional on Wednesday, August 17, 2011 3:15:27 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242599/6 |
| Description | DOCS_LA-#242599-v6-No_Letter:_Voluntary_Debtors_Group_III_(no_offer;_Lehman_Liens) |
| Document 2 ID | PowerDocs://DOCS_LA/242599/7 |
| Description | DOCS_LA-#242599-v7-No_Letter:_Voluntary_Debtors_Group_III_(no_offer;_Lehman_Liens) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |
| Deletions | 6 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 18 |

# EXHIBIT G

**EXHIBIT G**

---

***Statement of the Lehman Lenders***
***Urging You to REJECT the SunCal Plan For Group IV Voluntary Debtors:***
***SJD Partners, Ltd. and SJD Development Corp.***

---

**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents**[1] **(the "SunCal Plan").**
You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the SunCal Plan for SJD Partners, Ltd. ("SJD Partners") and SJD Development Corp.

---

*Reasons to* **REJECT** *the SunCal Plan*

---

**The SunCal Plan is premature, incomplete and unfunded, offers nothing concrete, eliminates close court supervision and affords SunCal**[2] **veto rights over any future settlement of the SunCal/Lehman Litigation.**

*Generating free cash from the Pacific Point Project depends upon resolving the SunCal/Lehman Litigation.* SJD Development Corp. owns interests in SJD Partners. SJD Partners only asset is its claim in the litigation brought by SunCal[3] against the Lehman Lenders[4] (the "SunCal/Lehman Litigation") to set aside the prepetition foreclosure by the Lehman Lenders of the Pacific Point Project, that had been owned by SJD Partners. A first trust deed remains against the Project, for which the related loan is majority owned by Lehman RE, a Bermuda entity in a court receivership, with a minority interest held by the Lehman Lenders. Due to its receivership, Lehman RE and the Lehman Lenders are not under common control.

*Under the SunCal Plan, unsecured creditors will receive little unless SunCal prevails in the SunCal/Lehman Litigation.* The Plan's provisions for payments from Litco of 1% to allowed Reliance Claims is hardly material and, in any event, SunCal itself undercuts the notion of attributing any significance to possible Litco payments, especially payments only due once Litco has title to the Project free and clear of liens. Read the introduction to SunCal's Disclosure Statement. It reveals that Litco is an unfunded shell entity, yet to be formed, that no one yet has agreed to fund Litco and that "at the present time, free and clear title to the Pacific Point Project cannot be obtained absent the consent of Lehman ALI." Without having already found someone actually committed to fund the Litco, its offer to pay 1% now (and 49% later for allowed Reliance Claims if Litco obtains the Project free and clear of liens) is nothing more than SunCal's speculative hope that someone later will make such an offer at the fixed price that SunCal selected.

SunCal does not even have the funds needed to continue prosecuting the SunCal/Lehman Litigation (or to make payments required to confirm the SunCal Plan or to maintain the Project pending sale in the unlikely circumstance that it were reacquired). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement.

*There is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster.* **Yet, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement of the SunCal/Lehman Litigation.** In fact, *the only purpose served by confirming the SunCal Plan is to afford these veto rights to SunCal over any future settlement of the SunCal/Lehman Litigation, reduce Court supervision and deny you the right to vote upon or control an eventual settlement*. The Lehman Lenders believe that SunCal's own claims will be substantially disallowed. If it controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Project.

*Once the plans of the related chapter 11 debtors are resolved, the Lehman Lehman Lenders are hopeful that* ~~*fruitful*~~ *settlement discussions can proceed and believes those negotiations are better conducted with the transparency afforded by the pending chapter 11 cases, in which creditors still have a forum and an ability to assert control.*

We urge you to REJECT the SunCal Plan.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] The Lehman Lenders are Lehman Commercial Paper Inc. and Lehman ALI, Inc. Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

Document comparison by Workshare Professional on Wednesday, August 17,
2011 6:57:25 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242756/7 |
| Description | DOCS_LA-#242756-v7-No_Letter:_Voluntary_Debtor_Group_IV_(SJDs) |
| Document 2 ID | PowerDocs://DOCS_LA/242756/9 |
| Description | DOCS_LA-#242756-v9-No_Letter:_Voluntary_Debtor_Group_IV_(SJDs) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 2 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 4 |

# EXHIBIT H

# EXHIBIT H

## LEHMAN CREDITORS' INTRODUCTORY STATEMENT

You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eight "Trustee Debtors":[1]
(1) <u>Delta Coves Ventures, LLC</u>; (2) <u>LB-L-SunCal Northlake, LLC</u>; (3) <u>SunCal Heartland, LLC</u>; (4) <u>SunCal Marblehead, LLC</u>; (5) <u>SunCal Oak Knoll, LLC</u>; (6) <u>SunCal Oak Valley, LLC</u>; (7) <u>SunCal PSV, LLC</u>; and (8) <u>SunCal Torrance, LLC</u>.

### *Instructions and Recommendation*

**We urge you to vote to <u>ACCEPT the accompanying plan of the Trustee[2] and Lehman Creditors[3]</u>** (the "<u>Trustee/Lehman Plan</u>").  If you are believed eligible to vote, a Ballot should be enclosed. Please complete and return it by September 19, 2011. Before voting, please review the Lehman Plan and the accompanying *First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors Proposed By The Trustee And Lehman Creditors* (the "<u>Lehman Disclosure Statement</u>"), which you should review in full, perhaps focusing first on its summary, appearing just after its cover pages.  If you are believed to be eligible to vote, a Ballot should be enclosed. Please complete and return the Ballot as instructed by September 19, 2011.

*We also urge creditors of all Debtors to <u>REJECT the competing plans proposed by the SunCal Plan Proponents[4]</u> (the "SunCal Plan") for, among others, the reasons set forth below.*  In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Lehman Plan are also referenced, although such reasons are more fully set forth in the Lehman Disclosure Statement.  If you nonetheless choose <u>to accept the SunCal Plan, you</u> are urged, as you may, to also <u>ACCEPT the Trustee/Lehman Plan</u>.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.  *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal[5] to find adequate funding, if the Trustee/Lehman Plan does not receive sufficient votes to ACCEPT it, then, the Trustee/Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors this year or any time soon. <u>Please note</u>:*  The SunCal Plan Proponents have not filed a competing plan for <u>LB-L-SunCal Northlake, LLC</u> and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtor.

### *Competing Plan Strategies and Reasons to **REJECT** the competing SunCal Plan*

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.** *Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects. <u>The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values.  As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), which may take years to resolve, or finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do)</u>.

***SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.***  The SunCal Plan commits to nothing for holders of General Unsecured Claims who must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner.  Please consider that even if SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors. <u>Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer.</u>  The Lehman Creditors believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact holders of Reliance Claims.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims"

---

[1] Capitalized terms not defined herein have the meaning set forth in the definition exhibits to the accompanying Disclosure Statement.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("<u>Northlake</u>") and OVC Holdings, LLC.

[4] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

[5] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**EXHIBIT H**

<u>LEHMAN CREDITORS' INTRODUCTORY STATEMENT</u>

and their holders' associated litigation rights against the Lehman Creditors, but <u>this Litco Offer is illusory.</u> By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify any source for funding to prosecute the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan</u> (including $22.3 million payable to the Lehman Creditors for postpetition expense loans). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offer such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims. <u>The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets.</u> Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

*Special Reasons to REJECT the competing SunCal Plan for holders of **Reliance Claims***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded, illusory and represents a highly speculative gamble.** SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims (and the associated litigation rights in the SunCal/Lehman Litigation of the creditors holding Reliance Claims) at a level, just higher, of 55% of the allowed Reliance Claims. Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement.</u> SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." *The Lehman Creditors believe that Suncal will never be able to raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.* Without having already found someone actually committed to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% or anything at all to purchase Reliance Claims and litigation rights. Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected. If you gamble that such a higher offer could be found and the Trustee/Lehman Plan does not receive sufficient votes, when the SunCal Plan fails, as the Lehman Creditors believe it will, you risk having lost the opportunity to select the Trustee/Lehman Plan's funded offer for prompt payment. We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan.</u>

*Special Reasons to REJECT the competing SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.** SunCal proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved, leaving you thereafter to fight for payment with the Lehman Creditors and any other secured creditors to determine whose lien is junior or senior. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the Lehman Creditors' funded offer for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan.</u>

# EXHIBIT I

**Exhibit I**

LEHMAN LENDERS' INTRODUCTORY STATEMENT

You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eleven "Voluntary Debtors":[1]

A. *Group I Debtors*:  (1) Acton Estates, LLC; (2) Palmdale Hills Property, LLC; (3) SCC Communities, LLC; (4) Suncal Bickford Ranch, LLC; (5) SunCal Communities I, LLC; (6) Tesoro SF, LLC; (7) Summit Valley, LLC; and

B. *Group II Debtors*:  (8) Kirby Estates, LLC; (9) Seven Brothers, LLC; (10) Suncal Beaumont Heights, LLC; and (11) Suncal Johannson Ranch, LLC.

*Instructions and Recommendation*

**We urge you to vote to ACCEPT the accompanying plan of the Lehman Lenders[2]** (the "Lehman Plan").  If you are believed eligible to vote, a Ballot should be enclosed. *Please complete and return it by September 19, 2011. Before voting, please review the Lehman Plan and the accompanying First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eleven Voluntary Debtors Proposed By The Lehman VD Lenders* (the "Lehman Disclosure Statement"), which you should review in full, perhaps focusing first on its summary, appearing just after its cover pages.

*We also urge you to REJECT the competing plan proposed by the SunCal Plan Proponents[3] (the "SunCal Plan") for, among others, the reasons set forth below.*  In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Lehman Plan are also referenced, although such reasons are more fully set forth in the Lehman Disclosure Statement. Even if you nonetheless choose to accept the SunCal Plan, you are urged, as you may, to also ACCEPT the Lehman Plan. If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.  *Because there is risk that the SunCal Plan will fail regardless of your vote, due to, among other things, the inability of SunCal[4] to find adequate funding, if the Lehman Plan does not receive sufficient votes to ACCEPT it, then, the Lehman Plan too may not be confirmed and nothing would be likely to be paid to creditors any time soon.*

*Please note*:  The SunCal Plan Proponents have not filed a competing plan for (a) Kirby Estates, LLC, (b) Seven Brothers, LLC, (c) Suncal Communities I, LLC and (d) Suncal Summit Valley, LLC and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtors.

*Competing Plan Strategies and Reasons to REJECT the competing SunCal Plan for **Creditors of Group I Debtors***

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values.  As a result, no one disputes that unsecured creditors will receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do).  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement.***  Under the SunCal Plan, holders of non-priority, unsecured claims must depend on SunCal's litigation strategy. Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner.  If SunCal prevails in the SunCal/Lehman Litigation

---

[1] Capitalized terms not defined herein have the meaning set forth in the definition exhibits to the accompanying Disclosure Statement.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[3] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**Exhibit I**

LEHMAN LENDERS' INTRODUCTORY STATEMENT

(which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors.  Moreover, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.  The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact certain holders of Reliance Claims to whom the Litco Offer was made.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" against certain Debtors, as described below, and their holders' associated litigation rights against the Lehman Lenders, but this Litco Offer is illusory.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below).  SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims.  The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

*Special Reasons to REJECT the competing SunCal Plan for holders of*
***Reliance Claims to whom the Illusory Litco Offer Applies***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded, illusory and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims of creditors of certain Group I Debtors (and the associated litigation rights in the SunCal/Lehman Litigation of such creditors holding such Reliance Claims) at 55% of the allowed Reliance Claims.  (The Litco Offer was not made to creditors of SCC Communities or Tesoro.)  Yet, despite providing for this supposed Litco Offer in their plan, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement.  Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  ***The Lehman Lenders believe that Suncal will never raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.***  Without someone actually committing to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% to purchase certain Reliance Claims and litigation rights.  ***Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected.*** If you gamble that such a higher offer could be found and the Lehman Plan does not receive sufficient votes, when the SunCal Plan fails, as the Lehman Lenders

**Exhibit I**

| |
|---|
| LEHMAN LENDERS' INTRODUCTORY STATEMENT |

believe it will, you risk having lost the opportunity now in your grasp to select the Lehman Plan's funded offer for prompt payment.  We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

*Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved, leaving you thereafter to fight for payment with the Lehman Lenders and any other secured creditors to determine whose lien is junior or senior.  In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

*Reasons to REJECT the SunCal Plan for **Creditors of Group II Debtors SunCal Beaumont and SunCal Johannson***

The primary assets of SunCal Beaumont and SunCal Johannson are their Projects.  The Lehman Lenders have no liens or claims against these Debtors or their Projects, but hold a pledge of the equity ownership interests in these Debtors.

*SunCal is planning an auction of the Projects and creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims.*  The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million.  Claims against SunCal Beaumont approximate $1.77 million. SunCal estimates the Johannson Ranch Project to be worth $540,000.  Claims against SunCal Johannson approximate $573,000. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).)  Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

*The Lehman Lenders have made a funded offer to receive the Projects and creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.*[5]   The Lehman Lenders have filed the Lehman Plan to protect their rights to the equity in the Projects.  Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the Projects at prices substantially in excess of SunCal's estimated values, offering **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate* and exceeding the $1.77 million of estimated debt) and offering **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate* and substantially exceeding the $573,000 of estimated debt). <u>Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%</u>.

*The Lehman Plan and Its Funded Offers are Better.*  Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed.  Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain needed funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan, which offer is based on Project prices substantially in excess of SunCal's estimated values*.

<u>We urge you to vote to ACCEPT the Lehman Plan and REJECT the SunCal Plan</u>.

---

[5] Secured trust deed creditors on abandoned parcels must look to their collateral.

# EXHIBIT J

**Exhibit J**

| |
|---|
| *Statement of the Lehman Lenders* |
| *Urging You to REJECT the SunCal Plan For* |
| *SunCal Emerald Meadows, LLC* |

**We urge you to REJECT the accompanying plan proposed for SunCal Emerald Meadows, LLC by the SunCal Plan Proponents[1] (the "SunCal Plan").** You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the SunCal Plan for SunCal Emerald Meadows, LLC ("SunCal Emerald"). For other creditors subject to the accompanying SunCal Plan who are creditors of (1) Palmdale Hills Property, LLC, (2) SunCal Bickford Ranch, LLC, or (3) Acton Estates, LLC, a separate statement of the Lehman Lenders[2] with respect to their recommendation and reasons therefor is included with the competing plan of the Lehman Lenders (the "Lehman Plan") applicable to those Debtors. If you are a creditor of such other Debtors, please review the Lehman Lenders' statement accompanying the competing Lehman Plan, the Lehman Plan itself and its accompanying disclosure statement, including the summary thereof appearing after its cover pages.

| |
|---|
| *Reasons for Creditors of SunCal Emerald to REJECT the SunCal Plan* |

**REJECT the SunCal Plan because it is premature, is incomplete, , is unfunded, offers nothing concrete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation, pending constructive trust claims and the lien of the Evangelical Christian Credit Union* ("ECCU"). The Emerald Meadows Project is the primary asset of SunCal Emerald. Four creditors, who assert constructive trust Claims against the Project, objected to the Lehman Lenders' prior proposed plan, arguing any Emerald Meadows Project disposition required first a resolution of their claims. Recently another lender, ECCU, asserted a lien of over $6 million against portions of this Project (which SunCal values in the entirety at $6.1 million). Whether or not you would find favorable any resolution of these issues that the Lehman Lenders could devise, that these issues remain today unresolved accounts for the absence of any present plan for this Debtor from the Lehman Lenders. Moreover, the Lehman Lenders have their own liens against the Emerald Meadows Project that are far in excess of any parties' estimates of the asset values. As a result, unsecured creditors will receive nothing unless the constructive trust claims are resolved, the ECCU lien is addressed and either SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation") or SunCal finds someone to buy your claims (something SunCal itself will not do, and has not yet found anyone else to do). Absent a consensual resolution of these matters, they may take years to resolve.

*Unresolved issues make the SunCal Plan premature and incomplete.* The SunCal Plan does not resolve any of these open issues or resolve the SunCal/Lehman Litigation, it will not help those issues to be resolved faster and it will not get creditors paid sooner than if no plan were confirmed at all. REJECT the SunCal Plan.

*The SunCal Plan does nothing other than afford SunCal veto right over any future settlement of the SunCal/Lehman Litigation, the constructive trust claims and the ECCU lien.* Under the SunCal Plan, holders of General Unsecured Claim must depend on SunCal's litigation strategy as to the constructive trust claims, the ECCU lien and the SunCal/Lehman Litigation. Yet, because nothing in the SunCal Plan would cause these matters to reach a resolution faster or get creditors paid sooner, the only material effect of the SunCal Plan would be to give SunCal, whose interests are not the same as yours, a veto right over any future settlement. SunCal's own claims are likely to be substantially disallowed. If SunCal controls settlement, it could hold out for non-monetary

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

**Exhibit J**

| |
|---|
| ***Statement of the Lehman Lenders*** <br> ***Urging You to REJECT the SunCal Plan For*** <br> ***SunCal Emerald Meadows, LLC*** |

terms unimportant to you, such as giving it control over development of the Projects.

*The Litco Offer to holders of Reliance Claims is Illusory.* The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" against certain Debtors, including SunCal Emerald, along with their holders' associated litigation rights against the Lehman Lenders, but this Litco Offer is illusory. *By its own admission*, SunCal has no funding to make good on that "offer." SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims of certain Debtors, including SunCal Emerald (and the associated litigation rights in the SunCal/Lehman Litigation of the holders of such Reliance Claims), at 55% of the allowed Reliance Claims. Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement. Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." *The Lehman Lenders believe that Suncal will never raise the money to fund Litco because any buyer of these Reliance Claims and litigation rights gets nothing other than an interest in hotly disputed litigation.* Without someone actually committing to fund the Litco Offer, it is unfair to call it an offer at all and there is no way to know that anyone actually would pay 55% to purchase Reliance Claims and litigation rights. *Without funding in place, the Litco Offer is nothing more than SunCal's speculative hope that it will find someone to actually make the offer to purchase Reliance Claims and litigation rights at the fixed price that SunCal selected.* We urge you to REJECT the SunCal Plan.

*SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.* Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

*To enable prompt payment to creditors, there must be a resolution of the open issues with the creditors alleging to be beneficiaries of a constructive trust and the ECCU and there must be a settlement of the SunCal/Lehman Litigation.* The SunCal Plan does not even claim to resolve any of these open issues. Once the plans of the related chapter 11 debtors are resolved, the Lehman Lehman Lenders are hopeful that settlement discussions can proceed and believes those negotiations are better conducted with the transparency afforded by the pending chapter 11 cases, in which creditors still have a forum and an ability to assert control.

**We urge you to REJECT the SunCal Plan.**

# EXHIBIT K

**EXHIBIT K**

| |
|---|
| *Statement of the Lehman Lenders*<br>*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtor:*<br>*North Orange Del Rio Land, LLC* |

<u>**We urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents.**</u>*[1]*  You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the accompanying Plan (the "<u>SunCal Plan</u>") for North Orange Del Rio Land, LLC ("<u>Del Rio</u>"). For creditors of (1) <u>SCC Communities, LLC</u> or (2) <u>Tesoro SF, LLC</u>, a separate statement of the Lehman Lenders[2] with respect to their recommendation and reasons therefor is included with the competing plan of the Lehman Lenders (the "<u>Lehman Plan</u>") applicable to those Debtors.  If you are a creditor of such Debtors, please review the Lehman Lenders' statement accompanying the competing Lehman Plan, the Lehman Plan itself and its accompanying disclosure statement, including the summary thereof appearing after its cover pages.

| |
|---|
| *Reasons to **REJECT** the SunCal Plan* |

**REJECT the SunCal Plan because it is premature and incomplete, is unfunded, offers nothing concrete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**
*Generating free cash from the anticipated CFD Bond proceeds depends upon resolving the SunCal/Lehman Litigation.* Del Rio has no Project, only anticipated proceeds from a Communities Facilities District (CFD) bond issuance, to be disbursed to Del Rio upon completion of a sports park.  <u>The Lehman Lenders have liens against these proceeds that are far in excess of any parties' estimates of proceeds</u>. Challenges have been asserted to the Lehman Lenders' liens and claims (the "<u>SunCal/Lehman Litigation</u>").

*Unresolved issues make the SunCal Plan premature and incomplete. Yet, it affords SunCal veto rights over any settlement of the unresolved issues.*  SunCal proposes selling disputed rights to the CFD bond proceeds, subject to the Lehman Lenders' lien, without having included in their Disclosure Statement any description of any offer, including any conditions to such offer, and without having shown that there is a market for these rights or that they have any experience in selling such speculative rights.  The SunCal Plan itself does not resolve the open issues over rights to the CFD bond proceeds, will not help to resolve those issues faster and will not get creditors paid sooner than if no plan were confirmed at all.  (If someone wants to buy your Claims, they can do so without a Plan.) The SunCal Plan's only accomplishment would be to afford SunCal veto rights over any later resolution of these issues.  If the relevant matters are not to be settled (or rights sold) through a disclosed offer in a plan upon which you vote, any settlement offer or sale, instead, should occur during, the chapter 11 case, with its greater transparency and opportunity for creditor input. <u>REJECT the SunCal Plan</u>.

**SunCal wants to continue the SunCal/Lehman Litigation and the SunCal Plan gives SunCal veto right over any future settlement of that litigation.**  The SunCal Plan commits to nothing for holders of General Unsecured Claim.  If no sale of the disputed rights to CFD bond proceeds occurs, they, instead, must depend on SunCal's litigation strategy.  Yet, there is nothing in the SunCal Plan that would cause the SunCal/Lehman Litigation to reach a resolution faster or get creditors paid sooner.  Please consider that even if SunCal prevails in the SunCal/Lehman Litigation (which we believe is highly unlikely), litigation and appeals would delay for years any payment to creditors.  <u>Moreover, SunCal also fails to identify any source for the funding needed to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan</u>.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal claims it will fund certain of the required payments itself, nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement (there are known to be over $7.9 million in unsatisfied judgments outstanding against SunCal).  SunCal's Disclosure Statement acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "is not intended to be funded by the SunCal Plan Proponents."  There are also other defects in the SunCal Plan that the Lehman Lenders believe will prevent it from being confirmed.

We urge you to <u>REJECT the SunCal Plan</u>.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

# EXHIBIT L

Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings LLC and OVC Holdings LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>    Jointly Administered Debtors and<br>    Debtors-In-Possession.<br>_____<br>Affects:<br>☐  All Debtors<br>☒  Palmdale Hills Property, LLC<br>☒  SunCal Beaumont Heights, LLC<br>☐  SCC/Palmdale, LLC<br>☒  SunCal Johannson Ranch, LLC<br>☐  SunCal Summit Valley, LLC<br>☒  SunCal Emerald Meadows, LLC<br>☒  SunCal Bickford Ranch, LLC<br>☒  Acton Estates, LLC<br>☐  Seven Brothers, LLC<br>☒  SJD Partners, Ltd.<br>☒  SJD Development Corp.<br>☐  Kirby Estates, LLC<br>☒  SunCal Communities I, LLC<br>☐  SunCal Communities III, LLC<br>☒  SCC Communities, LLC<br>☒  North Orange Del Rio Land, LLC<br>☒  Tesoro SF, LLC<br>☒  LB-L-SunCal Oak Valley, LLC<br>☒  SunCal Heartland, LLC<br>☐  LB-L-SunCal Northlake, LLC<br>☒  SunCal Marblehead, LLC<br>☒  SunCal Century City, LLC<br>☒  SunCal PSV, LLC<br>☒  Delta Coves Venture, LLC<br>☒  SunCal Torrance, LLC<br>☒  SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**ORDER REGARDING THE FORM OF**<br>**THE PROPOSED PLAN**<br>**SOLICITATION LETTERS**<br><br>Hearing:     August 22, 2011<br>Time:        2:00 p.m.<br>Place:       Courtroom 5A<br>             411 West Fourth Street<br>             Santa Ana, CA 92701 |

On July 22, 2011, the Court held a hearing (the "<u>Disclosure Statement Hearing</u>") on the approval of the disclosure statements (collectively, the "Disclosure Statements") filed by Lehman Commercial Paper Inc., Lehman ALI, Inc., Northlake Holdings LLC, and OVC Holdings LLC (the "<u>Lehman Creditors</u>") and the chapter 11 trustee for the Involuntary Debtors (the "<u>Trustee</u>") and the Voluntary Debtors[1] and SCC Acquisitions Inc. (collectively, the "<u>SunCal Plan Proponents</u>").

At the Disclosure Statement hearing, the Court authorized the Lehman Creditors, Trustee, SunCal Plan Proponents, the Official Committee of Unsecured Creditors for the Voluntary Debtors (the "<u>VD Committee</u>"), and the Official Committee of Unsecured Creditors for the Involuntary Debtors (the "<u>TD Committee</u>") to each file proposed position statements (collectively the "<u>Solicitation Letters</u>") regarding the plans of reorganization filed by the Lehman Creditors and the SunCal Plan Proponents.

On August 12, 2011, the VD Committee [Docket No. 2557], the Lehman Creditors [Docket No. 2558], the SunCal Plan Proponents [Docket No.2559], and the TD Committee [Docket No. 2560], each filed their proposed Solicitation Orders.  On August 17, 2011, the VD Committee [Docket No. 2575], the Lehman Creditors [Docket No. ____], the SunCal Plan Proponents [Docket No. ____], and the TD Committee [Docket No. ____], each filed their responses to the proposed Solicitation Letters (collectively, the "<u>Responses</u>").

On August 22, 2011, the Court held a hearing (the "<u>Hearing</u>") regarding the final form of the proposed Solicitation Letters; and the Court having reviewed the proposed Solicitation Letters and the Responses thereto and considered the arguments presented at the Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**:

1.    The Solicitation Letters of the VD Committee and TD Committee are approved in the form or substantially the form as submitted.

2.    The Lehman Creditors' Solicitation Letters are approved in the form or substantially the form attached as **Exhibit A** through **Exhibit I** to the *Lehman Creditors' (1) Limited Objection to*

---

[1] The "Voluntary Debtors" in these cases are those debtors that remain debtors-in-possession and for which no chapter 11 trustee has been appointed.

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*SunCal Proponents' Proposed Plan Solicitation Letters; (2) Errata and Partial Response to Voluntary Committee Statement; and (3) Response Re SunCal's Alternative Formulation of Yes/No Letters,* filed August 17, 2011 (the "Lehman Creditors' Limited Objection").

3. Each of the SunCal Plan Proponents' Solicitation Letters are approved in the form or substantially the form submitted, provided that they first must be revised as described in the Lehman Creditors' Limited Objection prior to their inclusion with any solicitation materials to be sent to creditors. Specific required changes to the SunCal Plan Proponents' Solicitation Letters are as follows:

a. The third paragraph on page 3 of Exhibit 1 to the *SunCal Plan Proponents' Proposed Plan Solicitation Letters* (the "SunCal Letters Pleading"), filed August 12, 2011 [Docket No. 2559] shall be replaced in its entirety by the following:

> The SunCal Proponents Palmdale Hills Plan provides for sale of the Ritter Ranch Project, free and clear of liens, claims and any purported credit bid rights of Palmdale Hills' primary secured creditor, LCPI. After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

b. The first full paragraph on page 4 of Exhibit 1 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained. Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco. During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

c. The first bulleted paragraph on page 4 of Exhibit 1 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

3

DOCS_SF:77870.9 52063-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Palmdale Hills Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Palmdale Hills Plan.

d.    The third bulleted paragraph on page 4 of Exhibit 1 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The Lehman Palmdale Hills Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the Palmdale Hills Estate, as well as prospective injunctions against both Creditors and even government agencies.

e.    The fourth paragraph on page 7 of Exhibit 2 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Based upon the SunCal Plan Proponents' analysis of the value of the Beaumont Heights Project and the estimated aggregate amount of Allowed Claims against the SunCal Beaumont Estate ($770,885), there is a reasonable likelihood that all Allowed Claims will be paid in full under the SunCal Proponents Beaumont Plan within thirty (30) days after the Confirmation Date.

f.    The first bulleted paragraph on page 8 of Exhibit 2 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Based on the SunCal Plan Proponents' analysis of the value of the Beaumont Heights Project, the SunCal Proponents Beaumont Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Beaumont Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case.

g.    The fourth paragraph on page 9 of Exhibit 3 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Based upon the SunCal Plan Proponents' analysis of the value of the Johannson Ranch Project and the estimated aggregate amount of Allowed Claims against the SunCal Johannson Estate ($586,162), there is a reasonable likelihood that all Allowed Claims will be paid in

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

substantial part under the SunCal Proponents Johannson Plan within thirty (30) days after the Confirmation Date.

h.    The first bulleted paragraph on page 10 of Exhibit 3 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Based on the SunCal Plan Proponents' analysis of the value of the Johannson Ranch Project, the SunCal Proponents Johannson Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Johannson Plan's Distribution are subject to as much as a 135 day wait for distributions and impermissibly cancels equity in an admittedly solvent case. *See* Exhibit 3, p. 10.

i.    The third paragraph on page 11 of Exhibit 4 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The SunCal Proponents Emerald Plan provides for sale of the Emerald Meadows Project, free and clear of liens, claims and any purported credit bid rights of SunCal Emerald's primary secured creditor, LCPI. After disputes regarding LCPI's liens, the lien of the Evangelical Christian Credit Union (discussed below) and certain constructive trust claims are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

j.    The fourth paragraph on page 12 of Exhibit 4 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

k.    The first bulleted paragraph on page 13 of Exhibit 4 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

5

1

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Emerald Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Emerald Plan.

2

3

      l.    The third bulleted paragraph on page 13 of Exhibit 4 to the SunCal Letters Pleading

4

shall be replaced in its entirety by the following:

5

6

The Lehman Emerald Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Emerald Estate, as well as prospective injunctions against both Creditors and even government agencies.

7

8

      m.    The third paragraph on page 15 of Exhibit 5 to the SunCal Letters Pleading shall be

9

10

replaced in its entirety by the following:

11

12

The SunCal Proponents Bickford Plan provides for sale of the Bickford Ranch Project, free and clear of liens, claims and any purported credit bid rights of SunCal Bickford's primary secured creditor, LCPI. After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

13

14

15

16

      n.    The first paragraph on page 16 of Exhibit 5 to the SunCal Letters Pleading shall be

17

replaced in its entirety by the following:

18

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained. Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco. During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

19

20

21

22

23

24

25

      o.    The first bulleted paragraph on page 16 of Exhibit 5 to the SunCal Letters Pleading

26

shall be replaced in its entirety by the following:

27

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan

28

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Proponents' Bickford Plan in contrast to only a potential payment by
Lehman of 40 or 50 percent under the Lehman Bickford Plan.

2

3    p.    The third bulleted paragraph on page 16 of Exhibit 5 to the SunCal Letters Pleading

4    shall be replaced in its entirety by the following:

5    The Lehman Bickford Plan is not confirmable because it
inappropriately provides that the Lehman Entities will receive full

6    releases from the SunCal Bickford Estate, as well as prospective
injunctions against both Creditors and even government agencies.

7

8    q.    The third paragraph on page 19 of Exhibit 6 to the SunCal Letters Pleading shall be

9    replaced in its entirety by the following:

10    The SunCal Proponents Acton Plan provides for sale of the Acton
Project, free and clear of liens, claims and any purported credit bid

11    rights of Acton's primary secured creditor, LCPI.  After disputes
regarding LCPI's liens are resolved, the Net Sale Proceeds from this

12    sale will then be distributed to Creditors holding Allowed Claims in
accordance with their rights and priorities under the Bankruptcy Code.

13

14    r.    The third full paragraph on page 20 of Exhibit 6 to the SunCal Letters Pleading shall

15    be replaced in its entirety by the following:

16    Notwithstanding the lack of a firm commitment for financing, the
SunCal Plan Proponents are confident that such financing will be

17    obtained.  Even though the financing sought would not be for the
purpose of purchasing real estate, but instead, would be for purchasing

18    litigation rights to distributions from Net Sale Proceeds only payable if
the Lehman Creditors' liens are defeated or their claims subordinated,

19    nonetheless, the SunCal Plan Proponents believe that their past
experience in raising funds for real estate development projects is

20    instructive of their ability to raise funds for Litco.  During the post-
petition period, now approaching three years, SunCal has been

21    involved in a closing of financing transactions in other matters
exceeding the amount of $150 million.

22

23    s.    The first bulleted paragraph on page 20 of Exhibit 6 to the SunCal Letters Pleading

24    shall be replaced in its entirety by the following:

25    The consideration proposed to be paid by Litco to the Holders of
Allowed Reliance Claims is 55 percent under the SunCal Plan

26    Proponents' Acton Plan in contrast to only a potential payment by
Lehman of 40 or 50 percent under the Lehman Acton Plan.

27

28

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

t.      The second bulleted paragraph on page 21 of Exhibit 6 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The Lehman Acton Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the Acton Estate, as well as prospective injunctions against both Creditors and even government agencies.

u.      The third paragraph on page 23 of Exhibit 7 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> Dependent upon the results of the above-referenced litigation, the SunCal Proponents SFJ Plan provides for the recovery of the Pacific Point Project and/or damages that will result from Litigation Recoveries.  The Litigation Recoveries will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code, applicable law, and the SunCal Proponents SJD Plan.  In addition, Holders of Allowed Reliance Claims (as set forth in Exhibit "8" to the SDJ Disclosure Statement) will receive an initial Distribution equal to 1% of such Holder's Allowed Claim, and, potentially, an additional Distribution of up to 49% in the event that the SunCal Plan Proponents are successful obtaining funding for LitCo and it or its designee obtains free and clear title to the Pacific Point Project (the "LitCo Enhancement") during the Plan term.

v.      The third paragraph on page 25 of Exhibit 8 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The SunCal Proponents SCC Communities Plan provides for sale of the SCC Communities Assets, free and clear of liens, claims and any purported credit bid rights of Lehman ALI.  After disputes regarding Lehman ALI's liens are resolved, the Net Sale Proceeds from these sale and/or litigation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and any other applicable law.  Currently, there are an estimated $167,961 of unpaid claims, other than Lehman ALI against the SCC communities Estate.

w.      The fourth paragraph on page 25 of Exhibit 8 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The success of the SunCal Proponents SCC Communities Plan is primarily dependent on SCC Communities prevailing on the fraudulent conveyance cause of action.  This is because if the SunCal Plan Proponents enter into an agreement with a purchaser in the amount of $175,000, subject to overbid, that will provide 100% Distribution to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

Holders of all Allowed Claims if Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

x.    The first bulleted paragraph on page 26 of Exhibit 8 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Based on SCC Communities prevailing on the fraudulent conveyance action and a $175,000 sale price for the Joshua Ridge Project, the SunCal Proponents SCC Communities Plan will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman SCC Communities Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman SCC Communities Plan) and whether or not such Creditor agrees to assign such claims to Lehman.

y.    The third paragraph on page 27 of Exhibit 9 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The SunCal Proponents Del Rio Plan provides for sale of the Del Rio Assets, free and clear of liens, claims and any purported credit bid rights of Lehman ALI. After disputes regarding Lehman ALI's liens are resolved, the Net Sale Proceeds from these sale and/or litigation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and any other applicable law. Currently, there are an estimated $975,000 of unpaid claims, other than Lehman ALI against the Del Rio Estate.

z.    The fourth paragraph on page 27 of Exhibit 9 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The success of the SunCal Proponents Del Rio Plan is primarily dependent on Del Rio prevailing on the fraudulent conveyance cause of action. This is because if the SunCal Plan Proponents enter into an agreement with a potential purchaser in the amount of $6,000,000, subject to overbid, that will provide 100% Distribution to Holders of all Allowed Claims if Lehman ALI's disputed lien is avoided and the dispute claim disallowed. Del Rio, Tesoro and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

aa.    The third paragraph on page 29 of Exhibit 10 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The SunCal Proponents Tesoro Plan provides for sale of the Tesoro Assets, free and clear of liens, claims and any purported credit bid rights of Lehman ALI.  After disputes regarding Lehman ALI's liens are resolved, the Net Sale Proceeds from these sale and/or litigation shall be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code and any other applicable law.  Currently, there are an estimated $659,253 of unpaid claims, other than Lehman ALI against the Tesoro Estate.

bb.    The fourth paragraph on page 29 of Exhibit 10 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The success of the SunCal Proponents Tesoro Plan is primarily dependent on Tesoro prevailing on the fraudulent conveyance cause of action.  This is because if the SunCal Plan Proponents enter into an agreement with a potential purchaser in the amount of $675,000, subject to overbid, that will provide 100% Distribution to Holders of all Allowed Claims if Lehman ALI's disputed lien is avoided and the dispute claim disallowed.  Tesoro, Del Rio and SCC Communities filed a motion for summary judgment for the foregoing fraudulent conveyance cause of action, which was set for hearing on August 25, 2011 and continued, at the request of Lehman ALI until September 23.

cc.    The first bulleted paragraph beginning on page 29 of Exhibit 10 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> Based on Tesoro prevailing on the fraudulent conveyance cause of action and a $675,000 sale price for the Tesoro Project, the SunCal Proponents Tesoro will provide a 100% Distribution to Holders of all Allowed Claims no later than thirty (30) days after Confirmation and a potential Distribution to holders of equity interests depending on the results of the auction, whereas the Lehman Tesoro Plan's Distribution theoretically range between 1% and 50% depending on, amongst other things, whether or not the Creditor holds a Reliance Claim (as defined in the Lehman Tesoro Plan) and whether or not such Creditor agrees to assign such claims to Lehman.

dd.    The third paragraph on page 31 of Exhibit 11 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The SunCal Proponents Oak Valley Plan provides for sale of the Oak Valley Project, free and clear of liens, claims and any purported credit bid rights of SunCal Oak Valley's primary secured creditor, LCPI. After disputes regarding LCPI's liens are resolved, the Net Sale

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

ee.    The second paragraph on page 32 of Exhibit 11 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

ff.    The first bulleted paragraph on page 32 of Exhibit 11 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Oak Valley Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Oak Valley Plan.

gg.    The third bulleted paragraph on page 32 of Exhibit 11 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The Lehman Oak Valley Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Oak Valley Estate, as well as prospective injunctions against both Creditors and even government agencies.

hh.    The third paragraph on page 35 of Exhibit 12 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The SunCal Proponents Heartland Plan provides for sale of the Heartland Project, free and clear of liens, claims and any purported credit bid rights of SunCal Heartland's primary secured creditor, LCPI.  After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii.    The second paragraph on page 36 of Exhibit 12 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

jj.    The first bulleted paragraph on page 36 of Exhibit 12 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Heartland Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Heartland Plan.

kk.    The third bulleted paragraph on page 36 of Exhibit 12 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The Lehman Heartland Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Heartland Estate, as well as prospective injunctions against both Creditors and even government agencies.

ll.    The third paragraph on page 39 of Exhibit 13 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

> The SunCal Proponents Marblehead Plan provides for sale of the Marblehead Project, free and clear of liens, claims and any purported credit bid rights of SunCal Marblehead's primary secured creditor, LCPI.  After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

mm.    The second paragraph on page 40 of Exhibit 13 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

8        nn.        The first bulleted paragraph on page 40 of Exhibit 13 to the SunCal Letters Pleading

9    shall be replaced in its entirety by the following:

10

11

12

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Marblehead Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Marblehead Plan.

13        oo.        The third bulleted paragraph on page 40 of Exhibit 13 to the SunCal Letters Pleading

14    shall be replaced in its entirety by the following:

15

16

17

The Lehman Marblehead Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Marblehead Estate, as well as prospective injunctions against both Creditors and even government agencies.

18        pp.        The third paragraph on page 45 of Exhibit 15 to the SunCal Letters Pleading shall be

19    replaced in its entirety by the following:

20

21

22

23

The SunCal Proponents PSV Plan provides for sale of the PSV Project, free and clear of liens, claims and any purported credit bid rights of SunCal PSV's primary secured creditor, LCPI.  After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

24        qq.        The first full paragraph on page 46 of Exhibit 15 to the SunCal Letters Pleading shall

25    be replaced in its entirety by the following:

26

27

28

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

rr.    The first bulleted paragraph on page 46 of Exhibit 15 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' PSV Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman PSV Plan.

ss.    The third bulleted paragraph on page 46 of Exhibit 15 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The Lehman PSV Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal PSV Estate, as well as prospective injunctions against both Creditors and even government agencies.

tt.    The third paragraph on page 49 of Exhibit 16 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The SunCal Proponents Delta Coves Plan provides for sale of the Delta Coves Project, free and clear of liens, claims and any purported credit bid rights of SunCal Delta Coves Venture's primary secured creditor, LCPI.  After disputes regarding LCPI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

uu.    The second paragraph on page 50 of Exhibit 16 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

vv.    The first bulleted paragraph on page 50 of Exhibit 16 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The consideration proposed to be paid by Litco to the Holders of Allowed Reliance Claims is 55 percent under the SunCal Plan Proponents' Delta Coves Plan in contrast to only a potential payment by Lehman of 40 or 50 percent under the Lehman Delta Coves Plan.

ww.    The third bulleted paragraph on page 50 of Exhibit 16 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The Lehman Delta Coves Plan is not confirmable because it inappropriately provides that the Lehman Entities will receive full releases from the SunCal Delta Coves Estate, as well as prospective injunctions against both Creditors and even government agencies.

xx.    The third paragraph on page 53 of Exhibit 17 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

The SunCal Proponents Torrance Plan provides for sale of the Torrance Project, free and clear of liens, claims and any purported credit bid rights of SunCal Torrance's primary secured creditor, Lehman ALI.  After disputes regarding Lehman ALI's liens are resolved, the Net Sale Proceeds from this sale will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the Bankruptcy Code.

yy.    The second paragraph on page 54 of Exhibit 17 to the SunCal Letters Pleading shall be replaced in its entirety by the following:

Notwithstanding the lack of a firm commitment for financing, the SunCal Plan Proponents are confident that such financing will be obtained.  Even though the financing sought would not be for the purpose of purchasing real estate, but instead, would be for purchasing litigation rights to distributions from Net Sale Proceeds only payable if the Lehman Creditors' liens are defeated or their claims subordinated, nonetheless, the SunCal Plan Proponents believe that their past experience in raising funds for real estate development projects is instructive of their ability to raise funds for Litco.  During the post-petition period, now approaching three years, SunCal has been involved in a closing of financing transactions in other matters exceeding the amount of $150 million.

15

zz.     The first bulleted paragraph on page 54 of Exhibit 17 to the SunCal Letters Pleading

shall be replaced in its entirety by the following:

> The consideration proposed to be paid by Litco to the Holders of
> Allowed Reliance Claims is 55 percent under the SunCal Plan
> Proponents' Torrance Plan in contrast to only a potential payment by
> Lehman of 40 or 50 percent under the Lehman Torrance Plan.

aaa.    The third bulleted paragraph on page 54 of Exhibit 17 to the SunCal Letters Pleading

shall be replaced in its entirety by the following:

> The Lehman Torrance Plan is not confirmable because it
> inappropriately provides that the Lehman Entities will receive full
> releases from the SunCal Torrance Estate, as well as prospective
> injunctions against both Creditors and even government agencies.

bbb.    The third paragraph on page 57 of Exhibit 18 to the SunCal Letters Pleading shall be

replaced in its entirety by the following:

> The SunCal Proponents Oak Knoll Plan provides for sale of the Oak
> Knoll Project, free and clear of liens, claims and any purported credit
> bid rights of SunCal Oak Knoll's primary secured creditor, Lehman
> ALI.  After disputes regarding Lehman ALI's liens are resolved, the
> Net Sale Proceeds from this sale will then be distributed to Creditors
> holding Allowed Claims in accordance with their rights and priorities
> under the Bankruptcy Code.

ccc.    The second paragraph on page 58 of Exhibit 18 to the SunCal Letters Pleading shall

be replaced in its entirety by the following:

> Notwithstanding the lack of a firm commitment for financing, the
> SunCal Plan Proponents are confident that such financing will be
> obtained.  Even though the financing sought would not be for the
> purpose of purchasing real estate, but instead, would be for purchasing
> litigation rights to distributions from Net Sale Proceeds only payable if
> the Lehman Creditors' liens are defeated or their claims subordinated,
> nonetheless, the SunCal Plan Proponents believe that their past
> experience in raising funds for real estate development projects is
> instructive of their ability to raise funds for Litco.  During the post-
> petition period, now approaching three years, SunCal has been
> involved in a closing of financing transactions in other matters
> exceeding the amount of $150 million.

ddd.    The first bulleted paragraph on page 58 of Exhibit 18 to the SunCal Letters Pleading

shall be replaced in its entirety by the following:

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

> The consideration proposed to be paid by Litco to the Holders of
> Allowed Reliance Claims is 55 percent under the SunCal Plan
> Proponents' Oak Knoll Plan in contrast to only a potential payment by
> Lehman of 40 or 50 percent under the Lehman Oak Knoll Plan.

4

5

eee.    The third bulleted paragraph on page 58 of Exhibit 18 to the SunCal Letters Pleading

shall be replaced in its entirety by the following:

6

7

8

> The Lehman Oak Knoll Plan is not confirmable because it
> inappropriately provides that the Lehman Entities will receive full
> releases from the SunCal Oak Knoll Estate, as well as prospective
> injunctions against both Creditors and even government agencies.

9

10

11

4.    Each party may elect to either send some or all of their approved Solicitation Letters

in the solicitation package for which the particular Solicitation Letter was designed or send it or

them under separate cover (with non-material modifications thereto to so permit).

12

13

14

15

16

17

5.    If the Lehman Creditors, SunCal Plan Proponents, the VD Committee or the TD

Committee wish to have another party, *i.e.*, the Lehman Creditors or SunCal Plan Proponents, send

some or all of their Solicitation Letters in such other party's solicitation packages, then the

applicable Solicitation Letters must be transmitted to such party in electronic format by 11:00 a.m.

on August 24, 2011.  Reasonable efforts shall be made by the party handling a mailing to place all

Solicitation Letters together in their solicitation packages.

18

###

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

DOCS_SF:77870.9 52063-001

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as *LEHMAN CREDITORS': (1) LIMITED OBJECTION TO SUNCAL PROPONENTS' PROPOSED PLAN SOLICITATION LETTERS; (2) ERRATA AND PARTIAL RESPONSE TO VOLUNARY COMMITTEE'S STATEMENT; AND (3) RESPONSE RE SUNCAL'S ALTERNATIVE FORMULATION OF YES/NO LETTERS* will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___August 17, 2011___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____August 17, 2011_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____August 17, 2011_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J. Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com; jmiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(3) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue — mneue@thelobelfirm.com
(4) Ch. 11 Trustee:
    Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(5) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov
(6) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A. Lyman - klyman@irell.com
(7) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B. Meltzer - hmeltzer@wgllp.com

(8) Counsel for Joint Provisional Liquidators of Lehman RE Ltd
    Chauncey Cole – chauncey.cole@cwt.com
    Betty Shumener - betty.shumener@dlapiper.com
(9) Counsel for Bond Safeguard & Lexon
    Mark E. Aronson – mea@amclaw.com
    Mark J. Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
(10) Counsel for Fenway Capital LLC
    John E Schreiber - jschreiber@dl.com
    Richard Reinthaler - rreinthaler@dl.com;
(11) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(12) Debtors (Palmdale Hills Property, LLC and related entities):
    Bruce Cook - bcook@suncal.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Lauren Zerbinopoulos– lauren.zerbinopoulos@weil.com
Erica Rutner – erica.rutner@weil.com
Mark McKane - mark.mckane@kirkland.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 17, 2011 | Megan J Wilson | /s/ Megan J Wilson |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                       **F 9013-3.1.PROOF.SERVICE**

## I. SERVED BY NEF
**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunninglaw.com

(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55) Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;
alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                   **F 9013-3.1.PROOF.SERVICE**

(62)   Irene L Kiet for Cred BNB Engineering, Inc.
       ikiet@hkclaw.com

(63)   Claude F Kolm for Cred County of Alameda Tax Collector
       claude.kolm@acgov.org

(64)   Mark J Krone for Cred Bond Safeguard Ins Co
       mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(65)   David B Lally for Def Contracting Engineers, Inc.
       davidlallylaw@gmail.com

(66)   Leib M Lerner for Cred Steiny and Co, Inc.
       leib.lerner@alston.com

(67)   Peter W Lianides for Debtor Palmdale Hills Property, LLC
       plianides@winthropcouchot.com, pj@winthropcouchot.com

(68)   Charles Liu for Debtor Palmdale Hills Property, LLC
       cliu@winthropcouchot.com

(69)   Kerri A Lyman for Atty Irell & Manella LLP
       klyman@irell.com

(70)   Mariam S Marshall for Cred RGA Environmental, Inc.
       mmarshall@marshallramoslaw.com

(71)   Robert C Martinez for Cred TC Construction Co, Inc
       rmartinez@mclex.com

(72)   Michael D May for Cred R.J. Noble Co.
       mdmayesq@verizon.net

(73)   Hutchison B Meltzer for Cred Com Holding Unsecured Claims
       hmeltzer@wgllp.com

(74)   Krikor J Meshefejian for Int Pty Courtesy NEF
       kjm@lnbrb.com

(75)   Joel S. Miliband for Cred RBF CONSULTING
       jmiliband@rusmiliband.com

(76)   James M Miller for Atty Miller Barondess LLP
       jmiller@millerbarondess.com, vgunderson@millerbarondess.com;
       smiller@millerbarondess.com; mpritikin@millerbarondess.com

(77)   Louis R Miller for Pltf Palmdale Hills Property, LLC
       smiller@millerbarondess.com

(78)   Craig Millet for Int Pty Doug Champion
       cmillet@gibsondunn.com,
       pcrawford@gibsondunn.com;cmillet@gibsondunn.com

(79)   Randall P Mroczynski for Def Bob McGrann Construction, Inc.
       randym@cookseylaw.com

(80)   Mike D Neue for Atty The Lobel Firm, LLP
       mneue@thelobelfirm.com,
       jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(81)   Robert Nida for Cred Kirk Negrete, Inc
       Rnida@castlelawoffice.com

(82)   Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
       Lehman RE Ltd
       henry.oh@dlapiper.com, janet.curley@dlapiper.com

(83)   Sean A Okeefe for Debtor Palmdale Hills Property, LLC
       sokeefe@okeefelc.com

(84)   Scott H Olson for Cred Bethel Island Muni Improvement District
       solson@seyfarth.com

(85)   Robert B Orgel for Cred Lehman ALI, Inc.
       rorgel@pszjlaw.com, rorgel@pszjlaw.com

(86)   Malhar S Pagay for Cred Lehman ALI, Inc.
       mpagay@pszjlaw.com, mpagay@pszjlaw.com

(87)   Ernie Zachary Park for Int Pty Newcomm
       ernie.park@bewleylaw.com

(88)   Daryl G Parker for Cred Lehman ALI, Inc.
       dparker@pszjlaw.com

(89)   Penelope Parmes for Cred EMR Residential Properties LLC
       pparmes@rutan.com

(90)   Robert J Pfister on behalf of Int Pty Courtesy NEF
       rpfister@ktbslaw.com

(91)   Ronald B Pierce for Cred Griffith Co
       ronald.pierce@sdma.com

(92)   Katherine C Piper for Int Pty New Anaverde LLC
       kpiper@steptoe.com, smcloughlin@steptoe.com

(93)   Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
       cmartin@pprlaw.net

(94)   James S Riley for Cred Sierra Liquidity Fund, LLC
       tgarza@sierrafunds.com

(95)   Debra Riley for Int Pty City of Palmdale
       driley@allenmatkins.com

(96)   Todd C. Ringstad for Int Pty Courtesy NEF
       becky@ringstadlaw.com

(97)   R Grace Rodriguez for Def O&B Equipment, Inc.
       ecf@lorgr.com

(98)   Martha E Romero for Cred California Taxing Authorities
       Romero@mromerolawfirm.com

(99)   Ronald Rus for Cred SunCal Management, LLC
       rrus@rusmiliband.com

(100)  John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
       jschafer@mandersonllp.com

(101)  John E Schreiber for Def Fenway Capital, LLC
       jschreiber@dl.com

(102)  William D Schuster for Cred HD Supply Construction Supply LTD
       bills@allieschuster.org

(103)  Christopher P Simon for Int Pty Courtesy NEF
       csimon@crosslaw.com

(104)  Gerald N Sims for Int Pty Courtesy NEF
       jerrys@psdslaw.com, bonniec@psdslaw.com

(105)  Wendy W Smith for Cred Castaic Union School District
       wendy@bindermalter.com

(106)  Steven M Speier (TR)
       Sspeier@asrmanagement.com, ca85@ecfcbis.com

(107)  Steven M Speier for Trustee Steven Speier (TR)
       Sspeier@Squarmilner.com, ca85@ecfcbis.com

(108)  Michael St James for Cred MBH Architects, Inc.
       ecf@stjames-law.com

(109)  Michael K Sugar for Off Committee of Unsecured Creds
       msugar@irell.com

(110)  Cathy Ta for Def Hi-Grade Material Co.
       cathy.ta@bbklaw.com,
       Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(111)  David A Tilem for Def Southland Pipe Corp
       davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
       dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(112)  James E Till for Trustee Steven Speier (TR)
       jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
       pnelson@thelobelfirm.com

(113)  United States Trustee (SA)
       ustpregion16.sa.ecf@usdoj.gov

(114)  Carol G Unruh for Cred Scott E. McDaniel
       cgunruh@sbcglobal.net

(115)  Annie Verdries for Cred WEC Corp
       verdries@lbbslaw.com

(116)  Jason Wallach for Def Professional Pipeline Contractors, Inc.
       jwallach@gladstonemichel.com

(117)  Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
       kim.johnson@kattenlaw.com

(118)  Benjamin M Weiss for Cred Regal Development LLC
       bweiss@lansingcompanies.com

(119)  Marc J Winthrop for Debtor Palmdale Hills Property, LLC
       mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(120)  David M Wiseblood for Cred Bethel Island Muni Imp District
       dwiseblood@seyfarth.com

(121)  Brett K Wiseman for Cred JF Shea Construction Inc
       bwiseman@aalaws.com

(122)  Dean A Ziehl for Counter-Def LV Pacific Point LLC
       dziehl@pszjlaw.com, dziehl@pszjlaw.com

(123)  Marc A. Zimmerman for Cred Life Church of God in Christ
       joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                    F 9013-3.1.PROOF.SERVICE