1 PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
2 SEAN A. O'KEEFE -- State Bar No. 122417
sokeefe@winthropcouchot.com
3 Newport Center Drive, Suite 400
Newport Beach, CA 92660
4 Tel: (949) 720-4100/Fax: (949) 720-4111
General Insolvency Counsel for Palmdale Hills
5 Property, LLC et. al. (the "Voluntary Debtors")

6 RONALD RUS - State Bar No. 67369
rrus@rusmiliband.com
7 JOEL S. MILIBAND - State Bar No. 77438
jmiliband@rusmiliband.com
8 RUS MILIBAND & SMITH P.C.
2211 Michelson Drive, Seventh Floor
9 Irvine, California 92612
Tel.: (949) 752-7100/Fax: (949) 252-1514
10 Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

11

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br>    Jointly Administered Debtors and Debtors-in-Possession | Case No. 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES; |
| Affects:<br>☒ All Debtors<br>☐ Palmdale Hills Property,<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale,<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☐ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF LLC<br>☐ LBL-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☐ LBL-SunCal Northlake, LLC | 8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574 ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11 Proceedings<br><br>**SUNCAL PARTIES' SUPPLEMENTAL OMNIBUS REPLY TO COMMENTS TO PLAN LETTERS FILED BY THE VOLUNTARY DEBTORS COMMITTEE, THE LEHMAN CREDITORS, AND THE TRUSTEE DEBTORS COMMITTEE**<br><br>DATE: August 22, 2011<br>TIME: 2:00 p.m.<br>PLACE: Courtroom 5A |

*Continued on Next Page*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| *Continued from Previous Page* |
|---|
| ☐ SunCal Marblehead, LLC |
| ☐ SunCal Century City, LLC |
| ☐ SunCal PSV, LLC |
| ☐ Delta Coves Venture, LLC |
| ☐ SunCal Torrance, LLC |
| ☐ SunCal Oak Knoll, LLC |

1    Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III,

2  LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont, LLC, SunCal Emerald, LLC,

3  SunCal Johansson, LLC, SunCal Bickford, LLC, SunCal Summit, LLC, Seven Brothers, LLC,

4  Kirby Estates, LLC, SJD Partners, LLC, SJD Development, LLC, SCC Communities, LLC, North

5  Orange Del Rio, LLC and Tesoro SF, LLC and SunCal Management LLC, and SCC Acquisitions,

6  LLC (collectively the "SunCal Parties") hereby submit the following *Omnibus Supplemental Reply*

7  to  the comments and/or objections to the Plan Solicitation Letters ("Plan Letters") filed by the

8  Voluntary Debtors Committee [Docket No. 2574], the Lehman Creditors [Docket No. 2582], and

9  the Trustee Debtors Committee (collectively, the "Objections").

10    The SunCal Parties have agreed to make the following accommodations to the Voluntary

11  Debtors Committee, the Lehman Creditors, and the Trustee Debtors Committee which are reflected

12  in the revised Plan Letters attached collectively as Exhibit "1." Based on the SunCal Parties'

13  review of the Voluntary Debtors Committee's written comments and based on extensive discussion

14  with their counsel, the SunCal Parties believe that the Plan Letters address all of the Voluntary

15  Debtors Committee's concerns.

16    **A.    The Voluntary Debtors' Committee's Statement.**

17    The Plan Letters have been simplified to allow an ordinary creditor to more easily review

18  them.  Specifically, the SunCal Parties reduced the number of Plan Letters, eliminated the majority

19  of defined terms and reformatted the Plan Letters.  The SunCal Parties also revised the Plan Letter

20  for the Group I Voluntary Debtors to reflect that the Lehman Lenders did not file a competing plan

21  for SunCal Emerald, LLC.

22    The Committee also noted that the SunCal Plan Proponents for SunCal Emerald and Acton

23  Estates failed to attach a copy of the list of Reliance Claims to their Disclosure Statements.

24  Therefore, the SunCal Parties request permission from the Court to attach the list of Reliance

25  Claims as Exhibit "8" to the Disclosure Statements from SunCal Emerald and Acton Estates.

26

27

28

**B.**    **The Lehman Creditors' Objection.**

1.    Objection D (pages 6-7).  The Plan Letters have been revised to state the net sale proceeds from the accounts will be deposited in escrow accounts until the Court renders a ruling on the Lehman Creditors' disputed liens and claims.  The revised language is:

> The SunCal Plan will be primarily funded by the sale of the Projects. These fair market transactions will generate the highest price obtainable for these assets, and each sale will be free and clear of the disputed liens asserted against these Projects by the Lehman Lenders, and by other parties.  After these sales close, and closing are projected to occur within 90 days of the Confirmation Date, the net sale proceeds will deposited into escrow accounts.  These funds will then remain in these accounts until the Court renders a ruling on the Lehman Lenders disputed liens and claims.

2.    Objection E (pages 7-8).  Although the SunCal Parties dispute the characterization of their language regarding the injunctions, they have agreed to delete the language that the Lehman Lenders object to.  The revised language is:

> **Lehman's Plan inappropriately provides that the Lehman Lenders will receive full releases from the Palmdale Hills Estate, as well as prospective injunctions against both creditors and even government agencies**.  To date, none of these entities have agreed to perform under the Lehman Plan and it is unlikely that the Court will force a government entity to do so.

**C.**    **The Trustee Debtors Committee's Objection.**

Century City Reserve.  In its Plan Letter 3, the Trustee Debtors Committee mentions that the Reserve Fund of $300,000 may be inadequate.  The contingency fee arrangement and the $300,000 Reserve Fund were added to the Plan to address the concerns of the Trustee Debtors

///

///

1   Committee that other arrangement may burn the existing available cash.  Notwithstanding, the

2   SunCal Parties are open to negotiating the amount of the Reserve Fund with the Trustee Debtors

3   Committee.

4         Based on the above, the SunCal Parties request that the Court approve their revised Plan

5   Letters.

6   DATED:  August 18, 2011             **WINTHROP COUCHOT**

7                                 **PROFESSIONAL CORPORATION**

8                             By:   */s/ Paul J. Couchot*

9                                     Paul J. Couchot, Esq.
                                  Sean A. O'Keefe, Esq.

10                                  General Insolvency Counsel for the Voluntary
                                Debtors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

**Statement of SunCal Plan Proponents for**
**Group I Voluntary Debtors:[1]**
**Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates**

Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates have each filed a substantially similar plan of reorganization ("SunCal Plan").[2] The Lehman Lenders have filed a competing plan of reorganization for all of the Group I Voluntary Debtors except for SunCal Emerald ("Lehman Plan"). You may vote to: (1) accept one plan and reject another; (2) accept both plans; or (3) reject both plans.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan and to REJECT the Lehman Plan for the reasons discussed below.

You are urged to vote for the SunCal Plan, even if you choose to accept the Lehman Plan, for the following reasons. If both competing plans receive sufficient votes, and satisfy all of the other confirmation requirements, the Court will select which plan to confirm considering the preferences of creditors. In contrast, if you vote only for the Lehman Plan, and the SunCal Plan fails to be approved by the Court, then no plan will be approved. This could delay payments to unsecured creditors, or result in a liquidation, potentially resulting in no payments being made to unsecured creditors. Since there is a substantial risk that the Lehman Plan will fail regardless of your vote due to its fixed funding limits, contingencies and fatal legal deficiencies, voting for both plans maximizes the probability that at least one plan will be confirmed.

**REASONS TO ACCEPT THE SUNCAL PLAN**

The SunCal Plan will be primarily funded by the sale of the Projects. These fair market transactions will generate the highest price obtainable for these assets, and each sale will be free and clear of the disputed liens asserted against these Projects by the Lehman Lenders, and by other parties. After these sales close, and closing are projected to occur within 90 days of the Confirmation Date, the net sale proceeds will deposited into escrow accounts. These funds will then remain in these accounts until the Court renders a ruling on the Lehman Lenders' disputed liens and claims. Contrary to the Lehman Lenders' allegations, the release of these funds does not have to await a final ruling on the pending litigation with the Lehman Entities. The Court has the power to *estimate* the Lehman Entities' claims within the next month or two and authorize a partial release of funds based upon this estimation. Accordingly, distributions could be made on the Effective Date of the SunCal Plan.

*If SunCal's litigation against the Lehman Lenders as described in detail in the disclosure statement is successful, then the SunCal Plan Proponents believe that all unsecured creditors will receive a potential 100% recovery. The SunCal Plan Proponents believe that the Litigation Claims will be resolved before the end of 2012.*

*If Reliance Claimants, who are listed on Exhibit "8" to the Disclosure Statement, vote for the SunCal Plan and assign their claims, then the SunCal Plan Proponents will deem their claims as allowed and such claims will be paid pursuant to the SunCal Plan on the Effective Date.* The Reliance Claimants have the right to sell their claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim to LitCo for $0.55 per dollar of their Allowed Claim. Alternatively, the Reliance Claimants can vote not to accept the purchase offer and await a distribution from the potential litigation proceeds. This purchase offer is conditioned upon the confirmation of the SunCal Plan, and the entry of a confirmation order that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Projects or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay upon confirmation of LCPI's own Chapter 11 case.

SunCal Plan Proponents will not fund LitCo's offer to purchase Allowed Reliance Claims for $0.55 per dollar of their Allowed Claim or the LitCo loan for certain other SunCal Plan funding needs. The SunCal Plan Proponents are in discussions with various potential investors/lenders who they believe will provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Although the Lehman Entities contend that the SunCal Parties' present lack of a binding funding commitment renders their Plan "illusory," this contention reflects a lack of understanding of SunCal's recent experience in the industry. SunCal is confident that it can secure the financing within the present lending environment. In fact, in the last three years, SunCal has closed $150 million in real estate transactions.

---

[1] The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors.

[2] Capitalized terms not defined herein have the meanings set forth in the respective Plans. Although Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates filed substantially similar plans, the confirmation of each such plan is independent of each other. In other words, the creditors in each case will determine, subject to Court approval, whether the applicable plan will be approved in their case. Accordingly, a plan may be confirmed in one case, but not in others.

Exhibit __1__

Page __5__

| Statement of SunCal Plan Proponents for |
|---|
| **Group I Voluntary Debtors:**[1] |
| **Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates** |
| **REASONS TO REJECT THE LEHMAN PLAN** |

The Lehman Plans should be rejected for the following reasons:

- **Guaranteed payment to Unsecured Creditors, other than Reliance Creditors, is one penny per dollar of claim.** Under the Lehman Plan, you will receive only a guaranteed payment of one penny per dollar of claim ($.01). Although the Lehman Lenders say that this amount could be increased to five cents per dollar of claim ($.05), there is no assurance that this will happen, and it is contingent on providing releases to the Lehman Lenders.

- **Guaranteed payment to Reliance Unsecured Creditors is 40%** *if the Lehman Lenders don't dispute your claim*. Under the Lehman Plan, unlike the SunCal Plan, there are no guarantees that the Reliance Claims are no allowed claims – that means that the Lehman Lenders can and almost certainly will use their substantial financial resources to object to your claim. *Accordingly, the 40% to 49% distribution figure that the Lehman Entities continually reference will only be paid to claimants holding Reliance Claims that the Lehman Entities agree to "allow," or that survive the Lehman Entities' objections.* Since the Lehman Entities have fought for over two years to pay the creditors zero, and were they were only forced to make a fair offer by SunCal's litigation and its competing plan, creditors should assume a 1% dividend at best will be paid under the Lehman Plan.

- **Possible withdrawal of all Lehman Lenders Plans.** Unlike the SunCal Plan, the Lehman Plan provides that if *any one* of their plans for the Voluntary Debtors is not confirmed, the Lehman Lenders have the absolute right to withdraw all of the other proposed plans.

- **Lehman Plan is contingent on upon non-existent settlements with the Bond Companies.** Unlike the SunCal Plan, a material condition to the Lehman Plan is that the Lehman Lenders must reach a settlement with the Bond Companies. To date, Lehman has not reached any settlements with any Bond Companies.

- **Lehman's Plan inappropriately provides that the Lehman Lenders will receive full releases from the Palmdale Hills Estate, as well as prospective injunctions against both creditors and even government agencies.** The SunCal Plan does not provide for releases of SunCal and its affiliates.

- **The Lehman Lenders can withdraw the Plans if they fail to meet the funding cap of $23 million.** The SunCal Plan Proponents believe that the Lehman Voluntary Debtor Plans have already exceeded their funding cap of $23 million and that, in fact, their funding obligation is already in excess of $36 million and it will continue to grow. Accordingly, as presently drafted the Lehman Plan will fail, absent additional funding.

- **The Lehman Plan suffers from legal deficiencies that will result in the denial of confirmation.** The Lehman Plan suffers from a number of fatal legal deficiencies. These deficiencies include, but are not limited to provisions that flagrantly violate California's anti-deficiency rules, unfair discrimination against the claims of SunCal insiders, and attempting to pay creditors less than they would receive in a liquidation.

*IN SUM, YOUR PLAN CHOICE IS SIMPLE. YOU CAN TAKE THE RISKS OF RECEIVING PENNIES FROM THE LEHMAN LENDERS OR HAVING THE LEHMAN LENDERS WITHDRAW THEIR PLAN BASED ON THE SEVERAL CONTINGENIES REFERENCED ABOVE.*

*ALTERNATIVELY, UNDER THE SUNCAL PLAN, RELIANCE CREDITORS CAN CHOSE TO RECEIVE A 55% PURCHASE OF THE FACE VALUE OF THEIR CLAIMS LISTED IN EXHIBIT "8" TO THE DISCLOSURE STATEMENT. FURTHERMORE, OTHER CREDITORS, INCLUDING RELIANCE CREDITORS WHO CHOSE TO DO SO, CAN WAIT FOR THE OUTCOME OF SUNCAL'S LITGATION AND RECEIVE WHAT THE SUNCAL PARTIES BELIEVE WILL BE A POTENTIAL 100% RECOVERY BY THE END OF 2012.*

Exhibit  1

Page  6

**Statement of SunCal Plan Proponents for**
**Group II Voluntary Debtors:[1]**
**SunCal Beaumont and SunCal Johannson**

SunCal Beamont and SunCal Johannson have each filed a substantially similar plan of reorganization ("SunCal Plan").[2] The Lehman Lenders[3] have filed a competing plan of reorganization ("Lehman Plan"). You may vote to: (1) accept one plan and reject another; (2) accept both plans; or (3) reject both plans.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan and to REJECT the Lehman Plan for the reasons discussed below.

You are urged to vote for the SunCal Plan, even if you choose to accept the Lehman Plan, for the following reasons. If both competing plans receive sufficient votes, and satisfy all of the other confirmation requirements, the Court will select which plan to confirm based upon the preferences of creditors. In contrast, if you vote only for the Lehman Plan, and this plan fails to be approved by the Court, then no plan will be approved. This could delay payments to unsecured creditors, or it could result in a liquidation scenario where no payments are made to unsecured creditors. Since there is a substantial risk that the Lehman Plan will fail regardless of your vote due to its fixed funding limits, contingencies and fatal legal deficiencies, voting for both plans maximizes the probability that at least one plan will be confirmed.

## REASONS TO ACCEPT THE SUNCAL PLAN

The SunCal Plan will be primarily funded by the sale of the Projects. These sales will be made through a public auction conducted in accordance with Court approved bankruptcy procedures. This procedure should generate the highest price obtainable for these assets. Each sale will be free and clear of any liens or claims asserted against these Projects. The net sale proceeds from these sales will then be distributed to creditors holding allowed claims within 30 days of the Confirmation Date. *Based on the purchase price discussed with the potential Stalking Horse bidder for the Projects, the SunCal Proponents believe that the unsecured creditors will receive potentially receive a 100% recovery.*

## REASONS TO REJECT THE LEHMAN PLAN

The Lehman Plans should be rejected for the following reasons:

- **Payments to Unsecured Creditors will be delayed as much as 135 days after confirmation**.
- **Possible withdrawal of all Lehman Plans**. Unlike the SunCal Plan, the Lehman Plan provides that if any one of their plans for the Voluntary Debtors is not confirmed, the Lehman Lenders have the absolute right to withdraw all of the other proposed plans.
- **Lehman Plan is contingent on non-existent settlements with the Bond Companies**. A material condition to the Lehman Plan is that the Lehman Lenders must reach a settlement with the Bond Companies. To date, Lehman has not reached any settlements with any Bond Companies.
- **The Lehman Lenders can withdraw the Plans if they fail to meet the overall funding cap of $23 million for all of the Lehman Voluntary Debtor Plans**. The SunCal Plan Proponents believe that the Lehman Voluntary Debtor Plans have already exceeded their funding cap of $23 million and that, in fact, their funding obligation is already in excess of $36 million and it will continue to grow. Accordingly, as presently drafted the Lehman Plan will fail, absent additional funding.
- **The Lehman Plan suffers from legal deficiencies that will result it the denial of confirmation**. The Lehman Plan suffers from a number of fatal legal deficiencies. These deficiencies include, but are not limited to provisions that flagrantly violate California's anti-deficiency rules, unfair discrimination against the claims of SunCal insiders, and impermissible cancelation of equity in a solvent case, and attempting to pay creditors less than they would receive in a liquidation.

*IN SUM, THE CHOICE IS SIMPLE. YOU CAN RECEIVE PAYMENT FROM SUNCAL WITHIN ONE MONTH AFTER CONFIRMATION OR PAYMENT OF A LESSER SUM FROM LEHMAN WITHIN FOUR MONTHS AFTER CONFIRMATION.*

---

[1] The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors.

[2] Capitalized terms not defined herein have the meanings set forth in the respective Plans. Although SunCal Beaumont and SunCal Johannson filed substantially similar plans, the confirmation of each such plan is independent of each other. In other words, the creditors in each case will determine, subject to Court approval, whether the applicable plan will be approved in their case. Accordingly, a plan may be confirmed in one case, but not in the other.

[3] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper, Inc.

Exhibit _____1_____

Page _____7_____

**Statement of SunCal Plan Proponents for**
**Group III Voluntary Debtors:**[1]
**SCC Communities, Del Rio & Tesoro**

SCC Communities, Del Rio and Teroso have each filed a substantially similar plan of reorganization ("SunCal Plan").[2] The Lehman Lenders[3] have filed a competing plan of reorganization ("Lehman Plan") as to SCC Communities and Tereso, but not Del Rio. You may vote to: (1) accept one plan and reject another; (2) accept both plans; or (3) reject both plans.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan and to REJECT the Lehman Plan for the reasons discussed below. You are urged to vote for the SunCal Plan, even if you choose to accept the Lehman Plan, for the following reasons. If both competing plans receive sufficient votes, and satisfy all of the other confirmation requirements, the Court will select which plan to confirm considering the preferences of creditors. In contrast, if you vote only for the Lehman Plan, and this plan fails to be approved by the Court, then no plan will be approved. This could delay payments to unsecured creditors, or result in a liquidation, potentially resulting in no payments being made to unsecured creditors. Since there is a substantial risk that the Lehman Plan will fail regardless of your vote due to its fixed funding limits, contingencies and fatal legal deficiencies, voting for both plans maximizes the probability that at least one plan will be confirmed.

## REASONS TO ACCEPT THE SUNCAL PLAN

The SunCal Plan will be primarily funded by the sale of the Projects owned by SCC Communities and Tesoro and anticipated CFD bond proceeds owed to Del Rio. These fair market transactions will generate the highest price obtainable for these assets, and each sale will be free and clear of the disputed liens asserted against these Projects by Lehman ALI, and by other parties. After these sales close, and closings are projected to occur within 30 days of the Confirmation Date, the net sale proceeds will deposited into escrow accounts. These funds will then remain in these accounts until the Court renders a ruling on Lehman ALI's disputed liens and claims.

*If SunCal's litigation against Lehman ALI is successful, and the SunCal Plan Proponents believe that it will be, unsecured creditors will receive a 100% recovery. The SunCal Plan Proponents have a filed a motion for summary judgment in support of their claims against Lehman ALI and a hearing is set on this matter for September 23, 2011. Based on the purchase price negotiated with a potential stalking horse buyer, if this motion is granted, the Group III Voluntary Debtors will have prevailed in their litigation against the Lehman Lenders and will be able to sell the Projects for a price sufficient to provide a 100% recovery for all unsecured creditors.*

## REASONS TO REJECT THE LEHMAN PLAN

The Lehman Plan should be rejected for the following reasons:

• **Guaranteed Payment to Unsecured Creditors, other than Reliance Creditors, is one penny per dollar of claim**. Under the Lehman Plan, you will receive a maximum guaranteed payment of one penny per dollar of claim ($.01). Although the Lehman Lenders say that this amount could be increased to five cents per dollar of claim ($.05), there is no assurance that this will happen, and it is contingent on providing releases to the Lehman Lenders.

• **Guaranteed Payment to Reliance Unsecured Creditors is 40%** *if the Lehman Lenders don't dispute your claim*. Under the Lehman Plan, there are no guaranteed Reliance Claims – that means that there is a risk that the Lehman Lenders will use their substantial financial resources to object to your claim. *Accordingly, the 40% to 49% distribution figure that the Lehman Entities continually reference will only be paid to claimants holding Reliance Claims that the Lehman Entities agree to "allow", or that survive the Lehman Entities' objections.*

• **Possible withdrawal of all Lehman Plans**. The Lehman Plan provides that if any one of their plans for the Voluntary Debtors is not confirmed, the Lehman Lenders have the absolute right to withdraw all of the other proposed plans.

---

[1] The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors.

[2] Capitalized terms not defined herein have the meanings set forth in the respective Plans. Although SCC Communities, Del Rio and Tesoro filed substantially similar plans, the confirmation of each such plan is independent of each other. In other words, the creditors in each case will determine, subject to Court approval, whether the applicable plan will be approved in their case. Accordingly, a plan may be confirmed in one case, but not in the other.

[3] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper, Inc.

---

**Statement of SunCal Plan Proponents for**
**Group III Voluntary Debtors:[1]**
**SCC Communities, Del Rio & Tesoro**

- **Lehman Plan is contingent on non-existent settlements with the Bond Companies**. A material condition to the Lehman Plan is that the Lehman Lenders must reach a settlement with the Bond Companies. To date, Lehman has not reached any settlements with any Bond Companies.

- **The Lehman Lenders can withdraw the Plans if they fail to meet the overall funding cap of $23 million for all of the Lehman Voluntary Debtor Plans**. The SunCal Plan Proponents believe that the Lehman Voluntary Debtor Plans already exceed their funding cap of $23 million and that, in fact, the funding requirement is presently in excess of $36 million and continues to grow. Accordingly, as presently drafted the Lehman Plan will fail, absent additional funding.

- **The Lehman Plan suffers from legal deficiencies that will result in the denial of confirmation**. The Lehman Plan suffers from a number of fatal legal deficiencies. These deficiencies include, but are not limited to provisions that flagrantly violate California's anti-deficiency rules, unfair discrimination against the claims of SunCal insiders, and impermissible cancelation of equity in a solvent case.

---

*IN SUM, YOUR PLAN CHOICE IS SIMPLE. YOU CAN TAKE THE RISKS OF RECEIVING PENNIES FROM THE LEHMAN LENDERS OR HAVING THE LEHMAN LENDERS WITHDRAW THEIR PLAN BASED ON THE SEVERAL CONTINGENIES REFERENCED ABOVE.*

*ALTERNATIVELY, IF THE PENDING SUMMARY JUDGEMENT MOTION SET FOR SEPTMEMBER 23, 2011 IS GRANTED OR LEHMAN ALI'S CREDIT BID RIGHTS ARE DENIED, SUNCAL BELIEVES THAT IT HAS A STALKING HORSE BIDDER WHOSE PURCHASE PRICE WILL PROVIDE 100% DISTRIBUTION TO ALL UNSECURED CREDITORS.*

Exhibit _1_
Page _9_

**Statement of SunCal Plan Proponents for
Group IV Voluntary Debtors:[1]
SJD Development, Corp. and SJD Partners, Ltd.**

SJD Development and SJD Partners have filed a joint plan of reorganization ("SunCal SJD Plan"). SJD Development is the sole equity owner of SJD Partners. SJD Partners is the former owner of the Pacific Point Project. This Plan assumes that all claims filed against SJD Development were inadvertent and should have been filed against SJD Partners as the project-owning entity that incurred such debt. Consequently, a joint Plan is filed in the cases of the Group IV: Voluntary Debtors.

The Lehman Lenders[2] have not filed a competing plan of reorganization. You may vote to: (1) accept the plan; or (2) reject the plan.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan for the reasons set forth below.

**REASONS TO ACCEPT THE SUNCAL PLAN**

SJD Partners formerly owned a residential real estate project in San Juan Capistrano, California known as the Pacific Point Project. On August 28, 2008, Lehman ALI caused its affiliate, LV Pacific Point, to non-judicially foreclose the Pacific Point Project. The foreclosure was conducted pursuant to an agreement between SunCal and the Lehman Lenders. Under this agreement, SunCal agreed not to contest the foreclosure in exchange for Lehman Lenders' agreement to pay and assume millions of dollars in creditor claims. The Lehman Lenders foreclosed the Pacific Point Project, but reneged on their agreement to make or assume these creditor payments. Accordingly, SJD Partners and SJD Development have sued the Lehman Lenders to recover the Pacific Point Project and/or receive damages for the Lehman Lenders' wrongful conduct.

The SunCal Plan will be funded by the recovery and sale of the Pacific Point Project and/or liquidation of Litigation Recoveries of Group IV: Voluntary Debtors. The net proceeds will then be distributed to creditors holding allowed claims. In addition, holders of Reliance Claims will receive an initial distribution equal to 1% of such holder's Allowed Claim from funds not belonging to the estate, and, potentially, an additional distribution of up to 49% thereof from LitCo or its designee in the event that such newly formed entity obtains free and clear title to the Pacific Point Project during the five year plan term. ***The SunCal Plan Proponents believe that the litigation with the Lehman Lenders will be resolved by the end of 2012.***

**The Alternative to the SunCal Plan**

If the SunCal Plan is not confirmed, these cases will likely be converted to a Chapter 7 case and a Chapter 7 Trustee will be appointed. Under the terms of the SunCal Plan, each individual creditor is receiving at least as much as such creditor would receive in a Chapter 7 case.

---

*IN SUM, YOUR CHOICE IS SIMPLE. YOU CAN ACCEPT THE SUNCAL PLAN, WHICH HAS THE POTENTIAL OF PROVIDING YOU WITH A SUBSTANTIAL RECOVERY, OR REJECT THE SUNCAL PLAN, WHICH WILL LIKELY RESULT IN THE CONVERSION OF THESE CASES, AND LITTLE OR NO DISTRIBUTION.*

---

[1] The seventeen debtors and debtors-in-possession are collectively referred to as the Voluntary Debtors.

[2] The Lehman Lenders are Lehman Commercial Paper, Inc. and Lehman ALI, Inc.

Exhibit _____1_____
Page _____10_____

**Statement of SunCal Plan Proponents for**
**Group I Trustee Debtors:[1]**
**SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures, and SunCal PSV**

SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures and SunCal PSV have each filed substantially similar plans of reorganization ("SunCal Plan").[2]  The Trustee and the Lehman Creditors[3] have filed a competing plan of reorganization ("Lehman Plan").  You may vote to: (1) accept both plans; (2) accept one plan and reject another; or (3) reject both plans.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan and to REJECT the Lehman Plan for the reasons discussed below.

You are urged to vote for the SunCal Plan, even if you choose to accept the Lehman Plan, for the following reasons.  If both competing plans receive sufficient votes, and satisfy all of the other confirmation requirements, the Court will select which plan to confirm considering the preferences of creditors.  In contrast, if you vote only for the Lehman Plan, and the SunCal Plan fails to be approved by the Court, then no plan will be approved. This could delay payments to unsecured creditors, or result in a liquidation, potentially resulting in no payments being made to unsecured creditors. Since there is a substantial risk that the Lehman Plan will fail regardless of your vote due to its fixed funding limits, contingencies and fatal legal deficiencies, voting for both plans maximizes the probability that at least one plan will be confirmed.

## REASONS TO ACCEPT THE SUNCAL PLAN

The SunCal Plan will be primarily funded by the sale of the Projects. These fair market transactions will generate the highest price obtainable for these assets, and each sale will be free and clear of the disputed liens asserted against these Projects by the Lehman Lenders, and by other parties.  After these sales close, and closing are projected to occur within 90 days of the Confirmation Date, the net sale proceeds will deposited into escrow accounts.  These funds will then remain in these accounts until the Court renders a ruling on the Lehman Lenders' disputed liens and claims. Contrary to the Lehman Lenders' allegations, the release of these funds does not have to await a final ruling on the pending litigation with the Lehman Entities. The Court has the power to *estimate* the Lehman Entities' claims within the next month or two and authorize a partial release of funds based upon this estimation. Accordingly, distributions could be made on the Effective Date of the SunCal Plan.

*If SunCal's litigation against the Lehman Lenders as described in detail in the disclosure statement is successful, then the SunCal Plan Proponents believe that all unsecured creditors will receive a potential 100% recovery.  The SunCal Plan Proponents believe that the Litigation Claims will be resolved before the end of 2012.*

*If Reliance Claimants, who are listed on Exhibit "8" to the Disclosure Statement, vote for the SunCal Plan and assign their claims, then the SunCal Plan Proponents will deem their claims as allowed and such claims will be paid pursuant to the SunCal Plan on the Effective Date.*  The Reliance Claimants have the right to sell their claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim to LitCo for $0.55 per dollar of their Allowed Claim. Alternatively, the Reliance Claimants can vote not to accept the purchase offer and await a distribution from the potential litigation proceeds.  This purchase offer is conditioned upon the confirmation of the SunCal Plan, and the entry of a confirmation order that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Projects or a determination regarding the lifting, modification or expiration of LCPI's own automatic stay upon confirmation of LCPI's own Chapter 11 case.

SunCal Plan Proponents will not fund LitCo's offer to purchase Allowed Reliance Claims for $0.55 per dollar of their Allowed Claim or the LitCo loan for certain other SunCal Plan funding needs. The SunCal Plan Proponents are in discussions with various potential investors/lenders who they believe will provide such funding.  However, as of today's date, no commitment has yet been obtained for such funding.

---

[1] The nine debtors and debtors-in-possession including LB-L-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB-L-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC and SunCal Oak Valley, LLC are collectively referred to as the Trustee Debtors.

[2] Capitalized terms not defined herein have the meanings set forth in the respective Plans. Although SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures and SunCal PSV filed substantially similar plans, the confirmation of each such plan is independent of each other.  In other words, the creditors in each case will determine, subject to Court approval, whether the applicable plan will be approved in their case.  Accordingly, a plan may be confirmed in one case, but not in others.

[3] The Lehman Creditors are Lehman ALI, Inc. and Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC.

Exhibit _____1_____
Page _____11_____

MAINDOCS-#165939-v1-SCC_GroupITD_Plan_Letter.DOC

**Statement of SunCal Plan Proponents for**
**Group I Trustee Debtors:[1]**
**SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures, and SunCal PSV**

Although the Lehman Entities contend that the SunCal Parties' present lack of a binding funding commitment renders their Plan "illusory," this contention reflects a lack of understanding of SunCal's recent experience in the industry. SunCal is confident that it can secure the financing within the present lending environment. In fact, in the last three years, SunCal has closed $150 million in real estate transactions.

## REASONS TO REJECT THE LEHMAN PLAN

The Lehman Plans should be rejected for the following reasons:

- **The only guaranteed payment to Unsecured Creditors, other than Reliance Creditors, is one penny per dollar of claim.** Under the Lehman Plan, you will receive only a guaranteed payment of one penny per dollar of claim ($.01). Although the Lehman Lenders say that this amount could be increased to five cents per dollar of claim ($.05), there is no assurance that this will happen, and it is contingent on providing releases to the Lehman Lenders.

- **Guaranteed Payment to Reliance Unsecured Creditors is 40% *if the Lehman Creditors don't dispute your claim*.** Under the Lehman Plan, unlike the SunCal Plan, there are no guarantees that the Reliance Claims are no allowed claims – that means that the Lehman Lenders can and almost certainly will use their substantial financial resources to object to your claim. *Accordingly, the 40% to 49% distribution figure that the Lehman Entities continually reference will only be paid to claimants holding Reliance Claims that the Lehman Entities agree to "allow," or that survive the Lehman Entities' objections.* Since the Lehman Entities have fought for over two years to pay the creditors zero, and were they were only forced to make a fair offer by SunCal's litigation and its competing plan, creditors should assume a 1% dividend at best will be paid under the Lehman Plan.

- **Possible Withdrawal of all Lehman Creditors Plans.** Unlike the SunCal Plan, the Lehman Plan provides that if any one of their plans for the Voluntary Debtors is not confirmed, the Lehman Creditors have the absolute right to withdraw all of the other proposed plans.

- **Lehman Plan is Contingent on upon Non-Existent Settlements with the Bond Companies.** Unlike the SunCal Plan, a material condition to the Lehman Plan is that the Lehman Creditors must reach a settlement with the Bond Companies. To date, Lehman has not reached any settlements with any Bond Companies.

- **The Lehman Creditors can withdraw the Plans if they fail to meet either the claim's cap of $30 million or the overall funding cap of $55 million for all of the Lehman Trustee Debtor Plans.** The SunCal Plan Proponents believe that the Lehman Trustee Voluntary Debtor Plans have already exceeded their claims cap and funding cap and that, in fact, the amount of the unsecured claims is approximately $34 million and their funding obligation is already in excess of $36 million and it will continue to grow. Accordingly, as presently drafted the Lehman Plan will fail, absent additional funding.

- **The Lehman Plan suffers from legal deficiencies that will result in the denial of confirmation.** The Lehman Plan suffers from a number of fatal legal deficiencies. These deficiencies include, but are not limited to provisions that flagrantly violate California's anti-deficiency rules, unfair discrimination against the claims of SunCal insiders, and attempting to pay creditors less than they would receive in a liquidation.

*IN SUM, YOUR PLAN CHOICE IS SIMPLE. YOU CAN TAKE THE RISKS OF RECEIVING PENNIES FROM THE LEHMAN LENDERS OR HAVING THE LEHMAN LENDERS WITHDRAW THEIR PLAN BASED ON THE SEVERAL CONTINGENIES REFERENCED ABOVE.*

*ALTERNATIVELY, UNDER THE SUNCAL PLAN, RELIANCE CREDITORS CAN CHOSE TO RECEIVE A 55% PURCHASE OF THE FACE VALUE OF THEIR CLAIMS LISTED IN EXHIBIT "8" TO THE DISCLOSURE STATEMENT. FURTHERMORE, OTHER CREDITORS, INCLUDING RELIANCE CREDITORS WHO CHOSE TO DO SO, CAN WAIT FOR THE OUTCOME OF SUNCAL'S LITGATION AND RECEIVE WHAT THE SUNCAL PARTIES BELIEVE WILL BE A POTENTIAL 100% RECOVERY BY THE END OF 2012.*

Exhibit ___1___

Page ___12___

MAINDOCS-#165939-v1-SCC_GroupITD_Plan_Letter.DOC

**Statement of SunCal Plan Proponents for**
**Group II Trustee Debtors:**[1]
**SunCal Oak Knoll and SunCal Torrance**

SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures and SunCal PSV have each filed a substantially similar plan of reorganization ("SunCal Plan").[2] The Trustee and the Lehman Creditors[3] have filed a competing plan of reorganization ("Lehman Plan"). You may vote to: (1) accept both plans; (2) accept one plan and reject another; or (3) reject both plans.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan and to REJECT the Lehman Plan for the reasons discussed below.

You are urged to vote for the SunCal Plan, even if you choose to accept the Lehman Plan, for the following reasons. If both competing plans receive sufficient votes, and satisfy all of the other confirmation requirements, the Court will select which plan to confirm considering the preferences of creditors. In contrast, if you vote only for the Lehman Plan, and the SunCal Plan fails to be approved by the Court, then no plan will be approved. This could delay payments to unsecured creditors, or result in a liquidation, potentially resulting in no payments being made to unsecured creditors. Since there is a substantial risk that the Lehman Plan will fail regardless of your vote due to its fixed funding limits, contingencies and fatal legal deficiencies, voting for both plans maximizes the probability that at least one plan will be confirmed.

## REASONS TO ACCEPT THE SUNCAL PLAN

The SunCal Plan will be primarily funded by the sale of the Projects. These fair market transactions will generate the highest price obtainable for these assets, and each sale will be free and clear of the disputed liens asserted against these Projects by the Lehman Lenders, and by other parties. After these sales close, and closing are projected to occur within 90 days of the Confirmation Date, the net sale proceeds will deposited into escrow accounts. These funds will then remain in these accounts until the Court renders a ruling on the Lehman Lenders' disputed liens and claims. Contrary to what the Lehman Lenders' allegations, the release of these funds does not have to await a final ruling on the pending litigation with the Lehman Entities. The Court has the power to *estimate* the Lehman Entities' claims within the next month or two and authorize a partial release of funds based upon this estimation. Accordingly, distributions could be made on the Effective Date of the SunCal Plan.

*If SunCal's litigation against the Lehman Lenders as described in detail in the disclosure statement is successful, then the SunCal Plan Proponents believe that all unsecured creditors will receive a potential 100% recovery. The SunCal Plan Proponents believe that the Litigation Claims will be resolved before the end of 2012.*

*If Reliance Claimants, who are listed on Exhibit "8" to the Disclosure Statement, vote for the SunCal Plan and assign their claims, then the SunCal Plan Proponents will deem their claims as allowed and such claims will be paid pursuant to the SunCal Plan on the Effective Date.* The Reliance Claimants have the right to sell their claims, along with any other Litigation Rights arising from and/or related to such Reliance Claim to LitCo for $0.55 per dollar of their Allowed Claim. Alternatively, the Reliance Claimants can vote not to accept the purchase offer and await a distribution from the potential litigation proceeds. This purchase offer is conditioned upon the confirmation of the SunCal Plan, and the entry of a confirmation order that is not subject to a stay pending appeal. However, this purchase offer is not contingent upon the sale of the Projects. However, this purchase offer is not contingent upon the sale of the Projects. Furthermore, because Lehman ALI is a non-debtor, there is no automatic stay in the Lehman Lenders' cases and the litigation can proceed after confirmation. However, this purchase offer is not contingent upon the sale of the Projects. Furthermore, because Lehman ALI is a non-debtor, there is no automatic stay in the Lehman Lenders' cases and the litigation can proceed after confirmation.

SunCal Plan Proponents will not fund LitCo's offer to purchase Allowed Reliance Claims for $0.55 per dollar of their Allowed Claim or the LitCo loan for certain other SunCal Plan funding needs. The SunCal Plan Proponents

---

[1] The nine debtors and debtors-in-possession including LB-L-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB-L-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC and SunCal Oak Valley, LLC are collectively referred to as the Trustee Debtors.

[2] Capitalized terms not defined herein have the meanings set forth in the respective plans. Although SunCal Oak Valley, SunCal Heartland, Delta Coves Ventures and SunCal PSV filed substantially similar plans, the confirmation of each such plan is independent of each other. In other words, the creditors in each case will determine, subject to Court approval, whether the applicable plan will be approved in their case. Accordingly, a plan may be confirmed in one case, but not in others.

[3] The Lehman Creditors are Lehman ALI, Inc. and Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC.

Exhibit ___1___

Page ___13___

| Statement of SunCal Plan Proponents for |
|---|
| Group II Trustee Debtors:[1] |
| SunCal Oak Knoll and SunCal Torrance |

are in discussions with various potential investors/lenders who they believe will provide such funding. However, as of today's date, no commitment has yet been obtained for such funding.

Although the Lehman Entities contend that the SunCal Parties' present lack of a binding funding commitment renders their Plan "illusory," this contention reflects a lack of understanding of SunCal's recent experience in the industry. SunCal is confident that it can secure the financing within the present lending environment. In fact, in the last three years, SunCal has closed $150 million in real estate transactions.

**REASONS TO REJECT THE LEHMAN PLAN**

The Lehman Plans should be rejected for the following reasons:

- **The only guaranteed payment to Unsecured Creditors, other than Reliance Creditors, is one penny per dollar of claim.** Under the Lehman Plan, you will receive only a guaranteed payment of one penny per dollar of claim ($.01). Although the Lehman Lenders say that this amount could be increased to five cents per dollar of claim ($.05), there is no assurance that this will happen, and it is contingent on providing releases to the Lehman Lenders.

- **Guaranteed Payment to Reliance Unsecured Creditors is 40%** *if the Lehman Creditors don't dispute your claim.* Under the Lehman Plan, unlike the SunCal Plan, there are no guarantees that the Reliance Claims are not allowed claims – that means that the Lehman Lenders can and almost certainly will use their substantial financial resources to object to your claim. *Accordingly, the 40% to 49% distribution figure that the Lehman Entities continually reference will only be paid to claimants holding Reliance Claims that the Lehman Entities agree to "allow," or that survive the Lehman Entities' objections.* Since the Lehman Entities have fought for over two years to pay the creditors zero, and were they only forced to make a fair offer by SunCal's litigation and its competing plan, creditors should assume a 1% dividend at best will be paid under the Lehman Plan.

- **Possible Withdrawal of all Lehman Creditors Plans.** Unlike the SunCal Plan, the Lehman Plan provides that if any one of their plans for the Voluntary Debtors is not confirmed, the Lehman Creditors have the absolute right to withdraw all of the other proposed plans.

- **Lehman Plan is Contingent on upon Non-Existent Settlements with the Bond Companies.** Unlike the SunCal Plan, a material condition to the Lehman Plan is that the Lehman Creditors must reach a settlement with the Bond Companies. To date, Lehman has not reached any settlements with any Bond Companies.

- **The Lehman Creditors can withdraw the Plans if they fail to meet either the claim's cap of $30 million or the overall funding cap of $55 million for all of the Lehman Trustee Debtor Plans.** The SunCal Plan Proponents believe that the Lehman Trustee Voluntary Debtor Plans have already exceeded their claims cap and funding cap and that, in fact, the amount of the unsecured claims is approximately $34 million and their funding obligation is already in excess of $36 million and it will continue to grow. Accordingly, as presently drafted the Lehman Plan will fail, absent additional funding.

- **The Lehman Plan suffers from legal deficiencies that will result in the denial of confirmation.** The Lehman Plan suffers from a number of fatal legal deficiencies. These deficiencies include, but are not limited to provisions that flagrantly violate California's anti-deficiency rules, unfair discrimination against the claims of SunCal insiders, and attempting to pay creditors less than they would receive in a liquidation.

*IN SUM, YOUR PLAN CHOICE IS SIMPLE. YOU CAN TAKE THE RISKS OF RECEIVING PENNIES FROM THE LEHMAN LENDERS OR HAVING THE LEHMAN LENDERS WITHDRAW THEIR PLAN BASED ON THE SEVERAL CONTINGENIES REFERENCED ABOVE.*
*ALTERNATIVELY, UNDER THE SUNCAL PLAN, RELIANCE CREDITORS CAN CHOSE TO RECEIVE A 55% PURCHASE OF THE FACE VALUE OF THEIR CLAIMS LISTED IN EXHIBIT "8" TO THE DISCLOSURE STATEMENT. FURTHERMORE, OTHER CREDITORS, INCLUDING RELIANCE CREDITORS WHO CHOSE TO DO SO, CAN WAIT FOR THE OUTCOME OF SUNCAL'S LITGATION AND RECEIVE WHAT THE SUNCAL PARTIES BELIEVE WILL BE A POTENTIAL 100% RECOVERY BY THE END OF 2012.*

Exhibit _1_
Page _14_

MAINDOCS-#165963-v1-SCC_GroupIITD_Plan_Letter.DOC

**Statement of SunCal Plan Proponents for
SunCal Century City**

The SunCal Plan Proponents have filed a plan of reorganization ("SunCal Plan").[1] Lehman and the Chapter 11 Trustee have <u>not</u> filed a competing plan of reorganization. You may vote to: (1) accept the SunCal Plan or (2) reject the SunCal Plan.

The SunCal Plan Proponents urge you to ACCEPT the SunCal Plan for the reasons set forth below.

## REASONS TO ACCEPT THE SUNCAL PLAN

SunCal Century City formerly owned a Project in Century City, California that was subject to a first priority deed of trust and loan held by Danske Bank, as successor-in-interest to Lehman ALI. The Project was sold to Danske Bank pursuant to a settlement agreement, in full satisfaction of the amount owed under the loan agreements.

### Initial Distribution of Available Cash Under the SunCal Plan

The SunCal Plan provides for an initial distribution of the net sale proceeds from the sale of the Project, which is approximately $3,568,824.79, to creditors holding allowed claims. The distribution will be made after a reserve fund is established to fund certain litigation costs described below.

The SunCal Plan Proponents estimate that the projected distribution to administrative claimants and unsecured creditors will be approximately 100% and 15%, respectively.

The above distribution estimates do not take into account ongoing professional fees, which continue to accrue. Such fees, however, have been minimal since the closing of the asset sale. Furthermore, the claim balances may be reduced through claims objections resulting in lower "allowed" claims and higher percentage distribution. In particular, throughout the Chapter 11 case, the attorneys for the committee of unsecured creditors ("the Committee") have been administering objections to claims. The remaining potential disputed claims identified by the attorneys for the Committee total $2,507,660.26 in administrative claims and $1,023,802.98 in general unsecured claims of SunCal Management, an affiliate of SunCal Century City. The Committee has also filed a motion objecting to a certain contingent claim filed a bond company.

### Prosecution of Preference Actions Under the SunCal Plan

The SunCal Plan also also provides for the potential prosecution and potential recovery of certain transfers made by SunCal Century City in the one year period preceding the filing of SunCal Century City's Chapter 11 case to Lehman ALI in the amount of $10,628,948.64, and the potential prosecution of certain transfers made by SunCal Century City to SunCal Management and Acquisitions, affiliates of SunCal Century City, in the amount of $747,727.13. The Lehman Preference Claim is currently pending in the Lehman Adversary Proceeding. If fully prosueced on a contingency basis, as described below, *the SunCal Plan Proponents believe that the litigation will be resolved by the end of 2012.* With respect to the Potential SunCal Preference Claim, the Trustee conducted a preliminary review of such claim and concluded that valid defenses exist to such transfers.

Both the pending Lehman Preference Claim and the Potential SunCal Preference Claim are required to be prosecuted on a contingency fee basis. To that end, the SunCal Plan provides for the plan reserve of $300,000, or such higher amount as agreed to by the SunCal Plan Proponents and the Trustee Debtor Committee, and will be established from the available cash. Up to $200,000, or such higher amount as agreed to by the SunCal Plan Proponents and the Trustee Debtor Committee, of such reserve will be used for payment of costs associated with the prosecution of the Lehman Preference Claim and payment of post confirmation expenses and up to $100,000, , or such higher amount as agreed to by the SunCal Plan Proponents and the Trustee Debtor Committee, of such reserve will be used for payment of Committee's fees and associated with potential objections to SunCal Management's claims and prosecution of the Potential SunCal Preference Claim.

Any recovery on the Lehman Preference Claim or the Potential SunCal Preference Claim in excess of costs incurred therein (up to the amount of the reserve fund) will increase distribution to holders of general unsecured claims.

### The Alternative to the SunCal Plan

If the SunCal Plan is not confirmed, these cases will likely be converted to a Chapter 7 case and a Chapter 7 Trustee will be appointed. Under the terms of the SunCal Plan, each individual creditor is receiving at least as much as such creditor would receive in a Chapter 7 case.

*IN SUM, THE CHOICE IS SIMPLE. YOU CAN ACCEPT THE SUNCAL PLAN, WHICH HAS THE POTENTIAL OF PROVIDING YOU WITH A SUBSTANTIAL RECOVERY, OR REJECT THE SUNCAL PLAN, WHICH WILL LIKELY RESULT IN THE CONVERSION OF THIS CASE, AND WHICH IN ALL LIKELIHOOD WILL PROVIDE YOU LITTLE OR NO DISTRIBUTION.*

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

Exhibit ___/___

Page ___/5___

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described **SUNCAL PARTIES' REPLY TO PLAN LETTERS PROPOSED BY UNSECURED CREDITORS COMMITTEE FOR TRUSTEE DEBTORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 18, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On August 18, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 18, 2011 served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

Edward Soto, Esq. - edward.soto@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Richard Pachulski - rpachulski@pszjlaw.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 18, 2011 | P.J. Marksbury |  |
|---|---|---|
| Date | Type Name | Signature |

1

## SERVICE LIST

2

**NEF SERVICE LIST**

3
- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
4
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
5
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
6
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
7
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
8
- Andrew W Caine    acaine@pszyjw.com
9
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
10
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
11
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
12
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
13
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
14
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
15
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
16
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
17
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
18
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
19
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
20
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
21
- Steven M Garber    steve@smgarberlaw.com
22
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
23
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
24
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
25
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
26
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
27
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
28
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com

- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org

- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Benjamin M Weiss    bweiss@lansingcompanies.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net