Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Robert B. Orgel (CA Bar No. 101875)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910 / Facsimile:  310/201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000 / Facsimile:  (212) 310-8007

Attorneys for Lehman Commercial Paper Inc., Lehman ALI,
Inc., Northlake Holdings LLC and OVC Holdings LLC

William N. Lobel (CA Bar No. 93202)
Mike D. Neue (CA Bar No. 179303)
THE LOBEL FIRM, LLP
840 Newport Center Drive, Suite 750
Newport Beach, California  92660
Telephone:  (949) 999-2860 / Facsimile:  (949) 999-2870

General Insolvency Counsel for Steven M. Speier,
the Chapter 11 Trustee for the Trustee Debtors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and its Related Debtors,<br>Jointly Administered Debtors<br>and Debtors-In-Possession | Case No.: 8:08-bk-17206-ES<br>Chapter 11<br><br>Jointly Administered Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17533-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES |
| Affects:<br>☐ All Debtors<br>☐ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows, LLC<br>☐ SunCal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SCC Communities LLC<br>☐ SunCal Communities III, LLC<br>☐ North Orange Del Rio Land, LLC | ***THIRD AMENDED* JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND SUBJECT LEHMAN CREDITORS** |

☐ Tesoro SF, LLC
☑ LB/L-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☑ LB/L-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance Properties, LLC
☑ SunCal Oak Knoll, LLC

**Hearing:**

Disclosure Hearing:
Date:         July 22, 2011
Time:         10:00 a.m.

Confirmation Hearing:
Date:         October 24, 2011
Time:         9:30 a.m.

Place:        Courtroom 5A
              411 West Fourth Street
              Santa Ana, CA  92701

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I INTRODUCTION ................................................................................................................ 1
  1.1    Prefatory Statement. ............................................................................................... 1
  1.2    Process, Disclosure, Voting and Recommendation. ............................................. 1
      1.2.1   Process. ........................................................................................................ 1
      1.2.2   Special Voting / Election Procedures ......................................................... 2
      1.2.3   Disclosure. ................................................................................................... 2
II DEFINITIONS AND RULES OF INTERPRETATION. ................................................. 3
  2.1    Definitions. ............................................................................................................. 3
  2.2    Rules of Construction. ........................................................................................... 3
III PLAN OVERVIEW ....................................................................................................... 4
  3.1    Background. ............................................................................................................ 4
  3.2    Overview of Treatment of Claims and Relevant Agreements. ............................. 5
      3.2.1   Lehman Plan Funding. ................................................................................ 5
      3.2.2   Bond-Backed Claims and Bond Issuer Settlement(s). ............................... 6
      3.2.3   Treatment of Non-Priority Unsecured Claims and Interests. ..................... 7
      3.2.4   Treatment of Secured Claims and Claims with Statutory Priorities. ......... 12
      3.2.5   Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s)
           and the Lehman Creditors. .......................................................................... 14
IV TREATMENT OF UNCLASSIFIED CLAIMS ........................................................... 15
  4.1    Treatment of Allowed Administrative Claims. ..................................................... 15
  4.2    Treatment of Priority Tax Claims. ........................................................................ 17
V CLASSIFICATION OF CLAIMS AND INTERESTS .................................................. 18
VI TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................................. 32
  6.1    Treatment of Allowed Secured Real Property Tax Claims (Class 1).................... 32
      6.1.1   Voting and Impairment. .............................................................................. 33
      6.1.2   Liens. .......................................................................................................... 33
      6.1.3   Distributions and Distribution Dates. ......................................................... 33
  6.2    Treatment of Lehman Secured Claims (Class 2)................................................... 34
      6.2.1   Voting. ........................................................................................................ 34
      6.2.2   Liens. .......................................................................................................... 35
      6.2.3   Claims. ........................................................................................................ 35
      6.2.4   Disposition of Collateral ............................................................................ 35
  6.3    Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3). ............... 36
      6.3.1   Voting and Impairment ............................................................................... 36
      6.3.2   Liens. .......................................................................................................... 36
      6.3.3   Distributions and Distribution Dates. ......................................................... 37
      6.3.4   Less Favorable Treatment for Lehman Creditors and Settling Bond Issuer(s) by
           Consent. ...................................................................................................... 38
      6.3.5   Unsecured Deficiency Claims. .................................................................... 38
  6.4    Treatment of Allowed Other Secured Claims (Class 4).................................... 39
      6.4.1   Voting and Impairment. .............................................................................. 39
      6.4.2   Liens. .......................................................................................................... 39
      6.4.3   Distributions and Distribution Dates. ......................................................... 39
  6.5    Treatment of Allowed Priority Claims (Class 5). ................................................. 41
      6.5.1   Voting and Impairment. .............................................................................. 41
      6.5.2   Distributions and Distribution Dates. ......................................................... 41
  6.6    Treatment of Allowed Reliance Claims (Class 6)................................................ 41
      6.6.1   Voting and Impairment. .............................................................................. 41
      6.6.2   Distributions. .............................................................................................. 41
      6.6.3   Distribution Dates. ...................................................................................... 43
      6.6.4   Less Favorable Treatment for Lehman Creditors and Settling Bond Issuer(s) by
           Consent. ...................................................................................................... 46
  6.7    Treatment of Allowed General Unsecured Claims (Class 7)................................ 47

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.7.1    Voting and Impairment. ........................................................................ 47
6.7.2    Distributions. ...................................................................................... 47
6.7.3    Distribution Dates. ............................................................................. 48
6.7.4    Distributions as to a Future Obligation. ............................................. 49
6.7.5    Less Favorable Treatment for Lehman Creditors and Settling Bond
         Issuer(s) by Consent. .......................................................................... 49
6.8      Treatment of Allowed Settling Bond Issuer-Related Future Work
         Claims (Class 8).................................................................................. 50
6.8.1    Voting and Impairment. ...................................................................... 50
6.8.2    Distributions and Distribution Dates. ................................................. 50
6.9      Treatment of Allowed Interests (Class 9)..................................................... 51
VII ACCEPTANCE OR REJECTION OF THE PLAN ................................................. 52
7.1      Who May Vote to Accept/Reject the Plan. .................................................... 52
7.2      Who Can Vote in More than One Class. ........................................................ 52
7.3      Votes Necessary for a Class to Accept the Plan. ........................................... 52
7.4      Who Is Not Entitled to Vote. ........................................................................ 52
7.5      Special Provisions for Listed Holders of Mechanic's Lien Claims. ............... 53
7.6      Special Provisions for Allowed General Unsecured Claims (Class 7) and Allowed Reliance
         Claims (Class 6). .......................................................................................... 54
7.6.1    Voting Permitted Regardless of Election to Receive the Lehman Distribution
         Enhancement. ..................................................................................... 54
7.6.2    "Reliance Claim" Status Must Be Asserted on a Ballot. ..................... 54
7.7      Receipt of No or Incorrect Ballots. ............................................................... 54
7.8      Acceptance of the Plan Contrasted With Confirmation. ................................ 55
VIII MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ................. 55
8.1      Introduction. ................................................................................................. 55
8.2      The Liquidating Trustee. ............................................................................... 56
8.3      Plan as Consensual Arrangement Between Trustee and Lehman Creditors. ... 56
8.4      Lehman Plan Funding. .................................................................................. 57
8.5      Vesting of Assets in Estates of TD Plan Debtors Managed by Liquidating Trustee. ....... 61
8.6      Disposition and Value of Assets .................................................................... 61
8.6.1    Disposition and Value of the Plan Projects........................................ 62
8.6.2    Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other
         Assets. ................................................................................................. 65
8.7      Bond Claims and the Settling Bond Issuer Agreements. ............................... 66
8.7.1    Background. ........................................................................................ 66
8.7.2    Settling Bond Issuer Agreement. ........................................................ 67
8.7.3    Bond Modification Discussions. ......................................................... 70
8.8      Releases for Lehman Released Parties. .......................................................... 70
8.8.1    Creditors' Assignments / Releases for Lehman. .................................. 70
8.8.2    Plan Release for Lehman. ................................................................... 74
8.8.3    Dismissal of Pending Litigation ......................................................... 75
8.8.4    Process for Execution and Delivery of Creditor's
         Assignments / Releases for Lehman. ................................................... 76
8.9      Entry of Final Decrees. ................................................................................. 77
8.10     Dissolution of Trustee Debtors' Committee and Discharge of Trustee and Liquidating
         Trustee. ......................................................................................................... 77
IX DISTRIBUTIONS .................................................................................................. 78
9.1      Distribution Agent. ....................................................................................... 78
9.2      Distributions. ................................................................................................ 78
9.2.1    Dates of Distributions. ....................................................................... 78
9.2.2    Limitation on Liability. ...................................................................... 78
9.3      Old Instruments and Securities. .................................................................... 79
9.3.1    Surrender and Cancellation of Instruments and Securities. ................ 79
9.3.2    Cancellation of Liens. ........................................................................ 79
9.4      De Minimis Distributions and Fractional Shares. ......................................... 79

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9.5     Delivery of Distributions...........................................................................80
9.6     Unclaimed Property..................................................................................80
9.7     Disposition of Unclaimed Property............................................................81
X OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS ............................................81
10.1    Standing for Objections to Claims. ...........................................................81
10.2    Treatment of Disputed Claims. ................................................................82
        10.2.1 No Distribution Pending Allowance. ................................................82
        10.2.2 Distribution After Allowance. ........................................................82
        10.2.3 Reserves for Disputed Claims. ......................................................82
        10.2.4 Certain Disputed Cure Amounts for Secured Real Property Tax Claims...................82
XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................84
11.1    Identification of Executory Contracts and Unexpired Leases........................84
11.2    Executory Contracts Being Assumed or Assumed and Assigned......................84
11.3    Cure Rights..........................................................................................85
11.4    Executory Contracts Being Rejected..........................................................86
11.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee...................86
11.6    Continuing Obligations ............................................................................86
11.7    Bar Date for Rejection Damages.................................................................87
XII EFFECT OF CONFIRMATION OF THE PLAN;  AND PLAN INJUNCTION ...................88
XIII LIMITATION OF LIABILITY ............................................................................89
13.1    No Liability for Solicitation or Participation. ..............................................89
13.2    Limitation of Liability..............................................................................89
XIV CONDITIONS TO CONFIRMATION AND  EFFECTIVENESS OF THE PLAN ...............90
14.1    Conditions Precedent to Entry of the Confirmation Order............................90
14.2    Conditions Precedent to Plan Effectiveness.................................................90
14.3    Conditions Precedent to Entry of the Confirmation Order and to Plan
        Effectiveness.........................................................................................91
XV RETENTION OF JURISDICTION .......................................................................92
XVI MODIFICATION OR WITHDRAWAL OF PLAN ...................................................92
16.1    Modification of Plan.................................................................................92
16.2    Nonconsensual Confirmation. ...................................................................92
XVII MISCELLANEOUS..........................................................................................92
17.1    Changes in Rates Subject to Regulatory Commission Approval. ...................92
17.2    Payment of Statutory Fees........................................................................93
17.3    Payment Dates.......................................................................................93
17.4    Headings...............................................................................................93
17.5    Other Documents and Actions. .................................................................93
17.6    Notices.................................................................................................93
17.7    Governing Law........................................................................................94
17.8    Binding Effect. ......................................................................................94
17.9    Successors and Assigns. ..........................................................................95
17.10   Severability of Plan Provisions. .................................................................95
17.11   No Waiver. ...........................................................................................95
17.12   Inconsistencies. .....................................................................................95
17.13   Exemption from Certain Transfer Taxes and Recording Fees. .......................95
17.14   Post-Confirmation Status Report. .............................................................96
17.15   Post-Confirmation Conversion/Dismissal....................................................96
17.16   Final Decree. ........................................................................................97

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT LIST

EXHIBIT A - List of Contracts and Leases

EXHIBIT B - List of Projects, Their Owners and Descriptions

EXHIBIT C - Easements, Covenants, Conditions, Restrictions and Other Matters of Record
Affecting Real Property, Leasehold Estates or Personalty or Any Interest Therein

EXHIBIT D - List By Plan Debtor Of Unsecured, Non-Priority Claims And Reliance Claim Status
That Will Not Be Contested, Subject To Applicable Conditions

EXHIBIT E - Definitions

# I

## INTRODUCTION

### 1.1    Prefatory Statement.

This *Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors* (the "Plan" [1] or "Joint TD Plan") is filed by the Trustee and Lehman Creditors.

A separate document, entitled Disclosure Statement With Respect to *Third Amended* Joint Chapter 11 Plan for Eight Trustee Debtors Proposed By the Trustee and Lehman Creditors (the "Joint TD Disclosure Statement" or "Disclosure Statement"), is being sent as an accompaniment to the Plan, which may be included in the same envelope as this document or under separate cover.

### 1.2    Process, Disclosure, Voting and Recommendation.

#### 1.2.1    Process.

This Joint TD Plan for the subject eight Trustee Debtors is essentially a blueprint of how the TD Plan Debtors will be structured or liquidated after or as a result of bankruptcy – whether they will survive, the forms of entities they will be, who will own them, and what distributions will be made or required.  Among other things, the Plan designates Classes of Claims and Classes of Interests, identifies Unimpaired and Impaired Classes, sets forth a proposal for the satisfaction of all Claims against, and Interests in, the TD Plan Debtors, and provides adequate means for the implementation of the Joint TD Plan.

Holders of Claims and Interests entitled to vote on the Joint TD Plan will receive with the Plan a Ballot, for voting on the Plan, and will receive the Disclosure Statement.

It is anticipated that besides the solicitation of votes on the Joint TD Plan by the Lehman Creditors and Trustee for the affected eight Trustee Debtors, certain of the Lehman Creditors simultaneously will be soliciting acceptances for a plan for eleven Voluntary Debtors (the "Joint VD Plan").  There is no overlap between the two plans for which the Lehman Creditors (or certain of them) are proponents or co-proponents (the Joint TD Plan and the Joint VD Plan) and votes will be solicited separately as to each such plan from the appropriate creditors. Because there is no overlap,

---

[1] All capitalized terms have the meanings set forth in Article II of this Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  both such plans may be confirmed by the Court.  At the same time, however, the Voluntary Debtors,

2  SCC Acquisitions, Inc. ("Acquisitions") and/or other persons simultaneously may be soliciting

3  acceptances for a plan or plans (each an "Alternative Plan") affecting all or some of the same

4  Debtors and Estates as the Joint TD Plan and Joint VD Plan.  After voting, if only one plan affecting

5  a Debtor receives sufficient accepting votes and otherwise qualifies for Confirmation by law and

6  according to its terms, it will be confirmed by the Bankruptcy Court and become effective as to such

7  Debtor. If both an Alternative Plan and either the Joint VD Plan and/or Joint TD Plan receive

8  sufficient votes and otherwise qualify for Confirmation as to a particular Debtor, the Bankruptcy

9  Court "shall consider the preferences of creditors and equity security holders in determining which

10  plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code.

11  **1.2.2    Special Voting / Election Procedures**

12  **(a)    Voting - General Unsecured Claims or Reliance Claims.**

13  **Ballots for each Holder of a General Unsecured Claim or Reliance Claim also will**

14  **afford the Holder the opportunity to elect that, if its Claim is Allowed, it would receive the**

15  **Lehman Distribution Enhancement.  *By such election and execution and delivery of the Ballot,***

16  ***as the Ballot reflects, the Holder also is executing and delivering the Creditor's Assignment /***

17  ***Release for Lehman set forth in the Plan for the benefit of the Lehman Released Parties*.**

18  **(b)    Voting / Election - Alleged Mechanic's Lien Claims.**

19  **For each Holder identified in advance as having alleged to hold a Mechanic's Lien**

20  **Claim, the Ballot will afford an opportunity to waive any contention that the Holder has a**

21  **Secured Claim senior to the Secured Claim of the applicable Lehman Creditor(s) on the**

22  **applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or**

23  **Reliance Claim, thereby affording the Creditor the opportunity to elect to receive the Lehman**

24  **Distribution Enhancement if its Claim is Allowed.**

25  **1.2.3    Disclosure.**

26  The Disclosure Statement is intended to provide Creditors with information sufficient to

27  enable Creditors to vote on the Plan and has been approved by the Bankruptcy Court as containing

28  sufficient information for that purpose.  The Disclosure Statement includes a summary of the TD

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan Debtors' assets and liabilities, a summary of what Holders of Allowed Claims and Interests will receive under the Joint TD Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan.

Each Creditor should thoroughly review both the Joint TD Plan and Joint TD Disclosure Statement before deciding whether the Creditor will accept or reject the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved for solicitation purposes by the Bankruptcy Court, have been authorized for use in soliciting acceptances or rejections of the Plan.  The Trustee and Lehman Creditors recommend approval of this Plan.

## II

## DEFINITIONS AND RULES OF INTERPRETATION

### 2.1    Definitions.

The defined terms set forth in **Exhibit "E"** are incorporated into the Plan by this reference and shall apply to capitalized terms used in the Plan, provided that any capitalized term that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### 2.2    Rules of Construction.

For purposes of the Plan and Disclosure Statement, unless otherwise provided in the Plan or in the Disclosure Statement, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to a document or to a schedule means such document or schedule as it may have been or may be amended, modified, supplemented or restated pursuant to the Plan or otherwise from time to time; (d) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (e) except as otherwise indicated in the Plan, all references in the Plan or the Disclosure Statement to Sections and Articles are references to Sections and Articles of or to the Plan; (f) unless otherwise indicated, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   of the Plan; (g) unless otherwise provided in the Plan or the Disclosure Statement, any reference in

2   the Plan or the Disclosure Statement to a contract, instrument, release, indenture, agreement, or other

3   document being in a particular form or on particular terms and conditions means that such document

4   shall be substantially and materially in such form or substantially and materially on such terms and

5   conditions; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall

6   apply to the extent such rules are not inconsistent with the express terms of the Plan or the

7   Disclosure Statement or any other provision in this section.

8                                            **III**

9                                    **PLAN OVERVIEW**

10          The overview of the Plan in this Article III of the Plan is not intended to substitute for the

11   Joint TD Disclosure Statement or for the more specific terms set forth in the Plan other than in this

12   Plan Article III.  If there are any discrepancies between the overview provided in this Plan Article

13   III. and the other provisions of the Plan or the Disclosure Statement, the other provisions shall

14   control.

15          **3.1    Background.**

16          In the Bankruptcy Court, under case number 8:08-bk-17206-ES, the chapter 11 bankruptcy

17   cases of twenty-six affiliated debtors (the "Debtors") are being jointly administered.  The Debtors

18   include seventeen debtors who continue to manage, and remain in possession of, their assets as

19   debtors and debtors in possession (the "Voluntary Debtors") and nine debtors for whom Steven M.

20   Speier was duly appointed as the chapter 11 trustee (the "Trustee Debtors").

21          This Plan is a chapter 11 plan for eight Trustee Debtors (each a "TD Plan Debtor"):  Delta

22   Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal PSV,

23   SunCal Torrance, and SunCal Oak Knoll.

24          The co-proponents of this Plan are the Trustee and the Lehman Creditors.  The Lehman

25   Creditors are:  (a) Lehman ALI, Inc., (b) Northlake Holdings LLC, (c) OVC Holdings LLC, each in

26   its capacity as a lender in its own right and/or as agent for themselves and/or Lehman Commercial,

27   with respect to the applicable Lehman Loans, and (d) Lehman Commercial, as the owner of a legal

28   or equitable interest in certain of the Lehman Loans.  The Lehman Creditors are referred to in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan as both the "Lehman Proponents," with reference to their role as proponents of this Plan, and as the Lehman Creditors, with reference to their other capacities. The Lehman Creditors are Creditors holding Secured Claims owed, collectively, approximately $1.1 billion secured by deeds of trust on each of the Plan Projects and secured by any Cash Collateral of the TD Plan Debtors and certain other Assets of the TD Plan Debtors' Estates, all, collectively, worth substantially less than $1.1 billion.

The Trustee and Lehman Creditors are pleased to be able to present this Plan jointly. Each of the TD Plan Debtors is insolvent. The Plan Projects are the primary Assets of the Estates of the TD Plan Debtors and each Plan Project is worth less than the outstanding amount of the applicable Lehman Loan secured by such Plan Project. Under this Plan, Holders of Interests receive nothing. Moreover, because the Lehman Creditors appreciate that the TD Plan Debtors have and will have no ability to pay, in the foreseeable future, the full amount of the debt owed to the Lehman Creditors giving rise to the Lehman Secured Claims and their first priority Liens on the Plan Projects or, without additional funding, to develop the Plan Projects, the Lehman Creditors want ownership of their collateral. Upon Confirmation of this Plan, as more fully set forth below, among other things, the Trustee, for and on behalf of the TD Plan Debtors, will convey ownership of the Plan Projects to the designees of the Lehman Creditors (the Lehman Nominees). In exchange, the Lehman Creditors will pay substantial sums for the benefit of other Creditors through the Lehman Plan Funding, as and to the extent provided under this Plan.

**3.2** **Overview of Treatment of Claims and Relevant Agreements.**

Essential features of the Plan are summarized in this section, subject to the following sections of the Plan. Because the Cases of the TD Plan Debtors have been jointly administered, but not substantively consolidated, the Plan provides separate treatment for Holders of Claims and Interests against each TD Plan Debtor.

**3.2.1** **Lehman Plan Funding.**

Under the Plan, the Lehman Creditors will provide for the benefit of other Creditors the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding for

payment of Post-Confirmation Expenses (inclusive of repayment to the Lehman Creditors for their Administrative Claims that exceed $38.8 million as of approximately June 1, 2011).

### 3.2.2 Bond-Backed Claims and Bond Issuer Settlement(s).

Many of the Claims against the TD Plan Debtors, or portions thereof, are, or were at some point in time, secured by Project Bonds (the "Bond-Backed Claims") issued by Arch Insurance Company ("Arch") or Bond Safeguard Insurance Company or its Affiliate, Lexon Insurance Company (collectively, "Bond Safeguard" and together with Arch, the "Bond Issuers"). The Bond Issuers have made and may continue to make payments to certain Creditors who are beneficiaries of Project Bonds based on the Bond Issuer's own obligations, which payments and treatment from the Bond Issuers may be different than, and may or may not be in addition to, payments provided under the Plan. Nonetheless, to facilitate this Plan, unless waived by the Lehman Creditors in their sole and absolute discretion, as a condition to entry of the Confirmation Order and prior to the Effective Date, certain Lehman Related Parties must have entered into a Settling Bond Issuer Agreement, summarized in Plan Section 8.7, with each Bond Issuer. In the event the Lehman Creditors do waive the requirement for entry into such a settlement with either or both Bond Issuers and waive attendant rights to withdraw the Plan, the treatment of Claims in the Plan accounts for the possibility of settlements or of no settlements with one or both of the Bond Issuers. For each Settling Bond Issuer Agreement entered into as required under the Plan, as more fully set forth in Plan Section 8.7.2 below, pursuant thereto and subject to the specific terms and conditions thereof, *inter alia*: (a) the applicable Settling Bond Issuer will agree to perform under its Future Work Bonds if a demand is made for such performance, (b) to the extent that there is or may be an Allowed Claim for the obligation to perform the relevant Future Work covered by a Future Work Bond of the applicable Settling Bond Issuer, the Lehman Nominee taking title to an applicable Plan Project will cooperate in the performance of such Future Work and will agree to reimburse the Settling Bond Issuer for certain amounts, *e.g.*, with respect to payments made by the Settling Bond Issuer under Future Work Bonds, (c) the Settling Bond Issuer will waive all or part of the payment under the Plan with respect to certain Claims and (d) the Settling Bond Issuer will assign to a Lehman Related Party(ies) (or release) all or part of its Claims against each of the TD Plan Debtors and its related claims against

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any Bond Obligors.

### 3.2.3    Treatment of Non-Priority Unsecured Claims and Interests.

(a)    Amounts Payable for Class 6 Allowed Reliance Claims.  Each of these Claims must be an Allowed Claim for New Value, arising after August 1, 2007 and timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as a Scheduled Claim.  Class 6 Claims are Impaired.  Under the Plan, each Holder of an Allowed Class 6 Claim receives the following Distributions:

o    The Lehman Guaranteed Minimum Distribution:  An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Reliance Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 6 Claim; and

o    The Lehman Distribution Enhancement:  An additional Cash Distribution is available to Holders of Allowed Class 6 Claims that increases a Holder's Distributions to 40% to 50% of its Allowed Reliance Claim only if the Holder of the Class 6 Claim completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties – also part of the Lehman Creditor Distribution Funding:

▪    This additional Distribution would increase the total Distribution to 50% if the aggregate amount of all Allowed Reliance Claims and Allowed General Unsecured Claims, subject to certain exclusions, is no greater than $23 million; and

▪    This additional Distribution would result in a total Distribution of between 40% to 50% determined as more fully set forth in the Plan if the aggregate amount of all Allowed Reliance Claims and Allowed General Unsecured Claims, subject to certain exclusions, exceeds $23 million.

▪    *As of June 1, 2011, the Lehman Creditors' good faith estimate is that electing holders of Allowed Reliance Claims will receive 50% of the Allowed Amount of such Claim (rather than something less) because they estimate the relevant*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*aggregate total of Class 6 and Class 7 Claims at approximately $20 million whereas the relevant threshold is $23 million*; and

○ <u>Residual Cash</u>:  Each Holder of an Allowed Class 6 Claim also will receive a share of any Residual Cash of the applicable TD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable TD Plan Debtor that are any of the following:  (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7).  Allowed Lehman-Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash.

(b)    <u>Amounts Payable for Class 7 Allowed General Unsecured Claims</u>.  These Claims consist of Allowed Claims that have no priority or security and do not fit within the definitions of Reliance Claims (Class 6) or Settling Bond Issuer-Related Future Work Claims (Class 8).  Class 7 Claims are Impaired.  Under the Plan, each Holder of an Allowed Class 7 Claim receives the following Distributions:

○ <u>The Lehman Guaranteed Minimum Distribution</u>:  An unconditional, guaranteed Cash Distribution equal to 1% of  its Allowed Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 7 Claim; and;

○ <u>The Lehman Distribution Enhancement</u>:  <u>An additional Cash Distribution</u> is available to Holders of Allowed Class 7 Claims that increases a Holder's Distributions to 5% of its Allowed Claim if the Holder of the Class 7 Claim completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties – also part of the Lehman Creditor Distribution Funding; and

○ <u>Residual Cash</u>:  Each Holder of an Allowed Class 7 Claim also will receive a share of any Residual Cash of the applicable TD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable TD Plan Debtor that are any of the following:  (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7). Allowed Lehman-Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash.

(c)    <u>Timing of Payments after the Effective Date for Allowed Class 6 Claims and Allowed Class 7 Claims</u>. Payment as to each applicable Allowed Class 6 Claim or Allowed Class 7 Claim will occur after the Effective Date and, generally, promptly after the payment is due pursuant to the applicable Allowed Claim:

o    As to the payments due from the Lehman Creditor Distribution Funding:

▪    For each or the portion of each Allowed Class 6 Claims that is not a Future Obligation (see description below):

•    the first 1% or 40% payment is to be made after the Effective Date within a short time after a Claim is determined to be Allowed, *i.e.*, generally within thirty (30) days following such Claim's Allowance Determination Date (with the higher amount payable if the applicable Reliance Claimant executes the Creditor's Assignment / Release for Lehman); and

•    the possibly applicable additional 10% payment (payable only to Reliance Claimants who received the 40% payment) would be payable, generally, within thirty (30) days following the Classes 6/7 Allowance Determination Date (*i.e.*, the date that the Classes 6/7 Claims Amount, which, as more fully defined below, is the total of certain Allowed Reliance Claims and Allowed General Unsecured Claims, is finally determined) and would be payable only if the Classes 6/7 Claims Amount is determined not to exceed $23 million.

▪    For each or the portion of each Allowed Class 7 Claim that is not a Future Obligation (see description below), payment is to occur after the Effective Date within a short time after the applicable Claim is determined to be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Allowed (*i.e.*, generally within thirty (30) days following such Claim's

2    Allowance Determination Date).

3    o    As to payments due from Residual Cash, if any, with respect to any Allowed Class 6

4    Claim or Allowed Class 7 Claim or portion thereof that is not a Future Obligation,

5    such payment is to occur, if and as the Liquidating Trustee determines it is available.

6    (*See* Plan Sections 6.6 & 6.7.)

7    o    For each or the portion of each Allowed Class 6 Claim or Allowed Class 7 Claim that

8    is a Future Obligation, payment is to occur by the <u>later of</u> (a) the date due for such

9    Distributions for other Allowed Class 6 Claims or Allowed Class 7 Claims,

10    respectively, and (b) thirty (30) days following the date that the Claim or portion

11    thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and

12    non-contingent) and the Creditor holding such Claim sends a notice of such change in

13    status of such Claim or portion thereof to the Lehman Proponents at the address set

14    forth in Plan Section 17.6.

15    (d)    <u>Settling Bond Issuer-Related Claims</u>.  These include Settling Bond Issuer-Backed

16    Claims and Settling Bond Issuer-Owned Claims.  If a Bond Issuer and the applicable Lehman

17    Related Party(ies) have entered into a Settling Bond Issuer Agreement, the Settling Bond Issuer-

18    Backed Claims will be certain Claims against TD Plan Debtors that are Bond-Backed Claims

19    secured by Project Bonds issued by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims

20    will be those certain Claims against the TD Plan Debtors owned and held by such Settling Bond

21    Issuer.  Settling Bond Issuer-Owned Claims will receive treatment under the Plan consistent with the

22    applicable Settling Bond Issuer Agreement.  (*See* Plan Section 8.7.)  Under the Plan, Allowed

23    Settling Bond Issuer-Backed Claims receive the following treatment:

24    o    *Settling Bond Issuer-Backed Claims which are Sr. Secured Mechanic's Lien Claims*

25    *(Class 3):*  Each of these Secured Claims of Bond-Backed Claimants, if and once

26    Allowed, would receive payment from the Lehman Creditor Distribution Funding of

27    the full amount of the Claim, exclusive of any penalty or similar amounts, payable as

28    a lump sum on the Effective Date if the original maturity date has passed or,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    otherwise, payable by curing any defaults and paying any fees on the Effective Date

2    and making further payments as required under the applicable contract or statute after

3    reinstatement (Section 1124(2) Unimpairment).  (*See* Plan Section 6.3.3(c).)

4        o    *Settling Bond Issuer-Backed Claims which are Reliance Claims or General*

5    *Unsecured Claims (Classes 6 and 7):*  If Allowed, these Claims of Bond-Backed

6    Claimants are to receive the applicable treatment in Class 6 or Class 7 depending on

7    whether such Claims fit the definition of Reliance Claims (Class 6) or General

8    Unsecured Claims (Class 7).  The Bond Issuer also may have separate obligations to

9    the Bond-Backed Claimants in respect of these Claims such that these Claims may be

10    paid or settled by the Bond Issuer (and possibly acquired by the Bond Issuer as part of

11    any such payment or settlement).

12        o    *Settling Bond Issuer-Backed Future Work Claims (Class 8):*  The Settling Bond

13    Issuer is to perform and/or pay in full for the performance of the Future Work

14    obligations with respect to each Settling Bond Issuer-Backed Future Work Claim, if

15    Allowed, without penalties, and with the obligation reinstated as to any maturity

16    applicable prior to the applicable Petition Date. The Lehman Nominee that takes title

17    to the Plan Project to which the Claim relates will, *inter alia,* (a) be required to

18    cooperate in connection with the performance of such Future Work obligations, (b)

19    take an assignment from the Settling Bond Issuer of certain of such Settling Bond

20    Issuer's Claims against the applicable TD Plan Debtors and Bond Obligors (unless

21    such Claims are released), and (c) reimburse such Settling Bond Issuer agreed

22    amounts, *e.g.*, for payments made by such Settling Bond Issuer under the applicable

23    Future Work Bonds. Nonetheless, the applicable Creditor holding a Settling Bond

24    Issuer-Backed Future Work Claim may agree to forego performance or payment for

25    certain Future Work directly or through release of the applicable Future Work Bond.

26    (*See* Plan Sections 6.8 and 8.7.)

27        (e)    <u>Class 9 Interests</u>.  These are the ownership interests in each of the TD Plan Debtors.

28    Class 9 is Impaired.  Under the Plan, Holders of the Class 9 Interests get nothing and retain nothing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**3.2.4**    <u>Treatment of Secured Claims and Claims with Statutory Priorities</u>.

(a)      For Class 1 Allowed Secured Real Property Tax Claims, at the election of the Lehman Creditors, each Holder either (1) would receive a lump sum payment from the Lehman Creditor Distribution Funding of the full amount of its Claim on the Effective Date, exclusive of any penalty or similar amounts (Section 1124(2) Unimpairment) or (2) would receive 100% of its Allowed Claim through equal Cash payments, with penalties, payable every third month following the Effective Date until January 6, 2014. If the lump sum cure payment treatment is elected, Holders of Allowed Secured Real Property Tax Claims that dispute the amount of damages are to be timely paid undisputed sums and afforded a mechanism by which to have the disputed amount set aside by the Liquidating Trustee in the Plan Reserve and released to such Holder if authorized by a Final Order. (*See* Plan Sections 6.1 and 10.2.4.)

(b)      For Class 2 Allowed Lehman Secured Claims, the Plan provides for the Trustee to convey, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), the Plan Projects of the TD Plan Debtors to the Lehman Creditors or Lehman Nominees. (*See* Plan Section 6.2.)

(c)      Class 3 consists of Allowed Sr. Secured Mechanic's Lien Claims.

     o      Alleged Holders of Class 3 Claims are offered under the Plan an opportunity to elect to have their Claims treated as General Unsecured Claims or Reliance Claims:

         ▪      The Lehman Creditors believe that some Mechanic's Lien Claims are General Unsecured Claims or Reliance Claims (to be treated in Class 6 or Class 7, if Allowed). The Lehman Creditors believe that their Lehman Secured Claims are senior Encumbrances to the Mechanic's Lien Claims and that, because the Plan Projects are worth less than the aggregate outstanding amount of the Lehman Loans that are secured by the Lehman Claim Liens, there is no value in the Plan Projects to which the junior Liens of the Holders of Mechanic's Lien Claims could attach.

         ▪      If a Creditor with a Mechanic's Lien Claim, that it contends is a Secured Claim (which means such Claim must be senior to the applicable Secured

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claim of the Lehman Creditor(s) on the applicable Project) waits to find out after an objection to such Claim whether its Claim will be Allowed as having the status of a Sr. Secured Mechanic's Lien Claim, General Unsecured Claim or Reliance Claim, then, the Plan offers no opportunity at such later point for the Creditor to avail itself of the Lehman Distribution Enhancement, which, as provided in the Plan, essentially offers Creditors an opportunity on their Ballots to elect to receive an enhanced recovery of 40% to 50% for Allowed Reliance Claims and 5% for Allowed General Unsecured Claims.

- Thus, each listed Holder of a Mechanic's Lien Claim will be provided a Ballot on which such Holder may elect to vote its Claim as a General Unsecured Claim or a Reliance Claim, as applicable, and will have the opportunity to elect to receive the Lehman Distribution Enhancement in respect of its Allowed Claim (in exchange for the Creditor's Assignment / Release for Lehman). To elect this option, the Creditor must and would waive all contentions that its Claim is a Secured Claim against the applicable Plan Project. If such Holder does not elect to vote its Claims as General Unsecured Claims or Reliance Claims, thereby electing to proceed as a Holder of Mechanic's Lien Claims, then if it is subsequently determined that such Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be eligible to receive the Lehman Distribution Enhancement.

o Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or otherwise settled by the applicable Bond Issuer.

o With respect to Mechanic's Lien Claims that are Allowed Sr. Secured Mechanic's Lien Claims, under the Plan, at the election of the Lehman Creditors, each Holder of such Class 3 Claim either (1) would receive payment from the Lehman Creditor Distribution Funding (or, possibly, from a Settling Bond Issuer for a Settling Bond Issuer-Backed Claim that is a Class 3 Claim) of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective

Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract after reinstatement (Section 1124(2) Unimpairment), or (2) would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment).  (*See* Plan Section 6.3.)

o   The Settling Bond Issuer(s) (if any) and the Lehman Creditors are consenting to less favorable treatment for any Allowed Sr. Secured Mechanic's Lien Claims that are also, respectively, Settling Bond Issuer-Owned Non-Future Work Claims or Lehman-Owned Settling Bond Issuer-Related Claims.

(d)     For Class 4 Allowed Other Secured Claims, each Holder, if any, would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment) or, at the election of the Lehman Creditors: either (1) would receive back its collateral through surrender or abandonment (Unimpairment With Surrender or Abandonment) or (2) would receive payment from the Lehman Creditor Distribution Funding of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract or statute after reinstatement (Section 1124(2) Unimpairment). (*See* Plan Section 6.4.)

(e)     For Class 5 Allowed Priority Claims and the unclassified Allowed Administrative Claims, and Allowed Priority Tax Claims, the Plan provides for 100% payment from the Lehman Creditor Distribution Funding. (*See* Plan Section 6.5.)

### 3.2.5   Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s) and the Lehman Creditors.

(a)     Under the Plan, Lehman Creditors holding Class 6 or Class 7 Claims have agreed to take nothing for such Claims unless such Claims are Lehman-Owned Settling Bond Issuer-Related Claims.  Further, for the Lehman-Owned Settling Bond Issuer-Related Claims in Classes 3, 6 and 7 held by the Lehman Creditors or held by any Lehman Related Parties, the Lehman Related Parties will receive only their proportional share of Residual Cash of the applicable TD Plan Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(sharing Pro Rata with other Holders of Allowed Reliance Claims (Class 6) and Allowed General Unsecured Claims (Class 7)).  Lehman Related Parties may hold Lehman-Owned Settling Bond Issuer-Related Claims, in part, because, under each Settling Bond Issuer Agreement, Settling Bond Issuer-Owned Non-Future Work Claims in Classes 3, 6 and 7 may be transferred to Lehman Related Parties on the Effective Date (in exchange for the consideration afforded the applicable Settling Bond Issuer under the applicable Settling Bond Issuer Agreement); and

(b)    Each Settling Bond Issuer is consenting through the applicable Settling Bond Issuer Agreement to itself receive nothing from the applicable TD Plan Debtors' Estates for certain Settling Bond Issuer-Owned Non-Future Work Claims.  (Nonetheless, due to the ongoing liability of the applicable Settling Bond Issuer under the relevant Future Work Bonds, the applicable Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Backed Future Work Claims in Class 8, summarized above.)

## IV

## TREATMENT OF UNCLASSIFIED CLAIMS

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority. However, in accordance with Bankruptcy Code § 1123(a)(1), certain types of Claims are not classified in any Classes under the Plan and the Proponents have not placed such Claims in a Class. These Claims are "unclassified."  As to Allowed Administrative Claims and Allowed Priority Tax Claims, these Claims are not considered Impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  The treatment of these unclassified Claims is as provided below.

**4.1**    **Treatment of Allowed Administrative Claims.** Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, and subject to the Administrative Claim Bar Date set forth in the Plan, the Liquidating Trustee shall pay each Allowed Administrative Claim in full, in Cash, by the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred prior to the Effective Date in the ordinary course of post-petition business by the TD Plan Debtors (including without limitation post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

(a)      **Treatment and Repayment of the Lehman Administrative Loan(s).**

The Lehman Administrative Loans (certain post-petition and pre-Confirmation financing provided by Lehman ALI pursuant to order(s) of the Bankruptcy Court, as more fully defined above) are Allowed in the amount loaned or advanced by Lehman ALI after the commencement of the Cases net of any repayment thereof, shall be paid in Cash in full on the Effective Date from the Lehman Creditor Distribution Funding or shall be payable from the Lehman Creditor Distribution Funding at such later time and on such other terms as the Lehman Creditors may agree.  Pending any such payment or during a period of voluntary deferral by Lehman ALI, the Lehman Administrative Loans shall continue to have a first priority Lien against the respective Assets securing such loans as of the moment prior to the Effective Date, including any Cash of the TD Plan Debtors, such as may be deposited in the Plan Reserve or Post-Confirmation Accounts, and any proceeds thereof.

(b)      **Administrative Claim Bar Date.**

Any Administrative Claim that is subject to an Administrative Claim Bar Date and not filed by the applicable Administrative Claim Bar Date shall not be Allowed, and no Distribution shall be made on account of any such Administrative Claim.

(i)      **General Administrative Claim Bar Date.**

All applications of Professionals for final Professional Fees for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the TD Plan Debtors' postpetition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which the bar date described in the following section shall apply) shall be filed with the Bankruptcy

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Court and served upon the Liquidating Trustee no later than the General Administrative Claim Bar Date (the first Business Day following the sixtieth (60th) day after the Confirmation Date), unless such date is extended by the Bankruptcy Court after notice to the Liquidating Trustee. Any such request for payment of an Administrative Claim that is subject to the General Administrative Claim Bar Date and that is not filed and served on or before the General Administrative Claim Bar Date shall be forever barred; any party that seeks payment of Administrative Claims that is required to file a request for payment of such Administrative Claims and does not file such a request by the deadline established in the Plan, shall be forever barred from asserting such Administrative Claims against the TD Plan Debtors, their properties or assets or the successors thereto, including, without limitation, the Liquidating Trustee, Lehman Nominees and the TD Plan Debtors' Estates.

**(ii)    Administrative Tax Claim Bar Date.**

All requests for payment of Administrative Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date ("Administrative Tax Claims") and for which no bar date has otherwise previously been established, must be filed and served on the Liquidating Trustee on or before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the date that the tax return for such tax year or period to which such Taxes relate is required to be filed with the applicable governmental unit. Any Holder of an Administrative Tax Claim that is required to file a request for payment of such Taxes and does not file and properly serve such a request by the applicable bar date shall be forever barred from asserting any such Administrative Tax Claims against the TD Plan Debtors, their properties or assets or the successors thereto, including, without limitation, the Liquidating Trustee, Lehman Nominees and the TD Plan Debtors' Estates.

**4.2    Treatment of Priority Tax Claims.**

Priority Tax Claims are certain unsecured income, employment and other Taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each Holder of such a Priority Tax Claim receive the present value of such Claim in deferred Cash payments over a period not exceeding five (5) years from the applicable Petition Date and that such treatment not be less

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   favorable than the treatment accorded to non-priority unsecured creditors.

2   　　　　Allowed Priority Tax Claims, if any, shall receive from the Liquidating Trustee (i) equal

3   Cash payments to be made on the last Business Day of each third full-calendar month following the

4   Effective Date, *provided that* the first payment need not be made any sooner than thirty (30) days

5   following the Effective Date and *provided that* such periodic payments are to be payable until

6   January 6, 2014[2], on which date the final payment shall be due, with all such payments totaling

7   100% of the principal amount of such Claim, plus interest on any unpaid balance from the Effective

8   Date, calculated at the nonbankruptcy interest rate applicable on the Effective Date, if any, or (ii)

9   such other treatment agreed to by the Holder of the Allowed Priority Tax Claim and the Liquidating

10  Trustee, provided such treatment is on more favorable terms to the applicable TD Plan Debtor's

11  Estate than the treatment set forth in clause (i) hereof; <u>provided that</u>, prepayments shall be made and

12  permitted with the consent or at the direction of a Lehman Creditor, including payment in full any

13  time on or after the Effective Date.

**V**

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

16  　　　　As required by the Bankruptcy Code, the Plan places Claims and Interests into various

17  Classes according to their right to priority and other relative rights. This Plan specifies whether each

18  Class of Claims or Interests is Impaired or Unimpaired, and the Plan sets forth the treatment each

19  Class will receive. The table below lists the Classes of Claims established under the Plan and states

20  whether each particular Class is Impaired or left Unimpaired by the Plan. A Class is "Unimpaired" if

21  the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims

22  or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code. (*See*

23  Plan Article II.)

24  　　　　For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed

25  Secured Claim shall be deemed to be in its own subclass even if not expressly designated as such.

26  Further, in the event that any alleged Secured Claim is not, or only is partially, Allowed as a Secured

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] This date is five years after January 6, 2009, which was the date of the orders for relief in the Cases of the TD Plan Debtors.

Claim, the deficiency amount (Unsecured Deficiency Claim), if Allowed and, where applicable, filed by the Unsecured Deficiency Claim Bar Date, will constitute a Class 7 Claim against the applicable TD Plan Debtor, and will receive the same treatment as provided to other Claims in Class 7 of such TD Plan Debtor.  The deficiency amounts with respect to the Claims of Lehman Creditors (the Lehman Creditor Deficiency Claims) are Allowed General Unsecured Claims in Class 7.

The Plan does not intend to and does not provide for substantive consolidation of any of the TD Plan Debtors for any purpose, *e.g.*, for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests, including calculations of Distributions among Creditors, or for the obligations created under the Plan with respect to Distributions for Creditors.  Thus, each Allowed Claim in a Class shall be deemed to be in one or more subclasses of the applicable TD Plan Debtor as the classification tables herein reflect. If at the hearing on Confirmation, the Proponents establish a reasonable good faith belief that a particular Class or subclass contains no Allowed Claims, such Class or subclass shall be disregarded thereat.

THE INVESTIGATION OF CLAIMS AND INTERESTS IS NOT YET COMPLETE, AND THEIR LISTING IN THE PLAN OR IN THE TABLES BELOW SHOULD NOT BE CONSTRUED AS INDICATING OR PROVIDING THAT SUCH CLAIMS ARE ALLOWED UNDER THE PLAN IN ANY RESPECT (WHETHER AS TO AMOUNT OR AS TO STATUS, E.G., AS A SECURED CLAIM, SECURED REAL PROPERTY TAX CLAIM OR SR. SECURED MECHANIC'S LIEN CLAM), EXCEPT AS EXPRESSLY SET FORTH FOR THE PARTICULAR CLAIM.

**ADDITIONALLY, ALTHOUGH THE LISTED *POTENTIAL* CLASS 3 SR. SECURED MECHANIC'S LIEN CLAIMS ARE CLAIMS AS TO WHICH A MECHANIC'S LIEN MAY HAVE BEEN FILED, SOME OF THE IDENTIFIED CLAIMS ARE BELIEVED TO BE JUNIOR TO THE LEHMAN SECURED CLAIMS AGAINST THE APPLICABLE PLAN PROJECT AND, THUS, ARE NOT BELIEVED TO BE ENTITLED TO THE TREATMENT AFFORDED IN CLASS 3 FOR ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS, BUT, INSTEAD, IF ALLOWED, ENTITLED TO THE CLASS 7 OR CLASS 6**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TREATMENT, AS APPLICABLE.**

Reliance Claims are Claims as defined herein.  No Creditor can obtain treatment under the Plan as a holder of a Reliance Claim unless it indicates on its Ballot that it holds a Reliance Claim and verifies on its Ballot by its signature that its Claim meets the criteria for such status (which also will be set forth on the Ballot).  For the convenience and benefit of Creditors, the Lehman Creditors have attached to the Plan as **Exhibit "D"** a non-exhaustive list of potential Reliance Claims.  The Lehman Creditors will not challenge the status of the listed Claims on **Exhibit "D"** as Reliance Claims in the "Reliance Claim Amount" listed thereupon against the therein indicated TD Plan Debtor IF the Claim ultimately is Allowed in the amount of the "Creditors' Claim Amount" listed thereupon.  Creditors not listed at all in **Exhibit "D"** or believing they hold Reliance Claims in higher amounts than listed thereupon may indicate such status and amounts on their Ballots.  Such contentions, however, will be subject to potential objection. The inclusion of allegedly Secured Claims in **Exhibit "D"** in no way prejudices such Creditor's Claim.  The listing in **Exhibit "D"** is solely for such Creditors' convenience and benefit in the event they elect to waive their security on their Ballot. The listing of a Claim in **Exhibit "D"** also does not establish that the Claim or its amount is Allowed and does not waive or eliminate any existing or potential objection to such Claim other than as to its "Reliance Claim" status, to the extent provided as specified in this paragraph and under the Plan. Thus, other objections to the Claim still may be brought, prosecuted or compromised and, as noted, if the ultimate Allowed Claim amount differs from the "Creditors' Claim Amount" listed or the applicable proof of claim was inaccurate, then the "Reliance Claim Amount" for such Claim also may be reduced or eliminated. The failure to list a Claim on **Exhibit "D"** establishes nothing whatsoever about a Claim. (**Exhibit "D"** was prepared with available information and may not be free from error.)

The Lehman Secured Claims and Lehman Creditor Deficiency Claims set forth in the tables below are calculated using, *inter alia*, the applicable Project Value for the applicable Plan Project and estimates of Cash Collateral from recent monthly operating reports filed by the Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 1:  CLASSIFICATION OF SECURED REAL PROPERTY TAX CLAIMS, **IF SO ALLOWED** | | Class 1 is Unimpaired | Class 1 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) | |
| Class 1.1 | Secured Real Property Tax Claim of Riverside County against the Oak Valley Project. | SunCal Oak Valley; SunCal Oak Valley 9 | |
| Class 1.2 | Secured Real Property Tax Claim of Riverside County against the Heartland Project. | SunCal Heartland; SunCal Heartland 5 | |
| Class 1.3 | Secured Real Property Tax Claim of Los Angeles County against the Northlake Project. | SunCal Northlake; SunCal Northlake Scheduled Amount | |
| Class 1.4 | Secured Real Property Tax Claim of Orange County against the Marblehead Project. | SunCal Marblehead; SunCal Marblehead 49 and 57 | |
| Class 1.5 | Secured Real Property Tax Claim of San Bernardino County against the Palm Springs Village Project. | SunCal PSV; SunCal PSV 22 | |
| Class 1.6 | Secured Real Property Tax Claim of Contra Costa County against the Delta Coves Project. | Delta Coves; Delta Coves 16 | |
| Class 1.7 | NONE - RESERVED | SunCal Torrance | |
| Class 1.8 | Secured Real Property Tax Claim (disputed) of Alameda County against the Oak Knoll Project. | SunCal Oak Knoll; SunCal Oak Knoll 22, 23 and 24 | |

| CLASS 2:  CLASSIFICATION OF ALLOWED LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). | |
| | **SunCal Oak Valley Loan Agreement** | | |
| Class 2.1 | Allowed Claim of OVC Holdings or its assignee or successor against SunCal Oak Valley arising from the SunCal Oak Valley Loan Agreement in the Allowed Amount of $141,630,091.63 and as an Allowed Secured Claim in the amount of $21.3 million plus Cash Collateral | SunCal Oak Valley; SunCal Oak Valley 16 | |
| | **SunCal Marblehead / SunCal Heartland Loan Agreement** | | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 2:  CLASSIFICATION OF ALLOWED LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| Class 2.2 | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Heartland arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $354,325,126.15 and as an Allowed Secured Claim in the amount of $8 million plus Cash Collateral | | SunCal Heartland; SunCal Heartland: 9 |
| | **SunCal Northlake Loan Agreement** | | |
| Class 2.3 | Allowed Claim of Northlake Holdings or its assignee or successor against SunCal Northlake arising from the Northlake Loan Agreement in the Allowed Amount of $123,654,776.88 and as an Allowed Secured Claim in the amount of $24.5 million plus Cash Collateral | | SunCal Northlake; SunCal Northlake 6 |
| | **SunCal Marblehead / SunCal Heartland Loan Agreement** | | |
| Class 2.4 | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Marblehead arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $354,325,126.15 and as an Allowed Secured Claim in the amount of $188 million plus Cash Collateral | | SunCal Marblehead; SunCal Marblehead: 21 |
| | **SunCal PSV Loan Agreement** | | |
| Class 2.5 | Allowed Claim of Lehman ALI or its assignee or successor arising from the SunCal PSV Loan Agreement in the Allowed Amount of $88,257,340.20 and as an Allowed Secured Claim in the amount of $13.8 million plus Cash Collateral | | SunCal PSV; SunCal PSV 12 |
| | **Delta Coves Loan Agreement** | | |
| Class 2.6 | Allowed Claim of Lehman ALI or its assignee or successor against Delta Coves arising from the Delta Coves Loan Agreement in the Allowed Amount of $206,023,142.48 and as an Allowed Secured Claim in the amount of $28.4 million plus Cash Collateral | | Delta Coves; Delta Coves 21 |
| | **SunCal Oak Knoll/SunCal Torrance Loan Agreement** | | |

| CLASS 2:  CLASSIFICATION OF ALLOWED LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| Class 2.7 | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Torrance arising from the SunCal Oak Knoll/SunCal Torrance Agreement in the Allowed Amount of $157,870,186.15 and as an Allowed Secured Claim in the amount of $25.1 million plus Cash Collateral | | SunCal Torrance; SunCal Torrance: 4 |
| Class 2.8 | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Oak Knoll arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the Allowed Amount of $158,141,364.64 and as an Allowed Secured Claim in the amount of $48.6 million plus Cash Collateral | | SunCal Oak Knoll; SunCal Oak Knoll: 12 |

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.1.0 | Mechanic's Lien Claim of HD Supply Construction or its assignee or successor against the Oak Valley Project in the amount of $52,806. | | SunCal Oak Valley; SunCal Oak Valley 3 |
| Class 3.1.1 | Mechanic's Lien Claim of Pinnick Inc. or its assignee or successor against the Oak Valley Project in the amount of $966,987. | | SunCal Oak Valley; SunCal Oak Valley 12 and 14 |
| Class 3.1.2 | Mechanic's Lien Claim of Hillcrest Contracting Inc. or its assignee or successor against the Oak Valley Project in the amount of $136,567. | | SunCal Oak Valley; SunCal Oak Valley 23 |
| Class 3.1.3 | Mechanic's Lien Claim of MacKenzie Landscape or its assignee or successor against the Oak Valley Project in the amount of $121,297. | | SunCal Oak Valley; SunCal Oak Valley 25 |
| Class 3.1.4 | Mechanic's Lien Claim of All American Asphalt or its assignee or successor against the Oak Valley Project in the amount of $60,355. | | SunCal Oak Valley; SunCal Oak Valley 26 |
| Class 3.1.5 | Mechanic's Lien Claim of Los Angeles Times or its assignee or successor against the Oak Valley Project in the amount of $43,610. | | SunCal Oak Valley; SunCal Oak Valley 33 and 34 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|
| Class | Claims | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.1.6 | Mechanic's Lien Claim of Proactive Engineering or its assignee or successor against the Oak Valley Project in the amount of $280,685. | SunCal Oak Valley; SunCal Oak Valley 36 |
| Class 3.2.0 | Mechanic's Lien Claim of HD Supply Construction or its assignee or successor against the Heartland Project in the amount of $47,675. | SunCal Heartland;  SunCal Heartland 2 |
| Class 3.2.1 | Mechanic's Lien Claim of Pinnick, Inc. or its assignee or successor against the Heartland Project in the amount of $563,159. | SunCal Heartland; SunCal Heartland 8 |
| Class 3.2.2 | Mechanic's Lien Claim of Dennis M. McCoy & Sons or its assignee or successor against the Heartland Project in the amount of $941,960. | SunCal Heartland; SunCal Heartland 16 |
| Class 3.3 | NONE - RESERVED | SunCal Northlake |
| Class 3.4.0 | Mechanic's Lien Claim of SunCal Marblehead by Trimax Systems, Inc. or its assignee or successor against the Marblehead Project in the amount of $75,286. | SunCal Marblehead; SunCal Marblehead 3 |
| Class 3.4.1 | Mechanic's Lien Claim of Butsko Utility Design, Inc. or its assignee or successor against the Marblehead Project in the amount of $6,250. | SunCal Marblehead; SunCal Marblehead 4 |
| Class 3.4.2 | Mechanic's Lien Claim of RMF Contracting, Inc. or its assignee or successor against the Marblehead Project in the amount of $264,749. | SunCal Marblehead; SunCal Marblehead 28 |
| Class 3.4.3 | Mechanic's Lien Claim of The Jasper Companies or its assignee or successor against the Marblehead Project in the amount of $165,260. | SunCal Marblehead; SunCal Marblehead 29 |
| Class 3.4.4 | Mechanic's Lien Claim of Kirk Negrete, Inc. dba United Steel Placers or its assignee or successor against the Marblehead Project in the amount of $270,056. | SunCal Marblehead; SunCal Marblehead 38 |
| Class 3.4.5 | Mechanic's Lien Claim of RBF Consulting or its assignee or successor against the Marblehead Project in the amount of $125,093. | SunCal Marblehead; SunCal Marblehead 39 |
| Class 3.4.6 | Mechanic's Lien Claim of RJ Noble Co. or its assignee or successor against the Marblehead Project in the amount of $175,030. | SunCal Marblehead; SunCal Marblehead 42 |
| Class 3.4.7 | Mechanic's Lien Claim of Orange County Striping Services or its assignee or successor against the Marblehead Project in the amount of $4,400. | SunCal Marblehead; SunCal Marblehead 54 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
| --- | --- | --- |
| Class | Claims | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.4.8 | Mechanic's Lien Claim of Savala Equipment Co. Inc. or its assignee or successor against the Marblehead Project in the amount of $34,440. | SunCal Marblehead; SunCal Marblehead 56 |
| Class 3.4.9 | Mechanic's Lien Claim of Rockey Murata Landscaping or its assignee or successor against the Marblehead Project in the amount of $285,643. | SunCal Marblehead; SunCal Marblehead 60 |
| Class 3.5.0 | Mechanic's Lien Claim of Brudvik Inc. or its assignee or successor against the Palm Springs Village Project in the amount of $43,365. | SunCal PSV; SunCal PSV 4 |
| Class 3.5.1 | Mechanic's Lien Claim of Larry Jacinto Construction Inc. or its assignee or successor against the Palm Springs Village Project in the amount of $212,663. | SunCal PSV; SunCal PSV 24 |
| Class 3.5.2 | Mechanic's Lien Claim of William + Paddon Architects + Planners Inc. or its assignee or successor against the Palm Springs Village Project in the amount of $73,798. | SunCal PSV; SunCal PSV 9 and 10 |
| Class 3.5.3 | Mechanic's Lien Claim of Southern California Edison or its assignee or successor against the Palm Springs Village Project in the amount of $23,861. | SunCal PSV; SunCal PSV 26 |
| Class 3.5.4 | Mechanic's Lien Claim of Pacific Masonry Walls, Inc. or its assignee or successor against the Palm Springs Village Project in the amount of $314,061. | SunCal PSV; SunCal PSV 39 |
| Class 3.5.5 | Mechanic's Lien Claim of J.R. Simplot Company or its assignee or successor against the Palm Springs Village Project in the amount of $3,467. | SunCal PSV; SunCal PSV 40 |
| Class 3.5.6 | Mechanic's Lien Claim of Desert Pipeline Inc. or its assignee or successor against the Palm Springs Village Project in the amount of $469,784. | SunCal PSV; SunCal PSV 47 |
| Class 3.5.7 | Mechanic's Lien Claim of MSA Consulting or its assignee or successor against the Palm Springs Village Project in the amount of $666,897. | SunCal PSV; SunCal PSV 43 |
| Class 3.5.8 | Mechanic's Lien Claim of Jackson DeMarco or its assignee or successor against the Palm Springs Village Project in the amount of $52,234. | SunCal PSV; SunCal PSV 45 |
| Class 3.6.0 | Mechanic's Lien Class of, or formerly of, Hertz Equipment Rental Corporation or its assignee or successor against the Delta Coves Project in the amount of $25,444. | Delta Coves; Delta Coves 2 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3: CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.6.1 | Mechanic's Lien Claim of MBH Architects or its assignee or successor against the Delta Coves Project in the amount of $97,091. | | Delta Coves; Delta Coves 8 |
| Class 3.6.2 | Mechanics Lien Claim of Top Grade Construction, Inc. or its assignee or successor against the Delta Coves project in the amount of $250,000. | | Delta Coves; Delta Coves 17 |
| Class 3.7 | NONE – RESERVED | | SunCal Torrance |
| Class 3.8.0 | Mechanic's Lien Claim of Oliphant Gold, Inc. or its assignee or successor against the Oak Knoll Project in the amount of $456,476. | | SunCal Oak Knoll; SunCal Oak Knoll 46 |
| Class 3.8.1 | Mechanic's Lien Claim of RGA Environmental, Inc. or its assignee or successor against the Oak Knoll Project in the amount of $75,617. | | SunCal Oak Knoll; SunCal Oak Knoll 1 |
| Class 3.8.2 | Mechanic's Lien Claim of BKF Engineers or its assignee or successor against the Oak Knoll Project in the amount of $308,817. | | SunCal Oak Knoll; SunCal Oak Knoll 19 |
| Class 3.8.3 | Mechanic's Lien Claim of CST Environmental Inc. or its assignee or successor against the Oak Knoll Project in the amount of $4,316,169. | | SunCal Oak Knoll; SunCal Oak Knoll 4 and 9 |
| Class 3.8.4 | Mechanic's Lien Claim of The Professional Tree Care Co. or its assignee or successor against the Oak Knoll Project in the amount of $93,925.01. | | SunCal Oak Knoll; SunCal Oak Knoll 3 |

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor |
| Class 4.1 | Allowed Other Secured Claims against SunCal Oak Valley | | SunCal Oak Valley |
| Class 4.2 | Allowed Other Secured Claims against SunCal Heartland | | SunCal Heartland |
| Class 4.3 | Allowed Other Secured Claims against SunCal Northlake | | SunCal Northlake |
| Class 4.4 | Allowed Other Secured Claims against SunCal Marblehead | | SunCal Marblehead |
| Class 4.5 | Allowed Other Secured Claims against SunCal PSV | | SunCal PSV |
| Class 4.6 | Allowed Other Secured Claims against Delta Coves | | Delta Coves |

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, **IF SO ALLOWED** | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor |
| Class 4.7 | Allowed Other Secured Claims against SunCal Torrance | | SunCal Torrance |
| Class 4.8 | Allowed Other Secured Claims against SunCal Oak Knoll | | SunCal Oak Knoll |

| CLASS 5: CLASSIFICATION OF PRIORITY CLAIMS, **IF SO ALLOWED** | | Class 5 is Unimpaired | Class 5 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 5.1 | NONE - RESERVED | | SunCal Oak Valley |
| Class 5.2 | NONE – RESERVED | | SunCal Heartland |
| Class 5.3 | NONE – RESERVED | | SunCal Northlake |
| Class 5.4 | Priority Claims against SunCal Marblehead (alleged amount - $10,950). | | SunCal Marblehead; SunCal Marblehead Scheduled Amount and SunCal Marblehead 45 |
| Class 5.5 | NONE – RESERVED | | SunCal PSV |
| Class 5.6 | NONE – RESERVED | | SunCal Delta Coves |
| Class 5.7 | NONE – RESERVED | | SunCal Torrance |
| Class 5.8 | Priority Claims against SunCal Oak Knoll (alleged amount - $235). | | SunCal Oak Knoll; SunCal Oak Knoll 26 |

| CLASS 6: CLASSIFICATION OF RELIANCE CLAIMS, **IF ALLOWED** | | Class 6 is Impaired | Class 6 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claims |
| Class 6.1 | Reliance Claims against SunCal Oak Valley | | SunCal Oak Valley - Various Filed and Scheduled |
| Class 6.2 | Reliance Claims against SunCal Heartland | | SunCal Heartland - Various Filed and Scheduled |
| Class 6.3 | Reliance Claims against SunCal Northlake | | SunCal Northlake - Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 6:  CLASSIFICATION OF RELIANCE CLAIMS, IF ALLOWED | | Class 6 is Impaired | Class 6 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claims |
| Class 6.4 | Reliance Claims against SunCal Marblehead | | SunCal Marblehead - Various Filed and Scheduled |
| Class 6.5 | Reliance Claims against SunCal PSV | | SunCal PSV - Various Filed and Scheduled |
| Class 6.6 | Reliance Claims against Delta Coves | | Delta Coves - Various Filed and Scheduled |
| Class 6.7 | Reliance Claims against SunCal Torrance | | SunCal Torrance - Various Filed and Scheduled |
| Class 6.8 | Reliance Claims against SunCal Oak Knoll | | SunCal Oak Knoll - Various Filed and Scheduled |

| CLASS 7:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED [3] | | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor |
| Class 7.1 | General Unsecured Claims against SunCal Oak Valley (including the Allowed Lehman Creditor Deficiency Claim of OVC Holdings or its assignee or successor arising from the SunCal Oak Valley Loan Agreement in the Allowed Amount of $120,281,727) | | SunCal Oak Valley |
| Class 7.2 | General Unsecured Claims against SunCal Heartland (including the Allowed Lehman Creditor Deficiency Claim of Lehman ALI or its assignee or successor arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $346,367,273) | | SunCal Heartland |
| Class 7.3 | General Unsecured Claims against SunCal Northlake (including the Allowed Lehman Creditor Deficiency Claim of Northlake Holdings or its assignee or successor arising from the Northlake Loan Agreement in the Allowed Amount of $99,128,242) | | SunCal Northlake |
| Class 7.4 | General Unsecured Claims against SunCal Marblehead (including the Allowed Lehman Creditor Deficiency Claim of Lehman ALI or its assignee or successor arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $166,471,901) | | SunCal Marblehead |
| Class 7.5 | General Unsecured Claims against SunCal PSV (including the Allowed Lehman Creditor | | SunCal PSV |

---

[3] The General Unsecured Claims of the Lehman Creditors indicated below are calculated by deducting the applicable Project Value and Cash Collateral from the total Allowed Claim arising under the subject Lehman Loan.

| CLASS 7:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, <u>IF SO ALLOWED</u>[3] | | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor |
| | Deficiency Claim of Lehman ALI or its assignee or successor arising from the SunCal PSV Loan Agreement in the Allowed Amount of $74,448,224) | | |
| Class 7.6 | General Unsecured Claims against Delta Coves (including the Allowed Lehman Creditor Deficiency Claim of Lehman ALI or its assignee or successor arising from the Delta Coves Loan Agreement in the Allowed Amount of $178,149,258) | | Delta Coves |
| Class 7.7 | General Unsecured Claims against SunCal Torrance (including the Allowed Lehman Creditor Deficiency Claim of Lehman ALI or its assignee or successor arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the Allowed Amount of $132,720,070) | | SunCal Torrance |
| Class 7.8 | General Unsecured Claims against SunCal Oak Knoll (including the Allowed Lehman Creditor Deficiency Claim of Lehman ALI or its assignee or successor arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the Allowed Amount of $109,639,240) | | SunCal Oak Knoll |

| CLASS 8:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, <u>IF ALLOWED</u> | | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | <u>TD Plan Debtor and Basis for Claims</u> |
| Class 8.1 | Settling Bond Issuer-Related Future Work Claims against SunCal Oak Valley (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #24 was filed in the contingent amount of $155,426,657 and (b) the Claims of Bond Safeguard, if Allowed, for which (i) Proof of Claim #41 was filed in the amount of $24,489,848.98 and (ii) Proof of Claim #42 was filed with "unknown" indicated for the amount) | | SunCal Oak Valley - Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 8:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|
| **Class** | **Claims** | TD Plan Debtor and Basis for Claims |
| Class 8.2 | Settling Bond Issuer-Related Future Work Claims against SunCal Heartland (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #16 was filed in the contingent amount of $155,426,657 and (b) the Claims of Bond Safeguard, if Allowed, for which (i) Proof of Claim #28 was filed in the amount of $55,918,440.00 and (ii) Proof of Claim #29 was filed with "unknown" indicated for the amount) | SunCal Heartland |
| Class 8.3 | Settling Bond Issuer-Related Future Work Claims against SunCal Northlake (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #9 was filed in the contingent amount of $155,426,657 and (b) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim #16 was filed with "unknown" indicated for the amount) | SunCal Northlake |
| Class 8.4 | Settling Bond Issuer-Related Future Work Claims against SunCal Marblehead (including, to the extent arising from or covered by a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #34 was filed in the contingent amount of $155,426,657, (b) the Claim of the City of San Clemente, if Allowed, for which Proof of Claim #43 was filed in the amount of $39,971,734, and (c) the Claims of Bond Safeguard, if Allowed, for which (i) Proof of Claim #69 was filed in the amount of $36,836.00 and (ii) Proof of Claim #70 was filed with "unknown" indicated for the amount) | SunCal Marblehead - Various Filed and Scheduled |
| Class 8.5 | Settling Bond Issuer-Related Future Work Claims against SunCal PSV (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #28 was filed in the contingent amount of $155,426,657 and (b) the Claims of Bond Safeguard, if Allowed, for which (i) Proof of Claim #58 was filed in the amount of $29,765,800.60 and (ii) Proof of Claim #59 was filed with "unknown" indicated for the amount) | SunCal PSV |

| CLASS 8: CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, _IF ALLOWED_ | | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | TD Plan Debtor and Basis for Claims |
| Class 8.6 | Settling Bond Issuer-Related Future Work Claims against Delta Coves (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #25 was filed in the contingent amount of $155,426,657 and (b) the Claims of Bond Safeguard, if Allowed, for which (i) Proof of Claim #32 was filed in the amount of $24,413,824.00 and (ii) Proof of Claim #33 was filed with "unknown" indicated for the amount) | | Delta Coves |
| Class 8.7 | Settling Bond Issuer-Related Future Work Claims against SunCal Torrance (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, (a) the Claim of Arch, if Allowed, for which Proof of Claim #6 was filed in the contingent amount of $155,426,657 and (b) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim #12 was filed with "unknown" indicated for the amount) | | SunCal Torrance |
| Class 8.8 | Settling Bond Issuer-Related Future Work Claims against SunCal Oak Knoll (including, to the extent arising from a Future Work Bond of a TD Plan Debtor, the Claim of Bond Safeguard, if Allowed, for which Proof of Claim #33 was filed with "unknown" indicated for the amount) | | SunCal Oak Knoll |

| CLASS 9: CLASSIFICATION OF INTERESTS, _IF ALLOWED_ | Class 9 is Impaired | Class 9 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote |
|---|---|---|
| Class | Interests (and alleged Holders) | TD Plan Debtor and Basis for Interests |
| Class 9.1 | Interests in SunCal Oak Valley (of SCLV Oak Valley LLC and SCC/Oak Valley, LLC). | SunCal Oak Valley Scheduled |
| Class 9.2 | Interests in SunCal Heartland (of SunCal Marblehead Heartland Master LLC). | SunCal Heartland Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 9:  CLASSIFICATION OF INTERESTS, **IF ALLOWED** | | **Class 9 is Impaired** | **Class 9 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote** |
|---|---|---|---|
| Class | Interests (and alleged Holders) | | TD Plan Debtor and Basis for Interests |
| Class 9.3 | Interests in SunCal Northlake (of SCLV Northlake, LLC and SCC/Northlake, LLC). | | SunCal Northlake Scheduled |
| Class 9.4 | Interests in SunCal Marblehead (of SunCal Marblehead Heartland Master LLC). | | SunCal Marblehead Scheduled |
| Class 9.5 | Interests in SunCal PSV (of Lehman SunCal PSV Holdings LLC). | | SunCal PSV Scheduled |
| Class 9.6 | Interests in Delta Coves (of Delta Coves Member LLC). | | Delta Coves Scheduled |
| Class 9.7 | Interests in SunCal Torrance (of Lehman SunCal Real Estate Holdings LLC). | | SunCal Torrance Scheduled |
| Class 9.8 | Interests in SunCal Oak Knoll (of Lehman SunCal Real Estate Holdings LLC). | | SunCal Oak Knoll Scheduled |

## VI

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Any references in the Plan to Classes 1 through 9 are summary references made for convenience only to the group of subclasses of each such Class.  Voting and treatment for each subclass are to remain distinct. Regardless of the treatment provided in the Plan for any Holder of a Claim, the Holder may agree to accept less favorable treatment and no Creditor shall receive more than 100% of its Allowed Claim (plus any interest, fees or other cost or expenses payable under this Plan).  Provisions for treatment below for Holders of Allowed Claims are not an indication that any particular Claim is Allowed unless expressly provided.

**6.1**     **Treatment of Allowed Secured Real Property Tax Claims (Class 1).**

The treatment of any Allowed Secured Real Property Tax Claims (Class 1) under the Plan is as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.1.1   Voting and Impairment.

Class 1 is Unimpaired under the Plan, and each Holder of an Allowed Secured Real Property Tax Claim is not entitled to vote on the Plan.

### 6.1.2   Liens.

As of the Effective Date, each Holder of an Allowed Secured Real Property Tax Claim, on account of such Claim, shall retain its underlying Liens on the applicable real property collateral pending full payment in accordance with this Plan.

### 6.1.3   Distributions and Distribution Dates.

Each Allowed Secured Real Property Tax Claim shall receive, on account of such Claim, one of the two following alternative treatments identified immediately below in full and final satisfaction of each such Allowed Secured Real Property Tax Claim.

### (a)   Lump Sum Cure Payment - Section 1124(2) Unimpairment.

On the Effective Date, the applicable Allowed Secured Real Property Tax Claim shall be cured and reinstated, and, as so cured and reinstated, shall receive a lump sum payment in full on the Effective Date from the Lehman Plan Funding.  Under this treatment, the Holder of an Allowed Secured Real Property Tax Claim shall be paid Cash on the Effective Date equal to:

(1)   Base Amount:  The amount of such Allowed Secured Real Property Tax Claim, including any applicable costs, fees or charges, but only to the extent all such amounts were due as of the first date (the "Default Date") when last payable without any amounts that only would be due based on the lack of timely payment (and thus excluding any penalties for untimely payment) (the "Base Amount"); plus

(2)   Minimum Damages:  Interest on the Base Amount from the Default Date until payment payable at the federal judgment interest rate applicable as of the Confirmation Date (the "Minimum Damages"); plus

(3)   Additional Damages or Additional Interest:  To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the Minimum Damages (including any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    contention that a higher penalty or interest rate applies), it will receive the excess as set forth in Plan

2    Section 10.2.4; or

3                    **(b)**        **Quarterly Payments.**

4            As permitted by Bankruptcy Code § 1129(a)(9)(D), each Holder of an Allowed Secured Real

5    Property Tax Claim shall receive value as of the Effective Date equal to 100% of its Allowed

6    Secured Real Property Tax Claim through equal Cash payments from the owner of that Plan Project

7    serving as collateral for the subject Claim, as its own obligation and that of the Liquidating Trustee,

8    totaling the Allowed Amount of the Claim, including any applicable costs, fees or charges and <u>plus</u>

9    any amounts payable under California Revenue & Taxation Code §§ 2618 & 4103 (whether

10   denominated as interest or penalties), with each payment to be made on the last Business Day of

11   each third full-calendar month following the Effective Date (*provided that* the first payment need not

12   be made any sooner than thirty (30) days following the Effective Date).  Such periodic payments

13   shall continue until January 5, 2014, on which date the final payment shall be due.  January 5, 2014

14   is the date five years after January 6, 2009, which was when the orders for relief were entered in the

15   Cases of the TD Plan Debtors. Prepayments are permitted any time on or after the Effective Date,

16   including payment in full of the Allowed Amount of the Claim, including any applicable costs, fees

17   or charges and <u>plus</u> any accrued amounts payable under California Revenue & Taxation Code §§

18   2618 & 4103, but only with the consent of (and shall be made if at the direction of) a Lehman

19   Creditor; and

20                   **(c)**        **Determination of Applicable Treatment.**

21           The first treatment indicated above shall be applicable to each subclass <u>unless</u>, as to such

22   subclass, a Lehman Creditor selects, and, prior to the Effective Date, notifies the subject Creditor of

23   the Lehman Creditors' selection of, the second alternative treatment.

24           **6.2**      **Treatment of Lehman Secured Claims (Class 2).**

25           The treatment of Lehman Secured Claims (Class 2) under the Plan shall be as follows:

26                   **6.2.1**    <u>**Voting.**</u>

27           Class 2 is <u>Impaired</u> under the Plan, and each Holder of a Lehman Secured Claim is <u>entitled to</u>

28   <u>vote</u> on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.2.2  Liens.

As of the Effective Date, each Holder of a Lehman Secured Claim, on account of such Claim, shall retain its Lehman Claim Liens pending full payment in Cash of both the secured and unsecured portions of its Claim.

### 6.2.3  Claims.

Each Claim of a Lehman Creditor shall be Allowed for voting and all other purposes of this Plan in the amount and with the status as a Secured Claim or General Unsecured Claim as set forth in the classification tables in Plan Article V. above.

### 6.2.4  Disposition of Collateral

(a)    On the Effective Date, the Plan Projects shall be conveyed free and clear of Encumbrances other than the Lehman Claim Liens and other Permitted Liens, as more fully set forth in Plan Section 8.6.1, to one or more Lehman Nominees, as designated by the Lehman Creditor(s) with a Secured Claim against the applicable Plan Project; and

(b)    On the Effective Date, the Liquidating Trustee shall use Cash Collateral for a Lehman Secured Claim or Lehman Administrative Loan first, to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof), and, next, if any remains, to pay the applicable Lehman Creditor; and

(c)    Any other remaining collateral for a Lehman Secured Claim may be retained and liquidated or sold by the Liquidating Trustee with the Net Cash Proceeds therefrom to be paid to the applicable Lehman Creditor, *provided that:*

(i)    the Liquidating Trustee and Lehman Creditors may agree to any alternative disposition of such collateral, including abandonment to the applicable TD Plan Debtor, which abandonment shall be deemed to occur on notice from the Liquidating Trustee; and

(ii)    if no disposition of such collateral occurs within six (6) months after the Effective Date, the Liquidating Trustee shall give the Lehman Creditors thirty (30) days' notice indicating the Liquidating Trustee's intention to turn over the collateral to a particular Lehman Creditor and describing the collateral and:

(1)    If before the expiration of the notice period, the Lehman Creditor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rejects such turn over, the Liquidating Trustee shall abandon such collateral to the applicable TD

Plan Debtor, which abandonment shall be deemed to occur on subsequent notice from the

Liquidating Trustee to the TD Plan Debtor and applicable Lehman Creditors; and

(2)    If the Lehman Creditor does not reject such turn over, upon expiration

of the notice period, the Liquidating Trustee shall turn over such collateral to the applicable Lehman

Creditors.

### 6.3    Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3).

The treatment of any Allowed Sr. Secured Mechanic's Lien Claims (Class 3) under the Plan

shall be as follows:

#### 6.3.1    Voting and Impairment.

Class 3 is Unimpaired under the Plan, and each Holder of an Allowed Sr. Secured

Mechanic's Lien Claim in Class 3, if any, is not entitled to vote on the Plan.

The Lehman Proponents dispute that any Mechanic's Lien Claims could be Allowed as Sr.

Secured Mechanic's Lien Claims because they believe that the Lehman Creditors' Liens are senior

Encumbrances and there is no value in the junior Liens of the Holders of Mechanic's Lien Claims.

For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim, the Ballot

will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the

Secured Claim of the applicable Lehman Creditor(s) on the applicable Plan Project and to assert,

instead, that its Claim is a General Unsecured Claim or Reliance Claim, thereby affording the

Creditor, as more fully set forth below, the opportunity to elect to receive the Lehman Distribution

Enhancement if its Claim is Allowed. **If the Creditor holding a Mechanic's Lien Claim instead**

**waits to see whether its Claim later is deemed to be entitled to "secured" status and it is**

**unsuccessful in such effort, even if its Claim is Allowed as a Reliance Claim or General**

**Unsecured Claim, it will only receive 1% on its Claim plus a proportional share of Residual**

**Cash and it will not have the opportunity to elect to receive the Lehman Distribution**

**Enhancement.**

#### 6.3.2    Liens.

As of the Effective Date, each Holder of an Allowed Sr. Secured Mechanic's Lien Claim in

Class 3, if any, on account of such Claim, shall <u>retain its underlying Liens</u> on the applicable

collateral pending full payment;

### 6.3.3   <u>Distributions and Distribution Dates.</u>

Each Allowed Sr. Secured Mechanic's Lien Claim, if any, shall receive, on account of such

Claim, one of the two following alternative treatments identified immediately below in full and final

satisfaction of any such Allowed Sr. Secured Mechanic's Lien Claim:

(a)    **Section 1124(2) Unimpairment.**On the Effective Date, the applicable Allowed Sr. Secured Mechanic's Lien Claim shall be cured and reinstated as of the first date when last payable without interest, fees or penalties.  The Holder of such Claim shall receive from the owner of the Plan Project serving as collateral for the subject Claim (or from the applicable Settling Bond Issuer for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Backed Non-Future Work Claims ), as an obligation of such owner of the Plan Project and the Liquidating Trustee for the applicable Estate, payment in full equal to the amount of such Allowed Sr. Secured Mechanic's Lien Claim due as of the first date when last payable without interest, fees or penalty, plus any interest thereupon from such date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged.  Such amounts shall be payable in Cash as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date or, otherwise, shall be payable by curing any defaults and paying any fees in Cash on the Effective Date and making further payments in Cash as required under the applicable contract after reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)); or

(b)    **Simple Unimpairment.**As of the Effective Date, the Holder of any such Allowed Sr. Secured Mechanic's Lien Claim, on account of such Claim, shall have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Sr. Secured Mechanic's Lien Claim and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

(c)    **Determination of Applicable Treatment.**

The first treatment indicated above shall be applicable to each subclass <u>unless</u>, as to such subclass either the Lehman Creditor with a Secured Claim against the applicable Plan Project or the Lehman Nominee, if any, taking title to such Plan Project selects and, prior to payment, notifies the applicable Creditor or Creditors of its selection of, the second alternative treatment, in which case the second alternative treatment shall be applicable; provided that only the first treatment shall be applicable for Allowed Sr. Secured Mechanic's Lien Claims that are Settling Bond Issuer-Backed

1    Non-Future Work Claims; and

2    　　　**6.3.4    Less Favorable Treatment for Lehman Creditors and Settling Bond**

3    **Issuer(s) by Consent.**

4    　　　(a)    The Lehman Creditors have consented that, in lieu of the treatment provided for other

5    Allowed Claims in Class 3, each Holder of an Allowed Lehman-Owned Settling Bond Issuer-

6    Related Claim in Class 3, on account of such Claim, only shall be entitled under the Plan to receive

7    from the applicable TD Plan Debtor the Residual Cash of the applicable TD Plan Debtor's Estate Pro

8    Rata with Holders of other Allowed Claims in the following subclasses for such TD Plan Debtor:  (i)

9    other Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-

10   Related Claims, (ii) Allowed Reliance Claims (Class 6), and (iii) Allowed General Unsecured

11   Claims (Class 7).

12   　　　(b)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for

13   other Allowed Claims in Class 3, shall forego certain payments from the TD Plan Debtors' Estates

14   for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Owned Non-

15   Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective

16   Date or may waive contentions that such Claim is a Secured Claim.  Based on its ongoing liability

17   under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling

18   Bond Issuer-Related Future Work Claims in Class 8.  (*See* Plan Section 8.7.)

19   　　　　　　**6.3.5    Unsecured Deficiency Claims.**

20   　　　If a Holder of an Allowed Sr. Secured Mechanic's Lien Claim contends it holds or wishes to

21   assert an Unsecured Deficiency Claim related to its Allowed Sr. Secured Mechanic's Lien Claim

22   then, by the Unsecured Deficiency Claims Bar Date (which is no later than the first Business Day

23   that is at least thirty (30) days following the Effective Date) and regardless of any prior Filing of one

24   or more Proofs of Claim by such Holder, such Holder must file (and serve upon the Liquidating

25   Trustee and the Lehman TD Lenders) an amended Proof of Claim (in compliance with Bankruptcy

26   Rule 3001) asserting, inter alia, the amount of such Unsecured Deficiency Claim.  Any such

27   Unsecured Deficiency Claim, if Allowed, shall be treated as a General Unsecured Claim in Class 7.

28   (With respect to Class 7 treatment, the exchange of a Creditors' Assignment / Release for Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for the Lehman Distribution Enhancement is a settlement offer under the Plan to be effectuated through the voting / balloting process for the Plan and is not available thereafter and thus is not available to Claims asserted in accordance with this provision.)

**6.4    Treatment of Allowed Other Secured Claims (Class 4).**

The treatment of any Allowed Other Secured Claims in Class 4 under the Plan shall be as follows:

**6.4.1    Voting and Impairment.**

Class 4 is Unimpaired under the Plan, and each Holder of an Allowed Secured Claim in Class 4, if any, is not entitled to vote on the Plan.

**6.4.2    Liens.**

As of the Effective Date, each Holder of an Allowed Other Secured Claim in Class 4, if any, on account of such Claim, shall retain its underlying Liens on the applicable collateral pending full payment.

**6.4.3    Distributions and Distribution Dates.**

Each Allowed Other Secured Claim, if any, will receive, in full and final satisfaction of any such Allowed Other Secured Claim, the first following treatment identified immediately below unless the Lehman Proponents or any of them selects the second or third following alternative treatment identified below, in which case the selected alternative treatment shall be applicable:

**(a)    Simple Unimpairment.**

As of the Effective Date, the Holder of any such Allowed Other Secured Claim in Class 4, on account of such Claim, shall have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Other Secured Claim in Class 4 and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; or

**(b)** **Unimpairment With Surrender or Abandonment.** As of the

Effective Date, the Liquidating Trustee will abandon or surrender to the Holder of any such Allowed

Other Secured Claim in Class 4 the property securing such Allowed Other Secured Claim in Class 4

as of the Effective Date and will turn over possession of such collateral to the Holder of such

Allowed Other Secured Claim as soon as practicable thereafter; or **Section 1124(2) Unimpairment.**

On the Effective Date, the applicable Allowed Other Secured Claim shall be cured and

reinstated as of the first date when last payable without interest, fees or penalties.  The Holder of

such Claim shall receive, as an obligation of the Liquidating Trustee for the applicable Estate,

payment in full equal to the amount of such Allowed Other Secured Claim in Class 4 due as of the

first date when last payable without interest, fees or penalty, plus any interest thereupon from such

date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law,

plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of

any penalty amounts thereof at any time incurred or charged.  Such amounts shall be payable in Cash

as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date

or, otherwise, shall be payable by curing any defaults and paying any fees in Cash on the Effective

Date and making further payments in Cash as required under the applicable contract or statute after

reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)).

**(d)** **Unsecured Deficiency Claims.**

If a Holder of an Allowed Other Secured Claim contends it holds or wishes to assert an

Unsecured Deficiency Claim related to its Allowed Other Secured Claim then, by the Unsecured

Deficiency Claims Bar Date (which is no later than the first Business Day that is at least thirty (30)

days following the Effective Date) and regardless of any prior Filing of one or more Proofs of Claim

by such Holder, such Holder must file (and serve upon the Liquidating Trustee and the Lehman TD

Lenders) an amended Proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, *inter*

*alia*, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if

Allowed, shall be treated as a General Unsecured Claim in Class 7.  (With respect to Class 7

treatment, the exchange of a Creditors' Assignment / Release for Lehman for the Lehman

Distribution Enhancement is a settlement offer under the Plan to be effectuated through the voting /

balloting process for the Plan and is not available thereafter and thus is not available to Claims asserted in accordance with this provision.)

### 6.5 Treatment of Allowed Priority Claims (Class 5).

The treatment of any Allowed Priority Claims in Class 5 under the Plan shall be as follows:

#### 6.5.1 Voting and Impairment.

Class 5 is Unimpaired under the Plan, and each Holder of an Allowed Priority Claim in Class 5 is not entitled to vote on the Plan.

#### 6.5.2 Distributions and Distribution Dates.

Each Holder of an Allowed Priority Claim in Class 5 shall be paid, on account of such Claim as an obligation of the Liquidating Trustee for the applicable Estate, the full amount of such Allowed Priority Claim in Cash by the later of (i) the Effective Date, and (ii) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim.

### 6.6 Treatment of Allowed Reliance Claims (Class 6).

The treatment of any Allowed Reliance Claims in Class 6 under the Plan shall be as follows:

#### 6.6.1 Voting and Impairment.

Class 6 is Impaired under the Plan, and each Holder of an Allowed Reliance Claim is entitled to vote on the Plan.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.  For any Creditor to vote its Claim as a Reliance Claim, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.

#### 6.6.2 Distributions.

##### (a) Lehman Creditor Distribution Funding.

###### (i) Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed Reliance Claim shall receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman Creditors.

###### (ii) Lehman Distribution Enhancement.

A Holder of an Allowed Reliance Claim only will receive the Lehman Guaranteed Minimum

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a Reliance Claim, who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with this Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, shall, to the extent its Reliance Claim is Allowed, have reserved the right to the following and thereby shall receive, on account of such Allowed Claim, the following additional amount, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman Creditors:

(1) **Classes 6/7 Claims Amount Exceeds $23 Million:**

If the Classes 6/7 Claims Amount totals more than $23 million, then, the Liquidating Trustee shall pay an additional thirty-nine percent (39%) of the Allowed Amount of such Claim; or

(2) **Classes 6/7 Claims Amount No More Than $23 Million:**

If the Classes 6/7 Claims Amount does not total more than $23 million, then, the Liquidating Trustee shall pay an additional forty-nine percent (49%) of the Allowed Amount of such Claim.

(b) **Distribution of Residual Cash.**

Each Holder of an Allowed Reliance Claim, shall receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such TD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims (Class 6), and (iii) Allowed General Unsecured Claims (Class 7).

(c) **Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 6.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed Reliance Claims that are Bond-Backed Claims, which, thus, may be

paid or settled by the applicable Settling Bond Issuer (and may be acquired by such Settling Bond Issuer as part of any such payment or settlement).

### 6.6.3    Distribution Dates.

Distributions in the amounts provided under this Plan are payable to Holders of Allowed Reliance Claims after the Effective Date as follows:

(a)    **Lehman Creditor Distribution Funding.**

(i)    **Lehman Guaranteed Minimum Distribution.**

Any Lehman Guaranteed Minimum Distribution due as to an Allowed Reliance Claim or portion thereof that is not a Future Obligation shall be payable within thirty (30) days following such Claim's Allowance Determination Date;

(ii)    **Lehman Distribution Enhancement.**

(a)    For each Allowed Reliance Claim or portion thereof entitled to the Lehman Distribution Enhancement that is not a Future Obligation, an additional thirty-nine percent (39%) of the Allowed Amount of such Claim shall be payable within thirty (30) days following such Claim's Allowance Determination Date.  If the Classes 6/7 Claims Amount does not exceed $23 million, each Allowed Reliance Claim or portion thereof entitled to the Lehman Distribution Enhancement that is not a Future Obligation shall receive an additional ten percent (10%) of the Allowed Amount of such Claim, payable within thirty (30) days following the Classes 6/7 Allowance Determination Date; and

(b)    Additionally, the following savings provision (the "Class 6 Savings Provision") shall be applicable to ensure that the actual dollar amount of the Lehman Distribution Enhancement for Class 6 Allowed Claims is not actually less just because the Classes 6/7 Claims Amount exceeds $23 million than if such amount does not exceed $23 million:

(i)    *Distribution and Timing:*  If the Classes 6/7 Claims Amount exceeds $23 million, then, within thirty (30) days following the Classes 6/7 Allowance Determination Date, Holders of Allowed Class 6 Claims or portions thereof entitled to the Lehman Distribution Enhancement that are not Future Obligations shall receive, in addition to the Distributions otherwise calculated under this Plan, an additional amount to be calculated as

described in this paragraph. The calculation of that additional amount assumes, for calculating purposes, that no Claim or portion thereof is a Future Obligation and begins with the amount that would be payable to Holders of Class 6 and Class 7 Allowed Claims included in the Classes 6/7 Claims Amount if (a) the Classes 6/7 Claims Amount, instead of exceeding $23 million, exactly equaled $23 million, (b) all eligible Creditors elected to receive the Lehman Distribution Enhancement, and (c) assuming, to the benefit of Holders of Class 6 Allowed Claims included in the Classes 6/7 Claims Amount, that such $23 million includes all of the Class 6 Aggregate Claims Amount (up to $23 million).  From that hypothetical amount payable to Holders of Class 6 and 7 Allowed Claims is to be deducted the amounts that would be payable under the Plan to the Holders of Class 6 and Class 7 Allowed Claims, before application of the Class 6 Savings Provision, with respect to the actual Allowed Claims included in the Classes 6/7 Claims Amount, assuming that all Holders thereof elected to receive the Lehman Distribution Enhancement.  Such positive difference, if any, shall be allocated Pro Rata among all Holders of Allowed Reliance Claims, regardless of whether the Holder is entitled to the Lehman Distribution Enhancement, but such allocation, once calculated, only shall be payable to Holders of Allowed Reliance Claims or portions thereof entitled to the Lehman Distribution Enhancement that are not Future Obligations.  In no event shall the Lehman Distribution Enhancement for a Holder of an Allowed Reliance Claim exceed forty-nine percent (49%).

           (ii)     *Examples*:

           (1)     Absent the Class 6 Savings Provision, if the Classes 6/7 Claims Amount exceeds $23 million, a Holder of a Class 6 Claim in the Allowed Amount of $100,000 would be entitled to a forty percent (40%) Distribution of $40,000 from the Lehman Creditor Distribution Funding, instead of a fifty percent (50%) Distribution of $50,000 if the Classes 6/7 Claims Amount did not exceed $23 million.  If the Class 7 Aggregate Claims Amount was $7 million and the Class 6 Aggregate Claims Amount was $23,000,000, the Classes 6/7 Claims Amount would exceed $23 million, but would not exceed the $30 million threshold level, which, if exceeded, gives the Lehman Creditors the right to withdraw their support for the Joint TD Plan.  Applying the Class 6 Savings Provision, the calculation begins with an amount of $11.5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

million, representing 50% of the first (and here, only) $23 million of Class 6 Allowed Claims.  From

the $11.5 million is to be deducted $9.55 million, which is the 40% that would be payable absent the

Class 6 Savings Provision for the applicable $23 million of Class 6 Allowed Claims ($9.2 million)

and 5% for the $7 million of Class 7 Allowed Claims ($350,000).  The positive difference then

available to allocate is $1.95 million.  With the subject Creditor holding a $100,000 Allowed Claim,

its Claim is 0.435%% of the Class 6 Aggregate Claims Amount of $23 million and the Creditor,

thus, would get approximately 0.435% of the $1.95 million, which amount equals $8,483 and

represents an additional 8.4% of the Creditor's Claim.  Thus, in addition to the 40% Distribution of

$40,000 payable absent the Class 6 Savings Provision to the Creditor in this example holding a

$100,000 Allowed Claim, the Class 6 Savings Provision would entitle this Creditor to another

$8,483 or approximately 8.4% of its Claim, bringing the total percentage Distribution for the

Creditor in this example to approximately 48.4%, instead of 40%.

(2)    Assume the same facts as in the prior

example, except instead assume the Class 7 Aggregate Claims Amount was $1.3 million and the

Class 6 Aggregate Claims Amount was $28.7 million.  Under this example, the Class 6 Savings

Provision would entitle the subject Creditor to no additional Distribution.  The calculation, again,

begins with an amount of $11.5 million, representing 50% of the first $23 million of Class 6

Allowed Claims.  This time, from the $11.5 million is to be deducted $11,545,000, which is the 40%

that would be payable absent the Class 6 Savings Provision for the applicable $28.7 million of Class

6 Allowed Claims ($11,480,000) and 5% ($65,000) for the $1.3 million of Class 7 Allowed Claims.

Because there is no positive difference then available to allocate, the subject Creditor in this example

would receive no additional Distribution under the Class 6 Savings Provision and, therefore, the total

percentage Distribution for the Creditor in this example would be 40%.

### (iii)    Cost Saving Postponement.

If the aggregate amount of the payments from Lehman Creditor Distribution Funding payable

to Holders of Allowed Reliance Claims in respect of such Claims as of any date is less than $2

million in amount and such Distributions are payable to fewer than fifteen (15) different Holders in

number, to minimize administrative cost, the Trustee may postpone such payment up to a maximum

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of sixty (60) additional days after the Distribution otherwise would have been payable; and

## (b) Residual Cash.

Any Distribution of Residual Cash for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

## (c) Distributions as to a Future Obligation.

For an Allowed Class 6 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable by the later of: (a) the date determined as set forth otherwise in the Plan for such a Distribution for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

### 6.6.4 Less Favorable Treatment for Lehman Creditors and Settling Bond Issuer(s) by Consent.

(i) The Lehman Creditors have consented that, in lieu of the treatment provided for other Allowed Claims in Class 6, for Allowed Reliance Claims of the Lehman Creditors, if any:

(1) the Lehman Creditors, as the Holders thereof, shall forego any payment from the TD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2) to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman Creditor holding such a Claim, on account of such Claim, only shall be entitled under the Plan to receive from the applicable TD Plan Debtor the Residual Cash of the applicable TD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such TD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims (Class 6), and (iii) Allowed General Unsecured Claims (Class 7).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(ii)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 6, shall forego certain payments from the TD Plan Debtors' Estates for Allowed Reliance Claims that also are Settling Bond Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date. Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 8. (*See* Plan Section 8.7.)

**6.7    Treatment of Allowed General Unsecured Claims (Class 7).**

The treatment of any Allowed General Unsecured Claims in Class 7 under the Plan shall be as follows:

**6.7.1    Voting and Impairment.**

Class 7 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim is entitled to vote on the Plan. The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims. A Creditor can vote its Claim as a General Unsecured Claim or, if eligible, may mark its Ballot to indicate that it contends it holds a Reliance Claim.

**6.7.2    Distributions.**

**(a)    Lehman Creditor Distribution Funding.**

**(i)    Lehman Guaranteed Minimum Distribution.**

Each Holder of an Allowed General Unsecured Claim shall receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman Creditors.

**(ii)    Lehman Distribution Enhancement.**

A Holder of an Allowed General Unsecured Claim only will receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) unless such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a General Unsecured Claim, who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with this Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, shall, to the extent its General Unsecured Claim is Allowed, have reserved the right to the following and thereby shall receive, on account of such Allowed Claim, an additional four percent (4%) of the Allowed Amount of such Claim, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman Creditors.

**(b)** **Distribution of Residual Cash.**

Each Holder of an Allowed General Unsecured Claim, shall receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such TD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims (Class 6), and (iii) other Allowed General Unsecured Claims (Class 7).

**(c)** **Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 7.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed General Unsecured Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired as part of any such payment or settlement).

**6.7.3** **Distribution Dates.**

Distributions in the amounts provided under this Plan are payable to Holders of Allowed General Unsecured Claims after the Effective Date as follows:

**(a)** **Lehman Creditor Distribution Funding.**

Any payments from Lehman Creditor Distribution Funding due as to an Allowed General Unsecured Claim shall be payable promptly after the Effective Date and after the obligation is non-contingent, liquidated and matured.  More specifically, for each Allowed Class 7 Claim or portion thereof that is not a Future Obligation, payment from the Lehman Creditor Distribution Funding is to

1   occur within thirty (30) days following such Claim's Allowance Determination Date (provided that

2   if the aggregate amount of such Distributions payable as of such date is less than $2 million in

3   amount and such Distributions are payable to fewer than fifteen (15) different Holders in number, to

4   minimize administrative cost, the Trustee may postpone such payment up to sixty (60) additional

5   days after the Distribution otherwise would have been payable).

6   **(b)    Residual Cash.**

7   Any Distribution of Residual Cash for an Allowed Class 7 Claim or portion thereof that is

8   not a Future Obligation shall be payable at such times as determined in the sole discretion of the

9   Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the

10   progress in the claims allowance process.

11   **6.7.4    Distributions as to a Future Obligation.**

12   For an Allowed Class 7 Claim or portion thereof that is a Future Obligation, each

13   Distribution due under the Plan is payable by the later of: (a) the date determined as set forth

14   otherwise in the Plan for such a Distribution for an Allowed Class 7 Claim or portion thereof that is

15   not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion

16   thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent)

17   and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or

18   portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

19   **6.7.5    Less Favorable Treatment for Lehman Creditors and Settling Bond**

20   **Issuer(s) by Consent.**

21   (i)    The Lehman Creditors have consented that, in lieu of the treatment provided for other

22   Allowed Claims in Class 7, for Allowed General Unsecured Claims of the Lehman Creditors:

23   (1)    the Lehman Creditors, as the Holders thereof, shall forego any payment from

24   the TD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph;

25   and

26   (2)    to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related

27   Claims, each Lehman Creditor holding such a Claim, on account of such Claim, only shall be

28   entitled under the Plan to receive from the applicable TD Plan Debtor the Residual Cash of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

applicable TD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following

subclasses for such TD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are

Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims (Class 6), and

(iii) other Allowed General Unsecured Claims (Class 7).

(ii)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for

other Allowed Claims in Class 7, shall forego certain payments from the TD Plan Debtors' Estates

for Allowed General Unsecured Claims that also are Settling Bond Issuer-Owned Non-Future Work

Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based

on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the

treatment of Settling Bond Issuer-Related Future Work Claims in Class 8.  (*See* Plan Section 8.7.)

**6.8    Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 8).**

The treatment of any Allowed Settling Bond Issuer-Related Future Work Claims in Class 8

under the Plan shall be as follows:

**6.8.1    Voting and Impairment.**

Class 8 is Impaired under the Plan, and the Holders of the Allowed Settling Bond Issuer-

Related Future Work Claims are entitled to vote on the Plan;

**6.8.2    Distributions and Distribution Dates.**

Allowed Settling Bond Issuer-Related Future Work Claims consist of Allowed Settling Bond

Issuer-Backed Future Work Claims and Allowed Settling Bond Issuer-Owned Future Work Claims.

Each Holder of an Allowed Settling Bond Issuer-Related Future Work Claim shall receive the

following on account of its Claim:

(i)    The related Future Work obligations shall be performed, with no

penalties to be applicable (and, to the extent applicable, with the obligation reinstated as to any

maturity applicable prior to the applicable Petition Date);

(ii)    The initial payment for the performance of the Future Work

obligations shall be the obligation of the applicable Settling Bond Issuer that issued a Future Work

Bond with respect to the subject Claim and shall not be an obligation of the Liquidating Trustee,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Lehman Nominee or any TD Plan Debtor's Estate;

2              (iii)    The Lehman Nominee that takes title to the Plan Project to which the

3    subject Claim relates shall cooperate in connection with the performance of such Future Work

4    obligations, contingent upon such payment by the applicable Settling Bond Issuer;

5              (iv)    As and to the extent provided in the applicable Settling Bond Issuer

6    Agreement (and subject to the terms and conditions thereof):

7              (1)    A Lehman Related Party(ies) shall take an assignment from the

8    applicable Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the

9    applicable TD Plan Debtor and Bond Obligors (unless such Claims are released); and

10              (2)    In exchange therefor, the Lehman Nominee that takes title to

11    the Plan Project to which the subject Claim relates is to reimburse such Settling Bond Issuer agreed

12    amounts, *e.g.*, for payments made by such Settling Bond Issuer under the applicable Future Work

13    Bonds; and

14              (v)    Nonetheless, pursuant to the Bond Modification Discussions or

15    otherwise, the Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim may agree to

16    forego performance or payment for certain Future Work, such as may occur specifically as to such

17    performance or payment of Future Work or through release of the applicable Future Work Bond.

18         **6.9    Treatment of Allowed Interests (Class 9).**

19         The treatment of any Allowed Interests in Class 9 under the Plan shall be as follows:

20         (a)    Class 9 is Impaired under the Plan, and each Holder of an Allowed Interest is deemed

21    to reject the Plan and is not entitled to vote; and

22         (b)    On the Effective Date, all such Allowed Interests shall be cancelled and each Holder

23    thereof shall not be entitled to, and shall not, retain or receive any property or interest in property on

24    account of its Interest.

25                        **VII**

26         **ACCEPTANCE OR REJECTION OF THE PLAN**

27         **7.1    Who May Vote to Accept/Reject the Plan.**

28         Subject to the following, a Holder of a Claim or Interest has a right to vote for or against the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan if that Holder of the Claim or Interest has a Claim, which is (1) Allowed or Allowed for voting purposes, (2) classified in an Impaired Class and (3) receives something under the Plan.

Allowed Claims in Classes 2, 6, 7 and 8 are classified as Impaired and receive or retain property or rights under the Plan and, thus, Holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

### 7.2    Who Can Vote in More than One Class.

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one Ballot for the secured part of the Claim and another Ballot for the Unsecured Claim. Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of General Unsecured Claims (Class 7) and Reliance Claims (Class 6)), and may vote the Allowed Claims held in each Class.

### 7.3    Votes Necessary for a Class to Accept the Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

### 7.4    Who Is Not Entitled to Vote.

The following four types of Claims are not entitled to vote: (1) Claims that have not been Allowed; (2) Claims that, pursuant to Bankruptcy Code sections 507(a)(2), (a)(3) or (a)(8), are entitled to priority; (3) Claims in Unimpaired Classes; and (4) Claims in Classes that do not receive or retain any value under the Plan:

(a)    Claims in Unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan.

Classes 1, 3, 4, and 5 are Unimpaired and thus Holders of Allowed Claims in those Classes are not entitled to vote because they are deemed to have accepted the Plan under Bankruptcy Code § 1126(f).

(b)    Claims entitled to priority pursuant to Bankruptcy Code section 507(a)(2), (3)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    or (8) are not entitled to vote because voting is to determine class acceptance of a Plan under

2    Bankruptcy Code § 1129(a)(8) and such Claims are not to be placed in Classes (and, thus, are

3    unclassified) pursuant to Bankruptcy Code § 1123(a)(1). Instead, such Claims are required to

4    receive certain treatment specified under Bankruptcy Code §§ 1129(a)(9)(A) & (C).

5    Allowed Administrative Claims and Allowed Priority Tax Claims are unclassified Claims the

6    Holders of which are not entitled to vote.

7    (c)    Claims in Classes that do not receive or retain any property under the Plan do

8    not vote because such Classes are deemed to have rejected the Plan.

9    Class 9 Interests are Impaired but Holders of such Interests receive and retain nothing under

10    the Plan in respect of such Interests and, accordingly, these Holders are not entitled to vote because

11    they are deemed to have voted to reject the Plan under Bankruptcy Code § 1126(f).

12    EVEN IF A CLAIM IS OF THE TYPE DESCRIBED ABOVE, A CREDITOR MAY STILL

13    HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

14    **7.5    Special Provisions for Listed Holders of Mechanic's Lien Claims.**

15    Although the subclasses of Class 3 are Unimpaired and any Holders of <u>Allowed</u> Sr. Secured

16    Mechanic's Lien Claims are deemed to accept the Plan, the Lehman Proponents dispute the

17    "secured" status of such Claims because they assert that, with respect to each Plan Project, the

18    aggregate amount of the applicable Lehman Loans secured by Lehman Claim Liens on such Plan

19    Project exceeds the value of such Plan Project, such that there is no value in the junior Liens of the

20    Holders of Mechanic's Lien Claims. Thus, <u>each listed Holder of a Mechanic's Lien Claim will be</u>

21    <u>provided a Ballot on which such Holder may elect to vote its Claims as General Unsecured Claims</u>

22    <u>or Reliance Claims, as applicable, in which event the Holder will be waiving contentions that its</u>

23    <u>interest in the collateral securing its Claim has any value and thus will be waiving contentions that it</u>

24    <u>holds a Secured Claim against the applicable Plan Project.</u> By holding a General Unsecured Claim

25    <u>or Reliance Claim at the time of voting, the Creditor will have the opportunity, as more fully set</u>

26    <u>forth herein, to elect to receive the Lehman Distribution Enhancement.</u>

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**7.6** **Special Provisions for Allowed General Unsecured Claims (Class 7) and Allowed Reliance Claims (Class 6).**

**7.6.1** **Voting Permitted Regardless of Election to Receive the Lehman Distribution Enhancement.**

Creditors voting a General Unsecured Claim (Class 7) or Reliance Claim (Class 6) may vote for or against the Plan whether or not the Creditor elects to execute and deliver the Creditor's Assignment / Release for Lehman and receive the benefits of the Lehman Distribution Enhancement (applicable only if the Claim is Allowed, Plan is Confirmed and Effective Date occurs).

**7.6.2** **"Reliance Claim" Status Must Be Asserted on a Ballot.**

**For any Creditor to vote its Claim as a Reliance Claim (Class 6), and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.**

The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim (a) for New Value, (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as Scheduled Claims, excluding (d) Insider Claims, Settling Bond Issuer-Related Future Work Claims and Lehman Creditor Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims).  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.

**7.7** **Receipt of No or Incorrect Ballots.**

If a Creditor does not receive a Ballot or receives an incorrect Ballot, it may contact the Proponents to receive the correct Ballot.

**7.8** **Acceptance of the Plan Contrasted With Confirmation.**

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements include that the Plan must (a) be proposed in good faith, (b) be accepted in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

accordance with the provisions of the Bankruptcy Code, (c) pay creditors at least as much as creditors would receive in a Chapter 7 liquidation and (d) be feasible. Creditor acceptance of the Plan is only a factor relating to Confirmation. Even if there are Impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code and at least one Impaired Class of Claims accepts the Plan. The process by which a plan may be confirmed and become binding on non-accepting classes is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting Classes of Claims or Interests if it meets all statutory requirements except the voting requirements of Bankruptcy Code § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law. The confirmed Plan binds the non-accepting Classes. The Proponents will ask the Bankruptcy Court to confirm the Plan by cramdown on any Impaired Class if such Class does not vote to accept the Plan.

The requirements described in the Plan may not be the only requirements for Confirmation. PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

## VIII

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

**8.1**    **Introduction.**

This section is intended to address how the Proponents intend to fund and to have implemented the obligations to Creditors under the Plan. It thus provides information regarding funding sources and mechanisms for the Plan obligations, management of the TD Plan Debtors' Estates after the Effective Date and other material issues bearing upon the performance of the Plan.

**8.2**    **The Liquidating Trustee.**

The Estate of each TD Plan Debtor shall be managed after the Effective Date by the Liquidating Trustee, who, except as otherwise provided in the Plan, shall oversee and effectuate the Distributions to Creditors under the Plan, the liquidation of the Remaining Other Assets, and the sale

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and transfer of the Plan Projects to the Lehman Nominees, and otherwise shall implement the Plan. The Liquidating Trustee shall be the Trustee and, in his capacity as the Liquidating Trustee, shall be an agent of each Estate and not a separate taxable entity therefrom. Compensation of the Liquidating Trustee shall be reasonable hourly compensation payable from the TD Plan Debtors' Estates after prior notice to, *inter alia*, the Lehman Creditors, Trustee Debtors' Committee members, and U.S. Trustee and after order of the Bankruptcy Court. The Bankruptcy Court may, by order, replace the Liquidating Trustee in its reasonable discretion. After the Effective Date, the Liquidating Trustee, *inter alia*, will cooperate in granting, perfecting or reflecting perfection of any Liens acknowledged or created or provided for under the Plan, will cooperate with the Lehman Proponents in the claims process and prosecution, resolution or abandonment of any objections to Claims, and will resolve or dismiss any Remaining Litigation Claims, all in accordance with the Plan.

**8.3      Plan as Consensual Arrangement Between Trustee and Lehman Creditors.**

The Trustee and Lehman Creditors have agreed to jointly propose the Plan. Under the Plan, as more fully set forth below, the Trustee has negotiated for the Lehman Plan Funding to be provided or arranged by the Lehman Creditors for the benefit of other Creditors. Also, under the Plan, the Lehman Creditors, in turn, are to be conveyed the Plan Projects (through the Lehman Nominees) and receive releases, as more fully set forth below, and the Liquidating Trustee is to cooperate with any Lehman Related Party in connection with Bond Modification Discussions that any Lehman Related Party desires to initiate. Unless waived by the Lehman Creditors in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order for this Plan, which Confirmation Order will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, or to the occurrence of the Plan's Effective Date are: (a) first, execution of a Settling Bond Issuer Agreement, as summarized in Plan Section 8.7, by certain of the Lehman Related Parties and each Bond Issuer; (b) second, approval of the role and obligations under the Plan of certain of the Lehman Creditors and of each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman Successor, and LBHI, which may be a party to the applicable Settling Bond

1    Issuer Agreement (as a guarantor of one or more applicable Lehman Nominee's reimbursement

2    obligations thereunder) and may be a source of funding of the Lehman Plan Funding; (c) third,

3    Confirmation of the Plan as to all of the TD Plan Debtors; (d) fourth, the Lehman Creditors not

4    withdrawing the Plan prior to the Effective Date, which withdrawal may occur if: (i) the Lehman

5    Creditors' good faith estimate of the likely Classes 6/7 Claims Amount exceeds $30 million[4]; or (ii)

6    the Lehman Creditors' good faith estimate of the likely maximum amount for the Lehman Plan

7    Funding exceeds $55 million (plus the amount of any new Lehman Administrative Loans made after

8    August 10, 2010); or (iii) after the filing of the Plan, a material ruling is issued or a material fact is

9    newly discovered with respect to an alleged Litigation Claim against any of the Lehman Released

10    Parties or a material adverse change occurs with respect to an applicable TD Plan Debtor's assets

11    (*e.g.*, a material asset is sold); (e) fifth, the Confirmation Order must be a Final Order in form and

12    substance reasonably satisfactory to the Lehman Creditors; and (f) sixth, all agreements and

13    instruments contemplated by the Plan have been executed and delivered and all conditions to their

14    effectiveness satisfied or waived.

15    **8.4    Lehman Plan Funding.**

16    Under the Plan, the Lehman Creditors have agreed to pay the Lehman Post-Confirmation

17    Expense Funding and the Lehman Creditor Distribution Funding.  (In addition to providing the

18    Lehman Plan Funding, the Lehman Creditors also have agreed under this Plan to arrange, as

19    provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of

20    Future Work that is the subject of an Allowed Settling Bond Issuer- Backed Future Work Claim and

21    to reimburse the agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond

22    Issuer-Incurred Future Work Obligations arising under any Future Work Bond.)

23    **(a)    Lehman Creditor Distribution Funding.** The Lehman Creditors

24    have agreed under this Plan to fund, through permitting use of Cash Collateral or through new

25    transfers of Cash or through other arrangements, the Distributions that Plan Articles IV. and VI.

26    mandate for the following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed

27    Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v)

28

---

[4] The Classes 6/7 Claims Amount, as defined, does not include the Allowed Amount of any Formerly Secured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative treatment set forth in Section 6.4.3(c) hereof is selected), (vii) the Lehman Guaranteed Minimum Distribution and (viii) as applicable, the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims (Class 7) and Allowed Reliance Claims (Class 6).

(i)    Lehman Guaranteed Minimum Distribution.  The Lehman Creditors have agreed under this Plan to fund guaranteed, minimum recoveries, of one percent (1%) of each Allowed General Unsecured Claim and one percent (1%) of each Allowed Reliance Claim, regardless of whether the individual Creditor holding such Claim executes and delivers for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman.

(ii)    Lehman Distribution Enhancement.  For Creditors holding Allowed General Unsecured Claims and Allowed Reliance Claims who do execute and deliver for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman, the Lehman Creditors have agreed to increase recoveries (a) to five percent (5%) of each Allowed General Unsecured Claim and (b) to forty percent to fifty percent (40% to 50%) of each Allowed Reliance Claim.

**(b)    Lehman Post-Confirmation Expense Funding.**

Under this Plan, the Lehman Creditors have agreed to pay an amount (with such amount not to exceed $500,000 and which shall not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman Creditor permitting the use of Cash Collateral of a Lehman Creditor, each as loans payable by each benefitted TD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

**(c)    Funding with Cash Collateral of a Lehman Creditor.**

On the Effective Date, the Liquidating Trustee shall use Cash Collateral for a Lehman Secured Claim or a Lehman Administrative Loan first, to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof) and then to pay the applicable Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Creditor, unless it agrees that the Liquidating Trustee, instead, may hold such Cash Collateral in the

2  Plan Reserve for potential use for payment of Post-Confirmation Expenses.

3                **(d)**        **Funding with New Cash Payments from a Lehman Related Party.**

4          On the Effective Date, the Lehman Creditors shall cause to be paid to the Liquidating Trustee

5  from new Cash transfers sufficient amounts such that, when combined with Cash Collateral for

6  Lehman Secured Claims or Lehman Administrative Loans, the Liquidating Trustee is holding

7  sufficient funds to make the payments required under the Plan to be paid on the Effective Date from

8  Lehman Plan Funding.  Thereafter, the Lehman Creditors will pay the Liquidating Trustee further

9  amounts at such times as the Trustee and Lehman Creditors reasonably determine are necessary to

10  enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan

11  Funding.

12                **(e)**        **Plan Reserve.**

13          All Lehman Plan Funding provided by a Lehman Related Party shall be deposited in or held

14  in the Plan Reserve until utilized in accordance with the Plan. The applicable Lehman Creditor shall

15  report the Cash Collateral, while held in the Plan Reserve, as being owned by it for all applicable

16  federal, state and local income tax purposes.  To enable the applicable Lehman Creditor to pay its

17  applicable federal, state and local income tax with respect to amounts in the Plan Reserve, the

18  Liquidating Trustee shall distribute to the applicable Lehman Creditor, or cause to be distributed,

19  forty five percent (45%) of all income and gain earned with respect to amounts in the Plan Reserve

20  no less than annually and prior to any such amounts being otherwise distributed pursuant to the Plan.

21                **(f)**        **Terms and Documentation of Lehman Plan Funding.**

22          The Liquidating Trustee shall be obligated to repay to the applicable Lehman Related Party

23  any Lehman Plan Funding not utilized in accordance with the Plan.  The Liquidating Trustee also

24  shall be obligated to repay all of the Lehman Post-Confirmation Expense Funding to the extent of

25  Net Cash Proceeds from Remaining Other Assets, based on such funding being a non-recourse loan

26  against Remaining Other Assets and their Net Cash Proceeds as indicated above.  Repayments shall

27  be due immediately upon funds therefor becoming available.  Repayment obligations shall be

28  secured by a Lien (or replacement Liens as to use of Cash Collateral) (1) of first priority in all funds

in the Plan Reserve and in any Post-Confirmation Account(s) until such funds have been utilized in

accordance with the Plan and (2) a Lien on any Remaining Other Assets, junior only to any other

valid and indefeasible Liens in the Remaining Other Assets. The Liquidating Trustee shall

reasonably execute all documents reasonably requested by a Lehman Creditor to evidence a loan or

use of Cash Collateral constituting Lehman Post-Confirmation Expense Funding and to evidence any

Liens or replacement Liens for the use of Cash Collateral, securing the Liquidating Trustee's

repayment obligations, on terms and in a form reasonably requested by such Lehman Creditor, with

customary and reasonable provisions for interest, fees and expenses upon the loan(s).

### (g)    Post-Confirmation Expenses and Intercompany Loans.

Limited functions are required to implement the Plan after the Effective Date.  The

Liquidating Trustee will need to distribute Cash to Creditors (most of which is being provided by the

Lehman Creditors), convey the Plan Projects to the Lehman Nominees, participate and cooperate

with the Lehman Creditors in the claim reconciliation and objection processes, and liquidate the

limited Remaining Other Assets.  Post-Confirmation Expenses expected to be incurred include:

(a)    Hourly compensation for the Trustee for the period following the Effective Date;

(b)    Expenses for professional fees of the professionals for the Trustee following the

Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities in

respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise on or

after the Effective Date consistent with the Plan.

All Post-Confirmation Expenses may be paid by the Liquidating Trustee from the Post-

Confirmation Account(s) upon ten (10) days' prior written notice and opportunity to object provided

to the Lehman Creditors, but without further notice to any others, including Creditors or Holders of

Interests, or approval of the Bankruptcy Court.  Any disputes concerning the payment of Post-

Confirmation Expenses shall be submitted to the Bankruptcy Court for resolution.  To the extent

readily determinable, Post-Confirmation Expenses attributable to a particular TD Plan Debtor shall

be paid from that TD Plan Debtor's Assets consistent with the provisions of the Plan.  To the extent

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of available Assets from each TD Plan Debtor, other Post-Confirmation Expenses shall be payable by each TD Plan Debtor Pro Rata consistent with the Plan, provided that after a TD Plan Debtor's Available Cash or Assets are exhausted, the other TD Plan Debtors shall absorb such TD Plan Debtor's share of unpaid Post-Confirmation Expenses as provided in the Plan, which shall be Pro Rata to the extent reasonably possible. To the extent one TD Plan Debtor advances funds on behalf of another, the Liquidating Trustee shall book a receivable for the advancing TD Plan Debtor and a payable for the borrowing TD Plan Debtor.

**8.5** **Vesting of Assets in Estates of TD Plan Debtors Managed by Liquidating Trustee.**

Except as otherwise provided in the Plan or any agreement, instrument or other document relating to the Plan, on and after the Effective Date, all property of each TD Plan Debtor's Estate shall vest in each respective Estate, free and clear of all Liens. Except as may be provided in the Plan, on and after the Effective Date, the Liquidating Trustee may operate the business of each Estate and may use, acquire or dispose of property and compromise or settle any Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. On motion to the Bankruptcy Court and consent of the Lehman Creditors, the Liquidating Trustee may elect hereafter to abandon to the TD Plan Debtors' Assets of inconsequential value.

**8.6** **Disposition and Value of Assets**

The Assets of the Estates of the TD Plan Debtors consist primarily of certain Projects (the Plan Projects). There also may be some Cash (that is Cash Collateral for Lehman Secured Claims and/or Lehman Administrative Loans) and certain Remaining Other Assets, including Remaining Litigation Claims. (Remaining Litigation Claims possibly could result in affirmative recoveries for the Estates or possibly could reduce the size of the Creditor Claims to share in Available Cash for Distribution.)

**8.6.1** **Disposition and Value of the Plan Projects.**

a.    Pursuant to Bankruptcy Code section 1123(a) and the Plan, each Plan Project and all

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

easements and appurtenances thereto and all associated personal property and rights, including the applicable TD Plan Debtor's Estate's right, title and interest in, to and under any development agreements, plans, engineering reports, permits and community facilities district bonds, but excluding subdivision improvement and monumentation agreements, shall be sold and conveyed by virtue of the Confirmation Order to the applicable Lehman Nominee (to be identified for each Plan Project by the Lehman Creditors by Filing a statement providing such identification) free and clear of any Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) with such Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) not paid in connection with the transaction to attach to the Lehman Creditor Distribution Funding to the extent payment is due therefor pursuant to Plan Article IV. or Plan Article VI. in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transaction.  After conveyance of a Plan Project to a Lehman Nominee, the Lehman Nominee shall report the subject Plan Project and related Assets as being owned by it for all applicable federal, state and local income tax purposes.

b.      To facilitate further conveyances of the Plan Projects, the recording of evidence of the conveyances and the identification of specific Encumbrances from which a Plan Project is being sold free and clear or specific Permitted Liens:

(1)      Separate orders, consistent with this Plan, authorizing such conveyances shall be issued by the Bankruptcy Court as reasonably requested by the Lehman Creditors or applicable Lehman Nominee, which orders shall reflect the conveyance of the Plan Projects free and clear of all Encumbrances (other than Lehman Claim Liens and other Permitted Liens) in accordance with the Plan; and

(2)      Entry of the Confirmation Order, without more and thus automatically, shall retroactively and prospectively authorize the Trustee or Liquidating Trustee to take all actions that a Lehman Creditor or Lehman Nominee believes in good faith to be necessary or appropriate to consummate the transactions contemplated by this Plan, which actions would include execution of the grant deeds, assignments and other documents set forth in a supplemental exhibit to this Plan (Plan Supplement) to be filed by the Lehman Proponents by **September 26, 2011** and which

transactions would include conveyance of the Plan Projects to the Lehman Creditors or Lehman Nominees as provided in the Plan; and

(3)    At no material cost to the Trustee or Liquidating Trustee, upon the reasonable request of a Lehman Creditor or Lehman Nominee at any time and from time to time on or after the Effective Date and through the closing of the TD Plan Debtors' Cases, and notwithstanding any prior knowledge of a Lehman Creditor or Lehman Nominee, the Trustee, prior to the Effective Date, and Liquidating Trustee, from and after the Effective Date, shall, do, execute, acknowledge and deliver, and cause to be done, executed, acknowledged and delivered, all such further reasonable acts, deeds, transfers, conveyances, assignments, powers of attorney or assurances as may be required (i) to transfer, assign, convey and grant all of the Plan Projects to the applicable Lehman Nominees in accordance with the terms of the Plan, (ii) for the acquiring Lehman Nominees to record such transfers, assignments and conveyances of the Plan Projects in the applicable filing offices of the applicable governmental entity or (iii) to otherwise implement the Plan.

c.    The conveyances, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), of the Plan Projects of the TD Plan Debtors to the Lehman Creditors or Lehman Nominees under the Plan results in a deficiency owed to the Lehman Creditors under the Lehman Loans (the "Lehman Creditor Deficiency Claims").  The Allowed General Unsecured Claims of the Lehman Creditors and the Allowed Amount thereof with respect to such Lehman Creditor Deficiency Claims shall be fixed for all purposes relevant to the Plan and Disclosure Statement as to all TD Plan Debtors and Creditors at the amounts set forth in Plan Article V., which determination is based, in part, on the values of the Plan Projects, which Plan Project values are deemed for this purpose only, and for no other purpose whatsoever, to be the amounts of the Lehman Creditors' previously appraised values for the subject Plan Projects set forth in the following table:

| | TD Plan Debtor | Claims in Respect of Which Plan Projects Are Being Conveyed | Asset | Value |
|---|---|---|---|---|
| | | | | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | TD Plan Debtor | Claims in Respect of Which Plan Projects Are Being Conveyed | Asset | Value |
|---|---|---|---|---|
| 1 | SunCal Oak Knoll | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Oak Knoll arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the Allowed Amount of $158,141,364.64 and as an Allowed Secured Claim against the applicable Project in the amount of $48 million | Oak Knoll Project | $48 Million |
| 2 | SunCal Torrance | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Torrance arising from the SunCal Oak Knoll/SunCal Torrance Agreement in the Allowed Amount of $157,870,186.15 and as an Allowed Secured Claim against the applicable Project in the amount of $25 million | Del Amo Project | $25 Million |
| 3 | Delta Coves | Allowed Claim of Lehman ALI or its assignee or successor against Delta Coves arising from the Delta Coves Loan Agreement in the Allowed Amount of $206,023,142.48 and as an Allowed Secured Claim against the applicable Project in the amount of $25.2 million | Delta Coves Project | $25.2 Million |
| 4 | SunCal Heartland | Allowed Claim of Lehman ALI or its assignee or successor against SunCal Heartland arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $354,325,126.15 and as an Allowed Secured Claim against the applicable Project in the amount of $7.9 million | Heart-land Project | $7.9 Million |
| 5 | SunCal Marblehead | Allowed Claim of Lehman ALI against SunCal Marblehead arising from the SunCal Marblehead / SunCal Heartland Loan Agreement in the Allowed Amount of $354,325,126.15 and as an Allowed Secured Claim against the applicable Project in the amount of $187.5 million | Marble-head Project | $187.5 Million |

| | TD Plan Debtor | Claims in Respect of Which Plan Projects Are Being Conveyed | Asset | Value |
|---|---|---|---|---|
| 6 | SunCal Oak Valley | Allowed Claim of OVC Holdings or its assignee or successor against SunCal Oak Valley arising from the SunCal Oak Valley Loan Agreement in the Allowed Amount of $141,630,091.63 and as an Allowed Secured Claim against the applicable Project in the amount of $20.9 million | Oak Valley Project | $20.9 Million |
| 7 | SunCal Northlake | Allowed Claim of Northlake Holdings or its assignee or successor against SunCal Northlake arising from the Northlake Loan Agreement in the Allowed Amount of $123,654,776.88 and as an Allowed Secured Claim against the applicable Project in the amount of $23.9 million | North-lake Project | $23.9 Million |
| 8 | SunCal PSV | Allowed Claim of Lehman ALI or its assignee or successor arising from the SunCal PSV Loan Agreement in the Allowed Amount of $88,257,340.20 and as an Allowed Secured Claim against the applicable Project in the amount of $13.8 million | Palm Springs Village Project | $13.8 Million |

**8.6.2    Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other Assets.**

The Remaining Other Assets (other than Cash) shall be liquidated by the Liquidating Trustee, and the Net Cash Proceeds therefrom shall be available for payment of Claims and Creditors in accordance with the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and subject to the compromises, waivers and releases provided in the Plan, the Liquidating Trustee shall retain all Remaining Litigation Claims whether or not pending on the Effective Date. Unless a Litigation Claim is expressly waived, relinquished, released, compromised or settled in the Plan or prior to the Plan's Effective Date in a Final Order, all rights with respect to such Litigation Claims are reserved and the Liquidating Trustee may pursue such Remaining Litigation Claims. The Liquidating Trustee shall not settle or abandon a Remaining Litigation Claim valued at greater than $100,000, if any,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

without a Lehman Creditor's consent; and the Lehman Creditors may pursue any Remaining

Litigation Claim for the applicable Estate or Estates that, upon request, the Liquidating Trustee does

not agree to pursue. Any disputes concerning the settlement or abandonment of a Remaining

Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten (10)

days' notice to the objecting party.  All Net Cash Litigation Recoveries realized or obtained in

respect of Remaining Litigation Claims of the Estates shall be promptly deposited into the Post-

Confirmation Account(s) or Plan Reserve, as appropriate. Except as otherwise provided in the Plan

and the Confirmation Order, the Net Cash Litigation Recoveries shall be free and clear of all

Encumbrances and shall only be expended in accordance with the provisions of the Plan.

**8.7** **Bond Claims and the Settling Bond Issuer Agreements.**

**8.7.1** **Background.**

Prior to the Petition Dates for the TD Plan Debtors, the Bond Issuers, at the request of certain

TD Plan Debtors, issued certain Project Bonds in connection with the development of the Plan

Projects owned by such TD Plan Debtors.  These Project Bonds issued by the Bond Issuers for the

benefit of the TD Plan Debtors consist of either Payment Bonds or Performance Bonds (certain of

which Payment Bonds and Performance Bonds constitute Future Work Bonds), securing payment to

the applicable third party for work performed by such third party for or with respect to the applicable

Plan Project and/or for the performance of certain work by the applicable TD Plan Debtor .

Although the definitions herein are controlling, Payment Bonds might typically secure payment to

contractors and others who undertook construction work and Performance Bonds might typically

guarantee the performance of Bonded Work such as infrastructure improvements to a municipality

who has jurisdiction over the development of the applicable Plan Project and who may have

executed a development agreement providing for entitlements relating to such Plan Project.

Reimbursement to the Bond Issuer for any payments made under or any liabilities or obligations

incurred by such Bond Issuer with respect to the Project Bonds were guaranteed or indemnified by

the Bond Obligors.

Prepetition, Bond Issuers are believed to have paid and/or settled with some of the third party

beneficiaries of Project Bonds (and, in certain instances, received an assignment of the Claims held

by such third parties upon such payment or settlement).  As a result, the Claims, if any, of a Bond Issuer against the applicable TD Plan Debtor and relating to such Project Bonds would be non-contingent.

As of the applicable Petition Dates, various other third parties with Bond-Backed Claims allege that they held unpaid or unsatisfied Claims secured by Project Bonds of the Bond Issuers. The Claims, if any, of a Bond Issuer relating thereto would have been contingent.

After the Petition Dates, Bond Issuers are believed to have continued paying and/or settling with Bond-Backed Claimants secured by Project Bonds and, in one instance, Arch has settled with a Bond-Backed Claimant whose Claims are secured by Performance Bonds and may have begun performance for the benefit of such Bond-Backed Claimant.  To the extent such occurred, any Claim of a Bond Issuer relating thereto may have become non-contingent.  Still, there remain Bond-Backed Claimants holding Bond-Backed Claims secured by Project Bonds (including Future Work Bonds) that remain unpaid or unsatisfied.  The Claims, if any, of a Bond Issuer relating thereto are contingent.

### 8.7.2    Settling Bond Issuer Agreement.

Absent a settlement with each of the Bond Issuers, each Allowed Bond Claim related to a Future Work Bond[5] will be classified and treated under the Plan as either a Reliance Claim (Class 6) or a General Unsecured Claim (Class 7), depending on which definition the Claim fits within.  The existence of such Claims in Classes 6 and 7 may affect the Classes 6/7 Claims Amount and the conditions to entry of the Confirmation Order, Plan effectiveness and the occurrence of the Effective Date related to the amounts of the Classes 6/7 Claims Amount and Lehman Plan Funding.  Yet, one or both Bond Issuers have contended that: (i) should a Bond Issuer be required to pay or perform under a Project Bond because of a demand from a municipality that is the beneficiary of the Project Bond, the costs for improving the subject Plan Project can be recovered upon sale or transfer of the Plan Project from its subsequent owner; and (ii) absent consent of the applicable Bond Issuer, the Project Bonds must be replaced on sale or transfer of each applicable Plan Project.  Although the

---

[5] Such Allowed Bond Claim would be "related" to a Future Work Bond either because such Claim is a Bond-Backed Claim relating to the payment or performance of Future Work secured by a Future Work Bond or because such Claim is a Bond Issuer Claim arising from the exposure and liability of the Bond Issuer under a Future Work Bond.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman Creditors dispute these contentions, to facilitate Confirmation of the Plan, certain of the

Lehman Related Parties (including the Lehman Nominees taking title to Plan Projects as to which

there are related Bond-Backed Claims secured by Future Work Bonds) are prepared to enter into

agreements with respect to certain matters relating to the Allowed Bond-Backed Claims secured by

Future Work Bonds.

Under each Settling Bond Issuer Agreement (which shall be subject to further terms and

provisions as may be agreed upon by the parties to a Settling Bond Issuer Agreement) and as part of

the Lehman Creditor Distribution Funding, the Lehman Nominee that takes title to a Plan Project for

which Future Work Bonds were issued and remain outstanding as of the Effective Date, in

consideration for an assignment of certain Allowed Claims from the applicable Settling Bond Issuer

as described below (or a release thereof), *inter alia*, will reimburse and or commit to reimburse such

Settling Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work

Obligations arising in connection with the satisfaction of such Settling Bond Issuer's obligations to

Bond-Backed Claimants under Future Work Bonds issued by such Settling Bond Issuer and related

to such Allowed Claims and may agree to other terms, including with respect to bond premiums,

replacement of bonds and others.  Such reimbursement obligations of each applicable Lehman

Nominee will be collateralized or credit enhanced in one (and only one) of the following two

manners (subject to further terms and provisions as may be agreed upon by the parties to a Settling

Bond Issuer Agreement), as determined by the Lehman Creditors in their sole and absolute

discretion (the applicable type of collateral or credit enhancement being provided by any particular

Lehman Nominee being referred to herein as the "Future Work Obligation Collateral"):  (a) a first

Lien deed of trust encumbering the applicable Plan Project owned by such Lehman Nominee and

securing the reimbursement obligations of such Lehman Nominee to the applicable Settling Bond

Issuer, or (b) a guarantee of such Lehman Nominee's reimbursement obligations provided by LBHI,

which guarantee obligation of LBHI will be an administrative claim in the New York Bankruptcy

Cases.  In turn, the applicable Settling Bond Issuer will agree that such Settling Bond Issuer, itself,

will not receive the full amount otherwise due under the Plan from the TD Plan Debtors' Estates

with respect to the Settling Bond Issuer-Owned Claims or any other Claims it may have (provided

that, with respect to Settling Bond Issuer-Owned Future Work Claims, it will receive the applicable cooperation and reimbursement from the applicable Lehman Nominees and the applicable Future Work Obligation Collateral as described above).  Further, although, in connection with the Plan, the Trustee already is agreeing to cooperate with Lehman Related Parties in the Bond Modification Discussions, under each Settling Bond Issuer Agreement, the applicable Settling Bond Issuer also would agree to cooperate with and assist, if and to the extent agreed to by the parties under the applicable Settling Bond Issuer Agreement, the Lehman Related Parties in connection with the Bond Modification Discussions.

Moreover, under each Settling Bond Issuer Agreement, as reflected in the Plan, the applicable Settling Bond Issuer will agree to assign to the Lehman Creditors or another Lehman Related Party (as determined by the Lehman Creditors) or otherwise release effective as of the Effective Date, certain Settling Bond Issuer-Owned Claims held by the applicable Settling Bond Issuer as of the Effective Date and certain Claims acquired by such Settling Bond Issuer thereafter, as well as certain rights and claims that the Settling Bond Issuer may have against the Bond Obligors. Upon assignment by the applicable Settling Bond Issuer of Settling Bond Issuer-Owned Non-Future Work Claims to a Lehman Creditor or other Lehman Related Party under the Plan, such Lehman Creditor or other Lehman Related Party shall be entitled to the proportional share of the Residual Cash attributable to such Allowed Claim, as more fully set forth in this Plan.  To the extent that on or after the Effective Date, the applicable Settling Bond Issuer acquires claims that were to be assigned or released if acquired on or before the Effective Date by the Settling Bond Issuer Release for Lehman Released Parties, promptly thereafter, the applicable Settling Bond Issuer shall execute an assignment / release for the benefit of the Trustee, Liquidating Trustee and Lehman Released Parties.

Thus, whereas other Creditors are to receive the Lehman Distribution Enhancement with respect to each Allowed General Unsecured Claim or Allowed Reliance Claim that they hold if they execute and deliver the Creditor Assignment / Release for Lehman, under a Settling Bond Issuer Agreement, the applicable Settling Bond Issuer is to receive treatment under the Plan providing less for its Settling Bond Issuer-Owned Non-Future Work Claims and is to receive an agreed-upon

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

reimbursement essentially for all of the Settling Bond Issuer-Incurred Future Work Obligations arising from Future Work Bonds relating to the Allowed Settling Bond Issuer-Related Future Work Claims with such Settling Bond Issuer agreeing to waive payment for any obligations which are not required to be reimbursed pursuant to the terms of the applicable Settling Bond Issuer Agreement.

### 8.7.3    Bond Modification Discussions.

There may be discussions and efforts to approach and initiate discussions by Lehman Related Parties, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman Creditors or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds (including Holders of Class 8 Settling Bond Issuer-Backed Future Work Claims), regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding ("Bond Modification Discussions").  Pursuant thereto or otherwise, agreement may be reached by all applicable parties either (a) as to the timing, scope or other matters with respect to certain Future Work or its performance or (b) to forego performance or payment for certain Future Work directly or through release of the applicable Future Work Bond.

### 8.8    Releases for Lehman Released Parties.

In exchange for, *inter alia*, the Lehman Plan Funding, various releases are to be afforded for the benefit of the Lehman Released Parties.

### 8.8.1    Creditors' Assignments / Releases for Lehman.

In exchange for the Lehman Distribution Enhancement, each Creditor who holds a Reliance Claim or General Unsecured Claim and checks the appropriate box on its Ballot and / or timely executes and delivers a separate, written assignment or assignment and release in accordance with this Plan, whether or not the Creditor votes in favor of the Plan, automatically upon the occurrence of the Effective Date, assigns to the applicable Lehman Creditor (or if multiple applicable Lehman

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Creditors, to the Lehman Creditor holding the most senior Lien against the applicable Plan Project)

all rights, benefits and interests of the assigning Holder, including, without limitation, Proofs of

Claim and Encumbrances (each a "Claim Right" and, collectively, the "Claim Rights") with respect

to each of such Holder's Reliance Claims, General Unsecured Claims, and, if any, Lehman Released

Claims held as of the Disclosure Hearing Date and as might arise after the Disclosure Hearing Date

as a result of an avoided transfer, with such assignment to be effective immediately upon the

Effective Date. Such assignments are to be effective to the greatest extent permitted by applicable

law and shall not require anything or any action for their effectiveness except as expressly provided

herein. To the extent any such assignment is not effective to assign all of any such Reliance Claim,

General Unsecured Claim or Lehman Released Claim or all of any such Claim Rights, each Holder

of the applicable Reliance Claim or General Unsecured Claim who, in exchange for the Lehman

Distribution Enhancement, checks the appropriate box on its Ballot and / or timely executes and

delivers a separate, written release or assignment and release in accordance with this Plan,

automatically upon the occurrence of the Effective Date, unconditionally, irrevocably and generally

releases, acquits and forever discharges, waives and relinquishes the Holder's General Unsecured

Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise after the

Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto

from and against the Trustee, the TD Plan Debtors and all Lehman Released Parties, including,

without limitation, the Lehman Nominees, with such release to be effective immediately after the

moment that the assignment was to become effective.  Such releases are to be effective to the

greatest extent permitted by applicable law and shall not require anything or any action for their

effectiveness except as expressly provided herein. **SUCH RELEASES INCLUDE AN EXPRESS,**

**INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO**

**THE FULLEST EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF**

**THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY**

**SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each releasing Creditor, by the release, waives and relinquishes any right or benefit that such Creditor has or may have under section 1542 of the California Civil Code or any similar provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent that such releasing Creditor may lawfully waive such rights and benefits pertaining to the subject matter of the release set forth above. In that regard, each such releasing Creditor, by the release, further acknowledges that such Creditor is aware that such Creditor or the attorneys of such Creditor may hereafter discover claims or facts in addition to or different from those which such Creditor or such attorneys now know or believe to exist with respect to the subject matter of the release, and that it is each such releasing Creditor's intention fully, finally, and forever to settle and release the Holder's General Unsecured Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the Trustee, the TD Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees. Through the release, each such releasing Creditor is expressly acknowledging that it understands that, notwithstanding the discovery or existence of any such additional or different claims or facts, the release shall be and remain in full force and effect as a full and complete general release with respect to the Holder's General Unsecured Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the Trustee, the TD Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees. Through the release, each such releasing Creditor further acknowledges that no released Person has made any representation of any kind or character whatsoever in order to induce the execution of the release other than the Disclosure Statement for which certain released Persons are Proponents, subject to its disclaimers.

In each case, neither the assignment nor the release shall include for General Unsecured Claims or Reliance Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) (1) a Creditor's rights under this Plan to the Lehman Creditor Distribution Funding and (2) the proportional share of Residual Cash attributable under the Plan to the Claims so assigned or released. Moreover, for clarity, (A) neither the assignment nor the release

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

shall preclude a Creditor holding an assigned or released Claim from opposing or responding defensively to the Filing of an objection to such Claim or request for determination of such Claim's status as a Reliance Claim (nor preclude such Filing of an objection to the Claim or request for determination of such Claim's status as a Reliance Claim); (B) neither the assignment nor the release includes any claim of a Creditor against a Bond Issuer arising under a Project Bond to the extent such claim is severable from any and all of such Creditor's General Unsecured Claims, Reliance Claims, Lehman Released Claims and Claim Rights; and (C) neither the assignment nor the release shall preclude a Creditor against which the Liquidating Trustee asserts a Remaining Litigation Claim from opposing or responding defensively to such Remaining Litigation Claim, including assertion of its Claims for offset, recoupment or setoff purposes (nor preclude the Liquidating Trustee from asserting any Remaining Litigation Claims against such Creditor).

On or as soon as practicable after the Effective Date, the assigning and/or releasing Creditor shall dismiss (with prejudice), all litigation pending against a Lehman Released Party with respect to a Lehman Released Claim, with all parties to bear their own costs and professional fees.  The assigning and/or releasing Creditor also shall take all appropriate steps to withdraw, dismiss or release any Encumbrances it may hold or have asserted against any of the Plan Projects or other Assets of the TD Plan Debtors as a condition of receipt of its Distributions under the Plan.

If the Ballot is appropriately marked to indicate the Creditor's election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, the Confirmation Order, without more, shall effectuate the assignment and / or release, waiver and relinquishment described or referenced in this section for the Lehman Released Parties and / or Trustee, in accordance herewith.  Nonetheless, and regardless of whether the Ballot is appropriately marked: (a) the Lehman Creditors may require the Creditor electing to receive the Lehman Distribution Enhancement to execute and deliver to the Trustee, Liquidating Trustee or a Lehman Released Party, a separate Creditor's Assignment / Release for Lehman in a form determined by the Lehman Released Party and reasonably consistent herewith; and (b) a condition subsequent to the assignment and release shall be the disallowance of all Claims of the Creditor electing to receive the Lehman Distribution Enhancement prior to the Creditor receiving any of the Lehman Distribution

1    Enhancement.

2    If such condition subsequent to a particular Creditor's Assignment / Release for Lehman

3    shall occur: (i) the applicable Creditor's Assignment / Release for Lehman shall be void and (ii) if

4    such Creditor dismissed any litigation pending against a Lehman Released Party with respect to a

5    Lehman Released Claim with the dismissal reciting it was based on this Plan's assignment and

6    release for such Lehman Released Party, then such the Lehman Released Party shall stipulate to

7    reinstatement of such litigation (subject to all applicable defenses, objections and other rights of the

8    applicable Lehman Released Party); provided that such voidance of the applicable Creditor's

9    Assignment / Release for Lehman shall not limit or affect any other provision or effect of the Plan,

10    including, without limitation, such voidance of an applicable Creditor's Assignment / Release for

11    Lehman shall not preserve or restore any Encumbrances from which a Plan Project is conveyed free

12    and clear under the Plan.

13    ### 8.8.2    Plan Release for Lehman.

14    In exchange for the consideration represented by, *inter alia*, the Lehman Plan Funding, as of

15    the Effective Date, the Trustee and Estate of each TD Plan Debtor, on behalf of itself and its

16    Affiliates exclusive of other Debtors in these Cases, automatically upon the occurrence of the

17    Effective Date, shall be deemed to unconditionally, irrevocably and generally release, acquit and

18    forever discharge, waive and relinquish any and all Lehman Released Claims against each and every

19    Lehman Released Party.

20    **THE RELEASE GIVEN ABOVE INCLUDES AN EXPRESS, INFORMED,**

21    **KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO THE FULLEST**

22    **EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF THE**

23    **CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY**

24    **SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

25    **A general release does not extend to claims which the creditor does not know or**
26    **suspect to exist in his favor at the time of executing the release, which if known**
      **by him must have materially affected his settlement with the debtor.**

27

28    Each such releasing Person, by the release, waives and relinquishes any right or benefit that

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

such Person has or may have under section 1542 of the California Civil Code or any similar

provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent

that such releasing Person may lawfully waive such rights and benefits pertaining to the subject

matter of the release set forth above. In that regard, each such releasing Person, by the release,

further acknowledges that such Person is aware that such Person or the attorneys of such Person may

hereafter discover claims or facts in addition to or different from those which such Person or such

attorneys now know or believe to exist with respect to the subject matter of the release, and that it is

each such releasing Person's intention fully, finally, and forever to settle and release any and all

Lehman Released Claims against each and every Lehman Released Party. Through the release, each

such releasing Person is expressly acknowledging that it understands that, notwithstanding the

discovery or existence of any such additional or different claims or facts, the release shall be and

remain in full force and effect as a full and complete general release with respect to any and all

Lehman Released Claims against each and every Lehman Released Party. Through the release, each

such releasing Person further acknowledges that no released Person has made any representation of

any kind or character whatsoever in order to induce the execution of the release.

The Confirmation Order, without more, shall effectuate the release, waiver and

relinquishment described or referenced in this section for the Lehman Released Parties in accordance

herewith.  Nonetheless, the Lehman Released Parties also shall be entitled to issuance of a separate

written release, waiver and relinquishment by the Liquidating Trustee in a form acceptable to the

Lehman Creditors and Liquidating Trustee or as reasonably proposed by the Lehman Creditors and

approved by the Bankruptcy Court at or after the hearing on Confirmation of the Plan.

### 8.8.3    Dismissal of Pending Litigation

On or as soon as practicable after the Effective Date, the Liquidating Trustee shall dismiss

(with prejudice), as to the Estates of all TD Plan Debtors, all litigation pending against a Lehman

Released Party on behalf of the Trustee or any TD Plan Debtor's Estate, including, without

limitation, (a) the Liquidating Trustee shall dismiss any action seeking equitable subordination,

avoidance of fraudulent transfers or other relief against any Lehman Released Party, specifically the

ES Action, (b) the Liquidating Trustee shall dismiss any appeals adverse to a Lehman Related Party,

1  including, without limitation, appeals seeking findings relating to the validity or allowance of Proofs

2  of Claim filed by any of the Lehman Related Parties, and (c) the Liquidating Trustee shall withdraw

3  any opposition to any appeals by Lehman Related Parties, with all parties to bear their own costs and

4  professional fees (except as expressly provided in the Plan for the Lehman Post-Confirmation

5  Expense Funding).

6        **8.8.4    Process for Execution and Delivery of Creditor's Assignments / Releases**

7  **for Lehman.**

8        The releases contained in this Plan shall become effective on the Effective Date without

9  further notice or action of any Person or party.  Although execution and delivery of a separate

10  writing reflecting releases contained herein may be required by the Lehman Creditors as more fully

11  set forth in this Plan, such requirement shall not affect or diminish the effectiveness of the releases

12  contained herein.  As to a Holder of a General Unsecured Claim or Reliance Claim, its execution and

13  delivery of the Creditor Assignment / Release for Lehman herein shall occur and be deemed to occur

14  upon the delivery to the Trustee, Liquidating Trustee or any of the Lehman Related Parties of an

15  original, facsimile, electronic formatted or other written Ballot of such Holder marking the

16  appropriate box thereupon signifying its intent to accept the benefits of the Lehman Distribution

17  Enhancement and afford the Lehman Released Parties the benefit of the Creditor Assignment /

18  Release for Lehman herein.  Disallowance in whole of such Creditor's Claim(s) prior to receipt of

19  any Lehman Distribution Enhancement shall be a condition subsequent voiding such release.

20        The Trustee and/or Liquidating Trustee shall be entitled to utilize the following procedure to

21  determine which Creditors have appropriately marked their Ballots or otherwise provided the

22  Creditor's Assignment / Release for Lehman entitling it to the Lehman Distribution Enhancement.

23  The procedure may be modified by the Trustee and/or Liquidating Trustee with the consent of the

24  Lehman Creditors, which they may grant or withhold in their sole and absolute discretion:

25              (1)    Within two (2) Business Days after the voting deadline, the Trustee shall

26  deliver to the appropriate Lehman Creditors or as they direct the duly executed original of each

27  Ballot received by the Trustee by the voting deadline and each separately executed Creditor's

28  Assignment / Release for Lehman;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(2)    Within fifteen (15) Business Days after receipt of all such Ballots and Creditors' Assignments / Releases for Lehman, the Lehman Creditors shall advise the Trustee or Liquidating Trustee, as then in place, of any issues with respect to the form or propriety of the execution or delivery of any such Ballots, the marking thereupon of the election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, or any actual Creditors' Assignments / Releases for Lehman;

(3)    Within ten (10) days after expiration of the time for the Lehman Creditors to advise the Trustee or Liquidating Trustee of issues with respect to the form or propriety of the execution and delivery of such items, if no issues are so raised, the form and propriety of such items shall be deemed adequate to entitle the applicable Creditor to the applicable Lehman Distribution Enhancement, as and to the extent set forth in the Plan and if and to the extent such Creditor holds an Allowed Claim.

**8.9    Entry of Final Decrees.**

The Liquidating Trustee shall cause the entry of a final decree in the Case of each Estate of a TD Plan Debtor at the earliest reasonable opportunity therefor.  Such final decrees may be sought and entered individually for each Case.

**8.10    Dissolution of Trustee Debtors' Committee and Discharge of Trustee and Liquidating Trustee.**

The Trustee, in his capacity as such, shall be discharged upon the Effective Date and his bond may be exonerated.  The Trustee Debtors' Committee shall dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Cases thirty days following the Effective Date unless the Bankruptcy Court, for good cause shown, extends such date.  Except as may be necessary to file applications pursuant to Plan Section 4.1, the Professionals retained by the Trustee shall not be entitled to compensation or reimbursement of expenses for any services rendered after the discharge of the Trustee and the Professionals retained by the Trustee Debtors' Committee shall not be entitled to compensation or reimbursement of expenses for any services rendered after the dissolution of the Trustee Debtors' Committee.  (The Liquidating Trustee may employ Professionals after the Effective Date.) The Liquidating Trustee shall be discharged

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  upon consummation of the Plan and the entry of a final decree in each Case or as otherwise ordered

2  by the Bankruptcy Court.

3                                          **IX**

4                              **DISTRIBUTIONS**

5      **9.1     Distribution Agent.**

6          The Liquidating Trustee shall serve as the Distribution Agent for Distributions due under the

7  Plan. The Distribution Agent may employ one or more subagents on such terms and conditions as it

8  may agree in his discretion and pay such subagent as a Post-Confirmation Expense from the Post-

9  Confirmation Account(s). The Distribution Agent shall not be required to provide any bond in

10  connection with the making of any Distributions pursuant to the Plan.

11      **9.2     Distributions.**

12          **9.2.1     Dates of Distributions.**

13          Any Distribution required to be made on the Effective Date shall be deemed timely if made

14  as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any

15  Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer

16  being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.  To

17  minimize the need to estimate certain contingent or unliquidated Claims and the expense thereof, the

18  treatment sections of the Plan provide as to certain Claims that Distributions as to Future Obligations

19  first are to be made only after the Claim or portion of the Claim is no longer a Future Obligation.

20          **9.2.2     Limitation on Liability.**

21          Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth

22  otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating

23  Trustee, the Trustee Debtors' Committee, their Affiliates, nor any of their employees, members,

24  officers, directors, agents, attorneys, representatives, consultants, asset managers or other

25  professionals shall be liable for:  (i) any debts arising under the Plan; (ii) any acts or omissions or the

26  damages therefrom (except for damages proximately caused by gross negligence or intentional

27  misconduct of such Person) in connection with implementing the Distribution provisions of the Plan

28  and the making or withholding of Distributions pursuant to the Plan, including, without limitation,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

such Person shall not be liable as to the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan; or (iii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**9.3    Old Instruments and Securities.**

**9.3.1    Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any Distribution pursuant to the Plan in respect of a Claim, each Person holding any note or other instrument or security evidencing such Claim must surrender such instrument or security to the Distribution Agent, if requested.

**9.3.2    Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien against any Assets of any TD Plan Debtors, including any Plan Project, shall be deemed released and discharged, and the Person holding such Lien shall be authorized and directed to release any collateral or other property secured or allegedly secured by such Lien (including, without limitation, any Cash Collateral) held by such Person and to take such actions as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project) to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project).

**9.4    *De Minimis* Distributions and Fractional Shares.**

No Cash payment of less than ten dollars ($10) shall be made by the Liquidating Trustee to any Holder of Claims unless a request therefor is made in writing to the Liquidating Trustee. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

**9.5    Delivery of Distributions.**

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows: (1)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the Liquidating Trustee; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the TD Plan Debtors, provided, however, that if the TD Plan Debtors or the Liquidating Trustee has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

**9.6**    **Unclaimed Property.**

If either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or other similar instrument used for the Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any Allowed Claim on the date such Distribution first could have been made under the Plan and for one hundred twenty (120) days thereafter, then such applicable Distribution shall be Unclaimed Property under the Plan and the Liquidating Trustee shall be relieved of making such Distribution or any further Distribution to such Holder of such Allowed Claim unless and until the Liquidating Trustee is notified in writing of the then current address of such Holder of an Allowed Claim.  Subject to the remainder of this section and the following section, Unclaimed Property shall remain in the possession of the Liquidating Trustee pursuant to this section, and shall be set aside and (in the case of Cash) held in a segregated, interest bearing account to be maintained by the Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing contained in the Plan shall require the Liquidating Trustee or any other Person to attempt to locate the Holder of an Allowed Claim as to which there is Unclaimed Property.

**9.7**    **Disposition of Unclaimed Property.**

If the Person entitled thereto notifies the Liquidating Trustee of such Person's Claim to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial Distribution Date, the Unclaimed Property distributable to such Person, together with any interest or

1  dividends earned thereon, shall be paid or distributed to such Person as soon as practicable. Any

2  Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by

3  the Liquidating Trustee within ninety (90) days after the Holders' initial Distribution Date shall no

4  longer have any Claim to or Interest in such Unclaimed Property, and shall be forever barred from

5  receiving any Distributions under the Plan or otherwise from the Liquidating Trustee. In such cases,

6  any property held for Distribution on account of such Claims shall become Available Cash and

7  deposited into the Post-Confirmation Account of the TD Plan Debtor's Estate against which the

8  applicable Allowed Claim was asserted.

9  **X**

10  **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

11  **10.1**    **Standing for Objections to Claims.**

12      The Liquidating Trustee and Lehman Creditors may file and resolve for the Estates

13  objections to Claims and requests for the determination of Claims' status as Reliance Claims, may

14  do so jointly or separately, and shall have the exclusive right to do so, except that only the

15  Liquidating Trustee shall have such rights as to any particular Claim for which a disabling conflict

16  exists that precludes all of the Lehman Creditors from performing such functions as determined

17  either by the Lehman Creditors or by the Bankruptcy Court. The Liquidating Trustee shall cooperate

18  in Filing objections and taking action with respect to Claims identified for objection or action by the

19  Lehman Creditors in good faith, except that the Liquidating Trustee need not object to a Claim or to

20  a Claim's asserted status as a Reliance Claim that he reasonably believes is valid. Any objection to a

21  Claim or any objection to a Claim's status as a Reliance Claim, shall be filed with the Bankruptcy

22  Court and served on the Person holding such Claim on or before the applicable Claims Objection

23  Deadline, except as may be expressly provided otherwise as to any particular Claims in the Plan.

24  **10.2**    **Treatment of Disputed Claims.**

25      **10.2.1 No Distribution Pending Allowance.**

26      If any portion of a Claim is a Disputed Claim or has no Allowed Amount, no payment or

27  Distribution provided for under the Plan shall be made on account of such Claim unless expressly

28  provided hereunder or unless and until such Claim becomes an Allowed Claim and has an Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Amount.  Except as expressly provided in the Plan, Holders of Disputed Claims, pending their allowance, shall forbear from enforcement of the rights entitled to them under the Plan for their Claims were they Allowed Claims; provided that if the Claim is a Secured Claim, the Creditor may seek adequate protection for its Claim from the Bankruptcy Court.  A Claim that has not been Allowed by a Final Order of the Bankruptcy Court and as to which the objection deadline has not passed, including as to its status as a Reliance Claim, may be treated by the Liquidating Trustee as a Disputed Claim and, absent the agreement of the Lehman Creditors, the Liquidating Trustee shall so treat any such Secured Claim not expressly Allowed under the Plan and any Reliance Claim to which a payment otherwise would be due from Lehman Creditor Distribution Funding.

### 10.2.2  Distribution After Allowance.

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

### 10.2.3  Reserves for Disputed Claims.

In the event that Disputed Claims are pending, the Liquidating Trustee shall establish reasonable reserves, including the Plan Reserve for such Disputed Claims. The Distribution Agent may move the Bankruptcy Court for approval of its determination to reserve certain amounts.

### 10.2.4  Certain Disputed Cure Amounts for Secured Real Property Tax Claims.

Alternative treatment provisions are provided in the Plan for Allowed Secured Real Property Tax Claims. One such treatment is Section 1124(2) Unimpairment.  In connection with Section 1124(2) Unimpairment (the lump sum cure payment), the lump sum payment payable on the Effective Date to each Holder of an Allowed Secured Real Property Tax Claim excludes penalties. To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the amounts payable under the Plan's Section 1124(2) Unimpairment treatment, such Holder's rights will be fully preserved and such Holder will receive the excess (the "Additional Damages or Additional Interest")

1    as follows:

2            (i)        Such Holder must specify the amount and

3    components of such Additional Damages or Additional Interest and their nature (*e.g.*, as interest,

4    fees or other charges) in a statement ("Additional Damages Statement") that is served on the

5    Lehman Proponents and filed with the Bankruptcy Court by the deadline established by the

6    Bankruptcy Court for objecting to Confirmation.  If the Holder's proof of claim contains all such

7    information, reference in the Additional Damages Statement to the proof of claim would be

8    adequate.  Such Additional Damages Statement need not include case law or legal argument. Thus,

9    the Additional Damages Statement should be simpler to file than an objection to the Plan.

10            (ii)       If Confirmation of the Plan occurs, the

11    Liquidating Trustee shall deposit into the Plan Reserve the amount of the Additional Damages or

12    Additional Interest for each Holder of an Allowed Secured Real Property Tax Claim that timely files

13    an Additional Damages Statement.

14            (iii)      Such Holder shall have until thirty days

15    following the Confirmation Date to file a motion with the Bankruptcy Court, with all appropriate

16    evidence and legal argument, as to why the Additional Damages or Additional Interest are due (the

17    "Damages Motion").

18

19            (iv)       Promptly after entry of a Final Order granting the

20    Damages Motion, the Liquidating Trustee shall pay to such Holder the Additional Damages or

21    Additional Interest or such portion thereof as the Bankruptcy Court may award, plus all or any

22    interest earned thereupon in the Plan Reserve. If no Damages Motion is timely filed, if a Damages

23    Motion is withdrawn or  to the extent a Damages Motion is denied by Final Order, the Liquidating

24    Trustee shall remove from the Plan Reserve the amount (or the applicable portion) of the Additional

25    Damages or Additional Interest, plus any interest earned thereupon in the Plan Reserve, and pay

26    such amounts to the Lehman Creditors (whether as Lehman Plan Funding not utilized in accordance

27    with the Plan or in repayment of Lehman Plan Funding, to the extent thereof).

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# XI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**11.1    Identification of Executory Contracts and Unexpired Leases.**

The Lehman Proponents may file and/or amend or modify on or prior to the Confirmation Date an **Exhibit "A"** to the Plan containing, *inter alia*, a list of contracts and leases to be assumed or to be assumed and assigned or to be rejected under the Plan.  The Lehman Proponents may add any executory contract or unexpired leases to this exhibit or delete any contract or lease therefrom up to and including the Confirmation Date.

**11.2    Executory Contracts Being Assumed or Assumed and Assigned.**

In accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, any executory contracts and unexpired leases of the TD Plan Debtors' Estates listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that expressly indicates that such contract or lease is to be assumed or assumed and assigned shall be so assumed or assumed and assigned automatically as of the Effective Date, provided that, if an objection to assumption of a particular contract or lease is pending as of the Effective Date, as to such contract or lease only, assumption or assumption and assignment shall occur on such later date when the Bankruptcy Court enters a Final Order approving assumption or assumption and assignment thereof.  The cure amount therefor shall be paid promptly thereafter as an Administrative Claim under the Plan. (Such assumption or assumption and assignment shall be in addition to all executory contracts and unexpired leases that have been previously assumed by the Trustee by order of the Bankruptcy Court.)

The Proponents shall provide notice of any amendments to **Exhibit "A"** to any party with a lease or contract to be assumed under the Plan and to the Trustee Debtors' Committee and **Exhibit "A"** shall indicate the proposed assignee for any contract or lease proposed to be assigned.

To the extent applicable, all executory contracts or unexpired leases of TD Plan Debtors or their Estates assumed or assumed and assigned pursuant to the Plan shall be deemed modified such that the transactions contemplated by the Plan shall not be a "sale", "transfer", "conveyance", "assignment", "change of control" or words of similar meaning (collectively, a "transfer"), however

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

such transfer may be defined in the relevant executory contract or unexpired lease, and any precondition to a transfer (including without limitation any notice or required consent) under any such contract or lease shall be deemed satisfied by Confirmation of the Plan.

Each executory contract and unexpired lease assumed or assumed and assigned pursuant the Plan (or pursuant to other Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the applicable TD Plan Debtors' Estate or assignee in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

**11.3    Cure Rights.**

Any monetary cure amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash by the later of (a) the date of assumption or assumption and assignment (or as soon as practicable thereafter), (b) as due in the ordinary course of business or (c) on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of the Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assigned, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute.  The Proponents may list cure amounts for executory contracts and unexpired leases on **Exhibit "A."**  The failure of any non-Debtor party to an executory contract or unexpired lease to file and serve an objection to the cure amount listed on **Exhibit "A"** for such party's contract or lease by the deadline for objecting to the Plan shall be deemed consent to such cure amount and, if such objection is filed or the Bankruptcy Court determines that a higher cure amount is owing, an Order shall be issued rejecting such executory contract or unexpired lease to the extent the Lehman Proponents so request.

**11.4    Executory Contracts Being Rejected.**

Any executory contracts and unexpired leases of the TD Plan Debtors' Estates listed on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that

2   indicates such contract or lease is to be rejected shall be so rejected as of the Confirmation Date.

3   Additionally, there shall be rejected as of the Confirmation Date all executory contracts and

4   unexpired leases of the TD Plan Debtors' Estates not listed on **Exhibit "A"** to the Plan, as is or as

5   amended prior to the Confirmation Date, provided that such contracts or leases: (a) have not

6   previously expired or terminated pursuant to their own terms, (b) were not previously rejected or

7   assumed, and (c) are not the subject of any pending motion, including to assume, to assume on

8   modified terms, to reject or to make any other disposition filed by the Trustee on or before the

9   Confirmation Date. Further, all executory contracts and unexpired leases of the TD Plan Debtors'

10  Estates that are listed on **Exhibit "A"** to the Plan for assumption or assumption and assignment that

11  are not assumed or assumed and assigned within the deadlines set forth in the Plan are rejected as

12  provided in any Final Order and, if not first so rejected, shall be automatically rejected after the

13  deadline for assumption or assumption and assignment has expired.

14        **11.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee.**

15        To the extent that a matter that provides the TD Plan Debtors or their Estates with property

16  rights does not constitute an executory contract or unexpired lease, or the TD Plan Debtors have

17  obtained property rights under the executed portion of an executory contract or unexpired lease,

18  rejection shall not constitute an abandonment by the TD Plan Debtors, the Lehman Nominees or the

19  Liquidating Trustee of any such property rights.

20        **11.6    Continuing Obligations**

21        Continuing obligations of third parties to the TD Plan Debtors or Trustee under insurance

22  policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on

23  or prior to the Effective Date, including, without limitation, continuing obligations to pay insured

24  claims, to defend against and process claims, to refund premiums or overpayments, to provide

25  indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain

26  confidentiality, or to honor releases, shall continue and shall be binding on such third parties

27  notwithstanding any provision to the contrary in the Plan to the extent no obligations to such third

28  party must be cured or assumed as a condition thereto by the TD Plan Debtors, their Estates or their

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

assignees under or pursuant to the Plan, unless otherwise specifically terminated by the Trustee or by order of Bankruptcy Court.  The deemed rejection provided by the Plan is of executory contracts and unexpired leases and thus shall not apply to any such continuing obligations.

**11.7**    **Bar Date for Rejection Damages.**

Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the TD Plan Debtors' Estates, the Liquidating Trustee, the Lehman Creditors, the Lehman Nominees, any assignees or other successors, or their properties, and shall not be entitled to any Distribution under the Plan, unless a Proof of Claim for such Claim is timely filed and served.  For rejections occurring prior to Confirmation, such Claims must have been filed by the later of March 31, 2009 or thirty (30) days following the date of entry of the order of the Bankruptcy Court approving rejection.  For Claims related to executory contracts or unexpired leases not listed on **Exhibit "A"** to the Plan that are rejected under the Plan, such Claim must have been filed and served on the Trustee (if before the Effective Date) or the Liquidating Trustee and Lehman Creditors (if after the Effective Date) within thirty (30) days after the Confirmation Date.  For Claims related to executory contracts or unexpired leases listed for rejection on **Exhibit "A"** to the Plan that are rejected under or in accordance with the Plan, such Claim must have been filed and served on the Liquidating Trustee and Lehman Creditors by the earlier of:  (a) thirty (30) days after service upon the non-debtor party to the contract or lease of any notice of the rejection of the contract or lease, including service of the Plan and its **Exhibit "A"** if the contract or lease is listed for rejection thereupon; and (b) thirty (30) days after the Confirmation Date. For Claims related to executory contracts or unexpired leases listed for assumption or assumption and assignment on **Exhibit "A"** to the Plan that are rejected under or in accordance with the Plan, such Claim must have been filed and served on the Liquidating Trustee and Lehman Creditors by the earlier of:  (a) thirty (30) days after service upon the non-debtor party to the contract or lease of any notice of the rejection of the contract or lease or order specifically providing for rejection of such contract or lease; and (b) sixty (60) days after the date under the Plan to assume or assume and assign such contract or lease has expired.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# XII

## EFFECT OF CONFIRMATION OF THE PLAN;

## AND PLAN INJUNCTION

Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold a debt, Claim, or Interest against a TD Plan Debtor (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units, other than as to matters excepted from the automatic stay by Bankruptcy Code § 362(b)(4), including, without limitation, the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power, including (a) the enforcement of a judgment other than a monetary judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's police or regulatory power and (b) certain remediation sought by the City of Oakland with respect to the Oak Knoll Project to the extent any subsequent owner thereof would be liable therefor under applicable non-bankruptcy law) shall be permanently enjoined from:

(a)     taking any of the following actions *on account of any such debt, Claim, or Interest*:[6]

(1)     commencing or continuing in any manner any action or other proceeding against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(2)     enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or order against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(3)     creating, perfecting, or enforcing any Lien or encumbrance against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

---

[6] An action on "account of any such debt, Claim or Interest" does not include an action against the Liquidating Trustee or Lehman Released Parties (or the successors or property of either of them) (a "Target") based upon an independent obligation of such Target (such as, by example, a written guaranty of such Target or an obligation of such Target arising under law based on the Target's current ownership of real property) so long as the obligation is not alleged to arise based upon the Target's post-petition involvement in these Cases or with the Plan.

and

(4)    asserting any set off, right of subrogation, or recoupment of any kind against any obligation due to the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(b)    challenging the Distributions to be effected by the Plan or the classification of Claims or Interests set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

# XIII

# LIMITATION OF LIABILITY

## 13.1    No Liability for Solicitation or Participation.

As specified in section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

## 13.2    Limitation of Liability.

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Trustee Debtors' Committee, their respective Affiliates, nor any of their employees, Professionals, staff, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals shall have any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of Confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the administration of the Plan, the Cases or the property to be distributed under the Plan, or any contract, instrument, document or other agreement entered into pursuant thereto through and including the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Effective Date, except: (a) the Liquidating Trustee, in such capacity, shall be liable contractually for the performance of obligations assumed or imposed under or by the Plan; (b) for liability for damages proximately caused by (i) intentional misconduct as finally determined by a Final Order of the Bankruptcy Court and (ii) gross negligence in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, other than liability resulting from the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan. Each of the Liquidating Trustee, his Professionals and staff, and Lehman Related Parties shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under or with respect to the Plan.

## XIV

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

**14.1    Conditions Precedent to Entry of the Confirmation Order.**

Unless waived by the Lehman Creditors in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order, which will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, are:  (a) first, execution of a Settling Bond Issuer Agreement, as summarized in Plan Section 8.7, by certain of the Lehman Related Parties and each Bond Issuer; and (b) second, approval of the role and obligations under the Plan of certain of the Lehman Creditors and each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman Successor, and LBHI, which may be a party to the Settling Bond Issuer Agreements and may be a source of funding of the Lehman Plan Funding.

**14.2    Conditions Precedent to Plan Effectiveness.**

The following shall be conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date.

(a)    The Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the Lehman Creditors; and

(b)    Unless waived by the Lehman Creditors and Trustee, all agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, including, without limitation, each of the documents necessary for consummation of the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived other than the occurrence of the Effective Date.

**14.3    Conditions Precedent to Entry of the Confirmation Order and to Plan Effectiveness**

Other conditions precedent to entry of the Confirmation Order, the effectiveness of the Plan and the occurrence of the Effective Date are:

(a)    The Lehman Creditors not withdrawing the Plan prior to the Effective Date, which withdrawal may occur if either:

(1)    The Lehman Creditors' good faith estimate of the likely Classes 6/7 Claims Amount exceeds $30 million[7]; or

(2)    The Lehman Creditors' good faith estimate of the likely maximum amount for the Lehman Plan Funding exceeds $55 million (plus the amount of any new Lehman Administrative Loans made after August 10, 2010); or

(3)    After the filing of the Plan, a material ruling is issued or a material fact is newly discovered with respect to an alleged Litigation Claim against any of the Lehman Released Parties or any material adverse change occurs with respect to an applicable TD Plan Debtor's assets; and

(b)    Unless waived by the Lehman Creditors as to one or more TD Plan Debtors, Confirmation of the Plan as to all of the TD Plan Debtors.

If withdrawal occurs under subsections (a) hereof or a waiver is issued under subsection (b), the Lehman Creditors shall file a notice thereof with the Bankruptcy Court.

**XV**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date,

---

[7] The Classes 6/7 Claims Amount, as defined, does not include the Allowed Amount of any Formerly Secured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court shall retain

jurisdiction over the Cases of the TD Plan Debtors and any of the proceedings related to the Cases of

the TD Plan Debtors pursuant to Bankruptcy Code § 1142 and 28 U.S.C. § 1334 to the fullest extent

permitted by the Bankruptcy Code and other applicable law.

**XVI**

**MODIFICATION OR WITHDRAWAL OF PLAN**

### 16.1    Modification of Plan.

At any time prior to Confirmation of the Plan, the Lehman Creditors may supplement,

amend, modify or restate the Plan. After Confirmation of the Plan, the Lehman Creditors or

Liquidating Trustee with the consent of the Lehman Creditors may (x) apply to the Bankruptcy

Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the

Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the

Plan.

### 16.2    Nonconsensual Confirmation.

In the event that any Impaired Class of Claims or Interests shall fail to accept the Plan in

accordance with section 1129(a)(8) of the Bankruptcy Code, Lehman Creditors (i) may request that

the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code,

and in accordance with the Plan, and (ii) may modify the Plan in accordance with section 1127(a) of

the Bankruptcy Code.

**XVII**

**MISCELLANEOUS**

### 17.1    Changes in Rates Subject to Regulatory Commission Approval.

The TD Plan Debtors are not subject to governmental regulatory commission approval of

their rates.

### 17.2    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to

section 1930(a)(6) of Title 28 of the United States Code with respect to the TD Plan Debtors shall be

paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

adequate reserve shall have been established and set aside for payment in full thereof, as required by section 1129(a)(l2) of the Bankruptcy Code. The Liquidating Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date with respect to the TD Plan Debtors until each applicable TD Plan Debtor's Case is closed, to the extent required by section 1930(a)(6) of Title 28 of the United States Code.

### 17.3    Payment Dates.

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.

### 17.4    Headings.

The headings used in the Joint TD Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Joint TD Disclosure Statement or the Plan nor in any manner affect the construction of the provisions of the Joint TD Disclosure Statement or the Plan.

### 17.5    Other Documents and Actions.

The Trustee and Liquidating Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

### 17.6    Notices.

All notices and requests in connection with the Joint TD Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

For the Lehman Creditors:

    Edward Soto, Esq.
    Nellie P. Camerik, Esq.
    Weil, Gotshal & Manges LLP
    1395 Brickell Avenue
    Suite 1200
    Miami, FL 33131

    and

    Alfredo R. Perez, Esq.
    Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY  10153-0119

**With copies to:**
Dean A. Ziehl, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA  90067

For the Trustee and Liquidating Trustee:

William N. Lobel (CA Bar No. 93202)
Mike D. Neue (CA Bar No. 179303)
THE LOBEL FIRM, LLP
840 Newport Center Drive, Suite 750
Newport Beach, California  92660

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this section, which designation will be effective on receipt.

### 17.7    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 17.8    Binding Effect.

This Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Lehman Creditors, the TD Plan Debtors, the Liquidating Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 17.9    Successors and Assigns.

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such Person.

### 17.10  Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying Confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Lehman Proponents, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

### 17.11  No Waiver.

The failure of the TD Plan Debtors, Liquidating Trustee, Trustee Debtors' Committee or Lehman Creditors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Trustee Debtors' Committee's, the TD Plan Debtors', the Liquidating Trustee's or the Lehman Creditors' right to object to or examine such Claim, in whole or in part.

### 17.12  Inconsistencies.

In the event the terms or provisions of the Joint TD Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

### 17.13  Exemption from Certain Transfer Taxes and Recording Fees.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a TD Plan Debtor or its Estate to the Liquidating Trustee, the Lehman Nominees or to any other Person pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the TD Plan Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest), including, without limitation, transfers or sales pursuant to the Confirmation Order or any Sale Order will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax,

Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.14    Post-Confirmation Status Report.**

By the earlier of 180 days following the entry of the Confirmation Order a status report shall be filed with the Court explaining what progress has been made toward consummation of the confirmed Plan, which report shall be filed by the Liquidating Trustee, if the Effective Date occurs within 120 days following the entry of the Confirmation Order and, otherwise, by the Lehman Creditors. The status report shall be served on the United States Trustee, the list of twenty largest unsecured Creditors filed by the TD Plan Debtors or Trustee for the jointly administered Cases of the Debtors, the Lehman Creditors, the Liquidating Trustee and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**17.15    Post-Confirmation Conversion/Dismissal.**

A Creditor or party in interest may bring a motion to convert or dismiss any Case of a TD Plan Debtor under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan, subject to the right of any party in interest to object to such motion. If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**17.16    Final Decree.**

Once a TD Plan Debtor's Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Liquidating Trustee, or other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case of such TD Plan Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:    July 15, 2011                    PACHULSKI STANG ZIEHL & JONES LLP


By    /s/ Robert B. Orgel
      Dean A. Ziehl (CA Bar No. 84529)
      E-mail: dziehl@pszjlaw.com
      Robert B. Orgel (CA Bar No. 101875)
      E-mail: rorgel@pszjlaw.com
      Attorneys for Lehman Commercial Paper
      Inc., Lehman ALI, Inc., Northlake
      Holdings LLC and OVC Holdings LLC


THE LOBEL FIRM, LLP


By    /s/ Mike D. Neue
      William N. Lobel (CA Bar No. 93202)
      Mike D. Neue (CA Bar No. 179303)

      General Insolvency Counsel for Steven M.
      Speier, the Chapter 11 Trustee for the
      Trustee Debtors

**EXHIBIT "A"**

**List of Contracts and Leases**

**[TO BE FILED]**

# **EXHIBIT B**

# EXHIBIT "B"

## List of Projects, Their Owners and Descriptions

| NAME OF PROJECT AND ITS OWNER | DESCRIPTION |
|---|---|
| 1.   Delta Coves Project; Delta Coves (Trustee Debtor) | Delta Coves owns the Delta Coves Project consisting of a 310-acre site which is located on Bethel Island within Contra Costa County. The Delta Coves Project is expected to consist of 494 waterfront residential lots, some of which will be condominiums/townhomes and some of which will contain private boat docks. The Delta Coves Project is expected to include an interior lagoon that will provide direct boating access to San Joaquin River Delta. |
| 2.   Heartland Project; SunCal Heartland (Trustee Debtor) | SunCal Heartland owns the Heartland Project consisting of a 417 acre site located in Riverside County, California. The Heartland Project is expected to consist of 983 units. |
| 3.   Marblehead Project; SunCal Marblehead (Trustee Debtor) | SunCal Marblehead owns the Marblehead Project, consisting of a 247-acre site and is expected to consist of 308 units in San Clemente, California. The development is expected to offer canyon and ocean views from a number of lots throughout the Marblehead Project. (SunCal Marblehead also owns personal property in the approximate amount of $1,176,584 in the form of cash.) |
| 4.   Northlake Project; SunCal Northlake (Trustee Debtor) | SunCal Northlake owns the Northlake Project, consisting of a 1,564-acre site which is located in Castaic, California, north of Valencia, approximately 45 miles north of downtown Los Angeles and 10 miles north of the San Fernando Valley. The Northlake Project is expected to consist of 3,417 units. (SunCal Northlake also owns personal property in the amount of $967,728 in the form of cash.) |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **NAME OF PROJECT AND ITS OWNER** | **DESCRIPTION** |
|---|---|
| 5.  Oak Valley Project; SunCal Oak Valley (Trustee Debtor) | SunCal Oak Valley owns the Oak Valley Project consisting of a 985-acre site which is located in Riverside County, California. The Oak Valley Project consists primarily of residential property and is expected to also include two commercial sites, one school site and several parks. The Oak Valley Project is expected to consist of 3,417 units. |
| 6.  Palm Springs Village Project; SunCal PSV (Trustee Debtor) | SunCal PSV owns the Palm Springs Village Project, consisting of a 309-acre site which is located in the City of Palm Springs, California. The current proposed development consists of 752 single family units, 398 multi-family units, an 18-hole executive golf course, a driving range, a golf clubhouse and recreational facilities. |
| 7.  Del Amo Project; SunCal Torrance (Trustee Debtor) | SunCal Torrance owns the Del Amo Project, consisting of a 14-acre site which is located in the City of Torrance in Los Angeles County, California. The site is currently a section of the Del Amo Fashion Center complex, a 3 million square feet retail mall. The Del Amo Project is expected to consist of 365 units. |
| 8.  Oak Knoll Project; SunCal Oak Knoll (Trustee Debtor) | SunCal Oak Knoll owns the Oak Knoll Project, consisting of a 172.5-acre site which is located in the City of Oakland, California. The Oak Knoll Project is expected to be a diverse master planned community that includes 960 residential units, including single family homes, town homes and apartments. The Oak Knoll Project is also expected to consist of six restaurant spaces, along with a grocery anchor. |

**EXHIBIT "C"**

**Easements, Covenants, Conditions, Restrictions and Other Matters of Record Affecting
Real Property, Leasehold Estates or Personalty or Any Interest Therein**

**[TO BE FILED]**

**EXHIBIT "D"**

<u>**Reliance Claims:  List By Plan Debtor Of Unsecured, Non-Priority Claims And Reliance
Claim Status That Will Not Be Contested, Subject To Applicable Conditions**</u>

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**I. Delta Coves Venture LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| Scheduled | A&M Printing, Inc. | $764.69 | $764.69 |
| Scheduled | AT & T | $104.50 | N/D |
| 6 | Bellingham Marine Industries, Inc # | $2,822,167.18 | $2,822,167.18 |
| Scheduled | Ben C. Gerwick Inc. | $6,135.30 | $6,135.30 |
| 61 | Bethel Island Municipal Improvement District | $2,000,000.00 | N/D |
| 15 | BKF Engineers, c/o Cohen and Jacobson, LLP | $121,266.64 | $121,266.64 |
| Scheduled | Canon Business Solutions-Wt | $924.60 | $924.60 |
| Scheduled | Carl Warren & Co | $2,951.62 | $2,951.62 |
| Scheduled | Carpenter Photography/Dsgn | $7,000.00 | $7,000.00 |
| Scheduled | Cornerstone Structural Engineering | $16,227.40 | N/D |
| Scheduled | CSC  Corporate Domains | $215.90 | N/D |
| Scheduled | Dahlin Group, Inc. | $33,326.75 | $33,326.75 |
| 14 | Development Planning &, Financing Group, Inc. | $6,428.00 | $6,428.00 |
| 9 | Environmental Foresight | $34,903.70 | $34,903.70 |
| Scheduled | Exponent Failure Analysis Assoc | $10,610.41 | N/D |
| 29 | Fanelli Development Co | $48,380.23 | $48,380.23 |
| Scheduled | Focus 360 | $27.94 | $27.94 |
| Scheduled | Giacolone Design Svcs | $36,645.00 | $36,645.00 |
| 12 | Gibson & Skordal, LLC | $586.50 | $0.00 |
| Scheduled | Goodwin Procter LLP | $95,344.51 | $95,344.51 |
| Scheduled | Heller Ehrman | $3,835.40 | $3,835.40 |
| 2 | Hertz Equipment Rental Corporation # | $25,444.15 | N/D |
| Scheduled | Hewitt & O'Neil LLP | $935.05 | $935.05 |
| 5 | Howard Construction | $2,866.00 | $2,866.00 |
| Scheduled | Ironhouse Sanitary District | $10,005.80 | $10,005.80 |
| Scheduled | J Williams Staffing | $1,678.85 | $1,678.85 |
| 28 | Jackson DeMarco Tidus & Peckenpaugh | $1,890.00 | $1,890.00 |
| Scheduled | Latitude 38 Publishing | $1,260.00 | $1,260.00 |
| 26 | Luce Forward Hamilton & Scripps, LLP | $20,069.07 | $18,685.07 |
| 8 | MBH Architects, Inc. # | $97,091.24 | $97,091.24 |
| Scheduled | Merit Association Services | $1,853.72 | $1,853.72 |
| Scheduled | Modular Space Corp | $928.78 | $928.78 |
| Scheduled | Northern CA Marine Assoc | $200.00 | $200.00 |
| Scheduled | OCB Reprographics | $343.53 | $343.53 |
| Scheduled | Pacific Advanced Civil Eng | $12,605.34 | $12,605.34 |
| 4 | Pacific Gas and Electric Company | $4,208.49 | $4,208.49 |
| Scheduled | Pacific Legacy, inc. | $9,253.50 | $9,253.50 |
| Scheduled | Roni Hicks & Associates | $82,734.09 | $82,734.09 |
| 18 | Rose Associates Landscape, Architects, Inc. | $84,617.14 | $84,617.14 |
| Scheduled | Scout Hall Comm Educ Fund | $5,000.00 | $5,000.00 |
| Scheduled | Sheppard Mullin et al | $4,468.89 | $4,468.89 |
| Scheduled | Staples Business Advantage | $849.35 | $849.35 |
| Scheduled | The Strategic Res & Planning Group | $21,651.00 | $21,651.00 |
| 11 | Tom Weston, President, Weston/Mason Marketing | $32,525.76 | $32,525.76 |
| 17 | Top Grade Construction, Inc., c/o Scott Blaine # | $250,000.00 | N/D |
| 24 | VanderToolen Associates, Inc | $15,028.09 | $15,028.09 |
| Scheduled | Western Outdoors Publ | $850.00 | $850.00 |
| Scheduled | Wiredhat Interactive | $50.94 | $50.94 |

**II.  LB/L-SunCal Northlake LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| Scheduled | Bright Maintenance Svc | $210.00 | $210.00 |
| Scheduled | Cox, Castle & Nicholson | $103.75 | $103.75 |
| Scheduled | Heller Ehrman White & McAuliffe | $38.00 | $38.00 |
| Scheduled | Manatt, Phelps & Phillips, LLP | $7,744.09 | N/D |
| Scheduled | Newhall County Water Dist | $539.40 | $539.40 |
| 8 | Sikand Engineering Associates | $79,109.59 | $79,109.59 |
| 3 | Southern California Edison Company | $34.48 | $34.48 |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**III. LB/L-SunCal Oak Valley LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| 26 | ALL AMERICAN ASPHALT # + | $60,355.48 | $47,487.30 |
| Scheduled | Arrowhead Mtn Spring Water | $104.89 | $104.89 |
| Scheduled | BCI Framing & Drywall | $23,187.50 | $23,187.50 |
| Scheduled | Beaumont Cherry Vly Wtr | $6,182.27 | $6,182.27 |
| 9 | BIA Riverside Sign Program | $4,160.00 | N/D |
| 20 | CAL WEST UNDERGROUND, INC | $4,374.60 | $4,374.60 |
| Scheduled | Carl Warren & Co | $1,863.75 | $1,863.75 |
| Scheduled | Cash Grading Contractors, Inc. | $3,705.88 | $3,705.88 |
| Scheduled | City of Beaumont | $1,750.00 | $1,750.00 |
| 105 | Corporation Service Company | $56.49 | $56.49 |
| Scheduled | Dust Control, Inc. | $252,983.66 | $252,983.66 |
| Scheduled | East Valley Golf Club | $4,154.50 | $4,154.50 |
| Scheduled | EBS Concrete, Inc. | $16,809.25 | $16,809.25 |
| Scheduled | Event Masters Intl, Inc. | $2,010.00 | $2,010.00 |
| Scheduled | Fidelity national Title Co | $23.00 | $23.00 |
| 18 | Glenn Lukos Associates | $15,469.81 | $15,469.81 |
| Scheduled | Golden State Fence Co. | $3,100.50 | $3,100.50 |
| Scheduled | Goodwin Procter LLP | $9,412.75 | $9,412.75 |
| Scheduled | Hall & Foreman, Inc., | $621.95 | $621.95 |
| 3 | HD Supply Construction Supply, LTD. # | $52,806.70 | $52,806.70 |
| 23 | HILLCREST CONTRACTING, INC # | $136,567.43 | N/D |
| Scheduled | HomeBuyers Guide Real Est | $23,260.00 | $23,260.00 |
| Scheduled | IB Reprographics | $1,057.44 | $1,057.44 |
| Scheduled | Inland Directional Sign | $6,750.00 | $6,750.00 |
| Scheduled | J Williams Staffing | $1,925.70 | $1,925.70 |
| 39 | Jackson DeMarco Tidus & Peckenpaugh | $19,383.02 | $19,383.02 |
| 112 | JF Shea Construction, Inc. | $1,037,594.20 | N/D |
| Scheduled | John Hanna & Associates | $14,790.03 | $14,790.03 |
| 4 | Kevin L. Crook Architect, Inc. | $65,340.00 | $45,000.00 |
| 33 | Los Angeles Times | $39,295.00 | $25,635.00 |
| 25 | MACKENZIE LANDSCAPE | $121,297.00 | $121,297.00 |
| Scheduled | Modular Space Corp | $11,001.83 | $11,001.83 |
| 37 | NISSHO OF CALIFORNIA, INC | $42,570.00 | $42,570.00 |
| Scheduled | OCB Reprographics | $10,008.81 | $10,008.81 |
| 1 | Outdoor Dimensions | $170,819.50 | $167,084.74 |
| Scheduled | Outdoor Sales, Inc. | $140,185.55 | $140,185.55 |
| Scheduled | Pacific Erosion Control | $1,034.00 | $1,034.00 |
| 21 | PACIFIC SOILS ENGINEERING, INC, | $97,569.13 | $67,014.83 |
| Scheduled | Park West Landscape | $7,804.54 | $7,804.54 |
| 14 | Pinnick Inc. | $936,234.33 | $150,499.32 |
| 12 | Pinnick Inc. # | $30,752.71 | $30,752.71 |
| Scheduled | Power Fabrctig Atn Crp Ofc | $3,613.00 | N/D |
| 36 | Proactive Engineering Cons | $280,685.20 | $280,685.20 |
| Scheduled | R&S Madrigal Construction | $38,534.50 | $38,534.50 |
| Scheduled | Roddan Paolucci Roddan Adv | $606.09 | $606.09 |
| 27 | ROHM INSURANCE AGENCY | $182,774.00 | $182,774.00 |
| Scheduled | Sand Canyon Int Plant Des | $100.00 | $100.00 |
| 22 | Skyview Imaging | $1,025.00 | $525.00 |
| Scheduled | So CA Hydrosd & Hydromlch | $413.25 | $413.25 |
| Scheduled | SoCal Pupm & Well Drilling | $10,718.98 | $10,718.98 |
| 40 | Southern California Edison Company | $759.04 | $759.04 |
| 2 | Stantec Consulting Inc | $174,572.17 | N/D |
| Scheduled | Stormwater Compli Spec | $7,975.00 | $7,975.00 |
| Scheduled | SWCRB Acctg Off | $3,168.00 | N/D |
| Scheduled | TC Construction Co | $309,498.46 | $309,498.46 |
| Scheduled | The Keith Companies | $113,222.40 | $110,692.40 |
| Scheduled | ToplineConcrete & Landscape | $116,842.43 | $116,842.43 |
| Scheduled | United Site Svcs of CA | $5,025.13 | $5,025.13 |
| Scheduled | United Site Svcs of CA | $198.52 | $198.52 |
| Scheduled | URBAN CROSSROADS, INC | $5,356.26 | $5,356.26 |
| 19 | UTILITY CONSULTANTS OF ORANGE COUNTY | $5,550.00 | $5,550.00 |
| 38 | Waterforce Inc. # | $20,893.30 | $10,883.30 |
| 8 | Weston Mason Marketing | $94,946.08 | $89,484.27 |
| Scheduled | Wiredhat Interactive | $402.19 | $402.19 |
| Scheduled | Wright Septic Tank Pumping | $19,660.00 | $19,660.00 |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**IV. SunCal Heartland, LLC**

| Claim # (or "Scheduled")\*\* | Creditor Name | Creditors' Claim Amount:\*\*\* | Reliance Claim Amount:\*\*\*\* |
|---|---|---|---|
| Scheduled | Carl Warren & Co. | $169.50 | $169.50 |
| Scheduled | City of Beaumont | $78,800.00 | $78,800.00 |
| 18 | Dennis M. McCoy & Sons # | $941,960.00 | N/D |
| Scheduled | Fidelity National Title Co. | $37.00 | $37.00 |
| 23 | Hall & Foreman, Inc. | $1,175.60 | $1,030.70 |
| 2 | HD Supply Construction Supply, Ltd. # | $47,675.11 | $47,675.11 |
| Scheduled | Heller Erhman LLP | $973.00 | $973.00 |
| Scheduled | IB Reprographics | $1,055.16 | $651.72 |
| 111 | J.F. Shea Construction, Inc. | $10,000.00 | N/D |
| 25 | Jackson DeMarco Tidus & Peckenpaugh | $3,445.50 | $3,445.50 |
| Scheduled | KIP Inc. # | $393,738.00 | $393,738.00 |
| Scheduled | OCB Reprographics | $23,180.19 | $23,086.74 |
| 26 | Pacific Soils Engnrg-Tustin | $153,910.00 | $76,745.46 |
| 8 | Pinnick Inc. # | $563,159.02 | $563,159.02 |
| Scheduled | Proactive Engineering Cons | $46.50 | $46.50 |
| 27 | Rohm Insurance Agency | $297,394.00 | $297,394.00 |
| 15 | Skyview Imaging | $525.00 | $275.00 |
| 22 | Stantec Consulting, Inc. | $971,341.56 | $542,260.74 |
| Scheduled | Stormwater Compliance Specia | $7,975.00 | $7,975.00 |
| Scheduled | The Corp Interest Rate Mgmt | $7,881.25 | $7,881.25 |
| Scheduled | United Site Services of CA | $477.90 | $477.90 |
| Scheduled | Urban Crossroads | $919.55 | $0.00 |
| 14 | Utility Specialists SW, Inc. | $3,787.50 | $3,787.50 |
| 24 | Waterforce Inc. | $113,750.00 | $113,750.00 |
| Scheduled | Weston/Mason Marketing | $12,967.94 | $0.00 |

**V. SunCal Marblehead, LLC**

| Claim # (or "Scheduled")\*\* | Creditor Name | Creditors' Claim Amount:\*\*\* | Reliance Claim Amount:\*\*\*\* |
|---|---|---|---|
| Scheduled | A T & T | $1,037.07 | N/D |
| 63 | All American Asphalt # + | $1,344,444.71 | $1,170,751.31 |
| Scheduled | Aramark Refreshments Svcs | $652.04 | $250.00 |
| Scheduled | Arrowhead Mtn Spring Water | $80.75 | $80.75 |
| 9 | B.R. South Coast Private Security Services | $38,446.80 | $38,446.80 |
| 26 | Bee Busters Inc. | $300.00 | $300.00 |
| 37 | BnB Engineering Inc. co Hart King & Coldren # + | $1,608,722.64 | $1,608,722.64 |
| 61 | Boudreau Pipeline Corp # ^ | $1,673,295.70 | $1,673,295.70 |
| 14 | Brion Jeannette Architecture | $106,481.00 | $106,481.00 |
| Scheduled | Bucilla Group Architecture | $113,203.54 | $93,076.43 |
| 4 | Butsko Utility Design, Inc # | $6,250.00 | $6,250.00 |
| 7 | California Barricade Rentals, Inc. | $5,992.00 | $5,992.00 |
| Scheduled | California Coastal Commission | $10,000.00 | $10,000.00 |
| Scheduled | Canon Business Solutions W | $647.89 | $647.89 |
| Scheduled | Center for Natural Lands Mgmt | $7,756.90 | N/D |
| Scheduled | Chambers Group | $13,197.62 | $13,197.62 |
| 62 | Chino Grading Inc # ^ | $2,065,194.05 | $647,672.32 |
| 59 | City of San Clemente | $39,971,734.00 | N/D |
| Scheduled | Coast Magazine | $6,800.00 | $6,800.00 |
| 13 | Coastal Living c/o Time Inc | $11,268.00 | $11,268.00 |
| Scheduled | Cort Furniture Rental | $2,071.00 | $2,071.00 |
| Scheduled | CR & R, Inc. | $330.44 | $330.44 |
| Scheduled | Creative Environ Solutions | $17,500.00 | $17,500.00 |
| 5 | Creekside Development | $780,000.00 | $780,000.00 |
| Scheduled | Danielian Assoc | $603.99 | $603.99 |
| 8 | Debby Cobb Consulting, Inc. | $2,618.64 | $2,618.64 |
| Scheduled | Deloitte & Touche | $10,064.17 | $10,064.17 |
| 16 | Design Alliance Glenn McIntire | $27,943.18 | $27,943.18 |
| Scheduled | Diamond Environmental Svcs | $1,185.99 | $1,185.99 |
| Scheduled | Dr. Soda Co | $289.68 | $289.68 |
| Scheduled | Fidelity National Title Co. | $57.00 | $57.00 |
| 24 | Glenn Lukos Associates | $1,733.34 | $1,733.34 |
| 19 | Golden State Fence Co. | $74,337.00 | $74,337.00 |
| Scheduled | Griffith Co # + | $4,117,793.00 | N/D |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**V. SunCal Marblehead, LLC - Continued**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| Scheduled | HCD | $1,493.00 | $1,493.00 |
| Scheduled | Heller Erhman, et al | $20,762.09 | $20,762.09 |
| Scheduled | Hewitt & O'Neil LLP | $8,820.00 | $7,812.00 |
| 33 | Horticultural Specialists, Inc. | $54,480.20 | $54,480.20 |
| 32 | Horticultural Specialists, Inc. # | $13,000.00 | $13,000.00 |
| Scheduled | IB Reprographics | $112.80 | $112.80 |
| Scheduled | Jackson DeMarco Tidus & Peckenpaugh | $112,195.17 | $112,195.17 |
| 52 | Jag Construction | $178,047.68 | $175,379.68 |
| Scheduled | John Burns Real Estate Cons | $20,223.17 | $20,223.17 |
| 38 | Kirk Negrete, Inc. dba United Steel Placers # | $270,056.42 | $270,056.42 |
| Scheduled | La Jolla Pacific of CA Ltd. | $343.75 | $343.75 |
| Scheduled | Lawson & Associates Geotech Cons | $18,578.25 | $18,578.25 |
| 45 | Lucast Consulting | $22,808.26 | $5,819.58 |
| Scheduled | Luxe Magazine | $7,990.00 | $7,990.00 |
| Scheduled | Mark R. McGuire | $189,175.00 | $189,175.00 |
| 30 | Mediamax Network LLC | $55,155.48 | $55,155.48 |
| Scheduled | Mesa Pacific Construction, Inc. # | $666,817.73 | N/D |
| Scheduled | Mobile Modular Mgmt Corp. | $2,687.96 | $0.00 |
| Scheduled | Moore Stephens Wurth et al | $385.00 | $385.00 |
| Scheduled | National Construction Rentals | $3,154.48 | $3,154.48 |
| Scheduled | OCB Reprographics | $46,295.84 | $46,295.84 |
| Scheduled | Orange County Fire Authority | $426.00 | $426.00 |
| Scheduled | Orange County Printing | $2,028.19 | $2,028.19 |
| 54 | Orange County Striping Svc # + | $11,752.27 | $11,752.27 |
| 1 | Outdoor Dimensions | $57,247.88 | $52,548.95 |
| Scheduled | Park West Rescom, Inc. | $48,586.70 | $48,586.70 |
| Scheduled | Performance Magazine | $23,751.00 | $23,751.00 |
| Scheduled | Personal Touch Clrng & Maint | $5,929.27 | $5,929.27 |
| Scheduled | Power Plus Utility Services | $10,285.55 | $10,285.55 |
| Scheduled | PR Newswire | $270.00 | $270.00 |
| Scheduled | Quinn Rental Services | $4,832.81 | $2,176.55 |
| 55 | R H Masonry Inc. | $189,592.00 | $189,592.00 |
| Scheduled | R&M Electrical Contracting | $243,014.10 | $243,014.10 |
| 58 | R.J. Noble Co. # | $175,030.81 | N/D |
| 39 | RBF Consulting # | $132,188.70 | $132,188.70 |
| 28 | RMF Contracting, Inc. # ^ | $315,591.63 | $315,591.63 |
| Scheduled | Robert Hidey Architects | $746.26 | $746.26 |
| 60 | Rockey Murata Landscaping # ^ | $285,643.04 | $285,643.04 |
| 36 | Roddan Paolucci, Roddan Advertising | $427,489.63 | $397,204.81 |
| 64 | Rohm Insurance Agency | $273,962.00 | $273,962.00 |
| 31 | S&S Seeds, Inc. | $15,493.56 | $15,493.56 |
| Scheduled | San Diego Gas & Electric | $505.27 | $505.27 |
| 56 | Savala Equipment Company, Inc. # + | $34,440.00 | $0.00 |
| 15 | Security Signal Devices | $42,089.00 | $42,089.00 |
| Scheduled | Southern CA Gas Co | $50,735.60 | $50,735.60 |
| Scheduled | Southern CA Pipeline Construction # | $41,620.25 | $41,620.25 |
| 25 | Stantec Consulting, Inc. | $39,459.53 | $1,708.00 |
| Scheduled | Staples Business Advantage | $282.66 | $282.66 |
| Scheduled | State Dept of Transportation | $164.00 | $164.00 |
| Scheduled | State of California | $492.00 | N/D |
| 17 | Steiny and Company, Inc. ^ | $259,775.29 | $259,775.29 |
| Scheduled | SWRCB Accounting Office | $3,168.00 | N/D |
| Scheduled | The Collaborative West | $161,990.00 | $121,990.00 |
| Scheduled | The Corp Interest Rate Mgmt | $16,368.75 | $16,368.75 |
| Scheduled | The Foliage Group | $150.00 | $150.00 |
| 29 | The Jasper Companies, Inc. # + | $165,260.29 | N/D |
| Scheduled | The Strategic Res & Planning Co | $99.81 | $99.81 |
| Scheduled | Trench Shoring Co. | $4,860.00 | $4,860.00 |
| 3 | Trimax Systems, Inc # | $75,286.71 | $75,286.71 |
| 27 | Villa San Clemente, LLC | $13,233,103.00 | N/D |
| | WEC Corporation # | $102,418.75 | $102,418.75 |
| Scheduled | Who's Calling | $13,868.46 | $13,868.46 |
| Scheduled | Willis Risk and Ins Svcs | $349.00 | N/D |
| Scheduled | Wiredhat Interactive | $134.06 | $134.06 |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**VI.  SunCal Oak Knoll, LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| 5 | A-1 Enterprises, | $1,250.00 | $1,250.00 |
| 3 | Aboricultural Specialties, Inc., dba The Professional Tree Care Co., | $93,925.01 | $93,925.01 |
| Scheduled | Alhambra & Sierra Springs | $100.96 | $100.96 |
| Scheduled | Anue Management Grp Inc. | $16,410.00 | $16,410.00 |
| Scheduled | AT & T | $193.48 | $193.48 |
| 19 | BKF Engineers, c/o Cohen and Jacobson # | $308,817.34 | N/D |
| Scheduled | Canon Business Solutions-Wt | $298.00 | $298.00 |
| Scheduled | Dahlia Maria Moodie | $23,962.50 | $23,962.50 |
| Scheduled | East Bay Blue Print | $8,088.13 | N/D |
| 29 | East Bay Municpal Utility District | $21,948.36 | $21,948.36 |
| 20 | ENGEO, Incorporated # | $55,825.91 | $55,825.91 |
| 25 | Environmental Science Assoc | $24,234.39 | $24,234.39 |
| 13 | Fehr & Peers | $3,560.00 | $3,560.00 |
| Scheduled | HortScience, Inc | $123.75 | N/D |
| Scheduled | Intervention Agency | $10,000.00 | $10,000.00 |
| Scheduled | JSC Environmental, Inc. | $56,736.30 | N/D |
| 6 | Lamphier Gregory | $13,543.88 | $13,543.88 |
| Scheduled | Mobile Modular Mgmt Co. | $1,315.86 | $1,315.86 |
| Scheduled | Oakland Tuffgrass Educ Init | $440.00 | N/D |
| 8 | Pacific Gas and Electric Company | $1,148.52 | $1,148.52 |
| 27 | Philip Williams & Associates, Ltd., | $42,728.00 | $42,728.00 |
| 14 | Ralph Osterling Consultants, Inc | $11,688.00 | $11,688.00 |
| 1 | RGA Environmental, Inc. # | $75,617.45 | $39,184.45 |
| Scheduled | Staples Business Advantage | $1,498.94 | $1,498.94 |
| 21 | SWA Group | $32,584.54 | $32,584.54 |
| 15 | Tasini and Associates | $20,000.00 | $20,000.00 |
| Scheduled | The Corporation Int Rate Mgmt | $8,125.00 | $8,125.00 |
| 16 | WRA, Inc, | $27,450.19 | $27,450.19 |

**VII.  SunCal PSV, LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| 29 | 5th Gear, LLC | $136,356.73 | $82,073.98 |
| Scheduled | A.D. Williams Turf Sprayers | $857.42 | $857.42 |
| 53 | Andersen Concrete Inc. # | $83,031.00 | $0.00 |
| 17 | AP Medallion Golf LLC dba Golf Ventures West, LLC | $4,072.97 | $4,072.97 |
| Scheduled | Apple Paradise | $1,169.10 | $1,169.10 |
| Scheduled | Aqua Technex, LLC | $3,300.00 | $3,300.00 |
| Scheduled | Barnes Distribution | $153.98 | N/D |
| 52 | Brian Construction Co. | $35,090.00 | $35,090.00 |
| 4 | Brudvik, Inc # | $48,984.54 | $45,075.84 |
| 54 | Butsko Utility Design, Inc # | $70,045.87 | $25,805.84 |
| Scheduled | Carl Warren & Co. | $587.70 | N/D |
| Scheduled | CGPM Managers, LLC | $252,943.00 | $252,943.00 |
| Scheduled | Chemsearch | $234.10 | $234.10 |
| Scheduled | Cintas First Aid & Safety | $136.34 | $136.34 |
| Scheduled | Color Image Printing, Inc. | $21,310.57 | $19,485.01 |
| Scheduled | Corporation for Interest Rate | $30,375.00 | $30,375.00 |
| Scheduled | County of Riverside | $1,174.00 | $1,174.00 |
| Scheduled | Custom Lights and Iron | $25,118.42 | $23,529.77 |
| Scheduled | David Lynn Christion | $1,300.00 | $1,300.00 |
| 47 | Desert Pipeline, Inc. # | $469,783.93 | $282,422.19 |
| 1 | Desert Publications | $10,385.00 | $9,055.00 |
| Scheduled | Desert Sun Publishing Company | $17,838.41 | $17,838.41 |
| 16 | Desert Water Agency | $53,443.92 | $53,443.92 |
| Scheduled | Design Build Structures, Inc. | $6,270.00 | $6,270.00 |
| Scheduled | DISC [credit balance of $123,014.75] | $0.00 | N/D |
| Scheduled | Eagle One | $77.03 | $77.03 |
| Scheduled | ESSI Engineering, Inc. | $971.88 | $0.00 |
| Scheduled | Fidelity National Title Co. | $55.00 | $55.00 |
| 21 | Griffin Structures, Inc. | $80,001.60 | $60,001.20 |
| Scheduled | Harvey Mills Design | $415.92 | $415.92 |
| Scheduled | Heller Ehrman LLP | $1,264.70 | $1,264.70 |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS\***

**VII.  SunCal PSV, LLC - Continued**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| 20 | High Tech Irrigation, Inc | $50,526.39 | $46,374.11 |
| 27 | HSA Design Group | $8,767.92 | $0.00 |
| 40 | J. R. Simplot Company # | $3,467.88 | N/D |
| 45 | Jackson, DeMarco, Tidus & Pe # | $52,234.50 | $18,115.11 |
| Scheduled | Kenny Strickland Inc. | $1,519.60 | $1,519.60 |
| 24 | Larry Jacinto Construction, Inc. # | $212,663.76 | N/D |
| 18 | Martin Excavation, Inc. | $1,762.50 | $0.00 |
| Scheduled | Media That Delivers | $6,750.00 | $6,750.00 |
| Scheduled | Merit Association Services | $2,161.28 | $150.28 |
| Scheduled | Mobile Modular Mgmt Corp. | $21,521.64 | $21,521.64 |
| 43 | MSA Consulting, Inc. # | $666,897.27 | $203,061.59 |
| Scheduled | National Construction Rentals | $18,835.80 | $18,835.80 |
| 6 | New Homes Magazine & Map | $10,383.93 | $10,383.93 |
| 44 | Nissho of California, Inc. # | $1,856,428.02 | $1,761,263.38 |
| Scheduled | Nuevo Engineering, Inc. | $14,481.70 | $0.00 |
| Scheduled | OCB Reprographics, Inc. | $15,528.36 | $6,573.01 |
| 46 | Oliphant Golf, Inc. # | $456,476.47 | $0.00 |
| Scheduled | Orange County Striping Svc | $0.00 | N/D |
| Scheduled | Outdoor Dimensions | $7,289.98 | $5,943.40 |
| Scheduled | Pacific Aquascape, Inc. | $17,850.00 | $17,850.00 |
| 39 | Pacific Masonry Walls, Inc. # | $314,061.23 | $283,547.55 |
| 41 | Palm Springs Pump, Inc. | $18,158.59 | $18,158.59 |
| 48 | Protection One | $2,194.19 | N/D |
| Scheduled | Roddan Paolucci, Roddan Advertising | $78.89 | $0.00 |
| 30 | Rohm Insurance Agency | $183,883.00 | $183,883.00 |
| Scheduled | Safety Kleen Systems, Inc. | $546.93 | $546.93 |
| Scheduled | Sandy Jensen's Environmental | $700.00 | $700.00 |
| 55 | Schilling Corporation # | $638,314.17 | $217,722.97 |
| Scheduled | Schmidt - Curley Design Inc. | $18,000.00 | $0.00 |
| 50 | Sladden Engineering | $7,163.00 | $2,461.00 |
| 49 | So-Cal Sweepers, LLC # | $36,280.00 | $0.00 |
| Scheduled | South West Pump & Drilling Inc. | $640.50 | $640.50 |
| 26 | Southern California Edison Company | $23,681.62 | $23,681.62 |
| 25 | Southern California Edison Company | $243.89 | $243.89 |
| Scheduled | Southern California Soil & T | $5,914.60 | $399.00 |
| 37 | Stormwater Compliance Specia # | $21,840.00 | $21,840.00 |
| Scheduled | Superior Ready Mix Concrete, LP | $0.00 | N/D |
| 38 | Swanillon Inc. dba The Land Stewards # | $23,024.04 | $23,024.04 |
| Scheduled | SWRCB Accounting Office | $3,168.00 | N/D |
| Scheduled | Temp Power Systems | $10,410.00 | $10,410.00 |
| Scheduled | The Art Office | $2,714.32 | $0.00 |
| 23 | The Collaborative West | $79,547.50 | $74,917.50 |
| Scheduled | Turf Star, Inc. | $20.16 | $20.16 |
| Scheduled | UAP Distributions, Inc (credit balance $3,608.02) | $0.00 | N/D |
| Scheduled | UPS Freight | $35.00 | $35.00 |
| Scheduled | Urban Crossroads - Irvine | $1,065.63 | $0.00 |
| Scheduled | Urban Crossroads - Riverside | $1,728.23 | $1,728.23 |
| Scheduled | Vision Building Rentals, LLC | $3,160.75 | $3,160.75 |
| Scheduled | West Coast R & R Inc. # | $766,046.84 | $357,210.75 |
| Scheduled | West Coast Sand & Gravel, Inc. | $7,230.39 | $7,230.39 |
| 19 | West Coast Turf | $263,262.04 | $73,193.22 |
| Scheduled | Williams Mechanical, Inc. | $610.00 | $610.00 |
| 9 | Williams+Paddon Architects+Planners, Inc. # | $64,084.38 | N/D |
| 10 | Williams+Paddon Architects+Planners, Inc. # | $9,713.64 | N/D |
| Scheduled | Wiredhat Interactive | $1,179.75 | N/D |

**EXHIBIT D**

**LIST BY PLAN DEBTOR OF UNSECURED, NON-PRIORITY CLAIMS AND RELIANCE CLAIM STATUS
THAT WILL NOT BE CONTESTED, SUBJECT TO APPLICABLE CONDITIONS***

**VIII.  SunCal Torrance Properties, LLC**

| Claim # (or "Scheduled")** | Creditor Name | Creditors' Claim Amount:*** | Reliance Claim Amount:**** |
|---|---|---|---|
| Scheduled | Cox, Castle & Nicholson LLP | $3,700.00 | N/D |
| 5 | MWW Group Inc. | $42,019.25 | $42,019.25 |
| Scheduled | Sikand Engineering Associates | $1,415.01 | N/D |
| Scheduled | The Corp Interest Rate Mgmt | $8,125.00 | $8,125.00 |

*IMPORTANT NOTES AND FOOTNOTES:*

**PLEASE READ** all of the footnotes below and the following:

1.  RELIANCE CLAIM STATUS MUST BE ELECTED UPON A BALLOT TO BE EFFECTIVE. THIS LIST IS PROVIDED FOR CREDITORS' CONVENIENCE ONLY.

2.  THIS LIST IS NOT EXHAUSTIVE: Creditors not listed below or believing they hold Reliance Claims in higher amounts may elect such status and amounts on their Ballots (which election may be subject to objection).

3.  LISTED ALLEGED SECURED CLAIMS BELOW ARE NOT IN ANY WAY PREJUDICED BY SUCH LISTING: The listing is solely for the Creditors' convenience in the event they elect to waive their security on their Ballot.

4.  THE LISTING OF A CLAIM HEREIN DOES NOT ESTABLISH THAT THE CLAIM OR ITS AMOUNT IS "ALLOWED" or waive any objection to such Claim other than as to its "Reliance Claim" status, as indicated. Thus, other objections to the Claim still may be brought, prosecuted or compromised and, *if the ultimate allowed Claim amount differs from the "Claim Amount" below or the applicable proof of claim was inaccurate, then the "Reliance Claim Amount" for such Claim also may be reduced or eliminated.*

5.  IF A CLAIM OBJECTION IS PENDING, A VOTE ON A CLAIM MAY NOT COUNT UNLESS PERMITTED BY THE COURT, which permission may be sought in advance by a creditor or other party.

6.  Use of this symbol (#) next to a creditor's name signifies that its claim was filed and/or scheduled as a Secured Claim and thus would be a "Formerly Secured Claim" for certain calculations respecting conditions or thresholds in the plan.

7.  Use of this symbol (+) next to a creditor's name signifies that the creditor's claim was bonded and that the full claim amount was acquired by the respective Bond Issuer.

8.  Use of this symbol (^) next to a creditor's name signifies that an undetermined portion of the creditor's claim was bonded and only an undetermined portion of the creditor's claim amount was acquired by the respective Bond Issuer.

**Footnote*:**  The chart herein indicates the claims and claim amounts as to which, if the indicated "Claim Amount" is Allowed, the Lehman Creditors would not challenge the status of the "Reliance Claim Amount" as a Reliance Claim, so long as such status is timely and properly asserted on the applicable Ballot. (If the claim was filed as a secured claim, the creditor also must waive, in accordance with the Plan, any contentions that the claim is secured to have its status as a Reliance Claim hereby determined.)  Thus, despite this listing, the Lehman Creditors or Liquidating Trustee still may challenge, in accordance with the Plan, an assertion by a creditor on its applicable Ballot that its claim is entitled to Reliance Claim status if (1) the amount asserted as a Reliance Claim is higher than the amount listed as "Reliance Claim Amount" in the chart, (2) if any portion of the "Claim Amount" listed below is not Allowed, (3) the claim is not listed below at all, (4) the claim is listed with a zero amount in the "Reliance Claim Amount" column (which means that the Lehman Creditors believe that the Claim is not a Reliance Claim), or (5) the claim is listed with "N/D" in the "Reliance Claim Amount" column (which means that the Lehman Creditors have not reviewed (or been provided) adequate information regarding the Claim to yet make their determination as to the status of the claim as a Reliance Claim).

**Footnote**:**  The listed claims include only:

i) Claims filed as unsecured, non-priority claims

ii) Claims scheduled as unsecured, non-priority claims that were not scheduled as contingent, unliquidated or disputed ("CUD"); and

iii) Claims filed as secured claims or scheduled as non-CUD secured claims BUT ONLY IF the Lehman Creditors believe that the secured claims actually are junior to prepetition secured claims of the Lehman Creditors.

**Footnote***:**  Amounts are as listed by the creditor in its non-duplicative proof of claim or, if none, as listed in the Debtor's schedules as non-CUD.

**Footnote****:**  The indicated amount was determined based only on a review of available information as to the criteria applicable for determining whether or not a Claim is a Reliance Claim.  As indicated in summary fashion above, the "Reliance Claim Amount" is not applicable (and the Reliance Claim may be reduced or eliminated) if any part of the "Claim Amount" is disallowed or allowed in a lesser amount than the "Claim Amount" based on something other than the claim's status as a Reliance Claim (e.g., a sustained objection that a service wasn't provided, good not delivered, or obligation not created or not unsatisfied, etc., an amendment to the claim, or a compromise).

# **EXHIBIT E**

**EXHIBIT "E"**

**Definitions**

1.    **Acquisitions.**  SCC Acquisitions, Inc., a California corporation, and an indirect parent of each of the Debtors, but not a Debtor in any of the Cases.

2.    **Acton Estates.**  Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor in these Cases.

3.    **Administrative Claim.**  Any Claim against a TD Plan Debtor or Estate thereof, incurred after the applicable Petition Date for the applicable TD Plan Debtor but before the Effective Date, for any cost or expense of administration of the Case of the applicable TD Plan Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a TD Plan Debtor under section 1930 of Title 28 of the United States Code.

4.    **Administrative Claim Bar Date.**  The General Administrative Claim Bar Date and the Administrative Tax Claim Bar Date.

5.    **Administrative Tax Claim**  A request for payment of an Administrative Claim by a governmental unit for Taxes (or for interest or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date.

6.    **Administrative Tax Claim Bar Date**  The earlier of (a) any bar date otherwise established by the Bankruptcy Court or (b) on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 180 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.

7.    **Affiliate**  As to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  ownership of voting securities or other equity ownership interest, by contract or otherwise; provided

2  that as to any Lehman Related Party, the term "Affiliate" does not include any Debtor.

3      **8.**   **Allowance Determination Date**   As to a Claim, the earliest of the following dates

4  after the Effective Date: (a) the first Business Day as of which the Claim is Allowed by a Final

5  Order; (b) the first Business Day as of which both the Claim is Allowed and the last day to timely

6  object to the Claim has passed; and (c) the date, selected in the sole and unfettered discretion of the

7  Lehman Creditors, as the first Business Day as of which they have determined that they will not

8  object to the subject Claim and thus are prepared to treat it as Allowed.

9      **9.**   **Allowed**   This term is used both separately and in conjunction with other defined

10  terms in the Plan (*e.g.*, Allowed General Unsecured Claims) and means:

11          a.      with respect to any Administrative Claim:  (1) if the Claim is based

12  upon a Fee Application, an unsecured Claim in the amount of such Fee Application that has been

13  approved by a Final Order of the Bankruptcy Court; or (2) if the Claim is based upon any

14  indebtedness or obligation incurred in the ordinary course of business of the TD Plan Debtors and is

15  not otherwise subject to an Administrative Claim Bar Date, in the amount of such Claim and with a

16  status as secured or unsecured as each are asserted by such Creditor and not disputed by the

17  Liquidating Trustee or the Lehman Creditors, failing which, the amount and secured or unsecured

18  status thereof as fixed by a Final Order of the Bankruptcy Court; or (3) if the Holder of such Claim

19  was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative

20  Claim Bar Date, (i) in the amount and with the status as secured or unsecured and in the statutory

21  priority as stated in such proof of Administrative Claim if no objection to such proof of

22  Administrative Claim is interposed within the applicable period of time, if any, fixed by the

23  Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court or the Plan, or (ii) in the amount and

24  with the status as secured or unsecured and in the statutory priority as fixed by Final Order of the

25  Bankruptcy Court if an objection to such proof was interposed within any applicable period of time

26  so fixed; or (4) if such Claim is contingent or unliquidated, in the estimated amount and with the

27  status as secured or unsecured and in the statutory priority as fixed by Final Order of the Bankruptcy

28  Court; or (5) in the amount of zero, if the Holder of such Claim was required to file and has <u>not</u> filed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, in which event

2    no Distribution shall be made on account of such Claim; and

3                    b.        with respect to any Claim which is not an Administrative Claim: (1) if

4    no objection to such Claim was interposed by the Claims Objection Deadline, (i) if the Holder of

5    such Claim did not file proof thereof with the Bankruptcy Court on or before the applicable Claims

6    Bar Date, if a Scheduled Claim, in the amount thereof, with the status as secured or unsecured

7    thereof and with the statutory priority thereof and (ii) if the Holder of such Claim has filed a Proof of

8    Claim therefor with the Bankruptcy Court on or before the applicable Claims Bar Date, in the

9    amount and with the status as secured or unsecured and in the statutory priority as stated in such

10    Proofs of Claim; or (2) if an objection to such Claim was interposed by the Claims Objection

11    Deadline, in the amount or any estimated amount for purposes of allowance and with the status as

12    secured or unsecured and in the statutory priority thereof as fixed by Final Order of the Bankruptcy

13    Court; or (3) if the Holder of such Claim did not file proof thereof with the Bankruptcy Court on or

14    before the applicable Claims Bar Date, the Claim is not a Scheduled Claim, and the Claim is not

15    deemed Allowed under the terms of this Plan, in the amount of zero and no Distribution shall be

16    made on account of such Claim; and

17                    c.        with respect to a Claim's status as a Reliance Claim, (1) with such

18    status if it is alleged on the Holder's Ballot in the manner provided therefor and if no objection

19    thereto is interposed by the Claims Objection Deadline, or (2) with such status if it is alleged by the

20    Liquidating Trustee and either (i) the Lehman Creditors consent or (ii) no objection thereto is filed

21    by the later of the Claims Objection Deadline or seventy-five (75) days after notice thereof to the

22    Trustee Debtors' Committee, if surviving, and the Lehman Creditors or (3) as fixed by Final Order

23    of the Bankruptcy Court; and

24                    d.        with respect to any Interest, (1) if no objection to such Interest was

25    interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules,

26    the Plan or the Bankruptcy Court, (i) if the Holder of such Interest did not file proof thereof with the

27    Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the

28    Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Interest and with the nature thereof as listed in the TD Plan Debtors' Schedules if listed as neither

2  disputed, contingent or unliquidated and (ii) if the Holder of such Interest has filed a Proof of

3  Interest therefor with the Bankruptcy Court within the applicable period of time fixed by the

4  Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

5  or percentage of such Interest and with the nature thereof as stated in such Proof of Interest, or (2) if

6  an objection to such proof was interposed within the applicable period of time fixed by the

7  Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

8  or percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court;

9  but

10          e.          with respect to any Administrative Claim, Claim or Interest, the term

11  "Allowed" does not signify whether or not such Administrative Claim, Claim or Interest has been

12  subordinated to another Administrative Claim, Claim or Interest or is entitled to the benefits of such

13  subordination.

14          **10.**    **Allowed Amount**    The amount in which a Claim or Interest is Allowed.  (If the

15  source of allowance of a Claim (*e.g.*, a proof of claim) does not specify its amount, there is no

16  Allowed Amount, unless determined by agreement of the payor under the Plan and Holder, by the

17  Bankruptcy Court or by another court of competent jurisdiction.)

18          **11.**    **Arch**    Arch Insurance Company or an Affiliate thereof.

19          **12.**    **Asset**    Any asset that is property of a TD Plan Debtor pursuant to Bankruptcy Code

20  section 541.

21          **13.**    **Available Cash**    Cash held by each TD Plan Debtor as of the Effective Date other

22  than Cash Collateral.

23          **14.**    **Avoidance Actions**    All claims and defenses to Claims accruing to the Trustee, TD

24  Plan Debtors or their Estates under Bankruptcy Code sections 502(d), 506(c), 506(d), 510(c), 541,

25  542, 544, 545, 547, 548, 549, 550, 551 or 553.

26          **15.**    **Ballot**    The ballot to vote to accept or reject the Plan.

27          **16.**    **Bankruptcy Code**    The Bankruptcy Reform Act of 1978, as amended, as set forth in

28  Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**17.    Bankruptcy Court**   The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases of the TD Plan Debtors and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases of the TD Plan Debtors, such court or unit thereof that exercises jurisdiction over the Cases of the TD Plan Debtors in lieu thereof.

**18.    Bankruptcy Rules**   Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

**19.    Bond-Backed Claim**   A Claim or portion of a Claim against a TD Plan Debtor, the payment of which is or was at any time secured by a Project Bond.  Bond-Backed Claims are further characterized as either Bond-Backed Non-Future Work Claims or Bond-Backed Future Work Claims.

**20.    Bond-Backed Claimant**   Holder(s) of a Bond-Backed Claim other than a Bond Issuer.

**21.    Bond-Backed Future Work Claim**   A Bond-Backed Claim secured by a Future Work Bond.

**22.    Bond-Backed Non-Future Work Claim**   A Bond-Backed Claim secured by a Project Bond other than a Future Work Bond, but excluding any Settling Bond Issuer-Owned Non-Future Work Claims.

**23.    Bond Claim**   A Bond-Backed Claim or a Bond Issuer Claim.

**24.    Bond Issuer**   Bond Safeguard or Arch, each in its capacity as an issuer and surety under a Project Bond.

**25.    Bond Issuer Claim**   A Claim against a TD Plan Debtor held by a Bond Issuer (either directly (including by assignment) or through rights of subrogation), and including a liquidated Claim and a contingent Claim, and arising from, under or in connection with the Bond Issuer's issuance and maintenance of a Project Bond.

**26.** **Bond Modification Discussions** Discussions, including efforts to approach and initiate discussions, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman Creditors or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds, regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding.

**27.** **Bond Obligations** The obligations of the Bond Obligors to indemnify the Bond Issuers for any payments made or any performance obligations undertaken by the Bond Issuers under their respective Project Bonds.

**28.** **Bond Obligors** Obligors (other than TD Plan Debtors) who are liable to a Bond Issuer for any payments made or any performance undertaken by such Bond Issuer under its respective Project Bonds. The Bond Issuers assert that the Bond Obligors under their respective Project Bonds include Acquisitions and Elieff.

**29.** **Bond Safeguard** Bond Safeguard Insurance Company, Lexon Insurance Company or an Affiliate thereof.

**30.** **Bonded Work** Any work or improvements, the payment, performance and/or completion of which is secured by one or more Project Bonds. Bonded Work is further characterized as either Future Work or Non-Future Work.

**31.** **Business Day** Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a); provided that with reference to the date on which something is to be filed, it shall not include a day on which the applicable court is inaccessible for the purpose of Filing such paper.

**32.** **Case** The chapter 11 case pending before the Bankruptcy Court of a Debtor.

**33.**    **Cash**    Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

**34.**    **Cash Collateral**    This term is used in reference to certain Assets of a TD Plan Debtor's Estate with the same meaning as set forth in Bankruptcy Code section 363(a).

**35.**    **Claim**    A claim — as Bankruptcy Code section 101(5) defines the term "claim"— against any TD Plan Debtor or any TD Plan Debtor's property, including, without limitation (a) any right to payment from any of the TD Plan Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the TD Plan Debtors, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**36.**    **Claim Right**    The rights, benefits and interests of a Holder with respect to a Claim including, without limitation, Proofs of Claim and Encumbrances securing such Claim.

**37.**    **Claims Bar Date**    The Primary Claims Bar Date or Supplemental Claims Bar Date, as applicable.

**38.**    **Claims Objection Deadline**    For a Claim other than an Administrative Claim and except as otherwise set forth in the Plan, the first Business Day following the one hundred and twentieth (120th) day after the later of (a) the Effective Date and (b) the applicable bar date for the Claim; provided that: (a) upon application to the Bankruptcy Court, the Liquidating Trustee or Lehman Creditors may obtain an extension of any such deadline for up to sixty (60) days for cause shown; and (b) any deadline may be extended by agreement of the potential target of the objection and the Liquidating Trustee or a Lehman Creditor.

**39.**    **Class**    Each group of Claims or Interests classified in Article V. of the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

**40.**    **Class 6 Aggregate Claims Amount**    The aggregate Allowed Amount of all Claims in Class 6, exclusive of Formerly Secured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**41.**    **Class 6 Savings Provision**  The provision set forth in Plan Section , 6.6.3(a)(ii)(b) ensuring that the actual dollar amount of the Lehman Distribution Enhancement for Class 6 Allowed Claims is not actually less just because the Classes 6/7 Claims Amount exceeds $23 million than if the Classes 6/7 Claims Amount does not exceed $23 million.

**42.**    **Class 7 Aggregate Claims Amount**  The aggregate Allowed Amount of all Claims in Class 7, exclusive of Formerly Secured Claims and Lehman Creditor Deficiency Claims.

**43.**    **Classes 6/7 Claims Amount**  The aggregate Allowed Amount of all Claims in Classes 6 and 7, exclusive of Formerly Secured Claims and Lehman Creditor Deficiency Claims.

**44.**    **Classes 6/7 Allowance Determination Date**  The first date, as determined by the Liquidating Trustee in his good faith discretion, as of which the Liquidating Trustee determines that, with respect to each General Unsecured Claim and each Reliance Claim, the Allowance Determination Date has occurred or the Claim has been determined by a Final Order or this Plan not to be susceptible of being an Allowed Claim.

**45.**    **Confirmation**  As to a particular TD Plan Debtor, the confirming of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**46.**    **Confirmation Date**  The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

**47.**    **Confirmation Order**  The order entered by the Bankruptcy Court approving Confirmation.

**48.**    **Creditor**  Any Person who is or asserts to be the Holder of a Claim against any TD Plan Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the applicable TD Plan Debtor's Confirmation Date, including, without limitation, Claims asserted to be of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**49.**    **Creditor's Assignment / Release for Lehman**  The assignment of Claims and / or release of Creditors for the benefit of the Lehman Released Parties as more fully set forth in Section 8.8.1 of the Plan.

**50.**    **Danske Bank**  Danske Bank A/S London Branch.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**51.**    **Debtor**    A Voluntary Debtor or Trustee Debtor.

**52.**    **Del Amo Project**    The Project owned by SunCal Torrance, located in the City of Torrance, California, as more particularly described in **Exhibit "B"** to the Plan.

**53.**    **Del Rio**    North Orange Del Rio Land, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**54.**    **Delta Coves**    Delta Coves Venture, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Delta Coves Project.

**55.**    **Delta Coves Loan Agreement**    That certain Amended and Restated Loan Agreement, dated as of April 20, 2007, by and between Delta Coves, as borrower, and Lehman ALI, as agent and lender, pursuant to which the lenders thereunder made a loan to the borrower in the maximum aggregate principal amount of approximately $236,000,000. The loan made pursuant to and/or evidenced by the Delta Coves Loan Agreement is secured by a first priority deed of trust on the Delta Coves Project. The outstanding balance of the loan under the Delta Coves Loan Agreement was not less than $206,023,142.48 as of the applicable Petition Date.

**56.**    **Delta Coves Project**    The Project owned by Delta Coves, located in Bethel Island in Contra Costa County, California, as more particularly described in **Exhibit "B"** to the Plan.

**57.**    **Disclosure Hearing Date**    The last day of the hearing on approval of the Disclosure Statement, which hearing commences prior to the time of entry of the order approving the Disclosure Statement.

**58.**    **Disclosure Statement**    The Joint TD Disclosure Statement.

**59.**    **Disputed Claim**    All or any part of a Claim that is not Allowed, including, without limitation, all or part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim and it is not deemed Allowed under the Plan, and either (a) the Claim is not listed in the Schedules or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the liability for, amount, priority or status of the Claim as secured, status as unsecured or status as a Reliance Claim (a) is the subject of a pending proceeding, whether arbitration, mediation, litigation, adversary proceeding or otherwise; (b) is subject to offset based upon a filed judgment, filed order, filed stipulation or express provision in an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

executed agreement that was filed or executed, as appropriate, after the alleged right to offset arose; (c) is the subject of a timely objection; or (d) is the subject of a request for estimation made in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court or the Plan, in each case that is filed on or before the Claims Objection Deadline, provided that any such proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

60.     **Distribution**    A payment to a Holder of an Allowed Claim or Allowed Interest that is provided for under the Plan.

61.     **Distribution Agent**    The Liquidating Trustee.

62.     **Distribution Date**    With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan or as soon as practicable thereafter.

63.     **Effective Date**    A date selected by agreement of the Trustee and Lehman Creditors, that is no earlier than the Confirmation Date and no later than the sixtieth (60th) day after the Confirmation Date.

64.     **Elieff**    Bruce Elieff, an owner of and the manager of Acquisitions, an indirect parent of each of the Debtors.

65.     **Encumbrance**    Any Lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, unassumed affirmative obligation under a development agreement or subdivision improvement agreement, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject Plan Project, including any right of recovery, tax (including foreign, federal, state and local tax), order of any governmental authority or other claim there against or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that the acquirer is a successor, transferee or continuation of the sellers or their business, and (iv) any leasehold interest, license or other right, in favor of a person other than the transferor in connection with a sale or conveyance, to use any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

portion of the subject Project), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

66. **ES Action**    That certain adversary proceeding filed in the Cases and pending before the Bankruptcy Court (as Adversary Case No. 8:09-ap-01005).

67. **Estate or Estates**    The bankruptcy estates of the TD Plan Debtors created pursuant to section 541 of the Bankruptcy Code.

68. **Fee Applications**    Applications of Professionals under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases of the TD Plan Debtors.

69. **Final Confirmation Order**    The Confirmation Order when it becomes a Final Order.

70. **Final Order**    A final and non-appealable judgment, order, ruling or other decree issued and entered by a court of competent jurisdiction.

71. **Formerly Secured Claim**    An Allowed Claim that is a General Unsecured Claim or Reliance Claim and is Allowed based upon either: (a) there being a Proof of Claim for such Claim against the applicable TD Plan Debtor that alleges that the Claim is a Secured Claim; or (b) the Claim being a Scheduled Claim as to the applicable TD Plan Debtor, with its status indicated as secured on such TD Plan Debtor's Schedules.

72. **Future Obligation**    A Claim or portion of a Claim against a TD Plan Debtor that is not a Settling Bond Issuer-Related Claim, but, at each relevant time: (a) arises from such TD Plan Debtor's obligation (pursuant to a contract, a permit or otherwise) to perform, complete or pay for certain work in connection with the development of its Plan Project, which work would have constituted Future Work had the payment and/or performance of the same been secured by a Project Bond, and which obligation of such TD Plan Debtor has not yet become due (pursuant to the terms of the applicable contract, permit or other basis for such obligation) without regard to the effect of any acceleration of the type described in clause (b) below ; or (b) is contingent, without regard to an acceleration triggered by a default of the type specified in Bankruptcy Code § 365(b)(2), *e.g.*, a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

default arising from the fact of the commencement of the bankruptcy case of the TD Plan Debtor, its insolvency, its financial condition or the appointment of the Trustee; or (c) is unliquidated.

73. **Future Work**  That portion of Bonded Work (which may be part of a larger work project):  (a) that relates solely to a particular Plan Project; and (b) that is not performed or otherwise provided to the Plan Project until after the Effective Date.

74. **Future Work Bond**  A Project Bond that secures the payment, completion or performance of Future Work.

75. **Future Work Obligation Collateral**  The collateralization or credit enhancement for the reimbursement obligations to Settling Bond Issuers of each applicable Lehman Nominee, as more fully described in Plan Section 8.7.2.

76. **General Administrative Claim Bar Date**  The last date fixed by the Plan for the filing of Proofs of Claim or requests for payment of Administrative Claims other than for Taxes. Under the Plan, the General Administrative Claim Bar Date shall be the first Business Day following the sixtieth (60th) day after the Confirmation Date.

77. **General Unsecured Claim**  A Claim, including, without limitation, a Bond-Backed Claim, Bond Issuer Claim or Claim arising under Bankruptcy Code § 502(h), against a TD Plan Debtor that is <u>not</u> any of the following:

(a) an Administrative Claim;

(b) a Priority Tax Claim;

(c) a Secured Claim;

(d) a Priority Claim;

(e) a Reliance Claim; or

(f) a Settling Bond Issuer-Related Future Work Claim.

78. **Heartland Project**  The Project owned by SunCal Heartland, located in Riverside County, California, as more particularly described in **Exhibit "B"** to the Plan.

79. **Holder**  The beneficial owner of any Claim or Interest, including the Lehman Creditors as to the Lehman Loans.

80. **Impaired**  Not Unimpaired.

**81.** **Insider** (1) A Person other than a Lehman Related Party that is an "insider" as to any TD Plan Debtor as defined in Bankruptcy Code section 101, (2) an Affiliate of such a Person or (3) without limiting the foregoing, as to all TD Plan Debtors, *inter alia*, each other TD Plan Debtor, SunCal Management, LLC, Acquisitions, Elieff, Voss, Cook & Thel LLP, Greenfield Communications, and SunCal Master Venture Member, LLC.

**82.** **Interest** Any equity security or interest in any TD Plan Debtor within the meaning of section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the TD Plan Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, or any other equity security or interest.

**83.** **Joint TD Disclosure Statement** The *Disclosure Statement With Respect to Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed By the Trustee and Lehman Creditors*.

**84.** **Joint TD Plan** The Plan.

**85.** **Kirby Estates** Kirby Estates, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**86.** **LBHI** Lehman Brothers Holdings Inc., a Delaware corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases.

**87.** **Lehman Administrative Loans** (a) The post-petition financing provided by Lehman ALI to SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal PSV, Delta Coves, SunCal Torrance and SunCal Oak Knoll, under which first priority priming Liens were granted to Lehman ALI on all borrower TD Plan Debtors' Assets, and as to which financing, super-priority administrative status was afforded and the automatic stay was modified to the extent necessary to implement the financing; and (b) any post-petition financing provided by any Lehman Related Party after September 23, 2009 to any of the TD Plan Debtors or their Estates pursuant to an order of the Bankruptcy Court such as by way of use of Cash Collateral; and (c) all interest, fees and other charges thereupon. The aggregate amount of such loans to all of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the borrower TD Plan Debtors was not less than approximately $38.8 million as of approximately June 1, 2011.

**88.**    **Lehman ALI**    Lehman ALI, Inc., a Delaware corporation.

**89.**    **Lehman Claim Liens**    The Liens that, as of the moment prior to the Effective Date, secure any, all or some of the Claims of any, all or some of the Lehman Creditors.

**90.**    **Lehman Commercial**    Lehman Commercial Paper Inc., a New York corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases and which owns or holds, or may own or hold, a legal or equitable interest in all or a portion of each of the Lehman Loans.

**91.**    **Lehman Creditor**    A Lehman TD Lender and/or Lehman Successor. Any funding obligation or similar commitment of a Lehman Creditor under the Plan is a singular, aggregate obligation as to the amount or obligation specified, and thus will be satisfied by a single satisfaction thereof.

**92.**    **Lehman Creditor Deficiency Claim**    With respect to each TD Plan Debtor, the Claim of a Lehman Creditor arising from the deficiency owed to such Lehman Creditor under the applicable Lehman Loan after the conveyance of the applicable Plan Project of the applicable TD Plan Debtor to such Lehman Creditor or a Lehman Nominee under the Plan.  (*See* Plan Section 8.6.1.).

**93.**    **Lehman Creditor Distribution Funding**    The agreement under this Plan of the Lehman Creditors:  (a) to fund, through permitting use of Cash Collateral or through new transfers of Cash or other arrangements, the Distributions that Plan Articles IV. and VI. mandate for the following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) the Lehman Guaranteed Minimum Distribution, and (vii) the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims (Class 7) and Allowed Reliance Claims (Class 6); and (b) to arrange, as provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed Bond-Backed Future Work Claim and to reimburse the agreed amount to the

applicable Settling Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising under a Future Work Bond, as provided in the applicable Settling Bond Issuer Agreements.

**94.    Lehman Distribution Enhancement**    The enhanced recoveries available under this Plan to be funded by the Lehman Creditors increasing recoveries to (a) five percent (5%) of each Allowed General Unsecured Claim and (b) forty to fifty percent (40% to 50%), as applicable, of each Allowed Reliance Claim, provided, in each case, that the Holder of such Claim executes and delivers to the Lehman Creditors the Creditor's Assignment / Release for Lehman.

**95.    Lehman Guaranteed Minimum Distribution**    The guaranteed, minimum recoveries provided under this Plan to be funded, unconditionally, by the Lehman Creditors of one percent (1%) of each Allowed General Unsecured Claim and one percent (1%) of each Allowed Reliance Claim.

**96.    Lehman Loan**    Each loan (or series of loans) made pursuant to and/or evidenced by the following agreements: (a) SunCal Oak Knoll/SunCal Torrance Loan Agreement; (b) SunCal PSV Loan Agreement; (c) Delta Coves Loan Agreement; (d) SunCal Marblehead / SunCal Heartland Loan Agreement; (e) SunCal Oak Valley Loan Agreement; and (f) SunCal Northlake Loan Agreement.

**97.    Lehman Nominee**    The Person or any Person designated by the Lehman Creditors, or any of them, to take title to a Plan Project and/or any other Asset of a TD Plan Debtor.

**98.    Lehman-Owned Settling Bond Issuer-Related Claim**    A Settling Bond Issuer – Related Claim after assignment to a Lehman Related Party.

**99.    Lehman Plan Funding**    The agreement under this Plan of the Lehman Creditors to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding.

**100.    Lehman Post-Confirmation Expense Funding**    The agreement under this Plan of the Lehman Creditors to pay an amount (which amount shall not exceed $500,000 nor shall it be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash

transfers or by a Lehman Creditor permitting the use of Cash Collateral of a Lehman Creditor, each as loans payable by each benefitted TD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

**101.** **Lehman Proponents**  The Lehman Creditors, with reference to their status as Proponents.

**102.** **Lehman Related Party**  A Lehman TD Lender, Lehman Successor or Lehman Nominee, or an Affiliate of any of them.

**103.** **Lehman Released Claims**  Any and all causes of action, actions, rights of action, suits, judgments, liens, indebtedness, damages, losses, claims, liabilities, obligations, attorneys' fees, costs, expenses and demands of every kind and character, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, asserted or unasserted, fixed or contingent, foreseen or unforeseen, and whether based on contract, tort, statute or other legal or equitable theory of recovery, including without limitation any Litigation Claims, whether for damages, subordination or other remedies, and including any and all objections or defenses to all Claims, Liens, rights, or causes of action of all Lehman Related Parties, but (a) not including an obligation of a Lehman Creditor expressly set forth as arising under the Plan and (b) as to a Creditor, not including claims of the Creditor unrelated in any way to its Claims, these Cases, the TD Plan Debtors or the Plan Projects (e.g., such unrelated claims excluded from this definition may include, by example, a claim to the extent asserted against a Voluntary Debtor for goods or services provided to that Voluntary Debtor or for money lent to that Voluntary Debtor).  Without limiting the generality of the foregoing, the Lehman Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lehman Creditors and the other Lehman Released Parties, or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any Lehman Creditor or other Lehman Released Party or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence,

bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

104.    **Lehman Released Parties**    All of the following Persons:  (a) the Lehman Creditors, (b) each of the defendants to any complaint, pending or dismissed, in the ES Action, (c) each, every and any owner, including future owners, of each of the Plan Projects, including the Lehman Nominees, which owner is, was or will be a grantee, transferee, successor or assign of the applicable TD Plan Debtor that owns or owned such Plan Project, (d) LBHI, Property Asset Management, Inc., and any other direct or indirect subsidiary thereof including, without limitation, any entity that is or was a member or partner of any upper-tier joint venture, partnership or limited liability company that is or was a direct or indirect parent of any TD Plan Debtor, (e) Alvarez & Marsal, LLC, and (f) the respective Affiliates of all of the foregoing Persons and each of their respective officers, directors, shareholders, members, managers, employees, agents, independent contractors, administrators, consultants, asset managers, attorneys, accountants, trustees, insurers, representatives, successors and assigns, including, without limitation, the Lehman Successor.

105.    **Lehman Secured Claim**    A Secured Claim held by a Lehman Creditor.

106.    **Lehman Successor**    Lehman Commercial, an owner of an interest in certain of the Lehman Loans, or any successor thereto.

107.    **Lehman TD Lender**    Lehman ALI, Northlake Holdings or OVC Holdings, including each in its capacity as agent, or agent and lender, with respect to the applicable Lehman Loans. Any funding obligation or similar commitment of the "Lehman TD Lenders" under the Plan is a singular, aggregate obligation as to the amount or obligation specified, and thus will be satisfied by a single satisfaction thereof.

108.    **Liquidating Trustee**    The Trustee, unless he resigns or is removed by the Bankruptcy Court, in which event the Bankruptcy Court shall appoint another person to serve as Liquidating Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**109.**    **Litigation Claim**    Any interest of the Trustee, the Estates, the TD Plan Debtors, the Trustee Debtors' Committee or the Liquidating Trustee, in any claim, right, cause of action, remedy (including under Bankruptcy Code § 550) or objection or defense (including to a Claim or Lien) that has been or may be commenced or asserted by the Trustee, an Estate, a TD Plan Debtor, the Trustee Debtors' Committee or the Liquidating Trustee, as the case may be, including, but not limited to:  (i) an Avoidance Action; (ii) a claim, right or cause of action for turnover of property to the TD Plan Debtors' Estates and/or Liquidating Trustee; (iii) a claim, right or cause of action for the recovery of property by, or payment of money to, the TD Plan Debtors' Estates or the Liquidating Trustee; (iv) the right of the Liquidating Trustee to damages, recoupment, or setoff; and (v) an objection to a Claim.

**110.**    **Litigation Recoveries**    Any Cash or other property received by the Trustee, the TD Plan Debtors, the Liquidating Trustee, or the Trustee Debtors' Committee, as the case may be, from all or any portion of a Remaining Litigation Claim(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

**111.**    **Marblehead Project**    The Project owned by SunCal Marblehead, located in the City of San Clemente, California, as more particularly described in **Exhibit "B"** to the Plan.

**112.**    **Mechanic's Lien Claim**    Mechanic's lien claims against a TD Plan Debtor's Project arising pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or otherwise and allegedly satisfy the requirements of Bankruptcy Code section 546(b).

**113.**    **Net Cash Litigation Recoveries**    Any Litigation Recoveries consisting of Cash and any Cash proceeds of Litigation Recoveries less associated Post-Confirmation Expenses incurred in connection therewith.

**114.**    **Net Cash Proceeds**    Net Proceeds consisting of Cash.

**115.**    **Net Proceeds**    Gross proceeds of sale, liquidation or refinancing, less costs, expenses, fees, commissions, taxes (including federal, state and local income tax calculated at an assumed rate of forty-five percent (45%)) and other charges incurred directly in the sale, liquidation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

or refinancing of the underlying Asset, including payment of Encumbrances senior to those of the most senior Encumbrance of a Lehman Related Party.

116.    **New Value**    Money, goods, services, or new credit voluntarily transferred or extended to the applicable TD Plan Debtor, but not if transferred or extended on account of an existing obligation.

117.    **New York Bankruptcy Cases**    The chapter 11 bankruptcy cases of, *inter alia,* Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., pending before the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 08‐13555 (JMP).

118.    **New York Bankruptcy Court**    The United States Bankruptcy Court for the Southern District of New York having jurisdiction over the New York Bankruptcy Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Southern District of New York; or, in the event such courts cease to exercise jurisdiction over the New York Bankruptcy Cases, such court or unit thereof that exercises jurisdiction over the New York Bankruptcy Cases in lieu thereof.

119.    **Non-Future Work**    Bonded Work that is not otherwise Future Work.

120.    **Northlake Holdings**    Northlake Holdings LLC, a Delaware limited liability company.

121.    **Northlake Project**    The Project owned by SunCal Northlake, located in the City of Castaic California, as more particularly described in **Exhibit "B"** to the Plan.

122.    **Oak Knoll Project**    The Project owned by SunCal Oak Knoll, located in the City of Oakland, California, as more particularly described in **Exhibit "B"** to the Plan.

123.    **Oak Valley Project**    The Project owned by SunCal Oak Valley, located in Riverside County, California, as more particularly described in **Exhibit "B"** to the Plan.

124.    **Other Secured Claim**    A Secured Claim that is not a Secured Real Property Tax Claim, Lehman Secured Claim or Sr. Secured Mechanic's Lien Claim.

125.    **OVC Holdings**    OVC Holdings LLC, a Delaware limited liability company.

**126.**   **Palmdale Hills**   Palmdale Hills Property, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**127.**   **Palm Springs Village Project**   The Project owned by SunCal PSV, located in the City of Palm Springs, California, as more particularly described in **Exhibit "B"** to the Plan.

**128.**   **Payment Bond**   A Project Bond (or portion thereof) under which the Bond Issuer guaranteed payment to and for the benefit of contractors and other persons who provide Bonded Work to the applicable Plan Project for which the Payment Bond was issued.

**129.**   **Performance Bond**   A Project Bond (or portion thereof) under which the Bond Issuer guaranteed the performance and completion of Bonded Work  and the payment of any costs and expenses incurred by the beneficiary in connection therewith.  Typically, a Performance Bond would guarantee to the applicable beneficiary (typically a municipality or other governmental entity) that the obligations of a TD Plan Debtor under a specified contract (such as a subdivision improvement agreement), or certain of such obligations, would be performed and satisfied by the subject TD Plan Debtor.

**130.**   **Permitted Liens**   (a) Statutory liens for Secured Real Property Tax Claims to the extent securing amounts required to be paid under the Plan; (b) easements, covenants, conditions, restrictions and other matters of record affecting real property, leasehold estates or personalty or any interest therein (excluding any rights of appeal from the Sale Order) more particularly described on **Exhibit "C"** attached hereto, (c) the Lehman Claim Liens, (d) the effect of any building and zoning regulations, now existing or hereafter in effect with respect to the relevant Plan Project that are not violated by the current use of the Plan Project, (e) oil, mineral and/or water rights, and claims of title thereto, shown by the public records, (f) discrepancies, conflicts in boundary lines, shortages in area or encroachments which an inspection or survey of the subject Plan Project would disclose and (g) other Liens to which the transferee of the property, in connection with such transfer, agrees to take subject, including any Lehman Claim Liens.

**131.**   **Person**   An individual, unincorporated association or organization, joint venture, partnership, limited liability company, joint-stock company, corporation, trust, business trust,

government or associated political subdivision, governmental agency, governmental unit,

governmental authority, estate, committee or other entity of whatever nature.

132.  **Petition Dates**   The following are dates that Creditors filed involuntary chapter 11

petitions against the TD Plan Debtors:

| Delta Coves | November 14, 2008 |
| SunCal Heartland | November 12, 2008 |
| SunCal Marblehead | November 12, 2008 |
| SunCal Northlake | November 12, 2008 |
| SunCal Oak Valley | November 12, 2008 |
| SunCal PSV | November 14, 2008 |
| SunCal Torrance | November 14, 2008 |
| SunCal Oak Knoll | November 19, 2008 |

133.  **Plan**   This *Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors

Proposed By the Trustee and Lehman Creditors*, together with the Exhibits hereto, as the same may

be amended, modified, supplemented or restated from time to time.

134.  **Plan Projects**   All of the Projects of the TD Plan Debtors, as more particularly

described in **Exhibit "B"** to the Plan.

135.  **Plan Release for Lehman**   In exchange for, *inter alia*, the Lehman Plan Funding, as

more fully set forth in Section 8.8.2 of the Plan, the Trustee shall release all Lehman Released

Claims against all Lehman Released Parties effective as of the Effective Date.

136.  **Plan Reserve**   A reserve fund established by the Liquidating Trustee to hold all Cash

required or permitted to be deposited therein on the Effective Date pursuant to the terms of the Plan

and which funds shall be subject to withdrawal pursuant to the terms of the Plan, including (i) any

unencumbered Cash of the Trustee and (ii) the amounts to be funded pursuant to the Lehman Plan

Funding, all upon the terms and conditions set forth in Article VIII of the Plan.  Such funds shall be

held in account(s) to be established at an FDIC insured bank to be selected by the Liquidating

Trustee with the consent of the Lehman Creditors, which consent shall not be unreasonably

withheld.

137.  **Plan Supplement**   A supplemental exhibit to this Plan, to be filed by the Lehman

Proponents by **September 26, 2011**, containing one or more documents that a Lehman Creditor or

Lehman Nominee believes in good faith is necessary or appropriate to consummate one or more of the transactions contemplated by this Plan.

**138.** **Post-Confirmation Account**   An account with a bank, financial institution or similar depository in which the Liquidating Trustee holds Cash or other liquid assets or securities for any TD Plan Debtor, including the Plan Reserve.

**139.** **Post-Confirmation Expenses**   The fees and expenses incurred by the Liquidating Trustee following the Effective Date for the purpose of paying or satisfying:

(a)    Hourly compensation for the Trustee for the period following the Effective Date;

(b)    Expenses for Professional Fees of the Professionals for the Trustee following the Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities in respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise on or after the Effective Date consistent with the Plan.

**140.** **Primary Claims Bar Date**   For Claims, other than Administrative Claims, the last date for Filing Proofs of Claim as was established by order or orders of the Bankruptcy Court, which date was March 31, 2009 for certain Claims; provided that: (a) for Claims arising from the rejection of executory contracts or unexpired leases, the date(s) as set forth in Plan Section 11.6; (b) for Claims resulting from the successful prosecution or settlement of Avoidance Actions, the later of any otherwise applicable date under this paragraph and forty-five (45) days following entry of the Final Order determining such Avoidance Action; and (c) for Claims of governmental units, the later of any otherwise applicable date under this paragraph and 180 days after the date of the applicable order for relief under Bankruptcy Code §§ 301 or 303, as applicable.

**141.** **Priority Claim**   Any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**142.** **Priority Tax Claim**   Any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

143.   **Professional**   A Person (a) employed by the TD Plan Debtors or the Trustee Debors' Committee pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 3291, 330 and 331 of the Bankruptcy Code, (b) employed to perform professional services for the Liquidating Trustee after the Effective Date or (c) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code.

144.   **Professional Fees**   (a) All Allowed Claims for compensation and for reimbursement of expenses under sections 328, 330 and/or 503(b) of the Bankruptcy Code and (b) reasonable amounts for compensation and reimbursement of expenses for Professionals employed by the Liquidating Trustee.

145.   **Project Bond**   A payment and performance bond, labor and materials bond, payment bond or any other type of bond issued by a Bond Issuer for the benefit of a particular TD Plan Debtor and with respect to, for the benefit of and in connection with the development of the Plan Project owned by such TD Plan Debtor and with respect to which such Bond Issuer has a Claim. Project Bonds (or portions thereof)  are further characterized as either Payment Bonds or Performance Bonds and a single Project Bond can be, in part, a Payment Bond and, in part, a Performance Bond.

146.   **Projects**   The Debtors' real estate development projects, together with all rights, remedies, privileges and easements appurtenant thereto and all other real and personal, tangible and intangible, property related thereto.

147.   **Proof of Claim**   A proof of claim as referenced in Bankruptcy Code section 501(a).

148.   **Proof of Interest**   A proof of interest as referenced in Bankruptcy Code section 501(a).

149.   **Proponents**   The Lehman Creditors and the Trustee, in their capacity as proponents of the Plan.

150.   **Pro Rata**   **(a)**  With respect to any Distribution in respect of any Allowed Claim, proportionately, so that the ratio of (i)(1) the amount of property distributed on account of such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Allowed Claim to (2) the amount of such Allowed Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class or Classes of the applicable Estate sharing in such Distribution to (2) the amount of all Allowed Claims in such Class or Classes of the applicable Estate; and (b) in calculating allocations of responsibility for obligations among TD Plan Debtors, Pro Rata shall be determined in reference to the Liquidating Trustee's reasonable estimate of the gross value of each applicable Estate's Assets as of the Confirmation Date.

     **151.**   **Reliance Claim**   A non-priority, unsecured Claim, including a Bond Claim, against a TD Plan Debtor, which Claim has the following attributes:

     (i)   The Claim is for money, goods, services, or new credit voluntarily transferred or extended to the applicable TD Plan Debtor between August 1, 2007 and the applicable Petition Date(s), but not if transferred or extended on account of an existing obligation;

     (ii)   The Claim was timely of record as follows: either (1) filed by the Primary Claims Bar Date (which was March 31, 2009 for most non-priority, unsecured claims) or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as a Scheduled Claim; and

     (iii)   The Claim is <u>not</u> either: (1) a Claim at any time held by an Insider; (2) a Claim of a Lehman Creditor (other than a Lehman-Owned Settling Bond Issuer-Related Claim); or (3) a Settling Bond Issuer-Related Future Work Claim.

A Creditor alleging it holds a Reliance Claim must timely and properly claim such status on its Ballot. For the convenience and benefit of Creditors, the Lehman Creditors have attached to the Plan **Exhibit "D"** setting forth a non-exhaustive list of certain non-duplicative Claims or portions of Claims which, as indicated thereupon, the Lehman Creditors would not challenge as being Reliance Claims against the indicated TD Plan Debtor in the amount of the "Reliance Claim Amount" listed thereupon IF the Claim is Allowed in the amount of the "Creditors' Claim Amount" listed thereupon. *See* the Plan Article, entitled "Classification of Claims and Interests," and Plan **Exhibit "D."**

     **152.**   **Reliance Claimant**   The Holder of an Allowed Reliance Claim.

**153.    Reliance Date**    August 1, 2007, the earliest date on which the Lehman Creditors (or any of their Affiliates) are alleged to have engaged in inequitable conduct as described in the ES Action.

**154.    Remaining Litigation Claim**    A Litigation Claim to the extent not expressly waived, relinquished, released, compromised or settled under the Plan or prior to the Plan's Effective Date through entry of a Final Order.

**155.    Remaining Other Assets**    All of the then remaining Assets of the TD Plan Debtors' Estates excluding the Plan Projects, as of the point in time referenced in any particular utilization of this term in the Plan.

**156.    Residual Cash**    As to any particular TD Plan Debtor's Estate, Net Cash Proceeds derived from the liquidation by the Liquidating Trustee of any Remaining Other Assets of such Estate, including any applicable Net Cash Litigation Recoveries in which such Estate has an interest, to the extent not subject to a Secured Claim and payable to or for a Holder thereof and remaining after payment or reserve for the Post-Confirmation Expenses, including post-Confirmation Date intercompany payables and reimbursements for Lehman Post-Confirmation Expense Funding, all as more fully set forth in Section 8.3 of the Plan.

**157.    Sale Order**    The Final Confirmation Order or other Final Order that effectuates the conveyance of the applicable Plan Project to the applicable Lehman Nominee.

**158.    SCC Communities**    SCC Communities, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**159.    SCC/Palmdale**    SCC/Palmdale, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**160.    Scheduled Claim**    A Claim listed in a TD Plan Debtor's Schedules, if listed as neither disputed, contingent or unliquidated, in the amount for such Claim, with the status as secured or unsecured for such Claim and with the statutory priority for such Claim as listed in the TD Plan Debtors' Schedules.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**161.**    __Schedules__    The schedules of assets and liabilities and list of equity security holders filed by the TD Plan Debtors, as required by section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

**162.**    __Section 1124(2) Unimpairment__    Unimpairment that may include the cure or waiver of defaults, reinstatement of the maturity of a Claim that was not fully matured prior to the applicable Petition Date or, in a similar manner to the circumstance in *In re Entz-White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), payment in full on the Effective Date, without payment of any penalty amounts or other amounts related to the default, of a Claim that was fully matured prior to the applicable Petition Date.

**163.**    __Secured Claim__    Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code section 506, to the extent that it is secured by a valid and unavoidable Lien on an Asset or Assets of one or more TD Plan Debtors.

**164.**    __Secured Real Property Tax Claims__    Secured Claims, other than Priority Tax Claims, held by various government entities for real property tax assessments secured by Liens on the underlying real properties owned by the TD Plan Debtors but that are non-recourse to the TD Plan Debtors.

**165.**    __Settling Bond Issuer__    A Bond Issuer that elects to enter into a Settling Bond Issuer Agreement.

**166.**    __Settling Bond Issuer Agreement__    That certain agreement(s) summarized in Plan Section 8.7.

**167.**    __Settling Bond Issuer-Backed Claim__    Any Bond-Backed Claim held by a Bond-Backed Claimant or its assignee that is secured by a Project Bond issued by a Settling Bond Issuer, excluding such a Claim when held by the applicable Settling Bond Issuer or an Affiliate thereof. Settling Bond Issuer-Backed Claims are further characterized as Settling Bond Issuer-Backed Non-Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

**168.**    __Settling Bond Issuer-Backed Future Work Claim__    A Settling Bond Issuer-Backed Claim secured by a Future Work Bond.

**169.    Settling Bond Issuer-Backed Non-Future Work Claim**  A Settling Bond Issuer-Backed Claim secured by a Project Bond other than a Future Work Bond.

**170.    Settling Bond Issuer-Incurred Future Work Obligations**  Any and all payments made by a Settling Bond Issuer under or in respect of a Future Work Bond issued by such Settling Bond Issuer and/or any liabilities incurred and paid by such Settling Bond Issuer in satisfaction of its obligations under a Future Work Bond issued by such Settling Bond Issuer.

**171.    Settling Bond Issuer-Owned Claim** A Bond Issuer Claim held by a Settling Bond Issuer or its Affiliate immediately prior to the Effective Date including, without limitation, any Bond-Backed Claims acquired by a Settling Bond Issuer in connection with the payment, performance or settlement of its obligations under any Project Bonds.  Settling Bond Issuer-Owned Claims are further characterized as Settling Bond Issuer-Owned Non-Future Work Claims or Settling Bond Issuer-Owned Future Work Claims.

**172.    Settling Bond Issuer-Owned Future Work Claim.**  A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Future Work Bond.

**173.    Settling Bond Issuer-Owned Non-Future Work Claim**  A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Project Bond other than a Future Work Bond.

**174.    Settling Bond Issuer-Related Claim**  A Settling Bond Issuer-Owned Claim or a Settling Bond Issuer-Backed Claim.

**175.    Settling Bond Issuer-Related Future Work Claim**  A Settling Bond Issuer-Related Claim arising from or covered by a Future Work Bond.  Settling Bond Issuer-Related Future Work Claims are further characterized as Settling Bond Issuer-Owned Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

**176.    Settling Bond Issuer Release for Lehman Released Parties**  That certain assignment / release to be issued under the Settling Bond Issuer Agreement in favor of the Lehman Released Parties.

**177.    Seven Brothers**  Seven Brothers, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**178.    Simple Unimpairment**    Unimpairment that is not Section 1124(2) Unimpairment or Unimpairment With Surrender or Abandonment.

**179.    SJD Development**    SJD Development Corp., a California corporation, a Voluntary Debtor in these Cases.

**180.    SJD Partners**    SJD Partners, Ltd., a California limited partnership, a Voluntary Debtor in these Cases.

**181.    Sr. Secured Mechanic's Lien Claim**    Mechanic's Lien Claims that are Secured Claims and, under applicable non-bankruptcy law or by agreement, are senior in priority to the Allowed Secured Claim hereunder of the applicable Lehman Creditor as to the applicable Plan Project.

**182.    SunCal**    The SunCal Companies, a trade name for Acquisitions and its Affiliates.

**183.    SunCal I**    SunCal Communities I, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**184.    SunCal III**    SunCal Communities III, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**185.    SunCal Beaumont**    SunCal Beaumont Heights, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**186.    SunCal Bickford**    SunCal Bickford Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**187.    SunCal Century City**    SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**188.    SunCal Emerald**    SunCal Emerald Meadows, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**189.    SunCal Heartland**    SunCal Heartland, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Heartland Project

**190.    SunCal Johannson**    SunCal Johannson Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**191.    SunCal Marblehead**    SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Marblehead Project.

**192.    SunCal Marblehead / SunCal Heartland Loan Agreement**    That certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal Marblehead, and SunCal Heartland, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lenders thereunder made loans to the borrowers in the maximum aggregate principal amount of approximately $316,061,300.  The loans made pursuant to and/or evidenced by the SunCal Marblehead / SunCal Heartland Loan Agreement are secured by first priority deeds of trust on the Marblehead and the Heartland Projects.  The outstanding aggregate balance of the loans under the SunCal Marblehead / SunCal Heartland Loan Agreement was not less than $354,325,126.15 as of the applicable Petition Date.

**193.    SunCal Northlake**    LB/L-SunCal Northlake, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Northlake Project.

**194.    SunCal Northlake Loan Agreement**    That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of September 9, 2005, between SunCal Northlake, as borrower, and Northlake Holdings, as successor agent and sole lender, pursuant to which the lenders thereunder made loans in the maximum aggregate principal amount of approximately $100,000,000. The loans made pursuant to and/or evidenced by the SunCal Northlake Loan Agreement are secured by a first priority deed of trust on the Northlake Project. The outstanding aggregate balance of the loans under the SunCal Northlake Loan Agreement was not less than $123,654,776.88 as of the applicable Petition Date.

**195.    SunCal Oak Knoll**    SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Oak Knoll Project.

**196.    SunCal Oak Knoll/SunCal Torrance Loan Agreement**    That certain Loan Agreement, dated as of November 30, 2006, among Lehman SunCal Real Estate Holdings, LLC, SunCal Torrance and SunCal Oak Knoll, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lenders thereunder made a loan to the borrowers in the maximum aggregate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

principal amount of approximately $167,700,000.  The loans made pursuant to and/or evidenced by the SunCal Oak Knoll/SunCal Torrance Loan Agreement are secured by first priority deeds of trust on the Oak Knoll and the Del Amo Projects.  The outstanding aggregate balance of the loans under the SunCal Oak Knoll/SunCal Torrance Loan Agreement was not less than $157,870,186.15 as of the applicable Petition Date.

197.  **SunCal Oak Valley**    LB/L-SunCal Oak Valley, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Oak Valley Project.

198.  **SunCal Oak Valley Loan Agreement**    That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, by and between SunCal Oak Valley, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which the lenders thereunder made loans to the borrower in the maximum aggregate principal amount of approximately $120,000,000.  The loans made pursuant to and/or evidenced by the SunCal Oak Valley Loan Agreement are secured by a first priority deed of trust on the Oak Valley Project.  The outstanding aggregate balance of the loans under the SunCal Oak Valley Loan Agreement was not less than $143,630,091.63 as of the applicable Petition Date.

199.  **SunCal PSV**    SunCal PSV, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases, and the owner of the Palm Springs Village Project.

200.  **SunCal PSV Loan Agreement**    That certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of February 12, 2007, between SunCal PSV, as borrower, and Lehman ALI, as agent and sole lender, pursuant to which the lenders thereunder made loans to the borrower in the maximum aggregate principal amount of approximately $90,000,000.  The loans made pursuant to and/or evidenced by the SunCal PSV Loan Agreement are secured by a first priority deed of trust on the Palm Springs Village Project.  The outstanding aggregate balance of the loans under the SunCal PSV Loan Agreement was not less than $88,257,340.20 as of the applicable Petition Date.

201.  **SunCal Summit Valley**    SunCal Summit Valley, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

202.  **SunCal Torrance**    SunCal Torrance Properties, LLC, a Delaware limited liability

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

company, a Trustee Debtor in these Cases, and the owner of the Del Amo Project.

203.    **Supplemental Claims Bar Date**    For Claims (other than Administrative Claims) as to which the Holder, at least fifteen (15) days prior to the Primary Bar Date, neither had been served with notice of the applicable Primary Claims Bar Date nor actually knew the applicable Primary Claims Bar Date was a bar date, thirty (30) days following service of the Supplemental Claims Bar Date Notice (but only if the Supplemental Claims Bar Date is later than the Primary Claims Bar Date as to such Claim).

204.    **Supplemental Claims Bar Date Notice**    That certain notice of the Supplemental Claims Bar Date as a bar date for Filing Proofs of Claim to be served after approval of the hearing on approval of the Disclosure Statement.

205.    **Tax**    Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

206.    **TD Plan Debtor**    A Trustee Debtor other than SunCal Century City.

207.    **Tesoro**    Tesoro SF, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

208.    **Trustee**    Steven M. Speier, the duly appointed trustee of the Trustee Debtors or any successor trustee for the Trustee Debtors.

209.    **Trustee Debtor**    Any of the following chapter 11 debtors that are represented by the Trustee: Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal Torrance, or SunCal Oak Knoll.

210.    **Trustee Debtors' Committee**    The Official Committee of Unsecured Creditors of the Trustee Debtors appointed in the Cases of the Trustee Debtors pursuant to section 1102 of the Bankruptcy Code.

211.    **Unclaimed Property**    Cash held for Distribution if either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as

undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or other similar instrument used for the Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any Allowed Claim on the date such Distribution first could have been made under the Plan and for one hundred twenty (120) days thereafter.

212.    **Unimpaired**    When used with reference to a Claim, subclass or Class, as more specifically set forth in various sections of Plan Article VI., the circumstance where such Claim, subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code § 1124, providing, with certain exceptions, that the Claim have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim.  In accordance with, by example, Bankruptcy Code §§ 365 or 1123(a)(5)(G), unless expressly specified otherwise, such treatment includes the waiver or curing of defaults and the reinstatement of maturity of such Claim, without payment of penalties or other default-related amounts.

213.    **Unimpairment**    The treatment that makes a Claim Unimpaired.

214.    **Unimpairment With Surrender or Abandonment**    Unimpairment that includes that collateral for a Secured Claim may be surrendered or abandoned to the Holder of such Claim.

215.    **Unsecured Claim**    A Claim that is not a Secured Claim.

216.    **Unsecured Deficiency Claim**    A Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Bankruptcy Code sections 506(a) and 1111, is less than the Allowed Amount of such Creditor's Claim, after taking into account any election made pursuant to Bankruptcy Code section 1111(b).

217.    **Unsecured Deficiency Claim Bar Date**    The date that is the first Business Day that is at least thirty (30) days following the Effective Date, by which, regardless of any prior Filing by such Holder of one or more Proofs of Claim, a Holder of an Allowed Other Secured Claim or Allowed Sr. Secured Mechanic's Lien Claim that contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Other Secured Claim or allowed Sr. Secured Mechanic's Lien Claim must file (and serve upon the Liquidating Trustee and Lehman TD Lenders) an amended

proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, *inter alia*, the amount of such

Unsecured Deficiency Claim.

   **218.**    **Voluntary Debtor**    Any of the following chapter 11 debtors and debtors-in-

possession:  Palmdale Hills, SunCal I, SunCal III, SCC/Palmdale, Acton Estates, SunCal Beaumont,

SunCal Emerald, SunCal Johannson, SunCal Bickford, SunCal Summit Valley, Seven Brothers,

Kirby Estates, SJD Partners, SJD Development, SCC Communities, Del Rio or Tesoro.

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***THIRD AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND SUBJECT LEHMAN CREDITORS*** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ____August 23, 2011____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ____August 23, 2011____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____August 23, 2011____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
   Paul Couchot - pcouchot@winthropcouchot.com
   Marc J. Winthrop - pj@winthropcouchot.com
   Paul Lianides - plianides@winthropcouchot.com
(2) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
   Louis Miller - smiller@millerbarondess.com; jmiller@millerbarondess.com
   Martin Pritikin – mpritikin@millerbarondess.com
(3) Gen'l Counsel for Ch. 11 Trustee (Speier):
   William Lobel - wlobel@thelobelfirm.com
   Mike Neue – mneue@thelobelfirm.com
(4) Ch. 11 Trustee:
   Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(5) Office of the United States Trustee:
   Michael Hauser - michael.hauser@usdoj.gov
(6) Counsel for Voluntary Debtors' Committee:
   Alan Friedman - afriedman@irell.com
   Kerri A. Lyman - klyman@irell.com
(7) Counsel for Trustee Debtors' Committee:
   Lei Lei Wang Ekvall - lekvall@wgllp.com
   Hutchison B. Meltzer - hmeltzer@wgllp.com

(8) Counsel for Joint Provisional Liquidators of Lehman RE Ltd
   Chauncey Cole - chauncey.cole@cwt.com
   Betty Shumener - betty.shumener@dlapiper.com
(9) Counsel for Bond Safeguard & Lexon
   Mark E. Aronson – mea@amclaw.com
   Mark J. Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
(10) Counsel for Fenway Capital LLC
   John E Schreiber - jschreiber@dl.com
   Richard Reinthaler - rreinthaler@dl.com;
(11) Counsel for SunCal Management:
   Ronald Rus - rrus@rusmiliband.com
(12) Debtors (Palmdale Hills Property, LLC and related entities):
   Bruce Cook - bcook@suncal.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez - alfredo.perez@weil.com
Lauren Zerbinopoulos- lauren.zerbinopoulos@weil.com
Erica Rutner - erica.rutner@weil.com
Mark McKane - mark.mckane@kirkland.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 23, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                    **F 9013-3.1.PROOF.SERVICE**

**I. SERVED BY NEF**

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55) Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com

(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;
alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

F 9013-3.1.PROOF.SERVICE

(62) *Irene L Kiet for Cred BNB Engineering, Inc.*
*ikiet@hkclaw.com*

(63) *Claude F Kolm for Cred County of Alameda Tax Collector*
*claude.kolm@acgov.org*

(64) *Mark J Krone for Cred Bond Safeguard Ins Co*
*mk@amclaw.com, crs@amclaw.com;amc@amclaw.com*

(65) *David B Lally for Def Contracting Engineers, Inc.*
*davidlallylaw@gmail.com*

(66) *Leib M Lerner for Cred Steiny and Co, Inc.*
*leib.lerner@alston.com*

(67) *Peter W Lianides for Debtor Palmdale Hills Property, LLC*
*plianides@winthropcouchot.com, pj@winthropcouchot.com*

(68) *Charles Liu for Debtor Palmdale Hills Property, LLC*
*cliu@winthropcouchot.com*

(69) *Kerri A Lyman for Atty Irell & Manella LLP*
*klyman@irell.com*

(70) *Mariam S Marshall for Cred RGA Environmental, Inc.*
*mmarshall@marshallramoslaw.com*

(71) *Robert C Martinez for Cred TC Construction Co, Inc*
*rmartinez@mclex.com*

(72) *Michael D May for Cred R.J. Noble Co.*
*mdmayesq@verizon.net*

(73) *Hutchison B Meltzer for Cred Com Holding Unsecured Claims*
*hmeltzer@wgllp.com*

(74) *Krikor J Meshefejian for Int Pty Courtesy NEF*
*kjm@lnbrb.com*

(75) *Joel S. Miliband for Cred RBF CONSULTING*
*jmiliband@rusmiliband.com*

(76) *James M Miller for Atty Miller Barondess LLP*
*jmiller@millerbarondess.com, vgunderson@millerbarondess.com;*
*smiller@millerbarondess.com; mpritikin@millerbarondess.com*

(77) *Louis R Miller for Pltf Palmdale Hills Property, LLC*
*smiller@millerbarondess.com*

(78) *Craig Millet for Int Pty Doug Champion*
*cmillet@gibsondunn.com,*
*pcrawford@gibsondunn.com;cmillet@gibsondunn.com*

(79) *Randall P Mroczynski for Def Bob McGrann Construction, Inc.*
*randym@cookseylaw.com*

(80) *Mike D Neue for Atty The Lobel Firm, LLP*
*mneue@thelobelfirm.com,*
*jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com*

(81) *Robert Nida for Cred Kirk Negrete, Inc*
*Rnida@castlelawoffice.com*

(82) *Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of*
*Lehman RE Ltd*
*henry.oh@dlapiper.com, janet.curley@dlapiper.com*

(83) *Sean A Okeefe for Debtor Palmdale Hills Property, LLC*
*sokeefe@okeefelc.com*

(84) *Scott H Olson for Cred Bethel Island Muni Improvement District*
*solson@seyfarth.com*

(85) *Robert B Orgel for Cred Lehman ALI, Inc.*
*rorgel@pszjlaw.com, rorgel@pszjlaw.com*

(86) *Malhar S Pagay for Cred Lehman ALI, Inc.*
*mpagay@pszjlaw.com, mpagay@pszjlaw.com*

(87) *Ernie Zachary Park for Int Pty Newcomm*
*ernie.park@bewleylaw.com*

(88) *Daryl G Parker for Cred Lehman ALI, Inc.*
*dparker@pszjlaw.com*

(89) *Penelope Parmes for Cred EMR Residential Properties LLC*
*pparmes@rutan.com*

(90) *Robert J Pfister on behalf of Int Pty Courtesy NEF*
*rpfister@ktbslaw.com*

(91) *Ronald B Pierce for Cred Griffith Co*
*ronald.pierce@sdma.com*

(92) *Katherine C Piper for Int Pty New Anaverde LLC*
*kpiper@steptoe.com, smcloughlin@steptoe.com*

(93) *Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al*
*cmartin@pprlaw.net*

(94) *James S Riley for Cred Sierra Liquidity Fund, LLC*
*tgarza@sierrafunds.com*

(95) *Debra Riley for Int Pty City of Palmdale*
*driley@allenmatkins.com*

(96) *Todd C. Ringstad for Int Pty Courtesy NEF*
*becky@ringstadlaw.com*

(97) *R Grace Rodriguez for Def O&B Equipment, Inc.*
*ecf@lorgr.com*

(98) *Martha E Romero for Cred California Taxing Authorities*
*Romero@mromerolawfirm.com*

(99) *Ronald Rus for Cred SunCal Management, LLC*
*rrus@rusmiliband.com*

(100) *John P Schafer for Cred LB/L-DUC III Bethel Island, LLC*
*jschafer@mandersonllp.com*

(101) *John E Schreiber for Def Fenway Capital, LLC*
*jschreiber@dl.com*

(102) *William D Schuster for Cred HD Supply Construction Supply LTD*
*bills@allieschuster.org*

(103) *Christopher P Simon for Int Pty Courtesy NEF*
*csimon@crosslaw.com*

(104) *Gerald N Sims for Int Pty Courtesy NEF*
*jerrys@psdslaw.com, bonniec@psdslaw.com*

(105) *Wendy W Smith for Cred Castaic Union School District*
*wendy@bindermalter.com*

(106) *Steven M Speier (TR)*
*Sspeier@asrmanagement.com, ca85@ecfcbis.com*

(107) *Steven M Speier for Trustee Steven Speier (TR)*
*Sspeier@Squarmilner.com, ca85@ecfcbis.com*

(108) *Michael St James for Cred MBH Architects, Inc.*
*ecf@stjames-law.com*

(109) *Michael K Sugar for Off Committee of Unsecured Creds*
*msugar@irell.com*

(110) *Cathy Ta for Def Hi-Grade Material Co.*
*cathy.ta@bbklaw.com,*
*Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com*

(111) *David A Tilem for Def Southland Pipe Corp*
*davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;*
*dianachau@tilemlaw.com;kmishigian@tilemlaw.com*

(112) *James E Till for Trustee Steven Speier (TR)*
*jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;*
*pnelson@thelobelfirm.com*

(113) *United States Trustee (SA)*
*ustpregion16.sa.ecf@usdoj.gov*

(114) *Carol G Unruh for Cred Scott E. McDaniel*
*cgunruh@sbcglobal.net*

(115) *Annie Verdries for Cred WEC Corp*
*verdries@lbbslaw.com*

(116) *Jason Wallach for Def Professional Pipeline Contractors, Inc.*
*jwallach@gladstonemichel.com*

(117) *Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.*
*kim.johnson@kattenlaw.com*

(118) *Benjamin M Weiss for Cred Regal Development LLC*
*bweiss@lansingcompanies.com*

(119) *Marc J Winthrop for Debtor Palmdale Hills Property, LLC*
*mwinthrop@winthropcouchot.com, pj@winthropcouchot.com*

(120) *David M Wiseblood for Cred Bethel Island Muni Imp District*
*dwiseblood@seyfarth.com*

(121) *Brett K Wiseman for Cred JF Shea Construction Inc*
*bwiseman@aalaws.com*

(122) *Dean A Ziehl for Counter-Def LV Pacific Point LLC*
*dziehl@pszjlaw.com, dziehl@pszjlaw.com*

(123) *Marc A. Zimmerman for Cred Life Church of God in Christ*
*joshuasdaddy@att.net*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                  **F 9013-3.1.PROOF.SERVICE**