1  PAUL J. COUCHOT - State Bar No. 131934
   pcouchot@winthropcouchot.com
2  **WINTHROP COUCHOT, P.C.**
   660 Newport Center Drive, Suite 400
3  Newport Beach, CA 92660
   Telephone: (949) 720-4100
4  Facsimile: (949) 720-4111

5  General Insolvency Counsel for Palmdale Hills
   Property, LLC et al. (the "Voluntary Debtors")

6          **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
7                  **SANTA ANA DIVISION**

8  In re                                    Case No. 8:08-bk-17206-ES
9  PALMDALE HILLS PROPERTY, AND ITS         Jointly Administered With Case Nos.
   MOVING VOLUNTARY DEBTORS,                8:08-bk-17209-ES; 8:08-bk-17240-ES;
10         Joint Administered Debtors and   8:08-bk-17224-ES; 8:08-bk-17242-ES;
           Debtors-in-Possession           8:08-bk-17225-ES; 8:08-bk-17245-ES;
11                                          8:08-bk-17227-ES; 8:08-bk-17246-ES;
   _____        8:08-bk-17230-ES; 8:08-bk-17231-ES;
12 Affects:                                 8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☐ All Debtors                            8:08-bk-17249-ES; 8:08-bk-17573-ES;
13 ☐ Palmdale Hills Property, LLC           8:08-bk-17574 ES; 8:08-bk-17575-ES;
   ☒ SunCal Beaumont Heights, LLC           8:08-bk-17404-ES; 8:08-bk-17407-ES;
14 ☐ SCC/Palmdale, LLC                      8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☒ SunCal Johannson Ranch, LLC            8:08-bk-17458-ES; 8:08-bk-17465-ES;
15 ☒ SunCal Summit Valley, LLC              8:08-bk-17470-ES; 8:08-bk-17472-ES;
   ☐ SunCal Emerald Meadows LLC             and 8:08-bk-17588-ES
16 ☐ SunCal Bickford Ranch, LLC
   ☒ Acton Estates, LLC
17 ☒ Seven Brothers LLC                     Chapter 11 Proceedings
   ☐ SJD Partners, Ltd.
18 ☐ SJD Development Corp.                   **DEBTORS' NOTICE OF MOTION AND**
   ☒ Kirby Estates, LLC                     **MOTION FOR ORDER:**
19 ☐ SunCal Communities I, LLC              **(1) APPROVING SALE PROCEDURES IN**
   ☐ SunCal Communities III, LLC            **CONNECTION WITH PROPOSED SALES**
20 ☒ SCC Communities LLC                    **OF SUBSTANTIALLY ALL ASSETS OF**
   ☐ North Orange Del Rio Land, LLC         **THE MOVING VOLUNTARY DEBTORS'**
21 ☒ Tesoro SF LLC                          **ESTATES; AND**
   ☐ LBL-SunCal Oak Valley, LLC             **(2) SETTING PRELIMINARY AND FINAL**
22 ☐ SunCal Heartland, LLC                  **HEARING IN CONNECTION WITH THE**
   ☐ LBL-SunCal Northlake, LLC              **APPROVAL OF THE SALES OF THE**
23 ☐ SunCal Marblehead, LLC                 **MOVING VOLUNTARY DEBTORS'**
   ☐ SunCal Century City, LLC               **ASSETS; MEMORANDUM OF POINTS AND**
24 ☐ SunCal PSV, LLC                        **AUTHORITIES; AND DECLARATION OF**
   ☐ Delta Coves Venture, LLC               **BRUCE V. COOK IN SUPPORT THEREOF**
25 ☐ SunCal Torrance, LLC
   ☐ SunCal Oak Knoll, LLC
26
                                            Date:    September 1, 2011
27                                          Time:    10:30 a.m.
                                            Place:   Courtroom 5A
28

1    **TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY**

2    **JUDGE, AND PARTIES-IN-INTEREST:**

3        SunCal Beaumont Heights, LLC ("Beaumont"), SunCal Johannson Ranch, LLC

4    ("Johannson"), SCC Communities, LLC ("SCC Communities"), Tesoro SF, LLC ("Tesoro"),

5    Acton Estates, LLC ("Acton"), SunCal Summit Valley, LLC ("SunCal Summit"), Seven Brothers,

6    LLC ("Seven Brothers") and Kirby Estates, LLC ("Kirby Estates"), eight of the jointly

7    administered debtors in possession in the above-captioned cases (the "Moving Voluntary

8    Debtors") hereby move ("Motion") for an order providing the following relief:

9        A.      Approving the proposed overbid procedures in connection with the proposed

10   sales ("Sales") of the primary assets (individually, the "Asset" and collectively, the

11   "Assets") of the Moving Voluntary Debtors' estates, which are described in more detail in

12   Exhibit "1" to the Declaration of Bruce V. Cook ("Cook Declaration"), pursuant to the

13   Moving Voluntary Debtors' Term Sheet with Diamond Valley Land LLC, a Delaware

14   limited liability company, or its designee ("Diamond Valley"), which is attached as

15   Exhibit "2" to the Cook Declaration (the "Diamond Valley Term Sheet");

16        B.      Approving the proposed marketing and advertising process intended to be

17   utilized and implemented by the Moving Voluntary Debtors in connection with the Sales;

18        C.      Because certain issues are conditions precedent to certain of the Moving

19   Voluntary Debtors' moving forward with the Sales of their Assets, setting a preliminary

20   hearing on these conditions (the "Preliminary Hearing"), including but not limited to the

21   disallowance of any purported credit bid rights of the disputed secured creditor, Lehman

22   ALI, Inc. ("Lehman ALI"), pursuant to 11 U.S.C. § 363(k), in connection with the bidding

23   on the proposed Sales of the Assets of SCC Communities, and Tesoro. The issue

24   regarding the disputed credit bid rights will not be addressed in this motion, but will be

25   addressed by separate briefing prior to the requested Preliminary Hearing. The Moving

26   Voluntary Debtors request that the Preliminary Hearing be set after the currently

27   scheduled hearing on their motion for summary judgment against Lehman ALI currently

28   scheduled for September 23, 2011. The Preliminary Hearing should also be held after the

1    scheduled hearing on Acton's scheduled claims objections against Lehman Commercial

2    Paper, Inc. ("LCPI") on October 3, 2011, because the disallowance of LCPI's disputed

3    claim against Acton is a condition precedent to the sale of Acton's Project;

4         D.     Setting a date after the Preliminary Hearing to conduct an auction

5    regarding the Sales commencing at 10:00 a.m. on _____, 2011 (the "Auction") at 660

6    Newport Center Drive, Suite 400, Newport Beach, CA 92660;

7         E.     Setting a final hearing (the "Final Hearing") on the Court's approval of the

8    Sales (the "Sale Motion") to take place after the Auction to approve the Moving

9    Voluntary Debtors Sales to the winning bidder (the "Winning Bidder"); and

10        F.     Granting such other and further relief as the Court deems just and

11   appropriate.

12   This Motion is made on the basis of the within points and authorities, the Cook

13   Declaration appended hereto, all pleadings, papers and records on file with the Court, and such

14   other evidence, oral or documentary, as may be presented to the Court prior to or at the time of

15   any hearing on the Motion.

16   **IF YOU DO NOT OPPOSE THE MOTION, YOU NEED TAKE NO FURTHER**

17   **ACTION. HOWEVER, IF YOU OPPOSE THE MOTION, PURSUANT TO LOCAL**

18   **RULE 6004-1(b), OPPOSITIONS MUST BE FILED WITH THE COURT NO LATER**

19   **THAN AUGUST 30, 3011 BY 12:00 P.M. (PREVAILING PACIFIC TIME). YOU MUST**

20   **FILE YOUR OPPOSITION WITH THE CLERK OF THE UNITED STATES**

21   **BANKRUPTCY COURT LOCATED AT 411 WEST FOURTH STREET, SUITE 2030,**

22   **SANTA ANA, CALIFORNIA 92701. YOU MUST ALSO SERVE A COPY OF YOUR**

23   **OPPOSITION TO THE MOTION UPON COUNSELS FOR THE MOVING**

24   **VOLUNTARY DEBTORS AT THE MAILING ADDRESSES INDICATED IN THE**

25   **UPPER LEFT CORNER OF THE FIRST PAGE OF THIS MOTION. THE MOVING**

26   **VOLUNTARY DEBTORS' COUNSEL WILL ACCEPT E-MAIL SERVICE AT THE**

27   **FOLLOWING ADDRESSES: PCOUCHOT@WINTHROPCOUCHOT.COM, WITH A**

28   **COPY TO PJ@WINTHROPCOUCHOT.COM. ANY FAILURE TO TIMELY FILE AND**

-ii-

1    SERVE AN OPPOSITION MAY RESULT IN ANY SUCH OPPOSITION BEING

2    WAIVED, AND THE COURT MAY ENTER AN ORDER GRANTING THE MOTION

3    WITHOUT FURTHER NOTICE.

4        WHEREFORE, the Moving Voluntary Debtors pray that the Court enter an order granting

5    the relief requested above, and such additional relief as the Court deems just and proper

6    DATED: August 25, 2011            **WINTHROP COUCHOT**

7                          **PROFESSIONAL CORPORATION**

8

9                   By:    */s/ Paul J. Couchot*
                     Paul J. Couchot, Esq.

10                  General Insolvency Counsel for
               Administratively Consolidated Voluntary

11                  Debtors

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

**A.    Background on the Moving Voluntary Debtors.**

The  eight Moving Voluntary Debtors (SunCal Beaumont, SunCal Johannson, SunCal Summit, Kirby Estates, Seven Brothers, Acton Tesoro and SCC Communities) (collectively the "Debtors") were formed to own and develop various residential real estate projects.  A description of the Debtors and their primary assets is attached to the Cook Declaration as Exhibit "1."

SCC Acquisitions, Inc., a California corporation ("Acquisitions"), is an indirect parent company of all of the Moving Voluntary Debtors and SCC Acquisitions LLC, a limited liability company ("SCC LLC"), is a subsidiary of Acquisitions and is a direct parent company of two Moving Voluntary Debtors – SCC Communities and Tesoro – and an indirect parent company of three Moving Voluntary Debtors – SunCal Beaumont, SunCal Johannson and Acton.   Because the Moving Voluntary Debtors are wholly owned by these SunCal affiliates, the SunCal affiliates have full corporate governance authority over these entities.  Bruce Elieff is the owner of Acquisitions and therefore, an indirect owner of the Moving Voluntary Debtors.

The Moving Voluntary Debtors – Beaumont, Johansson, SCC Communities, Tesoro, Acton, Summit Valley, Seven Brothers and Kirby Estates – each own or have an interest in residential real estate projects in California: the Beaumont Heights Project, the Johannson Ranch Project, the Joshua Ridge Project, the Tesoro Project, the Acton Project and the Summit Valley Project (owned, in part, by Moving Voluntary Debtors, Summit Valley, Kirby and Seven Brothers) (collectively, the "Projects").

Of the eight  Moving Voluntary Debtors, five (5) of the Moving Voluntary Debtors, Beaumont, Johannson, Summit Valley, Seven Brothers and Kirby Estates, do not have a primary secured creditor *on their respective projects.*  Specifically, it is undisputed that neither Lehman ALI nor LCPI has a lien against the Beaumont Heights Project, Johannson Ranch Project, or the Summit Valley Project, which includes Summit Valley, Kirby Estates and Seven Brothers (collectively the "Summit Valley Debtors").

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

1    Furthermore, Tesoro, SCC Communities, and Acton have filed an action against Lehman

2    ALI, and certain other defendants, in California Superior Court for the County of Orange (Case

3    No. 30-2011-0040847-CU-BC-CJC) that was removed to the Bankruptcy Court as Adv. No. 8:11-

4    ap-01212-ES (the "Contract Action"), alleging, among other things, breach of contract and breach

5    of the covenant of good faith and fair dealing under California law.

6    **B.    The Diamond Valley Term Sheet.**

7    The Moving Voluntary Debtors have agreed to sell their primary assets to Diamond Valley

8    subject to certain terms and conditions described in the Diamond Valley Term Sheet. A true and

9    correct copy of the Diamond Valley Term Sheet is attached to the Cook Declaration as

10   Exhibit "2." As demonstrated in the chart attached to the Cook Declaration as Exhibit "3," and

11   set forth below, the successful consummation of the proposed Sales will ensure the feasibility of

12   the Moving Voluntary Debtors' plans and provide 100% distribution to all creditors, with the

13   exception of Summit Valley, which will be a 55% distribution.

| Debtor | Unpaid Real Property Tax Claims | Mechanic Lien Claims | Administrative Claims | General Unsecured Claims | Projected Distribution to General Unsecured Creditors |
|---|---|---|---|---|---|
| SunCal Beaumont | $442,201 | $43,355 | $104,616 | $180,713 | 100% |
| SunCal Johannson | $434,830 | $0 | $110,151 | $41,181 | 100% |
| SCC Communities | $47,163 | $0 | $87,984 | $32,813 | 100% |
| | | | | | |
| Tesoro | $103,086 | $0 | $385,198 | $170,969 | 100% |
| Acton | $463,325 | $0 | $199,052 | $145,314 | 100% |
| SunCal Summit (including Seven Brothers) | $835,541 | $16,827 | $137,920 | $300,656 | 55% |

24   In contrast, the Lehman Plan for Summit Valley provides no more than 50% distribution

25   to any of the Moving Voluntary Debtors' creditors except for a 100% plus interest distribution to

26   SunCal Johannson and SunCal Beaumont.

27   The Moving Voluntary Debtors seek to sell their primary Assets to Diamond Valley or to

28   the bidder presenting the highest and best cash offer for such Assets. All net sale proceeds will be

-2-

1  held by the respective Moving Voluntary Debtor in a segregated account with all valid liens being

2  paid from the closing.

3      The following is a summary of Diamond Valley's offer to purchase the Moving Voluntary

4  Debtors' Assets pursuant to the Diamond Valley Term Sheet:

| Asset to Be Sold | Stalking Horse Bid |
|---|---|
| Beaumont Heights Project | $925,000 |
| Johannson Ranch Project | $625,000 |
| SCC Communities Assets | $175,000 |
| Tesoro Assets | $700,000 |
| Acton Project | $1,600,000 |
| Summit Valley Project | Assumption of Outstanding Real Property Taxes in the amount of $835,541 against Summit Valley Project plus $325,000[1] |

    The Sale of each Asset to Diamond Valley is not contingent upon the Sale of any other

Assets. In other words, if certain conditions precedent for the benefit of certain Moving

Voluntary Debtors are not satisfied and such Moving Voluntary Debtors refuse to move forward

with the Sale, the Sales of the other Assets will not be affected.

    The Moving Voluntary Debtors have also required that the Diamond Valley Term Sheet

provide for the following conditions based on what they believe to be the following bona fide

disputes discussed in Section E but is not an issue to be determined in this Motion:

    1.    the Sale of the SCC Communities Assets, and the Tesoro Assets are

conditioned upon either (i) the Court granting these Moving Debtors' pending motion for

summary judgment to disallow Lehman ALI's disputed claims against these Moving

Debtors and avoid Lehman ALI's disputed liens against these Moving Debtors' Assets, or

(ii) the Court's disallowance of Lehman ALI's credit bid rights against these Moving

Debtors.

    2.    The Sale of the Acton Project is conditioned upon the disallowance of

LCPI's claim against Acton under Acton's pending objection to LCPI's claim pursuant to

Section 502(b)(1).

---

[1] The real property taxes shall be assumed by Diamond Valley and shall be paid via regular installment payments pursuant to 11 U.S.C. §1129(a)(9)(C)(ii).

-3-

1    **C.     Background on Diamond Valley.**

2        Diamond Valley is indirectly owned by Stephan Elieff.  Stephan Elieff is the brother of

3    Bruce Elieff as previously stated.  Bruce Elieff is an indirect owner of all the Moving Voluntary

4    Debtors.  Stephan Elieff is also a minority, indirect owner of certain of the Moving Voluntary

5    Debtors.

6        Diamond Valley is an affiliate of the successful bidder for the three residential projects in

7    related bankruptcy proceedings before this Bankruptcy Court, known as the McAllister Ranch,

8    Summerwind Ranch, and McSweeny Farms projects ("Pool One Cases"), all of which closed

9    within a very short time period following court approval of their auction.  The aggregate purchase

10   price for the Moving Voluntary Debtors' assets subject to this Motion is approximately 6% of the

11   aggregate purchase price in the Pool One Cases.

12       **D.     The Proposed Sales Procedures.**

13       The following are the sales procedures that will be used by the Moving Voluntary Debtors

14   in connection with the Sales of the Assets.

15       The Bankruptcy Court will not consider any competing proposal ("Competing Proposal")

16   unless the Competing Proposal satisfies the following criteria:

17           1.     At the Preliminary Hearing, the Court shall determine the issues regarding

18       any disputed credit bid rights.

19           2.     The Moving Voluntary Debtors will market the Assets for Sale through a

20       comprehensive sale effort from the approval of this Motion until the Auction.  As set forth

21       below, the Auction shall not be held until after the Preliminary Hearing and the October 3,

22       2011 Acton Claim Objection.  This sale effort will include (i) sending sale packages

23       describing each Moving Voluntary Debtor's Assets to the real estate brokerage community;

24       (ii) advertising the Moving Voluntary Debtors' Assets on a website that includes links

25       allowing direct access to all relevant information regarding the Moving Voluntary Debtors'

26       Assets; and (iii) sending packages to a list of prospects nationally who are actively seeking

27       or may have interest in these kinds of assets.

28

-4-

3.      The Court shall set a date for the Auction that will be conducted at the Offices of Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Suite 400, Newport Beach, CA 92660, after the Preliminary Hearing. At the Auction only Diamond Valley or its designee and all other parties who have submitted a Qualifying Competing Proposal (defined below) shall be entitled to bid. The Moving Voluntary Debtors will conduct the Auction wherein all such parties who have submitted a Qualifying Competing Proposal have the opportunity to increase their bids.

4.      At the Auction to be conducted by the Moving Voluntary Debtors, the Moving Voluntary Debtors will only consider competing proposals that are "Qualifying Competing Proposals", which must satisfy the following criteria:

a.      Provides for a minimum all-cash offer equal to the Diamond Valley offer plus the minimum initial overbid, both of which are set forth below. Each subsequent minimum overbid increment shall be the same as the minimum overbid increment set forth below.

| Asset to Be Sold | Diamond Valley Offer | Overbid Increment |
|---|---|---|
| Beaumont Heights Project | $925,000 | $25,000 |
| Johannson Ranch Project | $625,000 | $15,000 |
| SCC Communities Assets | $175,000 | $5,000 |
| | | |
| Tesoro Assets | $700,000 | $20,000 |
| Acton Project | $1,600,000 | $50,000 |
| Summit Valley Project | Assumption of Outstanding Real Property Taxes in the amount of $835,541 against Summit Valley Project plus $325,000 | $30,000 |

b.      Is accompanied by a deposit in the form of a wire transfer of funds or a cashier's check payable to Winthrop Couchot Professional Corporation (to be held in trust for the Moving Voluntary Debtors) in the following amounts[2]:

_____

[2] Diamond Valley will also provide deposits in the same amounts.

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

| Asset to Be Sold | Deposit |
|---|---|
| Beaumont Heights Project | $25,000 |
| Johannson Ranch Project | $15,000 |
| SCC Communities Assets | $5,000 |
| Tesoro Assets | $20,000 |
| Acton Project | $50,000 |
| Summit Valley | $30,000 |

c.      provides evidence satisfactory to the Moving Voluntary Debtors confirming that such bidder has the financial means to acquire the applicable Moving Voluntary Debtors' Project that such bidder is seeking to acquire;

d.      Is made by a person or entity who has completed its due diligence review of the Moving Voluntary Debtors' books and records, and is satisfied with the results thereof; and

e.      Is delivered to the Moving Voluntary Debtors and their counsel and filed with the Bankruptcy Court at least two (2) court days prior to the Auction (as defined below).

5.      The Moving Voluntary Debtors propose the following procedures for the fixing of cure claims and assumption of contracts.

a.      Cure Amounts, Objection and Objection Deadline.  If a counterparty to an assumed executory contract or an assumed unexpired lease, the description and cure claims with respect to which will be attached to the Sale Motion (each, an "Assumed Contract"), does not (i) properly object to the applicable cure amounts set forth in and/or submit a request for adequate assurance fourteen (14) days prior to the hearing on the Sale Motion (the "Cure Objection Deadline"); (ii) set forth a specific default in any Assumed Contract; and (iii) claim a specific monetary amount that differs from the amount (if any) specified by the Moving Voluntary Debtors in the Sale Notice, this Court shall enter an order deeming the amount set forth in the Sale Notice to be the actual cure amount payable under 11 U.S.C. § 365 and forever barring such counterparty from objecting to the cure amount and from asserting any additional cure or other

-6-

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

1    amounts against the applicable Moving Voluntary Debtor, its estate, and the

2    Winning Bidder with respect to its Assumed Contract.

3        Except as may otherwise be agreed to by the parties to an Assumed

4    Contract, at or prior to the closing of the Sale, the applicable Moving Voluntary

5    Debtor shall cure those defaults under the Assumed Contracts that need to be cured

6    in accordance with 11 U.S.C. § 365(b), by (i) payment of the undisputed cure

7    amounts, and/or (ii) reserving amounts with respect to the disputed cure amounts.

8        In the event the Winning Bidder is a party other than Diamond Valley, the

9    Moving Voluntary Debtors shall provide notice of Assumed Contracts, if different

10   from those attached to the Sale Motion, and shall serve notice on the counterparties

11   to such Assumed Contracts.

12       b.      Objections to Assumption and Assignment of Executory Contracts.

13   Objections, if any, to the proposed assumption and assignment of the Assumed

14   Contracts, including, but not limited to, objections relating to the cure amounts

15   and/or adequate assurances of future performance, must (i) be in writing; (ii) state

16   with specificity the nature of such objection and the alleged cure amount (with

17   appropriate documentation in support thereof); (iii) comply with the Bankruptcy

18   Rules and the Local Bankruptcy Rules of this Court; and (iv) be filed with this

19   Court and served upon (so as to be received by) the following parties on or before

20   5:00 p.m. prevailing Pacific time fourteen (14) days prior to the hearing on the Sale

21   Motion:

22       i.      General counsel to the Moving Voluntary Debtors, Bruce V.

23   Cook, Esq., 2392 Morse Avenue, Irvine, California 92614, e-mail:

24   bcook@argentmanagementllc.com;

25       ii.     General insolvency counsel to the Moving Voluntary

26   Debtors, Winthrop Couchot Professional Corporation, Attn: Paul J.

27   Couchot, Esq., 660 Newport Center Drive, Suite 400, Newport Beach, CA

28   92660; e-mail: pcouchot@winthropcouchot.com;

-7-

1         iii.      Counsel to SunCal Management LLC and SCC

2 Acquisitions, Inc., Rus Miliband & Smith A Professional Corporation,

3 Attn: Ronald Rus, Esq., 2211 Michelson Drive, Seventh Floor, Irvine,

4 California 92612, e-mail: rrus@rusmiliband.com;

5         iv.      The United States Trustee for the Central District of

6 California, Attn: Michael Hauser, Esq., 411 West Fourth Street, Suite 9041,

7 Santa Ana, CA 92701;

8         v.      Counsel to the Creditors' Committee, Irell & Manella LLP,

9 Attn.: Alan J. Friedman, Esq., 840 Newport Center Dr., Ste 400, Newport

10 Beach, CA 92660; e-mail: afriedman@irell.com;

11         vi.      Counsel to Lehman ALI, Inc., Pachulski Stang Ziehl & Jones

12 LLP, Attn.: Richard M. Pachulski, Esq., 10100 Santa Monica Blvd., 11th

13 Floor, Los Angeles, California 90067, e-mail: rpachulski@pszjlaw.com;

14         vii.      Counsel to Lehman ALI, Inc., Weil, Gotshal & Manges LLP,

15 Attn.: Edward Soto, Esq., 767 Fifth Avenue, New York, NY 10153, e-mail:

16 edward.soto@weil.com; and

17         viii.      Any other parties who have timely filed requests for notice

18 under Bankruptcy Rule 2002 or who are entitled to notice under any case

19 management procedures order, if any, entered in this chapter 11 case prior to

20 the mailing deadline.

21         Any party failing to timely file an objection to the cure amounts set forth in

22 the Sale Notice (or any subsequent notice setting forth proposed cure amounts) or

23 the proposed assumption and assignment of the Assumed Contracts shall be

24 forever barred from objecting to the cure amounts and from asserting any

25 additional cure amounts against a Moving Voluntary Debtor, its estate, and the

26 Winning Bidder with respect to its Assumed Contract and will be deemed to

27 consent to the Sales and the proposed assumption and assignment of its Assumed

28 Contract(s).

-8-

1    Where a party to an Assumed Contract files a timely objection asserting a

2    higher cure amount than the cure amount set forth in the Sale Notice or subsequent

3    notice, and the parties are unable to consensually resolve the dispute prior to the

4    hearing on this Motion, the amount to be paid under 11 U.S.C. § 365 with respect

5    to such objection will be determined at the hearing on this Motion or such other

6    date and time as may be fixed by this Court.

7    All other objections to the proposed assumption and assignment of the

8    Assumed Contracts will be heard at the hearing on this Motion or such other date

9    and time as may be fixed by this Court.

10    6.    The Court shall set the Final Hearing after the Auction.  At the Final

11    Hearing on the Sale Motion, the Moving Voluntary Debtors shall recommend and the

12    Bankruptcy Court shall approve the Qualifying Competing Proposal that is the highest bid

13    for the applicable Moving Voluntary Debtor's Assets as the "Winning Bid."  The bidder

14    who made the Winning Bid shall be considered the "Winning Bidder."  The Winning

15    Bidder must pay at the closing all amounts reflected in the Winning Bid in cash and such

16    other consideration as agreed upon.  The Winning Bidder will have ten (10) business days

17    from the date of the entry of a final order on the Sale Motion not subject to a stay pending

18    appeal to close this purchase transaction by paying the Winning Bid amount.

19    E.    **There Are Bona Fide Disputes With Respect to SCC Communities, Tesoro and**

20    **Acton Against Lehman ALI.**

21    These bona fide disputes give rise to the Moving Voluntary Debtors' condition for the

22    denial of the applicable alleged Lehman Lenders' credit bid rights.  Although not the issue to be

23    litigated in this Motion, two of the Moving Voluntary Debtors -- SCC Communities and Tesoro

24    each have Lehman ALI as their disputed primary secured creditor.  Acton has LCPI as its primary

25    secured creditor.  Furthermore, as described herein, SCC Communities and Tesoro dispute the

26    purported liens asserted by Lehman ALI on the respective projects, the Tesoro Project, the Acton

27    Project, and the Allowed Interests in Seven Brothers and Kirby Estates.  To that end, these

28    Moving Voluntary Debtors are plaintiffs in a certain adversary proceeding, Adversary

-9-

1    No. 8:09-ap-01005-ES (the "Lehman Adversary Proceeding") against Lehman ALI asserting

2    fraudulent conveyance and equitable subordination causes of action.  SCC Communities and

3    Tesoro, along with North Orange Del Rio, have filed a motion for summary judgment in

4    connection with the fraudulent conveyance cause of action in the Lehman Adversary Proceeding,

5    which is currently set for hearing on September 23, 2011. [3]

6       In addition, SCC Communities, Tesoro, Acton, and Summit Valley are also moving

7    parties in a certain motion which seeks to disallow, pursuant to Section 502(d) of the Bankruptcy

8    Code, Lehman ALI's disputed secured claims against these Moving Voluntary Debtors ("§502(d)

9    Objection").  See Docket No. 1976.  Acton has also filed claim objections to Claim No. 6 filed by

10    LCPI against Acton pursuant to Section 502(b)(1) ("§502(b)(1) Objection").

11       Acton, SCC Communities, and Tesoro are also parties to the Amended Motion for Order

12    Disallowing Certain Claims Filed by Lehman ALI and Lehman Commercial Paper Inc.

13    ("Recoupment Objection").  See Docket No. 2082.

14      **F.**    **Lehman Has the Funds and the Authority to Cash Bid.**

15       In an order entered on July 21, 2011 in the LCPI bankruptcy case in connection with the

16    Lehman plans of reorganization proposed in the Moving Voluntary Debtors' cases, the New York

17    bankruptcy court ordered "that the LCPI and/or LBHI may cash bid in the SunCal Property

18    Auction or any market sale of the SunCal Properties, *provided, however*, any such cash bids are

19    subject to the business judgment of the Debtors' Board of Directors and the consent of the

20    Creditors' Committee." A true and correct copy of this order is attached as Exhibit "4" to the

21    Cook Declaration.  Moreover, the plan letters proposed by Lehman ALI and LCPI to be included

22    in the plan packages in support of the Lehman plans of reorganization in the Moving Voluntary

23    Debtors' cases confirm that Lehman has over **$2.5 billion** in liquid assets.   The ability to credit

24    bid pursuant to Section 363(k) of the Bankruptcy Code is expressly conditioned upon the

25    existence of a "lien that secures an allowed claim." This issue was extensively briefed over six

26    months' time period with respect to the proposed Sales of the Trustee Debtor assets.  As a result,

27    the parties are already extensively familiar with this legal issue.

28

---

[3] The action against LCPI has been stayed because of LCPI's automatic stay in its own New York bankruptcy case.

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

1       The Beaumont Heights, Johannson Ranch and Summit Projects are not subject to any liens

2   of the Lehman Entities, or other primary secured creditors of Debtor, and thus no credit bid rights

3   are at issue. As to the Sale of the Acton Project, since LCPI is in its own separate bankruptcy

4   proceeding and is protected by the automatic stay, the Acton Project will only be sold if LCPI's

5   Claim 6 is disallowed or avoided.

6       However, by this Motion, the Moving Voluntary Debtors are only seeking court approval

7   of the proposed overbid procedures and sales process set forth herein and to set dates for the

8   Preliminary Hearing, the Auction, and the Final Hearing. The other legal issues that are

9   conditions to the Sales will be addressed on regularly scheduled hearings such as in the referenced

10  summary judgment motion on September 23, 2011, the Acton Claim Objection on October 3,

11  2011, and the Preliminary Hearing on the Sale requested to be set thereafter, which shall address

12  the issue of the alleged credit bid rights.

13  II.

14  **GOOD CAUSE EXISTS FOR THE COURT TO APPROVE**

15  **THE OVERBID PROCEDURES AND SALE PROCESS**

16      As set forth in the Cook Declaration, the Moving Voluntary Debtors believe that the

17  proposed overbid procedures are fair and reasonable. Diamond Valley has not required any break-

18  up fee. Diamond Valley shall be required to place deposits in the same amounts as the Qualified

19  Competing Bidder. All initial and subsequent minimum overbid increments are approximately

20  3%. It is clear that few potential buyers would be willing to enter into a purchase agreement in the

21  context of a bankruptcy proceeding without some assurance that the bidding process will be fair

22  and equitable and will treat all parties equally. In this regard, initial overbid increments of up to

23  twenty percent of the sale price have been approved by bankruptcy courts. See In re Canyon

24  Partnership, 55 B.R. 520 (Bankr.S.D.Cal. 1985) (approved overbid of $20,000 was 3% of sale

25  price of $662,000); In re Great Northern Paper, Inc., 289 B.R. 497, 499 fn. 1 (D.Me. 2003)

26  (approved bidding increment of 2.2%).

27      The Moving Voluntary Debtors have also agreed to a comprehensive advertising effort

28  from the date of the Court's approval of this Motion until the date set for the Auction, which

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

1  includes the dissemination of sales packages to the brokerage community, sending packages to a

2  list of national prospects that the Moving Voluntary Debtors believe are actively interested in

3  these types of Assets, and a website that will include links to all relevant information regarding

4  the Moving Voluntary Debtors' Assets.

5          The Preliminary Hearing on the credit bid issue with respect to the two referenced Debtors

6  will be heard on regular notice.  The credit bid issue has been previously fully briefed by the

7  parties over six months in the Trustee Debtors' cases at issue.  Similarly, the circumstances of the

8  hearing on the Acton claim objection have been fully briefed and discovery will have been

9  conducted.  Consequently the Moving Voluntary Debtors believe the overbid procedures, the sales

10  process and the requested hearing schedules should be approved.

11                                                **III.**

12                                        **CONCLUSION**

13          For the foregoing reasons, the Moving Voluntary Debtors respectfully request that the

14  Court grant the Motion.

15  DATED: August 25, 2011                **WINTHROP COUCHOT**
                                          **PROFESSIONAL CORPORATION**
16

17                                        By:___ /s/ *Paul J. Couchot*_____
                                                Paul J. Couchot, Esq.
18                                          General Insolvency Counsel for
                                            Administratively Consolidated Voluntary
19                                          Debtors

20

21

22

23

24

25

26

27

28

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

## DECLARATION OF BRUCE V. COOK

I, Bruce V. Cook, hereby declare and state as follows:

1.        I am the General Counsel for SCC Acquisitions, Inc. ("SCC"), part of a network of affiliated companies doing business as the "SunCal Companies." SCC is an owner, directly or indirectly, of each of the seventeen Voluntary Debtors.[4] I am and have been the General Counsel for the seventeen Voluntary Debtors, in most cases since the formation of such entities.

2.        I have knowledge of the Debtors' books and records, and I am familiar with the Debtors' projects and their operational affairs. As to the following facts, I know them to be true of my own knowledge, and, if called as a witness, I could and would competently testify thereto; or I have gained such knowledge from the business records of the Debtors which were made at or near the time of the acts, conditions or events to which they relate. Any such document or record was prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and had a business duty to accurately record such event.

3.        The eight Moving Voluntary Debtors (SunCal Beaumont, SunCal Johannson, SunCal Summit, Kirby Estates, Seven Brothers, Acton, Tesoro and SCC Communities) (collectively the "Debtors") were formed to own and develop various residential real estate projects. A description of the Debtors and their primary assets is attached hereto as Exhibit "1."

4.        SCC Acquisitions, Inc., a California corporation ("Acquisitions"), is an indirect parent company of all of the Moving Voluntary Debtors and SCC Acquisitions LLC, a limited liability company ("SCC LLC"), is a subsidiary of Acquisitions and is a direct parent company of two Moving Voluntary Debtors – SCC Communities and Tesoro – and an indirect parent company of three Moving Voluntary Debtors – SunCal Beaumont, SunCal Johannson and Acton. Because the Moving Voluntary Debtors are wholly owned by these SunCal affiliates, the SunCal affiliates have full corporate governance authority over these entities. Bruce Elieff is the owner of Acquisitions and therefore, an indirect owner of the Moving Voluntary Debtors.

---

[4]  They are: Acton Estates LLC ("Acton"), SunCal Beaumont Heights LLC ("SunCal Beaumont") SunCal Bickford Ranch LLC, SunCal Emerald Meadows LLC, SunCal Johannson Ranch LLC ("SunCal Johannson"), SCC Palmdale LLC, Palmdale Hills Property LLC, SJD Partners, Ltd., SJD Development Corp., SunCal Summit Valley LLC ("SunCal Summit"), SCC Communities LLC, SunCal Communities I LLC, SunCal Communities III LLC, North Orange Del Rio Land LLC ("Del Rio"), Tesoro SF LLC ("Tesoro"), Seven Brothers LLC ("Seven Brothers") and Kirby Estates LLC ("Kirby").

-13-

5.      The Moving Voluntary Debtors – Beaumont, Johansson, SCC Communities, Tesoro, Acton, Summit Valley, Seven Brothers and Kirby Estates – each own or have an interest in residential real estate projects in California: the Beaumont Heights Project, the Johannson Ranch Project, the Joshua Ridge Project, the Tesoro Project, the Acton Project and the Summit Valley Project (owned, in part, by Moving Voluntary Debtors, Summit Valley, Kirby and Seven Brothers) (collectively, the "Projects").

6.      Of the eight Moving Voluntary Debtors, five (5) of the Moving Voluntary Debtors, Beaumont, Johannson, Summit Valley, Seven Brothers and Kirby Estates, do not have a primary secured creditor *on their respective projects*. Specifically, it is undisputed that neither Lehman ALI nor LCPI has a lien against the Beaumont Heights Project, Johannson Ranch Project, or the Summit Valley Project, which includes Summit Valley, Kirby Estates and Seven Brothers (collectively, the "Summit Valley Debtors").

7.      Furthermore, Tesoro, SCC Communities and Acton have filed an action against Lehman ALI, and certain other defendants, in California Superior Court for the County of Orange (Case No. 30-2011-0040847-CU-BC-CJC) that was removed to the Bankruptcy Court as Adv. No. 8:11-ap-01212-ES (the "Contract Action"), alleging, among other things, breach of contract and breach of the covenant of good faith and fair dealing under California law.

8.      The Moving Voluntary Debtors have agreed to sell their primary assets to Diamond Valley Land, LLC ("Diamond Valley") subject to certain terms and conditions described in the Diamond Valley Term Sheet. A true and correct copy of the Diamond Valley Term Sheet is attached hereto as Exhibit "2." As demonstrated in the chart attached hereto as Exhibit "3," and set forth below, the successful consummation of the proposed Sales will ensure the feasibility of the Moving Voluntary Debtors' plans and provide 100% distribution to all creditors, with the exception of Summit Valley, which will be a 55% distribution.

/ / /

-14-

| Debtor | Unpaid Real Property Tax Claims | Mechanic Lien Claims | Administrative Claims | General Unsecured Claims | Projected Distribution to General Unsecured Creditors |
|---|---|---|---|---|---|
| SunCal Beaumont | $442,201 | $43,355 | $104,616 | $180,713 | 100% |
| SunCal Johannson | $434,830 | $0 | $110,151 | $41,181 | 100% |
| SCC Communities | $47,163 | $0 | $87,984 | $32,813 | 100% |
| | | | | | |
| Tesoro | $103,086 | $0 | $385,198 | $170,969 | 100% |
| Acton | $463,325 | $0 | $199,052 | $145,314 | 100% |
| SunCal Summit (including Seven Brothers) | $835,541 | $16,827 | $137,920 | $300,656 | 55% |

9. In contrast, the Lehman Plan for Summit Valley provides no more than 50% distribution to any of the Moving Voluntary Debtors' creditors except for a 100% plus interest distribution to SunCal Johannson and SunCal Beaumont.

10. The Moving Voluntary Debtors seek to sell their primary Assets to Diamond Valley or to the bidder presenting the highest and best cash offer for such Assets. All net sale proceeds will be held by the respective Moving Voluntary Debtor in a segregated account with all valid liens attaching thereto, subject to a further order of the Court.

11. The following is a summary of Diamond Valley's offer to purchase the Moving Voluntary Debtors' Assets pursuant to the Diamond Valley Term Sheet:

| Asset to Be Sold | Stalking Horse Bid |
|---|---|
| Beaumont Heights Project | $925,000 |
| Johannson Ranch Project | $625,000 |
| SCC Communities Assets | $175,000 |
| Tesoro Assets | $700,000 |
| Acton Project | $1,600,000 |
| Summit Valley Project | Assumption of Outstanding Real Property Taxes in the amount of $835,541 against Summit Valley Project plus $325,000[5] |

---

[5] The real property taxes shall be assumed by Diamond Valley and shall be paid via regular installment payments pursuant to 11 U.S.C. §1129(a)(9)(C)(ii).

-15-

1     12.    The Sale of each Asset to Diamond Valley is not contingent upon the Sale of any

2   other Assets. In other words, if certain conditions precedent for the benefit of certain Moving

3   Voluntary Debtors are not satisfied and such Moving Voluntary Debtors refuse to move forward

4   with the Sale, the Sales of the other Projects/Assets will not be affected.

5     13.    The Moving Voluntary Debtors have also required that the Diamond Valley Term

6   Sheet provide for the following conditions based on what they believe to be the following bona

7   fide disputes discussed below in paragraphs 18-20 but is not an issue to be determined in this

8   Motion.

9       a.    the Sale of the SCC Communities Assets, and the Tesoro Assets are

10     conditioned upon either (i) the Court granting these Moving Debtors' pending motion for

11     summary judgment to disallow Lehman ALI's disputed claims against these Moving

12     Debtors and avoid Lehman ALI's disputed liens against these Moving Debtors' Assets, or

13     (ii) the Court's disallowance of Lehman ALI's credit bid rights against these Moving

14     Debtors.

15       b.    The Sale of the Acton Project is conditioned upon the disallowance of

16     LCPI's claim against Acton under Acton's pending objection to LCPI's claim pursuant to

17     Section 502(b)(1).

18     14.    Diamond Valley is indirectly owned by Stephan Elieff. Stephan Elieff is the brother

19   of Bruce Elieff as previously stated. Bruce Elieff is an indirect owner of all of the Moving

20   Voluntary Debtors. Stephan Elieff is also a minority, indirect owner of certain of the Moving

21   Voluntary Debtors.

22     15.    Diamond Valley is an affiliate of the successful bidder for three residential projects

23   in related bankruptcy proceedings before this Bankruptcy Court, known as the McAllister Ranch,

24   Summerwind Ranch, and McSweeny Farms projects ("Pool One Cases"), all of which closed

25   within a very short time period following court approval of their auction. The aggregate purchase

26   price for the Moving Voluntary Debtors' assets subject to this Motion is approximately 6% of the

27   aggregate purchase price in the Pool One Cases.

28

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

16.   The following are the sales procedures that will be used by the Moving Voluntary Debtors in connection with the Sales of the Assets.

17.   The Bankruptcy Court will not consider any competing proposal ("Competing Proposal") unless the Competing Proposal satisfies the following criteria:

a.   At the Preliminary Hearing, the Court shall determine the issues regarding any disputed credit bid rights.

b.   The Moving Voluntary Debtors will market the Assets for Sale through a comprehensive sale effort from the approval of this Motion until the Auction.   As set forth below, the Auction shall not be held until after the Preliminary Hearing and the October 3, 2011 Acton Claim Objection. This sale effort will include (i) sending sale packages describing each Moving Voluntary Debtor's Assets to the real estate brokerage community; (ii) advertising the Moving Voluntary Debtors' Assets on a website that includes links allowing direct access to all relevant information regarding the Moving Voluntary Debtors' Assets; and (iii) sending packages to a list of prospects nationally who are actively seeking or may have interest in these kinds of assets.

c.   The Court shall set a date for the auction that will be conducted at the Offices of Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Suite 400, Newport Beach, CA 92660, after the Preliminary Hearing.  At the Auction only Diamond Valley or its designee and all other parties who have submitted a Qualifying Competing Proposal (defined below) shall be entitled to bid.  The Moving Voluntary Debtors will conduct the Auction wherein all such parties who have submitted a Qualifying Competing Proposal have the opportunity to increase their bids.

d.   At the Auction to be conducted by the Moving Voluntary Debtors, the Moving Voluntary Debtors will only consider competing proposals that are "Qualifying Competing Proposals", which must satisfy the following criteria:

(1)   Provides for a minimum all-cash offer equal to the Diamond Valley offer plus the minimum initial overbid, both of which are set forth below.  Each

-17-

subsequent minimum overbid increment shall be the same as the minimum overbid increment set forth below.

| Asset to Be Sold | Diamond Valley Offer | Overbid Increment |
|---|---|---|
| Beaumont Heights Project | $925,000 | $25,000 |
| Johannson Ranch Project | $625,000 | $15,000 |
| SCC Communities Assets | $175,000 | $5,000 |
| Tesoro Assets | $700,000 | $20,000 |
| Acton Project | $1,600,000 | $50,000 |
| Summit Valley Project | Assumption of Outstanding Real Property Taxes in the amount of $835,541 against Summit Valley Project plus $325,000 | $30,000 |

(2)    Is accompanied by a deposit in the form of a wire transfer of funds or a cashier's check payable to Winthrop Couchot Professional Corporation (to be held in trust for the Moving Voluntary Debtors) in the following amounts[6]:

| Asset to Be Sold | Deposit |
|---|---|
| Beaumont Heights Project | $25,000 |
| Johannson Ranch Project | $15,000 |
| SCC Communities Assets | $5,000 |
| Tesoro Assets | $20,000 |
| Acton Project | $50,000 |
| Summit Valley | $30,000 |

(3)    Provides evidence satisfactory to the Moving Voluntary Debtors confirming that such bidder has the financial means to acquire the applicable Moving Voluntary Debtors' Project that such bidder is seeking to acquire;

(4)    Is made by a person or entity who has completed its due diligence review of the Moving Voluntary Debtors' books and records, and is satisfied with the results thereof; and

---

[6] Diamond Valley will also provide deposits in the same amounts.

(5)    Is delivered to the Moving Voluntary Debtors and their counsel and filed with the Bankruptcy Court at least two (2) court days prior to the Auction (as defined below).

e.    The Moving Voluntary Debtors propose the following procedures for the fixing of cure claims and assumption of contracts.

(1)    Cure Amounts, Objection and Objection Deadline. If a counterparty to an assumed executory contract or an assumed, unexpired lease, the description and cure claims with respect to which will be attached to the Sale Motion (each, an "Assumed Contract"), does not (i) properly object to the applicable cure amounts set forth in and/or submit a request for adequate assurance fourteen (14) days prior to the hearing on the Sale Motion (the "Cure Objection Deadline"); (ii) set forth a specific default in any Assumed Contract; and (iii) claim a specific monetary amount that differs from the amount (if any) specified by the Moving Voluntary Debtors in the Sale Notice, this Court shall enter an order deeming the amount set forth in the Sale Notice to be the actual cure amount payable under 11 U.S.C. § 365 and forever barring such counterparty from objecting to the cure amount and from asserting any additional cure or other amounts against the applicable Moving Voluntary Debtor, its estate, and the Winning Bidder with respect to its Assumed Contract.

Except as may otherwise be agreed to by the parties to an Assumed Contract, at or prior to the closing of the Sale, the applicable Moving Voluntary Debtor shall cure those defaults under the Assumed Contracts that need to be cured in accordance with 11 U.S.C. § 365(b), by (i) payment of the undisputed cure amounts, and/or (ii) reserving amounts with respect to the disputed cure amounts.

In the event the Winning Bidder is a party other than Diamond Valley, the Moving Voluntary Debtors shall provide notice of Assumed Contracts, if different from those attached to the Sale Motion, and shall serve notice on the counterparties to such Assumed Contracts.

MAINDOCS-#165905-v10-SnuCal_Sales_Proc_Mtn.DOC

(2)    Objections to Assumption and Assignment of Executory Contracts.
Objections, if any, to the proposed assumption and assignment of the Assumed
Contracts, including, but not limited to, objections relating to the cure amounts
and/or adequate assurances of future performance, must (i) be in writing; (ii) state
with specificity the nature of such objection and the alleged cure amount (with
appropriate documentation in support thereof); (iii) comply with the Bankruptcy
Rules and the Local Bankruptcy Rules of this Court; and (iv) be filed with this
Court and served upon (so as to be received by) the following parties on or before
5:00 p.m. prevailing Pacific time fourteen (14) days prior to the hearing on the Sale
Motion:

        a.    General counsel to the Moving Voluntary Debtors, Bruce V.
Cook, Esq., 2392 Morse Avenue, Irvine, California 92614, e-mail:
bcook@argentmanagementllc.com;

        b.    General insolvency counsel to the Moving Voluntary
Debtors, Winthrop Couchot Professional Corporation, Attn: Paul J.
Couchot, Esq., 660 Newport Center Drive, Suite 400, Newport Beach, CA
92660; e-mail: pcouchot@winthropcouchot.com;

        c.    Counsel to SunCal Management LLC and SCC Acquisitions,
Inc., Rus Miliband & Smith A Professional Corporation, Attn: Ronald Rus,
Esq., 2211 Michelson Drive, Seventh Floor, Irvine, California 92612, e-
mail: rrus@rusmiliband.com;

        d.    The United States Trustee for the Central District of
California, Attn: Michael Hauser, Esq., 411 West Fourth Street, Suite 9041,
Santa Ana, CA 92701;

        e.    Counsel to the Creditors' Committee, Irell & Manella LLP,
Attn.: Alan J. Friedman, Esq., 840 Newport Center Dr Ste 400, Newport
Beach, CA 92660; e-mail: afriedman@irell.com;

-20-

1         f.       Counsel to Lehman ALI, Inc., Pachulski Stang Ziehl & Jones

2     LLP, Attn.: Richard M. Pachulski, Esq., 10100 Santa Monica Blvd., 11th

3     Floor, Los Angeles, California 90067, e-mail: rpachulski@pszjlaw.com;

4         g.       Counsel to Lehman ALI, Inc., Weil, Gotshal & Manges LLP,

5     Attn.: Edward Soto, Esq., 767 Fifth Avenue, New York, NY 10153, e-mail:

6     edward.soto@weil.com; and

7         h.       Any other parties who have timely filed requests for notice

8     under Bankruptcy Rule 2002 or who are entitled to notice under any case

9     management procedures order, if any, entered in this chapter 11 case prior to

10     the mailing deadline.

11         Any party failing to timely file an objection to the cure amounts set forth in

12 the Sale Notice (or any subsequent notice setting forth proposed cure amounts) or

13 the proposed assumption and assignment of the Assumed Contracts shall be forever

14 barred from objecting to the cure amounts and from asserting any additional cure

15 amounts against a Moving Voluntary Debtor, its estate, and the Winning Bidder

16 with respect to its Assumed Contract and will be deemed to consent to the Sales and

17 the proposed assumption and assignment of its Assumed Contract(s).

18         Where a party to an Assumed Contract files a timely objection asserting a

19 higher cure amount than the cure amount set forth in the Sale Notice or subsequent

20 notice, and the parties are unable to consensually resolve the dispute prior to the

21 hearing on this Motion, the amount to be paid under 11 U.S.C. § 365 with respect to

22 such objection will be determined at the hearing on this Motion or such other date

23 and time as may be fixed by this Court.

24         All other objections to the proposed assumption and assignment of the

25 Assumed Contracts will be heard at the hearing on this Motion or such other date

26 and time as may be fixed by this Court.

27       (3)      The Court shall set the Final Hearing after the Auction. At the Final

28 Hearing on the Sale Motion, the Moving Voluntary Debtors shall recommend and

the Bankruptcy Court shall approve the Qualifying Competing Proposal that is the highest bid for the applicable Moving Voluntary Debtor's Assets as the "Winning Bid." The bidder who made the Winning Bid shall be considered the "Winning Bidder." The Winning Bidder must pay at the closing all amounts reflected in the Winning Bid in cash and such other consideration as agreed upon. The Winning Bidder will have ten (10) business days from the date of the entry of a final order on the Sale Motion not subject to a stay pending appeal to close this purchase transaction by paying the Winning Bid amount.

18.    There are bona fide disputes with respect to SCC Communities, Tereso and Acton against Lehman ALI. These bona fide disputes give rise to the Moving Voluntary Debtors' condition for the denial of the applicable alleged Lehman Lenders' credit right bids. Although not the issue to be litigated in this Motion, two of the Moving Voluntary Debtors – SCC Communities and Tesoro – each have Lehman ALI as their disputed primary secured creditor.  Acton has LCPI as its primary secured creditor.  Furthermore, as described herein, SCC Communities and Tesoro dispute the purported liens asserted by Lehman ALI on the respective projects, the Tesoro Project, the Acton Project, and the Allowed Interests in Seven Brothers and Kirby Estates.  To that end, the Moving Voluntary Debtors are plaintiffs in a certain adversary proceeding, Adversary No. 8:09-ap-01005-ES (the "Lehman Adversary Proceeding") against Lehman ALI and LCPI asserting fraudulent conveyance and equitable subordination causes of action.  SCC Communities and Tesoro have filed a motion for summary judgment in connection with the fraudulent conveyance cause of action in the Lehman Adversary Proceeding, which is currently set for hearing on September 23, 2011.[7]

19.    In addition, SCC Communities, Tesoro, Acton, and Summit Valley are also moving parties in a certain motion which seeks to disallow, pursuant to Section 502(d) of the Bankruptcy Code, Lehman ALI's disputed secured claims against these Moving Voluntary Debtors ("§502(d) Objection").  See Docket No. 1976.  Acton has also filed claim objections to Claim No. 6 filed by LCPI against Acton pursuant to Section 502(b)(1) ("§502(b)(1) Objection").

---

[7] The action against LCPI has been stayed because of LCPI's automatic stay in its own New York bankruptcy case.

-22-

1    20.    Acton, SCC Communities, and Tesoro are also parties to the Amended Motion for

2    Order Disallowing Certain Claims Filed by Lehman ALI and Lehman Commercial Paper Inc.

3    ("Recoupment Objection"). See Docket No. 2082.

4    21.    In an order entered on July 21, 2011 in the LCPI bankruptcy case in connection with

5    the Lehman plans of reorganization proposed in the Moving Voluntary Debtors' cases, the New

6    York bankruptcy court ordered "that the LCPI and/or LBHI may cash bid in the SunCal Property

7    Auction or any market sale of the SunCal Properties, *provided, however*, any such cash bids are

8    subject to the business judgment of the Debtors' Board of Directors and the consent of the

9    Creditors' Committee." A true and correct copy of this order is attached hereto as Exhibit "4."

10   Moreover, the plan letters proposed by Lehman ALI and LCPI to be included in the plan packages

11   in support of the Lehman plans of reorganization in the Moving Voluntary Debtors' cases confirm

12   that Lehman has over **$2.5 billion** in liquid assets.

13   22.    The ability to credit bid pursuant to Section 363(k) of the Bankruptcy Code is

14   expressly conditioned upon the existence of a "lien that secures an allowed claim". This issue was

15   extensively briefed over six months' time period with respect to the proposed Sales of the Trustee

16   Debtor assets. As a result, the parties are already extensively familiar with this legal issue.

17   23.    The Beaumont Heights, Johannson Ranch and Summit Projects are not subject to

18   any liens of the Lehman Entities, and thus no credit bid rights are at issue. As to the Sale of the

19   Acton Project, since LCPI is in its own separate bankruptcy proceeding and is protected by the

20   automatic stay, the Acton Project will only be sold if LCPI's Claim 6 is disallowed or avoided.

21   24.    However, by this Motion, the Moving Voluntary Debtors are only seeking court

22   approval of the proposed overbid procedures and sales process set forth herein and to set dates for

23   the Preliminary Hearing, the Auction, and the Final Hearing. The other legal issues that are

24   conditions to the Sales will be addressed on regularly scheduled hearings such as in the referenced

25   summary judgment motion on September 23, 2011, the Acton Claim Objection on October 3,

26   2011, and the Preliminary Hearing on the Sale requested to be set thereafter, which shall address

27   the issue of the alleged credit bid rights.

28

-23-

25.    The Moving Voluntary Debtors believe that the proposed overbid procedures are fair and reasonable. Diamond Valley has not required any break-up fee. Diamond Valley shall be required to place deposits in the same amounts as the Qualified Competing Bidder. All initial and subsequent minimum overbid increments are approximately 3%.

26.    The Moving Voluntary Debtors have agreed to a comprehensive advertising effort from the date of the Court's approval of this Motion, which includes the dissemination of sales packages to the brokerage community, sending packages to a list of national prospects that the Moving Voluntary Debtors believe are actively interested in these types of Assets, and a website that will include links to all relevant information regarding the Moving Voluntary Debtors' Assets.

27.    The Preliminary Hearing on the credit bid issue with respect to the three referenced Debtors will be heard on regular notice. The credit bid issue has been previously fully briefed by the parties over six months in the Trustee Debtors' cases. Similarly, the circumstances of the hearing on the Acton claim objection are identical. Consequently, the Moving Voluntary Debtors believe the overbid procedures, the sales process and the requested hearing schedules should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of August 2011, at Irvine, California.


_____/s/ Bruce V. Cook_____
Bruce V. Cook

-24-

**EXHIBIT 1**

### EXHIBIT "1"

### DESCRIPTION OF PROPOSED ASSETS TO BE SOLD

| Moving Voluntary Debtor | Description of Projects |
|---|---|
| Beaumont | Beaumont owns the Beaumont Heights Project that originally consisted of a 1,191-acre site situated in the City of Beaumont, in Riverside County, California (the "Beaumont Heights Project"). None of the 1,191 acres are subject to any option contracts. The property is currently designated as low density residential use - rural residential use. The City of Beaumont is in the process of amending the general plan, preparing an environmental impact report and annexing the assemblage. The Beaumont Heights Project was expected to consist of 1,203 units. No entitlements were in place of this Moving Voluntary Debtor's petition date. <br><br> Approximately 94 acres of the Beaumont Heights Project was lost through foreclosure sales completed prior to the petition date and approximately 343.5 acres of the Beaumont Heights Project has been lost through foreclosure sales completed after the petition date. SunCal Beaumont owns approximately 551.6 acres of the Beaumont Heights Project. |
| Johannson | Johansson owns the Johannson Ranch Project consisting of a 501-acre site in the City of Modesto, in Stanislaus County, California (the "Johannson Ranch Project"). Tentative maps are in the process of being prepared. Engineering plans and preparation of the draft specific plan have commenced. The Johannsson Ranch Project is expected to consist of 921 units. No entitlements were in place of this Moving Voluntary Debtor's petition date. |
| SCC Communities | SCC Communities owns Joshua Ridge Project consisting of an 80-acre site situated in the City of Victorville in San Bernardino County, California. The Joshua Ridge Project was originally slated to be sold to the City and the City was scheduled to use the land to build a park or a school. No entitlements were in place of this Moving Voluntary Debtor's petition date. <br><br> The SCC Communities assets that Diamond Valley has offered to purchase also include any and all interests of SCC Communities in any and all claims, rights, causes of action, and objections or defenses to claims, liens, rights, or causes of action which have been or may be commenced by the SCC Communities or the committee of unsecured creditors for SCC Communities, as the case may be, including, but not limited to, any of the following <br>      i)    All claims and defenses to claims accruing to SCC Communities and it bankruptcy estate under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551; <br>      ii)    Turnover of property to SCC Communities; |

-25-

**EXHIBIT "1"**

| Moving Voluntary Debtor | Description of Projects |
|---|---|
| | iii) Recovery of property or payment of money that belongs to the SCC Communities' estate;<br>iv) The right to compensation in the form of damages, recoupment or setoff of SCC Communities' estate;<br>v) the Lehman Adversary Proceeding;<br>vi) The Contract Action; and<br>vii) Any and all other claims against Lehman ALI and its affiliates. |
| Tesoro | Tesoro owns the Tesoro Project consisting of a 185-acre site situated in the City of Santa Clarita in Los Angeles County, California. The existing entitlements include a tentative tract map approved by the planning commission, which allows for 45 lots. Vesting Tentative Tract Map and CUP were approved in February of 2008, subject to final submittal of map consistent with conditions of approval. Final submittal and approval of this amended map never occurred as a result of the bankruptcy and remains on file with the County of Los Angeles.<br><br>The Tesoro assets that Diamond Valley has offered to purchase also include any and all interests of Tesoro in any and all claims, rights, causes of action, and objections or defenses to claims, liens, rights, or causes of action which have been or may be commenced by the Tesoro or the committee of unsecured creditors for Tesoro, as the case may be, including, but not limited to, any of the following<br>i) All claims and defenses to claims accruing to Tesoro and it bankruptcy estate under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551;<br>ii) Turnover of property to Tesoro;<br>iii) Recovery of property or payment of money that belongs to the Tesoro's estate;<br>iv) The right to compensation in the form of damages, recoupment or setoff of Tesoro's estate;<br>v) the Lehman Adversary Proceeding;<br>vi) The Contract Action, and<br>vii) Any and all other claims against Lehman ALI and its affiliates. |
| Acton Project | Acton owns the Project consisting of a 175-acre site situated in Los Angeles County, California. The Acton Project is surrounded by mostly equestrian properties and light agricultural vacant land. The Acton Project is expected to consist of 136 units. The final tract map for Acton was recorded in May 2009. |
| Summit Valley | Summit Valley owns most of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the |

-26-

EXHIBIT "1"

| Moving Voluntary Debtor | Description of Projects |
|---|---|
| | environmental impact report are complete. The Summit Valley Project is expected to consist of 6,023 units. Approximately 1061 acres of the Summit Valley Project have been lost through foreclosure proceedings completed prior to the Petition Date. No portion of the Summit Valley Project has been lost through foreclosure proceedings since the Petition Date. SunCal Summit Valley currently owns 541.2 acres of the Summit Valley Project. No entitlements were in place of the Debtor's Petition Date. |
| Seven Brothers | Seven Brothers currently owns 569.67 of the Summit Valley Project. |
| Kirby Estates | Kirby Estates owns 27.2 acres of the Summit Valley Project. |

• The foregoing SunCal estimated values do not include any cure payments that will be paid from the proceeds to claimants whose executory contracts and/or unexpired leases are assumed by the respective Moving Voluntary Debtor.

-27-

MAIN DOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC

**EXHIBIT "1"**

**EXHIBIT 2**

## EXHIBIT "2"

### DIAMOND VALLEY TERM SHEET

| Project/Asset to Be Sold | Diamond Valley Purchase Offer | Deposit | Minimum and Subsequent Overbid Increments |
|---|---|---|---|
| Beaumont Heights Project | $925,000 | $25,000 | $25,000 |
| Johannson Ranch Project | $625,000 | $15,000 | $15,000 |
| SCC Communities Assets | $175,000 | $5,000 | $5,000 |
| Tesoro Assets | $700,000 | $20,000 | $20,000 |
| Acton Project | $1,600,000 | $50,000 | $50,000 |
| Summit Valley Project (including Kirby and Seven Brothers) | Assumption of Outstanding Real Property Taxes in the amount of $335,541 plus $325,000 | $30,000 | $30,000 |

(1)     The above purchase offers from Diamond Valley Land LLC ("Diamond Valley") (the "Purchase Offer(s)") are for all cash upon closing, except for the real property taxes for the Summit Valley Project (including Kirby and Seven Brothers), which shall be assumed by Diamond Valley and shall be conditioned upon Diamond Valley being allowed to pay the taxes via quarterly installment payments pursuant to Bankruptcy Code Section 1129(a)(9)(C)(ii).

(2)     The closing shall take place 10 business days after the Bankruptcy Court enters a final order (in a form satisfactory to all parties) approving the sale that is not subject to a stay pending appeal.

(3)     The Purchase Offers are conditioned upon appropriate findings of the Court establishing: (i) the good faith of each debtor and Diamond Valley in connection with the negotiation, execution, delivery, and consummation of the sales; and (ii) the arms-length nature of such negotiations and transactions, together with such other findings as are necessary to ensure that each debtor and Diamond Valley are each entitled to the protection afforded by Bankruptcy Code Section 363(m).

(4)     Diamond Valley shall be required to place deposits in the same amounts as the Qualified Competing Bidder referenced above.

(5)     The Purchase Offer for each of the Debtor's Project/Assets of Diamond Valley does not require a break-up fee and is not contingent upon the sale of any other Debtor's Project/Assets.

(6)     The sale of the SCC Communities Assets (Joshua Ridge Project) and the Tesoro Project are conditioned upon either (a) the Court granting these Debtors' pending motion for summary judgment to disallow Lehman ALI's disputed claims against these Debtors and avoid Lehman ALI's disputed liens against these Debtors' Assets, or (b) the Court's disallowance of Lehman ALI's credit bid rights against these Debtors.

(7)     The sale of the Acton Project is conditioned upon the disallowance of LCPI's claim against the Acton Debtor under Acton Debtor's pending objection to LCPI's claim pursuant to Section 502(b)(1) and/or 502(d).

Date: August 25, 2011                                Date: August 25, 2011

On Behalf of the above Voluntary Debtors          Diamond Valley Land LLC
for the above-listed Projects/Assets

By: _____               By: _____
      Bruce Cook                                         Stephan Elieff
      General Counsel, Authorized Agent for the           Authorized Signatory
      foregoing Debtors

# EXHIBIT 3

## EXHIBIT "3"

## PROJECTED DISTRIBUTIONS

Assuming that the applicable Moving Debtors are successful in disallowing Lehman ALI's disputed claims and avoid its disputed liens in the pending summary judgment motion and that Acton is successful in disallowing LCPI's disputed claim in its pending claim objection, then the below chart represents the total amount of the estimated claims to be paid, and the corresponding estimated distributions based on the Diamond Valley Term Sheet:

| Debtor | Unpaid Real Property Tax Claims | Mechanic Lien Claims | Administrative Claims | General Unsecured Claims | Projected Distribution to General Unsecured Creditors |
|---|---|---|---|---|---|
| SunCal Beaumont | $442,201 | $43,355 | $104,616 | $180,713 | 100% |
| SunCal Johannson | $434,830 | $0 | $110,151 | $41,181 | 100% |
| SCC Communities | $47,163 | $0 | $87,984 | $32,813 | 100% |
| | | | | | |
| Tesoro | $103,086 | $0 | $385,198 | $170,969 | 100% |
| Acton | $463,325 | $0 | $199,052 | $145,314 | 100% |
| SunCal Summit (including Seven Brothers) | $835,541 | $16,827 | $137,920 | $300,656 | 55% |

(1)     There are no bond claims on the Moving Debtors' Projects.

(2)     Kirby has no claims other than real property taxes.

MAINDOCS-#165905-v10-SunCal_Sales_Proc_Mtn.DOC
*Page 29*

**EXHIBIT 4**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x
                                                   :
                                                   :
In re                                              :    **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,       :    08-13555 (JMP)
                                                   :
              Debtors.                             :    (Jointly Administered)
                                                   :
                                                   :
--------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORITY TO (I) ENTER INTO THE THIRD AMENDED JOINT CHAPTER 11 PLAN PROPOSED BY THE LEHMAN CREDITORS AND THE SUNCAL TRUSTEE ON BEHALF OF THE SUNCAL INVOLUNTARY DEBTORS IN EIGHT OF THE SUNCAL INVOLUNTARY DEBTORS' CASES; (II) ENTER INTO THE THIRD AMENDED JOINT CHAPTER 11 PLAN PROPOSED BY THE LEHMAN LENDERS IN ELEVEN OF THE SUNCAL VOLUNTARY DEBTORS' CASES; AND (III) PARTICIPATE IN ANY AUCTION OF THE SUNCAL DEBTORS' ASSETS

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI")

and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman

Commercial Paper Inc. ("LCPI"), as debtors (the "Debtors"), pursuant to section 363 of title 11

of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for an order authorizing LCPI to (i) enter into,

along with Lehman ALI and certain of LCPI's other non-debtor affiliates, the third amended

joint chapter 11 plan being jointly proposed with the SunCal Trustee in the chapter 11 cases of

eight of the SunCal Involuntary Debtors; (ii) enter into the third amended joint chapter 11 plan

being jointly proposed with Lehman ALI in the chapter 11 cases of eleven of the SunCal

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Motion. Since the filing of the Motion the Second Amended Lehman/Trustee TD Plan and the Second Amended Lehman VD Plan have been amended, as further discussed in the supplemental declaration of Alfredo R. Pérez in connection with the Motion, filed with the Court on July 18, 2011, ECF No. 18612.

Voluntary Debtors; and (iii) directly or with LBHI through any of their debtor or non-debtor

affiliates or subsidiaries, to participate in any auction of the SunCal Debtors' assets, all as more

particularly described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases, ECF No. 9635, on (i) the U.S. Trustee; (ii) the

attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) counsel to the SunCal Trustee; and (vii) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and no

objections to the Motion having been filed; and a hearing on the Motion having been held on

July 20, 2011; and the Court having found and determined that the relief sought in the Motion is

in the best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Debtors are duly authorized, but not directed, to (i) enter into the Third Amended

Lehman/Trustee TD Plan and consummate all of the transactions contemplated thereunder, as

2

described in the Motion; (ii) execute and deliver such documents, instruments, certificates
agreements and to take such other actions as may be reasonably necessary to consummate the
transactions contemplated under the Third Amended Lehman/Trustee TD Plan, and (iii) consent
to any amendment, restatement, waiver, supplement or other modification of any of the
documents contemplated under the Third Amended Lehman/Trustee TD Plan, it being
understood that any actions described in this paragraph taken by the Debtors or their affiliates
may be taken without the necessity of (x) any further court proceedings or approval or (y) any
consent of any third party, and shall be conclusive and binding in all respects on all parties in
interest in these cases; and it is further

       ORDERED that the Debtors are authorized, but not directed, to make all
payments contemplated under the Third Amended Lehman/Trustee TD Plan, as described in the
Motion, subject to the terms of the Third Amended Lehman/Trustee TD Plan; *provided,*
*however,* that if, prior to such plan's effective date, the Lehman Creditors' good faith estimate of
the amount of the funding the Lehman Creditors could be required to provide exceeds $55
million, plus the amount of the administrative loans any of them made after August 10, 2010, the
Debtors will consult with and obtain the consent of the Creditors' Committee prior to
determining whether to consummate the Third Amended Lehman/Trustee TD Plan; and it is
further

       ORDERED pursuant to section 363 of the Bankruptcy Code, the Debtors are duly
authorized, but not directed, to (i) enter into the Third Amended Lehman VD Plan and
consummate all of the transactions contemplated thereunder, as described in the Motion; (ii)
execute and deliver such documents, instruments, certificates agreements and to take such other
actions as may be reasonably necessary to consummate the transactions contemplated under the

3

**EXHIBIT "4"**

Third Amended Lehman VD Plan, and (iii) consent to any amendment, restatement, waiver, supplement or other modification of any of the documents contemplated under the Third Amended Lehman VD Plan, it being understood that any actions described in this paragraph taken by the Debtors or their affiliates may be taken without the necessity of (x) any further court proceedings or approval or (y) any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that the Debtors are authorized, but not directed, to make all payments contemplated under the SunCal VD Plan, as described in the Motion, subject to the terms of the SunCal VD Plan; *provided, however,* that if, prior to such plan's effective date, either (a) the Lehman Lenders' good faith estimate of the amount of funding the Lehman Lenders could be required to provide under the plan exceeds $22 million with respect to the Group I Debtors or (b) the Lehman Lenders' good faith estimate of "Allowed Senior Claims" (as defined in the Third Amended Lehman VD Plan) exceeds $3 million with respect to the Group II Debtors, the Debtors will consult with and obtain the consent of the Creditors' Committee prior to determining whether to consummate the Third Amended Lehman VD Plan; and it is further

ORDERED that the LCPI and/or LBHI may cash bid in the SunCal Property Auction or any market sale of the SunCal Properties, *provided, however,* any such cash bids are subject to the business judgment of the Debtors' Board of Directors and the consent of the Creditors' Committee; and it is further

ORDERED that LBHI may provide for the LBHI Plan Funding, *provided* that, the allocation of costs and benefits between LBHI and LCPI in connection with the funding of the Third Amended Lehman/Trustee TD Plan and Third Amended Lehman VD Plan (together, the "Lehman Plans") is preserved for determination at a later date; and it is further

4

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI, LBHI, or any other Lehman entity that is party to the SunCal Plans, that such Lehman entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties, and the Debtors are hereby authorized and directed to execute such further documents to evidence such reservations; and it is further

ORDERED that nothing contained in the Lehman Plans, the SunCal Plans or in the Motion shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI or any Lehman Creditor, that such entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties; and it is further

ORDERED that any and all pre- and post-petition claims, rights and obligations that the Debtors may have against each other in connection with the subject matter of the Motion or the transactions contemplated by the Lehman Plans and the SunCal Plans are hereby fully preserved and shall not be prejudiced by the entry of this Order; and it is further

ORDERED that the allocation of costs and benefits between or among the Debtors and non-Debtor affiliates in connection with the SunCal Plans is preserved; and it is further

ORDERED that the SunCal Plans may be modified, amended or supplemented by the proponents thereof without further order of the Court, and any agreements, documents or other instruments related to the SunCal Plans, documents or other instruments may be modified,

5

**EXHIBIT "4"**                                          *Page 34*

amended or supplemented by the parties thereto, in a writing signed by such parties, and in
accordance with the terms thereof, in consultation with the Creditors' Committee and without
further order of the Court, *provided* that, in each case, any such modification, amendment or
supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all
matters arising from or related to the implementation and/or interpretation of this Order.


Dated: New York, New York
      July 21, 2011

                        *s/ James M. Peck*
                        HONORABLE JAMES M. PECK
                        UNITED STATES BANKRUPTCY JUDGE

6

**EXHIBIT "4"**                        *Page 35*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **DEBTORS' NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING SALE PROCEDURES IN CONNECTION WITH PROPOSED SALES OF SUBSTANTIALLY ALL ASSETS OF THE MOVING VOLUNTARY DEBTORS' ESTATES; AND (2) SETTING HEARINGS IN CONNECTION WITH THE APPROVAL OF THE SALES OF THE MOVING VOLUNTARY DEBTORS' ASSETS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRUCE V. COOK IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 25, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 25, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 25, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 25, 2011 | Gretchen Crumpacker | /s/ Gretchen Crumpacker |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#165905-v10-SoCal_Sales_Proc_Mtn.DOC

## NEF SERVICE LIST

- Selia M Acevedo     sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams     jadams@sycr.com
- Raymond H Aver     ray@averlaw.com
- James C Bastian     jbastian@shbllp.com
- Thomas Scott Belden     sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd     fednotice@tclaw.net
- Mark Bradshaw     mbradshaw@shbllp.com
- Gustavo E Bravo     gbravo@smaha.com
- Jeffrey W Broker     jbroker@brokerlaw.biz
- Brendt C Butler     bbutler@mandersonllp.com
- Andrew W Caine     acaine@pszyjw.com
- Carollynn Callari     ccallari@venable.com
- Cathrine M Castaldi     ccastaldi@rusmiliband.com
- Tara Castro Narayanan     tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers     dchambers@jmbm.com
- Shirley Cho     scho@pszjlaw.com
- Vonn Christenson     vrc@paynefears.com
- Brendan P Collins     bpcollins@bhfs.com
- Vincent M Coscino     vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot     pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Jonathan S Dabbieri     dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sulli
  vanhill.com
- Ana Damonte     ana.damonte@pillsburylaw.com
- Vanessa S Davila     vsd@amclaw.com
- Melissa Davis     mdavis@shbllp.com
- Daniel Denny     ddenny@gibsondunn.com
- Caroline Djang     crd@jmbm.com
- Donald T Dunning     ddunning@dunningLaw.com
- Meredith R Edelman     meredith.edelman@dlapiper.com
- Joseph A Eisenberg     jac@jmbm.com
- Lei Lei Wang Ekvall     lekvall@wgllp.com
- Richard W Esterkin     resterkin@morganlewis.com
- Marc C Forsythe     kmurphy@goeforlaw.com
- Alan J Friedman     afriedman@irell.com
- Steven M Garber     steve@smgarberlaw.com
- Christian J Gascou     cgascou@gascouhopkins.com
- Barry S Glaser     bglaser@swjlaw.com
- Robert P Goe     kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg     egoldberg@stutman.com
- Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez     mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith     bkemail@harrisbeach.com
- Matthew Grimshaw     mgrimshaw@rutan.com

- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com,
  pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com

1
- Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
2
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
3
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
4
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
5
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
6
- James S Riley    tgarza@sierrafunds.com
7
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
8
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
9
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
10
- William D Schuster    bills@allieschuster.org
11
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
12
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
13
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
14
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
15
- Cathy Ta    cathy.ta@bbklaw.com,
    Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
16
- David A Tilem    davidtilem@tilemlaw.com,
17
    malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com,
18
    jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
19
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
20
- Jason Wallach    jwallach@gladstonemichel.com
21
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Benjamin M Weiss    bweiss@lansingcompanies.com
22
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
23
- Brett K Wiseman    bwiseman@aalaws.com
24
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

25

26
***SERVED VIA E-MAIL:***

27
- Wells Fargo Equipment Finance, Inc. c/o Richard A. Solomon, Esq.
    richards@sgsslaw.com
28
- AMEC Earth & Environmental c/o Christopher E. Ng, Esq.    crg@gglt.com
- Klassen Corp., Jerry D. Klassen, CEO    jerryk@klassencorp.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Urban Crossroads, Inc., John Kain, President   jkain@urbanxroads.com
- BonTerraConsulting, Tracy Zucker, Controller   tzucker@bonterraconsulting.com
- General Security Services, Inc., c/o Kari A. Keidser, Esq.   kkeidser@tkllp.com
- Wood Rogers c/o J. Scott Alexander, Esq.   salexander@murphyaustin.com
- Bova Contracting Corp. c/o Wayne W. Call, Esq.   wcall@calljensen.com
- Top Grade Construction, Scott Blaine, CFO   scott.blaine@topgradeconstruction.com
- Pinnick, Inc. c/o Law Offices of Dennis D. Burns   dburns3@san.rr.com
- Marques Pipeline, Inc. c/o John W. Busby, Esq.   jwbusby@yahoo.com
- Christopher W. Keegan, Esq.   chris.keegan@kirkland.com
- Sullivan Hill Lewin Rez & Engel, Jonathan S. Dabbieri, Esq.   dabbieri@sullivanhill.com
- Michael Bond   michael.bond@weil.com
- WEC Corporation c/o Gary R. King & Associates   garyk@grklaw.com
- Jt. Provisional Liquidators of Lehman RE Ltd. c/o NBetty M. Shumener, Esq.   bettyshumener@dlapiper.com
- Richard B. Andrade, Andrade & Associates   randrade@aalaws.com
- Tab L. K. Artis   tab@tabartis.com
- Shaaron A. Bangs   sbangs@builderslaw.com
- Brent S. Clemmer   clemmer@sbelawyers.com
- Donald B. Devirian   ddevirian@devshin.com
- Francis T. Donohue   ftd@vetlaw.com
- William R. Hart   whart@hkclaw.com
- Andrew C. Kienle   akienle@hkclaw.com
- Vivian Le   vqtle@yahoo.com
- Mark E. McKane   mmckane@kirkland.com
- Gerald W. Mouzis   gmouzis@mouzislaw.com
- Howard S. Nevins   hnevins@hsmlaw.com
- Richard Pachulski   rpachulski@pszjlaw.com
- Raymond D. Scott   rayscott@earthlink.net
- Joseph L. Strohman   jstrohman@fcoplaw.com
- Theresa C. Tate   ttate@builderslaw.com
- Robert S. Throckmorton   rsthrockmorton@rtilaw.com
- Douglas F. Welebir   dfw@wtw-law.com
- Dina Tasini   dina@tasiniandassociates.com
- Elizabeth A. Walters   eaw@wts-law.com
- William R. Baerg   baerg@mmlawyers.com
- Patricia D. Barrett   lawpdb@gte.net
- Christopher J. Brantingham   chris_brantingham@yahoo.com
- Gene H. Shioda   lawofficeofghs@yahoo.com
- Thomas A. Pistone   tpistone@pbwlaw.com
- Stanley Haren   stan@gillandbaldwin.com
- Christopher Cullen   cmcullen@lanak-hanna.com
- Edward Soto   edward.soto@weil.com
- Gerald N. Sims   jerrys@psdslaw.com
- Securities Exchange Commission   losangeles@sec.gov

*SERVED VIA FACSIMILE:*

- Asphalt Professionals, Inc.  818.996.0280
- Williams+Paddon Architects+Planners, Inc.  209.368.1472
- Placer County Treasurer/Tax Collector  530.889.4123
- Los Angeles County Treasurer/Tax Collector  213.633.5004
- William Bissell  949.719.1158
- J. Patrick Ragan  909.890.4069
- Kimberly A. Soyer  925.299.9608
- Laurie A. Shade  714.834.2359
- Norman A. Filer  714.634.2855
- California Bank & Trust c/o Bryan Cave LLP  949.223.7100
- Union Pacific Railroad Company, Mary Ann Kilgore, Shawn Lanka  402.501.0127
- Ironhouse Sanitary District  510.433.1298
- Internal Revenue Service, Special Procedures/Insolvency  949.360.3446

*SERVED VIA FIRST CLASS MAIL:*

Wayne Lee, 468 Jade Tree Drive, Monterey Park, CA 91754

*SERVED VIA ATTORNEY SERVICE DELIVERY:*

Honorable Erithe A. Smith, U.S. Bankruptcy Court, 411 West Fourth Street #5041, Santa Ana, CA 92701