Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Robert B. Orgel (CA Bar No. 101875)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1300
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Edward Soto (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Counsel for Lehman ALI, Inc. and Lehman Commercial Paper, Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>Jointly Administered Debtors and Debtors-In-Possession.<br><br>Affects:<br>☐ All Debtors<br>☐ Palmdale Hills Property, LLC<br>☑ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☑ SunCal Johannson Ranch, LLC<br>☑ SunCal Summit Valley, LLC<br>☐ SunCal Emerald Meadows LLC<br>☐ SunCal Bickford Ranch, LLC<br>☑ Acton Estates, LLC<br>☑ Seven Brothers LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☑ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☑ SCC Communities LLC<br>☐ North Orange Del Rio Land, LLC<br>☑ Tesoro SF, LLC<br>☐ LB-L-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☐ LB-L-SunCal Northlake, LLC<br>☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☐ SunCal PSV, LLC<br>☐ Delta Coves Venture, LLC<br>☐ SunCal Torrance, LLC<br>☐ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**OPPOSITION OF LEHMAN LENDERS TO DEBTORS' MOTION FOR ORDER (1) APPROVING SALE PROCEDURES IN CONNECTION WITH PROPOSED SALES OF SUBSTANTIALLY ALL ASSETS OF THE MOVING VOLUNTARY DEBTORS' ESTATES; AND (2) SETTING PRELIMINARY AND FINAL HEARING IN CONNECTION WITH THE APPROVAL OF THE SALES OF THE MOVING VOLUNTARY DEBTORS' ASSETS**<br><br>Date:    September 1, 2011<br>Time:    10:30 a.m.<br>Place:    Courtroom 5A |

DOCS_LA:243557.2 52063-001

**TABLE OF CONTENTS**

**Page**

I. THE MOTION WOULD SUPPLANT THE PLAN PROCESS ON THE EVE OF CONFIRMATION, DEPRIVING CREDITORS OF THE ABILITY TO VOTE ON COMPETING PLANS, AND REPLACING COURT-APPROVED DISCLOSURE STATEMENTS WITH A HASTILY ARRANGED, INADEQUATELY DOCUMENTED AND MISLEADINGLY DESCRIBED SALE TO AN INSIDER........2

II. THE MOTION DISENFRANCHISES CREDITORS FROM VOTING ON A PLAN THAT OFFERS BETTER AND QUICKER RECOVERIES THAN THE PROPOSED SALE PROCESS...................................................................................5

    A. The Motion Misrepresents the Distributions to Creditors from a Sale and Fails to Disclose Significant Risks ...................................................................6

        1. The Motion Does Not Disclose That Available Sale Proceeds Will Likely Substitute for Equity Funding Professionals Fees For Other Debtors, At Best Delaying Creditor Distributions and, Perhaps, Precluding Them...................................................................................7

        2. The Motion Does Not Disclose the Risk that Claims Against SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates Might Prove Higher, Denying Creditors 100% Recoveries Based on the Motion's Lower Project Bids...................................................................8

    B. Creditors of SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates Will Lose the Opportunity to Vote for Plans that Contain Substantially Higher Purchase Offers than the Stalking Horse Bids without the Need or Risk of an Auction that May Bring Substantially Lower Values ...........................9

    C. For Acton, SCC Communities, SunCal Summit Valley and Tesoro, Creditors Will Lose the Opportunity to Vote for a Plan that Resolves the Litigation against the Lehman Lenders in Exchange for Certain and Prompt Payments to Creditors.....................................................................................................11

III. EVEN IF THE COURT WERE TO PERMIT A SALE MOTION TO PREEMPT THE PLAN PROCESS, THE MOTION IS DEFICIENT ................................................12

    A. The Absence of an Asset Purchase Agreement Makes it Impossible to Evaluate the Motion...............................................................................................12

    B. The Insider Buyer Should Immediately Establish that Its Own Bid is a Qualified Bid.........................................................................................................14

    C. The Moving Voluntary Debtors Should Not Have Discretion to Determine What Constitutes a "Qualifying Competing Proposal"........................................14

    D. If the Projects are to be Sold, the Moving Voluntary Debtors should Retain a Qualified Professional to Assist in Marketing the Projects and/or Provide Far More Detail of the Critical Marking Efforts Intended ..........................................15

IV. CONCLUSION....................................................................................................16

**TO THE HONORABE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

Lehman ALI, Inc. ("ALI") and Lehman Commercial Paper Inc. ("LCPI") (collectively the "Lehman Lenders") submit the following opposition to the *Debtors' Motion for Order (1) Approving Sale Procedures in Connection with Proposed Sales of Substantially All Assets of the Moving Voluntary Debtors' Estates; and (2) Setting Preliminary and Final Hearing in Connection with the Approval of the Sales of the Moving Voluntary Debtors' Assets* (Docket No. 2617) (the "Motion"), filed by Beaumont Heights, LLC ("SunCal Beaumont"), SunCal Johannson Ranch, LLC ("SunCal Johannson"), SCC Communities, LLC ("SCC Communities"), Tesoro SF, LLC ("Tesoro"), Acton Estates, LLC ("Acton"), SunCal Summit Valley, LLC ("SunCal Summit"), Seven Brothers, LLC ("Seven Brothers") and Kirby Estates, LLC ("Kirby Estates") (collectively, the "Moving Voluntary Debtors").[1]

**I.**

**THE MOTION WOULD SUPPLANT THE PLAN PROCESS ON THE EVE OF CONFIRMATION, DEPRIVING CREDITORS OF THE ABILITY TO VOTE ON COMPETING PLANS, AND REPLACING COURT-APPROVED DISCLOSURE STATEMENTS WITH A HASTILY ARRANGED, INADEQUATELY DOCUMENTED AND MISLEADINGLY DESCRIBED SALE TO AN INSIDER**

For nearly a year, the Moving Voluntary Debtors and their affiliated entities (collectively, the "SunCal Parties") advocated vigorously for stays and other relief intended to keep the plans sponsored by the SunCal Parties (the "SunCal Plans") on a parallel track with the plan sponsored by the Lehman Lenders for the Voluntary Debtors (the "Lehman VD Plan") and the plan sponsored by the Lehman Lenders and their affiliates OVC Holdings LLC, and Northlake Holdings, LLC (collectively, the "Lehman Entities") and the Trustee for the Involuntary Debtors (the "Trustee/Lehman Plan").  Now, after millions of dollars of professional fees and countless hours of the Court's time have been invested in negotiating and preparing and litigating competing plans of reorganization and disclosure statements, the Motion seeks approval of a sale process that would – within days of the October 24, 2011 confirmation

---

[1] Capitalized terms shall of the meaning set forth in the Motion or the pending Plans of the Lehman Lenders unless otherwise stated

hearing – supplant the plans applicable to the eight Moving Voluntary Debtors, and disenfranchise their creditors by eliminating their ability to choose between the Lehman VD Plan and the applicable SunCal Plans. Thus, for the Lehman Entities in reviewing this Motion, the first question is and must be: Why file it and why now?

With seven plans of the SCC Acquisitions, Inc. and the Voluntary Debtors (the "SunCal Plan Proponents") currently pending as to eighteen Debtors and calling for Project sales in six of the Plans as to which the SunCal Plan Proponents have repeatedly claimed that they seek to achieve the highest and best price for the Projects, it would not be surprising for the Debtors to seek to begin implementing a marketing plan now and, although the Lehman Entities might find it premature, even to seek to retain an appropriate professional to assist in that effort. Yet, this Motion for only eight of the Debtors for which plans are pending instead appears only designed to raise what the Moving Voluntary Debtors appear to claim would be free cash. If this would be cash to be raised from these eight Debtors to fund the plan fight, it would be wholly inappropriate and unfair to the creditors of these Debtors for whom pending plans of the Lehman Entities or the SunCal Plan Proponents offer near term distributions.

The Lehman Lenders are particularly concerned that if this hastily conceived motion to sell substantially all the assets of the Moving Voluntary Debtors to Bruce Elieff's brother were consummated prior to confirmation, as the Motion seeks, creditors will lose the ability to accept the Lehman VD Plan, which offers resolution of the Lehman litigation, finality, certain and prompt payment and substantially higher bids for the assets to be sold through the Motion. Under the Motion, presumably, the Lehman Lenders would be permitted to bid, but the opportunity to go directly to Creditors with an offer to settle the expensive, pending litigation would be lost to both their detriment and to the detriment of the Lehman Lenders who desire to present their offer to both receive the Projects and buy peace.

The SunCal Parties' eleventh-hour end run around the substantive and procedural safeguards of the confirmation process should not be permitted. It is contrary to the law and the policy of chapter 11. Instead of the hundreds of pages of explanations and disclosures approved by the Court as adequate information, the Motion proffers a half page term sheet for a sale of

DOCS_LA:243557.2 52063-001

substantially all assets of eight debtors, to be conducted on a tight schedule that is apparently based solely on a desire to conclude the sale before the confirmation hearing. There is no asset purchase agreement, no evidence concerning marketing or justification for the haste, no disclosure concerning the selection of an insider to act as the stalking horse bidder, no evidence of the insider's financial wherewithal, no evidence concerning any need for a sale of substantially all assets outside of a plan, and no evidence concerning the sale conditions that may permit the Motion to be withdrawn.

Furthermore, the terms of sale are vaguely described and partly inconsistent. Those creditors that are not already receiving 100% plus interest under the Lehman VD Plan are left with the risk that the Lehman Entities will ultimately prevail in litigation (regardless of any interlocutory decision on credit bid rights or on partial summary adjudication). Moreover, there is a likelihood – completely undisclosed in the Motion – that the Moving Voluntary Debtors will utilize sale proceeds to pay professional fees of other debtors for purposes of litigation. There is a significant undisclosed risk that risk that such "loans" will not be repaid, and that the creditors who would receive 100% plus interest under the Lehman VD Plan would <u>not</u> receive 100% from any sale conducted pursuant to the Motion. The very fact that the Motion misleadingly represents that the outcome of the sale will be a 100% return to most of their creditors speaks to the need for court-approved disclosure statements. So does the apparent transfer to the buyer in Exhibit 1 of the Term Sheet of all litigation rights of Tesoro and SCC Communities against Lehman ALI and LCPI – the intent or effect of which is not mentioned, much less explained in the Term Sheet or in the Motion. It is impossible to meaningfully evaluate the proposal based on a half-page term sheet, rather than a fully documented asset purchase agreement that makes clear exactly what terms a competing bidder must surpass, and what contracts are to be assumed.

Furthermore, <u>the sales procedures impose a large and unnecessary litigation load prior to confirmation</u>. They require several matters to be prosecuted and decided by the Court prior to the confirmation hearing, including not just the September 23, 2011 summary judgment hearing on avoidance of the Interim Loan guarantees, but a supposed October 3, 2011 hearing on a second, unidentified summary judgment motion that has not even been filed, and briefing and a

4

1  decision on the Lehman Lenders' credit bid rights.  In addition, the Lehman Entities are entitled
2  to discovery on what sale or other alternatives were considered prior to selecting an insider
3  stalking horse – a question on which SunCal has flatly refused to answer discovery.  None of
4  this litigation need be undertaken prior to confirmation.

5  Although the Moving Voluntary Debtors will contend that these arguments are
6  premature at a hearing on sale procedures, they are wrong.  The Court should not approve the
7  sales procedures, which require the setting of an auction followed by a sale hearing, where the
8  very holding of the auction itself and the proposed sales would supplant the voting process on
9  the parties' competing plans that was advocated by the SunCal Parties and approved by the
10 Court, and would disenfranchise creditors from voting on the Lehman VD Plan, for the sole
11 benefit of the Moving Voluntary Debtors' insiders.  It is hard to conceive that this Court would
12 allow the SunCal Parties to preempt confirmation hearings on competing plans with such a
13 poorly documented and described sale proposal, and it should not approve procedures that set
14 this process in motion.

## II.

## THE MOTION DISENFRANCHISES CREDITORS FROM VOTING ON A PLAN THAT OFFERS BETTER AND QUICKER RECOVERIES THAN THE PROPOSED SALE PROCESS

In order to sell substantially all of a debtors' assets outside of a plan of reorganization, it is clear that a debtor must establish an "articulated business justification" for doing so.  *In re Lionel*, 722 F.2d 1063, 1066, 1070 (2d Cir. 1983); *In re WestPoint Stevens, Inc*. 333 B.R. 30, 52 (S.D.N.Y. 2005) ("it is well established that section 363(b) is not to be utilized as a means of avoiding Chapter 11's plan confirmation procedures.").  Debtors oftentimes establish such justifications by showing that the assets are diminishing in value and must be sold prior to a plan process in order to avoid delay that could prejudice creditors.

Here, the Motion is not supported by a shred of evidence that a sale of substantially all assets outside of a plan is needed or justified for any such reason.  To the contrary, the sale would take place on the eve of the October 24 confirmation hearing, in respect of which plans

and disclosure statements have already been disseminated. The Moving Voluntary Debtors do not provide any explanation why what they seek to accomplish cannot be done through their plans, which already provide for the sale of the Projects.  No evidence is presented that time is of the essence with respect to Mr. Elieff's Term Sheet.  The Motion presents only unsupported assertions, based on an incomplete and materially misleading analysis that would not pass muster were it offered in a disclosure statement, that creditors of the Moving Voluntary Debtors will fare better under a sale conducted pursuant to the Motion than they would under the Lehman VD Plan.

**A.    The Motion Misrepresents the Distributions to Creditors from a Sale and Fails to Disclose Significant Risks**

The Motion relies heavily on the argument that the sale procedures will facilitate sales that will result in a 100% distribution to the creditors of the estates of the Moving Voluntary Debtors , except for SunCal Summit where the Debtors expect a 55% distribution.  [Motion, pp. 2-3]   "[T]he successful consummation of the proposed Sales will ensure the feasibility of the Moving Voluntary Debtors' plans and provide 100% distribution to all creditors, with the exception of Summit Valley, which will be a 55% distribution." [Motion at p. 2]  This is in supposed contrast to the Lehman VD Plan, which "provides no more than 50% distribution to any of the Moving Voluntary Debtors' creditors except for a 100% plus interest distribution to SunCal Johannson and SunCal Beaumont."[2]  *Id*.

As described below, the Motion's projection that the sale procedures will generate a 100% return to most creditors is significantly inaccurate and/or materially misleading.

**1.    The Motion Misleadingly Projects a 100% Distribution to Creditors of Tesoro, SCC Communities and Acton**

There are only three debtors (Tesoro, SCC Communities and Acton) for which the Motion promises 100% distributions to creditors and the Lehman VD Plan does not.  But that

---

[2] Besides the inaccuracy of this statement as to the certainty of 100% creditor returns, discussed below, the statement also is wrong as to what the Lehman VD Plan provides. Under the Lehman VD Plan, creditors of Seven Brothers and Kirby Estates are also projected to receive 100% plus interest and those two Debtors, along with SunCal Beaumont and SunCal Johannson are in "Group II" under the Lehman VD Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

representation is inaccurate. Unless Tesoro and SCC Communities prevail in their effort to avoid their guaranty obligation to Lehman ALI, and Acton prevails on its objection to LCPI's claim, their creditors are likely to receive **0%**. The Motion seeks to avoid that result by (1) conditioning the sale by Tesoro and SCC Communities on the outcome of their motion for partial summary judgment, which is to be heard on September 23, 2011, or on the denial of Lehman ALI's right to credit bid, and (2) conditioning the sale of Acton on the outcome of a motion for summary judgment that will be brought on unspecified grounds (which motion has not even been filed but for which Acton has supposedly received an October 3, 2011 hearing date). <u>None of those conditions, however, remove the contingency that Lehman ALI and LCPI will ultimately prevail in the litigation.</u> A representation that a sale pursuant to the Motion will produce a 100% distribution is materially misleading. Only a victory in the litigation can produce such a result. Moreover, the conditions do not remove the certainty that any recovery will not likely occur for years, while the litigation and appeals are prosecuted to conclusion. This very substantial caveat is also unaddressed in the Motion.

**1.    The Motion Does Not Disclose That Available Sale Proceeds Will Likely Substitute for Equity Funding Professionals Fees For Other Debtors, At Best Delaying Creditor Distributions and, Perhaps, Precluding Them**

The Motion does not disclose what the Debtors intend to do with the sale proceeds. Under the SunCal Plans, which now provide for the sales of these assets <u>after</u> confirmation, the SunCal Parties must establish as part of confirmation that their plans are feasible, including a showing that all administrative and priority claims can be paid on the Effective Date, and that they have the ability to fund the litigation against the Lehman Entities. The Voluntary Debtors have acknowledged that available cash from the Voluntary Debtors, themselves, essentially is exhausted. Thus, as the Court is aware, there has been much discussion and debate over the fact that, among the confirmation hurdles for the SunCal Plan Proponents, the insiders or some third party must come up with the money to fund those administrative claims and the litigation, as well as the funding of the supposed "Litco Offer" to buy litigation claims.

Under the Motion, the SunCal Parties would be free to use any unencumbered sale proceeds to pay professionals under the Joint Administration Order[3] authorizing the Debtors to use the free cash in any estate to pay the professional fees in all estates. Although this would reduce the amount of money that the SunCal Plan Proponents must raise to confirm their Plans, for the creditors of the Moving Voluntary Debtors, this would create substantial risk that, instead of the promised 100% payments for all Creditors (except 55% for Creditors of SunCal Summit Valley), instead these creditors would have to wait for payment to hope that the other Debtors would be successful in their litigation against the Lehman Entities. For creditors of the Moving Voluntary Debtors SunCal Johannsonm, SunCal Beaumont, Seven Brothers and Kirby Estates this result is particularly unfair. Their creditors under the pending plans are to receive 100% plus interest. The solicitation letter sought for approval by the SunCal Plan Proponents for SunCal Beaumont and SunCal Johannson expressly touts how quickly those creditors would be paid. Yet, if the Motion were granted, these creditors may end up as involuntary lenders of sale proceeds to other of the Voluntary Debtors, and face the risk of nonpayment of such "loans" and resulting dilution of any recovery.

**2. The Motion Does Not Disclose the Risk that Claims Against SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates Might Prove Higher, Denying Creditors 100% Recoveries Based on the Motion's Lower Project Bids**

Although both the Motion and the Lehman VD Plan project 100% returns for creditors of SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates, the Motion lacks a disclosure statement and is misleading because the Motion doesn't mention that claims against

---

[3] The *Order Granting Debtor's Emergency Motion for Order Authorizing Joint Administration of Chapter 11 Cases* [Docket No. 12] (the "Joint Administration Order") entered on November 19, 2008 provides as follows:

> The joint and several liability of the estates of the Related Debtors for post-petition professional fees and expenses and the consolidated billing of professional fees is hereby authorized as to fees and expenses that relate to, involve, or benefit each Related Debtor. Unless otherwise ordered by the court, a Related Debtor shall not be liable for professional fees and expenses that do not relate to, involve or benefit such Related Debtor.

Joint Administration Order at ¶5.

8
DOCS_LA:243557.2 52063-001

Case 8:08-bk-17206-ES    Doc 2628    Filed 08/30/11    Entered 08/30/11 12:42:33    Desc
Main Document    Page 10 of 20

these Debtors might prove higher than the Motion suggests. In fact, the Lehman Lenders believe that the estimates of claims for some of the relevant estates may be substantially inaccurate, which creates a higher risk that creditors will actually not receive 100% on their claims if the sales occur through the Motion instead of by consummation of the Lehman VD Plan.

For example, the Motion sets forth that the total of all claims against SunCal Beaumont amount to about $770,000 [Motion, p.2]. However, as set forth in the disclosure statement in support of the Lehman VD Plan, at p.44, the claims against SunCal Beaumont actually amount to $1,777,882 (the SunCal estimate omits the existence of post-petition real property taxes). Thus, instead of the 100% return touted in the Motion as a consequence of the stalking horse bid, the <u>Beaumont creditors would receive only about 52% of their claims</u>.

Likewise, the Motion sets forth that the total claims against SunCal Johannson amount to about $586,000, while the disclosure statement in support of the Lehman VD Plan, at p. 44, estimates those claims at about $573,445. However, the SunCal estimate includes $61,000 more in administrative claims than does the Lehman estimate; assuming that SunCal is more familiar with the amount of its professional fees, the Lehman claims estimate should be raised to $634,445, an amount that is greater than what is being offered by the stalking horse bid for SunCal Johannson.

**B.    Creditors of SunCal Beaumont, SunCal Johannson, Seven Brothers and Kirby Estates Will Lose the Opportunity to Vote for Plans that Contain Substantially Higher Purchase Offers than the Stalking Horse Bids without the Need or Risk of an Auction that May Bring Substantially Lower Values**

As set forth above, the Motion is premised upon its argument that sales conducted pursuant to an auction will produce a great result for the creditors, especially in those cases where the Lehman Lenders do not hold liens in the assets. However, the amounts offered for the assets under the Lehman VD Plan is dramatically higher than the stalking horse bids set forth in the Motion, as well as the Moving Voluntary Debtors' own valuations of the assets.

For example, the <u>stalking horse bid for Beaumont is $925,000</u>, which the Moving Voluntary Debtors had valued at $1,020,000 in April 2011 pursuant to the Debtors' valuation

9

1  opinion.[4] Under the Lehman VD Plan, <u>the Lehman Lenders offer $1.8 million</u> as the effective

2  purchase price for Beaumont, which is 76% higher than the Debtors' own valuation.

3  Likewise, the <u>stalking horse bid for Johannson is $625,000</u>, and the Moving Voluntary

4  Debtors have valued such asset at $540,000.[5] Under the Lehman VD Plan, <u>the Lehman Lenders

5  offer $4 million</u> as the effective purchase price for Johannson, which is 740% higher that the

6  Moving Voluntary Debtors' own valuation. The <u>stalking horse bid for the Summit Valley

7  project is $1,160,541</u> (consisting of the assumption of $835,541 of property taxes plus payment

8  of $325,000), and the Moving Voluntary Debtors have valued such asset at $370,000.[6] Under

9  the Lehman VD Plan, <u>the Lehman Lenders offer about $3 million</u> as the effective purchase price

10 <u>just for the Summit Valley Project interests owned by Kirby Estates and Seven Brothers</u>, almost

11 3 times as much as the stalking horse bid, and multiples higher than the Moving Voluntary

12 Debtors' own valuation. In addition, for SunCal Summit Valley's portion of the Summit Valley

13 Project, the Lehman VD Plan proposes that, although the Lehman Lenders' claims are 99.8% of

14 the debt, they would pay an estimated $599,000 to creditors of SunCal Summit Valley.

15 The Moving Voluntary Debtors may respond that even though their requested auction

16 will not produce the kinds of offers set forth in the Lehman VD Plan, it doesn't really matter if

17 the creditors are disenfranchised under the Lehman VD Plan as creditors will get paid 100%

18 under the sales in any event.  However, as already set forth above, it is quite unclear what the

19 creditors will really receive from sales conducted pursuant to the Motion, as the Moving

20 Voluntary Debtors do not disclose in the Motion (1) that their claims' estimates could prove to

21 be low, reducing distributions and making important that the Lehman VD Plan offers much

22 higher amounts for the Projects or (2) whether they intend to use the sales proceeds to pay

23 existing professional fees for other estates and/or continuing costs of litigating with the Lehman

24 Lenders.

25 The point is that under the Lehman VD Plan, for assets upon which the Lehman Lenders

---

[4] See pp. 36-37 of First Amended Disclosure Statement with Respect to Third Amended Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders (hereinafter the "Lehman Lenders' DS")
[5] *Id.*
[6] *Id.*

10
DOCS_LA:243557.2 52063-001

do not hold a direct lien or a claim against the estates, such Plan provides a far greater cushion to creditors with respect to the value that is being given for the assets, and gives creditors of such entities greater assurance that they may obtain 100% in those instances. The creditors should not be disenfranchised of their right to vote for the Lehman VD Plan.

**C.  For Acton, SCC Communities, SunCal Summit Valley and Tesoro, Creditors Will Lose the Opportunity to Vote for a Plan that Resolves the Litigation against the Lehman Lenders in Exchange for Certain and Prompt Payments to Creditors**

As the Court knows, the key feature of the Lehman VD Plan (as well as the Trustee/Lehman Plan) is the resolution of the claims against the Lehman Entities of each debtor whose creditors accept the plan, and of all creditors who accept such plan and accept the settlement offer proposed therein. In return for obtaining ownership of the Projects, the Lehman Entities provide creditors in the relevant estates with specified recoveries depending on whether such creditors are holders of Reliance Claims or simply holders of a general unsecured claim. Holders of Reliance Claims will receive a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Entities believe will be met), and general unsecured creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if the applicable Debtors prevail in the litigation) are offered 5% of their allowed claims contingent on providing a release, but only 1% if they do not provide for a release.

Obviously, the sale of the Projects contemplated by the Motion prior to confirmation would moot the Lehman VD Plan by removing the basis of the settlement. Although the Moving Voluntary Debtors may argue that it really does not matter, due to the conditions of sale that the motions for summary judgment of SCC Communities/Tesoro and Acton Assets are granted, that would be highly inaccurate. For one thing, the conditions as to SCC Communities and Tesoso include an alternative condition that the Court deny Lehman ALI's credit bid rights. Moreover, in no scenario does the satisfaction of either of these sale conditions resolve the Lehman litigation. There is not only a substantial risk that the Lehman Lenders will ultimately prevail, there is, moreover, a certainty that payment will be delayed, likely for years until a

1  judgment becomes final. The Motion also does not address how the unsecured claims of the

2  Lehman Lenders against Summit Valley are resolved prior to the sale of the Summit Valley

3  Project.

4      In all these respects, creditors should not be denied the right to vote to accept a plan that

5  offers finality and certainty and prompt payment of a significant return, on terms similar to those

6  that have been endorsed by the Trustee and the Trustee Debtor Committee as fiduciaries for such

7  creditors.

## III.

## EVEN IF THE COURT WERE TO PERMIT A SALE MOTION TO PREEMPT THE PLAN PROCESS, THE MOTION IS DEFICIENT

11  The Moving Voluntary Debtors should not be permitted to subvert the plan process with

12  a sale motion. But even if the Court were receptive in principle, the Motion should not be

13  approved in its present form.

14  **A.    The Absence of an Asset Purchase Agreement Makes it Impossible to Evaluate the**

15        **Motion**

16  It is traditional in sale procedure motions for the debtor to attach the complete proposed

17  asset purchase agreement ("APA") so that the Court and other constituents can understand what

18  bidders are supposed to bid upon, to evaluate whether the terms of the APA are clear and

19  transparent before the APA is disseminated to potential bidders, and to ensure that there is in

20  fact a real deal, as opposed to an illusory deal with the purported stalking horse bidder.

21  However, instead of attaching an APA, the Motion provides that the sales are to made pursuant

22  to terms and conditions set forth in the half-page Term Sheet attached as Exhibit "2" to the

23  Motion. The Term Sheet arguably does not constitute an enforceable agreement as it does not

24  contain all of the material terms of a typical real estate transaction. It is unclear whether the

25  Moving Voluntary Debtors contemplate that they will even disseminate a proposed APA after

26  the Court grants the Motion; certainly the Moving Voluntary Debtors acquired these assets

27  pursuant to full APAs.

28  The shorthand and imprecise wording of the half page Term Sheet and the inadequate

description in the Motion leaves critical terms uncertain.  The "Description of Proposed Assets to be Sold" attached as Exhibit 1 to the Motion indicates that <u>with respect to sale of the SCC Communities and Tesoro assets to Diamond Valley</u>, but not as to any other Projects or debtors, <u>such sales will not just include the Projects, but will also include any and all interests in those Debtors' avoidance claims, turnover rights, any right to compensation of any kind, and any rights to the Lehman Adversary Proceeding, in the Contract Action, and any and all other claims against Lehman ALI and its affiliates</u>.  Yet, the Lehman Lenders' liens must attach to the proceeds. So, if the Lehman Lenders keep a disputed lien on the proceeds and the buyer gets all litigation rights, WHAT DO CREDITORS GET?  The meaning and import of this provision is uncertain to the Lehman Entities, should be uncertain to creditors, and would be presumably uncertain to any other prospective bidder.

Bidders and creditors should not have to guess if there is a real deal, or what that deal consists of, before submitting an overbid against what may well be an illusory offer.  When the land making up these Projects was purchased, APAs were used consisting each of roughly 20 pages or more.  When the Debtors last proposed to sell Projects to D.E. Shaw, an APA was included. Yet, now, for a sale to an insider, no APA is provided.  The omission of an APA from the Motion is particularly significant because the Moving Voluntary Debtors have incentives to sell their assets on terms that that will provide material benefits to insiders by requiring buyers to use the insiders to develop the projects, and to assume bond obligations that are guaranteed by the insiders.  By omitting an APA from the Motion, the Moving Voluntary Debtors and Diamond Valley are able to obfuscate what their true intentions are with respect to these Projects, and to prevent this Court and the Lehman Lenders from evaluating the real terms of the deal, assuming there is such a deal.  These actions are consistent with the SunCal Parties' flat-out refusal to provide the Lehman Lenders, Trustee or Committees with any documents in response to discovery requests regarding any purchase offers or indications of interest with respect to their assets, on the grounds that such negotiations are confidential and that disclosure at this stage would have a material adverse effect on the SunCal Parties' ability to conclude financing arrangements.

DOCS_LA:243557.2 52063-001

B. **The Insider Buyer Should Immediately Establish that Its Own Bid is a Qualified Bid**

The Motion, at pp.5-6, provides that any competing bid must be established as a Qualifying Competing Proposal, which includes the submission of evidence satisfactory to the Debtors confirming that such bidder has the financial means to acquire the Assets. However, the Motion does not require the insider stalking horse bidder to establish that it is a "qualified" bidder, and does not set forth any evidence that the stalking horse bidder has the financial means to acquire the Assets. Again, this is consistent with the SunCal Parties' recent refusal to provide the Lehman Lenders with any documents in response to discovery requests regarding the funding of the SunCal Plans, which would include the purchase of assets, on the grounds that such negotiations are confidential and that disclosure at this stage would have a material adverse effect on the SunCal Parties' ability to conclude financing arrangements.

No potential bidder, including the Lehman Lenders, should have to bid against a potential "shill" bidder, without the resources to close the contemplated sales. The Motion should not be granted. Still, if it were granted, that should not occur until the stalking horse bidder has established to the Court that it is, itself, a qualified bidder.

C. **The Moving Voluntary Debtors Should Not Have Discretion to Determine What Constitutes a "Qualifying Competing Proposal"**

A competing bidder must provide "evidence satisfactory to the Moving Voluntary Debtors that such bidder has the financial means to acquire....". Given the circumstances described above, including that this is an insider transaction, the Committee also should have the ability to determine whether competing bids are qualified bids, and the Lehman Lenders, as one of the primary parties in interest as well as a potential bidder, should be able to get copies of all evidence that a competing bid is qualified in order to determine whether it is bidding against a real bidder.

In addition, the Motion does not require that competing qualified bids be disseminated to other qualified bidders well prior to the auction. All competing bidders should have access to the other bids in order to ensure that they are bidding on an apples to apples basis.

14

DOCS_LA:243557.2 52063-001

**D.  If the Projects are to be Sold, the Moving Voluntary Debtors should Retain a Qualified Professional to Assist in Marketing the Projects and/or Provide Far More Detail of the Critical Marking Efforts Intended**

The Motion, at p.4, provides that the Moving Voluntary Debtors will do their own marketing of the Assets, which will include sending sale packages "to the real estate brokerage community" and "sending packages to a list of prospects nationally" who may have an interest. Given the nature of these Projects, it would normally be expected that a debtor would employ an appropriate professional firm or broker to assist in marketing and selling such assets in order to obtain the best value from the assets. At minimum, the marketing plan needs to be detailed and extensive. This is the key effort needed to assure that a fair price is achieved and yet the Debtors seek to give this effort short shrift. Although SunCal is a developer, there is nothing in the Motion that discusses its expertise in marketing assets in their present condition, nor does the Motion provide any detail as to whom this "real estate brokerage community" consists, or who will be included in the "list of prospects nationally."

Moreover, the Motion contemplates the sale to an insider of the Debtors, and it is in the interest of the insiders to have the insiders develop the property, and to have a buyer assume the bond obligations that are guaranteed by the insiders. In these circumstances, it is even more critical for an independent broker to market these assets.

DOCS_LA:243557.2 52063-001

## IV.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, Lehman ALI and LCPI respectfully request that the Motion be denied in its entirety, and for such other and further relief as the Court deems appropriate.

Dated: August 30, 2011    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Robert B. Orgel*
Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Robert B. Orgel (CA Bar No. 101875)
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

-and-

Edward Soto (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Counsel for Lehman ALI, Inc. and Lehman Commercial Paper, Inc.

| In re: | CHAPTER 11 |
|---|---|
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, | CASE NUMBER 08-17206-ES |
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***OPPOSITION OF LEHMAN LENDERS TO DEBTORS' MOTION FOR ORDER (1) APPROVING SALE PROCEDURES IN CONNECTION WITH PROPOSED SALES OF SUBSTANTIALLY ALL ASSETS OF THE MOVING VOLUNTARY DEBTORS' ESTATES; AND (2) SETTING PRELIMINARY AND FINAL HEARING IN CONNECTION WITH THE APPROVAL OF THE SALES OF THE MOVING VOLUNTARY DEBTORS' ASSETS*** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___August 30, 2011___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On ___August 30, 2011___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
JUDGE'S COPY [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___August 30, 2011___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J. Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com; jmiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(3) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue – mneue@thelobelfirm.com
(4) Ch. 11 Trustee:
    Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(5) Office of the United States Trustee:
    Michael Hauser - michael.hauser@usdoj.gov
(6) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A. Lyman - klyman@irell.com
(7) Counsel for Trustee Debtors' Committee:
    Lei Lei Wang Ekvall - lekvall@wgllp.com
    Hutchison B. Meltzer - hmeltzer@wgllp.com

(8) Counsel for Joint Provisional Liquidators of Lehman RE Ltd
    Chauncey Cole – chauncey.cole@cwt.com
    Betty Shumener - betty.shumener@dlapiper.com
(9) Counsel for Bond Safeguard & Lexon
    Mark E. Aronson – mea@amclaw.com
    Mark J. Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
(10) Counsel for Fenway Capital LLC
    John E Schreiber - jschreiber@dl.com
    Richard Reinthaler - rreinthaler@dl.com;
(11) Counsel for SunCal Management:
    Ronald Rus – rrus@rusmiliband.com
(12) Debtors (Palmdale Hills Property, LLC and related entities):
    Bruce Cook - bcook@suncal.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez – alfredo.perez@weil.com
Lauren Zerbinopoulos– lauren.zerbinopoulos@weil.com
Erica Rutner – erica.rutner@weil.com
Mark McKane - mark.mckane@kirkland.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 30, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

## I. SERVED BY NEF
**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com
(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com
(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com
(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com
(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net
(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com
(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com
(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz
(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com
(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com
(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com
(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com
(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com
(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com
(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com
(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com
(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com, pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com; stein@sullivanhill.com;vidovich@sullivanhill.com
(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com
(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com
(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com
(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com
(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com
(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com
(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com
(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com
(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang Ekvall & Strok, LLP
lekvall@wgllp.com
(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com
(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com
(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com
(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com
(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com
(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com
(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com
(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com
(40) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com
(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com
(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com
(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com
(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov
(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com
(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com
(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com
(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators of Lehman RE Ltd
jonathan.hoff@cwt.com
(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com
(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com
(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com
(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com
(55) Stephen M Judson for Petitioning Cred The Professional Tree Care Co
sjudson@fablaw.com
(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well & Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com
(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com
(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com
(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com; alevin@kirkland.com
(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                             F 9013-3.1.PROOF.SERVICE

*(62)* Irene L Kiet for Cred BNB Engineering, Inc.
ikiet@hkclaw.com

*(63)* Claude F Kolm for Cred County of Alameda Tax Collector
claude.kolm@acgov.org

*(64)* Mark J Krone for Cred Bond Safeguard Ins Co
mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

*(65)* David B Lally for Def Contracting Engineers, Inc.
davidlallylaw@gmail.com

*(66)* Leib M Lerner for Cred Steiny and Co, Inc.
leib.lerner@alston.com

*(67)* Peter W Lianides for Debtor Palmdale Hills Property, LLC
plianides@winthropcouchot.com, pj@winthropcouchot.com

*(68)* Charles Liu for Cred Villa San Clemente, LLC
cliu@marshackhays.com

*(69)* Charles Liu for Debtor Palmdale Hills Property, LLC
cliu@winthropcouchot.com

*(70)* Kerri A Lyman for Atty Irell & Manella LLP
klyman@irell.com

*(71)* Mariam S Marshall for Cred RGA Environmental, Inc.
mmarshall@marshallramoslaw.com

*(72)* Robert C Martinez for Cred TC Construction Co, Inc
rmartinez@mclex.com

*(73)* Michael D May for Cred R.J. Noble Co.
mdmayesq@verizon.net

*(74)* Hutchison B Meltzer for Cred Com Holding Unsecured Claims
hmeltzer@wgllp.com

*(75)* Krikor J Meshefejian for Int Pty Courtesy NEF
kjm@lnbrb.com

*(76)* Joel S. Miliband for Cred RBF CONSULTING
jmiliband@rusmiliband.com

*(77)* James M Miller for Atty Miller Barondess LLP
jmiller@millerbarondess.com, vgunderson@millerbarondess.com; smiller@millerbarondess.com; mpritikin@millerbarondess.com

*(78)* Louis R Miller for Pltf Palmdale Hills Property, LLC
smiller@millerbarondess.com

*(79)* Craig Millet for Int Pty Doug Champion
cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

*(80)* Randall P Mroczynski for Def Bob McGrann Construction, Inc.
randym@cookseylaw.com

*(81)* Mike D Neue for Atty The Lobel Firm, LLP
mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

*(82)* Robert Nida for Cred Kirk Negrete, Inc
Rnida@castlelawoffice.com

*(83)* Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of Lehman RE Ltd
henry.oh@dlapiper.com, janet.curley@dlapiper.com

*(84)* Sean A Okeefe for Debtor Palmdale Hills Property, LLC
sokeefe@okeefelc.com

*(85)* Scott H Olson for Cred Bethel Island Muni Improvement District
solson@seyfarth.com

*(86)* Robert B Orgel for Cred Lehman ALI, Inc.
rorgel@pszjlaw.com, rorgel@pszjlaw.com

*(87)* Malhar S Pagay for Cred Lehman ALI, Inc.
mpagay@pszjlaw.com, mpagay@pszjlaw.com

*(88)* Ernie Zachary Park for Int Pty Newcomm
ernie.park@bewleylaw.com

*(89)* Daryl G Parker for Cred Lehman ALI, Inc.
dparker@pszjlaw.com

*(90)* Penelope Parmes for Cred EMR Residential Properties LLC
pparmes@rutan.com

*(91)* Robert J Pfister on behalf of Int Pty Courtesy NEF
rpfister@ktbslaw.com

*(92)* Ronald B Pierce for Cred Griffith Co
ronald.pierce@sdma.com

*(93)* Katherine C Piper for Int Pty New Anaverde LLC
kpiper@steptoe.com, smcloughlin@steptoe.com

*(94)* Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
cmartin@pprlaw.net

*(95)* James S Riley for Cred Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

*(96)* Debra Riley for Int Pty City of Palmdale
driley@allenmatkins.com

*(97)* Todd C. Ringstad for Int Pty Courtesy NEF
becky@ringstadlaw.com

*(98)* R Grace Rodriguez for Def O&B Equipment, Inc.
ecf@lorgr.com

*(99)* Martha E Romero for Cred California Taxing Authorities
Romero@mromerolawfirm.com

*(100)* Ronald Rus for Cred SunCal Management, LLC
rrus@rusmiliband.com

*(101)* John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
jschafer@mandersonllp.com

*(102)* John E Schreiber for Def Fenway Capital, LLC
jschreiber@dl.com

*(103)* William D Schuster for Cred HD Supply Construction Supply LTD
bills@allieschuster.org

*(104)* Christopher P Simon for Int Pty Courtesy NEF
csimon@crosslaw.com

*(105)* Gerald N Sims for Int Pty Courtesy NEF
jerrys@psdslaw.com, bonniec@psdslaw.com

*(106)* Wendy W Smith for Cred Castaic Union School District
wendy@bindermalter.com

*(107)* Steven M Speier (TR)
Sspeier@asrmanagement.com, ca85@ecfcbis.com

*(108)* Steven M Speier for Trustee Steven Speier (TR)
Sspeier@Squarmilner.com, ca85@ecfcbis.com

*(109)* Michael St James for Cred MBH Architects, Inc.
ecf@stjames-law.com

*(110)* Michael K Sugar for Off Committee of Unsecured Creds
msugar@irell.com

*(111)* Cathy Ta for Def Hi-Grade Material Co.
cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

*(112)* David A Tilem for Def Southland Pipe Corp
davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com;kmishigian@tilemlaw.com

*(113)* James E Till for Trustee Steven Speier (TR)
jtill@thelobelfirm.com, jmattiace@thelobelfirm.com; pnelson@thelobelfirm.com

*(114)* United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

*(115)* Carol G Unruh for Cred Scott E. McDaniel
cgunruh@sbcglobal.net

*(116)* Annie Verdries for Cred WEC Corp
verdries@lbbslaw.com

*(117)* Jason Wallach for Def Professional Pipeline Contractors, Inc.
jwallach@gladstonemichel.com

*(118)* Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
kim.johnson@kattenlaw.com

*(119)* Benjamin M Weiss for Cred Regal Development LLC
bweiss@lansingcompanies.com

*(120)* Marc J Winthrop for Debtor Palmdale Hills Property, LLC
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

*(121)* David M Wiseblood for Cred Bethel Island Muni Imp District
dwiseblood@seyfarth.com

*(122)* Brett K Wiseman for Cred JF Shea Construction Inc
bwiseman@aalaws.com

*(123)* Dean A Ziehl for Counter-Def LV Pacific Point LLC
dziehl@pszjlaw.com, dziehl@pszjlaw.com

*(124)* Marc A. Zimmerman for Cred Life Church of God in Christ
joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                                          **F 9013-3.1.PROOF.SERVICE**