Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, Suite 1300
Los Angeles, California  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings LLC and OVC Holdings LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>Jointly Administered Debtors and<br>Debtors-In-Possession.<br><br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows, LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☒ Seven Brothers, LLC<br>☒ SJD Partners, Ltd.<br>☒ SJD Development Corp.<br>☒ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☒ LB-L-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☒ LB-L-SunCal Northlake, LLC<br>☒ SunCal Marblehead, LLC<br>☒ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**LEHMAN CREDITORS' FURTHER SUPPLEMENTAL EXHIBIT WITH FURTHER REVISED PLAN SOLICITATION LETTERS**<br><br>Hearing:     August 31, 2011<br>Time:        10:00 a.m.<br>Place:       Courtroom 5A<br>             411 West Fourth Street<br>             Santa Ana, CA 92701 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This *Lehman Creditors' Further Supplemental Exhibit with Further Revised Plan Solicitation Letters* ("Amended Revised Letters' Exhibit") is filed by Lehman Commercial Paper Inc., Lehman ALI, Inc., Northlake Holdings LLC, and OVC Holdings LLC (the "Lehman Creditors").

1.    On August 22, 2011 and August 24, 2011, the Court held hearings to consider, among other things, approval of solicitation letters that the Lehman Creditors seek to send to creditors with respect to the seven pending SunCal Plans and the two plans of the Lehman Creditors and chapter 11 trustee.

2.    At the hearing on August 24, 2011 with respect to the solicitation letters, the Court approved versions of the Lehman Creditors' solicitation letters that were filed with the Court on August 23, 2011 as the *Lehman Creditors' Supplemental Exhibit With Revised Plan Solicitation Letters* ("August 23 Revisions") [Docket #2603], subject to revisions to address the Court's rulings thereupon and non-material changes to be made to adjust for the fact that the letters would be sent in a mailing separate and apart from the mailing of the plans that they concern – which mailing occurred on August 25, 2011.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.    For the convenience of the Court and parties and to facilitate the Court's

identification in its order approving the letters of the form of letters to be approved, each of **Exhibit**

**A** through **Exhibit I** contain a clean and redline of the Lehman Creditors' solicitation letters

reflecting the changes from the August 23 Revisions required by the Court and the non-material

changes made to adjust for the separate mailing of these letters apart from the mailing of the plan. As

well, some ministerial corrections were made.

Dated:    August 30, 2011             PACHULSKI STANG ZIEHL & JONES LLP


                                       */s/ Robert B. Orgel*
                                       Richard M. Pachulski (CA Bar No. 90073)
                                       Dean A. Ziehl (CA Bar No. 84529)
                                       Robert B. Orgel (CA Bar No. 101875)
                                       10100 Santa Monica Blvd., Suite 1300
                                       Los Angeles, CA 90067-4100
                                       Telephone:  (310) 277-6910
                                       Facsimile:  (310) 201-0760

                                       -and-

                                       WEIL, GOTSHAL & MANGES LLP
                                       Edward Soto (admitted *pro hac vice*)
                                       Alfredo R. Perez (admitted *pro hac vice*)
                                       767 Fifth Avenue
                                       New York, NY  10153-0119
                                       Telephone:  (212) 310-8000
                                       Facsimile:  (212) 310-8007

                                       Counsel for Lehman Commercial Paper Inc.,
                                       Lehman ALI, Inc., Northlake Holdings, LLC and
                                       OVC Holdings, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

**EXHIBIT A**

---

### Statement of the Lehman Creditors
### Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:
### (1) <u>SunCal Marblehad, LLC</u>; (2) <u>SunCal Oak Valley, LLC</u>; (3) <u>SunCal Heartland, LLC</u>; (4) <u>Delta Coves Ventures,</u> <u>LLC</u> & (5) <u>SunCal PSV, LLC</u>

---

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

<u>We urge you to **REJECT** the SunCal Plan</u> and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "<u>Trustee/Lehman Plan</u>"). The SunCal Plan and the competing Trustee/Lehman Plan apply to all of SunCal's[4] Group I Trustee Debtors (as identified in the heading at the top of this page).

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan</u>. If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking into account of the preferences of creditors.

*Competing Plan Strategies and Reasons to **REJECT** the SunCal Plan*

---

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects. <u>The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values. As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy your claims</u>. Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation.*** While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. The Lehman Creditors believe that SunCal's own claims will be substantially disallowed. If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify any source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan</u> (including $22.3 million payable to the Lehman Creditors for postpetition expense loans). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("<u>Northlake</u>") and OVC Holdings, LLC. The Lehman Creditors' relevant claims in these cases were filed by various Lehman Creditors other than Northlake.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

**EXHIBIT A**

---

**Statement of the Lehman Creditors**
*Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:*
*(1) <u>SunCal Marblehad, LLC</u>; (2) <u>SunCal Oak Valley, LLC</u>; (3) <u>SunCal Heartland, LLC</u>; (4) <u>Delta Coves Ventures;</u>
<u>LLC</u> & (5) <u>SunCal PSV, LLC</u>*

---

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.) <u>The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets</u>.  Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors.  Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

---

*Special Reasons to REJECT the SunCal Plan for holders of* **Reliance Claims**

---

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement</u>.  SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

---

*Special Reasons to REJECT the SunCal Plan for Holders of* **Mechanic's Lien Claims**

---

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other credtiors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

**EXHIBIT A**

---

### Statement of the Lehman Creditors
### Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:
### (1) *SunCal Marblehad, LLC;* (2) *SunCal Oak Valley, LLC;* (3) *SunCal Heartland, LLC;* (4) *Delta Coves Ventures; LLC* & (5) *SunCal PSV, LLC*

---

*We* ~~urge you to REJECT~~ *believe that you already may have received, under separate cover, a Ballot to vote on* the ~~accompanying~~ *above-referenced* plan *(the "SunCal Plan")* proposed by the ~~SunCal Plan Proponents~~ *Voluntary Debtors*[1] *and SCC Acquisitions, Inc. (the "SunCal Plan"*) *Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "Trustee/Lehman Plan").  The SunCal Plan and the competing Trustee/Lehman Plan apply to all of SunCal's[4] Group I Trustee Debtors (as identified in the heading at the top of this page).

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking into account of the preferences of creditors.

---

*Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan**

---

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

*SunCal*[4] *wants to continue the SunCal/Lehman Litigation* ~~and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement~~.  While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years.  ~~Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer.~~ The Lehman Creditors believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact holders of Reliance Claims.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below).  SunCal also fails to identify any source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $22.3 million payable to the Lehman Creditors for postpetition expense loans).  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("Northlake") and OVC Holdings, LLC. The Lehman Creditors' relevant claims in these cases were filed by various Lehman Creditors other than Northlake.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] ~~"SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).~~

# EXHIBIT A

| |
|---|
| ***Statement of the Lehman Creditors***<br>***Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:***<br>*(1) <u>SunCal Marblehad, LLC</u>; (2) <u>SunCal Oak Valley, LLC</u>; (3) <u>SunCal Heartland, LLC</u>; (4) <u>Delta Coves Ventures; LLC</u>*<br>*& (5) <u>SunCal PSV, LLC</u>* |

any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.  There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims<u>, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.)</u>  <u>The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets.</u>  Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

| |
|---|
| *<u>Special Reasons to REJECT the SunCal Plan for holders of</u> **Reliance Claims** |

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement.</u>  SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan.</u>

| |
|---|
| *<u>Special Reasons to REJECT the SunCal Plan for Holders of</u> **Mechanic's Lien Claims** |

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other creditors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt

**EXHIBIT A**

| |
|---|
| ***Statement of the Lehman Creditors***<br>***Urging You to REJECT the SunCal Plan For Group I Trustee Debtors:***<br>*(1) **SunCal Marblehad, LLC**; (2) **SunCal Oak Valley, LLC**; (3) **SunCal Heartland, LLC**; (4) **Delta Coves Ventures; LLC***<br>*& (5) **SunCal PSV, LLC*** |
| payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>. |

Document comparison by Workshare Professional on Friday, August 26, 2011
7:05:15 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242834/8 |
| Description | DOCS_LA-#242834-v8-NO_Letters:_Trustee_Debtors_Group_I_(55%_offer) |
| Document 2 ID | PowerDocs://DOCS_LA/242834/10 |
| Description | DOCS_LA-#242834-v10-NO_Letters:_Trustee_Debtors_Group_I_(55%_offer) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 22 |

# <u>EXHIBIT B</u>

## EXHIBIT B

*Statement of the Lehman Creditors*
*Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:*
**SunCal Oak Knoll, LLC and SunCal Torance, LLC**

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "Trustee/Lehman Plan").  The SunCal Plan and the competing Trustee/Lehman Plan apply to all of SunCal's[4] Group II Trustee Debtors (as identified in the heading at the top of this page).

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.

*Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan**

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy your claims. Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation.***  While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years.  The Lehman Creditors believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact holders of Reliance Claims.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below).  SunCal also fails to identify and source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $16.5 million payable to the Lehman Creditors for postpetition expense loans).  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.  There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. Lehman ALI, for itself or as agent, filed the relevant claims of the Lehman Creditors in these cases.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

## EXHIBIT B

**Statement of the Lehman Creditors
Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:
SunCal Oak Knoll, LLC and SunCal Torance, LLC**

*The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.* To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.)  The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

*Special Reasons to REJECT the SunCal Plan for holders of **Reliance Claims***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement.  SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

*Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other credtiors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

**EXHIBIT B**

---

> **_Statement of the Lehman Creditors_**
> **_Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:_**
> **_SunCal Oak Knoll, LLC and SunCal Torance, LLC_**

---

*We ~~urge you to REJECT~~believe that you already may have received, under separate cover, a Ballot to vote on the ~~accompanying~~above-referenced plan (the "SunCal Plan") proposed by the ~~SunCal Plan Proponents~~Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan") Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge you to vote to ACCEPT the competing plan of the Trustee[2] and Lehman Creditors[3] (the "Trustee/Lehman Plan").  The SunCal Plan and the competing Trustee/Lehman Plan apply to all of SunCal's[4] Group II Trustee Debtors (as identified in the heading at the top of this page).

If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Trustee/Lehman Plan even if you choose to accept the SunCal Plan.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.

---

*Competing Plan Strategies and Reasons to **REJECT the SunCal Plan***

---

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

*SunCal[4] wants to continue the SunCal/Lehman Litigation ~~and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement~~.*  While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years.  ~~Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer.~~ The Lehman Creditors believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact holders of Reliance Claims.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). SunCal also fails to identify and source for funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $16.5 million payable to the Lehman Creditors for postpetition expense loans).  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. Lehman ALI, for itself or as agent, filed the relevant claims of the Lehman Creditors in these cases.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] ~~"SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).~~

---

**EXHIBIT B**

> ### *Statement of the Lehman Creditors*
> ### *Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:*
> ### *SunCal Oak Knoll, LLC and SunCal Torance, LLC*

any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Creditors believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.) The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

<u>*Special Reasons to REJECT the SunCal Plan for holders of* **Reliance Claims**</u>

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at a level, just higher, of 55% of allowed Reliance Claims. Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement.</u> SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights. We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

<u>*Special Reasons to REJECT the SunCal Plan for Holders of* **Mechanic's Lien Claims**</u>

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved. Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other credtiors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Creditors for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have

**EXHIBIT B**

| |
|---|
| ***Statement of the Lehman Creditors*** <br> ***Urging You to REJECT the SunCal Plan For Group II Trustee Debtors:*** <br> ***<u>SunCal Oak Knoll, LLC and SunCal Torance, LLC</u>*** |
| the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>. |

Document comparison by Workshare Professional on Monday, August 29, 2011
3:01:22 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242837/5 |
| Description | DOCS_LA-#242837-v5-NO_Letters:_Trustee_Debtors_Group_II_(50%_offer) |
| Document 2 ID | PowerDocs://DOCS_LA/242837/7 |
| Description | DOCS_LA-#242837-v7-NO_Letters:_Trustee_Debtors_Group_II_(50%_offer) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 22 |

# EXHIBIT C

000018

EXHIBIT C

|  |
| --- |
| ***Statement of the Lehman Creditors*** <br> ***<u>Urging You to REJECT the SunCal Plan For SunCal Century City, LLC</u>*** |

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "<u>SunCal Plan</u>") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "<u>SunCal Plan Proponents</u>") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**<u>We urge you to REJECT the SunCal Plan</u>.**

*Reasons to **REJECT the SunCal Plan***

**$3.5 million in cash** is being held for the Debtor's estate by Steven M. Speier, the chapter 11 trustee ("<u>Trustee</u>"), remaining from his cash sale, during the chapter 11 case, of the Debtor's Project to its secured lender, Danske Bank. Additionally, *the Debtor's estate has actual or potential preference actions*, including a filed action that is part of the wide-ranging litigation of SunCal[2] against the Lehman Creditors[3] (the "<u>SunCal/Lehman Litigation</u>"), miscellaneous smaller potential actions possibly not worth pursuing, and *<u>a potential action against against SunCal for $748,000</u>*.

**$3.5 million in claims** is also the approximate amount of undisputed claims, consisting of $100,000 in postpetition, administrative claims and $3.4 million in prepetition, general, unsecured claims.

**Another $3.6 million in <u>disputed</u> Claims** creates the potential shortfall either due to the expenses of addressing these claims or in the event that they are allowed.

**$2.5 million of the disputed Claims are asserted by SunCal and are alleged to be administrative claims** that, if allowed, would have to be paid first and would dilute substantially payment to non-priority, unsecured creditors.

From the SunCal Disclosure Statement, it appears that there are essentially three tasks to accomplish for SunCal Century City, LLC: (1) resolve objections to disputed Claims, (2) examine and settle or prosecute preference actions, and (3) pay creditors.

Under the SunCal Plan, SunCal would be the Plan Trustee and handle all matters except that your Creditors Committee would handle objections to SunCal's Claims and the potential preference action against SunCal. The SunCal Plan provides for a $300,000 reserve of which $200,000 can be spent by SunCal to pursue the preference action against the Lehman Creditors and to administer the Trust and $100,000 can be spent by your Creditors Committee to object to SunCal's Claims or pursue the preference action against SunCal. Already, your Creditors Committee, according to the SunCal Disclosure Statement, itself, has been prosecuting claims objections. Moreover, the Lehman Creditors know that the Trustee has contacted them to discuss their receipt of the allegedly preferential transfers and an exchange of information is ongoing.

We urge you to permit the unresolved matters to continue to be addressed by your Creditors Committee and Trustee in the chapter 11 case and that you <u>REJECT the SunCal Plan</u>.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and their affiliates (other than the Trustee Debtors) are referred to herein as "SunCal."

[3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. The Lehman Creditors, as targets of a preference claim of this Debtor, are contingent creditors to the extent of any payment they might make.

EXHIBIT C

---

*Statement of the Lehman Creditors*
*Urging You to REJECT the SunCal Plan For SunCal Century City, LLC*

---

We ~~urge you to REJECT~~ believe that you already may have received, under separate cover, a Ballot to vote on the ~~accompanying~~ above-referenced plan (the "**SunCal Plan**") proposed by the *Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES*.

~~You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the SunCal Plan for SunCal Century City, LLC ("SunCal Century City").~~  **We** ~~urge you to~~ **REJECT** the SunCal Plan**.**

---

*Reasons to REJECT the SunCal Plan*

---

**$3.5 million in cash** is being held for the Debtor's estate by Steven M. Speier, the chapter 11 trustee ("Trustee"), remaining from his cash sale, during the chapter 11 case, of the Debtor's Project to its secured lender, Danske Bank. Additionally, *the Debtor's estate has actual or potential preference actions*, including a filed action that is part of the wide-ranging litigation of SunCal[1][2] against the Lehman Creditors[2][3] (the "SunCal/Lehman Litigation"), miscellaneous smaller potential actions possibly not worth pursuing, and *a potential action against against SunCal for $748,000*.

**$3.5 million in claims** is also the approximate amount of undisputed claims, consisting of $100,000 in postpetition, administrative claims and $3.4 million in prepetition, general, unsecured claims.

**Another $3.6 million in disputed Claims** creates the potential shortfall either due to the expenses of addressing these claims or in the event that they are allowed.

**$2.5 million of the disputed Claims are asserted by SunCal and are alleged to be administrative claims** that, if allowed, would have to be paid first and would dilute substantially payment to non-priority, unsecured creditors.

From the SunCal Disclosure Statement, it appears that there are essentially three tasks to accomplish for SunCal Century City, LLC:  (1) resolve objections to disputed Claims, (2) examine and settle or prosecute preference actions, and (3) pay creditors.

Under the SunCal Plan, SunCal would be the Plan Trustee and handle all matters except that your Creditors Committee would handle objections to SunCal's Claims and the potential preference action against SunCal.  The SunCal Plan provides for a $300,000 reserve of which $200,000 can be spent by SunCal ~~suing~~ to pursue the preference action against the Lehman Creditors and to administer the Trust and $100,000 can be spent by your Creditors Committee to object to SunCal's Claims or pursue the preference action against SunCal.  Already, your Creditors Committee, according to the SunCal Disclosure Statement, itself, has been prosecuting claims objections.  Moreover, the Lehman Creditors know that the Trustee has contacted them to discuss their receipt of the allegedly preferential transfers and an exchange of information is ongoing.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[1][2] Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and their affiliates (other than the Trustee Debtors) are referred to herein as "SunCal."

[2][3] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC and OVC Holdings, LLC. The Lehman Creditors, as targets of a preference claim of this Debtor, are contingent creditors to the extent of any payment they might make.

**EXHIBIT C**

| |
|---|
| ***Statement of the Lehman Creditors***<br>***<u>Urging You to REJECT the SunCal Plan For SunCal Century City, LLC</u>*** |
| We urge you to permit the unresolved matters to continue to be addressed by your Creditors Committee and Trustee in the chapter 11 case and that you <u>REJECT the SunCal Plan</u>. |

Document comparison by Workshare Professional on Friday, August 26, 2011
7:08:31 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242838/7 |
| Description | DOCS_LA-#242838-v7-NO_Letter:_Trustee_Debtors_Group_III_Century_City |
| Document 2 ID | PowerDocs://DOCS_LA/242838/9 |
| Description | DOCS_LA-#242838-v9-NO_Letter:_Trustee_Debtors_Group_III_Century_City |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 16 |
| Deletions | 8 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 26 |

# EXHIBIT D

**Exhibit D**

| Statement of the Lehman Lenders<br>*Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:*<br>*Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates* |
| :--- |

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

<u>**We urge you to REJECT the SunCal Plan**</u> and urge creditors of Palmdale Hills, SunCal Bickford and Acton Estates to vote to ACCEPT the competing plan of the Lehman Lenders[2] (the "Lehman Plan"). The SunCal Plan applies to all of SunCal's[3] Group I Voluntary Debtors (as identified in the heading at the top of this page). The competing Lehman Plan applies to such SunCal Group I Voluntary Debtors other than SunCal Emerald. If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan.</u> If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors.

| *Competing Plan Strategies and Reasons to **REJECT** the SunCal Plan* |
| :--- |

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. <u>The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values. As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.</u> Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation.*** While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. SunCal's own claims are likely to be substantially disallowed. If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.</u> Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors (and seek to resolve issues to enable progress as to SunCal Emerald).*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman Commercial Paper Inc, for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

Exhibit D

| |
|---|
| ***Statement of the Lehman Lenders***<br>***Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:***<br>***Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates*** |

priority creditors who do not provide a release receive 1% of their allowed claims.)  The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Lehman Plan all will be met.  Productive negotiations are proceeding with bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors.  Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter.  In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

*Special Reasons to REJECT the SunCal Plan for Holders of all **voting Claims against <u>SunCal Emerald</u>***

**REJECT the SunCal Plan because it is premature, incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**  Four creditors, who assert constructive trust Claims against the Project, objected to the Lehman Lenders' prior proposed plan, arguing any Emerald Meadows Project disposition required first a resolution of their claims.  Recently another lender asserted a lien of over $6 million against portions of this Project (which SunCal values in the entirety at $6.1 million).  Whether or not you would find favorable any resolution of these issues that the Lehman Lenders could devise, that these issues remain today unresolved accounts for the absence of any present plan for this Debtor from the Lehman Lenders.  The SunCal Plan does not resolve these issues, will not help those issues to be resolved faster and will not get creditors paid sooner than if no plan were confirmed at all.  It only affords SunCal veto rights over any later resolution.  If these issues are not to be settled through a plan upon which you vote, they should, instead, be resolved in the chapter 11 case, with its greater transparency and opportunity for creditor input.  REJECT the SunCal Plan.

*Special Reasons to REJECT the SunCal Plan for holders of **Reliance Claims***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**  SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer."  Read the introduction to SunCal's Disclosure Statement.  Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Lenders believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

*Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**
Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Lenders' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Lenders generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Lenders' liens (or, potentially, other creditors' liens) to receive payment. In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

**Exhibit D**

| |
|---|
| *Statement of the Lehman Lenders* <br> *Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:* <br> <u>*Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates*</u> |

*We* ~~urge you to REJECT~~<u>*believe that you already may have received, under separate cover, a Ballot to vote on*</u> *the* ~~accompanying~~<u>*above-referenced*</u> *plan* <u>*(the "SunCal Plan")*</u> *proposed by the* ~~SunCal Plan Proponents~~<u>*Voluntary Debtors*[1] *and SCC Acquisitions, Inc. (the "SunCal Plan"*~~)~~*) Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*</u>

**<u>We urge you to REJECT the SunCal Plan</u>** and urge creditors of Palmdale Hills, SunCal Bickford and Acton Estates to vote to ACCEPT the competing plan of the Lehman Lenders[2] (the "Lehman Plan"). The SunCal Plan applies to all <u>of SunCal's</u>[3] Group I Voluntary Debtors ~~and the~~<u>(as identified in the heading at the top of this page). The</u> competing Lehman Plan applies to ~~all~~<u>such SunCal</u> Group I Voluntary Debtors other than SunCal Emerald. If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

<u>You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan.</u> If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors.

*Competing Plan Strategies and Reasons to* **REJECT the SunCal Plan**

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. <u>The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values. As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims</u>. Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

*SunCal*[3] *wants to continue the SunCal/Lehman Litigation* ~~and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement~~. While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. ~~Moreover, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.~~ SunCal's own claims are likely to be substantially disallowed. If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.</u> Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors (and seek to resolve issues to enable progress as to SunCal Emerald).*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman Commercial Paper Inc, for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] <u>"SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).</u>

[3] ~~"SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).~~

**Exhibit D**

| |
|---|
| *Statement of the Lehman Lenders*<br>*Urging You to REJECT the SunCal Plan For Group I Voluntary Debtors:*<br>*Palmdale Hills, SunCal Bickford, SunCal Emerald and Acton Estates* |

creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.)  The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors.  Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

*Special Reasons to REJECT the SunCal Plan for Holders of all voting Claims against SunCal Emerald*

**REJECT the SunCal Plan because it is premature, incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.** Four creditors, who assert constructive trust Claims against the Project, objected to the Lehman Lenders' prior proposed plan, arguing any Emerald Meadows Project disposition required first a resolution of their claims. Recently another lender asserted a lien of over $6 million against portions of this Project (which SunCal values in the entirety at $6.1 million).  Whether or not you would find favorable any resolution of these issues that the Lehman Lenders could devise, that these issues remain today unresolved accounts for the absence of any present plan for this Debtor from the Lehman Lenders. The SunCal Plan does not resolve these issues, will not help those issues to be resolved faster and will not get creditors paid sooner than if no plan were confirmed at all. It only affords SunCal veto rights over any later resolution.  If these issues are not to be settled through a plan upon which you vote, they should, instead, be resolved in the chapter 11 case, with its greater transparency and opportunity for creditor input. REJECT the SunCal Plan.

*Special Reasons to REJECT the SunCal Plan for holders of Reliance Claims*

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.** SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims and the associated litigation rights of creditors in the SunCal/Lehman Litigation at 55% of allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement.  Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Lenders believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

*Special Reasons to REJECT the SunCal Plan for Holders of Mechanic's Lien Claims*

**REJECT the SunCal Plan under which you face delay and risk of non- payment as well as litigation risk on the priority of your claim.**
Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the net sale proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Lenders' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Lenders generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Lenders' liens (or, potentially, other creditors' liens) to receive payment. In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

Document comparison by Workshare Professional on Friday, August 26, 2011
7:09:59 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242597/12 |
| Description | DOCS_LA-#242597-v12-No_Letter:_Voluntary_Debtors_Group_I_(55%_Offer) |
| Document 2 ID | PowerDocs://DOCS_LA/242597/14 |
| Description | DOCS_LA-#242597-v14-No_Letter:_Voluntary_Debtors_Group_I_(55%_Offer) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 13 |
| Deletions | 12 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 25 |

# EXHIBIT E

000029

EXHIBIT E

---

*Statement of the Lehman Lenders*
***Urging You REJECT the SunCal Plan For Group II Voluntary Debtors:***
<u>***SunCal Beamont and SunCal Johannson***</u>

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "<u>SunCal Plan</u>") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge you to vote to ACCEPT the competing plan proposed by the Lehman Lenders[2] (the "<u>Lehman Plan</u>").

### Competing Plan Strategies

The primary assets of the Group II Voluntary Debtors (as identified in the heading at the top of this page) are their Projects.

**SunCal[3] is *hoping to find*** an offer to purchase the Projects and pay creditors. <u>**Creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims.**</u>  The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million.  Claims against SunCal Beaumont approximate $1.77 million and none of these amounts are owed to the Lehman Lenders. SunCal estimates the Johannson Ranch Project to be worth $540,000.  Claims against SunCal Johannson approximate $573,000 and none of these amounts are owed to the Lehman Lenders. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).)  Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

**The Lehman Lenders have *made* a funded offer to receive the Projects for a prompt payment to creditors.[4]  <u>Creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.</u>** The Lehman Lenders hold a pledge of the equity ownership interests of the Debtors and have filed the Lehman Plan to protect their rights to the equity in the Projects.  Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the Projects at prices substantially in excess of SunCal's estimated values.  The Lehman Lenders have offered **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate*), which offer exceeds the $1.77 million of estimated debt.  The Lehman Lenders have offered **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate*), which offer is substantially in excess of the $573,000 of estimated debt. <u>Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%.</u>

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] Secured trust deed creditors on abandoned parcels must look to their collateral.

EXHIBIT E

| **Your Options** |
|---|

The SunCal Plan and competing Lehman Plan both apply to all Group II Voluntary Debtors.  If you are given the opportunity to vote to accept or reject more than one plan, you may vote to : (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

| **Reasons to REJECT the SunCal Plan:** |
|---|

**REJECT the SunCal Plan because it is not likely to result in more cash to pay creditors, is speculative, is unfunded and because the Lehman Plan represents a funded offer likely to result in full prompt payment to creditors based on higher values.**  Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed.  Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain such funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan based on Project prices substantially in excess of SunCal's estimated values*.  We urge you to vote to REJECT the SunCal Plan.

| **Reason to Instead ACCEPT the Competing Lehman Plan** |
|---|

***The Lehman Plan is better: it is* funded, more certain, less contingent and will result in prompt payment to creditors.**  Under the Lehman Plan, the Lehman Lenders are paying consideration far in excess of SunCal's value estimates for the Projects, and creditors are projected to be paid 100% of their allowed claims. Current estimates and projections are that the contingencies to the Lehman Plan all will be met.  Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, as set forth above, the SunCal Plan remains contingent, lacking funding and lacking any current purchase offers. We urge you to vote to ACCEPT the Lehman Plan.

EXHIBIT E

---

**Statement of the Lehman Lenders**
*Urging You REJECT the SunCal Plan For Group II Voluntary Debtors:*
**SunCal Beamont and SunCal Johannson**

---

*We* ~~urge you to~~ **REJECT** *believe that you already may have received, under separate cover, a Ballot to vote on* the ~~accompanying~~*above-referenced* plan *(the "SunCal Plan")* proposed by the ~~SunCal Plan Proponents~~*Voluntary Debtors[1]* ~~(the "SunCal Plan")~~*and SCC Acquisitions, Inc. and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*


**We urge you to REJECT the SunCal Plan** and urge you to vote to ACCEPT the competing plan proposed by the Lehman Lenders[2] (the "Lehman Plan").

---

### Competing Plan Strategies

The primary assets of the Group II Voluntary Debtors *(as identified in the heading at the top of this page)* are their Projects.

**SunCal**[3] is *hoping to find* an offer to purchase the Projects and pay creditors. **Creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims.** The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million. Claims against SunCal Beaumont approximate $1.77 million and none of these amounts are owed to the Lehman Lenders. SunCal estimates the Johannson Ranch Project to be worth $540,000. Claims against SunCal Johannson approximate $573,000 and none of these amounts are owed to the Lehman Lenders. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).) Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

**The Lehman Lenders have *made* a funded offer to receive the Projects for a prompt payment to creditors.[4] Creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.** The Lehman Lenders hold a pledge of the equity ownership interests of the Debtors and have filed the Lehman Plan to protect their rights to the equity in the Projects. Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the Projects at prices substantially in excess of SunCal's estimated values. The Lehman Lenders have offered **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate*), which offer exceeds the $1.77 million of estimated debt. The Lehman Lenders have offered **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate*), which offer is substantially in excess of the $573,000 of estimated debt. Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%.

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] Secured trust deed creditors on abandoned parcels must look to their collateral.

**EXHIBIT E**

| |
|---|
| Your Options |
| The SunCal Plan and competing Lehman Plan both apply to all Group II Voluntary Debtors.  If you are given the opportunity to vote to accept or reject more than one plan, you may vote to : (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans. |
| **Reasons to REJECT the SunCal Plan:** |
| **REJECT the SunCal Plan because it is not likely to result in more cash to pay creditors, is speculative, is unfunded and because the Lehman Plan represents a funded offer likely to result in full prompt payment to creditors based on higher values.**  Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed.  Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain such funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan based on Project prices substantially in excess of SunCal's estimated values*.  <u>We urge you to vote to REJECT the SunCal Plan.</u> |
| **Reason to Instead ACCEPT the Competing Lehman Plan** |
| *The Lehman Plan is better: it is* **funded, more certain, less contingent and will result in prompt payment to creditors.**  Under the Lehman Plan, the Lehman Lenders are paying consideration far in excess of SunCal's value estimates for the Projects, and creditors are projected to be paid 100% of their allowed claims. Current estimates and projections are that the contingencies to the Lehman Plan all will be met.  Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, as set forth above, the SunCal Plan remains contingent, lacking funding and lacking any current purchase offers. <u>We urge you to vote to ACCEPT the Lehman Plan</u>. |

000033

Document comparison by Workshare Professional on Friday, August 26, 2011
7:10:54 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242598/6 |
| Description | DOCS_LA-#242598-v6-No_Letter:_Voluntary_Debtors_Group_II_(no_offer;_no_liens) |
| Document 2 ID | PowerDocs://DOCS_LA/242598/9 |
| Description | DOCS_LA-#242598-v9-No_Letter:_Voluntary_Debtors_Group_II_(no_offer;_no_liens) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 8 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 13 |

# **EXHIBIT F**

000035

EXHIBIT F

---

### Statement of the Lehman Lenders
### Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:
### SCC Communities, Del Rio & Tesoro

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") proposed by the Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge creditors of SCC Communities and Tesoro to vote to ACCEPT the competing plan of the Lehman Lenders[2] (the "Lehman Plan").

The SunCal Plan applies to all SunCal's[3] Group III Voluntary Debtors (as identified in the heading at the top of this page) and the competing Lehman Plan applies to all such SunCal Group III Voluntary Debtors other than Del Rio.[4]  If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors.

---

*Competing Plan Strategies and Reasons to **REJECT** the SunCal Plan*

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*

The primary asset of Del Rio is anticipated CFD bond proceeds and of SCC Communities and Tesoro are their Projects.  The Lehman Lenders have liens against these assets that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.  Absent settlement, the SunCal/Lehman Litigation could delay payment to creditors for years and all related appeals could take years to resolve.

*SunCal wants to continue the SunCal/Lehman Litigation.*

While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years.  The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Moreover, SunCal also fails to identify any source for funding needed to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal claims it will fund certain of the required payments itself, nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement (there are known to be over $7.9 million in unsatisfied judgments outstanding against SunCal).  SunCal's Disclosure Statement acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "is not intended to be funded by

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[4] As discussed below, the Lehman Lenders believe any plan for Del Rio is premature due to unresolved open issue.

EXHIBIT F

---

**Statement of the Lehman Lenders**
*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:*
*SCC Communities, Del Rio & Tesoro*

the SunCal Plan Proponents." Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Lenders believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors*** (**and seek to resolve issues to enable progress as to Del Rio**).

To obtain ownership of the Projects, the Lehman Plan identifies the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.) The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

---

*Special Reasons to REJECT the SunCal Plan for Holders of all **voting Claims against Del Rio***

---

**REJECT the SunCal Plan because it is premature and incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**

Del Rio has no Project, only anticipated proceeds from a Communities Facilities District (CFD) bond issuance, to be disbursed to Del Rio upon completion of a sports park. Unpaid creditors seek payment from such proceeds, against which the Lehman Lenders hold a lien. SunCal proposes selling disputed rights to the CFD bond proceeds, subject to the Lehman Lenders' lien, without having included in their Disclosure Statement any description of any offer, including any conditions to such offer, and without having shown that there is a market for these rights or that they have any experience in selling such speculative rights. The SunCal Plan itself does not resolve the open issues over rights to the CFD bond proceeds, will not help to resolve those issues faster and will not get creditors paid sooner than if no plan were confirmed at all. (If someone wants to buy your Claims, they can do so without a Plan.) The SunCal Plan's only accomplishment would be to afford SunCal veto rights over any later resolution of these issues. If the relevant matters are not to be settled (or rights sold) through a disclosed offer in a plan upon which you vote, any settlement offer or sale, instead, should occur during, the chapter 11 case, with its greater transparency and opportunity for creditor input. REJECT the SunCal Plan.

**EXHIBIT F**

---

*Statement of the Lehman Lenders*
*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:*
*SCC Communities, Del Rio & Tesoro*

---

We ~~urge you to REJECT~~ *believe that you already may have received, under separate cover, a Ballot to vote on* the ~~accompanying~~ *above-referenced* plan *(the "SunCal Plan")* proposed by the ~~SunCal Plan Proponents~~ *Voluntary Debtors[1] and SCC Acquisitions, Inc. (the "SunCal Plan") Proponents") and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan** and urge creditors of SCC Communities and Tesoro to vote to ACCEPT the competing plan of the Lehman Lenders[2] (the "Lehman Plan").

The SunCal Plan applies to all SunCal's[3] Group III Voluntary Debtors (as identified in the heading at the top of this page) and the competing Lehman Plan applies to all such SunCal Group ~~II~~III Voluntary Debtors other than Del Rio.[3][4]  If you are given the opportunity to vote to accept or reject more than one plan, you may vote to: (1) accept one plan and reject another; (2) reject both plans; or (3) accept both plans.

You are urged to ACCEPT the Lehman Plan even if you choose to accept the SunCal Plan.  If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm considering the preferences of creditors.

*Competing Plan Strategies and Reasons to **REJECT** the SunCal Plan*

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*

The primary asset of Del Rio is anticipated CFD bond proceeds and of SCC Communities and Tesoro are their Projects.  The Lehman Lenders have liens against these assets that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.  Absent settlement, the SunCal/Lehman Litigation could delay payment to creditors for years and all related appeals could take years to resolve.

***SunCal[4] wants to continue the SunCal/Lehman Litigation ~~and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement~~.***

While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. ~~Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.~~ The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Moreover, SunCal also fails to identify any source for funding needed to continue prosecuting the

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc. Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

[3] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[3][4] As discussed below, the Lehman Lenders believe any plan for Del Rio is premature due to unresolved open issue.

[4] ~~"SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).~~

### EXHIBIT F

| |
|---|
| ***Statement of the Lehman Lenders***<br>***Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:***<br>***SCC Communities, Del Rio & Tesoro*** |

SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal claims it will fund certain of the required payments itself, nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement (there are known to be over $7.9 million in unsatisfied judgments outstanding against SunCal). SunCal's Disclosure Statement acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "is not intended to be funded by the SunCal Plan Proponents." Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years. There are also other defects in the SunCal Plan that the Lehman Lenders believe will prevent it from being confirmed, including sale provisions that benefit SunCal but do not maximize price.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation as to certain Debtors and creditors (and seek to resolve issues to enable progress as to Del Rio).***

To obtain ownership of the Projects, the Lehman Plan identifies the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims., contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.) The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets. Moreover, current projections are that the contingencies to the Lehman Plan will all be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for Holders of all **voting Claims against** **Del Rio*** |

**REJECT the SunCal Plan because it is premature and incomplete and gives SunCal veto rights on settlements critical to whether you ever receive payment.**

Del Rio has no Project, only anticipated proceeds from a Communities Facilities District (CFD) bond issuance, to be disbursed to Del Rio upon completion of a sports park. Unpaid creditors seek payment from such proceeds, against which the Lehman Lenders hold a lien. SunCal proposes selling disputed rights to the CFD bond proceeds, subject to the Lehman Lenders' lien, without having included in their Disclosure Statement any description of any offer, including any conditions to such offer, and without having shown that there is a market for these rights or that they have any experience in selling such speculative rights. The SunCal Plan itself does not resolve the open issues over rights to the CFD bond proceeds, will not help to resolve those issues faster and will not get creditors paid sooner than if no plan were confirmed at all. (If someone wants to buy your Claims, they can do so without a Plan.) The SunCal Plan's only accomplishment would be to afford SunCal veto rights over any later resolution of these issues. If the relevant matters are not to be settled (or rights sold) through a disclosed offer in a plan upon which you vote, any settlement offer or sale, instead, should occur during, the chapter 11 case, with its greater transparency

**EXHIBIT F**

| *Statement of the Lehman Lenders*<br>*Urging You to REJECT the SunCal Plan For Group III Voluntary Debtors:*<br>*__SCC Communities, Del Rio & Tesoro__* |
|---|
| and opportunity for creditor input. <u>REJECT the SunCal Plan</u>. |

000040

Document comparison by Workshare Professional on Friday, August 26, 2011
7:12:28 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242599/10 |
| Description | DOCS_LA-#242599-v10-No_Letter:_Voluntary_Debtors_Group_III_(no_offer;_Lehman_Liens) |
| Document 2 ID | PowerDocs://DOCS_LA/242599/12 |
| Description | DOCS_LA-#242599-v12-No_Letter:_Voluntary_Debtors_Group_III_(no_offer;_Lehman_Liens) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 16 |
| Deletions | 13 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 29 |

# EXHIBIT G

000042

EXHIBIT G

| |
|---|
| **Statement of the Lehman Lenders**<br>**Urging You to REJECT the SunCal Plan For Group IV Voluntary Debtors:**<br>**SJD Partners, Ltd. and SJD Development Corp.** |
| *We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") for SJD Partners, Ltd. ("SJD Partners") and SJD Development Corp. proposed by the Voluntary Debtors[1] and SCC Acquisitions Inc and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*<br><br>**We urge you to REJECT the SunCal Plan.** |
| *Reasons to REJECT the SunCal Plan* |
| *Generating free cash from the Pacific Point Project depends upon resolving the SunCal/Lehman Litigation.* SJD Development Corp. owns interests in SJD Partners. SJD Partners only asset is its claim in the litigation brought by SunCal[2] against the Lehman Lenders[3] (the "SunCal/Lehman Litigation") to set aside the prepetition foreclosure by the Lehman Lenders of the Pacific Point Project, that had been owned by SJD Partners. A first trust deed remains against the Project, for which the related loan is majority owned by Lehman RE, a Bermuda entity in a court receivership, with a minority interest held by the Lehman Lenders. Due to its receivership, Lehman RE and the Lehman Lenders are <u>not</u> under common control.<br><br>*Under the SunCal Plan, unsecured creditors will receive little unless SunCal prevails in the SunCal/Lehman Litigation.* The SunCal Plan's provisions for payments from Litco of 1% to allowed Reliance Claims is hardly material and, in any event, SunCal itself undercuts the notion of attributing any significance to possible Litco payments, especially payments only due once Litco has title to the Project free and clear of liens. Litco is yet to be formed and no one yet has agreed to fund Litco. Moreover, as SunCal has indicated, "at the present time, free and clear title to the Pacific Point Project cannot be obtained absent the consent of Lehman ALI." <u>Read the introduction to SunCal's Disclosure Statement.</u> Additionally, there is nothing set forth about SunCal's own financial wherewithal anywhere in the SunCal Disclosure Statement.<br><br><u>We urge you to REJECT the SunCal Plan.</u> |

---

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[3] The Lehman Lenders are Lehman Commercial Paper Inc. and Lehman ALI, Inc. Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

EXHIBIT G

---

**Statement of the Lehman Lenders**
***Urging You to REJECT the SunCal Plan For Group IV Voluntary Debtors:***
***SJD Partners, Ltd. and SJD Development Corp.***

---

*We* ~~urge you to REJECT the accompanying plan proposed by the SunCal Plan Proponents[†] (the "SunCal Plan").  You are receiving this Statement with the accompanying documents because you are, or may be, a creditor or interested party with respect to the SunCal Plan~~ *believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "SunCal Plan") for SJD Partners, Ltd. ("SJD Partners") and SJD Development Corp. proposed by the Voluntary Debtors[1] and SCC Acquisitions Inc and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to REJECT the SunCal Plan.**

---

*Reasons to **REJECT** the SunCal Plan*

---

*Generating free cash from the Pacific Point Project depends upon resolving the SunCal/Lehman Litigation.*  SJD Development Corp. owns interests in SJD Partners. SJD Partners only asset is its claim in the litigation brought by SunCal[2] against the Lehman Lenders[3] (the "SunCal/Lehman Litigation") to set aside the prepetition foreclosure by the Lehman Lenders of the Pacific Point Project, that had been owned by SJD Partners.  A first trust deed remains against the Project, for which the related loan is majority owned by Lehman RE, a Bermuda entity in a court receivership, with a minority interest held by the Lehman Lenders.  Due to its receivership, Lehman RE and the Lehman Lenders are <u>not</u> under common control.

*Under the SunCal Plan, unsecured creditors will receive little unless SunCal prevails in the SunCal/Lehman Litigation.*  The SunCal Plan's provisions for payments from Litco of 1% to allowed Reliance Claims is hardly material and, in any event, SunCal itself undercuts the notion of attributing any significance to possible Litco payments, especially payments only due once Litco has title to the Project free and clear of liens. Litco is yet to be formed and no one yet has agreed to fund Litco.  Moreover, as SunCal has indicated, "at the present time, free and clear title to the Pacific Point Project cannot be obtained absent the consent of Lehman ALI." <u>Read the introduction to SunCal's Disclosure Statement.</u>  Additionally, there is nothing set forth about SunCal's own financial wherewithal anywhere in the SunCal Disclosure Statement.

~~*If you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement of the SunCal/Lehman Litigation.* The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If it controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Project.  Under the~~

---

[†] ~~Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.~~

[1] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[2] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[3] The Lehman Lenders are Lehman Commercial Paper Inc. and Lehman ALI, Inc.  Lehman ALI, Inc. for itself or as agent, filed the relevant claims of the Lehman Lenders in these cases.

**EXHIBIT G**

***Statement of the Lehman Lenders***
***Urging You to REJECT the SunCal Plan For Group IV Voluntary Debtors:***
***SJD Partners, Ltd. and SJD Development Corp.***

~~SunCal Plan, SunCal is the Plan Trustee and, although you may have the right to object to an eventual settlement, you will not have, as you would if the settlement were provided in the plan, the right to vote upon any eventual settlement.  The Lehman Lenders believe settlement discussions can and should proceed during the pending chapter 11 cases~~ ~~before~~ any plan is confirmed.

We urge you to REJECT the SunCal Plan.

Document comparison by Workshare Professional on Friday, August 26, 2011
7:13:21 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/242756/11 |
| Description | DOCS_LA-#242756-v11-No_Letter:_Voluntary_Debtor_Group_IV_(SJDs) |
| Document 2 ID | PowerDocs://DOCS_LA/242756/13 |
| Description | DOCS_LA-#242756-v13-No_Letter:_Voluntary_Debtor_Group_IV_(SJDs) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 7 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 12 |

# EXHIBIT H

**EXHIBIT H**

---

### *Statement of the Lehman Creditors Urging You to ACCEPT*
### *the Trustee/Lehman PlanFor Eight Trustee Debtors:*

### *(1) Delta Coves Ventures, LLC; (2) LB-L-SunCal Northlake, LLC;*
### *(3) SunCal Heartland, LLC;   (4) SunCal Marblehead, LLC;*
### *(5) SunCal Oak Knoll, LLC;  (6) SunCal Oak Valley, LLC;*
### *(7) SunCal PSV, LLC;   and  (8) SunCal Torrance, LLC*

---

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "Trustee/Lehman Plan") proposed by the Trustee[1] and the Lehman Creditors[2] and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to vote to ACCEPT Trustee/Lehman Plan.** Please complete and return the Ballot to the Lehman Plan by September 19, 2011. Before voting, please review the Trustee/Lehman Plan and the *First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors Proposed By The Trustee And Lehman Creditors* (the "Trustee/Lehman Disclosure Statement"), which should have accompanied the Trustee/Lehman Plan. You should review the Trustee/Lehman Disclosure Statement in full, perhaps focusing first on its summary, appearing just after its cover pages.

*We also urge you to REJECT the competing plan proposed by the SunCal Plan Proponents[3] (the "SunCal Plan") for, among others, the reasons set forth below.* In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Trustee/Lehman Plan are also referenced, although such reasons are more fully set forth in the Trustee/Lehman Disclosure Statement. If you nonetheless choose to accept the SunCal Plan, you are urged, as you may, to also ACCEPT the Trustee/Lehman Plan. If both competing plans as to a Debtor receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors. *Please note:* The SunCal Plan Proponents have not filed a competing plan for LB-L-SunCal Northlake, LLC and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtor.

---

*Competing Plan Strategies and Reasons to **REJECT the competing SunCal Plan***

---

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.** *Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values. As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), which may take years to resolve, or finds someone to buy your claims.

*SunCal wants to continue the SunCal/Lehman Litigation.* While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. The Lehman Creditors believe that SunCal's own claims will be substantially disallowed. If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact holders of Reliance Claims. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). SunCal also fails to identify any source for funding to prosecute the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan (including $22.3 million payable to the Lehman Creditors for postpetition expense loans). Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some

---

[1] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[2] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("Northlake") and OVC Holdings, LLC.

[3] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

EXHIBIT H

**Statement of the Lehman Creditors Urging You to <u>ACCEPT</u>
the Trustee/Lehman PlanFor Eight Trustee Debtors:**

**(1) Delta Coves Ventures, LLC; (2) LB-L-SunCal Northlake, LLC;
(3) SunCal Heartland, LLC;   (4) SunCal Marblehead, LLC;
(5) SunCal Oak Knoll, LLC;  (6) SunCal Oak Valley, LLC;
(7) SunCal PSV, LLC;   and  (8) SunCal Torrance, LLC**

funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offer such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.) <u>The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets.</u> Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

*Special Reasons to REJECT the competing SunCal Plan for holders of **Reliance Claims***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.** SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims (and the associated litigation rights in the SunCal/Lehman Litigation of the creditors holding Reliance Claims) at a level, just higher, of 55% of the allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement.</u>  SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights.  We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

*Special Reasons to REJECT the competing SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.** SunCal proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other credtiors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the Lehman Creditors' funded offer for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

000049

EXHIBIT H

| ~~LEHMAN CREDITORS' INTRODUCTORY STATEMENT~~ |
|---|

~~You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eight~~ *"Statement of the Lehman Creditors Urging You to ACCEPT the Trustee/Lehman PlanFor Eight* Trustee Debtors*":*[1]

*(1) Delta Coves Ventures, LLC; (2) LB-L-SunCal Northlake, LLC;*
*(3) SunCal Heartland, LLC;   (4) SunCal Marblehead, LLC;*

*(5) SunCal Oak Knoll, LLC;  (6) SunCal Oak Valley, LLC;*
*(7) SunCal PSV, LLC;   and  (8) SunCal Torrance, LLC.*

| *Instructions and Recommendation* |
|---|

*We* ~~urge you~~*believe that you already may have received, under separate cover, a Ballot* to vote ~~to ACCEPT~~*on* the ~~accompanying~~*above-referenced* plan ~~of the~~ *(the ("Trustee*[2]*/Lehman Plan") proposed by the Trustee*[1] and *the* Lehman Creditors*[3] (the "* *and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to vote to ACCEPT Trustee/Lehman Plan**")*.*  ~~If you are believed eligible to vote, a Ballot should be enclosed.~~
**.** Please complete and return ~~it~~the Ballot to the Lehman Plan by September 19, 2011. Before voting, please review the Trustee/Lehman Plan and the ~~accompanying~~ *First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors Proposed By The Trustee And Lehman Creditors* (the "Trustee/Lehman Disclosure Statement"), which ~~you~~should have accompanied the Trustee/Lehman Plan. You should review the Trustee/Lehman Disclosure Statement in full, perhaps focusing first on its summary, appearing just after its cover pages. ~~If you are believed to be eligible to vote, a Ballot should be enclosed. Please complete and return the Ballot as instructed by September 19, 2011.~~

*We also urge* ~~creditors of all Debtors~~you to REJECT the competing ~~plans~~plan proposed by the SunCal Plan Proponents[3] (the "SunCal Plan") for, among others, the reasons set forth below.  In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Trustee/Lehman Plan are also referenced, although such reasons are more fully set forth in the Trustee/Lehman Disclosure Statement.  If you nonetheless choose to accept the SunCal Plan, you are urged, as you may, to also ACCEPT the Trustee/Lehman Plan.  If both competing plans as to a Debtor receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.  *Please note:*  The SunCal Plan Proponents have not filed a competing plan for LB-L-SunCal Northlake, LLC and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtor.

| *Competing Plan Strategies and Reasons to REJECT the competing SunCal Plan* |
|---|

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Trustee/Lehman Plan.** *Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects. The Lehman Creditors have liens against the Projects that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal prevails in its litigation against the Lehman Creditors (the "SunCal/Lehman Litigation"), which may take years to resolve, or finds someone to buy your claims.

---

~~[1] Capitalized terms not defined herein have the meaning set forth in the definition exhibits to the accompanying Disclosure Statement.~~

[2][1] The Trustee is Steven M. Speier, the duly appointed chapter 11 trustee for the subject Debtors.

[3][2] The Lehman Creditors are Lehman ALI, Inc., Lehman Commercial Paper, Inc., Northlake Holdings, LLC ("Northlake") and OVC Holdings, LLC.

[4][3] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

**EXHIBIT H**

| LEHMAN CREDITORS' INTRODUCTORY STATEMENT |
|---|

~~You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eight~~ *"**Statement of the Lehman Creditors Urging You to ACCEPT the Trustee/Lehman Plan**For Eight* Trustee Debtors~~"~~[1]

*(1) Delta Coves Ventures, LLC; (2) LB-L-SunCal Northlake, LLC;*
*(3) SunCal Heartland, LLC;   (4) SunCal Marblehead, LLC;*

*(5) SunCal Oak Knoll, LLC;  (6) SunCal Oak Valley, LLC;*
*(7) SunCal PSV, LLC;   and  (8) SunCal Torrance, LLC~~.~~*

*SunCal wants to continue the SunCal/Lehman Litigation ~~and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement~~.*  While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years.  ~~Furthermore, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement offer.~~ The Lehman Creditors believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for a settlement with non-monetary terms unimportant to you, such as giving it control over development of the Projects.  Ceding such control to SunCal also would impact holders of Reliance Claims.  The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" and their holders' associated litigation rights against the Lehman Creditors.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below).  <u>SunCal also fails to identify any source for funding to prosecute the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan</u> (including $22.3 million payable to the Lehman Creditors for postpetition expense loans).  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

*The Trustee and Lehman Creditors propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.* To obtain ownership of the Projects, the Lehman Creditors and the Trustee/Lehman Plan identify the only class of creditors holding allowed claims that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("Reliance Claims") and offer such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Creditors believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims~~.~~, contingent on providing a release.  (Unsecured, non-priority creditors who do not provide a release receive 1% of their allowed claims.)  The Lehman Creditors have already obtained approvals to fund the Trustee/Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Trustee/Lehman Plan all will be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Creditors estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Trustee/Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors.  Thus, if the Trustee/Lehman Plan is confirmed, it is expected to become effective shortly thereafter.  In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Creditors' views, unconfirmable.

*Special Reasons to REJECT the competing SunCal Plan for holders of **Reliance Claims***

**REJECT the SunCal Plan because the "Litco Offer" is unfunded, ~~illusory~~ and represents a highly speculative gamble.**  SunCal, after seeing a proposed plan of the Trustee and Lehman Creditors with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims (and the associated litigation rights in the SunCal/Lehman Litigation of the creditors holding Reliance Claims) at a level, just higher, of 55% of the allowed Reliance Claims.  Yet, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and *concedes* that no one yet has agreed to fund Litco or this "Litco Offer."  <u>Read the introduction to SunCal's Disclosure Statement.</u>  SunCal acknowledges that, although it claims to be working to find funding, "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents."  It has not claimed to have any experience in selling litigation rights and concedes, as

EXHIBIT H

---

**LEHMAN CREDITORS' INTRODUCTORY STATEMENT**

~~You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eight~~ *"**Statement of the Lehman Creditors Urging You to ACCEPT the Trustee/Lehman Plan**For Eight Trustee Debtors*":[1]

**(1) Delta Coves Ventures, LLC; (2) LB-L-SunCal Northlake, LLC;**
**(3) SunCal Heartland, LLC;   (4) SunCal Marblehead, LLC;**

**(5) SunCal Oak Knoll, LLC;  (6) SunCal Oak Valley, LLC;**
**(7) SunCal PSV, LLC;   and  (8) SunCal Torrance, LLC.**

---

it must, that "[t]here is no guarantee that such funding will be obtained."  The Lehman Creditors believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights. We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

---

*Special Reasons to REJECT the competing SunCal Plan for Holders of **Mechanic's Lien Claims***

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.** SunCal proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Creditors' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Creditors generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Creditors' liens (or, potentially, other credtiors' liens) to receive payment. In comparison, the Trustee/Lehman Plan offers that either you may waive your security and presently accept the Lehman Creditors' funded offer for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

---

Document comparison by Workshare Professional on Friday, August 26, 2011
7:14:19 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/243055/5 |
| Description | DOCS_LA-#243055-v5-YES_Letter_-_TD_ALL |
| Document 2 ID | PowerDocs://DOCS_LA/243055/7 |
| Description | DOCS_LA-#243055-v7-YES_Letter_-_TD_ALL |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 28 |
| Deletions | 30 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 58 |

# EXHIBIT I

000054

Exhibit I

*Statement of the Lehman Lenders Urging You to* __ACCEPT__ *the Lehman Plan For:*

> A. __Group I Debtors__:  (1) *Acton Estates, LLC; (2) Palmdale Hills Property, LLC;*
> *(3) SCC Communities, LLC; (4) Suncal Bickford Ranch,*
> *LLC; (5) SunCal Communities I, LLC; (6) Tesoro SF, LLC;*
> *(7) Summit Valley, LLC; and*
>
> B. __Group II Debtors__:  (8) *Kirby Estates, LLC; (9) Seven Brothers, LLC;*
> *(10) Suncal Beaumont Heights, LLC; and*
> *(11) Suncal Johannson Ranch, LLC.*

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "*__Lehman Plan__*") proposed by the the Lehman Lenders[1] and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

__We urge you to vote to ACCEPT the Lehman Plan__.  Please complete and return the Ballot to the Lehman Plan by September 19, 2011. Before voting, please review the Lehman Plan and the *First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eleven Voluntary Debtors Proposed By The Lehman VD Lenders* (the "__Lehman Disclosure Statement__"), which should have accompanied the Lehman Plan. You should review the Lehman Disclosure Statement in full, perhaps focusing first on its summary, appearing just after its cover pages.

*We also urge you to* __REJECT the competing plan proposed by the SunCal Plan Proponents[2] (the "SunCal Plan")__ *for, among others, the reasons set forth below.*  In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Lehman Plan are also referenced, although such reasons are more fully set forth in the Lehman Disclosure Statement. __Even if you nonetheless choose to accept the SunCal Plan, you are urged, as you may, to also ACCEPT the Lehman Plan.__ If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.

__*Please note*__:  The SunCal Plan Proponents have not filed a competing plan for (a) __Kirby Estates, LLC__, (b) __Seven Brothers, LLC__, (c) __SunCal Communities I, LLC__ and (d) __SunCal Summit Valley, LLC__ and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtors.[3]

*Competing Plan Strategies and Reasons to REJECT the competing SunCal Plan for* __Creditors of Group I Debtors__

__REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of prompt payment to creditors contained in the competing Lehman Plan.__

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.*  The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. __The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal[4] prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims.__  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

---

[1] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[2] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

[3] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

Exhibit I

***SuncCal wants to continue the SunCal/Lehman Litigation.*** Under the SunCal Plan, holders of non-priority, unsecured claims must depend on SunCal's litigation strategy. While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, claims and appeals could delay payment to creditors for years. The Lehman Lenders believe that SunCal's own claims will be substantially disallowed. If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact certain holders of Reliance Claims to whom the Litco Offer was made. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" against certain Debtors, as described below, and their holders' associated litigation rights against the Lehman Lenders. By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan</u>. Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted. Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds</u> because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of creditors holding allowed claims against the Group I Debtors[5] that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met). Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims, contingent on providing a release. (Under the Lehman Plan, unsecured, non-priority creditors of the Group I Debtors who do not provide a release receive 1% of their allowed claims and creditors of the Group II Debtors[6] are projected to be paid, promptly in full.) <u>The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets</u>. Moreover, current projections are that the contingencies to the Lehman Plan all will be met. Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps. Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

*Special Reasons to REJECT the competing SunCal Plan for holders of*
*Reliance Claims to whom the Litco Offer Applies*

**REJECT the SunCal Plan because the "Litco Offer" is unfunded and represents a highly speculative gamble.**

SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims of creditors of certain Group I Debtors (and the associated litigation rights in the SunCal/Lehman Litigation of such creditors holding such Reliance Claims) at 55% of the allowed Reliance Claims. (The Litco Offer was not made to creditors of SCC Communities or Tesoro.) Yet, despite providing for this supposed Litco Offer in their plan, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer." <u>Read the introduction to SunCal's Disclosure Statement</u>. Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." The Lehman Lenders believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights. We urge you to reject more delay, reject greater uncertainty and <u>REJECT the SunCal Plan</u>.

---

[5] The Group I Debtors are identified in the heading on the top of the first page of this Statement.
[6] The Group II Debtors are identified in the heading on the top of the first page of this Statement.

Exhibit I

| |
|---|
| *Special Reasons to REJECT the SunCal Plan for Holders of* **Mechanic's Lien Claims** |

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved.  Unless the result of the SunCal/Lehman Litigation is that the Lehman Lenders' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Lenders generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Lenders' liens (or, potentially, other creditors' liens) to receive payment. In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

| |
|---|
| *Reasons to REJECT the SunCal Plan for* **Creditors of Group II Debtors SunCal Beaumont and SunCal Johannson** |

The primary assets of SunCal Beaumont and SunCal Johannson are their Projects.  The Lehman Lenders have no liens or claims against these Debtors or their Projects, but hold a pledge of the equity ownership interests in these Debtors.

***SunCal is planning an auction of the Projects and creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims.***  The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million.  Claims against SunCal Beaumont approximate $1.77 million.  SunCal estimates the Johannson Ranch Project to be worth $540,000.  Claims against SunCal Johannson approximate $573,000. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).)  Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

***The Lehman Lenders have made a funded offer to receive the Projects and creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.*** [7]   The Lehman Lenders have filed the Lehman Plan to protect their rights to the equity in the Projects.  Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the Projects at prices substantially in excess of SunCal's estimated values, offering **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate* and exceeding the $1.77 million of estimated debt) and offering **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate* and substantially exceeding the $573,000 of estimated debt). Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%.

***The Lehman Plan and Its Funded Offers are Better.***  Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed.  Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date.  The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain needed funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan, which offer is based on Project prices substantially in excess of SunCal's estimated values*.

We urge you to vote to ACCEPT the Lehman Plan and REJECT the SunCal Plan.

---

[7] Secured trust deed creditors on abandoned parcels must look to their collateral.

Exhibit I

LEHMAN LENDERS' INTRODUCTORY STATEMENT

~~You are receiving this Statement and the accompanying documents because you are, or may be, a creditor or interested party with respect to the enclosed chapter 11 plan for one or more of the following eleven "Voluntary Debtors":[1]~~ ***Statement of the Lehman Lenders Urging You to ACCEPT the Lehman Plan For:***

    **A. <u>Group I Debtors</u>:** *(1) Acton Estates, LLC; (2) Palmdale Hills Property, LLC; (3) SCC Communities, LLC; (4) Suncal Bickford Ranch, LLC; (5) SunCal Communities I, LLC; (6) Tesoro SF, LLC; (7) Summit Valley, LLC; and*

    **B. <u>Group II Debtors</u>:** *(8) Kirby Estates, LLC; (9) Seven Brothers, LLC; (10) Suncal Beaumont Heights, LLC; and (11) Suncal Johannson Ranch, LLC.*

*~~Instructions and Recommendation~~*

*We believe that you already may have received, under separate cover, a Ballot to vote on the above-referenced plan (the "Lehman Plan") proposed by the the Lehman Lenders[1] and filed in the United States Bankruptcy Court for the Central District of California, under case number 8:08-bk-17206-ES.*

**We urge you to vote to ACCEPT the** ~~accompanying plan of the Lehman Lenders[2] (the~~ **"Lehman Plan").** ~~If you are believed eligible to vote, a Ballot should be enclosed.~~ . Please complete and return ~~it~~ the Ballot to the Lehman Plan by September 19, 2011. Before voting, please review the Lehman Plan and the ~~accompanying~~ *First Amended Disclosure Statement With Respect To Third Amended Joint Chapter 11 Plan For Eleven Voluntary Debtors Proposed By The Lehman VD Lenders* (the "Lehman Disclosure Statement"), which ~~you~~ should have accompanied the Lehman Plan. You should review the Lehman Disclosure Statement in full, perhaps focusing first on its summary, appearing just after its cover pages.

*We also urge you to REJECT the competing plan proposed by the SunCal Plan Proponents*[~~3~~2] *(the "SunCal Plan") for, among others, the reasons set forth below.  In discussing below reasons to REJECT the SunCal Plan, reasons to ACCEPT the Lehman Plan are also referenced, although such reasons are more fully set forth in the Lehman Disclosure Statement.* <u>*Even if you nonetheless choose to accept the SunCal Plan, you are urged, as you may, to also ACCEPT the Lehman Plan.*</u> *If both competing plans receive sufficient votes and meet other confirmation standards, the Court will select which plan to confirm taking account of the preferences of creditors.*

**<u>*Please note*</u>**:  *The SunCal Plan Proponents have not filed a competing plan for (a) <u>Kirby Estates, LLC</u>, (b) <u>Seven Brothers, LLC</u>, (c) <u>SunCal Communities I, LLC</u> and (d) <u>SunCal Summit Valley, LLC</u> and, thus, the discussion herein of reasons to REJECT the SunCal Plan are inapplicable to the creditors of such Debtors.*[3]

*Competing Plan Strategies and Reasons to REJECT the competing SunCal Plan for **Creditors of Group I Debtors***

**REJECT the SunCal Plan because it is unfunded, offers nothing concrete and is inferior to the funded offer of**

---

[1] ~~Capitalized terms not defined herein have the meaning set forth in the definition exhibits to the accompanying Disclosure Statement.~~

[1] The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.

[2] ~~The Lehman Lenders are Lehman ALI, Inc. and Lehman Commercial Paper Inc.~~

[~~3~~2] The SunCal Plan Proponents are the Voluntary Debtors and SCC Acquisitions, Inc.

[3] Capitalized terms not defined herein have the meanings set forth in the SunCal Plan.

Exhibit I

| |
|---|
| ~~LEHMAN LENDERS' INTRODUCTORY STATEMENT~~ |

**prompt payment to creditors contained in the competing Lehman Plan.**

*Generating free cash from the Projects depends upon resolving the SunCal/Lehman Litigation.* The primary assets of the relevant Debtors are their Projects and material amounts in a bank account. <u>The Lehman Lenders have liens against all such assets that are far in excess of any parties' estimates of the asset values.  As a result, unsecured creditors will likely receive nothing unless SunCal[4] prevails in its litigation against the Lehman Lenders (the "SunCal/Lehman Litigation"), or finds someone to buy your claims</u>.  Absent settlement, the SunCal/Lehman Litigation and all related appeals may take years to resolve.

***SunCal wants to continue the SunCal/Lehman Litigation*** ~~*and the SunCal Plan gives SunCal control of the Projects and a veto right over any future settlement*~~.  Under the SunCal Plan, holders of non-priority, unsecured claims must depend on SunCal's litigation strategy. While we believe we would prevail in the SunCal/Lehman Litigation, even if SunCal were to prevail, litigation and appeals could delay payment to creditors for years. ~~Moreover, if you accept the SunCal Plan, you will give SunCal, whose interests are not the same as yours, a veto right over any future settlement.~~ The Lehman Lenders believe that SunCal's own claims will be substantially disallowed.  If SunCal controls settlement, it could hold out for non-monetary terms unimportant to you, such as giving it control over development of the Projects. Ceding such control to SunCal also would impact certain holders of Reliance Claims to whom the Litco Offer was made. The SunCal Plan describes a supposed "Litco Offer" to purchase "Reliance Claims" against certain Debtors, as described below, and their holders' associated litigation rights against the Lehman Lenders.  By its own admission, SunCal has no funding to make good on that "offer" (as more fully described below). <u>SunCal also fails to identify funding to continue prosecuting the SunCal/Lehman Litigation or make payments required to confirm the SunCal Plan.</u>  Nothing about SunCal's own financial wherewithal is set forth anywhere in the SunCal Disclosure Statement. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted.  Although SunCal indicates that some funding will come from the sale of the Projects, no Project purchase offers have been disclosed and, in any event, <u>SunCal cannot spend the sale proceeds because they must be escrowed until the SunCal/Lehman Litigation is resolved, which may take years.</u>

***The Lehman Lenders propose a funded, prompt cash payment to creditors for conveyance of the Projects and to resolve the SunCal/Lehman Litigation.*** To obtain ownership of the Projects, the Lehman Lenders and the Lehman Plan identify the only class of creditors holding allowed claims <u>against the Group I Debtors[5]</u> that could even theoretically obtain a significant benefit from the SunCal/Lehman Litigation ("<u>Reliance Claims</u>") and offers such creditors a minimum recovery of 40% of such allowed claims (up to 50% depending on certain projections that the Lehman Lenders believe will be met).  Even unsecured, non-priority creditors who do not hold Reliance Claims (and so are unlikely to receive any material recovery even if SunCal prevails in the litigation) are offered 5% of their allowed claims<u>, contingent on providing a release. (Under the Lehman Plan, unsecured, non-priority creditors of the Group I Debtors who do not provide a release receive 1% of their allowed claims and creditors of the Group II Debtors[6] are projected to be paid, promptly in full.)</u>  The Lehman Lenders have already obtained approvals to fund the Lehman Plan from over $2.5 billion in liquid assets.  Moreover, current projections are that the contingencies to the Lehman Plan will all be met.  Productive negotiations are proceeding with both bond issuers as to settlement and the Lehman Lenders estimate that aggregate Claims and payments will not exceed any of the applicable caps.  Your vote to ACCEPT the Lehman Plan will contribute toward meeting the condition for confirmation as to all needed Debtors. Thus, if the Lehman Plan is confirmed, it is expected to become effective shortly thereafter. In contrast, the SunCal Plan remains highly contingent, lacking funding, disclosing no Project purchase offers, and being, in the Lehman Lenders' views, unconfirmable.

| |
|---|
| *Special Reasons to REJECT the competing SunCal Plan for holders of* ***Reliance Claims to whom the*** ~~***Illusory***~~ ***Litco Offer Applies*** |

**REJECT the SunCal Plan because the "Litco Offer" is unfunded**~~**, illusory**~~ **and represents a highly speculative**

---

[4] "SunCal" as used herein means Bruce Elieff, SCC Acquisitions, Inc., SunCal Management, LLC, the Voluntary Debtors and/or their affiliates (other than the Trustee Debtors).

[5] <u>The Group I Debtors are identified in the heading on the top of the first page of this Statement.</u>

[6] <u>The Group II Debtors are identified in the heading on the top of the first page of this Statement.</u>

Exhibit I

| LEHMAN LENDERS' INTRODUCTORY STATEMENT |
| --- |

gamble.

SunCal, after seeing a proposed plan of the Lehman Lenders with a projected 50% offer for Reliance Claims, fixed its supposed "Litco Offer" to purchase Reliance Claims of creditors of certain Group I Debtors (and the associated litigation rights in the SunCal/Lehman Litigation of such creditors holding such Reliance Claims) at 55% of the allowed Reliance Claims. (The Litco Offer was not made to creditors of SCC Communities or Tesoro.) Yet, despite providing for this supposed Litco Offer in their plan, SunCal acknowledges that Litco is an unfunded shell entity that is yet to be formed and concedes that no one yet has agreed to fund Litco or this "Litco Offer." Read the introduction to SunCal's Disclosure Statement. Although SunCal claims to be working to find funding, it acknowledges that "no commitment has yet been obtained for such funding" and it "will not be funded by the SunCal Plan Proponents." It has not claimed to have any experience in selling litigation rights and concedes, as it must, that "[t]here is no guarantee that such funding will be obtained." The Lehman Lenders believe that any experience of SunCal in raising funds for real estate transactions is not relevant to raising funds for the purchase of litigation rights. We urge you to reject more delay, reject greater uncertainty and REJECT the SunCal Plan.

| *Special Reasons to REJECT the SunCal Plan for Holders of **Mechanic's Lien Claims*** |
| --- |

**REJECT the SunCal Plan under which you face delay and risk of non-payment as well as litigation risk on the priority of your claim.**

Although SunCal has disclosed no offers, it proposes to auction the Projects and escrow the Net Sale Proceeds until the SunCal/Lehman Litigation is resolved. Unless the result of the SunCal/Lehman Litigation is that the Lehman Lenders' liens or Claims are disallowed or subordinated to your Claims, because the Lehman Lenders generally contend that their liens are senior to those of holders of mechanic's liens, you would have to establish the seniority of your claims to the Lehman Lenders' liens (or, potentially, other creditors' liens) to receive payment. In comparison, the Lehman Plan offers that either you may waive your security and presently accept the funded offer from the Lehman Lenders for prompt payment as an unsecured creditor or you may retain all of your rights to full payment, payable if you are determined to have the senior lien. We urge you to reject delay, reject greater uncertainty and REJECT the SunCal Plan.

| *Reasons to REJECT the SunCal Plan for **Creditors of Group II Debtors SunCal Beaumont and SunCal Johannson*** |
| --- |

The primary assets of SunCal Beaumont and SunCal Johannson are their Projects. The Lehman Lenders have no liens or claims against these Debtors or their Projects, but hold a pledge of the equity ownership interests in these Debtors.

***SunCal is planning an auction of the Projects and creditors would NOT be paid in full using SunCal's value estimates for the Projects and the Lehman Lenders' estimate of Claims.*** The SunCal Plan proposes an auction. No bids have been disclosed. SunCal estimates the Beaumont Heights Project to be worth $1.02 million. Claims against SunCal Beaumont approximate $1.77 million. SunCal estimates the Johannson Ranch Project to be worth $540,000. Claims against SunCal Johannson approximate $573,000. (*See* the Lehman Lenders' disclosure statement, § 4.2.4(b).) Thus, if SunCal sells the Projects at its April 2011 value estimates, creditors will not be fully paid.

***The Lehman Lenders have made a funded offer to receive the Projects and creditors are projected to be paid, promptly in full under the funded offer of the Lehman Lenders.***[57] The Lehman Lenders have filed the Lehman Plan to protect their rights to the equity in the Projects. Under the Lehman Plan, the Lehman Lenders make a funded offer to purchase the

---

[57] Secured trust deed creditors on abandoned parcels must look to their collateral.

**Exhibit I**

| |
|---|
| <span style="color:red">LEHMAN LENDERS' INTRODUCTORY STATEMENT</span> |

Projects at prices substantially in excess of SunCal's estimated values, offering **$1.8 million** as the effective purchase price for the Beaumont Heights Project (*76% higher than SunCal's value estimate* and exceeding the $1.77 million of estimated debt) and offering **$4 million** for the Johannson Ranch Project (*740% higher than SunCal's value estimate* and substantially exceeding the $573,000 of estimated debt). <u>Thus, under the funded, Lehman Plan, creditors are projected to be paid 100%.</u>

***The Lehman Plan and Its Funded Offers are Better.*** Although SunCal is *hoping to find* an offer to purchase the Projects, the SunCal Plan promises nothing. It provides for an auction, but no offers have been disclosed. Moreover, the SunCal Plan is unfunded and must depend on sales proceeds being available from escrows by the SunCal Plan's effective date. The cash resources that SunCal utilized during the chapter 11 cases are essentially exhausted and SunCal has not shown that it has or where it would obtain needed funds. On the other hand, *the Lehman Lenders have approval to pay, from over $2.5 billion in liquid assets, the funded offer for prompt payment to creditors contained in the Lehman Plan, which offer is based on Project prices substantially in excess of SunCal's estimated values.*

<u>We urge you to vote to ACCEPT the Lehman Plan and REJECT the SunCal Plan</u>.

Document comparison by Workshare Professional on Friday, August 26, 2011
7:16:05 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/243052/5 |
| Description | DOCS_LA-#243052-v5-YES_Letter_-_VD_-_ALL |
| Document 2 ID | PowerDocs://DOCS_LA/243052/7 |
| Description | DOCS_LA-#243052-v7-YES_Letter_-_VD_-_ALL |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 21 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 44 |

In re: Case 8:08-bk-17206-ES   Doc 2631   Filed 08/30/11   Entered 08/30/11 13:50:32   Desc
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS.   Main Document   Page 63 of 65
Debtor(s).

CHAPTER 11
CASE NUMBER 08-17206-ES

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **LEHMAN CREDITORS' FURTHER SUPPLEMENTAL EXHIBIT WITH FURTHER REVISED PLAN SOLICITATION LETTERS** will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____August 30, 2011_____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____August 30, 2011_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
JUDGE'S COPY [Overnight Delivery]
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____August 30, 2011_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

(1) Gen'l Counsel for Voluntary Debtors:
   Paul Couchot - pcouchot@winthropcouchot.com
   Marc J. Winthrop - pj@winthropcouchot.com
   Paul Lianides - plianides@winthropcouchot.com
(2) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
   Louis Miller - smiller@millerbarondess.com; jmiller@millerbarondess.com
   Martin Pritikin – mpritikin@millerbarondess.com
(3) Gen'l Counsel for Ch. 11 Trustee (Speier):
   William Lobel - wlobel@thelobelfirm.com
   Mike Neue – mneue@thelobelfirm.com
(4) Ch. 11 Trustee:
   Steven N. Speier - sspeier@asrmanagement.com; ca85@ecfcbis.com
(5) Office of the United States Trustee:
   Michael Hauser - michael.hauser@usdoj.gov
(6) Counsel for Voluntary Debtors' Committee:
   Alan Friedman - afriedman@irell.com
   Kerri A. Lyman - klyman@irell.com
(7) Counsel for Trustee Debtors' Committee:
   Lei Lei Wang Ekvall - lekvall@wgllp.com
   Hutchison B. Meltzer - hmeltzer@wgllp.com

(8) Counsel for Joint Provisional Liquidators of Lehman RE Ltd
   Chauncey Cole – chauncey.cole@cwt.com
   Betty Shumener - betty.shumener@dlapiper.com
(9) Counsel for Bond Safeguard & Lexon
   Mark E. Aronson – mea@amclaw.com
   Mark J. Krone - mk@amclaw.com, crs@amclaw.com; amc@amclaw.com
(10) Counsel for Fenway Capital LLC
   John E Schreiber - jschreiber@dl.com
   Richard Reinthaler - rreinthaler@dl.com;
(11) Counsel for SunCal Management:
   Ronald Rus – rrus@rusmiliband.com
(12) Debtors (Palmdale Hills Property, LLC and related entities):
   Bruce Cook - bcook@suncal.com

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Alfredo R. Perez - alfredo.perez@weil.com
Lauren Zerbinopoulos– lauren.zerbinopoulos@weil.com
Erica Rutner - erica.rutner@weil.com
Mark McKane - mark.mckane@kirkland.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 30, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

**I. SERVED BY NEF**

**8:08-bk-17206-ES Notice will be electronically mailed to:**

(1) Selia M Acevedo for Atty Miller Barondess LLP
sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

(2) Joseph M Adams for Def The City of San Juan Capistrano
jadams@sycr.com

(3) Raymond H Aver for Debtor Palmdale Hills Property, LLC
ray@averlaw.com

(4) James C Bastian for Cred ARB, Inc.
jbastian@shbllp.com

(5) Thomas Scott Belden for Def Zim Industries, Inc. dba Bakersfield
Well & Pump
sbelden@kleinlaw.com, ecf@kleinlaw.com

(6) John A Boyd for Int Pty Oliphant Golf Inc
fednotice@tclaw.net

(7) Mark Bradshaw for Int Pty Courtesy NEF
mbradshaw@shbllp.com

(8) Gustavo E Bravo for Cred Oliphant Golf, Inc.
gbravo@smaha.com

(9) Jeffrey W Broker for Cred Bond Safeguard Ins Co
jbroker@brokerlaw.biz

(10) Brendt C Butler for Cred EMR Residential Properties LLC
BButler@mandersonllp.com

(11) Andrew W Caine for Cred Lehman ALI, Inc.
acaine@pszyjw.com

(12) Carollynn Callari for Cred Danske Bank A/S London Branch
ccallari@venable.com

(13) Cathrine M Castaldi for Cred SunCal Management, LLC
ccastaldi@rusmiliband.com

(14) Tara Castro Narayanan for Int Pty Courtesy NEF
tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

(15) Dan E Chambers for Cred EMR Residential Properties LLC
dchambers@jmbm.com

(16) Shirley Cho for Cred Lehman ALI, Inc.
scho@pszjlaw.com

(17) Vonn Christenson for Int Pty Courtesy NEF
vrc@paynefears.com

(18) Brendan P Collins for Cred Gray1 CPB, LLC
bpcollins@bhfs.com

(19) Vincent M Coscino for Petitioning Cred CST Environmental Inc
vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

(20) Paul J Couchot for Cred SCC Acquisitions, Inc.
pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com

(21) Jonathan S Dabbieri for Int Pty Courtesy NEF
dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;
stein@sullivanhill.com;vidovich@sullivanhill.com

(22) Ana Damonte for Cred Top Grade Construction, Inc.
ana.damonte@pillsburylaw.com

(23) Vanessa S Davila for Cred Bond Safeguard Ins Co
vsd@amclaw.com

(24) Melissa Davis for Cred City of Orange
mdavis@shbllp.com

(25) Daniel Denny for Int Pty Courtesy NEF
ddenny@gibsondunn.com

(26) Caroline Djang for Cred Lehman ALI, Inc.
crd@jmbm.com

(27) Donald T Dunning for Cred Hertz Equipment Rental Corp
ddunning@dunningLaw.com

(28) Meredith R Edelman on behalf of Interested Party Courtesy NEF
meredith.edelman@dlapiper.com

(29) Joseph A Eisenberg for Cred Lehman ALI, Inc.
jae@jmbm.com

(30) Lei Lei Wang Ekvall for Atty Weiland Golden Smiley Wang
Ekvall & Strok, LLP
lekvall@wgllp.com

(31) Richard W Esterkin for Debtor Palmdale Hills Property, LLC
resterkin@morganlewis.com

(32) Marc C Forsythe for Atty Robert Goe
kmurphy@goeforlaw.com

(33) Alan J Friedman for Atty Irell & Manella LLP
afriedman@irell.com

(34) Steven M Garber for Cred Park West Landscape, Inc
steve@smgarberlaw.com

(35) Christian J Gascou for 3rd Party Pltf Arch Ins Co
cgascou@gascouhopkins.com

(36) Barry S Glaser for Cred County of Los Angeles
bglaser@swjlaw.com

(37) Robert P Goe for Atty Robert Goe
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;mforsythe@goeforlaw.com

(38) Eric D Goldberg for Int Pty Courtesy NEF
egoldberg@stutman.com

(39) Richard H Golubow for Debtor Palmdale Hills Property, LLC
rgolubow@winthropcouchot.com, pj@winthropcouchot.com

(40) Michael J Gomez for Int Pty Central Pacific Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

(41) Kelly C Griffith for Cred Bond Safeguard Ins Co
bkemail@harrisbeach.com

(42) Matthew Grimshaw for Int Pty City Of Torrance
mgrimshaw@rutan.com

(43) Kavita Gupta for Debtor Palmdale Hills Property, LLC
kgupta@winthropcouchot.com

(44) Asa S Hami for Debtor Palmdale Hills Property, LLC
ahami@morganlewis.com

(45) Michael J Hauser for U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

(46) D Edward Hays for Cred Villa San Clemente, LLC
ehays@marshackhays.com

(47) Michael C Heinrichs for Int Pty Courtesy NEF
mheinrichs@omm.com

(48) Harry D. Hochman for Cred Lehman ALI, Inc.
hhochman@pszjlaw.com, hhochman@pszjlaw.com

(49) Jonathan M Hoff for 3rd Party Pltf Jt Prov Liquidators
of Lehman RE Ltd
jonathan.hoff@cwt.com

(50) Nancy Hotchkiss for Cred Murray Smith & Associates Engineering
nhotchkiss@trainorfairbrook.com

(51) Michelle Hribar for Pltf EMR Residential Properties LLC
mhribar@rutan.com

(52) John J Immordino for Cred Arch Ins Co.
john.immordino@wilsonelser.com,
raquel.burgess@wilsonelser.com

(53) Lawrence A Jacobson for Cred BKF Engineers
laj@cohenandjacobson.com

(54) Michael J Joyce for Int Pty Courtesy NEF
mjoyce@crosslaw.com

(55) Stephen M Judson for Petitioning Cred The Professional Tree
Care Co
sjudson@fablaw.com

(56) Kaleb L Judy for Def Zim Industries, Inc. dba Bakersfield Well
& Pump
ecf@kleinlaw.com, kjudy@kleinlaw.com

(57) Steven J Kahn for Cred Lehman ALI, Inc.
skahn@pszyjw.com

(58) Sheri Kanesaka for Cred California Bank & Trust
sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com

(59) David I Katzen for Int Pty Bethel Island Muni Imp District
katzen@ksfirm.com

(60) Christopher W Keegan for Cred SC Master Holdings II LLC
ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;
alevin@kirkland.com

(61) Payam Khodadadi for Debtor Palmdale Hills Property, LLC
pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010    **F 9013-3.1.PROOF.SERVICE**

(62)  Irene L Kiet for Cred BNB Engineering, Inc.
      ikiet@hkclaw.com

(63)  Claude F Kolm for Cred County of Alameda Tax Collector
      claude.kolm@acgov.org

(64)  Mark J Krone for Cred Bond Safeguard Ins Co
      mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

(65)  David B Lally for Def Contracting Engineers, Inc.
      davidlallylaw@gmail.com

(66)  Leib M Lerner for Cred Steiny and Co, Inc.
      leib.lerner@alston.com

(67)  Peter W Lianides for Debtor Palmdale Hills Property, LLC
      plianides@winthropcouchot.com, pj@winthropcouchot.com

(68)  Charles Liu for Cred Villa San Clemente, LLC
      cliu@marshackhays.com

(69)  Charles Liu for Debtor Palmdale Hills Property, LLC
      cliu@winthropcouchot.com

(70)  Kerri A Lyman for Atty Irell & Manella LLP
      klyman@irell.com

(71)  Mariam S Marshall for Cred RGA Environmental, Inc.
      mmarshall@marshallramoslaw.com

(72)  Robert C Martinez for Cred TC Construction Co, Inc
      rmartinez@mclex.com

(73)  Michael D May for Cred R.J. Noble Co.
      mdmayesq@verizon.net

(74)  Hutchison B Meltzer for Cred Com Holding Unsecured Claims
      hmeltzer@wgllp.com

(75)  Krikor J Meshefejian for Int Pty Courtesy NEF
      kjm@lnbrb.com

(76)  Joel S. Miliband for Cred RBF CONSULTING
      jmiliband@rusmiliband.com

(77)  James M Miller for Atty Miller Barondess LLP
      jmiller@millerbarondess.com, vgunderson@millerbarondess.com;
      smiller@millerbarondess.com; mpritikin@millerbarondess.com

(78)  Louis R Miller for Pltf Palmdale Hills Property, LLC
      smiller@millerbarondess.com

(79)  Craig Millet for Int Pty Doug Champion
      cmillet@gibsondunn.com,
      pcrawford@gibsondunn.com;cmillet@gibsondunn.com

(80)  Randall P Mroczynski for Def Bob McGrann Construction, Inc.
      randym@cookseylaw.com

(81)  Mike D Neue for Atty The Lobel Firm, LLP
      mneue@thelobelfirm.com,
      jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

(82)  Robert Nida for Cred Kirk Negrete, Inc
      Rnida@castlelawoffice.com

(83)  Henry H Oh for 3rd Party Pltf Jt Prov Liquidators of
      Lehman RE Ltd
      henry.oh@dlapiper.com, janet.curley@dlapiper.com

(84)  Sean A Okeefe for Debtor Palmdale Hills Property, LLC
      sokeefe@okeefelc.com

(85)  Scott H Olson for Cred Bethel Island Muni Improvement District
      solson@seyfarth.com

(86)  Robert B Orgel for Cred Lehman ALI, Inc.
      rorgel@pszjlaw.com, rorgel@pszjlaw.com

(87)  Malhar S Pagay for Cred Lehman ALI, Inc.
      mpagay@pszjlaw.com, mpagay@pszjlaw.com

(88)  Ernie Zachary Park for Int Pty Newcomm
      ernie.park@bewleylaw.com

(89)  Daryl G Parker for Cred Lehman ALI, Inc.
      dparker@pszjlaw.com

(90)  Penelope Parmes for Cred EMR Residential Properties LLC
      pparmes@rutan.com

(91)  Robert J Pfister on behalf of Int Pty Courtesy NEF
      rpfister@ktbslaw.com

(92)  Ronald B Pierce for Cred Griffith Co
      ronald.pierce@sdma.com

(93)  Katherine C Piper for Int Pty New Anaverde LLC
      kpiper@steptoe.com, smcloughlin@steptoe.com

(94)  Cassandra J Richey for Cred Patricia I Volkerts, as Trustee, et al
      cmartin@pprlaw.net

(95)  James S Riley for Cred Sierra Liquidity Fund, LLC
      tgarza@sierrafunds.com

(96)  Debra Riley for Int Pty City of Palmdale
      driley@allenmatkins.com

(97)  Todd C. Ringstad for Int Pty Courtesy NEF
      becky@ringstadlaw.com

(98)  R Grace Rodriguez for Def O&B Equipment, Inc.
      ecf@lorgr.com

(99)  Martha E Romero for Cred California Taxing Authorities
      Romero@mromerolawfirm.com

(100) Ronald Rus for Cred SunCal Management, LLC
      rrus@rusmiliband.com

(101) John P Schafer for Cred LB/L-DUC III Bethel Island, LLC
      jschafer@mandersonllp.com

(102) John E Schreiber for Def Fenway Capital, LLC
      jschreiber@dl.com

(103) William D Schuster for Cred HD Supply Construction Supply LTD
      bills@allieschuster.org

(104) Christopher P Simon for Int Pty Courtesy NEF
      csimon@crosslaw.com

(105) Gerald N Sims for Int Pty Courtesy NEF
      jerrys@psdslaw.com, bonniec@psdslaw.com

(106) Wendy W Smith for Cred Castaic Union School District
      wendy@bindermalter.com

(107) Steven M Speier (TR)
      Sspeier@asrmanagement.com, ca85@ecfcbis.com

(108) Steven M Speier for Trustee Steven Speier (TR)
      Sspeier@Squarmilner.com, ca85@ecfcbis.com

(109) Michael St James for Cred MBH Architects, Inc.
      ecf@stjames-law.com

(110) Michael K Sugar for Off Committee of Unsecured Creds
      msugar@irell.com

(111) Cathy Ta for Def Hi-Grade Material Co.
      cathy.ta@bbklaw.com,
      Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com

(112) David A Tilem for Def Southland Pipe Corp
      davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;
      dianachau@tilemlaw.com;kmishigian@tilemlaw.com

(113) James E Till for Trustee Steven Speier (TR)
      jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;
      pnelson@thelobelfirm.com

(114) United States Trustee (SA)
      ustpregion16.sa.ecf@usdoj.gov

(115) Carol G Unruh for Cred Scott E. McDaniel
      cgunruh@sbcglobal.net

(116) Annie Verdries for Cred WEC Corp
      verdries@lbbslaw.com

(117) Jason Wallach for Def Professional Pipeline Contractors, Inc.
      jwallach@gladstonemichel.com

(118) Joshua D Wayser for Other Professional D. E. Shaw & Co., L.P.
      kim.johnson@kattenlaw.com

(119) Benjamin M Weiss for Cred Regal Development LLC
      bweiss@lansingcompanies.com

(120) Marc J Winthrop for Debtor Palmdale Hills Property, LLC
      mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

(121) David M Wiseblood for Cred Bethel Island Muni Imp District
      dwiseblood@seyfarth.com

(122) Brett K Wiseman for Cred JF Shea Construction Inc
      bwiseman@aalaws.com

(123) Dean A Ziehl for Counter-Def LV Pacific Point LLC
      dziehl@pszjlaw.com, dziehl@pszjlaw.com

(124) Marc A. Zimmerman for Cred Life Church of God in Christ
      joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                    F 9013-3.1.PROOF.SERVICE