1 | **WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
2 | Lei Lei Wang Ekvall, State Bar No. 163047
lekvall@wgllp.com
3 | Kyra E. Andrassy, State Bar No. 207959
kandrassy@wgllp.com
4 | Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
5 | 650 Town Center Drive, Suite 950
Costa Mesa, California 92626
6 | Telephone:   (714) 966-1000
Facsimile:    (714) 966-1002
7 |
Counsel for the Joint Committee
8 | of Creditors Holding Unsecured Claims

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12 | In re | Case No. 8:08-bk-17206-ES

13 | PALMDALE HILLS PROPERTY, LLC, and
its Related Debtors, | (Jointly Administered with Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
14 | | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
Jointly Administered Debtors | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
15 | and Debtors-in-Possession. | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
16 | | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
☐ Affects PALMDALE HILLS | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
17 | PROPERTY, LLC, Only | 8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
18 | ☐ Affects SUNCAL BEAUMONT | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
HEIGHTS, LLC, Only | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
19 | ☐ Affects SCC/PALMDALE, Only | 8:08-bk-17470-ES; 8:08-bk-17472-ES; and
8:08-bk-17588-ES)
20 | ☐ Affects SUNCAL JOHANNSON
RANCH, LLC, Only |
21 | ☐ Affects SUNCAL SUMMIT VALLEY, | Chapter 11 Cases
LLC, Only
22 | ☐ Affects SUNCAL EMERALD | **JOINT COMMITTEE OF CREDITORS**
**HOLDING UNSECURED CLAIMS'**
23 | MEADOWS, LLC, Only | **OBJECTION TO THIRD AMENDED**
**CHAPTER 11 PLAN FILED BY SUNCAL**
☐ Affects SUNCAL BICKFORD RANCH, | **PLAN PROPONENTS IN THE CHAPTER**
24 | LLC, Only | **11 CASES OF SUNCAL OAK VALLEY,**
**LLC, SUNCAL HEARTLAND, LLC, DELTA**
25 | ☐ Affects ACTON ESTATES, LLC, Only | **COVES VENTURE LLC, SUNCAL**
**MARBLEHEAD, LLC , AND SUNCAL PSV,**
☐ Affects SEVEN BROTHERS, LLC, Only | **LLC [GROUP I: TRUSTEE DEBTORS]**
26 | ☐ Affects SJD PARTNERS, LTD., Only
27 | ☐ Affects SJD DEVELOPMENT CORP., | **DATE:    October 24, 2011**
Only | **TIME:     9:30 a.m.**
28 | | **CTRM:   5A**

620377_1.DOC

*Left margin vertical text:* Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP  650 Town Center Drive, Suite 950  Costa Mesa, California 92626  Tel 714-966-1000  Fax 714-966-1002

1  ☐ Affects KIRBY ESTATES, LLC, Only

2  ☐ Affects SUNCAL COMMUNITIES I, LLC, Only

3  ☐ Affects SUNCAL COMMUNITIES III, LLC, Only

4
5  ☐ Affects SCC COMMUNITIES, LLC, Only

6  ☐ Affects NORTH ORANGE DEL RIO LAND, LLC, Only

7  ☐ Affects TESORO SF, LLC, Only

8  ☒ Affects LBL-SUNCAL OAK VALLEY, LLC, Only

9  ☒ Affects SUNCAL HEARTLAND, LLC, Only

10 ☐ Affects LBL-SUNCAL NORTHLAKE, LLC, Only

11
12 ☒ Affects SUNCAL MARBLEHEAD, LLC, Only

13 ☐ Affects SUNCAL CENTURY CITY, LLC, Only

14 ☒ Affects SUNCAL PSV, LLC, Only

15 ☒ Affects DELTA COVES VENTURE, LLC, Only

16 ☐ Affects SUNCAL TORRANCE, LLC, Only

17 ☐ Affects SUNCAL OAK KNOLL, LLC, Only

18 ☐ Affects All Debtors

19
20
21
22
23
24
25
26
27
28

620377_1.DOC

OBJECTION TO
THIRD AMENDED PLAN

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................. 3

II.   THE PLAN FAILS TO SATISFY VARIOUS CODE REQUIREMENTS
FOR CONFIRMATION ............................................................................. 5

A.    The Plan Is Not Proposed in Good Faith and Therefore Fails to
Satisfy 11 U.S.C. § 1129(a)(3)........................................................ 5

B.    The Plan Is Not Fair and Equitable Because It Violates the
Absolute Priority Rule Set Forth in 11 U.S.C. § 1129(b)(2)(B) ................... 8

C.    The Plan Is Not Feasible and Therefore Fails to Satisfy 11
U.S.C. § 1129(a)(11) ..................................................................... 9

      1.    There Is No Evidence that Litco Can Perform Its
            Obligations Under the Plan ................................................. 9

      2.    The Success of the Plan Depends Unrealistically on a
            Successful Outcome of the Objection to the Lehman
            Disputed Administrative Loans........................................... 10

      3.    The Plan Unrealistically Depends on the Successful
            Resolution of the Lehman Claim Objections and the
            Lehman Adversary Proceeding, as Well as the
            Successful Sale of the Group I Trustee Debtor Projects
            After Only a Short Marketing Period .................................. 11

D.    The Plan Does Not Satisfy 11 U.S.C. § 1129(a)(5) Because No
Information Has Been Provided About LitCo and the
Appointment of SCC Acquisitions as the Plan Trustee Is Not
Consistent with the Interests of Creditors ................................. 12

E.    The Plan Unfairly Discriminates Between Classes of
Unsecured Claims In Violation of 11 U.S.C. § 1123(a)(4)......................... 13

F.    The Plan Does Not Provide Adequate Means for Its
Implementation and Therefore Violates 11 U.S.C. § 1129(a)(1)............... 13

G.    The Committee Reserves Its Rights with Respect to Whether
Plan Proponents Have Complied with the Solicitation
Requirements of § 1129(a)(2)..................................................... 14

H.    THE PLAN HAS A NUMBER OF OTHER FATAL DEFECTS
THAT RENDER IT UNCONFIRMABLE ........................................ 15

      1.    The Requirement That Class 6 Vote in Favor of the Plan
            In Order to Receive Favorable Treatment Is Inequitable ............... 15

      2.    The Plan Improperly Releases Insiders and Third
            Parties........................................................................... 15

## TABLE OF CONTENTS (cont.)

**Page**

III.    THE COMMITTEE BELIEVES THAT BECAUSE OF THE
CONFUSING MANNER IN WHICH BALLOTS WERE
DISSEMINATED, RELIANCE CLAIMANTS SHOULD BE GIVEN
ANOTHER OPPORTUNITY TO ELECT TO RECEIVE OPTION A
TREATMENT ..................................................................................................... 17

IV.    CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acequia, Inc. v. Clinton (In re Acequia)*, 787 F.2d 1352, 1364-65 (9th Cir.
1986) ..................................................................................................9

*In re Bashas' Inc.*, 437 B.R. 874, 912 (Bankr. D. Az. 2010) ...........................12

*In re Brotby*,
303 B.R. 177 (9th Cir. BAP 2003) ........................................................8

*In re Courtside Village, LLC*,
2003 WL 22764541 at*3
(Bankr. N.D. Cal. 2003) ......................................................................8

*In re Cyr Bros. Meat Packing, Inc.*,
2 B.R. 620 (Bankr. D. Me. 1980) .........................................................5

*In re MicroAge, Inc.*,
291 B.R. 503 (9th Cir. BAP 2002) .......................................................10

*In re Rusty Jones, Inc.*,
110 B.R. 362 (Bankr. N.D. Ill. 1990) .....................................................5

*In re Swiftco, Inc.*,
110 B.R. 362 (Bankr. N.D. Ill. 1990) .....................................................8

*In re UVAS Farming Corp.*,
91 B.R. 579 (Bankr. D.N.M. 1988)........................................................5

*Kane v. Johns-Manville Corp.*
*(In re Johns-Manville Corp.)*,
843 F.2d 636 (2d Cir. 1988) ................................................................5

*Koelbl v. Glessing (In re Koelbl)*,
751 F.2d 137 (2d Cir. 1984) ................................................................5

*Manati Sugar Co. v. Mock*,
75 F.2d 284 (2d Cir. 1935) ..................................................................5

*Pizza of Hawaii, Inc. v. Shakey's, Inc.*
*(In re Pizza of Hawaii, Inc.)*,
761 F.2d 1374 (9th Cir. 1985) .............................................................9

*Platinum Capital, Inc. v. Sylmar Plaza, L.P.*
*(In re Sylmar Plaza, L.P.)*,
314 F.3d 1070 (9th Cir. 2002) .............................................................5

*Resorts Int'l, Inc. v. Lowenschuss*
*(In re Lowenschuss)*,
67 F.3d 1394 (9th Cir. 1995) ..............................................................16

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*,
177 B.R. 648 (9th Cir. BAP 1994) ........................................................................... 3

### STATUTES

11 U.S.C. § 1129 ........................................................................................................ 3

11 U.S.C. §  1123(a)(5) ............................................................................................. 13

11 U.S.C. § 1122 ...................................................................................................... 13

11 U.S.C. § 1123(a)(4) ........................................................................................ 13, 15

11 U.S.C. § 1125(e ................................................................................................... 16

11 U.S.C. § 1129(a)(1) ............................................................................................. 13

11 U.S.C. § 1129(a)(11) ............................................................................................. 9

11 U.S.C. § 1129(a)(2) ........................................................................................ 13, 14

11 U.S.C. § 1129(a)(3) ............................................................................................... 5

11 U.S.C. § 1129(a)(5) ............................................................................................. 12

11 U.S.C. § 1129(b)(2)(B) .......................................................................................... 8

11 US.S.C.§ 1123 ................................................................................................... 13

1 **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:**

2        The Official Joint Committee of Creditors Holding Unsecured Claims (the

3 "Committee") hereby objects to the *Third Amended Chapter 11 Plans Filed by Sun Cal*

4 *Plan Proponents in the Chapter 11 Cases of Sun Cal Oak Valley, LLC, Sun Cal Heartland,*

5 *LLC, Delta Coves Venture LLC, Sun Cal Marblehead, LLC and Sun Cal PSV, LLC [Group*

6 *I: Trustee Debtors]* (the "Plan") jointly proposed by SCC Acquisitions, Inc. ("SCC") and

7 LBL-Sun Cal Oak Valley, LLC, Sun Cal Heartland, LLC, Sun cal Marblehead, LLC, Sun

8 Cal PSV, LLC, and Delta Coves Venture, LLC (together, the "Debtors"). The Debtors and

9 SCC are jointly referred to as "Sun Cal."

10       The Committee objects to the Plan because it violates several key provisions of the

11 Bankruptcy Code.[1]

12

13 I.    **INTRODUCTION**

14       In order to confirm the Plan, the Court must find by a preponderance of the

15 evidence that both the Plan and Sun Cal have complied with all of the applicable

16 provisions of title 11 and that the Plan has been proposed in good faith. *See* 11 O.K. §

17 1129; *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648,

18 654 (9th Cir. BAP 1994), *aff'd on other grounds*, 85 F.3d 1415 (9th Cir. 1996). Here, and

19 as set forth in greater detail below, the Plan should not be confirmed because it is

20 primarily designed to benefit the interests of insiders and not the interests of creditors,

21 although the Plan attempts to obscure the self-dealing objectives by establishing bid

22 procedures. A close reading of the Plan and disclosure statement describing the Plan

23 (the "Disclosure Statement") (docket no. 2481), confirms that the bid procedures are

24 actually designed to serve the interest of SunCal and its insiders and not designed to

25 obtain the highest and best price for the projects. SunCal then obfuscates significant

26

27       [1] As of the filing of this objection, the voting results are unknown. Accordingly, the Committee reserves
the right to supplement this pleading or to address in a later pleading all provisions of § 1129 that depend on
28       the outcome of the voting for analysis.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  feasibility risks by using the artifice of "LitCo," purportedly an independent third party
2  funding source, which is not funded and is not bound by the Plan; yet, it is contemplated
3  that LitCo may be a stalking horse bidder and is likely an insider (although this is not
4  sufficiently disclosed).

5  SunCal and its insiders will be vested with control over the projects long before the
6  Plan is effective and will have nearly unfettered control over the bidding process, including
7  the selection of the stalking horse bidder and the successful bidder. The bid process,
8  when examined closely and with SunCal at the helm, reflects that it is designed to steer
9  the projects to insiders, as illustrated by a recent sales procedures motion filed in the
10 Voluntary Debtors' cases seeking to establish Steve Eileff as the stalking horse bidder,
11 and by the fact that the stalking horse bidder will be given a potentially significant breakup
12 fee (2% plus all payments advanced by the stalking horse bidder for administrative
13 expense claims required to be paid on the Effective Date of the Plan, which could
14 increase the "break-up fee" to over an unconscionable 20%). It defies logic that anyone
15 other than an entity assured of being the successful bidder would be willing to advance
16 the tens of millions of dollars necessary to pay administrative priority claims owed in these
17 cases. Thus, the idea that the stalking horse bidder will be some independent third party
18 needing compensation for the risks of not being selected as the successful overbidder is
19 incredulous. Once the projects are steered to insiders or those partnering with SunCal
20 and its insiders, there are no assurances under the Plan that litigation against Lehman will
21 be maintained because there are no incentives to do so and no realistic provisions for
22 funding the litigation.

23 In addition to controlling the projects, SunCal and its insiders will receive broad
24 releases, likely have their management contracts assumed (even though the Plan is
25 purportedly a liquidating Plan), will be able to pay themselves unlimited "management
26 fees" (which they have a history of overpaying), and be subject to virtually no Court
27 oversight over their administration of the Plan. Given the self-dealing nature of the Plan,
28 the various benefits for SunCal and its insiders at the expense of the creditors, and the

620377_1.DOC                                     4                          OBJECTION TO
                                                                    THIRD AMENDED PLAN

1 infeasibility of the Plan, the Court should not confirm the Plan and require creditors to bear

2 the various risks associated with the Plan for the benefit of SunCal and its insiders.

3

4 **II.    THE PLAN FAILS TO SATISFY VARIOUS CODE REQUIREMENTS FOR**

5 **CONFIRMATION**

6 **A.    The Plan Is Not Proposed in Good Faith and Therefore Fails to**

7 **Satisfy 11 U.S.C. § 1129(a)(3)**

8 Section 1129(a)(3) requires that the Plan be "proposed in good faith and not by any

9 means forbidden by law." 11 U.S.C. § 1129(a)(3). The term "good faith" is not defined in

10 the Bankruptcy Code, but the Ninth Circuit has held that "[a] plan is proposed in good faith

11 where it achieves a result consistent with the objectives and purposes of the Code."

12 *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070,

13 1074 (9th Cir. 2002)(citations omitted). The Second Circuit has held that in order for a

14 plan to be proposed in good faith, the proponents must have "'honest and good

15 intentions'" and have "'a basis for expecting that a reorganization can be effected.'" *Kane*

16 *v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir.

17 1988)(quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935)). Courts have

18 held that good faith is lacking where a plan is proposed for ulterior purposes. *See Koelbl*

19 *v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)(quotations omitted). "Full

20 disclosure is the very essence of the obligation imposed by the requirement of good faith."

21 *In re Cyr Bros. Meat Packing, Inc.*, 2 B.R. 620, 626 (Bankr. D. Me. 1980). The

22 determination of whether a plan is proposed in good faith is based on the totality of the

23 circumstances. *See Platinum Capital*, 314 F.3d at 1074. A plan that is designed to

24 benefit insiders, at the expense of creditors, is not proposed in good faith. *See In re Rusty*

25 *Jones, Inc.*, 110 B.R. 362, 375 (Bankr. N.D. Ill. 1990) (holding that a plan that benefits

26 investors operating the debtor for their personal profit is not proposed in good faith); *In re*

27 *UVAS Farming Corp.*, 91 B.R. 579, 582 (Bankr. D.N.M. 1988) (holding that a plan that

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 | would benefit equity security holders at the expense of unsecured creditors is not
2 | proposed in good faith).

3 |      The Plan is purportedly a liquidating plan. However, instead of being designed to
4 | maximize the return to unsecured creditors, the Plan instead appears to have been
5 | designed to benefit SunCal by enabling SunCal to sell the projects to a stalking horse
6 | bidder that is an insider with bid procedures that will have the effect of chilling bidding,
7 | thereby ensuring that the insider is not overbid. The Plan appears to have been proposed
8 | primarily for the benefit SunCal and its insiders, as evidenced by the following provisions:

9 |      (1)    The Plan contemplates the formation of LitCo to purchase Allowed Reliance
10 | Claims and to fund administrative expenses. Although the Plan and Disclosure Statement
11 | provide no information about who owns LitCo and who its officers and directors will be, the
12 | Disclosure Statement indicates that the SunCal Plan Proponents are in discussions with
13 | third parties to obtain financing for LitCo, which strongly indicates that insiders are behind
14 | LitCo. As acknowledged in the definitions section of the Plan at § 2.1.88, it is presently
15 | contemplated that LitCo will serve as the stalking horse bidder. Indeed, in the related
16 | voluntary debtor cases, the debtors, who have filed plans structured in a manner similar to
17 | the Plan, recently filed a motion for approval of bid procedures that contemplated selling
18 | the properties to companies owned by Steve Eileff, a minority owner of certain debtors
19 | and the brother of Bruce Eileff, the majority owner. The bid procedures require payment
20 | of a breakup fee that includes amounts paid by a stalking horse bidder on account of
21 | Allowed Administrative Claims. Given the magnitude of the Allowed Administrative Claims
22 | in these cases, the Committee believes that the breakup fee is clearly designed to chill
23 | bidding and to ensure that no one overbids the insider stalking horse bidder.

24 |      (2)    While it appears intended that LitCo, an entity that is, at a minimum,
25 | affiliated with SunCal, will serve as the stalking horse bidder, SunCal retains virtually
26 | unfettered control over the marketing process, making it additionally unlikely that SunCal
27 | will select an independent buyer as a successful bidder.

28 |

Smiley, Weiland, Golden,
Wang, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    (3)    On the Effective Date, the Plan Trust will be established and become

2 effective and SCC will serve as Plan Trustee. SCC is an indirect parent company of the

3 Debtors and an alleged creditor of each of the Debtors. Expenses of the Plan Trust or the

4 Plan Trustee will be paid prior to any distribution to beneficiaries of the Plan Trust.

5 Although SCC will not directly receive compensation for the services it performs as Plan

6 Trustee, the costs and expenses of the Plan Trust will be paid and the Plan Trustee is

7 entitled to retain such professionals and experts as it deems necessary to implement the

8 Plan. It would not be surprising if SCC retained SunCal affiliates, including management

9 companies, to "implement the Plan" and treat the fees of retained affiliates as "costs" or

10 "expenses." This is of particular concern given SunCal's history of overbilling with the

11 Debtors, as raised in various pending objections to the claims of SunCal Management.

12    (4)    Notwithstanding the fact that this is a liquidating plan so that the Debtors are

13 not entitled to a discharge, Section 7.8.6 of the Plan provides that the Debtors, SunCal,

14 the Plan Trustee and their members, officers, directors, shareholders, employees, and

15 agents will not be liable "for any loss or damages by reason of any action taken or omitted

16 by him or her, except in the case of fraud, willful misconduct, bad faith, or gross

17 negligence . . . ." This limitation of liability could be broadly construed to provide a release

18 of claims against insiders or any of the SunCal entities, including the pending claim

19 objections against the SunCal entities. Further, the Plan appears to release preference

20 claims against insiders with no analysis of the value of the claims.

21    (5)    The Plan contemplates the assumption of executory contracts and

22 unexpired leases on Exhibit "9" to the Disclosure Statement, which has been omitted

23 (whether inadvertently or not is unclear). However, in SunCal's plan for the Group II

24 Trustee Debtors cases, which has a virtually identical structure to the Plan here, SunCal

25 has indicated that it intends to assume the SunCal management agreements. The

26 Trustee has not utilized SunCal Management to manage the properties since his

27 appointment and assumption would appear to be unnecessary because they are intended

28 to provide management services related to the projects, which are now proposed to be

620377_1.DOC

7

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 sold to the bidder offering the highest and best price. SunCal and its insiders are the only
2 parties to benefit from an assumption of these agreements, receiving the benefits of the
3 cure amount and a substantial administrative priority claim. The attempted assumption is
4 particularly troubling when the management agreements are the subject of various
5 pending objections to claims.

6        Because the Plan is designed to benefit insiders at the expense of creditors, the
7 Plan was not proposed in good faith and should not be confirmed.

8        **B.**    **The Plan Is Not Fair and Equitable Because It Violates the**
9                    **Absolute Priority Rule Set Forth in 11 U.S.C. § 1129(b)(2)(B)**

10        The Plan also violates the absolute priority rule because the Plan allows the
11 SunCal insiders to retain control over the assets while unsecured creditors are not paid in
12 full. As to unsecured creditors, a plan is "fair and equitable" if the claim is paid in full or,
13 alternatively, if a junior class of claims or interests will "not receive or retain under the plan
14 on account of such junior claim or interests any property. . . ." See 11 U.S.C. §
15 1129(b)(2)(B). This alternative condition, "dubbed the 'absolute priority rule,' generally
16 requires that all unsecured creditors be paid in full before equity security holders are
17 allowed to retain any ownership interest in the debtor." *See In re Brotby*, 303 B.R. 177,
18 195 (9th Cir. BAP 2003). "A plan is not fair to a dissenting class of creditors if it allows a
19 junior class to participate in any way in the reorganization." *In re Courtside Village, LLC*,
20 2003 WL 22764541 at*3 (Bankr. N.D. Cal. 2003); *see also In re Swiftco*, Inc., 1988 WL
21 143714 at *17 (Bankr. S.D. Tex. 1988) (holding that "[t]herefore, the plan cannot comply
22 with § 1129(b)(2)(a)(II) and violates the absolute priority rule since the equity owners are
23 proposing to hold the property for a later sale or refinancing.").

24        Here, as discussed above, the Plan is designed to allow the SunCal insiders to
25 maintain control of and benefit from the assets, despite the fact that not all senior classes
26 are being paid in full. For example, SunCal gives itself the right to choose the stalking
27 horse bidder and control the sale process and can thereby ensure that the stalking horse
28

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  bidder and ultimate purchaser is an insider (while not specifically disclosed by SunCal,

2  this clearly appears to be their intention).

3  **C.    The Plan Is Not Feasible and Therefore Fails to Satisfy 11 U.S.C.**

4  **§ 1129(a)(11)**

5  Section 1129(a)(11) requires that confirmation of a plan is not likely to be followed

6  by the liquidation of the debtor or the further reorganization of the debtor, unless such

7  liquidation or reorganization is contemplated by the plan. *See* 11 U.S.C. § 1129(a)(11).

8  The standard for determining feasibility is whether the plan offers a reasonable assurance

9  of success. *See Acequia, Inc. v. Clinton (In re Acequia)*, 787 F.2d 1352, 1364-65 (9th Cir.

10  1986). The purpose of 11 U.S.C. § 1129(a)(11) "is to prevent confirmation of visionary

11  schemes which promise creditors and equity security holders more under a proposed plan

12  than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's,*

13  *Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985)(internal quotation

14  marks and citation omitted).

15  **1.    There Is No Evidence that Litco Can Perform Its**

16  **Obligations Under the Plan**

17  Sections 2.1.88 and 2.1.89 of the Plan contemplate that LitCo, a newly formed

18  Delaware limited liability company, will purchase the claims and Litigation Rights held by

19  the Reliance Claimants electing to sell their claims and will make a loan sufficient to pay

20  all Allowed Priority Claims, Allowed Administrative Claims, and Post Confirmation

21  Expenses in full. Section 3.3 of the Plan provides that "the Lehman Disputed

22  Administrative Loans shall be paid in full, on the date referenced above, from either 1)

23  funds loaned to the Plan Trust by LitCo or another designated third party or 2) from the

24  funds in the applicable Net Sale Proceeds Account."

25  There is no information regarding LitCo and its officers, directors, managers, or

26  members. There is no information regarding whether LitCo has any relationship to

27  insiders. Similarly, there is no discussion about LitCo's ability to fund the LitCo Plan Loan.

28  To date, SunCal has not obtained the financing necessary for or from LitCo.

OBJECTION TO
THIRD AMENDED PLAN

Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1   In addition, LitCo is not a signatory to the plan and will not be bound by the

2   provisions of the Plan to purchase Reliance Claims and to make loans.  Moreover, if LitCo

3   does make loans, there is no disclosure regarding the repayment terms.

4   The funding by LitCo, its capital partner, or any designated third parties is critical to

5   the success of the Plan, because it is the source for, among other things, payment of the

6   Reliance Claims and any allowed administrative claims related to the loans funded by

7   Lehman post-petition with this Court's approval.  Absent disclosure of the identity of LitCo

8   and its relationships to SunCal, LitCo's third party capital partner, their financial

9   wherewithal, the amount of the capitalization, the certainty of obtaining the funding, and

10   their commitment to funding as set forth in the Plan, SunCal's Plan is not feasible.

11   **2.   The Success of the Plan Depends Unrealistically on a**

12   **Successful Outcome of the Objection to the Lehman**

13   **Disputed Administrative Loans**

14   As SunCal acknowledges at Section 11.1.5 of the Disclosure Statement, the

15   success of the Plan hinges on SunCal successfully objecting to the Lehman Disputed

16   Administrative Loans.  SunCal's objections are unlikely to be successful, however, in light

17   of the Court's recent ruling in reliance on *In re MicroAge, Inc.*, 291 B.R. 503 (9th Cir. BAP

18   2002).  Given that the Lehman Disputed Administrative Loans are likely to be allowed, the

19   Plan can only be confirmed if LitCo funds the payment of such claims.  With SunCal's

20   admitted lack of financing from LitCo,[2] the Plan is simply not feasible and should not be

21   confirmed.

22

23

24

25

26   [2]   SunCal's Plan and Disclosure Statements also make reference to using Net Sales Proceeds to pay

27   the Lehman Disputed Administrative Loans.  However, such proposal is clearly not feasible since the sales of the projects are not even scheduled to close until after the payments are required to be paid, on the

28   Effective Date of the Plan.

Smiley, Welland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1
2
3
4
5

**3.    The Plan Unrealistically Depends on the Successful**
**Resolution of the Lehman Claim Objections and the**
**Lehman Adversary Proceeding, as Well as the Successful**
**Sale of the Group I Trustee Debtor Projects After Only a**
**Short Marketing Period**

6      The Plan depends on the successful resolution of the Lehman Claim Objections

7 and the Lehman Adversary Proceeding and the successful sale of the Group I: Trustee

8 Debtor Projects. However, the sales process is controlled entirely by SunCal and its

9 insiders with little independent oversight and safeguards. If anything, the sale process is

10 designed to benefit insiders by ensuring that insiders will be the successful purchasers of

11 the projects. After SunCal and its insiders regain control of the projects through a court-

12 sanctioned sale, there are no provisions for or assurances that the Lehman Claim

13 Objections and the Lehman Adversary Proceeding will be funded and pursued.

14      Moreover, if LitCo is unable to come up with enough money to fund what could be

15 a sizeable loan, there is no unencumbered cash until a successful resolution of the

16 Lehman Claim Objections or the Lehman Adversary Proceeding, either of which may

17 require relief from the automatic stay in the Lehman Entities' bankruptcy cases.  As the

18 Court is well aware, final resolution could take years and the outcome is far from certain.

19 Between the uncertainty and delay of litigation and the dearth of information regarding

20 LitCo's ability to fund Plan obligations, the Plan is not feasible.

21      In sum, a cross of the fingers is not enough to render this Plan feasible.  The Plan

22 falls far short of even the low threshold of proof required by the case law and cannot be

23 confirmed.

24
25
26
27
28

620377_1.DOC

11

OBJECTION TO
THIRD AMENDED PLAN

**D.    The Plan Does Not Satisfy 11 U.S.C. § 1129(a)(5) Because No**

**Information Has Been Provided About LitCo and the**

**Appointment of SCC Acquisitions as the Plan Trustee Is Not**

**Consistent with the Interests of Creditors**

In order to confirm a plan, it must comply with § 1129(a)(5), which provides as

follows:

> (5)(A)(i)  The proponent of the plan has disclosed the identity
> and affiliations of any individual proposed to serve, after
> confirmation of the plan, as a director, officer, or voting trustee
> of the debtor, or a successor to the debtor under the plan; and
> (ii)  the appointment to, or continuance in, such office of such
> individual, is consistent with the interests of creditors and
> equity security holders and with public policy; and
> (B) the proponent of the plan has disclosed the identify of any
> insider that will be employed or retained by the reorganized
> debtor, and the nature of any compensation for such insider.

11 U.S.C. § 1129(a)(5). "A Chapter 11 plan may not be confirmed if the continuation in

management of the persons proposed to serve as officers or managers of debtor is not in

the interests of creditors and public policy." *In re Bashas' Inc.*, 437 B.R. 874, 912 (Bankr.

D. Az. 2010).

Here, there is no information provided about who the managers or officers of SCC

are and who at SCC will actually perform the functions of the Plan Trustee.  However,

what is known is that SCC is the indirect parent of the Debtors and therefore an insider or

affiliated entity.  All of the property of the Debtors (other than Litigation Claims purchased

by LitCo) will vest in the Plan Trust on the Effective Date and the Plan Trust will then

obtain control over all of that property.  The Plan is also designed to deem LitCo, a likely

insider, the stalking horse bidder and to ensure LitCo is the successful bidder through

bidding procedures that are intended to chill bidding.  Thus, the lack of any information

about LitCo and its affiliations is in violation of § 1129(a)(5)

As discussed above, the Committee believes that the Plan is engineered to benefit

SunCal at the expense of creditors, and to ensure that the SunCal insiders maintain

control over the assets despite the fact that creditors are not being paid in full.

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Accordingly, the Committee does not believe that it is appropriate that SCC serve as the

2  Plan Trustee, and contends that the SunCal insiders' continued control of the Debtors and

3  their assets is not consistent with the best interests of creditors. Instead, an independent

4  party who does not have divided loyalties should be appointed to perform these functions

5  and to ensure that the fiduciary duties of a trustee are fulfilled.

6        **E.    The Plan Unfairly Discriminates Between Classes of Unsecured**

7              **Claims In Violation of 11 U.S.C. § 1123(a)(4)**

8        11 U.S.C. § 1123(a)(4) requires that a plan "provide the same treatment for each

9  claim or interest of a particular class, unless the holder of a particular claim or interest

10  agrees to a less favorable treatment of such particular claim or interest."

11        SunCal has never explained its methodology for determining which claims are

12  "Reliance Claims" versus "Non-Reliance Claims." Without such an explanation, it must be

13  assumed that the separate classification was arbitrary and, therefore, the differential

14  treatment between the classes is unfair discrimination.

15        **F.    The Plan Does Not Provide Adequate Means for Its**

16              **Implementation and Therefore Violates 11 U.S.C. § 1129(a)(1)**

17        Section 1129 requires that a plan comply "with the applicable provisions of this

18  title." 11 U.S.C. § 1129(a)(2). The most important of these provisions are set forth in §

19  1122, which governs classification of claims, and § 1123, which governs what plans must

20  contain and gives guidance on what they may contain. One of the mandatory provisions

21  of § 1123(a)(5) requires that a plan "provide adequate means for the plan's

22  implementation." The Plan fails that requirement.

23        Presumably, LitCo is purchasing the Litigation Claims from Reliance Claimants with

24  the intention of pursuing those claims. The Litigation Claims not purchased by LitCo are

25  vested in the Plan Trust. The Litigation Claims are already being pursued. The Plan is

26  silent on how LitCo and the Plan Trustee will make litigation decisions going forward.

27  Creditors relying on the Plan Trustee to pursue the litigation for their benefit should have

28

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

620377_1.DOC                    13                    OBJECTION TO
                                                    THIRD AMENDED PLAN

1   the benefit of knowing how those decisions will be made when the interests of LitCo and

2   the Plan Trustee are not necessarily aligned.

3         Second, the Plan vests all property of the Debtors, which includes objections to

4   claims filed by insiders, in the Plan Trust. However, Section 7.18 gives the Committee

5   standing to prosecute and resolve objections to claims filed by insiders that are SunCal

6   Affiliates and their professionals.   Does the Committee have sole standing?  What is the

7   effect of vesting it in one entity and giving standing to another?  Can the Plan Trustee

8   compromise these claim objections, forcing the Committee to object and argue that the

9   Plan Trustee violated its "business judgment"?

10        Third, the Plan is silent about who will fund and maintain the real property pending

11  consummation of the sale.  As the Court is well aware, there are significant health and

12  safety expenses associated with these properties.  The Plan makes no provision for

13  payment of such expenses between confirmation and the sale of the projects, which can

14  be a lengthy period of time.  The Plan provides for an Effective Date that can be as long

15  as 150 days after the Plan is confirmed but can be further extended indefinitely with the

16  Court's approval.  The closing of the sales of the projects is scheduled to occur

17  approximately 30 days after the Effective Date.  Thus, the Plan's failure to properly

18  maintain the projects and to protect the creditors' interest in the projects for what could be

19  many months is further basis for denying confirmation.

20        **G.      The Committee Reserves Its Rights with Respect to Whether**

21                **Plan Proponents Have Complied with the Solicitation**

22                **Requirements of § 1129(a)(2)**

23        The Committee understands that representatives of SunCal have been contacting

24  creditors in order to solicit votes for the SunCal plans and against the Lehman plans.  The

25  Committee is currently investigating whether any of the statements made in connection

26  with these solicitations were improper and the Committee reserves all rights with respect

27  thereto.

28

620377_1.DOC                              14                        OBJECTION TO
                                                                   THIRD AMENDED PLAN

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1
2
3
4

**H.     THE PLAN HAS A NUMBER OF OTHER FATAL DEFECTS THAT
        RENDER IT UNCONFIRMABLE**

**1.     The Requirement That Class 6 Vote in Favor of the Plan In
         Order to Receive Favorable Treatment Is Inequitable**

5      Although a plan may provide alternative treatment to a class of creditors, it cannot

6    provide alternative treatment if one of the proposed alternatives is designed to solicit

7    creditor acceptances because the other alternatives are so detrimental. *See In re Mcorp*

8    *Fin., Inc.*, 137 B.R. 219, 236 (Bankr. S.D. Tex. 1992)("There is no authority in the

9    Bankruptcy Code for discriminating against classes who vote against a plan of

10   reorganization.")(internal citations omitted).  Here, the Plan proposes that Class 6

11   creditors who vote to accept the Plan are entitled to elect to receive "Option A" under

12   which they will sell their Allowed Reliance Claims and Litigation Rights to LitCo for 55% of

13   their allowed claim, payable in cash on the Effective Date.  Class 6 creditors who vote to

14   reject the Plan may not elect this treatment and will instead receive a minimum distribution

15   of 1% of their allowed claim and retain their Reliance Claims and rights against the

16   Lehman Entities and the right to receive a pro rata distribution of any funds payable from

17   the applicable Distribution Account.  It is widely believed that creditors electing Option A

18   will fare far better.  This alternative treatment makes it impossible for creditors to vote

19   freely and without duress and therefore is not fair and equitable, unfairly discriminates,

20   and is generally problematic.  In addition, this treatment violates the rule in § 1123(a)(4)

21   that similarly situated creditors be provided substantially similar provisions. *See* 11 U.S.C.

22   § 1123(a)(4).

23            **2.     The Plan Improperly Releases Insiders and Third Parties**

24            Section 7.8.6 of the Plan contains the following limitation of liability provision that

25   improperly releases third parties and appears to discharge the Debtors of all obligations

26   other than those incurred as a result of fraud.  Neither is permissible.

27
28

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1            None of the Group I Trustee Debtors, the Trustee
Debtors' Committee, the Plan Sponsor, the SunCal Plan

2     Proponents, the Plan Trustee, the Professionals, nor any of
their respective members, officers, directors, shareholders,

3     employees, or agents (the "Indemnified Parties") shall be liable
(a) for any loss or damages by reason of any action taken or

4     omitted by him or her, except in the case of fraud, willful
misconduct, bad faith, or gross negligence, (b) for any act or

5     omission made in reliance upon the Debtors' books and
records or upon information or advice given to the Plan Trustee

6     by his or her professionals, or (c) for any action taken or
omission made in connection with or related to the

7     negotiations, formulation, or preparation of the Plan and the
Disclosure Statement, the approval of the Disclosure

8     Statement, the confirmation of the Plan, the consummation of
the Plan, or the administration of the Plan, the Cases, or the

9     property to be distributed under the Plan, to the fullest extent
permitted by applicable statute and case law.

10

11 This section goes on to provide for indemnification and release of the Indemnified Parties.

12 Whether intentional or the result of poor draftsmanship, this release is impermissible

13 because it gives the Debtors and third parties a release of all claims, not just those related

14 to solicitation. Indeed, the Committee is concerned that this provision can be construed to

15 release SunCal Management, an agent of the Debtors, from any claims other than those

16 based on fraud and gross negligence. Not only are the Debtors not entitled to any such

17 release because this is a liquidation plan, but third parties are similarly not entitled to any

18 releases from liability and a plan that purports to give such a release cannot be confirmed.

19 *See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th

20 Cir. 1995). Because this is a liquidating case, the only release that would be appropriate

21 is one that is confined to solicitation and participation as contemplated by 11 U.S.C. §

22 1125(e). Until the Plan is appropriately modified, this release renders it unconfirmable.

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

620377_1.DOC

16

**III.  THE COMMITTEE BELIEVES THAT BECAUSE OF THE CONFUSING**
**MANNER IN WHICH BALLOTS WERE DISSEMINATED, RELIANCE**
**CLAIMANTS SHOULD BE GIVEN ANOTHER OPPORTUNITY TO ELECT**
**TO RECEIVE OPTION A TREATMENT**

Since the service of the Plan packages, counsel for the Committee has fielded many calls from creditors confused about the Plan packages.  Unfortunately, it appears that creditors received ballots for all five Group I cases, even if they were not creditors of all five cases.  Moreover, they did not receive the ballot for their particular class, but apparently received all of the ballots (for all the voting classes), leaving them to determine which ballot to fill out.  Further, at least one Reliance Claimant who also had a mechanic's lien informed the Committee's attorneys that he was instructed by counsel for SunCal not to complete the Class 6 ballot and to instead only fill out the Class 3 ballot, or else he may be deemed to have waived his mechanic's lien claim.  That instruction is simply incorrect and by complying, the creditor missed the opportunity to elect the more favorable treatment provided to Class 6 creditors who made the election.  Simply put, creditors are confused.  Because of that, if the Court is inclined to confirm the Plan, then the Committee believes that it would be appropriate for all creditors in Class 6 who did not make the election to be receive the Option A treatment or who voted in Class 3 and not Class 6 even though they are Reliance Claimants, to be given a second opportunity to make the election to receive the treatment afforded by Option A.  In addition, if the Court agrees with the Committee's argument that Option A should have been made available to creditors regardless of whether they accepted or rejected the Plan, then the rejecting Reliance Claimants should also be given an opportunity to make the election.

## IV.    CONCLUSION

Because the Plan is designed to benefit insiders of the Debtors at the expense of creditors and because feasibility depends on little more than a cross of the fingers, the Committee urges the Court to deny confirmation of the Plan.

Dated: September 19, 2011

Respectfully submitted,

WEILAND, GOLDEN
SMILEY, WANG EKVALL & STROK, LLP

By:    /s/ Lei Lei Wang Ekvall
LEI LEI WANG EKVALL
Attorneys for the Joint Committee of
Creditors Holding Unsecured Claims

620377_1.DOC

18

OBJECTION TO
THIRD AMENDED PLAN

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is :**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document described as **JOINT COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS' OBJECTION TO THIRD AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK VALLEY, LLC, SUNCAL HEARTLAND, LLC, DELTA COVES VENTURE LLC, SUNCAL MARBLEHEAD, LLC , AND SUNCAL PSV, LLC [GROUP I: TRUSTEE DEBTORS]** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.     TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **September 19, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☑ Service information continued on attached page

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 19, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**The Honorable Erithe Smith
United States Bankruptcy Court**                **(Via Personal Delivery)**
**411 West Fourth Street
Santa Ana, CA 92701**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 19, 2011 | Terri Jones | /s/ Terri Jones |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                    **F 9013-3.1.PROOF.SERVICE**
620442.1

## TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")

Selia M Acevedo        sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
Joseph M Adams      jadams@sycr.com
Raymond H Aver     ray@averlaw.com
James C Bastian     jbastian@shbllp.com
Thomas Scott Belden     sbelden@kleinlaw.com, ecf@kleinlaw.com
John A Boyd    fednotice@tclaw.net
Mark Bradshaw     mbradshaw@shbllp.com
Gustavo E Bravo     gbravo@smaha.com
Jeffrey W Broker     jbroker@brokerlaw.biz
Brendt C Butler     bbutler@mandersonllp.com
Andrew W Caine     acaine@pszyjw.com
Carollynn Callari     ccallari@venable.com
Cathrine M Castaldi     ccastaldi@rusmiliband.com
Tara Castro Narayanan     tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
Dan E Chambers     dchambers@jmbm.com
Shirley Cho     scho@pszjlaw.com
Vonn Christenson     vrc@paynefears.com
Brendan P Collins     bpcollins@bhfs.com
Vincent M Coscino     vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
Paul J Couchot     pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
Geoffrey Crisp     geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
Jonathan S Dabbieri     dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
Ana Damonte     ana.damonte@pillsburylaw.com
Vanessa S Davila     vsd@amclaw.com
Melissa Davis     mdavis@shbllp.com
Daniel Denny     ddenny@gibsondunn.com
Caroline Djang     crd@jmbm.com
Caroline Djang     cdjang@rutan.com
Donald T Dunning     ddunning@dunningLaw.com
Lynsey M Eaton     leaton@gglts.com
Meredith R Edelman     meredith.edelman@dlapiper.com
Joseph A Eisenberg     jae@jmbm.com
Lei Lei Wang Ekvall     lekvall@wgllp.com
Richard W Esterkin     resterkin@morganlewis.com
Don Fisher     dfisher@ptwww.com
Marc C Forsythe     kmurphy@goeforlaw.com
Alan J Friedman     afriedman@irell.com
Steven M Garber     steve@smgarberlaw.com
Christian J Gascou     cgascou@gascouhopkins.com
Barry S Glaser     bglaser@swjlaw.com
Robert P Goe     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
Eric D Goldberg     egoldberg@stutman.com
Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
Michael J Gomez     mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
Kelly C Griffith     bkemail@harrisbeach.com
Matthew Grimshaw     mgrimshaw@rutan.com
Kavita Gupta     kgupta@winthropcouchot.com
Asa S Hami     ahami@morganlewis.com
Michael J Hauser     michael.hauser@usdoj.gov
D Edward Hays     ehays@marshackhays.com
Michael C Heinrichs     mheinrichs@omm.com
Harry D. Hochman     hhochman@pszjlaw.com, hhochman@pszjlaw.com
Jonathan M Hoff     jonathan.hoff@cwt.com

Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
Michelle Hribar    mhribar@rutan.com
John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
Lawrence A Jacobson    laj@cohenandjacobson.com
Michael J Joyce    mjoyce@crosslaw.com
Stephen M Judson    sjudson@fablaw.com
Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
Steven J Kahn    skahn@pszyjw.com
Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
David I Katzen    katzen@ksfirm.com
Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com
Irene L Kiet    ikiet@hkclaw.com
Claude F Kolm    claude.kolm@acgov.org
Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
David B Lally    davidlallylaw@gmail.com
Leib M Lerner    leib.lerner@alston.com
Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
Charles Liu    cliu@marshackhays.com
Charles Liu    cliu@winthropcouchot.com
Ben H Logan    blogan@omm.com
John W Lucas    jlucas@pszjlaw.com
Kerri A Lyman    klyman@irell.com
Mariam S Marshall    mmarshall@marshallramoslaw.com
Robert C Martinez    rmartinez@mclex.com
Michael D May    mdmayesq@verizon.net
Hutchison B Meltzer    hmeltzer@wgllp.com
Krikor J Meshefejian    kjm@lnbrb.com
Joel S. Miliband    jmiliband@rusmiliband.com
James M Miller    jmiller@millerbarondess.com,
vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
Louis R Miller    smiller@millerbarondess.com
Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
Randall P Mroczynski    randym@cookseylaw.com
Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
Robert Nida    Rnida@castlelawoffice.com
Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
Sean A Okeefe    sokeefe@okeefelc.com
Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
Ernie Zachary Park    ernie.park@bewleylaw.com
Daryl G Parker    dparker@pszjlaw.com
Penelope Parmes    pparmes@rutan.com
Robert J Pfister    rpfister@ktbslaw.com
Ronald B Pierce    ronald.pierce@sdma.com
Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
Cassandra J Richey    cmartin@pprlaw.net
Debra Riley    driley@allenmatkins.com
James S Riley    tgarza@sierrafunds.com
Todd C. Ringstad    becky@ringstadlaw.com
R Grace Rodriguez    ecf@lorgr.com
Martha E Romero    Romero@mromerolawfirm.com
Ronald Rus    rrus@rusmiliband.com
John P Schafer    jschafer@mandersonllp.com
John E Schreiber    jschreiber@dl.com
William D Schuster    bills@allieschuster.org
Christopher P Simon    csimon@crosslaw.com
Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
Wendy W Smith    wendy@bindermalter.com

Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
Michael St James    ecf@stjames-law.com
Michael K Sugar    msugar@irell.com
Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
David A Tilem    davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Carol G Unruh    cgunruh@sbcglobal.net
Annie Verdries    verdries@lbbslaw.com
Jason Wallach    jwallach@gladstonemichel.com
Joshua D Wayser    , kim.johnson@kattenlaw.com
Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
David M Wiseblood    dwiseblood@seyfarth.com
Brett K Wiseman    bwiseman@aalaws.com
Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
Marc A. Zimmerman    joshuasdaddy@att.net