RICHARD W. BRUNETTE, Cal. Bar No. 81621
rbrunette@sheppardmullin.com
AARON J. MALO, Cal. Bar No. 179985
amalo@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:   213-620-1780
Facsimile:    213-620-1398

Attorneys for Creditor
PALM SPRINGS VILLAGE-309, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>    Jointly Administered Debtors and Debtors-In-Possession. | Case No. 8:08-bk-17206-ES<br>Jointly Administered Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES |
| Affects:<br>☐ All Debtors,<br>☐ Palmdale Hills Property, LLC<br>☐ Sun Cal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johanson Ranch, LLC<br>☐ Sun Cal Summit Valley, LLC<br>☐ SunCal Emerald Meadows, LLC<br>☐ Sun Cal Bickford Ranch, LLC<br>☐ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☐ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☐ SCC Communities, LLC<br>☐ North Orange Del Rio Land, LLC<br>☐ Tesoro SF, LLC<br>☐ LB-L-SunCal Oak Valley, LLC<br>☐ SunCal Heartland, LLC<br>☐ LB-L-SunCal Northlake, LLC<br>☐ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☐ Delta Coves Venture, LLC<br>☐ SunCal Torrance, LLC<br>☐ Sun Cal Oak Knoll, LLC | 8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17465-ES<br>8:08-bk-17458-ES; 8:08-bk-17206-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**(1) OBJECTION OF PALM SPRINGS VILLAGE-309, LLC, TO CONFIRMATION OF CHAPTER 11 PLANS;**<br><br>**(2) DECLARATION OF SCOTT A. LISSOY**<br><br>**<u>Hearing</u>**<br><br>Date:    October 24, 2011<br>Time:    9:30 a.m.<br>Place:    Courtroom 5A |

W02-WEST:LAB\403938443.4

Palm Springs Village-309, LLC ("PSV-309") hereby objects to confirmation of the Third Amended Joint Chapter 11 Plan proposed by the Trustee and the Lehman Creditors and the Third Amended Chapter 11 Plan proposed by SunCal PSV, LLC (collectively, the "Plans") as set forth more fully below.

## I. INTRODUCTION & SUMMARY OF OBJECTION

PSV-309 is a creditor of debtor SunCal PSV, LLC. PSV-309 objects to confirmation of the Plans because the Plans do not provide any treatment whatsoever for PSV-309's sizeable claim, which renders the Plans deficient under 11 U.S.C. 1123(a) and thus unconfirmable under 11 U.S.C. 1129(a). PSV-309's claim was never included on the Debtor's Chapter 11 schedules, nor was PSV-309 given notice of the claims bar date.

Despite recent discussions with counsel for both the Lehman Creditors and the Chapter 11 trustee regarding the prospect of allowing PSV-309 to file a claim in this case, the Plans continue to provide no treatment of PSV-309's substantial claim against the bankruptcy estate. PSV-309's claim consists of contractual rights to: (1) the payment of certain specified cash; and (2) title to certain specified real estate.

Both of these rights are created by a sale agreement pursuant to which PSV-309 was a seller of real property. Under that agreement, PSV-309 is entitled to ownership of two lots plus 50% of that portion of a community facilities district ("CFD") financing in excess of $22.5 million. PSV-309 is informed and believes that the relevant CFD either is, or will be sized at $40 million, resulting in a monetary claim owed to PSV-309 equal to 50% of $17.5 million, or $8.75 million. In addition, PSV-309 is entitled to the conveyance of two improved real estate parcels which are estimated to be worth $600,000 and $700,000, respectively, resulting in a total claim of $10,050,000 that remains unscheduled and receives no treatment under the Plans. It is PSV-309's understanding that such a claim

W02-WEST:LAB\403938443.4         -1-

would be the largest claim asserted against the SunCal PSV estate (other than the plan proponent's claim).

## II. BASIS FOR CLAIM

### A. The Purchase Price

By means of a Purchase and Sale Agreement dated as of March 10, 2006 ("PSA"), PSV-309 agreed to sell to SunCal PSV hundreds of acres of valuable real estate located in or around Palm Springs, California. (Declaration of Scott A. Lissoy ("Lissoy Decl."), ¶ 2.)

The Basic Purchase Price was $43 million for Phase 1 and $40 million for Phase 2. Suncal PSV also agreed to pay, as part of the Purchase Price, an amount equal to 50% of the total CFD Proceeds (as defined in the PSA) in excess of $22,500,000 (the "CFD Payment"). (Lissoy Decl., ¶ 3.) The CFD Payment is an element of PSV-309's claim against SunCal PSV. Based on a CFD in the amount of $40 million, the CFD Payment due from SunCal PSV is or will be $8.75 million.

In addition to the CFD Payment, and as confirmed by a Memorandum of Holding Agreement dated May 10, 2006 ("Holding Agreement"), the parties agreed that although certain property was being conveyed *in toto* to SunCal PSV, PSV-309 retained the right to certain properties known as the Seller Retained Lot and the Seller Designated Lot. Because the Seller Retained Lot and Seller Designated Lot were not yet legal parcels under the California Subdivision Map Act, title to the Seller Retained Lot and Seller Designated Lot (but not any beneficial interest) was be held by SunCal PSV until recordation of a final map, at which point title would be conveyed to SPV-309. (Lissoy Decl., ¶ 4.) PSV-309's entitlement to the Seller Retained Lot and Seller Designated Lot is

a second element of PSV-309's claim, which likewise receives no treatment under the Plans.

### B.  Lehman Was Aware Of The Additional Consideration And Reserved Properties

SunCal PSV and Lehman Ali, Inc. ("Lehman") were aware of PSV-309's rights when they entered into their $65,000,000 Term Loan and $25,000,000 Revolving Line of Credit Agreement dated February 12, 2007 ("SunCal PSV Loan Agreement"). PSV-309 and the PSA are specifically included in the defined terms in the SunCal PSV Loan Agreement. (Lissoy Decl., ¶ 5.) PSV-309's interest in the real estate is likewise referenced in the SunCal PSV Loan Agreement, and within that document Lehman agreed to release its lien as to the real estate. Therefore, both SunCal PSV and Lehman were at all times fully aware of PSV-309 and its rights under the PSA that give rise to PSV-309's claim in this Chapter 11. Despite this, PSV-309's claims receive no treatment under the Plans.

## III.  THE JUNE 2009 CLAIMS BAR DATE PASSED LONG BEFORE PSV-309 RECEIVED ANY NOTICE OF THIS CASE

Despite the fact that PSV-309 had both a substantial monetary claim and a right to a conveyance of real property from SunCal PSV, and despite the fact that both the Debtor and Lehman knew of PSV-309's interests and claims, PSV-309 was not scheduled as a creditor in SunCal PSV's schedules, and has never received proper notice of these proceedings. As a result, the notice of a claims bar date was not given to PSV-309, and thus PSV-309 did not file a claim by the June 2009 deadline. In fact, PSV-309 received no notices in this case until about 16 months <u>after</u> the bar date had lapsed.

1    Once PSV-309 became aware of the case and retained counsel, discussions
2 ensued about PSV-309's rights, which the Chapter 11 trustee's counsel agreed to
3 investigate. Despite a request that PSV-309 be allowed to file a late claim based on the
4 absence of notice of the bar date, no agreement was reached, and the Plans make no
5 mention of PSV-309's claims – compelling this objection.

7  IV.    **THE PLANS MUST DESIGNATE ALL CLASSES OF CLAIMS AND
8         DESCRIBE THEIR TREATMENT – THE PLANS HERE VIOLATE 11
9         U.S.C. 1123(a) AND ARE UNCONFIRMABLE UNDER 11 U.S.C. 1129(a)**

11   For a plan to be confirmed, it must satisfy, among other things, the
12 requirements of all subsections of 11 U.S.C. 1129(a) except for Section 1129(a)(8). In Re
13 Acequia, Inc., 787 F.2d 1352, 1363 (9th Cir. 1986). Section 1129(a)(1) requires that the
14 plan satisfy all applicable provisions of Title 11, including Section 1123(a). 7 Collier on
15 Bankruptcy (16th ed.) at 1129.02[1].

17   11 U.S.C. 1123(a) requires that a plan designate all classes of claims and
18 specify the treatment of any claims or interests that are impaired. The claim of PSV-309 is
19 neither scheduled, classified, nor accorded any treatment under the Plans here. The failure
20 to schedule a known claim and accord it treatment are grounds, by themselves, to deny
21 confirmation of the Plans. *See*, *e.g.*, In Re Wermelskircher, 163 B.R. 793, 796 (Bankr.
22 N.D. Ohio 1994).

24   The failure to deal with SunCal PSV's contractual obligation to deed back to
25 PSV-309 the Seller Retained Lot and the Seller Designated Lot also violates 11 U.S.C.
26 1123(a)(5)(D). Section 1123(a)(5)(D) requires that the plan provide means for the
27 distribution of any property of the estate among those having an interest in property of the
28 estate. PSV-309 unquestionably has a properly perfected interest in property of the estate,

1 | which was known to both the Debtor and Lehman, which acknowledged those rights in the
2 | SunCal PSV Loan Agreement, and the Plans must provide a means for distribution of that
3 | property. Failure to deal with this contractual duty to transfer the Seller Retained Lot and
4 | Seller Designated Lot is a violation of Section 1123(a)(5)(D).
5 |
6 |        The proponents of the Plans should be motivated to deal with PSV-309's
7 | claim not only because of the confirmation impediments posed, but also by the uncertainty
8 | created under Section 1141(d) should the Plans fail to treat the unscheduled claim of a
9 | creditor which did not receive notice of the claims bar date. *See* 8 <u>Collier on Bankruptcy</u>
10 | (16th ed.) at 1141.06. PSV-309 has recently raised issues surrounding its claim, but the
11 | claim remains unscheduled and without treatment under both Plans.
12 |
13 | **V.    <u>CONCLUSION</u>**
14 |
15 |        PSV-309 holds a substantial, valid claim in excess of $10 million that was
16 | never scheduled. PSV-309 received no notice of the bar date and thus did not file a claim
17 | before the bar date lapsed. The relevant parties, including SunCal PSV and Lehman, were
18 | at all times aware of PSV-309's rights under the PSA and Holding Agreement, including
19 | its interest in certain real estate, yet refuse to acknowledge (let alone propose treatment of)
20 | that claim in the Plans. PSV-309 objects to the Plans to the extent that they provide no
21 | treatment of PSV-309's claim.
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1 | Dated: September 19, 2011

2 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4 | By     */s/Richard W. Brunette*
5 | RICHARD W. BRUNETTE
   | AARON J. MALO
6 | Attorneys for Creditor
   | PALM SPRINGS VILLAGE-309, LLC

# Declaration of Scott A. Lissoy

Case 8:08-bk-17206-ES    Doc 2798    Filed 09/19/11    Entered 09/19/11 17:33:03    Desc
Main Document    Page 8 of 10

# DECLARATION OF SCOTT A. LISSOY

I, Scott A. Lissoy, state and declare as follows:

1. I am the Managing Member of Palm Springs Village-309, LLC, a California limited liability company ("PSV-309"). I have personal knowledge of the facts stated below concerning the business conducted by PSV-309 or knowledge based on business records under my custody and control. If called as a witness, I could and would testify competently to the following facts.

2. PSV-309 owned a substantial amount of real property located in Palm Springs, California. By way of a Purchase and Sale Agreement ("PSA") dated March 10, 2006, PSV-309 agreed to sell certain property to SunCal PSV, LLC. A true and correct copy of the PSA is attached hereto as **Exhibit A**.

3. The PSA called for a purchase consisting of $83 million in cash plus an amount equal to 50% of the total CFD Proceeds (as defined in the PSA in excess of $22,500,000 (the "CFD Payment"). I am informed and believe that the CFD Proceeds are anticipated to be approximately $40 million, which under the PSA would fix the CFD Payment owed by SunCal PSV to PSV-309 at $8.75 million.

4. In addition, the PSA provided that certain property would be deeded to SunCal PSV, subject to an obligation to deed such property (known as the Seller Retained Lot and Seller Designated Lot) back to PSV-309 once the property was a "legal lot" under the California Subdivision Map Act. This retention of certain rights was memorialized in the PSA as well as in a document recorded in the real property records on May 16, 2006, and entitled "Memorandum of Holding Agreement," a true copy of which is attached as **Exhibit B** hereto ("Holding Agreement").

1    5.    I later learned of, and have a copy of, a credit agreement whereby SunCal PSV obtained financing to develop the property sold by PSV-309 to SunCal PSV. The agreement entitled "$65,000,000 Term Loan and $25,000,000 Revolving Line of Credit" expressly refers to the rights of PSV-309 under the Holding Agreement and recognizes the duty of SunCal PSV to deed certain property to PSV-309. A true and correct copy of the credit agreement provided to me is attached as **Exhibit C** hereto.

6.    Based on the foregoing, PSV-309 has contractual claims against SunCal PSV for money consisting of 50% of the CFD Proceeds in excess of $22,500,000, a claim which would be $8.75 million based on CFD Proceeds of $40,000,000. In addition, PSV-309 has a claim consisting of its right to ownership of the properties (known as the Seller Retained Lot and Seller Designated Lot) carved out of the PSA, which SunCal PSV agreed to deed back to PSV-309.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of September, 2011, at Santa Ana, California.

_____
Scott A. Lissoy