1   **WEILAND, GOLDEN,**
    **SMILEY, WANG EKVALL & STROK, LLP**
2   Lei Lei Wang Ekvall, State Bar No. 163047
    lekvall@wgllp.com
3   Kyra E. Andrassy, State Bar No. 207959
    kandrassy@wgllp.com
4   Hutchison B. Meltzer, State Bar No. 217166
    hmeltzer@wgllp.com
5   650 Town Center Drive, Suite 950
    Costa Mesa, California 92626
6   Telephone:   (714) 966-1000
    Facsimile:   (714) 966-1002
7
    Counsel for the Joint Committee
8   of Creditors Holding Unsecured Claims

9                **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                     **SANTA ANA DIVISION**

12  In re                                    Case No. 8:08-bk-17206-ES

13  PALMDALE HILLS PROPERTY, LLC, and        (Jointly Administered with Case Nos.
    its Related Debtors,                     8:08-bk-17209-ES; 8:08-bk-17240-ES;
14                                           8:08-bk-17224-ES; 8:08-bk-17242-ES;
              Jointly Administered Debtors   8:08-bk-17225-ES; 8:08-bk-17245-ES;
15            and Debtors-in-Possession.     8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                             8:08-bk-17230-ES; 8:08-bk-17231-ES;
16                                           8:08-bk-17236-ES; 8:08-bk-17248-ES;
    ☐   Affects PALMDALE HILLS              8:08-bk-17249-ES; 8:08-bk-17573-ES;
17      PROPERTY, LLC, Only                 8:08-bk-17574-ES; 8:08-bk-17575-ES;
                                             8:08-bk-17404-ES; 8:08-bk-17407-ES;
18  ☐   Affects SUNCAL BEAUMONT            8:08-bk-17408-ES; 8:08-bk-17409-ES;
        HEIGHTS, LLC, Only                  8:08-bk-17458-ES; 8:08-bk-17465-ES;
19  ☐   Affects SCC/PALMDALE, Only         8:08-bk-17470-ES; 8:08-bk-17472-ES; and
                                             8:08-bk-17588-ES)
20  ☐   Affects SUNCAL JOHANNSON
        RANCH, LLC, Only                    Chapter 11 Cases
21  ☐   Affects SUNCAL SUMMIT VALLEY,
        LLC, Only                           **JOINT COMMITTEE OF CREDITORS**
22                                           **HOLDING UNSECURED CLAIMS'**
    ☐   Affects SUNCAL EMERALD             **OBJECTION TO THIRD AMENDED**
23      MEADOWS, LLC, Only                  **CHAPTER 11 PLAN FILED BY SUNCAL**
                                             **PLAN PROPONENTS IN THE CHAPTER**
    ☐   Affects SUNCAL BICKFORD RANCH,     **11 CASES OF SUNCAL OAK KNOLL, LLC**
24      LLC, Only                           **AND SUNCAL TORRANCE, LLC [GROUP**
25  ☐   Affects ACTON ESTATES, LLC, Only   **II: TRUSTEE DEBTORS]**
    ☐   Affects SEVEN BROTHERS, LLC, Only
26  ☐   Affects SJD PARTNERS, LTD., Only   **DATE:**    **October 24, 2011**
                                             **TIME:**    **9:30 a.m.**
27  ☐   Affects SJD DEVELOPMENT CORP.,     **CTRM:**    **5A**
        Only
28

    620448.1                                                   OBJECTION TO
                                                          THIRD AMENDED PLAN

*[Left margin vertical text: Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP — 650 Town Center Drive, Suite 950, Costa Mesa, California 92626 — Tel 714-966-1000 · Fax 714-966-1002]*

1  ☐ Affects KIRBY ESTATES, LLC, Only

2  ☐ Affects SUNCAL COMMUNITIES I, LLC, Only

3  ☐ Affects SUNCAL COMMUNITIES III, LLC, Only

4  ☐ Affects SCC COMMUNITIES, LLC, Only

5

6  ☐ Affects NORTH ORANGE DEL RIO LAND, LLC, Only

7  ☐ Affects TESORO SF, LLC, Only

   ☐ Affects LBL-SUNCAL OAK VALLEY, LLC, Only
8

9  ☐ Affects SUNCAL HEARTLAND, LLC, Only

10 ☐ Affects LBL-SUNCAL NORTHLAKE, LLC, Only

11 ☐ Affects SUNCAL MARBLEHEAD, LLC, Only

12

13 ☐ Affects SUNCAL CENTURY CITY, LLC, Only

14 ☐ Affects SUNCAL PSV, LLC, Only

   ☐ Affects DELTA COVES VENTURE, LLC, Only
15

16 ☒ Affects SUNCAL TORRANCE, LLC, Only

17 ☒ Affects SUNCAL OAK KNOLL, LLC, Only

18 ☐ Affects All Debtors

19

20

21

22

23

24

25

26

27

28

620448.1

OBJECTION TO
THIRD AMENDED PLAN

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .............................................................................................. 3

II. THE PLAN FAILS TO SATISFY VARIOUS CODE REQUIREMENTS
    FOR CONFIRMATION ..................................................................................... 5

    A.  The Plan Is Not Proposed in Good Faith and Therefore Fails to
        Satisfy 11 U.S.C. § 1129(a)(3).................................................................. 5

    B.  The Plan Is Not Fair and Equitable Because It Violates the
        Absolute Priority Rule Set Forth in 11 U.S.C. § 1129(b)(2)(B).................... 8

    C.  The Plan Is Not Feasible and Therefore Fails to Satisfy 11
        U.S.C. § 1129(a)(11) .................................................................................. 8

        1.  There Is No Evidence that Litco Can Perform Its
            Obligations Under the Plan ................................................................. 9

        2.  The Success of the Plan Depends Unrealistically on a
            Successful Outcome of the Objection to the Lehman
            Disputed Administrative Loans........................................................... 10

        3.  The Plan Unrealistically Depends on the Successful
            Resolution of the Lehman Claim Objections and the
            Lehman Adversary Proceeding, as Well as the
            Successful Sale of the Group I Trustee Debtor Projects
            After Only a Short Marketing Period ................................................. 10

    D.  The Plan Does Not Satisfy 11 U.S.C. § 1129(a)(5) Because No
        Information Has Been Provided About LitCo and the
        Appointment of SCC Acquisitions as the Plan Trustee Is Not
        Consistent with the Interests of Creditors .................................................. 11

    E.  The Plan Unfairly Discriminates Between Classes of
        Unsecured Claims In Violation of 11 U.S.C. § 1123(a)(4)........................... 12

    F.  The Plan Does Not Provide Adequate Means for Its
        Implementation and Therefore Violates 11 U.S.C. § 1129(a)(1)................ 13

    G.  The Committee Reserves Its Rights with Respect to Whether
        Plan Proponents Have Complied with the Solicitation
        Requirements of § 1129(a)(2).................................................................... 14

    H.  THE PLAN HAS A NUMBER OF OTHER FATAL DEFECTS
        THAT RENDER IT UNCONFIRMABLE....................................................... 14

        1.  The Requirement That Class 6 Vote in Favor of the Plan
            In Order to Receive Favorable Treatment Is Inequitable ............... 14

        2.  The Plan Improperly Releases Insiders and Third
            Parties.............................................................................................. 15

## TABLE OF CONTENTS (cont.)

Page

III.    THE COMMITTEE BELIEVES THAT BECAUSE OF THE
CONFUSING MANNER IN WHICH BALLOTS WERE
DISSEMINATED, RELIANCE CLAIMANTS SHOULD BE GIVEN
ANOTHER OPPORTUNITY TO ELECT TO RECEIVE OPTION A
TREATMENT ................................................................................................... 16

IV.    CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Acequia, Inc. v. Clinton
    (In re Acequia),
    787 F.2d 1352 (9th Cir. 1986) ............................................................9

In re Bashas' Inc.,
    437 B.R. 874 (Bankr. D. Az. 2010) ...................................................12

In re Brotby,
    303 B.R. 177 (9th Cir. BAP 2003) .....................................................8

In re Courtside Village, LLC,
    2003 WL 22764541 (Bankr. N.D. Cal. 2003) ......................................8

In re Cyr Bros. Meat Packing, Inc.,
    2 B.R. 620 (Bankr. D. Me. 1980) ......................................................5

In re Global Ocean Carriers, Ltd.,
    251 VB.R. 31 (Bankr. D. Del. 2000).....................................................8

In re MicroAge, Inc.,
    291 B.R. 503 (9th Cir. BAP 2002) ...................................................10

In re Rusty Jones, Inc.,
    110 B.R. 362 (Bkrtcy. N.D. Ill. 1990).................................................5

In re Swiftco, Inc.,
    110 B.R. 362 (Bankr. N.D. Ill. 1990) .................................................8

In re UVAS Farming Corp.,
    91 B.R. 579 (Bankr. D.N.M. 1988).....................................................5

Kane v. Johns-Manville Corp.
    (In re Johns-Manville Corp.),
    843 F.2d 636 (2d Cir. 1988) .............................................................5

Koelbl v. Glessing (In re Koelbl),
    751 F.2d 137 (2d Cir. 1984) .............................................................5

Manati Sugar Co. v. Mock,
    75 F.2d 284 (2d Cir. 1935) ...............................................................5

Mcorp Fin., Inc.,
    137 B.R. 219, 236
    (Bankr. S.D. Tex. 1992)....................................................................15

Pizza of Hawaii, Inc. v. Shakey's, Inc.
    (In re Pizza of Hawaii, Inc.),
    761 F.2d 1374 (9th Cir. 1985) ..........................................................9

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Platinum Capital, Inc. v. Sylmar Plaza, L.P.*
   *(In re Sylmar Plaza, L.P.),*
      314 F.3d 1070 (9th Cir. 2002) ................................................................5

*Resorts Int'l, Inc. v. Lowenschuss*
   *(In re Lowenschuss),*
      67 F.3d 1394 (9th Cir. 1995) ..............................................................16

*United States v. Arnold & Baker Farms*
   *(In re Arnold & Baker Farms),*
      177 B.R. 648 (9th Cir. BAP 1994), *aff'd on other grounds,*
      85 F.3d 1415 (9th Cir. 1996) ...............................................................3

## STATUTES

11 U.S.C. § 1122.............................................................................................13

11 U.S.C. § 1123.............................................................................................13

11 U.S.C. § 1123(a)(4).............................................................................13, 15

11 U.S.C. § 1123(a)(5).....................................................................................13

11 U.S.C. § 1125(e) .........................................................................................16

11 U.S.C. § 1129.........................................................................................3, 13

11 U.S.C. § 1129(a)(1).....................................................................................13

11 U.S.C. § 1129(a)(11).....................................................................................9

11 U.S.C. § 1129(a)(2).............................................................................13, 14

11 U.S.C. § 1129(a)(3).......................................................................................5

11 U.S.C. § 1129(a)(5).....................................................................................12

11 U.S.C. § 1129(b)(2)(B) .................................................................................8

1 **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE:**

2     The Official Joint Committee of Creditors Holding Unsecured Claims (the

3 "Committee") hereby objects to the *Third Amended Chapter 11 Plans Filed by SunCal*

4 *Plan Proponents in the Chapter 11 Cases of SunCal Oak Knoll, LLC and SunCal*

5 *Torrance, LLC [Group II: Trustee Debtors]* (the "Plan") jointly proposed by SCC

6 Acquisitions, Inc. ("SCC") and SunCal Oak Knoll, LLC and SunCal Torrance, LLC. The

7 Debtors and SCC are jointly referred to as "SunCal."

8     The Committee objects to the Plan because it violates several key provisions of the

9 Bankruptcy Code.[1]

10

11 **I.**    **INTRODUCTION**

12     In order to confirm the Plan, the Court must find by a preponderance of the

13 evidence that both the Plan and SunCal have complied with all of the applicable

14 provisions of title 11 and that the Plan has been proposed in good faith. *See* 11 U.S.C. §

15 1129; *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648,

16 654 (9th Cir. BAP 1994), *aff'd on other grounds*, 85 F.3d 1415 (9th Cir. 1996). Here, and

17 as set forth in greater detail below, the Plan should not be confirmed because it is

18 primarily designed to benefit the interests of insiders and not the interests of creditors,

19 although the Plan attempts to obscure the self-dealing objectives by establishing bid

20 procedures. A close reading of the Plan and disclosure statement describing the Plan

21 (the "Disclosure Statement")[docket no. 2481] confirms that the bid procedures are

22 actually designed to serve the interest of SunCal and its insiders and not designed to

23 obtain the highest and best price for the projects. SunCal then obfuscates significant

24 feasibility risks by using the artifice of "LitCo," purportedly an independent third party

25 funding source which is not funded and is not bound by the Plan; yet, it is contemplated

26

27     [1] As of the filing of this objection, the voting results are unknown. Accordingly, the Committee reserves the right to supplement this pleading or to address in a later pleading all provisions of § 1129 that depend on the outcome of the voting for analysis.

28

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  that LitCo may be a stalking horse bidder and is likely an insider (although this is not
2  sufficiently disclosed).

3      SunCal and its insiders will be vested with control over the projects long before the
4  Plan is effective and will have nearly unfettered control over the bidding process, including
5  the selection of the stalking horse bidder and the successful bidder.  The bid process,
6  when examined closely and with SunCal at the helm, reflects that it is designed to steer
7  the projects to insiders, as illustrated by a recent sales procedures motion filed in the
8  Voluntary Debtors' cases seeking to establish Steve Eileff as the stalking horse bidder,
9  and by the fact that the stalking horse bidder will be given a potentially significant breakup
10  fee (2% plus all payments advanced by the stalking horse bidder for administrative
11  expense claims required to be paid on the Effective Date of the Plan, which could
12  substantially increase the "break-up fee" to an even more unconscionable percent).  It
13  defies logic that anyone other than an entity assured of being the successful bidder would
14  be willing to advance the tens of millions of dollars necessary to pay administrative priority
15  claims owed in these cases.  Thus, the idea that the stalking horse bidder will be some
16  independent third party needing compensation for the risks of not being selected as the
17  successful overbidder is incredulous.  Once the projects are steered to insiders or those
18  partnering with SunCal and its insiders, there are no assurances under the Plan that the
19  equitable subordination litigation against Lehman will be maintained because there are no
20  incentives to do so and no realistic provisions for funding the litigation.

21      In addition to controlling the projects, SunCal and its insiders will receive broad
22  releases, have their management contracts assumed (even though the Plan is purportedly
23  a liquidating Plan), will be able to pay itself unlimited "management fees" (which they have
24  a history of overpaying), and be subject to virtually no Court oversight over their
25  administration of the Plan.  Given the self-dealing nature of the Plan, the various benefits
26  for SunCal and its insiders at the expense of creditors, and the infeasibility of the Plan, the
27  Court should not confirm the Plan and require creditors to bear the various risks
28  associated with the Plan for the benefit of SunCal and its insiders.

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   **II.**     **THE PLAN FAILS TO SATISFY VARIOUS CODE REQUIREMENTS FOR**

2              **CONFIRMATION**

3           **A.**     **The Plan Is Not Proposed in Good Faith and Therefore Fails to**

4                    **Satisfy 11 U.S.C. § 1129(a)(3)**

5           Section 1129(a)(3) requires that the Plan be "proposed in good faith and not by any

6   means forbidden by law." 11 U.S.C. § 1129(a)(3).  The term "good faith" is not defined in

7   the Bankruptcy Code, but the Ninth Circuit has held that "[a] plan is proposed in good faith

8   where it achieves a result consistent with the objectives and purposes of the Code."

9   *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070,

10  1074 (9th Cir. 2002)(citations omitted).  The Second Circuit has held that in order for a

11  plan to be proposed in good faith, the proponents must have "'honest and good

12  intentions'" and have "'a basis for expecting that a reorganization can be effected.'" *Kane*

13  *v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir.

14  1988)(quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935)).  Courts have

15  held that good faith is lacking where a plan is proposed for ulterior purposes.  *See Koelbl*

16  *v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)(quotations omitted).  "Full

17  disclosure is the very essence of the obligation imposed by the requirement of good faith."

18  *In re Cyr Bros. Meat Packing, Inc.*, 2 B.R. 620, 626 (Bankr. D. Me. 1980).  The

19  determination of whether a plan is proposed in good faith is based on the totality of the

20  circumstances.  *See Platinum Capital*, 314 F.3d at 1074.  A plan that is designed to

21  benefit insiders, at the expense of creditors, is not proposed in good faith.  *See In re Rusty*

22  *Jones, Inc.*, 110 B.R. 362, 375 (Bkrtcy. N.D. Ill. 1990) (holding that a plan that benefits

23  investors operating the debtor for their personal profit is not proposed in good faith); *In re*

24  *UVAS Farming Corp.*, 91 B.R. 579, 582 (Bankr. D.N.M. 1988) (holding that a plan that

25  would benefit equity security holders at the expense of unsecured creditors is not

26  proposed in good faith).

27          The Plan is purportedly a liquidating plan.  However, instead of being designed to

28  maximize the return to unsecured creditors, the Plan instead appears to have been

620448.1                                    5                              OBJECTION TO
                                                                    THIRD AMENDED PLAN

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  designed to benefit SunCal by enabling SunCal to sell the projects to a stalking horse
2  bidder that is an insider with bid procedures that will have the effect of chilling bidding,
3  thereby ensuring that the insider is not overbid. The Plan appears to have been proposed
4  primarily for the benefit of SunCal and its insiders, as evidenced by the following
5  provisions:

6      (1)      The Plan contemplates the formation of LitCo to purchase Allowed Reliance
7  Claims and to fund administrative expenses. Although the Plan and Disclosure Statement
8  provide no information about who owns LitCo and who its officers and directors will be, the
9  Disclosure Statement indicates that the SunCal Plan Proponents are in discussions with
10  third parties to obtain financing for LitCo, which strongly indicates that insiders are behind
11  LitCo. As acknowledged in the definitions section of the Plan at § 2.1.83, it is presently
12  contemplated that LitCo will serve as the stalking horse bidder. Indeed, in the related
13  voluntary debtor cases, the debtors, who have filed plans structured in a manner similar to
14  the Plan, recently filed a motion for approval of bid procedures that contemplated selling
15  the properties to companies owned by Steve Eileff, a minority owner of certain debtors
16  and the brother of Bruce Eileff, the majority owner. As acknowledged in the definitions
17  section of the Plan, it is presently contemplated that LitCo will serve as the stalking horse
18  bidder. The bid procedures require payment of a breakup fee that includes amounts paid
19  by a stalking horse bidder on account of Allowed Administrative Claims. Given the
20  magnitude of the Allowed Administrative Claims in these cases, the Committee believes
21  that the breakup fee is clearly designed to chill bidding and to ensure that no one overbids
22  the insider as the stalking horse bidder.

23      (2)      While it appears intended that LitCo, an entity that is, at a minimum,
24  affiliated with SunCal, will serve as the stalking horse bidder, SunCal retains virtually
25  unfettered control over the marketing process, making it additionally unlikely that SunCal
26  will select an independent buyer as a successful bidder.

27      (3)      On the Effective Date, the Plan Trust will be established and become
28  effective and SCC will serve as Plan Trustee. SCC is an indirect parent company of the

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1   Debtors and an alleged creditor of each of the Debtors.  Expenses of the Plan Trust or the

2   Plan Trustee will be paid prior to any distribution to beneficiaries of the Plan Trust.

3   Although SCC will not directly receive compensation for the services it performs as Plan

4   Trustee, the costs and expenses of the Plan Trust will be paid and the Plan Trustee is

5   entitled to retain such professionals and experts as it deems necessary to implement the

6   Plan.  It would not be surprising if SCC retained SunCal affiliates, including management

7   companies, to "implement the Plan" and treat the fees of retained affiliates as "costs" or

8   "expenses."  This is of particular concern given SunCal's history of overbilling with the

9   Debtors, as raised in various pending objections to the claims of SunCal Management.

10      (4)      Notwithstanding the fact that this is a liquidating plan so that the Debtors are

11   not entitled to a discharge, Section 7.8.6 of the Plan provides that the Debtors, SunCal,

12   the Plan Trustee and their members, officers, directors, shareholders, employees, and

13   agents will not be liable "for any loss or damages by reason of any action taken or omitted

14   by him or her, except in the case of fraud, willful misconduct, bad faith, or gross

15   negligence . . . ."  This limitation of liability could be broadly construed to provide a release

16   of claims against insiders or any of the SunCal entities, including the pending claim

17   objections against the SunCal entities.  Further, the Plan appears to release preference

18   claims against insiders with no analysis of the value of the claims.

19      (5)      The Plan contemplates the assumption of executory contracts and

20   unexpired leases on Exhibit "9" to the Disclosure Statement, which includes SunCal's

21   development management agreement.  The Trustee has not utilized SunCal Management

22   to manage the properties since his appointment and assumption would appear to be

23   unnecessary because the agreement is intended to provide management services related

24   to the projects, which are now proposed to be sold to the bidder offering the highest and

25   best price.  SunCal and its insiders are the only parties to benefit from an assumption of

26   these agreements, receiving the benefits of the cure amount and a substantial

27   administrative priority claim.  The attempted assumption is particularly troubling when the

28   management agreements are the subject of various pending objections to claims.

OBJECTION TO
THIRD AMENDED PLAN

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    Because the Plan is designed to benefit insiders at the expense of creditors, the

2 Plan was not proposed in good faith and should not be confirmed.

3    **B.    The Plan Is Not Fair and Equitable Because It Violates the**

4        **Absolute Priority Rule Set Forth in 11 U.S.C. § 1129(b)(2)(B)**

5    The Plan also violates the absolute priority rule because the Plan allows the

6 SunCal insiders to retain control over the assets while unsecured creditors are not paid in

7 full. As to unsecured creditors, a plan is "fair and equitable" if the claim is paid in full or,

8 alternatively, if a junior class of claims or interests will "not receive or retain under the plan

9 on account of such junior claim or interests any property. . . ." See 11 U.S.C. §

10 1129(b)(2)(B). This alternative condition, "dubbed the 'absolute priority rule,' generally

11 requires that all unsecured creditors be paid in full before equity security holders are

12 allowed to retain any ownership interest in the debtor." *See In re Brotby*, 303 B.R. 177,

13 195 (9th Cir. BAP 2003). "A plan is not fair to a dissenting class of creditors if it allows a

14 junior class to participate in any way in the reorganization." *In re Courtside Village, LLC*,

15 2003 WL 22764541 at*3 (Bankr. N.D. Cal. 2003); *see also In re Swiftco, Inc.*, 1988 WL

16 143714 at *17 (Bankr. S.D. Tex. 1988) (holding that "[t]herefore, the plan cannot comply

17 with § 1129(b)(2)(a)(II) and violates the absolute priority rule since the equity owners are

18 proposing to hold the property for a later sale or refinancing.").

19    Here, as discussed above, the Plan is designed to allow the SunCal insiders to

20 maintain control of and benefit from the assets, despite the fact that not all senior classes

21 are being paid in full. For example, SunCal gives itself the right to choose the stalking

22 horse bidder and to control the sale process and can thereby ensure that the stalking

23 horse bidder and ultimate purchaser is an insider (while not specifically disclosed by

24 SunCal, this appears to be their intention).

25    **C.    The Plan Is Not Feasible and Therefore Fails to Satisfy 11 U.S.C.**

26        **§ 1129(a)(11)**

27    Section 1129(a)(11) requires that confirmation of a plan is not likely to be followed

28 by the liquidation of the debtor or the further reorganization of the debtor, unless such

Smiley, Welland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 liquidation or reorganization is contemplated by the plan. *See* 11 U.S.C. § 1129(a)(11).

2 The standard for determining feasibility is whether the plan offers a reasonable assurance

3 of success. *See Acequia, Inc. v. Clinton (In re Acequia)*, 787 F.2d 1352, 1364-65 (9th Cir.

4 1986). The purpose of 11 U.S.C. § 1129(a)(11) "is to prevent confirmation of visionary

5 schemes which promise creditors and equity security holders more under a proposed plan

6 than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's,*

7 *Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985)(internal quotation

8 marks and citation omitted).

9 

10

**1.    There Is No Evidence that Litco Can Perform Its**

**Obligations Under the Plan**

11 Sections 2.1.83 and 2.1.84 of the Plan contemplate that LitCo, a newly formed

12 Delaware limited liability company, will purchase the claims and Litigation Rights held by

13 the Reliance Claimants electing to sell their claims and will make a loan sufficient to pay

14 all Allowed Priority Claims, Allowed Administrative Claims, and Post Confirmation

15 Expenses in full. Section 3.3 of the Plan provides that "the Lehman Disputed

16 Administrative Loans shall be paid in full, on the date referenced above, from either 1)

17 funds loaned to the Plan Trust by LitCo or another designated third party or 2) from the

18 funds in the applicable Net Sale Proceeds Account."

19 There is no information regarding LitCo and its officers, directors, managers, or

20 members. There is no information regarding whether LitCo has any relationship to

21 insiders. Similarly, there is no discussion about LitCo's ability to fund the LitCo Plan Loan.

22 To date, SunCal has not obtained the financing necessary for or from LitCo.

23 In addition, LitCo is not a signatory to the plan and will not be bound by the

24 provisions of the Plan to purchase Reliance Claims and to make loans. Moreover, if LitCo

25 does make loans, there is no disclosure regarding the repayment terms.

26 The funding by LitCo, its capital partner, or any designated third parties is critical to

27 the success of the Plan, because it is the source for, among other things, payment of the

28 Reliance Claims and any allowed administrative claims related to the loans funded by

Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002
Smiley,

1   Lehman post-petition with this Court's approval. Absent disclosure of the identity of LitCo

2   and its relationships to SunCal, LitCo's third party capital partner, their financial

3   wherewithal, the amount of the capitalization, the certainty of obtaining the funding, and

4   their commitment to funding as set forth in the Plan, SunCal's Plan is not feasible.

5       **2.**    **The Success of the Plan Depends Unrealistically on a**

6           **Successful Outcome of the Objection to the Lehman**

7           **Disputed Administrative Loans**

8       As SunCal acknowledges at Section 11.1.5 of the Disclosure Statement, the

9   success of the Plan hinges on SunCal successfully objecting to the Lehman Disputed

10  Administrative Loans. SunCal's objections are unlikely to be successful, however, in light

11  of the Court's recent ruling in reliance on *In re MicroAge, Inc.*, 291 B.R. 503 (9th Cir. BAP

12  2002). Given that the Lehman Disputed Administrative Loans are likely to be allowed, the

13  Plan can only be confirmed if LitCo funds the payment of such claims. With SunCal's

14  admitted lack of financing from LitCo,[2] the Plan is simply not feasible and should not be

15  confirmed.

16      **3.**    **The Plan Unrealistically Depends on the Successful**

17          **Resolution of the Lehman Claim Objections and the**

18          **Lehman Adversary Proceeding, as Well as the Successful**

19          **Sale of the Group I Trustee Debtor Projects After Only a**

20          **Short Marketing Period**

21      The Plan in many ways depends on the successful resolution of the Lehman Claim

22  Objections and the Lehman Adversary Proceeding and the successful sale of the Group I:

23  Trustee Debtor Projects. However, the sales process is controlled entirely by SunCal and

24  its insiders with little independent oversight and safeguards. If anything, the sale process

25  is designed to benefit insiders by ensuring that insiders will be the successful purchasers

26

27    [2] SunCal's Plan and Disclosure Statement also make reference to using Net Sale Proceeds to pay the
    Lehman Disputed Administrative Loans. However, such proposal is clearly not feasible since the sales of
    the projects are not even scheduled to occur until after the payments are required to be paid, on the
    Effective Date of the Plan.

28

Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

10

OBJECTION TO
THIRD AMENDED PLAN

1  of the projects. After SunCal and its insiders regain control of the projects through a

2  Court-sanctioned sale, there are no provisions for or assurances that the Lehman Claim

3  Objections and the Lehman Adversary Proceeding will be funded and pursued.

4      Moreover, if LitCo is unable to come up with enough money to fund what could be

5  a sizeable loan, there is no unencumbered cash until a successful resolution of the

6  Lehman Claim Objections or the Lehman Adversary Proceeding, either of which may

7  require relief from the automatic stay in the Lehman Entities' bankruptcy cases. As the

8  Court is well aware, final resolution could take years and the outcome is far from certain.

9  Between the uncertainty and delay of litigation and the dearth of information regarding

10 LitCo's ability to fund Plan obligations, the Plan is not feasible.

11     In sum, a cross of the fingers is not enough to render this Plan feasible. The Plan

12 falls far short of even the low threshold of proof required by the case law and cannot be

13 confirmed.

14     **D.**    **The Plan Does Not Satisfy 11 U.S.C. § 1129(a)(5) Because No**

15         **Information Has Been Provided About LitCo and the**

16         **Appointment of SCC Acquisitions as the Plan Trustee Is Not**

17         **Consistent with the Interests of Creditors**

18     In order to confirm a plan, it must comply with § 1129(a)(5), which provides as

19 follows:

20         (5)(A)(i)  The proponent of the plan has disclosed the identity
           and affiliations of any individual proposed to serve, after
21         confirmation of the plan, as a director, officer, or voting trustee
           of the debtor, or a successor to the debtor under the plan; and
22         (ii)  the appointment to, or continuance in, such office of such
           individual, is consistent with the interests of creditors and
23         equity security holders and with public policy; and
           (B) the proponent of the plan has disclosed the identify of any
24         insider that will be employed or retained by the reorganized
           debtor, and the nature of any compensation for such insider.
25
   11 U.S.C. § 1129(a)(5). "A Chapter 11 plan may not be confirmed if the continuation in
26
   management of the persons proposed to serve as officers or managers of debtor is not in
27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 the interests of creditors and public policy." *In re Bashas' Inc.*, 437 B.R. 874, 912 (Bankr.

2 D. Az. 2010).

3      Here, there is no information provided about who the managers or officers of SCC

4 are and who at SCC will actually perform the functions of the Plan Trustee. However,

5 what is known is that SCC is the indirect parent of the Debtors and therefore an insider or

6 affiliated entity. All of the property of the Debtors (other than Litigation Claims purchased

7 by LitCo) will vest in the Plan Trust on the Effective Date and the Plan Trust will then

8 obtain control over all of that property. The Plan is also designed to deem LitCo, a likely

9 insider, the stalking horse bidder and to ensure that LitCo is the successful bidder through

10 bidding procedures that are intended to chill bidding. Thus, the lack of any information

11 about LitCo and its affiliations is in violation of § 1129(a)(5).

12      As discussed above, the Committee believes that the Plan is engineered to benefit

13 SunCal at the expense of creditors, and to ensure that the SunCal insiders maintain

14 control over the assets despite the fact that creditors are not being paid in full.

15 Accordingly, the Committee does not believe that it is appropriate that SCC serve as the

16 Plan Trustee, and contends that the SunCal insiders' continued control of the Debtors and

17 their assets is not consistent with the best interests of creditors. Instead, an independent

18 party who does not have divided loyalties should be appointed to perform these functions

19 and to ensure that the fiduciary duties of a trustee are fulfilled.

20      **E.      The Plan Unfairly Discriminates Between Classes of Unsecured**

21           **Claims In Violation of 11 U.S.C. § 1123(a)(4)**

22      11 U.S.C. § 1123(a)(4) requires that a plan "provide the same treatment for each

23 claim or interest of a particular class, unless the holder of a particular claim or interest

24 agrees to a less favorable treatment of such particular claim or interest."

25      SunCal has never explained its methodology for determining which claims are

26 "Reliance Claims" versus "Non-Reliance Claims." Without such an explanation, it must be

27 assumed that the separate classification was arbitrary and, therefore, the differential

28 treatment between the classes is unfair discrimination.

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    **F.**    <u>**The Plan Does Not Provide Adequate Means for Its**</u>

2       <u>**Implementation and Therefore Violates 11 U.S.C. § 1129(a)(1)**</u>

3       Section 1129 requires that a plan comply "with the applicable provisions of this

4 title." 11 U.S.C. § 1129(a)(2). The most important of these provisions are set forth in §

5 1122, which governs classification of claims, and § 1123, which governs what plans must

6 contain and gives guidance on what they may contain. One of the mandatory provisions

7 of § 1123(a)(5) requires that a plan "provide adequate means for the plan's

8 implementation." The Plan fails that requirement.

9       Presumably, LitCo is purchasing the Litigation Claims from Reliance Claimants with

10 the intention of pursuing those claims. The Litigation Claims not purchased by LitCo are

11 vested in the Plan Trust. The Litigation Claims are already being pursued. The Plan is

12 silent on how LitCo and the Plan Trustee will make litigation decisions going forward.

13 Creditors relying on the Plan Trustee to pursue the litigation for their benefit should have

14 the benefit of knowing how those decisions will be made when the interests of LitCo and

15 the Plan Trustee are not necessarily aligned.

16       Second, the Plan vests all property of the Debtors, which includes objections to

17 claims filed by insiders, in the Plan Trust. However, Section 7.17 gives the Committee

18 standing to prosecute and resolve objections to claims filed by insiders that are SunCal

19 Affiliates and their professionals. Does the Committee have sole standing? What is the

20 effect of vesting it in one entity and giving standing to another? Can the Plan Trustee

21 compromise these claim objections, forcing the Committee to object and argue that the

22 Plan Trustee violated its "business judgment"?

23       Third, the Plan is silent about who will fund and maintain the real property pending

24 consummation of the sales. As the Court is well aware, there are significant health and

25 safety expenses associated with these properties. The Plan makes no provision for

26 payment of such expenses between confirmation and the sale of the projects, which could

27 be a lengthy period of time if SunCal seeks and obtains extensions of the Effective Date

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

OBJECTION TO
THIRD AMENDED PLAN

1 | from the Court. This failure to provide for proper maintenance of the projects is a further
2 | basis for denying confirmation.

3 | **G.** **The Committee Reserves Its Rights with Respect to Whether**
4 | **Plan Proponents Have Complied with the Solicitation**
5 | **Requirements of § 1129(a)(2)**

6 | The Committee understands that representatives of SunCal have been contacting
7 | creditors in order to solicit votes for the SunCal plans and against the Lehman plans. The
8 | Committee is currently investigating whether any of the statements made in connection
9 | with these solicitations were improper and the Committee reserves all rights with respect
10 | thereto.

11 |

12 | **H.** **THE PLAN HAS A NUMBER OF OTHER FATAL DEFECTS THAT**
13 | **RENDER IT UNCONFIRMABLE**

14 | **1.** **The Requirement That Class 6 Vote in Favor of the Plan In**
15 | **Order to Receive Favorable Treatment Is Inequitable**

16 | Although a plan may provide alternative treatment to a class of creditors, it cannot
17 | provide alternative treatment if one of the proposed alternatives is designed to solicit
18 | creditor acceptances because the other alternatives are so detrimental. *See In re Mcorp*
19 | *Fin., Inc.*, 137 B.R. 219, 236 (Bankr. S.D. Tex. 1992)("There is no authority in the
20 | Bankruptcy Code for discriminating against classes who vote against a plan of
21 | reorganization.")(internal citations omitted). Here, the Plan proposes that Class 6
22 | creditors who vote to accept the Plan are entitled to elect to receive "Option A" under
23 | which they will sell their Allowed Reliance Claims and Litigation Rights to LitCo for 55% of
24 | their allowed claim, payable in cash on the Effective Date. Class 6 creditors who vote to
25 | reject the Plan may not elect this treatment and will instead receive a minimum distribution
26 | of 1% of their allowed claim and retain their Reliance Claims and rights against the
27 | Lehman Entities and the right to receive a pro rata distribution of any funds payable from
28 | the applicable Distribution Account. It is widely believed that creditors electing Option A

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 will fare far better.  This alternative treatment makes it impossible for creditors to vote

2 freely and without duress and therefore is not fair and equitable, unfairly discriminates,

3 and is generally problematic.  In addition, this treatment violates the rule in § 1123(a)(4)

4 that similarly situated creditors be provided substantially similar provisions.  *See* 11 U.S.C.

5 § 1123(a)(4).

6

7 **2.**    **The Plan Improperly Releases Insiders and Third Parties**

8     Section 7.8.6 of the Plan contains the following limitation of liability provision that

9 improperly releases third parties and appears to discharge the Debtors of all obligations

10 other than those incurred as a result of fraud.  Neither is permissible.

11                 None of the Group I Trustee Debtors, the Trustee
Debtors' Committee, the Plan Sponsor, the SunCal Plan
12         Proponents, the Plan Trustee, the Professionals, nor any of
their respective members, officers, directors, shareholders,
13         employees, or agents (the "Indemnified Parties") shall be liable
(a) for any loss or damages by reason of any action taken or
14         omitted by him or her, except in the case of fraud, willful
misconduct, bad faith, or gross negligence, (b) for any act or
15         omission made in reliance upon the Debtors' books and
records or upon information or advice given to the Plan Trustee
16         by his or her professionals, or (c) for any action taken or
omission made in connection with or related to the
17         negotiations, formulation, or preparation of the  Plan and the
Disclosure Statement, the approval of the Disclosure
18         Statement, the confirmation of the Plan, the consummation of
the Plan, or the administration of the Plan, the Cases, or the
19         property to be distributed under the Plan, to the fullest extent
permitted by applicable statute and case law.
20

21 This section goes on to provide for indemnification and release of the Indemnified Parties.

22 Whether intentional or the result of poor draftsmanship, this release is impermissible

23 because it gives the Debtors and third parties a release of all claims, not just those related

24 to solicitation.  Indeed, the Committee is concerned that this provision can be construed to

25 release SunCal Management, an agent of the Debtors, from any claims other than those

26 based on fraud and gross negligence. Not only are the Debtors not entitled to any such

27 release because this is a liquidation plan, but third parties are similarly not entitled to any

28 releases from liability and a plan that purports to give such a release cannot be confirmed.

620448.1                                    15                            OBJECTION TO
THIRD AMENDED PLAN

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   *See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th

2   Cir. 1995).  Because this is a liquidating case, the only release that would be appropriate

3   is one that is confined to solicitation and participation as contemplated by 11 U.S.C. §

4   1125(e).  Until the Plan is appropriately modified, this release renders it unconfirmable.

5

6   **III.   THE COMMITTEE BELIEVES THAT BECAUSE OF THE CONFUSING**

7   **MANNER IN WHICH BALLOTS WERE DISSEMINATED, RELIANCE**

8   **CLAIMANTS SHOULD BE GIVEN ANOTHER OPPORTUNITY TO ELECT**

9   **TO RECEIVE OPTION A TREATMENT**

10   Since the service of the Plan packages, counsel for the Committee has fielded

11   many calls from creditors confused about the Plan packages.  Unfortunately, it appears

12   that creditors received ballots for all five Group I cases, even if they were not creditors of

13   all five cases.  Moreover, they did not receive the ballot for their particular class, but

14   apparently received all of the ballots (for all of the voting classes), leaving them to

15   determine which ballot to fill out.  Further, at least one Reliance Claimant who also had a

16   mechanic's lien informed the Committee's attorneys that he was instructed by counsel for

17   SunCal not to complete the Class 6 ballot and to instead only fill out the Class 3 ballot, or

18   else he may be deemed to have waived his mechanic's lien claim.  That instruction is

19   simply incorrect and by complying, the creditor missed the opportunity to elect the more

20   favorable treatment provided to Class 6 creditors who made the election.  Simply put,

21   creditors are confused.  Because of that, if the Court is inclined to confirm the Plan, then

22   the Committee believes that it would be appropriate for all creditors in Class 6 who did not

23   make the election to be receive the Option A treatment or who voted in Class 3 and not

24   Class 6 even though they are Reliance Claimants, to be given a second opportunity to

25   make the election to receive the treatment afforded by Option A.  In addition, if the Court·

26   agrees with the Committee's argument that Option A should have been made available to

27   creditors regardless of whether they accepted or rejected the Plan, then the rejecting

28   Reliance Claimants should also be given an opportunity to make the election.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## IV. CONCLUSION

Because the Plan is designed to benefit insiders of the Debtors at the expense of creditors and because feasibility depends on little more than a cross of the fingers, the Committee urges the Court to deny confirmation of the Plan.

Dated: September 19, 2011

Respectfully submitted,

WEILAND, GOLDEN
SMILEY, WANG EKVALL & STROK, LLP

By: /s/ Lei Lei Wang Ekvall
LEI LEI WANG EKVALL
Attorneys for the Joint Committee of
Creditors Holding Unsecured Claims

620448.1

17

OBJECTION TO
THIRD AMENDED PLAN

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is :**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document described as **JOINT COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS' OBJECTION TO THIRD AMENDED CHAPTER 11 PLAN FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK KNOLL, LLC AND SUNCAL TORRANCE, LLC [GROUP II: TRUSTEE DEBTORS]**will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.   On **September 19, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☑ Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 19, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**The Honorable Erithe Smith**
**United States Bankruptcy Court**                **(Via Personal Delivery)**
**411 West Fourth Street**
**Santa Ana, CA 92701**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 19, 2011 | Terri Jones | /s/ Terri Jones |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                      **F 9013-3.1.PROOF.SERVICE**
620446.1

## TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")

Selia M Acevedo   sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
Joseph M Adams   jadams@sycr.com
Raymond H Aver   ray@averlaw.com
James C Bastian   jbastian@shbllp.com
Thomas Scott Belden   sbelden@kleinlaw.com, ecf@kleinlaw.com
John A Boyd   fednotice@tclaw.net
Mark Bradshaw   mbradshaw@shbllp.com
Gustavo E Bravo   gbravo@smaha.com
Jeffrey W Broker   jbroker@brokerlaw.biz
Brendt C Butler   bbutler@mandersonllp.com
Andrew W Caine   acaine@pszyjw.com
Carollynn Callari   ccallari@venable.com
Cathrine M Castaldi   ccastaldi@rusmiliband.com
Tara Castro Narayanan   tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
Dan E Chambers   dchambers@jmbm.com
Shirley Cho   scho@pszjlaw.com
Vonn Christenson   vrc@paynefears.com
Brendan P Collins   bpcollins@bhfs.com
Vincent M Coscino   vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
Paul J Couchot   pcouchot@winthropcouchot.com,
pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
Geoffrey Crisp   geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
Jonathan S Dabbieri   dabbieri@sullivan.com,
hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
Ana Damonte   ana.damonte@pillsburylaw.com
Vanessa S Davila   vsd@amclaw.com
Melissa Davis   mdavis@shbllp.com
Daniel Denny   ddenny@gibsondunn.com
Caroline Djang   crd@jmbm.com
Caroline Djang   cdjang@rutan.com
Donald T Dunning   ddunning@dunningLaw.com
Lynsey M Eaton   leaton@gglts.com
Meredith R Edelman   meredith.edelman@dlapiper.com
Joseph A Eisenberg   jae@jmbm.com
Lei Lei Wang Ekvall   lekvall@wgllp.com
Richard W Esterkin   resterkin@morganlewis.com
Don Fisher   dfisher@ptwww.com
Marc C Forsythe   kmurphy@goeforlaw.com
Alan J Friedman   afriedman@irell.com
Steven M Garber   steve@smgarberlaw.com
Christian J Gascou   cgascou@gascouhopkins.com
Barry S Glaser   bglaser@swjlaw.com
Robert P Goe   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
Eric D Goldberg   egoldberg@stutman.com
Richard H Golubow   rgolubow@winthropcouchot.com, pj@winthropcouchot.com
Michael J Gomez   mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
Kelly C Griffith   bkemail@harrisbeach.com
Matthew Grimshaw   mgrimshaw@rutan.com
Kavita Gupta   kgupta@winthropcouchot.com
Asa S Hami   ahami@morganlewis.com
Michael J Hauser   michael.hauser@usdoj.gov
D Edward Hays   ehays@marshackhays.com
Michael C Heinrichs   mheinrichs@omm.com
Harry D. Hochman   hhochman@pszjlaw.com, hhochman@pszjlaw.com
Jonathan M Hoff   jonathan.hoff@cwt.com
Nancy Hotchkiss   nhotchkiss@trainorfairbrook.com

Michelle Hribar    mhribar@rutan.com
John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
Lawrence A Jacobson    laj@cohenandjacobson.com
Michael J Joyce    mjoyce@crosslaw.com
Stephen M Judson    sjudson@fablaw.com
Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
Steven J Kahn    skahn@pszyjw.com
Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
David I Katzen    katzen@ksfirm.com
Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com
Irene L Kiet    ikiet@hkclaw.com
Claude F Kolm    claude.kolm@acgov.org
Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
David B Lally    davidlallylaw@gmail.com
Leib M Lerner    leib.lerner@alston.com
Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
Charles Liu    cliu@marshackhays.com
Charles Liu    cliu@winthropcouchot.com
Ben H Logan    blogan@omm.com
John W Lucas    jlucas@pszjlaw.com
Kerri A Lyman    klyman@irell.com
Mariam S Marshall    mmarshall@marshallramoslaw.com
Robert C Martinez    rmartinez@mclex.com
Michael D May    mdmayesq@verizon.net
Hutchison B Meltzer    hmeltzer@wgllp.com
Krikor J Meshefejian    kjm@lnbrb.com
Joel S. Miliband    jmiliband@rusmiliband.com
James M Miller    jmiller@millerbarondess.com,
vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
Louis R Miller    smiller@millerbarondess.com
Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
Randall P Mroczynski    randym@cookseylaw.com
Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
Robert Nida    Rnida@castlelawoffice.com
Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
Sean A Okeefe    sokeefe@okeefelc.com
Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
Ernie Zachary Park    ernie.park@bewleylaw.com
Daryl G Parker    dparker@pszjlaw.com
Penelope Parmes    pparmes@rutan.com
Robert J Pfister    rpfister@ktbslaw.com
Ronald B Pierce    ronald.pierce@sdma.com
Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
Cassandra J Richey    cmartin@pprlaw.net
Debra Riley    driley@allenmatkins.com
James S Riley    tgarza@sierrafunds.com
Todd C. Ringstad    becky@ringstadlaw.com
R Grace Rodriguez    ecf@lorgr.com
Martha E Romero    Romero@mromerolawfirm.com
Ronald Rus    rrus@rusmiliband.com
John P Schafer    jschafer@mandersonllp.com
John E Schreiber    jschreiber@dl.com
William D Schuster    bills@allieschuster.org
Christopher P Simon    csimon@crosslaw.com
Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
Wendy W Smith    wendy@bindermalter.com
Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
Michael St James    ecf@stjames-law.com
Michael K Sugar    msugar@irell.com
Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
David A Tilem    davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Carol G Unruh    cgunruh@sbcglobal.net
Annie Verdries    verdries@lbbslaw.com
Jason Wallach    jwallach@gladstonemichel.com
Joshua D Wayser    , kim.johnson@kattenlaw.com
Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
David M Wiseblood    dwiseblood@seyfarth.com
Brett K Wiseman    bwiseman@aalaws.com
Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
Marc A. Zimmerman    joshuasdaddy@att.net