1  IRELL & MANELLA LLP
   Alan J. Friedman (State Bar No. 132580)
2  afriedman@irell.com
   Howard J. Steinberg (State Bar No. 89291)
3  hsteinberg@irell.com
   840 Newport Center Drive, Suite 400
4  Newport Beach, California 92660-6324
   Telephone:  (949) 760-0991
5  Facsimile:  (949) 760-5200

6  Counsel for the Official Committee of
   Unsecured Creditors in
7  Chapter 11 Cases of Palmdale Hills
   Property, LLC et al.

8

9              UNITED STATES BANKRUPTCY COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  SANTA ANA DIVISION

   In re                                    Case No. 8:08-bk-17206- ES
12 PALMDALE HILLS PROPERTY, AND ITS
   RELATED DEBTORS,                         Jointly Administered With Case Nos.
13                                          8:08-bk-17209-ES; 8:08-bk-17240-ES;
          Joint Administered Debtors and    8:08-bk-17224-ES; 8:08-bk-17242-ES;
14           Debtors-in-Possession          8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                            8:08-bk-17227-ES; 8:08-bk-17246-ES;
15 Affects:                                 8:08-bk-17230-ES; 8:08-bk-17231-ES;
   ☐ All Debtors                            8:08-bk-17236-ES; 8:08-bk-17248-ES;
16 ☒ Palmdale Hills Property, LLC           8:08-bk-17249-ES; 8:08-bk-17573-ES;
   ☒ SunCal Beaumont Heights, LLC           8:08-bk-17574-ES; 8-08-bk-17575 ES;
17 ☐ SCC/Palmdale, LLC                      8:08-bk-17404-ES; 8:08-bk-17407-ES;
   ☐ SunCal Johannson Ranch, LLC            8:08-bk-17408-ES; 8:08-bk-17409-ES;
18 ☒ SunCal Summit Valley, LLC              8:08-bk-17458-ES; 8:08-bk-17465-ES;
   ☐ SunCal Emerald Meadows LLC             8:08-bk-17470-ES; 8:08-bk-17472-ES
19 ☐ SunCal Bickford Ranch, LLC             8:08-bk-17588-ES
   ☒ Acton Estates, LLC
20 ☒ Seven Brothers LLC                     Chapter 11 Cases
   ☐ SJD Partners, Ltd.
21 ☐ SJD Development Corp.                  OBJECTION AND RESERVATION OF
   ☒ Kirby Estates, LLC                     RIGHTS OF OFFICIAL COMMITTEE
22 ☒ SunCal Communities I, LLC              OF UNSECURED CREDITORS OF THE
   ☐ SunCal Communities III, LLC            VOLUNTARY DEBTORS WITH
23 ☒ SCC Communities LLC                    RESPECT TO THIRD AMENDED JOINT
   ☐ North Orange Del Rio Land, LLC         CHAPTER 11 PLAN FOR ELEVEN
24 ☒ Tesoro SF LLC                          VOLUNTARY DEBTORS PROPOSED
   ☐ LBL-SunCal Oak Valley, LLC             BY THE LEHMAN VD LENDERS
25 ☐ SunCal Heartland, LLC
   ☐ LBL-SunCal Northlake, LLC              Hearing:
26                                          Date:  October 24, 2011
27 *Caption Continued on Next Page*         Time:  9:30 a.m.
                                            Place: Courtroom 5A
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

1

2    ☐ SunCal Marblehead, LLC
     ☐ SunCal Century City, LLC
3    ☐ SunCal PSV, LLC
     ☐ Delta Coves Venture, LLC
4    ☐ SunCal Torrance, LLC
     ☐ SunCal Oak Knoll, LLC
5

6       **TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY**

7    **JUDGE, THE RELATED DEBTORS, THE OFFICE OF THE UNITED STATES**

8    **TRUSTEE, AND ALL OTHER PARTIES-IN-INTEREST:**

9          The Official Joint Committee of Creditors Holding Unsecured Claims (the "Committee"),

10   duly appointed in the related jointly administered chapter 11 cases of Palmdale Hills Property,

11   LLC, SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC, SunCal Johannson Ranch, LLC,

12   SunCal Summit Valley, LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC,

13   Acton Estates, LLC, Seven Brothers, LLC, SJD Partners, Ltd., SJD Development Corp., Kirby

14   Estates, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Communities

15   LLC, North Orange Del Rio Land, LLC, and Tesoro SF, LLC, (the "Voluntary Debtors"),[1] hereby

16   submits this Objection and Reservation of Rights with respect to the Third Amended Joint Chapter

17   11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders (the "Lehman Plan")[2]

18   filed by the Lehman Lenders ("Lehman").

19                                   **I.**

20                          **PRELIMINARY STATEMENT**

21          The Committee's goal and challenge throughout these Chapter 11 cases has been to have

22   Lehman and the Voluntary Debtors propose competing *confirmable* chapter 11 plans that bestow

23

24          [1] The Voluntary Debtors' Chapter 11 cases are jointly administered with the following nine
     (9) related entities: LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal
25   Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta
     Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (the "Trustee Debtors").  A
26   Chapter 11 Trustee has been appointed in the Trustee Debtors' Chapter 11 cases (the "Trustee")
     and a separate committee of unsecured creditors was established.  The Voluntary Debtors and the
27   Trustee Debtors are hereinafter collectively referred to as the "Related Debtors."

28          [2] Capitalized terms not otherwise defined herein have the meaning set forth in the Lehman
     Plan.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712                           -2-

1  upon the creditors meaningful choices that will lead to a meaningful distribution.  Unfortunately,

2  neither Lehman nor the Voluntary Debtors have whole-heartedly embraced this challenge.  Each

3  has proposed plans that fail to satisfy applicable requirements of the Bankruptcy Code, thus

4  necessitating the filing of objections.  The Committee hopes that after review of these objections,

5  Lehman will make the requisite modifications to its plan so that the parties can achieve the goal of

6  competing *confirmable* plans.

7  **II.**

8  **THE LEHMAN PLAN CANNOT BE CONFIRMED**

9       Regardless of whether Lehman's Plan is approved by all classes of creditors entitled to

10  vote, it cannot be confirmed.  "The [plan proponent] carries the burden of proving that a Chapter

11  11 plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b),"

12  *United States Of America, v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R.

13  648, 654 (B.A.P. 9th Cir. 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054,

14  117 S. Ct. 681 (1997).  Further, even in the absence of objections by interested parties, the Court

15  has an affirmative duty to ensure that a plan satisfies all requirements of the Bankruptcy Code

16  before it can confirm a plan. *See In re Ambanc La Mesa Limited Partnership*, 115 F.3d 650, 653

17  (9th Cir. 1997), cert. denied, 522 U.S. 1110, 118 S. Ct. 1039 (1998).

18       Section 1129(a) sets forth sixteen requirements, all of which must be met before a court

19  may confirm a plan.  A court must confirm a plan if the plan proponent proves by a preponderance

20  of the evidence either (1) that the plan satisfies all sixteen requirements of 11 U.S.C. § 1129(a), or

21  (2) if the only condition not satisfied is the eighth requirement, 11 U.S.C. § 1129(a)(8), a plan

22  satisfies the "cramdown" alternative to this condition found in 11 U.S.C. § 1129(b), which

23  requires that the plan "does not discriminate unfairly" against and "is fair and equitable" towards

24  each impaired class that has not accepted the plan. See *Arnold and Baker*, 177 B.R. at 654.

25  **A.    THE LEHMAN PLAN MAY NOT BE FEASIBLE AS REQUIRED BY**

26       **§ 1129(a)(11)**

27       Pursuant to § 1129(a)(11), a plan of reorganization may be confirmed only if

28  "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-3-

1  financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

2  liquidation or reorganization is proposed in the plan." The plan proponent is obliged to provide

3  the court and creditors with sufficient information to make a feasibility determination. *See In re*

4  *Walker,* 165 B.R. 994, 1004-05 (E.D. Va. 1994). A court may not confirm a plan of

5  reorganization when the plan is nothing more than a visionary scheme which promises creditors

6  and equity security holders more than it can possibly deliver. *In re Pizza of Hawaii,* 761 F.2d

7  1374, 1382 (9th Cir. 1985). A plan constitutes a visionary scheme when a plan proponent cannot

8  show that a plan has a reasonable chance of success. *In re Acequia, Inc.,* 787 F.2d 1352, 1364 (9th

9  Cir. 1986); *In re Save Our Spring Alliance Inc.,* 388 B.R. 202, 241 (Bankr. W.D. Tex. 2009)

10  (finding plan infeasible when debtor had only intention of contributing money necessary to

11  effectuate the reorganization plan); *In re Repurchase Corp.,* 332 B.R. 336, 342-343 (Bankr. N.D.

12  Ill. 2005) (finding plan infeasible when the plan relied on speculative funding), *aff'd,* 2008 WL

13  4379035 (N.D. Ill. 2008).

14      Confirmation of the Lehman Plan is conditioned on this Court and the New York

15  Bankruptcy Court approving the Settling Bond Issuer Agreements. (Lehman Plan, §14.1, p. 95)

16  To date, the Lehman VD Lenders have not submitted any Settling Bond Issuer Agreements to this

17  Court for approval. In fact, the Lehman VD Lenders have not yet reached a final settlement with

18  any of the Bond Issuers and it is quite possible that no settlement will be reached or that the final

19  Settling Bond Issuer Agreements will look substantially different than the terms described in the

20  Lehman Plan and Disclosure Statement. It makes no sense for the confirmation process to

21  continue with this condition hanging over the parties' collective heads. The Lehman VD Lenders

22  should waive this contingency as a condition to the confirmation of the Lehman Plan or

23  confirmation should not proceed.

24      Separate and apart from this contingency, yet of equal if not greater import are the other

25  conditions precedent to entry of the Confirmation Order and to realization of the Effective Date,

26  including as to Group I Debtors that Lehman Plan Funding not exceed $22 million (the "Group 1

27  Funding Cap"), and as to Group II Debtors that Allowed Senior Claims not exceed $3 million (the

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-4-

1  "Group 2 Funding Cap, and collectively with the Group 1 Funding Cap, the "Funding Caps")."

2  (Lehman Plan, §14.3(a), p. 96)

3      The Lehman VD Lenders must present sufficient evidence to the Court that *all* of these

4  conditions will be satisfied.  Recently, Robert Brusco, testifying as the personal most

5  knowledgeable in connection with the Lehman Plan on behalf of the Lehman VD Lenders,

6  testified that there was between $2 and $3 million of room in connection with the Group 1

7  Funding Cap.  Failure to stay under the Funding Caps gives Lehman the unfettered right to walk

8  away from the Lehman Plan, post confirmation.   Given Mr. Brusco's testimony, there is no point

9  in going through the confirmation process still allowing the Lehman VD Lenders this free pass.

10  This condition must be waived in advance of the confirmation process commencing on

11  October 24, 2011 in order for this Court to be able to make a finding that the Lehman Plan is

12  feasible.

13      Additionally, feasibility is of particular import since the Lehman Plan appears to

14  effectuate the assignment of Creditors' Claims in consideration for the Lehman Distribution

15  Enhancement as of the date of the Confirmation Order, rather than the Effective Date.  (Lehman

16  Plan, § 8.9.1, p. 77: "If the Ballot is appropriately marked to indicate the Creditor's election to

17  receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment/Release

18  for Lehman, the Confirmation Order, without more, shall effectuate the assignment and/or release,

19  waiver and relinquishment described or referenced in this section for the Lehman Released Parties,

20  in accordance herewith.")  To avoid a potential legal morass, the assignment and release should

21  not be effectuated until the Effective Date, since it is possible that the Lehman Plan could be

22  confirmed but not ever go effective.

23  **B.      THE LEHMAN PLAN FAILS TO COMPLY WITH  §1129(a)(1)**

24      Section 1129(a)(1) provides as follows:

25      (a)  The court shall confirm a plan only if all of the following requirements are met:

26          (1) The plan complies with the applicable provisions of this title.

27  There are number of provisions in the Lehman Plan that violate this restriction.

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-5-

1    **1.    There Is An Improper Release Of Claims Against The Lehman Released**

2    **Parties**

3    Section 8.9.2 of the Lehman Plan purports to release claims held by the VD Plan Debtors

4    and their Estates against each Lehman Released Party for pre and post-petition conduct as of the

5    Effective Date.  Further, since the release is triggered as of the Effective Date, it covers acts that

6    will occur subsequent to the confirmation hearing.  The definition of Lehman Released Parties is

7    expansive and includes entities that have contributed no money to fund the Lehman Plan as well

8    as professionals employed by the Lehman Released Parties.  The Lehman Released Parties are

9    defined as follows:

10            All of the following Persons: (a) the Lehman Creditors, (b) each of the defendants
11            to any complaint, pending or dismissed, in the ES Action, (c) each, every and any
                owner, including future owners, of each of the Plan Projects, including the Lehman
12            Nominees, which owner is, was or will be a grantee, transferee, successor or assign
                of the applicable VD Plan Debtor that owns or owned such Plan Project, (d) LBHI,
13            Property Asset Management, Inc., and any other direct or indirect subsidiary
                thereof including, without limitation, any entity that is or was a member or partner
14            of any upper-tier joint venture, partnership or limited liability company that is or
                was a direct or indirect parent of any VD Plan Debtor, (e) Alvarez & Marsal, LLC
15            and (f) the respective Affiliates of all of the foregoing Persons and each of their
                respective officers, directors, shareholders, members, managers, employees, agents,
16            independent contractors, administrators, consultants, asset managers, attorneys,
                accountants, trustees, insurers, representatives, successors and assigns. (Lehman
17            Plan, Exhibit E, p. 20)

18    These nondebtor releases are in direct violation of controlling Ninth Circuit law.  *See*

19    *American Hardwoods, Inc. v. Deutsche Credit Corporation (In re American Hardwoods, Inc.)*,

20    885 F.2d 621 (9th Cir. 1989).  In that case, the debtor sought a permanent injunction against the

21    enforcement of actions against its officers and directors (the Keelers) arising from a guaranty.  The

22    bankruptcy court declined to issue the injunction, finding that it lacked the authority.  The district

23    court reversed.  The Ninth Circuit reversed the district court, holding that the bankruptcy court

24    lacks jurisdiction to discharge debts of nondebtor individuals and entities.  The court noted that the

25    debtor's request for a permanent injunction was the functional equivalent of a discharge.  *Id.* at

26    626.  The court also discussed the longstanding rule that:

27            [A] corporation's discharge in bankruptcy "shall not release its
                officers, the members of its board of directors or trustees or of other
28            similar controlling bodies, or its stockholders or members, as such,
                from any liability under the laws of a State or of the United States."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-6-

1

2

> [Citations omitted]. Thus, under the old Act, stockholders or
> directors could remain liable for substantive violations despite
> discharge of the corporate entity.

3   *Id.* at 625. The Ninth Circuit went on to hold that the established rule was incorporated into § 524

4   of the Bankruptcy Code, precluding bankruptcy courts from discharging nondebtors: "Section

5   524(e), therefore, limits the court's equitable power under section 105 to order the discharge of the

6   liabilities of nondebtors, such as Keelers." *Id. See also, In re Lowenschuss,* 67 F.3d 1394, 1401

7   (9th Cir. 1995) ("This court has repeatedly held, without exception, that § 524(e) precludes

8   bankruptcy courts from discharging the liabilities of non-debtors."), cert. denied, 517 U.S. 1243,

9   116 S. Ct. 2497 (1996).

10      Even if the purported "consent" mechanism for the proposed releases were deemed to

11  comply with applicable Ninth Circuit law on third-party releases (which it does not), the

12  permanent injunction provision of the Lehman Plan negates any meaningful consent.  Section 12

13  of the Lehman Plan states that all Persons, not just those that agree to grant a release to the

14  Lehman Released Parties, are enjoined from pursuing claims against the Lehman Released Parties

15  and other entities to the extent it is based upon a claim against a VD Debtor.  Specifically, Section

16  12 provides:

17

18

19

20

21

22

23

> Except as otherwise expressly provided in the Plan, the documents executed pursuant to
> the Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have
> held, currently hold, or may hold a debt, Claim, or Interest against a VD Plan Debtor
> (including but not limited to States and other governmental units, and any State official,
> employee, or other entity acting in an individual or official capacity on behalf of any State
> or other governmental units, other than as to matters excepted from the automatic stay by
> Bankruptcy Code § 362(b)(4), including, without limitation, the commencement or
> continuation of an action or proceeding by a governmental unit to enforce such
> governmental unit's police and regulatory power, including the enforcement of a judgment
> other than a monetary judgment, obtained in an action or proceeding by the governmental
> unit to enforce such governmental unit's police or regulatory power) shall be permanently
> enjoined from:

24

> (a)    taking any of the following actions on account of any such debt, Claim, or Interest:

25

> (1)    commencing or continuing in any manner any action or other proceeding against
> the Liquidating Trustee or the Lehman Released Parties (or the successors or
> property of either of them);

26

27

28

> (2)    enforcing, attaching, executing, collecting, or recovering in any manner any
> judgment, award, decree, or order against the Liquidating Trustee or the Lehman
> Released Parties (or the successors or property of either of them);

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

(3)   creating, perfecting, or enforcing any Lien or encumbrance against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(4)   asserting any set off, right of subrogation, or recoupment of any kind against any obligation due to the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(b)   challenging the Distributions to be effected by the Plan or the classification of Claims or Interests set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

The proposed permanent injunction bars all creditors and equityholders from bringing any actions against a variety of parties, including the Lehman Released Parties, regardless of whether a particular creditor has voted for the Lehman Plan or accepted a distribution under the Lehman Plan. It makes absolutely no difference whether a particular creditor consents to the release because even if such creditor refuses to consent, the creditor will be enjoined from pursuing its own causes of action to the extent it is based upon a claim against a VD Debtor. The Court should refuse to confirm any plan that contains this illegal "release/permanent injunction" provision.

## 2.   The Lehman Plan Fails To Comply With § 502(a).

Section 502(a) provides as follows:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

Section 10.1 of the Lehman Plan violates the provisions of § 502(a). Section 10.1 provides the Liquidating Trustee and Lehman Creditors with the exclusive right to object to Claims. Since this plan provision violates § 502(a), the Lehman Plan fails to satisfy the requirements of § 1129(a)(1).

## 3.   The Lehman Plan Improperly Bars Setoff And Recoupment Rights

In Section 12(a)(4) (p. 93) of the Lehman Plan, Persons are barred from:

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712                                              -8-

1  asserting any set off, right of subrogation or recoupment of any kind
2  against any obligation due to the Liquidating Trustee or the Lehman
   Released Parties (or the successors or property of either of them);

3

4  In considering the relationship between § 524(a) and § 553 of the Bankruptcy Code, the

5  Ninth Circuit has concluded that a debtor's discharge in bankruptcy does not bar a creditor from

6  asserting its right to setoff or recoupment. The court noted that a contrary interpretation would

7  nullify § 553. *In re De Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269, 1276-77 (9th Cir.

8  1992). *See, also, In re Buckenmaier,* 127 B.R. 233, 237 (B.A.P. 9th Cir. 1991).

9  While the Lehman Plan, which is a liquidating plan, does not purport to give the Voluntary

10  Debtors a discharge, the injunction in Section 12 of the Lehman Plan appears to be the equivalent

11  of a discharge injunction under § 524.  The Committee is aware of no authority that would permit

12  the Court or Lehman VD Lenders to bar creditors' setoff and recoupment rights after confirmation

13  when not even a § 524 discharge has that effect.

14  The Lehman Plan also appears to be internally contradictory, since as to Creditors who

15  execute a Creditors' Assignment/Release, they are allowed to assert offset and recoupment rights.

16  (Lehman Plan, §8.9.1, p. 77)

17  **4.    The Lehman Plan Fails To Provide The Same Treatment For Each Claim Of**

18  **A Particular Class**

19  Under the Lehman Plan, Reliance Claims are classified in Class 6.  A Reliance Claim is

20  defined as a non-priority, unsecured Claim "for money, goods, services, or new credit voluntarily

21  transferred or extended to the applicable VD Plan Debtor between August 1, 2007 and the

22  applicable Petition Date(s) " that was timely filed or was a Scheduled Clam. (Lehman Plan,

23  Exhibit E, p. 28)  In the event a Holder of a Reliance Claim elects to receive the Lehman

24  Distribution Enhancement and executes the Ballot so indicating, it is assured of receiving at least a

25  40% Guaranteed Minimum Distribution. (Lehman Plan, §6.6.2) Carved out from the definition of

26  a Reliance Claim are all claims held by Insiders. (Lehman Plan, Exhibit E, p. 28)  An Insider who

27  holds a claim that would otherwise be a Reliance Claim but for this carve out is treated as the

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1     Holder of a Class 7 Claim, and is only assured of receiving a maximum of a 5% Guaranteed

2     Minimum Distribution even though it provides the same release. (Lehman Plan, §6.7.2)

3        Courts have universally held that an insider's claim is entitled to the same treatment as

4     other creditors' claims, absent additional circumstances, such as undercapitalization of the debtor

5     or affirmative misconduct by the insider-creditor. *See, e.g., Comstock v. Group of Institutional*

6     *Investors,* 335 U.S. 211, 68 S. Ct. 1454, 92 L. Ed. 1911 (1948); *In re SI Restructuring, Inc.,* 532

7     F.3d 355 (5th Cir. 2008); *In re ASI Reactivation, Inc.,* 934 F.2d 1315 (4th Cir. 1991) (no basis to

8     subordinate where insider purchased secured claim prepetition).  There are no grounds proffered to

9     support the differential treatment.

10        Section 1123(a)(4) requires in relevant part that a plan "provide the same treatment for

11     each claim or interest of a particular class."  A failure to provide the same treatment for each claim

12     of a particular class violates this section. *In re MCorp Financial Inc.*, 137 B.R. 219, 227 (Bankr.

13     S.D. Tex. 1992).

14   **C.**     **THE LEHMAN PLAN IS NOT PROPOSED IN GOOD FAITH AS REQUIRED BY**

15        **§ 1129(a)(3)**

16        A plan cannot be confirmed if it has not "been proposed in good faith and not by any

17     means forbidden by law." §1129(a)(3).  A number of courts have recognized that good faith

18     requires "a reasonable likelihood that the plan will achieve a result consistent with the objectives

19     and purposes of the Bankruptcy Code." *In re Madison Hotel Assoc.,* 749 F.2d 410, 425 (7th Cir.

20     1984). "Good faith" also requires the bankruptcy court to review the proposed plan to make sure it

21     reflects" a fundamental fairness in dealing with one's creditors." *Id.* at 425. *In re Stolrow's, Inc.,*

22     84 B.R. 167, 172 (B.A.P. 9th Cir. 1988).

23        As explained by the Seventh Circuit:

24        the important point of inquiry is the plan itself and whether such

25        plan will fairly achieve a result consistent with the objectives and
        purpose of the Bankruptcy Code . . . The plan "must be viewed in

26        light of the totality of the circumstances surrounding confection
        of the plan . . . ."

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  *In re Madison Hotel Assoc.,* 749 F.2d at 425; *Texas Extrusion Corp. v. Lockheed Corp. (In re*

2  *Texas Extrusion Corp.),* 844 F.2d 1142, 1160 (5th Cir. 1988), cert. denied, 488 U.S. 926, 109 S.

3  Ct. 311 (1988).

4       Assuming that the conditions precedent to Confirmation of the Lehman Plan will be

5  satisfied, it remains unclear when Confirmation will take place. The Effective Date is defined as

6  no later than 60 days after the Confirmation Date. (Lehman Plan, Exhibit E, p. 12) The

7  Confirmation Date is defined as the date of entry of the Confirmation Order, but there is no

8  deadline date by which the Confirmation Order must be entered. (Lehman Plan, Exhibit E, p. 10-

9  11). One of the important elements of a chapter 11 plan is a prompt payment of creditors. *In re*

10  *Walker,* 165 B.R. 994, 1001 (E.D. Va. 1994). The district court noted this principle as follows:

11
12      Indeed, prompt payment of creditors is a primary objective of a
       Chapter 11 reorganization. See, *In re Kemp*, 134 B.R. 413, 415
       (Bankr. E.D. Cal. 1991) (citing *In re Hoosier Hi-Reach, Inc.,* 64 B.R. 34, 38
13      (Bankr. S.D. Ind. 1986). Accordingly, the failure of a debtor to use the
       full reach of its disposable resources to repay creditors is evidence
14      that a plan is not proposed in good faith because such conduct
       frustrates this objective.
15

16       Deadline dates for entry of the Confirmation Order must be imposed to insure that the

17  cases do not languish and the litigation claims grow stale at the expense of the unsecured creditors.

18  Absent same, creditors will not be promptly paid.

19  **D.    THE LEHMAN PLAN FAILS THE BEST INTEREST OF CREDITORS TEST SET**

20      **FORTH IN § 1129(a)(7)**

21       A prerequisite to the Court's confirmation of the Lehman Plan is a finding that the Lehman

22  Plan satisfies § 1129(a)(7), often called the "best interests of creditors test." *In re Montgomery*

23  *Court Apartments of Ingham County, Ltd.,* 141 B.R. 324, 330 (Bankr. S.D. Ohio 1992); *In re*

24  *Sierra-Cal,* 210 B.R. 168, 171-72 (Bankr. E.D. Cal. 1997) (the "best interests" concept is a

25  cornerstone of the theoretical underpinnings of chapter 11). The best interest test is applied to

26  each dissenting impaired creditor, not to classes of creditors. *See In re Drexel Burnham Lambert*

27  *Group, Inc.,* 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-11-

1    Section 1129(a)(7) requires that each holder of an impaired class of creditors that does not

2  accept the plan

> will receive or retain under the plan on account of such claim or
> interest property of a value, as of the effective date of the plan,
> that is not less than the amount that such holder would so receive
> or retain if the debtor were liquidated under chapter 7 of this title
> on such date.

7  Section 1129(a)(7) thus guarantees to each creditor or interest holder that absent the creditor's

8  consent, it will receive at least as much in a reorganization as it would in a liquidation under

9  chapter 7.

10    A proper examination of the best interest of creditors test requires an investigation of the

11  potential claims and causes of action against third parties. A liquidation analysis is incomplete

12  without consideration of the potential recoveries a chapter 7 trustee could or would try to obtain in

13  litigation. The plan proponent therefore must disclose all potential causes of action and value these

14  claims. *In re Sierra-Cal.,* 210 B.R. at 175-77.

15    In this case, the Lehman VD Lenders' Liquidation Analysis is faulty because it includes no

16  value for litigation recoveries. (Disclosure Statement, pgs. 163-169) The Lehman VD Lenders

17  acknowledge that the Lehman Creditors received over $20 million in the one year preceding the

18  Petition Date, yet provide no breakdown per VD Debtor as to amounts. No value, per VD Debtor

19  or otherwise, is ascribed to the ES Action. A potential recovery of $1.2 million for the Acton

20  Estate is referenced with respect to Fraudulent Transfer Claims, but no value is ascribed for claims

21  of this type held by other VD Debtors. (Disclosure Statement, p. 53) The Liquidation Analysis

22  likewise does not take into account the impact on dividends of what the Lehman VD Lenders have

23  characterized as Disputed and Undisputed Cash Collateral, which is said to total nearly $21

24  million. (Disclosure Statement, p. 39)

25    The import of this information is underscored by the fact that if these cases were converted

26  to chapter 7, the Lehman VD Lenders would likely seek relief from the automatic stay to

27  nonjudicially foreclose on their real estate collateral. In such event, they would be unable to assert

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS  2495712

-12-

a deficiency claim and realize on these assets. As such, it appears that unsecured creditors,

particularly those in Class 7, may receive more value in a chapter 7 case.

**E.      THE LEHMAN PLAN UNFAIRLY DISCRIMINATES AND IS NOT FAIR AND**

**EQUITABLE**

Under §1129(b)(1), a plan can only be confirmed if it "does not discriminate unfairly, and

is fair and equitable, with respect to each class of claims or interests that is impaired under, and

has not accepted, the plan." Section 1129(b) requires the following:

> Notwithstanding section 510(a) of this title, if all of the
> applicable requirements of subsection (a) of this section
> other than paragraph (8) are met with respect to a plan,
> the court, on request of the proponent of the plan, shall
> confirm the plan notwithstanding the requirements of such
> paragraph if the plan does not discriminate unfairly, and is
> fair and equitable, with respect to each class of claims or
> interests that is impaired under, and has not accepted, the plan.

These are the minimum technical requirements. "However, technical compliance with all the

requirements in § 1129(b)(2) does not assure that the plan is "fair and equitable." *Fed. Savings &*

*Loan Ins. Corp. v. D&F Constr., Inc. (In re D&F Constr., Inc.)*, 865 F.2d 673, 675 (9th Cir. 1989).

Rather, "[a] court must consider the entire plan in the context of the rights of the creditors under

state law and the particular facts and circumstances when determining whether a plan is "fair and

equitable." *Id.* Thus, even if Lehman's Plan satisfied the technical requirements of § 1129(b), it

would still be unconfirmable because it is patently self-serving and unfair—to the point of being

abusive--to unsecured creditors.

**1.      The Lehman Plan Unfairly Discriminates Agreement Unsecured**

**Creditors And Is Not Fair And Equitable**

The Lehman Plan divides unsecured creditors into two classes, Holders of a Class 6

Reliance Claim, who can receive a guaranteed dividend of not less than 40%, and Holders of a

Class 7 Claim, who can receive no more than a 5% guaranteed dividend. The only difference of

note between the two classes is that a Reliance Claim must have arisen on or after August 1, 2007.

(Lehman Plan, Exhibit E, p. 28). A Claim that arose only one day earlier is a subject to the 5%

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712
-13-

1    distribution treatment.  The August 1, 2007 date emanates from an allegation in the ES Action that

2    at or about that time, the Lehman Creditors took over effective control of the material aspects of

3    the VD Debtors' projects.  (Disclosure Statement, p. 49)

4          What is not articulated is that these same allegations of dominance and control, including

5    the power to decide which debts to pay, support an equitable subordination claim by unsecured

6    creditors whose claims arose prior to August 1, 2007.  *See, e.g.*, *In re 604 Columbus Ave. Realty*

7    *Trust*, 119 B.R. 350, 377 (Bankr. D.Mass. 1990), subsequently aff'd in part, vacated in part on

8    other grounds, 968 F.2d 1332 (1st Cir. 1992); *In re Kids Creek Partners, L.P.*, 200 B.R. 996,

9    1015-16 (Bankr. N.D. Ill. 1996); *In re Computer Personalities Systems, Inc.*, 284 B.R. 415, 429

10   (Bankr. E.D. Pa. 2002).

11         A chapter 11 debtor has standing to bring an equitable subordination action on behalf of all

12   creditors whose rights have been adversely impacted.  *In re Audre, Inc.*, 210 B.R. 360, 363

13   (Bankr. S.D. Cal. 1997).  If the Lehman Plan is confirmed, the Liquidating Trustee is required to

14   dismiss the ES Action with prejudice.  (Lehman Plan, § 8.9.3, p. 79)  Setting aside issues of

15   economics which makes the assertion of such claims by an individual creditor untenable, the right

16   of an individual creditor to seek subordination post confirmation will be meaningless since the real

17   property will have been transferred to or for the benefit of the Lehman VD Lenders.  There is only

18   de mininis monies paid to Class 7 unsecured creditors for the loss of these rights, and such an

19   outcome is not fair and equitable and unduly discriminates against them.

20         The standard that must be satisfied in order to justify discrimination between classes is set

21   forth in *In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 656 (9th Cir. 1997), cert. denied,

22   522 U.S. 1110, 118 S.Ct. 1039 (1998):

23         Discrimination between classes must satisfy four criteria to be considered fair
            under 11 U.S.C. § 1129(b):  (1) the discrimination must be supported by a
24         reasonable basis; (2) the debtor could not confirm or consummate the Plan without
            the discrimination; (3) the discrimination is proposed in good faith; and (4) the
25         degree of the discrimination is directly related to the basis or rationale for the
            discrimination.

26

27         As noted in *In re Dow Corning Corp.*, 244 B.R. 705, 710 (Bankr. E.D. Mich. 1999),

28         a rebuttable presumption that a plan is unfairly discriminatory will arise when there
            is:  (1) a dissenting class; (2) another class of the same priority; and (3) a difference

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

1    in the plan's treatment of the two classes that results in either (a) a materially lower
     percentage recovery for the dissenting class (measured in terms of the net present
2    value of all payments), or (b) regardless of percentage recovery, an allocation under
     the plan of materially greater risk to the dissenting class in connection with its
3    proposed distribution.

4    Among other things, the Lehman VD Lenders cannot satisfy the *Ambanc* standard, nor can they

5    overcome the presumption of discrimination.

6        The token dividend to unsecured creditors is likewise not fair and equitable, and is

7    unsupportable when, as the Ninth Circuit held in *D&F*, the plan is considered in the context of the

8    rights of creditors under state law.  Under state law, a secured creditor cannot acquire title to its

9    real property collateral in the manner provided for in the Lehman Plan.  This mechanism appears

10   to generate a cost savings for the Lehman VD Lenders of over $6.5 million[3].  In addition, they are

11   receiving the properties free and clear of liens, which would not be the case under state law.  As an

12   added benefit, they are freed of the burden of defending several costly litigation actions.  The

13   Lehman VD Lenders contend that the cost to prosecute the ES Action, in and of itself, is $3 to $4

14   million. (Disclosure Statement, p. 51)  The cost to defend should presumably be a similar amount.

15   The cost of defending the other actions is undoubtedly an additional several million dollars.  There

16   is simply no basis to conclude that a 5% guaranteed dividend is fair and equitable, particularly

17   given that Class 7 unsecured claims are projected to be $2.1 million. (Disclosure Statement, p. 43)

18   **2.    The Lehman Plan Improperly Discriminates Against Insiders Who Hold**

19   **Claims**

20       As noted, an Insider who holds a Claim that would otherwise be categorized as a Class 6

21   Reliance Claim but for the carve out of Insiders from this class is assured, at most, of receiving a

22   5% dividend.  The Holder of a Reliance Claim can be assured of receiving at least a 40% dividend.

23   This discrimination is unfair and inequitable under the *Ambanc* standards.

24

25

26       [3] The costs of proceeding via a non-judicial foreclosure sale have been estimated to be 7%
     of the value of the property. *LaJolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283,
27   289 (Bankr. S.D. Cal. 1982)  Based upon a value of $93,250,000 ascribed to the real property in
     the Disclosure Statement (p.37), assuming a remedy via a nonjudicial foreclosure sale, the Lehman
28   VD Lenders are avoiding costs of over $6.5 million by acquiring the real property via the plan
     option.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712                                    -15-

### 3.    The Lehman Plan Improperly Requires Consent From All VD Debtors

In Section 14.3(b) of the Lehman Plan (p. 96), there is a condition precedent to Confirmation of the Lehman Plan, which provides:

> (b) Unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, Confirmation of the Plan as to all of the VD Plan Debtors and the ability to have the Effective Date occur for all of the Joint VD Plan Debtors.

The upshot of this provision is that if creditors of even one of the 11 VD Debtors do not support the Lehman Plan, then none of the 11 VD Debtors may have a Confirmation Order in their cases.  This provision is not fair and equitable and results in unfair discrimination since it allows unrelated creditor votes to eviscerate creditor voting rights.

In an analogous case, *In re MCorp Financial Inc.*, 137 B.R. 219, 236 (Bankr. S.D. Tex. 1992), the court made a similar ruling under far less egregious circumstances.  In that case, a negative vote from one class of creditors in the same case could result in a loss of distribution rights to other classes of creditors who voted in favor of the plan.  In finding the plan not fair and equitable and to unfairly discriminate, the court noted:

> Thus Classes 16 and 17 not only lost any possible distributions, but also the right to vote effectively since they could not know until after Shearson had cost its vote (due on the same date as that of all other claimants) what their own status was.

The same is true in these cases, only here a creditor can lose its voting and distribution rights if creditors in a different case cast negative votes.

### III.

### RESERVATION OF RIGHTS

The Committee reserves the right to make additional confirmation objections at the confirmation hearing.

///

///

///

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IV.

**CONCLUSION**

Based upon the inadequacies in the Lehman Plan, the Committee requests that the Court deny approval of the Lehman Plan unless there are modifications that address the concerns raised herein.

Dated: September 19, 2011                    IRELL & MANELLA LLP


By: _____
    Alan J. Friedman
    Howard J. Steinberg
    Counsel for the Official Unsecured Creditors
    Committee in Chapter 11 Cases of Palmdale
    Hills Property, LLC et al.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS  2495712

-17-

1

## PROOF OF SERVICE OF DOCUMENT

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is: 840 Newport Center Drive, Suite 400, Newport Beach, CA 92660-6324

3

4  A true and correct copy of the foregoing document described as **OBJECTION AND
RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO THIRD
AMENDED JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS
PROPOSED BY THE LEHMAN VD LENDERS** will be served or was served (a) on the judge in
chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

5

6

7  **I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to
controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served
by the court via NEF and hyperlink to the document. On <u>September 19, 2011</u>, I checked the CM/ECF
docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on
the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

8

9

10                             ☒  Service information continued on attached page

11  **II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On <u>September 19, 2011,</u> I served the following person(s) or entity(ies) at the last known address(es) in
this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>
completed no later than 24 hours after the document is filed.

12

13

14                             ☒  Service information continued on attached page

15

16  **III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for
each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 19, 2011, I
served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing
to such service method), by facsimile transmission and/or email as follows.   Listing the judge here
constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after
the document is filed.

17

18

19  CAUSED TO BE SERVED BY PERSONAL DELIVERY/MESSENGER
Chambers of the Honorable Erithe A. Smith

20  United States Bankruptcy Court
Ronald Reagan Federal Bldg., Bin Outside Room 5097

21  411 W. Fourth Street
Santa Ana, CA 92701-4593

22

23                             ☐  Service information continued on attached page

24  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true
and correct.

25

| 9/19/11 | Leslie Wolchuck | /s/ Leslie Wolchuck |
26 | Date | Type Name | Signature |

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712                                    -18-

**SERVICE VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com

- Joseph M Adams    jadams@sycr.com

- Raymond H Aver    ray@averlaw.com

- James C Bastian    jbastian@shbllp.com

- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com

- John A Boyd    fednotice@tclaw.net

- Mark Bradshaw    mbradshaw@shbllp.com

- Gustavo E Bravo    gbravo@smaha.com

- Jeffrey W Broker    jbroker@brokerlaw.biz

- Brendt C Butler    bbutler@mandersonllp.com

- Andrew W Caine    acaine@pszyjw.com

- Carollynn Callari    ccallari@venable.com

- Cathrine M Castaldi    ccastaldi@rusmiliband.com

- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com

- Dan E Chambers    dchambers@jmbm.com

- Shirley Cho    scho@pszjlaw.com

- Vonn Christenson    vrc@paynefears.com

- Brendan P Collins    bpcollins@bhfs.com

- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com

- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com

- Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com

- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com

- Ana Damonte    ana.damonte@pillsburylaw.com

- Vanessa S Davila    vsd@amclaw.com

- Melissa Davis    mdavis@shbllp.com

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

-19-

1

- Daniel Denny    ddenny@gibsondunn.com

2

- Caroline Djang    crd@jmbm.com

3

- Donald T Dunning    ddunning@dunningLaw.com

4

- Meredith R Edelman    meredith.edelman@dlapiper.com

5

- Joseph A Eisenberg    jae@jmbm.com

6

- Lei Lei Wang Ekvall    lekvall@wgllp.com

7

- Richard W Esterkin    resterkin@morganlewis.com

8

- Marc C Forsythe    kmurphy@goeforlaw.com

9

- Alan J Friedman    afriedman@irell.com

10

- Steven M Garber    steve@smgarberlaw.com

11

- Christian J Gascou    cgascou@gascouhopkins.com

12

- Barry S Glaser    bglaser@swjlaw.com

13

14

- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com

- Eric D Goldberg    egoldberg@stutman.com

15

16

- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com

- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

17

- Kelly C Griffith    bkemail@harrisbeach.com

18

- Matthew Grimshaw    mgrimshaw@rutan.com

19

- Kavita Gupta    kgupta@winthropcouchot.com

20

- Asa S Hami    ahami@morganlewis.com

21

- Michael J Hauser    michael.hauser@usdoj.gov

22

- D Edward Hays    ehays@marshackhays.com

23

- Michael C Heinrichs    mheinrichs@omm.com

24

- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com

25

- Jonathan M Hoff    jonathan.hoff@cwt.com

26

- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com

27

- Michelle Hribar    mhribar@rutan.com

28

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  • Lawrence A Jacobson    laj@cohenandjacobson.com

2  • Michael J Joyce    mjoyce@crosslaw.com

3  • Stephen M Judson    sjudson@fablaw.com

4  • Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com

5  • Steven J Kahn    skahn@pszyjw.com

6  • Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com

7  • David I Katzen    katzen@ksfirm.com

8  • Christopher W Keegan    ckeegan@kirkland.com,
      shalimar.caltagirone@kirkland.com;alevin@kirkland.com

9
10  • Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

11  • Irene L Kiet    ikiet@hkclaw.com

12  • Claude F Kolm    claude.kolm@acgov.org

13  • Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

14  • David B Lally    davidlallylaw@gmail.com

15  • Leib M Lerner    leib.lerner@alston.com

16  • Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com

17  • Charles Liu    cliu@marshackhays.com

18  • Charles Liu    cliu@winthropcouchot.com

19  • Kerri A Lyman    klyman@irell.com

20  • Mariam S Marshall    mmarshall@marshallramoslaw.com

21  • Robert C Martinez    rmartinez@mclex.com

22  • Michael D May    mdmayesq@verizon.net

23  • Hutchison B Meltzer    hmeltzer@wgllp.com

24  • Krikor J Meshefejian    kjm@lnbrb.com

25  • Joel S. Miliband    jmiliband@rusmiliband.com

26  • James M Miller    jmiller@millerbarondess.com,
      vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarond
      ess.com

27
28  • Louis R Miller    smiller@millerbarondess.com

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712

1  • Craig Millet   cmillet@gibsondunn.com,
2      pcrawford@gibsondunn.com;cmillet@gibsondunn.com

3  • Randall P Mroczynski   randym@cookseylaw.com

4  • Mike D Neue   mneue@thelobelfirm.com,
       jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

5  • Robert Nida   Rnida@castlelawoffice.com

6  • Henry H Oh   henry.oh@dlapiper.com, janet.curley@dlapiper.com

7  • Sean A Okeefe   sokeefe@okeefelc.com

8  • Scott H Olson   solson@seyfarth.com

9  • Robert B Orgel   rorgel@pszjlaw.com, rorgel@pszjlaw.com

10 • Malhar S Pagay   mpagay@pszjlaw.com, mpagay@pszjlaw.com

11 • Ernie Zachary Park   ernie.park@bewleylaw.com

12 • Daryl G Parker   dparker@pszjlaw.com

13 • Penelope Parmes   pparmes@rutan.com

14 • Robert J Pfister   rpfister@ktbslaw.com

15 • Ronald B Pierce   ronald.pierce@sdma.com

16 • Katherine C Piper   kpiper@steptoe.com, smcloughlin@steptoe.com

17 • Cassandra J Richey   cmartin@pprlaw.net

18 • Debra Riley   driley@allenmatkins.com

19 • James S Riley   tgarza@sierrafunds.com

20 • Todd C. Ringstad   becky@ringstadlaw.com

21 • R Grace Rodriguez   ecf@lorgr.com

22 • Martha E Romero   Romero@mromerolawfirm.com

23 • Ronald Rus   rrus@rusmiliband.com

24 • John P Schafer   jschafer@mandersonllp.com

25 • John E Schreiber   jschreiber@dl.com

26 • William D Schuster   bills@allieschuster.org

27 • Christopher P Simon   csimon@crosslaw.com

28 • Gerald N Sims   jerrys@psdslaw.com, bonniec@psdslaw.com

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS  2495712

1   • Wendy W Smith    wendy@bindermalter.com

2   • Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

3   • Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com

4   • Michael St James    ecf@stjames-law.com

5   • Michael K Sugar    msugar@irell.com

6   • Cathy Ta    cathy.ta@bbklaw.com,
      Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
7
    • David A Tilem    davidtilem@tilemlaw.com,
8     malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

9   • James E Till    jtill@thelobelfirm.com,
      jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
10
    • United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
11
12  • Carol G Unruh    cgunruh@sbcglobal.net

13  • Annie Verdries    verdries@lbbslaw.com

14  • Jason Wallach    jwallach@gladstonemichel.com

15  • Joshua D Wayser    , kim.johnson@kattenlaw.com

16  • Benjamin M Weiss    bweiss@lansingcompanies.com

17  • Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

18  • David M Wiseblood    dwiseblood@seyfarth.com

19  • Brett K Wiseman    bwiseman@aalaws.com

20  • Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

21  • Marc A. Zimmerman    joshuasdaddy@att.net

22
    **SERVED VIA FIRST-CLASS MAIL:**
23
    Office of the United States Trustee
24  Attn: Michael Hauser, Esq.
    411 W. Fourth Street, Suite 9041
25  Santa Ana, CA 92701-4593

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

OBJECTION AND RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE VOLUNTARY DEBTORS WITH RESPECT TO
THE FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING JOINT
CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS 2495712                                         -23-