DEBRA A. RILEY (BAR NO. 151925)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: driley@allenmatkins.com

Attorneys for CITY OF PALMDALE

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,<br>    Jointly Administered Debtors and<br>    Debtors in Possession<br><br>Affects:<br>    All Debtors<br>☒ Palmdale Hills Property<br>    SunCal Beaumont Heights, LLC<br>    SCC/Palmdale<br>    SunCal Johannson Ranch, LLC<br>    SunCal Summit Valley, LLC<br>    SunCal Emerald Meadows LLC<br>    SunCal Bickford Ranch, LLC<br>    Acton Estates, LLC<br>    Steven Brothers LLC<br>    SJD Partners, Ltd.<br>    SJD Development Corp.<br>    Kirby Estates, LLC<br>    Sun Cal Communities I, LLC<br>    Sun Cal Communities III, LLC<br>    SCC Communities LLC<br>    North Orange Del Rio Land, LLC<br>    Tesoro SF, LLC<br>    LBL-SunCalOak Valley, LLC<br>    SunCal Heartland, LLC<br>    LBL-SunCal Northlake, LLC<br>    SunCal Marblehead, LLC<br>    SunCal Century City, LLC<br>    Sun Cal PSV, LLC<br>    Delta Coves Venture, LLC<br>    SunCal Torrance, LLC<br>    SunCal Oak Knoll, LLC | Case No. 8:08-bk-17206-ES<br><br>Jointly Administered with Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES<br>8:08-bk-17224-ES; 8:08-bk-17242-ES<br>8:08-bk-17225-ES; 8:08-bk-17245-ES<br>8:08-bk-17227-ES; 8:08-bk-17246-ES<br>8:08-bk-17230-ES; 8:08-bk-17231-ES<br>8:08-bk-17236-ES; 8:08-bk-17248-ES<br>8:08-bk-17249-ES; 8:08-bk-17573-ES<br>8:08-bk-17574-ES; 8:08-bk-17575-ES<br><br>Chapter 11 Cases<br><br>**CITY OF PALMDALE'S OBJECTION TO THE *THIRD AMENDED* JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS [Docket No. 2598]**<br><br>**Hearing:**<br>Date:   October 24, 2011<br>Time:  9:30 a.m.<br>Place:  Courtroom 5A<br>         411 West Fourth Street<br>         Santa Ana, CA 92701<br>Judge: Hon. Erithe A. Smith |

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

773117.03/SD

**TABLE OF CONTENTS**

**Page**

I.   THE PLAN IMPERMISSIBLY ATTEMPTS TO RELEASE OR LIMITS THE RIGHTS OF THE CITY AGAINST THIRD PARTIES ........................................... 1

II.  BACKGROUND: THE DEBTOR'S DEVELOPMENT OBLIGATIONS IN FAVOR OF THE CITY ................................................................................................ 2

III. LEHMAN'S PLAN MUST COMPLY WITH THE PROVISIONS OF THE CODE ................................................................................................................. 4

    A.   Lehman's Plan Cannot Be Confirmed Because it Provides for an Impermissible *De Facto* Discharge of Nondebtors in Violation of the Bankruptcy Code ................................................................. 4

        1.   A Release or Permanent Injunction Barring Claims Against Nondebtors Is a *De Facto* Discharge that Renders a Chapter 11 Plan Unconfirmable .................................................. 4

        2.   Creditor Acceptance of a Plan Does Not Give the Bankruptcy Court the Power to Discharge Third Parties ........................... 5

        3.   The Bankruptcy Court Does Not Have "Equitable" Authority to Approve Nondebtor Releases and Injunctions .......................... 6

    B.   Lehman VD Lenders Cannot Use the Lehman Plan to Circumvent the Law ............................................................................................ 7

    C.   Projects Cannot be Sold Free and Clear of Certain of the "Encumbrances" ...................................................................................... 11

    D.   The Lehman Plan Cannot Alter or Otherwise Affect the City's Rights Under Agreements with the Sureties ........................................ 12

IV.  RESERVATION OF RIGHTS ................................................................................ 12

V.   CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cournoyer v. Town of Lincoln*
    790 F.2d 971 (1st Cir. 1986) ............................................................................................. 11

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*
    997 F.2d 581 (9th Cir. 1993) ............................................................................................. 11

*In re American Hardwoods, Inc.*
    885 F.2d 621 (9th Cir. 1989) ....................................................................................... 5, 6, 8

*In re Combustion Engineering*
    391 F.3d 190 (3d Cir. 2004) ................................................................................................ 9

*In re Kmart Corp.*
    359 F.3d 866 (7th Cir. 2004) .............................................................................................. 8

*In re Perez*
    30 F.3d 1209 (9th Cir. 1994) .............................................................................................. 4

*In re Union Golf of Florida, Inc.*
    242 B.R. 51 (Bankr. M.D. Fla. 1998) ............................................................................... 12

*In re West Coast Video Enters.*
    174 B.R. 906 (Bankr. E.D. Pa. 1994) ................................................................................. 7

*In re Zenith Electronics Corp.*
    241 B.R. 92 (Bankr. D.Del. 1999) ..................................................................................... 7

*Matter of Specialty Equipment Cos.*,
    3 F.3d 1043 (7th Cir. 1993) ................................................................................................ 7

*Northwest Bank Worthington v. Ahlers*
    485 U.S. 197 (1988) ....................................................................................................... 7, 8

*Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*
    67 F.3d 1394 (9th Cir. 1995) .............................................................................................. 4

*Ruvacalba v. Munoz (In re Munoz)*
    287 B.R. 546 (9th Cir. BAP 2002) ..................................................................................... 7

*Santa Margarita Area Residents Together v. San Luis Obispo County Board of
    Supervisors*
    84 Cal.App.4th 221, 227 .................................................................................................. 10

*Stern v. Marshall*
    ___ U.S. ___, 131 S. Ct. 2594 (2011) ............................................................................... 1

*Underhill v. Royal*
    769 F.2d 1426 (9th Cir. 1985) ............................................................................................ 6

**Page(s)**

*Yadidi v. Herzlich (In re Yadidi)*
    274 B.R. 843 (9th Cir. BAP 2002) ............................................................................................ 8

**Statutes**

11 U.S.C. § 1129(a) ........................................................................................................................ 4

11 U.S.C. § 1141(d)(3) ................................................................................................................... 4

11 U.S.C. § 363(e) ........................................................................................................................ 12

11 U.S.C. § 524(e) .......................................................................................................................... 4

28 U.S.C. § 959 ........................................................................................................................... 8, 9

Cal. Gov't. Code section 65867.5(a) ............................................................................................... 8

**Other Authorities**

1898 Bankruptcy Act, Section 16 .................................................................................................... 6

Steve H. Nickles & David G. Epstein, *Another Way of Thinking About Section 105(a) & Other Sources of Supplemental Law Under the Bankruptcy Code*
    2000 CHAPMAN L. REV. 7 (2000) ........................................................................................... 7

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE; DEBTORS; DEBTORS' COUNSEL; OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER INTERESTED PARTIES:**

The City of Palmdale, for itself and on behalf of the City of Palmdale Community Facilities District No. 93-1 (Ritter Ranch) (collectively, "City of Palmdale" or "City"), hereby objects to the *Third Amended* Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders [Docket No. 2598] ("Lehman Plan" or "Plan").[1] Although the joint Lehman Plan affects several debtors, the City objects only with respect to Palmdale Hills Property, LLC ("Palmdale Hills" or the "Debtor").

## I. THE PLAN IMPERMISSIBLY ATTEMPTS TO RELEASE OR LIMITS THE RIGHTS OF THE CITY AGAINST THIRD PARTIES.

The Plan goes well beyond what the Bankruptcy Code permits. In particular:

- The Plan purports to give discharges or releases of claims *not* held by the debtors to various third parties. Although under section 1141, a *debtor* may be entitled to a discharge, a bankruptcy court may not bestow a discharge on a nondebtor.

- The Plan purports to interfere with the City's independent claims against the Sureties.

- Although a plan may provide for a sale free and clear of liens (as defined by the Code) and interests (such as a right of dower or curtesy), nothing in the law supports the Plan's overreaching definition of "Encumbrances."

Fundamentally, at least as it relates to the City, the primary goal of the Lehman Plan appears to be give a leg up on the City to any third party that wants to develop the property and to the Sureties.

Especially in light of the recent teaching from the Supreme Court, *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011), this Court should be reluctant to confirm a plan that interferes with the City's nonbankruptcy, state-law rights against nondebtors. The Court should deny confirmation.

---

[1] Terms not defined herein shall have the meanings ascribed to them in Exhibit D to the Lehman Plan.

## II. BACKGROUND: THE DEBTOR'S DEVELOPMENT OBLIGATIONS IN FAVOR OF THE CITY

Palmdale Hills owns a master-planned, partially entitled residential development in Palmdale, California, commonly referred to as Ritter Ranch ("Ritter Ranch Project" or "Project"). The development of the Ritter Ranch Project is governed by many legislative and adjudicatory enactments, agreements, and other documents.[2] See ¶¶ 3-6 of the Declaration of Mike Mischel, Director of Public Works for the City of Palmdale filed in Support of the City's Response to Lehman Commercial Paper, Inc.'s Motion for Order Disallowing and/or Estimating General Unsecured Claim of City of Palmdale on September 1, 2011 (Docket No. 2658) ("Mischel Dec.").

The Development Agreement and other Project Documents vest certain rights and impose certain obligations on the developer regarding the Ritter Ranch Project. Over the life of the Project, as provided for in the Development Agreement, the developer must, without limitation, (a) comply with all applicable City development rules and regulations, (b) construct public improvements and infrastructure, including roads, bridges, schools, park sites, and fire station facilities, (c) indemnify and defend the City from any and all claims, costs, and liability for damages, personal injury, or death, which may arise, directly or indirectly, from the development (or lack thereof) of the Project by the developer and otherwise, (d) reimburse the City for attorneys' fees and costs for the enforcement or prevention of a breach of the DA, and (e) dedicate or set aside certain land for rights-of-way or other City use.

In connection with any development and construction of individual tracts and subdivisions within the Project, Section 4.5 of the Development Agreement requires the developer to execute and deliver subdivision improvement agreements (and provide the City with security for performance of the work contracted for in those subdivision improvement agreements). From March 2005 through October 2007, Palmdale Hills entered into 19 subdivision improvement

---

[2] These "Project Documents" include (i) the City of Palmdale's general plan, (ii) Ordinance No. 91-117, (iii) Specific Plan 89-02 dated on or about February 27, 1992, (iv) Ordinance No. 964, (v) Development Agreement dated June 1992 by and between the City of Palmdale and Ritter Park Associates ("DA"), as such DA was amended and later supplemented by the DA Supplement (collectively with the DA Supplement, the "Development Agreement"), (vi) certain environmental impact reports, (vii) certain final and tentative subdivision maps, (viii) certain subdivision improvement agreements, and (ix) a variety of permits issued by the City of Palmdale and variety of state and federal authorities.

agreements with the City. Mischel Dec. at ¶¶ 7-24. Palmdale Hills provided support for its performance under the Subdivision Improvement Agreements by providing the City with faithful performance bonds and payment bonds issued by Bond Safeguard Insurance Company and Arch Insurance Company ("Sureties"). *Id.* at ¶ 26.

In those 19 subdivision improvement agreements, Palmdale Hills agreed to construct, install, complete, and guarantee for one year, at its sole expense, certain public improvements required by the City for the Project, including certain grading operations, as well as construction of certain roads, street improvements, street lighting, and other infrastructure and public improvements. Under the agreements, Palmdale Hills generally had 24 months from the date of execution of the respective agreements to complete the improvements. *Id.* ¶¶ 28-29. As of November 6, 2008, the day that Palmdale Hills filed its voluntary chapter 11 petition, Palmdale Hills had completed the improvements under only 2 of the subdivision improvement agreements. *Id.* ¶ 39. The City has not excused performance by the Debtor under the Development Agreement and the subdivision improvement agreements. *Id.* ¶ 31. Improvements remained outstanding under 17 subdivision improvement agreements.

Since the bankruptcy case commenced, except for certain infrastructure construction, including construction activity related to Elizabeth Lake Road, there has been no appreciable onsite development activity. The City of Palmdale was granted relief from stay to proceed against the Sureties supporting the performance of the construction of the Project, including Elizabeth Lake Road (Docket Nos. 397 and 991).

Also, the Ritter Ranch Project lies within the boundaries of the City of Palmdale CFD No. 93-1 (Ritter Ranch) community facility district. Accordingly, Palmdale Hills, as the owner, is subject to Special Taxes. In October 2010, Palmdale Hills was issued an invoice for Fiscal Year 2010/2011 Mello-Roos Special Tax Levy for payments due December 10, 2010, and April 10, 2010, in the amount of $777,731.06 each. Palmdale Hills has failed to pay these ordinary-course postpetition taxes, and the taxes are now delinquent and subject to penalty and interest (collectively the special taxes, penalty and interest are referred to herein as "Special Taxes")

(Docket No. 2120). The Special Taxes are administrative claims that under section 1129(a)(9)(A) of the Code must be paid ***in full in cash*** on the Effective Dates.

### III. LEHMAN'S PLAN MUST COMPLY WITH THE PROVISIONS OF THE CODE

The Court has an independent duty to determine whether a chapter 11 plan complies with each of the confirmation prerequisites of section 1129(a) of the Bankruptcy Code. *In re Perez*, 30 F.3d 1209, 1213 (9th Cir. 1994). Bankruptcy courts lack the power to confirm chapter 11 plans that do not comply with applicable Code provisions as required by Bankruptcy Code section 1129(a)(1). *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied* 517 U.S. 1243. The Lehman Plan does not satisfy the statute.

#### A. Lehman's Plan Cannot Be Confirmed Because it Provides for an Impermissible *De Facto* Discharge of Nondebtors in Violation of the Bankruptcy Code

Although section 524 provides for the discharge of a debtor, no provision of the Code provides such relief to *third parties*. *Lowenschuss*, 67 F.3d at 1401. To the contrary, section 524(e) expressly states: "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *Id.* at 1401.

##### 1. A Release or Permanent Injunction Barring Claims Against Nondebtors Is a *De Facto* Discharge that Renders a Chapter 11 Plan Unconfirmable.

The Lehman Plan does not expressly provide for a "discharge" of the VD Debtors or any other party.[3] Instead, the Lehman Plan provides for a release of liability on claims, including Lehman Released Claims, and a permanent injunction against any action on such claims for all of the Lehman Released Parties. See ¶¶ 8.9.2, 8.9.3 and Article XII of the Lehman Plan. Despite the label, the release and injunction in the Lehman Plan clearly operate as a discharge of the Lehman Released Parties' potential liability on state law claims, and more importantly, may impede on the City's ability to regulate future land development in Palmdale. The release and injunction together provide both of the essential elements of a discharge. Indeed, the Ninth Circuit has held that a permanent injunction against enforcement of a claim constitutes a discharge. *In re American*

---

[3] Indeed, the VD Plan Debtors are ineligible for a discharge under section 1141(d)(3) because the Lehman Plan is a liquidating plan.

*Hardwoods, Inc.*, 885 F.2d 621, 625-26 (9th Cir. 1989). In *Hardwoods,* a debtor argued that it was merely seeking a permanent injunction barring the collection of certain debt rather than an impermissible discharge. In rejecting the debtor's effort to obtain an injunction where it was not eligible for a discharge, Ninth Circuit stated:

> We find American's *semantic distinction between a permanent injunction and a discharge is unpersuasive.* A discharge under section 524(a)(2) does not void *ab initio* a liability. Rather, section 524 constructs a legal bar to its recovery. *A discharge is in effect a special type of permanent injunction.* American seeks the same. The permanent injunction requested by American falls squarely within the definition of a discharge under section 524(a)(2).

*Id.* (emphasis added).

Thus, there is no distinction between an actual discharge and a plan provision that permanently bars the enforcement of state law rights. To the extent that such provisions operate to cut off or extinguish rights, such provisions constitute an impermissible *de facto* discharge in violation of Bankruptcy Code section 524(e). Accordingly, as a matter of law, the bankruptcy court in *American Hardwoods* was required to deny confirmation, as the Court in this bankruptcy case will have to do.

    2.    <span style="color:red">Creditor Acceptance of a Plan Does Not Give the Bankruptcy Court the Power to Discharge Third Parties</span>

Lehman VD Lenders may contend that the release and injunction as set forth in paragraphs 8.9.2, 8.9.3 and Article XII of the Lehman Plan can be approved as part of its Plan if the requisite votes for confirmation under sections 1126 and 1129 are obtained (approval conflicts with creditor "consent" to the release and injunction). Again, however, the Ninth Circuit already has dispatched this argument unequivocally. *Underhill v. Royal*, 769 F.2d 1426, 1433 (9th Cir. 1985) *rejected on other grounds*, 494 U.S. 10. *Underhill* involved securities fraud and related claims alleged in an adversary proceeding by Underhill against the debtor's principal (Royal) and an affiliate. *Id.* at 1429. After the adversary proceeding commenced, the debtor confirmed a plan to be funded through an accommodation by Royal that would pay at least 50 percent of general unsecured claims in cash immediately. The plan contained a release of all of the debtor's affiliates and insiders. *Id.* at 1430. Eighty-nine percent of creditors approved the plan, but Underhill

1  objected to the release provision. *Id.* After the parties agreed to leave the effect of the release to
2  be decided by the district court, the bankruptcy court confirmed the Plan. *Id.*

3        The district court ultimately ruled that the plan release was invalid as a matter of law
4  because the bankruptcy court lacked the power to discharge the liability of a nondebtor as part of a
5  reorganization plan. *Id.* at 1432. On appeal, the Ninth Circuit reviewed Section 524(e) and its
6  predecessor, Section 16 of the 1898 Bankruptcy Act, and determined that under bankruptcy law
7  corporate insiders remain liable for claims notwithstanding the discharge of the debtor through a
8  plan. The Ninth Circuit noted that the bankruptcy court can affect only the relationships of debtor
9  and creditor and "has no power to discharge the liabilities of a nondebtor pursuant to the consent
10 of creditors as part of a reorganization plan." *Id.* The Ninth Circuit held that this was the result
11 dictated by Section 524(e). *Id.*

12       To the extent that Lehman VD Lenders argue that cases from other circuits allow
13 "consensual" third party releases and injunctions to be approved through the plan confirmation
14 process, it is important to note that such cases actually limit the effect of such releases and
15 injunctions to the parties who *affirmatively* consent. *See, e.g., Matter of Specialty Equipment*
16 *Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111-12
17 (Bankr. D.Del. 1999) (modifying release provision to only release claims of those creditors who
18 voted in favor of the plan); *In re West Coast Video Enters.*, 174 B.R. 906, 911 (Bankr. E.D. Pa.
19 1994). These cases do not support approval of non-consensual third party releases and
20 injunctions. Accordingly, the fact that enough creditors may vote to accept the Plan does not
21 mean that the third party release and injunction are "consensual" vis-à-vis all creditors.

22         3.     The Bankruptcy Court Does Not Have "Equitable" Authority to Approve Nondebtor Releases and Injunctions
23

24   A bankruptcy court cannot, in the name of its equitable powers, ignore specific statutory
25 mandates like section 542(e) or create exceptions that swallow actual Code provisions whole.
26 *Lowenschuss*, 67 F.3d at 1401-02; *cf., Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 552-53
27 (9th Cir. BAP 2002) (Section 105 may not be used to vary the discharge injunction). The
28 Supreme Court and Courts of Appeal have provided particular guidance on the appropriate use of

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

773117.03/SD

Section 105(a) and the bankruptcy court's "inherent equitable powers."  The Supreme Court has held that a bankruptcy court cannot use its general equitable powers to create an exception to the absolute priority rule, stating that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988).  Following *Ahlers*, the Seventh Circuit noted that "the fact that a bankruptcy proceeding is equitable does not give the judge free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004).

Likewise, Bankruptcy Code section 105 is not a "roving commission to do equity" or to do anything inconsistent with the Bankruptcy Code. *Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 848 (9th Cir. BAP 2002); *Ahlers*, 485 U.S. at 206; *Lowenschuss*, 67 F.3d at 1402; *Am. Hardwoods, Inc.*, 885 F.2d at 624-26.  Section 105 adds nothing as a source of supplemental bankruptcy law and is merely a recognition of the nonstatutory inherent, common-law powers to interpret statutes interstitially and of equitable powers that already repose in courts.  Any construction of Section 105 as an independent source of authority to "make law" risks crossing the fuzzy boundary between legitimate judicial interpretation and unconstitutional exercise of legislative powers.  Steve H. Nickles & David G. Epstein, *Another Way of Thinking About Section 105(a) & Other Sources of Supplemental Law Under the Bankruptcy Code*, 2000 CHAPMAN L. REV. 7, 9-10 (2000); *Yadidi*, 274 B.R. at 848.  Creating exceptions to the Code's express provisions is more than "filling in the interstices of the Code," and thus is more than Section 105 can authorize. *Yadidi*, 274 B.R. at 848.  Accordingly, the general grant of equitable power in Section 105(a) cannot trump the specific provisions of the Code. *Lowenschuss*, 67 F.3d at 1402; *In re Combustion Engineering*, 391 F.3d 190, 236 (3d Cir. 2004) (following *Lowenschuss* and holding that Section 105(a) cannot be used to enter an injunction in contravention of Section 524(e)).

**B.    Lehman VD Lenders Cannot Use the Lehman Plan to Circumvent the Law**

Paragraph 8.7.1 of the Lehman Plan provides that each Plan Project and all easements and appurtenances thereto and all associated personal property and rights, including the applicable VD

Plan Debtor's Estates' right, title and interest in, to and under any development agreements, plans, engineering reports, permits and community facilities district bonds, but excluding subdivision improvement and monumentation agreements, will be sold and conveyed by virtue of the Confirmation Order to the applicable Lehman Nominee free and clear of any <u>Encumbrance</u> . . . Lehman Plan, ¶ 8.7.1.  The definition of "Encumbrance" is overbroad and includes, without limitation, "*unassumed affirmative obligations under a development agreement or subdivision improvement agreement, . . . easement, covenant, encroachment, option or other interest in the subject Plan Project, . . . order of any governmental authority or other claim there against or therein, of any kind or nature*, . . .  whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown."  Exhibit E to Lehman Plan, ¶ 66, emphasis added.  Further, Article XII provides that all Persons who have held, currently hold, or may hold a debt, Claim or Interest against a VD Plan Debtor, including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units, other than those matters excepted from the automatic stay by Bankruptcy Code section 362(b)(4), shall be permanently enjoined from taking certain actions against Lehman Released Parties, which includes the Lehman Nominee (future owner of the Ritter Ranch Project), and the Ritter Ranch Property based on such holder's claims or interests.  Lehman Plan, ¶ XII.  This injunction, coupled with paragraph 8.7.1 of the Lehman Plan and the definition of Encumbrance, may impede on the City of Palmdale's authority to regulate the future development of the Ritter Ranch Project and therefore, violates City ordinances, and 28 U.S.C. section 959.

     A development agreement is, among other things, a legislative act that is adopted and enacted by the vote of the members of a city council and once approved is itself legislation.  <u>See</u> Cal. Gov't. Code section 65867.5(a); *see also Santa Margarita Area Residents Together v. San Luis Obispo County Board of Supervisors*, 84 Cal. App. 4th 221, 227, 100 Cal. Rptr. 2d 740, 744 (2000).  The Development Agreement at issue here is no different.  The Bankruptcy Code does not allow Palmdale Hills or any other person to negate laws of governmental entities and it does not

authorize a debtor to violate laws of the state it operates in while managing and operating its business. *See* 28 U.S.C. § 959.

In its Motion for Order Disallowing and/or Estimating General Unsecured Claim of City of Palmdale (for Debtor Palmdale Hills Property, LLC, Claim No. 89); Memorandum of Points and Authorities and Declaration of Daryl G. Parker in Support Thereof filed by Lehman Commercial Paper Inc. ("Lehman") on July 21, 2011 (Docket No. 2418) ("Lehman Objection"), Lehman acknowledged and affirmed, consistent with section 959, that the obligations under the Development Agreement cannot be severed or extinguished. Specifically, Lehman stated that "Confirmation of a plan and issuance of a discharge[4] in the Palmdale Debtor's Case ***will not*** terminate the parties' obligations under the Development Agreement. Lehman Objection, p. 7:12-13 emphasis added. Surprisingly, despite these statements, the Lehman Plan contains provisions to the contrary. Paragraph 8.7.1 of the Plan along with the definition of Encumbrance seeks to release the Lehman Nominee of complying with non-assumed affirmative obligations under the Development Agreement. Further, the injunction set forth in Article XII arguably can enjoin the City from regulating the future development of the Project pursuant to the Project Documents, except for matters excepted from the automatic stay by Bankruptcy Code section 362(b)(4). Future litigation here or in another court may ensue over what is a matter excepted from the automatic stay. Simply, the Lehman Plan is ambiguous, invites further litigation, and seeks to avoid compliance with legislation duly passed and adopted by a California municipality's city council in violation of 28 U.S.C. § 959.

This Court cannot grant such relief. "It is beyond question that Section 959(b) requires a trustee [or debtor in possession] to manage a business in accordance with state law, as any other person must." *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 592 (9th Cir. 1993). "Bankruptcy does not grant debtors rights greater than those they would receive outside bankruptcy." *Id.* As directed by 28 U.S.C. section 959(b):

---

[4] Lehman was mistaken about the discharge. See footnote 4.

> [A] trustee, receiver, or manager appointed in any case pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

Just as it applies to other laws, this mandate applies to legislatively adopted development restrictions and obligations. "A debtor in possession under Chapter 11 is not excused because of its bankruptcy from valid and enforceable state and local regulations. . . The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws . . ." *Cournoyer v. Town of Lincoln*, 790 F.2d 971, 977 (1st Cir. 1986). A bankruptcy plan cannot be used to allow a debtor to escape development restrictions. As explained by one court in holding that a debtor could not escape zoning ordinances by attempting to confirm a different use for a property through a bankruptcy plan:

> The authorities discussed above establish several general principles. First, a chapter 11 debtor is obligated to comply with the laws of the state in which it holds property. Second, a governmental unit's exercise of its police or regulatory power is not stayed after a chapter 11 petition has been filed. Third, the action of a governing body to enforce its police power may not represent a "claim" against the debtor, so that the governing body is not a "creditor" within the meaning of section 1141 of the Bankruptcy Code, and the action therefore is not barred by an order confirming a chapter 11 plan. Fourth, zoning laws constitute examples of a governing body's police or regulatory power. Finally, *all of the above principles reflect an overriding congressional intent that the Bankruptcy Court should not interfere with the valid exercise of a state's police power*.

*In re Union Golf of Florida, Inc.*, 242 B.R. 51, 58 (Bankr. M.D. Fla. 1998) (internal citations omitted; emphasis added).

The Lehman VD Lenders may argue that they are doing no such thing. However, in connection with approval of the Lehman VD Lender's disclosure statement, the City of Palmdale requested that the VD disclosure statement be revised to make clear that the terms and conditions under the VD Plan will not affect the City of Palmdale's rights to regulate the land development of the Ritter Ranch Project owned by Palmdale Hills. Rather than making the innocuous revision, Lehman VD Lenders response was "<u>Objection Unfounded</u>. Nowhere do the Plans or Disclosure Statements suggest interference with police powers and, to the contrary, they are expressly

1  excepted from being affected by the plan injunction in Disc § 5.8." Omnibus Reply of: (1) Trustee
2  and Lehman Creditors to Objections Filed Against Disclosure Statement with Respect to Second
3  Amended Joint Chapter 11 Plan for Eight Trustee Debtors; and (2) Lehman VD Lenders to
4  Objections Filed Against Disclosure Statement with Respect to Second Amended Joint Chapter 11
5  Plan for Eleven Voluntary Debtors filed on July 15, 2011 [Docket No. 2382] ("Lehman Disclosure
6  Response"). Based on the Lehman Disclosure Response and the provisions of the Plan as noted
7  above, it is obvious that the Lehman VD Lenders are attempting by the Plan to avoid compliance
8  with legislation that they would not otherwise be able to do outside of a bankruptcy case. This
9  Court should not condone such actions.

### C. Projects Cannot be Sold Free and Clear of Certain of the "Encumbrances"

Under the Lehman Plan each Plan Project and all easements and appurtenances thereto and all associated personal property and rights, will be sold and conveyed to the Lehman Nominee free and clear of any <u>Encumbrance</u> . . . Lehman Plan, ¶ 8.7.1. Emphasis added. As noted above the definition of Encumbrance is overly broad, including "<u>unassumed affirmative obligations under a development agreement or subdivision improvement agreement, . . . easements, covenants, encroachments, options or other interests in the subject Plan Project, . . . orders of any governmental authority or other claim there against or therein, of any kind or nature</u> . . ." Neither Sections 1123(a)(5)(D) nor 363(f)(1)-(5) of the Bankruptcy Code allow for the sale and conveyance of assets free and clear of certain of the so-called encumbrances defined in the Lehman Plan (*i.e.*, affirmative obligations under the Development Agreement, easements, covenants, encroachments, and orders of any governmental authority). Specifically, Section 1123(a)(5)(D) of the Bankruptcy Code allows only the sale free and clear of "liens." These so-called encumbrances in the Plan are not liens, and therefore, the conveyance of the Ritter Ranch Project to the Lehman Nominee cannot and will not be free and clear of these items. See Bankruptcy Code § 1123(a)(5)(D). Section 363(f) of the Code also does not apply. First, the City of Palmdale does not consent to the sale and transfer of the Debtor's rights, title and interest under the Development Agreement, any easements or encroachments it may possess on the terms stated in the Lehman Plan. Second, applicable nonbankrutpcy law does not permit such a sale free of

such obligations. Moreover, even assuming that the so-called encumbrances were indeed "interests" to which 363(f) applied, the sale and conveyance of assets to the Lehman Nominee is prohibited by Section 363(e) of the Bankruptcy Code because the Plan fails to provide adequate protection to the City.

### D. The Lehman Plan Cannot Alter or Otherwise Affect the City's Rights Under Agreements with the Sureties

Paragraph 3.2.3(e) of the Lehman Plan provides that "The Settling Bond Issuer is to perform and/or pay in full for the performance of the Future Work obligations with respect to each Settling Bond Issuer-Backed Future Work Claim, *if Allowed, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date*." Lehman Plan ¶ 3.2.3(e), emphasis added. No provision of the Bankruptcy Code validates or authorizes impermissible, unilateral impairment of the City's legal, equitable and contractual rights to which the City currently is entitled to under the Performance Bonds issued by the Sureties in favor of the City. The Sureties' obligation to pay for Future Work is absolute; it is not conditioned upon the City holding an Allowed Claim in this bankruptcy case. The City's claims *against the Sureties* may not be litigated in this Court. Hence to the extent that paragraph 3.2.3(e) is intended to alter, change or otherwise affect (i) the City of Palmdale's rights and interests against the Sureties under Performance Bonds, and/or (ii) the Sureties obligations to the City, then the Lehman Plan violates Section 1129(3) of the Bankruptcy Code and cannot be confirmed in its present form.

## IV. RESERVATION OF RIGHTS

The City of Palmdale reserves its rights to assert further objections to the Lehman Plan either at or before the hearing thereon. Additionally, nothing herein shall limit or otherwise effect the City of Palmdale's right to assert objections to Lehman's ability to assume and assign executory contracts, including the Development Agreement and Subdivision Improvement Agreements, should Lehman elect to designate any such agreements on Exhibit A of the Lehman Plan.

## V. CONCLUSION

For all the reasons set forth above, the City of Palmdale respectfully requests that this Court enter an order denying confirmation of the Lehman Plan at this time.

Dated: September 19, 2011

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ Debra A. Riley
DEBRA A. RILEY
Attorneys for CITY OF PALMDALE