1 | PAUL J. COUCHOT -- State Bar No. 131934
SEAN A. O'KEEFE -- State Bar No. 122417
2 | **WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
3 | 660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
4 | Telephone: (949) 720-4100
Facsimile: (949) 720-4111
5 | General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession
6 |
7 | RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
8 | **RUS MILIBAND & SMITH P.C.**
2211 Michelson Drive, Seventh Floor
9 | Irvine, California 92612
Telephone: (949) 752-7100
10 | Facsimile: (949) 252-1514
Counsel for SunCal Management LLC and
11 | SCC Acquisitions Inc.

12 | **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
13 | **SANTA ANA DIVISION**

14 | In re | Case No. 8:08-bk-17206-ES

15 | | Jointly Administered With Case Nos.

Palmdale Hills Property, LLC, and its
16 | Related Debtors. | 8:08-bk-17209ES; 8:08-bk-17240ES; 8:08-bk-17224ES;
8:08-bk-17242ES; 8:08-bk-17225ES; 8:08-bk-17245ES;
| Jointly Administered | 8:08-bk-17227ES; 8:08-bk-17246ES; 8:08-bk-17230ES;
17 | Debtors and Debtors-in- | 8:08-bk-17231ES; 8:08-bk-17236ES; 8:08-bk-17248ES;
Possession | 8:08-bk-17249ES; 8:08-bk-17573ES; 8:08-bk-17574ES;
18 | | 8:08-bk-17575ES; 8:08-bk-17404ES; 8:08-bk-17407ES;
| Affects: | 8:08-bk-17408ES; 8:08-bk-17409ES; 8:08-bk-17458ES;
19 | ☐ All Debtors | 8:08-bk-17465ES; 8:08-bk-17470ES; 8:08-bk-17472ES;
| ☒ Palmdale Hills Property, LLC, | and 8:08-17588ES.
20 | ☐ SunCal Beaumont Heights, LLC |
| ☐ SCC/Palmdale, LLC | Chapter 11 Cases
21 | ☐ SunCal Johannson Ranch, LLC |
22 | ☒ SunCal Summit Valley, LLC | **DECLARATION OF SEAN A. O'KEEFE IN**
| ☒ SunCal Emerald Meadows LLC | **SUPPORT OF OBJECTIONS TO: (A) THIRD**
23 | ☒ SunCal Bickford Ranch, LLC | **AMENDED JOINT CHAPTER 11 PLAN FOR**
| ☒ Acton Estates, LLC | **ELEVEN VOLUNTARY DEBTORS PROPOSED**
24 | ☐ Seven Brothers LLC | **BY THE LEHMAN VD LENDERS; AND**
| ☒ SJD Partners, Ltd. | **(B)   THIRD AMENDED JOINT CHAPTER 11**
25 | ☐ SJD Development Corp. | **PLAN FOR EIGHT TRUSTEE DEBTORS**
| ☐ Kirby Estates, LLC | **PROPOSED BY THE TRUSTEE AND BY THE**
26 | ☐ SunCal Communities I, LLC | **LEHMAN TD LENDERS**
27 | ☐ SunCal Communities III, LLC | DATE:    October 24, 2011
| ***Continued on Next Page*** | TIME:    10:00 a.m.
28 | | PLACE:   Courtroom 5A

*Continued from Previous Page*

☒ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☒ Tesoro SF, LLC
☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☒ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☒ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF SEAN A. O'KEEFE**

I, Sean A. O'Keefe, hereby declare and state as follows:

1.      I am over the age of eighteen years. The facts stated herein are within my personal knowledge.

2.      I am Of Counsel to the firm of Winthrop Couchot, P.C. and I have been working on the above-entitled case since 2009.

3.      On August 1, 2011, I took the deposition of Robert Brusco on behalf of Voluntary Debtors[1] in New York City, at the law offices of McCarter & English, LLP. This deposition was taken under the penalty of perjury before a court reporter.

4.      After the deposition, the court reporter sent a transcript of the deposition of Mr. Brusco to my attention at Winthrop Couchot, P.C. (the "Brusco Transcript").

5.      Attached hereto as Exhibit "1" are true and correct copies of certain pages from the Brusco Transcript.

6.      On August 26, 2011, I took the deposition of Nellie P. Camerik on behalf of Voluntary Debtors[2] in Miami, Florida, at the offices of Veritext National. This deposition was taken under the penalty of perjury before a court reporter.

7.      After the deposition, the court reporter sent a transcript of Ms. Camerik's deposition to my attention at Winthrop Couchot, P.C. (the "Camerik Transcript").

8.      Attached hereto as Exhibit "2" are true and correct copies of certain pages from the Camerik Transcript.

---

[1] Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont Heights, LLC, SunCal Emerald Meadows, LLC SunCal Johansson Ranch, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., SJD Development Corp., SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF, LLC.

[2] Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont Heights, LLC, SunCal Emerald Meadows, LLC SunCal Johansson Ranch, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., SJD Development Corp., SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF, LLC.

1

1        9.    On September 12, 2011, I took the deposition of Francis X. Gilhool on behalf of

2    Voluntary Debtors[3] in New York City at the law offices of McCarter & English, LLC. This

3    deposition was taken under the penalty of perjury before a court reporter.

4        10.    After the deposition, the court reporter sent a transcript of the Mr. Gilhool's

5    deposition to my attention at Winthrop Couchot, P.C. (the "Gilhool Transcript").

6        11.    Attached hereto as Exhibit "3" are true and correct copies of certain pages from the

7    Gilhool Transcript.

8        I declare that the foregoing is true and correct under the penalty of perjury.

9        Executed this 19th day of September 2011, in Orange County, California.

10

                   /s/ Sean A. O'Keefe

11

                   Sean A. O'Keefe

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    [3] Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont Heights, LLC, SunCal Emerald Meadows, LLC SunCal Johansson Ranch,

27    LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., SJD Development Corp., SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF,

28    LLC.

**Exhibit 1**

| | | |
|---|---|---|
| 1 | R. BRUSCO | |
| 2 | question -- I'm not expert on California | 14:52:46 |
| 3 | foreclosure law or California law | 14:52:48 |
| 4 | generally, but I can relate it to any | 14:52:52 |
| 5 | borrower-lender relationship.  I don't | 14:52:56 |
| 6 | think a lender can unilaterally modify | 14:52:59 |
| 7 | documents to increase an interest rate | 14:52:59 |
| 8 | unless the documents on the own terms | 14:53:07 |
| 9 | allow for that ability for the lender to | 14:53:10 |
| 10 | unilaterally increase that rate. | 14:53:14 |
| 11 | Q    So would you agree then that the | 14:53:16 |
| 12 | restructuring agreement and the settlement | 14:53:17 |
| 13 | agreement provided for, among other | 14:53:19 |
| 14 | things, a transfer of voluntary debtors' | 14:53:23 |
| 15 | certain assets, the loans subject to the | 14:53:27 |
| 16 | agreement, to new entities, it provided | 14:53:30 |
| 17 | for on the other side of the equation a | 14:53:37 |
| 18 | transfer of the Lehman entities' | 14:53:42 |
| 19 | collateral to the new entity?  Can you | 14:53:47 |
| 20 | agree with that? | 14:53:48 |
| 21 | A    So you said the transfer of the | 14:53:49 |
| 22 | Lehman entities -- | 14:53:51 |
| 23 | Q    Being the land? | 14:53:52 |
| 24 | A    Right.  The collateral for the | 14:53:53 |
| 25 | loans held by those entities to new SPEs? | 14:53:55 |

Page 250

000004

```
 1                    R. BRUSCO
 2       Q      Yes.                              14:53:59
 3       A      Yes.                              14:54:00
 4       Q      And would you agree that it       14:54:00
 5   provided for a fundamental change in the     14:54:05
 6   interest rate provided for in those loan     14:54:08
 7   contracts?                                   14:54:11
 8       A      The restructuring agreement       14:54:11
 9   contemplated as part of the overall          14:54:17
10   restructuring of the transaction an          14:54:21
11   increase in the interest rate under the      14:54:26
12   current loans, under the existing loans.     14:54:28
13       Q      So would you agree that the       14:54:30
14   restructuring agreement and the settlement   14:54:33
15   of Lehman together makes a number of         14:54:36
16   changes to the borrower or lender            14:54:39
17   relationship that you referenced in          14:54:42
18   response to my first question?               14:54:43
19       A      Yes.  It was a restructuring.     14:54:46
20       Q      Would you agree that what was     14:54:49
21   being restructured was the lending           14:54:55
22   relationship in part?                        14:54:56
23       A      Yes, I would agree with that.     14:55:04
24       Q      Would you refer to section one    14:55:06
25   of Exhibit 2?  That's again the              14:55:29
```

Page 251

000005

**Exhibit 2**

000006

Nellie Camerik - August 26, 2011

1   we have to date, would, other than by counsel advising

2   him of where we were, would know that personally.

3       Q.   Again, speaking as of the date this letter was

4   drafted and transmitted, did you have personal

5   knowledge, you Nellie Camerik, as of that date and time

6   that the SunCal parties had not obtained all required

7   consents for a minimum of eight conveyance properties?

8       A.   I would have checked with Gibson Dunn.   I

9   would not have relied on seeing only what I have seen.

10          I had not seen all the required consents.

11  That didn't mean that Mr. Champion or somebody at

12  Gibson Dunn, who was also Lehman's counsel, hadn't.  So

13  I'm sure that I consulted with them to make sure that

14  even though Nellie Camerik didn't see them they didn't

15  either.

16      Q.   To quote Mr. Soto at a prior deposition, I'm

17  asking you for the truth and nothing but the truth with

18  respect to this particular issue.  Did you have

19  personal knowledge, you Nellie Camerik, as of that date

20  and time, not other people but you --

21      A.   But my personal knowledge is affected by what

22  I hear or confirm with other people.  That's part of my

23  personal knowledge, is it not?

24          MR. SOTO:  You don't get to ask questions

25      here, I'm sorry, Nellie.  I know it's hard for you.

                                              Page 46

000007

Nellie Camerik - August 26, 2011

```
 1          A.    Well, my answer is different depending on
 2     whether the answer is yes or no.
 3                What constitutes my personal -- I don't mean
 4     to be difficult.  I just want to understand what you
 5     think.
 6          Q.    I'll clarify.
 7                I want to know whether you had documents in
 8     front of you that would lead you to the conclusion
 9     that's stated here in the second paragraph of Exhibit
10     2?
11          A.    It's the opposite.  I didn't did have
12     documents in front of me that would lead me to the
13     conclusion that they had all the required consents.
14          Q.    So then would you agree that it's possible
15     that they had the required consents, they simply
16     weren't in front of you?
17          A.    Is it possible that SunCal had them and I
18     never saw them and I never heard that Lehman ever got
19     them?  Sure.
20          Q.    So as of November 13, 2008 --
21          A.    But -- can I clarify?  But it wasn't enough
22     for SunCal to have them if they hadn't transmitted them
23     to Lehman.  If you have an obligation to provide
24     required consents and you don't provide them you
25     haven't fulfilled that obligation.
```

Page 47

Nellie Camerik - August 26, 2011

1           So SunCal having them and never sharing them
2   with Lehman is as if SunCal never had them.
3       Q.    What were the required consents for those
4   eight conveyance properties?  I'm speaking -- again,
5   I'm asking you that question, did you have an
6   understanding as of November 13, 2008 what required
7   consents were -- what consents were required that were
8   missing?
9       A.    Yes, is the short answer.  To really
10  understand that answer, though, you have to understand
11  how we came about determining what required consents
12  there were supposed to be.
13          We did not at the time we signed the
14  restructuring agreement have already undertaken that
15  exercise.  That exercise occurred thereafter.  And it
16  occurred largely with SunCal telling us what it is that
17  was going to be needed pursuant to the various and
18  assorted entitlement documents.  Gibson Dunn, who were
19  the land use and development experts and counseled
20  Lehman on this, undertook to negotiate, discuss,
21  whatever, with SunCal what the required consents were
22  going to be.
23          In the beginning of the summer of '08 we came
24  up with a mutually agreed upon list of everything both
25  parties thought was critical, important, and left off

                                                    Page 48

Nellie Camerik - August 26, 2011

```
1    the list things that just either could be easily
2    obtained after title transfer, never needed to be
3    obtained, didn't matter, were obsolete, whatever.  But
4    we came up with a list project by project,
5    excruciatingly detailed, and everybody decided who was
6    going to be the SunCal point person to go get them.
7    And the "go get them" wasn't necessarily get a piece of
8    paper from a municipality.  Sometimes it involved
9    producing a draft assignment, consent, approval.  It
10   was a variety of different things.  They came in all
11   shapes and sizes.
12          And that's what the summer of '08 was all
13   about in terms of trying to get these consents, deal by
14   deal, project by project, every utility company, every
15   fish and wildlife commission, every municipality,
16   whoever it was with identifying what the party, who the
17   party was, who the point person at that party was, when
18   they spoke to them.
19          There were detailed notes, and I think SunCal
20   had the pen on that chart, detailed notes about when
21   SunCal spoke to them, what that person said, when he
22   promised he would look and review the draft, what the
23   next step was.  It was excruciatingly detailed.
24          By September, obviously, that list got shorter
25   and shorter and shorter.  So it was not very difficult
```

Page 49

000010

Nellie Camerik - August 26, 2011

1   to determine what was left and what had hadn't been

2   obtained.  It was literally checking things off the

3   list.  Eventually we went from detailed charts that

4   were pages and pages long to e-mails that set forth

5   what was left as we got down to a fairly short list.

6          I'm sorry.  I think that's a yes.

7      Q.   What was on that short list?  What was on that

8   short list which was the lacking required consents?

9      A.   Okay.  Well, if you show me, and I don't have

10  it here to tell you.  I don't remember.  I recall --

11     Q.   Your answer is "I don't remember"?

12     A.   Okay, I don't remember without looking at the

13  list.

14     Q.   I'm not criticizing.

15     A.   I know there was a Marblehead item that had

16  not been obtained.  I know there was a Pac Point not

17  obtained.  I know there were all sorts of issues on Del

18  Rio that was not been involved.  Ritter certainly

19  hadn't been resolved.

20          Those were the ones I recall from the time

21  hadn't been obtained.

22     Q.   When you say those are the ones, you are

23  referencing a consent, but you are not telling me what

24  the consent was.

25     A.   I do not recall sitting here without that

**Exhibit 3**

000012

Page 129

1                What were you referring to?

2         A.    I didn't know exactly what the legal

3    status of the repo would be in regards to

4    closing the transaction.  I didn't have clarity

5    at that moment in time nor do I now on what

6    exactly that meant.

7         Q.    Who would you have looked to to

8    determine what that meant?

9         A.    That would have been legal counsel

10   and it would have been the guys at A&M who were

11   working on it, so a combination of legal counsel

12   and A&M.

13        Q.    So apart from that, you have no

14   knowledge or no understanding one way or another

15   on that issue?

16        A.    Correct.

17             MR. SOTO:  Okay.  I have no further

18        questions.

19             MR. O'KEEFE:  Can I just do a quick

20        follow-up?

21             MS. KIM:  Sure.

22   FURTHER EXAMINATION BY

23   MR. O'KEEFE:

24        Q.    Counsel asked you about whether or

25   not the conditions for a closing under the

Page 130

1    Settlement Agreement were in place by

2    September 30th and you said you did not believe

3    they were.

4         A.    That's right.

5         Q.    Okay.  What conditions were not

6    satisfied to your --

7         A.    I believe there are still issues with

8    regards to required consents.

9         Q.    What required consents were missing?

10        A.    As I've said previously, I can't

11   recall the specific details.  Those would be

12   answered best by Nellie or Drew Wilson.

13        Q.    So when you answered counsel's

14   question, you don't know whether any required

15   consents were missing?

16        A.    No, that's not correct.  I knew at

17   the time throughout September that there was

18   various issues that were needed to be obtained

19   and the marching orders that I gave at that time

20   is live by the document, get everything that

21   needs to be done and we should be able to close.

22        Q.    As you sit here today, you can't

23   refer -- you can't identify a single required

24   consent that's missing; isn't that true?

25        A.    That's true.

Page 131

1      Q.    And you can't identify any other

2   condition as you sit here today that you know

3   was not satisfied as of September 30th.

4             MR. SOTO:   Objection.  It's contrary

5        to his prior testimony.

6      A.    I know that based upon the people

7   that were working for me, both Weil, and Drew,

8   and Brian Gross and Rob Brusco that they were

9   tasked to make sure that all of the required

10  documents, consents, title, all of that

11  information would be obtained.

12            I wasn't the person gathering that

13  information.  They would have the specific

14  information that was not obtained, but I do know

15  that not all of the information was obtained.

16     Q.    What information wasn't obtained?

17     A.    Again, as I've said previously, I

18  cannot give you specific information, but I'm

19  sure if we dug deeper in the file and we shared

20  information in emails, we would see what

21  information wasn't provided to us, but I very

22  much remember that all the information had not

23  been obtained.

24     Q.    But as you sit here today, you cannot

25  identify a single required consent.

Page 132

1         A.    As I've said repeatedly now, I cannot

2    recall specific information.

3         Q.    You testified that you know something

4    was missing on the one hand.  Then you also

5    testified, I don't know what was missing.

6         A.    Yeah.  What I've testified to, and we

7    can go through it and I'm sure it would be very

8    consistent, I don't know all the specific

9    information that was required, but the people

10   working for me at the time had been tasked to

11   get that information.

12             As they came back to me, they were

13   not able to provide me assurances that all the

14   information had been provided.

15             It's a couple of years that have gone

16   past.  I can't recall with any specificity with

17   regards to what consents, title, agreements,

18   what were outstanding.  You would be best served

19   to ask that.

20        Q.    Well, I have.

21        A.    I would imagine they've said

22   something very consistent.

23        Q.    They said they didn't know either.

24             My question to you, though, is who

25   told you that and what did they tell you was

Page 133

1   missing?

2        A.    I cannot recall specific information

3   that was required, but it was clear based upon

4   what I was trying to do at the time was close

5   the deal as per the documents, so if there's

6   open items, get them closed and come to me with

7   everything wrapped up.

8        Q.    Okay.  So my question to you, though,

9   is, you referenced this series of people who

10  were tasked with getting various things to close

11  the deal and then you testified that you

12  believed that not everything was provided.

13            Now what I want to know from you is

14  which person told you what.  I need to know who

15  told you exactly what was missing.

16       A.    Okay.

17            MR. SOTO:  Objection.  Asked and

18       answered.  Argumentative.

19       A.    I think I've answered that several

20  times now.  I think you would be best served to

21  speak to Nellie --

22       Q.    You're not answering my question.

23       A.    Nellie and Brian Gross would have

24  been or Drew Wilson, would have been the ones

25  feeding me information via either Brian Gross or

Page 134

1    Rob Brusco if there was any remaining items that

2    were outstanding.

3         Q.    Okay.  Let's go through them

4    individually.

5              What did Drew Wilson tell you was

6    missing?

7         A.    I can't recall.

8         Q.    What did Rob Brusco tell you was

9    missing?

10        A.    I can't recall.

11        Q.    What did Nellie Camerik tell you was

12   missing?

13        A.    I can't recall.

14        Q.    What did Mick Bond tell you was

15   missing?

16        A.    I can't recall.

17        Q.    Now after Lehman filed bankruptcy, I

18   mean a minute ago you testified that you

19   directed those people to bring you this package

20   when it was done.

21        A.    Live by the document.

22        Q.    Okay.  But after 9/15 --

23        A.    As of the date of the bankruptcy, I

24   was still pushing to get the deal closed and I

25   was still pushing get everything that's required

Page 135

1    so we can go to A&M and say look, they've

2    delivered everything, there's nothing that they

3    didn't provide us, close.

4            As I've said consistently, let's

5    close.  I worked 18 months on it.  There was

6    some stuff in the deal that hadn't been done.  I

7    don't know the specifics.

8            Please don't ask me again because I

9    can't give them to you, but I told everybody,

10   guys, let's do everything we possibly can.

11   SunCal, deliver what we need.  I don't know what

12   it was.  I know that there was stuff at the time

13   I knew.  I can't recall it.  Close.  Let's close

14   this.  I want to close this.  I want to give you

15   guys this deal, but they didn't.

16       Q.    After 9/15 did you have a -- between

17   9/15 and 9/30, did you have a conversation with

18   Nellie Camerik directing her to close the deal?

19       A.    Sean, I can't remember specific

20   conversations.

21       Q.    I just need you to say I don't

22   recall.

23       A.    I can't recall.

24       Q.    And if I asked that same question

25   with --

1        A.    With every one of those individuals,

2    I will tell you the same thing; that I cannot

3    recall the specifics but I --

4        Q.    But do you know whether you had

5    conversations to that effect?

6        A.    I had a conversation every day that I

7    was there, I believe, on can we close, can we

8    close.  I want go to A&M, show them that we have

9    everything.

10            And I was speaking with SunCal at the

11   time and I was asking these guys to help.

12       Q.    Now you say can we close and you were

13   having these conversations, but you didn't

14   receive that letter from SunCal.  You don't

15   recall receiving that letter from SunCal.

16            MR. SOTO:  You're talking about the

17       September 29th letter, Exhibit 11.

18            MR. O'KEEFE:  Yes.

19       A.    As I said, I don't recall seeing this

20   letter.  I don't recall getting it.  I'm sure

21   that I did but --

22       Q.    If you, if you don't recall receiving

23   it --

24       A.    I'm sure that I did.

25       Q.    How can you be sure that you did?

Page 137

1        A.      Because you gave it to me, you showed

2    me that I was cc'd and it was via email to me.

3    If they have my email address, which they did,

4    although they've misspelled my name, I would

5    be -- I feel like it probably got to me.

6        Q.      You're making an assumption; isn't

7    that true?

8                You're assuming that because that's

9    CC is there that it got to you.

10       A.      Well, listen, Sean, I don't want to

11   get confrontational, but you tell me, do you

12   think that this got to me?

13       Q.      I have no idea.

14       A.      Okay.  I have no idea.

15       Q.      That's what I mean to say.

16       A.      I have no idea, but I would suspect

17   strongly that it did get to me.

18       Q.      You're welcome to suspect, but you

19   don't know, correct?

20       A.      Well, why don't you check my emails?

21               MR. SOTO:  He's just asking you.

22       A.      Okay.  I'm telling you I --

23       Q.      Just say I don't know, I don't know

24   whether I received that letter.

25               (Document review.)

| In re:<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-17206 ES |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: DECLARATION OF SEAN A. O'KEEFE IN SUPPORT OF OBJECTIONS TO (A) THIRD AMENDED JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS AND (B) THIRD AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE LEHMAN TD LENDERS was served in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 20, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 20, 2011 | Gretchen Crumpacker | /s/ *Gretchen Crumpacker* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-3.1**

MAINDOCS-#166802-v1-Palmdale_POS_DecO_KeefeOppLehmanPlan.DOC

| In re:<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:08-bk-17206 ES |

## E-MAIL SERVICE LIST

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Caroline Djang    cdjang@rutan.com
- Donald T Dunning    ddunning@dunningLaw.com
- Lynsey M Eaton    leaton@gglts.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Don Fisher    dfisher@ptwww.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

MAINDOCS-#166802-v1-Palmdale_POS_DecO_KeefeOppLehmanPlan.DOC

| In re<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 8:08-bk-17206 ES |
|---|---|

- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@marshackhays.com
- Charles Liu    cliu@winthropcouchot.com
- John W Lucas    jlucas@pszjlaw.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Scott H Olson    solson@seyfarth.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

MAINDOCS-#166802-v1-Palmdale_POS_DecO_KeefeOppLehmanPlan.DOC

| In re:<br>PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS,<br>Debtor(s). | CHAPTER  11<br>CASE NUMBER  8:08-bk-17206 ES |
|---|---|

- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

MAINDOCS-#166802-v1-Palmdale_POS_DecO_KeefeOppLehmanPlan.DOC