1   RONALD RUS, #67369
    rrus@rusmiliband.com
2   JOEL S. MILIBAND, #77438
    jmiliband@rusmiliband.com
3   CATHRINE M. CASTALDI, #156089
    ccastaldi@rusmiliband.com
4   RUS, MILIBAND & SMITH
    A Professional Corporation
5   Seventh Floor
    2211 Michelson Drive
6   Irvine, California 92612
    Telephone:   (949) 752-7100
7   Facsimile:   (949) 252-1514

8   Attorneys for SunCal Management, LLC

9                  UNITED STATES BANKRUPTCY COURT

10        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

11  In re                                    CASE NO. 8:08-bk-17206-ES
                                             Chapter 11
12  PALMDALE HILLS PROPERTY, AND ITS         Jointly Administered With Case Nos.:
    RELATED DEBTORS,
13                                           8:08-bk-17209-ES; 8:08-bk-17240-ES;
            Jointly Administered Debtors     8:08-bk-17224-ES; 8:08-bk-17242-ES;
14          and Debtors-in-Possession.       8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                             8:08-bk-17227-ES; 8:08-bk-17246-ES;
15  Affects:                                 8:08-bk-17230-ES; 8:08-bk-17248-ES;
    ☐       All Debtors                       8:08-bk-17236-ES; 8:08-bk-17248-ES;
16  ☒       Palmdale Hills Property, LLC       8:08-bk-17249-ES; 8:08-bk-17573-ES;
    ☒       SunCal Beaumont Heights, LLC       8:08-bk-17574-ES; 8:08-bk-17575-ES;
17  ☐       SCC/Palmdale, LLC                  8:08-bk-17404-ES; 8:08-bk-17407-ES;
    ☒       SunCal Johannson Ranch, LLC        8:08-bk-17408-ES; 8:08-bk-17409-ES;
18  ☒       SunCal Summit Valley, LLC          8:08-bk-17458-ES; 8:08-bk-17465-ES;
    ☐       SunCal Emerald Meadows LLC         8:08-bk-17470-ES; 8:08-bk-17472-ES; and
19  ☒       SunCal Bickford Ranch, LLC         8:08-bk-17588-ES
    ☒       Acton Estates, LLC
20  ☒       Seven Brothers LLC                SUNCAL MANAGEMENT, LLC'S
    ☐       SJD Partners, Ltd.               OBJECTION TO CONFIRMATION
21  ☐       SJD Development Corp.            OF (1) THE THIRD AMENDED
    ☒       Kirby Estates, LLC              JOINT CHAPTER 11 PLAN FOR
22  ☒       SunCal Communities I, LLC        ELEVEN VOLUNTARY DEBTORS
    ☐       SunCal Communities III, LLC      PROPOSED BY THE LEHMAN VD
23  ☒       SCC Communities LLC              LENDERS AND (2) THE THIRD
    ☐       North Orange Del Rio Land, LLC   AMENDED JOINT CHAPTER 11
24  ☒       Tesoro SF LLC                    PLAN FOR EIGHT TRUSTEE
    ☒       LBL-SunCal Oak Valley, LLC       DEBTORS PROPOSED BY THE
25  ☒       SunCal Heartland, LLC            TRUSTEE AND SUBJECT LEHMAN
    ☒       LBL-SunCal Northlake, LLC        CREDITORS
26  ☒       SunCal Marblehead, LLC
    ☐       SunCal Century City, LLC         Date:  October 24, 2011
27                                           Time:  9:30 a.m.
    *Caption Continued on Next Page*         Ctrm:  5A
28

463171v3 CMC 9/19/11 1 (2882-0001)

# **TABLE OF CONTENTS**

**Page**

1.  PRELIMINARY STATEMENT ........................................................................................ 2

2.  THE LEHMAN PLANS FAIL TO SATISFY EACH OF THE CONFIRMATION
    REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE ....................... 5

    A.  The Lehman Plans Are Not Proposed In Good Faith.............................................. 5

        (1)  The Plan Is Not Proposed In Good Faith As It Improperly Classifies
             Certain Claims In Violation Of 11 U.S.C. §1122 and 1123(a)(4) ............... 6

        (2)  The Plan Violates California Anti-Deficiency Statutes ............................... 8

    B.  Because The Lehman Plans Include A Settlement, Each Must Meet The
        Requirements Of Rule 9019 Of The Federal Rules Of Bankruptcy
        Procedure.............................................................................................................. 10

    C.  The Lehman Plans Fail To Meet The "Best Interest Of Creditors Test"
        Under 11 U.S.C. § 1129(a)(7) ............................................................................. 15

    D.  The Plan Does Not Meet Cram-Down Requirements ............................................ 18

    E.  The Lehman Plans Are Not Feasible...................................................................... 18

3.  THE LEHMAN PLANS INAPPROPRIATELY LIMIT LIABILITY IN EXCESS
    OF THE SAFE HARBOR PROVISIONS OF 11 U.S.C §1125(E) AND VIOLATE
    11 U.S.C. §524(E) .................................................................................................... 19

4.  RESERVATION OF RIGHTS....................................................................................... 21

5.  CONCLUSION ........................................................................................................... 22

DECLARATION OF JOEL S. MILIBAND ............................................................................ 23

REQUEST FOR JUDICIAL NOTICE .................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),*
  885 F.2d 621 (9th Cir.1989) .................................................................................. 21

*Everett v. Perez (In re Perez),*
  30 F.3d 1209 (9th Cir. 1994) ................................................................................... 6

*Financial Sec. Assurance Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.),*
  116 F.3d 790 (5th Cir. 1997) ................................................................................... 5

*In re A & C Properties,*
  784 F.2d 1377 (9th Cir. 1986) ................................................................................ 11

*In re Acequia,*
  787 F.2d 1352 (9th Cir. 1986) ................................................................................ 18

*In re Barakat,*
  99 F.3d 1520 (9th Cir. 1996) .................................................................................... 7

*In re Baseline-Dobson Center,*
  193 B.R. 284 (Bankr. D. Ariz. 1994) ....................................................................... 7

*In re Branding Iron Steak House,*
  536 F.2d 299 (9th Cir. 1976) .................................................................................... 7

*In re Central Pacific Boiler & Piping, Ltd.,*
  81 B.R. 40 (Bankr.D.Haw. 1987) ............................................................................. 7

*In re Global Ocean Carriers Ltd.,*
  251 B.R. 31 (Bankr. D. Del. 2000) ...................................................................... 5, 16

*In re Granite Broadcasting Corp.,*
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) ..................................................................... 5

*In re Johns-Manville Corp.,*
  843 F.2d 636 (2d Cir. 1988) ..................................................................................... 5

*In re Lake Country Investments,*
  2001 WL 267475 (Bankr.D.Idaho 2001) ................................................................. 7

*In re Lowenschuss,*
  67 F.3d 1394 (9th Cir. 1995) .................................................................................. 21

*In re MCorp Fin., Inc.,*
  137 B.R. 219 (Bankr. S.D. Tex) .............................................................................. 17

1   *In re Montclair Retail Center,*
        177 B.R. 663 (9th Cir. BAP 1995) ..................................................................... 7

2

3   *In re Rusty Jones, Inc.,*
        110 B.R. 362 (Bankr. N.D. Ill 1990) ................................................................. 17

4

    *In re Sylmar Plaza, L.P.,*
5       314 F.3d 1070 (9th Cir. 2002) ............................................................................ 5

6   *In re Trevarrow Lanes, Inc.,*
        183 B.R. 475 (Bankr. E.D. Mich 1995) ........................................................ 5, 16

7

8   *In re Tribune Co.,*
        2011 WL 386827 (D. Del. Feb. 3, 2011) ........................................................... 12

9   *In re Zaleha,*
10      162 B.R. 309 (Bankr. D. Idaho 1993) ................................................................. 5

11  *In re: Charter Communications,*
        419 B.R. 221 (Bankr. S.D.N.Y. 2009) ............................................................... 10

12

13  *In re: Nutraquest,*
        434 F.3d 639 (3d Cir. 2006) ............................................................................... 14

14

    *In re: Nutritional Sourcing Corp.,*
15      398 B.R. 816 (Bankr. Del. 2008) ............................................................ 6, 14, 15

16  *Liberty Nat'l Enters v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship),*
        115 F.3d 650 (9th Cir. 1997) ............................................................................. 18

17

18  *Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc.*
        *(In re Rohnert Park Auto Parts, Inc.),* 113 B.R. 610 (9th Cir. BAP 1990) ............ 21

19  *Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.,*
20      298 F.3d 1137 (9th Cir. 2002) ........................................................................... 21

21  *Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),*
        171 B.R. 71 (9th Cir. BAP 1994) ....................................................................... 21

22

23  *Underhill v. Royal,*
        769 F.2d 1426 (9th Cir.1985) ............................................................................ 21

24  **FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

25  11 U.S.C. § 510(c) ................................................................................................... 7

26  11 U.S.C. §524(e) ................................................................................ 5, 19, 20, 21

27  11 U.S.C. §1122 and 1123(a)(4) ............................................................................. 6

28

11 U.S.C. § 1129(a)(7) ........................................................................................ 15, 16

11 U.S.C. § 1129(a)(7)(A) .......................................................................................... 16

11 U.S.C. § 1129(a)(11) ............................................................................................. 18

28 U.S.C. § 959 ............................................................................................................. 9

Bankruptcy Code § 101 (2) .......................................................................................... 6

Bankruptcy Code § 1125(e) ............................................................................... 5, 19, 20

Bankruptcy Code § 1129 ..................................................................................... 3, 4, 5, 18

Federal Rules of Bankruptcy Procedure, Rule 9017 ..................................................... 25

Federal Rules of Evidence, Rule 201 ........................................................................... 25

Federal Rules Of Bankruptcy Procedure, Rule 9019 ..................................... 10, 14, 15

§ 1129(a)(3) of Title 11 of the United States Code ..................................................... 4, 5

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Cal. Code Civ.Proc. § 580d .......................................................................................... 4, 8

Cal. Code Civ. Proc. § 726 ............................................................................................. 8

☒   SunCal PSV, LLC
☒   Delta Coves Venture, LLC
☒   SunCal Torrance Properties, LLC
☒   SunCal Oak Knoll, LLC

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE TRUSTEE, THE

TRUSTEE DEBTORS, THE VOLUNTARY DEBTORS, THE LEHMAN LENDERS, THE

OFFICIAL COMMITTEES OF CREDITORS HOLDING UNSECURED CLAIMS,  AND

THEIR COUNSEL OF RECORD:

SunCal Management, LLC ("SC Management"), unsecured creditor and administrative

priority claimant of the jointly administered debtors (collectively the "Debtors" or the "Estates"),

submits this objection (the "Objection") to the Third Amended Joint Chapter 11 Plan For Eleven

Voluntary Debtors[1] Proposed By The Lehman VD Lenders  (Dated August 23, 2011) and the

Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors[2] Proposed By The Trustee And

Subject Lehman Creditors (Dated August 23, 2011) (collectively referred to herein as the

"Lehman Plans")  In support of this Objection, SC Management respectfully represents as follows:

1.     PRELIMINARY STATEMENT

The Lehman Plans are a mechanism for Lehman, with the assistance of the Trustee in the

Trustee Debtor Cases , to be fully exonerated from its pre- and post-petition wrongdoing, and to

acquire the Voluntary Debtors' and Trustee Debtors' assets at a steep discount by forcing a transfer

of the collective Debtors' real estate projects and cash to the Lehman Entities[3], without the

---

[1] The Voluntary Debtors are defined as Acton Estates, LLC; Palmdale Hills Property, LLC; SCC Communities, LLC; SunCal Bickford Ranch, LLC; SunCal Communities I, LLC; SunCal Summit Valley, LLC; Tesoro SF, LLC; Kirby Estates, LLC; Seven Brothers, LLC; SunCal Beaumont Heights, LLC; and SunCal Johansnson Ranch, LLC .

[2] The Trustee Debtors are defined as LB/L-SunCal Oak Valley, LLC; SunCal Heartland, LLC; LB/L-SunCal Nothlake, LLC; SunCal Marblehead, LLC; SunCal PSV, LLC; Delta Coves Venture, LLC; SunCal Torrance Properties, LLC; and SunCal Oak Knoll, LLC.

[3] For purposes of this pleading, capitalized terms used shall have the meaning set forth in the Plan, unless otherwise specified.  The Lehman Lenders are defined as Lehman Commercial Paper, Inc.; Lehman ALI, Inc.; Northlake Holdings, LLC and OVC Holdings LLC

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1    prospect for competitive bidding.  The construction of the Lehman Plans, unless this Court

2    intervenes, permits the Lehman Entities to achieve an improper taking, whether or not creditors

3    vote in favor of the Lehman Plans because the Lehman Plans also allow the Lehman Lenders to

4    retain over $2 billion in unlawful "deficiency claims," which can (and no doubt will) be voted in a

5    way that controls the classes of impaired claims.  In exchange for the Debtors' assets, and a release

6    of all the Debtors' claims against the Lehman Entities, the Lehman Entities will pay unsecured

7    creditors *one cent* for every dollar of their allowed claims, which will be funded from the Debtor's

8    existing assets.

9         The Lehman Plans are premised on the fallacy that the Lehman Entities have valid secured

10   claims – an assertion that is being vigorously challenged by the Voluntary Debtors and the SunCal

11   Parties.[4]  Having secured releases of all liability from the Debtors through the Trustee, the balance

12   of the Lehman Plans represent the Lehman Entities' efforts to extricate themselves from the

13   Debtors' creditors' individual claims by offering a settlement providing preferential payments to

14   some, but not all, creditors, in exchange for a release of the Lehman Entities.  While SC

15   Management  is improperly excluded from an opportunity to accept a settlement payment from the

16   Lehman Entities (the "Lehman Release") in an amount equal to 39% to 49% of its allowed claims;

17   it nonetheless is subject to the broader release set forth in the Plan, whether or not it agrees to the

18   Lehman Release.

19        Trustee Steven M. Speier (the "Trustee") and the Lehman Lenders (collectively the

20   "Lehman Plan Proponents") cannot meet their burden of establishing that each of the requirements

21   for confirmation of a plan set forth in section 1129 of the Bankruptcy Code is satisfied as to the

22   Lehman Plans.  As set forth more fully below, the Plan fails to meet the requirements for

23   confirmation in the following respects:

24   / / /

25   

26   _____

      [4] SC Management here joins in the SunCal Plan Proponents' Objections To (A) Third Amended Joint Chapter 11
      Plan For Eleven Voluntary Debtors Proposed By The Lehman VD Lenders; and (B) Third Amended Joint Chapter 11
27   Plan For Eight Trustee Debtors Proposed By The Trustee And Subject Lehman Creditors (the "SunCal Plan
      Proponents' Objection").

28   

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    • The Lehman Plans violate Section 1129(a)(3) of Title 11 of the United

2    States Code (the "Bankruptcy Code"), which provides that a plan must be

3    "proposed in good faith and not by any means forbidden by law." 11 U.S.C.

4    § 1129(a)(3).

5    • The Lehman Plans improperly and unfairly discriminate against SC

6    Management, and others, in that they treat SC Management's claims arising

7    from the provision of labor or materials to the various Projects after August

8    1, 2007, *in reliance on Lehman's promise to pay for services rendered*,

9    differently than that of other similarly situated creditors, without legal

10   justification.

11   • The Lehman Plans improperly attempt to gerrymander the unsecured

12   deficiency claims of the Lehman Lenders to create a consenting impaired

13   class for purposes of a likely cram-down.

14   • The Lehman Plans run afoul of a well-recognized body of anti-deficiency

15   law that prevents lenders, such as the Lehman Lenders, from obtaining

16   deficiency judgment through nonjudicial foreclosure.  Cal. Code Civ.Proc. §

17   580d.

18   • The Lehman Plans do not meet the best interest of creditors test.

19   • The Lehman Plans fail to meet the cram-down requirements of section

20   1129(b) of the Bankruptcy Code because neither Lehman Plan provides fair

21   and equitable treatment to creditors who vote against the Lehman Plans.

22   • The Lehman Plans are not feasible since they provide for the Lehman Plan

23   Proponents to withdraw from the Lehman Plans at some indeterminate

24   future date if either: (1) they are unable to meet unsubstantiated projections

25   for reduction of claim amounts for unsecured creditors or (2) the Lehman

26   Plan Proponents are unable to obtain settlements with the bondholder

27   claimants.  A predicate that has remained unsatisfied since the Lehman Plan

28   Proponents initiated their first plans in October 2010.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1        •    The Lehman Plans' releases exceed the Safe Harbor provisions of section

2        1125(e) of the Bankruptcy Code and violate 11 U.S.C. §524(e).

3    The Lehman Plans are unconfirmable and further deny creditors the protections and benefits of the

4    competing SunCal Parties Plan. For the reasons set forth below, SC Management requests that the

5    Court deny confirmation of the Lehman Plans and confirm the SunCal Parties' Plans.

6    2.    THE LEHMAN PLANS FAIL TO SATISFY EACH OF THE CONFIRMATION

7          REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

8          The Lehman Plan Proponents have the burden of establishing that each of the requirements

9    for confirmation of a plan set forth in section 1129 of the Bankruptcy Code is satisfied as to each

10   Debtor. *See, In re Global Ocean Carriers Ltd.,* 251 B.R. 31 (Bankr. D. Del. 2000); *In re*

11   *Trevarrow Lanes, Inc.,* 183 B.R. 475 (Bankr. E.D. Mich 1995); *In re Zaleha,* 162 B.R. 309

12   (Bankr. D. Idaho 1993). If the Lehman Plan Proponents fail to meet this burden with respect to

13   any of these requirements, confirmation must be denied. Moreover, the Lehman Plans hinge on

14   certain critical, interrelated mechanisms to make the Lehman Plans feasible. Thus, if the Lehman

15   Plans are unconfirmable as to any of the Debtors, it is unconfirmable as to all of them.

16         A.    The Lehman Plans Are Not Proposed In Good Faith

17         Section 1129(a)(3) of the Bankruptcy Code provides that a plan must be "proposed in good

18   faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Courts have construed this

19   standard as requiring a showing that "the plan [was] proposed with honesty and good intentions

20   and with a basis for expecting that a reorganization can be effected." *In re Johns-Manville Corp.,*

21   843 F.2d 636, 649 (2d Cir. 1988). The most important analysis is of the plan itself and whether its

22   results will be consistent with the Bankruptcy Code and its objectives and purposes. *In re Sylmar*

23   *Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002) (good faith determination is based on "the totality

24   of the circumstances"); *In re Granite Broadcasting Corp.,* 369 B.R. 120, 128 (Bankr. S.D.N.Y.

25   2007). The Lehman Plan Proponents carry the burdens of proof and persuasion that the Lehman

26   Plans were proposed in good faith and do not violate applicable law. *See, Financial Sec.*

27   *Assurance Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.),* 116 F.3d 790, 802 (5th

28   Cir. 1997). Indeed, "[t]he burden of proposing a plan that satisfies the requirements of the

1  [Bankruptcy] Code always falls on the party proposing it." *Everett v. Perez (In re Perez)*, 30 F.3d

2  1209, 1214 n.5 (9th Cir. 1994). Here, the Lehman Plan Proponents cannot meet that burden.

3              (1)    The Plan Is Not Proposed In Good Faith As It Improperly Classifies Certain

4                     Claims In Violation Of 11 U.S.C. §1122 and 1123(a)(4)

5        Section 1122 and 1123(a)(4) "require equal treatment for substantially similar claims." *See*

6  *In re: Nutritional Sourcing Corp.*, 398 B.R. 816, at 823 (Bankr. Del. 2008). Here, the

7  classification scheme set forth in the Lehman Plans calls for two separate classes of claimants

8  holding unsecured claims, which claimants receive vastly different treatment under the Lehman

9  Plans: a maximum distribution of 5 % of an allowed unsecured claim classified as a Class 7

10 Creditor or a maximum distribution of 50% of an allowed unsecured claim classified as a Class 6

11 Creditor.

12       Both Class 6 ("Reliance Claims") and Class 7 ("Unsecured Creditors") creditors under the

13 Lehman Plans hold unsecured claims against the Debtor estates.

14            "The features distinguishing General Unsecured Claims from
              Reliance Claims, as more fully reflected in the definitions of each,
15            are essentially that a Reliance Claim is a Claim (a) for New Value,
              (b) voluntarily extended after the August 1, 2007 Reliance Date and
16            prior to the applicable November, 2008 Petition Date(s), and (c)
              timely of record ...................(d) excluding (d) Insider Claims,
17            Settling Bond Issuer-Related Future Work Claims and Lehman VD
              Lender Claims (other than Lehman-Owned Settling Bond Issuer
18            Related Claims).[5] [Emphasis in original].

19 However, the Lehman Plans create an artificial distinction in an attempt to separately classify the

20 claim of SC Management and other SunCal related entities in an effort to gerrymander an

21 impaired consenting class.

22

23     [5] See the Lehman Plans at page 59, lines 18-25 (Voluntary Debtors), and at page 26 of the Definitions in
       connection with the Lehman Plan for the Trustee Debtors). The term "insider" is defined in the TD Plan as "(1) A
24     Person other than a Lehman Related Party that is an "insider" as to any TD Plan Debtor as defined in Bankruptcy
       Code section 101, (2) an Affiliate of such a Person of (3) without limiting the foregoing, as to all TD Plan Debtors,
25     *inter alia,* each other TD Plan Debtor, SunCal Management, LLC, Acquisitions, Elieff, Voss, Cook & Thel, LLP,
       Greenfield Communications, and SunCal Master Venture Member, LLC." TD Plan, Ex. E, page 15:1-5. Similarly,
26     the term "insider" is defined in the VD Plan as ""(1) A Person other than a Lehman Related Party that is an "insider"
       as to any VD Plan Debtor as defined in Bankruptcy Code section 101, (2) an Affiliate of such a Person of (3) without
27     limiting the foregoing, as to all VD Plan Debtors, *inter alia,* each other VD Plan Debtor, SunCal Management, LLC,
       Acquisitions, Elieff, Voss, Cook & Thel, LLP, Greenfield Communications, and SunCal Master Venture Member,
28     LLC." VD Plan, Ex. E, page 15:11-15.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

The Ninth Circuit has made clear that, absent a "legitimate business or economic

justification," it is impermissible for a debtor to separately classify substantially similar general

unsecured claims. *See also, In re Barakat*, 99 F.3d 1520, 1526 (9th Cir. 1996). The burden is on

the plan proponent to articulate a valid business or economic justification. *In re Montclair Retail

Center*, 177 B.R. 663 (9th Cir. BAP 1995). "[T]he reasons for different treatment and separate

classification must be closely scrutinized." *In re Baseline-Dobson Center*, 193 B.R. 284, 290

(Bankr. D. Ariz. 1994) (citing *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir. 1986).

The Lehman Plan Proponents have unfairly discriminated in their treatment of holders of

unsecured claims. Unfair discrimination is a concept that applies to whether a plan properly treats

claims or interests differentially. *In re First Magnus Fin. Corp.*, 208 WL 450447 at *6 (Bankr. D.

Ariz. Feb. 15, 2008). The claims of "insiders" such as SC Management are specifically classified

to receive a lesser payout even if they otherwise meet the nebulous standards for Reliance Claims.

There is no legal justification for the artificial distinctions drawn by the Lehman Plan Proponents

and it patently discriminates amongst unsecured creditors.

The Lehman Plans effectively subordinate the unsecured claims of SC Management to

those of similarly situated unsecured creditors without any legal justification. It is well-

established in the Ninth Circuit that the claims of insiders cannot be categorically subordinated. *In

re Branding Iron Steak House*, 536 F.2d 299, 301 (9th Cir. 1976) ("A creditor's claim cannot be

subordinated to the claims of other creditors simply because the claimant is an officer, director, or

controlling shareholder in a bankrupt corporation."). *See also In re Lake Country Investments*,

2001 WL 267475, *7 (Bankr.D.Idaho 2001) ("[insider] relationship itself is [not] a ground for

subordination"); *Id.* at *12 ("the acquisition of a secured claim by an insider is not sufficient

grounds, standing alone, to warrant subordination"); *In re Central Pacific Boiler & Piping, Ltd.*,

81 B.R. 40, 44 (Bankr.D.Haw. 1987) ("In adopting 11 U.S.C. § 510(c), Congress specifically

rejected proposals that would have required subordination of all insider debts."); Collier on

Bankruptcy, 15th Ed. Revised, at ¶ 510.05[3] (2010) ("Insider status or control by itself, however,

does not provide a sufficient basis for subordination."); Judges Ahart & March, California Practice

Guide: Bankruptcy, ¶ 17:1632 ("Equitable subordination cannot be based simply on the fact that

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1   an insider relationship exists."). The Lehman Plan Proponents' improper classification of SC

2   Management's claim does not withstand scrutiny and renders the proposed plans not confirmable.

3        Apart from the disparate treatment offered to the SC Management as a Class 7 Claimant, a

4   maximum return of 5% as opposed to 50% of the amount of its allowed claims, the classification

5   scheme also appears intended to disenfranchise SC Management. As discussed in greater detail

6   below, the Lehman Plans improperly propose that the Lehman Lenders retain "deficiency claims"

7   in excess of $1 billion in each plan as follows: (1) $1,576,985,109 in the Voluntary Debtor cases;

8   and (2) $1,227,205,935 in the Involuntary Debtor cases. These alleged claims are classified as

9   Class 7 Claims, thereby effectively disenfranchising SC Management, if this improper

10   classification is allowed to stand.

11        The Lehman Plan Proponents have offered no rational justification for separately

12   classifying the claims of SC Management, and it is readily apparent that they proposed this

13   separate classification for an improper purpose.

14        (2)   The Plan Violates California Anti-Deficiency Statutes

15        The Lehman Plans run afoul of a well-recognized body of anti-deficiency laws that prevent

16   lenders, such as the Lehman Lenders, from obtaining deficiency judgment through nonjudicial

17   foreclosure. Cal. Code Civ.Proc. § 580d. The only means by which a lender can obtain recovery

18   on a deficiency is through the procedure set forth in Section 726(a) of the California Code of Civil

19   Procedure. Application of this procedure would require a trial to determine the appropriate

20   valuation for the properties, and would further afford the Debtors with a right to reacquire the

21   properties at any time during the next year, if a deficiency were granted. Cal. Code Civ. Proc.

22   § 726(e).

23        The Lehman Plans bypass these protections by proposing to transfer all of the Debtors' real

24   properties to the Lehman Lenders, or their designees, while concurrently gifting to the Lehman

25   Lenders deficiency claims against the estates as set forth in the chart below:

26   ///

27   ///

28   ///

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

| Debtor | Lehman Claimed Unsecured Deficiency Claim[6] |
|---|---|
| Palmdale Hills | $192,948,912 |
| SunCal Bickford | $369,758,950 |
| Acton Estates | $336,421,391 |
| SunCal I | $339,667,594 |
| SunCal Summit Valley | $338,187,902 |
| SunCal Oak Valley | $120,281,727 |
| SunCal Heartland | $346,367,273 |
| SunCal Northlake | $99,128,242 |
| SunCal Marblehead | $166,471,901 |
| SunCal PSV | $74,448,224 |
| Delta Coves | $178,149,258 |
| SunCal Torrance | $132,720,070 |
| SunCal Oak Knoll | $109,639,240 |

Thus, the Lehman Plans propose Lehman Lender deficiency claims of over $1 billion as follows: (1) the amount of $1,576,985,109 in the Voluntary Debtor cases and (2) $1,227,205,935 in the Involuntary Debtor cases. In each case, these alleged unsecured deficiency claims are placed in Class 7, thereby effectively disenfranchising SC Management, if this improper classification is allowed to stand.

Notably, no other secured creditor is granted the right to act in derogation of California's anti-deficiency statutes. The Lehman Plans impermissibly violate the anti-deficiency statutes and afford the Lehman Lenders with treatment that is contrary to the Bankruptcy Code. The Lehman Plan Proponents must comply with local law pursuant to 28 U.S.C. § 959,[7] including the

---

[6] The amounts below are taken from the Lehman Plans at page 33 (Voluntary Debtors) and page 28-29 (Trustee Debtors)

[7] Pursuant to 28 U.S.C. § 959, "a trustee, receiver or manager appointed in any case pending in any court of the (footnote continued)

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1  California anti-deficiency statutes.  The provisions of the Lehman Plans concerning the Lehman

2  Lenders sharing in any distribution to unsecured creditors are an attempt to evade the fundamental

3  protections of California foreclosure law, as well as being extremely unfair to all creditors other

4  than the Lehman Lenders.

5      Here, the Plan provides, in contravention of California Law, for the establishment of an

6  Unsecured Deficiency Claim[8] after the transfer of all of the real properties to the Lehman Lenders,

7  without the protections afforded in even a non-judicial foreclosure.  As set forth above, the

8  Lehman Plan Proponents must comply with local law in proposing their plan, including the laws

9  related to foreclosure and the establishment of any deficiency claims.  The proposed Lehman

10  Plans violate California law and thereby are not proposed in good faith.

11      B.      Because The Lehman Plans Include A Settlement, Each Must Meet The

12              Requirements Of Rule 9019 Of The Federal Rules Of Bankruptcy Procedure

13      Here, the Lehman Plans include a broad release of the Lehman Entities, both as part of the

14  treatment provided for Class 6 and 7 Claims and in the Limitation of Liability section, discussed

15  below.  "To the extent that a [P]lan includes a settlement, the settlement is to be judged in

16  accordance with the law applicable to the approval of a settlement under Rule 9019 of the Federal

17  Rules of Bankruptcy Procedure."  *In re: Charter Communications*, 419 B.R. 221, at 252 (Bankr.

18  S.D.N.Y. 2009), *citing Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re: Iridium

19  Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).  Thus, the Lehman Plans in these cases must

20  be must be evaluated by this Court consistent with the requirements of Rule 9019 of the Federal

21  Rules of Bankruptcy Procedure.

22      The Lehman Plan Proponents have the burden to prove and persuade this Court that the

23  proposed compromise is fair and equitable and should be approved.  According to *A & C

24  Properties,* a bankruptcy court must consider whether there has been a good faith negotiation of a

25

26  United States, including a debtor in possession, shall manage and operate the property in his possession as such
   trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is

27  located, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

   [8] See the Disclosure Statement at page 41, lines 20-23.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  settlement and whether the compromise is "fair and equitable." *In re A & C Properties,* 784 F.2d

2  1377 at 1381 (9th Cir. 1986).  Here, the terms of the negotiation, including any promises that the

3  Trustee, the Trustee's lawyer, the Lehman Entities and its counsel made to one another, which

4  promises resulted in the Lehman Plans, remain a mystery due to a purported common interest

5  "privilege" asserted by the Trustee and the Lehman Entities, with respect to the negotiation of the

6  Lehman Plans.  In his first two deposition sessions, Mr. Speier disclaimed any knowledge of the

7  settlement negotiations with the Lehman Entities that resulted in the Lehman Plans, except for his

8  vague recollection of attending an eight hour meeting with the Lehman Entities to discuss a

9  settlement.  The Trustee deflected to Mr. Lobel all discussion of the purported settlement between

10  the Trustee and the Lehman Entities, including questions about the Trustee's decision to become a

11  co-proponent of Lehman's Plan as to the Trustee Debtors:

12          Q.    So if we wanted to know what the course of the negotiations
   and discussions with the bond companies or with the Lehman

13  entities concerning this issue were, *we would have to talk to your
   attorneys*?

14

15          A.    *Yes*.

16  [See relevant portions of the Speier Transcript (Speier Tr.) (Vol. II) at 256:8-12; *see also id.* (Vol.

17  I) at 163:16-164:13 ("I negotiated through my attorney"), which pages are attached to the

18  Declaration of Joel S. Miliband as Exhibit "1."]  In light of the Trustee disclaiming any

19  participation in negotiations with the Lehman Entities, SC Management was forced to take the

20  deposition of counsel for the Trustee, William N. Lobel.  Less than ten minutes into Mr. Lobel's

21  deposition, he announced for the first time that he would not answer questions about his

22  negotiations with the Lehman Entities based on a purported common interest "privilege" shared by

23  the Trustee and the Lehman Entities:

24          Q.    And do you believe that, because of the existence of this
   agreement [memorializing the alleged common interest privilege],

25  that if I ask you questions about conversations with [counsel for
   Lehman], you won't have to answer those questions?

26

27          A.    I do.

28  / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100  •  FAX (949) 252-1514

1    [See relevant portions of the Lobel Transcript (Lobel Tr.) at 8:11-15 attached to the Declaration of

2    Joel S. Miliband as Exhibit "2"].

3        Effectively blocked from getting any information about whether the negotiations that

4    resulted in the Lehman Plans were undertaken in good faith and at arms-length, SC Management

5    sought Court intervention in the form of a Motion For Order To Compel William Lobel's

6    Compliance With Subpoena (the "Compliance Motion") in order to obtain information concerning

7    the conduct of the negotiations that occurred between the Lehman Entities and the Trustee and his

8    counsel.

9        At the hearing on the Compliance Motion, on September 6, 2011, the Court issued its

10   tentative ruling denying the Motion To Compel on procedural and substantive grounds, but

11   ultimately withdrew the tentative on procedural grounds, and solely relied on substantive grounds

12   for denial of the Compliance Motion.[9]  The hallmark of the cases relied on by the Lehman Entities

13   in opposing the Compliance Motion, and this Court in its tentative ruling denying the Compliance

14   Motion, such as *In re Tribune Co.*, 2011 WL 386827 (D. Del. Feb. 3, 2011), is that the facts and

15   circumstances surrounding the subject settlement were fully known to the parties and the Court.

16   For example, in the *Tribune* case, the parties made detailed term sheets explaining the basis of the

17   settlement available for all interested parties to see,[10] and had participated in extensive

18   negotiations and mediation, unlike in this case, where the negotiations were conducted in Court-

19   sanctioned secrecy.  The details of those negotiations will now never be known.  What is known is

20   that as a result of the secret negotiations, the Lehman Plans unfairly discriminate against SC

21   Management, with the acquiescence of the Trustee (despite his fiduciary duties to the contrary).

22   In a September 13, 2011, deposition of the Trustee, the Trustee acknowledged his view that SC

23   Management and related entities could "fend for themselves."

24        Q.    So do you agree with me that nobody in that meeting in
          Century City or anytime since that meeting in Century City has

25   _____

26   [9] See a true and correct copy of the Tentative Ruling issued by the Court on September 6, 2011, attached as
     Exhibit "3" to the Request For Judicial Notice.

27   [10]Unlike this case, where the term sheets have been withheld from the parties and the Court.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1    advocated on behalf of SunCal Management or any of these other
entities that are being specifically excluded as reliance creditors
2    under your plan on their behalf?

3    A.    Well, I think SunCal Management will – I think SunCal-
related entities.
4

5    Q.    Will fend for themselves, right?

A.    Will fend for themselves.
6
Q.    Exactly.  And you as trustee with fiduciary duties to all
7    creditors in the case, didn't believe that it was your responsibility to
raise that issue with Lehman, did you?
8
A.    I believe that their claim will be evaluated by the Court.
9

10    [See relevant pages of the Speier Tr. (Vol. III) at 372-373, attached to the Declaration of Joel S.

11    Miliband as Exhibit "4."].

12         The effect of the Court's ruling precludes any inquiry by SC Management into the conduct

13    of the negotiations leading to the inclusion of the broad releases provided to the Lehman Entities

14    and the specific exclusion of SC Management as a "Reliance Creditor"[11] in the Lehman Plans.

15    However, the Lehman Plan Proponents are now themselves precluded from presenting *any*

16    _____

17    [11]    Clearly, the Trustee understood that SC Management otherwise met the definition of a Reliance Creditor.  He
further explained that he knew that SC Management was a reliance creditor:
18

19         A.  I think I had an understanding of who the – what the reliance claimants were at
that time.
20
         Q.  And what was your understanding?
21
         A.  That they were the creditors who relied on the loan modification agreement
that Lehman executed with SunCal.
22

23         ***

24         Q.  And you understood when you spoke with Mr. Couchot about this, that
SunCal Management was a creditor who had relied on the loan modification
25         agreement, didn't you?

26         A.  Yes I did.

27    [Speier Tr., Vol. III, at page 350, line 24-25 and page 351, line 1-4; and page 352, lines 15-19, attached to the
Declaration of Joel S. Miliband as Exhibit "5."]

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  evidence to meet their burden to demonstrate that the negotiations were conducted in good faith

2  and at arms-length.[12]  Thus, the Lehman Plan Proponents cannot meet their burden to demonstrate

3  that the Lehman Plans have been proposed in good faith and that the proposed settlement

4  effectuated in the Lehman Plans meets the requirements of Rule 9019 of the Federal Rules of

5  Bankruptcy Procedure.

6       Further, the Ninth Circuit has instructed that:

7           "In determining the fairness, reasonableness, and adequacy of a
            proposed settlement agreement, the court must consider: (a) the
8           probability of success in the litigation; (b) the difficulties, if any, to
            be encountered in collection; (c) the complexity of the litigation
9           involved, and the expense, inconvenience, and delay necessarily
            attending it; (d) the paramount interest of the creditors and a proper
10          deference to their reasonable views in the premises.'"  *A & C*
            *Properties, supra,* at 1381.

11

12  SC Management contends that the Lehman Plan Proponents will not be able to meet this standard.

13  As set forth in the SunCal Plan Proponents' Objection, the Voluntary Debtors and SCC

14  Acquisitions, Inc. have asserted ample basis for substantial reduction, or elimination, of the

15  Lehman Lenders' claims; therefore, the Court will have to evaluate the reasonableness of the

16  adequacy of the proposed settlement represented by the Lehman Plans in the context of the

17  overwhelming evidence of the Lehman Entities' wrongdoing and the strength of the claims against

18  the Lehman Entities.

19       The Lehman Entities and the Trustee will also have to justify the design of a plan that

20  ensures that the claims of SC Management and other SunCal related parties would receive

21  substantially less than similarly situated creditors.  If "under the 'fair and equitable' standard, we

22  look to the fairness of the settlement to other persons, i.e., the parties who did not settle,"[13] then

23  _____

24  [12] The shroud of secrecy surrounding the negotiation of the Lehman Plans, including the broad releases of
    substantive claims against the Lehman Entities, which the Trustee acknowledged in his deposition and prior

25  declarations, had merit, and the unfair exclusion of SC Management as a Reliance Creditor, leaves open the question,
    which cannot be answered by any evidence, as to what the Trustee or his counsel were promised or received, that is

26  not reflected in the Lehman Plans.  Was the Trustee or his counsel promised payment of fees in exchange for their
    agreement to the releases of the Lehman Entities ad the discriminatory treatment of SC Management?  Was referral of

27  other work promised to the Trustee or his counsel as part of the undisclosed negotiations?

28  [13] *See In re: Nutraquest,* 434 F.3d 639, 644 (3d Cir. 2006) *cited in In re: Nutritional Sourcing Corp.,* 398 B.R.
    (footnote continued)

Rus, Milband & Smith
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  one must evaluate the fairness of this proposed settlement in light of its impact on SC

2  Management.

3       Bankruptcy courts have rejected plan treatment that is the result of settlement negotiations,

4  where the non-settling parties are "severely adversely" impacted by the settlement made on their

5  behalf when they were not represented at the negotiating table. *In re: Nutritional Sourcing Corp.*,

6  398 B.R. 816, 832 (Bankr. Del. 2008) (Court rejected plan providing separate treatment for

7  similarly situated unsecured claims based upon a created definition of "non-goods" trade creditors,

8  where such creditors' views were unrepresented in the negotiation of the plan.)  Here, SC

9  Management has undertaken discovery of the Trustee in connection with negotiation of the terms

10 of the proposed Plan, which severely adversely impacts SC Management and the Trustee has

11 acknowledged that in his view SunCal Management and related entities could "fend for

12 themselves."[14]

13      It is clear that the Trustee did not engage in arms-length negotiations designed to be fair

14 and equitable with respect to ***all creditors*** of his estates; rather he specifically disclaimed any duty

15 to consider the impact of the settlement embodied in the Lehman Plans on non-reliance claimants

16 and on SC Management and others who fit the definition of Reliance Claimants, but who are

17 specifically excluded.  The Lehman Plans provide no basis, and the Lehman Plan Proponents, by

18 successfully advancing a common interest "privilege" can present no evidence, to support a

19 determination that the settlements proposed in the Lehman Plans meet the requirements of Rule

20 9019 of the Federal Rules of Bankruptcy Procedure, and therefore should not be approved.[15]

21      C.      The Lehman Plans Fail To Meet The "Best Interest Of Creditors Test" Under

22              11 U.S.C. § 1129(a)(7)

23      One of the requirements for plan confirmation is that every creditor must either have voted

24 to accept the plan or will receive at least as much under the plan as it would in a chapter 7

---

816, at 832 (Bankr. Del. 2008).

[14] See Speier Tr. Vol. III, 372-373, attached to the Declaration of Joel S. Miliband as Exhibit "3."

[15] SC Management reserves the right to address further argument on this issue to the Court in response to the Confirmation Briefs to be filed by the Lehman Plan Proponents.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    liquidation. 11 U.S.C. § 1129(a)(7). This is commonly known as the "best interest of creditors

2    test." Section 1129(a)(7) provides that a plan can only be confirmed if, "[w]ith respect to each

3    impaired class of claims or interests... each holder of a claim or interest of such class" either

4    "accepted the plan" or:

> "Will receive or retain under the plan on account of such claim or
> interest property of a value, as of the effective date of the plan, that
> is not less than the amount that such holder would so receive or
> retain if the debtor were liquidated under chapter 7 of this title on
> such date."

8    11 U.S.C. § 1129(a)(7)(A). The best interests test is based on a hypothetical liquidation. 7 Collier

9    on Bankruptcy ¶ 1129.03[7] [b] (15th rev. ed. 2009) ("This means that, absent consent, a creditor

10   or interest holder must receive property that has a present value equal to that participant's

11   hypothetical chapter 7 distribution.")

12       As with every other affirmative aspect of the plan confirmation requirements, the Lehman

13   Plan Proponents have the burden of establishing that the best interests of creditors test is satisfied.

14   *See e.g., Global Ocean Carriers*, 251 B.R. at 46; *Trevarrow Lanes*, 183 B.R., at 479. In this case,

15   because the Lehman Plan Proponents assume allowance of the Lehman Entities' claims, they

16   assert that creditors holding claims in Classes 6, 7, and 8 will not receive any recovery in a

17   chapter 7 liquidation.

18       Such statement ignores that the Lehman Lenders would not be entitled to any deficiency

19   claim in a chapter 7 liquidation, and would likely find their claim equitably subordinated or

20   disallowed as set forth in the separately filed Objection of the SunCal Plan Proponents. The

21   Lehman Plan Proponents' mere assertion that the distribution to unsecured creditors would be less

22   in a chapter 7 liquidation or under the Plan is insufficient to carry the Lehman Plan Proponents'

23   burden as to the best interests of creditors.

24       The Lehman Plan Proponents posit that a distribution under the Lehman Plans is better for

25   unsecured creditors because the Lehman Lenders have separately agreed to fund a settlement with

26   individual creditors of claims that are otherwise being pursued against the Lehman Lenders for the

27   benefit of all creditors.

28   / / /

1    The Lehman Plan Proponents adopt the position of the Lehman Creditors that their claims

2  are senior in priority to all other claims, and have proposed the Lehman Plans based on this

3  premise. This assumption, however, is the subject of an adversary proceeding pending before this

4  Court bearing Adversary No. 8:09-ap-01005-ES (the "Adversary Proceeding").  In the Adversary

5  Proceeding, the Voluntary Debtors and the Trustee seek, among other relief, avoidance and

6  disallowance of liens held by the Lehman Creditors, and the equitable subordination of the

7  Lehman Creditors' claims based on, among other things, fraudulent inducement and fraudulent

8  transfer.  The Lehman Plans seek to bypass due process by simply releasing the claims without

9  adjudication and giving the Lehman Creditors the most favorable conceivable treatment of their

10  claims, while subordinating legitimate creditor claims, such as those of mechanic's lien claimants,

11  without so much as an objection.

12    The proposed liquidation analysis acknowledges, but does not account for what result

13  would be achieved from a proposed distribution under a chapter 7 liquidation, or a plan, where the

14  claims against the Lehman Lenders would be litigated and where the Lehman Lenders would not

15  be entitled to an unsecured deficiency claim, thereby significantly altering the distribution of funds

16  to unsecured creditors.[16]  The Lehman Plan Proponents cannot satisfy their burden in respect of

17  the best interests of creditors test unless they present plausible competent evidence meeting the

18  test, which the Lehman Plan Proponents have failed to do.  *See, e.g., In re Rusty Jones, Inc.*, 110

19  B.R. 362, 373-74 (Bankr. N.D. Ill 1990).  "Assertions and questionable assumptions underlying

20  the ... projections and best interest of creditors analysis are insufficient." *See In re MCorp Fin.,*

21  *Inc.*, 137 B.R. 219, 228-229 (Bankr. S.D. Tex) (hypothetical liquidation analysis must be based on

22  "sufficient substantive evidence" and not merely assumptions in order to meet the best interests of

23  creditors test).  Accordingly, the Lehman Plan Proponents have not satisfied their burden, and

24  confirmation should be denied.

---

25

26    [16]  The Lehman Plan Proponents acknowledge that if litigation with respect to equitable subordination could be adequately funded in a chapter 7 liquidation (or under an alternative plan), and were successful, holders of claims

27  determined to be beneficiaries of equitable subordination and as to which creditor specific injury was shown could be paid in full or in part and, thus, may be paid more than is proposed under the Lehman Plans. See Section VI, page 157, of Lehman Plan Proponents' Third Amended Disclosure Statement.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 22 I I MICHELSON DRIVE
IRVINE, CALIFORNIA 926 I 2
TEL. (949) 752 7 I OO • FAX (949) 252-1514

1    D.    The Plan Does Not Meet Cram-Down Requirements

2        For a plan to be confirmed, all 13 requirements of section 1129(a) of the Bankruptcy Code

3    must be satisfied.  However, if section 1129(a)(8) is left unsatisfied – because a class of impaired

4    claims has not accepted the plan – a plan may nonetheless be confirmed if the cram-down

5    requirements of section 1129(b) are met with respect to such class.  *See* 11 U.S.C. §1129(b).  The

6    cram-down requirements dictate that the plan (a) treat each objecting impaired class fairly and

7    equitably, and (b) not discriminate unfairly as to any objecting impaired class.  *Id, see also,*

8    *Liberty Nat'l Enters v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d

9    650, 653 (9th Cir. 1997).  Here, the Court has required the parties file their objections to plan

10   confirmation in advance of a tabulation of the votes.  This opposition presumes that the only

11   consenting impaired class will be the improperly gerrymandered Class 7 Claims, which will be

12   overwhelmed by the improper deficiency claims of the Lehman Lenders.

13       Unfair discrimination is a concept that applies to whether a plan properly treats claims or

14   interests differentially.  *In re First Magnus Fin. Corp.*, 208 WL 450447 at *6 (Bankr. D. Ariz.

15   Feb. 15, 2008).  As set forth in detail above, the Lehman Plans unfairly discriminate against

16   unsecured creditors in Class 7.

17   E.    The Lehman Plans Are Not Feasible

18       Section 1129 of the Bankruptcy Code provides that the Court may not confirm the Lehman

19   Plans if the Lehman Plan Proponents fail to prove that the Lehman Plans are feasible.  In this way,

20   section 1129(a)(11) provides, in pertinent part, that a court may confirm a plan only if:

21       Confirmation of the plan is not likely to be followed by liquidation,
         or the need for further reorganization of the debtor or any successor
22       to the debtor under the plan, unless such liquidation or
         reorganization is proposed in the plan.

23

24   11 U.S.C. § 1129(a)(11).  The plan proponent is required to present "ample evidence to

25   demonstrate that the Plan has a reasonable probability of success." *In re Acequia, Inc.*, 787 F.2d

26   1352, 1364 (9th Cir. 1986); In re Harbon, 486 F.3d 510,  517 (9th Cir. 2007).  Here, the Lehman

27   Plan Proponents have rendered the Lehman Plans wholly infeasible due to the numerous

28   / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1    conditions that would allow the Lehman Lenders to withdraw from an obligation to comply with

2    the terms of the Lehman Plans.

3         As addressed in more detail in the SunCal Plan Proponents' Objection, the Lehman Entities

4    have: (1) a right to withdraw the Lehman Plans post-confirmation if the claims exceed an arbitrary

5    claims cap; (2) a right to withdraw the Lehman Plans if settlements with the bond companies

6    (which have thus far proved elusive) are not reached and approved by the New York Bankruptcy

7    Court; (3) a right to withdraw the Lehman Plan in the Trustee Debtor cases, if any of the Trustee

8    Debtors' plans are not confirmed – and a similar right to withdraw in connection with the

9    Voluntary Debtors.  The contemplated withdrawal from the Lehman Plans by the Lehman Lenders

10   evidences that the Lehman Plans cannot meet the feasibility test.

11   3.    THE LEHMAN PLANS INAPPROPRIATELY LIMIT LIABILITY IN EXCESS OF THE

12         SAFE HARBOR PROVISIONS OF 11 U.S.C §1125(E) AND VIOLATE 11 U.S.C.

13         §524(E)

14        The Lehman Plans seek limitation of liability well beyond that provided in the safe harbor

15   provisions of section 1125(e) of the Bankruptcy Code.  That section provides that:

> A person that solicits acceptance or rejection of a plan, in good faith
> and in compliance with the applicable provisions of this title, or that
> participates, in good faith and in compliance with the applicable
> provisions of this title, in the offer, issuance, sale, or purchase of a
> security, offered or sold under the plan, of the debtor, of an affiliate
> participating in a joint plan with the debtor, or of a newly organized
> successor to the debtor under the plan, is not liable, on account of
> such solicitation or participation, for violation of any applicable law,
> rule, or regulation governing solicitation of acceptance or rejection
> of a plan or the offer, issuance, sale, or purchase of securities.

22   11 U.S.C. § 1125(e).

23        Here, the Lehman Plan Proponents seeks an exculpation and release far broader than the

24   provisions of section 1125(e).  For example, Section 13.2 of the Lehman Plan filed in the

25   Voluntary Debtor cases provides, as follows:[17]

---

[17] See, too, Section 13.2 of the Trustee Debtors' Lehman Plan.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1        Notwithstanding contrary provisions of non-bankruptcy law, except
as expressly set forth otherwise in the Plan, neither the Lehman
2    Related Parties, the Lehman Nominees, the Liquidating Trustee, the
Voluntary Debtors' Committee, their respective Affiliates, nor any
3    of their employees, Professionals, staff, members, officers, directors,
agents, attorneys, representatives, consultants, asset managers or
4    other professionals shall have any liability to any Holder of any
Claim or Interest or any other Person for any act or omission in
5    connection with or arising our of the negotiation, preparation and
pursuit of Confirmation of the Plan, the Disclosure Statement, the
6    consummation of the Plan, the administration of the Plan, the Cases
or the property to be distributed under the Plan, or any contract,
7    instrument, document or other agreement entered into pursuant
thereto through and including the Effective Date..."

8

9    Rather than seeking protection for actions taken solely in connection with the solicitation of the

10    Lehman Plans, the Lehman Plan Proponents seek protection from all actions taken during the case,

11    all actions taken in connection with the Real Properties and all actions taken related to the

12    consummation of the Lehman Plans.  No controlling Ninth Circuit authority supports such a broad

13    extension of 11 U.S.C. §1125(e) and the Lehman Plans cannot be confirmed with the inclusion of

14    that provision.

15        Moreover, the Lehman Plans provide for third-party releases of any claims held by the

16    Debtors' affiliates against the various Lehman Entities (i.e., the "Lehman Released Parties," which

17    is broadly defined in Exhibit E to the Lehman Plans) in violation of Section 524(e).  Section 8.9.2

18    provides as follows:

19        "The Estate of each VD Plan Debtor, *on behalf of itself and its
Affiliates* exclusive of other Debtors in these Cases, automatically
20    upon the occurrence of the Effective Date, shall be deemed to
unconditionally, irrevocably and generally release, acquit and
21    forever discharge, waive and relinquish any and all Lehman
Released Claims against each and every Lehman Released Party.

22

23    VD Plan, Section 8.9.2 (emphasis added). *See also,* TD Plan, Section 8.8.2.

24        Exhibit E to each of the Lehman Plans defines "affiliate" as follows:

25        <u>Affiliate</u>.  As to any Person, any other Person that directly or
indirectly owns or controls, is owned or controlled by, or is under
26    common ownership or control with, such Person. The term "control"
(including, with correlative meanings, the terms "controlled by" and
27    "under common control with"), as applied to any Person, means the
possession, direct or indirect, of the power to direct or cause the
28    direction of the management and policies of such Person, whether

1    through the ownership of voting securities or other equity ownership
     interest, by contract or otherwise; provided that as to any Lehman
2    Related Party, the term "Affiliate" does not include any Debtor.

3        Thus, the Lehman Entities are seeking to surreptitiously include a release by the Debtors'

4    affiliates of the Lehman Released Parties.  Section 524(e) specifically states that "discharge of a

5    debt of the debtor does not affect the liability of any other entity on, or the property of any other

6    entity for, such debt." 11 U.S.C. § 524(e).  The Ninth Circuit has repeatedly held, without

7    exception, that § 524(e) precludes a Chapter 11 plan from discharging the liabilities of non-

8    debtors. See  *In re Lowenschuss*, 67 F.3d 1394, 1401-1402 (9th Cir. 1995) ("The bankruptcy court

9    lacks the power to confirm plans of reorganization which do not comply with applicable

10   provisions of the Bankruptcy Code. … This court has repeatedly held, without exception, that

11   § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors.");

12   *Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) ("a

13   bankruptcy court cannot confirm a reorganization plan that discharges the liabilities of a third

14   party"); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*,

15   885 F.2d 621, 626 (9th Cir.1989); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985); *Sun*

16   *Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*, 171 B.R. 71, 77

17   (9th Cir. BAP 1994) (holding reorganization plans which proposed to release non-debtor

18   guarantors violated § 524(e) and were therefore unconfirmable); *Seaport Automotive Warehouse,*

19   *Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.)*, 113 B.R. 610, 614-17

20   (9th Cir. BAP 1990) (finding that a reorganization plan provision which enjoined creditors from

21   proceeding against co-debtors violated § 524(e)).  Accordingly, the proposed release violates

22   Section 524(e) and therefore the Lehman Plans cannot be confirmed.

23   4.    <u>RESERVATION OF RIGHTS</u>

24       As discovery is ongoing, SC Management expressly reserve the right to supplement and

25   amend the Objection, and to introduce any newly produced evidence that was made available after

26   the date of this Opposition at any hearing to consider the Lehman Plans.

27   / / /

28   / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  5.    CONCLUSION

2       The Lehman Plans will provide little or no benefit to creditors other than the Lehman

3  Lenders and the Trustee, who has been awarded for his allegiance to the Lehman Lenders with the

4  lucrative position as Liquidating Trustee for both of the Lehman Plans.  Accordingly,

5  SC Management respectfully requests that the Court deny confirmation of the Lehman Plans and

6  confirm the SunCal Plan Proponents' plans.

7  DATED: September 19, 2011            Respectfully submitted,

8                                       RUS, MILIBAND & SMITH
                                        A Professional Corporation
9

10

11                                      By:    _____

12                                             JOEL S. MILIBAND
                                               Attorneys for SunCal Management, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100  •  FAX (949) 252-1514

1

## DECLARATION OF JOEL S. MILIBAND

2

3    I, JOEL S. MILIBAND, declare as follows:

4    1.    I am an attorney at law duly licensed to practice before the above-entitled Court,

5    and am a member of the law firm of Rus, Miliband & Smith, A Professional Corporation (the

6    "Firm"), attorneys of record for SunCal Management, LLC ("SC Management").

7    2.    I have first-hand personal knowledge of the matters set forth herein, and if called

8    upon as a witness, would and could competently testify thereto.

9    3.    This declaration is submitted in support of Suncal Management, LLC's Objection to

10   Confirmation of (1) the Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors

11   Proposed by the Lehman VD Lenders and (2) the Third Amended Joint Chapter 11 Plan For Eight

12   Trustee Debtors Proposed by the Trustee and Subject Lehman Creditors.

13   4.    On June 20, 2011, June 21, 2011 and September 13, 2011, I, on behalf of SC

14   Management, conducted the deposition of Steven M. Speier, Chapter 11 Trustee for the Trustee

15   Debtors in the jointly administered bankruptcy case entitled *In re: Palmdale Hills Propertly, LLC*

16   (the "Speier Transcript").

17   5.    On July 7, 2011, Ronald Rus of the Firm conducted the Deposition of William N.

18   Lobel. Mr. Lobel was represented at the deposition by Michael Neue, a partner at The Lobel

19   Firm, LLP.

20   6.    A true and correct copy of relevant portions of the Speier Transcript, Vol. II, at

21   256:8-12; *see also id.* Vol. I at 163:16-164:13 are attached as Exhibit "1."

22   7.    A true and correct copy of relevant portions of the Lobel Transcript at 8:11-15 are

23   attached as Exhibit "2."

24   8.    A true and correct copy of the relevant portions of the Speier Transcript, Vol. III, at

25   pages 372 and 373 are attached as Exhibit "4."

26   / / /

27   / / /

28   / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1    9.    A true and correct copy of the relevant portions of the Speier Transcript, Vol. III, at

2  page 350, line 24-25 and page 351, line 1-4; and page 352, lines 15-19 are attached as Exhibit "5."

3    I declare under penalty of perjury under the laws of the United States of America and the

4  State of California that the foregoing is true and correct.

5    Executed September 19, 2011, at Irvine, California.

6

7

_____

JOEL S. MILIBAND

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

## REQUEST FOR JUDICIAL NOTICE

SunCal Management, LLC hereby requests that the Court take Judicial Notice pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure and Rule 201 of the Federal Rules of Evidence as each of the following documents constitutes matters which are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned:

| EXHIBIT | DESCRIPTION OF DOCUMENT |
|---|---|
| 3 | The Court's Tentative Ruling, issued on September 6, 2011, in connection with the Motion For Order To Compel William Lobel's Compliance With Subpoena in the above-captioned bankruptcy cases (the "Tentative Ruling").  A true and correct copy of the Tentative Ruling is attached hereto as Exhibit "3." |

DATED: September 19, 2011

RUS, MILIBAND & SMITH
A Professional Corporation

By: _____
JOEL S. MILIBAND
Attorneys for SunCal Management, LLC

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100  •  FAX (949) 252-1514

EXHIBIT "1"

1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                  SANTA ANA DIVISION

4        -------------------------

         In re                      )

5        PALMDALE HILLS PROPERTY     )   Case No. 8:08-bk-17206-ES

6        AND ITS RELATED DEBTORS,    )

7                                    )   Jointly Administered

         Jointly Administered        )   with Case Numbers:

8        Debtors and                 )   8:08bk17209ES;8:08bk17240ES

9        Debtors-in-Possession       )   8:08bk17224ES;8:08bk17242ES

         -------------------------       8:08bk17225ES;8:08bk17245ES

10       Affects:                    )   8:08bk17227ES;8:08bk17246ES

11       LBL-SunCal Oak Valley, LLC)     8:08bk17230ES;8:08bk17231ES

12       SunCal Heartland, LLC       )   8:08bk17236ES;8:08bk17248ES

         LBL-SunCal Northlake, LLC )     8:08bk17249ES;8:08bk17573ES

13       SunCal Marblehead, LLC      )   8:08bk17574ES;8:08bk17575ES

14       SunCal Century City, LLC )      8:08bk17404ES;8:08bk17407ES

15       SunCal PSV, LLC             )   8:08bk17408ES;8:08bk17409ES

         Delta Coves Venture, LLC )      8:08bk17458ES;8:08bk17465ES

16       SunCal Torrance             )   8:08bk17470ES;8:08bk17472ES

17       SunCal Oak Knoll, LLC       )   8:08bk17588ES

18       -------------------------

19

20                      VOLUME I

21            VIDEOTAPED DEPOSITION OF

22               STEVEN M. SPEIER

23               June 20, 2011

24

25       PAGES 1 - 188

                                              Page 1

```
 1      BY MR. MILIBAND:                                16:50:41

 2         Q.  All right.  So I was asking you about a

 3    meeting that appears to have taken place just a few

 4    days -- couple few days prior to the filing of the New

 5    York motion in which you joined together with the       16:50:59

 6    Voluntary Debtors in connection with the repo agreement

 7    and reacquisition by Lehman.

 8         Let me tell you that in your fee application, your

 9    second fee application, you have an entry on

10    April 19th, that's two days prior to the April 21st     16:51:22

11    signing date at least to the motion, for eight hours,

12    and for which you billed $3,400.

13         A.  Can I interrupt quickly because I'm confused.

14    I didn't file a second fee application, I don't

15    believe.                                                16:51:41

16         Q.  Well, we can straighten that out.  I think you

17    actually did, but it's not really relevant.

18         The point is, you have an entry for April 19th,

19    2010 for 8 hours for which you charged 3400 bucks, and

20    it's -- the description is "Meeting with Pachulski,      16:52:00

21    Lehman, Lobel, resettlement."

22         And my question is -- Well, I guess my first

23    question is, do you recall ever having such a meeting?

24         A.  I don't -- I don't recall it specifically; but

25    if it's on my billing records, we had the meeting.      16:52:26

                                                     Page 163
```

```
 1          Q.  Do you recall -- Do you have -- You have no      16:52:29

 2   recollection of an eight-hour meeting in April of 2010

 3   shortly before the motion in New York got filed --

 4          THE REPORTER:  I'm sorry.

 5    BY MR. MILIBAND:                                           16:52:40

 6          Q.  I'm sorry.

 7          -- in which you sat down with Mr. Pachulski,

 8   representatives of Lehman, and your attorney to discuss

 9   settlement?

10          A.  Does it say where it was?                        16:52:47

11          Q.  It doesn't say where it was.

12          Do you recall?

13          A.  I -- I don't recall the specific meeting.

14          Q.  Do you recall -- Your description here says,

15   "Resettlement."                                             16:52:59

16          Do you recall what you talked about?

17          A.  Who did it say it was with?  Did it say

18   anybody other than Pachulski and Lobel?  Was the

19   Creditors Committee there.

20          Q.  I will read for you again your entry in your     16:53:09

21   second fee application, which was filed on June 10th of

22   2011.

23          A.  Okay.

24          Q.  "Meeting with Pachulski, Lehman, Lobel,

25   resettlement."                                              16:53:27
```

Page 164

1                              ***

2

3        I declare under penalty of perjury under the laws

4    of the State of California that  the  foregoing  is  true

5    and correct.

6

7        Executed at _____, California,

8        on _____.

9

10

11        _____

                    STEVEN M. SPEIER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page 184

```
 1    STATE OF CALIFORNIA ) ss

 2

 3        I, Gail E. Kennamer, CSR 4583, CCRR do hereby

 4    certify:

 5        That the foregoing deposition was taken

 6    before me at the time and place therein set forth

 7    and at which time the witness was administered the

 8    oath;

 9        That the testimony of the witness and all

10    objections made by counsel at the time of the

11    examination were recorded stenographically by me,

12    and were thereafter transcribed under my direction

13    and supervision, and that the foregoing pages

14    contain a full, true and accurate record of all

15    proceedings and testimony to the best of my skill

16    and ability.

17        I further certify that I am neither counsel for

18    any party to said action, nor am I related to any

19    party to said action, nor am I in any way interested

20    in the outcome thereof.

21        IN WITNESS WHEREOF, I have subscribed my name

22    this 30th day of June 2011.

23

24    _____

25    Gail E. Kennamer, CSR 4583, CCRR

                                            Page 185
```

1      UNITED STATES BANKRUPTCY COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3          SANTA ANA DIVISION

4    ------------------------------

     In re                    )

5    PALMDALE HILLS PROPERTY   )   Case No. 8:08-bk-17206-ES

6    AND ITS RELATED DEBTORS,  )

7                             )   Jointly Administered

     Jointly Administered      )   with Case Numbers:

8    Debtors and               )   8:08bk17209ES;8:08bk17240ES

9    Debtors-in-Possession     )   8:08bk17224ES;8:08bk17242ES

     ------------------------------   8:08bk17225ES;8:08bk17245ES

10   Affects:                  )   8:08bk17227ES;8:08bk17246ES

11   LBL-SunCal Oak Valley, LLC)   8:08bk17230ES;8:08bk17231ES

12   SunCal Heartland, LLC     )   8:08bk17236ES;8:08bk17248ES

     LBL-SunCal Northlake, LLC )   8:08bk17249ES;8:08bk17573ES

13   SunCal Marblehead, LLC    )   8:08bk17574ES;8:08bk17575ES

14   SunCal Century City, LLC  )   8:08bk17404ES;8:08bk17407ES

15   SunCal PSV, LLC           )   8:08bk17408ES;8:08bk17409ES

     Delta Coves Venture, LLC  )   8:08bk17458ES;8:08bk17465ES

16   SunCal Torrance           )   8:08bk17470ES;8:08bk17472ES

17   SunCal Oak Knoll, LLC     )   8:08bk17588ES

18   ------------------------------

19

20              VOLUME II

21   CONTINUED VIDEOTAPED DEPOSITION OF

22          STEVEN M. SPEIER

23           June 21, 2011

24

25   PAGES 189 - 322

                              Page 189

1        Q.   Is that something as a co-proponent, you would     14:19:32

2    want to know about?

3        A.   I have had discussions with my attorney on

4    that issue.

5        Q.   So you left all the discussions -- the            14:19:42

6    negotiations regarding this issue to your attorney?

7        A.   Yes.

8        Q.   So if we wanted to know what the course of the

9    negotiations and discussions with the bond companies or

10   with the Lehman entities concerning this issue were, we    14:19:57

11   would have to talk to your attorneys?

12       A.   Yes.

13       Q.   Do you understand from your experience as a

14   trustee, a Chapter 11 trustee, where you actually

15   proposed a plan, that confirmation of a plan really        14:20:31

16   acts like -- that the plan really is a contract; and

17   once confirmed, that there are duties and obligations

18   of both parties under a confirmed plan similar to under

19   a contract?

20       A.   Yes.                                               14:20:49

21       Q.   And do you know whether in your plan, you have

22   a provision regarding what law governs the

23   interpretation and enforcement and so on in the

24   determination of obligations and so on under your plan?

25       A.   What law governs?                                  14:21:11

                                                           Page 256

1                           ***

2

3       I declare under penalty of perjury under the laws

4   of the State of California that the foregoing is true

5   and correct.

6

7       Executed at _____, California,

8   on _____.

9

10

11       _____

                    STEVEN M. SPEIER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page 319

```
 1   STATE OF CALIFORNIA ) ss

 2

 3        I, Gail E. Kennamer, CSR 4583, CCRR do hereby

 4   certify:

 5        That the foregoing deposition was taken

 6   before me at the time and place therein set forth

 7   and at which time the witness was administered the

 8   oath;

 9        That the testimony of the witness and all

10   objections made by counsel at the time of the

11   examination were recorded stenographically by me,

12   and were thereafter transcribed under my direction

13   and supervision, and that the foregoing pages

14   contain a full, true and accurate record of all

15   proceedings and testimony to the best of my skill

16   and ability.

17        I further certify that I am neither counsel for

18   any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21        IN WITNESS WHEREOF, I have subscribed my name

22   this 1st day of July, 2011.

23

24   _____

25   Gail E. Kennamer, CSR 4583, CCRR
```

Page 320

EXHIBIT "2"

```
 1              UNITED STATES BANKRUPTCY COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   SANTA ANA DIVISION          CERTIFIED
                                                 TRANSCRIPT
 4     ---------------------------

       In re                      )

 5     PALMDALE HILLS PROPERTY     ) Case No. 8:08-bk-17206-ES

 6     AND ITS RELATED DEBTORS,    )

                                   ) Jointly Administered

 7     Jointly Administered        ) with case numbers:

 8     Debtors and                 ) 8:08bk17209ES; 8:08bk17240ES

 9     Debtors-in-Possession       ) 8:08bk17224ES; 8:08bk17242ES

10     ---------------------------) 8:08bk17225ES; 8:08bk17245ES

11     Affects:                    ) 8:08bk17227ES; 8:08bk17246ES

       LBL-SunCal Oak Valley, LLC ) 8:08bk17230ES; 8:08bk17231ES

12     SunCal Heartland, LLC       ) 8:08bk17236ES; 8:08bk17248ES

13     LBL-SunCal Northlake, LLC   ) 8:08bk17249ES; 8:08bk17573ES

14     SunCal Marblehead, LLC      ) 8:08bk17574ES; 8:08bk17575ES

15     SunCal Century City, LLC    ) 8:08bk17404ES; 8:08bk17507ES

16     SunCal PSV, LLC             ) 8:08bk17408ES; 8:08bk17409ES

17     Delta Coves Venture, LLC    ) 8:08bk17458ES; 8:08bk17465ES

18     SunCal Torrance             ) 8:08bk17470ES; 8:08bk17472ES

19     SunCal Oak Knoll, LLC       ) 8:08bk17588ES

       ---------------------------

20            Deposition of WILLIAM N. LOBEL, taken at 2211

21            Michelson Drive, Seventh Floor, Irvine,

              California, commencing at 11:29 a.m., Thursday,

22            July 7, 2011, before MICHELLE WADE, Certified

23            Shorthand Reporter No. 12861.

24

25     PAGES 1 - 162

                                                   Page 1
```

```
 1        Q     And has that agreement been disclosed in any      11:34

 2   filings in the bankruptcy court?

 3        A     No.                                                11:34

 4        Q     Why not?                                           11:34

 5        A     It's not necessary.                                11:34

 6        Q     Why not?                                           11:34

 7        A     What, do you want a legal opinion as to why not?   11:34

 8        Q     Sure.                                              11:34

 9        A     It's my belief that that type of agreement does    11:34

10   not require disclosure and so it wasn't disclosed.

11        Q     And do you believe that, because of the           11:34

12   existence of this agreement, that if I ask you questions

13   about conversations with Mr. Ziehl, you won't have to

14   answer those questions?

15        A     I do.                                              11:35

16        Q     Okay.  What did you and Mr. Ziehl discuss when     11:35

17   you called him on the phone after you got subpoenaed for

18   your deposition in this case?

19        A     That's the first question I'm not going to         11:35

20   answer because of the privilege.

21        Q     Do you have a copy of that document with you?      11:35

22        A     I do not.                                          11:35

23        Q     And do you think that the document itself is       11:35

24   privileged?

25        A     I haven't thought about it.                        11:35

                                                       Page 8
```

Veritext National Deposition & Litigation Services
866 299-5127

Exhibit "2," Page 38

1
2
3
4      I, WILLIAM N. LOBEL, do hereby declare under
5  penalty of perjury that I have read the foregoing
6  transcript; that I have made any corrections as appear
7  noted, in ink, initialed by me; that my testimony as
8  contained herein, as corrected, is true and correct.
9      Executed on the _____ day of _____,
10  20__, at _____, _____.
                    (City)                        (State)

11
12
13
                    _____
                    WILLIAM N. LOBEL
14
15
16
17
18
19
20
21
22
23
24
25
                                           Page 159

```
 1

 2

 3

 4          I, the undersigned, a Certified Shorthand

 5   Reporter of the State of California, do hereby certify:

 6          That the foregoing proceedings were taken

 7   before me at the time and place herein set forth; that

 8   any witnesses in the foregoing proceedings, prior to

 9   testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14          I further certify that I am neither

15   financially interested in the action nor a relative or

16   employee of any attorney of any of the parties.

17          IN WITNESS WHEREOF, I have this date

18   subscribed my name.

19

20   Dated: July 8, 2011

21

22

23                        _____
                          MICHELLE WADE
24                        CSR No. 12861

25

                                              Page 160
```

Exhibit "2," Page 40

EXHIBIT "3"

# United States Bankruptcy Court
# Central District of California

### Santa Ana

### Judge Erithe Smith, Presiding

### Courtroom 5A Calendar

Tuesday, September 6, 2011                                    Hearing Room    5A

2:00 pm

8:08-17206    **Palmdale Hills Property, LLC**                          Chapter   11

#53.00        Hearing RE: Motion of SunCal Management, LLC for Order to Compel
              William Lobel's Compliance with Subpoena

              (Advanced from 9/8/11)

                            Docket #: 2425

**Courtroom Deputy:**

- NONE LISTED -

**Tentative Ruling:**

September 6, 2011

Deny motion.

I. Procedural Grounds for Denial

Failure to file a Joint Stipulation as required LBR 7026-1(c)

The court is disappointed that no reasonable attempt was made to meet and confer or to
file a joint stipulation as required by LBR 7026-1(c)

Under LBR 7026-1(c)(2), the moving party, SunCal,  is required to arrange for a
conference to attempt to resolve the discovery dispute prior to the filing of the motion.
However, as is evident from the July 18, 2011 email sent by Stephen Cook (Cook),
counsel for SunCal, movant determined that the responding party would not participate in
a meet and confer because calls were not returned in a matter of hours.  Rather than
allowing even for a 24-hour response time to confer, Cook notified Trustee's counsel on
July 18, 2011 that the motion to compel would be filed by noon the following day.
Trustee's counsel was also provided less than 24 hours to review and comment on a
proposed stipulation.

Movant's conduct, as described above, was not reasonable or consistent with the spirit or
letter of the LBR.  Under LBR 7026-1(c), respondent was to be allowed 7 days from the

Exhibit "3," Page 42

# United States Bankruptcy Court
## Central District of California

### Santa Ana

### Judge Erithe Smith, Presiding

### Courtroom 5A Calendar

Tuesday, September 6, 2011                                      Hearing Room    5A

 2:00 pm

Cont....        Palmdale Hills Property, LLC                              Chapter   11

date of written notice to meet and confer regarding a possible resolution of the dispute
and to provide information necessary for the preparation of the joint stipulation. As the
communication here was transmitted on July 18, Trustee's counsel would have had until
at least July 25, 2011 to respond. Instead, the motion, with the unilateral stipulation was
filed on July 25.

Mr. Neue, counsel to Trustee, replied to the July 18 communication on July 19 and
several email exchanges ensued thereafter.   Of particular importance is the fact that the
target of the motion, Mr. Lobel, was out of the country at the time of the July 18 notice
and movant was advised that he would be out of communication until August 4, 2011, well
past the July 25 date.   There is no explanation by movant as to why a joint stipulation
could not have been prepared on or after August 4, 2011, given the circumstances.

The bottom line is there does not appear to have been a substantive meet and confer and
no reasonable attempt was made to present a joint stipulation.

II.  Substantive Grounds for Denial of the Motion

In the court's view, the Trustee and Lehman Entities have satisfied the three factors
required to invoke the common interest privilege by sufficiently establishing that: (1) the
communications were made in the course of a common legal interest; (2) the
communications were designed to further that common legal interest; and (3) the privilege
has not otherwise been waived.

1. The Communications Were Made in the Course of a Common Legal Interest

Movant contends that the communications between the Trustee and Lehman are not
protected by the common interest doctrine because they shared no common legal
interest.  Rather, SunCal argues that (1) the common interest doctrine only applies to
communications between attorney and client, and thus did not apply to communication at
the April 18 meeting; (2) no privilege existed on or after April 18, 2011 because no final
agreement had been reached; and (3) the Trustee and Lehman's common interest is not
a legal interest.

### United States Bankruptcy Court
### Central District of California

#### Santa Ana

#### Judge Erithe Smith, Presiding

#### Courtroom 5A Calendar

Tuesday, September 6, 2011                                      Hearing Room    5A

 2:00 pm
Cont....    **Palmdale Hills Property, LLC**                              Chapter   11

The following facts make clear that the parties shared a common legal interest: (1) Mr. Lobel's client is the Trustee, therefore they share the attorney-client privilege (Joint Opposition at 7); (2) the essential terms of the settlement agreement between the Trustee and the Lehman Entities were agreed to at an April 18, 2010 meeting (Joint Opposition at 7); and  (3) the Trustee and the Lehman Entities are co-proponents of a plan of reorganization for the Trustee Debtors (Joint Opposition at 2).

SunCal argues that the common interest doctrine only applies to communications between attorney and client, and thus did not apply to the communication at the April 18 Meeting because Mr. Lobel was not rendering advice to the Lehman Entities and the Lehman Entities and their counsel were not rendering advice to the Trustee. Motion to Compel at 7.  However, the community-of-interest privilege does not apply only to communication between clients and attorneys, but between all privileged parties within the community of interest. In re Teleglobe Communication Corp., 493 F.3d 345, 359 (3d Cir. 2007).  Here, Trustee's counsel, Mr. Lobel, declined to testify about communications with counsel for the Lehman Entities concerning the settlement agreement between his client and the Lehman Entities that was agreed to on April 18, 2010.  The community-of-interest privilege applies here because a privilege arose between the Trustee and the Lehman Entities when they agreed to the essential terms of the Lehman/Trustee Plan.

SunCal also argues that no privilege existed on or after April 18, 2010 because no final agreement had been reached.  However, "[t]he common interest privilege does not require a complete unity of interests among the participants.  The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects." In re Mortgage & Realty Trust, 212 B.R. at 649, 653 (Bkrtcy.C.D.Cal.,1997). In Tribune, the Court held that a community-of-interest privilege arose where "plan proponents agreed upon the material terms of a settlement." Tribune at *5.  The facts before the court now are nearly identical to those in Tribune. Here, the privilege arose when the Trustee and the Lehman Entities agreed to the essential terms of their settlement and the Lehman/Trustee Plan, or, on April 18, 2010. The court finds SunCal's arguments attempting to disguish Tribune from the facts in this case to be unpersuasive.  Stated otherwise, the distinguishing facts are immaterial to the underlying analysis regarding the applicability of the privilege.

## United States Bankruptcy Court
## Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

Tuesday, September 6, 2011                                           Hearing Room    5A

2:00 pm
Cont....        Palmdale Hills Property, LLC                                 Chapter    11

#### 2. The Communications Were Designed to Further That Common Legal Interest

SunCal argues that the Trustee and the Lehman Entities' common interest is not a
legal interest. Teleglobe found that parties engaged in a merger negotiation may share a
common interest. Teleglobe, 493 F.3d at 364. In Trubune, the Court held that "common
interests must be determined on a case by case basis," and held that the interest in
confirming a plan is a common legal interest. Tribune at *5. Here, the communications
between the Trustee and the Lehman Entities were designed to further the common legal
interest of confirming a plan. Thus, the second factor to invoke the common interest
privilege is satisfied.

#### 3. The Common Interest Privilege Has Not Otherwise Been Waived

Since the common interest privilege is an extension of the attorney-client privilege, any
waiver under the attorney-client privilege would also constitute a waiver under the
common interest privilege. Here there are no allegations that the attorney-client privilege
was ever waived and there is no indication to the court that it was ever waived. Thus, the
third factor to invoke the common interest privilege is satisfied.

Party Information

Debtor(s):

Exhibit "3," Page 45

# United States Bankruptcy Court
## Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding

### Courtroom 5A Calendar

| Tuesday, September 6, 2011 | Hearing Room    5A |
|---|---|

2:00 pm

Cont....        **Palmdale Hills Property, LLC**                                              Chapter    11

Debtor(s):

| Palmdale Hills Property, LLC | Represented By |
|---|---|
| | Paul J Couchot |
| | Peter W Lianides |
| | Richard W Esterkin |
| | Asa S Hami |
| | Charles  Liu |
| | James M Miller |
| | Raymond H Aver |
| | Sean A Okeefe |
| | Marc J Winthrop |
| | Martin  Pritikin |
| | Selia M Acevedo |
| | Francis T Donohue |
| | Richard H Golubow |
| | Louis R Miller |
| | Payam  Khodadadi |
| | Jeffrey W Broker |
| | Kavita  Gupta |

Movant(s):

| SunCal Management, LLC | Represented By |
|---|---|
| | Ronald  Rus |
| | Cathrine M Castaldi |
| | Joel S. Miliband |

Trustee(s):

Exhibit "3," Page 46

# United States Bankruptcy Court
# Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

| Tuesday, September 6, 2011 | Hearing Room | 5A |
|---|---|---|

2:00 pm

| Cont.... | Palmdale Hills Property, LLC | Chapter | 11 |
|---|---|---|---|

Trustee(s):

Steven M Speier (TR)                                   Represented By

James E Till

Louis R Miller

Mike D Neue

Steven M Speier (TR)

Exhibit "3," Page 47

EXHIBIT "4"

1        UNITED STATES BANKRUPTCY COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3            SANTA ANA DIVISION

    ---------------------------

4    In re

5    PALMDALE HILLS PROPERTY    ) Case No. 8:08-bk-17206-ES

6    AND ITS RELATED DEBTORS,   ) Jointly Administered

7                               ) with Case Numbers:

8    Jointly Administered       ) 8:08bk17209ES;8:08bk17240ES

9    Debtors and                ) 8:08bk17224ES;8:08bk17242ES

10   Debtors-in-Possession      ) 8:08bk17225ES;8:08bk17245ES

11   ---------------------------) 8:08bk17227ES;8:08bk17246ES

12   Affects:                   ) 8:08bk17230ES;8:08bk17231ES

13                              ) 8:08bk17236ES;8:08bk17248ES

14   LBL-SunCal Oak Valley, LLC) 8:08bk17249ES;8:08bk17573ES

15   SunCal Heartland, LLC      ) 8:08bk17574ES;8:08bk17575ES

16   LBL-SunCal Northlake, LLC  ) 8:08bk17404ES;8:08bk17407ES

17   SunCal Marblehead, LLC     ) 8:08bk17408ES;8:08bk17409ES

18   SunCal Century City, LLC   ) 8:08bk17458ES;8:08bk17465ES

19   SunCal PSV, LLC            ) 8:08bk17470ES;8:08bk17472ES

20   Delta Coves Venture, LLC   ) 8:08bk17588ES

21   SunCal Torrance            ) VOLUME III

22   SunCal Oak Knoll, LLC      )

    ---------------------------

23   CONTINUED VIDEOTAPED DEPOSITION OF STEVEN M. SPEIER

24       TUESDAY, SEPTEMBER 13, 2011

25   PAGES 323 - 408

                                    Page 323

```
 1    reliance claimants whether or not they actually meet     11:25:35

 2    the -- otherwise meet the definition of reliance

 3    claimant?  Do you know that?  Do you understand that?

 4        A.  Again, to me, the people that you described

 5    all had inside knowledge, and the Court will determine    11:25:48

 6    their claim as well.

 7        Q.  Okay.  So except that your plan doesn't

 8    provide for the Court to make that determine, we'll

 9    take a look at that in a minute.

10        So do you agree with me that nobody in that           11:26:01

11    meeting in Century City or anytime since that meeting

12    in Century City has advocated on behalf of SunCal

13    Management or any of these other entities that are

14    being specifically excluded as reliance creditors under

15    your plan on their behalf?                                11:26:23

16        A.  Well, I think SunCal Management will -- I

17    think SunCal-related entities.

18        Q.  Will fend for themselves; right?

19        A.  Will fend for themselves.

20        Q.  Exactly.                                          11:26:35

21        And you as trustee with fiduciary duties to all

22    creditors in the case, didn't believe that it was your

23    responsibility to raise that issue with Lehman, did

24    you?

25        A.  I believe that their claim will be evaluated      11:26:44

                                                        Page 372
```

1    by the Court.                                        11:26:48

2        Q.  And you didn't believe that you as trustee

3    with fiduciary duties to all creditors, needed to raise

4    that point with Lehman, did you?

5        A.  I don't recall if I discussed that issue with    11:26:59

6    my counsel or not.

7        Q.  Well, whether you discussed it with your

8    counsel or not, did you as trustee with fiduciary

9    duties to all creditors in the case, you didn't believe

10   that it was your responsibility to raise that issue     11:27:17

11   with Lehman, did you?

12       A.  I believed that the claims would be evaluated

13   by the Court.

14       Q.  And when I show you that in your plan that

15   that's not what's provided, will that change your view   11:27:28

16   at all?

17       A.  I'd have to see the plan.

18       Q.  Okay.  And we already discussed the creditors

19   committee wasn't present at this meeting in Century

20   city, so they certainly weren't advocating on behalf of  11:27:43

21   SunCal Management or other unsecured creditors who were

22   being carved out of reliance claims.

23       Now, you met with the creditors committee counsel

24   the next day.  That's your testimony; correct?

25       A.  Correct.                                         11:27:59

                                                         Page 373

1          I declare under penalty of perjury

2     under the laws that the foregoing is

3     true and correct.

4

5          Executed on _____ , 20___,

6     at _____, _____.

7

8

9

10        _____

11             STEVEN M. SPEIER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 405

1    STATE OF CALIFORNIA ) ss

2

3        I, Gail E. Kennamer, CSR No. 4583, CCRR do hereby

4    certify:

5        That the foregoing deposition was taken

6    before me at the time and place therein set forth

7    and at which time the witness was administered the

8    oath;

9        That the testimony of the witness and all

10   objections made by counsel at the time of the

11   examination were recorded stenographically by me,

12   and were thereafter transcribed under my direction

13   and supervision, and that the foregoing pages

14   contain a full, true and accurate record of all

15   proceedings and testimony to the best of my skill

16   and ability.

17       I further certify that I am neither counsel for

18   any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21       IN WITNESS WHEREOF, I have subscribed my name

22   this 14th day of September, 2011.

23

24

25       Gail E. Kennamer, CSR No. 4583, CCRR

                                        Page 406

EXHIBIT "5"

```
 1              UNITED STATES BANKRUPTCY COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   SANTA ANA DIVISION

     ---------------------------

 4   In re

 5   PALMDALE HILLS PROPERTY    ) Case No. 8:08-bk-17206-ES

 6   AND ITS RELATED DEBTORS,   ) Jointly Administered

 7                              ) with Case Numbers:

 8   Jointly Administered       ) 8:08bk17209ES;8:08bk17240ES

 9   Debtors and                ) 8:08bk17224ES;8:08bk17242ES

10   Debtors-in-Possession      ) 8:08bk17225ES;8:08bk17245ES

11   ---------------------------) 8:08bk17227ES;8:08bk17246ES

12   Affects:                   ) 8:08bk17230ES;8:08bk17231ES

13                              ) 8:08bk17236ES;8:08bk17248ES

14   LBL-SunCal Oak Valley, LLC) 8:08bk17249ES;8:08bk17573ES

15   SunCal Heartland, LLC      ) 8:08bk17574ES;8:08bk17575ES

16   LBL-SunCal Northlake, LLC  ) 8:08bk17404ES;8:08bk17407ES

17   SunCal Marblehead, LLC     ) 8:08bk17408ES;8:08bk17409ES

18   SunCal Century City, LLC   ) 8:08bk17458ES;8:08bk17465ES

19   SunCal PSV, LLC            ) 8:08bk17470ES;8:08bk17472ES

20   Delta Coves Venture, LLC   ) 8:08bk17588ES

21   SunCal Torrance            ) VOLUME III

22   SunCal Oak Knoll, LLC      )

     ---------------------------

23   CONTINUED VIDEOTAPED DEPOSITION OF STEVEN M. SPEIER

24             TUESDAY, SEPTEMBER 13, 2011

25   PAGES 323 - 408
```

Page 323

Exhibit "5," Page 55

```
 1    in the course of this meeting in Century City?          10:53:12

 2        A.   I don't recall.

 3        Q.   But you do recall wanting to understand the

 4    issue and the concept of reliance claims?

 5        A.   Correct.                                        10:53:26

 6        Q.   As best you can recall, how did the term sheet

 7    address the issue of reliance claims?

 8        A.   I don't -- As I said, I don't think it

 9    described the reliance claims.  I think we discussed

10    the potential reliance claims at the meeting.           10:53:43

11        Q.   All right.  But there was something in the

12    term sheet that caused you to want to have some

13    understanding of the issue of reliance claims; so I'm

14    asking if you can recall what was in the term sheet

15    that made reference to reliance claims.                 10:54:10

16        A.   I don't recall.  When you describe the issue

17    of reliance claims, I'm really talking about the dollar

18    amount of the reliance claims, not the issue of the

19    reliance claims.  Or I'm defining issue as the dollar

20    amount.  That was the issue for me.                     10:54:29

21        Q.   All right.  So your issue wasn't -- wasn't who

22    was a reliance creditor and who wasn't.  Your issue was

23    how much the reliance claim was going to be?

24        A.   I think I had an understanding of who the --

25    what the reliance claimants were at that time.          10:54:41
```

Page 350

1   Q.  And what was your understanding?  10:54:44

2   A.  That they were the creditors who relied on the

3 loan modification agreement that Lehman executed with

4 SunCal.

5   Q.  And how did you get that understanding? 10:54:56

6   A.  I believe when I was initially in the case,

7 that was explained to me by Mr. Couchot and

8 representatives of SunCal.

9   Q.  So the explanation that you had from the

10 SunCal attorneys or parties previously informed your 10:55:18

11 understanding of what a reliance claim was as used by

12 Lehman in the term sheet?

13   A.  That's my guess.

14    MR. LOBEL:  Objection.  I think you misstated

15 his testimony.  His testimony was that his 10:55:35

16 understanding of reliance claims came from statements

17 by Mr. Couchot.  He didn't say that that framed his

18 opinion as to what Lehman thought the reliance claims

19 were.

20    MR. MILIBAND:  I think his testimony actually 10:55:51

21 is pretty clear on that.

22   Q.  So -- But going into this meeting, you had an

23 understanding of what a reliance claim was?

24   A.  I had a general understanding; but as I said,

25 mostly it was about the dollar amount of the reliance 10:56:02

Page 351

1     claims.                                                    10:56:06

2          Q.  But the concept of a reliance claim, which was

3     reflected in the term sheet that you received that

4     Lehman had presented, you understood what a reliance

5     claim was based on the conversations you had had with     10:56:16

6     the SunCal attorneys previously?

7          A.  Let me say I had my understanding of what a

8     reliance claim was.

9          Q.  Right.  And that understanding was based on,

10    as you testified, the understanding you gained from       10:56:28

11    conversations with the SunCal attorneys previously?

12         A.  It was based on the conversations I had with

13    them, and it had to do with the creditors who relied on

14    the restructuring agreement that was executed.

15         Q.  And you understood when you spoke with          10:56:45

16    Mr. Couchot about this, that SunCal Management LLC was

17    a creditor who had relied on the loan modification

18    agreement, didn't you?

19         A.  Yes, I did.

20         Q.  So you understood that SunCal Management LLC     10:56:56

21    was, as you understood, a reliance claimant or reliance

22    claim?

23         A.  Correct.  Well, they -- they -- they professed

24    to be a reliance claimant.

25         Q.  Well, based on your -- I mean, as -- as the     10:57:16

                                                          Page 352

1         I declare under penalty of perjury

2    under the laws that the foregoing is

3    true and correct.

4

5         Executed on _____ , 20___,

6    at _____, _____.

7

8

9

10        _____

11              STEVEN M. SPEIER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 405

```
 1    STATE OF CALIFORNIA ) ss

 2

 3        I, Gail E. Kennamer, CSR No. 4583, CCRR do hereby

 4    certify:

 5        That the foregoing deposition was taken

 6    before me at the time and place therein set forth

 7    and at which time the witness was administered the

 8    oath;

 9        That the testimony of the witness and all

10    objections made by counsel at the time of the

11    examination were recorded stenographically by me,

12    and were thereafter transcribed under my direction

13    and supervision, and that the foregoing pages

14    contain a full, true and accurate record of all

15    proceedings and testimony to the best of my skill

16    and ability.

17        I further certify that I am neither counsel for

18    any party to said action, nor am I related to any

19    party to said action, nor am I in any way interested

20    in the outcome thereof.

21        IN WITNESS WHEREOF, I have subscribed my name

22    this 14th day of September, 2011.

23

24


25        Gail E. Kennamer, CSR No. 4583, CCRR


                                          Page 406
```

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Von Karman Towers, Seventh Floor, 2211 Michelson Drive, Irvine, California 92612

A true and correct copy of the foregoing document described as **SUNCAL MANAGEMENT, LLC'S OBJECTION TO CONFIRMATION OF (1) THE THIRD AMENDED JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS AND (2) THE THIRD AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND SUBJECT LEHMAN CREDITORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  September 19, 2011  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☒ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On  September 19, 2011  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P.5 and/or controlling LBR, on  September 19, 2011  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| September 19, 2011 | Jeannie Mendez | *(signature)* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Selia M Acevedo — sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams — jadams@sycr.com
- Raymond H Aver — ray@averlaw.com
- James C Bastian — jbastian@shbllp.com
- Thomas Scott Belden — sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd — fednotice@tclaw.net
- Mark Bradshaw — mbradshaw@shbllp.com
- Gustavo E Bravo — gbravo@smaha.com
- Jeffrey W Broker — jbroker@brokerlaw.biz
- Richard W Brunette — rbrunette@sheppardmullin.com
- Brendt C Butler — bbutler@mandersonllp.com
- Andrew W Caine — acaine@pszyjw.com
- Carollynn Callari — ccallari@venable.com
- Cathrine M Castaldi — ccastaldi@rusmiliband.com
- Tara Castro Narayanan — tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers — dchambers@jmbm.com
- Shirley Cho — scho@pszjlaw.com
- Vonn Christenson — vrc@paynefears.com
- Brendan P Collins — bpcollins@bhfs.com
- Vincent M Coscino — vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot — pcouchot@winthropcouchot.com, pj@winthropcouchot.com; gcrumpacker@winthropcouchot.com
- Geoffrey Crisp — geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri — dabbieri@sullivan.com, hill@sullivanhill.com; mcallister@sullivanhill.com; stein@sullivanhill.com; vidovich@sullivanhill.com
- Ana Damonte — ana.damonte@pillsburylaw.com
- Vanessa S Davila — vsd@amclaw.com
- Melissa Davis — mdavis@shbllp.com
- Daniel Denny — ddenny@gibsondunn.com
- Caroline Djang — crd@jmbm.com
- Caroline Djang — cdjang@rutan.com
- Donald T Dunning — ddunning@dunningLaw.com
- Lynsey M Eaton — leaton@gglts.com
- Meredith R Edelman — meredith.edelman@dlapiper.com
- Joseph A Eisenberg — jae@jmbm.com
- Lei Lei Wang Ekvall — lekvall@wgllp.com
- Richard W Esterkin — resterkin@morganlewis.com
- Don Fisher — dfisher@ptwww.com
- Marc C Forsythe — kmurphy@goeforlaw.com
- Alan J Friedman — afriedman@irell.com
- Steven M Garber — steve@smgarberlaw.com
- Christian J Gascou — cgascou@gascouhopkins.com
- Barry S Glaser — bglaser@swjlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Robert P Goe — kmurphy@goeforlaw.com, rgoe@goeforlaw.com; mforsythe@goeforlaw.com
- Eric D Goldberg — egoldberg@stutman.com
- Richard H Golubow — rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez — mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith — bkemail@harrisbeach.com
- Matthew Grimshaw — mgrimshaw@rutan.com
- Kavita Gupta — kgupta@winthropcouchot.com
- Asa S Hami — ahami@morganlewis.com
- Michael J Hauser — michael.hauser@usdoj.gov
- D Edward Hays — ehays@marshackhays.com
- Michael C Heinrichs — mheinrichs@omm.com
- Harry D. Hochman — hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff — jonathan.hoff@cwt.com
- Nancy Hotchkiss — nhotchkiss@trainorfairbrook.com
- Michelle Hribar — mhribar@rutan.com
- John J Immordino — john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson — laj@cohenandjacobson.com
- Michael J Joyce — mjoyce@crosslaw.com
- Stephen M Judson — sjudson@fablaw.com
- Kaleb L Judy — ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn — skahn@pszyjw.com
- Sheri Kanesaka — sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- David I Katzen — katzen@ksfirm.com
- Christopher W Keegan — ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com; alevin@kirkland.com
- Irene L Kiet — ikiet@hkclaw.com
- Claude F Kolm — claude.kolm@acgov.org
- Mark J Krone — mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally — davidlallylaw@gmail.com
- Leib M Lerner — leib.lerner@alston.com
- Peter W Lianides — plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu — cliu@marshackhays.com
- Charles Liu — cliu@winthropcouchot.com
- Ben H Logan — blogan@omm.com
- John W Lucas — jlucas@pszjlaw.com
- Kerri A Lyman — klyman@irell.com
- Mariam S Marshall — mmarshall@marshallramoslaw.com
- Robert C Martinez — rmartinez@mclex.com
- Michael D May — mdmayesq@verizon.net
- Hutchison B Meltzer — hmeltzer@wgllp.com
- Krikor J Meshefejian — kjm@lnbrb.com
- Joel S. Miliband — jmiliband@rusmiliband.com
- James M Miller — jmiller@millerbarondess.com, vgunderson@millerbarondess.com; smiller@millerbarondess.com; mpritikin@millerbarondess.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Louis R Miller — smiller@millerbarondess.com
- Craig Millet — cmillet@gibsondunn.com, pcrawford@gibsondunn.com; cmillet@gibsondunn.com
- Randall P Mroczynski — randym@cookseylaw.com
- Mike D Neue — mneue@thelobelfirm.com, jmattiace@thelobelfirm.com; pnelson@thelobelfirm.com
- Robert Nida — Rnida@castlelawoffice.com
- Henry H Oh — henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe — sokeefe@okeefelc.com
- Robert B Orgel — rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay — mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park — ernie.park@bewleylaw.com
- Daryl G Parker — dparker@pszjlaw.com
- Penelope Parmes — pparmes@rutan.com
- Robert J Pfister — rpfister@ktbslaw.com
- Ronald B Pierce — ronald.pierce@sdma.com
- Katherine C Piper — kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey — cmartin@pprlaw.net
- Debra Riley — driley@allenmatkins.com
- James S Riley — tgarza@sierrafunds.com
- Todd C. Ringstad — becky@ringstadlaw.com
- R Grace Rodriguez — ecf@lorgr.com
- Martha E Romero — Romero@mromerolawfirm.com
- Ronald Rus — rrus@rusmiliband.com
- John P Schafer — jschafer@mandersonllp.com
- John E Schreiber — jschreiber@dl.com
- William D Schuster — bills@allieschuster.org
- Christopher P Simon — csimon@crosslaw.com
- Gerald N Sims — jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith — wendy@bindermalter.com
- Steven M Speier — Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR) — Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James — ecf@stjames-law.com
- Michael K Sugar — msugar@irell.com
- Cathy Ta — cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com; Kenneth.Burgess@bbklaw.com
- David A Tilem — davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till — jtill@thelobelfirm.com, jmattiace@thelobelfirm.com; pnelson@thelobelfirm.com
- United States Trustee (SA) — ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh — cgunruh@sbcglobal.net
- Annie Verdries — verdries@lbbslaw.com
- Jason Wallach — jwallach@gladstonemichel.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Joshua D Wayser     kim.johnson@kattenlaw.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

**F 9013-3.1**