JEFFREY W. BROKER – State Bar No. 53226
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114
Telephone: (949) 222-2000 * Facsimile: (949) 222-2022
email: *jbroker@brokerlaw.biz*

LEE E. WOODARD – pro hac vice
KELLY C. GRIFFITH – pro hac vice
HARRIS BEACH PLLC
One Park Place, 4th Floor
Syracuse, New York 13202
Telephone: (315) 423-7100 * Facsimile: (315) 422-9331
Email: *kgriffith@harrisbeach.com*

Attorneys for Creditors
BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re

PALMDALE HILLS PROPERTY, LLC, and
ALL OF ITS RELATED DEBTORS,
          Jointly Administered Debtors
          and Debtors-in-Possession

Affects:

☐ All Debtors
☑ Palmdale Hills Property, LLC,
☑ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale,
☑ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☑ SunCal Emerald Meadows LLC
☑ SunCal Bickford Ranch, LLC
☑ Acton Estates, LLC
☐ Seven Brothers LLC
☑ SJD Partners, Ltd.
☑ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☑ SCC Communities LLC
☑ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC

*Caption continued on next page*

Case No. 8:08-bk-17206-ES
Chapter 11 Proceedings

**NOTICE OF MOTION AND MOTION OF
BOND SAFEGUARD INSURANCE CO. AND
LEXON INSURANCE CO. (I) TO ALLOW
BALLOTS CAST BY BOND SAFEGUARD
INSURANCE CO. AND LEXON INSURANCE
CO. AS TO VD PLAN PROPONENTS'
PLANS; OR (II) PURSUANT TO
BANKRUPTCY RULE 3018(a) FOR
TEMPORARY ALLOWANCE OF THEIR
CLAIMS SOLELY FOR PURPOSES OF
VOTING ON THE VOLUNTARY DEBTORS'
PROPOSED PLANS OF REORGANIZATION**

**[DECLARATION OF KELLY C. COLLINS
AND REQUEST FOR JUDICIAL NOTICE
FILED CONCURRENTLY HEREWITH]**

Date:          October 24, 2011
Time           9:30 a.m.
Ctrm:          5A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

☑ LBL-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☑ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance, LLC
☑ SunCal Oak Knoll, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; CREDITORS AND PARTIES IN INTEREST:**

BOND SAFEGUARD INSURANCE CO. and LEXON INSURANCE CO. (respectively "BSI" and "Lexon"; collectively, the "Claimants" or "Bond Safeguard"), hereby move this Court for an order (i) allowing the Ballots timely cast by Bond Safeguard as to the VD Plan Proponents Amended Plans; or (ii) temporarily allowing the claims filed by Bond Safeguard in the amounts set forth herein solely for purposes of voting, on the VD Plan Proponents' amended Joint Chapter 11 Plans.

WHEREFORE, Bond Safeguard respectfully requests that the Court enter an order granting the foregoing relief and such other and further relief as the Court deems just and proper.

The Motion is based upon the foregoing notice, the annexed memorandum of points and authorities, the Declaration of Kelly C. Collins (the "Collins Declaration") and Request for Judicial Notice ("RJN"), filed concurrently herewith, together with such other evidence, oral or documentary, that may be presented to the Court at the hearing hereon.

**PLEASE TAKE NOTICE** that a hearing on the Motion has been scheduled to take place on October 24, 2011 at the hour of 9:30 a.m. before the Honorable Erithe Smith, United States Bankruptcy Judge, in Courtroom 5A, United States Bankruptcy Court, located at 411 West Fourth Street, Santa Ana, CA 92701.

**PLEASE TAKE ADDITIONAL NOTICE THAT IF YOU DO NOT OPPOSE THE RELIEF REQUESTED IN THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO FURTHER ACTION. IF YOU OBJECT TO THE RELIEF REQUESTED IN THE MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(f), EACH INTERESTED PARTY RESPONDING TO THE MOTION SHALL, <u>NOT LATER THAN FOURTEEN (14) DAYS PRIOR TO THE DATE SCHEDULED FOR THE HEARING ON THE MOTION</u>, FILE WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701, EITHER (1) A BRIEF, BUT COMPLETE WRITTEN STATEMENT OF**

ALL REASONS IN OPPOSITION THERETO OR IN SUPPORT OR JOINDER THEREOF AND AN ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS AND COPIES OF ALL PHOTOGRAPHS AND DOCUMENTARY EVIDENCE UPON WHICH THE RESPONDING PARTY INTENDS TO RELY; OR (2) A WRITTEN STATEMENT THAT THE MOTION WILL NOT BE OPPOSED.

PLEASE TAKE ADDITIONAL NOTICE THAT ANY PARTY OPPOSING THE MOTION MUST SERVE A COPY OF SUCH WRITTEN OPPOSITION TO THE MOTION AND ALL SUPPORTING PAPERS UPON THE COUNSEL FOR THE MOVING PARTIES AT THE ADDRESSES INDICATED IN THE UPPER LEFT HAND CORNER OF THE FIRST PAGE OF THIS MOTION, **AND** ALSO UPON THE OFFICE OF THE UNITED STATES TRUSTEE, LOCATED AT 411 WEST FOURTH STREET, SUITE 9041, SANTA ANA, CA 92701. THE FAILURE TO TIMELY FILE AND SERVE ANY SUCH OPPOSITION AND ALL SUPPORTING PAPERS MAY BE DEEMED BY THE COURT TO CONSTITUTE CONSENT TO THE RELIEF REQUESTED IN THE MOTION PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(h).

DATED: September 26, 2011

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION
-and-
HARRIS BEACH PLLC

By: _____
Jeffrey W. Broker
Attorneys for Bond Safeguard Insurance Co.
and Lexon Insurance Co.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.     SUMMARY OF ARGUMENTS ............................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................... 1

    1.     Commencement of the Voluntary Chapter 11 Cases and Their Subsequent
        Joint Administration ...................................................................................... 1

    2.     Commencement of the Involuntary Cases and Subsequent Appointment of
        a Chapter 11 Trustee ...................................................................................... 3

    3.     Bond Safeguard's Claims ............................................................................... 4

    4.     Voluntary Debtors' Chapter 11 Plans ............................................................ 7

    5.     Claim Objection ............................................................................................. 7

III.   ARGUMENT ............................................................................................................ 8

    A.     BOND SAFEGUARD'S BALLOTS SHOULD BE COUNTED AS
        ORIGINALLY CAST ..................................................................................... 8

        1.     The Claim Objection Does Not Disqualify Bond Safeguard's
            Ballots as Submitted on September 19, 2011Because the Claims
            Are Allowed Claims as of the Voting Record Date ........................... 8

        2.     The Claim Objection Was Untimely and is Prejudicial ..................... 9

        3.     The Claim Objection Does Not Comply with the Bankruptcy Rules
            and Local Rules ................................................................................ 10

    B.     THE CLAIMS SHOULD BE TEMPORARILY ALLOWED PURSUANT
        TO BANKRUPTCY RULE 3018 ............................................................... 11

    C.     RESPONSE TO CLAIM OBJECTION ...................................................... 13

        1.     Section 502(e) Is Not Applicable to Bond Safeguard's Claims ...... 13

2.    The Indemnity Agreement is Binding on the Debtors .................................. 16

3.    The  Indemnity  Agreement  Did  Not  Constitute  Avoidable
       Fraudulent Transfers ...................................................................................... 22

IV.    CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**Cases**

3V Capital Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re Tousa), 444 B.R.
613 (S.D. Fla. 2011) ........................................................................................23, 24, 25

Citadel Holding Corp. v. Roven, 603 A.2d 818 (Del. 1992) ..........................................17

Glyfada Seafaring Corp. v. Fillmore Shipping Ltd., 685 F. Supp. 40 (S.D.N.Y. 1987) ..................22

In re Adelphia Business Solutions, Inc., 341 B.R. 415 (Bankr. S.D.N.Y. 2003) .............................11

In re Andover Togs, Inc., 231 B.R. 521 (Bankr. S.D.N.Y. 1999) ..............................................16

In re Armstrong, 294 B.R. 344 (B.A.P. 10th Cir. 2003), aff'd 97 Fed. Appx 285 (10th Cir. 2004) ..11

In re Gardinier, Inc., 55 B.R. 601 (Bankr. M.D. Fla. 1985) ..................................................12

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd 78 B.R. 407 (S.D.N.Y.
1987), aff'd 843 F.2d 636 (2d Cir. 1988) ........................................................................11

In re Orion Refining Corp., 317 B.R. 660 (Bankr. D. Del. 2004) ..........................................16

In re Ralph Lauren Womenswear, Inc., 197 B.R. 771 (Bankr. S.D.N.Y. 1996) ..............................11

In re Trans World Airlines, Inc., 145 F.3d 124 (3d Cir. 1998) ........................................16

In re Washington Mutual, Inc., 421 B.R. 143 (Bankr. D. Del. 2009) .................................20

Lee v. Jenkins Bros., 268 F.2d 357 (2nd Cir. 1959) ........................................................22

Lehman Bros., Inc. v. Tutelar Cia Financiera, S.A., 95-CV-3772, 1997 WL 403463 (S.D.N.Y. July
17, 1997) ........................................................................................................21

Mellon Bank N.A. v. Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L.
Inc.), 92 F.3d 139 (3d Cir. 1996) ..............................................................................24

Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635 (3d Cir. 1991) ........................23

Northwestern Nat. Ins. Co. v. Esmark, Inc., 672 A.2d 41 (Del. 1996) ...................................17

Pension Benefit Guaranty Corp. v. Enron Corp., 2004 WL 2434928 (S.D.N.Y. Nov. 1, 2004) ......11

Utica Mutual Insurance Co. v. Fireman's Fund Ins. Cos., 613 F. Supp. 1134 (S.D.N.Y. 1985) ......22

Wachovia Bank, N.A. v. WL Homes, LLC (In re WL Homes, LLC), 452 B.R. 138 (Bankr. D. Del.

    2011) .................................................................................................................... 20, 21


**Statutes**

§502(e)(1)(B) .......................................................................................................... 15

11 U.S.C. §1126(a) .............................................................................................. 8, 11

11 U.S.C. §502(a) ................................................................................................ 9, 11

11 U.S.C. §502(b)(1) ................................................................................................. 7

11 U.S.C. §502(d) ............................................................................................... 8, 25

11 U.S.C. §502(e) .................................................................................................... 13

11 U.S.C. §502(e)(1) ................................................................................................ 15

11 U.S.C. §502(e)(1)(B) ...................................................................................... 7, 14

11 U.S.C. §502(e)(2) ................................................................................................ 16


**Other Authorities**

4 COLLIER ON BANKRUPTCY, ¶ 502.06[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)..... 16


**Rules**

Bankruptcy Rule 3018(a) ......................................................................................... 11

Fed. R. Bankr. P. 3007(a) ................................................................................... 10, 13

Fed. R. Bankr. P. 3018(a) ......................................................................................... 11

Local Bankruptcy Rule 3007-1 (b)(1) ...................................................................... 10

# I.

# SUMMARY OF ARGUMENTS

Bond Safeguard, by and through its undersigned counsel, hereby submits this Motion for entry of an order (i) allowing Bond Safeguard's ballots timely submitted in connection with the VD Amended Plans (the "Ballots"), or (ii)  pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing Bond Safeguards' amended claims (as more particularly described below, the "Amended Claims"), solely for the purposes of voting on the VD Plan Proponents' Amended Plans (the "VD Plans" or "Amended Plans").[1] Bond Safeguard is filing this Motion out of an abundance of caution notwithstanding the significant prejudice that the untimely Claim Objection has caused to Bond Safeguard.   Indeed, it is noteworthy that the Claim Objection was filed only **AFTER** Bond Safeguard's ballots were received by counsel for the Voluntary Debtors.[2]   In support of the Motion, Bond Safeguard respectfully states as follows:

# II.

# FACTUAL BACKGROUND

### 1.    Commencement of the Voluntary Chapter 11 Cases and Their Subsequent Joint Administration

Palmdale Hills, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates LLC, SunCal Emerald Meadows, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, SJD Partners, Ltd., a California limited partnership, SJD Development Corp., a California corporation, SCC Communities, LLC, North Orange Del Rio

---

[1] Bond Safeguard has been advised by counsel for the Lehman Creditors, including: (a) Lehman ALI, Inc., (b) Northlake Holdings, LLC and (c) OVC Holdings LLC ("Lehman"), and counsel for Steven Speier, the Trustee (the "Trustee") , that the ballots cast by Bond Safeguard relating the two plans proposed by Lehman, (a) the Plan Proposed jointly by Lehman and the Trustee (the "Lehman/Trustee Plan"), and the plan proposed by Lehman and VD Lenders (the "Lehman VD Plan", collectively with the Lehman/Trustee Plan, the "Lehman Plans") will be counted notwithstanding the Claim Objection.

[2] Bond Safeguard timely submitted ballots rejecting the VD Plans.  Copies of the Ballots are attached collectively as Exhibit "F" to the Collins Declaration.

Land, LLC, Tesoro SF LLC, SunCal Beaumont Heights LLC, SunCal Johannson Ranch LLC, Seven Brothers LLC, and Kirby Estates LLC (the "Voluntary Debtors") filed Voluntary Petitions for Relief (the "Voluntary Cases") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court" or "Court") in November 2008 as follows:

| Voluntary Debtors | Case Number | Petition Date |
|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | November 6, 2008 |
| SunCal Beaumont Heights LLC | 8:08-17209 ES | November 6, 2008 |
| SCC Palmdale, LLC | 8:08-17224 ES | November 7, 2008 |
| SunCal Johannson Ranch LLC | 8:08-17225 ES | November 7, 2008 |
| SunCal Summit Valley, LLC | 8:08-17227 ES | November 7, 2008 |
| SunCal Emerald Meadows, LLC | 8:08-17230 ES | November 7, 2008 |
| SunCal Bickford Ranch, LLC | 8:08-17231 ES | November 7, 2008 |
| Acton Estates LLC | 8:08-17236 ES | November 7, 2008 |
| Seven Brothers LLC | 8:08-17240 ES | November 7, 2008 |
| SJD Partners, Ltd. | 8:08-17242 ES | November 7, 2008 |
| SJD Development Corp. | 8:08-17245 ES | November 7, 2008 |
| Kirby Estates LLC | 8:08-17246 ES | November 7, 2008 |
| SunCal Communities I, LLC | 8:08-17248 ES | November 7, 2008 |
| SunCal Communities III, LLC | 8:08-17249 ES | November 7, 2008 |
| SCC Communities, LLC | 8:08-17573 ES | November 19, 2008 |
| North Orange Del Rio Land, LLC | 8:08-17574 ES | November 19, 2008 |
| Tesoro SF LLC | 8:08-17575 ES | November 19, 2008 |

In response to several emergency motions filed by the Voluntary Debtors, Orders were entered by the Bankruptcy Court on November 19, 2008, and on December 9, 2008, ordering the Joint Administration of all of the Voluntary Cases.[3]

---

[3] Claimants believe that there is no dispute as to the foregoing facts and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing. To the extent that any party in interest disputes any of the foregoing facts, Claimants reserve the right in their Reply to augment the record with the referenced Orders.

-2-

2.      **Commencement of the Involuntary Cases and Subsequent Appointment of a Chapter 11 Trustee**

LBL-SunCal Oak Valley, LLC, SunCal Heartland, LLC, LBL-SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal Century City, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC, SunCal Oak Knoll, LLC (collectively, the "Involuntary Debtors" or the "Trustee Debtors")[4] had Involuntary Petitions for Relief (the "Involuntary Cases" or the "Trustee Cases") filed against them in November 2008 under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court as follows:

| Involuntary Debtors | Case Number | Petition Date |
|---|---|---|
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | November 12, 2008 |
| SunCal Heartland, LLC | 8:08-17407 ES | November 12, 2008 |
| LBL-SunCal Northlake, LLC | 8:08-17408 ES | November 12, 2008 |
| SunCal Marblehead, LLC | 8:08-17409 ES | November 12, 2008 |
| SunCal Century City, LLC | 8:08-17458 ES | November 14, 2008 |
| SunCal PSV, LLC | 8:08-17465 ES | November 14, 2008 |
| Delta Coves Venture, LLC | 8:08-17470 ES | November 14, 2008 |
| SunCal Torrance, LLC | 8:08-17472 ES | November 14, 2008 |
| SunCal Oak Knoll, LLC | 8:08-17588 ES | November 19, 2008 |

Orders for relief were entered against each of the Involuntary Debtors on January 6, 2009. The Bankruptcy Court entered Orders in each of the Involuntary Debtors' cases on January 15, 2009 granting the motions of the Petitioning Creditors in each of the Involuntary Cases for an Order appointing a Chapter 11 Trustee. Steven Speier was separately appointed by the Office of the United States Trustee as the Chapter 11 Trustee in each of the Involuntary Cases (the "Trustee"), which appointment was then approved by the Bankruptcy Court pursuant to Orders in each of the Involuntary Cases signed by the Court and separately entered in each case on January 22, 2009." The Schedules and Statements of Financial Affairs and Creditor Matrix were filed by the Trustee in each Involuntary Case on January 27, 2009.[5]

---

[4] The Voluntary Debtors and the Involuntary Debtors are sometimes referred to *collectively*, as the "Debtors".
[5] Claimants believe that there is no dispute as to the foregoing facts and in the interests of judicial economy has not burdened the record with the Orders memorializing the foregoing. To the extent that any party in interest disputes any of the foregoing facts, Claimants reserve the right in their Reply to augment the record with the referenced Orders.

3.    **Bond Safeguard's Claims**

After the Voluntary Cases were administratively consolidated, the Court entered an order setting March 31, 2009 as the last date by which proofs of claim and interest shall be filed.  BSI and Lexon are sureties on certain surety bonds (the "Bonds") executed on behalf of certain of the Debtors.    Additionally, BSI and Lexon are parties to a General Agreement of Indemnity (the "Indemnity Agreement") executed by, *inter alia*, SCC Acquisitions, Inc. and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired (the "Indemnitors") wherein the Indemnitors agreed to indemnify and hold BSI and Lexon harmless from every claim that Bond Safeguard may pay as a result of the Bonds.

Bond Safeguard filed various claims in the Voluntary Debtors' cases (the "VD Claims") which are described as follows:

Summary of BS Claims:

| Voluntary Debtors | Case Number | Claim No. | Date Filed | Amount |
|---|---|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | 107-1 (amends #87) | 6/5/2009 | $24,859,950.00 |
| | | 87 | 3/31/2009 | $24,859,950.00 |
| | | 86 | 3/31/2009 | $573,400.00 |
| | | 85 | 3/31/2009 | $3,549,700.00 |
| | | 84 | 3/31/2009 | $13,000.00 |
| | | 83 | 3/31/2009 | $5,900.00 |
| | | 82 | 3/31/2009 | $19,500.00 |
| | | 81 | 3/31/2009 | $37,950.00 |
| | | 80 | 3/31/2009 | $784,050.00 |
| | | 79 | 3/31/2009 | $4,122,000.00 |
| | | 78 | 3/31/2009 | $3,160,650.00 |
| | | 77 | 3/31/2009 | $649,500.00 |
| | | 76 | 3/31/2009 | $240,750.00 |
| | | 75 | 3/31/2009 | $3,414,300.00 |
| | | 74 | 3/31/2009 | $150,700.00 |
| | | 73 | 3/31/2009 | $6,353,850.00 |
| | | 72 | 3/31/2009 | $1,784,700.00 |

| | | | | |
|---|---|---|---|---|
| SunCal Bickford Ranch, LLC | 8:08-17231 ES | 24 | 3/31/2009 | $2,827,548.00 |
| | | 19 | 3/31/2009 | $2,500,000.00 |
| | | 20 | 3/31/2009 | $327,548.00 |
| Acton Estates LLC | 8:08-17236 ES | 7 | 3/31/2009 | $1,290,000.00 |
| SJD Partners, Ltd. | 8:08-17242 ES | 42 | 3/31/2009 | $7,712,119.00 |
| | | 41 | 3/31/2009 | $78031.00 |
| | | 40 | 3/31/2009 | $83,952.00 |
| | | 39 | 3/31/2009 | $70,005.00 |
| | | 38 | 3/31/2009 | $219,070.00 |
| | | 37 | 3/31/2009 | $763,671.00 |
| | | 36 | 3/31/2009 | $434,156.00 |
| | | 35 | 3/31/2009 | $1,537,973.00 |
| | | 34 | 3/31/2009 | $1,639,486.00 |
| | | 33 | 3/31/2009 | $262,073.00 |
| | | 32 | 3/31/2009 | $364,676.00 |
| | | 31 | 3/31/2009 | $476,943.00 |
| | | 30 | 3/31/2009 | $710,192.00 |
| | | 29 | 3/31/2009 | $114,291.00 |
| | | 28 | 3/31/2009 | $378,797.00 |
| | | 27 | 3/31/2009 | $343,468.00 |
| | | 26 | 3/31/2009 | $319,287.00 |
| SCC Communities, LLC | 8:08-17573 ES | 4 | 3/20/2009 | $25,000.00 |
| | | 5 | 3/20/2009 | $12,500.00 |
| | | 6 | 3/20/2009 | $12,500.00 |
| North Orange Del Rio Land, LLC | 8:08-17574 ES | 8 | 3/20/2009 | $3,060,045.00 |
| | | 9 | 3/20/2009 | $250,100.00 |
| | | 10 | 3/20/2009 | $2,809,945.00 |

1

2          Thereafter, by Order entered on or about January 7, 2011 at Docket No. 1759, this Court

3    granted Bond Safeguard's Motion to allow it to file claims after the alleged bar date in the Trustee

4    Debtors' cases. Bond Safeguard filed claims in the Trustee Cases (the "Trustee Claims"):

5

| Trustee Debtors | Case Number | Claim No. | Date Filed | Amount |
|---|---|---|---|---|
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | 41 | 4/15/2011 | Approx. $24,489,848.98 |
| | | 42 | 4/15/2011 | Unknown |
| SunCal Heartland, LLC | 8:08-17407 ES | 28 | 4/15/2011 | Approx. $55,918,440.00 |
| | | 29 | 4/15/2011 | Unknown |
| LBL-SunCal Northlake, LLC | 8:08-17408 ES | 16 | 4/15/2011 | Unknown |
| SunCal Marblehead, LLC | 8:08-17409 ES | 69 | | Approx. $36,836.00 |
| | | 70 | | Unknown |
| SunCal Century City, LLC | 8:08-17458 ES | 21 | 9/12/2011 (amended) | $11,137,789.76 |
| SunCal PSV, LLC | 8:08-17465 ES | 58 | | Approx. $29,765,800.60 |
| | | 59 | | Unknown |
| Delta Coves Venture, LLC | 8:08-17470 ES | 32 | | $24,413,824.00 |
| | | 33 | | Unknown |
| SunCal Torrance, LLC | 8:08-17472 ES | 12 | 4/15/2011 | Unknown |
| SunCal Oak Knoll, LLC | 8:08-17588 ES | 33 | 4/15/2011 | Unknown |

          Throughout the pendency of the case, certain claims have been made on the Bonds, and

Bond Safeguard has paid out on some of the claims. In most instances, in exchange for satisfaction

of its claim on the bond, the creditor assigned its claim to Bond Safeguard. Bond Safeguard filed

Claim Transfers for the assigned claims (the "Transferred Claims", collectively, with the VD

Claims, and the Trustee Claims, the "Claims"), which are described as follows:

| Debtors | Case Number | Claim No. | Date Filed | Amount |
|---------|-------------|-----------|------------|--------|
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | 23 | | $136,567.43 |
| SunCal PSV, LLC | 8:08-17465 ES | 36 | | $471,307.21 |
| | | 42 | | $469,784.09 |
| | | 43 | | $666,897.27 |

The Claims can also be categorized in another manner: (i) those claims for actual or projected payout by Bond Safeguard under the Bonds (the "Damage Claims"); and (ii) those claims arising from obligations relating to the Indemnity Agreement (the "Indemnity Claims").

### 4.  Voluntary Debtors' Chapter 11 Plans

On or about June 20, 2011, the Voluntary Debtors and SCC Acquisitions, Inc. ("Acquisitions", collectively, the "VD Plan Proponents") filed eight Amended Disclosure Statements (the "Disclosure Statements") and eight accompanying Amended Chapter 11 Plans (the "Amended Plans") for each of the respective groups of debtors.  A hearing to approve the Disclosure Statements was scheduled for July 22, 2011.  An Order approving the Disclosure Statements was entered August 30, 2011 at Docket No. 2638.  The Amended Plans have been set for confirmation from October 24, 2011 through October 28, 2011.[6]

### 5.  Claim Objection

On or about September 19, 2011, the VD Plan Proponents filed the Claim Objection [ECF Docket No. 2783; a true and correct copy of the face page is attached to the RJN as Exhibit "B"], seeking entry of an order disallowing Bond Safeguard's Claims on the following grounds:  (i) that certain of the claims are contingent and subject to disallowance pursuant to 11 U.S.C. §502(e)(1)(B); (ii) that certain of the Claims are claims for indemnification for which the Trustee Debtors are not liable pursuant to 11 U.S.C. §502(b)(1); (iii) that as a result of the cross-

---

[6] Lehman has also filed two Plans and Disclosure Statements; one set provided for the treatment of Voluntary Debtors, (the "Lehman VD Plan"), while the other involved the Trustee Debtors (the "Lehman Trustee Plan, collectively, the "Lehman Plans"), confirmation hearings for which are scheduled for October 24, 2011 through October 28, 2011.

indemnification liability, any cross-indemnification obligations are avoidable fraudulent transfers so that any claim derived from the obligation is subject to disallowance pursuant to 11 U.S.C. §502(d); and (iv) the VD Plan Proponents assert that certain of Bond Safeguard's Claims should be disallowed because they are duplicative and overlap.

<div align="center">

**III.**

**ARGUMENT**

</div>

A. **BOND SAFEGUARD'S BALLOTS SHOULD BE COUNTED AS ORIGINALLY CAST**

1. **The Claim Objection Does Not Disqualify Bond Safeguard's Ballots as Submitted on September 19, 2011Because the Claims Are Allowed Claims as of the Voting Record Date**

As noted above, the Claim Objection is untimely and extremely prejudicial to Bond Safeguard. The VD Plan Proponents have suggested to Bond Safeguard, through the respective parties' counsel, that even though there is no hearing date set for this Court to consider the Claim Objection, that the Claim Objection allows for the VD Plan Proponents to disqualify Bond Safeguard's ballots that were submitted <u>rejecting</u> the VD Plans in accordance with 11 U.S.C. §1126(a). It was further suggested that to the extent Bond Safeguard elected to seek to have its Claims temporarily allowed, that Bond Safeguard was required to file and serve the instant Motion by no later than September 26, 2011, seven (7) days later. This date is generated from the Order (A) Approving Plan Solicitation, Notice and Voting Procedures and (B) Establishing Deadlines in Connection with Solicitation and Confirmation with Respect to All Pending Plans, entered in these Jointly Administered cases on August 1, 2011 at Docket No. 2453 (the "Solicitation Order"). A copy of the Solicitation Order is attached to the RJN at Exhibit "A".

It is submitted that the Claim Objection was filed after the Voting Record Date provided for in connection with the VD Plans, so that the Claim Objection should not serve to disqualify Bond Safeguard's Ballots.

Notably, the first Ordered paragraph of the Solicitation Order specifically states "1. **Date of Entry of this Order.** The date of entry of this Order shall be the "Voting Record Date" for

1    purposes of this Order." *See* Solicitation Order, p. 4, lines 8-9.  It is well-established that the

2    Voting Record Date is intended to set the date for establishing, *inter alia*, the pool of creditors that

3    hold allowed claims.  Allowed claims are determined by application of section 502(a) of the

4    Bankruptcy Code which provides that "[a] claim or interest, proof of which is filed under section

5    501 of this title, **is deemed allowed**, unless a party in interest . . . objects."  11 U.S.C. §502(a)

6    (emphasis added).

7           In this case, as of the Voting Record Date of August 1, 2011, Bond Safeguard's claims were

8    "deemed allowed" because they were not the subject of an objection as of August 1, 2011.  Thus,

9    the Ballots submitted by Bond Safeguard are to be included in the VD Plan Proponents' Ballot

10   Summary and any submission to the contrary must be disregarded.

11          **2.      The Claim Objection Was Untimely and is Prejudicial**

12          As previously discussed, the Claim Objection was filed only <u>AFTER</u> Bond Safeguard's

13   Ballots were received by counsel for the Voluntary Debtors.  Indeed, as evidenced by the Federal

14   Express receipt attached to the Collins Declaration, counsel for the Voluntary Debtors received the

15   packet containing Bond Safeguard's Ballots on September 19, 2011 at 9:24 a.m.  A copy of the

16   Federal Express receipt that was sent from Harris Beach PLLC to PJ Marksbury, Legal Asst.,

17   Winthrop Couchet [sic] Professional Corp., 660 Newport Center Dr. FL4, Newport Beach, CA

18   92660 is attached to the Collins Declaration as Exhibit "G".  Whereas, the Claim Objection was not

19   filed with the Court until 2:39 p.m. on September 19, 2011.  A copy of the face page only of the

20   Claim Objection, with the ECF filing information including, date, time and Docket Number is

21   attached to the RJN as Exhibit "A".  It is manifestly unfair for a plan proponent to wait until after it

22   receives a vote rejecting its plan to file a claim objection that would effectively disqualify the vote

23   that does not accept its plan.

24          Moreover, the VD Plan Proponents have claimed that the instant Motion was required to be

25   filed by September 26, 2011 pursuant to the terms of the Solicitation Order at page 6, paragraph 8.

26   However, assuming *arguendo* that the September 26, 2011 date is binding, then the VD Plan

27   Proponents should be bound by the August 25, 2011 date which is discussed in the Solicitation

28

1    Order in two separate places.  First, August 25, 2011 is identified as the date by which the Plan

2    Proponents were required to serve all creditors "that have filed proofs of claim against the

3    applicable debtor on or before the Voting Record Date, excluding parties that filed Claims that

4    have been disallowed prior to the Solicitation Date." *See* Solicitation Order, p. 4, lines 24-26.

5        Second, pages 7-8 of the Solicitation Order contain language that was to be included in the

6    ballots.  Specifically, the ballot was to include a statement advising creditors that a vote would not

7    be counted if the creditor's claim, *inter alia*, was "subject to a pending objection filed by August

8    25, 2011".  *See* Solicitation Order, p. 8, lines 4-5.  While it is questionable whether this specific

9    language applied only to ballots to be generated in connection with the Lehman/Trustee Sponsored

10   Plans, it is more than reasonable to conclude that all of the terms in the Solicitation Order were

11   intended to apply to all Plan Proponents, to avoid exactly what has occurred here, significant

12   prejudice to creditors that would otherwise hold allowed claims as of the Voting Record Date,

13   especially in light of the fact that the VD Plan Proponents served the full Solicitation Order on all

14   creditors as a designated part of their solicitation packet.  A copy of the Notice to Creditors and

15   Parties in Interest of Hearing on Confirmation of SunCal Plan Proponents Chapter 11 Plans of

16   Reorganization that accompanied all of the Amended Plans is attached to the RJN as Exhibit "I".

17       **3.    The Claim Objection Does Not Comply with the Bankruptcy Rules and Local**
18           **Rules**

19       Furthermore, this Motion is essentially an abbreviated response to the Claim Objection,

20   which has not provided Bond Safeguard with the thirty (30) day timeframe prescribed by the

21   Bankruptcy Rules.[7]  *See* Fed. R. Bankr. P. 3007(a); Local Bankruptcy Rule 3007-1 (b)(1).  Failure

22   on the part of the VD Plan Proponents to comply with even the minimum required timeframes and

23   due process, should result in either the allowance and tabulation of Bond Safeguard's original

24   ballots timely sent to Debtors' counsel, or this Motion being granted and an estimation of Bond

25   Safeguard's claims as set out herein.

26

27   ───────────────────

28   [7]  Bond Safeguard expressly reserves its right to fully respond to the Claim Objection at the appropriate time, after a
     hearing has been set, in accordance with this Court's Local Rules.

## B.    THE CLAIMS SHOULD BE TEMPORARILY ALLOWED PURSUANT TO BANKRUPTCY RULE 3018

Pursuant to Bankruptcy Code section 1126(a), only a claimant whose claim is "allowed under section 502(a) . . . may accept or reject a plan." 11 U.S.C. §1126(a). As noted above, Section 502(a) of the Bankruptcy Code provides that a claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a). Bankruptcy Rule 3018(a) however, provides that "notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount with the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a); see also Pension Benefit Guaranty Corp. v. Enron Corp., 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004) (discussing Rule 3018 and stating "the rule 'specifically and elastically provides that a court may, for the purposes of voting, temporarily allow a claim or interest *in an amount which the court deems proper*.'") (quoting In re Johns-Manville Corp., 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986), aff'd 78 B.R. 407 (S.D.N.Y. 1987), aff'd 843 F.2d 636 (2d Cir. 1988)) (emphasis added).

Courts have recognized that "[t]he temporary allowance of claim for voting purposes is left to the sound discretion of the court to reasonably 'employ whatever method is best suited to the circumstances of the case.'" Id. (quoting In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996)). In connection with this analysis, Courts have set out certain non-exclusive factors to be reviewed in applying Bankruptcy Rule 3018(a). These factors include: (i) the timeliness of the claim objection; (ii) the potential that adjudication of the objection would delay the administration of the case; and (iii) the merits of the claim objection. In re Armstrong, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003), aff'd 97 Fed. Appx 285 (10th Cir. 2004).

The purpose of Bankruptcy Rule 3018(a) is to assess the probabilities of the claim, and not to make a definite finding of fact as to merits the claim. In re Adelphia Business Solutions, Inc., 341 B.R. 415, 424 (Bankr. S.D.N.Y. 2003); Ralph Lauren Womenswear, 197 B.R. at 775.

In determining whether to temporarily allow a claim, it has been found that where time constraints would prevent a court from fully considering the claim objection prior to confirmation, "it would be grossly unfair and unjust to disenfranchise any claim or interest just because the debtor

interposed an objection to the allowance of the claim or interest." In re Gardinier, Inc., 55 B.R.

601, 604 (Bankr. M.D. Fla. 1985).

In accordance with Bankruptcy Rule 3018, Bond Safeguard seeks as alternative relief, the

temporary allowance of its claims as follows:

| Voluntary Debtors | Case Number | Claim No. | Date Filed | Amount |
|---|---|---|---|---|
| Palmdale Hills Property, LLC | 8:08-17206 ES | 107-2 (amends 107-1 which amends #87) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Bickford Ranch, LLC | 8:08-17231 ES | 24-3 (amends 24-1) | 9/26/2011 | $11,332,789.76 plus any future claims |
| Acton Estates LLC | 8:08-17236 ES | 7-2 (amends 7-1) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SJD Partners, Ltd. | 8:08-17242 ES | 42-2 (amends 42-1) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SCC Communities, LLC | 8:08-17573 ES | 4-3 (amends 4-1) | 9/26/2011 | $11,332,789.76 plus any future claims |
| Trustee Debtors | Case Number | Claim No. | Date Filed | Amount |
| LBL-SunCal Oak Valley, LLC | 8:08-17404 ES | 42-3 (amends 42-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Heartland, LLC | 8:08-17407 ES | 29-4 (amends 29-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| LBL-SunCal Northlake, LLC | 8:08-17408 ES | 16-3 (amends 16-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Marblehead, LLC | 8:08-17409 ES | 70-4 (amends 70-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Century City, LLC | 8:08-17458 ES | 21-5 (amends | 9/26/2011 | $11,332,789.76 plus any future claims |

| | | 21-3) | | |
|---|---|---|---|---|
| SunCal PSV, LLC | 8:08-17465 ES | 59-4 (amends 59-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| Delta Coves Venture, LLC | 8:08-17470 ES | 33-4 (amends 33-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Torrance, LLC | 8:08-17472 ES | 12-3 (amends 12-2) | 9/26/2011 | $11,332,789.76 plus any future claims |
| SunCal Oak Knoll, LLC | 8:08-17588 ES | 33-3 (amends 33-2) | 9/26/2011 | $11,332,789.76 plus any future claims |

Copies of the amended claims are attached to the RJN as Exhibit "C".

Granting this requested relief is consistent with the case law given the fact that the requisite thirty (30) day notice of the hearing on the Claim Objection cannot be given prior to the commencement of the Confirmation Hearing on October 24, 2011. *See* Fed. R. Bankr. P. 3007(a) (requiring "[a] copy of the objection <u>with notice of the hearing thereon</u> shall be mailed or otherwise delivered to the claimant, . . . at least 30 days prior to the hearing.") (emphasis added). Bond Safeguard is entitled to participate in the voting process on the VD Plan Proponents' Plans, and should not be prejudiced by the untimely filing of the Claim Objection which the VD Plan Proponents knew could not be heard and decided prior to the Confirmation Hearing, and which was filed only after receiving Bond Safeguard's Ballots rejecting the VD Plans.

### C.    RESPONSE TO CLAIM OBJECTION

In order to provide a basis for estimating the Claims, it is necessary to address some of the issues raised by the VD Plan Proponents in the Claim Objection to demonstrate that the Claims should be allowed.

### 1.    <u>Section 502(e) Is Not Applicable to Bond Safeguard's Claims</u>

At the outset, the argument that the Claims should be disallowed on the basis that they are contingent claims subject to disallowance under 11 U.S.C. §502(e) should be rejected, particularly as it relates to the Damage Claims and the Indemnification Claims. As will be demonstrated, the Damage Claims and the Indemnification Claims are not contingent and moreover, do not meet the

1   elements outlined by the VD Plan Proponents for disallowance of the claim under §502(e) and

2   should be allowed as estimated.

3        As has been recognized, there are three elements for disallowance of the claim under

4   §502(e)(i)(B):

5        1)    The claim is for reimbursement or contribution;

6        2)    The party asserting the claim is liable with the Debtors on the claim of the Creditor;

7   and

8        3)    The claim is contingent at the time of allowance or disallowance.

9        While certain of the Claims of Bond Safeguard do arise pursuant to the Indemnity

10  Agreement, they do not fall within the meaning of §502(e)(1)(B).

11          a.    <u>The First Element For Disallowance Under §502(e)(1)(B) Is Not Satisfied</u>

12          <u>Because The Claim Is Not For Contribution Or Indemnification</u>

13       The Damage Claims and Indemnification Claims do not assert claims for indemnification as

14  contemplated by §502(e)(1)(B).    Indeed, it is well established that the purpose of Section

15  502(e)(1)(B) is to "protect the bankruptcy estate against the risk of double payment on claims.

16  Without it, a Debtor could be liable to the primary creditor as well as a co-liable parties seeking

17  contribution.  According to its legislative history, §502(e)(1) – 'adopts a policy that a surety's claim

18  for reimbursement or contribution is entitled to no better status than the claims of the creditor

19  assured by such surety.'"  H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963,

20  6499.

21       The legislative history further explains that:

22       The combined effect of Section §502(e)(1)(B) and 502(e)(2) is that a surety or
23       codebtor is generally permitted a claim for reimbursement or contribution to the
         extent that the surety or codebtor <u>has paid the assured party</u> at the time of
24       allowance.

25  H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6499 (emphasis

26  added).

27

28

For the majority of the Debtors, the claims that have been paid by Bond Safeguard that give rise to the Damage Claims and Indemnification Claims do not arise from any liability that directly result from bonds issued to Debtors.  In this case, the claims that Bond Safeguard has paid are actual and liquidated claims and the parties that have received payment have not sought payment from this Debtor. As such, the legislative history clearly supports this Court's finding that the first prong of section 502(e)(1)(B) is not satisfied.  Moreover, any ruling to the contrary would be entirely inconsistent with the stated purpose of section 502(e)(1).

        b.    <u>The Second Element For Disallowance Of The Claim Under §502(e)(1)(B) Is Not Satisfied Because The Claimants Are Not Co-liable With The Debtor On The Amounts Contained In The Underlying Claim</u>

As noted above, the second prong requires that the party asserting the claim, here, Bond Safeguard, "is liable with the Debtor on the claim of a creditor." 11 U.S.C. §502(e)(1).  In the majority of cases, Bond Safeguard has paid on claims made by creditors of other related debtors. Upon information and belief, the respective co-debtors do not create any co-liability for the debt that was paid.

In this case, Bond Safeguard is simply enforcing a contractual obligation of this Debtor arising from the Indemnity Agreement and while that liability may be categorized as an "indemnification obligation," it is nothing more than a contractual obligation of this Debtor arising from the Indemnification Agreement.

Accordingly, the second prong of §502(e)(1)(B) has not been met, so there is no basis for disallowance of the claim.

        c.    <u>The Third Element For Disallowance Of The Claims Under §502(e)(1)(B) Is Not Satisfied Because The Claim Is Not Contingent</u>

Finally, the claim of Bond Safeguard has been liquidated.  <u>See</u> Exhibit 9 to Campbell Declaration, RJN, Exhibit "D".  Accordingly, the Indemnification Claims are <u>no longer contingent</u> so that the third element of §502(e)(1)(B) fails.  Additionally, any attempt to challenge the amending of the Claims must be rejected.  Clearly, section 502(e)(2) contemplates the amendment

of original contingent claims to the liquidated amount on a post-petition basis. Specifically, section 502(e)(2) provides:

> A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

11 U.S.C. §502(e)(2).

"Thus, to the extent that the codebtor, surety or guarantor has made payment to the underlying creditor after the petition date, the codebtor's, surety's or guarantor's claim will be allowed or disallowed under section 502 as though it had become fixed before the filing of the petition for relief." 4 COLLIER ON BANKRUPTCY, ¶ 502.06[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). To the extent that section 502(e) does not apply, it is nevertheless well established that amendments to timely filed claims shall be allowed to permit the fixing of an amount of a pre-petition claim was contingent at the time of filing. In re Trans World Airlines, Inc., 145 F.3d 124, 140 (3d Cir. 1998); In re Orion Refining Corp., 317 B.R. 660, 664 (Bankr. D. Del. 2004); In re Andover Togs, Inc., 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999). Indeed, amendments to claims are permitted to "describe the claim with greater specificity or plead a new theory of recovery on facts of the original proof of claim." Orion, 317 B.R. at 664.

### 2.    The Indemnity Agreement is Binding on the Debtors

The VD Plan Proponents question the enforceability of the Indemnity Agreement as to the various Debtors. All of the Debtors are obligated under the Indemnification Agreement by virtue of the fact that both Elieff and Acquisitions had actual and apparent authority to execute the Indemnification Agreement and to bind the Debtors to the indemnification obligation.

The Indemnity Agreement is a contractual obligation that requires the Debtors in their capacities as a subsidiaries of Acquisitions to indemnify the Sureties from any and all losses incurred on any and all bonds.

The Indemnity Agreement was executed by Bruce Elieff as President of Acquisitions, as well as by Bruce Elieff and Kathy Elieff individually. At the signature of both of the Indemnity

1    Agreements attached to the Indemnity Claims, it is expressly stated that Acquisitions signed on

2    behalf of itself ". . . and all subsidiaries and affiliates now owned and/or hereafter created,

3    controlled, managed or acquired." This language that follows the signature in each Indemnity

4    Agreement signed by Bruce Elieff individually or as an officer of Acquisitions is contained in most

5    of the General Indemnity Agreements executed by Bond Safeguard's clients.

6        The understanding and meeting of the minds of the parties at the time of the execution of

7    the Indemnity Agreement is that each and every affiliate now owned or hereafter created,

8    controlled, managed or acquired, such as the Debtors became obligated to the terms. Such practice

9    is the standard in the industry and has been for the entire timeframe that the parties have been doing

10   business together. See Campbell Declaration, at ¶¶ 3-19, RJN, Exhibit "D".

11       Upon information and belief, at the time that the Indemnity Agreement was entered into,

12   Acquisitions was the parent or affiliate of the managing members of each Debtor and had both

13   actual and apparent authority to bind the Debtors to the terms of the Indemnity Agreement. It is

14   without question that the Debtors are subsidiaries or affiliates of Acquisitions.

15       It is well established that in enforcing a contract, courts look to the express language of the

16   agreement. "Contracts must be construed as a whole, to give effect to the intentions of the parties.

17   Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving

18   the language its ordinary and usual meaning." Northwestern Nat. Ins. Co. v. Esmark, Inc., 672

19   A.2d 41, 43 (Del. 1996) (enforcing indemnification provision in hold harmless agreement)

20   (citations omitted); see Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992)

21   (recognizing that "elementary canon on contract construction" is ascertaining the parties' intentions

22   from the language of the contract).

23       In this case, the Indemnity Agreement clearly and unambiguously provides for

24   indemnification from Acquisitions and all subsidiaries and affiliates. The Indemnity Agreement

25   states in relevant part:

26       WHEREAS, in the transaction of business, certain bonds, undertakings and other
         writings obligatory in the nature of a bond have heretofore been, and may hereafter
27       be, required by, for, or on behalf of the Indemnitor, and any of its affiliated entities,

28

and application has been made and will hereafter be made to the Company to execute such bonds, *and as a prerequisite to the execution of such bond or bonds, the Company requires indemnification*." (emphasis added).

Paragraph 2 of the Indemnification Agreement provides:

The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement.  In the event of payment by the Company, **the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and the Indemnitor's liability therefore to the Company**. (emphasis added).

Paragraph 3 provides:

If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

Paragraph 5 provides:

**The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.** (emphasis added).

Paragraph 12 provides:

This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may then be in force.

-18-

1    At no time did Bond Safeguard and Lexon receive any notice of termination as

2    provided by Paragraph 12 of the Indemnity Agreement from or on behalf of the Debtor.

3    Finally, Paragraph 19 provides:

4    THE INDEMNITORS HEREBY ACKNOWLEDGES THAT THIS AGREEMENT
     IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY
5    ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE
6    INDEMNITORS - SUCH APPLICATION TO BE CONSIDERED BETWEEN
     THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS
7    GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER
     EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS,
8    WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-
9    ADVENTURER), FROM TIME TO TIME AND OVER AN INDEFINITE
     PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN
10   ACCORDANCE WITH THE TERMS HEREOF.

11   The preceding paragraphs from the Indemnity Agreement generally set out the foundation

12   for the Indemnification Claims and the reason that each Debtor is primarily liable as an indemnitor

13   for its affiliated entities' claims.[8]   The clear and unambiguous language requires each Debtor to

14   indemnify the Sureties for payment of the claims that are contained in the Amended Claim.

15   The use of such cross-indemnities is recognized as an industry standard. If no cross-

16   indemnification existed, any developer could simply create new limited liability companies and

17   side-step the guaranty that is the back bone of the consideration for the issuance of the Bonds. See

18   Campbell Declaration, ¶¶ 7-19, RJN, Exhibit "D".

19   a.    Acquisitions had Actual Authority to Enter the Indemnity Agreement on
20         Behalf of the Debtors

21   Upon information and belief, at the time the Indemnification Agreement was executed in

22   both July 2007 and February 2008, Acquisitions was the parent of each Debtor and the parent or

23   affiliate of the day to day managers of each Debtor.  See, Debtors' Second Amended Joint Chapter

24   11 Plan, p. 3, lines 3-6, filed as Doc. No. 375, the relevant pages are attached to the RJN as

25   Exhibit "E", (defining "Acquisitions. SCC Acquisitions, Inc., a California corporation, an indirect

26

27   _____
     [8] The terms of the Indemnity Agreement also clearly demonstrate that while the Debtors or Trustee may request certain
     back-up documentation to verify the amounts paid; it is not entitled to question the Sureties' decisions to settle certain
28   of the matters.

1   parent company of all of the Debtors, a purported Bond Obligor with corresponding indemnity

2   rights against the Debtors for the Alleged Bond Obligation, a Creditor of all of the Debtors, a Plan

3   Proponent for the Trustee Debtors, and the Plan Sponsor.")

4        The fact that no individual Debtor signed the Indemnity Agreement is of no moment.  It has

5   been held that "a party's signature may be prima facie evidence of that party's assent to the

6   contract; however, a signature is not required."  In re Washington Mutual, Inc., 421 B.R. 143, 148

7   (Bankr. D. Del. 2009) (citations omitted).  An agent, acting on behalf of its principal, can bind that

8   principal as long as the agent had actual or apparent authority to act.  Id.  "Actual agency is created

9   by 'written or spoken or other conduct of the principal which, reasonably interpreted, causes the

10  agent to believe that the principal desires him so to act on the principal's account.'"  Id.

11       As the parent of the Debtors, Acquisitions had actual authority to bind the Debtors to the

12  terms of the Indemnity Agreement.

13           b.    Acquisitions had Apparent Authority to Enter the Indemnity Agreement on
14                 behalf of the Debtors

15       Assuming arguendo that Acquisitions did not have actual authority to bind the Debtors to

16  the Indemnity Agreement, Acquisitions nevertheless acted as if it had apparent authority to execute

17  the Indemnity Agreement in its capacity as itself, and on behalf of, the Debtors, so that there are no

18  grounds to permit the Debtors to escape from the underlying obligations of the Indemnity

19  Agreement.

20       Recently the Delaware Bankruptcy Court decided a similar issue of whether terms

21  contained in an agreement entered into by the president of a Debtor and related entity would bind

22  both parties.  Wachovia Bank, N.A. v. WL Homes, LLC (In re WL Homes, LLC), 452 B.R. 138

23  (Bankr. D. Del. 2011).

24       The Court held:

25       Even though Mr. Stelmar signed the Loan Letters **on behalf of [the Debtor], his
26       concurrent position as president of [the related entity] cannot be overlooked.**
         Courts have held that "[i]f the president, vice-president or director of a corporation
27       has knowledge or notice of a fact, knowledge or notice of that fact is generally
         imputed to the corporation." In re Pubs, Inc. of Champaign, 618 F.2d 432, 438 (7th
28

Cir. 1980) (citations omitted). <u>See also</u> <u>Buchanan v. Reliance Ins. Co. (In re Color Tile Inc.)</u>, 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the principal.") (citing <u>Am. Sur. Co. v. Pauly,</u> 170 U.S. 133, 153 (1898)). Therefore, Mr. Stelmar's knowledge of [the Debtor's] pledge of the [related entity's] Account as security to Wachovia may be properly imputed to [the related entity], such that [the related entity] is chargeable with Mr. Stelmar's knowledge as of such pledge.

<u>WL Homes</u>, 452 B.R. at 147 (emphasis added).

The WL Homes Court then discussed the concept of apparent authority and stated:

Moreover, as in [<u>Merchants Bank v. Atchison (In re Atchison)</u>, 832 F.2d 1236, 1239 (11th Cir. 1987)], Mr. Stelmar's signature on behalf of [the Debtor] is further evidence of his consent to such an arrangement on behalf of [the related entity]. Under the doctrine of apparent authority, Wachovia was entitled to believe that Mr. Stelmar had the requisite authority to consent to and reaffirm [the Debtor's] pledge of the [the related entity's] Account on behalf of [the related entity]. The Third Circuit has cautioned that "[a]pparent authority can exist only to the extent that it is reasonable for the third party dealing with the agent to believe the agent is authorized." <u>Burtch v. Ganz (In re Mushroom Transp. Co.)</u>, 382 F.3d 325, 345 (3d Cir. 2004) (internal quotation marks omitted) (citation omitted). <u>See also</u> <u>Universal Computer Sys., Inc. v. Med. Servs. Ass'n of Pa.</u>, 628 F.2d 820, 823 (3d Cir. 1980) ("The test for determining whether an agent possesses apparent authority is whether `a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.'" (citation omitted).

<u>Id.</u>

Apparent authority is established when (1) the corporation's conduct through its officers and directors leads the plaintiff to believe that the individual has authority to issue a guarantee; and (2) plaintiff's reliance on the appearance of authority is reasonable. <u>Lehman Bros., Inc. v. Tutelar Cia Financiera, S.A.</u>, 95-CV-3772, 1997 WL 403463, at *4 (S.D.N.Y. July 17, 1997). The policy underlying the concept of apparent authority has been explained by the Second Circuit as:

Whether termed "apparent authority" or an "estoppel" to deny authority, many courts have noted the injustice caused by the practice of permitting corporations to act commonly through their executives and then allowing them to disclaim an agreement as beyond the authority of the contracting officer, when the contract no longer suited [their] convenience.

1   Lee v. Jenkins Bros., 268 F.2d 357, 370 (2nd Cir. 1959).  By recognizing Acquisitions' apparent

2   authority to enter into the Indemnification Agreement, the underlying policy of ensuring against

3   improper actions by corporate officers and directors of disclaiming contracts when the contract no

4   longer suits their purpose is furthered.

5       Acquisitions as the parent, was clearly vested with apparent authority to bind the Debtors to

6   the terms of the Indemnity Agreement.  Indeed, apparent authority "bars a corporation from

7   disavowing the transactions of its authorized agent. . . ."  Utica Mutual Insurance Co. v. Fireman's

8   Fund Ins. Cos., 613 F. Supp. 1134, 1138 (S.D.N.Y. 1985); see also Glyfada Seafaring Corp. v.

9   Fillmore Shipping Ltd., 685 F. Supp. 40, 43 (S.D.N.Y. 1987).

10      Given that hundreds of bonds have been issued to Acquisitions, and/or is various affiliates

11  and subsidiaries, which were issued in reliance on the existence of the Indemnity Agreement, it was

12  reasonable for the Sureties to believe that Acquisitions was acting in the Debtors' usual manner of

13  conducting business.  Accordingly, it is reasonable for this Court to consider the Indemnification

14  Claims and Damage Claims for estimation purposes.

15      **3.    The Indemnity Agreement Did Not Constitute Avoidable Fraudulent Transfers**

16      The VD Plan Proponents also contend that the Claims should be disallowed under Section

17  502(d) of the Bankruptcy Code on the basis that the Indemnification Agreement constitutes

18  avoidable fraudulent transfers.

19      In asserting this argument, the VD Plan Proponents appear to believe that they have stated a

20  *prima facie* claim that the incurrence of contingent liability through the Indemnification Agreement

21  constitutes fraudulent transfers that are subject to avoidance.  This is not the case.  In fact, as will

22  be more fully discussed in the Response to the Claim Objection, it is well established that

23  indemnification agreements and inter-corporate guarantees are common practice for most

24  commercial financial transactions, particularly where surety bonds are involved and the Debtors

25  received benefits that constitute reasonably equivalent value.  See Campbell Declaration, ¶¶ 7-18,

26  RJN, Exhibit "D".

27

28

1    It is recognized that both the Bankruptcy Code section 548(a)(1) and the California Civil

2    Code sections 3439.04 and 3439.05 contain fraudulent transfer statutes that set out the scheme for

3    avoiding fraudulent transfers.  A claim under these fraudulent transfer statutes generally require: (a)

4    a transfer to have been made within the timeframe set out in the statute; (b) that the Debtor did not

5    receive reasonably equivalent value in connection with the transfer, and (c) that the Debtor was

6    insolvent at the time of the transfer or was rendered insolvent as a result of the transfer.  The

7    plaintiff must prove all three elements.

8    The VD Plan Proponents claim, *inter alia*, that the Debtors received less than reasonably

9    equivalent value as a result of the assumption of the contingent liability related to the

10    Indemnification Agreement; this is inaccurate.    Inter-corporate guarantees similar to the

11    indemnification obligations required by Bond Safeguard are common-place, and are in fact required

12    in this type of development operation, so that challenges to the contingent liabilities as fraudulent

13    conveyances has been rejected.  In instances where there is "a consolidated enterprise that was

14    interdependent both in terms of structure and flow of money", inter-corporate guarantees were

15    found to provide indirect benefits and were not avoidable as fraudulent transfers.  See 3V Capital

16    Master Fund Ltd. v. Official Committee of Unsecured Creditors (In re Tousa), 444 B.R. 613, 624

17    (S.D. Fla. 2011).

18    The Debtors received reasonably equivalent value as a result of the Indemnification

19    Agreement, so that the Indemnity Agreement is enforceable as to all Debtors. Here, it is clear that

20    the Debtors received both direct and indirect benefits from the Indemnity Agreement, including but

21    not limited to the issuance of the Bonds to the various debtors.  As has been shown, absent the

22    execution of the Indemnity Agreement, the bonds would not have been issued to the Debtors, and

23    the Bonds are generally prerequisites to the Development Agreements for the Projects.  Thus, upon

24    the receipt of the Bonds by the sister entities, each affiliate received indirect benefits that

25    constituted reasonably equivalent value.  Mellon Bank, N.A. v. Metro Communications, Inc., 945

26    F.2d 635 at 646 (3d Cir. 1991)(noting that while the guarantor did not necessarily receive any

27

28

-23-

1    "direct benefits from extending the guarantee and security interest collateralizing the guarantee..."

2    indirect benefits may also be evaluated.").

3        The recent decision in <u>Tousa</u> from the District Court in the Southern District of Florida is

4    instructive in its analysis of reasonably equivalent value in connection with a multi-party

5    transaction such as this.   The <u>Tousa</u> bankruptcy court had held that a group of lenders received

6    constructively fraudulent transfers based on: (i) obligations incurred by subsidiaries to the lenders

7    in connection with "new" loans; (ii) liens on the subsidiaries assets for the restructured loans; and

8    (iii) receipt of $421 million in loan repayments pursuant to a settlement agreement.

9        In reversing the Bankruptcy Court, the District Court rejected a narrow definition of "value"

10    that excluded "economic benefits" and identified the holding in <u>R.M.L.</u> to be the "guidepost" on

11    what constitutes reasonably equivalent value.   <u>Tousa</u>, 444 B.R. at 655-56 (quoting <u>Mellon Bank</u>

12    <u>N.A. v. Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L. Inc.)</u>, 92 F.3d

13    139, 148 (3d Cir. 1996)).   Instead it was noted that several courts have held that an opportunity to

14    receive an economic benefit and to "produce a strong synergy for the enterprise" constitutes 'value'

15    under the Code."   See <u>Tousa</u>, 444 B.R. at 660.

16        <u>Tousa</u> conducted a thorough analysis of the various cases to find that "the weight of

17    authority supports the view that indirect, intangible, economic benefits, including the opportunity to

18    avoid default, to facilitate the enterprises's rehabilitation, and to avoid bankruptcy even if provided

19    to be short lived, may be considered in determining reasonable equivalent value.   <u>Tousa</u>, 444 B.R.

20    at 660.   The Court applied the "totality of the circumstances test", which consists of "(1) whether

21    the transaction was at arm's length; (2) whether the transferee acted in good faith, and (3) the

22    degree of difference between the fair market value of the assets transferred and the price paid" was

23    identified as the necessary analysis for determining reasonably equivalent value.   <u>Id.</u> at 662 (citing

24    <u>R.M.L.</u>, 92 F.3d at 145).   The Court held that "this is exactly the kind of case, as supported with

25    applicable case law, that shows that a debtor's opportunity to avoid default, to facilitate its

26    rehabilitation, and to improve its prospects of avoiding bankruptcy are precisely the kind of benefits

27    that, by definition, are not susceptible to exact quantification but are nonetheless legally cognizable

28

1    under Section 548.    Inherently, these benefits have immense economic value that ensure the

2    debtor's net worth has been preserved, and . . . were not disproportionate between what was given

3    up and what was received." Id. at 666.

4        Similar to the loans and corresponding guarantees in Tousa, in order for the Debtors to have

5    operated and developed their respective projects, it was necessary to obtain surety bonds, which in

6    turn required to execution of the Indemnity Agreement.    Accordingly, it is unquestionable that

7    direct and indirect benefits were received by the Debtors from the Bonds.    Given that reasonably

8    equivalent value was received by each Debtor, the VD Plan Proponents are not able to establish a

9    *prima facie* claim for avoidable transfers sufficient to disallow the Claims pursuant to 11 U.S.C.

10   §502(d).[9]

11   <div align="center">**IV.**</div>

12   <div align="center">**CONCLUSION**</div>

13       It is clear that Bond Safeguard's Ballots as originally cast are valid and should not be

14   disqualified.    Thus, this Court should enter an Order directing that Bond Safeguard's Ballots should

15   be counted in the VD Plan Proponents' Ballot Summary; in the alternative, Bond Safeguard's

16   Claims should be estimated as set out herein, and Bond Safeguard should be granted such other and

17   further relief as this Court deems just and proper.

18

19

20   DATED: September 26, 2011          BROKER & ASSOCIATES

21                            PROFESSIONAL CORPORATION

22                            -and-

23                            HARRIS BEACH PLLC

24                            By: _____

25                                 Jeffrey W. Broker

26                                 Attorneys for Bond Safeguard Insurance Co.

                              and Lexon Insurance Co.

27

28   _____

[9]  It is also recognized that a determination of what constitutes reasonably equivalent value is a fact-specific analysis that cannot be established simply upon the VD Plan Proponents' pleadings. Tousa, 444 B.R. at 655.

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br><div align="right">Debtors.</div> | CHAPTER 11<br><br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION OF BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO. (I) TO ALLOW BALLOTS CAST BY BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO. AS TO VD PLAN PROPONENTS' PLANS; OR (II) PURSUANT TO BANKRUPTCY RULE 3018(a) FOR TEMPORARY ALLOWANCE OF THEIR CLAIMS SOLELY FOR PURPOSES OF VOTING ON THE VOLUNTARY DEBTORS' PROPOSED PLANS OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 26, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On September 26, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Erithe Smith, 411 West Fourth Street, Suite 5041, Santa Ana, CA 92701-4593 [VIA OVERNIGHT DELIVERY]
United States Trustee, 411 West Fourth Street, Suite 9041, Santa Ana, CA 92701-4593 [VIA U.S. MAIL]

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 26, 2011 | Barbara Jean Little-Raphael | *(signature)* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9013-3.1**

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br><div align="right">Debtors.</div> | CHAPTER  11<br><br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

## I.  **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                                                      **F 9013-3.1**

| In re:                                                              |                  |
| PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS | CHAPTER 11 |
|                                             Debtors. | CASE NUMBER 8:08-bk-17206-ES |

- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                    F 9013-3.1

| In re:<br>PALMDALE HILLS PROPERTY, LLC and ALL RELATED DEBTORS<br><div align="right">Debtors.</div> | CHAPTER 11<br><br>CASE NUMBER 8:08-bk-17206-ES |
|---|---|

- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**