1  RONALD RUS, #67369
   rrus@rusmiliband.com
2  JOEL S. MILIBAND, #77438
   jmiliband@rusmiliband.com
3  LAUREL R. ZAESKE, #138510
   lzaeske@rusmiliband.com
4  CATHRINE M. CASTALDI, #156089
   ccastaldi@rusmiliband.com
5  RUS, MILIBAND & SMITH
   A Professional Corporation
6  Seventh Floor
   2211 Michelson Drive
7  Irvine, California 92612
   Telephone:  (949) 752-7100
8  Facsimile:  (949) 252-1514

9  Attorneys for SunCal Management, LLC

10            UNITED STATES BANKRUPTCY COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                 SANTA ANA DIVISION

13  In re                              CASE NO. 8:08-bk-17206-ES

14  PALMDALE HILLS PROPERTY, AND ITS    Chapter 11
    RELATED DEBTORS,                    Jointly Administered With Case Nos.:
                                        8:08-bk-17209-ES; 8:08-bk-17240-ES;
15         Jointly Administered Debtors  8:08-bk-17224-ES; 8:08-bk-17242-ES;
           and Debtors-in-Possession.   8:08-bk-17225-ES; 8:08-bk-17245-ES;
16                                      8:08-bk-17227-ES; 8:08-bk-17246-ES;
                                        8:08-bk-17230-ES; 8:08-bk-17231-ES;
17  Affects:                            8:08-bk-17236-ES; 8:08-bk-17248-ES;
       ☐    All Debtors                 8:08-bk-17249-ES; 8:08-bk-17573-ES;
18     ☐    Palmdale Hills Property, LLC  8:08-bk-17574 ES; 8:08-bk-17575-ES;
       ☐    SunCal Beaumont Heights, LLC  8:08-bk-17404-ES; 8:08-bk-17407-ES;
19     ☐    SCC/Palmdale, LLC           8:08-bk-17408-ES; 8:08-bk-17409-ES;
       ☐    SunCal Johannson Ranch, LLC  8:08-bk-17458-ES; 8:08-bk-17465-ES;
20     ☐    SunCal Summit Valley, LLC   8:08-bk-17470-ES; 8:08-bk-17472-ES; and
       ☐    SunCal Emerald Meadows LLC  8:08-bk-17588-ES
21     ☐    SunCal Bickford Ranch, LLC
       ☐    Acton Estates, LLC
22     ☐    Seven Brothers LLC          MOTION TO ESTIMATE CLAIM OF
       ☐    SJD Partners, Ltd.          SUNCAL MANAGEMENT, LLC, FOR
23     ☐    SJD Development Corp.        VOTING PURPOSES AND
       ☐    Kirby Estates, LLC          CLASSIFYING SUNCAL'S CLAIM AS A
24     ☐    SunCal Communities I, LLC   CLASS 6 CLAIM IN LEHMAN'S THIRD
       ☐    SunCal Communities III, LLC  AMENDED JOINT CHAPTER 11 PLAN
25     ☐    SCC Communities LLC         FOR EIGHT TRUSTEE DEBTORS;
       ☐    North Orange Del Rio Land, LLC  MEMORANDUM OF POINTS AND
26     ☐    Tesoro SF LLC               AUTHORITIES; DECLARATIONS OF
       ☐    LBL-SunCal Oak Valley, LLC  FRANK FAYE AND TOM ROLLINS IN
27                                      SUPPORT THEREOF
    *Caption Continued on Next Page*
28                                      [RE LB/L-SUNCAL NORTHLAKE, LLC]

464501v1 LRZ 9/25/11 1 (2882-0001)

| | |
|---|---|
| ☐ | SunCal Heartland, LLC |
| ☒ | LBL-SunCal Northlake, LLC |
| ☐ | SunCal Marblehead, LLC |
| ☐ | SunCal Century City, LLC |
| ☐ | SunCal PSV, LLC |
| ☐ | Delta Coves Venture, LLC |
| ☐ | SunCal Torrance Properties, LLC |
| ☐ | SunCal Oak Knoll, LLC |

JUDGE:    Hon. ERITHE A. SMITH
DATE:     October 24, 2011
TIME:     9:30 a.m.
CRTRM.:   5A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

# **TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION ............................................................................................. 3

2.  JURISDICTION AND VENUE ....................................................................... 4

3.  STATEMENT OF FACTS ............................................................................... 4

    A.  Bankruptcy Filing ................................................................................. 4

    B.  The Proof of Claims ............................................................................ 5

    C.  The Objection ...................................................................................... 5

4.  SUNCAL'S CLAIM SHOULD BE TEMPORARILY ALLOWED FOR VOTING
    PURPOSES ...................................................................................................... 6

5.  SUNCAL'S CLAIM SHOULD BE ALLOWED IN THE AMOUNT OF
    $896,008.98 ..................................................................................................... 6

    A.  SunCal Provided Valuable Pre-Petition Management And Development
        Services To The Debtor ......................................................................... 6

        (1)  SunCal Is Entitled To An Allowed Claim For Its Unpaid
                Management Fees .................................................................. 9

        (2)  Project Staff Costs ................................................................ 10

        (3)  Legal Staff Costs .................................................................. 10

        (4)  Insurance Costs ..................................................................... 11

        (5)  Employee Expense Reimbursement ...................................... 11

    B.  The Debtor Had An Implied Contract With SunCal To Pay For The
        Services And Costs SunCal Provided ................................................... 12

    C.  Alternatively, SunCal's Claim Should Be Estimated At The Amount Of The
        Claim Under Theories Of *Quantum Meruit* And Unjust Enrichment .................... 13

6.  THE COURT SHOULD CLASSIFY THE SUNCAL CLAIM AS A CLASS 6
    CLAIM UNDER THE LEHMAN PLAN ....................................................... 14

7.  CONCLUSION ............................................................................................... 17

DECLARATION OF FRANK FAYE ........................................................................ 18

DECLARATION OF TOM ROLLINS ...................................................................... 20

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Armstrong v. Rushton (In re Armstrong),*
   294 B.R. 344 (B.A.P. 10th Cir. 2003) ............................................................. 6

*Bittner v. Borne Chem. Co., Inc.,*
   691 F.2d 134 (3rd Cir. 1982) ...................................................................... 12

*In re Barakat,*
   99 F.3d 1520 (9th Cir. 1996) ...................................................................... 15

*In re Baseline-Dobson Center,*
   193 B.R. 284 (Bankr. D. Ariz. 1994) ............................................................ 15

*In re Branding Iron Steak House,*
   536 F.2d 299 (9th Cir. 1976) ...................................................................... 16

*In re Central Pacific Boiler & Piping, Ltd.,*
   81 B.R. 40 (Bankr.D.Haw. 1987) ................................................................. 16

*In re Corey,*
   892 F.2d 829 (9th Cir. 1989) ...................................................................... 12

*In re De Laurentiis Entertainment Group,*
   963 F.2d 1269 (9th Cir. 1992) .................................................................... 13

*In re First Magnus Fin. Corp.,*
   208 WL 450447 at *6 (Bankr. D. Ariz. Feb. 15, 2008) .................................... 15

*In re Frascella Enters, Inc. (In re Frascella),*
   360 B.R. 435 (Bankr. E.D. Pa. 2007) ............................................................. 6

*In re Goldstein,*
   114 Bankr. 430, 432 (Bankr. E.D. Pa. 1990) .................................................. 6

*In re Lake Country Investments,*
   2001 WL 267475 (Bankr.D.Idaho 2001) ...................................................... 16

*In re Montclair Retail Center,*
   177 B.R. 663 (9th Cir. BAP 1995) ............................................................... 15

*In re: Nutritional Sourcing Corp.,*
   398 B.R. 816 (Bankr. Del. 2008) ................................................................. 14

*Matter of Brints Cotton Marketing, Inc.,*
   737 F.2d 1338(5th Cir. 1984) ..................................................................... 12

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

**STATE CASES**

*Gray v. Whitmore*
   (1971) 17 Cal. App. 3d 1 ................................................................................................ 13

*Haggerty v. Warner*
   (1953) 115 Cal. App. 2d 468 .......................................................................................... 13

*Huskinson & Brown, LLP v. Wolf*
   (2004) 32 Cal. 4th 453 .................................................................................................... 14

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

11 U.S.C. § 101 ................................................................................................................. 15

11 U.S.C. § 502 ................................................................................................................... 4

11 U.S.C. § 510(c) ............................................................................................................. 16

11 U.S.C. § 1122 ............................................................................................................ 4, 14

11 U.S.C. § 1123(a)(4) .................................................................................................... 4,14

28 U.S.C. § 157 ................................................................................................................... 4

28 U.S.C. § 157(b) .............................................................................................................. 4

28 U.S.C. § 1334 ................................................................................................................. 4

28 U.S.C. § 1408 ................................................................................................................. 4

28 U.S.C. § 1409 ................................................................................................................. 4

Federal Rules of Bankruptcy Procedure, Rule 3018 .................................................... 3, 4

Federal Rules of Bankruptcy Procedure, Rule 3018(a) ............................................... 6, 17

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY COURT

2  JUDGE, THE DEBTOR, THE CHAPTER 11 TRUSTEE, AND OTHER INTERESTED

3  PARTIES AND THEIR COUNSEL OF RECORD:

4       SunCal Management, LLC ("SunCal"), unsecured creditor and administrative priority

5  claimant of the jointly administered debtors (collectively, the "Debtors" or the "Estates"), submits

6  this Motion for an Order estimating SunCal's Claim No. 1-2, filed on June 13, 2011, against

7  LBL-SunCal Northlake, LLC, for purposes of voting on the Third Amended Joint Chapter 11 Plan

8  For Eight Trustee Debtors[1] Proposed By The Trustee And Subject Lehman Creditors (dated

9  August 23, 2011) [Docket No. 2595] (the "Lehman Plan"). SunCal further seeks an Order

10  classifying the Claim as a Class 6 claim under the Lehman Plan.

11  1.    INTRODUCTION

12       SunCal requests that the Court allow Claim No. 1-2 (the "Claim"), filed on June 13, 2011,

13  against LBL-SunCal Northlake, LLC ("Debtor") in the amount of $896,008.98, for voting

14  purposes with respect to the Lehman Plan. A hearing on confirmation of the Lehman Plan with

15  respect to the Debtor is scheduled on October 24, 2011 (the "Plan Confirmation Hearing"). Due to

16  the filing of an objection to the Claim by the Lehman Entities[2] and Steven M. Speier, the Chapter

17  11 Trustee for the Trustee Debtors, SunCal may not be eligible to vote on the Lehman Plan unless

18  the Court temporarily allows the Claim for voting purposes pursuant to Rule 3018 of the Federal

19  Rules of Bankruptcy Procedure ("Rule 3018"). SunCal performed valuable pre-petition services

20  and advanced costs in managing and developing the Debtor's real property that remain unpaid.

21  SunCal is entitled to a Claim in the amount of such services and unreimbursed costs.

22       The Court has scheduled a continued status conference in connection with the objection to

23  the Claim filed by the Lehman Entities and the Trustee for November 15, 2011. Discovery is

24

---

25     [1]    The Trustee Debtors are defined as LB/L-SunCal Oak Valley, LLC; SunCal Heartland, LLC; LB/L-SunCal

26  Northlake, LLC; SunCal Marblehead, LLC; SunCal PSV, LLC; Delta Coves Venture, LLC; SunCal Torrance
Properties, LLC; and SunCal Oak Knoll, LLC.

27     [2]    The Lehman Entities are defined as Lehman Commercial Paper, Inc.; Lehman ALI, Inc.; Northlake Holdings,
LLC and OVC Holdings LLC.

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  ongoing and no trial date has been set. Therefore, the allowed amount of the Claim will not be

2  determined prior to the Plan Confirmation Hearing. Proceeding with confirmation while SunCal's

3  claim is unresolved, and therefore not allowed, would prejudice SunCal's right to participate in

4  voting on the Plan. Awaiting a final determination of the Claim objection would unduly delay the

5  confirmation process. It is therefore appropriate for the Court to temporarily allow the Claim for

6  voting purposes pursuant to Rule 3018.

7      Moreover, while the Claim meets the requirements of a Class 6 Reliance Claim under the

8  Lehman Plan, all claims of SunCal are unfairly discriminated against and relegated to a Class 7

9  General Unsecured Creditor under the Lehman Plan. The purpose of such discriminatory

10  treatment by the Lehman Plan proponents is to both virtually eliminate a recovery by SunCal in

11  the event the Lehman Plan is confirmed, and to improperly gerrymander an impaired class (which

12  includes Lehman's unlawful deficiency claim in excess of $1 billion) willing to vote for the

13  Lehman Plan.

14      For the reasons discussed below, the Court should allow SunCal to have its Claim

15  temporarily allowed for voting purposes and should reclassify the Claim as a Class 6 Claim for

16  purposes of considering the Lehman Plan.

17  2.     JURISDICTION AND VENUE

18      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is

19  a core proceeding pursuant to 28 U.S.C. §157(b). The venue of the bankruptcy cases and this

20  Motion are properly before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory

21  predicates for relief requested herein are Sections 502, 1122 and 1123(a)(4) of Title 11 of the

22  United States Code (the "Bankruptcy Code"), and Rule 3018 of the Federal Rules of Bankruptcy

23  Procedure (the "Bankruptcy Rules").

24  3.     STATEMENT OF FACTS

25      A.     Bankruptcy Filing

26      On November 12, 2008 ( the "Petition Date"), an involuntary bankruptcy petition was filed

27  against the Debtor.

28  ///

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    On January 8, 2009, the Court entered an order for relief in the involuntary bankruptcy

2  case as to the Debtor (the "Order for Relief").

3    On January 15, 2009, the Court entered an order for the appointment of a chapter 11

4  trustee. Thereafter, the Office of the United States Trustee appointed Steven M. Speier as

5  chapter 11 trustee (the "Trustee") for the Debtor.

6    B.    The Proof of Claims

7    The Debtor scheduled an unsecured claim due and owing to SunCal in the amount of

8  $937,957.05.

9    SunCal timely filed its Proof of Claim in the amount of $896,008.98, which was assigned

10  Claim No. 1-1. Due to the voluminous nature of the documents supporting the Proof of Claim,

11  SunCal prepared a summary sheet setting forth the dates of the invoices, the amount of each open

12  invoice and a description of the services and expenses provided, all of which was attached to the

13  Proof of Claim.

14    On June 13, 2011, SunCal filed an Amended Proof of Claim, which was assigned Claim

15  No. 1-2, in the amount of $896,008.98, and which also attached the invoices and other

16  documentation supporting the amount set forth in the Claim. A true and correct copy of the Claim

17  is attached to the concurrently filed Compendium of Exhibits ("Compendium") as Exhibit 1.

18    C.    The Objection

19    On April 21, 2011, certain of the Lehman Entities and the Trustee filed objections to the

20  Claim (the "Objection"), as well as SunCal's proofs of claim in the seven related involuntary

21  debtor bankruptcy cases (collectively, the "Claims Objections").

22    On June 1, 2011, SunCal filed a response to the Objection [Docket No. 2166]; and the

23  Lehman Entities filed a reply on June 7, 2011 [Docket No. 2196].

24    The initial hearing on the Claims Objections was held on June 14, 2011, at which time the

25  Court set the matter for a status conference. Since the initial status conference, the Court has set a

26  series of status conferences on the Claims Objections to allow the parties to conduct discovery.

27  The next status conference is scheduled for November 15, 2011, after the Plan Confirmation

28  Hearing.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

4.    SUNCAL'S CLAIM SHOULD BE TEMPORARILY ALLOWED FOR VOTING

PURPOSES

Bankruptcy Rule 3018(a) provides that claims which are the subject of a pending objection

may be temporarily allowed for voting purposes.  Rule 3018(a) provides, in pertinent part as

follows:

> Notwithstanding objection to a claim or interest, the court after
> notice and hearing may temporarily allow the claim or interest in an
> amount which the court deems proper for the purpose of accepting
> or rejecting a plan.

Temporary allowance of the SunCal Claim will avoid creditor disenfranchisement and the

potential for abuse by plan proponents, the Lehman Entities and the Trustee, who filed an

objection to the Claim prior to the plan voting deadline.  *In re Frascella Enters, Inc. (In re*

*Frascella)*, 360 B.R. 435, 457 (Bankr. E.D. Pa. 2007) (stating that an objection to a claim may

effectively disenfranchise a creditor if the claim is not adjudicated prior to confirmation or

temporarily allowed for voting purposes); *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344,

354 (B.A.P. 10th Cir. 2003) (stating that "[t]he policy behind temporarily allowing claims is to

prevent possible abuse by plan proponents who might ensure acceptance of a plan by filing last

minute objections to the claims of dissenting creditors"). The Lehman Entities and the Trustee

should not be permitted to disenfranchise SunCal from voting on the Plans or participating in the

plan confirmation process merely because they filed an objection to SunCal's Claim prior to

confirmation.  *In re Frascella, supra,* 360 B.R. at 457; see, also, *In re Goldstein*, 114 Bankr. 430,

432 (Bankr. E.D. Pa. 1990).  SunCal's Claim should therefore be temporarily allowed for voting

purposes.

5.    SUNCAL'S CLAIM SHOULD BE ALLOWED IN THE AMOUNT OF $896,008.98

A.    SunCal Provided Valuable Pre-Petition Management And Development Services

To The Debtor

In late 2004, SunCal commenced performing services, as requested by the Debtor, to

manage development of a master planned community in Castaic, California (the "City"), north of

Valencia, approximately 45 miles north of downtown Los Angeles and 10 miles north of the

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

San Fernando Valley (the "Project").  The Debtor envisioned that the project, when completed, would consist of 3,417 units, complete with a 3.5 acre recreation center and high school.

SunCal provided the following services (the "Development Management Services") to the Project during the period covered by the Claim:

- Participated in the selection and coordination of services of contractors whose services were necessary to perform development and sale services and functions;

- Solicited proposals and negotiated contracts for all development, marketing and related consultant activities, including without limitation, civil engineering, soils engineering, environmental consultants, marketing consultants, traffic engineers, real estate brokers, and others in accordance with a project budget agreed to by the Debtors' members;

- Coordinated, monitored and reviewed the work of all professionals in connection with the Project;

- Reviewed bids and prepared bid analyses and coordinated awarding contracts and rejecting bids in accordance with project budgets agreed to by the Debtor's members and the Lehman lender (the "Project Budget");

- Coordinated the work of all contractors pursuant to the terms of the Project Budget and maintained quality control with respect to such work;

- Reviewed all existing development related documents and assisted in the preparation and review of additional development documents;

- Ensured that the Debtor held all necessary approvals and permits for the development and improvement of the Project and further ensured that the development and improvement of the Project was being performed in compliance with the Project Budget and with all applicable codes, regulations, permits, approvals and site plans;

- Conducted frequent inspections of the work of consultants and contractors and verified that the work was being performed in accordance with related contracts and the Project Budget;

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

- Monitored the delivery, and if necessary, storage, protection and security for: all materials, systems and equipment to be used in the development of, or incorporated into the Project;

- Submitted and completed applications for the purpose of posting bonds or other appropriate forms of surety, and secured the release of such bonds when appropriate;

- Assembled and retained all contracts, agreements and other records and data as was necessary to carry out its functions, and similar records for functions performed by contractors and third party vendors;

- Maintained proper books of contracts and records on behalf the Debtor relating to services performed, and development, operations, expenses and proceeds of the Project;

- Prepared status reports, as requested by the Debtor's members;

- Prepared unaudited financial reports and business summaries of SunCal's activities with respect to the Project;

- Prepared for and attended meetings requested by the Debtor and the Lehman lender to review the progress of the Project; and

- Maintained a constant line of communication with the Debtor and the Lehman lender and offered advice and recommendations regarding the development, business, operations, performance and affairs of the Project.[3]

During the period covered by the Claim, SunCal assisted the Debtor in obtaining the necessary entitlements. SunCal was also pursuing the creation of two Community Facilities Districts with the City and seeking a land exchange with the State of California, Federal and State Permits for construction of the master-planned community and specific permits related to an

/ / /

---

[3]    See the Development Management Agreement (the "DMA") by and between SunCal and SCC/Northlake, LLC, the Debtor's operating member. A copy of the DMA is attached to the Compendium as Exhibit 2. The Debtor was not a signatory to the DMA; however, the DMA describes the services performed by SunCal for the Debtor.

RUS, MILBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1   oil-line relocation.  The Project was engineered and designed to have multiple parks, a recreational

2   facility and the infrastructure necessary to a master-planned community.

3        SunCal performed these services with the understanding and expectation that SunCal

4   would be compensated for these services.  SunCal is informed and believes that the Debtor

5   accepted these services with the understanding and expectation that SunCal would be compensated

6   for its services provided on the Project.

7        From the inception of SunCal's retention to provide services for the Project through the

8   date that the Order for Relief was entered and thereafter, SunCal invoiced the Debtor directly for

9   services performed and expenses incurred on a monthly basis.  It was the custom and practice of

10  SunCal and the Debtor that invoices were billed directly to the Debtor, who owned the Project,

11  and the Debtor paid SunCal directly for services performed from the inception of SunCal's work

12  on the Project generally by a check drawn on the Debtor's bank account.  This conduct established

13  an implied contract between the Debtor and SunCal for the payment of the services provided by

14  SunCal on the Project as discussed in more detail below.

15       (1)    SunCal Is Entitled To An Allowed Claim For Its Unpaid Management Fees

16       In the Claim, SunCal has unpaid Management Fees for management services SunCal

17  performed for the Debtor pre-petition in the total sum of $892,083.37 for the period August 2007

18  through December 2007 and October 2008.  The 2007 monthly Management Fees charged had a

19  reasonable value of $100,000 and was based on SunCal's Party's management services performed.

20  The $100,000 was calculated by taking into consideration the Project Budget for that time period

21  and discussions with the lender and the Debtor as to the reasonable amount of fees to be paid for

22  the services provided by Responding Party.  Moreover, the lender and the Lehman equity partner

23  approved and authorized the payment of the $100,000 a month, which were paid from at least

24  2004 through April 2007, and were earned and due and payable for the monthly services rendered

25  thereafter.  See, Compendium Exhibit 4.

26       In August 2008, Lehman representatives engaged in various telephone calls and exchange

27  of emails with SunCal regarding the amount of Management Fees that SunCal should be paid with

28  respect to the management and development of the Project.  The Management Fees agreed to for

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100  •  FAX (949) 252-1514

1  various projects, including the Project, were derived based upon the estimated amount of time that

2  employees of SunCal had spent or would be spending overseeing the management, development

3  and sales of the Project as reflected in the emails and Excel spreadsheets exchanged between the

4  parties.  See, Compendium Exhibits 5 through 8.  As reflected in the email exchanges and

5  subsequent payments authorized by the Lehman lender, the Debtor, the Lehman lender and

6  SunCal acknowledged that the reasonable value of the monthly Management Fees would be

7  reduced to $92,083.

8          (2)    Project Staff Costs

9       In the Claim, SunCal also includes time for unpaid pre-petition Project Staff Costs in the

10  total sum of $122,820.50.  All of SunCal's employees included in the Project Staff Costs, and who

11  provide services on various projects managed by SunCal, are required to track their time spent on

12  a daily basis and record it electronically using a software package provided by SunCal - Sage

13  TimeSheet Professional (Sage).  Time is entered directly by each employee for work

14  performed/spent and is identified by project, non-project entities and administrative tasks.  Every

15  month, a report from Sage is downloaded into an Excel format and the time is sorted by project

16  entity.  For time spent on a project entity by "chargeable" employees (e.g., legal, marketing, direct

17  project staff), invoices were prepared using SunCal's billing rates applied to actual hours spent by

18  the employees based solely on the hours that employee entered into Sage.  SunCal then invoiced

19  the Debtor monthly for the actual time spent by certain employees related to the Project, which

20  were billed as Project Staff Costs.  Each invoice for Project Staff Costs attached the name of the

21  employees and the number of hours expended in the month in connection with the Project.  The

22  hourly rates charged each month as Project Staff Costs are SunCal's standard hourly rates and are

23  the rates SunCal charges its third party clients for which SunCal provides project management

24  services similar to those provided for the Project.  SunCal believes that the rates charged are equal

25  to or less than the market rate for such services.

26          (3)    Legal Staff Costs

27       In the Claims, SunCal includes time for unpaid pre-petition Legal Staff Costs in the total

28  sum of $19,075.  SunCal used its in-house legal staff, where feasible, to manage legal issues

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  related to the Project.  Monthly invoices were generated for Legal Staff Costs chargeable to the

2  Project.  These invoices were prepared by utilizing the hours reported by the legal staff employee

3  utilizing the Sage program as discussed above and then multiplied by the legal professional's

4  standard rates.  SunCal invoiced the Debtor for time expended by its employees in connection

5  with legal services on the Project as reflected in Sage, which were billed as Legal Staff Costs.

6  In addition, SunCal maintained a report with a description of the services provided by the legal

7  professional on the Project which further supported the information reflected in Sage.  The hourly

8  rates charged each month as Legal Staff Costs are SunCal's standard hourly rates and are the rates

9  SunCal charges its third party clients for which SunCal provides project management services

10  similar to those provided for the Project.  SunCal believes that the rates charged are equal to or

11  less than the market rate for such services.

               (4)     Insurance Costs

13         The Claim includes SunCal's unpaid pre-petition Insurance Costs related to the Project in

14  the total credit of $138,072.  SunCal obtained a master policy of insurance for all projects under

15  management.  The allocation of the general liability insurance premium in any given period is

16  based on projected project hard costs at the inception of the policy.  The allocation amount

17  includes the administrative costs associated with securing and maintaining the policies.  At the end

18  of each term, an audit was performed as to the actual costs incurred and the premium was

19  reallocated by the SunCal's accounting staff based on actual costs incurred at a project over the

20  policy term.  In the case of the Debtor, this resulted in a credit adjustment for the 2007-2008 term

21  totaling $187,784 as a result of the audit.

               (5)     Employee Expense Reimbursement

23         The Claim also includes unpaid pre-petition Employee Expense Reimbursements in the

24  total sum of $102.11.  SunCal employees were reimbursed for out-of-pocket costs incurred in

25  connection with the Project.  The employees filed expense reports, including receipts for

26  expenditures, and upon approval by SunCal, they were paid.  SunCal in turn invoiced these

27  amounts, with supporting back-up documentation, to the Debtor on a monthly basis.

28  / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2 2 I I MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7 I OO  •  FAX (949) 252-I 5I 4

Rus, Miliband & Smith
A Professional Corporation
Seventh Floor, 2211 Michelson Drive
Irvine, California 92612
Tel. (949) 752-7100 • Fax (949) 252-1514

B.  The Debtor Had An Implied Contract With SunCal To Pay For The Services And Costs SunCal Provided

"In estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances." *Matter of Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341(5th Cir. 1984); *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135–136 (3rd Cir. 1982); *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989)].  State law governs the valuing of a claim.  *Bittner v. Borne Chem. Co., Inc., supra*, 691 F.2d at 135.  Here, SunCal has state law claims against the Debtor for implied contract, *quantum meruit* and unjust enrichment, all of which support the allowance of SunCal's Claim.

From the time that SunCal first provided Development Management Services to the Debtor in October 2004 until the Petition Date (and thereafter), SunCal issued the Debtor invoices for Development Management Services.  The Debtor routinely paid invoices when presented until the Petition Date.  The conduct of the Debtor and SunCal during this four year period established an implied in fact contract between the Debtor and SunCal.

Witkin defines an implied contract as follows:

> " 'An express contract is one, the terms of which are stated in words." ([Civil Code, §] 1620.) "An implied contract is one, the existence and terms of which are **manifested by conduct.**" ([Civil Code, § 1621.) (See also Rest.2d, Contracts § 4 ["A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct"]; 1 Corbin § 18; 1 Williston 3d § 3; 17 Am.Jur.2d, Contracts §§ 3, 4.) (Emphasis added.)

The distinction between express and implied in fact contracts relates only to the manifestation of assent; both types are based upon the expressed or apparent intention of the parties.  "The true implied contract, then, consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."  (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §11, p. 46).[4]

---

[4]    See, also, Witkin, Summary 10th (2005) Contracts, § 102, p. 144; 1 Corbin (Rev. ed.), §1.19; 1 Williston 4th, §1.5; 17A Am.Jur.2d (2004 ed.), Contracts §12 et seq.; Cal. Civil Practice, 3 Business Litigation, §24:4; Cal. Transactions Forms, 1 Business Transactions §6:2; BAJI, No. 10.56 [Express or Implied Contracts]; CACI, No. 305 [Implied-in-Fact Contract].) (On distinguishable quasi-contract, see infra, §103.)

1    Here, the Debtor and SunCal developed a custom and practice over a four year period

2 during which SunCal regularly invoiced the Debtor for the reasonable value of its services,

3 provided for the Debtor's account at the Debtor's request, and the Debtor paid for such services.

4 See, Compendium Exhibits 3 and 4 and Rollins Decl. ¶5. The clear intent of SunCal and the

5 Debtor, as manifested by their conduct over a four year period, was that SunCal would perform the

6 Development Management Services for which it would bill the Debtor consistent with the project

7 budgets, and the Debtor would pay SunCal. The implied contract between the Debtor and SunCal

8 for providing the management and development services and unreimbursed costs described above

9 warrants the Court valuing the Claim in its full amount for voting purposes.

10    C.    Alternatively, SunCal's Claim Should Be Estimated At The Amount Of The Claim

11        Under Theories Of *Quantum Meruit* And Unjust Enrichment

12    SunCal's equitable claims – services performed, *quantum meruit* and unjust enrichment –

13 arise from the Debtor's failure to compensate SunCal for providing services usually charged for;

14 specifically, for performing Development Management Services on the Debtor's behalf. The

15 elements of these common counts are substantively the same. *See In re De Laurentiis*

16 *Entertainment Group*, 963 F.2d 1269 (9th Cir. 1992) ("*Quantum meruit* (or quasi-contact) is an

17 equitable remedy implied by the law under which a plaintiff who has rendered services benefiting

18 the defendant may recover the reasonable value of those services when necessary to prevent unjust

19 enrichment of the defendant."). These claims do not depend upon the existence of a contract:

20        In this state it is an established principle that "where one performs
        for another, with the other's knowledge, a useful service of a
21        character usually charged for, and the latter expresses no dissent, or
        avails himself of the service, a promise to pay the reasonable value
22        of the services is implied.

23 *Gray v. Whitmore* (1971) 17 Cal. App. 3d 1, 24; *Haggerty v. Warner* (1953) 115 Cal. App. 2d 468,

24 475 *citing, Brown v. Crown Gold Milling Co.* (1907) 150 Cal. 376, 382 (Claim for *quantum meruit*

25 is established upon a showing that plaintiff performed certain services for the defendant, their

26 reasonable value, that they were rendered at the request of defendant and that they are unpaid.)

27 As opposed to the basis for the implied in fact contract discussed above, the common count

28 theories are based in implied in law contracts.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1    As detailed above and in the attached declarations of Frank Faye and Tom Rollins, it is

2    established that SunCal performed the Development Management Services for the Debtor, at the

3    Debtor's request, and that the Debtor accepted those services, with "an understanding or

4    expectation of both parties that compensation therefore was to be made." *Huskinson & Brown,*

5    *LLP v. Wolf* (2004) 32 Cal. 4th 453, 458.  Indeed, there is no dispute that the services were

6    performed.  The only remaining issue is the determination of the value of those services.

7    Relevant to the reasonable value of the services provided to the Debtor is the amount at

8    which the Debtor, SunCal and the Lehman lender valued such services as reflected in the

9    numerous monthly payments for $100,000, the August 2008 negotiations and subsequent

10    payment.  Since the Legal Staff Costs and Project Staff Costs charged by SunCal were within the

11    amounts provided in the agreed to project budgets, they are by definition reasonable.  Moreover,

12    the charges for Insurance Costs and Employee Expense Reimbursements are merely pass through

13    costs and also reasonable.

14    6.    THE COURT SHOULD CLASSIFY THE SUNCAL CLAIM AS A CLASS 6 CLAIM

15    UNDER THE LEHMAN PLAN

16    Section 1122 and 1123(a)(4) of the Bankruptcy Code "require equal treatment for

17    substantially similar claims."  See *In re: Nutritional Sourcing Corp.*, 398 B.R. 816, 823 (Bankr.

18    Del. 2008).  Here, the classification scheme set forth in the Lehman Plan calls for two separate

19    classes of claimants holding unsecured claims, which claimants receive vastly different treatment

20    under the Lehman Plan: a maximum distribution of 5% of an allowed unsecured claim classified

21    as a Class 7 Creditor or a maximum distribution of 50% of an allowed unsecured claim classified

22    as a Class 6 Creditor.

23    Both Class 6 ("Reliance Claims") and Class 7 ("Unsecured Creditors") creditors under the

24    Lehman Plan hold unsecured claims against the Debtor estates.

25    "The features distinguishing General Unsecured Claims from Reliance Claims, as more

26    fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim (a) for

27    New Value, (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the

28    applicable November, 2008 Petition Date(s), and (c) timely of record …(d) excluding Insider

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  Claims, Settling Bond Issuer-Related Future Work Claims and Lehman VD Lender Claims (other

2  than Lehman-Owned Settling Bond Issuer Related Claims)."

3      "Insider" is then specifically defined in the Lehman Plan as: "(1) A Person other than a

4  Lehman Related Party that is an 'insider' as to any TD Plan Debtor as defined in Bankruptcy Code

5  section 101, (2) an Affiliate of such a Person or (3) without limiting the foregoing, as to all TD

6  Plan Debtors, inter alia, each other TD Plan Debtor, SunCal Management, LLC, Acquisitions,

7  Elieff, Voss, Cook & Thel LLP, Greenfield Communications, and SunCal Master Venture

8  Member, LLC."  Lehman Plan at 15:1-5.

9      However, the Lehman Plan creates an artificial distinction in an attempt to separately

10  classify the claim of SunCal, other SunCal related entities, and other entities Lehman identifies

11  with SunCal, from other identically situated Reliance Claimants, in an effort to gerrymander an

12  impaired consenting class.

13      The Ninth Circuit has made clear that absent a "legitimate business or economic

14  justification," it is impermissible for a debtor to separately classify substantially similar general

15  unsecured claims. See also, *In re Barakat*, 99 F.3d 1520, 1526 (9th Cir. 1996). The burden is on

16  the plan proponent to articulate a valid business or economic justification. *In re Montclair Retail*

17  *Center*, 177 B.R. 663 (9th Cir. BAP 1995). "[T]he reasons for different treatment and separate

18  classification must be closely scrutinized." *In re Baseline-Dobson Center*, 193 B.R. 284, 290

19  (Bankr. D. Ariz. 1994) (citing *In re Acequia*, 787 F.2d 1352, 1364 (9th Cir. 1986)).

20      The Lehman Plan proponents have unfairly discriminated in their treatment of holders of

21  unsecured claims. Unfair discrimination is a concept that applies to whether a plan properly treats

22  claims or interests differently. *In re First Magnus Fin. Corp.*, 208 WL 450447 at *6 (Bankr. D.

23  Ariz. Feb. 15, 2008). The claims of "Insiders," as defined in the Bankruptcy Code, as well as

24  SunCal and certain SunCal related parties, who are included in the definition of an "Insider" under

25  the Lehman Plan whether or not they are insiders, are specifically classified so as to receive a

26  lesser payout even if they otherwise meet the nebulous standards for Reliance Claims. There is no

27  legal justification for the artificial distinctions drawn by the Lehman Plan proponents and it

28  patently discriminates amongst unsecured creditors.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    The Lehman Plan effectively subordinates the unsecured claims of SunCal to those of

2    similarly situated unsecured creditors without any legal justification.  It is well-established in the

3    Ninth Circuit that the claims of insiders cannot be categorically subordinated.  *In re Branding Iron*

4    *Steak House*, 536 F.2d 299, 301 (9th Cir. 1976) ("A creditor's claim cannot be subordinated to the

5    claims of other creditors simply because the claimant is an officer, director, or controlling

6    shareholder in a bankrupt corporation.").  See also *In re Lake Country Investments*, 2001 WL

7    267475, *7 (Bankr.D.Idaho 2001) ("[insider] relationship itself  is [not] a ground for

8    subordination"); *Id.* at *12 ("the acquisition of a secured claim by an insider is not sufficient

9    grounds, standing alone, to warrant subordination"); *In re Central Pacific Boiler & Piping, Ltd.*,

10    81 B.R. 40, 44 (Bankr.D.Haw. 1987) ("In adopting 11 U.S.C. § 510(c), Congress specifically

11    rejected proposals that would have required subordination of all insider debts"); Collier on

12    Bankruptcy, 15th Ed. Revised, at ¶ 510.05[3] (2010) ("Insider status or control by itself, however,

13    does not provide a sufficient basis for subordination"); Judges Ahart & March, California Practice

14    Guide: Bankruptcy, ¶ 17:1632 ("Equitable subordination cannot be based simply on the fact that

15    an insider relationship exists").  The Lehman Plan proponents' improper classification of SunCal's

16    Claim does not withstand scrutiny and the Court should reclassify the SunCal Claims to a Class 6

17    Claim under the Lehman Plan.

18    Apart from the disparate treatment forced on SunCal as a Class 7 Claimant (a maximum

19    return of 5% as opposed to 50% of the amount of its allowed claims) the classification scheme

20    also disenfranchises SunCal and the other SunCal related parties who are defined by the Lehman

21    Plan as "insiders."  As discussed in more detail in SunCal's Objection To Confirmation Of (1) The

22    Third Amended Joint Chapter 11 Plan For Eleven Voluntary Debtors Proposed By The Lehman

23    VD Lenders And (2) The Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors

24    Proposed By The Trustee And Subject Lehman Creditors, the Lehman Plan improperly proposes

25    that the Lehman lenders retain "deficiency claims" of $1,227,205,935 in the Involuntary Debtor

26    cases.  These alleged claims of over $1 billion are classified as Class 7 Claims, thereby swamping

27    the class and effectively disenfranchising SunCal, if this improper classification is allowed to

28    stand.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1        The Lehman Plan proponents have offered no rational justification for classifying the

2   claims of SunCal as Class 7 General Unsecured Claims when its Claim otherwise meets the

3   requirements of a Class 6 Reliance Claim, and it is readily apparent that the Lehman Plan

4   proponents proposed this discriminatory classification for an improper purpose.  As set forth in

5   more detail in the attached Declaration of Tom Rollins, SunCal meets all of the requirements of a

6   Class 6 Reliance Claim, and the Court should reclassify the SunCal Claim as a Class 6 Reliance

7   Claim.

8   7.     <u>CONCLUSION</u>

9        For all the foregoing reasons, SunCal respectfully requests that pursuant to Rule 3018(a)

10  its Claim be temporarily allowed for voting purposes on the Plan in the amount of $896,008.98.

11  SunCal further requests that the Court reclassify the SunCal Claim as a Class 6 Reliance Claim

12  under the Lehman Plan.

13  DATED: September 26, 2011          Respectfully submitted,

14                                 RUS, MILIBAND & SMITH

15                                 A Professional Corporation

16

17                   By: _____

18                          JOEL S. MILIBAND
                            Attorneys for SunCal Management, LLC

19

20

21

22

23

24

25

26

27

28

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    <u>DECLARATION OF FRANK FAYE</u>

2    I, FRANK FAYE, declare as follows:

3    1.    At all times relevant herein, I was the Chief Operating Officer for SunCal

4    Management, LLC ("SunCal"). I have personal knowledge of the facts set forth herein, except as

5    to those stated on information and belief and, as to those, I am informed and believe them to be

6    true. If called as a witness, I could and would competently testify to the matters stated herein.

7    2.    This declaration is submitted in support of SunCal's Motion To Estimate Claim Of

8    SunCal Management, LLC, For Voting Purposes And Classifying SunCal's Claim As A Class 6

9    Claim In Lehman's Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors (the

10   "Motion'). Unless otherwise defined, capitalized terms shall have the same meaning as defined in

11   the Motion.

12   3.    In late 2004, SunCal commenced performing services, as requested by the Debtor,

13   to manage development of a master planned community in Castaic, California (the "City"), north

14   of Valencia, approximately 45 miles north of downtown Los Angeles and 10 miles north of the

15   San Fernando Valley (the "Project"). The Debtor envisioned that the project, when completed,

16   would consist of 3,417 units, complete with a 3.5 acre recreation center and high school.

17   4.    Part of my responsibilities as Chief Operating Officer included supervising

18   SunCal's activities with respect to development and management of the Project. SunCal provided

19   to the Debtor the management and development services described in the DMA attached to the

20   Compendium as Exhibit 2 and detailed in the Motion above.

21   5.    As of the Petition Date, SunCal had assisted the Debtor in obtaining the necessary

22   entitlements. SunCal was also pursuing the creation of two Community Facilities Districts with

23   the City, and was seeking a land exchange with the State of California, Federal and State Permits

24   for construction of the master-planned community and specific permits related to an oil-line

25   relocation. The Project was being engineered and was designed to have multiple parks, a

26   recreational facility and the infrastructure necessary to a master-planned community.

27   6.    SunCal has been the party responsible for managing development of the Project,

28   and conveyed a substantial benefit to the Debtor.

RUS, MILIBAND & SMITH
A Professional Corporation
Seventh Floor, 2211 Michelson Drive
Irvine, California 92612
Tel (949) 752-7100 • Fax (949) 252-1514

464501v1 LRZ 9/25/11 1 (2882-0001)    18

1        I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct.

3        Executed September 26, 2011, at Irvine, California.

4

5

                                       FRANK FAYE

Rus, Miliband & Smith
A Professional Corporation
Seventh Floor, 2211 Michelson Drive
Irvine, California 92612
Tel (949) 752-7100 • Fax (949) 252-1514

**DECLARATION OF TOM ROLLINS**

I, TOM ROLLINS, declare as follows:

1.      At all times relevant herein, I was the Chief Accounting Officer for SunCal Management, LLC ("SunCal"). As to the following facts, I know them to be true of my own knowledge, and, if called as a witness, I could and would competently testify thereto; or I have gained such knowledge from the business records of SunCal, which were made at or near the time of the acts, conditions or events to which they relate. Any such document or record was prepared in the ordinary course of business by a person who had personal knowledge of the event being recorded and had a business duty to accurately record such event. If called as a witness, I could and would competently testify to the matters stated herein.

2.      This declaration is submitted in support of SunCal's Motion To Estimate Claim Of SunCal Management, LLC, For Voting Purposes And Classifying SunCal's Claim As A Class 6 Claim In Lehman's Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors (the "Motion"). Unless otherwise defined, capitalized terms shall have the same meaning as defined in the Response.

3.      On March 19, 2009, SunCal filed a proof of claim, assigned Claim No. 1-1, in the amount of $896,008.98, requesting allowance of a claim for services rendered and expenses incurred in connection with the development of the Debtor's real property (the "Project") during the period from May 2007 through the Petition Date. Due to the voluminous nature of the documents supporting the Proof of Claim, SunCal prepared only a summary sheet setting forth the dates of invoice, the amount of each open invoice and a description of the services and expenses provided, which was attached to the Proof of Claim.

4.      On June 13, 2011, SunCal filed an Amended Proof of Claim (the "Claim"), which was assigned Claim No. 1-2, in the amount of $896,008.98, together with the invoices supporting the Claim. A true and correct copy of the Claim is attached to the concurrently filed Compendium of Exhibits ("Compendium") as Exhibit 1. The components of the Claim are set forth in the following chart with references to where the invoices and support for the amounts can be found in Exhibit 1:

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

| Category | Invoice Date | Invoice Amount | Invoice No. | Invoice Description |
|---|---|---|---|---|
| Management Fees (Exh. 1, pp. 2-10) | 07/16/2007 | $100,000.00 | 20077405 | Aug 07 Management fees |
| | 08/14/2007 | $100,000.00 | 20077785 | Sep 07 Management fee |
| | 08/31/2007 | $100,000.00 | 20077982 | May 07 Management fees |
| | 08/31/2007 | $100,000.00 | 20077983 | June 07 Management fees |
| | 08/31/2007 | $100,000.00 | 20077984 | July 07 Management fees |
| | 09/11/2007 | $100,000.00 | 20078064 | October 07 Management fees |
| | 10/11/2007 | $100,000.00 | 20078356 | Nov 07 Management fees |
| | 11/14/2007 | $100,000.00 | 20078658 | Dec 07 Management fees |
| | 10/01/2008 | $92,083.37 | 20090435 | Oct 08 Management fees |
| | | **$892,083.37** | | **TOTAL** |
| Project Staff Costs (Exh. 1, pp. 11-16) | 02/08/2008 | $45,644.50 | 20089308 | Jan 08 Project Expenses |
| | 03/17/2008 | $48,749.00 | 20089548 | Feb-08 Project staff costs |
| | 04/09/2008 | $28,427.00 | 20089751 | Mar 08 Project staff costs |
| | | **$122,820.50** | | **TOTAL** |
| Legal Staff Costs (Exh. 1, pp. 17-26) | 02/11/2008 | $4,275.00 | 20089349 | Nov-2007 Legal Fees |
| | 02/11/2008 | $1,075.00 | 20089368 | Dec-2007 Legal Fees |
| | 03/18/2008 | $3,175.00 | 20089596 | Jan-08 Legal staff costs |
| | 03/18/2008 | $5,325.00 | 20089596 | Feb-08 Legal staff costs |
| | 04/11/2008 | $3,725.00 | 20089777 | Mar-08 Legal staff costs |
| | 05/14/2008 | $1,500.00 | 20089888 | Apr-08 Legal staff costs |
| | | **$19,075.00** | | **TOTAL** |
| Insurance Costs (Exh. 1, pp. 38-42) | 01/14/2008 | $11,288.00 | 20089051 | Gen liab insu-8[th] installment |
| | 03/07/2008 | $11,797.00 | 20089478 | Gen'l Liability Ins-10[th] Ins |
| | 06/20/2008 | $10,907.00 | 20090046 | 4/08 to 6/08 Gen liab&Floater and |
| | 06/20/2008 | $3,636.00 | 20090046 | Jul 08 Gen liab & Floater insu |
| | 07/23/2008 | $12,084.00 | 20090204 | Aug 08 Gen'l liab&Floater Ins |
| | 08/14/2008 | -$187,784.00 | 20080379 | Insurance adj 2007-08 |
| | | **-$138,072.00** | | **TOTAL** |
| Employee Expense Reimbursement (Exh. 1, pp. 27-37) | 02/20/2008 | $16.50 | 20089405 | Mike Walline, 1/9/08 Exp |
| | 05/31/2008 | $21.65 | 20089931 | Bart May 4/28/08 Exp |
| | 08/19/2008 | $63.96 | 20090316 | Exp report-Ray Pearl |
| | | **$102.11** | | **TOTAL** |
| **TOTAL** | | **$896,008.98** | | |

5.     It was the custom and practice of SunCal and the Debtor that invoices were billed directly to the Debtor who owned the Project, and the Debtor paid SunCal directly for services performed from the inception of SunCal's work on the Project. From the time that SunCal first provided Development Management Services in late 2004, through at least the Petition Date, SunCal issued the Debtor invoices for Development Management Services and other costs. The Debtor routinely paid invoices when presented. Examples of the SunCal invoices and the Debtor's checks are attached to the Compendium as collective Exhibit 3. Due to the voluminous nature of

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

1  these records I have prepared a chart of the invoice numbers, amounts and check dates (under the

2  heading "G/L date") by cost category reflecting the many invoices and checks exchanged between

3  SunCal and the Debtor, which is attached to the Compendium as Exhibit 4.  See, Federal Rule of

4  Evidence 1006.

5      **Management Fees**

6      6.    Management fees were incurred by the Debtor pre-petition and remained unpaid as

7  of the Petition Date as reflected in the chart above.  In the Claim, SunCal has unpaid management

8  fees for management services SunCal performed for the Debtor pre-petition in the total sum of

9  $892,083.37 for the period May 2007 through December 2007 and October 2008.

10     7.    The 2007 monthly management fees charged had a reasonable value of $100,000

11  and was based on SunCal's Party's management services performed.  The $100,000 was calculated

12  by taking into consideration the Project Budget for that time period and discussions with the

13  lender and the Debtor as to the reasonable amount of fees to be paid for the services provided by

14  Responding Party.  Moreover, the lender and the Lehman equity partner approved and authorized

15  the payment of the $100,000 a month, which were paid from at least 2004 through April 2007, and

16  were earned and due and payable for the monthly services rendered thereafter as reflected in

17  Compendium Exhibit 4.

18     8.    In August 2008, Lehman representatives engaged in various telephone calls and

19  exchange of emails with SunCal regarding the amount of management fees that SunCal should be

20  paid with respect to the management and development of the Project.  True and correct copies of

21  these email exchanges are attached to the Compendium as Exhibits 5 through 7.  The management

22  fees agreed to for various projects, including the Project, were derived based upon the estimated

23  amount of time that employees of SunCal had spent or would be spending overseeing the

24  management, development and sales of the Project as reflected in the Excel spreadsheets

25  exchanged between the parties. A true and correct copy of the Excel spreadsheet reflecting the

26  final agreement between SunCal, the Debtor and the Lehman lender is attached to the

27  Compendium as Exhibit 8.

28  / / /

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL. (949) 752-7100 • FAX (949) 252-1514

9.  On September 8, 2008, Lehman sent a wire transfer to SunCal in the amount of $1,569,652.62 for past due management fees for various projects at the recently agreed to reduced rates, including the Northlake Project as reflected in Exhibit 9.

10.  As reflected in the email exchanges and the September 8, 2008, payment from Lehman, the Debtor, the Lehman lender and SunCal acknowledged that the reasonable value of the monthly management fees would be reduced to $92,083 per month.  The management fees reflected in the Claim are consistent with this agreement.

**Project Staff Costs**

11.  All of SunCal's employees included in the Project Staff Costs and who provide services on various projects managed by SunCal are required to track their time spent on a daily basis and record it electronically using a software package provided by SunCal - Sage TimeSheet Professional (Sage).  Time is entered directly by each employee for work performed/spent and is identified by project, non-project entities and administrative tasks.  Every month, a report from Sage is downloaded into an Excel format and the time is sorted by project entity.  For time spent on a project entity by "chargeable" employees (e.g., legal, marketing, direct project staff), invoices were prepared using SunCal's billing rates applied to actual hours spent by the employees based solely on the hours that employee entered into Sage.  SunCal then invoiced the Debtor monthly for the actual time spent by certain employees related to the Project, which were billed as Project Staff Costs.  Each invoice for Project Staff Costs attached the name of the employees and the number of hours expended in the month in connection with the Project.

12.  The monthly detail reports attached to the Claim includes a schedule with the hourly rate added for each employee.  The hourly rates charged each month as Project Staff Costs are SunCal's standard hourly rates and are the rates SunCal charges its third party clients for which SunCal provides project management services similar to those provided for the Project.  SunCal believes that the rates charged are equal to or less than the market rate for such services.

**Legal Staff Costs**

13.  SunCal used its in-house legal staff, where feasible, to manage legal issues related to the Project.  Monthly invoices were generated for legal staff costs chargeable to the Project.

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 221 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1 These invoices were prepared by utilizing the hours reported by the legal staff employee utilizing

2 the Sage program as discussed above and then multiplied by the legal professional's standard rates.

3 SunCal invoiced the Debtor for time expended by its employees in connection with legal services

4 on the Project as reflected in Sage, which were billed as Legal Staff Costs. In addition, SunCal

5 maintained a report with a description of the services provided by the legal professional on the

6 Project which further supported the information reflected in Sage. Attached to the Compendium

7 as Exhibit 10 is a true and correct copy of this report for the legal services reflected in the Claim.

8       14.    The hourly rates charged each month as Legal Staff Costs are SunCal's standard

9 hourly rates and are the rates SunCal charges its third party clients for which SunCal provides

10 project management services similar to those provided for the Project. SunCal believes that the

11 rates charged are equal to the market rate for such services.

12 **Insurance Costs**

13       15.    SunCal obtained a master policy of insurance for all projects under management.

14 Attached collectively to the Compendium as Exhibit 11 is an example of the master policy(s)

15 which SunCal obtained for the projects under its management. Attached collectively to the

16 Compendium as Exhibit 12 are checks and policy notices reflecting SunCal's direct payment of the

17 insurance premiums on the master policy for the period 2007 through 2009.

18       16.    The allocation of the general liability insurance premium in any given period is

19 based on projected project hard costs at the inception of the policy. The allocation amount

20 includes the administrative costs of SunCal's risk management department associated with

21 securing and maintaining the policies. At the end of each term, an audit was performed as to the

22 actual costs incurred and the premium was reallocated by the SunCal's accounting staff based on

23 actual costs incurred at a project over the policy term. In the case of the Debtor, this resulted in a

24 credit adjustment for the 2007-2008 term totaling $187,784 as a result of the audit. Attached to

25 the Compendium as Exhibit 13 is a chart reflecting the calculation of the credit.

26 **Employee Expense Reimbursements**

27       17.    SunCal employees were reimbursed for out-of-pocket costs incurred in connection

28 with the Project. The employees filed expense reports, including receipts for expenditures, and

RUS, MILIBAND & SMITH
A PROFESSIONAL CORPORATION
SEVENTH FLOOR, 2211 MICHELSON DRIVE
IRVINE, CALIFORNIA 92612
TEL (949) 752-7100 • FAX (949) 252-1514

1    upon approval by SunCal, they were paid.  SunCal in turn invoiced these amounts, with

2    supporting back-up documentation, to the Debtor on a monthly basis.  Copies of SunCal's checks

3    reflecting reimbursement payments to SunCal employees and the employees expense reports and

4    supporting documentation are attached to the Claim at the pages reflected in the chart above.

5        **SunCal's Reliance Claim**

6        18.        Except for $300,000 in Management Fees (for May 2007 through July 2007),

7    SunCal's Claim, as described above, is for money, goods, services and new credit voluntarily

8    extended to the Debtor between August 1, 2007, and the Petition Date, which money, goods,

9    services and new credit were not transferred or extended on account of an existing obligation.

10        I declare under penalty of perjury under the laws of the United States of America and the

11    State of California that the foregoing is true and correct.

12        Executed September 26, 2011, at Irvine, California.

13

14    _____
            TOM ROLLINS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

464501v1 LRZ 9/25/11 1 (2882-0001)                    25

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Von Karman Towers, Seventh Floor, 2211 Michelson Drive, Irvine, California  92612

A true and correct copy of the foregoing document described as **MOTION TO ESTIMATE CLAIM OF SUNCAL MANAGEMENT, LLC, FOR VOTING PURPOSES AND CLASSIFYING SUNCAL'S CLAIM AS A CLASS 6 CLAIM IN LEHMAN'S THIRD AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF FRANK FAYE AND TOM ROLLINS IN SUPPORT THEREOF [RE LB/L SUNCAL NORTHLAKE, LLC** will  be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  September 26, 2011  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☒ Service Information continued on attached page.

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  September 26, 2011  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on  September 26, 2011  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| September 26, 2011 | TERESA LANGFORD | *Teresa Langford* |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
435753v1 jm 3/1/11 1 (2882-0001)

**F 9013-3.1**

**ADDITIONAL SERVICE INFORMATION** (if needed):

- Selia M Acevedo          sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams          jadams@sycr.com
- Raymond H Aver          ray@averlaw.com
- James C Bastian          jbastian@shbllp.com
- Thomas Scott Belden      sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd              fednotice@tclaw.net
- Mark Bradshaw           mbradshaw@shbllp.com
- Gustavo E Bravo          gbravo@smaha.com
- Jeffrey W Broker          jbroker@brokerlaw.biz
- Richard W Brunette       rbrunette@sheppardmullin.com
- Brendt C Butler          bbutler@mandersonllp.com
- Andrew W Caine          acaine@pszyjw.com
- Carollynn Callari         ccallari@venable.com
- Cathrine M Castaldi       ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers          dchambers@jmbm.com
- Shirley Cho              scho@pszjlaw.com
- Vonn Christenson         vrc@paynefears.com
- Brendan P Collins         bpcollins@bhfs.com
- Vincent M Coscino        vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot           pcouchot@winthropcouchot.com, pj@winthropcouchot.com;
                           gcrumpacker@winthropcouchot.com
- Geoffrey Crisp           geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri      dabbieri@sullivan.com, hill@sullivanhill.com;
                           mcallister@sullivanhill.com; stein@sullivanhill.com;
                           vidovich@sullivanhill.com
- Ana Damonte             ana.damonte@pillsburylaw.com
- Vanessa S Davila         vsd@amclaw.com
- Melissa Davis            mdavis@shbllp.com
- Daniel Denny            ddenny@gibsondunn.com
- Caroline Djang           crd@jmbm.com
- Caroline Djang           cdjang@rutan.com
- Donald T Dunning         ddunning@dunningLaw.com
- Lynsey M Eaton          leaton@gglts.com
- Meredith R Edelman       meredith.edelman@dlapiper.com
- Joseph A Eisenberg       jae@jmbm.com
- Lei Lei Wang Ekvall       lekvall@wgllp.com
- Richard W Esterkin        resterkin@morganlewis.com
- Don Fisher              dfisher@ptwww.com
- Marc C Forsythe          kmurphy@goeforlaw.com
- Alan J Friedman          afriedman@irell.com
- Steven M Garber          steve@smgarberlaw.com
- Christian J Gascou        cgascou@gascouhopkins.com
- Barry S Glaser           bglaser@swjlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Robert P Goe — kmurphy@goeforlaw.com, rgoe@goeforlaw.com; mforsythe@goeforlaw.com
- Eric D Goldberg — egoldberg@stutman.com
- Richard H Golubow — rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez — mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith — bkemail@harrisbeach.com
- Matthew Grimshaw — mgrimshaw@rutan.com
- Kavita Gupta — kgupta@winthropcouchot.com
- Asa S Hami — ahami@morganlewis.com
- Michael J Hauser — michael.hauser@usdoj.gov
- D Edward Hays — ehays@marshackhays.com
- Michael C Heinrichs — mheinrichs@omm.com
- Harry D. Hochman — hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff — jonathan.hoff@cwt.com
- Nancy Hotchkiss — nhotchkiss@trainorfairbrook.com
- Michelle Hribar — mhribar@rutan.com
- John J Immordino — john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson — laj@cohenandjacobson.com
- Michael J Joyce — mjoyce@crosslaw.com
- Stephen M Judson — sjudson@fablaw.com
- Kaleb L Judy — ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn — skahn@pszyjw.com
- Sheri Kanesaka — sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- David I Katzen — katzen@ksfirm.com
- Christopher W Keegan — ckeegan@kirkland.com, shalimar.caltagirone@kirkland.com; alevin@kirkland.com
- Irene L Kiet — ikiet@hkclaw.com
- Claude F Kolm — claude.kolm@acgov.org
- Mark J Krone — mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally — davidlallylaw@gmail.com
- Leib M Lerner — leib.lerner@alston.com
- Peter W Lianides — plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu — cliu@marshackhays.com
- Charles Liu — cliu@winthropcouchot.com
- Ben H Logan — blogan@omm.com
- John W Lucas — jlucas@pszjlaw.com
- Kerri A Lyman — klyman@irell.com
- Mariam S Marshall — mmarshall@marshallramoslaw.com
- Robert C Martinez — rmartinez@mclex.com
- Michael D May — mdmayesq@verizon.net
- Hutchison B Meltzer — hmeltzer@wgllp.com
- Krikor J Meshefejian — kjm@lnbrb.com
- Joel S. Miliband — jmiliband@rusmiliband.com
- James M Miller — jmiller@millerbarondess.com, vgunderson@millerbarondess.com; smiller@millerbarondess.com; mpritikin@millerbarondess.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Louis R Miller — smiller@millerbarondess.com
- Craig Millet — cmillet@gibsondunn.com, pcrawford@gibsondunn.com; cmillet@gibsondunn.com
- Randall P Mroczynski — randym@cookseylaw.com
- Mike D Neue — mneue@thelobelfirm.com, jmattiace@thelobelfirm.com; pnelson@thelobelfirm.com
- Robert Nida — Rnida@castlelawoffice.com
- Henry H Oh — henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe — sokeefe@okeefelc.com
- Robert B Orgel — rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay — mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Ernie Zachary Park — ernie.park@bewleylaw.com
- Daryl G Parker — dparker@pszjlaw.com
- Penelope Parmes — pparmes@rutan.com
- Robert J Pfister — rpfister@ktbslaw.com
- Ronald B Pierce — ronald.pierce@sdma.com
- Katherine C Piper — kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey — cmartin@pprlaw.net
- Debra Riley — driley@allenmatkins.com
- James S Riley — tgarza@sierrafunds.com
- Todd C. Ringstad — becky@ringstadlaw.com
- R Grace Rodriguez — ecf@lorgr.com
- Martha E Romero — Romero@mromerolawfirm.com
- Ronald Rus — rrus@rusmiliband.com
- John P Schafer — jschafer@mandersonllp.com
- John E Schreiber — jschreiber@dl.com
- William D Schuster — bills@allieschuster.org
- Christopher P Simon — csimon@crosslaw.com
- Gerald N Sims — jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith — wendy@bindermalter.com
- Steven M Speier — Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR) — Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James — ecf@stjames-law.com
- Michael K Sugar — msugar@irell.com
- Cathy Ta — cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com; Kenneth.Burgess@bbklaw.com
- David A Tilem — davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com; dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till — jtill@thelobelfirm.com, jmattiace@thelobelfirm.com; pnelson@thelobelfirm.com
- United States Trustee (SA) — ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh — cgunruh@sbcglobal.net
- Annie Verdries — verdries@lbbslaw.com
- Jason Wallach — jwallach@gladstonemichel.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

- Joshua D Wayser     kim.johnson@kattenlaw.com
- Marc J Winthrop     mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood     dwiseblood@seyfarth.com
- Brett K Wiseman     bwiseman@aalaws.com
- Laurel R Zaeske     lzaeske@rusmiliband.com
- Dean A Ziehl     dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman     joshuasdaddy@att.net

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
435753v1 jm 3/1/11 1 (2882-0001)

F 9013-3.1