1  RICHARD W. BRUNETTE, Cal. Bar No. 81621
   rbrunette@sheppardmullin.com
2  AARON J. MALO, Cal. Bar No. 179985
   amalo@sheppardmullin.com
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071-1422
   Telephone:  213-620-1780
5  Facsimile:   213-620-1398

6  Attorneys for Creditor
   PALM SPRINGS VILLAGE-309, LLC
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   SANTA ANA DIVISION

11 In re                                    Case No. 8:08-bk-17206-ES
                                            Jointly Administered Case Nos.
12 Palmdale Hills Property, LLC, and        8:08-bk-17209-ES; 8:08-bk-17240-ES;
   Its Related Debtors,                     8:08-bk-17224-ES; 8:08-bk-17242-ES
13      Jointly Administered Debtors and    8:08-bk-17225-ES; 8:08-bk-17245-ES;
        Debtors-In-Possession.              8:08-bk-17227-ES; 8:08-bk-17246-ES
14                                          8:08-bk-17230-ES; 8:08-bk-17231-ES;
   Affects:                                 8:08-bk-17236-ES; 8:08-bk-17248-ES
15  ☐ All Debtors,                          8:08-bk-17249-ES; 8:08-bk-17573-ES;
    ☐ Palmdale Hills Property, LLC          8:08-bk-17574-ES; 8:08-bk-17575-ES
16  ☐ Sun Cal Beaumont Heights, LLC         8:08-bk-17404-ES; 8:08-bk-17407-ES;
    ☐ SCC/Palmdale, LLC                     8:08-bk-17408-ES; 8:08-bk-17465-ES
17  ☐ SunCal Johanson Ranch, LLC            8:08-bk-17458-ES; 8:08-bk-17206-ES;
    ☐ Sun Cal Summit Valley, LLC            8:08-bk-17470-ES; 8:08-bk-17472-ES
18  ☐ SunCal Emerald Meadows, LLC           and 8:08-bk-17588-ES
    ☐ Sun Cal Bickford Ranch, LLC
19  ☐ Acton Estates, LLC                    Chapter 11
    ☐ Seven Brothers, LLC
20  ☐ SJD Partners, Ltd.                    **NOTICE OF MOTION AND MOTION
    ☐ SJD Development Corp.                 FOR TEMPORARY ALLOWANCE OF
21  ☐ Kirby Estates, LLC                    PALM SPRINGS VILLAGE-309,
    ☐ SunCal Communities I, LLC             LLC'S CLAIM FOR VOTING
22  ☐ SunCal Communities III, LLC           PURPOSES; MEMORANDUM OF
    ☐ SCC Communities, LLC                  POINTS AND AUTHORITIES IN
23  ☐ North Orange Del Rio Land, LLC        SUPPORT THEREOF;
    ☐ Tesoro SF, LLC                        DECLARATION OF SCOTT A.
24  ☐ LB-L-SunCal Oak Valley, LLC           LISSOY IN SUPPORT OF MOTION**
    ☐ SunCal Heartland, LLC
25  ☐ LB-L-SunCal Northlake, LLC                      **Hearing**
    ☐ SunCal Marblehead, LLC
26  ☐ SunCal Century City, LLC              Date:   October 24, 2011
    ☒ SunCal PSV, LLC                       Time:   9:30 a.m.
27  ☐ Delta Coves Venture, LLC              Place:  Courtroom 5A
    ☐ SunCal Torrance, LLC
28  ☐ Sun Cal Oak Knoll, LLC

W02-WEST:1SMS1\403964839.2

TO THE UNITED STATES BANKRUPTCY COURT, THE UNITED STATES TRUSTEE, THE DEBTOR, CREDITORS, AND CERTAIN OTHER PARTIES:

Notice is hereby given that, pursuant to the Court's August 1, 2011 order, Palm Springs Village-309, LLC ("PSV-309") will, and hereby does, seek the temporary allowance of its claim for voting purposes under Federal Rule of Bankruptcy Procedure 3018(a).

**Your rights may be affected by this motion.** You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one. PSV-309's motion will be heard on October 24, 2011, starting at 9:30 a.m. in Courtroom 5A, located at 411 West Fourth Street in Santa Ana, California 92701. You may object to PSV-309's motion no later than October 7, 2011 and PSV-309 has been permitted to file a reply to any objections no later than October 14, 2011.

Dated: September 26, 2011

                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      */s/Richard W. Brunette*
        RICHARD W. BRUNETTE
        AARON J. MALO
        Attorneys for Creditor
      PALM SPRINGS VILLAGE-309, LLC

In accordance with the Court's August 1, 2011 order, Palm Springs Village-309, LLC ("PSV-309") hereby moves, pursuant to Federal Rule of Bankruptcy Procedure 3018(a), for temporary allowance of its claim for voting purposes in connection with the Third Amended Joint Chapter 11 Plan proposed by the Trustee and the Lehman Creditors and the Third Amended Chapter 11 Plan proposed by SunCal PSV, LLC (collectively, the "Plans").

## I.     INTRODUCTION & SUMMARY OF RELIEF REQUESTED

PSV-309 is a creditor of debtor SunCal PSV, LLC. On September 19, 2011, PSV-309 timely and properly: (a) submitted its objection to confirmation of the Plans; and (b) tendered ballots in connection with both of the Plans. In order to have its ballots counted, PSV-309 seeks to have its claim temporarily allowed for voting purposes.

The Court will recall that the Plans do not provide any treatment whatsoever for PSV-309's sizeable claim, which renders the Plans deficient under 11 U.S.C. 1123(a) and thus unconfirmable under 11 U.S.C. 1129(a). PSV-309's claim was never included on the Debtor's Chapter 11 schedules, nor was PSV-309 provided timely notice of the claims bar date. Despite recent discussions with counsel for both the Lehman Creditors and the Chapter 11 Trustee regarding the prospect of allowing PSV-309 to file a claim in this case, no agreement has been reached. Thus, the need for the instant motion.

The factual underpinnings for PSV-309's claim is set forth in some detail below, but essentially consists of contractual rights to: (1) the payment of certain specified cash; and (2) title to certain specified real estate. PSV-309 estimates the total value of its claim at $10,050,000.

1    Federal Rule of Bankruptcy Procedure ("FRBP") 3018(a) provides that the
2 court "may temporarily allow [a] claim or interest in an amount which the court deems
3 proper for the purpose of accepting or rejecting the plan." FRBP 3018(a). In addition, this
4 Court's August 1, 2011 Order (A) Approving Plan Solicitation, Notice, and Voting
5 Procedures and (B) Establish Deadlines in Connection with Solicitation and Confirmation
6 with Respect to All Pending Plans (the " Procedures Order") specifically contemplates that
7 such a motion may be filed in connection with the above-captioned bankruptcy cases. See
8 Procedures Order at 6:14-18. Based upon this authority, PSV-309 requests that the Court
9 temporarily allow for voting purposes PSV-309's claim in the amount of $10,050,000.

## II.    BASIS FOR CLAIM

### A.    Rights Derived From The Purchase And Sale Agreement

By means of a Purchase and Sale Agreement dated as of March 10, 2006 ("PSA"), PSV-309 agreed to sell to SunCal PSV hundreds of acres of valuable real estate located in or around Palm Springs, California. (Declaration of Scott A. Lissoy ("Lissoy Decl."), ¶ 2.)

The purchase was to take place in two phases. (Lissoy Decl., ¶ 3.) The Basic Purchase Price was $43 million for Phase 1 and $40 million for Phase 2. Suncal PSV also agreed to pay, as part of the Purchase Price, an amount equal to 50% of the total CFD Proceeds (as defined in the PSA) in excess of $22,500,000 (the "CFD Payment"). (Lissoy Decl., ¶ 3.) The CFD Payment is an element of PSV-309's claim against SunCal PSV. PSV-309 understands that the CFD either has been or will be sized at $40 million. (Lissoy Decl., ¶ 3.) Based on a CFD in the amount of $40 million, the CFD Payment owed to PSV-309 is or will be $8.75 million.

In addition to the CFD Payment, and as confirmed by that certain Memorandum of Holding Agreement dated May 10, 2006 ("Holding Agreement"), the parties agreed that although certain property was being conveyed *in toto* to SunCal PSV, PSV-309 retained the right to certain properties known as the Seller Retained Lot and the Seller Designated Lot. (Lissoy Decl., ¶ 4.) Because the Seller Retained Lot and Seller Designated Lot were not yet legal parcels under the California Subdivision Map Act, title to the Seller Retained Lot and Seller Designated Lot (but not any beneficial interest) was be held by SunCal PSV until recordation of a final map, at which point title would be conveyed to SPV-309. (Lissoy Decl., ¶ 4.) PSV-309's entitlement to the Seller Retained Lot and Seller Designated Lot is a second element of PSV-309's claim, which likewise receives no treatment under the Plans.

### B. SunCal PSV And Lehman Were Aware Of The Additional Consideration And Reserved Properties Owed To PSV-309

SunCal PSV was a party to the PSA and the Holding Agreement, so there can be no good faith dispute over its knowledge of the claim held by PSV-309.

Lehman Ali, Inc. ("Lehman") became aware of PSV-309's claim no later than the time it entered into that certain $65,000,000 Term Loan and $25,000,000 Revolving Line of Credit Agreement with SunCal PSV dated February 12, 2007 ("SunCal PSV Loan Agreement"). PSV-309 and the PSA are specifically defined terms in the SunCal PSV Loan Agreement. (Lissoy Decl., ¶ 5.) PSV-309's interest in the real estate and the CFD-related obligations are likewise referenced in the SunCal PSV Loan Agreement, and within that document Lehman agreed to release its lien as to the relevant real estate.

As this confirms, both SunCal PSV and Lehman were at all times fully aware of PSV-309 and its rights under the PSA that give rise to PSV-309's claim in this Chapter 11 case. Despite this, PSV-309's claim was never scheduled and PSV-309 received no notice of this matter and/or the claims bar date.

### III.   THE JUNE 2009 CLAIMS BAR DATE LAPSED LONG BEFORE PSV-309 RECEIVED ANY NOTICE OF THIS CASE

Despite the fact that PSV-309 holds both a substantial monetary claim and a right to a conveyance of certain real property from SunCal PSV, and despite the fact that both the Debtor and the Lehman Creditors knew of PSV-309's interests and claims, PSV-309 was not scheduled as a creditor in this case, and has never received proper notice of these proceedings. (Lissoy Decl., ¶ 7.) As a result, PSV-309 did not receive timely notice of any claims bar date in this case, and thus PSV-309 did not file a claim by the June 2009 deadline. In fact, PSV-309 received no notices in this case until about 16 months **after** the bar date had lapsed. (Lissoy Decl., ¶ 7.)

Once PSV-309 became aware of this case and retained counsel, discussions ensued about PSV-309's rights. (Lissoy Decl., ¶ 11.) Despite a request that PSV-309 be allowed to file a late claim based on the absence of notice of the bar date, no agreement has been reached. (Lissoy Decl., ¶ 11.) And the Plans make no mention of PSV-309's claim. Accordingly, PSV-309 has been left with no choice but to file this motion seeking to have its claim temporarily allowed for voting purposes pursuant to FRBP 3018(a).

### IV.   THE COURT MAY TEMPORARILY ALLOW PSV-309'S CLAIM FOR VOTING PURPOSES UNDER RULE 3018(a)

FRBP 3018(a) provides:

> Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

FRBP 3018(a) (emphasis added).  In addition, this Court's Procedures Order provides:

> If any Creditor seeks to utilize the Confirmation Hearing as the hearing to establish the temporary allowance of its Claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, such creditor may (i) file and serve a motion so requesting (a "Rule 3018 Motion") no later than September 26, 2011 or (ii) enter into an agreement with the applicable Plan Proponents therefor, provided that such agreement(s) be filed concurrently with or prior to the filing of the Ballot Summary, and the Court approves such agreement(s) prior to or at the Confirmation Hearing.

Procedures Order at 6:14-21.  And the Ninth Circuit BAP confirms that any claimant or party in interest may seek temporary allowance of a claim for voting purposes.  In re M. Long Arabians, 103 B.R. 211, 215 (9th Cir. BAP 1989).  PSV-309 has been unable to reach an agreement with the proponents of the Plans with respect to PSV-309's ability to file a claim and/or vote on the Plans.  As a result, PSV-309 brings this Motion to temporarily allow its claim for voting purposes.  Collier explains the rationale behind FRBP 3018 as follows:

> The obvious potential for abuse by a plan proponent makes it necessary to provide for temporary allowance of a claim for voting purposes.  Rule 3018(a) allows temporary allowance of a claim in such amount as the court deems proper after notice and hearing on any pending objections. ... The court, however, regardless of the circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.

Collier on Bankruptcy ¶ 3018.01[5] (16th ed. 2011).

Collier's description of the standard to be applied to Rule 3018(a) motions is correct – it is within "the court's reasonable discretion" to grant or deny a Rule 3018(a)

1   motion. In re Zolner, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994); In re Marin Town Center,
2   142 B.R. 374, 379, (N.D. Cal. 1992); In re Goldstein, 114 B.R. 430, 432 (Bankr. E.D. Pa.
3   1990). The Zolner decision is probative of the current situation, as it involved a debtor
4   who "ignored his written contractual obligation" to certain creditors. In re Zolner, 173
5   B.R. at 634. The creditor was then forced to bring a Rule 3018(a) motion seeking
6   temporary allowance of its claim, which the bankruptcy court granted. The instant motion
7   also deals with a contract-based claim that the debtor (and its creditors) seek to ignore.

9   In this instance, PSV-309 first learned of this case when it received notice of
10  a disclosure statement hearing on October 12, 2010.[1] (Lissoy Decl., ¶ 7.) PSV-309
11  subsequently requested and received a copy of the draft disclosure statement via email on
12  October 15, 2011. (Lissoy Decl., ¶ 8.) And on October 21, 2011, PSV-309 employees
13  exchanged email correspondence with Michael Matteo, Robert Orgel, Myra Kulick and
14  Nellie Camerik wherein they asked why they received notice of the disclosure statement
15  hearing. (Lissoy Decl., ¶ 8.) No one could tell PSV-309 why they received the notice, and
16  they confirmed that PSV-309 did not appear in the debtors' schedules. (Lissoy Decl., ¶ 8.)

18  Notwithstanding the above-described exchange, a representative of PSV-309
19  attended the disclosure statement hearing on November 5, 2011, and introduced himself to
20  counsel for the Debtor and the Lehman Creditors. (Lissoy Decl., ¶ 9.) Based upon these
21  conversations, PSV-309's principal understood that professionals involved with this matter
22  would be following up with the company about the case. (Lissoy Decl., ¶ 9.) They never
23  did so. (Lissoy Decl., ¶ 9.)

25  On March 28, 2011, PSV-309 received three emails from counsel for the
26  Lehman Creditors, to which various plan and disclosure statement documents were

---

[1] That was approximately 16 months after the claims bar date lapsed in this matter.

1  affixed. (Lissoy Decl., ¶ 10.) PSV-309 then sent this matter to outside counsel, who
2  contacted the lawyers representing the Chapter 11 Trustee and the Debtor. (Lissoy Decl.,
3  ¶ 10.) The parties initiated negotiations in April of 2011, and agreed that the time used by
4  the Trustee to analyze PSV-309's claims and discuss the same with interested parties
5  (including SunCal, Lehman and the Committee) would not be used as grounds for
6  disallowance of PSV-309's claim. Unfortunately, those negotiations have yet to result in
7  any agreement regarding PSV-309's claim.

9  Given that PSV-309's claim is in excess of $10 million – the largest claim
10 held by any non-Plan proponent creditor of SunCal PSV – it is particularly important that
11 the PSV-309 claim be allowed for voting purposes. If the Debtor's schedules are to be
12 relied upon, PSV-309 has more at stake in this matter than anyone other than the Lehman
13 Creditors and SunCal PSV.

15 Concurrently with this motion, PSV-309 filed a proof of claim. Any
16 objections to the claim will ultimately need to resolved by this Court, but given the
17 schedule set for this case, it is exceedingly unlikely that such adjudication will be able to
18 take place prior to the October 24, 2011 confirmation hearing. Accordingly, if PSV-309 is
19 prohibited from voting on the Plans now, but is ultimately deemed to have an allowed
20 claim, confirmation of the Plans would have been improper. 11 U.S.C. § 1129. As such,
21 PSV-309's claim should be temporarily allowed for voting purposes.

## V. **CONCLUSION**

PSV-309 holds a substantial, valid claim in excess of $10 million that has never been scheduled. PSV-309 received no notice of this case until it was several years old, and more than a year after the claims bar date lapsed. As such, PSV-309 did not timely file a claim in this case. The relevant parties, including SunCal PSV and the

1  Lehman Creditors, were at all times aware of PSV-309's rights under the PSA and Holding
2  Agreement, including its interest in certain real estate, yet refuse to acknowledge (let alone
3  schedule) the claim. And the proposed Plans provide no treatment for PSV-309's claim.
4  Owing to these facts, PSV-309 objected to the Plans and now respectfully requests that its
5  claim be temporarily allowed for voting purposes.

7  Dated:  September 26, 2011

8                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

10                     By          */s/Richard W. Brunette*
11                                 RICHARD W. BRUNETTE
                                   AARON J. MALO
12                                 Attorneys for Creditor
                                   PALM SPRINGS VILLAGE-309, LLC

# Declaration of Scott A. Lissoy

## DECLARATION OF SCOTT A. LISSOY

I, Scott A. Lissoy, state and declare as follows:

1.  I am the Managing Member of Palm Springs Village-309, LLC, a California limited liability company ("PSV-309"). I have personal knowledge of the facts stated below concerning the business conducted by PSV-309 or knowledge based on business records under my custody and control. If called as a witness, I could and would testify competently to the following facts.

2.  PSV-309 owned a substantial amount of real property located in Palm Springs, California. By way of a Purchase and Sale Agreement ("PSA") dated March 10, 2006, PSV-309 agreed to sell certain property to SunCal PSV, LLC. A true and correct copy of the PSA is attached hereto as **Exhibit A**.

3.  The PSA called for a purchase consisting of $83 million in cash plus an amount equal to 50% of the total CFD Proceeds (as defined in the PSA in excess of $22,500,000 (the "CFD Payment"). Based upon my conversations with Carl Kymla, a CFD consultant for SunCal, I understand that the CFD Proceeds are anticipated to be approximately $40 million, which under the PSA would fix the CFD Payment owed by SunCal PSV to PSV-309 at $8.75 million.

4.  In addition, the PSA provided that certain property would be deeded to SunCal PSV, subject to an obligation to deed such property (known as the Seller Retained Lot and Seller Designated Lot) back to PSV-309 once the property was a "legal lot" under the California Subdivision Map Act. This retention of certain rights was memorialized in the PSA as well as in a document recorded in the real property records on May 16, 2006, and entitled "Memorandum of Holding Agreement," a true copy of which is attached as **Exhibit B** hereto ("Holding Agreement").

5. I later learned of, and have a copy of, a credit agreement whereby SunCal PSV obtained financing to develop the property sold by PSV-309 to SunCal PSV. The agreement entitled "$65,000,000 Term Loan and $25,000,000 Revolving Line of Credit" expressly refers to the rights of PSV-309 under the Holding Agreement and recognizes the duty of SunCal PSV to deed certain property to PSV-309 and the CFD-related obligations owed to PSV-309. A true and correct copy of the credit agreement provided to me is attached as **Exhibit C** hereto.

6. Based on the foregoing, PSV-309 has contractual claims against SunCal PSV for money consisting of 50% of the CFD Proceeds in excess of $22,500,000, a claim which would be $8.75 million based on CFD Proceeds of $40,000,000. In addition, PSV-309 has a claim consisting of its right to ownership of the properties (known as the Seller Retained Lot and Seller Designated Lot) carved out of the PSA, which SunCal PSV agreed to deed back to PSV-309.

7. I was the first person at PSV-309 to learn of this case, and I first learned of this case when I received notice of a disclosure statement hearing on October 12, 2010. I saved the envelope in which I received the notice. A true and correct copy of that envelope is attached as **Exhibit D** hereto.

8. We requested and received a copy of the draft disclosure statement via email on October 15, 2011. And on October 21, 2011, we communicated with Michael Matteo, Robert Orgel, Myra Kulick and Nellie Camerik – we asked why we received notice of the disclosure statement hearing. No one could tell us why we received the notice, and they confirmed that PSV-309 did not appear in the debtors' schedules.

9. Notwithstanding the above-described exchange, PSV-309 attended the disclosure statement hearing on November 5, 2011. At the hearing, my father (Al Lissoy)

1 | introduced himself to Mr. Pachulski and Mr. Couchot (who we understood to be counsel
2 | for the Debtor and the Lehman Creditors). Based upon these conversations, we understood
3 | that the professionals involved with this matter would be following up with us regarding
4 | the case and our possible service on the creditors committee. No one ever followed up
5 | with us.
6 |
7 |          10.    On March 28, 2011, we received three emails from counsel for the
8 | Lehman Creditors, to which various plan and disclosure statement documents were
9 | affixed. As we had never heard back from the lawyers as promised, we decided to retain
10 | outside counsel to help us with this matter. I was sent copies of various emails in which
11 | our lawyer, Aaron Malo of Sheppard Mullin, contacted the lawyers representing the
12 | Chapter 11 Trustee and the Debtor to discuss this matter in April of 2011. The materials I
13 | have subsequently received confirm that our lawyers have been working with the lawyers
14 | representing the Trustee, Lehman and the Debtor since April of 2011 in an effort to agree
15 | upon terms under which out claim can be allowed, but no agreement has been reached
16 | regarding how PSV-309's claim should be treated.
17 |
18 |          I declare under penalty of perjury under the laws of the United States of
19 | America that the foregoing is true and correct.
20 |
21 |          Executed this 26th day of September, 2011, at Santa Ana, California.
22 |
23 |                                                    _____
24 |                                                    Scott A. Lissoy
25 |
26 |
27 |
28 |

W02-WEST:1SMS1\403964839.2                    -12-