This Assignment shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, devisees, legal and personal representatives, successor and assigns.

This Assignment is an absolute conveyance of title in effect as well as in form and is intended to include and unconditionally convey any equitable or redemptive rights of Assignor and is not intended as a mortgage or security device of any kind.

This Assignment is not intended to, and shall not, merge the equitable and legal titles in the Development Rights, nor shall this Assignment release any liens or security interests securing any indebtedness encumbering the Development Rights, it being the intention of the Assignor and Assignee to keep such liens separate and distinct and in full force and effect and to maintain the priority of such liens against any other liens or encumbrances affecting the Development Rights.

[signature on following page]

IN WITNESS WHEREOF, Assignor has duly executed and delivered this Assignment effective as of the _____ day of _____, 20__.

**ASSIGNOR:**

**[NAME OF ASSIGNOR]**

By: _____
Name: _____
Title: _____

**ACKNOWLEDGMENT**

STATE OF _____ )
                         )  ss:
COUNTY OF _____ )

    On _____, 20__, before me, _____, Notary Public, personally appeared _____, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

_____
Signature of Notary Public

[Seal]

# EXHIBIT A

## Legal Description

THE LAND IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:**

CIVIL NO. 22087-R (FINAL JUDGMENT FILED JANUARY 16, 1943 IN THE DISTRICT COURT OF THE UNITED STATES IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA SOUTHERN DIVISION)

PORTION OF THE 349 ACRE TRACT OF LAND IN THE PORTION OF THE RANCHO SAN ANTONIO FINALLY CONFIRMED TO YGNACIO PERALTA, WHICH WAS CONVEYED BY SAID YGNACIO PERALTA AND RAFAELA S. DE PERALTA TO LUDEVINA IVEY, BY DEED DATED SEPTEMBER 4, 1871, RECORDED SEPTEMBER 7, 1871, IN BOOK 69 OF DEEDS, AT PAGE 457, ALAMEDA COUNTY RECORDS (WHICH TRACT IS DESIGNATED IN SAID DEED AS BEING DESCRIBED ACCORDING TO A SURVEY OF THE HILLS OF THE RANCHO OF SAID YGNACIO PERALTA ON AUGUST 28, 1871 BY LUIS CASTRO, SURVEYOR OF SAID COUNTY, AND BEING MARKED AND KNOWN IN SAID SURVEY AS DIVISION NO. 2), AND A PORTION OF THE 349 ACRE TRACT IN SAID PORTION OF THE RANCHO SAN ANTONIO WHICH WAS CONVEYED BY SAID YGNACIO PERALTA AND RAFAELA S. DE PERALTA TO RAFAEL MARTINEZ, ET AL, BY DEED DATED SEPTEMBER 4, 1871, RECORDED OCTOBER 7, 1871, IN BOOK 69 OF DEEDS, AT PAGE 468, ALAMEDA COUNTY RECORDS (WHICH TRACT IS DESIGNATED IN SAID DEED AS BEING DESCRIBED ACCORDING TO SAID SURVEY AND BEING MARKED AND KNOWN IN SAID SURVEY AS DIVISION NO. 3), DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERN LINE OF THE 349 ACRE TRACT, FIRSTLY ABOVE REFERRED TO, WITH THE NORTHEASTERN LINE OF MOUNTAIN BOULEVARD, AS DESCRIBED IN THE DEED BY ARTHUR D. KING AND FLORENCE J. KING TO CITY OF OAKLAND, DATED APRIL 30, 1937, RECORDED OCTOBER 5, 1937, IN BOOK 3523 OF OFFICIAL RECORDS OF ALAMEDA COUNTY, AT PAGE 329; AND RUNNING THENCE ALONG SAID LINE OF MOUNTAIN BOULEVARD, AS FOLLOWS:

SOUTH 24° 22' 40" EAST, 622.17 FEET; THENCE SOUTHEASTERLY, TANGENT TO THE LAST NAMED COURSE, ON A CURVE TO THE LEFT WITH A RADIUS OF 1040 FEET, A DISTANCE OF 420.03 FEET; THENCE SOUTH 47° 31' 05" EAST, 584.75 FEET; THENCE SOUTHEASTERLY, TANGENT WITH THE LAST NAMED COURSE, ON A CURVE TO THE RIGHT WITH A RADIUS OF 1060 FEET, A DISTANCE OF 760.47 FEET; THENCE SOUTH 6° 24' 46" EAST, 307.83 FEET; THENCE SOUTHEASTERLY, TANGENT WITH THE LAST NAMED COURSE, ON A CURVE TO THE LEFT WITH A RADIUS OF 1140 FEET, A DISTANCE OF 301.44 FEET; THENCE SOUTH 21° 33' 46" EAST, 268.85 FEET TO THE NORTHWESTERN LINE OF THE 29.017 ACRE TRACT OF LAND DESCRIBED IN THE DEED BY ARTHUR D. KING AND FLORENCE L. KING TO OAK KNOLL LAND CORPORATION, DATED DECEMBER 11, 1928, RECORDED FEBRUARY 16, 1929, IN BOOK 2086 OF SAID OFFICIAL RECORDS OF ALAMEDA COUNTY, AT PAGE 47; THENCE ALONG THE LAST NAMED LINE, NORTH 77° 23' 20" EAST, 181.06 FEET TO

THE NORTHERN LINE OF OAK KNOLL BOULEVARD, AS SAID BOULEVARD IS SHOWN ON THE MAP OF "FAIRWAY ESTATES IN OAK KNOLL, OAKLAND, ALAMEDA COUNTY, CALIFORNIA", FILED MARCH 14, 1929, IN BOOK 18 OF MAPS, AT PAGES 59, 60 AND 61, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY; THENCE ALONG THE LAST NAMED LINE AND ALONG THE WESTERN LINE OF BARCELONA STREET, FORMERLY OAK KNOLL BOULEVARD, AS SHOWN ON SAID MAP, AS FOLLOWS:

NORTHEASTERLY ON A CURVE TO THE LEFT WITH A RADIUS OF 200 FEET, A DISTANCE OF 60.13 FEET; THENCE NORTH 44° 15' EAST, 108.39 FEET; THENCE EASTERLY, TANGENT TO THE LAST NAMED COURSE, ON A CURVE TO THE RIGHT WITH A RADIUS OF 150 FEET, A DISTANCE OF 158.46 FEET; THENCE SOUTH 75° 13' 20" EAST, 36.79 FEET; THENCE EASTERLY, TANGENT WITH THE LAST NAMED COURSE, ON A CURVE TO THE LEFT, WITH A RADIUS OF 200 FEET, A DISTANCE OF 238.33 FEET; THENCE NORTH 36° 30' EAST, 162.17 FEET; THENCE NORTHERLY, TANGENT WITH THE LAST NAMED COURSE, ON A CURVE TO THE LEFT WITH A RADIUS OF 90.64 FEET, A DISTANCE OF 108 FEET; THENCE NORTH 31° 46' 15" WEST, 907.58 FEET, TO THE NORTHWESTERN LINE OF SAID "FAIRWAY ESTATES IN OAK KNOLL", AS SHOWN ON SAID MAP THEREOF; THENCE ALONG THE LAST NAMED LINE AND ALONG THE NORTHWESTERN LINE OF THE 58.16 ACRE TRACT OF LAND DESCRIBED IN THE DEED BY WILLIAM H. IVEY TO FRANCISCO PERALTA, DATED JULY 3, 1873, RECORDED JULY 3, 1873, IN BOOK 92 OF DEEDS, AT PAGE 115, ALAMEDA COUNTY RECORDS, NORTH 58° 13' 45" EAST, 4700 FEET; THENCE NORTH 31° 46' 15" WEST, 2250 FEET, MORE OR LESS, TO THE NORTHWESTERN LINE OF SAID 349 ACRE TRACT CONVEYED TO RAFAEL MARTINEZ, ET AL; THENCE ALONG THE LAST NAMED LINE, SOUTH 58° 10' 38" WEST, 2600 FEET, MORE OR LESS, TO THE EASTERN LINE OF THE 1 ACRE PARCEL OF LAND DESCRIBED IN THE DEED BY ARTHUR D. KING AND FLORENCE L. KING TO EAST BAY WATER COMPANY, DATED SEPTEMBER 17, 1924 AND RECORDED SEPTEMBER 19, 1924, IN BOOK 766 OF SAID OFFICIAL RECORDS, AT PAGE 472; THENCE ALONG THE LAST NAMED LINE, SOUTH 12° 10' 38" WEST, 252.32 FEET; THENCE SOUTH 58° 10' 38" WEST, 240 FEET; THENCE NORTH 12° 10' 38" EAST, 252.32 FEET TO THE NORTHWESTERN LINE OF THE LAST MENTIONED 349 ACRE TRACT; THENCE ALONG THE LAST NAMED LINE AND EXTENSION THEREOF, SOUTH 58° 10' 38" WEST, 2500 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

**PARCEL 2**:

CIVIL NO. 22276-S (AMENDED FINAL JUDGMENT FILED AUGUST 1, 1944 IN THE DISTRICT COURT OF THE UNITED STATES IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA SOUTHERN DIVISION. A COPY OF WHICH RECORDED ON OCTOBER 21, 1944 IN LIBER 4582, PAGE 486, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA)

A PORTION OF PARCEL 10 AS DESCRIBED IN THE DEED FROM ELSIE LAIRD TO HUTCHINSON REALTY COMPANY, DATED NOVEMBER 28, 1933, RECORDED FEBRUARY 28, 1934, IN BOOK 2995 OF OFFICIAL RECORDS OF ALAMEDA COUNTY, PAGE 409, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHEASTERN LINE OF MOUNTAIN BOULEVARD, AS SAID LINE OF MOUNTAIN BOULEVARD IS DEFINED IN THE DEED BY HUTCHINSON REALTY COMPANY TO THE CITY OF OAKLAND, DATED JUNE 18, 1937, RECORDED JULY 23, 1937, IN BOOK 3489 OF OFFICIAL RECORDS OF ALAMEDA COUNTY, PAGE 346, WITH THE NORTHERN LINE OF SAID PARCEL 10; RUNNING THENCE ALONG SAID LINE OF SAID PARCEL 10, NORTH 77° 23' 20" EAST, 181.06 FEET TO THE MOST EASTERN CORNER OF SAID PARCEL 10; THENCE ALONG THE NORTHWESTERN LINE OF OAK KNOLL BOULEVARD, AS SAID BOULEVARD IS SHOWN ON THE MAP OF "FAIRWAY ESTATES IN OAK KNOLL, OAKLAND, ALAMEDA COUNTY, CALIFORNIA", FILED MARCH 14, 1929, IN BOOK 18 OF MAPS, PAGES 59, 60 AND 61, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY, AS FOLLOWS: SOUTHWESTERLY ON THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 200 FEET, A DISTANCE OF 15.30 FEET; THENCE ON THE ARC OF A REVERSE CURVE TO THE LEFT WITH A RADIUS OF 200 FEET, A DISTANCE OF 50.70 FEET; THENCE TANGENT WITH THE LAST NAMED COURSE, SOUTH 51° 20' WEST, 51.37 FEET TO THE MOST EASTERN CORNER OF SAID LAND DESCRIBED IN SAID LAST MENTIONED DEED; THENCE ALONG THE NORTHERN LINE OF SAID LAND DESCRIBED IN SAID LAST MENTIONED DEED, WESTERLY AND NORTHWESTERLY ON THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 50 FEET, A DISTANCE OF 93.47 FEET TO A POINT ON SAID LINE OF MOUNTAIN BOULEVARD, FROM WHICH THE CENTER OF SAID CURVE HAVING A RADIUS OF 50 FEET BEARS NORTH 68° 26' 14" EAST, 50 FEET; THENCE ALONG SAID LINE OF MOUNTAIN BOULEVARD, NORTH 21° 33' 46" WEST, 5.40 FEET TO THE POINT OF BEGINNING.

**PARCEL 3**:

CIVIL NO. 24608-G (JUDGMENT FILED JUNE 4, 1945 IN THE DISTRICT COURT OF THE UNITED STATES IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA SOUTHERN DIVISION. A COPY OF WHICH RECORDED ON JUNE 11, 1945 IN LIBER 4742, PAGE 23, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA)

BEGINNING AT THE INTERSECTION OF THE SOUTHERN LINE OF PLOT LETTERED "P", NOW KNOWN AS ST. ANDREWS ROAD, WITH THE DIVIDING LINE BETWEEN LOTS NUMBERED 175 AND 177, AS SAID PLOT AND LOTS ARE SHOWN ON THE MAP ENTITLED, "MAP OF SUBDIVISION OF SEQUOYAH HILLS, OAKLAND, CALIFORNIA", FILED FOR RECORD APRIL 3, 1914, IN BOOK 28 OF MAPS, AT PAGES 63 AND 64, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY, AND RUNNING THENCE ALONG SAID DIVIDING LINE, SOUTH 11° 13' 40" WEST, 113.00 FEET TO THE CORNER COMMON TO LOTS NUMBERED 175, 176 AND 177, AS SHOWN ON SAID MAP (THE BEARING OF SAID DIVIDING LINE BEING TAKEN AS SOUTH 11° 13' 40" WEST FOR THE PURPOSE OF MAKING THIS DESCRIPTION); THENCE ALONG THE DIVIDING LINE BETWEEN LOTS NUMBERED 175 AND 176, AS SHOWN ON SAID MAP, SOUTH 74° 30' 30" WEST, 186.61 FEET TO THE CORNER COMMON TO LOTS NUMBERED 173, 174, 175 AND 176, AS SHOWN ON SAID MAP; THENCE SOUTH 61° 20' 30" WEST, 312.88 FEET TO THE MOST EASTERN CORNER OF LOT F 12, AS SAID LOT IS SHOWN ON THE MAP ENTITLED, "FAIRWAY ESTATES IN

OAK KNOLL, OAKLAND, ALAMEDA COUNTY, CALIFORNIA", FILED FOR RECORD MARCH 14, 1929, IN BOOK 18 OF MAPS, AT PAGES 59 AND 60, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY; THENCE ALONG THE DIVIDING LINE BETWEEN LOTS F 12 AND F 13, AS SHOWN ON THE LAST-NAMED MAP, SOUTH 58° 13' WEST, 110.00 FEET TO THE NORTHEASTERN LINE OF BARCELONA STREET, FORMERLY OAK KNOLL BOULEVARD, AS SAID BOULEVARD IS SHOWN ON THE LAST-NAMED MAP; THENCE ALONG SAID NORTHEASTERN LINE, SOUTH 31° 47' EAST, 27.58 FEET; THENCE CONTINUING ALONG SAID NORTHEASTERN LINE, ALONG THE ARC OF A CURVE TO THE RIGHT, FROM A TANGENT BEARING SOUTH 31° 47' EAST, WITH A RADIUS OF 140.64 FEET, THROUGH AN ANGLE OF 68° 16' 15", FOR A DISTANCE OF 167.58 FEET; THENCE NORTH 53° 30' 45" WEST, 50.00 FEET TO THE WESTERN LINE OF SAID BOULEVARD; THENCE ALONG THE LAST NAMED LINE, ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING NORTH 36° 29' 15" EAST, WITH A RADIUS OF 90.64 FEET, THROUGH AN ANGLE OF 68° 16' 15", FOR A DISTANCE OF 108.00 FEET; THENCE ALONG THE SOUTHWESTERN LINE OF SAID BOULEVARD, NORTH 31° 47' WEST, 907.58 FEET TO THE INTERSECTION THEREOF WITH THE DIRECT EXTENSION SOUTHWESTERLY OF THE NORTHWESTERN LINE OF LOT F 1, AS SHOWN ON SAID MAP; THENCE ALONG SAID EXTENSION AND ALONG THE NORTHWESTERN LINE OF SAID LOT F 1, NORTH 58° 13' EAST, 160.00 FEET TO THE MOST NORTHERN CORNER OF SAID LOT F 1; THENCE ALONG THE NORTHEASTERN LINE OF LOTS F 1 TO F 9, INCLUSIVE, AS SHOWN ON THE LAST NAMED MAP, SOUTH 31° 47' EAST, 599.89 FEET TO THE INTERSECTION THEREOF WITH THE DIRECT EXTENSION SOUTHWESTERLY OF THE NORTHWESTERN LINE OF LOT NUMBERED 170, AS SAID LOT IS SHOWN ON THE MAP FIRSTLY HEREINABOVE REFERRED TO; THENCE ALONG THE LAST-NAMED EXTENSION, ALONG THE NORTHWESTERN LINE OF SAID LOT NUMBERED 170 AND ALONG THE DIRECT EXTENSION NORTHEASTERLY OF SAID NORTHWESTERN LINE, NORTH 37° 21' EAST, 215.53 FEET TO THE NORTHERN LINE OF SAID PLOT LETTERED "P"; THENCE ALONG THE LAST-NAMED LINE, AS FOLLOWS: EASTERLY ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING SOUTH 52° 39' EAST, WITH A RADIUS OF 210.00 FEET, THROUGH AN ANGLE OF 33° 28' 20", FOR A DISTANCE OF 122.67 FEET; THENCE SOUTH 86° 07' 20" EAST, 284.63 FEET; THENCE ALONG THE ARC OF A CURVE TO THE RIGHT, FROM A TANGENT BEARING SOUTH 86° 07' 20" EAST, WITH A RADIUS OF 792.00 FEET, THROUGH AN ANGLE OF 16° 23' FOR A DISTANCE OF 226.47 FEET; THENCE ALONG THE ARC OF A CURVE TO THE RIGHT, FROM A TANGENT BEARING SOUTH 69° 44' 20" EAST, WITH A RADIUS OF 187.49 FEET, THROUGH AN ANGLE OF 48° 04' 20", FOR A DISTANCE OF 157.30 FEET; THENCE ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING SOUTH 31° 40' EAST, WITH A RADIUS OF 20.00 FEET, THROUGH AN ANGLE OF 73° 39' 20", FOR A DISTANCE OF 25.71 FEET TO THE NORTHERN LINE OF PLOT LETTERED "E", NOW KNOWN AS SEQUOYAH ROAD, AS SAID PLOT "E" IS SHOWN ON THE MAP FIRSTLY HEREINABOVE REFERRED TO; THENCE ALONG THE LAST-NAMED LINE, ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING SOUTH 84° 40' 40" WEST, WITH A RADIUS OF 327.00 FEET, THROUGH AN ANGLE OF 10° 52' 20", FOR A DISTANCE OF 62.05 FEET; THENCE LEAVING THE LAST NAMED LINE

AND RUNNING ALONG THE SOUTHERN LINE OF SAID PLOT LETTERED "P", ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING NORTH 73° 48' 20" EAST, WITH A RADIUS OF 20.00 FEET, THROUGH AN ANGLE OF 100° 26' 50", FOR A DISTANCE OF 35.06 FEET; THENCE CONTINUING ALONG SAID SOUTHERN LINE, ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING NORTH 26° 38' 30" EAST, WITH A RADIUS OF 163.49 FEET, THROUGH AN ANGLE OF 43° 05' 50", FOR A DISTANCE OF 122.98 FEET; THENCE CONTINUING ALONG SAID SOUTHERN LINE, ALONG THE ARC OF A CURVE TO THE LEFT, FROM A TANGENT BEARING NORTH 69° 44' 20" WEST, WITH A RADIUS OF 768.00 FEET, THROUGH AN ANGLE OF 9° 02', FOR A DISTANCE OF 121.08 FEET TO THE POINT OF BEGINNING.

**PARCEL 4**:

QUITCLAIM DEED (ANMAR INVESTMENTS INCORPORATED TO UNITED STATES OF AMERICA RECORDED IN OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA, JULY 16, 1980 AS DOCUMENT NO. 80-119199).

A PARCEL OF LAND LYING IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, BEING A PORTION OF THAT CERTAIN PARCEL OF LAND LYING IN PARCEL 2 AS DESCRIBED BY QUIT CLAIM DEED FILED FOR RECORD IN SAID COUNTY AT REEL 5703, IMAGE 51, DATED DECEMBER 4, 1978, DESCRIBED AS FOLLOWS:

COMMENCING FOR POINT OF REFERENCE AT THE SOUTHWESTERLY CORNER OF SAID PARCEL 2;

(I) THENCE ALONG THE WESTERLY AND NORTHERLY BOUNDARY LINE OF SAID PARCEL 2, ALONG A NON-TANGENT CURVE TO THE RIGHT HAVING A RADIAL BEARING OF NORTH 57° 58' 24" EAST FROM THE BEGINNING OF CURVE TO THE POINT OF RADIUS, A RADIUS OF 150.00 FEET, THROUGH A CENTRAL ANGLE OF 73° 30' 00", FOR AN ARC LENGTH OF 192.42 FEET;

(II) THENCE CONTINUING ALONG SAID NORTHERLY BOUNDARY LINE, NORTH 41° 14' 37" EAST, 88.16 FEET TO THE TRUE POINT OF BEGINNING.

1. THENCE LEAVING SAID NORTHERLY BOUNDARY LINE, SOUTH 48° 45' 23" EAST, 22.00 FEET;

2. THENCE PARALLEL WITH SAID NORTHERLY BOUNDARY LINE, NORTH 41° 14' 37" EAST, 93.00 FEET;

3. THENCE NORTH 48° 45' 23" WEST, 22.00 FEET TO SAID NORTHERLY BOUNDARY LINE;

4. THENCE ALONG SAID NORTHERLY BOUNDARY LINE, SOUTH 41° 14' 37" WEST, 93.00 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING FROM THE LANDS DESCRIBED HEREINABOVE AS PARCELS 1 THROUGH 4, THE FOLLOWING:

(A) QUITCLAIM DEED TO SEACREST COMPANY, A CO-PARTNERSHIP, ET AL, RECORDED MARCH 8, 1962, IN REEL 531, IMAGE 519, DOCUMENT NO. AT-30784, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA.

(B) QUITCLAIM DEED TO THE CITY OF OAKLAND, A MUNICIPAL CORPORATION, RECORDED SEPTEMBER 26, 1978, IN REEL 5597, IMAGE 223, DOCUMENT NO. 78-187144, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA.

(C) QUITCLAIM DEED TO WILLIAM A. HARDENSTINE, ET UX, RECORDED DECEMBER 4, 1978, IN REEL 5703, IMAGE 51, DOCUMENT NO. 78-236024, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA.

(D) QUITCLAIM DEED TO THE SENECA RESIDENTIAL AND DAY TREATMENT CENTER FOR CHILDREN, RECORDED JANUARY 30, 2002, SERIES NO. 2002048897, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA.

(E) QUITCLAIM DEED TO SEA WEST COAST GUARD FEDERAL CREDIT UNION, RECORDED MAY 7, 2002, SERIES NO. 2002202441, OFFICIAL RECORDS OF ALAMEDA COUNTY, CALIFORNIA.

(F) QUITCLAIM DEED TO THE REDEVELOPMENT AGENCY OF THE CITY OF OAKLAND, A STATE OF CALIFORNIA AGENCY, RECORDED AUGUST 15, 2005, AS SERIES NO. 2005348212 IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY, CALIFORNIA AND SHOWN AS PARCEL A ON PARCEL MAP 8730 FILED OCTOBER 3, 2005 IN BOOK 284 OF MAPS AT PAGES 63-65 IN THE OFFICE OF THE COUNTY RECORDER OF SAID ALAMEDA COUNTY.

**ASSESSOR'S PARCEL NO'S:**

043A-4675-003-21
048-6865-002-03
048-6870-001

## EXHIBIT B

### Development Agreements and CCRs

NONE

## ASSIGNMENT OF DEVELOPMENT RIGHTS

FOR VALUE RECEIVED, the undersigned, **[NAME OF GRANTOR]** ("Assignor"), hereby transfers, conveys and assigns to **[NAME OF GRANTEE]**, a Delaware limited liability company ("Assignee"), with respect to the real property located in Riverside County, California and more particularly described on Exhibit A attached hereto and made a part hereof (the "Real Property"), (i) all of Assignor's right, title and interest in, to, under or with respect to all development, use, air, zoning, water, infrastructure, building and other rights and entitlements in connection with or in any way associated with the development of or construction on the Real Property or any portion thereof including, without limitation, rights under or with respect to any environmental impact reports, specific plans, mitigation agreements, permits and any other documents relating to entitlements or approvals and LAFCO or any other annexation, (ii) all rights, interests, powers and benefits of the Assignor as a developer or declarant of the Real Property or any portion thereof under any declaration, development agreement or other similar agreement for the development, construction, management, or maintenance of the Real Property or any portion thereof, or under any covenant, restriction, or condition affecting the Real Property or any portion thereof including, without limitation, all of the rights and benefits of Assignor as developer or declarant under the documents more particularly described on Exhibit B attached hereto and made a part hereof (collectively, the "Development Agreements"), together with all voting rights, declarant's rights, developer's rights, and similar rights arising under any Development Agreements, (iii) all rights of or reservations onto Assignor under any deed or easement, or any similar instrument, affecting all or any portion of the Real Property, and (iv) all subdivision rights pursuant to any tentative or final parcel site or subdivision map or similar item (or any amendment of or modification to any such map or other similar item) pertaining to or in any manner affecting all or any portion of the Real Property, in each case described in clauses (i) through (iv) above, whether or not appurtenant to the Real Property and including, without limitation, all uses, benefits, proceeds of, or incident to, such rights, interests, powers and benefits (all of the foregoing rights and benefits being collectively referred to herein as the "Development Rights").

TOGETHER WITH all of Assignor's right, title and interest in and to and all powers and benefits of Assignor derived from any corporations, associations or equivalent entities that may now or may hereafter own or manage any common areas or facilities located on any portion of the Real Property and the uses, benefits and proceeds of, or incident to, such rights, interests, powers and benefits, and further together with all proceeds, profits, income and all other sums of money (principal, interest or otherwise) now or hereafter payable to Assignor arising under, out of or in connection with any of the Development Agreements or other Development Rights.

Assignor does hereby agree to perform, execute and/or deliver with reasonable promptness after its receipt from Assignee of written demand for same, any and all such further acts and assurances as Assignee may reasonably require to properly consummate the assignment of the Development Rights to Assignee including, without limitation, obtaining any consents required in connection therewith.

       This Assignment shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, devisees, legal and personal representatives, successor and assigns.

       This Assignment is an absolute conveyance of title in effect as well as in form and is intended to include and unconditionally convey any equitable or redemptive rights of Assignor and is not intended as a mortgage or security device of any kind.

       This Assignment is not intended to, and shall not, merge the equitable and legal titles in the Development Rights, nor shall this Assignment release any liens or security interests securing any indebtedness encumbering the Development Rights, it being the intention of the Assignor and Assignee to keep such liens separate and distinct and in full force and effect and to maintain the priority of such liens against any other liens or encumbrances affecting the Development Rights.

[signature on following page]

IN WITNESS WHEREOF, Assignor has duly executed and delivered this Assignment effective as of the _____ day of _____, 20__.

**ASSIGNOR:**

**[NAME OF ASSIGNOR]**

By: _____
Name: _____
Title: _____

**ACKNOWLEDGMENT**

STATE OF _____ )
                          )   ss:
COUNTY OF _____   )

On _____, 20__, before me, _____, Notary Public, personally appeared _____, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

[Seal]

# EXHIBIT A

## Legal Description

THE LAND IS SITUATED IN THE CITY OF PALM SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOTS 1 THROUGH 398, INCLUSIVE, LETTERED LOTS D THROUGH Z, INCLUSIVE, AND AA THROUGH AS, INCLUSIVE, OF TRACT NO. 31848-1, IN THE CITY OF PALM SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 414, PAGES 49 THROUGH 73, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS AMENDED BY A CERTIFICATE OF CORRECTION RECORDED JUNE 15, 2007, AS INSTRUMENT NO. 2007-0393884 OF OFFICIAL RECORDS.

TOGETHER WITH THAT PORTION OF PARCEL B OF LOT LINE ADJUSTMENT NO. LLA-05-04, RECORDED APRIL 29, 2005, AS INSTRUMENT NO. 2005-0338402, OF OFFICIAL RECORDS, SHOWN AS THE REMAINDER PARCEL ON THE MAP OF TRACT NO. 31848-1.

EXCEPT THEREFROM THE PROPERTY CONTAINED IN GRANT DEED TO THE CITY OF PALM SPRINGS, PER INSTRUMENT NO. 2007-0059376, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO EXCEPTING THEREFROM ALL OIL, GAS AND HYDROCARBON SUBSTANCES, TOGETHER WITH MINERALS AND MINERAL RIGHTS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY AS RESERVED BY PALM SPRINGS VILLAGE-309, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, IN DEEDS RECORDED MAY 12, 2006, AS INSTRUMENT NO. 2006-0349506, AND RECORDED FEBRUARY 13, 2007, AS INSTRUMENT NO. 2007-0101845, BOTH OF OFFICIAL RECORDS.

APN Nos: 669-330-44; 669-730-001 TO 059; 669-740-001 TO 071; 669-750-001 TO 055; 669-760-001 TO 050; 669-770-001 TO 055; 669-780-001 TO 065; 669-790-001 TO 053 AND 669-800-001 TO 019

## EXHIBIT B

**Development Agreements and CCRs**

NONE

Del Amo/Torrance

## ASSIGNMENT OF DEVELOPMENT RIGHTS

FOR VALUE RECEIVED, the undersigned, **[NAME OF GRANTOR]** ("Assignor"), hereby transfers, conveys and assigns to **[NAME OF GRANTEE]**, a Delaware limited liability company ("Assignee"), with respect to the real property located in Los Angeles County, California and more particularly described on Exhibit A attached hereto and made a part hereof (the "Real Property"), (i) all of Assignor's right, title and interest in, to, under or with respect to all development, use, air, zoning, water, infrastructure, building and other rights and entitlements in connection with or in any way associated with the development of or construction on the Real Property or any portion thereof including, without limitation, rights under or with respect to any environmental impact reports, specific plans, mitigation agreements, permits and any other documents relating to entitlements or approvals and LAFCO or any other annexation, (ii) all rights, interests, powers and benefits of the Assignor as a developer or declarant of the Real Property or any portion thereof under any declaration, development agreement or other similar agreement for the development, construction, management, or maintenance of the Real Property or any portion thereof, or under any covenant, restriction, or condition affecting the Real Property or any portion thereof including, without limitation, all of the rights and benefits of Assignor as developer or declarant under the documents more particularly described on Exhibit B attached hereto and made a part hereof (collectively, the "Development Agreements"), together with all voting rights, declarant's rights, developer's rights, and similar rights arising under any Development Agreements, (iii) all rights of or reservations onto Assignor under any deed or easement, or any similar instrument, affecting all or any portion of the Real Property, and (iv) all subdivision rights pursuant to any tentative or final parcel site or subdivision map or similar item (or any amendment of or modification to any such map or other similar item) pertaining to or in any manner affecting all or any portion of the Real Property, in each case described in clauses (i) through (iv) above, whether or not appurtenant to the Real Property and including, without limitation, all uses, benefits, proceeds of, or incident to, such rights, interests, powers and benefits (all of the foregoing rights and benefits being collectively referred to herein as the "Development Rights").

TOGETHER·WITH all of Assignor's right, title and interest in and to and all powers and benefits of Assignor derived from any corporations, associations or equivalent entities that may now or may hereafter own or manage any common areas or facilities located on any portion of the Real Property and the uses, benefits and proceeds of, or incident to, such rights, interests, powers and benefits, and further together with all proceeds, profits, income and all other sums of money (principal, interest or otherwise) now or hereafter payable to Assignor arising under, out of or in connection with any of the Development Agreements or other Development Rights.

Assignor does hereby agree to perform, execute and/or deliver with reasonable promptness after its receipt from Assignee of written demand for same, any and all such further acts and assurances as Assignee may reasonably require to properly consummate the assignment of the Development Rights to Assignee including, without limitation, obtaining any consents required in connection therewith.

    This Assignment shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, devisees, legal and personal representatives, successor and assigns.

    This Assignment is an absolute conveyance of title in effect as well as in form and is intended to include and unconditionally convey any equitable or redemptive rights of Assignor and is not intended as a mortgage or security device of any kind.

    This Assignment is not intended to, and shall not, merge the equitable and legal titles in the Development Rights, nor shall this Assignment release any liens or security interests securing any indebtedness encumbering the Development Rights, it being the intention of the Assignor and Assignee to keep such liens separate and distinct and in full force and effect and to maintain the priority of such liens against any other liens or encumbrances affecting the Development Rights.

[signature on following page]

IN WITNESS WHEREOF, Assignor has duly executed and delivered this Assignment effective as of the _____ day of _____, 20__.

**ASSIGNOR:**

**[NAME OF ASSIGNOR]**

By: _____
Name: _____
Title: _____

**ACKNOWLEDGMENT**

STATE OF _____ )
                        )  ss:
COUNTY OF _____ )

On _____, 20__, before me, _____, Notary Public, personally appeared _____, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

[Seal]

SIGNATURE PAGE TO ASSIGNMENT OF DEVELOPMENT RIGHTS (DEL AMO/TORRANCE)

## EXHIBIT A

### Legal Description

THE LAND IS SITUATED IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 6 OF PARCEL MAP NO. 1387, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP FILED IN BOOK 23, PAGES 71 AND 72 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH ALL OF PARCELS 7 AND 8 AND THOSE PORTIONS OF PARCELS 4 AND 9 OF SAID PARCEL MAP NO. 1387, DESCRIBED AS PARCEL 2 IN CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT, RECORDED MARCH 20, 2007, AS INSTRUMENT NO. 2007-0625665, OF SAID OFFICIAL RECORDS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF PARCEL 4 OF PARCEL MAP NO. 1387, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA PER MAP FILED IN BOOK 23, PAGES 71 AND 72, OF PARCEL MAPS, RECORDS OF SAID COUNTY, LYING EASTERLY OF THE SOUTHERLY PROLONGATION OF THE WESTERLY LINE OF PARCEL 6 OF SAID PARCEL MAP NO. 1387; AND THAT PORTION OF PARCEL 9 OF SAID PARCEL MAP NO. 1387, LYING EASTERLY OF THE NORTHERLY PROLONGATION OF THE MOST WESTERLY LINE OF PARCEL 7 OF SAID PARCEL MAP NO. 1387; TOGETHER WITH ALL OF PARCELS 7 AND 8 OF SAID PARCEL MAP NO. 1387.

EXCEPT THEREFROM THAT PORTION OF SAID PARCEL 4 DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEASTERLY CORNER OF SAID PARCEL 4; THENCE ALONG THE EASTERLY LINE OF SAID PARCEL 4 SOUTH 00° 04' 00" WEST 176.88 FEET TO THE TRUE POINT OF BEGINNING; THENCE

1. PARALLEL WITH THE NORTHERLY LINE OF SAID PARCEL 4, NORTH 89° 56' 00" WEST 309.75 FEET; THENCE

2. PARALLEL WITH THE EASTERLY LINE OF SAID PARCEL 4, SOUTH 00° 04' 00" WEST 272.15 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID PARCEL 4; THENCE

3. ALONG SAID SOUTHERLY LINE NORTH 89° 27' 31" EAST 309.77 FEET TO THE SOUTHEASTERLY CORNER OF SAID PARCEL 4; THENCE

4. ALONG THE EASTERLY LINE OF SAID PARCEL 4, NORTH 00° 04' 00" EAST 268.86 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THE OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS PROVIDED IN THE DEEDS FROM G. DEL AMO AND SUSANA D. DEL AMO, HUSBAND AND WIFE, RECORDED IN BOOK

2383, PAGE 281, OFFICIAL RECORDS, AND IN BOOK 3022, PAGE 41, OFFICIAL RECORDS, WHICH DEEDS PROVIDE THAT SAID EXCEPTED AND RESERVED RIGHTS ARE SUBJECT TO THE LIMITATION THAT THEY SHALL NEVER BE EXERCISED BY G. DEL AMO AND SUSANA D. DEL AMO OR ANY OF THEIR HEIRS OR ASSIGNS, IN SUCH WAYS AS TO INTERFERE WITH OR DISTURB THE FULL USE AND ENJOYMENT OF BUILDINGS OR STRUCTURES PLACED ON SAID LAND BY THE GRANTEE IN SAID DEEDS OR ANYONE CLAIMING THEREUNDER.

BY QUITCLAIM DEEDS DATED JANUARY 29, 1970, RECORDED JANUARY 30, 1970, AS INSTRUMENT NOS. 1022 AND 1023, IN BOOK D-4620, PAGES 907 AND 912 RESPECTIVELY, OFFICIAL RECORDS, PETROLEUM LAKES-GLAZER COMPANY, AS THE OWNER AND HOLDER OF SAID OIL AND OTHER MINERAL RIGHTS, RELEASED AND SURRENDERED ALL SUCH RIGHTS INCLUDING, WITHOUT LIMITATION ALL RIGHTS OF ENTRY UPON, IN OR UNDER ANY PORTION OF THE GROUND SURFACE OF SAID LAND WHICH IS LESS THAN 500 FEET BELOW SUCH GROUND SURFACE FOR ANY AND ALL PURPOSES.

APN: 7366-019-051, 052, 124, 125

## EXHIBIT B

### Development Agreements and CCRs

Declaration of Covenants, Conditions and Restrictions dated December 22, 2005, by and between Del Amo Residual Operating Company, L.L.C. and Del Amo Fashion Center Operating Company, L.L.C., recorded December 30, 2005, Instrument No. 05-3231944, of Official Records

Additional Declaration of Covenants, Conditions and Restrictions dated December 22, 2005, by and between SunCal Torrance Properties, LLC and Del Amo Fashion Center Operating Company, L.L.C., recorded December 30, 2005, Instrument No. 05-3231948, of Official Records

First Amendment to Declaration of Covenants, Conditions and Restrictions and First Amendment to Additional Declaration of Covenants, Conditions and Restrictions among SunCal Torrance Properties, LLC, Del Amo Residual Operating Company, L.L.C. and Del Amo Fashion Center Operating Company, L.L.C., recorded December 20, 2006, Instrument No. 20062831894, of Official Records