PAUL J. COUCHOT - State Bar No. 131934
pcouchot@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession

RONALD RUS State Bar No. 67369
rrus@rusmiliband.com
JOEL S. MILIBAND - State Bar No. 77438
jmiliband@rusmiliband.com
**RUS MILIBAND & SMITH P.C.**
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

Counsel for SCC Acquisitions, Inc.

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Palmdale Hills Property, LLC, and its Related Debtors.<br><br>     Jointly Administered Debtors<br>     and Debtors-in-Possession<br><br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC,<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☒ Seven Brothers LLC<br>☒ SJD Partners, Ltd.<br>☒ SJD Development Corp.<br>☒ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br><br>    ***Caption Continued on Next Page*** | Case No. 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574 ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11 Proceedings<br><br>**DECLARATION OF BRUCE V. COOK IN SUPPORT OF SUNCAL PLAN PROPONENTS' GROUP I VD PLANS, GROUP II VD PLANS, GROUP III VD PLANS, GROUP IV VD PLANS, GROUP I TD PLANS AND GROUP II TD PLANS** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Caption Continued from Previous Page*

☒ SCC Communities LLC

☒ North Orange Del Rio Land, LLC

☒ Tesoro SF, LLC

☒ SunCal Heartland, LLC

☒ LBL-SunCal Northlake, LLC

☒ SunCal Marblehead, LLC

☒ SunCal Century City, LLC

☒ SunCal PSV, LLC

☒ Delta Coves Venture, LLC

☒ SunCal Torrance, LLC

☒ SunCal Oak Knoll, LLC

**Confirmation Hearing:**

DATE:      October 24, 2010

TIME:      9:00 a.m.

PLACE:     Courtroom. 5A

Declaration of B. Cook Re Confirmation v5

## **DECLARATION OF BRUCE V. COOK**

I, Bruce V. Cook, hereby declare and state as follows:

1.      I am over the age of eighteen years. The facts stated herein are within my personal knowledge, or I have obtained knowledge of these facts from the books and records of the debtors listed on the face page of this pleading (collectively the "SunCal Debtors").

2.      I am the General Counsel for SunCal Management, LLC ("Management") and SCC Acquisitions, Inc. ("SCC"). SCC is either a direct or an indirect equity holder of the nine Trustee Debtors.[1] I am also the current General Counsel for all of the Voluntary Debtors[2]. In most cases I have served in this capacity since the formation of these entities.

3.      Management has been responsible for maintaining the books and records of the Voluntary Debtors since their formation and for the Trustee Debtors from formation up to appointment of the Trustee, and also has access to certain books and records since such appointment.

4.      In my capacity as General Counsel of Management, I am generally familiar with the preparation and retention of the SunCal Debtors' books and records. Such records have consistently been prepared and maintained in the ordinary course, in a regular and business-like manner.

5.      All references herein to sections of the bankruptcy code were provided by Winthrop Couchot, P.C., General Insolvency Counsel to the Voluntary Debtors and I am relying in this declaration on the veracity of these citations and quotations. The matters that I am responsible for and that I am testifying to herein are the actual content of the SunCal Plans that is responsive to these statutory sections, or the conduct by the SunCal Proponents that is in conformance therewith. All capitalized terms used herein have the same meaning as the

---

[1] Delta Coves Venture, LLC, SunCal Heartland, LLC, SunCal Marblehead, LLC, LBL-SunCal Northlake, LLC, LBL-SunCal Oak Valley, LLC, SunCal Century City, LLC, SunCal PSV, LL,  SunCal Torrance, LLC and SunCal Oak Knoll, LLC.

[2] Palmdale Hills Property, LLC, SunCal Communities I, LLC, SunCal Communities III, LLC, SCC Palmdale, LLC, Acton Estates, LLC, SunCal Beaumont Heights, LLC, SunCal Emerald Meadows, LLC SunCal Johansson Ranch, LLC, SunCal Bickford Ranch, LLC, SunCal Summit Valley, LLC, Seven Brothers, LLC, Kirby Estates, LLC, SJD Partners, Ltd., SJD Development Corp., SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF, LLC.

1    corresponding defined terms in the SunCal Plans unless otherwise indicated herein.

2         6.        The Voluntary Debtors[3] and SCC Acquisitions, Inc. ("SCC Acquisitions"), in their

3    capacity as co-plan proponents in certain of these jointly administered Chapter 11 cases

4    (collectively the "SunCal Proponents"),[4] have proposed and filed the following Chapter 11 plans:

5              A. Third Amended Chapter 11 Plans filed by the SunCal Proponents in the Chapter

6    11 cases of Palmdale Hills Property, LLC, SunCal Bickford Ranch, LLP, SunCal Emerald

7    Meadows, LLC and Acton Estates, LLC [Group I: Voluntary Debtors] ("Group I VD Plans");

8              B. Third Amended Chapter 11 Plans filed by SunCal Plan Proponents in the

9    Chapter 11 Cases of Suncal Beaumont Heights, LLC and SunCal Johannson Ranch, LLC [Group

10   II: Voluntary Debtors] ("Group II VD Plans");

11             C. Third Amended Chapter 11 Plans filed by SunCal Plan Proponents in the

12   Chapter 11 Cases of SCC Communities, LLC, North Orange Del Rio Land, LLC and Tesoro SF,

13   LLC [Group III: Voluntary Debtors] ("Group III VD Plans");

14             D. Fourth Amended Joint Chapter 11 Plan filed by the SunCal Proponents in the

15   Chapter 11 cases of SJD Partners, Ltd. and SJD Development Corp. [Group IV Voluntary Debtors]

16   ("Group IV VD Plans"); and

17             E. Third Amended Chapter 11 Plans filed by SunCal Plan Proponents in the

18   Chapter 11 Cases of SunCal Oak Valley, LLC, SunCal Heartland, LLC, Delta Coves Venture,

19   LLC, SunCal Marblehead, LLC and SunCal PSV, LLC [Group I: Trustee Debtors] ("Group I TD

20   Plans"); and

21             F. Third Amended Chapter 11 Plans filed by SunCal Plan Proponents in the Chapter

22   11 Cases of SunCal Oak Knoll, LLC and SunCal Torrance, LLC [Group II: Trustee Debtors]

---

[3] The Voluntary Debtors are Palmdale Hills, LLC, a Delaware corporation ("Palmdale Hills"), SunCal Communities I ("Communities I"), Acton Estates, LLC ("Acton"), SunCal Beaumont, LLC ("Beaumont"), SunCal Emerald Meadows, LLC ("Emerald Meadows"), SunCal Johansson Ranch, LLC ("Johannson Ranch"), SunCal Bickford Ranch, LLC ("Bickford Ranch"), SunCal Summit Valley, LLC ("Summit Valley"), Seven Brothers, LLC ("Seven Brothers"), Kirby Estates, LLC ("Kirby Estates"), SCC Communities, LLC ("SCC Communities"), North Orange Del Rio Land, LLC ("Del Rio"), and Tesoro SF LLC ("Tesoro").  The Trustee Debtors are: LB/L-SunCal Oak Valley, LLC ("Oak Valley"), SunCal Heartland, LLC ("Heartland"), LB/L-SunCal Northlake, LLC ("Northlake"), SunCal Marblehead, LLC ("Marblehead"), SunCal PSV, LLC ("PSV"), Delta Coves Venture, LLC ("Delta Coves"), SunCal Torrance Properties, LLC ("Torrance") and SunCal Oak Knoll, LLC ("Oak Knoll").  The Voluntary Debtors and Trustee Debtors are collectively referred to as the "Debtors."

[4] All capitalized terms shall have the meaning set forth in the SunCal Plans.

Declaration of B. Cook Re Confirmation v5

("Group II TD Plans").

(Collectively, the "SunCal Plans").

7.    The Debtors are twenty-six affiliated entities in which SCC Acquisitions is an owner, directly or indirectly. They are part of a larger family of companies that is generically referred to as the SunCal Companies ("SunCal").

8.    Prior to the Debtors' Chapter 11 filings, SunCal was one of the largest private real estate developers in the United States.

9.    Most of the Debtors were formed to own, develop and ultimately to sell residential development projects in California. Several of the Debtors are holding companies for other Debtors that directly hold title to the Projects (the "Project Debtors").

10.    More detailed facts regarding the Debtors' history, and their individual assets and liabilities, are set forth in the Disclosure Statements filed in support of the SunCal Plans. The facts stated in these Disclosure Statements are true and correct and such facts are incorporated herein by this reference.

11.    The SunCal Plans provide, in summary, for the sale of the individual real estate Projects owned by the Debtors, through an auction process, with the objective being to generate the highest price possible. These sales would be made free and clear of all Disputed Secured Claims and any purported credit bid rights of the Disputed Secured Creditors. After payment of closings costs and Allowed Administrative Claims, the Net Sale Sales Proceeds would then be set aside in Net Sales Proceeds Accounts. The Disputed Liens will then attach to these proceeds in their preexisting order of priority. Once all disputes regarding the applicable Secured Claims are resolved, the Net Sales Proceeds will then be distributed to creditors in accordance with their rights under the Bankruptcy Code. Distributions prior to the resolution of affected Secured Claims will only occur in those instances where the Court concludes that the rights of the Secured Creditors holding potential, but disputed Secured Claims, will remain adequately protected, notwithstanding these distributions.

12.    As more fully explained in the Disclosure Statements, the Lehman Disputed Liens and Lehman Disputed Claims are the subject of a series of pending contested matters and

adversary proceedings. The merits of the objections and defenses raised by the Suncal Proponents in these litigation matters are directly relevant to the merits of the SunCal Plans and the Lehman Plans. If, as the SunCal Proponents contend, the Lehman Disputed Claims are disallowed in their entirety, or reduced as prayed in the pending litigation matters, then the resulting dividend payable to all other creditors under the SunCal Plans will range between 80% and 100%, instead of the 1% dividend purportedly "guaranteed" under the competing Lehman Plans. This would not only make the SunCal Plans the preferred option for creditors, it would render the Lehman Plans unconfirmable, since the Lehman Plans would offer creditors less than they would receive in a Chapter 7 case.

13.    In order to address the objections of certain creditors and to take into consideration a recent purchase offer received for several of the Voluntary Projects that will improve the distribution available to creditors, the SunCal Proponents propose to make certain non-material changes to the SunCal Plans that are more fully described in the concurrently filed Confirmation Brief. These modifications will improve the treatment accorded the affected creditors and interest holders within the distribution structures provided for in the SunCal Plans.

### Classification and Voting Results For Each Class of Claims In SunCal Plans

14.    The SunCal Plans place claims and interests into various classes according to their respective priority rights, as required by the Bankruptcy Code. The SunCal Plans also state whether or not a class of claims or interests is impaired or unimpaired, and they describe in detail the treatment being accorded to each class under the Plans.

### All SunCal Plans  - Unclassified Classes

15.    All of the SunCal Plans have the same Article III. This section describes certain categories of claims that are not classified for voting purposes, because their treatment, which is specified in the Bankruptcy Code, is mandatory. The treatment accorded these claims is summarized below.

| Type of Claim | Treatment |
|---|---|
| Allowed Administrative Claims | Unless each Holder of an Allowed Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar Date, each holder will receive payment in full on the later of: (i) the Effective Date; (ii) within ten Business Days after the date the Administrative Claim becomes an Allowed Administrative Claim; or (iii) the date such Allowed |

| | | Administrative Claim becomes due according to its terms. |
|---|---|---|
| | Allowed Unsecured Tax Claims | At the election of the Plan Trustee, the holder of each Allowed Priority Tax Claim shall be entitled to receive: (i) equal cash payments on the last business day of each three-month period following the Effective date, during a period not to exceed five years after November 6, 2008 from the Effective Date calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the holder of such claim and the Plan Trustee, provided that such treatment is on more favorable terms to the Debtor or the Plan Trust than the treatment set forth in section (i); or (iii) payment of the full Allowed Priority Claim in Cash. |

## **Voting Results**

16.    The results of creditor voting on the SunCal Plans are set forth in the concurrently filed  Declaration of Garrick H. Hollander.

17.    As demonstrated herein, the SunCal Plans meet all of the requirements for confirmation set forth in Section 1129(a), with the exception of Section 1129(a)(8), and all requirements for "cram down" under Section 1129(b).

## **11 U.S.C. § 1129(a)(1)**

18.    Section 1129(a)(1) requires that "the plan complies with the applicable provisions of [Chapter 11]."  The most important of these provisions are set forth in Sections 1122 and 1123(a). The SunCal Plans comply with this provision for the following reasons:

A.    Section 1122(a)  permits a plan to place a claim in a particular class only if such claim is substantially similar to the other claims in such class. Here, the SunCal Plans clearly satisfy this requirement. Article V of each of the SunCal Plans divides substantially similar claims into a series of classes, and provides separate treatment for each class, satisfying the requirements in Section 1122.

B.    A plan must comply with the requirements of Section 1123.  This section sets forth seven provisions that must be contained in a plan. The applicable sections of the SunCal Plans addressing these requirements are set forth below:

1.    Section 1123(a)(1) requires a plan to designate classes of claims and interests.  Article V of each of the SunCal Plans designates the classification of the classes of claims and interests in accordance with this requirement.

2.    Section 1123(a)(2)  requires a plan to specify any class of claims or

interest that is not impaired under the plan.  Article V of the Plan specifies the class of claims and interests under the Plan that are not "impaired."  Specifically, the following Classes are not impaired:

| Plan | Impaired Class |
|------|----------------|
| Group I VD Plan | Class 5.1 |
| Group II VD Plan | Class 3.1 |
| Group III VD Plan | Class 3.1 |
| Group IV VD Plan | Class 4.1 |
| Group I TD Plan | Class 5.1 |
| Group II TD Plan | Class 5.1 |

3.      Section 1123(a)(3) requires a plan to specify the treatment of any classes of claims or interests that are impaired by the plan.  Article V of each of the SunCal Plans specifies the treatment of classes of claims that are impaired by the Plan.  This article also specifies the treatment of the class of interests under each of the SunCal Plans; all of the classes of interests are impaired under the SunCal Plans.

4.      Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such claim or interest.  Section V of each of the SunCal Plans satisfies this requirement by treating the allowed claims or interests of all members of each class equally.

5.      Section 1123(a)(5)  requires that a plan provide adequate means for its implementation.  Each of the SunCal Plan describes the means through which the provisions of the plans will be implemented in Article VII in accordance with this requirement.  Other parts of the SunCal Plans include additional information similar to what is set forth in Section 1123(a)(5).  For example, Article III describes the proposed sale of the Debtors' assets, and Article V describes how claims and interests will be treated under the SunCal Plans.

6.      Section 1123(a)(6)  requires that certain provisions be included in the charter of a corporate debtor.  In these cases, no creditor is being forced to take stock in the reorganized Debtors. Accordingly, these provisions are inapplicable.

7.      Section 1123(a)(7)  requires that the provisions of a plan providing for selection of any officer, director or trustee under the plan be consistent with the interests of

Declaration of B. Cook Re Confirmation v5

creditors and equity security holders, and with public policy.  Article VII of each of the SunCal

Plans provides that SCC Acquisitions, Inc., a California corporation, shall be the Plan Trustee.

The Plan Trustee's appointment shall be effective as of the Effective Date and this term will

expire upon the termination of the Plan Trust.  This article further describes the rights and

powers the Plan Trustee shall have under the SunCal Plans, and this section specifically

authorizes the Debtors to employ or contract with other persons or entities to perform the

obligations created under the Plan.

Section 1123(a)(8)  relates to individual debtors and is therefore inapplicable here.

### 11 U.S.C. § 1129(a)(2)

19.    Section 1129(a)(2) provides that the proponent of a plan shall comply "with the

applicable provisions of [Chapter 11]."  To the best of my knowledge, the SunCal Proponents

have complied with the applicable provisions of Chapter 11, by, inter alia, soliciting the votes of

creditors through court-approved disclosure statements containing adequate information in

accordance with the requirements of Section 1125.

### 11 U.S.C. § 1129(a)(3)

20.    Section 1129(a)(3) provides that "the plan has to be proposed in good faith and not

by any means forbidden by law."  The SunCal Plans have been proposed in good faith.  These

plans were designed with the objective of generating the highest value for creditors though the

sale of the Projects. In furtherance of this goal, counsel for the SunCal Proponents met with

counsel for the Official Committee representing the VD Debtors to obtain their input on the plans.

Based upon the Committees comments changes were made to the SunCal Plans, and they were

supported by a "yes" letter from the Committee. If the SunCal Plans are confirmed, and the

SunCal Proponents' litigation effort is successful, then the claims of substantially all creditors

should be paid in full. In contrast, the dividend "guaranteed" under the Lehman Plans is only 1%.

In sum, the Plans satisfy the "good faith" requirement of Section 1129(a)(3).

### 11 U.S.C. § 1129(a)(4)

21.    Section 1129(a)(4) provides:

Any payment made or to be made by the proponent, by the Debtor, or by a
person issuing securities or acquiring property under the plan, for services or for

costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

In this case, Section 4.1 of the Plan allows for payment in full of administrative claims (which includes compensation awarded by the Bankruptcy Court to professional persons), upon allowance of such expenses by the Bankruptcy Court following the filing of applications for final compensation.  Consequently, this requirement is satisfied.

## 11 U.S.C. § 1129(a)(5).

22.    Section 1129(a)(5) provides:

(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

23.    In Section 7.75, of the SunCal Plan, the SunCal Proponents disclose the fact that Acquisitions will not receive any compensation under the SunCal Plans, but will have the right to employ and compensate professionals as needed to implement the terms of the plans:

Acquisitions shall not receive any compensation for the services it performs as the Plan Trustee.  The Plan Trustee Professionals shall be entitled to reasonable compensation for their services, and reimbursement of expenses.  The costs and expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee Professionals) shall be paid from the Plan Trust.  The Plan Trustee shall pay, without further order, notice or application to the Court, the reasonable fees and expenses of the Plan Trustee Professionals, as necessary to discharge the Plan Trustee's duties under the Plan.  The Plan Trustee shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any Distributions under the Plan.

(Section 7.7.5, SunCal Plans). In summary, the provisions of Section 1129(a)(5) are satisfied.

## 11 U.S.C. § 1129(a)(6)

24.    Section 1129(a)(6) requires that any governmental regulatory commission with

-9-

jurisdiction over the rates of the debtor approve any rate change provided for by the plan.
Section 1129(a)(6) is inapplicable in these cases in that no such regulatory approval is required in
these cases.

### 11 U.S.C. § 1129(a)(7)

25.    Section 1129(a)(7) provides:

With respect to each impaired class of claims or interests --
    (A)    each holder of a claim or interest of such class --
        (i)    has accepted the plan; or
        (ii)    will receive or retain under the plan on account of such
claim or interest property of a value, as of the effective date of the plan, that is
not less than the amount that such holder would so receive or retain if the debtor
were liquidated under Chapter 7 of this title on such date; or
    (B)    if Section 1111(b)(2) of this title applies to the claims of such
class, each holder of a claim of such class will receive or retain under the plan on
account of such claim property of a value, as of the effective date of the plan, that
is not less than the value of such holder's interest in the estate's interest in the
property that secures such claims.

This requirement is known as the "best interest" test. To satisfy the "best interest" test, the
Bankruptcy Court must reach a conclusion regarding the probable distribution to the holders in
each impaired class of claims and interests, assuming the applicable debtor was liquidated in a
Chapter 7 proceeding.

26.    In the case of the SunCal Plans, the structure of the plans insures compliance with
this requirement. Pursuant to the plans, all assets of the subject SunCal Debtors will be sold, free
and clear of liens and encumbrances, through an auction that will be preceded by a commercially
reasonable marketing effort. The winner of the auction will be the buyer that offers the highest
Qualifying Bid for the asset being sold – necessarily its fair market value at that point in time. The
Net Proceeds from this sale will then be deposited into a segregated account until all disputed
secured claim amounts are resolved. Once this occurs, distributions will be made to creditors
holding allowed claims in accordance with the dictates of the Bankruptcy Code.

27.    Exhibit "7" to Disclosure Statements , which addresses the Best Interest Test,
details the sale and distribution results that the SunCal Debtors project would realize in a Chapter
7 proceeding, if the presiding Chapter 7  trustee pursued the Lehman Adversary Proceeding to a
conclusion, which is exactly what is provided for in the SunCal Plans. Accordingly, the Plan

meets the "best interests" test, and therefore complies with the provisions of Section 1129(a)(7).

## 11 U.S.C. § 1129(a)(8)

28. Section 1129(a)(8) provides:

> "With respect to each class of claims or interests --
> (A)     such class has accepted the Plan; or
> (B)     such class is not impaired under the Plan."

The charts presented in Article I, Section 1.6 to the concurrently filed Confirmation Brief, which results are supported by the Hollander Declaration, detail the results of voting on the SunCal Plans. A comprehensive analysis of the data underlying the class voting conclusions in Section 1.6 is attached to the Hollander Declaration.

## 11 U.S.C. § 1129(a)(9)

29.     In this case, Article III of the SunCal Plans requires that administrative claims be paid in full in cash on the later of (i) the effective date, (ii) within ten business days after the date such administrative Claim becomes an allowed administrative claim, or (iii) the date such allowed administrative claim becomes due according to its terms.  Accordingly, Section 1129(a)(9)(A) is satisfied.

30.     Article III of the SunCal Plans also requires that allowed priority claims be paid until a full distribution is made to such holders during the sales period.  Accordingly, Section 1129(a)(9)(B) is also satisfied. Section 3.4 of these Plans provides that at the election of the Debtors, the holder of each allowed priority tax claim shall be entitled to receive, on account of such claim, (i) equal cash payments on the last business day of each three-month period following the effective date, during a period not to exceed five years after the Petition Date, totaling the principal amount of such claim plus simple interest on any unpaid balance from the effective date, calculated at the interest rate available on ninety (90) day United States Treasuries on the effective date, (ii) such other treatment agreed to by the holder of the allowed priority tax claim and the Debtors, provided such treatment is on more favorable terms to the Debtors than the treatment set forth in clause (i) hereof, or (iii) payment of the full allowed priority tax claim in cash. Accordingly, the requirements of Section 1129(a)(9)(C) are satisfied.

31.     Article V of the applicable Plans provides the following in satisfaction of

Section 1129(a)(9)(D) with respect to the secured real property tax claims asserted by the various

county taxing authorities:

        The rights of the Holder(s)' of Allowed Secured Claims in Classes ____
through ____ are impaired under the Plan and shall receive one of the following
two treatments at the Plan Trustee's discretion based solely on the option of the
Group _____ Debtor:

        A.    Such Holders shall retain their existing lien rights and shall accrue
interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. §
506 and 511 and such Allowed Claims shall be satisfied in accordance with the
provision of 11 U.S.C. § 1124(2) from the sale of the applicable Debtors Projects
during the Sales Period; or

        B.    Such Holders shall retain their existing lien rights and shall accrue
interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. §
506 and 511 and California Revenue and Taxation Code Sections 4102 and 4103,
and payment on such Allowed Claims shall be satisfied over sixty-one (61)
months from the applicable Debtor's Petition Date.

Accordingly, the requirements of Section 1129(a)(9) are satisfied.

## 11 U.S.C. § 1129(a)(10)

32.    Section 1129(a)(10) requires that "if a class of claims is impaired under the plan, at

least one class of claims that is impaired under the plan has accepted the plan, determined without

including any acceptance of the plan by any insider."  As voting tally attached to the Hollander

Declaration confirm, this requirement is satisfied.

## 11 U.S.C. § 1129(a)(11)

33.    Section 1129(a)(11) requires that "confirmation of the plan is not likely to be

followed by the liquidation, or the need for further financial reorganization, of the debtor or any

successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the

plan."

34.    The evidence that the Debtors have filed in support of their feasibility is

summarized in the following subparagraphs for each of the SunCal Plans and in Exhibit "1"

hereto. The data reflected in Exhibit "1" was taken from the Disclosure Statements filed in support

of the SunCal Plans.

        A.    Group I VD Plan.

The Group I VD Plan provides, in summary, for the sale of the four Projects owned by the

Group I VD Debtors free and clear of liens.  The Net Proceeds from these sales shall then be

-12-

segregated, unless disbursement is authorized by Court order, until all objections to the validity,

priority and amount of the Secured Claims seeking recourse to these funds are resolved or settled.

As more fully explained in the Group I VD Disclosure Statement, the SunCal Proponents believe

that the primary secured claims seeking recourse from these funds will either be subordinated  or

disallowed in an amount necessary to enable all other creditors Allowed Claims to be paid in full.

The costs that the SunCal Proponents need to fund to implement the plan fall into two

basic categories: Creditor distribution obligations and plan administration/implementation

obligations. These obligations and the projected funding sources are detailed in Exhibit "1" hereto

and they are summarized below.

### 1.  Creditor Distribution Obligations.

#### 1.1  Administrative Claims.

The Group I VD Debtors' administrative claims are primarily comprised of professional

fees and management fees and inter-company post-petition loan obligations pursuant to a court

approved stipulation (the "Inter-Company Borrowings"). The SunCal Proponents believe that

these claims will be paid from closings of Project sales and cash on hand in the estates of the

Group I VD Debtors prior to the Effective Date. The projection attached hereto assumes that the

administrative claims against the Group I VD Debtors' estates (other than the Palmdale estate)

that are owed to Palmdale for funds advanced to pay administrative fees, will be repaid on the

Effective Date and simultaneously loaned back to these Debtors by Palmdale, if necessary,

through a book entry transaction.

#### 1.2  Class 1.1 through 1.4 Claims (Property Taxes).

The Allowed Secured Claims of the Class 1.1 through 1.4 claims shall be paid in full

through the Net Proceeds generated from the sale of the Projects.

#### 1.3  Class 2.1 through 2.4 Claims (Lehman).

Any Allowed Secured Claim arising from the disputed secured claims asserted  by the

Lehman Entities against the four Projects owned by the Group I VD Debtors will be paid from the

Net Sales Proceeds generated from the sale of the Projects. As more fully explained in the Group I

VD Plan Disclosure Statement, the SunCal Proponents expect these claims to be either completely

1   disallowed, in the case of the claims against Acton Estates, or, at minimum, to be subordinated or

2   disallowed to the extent necessary to pay the allowed claims of all other creditors in full.

3                          1.4        Class 3.1 through 3.14 Claims (Mechanics Lienors).

4          Although these claims are technically secured by liens recorded against the Projects. No

5   value will exist to "secure" these claims unless the Lehman Claims asserted against the Projects

6   are reduced or eliminated through the pending claims objections, or subordinated through the

7   Lehman Adversary Proceeding. If this occurs, then these claims will be paid in accordance with

8   their respective priorities through the Net Proceeds from the sale of the Projects.  These claims are

9   also considered Reliance Claims, and the holders of such claims to be Reliance Claimants.  As

10  such, such reliance Claimants were offered the right to sell their claims to LitCo for .55¢ of their

11  Allowed Claim in Class 6.

12                          1.5        Class 4.1 (Contingent Bond Claims).

13         All contingent bond claims are disputed and the projection attached assumes no payments

14  will be made on these claims.

15                          1.6        Class 5.1 (Priority Claims).

16         Priority claims against the estates of the Group I VD Debtors are nominal and they will be

17  paid from cash on hand, or alternatively from (i) the LitCo Loan.

18                          1.7        Class 6.1 through 6.4 (Unsecured Claims that are Reliance

19                                     Claims).

20         These classes have the right to sell their Reliance Claims to LitCo for 55 cents per dollar of

21  claim (Option A), or await whatever recovery is generated from the equitable subordination action

22  and other litigation initiated by the Debtors against Lehman. In the projection attached as Exhibit

23  "1" hereto the SunCal Proponents have assumed that all eligible reliance claimants accept the

24  Option A offer. The calculation of the actual figure based upon the ballots is still in process. The

25  funds required to fund these claims purchases will be provided by a third party capital source.

26  Those claimants within this class that did not elect Option A will not receive any distribution

27  unless and until the Lehman Adversary Proceeding and other Litigation Claims are completed.

28  Then they will receive their pro rata share of the recovery.

1                                1.8        Class 7.1 through 7.4 (Unsecured Claims that are not

2                               Reliance Claims)

3       The claimants holding allowed claims within this class will receive a 1% distribution and a

4 pro rata share of any recovery or Net Sales Proceeds remaining after the conclusion of claims

5 objections. From a feasibility perspective, the SunCal Proponents' burden is to show that they can

6 pay the 1% distribution, and this figure is accounted for in the Exhibit "1" projections. This sum

7 will be paid by the LitCo loan.

8                         2.   Plan Administrative Administration Costs.

9       The costs within this category include the following: 1) costs that will be incurred in

10 selling the Projects; 2) costs that will be incurred in administering the Plan Trust; and 3) costs that

11 will be incurred in pursuing the claim objections and equitable subordination action. Each of these

12 costs and the applicable funding source are discussed below:

13                                2.1        Marketing Costs. All internal costs associated with this

14 marketing effort will be borne by the SunCal Plan Proponents. Third party sales costs will be paid

15 from the Net Sales Proceeds, as they would as an ordinary and necessary sale cost in any property

16 sale transaction.

17                                2.2        Plan Trust Costs. The second category of costs will be

18 nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving

19 without compensation. Any costs incurred in this administrative effort will be paid from the Plan

20 Trust, which means they will be paid from the proceeds generated from the litigation, from the Net

21 Sales Proceeds released from the liens of the Lehman Entities on account of litigation

22 determinations or the LitCo Loan.

23                                2.3        Litigation Costs. The last category of costs will be paid from

24 the LitCo Loan or the Plan Trust, which is expected to have available the proceeds generated from

25 litigation recoveries.

26                  B.     Group II VD Plan.

27       The Group II VD Plan provides, in summary, for the sale of two Projects owned by the

28 Group II VD Debtors free and clear of liens. Notably, these Projects are not subject to the liens

1  asserted by the Lehman Entities.

2      The Net Proceeds from these sales shall then be segregated, unless disbursement is

3  authorized by Court order, until all the validity, priority and amount of the Secured Claims

4  seeking recourse to these funds are resolved by the Court or through settlement.

5      The costs that the SunCal Proponents need to fund to implement the plan fall into two

6  basic categories: Creditor distribution obligations and plan administration/implementation

7  obligations. Each of these cost categories and the anticipated funding sources are discussed and

8  explained in following subparagraphs.

9          1.  Creditor Distribution Obligations.

10              1.1    Administrative Claims.

11      The Group II VD Debtors administrative claims are primarily comprised of professional

12  fees and management fees. The SunCal Proponents believe that these claims will be paid from

13  cash on hand in the estates of the Group II VD Debtors, or through cash provided by Palmdale,

14  prior to the Effective Date. The  projection attached hereto assumes that the administrative claims

15  against the Group II VD Debtors' estates that are owed to Palmdale for funds advanced to pay

16  administrative fees, will be repaid on the Effective Date and simultaneously loaned back to these

17  Debtors by Palmdale, if necessary, through a book entry transaction.

18              1.2    Class 1.1 through 1.2 Claims (Property Taxes).

19      The Allowed Secured Claims of the Class 1.1 through 1.2 claims shall be paid in full

20  through the Net Proceeds generated from the sale of the Projects.

21              1.3    Class 2.1 (Mechanics Lienor).

22      This single claim ($43,355) will be paid in through the Net Proceeds from the sale of the

23  Projects..

24              1.4    Class 3.1 (Priority Claims).

25      Priority claims against the estates of the Group II VD Debtors are nominal and they will be

26  paid from cash on hand, or alternatively from the LitCo Loan.

27              1.5    Class 4.1 through 4.2 (Unsecured Claims).

28      These claims are expected to be paid in full from the Net Sales Proceeds.

Declaration of B. Cook Re Confirmation v5

1                      1.6      Class 5.1 through 5.2 (Interests held by

2                      SunCal Communities I, LLC)

3       These interests shall be preserved under the Group II VD Plan. They shall receive a

4 distribution of any excess funds remaining in the estate after the payment of all senior priority

5 claims, including the claims relating to the funds advanced by Palmdale Hills pursuant to

6 Stipulations entered as docket nos. 854, 1154, 1566, and 2102, and pursuant to the Litco Loan, if

7 any.

8                   2.   Plan Administrative Administration Costs.

9       The costs within this category include the following: 1) costs that will be incurred in

10 selling the Projects; 2) costs that will be incurred in administering the Plan Trust; and 3) costs that

11 will be incurred in pursuing the claim objections and equitable subordination action. Each of these

12 costs and the applicable funding source are discussed below:

13                      2.1      Marketing Costs. All internal costs associated with this

14 marketing effort will be borne by SunCal Management, LLC. Third party sales costs will be paid

15 from the Net Sales Proceeds, as they would as an ordinary and necessary sale cost in any property

16 sale transaction.

17                      2.2      Plan Trust Costs. The second category of costs will be

18 nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving

19 without compensation. Any costs incurred in this administrative effort will be paid from the Plan

20 Trust, which means they will be paid from the proceeds generated from the litigation, or from the

21 Net Sales Proceeds.

22                      2.3      Litigation Costs. The last category of costs will be paid from

23 the LitCo Loan or the Plan Trust, which is expected to have available the proceeds generated from

24 litigation recoveries

25          C.      Group III VD Plan.

26       The Group III VD Plan provides, in summary, for the sale of the three Projects owned by

27 the Group III VD Debtors free and clear of liens.  The Net Proceeds from these sales shall then be

28 segregated, unless disbursement is authorized by Court order, until all the validity, priority and

1    amount of the Secured Claims seeking recourse to these funds are resolved by the Court or

2    through settlement. As more fully explained in the Group III VD Disclosure Statement, the

3    SunCal Proponents believes the primary secured claims seeking recourse from these funds will

4    either be subordinated to disallowed, at a minimum, in amount necessary to enable all other

5    creditors Allowed Claims to be paid in full.

6         The costs that the SunCal Proponents need to fund to implement the plan fall into two

7    basic categories: Creditor distribution obligations and plan administration/implementation

8    obligations. Each of these cost categories and the anticipated funding sources are discussed and

9    explained in following subparagraphs.

10              1.  <u>Creditor Distribution Obligations</u>.

11                   1.1      <u>Administrative Claims</u>.

12         The Group III VD Debtors' administrative claims are primarily comprised of professional

13   fees, management fees and Inter-Company Borrowings. The SunCal Proponents believe that these

14   claims will be paid from cash on hand in the estates of the Group III VD Debtors, or through cash

15   provided by Palmdale, prior to the Effective Date. The projection attached hereto assumes that the

16   administrative claims against the Group III VD Debtors' estates (other than the Palmdale estate)

17   that are owed to Palmdale for funds advanced to pay administrative fees, will be repaid on the

18   Effective Date and simultaneously loaned back to these Debtors by Palmdale, if necessary,

19   through a book entry transaction.

20                   1.2      <u>Class 1.1 through 1.2 Claims (Property Taxes)</u>.

21         The Allowed Secured Claims of the Class 1.1 through 1.2 claims shall be paid in full

22   through the Net Proceeds generated from the sale of the Projects.

23                   1.3      <u>Class 2.1 through 2.3 Claims (Lehman)</u>.

24         The disputed secured claims asserted by the Lehman Entities against the two Projects

25   owned by the Group III VD Debtors will be paid from the Net Sales Proceeds generated from the

26   sale of the Projects. As more fully explained in the Group III VD Plan Disclosure Statement, the

27   SunCal Proponents expect these claims to, at a minimum, be either subordinated or disallowed to

28   the extent necessary to pay the allowed claims of all other creditors in full.

1                  1.4        Class 3.1 through 3.2 (Priority Claims).

2          Priority claims against the estates of the Group III VD Debtors are nominal and they will

3    be paid from cash on hand, or alternatively from (i) the LitCo Loan.

4                  1.5        Class 4.1 through 4.3 (Unsecured Claims).

5          Under the SunCal Plans this class of claims will receive their share of the Net Sale

6    Proceeds after the payment of all senior claims.

7                  1.6        Class 5.1 through 5.3 (Interests)

8          These interests shall be preserved under the Group III VD Plan. They shall receive a

9    distribution of any excess funds remaining in the estate after the payment of all senior priority

10   claims, including the claims relating to the funds advanced by Palmdale Hills pursuant to

11   Stipulations entered as docket nos. 854, 1154, 1566, and 2102, and pursuant to the Litco Loan if

12   any.

13             2.   Plan Administrative Administration Costs.

14         The costs within this category include the following: 1) costs that will be incurred in

15   selling the Projects; 2) costs that will be incurred in administering the Plan Trust; and 3) costs that

16   will be incurred in pursuing the claim objections and equitable subordination action. Each of these

17   costs and the applicable funding source are discussed below:

18                 2.1        Marketing Costs. All internal costs associated with this

19   marketing effort will be borne by SunCal Management, LLC. Third party sales costs will be paid

20   from the Net Sales Proceeds, as they would as an ordinary and necessary sale cost in any property

21   sale transaction.

22                 2.2        Plan Trust Costs. The second category of costs will be

23   nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving

24   without compensation. Any costs incurred in this administrative effort will be paid from the Plan

25   Trust, which means they will be paid from the proceeds generated from the litigation, or from the

26   Net Sales Proceeds released from the liens of the Lehman Entities on account of litigation

27   determinations.

28

2.3    <u>Litigation Costs</u>. The last category of costs will be paid from the LitCo Loan or the Plan Trust, which is expected to have available the proceeds generated from litigation recoveries

D.    <u>Group IV VD Plan</u>.

The Group IV VD Plan provides, in summary, for either the recovery of the Pacific Point Project, or through a damage recovery that compensates the Group IV Debtors for Lehman Ali's failure to comply with its obligations under the Restructuring Agreement and Settlement Agreement relating to this Project, through the Lehman Adversary Proceeding.  The costs that the SunCal Proponents need to fund to implement the plan fall into two basic categories: Creditor distribution obligations and plan administration/implementation obligations. Each of these cost categories and the anticipated funding sources are discussed and explained in following subparagraphs.

1.    <u>Creditor Distribution Obligations</u>.

1.1    <u>Administrative Claims</u>.

The Group IV VD Debtors administrative claims are primarily comprised of professional fees, management fees and Inter-Company Borrowings. The SunCal Proponents believe that these claims will be paid from the LitCo Loan, or through cash provided by Palmdale, prior to the Effective Date. The projection attached hereto assumes that the administrative claims against the Group IV VD Debtors' estates (other than the Palmdale estate) that are owed to Palmdale for funds advanced to pay administrative fees, will be repaid on the Effective Date and simultaneously loaned back to these Debtors by Palmdale, if necessary, through a book entry transaction.

1.2    <u>Class 1.1 through 1.2 (Lehman)</u>.

The disputed secured claims asserted  by the Lehman Entities against the Pacific Point Project will be paid from the Net Sales Proceeds generated from the sale of this Project. Alternatively, they will be allowed to retain their interest in this Project, but be required to pay a damage judgment resulting from the successful prosecuting of the Lehman Adversary Proceeding.

1.3     <u>Class 2.1 (Priority Claims)</u>.

Priority claims against the estates of the Group IV VD Debtors are nominal and they will be paid from the LitCo Loan.

1.4     <u>Class 3.1 (Unsecured Claims that are Reliance Claims)</u>.

This class will receive (1) a one (1%) percent distribution of their Allowed Claims on the Effective Date; (2) their pro rata share of any allocated distribution from the Lehman Adversary Proceeding and other Litigation Recoveries and (3) a forty nine (49%) distribution if the Pacific Point Project is purchased by LitCo free and clear of all claims during the Plan Term, after the payment of senior claims.

1.5     <u>Class 4.1 (Unsecured Claims that are not Reliance Claims)</u>

This class will receive their pro rata share of all funds in the estate after the payment of senior claims of Litigation Recoveries other than the Lehman Adversary Proceeding.

2.     <u>Plan Administrative Administration Costs</u>.

The costs within this category include (1) costs that will be incurred in administering the Plan Trust; and (2) the costs that will be incurred in pursuing the Litigation Recoveries

2.1     <u>Plan Trust Costs</u>. The second category of costs will be nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving without compensation. Any costs incurred in this administrative effort will be paid from the Plan Trust, which means they will be paid from the proceeds generated from the litigation, or from the Net Sales Proceeds released from the liens of the Lehman Entities on account of litigation determinations.

2.2     <u>Litigation Costs</u>. The last category of costs will be paid from the LitCo Loan or the Plan Trust.

E.     <u>Group I TD Plan</u>.

The Group I TD Plan provides, in summary, for the sale of the five Projects owned by the Group I TD Debtors free and clear of liens.  The Net Proceeds from these sales shall then be segregated, unless disbursement is authorized by Court order, until the validity, priority and amount of the Secured Claims seeking recourse to these funds has been resolved by the Court or

1  through settlement. As more fully explained in the Group I TD Disclosure Statement, the SunCal

2  Proponents believe the primary secured claims seeking recourse from these funds will, at a

3  minimum, either be subordinated to disallowed in an amount necessary to enable all other

4  creditors Allowed Claims to be paid in full.

5      The costs that the SunCal Proponents need to fund to implement the plan fall into two

6  basic categories: Creditor distribution obligations and plan administration/implementation

7  obligations. Each of these cost categories and the anticipated funding sources are discussed and

8  explained in following subparagraphs.

9          1.  <u>Creditor Distribution Obligations</u>.

10              1.1      <u>Administrative Claims</u>.

11      Effective Date administrative claims for the Group I TD Debtors, which are primarily

12  attributable to the Lehman Administrative Loans, are projected to total approximately

13  $26,000,000. These claims will paid from one or more of the following three sources of cash: (i)

14  proceeds from the sale of the Projects that are released pursuant to an order of the Court; (ii) cash

15  on hand in the estates; and (iv) funding from a third party capital source secured prior to the

16  Confirmation Date.

17              1.2      <u>Class 1.1 through 1.5 Claims (Property Taxes)</u>.

18      The Allowed Secured Claims of the Class 1.1 through 1.5 claims shall be paid in full

19  through the Net Proceeds generated from the sale of the Projects.

20              1.3      <u>Class 2.1 through 2.5 Claims (Lehman)</u>.

21      The disputed secured claims asserted  by the Lehman Entities against the Projects owned

22  by the Group I TD Debtors will be paid from the Net Sales Proceeds generated from the sale of the

23  Projects. As more fully explained in the Group I TD Plan Disclosure Statement, the SunCal

24  Proponents expect these claims, at a minimum, to be either subordinated or disallowed to the

25  extent necessary to pay the allowed claims of all other creditors in full.

26              1.4      <u>Class 3.1 through 3.30 Claims (Mechanics Lienors)</u>.

27      Although these claims are technically secured by liens recorded against the Projects. No

28  value will exist to "secure" these claims unless the Lehman Claims asserted against the Projects

1   are reduced or eliminated through the pending claims objections, or subordinated through the

2   Lehman Adversary Proceeding. If this occurs, then these claims will be paid in accordance with

3   their respective priorities through the Net Proceeds from the sale of the Projects.  These claims are

4   also considered Reliance Claims, and the holders of such claims to be Reliance Claimants.  As

5   such, such reliance Claimants were offered the right to sell their claims to LitCo for .55¢ of their

6   Allowed Claim in Class 6. .

7                      1.5     Class 4.1 through 4.5 (Contingent Bond Claims).

8              All contingent bond claims are disputed and the projection attached assumes no payments

9   will be made on these claims.

10                     1.6     Class 5.1 through 5.5 (Priority Claims).

11             Priority claims against the estates of the Group I TD Debtors are nominal and they will be

12   paid from cash on hand, or alternatively from (i) the LitCo Loan, which the SunCal Proponents

13   expect to be made available from a third party prior to the Confirmation Date, or (ii) from the

14   release of funds from the Net Sale Proceeds, upon a sufficient adequate protection showing by the

15   SunCal Proponents.

16                     1.7     Class 6.1 through 6.5 (Unsecured Claims that are Reliance

17                             Claims).

18             These classes have the right to sell their Reliance Claims to LitCo for 55 cents per dollar of

19   claim (Option A), or await whatever recovery is generated from the equitable subordination action

20   and other litigation initiated by the Debtors against Lehman. In the projection attached hereto as

21   Exhibit "1", the SunCal Proponents have assumed that all eligible reliance claimants accept the

22   Option A offer. The calculation of the actual figure based upon the ballots is still in process. The

23   funds required to fund these claims purchases will be provided by a third party capital source.

24   Those claimants within this class that did not elect Option A will not receive any distribution

25   unless and until the Lehman Adversary Proceeding and other Litigation Claims are completed.

26   Then they will receive their pro rata share of the recovery.

27

28

1.8  Class 7.1 through 7.5 (Unsecured Claims that are not

Reliance Claims)

The claimants holding allowed claims within this class will receive a 1% distribution and a pro rata share of any recovery or Net Sales Proceeds remaining after the conclusion of claims objections. From a feasibility perspective, the SunCal Proponents' burden is to show that they can pay the 1% distribution, and this figure is accounted for in the Exhibit "1" projections. This sum will be paid by the LitCo loan.

2. Plan Administrative Administration Costs.

The costs within this category include the following: 1) costs that will be incurred in selling the Projects; 2) costs that will be incurred in administering the Plan Trust; and 3) costs that will be incurred in pursuing the claim objections and equitable subordination action. Each of these costs and the applicable funding source are discussed below:

2.1 Marketing Costs. All internal costs associated with this marketing effort will be borne by SunCal Management, LLC. Third party sales costs will be paid from the Net Sales Proceeds, as they would as an ordinary and necessary sale cost in any property sale transaction.

2.2 Plan Trust Costs. The second category of costs will be nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving without compensation. Any costs incurred in this administrative effort will be paid from the Plan Trust, which means they will be paid from the proceeds generated from the litigation, or from the Net Sales Proceeds released from the liens of the Lehman Entities on account of litigation determinations.

2.3 Litigation Costs. The last category of costs will be paid from the LitCo Loan or from the Plan Trust, which is expected to have available the proceeds generated from litigation recoveries.

F. Group II TD Plan.

The Group II TD Plan provided, in summary, for the sale of the two Projects owned by the Group II TD Debtors free and clear of liens.  The Net Proceeds from these sales shall then be

-24-

1  segregated, unless disbursement is authorized by Court order, until all the validity, priority and

2  amount of the Secured Claims seeking recourse to these funds are resolved by the Court or

3  through settlement. As more fully explained in the Group II TD Disclosure Statement, the SunCal

4  Proponents believes the primary secured claims seeking recourse from these funds will either be

5  subordinated to disallowed in amount necessary to enable all other creditors Allowed Claims to be

6  paid in full.

7       The costs that the SunCal Proponents need to fund to implement the plan fall into two

8  basic categories: Creditor distribution obligations and plan administration/implementation

9  obligations. Each of these cost categories and the anticipated funding sources are discussed and

10  explained in following subparagraphs.

11          1.  <u>Creditor Distribution Obligations</u>.

12             1.1  <u>Administrative Claims</u>.

13       Effective Date administrative claims for the Group I TD Debtors, which are primarily

14  attributable to the Lehman Administrative Loans, are projected to total approximately

15  $22,000,000. These claims will paid from one or more of the following three sources of cash: (i)

16  proceeds from the sale of the Projects that are released pursuant to an order of the Court; (ii) cash

17  on hand in the estates; and (iv) funding from a third party capital source secured prior to the

18  Confirmation Date.

19             1.2  <u>Class 1.1 through 1.2 Claims (Property Taxes)</u>.

20        The Allowed Secured Claims of the Class 1.1 through 1.2 claims shall be paid

21  in full through the Net Proceeds generated from the sale of the Projects.

22             1.3  <u>Class 2.1 Claims (Lehman)</u>.

23        The disputed secured claims asserted  by the Lehman Entities against the

24  Projects owned by the Group II TD Debtors will be paid from the Net Sales Proceeds generated

25  from the sale of the Projects. As more fully explained in the Group II TD Plan Disclosure

26  Statement, the SunCal Proponents expect these claims to be either subordinated or disallowed to

27  the extent necessary to pay the allowed claims of all other creditors in full.

28             1.4  <u>Class 3.1 through 3.4 Claims (Mechanics Lienors)</u>.

Although these claims are technically secured by liens recorded against the Projects, no value will exist to "secure" these claims unless the Lehman Claims asserted against the Projects are reduced or eliminated through the pending claims objections, or subordinated through the Lehman Adversary Proceeding. If this occurs, then these claims will be paid in accordance with their respective priorities through the Net Proceeds from the sale of the Projects.  These claims are also considered Reliance Claims, and the holders of such claims to be Reliance Claimants.  As such, such reliance Claimants were offered the right to sell their claims to LitCo for .55¢ of their Allowed Claim in Class 6.

### 1.5     Class 4.1 (Contingent Bond Claims).

All contingent bond claims are disputed and the projection attached assumes no payments will be made on these claims.

### 1.6     Class 5.1 (Priority Claims).

Priority claims against the estates of the Group II TD Debtors are nominal and they will be paid from cash on hand, or alternatively from (i) the LitCo Loan, which the SunCal Proponents expect to be made available from a third party prior to the Confirmation Date, or (ii) from the release of funds from the Net Sale Proceeds, upon a sufficient adequate protection showing by the SunCal Proponents.

### 1.7     Class 6.1 through 6.2 (Unsecured Claims that are Reliance Claims).

These classes have the right to sell their Reliance Claims to LitCo for 55 cents per dollar of claim (Option A), or await whatever recovery is generated from the equitable subordination action and other litigation initiated by the Debtors against Lehman. In the projection attached as Exhibit "1" hereto, the SunCal Proponents have assumed that all eligible reliance claimants accept the Option A offer. The calculation of the actual figure based upon the ballots is still in process. The funds required to fund these claims purchases will be provided by a third party capital source. Those claimants within this class that did not elect Option A will not receive any distribution unless and until the Lehman Adversary Proceeding and other Litigation Claims are completed. Then they will receive their pro rata share of the recovery.

1              1.8      Class 7.1 through 7.2 (Unsecured Claims that are not

2                       Reliance Claims)

3      The claimants holding allowed claims within this class will receive a 1% distribution and a

4  pro rata share of any recovery or Net Sales Proceeds remaining after the conclusion of claims

5  objections. From a feasibility perspective, the SunCal Proponents' burden is to show that they can

6  pay the 1% distribution, and this figure is accounted for in the Exhibit "1" projections. This sum

7  will be paid by the LitCo loan.

8              2.   Plan Administrative Administration Costs.

9      The costs within this category include the following: 1) costs that will be incurred in

10 selling the Projects; 2) costs that will be incurred in administering the Plan Trust; and 3) costs that

11 will be incurred in pursuing the claim objections and equitable subordination action. Each of these

12 costs and the applicable funding source are discussed below:

13             2.1      Marketing Costs. All internal costs associated with this

14 marketing effort will be borne by SunCal Management, LLC. Third party sales costs will be paid

15 from the Net Sales Proceeds, as they would as an ordinary and necessary sale cost in any property

16 sale transaction.

17             2.2      Plan Trust Costs. The second category of costs will be

18 nominal since Acquisitions, which is serving as the Trustee of the Plan Trust will be serving

19 without compensation. Any costs incurred in this administrative effort will be paid from the Plan

20 Trust, which means they will be paid from the proceeds generated from the litigation, or from the

21 Net Sales Proceeds released from the liens of the Lehman Entities on account of litigation

22 determinations.

23             2.3      Litigation Costs. The last category of costs will be paid from

24 the LitCo Loan or from the Plan Trust, which is expected to have available the proceeds generated

25 from litigation recoveries.

26                       **11 U.S.C. § 1129(a)(12).**

27     35.      Section 1129(a)(12) requires that "all fees payable under section 1930 of title 28, as

28 determined by the court at the hearing on confirmation of the plan, have been paid or the plan

-27-

provides for the payment of all such fees on the effective date of the plan." Section 16.1 of the

SunCal Plans states that these fees will be paid in full as required. Accordingly, the requirements

of Section 1129(a)(12) are satisfied.

### 11 U.S.C. § 1129(a)(13).

36.    Section 1129(a)(13) requires the following:

The plan provides for the continuation after its effective date of payment of all
retiree benefits, as that term is defined in section 1114 of this title, at the level
established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at
any time prior to confirmation of the plan, for the duration of the period the
debtor has obligated itself to provide such benefits.

The requirements of Section 1129(a)(13) are not applicable here, in that the SunCal

Proponents are not obligated to make any payments for retiree benefits.

### 11 U.S.C. § 1129(a)(14) and (15).

37.    The requirements set forth in Sections 1129(a)(14) and (15) are not applicable here

because the Debtors are not individuals.

### 11 U.S.C. § 1129(a)(16).

38.    Section 1129(a)(16) requires the following:

All transfers of property of the plan shall be made in accordance with any
applicable provisions of nonbankruptcy law that govern the transfer of property
by a corporation or trust that is not a moneyed, business, or commercial
corporation or trust.

All transfers of property under the Plan will be made in accordance with any applicable

California law.  Accordingly, this requirement is also satisfied.


### 11 U.S.C. § 1129(b) - No Unfair Discrimination

39.    The claims of creditors and interest holders with similar legal claims or interests

have been treated the same in the classes established by the SunCal Plans.  Specifically, there is

no "widely disparate" treatment of "similarly situated" creditors or interest holders.

### 11 U.S.C. § 1129(b) - The Plan Is Fair and Equitable

40.    In each of the SunCal Plans, Article V provides that the holders of liens against

property of the estate will maintain their liens or receive replacement liens on the proceeds of the

sold collateral in accordance with their rights under the Bankruptcy Code.  Furthermore, all of the SunCal Plans provide for payment in full to these holders on account of their *allowed* claims, less potential reductions as a result of a favorable judgment in the Lehman Adversary Proceeding.

41.    Pursuant to the terms of the SunCal Plans, the holders of unsecured claims, in every case, will receive a pro rata share of all distributions after the claims of all senior claimants have been paid with the exception of those unsecured claims that may be beneficiaries of an Equitable Subordination Judgment. In those cases where Reliance Claims are offered the LitCo purchase offer, the consideration for the purchase is not property of the estates.  Moreover, no payments will be made to equity until such claims are paid in full.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 26th day of September, 2011, in Orange County, California.

/s/ Bruce V. Cook

_____

Bruce V. Cook

**Exhibit 1**

**Group I VD Debtors - Cash Projection**

**Uses of Funds**

|  | Palmdale | Bickford | Emerald | Acton |
|---|---|---|---|---|
| Administrative Claims |  |  |  |  |
|   Legal Fees (1) | - | - | - | - |
|   Lehman Admin Loans (2) | - | - | - | - |
|   Other (3) | - | - | - | - |
| Unclassified Priority Claims |  | - |  |  |
| Class 1: Real Property Tax Claims (4) | 3,008,044.29 | 9,467,165.00 | 798,256.00 | 463,325.00 |
| Class 2: Lehman Disputed Claims (5) | 287,252,096.00 | 343,221,391.00 | 343,221,391.00 | 343,221,391.00 |
| Class 3: Mechanics Liens Claims | 1,006,435.00 | 3,447,120.00 | 1,293,935.00 | - |
| Class 4: Contingent Disputed Bond Claims (6) | 28,000,000.00 | 2,827,548.00 | - | 1,290,000.00 |
| Class 5: Classfied Priority Claims | - | - | - | - |
| Class 6: Unsecured Reliance Claims - 55% (7) | 2,335,890.70 | 2,340,541.50 | 869,380.60 | 145,314.00 |
| Class 7: Unsecured Claims - 1% (8) | 40,575.99 | 8,098.54 | 64,333.96 | - |
| Class 8: Interest Holders | - | - | - | - |
|  |  |  |  |  |
| Effective Date Cash Payments (9) | 5,384,510.98 | 11,815,805.04 | 1,731,970.56 | 608,639.00 |

**Sources of Funds**

|  | Palmdale | Bickford | Emerald | Acton |
|---|---|---|---|---|
| Net Sale Proceeds from Project Sales: |  |  |  |  |
|   Sale Prices (10) | 21,900,000.00 | 10,900,000.00 | 6,100,000.00 | 1,600,000.00 |
|   Selling Costs (11) | (876,000.00) | (436,000.00) | (244,000.00) | (64,000.00) |
|   Net Sale Proceeds | 21,024,000.00 | 10,464,000.00 | 5,856,000.00 | 1,536,000.00 |
|  |  |  |  |  |
| Litco Loans or release of funds from Net |  |  |  |  |
| Sale Proceeds Upon Adequate Protection (12) | 2,376,466.69 | 2,348,640.04 | 933,714.56 | 145,314.00 |

**Notes**

| 1 | All legal fees are projected to be paid from cash in the estates prior to the Effective Date. |
|---|---|
| 2 | There are no Lehman Administrative Loans in the VD Cases. |
| 3 | The other VD Cases owe Palmdale sums advanced to these by Palmdale for legal fees and other costs. Projection assumes claims paid back through a book entry and then immediately loaned back to the obligor estates. These post-Effective Date loans will then be repaid by the Plan Trust from the Net Sales Proceeds from Project sales once the disputed claims are resolved. |
| 4 | Claim figures reflected in SunCal Plans. The SunCal Debtors reserve the right to object to these claims. |
| 5 | Any part of the Lehman Disputed Claims will be paid from the Net Sale Proceeds. |
| 6 | These claims are contingent and will be eliminated when the buyer's replace the bonds. Figures taken from Exhibit 4 to Disclosure Statement. |
| 7 | This represents 55% of all Reliance Claims listed in Disclosure Statement. Actual Option A base figure may be lower based upon ballots. |
| 8 | One percent distribution amount to unsecured claimants other than reliance claimants. Figures derived from unsecured claims total as reflected on Exhibit 4 to Disclosure Statement, less Reliance Claims listed on Exhibit 8 to Disclosure Statement. |
| 9 | The Effective Date figure excludes contingent bond claims, which are disputed and which will be eliminated upon the sale. It excludes mechanics liens, since these claims are included in the Reliance Claim figure. Finally it excludes any payment to the disputed secured claims alleged by the Lehman Entities. Any distribution on these claims will be paid from the Net Sales Proceeds once these claims are resolved. |
| 10 | SunCal Values reflected in Exhibit 2 to Disclosure Statement. |
| 11 | Four percent of sale price. |
| 12 | This is the Effective Date payment figure less property tax claims, which will be paid from the Net Sales Proceeds. |

**Group II VD Debtors - Cash Projection**

**Uses of Funds**

| Debtors | Beaumont | Johannson |
|---|---|---|
| Administrative Claims | | |
|   Legal Fees (1) | - | - |
|   Lehman Admin Loans (2) | - | - |
|   Other (3) | - | - |
| Unclassified Priority Claims | - | - |
| Class 1: Real Property Tax Claims (4) | $442,201.00 | $434,830.00 |
| Class 2: Mechanics Liens Claims | $43,355.00 | $0.00 |
| Class 3: Classfied Priority Claims | $0.00 | $0.00 |
| Class 4: Unsecured Claims (5) | $180,713.00 | $41,181.00 |
| Class 5: Interest Holders | $0.00 | $0.00 |
| | | |
| Effective Date Cash Payments (6) | $666,269.00 | $476,011.00 |

**Sources of Funds**

| | Beaumont | Johannson |
|---|---|---|
| Net Sale Proceeds from Project Sales: | | |
|   Sale Prices (7) | $1,020,000.00 | $540,000.00 |
|   Selling Costs (8) | -$40,800.00 | -$21,600.00 |
|   Net Sale Proceeds | $979,200.00 | $518,400.00 |

Notes

| | |
|---|---|
| 1 | All legal fees are projected to be paid from cash in the estates prior to the Effective Date. |
| 2 | There are no Lehman Administrative Loans in the VD Cases. |
| 3 | The other VD Cases owe Palmdale sums advanced to these by Palmdale for legal fees and other costs. Projection assumes claims paid back through a book entry and then immediately loaned back to the obligor estates. These post-Effective Date loans will then be repaid by the Plan Trust from the Net Sales Proceeds from Project sales once the disputed claims are resolved. |
| 4 | Claim figures reflected in SunCal Plans. The SunCal Debtors reserve the right to object to these claims. |
| 5 | Unsecured claims figures from Ex. 4 to Disclosure Statements. |
| 6 | The Effective Date figure includes all sums payable under the terms of the Plan. |
| 7 | SunCal values reflected in Ex. 2 to Disclosure Statement. |
| 8 | Four percent of sale price. |
| 12 | This is the Effective Date payment figure less property tax claims, which will be paid from the Net Sale Proceeds. |

### Group III VD Debtors - Cash Projection

**Uses of Funds**

| Debtors | Tesoro | SCC Communities | Del Rio |
|---|---|---|---|
| Administrative Claims | | | |
|   Legal Fees (1) | - | - | - |
|   Lehman Admin Loans (2) | - | - | - |
|   Other (3) | - | - | - |
| Unclassified Priority Claims | - | - | - |
| Class 1: Real Property Tax Claims (4) | $103,085.00 | $47,163.00 | - |
| Class 2: Disputed Lehman Claims | $23,795,012.00 | $23,795,012.00 | $23,795,012.00 |
| Class 3: Classfied Priority Claims | $15,812.25 | $5,900.39 | - |
| Class 4: Unsecured Claims (5) | $170,969.00 | $32,813.00 | $2,015,019 |
| Class 5: Interest Holders | $0.00 | $0.00 | - |
| | | | |
| Effective Date Cash Payments (6) | $118,897.25 | $53,063.39 | $0.00 |

**Sources of Funds**

| | Tesoro | SCC Communities | Del Rio |
|---|---|---|---|
| Net Sale Proceeds from Project Sales: | | | |
|   Sale Prices (7) | $740,000.00 | $160,000.00 | 7,100,000.00 |
|   Selling Costs (8) | -$29,600.00 | -$6,400.00 | -$284,000.00 |
|   Net Sale Proceeds | $710,400.00 | $153,600.00 | 6,816,000.00 |

Notes

| | |
|---|---|
| 1 | All legal fees are projected to be paid from cash in the estates prior to the Effective Date. |
| 2 | There are no Lehman Administrative Loans in the VD Cases. |
| 3 | The other VD Cases owe Palmdale sums advanced to these by Palmdale for legal fees and other costs. Projection assumes claims paid back through a book entry and then immediately loaned back to the obligor estates. These post-Effective Date loans will then be repaid by the Plan Trust from the Net Sales Proceeds from Project sales once the disputed claims are resolved. |
| 4 | Claim figures reflected in SunCal Plans. The SunCal Debtors reserve the right to object to these claims. |
| 5 | Claim figures reflected in SunCal Plans. The SunCal Debtors reserve the right to object to these claims. |
| 6 | The Effective Date figure includes property taxes and priority claims. Payments on the Lehman Claims and the Unsecured Claims will depend upon the results of claim objections. |
| 7 | SunCal values reflected in Ex. 2 to Disclosure Statement. |
| 8 | Four percent of sales price. |

**Group IV VD Debtors - Cash Projection**

**Uses of Funds**

| Debtors | SJD Partners | SJD Development |
|---|---|---|
| Administrative Claims | | |
|   Legal Fees (1) | - | - |
|   Lehman Admin Loans (2) | - | - |
|   Other (3) | - | - |
| Unclassified Priority Claims | - | - |
| Class 1: Lehman Disputed claims (4) | $120,110,237.00 | $120,110,237.00 |
| Class 2: Classfied Priority Claims | $4,188.00 | $0.00 |
| Class 3: Unsecured Reliance Claims | $6,419,915.00 | $0.00 |
| Class 4: Unsecured Claims | $49,786,494.00 | $0.00 |
| Class 5: Interest Holders | $0.00 | $0.00 |
| | | |
| Effective Date Cash Payments (5) | $4,188.00 | $0.00 |

**Sources of Funds**

| | |
|---|---|
| Gross Recovery on Pending Action (6) | $16,202,000.00 |
| Est. Legal Fees (7) | -$1,000,000.00 |
| Net Litigiaton Recoveries | $15,202,000.00 |
| | |
| LitCo Plan Loan | $4,188.00 |

Notes

| | |
|---|---|
| 1 | All legal fees are projected to be paid from cash in the estates prior to the Effective Date. |
| 2 | There are no Lehman Administrative Loans in the VD Cases. |
| 3 | The other VD Cases owe Palmdale sums advanced to these by Palmdale for legal fees and other costs. Projection assumes claims paid back through a book entry and then immediately loaned back to the obligor estates. These post-Effective Date loans will then be repaid by the Plan Trust from the Net Sales Proceeds from Project sales once the disputed claims are resolved. |
| 4 | These claims are disputed. No payments will be made to this creditor until this litigation is resolved. |
| 5 | This figure represents 100% of priority claims as reflected in the SunCal Plans. |
| 6 | This is the estimated damage figure that is the subject of the pending litigation claims filed against Lehman Ali and Lehman Re. |
| 7 | This is an estimate. |

### Group I TD Debtors - Cash Projection

**Uses of Funds**

| Debtors | Oak Valley | Delta Coves | Marblehead | Heartland | PSV |
|---|---|---|---|---|---|
| Administrative Claims | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Legal Fees (1) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Lehman Admin Loans (2) | 3,480,171.00 | 5,327,749.00 | 8,845,100.00 | 4,001,257.00 | 4,101,586.00 |
| Other (3) | 0.00 | 0.00 | 0.00 | 0.00 | |
| Unclassified Priority Claims | 0.00 | 0.00 | 0.00 | 0.00 | |
| Class 1: Real Property Tax Claims (4) | 175,158.00 | 406,976.00 | 2,500,646.00 | 985,141.00 | 1,725,166.00 |
| Class 2: Lehman Disputed Claims (5) | 141,630,091.00 | 206,023,142.00 | 316,061,300.00 | 316,061,300.00 | 88,257,340.00 |
| Class 3: Mechanics Liens Claims | 598,904.00 | 372,535.00 | 4,001,839.00 | 317,046,441.00 | 1,860,130.00 |
| Class 4: Contingent Disputed Bond Claims (6) | 14,669,523.00 | 27,546,741.00 | 56,510,018.00 | 28,947,440.00 | 18,405,548.00 |
| Class 5: Classfied Priority Claims | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Class 6: Unsecured Reliance Claims - 55% (7) | 3,723,625.95 | 3,013,296.55 | 9,356,545.55 | 2,041,293.10 | 4,420,390.70 |
| Class 7: Unsecured Claims - 1% (8) | | | | 0.00 | 0.00 |
| Class 8: Interest Holders | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | |
| Effective Date Cash Payments (9) | 7,378,954.95 | 8,748,021.55 | 20,702,291.55 | 7,027,691.10 | 10,247,142.70 |

**Sources of Funds**

Net Sale Proceeds from Project Sales:

| | Oak Valley | Delta Coves | Marblehead | Heartland | PSV |
|---|---|---|---|---|---|
| Sale Prices (10) | 21,000,000.00 | 20,800,000.00 | 93,800,000.00 | 7,500,000.00 | 18,000,000.00 |
| Selling Costs (11) | (840,000.00) | (832,000.00) | (3,752,000.00) | (300,000.00) | (720,000.00) |
| Net Sale Proceeds | 20,160,000.00 | 19,968,000.00 | 90,048,000.00 | 7,200,000.00 | 17,280,000.00 |

Litco Loans or release of funds from Net

| Sale Proceeds Upon Adequate Protection (12) | 7,203,796.95 | 8,341,045.55 | 18,201,645.55 | 6,042,550.10 | 8,521,976.70 |

**Notes**

| 1 | All legal fees are projected to be paid from cash in the estates prior to the Effective Date. |
|---|---|
| 2 | These figures are taken from the stipulation seeking approval of the loans. |

3            This projection assumes all other ordinary course admin claims are paid
             prior to the Effective Date.

4            These are the figures reflected in the SunCal Plans.
             They may be reduced through objections.

5            Any part of the Lehman Disputed Claims will be paid from the Net Sale Proceeds
             after the amount of these claims is determined.

6            These claims are contingent and disputed, and any such claims will be
             when the buyers replace the bonds.    These estimates are Ex. 4 to the SunCal Proponents'
             Disclosure Statement

7            This represents 55% of all Reliance Claims. The actual figure may be lower
             unless 100% of the claimants elected Option A. This is still being tallied.
             This figure include3 55% of the mechanics lien claims.

8            One percent distribution amount to unsecured claimants other than reliance claimants.

9            The Effective Date figure excludes contingent bond claims, which are disputed
             and which will be eliminated upon the sale. It excluded mechanics liens, since
             these claims are included in the Reliance Claim figure. Finally it excludes any payment
             to the disputed secured claims alleged by the Lehman Entities. Any distribution
             on these claims will be paid from the Net Sales Proceeds once these claims are resolved.

10           SunCal values reflected in plans.

11           Four percent of sale price.

12           This is the Effective Date payment figure less property tax claims, which
             will be paid from the Net Sales Proceeds.

**Group II TD Debtors - Cash Projection**

**Uses of Funds**

| Debtors | Oak Knoll | Torrance |
|---|---|---|
| Administrative Claims | 0.00 | 0.00 |
| Legal Fees (1) | 0.00 | 0.00 |
| Lehman Admin Loans (2) | 19,022,359.00 | 3,064,158.00 |
| Other (3) | 0.00 | 0.00 |
| Unclassified Priority Claims | 0.00 | 0.00 |
| Class 1: Real Property Tax Claims (4) | 4,156,073.00 | 773,211.00 |
| Class 2: Lehman Disputed Claims (5) | 158,141,364.00 | 158,141,364.00 |
| Class 3: Mechanics Liens Claims | 5,144,366.00 | 0.00 |
| Class 4: Contingent Disputed Bond Claims (6) | 0.00 | 0.00 |
| Class 5: Classfied Priority Claims | 0.00 | 0.00 |
| Class 6: Unsecured Reliance Claims - 55% (7) | 1,219,917.60 | 112,110.35 |
| Class 7: Unsecured Claims - 1% (8) | 0.00 | 0.00 |
| Class 8: Interest Holders | 0.00 | 0.00 |
| | | |
| Effective Date Cash Payments (9) | 24,398,349.60 | 3,949,479.35 |

**Sources of Funds**

| | Oak Knoll | Torrance |
|---|---|---|
| Net Sale Proceeds from Project Sales: | | |
| Sale Prices (10) | 25,400,000.00 | 13,500,000.00 |
| Selling Costs (11) | (1,016,000.00) | (540,000.00) |
| Net Sale Proceeds | 24,384,000.00 | 12,960,000.00 |
| | | |
| Litco Loans or release of funds from Net | | |
| Sale Proceeds Upon Adequate Protection (12) | 20,242,276.60 | 3,176,268.35 |

**Notes**

1     All legal fees are projected to be paid from cash in the estates prior to the Effective Date.

2     These figures are taken from the latest stipulation seeking approval of the loans.

3     This projection assumes all other ordinary course admin claims are paid prior to the Effective Date.

4     Claim figures reflected in SunCal Plans. The SunCal Debtors reserve the right to object to these claims.

5     Any part of the Lehman Disputed Claims will be paid from the Net Sale Proceeds after the amount of these claims is determined.

6     These claims are contingent and disputed, and any such claims will be when the buyers replace the bonds.

7     This represents 55% of all Reliance Claims. The actual figure will be lower unless 100% of the claimants elected Option A. This is still being tallied. This figure included 55% of the mechanics lien claims.

8     One percent distribution amount to unsecured claimants other than reliance claimants.

9     The Effective Date figure excludes contingent bond claims, which are disputed and which will be eliminated upon the sale. It excluded mechanics liens, since these claims are included in the Reliance Claim figure. Finally it excludes any payment to the disputed secured claims alleged by the Lehman Entities. Any distribution on these claims will be paid from the Net Sales Proceeds once these claims are resolved.

10          SunCal values reflected in Plan.

11          Four percent of sale price.

12          This is the Effective Date payment figure less property tax claims, which
            will be paid from the Net Sales Proceeds.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **DECLARATION OF BRUCE V. COOK IN SUPPORT OF SUNCAL PLAN PROPONENTS' GROUP I VD PLANS, GROUP II VD PLANS, GROUP III VD PLANS, GROUP IV VD PLANS, GROUP I TD PLANS AND GROUP II TD PLANS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 26, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On September 26, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 26, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 26, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

39

NEF SERVICE LIST

- Selia M Acevedo     sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams     jadams@sycr.com
- Raymond H Aver     ray@averlaw.com
- James C Bastian     jbastian@shbllp.com
- Thomas Scott Belden     sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd     fednotice@tclaw.net
- Mark Bradshaw     mbradshaw@shbllp.com
- Gustavo E Bravo     gbravo@smaha.com
- Jeffrey W Broker     jbroker@brokerlaw.biz
- Richard W Brunette     rbrunette@sheppardmullin.com
- Brendt C Butler     bbutler@mandersonllp.com
- Andrew W Caine     acaine@pszyjw.com
- Carollynn Callari     ccallari@venable.com
- Cathrine M Castaldi     ccastaldi@rusmiliband.com
- Tara Castro Narayanan     tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers     dchambers@jmbm.com
- Shirley Cho     scho@pszjlaw.com
- Vonn Christenson     vrc@paynefears.com
- Brendan P Collins     bpcollins@bhfs.com
- Vincent M Coscino     vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot     pcouchot@winthropcouchot.com,
  pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Geoffrey Crisp     geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri     dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte     ana.damonte@pillsburylaw.com
- Vanessa S Davila     vsd@amclaw.com
- Melissa Davis     mdavis@shbllp.com
- Daniel Denny     ddenny@gibsondunn.com
- Caroline Djang     crd@jmbm.com
- Caroline Djang     cdjang@rutan.com
- Donald T Dunning     ddunning@dunningLaw.com
- Lynsey M Eaton     leaton@gglts.com
- Meredith R Edelman     meredith.edelman@dlapiper.com
- Joseph A Eisenberg     jae@jmbm.com
- Lei Lei Wang Ekvall     lekvall@wgllp.com
- Richard W Esterkin     resterkin@morganlewis.com
- Don Fisher     dfisher@ptwww.com
- Marc C Forsythe     kmurphy@goeforlaw.com
- Alan J Friedman     afriedman@irell.com
- Steven M Garber     steve@smgarberlaw.com
- Christian J Gascou     cgascou@gascouhopkins.com
- Barry S Glaser     bglaser@swjlaw.com
- Robert P Goe     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg     egoldberg@stutman.com
- Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez     mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith     bkemail@harrisbeach.com

- Matthew Grimshaw    mgrimshaw@rutan.com
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@marshackhays.com
- Charles Liu    cliu@winthropcouchot.com
- Ben H Logan    blogan@omm.com
- John W Lucas    jlucas@pszjlaw.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Craig Millet    cmillet@gibsondunn.com,
  pcrawford@gibsondunn.com;cmillet@gibsondunn.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com,
  Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Laurel R Zaeske    lzaeske@rusmiliband.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

## E-MAIL SERVICE – PARTIES OBJECTING TO PLANS

Attorneys for New Anaverde, LLC – Filiberto Agusti and Joshua Taylor – fagusti@steptoe.com;
jrtaylor@step.com

Attorneys for County of Alameda Treasurer-Tax Collector – Claude F. Kolm – claude.kolm.acgov.org