1  Richard M. Pachulski (CA Bar No. 90073)
   Robert B. Orgel (CA Bar No. 101875)
2  John W. Lucas (CA Bar No. 271038)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Boulevard, 13th Floor
   Los Angeles, California  90067
4  Telephone:  (310) 277-6910 / Facsimile:  (310) 201-0760

5  Edward Soto (admitted *pro hac vice*)
   Alfredo R. Perez (admitted *pro hac vice*)
6  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
7  New York, NY  10153-0119
   Telephone:  (212) 310-8000 / Facsimile:  (212) 310-8007
8
   Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
9  Northlake Holdings LLC and OVC Holdings LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br>Jointly Administered Debtors and<br>Debtors-In-Possession.<br>_____<br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☒ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☒ SunCal Johannson Ranch, LLC<br>☒ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows, LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☒ Seven Brothers, LLC<br>☒ SJD Partners, Ltd.<br>☒ SJD Development Corp.<br>☒ Kirby Estates, LLC<br>☒ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☒ LB-L-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☒ LB-L-SunCal Northlake, LLC<br>☒ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br><br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**MOTION OF THE LEHMAN<br>CREDITORS FOR TEMPORARY<br>ALLOWANCE OF THE LEHMAN<br>CLAIMS FOR THE LIMITED<br>PURPOSE OF VOTING TO ACCEPT<br>OR REJECT THE SUNCAL PLANS<br>AND THE TRUSTEE/LEHMAN<br>PLANS**<br><br>**Hearing:**<br>Date:    October 24, 2011<br>Time:    9:30 a.m.<br>Place:    Courtroom 5A |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Page No.**

I. JURISDICTION AND VENUE ................................................................................................ 1

II. INTRODUCTION ................................................................................................................ 1

III. FACTUAL BACKGROUND ............................................................................................. 3

    A.   The Chapter 11 Cases ................................................................................................. 3

    B.   The Lehman Loans ...................................................................................................... 4

    C.   The SunCal Plans ....................................................................................................... 5

    D.   The Trustee/Lehman Plans ......................................................................................... 5

    E.   SunCal Objectors' Claim Objection ......................................................................... 6

    F.   Opposition to the Claim Objection ........................................................................... 7

    G.   SunCal Objectors' 502(d) Motion ............................................................................ 8

    H.   Opposition to the 502(d) Motion .............................................................................. 9

    I.   Procedural Status of Objections ................................................................................ 10

IV. DISCUSSION ..................................................................................................................... 11

    A.   The Lehman Claims Should Be Temporarily Allowed ............................................ 11

        1.   There Is Insufficient Time To Resolve The Objections To  The Lehman Claims Prior To The Confirmation Hearing ................................................................................. 12

        2.   The Objections Are Questionable ...................................................................... 13

        3.   For Purposes of Voting, the Lehman Claims  Should Be Temporarily Allowed at Face ................................................................................................................ 15

        4.   The Temporary Allowance of the Lehman Claims at  Face Value Comports with the Court's Feasibility Analysis ............................................................................. 16

    B.   Recoupment Reductions to the Lehman Claims  Should Reduce the Total Amount of the Claim,  Not the Secured Portion That is Based on Collateral Values .......................... 17

V. CONCLUSION ..................................................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page No.**

3

**Cases**

4

*Armstrong v. Rushton (In re Armstrong),*
5    292 B.R. 678 (B.A.P. 10th Cir. 2003) ............................................ 11, 12, 13

6    *In re America West Airlines, Inc.,*
     217 F.3d 1161 (9th Cir. 2000) .................................................. 14

7    *In re Drexel Burnham Lambert Group, Inc.,*
     113 B.R. 830 (Bankr. S.D.N.Y. 1990) ............................................ 19

8    *In re Harbin,*
     486 F.3d 510 (9th Cir. 2007) ................................................ 17, 18

9
     *In re Jablonski,*
10    70 B.R. 381 (Bankr. E.D. Pa. 1987) .............................................. 20

11    *In re Kings Terrance Nursing Home and Health Related Facility,*
      184 B.R. 200 (S.D.N.Y. 1995) .................................................. 19

12    *In re Madigan,*
      270 B.R. 749 (B.A.P. 9th Cir. 2001) ............................................ 19

13    *In re Marin Town Center,*
      142 B.R. 374 (N.D. Cal. 1992) ................................................. 12

14
      *In re Orosco,*
15    77 B.R. 246 (Bankr. N.D. Cal. 1987) ............................................ 11

16    *In re Pizza of Hawaii, Inc.,*
      761 F.2d 1374 (9th Cir. 1985) ............................................... 17, 18

17    *In re Ralph Lauren Womenswear, Inc.,*
      197 B.R. 771 (Bankr. S.D.N.Y. 1996) ............................................ 12

18    *In re Southern Air Transport, Inc.,*
      294 B.R. 293 (Bankr. S.D. Ohio 2003) ........................................... 15

19
      *Katchen v. Landy,*
20    382 U.S. 323 (1966) .......................................................... 15

21    *Margott v. Gem Properties, Inc.,*
      111 Cal. Rptr. 1 (Cal. App. Ct. 1973) ........................................... 21

22    *New York State Elec. and Gas Corp. v. McMahon (In re McMahon),*
      129 F.3d 93 (2d Cir. 1997) .................................................... 19

23    *Newbury,*
      95 F.3d at 1398 (9th Cir. 1996) ............................................... 19

24
      *Raleigh v. Illinois Dep't of Rev.,*
25    530 U.S. 15 (2000) ........................................................... 18

26    *United States v. Whiting Pools, Inc.,*
      462 U.S. 198 204 (1983) ....................................................... 5

27    *Westinghouse Credit Corp. v. D'Urso,*
      278 F.3d 138 (2d Cir. 2002) ................................................... 19

28

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................................... 1

11 U.S.C. § 1107 ............................................................................................................................. 3

11 U.S.C. § 1108 ............................................................................................................................. 3

11 U.S.C. § 1126 ...................................................................................................................... 1, 13

11 U.S.C. § 1129 ............................................................................................................................. 1

11 U.S.C. § 502(b) ........................................................................................................................ 13

11 U.S.C. § 502(d) .......................................................................................................... 2, 9, 13, 14

11 U.S.C. § 506(a) ................................................................................................... 2, 4, 8, 17, 18

11 U.S.C. § 510(c) ........................................................................................................................ 10

11 U.S.C. § 545(2) ........................................................................................................................ 13

11 U.S.C. § 547 ............................................................................................................................... 9

28 U.S.C. § 1334 ............................................................................................................................. 1

28 U.S.C. § 1408 ............................................................................................................................. 1

28 U.S.C. § 1409 ............................................................................................................................. 1

28 U.S.C. § 157 ............................................................................................................................... 1

Section 57(g) of the Bankruptcy Act ........................................................................................... 14

**Other Authorities**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 338-40 (1977) ......................................................... 4

**Rules**

Fed. R. Bankr. P. 3018 ................................................................................... 10, 13, 14, 15

Fed. R. Bankr. P. 3018(a) ................................................................................. 1, 2, 10, 11

1    Lehman Commercial Paper Inc. ("LCPI"), Lehman ALI, Inc. ("Lehman ALI"), Northlake

2   Holdings LLC ("Northlake"), and OVC Holdings LLC ("OVC" and, together with LCPI, Lehman

3   ALI and Northlake, the "Lehman Creditors") hereby file this motion (the "Motion") for an order

4   temporarily allowing the claims of the Lehman Creditors for the limited purpose of voting on the

5   chapter 11 plans filed by the Voluntary Debtors and SCC Acquisitions Inc. (collectively, the

6   "SunCal Plan Proponents"), and the chapter 11 plans filed by the Lehman Creditors and the chapter

7   11 trustee (the "Trustee") of the Trustee Debtors.

8    In support of this Motion, the Lehman Creditors respectfully state as follows:

9    **I.**

10    **JURISDICTION AND VENUE**

11    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

12   This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant

13   to 28 U.S.C. §§ 1408 and 1409.  The statutory grounds for the relief requested herein are sections

14   105(a), 1126, 1129 of the Bankruptcy Code and Rule 3018(a) of the Federal Rules of Bankruptcy

15   Procedure.

16    **II.**

17    **INTRODUCTION**

18    The Lehman Creditors seek the temporary allowance of the Lehman Claims (as defined

19   below) to permit the Lehman Creditors to accept or reject the SunCal Plans (as defined below) and

20   the Trustee/Lehman Plans (as defined below).  The Lehman Creditors propose, for three reasons,

21   that each of the Lehman Claims be temporarily allowed in the amount set forth in their ballots,

22   despite the pendency of the claim objections filed by the Voluntary Debtors and SunCal

23   Management, LLC (together, the "SunCal Objectors").  First, the objections, at best, only raise

24   *partial* recoupment defenses to the Lehman Claims.  Even accepting the factual allegations made by

25   the SunCal Objectors as true (and there is mounting evidence they are not), there is no plausible

26   scenario under which the Lehman Claims would be categorically disallowed in their entirety.

27   Second, there is no evidentiary foundation for making a principled allocation of alleged damages

28   allegedly suffered by the Debtors against any particular Lehman Claim.  There simply is no basis to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

match a particular damage claim against a particular Debtor or loan obligation.  Third, the objection under section 502(d) of the Bankruptcy Code does not prevent the temporary allowance of the Lehman Claims for voting purposes.  Although the parties strenuously disagree whether a prior adjudication of avoidance liability is necessary to invoke section 502(d), even under the SunCal Objectors' formulation of the statute, the disallowance of the claims *is itself temporary*—hence, an intervening, temporary allowance for voting purposes is plainly not barred.

The Lehman Creditors submit that the "proper," temporary amount of the claims for voting purposes should be the face amount of the proofs of claim.  As the Court is aware, the basis of the Lehman Claims is money loaned (almost $2 billion) to certain of the Debtors (as borrowers or co-obligors), plus accrued pre-petition interest, fees and costs.  Although the Lehman Creditors acknowledge that certain of the claims are presently disputed, and that the SunCal Objectors believe there are damages that, if proven, might reduce the amount of the claims, for purposes of voting the claims should be counted at their face amount, without waiver or admission by any party on the merits.  The Court has not yet adjudicated any liability of the Lehman Creditors or determined the amount of potential damages, if any, nor the Lehman Creditors' liability for avoidable transfers, nor their obligation to pay or turn over any particular property.  Under the current state of the record, thus, the face amount of the claims (subject to bifurcation under section 506(a)) is the best, *prima facie* "proper" amount to vote.

Bankruptcy Rule 3018(a) is designed to accommodate two well-settled statutory rules.  First, the acceptance or rejection of a plan is measured only by the votes of creditors holding allowed claims.  Second, a filed claim is deemed allowed unless a party in interest objects.  Just as a debtor would naturally be concerned with a distorted vote based on creditors holding inflated or imaginary claims, a creditor would equally be concerned with an unresolved objection that would result in disenfranchisement of the creditor from the confirmation process.

The rule vests the Court with discretion to determine the "proper" amount of a disputed claim for the purpose of accepting or rejecting a plan, without prejudice to any subsequent determination on the merits.  Here, the Lehman Creditors contest (and intend to disprove), the objections raised by the SunCal Objectors to the allowance of their claims.  The SunCal Objectors, on the other hand,

believe they have sustained damages that may be used to reduce certain Lehman Claims.  At present, however, balancing (i) the present stage of the claims allowance and avoidance disputes, (ii) the *prima facie* validity of the loans made by the Lehman Creditors (which, itself, is not disputed), (iii) the lack of merit in the claims asserted against the Lehman Creditors, (iv) the absence of any principled methodology for reducing one claim as opposed to another, (v) the very limited purpose of temporary allowance, and (vi) the fairness of permitting these estates' largest creditor the opportunity to vote on the pending plans, the Lehman Creditors propose to temporarily allow their claims in the amounts filed.  The Lehman Creditors believe that this approach appropriately permits the Lehman Creditors to retain a reasonable vote in the confirmation process.

The proposed temporary allowed amounts of the Lehman Claims, by loan and by obligor, are set forth on the chart annexed hereto as **Exhibit A**.  A proposed form of order for the relief requested in this Motion is annexed hereto as **Exhibit B**.

**III.**

**FACTUAL BACKGROUND**

**A.    The Chapter 11 Cases**

On November 6, 7 and 19, 2008, the Voluntary Debtors[1] filed their respective voluntary petitions under title 11 of the United States Code (the "Bankruptcy Code").  The Voluntary Debtors continue to manage their affairs and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On November 12, 14 and 19, 2008, involuntary petitions were filed against the Trustee Debtors.[2]  On or about January 8, 2009, the Court entered orders for relief in the Trustee Debtors' cases.  On or about January 15, 2009, the Court entered orders requiring the appointment of a chapter 11 trustee in each of the Trustee Debtors' cases.  Thereafter, the Office of the United States Trustee appointed Steven M. Speier as the Trustee for the Trustee Debtors.

---

[1]  The Voluntary Debtors are:  Palmdale Hills Property; LLC, Acton Estates LLC; Kirby Estates, LLC; North Orange Del Rio: SCC Communities, LLC, SCC/Palmdale; LLC, Seven Brothers, LLC; SJD Development Corp.; SJD Partners, Ltd.; SunCal Beaumont Heights, LLC; SunCal Bickford Ranch LLC; SunCal Communities I, LLC; SunCal Communities III, LLC; SunCal Emerald Meadows LLC; SunCal Johannson Ranch, LLC; SunCal Summit Valley LLC; and Tesoro SF, LLC.

[2]  The Trustee Debtors are:  SunCal Heartland, LLC; LB-L-SunCal Northlake, LLC; SunCal Marblehead, LLC; SunCal Century City, LLC; SunCal PSV, LLC; Delta Coves Venture; LLC, SunCal Torrance; LLC, LB-L SunCal Oak Valley, LLC; and SunCal Oak Knoll, LLC (together with the Voluntary Debtors, the "Debtors").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## B.    The Lehman Loans

Prior to the commencement of these cases, the Lehman Creditors made loans to certain Debtors in the approximate aggregate amount of $1.9 million[3] (the "Lehman Loans"), pursuant to various loan agreements (including any ancillary documents, collectively, the "Lehman Loan Documents") with certain of the Debtors.  The Debtors' obligations under the Lehman Loan Documents were secured by first priority liens and security interests against certain plan projects and other property owned or controlled by such borrowing Debtors.

In certain instances, more than one Debtor was jointly and severally liable for some of the Lehman Loans.  As a result, in addition to the borrower claims, the Lehman Creditors also filed timely proofs of claim against each of the Debtors that was co-liable on a loan (or portion thereof).  In the aggregate, the proofs of claim total approximately $3.9 million (the "Lehman Claims").

The value of the collateral securing the Lehman Loans is far less than full amount of the Lehman Claims.  The Lehman Creditors estimate that (i) the secured portion of the Lehman Claims is approximately $500 million and (ii) general unsecured deficiency portion of the Lehman Claims is in excess of $3.3 billion.  These estimates are based on the higher Lehman Creditor appraisals and afford the Lehman Creditors less voting power than would the valuations consistent with those proffered by the SunCal Plan Proponents in the SunCal Plans.

Historically, the primary purpose of federal bankruptcy laws always have been to provide for a ratable distribution of a debtor's assets to creditors.  However, the Bankruptcy Code sets forth certain special rights to creditors holding secured claims.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198 204 (1983) (adequate protection).  Further, the legislative history provides that "[s]ecured creditors should not be deprived of the benefit of their bargain."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 338-40 (1977).  While the secured creditor "might not receive his bargain in kind, the purpose of the [adequate protection concept] is to insure that the secured creditor receives essentially what he barged for."  *Id.*  And, section 506(a) of the Bankruptcy Code is implemented to determine the extent to which a creditor is entitled to such treatment.

---

[3] This amount includes the contingent claims relating to SJD Partners and SJD Development.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**C.      The SunCal Plans**

2        On August 5, 2011, the SunCal Plan Proponents, filed four separate amended chapter 11

3  plans for eleven (11) of the seventeen (17) Voluntary Debtors[4] and three separate amended chapter

4  11 plans for eight (8) of the nine (9) Trustee Debtors.[5]   The applicable sections of the SunCal Plans,

5  titled *Who May Vote to Accept/Reject the Plan*, provide that:

6        A Holder of a Claim or Interest has a right to vote for or against the Plan if that
         Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for
7        voting purposes and (2) Classified in an impaired Class (excluding any class in which
         the Plan is "deemed rejected").  The votes will be tabulated on a Debtor by Debtor
8        basis.

9  SunCal Plans § 6.3.  As a result of the objections filed against the Lehman Claims (discussed below),

10  the SunCal Plan Proponents are expected to contend that the Lehman Creditors' ballots cast with

11  respect to the SunCal Plans and the votes therein are not to be counted.  As recognized in the SunCal

12  Plans, however, a claim may be "*Allowed for voting purposes*"—the goal of this Motion.

13

**D.      The Trustee/Lehman Plans**

14        On or about August 5, 2011, certain of the Lehman Creditors filed a plan for eleven (11) of

15  the seventeen (17) Voluntary Debtors[6] and certain of the Lehman Creditors and the Trustee filed a

16  plan for eight (8) of the nine (9) Trustee Debtors.[7]   Under the Trustee/Lehman Plans, the Lehman

17  Creditors' claims are allowed for voting and other purposes in the amounts proposed herein

18  (Although, the Lehman Creditors' impair their own claims and accept less favorable treatment to

19  resolve the ligation that continues under the SunCal Plans).  Still, as a result of the objections filed

20  against the Lehman Claims, the Lehman Creditors filed this Motion to assure that the ballots they

21  cast with respect to the Trustee/Lehman Plans are counted.

22

23

24

[4]   The chapter 11 plans proposed by the SunCal Plan Proponents for the Voluntary Debtors are referred to collectively as
      the  "VD Plans."

25
[5]   The chapter 11 plans proposed by SunCal Plan Proponents for the Trustee Debtors are referred to collectively as the
      "TD Plans."  Together, the VD Plans and the TD Plans are referred to as  the "SunCal Plans."
26
[6]   *Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders* [Docket

27      No. 2598] (the "Lehman Voluntary Plan").

[7]   *Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Subject Lehman
28      Creditors* [Docket No. 2595] ("Trustee/Lehman Plan" and, together with the Lehman Voluntary Plan, the
      "Trustee/Lehman Plans").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

E.    **SunCal Objectors' Claim Objection**

On April 8, 2011, the SunCal Objectors filed the *Motion for Order Disallowing Certain Claims Held By Lehman ALI Inc. and Lehman Commercial Paper Inc.* [Docket No. 1901], which was subsequently amended on May 10, 2010 [Docket No. 2082] (together, the "Claim Objection"). By the Claim Objection, the SunCal Objectors have contested the following claims:

| Debtor | Claim Number | Claimant | Claim Amount |
|---|---|---|---|
| Acton Estates | 6 | LCPI | $343,221,391 |
| Bickford | 16 | LCPI | $343,221,391 |
| Emerald Meadows | 7 | LCPI | $343,221,391 |
| Palmdale Hills | 65 | LCPI | $287,252,096 |
| SJD Partners | 23 | Lehman ALI | $120,110,237 |
| Summit Valley | 12 | LCPI | $343,221,391 |
| SCC Communities | 9 | Lehman ALI | $23,795,013 |
| Tesoro | 7 | Lehman ALI | $23,795,013 |
| Oak Valley | 16 | LCPI | $141,630,092 |
| Northlake | 6 | LCPI | $123,654,777 |
| PSV | 12 | LCPI | $88,257,340 |
| Heartland | 9 | LCPI | $354,325,126 |
| Marblehead | 21 | LCPI | $354,325,126 |

The Claim Objection alleges that the Lehman Creditors and certain affiliates breached a "Restructuring Agreement" and a "Proposed Settlement Agreement." Frist, it has not been shown (and the Lehman Creditors contest that it cannot be shown) that the Proposed Settlement ever became effective. The SunCal Objectors contend that the Restructuring Agreement and Proposed Settlement were effective and contend that the alleged breaches thereof by the Lehman Creditors damaged certain Debtors in the amount of "tens of millions, if not in excess of one hundred million dollars" (which amount, according to the Claim Objection, p. 1, "will need to be quantified through discovery"), allegedly based on third-party vendor and bond liabilities incurred by the Debtors in reliance on the implementation of the agreements. Claim Objection, pp. 10-24. If successful, the SunCal Objectors seek to reduce, by way of recoupment and other purported defensive remedies,[8]

---

[8]    While the claims asserted in the Claim Objection are styled as recoupment and other defensive remedies, the Lehman Creditors believe that such claims are actually affirmative breach of contract claims that are subject to the automatic stay insofar as they relate to LCPI. Further, with respect to the claims relating to the Trustee Debtors, the Lehman Creditors believe that such claims are the property of the Trustee Debtors and, absent consent or Court authorization, may only be asserted by the Trustee Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 the Lehman Claims by the damages caused by the alleged breach. Claim Objection, pp. 24-36.[9]

2 Moreover, the SunCal Objectors claim that the alleged damages may be used to reduce *the secured*

3 *portion* of the Lehman Claims, leaving the "resulting equity … available for unsecured creditors."

4 Claim Objection, p. 1.

5    As noted, the merits of the Claim Objection are disputed by the Lehman Creditors. For

6 purposes of this Motion, however, one key feature of the Claim Objection stands out – although the

7 objection purports to itemize numerous payables, fees and other so-called assumed and authorized

8 amounts incurred by various Debtors in the expectation that the settlement agreements would be

9 implemented, the objection does not sufficiently pinpoint these payables on a loan-by-loan basis, or

10 describe how they intend to recoup on a claim-by-claim basis as they relate to the applicable Debtors

11 and Lehman Creditors. Hence, there is no foundation, even if the Court were to accept the

12 allegations that the Debtors *generally* sustained damages, to assign any *particular* damage amounts

13 to any *individual* Debtor and, subsequently, to any *specific* Lehman Claim.

14    Moreover, as described in detail in Article IV of the *Memorandum of Points and Authorities*

15 *Submitted by: Trustee and Lehman Creditors in Support of Confirmation of the Third Amended*

16 *Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Subject Lehman*

17 *Creditors; and Lehman VD Lenders in Support of Confirmation of the Third Amended Joint Chapter*

18 *11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders* (the "Confirmation

19 Brief") and the related supporting declarations, each filed contemporaneously herewith, the claims

20 asserted in the Claim Objection and 502(d) Motion are without merit.

21 **F.    Opposition to the Claim Objection**

22    On May 26, 2011, the Lehman Creditors filed their opposition to the Claim Objection

23 [Docket No. 2123] (the "Lehman Opposition").[10] As described in greater detail in the Lehman

---

[9] Certain of the Voluntary Debtors and SunCal Management also commenced a state court action, since removed to the Bankruptcy Court, against Lehman ALI and certain affiliates based upon facts identical to the Claim Objection. *See Acton Estates, LLC et al. v. Lehman ALI Inc., et al.*, Adv. Pro. No. 11-1212-ES (the "Acton Action"). In the Acton Action, the plaintiffs allege $100 million in damages based on the same breach of contract claims arising under the Restructuring Agreement and Proposed Settlement Agreement.

[10] On May 26, 2011, the Trustee filed a pleading in opposition to the Claim Objection on the basis that only the Trustee has standing to assert affirmative breach claims against the Lehman Creditors [Docket No. 2121]. On May 26, 2011, the Provisional Liquidator of Lehman Re Ltd. filed a joinder to the Lehman Claim Objection Opposition [Docket No. 2125].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Opposition, the Lehman Creditors argue, among other things, that (i) all claims relating to the

2  Trustee Debtors should be dismissed for lack of standing because they are affirmative breach claims

3  of the Restructuring Agreement held by the Trustee Debtors, not claim objections to the Lehman

4  Claims, (ii) the SunCal Objectors fail to state a valid recoupment claim because the Lehman Claims

5  *that arise from the Lehman Loan Documents* and the breach claims *that arise from the purported*

6  *breach of the Restructuring Agreement and Proposed Settlement Agreement* do not arise from

7  reciprocal, integrated obligations under the same agreement, and  (iii) the Proposed Settlement

8  Agreement was never effective and cannot, as a result, give rise to breach claims.

9          In addition, the Lehman Creditors dispute the existence of any legal basis to recoup damages

10  against only the secured portion of the Lehman Claims.  Recoupment, if it even applies in this

11  context, is merely the abatement or reduction of a single claim.  Section 506(a) of the Bankruptcy

12  Code creates a *notional* secured claim and unsecured claim out of this single claim, but there is no

13  legal authority for recouping a countervailing claim against only that portion of a claim that is

14  treated as secured based on the value of underlying collateral.

15  **G.    SunCal Objectors' 502(d) Motion**

16          On April 26, 2011, the SunCal Objectors filed the *Motion for Order Disallowing Claims of*

17  *Lehman ALI Inc. and Lehman Commercial Paper Inc. Pursuant to 11 U.S.C. § 502(d)* [Docket No.

18  1976] (the "502(d) Motion").  By the 502(d) Motion, the SunCal Plan Objectors are seeking to

19  disallow the following claims:

20

| Debtor | Claim Number | Claimant | Claim Amount |
|---|---|---|---|
| SunCal I | 1 | LCPI | $343,221,391 |
| SunCal III | 2 | LCPI | $343,221,391 |
| Acton Estates | 6 | LCPI | $343,221,391 |
| Bickford | 16 | LCPI | $343,221,391 |
| Emerald Meadows | 7 | LCPI | $343,221,391 |
| SCC/Palmdale | 1 | LCPI | $119,664,305 |
| Summit Valley | 12 | LCPI | $343,221,391 |
| SCC Communities | 9 | Lehman ALI | $23,795,013 |
| Tesoro | 7 | Lehman ALI | $23,795,013 |
| Oak Valley | 16 | LCPI | $141,630,092 |
| Oak Knoll | 12 | Lehman ALI | $158,141,365 |
| Torrance | 4 | Lehman ALI | $158,141,365 |
| Heartland | 9 | LCPI | $354,325,126 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Debtor | Claim Number | Claimant | Claim Amount |
|--------|-------------|----------|--------------|
| Marblehead | 21 | LCPI | $354,325,126 |
| Del Rio | 14 | Lehman ALI | $23,795,013 |
| Delta Coves | 21 | Lehman ALI | $206,023,142 |

The SunCal Objectors have commenced various adversary proceedings against the applicable Lehman Creditors seeking to avoid certain transfers. Specifically, they contend that the Lehman Creditors received preferential transfers that are recoverable under section 547 of the Bankruptcy Code. In addition, the SunCal Objectors allege that certain liens granted to the Lehman Creditors are avoidable as fraudulent conveyances because certain of the Debtors granting such liens did not receive a corresponding direct benefit.

Although each of the underlying avoidance actions is in its preliminary stages, the SunCal Objectors are seeking to "temporarily disallow" the foregoing claims pursuant to section 502(d) of the Bankruptcy Code pending a final adjudication. The SunCal Objectors concede that the 502(d) Motion does not seek the surrender of property nor affirmative relief of any kind. Rather, it only seeks to object to certain Lehman Claims based on the subsequent outcome of independent adversary proceedings.

**H.    Opposition to the 502(d) Motion**

On May 26, 2011, the Lehman Creditors filed their opposition to the 502(d) Motion [Docket No. 2126] (the "502(d) Opposition").[11] As described in greater detail in the 502(d) Opposition, the Lehman Creditors argue, among other things, that (i) all claims relating to the Trustee Debtors should be dismissed for lack of standing because the avoidance actions are the property of the Trustee, not the Voluntary Debtors or any of their affiliates, (ii) the Lehman Claims cannot be disallowed under section 502(d) without the Court first making a determination that the Lehman Creditors are the recipients of avoidable transfers that have not been repaid to the applicable Debtor estates, (iii) any determination of avoidance insofar as it relates to LCPI is a violation of its automatic stay, (iv) the Voluntary Debtors and SunCal Management fail to state a valid fraudulent transfer claim, and (v) the Lehman Creditors' administrative claims are not subject to objection since

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[11] On May 26, 2011, the Trustee Debtors filed a pleading opposing the 502(d) Motion on the basis that only the Trustee Debtors have standing to assert avoidance claims held by the Trustee Debtors [Docket 2121].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   they were previously approved by the Court. [12]   Like the Claim Objection, the Lehman Creditors

2   believe that the claims raised in the 502(d) Motion have little, if any, merit for the reason set forth in

3   the Confirmation Brief (*See* Article IV) and supporting declarations therefor, each filed

4   contemporaneously herewith.

5   **I.      Procedural Status of Objections**

6           As the Court and all parties in interest are well aware, the primary focus of these cases

7   through the end of October will be confirmation process.  Presently, the Court has not ruled on the

8   Claim Objection, the 502(d) Motion or the underlying adversary proceedings on which the 502(d)

9   Motion is premised.  The next status conference for each matter is scheduled for November 15,

10  2011, at 10:30 a.m., three weeks after the commencement of the confirmation hearings (scheduled to

11  begin the week of October 24, 2011).  Without a dispositive ruling on the Claim Objection, the

12  502(d) Motion or the underlying actions, the allowance of the Lehman Claims will not be

13  determined prior to the confirmation hearing.  The Lehman Creditors believe it would not be fair to

14  prevent them from voting their claims simply because the adjudication of their claims will not occur

15  until after the confirmation process is completed. [13]   Rule 3018 is expressly intended to

16  accommodate the divergent timing of the claims allowance process and the confirmation process.

17

18

19

20

21

22  _____

23  [12]  For the avoidance of doubt, the Lehman Creditors reserve all rights with respect to the Claim Objection and the 502(d)
    Motion.  The Lehman Creditors statements herein regarding either objection should not be construed as an admission
    of liability or a waiver of any rights, claims, or defenses whether arising under the Bankruptcy Code or other

24  applicable law.

    [13]  The pending "Lehman Adversary Proceeding," in which the SunCal Objectors are seeking to equitably subordinate the
25  Lehman Claims, does not affect the relief sought by this Motion.  First, insofar as LCPI's claims are concerned, LCPI
    is not subject to the Lehman Adversary Proceeding.  Second, as a matter of law, subordination **presumes** that the

26  claims being ranked have already been allowed.  *See* 11 U.S.C. § 510(c) ("Notwithstanding subsections (a) and (b) of
    this section, after notice and a hearing, the court may--(1) under principles of equitable subordination, subordinate for

27  purposes of distribution all or part of an **allowed** claim to all or part of another **allowed** claim or all or part of an
    allowed interest to all or part of another allowed interest.") (emphasis added).  Hence, if it is relevant at all to this

28  Motion, the Debtors' subordination action, by definition, should necessarily support the lesser step of temporary
    allowance of the Lehman Claims.

**IV.**

**DISCUSSION**

**A.    The Lehman Claims Should Be Temporarily Allowed**

The Lehman Claims should be allowed for the limited purpose of permitting the Lehman

Creditors to cast votes to either accept or reject the plans.  In pertinent part, the voting provisions of

the Bankruptcy Rules provide that:

> Notwithstanding objection to a claim or interest, the court after notice and hearing
> may temporarily allow the claim or interest in an amount which the court deems
> proper for the purpose of accepting or rejecting a plan.

Bankruptcy Rule 3018(a).

Rule 3018 enables a creditor to seek the temporary allowance of a disputed claim for

purposes of voting.  *In re Orosco*, 77 B.R. 246, 249 (Bankr. N.D. Cal. 1987).  Congress enacted

Bankruptcy Rule 3018(a) to prevent a plan proponent from filing a claim objection prior to the

commencement of the confirmation process to disenfranchise a creditor.  *Id.* at 250.  Thus, a creditor

may request the temporary allowance of its claim for the limited purpose of voting under any of the

following non-exclusive circumstances:  (i) an objection to the claim has been filed and there is

insufficient time to determine the objection prior to confirmation, (ii) a full hearing on the objection

would delay administration of the case, or (iii) the objection is frivolous or of questionable merit.

*Armstrong v. Rushton (In re Armstrong)*, 292 B.R. 678, 686 (B.A.P. 10th Cir. 2003).

Moreover, "[t]emporary allowance of a claim under Bankruptcy Rule 3018(a) is not

dispositive as [to] the amount of the claim; it provides only limited voting authority to a creditor."

*Id.*  Estimation for voting purposes is within the reasonable discretion of the Court.  As one

Bankruptcy Court has stated:

> Neither the Code nor the Rules prescribe any method for estimating a claim, and it is
> therefore committed to the reasonable discretion of the court . . . which should
> employ whatever method is best suited to the circumstances of the case. . . . The
> estimation of [the creditor's] claim for voting purposes does not entail consideration
> on the merits of all the issues in dispute respecting that claim.

*In re Ralph Lauren Womenswear, Inc*., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (emphasis

supplied and internal citations omitted); *see also Armstrong*, 292 B.R. at 696 ("There is no guidance

in the Bankruptcy Code for courts as to how to determine whether to permit the temporary allowance

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  of a claim; it is left to the court's discretion.  The Bankruptcy Code also offers no guidance on which

2  party has the burden of proof in a Rule 3018(a) estimation proceeding.  Some courts have placed it

3  on the claimant while other courts have placed it on the objector."); *In re Marin Town Center*, 142

4  B.R. 374, 379 (N.D. Cal. 1992) ("Pursuant to Rule 3018(a), the bankruptcy court has discretionary

5  power to permit a disputed claim to be voted.").

6      Here, the Lehman Creditors believe that their claims should be temporarily allowed because

7  (a) there is insufficient time to conclusively determine the objections prior to the start of the plan

8  confirmation hearings, (b) the objections are premised on certain questionable legal and factual

9  premises, (c) other than the face amount of the claims reflecting money borrowed by certain

10  Debtors, there is no principled basis to selectively discount the claims for voting purposes,

11  (d) having undisputedly advanced enormous sums to these Debtors, disenfranchising the Lehman

12  Creditors would be unfair, and (e) under recent Ninth Circuit authority, the Court must nonetheless

13  assess the feasibility of the SunCal Plans in light of the possible allowance of the Lehman Claims in

14  full.   The temporary allowance of the claims in the same amount for voting purposes is entirely

15  consistent with this feasibility evaluation.

16  **1.**    **There Is Insufficient Time To Resolve The Objections To**
    **The Lehman Claims Prior To The Confirmation Hearing**

17      The next status conference on the Claim Objection and 502(d) Motion is set for November

18  15, 2011 (three weeks after confirmation).  As provided in *Armstrong*, there is both (i) insufficient

19  time to adjudicate these matters prior to confirmation and (ii) a full hearing on the objections would

20  delay the administration of the cases.

21      The SunCal Objectors' prosecution of the Claim Objection and 502(d) Motion is still in its

22  early stages.  While limited discovery has occurred with respect to those matters that overlap with

23  confirmation issues, a fair amount of discovery remains outstanding.  As with the confirmation

24  process, the Lehman Creditors expect that discovery with respect to the Claim Objection and 502(d)

25  Motion will involve numerous documents and multiple depositions.  In this regard, it is unlikely that

26  discovery will be completed before the end of the year since all parties are currently focused almost

27  exclusively on the confirmation process.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    In any event, the Lehman Creditors believe that the Court's adjudication of these matters

2    could easily extend into next year.  If the Lehman Creditors are not permitted to vote, they could be

3    bound by the terms of the SunCal Plans solely because there is not sufficient time to adjudicate their

4    claims prior to the voting deadline.  By not having the opportunity to cast their votes, the Lehman

5    Creditors would be disenfranchised when creditor participation in the confirmation process is the

6    cornerstone of the plan formation.  Thus, for the reasons stated in *Armstrong*, it is necessary to

7    temporarily allow the Lehman Claims.

8    **2.    The Objections Are Questionable**

9              **a.    The Claims and Damages Alleged in the
                              Claim Objection and 502(d) Motion Are Speculative**

10

11    The Lehman Creditors believe that they will prevail on the Claim Objection and 502(d)

12    Motion, as supported by the legal and factual information set forth in Article IV of the Confirmation

13    Brief.  Thus, for those reasons, and the arguments made herein, the Lehman Creditors believe that

14    the Court should provide very little weight, if any, to the Claim Objection and 502(d) Motion when

15    determining the proper amount of the Lehman Claims for voting purposes.

16              **b.    The 502(d) Objection Does Not Nullify the Lehman Claims**

17    The 502(d) Motion does not stand as an obstacle to the temporary allowance of the Lehman

18    Claims under Bankruptcy Rule 3018.  Putting aside the legal standard for invoking relief under

19    Section 502(d) (*i.e.*, a judicial determination on the merits of the avoidance action, or merely a *prima*

20    *facie* showing that a transfer is avoidable), there is no substantive difference (as far as voting is

21    concerned) between an objection to the allowance of a claim under section 502(b), or the

22    disallowance of a claim under section 502(d) – under either scenario, the subject claim is no longer

23    "deemed allowed" for purposes of voting under section 1126.  Hence, "notwithstanding objection,"

24    Bankruptcy Rule 3018 intervenes to restore a creditor's voting rights in an amount deemed "proper"

25    by the bankruptcy court.

26    As the Court is aware, the parties strenuously disagree over the threshold showing that is

27    required to disallow a claim under section 502(d).  The Lehman Creditors believe that the express

28    language of the statute and Ninth Circuit law each require that a party must first be determined to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    "be liable" before the disallowance penalty may be imposed for nonpayment.  The language of

2    section 502(d) is worded in the present tense and requires that an entity or transferee "*is* liable" for

3    the payment or turnover of property.  Clearly, to "be liable" suggests a prior adjudication by the

4    court.  The decision of the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit")

5    in *America West Airlines* is consistent with this approach.  There, the Ninth Circuit concluded that

6    the subject lien "was not enforceable against a bona fide purchaser at the time America West's

7    bankruptcy case began; therefore, we hold that it was avoidable under § 545(2)."  *In re America*

8    *West Airlines, Inc.*, 217 F.3d 1161, 1164 (9th Cir. 2000) (emphasis added).  A similar final

9    determination was made by the lower bankruptcy court at the time of its initial, underlying ruling,

10    before the disallowance under section 502(d) was invoke.

11        Other courts have also concluded that the actual adjudication of the avoidance status of the

12    creditor is ultimately necessary before a bankruptcy court may disallow the claim.  *See, e.g., In re*

13    *Southern Air Transport, Inc.*, 294 B.R. 293, 295 (Bankr. S.D. Ohio 2003) (holding that "that the

14    preference matter must be adjudicated prior to the Court determining if the claim can be allowed or

15    disallowed" under section 502(d)).  The United States Supreme Court has also held that that "the

16    claim can neither be allowed nor disallowed until the preference matter is adjudicated."  *Katchen v.*

17    *Landy*, 382 U.S. 323, 330 (1966) (holding in the context of section 502(d)'s predecessor (*i.e.*, section

18    57(g) under the former Bankruptcy Act).  If section 502(d) did not require a full adjudication of the

19    merits, debtors could object, fail to prosecute the claim, confirm a plan, and then dismiss or lose the

20    underlying avoidance action on the merits.

21        The SunCal Objectors, however, take the position that a cursory determination of the

22    sufficiency of the allegations, not a ruling of present liability, is all that is required to trigger relief

23    under section 502(d).  Regardless of the standard for ultimate disallowance under section 502(d), it

24    is clear that a section 502(d) objection does not preclude temporary allowance for voting under

25    Bankruptcy Rule 3018.

26        Moreover, the SunCal Plan Proponents appear to acknowledge that a claim subject to a

27    section 502(d) objection is placed in a "temporary" status pending final adjudication of the

28    underlying merits of the avoidance claims, stating that the target claims are "at least temporarily

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   disallowed in order to preserve the underlying dispute." *See Omnibus Reply* [Docket No.2172], at

2   pp. 3, 13.  Just as this "temporary" status serves a bankruptcy policy of equality of distribution (by

3   suspending payment on a claim until the payment of judgments obtained by the trustee), the

4   temporary allowance of claims for voting purposes also serves an equally important policy of

5   preventing creditor disenfranchisement through strategic claim objections or when confirmation

6   precedes the reconciliation of a claim, as the case is here.  The temporary allowance of the Lehman

7   Claims, thus, is not inconsistent with either the express language nor the policy behind section

8   502(d).

9   **3.      For Purposes of Voting, the Lehman Claims**
    **Should Be Temporarily Allowed at Face**

10          The SunCal Objectors have asserted hypothetical damages against the Lehman Creditors in

11  the approximate amount of $100 million.  As noted, the Lehman Creditors believe that the evidence

12  will demonstrate that the maximum amount of alleged damages (even if liability could be

13  established), will be far less, if any.  Even in the maximum amount alleged (*i.e.*, approximately $100

14  million), however, the potential damages identified by the SunCal Objectors represents

15  approximately 2.7% of the entire Lehman Claims and only 3.1% of the unsecured deficiency portion

16  of the Lehman Claims.  Moreover, absent a foundation for allocating selected damage assumptions

17  against particular Debtors, there would be no principled basis for selecting one Lehman Claim

18  instead of another for recoupment (again, assuming the doctrine even applies under the facts

19  presented).

20          Under these circumstances, the appropriate baseline for temporary allowance should be the

21  face amount of the Lehman Claims, as set forth in the ballots, which comport with the values in their

22  filed proofs of claim.   Here, the quantification of damages is speculative and the allocation

23  methodology is absent—accordingly, Bankruptcy Rule 3018 entitles the Lehman Creditors to vote

24  their claims at the face amount.  There is no "proper" nor rational basis to reduce the claims based on

25  damages that are to be established by the SunCal Objectors and determined by the Court at a later

26  date and, (at best) only a very small percentage of the total claims asserted by the Lehman Creditors.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**4.    The Temporary Allowance of the Lehman Claims at
Face Value Comports with the Court's Feasibility Analysis**

The temporary allowance of the Lehman Claims at their filed amount is also consistent with

recent controlling law that requires a bankruptcy court to assess the feasibility of a plan *as if* a

contingent, unliquidated or disputed claim might subsequently be allowed.  Since the Court must

evaluate the feasibility of the SunCal Plans by considering the likelihood that the Lehman Claims

will be allowed <u>as filed</u>, it is fairer to permit the claims to be voted <u>as filed</u> since the feasibility

analysis must take this into consideration too.

The Ninth Circuit recently held that a chapter 11 plan of reorganization is not feasible unless

it adequately accounts for the potential allowance of claims that may remain contested following

confirmation of a plan.  *In re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007); *In re Pizza of Hawaii, Inc.*,

761 F.2d 1374, 1382 (9th Cir. 1985).  A bankruptcy court must consider all claims, whether or not

such claims have been reduced to judgment, when determining whether a plan is feasible.  *Harbin*,

486 F.3d at 518.  Even claims that have been disallowed but subject to reinstatement must also be

taken into account when determining whether a plan is feasible.  *Id.*

In *Harbin*, a creditor's claim was conditionally disallowed on the basis that the state court

had entered a judgment in favor of the debtor.  *Id.* at 514.  At the time the creditor's claim was

conditionally disallowed, the bankruptcy court noted that it could be reinstated if the creditor

succeeded on appeal.  *Id.*  The bankruptcy court initially concluded that the plan was feasible

because it proposed to pay all creditors in full even though it did not take into account the potential

payment of the conditionally disallowed claim.  *Id.* at 514-15.  The Ninth Circuit reversed and held

that the bankruptcy court's approval of the plan was erroneous because the debtor could not

demonstrate the wherewithal to satisfy the claim if reinstated.  *Id.* at 518.[14]

Under the Ninth Circuit's reasoning, the Court must analyze the feasibility of a plan to

account for the possibility that a disputed creditor might ultimately prevail (whether such reversal

occurs in the bankruptcy court following a ruling on the underlying claim objection, in state court

---

[14]  Similarly in *Pizza of Hawaii*, the Ninth Circuit reversed the bankruptcy court by holding that the bankruptcy court's
approval of the plan was mistaken because it did not take into account the debtor's inability to satisfy its obligations
under the plan if the objecting creditor prevailed in its trademark litigation against the debtor.  *Pizza of Hawaii*, 761
F.2d at 1382.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

litigation or in an ensuing appeal from either court). "[T]he bankruptcy court must exercise its

sound discretion in considering how such litigation might affect the feasibility of any specific plan."

*Harbin*, at 519-20.  If the Court must consider "the impact of such potential success," *id.*, at 520 n.7,

on the core feasibility of the plan, it is logical to assume that the corresponding temporary allowance

of such claims for voting purposes would be "proper."

By not permitting the Lehman Creditors to vote, the Court would be assuming that the

Lehman Claims will in fact never be allowed.  However, under *Harbin* and *Pizza of Hawaii*, a

bankruptcy court is required to take into consideration contested or disallowed claims when

assessing the feasibility of a plan.  Thus, even in the feasibility analysis, a bankruptcy court must

gauge whether disputed claims could be allowed, which supports the temporary allowance of the

Lehman Claims for voting purposes so that the Lehman Creditors have a voice during the

confirmation process.

**B.    Recoupment Reductions to the Lehman Claims
Should Reduce the Total Amount of the Claim,
Not the Secured Portion That is Based on Collateral Values**

To avoid stay violation issues, the SunCal Objectors assert that they are not asserting

affirmative claims against the Lehman Creditors, but are merely seeking to reduce the total amount

owed to the Lehman Creditors.  Yet, the SunCal Objectors seek to distort the concept of recoupment

sot that a reduction of the amount owed by a claim is converted into a collection remedy of taking a

portion of the Lehman Creditors' collateral.

The SunCal Objectors contend that any reduction to the Lehman Claims as a result of the

Claim Objection should only reduce the amount of the secured portion of the Lehman Claims.  Such

a result, however, is contrary to the relief provided by recoupment.  The essence of recoupment is to

arrive at a just determination of the net amount of two competing claims.  "Creditors' entitlements in

bankruptcy arise from the underlying substantive law creating the debtor's obligation, subject to any

qualifying or contrary Bankruptcy Code provisions.  The basic federal rule in bankruptcy is that state

law governs the substance of claims." *Raleigh v. Illinois Dep't of Rev.*, 530 U.S. 15, 15 (2000)

(internal citations omitted).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Because recoupment is purely a function of state law, the determination of the net claim

2    amount occurs prior to the bifurcation of the state law claim as a result of section 506(a) of the

3    Bankruptcy Code.  Once the **net amount** of the claim against the debtor is determined by state law,

4    federal bankruptcy law will often adjust the share of the estate that the claim is entitled to receive,

5    such as by disallowing unmatured interest for an unsecured claim.  Likewise, under section 506(a) of

6    the Bankruptcy Code, a secured claim may be bifurcated by operation of law into secured and

7    unsecured portions depending on the value of the collateral.

8    The Ninth Circuit and the Second Circuit concur that recoupment is governed by state law.

9    *Newbury*, 95 F.3d at 1398 n.9 (9th Cir. 1996); *In re Madigan*, 270 B.R. 749, 758 (B.A.P. 9th Cir.

10    2001); *New York State Elec. and Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 96 (2d Cir.

11    1997).  Here, the agreements governing the Lehman Claims, the Restructuring Agreement and the

12    alleged terms of the Proposed Settlement Agreement (that was never effectuated), have a New York

13    choice of law provision.  Accordingly, New York law governs the recoupment analysis.

14    *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 n.3 (2d Cir. 2002).

15    Under New York law, "[r]ecoupment indeed is an equitable remedy that, of itself, gives no

16    right to actual payment."  *In re Kings Terrance Nursing Home and Health Related Facility*, 184 B.R.

17    200, 202 (S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr.

18    S.D.N.Y. 1990) (holding and quoting *Wright & Miller*, recoupment is "purely defensive in character

19    and could be used only to defeat or diminish plaintiff's recovery; recoupment could not be the basis

20    for affirmative relief.").

21    If successful, the most that the SunCal Objectors would be entitled to is a reduction in the

22    overall amount owed under the Lehman Claims, which is determined by state law.  Because

23    recoupment is a state law construct, it has no application to the post-bankruptcy bifurcation of the

24    secured claims that arises only under federal law.  After state law principles are applied, bifurcation

25    under section 506(a) of the Bankruptcy Code simply enables a debtor to identify the separate classes

26    and distribution rights with respect to the collateralized portion of the claim.

27    The SunCal Objectors, however, deny that they are seeking to obtain an affirmative  recovery

28    under the Claim Objection since they have only pled a claim of recoupment.  The SunCal Objectors,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    however, admit that "[w]hen these sixteen Projects are sold, which sales shall occur on the Effective

2    Date, the SunCal Proponents will immediately 'recoup' from these sale proceeds the damages owed

3    and immediately pay any **allowed** administrative claims." *See* [Docket No. 2390] at p. 4 (emphasis

4    in original).  What the SunCal Objectors propose effectively surcharges the Lehman Creditors'

5    collateral (a form of affirmative relief resulting in the payment of money to satisfy third party

6    claims).  In the case of a true recoupment, once a net obligation is determined, any sale proceeds

7    should be remitted to the holder of such net obligation, not diverted to other creditors.

8        In support of their attempt to selectively reduce the secured portion of the Lehman Claims,

9    the SunCal Objectors cite *In re Jablonski*, 70 B.R. 381, 390 (Bankr. E.D. Pa. 1987) for the

10    proposition that recoupment may be used to selectively reduce only the secured portion of a claim

11    that was bifurcated as a result of section 506(a).  They fail, however, to fully disclose the reasons

12    supporting the court's ruling.  In *Jablonski*, the debtor raised a recoupment defense on account of the

13    lender's violation of the federal Truth in Lending Act ("TILA").  The court held that because the

14    penalties enforceable by a debtor under TILA are modest, the remedy "should be imposed in a such

15    a manner as to have the most meaningful impact on the wrongdoing creditor." *Id.*  On that narrow

16    basis, the court reduced the secured portion of the claim on account of the punitive provision of a

17    federal law.  Here, the state law recoupment defense does not have a punitive component; instead, it

18    is used to reduce the total amount owed.  Moreover, the law at issue and the facts in *Jablonski* are

19    not present in these cases.

20        The only other case cited by the SunCal Objectors, *Margott v. Gem Properties, Inc.*, 111 Cal.

21    Rptr. 1 (Cal. App. Ct. 1973), actually supports the Lehman Creditors' position to the extent that it is

22    not factually distinguishable.

23        In *Margott*, after Party A purchased property from Party B, the trial court determined that

24    Party A was defrauded by Party B and entitled to $12,600 in damages ("Party A's Unsecured

25    Claim").  *Id.* at 3.  Notwithstanding the fraud, Party A still owed Party B approximately $7,700 for

26    the purchase price of the property that was secured by a deed of trust ("Party B's Secured Claim").

27    *Id.*  During the trial, Party B purchased a separate unsecured judgment against Party A in the amount

28    of $12,500 ("Party B's Unsecured Claim").  *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Party A sought and obtained authorization to setoff the amounts it owed under Party B's

2    Secured Claim against Party A's Unsecured Claim.  *Id.*  Party B requested, instead, that the amount

3    it owed under Patty A's Unsecured Claim be setoff against Party's B's Unsecured Claim.  *Id.*  The

4    trial court granted Party's A' request and denied Party B's request.  *Id.*  On appeal, the appellate

5    court reversed and held that Party B (the same party in the position of the Lehman Creditors) had the

6    right to determine which claims to setoff, *id.* at 4, so that Party B's interest in the secured claim

7    would not be disturbed.  *Id.* at 4-5.

8          In *Margott*, the secured creditor held two, separate claims, one secured and the other

9    unsecured.  The Lehman Creditors, however, hold a single claim for each loan that for purposes of

10   classification and distribution under a plan are bifurcated into secured and unsecured portions.

11   Because each of the Lehman Creditors' claims are a single claim, any recoupment reduction would

12   have to be determined under state law prior to the bifurcation.  *Margott* was different because unlike

13   the Lehman Creditors Party B held to two, distinct claims.  The Debtors either have a breach claim

14   that is subject to setoff or a right of recoupment, both of which are calculated under state law.   If,

15   however, the Lehman Creditors' claims for each loan agreement are view as two separate claims for

16   purposes of recoupment (*i.e.*, one secured and the other unsecured), the Lehman Creditors they are in

17   the same position as Party B in *Margott* and may select which aspect of the claim to reduce so that

18   they are not required to unnecessarily give up the collateral they bargained for.

19         In any event, the Lehman Creditors believe that it is difficult to rationalize reducing a claim

20   based on an offset *after* bifurcation rather than *before*, because the effect would divert or take

21   collateral away from them (including LCPI) when recoupment does not provide that type of relief.

**V.**

**CONCLUSION**

24         The SunCal Objectors have attempted to challenge, reduce, or eliminate the Lehman Claims

25   or compromise the rights of the Lehman Creditors at every stage of these cases.  They should not be

26   allowed to summarily disenfranchise the Debtors' single largest creditor from the confirmation

27   process by the mere expedient of an unresolved claim objection.  Although each party is entitled to

28   the Court's due consideration of the merits of the objections and the underlying adversary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   proceedings, it cannot be questioned that enormous sums of money were loaned by the Lehman

2   Creditors to the Debtors.  The Lehman Creditors respectfully request that the Court exercise its

3   discretion to find that the "proper" amount of the Lehman Claims for voting purposes should be the

4   face amount of the Lehman Claims as filed.

5        Accordingly, for the reasons set forth herein, the Lehman Creditors respectfully request that

6   the Court grant the Motion and provisionally allow the Lehman Claims so that the Lehman Creditors

7   may vote to either accept or reject the SunCal Plans and the Trustee/Lehman Plans, and grant further

8   relief as is just and appropriate.

9   Dated:    September 26, 2011        PACHULSKI STANG ZIEHL & JONES LLP

10

11        /s/ John W. Lucas
          Richard M. Pachulski (CA Bar No. 90073)
12        Robert B. Orgel (CA Bar No. 101875)
          John W. Lucas (CA Bar No. 271038)
13        10100 Santa Monica Blvd., 13th Floor
          Los Angeles, CA 90067-4100
14        Telephone:  (310) 277-6910
          Facsimile:  (310) 201-0760

15        -and-

16        WEIL, GOTSHAL & MANGES LLP
          Edward Soto (admitted *pro hac vice*)
17        Alfredo R. Perez (admitted *pro hac vice*)
          767 Fifth Avenue
18        New York, NY  10153-0119
          Telephone:  (212) 310-8000
19        Facsimile:  (212) 310-8007

20        Counsel for Lehman Commercial Paper Inc.,
          Lehman ALI, Inc., Northlake Holdings, LLC and
21        OVC Holdings, LLC

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**EXHIBIT A**

**(Temporarily Allowed Lehman Claims)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Prepetition Loan | Claim Number(s) | Pending Motions; Claim Objection (CO) 502(d) Motion (502(d)) | Claim Amounts Per Loan | Plan  Debtors | Filed Claim Amounts Per Plan Debtor | Proposed Temporarily Allowed Secured Claim | Proposed Temporarily Allowed Unsecured Claim |
|---|---|---|---|---|---|---|---|
| Ritter Ranch Loan Agreement | LCPI Claim No. 65 | CO | $287,252,096 | Palmdale Hills | $287,252,096 | $94,303,184 | $192,948,912 |
| SunCal Communities I Loan Agreement | LCPI Claim No. 16 | CO/502(d) | $343,221,391 | SunCal Bickford | $343,221,391 | $29,956,500 | $313,264,891 |
| | LCPI Claim No. 7 | CO/502(d) | | SunCal Emerald | $343,221,391 | $12,003,173 | $331,218,218 |
| | LCPI Claim No. 6 | CO/502(d) | | Acton Estates | $343,221,391 | $6,800,000 | $336,421,391 |
| | LCPI Claim No. 1 | 502(d) | | SunCal I | $343,221,391 | $3,553,797 | $339,667,594 |
| | LCPI Claim No. 12 | CO/502(d) | | SunCal Summit Valley | $343,221,391 | $5,033,489 | $338,187,902 |
| SunCal Bickford 2nd Lien Loan | Lehman ALI Claim No. 17 | Uncontested | $56,494,059 | SunCal Bickford | $56,494,059 | $0 | $56,494,059 |
| Interim Loan Agreement | Lehman ALI Claim No. 9 | CO/502(d) | $23,795,012 | SCC Communities | $23,795,012 | $1,202,344 | N/A |
| | Lehman ALI Claim No. 14 | CO/502(d) | | Del Rio* | $23,795,012 | $7,307,802 | $16,489,210 |
| | Lehman ALI Claim No. 7 | CO/502(d) | | Tesoro | $23,795,012 | $1,850,071 | N/A |
| Term Loan and Revolving Line of Credit Loan Agreement | Lehman ALI Claim No. 23 | CO | $120,110,237 | SJD Partners* | $120,110,237 | $16,020,176 | $104,090,061 |
| | Lehman ALI Claim No. 2 | Uncontested | | SJD Development* | $120,110,237 | $0 | $104,090,061 |
| SunCal Oak Valley Loan Agreement | LCPI / OVC Claim No. 19 | CO | $141,630,092 | SunCal Oak Valley | $141,630,092 | $21,348,365 | $120,281,727 |
| SunCal Marblehead / SunCal Heartland Loan Agreement | LCPI / Lehman ALI Claim No. 9 | CO/502(d) | $354,325,126 | SunCal Heartland | $354,325,126 | $7,957,853 | $346,367,273 |
| | LCPI / Lehman ALI Claim No. 21 | CO/502(d) | | SunCal Marblehead | $354,325,126 | $187,853,225 | $166,471,901 |
| SunCal Northlake Loan Agreement | LCPI / Northlake Claim No. 6 | CO | $123,654,777 | SunCal Northlake | $123,654,777 | $24,526,535 | $99,128,242 |
| SunCal PSV Loan Agreement | LCPI / Lehman ALI Claim No. 12 | CO | $88,257,340 | SunCal PSV | $88,257,340 | $13,809,116 | $74,448,224 |
| Delta Coves Loan Agreement | LCPI Claim No. 21 | 502(d) | $206,023,142 | Delta Coves | $206,023,142 | $27,873,884 | $178,149,258 |
| SunCal Oak Knoll/SunCal Torrance Loan Agreement | LCPI Claim No. 12 | 502(d) | $158,141,364 | SunCal Oak Knoll | $158,141,364 | $48,502,124 | $109,639,240 |
| | LCPI Claim No. 4 | 502(d) | | SunCal Torrance | $157,870,186 | $25,150,116 | $132,720,070 |
| **TOTAL:** | | | **$1,902,904,637** | | **$3,955,685,774** | **$595,607,540** | **$3,360,078,234** |

* The unshaded data is consistent with Exhibit 2 to each of the disclosure statements for the Trustee/Lehman Plan and Lehman VD Lender Plan.  However, such Exhibit 2 does not contain amounts for Project values, Cash Collateral, Lehman Secured Claims or Lehman Deficiency Claims associated with North Orange Del Rio Land, LLC, SJD Partners, Ltd., or SJD Development Corp. because the Trustee and/or the Lehman Creditors are not proposing a plan for such Debtors.  To calculate the amounts of Lehman's secured and deficiency claims against such Debtors, for voting purposes only and without conceding the accuracy of such values, the Lehman Creditors used (i) SunCal's values for the CFD Bond Proceeds and Pac Point Project contained in Exhibit 2 of the SunCal Plan Proponents' disclosure statements and (ii) consistent with Exhibit 2 to the disclosure statements, the Cash Collateral amounts set forth in the Declaration of Payam Khodadi filed July 8, 2011.

1

**<u>EXHIBIT B</u>**

2

**(Proposed Order)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Richard M. Pachulski (CA Bar No. 90073)
Robert B. Orgel (CA Bar No. 101875)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California  90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

Edward Soto (admitted *pro hac vice*)
Alfredo R. Perez (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Counsel for Lehman Commercial Paper Inc., Lehman ALI, Inc.,
Northlake Holdings LLC and OVC Holdings LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>Palmdale Hills Property, LLC, and Its Related Debtors,<br> Jointly Administered Debtors and<br>Debtors-In-Possession. <br>_____<br>Affects:<br>☐ All Debtors<br>☒ Palmdale Hills Property, LLC<br>☐ SunCal Beaumont Heights, LLC<br>☐ SCC/Palmdale, LLC<br>☐ SunCal Johannson Ranch, LLC<br>☐ SunCal Summit Valley, LLC<br>☒ SunCal Emerald Meadows, LLC<br>☒ SunCal Bickford Ranch, LLC<br>☒ Acton Estates, LLC<br>☐ Seven Brothers, LLC<br>☒ SJD Partners, Ltd.<br>☐ SJD Development Corp.<br>☐ Kirby Estates, LLC<br>☐ SunCal Communities I, LLC<br>☐ SunCal Communities III, LLC<br>☒ SCC Communities, LLC<br>☒ North Orange Del Rio Land, LLC<br>☒ Tesoro SF, LLC<br>☒ LB-L-SunCal Oak Valley, LLC<br>☒ SunCal Heartland, LLC<br>☒ LB-L-SunCal Northlake, LLC<br>☒ SunCal Marblehead, LLC<br>☐ SunCal Century City, LLC<br>☒ SunCal PSV, LLC<br>☒ Delta Coves Venture, LLC<br>☒ SunCal Torrance, LLC<br>☒ SunCal Oak Knoll, LLC | Case No.: 8:08-bk-17206-ES<br>Jointly Administered With Case Nos.<br>8:08-bk-17209-ES; 8:08-bk-17240-ES;<br>8:08-bk-17224-ES; 8:08-bk-17242-ES;<br>8:08-bk-17225-ES; 8:08-bk-17245-ES;<br>8:08-bk-17227-ES; 8:08-bk-17246-ES;<br>8:08-bk-17230-ES; 8:08-bk-17231-ES;<br>8:08-bk-17236-ES; 8:08-bk-17248-ES;<br>8:08-bk-17249-ES; 8:08-bk-17573-ES;<br>8:08-bk-17574-ES; 8:08-bk-17575-ES;<br>8:08-bk-17404-ES; 8:08-bk-17407-ES;<br>8:08-bk-17408-ES; 8:08-bk-17409-ES;<br>8:08-bk-17458-ES; 8:08-bk-17465-ES;<br>8:08-bk-17470-ES; 8:08-bk-17472-ES;<br>and 8:08-bk-17588-ES<br><br>Chapter 11<br><br>**ORDER TEMPORARILY ALLOWING THE LEHMAN CLAIMS FOR THE LIMITED PURPOSE OF VOTING TO ACCEPT OR REJECT THE SUNCAL PLANS AND THE TRUSTEE/LEHMAN PLANS**<br><br>**Hearing:**<br>Date:    October 24, 2011<br>Time:    9:30 a.m.<br>Place:   Courtroom 5A |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Court having reviewed the *Motion of the Lehman Creditors for Temporary Allowance of*

2    *the Lehman Claims for the Limited Purpose of Voting to Accept or Reject the SunCal Plans and the*

3    *Trustee/Lehman Plans* (the "Motion")[1] [Docket No. _____] filed by the Lehman Creditors on

4    September 26, 2011; and the Court finding good cause existing therefor,

5        **IT IS HEREBY ORDERED** that:

6        1.    The Motion is hereby granted.

7        2.    Each of the applicable Lehman Claims shall be temporarily allowed for the purposes

8    of voting to accept or reject the SunCal Plans and the Trustee/Lehman Plans in the amounts set forth

9    in Exhibit A attached to the Motion.

10        3.    The temporary allowance of the Lehman Claims shall not have any dispositive effect

11    upon the actual allowance or disallowance of the Lehman Claims or distribution to the Lehman

12    Creditors on account of such claims from the Debtors' estates.

13        4.    The Court retains jurisdiction with respect to all matters  arising from or related to the

14    implementation, interpretation, and enforcement of this Order.

15

16                                ###

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.