# ANDREW WILSON DECLARATION

# EXHIBIT "E"
## [SETTLEMENT]

# IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES

1  Richard M. Pachulski (CA Bar No. 90073)
   Dean A. Ziehl (CA Bar No. 84529)
2  Robert B. Orgel (CA Bar No. 101875)
3  John W. Lucas (CA Bar No. 271038)
   PACHULSKI STANG ZIEHL & JONES LLP
4  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067-4100
5  Telephone: (310) 277-6910 / Facsimile: (310) 201-0760

6  Edward Soto (admitted *pro hac vice*)
   Alfredo R. Perez (admitted *pro hac vice*)
7  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
8  New York, NY 10153-0119
   Telephone: (212) 310-8000 / Facsimile: (212) 310-8007
9

10 Attorneys for Lehman Commercial Paper Inc., Lehman
   ALI, Inc., Northlake Holdings LLC, OVC Holdings LLC
11 and LV Pacific Point

12 William N. Lobel (CA Bar No. 93202)
   Mike D. Neue (CA Bar No. 179303)
13 THE LOBEL FIRM, LLP
   840 Newport Center Drive, Suite 750
14 Newport Beach, California 92660
15 Telephone: (949) 999-2860 / Facsimile: (949) 999-2870

16 General Insolvency Counsel for Steven M. Speier,
   the Chapter 11 Trustee for the Trustee Debtors
17

18                **UNITED STATES BANKRUPTCY COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**
19                      **SANTA ANA DIVISION**

   In re:
20 Palmdale Hills Property, LLC, and its Related     Case No.: 8:08-bk-17206-ES
   Debtors,
21                                                    Jointly Administered With Case Nos.
                    Jointly Administered Debtors      8:08-bk-17209-ES; 8:08-bk-17240-ES;
22                   and Debtors-In-Possession        8:08-bk-17224-ES; 8:08-bk-17242-ES;
                                                      8:08-bk-17225-ES; 8:08-bk-17245-ES;
23 Affects:                                           8:08-bk-17227-ES; 8:08-bk-17246-ES;
   ☐ All Debtors                                      8:08-bk-17230-ES; 8:08-bk-17231-ES;
24 ☑ Palmdale Hills Property, LLC                     8:08-bk-17236-ES; 8:08-bk-17248-ES;
   ☑ SunCal Beaumont Heights, LLC                     8:08-bk-17249-ES; 8:08-bk-17573-ES;
25 ☐ SCC/Palmdale, LLC                                8:08-bk-17574-ES; 8:08-bk-17575-ES;
   ☑ SunCal Johannson Ranch, LLC                      8:08-bk-17404-ES; 8:08-bk-17407-ES;
26 ☑ SunCal Summit Valley, LLC                        8:08-bk-17408-ES; 8:08-bk-17409-ES;
   ☐ SunCal Emerald Meadows, LLC                      8:08-bk-17458-ES; 8:08-bk-17465-ES;
27 ☑ SunCal Bickford Ranch, LLC                       8:08-bk-17470-ES; 8:08-bk-17472-ES;
28 ☑ Acton Estates, LLC                               and 8:08-bk-17588-ES

1

☑ Seven Brothers, LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☑ Kirby Estates, LLC
☑ SunCal Communities I, LLC
☑ SCC Communities LLC
☐ SunCal Communities III, LLC
☐ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC
☑ LB/L-SunCal Oak Valley, LLC
☑ SunCal Heartland, LLC
☑ LB/L-SunCal Northlake, LLC
☑ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☑ SunCal PSV, LLC
☑ Delta Coves Venture, LLC
☑ SunCal Torrance Properties, LLC
☑ SunCal Oak Knoll, LLC

Chapter 11

**DECLARATION OF ANDREW WILSON IN SUPPORT OF (I) TRUSTEE'S AND LEHMAN CREDITORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF THIRD AMENDED JOINT CHAPTER 11 PLAN FOR EIGHT TRUSTEE DEBTORS PROPOSED BY THE TRUSTEE AND SUBJECT LEHMAN CREDITORS AND (II) LEHMAN VD LENDERS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF THIRD AMENDED JOINT PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS**

**Hearing:**
Date:    October 24, 2011
Time:   9:30 a.m.
Place:   Courtroom 5A

I, ANDREW WILSON, declare and state as follows:

1.      I am employed by LAMCO, LLC, a wholly owned subsidiary of Lehman Brothers Holdings Inc. ("LBHI"). Since 2006, when I began my employment with the Lehman Global Real Estate Group, I have been personally involved in the real estate operations of LBHI and its affiliates, including Lehman ALI, Inc. ("Lehman ALI"), Lehman Commercial Paper Inc. ("LCPI"), Northlake Holdings LLC, OVC Holdings LLC, and LV Pacific Point (collectively, the "Lehman Entities"). My duties have included managing various loan positions, including the Lehman Entities' loans to the SunCal entities (the "Lehman Loans") that are debtors in these bankruptcy cases (collectively, "SunCal").

2.      I submit this declaration in support of (I) Trustee's and Lehman Creditors' Memorandum of Points and Authorities In Support of Confirmation of Third Amended Joint Chapter 11 Plan For Eight Trustee Debtors Proposed by the Trustee and Subject Lehman Creditors and (II) Lehman VD Lenders' Memorandum of Points and Authorities In Support of Confirmation of Third Amended Joint Plan For Eleven Voluntary Debtors Proposed by the Lehman VD Lenders.

3.      The matters stated herein are within my own personal knowledge, or are based on my review of records of a nature customarily generated and maintained in the ordinary course of business by persons whose duty it was to record or report transactions and events accurately and contemporaneously with the transactions or events. If called as a witness, I could and would competently testify thereto.

4.      SunCal and its affiliates managed and controlled the "Projects" (defined below) for which SunCal sought protective advances. The Lehman Entities did not manage or control SunCal or the Projects. Any contention that the Lehman Entities managed or controlled the

Projects is inaccurate. As the managers and parties in control of the Projects, during the parties' conferences, it was SunCal that would suggest the vendors and amounts for which it sought funding.

5.      In or about February 2008, SunCal began requesting that the Lehman Entities advance funds for the payment of expenses relating to the development projects on which the Lehman Entities had extended the Lehman Loans (the "Projects"). At that time, (i) SunCal had failed to repay the Lehman Loans in accordance with the terms of the Lehman Loans, (ii) each of the Lehman Loans was due and payable in full and remained outstanding and in default and, (iii) the "Events of Default" (as defined in the respective Lehman Loans) had occurred and had not been cured.

6.      Between February 2008 and May 23, 2008, upon mutual agreement between the applicable Lehman Entities and SunCal, the Lehman Entities would fund certain protective advance loans and document the payments in a "Protective Disbursement Agreement" or authorize payment from "Project Cash," as discussed below. During that period of time, the Lehman Entities funded approximately $41.5 million through Protective Disbursement Agreements and approximately $976,000 in Project Cash. A chart listing the dates and amounts funded under the Protective Disbursement Agreements is attached as Exhibit B. True and correct copies of the Protective Disbursement Agreements from February 2008 to May 23, 2008 are attached as Exhibits 1 to 21. A true and correct copy of a compilation of Project Cash funding is attached hereto as Exhibit C.

7.      On or around May 23, 2008, LBHI, Lehman ALI and various SunCal entities entered into a "Restructuring Agreement," a true and correct copy of which is attached hereto as Exhibit A (excluding its exhibits, which are voluminous). Under the Restructuring Agreement,

1  Lehman ALI agreed to make "such Urgent Payables which are approved by Lehman ALI

2  (pursuant to such invoices and other documentation substantiating the same to Lehman ALI's

3  reasonable satisfaction)."  Restructuring Agreement Section 1(h).

4

5  8.    After the Restructuring Agreement was entered into, the parties conferred

6  regularly to discuss SunCal's funding requests.  Conferences took place weekly at first, and

7  subsequently as needed.  All such conferences occurred only after the Lehman Loans went into

8  default.  The conferences were generally conducted by telephone, but were occasionally held in

9  person.  I was a participant in those conferences.

10

11  9.    The parties' conferences and activities were undertaken at arms-length, in the

12  normal course of business, without any contemplation of the SunCal bankruptcies.  The parties

13  would confer to discuss potential Urgent Payables for work that was performed before the

14  Restructuring Agreement was entered into and potential Urgent Payables for work that might be

15  performed at a future date.  To the best of my knowledge, no requests for payment of any health

16  or safety-related expenses were ever denied.

17

18

19  10.   The great majority of the work that was performed on the Projects was done before

20  the Lehman Entities became involved in the protective advance funding process.  With respect to

21  the work that was done prior to the protective advance funding process, the parties would discuss

22  SunCal's various requests to pay those aged payables and would jointly decide which requests to

23  fund.  A company named RADCO would then negotiate the funding amount on behalf of the

24  applicable Lehman Entity and SunCal and attempt to settle the aged payables with the respective

25  vendors.   The applicable Lehman Entities would place funds into a payables account that

26  RADCO used to pay SunCal's vendors.

27

28

11. With respect to potential work that would be performed after the Restructuring Agreement was entered into, the parties would discuss SunCal's proposals and jointly decide which requests to fund, and when and how they would be funded.

12. The approval for the payment of expenses came only after the parties jointly agreed. I am not aware of any instance prior to LBHI's bankruptcy filing in which SunCal complained that an expense should have been approved for payment because a Lehman Entity representative had made a promise that it would be paid, or that a payment should be made because a contractor or vendor had provided goods or services in reliance on a promise by a Lehman Entity representative that it would be paid.

13. Upon mutual agreement, the Lehman Entities would document the payments in a Protective Disbursement Agreement or authorize payment from Project Cash, as discussed below. No other Urgent Payables were approved.

14. The protective advance fundings were made by the Lehman Entities relevant to a particular Project. The applicable Lehman Entities and SunCal entered into at least 134 Protective Disbursement Agreements. In connection with the Projects included in the Restructuring Agreement (among other Projects), the Lehman Entities funded approximately $21.5 million in protective advances between around May 23, 2008 and September 15, 2008 (the date that LBHI filed for bankruptcy protection). True and correct copies of these Protective Disbursement Agreements are attached as Exhibits 22 to 134.

15. The Protective Disbursement Agreements provided, among other things, that the parties to the Protective Disbursement Agreement "acknowledge and agree":

(i) "that prior Events of Default have occurred and are continuing under the Loan Documents, and that the Loan has been and remains accelerated and/or matured and is due and payable in full";

(ii) "that the Lenders are not under any obligation to make the Protective Disbursement or any future protective disbursement or Protective Advance";

(iii) "that the making of the Protective Disbursement is not and shall not be construed as a waiver of any defaults or Events of Default which heretofore have occurred and continue to exist under the Loan Documents";

(iv) "that the Loan Documents to which each of the Loan Parties is a party constitute the valid and legally binding obligations of such Loan Parties, enforceable against such Loan Parties in accordance with their respective terms";

(v) "that interest at the Default Rate is accruing on all amounts currently outstanding under the Loan Documents and shall accrue on the Protective Disbursement from and after the disbursement thereof by Agent";

(vi) "that the Protective Disbursement shall be secured by the Deed of Trust and each of the other Loan Documents";

(vii) "that the Loan Parties have no defenses, set-offs or claims under the Loan Documents, and that the Loan Parties hereby waive and release any and all such defenses, set-offs or claims, if any, under the Loan and the Loan Documents";

(viii) "that the Loan Parties hereby release Agent and each Lender, and any predecessor in interest to Agent and each Lender, from any and all claims, counterclaims, actions, set-offs, and causes of action of any kind or nature whatsoever in any manner relating to the Loan, the Loan Documents, or the Project"; and

(ix) "that funds used to make the Protective Disbursement were derived from the Lenders' own funds which have not been applied to reduce the Loan, and that as requested by the Loan Parties, the Protective Disbursement will not be applied to reduce the Loan, but shall be used by Borrower to pay the Project Expenses."

16.    Through the date that LBHI filed for bankruptcy protection, the Lehman Entities made protective advances to SunCal for approximately 99% of the Urgent Payables that were approved. SunCal has failed to repay the Protective Disbursement Agreements. Any contention that the Lehman Entities breached the Restructuring Agreement by failing to fund Urgent Payables is inaccurate. If SunCal chose to authorize additional work outside of the agreed upon

Urgent Payables, it was not done at the Lehman Entities' request or pursuant to the Lehman Entities' approval. Any contention to the contrary is inaccurate.

17.     Protective Disbursement Agreements were used where there was not sufficient asset level cash available to pay a particular expense. If there was sufficient Project Cash — cash collateral of a Lehman Entity that was held in a Project's bank account — a Lehman Entity in a particular Project and SunCal would in some instances agree to use Project Cash to pay a vendor. Approximately $2.2 million in Project Cash was used to fund vendor payables between May 23, 2008 and LBHI's bankruptcy filing.

18.     Finally, on or around June 2008, LCPI released approximately $4.2 million into the Elizabeth Lake Road escrow account in connection with the Ritter Ranch Project. LCPI and SunCal would agree on the release of funds from the escrow account to pay vendors in connection with the Elizabeth Lake Road work. A true and correct copy of the Elizabeth Lake Road escrow account funding is attached as Exhibit D.

19.     The loans from the applicable Lehman Entities to SunCal were subject to being "immediately due and payable in full" by SunCal. Restructuring Agreement Section 1(j). SunCal has failed to repay the loans.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of September, 2011 in New York, New York.

Andrew Wilson

# Exhibit A

## AGREEMENT

THIS AGREEMENT (this "Agreement"), dated as of May 23, 2008 (the "Effective Date, is made by and among (i) LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("LBHI"), (ii) LEHMAN ALI, INC., a Delaware corporation ("Lehman ALI"), (iii) the Borrowers (as defined on Annex 1 hereto), (iv) the Grantors (as defined on Annex 1 hereto), (v) SCC ACQUISITIONS, INC., a California corporation ("SCC"), (vi) SCC ACQUISITIONS, LLC, a Delaware limited liability company, (vii) the Guarantors (as defined on Annex 1 hereto), (viii) the Pledgors (as defined on Annex 1 hereto), (ix) the SunCal Equity Partners (as defined on Annex 1 hereto), (x) the Lehman Equity Partners (as defined on Annex 1 hereto), (xi) SUNCAL COMMUNITIES II, LLC, a Delaware limited liability company, (xii) BRUCE ELIEFF, and (xiii) SUNCAL MANAGEMENT, LLC, a Delaware limited liability company.  Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Settlement Agreement (as hereinafter defined).

## WITNESSETH

WHEREAS, SCC and LBHI executed and delivered that certain Omnibus Restructuring Summary of Terms (the "Term Sheet"), a copy of which is attached hereto as Exhibit A, which Term Sheet is expressly stated to be non-binding on all parties, reflecting the terms and conditions under which the parties hereto (the "Parties") and certain of their respective affiliates would enter into certain restructuring transactions relating to various loans and joint ventures to which the Parties and certain of their respective affiliates are parties; and

WHEREAS, since the execution and delivery of the Term Sheet, the Parties have negotiated and agreed upon (a) the form of the Settlement Agreement to be executed and delivered at the closing of the restructuring transactions contemplated in the Term Sheet, which form is attached hereto as Exhibit B (the "Settlement Agreement"), and (b) the forms of various other Settlement Documents to be executed and delivered contemporaneously with the execution and delivery of the Settlement Agreement, each of which is attached as an exhibit to the Settlement Agreement (collectively, the "Documented Additional Settlement Documents");

WHEREAS, this Agreement is being entered into for the purpose of setting forth certain agreements of the Parties.

NOW, THEREFORE, in consideration of the premises, the mutual agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which hereby is acknowledged, the Parties agree as set forth below.

Section 1.      **Obligation to Execute the Settlement Documents.**

(a)      Each of Parties acknowledges and agrees that, provided that a Termination Event (as hereinafter defined) has not occurred and subject to the terms of Sections 2, 3 and 4 hereof, not later than three (3) Business Days following the satisfaction of all of the

Closing Conditions (as hereinafter defined) (such date being referred to herein as the "Closing Date"), each of the Parties will execute, deliver and enter into and will cause the other SunCal Parties and Lehman Parties, respectively, and any other Affiliates thereof, as applicable, to execute, deliver and enter into, the Settlement Agreement, the Documented Additional Settlement Documents and all other documents contemplated by the Settlement Agreement or any of the Documented Additional Settlement Documents to be entered into and/or delivered in connection with the Settlement Transactions (including, without limitation, the New Interim Loan Documents) or as the Parties may mutually agree are necessary to implement the terms of the Settlement Agreement or any of the Documented Additional Settlement Documents (collectively, the "Undocumented Additional Settlement Documents" and, together with the Settlement Agreement and the Documented Additional Settlement Documents, the "Settlement Documents"). Upon consummation of the Settlement Transactions on the Closing Date, this Agreement shall be deemed to be terminated and of no further force or effect except for those provisions which are expressly stated to survive the consummation of the Settlement Transactions or the termination of this Agreement.

(b)     Unless this Agreement shall have been terminated pursuant to the terms hereof, the obligations of the Parties to execute and deliver (or to have their Affiliates execute and deliver) the Settlement Agreement and the other Settlement Documents shall be unconditional and irrevocable provided that the following conditions are satisfied (collectively, the "Closing Conditions"):

(i)     Each of the representations and warranties of the Parties and any other parties set forth in the Settlement Agreement and each of the other Settlement Documents shall be true and correct as of the Closing Date in all material respects;

(ii)    All consents and approvals of governmental authorities and parties to any agreements to which the SunCal Parties and Lehman Parties, as applicable, are parties or to which they may be bound that are required to be obtained with respect to or as a result of any of the Settlement Transactions including, without limitation, consents under any Development Agreement, or otherwise with respect to any Development Right, with respect to the Conveyance Transactions, shall have been obtained on terms reasonably satisfactory to the Parties;

(iii)   The Parties shall have negotiated and agreed upon the form of each of the Undocumented Additional Settlement Documents, each of which shall be in form and substance reasonably satisfactory to the Parties, and shall have further agreed upon any other schedules, exhibits and annexes to the Settlement Agreement and/or any of the other Settlement Documents which have not been agreed upon as of the Effective Date (the "Outstanding Attachments"); provided that (i) each of the Parties agrees to negotiate the terms and conditions of the Undocumented Additional Settlement Documents and the final form

of any Outstanding Attachments in good faith, and (ii) to the extent that a term or condition is not specifically set forth in or contemplated by the Settlement Agreement or any of the Documented Additional Settlement Documents, the Parties agree that they will act in a commercially reasonable manner in approving customary terms and conditions for transactions of this type (in the context of the totality of the Settlement Documents, with such modifications as may be necessary to take into account the specific circumstances of the Settlement Transactions); notwithstanding the foregoing or anything herein to the contrary, the parties acknowledge that Schedule 14 and Schedule 17 of the Settlement Agreement have been appended to the Settlement Agreement in draft form only and that each of such schedules shall be subject to further modification as follows:  (1) Schedule 14 shall be modified and updated as may be reasonably agreed upon by the parties, and (2) Schedule 17 shall be modified to include such level of detail and specificity regarding the costs, budgets and scope of work as may be required and approved by the Lehman Parties in their sole and absolute discretion.

(iv)    as to those Parties which are Lehman Parties only, (a) there shall have been no material adverse change in title to the Conveyance Properties from the condition of title reflected in various title reports received by the Lehman Parties as of the Effective Date other than changes reflecting the filing of additional mechanics' liens, stop notices or other matters resulting from the non-payment of the Vendor Obligations, and (b) the Title Insurer shall be prepared to issue the Title Policies as contemplated under the terms of the Settlement Agreement;

(v)    as to those Parties which are Lehman Parties only, there shall have occurred no material adverse change in (1) the organizational status of any of the Borrower Parties or other SunCal Parties, or (2) the physical or environmental condition of any of the Properties; and

(vi)    no governmental authority or court of competent jurisdiction shall have issued an order, decree or ruling or taken any other action materially restraining, enjoining or otherwise prohibiting any of the Settlement Transactions or any of the other transactions contemplated by the other Settlement Documents, it being agreed that the Parties shall reasonably cooperate with one another to contest and/or appeal any such order, decree, ruling or other action in good faith.

(c)    Upon satisfaction of the Closing Conditions, the Parties shall proceed to Closing but the obligation of the Parties to consummate the Settlement Transactions on the Closing Date shall be conditioned upon the satisfaction of all conditions precedent and the satisfaction and performance of and/or compliance with all requirements, covenants, conditions, obligations and undertakings set forth in the Settlement Agreement and each of

the other Settlement Documents and the delivery of such opinions, closing certificates, and other deliverables as contemplated in the Settlement Documents and/or as reflected in the preliminary closing checklist attached hereto as Exhibit C.

(d)     This Agreement may be terminated as follows (each a "Termination Event"):

(i)     by SCC or LBHI, if the Closing Conditions shall not have been satisfied on or prior to August 31, 2008; provided that neither SCC nor LBHI, as the case may be, shall be permitted to terminate this Agreement if the failure of any of the Closing Conditions shall have been due to such Party's (or such Party's Affiliate's) willful misconduct, gross negligence or failure to pursue the satisfaction the Closing Conditions in good faith;

(ii)    by LBHI, if an Interference Event shall have occurred (other than those events described in clauses (v), (vi) or (vii) of the definition thereof which events shall not be relevant prior to the consummation of the Settlement Transactions);

(iii)   by LBHI, if an Involuntary Bankruptcy Filing shall have occurred; or

(iv)    by the mutual agreement of SCC and LBHI.

(e)     Upon the termination of this Agreement, any obligations of the Parties hereunder shall terminate and each of the Parties shall have no further obligation to one another pursuant to this Agreement, notwithstanding anything to the contrary set forth herein, provided that, Sections 1(j), 1(k), 7, 8, 11 and 15 hereof shall survive the termination hereof and each Party shall remain liable for any breach by it of this Agreement.

(f)     From the date of this Agreement through the consummation of the Settlement Transactions, the SunCal Parties shall cause (i) the Properties to be operated in the ordinary course of business, consistent with past practice during the period from November 1, 2007 through the Effective Date, and (ii) the Borrowers, Grantors and Pledgors to not make any distributions to their members or partners, to the Guarantors or to any Affiliates of any Borrower Party or to Elieff.

(g)     Upon consummation of the Settlement Transactions with respect to a Property, any amounts actually paid by the Bond Obligors to any of the Bond Issuers in respect of any Approved Bond Claims with respect to such Property from the Effective Date through the Closing Date shall be reimbursed to such Bond Obligors at Closing by the applicable Venture Grantee(s) and/or Pac Point Lender, as applicable, if and to the extent that the same would otherwise have been payable to such Bond Obligors pursuant to Section 16 of the Settlement Agreement if the Settlement Agreement had been executed and delivered on the Effective Date (the aggregate amount so reimbursed at Closing being referred to as the "Bond Claim Reimbursement Amount"); provided, however, that the Bond Claim Reimbursement Amount shall be included for purposes of calculating the maximum aggregate amount of the Assumed Bond Obligations set forth in Section 16.c. of the Settlement Agreement.

(h)    During the term of this Agreement, Lehman ALI, as the Lender with respect to each Loan, and the respective Borrowers shall continue to have periodic meetings (by teleconference) to discuss and determine, with respect to each Property, the nature of the work and other services (including, without limitation, litigation defense costs) that need to be performed or provided with respect to each Property and any accounts payable arising from work previously authorized by Lehman ALI which need to be paid with respect to each Property (collectively, the "Urgent Payables") and Lehman ALI hereby agrees to make protective advances under the applicable Loan(s) to reimburse or otherwise provide funds to the applicable Borrowers for the payment of any such Urgent Payables which are approved by Lehman ALI (pursuant to such invoices and other documentation substantiating the same to Lehman ALI's reasonable satisfaction) and each of the relevant Borrower Parties hereby requests and agrees to the making of such protective advances and acknowledges and agrees that such protective advances shall be secured by the applicable Deed(s) of Trust and other Loan Documents notwithstanding anything to the contrary contained therein.  Further, the Borrower Parties agree to cooperate with Lehman ALI and/or its designee (which may be a third party retained by Lehman ALI on its behalf and at its sole expense) and provide Lehman ALI and/or its designee an opportunity to discuss with the Borrower Parties the Urgent Payables and/or any other accounts payable or other obligations relating to any of the Properties and to participate with the Borrower Parties in the negotiation and settlement of any such payables or obligations and, to the extent agreed by the parties, to allow Lehman ALI (or its designee) to conduct or manage the negotiation of such payables or obligations.

(i)    On the Effective Date and on the first day of each calendar month thereafter until the termination of this Agreement, Lehman ALI, as the Lender with respect to each Loan, shall pay to the Manager, in advance, a management fee for the management of each Conveyance Property equal to, for each Conveyance Property, the applicable monthly management fee set forth on **Exhibit D** attached hereto (or prorated portion thereof with respect to the first period, which shall be from May 15, 2008 through May 31, 2008, and for the last period, which shall be from the first day of the month in which this Agreement is terminated through the day immediately preceding the date of such termination) (collectively, the "Monthly Management Fees").  Lehman ALI shall have the right to cease payment of any further Monthly Management Fees as to any or all of the Conveyance Properties at any time prior to the termination of this Agreement upon thirty (30) days' written notice to the Manager, and upon the giving of any such written notice by Lehman ALI to the Manager, this Section 1(i) shall terminate and be of no further force or effect with respect to such Conveyance Property and Manager shall immediately refund to Lehman ALI any Management Fees paid by Lehman ALI to the Manager with respect to such Conveyance Property for the period following the termination of this Section 1(i), failing which Lehman ALI shall have the right to offset any such refund obligation against any other Management Fees payable to Manager under this Section 1(i).

(j)    Nothing contained in this Agreement shall limit, restrict, alter, modify, waive, prejudice or otherwise affect any of the obligations, liabilities, rights or remedies of any of the Borrower Parties, Elieff, or any of the Lenders under the Loan Documents and upon termination of this Agreement for any reason, such parties rights and remedies shall remain unaffected.  Further, nothing contained herein shall restrict, limit or prevent any of the Lenders from: (A) taking any action that any such Lender may take under the applicable

Loan Documents or at law or in equity necessary or appropriate in such Lender's sole discretion to preserve, protect or defend any of the collateral described in the applicable Loan Documents including, without limitation (i) defending, intervening in or filing of any legal proceedings relating to any such collateral, (ii) the sending of any notices to any Person concerning the existence of security interests or liens in favor of such Lender relating to such collateral, or (iii) otherwise preserving any of such Lender's rights, remedies or positions; or (B) filing a statutory notice of default in accordance with California Civil Code Section 2924.3 at any time in such Lender's sole and absolute discretion and setting a sale date with respect to the sale of such collateral and continuing such foreclosure proceedings to conclusion, as described in Section 1(k) hereof. The Borrower Parties acknowledge and agree that the Lenders, or any of them, may, during the term of this Agreement accept any partial payments of the Loans tendered by the Borrowers or any of the other Borrower Parties or any other party or as a result of the application of any funds or deposits under the control of the Lenders. Furthermore, the Borrower Parties acknowledge that the acceptance of any such partial payments by any of the Lenders shall not (i) constitute any agreement or commitment by such Lender to amend, modify or extend the term of the applicable Loan(s) or any of the applicable Loan Documents, (ii) constitute any agreement by such Lender to continue to accept such partial payments, (iii) constitute any course of conduct by such Lender, (iv) extend the maturity date of or otherwise reinstate the applicable Loan(s) or cure any default or Event of Default (as such term is defined in the applicable Loan Agreement) under any of the applicable Loan Documents, (v) constitute any agreement or commitment by such Lender to forbear from the exercise of any of its rights or remedies, or (vi) otherwise waive or alter in any way any of such Lender's rights or remedies pursuant to the applicable Loan Documents, applicable law or otherwise. Additionally, the Borrower Parties further acknowledge and agree that this Agreement is not intended to be and shall not be deemed or construed to be a reinstatement, novation, release, modification, amendment or waiver of any of the Loans or the Loan Documents or any provision thereof, and shall not be deemed to extend the maturity date of any of the Loans or cure any other defaults or Events of Default (as defined under the respective Loan Agreements) under the Loan Documents or to cure or reinstate any of the Loans or the Loan Documents, it being the intention of the Parties that the Loans are and shall remain in default and immediately due and payable in full notwithstanding the agreement of the Parties to enter into the Settlement Transactions or anything to the contrary in this Agreement. Lenders reserve all of their respective rights and remedies in connection with any maturity of the Loans, defaults or Events of Default under the Loan Documents, at law or in equity.

(k)    Notwithstanding anything to the contrary contained herein, each Lender shall have the right, pursuant to the applicable Loan Documents, at law or in equity, at any time and in its sole and absolute discretion, to initiate foreclosure proceedings (judicial or non-judicial) with respect to the applicable Property(ies) and/or other collateral securing the applicable Loan(s) (including, without limitation, the right to a file statutory notice of default and to set a sale date with respect to the sale of such Property(ies) and/or other collateral) and continue such foreclosure proceedings to conclusion. If any such foreclosure proceedings result in the acquisition of title to any of the Properties (or equity interests in the entities which, as of the Effective Date, own, directly or indirectly, any of the Properties) by a Lender or any of its Affiliates, prior to the consummation of the Settlement Transactions, then the Parties shall, in connection with the consummation of the Settlement Transactions,

cooperate and take all steps necessary to effectuate the provisions of the penultimate sentence of Section 12.a. of the Settlement Agreement with respect to any such foreclosure. If any such foreclosure proceedings result in the acquisition of title to any of the Properties (or equity interests in the entities which, as of the Effective Date, own, directly or indirectly, any of the Properties) by a third party unrelated to the foreclosing Lender, prior to the consummation of the Settlement Transactions, then the Parties shall, in connection with the consummation of the Settlement Transactions, cooperate and take all steps necessary to effectuate the provisions of the last sentence of Section 12.a. of the Settlement Agreement with respect to any such foreclosure.

(l)    Prior to the Closing Date, unless otherwise elected in writing by Lehman ALI, Lehman ALI shall have the right to cause the Borrower Parties to terminate any or all of the infrastructure license agreements relating to or otherwise affecting various of the Properties (all of which agreements constitute Affiliate Agreements) as of the Closing Date and the termination of any such agreements shall be a condition precedent to the Closing.

(m)    The Settlement Agreement contemplates that each of the Mortgage Loans will be modified at Closing, pursuant to the Loan Modification Documents, to provide that all outstanding principal under the Mortgage Loans will accrue interest, from and after the Closing Date, at a rate of 15% per annum, compounded monthly. At Lehman ALI's sole election prior to the Closing, the Parties will cooperate in all commercially reasonable respects to revise the structure contemplated by the Settlement Agreement and eliminate the modifications contemplated to be made to the Mortgage Loans and instead provide for the same economic benefits to the Lehman Master Venture Member that were to be provided to the Lenders under the Mortgage Loans; provided, however, that such changes shall impose no economic detriment on any party. Specifically, the documents would be modified to provide that an amount equal to the aggregate amount of all indebtedness outstanding under the Mortgage Loan as of the Closing Date would accrue a return equal to 15% per annum, compounded monthly, and such indebtedness together with the return thereon would be paid to the Lehman Master Venture Member prior to any distributions to the SunCal Master Venture Member.

Section 2.    **Required Consents.**

(a)    Notwithstanding anything to the contrary contained herein or in the Settlement Agreement or any of the other Settlement Documents but subject to Section 3 and Section 4 hereof, if (i) all Closing Conditions have been satisfied except that the consents required to be obtained pursuant to Section 1(b)(ii) hereof (including, without limitation, consents under any Development Agreement or otherwise with respect to any Development Rights) (collectively, the "Required Consents") have not been obtained with respect to all of the Conveyance Properties, (ii) all Required Consents have been obtained as to at least eight (8) of such Conveyance Properties and as to the Pacific Point Property, and (iii) the Required Consents shall have been obtained for all Conveyance Properties which are within the same group of Related Conveyance Properties (as defined on Annex 2 attached hereto) (such that the consummation of the Closing as to all Related Conveyance Properties shall occur simultaneously), then the Parties shall proceed to consummate the Closing (the "Initial Closing") as to those Conveyance Properties for which the Required

Consents have been obtained and as to the Pacific Point Property (the Conveyance Properties for which the Required Consents have been obtained being collectively referred to as the "Initial Conveyance Properties" and the Conveyance Properties for which the Required Consents have not been obtained being collectively referred to as the "Subsequent Conveyance Properties") and each Subsequent Conveyance Property shall continue to be subject to the terms of this Agreement. After the Initial Closing, the Parties shall use commercially reasonable efforts to obtain all Required Consents with respect to each of the Subsequent Conveyance Properties and, upon obtaining all Required Consents with respect to any Subsequent Conveyance Property, the Parties shall proceed to consummate the Closing with respect to the conveyance of such Subsequent Conveyance Property pursuant to the terms of the Settlement Agreement within three (3) Business Days following the date upon which all Required Consents with respect to such Subsequent Conveyance Property have been obtained (the date on which the Closing of a Subsequent Conveyance Property occurs being referred to as a "Subsequent Closing Date"). In connection with the Initial Closing, the Parties shall modify the form of Settlement Agreement and any other Settlement Documents, as may be necessary, to provide for the subsequent Closing of each Subsequent Conveyance Property on the applicable Subsequent Closing Date. Upon termination of this Agreement for any reason (including pursuant to an election by SCC or LBHI under Section 1(d)(i) hereof), the applicable Lender as to any Subsequent Conveyance Property the Closing of which has not then occurred, shall have the right, in its sole and absolute discretion, to either (x) terminate this Agreement as to such Subsequent Conveyance Property, whereupon all references to such Subsequent Conveyance Property shall automatically be deemed to be deleted from the Settlement Agreement and all other Settlement Documents without further action by any party and this Agreement shall no longer be applicable to or otherwise affect or govern the Parties rights with respect to such Subsequent Conveyance Property except as provided in Section 1(j), or (y) proceed with a foreclosure (judicial or non-judicial or both) of the applicable Loan or Loans held by such Lender, in which event the provisions of Section 5 hereof shall apply.

(b)    Unless all Conveyance Properties shall have been conveyed to the applicable Venture Grantees on the Initial Closing Date or as of any Subsequent Closing Date, the provisions of this Section 2 shall survive the consummation of the Settlement Transactions on the Initial Closing Date and on any Subsequent Closing Date and shall further survive the termination of this Agreement at any time after the Initial Closing Date.

<u>Section 3.</u>    <u>Northlake Mezz Consents.</u>

(a)    Notwithstanding anything to the contrary contained herein or in the Settlement Agreement or any of the other Settlement Documents, if for any reason consents from the Northlake Mezz Lenders (collectively, the "Northlake Consents"), or either of them, have not been obtained as of the Initial Closing Date, then the Closing shall proceed as to all Initial Closing Properties and the Lender under the Loan Documents relating to the Northlake Property (the "Northlake Loan") shall have the right to proceed with a foreclosure (judicial or non-judicial or both) of the Northlake Loan, in which event the provisions of Section 5 hereof shall apply; provided, however, that if the Northlake Consents have been obtained but are effective as to a conveyance of the Northlake Property on a date that is after the Initial Closing Date (such date being referred to as the "Northlake Closing Date"), then,

subject to the terms of Section 2 hereof, the Closing of the Northlake Property shall be consummated on the Northlake Closing Date and the Settlement Agreement and other Settlement Documents shall be amended, as may be necessary, to reflect the Closing of the Northlake Property on such Northlake Closing Date. Nothing contained herein shall obligate or require the Borrower Parties under the Northlake Loan to take any action (including, without limitation, pursuant to or as may be required under Section 5 hereof) that would violate the terms of any agreements between such Borrower Parties and the Northlake Mezz Lenders. The Parties acknowledge that to the extent that schedules relating to the Northlake Property have not been appended to the Settlement Agreement as of the Effective Date, such schedules shall constitute Outstanding Attachments hereunder, to be agreed upon by the Parties prior to the Closing Date. Further, the Parties acknowledge that the Management Fee with respect to the Northlake Property has not been agreed upon as of the Effective Date and the Parties agree to cooperate in determining the amount of such Management Fee.

(b)    Unless the Northlake Property shall have been conveyed to the applicable Venture Grantee on the Initial Closing Date or on the Northlake Closing Date, the provisions of this Section 3 shall survive the consummation of the Settlement Transactions on the Initial Closing Date and any Subsequent Closing Date and shall further survive any termination of this Agreement at any time after the Initial Closing Date.

Section 4.    **Ritter Ranch Property**.

(a)    Notwithstanding anything to the contrary contained herein or in the Settlement Agreement or any of the other Settlement Documents, at any time prior to the Initial Closing Date, the applicable Lender (the "Ritter Ranch Lender") under the Loan Documents relating to the Ritter Ranch Property (the "Ritter Ranch Loan") shall have the right to elect to acquire title to the Ritter Ranch Property by proceeding with a foreclosure (judicial or non-judicial or both) of the Ritter Ranch Loan (the "Ritter Ranch Foreclosure Proceeding"), in which event the provisions of Section 5 hereof shall apply, in lieu of accepting a deed to the Ritter Ranch Property, as currently provided in the Settlement Agreement, and the Settlement Agreement and other Settlement Documents shall be amended, as may be necessary, to reflect the acquisition of the Ritter Ranch Property pursuant to the Ritter Ranch Foreclosure Proceeding.

(b)    Unless the Ritter Ranch Property shall have been conveyed to the applicable Venture Grantee on the Initial Closing Date, the provisions of this Section 4 shall survive the consummation of the Settlement Transactions on the Initial Closing Date and shall further survive any termination of this Agreement at any time after the Initial Closing Date if the Ritter Ranch Lender has elected to proceed with the Ritter Ranch Foreclosure Proceeding.

Section 5.    **Foreclosure Proceedings**.

(a)    In connection with the foreclosure of any Subsequent Conveyance Property, the Northlake Property or the Ritter Ranch Property (each, a "Foreclosure Property") as provided under Sections 2, 3 or 4 hereof, respectively (each, a "Foreclosure Proceeding"),

the applicable Borrower Parties (the "Applicable Borrower Parties") and other SunCal
Parties shall execute and deliver such consents, acknowledgments, waivers, stipulations and
approvals as the applicable Lender (the "Applicable Lender") may reasonably request in
connection with the commencement and expeditious prosecution of the Foreclosure
Proceeding and shall otherwise cooperate with the Applicable Lender and the purchaser at
the foreclosure sale (any such purchaser which is an Affiliate of the Applicable Lender
being referred to as the "Foreclosure Property Transferee"), to the maximum extent
permitted by law, in connection with the Foreclosure Proceeding and the sale of the
Foreclosure Property pursuant thereto and the pursuit of any other remedies by the
Applicable Lender under the applicable Loan Documents (including the appointment of a
receiver) (provided that the Applicable Borrower Parties and other SunCal Parties shall not
be required to incur any liability or unreimbursed cost unless the Applicable Lender agrees
to reimburse or indemnify the Applicable Borrower Parties and other SunCal Parties
therefor) and neither the Applicable Borrower Parties nor any other SunCal Party shall take
any action to enjoin, restrain, contest, defend, hinder or otherwise interfere with or delay the
Foreclosure Proceeding or the exercise of any rights and remedies of the Applicable Lender
ancillary thereto (including the appointment of a receiver) in any way or manner.  Further,
neither the Applicable Borrower Parties nor any other SunCal Party shall take any action,
either directly or indirectly, to oppose, impede, obstruct, hinder, enjoin, defend or otherwise
interfere with the Applicable Lender's exercise of its rights and remedies pursuant to the
applicable Loan Documents or applicable law or otherwise with respect to the Foreclosure
Property or the applicable Loan.  All of the foregoing obligations, covenants and agreements
of the Applicable Borrower Parties and the other SunCal Parties are collectively referred to
herein as the "Foreclosure Covenants."

      (b)    Each of the Additional Indemnitors, jointly and severally with respect to each
other Additional Indemnitor, as a primary obligor and not as a surety, hereby agrees to cause
the Applicable Borrower Parties and the other SunCal Parties to comply with the
Foreclosure Covenants and agrees, jointly and severally with each other Additional
Indemnitor, as a primary obligor and not as a surety, to indemnify and hold the Applicable
Lender, LBHI, any Foreclosure Property Transferee and each of their respective parents,
predecessors, subsidiaries and affiliates and the respective employees, officers, directors,
shareholders, partners, members, principals, agents, representatives, servants and counsel of
any of the foregoing, and their successors and assigns (collectively, the "Foreclosure
Property Indemnitees"), free and harmless from and against all losses, damages, liabilities ,
costs and expenses (including reasonable attorneys' fees ands costs) sustained by any of the
Foreclosure Property Indemnitees as a result of (i) a breach by any of the Applicable
Borrower Parties or any of the other SunCal Parties of, or a failure of any of the Applicable
Borrower Parties or any of the other SunCal Parties to comply with, any of the Foreclosure
Covenants, or (ii) the occurrence of any Interference Event.  Notwithstanding the foregoing,
except as provided in Section 33 of the Settlement Agreement, the Applicable Lender shall
not pursue a money judgment against any Guarantor under any Guaranty executed and
delivered in connection with the applicable Loan provided that (i) the Applicable Borrower
Parties and the other SunCal Parties are in compliance with and have not breached any of
the Foreclosure Covenants and (ii) no Interference Event shall have occurred.

(c)    At the time that the Applicable Lender makes an election to proceed with a Foreclosure Proceeding as to any Foreclosure Property, the Applicable Borrower Parties and Elieff shall execute and deliver a Release Agreement substantially in the form attached to the Settlement Agreement as Exhibit H-1, duly executed by the Applicable Borrower Parties and Elieff in favor of the Applicable Lender and LBHI and, upon completion of the Foreclosure Proceeding and acquisition of title to the Foreclosure Property by the Foreclosure Property Transferee, (i) the Applicable Borrower Parties and Elieff shall execute and deliver a second Release Agreement substantially in the form of Exhibit H-2 to the Settlement Agreement to the Applicable Lender and the Foreclosure Property Transferee, and (ii) subject to the terms of Section 33 of the Settlement Agreement and provided that the SunCal Parties have complied with the Foreclosure Covenants and have not asserted any claim against the Applicable Lender or against the Foreclosure Property, the Applicable Lender shall execute and deliver a Covenant Not to Sue substantially in the form of Exhibit I to the Settlement Agreement to and for the benefit of the Applicable Borrower Parties and Elieff with respect to the applicable Loan or Loans. If the Foreclosure Property is acquired by the Foreclosure Property Transferee, then the Applicable Lender (or its Affiliate) shall assign its interest in the Foreclosure Property Transferee to the Master Venture (free and clear of any liens or encumbrances affecting such interest) and the LB Master Venture Member shall be deemed to have made a capital contribution to the Master Venture in an amount equal to the sum of (i) the aggregate outstanding indebtedness and other amounts secured by the Applicable Lender's Deed of Trust on the Foreclosure Property as of the date of acquisition of title to the Foreclosure Property by the Foreclosure Property Transferee and (ii) the aggregate outstanding amount of any Related Mezzanine Loan. If the Applicable Lender (or its Affiliate) is not the successful bidder at the foreclosure sale but such successful bidder is a third party unrelated to the Applicable Lender, then any proceeds of such foreclosure sale which are received by any of the Applicable Borrower Parties shall be delivered by the Applicable Borrower Parties to the Master Venture for further distribution to the members thereof as provided in the Master Venture Operating Agreement. From and after the acquisition of title by the Foreclosure Property Transferee, the Foreclosure Property shall be treated as a Conveyance Property for all purposes under the Settlement Agreement.

(d)    The Parties shall cause the Settlement Agreement to be modified and amended, prior to the execution and delivery thereof on the Initial Closing Date and from time to time thereafter, as may be necessary, to provide for any Foreclosure Proceedings and to reflect the terms of this Section 5 as to any Foreclosure Property.

(e)    Unless all Conveyance Properties shall have been conveyed to the applicable Venture Grantees on the Initial Closing Date or as of the Northlake Closing Date or any Subsequent Closing Date, the provisions of this Section 5 shall survive the consummation of the Settlement Transactions on the Initial Closing Date, the Northlake Closing Date and on any Subsequent Closing Date and shall further survive any termination of this Agreement at any time after the Initial Closing Date.

Section 6.    Miscellaneous.  This Agreement, together with the attachments hereto and the documents referred to herein, contain the entire agreement among the Parties with respect to the subject matter hereof, and any other agreements shall be deemed to have

merged herewith. This Agreement is for the benefit only of the Parties and their respective
Affiliates and no third party shall have any interest herein or rights pursuant hereto. This
Agreement is not assignable by any Party to any other Person without the prior written
consent of all other Parties, which may be given or withheld in such other Party's sole
discretion. Time is of the essence with respect to each of the Parties' obligations under this
Agreement. The terms and provisions of this Agreement cannot be waived or modified
except in writing and signed by all Parties. Nothing in this Agreement, express or implied,
is intended to confer upon any Person other than the SunCal Parties any right, benefit or
remedy against any other Person other than the Lehman Parties under or by reason of this
Agreement. Nothing in this Agreement, express or implied, is intended to confer upon any
Person other than the Lehman Parties any right, benefit or remedy against any other Person
other than the SunCal Parties under or by reason of this Agreement.

Section 7.    **Confidentiality**. The terms of Section 53 of the Settlement Agreement shall
apply mutandis mutatis.

Section 8.    **Governing Law**. This Agreement shall be governed by the laws of the State
of New York without regard to the principles of conflicts of law.

Section 9.    **Further Assurances**. Each of the Parties shall, as promptly as practicable,
execute and deliver, upon reasonable request by any other Party, all such other and further
documents, agreements, certificates and other instruments in compliance with, or
accomplishment of its covenants and agreements hereunder or to make any recording, filing
or notice or obtain any consent in compliance with, or accomplishment of its covenants and
agreements hereunder, all as may be reasonably necessary or appropriate in connection
therewith.

Section 10.    **Successors and Assigns**. This Agreement shall inure to the benefit of each
of the Parties' respective successors and permitted assigns.

Section 11.    **No Fiduciary Duty**. Nothing contained in this Agreement shall establish any
fiduciary, partnership, joint venture or similar relationship between or among the Parties or
any other duty or relationship except as specifically set forth herein. The Parties have an
arms-length business relationship that does not directly or indirectly give rise to, nor does
any Party rely on, any fiduciary duty on the part of any other Party. Each Party is capable of
evaluating and understanding, and each Party understands and accepts, the terms, risks and
conditions of the transactions contemplated by this Agreement. Each Party has been advised
that the other Parties are engaged in a broad range of transactions that may involve interests
that differ from such Party's interests, including the foregoing, and that none of the Parties
has any obligation to disclose such interests and transactions to any other Party by virtue of
any fiduciary, advisory or agency relationship. The foregoing is not intended to negate or
alter any fiduciary, advisory or agency relationship which may exist between or among
various of the Parties pursuant to agreements other than this Agreement.

Section 12.    **Additional Indemnitors**. To the extent that any Additional Indemnitor is
not a Party to this Agreement as of the Effective Date, SCC and the other Borrower Parties
which are Parties hereto shall cause any such Additional Indemnitor to acknowledge and

agree to be bound by the terms of Section 5 of this Agreement and to be made a Party hereunder on and as of the Initial Closing Date.

Section 13.    **Announcements**.  Each Party agrees not to make any public announcements in relation to this Agreement without the prior approval of the other Parties.

Section 14.    **Counterpart Signatures**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

Section 15.    **Waiver of Jury Trial**.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY, IRREVOCABLY AND INTENTIONALLY FOREVER WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED THEREBY OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (VERBAL OR WRITTEN) OR ACTION OF ANY PERSON OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THIS AGREEMENT, WHETHER IN CONTRACT OR IN TORT (INCLUDING WITHOUT LIMITATION ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR ARE OTHERWISE VOID OR VOIDABLE). THIS PROVISION IS A MATERIAL INDUCEMENT TO ENTER INTO THIS AGREEMENT.

Signature Pages Follow.

[SIGNATURE PAGES TO BE PREPARED AND APPENDED TO THIS
AGREEMENT]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

LEHMAN BROTHERS HOLDINGS INC.,
a Delaware corporation

By: _____
Name: FRANCIS X. GILHOOL
Title: AUTHORIZED SIGNATORY


LEHMAN ALI INC., a Delaware corporation

By: _____
Name: FRANCIS X. GILHOOL
Title: AUTHORIZED SIGNATORY


LB INDIO LAND VENTURES LLC, a Delaware limited
liability company

By: PAMI LLC, a Delaware limited liability company
Its: Managing Member

By: _____
Name: Francis X. Gilhool
Its: Authorized Signatory


LB/LAKESIDE CAPITAL PARTNERS, LLC, a Delaware
limited liability company

By: _____
Name:
Its: Authorized Signatory


LB-DELTA MASTER IV MEMBER LLC, a Delaware limited
liability company

By: _____
Name: Francis X. Gilhool
Its: Authorized Signatory


**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

LEHMAN/Suneal – Signature Page to Restructuring Agreement (199190)

SUNCAL MARBLEHEAD HEARTLAND MASTER LLC,
a Delaware limited liability company

By:   SunCal Master JV LLC,  a Delaware limited liability
      company
ITS:   Sole Member

     By:   SCC JV Ventures LLC, a Delaware
          limited liability company
     Its:   Operating Member

         By:   _____
              Bruce V. Cook
        Its:  Secretary

SUNCAL MARBLEHEAD LLC, a Delaware limited liability
company

By:   SunCal Marblehead Heartland Master LLC, a Delaware
     limited liability company
Its:  Sole Member

     By:   SunCal Master JV LLC,  a Delaware limited
          liability company
     Its:  Sole Member

        By:   SCC JV Ventures LLC, a Delaware
           limited liability company
        Its:   Operating Member

          By:   _____
              Bruce V. Cook
         Its:   Secretary

SUNCAL HEARTLAND LLC, a Delaware limited liability
company

By:   SunCal Marblehead Heartland Master LLC, a Delaware
     limited liability company
Its:  Sole Member

     By:   SunCal Master JV LLC,  a Delaware limited
          liability company
     Its:  Sole Member

        By:   SCC JV Ventures LLC, a Delaware
           limited liability company
        Its:   Operating Member

         By:   _____
             Bruce V. Cook
        Its:   Secretary

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

LEHMAN/Suncal – Signature Page to Restructuring Agreement (199190)

LB/L-SUNCAL OAK VALLEY LLC, a Delaware limited
liability company

By:   SCC/Oak Valley LLC, a Delaware limited
       liability company
Its:   Operating Member

      By:  _____
           Bruce V. Cook
      Its:  Secretary


SJD PARTNERS, LTD., a California limited partnership

By: SJD Development Corp., a California corporation
Its: General Partner

      By:  _____
           Bruce V. Cook
      Its:  Secretary


PALMDALE HILLS PROPERTY, LLC, a Delaware limited
liability company

By:  _____
    Bruce V. Cook
Its:   Secretary


SCC/PALMDALE, LLC, a Delaware limited liability
company

By:  _____
    Bruce V. Cook
Its:   Manager


SUNCAL COMMUNITIES I, LLC, a Delaware limited
liability company

By:  _____
    Bruce V. Cook
Its:   Secretary


**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

SUNCAL COMMUNITIES III, LLC, a Delaware limited
liability company

By: _____
      Bruce V. Cook
Its:    Secretary


SUNCAL BICKFORD RANCH LLC, a Delaware limited
liability company

By: _____
      Bruce V. Cook
Its:    Secretary


ACTON ESTATES, LLC, a Delaware limited liability
company

By: _____
      Bruce V. Cook
Its:    Secretary


SUNCAL SUMMIT VALLEY LLC, a Delaware limited
liability company

By: _____
      Bruce V. Cook
Its:    Secretary


KIRBY ESTATES, LLC, a Delaware limited liability
company

By: _____
      Bruce V. Cook
Its:    Secretary


SUNCAL BEAUMONT HEIGHTS, LLC, a Delaware
limited liability company

By: _____
      Bruce V. Cook
Its:    Secretary


## [SIGNATURES CONTINUE ON FOLLOWING PAGE]

LEHMAN/Suncal – Signature Page to Restructuring Agreement (199190)

SUNCAL EMERALD MEADOWS LLC, a Delaware
limited liability company

By: _____
     Bruce V. Cook
Its:    Secretary


SUNCAL JOHANNSON RANCH LLC, a Delaware limited
liability company

By: _____
     Bruce V. Cook
Its:    Secretary


SCC ACQUISITIONS, INC., a California corporation

By: _____
     Bruce V. Cook
Its:    Secretary


SCC ACQUISITIONS, LLC, a Delaware limited liability
company

By: _____
     Bruce V. Cook
Its:    Secretary


SUNCAL MASTER JV LLC, a Delaware limited liability
company

By:    SCC JV Ventures LLC, a Delaware limited liability
       company
Its:    Operating Member

       By: _____
            Bruce V. Cook
       Its:    Secretary


SJD DEVELOPMENT CORP., a California corporation

By: _____
     Bruce V. Cook
Its:    Secretary


**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

LEHMAN/Suncal – Signature Page to Restructuring Agreement (199190)

SCC/INDIO LAND, LLC, a Delaware limited liability
company

By: _____
       Bruce V. Cook
Its:   Secretary


SCC MASTER IV COMMUNITIES LLC, a Delaware
limited liability company

By: _____
       Bruce V. Cook
Its:   Secretary


SCC/WEST CREEK, LLC, a Delaware limited liability
company

By: _____
       Bruce Elieff
Its:   Manager


SUNCAL COMMUNITIES II, LLC, a Delaware limited
liability company

By: _____
       Bruce Elieff
Its:   Manager


SEVEN BROTHERS LLC, a Delaware limited liability
company

By: _____
       Bruce Elieff
Its:   Manager


SUNCAL MANAGEMENT, LLC, a Delaware limited
liability company

By: _____
       Bruce Elieff
Its:   Manager


_____
BRUCE ELIEFF

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

LEHMAN/Suncal – Signature Page to Restructuring Agreement (199190)

SCC/INDIO LAND, LLC, a Delaware limited liability
company

By: _____

    Bruce V. Cook

Its:    Secretary

SCC MASTER IV COMMUNITIES LLC, a Delaware
limited liability company

By: _____

    Bruce V. Cook

Its:    Secretary

SCC/WEST CREEK, LLC, a Delaware limited liability
company

By: _____

    Bruce Elieff

Its:    Manager

SUNCAL COMMUNITIES II, LLC, a Delaware limited
liability company

By: _____

    Bruce Elieff

Its:    Manager

SEVEN BROTHERS LLC, a Delaware limited liability
company

By: _____

    Bruce Elieff

Its:    Manager

SUNCAL MANAGEMENT, LLC, a Delaware limited
liability company

By: _____

    Bruce Elieff

Its:    Manager

_____

BRUCE ELIEFF

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

LB/L - SUNCAL NORTHLAKE LLC, a Delaware limited
liability company

By:    SCLV Northlake LLC, a Delaware limited liability
company
Its:    Managing Member

    By: _____
    Name:   Francis X. Gilhool
    Title:  Authorized Signatory

By:    SCC/Northlake LLC, a Delaware limited
liability company
Its:    Operating Member

    By: _____
        Bruce V. Cook
    Its:    Secretary

LB/L - SUNCAL NORTHLAKE LLC, a Delaware limited
liability company

By:    [_____], a Delaware
         limited liability company
Its:    Managing Member

        By:  _____
        Name: _____
        Title: _____

By:    SCC/Northlake LLC, a Delaware limited
         liability company
Its:    Operating Member

        By:  _____
            Bruce V. Cook
        Its:  Secretary

ANNEX 1

"Borrowers" shall mean the following:

SCC
SunCal Marblehead Heartland Master LLC, a Delaware limited liability company
SunCal Marblehead LLC, a Delaware limited liability company ("Marblehead Project Owner")
SunCal Heartland LLC, a Delaware limited liability company ("Heartland Project Owner")
LB/L SunCal Northlake LLC, a Delaware limited liability company ("Northlake Borrower")
LB/L SunCal Oak Valley LLC, a Delaware limited liability company ("Oak Valley Borrower")
SJD Partners, Ltd., a California limited partnership ("Pacific Point Borrower")
Palmdale Hills Property, LLC, a Delaware limited liability company (the "Ritter Ranch Mortgage Borrower")
SCC/Palmdale, LLC, a Delaware limited liability company ("Ritter Ranch Mezz Borrower")
SunCal Communities I, LLC, a Delaware limited liability company ("SunCal I Borrower")
SunCal Communities III, LLC, a Delaware limited liability company
SunCal Bickford Ranch LLC, a Delaware limited liability company ("Bickford Ranch Second Lien Borrower")

"Grantors" shall mean the following:

SCC
Marblehead Project Owner
Heartland Project Owner
Northlake Borrower
Oak Valley Borrower
Pacific Point Borrower
Ritter Ranch Mortgage Borrower
Acton Estates, LLC, a Delaware limited liability company ("Acton Estates Project Owner")
SunCal Summit Valley LLC, a Delaware limited liability company ("Summit Valley Project Owner")
Seven Brothers LLC, a Delaware limited liability company
Kirby Estates, LLC, a Delaware limited liability company
SunCal Beaumont Heights, LLC, a Delaware limited liability company
Bickford Ranch Second Lien Borrower
SunCal Emerald Meadows LLC, a Delaware limited liability company ("Emerald Meadows Project Owner")
SunCal Johannson Ranch LLC, a Delaware limited liability company

"Guarantors" shall mean the following:

> SCC
> Bruce Elieff
> Acton Estates Project Owner
> Summit Valley Project Owner
> Bickford Ranch Second Lien Borrower
> Emerald Meadows Project Owner

"Pledgors" shall mean the following:

> SCC
> SunCal Master JV, LLC, a Delaware limited liability company
> SJD Development Corp., a California corporation
> Ritter Ranch Mezz Borrower
> SunCal I Borrower
> Summit Valley Project Owner

"SunCal Equity Partners" shall mean the following:

> SCC/Indio Land, LLC, a Delaware limited liability company
> SCC/West Creek, LLC, a Delaware limited liability company
> SCC Master IV Communities LLC, a Delaware limited liability company

"Lehman Equity Partners" shall mean the following:

> LB Indio Land Ventures LLC, a Delaware limited liability company
> LB/Lakeside Capital Partners, LLC, a Delaware limited liability company
> LB-Delta Master IV Member LLC, a Delaware limited liability company

ANNEX 2

Each of the Conveyance Properties within a particular group below are Related Conveyance
Properties to each other.

Group A          Marblehead
                 Heartland

Group B          Bickford Ranch
                 Emerald Meadows
                 Acton
                 Beaumont Heights
                 Summit Valley
                 Johansen Ranch

# Exhibit B

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 1 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 21,434,652.91 | $ 21,434,652.91 | 2/4/2008 |
| 2 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 3,212,610.71 | $ 3,212,610.71 | 2/8/2008 |
| 3 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 204,000.00 | $ 204,000.00 | 2/12/2008 |
| 4 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 953,592.12 | $ 953,592.12 | 2/15/2008 |
| 5 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 3,069,746.18 | $ 3,069,746.18 | 2/15/2008 |
| 6 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 3,008,822.10 | $ 3,008,822.10 | 2/21/2008 |
| 7 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 372,760.19 | $ 372,760.19 | 3/4/2008 |
| 8 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 1,464,878.16 | $ 1,464,878.16 | 3/14/2008 |
| 9 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 1,157,546.43 | $ 1,157,546.43 | 3/25/2008 |
| 10 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 485,606.28 | $ 485,606.28 | 4/7/2008 |
| 11 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 93,471.88 | $ 659,786.71 | 4/7/2008 |
| 11 | Beaumont Heights | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 272,190.20 | $ 659,786.71 | 4/7/2008 |
| 11 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 98,555.73 | $ 659,786.71 | 4/7/2008 |
| 11 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 121,933.20 | $ 659,786.71 | 4/7/2008 |
| 11 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 73,635.70 | $ 659,786.71 | 4/7/2008 |
| 12 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | Lehman ALI, Inc. | $ 167,076.77 | $ 167,076.77 | 4/8/2008 |
| 13 | Palm Springs | SunCal PSV, LLC | | | Lehman ALI, Inc. | $ 274,561.00 | $ 274,561.00 | 4/8/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | | Project Amount | | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ | 434,456.84 | $ | 434,456.84 | 4/8/2008 |
| 15 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 613,609.41 | $ | 928,634.30 | 4/9/2008 |
| 15 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 315,024.89 | $ | 928,634.30 | 4/9/2008 |
| 16 | Northlake | LB/L -SunCal Northlake LLC | | | Lehman ALI, Inc. | $ | 1,185,261.50 | $ | 1,185,261.50 | 4/10/2008 |
| 17 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 1,387,606.44 | $ | 1,387,606.44 | 4/24/2008 |
| 18 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ | 800,552.96 | $ | 800,552.96 | 4/28/2008 |
| 19 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ | 202,016.44 | $ | 202,016.44 | 5/12/2008 |
| 20 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ | 83,082.04 | $ | 83,082.04 | 5/14/2008 |
| 21 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 83,909.24 | $ | 83,909.24 | 5/14/2008 |
| 22 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ | 84,993.11 | $ | 84,993.11 | 5/29/2008 |
| 23 | Beaumont Heights | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 200.00 | $ | 239,380.48 | 5/29/2008 |
| 23 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 202,728.08 | $ | 239,380.48 | 5/29/2008 |
| 23 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 28,261.57 | $ | 239,380.48 | 5/29/2008 |
| 23 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 7,590.83 | $ | 239,380.48 | 5/29/2008 |
| 23 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 600.00 | $ | 239,380.48 | 5/29/2008 |
| 24 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 1,700,623.30 | $ | 1,700,623.30 | 5/29/2008 |
| 25 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ | 33,775.00 | $ | 33,775.00 | 6/3/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 26 | Beaumont Heights | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 21,762.50 | $ 21,762.50 | 6/5/2008 |
| 27 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 68,465.00 | $ 68,465.00 | 6/19/2008 |
| 28 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 225,316.18 | $ 225,316.18 | 6/19/2008 |
| 29 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 10,606.38 | $ 10,606.38 | 6/26/2008 |
| 30 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ 2,046.38 | $ 32,775.51 | 6/26/2008 |
| 30 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 30,444.13 | $ 32,775.51 | 6/26/2008 |
| 30 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 285.00 | $ 32,775.51 | 6/26/2008 |
| 31 | Northlake | LB/L -SunCal Northlake LLC | | | Northlake Holdings LLC | $ 369.55 | $ 369.55 | 7/9/2008 |
| 32 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 689.89 | $ 689.89 | 7/9/2008 |
| 33 | Pac Point | SJD Partners Ltd. | | | LV Pacific Point LLC | $ 1,048.73 | $ 1,048.73 | 7/9/2008 |
| 34 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 12,469.08 | $ 12,469.08 | 7/9/2008 |
| 35 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 902,194.02 | $ 902,194.02 | 7/9/2008 |
| 36 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 50,000.00 | $ 50,000.00 | 7/11/2008 |
| 37 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 57,464.73 | $ 57,969.19 | 7/14/2008 |
| 37 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 504.46 | $ 57,969.19 | 7/14/2008 |
| 38 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 84,706.42 | $ 84,706.42 | 7/14/2008 |
| 39 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 161,132.14 | $ 161,132.14 | 7/14/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 40 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc | $ 7,081.92 | $ 7,081.92 | 7/16/2008 |
| 41 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ 10,504.00 | $ 10,504.00 | 7/16/2008 |
| 42 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 20,382.44 | $ 20,382.44 | 7/16/2008 |
| 43 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ 24,696.12 | $ 24,696.12 | 7/22/2008 |
| 44 | Joshua Ridge | SCC Acquisitions, LLC | | | Lehman ALI, Inc. | $ 387.88 | $ 387.88 | 7/22/2008 |
| 45 | Pac Point | SJD Partners Ltd. | | | LV Pacific Point LLC | $ 3,801.56 | $ 3,801.56 | 7/23/2008 |
| 46 | Pac Point | SJD Partners Ltd. | | | LV Pacific Point LLC | $ 48,453.00 | $ 48,453.00 | 7/23/2008 |
| 47 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc | $ 73,281.00 | $ 73,281.00 | 7/23/2008 |
| 48 | Pac Point | SJD Partners Ltd. | | | LV Pacific Point LLC | $ 292,694.63 | $ 292,694.63 | 7/23/2008 |
| 49 | Del Rio | SCC Acquisitions, LLC | | | Lehman ALI, Inc. | $ 12,152.00 | $ 12,152.00 | 7/28/2008 |
| 50 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ 18,830.44 | $ 18,830.44 | 7/28/2008 |
| 51 | Del Rio | SCC Acquisitions, LLC | | | Lehman ALI, Inc. | $ 20,459.00 | $ 20,459.00 | 7/28/2008 |
| 52 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 24,538.00 | $ 24,538.00 | 7/28/2008 |
| 53 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 38,000.00 | $ 38,000.00 | 7/28/2008 |
| 54 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 375,000.00 | $ 375,000.00 | 7/28/2008 |
| 55 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 900,000.00 | $ 900,000.00 | 7/28/2008 |
| 56 | Pac Point | SJD Partners Ltd. | | | LV Pacific Point LLC | $ 19,318.85 | $ 19,318.85 | 7/30/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 57 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 445.00 | $ 60,727.60 | 7/30/2008 |
| 57 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 60,282.60 | $ 60,727.60 | 7/30/2008 |
| 58 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 83,094.75 | $ 83,094.75 | 7/30/2008 |
| 59 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 1,722,748.15 | $ 1,722,748.15 | 7/30/2008 |
| 60 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 2,807.44 | $ 2,807.44 | 7/31/2008 |
| 61 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 4,938.30 | $ 4,938.30 | 7/31/2008 |
| 62 | Palm Springs | SunCal PSV, LLC | | | Lehman ALI, Inc. | $ 33,210.00 | $ 33,210.00 | 7/31/2008 |
| 63 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 1,350.00 | $ 46,478.57 | 7/31/2008 |
| 63 | Beaumont Heights | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 4,500.00 | $ 46,478.57 | 7/31/2008 |
| 63 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 4,500.00 | $ 46,478.57 | 7/31/2008 |
| 63 | Copper Canyon | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 22,628.57 | $ 46,478.57 | 7/31/2008 |
| 63 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 4,500.00 | $ 46,478.57 | 7/31/2008 |
| 63 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 4,500.00 | $ 46,478.57 | 7/31/2008 |
| 63 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 4,500.00 | $ 46,478.57 | 7/31/2008 |
| 64 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ 66,232.47 | $ 66,232.47 | 7/31/2008 |
| 65 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 108,059.34 | $ 108,059.34 | 7/31/2008 |
| 66 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 1,100,939.65 | $ 1,100,939.65 | 7/31/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | | Project to Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|---|
| 67 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ | 205.00 | $ 205.00 | 8/5/2008 |
| 68 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ | 1,151.00 | $ 1,151.00 | 8/5/2008 |
| 69 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ | 1,210.96 | $ 1,210.96 | 8/5/2008 |
| 70 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 11,312.38 | $ 11,312.38 | 8/5/2008 |
| 71 | Northlake | LB/L -SunCal Northlake LLC | | | Northlake Holdings LLC | $ | 12,662.58 | $ 12,662.58 | 8/5/2008 |
| 72 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ | 15,930.00 | $ 15,930.00 | 8/5/2008 |
| 73 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ | 15,930.00 | $ 15,930.00 | 8/5/2008 |
| 74 | Northlake | LB/L -SunCal Northlake LLC | | | Northlake Holdings LLC | $ | 19,710.00 | $ 19,710.00 | 8/5/2008 |
| 75 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ | 19,710.00 | $ 19,710.00 | 8/5/2008 |
| 76 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ | 33,210.00 | $ 33,210.00 | 8/5/2008 |
| 77 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ | 33,724.87 | $ 33,724.87 | 8/5/2008 |
| 78 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 48,356.55 | $ 48,356.55 | 8/5/2008 |
| 79 | Acton Estates | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 22,628.57 | $ 135,771.44 | 8/5/2008 |
| 79 | Beaumont Heights | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 22,628.57 | $ 135,771.44 | 8/5/2008 |
| 79 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 22,628.57 | $ 135,771.44 | 8/5/2008 |
| 79 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 22,628.57 | $ 135,771.44 | 8/5/2008 |
| 79 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc | $ | 22,628.57 | $ 135,771.44 | 8/5/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Property Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 79 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 22,628.57 | $ 135,771.44 | 8/5/2008 |
| 80 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 297,394.00 | $ 297,394.00 | 8/5/2008 |
| 81 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 302,604.09 | $ 302,604.09 | 8/5/2008 |
| 82 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 353,000.00 | $ 353,000.00 | 8/5/2008 |
| 83 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 1,925,000.00 | $ 1,925,000.00 | 8/5/2008 |
| 84 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 47,198.81 | $ 47,198.81 | 8/7/2008 |
| 85 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 663.56 | $ 663.56 | 8/8/2008 |
| 86 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 6,560.98 | $ 6,560.98 | 8/8/2008 |
| 87 | Del Rio | SCC Acquisitions, LLC | | | Lehman ALI, Inc. | $ 6,375.00 | $ 6,375.00 | 8/11/2008 |
| 88 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ 17,826.00 | $ 17,826.00 | 8/11/2008 |
| 89 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 18,397.00 | $ 18,397.00 | 8/11/2008 |
| 90 | Summit Valley | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 19,250.00 | $ 19,250.00 | 8/11/2008 |
| 91 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 10,974.88 | $ 10,974.88 | 8/12/2008 |
| 92 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 450.00 | $ 19,994.65 | 8/12/2008 |
| 92 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 19,544.65 | $ 19,994.65 | 8/12/2008 |
| 93 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 148,647.58 | $ 148,647.58 | 8/12/2008 |
| 94 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 14,616.76 | $ 14,616.76 | 8/13/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|---|
| 95 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 19,034.05 | $ 19,034.05 | 8/13/2008 |
| 96 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ | 50,000.00 | $ 50,000.00 | 8/13/2008 |
| 97 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 141,968.99 | $ 141,968.99 | 8/13/2008 |
| 98 | Del Rio | SCC Acquisitions, LLC | | | Lehman ALI, Inc | $ | 8,000.00 | $ 8,000.00 | 8/14/2008 |
| 99 | Del Rio | SCC Acquisitions, LLC | | | Lehman ALI, Inc | $ | 16,000.00 | $ 16,000.00 | 8/14/2008 |
| 100 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 30,000.00 | $ 30,000.00 | 8/14/2008 |
| 101 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc | $ | 231,046.38 | $ 231,046.38 | 8/14/2008 |
| 102 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 320,000.00 | $ 320,000.00 | 8/14/2008 |
| 103 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 473.00 | $ 473.00 | 8/15/2008 |
| 104 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 11,000.00 | $ 11,000.00 | 8/15/2008 |
| 105 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ | 18,500.00 | $ 18,500.00 | 8/15/2008 |
| 106 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ | 31,650.00 | $ 31,650.00 | 8/15/2008 |
| 107 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 28,347.00 | $ 37,522.00 | 8/15/2008 |
| 107 | Johannson Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ | 9,175.00 | $ 37,522.00 | 8/15/2008 |
| 108 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ | 93,199.50 | $ 93,199.50 | 8/15/2008 |
| 109 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ | 154,588.71 | $ 154,588.71 | 8/15/2008 |
| 110 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ | 420,000.00 | $ 420,000.00 | 8/15/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 111 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 1,511,083.29 | $ 1,511,083.29 | 8/15/2008 |
| 112 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 391.33 | $ 391.33 | 8/18/2008 |
| 113 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 24,640.00 | $ 24,640.00 | 8/18/2008 |
| 114 | Tesoro | SCC Acquisitions, LLC | | | Lehman ALI, Inc. | $ 29,844.00 | $ 29,844.00 | 8/18/2008 |
| 115 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc. | $ 242,139.24 | $ 242,139.24 | 8/18/2008 |
| 116 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 38,935.00 | $ 38,935.00 | 8/19/2008 |
| 117 | Emerald Meadows | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 71,000.00 | $ 71,000.00 | 8/22/2008 |
| 118 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ 474.63 | $ 474.63 | 8/25/2008 |
| 119 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 464.47 | $ 3,520.80 | 8/25/2008 |
| 119 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 3,056.33 | $ 3,520.80 | 8/25/2008 |
| 120 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 3,890.16 | $ 3,890.16 | 8/25/2008 |
| 121 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 7,500.00 | $ 7,500.00 | 8/25/2008 |
| 122 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 10,267.78 | $ 10,267.78 | 8/25/2008 |
| 123 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 10,316.00 | $ 10,316.00 | 8/25/2008 |
| 124 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 12,412.71 | $ 12,412.71 | 8/25/2008 |
| 125 | Bickford Ranch | SunCal Communities I, LLC | SunCal Communities III, LLC | | Lehman Commercial Paper, Inc. | $ 20,449.52 | $ 20,449.52 | 8/25/2008 |
| 126 | Oak Valley | LB/L - SunCal Oak Valley LLC | | | OVC Holdings LLC | $ 36,615.00 | $ 36,615.00 | 8/25/2008 |

| Exhibit | Project | Borrower 1 | Borrower 2 | Borrower 3 | Lender | Project Amount | Protective Disbursement Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 127 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc | $ 127,867.00 | $ 127,867.00 | 8/25/2008 |
| 128 | Heartland | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 1,792.31 | $ 171,964.68 | 8/25/2008 |
| 128 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc. | $ 170,172.37 | $ 171,964.68 | 8/25/2008 |
| 129 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 517,000.00 | $ 517,000.00 | 8/25/2008 |
| 130 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 89,752.44 | $ 89,752.44 | 8/28/2008 |
| 131 | Delta Coves | Delta Coves Venture LLC | | | Lehman ALI, Inc | $ 301,829.85 | $ 301,829.85 | 8/28/2008 |
| 132 | Ritter Ranch | Palmdale Hills Property, LLC | | | Lehman Commercial Paper, Inc. | $ 3,125,000.00 | $ 3,125,000.00 | 8/28/2008 |
| 133 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 839,962.00 | $ 839,962.00 | 8/29/2008 |
| 134 | Marblehead | SunCal Marblehead Heartland Master LLC | SunCal Marblehead LLC | SunCal Heartland LLC | Lehman ALI, Inc | $ 327,000.00 | $ 327,000.00 | 9/4/2008 |

# Exhibit C

| Project | Date | Amount Approved |
|---|---|---|
| Marblehead | 4/15/2008 | $ 226,280.01 |
| Heartland | 4/25/2008 | $ 6,800.00 |
| Marblehead | 4/25/2008 | $ 176,853.75 |
| Acton Estates | 5/13/2008 | $ 347.56 |
| Oak Valley | 5/13/2008 | $ 509,260.29 |
| Pac Point | 5/13/2008 | $ 29,071.17 |
| Heartland | 5/13/2008 | $ 247.50 |
| Pac Point | 5/13/2008 | $ 27,296.26 |
| Heartland | 5/28/2008 | $ 200.00 |
| Marblehead | 5/28/2008 | $ 290,779.74 |
| Marblehead | 5/28/2008 | $ 1,172.00 |
| Emerald Meadows | 5/29/2008 | $ 1,795.54 |
| Pac Point | 5/30/2008 | $ 521,781.36 |
| Oak Valley | 6/2/2008 | $ 14,912.97 |
| Heartland | 6/2/2008 | $ 200.00 |
| Ritter Ranch | 6/5/2008 | $ 2,954.85 |
| Marblehead | 6/5/2008 | $ 156,331.00 |
| Delta Coves | 6/23/2008 | $ 38,238.61 |
| Oak Valley | 6/25/2008 | $ 1,635.29 |
| Pac Point | 6/25/2008 | $ 38,184.12 |
| Marblehead | 6/25/2008 | $ 47,177.53 |
| Northlake | 6/27/2008 | $ 119,453.25 |
| Terra Lago | 7/1/2008 | $ 11,896.20 |
| Terra Lago | 7/3/2008 | $ 75,774.30 |
| Northlake | 7/10/2008 | $ 327.78 |
| Oak Valley | 7/10/2008 | $ 329.26 |
| Pac Point | 7/10/2008 | $ 2,571.33 |
| Delta Coves | 7/14/2008 | $ 340,000.00 |
| Heartland | 7/24/2008 | $ 218.00 |
| Marblehead | 7/24/2008 | $ 442.05 |
| Oak Valley | 7/30/2008 | $ 37,184.51 |
| Northlake | 7/30/2008 | $ 20,996.19 |
| Pac Point | 7/30/2008 | $ 311,817.57 |
| Marblehead | 7/31/2008 | $ 10,864.00 |
| Emerald Meadows | 8/13/2008 | $ 2,769.60 |
| Heartland | 8/13/2008 | $ 1,562.10 |
| Oak Valley | 8/13/2008 | $ 3,259.40 |
| Bickford Ranch | 8/13/2008 | $ 146.00 |
| Emerald Meadows | 8/22/2008 | $ 430.00 |
| Northlake | 8/22/2008 | $ 110.00 |
| Oak Valley | 8/22/2008 | $ 9,004.52 |
| Pac Point | 8/26/2008 | $ 170,136.21 |

# Exhibit D

## *Palmdale Hills Property, LLC*
2392 Morse Avenue
Irvine, CA 92614

November 23, 2010

Lehman Ali Inc.
399 Park Avenue
New York, New York 10022
Attn: Andrew A. Wilson

Re:  ELR Escrow Account
Fidelity National Title
Escrow 6365-SM

Dear Mr. Wilson,

Enclosed please find Draw Request # 16 in the amount of $3,457.04 from the Palmdale Hills Property,
LLC escrow account at Fidelity National Title. This is the sixteen draw of funds from the "Elizabeth
Lake Road" escrow of $4,208,033.46. Included in the draw package you will find the following:

1)   Disbursement Request
2)   Schedule of Values
3)   Invoice Summary
4)   Draw Summary
5)   Payment Instructions
6)   Invoice copies and releases

Please indicate your approval of the release of funds by signing the Disbursement Request and
forwarding it by FAX to Valerie Vona at Fidelity National Title at (949) 224-4763. Ms. Vona will
then issue the checks as detailed in the Payment Instructions and forward them to me for distribution.

Please fax a copy of your approval to Angelique Zonner at (949) 777-4227 or via email to
azonner@argentmanagementllc.com .  You my call Angelique at (949) 777-4027 should you have any
questions.

Sincerely,

Tom Rollins
Chief Accounting Officer

cc:   Valerie Vona, Fidelity National Title
      Jim Hill, Trimont Real Estate Advisors
      Danielle Harrison, Argent Management LLC
      Mike Walline, Argent Management LLC

Enclosures

DISBURSEMENT REQUEST

Lehman Ali Inc.
399 Park Avenue
New York, New York 10022
Attn: Brian Gross                              RE: Escrow # 6365-SM
     Andrew A. Wilson                        Request # 16

Trimont Real Estate Advisors
2 Park Plaza, Suite 850 Jamboree Center
Irvine, CA 92614
Attention: Jim Hill

Fidelity National Title Insurance Company
1300 Dove Street, Suite 310
Newport Beach, CA 92660
Attention: Valerie Vona

      This Disbursement Request is delivered pursuant to Escrow Agreement, dated as of June 20, 2008 (as amended, supplemented or otherwise modified from time to time, the "Escrow Agreement"), among PALMDALE HILLS PROPERTY, LLC, a Delaware limited liability company (the "Borrower"), LEHMAN COMMERCIAL PAPER INC., a New York corporation, in its capacity as agent (in such capacity, "Agent") and as the sole lender (the ("Lender") and FIDELITY NATIONAL TITLE INSURANCE COMPANY ("Escrow Agent"). Terms defined in the Escrow Agreement are used herein as therein defined.

     1.    Notice Date: November 23, 2010 (must be at least 10 business days prior to Requested Withdrawal Date).

     2.    Requested Withdrawal Date: December 9, 2010

     3.    Amount Requested: $3,457.04

      In accordance with the terms of the Escrow Agreement, you are hereby requested to make disbursement of funds held by you in the Escrow Account described in the Escrow Agreement in accordance with the documentation attached hereto, which documentation is incorporated herein by this reference and made a part hereof and which documentation includes the following (items enclosed are marked "x" and separately tabbed on the enclosed submission).

__X___    Copies of all subcontractor payment requests and invoices for materials and services with applicable line item numbers marked thereon (other costs)

The undersigned hereby certifies to the Escrow Agent and the Agent and each Lender as follows:

(A)    the labor, services and/or material covered hereby have been performed upon or furnished to the Project;

(B)    the payments to be made with the funds requested herein will pay all bills received to date for any labor, materials and services furnished in connection with construction of the Improvements;

(C)    all amounts previously disbursed by you for labor, services and/or materials for the Project pursuant to previous requests for funds have been paid to the parties entitled thereto other than amounts in dispute which are expressly described;

(D)    no default has occurred and is continuing under the Escrow Agreement or the applicable construction contract or subcontract between the Borrower and the undersigned contractor as of the Notice Date, and the undersigned is not aware of any event or circumstance which could cause a default to occur thereunder prior to the Requested Withdrawal Date; and

(E)    the Borrower has achieved or will achieve within the time period set forth on Exhibit "C" to the Escrow Agreement (as the same may be modified from time to time with the Agent's prior written consent), completion of the portion of Improvement work which is required to have been achieved as of the Requested Withdrawal Date.

IN WITNESS WHEREOF, the undersigned has duly executed this Disbursement Request as of the date first written above.

PALMDALE HILLS PROPERTY, LLC

By: _____

Name: Tom Rollins
Title: Chief Accounting Officer


APPROVED BY:
LEHMAN COMMERCIAL PAPER
INC., a New York corporation

By: _____

Name: _____Jeffrey Fitts_____
Title: _____Authorized Signatory_____

Palmdale Hills Property, LLC
Elizabeth Lake Road
Escrow # 6365 SM
Draw #           16
Period Ending    23-Nov-2010

**Application for Payment and Summary Sheet**

| Description | Line Item | Original Budget | Current Line Item Changes | Total Line Item Changes | Revised Budget | REQUEST FOR FUNDS | | | | Balance Remaining |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Previous Request | Current Request | Total Request to Date | % Comp | |
| **ELR I** | | | | | | | | | | |
| Streets | 01 | 1,689,946.29 | 0.00 | 472,137.99 | 2,162,084.28 | 2,098,779.83 | 3,273.29 | 2,102,053.12 | 97.22% | 60,031.16 |
| Water Domestic | 02 | 613,540.00 | 0.00 | 32,569.93 | 646,109.93 | 646,109.93 | 0.00 | 646,109.93 | 100.00% | 0.00 |
| Water Raw | 03 | 268,905.00 | 0.00 | 6,220.73 | 275,125.73 | 250,635.73 | 0.00 | 250,635.73 | 91.10% | 24,490.00 |
| Storm Drain | 04 | 231,875.80 | 0.00 | (47,178.61) | 184,699.19 | 141,601.23 | 0.00 | 141,601.23 | 76.67% | 43,097.96 |
| Sewer | 05 | 17,380.00 | 0.00 | 23,441.00 | 40,821.00 | 40,821.00 | 0.00 | 40,821.00 | 100.00% | 0.00 |
| Grading | 06 | 981,827.93 | 0.00 | (175,055.77) | 406,772.16 | 377,002.39 | 0.00 | 377,002.39 | 92.68% | 29,769.77 |
| Fee | 07 | 20,000.00 | 0.00 | 2,278.10 | 22,278.10 | 17,506.15 | 183.75 | 17,689.90 | 79.40% | 4,588.20 |
| Survey | 08 | 67,900.00 | 0.00 | 16,818.00 | 84,718.00 | 66,848.00 | 0.00 | 66,848.00 | 78.91% | 17,870.00 |
| Soils | 09 | 57,000.00 | 0.00 | 39,869.33 | 96,869.33 | 71,754.73 | 0.00 | 71,754.73 | 74.07% | 25,114.60 |
| Archeological | 10 | 20,000.00 | 0.00 | 13,355.50 | 33,355.50 | 33,355.50 | 0.00 | 33,355.50 | 100.00% | 0.00 |
| Native American | 11 | 20,000.00 | 0.00 | (16,893.95) | 3,106.05 | 3,106.05 | 0.00 | 3,106.05 | 100.00% | 0.00 |
| Contingency | 12 | 370,658.44 | 0.00 | (339,825.46) | 30,832.98 | 0.00 | 0.00 | 0.00 | 0.00% | 30,832.98 |
| Subtotal-ELR I | | 3,959,033.46 | 0.00 | 27,738.79 | 3,986,772.25 | 3,747,520.54 | 3,457.04 | 3,750,977.58 | 94.09% | 235,794.67 |
| **ELR II** | | | | | | | | | | |
| Streets--Temp Shoulder | 20 | 150,000.00 | 0.00 | 28,849.45 | 178,849.45 | 97,942.23 | 0.00 | 97,942.23 | 54.76% | 80,907.22 |
| Consultants and Fees | 21 | 35,000.00 | 0.00 | 7,411.76 | 42,411.76 | 42,411.76 | 0.00 | 42,411.76 | 100.00% | 0.00 |
| Archeological | 22 | 25,000.00 | 0.00 | (25,000.00) | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 |
| Survey | 23 | 30,000.00 | 0.00 | (30,000.00) | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 |
| Contingency | 24 | 9,000.00 | 0.00 | (9,000.00) | 0.00 | 0.00 | 0.00 | 0.00 | #DIV/0! | 0.00 |
| Escrow fee | 25 | 2,500.00 | 0.00 | 0.00 | 2,500.00 | 2,500.00 | 0.00 | 2,500.00 | 100.00% | 0.00 |
| Subtotal-ELR II | | 251,500.00 | 0.00 | (27,738.79) | 221,261.21 | 140,353.99 | 0.00 | 140,353.99 | 63.43% | 80,907.22 |
| **GRAND TOTAL** | | 4,210,533.46 | 0.00 | 0.00 | 4,208,033.46 | 3,887,874.53 | 3,457.04 | 3,891,331.57 | 92.47% | 316,701.89 |

Palmdale Hills Property, LLC
Elizabeth Lake Road
Escrow # 6365 SH
Current Draw Summary by Code
Draw#    16
Dated:    November 23, 2010

**"ATTACHMENT"**
**REQUEST FOR PAYMENT AND AUTHORIZATION TO DISBURSE**

| Line Item | Vendor | Invoice No. | Invoice Date | Gross Amount | Retention | Net Amount |
|-----------|--------|-------------|--------------|--------------|-----------|------------|
| | **ELR I** | | | | | |
| 01 | Streets | | | | | |
| | Engineering Solutions | 2766 | 11/08/10 | 1,732.50 | | $ 1,732.50 |
| | Engineering Solutions | 2766-REIMB | 11/08/10 | 75.89 | | $ 75.89 |
| | Engineering Solutions | 2768 | 11/18/10 | 767.50 | | $ 767.50 |
| | Engineering Solutions | 2768-REIMB | 11/18/10 | 417.60 | | $ 417.60 |
| | Engineering Solutions | 2773 | 01/10/11 | 280.00 | | $ 280.00 |
| | *Total Loan Line Item  01* | | | 3,273.29 | - | $ 3,273.29 |
| | | | | | | |
| 07 | Fees | | | | | |
| | City of Palmdale | 112210-CHK01 | 11/22/10 | 183.75 | | $ 183.75 |
| | *Total Loan Line Item  07* | | | 183.75 | - | $ 183.75 |
| | *Grand Total - Draw # 16* | | | $ 3,457.04 | $ - | $ 3,457.04 |

Palmdale Hills Property, LLC
Elizabeth Lane Hotel
Express 6 GMS list
Current Gross Summary by Code
Draw# 16
Dated 10/29/10

| Vendor Name | Expense Category | Description of Work | Contract Y/N ? | Total Contract Value | Amount Paid to Date | G/L Date | Invoice Date | Invoice # | Current Amt Billed on Invoice | Amount of Pending Requisition | Amount of Current Requisition | % Retained Disbursed | % Disbursed | % Interest Disbursed | In Pending Approval? | Balance Approved Pending | Comments/Notes | Source of Funding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| City of Palmdale | Fees/Assessments & Exaction Mtg | Street Lights/Park Devel. Fee | Yes | | | 11/23/10 | 10/22/10 | 1123104202000 | 183.75 | 183.75 | | | | | | | | |
| Engineering Solutions | Street Improvements | Street Lights | Yes | 2,500.00 | | 11/23/10 | 11/1/10 | 2746 | 1,752.50 | 1,752.50 | | | | | | | | |
| Engineering Solutions | Street Improvements | Street Lights | No | | | 11/23/10 | 11/8/10 | 2764-ELSMR | 29.69 | 29.69 | | | | | | | | |
| Engineering Solutions | Street Improvements | Street Lights | Yes | 2,500.00 | | 11/29/10 | 12/1/10 | 2788 | 762.50 | 762.50 | | | | | | | | |
| Engineering Solutions | Street Improvements | Street Lights | No | | | 11/23/10 | 12/1/10 | 2788-ELSMR | 437.60 | 437.60 | | | | | | | | |
| Engineering Solutions | Street Improvements | Street Lights | No | | | 9/21/10 | 1/5/11 | 2775 | 288.00 | 288.00 | | | | | | | | |

Date Submitted:
Date Finalized:
Draw Numbers:

11/23/10 Amt Invoiced:
Amt Requested:
16

Retainage:
Discount:

Pending Approval:
Pending Denied:

3,453.04
3,453.04

Palmdale Hills Property, LLC
Elizabeth Lake Road
Escrow # 6365 SM
Current Draw Payment Instructions
Draw #    16
Dated: November 23, 2010

| | | AMOUNT |
|---|---|---|
| **PAYEE** | | |
| City of Palmdale<br>38300 N. Sierra Hwy, Bldg D<br>Palmdale, CA 93550 | $ | 183.75 |
| Engineering Solutions<br>2155 Chicago Ave, Suite 201<br>Riverside, CA 92504 | $ | 3,273.29 |
| | **TOTAL**  $ | 3,457.04 |

2 checks requested