1 PAUL J. COUCHOT -- State Bar No. 131934
WINTHROP COUCHOT, P.C.
2 660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
3 Telephone: (949) 720-4100
Facsimile: (949) 720-4111
4 General Insolvency Counsel for Palmdale Hills
Property, LLC et. al. (the "Voluntary Debtors")

5
RONALD RUS - State Bar No. 67369
6 JOEL S. MILIBAND - State Bar No. 77438
RUS MILIBAND & SMITH
7 A PROFESSIONAL CORPORATION
2211 Michelson Drive, Seventh Floor
8 Irvine, California 92612
Telephone: (949) 752-7100
9 Facsimile: (949) 252-1514

Counsel for SCC Acquisitions Inc.

10                **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
11                **SANTA ANA DIVISION**

12 | In re | Case No. 8:08-bk-17206-ES |
| PALMDALE HILLS PROPERTY, AND ITS | |
13 | RELATED DEBTORS, | Jointly Administered With Case Nos. |

In re

PALMDALE HILLS PROPERTY, AND ITS
RELATED DEBTORS,

    Joint Administered Debtors and
Debtors-in-Possession

Affects:

☐ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574 ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

Chapter 11 Proceedings

**THIRD AMENDED CHAPTER 11 PLANS AS MODIFIED FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK KNOLL, LLC AND SUNCAL TORRANCE, LLC [GROUP II: TRUSTEE DEBTORS]**

<u>**Confirmation Hearing**</u>
Date:    October 24, 2011
Time:    9:30 a.m.
Place:    Courtroom 5A

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-#v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1

*Continued from Previous Page*

- ☐ LBL-SunCal Oak Valley, LLC
- ☐ SunCal Heartland, LLC
- ☐ LBL-SunCal Northlake, LLC
- ☐ SunCal Marblehead, LLC
- ☐ SunCal Century City, LLC
- ☐ SunCal PSV, LLC
- ☐ Delta Coves Venture, LLC
- ☒ SunCal Torrance, LLC
- ☒ SunCal Oak Knoll, LLC

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................. 2

II.   DEFINITIONS AND RULES OF INTERPRETATION ........................................ 3
      2.1   Definitions ................................................................................................. 3
      2.2   Rules of Construction ................................................................................ 23
      2.3   Exhibits ..................................................................................................... 24

III.  TREATMENT OF UNCLASSIFIED CLAIMS.................................................... 24
      3.1   Introduction............................................................................................... 24
      3.2   Treatment of Allowed Administrative Claims........................................... 25
      3.3   Treatment and Repayment of the Lehman's Administrative Loan(s) .......... 25
      3.4   Repayment of Allowed Administrative Claims Other than the
            Lehman Administrative Loans................................................................... 25
      3.5   Administrative Claims Bar Date ................................................................ 26
      3.6   Treatment of Unsecured Tax Claims ......................................................... 26
      3.7   Summary of the Group II: Trustee Debtors Plan's Treatment
            of Bond Indemnity Claims........................................................................ 27

IV.   CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 27

V.    THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS
      AND INTERESTS............................................................................................... 30
      5.1   The Plan's Treatment of Holders of Allowed Secured Real
            Property Tax Claims Against the Group II: Trustee Projects
            (Classes 1.1 and 1.2)................................................................................. 30
      5.2   The Plan's Treatment of Lehman's Disputed Claims(s)
            and Disputed Lien(s) Against the Group II: Trustee Debtors
            (Classes 2.1 and 202)................................................................................ 31
      5.3   The Plan's Treatment of Holders of Asserted Mechanic Lien
            Claims Against the Group II: Trustee Projects (Classes 3.1
            Through 3.4)  ........................................................................................... 32
      5.4   The Plan's Treatment of Holders of Contingent Bond
            Indemnification Claims Against the Group II: Trustee Projects
            (Class 4.1)................................................................................................. 33
      5.5   The Plan's Treatment of Holders of Priority Claims Group II:
            Trustee Debtors (Class 5.1) ...................................................................... 34
      5.6   The Plan's Treatment of Holders of General Unsecured
            Claims that are Reliance Claims Group II: Trustee Debtors
            (Classes 6.1 and 6.2)................................................................................. 35
      5.7   The Plan's Treatment of Holders of Allowed General Unsecured
            Claims that Are Not Reliance claims Group II: Trustee Debtors
            (Classes 7.1 and 7.2)................................................................................. 35
      5.8   The Plan's Treatment of Holders of Allowed Interests Group II:
            Trustee Debtors........................................................................................ 36

# TABLE OF CONTENTS

**(Continued)**

|  |  |  | PAGE |
|---|---|---|---|
| VI. | | ACCEPTANCE OR REJECTION OF THE PLAN | 36 |
| | 6.1 | Introduction | 36 |
| | 6.2 | Who May Object to Confirmation of the Plan | 36 |
| | 6.3 | Who May Vote to Accept/Reject the Plan | 37 |
| | 6.4 | What Is an Allowed Claim/Interest | 37 |
| | 6.5 | What Is an Impaired Class | 37 |
| | 6.6 | Who Is Not Entitled to Vote | 37 |
| | 6.7 | Who Can Vote in More than One Class | 38 |
| | 6.8 | Votes Necessary for a Class to Accept the Plan | 38 |
| | 6.9 | Treatment of Nonaccepting Classes | 38 |
| | 6.10 | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 38 |
| VII. | | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 39 |
| | 7.1 | Introduction | 39 |
| | 7.2 | Sale Process of the Group II: Trustee Projects and the Group II: Trustee Other Assets During the Sales Period | 39 |
| | 7.3 | Establishment and Operations of the Plan Trust | 42 |
| | 7.4 | Preservation and Pursuit of Litigation Claims and Recovery for the Plan Trust | 42 |
| | 7.5 | Removal of Chapter 11 Trustee | 43 |
| | 7.6 | Payment of Trust Expenses | 43 |
| | 7.7 | The Plan Trust Distribution System | 43 |
| | 7.8 | The Plan Trustee | 43 |
| | 7.9 | The Plan Trust Beneficiaries | 47 |
| | 7.10 | No Payment of Transfer-Related Fees to the United States Trustee | 48 |
| | 7.11 | No Payment of Transfer-Related Fees to the Plan Trustee | 48 |
| | 7.12 | Books and Records of Trust | 48 |
| | 7.13 | Federal Income Tax Treatment of the Holders of Plan Trust Beneficial Interests | 48 |
| | 7.14 | Termination of the Trust | 49 |
| | 7.15 | Exemption from Certain Transfer Taxes | 50 |
| | 7.16 | Tax Consequences of the Plan | 50 |
| | 7.17 | The Trustee Debtors' Committee | 50 |
| | 7.18 | Claims Estimation Rights | 51 |
| VIII. | | DISTRIBUTIONS | 51 |
| | 8.1 | Distribution Agent | 51 |
| | 8.2 | Distributions | 52 |
| | 8.3 | Old Instruments and Securities | 52 |
| | 8.4 | De Minimis Distributions and Fractional Shares | 53 |
| | 8.5 | Delivery of Distributions | 53 |
| | 8.6 | Undeliverable Distributions | 53 |

**TABLE OF CONTENTS**

**(Continued)**

| | | PAGE |
|---|---|---|
| IX. | OBJECTION TO CLAIMS AND DISPUTED CLAIMS | 54 |
| | 9.1 Standing for Objections to Claims | 54 |
| | 9.2 Treatment of Disputed Claims and Disputed Liens | 54 |
| X. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 55 |
| | 10.1 Executory Contracts to be Assumed and Assigned | 55 |
| | 10.2 Executory Contracts to be Rejected | 58 |
| XI. | LIMITATION OF LIABILITY | 59 |
| | 11.1 No Liability for Solicitation or Participation | 59 |
| XII. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 59 |
| | 12.1 Conditions Precedent to Plan Confirmation | 59 |
| | 12.2 Conditions Precedent to Plan Effectiveness | 59 |
| XIII. | RETENTION OF JURISDICTION | 59 |
| XIV. | MODIFICATION OR WITHDRAWAL OF THE PLAN | 61 |
| | 14.1 Modification of Plan | 61 |
| | 14.2 Nonconsensual Confirmation | 61 |
| XV. | EFFECT OF CONFIRMATION | 61 |
| | 15.1 Discharge | 61 |
| | 15.2 Revesting of the Assets | 62 |
| XVI. | MISCELLANEOUS | 62 |
| | 16.1 Payment of Statutory Fees | 62 |
| | 16.2 Changes in Rates Subject to Regulatory Commission Approval | 62 |
| | 16.3 Payment Dates | 62 |
| | 16.4 Headings | 62 |
| | 16.5 Other Documents and Actions | 63 |
| | 16.6 Notices | 63 |
| | 16.7 Governing Law | 63 |
| | 16.8 Binding Effect | 64 |
| | 16.9 Successors and Assigns | 64 |
| | 16.10 Severability of Plan Provisions | 64 |
| | 16.11 No Waiver | 64 |
| | 16.12 Inconsistencies | 64 |
| | 16.13 Exemption from Certain Transfer Taxes and Recording Fees | 65 |
| | 16.14 Post-Confirmation Status Report | 65 |
| | 16.15 Post-Confirmation Conversion/Dismissal | 65 |
| | 16.16 Final Decree | 66 |

# I.

## INTRODUCTION

These Plans[1] are proposed respectively by, and the accompanying Disclosure Statement is filed jointly by, Acquisitions and the Voluntary Debtors, as the SunCal Plan Proponents, in the Chapter 11 Cases of SunCal Torrance, LLC and SunCal Oak Knoll, LLC (the "Group II: Trustee Debtors"). In addition to being one of the SunCal Plan Proponents, Acquisitions is the Plan Sponsor, the Plan Trustee of the Plan Trust and the Distribution Agent, for each Group II: Trustee Debtor Plan that is confirmed.

In summary, the Plan(s) individually provide for sale of the Oak Knoll Project and the Del Amo Project (the "Group II: Trustee Debtors Projects"), free and clear of liens, claims and any purported credit bid rights of the Group II: Trustee Debtors' primary secured creditor, Lehman ALI, and for the liquidation of all other assets of the Group II: Trustee Debtors. The Net Sales Proceeds from these sales will then be distributed to Creditors holding Allowed Claims in accordance with their rights and priorities under the bankruptcy code and under any other applicable law.

**The Plans also offers the holders of a certain claims against the Group II: Trustee Debtors, which are defined herein as Reliance Claims, the right to sell these claims, along with  any other Litigation Rights arising from and/or related to such Reliance Claim, to LitCo, for the sum of fifty five cents ($0.55) per dollar of Allowed Claim.  The SunCal Plan proponents are willing to commit not to object to the amounts listed in Exhibit "8" to the Disclosure Statement as allowed Reliance Claims so long as the particular creditor votes "yes" on the SunCal Plan, agrees to assign its claim to Litco, and elects to sell its claim to LitCo for five cents ($0.55) per dollar of claim of the face value of the amount of the listed claim and does not dispute the amount thereof.  If any of these three conditions are not satisfied, other than the condition of the agreement as to the amount of the claim listed in Exhibit "8" to the Disclosure Statement, the SunCal Plan Proponents reserve the right to**

---

[1] All defined terms used herein have the same meanings as set forth in Article II herein and Exhibit "1" attached hereto.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

object to the amount of the claim and the purchase offer would be withdrawn.  As to the condition as to lack of agreement on the claim amounts listed in Exhibit "8" to the Disclosure Statement, the purchase offer would remain open until the allowed amount of the claim is resolved and/or determined by the Court.  The allowed amount will be amount of claim for purposes of the purchase offer. The purchase offer is also conditioned upon confirmation of the applicable Plan, the entry of a Final Confirmation Order confirming such Plan, and shall occur on or before the applicable Plan's Effective Date as defined herein.  However, this purchase offer is not contingent upon the sale of the Group II: Trustee Debtor Projects or a determination regarding any alleged automatic stay claim by LCPI arising from LCPI's pending Chapter 11 proceeding.  If such claimant agrees to all three conditions, including the amount of the claim listed in Exhibit "8" to the Disclosure Statement, then such claim shall payable in cash on the Effective Date.  If such claimant does not agree with the amount listed in Exhibit "8" to the Disclosure Statement, then such payment shall be made on the later of the Effective Date or such Claim becomes an Allowed Claim.

The offer by LitCo to purchase Allowed Reliance Claims for the sum of fifty-five cents ($0.55) per dollar of claim listed on Exhibit "8" to the Disclosure Statement and certain other Plan funding (*e.g.*, to make required payments to Creditors holding Allowed Administrative Claims, Priority Claims and Tax Claims) will not be funded by the SunCal Plan Proponents.  Instead, the SunCal Plan Proponents are working with proposed investors/lenders who would provide such funding.  While the SunCal Plan Proponents are in discussions with third parties with respect to obtaining funding for the SunCal Plan, no commitment has yet been obtained for such funding and thus SunCal Plan Proponents are not in a position to disclose the terms of such funding at this time.  There is no guarantee that such funding will be obtained.

Although the substantially identical Plans are being filed in the Cases of all Group II: Trustee Debtors, confirmation of each Plan for each Debtor is independent of the other. In other words, the Creditors in each Case will determine, subject to Court approval, whether the applicable Plan will be approved in their Case. Accordingly, the Plan may be confirmed in the Cases of one of the Group II: Trustee Debtors, but not in the other.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

These Plans are accompanied by the Disclosure Statement.  The Disclosure Statement has been approved by the Court.  It is being provided along with the Plans in order to provide you with critical information about the Group II: Trustee Debtors and to help you understand the Plans.

**II.**

**DEFINITIONS AND RULES OF INTERPRETATION**

**2.1    Definitions.**

The following defined terms are used in the Plans.  Any capitalized term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

2.1.1    <u>Acquisitions</u>.  SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors, a purported Bond Indemnitor, a Creditor of all of the Debtors, a SunCal Plan Proponent, the Plan Sponsor and the proposed Plan Trustee.

2.1.2    <u>Administrative Claim(s)</u>.  Any Claim against a Group II: Trustee Debtor or its Estate incurred after the applicable Petition Date for the applicable Group II: Trustee Debtor but before the Effective Date, for any cost or expense of administration of the Case of the applicable Group II: Trustee Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Group II: Trustee Debtor under section 2030 of Title 28 of the United States Code.

2.1.3    <u>Administrative Claims Bar Date</u>.  The last date fixed by the Plan for the filing of requests for payment of Administrative Claims.  Under the Plan, the Administrative Claims Bar Date shall be the first business day after the twenty-first (21st) day after the Effective Date.

2.1.4    <u>Affiliate</u>.  The term shall have the meaning set forth under Section 101(2), including, but not limited to, as to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  through the ownership of voting securities or other equity ownership interest, by contract or

2  otherwise.

3         2.1.5  <u>Allowed</u>.  When used to describe Claim(s) or Interest(s), such Claim(s) or

4  Interest(s), to the extent that it or they are "Allowed Claim(s)" or "Allowed Interest(s)."

5         2.1.6  <u>Allowed Amount</u> shall mean:

6            A.  With respect to any Administrative Claim (i) if the Claim is based

7  upon a Fee Application, the amount of such Fee Application that has been approved by a Final

8  Order of the Bankruptcy Court; (ii) if the Claim is based upon any indebtedness or obligation

9  incurred in the ordinary course of business of the Group II: Trustee Debtors and is not otherwise

10  subject to an Administrative Claim Bar Date, the amount of such Claim that has been agreed to by

11  the Group II: Trustee Debtors and such creditor, failing which, the amount thereof as fixed by a

12  Final Order of the Bankruptcy Court; or (iii) if the Holder of such Claim was required to file and

13  has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date,

14  (1) the amount stated in such proof if no objection to such Proof of Claim is interposed within the

15  applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy

16  Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to

17  such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the

18  Bankruptcy Rules or the Bankruptcy Court.  The Allowed Amount of any Administrative Claim

19  which is subject to an Administrative Claims Bar Date and not filed by the applicable

20  Administrative Claims Bar Date shall be zero, and no distribution shall be made on account of any

21  such Administrative Claim;

22            B.  with respect to any Claim which is not an Administrative Claim

23  (the "Other Claim"):  (i) if the Holder of such Other Claim did not file proof thereof with the

24  Bankruptcy Court on or before the Claims Bar Date, the amount of such Claim as listed in the

25  Group II: Trustee Debtors'' Schedules as neither disputed, contingent nor unliquidated; or (ii) if

26  the Holder of such Claim has filed proof thereof with the Bankruptcy Court on or before the

27  Claims Bar Date, (a) the amount stated in such proof if no objection to such Proof of Claim was

28  interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Rules, the Plan or the Bankruptcy Court, or (b) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court. The Allowed Amount of any Other Claim which is not Filed by the applicable Claims Bar Date, is not listed on the Group II: Trustee Debtors' Schedules or is listed as disputed, unliquidated, contingent or unknown, and is not allowed under the terms of the Plan shall be zero, and no distribution shall be made on account of any such Claim; and

C.      with respect to any Interest, (i) the amount provided by or established in the records of the Group II: Trustee Debtors at the Confirmation Date, provided, however, that a timely filed proof of Interest shall supersede any listing of such Interest on the records of the Group II: Trustee Debtors; or (ii) the amount stated in a proof of Interest Filed prior to the Confirmation Date if no objection to such Interest was filed prior to the Confirmation Date or such later date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final Order of the Bankruptcy Court.

2.1.7      Allowed Claim.  Except as otherwise provided in the Plan(s) (including with respect to those Classes for which the amount of the Allowed Claims is specified by the Plan), a Claim to the extent (and only to the extent) of the Allowed Amount of such Claim.

2.1.8      Allowed Interest.  Any Interest to the extent, and only to the extent, of the Allowed Amount of such Interest.

2.1.9      Allowed Secured Claims.  All or a portion of a Secured Claim that is an Allowed Claim.

2.1.10      Allowed Unsecured Claim. All or a portion of an Unsecured Claim that is an Allowed Claim.

2.1.11      Arch.  Arch Insurance Company, a Bond Issuer.

2.1.12      Available Cash.  Each Group II: Trustee Debtors' Cash deposited into the applicable Distribution Account(s) on or after the Effective Date that is available for making Distributions under the Plan to Holders of Allowed Administrative, Priority, and General Unsecured Claims.  The Available Cash shall consist of the respective Group II: Trustee Debtors'

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

cash on hand as of the Effective Date that is not subject to a Disputed Lien, proceeds of Net Litigation Recoveries that are not subject to a Disputed Lien, Net Sales Proceeds that become Available Cash upon the disallowance of a Disputed Claim or avoidance of a Disputed Lien purportedly encumbering such Cash, or proceeds from the LitCo Plan Loan.  All Available Cash shall be deposited into the applicable Distribution Account(s).  Available Cash shall not include Net Sale Proceeds in the Net Sales Proceeds Account where the Disputed Secured Claims are Allowed but subject to an equitable subordination judgment.

2.1.13    Avoidance Actions.  All Claims and defenses to Claims accruing to the Group II: Trustee Debtors and their Estates under Bankruptcy Code Sections 506(d), 510(c), 541, 544, 545, 547, 548, 549, 550, or 551.

2.1.14    Bankruptcy Code.  The United States Bankruptcy Code.

2.1.15    Bankruptcy Court.  The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference made pursuant to Section 157 of title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

2.1.16    Bankruptcy Rules.  Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

2.1.17    Beneficial Interests. means, collectively, the interests of the holders of Allowed Unsecured Claims in the Plan Trust and in all distributions to be made by the Plan Trust on account of Allowed Unsecured Claims. The Beneficial Interests (a) shall be noted in the books and records of the Plan Trust, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law without written notification to the Plan Trustee confirming and acknowledging the transfer by both the holder and the transferee.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1       2.1.18      Bond Claim(s).  Any Claim against the Debtor(s) and a Bond Issuer

2   under various payment or performance bonds.

3       2.1.19      Bond Claimant.  Holder(s) of a Bond Claim.

4       2.1.20      Bond Indemnification Claim.  All Claims by Bond Issuers for

5   indemnification against a Bond Indemnitor for the Bond Issuer's actual payment or purchase of a

6   Bond Claim with respect to the Group II: Trustee Debtors' Projects.

7       2.1.21      Bond Indemnitors.  The individuals and entities that are allegedly liable

8   on the Bond Indemnification Claims, including, allegedly, all of the Debtors, Acquisitions, all

9   Affiliates of Acquisitions, and Elieff.

10      2.1.22      Bond Issuer(s).  Bond Safeguard, Lexon and Arch in their capacities as

11  issuers and sureties for payment and performance bonds for the benefit of certain of the Debtors.

12      2.1.23      Bond Safeguard.  Bond Safeguard Insurance Company, a Bond Issuer.

13      2.1.24      Business Day.  Any day, other than a Saturday, a Sunday or a "legal

14  holiday," as defined in Bankruptcy Rule 9006(a).

15      2.1.25      Cases.  The Chapter 11 cases of the Group II: Trustee Debtors pending

16  before the Bankruptcy Court.

17      2.1.26      Cash.  Currency of the United States of America and cash equivalents,

18  including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire

19  transfers and other similar forms of payment.

20      2.1.27      CFD Bonds.  Community facilities district bonds issued by a

21  governmental entity.

22      2.1.28      Chapter 11 Trustee.  Steven M. Speier, the duly appointed trustee of the

23  Trustee Debtors in their pending Chapter 11 Cases.

24      2.1.29      Claim.  This term shall have the broadest possible meaning under

25  Section 101(5) of the Bankruptcy Code, and shall include (a) any right to payment from any of the

26  Group II: Trustee Debtors, whether or not such right is reduced to judgment, liquidated,

27  unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

28  secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

breach gives rise to a right of payment from any of the Group II: Trustee Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.30    Claims Bar Date.  For any Claim other than the exceptions noted below , March 31, 2009, which was established by the Bankruptcy Court as the last date for creditors to file Proof of Claims with the Bankruptcy Court in all of the Group II: Trustee Debtors' cases, except for the following: (a) Administrative Claims, for which the Administrative Claims Bar Date shall apply, (b) claims arising from rejection of executory contracts or unexpired leases pursuant to 11 U.S.C. § 365, for which the last day to file a proof of claim is (i) 30 days after the date of entry of the order authorizing the rejection, or (ii) March 31, 2009, whichever is later, (c) claims of "governmental units," as that term is defined in 11 U.S.C. § 101(27), for which proofs of claim are timely filed if filed: (i) before 180 days after the date of the Order for Relief in this case, or (ii) by March 31, 2009, whichever is later (11 U.S.C. § 502(b)(9)), and (d) claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code, the last day to file a proof of claim is 30 days after the entry of judgment avoiding the transfer or March 31, 2009, whichever is later.

2.1.31    Claims Objection Deadline.  The later of (i) the first business day following the one hundred and eightieth (180th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Trustee and the Holder of the Claim.

2.1.32    Claim Objection Reduction Amount. The amount of Net Sales Proceeds that is made available to the holders of Allowed Unsecured Claims due to the entry of a judgment or order on a Lehman Claim Objection that disallows, reduces, or otherwise adversely modifies the secured claims filed by the Lehman Lenders.

2.1.33    Class.  Each group of Claims or Interests classified in Article V of the Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.34    Confirmation Date.  The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1        2.1.35      Confirmation Order.  The order entered by the Bankruptcy Court

2 confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

3        2.1.36      Contingent Bond Claims.  Bond Indemnification Claims in which the

4 Bond Issuer has not yet paid or purchased the underlying Bond Claim.

5        2.1.37      Contract Action. The action filed by certain Voluntary Debtors against

6 Lehman ALI, Inc., and certain other defendants, in California Superior Court for the County of

7 Orange (Case No. 30-2011-0040847-CU-BC-CJC), that was removed to the bankruptcy court as

8 Adv.  No. 8:11-ap-01212-ES, with a reservation of rights to add the Plan Trustee and/or the

9 Trustee Debtors as additional plaintiffs therein.

10        2.1.38      Creditor.  Any Person who is the Holder of a Claim against any Debtor

11 that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

12 become due, owing, and payable on or before the Petition Date, including, without limitation,

13 Claims of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

14        2.1.39      Debtor(s).  Individually or collectively, the Voluntary Debtors and the

15 Trustee Debtors, as specifically defined in Exhibit "1" attached to the Disclosure Statement.

16        2.1.40      Debtor(s)-in-Possession.  The Voluntary Debtor(s) in their capacity as

17 representatives of their respective Estates in their respective Chapter 11 Cases.

18        2.1.41      Del Amo Project.  The Project owned by SunCal Torrance, located in the

19 City of Torrance, California, as more particularly described herein.

20        2.1.42      Del Amo Project Value. The value of $13,500,000, which is the SunCal

21 Plan Proponent's conclusion regarding the fair market value of the Del Amo Project based upon

22 their underwriting teams' knowledge of the Project and present market conditions.

23        2.1.43     Diamond Valley.  Diamond Valley Land LLC, a Delaware limited liability

24 company, or its designee.  Diamond Valley shall be the Stalking Horse Bidder as to the Del Amo

25 Project.  Diamond Valley is indirectly owned by Stephan Elieff.  Stephan Elieff is the brother of

26 Bruce Elieff

27 2.1.42  2.1.44  Diamond Valley Purchase Offer for the Del Amo Project.  The

28 Diamond Valley Purchase offer is for the Del Amo Project and is subject to two conditions: The

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Diamond Valley Purchase offer for the Del Amo Project is conditioned upon the disallowance of Lehman ALI's or such other secured creditors' credit bid rights as to the Del Amo Project. The Diamond Valley Purchase Offer is also conditioned upon appropriate findings of the Court establishing that Diamond Valley is entitled to the protection afforded by Bankruptcy Code Section 363(m) in connection with the negotiation, execution, delivery, and consummation of the sale(s).

2.1.43  2.1.45  **Disclosure Statement.**  The document accompanying the Plan that is entitled "Third Amended Disclosure Statement Describing Third Amended Chapter 11 Plan Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC," as amended and with all accompanying exhibits.

2.1.44  2.1.46  **Disputed Claim(s).**  All or any part of a Claim against a Group II: Trustee Debtor as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and either (a) the Claim is not listed in the Schedules; or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the Claim is the subject of (a) an unresolved Litigation Claim; (b) the Claim is subject to offset by a Litigation Claim; (c) a timely objection to such Claim that has not been resolved by a Final Order; or (d) a request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, or the applicable Plan(s) which is Filed on or before the Claims Objection Deadline, which Adversary Proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

2.1.45  2.1.47  **Disputed Lien(s).**  An asserted lien(s) against Assets of the Debtor(s) that is either subject to a Disputed Secured Claim, not duly perfected, subject to an Avoidance Action, or subject to an action pursuant to Bankruptcy Code Sections 510(c)(2) and/or 506(d). However, pursuant to Section 506(d)(2), a lien is not disputed merely because it secures a claim that "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    ~~2.1.46~~ 2.1.48  <u>Disputed Secured Claim(s)</u>. That part of a Disputed Claim that is a

2    Secured Claim.

3    ~~2.1.47~~ 2.1.49  <u>Distribution(s)</u>.  Payments to Holders of Allowed Claims provided

4    for under the Plan.

5    ~~2.1.48~~ 2.1.50  <u>Distribution Agent</u>.  The entity that is responsible for making

6    Distributions under the Plan, which shall be Acquisitions.

7    ~~2.1.49~~ 2.1.51        <u>Distribution Account(s)</u>.  Separate account(s) to be

8    established by the Plan Trustee at an FDIC insured bank into which each Group II: Trustee

9    Debtors' Available Cash shall be deposited and all Available Cash received by the Plan Trust after

10   the Confirmation Date that would have belonged to such Group II: Trustee Debtor shall be

11   deposited, other than Net Sales Proceeds that are subject to Disputed Claims and Disputed Liens.

12   ~~2.1.50~~ 2.1.52  <u>Distribution Date</u>.  With respect to any Allowed Claim or Allowed

13   Interest, the date on which a Distribution is required to be made under the Plan.

14   ~~2.1.51~~ 2.1.53  <u>Effective Date</u>. A date selected by the applicable SunCal Plan

15   Proponent(s) that is not later than the thirtieth $(30^{th})$ calendar day after the Confirmation Date, and

16   provided there is no stay pending appeal of the Confirmation Order, in which case the Effective

17   Date shall be tolled until the dissolution of such stay.  The Effective Date may be extended by an

18   order of the Bankruptcy Court after notice and hearing to all parties in interest.

19   ~~2.1.52~~ 2.1.54  <u>Elieff</u>.  Bruce Elieff, the president of Acquisitions, a purported Bond

20   Indemnitor with alleged corresponding indemnity Claims against the Debtors.

21   ~~2.1.53~~ 2.1.55  <u>Estates</u>.  The bankruptcy estates of the Group II: Trustee Debtors

22   created pursuant to Section 541 of the Bankruptcy Code.

23   ~~2.1.54~~ 2.1.56  <u>Fee Applications</u>.  Applications of Professional Persons under

24   Sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and

25   reimbursement of expenses in the Cases.

26   ~~2.1.55~~ 2.1.57  <u>Fee Claim</u>.  A Claim under Sections 330 or 503 of the Bankruptcy

27   Code for allowance of compensation and reimbursement of expenses in the Cases.

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v3-SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1      ~~2.1.56~~ 2.1.58  __Filed__.  Delivered to, received by and entered upon the legal docket

2  by the Clerk of the Bankruptcy Court.  "File" shall have a correlative meaning.

3      ~~2.1.57~~ 2.1.59  __Final Order__.  A judgment, order, ruling or other decree issued and

4  entered by the Bankruptcy Court, that has not been reversed, stayed, modified or amended.

5      ~~2.1.58~~ 2.1.60  __General Unsecured Claim__.  A Claim against a Group II: Trustee

6  Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim or (d) a

7  Priority Claim.

8      ~~2.1.59~~ 2.1.61  __Group II: Trustee Debtors__. SunCal Torrance, LLC and SunCal Oak

9  Knoll, LLC.

10      ~~2.1.60~~ 2.1.62  __Group II: Trustee Debtors Assets__.  All assets that are property of the

11  Group II: Trustee Debtor(s) pursuant to Bankruptcy Code Section 541, including the Group II:

12  Trustee Projects, the Litigation Claims and the Net Sales Proceeds.

13      ~~2.1.61~~ 2.1.63  __Group II: Trustee Other Assets__.  All assets of the Group II: Trustee

14  Debtors excluding the Group II: Trustee Projects, Litigation Claims and Net Sales Proceeds.

15      ~~2.1.62~~ 2.1.64  __Group II: Trustee Projects__. The Del Amo Project and the Oak Knoll

16  Project.

17      ~~2.1.63~~ 2.1.65  __Holder__.  The beneficial owner of any Claim or Interest.

18      ~~2.1.64~~ 2.1.66  __Initial Overbid__. The Initial Overbid is the first Qualifying Bid after

19  the Opening Bid that is equal to or in excess of the Initial Overbid Amount.

20      ~~2.1.65~~ 2.1.67  __Initial Overbid Amount__. In the case of the Oak Knoll Project, the

21  Initial Overbid Amount is a sum that is not less than the sum of the Opening Bid, the Oak Knoll

22  Break-up Fee and seventy five thousand dollars ($75,000). In the case of the Del Amo Project, _if_

23  _Diamond Valley or another Insider is not the Stalking Horse Bidder,_ the Initial Overbid Amount is

24  a sum that is not less than the sum of the Opening Bid, the Torrance Break-up Fee and seventy-

25  five thousand dollars ($75,000).  _Whereas, if Diamond Valley or another Insider is the Stalking_

26  _Horse Bidder, the Initial Overbid Amount for the Del Amo Project is a sum that is not less than the_

27  _sum of the applicable Opening Bid, and the Minimum Increment._

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    2.1.66  2.1.68  Insider.  The term shall have the broadest meaning possible under

2    Section 101(31), including, but not limited to, a person in control of the Debtor, Affiliates and

3    Insiders of such Affiliates, and including Affiliates of Acquisitions and the Lehman Entities.

4            2.1.69    Interest.  Any equity security interest in any Group II: Trustee Debtor

5    within the meaning, of Section 101(16) of the Bankruptcy Code, including, without limitation, any

6    equity ownership interest in any of the Group II: Trustee Debtors, whether in the form of common

7    or preferred stock, stock options, warrants, partnership interests, or membership interests.

8            2.1.70    Land Advisors.  Park Place Partners, Inc., a California corporation, dba

9    Land Advisors Organization, the proposed real estate professional designated to manage the

10   SunCal Proponents' proposed sales under their applicable Plans.

11           2.1.67  2.1.71  LBHI.  Lehman Brothers Holdings, Inc., a Lehman Entity, the parent

12   company of Lehman ALI and LCPI, and a Chapter 11 debtor in a bankruptcy proceeding pending

13   in the Bankruptcy Court for the Southern District of New York.

14           2.1.68  2.1.72  LCPI.  Lehman Commercial Paper, Inc., a Chapter 11 debtor in a

15   bankruptcy proceeding pending in the Bankruptcy Court for the Southern District of New York.

16           2.1.69  2.1.73  Lehman Adversary Proceeding.  The Debtors' pending adversary

17   proceeding against the Lehman Lenders and/or the Lehman Successors asserting various causes of

18   action including equitable subordination, fraudulent conveyances and preferential transfers.

19           2.1.70  2.1.74  Lehman ALI.  Lehman ALI, Inc.

20           2.1.71  2.1.75  Lehman Disputed Administrative Loans.  The post-petition

21   financing provided by Lehman ALI to SunCal Oak Valley, SunCal Heartland, SunCal Northlake,

22   SunCal Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll,

23   which grants priming liens on all borrower Trustee Debtors' assets, and for super-priority

24   administrative status to Lehman ALI.  The aggregate amount of the Lehman Disputed

25   Administrative Loans to all of the Trustee Debtors was approximately $40  47 million as of

26   March 1October 3, 2011 and continuing to increase.  The Lehman Disputed Administrative Loans

27   are the subject of claim objections, specifically the pending 502(d) Objection.  Until these

28

-14-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  objections are resolved in the applicable Case, these Lehman Disputed Administrative Loans shall

2  not be Allowed Claims.

3      ~~2.1.72~~ 2.1.76  Lehman Claim Objections. The objections filed by the Debtors to the

4  claims filed by the Lehman Lenders that are based upon the Lehman Disputed Loans and the

5  Lehman Disputed Administrative Loans, including, but not limited to, the Lehman Recoupment

6  Objection and the Lehman 502(d) Objection.

7      ~~2.1.73~~ 2.1.77  Lehman Entities.  The Lehman Lenders, the Lehman Equity

8  Members and LBHI.

9      ~~2.1.74~~ 2.1.78  Lehman Equity Members.  Lehman Entities that own direct or

10  indirect membership Interests in all of the Trustee Debtors, except for SunCal Heartland and

11  SunCal Marblehead.

12      ~~2.1.75~~ 2.1.79  Lehman Lenders.  Lehman ALI, LCPI, Northlake Holdings, and

13  OVC Holdings.

14      ~~2.1.76~~ 2.1.80  Lehman Disputed Loans.  Collectively the following loans that are

15  the purported basis for the Lehman's Disputed Claims:  (a) SunCal Communities I Loan

16  Agreement; (b) Bickford Second Loan Agreement; (c) Ritter Ranch Loan Agreement; (d) SCC

17  Palmdale Loan; (e) Interim Loan Agreement; (f) SunCal Oak Knoll/SunCal Torrance Loan

18  Agreement; (g) SunCal Century City Loan Agreement; (h) SunCal PSV Loan Agreement;

19  (i) SunCal Delta Coves Loan Agreement; (j) SunCal Marblehead/SunCal Heartland Loan

20  Agreement; (k) Sun Cal Oak Valley Loan Agreement; (l) SunCal Northlake Loan Agreement; (m)

21  Pacific Point First Loan Agreement; (n) Pacific Point Second Loan Agreement, and (o) the

22  Lehman Disputed Administrative Loan.

23      ~~2.1.77~~ 2.1.81  Lehman Representatives.  The individuals that controlled the

24  Lehman Entities.

25      ~~2.1.78~~ 2.1.82  Lehman Successor(s).  Entities other than the Lehman Lenders that

26  either assert to be or are determined by the Bankruptcy Court to be the beneficial owner(s) of the

27  Lehman Disputed Loan(s), including, but not limited to Fenway Capital, Lehman Re and Danske

28  Bank.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    2.1.79  2.1.83  **Lehman's Disputed Claim(s)**.  All of the Proofs of Secured Claims

2    filed by a Lehman Lender or a Lehman Successor in the Debtors' Chapter 11 Cases arising from

3    the Lehman Disputed Loans and the Lehman Disputed Administrative Loans.

4    2.1.80  2.1.84  **Lehman's Disputed Lien(s)**.  All of the alleged liens relating to

5    Proofs of Secured Claims filed by a Lehman Lender or a Lehman Successor in the Debtor's

6    Chapter 11 Cases arising from the Lehman Disputed Loans.

7    2.1.81  2.1.85  **Lexon**.  Lexon Insurance Co.

8    2.1.82  2.1.86  **LitCo.** A Delaware limited liability company that will be formed for

9    the purpose of (i) purchasing the claims and Litigation Rights held by the Reliance Claimants that

10   choose  to sell such Reliance Claims, (ii) funding the LitCo Plan Loan, and (iii) potentially being

11   selected as the Stalking Horse Bidder under the Group II: Trustee Debtors' Plans.  However, for

12   the purposes of Torrance, Diamond Valley shall be the Stalking Horse Bidder, but shall not be

13   Litco.

14   2.1.83  2.1.87  **LitCo Plan Loan.** A loan and/or other security that will be provided

15   made by LitCo to the extent necessary to pay Allowed Priority Claims, Allowed Administrative

16   Claims, Allowed Priority Claims, and to pay Post Confirmation Expenses incurred by the Plan

17   Trust, the Plan Trustee and its professionals and to the Trustee Debtors Committee and its

18   professionals if no other source is available from the applicable Group II: Trustee Debtor's Assets.

19   The Litco Plan Loan shall also include a letter of credit or cash deposit in such amount required by

20   the Bankruptcy Court, if any, to the extent necessary to establish the feasibility of the Plan(s).

21   2.1.84  2.1.88  **Litigation Claims**.   Any and all interests of the Group II: Trustee

22   Debtors in any and all Claims, rights, causes of action, and objections or defenses to Claims, liens,

23   rights, or causes of action which have been or may be commenced by the Group II: Trustee

24   Debtor(s), the Chapter 11 Trustee, or the Trustee Debtors' Committee, as the case may be,

25   including, but not limited to, any (i) Avoidance Actions; (ii) for turnover of property to the Group

26   II: Trustee Debtors' Estates and/or the Plan Trust; (iii) for the recovery of property or payment of

27   money that belongs to the Debtors' Estates or the Plan Trust; (iv) the right to compensation in the

28   form of damages, recoupment or setoff of the Debtors' Estates and/or the Plan Trust; (v) the

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    Lehman Adversary Proceeding; (vi) the Contract Action, and (vii) any and all other Claims against

2    Lehman's Disputed Claims and/or Disputed Liens referenced in the Plan or the Disclosure

3    Statement.

4             2.1.85  2.1.89  <u>Litigation Recoveries</u>.  Any Cash or other property received by the

5    Chapter 11 Trustee, the Group II: Trustee Debtors, the Trustee Debtors' Committee and/or the

6    Plan Trust, as the case may be, from all or any portion of a Litigation Claim(s), including, but not

7    limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages,

8    whether recovered by way of settlement, execution on judgment or otherwise.

9             2.1.86  2.1.90  <u>Litigation Rights</u>. Any Claims held by a party against the Group II:

10   Trustee Debtors, and if applicable, against third parties arising or relating to the Claim against the

11   applicable Group II: Trustee Debtor, that have not been fixed in a final judgment prior to the

12   Effective Date.

13            2.1.87  2.1.91  <u>Maximum Distributions</u>.  A Distribution to a Holder of an Allowed

14   General Unsecured Claim against a Group II: Trustee Debtor equal to one hundred percent (100%)

15   of the amount of the Holder's Allowed General Unsecured Claim plus interest at the Legal Rate

16   from and as of the Group II: Trustee Debtor's Order for Relief.

17            2.1.88  2.1.92         <u>MB Firm</u>.  Miller Barondess, LLP.

18            2.1.89  2.1.93         <u>Mechanic Lien Claims</u>.  Mechanic Lien Claims arising

19   pursuant to California Civil Code §3110, et seq. that were either allegedly perfected prepetition or

20   otherwise allegedly satisfy the requirements of Bankruptcy Code 546(b).

21            2.1.90  2.1.94         <u>Minimum Increment</u>.  Minimum Increment applicable to the

22   sales of the Group II: Trustee Projects is one hundred thousand dollars ($100,000), until there are

23   only two Qualified Bidders submitting bids for a Group II: Trustee Project, then the Minimum

24   Increment shall be fifty thousand dollars ($50,000).

25            2.1.91  2.1.95  <u>Minimum Sale Price</u>. The minimum gross sale price that must be

26   paid for either the Oak Knoll Project or the Del Amo Project before such project can be sold

27   pursuant to the Plan. Such prices are $22,860,000 and $10,935,000 12,150,000 respectively.

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1     ~~2.1.92~~ 2.1.96  Net Litigation Recoveries.  Litigation Recoveries less associated

2  Administrative Claims and Post-Confirmation Expenses incurred in connection with such

3  Litigation Recoveries.

4     ~~2.1.93~~ 2.1.97  Net Sales Proceeds.  The Cash generated from the sale(s) or

5  liquidation of the Group II: Trustee Debtor(s)' Assets or the Plan Trust's Assets, less payment of

6  selling expenses, taxes, Chapter 11 Trustee fees, and any associated Post-Confirmation Expenses

7  and Administrative Claims incurred in furtherance of such sales or liquidation of such Assets.

8     ~~2.1.94~~ 2.1.98  Net Sales Proceeds Account(s).  Separate account(s) that will be

9  established by the Plan Trustee at an FDIC insured bank into which all Net Sale Proceeds shall be

10  deposited from the sale of Assets that were allegedly encumbered by a Disputed Secured Claim(s)

11  and/or a Disputed Lien(s).  There shall be a separate Net Sales Proceeds Account for the Net Sale

12  Proceeds allegedly subject to each Disputed Secured Claim(s) and/or Disputed Lien(s), except

13  where there are two Disputed Liens on a single Project, in which case, there shall be a single

14  account for the proceeds generated from that Project.  The Disputed Secured Claim(s) and/or

15  Disputed Lien(s) shall attach to the corresponding Net Sales Proceeds Account(s) pending any

16  Final Order(s) of the Bankruptcy Court resolving the applicable Disputed Secured Claim(s) and/or

17  applicable Disputed Lien(s).  To the extent that a particular Disputed Claim is disallowed or a

18  particular Disputed Lien is avoided (other than transferred to the Estates pursuant to Bankruptcy

19  Code Section 510(c)(2)) or otherwise invalidated, such Net Sales Proceeds allegedly subject

20  thereto shall become Available Cash and shall be transferred to the applicable Distribution

21  Account(s).  To the extent that a particular Disputed Secured Claim and a Disputed Lien are

22  allowed and deemed valid but subject to the equitable subordination causes of action in the

23  Lehman Adversary Proceeding, the funds shall remain in the Net Sales Accounts pending a Final

24  Order on the equitable subordination causes of action in the Lehman Adversary Proceeding.

25     ~~2.1.95~~ 2.1.99  Oak Knoll Break-up Fee. The sum equal to two and one-half  (2-

26  1/2%) percent of the Minimum Sale Prince of the Oak Knoll Project plus actual amounts paid by

27  LitCo on Allowed Administrative Claims for the Oak Knoll Case if LitCo is the Stalking Horse

28  Bidder and is not the Winning Bidder.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    ~~2.1.96~~ 2.1.100      Oak Knoll Project.  The Project owned by SunCal

2  Marblehead, located in the City of San Clemente, California, as more particularly described

3  herein.

4    ~~2.1.97~~ 2.1.101      Opening Bid.  Opening Bid means the offer for one, or both

5  of the Group II: Trustee Projects, which is equal to the Minimum Sale Price(s) accepted by the

6  Debtor for either one or both of the Group II: Trustee Projects.

7    ~~2.1.98~~ 2.1.102      Orders for Relief Date.  The following are dates that orders

8  for relief were entered for each of the Trustee Debtors:

| | |
|---|---|
| SunCal Oak Valley | January 6, 2009 |
| SunCal Heartland | January 6, 2009 |
| SunCal Northlake | January 6, 2009 |
| SunCal Marblehead | January 6, 2009 |
| SunCal Century City | January 6, 2009 |
| SunCal PSV | January 6, 2009 |
| Delta Coves | January 6, 2009 |
| SunCal Torrance | January 6, 2009 |
| SunCal Oak Knoll | January 6, 2009 |

15    ~~2.1.99~~ 2.1.103      Palmdale Hills.  Palmdale Hills Property, a Delaware limited

16  liability company, a Voluntary Debtor herein, and the owner of the Ritter Ranch Project.

17    ~~2.1.100~~ 2.1.104      Person.  An individual, partnership, corporation, limited

18  liability company, business trust, joint stock company, trust, unincorporated association, joint

19  venture, governmental authority, governmental unit, committee or other entity of whatever nature.

20    ~~2.1.101~~ 2.1.105      Petition Dates.  The following are dates that each of the

21  Voluntary Debtors filed their Voluntary Chapter 11 petitions or Creditors filed involuntary

22  Chapter 11 petitions against the Trustee Debtors:

| | |
|---|---|
| Palmdale Hills | November 6, 2008 |
| SunCal Beaumont | November 6, 2008 |
| SCC Palmdale | November 7, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Emerald | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| SJD Partners. | November 7, 2008 |

-19-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

| SJD Development | November 7, 2008 |
|---|---|
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SunCal III | November 7, 2008 |
| SCC Communities | November 20, 2008 |
| Del Rio | November 20, 2008 |
| Tesoro | November 20, 2008 |
| Delta Coves Ventures, LLC | November 14, 2008 |
| SunCal Heartland, LLC | November 12, 2008 |
| SunCal Marblehead, LLC | November 12, 2008 |
| LB-L-SunCal Northlake, LLC | November 12, 2008 |
| LB-L-SunCal Oak Valley, LLC | November 12, 2008 |
| SunCal Century City, LLC | November 14, 2008 |
| SunCal PSV, LLC | November 14, 2008 |
| SunCal Torrance Properties, LLC | November 14, 2008 |
| SunCal Oak Knoll, LLC | November 20, 2008 |

2.1.102  2.1.106    Plan(s).  The "Third Amended Chapter 11 Plan(s) As Modified Filed by SunCal Plan Proponents In The Chapter 11 Cases Of SunCal Oak Knoll, LLC and SunCal Torrance, LLC," together with the Exhibits thereto, as the same may be amended or modified from time to time in accordance with the Plan.

2.1.103  2.1.107    Plan Period. The period from the Effective Date to the Plan Termination Date.

2.1.104  2.1.108    Plan Termination Date. The fifth (5th) anniversary date of the Effective Date, unless the Plan Trustee elects an earlier date.

2.1.105  2.1.109    Plan Sponsor.  The entity that has committed to cause and/or arrange the funding of certain specified obligations under the Plan on or after the Effective Date. The Plan Sponsor is Acquisitions.

2.1.106  2.1.110    Plan Trust.  A liquidating trust to be established prior to or on the Effective Date, with Acquisitions as the Plan Trustee and the Holders of Allowed Claims against the Debtors as the beneficiaries. The purpose of the Plan Trust will be to liquidate the Debtors' Assets (other than Assets that are excluded by the Plan Trustee on the grounds that they lack value or would be difficult to administer) and to otherwise consummate the Plan.

2.1.107  2.1.111    Plan Trustee. The Plan Trustee under the Plan Trust Agreement is Acquisitions.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    ~~2.1.108~~ 2.1.112 .Plan Trust Beneficiaries. The Plan Trust Beneficiaries are (i) the

2    holders of Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that

3    shall be satisfied from Plan Trust Assets in accordance with the terms of the Plan.

4    ~~2.1.109~~ 2.1.113  Plan Trust Assets. Plan Trust Assets means all property within the

5    Chapter 11 estates of the Group II: Trustee Debtors, other than property that is affirmatively

6    excluded by the Plan Trustee.

7    ~~2.1.110~~ 2.1.114  Post-Confirmation Expenses.  The fees and expenses incurred by

8    the Plan Sponsor, the Plan Trustee and the Trustee Debtors' Committee and their professionals

9    following the Confirmation Date (including the fees and costs of Professionals) for the purpose of

10    (i) prosecuting and liquidating the Litigation Claims; (ii) objecting to and resolving Disputed

11    Claims and Disputed Liens; (iii) selling or otherwise liquidating the Plan Trust's Assets;

12    (iv) effectuating Distributions under the Plan; and (v) otherwise consummating the Plan and

13    closing the Group II: Trustee Debtors' Chapter 11 Cases.

14    ~~2.1.111~~ 2.1.115  Priority Claim.  Any Claim, other than an Administrative Claim

15    or a Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

16    ~~2.1.112~~ 2.1.116  Pro Rata.  Proportionately, so that with respect to any distribution

17    in respect of any Allowed Claim, the ratio of (a)(i) the amount of property distributed on account

18    of such Allowed Claim to (ii) the amount of such Allowed Claim, is the same as the ratio of (b)(i)

19    the amount of property distributed on account of all Allowed Claims of the Class or Classes

20    sharing in such distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

21    ~~2.1.113~~ 2.1.117  Professional.  A Person or Entity (a) employed by the Group II:

22    Trustee Debtors, the Trustee Debtors' Committee pursuant to a Final Order in accordance with

23    Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior

24    to the Effective Date, pursuant to Sections 327, 328, 3291 330 and 331 of the Bankruptcy Code, or

25    (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court

26    pursuant to Section 503(b) of the Bankruptcy Code.

27    ~~2.1.114~~ 2.1.118  Professional Fees.  All Allowed Claims for compensation and for

28    reimbursement of expenses under Sections 328, 330 and/or 503(b) of the Bankruptcy Code

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    2.1.115 2.1.119  Projects.  The Debtors' residential real estate development

2    projects and other assets as separately defined herein and described in Exhibit "1" to the

3    Disclosure Statement.

4    2.1.116 2.1.120  Qualifying Bid.  Qualifying Bid means, with respect to any bid on

5    a Group II: Trustee Project, a bid made by Qualifying Bidder that is A) equal to or in excess of the

6    Initial Overbid Amount, unless it is the Initial Overbid, or B) in excess of the immediately

7    preceding Qualifying Bid by the Minimum Increment, if it is not the Initial Overbid.

8    2.1.117 2.1.121   Qualifying Bidder.  Qualifying Bidder means a bidder who a) has

9    deposited the sum of five hundred thousand dollars ($500,000) in an escrow designated by the

10   SunCal Plan Proponents; b) who has provided the SunCal Plan Proponents evidence confirming

11   that such bidder has the financial means to acquire the applicable Group II: Trustee Project(s) that

12   such bidder is seeking to acquire, and c) agreed that this sum will be forfeited as liquidated

13   damages if such bidder is the Winning Bidder and fails to perform.

14   2.1.118 2.1.122  Reliance Claim. An Allowed Unsecured Claim, Allowed

15   Mechanic's Lien Claim, or Allowed Bond Indemnification Claim against a Group II: Trustee

16   Debtor that would entitle the holder thereof to be the beneficiary of any equitable subordination

17   judgment obtained against a Lehman Entity by such Group II: Trustee Debtor.  All Allowed

18   Mechanic's Lien Claims, Allowed Bond Indemnification Claims and certain Allowed General

19   Unsecured Claims are Reliance Claims.  A list of the Reliance Claims for the Group II: Trustee

20   Debtors is attached to the Disclosure Statement as Exhibit "8."  The SunCal Proponents' basis for

21   determining what claims constitute Reliance Claims, and how the amounts were determined is

22   discussed in Section 5.8 of the Disclosure Statement.

23   2.1.119 2.1.123  Reliance Claimant. The holder of a Reliance Claim. A list of the

24   Reliance Claimants for the Group II: Trustee Debtors is attached to the Disclosure Statement as

25   Exhibit "8."  The SunCal Proponents' basis for determining what claims constitute Reliance

26   Claims, and how the amounts were determined is discussed in Section 5.8 of the Disclosure

27   Statement.

28

-22-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

2.1.120 2.1.124  <u>Sales Period</u>.  The Sales Period is the time period during which the SunCal Plan Proponents must consummate a sale or liquidation of the Group II: Trustee Projects. The Sales Period shall commence on or before the Confirmation Date and shall expire thirty days after<u>on</u> the Effective Date, unless extended by the Bankruptcy Court after notice and hearing.

2.1.121 2.1.125  <u>SCC LLC</u>.  SCC Acquisitions LLC, a limited liability company, a subsidiary of Acquisitions and an indirect and/or a direct parent company of all of the Debtors.

2.1.122 2.1.126  <u>Schedules</u>.  The schedules of assets and liabilities and list of equity security holders Filed by the Group II: Trustee Debtors, as required by Section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

2.1.123 2.1.127  <u>Stalking Horse Bidder</u>.  The Qualified Bidder who submits the Opening Bid that is accepted by the applicable Debtor. <u>Diamond Valley shall be the Stalking Horse Bidder for the Del Amo Project.</u>

2.1.124 2.1.128  <u>SunCal</u>.  The SunCal Companies, a trade name for Acquisitions and its Affiliates.

2.1.125 2.1.129  <u>SunCal Management</u>.  SunCal Management, LLC, a Delaware limited liability company, and the former property manager for the Projects, which has been succeed by Argent Management.

2.1.126 2.1.130  <u>SunCal Oak Knoll</u>. SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor (a Group II: Trustee Debtor), and the owner of the Oak Knoll Project.

2.1.127 2.1.131  <u>SunCal Oak Knoll/SunCal Torrance Loan Agreement</u>.  That certain Loan Agreement, dated as of November 30, 2006, between SunCal Torrance and SunCal Oak Knoll, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which Lehman ALI made a loan in the maximum aggregate principal amount of approximately $167.7 million. The SunCal Oak Knoll/SunCal Torrance Loan Agreement is allegedly secured by first-priority deeds of trust on the Oak Knoll and the Del Amo Projects.  The SunCal Oak Knoll/SunCal

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   Torrance Loan Agreement has an alleged balance due of $158,141,364.64 as of March 30, 2009.   .
2   The proofs of claim filed with respect to this loan agreement are the subject of the Lehman
3   Adversary Proceeding and the Lehman Claim Objections.

4           ~~2.1.128~~ 2.1.132   <u>SunCal Plan Proponents</u>.  The Voluntary Debtors, in their
5   capacity as debtors and debtors in possession in their respective Chapter 11 cases, and
6   Acquisitions as a creditor and party-in-interest that is proposing the Plans.

7           ~~2.1.129~~ 2.1.133   <u>SunCal Torrance</u>. SunCal Torrance, LLC, a Delaware limited
8   liability company, a Trustee Debtor (a Group II: Trustee Debtor), and the owner of the Del Amo
9   Project.

10          ~~2.1.130~~ 2.1.134   <u>Tax</u>.  Any tax, charge, fee, levy, impost or other assessment by
11  any federal, state, local or foreign taxing authority, including, without limitation, income, excise,
12  property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,
13  estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or
14  additions attributable to, or imposed on or with respect to such assessments.

15          ~~2.1.131~~ 2.1.135   <u>Tax Claim</u>.  Any Claim for any Tax to the extent that it is entitled
16  to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

17          ~~2.1.132~~ 2.1.136      <u>Torrance Break-up Fee</u>. <span style="color:purple">If Diamond Valley or another Insider
18  is not the Stalking Horse Bidder, t</span>~~T~~he sum equal to two and one-half (2-1/2%) percent of the
19  Minimum Sale Prince of the Oak Knoll Project plus actual amounts paid by LitCo on Allowed
20  Administrative Claims for the Torrance Case if LitCo is the Stalking Horse Bidder and is not the
21  Winning Bidder.

22          ~~2.1.133~~ 2.1.137   <u>Trustee Debtor(s)</u>. The following Debtors, individually or
23  collectively, that are represented by the Chapter 11 Trustee: Delta Coves, SunCal Heartland,
24  SunCal Marblehead, SunCal Northlake, SunCal Oak Valley , SunCal Century City, SunCal PSV,
25  SunCal Torrance, and SunCal Oak Knoll.

26          ~~2.1.134~~ 2.1.138   <u>Trustee Debtors' Committee</u>.  The Official Committee of
27  Unsecured Creditors of the Trustee Debtors appointed in the Cases pursuant to Section 1102 of the
28  Bankruptcy Code.

-24-

<span style="color:red">MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC</span>

1          2.1.135  2.1.139   <u>Unpaid Secured Real Property Tax Claims</u>. Secured Claims held

2 by various government entities secured by liens on the underlying real properties owned by the

3 Debtors but that are non-recourse to the Debtors.

4          2.1.136  2.1.140   <u>Unsecured Claim</u>. An Unsecured Claim is any Claim that is not

5 an Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

6          2.1.137  2.1.141   <u>Voluntary Debtor(s)</u>. The following  Chapter 11 debtors and

7 debtors-in-possession, individually or collectively, Palmdale Hills, SunCal I, SunCal III, SCC

8 Palmdale, Acton Estates, SunCal Beaumont, SunCal Emerald, SunCal Johansson, SunCal

9 Bickford, SunCal Summit, Seven Brothers, Kirby Estates, SJD Partners, SJD Development, SCC

10 Communities, Del Rio and Tesoro.

11          2.1.138  2.1.142   <u>Winning Bid</u>. The highest and best Qualifying Bid received for

12 the Oak Knoll Project or the Del Amo Project.

13          2.1.143   <u>Winning Bidder</u>.  The party that submits the highest Qualifying Bid that

14 is accepted by the applicable Debtor.

15          2.1.139

16      **2.2**      <u>**Rules of Construction.**</u>

17          For purposes of the Plan and the Disclosure Statement, unless otherwise provided herein or

18 in the Plan, (a) whenever from the context it is appropriate, each term, whether stated in the

19 singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the

20 masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the

21 Plan or the Disclosure Statement to an existing document or schedule filed or to be filed means

22 such document or schedule, as it may have been or may be amended, modified or supplemented

23 pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

24 entity's successors and assigns; (e) except as otherwise indicated herein all references in the Plan

25 or the Disclosure Statement to Sections, Articles and Exhibits are references to Sections, Articles

26 and Exhibits of or to the Plan; (f) the words "therein," "thereunder" and "thereto" refer to the Plan

27 in its entirety rather than to a particular portion of the Plan; and (g) unless otherwise provided in

28 the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   contract, instrument, release, indenture, agreement, or other document being in a particular form or

2   on particular terms and conditions means that such document shall be substantially and materially

3   in such form or substantially and materially on such terms and conditions; (h) any reference in the

4   Plan or the Disclosure Statement to a document, schedule, or exhibit to the Plan or Disclosure

5   Statement Filed or to be Filed means such document, schedule, or exhibit, as it may have been or

6   may be amended, modified, or supplemented; and (i) the rules of construction set forth in Section

7   102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the

8   express terms of the Plan or the Disclosure Statement or any other provision in this Section.

9      **2.3**    **Exhibits**.

10      All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

11   therein.

12               **III.**

13         **TREATMENT OF UNCLASSIFIED CLAIMS**

14      **3.1**    **Introduction**.

15      As required by the Bankruptcy Code, the Plan places Claims and Interests into various

16   Classes according to their right to priority.  However, certain types of Claims are not classified in

17   any Classes under the Plan.  These Claims are deemed "unclassified" under the provisions of the

18   Code.  They are not considered impaired and they do not vote on the Plan, because they are

19   automatically entitled to specific treatment provided for them in the Code.  As such, the SunCal

20   Plan Proponents have not placed the following Claims in a Class.  The treatment of these

21   unclassified Claims is as provided below.

22      **3.2**    **Treatment of Allowed Administrative Claims**.

23      The Code requires that all Allowed Administrative Claims be paid on the later of Effective

24   Date of the Plan or the date of their allowance, unless a particular Holder agrees to a different

25   treatment.  The treatment of Allowed Administrative Claims is as described below.  However,

26   such Administrative Claims are continuing to be incurred.  The Allowed Administrative Claims

27   shall be paid from the applicable Distribution Account(s) pursuant to the LitCo Plan Loan.

28      **3.3**    **Treatment and Repayment of the Lehman ~~Disputed's~~ Administrative Loan(s)**.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    Because the Lehman Disputed Administrative Loans have priming liens on the applicable

2    Projects, to the extent that any portion of t~~The~~ Lehman Disputed Administrative Loan(s) has

3    become an Allowed Administrative Claim, it shall be paid from the closing of a sale of the

4    applicable Project to the extent required by an entered Order of the Court that is not subject to a

5    stay pending appeal.   To the extent that any portion of the Lehman Disputed Administrative

6    Loan(s) has become an Allowed Administrative Claim after the closing of a sale of the applicable

7    Project, such allowed administrative claim shall be paid from the funds in the applicable Net Sale

8    Proceeds Account to the extent required by an entered Order of the Court that is not subject to a

9    stay pending appeal. ~~in full on the later of the Effective Date, or the date any objections to the~~

10   ~~same are overruled by the Court leaving them Allowed claims. Prior to payment, or until~~

11   ~~disallowed, these claims shall continue to be secured by their existing liens against the respective~~

12   ~~Assets of the Trustee Debtors.~~

13           ~~The Lehman Disputed Administrative Loans shall be paid in full, on the date~~

14   ~~referenced above, from either 1) funds loaned to the Plan Trust by LitCo or another designated~~

15   ~~third party, or 2)~~ from the funds in the applicable Net Sale Proceeds Account**.**

16       **3.4**    **Repayment of Allowed Administrative Claims Other than the Lehman**

17              **Disputed Administrative Loans.**

18       Section 3.4 applies to the repayment of Allowed Administrative Claims, other than the

19   repayment of any portion of the Lehman Disputed Administrative Loan(s) that becomes an

20   Allowed Administrative Claim, if any.  Except to the extent that the Holder of an Allowed

21   Administrative Claim agrees to a different treatment and subject to the Administrative Claims Bar

22   Date set forth herein, the Distribution Agent shall pay each Allowed Administrative Claim in full,

23   in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date any

24   disputed Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such

25   Allowed Administrative Claim becomes due according to its terms. Such Allowed Administrative

26   Claims shall be paid from the Litco Plan Loan. ~~Notwithstanding the foregoing, any Allowed~~

27   ~~Administrative Claim representing obligations incurred in the ordinary course of post-petition~~

28   ~~business by the Debtors in Possession (including without limitation post-petition trade obligations~~

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  and routine post-petition payroll obligations) shall be paid in full or performed by the Plan Trustee

2  in the ordinary course of business, in accordance with the terms of the particular obligation.

3      **3.5**    **Administrative Claims Bar Date**.

4      All applications for final compensation of Professionals for services rendered and for

5  reimbursement of expenses incurred on or before the Effective Date and all other requests for

6  payment of Administrative Claims incurred before the Effective Date under Sections 507(a)(2)

7  or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade

8  obligations and routine post-petition payroll obligations incurred in the ordinary course of the

9  Debtors' post-petition business, for which no bar date shall apply, and (ii) post-petition tax

10  obligations, for which no bar date shall apply) shall be Filed with the Bankruptcy Court and served

11  upon the Plan Trustee no later than the Administrative Claims Bar Date, unless such date is

12  extended by the Bankruptcy Court after notice to the Plan Trustee.  Any such request for payment

13  of an Administrative Claim that is subject to the General Administrative Claims Bar Date and that

14  is not Filed and served on or before the Administrative Claims Bar Date shall be forever barred;

15  any party that seeks payment of Administrative Claims that (i) is required to file a request for

16  payment of such Administrative Claims and (ii) does not file such a request by the deadline

17  established herein shall be forever barred from asserting such Administrative Claims against the

18  Debtors, the Plan Trust, their estates, or any of their property.

19      **3.6**    **Treatment of Unsecured Tax Claims**.

20      Tax Claims are certain unsecured income, employment and other taxes described by Code

21  Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) tax claim

22  receive the present value of such Claim in deferred cash payments, over a period not exceeding

23  five (5) years from the petition date and that such treatment not be less favorable than the

24  treatment accorded to non priority unsecured creditors.

25      At the election of the Plan Trustee, the Holder of each Allowed Priority Tax Claim shall be

26  entitled to receive, on account of such Claim, (i) equal cash payments on the last Business Day of

27  each three-month period following the Effective Date, during a period not to exceed five years

28  after November 6, 2008, totaling the principal amount of such Claim plus simple interest on any

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  unpaid balance from the Effective Date, calculated at the interest rate available on ninety (90) day

2  United States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of

3  the Allowed Priority Tax Claim and the Plan Trustee, provided such treatment is on more

4  favorable terms to the Debtors (or the Plan Trust after the Effective Date) than the treatment set

5  forth in clause (i) hereof, or (iii) payment of the full Allowed Priority Tax Claim in Cash.

6      **3.7**      **Summary of the Group II: Trustee Debtors Plans' Treatment of Bond**

7           **Indemnity Claims.**

8      Bond Indemnification Claims are treated as Reliance Claims.  In the event that such Bond

9  Indemnification Claim arises from a general unsecured claim, it is classified in Class 6.  If the

10  event that such Bond indemnification Claim arises from a Mechanic's Lien Claim, then it is

11  classified in Class 3.  Contingent Bond Indemnification Claims are classified separately as Class 4

12  Claims.

13      The Bond Companies assert that Surety Bonds were executed on behalf of certain Debtors

14  as a principal for its respective Project.  Such Surety Bonds will not and cannot be transferred to

15  the Winning Bidder(s), and such Surety Bonds will not apply to the Winning Bidders.  The sale of

16  each Property is subject to applicable state and local development requirements, including the duty

17  to obtain performance and other surety bonds, to construct infrastructure improvements, and any

18  other related development responsibilities, where and if applicable.  If it is necessary or

19  appropriate for the Winning Bidder(s) to obtain Surety Bonds, then the Winning Bidder(s) will

20  have to obtain new Surety Bonds from the Bond Companies, or another surety.  ~~The Bond~~

21  ~~Companies assert that surety bonds were executed on behalf of all or some of the Group II: Trustee~~

22  ~~Debtors as a principal for its respective Group II: Trustee Project ("Surety Bonds").  The Surety~~

23  ~~Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning Bidder(s) determines to~~

24  ~~develop the Group II: Trustee Project(s), the Surety Bond will not apply to the Winning Bidder(s)'~~

25  ~~bonding requirements with respect to such development.  If a Winning Bidder(s) determines to~~

26  ~~develop all or a portion of its respective Group II: Trustee Project(s), it will be required at that~~

27  ~~time to obtain new Surety Bonds from the Bond Companies or another surety, to the extent surety~~

28  ~~bonds are required by applicable state and local development requirements.~~

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

# IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. The Plan specifies whether each Class of Claims or Interests is impaired or unimpaired, and the Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under the Plan and states whether each particular Class is impaired or left unimpaired by the Plan. A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

| CLASSIFICATION OF HOLDERS OF SECURED REAL PROPERTY TAX CLAIMS AGAINST THE GROUP II: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 1** | **Claimant** | **Claim Nos.[2]** |
| **Class 1.1** | Alameda County as the Holder of an Unpaid Secured Real Property Tax Claim against the Oak Knoll Project in the amount of $4,156,073. | SunCal Oak Knoll 22, 23 and 24 |
| **Class 1.2** | Los Angeles County as the Holder of an Unpaid Secured Real Property Tax Claim against the Torrance Project in the amount of $773,211. | SunCal Torrance 10 |

| CLASSIFICATION OF LEHMAN'S DISPUTED CLAIMS AGAINST THE GROUP II: TRUSTEE DEBTORS | | |
|---|---|---|
| **Class 2** | **Claims** | **Claim Nos.** |
| **Class 2.1** | The Holder of Lehman's Disputed Claims filed by Lehman ALI against SunCal Oak Knoll and SunCal Torrance arising from the SunCal Oak Knoll/SunCal Torrance Loan Agreement in the asserted amount of $158,141,364. | SunCal Oak Knoll: 12 SunCal Torrance: 4 |

| CLASSIFICATION OF ASSERTED MECHANIC LIEN CLAIMS AGAINST THE GROUP II: TRUSTEE PROJECTS [3] |
|---|

---

[2] These Real Property Tax Claims have been updated to include amounts for which proofs of claim have not yet been filed.

[3] The Holders of Allowed Mechanic Claims in Classes 3.1 – 3.4 are all defined as "Reliance Claimants," and hold specific Litigation Rights that are referred to herein as "Reliance Claims." The SunCal Plan Proponents believe that the Holders of Reliance Claims are the potential beneficiaries of the equitable subordination causes of action in the Lehman Adversary Proceeding. Under the Plan, the Reliance

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

| Class 3 | Claimant | Claim Nos. |
|---|---|---|
| **Class 3.1** | The Holder of the asserted Mechanic Lien Claim held by Oliphant Golf, Inc. against the Oak Knoll Project in the amount of $456,476. | SunCal Oak Knoll 46 |
| **Class 3.2** | The Holder of the asserted Mechanic Lien Claim held by RGA Environmental, Inc. against the Oak Knoll Project in the amount of $62,904. | SunCal Oak Knoll 1 |
| **Class 3.3** | The Holder of the asserted Mechanic Lien Claim held by BKF Engineers against the Oak Knoll Project in the amount of $308,817. | **SunCal Oak Knoll 2 and 20** |
| **Class 3.4** | The Holder of the asserted Mechanic Lien Claim held by CST Environmental Inc. against the Oak Knoll Project in the amount of $4,316,169. | **SunCal Oak Knoll 4 and 9** |

| CLASSIFICATION OF DISPUTED CONTINGENT BOND INDEMNIFICATION CLAIMS AGAINST THE GROUP II: TRUSTEE PROJECTS | | |
|---|---|---|
| **Class 4** | **Claimant** | **Claim Nos.** |
| **Class 4.1** | The holders of Contingent Bond Indemnification Claims arising from bonds issued with respect to the Group II: Trustee Projects | |

| CLASSIFICATION OF PRIORITY UNSECURED CLAIMS AGAINST THE GROUP II: TRUSTEE DEBTORS | | |
|---|---|---|
| **Class 5** | **Claimant** | **Claim Nos.** |
| **Class 5.1** | The Holder of Priority Claims that fall within Code Sections 507(a)(2), (4), (5), (6), and (7) in the asserted amount of $235 against SunCal Oak Knoll. | SunCal Oak Knoll 26 |

Claimants who sell their Reliance Claims to LitCo, and who vote in favor of the Plan, which is Option A on their Plan Ballot, will receive a distribution of fifty-five cents ($0.55) per dollar of claim on the face amount of their claim listed on Exhibit "8" to the Disclosure Statement.  A more detailed description of the determination of who are the holders of Reliance Claims and the amount thereof is set forth in Section 5.8 of the Disclosure Statement. The 55 percent payment shall come from Litco, but will not be part of the LitCo Loan. *Accordingly, the 55 percent payment is being paid from non-estate funds, for a non-estate asset.* If a Reliance Claimant elects not to sell this claim, then this claimant will receive the treatment set forth in Class 3 under the Plan. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT QUALIFY AS RELIANCE CLAIMS[4] AGAINST THE GROUP II: TRUSTEE DEBTORS | | |
|---|---|---|
| Class 6 | Claimant | Claim Nos. |
| **Class 6.1** | The holders of Allowed Unsecured Reliance Claims against SunCal Oak Knoll. | Various Filed and Scheduled |
| **Class 6. 2** | The holders of Allowed Unsecured Reliance Claims against SunCal Torrance. | Various Filed and Scheduled |

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS[5] AGAINST THE GROUP II: TRUSTEE DEBTORS | | |
|---|---|---|
| Class 7 | Claimant | Claim Nos. |
| **Class 7.1** | Claimants  holding Allowed Unsecured Claims against SunCal Oak Knoll that are not Reliance Claims | Various Filed and Scheduled |

---

[4] Unsecured Claims are generally placed within the same class and they receive the same treatment under a Plan. However, the SunCal Plan Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1 and 6.2, and 7.1 and 7.2. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1 and 6.2, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." Included in the definition of "Reliance Claims" in Section 2.1.130, are holders of Allowed Mechanic Lien Claims, ~~Allowed~~ Bond Indemnification Claims and all holders of allowed Class 6 Claims.  The SunCal Plan Proponents believe that the Holders of Reliance Claims are the potential beneficiaries of the equitable subordination causes of action in the Lehman Adversary Proceeding. The Unsecured Creditors in Classes 7.1 and 7.2 do not hold Reliance Claims. Under the Plan, the Reliance Claims who sell their Reliance Claimants to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of fifty-five cents ($0.55) per dollar of claim on the face amount of their claim listed on Exhibit "8" to the Disclosure Statement. The 55 percent payment shall come from Litco, but will not be part of the LitCo Loan. *Accordingly, the 55 percent payment is being paid from non-estate funds, for a non-estate asset*. If a Reliance Claimant elects not to sell this claim, then this claimant will receive the exact same distribution rights that the Class 7.1 and 7.2 claimants will receive under the Plan. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan. ~~Unsecured Claims are generally placed within the same class and they receive the same treatment under a Plan. However, the SunCal Plan Proponents have divided Unsecured claims into two classes in the Plan – Classes 6.1 and 6.2, and 7.1 and 7.2. This separate classification has been implemented for the following reason. The Holders of Unsecured Claims in Classes 6.1 and 6.2, who are referred to as "Reliance Claimants," hold specific Litigation Rights that are referred to herein as "Reliance Claims." The SunCal Plan Proponents believe that the Holders of Reliance Claims are the potential beneficiaries of the equitable subordination causes of action in the Lehman Adversary Proceeding. The Unsecured Creditors in Classes 7.1 and 7.2 do not hold Reliance Claims. Under the Plan, the Reliance Claimants who sell their Reliance Claims to LitCo, and who vote in favor of the Plan, which is Option A, will receive a distribution of 55 percent on their Allowed Unsecured Claims from non-estate funds. Accordingly, the 55 percent payment is being paid from non-estate funds, for a non-estate asset. If a Reliance Claimant elects not to sell this claim, then this claimant will receive the exact same distribution rights that the Class 7.1 and 7.2 claimants will receive under the Plan. In summary, the classification difference was made to provide for the purchase offer relating to the sale of the Reliance Claims. In all other respects the Holders of Unsecured Claims receive the same treatment under the Plan.~~

[5] This Class includes, but it is not limited to, Disputed Bond Claims that are not Allowed Secured Claims within Class 4.1.

-32-
MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

| CLASSIFICATION OF GENERAL UNSECURED CLAIMS THAT DO NOT QUALIFY AS RELIANCE CLAIMS[5] AGAINST THE GROUP II: TRUSTEE DEBTORS | | |
|---|---|---|
| **Class 7** | **Claimant** | **Claim Nos.** |
| **Class 7.2** | Claimants holding Allowed Unsecured Claims against SunCal Torrance that are not Reliance Claims | Various Filed and Scheduled |

| **Class 8** | **CLAIMANT/INTEREST HOLDER AGAINST THE GROUP II: TRUSTEE DEBTORS** | **Scheduled** |
|---|---|---|
| **Class 8.1** | Allowed Interests in SunCal Oak Knoll held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |
| **Class 8.2** | Allowed Interests in SunCal Torrance held by Lehman SunCal Real Estate Fund LLC and LBREP II/SunCal Land Fund Member LLC. | Scheduled Amount |

## V.

## THE PLAN'S TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.1    The Plan's Treatment of Holders of Allowed Secured Real Property Tax Claims Against the Group II: Trustee Projects (Classes 1.1 and 1.2).

The rights of the Holder(s)' of Allowed Secured Claims in Classes 1.1 and 1.2 are impaired under the Plan and shall receive one of the following two treatments at the Plan Trustee's discretion based solely on the option of the Group II: Trustee Debtor:

A.    Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and such Allowed Claims shall be satisfied in accordance with the provision of 11 U.S.C. § 1124(2) from the sale of the Group II: Trustee Projects during the Sales Period; or

B.    Such Holders shall retain their existing lien rights and shall accrue interest as provided under applicable nonbankruptcy law pursuant to 11 U.S.C. § 506 and 511 and California Revenue and Taxation Code Sections 4102 and 4103, and payment on such Allowed Claims shall be satisfied in regular installments over a period no more than sixty one (610) months from the applicable Group II: Trustee Debtor's Petition Dateorder for relief, but in no case shall

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    payment be made later than payment of Allowed Class 6.1, and 6.2. Claims, respectively, under

2    Option B.

3    **5.2    The Plan's Treatment of Lehman's Disputed Claim(s) and Disputed Lien(s)**

4    **Against the Group II: Trustee Debtors (Classes 2.1 and 2.2).**

5    The Holder(s) of Disputed Secured Claims within Class 2.1 and Class 2.2 shall receive the

6    indubitable equivalent of their disputed claims under the Plan, pursuant to 11 U.S.C. §

7    1129(b)(2)(A)(iii), through the following treatment:

8    A.    <u>Lien Rights</u>. The Class 2.1 and 2.2 Holder(s) shall retain their interest in the

9    Disputed Lien(s) against the applicable Group II: Trustee Projects and the Group II: Trustee Other

10   Assets that secure the Disputed Secured Claims, pending a Final Order(s) resolving the Allowance

11   of such Disputed Secured Claims and determining the validity, priority and extent of the

12   applicable Disputed Liens against the applicable Group II: Trustee Projects, which secure these

13   claims, except as follows:

14   1.    The Group II: Trustee Projects and the Group II: Trustee Other Assets

15   subject to the Class 2.1 through 2.2 Disputed Liens will be sought to be sold free and clear of such

16   liens during the Sales Period, without the right to credit bid under Section 363(k) with respect to

17   Disputed Claims and Disputed Liens. These Disputed Liens shall then attach to the Net Sales

18   Proceeds from the sale, which shall be deposited into the Net Sales Proceeds Account, pending a

19   resolution of such Disputed Secured Claims and Disputed Liens.  The marketing process and sales

20   procedures for the Group II: Trustee Projects and the Group II: Trustee Other Assets are described

21   in Article X hereof.

22   2.    To the extent that a Disputed Secured Claim held by either the Class 2.1

23   through 2.2 Claimants against the applicable Group II: Trustee Projects and Group II: Trustee

24   Other Assets  is disallowed, and the Disputed Lien associated with this Disputed Secured Claim is

25   consequently released to the extent of this disallowance, the Plan Trustee shall be authorized to

26   use to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s) to pay other

27   Allowed Claims in their order of priority, in accordance with the terms of the Plan;

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1        3.      To the extent that a Disputed Secured Claim held by either the Class 2.1

2    through 2.2 Claimant and the associated Disputed Lien(s) against the applicable Group II: Trustee

3    Projects and Group II: Trustee Other Assets  is subordinated, the Plan Trustee shall be authorized

4    to use to the Net Sales Proceeds that are no longer subject to the Disputed Lien(s), or where the

5    priority of the Disputed Liens has been subordinated by the Court, to pay other Allowed Claims in

6    their order of priority, in accordance with the terms of the Plan, to the extent of the subordination;

7    and

8            Notwithstanding the existence of the Disputed Secured Claims and the

9    Disputed Liens, the Plan Trustee may a seek a release of the funds in the Net Sales Proceeds

10    Account subject to these claims and liens to pay the claims of other creditors in accordance with

11    the terms of the applicable Plan, if the Class 2.1 through 2.2 claimants' interests in Group II will

12    remain adequately protected after this release.

13        3.      <u>Distributions To The Class 2.1 and 2.2 Claimants</u>. If the Plan Trustee

14    consummates a sale or otherwise liquidates the particular Group II Trustee Project and/or Group

15    II: Trustee Other Assets subject to the Class 2.1 and 2.2 Disputed Secured Claim(s) and/or

16    Disputed Lien(s) during the Sales Period, as provided for above, the Holder(s) of such Disputed

17    Secured Claim shall receive a distribution to the extent of available funds from the applicable Net

18    Sale Proceeds Account(s) to the extent required by an entered Order of the Court, that is not

19    subject to a stay pending appeal, determining the allowance and priority of the Disputed Secured

20    Claims and the validity, priority and extent of the Disputed Liens in, including but not limited to,

21    the Lehman Adversary Proceeding and the Lehman Claims Objections.

22        4.      <u>Abandonment of Unsold Group II: Trustee Projects and Group II: Trustee

23    Other Assets</u>. If for any reason the Plan Trustee is unable to sell any of the Group II: Trustee

24    Projects and/or Group II: Trustee Other Assets during the Sales Period, they will be abandoned as

25    of 11:59 p.m. on the last day of the Sales Period, no payment shall be made to Holders of Class 2.1

26    and 2.2 Claims, as the case may be, and such Holder(s) shall be free to exercise any and all

27    remedies that they may hold with respect to the Group II: Trustee Projects and the Group II:

28    Trustee Assets under applicable California law.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

**5.3** **The Plan's Treatment of Holders of Asserted Mechanic Lien Claims Against the Group II: Trustee Projects (Classes 3.1 Through 3.4).**

The treatment of the Holders of Allowed Classes 3.1 through 3.4 Secured Claims under the Plan shall be as follows:

A.    The Holder(s)' rights are impaired under the Plan;

B.    The Holder(s) shall retain their respective underlying liens on the applicable Group II: Trustee Project(s), but shall forebear from pursuing their rights and remedies until the expiration of the Sales Period;

C.    If the Plan Trustee is able to consummate a sale of the Group II: Trustee Projects subject to the liens asserted by the Holders of Class 3.1 through 3.4 claims  during the Sales Period, such Holders shall receive a distribution of, to the extent available, Net Sale Proceeds in accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s) resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the validity of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman Adversary Proceeding; and

D.    If for any reason the Plan Trustee is unable to sell any of the Group II: Trustee Projects during the Sales Period, they will be abandoned as of 11:59 p.m. on the last day of the Sales Period, no payment shall be made to Holders of Classes 3.1 through 3.4 Claims, as the case may be, and such Holder(s) shall be free to exercise any and all remedies that they may hold with respect to the Group II: Voluntary Projects under applicable California law.

**5.4** **The Plan's Treatment of Holders of Contingent Bond Indemnification Claims Against the Group II: Trustee Projects (Class 4.1).**

The Bond Companies assert that surety bonds were executed on behalf of all or some of the Group II: Trustee Debtors as a principal for its respective Group II: Trustee Project ("Surety Bonds").  The Surety Bond(s) will not be transferred to the Winning Bidder(s) and, if a Winning Bidder(s) determines to develop the Group II: Trustee Project(s), the Surety Bond will not apply to the Winning Bidder(s)' bonding requirements with respect to such development.  If a Winning Bidder(s) determines to develop all or a portion of its respective Group II: Trustee Project(s), it

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   will be require at that time to obtain new Surety Bonds from the Bond Companies or another

2   surety, to the extent surety bonds are required by applicable state and local development

3   requirements.

4        The rights of each holder of an Allowed Contingent Bond Indemnification Claim arising

5   from a bond issued with respect to a Group II: Trustee Project, shall, to the extent such claim(s)

6   are determined to be a secured claim(s), be impaired under the Plan. Such claims shall receive the

7   following treatment:

8            A.      Each such Allowed Secured Claim shall be placed in a separate class and

9   receive a separate ballot for voting purpose;

10           B.      Each Holder(s) shall retain their respective underlying liens on the

11  applicable Group II: Trustee Project(s), but shall forebear from pursuing their rights and remedies

12  until the expiration of the Sales Period;

13           C.      If the Plan Trustee is able to consummate a sale of the Group II: Trustee

14  Projects subject to the liens asserted by the Holders of Class 4.1 claimants during the Sales Period,

15  such Holders shall receive a distribution, to the extent of available Net Sale Proceeds in

16  accordance with the priorities set forth under the Bankruptcy Code, subject to a Final Order(s)

17  resolving the allowance and priority of the applicable Lehman's Disputed Claim(s) and the

18  validity of the applicable Lehman Disputed Lien(s) in, including but not limited to, the Lehman

19  Adversary Proceeding; and

20           D.      If the Plan Trustee is unable to consummate a sale of the applicable Group

21  II: Trustee Project(s) during the Sales Period, such projects shall be deemed abandoned by the Plan

22  Trustee, no payment shall be made to such Holder(s), and such Holder(s) shall be allowed to

23  pursue their respective rights against these project(s) under applicable California law.

24       **5.5      The Plan's Treatment of Holders of Priority Claims Group II: Trustee**

25               **Debtors (Class 5.1)**.

26       The treatment of the Holders of Allowed Priority Claims under the Plan shall be as

27  follows**:**

28           A.      The Holder(s) are unimpaired under the Plan; and

-37-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

B.    The Holder(s) shall be paid either from the applicable Distribution Account(s) (i) the full amount of such Allowed Priority Claim in Cash on the later of (x) the Effective Date, (y) the date such Claim becomes an Allowed Priority Claim or (z) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by such Holder and the Plan Trustee.

**5.6    The Plan's Treatment of Holders of General Unsecured Claims that are Reliance Claims Group II: Trustee Debtors (Classes 6.1 and 6.2).**

The rights of Holders of Allowed Class 6.1 and 6.2 Claims are impaired under the Plan. They have the right to choose between the following treatment options:

A.    Option A:  A claimant in these classes *who votes in favor of the Plan*, and who chooses Option A, will have the right to sell to LitCo all of the claimant's right, title and interest in all Allowed Reliance Claims and all of the claimant's Litigation Rights against the applicable Debtor, SunCal Affiliates, and the Lehman Entities, for the sum of fifty five cents ($0.55) per dollar of the amount of their claim listed on Exhibit "8" to the Disclosure Statement payable in cash on the Effective Date, in full satisfaction of such claimant's Allowed Reliance Claims.  However, if such holder disagrees with the amount of the claim listed on Exhibit "8" to the Disclosure Statement, then such claim shall be payable in cash on later of the Effective Date or within ten (10) business days of the Allowance of such Claim, in full satisfaction of such claimant's Allowed Reliance Claims.  Furthermore, all of such payments are contingent upon the lack of a stay pending an appeal of the Confirmation Order Allowed Reliance Claim, payable in cash on the Effective Date, provided there is no stay pending an appeal of the Confirmation Order, in full satisfaction of such claimant's Allowed Reliance Claims; or

B.    Option B:  A claimant in these classes who votes against the Plan, or who votes in favor of the Plan, but does not choose Option A, or who does not vote on the Plan, will 1) receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, 2) retain such claimant's Reliance Claim(s) and rights against the Lehman Entities and its right to receive such claimant's share, as determined by the Court, in the

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

benefits and recoveries resulting from a judgment or order entered in the Lehman Adversary Proceeding, the Contract Action, or the Lehman Claims Objections,  and 3) right to receive a pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims.

### 5.7    The Plan's Treatment of Holders of Allowed General Unsecured Claims that Are Not Reliance Claims Group II: Trustee Debtors (Classes 7.1 and 7.2).

The rights of Holders of Allowed Class 7.1 and 7.2 Claims are impaired under the Plan. Under the Plan, each claimant will 1) receive a minimum distribution in cash, on the Effective Date, equal to one percent (1%) of such claimant's Allowed Claim, and 2) receive a pro-rata share of any funds payable from the applicable Distribution Account(s), after payment in full of all Post Confirmation Expenses, Allowed Administrative Claims, and Allowed Priority Claims and any sums that the Bankruptcy Court determines are payable to the Holders of Allowed Class 6.1 and 6.2 Claims from either the Claim Reduction Amounts or on account of a judgment in the Lehman Adversary Proceeding up to the Maximum Distribution.

### 5.8    The Plan's Treatment of Holders of Allowed Interests Group II: Trustee Debtors.

The Interests of the Holders in Class 8.1 and 8.2 are impaired under the Plan. All such Interests shall be cancelled as of the Effective Date and no distribution shall be made to these Holders on account of such Interest(s).

### VI.

### ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    Introduction.

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The Debtors

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

cannot represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  The requirements described herein are not the only requirements for confirmation.

**6.2    Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**6.3    Who May Vote to Accept/Reject the Plan.**

A Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim which is both (1) Allowed or Allowed for voting purposes and (2) Classified in an impaired Class (excluding any class in which the Plan is "deemed rejected"). The votes will be tabulated on a Debtor by Debtor basis.

**6.4    What Is an Allowed Claim/Interest.**

As noted above, a Holder of a Claim or an Interest must first have an Allowed Claim or Allowed Interest to vote.

**6.5    What Is an Impaired Class.**

A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon certain kinds of defaults. In this case, the SunCal Plan Proponents believe that all Classes, except for Class 5.1, are impaired.

**6.6    Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2) or (a)(3) and Claims in Classes that do not receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled to vote because such

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy

Code Section 507(a)(8) are not entitled to vote because such Claims are not placed in Classes and

they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes

that do not receive or retain any property under the Plan do not vote because such Classes are

deemed to have rejected the Plan.  The SunCal Plan Proponents believe that all Classes are entitled

to vote except Class 5.1.  These classes are not impaired under the Plan and consequently are not

entitled to vote. They are conclusively deemed to have accepted the Plan.  The Interests held by

the Holders in Classes 8.1 and 8.2 are being cancelled under the Plan; accordingly, these Interest

Holders are deemed to have voted to reject the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL

HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 6.7    Who Can Vote in More than One Class.

A creditor whose Claim has been Allowed in part as a Secured Claim and in part as an

Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

the secured part of the Claim and another ballot for the Unsecured Claim.  Also, a Creditor may

otherwise hold Claims in more than one Class (such as a Holder of Senior Secured Claims and

Subordinated Note Claims), and may vote the Claims held in each Class.

### 6.8    Votes Necessary for a Class to Accept the Plan.

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in

number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to

accept the Plan.  A Class of interests is deemed to have accepted the Plan when Holders of at least

two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept

the Plan.

### 6.9    Treatment of Nonaccepting Classes.

As noted above, even if there are impaired Classes that do not accept the proposed Plan,

the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner

required by the Code and at least one impaired Class of Claims accepts the Plan.  The process by

which a plan may be confirmed and become binding on non-accepting Classes is commonly

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on

2    nonaccepting Classes of Claims or interests if it meets all statutory requirements except the voting

3    requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and

4    equitable" with respect to each impaired Class that has not voted to accept the Plan, as set forth in

5    11 U.S.C. § 1129(b) and applicable case law.

6    **6.10**    **Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

7    The SunCal Plan Proponents will ask the Court to confirm the Plan by cramdown on any

8    impaired Class if such Class does not vote to accept the Plan.

9    **VII.**

10    **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

11    **7.1**    **Introduction.**

12    This section is intended to address how the SunCal Plan Proponents intend to implement

13    the provisions of the Plan. It addresses the marketing and the sale of the Group II: Trustee

14    Projects and the Group II: Trustee Other Assets, the transfer of the Plan Trust Assets to the Plan

15    Trust, the nature of the Plan Trust, the powers of the Plan Trust, the governance of the Plan Trust,

16    the resolution of disputed claims, the sources of funds that will be used to pay claims and the

17    mechanics of how claims will be paid.

18    **7.2**    **Sale Process of the Group II: Trustee Projects and the Group II: Trustee**

19    **Other Assets During the Sales Period**.

20    The core objective of the Plan is to enable all creditors holding Allowed Claims to receive

21    the highest dividend possible by selling the estates' primary assets, the Group II: Trustee Projects,

22    to the highest bidder. The process of marketing the Group II: Trustee Projects for sale will begin,

23    pursuant to the Confirmation Order, immediately after the entry of this order.

24    7.2.1    The Group I: Trustee Projects Marketing and Bid Procedures.

25    Land Advisors shall manage the sales process, including the marketing, advertising and

26    auction process~~Acquisitions shall manage the marketing process initially in its capacity as a~~

27    ~~SunCal Plan Proponent and as the Plan Trustee after the Effective Date~~. However, the SunCal

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    Plan Proponents and the Furthermore, the Trustee Debtors' Committee shall be consulted and have

2    the opportunity to object to the sales process and request a hearing with the Bankruptcy Court.

3    Land AdvisorsThe SunCal Plan Proponents and the Plan Trustee will pursue the following

4    sale procedures culminating into a public auction for the sale of the Group II: Trustee Projects

5    after the Confirmation Date and during the Sales Period.

6          7.2.1    Implementation of a Marketing Program. Once the Plan is confirmed, Land

7    Advisorsthe SunCal Plan Proponents will market the Group II: Trustee Projects for sale through a

8    comprehensive sale effort during the Sales Period. This sale effort will include 1) sending sale

9    packages describing each Group II: Trustee Project to the real estate brokerage community; b)

10    advertising the Group II: Trustee Projects for sale on a website that includes links allowing direct

11    access to all relevant information regarding the Group II: Trustee Projects; and c) sending

12    packages to a list of prospects nationally who are actively seeking or may have interest in these

13    kinds of assets.

14          7.2.2    Identifying a Stalking Horse Bidder and Qualifying Bidders. On the first

15    business day after the Effective Date, Land Advisorsthe Plan Trustee will accept, on a provisional

16    basis, an Opening Bid for the Group II: Trustee Projects.  The bidder whose Opening Bid is

17    accepted for each Group II Trustee Project will become the "Stalking Horse Bidder."  The

18    Opening Bid must be equal to the Minimum Sale Price(s) fixed in the Plan for each Group II

19    Trustee Project. Land AdvisorsThe Plan Trustee shall also select Qualified Bidders at this time.

20          7.2.3    The Sale Contract. The sale contract that will be entered into with the

21    Stalking Horse Bidder will include the following bankruptcy-sale related provisions:

22            1.    Overbid Provisions. The contract will allow Land Advisorsthe Plan

23    Trustee to seek "overbids" from other Qualified Buyers, and to accept an Initial

24    Overbid that exceeds the Stalking Horse Bid by the Initial Overbid Amount

25    applicable to each Group II: Trustee Project. In the case of the Oak Knoll Project,

26    the Initial Overbid Amount is a sum that is not less than $22,860,000, plus the Oak

27    Knoll Break-up Fee, plus seventy five thousand dollars ($75,000). In the case of the

28    Del Amo Project, in the event that Diamond Valley or another Insider is not the

-43-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Stalking Horse Bidder, the Initial Overbid Amount is $10,935~~12,150~~,000, plus the

Torrance Break-up Fee, plus seventy-five thousand dollars ($75,000).

        2.     A Break-Up Fee. The sale contract will include a "break-up fee"

provision.  This fee will be payable to the Stalking Horse Bidder if the Opening Bid

is overbid, and another Qualified Bidder purchases the Group II: Trustee Project(s)

that is the subject of the Opening Bid. The Del Amo Break-up Fee is $540,000 and

the Oak Knoll Break-up Fee is $1,016,000.  However, in the event that Diamond

Valley or another Insider is the Stalking Horse Bidder for the Del Amo Project,

there shall be no Del Amo Break up Fee.  The Break up Fees for the Group I:

Trustee Debtor Projects are set forth in Section 2, above.

        3.     Sale Free and Clear of Liens. The sale contract will provide that the

Group II: Trustee Project(s) are being sold free and clear of all monetary liens and

encumbrances and that no party holding a lien against the projects, including the

Lehman Lenders, may submit a "credit bid" based upon the amount allegedly

owing on the claims secured by the project being sold.

        4.     Deposit.  Diamond Valley shall be required to place deposits in the

same amounts as the Qualified Competing Bidder referenced above.  The deposits

shall be held in a segregated account with Winthrop Couchot Professional

Corporation and deposited within five business days of the service of the Sale

Motion.  The deposits shall be non-refundable only if Diamond Valley is approved

by the Bankruptcy Court as to the Winning Bidder and fails to close within the time

period prescribed.

     7.2.4    The Project Auctions.  Fourteen (14) days after the date of the selection of

the Stalking Horse Bidder and the Qualified Bidders, Land Advisors~~the Plan Trustee~~ will conduct

a public auction wherein all Qualified Bidders who have submitted Qualified Bids for the Group

II: Trustee Projects will have the opportunity to increase their bids for these Projects. The

Qualified Bidder that submits the highest bid for the Project will then be designated the Winning

Bidder. The Winning Bidder will then have fifteen (15) days pay the Winning Bid amount and the

-44-
MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  closing shall occur no later than  the expiration of the Sales Period the first business day following

2  the thirtieth (30th) day after the Effective Date.

3       7.2.5    The Group II: Trustee Other Assets Marketing and Bid Procedures.

4       To the extent that the SunCal Plan Proponents believe that the Group II: Trustee Other

5  Assets have any material value, the SunCal Plan Proponents will pursue the following process for

6  the sale of the Group II: Trustee Other Assets after the Confirmation Date and during the Sales

7  Period:

8           1.    After the Confirmation Date, Land Advisors the SunCal Plan

9  Proponents will implement commercially reasonable marketing efforts for the sale of the Group II:

10  Trustee Other Assets;

11          2.    The sales procedures will be decided by Land Advisors the SunCal

12  Plan Proponents after consultation with the SunCal Plan Proponents and the Trustee Debtors'

13  Committee; and

14          3.    The sale contract will provide that the Group II: Trustee Other

15  Assets(s) are being sold free and clear of all monetary liens and encumbrances and that no party

16  holding a lien against the Group II: Trustee Other Assets, including the Lehman Lenders, may

17  submit a "credit bid" based upon the amount allegedly owing on the claims secured by the Group

18  II: Trustee Other Assets being sold.

19          4.    Within seven (7) days after the Effective Date, Land Advisors the

20  Plan Trustee will hold a public auction for the sale of the Group II: Trustee Assets to the bidder

21  that submits the highest and best bid.  The winning bidder will then have seven (10) days to close

22  this purchase transaction by paying the winning bid amount.

23       **7.3    Establishment and Operations of the Plan Trust**.

24       The Plan Trust shall be established and shall become effective on the Effective Date.  The

25  Plan Trust is created pursuant to the Plan and the Confirmation Order.  The primary purpose of the

26  Plan Trust is to consummate the sales and/or the liquidation of the Group II: Trustee Projects and

27  the Group II: Trustee Other Assets transferred to it and the Distribution of the Net Sales Proceeds

28  to Creditors, with no objective to continue or engage in the conduct of a trade or business, except

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan

2    Trust.  The Plan Trust shall hold title to and administer the Plan Trust Property, including, but not

3    limited to, any Litigation Claims, and the proceeds thereof for liquidation and distribution in

4    accordance with the terms of the Plan.

5          **7.4**       **Preservation and Pursuit of Litigation Claims and Recovery for the Plan**

6           **Trust**.

7          On the Effective Date, title to and possession of all property of the Group II: Trustee

8    Debtors shall be deemed transferred and delivered to the Plan Trust, without further act or action

9    under any applicable agreement, law, regulation, order or rule of law.

10          Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan Trust shall retain all

11    Litigation Claims whether or not pending on the Effective Date that are not purchased by LitCo

12    Unless a Litigation Claim is expressly waived, relinquished, released, sold, compromised or settled

13    in the Plan or in a Final Order, all rights with respect to such Litigation Claims are reserved and

14    the Plan Trustee may pursue such Litigation Claims.  Notwithstanding the foregoing, the Plan

15    Trustee shall not settle or abandon a Litigation Claim valued at greater than $100,000 except upon

16    ten (10) days' prior written notice and opportunity to object to the proposed action.  Any disputes

17    concerning the settlement or abandonment of a Litigation Claim shall be submitted to the

18    Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.

19          After repayment in full of the Litco Plan Loan, all Litigation Recoveries realized or

20    obtained by the Plan Trustee shall be promptly deposited into the applicable Distribution

21    Account(s).  Except as otherwise provided in the Plan and the Confirmation Order, the Litigation

22    Recoveries shall be free and clear of all Claims and Liens and shall only be expended in

23    accordance with the provisions of the Plan.

24          **7.5**       **Removal of Chapter 11 Trustee**.

25          As of the Effective Date, the appointment of the Chapter 11 Trustee in the SunCal Oak

26    Knoll, LLC and SunCal Torrance, LLC shall terminate, and possession and control over all

27    property within these estates shall pass to the Plan Trust.

28          **7.6**       **Payment of Plan Trust Expenses**.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1      The expenses incurred by the Plan Trust or the Plan Trustee during the Plan Period, shall

2  be paid, or adequate reserves shall be created for the payment of such expenses, prior to any

3  distribution to the Plan Trust Beneficiaries.

4      **7.7    The Plan Trust Distribution System.**

5      The Plan Trustee shall establish a separate "Distribution Account" for each Group II:

6  Trustee Debtor at an FDIC insured bank. Each Group II: Trustee Debtor's Available Cash,

7  whether on hand as of the Effective Date or received thereafter, shall be deposited into that Group

8  II: Trustee Debtor's Distribution Account.  These funds will then be used to pay the claims of

9  Creditors holding Allowed Claims in their order of priority as provided for in the Plan.  Persons

10  dealing with the Plan Trustee, or seeking to assert Claims against the Debtors, the Estates or the

11  Plan Trust, shall look only to property of the Debtors, the Estates or the Plan Trust to satisfy any

12  liability to such Persons, and the Plan Trustee shall have no corporate, personal, or individual

13  obligation to satisfy any such liability.

14      **7.8    The Plan Trustee.**

15      **7.8.1    Appointment.**  Acquisitions shall be Plan Trustee of the Plan Trust.  The

16  appointment of the Plan Trustee shall be effective as of the Effective Date.

17      **7.8.2    Term.**  Unless the Plan Trustee resigns, dissolves or is removed by Court

18  order earlier, the Plan Trustee's term shall expire upon termination of the Plan Trust pursuant to

19  the Plan.  In the event the Plan Trustee resigns, dies or is removed by Court order prior to

20  termination of the Plan Trust, the UST shall select and recommend to the Court a successor Plan

21  Trustee.

22      **7.8.3    Powers and Duties.**  On the Effective Date, the Plan Trustee shall have

23  the rights, powers and duties set forth in the Plan, the Confirmation Order, and Bankruptcy Code

24  §§505, 1107 and 1108.  The Plan Trustee shall be governed in all things by the terms of the Plan

25  and the Confirmation Order.  The Plan Trustee shall administer the Plan Trust in accordance with

26  the Plan.  Without limitation, the Plan Trustee shall file final federal, state, foreign and, to the

27  extent applicable, local, tax returns.  Without further Motion, notice, or order of the Court, the Plan

28  Trustee shall be authorized, empowered and directed to take all actions necessary to comply with

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation to:

      i.     employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Plan Trustee under the Plan;

      ii.     control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors pursuant to the terms of the Plan;

      iii.     open, maintain and administer bank accounts as necessary to discharge the duties of the Plan Trustee under the Plan;

      iv.     make Distributions to the Holders of Allowed Claims in accordance with the Plan;

      v.     retain professionals to assist in performing his or her duties under the Plan;

      vi.     pay reasonable and necessary professional fees, costs, and expenses;

      vii.     investigate, analyze, commence, prosecute, litigate, compromise, settle, dismiss, and otherwise administer all Causes of Action and Avoidance Actions for the benefit of the Plan Trust and its beneficiaries, as set forth in the Plan, and to take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash all Causes of Action and Avoidance Actions, as the Plan Trustee may determine is in the best interests of the Plan Trust;

      viii.     administer, sell, liquidate, or otherwise dispose of the Assets in accordance with the terms of the Plan;

      ix.     incur and pay reasonable and necessary expenses in connection with the performance of the Plan Trustee's duties under the Plan;

      x.     represent the Estates before the Court and other courts of competent jurisdiction with respect to mattes concerning the Plan Trust;

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

xi.    seek the examination of any entity under the subject to the provisions of Bankruptcy Rule 2004;

xii.    comply with applicable orders of the court and any other court of competent jurisdiction over the matters set forth in the Plan;

xiii.    comply with all applicable laws and regulations concerning the matters set forth in the Plan;

xiv.    exercise such other powers as may be vested in the Plan Trust pursuant to the Plan, the Confirmation Order, or other Final Orders of the Court.

xv.    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Plan Trust;

xvi.    (1) seek a determination of tax liability under §505 of the code, (2) pay taxes, if any, related to a Debtor, (3) file, if necessary, any and all tax and information returns required with the respect to the Plan Trust, including, if appropriate, treating the Plan Trust as a "grantor trust" pursuant to Treas. Reg 1.671-4 or otherwise, (4) make tax elections by and on behalf of the Plan Trust, and (5) pay taxes, if any, payable by the Plan Trust; and

xvii.    stand in the shoes of the Debtors for all purposes.

**7.8.4**    <u>**Retention of Professionals and Compensation Procedure.**</u>  On and after the Effective Date, the Plan Trustee may, without further application or Motion, notice, hearing, or Court order, engage or employ such professionals and experts as may be deemed necessary and appropriate by the Plan Trustee to assist the Plan Trustee in carrying out the provisions of the Plan, including, but not limited to, the Professionals retained prior to the Effective Date by either the Debtors or the Trustee Debtors' Committee.  The Plan Trustee may employ such professionals on any reasonable terms and conditions of employment to be determined by the Plan Trustee.  For the services performed on and after the Effective Date, the professionals engaged by the Plan Trustee (the "Plan Trustee Professionals") shall receive reasonable compensation and reimbursement of expenses in a manner to be determined by the Plan Trustee.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1        **7.8.5**   **Fees and Expenses.**  Acquisitions shall not receive any compensation for

2 the services it performs as the Plan Trustee. The Plan Trustee Professionals shall be entitled to

3 reasonable compensation for their services, and reimbursement of expenses. The costs and

4 expenses of the Plan Trust (including, without limitation, fees and expenses of the Plan Trustee

5 Professionals) shall be paid from the Plan Trust. The Plan Trustee shall pay, without further order,

6 notice or application to the Court, the reasonable fees and expenses of the Plan Trustee

7 Professionals, as necessary to discharge the Plan Trustee's duties under the Plan. The Plan Trustee

8 shall be authorized to reserve funds from the Plan Trust as is reasonable to pay the expenses of the

9 Plan Trustee and the expenses and fees of the Plan Trustee Professionals before making any

10 Distributions under the Plan.

11        **7.8.6**     **Limitation of Liability and Indemnification.**  None of the Group II:

12 Trustee Debtors, the Trustee Debtors' Committee, the Plan Sponsor, the SunCal Plan Proponents,

13 the Plan Trustee, the Professionals, nor any of their respective members, officers, directors,

14 shareholders, employees, or agents (the "Indemnified Parties") shall be liable (a) for any loss or

15 damages by reason of any action taken or omitted by him or her, except in the case of fraud,

16 willful misconduct, bad faith, or gross negligence, (b) for any act or omission made in reliance

17 upon the Debtors' books and records or upon information or advice given to the Plan Trustee by

18 his or her professionals, or (c) for any action taken or omission made in connection with or related

19 to the negotiations, formulation, or preparation of the Plan and the Disclosure Statement, the

20 approval of the Disclosure Statement, the confirmation of the Plan, the consummation of the Plan,

21 or the administration of the Plan, the Cases, or the property to be distributed under the Plan, to the

22 fullest extent permitted by applicable statute and case law. Except as otherwise provided in this

23 Plan, the Plan Trustee shall rely and shall be protected in acting upon any resolution, certificate,

24 statement, instrument, opinion, report, notice, consent, or other document believed by him or her

25 to be genuine and to have been signed by the proper party or parties.

26       The Indemnified Parties shall be indemnified and receive reimbursement from and against

27 any and all loss, liability, expense (including attorneys' fees) or damage of any kind, type or

28 nature, which the Indemnified Party may incur or sustain the exercise and performance of any of

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

the Plan Trustee's powers and duties under this Plan or the Confirmation Order, or in the rendering of services by the Indemnified Party to the Plan Trustee, to the full extent permitted by applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Plan Trustee's or an Indemnified Person's fraud, willful misconduct, bad faith, or gross negligence.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Trustee out of the Plan Trust Property.  The Plan Trustee shall not be liable for the payment of any Plan Trust expense or claim or other liability of the Plan Trust, and no Person shall look to the Indemnified Parties for the payment of any such expense or liability.  This indemnification shall survive the dissolution, resignation or removal, as may be applicable, of the Plan Trustee, or the termination of the Plan Trust, and shall inure to the benefit of the Plan Trustee's and the Indemnified Person's heirs and assigns.

 **7.8.7 Plan Trustee as Successor.**  Pursuant to Code §1123(b), the Plan Trustee shall be the successor to the Group II Trustee Debtors for all purposes.

 **7.9 The Plan Trust Beneficiaries**.

 The Holders of Allowed Claims under the Plan, or any successors to such Holders' Allowed Claims ("Beneficiary" or "Beneficiaries") shall own a beneficial interest in the Plan Trust which shall, subject to the Plan, be entitled to a Distribution, if any, in the amounts, and at the times, set forth in the Plan.  Ownership of a beneficial interest in the Plan Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Plan Trust by the Plan Trustee.  The ownership of a beneficial interest in the Plan Trust shall not entitle any Beneficiary to any title in or to the Plan Trust assets or to any right to call for a partition or division of such assets or to require an accounting.  The Plan Trustee shall make Distributions, if any, to Beneficiaries in the manner provided in the Plan.

 The rights of the Beneficiaries arising under the Plan Trust may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (a) the intent of the Plan is that such rights shall not be securities, and (b) if the rights

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

arising under the Plan Trust are deemed to be "securities," the exemption from registration under §1145 of the Bankruptcy code is intended to be applicable to such securities.

**7.10    No Payment of Transfer-Related Fees to the United States Trustee**.

The Plan Trust shall not be required to pay any fees to the United States Trustee based on any transfers of the Plan Trust Assets to the Plan Trust or from the Plan Trust.

**7.11    No Payment of Transfer-Related Fees to the Plan Trustee**.

The Plan Trust shall not be required to pay any fees to the Plan Trustee based on any transfers of Plan Trust Assets from the Group II: Trustee Debtors to the Plan Trust, or from the Plan Trust.

**7.12    Books and Records of Trust**.

The Plan Trustee, and to the extent of payments and distributions by any Disbursing Agent, the Disbursing Agent, shall maintain an accounting of receipts and disbursements of the Plan Trust. The Plan Trustee shall maintain the books and records of the Plan Trust, or provide storage for such book and records, for the longer of six (6) years, or while Plan is in existence, provided that the Court may, upon application by the Plan Trustee, authorize the Plan Trust to destroy all of the Plan Trusts books and records at such time as Plan Trust has no further need for such books and records. The Plan Trust's books and records shall be open to inspection at all reasonable times, upon written request by the Trustee Debtors' Committee.

**7.13    Federal Income Tax Treatment of the Holders of the Plan Trust Beneficial Interests**.

For all United States federal income tax purposes, the transfers by the Group II: Trustee Debtors shall be treated by the Group II: Trustee Debtors, their estates, the Plan Trust and the Plan Trust Beneficiaries as a transfer of the Plan Trust Assets by the Group II: Trustee Debtors to the Plan Trust Beneficiaries followed by a transfer of the Plan Trust Assets by such the Plan Trust Beneficiaries to the Trust. The Plan Trust Beneficiaries shall be treated as the grantors and deemed owners of the Plan Trust for United States federal income tax purposes. The Plan Trust Trustee and the Plan Trust Beneficiaries are required to value their interests in the Plan Trust Assets consistently with the values placed upon the Plan Trust Assets by the Plan Trust, and to use such

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   valuations for all purposes. The Plan Trust Agreement shall provide for consistent valuations of

2   the Plan Trust Assets by the Plan Trust Trustee and the Plan Trust Beneficiaries, and shall provide

3   that the Plan Trust will determine the fair market value of the Plan Trust Assets within thirty (30)

4   days after the Effective Date, and send such determination to each the Plan Trust Beneficiary. By

5   its acceptance of a the Beneficial Interest, each recipient of such an interest will be conclusively

6   deemed to agree to use such valuations for all purposes, including, without limitation, in

7   computing any gain recognized upon the exchange of such holder's claim for purposes of

8   determining any United States Federal income tax, and shall be required to include those items of

9   income, deductions and tax credits that are attributable to its the Beneficial Interest in computing

10  its taxable income.

11        **7.14**   __Termination of the Trust.__

12        The Plan Trust shall continue in effect until the earlier of: (a) the date that all the Plan

13  Trust Assets has been liquidated, all proceeds have been converted to cash or distributed in kind,

14  all the Plan Trust Expenses have been paid, all claims to be paid under the Plan for which the Plan

15  Trust Trustee is obligated to make distributions on have been paid, all distributions to be made

16  with respect to the Beneficial Interests have been made, all litigation to which the Plan Trust is a

17  party have been concluded by dismissal or an order issued by the court in which such litigation is

18  pending and such order has become "final" (consistent with the definition of Final Order in the

19  plan for orders issued by the Bankruptcy Court), and the Chapter 11 Case has been closed; and (b)

20  the expiration of five (5) years from the Effective Date; provided, however, that the Plan Trust

21  may request the Bankruptcy Court to extend the permitted life of the Plan Trust for such additional

22  period as is reasonably necessary to conclude the liquidation and distributions, not to exceed a

23  total of ten (10) years from the Effective Date, which request shall be filed so the Bankruptcy

24  Court may consider and rule on the request within six (6) months prior to the expiration of the

25  initial five-year term.

26        **7.15**   __Exemption from Certain Transfer Taxes__.

27        In accordance with Section 1146(a) of the Bankruptcy Code, the issuance, transfer or

28  exchange of a security or the making or delivery of an instrument of transfer under the plan may

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

not be taxed under any law imposing a stamp tax or similar tax. All governmental officials and agents shall forego the assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**7.16    Tax Consequence of The Plan**.

The implementation of the Plan may have federal, state and local tax consequences to the Group II: Trustee Debtors, Creditors and Interest Holders.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan. The Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**7.17    The Trustee Debtors' Committee.**

On the Effective Date, the Trustee Debtors' Committee shall continue to serve their applicable Debtors as Trustee Debtors' Committee to the applicable reorganized Debtors, subject to the following:

**7.17.1    Duties and Powers.**  The duties of the Trustee Debtors' Committee after the Effective Date shall be limited to monitoring the Plan's implementation, notice and opportunity to object to the sales process, notice and opportunity to object to any settlement of the Lehman Adversary Proceeding, and the Contract Action, standing to object to any settlement of any Litigation Claim in excess of $100,000, standing to object to any proposed sales procedures on sale of the Debtors' Projects and standing to file, prosecute and resolve objections to Claims filed by Insiders that are SunCal Affiliates and their professionals.  The Trustee Debtors' Committee shall receive notice of and the right to review all payments and Distributions.

The Trustee Debtors' Committee shall be entitled to retain, employ and compensate Professionals, in order to assist with the obligations and rights of the Trustee Debtors' Committee

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   under the terms of the Plan.  Such compensation shall be paid from the applicable Distribution

2   Account(s).

3         **7.17.2**   **Dissolution of Trustee Debtors' Committee.**  The Trustee Debtors'

4   Committee shall be dissolved upon the entry of an order converting, closing or dismissing the

5   Chapter 11 Cases or entry of a final decree in the Chapter 11 Cases.  On dissolution, the Trustee

6   Debtors' Committee shall have no other or further obligations or responsibilities on behalf of the

7   Plan Trust.

8         **7.18**   **Claims Estimation Rights.**

9         On the Confirmation Date, the SunCal Plan Proponents shall be vested with standing to file

10   a motion under 11 U.S.C. § 502(c), and they shall be authorized and empowered to seek in such

11   motion the estimation, for Distribution purposes, of any Disputed Claim seeking recourse to, or

12   claiming an interest in, any asset of the Group II: Trustee Debtors. After the Bankruptcy Court

13   estimates a Disputed Claimant's rights in, or against an asset of the Estates through this procedure,

14   the Plan Trustee shall have the right to use any funds or assets not deemed subject to the rights of

15   the Disputed Claimant, to pay the Allowed Claims under the terms of the Plan, including Allowed

16   Administrative Claims, after the Effective Date.

17         **VIII.**

18         **DISTRIBUTIONS**

19   **8.1**   **Distribution Agent.**

20         Acquisitions shall serve as the Distribution Agent for distributions due under the Plan.  The

21   Distribution Agent may employ one or more sub agents on such terms and conditions as it may

22   agree in its discretion and pay such sub agent as a Post Confirmation Expense from the

23   Distribution Accounts.  The Distribution Agent shall not be required to provide any bond in

24   connection with the making of any Distributions pursuant to the Plan.

25   **8.2**   **Distributions.**

26         **8.2.1**   **Dates of Distributions.**  Any distribution required to be made on the

27   Effective Date shall be deemed timely if made as soon as practicable after such date and, in any

28   event, within thirty (30) days after such date.  Any distribution required to be made upon a

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v3-SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter.

       **8.2.2**    **Limitation on Liability.**  Neither the Plan Sponsor, the Plan Trustee, the Distribution Agent, their Affiliates, nor any of their employees, members, officers, directors, agents, or professionals or Affiliates shall be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of distributions made pursuant to the Plan resulting from any delays in making such distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**8.3**   **Old Instruments and Securities.**

       **8.3.1**    **Surrender and Cancellation of Instruments and Securities.**  As a condition to receiving any distribution pursuant to the Plan, each Person holding any note or other instrument or security (collectively "Instruments or Securities" and individually an "Instrument or Security") evidencing an existing Claim(s) against the Debtor(s) must surrender such Instrument or Security to the Distribution Agent.

       **8.3.2**    **Cancellation of Liens.**  Except as otherwise provided in the Plan, any Lien securing any Secured Claim shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including, without limitation, any cash collateral) held by such Person and to take such actions as may be requested by the Plan Trustee to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Plan Trustee.

**8.4**    **De Minimis Distributions and Fractional Shares.**

     No Cash payment of less than ten dollars ($10) shall be made by the Plan Trust to any Holder of Claims unless a request therefore is made in writing to the Plan Trust.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  Any Cash or other property that is not

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1  distributed as a consequence of this section shall, after the last distribution on account of Allowed

2  Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

3      **8.5**    **Delivery of Distributions.**

4      Except as provided in the Plan with respect to Unclaimed Property, distributions to Holders

5  of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:

6  (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address

7  for such Holder as maintained by the official claims agent for the Debtors; (2) with respect to each

8  Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the

9  Schedules filed by the Debtors, provided, however, that if the Debtors or the Plan Trust has

10  received a written notice of a change of address for such Holder, the address set forth in such

11  notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at

12  such address as the Holder may specify in writing.

13      **8.6**    **Undeliverable Distributions.**

14      If the Distribution of Cash to the Holder of any Allowed Claim is returned to the Plan

15  Trustee as undeliverable or the Distribution check is not negotiated within 90 days of mailing (any

16  such distribution being hereinafter referred to as "Unclaimed Property"), no further distribution

17  shall be made to such Holder unless and until the Plan Trustee is notified in writing of such

18  Holder's then current address.  Subject to the remainder of this Section and the following section,

19  Unclaimed Property shall remain in the possession of the Plan Trustee pursuant to this Section,

20  and shall be set aside and (in the case of Cash) held in a segregated interest bearing account (as to

21  Cash Unclaimed Property) to be maintained by the Distribution Agent until such time as the

22  subject Distribution becomes deliverable.  Nothing contained in the Plan shall require the Plan

23  Trustee or any other Person to attempt to locate such Person.

24                  **IX.**

25      **OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

26      **9.1**    **Standing for Objections to Claims.**

27      The Plan Trustee shall have the sole and exclusive right to file, prosecute and resolve

28  objections to Claims, excluding Claims filed that are SunCal Affiliates including SunCal

-57-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Management.  The Trustee Debtors' Committee shall have the sole and exclusive right to file, prosecute and resolve potential Avoidance Actions against and objections to Claims filed by (i) SunCal Affiliates, including SunCal Management, Acquisitions, and SC Master Marketing, LLC and (ii) certain professionals for the SunCal Affiliates, including Voss, Cook & Thel, LLP, The MB Firm, White & Case, LLP, RBF Consulting and Mayer Brown LLP.

Any objection to a Claim shall be Filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection Deadline.  The Plan Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of the Claims Objection Deadline if a complete review of all Claims cannot be completed by such date.

**9.2**      **Treatment of Disputed Claims and Disputed Liens.**

**9.2.1**      **No Distribution Pending Allowance.**  If any portion of a Claim or Lien is a Disputed Claim or Disputed Lien, no payment or distribution provided for under the Plan shall be made on account of such Claim or Lien unless and until such Claim or Lien becomes an Allowed Claim and/or Allowed Lien.

**9.2.2**      **Distribution After Allowance.**  On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

**9.2.3**      **Reserves for Disputed Claims.**  In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the Plan Trustee shall establish and maintain a reserve for such Disputed Claims.  For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a Distribution is made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims.  If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the distributed Date following the date when the Disputed Claim

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    becomes an Allowed Claim, or (b) ninety (90) days after such Disputed Claim becomes an

2    Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim

3    because the Disputed Claim does not become an Allowed Claim shall become property of the Plan

4    Trust and shall be distributed in accordance with the terms of the Plan.

5                                                        **X.**

6                    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7            **10.1    Executory Contracts to be Assumed and Assigned.**

8            ~~Under the Plans, the Group II: Trustee Projects will be sold.  As a result, the Group II:~~

9    ~~Trustee Debtors will assume only those executory contracts and unexpired leases to be assigned to~~

10   ~~the Winning Bidder with respect to the applicable Project and the Restructuring Agreement and~~

11   ~~Settlement Agreement.~~

12          On the Effective Date, the executory contracts and unexpired leases identified on the

13   Schedule of Assumed and Assigned Agreements <u>filed herein</u>~~attached or to be attached to the~~

14   ~~Disclosure Statement as Exhibit "9" or filed or to be filed as Exhibit "9"~~ shall be deemed assumed

15   and assigned to the applicable Winning Bidder, as specified in the Confirmation Order<u> with the</u>

16   <u>exception that certain executory contracts specified in the Schedule of Assumed and Assigned</u>

17   <u>Agreements shall only be assumed and not assigned</u>.  ~~The SunCal Plan Proponents intend to file~~

18   ~~the Schedule of Assumed and Assigned Agreements with the Court no later than twenty-eight (28)~~

19   ~~days prior to the Confirmation Hearing.~~  The Schedule of Assumed and Assigned Agreements also

20   identifies or will identify any amounts that must be paid to cure defaults under the executory

21   contacts and unexpired leases to be assumed and assigned under the Plan (the "Cure Amount").  If

22   filed earlier, the SunCal Plan Proponents reserve the right to amend the Schedule of Assumed

23   Agreements up to twenty-eight (28) days prior to the Confirmation Hearing (October 24, 2011) to:

24   (a) add any executory contract or unexpired lease and provide for its assumption and assignment;

25   or (b) modify the Cure Amount for any particular executory contract or unexpired lease.  The

26   SunCal Plan Proponents further reserve the right to amend the Schedule of Assumed Agreements

27   to delete any executory contract or unexpired lease and provide for its rejection at any time prior to

28   the Confirmation Hearing.  The SunCal Plan Proponents will provide notice of any amendment to

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

the Schedule of Assumed and Assigned Agreements to any party or parties to the executory

contracts or unexpired leases affected by the amendment.  Absent a timely objection as provided

below, the Confirmation Order will constitute a Court Order approving the assumption and

assignment, on the Effective Date, of the executory contracts and unexpired leases then identified

on the Schedule of Assumed and Assigned Agreements, and shall constitute a final determination

of the Cure Amount and that the estate has shown adequate assurance of future performance.

Furthermore, any Cure Amount ordered by the Court, through entry of the Confirmation Order,

and paid shall be deemed to satisfy any and all defaults arising from, out of or related to the

executory contract of unexpired lease, including any tort claims that were or could be asserted by

the non-debtor party to the contract or lease on or prior to the entry of the Confirmation Order, and

all actual or pecuniary losses that have resulted from such defaults.

If you are a party to an executory contract or unexpired lease to be assumed and assigned

and you object to the assumption and assignment of your lease or contract and/or you dispute the

Cure Amount related to your lease or contract, then you must File and serve upon counsels for the

SunCal Plan Proponents (at the address on the upper left hand corner of the caption page) a written

objection by fourteen days before the Confirmation Hearing.  An objection to the Cure Amount

must also set forth the amount you contend to be the correct Cure Amount and contain evidence to

support such amount.  Failure to timely File an objection as provided herein shall be deemed

consent to the proposed assumption and assignment and to the Cure Amount and a waiver of any

and all rights to challenge such assumption and assignment and the Cure Amount.

With respect to each executory contract and unexpired lease identified on the Schedule of

Assumed and Assigned Agreements, if no dispute arises regarding the Cure Amount, adequate

assurances, or some other matter related to the assumption of the executory contact or unexpired

lease, then the Cure Amount set forth in the schedule of Assumed and Assigned Agreements shall

be paid to the applicable non-debtor party in Cash on the Effective Date or as soon as reasonably

practicable thereafter.  If a dispute arises regarding (a) whether the proposed assignee has provided

adequate assurance of future performance of an executory contract or unexpired lease to be

assumed, or (b) any other matter pertaining to a proposed assumption and assignment, the Cure

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

Amount will be paid on the later of (1) the Effective Date or as soon as practicable thereafter, or (2) within thirty (30) days after entry of a Final order resolving the dispute and approving the assumption and assignment; provided, however, if a dispute arises regarding any of the foregoing, the SunCal Plan Proponents reserve, for themselves and the Plan Trustee, the right to completely forego assumption and assignment of and, instead, reject the subject executory contract or unexpired lease.

If a party to an executory contract or unexpired lease identified on the Schedule of Assumed and Assigned Agreements Files an objection disputing the Cure Amount, then the SunCal Plan Proponents may amend the Schedule of Assumed and Assigned Agreements at any time prior to the Confirmation Hearing to delete the subject executory contract or unexpired lease and provide for its rejection.  Executory contracts or unexpired leases not so deleted shall be conditionally assumed, subject to the SunCal Plan Proponents' and/or the Plan Trustee's right to file a Motion to determine the appropriate Cure Amount up to the first (1st) Business Day that is at least sixty (60) days following the Effective Date.  The SunCal Plan Proponents and/or the Plan Trustee will serve any such Motion on the party to the executory contract or unexpired lease affected by the Motion (or its attorneys, if any).  If the SunCal Plan Proponents and Plan Trustee does not file a Motion to determine the appropriate Cure Amount, then the executory contract or unexpired lease shall be assumed and assigned, as of the Effective Date, and the Cure Amount shall be the alternative Cure Amount asserted by the non-debtor party to the subject executory contract or unexpired lease in its objection to the Plan.  The Cure Amount shall be paid as soon as reasonably practicable following the expiration of the 60-day deadline.

If the SunCal Plan Proponents or the Plan Trustee files a Motion to determine the appropriate Cure Amount, then the SunCal Plan Proponents and/or Plan Trust shall have the right to amend the Schedule of Assume and Assigned Agreements to completely forego assumption and assignment of and, instead, reject the subject executory contract or unexpired lease up to the first (1st) Business Day that is at least fifteen (15) days after the entry of an order fixing the Cure Amount.  The SunCal Plan Proponents and/or Plan Trustee will provide notice of any amendment to the Schedule of Assumed and Assigned Agreements to the party to the executory contract or

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   unexpired lease affected by the amendment.  If the SunCal Plan Proponents and/or Plan Trustee

2   has filed such a Motion and does not timely amend the Schedule of Assumed and Assigned

3   Agreements within fifteen (15) days after entry of an order fixing the Cure Amount, then the

4   executory contract or unexpired lease shall be assumed and assigned, as of the Effective Date, and

5   the Cure Amount shall be fixed as the Cure Amount ordered by the Court.  The Cure Amount as

6   soon as reasonably practicable following the expiration of the 15-day deadline.

7       **10.2    Executory Contracts to be Rejected.**

8       On the Effective Date, the estate will be deemed to have rejected any and all executory

9   contacts and unexpired leases <u>not</u> identified on the Schedule of Assumed and Assigned

10  Agreements ~~attached or to be attached to the Disclosure Statement as Exhibit "9," or filed or to be~~

11  ~~filed as Exhibit "9"~~.  The Confirmation Order will constitute a Court order approving the rejection,

12  as of the Effective Date, of such executory contacts and unexpired leases.  Any Claim for damages

13  arising from the rejection under the Plan of any executory contract or unexpired lease must be filed

14  with the Court and served upon the SunCal Plan Proponents and the Plan Trustee within thirty (30)

15  days of the later of (a) the Confirmation Date, and (b) the Plan Trustee's amendment of the

16  Schedule of Assumed and Assigned Agreements to eliminate the executory contract or unexpired

17  lease.  Any such damage Claims that are not timely filed and served will be forever barred and

18  unenforceable against the applicable Debtors, the Estates, the Plan Trustee, the Plan Trust, and

19  their respective property.  Persons holding these Claims who fail to timely file claims will be

20  barred from receiving any Distributions under the Plan on account of their rejection damage

21  Claims.

22      If you are a party to a lease or contract to be rejected and you object to the rejection of your

23  lease or contract, then you must file and serve your objection by fourteen days before the

24  Confirmation Hearings.

25

26

27

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

# XI.

# LIMITATION OF LIABILITY

### 11.1    No Liability for Solicitation or Participation.

As specified in Section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

# XII.

# CONDITIONS TO CONFIRMATION AND

# EFFECTIVENESS OF THE PLAN

### 12.1    Conditions Precedent to Plan Confirmation.

The only condition precedent to confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order in form and substance reasonably acceptable to the SunCal Plan Proponents.

### 12.2    Conditions Precedent to Plan Effectiveness.

The conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date is that the Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the SunCal Plan Proponents, and the resolutions of any material impairment of the Plan terms caused by the automatic stays applicable in the Lehman Entities cases. The automatic stay in the Debtors' cases shall continue to be applicable until the Effective Date.

# XIII.

# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court's jurisdiction shall not be limited under the Plan and the Bankruptcy Court's jurisdiction shall apply to the fullest extent possible under applicable law.  The Court will

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising from the administration of the Plan, upon request of a party-in-interest and after notice and a hearing, including, without limitation:

a.      The adjudication of the validity, scope, classification, allowance, and disallowance of any Claim;

b.      The estimation of any Claim;

c.      The allowance or disallowance of Professional-Fee Claims, compensation, or other Administrative Expense Claims;

d.      To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§ 346, 505, 525, and 1146;

e.      To hear and determine any action or proceeding brought under Bankruptcy Code §§108, 510, 543, 544, 545, 547, 548, 549, 550, 551 and 553;

f.      To hear and determine all actions and proceedings which relate to pre-confirmation matters;

g.      To hear and determine any issue relating to the assumption or rejection of executory contracts and unexpired leases;

h.      To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and Bankruptcy Code;

i.      To enforce and interpret the terms of the Plan;

j.      To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

k.      the entry of any order, including injunctions, necessary to enforce title, rights and powers of the Plan Trust, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Plan Trust to recover and liquidate assets;

l.      To determine the validity, extent and priority of all liens and security interests against property of the Estates or the Plan Trust;

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

m.      To hear and resolve any disputes regarding employment applications and professional fees;

n.      To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in these Cases;

o.      The entry of an order concluding and terminating these Cases; and

p.      To resolve any disputes as to whether there has been a default under the Plan.

## XIV.

## MODIFICATION OR WITHDRAWAL OF THE PLAN

### 14.1    Modification of Plan.

At any time prior to confirmation of the Plan, the Plan Proponent may supplement, amend or modify the Plan.  After confirmation of the Plan, the Plan Proponent or Plan Trustee may (x) apply to the Bankruptcy Court, pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

### 14.2    Nonconsensual Confirmation.

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, SunCal Plan Proponents (i) may request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, and (ii) in accordance with Section 16.1 of the Plan, and may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

## XV.

## EFFECT OF CONFIRMATION

### 15.1    Discharge.

Confirmation of the Plan does not discharge the Group II: Trustee Debtors as set forth in Bankruptcy Code §1141.

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    **15.2    Revesting of the Assets.**

2        The Assets shall not be vested in the Group II: Trustee Debtors on or following the

3    Effective Date, but shall be vested in the Plan Trust and continue to be subject to the jurisdiction

4    of the Court following confirmation of the Plan until such Assets are distributed to the Holders of

5    Allowed Claims in accordance with the provisions of the Plan.

6                                **XVI.**

7                            **MISCELLANEOUS**

8    **16.1    Payment of Statutory Fees.**

9        All quarterly fees due and payable to the Office of the United States Trustee pursuant to

10    Section 2030(a)(6) of title 28 of the United States Code shall be paid in full on or before the

11    Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have

12    been established and set aside for payment in full thereof, as required by Section 1129(a)(12) of

13    the Bankruptcy Code.  The Plan Trustee shall remain responsible for timely payment of quarterly

14    fees due and payable after the Effective Date and until the Debtors' Cases are closed, to the extent

15    required by Section 2030(a)(6) of title 28 of the United States Code.

16    **16.2    Changes in Rates Subject to Regulatory Commission Approval.**

17        The Group II: Trustee Debtors are not subject to governmental regulatory commission

18    approval of their rates**.**

19    **16.3    Payment Dates.**

20        Whenever any payment or distribution to be made under the Plan shall be due on a day

21    other than a Business Day, such payment or distribution shall instead be made, without interest, on

22    the immediately following Business Day.

23    **16.4    Headings.**

24        The headings used in the Disclosure Statement and in the Plan are inserted for convenience

25    only and neither constitutes a portion of the Disclosure Statement or the Plan nor in any manner

26    affect the construction of the provisions of the Disclosure Statement or the Plan.

27    **16.5    Other Documents and Actions.**

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

The Plan Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**16.6    Notices.**

All notices and requests in connection with the Disclosure Statement and the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> **To the SunCal Plan Proponents**:
> Bruce V. Cook
> General Counsel
> Authorized Agent of the SunCal Plan Proponents
> 2392 Morse Ave
> Irvine, CA 92614-6234
>
> **With copies to:**
> Paul J. Couchot
> Winthrop & Couchot, Professional Corporation
> 660 Newport Center Drive, Suite 400
> Newport Beach, CA 92660
>
> Ronald Rus
> Rus Miliband & Smith P.C.
> 2211 Michelson Drive, Seventh Floor
> Irvine, California 92612

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record.  Any such Person may designate in writing any other address for purposes of this Section, which designation will be effective on receipt.

**16.7    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**16.8    Binding Effect.**

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    The Plan and all rights, duties and obligations thereunder shall be binding upon and inure

2    to the benefit of the Plan Sponsor Debtors, the Plan Trustee, Holders of Claims, Holders of

3    Interests, and their respective successors and assigns.

4    **16.9    Successors and Assigns.**

5    The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

6    binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

7    assigns of such entity.

8    **16.10    Severability of Plan Provisions.**

9    If, prior to the Confirmation Date, any term or provision of the Plan is held by the

10    Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to

11    constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the

12    consent of the Debtors, have the power to interpret, modify or delete such term or provision (or

13    portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent

14    with the original purpose of the term or provision held to be invalid, void or unenforceable, and

15    such term or provision shall then be operative as interpreted, modified or deleted.

16    Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and

17    provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation,

18    modification or deletion.

19    **16.11    No Waiver.**

20    The failure of the Debtors or any other Person to object to any Claim for purposes of voting

21    shall not be deemed a waiver of the Trustee Debtors' Committee's, the Debtors' or the Plan

22    Trustee's right to object to or examine such Claim, in whole or in part.

23    **16.12    Inconsistencies.**

24    In the event the terms or provisions of the Disclosure Statement are inconsistent with the

25    terms and provisions of the Plan or documents executed in connection with the Plan, the terms of

26    the Plan shall control.

27    **16.13    Exemption from Certain Transfer Taxes and Recording Fees.**

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1    Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to the

2    Plan Trust or to any other Person or entity pursuant to the Plan, or any agreement regarding the

3    transfer of title to or ownership of any of the Debtors' real or personal property or of any other

4    interest in such property (including, without limitation, a security interest) will not be subject to

5    any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax,

6    stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or

7    recording fee, or other similar tax or governmental assessment, and the Confirmation Order will

8    direct the appropriate state or local governmental officials or agents to forego the collection of any

9    such tax or governmental assessment and to accept for filing and recordation any of the foregoing

10    instruments or other documents without the payment of any such tax or governmental assessment.

11    **16.14   Post-Confirmation Status Report.**

12    Within 180 days following the entry of the Confirmation Order, the Plan Trustee shall file

13    a status report with the Court explaining what progress has been made toward consummation of

14    the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty

15    largest unsecured creditors, and those parties who have requested special notice.  Unless otherwise

16    ordered, further status reports shall be filed every 180 days and served on the same entities.

17    **16.15   Post-Confirmation Conversion/Dismissal.**

18    A creditor or party in interest may bring a motion to convert or dismiss the case under

19    § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  The Plan

20    Trustee reserves the right to object to any motion for conversion or dismissal.  In addition, as set

21    forth in the definition of the Effective Date, the Effective Date may be further extended by order of

22    the Bankruptcy Court after notice and hearing to all parties in interest.  If the Court determines

23    there is no "cause" for the extension of the Effective Date, a party in interest may move to dismiss

24    or convert the Case(s).

25    If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed,

26    then all property that had been property of the Chapter 11 Estate, and that has not been disbursed

27    pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

upon the revested property, but only to the extent that relief from stay was not previously

authorized by the Court during this case.

**16.16   Final Decree.**

Once an Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

Plan Trustee, or other party as the Court shall designate in the Confirmation Order, shall file a

motion with the Court to obtain a final decree to close the Case of such Debtor.


Date:  October 3, September 26, August 5, 2011                              By:  /s/ Bruce Cook

                                                                    Bruce Cook
                                                                    General Counsel, Authorized Agent for the
                                                                    Voluntary Debtors and Acquisitions

**Submitted By:**

| **WINTHROP COUCHOT** | **RUS MILIBAND & SMITH** |
|---|---|
| **PROFESSIONAL CORPORATION** | **A PROFESSIONAL CORPORATION** |

By: /s/ Paul J. Couchot                              By:  /s/ Ronald Rus

        Paul J. Couchot, Esq.                              Ronald Rus, Esq.
General Insolvency Counsel for the                      Joel S. Miliband, Esq.
Voluntary Debtors                                  Counsel for SCC Acquisitions Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **THIRD AMENDED CHAPTER 11 PLANS AS MODIFIED FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK KNOLL, LLC AND SUNCAL TORRANCE, LLC [GROUP II: TRUSTEE DEBTORS]** ~~THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING THIRD AMENDED CHAPTER 11 PLANS FILED BY SUNCAL PLAN PROPONENTS IN THE CHAPTER 11 CASES OF SUNCAL OAK KNOLL, LLC AND SUNCAL TORRANCE, LLC [GROUP II: TRUSTEE DEBTORS]~~ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 3, ~~August 5~~, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 3, ~~August 5~~, 2011 | ~~Gretchen Crumpacker~~PJ Marksbury | /s/ ~~Gretchen Crumpacker~~PJ Marksbury |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

**NEF SERVICE LIST**

- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Richard W Brunette    rbrunette@sheppardmullin.com
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com
- Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
- Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
- Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri    dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Caroline Djang    cdjang@rutan.com
- Joseph R Dunn    jrdunn@mintz.com, jadavis@mintz.com;dsjohnson@mintz.com;docketing@mintz.com;TLMayo@mintz.com
- Donald T Dunning    ddunning@dunningLaw.com
- Lynsey M Eaton    leaton@gglts.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Don Fisher    dfisher@ptwww.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1
- Kavita Gupta     kgupta@winthropcouchot.com
- Asa S Hami     ahami@morganlewis.com

2
- Michael J Hauser     michael.hauser@usdoj.gov
- D Edward Hays     ehays@marshackhays.com

3
- Michael C Heinrichs     mheinrichs@omm.com
- Harry D. Hochman     hhochman@pszjlaw.com, hhochman@pszjlaw.com

4
- Jonathan M Hoff     jonathan.hoff@cwt.com
- Garrick A Hollander     ghollander@winthropcouchot.com,

5
  gcrumpacker@winthropcouchot.com;pj@winthropcouchot.com
- Nancy Hotchkiss     nhotchkiss@trainorfairbrook.com

6
- Michelle Hribar     mhribar@rutan.com
- John J Immordino     john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com

7
- Lawrence A Jacobson     laj@cohenandjacobson.com
- Michael J Joyce     mjoyce@crosslaw.com

8
- Stephen M Judson     sjudson@fablaw.com
- Kaleb L Judy     ecf@kleinlaw.com, kjudy@kleinlaw.com

9
- Steven J Kahn     skahn@pszyjw.com
- Sheri Kanesaka     sheri.kanesaka@bryancave.com, theresa.macaulay@bryancave.com

10
- David I Katzen     katzen@ksfirm.com
- Christopher W Keegan     ckeegan@kirkland.com,

11
  shalimar.caltagirone@kirkland.com;alevin@kirkland.com
- Irene L Kiet     ikiet@hkclaw.com

12
- Claude F Kolm     claude.kolm@acgov.org
- Mark J Krone     mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

13
- David B Lally     davidlallylaw@gmail.com
- Leib M Lerner     leib.lerner@alston.com

14
- Peter W Lianides     plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu     cliu@marshackhays.com

15
- Charles Liu     cliu@winthropcouchot.com
- Ben H Logan     blogan@omm.com

16
- John W Lucas     jlucas@pszjlaw.com
- Kerri A Lyman     klyman@irell.com

17
- Mariam S Marshall     mmarshall@marshallramoslaw.com
- Robert C Martinez     rmartinez@mclex.com

18
- Michael D May     mdmayesq@verizon.net
- Hutchison B Meltzer     hmeltzer@wgllp.com

19
- Krikor J Meshefejian     kjm@lnbrb.com
- Joel S. Miliband     jmiliband@rusmiliband.com

20
- James M Miller     jmiller@millerbarondess.com,

21
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarondess.com
- Louis R Miller     smiller@millerbarondess.com

22
- Craig Millet     cmillet@gibsondunn.com, pcrawford@gibsondunn.com;cmillet@gibsondunn.com

23
- Randall P Mroczynski     randym@cookseylaw.com
- Mike D Neue     mneue@thelobelfirm.com,

24
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida     Rnida@castlelawoffice.com

25
- Henry H Oh     henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe     sokeefe@okeefelc.com

26
- Robert B Orgel     rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay     mpagay@pszjlaw.com, mpagay@pszjlaw.com

27
- Ernie Zachary Park     ernie.park@bewleylaw.com
- Daryl G Parker     dparker@pszjlaw.com

28
- Penelope Parmes     pparmes@rutan.com

-73-

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

- Robert J Pfister    rpfister@ktbslaw.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachay@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Laurel R Zaeske    lzaeske@rusmiliband.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net

- 
- 
- Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
- Carollynn Callari    ccallari@venable.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   Tara Castro Narayanan    tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
    Dan E Chambers    dchambers@jmbm.com
2   Shirley Cho    scho@pszjlaw.com
    Vonn Christenson    vrc@paynefears.com
3   Brendan P Collins    bpcollins@bhfs.com
    Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
4   Paul J Couchot    pcouchot@winthropcouchot.com,
5       pj@winthropcouchot.com;gcrumpacker@winthropcouchot.com
    Jonathan S Dabbieri    dabbieri@sullivan.com,
6       hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sulli
        vanhill.com
7   Ana Damonte    ana.damonte@pillsburylaw.com
    Vanessa S Davila    vsd@amclaw.com
8   Melissa Davis    mdavis@shbllp.com
    Daniel Denny    ddenny@gibsondunn.com
9   Caroline Djang    crd@jmbm.com
10  Donald T Dunning    ddunning@dunningLaw.com
    Meredith R Edelman    meredith.edelman@dlapiper.com
11  Joseph A Eisenberg    jae@jmbm.com
12  Lei Lei Wang Ekvall    lekvall@wgllp.com
    Richard W Esterkin    resterkin@morganlewis.com
13  Marc C Forsythe    kmurphy@goeforlaw.com
    Alan J Friedman    afriedman@irell.com
14  Steven M Garber    steve@smgarberlaw.com
    Christian J Gascou    cgascou@gascouhopkins.com
15  Barry S Glaser    bglaser@swjlaw.com
16  Robert P Goe    kmurphy@goeforlaw.com,
        rgoe@goeforlaw.com;mforsythe@goeforlaw.com
17  Eric D Goldberg    egoldberg@stutman.com
18  Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
    Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
19  Kelly C Griffith    bkemail@harrisbeach.com
    Matthew Grimshaw    mgrimshaw@rutan.com
20  Kavita Gupta    kgupta@winthropcouchot.com
    Asa S Hami    ahami@morganlewis.com
21  Michael J Hauser    michael.hauser@usdoj.gov
22  D Edward Hays    ehays@marshackhays.com
    Michael C Heinrichs    mheinrichs@omm.com
23  Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
    Jonathan M Hoff    jonathan.hoff@cwt.com
24  Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
    Michelle Hribar    mhribar@rutan.com
25  John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
26  Lawrence A Jacobson    laj@cohenandjacobson.com
    Michael J Joyce    mjoyce@crosslaw.com
27  Stephen M Judson    sjudson@fablaw.com
    Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
28  Steven J Kahn    skahn@pszjw.com

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com

2
- Christopher W Keegan    ckeegan@kirkland.com,
  gdupre@kirkland.com;alevin@kirkland.com

3
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com

4
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com

5
- David B Lally    davidlallylaw@gmail.com

6
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com

7
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com

8
- Mariam S Marshall    mmarshall@marshallramoslaw.com

9
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net

10
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com

11
- Joel S. Miliband    jmiliband@rusmiliband.com

12
- James M Miller    jmiller@millerbarondess.com,
  vgunderson@millerbarondess.com;smiller@millerbarondess.com;mpritikin@millerbarond
  ess.com

13
- Louis R Miller    smiller@millerbarondess.com

14
- Craig Millet    cmillet@gibsondunn.com,
  pcrawford@gibsondunn.com;cmillet@gibsondunn.com

15
- Randall P Mroczynski    randym@cookseylaw.com

16
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com

17
- Robert Nida    Rnida@castlelawoffice.com

18
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com

19
- Scott H Olson    solson@seyfarth.com

20
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com

21
- Ernie Zachary Park    ernie.park@bewleylaw.com
- Daryl G Parker    dparker@pszjlaw.com

22
- Penelope Parmes    pparmes@rutan.com
- Robert J Pfister    rpfister@ktbslaw.com

23
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com, smcloughlin@steptoe.com

24
- Cassandra J Richey    cmartin@pprlaw.net

25
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com

26
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com

27
- Martha E Romero    Romero@mromerolawfirm.com

28
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC

1   • John E Schreiber    jschreiber@dl.com
    • William D Schuster    bills@allieschuster.org
2   • Christopher P Simon    csimon@crosslaw.com
    • Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
3   • Wendy W Smith    wendy@bindermalter.com
    • Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
4   • Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
    • Michael St James    ecf@stjames-law.com
5   • Michael K Sugar    msugar@irell.com
6   • Cathy Ta    cathy.ta@bbklaw.com,
      Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
7   • David A Tilem    davidtilem@tilemlaw.com,
      malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
8   • James E Till    jtill@thelobelfirm.com,
      jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
9   • United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
10  • Carol G Unruh    cgunruh@sbcglobal.net
    • Annie Verdries    verdries@lbbslaw.com
11  • Jason Wallach    jwallach@gladstonemichel.com
    • Joshua D Wayser    , kim.johnson@kattenlaw.com
12  • Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
13  • David M Wiseblood    dwiseblood@seyfarth.com
    • Brett K Wiseman    bwiseman@aalaws.com
14  • Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
    • Marc A. Zimmerman    joshuasdaddy@att.net
15  •
16  •

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-
SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#167134-v1-SunCal_Modified_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v3-
SunCal_3rd_Am_Group_II_TD_Plan.DOCMAINDOCS-#165264-v2-SunCal_3rd_Am_Group_II_TD_Plan.DOC